**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**CERTIFICATE OF PUBLICATION**

I, Anthony Arfine, depose and say that I am employed by Kroll Restructuring Administration LLC ("***Kroll***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes certification verifying that the *Notice of Sale by Auction and Sale Hearing*, as conformed for publication, was published in the New York Times on May 10, 2025, as described in the proof of publication attached hereto as **Exhibit A.**

This Certificate of Publication includes certification verifying that the *Notice of Interim Order (I) Approving Notification and Hearing Procedures for Certain Transfers of, and Declarations of Worthlessness with Respect to, Common Stock, and (II) Granting Related Relief*, as conformed for publication, was published in the New York Times on May 10, 2025, as described in the proof of publication attached hereto as **Exhibit B.**

This Certificate of Publication includes certification verifying that the *Notice of Entry of Interim Order (I) Establishing a Record Date for Notice and Sell-down Procedures for Trading in Certain Claims Against the Debtors' Estates, (II) Establishing Procedures for Notification and Trading in Certain Claims Against the Debtors' Estates, and (III) Granting Related Relief*, as conformed for publication, was published in the New York Times on May 10, 2025, as described in the proof of publication attached hereto as **Exhibit C.**

Dated: May 15, 2025

/s/ Anthony Arfine
Anthony Arfine

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Exhibit A**



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

May 14, 2025

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

5/10/2025, NY/NATL, pg B3

Larnyce Tabron

Sworn to me this 14th day of May, 2025

Shannon Schmidt
Online Notary Public
State of New York
Nassau County
Commission #: 01SC0033223
Commission Expires: 01/28/2029

# British Airways Makes a Deal With Boeing For 32 Planes

By ESHE NELSON

LONDON — British Airways will get 32 new Boeing planes, in a deal worth nearly $13 billion, its parent company announced on Friday, a day after U.S. officials teased a big order was coming for America's largest plane maker.

IAG, which owns British Airways and other European airlines, said it had ordered the Boeing aircraft as well as 21 planes from Airbus, a French aerospace company, to be delivered between 2028 and 2033. Most of the planes were replacements for aging aircraft, but about a third were to expand the group's fleet as it took a bet on long-haul flights.

The announcement came after Howard Lutnick, the U.S. commerce secretary, said on Thursday that Britain would buy $10 billion worth of Boeing planes as he announced details of what he called a "strong" trade deal between the two countries. The plane order, however, is a commercial agreement and not part of the governments' trade deal.

Mr. Lutnick also said the United States would scrap tariffs on jet engines and other parts from Rolls-Royce, a British company, although the arrangement was not included in the documents published on Thursday by the U.S. and British governments.

ERIC LEE/THE NEW YORK TIMES

**Friday's announcement came a day after Commerce Secretary Howard Lutnick made a similar statement during remarks about the "strong" trade deal between the U.S. and U.K.**

On Thursday, the two nations agreed on a framework to lower U.S. tariffs on cars and steel for British imports, while Britain increased market access for American beef and ethanol. President Trump and Keir Starmer, the British prime minister, warmly congratulated each other on agreeing to the first trade deal since the U.S. administration substantially raised tariffs on its trading partners. But this agreement is not final: More negotiations will take place, and it is unclear when the tariff reductions will take effect.

The Boeing order, announced alongside IAG's quarterly earnings report, was for 787-10 aircraft with a list price of $397 million (in dollar pricing from January) each, making the order for 32 planes worth $12.7 billion. But the company said it had a secured a discount on that price. IAG has the option to buy 10 more planes.

IAG also said it bought 21 Airbus A330-900neo aircraft for its other airlines, which include Aer Lingus and Iberia, in a deal worth nearly $8 billion, and with the option to buy 13 more.

***An agreement worth nearly $13 billion; the carrier also bought 21 Airbus long-haul jets.***

Luis Gallego, the chief executive of IAG, described it as a "milestone" order that was part of a long-term strategy to upgrade its fleet, including to more energy-efficient planes.

"Looking ahead to the next decade, these new aircraft will enable us to strengthen our core markets and further improve our customer experience, while continuing to drive long-term value for our shareholders," he said.

British Airways flies both Boeing and Airbus planes. In March, IAG ordered six aircraft from each company for British Airways, which will be delivered later in the decade. Those planes are not part of the order announced on Friday.

IAG made the announcement as it reported 198 million euros in operating profit in the first quarter of 2025, up from €68 million a year ago. The company's share price rose nearly 3 percent on the London Stock Exchange.

The company also said the closure of Heathrow Airport for a day in March, because of a power outage and a nearby fire, cost British Airways about €50 million.

# Newark Airport Experiences Another Radar Outage

By NIRAJ CHOKSHI

An air traffic control facility that guides planes at Newark Liberty International Airport had a brief radar outage on Friday morning, the latest technological disruption at one of the nation's busiest airports.

The outage, which affected communications and radar displays at a facility in Philadelphia, occurred just before 4 a.m. and lasted about 90 seconds, the Federal Aviation Administration said.

A similar 90-second outage last week, on a Monday afternoon, upended travel at the airport, leaving controllers unable to communicate with pilots and keep planes from crashing into one another. Several controllers working that afternoon were distressed by that episode and took time off, which resulted in several days of low staffing at the facility, causing widespread flight delays and cancellations.

The problems at Newark and other aviation safety concerns have become a major challenge for President Trump. Just days after he took office, an American Airlines plane crashed into an Army helicopter near Ronald Reagan National Airport in Washington, killing everybody aboard both aircraft.

Karoline Leavitt, the White House press secretary, told reporters on Friday that a "glitch in the system" had been caused in the morning by "the same telecom and software issues that were raised last week."

"Everything went back online after the brief outage, and there was no operational impact," Ms. Leavitt said. Federal transportation officials "are working to address this technical issue tonight, to prevent further outages," and are planning to install new fiber-optic cables from the Newark airport to Philadelphia, she said. The goal is to have the system fully upgraded by the summer, she added.

On Thursday, the transportation secretary, Sean Duffy, announced a plan to modernize and overhaul the country's air traffic control system. The proposal, which will cost billions of dollars, includes investing in new technology and facilities. But details remain unclear, and the plan will require approval from Congress.

The latest outage on Friday is likely to intensify pressure on administration officials and lawmakers to act.

An air traffic controller directing traffic at Newark early Friday mentioned the latest outage to the pilot of FedEx Flight 1989 when it occurred, according to a publicly available recording of air traffic control communications with pilots.

"FedEx 1989, I'm going to hand you off here — our scopes just went black again," the controller said. "If you care about this, contact your airline and try to get some pressure for them to fix this stuff."

"Sorry to hear about that," the pilot replied.

In a separate exchange, a controller told another pilot about the outage and instructed the pilot to maintain distance if the pilot could not reach the controller.

ABC News reported on the outage earlier.

Flights to and from Newark were delayed on Friday morning. The F.A.A. also initiated a "ground delay program," which remained in effect midday. It held flights destined for Newark at their origin airports by an average of more than four hours because of rain in and around New York City. The Newark airport is about a 17-mile drive from Midtown Manhattan.

### A Key Airport in Chaos

A communications lapse on April 28 led to added delays and cancellations at Newark.

### Cancellations at Newark vs. Other New York Airports

The nearby airports of LaGuardia and Kennedy also saw a slight, though not as severe, uptick in cancelled flights.

Source: Flightradar24 THE NEW YORK TIMES

A spokesman for the Port Authority of New York and New Jersey, which operates Newark, said the outage did not affect passenger operations at the airport.

Newark has long had problems. The F.A.A. had recently hoped to address a staffing shortfall among air traffic controllers last summer by moving some operations for Newark from Westbury, N.Y., on Long Island, to Philadelphia. Controllers at the facility in New York had fought the relocation, but the F.A.A. said it could recruit more controllers by moving the work to a more affordable area.

About 10 percent of flights to and from Newark were canceled from the start of last week through Wednesday, according to data from FlightAware, a flight tracking service. The two other airports serving the New York region fared much better. Over the same period, only about 2 percent of flights were canceled at LaGuardia Airport and 1 percent at Kennedy International Airport. Newark also saw far more delays than the other two airports.

The disruptions are particularly frustrating for United Airlines, which counts Newark as one of its eight airport hubs and dominates traffic there. More than two out of three flights to and from the airport are sold by United. A variety of airlines account for the remaining flights, according to Cirium, an aviation data firm.

In an email to employees this week, United's chief executive, Scott Kirby, said flights to and from the airport remained safe. Newark is a "crown jewel of the region," he said, but the airport is overwhelmed, with more flights scheduled on most afternoons and evenings than the F.A.A. has said it can handle.

Michael Levenson, Neil Vigdor and Patrick McGeehan contributed reporting.

# Setting Stage for Judge's Decision on Fixing Google's Monopoly

By DAVID McCABE

WASHINGTON — For the past three weeks, the Justice Department and Google have questioned more than two dozen witnesses to try to sway a federal judge's decision over how to address the company's illegal monopoly in internet search.

On Friday, that hearing concluded in the U.S. District Court for the District of Columbia. To fix the monopoly, the government has proposed aggressive measures that include forcing Google to sell its popular Chrome web browser and share proprietary data with competitors. Google has argued that small tweaks to its business practices would be more appropriate.

Both sides will offer closing arguments at the end of the month. Judge Amit P. Mehta, who is presiding over the case, is expected to reach a decision by August. His ruling could have significant implications for Google, its rivals and the way that people look for information online.

Here is what to know about what was argued at the hearing.

### What case does the hearing stem from?

In August, Judge Mehta ruled that Google had broken antitrust law when it paid companies like Apple, Samsung and Mozilla billions of dollars to automatically appear as the search engine in browsers and on smartphones. He also ruled that Google's monopoly allowed it to inflate the prices for some search ads, adding to its unfair advantage.

