UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert L. LeHane
Jennifer D. Raviele (*pro hac vice* pending)
Connie Y. Choe
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897
Email:  rlehane@kelleydrye.com
    jraviele@kelleydrye.com
    cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for Benderson Development Group, Brixmor Property Group, First Washington Realty, Lerner Properties, NNN Reit, Inc., and Regency Centers, L.P.*

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC | Case Number: 25-14861 (MBK) |
| Debtors[1]. | (Jointly Administered) |

# LIMITED OBJECTION OF VARIOUS LANDLORDS TO DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025/Home-DocketInfo. The location of Debtor New Rite Aid, LLC's principal place of business and Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, PA 17319.

Benderson Development Group, Brixmor Property Group, First Washington Realty, Lerner Properties, NNN Reit, Inc., and Regency Centers, L.P. (each a "Landlord" and collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP ("Kelley Drye"), submit this objection (the "Objection") to the Debtors' assumption and assignment of their leases (the "Assignment"). In support of this Objection, Landlords respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Landlords do not oppose the sale of pharmacy assets of Debtors to a well-capitalized, fully operational assignee. However, the Landlords have not received any information that would help them to determine who the assignee will be, much less whether the assignee is capable of stepping into the debtor-tenants' shoes.

2. First, in connection with the potential assumption and assignment of the Rite Aid Leases, Debtors must be required to pay the full cure amounts associated with the Rite Aid Leases (for which the Debtors have not yet filed a cure notice), plus any additional pecuniary losses suffered by Landlords, including reasonable attorneys' fees. Debtors must also cure or provide adequate assurance that they or any proposed assignee will cure all non-monetary defaults under the Rite Aid Leases.

3. Second, Debtors or any proposed assignee must satisfy any Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Rite Aid Leases. Debtors or the proposed assignee must also (i) be required to comply with all contractual obligations to indemnify and hold Landlords harmless with regard to events which occurred before assumption and assignment, but which were not known to Landlords as of the date of the assumption and assignment, and (ii) continue to timely pay all

2

rent, additional rent, and percentage rent due under the Rite Aid Leases until it is assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code.

4. Finally, the Landlords must be given the opportunity to add or delete provisions in any order granting a sale of their Leases that will be presented to this Court, to ensure that their rights are adequately protected.

5. The Landlords will continue to attempt to resolve this Objection with the Debtors, but unless and until all required information is provided, Landlords anticipate arguing these points at the hearing.

## BACKGROUND

### I. The Leases

6. Landlords are the owners or affiliates of or managing agents for the owners of shopping centers (the "Shopping Center") at over sixty locations (the "Leased Premises") where Debtors lease retail space pursuant to written leases (the "Rite Aid Leases").

7. The Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

### II. The Bankruptcy Cases

8. On May 5, 2025 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court. Since the Petition Date, Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9. On May 6, 2025, Debtors filed Debtors' *Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing*

*Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* (the "Sale Procedures Motion").[2]  The Sale Procedures Motion sought to establish, among other things, the process by which Debtors would market and sell leased assets and a timeline for the bidding and sale process.

10. On May 7, 2025, the Court entered an order granting the relief requested in the Sale Procedures Motion (the "Sale Procedures Order").[3]  The Sale Procedures Order set an auction, if necessary, for the pharmacy assets to start on May 14, 2025 (the "Pharmacy Assets Auction") and provided the process for the assumption and assignment of related leases.

11. Since that time, there has been no notice of successful bidder, cure notice, or notice of assignment presented to the Landlords or filed to the docket.

## OBJECTION

**I.  Debtors Must Provide Evidence of Adequate Assurance of Future Performance Under the Rite Aid Leases**

12. In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d at 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

---

[2] Docket No. 17.

[3] Docket No. 142.

4

  (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

  13. Section 365(b)(1) of the Bankruptcy Code provides:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–

  (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;

  (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and

  (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

  14. In connection with the assumption and assignment of a shopping center lease, adequate assurance of future performance includes adequate assurance:

  (A) of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor… as of the time the debtor became the lessee under the lease;

  (B) that any percentage rent due under such lease will not decline substantially;

  (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement related to such shopping center; and

  (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

15. Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Rite Aid Leases. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

### A. *Debtors Have Not Provided Landlords with Adequate Assurance of the Operational and Financial Condition of Proposed Assignee*

16. To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Landlords and their attorneys must receive the following information from a proposed assignee (collectively, the "Adequate Assurance Information"):

   a. The exact name of the entity that will be designated as the assignee of the Rite Aid Leases and any guarantor;

   b. Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2022, 2023, and 2024 for the proposed assignee and any guarantors;

   c. Any and all documents regarding the proposed assignee's and any guarantor's experience operating retail stores in shopping centers;

   d. The number of retail stores the proposed assignee and any guarantor operates and all trade names used;

   e. The proposed assignee and any guarantor's 2025 and 2026 business plans including sales and cash flow projections;

   f. A statement setting forth the proposed assignee's intended use of the premises; and

   g. Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Rite Aid Leases.

