**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re:

NEW RITE AID, LLC, *et al.*,

Debtors.[1]

**Order Filed on June 11, 2025**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

Chapter 11

Case No. 25-14861 (MBK) (Jointly Administered)

### FINAL ORDER (I) ESTABLISHING PROCEDURES FOR THE SALE OF CERTAIN LEASES AND FEE OWNED PROPERTIES, AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through and including twenty-three (23), is **ORDERED**.

**DATED: June 11, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Upon the motion (the "Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Final Order"):  (a) establishing procedures authorizing, but not directing, the Debtors to (i) sell or transfer certain unexpired leases of non-residential real property (each, a "Lease"), including with any related ancillary agreement thereto or through the sale of designation rights related thereto, by public auction (each, an "Auction"), pursuant to the procedures attached hereto as **Schedule 1** (the "Auction Procedures"), and (ii) sell or transfer certain owned real estate (each, a "Fee Owned Property") through an Auction pursuant to the Auction Procedures; (b) approving the form and manner of notices with respect to the Auction of Leases, substantially in the form attached hereto as **Schedule 2-A**, and Auction of Fee Owned Property, substantially in the form attached hereto as **Schedule 2-B**; (c) approving the form and manner of notice with respect to hearings for approval of the sale of a Leases (a "Sale Hearing"), or, in the absence of a hearing (including with respect to a Fee Owned Property), the date on which an order approving a sale will be entered substantially in the form attached hereto as **Schedule 3-A**, and sale of Fee Owned Property, substantially in the form attached hereto as **Schedule 3-B**; (d) approving procedures, attached hereto as **Schedule 4**, for the assumption and assignment of a Lease (the "Assumption and Assignment Notice"); and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the*

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] or the Auction Procedures, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

*Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, the First Day Declaration, and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**, on a final basis, as set forth herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**A.      Auction Procedures**

3.      The Auction Procedures, substantially in the form attached hereto as **Schedule 1**, are incorporated herein and are hereby approved in their entirety, and the Auction Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed sale or Auction of a Real Property Asset.  Any party desiring to submit a Bid shall comply with the Auction Procedures and this Final Order.  The Debtors are authorized to take any and all actions necessary to implement the Auction Procedures.  Subject to the terms of the Auction Procedures, the Debtors,

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

in consultation with the Consultation Parties,[2] may modify the Auction Procedures as necessary or appropriate to maximize value for their estates.[3]

4.    Any deposit provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Auction Procedures, or order of this Court, as applicable.

5.    If the Debtors do not receive a Qualified Bid as to a particular Real Property Asset by the applicable Bid Deadline, at the Debtors' discretion and in consultation with the Consultation Parties, the Auction may be cancelled or adjourned as to such asset.  Debtors shall provide notice of such cancellation or adjournment promptly to counsel to the Consultation Parties, the Qualified Bidders, the applicable Lease Counterparties, if any, and such Lease Counterparties' counsel if known or identifiable from the applicable Lease, and, as soon as reasonably practicable, to post such notice on the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/RiteAid2025.  If the Debtors receive one or more Qualified Bids,

---

[2]    "Consultation Parties" shall mean (a)(i) the Prepetition ABL Agent and (ii) the Bank of America, N.A., as administrative agent and collateral agent under the DIP Facility (the "DIP Agent," and together with the Prepetition ABL Agent, the "Agents"), and any of their respective designees, and (b) the Committee (as defined herein); *provided*, *however*, that to the extent any Agent submits a Bid for any Real Property Assets, such Agent shall not be a Consultation Party with respect to the evaluation and qualification of any competing Bids for any Real Property Asset included in such Agent's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes, as set forth in the Auction Procedures

[3]    For the avoidance of doubt, the Debtors also anticipate that some of their Leases and Fee Owned Properties may be sold pursuant to either private sales conducted outside of the Auction Procedures process or the Sales Procedures.  Nothing in this Final Order limits the Debtors' ability to include any Lease or Fee Owned Property (a) in any private sale or any sale process conducted pursuant to the Sales Procedures, or (b) not sold pursuant to sale processes conducted pursuant to the Sales Procedures in a subsequent Auction process conducted pursuant to the Auction Procedures.

(Page | 6)

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

the Debtors will file a Notice of Qualified Bids on the docket and may conduct the Auction in accordance with the Auction Procedures.

6.      At the Auction, each Qualified Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to credit bid all or a portion of the value of the secured portion of its claims, if any, within the meaning of section 363(k) of the Bankruptcy Code. With respect to the applicable proposed cure amount, if any, for each Lease (the "Cure Cost"), each counterparty to a Lease (each, a "Lease Counterparty") proposed to be sold or transferred at an Auction may credit bid all or a portion of the applicable Cure Cost proposed by such Lease Counterparty; *provided that,* in no circumstances may a Lease Counterparty credit bid an amount that exceeds the total allowable claim that such Lease Counterparty is owed. If such Lease Counterparty is the Successful Bidder on the applicable Lease, and it is later determined by this Court or agreement by and among the Debtors and such Lease Counterparty that the actual cure amount is a lesser amount, then the Lease Counterparty shall pay the difference in cash prior to the Closing Deadline. For the avoidance of doubt, any Lease Counterparty bidding on the Lease to which it is a counterparty shall be deemed a Qualified Bidder.

7.      The Auction(s), if any, will be held at the offices of the proposed co-counsel to the Debtors Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 or by videoconference or such other form of remote communication established by the Debtors, in consultation with the Consultation Parties. The Auction will be conducted on the date and at the time listed in the applicable Auction and Hearing Notice. Except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors,

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Consultation Parties, U.S. Trustee, applicable Lease Counterparties (if any), Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction.  The Debtors shall send written notice (email being sufficient) of the date, time, and place of any Auction to the Consultation Parties, the U.S. Trustee, the relevant Lease Counterparties (if any), and the Qualified Bidders by no later than seven (7) calendar days before such Auction, and will post notice of the date, time, and place of such Auction no later than seven (7) calendar days before such Auction on the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/RiteAid2025.  The Debtors, in consultation with the Consultation Parties, may (a) cancel any Auction, or modify the date, time, and place of any Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors or (b) amend or rescind the proposed list of Real Property Assets contained in an Auction and Hearing Notice (including by withdrawing any Real Property Asset from the Auction), by in each case of (a) and (b) hereof, (i) providing written notice (email being sufficient) to the Consultation Parties, the U.S. Trustee, the applicable Lease Counterparties, and the Qualified Bidders, or, in each case, their counsel, and (ii) posting a notice on the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/RiteAid2025; *provided, however*, that to the extent the Debtors amend the proposed list of Real Property Assets contained in an Auction and Hearing Notice to add a Real Property Asset to such list, the Objection Deadlines (as defined below) applicable to the sale of such asset shall apply as of the date of the filing of the amended Auction and Hearing

(Page | 8)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Notice.  For the avoidance of doubt, the Debtors may also conduct multiple Auctions with respect to non-overlapping portions of the Real Property Assets.

8.     At or following an Auction, the Debtors may, in consultation with the Consultation Parties:  (a) select, in their business judgment, pursuant to the Auction Procedures, (i) the highest or otherwise best Qualified Bid as the Successful Bid and (ii) the second highest or otherwise second best Qualified Bid as the Backup Bid, and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in such Debtor's business judgment, is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Auction Procedures, or (iii) contrary to, or otherwise not in the best interests of, the Debtors' estates, affected stakeholders, or other parties in interest, in each case subject to and in accordance with the Auction Procedures.  For the avoidance of doubt, no Debtor is required to name a Successful Bidder for any given Real Property Asset or group thereof and such Debtor may elect to not sell such asset(s) to the highest or otherwise best bidder.

9.     In the event the Successful Bidder does not close the sale of any given Real Property Asset, within three (3) calendar days thereafter, the Debtors shall file a supplemental notice (the "Supplemental Notice of Backup Bidder") seeking to approve the sale of the applicable asset to the Backup Bidder on expedited notice and requesting a hearing as soon as reasonably practicable for the parties and the Court.  The Backup Bidder, as identified by the applicable Notice of Successful and Backup Bidders, shall not be approved at the Sale Hearing.  If the Debtors submit a Supplemental Notice of a Backup Bidder in connection with the sale of a Lease, the deadline to assume or reject the applicable Lease shall be tolled until the applicable hearing.

(Page | 9)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

## B.   Stalking Horse Bidders and Bid Protections

10.    Upon entry of this Final Order, the Debtors shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment and in consultation with the Consultation Parties, to select one or more Stalking Horse Bidders with respect to some or all of the Real Property Assets, by no later than the deadline set forth in the applicable Auction and Hearing Notice, and enter into a Stalking Horse Agreement, and to provide such Stalking Horse Bidders with Stalking Horse Bid Protections, subject to paragraphs 12 and 13 below.  The Debtors, in consultation with the Consultation Parties, shall be permitted to choose a Stalking Horse Bidder through and including twenty-four (24) hours prior to an Auction.  However, to the extent such Stalking Horse Bidder seeks any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the applicable Real Property Asset, a Stalking Horse Agreement shall be entered into and paragraphs 12 and 13 herein continue to apply.

11.    With respect to a Lease sale, no person or entity, other than any Stalking Horse Bidder that has not submitted a Credit Bid, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Lease(s), and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

12.    In the event that the Debtors enter into a Stalking Horse Agreement with one or more Stalking Horse Bidders, within three (3) calendar days of entry into such agreement, the Debtors shall file a notice and proposed form of sale order with the Court (the "Stalking Horse

(Page | 10)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Notice") and serve the Stalking Horse Notice on the master service list maintained in these cases and on the Lease Counterparties (and their counsel, if known) for any Lease asset(s) included in the Stalking Horse Bid at the notice address provided in the applicable Lease.  The Stalking Horse Notice shall:  (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth a summary of the Stalking Horse Agreement; (c) set forth the amount of the Stalking Horse Bid and what potion (if any) is cash; (d) specify any proposed expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Real Property Asset(s) (including the amount and calculation thereof); (e) specify the Real Property Asset(s) included in the Stalking Horse Bid; (f) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (g) attach a copy of applicable Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (h) set forth the deadline to object to the Stalking Horse Bidder designation and/or any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Real Property Asset.  If there are no objections to the Stalking Horse Notice within seven (7) calendar days of filing with the Court, (the "Stalking Horse Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Stalking Horse Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing.  If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Stalking Horse Notice Period and as soon thereafter as the Court is available.

(Page | 11)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

13.     The Debtors shall seek approval of any Breakup Fees, or other similar fee or payment on account of the Real Property Asset(s) and any other bid protections such as an expense reimbursement, at the applicable Sale Hearing, *provided* that, for the avoidance of doubt, the amount of the Breakup Fee shall not exceed three percent (3.00%) of any proposed purchase price from the Stalking Horse Bidder; *provided*, *further* that the Debtors may only select one Stalking Horse Bidder per Real Property Asset.

### C.     Notice of Sale, Auction, and Sale Hearing

14.     The Debtors may utilize the Auction Procedures for future Auctions by filing with the Court either a (a) Lease Auction and Hearing Notice, substantially in the form attached hereto as **Schedule 2-A**, or (b) Fee Owned Property Auction and Hearing Notice, substantially in the form attached hereto as **Schedule 2-B**, and serving such Auction and Hearing Notice on the following parties:  (a) the office of the United States Trustee for the District of New Jersey; (b) the Official Committee of Unsecured Creditors (the "Committee"); (c) the Prepetition ABL Agent and counsel thereto; (d) the DIP Agent and counsel thereto; (e) the trustees for the Senior Secured Notes and counsel thereto; (f) the United States Attorney's Office for the District of New Jersey; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the applicable Lease Counterparties at the notice address provided in the applicable Lease (and their counsel, if known); (j) co-counsel to McKesson Corporation, (i) McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, 2nd Floor, Roseland, New Jersey 07068 (Attn: Anthony Sodono (asodono@msbnj.com), and Michele Dudas (mdudas@msnbj.com)) and (ii) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603

(Page | 12)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

(Attn: Dennis M. Twomey (dtwomey@sidley.com)), and Buchalter P.C., 18400 Von Karman Avenue, Suite 800, Irvine, CA 92612-0514 (Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com)); and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Auction Notice Parties").

15.     The Auction and Hearing Notice shall contain, as applicable under the Auction Procedures:  (a) all relevant dates and times, including those related to (i) when all Bids must be actually received (the "Bid Deadline"), (ii) when the relevant Auction will occur, (iii) when the Notice of Successful and Backup Bidder(s) must be filed with the Court, (iv) the deadline by which a party must file and serve objections, and (v) when the Court will hear the applicable Sale Hearing; (b) details regarding the Qualified Bids; (c) notice of the Closing Deadline; (d) a list of the Leases or Fee Owned Real Properties proposed to be sold at the Auction; and (e) a copy of the Auction Procedures approved herein.

16.     If, following the Auction Objection Deadline, there are any changes to the dates included in the Auction and Hearing Notice, then as soon as reasonably practicable following the Auction Objection Deadline, the Debtors will file and serve on the Objection Notice Parties and each applicable Lease Counterparty (and its counsel, if known) an amended Auction and Hearing Notice; *provided that,* the dates for the Auction and the Sale Hearing in the amended Auction and Hearing Notice shall not be any earlier than those provided in the original Auction and Hearing Notice.  The Auction and Hearing Notice will indicate that copies of the Bidding Procedures Order and any future sale documents, if applicable, can be obtained on the Case Website.

(Page | 13)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

17.     The Debtors shall file and serve by first-class mail (and email, where available) any Auction and Hearing Notice at least twenty-one (21) calendar days prior to the proposed Sale Hearing on the Auction Notice Parties.  Such notice is deemed sufficient and proper notice with respect to known interested parties.

18.     Pursuant to Local Rule 6004-2(c)(2):  (a) each bidder participating at an Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale of any Real Property Assets, as set forth in the Auction Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be documented, recorded, or videotaped.

19.     After the conclusion of an Auction, and within one (1) calendar day thereafter, the Debtors will file on the docket and serve on the Objection Notice Parties, the applicable Successful Bidder(s) and Backup Bidder(s), if known, and, if applicable, any Lease Counterparties (and their counsel, if known), a notice identifying the Successful Bidder(s) and Backup Bidder(s) (the "Notice of Successful and Backup Bidders"), substantially in the form attached to this Final Order as **Schedule 3-A** (for Lease sales) or **Schedule 3- B** (for Fee Owned Property sales), identifying, the Successful Bidder(s), the Real Property Asset(s) sold, the key terms of the applicable sale(s) or transfer agreement(s), the Backup Bidder(s), and, for Lease sales, the Assumption and Assignment Information and a proposed form of Assumption Order.

