**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D.  Sirota, Esq.
Warren A.  Usatine, Esq.
Felice R.  Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**GLOBAL NOTES AND
STATEMENTS OF LIMITATIONS, METHODOLOGY,
AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF
ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

## General

New Rite Aid, LLC ("Rite Aid") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" and, collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") with the United States Bankruptcy Court for the District of New Jersey (the "Court").  The Debtors, with the assistance of their legal and financial advisors, prepared the unaudited Schedules and Statements in accordance with section 521 of title 11 of the United States Code,

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These global notes and statements of limitations, methodology and disclaimers regarding the Debtors' Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to, and referenced in connection with, any review of the Schedules and Statements.[2]

The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. Accordingly, the Debtors and their directors, managers, officers, agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements. In no event shall the Debtors or their directors, managers, officers, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Steve Bixler, Chief Financial Officer of New Rite Aid, LLC. In reviewing and signing the Schedules and Statements, Mr. Bixler has relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals. Given the scale of the Debtors' businesses, Mr. Bixler has not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

---

[2] These Global Notes supplement, and are in addition to, any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors prepared a Global Note with respect to any individual Debtor's Schedules or Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the other Debtors' Schedules and Statements, as appropriate.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements.  Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors.  The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate; *provided*, that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law.

**Global Notes and Overview of Methodology**

1. **Description of the Cases**.  The Debtors commenced these voluntary cases under chapter 11 of the Bankruptcy Code on May 5, 2025 (the "Petition Date").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 7, 2025, the Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 122].  On May 16, 2025, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "Committee") [Docket No. 316, as amended and reconstituted, Docket No. 440].  Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedule and Statement.  The asset information provided herein, except as otherwise noted, represents the asset data of the Debtors as of April 26, 2025, the date of the Debtors' month end closure to their balance sheet, and the liability data of the Debtors is as of the close of business on the Petition Date.

2. **Global Notes Control**.  Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.  In the event that the Schedules or Statements differ from any of the Global Notes, the Global Notes shall control.

3. **Reservation of Rights**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate but do not undertake any obligation to do so, except as required by applicable law.  Nothing contained in the Schedules, Statements, or Global Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

    a.    **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any

claim against any Debtors, any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

b. **Claims Description**.  Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated."  The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on its Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."  The listing of a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules and Statements accordingly.

c. **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

d. **Classifications**.  The listing of a claim (i) on Schedule D as "secured," (ii) on Schedule E/F as either "priority," or "unsecured priority," or (iii) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken.  Except as provided in an order of the Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

e. **Estimates and Assumptions**.  To prepare these Schedules and Statements and report information on a legal entity basis, the Debtors were required to make certain reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses as of the Petition Date.  Actual results could differ from such estimates.  The Debtors reserve all

rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

f. **Causes of Action**.  Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all rights with respect to any claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, lien, indemnity, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, in tort, at aw, in equity, or otherwise.  Causes of action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest claims or interests; (d) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (e) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws, and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of action, or avoidance actions, or in any way prejudice or impair the assertion of such claims or causes of action.

g. **Intellectual Property Rights**.  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

5

h.      **Insiders**.   The Debtors have attempted to include all payments made on or within twelve months before the Petition Date to any individual (and their relatives) or entity who, in the Debtors' good faith belief, may be deemed an "insider."    As to each Debtor, an individual or entity is designated as an "insider" for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor so as to dictate corporate policy and the disposition of corporate assets.    The Debtors have also considered the requirements of GAAP and Securities and Exchange Commission (the "SEC") reporting standards and their public disclosures with respect to designating certain individuals and entities as "insider" herein.

The listing or omission of a party as an "insider" for the purposes of the Schedules and Statements is for informational purposes and is not intended to be nor should be construed as an admission that those parties are insiders for purposes of section 101(31) of the Bankruptcy Code.  Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for:  (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose.   Furthermore, certain of the individuals or entities identified we insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution.  The Debtors reserve all rights with respect thereto.

### 4.  Methodology

a.      **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include financial information for the Debtors and certain non-Debtor affiliates.  Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP.  Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors.  Unlike the consolidated financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the proper Debtor entity.  However, due to limitations within Debtors' accounting systems, it is

possible that not all assets, liabilities or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the collection, ownership, and valuation of certain assets and the amount and nature of certain liabilities, a Debtor may report more assets than liabilities.  Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time prior to or after the Petition Date.   Likewise, a Debtor reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent on the Petition Date or at any time prior to or after the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

b.  **Reporting Date**.  Unless otherwise noted, the Schedule of Assets reflect the Debtors' books and records as of April 26, 2025. The Schedule of Liabilities and Statements generally reflect the Debtors' books and records as of the Petition Date, adjusted for authorized payments under the First Day Orders (as defined herein).

c.  **Confidentiality or Sensitive Information**.  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, home addresses and other information), or concerns for the privacy of the Debtors' creditors and clients, including compliance with HIPAA requirements.   The alterations will be limited to only what is necessary to protect the Debtor or the applicable third party.  The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.[3]

d.  **Consolidated Entity Accounts Payable and Disbursement Systems**. Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Statement 4, Schedule A/B, and Schedule E/F, respectively, per the Debtors' unaudited books and records.  As described more fully in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Continue to Operate Their Cash*

---

[3]  Such as the *Interim Order (I) Authorizing the Debtors to (A) File a Consolidated List of the Debtors' 50 Largest Unsecured Creditors, (B) File a Consolidated List of Creditors In Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (C) Redact Certain Personally Identifiable Information of Natural Persons, and (II) Granting Related Relief* [Docket No.129].