Judge Mehta convened the hearing last month to determine how to best address the search monopoly through measures called remedies. Executives from Google, rival search engines and artificial intelligence companies — alongside experts — testified about Google's power over the internet.

### What did the government argue?

The only way to end Google's dominance in search is by taking significant action, government lawyers said at the hearing.

Lawyers argued that Google should be forced to spin off Chrome and share search results and ads with rivals, allowing them to populate their own search engines. Other search engines and some artificial intelligence companies should get access to data on what Google users search for, as well as the websites they click on.

The government warned during the hearing that if Judge Mehta did not take action, it could propel Google into dominance of another technology, artificial intelligence. Search is in upheaval as A.I. and chatbots, like Google's Gemini, change the way people find information on the web.

"This court's remedy should be forward looking and not ignore what's on the horizon," said David Dahlquist, the government's lead litigator. "Google is using the same strategy that they did for search and now applying it to Gemini."

Eddy Cue, an Apple executive called as a witness by Google, said that "in the past two months for the first time in over 20 years," Google search queries had declined in the company's Safari browser. He attributed the drop to the growth of A.I.

### What did Google argue?

Google's lawyers said the government's proposal would endanger products that consumers love and imperil privacy and security for internet browsing.

"I think it definitely will have many unintended consequences," Sundar Pichai, Google's chief executive, testified.

Sharing Google's data with its competitors would undermine the privacy of its users, the company's lawyers said.

They pointed multiple times to a 2006 episode in which AOL released search data to aid academic researchers. Journalists were able to use leaked data to identify an individual based on her searches.

There's also plenty of competition in A.I., they said, noting the success of OpenAI's ChatGPT and other examples.

Google's lawyers instead proposed that its contracts with web browsers and smartphone companies should offer more freedom to work with competing search and A.I. services.

Mr. Pichai testified that Google had already started altering its contracts with other companies to align with its proposal in the case.

(The New York Times has sued OpenAI and its partner, Microsoft, for copyright infringement of news content related to A.I. systems. They have denied wrongdoing.)

### What did the judge say?

When Judge Mehta questioned witnesses throughout the hearing, he provided a window into his thinking.

At times, he pushed witnesses to say whether any rivals could compete with Google's search dominance absent the court's intervention.

Many of his questions revolved around A.I. and its significance, as Google battles its rivals to develop the technology that has become a major force in the tech industry.

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered) |
| --- | --- |

**NOTICE OF ENTRY OF INTERIM ORDER (I) ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, (II) ESTABLISHING PROCEDURES FOR NOTIFICATION AND TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, AND (III) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT HOLD CLAIMS AGAINST THE DEBTORS:**

**PLEASE TAKE NOTICE** that on May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a petition with the United States Bankruptcy Court for the District of New Jersey (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of or from the Debtors' estates or to exercise control over property of or from the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that on May 6, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates, (II) Establishing Procedures for Notification and Trading in Certain Claims Against the Debtors' Estates, and (III) Granting Related Relief* [Docket No. 9] (the "Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that on May 7, 2025, the Court entered the *Interim Order (I) Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates, (II) Establishing Procedures for Notification and Trading in Certain Claims Against the Debtors' Estates, and (III) Granting Related Relief* [Docket No. 135] (the "Interim Order"), approving the Record Date and Procedures for trading in claims against the Debtors' estates on an interim basis. The "Record Date" is the date that is five (5) business days after the Interim Order was entered (*i.e.*, May 14, 2025).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Interim Order, claimholders and potential purchasers of claims against the Debtors are hereby notified that claimholders that acquire claims after the Record Date in an amount that would entitle them to receive more than 4.75 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization may be subject to a required sell-down of any claims purchased after the Record Date.

**PLEASE TAKE FURTHER NOTICE** that all persons or Entities that acquired debt claims against the Debtors after the Record Date and currently hold or come to hold such claims in such an amount that the persons or Entities holding such claims would be entitled to receive more than 4.75 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization shall be required to identify themselves to the Debtors as set forth in the Procedures and file a *Declaration of Status as a Substantial Claimholder*, which is attached as Exhibit 1A to the Interim Order.

**PLEASE TAKE FURTHER NOTICE** that upon the request of any person or entity, the Debtors' proposed claims and noticing agent, Kroll Restructuring LLC, will provide a copy of the Interim Order and applicable forms of declaration as required by the Procedures within three (3) business days of receiving such a request. Complete copies of the Motion and Interim Order (including the exhibits attached thereto), with additional information about the Record Date and Procedures, are available via PACER on the Court's website at https://www.njb.uscourts.gov for a fee, or free of charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that the entry of the Interim Order shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order or parties' objection to a Declaration of Transfer, on any grounds, and that all parties' rights are expressly preserved hereby.

**PLEASE TAKE FURTHER NOTICE** that entry of the Interim Order is not a determination that a Sell-Down Order is necessary or warranted in these chapter 11 cases and the Court's review of any request for the entry of a Sell-Down Notice shall be subject to notice and a hearing.

**PLEASE TAKE FURTHER NOTICE** that the final hearing (the "Final Hearing") on the Motion shall be held on **June 6, 2025, at 11:30 a.m. (prevailing Eastern Time)**. Any objections or responses to entry of a final order on the Motion shall be filed on or before **May 30, 2025 at 4:00 p.m. (prevailing Eastern Time)**, and shall be served on: (a) the Debtors, New Rite Aid, LLC, 200 Newberry Commons, Etters, Pennsylvania 17319, Attn: David Kastin (David.Kastin@riteaid.com); (b) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), Felice Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten, Esq. (svanaalten@coleschotz.com), and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com), Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean A. Mitchell (smitchell@paulweiss.com); (c) the United States Trustee for the District of New Jersey, Attn: Jeffrey M. Sponder and Lauren Bielskie, One Newark Center, Suite 2100, Newark, NJ 07102; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the agents under the Prepetition Credit Facilities, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com), and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com); and (f) counsel to McKesson Corporation, Sidley Austin LLP, 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com), and Buchalter, A Professional Corporation, 18400 Von Karman Avenue, Suite 800 Irvine, California 92612, Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com). If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that the requirements set forth in this notice are in addition to the requirements of applicable law and do not excuse compliance therewith.

Dated: May 8, 2025, /s/ Michael D. Sirota, **COLE SCHOTZ P.C.,** Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, Interim Order, or Procedures, as applicable.

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered) |
| --- | --- |

**NOTICE OF INTERIM ORDER (I) APPROVING NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN TRANSFERS OF, AND DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO, COMMON STOCK, AND (II) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT MAY HOLD BENEFICIAL OWNERSHIP OF THE EXISTING CLASSES OF COMMON STOCK OR OTHER INTERESTS (THE "COMMON STOCK") OF NEW RITE AID, LLC:**

**PLEASE TAKE NOTICE** that on May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed petitions with the United States Bankruptcy Court for the District of New Jersey (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of or from the Debtors' estates or to exercise control over property of or from the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Notification and Hearing Procedures for Certain Transfers of, and Declarations of Worthlessness With Respect To, Common Stock, and (II) Granting Related Relief* [Docket No. 10] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on May 7, 2025, the Court entered the *Interim Order (I) Approving Notification and Hearing Procedures for Certain Transfers of, and Declarations of Worthlessness With Respect To, Common Stock, and (II) Granting Related Relief* [Docket No. 135] (the "Interim Order") approving procedures for certain transfers of, and declarations of worthlessness with respect to, Common Stock, set forth in **Exhibit 1** attached to the Interim Order (the "Procedures").[2] The Procedures are also available to view and download on the website established by the Debtors' proposed notice, claims and solicitation agent, Kroll Restructuring Administration LLC for these chapter 11 cases at http://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Interim Order, upon the request of any person or entity, the proposed notice, claims, and solicitation agent for the Debtors, Kroll Restructuring Administration LLC, will provide a copy of the Interim Order and a form of each of the declarations required to be filed by the Procedures in a reasonable period of time. Such declarations are also available via PACER on the Court's website at https://ecf.njb.uscourts.gov/ for a fee, or free of charge by accessing the Debtors' restructuring website at http://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, failure to follow the Procedures set forth in the Interim Order shall constitute a violation of, among other things, the automatic stay provisions of section 362 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, a Substantial Shareholder may not consummate any purchase, sale, or other transfer of Common Stock or Beneficial Ownership of Common Stock in violation of the Procedures, and any such transaction in violation of the Procedures shall be null and void *ab initio*.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, the Procedures shall apply to the holding and transfers of Common Stock or any Beneficial Ownership therein by a Substantial Shareholder or someone who may become a Substantial Shareholder.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, a 50-Percent Shareholder may not claim a worthless stock deduction with respect to Common Stock or Beneficial Ownership of Common Stock in violation of the Procedures, and any such deduction in violation of the Procedures shall be null and void *ab initio*, and the 50-Percent Shareholder shall be required to file an amended tax return revoking such proposed deduction.

**PLEASE TAKE FURTHER NOTICE** that the final hearing (the "Final Hearing") on the Motion shall be held on **June 6, 2025, at 11:30 a.m. (prevailing Eastern Time)**. Any objections or responses to entry of a final order on the Motion shall be filed on or before **May 30, 2025 at 4:00 p.m. (prevailing Eastern Time)**, and shall be served on: (a) the Debtors, New Rite Aid, LLC, 200 Newberry Commons, Etters, Pennsylvania 17319, Attn: David Kastin (David.Kastin@riteaid.com); (b) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), Felice Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten, Esq. (svanaalten@coleschotz.com), and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com), Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean A. Mitchell (smitchell@paulweiss.com); (c) the United States Trustee for the District of New Jersey, Attn: Jeffrey M. Sponder and Lauren Bielskie, One Newark Center, Suite 2100, Newark, NJ 07102; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the agents under the Prepetition Credit Facilities, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com), and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com); and (f) counsel to McKesson Corporation, Sidley Austin LLP, 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com), and Buchalter, A Professional Corporation, 18400 Von Karman Avenue, Suite 800 Irvine, California 92612, Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com). If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that nothing in the Interim Order shall preclude any person desirous of acquiring any Common Stock from requesting relief from the Interim Order from this Court, subject to the Debtors' and the other Notice Parties' rights to oppose such relief.