6

17. Landlords may also need similar information for Debtors in the year when Debtors entered into the Rite Aid Leases to appropriately evaluate the ability of a proposed assignee to provide adequate assurance of future performance.

18. Unless and until Landlords receive all of this information, Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

### B. *The Rite Aid Leases Must Be Assumed and Assigned Cum Onere*

19. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions thereof…". 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

20. As the court noted in *In re Washington Capital Aviation & Leasing*:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993); *see also In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"). Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* — with all

7

benefits and burdens. *See, e.g.*, *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

### II. Debtors Must Propose Cure Amounts, and Work With Landlords to Reach Correct Cure Amounts

21. Debtors have not filed a notice of assignment or cure notice for the Landlords to dispute. The Debtors must file the required documents, set a cure objection deadline at least fourteen days after those documents are filed, and then work with the Landlords to resolve those cure amounts.

22. Pursuant to the Rite Aid Leases, Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance costs, real estate taxes, and assessments. In addition, prior to assumption and assignment of the Rite Aid Leases, Debtors are required by section 365(b)(1) of the Bankruptcy Code to cure all outstanding defaults under the Rite Aid Leases and compensate Landlords for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. §365(b)(1)(B). Attorney's fees due under the Rite Aid Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Accordingly, as part of its pecuniary losses, Landlords are entitled to attorney's fees in connection with Debtors' obligation to cure all monetary defaults under the Rite Aid Leases.

### III. Debtors or Any Proposed Assignee Must Be Responsible for (A) Payment of Adjustment Amounts When They Come Due in the Ordinary Course of Business, and (B) Satisfaction of Indemnification Obligations

23. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or Landlords suffer other pecuniary losses with respect to the Rite Aid Leases, Landlords remind Debtors that all cure amounts must be continually revised to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2024 and 2025, which have not yet been billed or have not yet become due under the terms of the Rite Aid Leases (the "Adjustment Amounts"). Debtors or the proposed assignee must be responsible to satisfy all accrued but unbilled obligations under the Rite Aid Leases, including the Adjustment Amounts, if any, when due in accordance with the terms of the Rite Aid Leases, regardless of when such Adjustment Amounts were incurred.

24. Furthermore, Debtors or proposed assignee must be required to comply with all contractual obligations to indemnify and hold Landlords harmless for events which occurred before assumption and assignment, but which were not known to Landlords as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Rite Aid Leases, either (a) Debtors or proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity

could include claims for personal injury occurring at the Leased Premises where Landlords are joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

### IV. Debtors Must Be Responsible for Timely Payment of All Post-Petition Rent And Additional Rent Due Under the Rite Aid Leases Until They Are Assumed, Assumed and Assigned, or Rejected

25. Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

26. Landlords request that any assumption and assignment of the Rite Aid Leases be conditioned upon Debtors' timely performance of all obligations arising under the Rite Aid Leases before it is assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code. This includes, without limitation, the payment in full of rent and related charges on the first day of each month.

### V. Demand for Security

27. Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

28. In the ordinary course of business, Landlords require security deposits, letters of credit, and/or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with the proposed

assumption and assignment of the Rite Aid Leases, Landlords hereby demand such security in one of those forms as required by section 365(l) of the Bankruptcy Code. Until the complete financials of a proposed assignee are known to Landlords, Landlords reserve their right to specify the exact form and amount of such security; however, Landlords would typically require a parent or personal guaranty in connection with leasing to a new tenant and a security deposit equal to six months of rent and related charges.

## RESERVATION OF RIGHTS

29. Landlords reserve the right to amend and/or supplement this Objection on any basis, including, without limitation, by adding objections to Debtors' proposed cure amounts and by adding or supplementing objections to the adequate assurance of future performance once provided by Debtors or any proposed assignee.

## CONCLUSION

**WHEREFORE,** Landlords requests that the Court enter an orde denying the proposed assignment of the Rite Aid Leases unless adequate assurance is provided, cure amounts are negotiated, and proper sale order provisions are determined.

[*signature page follows*]

Dated: May 19, 2025

By: */s/ Robert L. LeHane*
Robert L. LeHane
Jennifer D. Raviele (*pro hac vice* pending)
Connie Y. Choe
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: 212-808-7800
Fax: 212-808-7897
Email: rlehane@kelleydrye.com
jraviele@kelleydrye.com
cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900


*Counsel for Benderson Development Group, Brixmor Property Group, First Washington Realty, Lerner Properties, NNN Reit, Inc., and Regency Centers, L.P.*