20.     Objections or responses to the approval of any Auction or the proposed sale of any Real Property Asset at such Auction (a "General Auction Objection") must be (a) filed with the Court and (b) served on the Objection Notice Parties so as to actually be received by **no later than 5:00 p.m.** (prevailing Eastern Time) on the date that is seven (7) calendar days after the Debtors

(Page | 14)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

file the applicable Auction and Hearing Notice (the "General Objection Deadline"). Objections or responses to the approval of any Successful Bidder(s), the Backup Bidder(s), the key terms of any applicable sale(s) or transfer agreement(s) of such Successful Bidder(s) or Backup Bidders, or the assignment of a Lease to a Successful Bidder (including any Objections related to Cure Costs and adequate assurance of future performance)[4] (each, a "Specific Auction Objection" and together with a General Auction Objection, an "Objection") must be filed no later than fourteen (14) calendar days after the Notice of Successful and Backup Bidders is filed (the "Specific Objection Deadline" and together with the General Objection Deadline, the "Objection Deadline").[5] Specific Auction Objections may not raise objections that could have been raised in a General Auction Objection. In the event that no Objection is timely received by the applicable Objection Deadline, the Court may enter final orders authorizing the proposed sale of any Real Property Asset(s) to which there was no Objection without further notice or a hearing.

### D. Assumption and Assignment Procedures

21. The procedures set forth below regarding the assumption and assignment of the Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder(s), if any, pursuant to section 364(f) of the Bankruptcy Code in connection with the sale of a Lease are hereby approved to the extent set forth herein.

---

[4]   For the avoidance of doubt, the Debtors, proposed Assignee, and applicable Lease Counterparty may otherwise mutually agree to shorten the Specific Auction Objection Deadline for Objections to the assignment of a Lease to a Successful Bidder (including for Objections related to Cure Costs or adequate assurance of future performance).

[5]   The Debtors may, in their discretion and in consultation with the Consultation Parties, file a Notice of Auction and Hearing consolidating the General Objection Deadline with the Specific Objection Deadline, thereby setting a single Objection Deadline, which shall be no earlier than twenty-one (21) calendar days after the Notice of Auction and Hearing is filed, by which a party must file an Objection (if any).

(Page | 15)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

22.      The assumption and assignment procedures set forth below are hereby approved and shall be the procedures by which the Debtors will notify the Lease Counterparties of Cure Costs.

(a) **Service of Notice of Successful and Backup Bidders**.  The Debtors will cause the Notice of Successful and Backup Bidders to be served (a) by email or overnight mail upon the Lease Counterparties listed on the Notice of Successful and Backup Bidders (and their counsel, if known, by email) at the address set forth in the notice provision of the applicable Lease and (b) by email or first-class mail upon the Objection Notice Parties, as such term is defined in subparagraph (c) below.

(b) **Service of Adequate Assurance Package**.  The Debtors will provide by email or overnight delivery to the applicable Lease Counterparty (and their counsel, if known, by email), within twenty-four (24) hours of the Auction, evidence that the Assignee has the ability to comply with the requirements of adequate assurance of future performance required under sections 365(b)(1) or 365(b)(3) of the Bankruptcy Code, as applicable, including audited and unaudited financial statements, tax returns, bank account statements, and a description of the proposed business to be conducted at the premises and/or any other documentation that the Debtors further request (the "Adequate Assurance Package");[6] *provided that,* Lease Counterparties shall not be required to provide adequate assurance of future performance with respect to their Bid on any Lease such Lease Counterparty owns.

(c) **Filing and Service of Objections**.  Parties objecting to the proposed sale, assumption and assignment of a Lease, a Successful Bidder's proposed form of adequate assurance of future performance, and/or Cure Costs must file an Objection, so that such Objection is filed with the Court by no later than

---

[6]     The Adequate Assurance Package may (but is not required to) include (a) the proposed assignee's specific name (and the name under which the proposed assignee intends to operate the premises), the proposed assignee's and any guarantor's business plans (which shall disclose the intended use of the leased premises and a description of the proposed business to be conducted at the premises), including sales and cash flow projections; (b) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of the Lease; (c) audited or unaudited financial statements, tax returns, bank account statements, or annual reports; (d) any financial projections, calculations, and/or financing pro formas prepared in contemplation of purchasing each Lease; (e) any documents regarding the proposed assignee's and any guarantor's experience in operating retail stores (including the number of retail stores the proposed assignee and any guarantor operates and the trade names used); (f) any additional evidence of the proposed assignee's financial wherewithal, including available cash and any debt or equity commitments or other forms of liquidity post-closing; and (g) any other documentation that the Debtors may further request.

(Page | 16)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

5:00 p.m. (prevailing Eastern Time) on the date set forth in the applicable Lease Auction and Hearing Notice (which shall be no sooner than fourteen (14) calendar days from the filing of the Notice of Successful and Backup Bidders) and serve such Objection on the following parties (collectively, the "Objection Notice Parties"):  (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn:  Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean Mitchell (smitchell@paulweiss.com)) and (ii) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn:  Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn:  Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn:  John F. Ventola (jventola@choate.com),  Jonathan D. Marshall  (jmarshall@choate.com)  and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) proposed co-counsel to the Committee, (i) Willkie Farr & Gallagher LLP 787 Seventh Avenue, New York, NY 10019-6099 (Attn: Brett H. Miller (bmiller@willkie.com), Todd M. Goren (tgoren@willkie.com), James H. Burbage (jburbage@willkie.com), and Jessica D. Graber (jgraber@willkie.com)), and (ii) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102 (Attn: Andrew H. Sherman (asherman@sillscummis.com), Boris Mankovetskiy (bmankovetskiy@sillscummis.com), and Gregory Kopacz (gkopacz@sillscummis.com)); (e) any affected Lease Counterparty or their known counsel; (f) the applicable Successful Bidder(s) and Backup Bidder(s), if known; and (g) co-counsel to McKesson Corporation, (i) McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, 2nd Floor, Roseland, New Jersey 07068 (Attn: Anthony Sodono (asodono@msbnj.com), and Michele Dudas (mdudas@msnbj.com)) and (ii) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603 (Attn: Dennis M. Twomey (dtwomey@sidley.com)), and Buchalter P.C., 18400 Von Karman Avenue, Suite 800, Irvine, CA 92612-0514 (Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com)).

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

(d) **No Objection**.  If no Objection is filed timely by the applicable Objection Deadline, the Court may enter an order approving the assumption or assumption and assignment of such Lease (an "<u>Assumption Order</u>") with no further hearing.

(e) **Consequences of Failing to Timely File Objection**.  If a Lease Counterparty does not file and serve an Objection in a manner that is consistent with the requirements set forth herein, and, absent a subsequent order of the Court in connection with such Objection establishing alternative Cure Costs or an agreement between the Debtors and the applicable Lease Counterparty resolving such Objection, (a) the Cure Costs, if any, set forth in the applicable Notice of Successful and Backup Bidders shall be controlling, notwithstanding anything to the contrary in any assigned Lease or any other document, and (b) the Lease Counterparty will be deemed to have consented to the assumption and assignment of the assigned Lease and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such assigned Lease against the Debtors, the Successful Bidder, and the Assignee or the property of any of them.  For the avoidance of doubt, no Lease shall be deemed assumed or assumed and assigned absent entry of an Assumption Order in respect of that Lease.

(f) **Objection Timely Filed**.  If an Objection is timely filed and served by the applicable Objection Deadline, the Debtors may schedule a Sale Hearing no earlier than seven (7) days after the Specific Objection Deadline, unless otherwise agreed to by the Debtors and the objecting party and upon consultation with the Consultation Parties.  Notwithstanding anything herein to the contrary, the Debtors reserve the right to (i) determine, in their discretion and in consultation with the Consultation Parties, whether to proceed with the sale of any Lease at any time prior to the entry of an Assumption Order for such Lease, and (ii) adjourn, reschedule, or cancel any Sale Hearing, in consultation with the Consultation Parties, and upon filing of a notice of such adjourned, rescheduled, or cancelled Sale Hearing with the Court.

(g) **Miscellaneous**.  The inclusion of an assigned Lease on the Notice of Successful and Backup Bidders will not: (a) obligate the Debtors to assume and assign any Lease listed thereon or the Successful Bidder to take assignment of such assumed Lease; or (b) constitute any admission or agreement of the Debtors that such assigned Lease is an unexpired lease for non-residential real property.  Only those assumed Leases that are included on a schedule of assumed and acquired contracts attached to a final Assumption and Assignment Agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such Assumption and Assignment Agreement) will be assumed and assigned to the applicable Successful Bidder.  No assigned

(Page | 18)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Leases shall be assumed absent closing on the assignment thereof to the applicable Successful Bidder and entry of an Assumption Order, unless otherwise agreed to by the Debtors, the Successful Bidder, and the applicable Lease Counterparty.

### E.      Fee Owned Property Sale Notification Procedures

23.      The procedures set forth below for the sale of the Debtors' Fee Owned Properties are hereby approved and shall be the procedures by which the Debtors will notify the parties in interest of the sale of such assets.

(a) **Service of Notice of Successful and Backup Bidders**.  The Debtors will cause the Notice of Successful and Backup Bidders to be served by email or first-class mail upon the Objection Notice Parties.

(b) **Filing and Service of Fee Owned Property Sale Objection**.  Parties objecting to the proposed sale of a Fee Owned Property must file an Objection by the Objection Deadline set forth in the applicable Fee Owned Property Auction and Hearing Notice and serve such objection on the Objection Notice Parties.

(c) **No Fee Owned Property Sale Objection**.  If no Objection to the proposed sale of a Fee Owned Property is timely filed, each such sale shall be closed as of the applicable Closing Date set forth in the applicable Notice of Successful and Backup Bidders or such other date as the Debtors, in consultation with the Consultation Parties, and the applicable purchaser agree.

(d) **Consequences of Failing to Timely File Fee Owned Property Sale Objection**.  If a party in interest does not file and serve an Objection in a manner that is consistent with the requirements set forth herein and, absent a subsequent order of the Court in connection with such Fee Owned Property Sale Objection or an agreement between the Debtors and the applicable party in interest resolving such objection, the party in interest will be deemed to have consented to the sale of the applicable Fee Owned Property, and will be forever barred from asserting any other claims related to such Fee Owned Property against the Debtors, the Successful Bidder, and the purchaser or the property of any of them.

(Page | 19)

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

### F.    Miscellaneous

24.    The failure to include or reference a particular provision of the Auction Procedures in this Final Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Auction Procedures.

25.    The Court, at the request of the Debtors (in consultation with the Consultation Parties) and subject to the Court's availability, may modify the dates of and adjourn any hearing set pursuant to this Final Order without further order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

26.    The Debtors, in consultation with the Consultation Parties, may modify any of the deadlines set forth herein or provide for additional deadlines, *provided* that the Debtors will disclose all applicable deadlines in the applicable Auction and Hearing Notice.

27.    All Bids shall be irrevocable.  If any Successful Bidder or Backup Bidder seeks to revoke its Bid for any reason or otherwise does not cooperate with the Debtors to seek approval of the Bid, then the Debtors shall be entitled to retain such bidder's deposit and pursue all contractual remedies against such bidder under law and equity.

28.    The Debtors may, in consultation with the Consultation Parties, modify any deposit, as necessary or appropriate, based on the Real Property Asset(s) being sold.

29.    The Debtors are authorized to establish one more or escrow accounts to accept deposits from Qualified Bidders and may pay any reasonable fees related to such account.  For the avoidance of doubt, the Debtors are authorized to enter into an escrow account agreement with Kroll Restructuring Administration LLC ("Kroll"), pursuant to which Kroll will act as the Debtors'

(Page | 20)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

third-party escrow agent for any Escrow Accounts established thereunder, and to pay the reasonable fees incurred in connection with such agreement. Any deposits made by Qualified Bidders into any Escrow Account shall not be property of the Debtors.

30. Except to the extent deemed unenforceable under the Bankruptcy Code by this Court at the Sale Hearing, or subsequent hearing, as applicable, all provisions of the applicable assigned Lease, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such Lease by the Debtors to the Assignee.

31. The Assignee, or Debtors, pursuant to the applicable agreement, shall assume and cure all outstanding liabilities with respect to each assigned Lease, including, but not limited to, accrued but unbilled amounts or adjustments related to common area maintenance, real estate taxes, and insurance. All parties reserve all rights with respect to the extent other obligations are assumed.

32. With regard to Leases to be assigned or Fee Owned Properties to be sold, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, such assignment or sale or transfer shall (a) be free and clear of (i) all interests including, but not limited to, any liens, claims, rights, interests, charges, or encumbrances, except with respect to any interests related to reciprocal easement agreements or that may be assumed liabilities under a Successful Bidder's Assumption and Assignment Agreement or Purchase Agreement (as applicable) (collectively, the "Interests") and any Interests shall attach to the proceeds in the same order and priority, as applicable, and subject to all existing defenses, claims, setoffs, and rights and (ii) any and all claims (as that term

(Page | 21)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Lease(s) (but only in connection with the assignment by the Debtor to the Assignee), *provided* that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a lease of non-residential real property, including adjustments, reconciliations, and indemnity obligations, liability for which shall be assumed or assumed and assigned by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the applicable Assignee or (B) in respect of any taxes), and (b) constitute a legal, valid, and effective transfer of such Lease(s) or Fee Owned Properties and vest the applicable Assignee or purchase with all rights, titles, and interests to the applicable Real Property Asset.

33.    Nothing in this Final Order shall prohibit the Debtors, in consultation with the Consultation Parties, from (a) removing any Real Property Asset from any Auction at any time, (b) adding any Real Property Asset to any Auction pursuant to the notice requirements included in this Final Order and the Auction Procedures,[7] or (c) selling any Real Property Asset pursuant to any other motion or order entered by this Court, including, for the avoidance of doubt, the Bidding

---

[7]    To the extent the Debtors add a Real Property Asset to the proposed list of Real Property Assets contained in an amended Auction and Hearing Notice, the Objection Deadlines applicable to the sale of such asset shall apply as of the date of the filing of the amended Auction and Hearing Notice.