7

*Management System, (b) Honor Certain Prepetition Obligations Related Thereto, (c) Maintain Existing Business Forms, and (d) Perform Intercompany Transactions and (II) Granting Related Relief* [Docket No. 23] (the "Cash Management Motion"), the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations (the "Cash Management System"). The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts. The Cash Management System is supported by 98 bank accounts, 94 of which are owned and controlled by the Debtors and 4 of which are owned by non-Debtor affiliates.

The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes.

Prior to the Petition Date, the Debtors and certain non-Debtor affiliates engaged in intercompany transactions (the "Intercompany Transactions") in the ordinary course of business, which resulted in intercompany receivables and payables (the "Intercompany Claims"). The Debtors maintain strict records of the Intercompany Claims and can ascertain, trace, and account for all Intercompany Transactions. Pursuant to the *Interim Order (I) Authorizing the Debtors to (a) Continue to Operate Their Cash Management System, (b) Honor Certain Prepetition Obligations Related Thereto, (c) Maintain Existing Business Forms, and (d) Perform Intercompany Transactions and (II) Granting Related Relief* [Docket No. 127] (the "Cash Management Order"), the Court has granted the Debtors authority to continue to engage in Intercompany Transactions in the ordinary course of business subject to certain limitations set forth therein. Thus, intercompany balances as of the Petition Date, as set forth in Schedule A/B and Schedule E/F may not accurately reflect current positions.

In addition, certain of the Debtors act on behalf of other Debtors. Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment. The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

8

e.   **Duplication**.  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

f.   **Net Book Value of Assets**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets.  As such, unless otherwise indicated, net book values as of the Petition Date are presented for all assets.  When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined."  Amounts ultimately realized may vary materially from net book value (or other value so ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.  Assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date or any time prior to the Petition Date.

g.   **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

h.   **Payment of Prepetition Claims Pursuant to First Day Orders**.  Following the Petition Date, the Court entered various orders authorizing the Debtors to, among other things, pay certain prepetition:  (i) service fees and charges assessed by the Debtors' banks; (ii) insurance obligations; (iii) employee wages, salaries, and related items (including, but not limited to, employee benefit programs and supplemental workforce obligations); (iv) taxes and assessments; (v) customer program obligations; and (vi) critical vendor obligations (collectively, the "First Day Orders").  As such, outstanding liabilities may have been reduced by any Court-approved postpetition payments made on prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated.  The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to an order of the Court (including the First Day Orders).

i.   **Other Paid Claims**.  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements

9

pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

j.      **Setoffs**.  The Debtors routinely incur setoffs in the ordinary course of business that arise from various items including, but not limited to, returns of and damages to customer products, and other matters.  In accordance with Debtors' agreements with their vendors and other contract counterparties, these amounts are set off on a reoccurring basis against future revenues in a normal course reconciliation process with these partners.  Certain of these ordinary course setoffs are not independently accounted for, and, as such, may be excluded from the Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.  The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

k.      **Accounts Receivable**.  The accounts receivable information listed on the Schedules includes receivables from the Debtors' customers and are calculated net of any amounts that, as of the Petition Date, may be owed to such customers in the form of offsets or other price adjustments pursuant to the Debtors' customer program policies and day-to-day operating policies and any applicable Court order.

l.      **Inventory**.  The Debtors' inventory is presented net of LIFO reserves.

m.      **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  Certain intangibles are listed in the asset schedules for Debtor Rite Aid Corporation.  Such treatment may not reflect actual legal ownership.

The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Statements or Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including, but not limited to, the recharacterization thereof.

n.      **Liens**.  The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment, and the Debtors reserve all of their rights with respect to such liens (if any).  UCC liens as of the Petition Date, if any, are listed on Schedule D.

10

o.    **Excluded Assets and Liabilities**.  Certain liabilities resulting from accruals, liabilities recognized in accordance with GAAP, and/or estimates of long-term liabilities either are not payable at this time or have not yet been reported. Therefore, they do not represent specific claims as of the Petition Date and are not otherwise set forth in the Schedules.  Additionally, certain deferred assets, charges, accounts or reserves recorded for GAAP reporting purposes only, and certain assets with a net book value of zero are not included in the Schedules. Excluded categories of assets and liabilities include, but are not limited to, deferred tax assets and liabilities, deferred income, deferred charges, self-insurance reserves, favorable lease rights, and unfavorable lease liabilities.  In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court.  Other immaterial assets and liabilities may have been excluded.

p.    **Undetermined Amounts**.  The description of an amount as "unknown," "undetermined" is not intended to reflect upon the materiality of such amount.

q.    **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined."  If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

r.    **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, rebates, trade debits, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and postpetition payments, if applicable.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same.

s.    **Guarantees and Other Secondary Liability Claims**.  The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "Guarantees") in their secured financings, debt instruments, and other agreements.  However, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing.  Where such Guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors.  The Debtors have reflected the obligations under the Guarantees for both the primary obligor and

11

the guarantors with respect to their secured financings and debt instruments on Schedule H.    Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements inadvertently may have been omitted.    The Debtors may identify additional Guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional Guarantees are identified.

t.    **Leases**.  In the ordinary course of their business, the Debtors may lease property from certain third-party lessors for use in the daily operation of their business.  Any such leases are set forth in Schedule G and any amount due under such leases that was outstanding as of the Petition Date is listed on Schedule E/F.  The property subject to any of such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors nor is such property reflected in the Debtors' Statements as property or assets of third parties within the control of the Debtors.

u.    **Executory Contracts**.  Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

v.    **Allocation of Liabilities**.  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.    As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

w.    **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

x.    **Umbrella or Master Agreements**.  Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor entity that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.  The master service agreements or other ancillary documents have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

12

**Specific Schedule Disclosures**

Schedules A/B, D, E/F, G, and H may contain explanatory or qualifying notes that pertain to the information provided in the Schedules. Those Schedule-specific notes are incorporated herein by reference. Unless otherwise noted, the asset totals listed on the Schedules are derived from amounts included in the Debtors' books and records as of the Petition Date. To the extent there are unknown or undetermined amounts, the actual total may be different from the total listed.