**PLEASE TAKE FURTHER NOTICE** that, other than to the extent that the Interim Order expressly conditions or restricts trading in Common Stock, nothing in the Interim Order or in the Motion shall, or shall be deemed to, prejudice, impair, or otherwise alter or affect the rights of any holders of Common Stock, including in connection with the treatment of any such stock under any significant transaction occurring in connection with these proceeding, any chapter 11 plan, or any applicable bankruptcy court order.

**PLEASE TAKE FURTHER NOTICE** that any prohibited purchase, sale, other transfer of, or declaration of worthlessness with respect to Common Stock, Beneficial Ownership thereof, or option with respect thereto in violation of the Interim Order is prohibited and shall be null and void *ab initio* and may be subject to additional sanctions as this court may determine.

**PLEASE TAKE FURTHER NOTICE** that the requirements set forth in the Interim Order are in addition to the requirements of applicable law and do not excuse compliance therewith.

Dated: May 8, 2025, /s/ Michael D. Sirota, **COLE SCHOTZ P.C.,** Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Order or the Motion, as applicable.

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered) |
| --- | --- |

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that on May 7, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* [Docket No. 142] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all or a portion of the Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order on a final basis with respect to the Pharmacy Assets (defined below) and on an interim basis with respect to the Remaining Assets (defined below). The Assets for sale include: (a) the Debtors' prescription files (and related records), pharmacy inventory, and any assets related to or requested to be acquired in connection with the foregoing (including, without limitation, unexpired leases and other real and personal property associated with the sale of any retail pharmacy locations as a going concern basis) (collectively, the "Pharmacy Assets"); and (b) all of the Debtors' assets that are not Pharmacy Assets, including intellectual property, the Thrifty Ice Cream business and related assets, various technology and software assets, including proprietary pharmacy management software (i.e., NexGen), the central prescription fill facility, other real and personal property, unexpired leases, executory contracts, equipment, inventory, supplies, insurance proceeds, prepaid expenses and deposits, and books and records (collectively, the "Other Assets", and together with the Pharmacy Assets, the "Assets").

**PLEASE TAKE FURTHER NOTICE** that **all interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**Pharmacy Assets Dates And Deadlines**

**PLEASE TAKE FURTHER NOTICE** that all Potential Bidders that are party to a Confidentiality Agreement with the Debtors as of the Petition Date (the "Prepetition NDA Bidders") must submit a Qualified Bid for the Pharmacy Assets in accordance with the Bidding Procedures so that it is actually received by **May 13, 2025 at 6:00 a.m., prevailing Eastern Time** (the "Pharmacy Assets Bid Deadline"). **A Prepetition NDA Bidder will be eligible to be a Potential Bidder for Pharmacy Assets (including any Remaining Pharmacy Assets) if, and only if, such Prepetition NDA Bidder submits a Qualified Bid for such Pharmacy Assets by the Pharmacy Assets Bid Deadline.**

**PLEASE TAKE FURTHER NOTICE** that all Potential Bidders that are not party to a Confidentiality Agreement with the Debtors as of the Petition Date (a "Non-Prepetition NDA Bidder") may be a Potential Bidder and may submit a Bid or an indication of interest for the Pharmacy Assets by the Pharmacy Assets Bid Deadline; *provided* that such Potential Bidders must submit a Qualified Bid by the Pharmacy Assets Bid Deadline for such Pharmacy Assets to be entitled to participate in the Pharmacy Assets Auction (as defined below). Non-Prepetition NDA Bidders that do not submit a Bid for the Pharmacy Assets by the Pharmacy Assets Bid Deadline shall be entitled to participate in the sale process for any remaining Pharmacy Assets not sold following the Pharmacy Assets Auction (the "Remaining Pharmacy Assets", and together with the "Other Assets", the "Remaining Assets") by the deadlines set forth for the Sale of the Remaining Assets below.

**PLEASE TAKE FURTHER NOTICE** that **only Non-Prepetition NDA Bidders will be eligible to submit a Qualified Bid for Remaining Pharmacy Assets, if any.**

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors may conduct an auction (the "Pharmacy Assets Auction") of the Pharmacy Assets on **May 14, 2025, at 9:00 a.m. (prevailing Eastern Time)** by videoconference or in such other manner as permitted by the Bidding Procedures Order. Instructions for accessing the Pharmacy Auction by videoconference will be provided to the applicable Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties, the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Pharmacy Assets Auction, and only Qualified Bidders will be entitled to make Overbids at the Pharmacy Assets Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the Sale of any Pharmacy Assets at a hearing scheduled to commence on **May 21, 2025, at 11:30 a.m. (prevailing Eastern Time)**, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of each Sale of the Pharmacy Assets must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before May 19, 2025, at 5:00 p.m. (prevailing Eastern Time)** by (i) the Bid Notice Parties, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to any official committees of unsecured creditors appointed in these chapter 11 cases, (iv) the applicable Successful Bidder(s), if known, and (v) any other party that has filed a notice of appearance in these chapter 11 cases.

**Remaining Assets Dates and Deadlines**

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all non-binding indications of interest for the Remaining Assets must be received pursuant to the Bidding Procedures is **May 30, 2025 at 5:00 p.m., (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Remaining Assets must be received pursuant to the Bidding Procedures is **June 13, 2025 at 5:00 p.m., prevailing Eastern Time** (the "Remaining Assets Bid Deadline").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors may conduct an auction (the "Remaining Assets Auction") of the Remaining Assets on **June 20, 2025, at 9:00 a.m. (prevailing Eastern Time)** by videoconference. Instructions for accessing the Pharmacy Auction by videoconference will be provided to the Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties, the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Remaining Assets Auction, and only Qualified Bidders will be entitled to make Overbids at the Remaining Assets Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the Sale of any Remaining Assets at a hearing scheduled to commence on or before **June 25, 2025**, at a time to be determined by the Court, or as soon thereafter as the Debtors may be heard, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of each Sale of the Remaining Assets must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before June 24, 2025, at 5:00 p.m. (prevailing Eastern Time)** by (i) the Bid Notice Parties, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to any official committees of unsecured creditors appointed in these chapter 11 cases, (iv) the applicable Successful Bidder(s), if known, and (v) any other party that has filed a notice of appearance in these chapter 11 cases.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION. ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR THE SALE TRANSACTIONS, AS APPLICABLE, ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures, the Bidding Procedures Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njb.uscourts.gov.

Dated: May 8, 2025, /s/ Michael D. Sirota, **COLE SCHOTZ P.C.,** Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, Email: msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, Email: arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

**Exhibit B**



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

May 14, 2025

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

5/10/2025, NY/NATL, pg B3

Larnyce Tabron

UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11<br>Case No. 25-14861 (MBK)<br>(Jointly Administered) |
| --- | --- |

**NOTICE OF INTERIM ORDER (I) APPROVING NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN TRANSFERS OF, AND DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO, COMMON STOCK, AND (II) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT MAY HOLD BENEFICIAL OWNERSHIP OF THE EXISTING CLASSES OF COMMON STOCK OR OTHER INTERESTS (THE "COMMON STOCK") OF NEW RITE AID, LLC:**

Sworn to me this 14th day of May, 2025

Shannon Schmidt
Online Notary Public
State of New York
Nassau County
Commission #: 01SC0033223
Commission Expires: 01/28/2029

# *British Airways Makes a Deal With Boeing For 32 Planes*

By ESHE NELSON

LONDON — British Airways will get 32 new Boeing planes, in a deal worth nearly $13 billion, its parent company announced on Friday, a day after U.S. officials teased a big order was coming for America's largest plane maker.

IAG, which owns British Airways and other European airlines, said it had ordered the Boeing aircraft as well as 21 planes from Airbus, a French aerospace company, to be delivered between 2028 and 2033. Most of the planes were replacements for aging aircraft, but about a third were to expand the group's fleet as it took a bet on long-haul flights.

The announcement came after Howard Lutnick, the U.S. commerce secretary, said on Thursday that Britain would buy $10 billion worth of Boeing planes as he announced details of what he called a "strong" trade deal between the two countries. The plane order, however, is a commercial agreement and not part of the governments' trade deal.

Mr. Lutnick also said the United States would scrap tariffs on jet engines and other parts from Rolls-Royce, a British company, although the arrangement was not included in the documents published on Thursday by the U.S. and British governments.

ERIC LEE/THE NEW YORK TIMES

**Friday's announcement came a day after Commerce Secretary Howard Lutnick made a similar statement during remarks about the "strong" trade deal between the U.S. and U.K.**

On Thursday, the two nations agreed on a framework to lower U.S. tariffs on cars and steel for British imports, while Britain increased market access for American beef and ethanol. President Trump and Keir Starmer, the British prime minister, warmly congratulated each other on agreeing to the first trade deal since the U.S. administration substantially raised tariffs on its trading partners. But this agreement is not final: More negotiations will take place, and it is unclear when the tariff reductions will take effect.

The Boeing order, announced alongside IAG's quarterly earnings report, was for 787-10 aircraft with a list price of $397 million (in dollar pricing from January) each, making the order for 32 planes worth $12.7 billion. But the company said it had secured a discount on that price. IAG has the option to buy 10 more planes.

IAG also said it bought 21 Airbus A330-900neo aircraft for its other airlines, which include Aer Lingus and Iberia, in a deal worth nearly $8 billion, and with the option to buy 13 more.