(Page | 22)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Procedures Motion. The Debtors' right to seek authority to sell any Lease or Fee Owned Property pursuant to a separate process or separate order of this Court is reserved.

34.     In connection with any sale, the Debtors reserve their rights to seek to render unenforceable any right of first refusal over the sale of any Lease, pursuant to section 365(f) of the Bankruptcy Code.

35.     Notwithstanding anything to the contrary in the Interim Order, this Order or the Auction Procedures, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors, and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator.

36.     The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion or otherwise deemed waived.

37.     In the event of any inconsistencies between this Final Order and the Motion and/or the Auction Procedures, this Final Order shall govern in all respects.

38.     The Debtors, in consultation with the Consultation Parties, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

(Page | 23)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

39.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

40.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

41.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## <u>Schedule 1</u>

**Auction Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**PROCEDURES FOR THE**
**SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE**
**SALE OF CERTAIN OF THE DEBTORS' LEASES AND FEE OWNED PROPERTIES**

On May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

On May 6, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] (the "Motion"), seeking approval of, among other things, the procedures contained herein (as modified from time to time, the "Auction Procedures").

On [●], 2025, the Court entered the *Final Order (I)  Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved these Auction Procedures.  These Auction Procedures set forth the process by which the Debtors are authorized to solicit bids for and conduct auctions (collectively, the "Auctions," and each, an "Auction") for a sale or transfer of certain unexpired leases of non-residential real property (collectively, the "Leases," and each, a "Lease") or a sale or transfer of certain owned real estate (collectively, the "Fee Owned Properties," and each, a "Fee Owned Property").

---

[1]  The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]  All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion, the Order, or the First Day Declaration, as applicable.

Copies of the Interim Order or the Final Order (as applicable), and any other documents in the Debtors' chapter 11 cases are available upon request to Kroll Restructuring Administration LLC by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international) or visiting the Debtors' restructuring website at (https://restructuring.ra.kroll.com/RiteAid2025).

### A.    Real Property Assets to be Auctioned; Distribution of Auction Procedures

The Debtors are seeking to sell certain of the Debtors' Leases and/or Fee Owned Properties. For any sale of the Leases (including through the sale of designation rights related thereto) or Fee Owned Properties in these chapter 11 cases (the "Bankruptcy Case"), A&G Realty Partners, LLC and/or any such other agent of the Debtors shall, at the Debtors' direction, distribute these Auction Procedures to any potential interested bidders. The Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, may elect to exclude or remove (at any time prior to the entry of a Sale Order (as defined below)) any Leases or Fee Owned Properties from these Auction Procedures and sell such Leases or Fee Owned Properties at either a private or public sale, subject to Court approval of any alternative sale method. Furthermore, the Debtors may determine, in their discretion and in consultation with the Consultation Parties, whether to proceed with the sale of any Lease or Fee Owned Property pursuant to these Auction Procedures.

### B.    Public Announcement of Auctions.

The Debtors may utilize the Auction Procedures for future Auctions by (a) filing with the Court and serving on the Auction Notice Parties an auction and hearing notice (the "Auction and Hearing Notice"), substantially in the form attached to the Final Order as Schedule 2-A (for Auctions of Lease assets) or Schedule 2-B (for Auctions of Fee Owned Property Assets) and (b) posting the applicable Auction and Hearing Notice on their case website, https://restructuring.ra.kroll.com/RiteAid2025.

### C.    Eligibility of Bidders to Participate in Auction.

To participate in the Auction process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing a Lease, a Fee Owned Property, or any group of such assets (a "Potential Bidder") must be determined by the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, to be a Qualified Bidder (as defined below).

Any counterparty to a Lease (each, a "Lease Counterparty") proposed to be sold or transferred at the Auction shall be deemed a Qualified Bidder. Lease Counterparties may credit bid all or a portion of the applicable cure amount proposed by such Lease Counterparty. If such Lease Counterparty is the Successful Bidder on a Lease to which it is a party, and it is later determined by this Court or agreement by and among the Debtors and applicable Lease Counterparty that the actual cure amount is a lesser amount, then such Lease Counterparty shall pay the difference in cash prior to the Closing Deadline.

The Debtors may approve a joint Bid in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case basis, so long as a joint Bid otherwise meets the Qualified Bid requirements set forth in Section (D) below, and the applicable bidders otherwise comply with these Auction Procedures.

### D.    Qualification of Bidders

Except as otherwise set forth herein or agreed to by the Debtors in writing (email being sufficient), in order to be considered for status as a Qualified Bidder and to have a Qualified Bid, a bidder must:

(i)    Deliver via email and first class mail to (1) A&G Realty Partners, LLC, 445 Broadhollow Rd., Ste. 410, Melville, NY 11747 (Attn:    Andy Graiser, andy@agrep.com); (2) Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, (Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn:  Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)), so as to be received before 5:00 p.m. (prevailing Eastern time) on the applicable Bid Deadline, an irrevocable, good faith, and *bona fide* written offer (a "Bid") to purchase the applicable Lease or Fee Owned Property (such Bid that meets the below requirements, a "Qualified Bid," and such Bidder, a "Qualified Bidder") that:

(a)    Consists of, either (a) for Leases, an executed form of the "Assumption and Assignment Agreement," for Leases, attached hereto as **Exhibit A-1**, (b) for Fee Owned Property, an executed form of the "Purchase Agreement," attached hereto as **Exhibit A-2**; (c) for a Lease Counterparty bidding on a Lease to which it is a party, an executed form of the "Lease Termination Agreement" attached hereto as **Exhibit A-3** or (d) a proposed "Designation Rights Agreement" (if applicable).

(b)    Includes (i) for parties submitting an agreement pursuant to subparagraph D(i)(a)(a)-(c), (x) a Microsoft Word copy of the relevant agreement and (y) a PDF "redline" showing any proposed revisions to the form of Assumption and Assignment Agreement, Purchase Agreement, or Lease Termination Agreement (as applicable), and (ii) for parties submitting a Designation Rights Agreement pursuant to subparagraph D(i)(a),  a redline showing any proposed revisions to the form of order approving the sale or transfer of the Real Property Asset to the proposed purchaser.  Any bidder may propose to purchase more than one Real Property Asset.  The applicable agreement shall be marked to reflect differences as to the Leases or Fee Owned Properties to be purchased.

(c)    Is accompanied by a completed bidder registration form, substantially in the form attached hereto as **Exhibit B** (the "Bidder Registration Form"), which must detail which of the Leases or Fee Owned Properties up for sale the Qualified Bidder proposes to purchase and list an allocation of a portion of the aggregate proposed purchase price to each Lease or Fee Owned Property included in its total Bid.  A single bidder or group of bidders may purchase one Lease or Fee Owned Property or a combination of the Leases or Fee Owned Properties that the Debtors designate as available for sale.  If a bidder or group of bidders submits an offer for a combination of Leases or Fee Owned Properties, such bidder or group of bidders must indicate if it would be willing to purchase any of such assets if not sold as a group and, if so, provide a schedule indicating the Bid as to any individual or sub-group of Leases or Fee Owned Properties that such bidder would purchase and the allocation of a portion of the aggregate purchase price for any subgroup to each asset in such subgroup.  The Debtors reserve the right to determine, in consultation with the Consultation Parties, whether to auction any Leases or Fee Owned Properties as part of a group or individually up through and including at the Auction or to conduct an Auction of any Lease or Fee Owned Property both individually and as part of a group in order to determine which option maximizes value of such assets.

(d)    Contains no contingencies to the validity, effectiveness, and/or binding nature of the Bid, including without limitation, contingencies for due diligence and inspection or financing of any kind.

(e)    Contains sufficient documentation which demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, that the bidder has financial resources sufficient to close the transaction within twenty-one (21) calendar days after the Auction, which evidence may include, without limitation, evidence of cash on hand, a binding financing commitment from an established and financially sound financial institution or investment fund and the identity of contact persons at the entity issuing such commitment letter.

(f)    Demonstrates, to the satisfaction of the Debtors, in consultation with the Consultation Parties, that the bidder has the legal capacity to consummate the transaction it is proposing.

(g)    Includes a statement from the bidder that: (i) it is prepared to enter into and consummate the transactions contemplated in the Assumption and Assignment Agreement or the Purchase Agreement (as applicable) immediately upon entry by the Court of an order approving the sale of such asset(s) to such bidder; and (ii) the Qualified Bid, if determined to be a Successful Bid (as defined below) or Backup Bid (as defined below), will then be irrevocable for a period of thirty (30) calendar days after the conclusion of the Auction.

(h)    For a Bid on any Lease asset(s), includes an "Adequate Assurance Package,"[3]  The Adequate Assurance Package should be submitted in its own compiled PDF document.

Notwithstanding anything herein to the contrary, any Lease Counterparty bidding on a Lease to which it is a party shall not be required to include the items listed in subparagraphs D(i)(c), D(i)(e), D(i)(f), D(i)(h), or D(ii) in any bid; *provided, however,* that, with respect to the cash component of such bid, a Lease Counterparty shall be required to include the items listed in subparagraphs D(i)(e), D(i)(f).

**ALL QUALIFIED BIDS SHALL BE DEEMED IRREVOCABLE, NOTWITHSTANDING ANY CONDITIONS LISTED IN THE ASSUMPTION AND ASSIGNMENT.  IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTORS SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT AND PURSUE ALL OTHER CONTRACTUAL REMEDIES UNDER LAW OR EQUITY.**

(ii)    Contemporaneous with the submission of a Bid, tender an earnest money deposit of ten percent (10.0%) of the proposed cash purchase price for the sale of the Lease or Fee Owned Property (as applicable) (the "<u>Qualified Bidder Deposit</u>") by cashier's or certified check or wire transfer of immediately available funds, or such other amount agreed to by the Debtors, in consultation with the Consultation Parties, in writing (email being sufficient), which deposit shall be held in an escrow account in accordance with the terms of the Assumption and Assignment Agreement or Purchase Agreement (as applicable); *provided* that to the extent a Bid contains a non-monetary credit bid, the Qualified Bidder Deposit amount shall be based solely upon the cash portion of the Bid.[4]  The wire transfer or check memo line must include the following information (the "<u>Deposit Information</u>"): (a) the company name listed on the Bidder Registration Form attached as <u>Exhibit B</u> hereto and (b) the store name, store address, and store number of the store(s) that correspond to the Real Property Asset composing the Bid.  If the foregoing information does not fit in the wire transfer or check memo line, the bidder shall send an email to Mike Matlat (mike@agrep.com) with the Deposit Information and the federal reference number.  Notwithstanding the foregoing, any Lease

---

[3]    The Adequate Assurance Package may (but is not required to) include (a) the proposed assignee's specific name (and the name under which the proposed assignee intends to operate the premises), the proposed assignee's and any guarantor's business plans (which shall disclose the intended use of the leased premises and a description of the proposed business to be conducted at the premises), including sales and cash flow projections; (b) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of the Lease; (c) audited or unaudited financial statements, tax returns, bank account statements, or annual reports; (d) any financial projections, calculations, and/or financing pro formas prepared in contemplation of purchasing each Lease; (e) any documents regarding the proposed assignee's and any guarantor's experience in operating retail stores (including the number of retail stores the proposed assignee and any guarantor operates and the trade names used); (f) any additional evidence of the proposed assignee's financial wherewithal, including available cash and any debt or equity commitments or other forms of liquidity post-closing; and (g) any other documentation that the Debtors may further request.

[4]    For the avoidance of doubt, these funds are not property of the Debtors.

Counterparty bidder may submit a Bid to acquire the Leases to which it is a counterparty without submitting a Qualified Bidder Deposit.

(iii)   A Qualified Bidder Deposit will be refunded only if (a) the Bid corresponding to the Qualified Bidder Deposit is rejected or (b) the Bid corresponding with the Qualified Bidder Deposit is not approved by the Court. The Debtors reserve the right to hold each Qualified Bidder Deposit until five (5) business days after the closing of the sale of the applicable Lease or Fee Owned Property, but the Debtors may refund the full Qualified Bidder Deposit any time after the Sale Hearing. The provisions of this subparagraph (iii) shall apply to Qualified Bidders and control notwithstanding any conflicting provisions in the applicable Assumption and Assignment Agreement or Purchase Agreement.

(iv)   The Qualified Bidder agrees the Adequate Assurance Package may be disseminated to the affected Lease Counterparty if such Qualified Bidder's Bid is determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bid. If the requesting Lease Counterparty has submitted a ROFR Notice (as defined below) prior to the Bid Deadline, and the Debtors have confirmed such right of first refusal is valid under non-bankruptcy law, the Debtors shall provide the applicable Adequate Assurance Package and purchase price to such Lease Counterparty as soon as reasonably practicable after the determining the applicable bidder is a Qualified Bidder, but in all cases one day prior to the Auction.

### E.   Rejection of "Qualified Bid" Status for Non-Conforming Bids

The Debtors shall determine, in consultation with the Consultation Parties and counsel to any statutory committees appointed in the Debtors' chapter 11 cases, which Bids qualify as Qualified Bids and which Bids shall be rejected as non-confirming Bids. The Debtors shall have the right to reject a Bid as non-conforming (*i.e.*, a non-Qualified Bid); *provided*, *however*, the Debtors shall have the right to inquire or negotiate with any bidder with respect to clarification of any Bid.

### F.   Breakup Fee

Subject to entry of an order by this Court effectuating a sale or transfer (a "Sale Order"), the Debtors shall be further authorized, but not obligated, in an exercise of their business judgment and in consultation with the Consultation Parties, to (a) select a Qualified Bidder to act as a stalking horse bidder (a "Stalking Horse Bidder") in connection with each Lease and/or Fee Owned Property up for Auction and (b) in connection with any staking horse agreement with a Stalking Horse Bidder, provide for a breakup fee (the "Breakup Fee") in an amount not to exceed three percent (3.00%) of the proposed purchase price for such asset. The Breakup Fee shall be allocated among the Leases and/or Fee Owned Properties included in the Stalking Horse Bidder's Qualified Bid in the same proportion as the allocation of its aggregate purchase price among such assets listed on the Stalking Horse Bidder's Bidder Registration Form. Any Breakup Fee shall be payable solely from the proceeds of the sale of such asset. To the extent any Stalking Horse Bidder seeks any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of a Real Property Asset, a Stalking Horse Agreement shall be entered into.