1. **Schedule A/B**

    a.    **Part 1**. Rite Aid's Cash Management System is composed of 98 bank accounts, (each, a "Bank Account" and, collectively, the "Bank Accounts"). Of those Bank Accounts, 94 are owned and controlled by the Debtors (the "Debtor Bank Accounts"), 4 are owned and controlled by non-Debtor affiliates ("Non-Debtor Bank Accounts"). The Debtor Bank Accounts include: (a) 24 accounts maintained at Bank of America Corporation ("Bank of America"), and (b) 15 accounts maintained at U.S. Bancorp ("U.S. Bank"). Further details with respect to the Cash Management System are provided in the Cash Management Motion. Any bank accounts with a $0 dollar balance have been excluded from the Schedules.

    b.    **Part 2**. The Debtors maintain certain deposits in the ordinary course of their business operations. These deposits are included in the Schedules for the appropriate legal entity. Types of deposits include, among other things, security deposits, and utility deposits. Certain prepaid or amortized assets are not listed in Part 2 in accordance with the Debtors' accounting policies. The amounts listed in Part 2 do not necessarily reflect values that the Debtors will be able to collect or realize.

    c.    **Part 3**. The Debtors' accounts receivable information includes receivables from the Debtors' customers, vendors, or third parties, which are calculated net of any amounts that, as of the Petition Date, may be owed to such parties in the form of offsets or other price adjustments pursuant to the Debtors' customer programs and day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances. The accounts receivable balances in this section exclude intercompany receivables.

    d.    **Part 4**. Part 4 identifies only subsidiaries owned directly by the Debtor entity. Subsidiaries owned indirectly by the Debtor entity are not listed. Ownership interests in subsidiaries, partnerships, and joint interests have been listed in Schedule A/B, Question 15 as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

    e.    **Part 7**. Actual realizable values may vary significantly relative to net book values as of the Petition Date.

f.    **Part 8**.  Property leased by the Debtors is listed in Schedule G and is not listed in Part 8 of Schedule A/B, with the exception of any lease or security deposits for such property, which is listed on Schedule A/B.  Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date.

g.    **Part 9**.  Property leased by the Debtors is listed in Schedule G and is not listed in Part 9 of Schedule A/B, with the exception of any lease or security deposits for such property, which is listed on Schedule A/B.  Furthermore, property values are scheduled in accordance with the Debtor's books and records which may not comport with the legal owner of record.  Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date.  The Debtors reserve all rights to re-characterize their interests in real property at a later date.  Due to the large volume of leasehold improvements across various locations, it is not practicable nor feasible for the Debtors to list each individually.

h.    **Part 10**.  Part 10 identifies the various trademarks, patents, environmental permits and website domains owned and maintained by the Debtors.  The Schedules may not list the value of such intangible assets as no recent appraisals have been performed.  Various software licenses the Debtors use for its operations which are easily obtainable and hold minimal value are not included.

i.    **Part 11**.  The Debtors maintain approximately 182 insurance policies administered by multiple third-party insurance carriers.  The insurance policies provide coverage for, among other things, the Debtors' property, general liability, automobile liability, transportation liability, cyber liability, umbrella coverage, casualty liability, fiduciary liability, pollution liability, and directors' and officers' liability (including tail coverage).  The Debtors more fully describe such policies in the *Interim Order (I) Authorizing the Debtors to (a) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (b) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief* [Docket No. 133], entered on May 7, 2025 (the "Insurance Order").  Any policies owned by suppliers to which Debtor entities may have been added as a beneficiary are not included.

In addition, the Debtors attempted to list known causes of action and other claims. Potential preference actions and/or fraudulent transfer actions were not listed because the Debtors have not completed an analysis of such potential claims. The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause of action, claim, or right does not exist, and should not be construed as a waiver of such cause of action, claim, or right.

2.    **Schedule D**

a.  The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates.  To the best of the Debtors' knowledge, all claims listed on Schedule D arose, or were incurred, before the Petition Date.

b.  Except as otherwise agreed or stated pursuant to a stipulation, agreed order, or general order entered by the Court that is or becomes final, the Debtors and/or their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows:  (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken, and (b) the descriptions provided on Schedule D and herein are intended to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  Detailed descriptions of the Debtors' prepetition debt structure, guarantees, and descriptions of collateral relating to each debt, if any, contained on Schedule D are contained in the *Declaration of Marc Liebman, Chief Transformation Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 24] (the "First Day Declaration").

c.  The *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 143] (the "Interim DIP Order")[4] and the other DIP Documents provide for the repayment and refinancing of the Prepetition Revolving Loans with DIP Revolving Loans via a "creeping" roll-up. As of the date hereof, approximately $1.074 billion of the Prepetition Revolving Loans have been repaid and refinanced with DIP Revolving Loans, and the aggregate outstanding principal balance of the DIP Revolving Facility is approximately $837 million.   Upon entry of a final order approving the DIP Facilities, the Debtors seek to repay and refinance any remaining outstanding Prepetition Revolving Loans with loans under the DIP  Revolving Facility and all Prepetition FILO Loans with loans under the DIP FILO Facility.  The Debtors' other prepetition secured funded debt remains intact.  Except as specifically stated herein, real property lessors, equipment lessors, utility