***An agreement worth nearly $13 billion; the carrier also bought 21 Airbus long-haul jets.***

Luis Gallego, the chief executive of IAG, described it as a "milestone" order that was part of a long-term strategy to upgrade its fleet, including to more energy-efficient planes.

"Looking ahead to the next decade, these new aircraft will enable us to strengthen our core markets and further improve our customer experience, while continuing to drive long-term value for our shareholders," he said.

British Airways flies both Boeing and Airbus planes. In March, IAG ordered six aircraft from each company for British Airways, which will be delivered later in the decade. Those planes are not part of the order announced on Friday.

IAG made the announcement as it reported 198 million euros in operating profit in the first quarter of 2025, up from €68 million a year ago. The company's share price rose nearly 3 percent on the London Stock Exchange.

The company also said the closure of Heathrow Airport for a day in March, because of a power outage and a nearby fire, cost British Airways about €50 million.

# *Newark Airport Experiences Another Radar Outage*

By NIRAJ CHOKSHI

An air traffic control facility that guides planes at Newark Liberty International Airport had a brief radar outage on Friday morning, the latest technological disruption at one of the nation's busiest airports.

The outage, which affected communications and radar displays at a facility in Philadelphia, occurred just before 4 a.m. and lasted about 90 seconds, the Federal Aviation Administration said.

A similar 90-second outage last week, on a Monday afternoon, upended travel at the airport, leaving controllers unable to communicate with pilots and keep planes from crashing into one another. Several controllers working that afternoon were distressed by that episode and took time off, which resulted in several days of low staffing at the facility, causing widespread flight delays and cancellations.

The problems at Newark and other aviation safety concerns have become a major challenge for President Trump. Just days after he took office, an American Airlines plane crashed into an Army helicopter near Ronald Reagan National Airport in Washington, killing everybody aboard both aircraft.

Karoline Leavitt, the White House press secretary, told reporters on Friday that a "glitch in the system" had been caused in the morning by "the same telecom and software issues that were raised last week."

"Everything went back online after the brief outage, and there was no operational impact," Ms. Leavitt said. Federal transportation officials "are working to address this technical issue tonight, to prevent further outages," and are planning to install new fiber-optic cables from the Newark airport to Philadelphia, she said. The goal is to have the system fully upgraded by the summer, she added.

On Thursday, the transportation secretary, Sean Duffy, announced a plan to modernize and overhaul the country's air traffic control system. The proposal, which will cost billions of dollars, includes investing in new technology and facilities. But details remain unclear, and the plan will require approval from Congress.

The latest outage on Friday is likely to intensify pressure on administration officials and lawmakers to act.

An air traffic controller directing traffic at Newark early Friday mentioned the latest outage to the pilot of FedEx Flight 1989 when it occurred, according to a publicly available recording of air traffic control communications with pilots.

"FedEx 1989, I'm going to hand you off here — our scopes just went black again," the controller said. "If you care about this, contact your airline and try to get some pressure for them to fix this stuff."

"Sorry to hear about that," the pilot replied.

In a separate exchange, a controller told another pilot about the outage and instructed the pilot to maintain distance if the pilot could not reach the controller.

ABC News reported on the outage earlier.

Flights to and from Newark were delayed on Friday morning. The F.A.A. also initiated a "ground delay program," which remained in effect midday. It held flights destined for Newark at their origin airports by an average of more than four hours because of rain in and around New York City. The Newark airport is about a 17-mile drive from Midtown Manhattan.

**A Key Airport in Chaos**

A communications lapse on April 28 led to added delays and cancellations at Newark.

**Cancellations at Newark vs. Other New York Airports**

The nearby airports of LaGuardia and Kennedy also saw a slight, though not as severe, uptick in cancelled flights.

Source: Flightradar24 THE NEW YORK TIMES

A spokesman for the Port Authority of New York and New Jersey, which operates Newark, said the outage did not affect passenger operations at the airport.

Newark has long had problems. The F.A.A. had recently hoped to address a staffing shortfall among air traffic controllers last summer by moving some operations for Newark from Westbury, N.Y., on Long Island, to Philadelphia. Controllers at the facility in New York had fought the relocation, but the F.A.A. said it could recruit more controllers by moving the work to a more affordable area.

About 10 percent of flights to and from Newark were canceled from the start of last week through Wednesday, according to data from FlightAware, a flight tracking service. The two other airports serving the New York region fared much better. Over the same period, only about 2 percent of flights were canceled at LaGuardia Airport and 1 percent at Kennedy International Airport. Newark also saw far more delays than the other two airports.

The disruptions are particularly frustrating for United Airlines, which counts Newark as one of its eight airport hubs and dominates traffic there. More than two out of three flights to and from the airport are sold by United. A variety of airlines account for the remaining flights, according to Cirium, an aviation data firm.

In an email to employees this week, United's chief executive, Scott Kirby, said flights to and from the airport remained safe. Newark is a "crown jewel of the region," he said, but the airport is overwhelmed, with more flights scheduled on most afternoons and evenings than the F.A.A. has said it can handle.

Michael Levenson, Neil Vigdor and Patrick McGeehan contributed reporting.

# Setting Stage for Judge's Decision on Fixing Google's Monopoly

By DAVID McCABE

WASHINGTON — For the past three weeks, the Justice Department and Google have questioned more than two dozen witnesses to try to sway a federal judge's decision over how to address the company's illegal monopoly in internet search.

On Friday, that hearing concluded in the U.S. District Court for the District of Columbia. To fix the monopoly, the government has proposed aggressive measures that include forcing Google to sell its popular Chrome web browser and share proprietary data with competitors. Google has argued that small tweaks to its business practices would be more appropriate.

Both sides will offer closing arguments at the end of the month. Judge Amit P. Mehta, who is presiding over the case, is expected to reach a decision by August. His ruling could have significant implications for Google, its rivals and the way that people look for information online.

Here is what to know about what was argued at the hearing.

### What case does the hearing stem from?

In August, Judge Mehta ruled that Google had broken antitrust law when it paid companies like Apple, Samsung and Mozilla billions of dollars to automatically appear as the search engine in browsers and on smartphones. He also ruled that Google's monopoly allowed it to inflate the prices for some search ads, adding to its unfair advantage.

Judge Mehta convened the hearing last month to determine how to best address the search monopoly through measures called remedies. Executives from Google, rival search engines and artificial intelligence companies — alongside experts — testified about Google's power over the internet.

### What did the government argue?

The only way to end Google's dominance in search is by taking significant action, government lawyers said at the hearing.

Lawyers argued that Google should be forced to spin off Chrome and share search results and ads with rivals, allowing them to populate their own search engines. Other search engines and some artificial intelligence companies should get access to data on what Google users search for, as well as the websites they click on.

The government warned during the hearing that if Judge Mehta did not take action, it could propel Google into dominance of another technology, artificial intelligence. Search is in upheaval as A.I. and chatbots, like Google's Gemini, change the way people find information on the web.

"This court's remedy should be forward looking and not ignore what's on the horizon," said David Dahlquist, the government's lead litigator. "Google is using the same strategy that they did for search and now applying it to Gemini."

Eddy Cue, an Apple executive called as a witness by Google, said that "in the past two months for the first time in over 20 years," Google search queries had declined in the company's Safari browser. He attributed the drop to the growth of A.I.

### What did Google argue?

Google's lawyers said the government's proposal would endanger products that consumers love and imperil privacy and security for internet browsing.

"I think it definitely will have many unintended consequences," Sundar Pichai, Google's chief executive, testified.

Sharing Google's data with its competitors would undermine the privacy of its users, the company's lawyers said.

They pointed multiple times to a 2006 episode in which AOL released search data to aid academic researchers. Journalists were able to use leaked data to identify an individual based on her searches.

There's also plenty of competition in A.I., they said, noting the success of OpenAI's ChatGPT and other examples.

Google's lawyers instead proposed that its contracts with web browsers and smartphone companies should offer more freedom to work with competing search and A.I. services.

Mr. Pichai testified that Google had already started altering its contracts with other companies to align with its proposal in the case.

(The New York Times has sued OpenAI and its partner, Microsoft, for copyright infringement of news content related to A.I. systems. They have denied wrongdoing.)

### What did the judge say?

When Judge Mehta questioned witnesses throughout the hearing, he provided a window into his thinking.

At times, he pushed witnesses to say whether any rivals could compete with Google's search dominance absent the court's intervention.

Many of his questions revolved around A.I. and its significance, as Google battles its rivals to develop the technology that has become a major force in the tech industry.

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered)

**NOTICE OF ENTRY OF INTERIM ORDER (I) ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, (II) ESTABLISHING PROCEDURES FOR NOTIFICATION AND TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, AND (III) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT HOLD CLAIMS AGAINST THE DEBTORS:**

**PLEASE TAKE NOTICE** that on May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a petition with the United States Bankruptcy Court for the District of New Jersey (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of or from the Debtors' estates or to exercise control over property of or from the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that on May 6, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates, (II) Establishing Procedures for Notification and Trading in Certain Claims Against the Debtors' Estates, and (III) Granting Related Relief* [Docket No. 9] (the "Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that on May 7, 2025, the Court entered the *Interim Order (I) Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates, (II) Establishing Procedures for Notification and Trading in Certain Claims Against the Debtors' Estates, and (III) Granting Related Relief* [Docket No. 135] (the "Interim Order"), approving the Record Date and Procedures for trading in claims against the Debtors' estates on an interim basis. The "Record Date" is the date that is five (5) business days after the Interim Order was entered (*i.e.*, May 14, 2025).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Interim Order, claimholders and potential purchasers of claims against the Debtors are hereby notified that claimholders that acquire claims after the Record Date in an amount that would entitle them to receive more than 4.75 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization may be subject to a required sell-down of any claims purchased after the Record Date.