### G. Due Diligence

Any Qualified Bidder may request diligence from the Debtors, and the Debtors may grant or deny the request in their reasonable business judgment and in consultation with the Consultation Parties.  The Debtors may require such Qualified Bidder to execute a non-disclosure agreement prior to providing diligence to such Qualified Bidder.

### H. Bid Deadline

The Debtors shall promptly provide to the Consultation Parties and the U.S. Trustee copies of all Bids received by the Debtors.  All Qualified Bids must be submitted to the Debtors' advisors in accordance with Section D (above), so as to be actually received no later than the applicable Bid Deadline.  Notwithstanding anything to the contrary in the Auction Procedures, the Debtors may, in their business judgment and in consultation with the Consultation Parties, after the applicable Bid Deadline, select a Successful Bidder for any of the Real Property Assets without holding an Auction for such assets.

### I. Terms of Auction

In the event that one or more Qualified Bids are submitted in accordance with these Auction Procedures, the Debtors will cause a notice to be filed on the docket of these chapter 11 cases indicating that there have been one or more Qualified Bids submitted (a "<u>Notice of Qualified Bids</u>") and may, in consultation with the Consultation Parties, hold an Auction sale of the Leases or Fee Owned Properties (as applicable) on the following terms:

> (i) **<u>Time, Date, and Location of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction.</u>**  The Auction will take place at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1825 Avenue of the Americas, New York, NY 10019 or by videoconference or such other form of remote communication established by the Debtors.  The Auction will be conducted on the date and time listed in the Auction and Hearing Notice.  The Debtors will send written notice (email being sufficient) of the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors, in consultation with the Consultation Parties, to the Consultation Parties, the Qualified Bidders, counsel to any statutory committees appointed in the Debtors' chapter 11 cases, the U.S. Trustee, and the relevant Lease Counterparties (if any), no later than seven (7) calendar days before such Auction, and file a notice of the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors, in consultation with the Consultation Parties, with the Court by no later than seven (7) calendar days before such Auction and post such notice on the Debtors' Case Website: https://cases.ra.kroll.com/RiteAid2025.  The Debtors, in consultation with the Consultation Parties, may modify the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors, by providing written notice to Qualified

Bidders and filing a notice with the Court so long as such notice is no later than three (3) calendar days before the Auction.

(ii)   **Permitted Attendees at Auction.**   Unless otherwise ordered or directed by the Court, only representatives of the Debtors, any other parties invited specifically by the Debtors (in consultation with the Consultation Parties), any Qualified Bidders, the Consultation Parties, counsel to any statutory committees appointed in the Debtors' chapter 11 cases, the U.S. Trustee, and the relevant Lease Counterparties (if any), and legal counsel and financial advisors for each of the forgoing shall be entitled to attend the Auction; *provided* that only the (i) Lease Counterparties that have either submitted a Qualified Bid or affirmatively provide evidence of a right of first refusal in writing (the "ROFR Notice") by the Bid Deadline and (ii) other Qualified Bidders that have submitted Qualified Bids by the Bid Deadline shall be entitled to bid at the Auction.   To the extent an Auction is not conducted by videoconference or such other form of remote communication established by the Debtors, any permitted attendee may attend the Auction by videoconference or such other form of remote communication established by the Debtors; *provided* that such permitted attendee must provide actual notice via email to the Debtors' advisors and counsel to the Debtors, as listed in Section D(i) herein, that it will make such an appearance at least one (1) day prior to the Auction.

(iii)   **Auction Bid Submission Procedures.**   The Auctions will be conducted by the Debtors, in consultation with the Consultation Parties, in accordance with the following procedures:

    (a)   For a Qualified Bid to be considered and further bid at the Auction, each Qualified Bidder or duly authorized agent must appear in person at the Auction or attend, unless alternative arrangements are agreed upon in advance by the Debtors, in consultation with the Consultation Parties.

    (b)   Only Qualified Bidders shall be entitled to make any subsequent Bids at the Auction.

    (c)   Bidding will commence with the announcement of the highest and best Qualified Bid with respect to each Lease or Fee Owned Property or group thereof, which shall be determined solely by the Debtors, in consultation with the Consultation Parties, in their business judgment.   Any Qualified Bidder may then submit successive Bids in minimum increments, which will be determined by the Debtors, in consultation with the Consultation Parties, at each Auction depending on the total dollar value of the assets being sold (the "Minimum Overbid Amount").   The Minimum Overbid Amount may be different with respect to each Lease, Fee Owned Property, or group thereof being auctioned.   Any Lease Counterparty that submits a ROFR Notice by the Bid Deadline may submit successive Bids on the applicable Lease(s) without offering any additional consideration, *provided* that the Debtors have determined such Lease Counterparty's right of first refusal would be enforceable under nonbankruptcy law.

8

(d)     If one or more Qualified Bids are received by the Debtors, each such Qualified Bidder shall have the right to improve its respective Bid at the Auction.

(e)     Each successive Bid submitted by any bidder at the Auction must contain an actual cash purchase price that exceeds the then existing highest Bid by at least the Minimum Overbid Amount.

(f)     At the commencement of the Auction and in consultation with the Consultation Parties, the Debtors may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive Bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

(iv)    **No Collusion.** Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the bidding and (b) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

(v)     **Selection of Successful Bid.** The Auction shall continue until there is only one Qualified Bid remaining to purchase a certain portion or all of the Lease or Fee Owned Properties (as applicable) that the Debtors determine, in consultation with the Consultation Parties any statutory committees appointed in these chapter 11 cases, and subject to Court approval, is the highest and/or best Qualified Bid (such Qualified Bid, the "Successful Bid" and, such Qualified Bidder, the "Successful Bidder"). For the avoidance of doubt, if there are any Qualified Bids for different Leases or Fee Owned Properties (as applicable), there may be multiple Successful Bidders. In making this decision, each Debtor may consider the amount of the purchase price, the form of consideration being offered, the contents of the Assumption and Assignment Agreement, the likelihood of such Qualified Bidder's ability to close the transaction, the timing thereof, and the net benefit to the estates. Each Debtor reserves the right to select, in consultation with the Consultation Parties and any statutory committees appointed in these chapter 11 cases, the Successful Bid, even if it is not the highest Bid; *provided* that in the event a Stalking Horse Bidder is selected by the Debtors and is not the Successful Bidder, the aggregate amount of the Successful Bid or Successful Bids (other than credit bids) must exceed the amount of the Stalking Horse Bid plus the Breakup Fee payable to the Stalking Horse Bidder. The Debtors reserve the right to not select, in consultation with the Consultation Parties and any statutory committees appointed in these chapter 11 cases, any Successful Bid or Successful Bidder with respect to any Lease, Fee Owned Property, or group thereof. The Successful Bidder shall have such rights and responsibilities of the purchaser, as set forth in the Assumption and Assignment Agreement or Purchase Agreement (as applicable). Prior to the Sale Hearing, the Successful Bidder shall complete and execute a final and revised Assumption and Assignment Agreement or Purchase Agreement (as applicable), as necessary to conform to the terms of the Auction, and all other agreements,

contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made (such documents collectively, the "Successful Bidder Sale Documents"). The Successful Bid shall be irrevocable for a period of thirty (30) days after the conclusion of the Auction.

(vi)     **Selection of Backup Bidder.**  The bidder of the second highest and best Bid for a portion or all of the Leases or Fee Owned Properties (as applicable), as determined by the Debtors in their discretion and in consultation with the Consultation Parties, may be deemed a backup bidder (such bidder the "Backup Bidder" and such Bid the "Backup Bid").  For the avoidance of doubt, if there are Qualified Bids for different portions of the Leases or Fee Owned Properties (as applicable), there may be multiple Backup Bidders.  If the Debtors so designate, in consultation with the Consultation Parties, a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute, as applicable, an Assumption and Assignment Agreement or Purchase Agreement, in form and substance reasonably acceptable to the Debtors memorializing, among other things, the amount of the Backup Bid (the "Backup Bidder Agreement").  Upon the failure of the Successful Bidder to timely consummate its purchase of the applicable Lease or Fee Owned Property, pursuant to the terms of the Successful Bidder Sale Documents, within three (3) calendar days of such failure, the Debtors shall file a supplemental notice seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.  The Backup Bidder Agreement shall be irrevocable for a period of thirty (30) calendar days after the conclusion of the Auction.

(vii)    **Irrevocability of Bids; Rejection of Bids.**  A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not selected as the Backup Bidder.  Unless determined by the Debtors, in consultation with the Consultation Parties, to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive Bids at the Auction shall be deemed rejected at the conclusion of the Auction.  Notwithstanding the foregoing, all Bids shall be deemed rejected on the Closing Deadline; *provided*, *however*, in the event the Successful Bidder does not close the sale of any given Lease or Fee Owned Property (as applicable), and the Debtors (being required to file a supplemental notice within three (3) calendar days thereafter) file a supplemental notice on or before the Closing Deadline seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing, such Bids shall remain irrevocable until the transaction is approved and closed, or rejected by the Court.

**J.     Sale Hearing**

The Court may hold a Sale Hearing on the date listed in the Auction and Hearing Notice to approve the sale of the Leases or Fee Owned Properties (as applicable), if any.  The Sale Hearing will be held at the United States Bankruptcy Court for the District of New Jersey, or by such other virtual or electronic means as determined by the Court.  At the Sale Hearing, the Debtors will seek entry of an order approving and authorizing the proposed sale to the Successful Bidder(s), if any; provided, however, that if no Objection to the sale of a Real Property Asset is filed by the applicable Objection Deadline, the Debtors may seek, at any time following the expiration of the

Objection Deadline, entry of an order approving and authorizing the proposed sale to the Successful Bidder(s) under a certificate of no objection.

The Debtors shall also notify the Court of the Backup Bidder, if any. The Debtors shall ascertain whether the Successful Bidder and the Backup Bidder are insiders of one or more of the Debtors, whether the sale represents an arm's-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Successful Bidder or Backup Bidder may be deemed to be purchasing the Leases in good faith pursuant to 11 U.S.C. § 363(m). At the Sale Hearing (if any), the Debtors shall seek to make a record of these findings with respect to the Successful Bidder and any order approving the sales shall include such findings in order to approve the sale to the Successful Bidder(s), pursuant to 11 U.S.C. § 363(m). The Sale Hearing may be adjourned or rescheduled by the Debtors, in consultation with the Consultation Parties, without notice other than by announcement of the adjourned date at the Sale Hearing or the Debtors' filing notice of a rescheduled Sale Hearing with the Court.

In the event the Successful Bidder does not close the sale of any given Lease or Fee Owned Property (as applicable), and the Debtors determine in their reasonable business judgment, and in consultation with the Consultation Parties and counsel to any statutory committees appointed in these cases, to effectuate the transaction with the Backup Bidder, the Debtors will file a supplemental notice within three (3) calendar days of the prior sale's closing date, seeking to approve the sale to the Backup Bidder. The Backup Bidder (as identified by the Notice of Successful and Backup Bidders) shall not be approved at the Sale Hearing.

### K.    Closing

The closing of the sale of the Leases or Fee Owned Properties (as applicable) will occur no later than the Closing Deadline, in accordance with the terms of the Successful Bidder Sale Documents or the (a) Assumption and Assignment Agreement of the entity otherwise authorized by the Court to purchase such Leases, (b) Purchase Agreement of the entity otherwise authorized by the Court to purchase such Fee Owned Properties, or (c) Lease Termination Agreement of the Lease Counterparty otherwise authorized by the Court to purchase such Lease, as applicable.

### L.    Failure of Successful Bidder to Consummate Purchase

If the Successful Bidder fails to consummate the purchase of the Leases or Fee Owned Properties (as applicable) pursuant to the terms of the Successful Bidder Sale Documents, and such failure is the result of the Successful Bidder's breach of, or default or failure to perform under any Successful Bidder Sale Documents or the terms of these Auction Procedures, including cooperating with the Debtors and their advisors to contest any objections to either the assumption and assignment of the applicable Lease or the sale of the applicable Fee Owned Property and appearing for testimony, as needed, (the "Defaulting Bidder"), such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to the Debtors as liquidated damages, and the Debtors shall have all rights and remedies available under applicable law.

**M.      Disclosures**

Qualified Bidders shall disclose to the Debtors all communications with other Qualified Bidders following the submission of a Qualified Bid until the sale of the applicable Leases or Fee Owned Properties.

**N.      Commissions**

Subject to section E hereof, the Debtors shall be under no obligation to pay commission to any agent or broker, with the exception of any agent or broker used by the Debtors.  All commissions, fees, or expenses for agents, other than as retained by the Debtors, may be paid by bidders at such bidder's discretion.  In no case shall any commissions, fees, or expenses be deducted from the proceeds of the sale of the Leases or Fee Owned Properties (as applicable), or the agreed Successful Bid, subject to section F hereof.

**O.      No Representation; Qualified Bidder's Duty to Review**

The Debtors are not making and have not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Leases or Fee Owned Properties, the truth, accuracy, or completeness of any documents related to the Leases or Fee Owned Properties, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Leases or Fee Owned Properties.  All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Leases or Fee Owned Properties (as applicable) "AS-IS, WHERE IS, WITH ALL FAULTS," except to the extent expressly provided otherwise in the Court's order approving the sale.  All bidders must agree that they have not relied on and will not rely on, and the Debtors are not liable for or bound by, any express or implied warranties, guaranties, statements, representations, or information pertaining to the Leases or Fee Owned Properties, or relating thereto made or furnished by the Debtors or any real estate broker or agent representing or purporting to represent the Debtors, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in the Bankruptcy Court's order approving the sale.

**P.      Reservation of Rights**

The Debtors reserve their rights to modify these Auction Procedures, in their business judgment and in consultation with the Consultation Parties, in any manner that will best promote the goals of these Auction Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on sales, including, without limitation: (i) extending the deadlines set forth in these Auction Procedures; (ii) adjourning the Auction or the Sale Hearing; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids or Qualified Bids. Nothing in these Auction Procedures shall abrogate the fiduciary duties of the Debtors.  For the avoidance of doubt, this paragraph shall not authorize the Debtors to limit notice periods or other protections provided to Lease Counterparties in the Order.

### Q.    Consent to Jurisdiction

All Qualified Bidders at the Auction shall be deemed to have (i) consented to the jurisdiction of the Court and (ii) waived any right to a jury trial in connection with any disputes relating to the Auction, the construction, and enforcement of these Auction Procedures.