---

[4]  Capitalized terms used in this section 2 but not defined herein have the meaning ascribed to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 41], the Interim DIP Order, and/or the First Day Declaration, as applicable.

companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D.

d.      Rite Aid Corporation is the borrower under the Prepetition ABL Credit Agreement with the Prepetition ABL Lenders and Bank of America, N.A. as administrative agent, collateral agent and co-borrowing base agent.    The Prepetition ABL Credit Agreement provides for the asset-based Prepetition ABL Facilities consisting of (1) a $1.9 billion asset-based Prepetition Revolving Commitments and (2) a $240 million Prepetition FILO Facility, which is contractually subordinated to the Prepetition Revolving Loans in right of payment.    Under the Prepetition ABL Documents, the Prepetition ABL Loans are guaranteed by a substantial majority of Rite Aid Corporation's Debtor subsidiaries and secured by liens on substantially all of the Debtors' property (subject to certain exclusions).    The DIP Facilities consist of (1) a senior secured superpriority DIP Revolving Facility in the aggregate principal amount equal to $1,700,000,000, and (2) upon entry of the Final Order approving the DIP Facilities, a senior secured superpriority DIP FILO Facility in the aggregate principal amount of $240,000,000. The Debtors' Obligations under DIP Facilities are secured by first-priority liens on Prepetition ABL Collateral, subject to the Carve Out and certain permitted prior liens, as set forth in the Interim Order and DIP Documents.    The DIP Agent and DIP Lenders were also granted superpriority administrative expense claims against each of the Debtors' estates with respect to the DIP Obligations over any and all administrative expenses of any kind or nature subject and subordinate only to the payment of the Carve Out as set forth in the Interim DIP Order and the DIP Documents.

e.      The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights.    The Debtors have not investigated which of the claims may include such rights, and their population is currently unknown.

## 3.  **Schedule E/F**

a.      **Part 1**.  The claims listed on Part 1 arose and were incurred on various dates.  A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.    Accordingly, no such dates are included for each claim listed on Part 1.  To the best of the Debtors' knowledge, all claims listed on Part 1 arose or were incurred before the Petition Date.

The Debtors have not listed any wage or wage-related obligations that the Debtors have paid pursuant to the First Day Orders on Part 1.  The Debtors believe that all such claims for wages, salaries, expenses, benefits and other compensation as described in the First Day Orders have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders.  The Debtors reserve

16

their right to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

The Debtors also have not listed any tax-related obligations that the Debtors have paid pursuant to the First Day Orders on Part 1. The Debtors believe that all such claims for taxes as described in the First Day Orders have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders. The Debtors reserve their right to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

b.      **Part 2**. The Debtors have exercised their reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule. As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed in these cases for a complete understanding of the unsecured claims against the Debtors. Certain creditors listed on Part 2 may owe amounts to the Debtors, and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Part 2 may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor. Certain creditors may assert mechanics' or other similar liens against the Debtors for amounts listed on Part 2. The Debtors reserve their right to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Part 2 of any Debtor. In addition, certain claims listed on Part 2 may potentially be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

The Debtors have made reasonable efforts to include all unsecured creditors on Part 2 including, but not limited to, software companies, landlords, utility companies, consultants, and other service providers. The Debtors, however, believe the possibility exists that there are instances where creditors have yet to provide proper invoices for prepetition goods or services. While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Part 2.

Unless otherwise noted, the claims listed on Part 2 are based on the Debtors' books and records as of the Petition Date. The Debtors have excluded workers' compensation claims from the Statements because the Debtors are fully insured for and continue to honor their workers' compensation obligations in the ordinary course in accordance with the *Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Associate Wages, Salaries, Other Compensation, and Reimbursable Associate Expenses and (B) Continue Associate Benefits Programs, and (II) Granting Related Relief* [Docket No. 138] (the "Wages Order").

Part 2 does not include certain balances including deferred liabilities, accruals, or reserves. Such amounts are, however, reflected on the Debtors' books and

records as required in accordance with GAAP. Such accruals primarily represent estimates of liabilities and do not represent specific claims as of the Petition Date.

Part 2 does not include reserves for liabilities that may have arisen under litigation in which a Debtor is a defendant unless there is a final judgment or a settlement agreement.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits and/or allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Court has authorized the Debtors to pay, in their discretion, certain non-priority unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments made under some or all of the First Day Orders. Each Debtor's Schedule E/F will reflect some of that Debtor's payment of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these chapter 11 cases pursuant to the First Day Orders and other orders of the Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

## 4. **Schedule G**

a. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "Agreements") as of the filing of the Statements and Schedules, the Debtors' collection and review process of the Agreements is ongoing and inadvertent errors, omissions, or over or under-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, master service agreements and confidentiality agreements which may not be set forth in Schedule G. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers,

18

estoppel certificates, letters and other documents, instruments, and agreements which may not be listed on Schedule G.