**PLEASE TAKE FURTHER NOTICE** that all persons or Entities that acquired debt claims against the Debtors after the Record Date and currently hold or come to hold such claims in such an amount that the persons or Entities holding such claims would be entitled to receive more than 4.75 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization shall be required to identify themselves to the Debtors as set forth in the Procedures and file a *Declaration of Status as a Substantial Claimholder*, which is attached as Exhibit 1A to the Interim Order.

**PLEASE TAKE FURTHER NOTICE** that upon the request of any person or entity, the Debtors' proposed claims and noticing agent, Kroll Restructuring LLC, will provide a copy of the Interim Order and applicable forms of declaration as required by the Procedures within three (3) business days of receiving such a request. Complete copies of the Motion and Interim Order (including the exhibits attached thereto), with additional information about the Record Date and Procedures, are available via PACER on the Court's website at https://www.njb.uscourts.gov for a fee, or free of charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that the entry of the Interim Order shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order or parties' objection to a Declaration of Transfer, on any grounds, and that all parties' rights are expressly preserved hereby.

**PLEASE TAKE FURTHER NOTICE** that entry of the Interim Order is not a determination that a Sell-Down Order is necessary or warranted in these chapter 11 cases and the Court's review of any request for the entry of a Sell-Down Notice shall be subject to notice and a hearing.

**PLEASE TAKE FURTHER NOTICE** that the final hearing (the "Final Hearing") on the Motion shall be held on **June 6, 2025, at 11:30 a.m. (prevailing Eastern Time)**. Any objections or responses to entry of a final order on the Motion shall be filed on or before **May 30, 2025 at 4:00 p.m. (prevailing Eastern Time)**, and shall be served on: (a) the Debtors, New Rite Aid, LLC, 200 Newberry Commons, Etters, Pennsylvania 17319, Attn: David Kastin (David.Kastin@riteaid.com); (b) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), Felice Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten, Esq. (svanaalten@coleschotz.com), and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com), Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean A. Mitchell (smitchell@paulweiss.com); (c) the United States Trustee for the District of New Jersey, Attn: Jeffrey M. Sponder and Lauren Bielskie, One Newark Center, Suite 2100, Newark, NJ 07102; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the agents under the Prepetition Credit Facilities, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com), and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com); and (f) counsel to McKesson Corporation, Sidley Austin LLP, 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com), and Buchalter, A Professional Corporation, 18400 Von Karman Avenue, Suite 800 Irvine, California 92612, Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com). If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that the requirements set forth in this notice are in addition to the requirements of applicable law and do not excuse compliance therewith.

Dated: May 8, 2025, /s/ Michael D. Sirota, **COLE SCHOTZ P.C.,** Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, Interim Order, or Procedures, as applicable.

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered)

**NOTICE OF INTERIM ORDER (I) APPROVING NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN TRANSFERS OF, AND DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO, COMMON STOCK, AND (II) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT MAY HOLD BENEFICIAL OWNERSHIP OF THE EXISTING CLASSES OF COMMON STOCK OR OTHER INTERESTS (THE "COMMON STOCK") OF NEW RITE AID, LLC:**

**PLEASE TAKE NOTICE** that on May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed petitions with the United States Bankruptcy Court for the District of New Jersey (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of or from the Debtors' estates or to exercise control over property of or from the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Notification and Hearing Procedures for Certain Transfers of, and Declarations of Worthlessness With Respect To, Common Stock, and (II) Granting Related Relief* [Docket No. 10] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on May 7, 2025, the Court entered the *Interim Order (I) Approving Notification and Hearing Procedures for Certain Transfers of, and Declarations of Worthlessness With Respect To, Common Stock, and (II) Granting Related Relief* [Docket No. 135] (the "Interim Order") approving procedures for certain transfers of, and declarations of worthlessness with respect to, Common Stock, set forth in **Exhibit 1** attached to the Interim Order (the "Procedures").[2] The Procedures are also available to view and download on the website established by the Debtors' proposed notice, claims and solicitation agent, Kroll Restructuring Administration LLC for these chapter 11 cases at http://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Interim Order, upon the request of any person or entity, the proposed notice, claims, and solicitation agent for the Debtors, Kroll Restructuring Administration LLC, will provide a copy of the Interim Order and a form of each of the declarations required to be filed by the Procedures in a reasonable period of time. Such declarations are also available via PACER on the Court's website at https://ecf.njb.uscourts.gov/ for a fee, or free of charge by accessing the Debtors' restructuring website at http://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, failure to follow the Procedures set forth in the Interim Order shall constitute a violation of, among other things, the automatic stay provisions of section 362 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, a Substantial Shareholder may not consummate any purchase, sale, or other transfer of Common Stock or Beneficial Ownership of Common Stock in violation of the Procedures, and any such transaction in violation of the Procedures shall be null and void *ab initio*.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, the Procedures shall apply to the holding and transfers of Common Stock or any Beneficial Ownership therein by a Substantial Shareholder or someone who may become a Substantial Shareholder.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, a 50-Percent Shareholder may not claim a worthless stock deduction with respect to Common Stock or Beneficial Ownership of Common Stock in violation of the Procedures, and any such deduction in violation of the Procedures shall be null and void *ab initio*, and the 50-Percent Shareholder shall be required to file an amended tax return revoking such proposed deduction.

**PLEASE TAKE FURTHER NOTICE** that the final hearing (the "Final Hearing") on the Motion shall be held on **June 6, 2025, at 11:30 a.m. (prevailing Eastern Time)**. Any objections or responses to entry of a final order on the Motion shall be filed on or before **May 30, 2025 at 4:00 p.m. (prevailing Eastern Time)**, and shall be served on: (a) the Debtors, New Rite Aid, LLC, 200 Newberry Commons, Etters, Pennsylvania 17319, Attn: David Kastin (David.Kastin@riteaid.com); (b) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), Felice Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten, Esq. (svanaalten@coleschotz.com), and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com), Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean A. Mitchell (smitchell@paulweiss.com); (c) the United States Trustee for the District of New Jersey, Attn: Jeffrey M. Sponder and Lauren Bielskie, One Newark Center, Suite 2100, Newark, NJ 07102; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the agents under the Prepetition Credit Facilities, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com), and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com); and (f) counsel to McKesson Corporation, Sidley Austin LLP, 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com), and Buchalter, A Professional Corporation, 18400 Von Karman Avenue, Suite 800 Irvine, California 92612, Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com). If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that nothing in the Interim Order shall preclude any person desirous of acquiring any Common Stock from requesting relief from the Interim Order from this Court, subject to the Debtors' and the other Notice Parties' rights to oppose such relief.

**PLEASE TAKE FURTHER NOTICE** that, other than to the extent that the Interim Order expressly conditions or restricts trading in Common Stock, nothing in the Interim Order or in the Motion shall, or shall be deemed to, prejudice, impair, or otherwise alter or affect the rights of any holders of Common Stock, including in connection with the treatment of any such stock under any significant transaction occurring in connection with these proceeding, any chapter 11 plan, or any applicable bankruptcy court order.

**PLEASE TAKE FURTHER NOTICE** that any prohibited purchase, sale, other transfer of, or declaration of worthlessness with respect to Common Stock, Beneficial Ownership thereof, or option with respect thereto in violation of the Interim Order is prohibited and shall be null and void *ab initio* and may be subject to additional sanctions as this court may determine.

**PLEASE TAKE FURTHER NOTICE** that the requirements set forth in the Interim Order are in addition to the requirements of applicable law and do not excuse compliance therewith.

Dated: May 8, 2025, /s/ Michael D. Sirota, **COLE SCHOTZ P.C.,** Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Order or the Motion, as applicable.

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered)

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that on May 7, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* [Docket No. 142] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all or a portion of the Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order on a final basis with respect to the Pharmacy Assets (defined below) and on an interim basis with respect to the Remaining Assets (defined below). The Assets for sale include: (a) the Debtors' prescription files (and related records), pharmacy inventory, and any assets related to or requested to be acquired in connection with the foregoing (including, without limitation, unexpired leases and other real and personal property associated with the sale of any retail pharmacy locations on a going concern basis) (collectively, the "Pharmacy Assets"); and (b) all of the Debtors' assets that are not Pharmacy Assets, including intellectual property, the Thrifty Ice Cream business and related assets, various technology and software assets, including proprietary pharmacy management software (i.e., NexGen), the central prescription fill facility, other real and personal property, unexpired leases, executory contracts, equipment, inventory, supplies, insurance proceeds, prepaid expenses and deposits, and books and records (collectively, the "Other Assets", and together with the Pharmacy Assets, the "Assets").

**PLEASE TAKE FURTHER NOTICE that all interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**Pharmacy Assets Dates And Deadlines**

**PLEASE TAKE FURTHER NOTICE** that all Potential Bidders that are party to a Confidentiality Agreement with the Debtors as of the Petition Date (the "Prepetition NDA Bidders") must submit a Qualified Bid for the Pharmacy Assets in accordance with the Bidding Procedures so that it is actually received by **May 13, 2025 at 6:00 a.m., prevailing Eastern Time** (the "Pharmacy Assets Bid Deadline"). **A Prepetition NDA Bidder will be eligible to be a Potential Bidder for Pharmacy Assets (including any Remaining Pharmacy Assets) if, and only if, such Prepetition NDA Bidder submits a Qualified Bid for such Pharmacy Assets by the Pharmacy Assets Bid Deadline.**

**PLEASE TAKE FURTHER NOTICE** that all Potential Bidders that are not party to a Confidentiality Agreement with the Debtors as of the Petition Date (a "Non-Prepetition NDA Bidder") may be a Potential Bidder and may submit a Bid or an indication of interest for the Pharmacy Assets by the Pharmacy Assets Bid Deadline; *provided* that such Potential Bidders must submit a Qualified Bid by the Pharmacy Assets Bid Deadline for such Pharmacy Assets to be entitled to participate in the Pharmacy Assets Auction (as defined below). Non-Prepetition NDA Bidders that do not submit a Bid for the Pharmacy Assets by the Pharmacy Assets Bid Deadline shall be entitled to participate in the sale process for any remaining Pharmacy Assets not sold following the Pharmacy Assets Auction (the "Remaining Pharmacy Assets", and together with the "Other Assets", the "Remaining Assets") by the deadlines set forth for the Sale of the Remaining Assets below.