### R.    Return of Qualified Bidder Deposit

The Qualified Bidder Deposit of the Successful Bidder shall be applied to the purchase price of any transaction that closes with respect to that Qualified Bidder.  The Qualified Bidder Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is five (5) business days after the close of the sales, or as soon as is reasonably practicable thereafter.

If a Successful Bidder (or Backup Bidder, as applicable) fails to consummate a proposed transaction because of a breach by such Successful Bidder (or Backup Bidder, as applicable) or by failing to cooperate to obtain approval of the Bid, the Qualified Bidder Deposit shall be released to the Debtors and the Debtors shall not have any obligation to return the Qualified Bidder Deposit deposited by such Successful Bidder (or Backup Bidder, as applicable).  Such Qualified Bidder Deposit released to the Debtors may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

### S.    Fiduciary Out

Nothing in these Auction Procedures shall require each Debtor's management or board of directors to take any action, or to refrain from taking any action, with respect to these Auction Procedures, to the extent each Debtor's management or board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

## **Exhibit A-1**

**Form Assumption and Assignment Agreement**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

      This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2025, is by and between _____ ("Assignor") and _____ ("Assignee").

## RECITALS

      WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"); and

      WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (referred to as the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms and conditions of the Auction Procedures approved by the Bankruptcy Court in the chapter 11 cases of *In re New Rite Aid, LLC, et al.*, Case No. 25-14861 (MBK) (the "Bankruptcy Court Approval").

      NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties ("Parties") hereto agree as follows:

## AGREEMENT

      1.    Assignment and Assumption.  Effective upon the receipt of Bankruptcy Court Approval and payment of the Purchase Price as set forth below:

      (a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease(s).

      (b)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease(s).

      2.    Payment of Purchase Price.  Assignee shall, on or before _____, 2025, deliver the purchase price for the Lease(s) in the amount of _____ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.  Together with the Purchase Price, Assignee shall also pay to Assignor the sum of $_____ respecting rent and other charges paid by Assignor under the Lease for the months in which the Closing (hereinafter defined) occurs and any subsequent months.  If the assumption and assignment of the Lease(s) do(es) not occur by _____, 2025, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Lease(s) on and after _____, 2025.  The Parties acknowledge that if the assignment and assumption of the Lease(s) (the "Closing") does not occur before _____, 2025, the Lease(s) may thereafter be rejected in the Bankruptcy Court proceeding referenced above.

      3.    Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Lease(s), including, but not limited to, accrued but unbilled adjustments

2

for CAM, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Lease(s).

4.    <u>No Further Liability of Assignor</u>.  From and after Closing, Assignor shall have no further obligations and duties with respect to the Lease(s).

5.    <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease(s).

6.    <u>"As Is Where Is" Transaction</u>.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Lease(s) and all such other matters relating to or affecting the Lease(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Lease(s) "AS IS" and "WHERE IS."

7.    <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.    <u>Jurisdiction.</u>  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.    <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.    <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared

3

and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

      12.   <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

*[Signatures appear on following page]*

**ASSIGNOR:**
**[DEBTOR-ASSIGNOR]**

By: _____
Name: _____
Its: _____

**ASSIGNEE:**
**[ASSIGNEE]**

By: _____
Name: _____
Its: _____

## **Exhibit A-2**

**Form Asset Purchase Agreement**

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is executed as of the [●] day of [●], 2025 (the "Effective Date"), by and between [●], a [●] ("Seller") and [●], a [●] ("Purchaser").

## RECITALS

**WHEREAS**, on May 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

**WHEREAS**, the Debtors seek to cause Seller to sell the Property (defined below) pursuant to the terms and conditions of this Agreement and subject to approval by the Bankruptcy Court in the chapter 11 cases of *In re New Rite Aid, LLC, et al.,* Case No. 25-14861 (MBK) (Bankr. D.N.J. 2025) (the "Bankruptcy Cases");

**WHEREAS**, Seller believes that the Property should be sold through an orderly sale process as part of the Bankruptcy Cases;

**WHEREAS**, Seller is willing to sell the Property to Purchaser, and Purchaser is willing to purchase the Property from Seller; and

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, and conditions stated herein, the sufficiency of which is hereby acknowledged by the parties hereto, Seller and Purchaser hereby agree as follows:

## AGREEMENT

1.    Sale of Property.  On the terms and conditions set forth in this Agreement, Seller agrees to sell, assign, convey and transfer to Purchaser, and Purchaser agrees to purchase from Seller, all rights, title and interests held by Seller in and to the real property specifically described on **Annex I** attached hereto and incorporated herein by this reference (the "Real Property"), together with all buildings, facilities and other improvements located thereon (collectively, the "Improvements") and all easements, licenses, rights and appurtenances relating to any of the foregoing (collectively, with the Real Property and the Improvements, the "Property").

2.    Purchase Price.

A.    Seller is to sell and Purchaser is to purchase the Property for a total of [●] Dollars ($[●]) (the "Purchase Price").

B.    The Purchase Price for the Property (exclusive of closing adjustments and costs provided for herein) shall be paid in the following manner:

(i)    A deposit in the amount of [●] Dollars ($[●])[5] (the "Deposit") shall be delivered to [●] (the "Escrow Agent") on the Effective Date, in immediately available funds, which such

---

[5] Note to Draft:  10% of the Purchase Price.

Deposit shall be non-refundable to Purchaser except as otherwise expressly set forth in this Agreement;

(ii)    The balance of the Purchase Price, exclusive of closing adjustments and costs (the "<u>Balance</u>"), is due at the closing of the transaction contemplated hereunder (the "<u>Closing</u>") and shall be delivered to Escrow Agent no later than 11:00 am Eastern Time on the Closing Date (defined below), in immediately available funds.

C.    The acceptance by Purchaser of the delivery of the quit claim deed (the "<u>Deed</u>") at Closing shall be deemed to be full performance and discharge of every agreement and obligation (either express or implied) on the part of Seller to be performed pursuant to this Agreement and no representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

3.    <u>Purchaser Financing</u>.  Purchaser assumes full responsibility to obtain the funds required for settlement, and Purchaser's acquisition of such funds (including any financing proceeds) shall not be a contingency to the Closing or Purchaser's obligations hereunder.

4.    <u>No Investigations/Due Diligence Period</u>.

A.    Purchaser acknowledges that there is no "due diligence period" or "due diligence termination right" in this Agreement and Purchaser does not have the right to terminate this Agreement based on the results of such inspections or for any other reason.

B.    Purchaser acknowledges that, subject to <u>Section 34</u> of this Agreement, Seller has delivered to Purchaser, or has otherwise made available to Purchaser, certain due diligence materials (the "<u>Due Diligence Materials</u>"), in each case, to the extent in Seller's reasonable possession.  Seller will have no obligation to deliver or disclose to Purchaser any of Seller's attorney-client privileged materials, appraisals, internal memoranda, or internal evaluations of the Property, or any materials that are confidential and proprietary.  Except as may be otherwise expressly set forth in this Agreement and the Closing documents, Seller makes no representations or warranties of any kind regarding the accuracy, thoroughness, or completeness of, or conclusions drawn in the information contained in, any Due Diligence Materials and Purchaser is relying on the same at its own risk and without recourse to Seller.

5.    <u>Intentionally Omitted</u>.

6.    <u>Bankruptcy Court Approval and Sale Order</u>.  The parties' obligations set forth in this Agreement are expressly subject to approval by the Bankruptcy Court (the "<u>Bankruptcy Court Approval</u>") pursuant to an order (the "<u>Sale Order</u>") approving the sale to Purchaser.  The Sale Order shall include factual findings and ordering provisions that provide that (i) title to the Property shall be transferred to Purchaser free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and interests to attach to the proceeds of the sale in the same order, priority and validity that presently exists; *provided, however*, that the Property shall be transferred subject to all easements, right of ways, leases (recorded or unrecorded), covenants, restrictions and all other exceptions of record; (ii) Purchaser is purchasing the Property in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections offered thereby; (iii) this Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and at an arms'-length bargaining position; and (iv) the stay provided under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure shall be waived to the extent necessary to permit a Closing to occur as soon as possible after entry of the Sale Order.

7.      Reservation of Rights.  Seller reserves all rights to terminate this Agreement at any time prior to the Closing, by written notice from Seller to Purchaser, including, but not limited to, terminating this Agreement if Seller or the board of directors (or similar governing body) of Seller determines that proceeding with the sale(s) or failing to terminate this Agreement would be inconsistent with its or such person's or body's fiduciary duties.  Upon the termination of this Agreement by Seller pursuant to this Section 7, Escrow Agent shall return the Deposit to Purchaser.

8.      Representations of Purchaser.  Purchaser covenants, represents, and warrants to Seller that, as of the Effective Date and as of the Closing Date:

        A.      The proposed sale transaction contemplated by this Agreement represents an arms'-length transaction between the parties, made without fraud or collusion with any other person; and

        B.      There has been no attempt to take any unfair advantage of Seller.

9.      Closing Deliveries.

        A.      On or before 11:00 am Eastern Time on the Closing Date, Seller shall deliver to the Escrow Agent each of the following, executed and acknowledged, as appropriate, to be delivered to, or pursuant to the direction of, Purchaser upon Closing:  (i) the Sale Order in recordable form, (ii) the Deed (in proper statutory form for recording) so as to transfer all of its right, title and interest in and to the Property in the form attached hereto as **Annex II**, (iii) Seller's signature to a closing statement prepared by Escrow Agent, and (iv) such other documents reasonably required to effect a transfer of the Property under applicable state law.  Notwithstanding anything to the contrary contained herein, Seller shall not be required to execute or deliver any title affidavit or indemnity.

        B.      On or before 11:00 am Eastern Time on the Closing Date, Purchaser shall deliver to Escrow Agent each of the following, executed and acknowledged, as appropriate, to be delivered to, or pursuant to the direction of, Seller (with the Deposit) upon Closing:  (i) the full Purchase Price (less the Deposit), plus or minus if then calculated the adjustments or prorations required by this Agreement, (ii) Purchaser's signature to the closing statement, and (iii) such other documents reasonably required to effect a transfer of the Property under applicable state law.

10.     Closing Date and Office.  The Closing shall take place not later than five (5) days after the entry of the Sale Order or such other date mutually agreed upon by Purchaser and Seller (the "Closing Date") and shall occur through a deed and money escrow agreement with Escrow Agent pursuant to which, on the Closing Date, Escrow Agent shall be responsible for (x) preparation of the closing statement, (y) collection and disbursement of all closing documents, and (z) collection and disbursement of the funds. Notwithstanding anything in this Agreement to the contrary, in the event the Bankruptcy Court has not entered the Sale Order on or prior to [●], 2025, Seller, upon notice to Purchaser, may elect to terminate this Agreement, with no consequences to Seller and/or the Purchaser's bankruptcy estate.  In the event of such termination, Escrow Agent shall return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations (defined below)).  In the event the Bankruptcy Court rejects Purchaser's offer as set forth herein, the rights and remedies of the parties shall be as set forth in the Sale Order.  The parties acknowledge that Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent of either of the parties, and that Escrow Agent shall not be liable to either of the parties for any action or omission on its part taken or made in good faith, and not in disregard of this Agreement, but shall be liable for its negligent acts and for any liabilities (including reasonable attorneys' fees, expenses and disbursements) incurred by Seller or Purchaser resulting from Escrow Agent's mistake of law respecting Escrow Agent's scope or nature of its duties, negligence or breach of this Agreement.  Seller and Purchaser shall severally, on a 50/50

basis, indemnify and hold Escrow Agent harmless from and against all liabilities (including reasonable out-of-pocket attorneys' fees, expenses and disbursements) actually incurred in connection with the performance of Escrow Agent's duties hereunder, except with respect to actions or omissions taken or made by Escrow Agent in bad faith, in breach of this Agreement or involving negligence on the part of Escrow Agent.  Escrow Agent has executed this Agreement in the place indicated on the signature page hereof in order to confirm that Escrow Agent shall hold the Deposit and closing documents in escrow and shall disburse the Deposit and closing documents pursuant to this Agreement.

11.    Permitted Exceptions.

A.    At Closing, Seller shall convey title to the Property, subject to the following (collectively, the "Permitted Exceptions," and the condition of the title subject only to the Permitted Exceptions is referred to herein as "Acceptable Title"):

(i)    All matters (A) shown in any title commitment, title pro forma, title policy and/or survey obtained by Purchaser or delivered by Seller to Purchaser, (B) shown in the public records where the Property is located, (C) which would be shown in a current and accurate title commitment, title report and/or survey of the Property, or (D) which would be disclosed by a physical inspection of the Property;

(ii)    The leases and property contracts and all matters reflecting the existence or terms of the leases or property contracts, including non-disturbance agreements, notices (or short forms) of leases or property contracts and financing statements pertaining to any tenant's property;

(iii)    Applicable zoning, governmental, subdivision, building and other land use laws, regulations and ordinances;

(iv)    Any lien created, permitted or suffered by any tenant;

(v)    The lien of real estate taxes and assessments not yet due and payable, subject to proration or adjustment as provided in this Agreement;

(vi)    Any installation, service, connection, usage or maintenance charge for sewer, water, electricity, telephone, cable or internet service, and any charges due under any reciprocal easement agreement, declarations of covenants, conditions, restrictions, common area agreement, shared maintenance agreement, or similar agreements which burden or benefit the Property, in each case subject to adjustment or proration as provided in this Agreement;

(vii)    All standard pre-printed exceptions and provisions contained in any title commitment, title pro forma or title policy obtained by Purchaser;

(viii)    All matters affecting title to the Property of which Purchaser has knowledge as of the Closing Date;

(ix)    Any defects in or objections to title to the Property, or title exceptions or encumbrances, arising by, through or under Purchaser or its consultants or agents; and

(x)    All matters shown on any existing owner's policy of title insurance provided to Purchaser.

B.      Must-Cure Items.  Notwithstanding the foregoing, as a condition to Closing, Seller shall be obligated to (i) cause any mortgages, deeds of trust, tax liens, or judgements granted by Seller on the Property evidencing indebtedness to be satisfied and/or removed of record, and (ii) cause any mechanics' liens or materialmans' liens encumbering the Property for work performed at the Property and ordered by Seller to be satisfied and/or removed of record (or bonded over) so that such liens do not appear as exceptions to Purchaser's title policy (collectively, "Must-Cure Items").