5. **Schedule H**

a. The Debtors are party to various debt agreements which were executed by multiple Debtors. The guaranty obligations under prepetition secured credit agreements are noted on Schedule H for each individual Debtor. In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. To the extent such claims are listed elsewhere in the Schedules of each applicable Debtor, they have not been set forth individually on Schedule H. In the event that two or more Debtors are co-obligors with respect to a scheduled debt or guaranty, such debt or guaranty is listed in the Schedules and Statements of each such Debtor at the full amount of such potential claim. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. To the extent these Global Notes include notes specific to Schedules D-G, such Global Notes also apply to the co-Debtors listed in Schedule H. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

**Specific Notes with Respect to the Debtors' Statements of Financial Affairs**

1. **Statement 1**. The income stated in the Debtors' response to Statement 1 is consistent with the revenue disclosed in compliance with GAAP:

a. **FY 2024**: Comprised of revenues for the fiscal year ended March 2, 2024.

b. **FY 2025**: Comprised of revenues for the fiscal year ended March_1_, 2025.

c. **Stub Period FY 2026**: Comprised of revenues for the 2 months ending April 26, 2025.

2. **Statement 3**. As described in the Cash Management Motion, the Debtors utilize their integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations.

a. The payments disclosed in Statement 3 are based on payments made by the Debtors with payment dates from February 4, 2025 to May 5, 2025. Amounts still owed to creditors will appear on the Schedules for each Debtor, as applicable.

b. The response to Statement 3 excludes regular salary payments and disbursements or transfers for this period, which are listed, to the extent required, on Statement 4.

c. The response to Statement 3 excludes payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy for this period, which are listed on Statement 11.

3. **Statement 7**. Information provided on Statement 7 includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum. While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statement 7. The Debtors reserve all of their rights to amend or supplement their response to Statement 7.

4. **Statement 9**. For the avoidance of doubt, question 9 excludes de minimis charitable contributions.

5. **Statement 11**. All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on the applicable Debtor's response to Statement 11. Due to the nature of certain of the Debtors' professionals' work, distinguishing payments related to the Debtors' bankruptcy proceedings from payments for services unrelated to the Debtors' bankruptcy proceedings can be difficult. The Debtors have therefore included some payments related to their 2023 bankruptcy cases and other non-bankruptcy-related services on Statement 11 out of an abundance of caution. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders.

In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their postpetition lenders or other parties.

6. **Statement 16**. The Debtors collect a limited amount of information about customers and their representatives. Examples of the types of information collected by the Debtors include, among other things, name, mailing address, telephone number, biometric information for customer representatives, and banking information.

7. **Statement 20**. The locations listed for off-premises storage do not include shippers that are holding goods in transit, including but not limited to goods on ships, in trucks, or in warehouses where they may temporarily be stored during the transport process.

8. **Statement 21**. All of the Debtors' retail locations engage in scan-based trading. Because of the voluminous nature of this property, it has been excluded in Statement 21.

9. **Statements 22-24**. The Debtors have operated over a substantial period of time and have periodically: (i) been party to judicial and administrative proceedings under environmental laws; (ii) received notification from governmental units of potential liability under, or violations of, environmental laws; and (iii) notified governmental units of releases of hazardous materials. The Debtors may no longer have active operations in a particular jurisdiction and may no longer have relevant records, or the records may no longer be

20

complete or reasonably accessible and reviewable. In some cases, statutory document retention periods may have passed. Further, some individuals who once possessed responsive information are no longer employed by the Debtors. For these reasons, it may not be reasonably possible for Debtors to identify and supply all of the requested information that is responsive to Statements 22-24. Nonetheless, the Debtors have made reasonable efforts to identify the requested information for: (i) pending or unresolved material judicial and administrative proceedings initiated within ten years prior to the filing date; (ii) pending or unresolved notices of potential material liability or material violations received from governmental units within ten years prior to the filing date; and (iii) pending or unresolved notifications by the Debtors to a governmental unit of material releases of hazardous material submitted within ten years prior to the filing date. The Debtors acknowledge the possibility that information related to material proceedings, notices of material violations or potential material liability from governmental units and notifications to governmental units of material releases of hazardous materials responsive to Statements 22-24 may be discovered subsequent to the filing of the Schedules and Statements. The Debtors reserve the right to supplement or amend this response in the future if additional information becomes available.

This response covers proceedings, notices and notifications of releases of hazardous materials related to the primary applicable environmental laws, as well as occupational safety and health laws to the extent related to pollution or releases of hazardous materials. This response is also limited to identifying circumstances in which governmental agencies have alleged in writing that particular operations of the Debtors are in violation of environmental laws and proceedings that have resulted from alleged violations of environmental laws. This response does not cover: (i) periodic information requests, investigations or inspections from governmental units concerning compliance with environmental laws; (ii) routine reports and submissions concerning permitted discharges resulting from routine operations where such reports and submissions were made in compliance with regulatory requirements; (iii) proceedings related to toxic-tort or product liability matters; or (iv) proceedings, notices or notifications of releases of hazardous materials related to non-environmental laws, such as transportation laws. This response assumes that any responsive information provided in response to Statements 22, 23 and 24 is also deemed to have been provided in response to the other Statements 22, 23 and 24, as appropriate. In addition, Statement 7, may identify information that is also responsive to Statement 22.

10. **Statement 25**. The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were a partner or owner within the six years immediately preceding the Petition Date.

11. **Statement 26**. Prior to becoming a private company in September 2024, the Debtors had historically provided financial statements to various interested parties over the previous two years, including, but not limited to, insurance carriers, lenders and financial institutions, landlords, material vendors, advisors and others. The Debtors do not maintain records of the parties who have requested or obtained copies. The Debtors abided by the requirements of the Securities Exchange Act of 1934, as amended, at the end of each of its fiscal quarters and years and upon the occurrence of events requiring disclosure on form 8-K. Because the

SEC filings were of public record, the Debtors did not maintain records of the parties who requested or obtained copies of any of the SEC filings from the SEC, the Debtors, or other sources.