**PLEASE TAKE FURTHER NOTICE** that **only Non-Prepetition NDA Bidders will be eligible to submit a Qualified Bid for Remaining Pharmacy Assets, if any.**

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors may conduct an auction (the "Pharmacy Assets Auction") of the Pharmacy Assets on **May 14, 2025, at 9:00 a.m. (prevailing Eastern Time)** by videoconference or in such other manner as permitted by the Bidding Procedures Order. Instructions for accessing the Pharmacy Auction by videoconference will be provided to the applicable Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties, the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Pharmacy Assets Auction, and only Qualified Bidders will be entitled to make Overbids at the Pharmacy Assets Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the Sale of any Pharmacy Assets at a hearing scheduled to commence on **May 21, 2025, at 11:30 a.m. (prevailing Eastern Time)**, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of each Sale of the Pharmacy Assets must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before May 19, 2025, at 5:00 p.m. (prevailing Eastern Time)** by (i) the Bid Notice Parties, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to any official committees of unsecured creditors appointed in these chapter 11 cases, (iv) the applicable Successful Bidder(s), if known, and (v) any other party that has filed a notice of appearance in these chapter 11 cases.

**Remaining Assets Dates and Deadlines**

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all non-binding indications of interest for the Remaining Assets must be received pursuant to the Bidding Procedures is **May 30, 2025 at 5:00 p.m., (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Remaining Assets must be received pursuant to the Bidding Procedures is **June 13, 2025 at 5:00 p.m., prevailing Eastern Time** (the "Remaining Assets Bid Deadline").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors may conduct an auction (the "Remaining Assets Auction") of the Remaining Assets on **June 20, 2025, at 9:00 a.m. (prevailing Eastern Time)** by videoconference. Instructions for accessing the Pharmacy Auction by videoconference will be provided to the Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties, the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Remaining Assets Auction, and only Qualified Bidders will be entitled to make Overbids at the Remaining Assets Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the Sale of any Remaining Assets at a hearing scheduled to commence on or before **June 25, 2025**, at a time to be determined by the Court, or as soon thereafter as the Debtors may be heard, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of each Sale of any Remaining Assets must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before June 24, 2025, at 5:00 p.m. (prevailing Eastern Time)** by (i) the Bid Notice Parties, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to any official committees of unsecured creditors appointed in these chapter 11 cases, (iv) the applicable Successful Bidder(s), if known, and (v) any other party that has filed a notice of appearance in these chapter 11 cases.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION. ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR THE SALE TRANSACTIONS, AS APPLICABLE, ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures, the Bidding Procedures Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njb.uscourts.gov.

Dated: May 8, 2025, /s/ Michael D. Sirota, **COLE SCHOTZ P.C.,** Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

**Exhibit C**



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

May 14, 2025

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

5/10/2025, NY/NATL, pg B3

______________________________

Larnyce Tabron

UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered) |
| --- | --- |

**NOTICE OF ENTRY OF INTERIM ORDER (I) ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, (II) ESTABLISHING PROCEDURES FOR NOTIFICATION AND TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, AND (III) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT HOLD CLAIMS AGAINST THE DEBTORS:**

[illegible]

Sworn to me this 14th day of May, 2025

Shannon Schmidt
Online Notary Public
State of New York
Nassau County
Commission #: 01SC0033223
Commission Expires: 01/28/2029

# British Airways Makes a Deal With Boeing For 32 Planes

By ESHE NELSON

LONDON — British Airways will get 32 new Boeing planes, in a deal worth nearly $13 billion, its parent company announced on Friday, a day after U.S. officials teased a big order was coming for America's largest plane maker.

IAG, which owns British Airways and other European airlines, said it had ordered the Boeing aircraft as well as 21 planes from Airbus, a French aerospace company, to be delivered between 2028 and 2033. Most of the planes were replacements for aging aircraft, but about a third were to expand the group's fleet as it took a bet on long-haul flights.

The announcement came after Howard Lutnick, the U.S. commerce secretary, said on Thursday that Britain would buy $10 billion worth of Boeing planes as he announced details of what he called a "strong" trade deal between the two countries. The plane order, however, is a commercial agreement and not part of the governments' trade deal.

Mr. Lutnick also said the United States would scrap tariffs on jet engines and other parts from

ERIC LEE/THE NEW YORK TIMES

**Friday's announcement came a day after Commerce Secretary Howard Lutnick made a similar statement during remarks about the "strong" trade deal between the U.S. and U.K.**

Rolls-Royce, a British company, although the arrangement was not included in the documents published on Thursday by the U.S. and British governments.

On Thursday, the two nations agreed on a framework to lower U.S. tariffs on cars and steel for British imports, while Britain increased market access for American beef and ethanol. President Trump and Keir Starmer, the British prime minister, warmly congratulated each other on agreeing to the first trade deal since the U.S. administration substantially raised tariffs on its trading partners. But this agreement is not final: More negotiations will take place, and it is unclear when the tariff reductions will take effect.

The Boeing order, announced alongside IAG's quarterly earnings report, was for 787-10 aircraft with a list price of $397 million (in dollar pricing from January) each, making the order for 32 planes worth $12.7 billion. But the company said it had secured a discount on that price. IAG has the option to buy 10 more planes.

IAG also said it bought 21 Airbus A330-900neo aircraft for its

***An agreement worth nearly $13 billion; the carrier also bought 21 Airbus long-haul jets.***

other airlines, which include Aer Lingus and Iberia, in a deal worth nearly $8 billion, and with the option to buy 13 more.

Luis Gallego, the chief executive of IAG, described it as a "milestone" order that was part of a long-term strategy to upgrade its fleet, including to more energy-efficient planes.

"Looking ahead to the next decade, these new aircraft will enable us to strengthen our core markets and further improve our customer experience, while continuing to drive long-term value for our shareholders," he said.

British Airways flies both Boeing and Airbus planes. In March, IAG ordered six aircraft from each company for British Airways, which will be delivered later in the decade. Those planes are not part of the order announced on Friday.

IAG made the announcement as it reported 198 million euros in operating profit in the first quarter of 2025, up from €68 million a year ago. The company's share price rose nearly 3 percent on the London Stock Exchange.

The company also said the closure of Heathrow Airport for a day in March, because of a power outage and a nearby fire, cost British Airways about €50 million.

# Newark Airport Experiences Another Radar Outage

By NIRAJ CHOKSHI

An air traffic control facility that guides planes at Newark Liberty International Airport had a brief radar outage on Friday morning, the latest technological disruption at one of the nation's busiest airports.

The outage, which affected communications and radar displays at a facility in Philadelphia, occurred just before 4 a.m. and lasted about 90 seconds, the Federal Aviation Administration said.

A similar 90-second outage last week, on a Monday afternoon, upended travel at the airport, leaving controllers unable to communicate with pilots and keep planes from crashing into one another. Several controllers working that afternoon were distressed by that episode and took time off, which resulted in several days of low staffing at the facility, causing widespread flight delays and cancellations.

The problems at Newark and other aviation safety concerns have become a major challenge for President Trump. Just days after he took office, an American Airlines plane crashed into an Army helicopter near Ronald Reagan National Airport in Washington, killing everybody aboard both aircraft.

Karoline Leavitt, the White House press secretary, told reporters on Friday that a "glitch in the system" had been caused in the morning by "the same telecom and software issues that were raised last week."

"Everything went back online after the brief outage, and there was no operational impact," Ms. Leavitt said. Federal transportation officials "are working to address this technical issue tonight, to prevent further outages," and are planning to install new fiber-optic cables from the Newark airport to Philadelphia, she said. The goal is to have the system fully upgraded by the summer, she added.

On Thursday, the transportation secretary, Sean Duffy, announced a plan to modernize and overhaul the country's air traffic control system. The proposal, which will cost billions of dollars, includes investing in new technology and facilities. But details remain unclear, and the plan will require approval from Congress.

The latest outage on Friday is likely to intensify pressure on administration officials and lawmakers to act.

An air traffic controller directing traffic at Newark early Friday mentioned the latest outage to the pilot of FedEx Flight 1989 when it occurred, according to a publicly available recording of air traffic control communications with pilots.

"FedEx 1989, I'm going to hand you off here — our scopes just went black again," the controller said. "If you care about this, contact your airline and try to get some pressure for them to fix this stuff."

"Sorry to hear about that," the pilot replied.

In a separate exchange, a controller told another pilot about the outage and instructed the pilot to maintain distance if the pilot could not reach the controller.

ABC News reported on the outage earlier.

Flights to and from Newark were delayed on Friday morning. The F.A.A. also initiated a "ground delay program," which remained in effect midday. It held flights destined for Newark at their origin airports by an average of more than four hours because of rain in and around New York City. The Newark airport is about a 17-mile drive from Midtown Manhattan.

A spokesman for the Port Authority of New York and New Jersey, which operates Newark, said the outage did not affect passenger operations at the airport.

Newark has long had problems. The F.A.A. had recently hoped to address a staffing shortfall among air traffic controllers last summer by moving some operations for Newark from Westbury, N.Y., on Long Island, to Philadelphia. Controllers at the facility in New York had fought the relocation, but the F.A.A. said it could recruit more controllers by moving the work to a more affordable area.

About 10 percent of flights to and from Newark were canceled from the start of last week through Wednesday, according to data from FlightAware, a flight tracking service. The two other airports serving the New York region fared much better. Over the same period, only about 2 percent of flights were canceled at LaGuardia Airport and 1 percent at Kennedy International Airport. Newark also saw far more delays than the other two airports.