12.     Title Policy.  Purchaser shall accept title subject to the Permitted Exceptions.  If Purchaser desires to purchase title insurance, Purchaser may do so, at Purchaser's discretion and at its sole cost and expense. Seller shall not be obligated to cause the title company to omit any Permitted Exception, including, but not limited to, the satisfaction of any exception to title relating to the filing of Seller's federal or state tax return. Purchaser shall not have the right to terminate this Agreement if Seller is able to provide Acceptable Title.

13.     Survey.  Purchaser may order a survey of the Property, at its sole cost and expense.

14.     Condemnation; Casualty.

A.      In the event that, after the Effective Date but prior to the Closing, all or any material portions of the Property, any interests therein, or any rights appurtenant thereto are taken or appropriated (either permanently or for temporary periods) under the power of eminent domain or condemnation by any authority having such power, or by virtue of any actions or proceedings in lieu thereof, or if any notice or threat of such taking or appropriation has been given or is pending at the Closing Date that would result in the reduction of value in such Property by more than ten percent (10%) of the Purchase Price, Purchaser may elect to terminate this Agreement by providing written notice of such termination to Seller and Escrow Agent within seven (7) business days after Purchaser's receipt of notice of such condemnation, taking or damage, and upon receipt of such written notice, Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations), or (b) elect to proceed with Closing, in which event the Purchase Price shall be reduced by an amount equal to any sums actually received by Seller from the condemning authority by reason of such taking, appropriation or action or proceeding in lieu thereof.

B.      In the event the Property is damaged in any material respect after the Effective Date but prior to the Closing Date and such damage was not caused by Purchaser, any consultant, any of their respective employees or agents, or any inspection and there is no insurance to cover the loss, if the cost to repair such casualty would exceed ten percent (10%) of the Purchase Price, either Purchaser or Seller can elect to terminate this Agreement by delivering written notice to the other party and Escrow Agent within seven (7) business days after such damage occurs.  In such an event, the Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations).  In the event the Property is damaged prior to Closing and such damage was not caused by Purchaser, any consultant, any of their respective employees or agents, or any inspection, and there is insurance to cover the loss, then Purchaser shall have no right to terminate this Agreement and shall proceed with Closing in which event the Purchase Price shall be reduced by all insurance proceeds payable in respect of such damage collected by Seller before the Closing Date and Seller shall assign to Purchaser all of Seller's rights, title and interest in and to all such insurance proceeds not collected by Seller before Closing Date.

15.     Acceptance of State and Municipal Department Violations and Orders.  Purchaser accepts the Property subject to all notes or notices of violations, known or unknown, of law or municipal ordinances, orders or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire and health and labor conditions affecting the Property.

11

16.    Closing Adjustments and Costs.

A.    Purchaser shall pay the cost of all (i) sales, use, gross receipts, documentary stamps, recordation taxes, transfer taxes and any other similar tax related to the conveyance of title to Property, (ii) title searches, title commitments, title policies (including any fees, premiums and costs relating to procurement of any title commitments, title policies and any requested endorsements) requested by Purchaser, (iii) survey(s) (and any updates thereto) ordered by Purchaser, (iv) investigations (including, without limitations, Purchaser's investigations) conducted by or on behalf of Purchaser, (v) closing costs and any fees payable to the Escrow Agent or any title company, (vi) any fees or expenses payable for the assignment, transfer or conveyance of any property contracts, permits, plans and specifications and warranties to Purchaser, (vii) any mortgage tax, title insurance fees and expenses for any loan title insurance policies, recording charges or other amounts payable in connection with any financing obtained by Purchaser, and (viii) the fees and expenses of Purchaser's own attorneys, accountants, consultants and advisors.

B.    If, at the time of Closing, the Property is affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Agreement all the unpaid installments shall be payable by Purchaser when each installment as to such assessment is due and payable after the Closing.

C.    Each of the following items are to be apportioned as of midnight the day before the Closing Date: (i) real estate taxes on the basis of the fiscal period for which assessed; (ii) special assessment liens in accordance with the preceding paragraph; (iii) utilities; (iv) water and sewer charges; and (v) any other charges customarily prorated in similar transactions.  If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

17.    Use of Purchase Price to Pay Certain Encumbrances.  If there are any Must-Cure Items which Seller is obligated to pay and discharge at Closing pursuant to this Agreement, Seller may, to the extent permitted by the Sale Order, use any portion of the Balance of the Purchase Price to discharge same.  As an alternative, Seller may, to the extent permitted by the Sale Order, deposit money with the title company, if any, in such amount as reasonably required by such title company to assure its discharge.  Upon request made within a reasonable time before Closing, Purchaser agrees to provide separate certified checks to assist in clearing up these matters.

18.    Events of Default.

A.    Purchaser shall be in default under this Agreement if Purchaser (A) fails to timely deliver the Deposit, (B) fails to pay the Balance to Escrow Agent on or before the Closing Date, or (C) fails to pay, perform or observe any of Purchaser's other representations, warranties or obligations hereunder (each of the foregoing, a "Purchaser Default").

B.    If, prior to Closing (x) a Purchaser Default occurs, or (y) Seller materially defaults in its covenants or obligations under this Agreement (such default, a "Seller Default"), then the non-defaulting party may elect to either (i) waive the event of default and proceed to Closing, or (ii) terminate this Agreement by delivering written notice of such termination to the defaulting party and Escrow Agent, in which event this Agreement shall be of no further force or effect (other than the Surviving Obligations).

12

Further:

(i)      if Purchaser terminates this Agreement as a result of a Seller Default, then, as Purchaser's sole and exclusive remedy, Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and Seller shall be released from any and all liability hereunder.  Purchaser expressly waives its right to seek damages in the event of a Seller Default; and

(ii)      if Seller terminates this Agreement as a result of a Purchaser Default, then all payments made hereunder shall be forfeited to and retained by Seller and Escrow Agent shall deliver the Deposit to Seller and Seller shall be entitled to the retention of the Deposit as liquidated damages and not a penalty.  SELLER AND PURCHASER ACKNOWLEDGE THAT SELLER'S DAMAGES WOULD BE DIFFICULT TO DETERMINE, AND THAT THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S DAMAGES RESULTING FROM A DEFAULT BY PURCHASER IN ITS OBLIGATION TO PURCHASE THE PROPERTY.  SELLER AND PURCHASER FURTHER AGREE THAT THIS <u>SECTION 18</u> IS INTENDED TO AND DOES LIQUIDATE THE AMOUNT OF DAMAGES DUE TO SELLER, AND SHALL BE SELLER'S EXCLUSIVE REMEDY AGAINST PURCHASER, BOTH AT LAW AND IN EQUITY, ARISING FROM OR RELATED TO A BREACH BY PURCHASER OF ITS OBLIGATION TO CONSUMMATE THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OTHER THAN WITH RESPECT TO PURCHASER'S INDEMNITY AND CONFIDENTIALITY OBLIGATIONS HEREUNDER.

C.      SELLER AND PURCHASER FURTHER AGREE THAT THIS <u>SECTION 18</u> IS INTENDED TO AND DOES LIMIT THE AMOUNT OF DAMAGES DUE TO PURCHASER AND THE REMEDIES AVAILABLE TO PURCHASER, AND SHALL BE PURCHASER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER, BOTH AT LAW AND IN EQUITY ARISING FROM OR RELATED TO SELLER DEFAULT.  UNDER NO CIRCUMSTANCES MAY PURCHASER SEEK OR BE ENTITLED TO RECOVER ANY SPECIAL, CONSEQUENTIAL, PUNITIVE, SPECULATIVE OR INDIRECT DAMAGES, ALL OF WHICH PURCHASER SPECIFICALLY WAIVES, FROM SELLER FOR ANY SELLER DEFAULT.  PURCHASER SPECIFICALLY WAIVES THE RIGHT TO FILE ANY LIS PENDENS OR ANY LIEN AGAINST THE PROPERTY.

D.      If Purchaser breaches this Agreement and Seller institutes a judicial action to enforce its rights or obtain remedies hereunder, Purchaser shall pay to Seller the reasonable attorneys' fees, court costs and expenses incurred by Seller.

19.      <u>No Representation; Purchaser's Duty to Review</u>.

**IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS (INCLUDING, WITHOUT LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY PROPERTY DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO**

**PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY. PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND TRANSFER TO PURCHASER AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS," EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT. PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY OR RELATING THERETO (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, PROPERTY INFORMATION PACKAGES DISTRIBUTED WITH RESPECT TO THE PROPERTY) MADE OR FURNISHED BY THE SELLER OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT. PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO CLOSING, SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE PROPERTY, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT.**

20.    <u>Notices</u>.  Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States mail, postage prepaid, registered or certified mail, return receipt requested, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein. Unless changed in accordance with the preceding sentence, the addressees for notices given pursuant to this Agreement shall be as follows:

        If to Seller:        New Rite Aid, LLC
                                  200 Newberry Commons
                                  Etters, PA 17319
                                  Attn:  Matthew Schroeder
                                  Email: MSchroeder@riteaid.com

14

|  |  |
|---|---|
| With a copy to: | Paul, Weiss, Rifkind, Wharton & Garrison, LLC 1285 Avenue of the Americas<br>New York, NY 10019<br>Attn:  Alice Belisle Eaton, Christopher Hopkins, Nick Krislov<br>Email:  aeaton@paulweiss.com,  chopkins@paulweiss.com, nkrislov@paulweiss.com |

If to Purchaser:        _____
                        Attn: _____
                        _____
                        _____

With a copy to:         _____
                        Attn: _____
                        _____
                        _____

21.    <u>Additional Provisions</u>.

        A.    This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to conflicts of laws principles.  Any action of any kind whatsoever, including a counterclaim, cross-claim, or defense, regardless of the legal theory under which any liability or obligation may be sought to be imposed, whether sounding in contract or in tort or under statute, or whether at law or in equity, or otherwise under any legal or equitable theory, that may be based upon, arising out of, or related to this Agreement or the negotiation, execution, or performance of this Agreement and any questions concerning the construction, interpretation, validity and enforceability of this Agreement (each, an "<u>Agreement Dispute</u>") brought by Seller and its successors or assigns or Purchaser and its successors or assigns will be brought and determined only in the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may be validly taken.  Seller and Purchaser hereby irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, each for itself and with respect to its property, generally and unconditionally, with regard to any Agreement Dispute.  Seller and Purchaser each agree not to commence any Agreement Dispute except in the Bankruptcy Court and neither Seller nor Purchaser will file a motion to dismiss any Agreement Dispute filed in the Bankruptcy Court on any jurisdictional or venue-related grounds, including the doctrine of *forum non conveniens*.  Seller and Purchaser irrevocably agree that venue would be proper in the Bankruptcy Court, and hereby irrevocably waive any objection that the Bankruptcy Court is an improper or inconvenient forum for the resolution of any Agreement Dispute.

        B.    The parties agree that neither this Agreement nor any memorandum hereof shall be recorded or filed in any government office charged with the obligation to accept documents for recording or filing, and such office is instructed to refuse to accept same for recordation or filing.

22.    <u>Strict Compliance</u>.  Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

23.    <u>Waiver of Jury Trial</u>.  EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT, OR THE RELATIONSHIP CREATED HEREBY.  With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.  The parties submit to the exclusive jurisdiction and venue of the Bankruptcy Court with respect to any dispute, claim or issue arising out of this Agreement.

24.    <u>Entire Agreement</u>.  All prior understandings and agreements between Seller and Purchaser are merged in this Agreement.  It completely expresses their full agreement; neither party is relying upon any statements made by anyone else that are not set forth in this Agreement.

25.    <u>Singular Also Means Plural</u>.  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

26.    <u>Gender</u>.  A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

27.    <u>Certain References</u>.  The term "herein," "hereof" or "hereunder" or similar terms used in this Agreement shall refer to this entire Agreement and not to the particular provision in which the term is used.  Unless otherwise stated, all references herein to paragraphs, subparagraphs or other provisions are references to paragraph, subparagraphs or other provisions of this Agreement.

28.     <u>No Oral Changes</u>.  This Agreement cannot be changed or any provision waived orally.  ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

29.    <u>Date of Performance</u>.  If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state where the Property is located, the date for such performance shall be the next succeeding business day.

30.    <u>Severability</u>.  Except as set forth herein, if any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby; provided, however, the parties agree that the conditions for Bankruptcy Court Approval and issuance of a Sale Order is a non-negotiable condition precedent to the validity and enforcement of this Agreement against the Purchaser.  Any other clauses or provisions of this Agreement, not found invalid and unenforceable, shall be and remain valid and enforceable.

31.    <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of real estate under the laws of the State of New York.  It is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both Seller and Purchaser.

32.    <u>Execution</u>.  For the purposes of executing this Agreement, a document signed and transmitted by electronic (PDF) mail shall be treated as an original document.  The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document.  At the request of either party, any electronic (PDF) mail document shall be re-executed by both parties in original form.  No party hereto may

raise the use of electronic (PDF) mail or the fact that any signature was transmitted through the use of electronic (PDF) mail as a defense to the enforcement of this Agreement or any amendment executed in compliance with this paragraph.  This paragraph does not supersede the requirements of <u>Section 20</u> hereof.

33.    <u>Assignment</u>.  Purchaser shall not assign this Agreement without the prior written consent of Seller, such consent to be given or withheld in Seller's sole and absolute discretion.  Any purported assignment by Purchaser in violation of this Agreement shall be voidable at the option of Seller.  The refusal of any such person to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against Seller.  Any assignment by Purchaser, even if consented to by Seller, shall not act to limit, reduce or impact in any way any of Purchaser's obligations to perform all of its obligations under this Agreement including, without limitation, its obligation to pay the Purchase Price.

34.    <u>Construction of Agreement</u>.  This Agreement has been drafted through a cooperative effort of both parties, and neither party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this Agreement.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the parties.