12. **Statement 27**.   The Debtors conduct inventories at their locations at least once per fiscal year.  Due to the voluminous nature of this data, it is not included in Statement 27.  Further information regarding the Debtors' inventories is available upon request.

13. **Statement 30**.  Refer to the Methodology section regarding all payments to insiders.

**Fill in this information to identify the case:**

Debtor name   New Rite Aid, LLC

United States Bankruptcy Court for the:   District of New Jersey

Case number (If known)   25-14861

☐ Check if this is an amended filing

# Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy       04/25

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1:   Income

1. **Gross revenue from business**

   ☑ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From _____ to _____ MM/DD/YYYY | ☐ Operating a business<br>☐ Other _____ | $ _____ |
| **For prior year:** | From _____ to _____ MM/DD/YYYY   MM/DD/YYYY | ☐ Operating a business<br>☐ Other _____ | $ _____ |
| **For the year before that:** | From _____ to _____ MM/DD/YYYY   MM/DD/YYYY | ☐ Operating a business<br>☐ Other _____ | $ _____ |

2. **Non-business revenue**

   Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ☑ None

| | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From _____ to _____ MM/DD/YYYY | _____ | $ _____ |
| **For prior year:** | From _____ to _____ MM/DD/YYYY   MM/DD/YYYY | _____ | $ _____ |
| **For the year before that:** | From _____ to _____ MM/DD/YYYY   MM/DD/YYYY | _____ | $ _____ |

Debtor   New Rite Aid, LLC _____   Case number (if known) _____
Name

---

**Part 2:**   **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**

   List payments or transfers including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $8,575. (This amount may be adjusted on 4/01/2028 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☑ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer Check all that apply |
|---|---|---|---|
| 3.1 _____ Street _____ City        State        Zip Code | _____ | $ _____ | ☐ Secured debt ☐ Unsecured loan repayments ☐ Suppliers or vendors ☐ Services ☐ Other _____ |
| 3.2 _____ Street _____ City        State        Zip Code | _____ | $ _____ | ☐ Secured debt ☐ Unsecured loan repayments ☐ Suppliers or vendors ☐ Services ☐ Other _____ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $8, 575. (This amount may be adjusted on 4/01/2028 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☐ None   **Please refer to Rite Aid Corporation's SOFA question 4 response regarding intercompany balances**

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1 _____ Street _____ City        State        Zip Code | _____ | $ _____ | _____ _____ |
| **Relationship to debtor** _____ | | | |
| 4.2 _____ Street _____ City        State        Zip Code | _____ | $ _____ | _____ _____ |
| **Relationship to debtor** _____ | | | |

---

Official Form 207          **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**          Page **2**

Debtor   New Rite Aid, LLC _____   Case number (if known) 25-14861 _____
Name

---

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| 5.1 _____<br>Street _____<br>City        State        Zip Code | _____<br>_____ | _____ | $ _____ |
| 5.2 _____<br>Street _____<br>City        State        Zip Code | _____<br>_____ | _____ | $ _____ |

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| _____<br>Street _____<br>City        State        Zip Code | _____<br>_____ | _____ | $ _____ |

Last 4 digits of account number: XXXX - _____

---

**Part 3:**        Legal Actions or Assignments

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

☑ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1 _____<br><br>**Case number**<br>_____ | _____ | _____<br>Street _____<br>City        State        Zip Code | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2 _____<br><br>**Case number**<br>_____ | _____ | _____<br>Street _____<br>City        State        Zip Code | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

---

Debtor   New Rite Aid, LLC                                                    Case number (if known)   25-14861
_____
Name

### 8. Assignments and receivership

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| _____ | _____ | $ _____ |
| Street | | |
| _____ | **Case title** | **Court name and address** |
| City          State          Zip Code | _____ | |
| | **Case number** | |
| | _____ | |
| | **Date of order or assignment** | |
| | _____ | |

---

## Part 4:   Certain Gifts and Charitable Contributions

### 9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| **9.1** _____ | _____ | _____ | $ _____ |
| Street _____ | | | |
| City          State          Zip Code | | | |
| **Recipient's relationship to debtor** | | | |
| _____ | | | |
| **9.2** _____ | _____ | _____ | $ _____ |
| Street _____ | | | |
| City          State          Zip Code | | | |
| **Recipient's relationship to debtor** | | | |
| _____ | | | |

---

## Part 5:   Certain Losses

### 10. All losses from fire, theft, or other casualty within 1 year before filing this case.

☐ None   **See Attached Rider**

| Description of the property lost and how the loss occurred | Amount of payments received for the loss  If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.  List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| _____ _____ | _____ | _____ | $ _____ |

Debtor   New Rite Aid, LLC _____   Case number (if known) 25-14861 _____

Name

---

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1 _____ | _____ | _____ | $ _____ |
| **Address** | _____ | | |
| _____ Street | | | |
| _____ City          State          Zip Code | | | |
| **Email or website address** | | | |
| _____ | | | |
| **Who made the payment, if not debtor?** | | | |
| _____ | | | |

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.2 _____ | _____ | _____ | $ _____ |
| **Address** | _____ | | |
| _____ Street | | | |
| _____ City          State          Zip Code | | | |
| **Email or website address** | | | |
| _____ | | | |
| **Who made the payment, if not debtor?** | | | |
| _____ | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| _____ | _____ | _____ | $ _____ |
| **Trustee** | | | |

---

Debtor    New Rite Aid, LLC _____    Case number (if known) 25-14861 _____

Name

---

13. **Transfers not already listed on this statement**

List any transfers of money or other property-by sale, trade, or any other means-made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1 | _____ | _____ | _____ | $ _____ |