The disruptions are particularly frustrating for United Airlines, which counts Newark as one of its eight airport hubs and dominates traffic there. More than two out of three flights to and from the airport are sold by United. A variety of airlines account for the remaining flights, according to Cirium, an aviation data firm.

In an email to employees this week, United's chief executive, Scott Kirby, said flights to and from the airport remained safe. Newark is a "crown jewel of the region," he said, but the airport is overwhelmed, with more flights scheduled on most afternoons and evenings than the F.A.A. has said it can handle.

Michael Levenson, Neil Vigdor and Patrick McGeehan contributed reporting.

**A Key Airport in Chaos**

A communications lapse on April 28 led to added delays and cancellations at Newark.

**Cancellations at Newark vs. Other New York Airports**

The nearby airports of LaGuardia and Kennedy also saw a slight, though not as severe, uptick in cancelled flights.

Source: Flightradar24 THE NEW YORK TIMES

# Setting Stage for Judge's Decision on Fixing Google's Monopoly

By DAVID McCABE

WASHINGTON — For the past three weeks, the Justice Department and Google have questioned more than two dozen witnesses to try to sway a federal judge's decision over how to address the company's illegal monopoly in internet search.

On Friday, that hearing concluded in the U.S. District Court for the District of Columbia. To fix the monopoly, the government has proposed aggressive measures that include forcing Google to sell its popular Chrome web browser and share proprietary data with competitors. Google has argued that small tweaks to its business practices would be more appropriate.

Both sides will offer closing arguments at the end of the month. Judge Amit P. Mehta, who is presiding over the case, is expected to reach a decision by August. His ruling could have significant implications for Google, its rivals and the way that people look for information online.

Here is what to know about what was argued at the hearing.

### What case does the hearing stem from?

In August, Judge Mehta ruled that Google had broken antitrust law when it paid companies like Apple, Samsung and Mozilla billions of dollars to automatically appear as the search engine in browsers and on smartphones. He also ruled that Google's monopoly allowed it to inflate the prices for some search ads, adding to its unfair advantage.

Judge Mehta convened the hearing last month to determine how to best address the search monopoly through measures called remedies. Executives from Google, rival search engines and artificial intelligence companies — alongside experts — testified about Google's power over the internet.

### What did the government argue?

The only way to end Google's dominance in search is by taking significant action, government lawyers said at the hearing.

Lawyers argued that Google should be forced to spin off Chrome and share search results and ads with rivals, allowing them to populate their own search engines. Other search engines and some artificial intelligence companies should get access to data on what Google users search for, as well as the websites they click on.

The government warned during the hearing that if Judge Mehta did not take action, it could propel Google into dominance of another technology, artificial intelligence. Search is in upheaval as A.I. and chatbots, like Google's Gemini, change the way people find information on the web.

"This court's remedy should be forward looking and not ignore what's on the horizon," said David Dahlquist, the government's lead litigator. "Google is using the same strategy that they did for search and now applying it to Gemini."

Eddy Cue, an Apple executive called as a witness by Google, said that "in the past two months for the first time in over 20 years," Google search queries had declined in the company's Safari browser. He attributed the drop to the growth of A.I.

### What did Google argue?

Google's lawyers said the government's proposal would endanger products that consumers love and imperil privacy and security for internet browsing.

"I think it definitely will have many unintended consequences," Sundar Pichai, Google's chief executive, testified.

Sharing Google's data with its competitors would undermine the privacy of its users, the company's lawyers said.

They pointed multiple times to a 2006 episode in which AOL released search data to aid academic researchers. Journalists were able to use leaked data to identify an individual based on her searches.

There's also plenty of competition in A.I., they said, noting the success of OpenAI's ChatGPT and other examples.

Google's lawyers instead proposed that its contracts with web browsers and smartphone companies should offer more freedom to work with competing search and A.I. services.

Mr. Pichai testified that Google had already started altering its contracts with other companies to align with its proposal in the case.

(The New York Times has sued OpenAI and its partner, Microsoft, for copyright infringement of news content related to A.I. systems. They have denied wrongdoing.)

### What did the judge say?

When Judge Mehta questioned witnesses throughout the hearing, he provided a window into his thinking.

At times, he pushed witnesses to say whether any rivals could compete with Google's search dominance absent the court's intervention.

Many of his questions revolved around A.I. and its significance, as Google battles its rivals to develop the technology that has become a major force in the tech industry.

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered) |
|---|---|

**NOTICE OF ENTRY OF INTERIM ORDER (I) ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, (II) ESTABLISHING PROCEDURES FOR NOTIFICATION AND TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES, AND (III) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT HOLD CLAIMS AGAINST THE DEBTORS:**

**PLEASE TAKE NOTICE** that on May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a petition with the United States Bankruptcy Court for the District of New Jersey (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of or from the Debtors' estates or to exercise control over property of or from the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that on May 6, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates, (II) Establishing Procedures for Notification and Trading in Certain Claims Against the Debtors' Estates, and (III) Granting Related Relief* [Docket No. 9] (the "Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that on May 7, 2025, the Court entered the *Interim Order (I) Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates, (II) Establishing Procedures for Notification and Trading in Certain Claims Against the Debtors' Estates, and (III) Granting Related Relief* [Docket No. 135] (the "Interim Order"), approving the Record Date and Procedures for trading in claims against the Debtors' estates on an interim basis. The "Record Date" is the date that is five (5) business days after the Interim Order was entered (*i.e.*, May 14, 2025).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Interim Order, claimholders and potential purchasers of claims against the Debtors are hereby notified that claimholders that acquire claims after the Record Date in an amount that would entitle them to receive more than 4.75 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization may be subject to a required sell-down of any claims purchased after the Record Date.

**PLEASE TAKE FURTHER NOTICE** that all persons or Entities that acquired debt claims against the Debtors after the Record Date and currently hold or come to hold such claims in such an amount that the persons or Entities holding such claims would be entitled to receive more than 4.75 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization shall be required to identify themselves to the Debtors as set forth in the Procedures and file a *Declaration of Status as a Substantial Claimholder*, which is attached as Exhibit 1A to the Interim Order.

**PLEASE TAKE FURTHER NOTICE** that upon the request of any person or entity, the Debtors' proposed claims and noticing agent, Kroll Restructuring LLC, will provide a copy of the Interim Order and applicable forms of declaration as required by the Procedures within three (3) business days of receiving such a request. Complete copies of the Motion and Interim Order (including the exhibits attached thereto), with additional information about the Record Date and Procedures, are available via PACER on the Court's website at https://www.njb.uscourts.gov for a fee, or free of charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that the entry of the Interim Order shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order or parties' objection to a Declaration of Transfer, on any grounds, and that all parties' rights are expressly preserved hereby.

**PLEASE TAKE FURTHER NOTICE** that entry of the Interim Order is not a determination that a Sell-Down Order is necessary or warranted in these chapter 11 cases and the Court's review of any request for the entry of a Sell-Down Notice shall be subject to notice and a hearing.

**PLEASE TAKE FURTHER NOTICE** that the final hearing (the "Final Hearing") on the Motion shall be held on **June 6, 2025, at 11:30 a.m. (prevailing Eastern Time)**. Any objections or responses to entry of a final order on the Motion shall be filed on or before **May 30, 2025 at 4:00 p.m. (prevailing Eastern Time)**, and shall be served on: (a) the Debtors, New Rite Aid, LLC, 200 Newberry Commons, Etters, Pennsylvania 17319, Attn: David Kastin (David.Kastin@riteaid.com); (b) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), Felice Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten, Esq. (svanaalten@coleschotz.com), and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com), Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean A. Mitchell (smitchell@paulweiss.com); (c) the United States Trustee for the District of New Jersey, Attn: Jeffrey M. Sponder and Lauren Bielskie, One Newark Center, Suite 2100, Newark, NJ 07102; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the agents under the Prepetition Credit Facilities, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com), and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com); and (f) counsel to McKesson Corporation, Sidley Austin LLP, 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com), and Buchalter, A Professional Corporation, 18400 Von Karman Avenue, Suite 800 Irvine, California 92612, Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com). If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that the requirements set forth in this notice are in addition to the requirements of applicable law and do not excuse compliance therewith.

Dated: May 8, 2025, */s/ Michael D. Sirota*, **COLE SCHOTZ P.C.**, Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**, Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, Interim Order, or Procedures, as applicable.

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered) |
|---|---|

**NOTICE OF INTERIM ORDER (I) APPROVING NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN TRANSFERS OF, AND DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO, COMMON STOCK, AND (II) GRANTING RELATED RELIEF**

**TO: ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT MAY HOLD BENEFICIAL OWNERSHIP OF THE EXISTING CLASSES OF COMMON STOCK OR OTHER INTERESTS (THE "COMMON STOCK") OF NEW RITE AID, LLC:**

**PLEASE TAKE NOTICE** that on May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed petitions with the United States Bankruptcy Court for the District of New Jersey (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of or from the Debtors' estates or to exercise control over property of or from the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Notification and Hearing Procedures for Certain Transfers of, and Declarations of Worthlessness With Respect To, Common Stock, and (II) Granting Related Relief* [Docket No. 10] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on May 7, 2025, the Court entered the *Interim Order (I) Approving Notification and Hearing Procedures for Certain Transfers of, and Declarations of Worthlessness With Respect To, Common Stock, and (II) Granting Related Relief* [Docket No. 135] (the "Interim Order") approving procedures for certain transfers of, and declarations of worthlessness with respect to, Common Stock, set forth in **Exhibit 1** attached to the Interim Order (the "Procedures").[2] The Procedures are also available to view and download on the website established by the Debtors' proposed notice, claims and solicitation agent, Kroll Restructuring Administration LLC for these chapter 11 cases at http://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Interim Order, upon the request of any person or entity, the proposed notice, claims, and solicitation agent for the Debtors, Kroll Restructuring Administration LLC, will provide a copy of the Interim Order and a form of each of the declarations required to be filed by the Procedures in a reasonable period of time. Such declarations are also available via PACER on the Court's website at https://ecf.njb.uscourts.gov/ for a fee, or free of charge by accessing the Debtors' restructuring website at http://restructuring.ra.kroll.com/RiteAid2025.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, failure to follow the Procedures set forth in the Interim Order shall constitute a violation of, among other things, the automatic stay provisions of section 362 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, a Substantial Shareholder may not consummate any purchase, sale, or other transfer of Common Stock or Beneficial Ownership of Common Stock in violation of the Procedures, and any such transaction in violation of the Procedures shall be null and void *ab initio*.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, the Procedures shall apply to the holding and transfers of Common Stock or any Beneficial Ownership therein by a Substantial Shareholder or someone who may become a Substantial Shareholder.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Order, a 50-Percent Shareholder may not claim a worthless stock deduction with respect to Common Stock or Beneficial Ownership of Common Stock in violation of the Procedures, and any such deduction in violation of the Procedures shall be null and void *ab initio*, and the 50-Percent Shareholder shall be required to file an amended tax return revoking such proposed deduction.