35.    <u>Confidentiality</u>.  All information and material obtained by Purchaser in connection with this Agreement, including, without limitation, the Due Diligence Materials (collectively, the "<u>Confidential Information</u>"), (a) will be held in strict confidence, and (b) will not be disclosed to any third party without Seller's prior written consent.  Notwithstanding the immediately preceding sentence, Purchaser may disclose the Confidential Information as required by law or to its respective affiliates, investors, lenders, employees, agents, attorneys or consultants who are responsible for determining the feasibility of Purchaser's acquisition of the Property (collectively, the "<u>Permitted Outside Parties</u>") on the condition that such persons maintain the confidentiality of the Confidential Information.  In permitting Purchaser and the Permitted Outside Parties to review the Confidential Information, Seller has not waived any privilege or claim of confidentiality with respect thereto, and no third-party benefits or relationships of any kind, either express or implied, have been offered, intended or created.  Seller shall have the right to pursue all of its rights and remedies available to Seller, at law and/or in equity, as a result of any breach by Purchaser or any Permitted Outside Party of this <u>Section 34</u> and Purchaser shall be responsible to Seller for any breach of this <u>Section 34</u> by Purchaser or any Permitted Outside Party.  In the event this Agreement terminates for any reason, all Confidential Information shall be returned by Purchaser to Seller (or the destruction thereof shall be certified in writing by Purchaser to Seller) as a condition to the return of the Deposit.  Purchaser shall also promptly notify Seller in writing of requests for Confidential Information from any third party or regulatory agency.  Notwithstanding anything in the foregoing to the contrary, Purchaser shall not issue any press release or otherwise permit any public announcement disclosing the terms of the sale, naming Seller or any of its affiliates as having any involvement in the transaction, or otherwise disclosing any Confidential Information without Seller's prior written consent, which consent Seller may withhold in its sole discretion.

36.    <u>Time of the Essence</u>.  It is expressly agreed by the parties hereto that time is of the essence with respect to this Agreement and any aspect thereof.

37.    <u>No Exclusive Negotiations</u>.  Seller shall have the right, at all times prior to the Closing, to solicit backup offers and enter into discussions, negotiations, or any other communications concerning or related to the sale of the Property with any third-party; *provided*, *however*, that such communications are subject to the terms of this Agreement, and that Seller shall not enter into any binding contract with a third-party for the sale of the Property unless such contract is contingent on the termination of this Agreement without the Property having been conveyed to Purchaser.

38.     <u>Not an Offer</u>.  The delivery by Seller of this Agreement shall not constitute an offer to sell the Property, and Seller shall have no obligation to sell the Property to Purchaser, unless and until Purchaser and Seller have each executed and delivered this Agreement to the other party.

39.     <u>Survival</u>.  Except for the terms of provisions of (i) Sections <u>15</u>, <u>18</u>, <u>19</u>, <u>23</u>, and <u>34</u> and (ii) any other provisions in this Agreement that by their express terms survive the Closing (the foregoing (i) and (ii) are referred to herein as the "<u>Surviving Obligations</u>"), none of the terms and provisions of this Agreement shall survive the Closing or termination of this Agreement, and all of the terms and provisions of this Agreement (other than the surviving provisions noted above, which shall survive the Closing) shall be merged into the Closing documents and shall not survive the Closing and no party hereto shall have any liability hereunder after the Closing in respect of such provisions that do not survive the Closing.

1.

*[Signatures appear on following page]*

**IN WITNESS HEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**PURCHASER:**

_____

By:_____

Printed:_____

Title:_____

**SELLER:**

_____

By:_____

Printed:_____

Title:_____

THE UNDERSIGNED HEREBY ACKNOWLEDGES AND AGREES TO BE BOUND BY THE TERMS
OF THIS AGREEMENT RELATING TO ESCROW AGENT AND THE DEPOSIT.

ESCROW AGENT:

FIRST AMERICAN TITLE INSURANCE COMPANY

By:_____

Name: _____

Title: _____

Date: _____

## **Annex I**

**Legal Description of Property**

**Annex II**

**[Forms of Closing Documents]**

## Exhibit A-3

**Lease Termination Agreement**

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this [●] day of [●], 2025 (the "Effective Date") between [●] (the "Landlord") and [●] (the "Tenant" or "Debtor", and together with the Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant entered into that certain lease dated [●] (the "Lease"), covering certain premises located at [●] (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, on May 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the Parties release each other and Landlord is able to dispose of any remaining furniture, fixtures and equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "Bankruptcy Court Order"):

## AGREEMENT

1.     Recitals.  The Recitals are incorporated herein as if set forth at length.

2.     Lease Termination.   Subject to the Bankruptcy Court Order, the Lease is terminated effective [●], 2025 (the "Termination Date").  From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease.  Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord.  Tenant acknowledges and agrees that, from and after the Effective Date, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty Partners, LLC) accordingly.

3.     Consideration.  Landlord shall pay to Tenant $[•] (minus any deposits already paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

2

4.      <u>Landlord Release of Tenant</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "<u>Tenant Released Parties</u>"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.      <u>Tenant Release of Landlord</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "<u>Landlord Released Parties</u>," and together with the Tenant Released Parties, the "<u>Released Parties</u>"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for the releases set forth in sections 4 and 5 hereof, the Parties, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

3

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      The Parties agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth in sections 4 and 5 hereof have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>.  As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises (or provided written confirmation (email being sufficient) that Landlord is authorized to change the locks or access codes); and

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.  Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than [●], 2025.

9.      <u>Abandonment</u>.  Subject to Bankruptcy Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any third parties; provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point-of-sale ("<u>POS</u>") systems from the Premises during which time the Landlord shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Tenant to remove any such POS systems.

10.      <u>Authority to Settle</u>.  Each of the Parties respectively represents and warrants that each such Party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such Party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

4

11.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties respectively represent and warrant that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any Party to execute this Agreement.  Each of the Parties further acknowledge that such Party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>.  Each of the Parties respectively represent and warrant that each such Party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>.  Each of the Parties agree that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing Party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each Party hereto shall be deemed original signatures and shall be binding on each such Party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u>  This Agreement shall be governed by and construed under the laws of the State of [●], without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.   <u>Miscellaneous</u>.

(a)     The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the Parties hereto.

(b)     This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)     Each of the Parties shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the Parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)     Each of the Parties shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)     Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)     The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.  Because this Agreement was drafted with the participation of all Parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the Parties respectively represent and warrant that each such Party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signature page follows]*

6

IN WITNESS HEREOF, the Parties have duly executed this Agreement as of the Effective Date.


**[LANDLORD]**

By:_____

Print Name:_____

Its:_____


**[TENANT]**

By:_____

Print Name:_____

Its:_____

**Exhibit B**

**Bidder Registration Form**

## OFFER AND BIDDER REGISTRATION FORM

Bidder, _____ , hereby:

- Offers to purchase the following Leases for the Bid set forth below, pursuant to this Offer & Qualified Bidder Form and the terms and conditions of the accompanying Assumption and Assignment Agreement, and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* approved by the United States Bankruptcy Court for the District of New Jersey in the chapter 11 cases of *In re New Rite Aid, LLC, et al.*, Case No. 25-14861 (MBK) (the "Auction Procedures").

Bidder's offer is for the following Lease(s) at the following Bids:

| LEASE | BID/PURCHASE PRICE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| **Aggregate Purchase Price:** | |

**Bidder hereby warrants and represents as follows:**

(a)     Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Auction Procedures, the terms and conditions of which are incorporated herein by reference.

(b)     Bidder has received, reviewed, and understands the terms and conditions of the Assumption and Assignment Agreement, the terms and conditions of which are incorporated herein by reference.

(c)     To the extent that the words and phrases which are capitalized in this Offer & Qualified Bidder Form have been defined in the Auction Procedures or in the Assumption and Assignment Agreement, those definitions are incorporated herein by reference.

(d)     Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant to the Auction Procedures.

(e)     Each Bid is and shall be a good faith, *bona fide*, irrevocable offer to purchase the applicable Lease on an as-is, where-is basis, with no contingencies.

(f)     Bidder (i) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease in making its offer; (ii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease or the completeness of any information provided in connection therewith or the Auction other than as provided in the Assumption and Assignment Agreement; and (iii) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; (iv) and by submitting an Assumption and Assignment Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "Bankruptcy Code") related in any way to the submission of its Bid, the Auction Procedures, or any earnest money deposit.

(g)     Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder (i) exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) acknowledges that it will comply with the Auction Procedures.

(h)     Bidder acknowledges that, pursuant to, *inter alia*, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i)     Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or the sale.

(j)     Identification of how the Bidder will pay the purchase price at closing.

AGREED & ACCEPTED this _____ day of _____, 2025

Company: _____

By: _____
Name:
Title:

*BIDDER I.D.*

Bidder's Company: _____

Bidder's Address: _____

Bidder's Contact: _____

Bidder's Phone & Facsimile Numbers: _____

Bidder's Email Address: _____

Bidder's Tax ID Number: _____

*ATTORNEY OR AUTHORIZED AGENT I.D.*

Attorney or Agent Name: _____

Law Firm or Company: _____

Address: _____

Phone & Facsimile Numbers: _____

Email Address: _____

*BIDDER WIRING INFORMATION FOR DEPOSIT RETURN*

Bidder's Bank Name: _____

Account Name: _____

Account Number: _____

ABA Number: _____

Bidder's Address: ___

## Schedule 2-A

**Lease Auction and Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>　　　　　　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

## NOTICE OF BID DEADLINE, POTENTIAL AUCTION, AND POTENTIAL SALE HEARING FOR CERTAIN LEASE ASSETS

**PLEASE TAKE NOTICE** that on [__], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. [__]] (the "Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the sale, transfer, or other disposition of certain of the Debtors' Leases attached hereto as **Exhibit A** (the "Specified Leases") consistent with the Auction Procedures (the "Auction Procedures") approved by the Court pursuant to the Order. **All interested bidders should carefully read the Auction Procedures and Order.** To the extent that there are any inconsistencies between this notice and the Auction Procedures or Order, the Auction Procedures or Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which the Debtors may, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, choose a stalking horse bidder in connection with the Specified Leases is [●], 2025 at 5:00 p.m., prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Specified Assets must be received pursuant to the Bidding Procedures is **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Bid Deadline")

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements specified by the Auction Procedures by the Bid Deadline, the Debtors will file a notice on the docket in these chapter 11 cases **on or about [●], 2025** and conduct an

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

Auction of certain of the Specified Leases **on or about [●], 2025** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 1009, or by videoconference or such other form of remote communication established by the Debtors (or at any other location, or virtually, as the Debtors may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the applicable Lease Counterparties, any Qualified Bidders, the Consultation Parties, the U.S. Trustee, counsel to any statutory committees appointed in these cases, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Auction Procedures and the Order.**

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtors select Successful Bidder(s) pursuant to the Auction, the Debtors will file a notice identifying the Successful Bidder(s) **on or about [●], 2025.**

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed Auction must file a written objection (each, an "Auction Objection") with the Court and serve such Auction Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time,** by the following parties (a) proposed co-counsel to the Debtors, (b) counsel to the Stalking Horse Bidder, if any, (c) the Auction Notice Parties, (d) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases, (e) the applicable Successful Bidder(s) and Back-Up Bidder(s), if known, (g) any Lease Counterparty or their known counsel, and (h) any other party that has filed a notice of appearance in these chapter 11 cases (collectively, the "Objection Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the sale of Specified Leases at a hearing scheduled to commence on or before **[●], 2025** (the "Sale Hearing"), at a time to be determined by the Court, or as soon thereafter as the Debtors may be heard, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed sale of any Lease must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline") by (a) the Objection Notice Parties.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, ON OR BEFORE THE AUCTION OBJECTION DEADLINE AND THE SALE OBJECTION DEADLINE, RESPECTIVELY, SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL**

**LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE ASSUMPTION ASSIGNMENT AGREEMENT, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** copies of the Auction Procedures, the Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retainer in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated:  [●], 2025

/s/ DRAFT

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:       msirota@coleschotz.com
               wusatine@coleschotz.com
               fyudkin@coleschotz.com
               svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:       arosenberg@paulweiss.com
               aeaton@paulweiss.com
               chopkins@paulweiss.com
               smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

3

## Exhibit A

**Specified Leases**

**<u>Schedule 2-A</u>**

**Fee Owned Property Auction and Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[3] | (Jointly Administered) |

**NOTICE OF BID DEADLINE, POTENTIAL AUCTION,
AND POTENTIAL SALE HEARING FOR CERTAIN FEE OWNED PROPERTIES**

    **PLEASE TAKE NOTICE** that on [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. [●]] (the "Order")[4] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

    **PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the sale, transfer, or other disposition of certain of the Debtors Fee Owned Properties attached hereto as **Exhibit A** (the "Specified Properties") consistent with the Auction Procedures (the "Auction Procedures") approved by the Court pursuant to the Order.  **All interested bidders should carefully read the Auction Procedures and Order.**  To the extent that there are any inconsistencies between this notice and the Auction Procedures or Order, the Auction Procedures or Order, as applicable, shall govern in all respects.

    **PLEASE TAKE FURTHER NOTICE** that the deadline by which the Debtors may, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, choose a stalking horse bidder in connection with the Specified Properties is [●], 2025 at 5:00 p.m., prevailing Eastern Time.

    **PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Specified Assets must be received pursuant to the Bidding Procedures is **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Bid Deadline").