**Address**

_____
_____
Street
_____
City        State        Zip Code

**Relationship to debtor**

_____

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.2 | _____ | _____ | _____ | $ _____ |

**Address**

_____
_____
Street
_____
City        State        Zip Code

**Relationship to debtor**

_____

---

## Part 7:    Previous Locations

14. **Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| | Address | Dates of Occupancy |
|---|---|---|
| 14.1 | 30 HUNTER LANE CAMP HILL, PA 17011 | From 3/5/1990    To 2/28/2023 |
| 14.2 | | From _____    To _____ |

---

Debtor   New Rite Aid, LLC _____   Case number (if known) 25-14861 _____

Name

## Part 8:   Health Care Bankruptcies

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.   **No**

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1 _____ <br> _____ <br> Street _____ <br> City   State   Zip Code | _____ <br> _____ | _____ |

| | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider. | How are records kept? |
|---|---|---|
| | _____ <br> _____ | *Check all that apply:* <br> ☐ Electronically <br> ☐ Paper |

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.2 _____ <br> _____ <br> Street _____ <br> City   State   Zip Code | _____ <br> _____ | _____ |

| | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider. | How are records kept? |
|---|---|---|
| | _____ <br> _____ | *Check all that apply:* <br> ☐ Electronically <br> ☐ Paper |

## Part 9:   Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained.

PLEASE SEE THE DEBTOR'S PRIVACY POLICY AT HTTPS://WWW.RITEAID.COM/LEGAL/PRIVACY-POLICY

Does the debtor have a privacy policy about that information?

☐ No

☑ Yes

HTTPS://WWW.RITEAID.COM/LEGAL/PATIENT-PRIVACY-POLICY

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☐ Yes. Fill in below

| Name of plan | Employer identification number of the plan |
|---|---|
| _____ | EIN: _____ |

Has the plan been terminated?

☐ No

☐ Yes

Debtor   New Rite Aid, LLC _____   Case number (if known) 25-14861 _____

Name

## Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, old, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1 _____<br>Street _____<br>City   State   Zip Code | XXXX- _____ | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | _____ | $ _____ |
| 18.2 _____<br>Street _____<br>City   State   Zip Code | XXXX- _____ | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | _____ | $ _____ |

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Street _____<br>City   State   Zip Code | _____<br>_____<br><br>**Address**<br>_____<br>_____ | _____<br>_____ | ☐ No<br>☐ Yes |

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Street _____<br>City   State   Zip Code | _____<br>_____<br><br>**Address**<br>_____<br>_____ | _____<br>_____ | ☐ No<br>☐ Yes |

Debtor   New Rite Aid, LLC _____   Case number (if known) 25-14861 _____

Name

---

### Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own

21.  **Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None   **Please refer to Debtors' Global Notes regarding statement question 21**

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ _____ |
| Street | | | |
| City          State          Zip Code | | | |

---

### Part 12:   Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

■ *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

■ *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

■ *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22.  **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☒ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| _____ | _____ | _____ | ☐ Pending |
| | | _____ | ☐ On appeal |
| **Case Number** | Street | | ☐ Concluded |
| _____ | _____ | | |
| | City          State          Zip Code | | |

23.  **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☒ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | _____ | |
| City          State          Zip Code | City          State          Zip Code | | |

---

Debtor   New Rite Aid   _____   Case number (if known) 25-14862   Page 1-32

Name

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | | |
| _____ | _____ | | |
| City          State     Zip Code | City          State     Zip Code | | |

---

**Part 13:   Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1 RITE AID CORPORATION<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | HOLDING COMPANY | EIN: 23-1614034<br><br>**Dates business existed**<br><br>From 04/15/1968     To   PRESENT |

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.2 | | EIN: _____<br><br>**Dates business existed**<br><br>From _____     To _____ |

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.3 | | EIN: _____<br><br>**Dates business existed**<br><br>From _____     To _____ |

Debtor   New Rite Aid, LLC

Name

Case number (if known) 25-14861

### 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1 MATT SCHROEDER<br>ADDRESS REDACTED | From 03/01/2019   To 09/03/2024 |

| Name and address | Dates of service |
|---|---|
| 26a.2 STEVE BIXLER<br>ADDRESS REDACTED | From 01/13/2023   To PRESENT |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26b.1 DELOITTE & TOUCHE LLP<br>DELOITTE TAX LLP<br>PO BOX 844736<br>DALLAS, TX 75284-4736 | From 1999   To 02/01/2025 |

| Name and address | Dates of service |
|---|---|
| 26b.2 | From   To |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.1 STEVE BIXLER<br>ADDRESS REDACTED | N/A |

Debtor    New Rite Aid    Case number (if known) 25-14864

Name

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.2 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None    **See Attached Rider**

| Name and address |
|---|
| 26d.1 _____ |

Street _____

City _____ State _____ Zip Code _____

| Name and address |
|---|
| 26d.2 _____ |

Street _____

City _____ State _____ Zip Code _____

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☐ Yes. Give the details about the two most recent inventories.    **Please refer to Debtors' Global Notes regarding statement question 27**

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| _____ | _____ | $ _____ |

| Name and address of the person who has possession of inventory records |
|---|
| 27.1 _____ |

Street _____

City _____ State _____ Zip Code _____

Debtor    New Rite Aid, LLC                                                                 Case number (If known)   25-14861
            Name

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ _____ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|

27.2 _____

_____
Street

_____
City                    State              Zip Code

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **See Attached Rider** | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **See Attached Rider** | | | From _____ To _____ |
| | | | From _____ To _____ |
| | | | From _____ To _____ |
| | | | From _____ To _____ |