**PLEASE TAKE FURTHER NOTICE** that the final hearing (the "Final Hearing") on the Motion shall be held on **June 6, 2025, at 11:30 a.m. (prevailing Eastern Time)**. Any objections or responses to entry of a final order on the Motion shall be filed on or before **May 30, 2025 at 4:00 p.m. (prevailing Eastern Time)**, and shall be served on: (a) the Debtors, New Rite Aid, LLC, 200 Newberry Commons, Etters, Pennsylvania 17319, Attn: David Kastin (David.Kastin@riteaid.com); (b) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), Felice Yudkin (fyudkin@coleschotz.com), and Seth Van Aalten, Esq. (svanaalten@coleschotz.com), and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019, Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com), Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean A. Mitchell (smitchell@paulweiss.com); (c) the United States Trustee for the District of New Jersey, Attn: Jeffrey M. Sponder and Lauren Bielskie, One Newark Center, Suite 2100, Newark, NJ 07102; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the agents under the Prepetition Credit Facilities, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com), and Mark D. Silva (msilva@choate.com) and Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932, Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com); and (f) counsel to McKesson Corporation, Sidley Austin LLP, 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com), and Buchalter, A Professional Corporation, 18400 Von Karman Avenue, Suite 800 Irvine, California 92612, Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com). If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that nothing in the Interim Order shall preclude any person desirous of acquiring any Common Stock from requesting relief from the Interim Order from this Court, subject to the Debtors' and the other Notice Parties' rights to oppose such relief.

**PLEASE TAKE FURTHER NOTICE** that, other than to the extent that the Interim Order expressly conditions or restricts trading in Common Stock, nothing in the Interim Order or in the Motion shall, or shall be deemed to, prejudice, impair, or otherwise alter or affect the rights of any holders of Common Stock, including in connection with the treatment of any such stock under any significant transaction occurring in connection with these proceeding, any chapter 11 plan, or any applicable bankruptcy court order.

**PLEASE TAKE FURTHER NOTICE** that any prohibited purchase, sale, other transfer of, or declaration of worthlessness with respect to Common Stock, Beneficial Ownership thereof, or option with respect thereto in violation of the Interim Order is prohibited and shall be null and void *ab initio* and may be subject to additional sanctions as this court may determine.

**PLEASE TAKE FURTHER NOTICE** that the requirements set forth in the Interim Order are in addition to the requirements of applicable law and do not excuse compliance therewith.

Dated: May 8, 2025, */s/ Michael D. Sirota*, **COLE SCHOTZ P.C.**, Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**, Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Order or the Motion, as applicable.

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) (Jointly Administered) |
|---|---|

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that on May 7, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* [Docket No. 142] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all or a portion of the Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order on a final basis with respect to the Pharmacy Assets (defined below) and on an interim basis with respect to the Remaining Assets (defined below). The Assets for sale include: (a) the Debtors' prescription files (and related records), pharmacy inventory, and any assets related to or requested to be acquired in connection with the foregoing (including, without limitation, unexpired leases and other real and personal property associated with the sale of any retail pharmacy locations on a going concern basis) (collectively, the "Pharmacy Assets"); and (b) all of the Debtors' assets that are not Pharmacy Assets, including intellectual property, the Thrifty Ice Cream business and related assets, various technology and software assets, including proprietary pharmacy management software (i.e., NexGen), the central prescription fill facility, other real and personal property, unexpired leases, executory contracts, equipment, inventory, supplies, insurance proceeds, prepaid expenses and deposits, and books and records (collectively, the "Other Assets", and together with the Pharmacy Assets, the "Assets").

**PLEASE TAKE FURTHER NOTICE** that **all interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**Pharmacy Assets Dates And Deadlines**

**PLEASE TAKE FURTHER NOTICE** that all Potential Bidders that are party to a Confidentiality Agreement with the Debtors as of the Petition Date (the "Prepetition NDA Bidders") must submit a Qualified Bid for the Pharmacy Assets in accordance with the Bidding Procedures so that it is actually received by **May 13, 2025 at 6:00 a.m., prevailing Eastern Time** (the "Pharmacy Assets Bid Deadline"). **A Prepetition NDA Bidder will be eligible to be a Potential Bidder for Pharmacy Assets (including any Remaining Pharmacy Assets) if, and only if, such Prepetition NDA Bidder submits a Qualified Bid for such Pharmacy Assets by the Pharmacy Assets Bid Deadline.**

**PLEASE TAKE FURTHER NOTICE** that all Potential Bidders that are not party to a Confidentiality Agreement with the Debtors as of the Petition Date (a "Non-Prepetition NDA Bidder") may be a Potential Bidder and may submit a Bid or an indication of interest for the Pharmacy Assets by the Pharmacy Assets Bid Deadline; *provided* that such Potential Bidders must submit a Qualified Bid by the Pharmacy Assets Bid Deadline for such Pharmacy Assets to be entitled to participate in the Pharmacy Assets Auction (as defined below). Non-Prepetition NDA Bidders that do not submit a Bid for the Pharmacy Assets by the Pharmacy Assets Bid Deadline shall be entitled to participate in the sale process for any remaining Pharmacy Assets not sold following the Pharmacy Assets Auction (the "Remaining Pharmacy Assets", and together with the "Other Assets", the "Remaining Assets") by the deadlines set forth for the Sale of the Remaining Assets below.

**PLEASE TAKE FURTHER NOTICE** that **only Non-Prepetition NDA Bidders will be eligible to submit a Qualified Bid for Remaining Pharmacy Assets, if any.**

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors may conduct an auction (the "Pharmacy Assets Auction") of the Pharmacy Assets on **May 14, 2025, at 9:00 a.m. (prevailing Eastern Time)** by videoconference or in such other manner as permitted by the Bidding Procedures Order. Instructions for accessing the Pharmacy Auction by videoconference will be provided to the applicable Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties, the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Pharmacy Assets Auction, and only Qualified Bidders will be entitled to make Overbids at the Pharmacy Assets Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the Sale of any Pharmacy Assets at a hearing scheduled to commence on **May 21, 2025, at 11:30 a.m. (prevailing Eastern Time)**, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of each Sale of the Pharmacy Assets must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before May 19, 2025, at 5:00 p.m. (prevailing Eastern Time)** by (i) the Bid Notice Parties, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to any official committees of unsecured creditors appointed in these chapter 11 cases, (iv) the applicable Successful Bidder(s), if known, and (v) any other party that has filed a notice of appearance in these chapter 11 cases.

**Remaining Assets Dates and Deadlines**

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all non-binding indications of interest for the Remaining Assets must be received pursuant to the Bidding Procedures is **May 30, 2025 at 5:00 p.m., (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Remaining Assets must be received pursuant to the Bidding Procedures is **June 13, 2025 at 5:00 p.m., prevailing Eastern Time** (the "Remaining Assets Bid Deadline").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors may conduct an auction (the "Remaining Assets Auction") of the Remaining Assets on **June 20, 2025, at 9:00 a.m. (prevailing Eastern Time)** by videoconference. Instructions for accessing the Pharmacy Auction by videoconference will be provided to the Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the Consultation Parties, the U.S. Trustee, any Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Remaining Assets Auction, and only Qualified Bidders will be entitled to make Overbids at the Remaining Assets Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the Sale of any Remaining Assets at a hearing scheduled to commence on or before **June 25, 2025**, at a time to be determined by the Court, or as soon thereafter as the Debtors may be heard, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of each Sale of the Remaining Assets must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before June 24, 2025, at 5:00 p.m. (prevailing Eastern Time)** by (i) the Bid Notice Parties, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to any official committees of unsecured creditors appointed in these chapter 11 cases, (iv) the applicable Successful Bidder(s), if known, and (v) any other party that has filed a notice of appearance in these chapter 11 cases.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION. ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR THE SALE TRANSACTIONS, AS APPLICABLE, ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures, the Bidding Procedures Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retainer in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated: May 8, 2025, */s/ Michael D. Sirota*, **COLE SCHOTZ P.C.**, Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Seth Van Aalten, Esq. (*pro hac vice* pending), Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Telephone: (201) 489-3000, Email: msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, svanaalten@coleschotz.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**, Andrew N. Rosenberg (*pro hac vice* pending), Alice Belisle Eaton (*pro hac vice* pending), Christopher Hopkins (*pro hac vice* pending), Sean A. Mitchell (*pro hac vice* pending), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, Email: arosenberg@paulweiss.com, aeaton@paulweiss.com, chopkins@paulweiss.com, smitchell@paulweiss.com, *Proposed Co-Counsel to the Debtors and Debtors in Possession*

1 The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2 Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.