    **PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements specified by the Auction Procedures by the Bid Deadline, the Debtors will file a notice on the docket in these chapter 11 cases **on or about [●], 2025** and conduct an Auction of certain of the Specified Properties **on or about [●], 2025** at the offices of Paul, Weiss,

---

[3]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[4]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 1009, or by videoconference or such other form of remote communication established by the Debtors (or at any other location, or virtually, as the Debtors may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, any Qualified Bidders, the Consultation Parties, the U.S. Trustee, counsel to any statutory committees appointed in these cases, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Auction Procedures and the Order.**

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtors select Successful Bidder(s) pursuant to the Auction, the Debtors will file a notice identifying the Successful Bidder(s) **on or about [●], 2025.**

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed Auction must file a written objection (each, an "Auction Objection") with the Court and serve such Auction Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time,** by the following parties (a) proposed co-counsel to the Debtors, (b) counsel to the Stalking Horse Bidder, if any, (c) the Auction Notice Parties, (d) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases, (e) the applicable Successful Bidder(s) and Back-Up Bidder(s), if known, and (g) any other party that has filed a notice of appearance in these chapter 11 cases (collectively, the "Objection Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the sale of Specified Properties at a hearing scheduled to commence on or before **[●], 2025** (the "Sale Hearing"), at a time to be determined by the Court, or as soon thereafter as the Debtors may be heard, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed sale of any Lease must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline") by (a) the Objection Notice Parties.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, ON OR BEFORE THE AUCTION OBJECTION DEADLINE AND THE SALE OBJECTION DEADLINE, RESPECTIVELY, SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE**

**SET FORTH IN THE APPLICABLE ASSET PURCHASE AGREEMENT, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** copies of the Auction Procedures, the Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retainer in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated:  [●], 2025

| /s/ DRAFT |
| --- |

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
                wusatine@coleschotz.com
                fyudkin@coleschotz.com
                svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
                aeaton@paulweiss.com
                chopkins@paulweiss.com
                smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

## Exhibit A

**Specified Properties**

## **Schedule 3-A**

**Notice of Successful and Backup Bidders for Certain Lease Sales**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SUCCESSFUL [AND BACKUP] BIDDER[S] WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' LEASES

**PLEASE TAKE NOTICE** that on [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief*, [Docket No. [●]] (the "Order")[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale of certain unexpired leases of nonresidential real property (each, a "Lease"), in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025 pursuant to the Order, the Debtors conducted the Auction with respect to certain of the Leases.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to each of the Leases listed on Exhibit A attached hereto. The Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each unexpired lease set forth on Exhibit A is hereby assumed and assigned effective as of the date (the "Assumption Date") set forth in Exhibit A or such other date as the Debtors, any counterparty to such Leases, and the proposed assignee agree.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the sale, transfer, or other disposition of the Leases to the Successful Bidders at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held **on [●], 2025**, before Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed sale of any Lease must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline") by (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) counsel to any statutory committees appointed in these chapter 11 cases; (e) any affected Lease Counterparty or their known counsel; and (f) the applicable Successful Bidder(s) and Backup Bidder(s), if known.

**PLEASE TAKE FURTHER NOTICE** that, if no Sale Objection is timely filed, the Debtors may seek to have the Court enter, under a certificate of no objection, an order, substantially in the form Attached hereto as Exhibit B (the "Assumption Order"), approving the assumption and assignment of each Lease set forth in Exhibit A, in each case, effective on the Assumption Date set forth therein or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.[3]

**PLEASE TAKE FURTHER NOTICE** that, if a Sale Objection is timely filed and not withdrawn or resolved, such Sale Objection will be heard at the Sale Hearing or such other date and time as determined by the Debtors or ordered by the Court. If such Sale Objection is overruled or withdrawn, such Lease shall be assumed, pursuant to an Assumption Order, as of the Assumption Date set forth in Exhibit A or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid. Unless the Court orders otherwise or as agreed to by the applicable parties, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the sale following entry of an Assumption Order because

---

[3] An objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders shall not constitute an objection to the assumption and assignment of any other Lease listed in this Notice of Successful and Backup Bidders. Any objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders must state with specificity the Lease(s) to which it is directed. For each particular unexpired lease whose assumption and assignment is not timely or properly objected to, such assumption and assignment will be effective in accordance with this Notice of Successful and Backup Bidders and the Order.

of the breach or failure on the part of the Successful Bidder, within three (3) calendar days thereafter, the Debtors shall file a supplemental notice, seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.

     **PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each Lease, as applicable, will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, within twenty-four (24) hours of the Auction, provide evidence thereof to such applicable Lease Counterparty (and their counsel, if known) thereby demonstrating that the proposed assignee of the Lease has the ability to comply with the requirements of adequate assurance of future performance.

     **PLEASE TAKE FURTHER NOTICE** that copies of the Auction Procedures and the Order, as well as all related exhibits, including the form Assumption and Assignment Agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international); (b) by visiting the website maintained in these chapter 11 cases at **https://restructuring.ra.kroll.com/RiteAid2025**; or (c) for a fee via PACER by visiting http:// www.njd.uscourts.gov.

3

Dated:  [●], 2025

/s/ DRAFT

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:       arosenberg@paulweiss.com
             aeaton@paulweiss.com
             chopkins@paulweiss.com
             smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**

**Successful and Backup Bidder List**

| Lease(s) | Lease Counterparty & Address | Successful Bidder | [Backup Bidder] | [Proposed Breakup Fee] | Price | Cure Costs | Assignment Date | Assignee |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

## **Exhibit B**

**Proposed  Assumption Order**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>                Debtors. [1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

## [NUMBER] ORDER APPROVING THE
## ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | [Number] Order Approving the Assumption and Assignment of Certain Unexpired Leases |

Upon the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No.____] (the "Final Order")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having jurisdiction over this matter and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having properly filed and served a Notice of Successful and Backup Bidders on the Objection Notice Parties, the Successful Bidder(s), the Backup Bidder(s), and the applicable Lease Counterparties, in accordance with the terms of the Final Order; and no timely objections having been filed to the assumption or assumption and assignment of such Leases; and due and proper notice of the Final Order and the Notice of Successful and Backup Bidders having been provided to each applicable Lease Counterparty as set forth in the assumption schedule (the "Assumption Schedule"), attached hereto as **Exhibit 1**, and it appearing that no other notice need be provided; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.     The Debtors are authorized to assume or assume and assign the Leases listed on

---

[1]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Final Order or the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22].

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | [Number] Order Approving the Assumption and Assignment of Certain Unexpired Leases |

**Exhibit 1**.  The Lease, as amended with the prior consent and written agreement of the applicable Lease Counterparty if applicable, are hereby deemed to be assumed or assumed and assigned by the Debtors pursuant to section 365(a) of the Bankruptcy Code.

2.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of the Contracts listed on **Exhibit 1** shall: (a) be free and clear of (i) all interests including, but not limited to, any liens, claims, rights, interests, charges, or encumbrances, except with respect to any interests related to reciprocal easement agreements or that may be assumed liabilities under the applicable Assumption and Assignment Agreement (collectively, the "Interests") and any Interests shall attach to the proceeds in the same order and priority, as applicable, and subject to all existing defenses, claims, setoffs, and rights and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Lease(s) (but only in connection with the assignment by the Debtor to the Assignee), *provided* that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a lease of non-residential real property, including adjustments, reconciliations, and indemnity obligations, liability for which shall be assumed or assumed and assigned by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the

(Page | 5)
Debtors:              NEW RITE AID, LLC, *et al.*
Case No.              25-14861 (MBK)
Caption of Order:     [Number] Order Approving the Assumption and Assignment of Certain
                      Unexpired Leases

applicable Assignee or (B) in respect of any taxes), and (b) constitute a legal, valid, and effective

transfer of such Lease(s) and vest the applicable Assignee or purchase with all rights, titles, and

interests to the applicable Lease(s).  For the avoidance of doubt, all provisions of the applicable

assigned Contract, including any provision limiting assignment, shall be binding on the applicable

Assignee.

3.      Subject to the other provisions of this Order, the Debtors are hereby authorized in

accordance with sections 365(b) and (f) of the Bankruptcy Code to (a) assume and assign to any

Assignee the applicable Lease with any applicable Assignee being responsible only for the post-

assignment liabilities or defaults under the applicable Lease except as otherwise provided for in this

Order and (b) execute and deliver to any applicable Assignee such assignment documents as may be

reasonably necessary to sell, assign, and transfer any such Lease.

4.      The Assignee shall have no liability or obligation with respect to defaults relating

to the assigned Contracts arising, accruing, or relating to a period prior to the applicable

Assumption Date except as otherwise agreed to between the Assignee and the Debtors.

5.      The Debtors are hereby authorized, pursuant to section 363(b) of the Bankruptcy

Code, to enter into the consensual amendments as set forth in the Assumption Notice.

6.      The Debtors are authorized to execute and deliver all instruments and documents

and take all additional actions necessary to effectuate the relief granted in this Order and the

assumption without further order from this Court.

7.      For the avoidance of doubt, the assumption or assumption and assignment of the

Lease(s) shall not be free and clear of, and instead shall be subject to: (a) amounts that are unbilled or

(Page | 6)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | [Number] Order Approving the Assumption and Assignment of Certain Unexpired Leases |

---

not yet due as of the Assumption Date, regardless of when such amounts accrued, such as common area maintenance, insurance, taxes, and similar charges; (b) any regular or periodic adjustment or reconciliation of charges that are not due or have not been determined as of the Assumption Date; (c) any percentage rent that may come due; (d) indemnification obligations; (e) any unpaid cure amount, calculated in accordance with the terms of any applicable amendment or other agreement of the Parties; and (f) agreements that run with the land such as REAs and COREAs.

8.     The 14-day stay required of any assignment of any Contract pursuant to Bankruptcy Rule 6006(d) is hereby waived.

9.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

<u>Exhibit 1</u>

Assumption Schedule

**<u>Exhibit B</u>**

## Schedule 3-B

**Notice of Successful and Backup Bidders for Certain Fee Owned Property Sales**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SUCCESSFUL [AND BACKUP] BIDDER[S] WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' FEE OWNED PROPERTY

**PLEASE TAKE NOTICE** that on May 5, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief*, [Docket No. [●]] (the "Order")[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale of certain fee owned property (each, a "Fee Owned Property"), in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025 pursuant to the Order, the Debtors conducted the Auction with respect to certain of the Fee Owned Property.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to each of the Fee Owned Properties listed on Exhibit A attached hereto.  The Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Fee Owned Property set forth on Exhibit A is hereby sold effective as of the date (the "Closing Date") set forth in Exhibit A or such other date as the Debtors and the proposed purchaser agree.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the sale, transfer, or other disposition of the Fee Owned Property to the Successful Bidders at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held **on [●], 2025**, before Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed sale of any Fee Owned Property must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline") by (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) counsel to any statutory committees appointed in these chapter 11 cases; and (e) the applicable Successful Bidder(s) and Backup Bidder(s), if known.

**PLEASE TAKE FURTHER NOTICE** that, absent a Sale Objection being timely filed, the sale of each Fee Owned Property shall become effective on the Closing Date set forth in Exhibit A, or such other date as the Debtors and the proposed purchaser agree.

**PLEASE TAKE FURTHER NOTICE** that, if a Sale Objection is timely filed and not withdrawn or resolved, such Sale Objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court. If such Sale Objection is overruled or withdrawn, such Fee Owned Property shall be sold as of the Closing Date set forth in Exhibit A or such other date as the Debtors and the proposed purchaser agree.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid. Unless the Court orders otherwise or as agreed to by the applicable parties, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the sale following entry of a sale order because of the breach or failure on the part of the Successful Bidder, within three (3) calendar days thereafter, the Debtors shall file a supplemental notice on or before the Closing Deadline, seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Auction Procedures and the Order, as well as all related exhibits, including the form Assumption and Assignment Agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international); (b) by visiting the website maintained in these chapter 11 cases at **https://restructuring.ra.kroll.com/RiteAid2025**; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated:  [●], 2025

/s/ DRAFT

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com
             svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:       arosenberg@paulweiss.com
             aeaton@paulweiss.com
             chopkins@paulweiss.com
             smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**

**Successful and Backup Bidder List**

| Fee Owned Property | Successful Bidder | [Backup Bidder] | [Proposed Breakup Fee] | Price | Closing Date |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## Schedule 4

### Assumption and Assignment Notice

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF CERTAIN OF THE DEBTORS' LEASES

**PLEASE TAKE NOTICE** that on [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief*, [Docket No. [●]] (the "Order")[2] by which the Court, among other things, approved expedited procedures for the assumption of unexpired leases and granted related relief in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025 pursuant to the Order and this written notice (the "Assumption and Assignment Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Lease set forth on Exhibit A attached hereto is hereby assumed and assigned, including with respect to payment of any cure costs (the "Cure Costs") in the amounts set forth on Exhibit A required to assume such Lease, effective as of the date (the "Assumption Date") set forth in Exhibit A or such other date as the Debtors and the Lease Counterparties to such unexpired leases agree.

**PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each applicable Lease will be assigned has the financial wherewithal to meet all future obligations under such Lease and the Debtors will, at the request of the applicable Lease Counterparty use commercially reasonable efforts to provide evidence thereof to such applicable Lease Counterparty (and their counsel, if known), thereby demonstrating that the assignee of the unexpired lease has the ability to comply with the requirements of adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed Cure Costs, assumption and assignment, and/or form of adequate assurance of future performance must file a written objection (each, an "Assumption Objection") with the Court and serve such Sale Objection so as to be actually received on or before [●], **2025 at 5:00 p.m., prevailing Eastern Time** (the "Assumption Objection Deadline") by (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

(Attn:   Alice   Belisle   Eaton   (aeaton@paulweiss.com),   Christopher   Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn:  Michael D. Sirota (msirota@coleschotz.com),  Warren  A.  Usatine  (wusatine@coleschotz.com),  Felice  R.  Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn:  Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA   02110   (Attn:   John   F.   Ventola   (jventola@choate.com),   Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) counsel to any statutory committees appointed in these chapter 11 cases; (e) any affected Lease Counterparty or their known counsel; and (f) the applicable Successful Bidder(s) and Backup Bidder(s), if known.

**PLEASE TAKE FURTHER NOTICE** that, if an Assumption Objection is timely filed and not withdrawn or resolved, such Assumption Objection will be heard at the Sale Hearing or such other date and time as determined by the Debtors or ordered by the Court.  If such Sale Objection is overruled or withdrawn, such Lease shall be assumed, pursuant to an Assumption Order, as of the Assumption Date set forth in Exhibit A or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.[3]

**PLEASE TAKE FURTHER NOTICE** that, if an Assumption Objection is timely filed and not withdrawn or resolved, such Assumption Objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court.  If such Assumption Objection is overruled or withdrawn, such Lease shall be assumed as of the Assumption Date set forth in Exhibit A or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.

**PLEASE TAKE FURTHER NOTICE** that copies of the Auction Procedures and the Order, as well as all related exhibits, including the form Assumption and Assignment Agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international); (b) by visiting the website maintained in these chapter 11 cases at **https://restructuring.ra.kroll.com/RiteAid2025**; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

---

[3]   An objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders shall not constitute an objection to the assumption and assignment of any other Lease listed in this Notice of Successful and Backup Bidders.  Any objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders must state with specificity the Lease(s) to which it is directed.  For each particular unexpired lease whose assumption and assignment is not timely or properly objected to, such assumption and assignment will be effective in accordance with this Notice of Successful and Backup Bidders and the Order.

Dated:  [●], 2025

/s/ DRAFT

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

Exhibit A

Assumption Schedule