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No

☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 **Refer to SOFA Question 4** | | | |
| Street | | | |
| City        State        Zip Code | | | |

| Relationship to debtor |
|---|

Official Form 207            **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**            Page **13**

Debtor   New Rite Aid, LLC _____   Case number (if known) 25-14861 _____

Name

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.2 _____ | _____ | _____ | _____ |
| _____ | | | _____ |
| Street | | | |
| City            State            Zip Code | | | |
| **Relationship to debtor** | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| RITE AID CORPORATION | EIN: 23-1614034 |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: |

---

**Part 14:   Signature and Declaration**

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     06/16/2025
                        MM / DD / YYYY

X  /s/ Steve Bixler                                          Printed name   Steve Bixler
Signature of individual signing on behalf of the debtor

Position or relationship to debtor     Chief Financial Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No

☑ Yes

Debtor Name:  New Rite Aid, LLC                                                                                       Case Number:  25-14861

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 10:**  All losses from fire, theft, or other casualty within 1 year before filing this case.

| Description of Property | Amount of Payments | Date of Loss | Value |
|---|---|---|---|
| FIRE | $0 | 01/07/2025 | $250,000.00 |
| FIRE | $0 | 01/07/2025 | $1,600,000.00 |

Debtor Name:  New Rite Aid, LLC                                                                                    Case Number:  25-14861

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26d:** List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issues a financial statement within 2 years before filing this case.

| Name and Address |
| --- |
| |

Prior to becoming a private company in September 2024, the Debtors had historically provided financial statements to various interested parties over the previous two years, including, but not limited to, insurance carriers, lenders and financial institutions, landlords, material vendors, advisors and others. The Debtors do not maintain records of the parties who have requested or obtained copies. The Debtors abided by the requirements of the Securities Exchange Act of 1934, as amended, at the end of each of its fiscal quarters and years and upon the occurrence of events requiring disclosure on form 8-K. Because the SEC filings were of public record, the Debtors did not maintain records of the parties who requested or obtained copies of any of the SEC filings from the SEC, the Debtors, or other sources.

Debtor Name:  New Rite Aid, LLC                                                                                    Case Number:  25-14861

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 28:** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position | % Interest |
|---|---|---|---|
| BRYANT HARRIS | ADDRESS REDACTED | CHIEF MERCHANDISING OFFICER | |
| BYRON PURCELL | ADDRESS REDACTED | TREASURER | |
| CHRISTIN BASSETT | ADDRESS REDACTED | DEPUTY GENERAL COUNSEL | |
| DAVID KASTIN | ADDRESS REDACTED | CHIEF LEGAL OFFICER, GENERAL COUNSEL AND CORPORATE SECRETARY | |
| JESSICA KAZMAIER | ADDRESS REDACTED | CHIEF ADMINISTRATIVE OFFICER AND CHIEF OF STAFF TO THE CHIEF EXECUTIVE OFFICER | |
| JOY ERRICO | ADDRESS REDACTED | CHIEF CORPORATE AFFAIRS AND COMMUNICATIONS OFFICER | |
| JPMORGAN | 200 NEWBERRY COMMONS ETTERS, PA 17319 | SHAREHOLDER | 18.3% |
| MARC LIEBMAN | ADDRESS REDACTED | CHIEF TRANSFORMATION OFFICER | |
| MARY HENDRICKSON | ADDRESS REDACTED | CHIEF COMPLIANCE OFFICER | |
| MATTHEW SCHROEDER | ADDRESS REDACTED | CHIEF EXECUTIVE OFFICER | |
| MATTHEW SCHROEDER | ADDRESS REDACTED | DIRECTOR | |
| MICHAEL WARTELL | ADDRESS REDACTED | DIRECTOR | |
| RAGESHREE PARAB | ADDRESS REDACTED | CHIEF INFORMATION OFFICER | |
| SCOTT VOGEL | ADDRESS REDACTED | DIRECTOR | |
| SIXTH STREET | 200 NEWBERRY COMMONS ETTERS, PA 17319 | SHAREHOLDER | 16.5% |
| STEVE BIXLER | ADDRESS REDACTED | CHIEF FINANCIAL OFFICER | |
| SUSAN LOWELL | ADDRESS REDACTED | CONTROLLER | |
| TERI SCHANCK | ADDRESS REDACTED | CHIEF PEOPLE OFFICER | |
| THOMAS A PITTA IN HIS CAPACITY AS THE TRUSTEE OF THE GUC TRUST EQUITY TRUST | 200 NEWBERRY COMMONS ETTERS, PA 17319 | SHAREHOLDER | 10% |
| TIM POHL | ADDRESS REDACTED | DIRECTOR | |
| VARIOUS MINORITY SHAREHOLDERS WITH LESS THAN 10% OWNERSHIP | 200 NEWBERRY COMMONS ETTERS, PA 17319 | SHAREHOLDER | 55.2% |

Debtor Name: New Rite Aid, LLC                                                                    Case Number: 25-14861

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 29:** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

| Name | Address | Position | Start | End |
|---|---|---|---|---|
| JEANNIEY WALDEN | ADDRESS REDACTED | CHIEF MARKETING AND CUSTOMER OFFICER | 08/07/2023 | 02/03/2025 |
| KAREN STANIFORTH | ADDRESS REDACTED | CHIEF PHARMACY OFFICER | 03/01/2022 | 05/05/2025 |
| WILLIAM MILLER | ADDRESS REDACTED | CHIEF OF STORE OPERATIONS | 10/04/2021 | 01/16/2025 |