| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>                Debtors.[1] | |

**Order Filed on July 1, 2025**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

Chapter 11

Case No. 25-14861 (MBK) (Jointly Administered)

**ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND
PERFORM UNDER THE KPH HEALTHCARE SERVICES ASSET PURCHASE
AGREEMENT, (II) APPROVING THE SALE OF PURCHASED ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND
(III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through forty-seven (47) is **ORDERED**.

**DATED: July 1, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

Upon the motion, dated May 6, 2025 [Docket No. 17] (the "Motion"),[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), for an order (this "Order"): (a) authorizing and approving the entry into and performance under the terms and conditions of that certain Asset Purchase Agreement, dated as of June 17, 2025, by and among certain of the Debtors (the "Sellers") and KPH Healthcare Services, Inc., (the "Purchaser"), substantially in the form attached hereto as **Exhibit 1** to the Order (as it may be amended, modified, or supplemented in accordance with its terms, the "Asset Purchase Agreement"), and all other transaction documents necessary and desirable to consummate the transactions contemplated by the Asset Purchase Agreement (the "Transaction Documents"); (b) authorizing the Debtors to sell the Purchased Assets (as defined in the Asset Purchase Agreement) to the Purchaser as described in the Asset Purchase Agreement, free and clear of liens, claims, Encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code and in accordance with the terms set forth in

---

[2]   Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Motion, the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice With Respect Thereto, and (VII) Granting Related Relief,* [Docket No. 473] (the "Bidding Procedures Order"), the Bidding Procedures, or the Asset Purchase Agreement, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

the Asset Purchase Agreement (the "Sale"); (c) providing that the appointment of a consumer

privacy ombudsman is not required; and (d) granting related relief, all as more fully set forth in

the Motion; and the Court having entered the Bidding Procedures Order [Docket No. 473]; and the

Debtors having scheduled an auction (the "Auction") for the Purchased Assets; and the Debtors,

on June 23, 2025, having filed the *Notice of (I) Sale by Auction and Sale Hearing for Debtors'*

*Thrifty Assets and (II) Adjournment of Auction with Respect to the Debtors' Other Remaining*

*Assets* [Docket No. 1062], adjourning the Auction with respect to the Remaining Assets *sine die*,

in accordance with the Bidding Procedures; and the Debtors having determined that the Purchaser

has submitted the highest or otherwise best bid for the Purchased Assets and determined that the

Purchaser is the Successful Bidder, in accordance with the Bidding Procedures; and the Debtors

having served the notice of the Auction and notice of the Sale Hearing (the "Sale Notice") in

accordance with the Bidding Procedures Order; and the Debtors having filed and served the Notice

of Successful Bidder with respect to the Purchased Assets in accordance with the Bidding

Procedures, and the Debtors having filed the form of Order on May 9, 2025, and the Court having

held a hearing on June 30, 2025 (the "Sale Hearing"), at which time all interested parties were

offered an opportunity to be heard with respect to the Motion and the proposed Order; and the

Court having reviewed and considered the Motion, the Asset Purchase Agreement, the proposed

Order, and any and all objections to the Sale, the Asset Purchase Agreement, and the other

Transaction Documents filed in accordance with the Bidding Procedures Order; and upon the First

Day Declaration; the *Declaration of Adam Rifkin in Support of the Debtors' Bidding Procedures*

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

*Motion* [Docket No. 20] (the "Bidding Procedures Declaration") and the *Declaration of Adam Rifkin in Support of Debtors' Omnibus Reply in Support of Sale of Remaining Assets* (the "Remaining Asset Sale Declaration") filed substantially contemporaneously herewith; and the *Declaration of Elise S. Frejka, CIPP/US in Support of Entry of the KPH Sale Order* (the "Frejka Declaration") [Docket No 1150]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their stakeholders, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and the proposed Order was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the Sale Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing, it is hereby

**FOUND, CONCLUDED, AND DETERMINED THAT:**

(Page | 6)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

**Petition Date; Jurisdiction, Venue, and Final Order**

A.      On May 5, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and any other applicable Bankruptcy Rules or Local Rules, and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

D.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Notice of the Bidding Procedures Order, the Bidding Procedures,
the Asset Purchase Agreement and the Sale, the Auction, the Sale Hearing, and this Order**

E.      As evidenced by the Sale Notice and service thereof [Docket No. 342], the Notice of Successful Bidder [Docket No. 1113], the form of Order [Docket No. 186], affidavits of service

(Page | 7)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

and publication previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Hearing, the Asset Purchase Agreement, entry of this Order, and the Sale has been provided in accordance with section 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, and 9014, and Local Rule 6004-3. The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Hearing, the Asset Purchase Agreement, or the Sale is required.

F.      No further notice beyond that described in this Order is required in connection with the Sale.

G.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

H.      The *Notice of Potentially Assumed Executory Contracts and Unexpired Leases* (the "Contract Assumption Notice") is appropriate and reasonably calculated to provide each non-Debtor counterparty to the applicable Contracts (as defined in the Bidding Procedures Order) with proper notice of the potential assumption and assignment of the applicable Contract, the proposed cure cost, and the Assumption and Assignment Procedures (as set forth in the Bidding Procedures Order). The inclusion of any particular Contracts on any Assumption Notice (defined below) shall not be deemed to be an admission that such contract or lease is an executory contract or unexpired lease of property or require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the Debtors with respect to the foregoing are reserved.

(Page | 8)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

I.     In accordance with the Bidding Procedures Order, the Debtors have served a notice of their intent to assume and assign the Contracts and of the cure costs therefor upon each counterparty to a Contract.  The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further or other notice need be given in respect of assumption and assignment of the Contracts or establishment of cure costs for the respective Contracts.  Pursuant to the Bidding Procedures Order, counterparties to the Contracts have had or will have had an adequate opportunity to object to assumption and assignment of the applicable Contracts and the cure costs therefor as set forth in the notice (including objections related to adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, the Purchaser (or its designee) for purposes of section 365(c)(1) of the Bankruptcy Code).

**Authority to Execute and Perform Under the Asset Purchase Agreement**

J.     The Debtors' performance under the Asset Purchase Agreement is approved in all respects.  The Debtors are authorized to execute and perform under the Asset Purchase Agreement pursuant to sections 363 of the Bankruptcy Code and may close the Sale pursuant to the Asset Purchase Agreement.

**Highest or Best Offer**

K.     The Debtors conducted a sale process in accordance with (i) and have complied in all respects with the Bidding Procedures Order and (ii) the purpose of obtaining the highest or otherwise best offer for, and have afforded a full, fair, and reasonable opportunity for any interested

(Page | 9)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

party to make a higher or otherwise better offer to purchase, the Purchased Assets (including assumption of the Assumed Liabilities).

L.      (i) Prior to and from and after the commencement of these chapter 11 cases, the Debtors and their advisors engaged in a robust and extensive marketing and sale process and exercised sound business judgment, as more fully detailed in the Bidding Procedures Declaration and the First Day Declaration; (ii) the Bidding Procedures were substantively and procedurally fair to all parties and the Debtors conducted a fair and open sale process in compliance therewith, (iii) the sale process, the Bidding Procedures, and the Auction, were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Purchased Assets, or who the Debtors believed may have had an interest in acquiring the Purchased Assets, to make an offer to purchase the Debtors' assets, including, without limitation the Purchased Assets, (iv) the Debtors and the Purchaser have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good-faith manner; and (v) the sale process conducted by the Debtors pursuant to the Bidding Procedures and the Bidding Procedures Order resulted in the highest or otherwise best value for the Purchased Assets for the Debtors and their estates, was in the best interest of the Debtors, their estates, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result.  There is no legal or equitable reason to delay entry into the Asset Purchase Agreement and the transactions contemplated therein.

| Debtors: | NEW RITE AID, LLC, et al. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

M.      Approval of the Asset Purchase Agreement, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of their obligations under the Asset Purchase Agreement.  The Sale must be approved and consummated in order to maximize the value of the Debtors' estates.

N.      The consummation of the Sale outside a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

O.      Entry of an order approving the Asset Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Sale.

### Personally Identifiable Information

P.      As set forth in the Frejka Declaration, the sale, conveyance, assignment, and transfer of personally identifiable information (as defined in section 101(41A) of the Bankruptcy Code) ("Personal Information") pursuant to the terms of the Transaction Documents is limited to the transfer of protected health information ("PHI") subject to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").   As such, the Debtors' privacy policy applicable to the Personal Information being transferred pursuant to the Transaction Documents is the Notice of

(Page | 11)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

Privacy Practices (the "Patient Privacy Policy"), which supersedes the Debtors' general privacy policy (the "Privacy Policy") with respect to PHI. The transfer of Personal Information to be effected pursuant to the Transaction Documents complies with the Patient Privacy Policy in effect as of the Petition Date and, as a result, consummation of the Sale as set forth in the Transaction Documents is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code. Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale and the transactions contemplated by the Transaction Documents. To the extent applicable, the Notice of Successful Bidder (as defined in the Motion) contains any information required pursuant to Bankruptcy Rule 2002(c)(1).

**Good Faith of the Purchaser**

Q.      The consideration to be paid by the Purchaser under the Asset Purchase Agreement was negotiated at arm's length, in good faith, and without collusion pursuant to section 363(m) of the Bankruptcy Code and constitutes reasonably equivalent value and fair and adequate consideration for the Purchased Assets. Specifically: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the Purchaser complied in all respects with the provisions in the Bidding Procedures Order in negotiating and entering into the Asset Purchase Agreement and the other Transaction Documents, and the Asset Purchase Agreement, the other Transaction Documents, and the transactions described therein comply with the Bidding Procedures Order; (iii) the Purchaser agreed to subject any bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

payments made by the Purchaser in connection with the Sale have been disclosed in the Asset Purchase Agreement; (v) no common identity of directors, officers, or controlling stockholders exists among the Purchaser and the Debtors; (vi) the negotiation and execution of the Asset Purchase Agreement was at arm's length and in good faith, and at all times each of the Purchaser and the Debtors were represented by competent counsel of their choosing; and (vii) the Purchaser has not acted in a collusive manner with any person. The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement. The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

R.    The Debtors, the Purchaser, and each of their respective management, boards of directors, members, officers, directors, employees, agents, and representatives, as applicable, have acted in good faith. The Asset Purchase Agreement and the other Transaction Documents were negotiated, proposed, and entered into by the Debtors and the Purchaser in good faith, without collusion or fraud, and from arm's-length bargaining positions. The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

S.    The Asset Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Debtors, the Purchaser, and their

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

respective agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

## No Fraudulent Transfer

T.      The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement for its purchase of the Purchased Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, and the District of Columbia.

U.      Neither the Purchaser nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (collectively, the "Purchaser Parties") is a continuation of the Debtors or their respective estates, and the Purchaser is not holding itself out to the public as a continuation of the Debtors or their respective estates and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors.

Debtors:                NEW RITE AID, LLC, et al.
Case No.                25-14861 (MBK)
Caption of Order:       Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH
                        Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of
                        Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                        Interests, (III) Authorizing Assumption and Assignment of Certain
                        Executory Contracts in Connection Therewith, and (IV) Granting Related
                        Relief

## **Validity of Transfer**

V.      Subject to entry of this Order, the Debtors (i) have full corporate power and
authority to execute and deliver the Asset Purchase Agreement and all other documents
contemplated thereby, as applicable, (ii) have all of the power and authority necessary to
consummate the Sale, and (iii) have taken all action necessary to authorize and approve the Asset
Purchase Agreement and to consummate the Sale, and no further consents or approvals, other than
those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to
consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise
set forth in the Asset Purchase Agreement.  The Purchased Assets constitute property of the
Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code, and title thereto is
presently vested in the Debtors' estates.

## **Section 363(f) Is Satisfied**

W.      The Sale of the Purchased Assets to the Purchaser, including the Contracts, under
the terms of the Asset Purchase Agreement meets the applicable provisions of section 363(f) of
the Bankruptcy Code such that the Sale of the Purchased Assets will be free and clear of any and
all liens, claims, Encumbrances, and other interests, and will not subject the Purchaser to any
liability for any claims whatsoever (including, without limitation, under any theory of equitable
law, antitrust, or successor or transferee liability) (collectively, "Claims and Interests"), except as
expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and

(Page | 15)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

Permitted Liens[3].  All holders of Claims and Interests who did not object or who withdrew their objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code and all holders of Claims and Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Claims and Interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert Claims and Interests or other specifically dedicated funds in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to (a) any rights, claims, and defenses of the Debtors or their estates, as applicable and (b) paragraph 40 of this Order.  Those holders of Claims and Interests who did object and who have an interest in the Purchased Assets fall under one or more of the other subsections of section 363(f) of the Bankruptcy Code.

X.    The transfer of the Purchased Assets to the Purchaser under the Asset Purchase Agreement will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial

---

[3]    "Permitted Lien" means (i) Liens for utilities and Taxes not yet due and payable, or that are being contested in good faith, or the nonpayment of which is permitted or required by the Bankruptcy Code, (ii) easements, rights of way, restrictive covenants, encroachments and similar non-monetary liens or non-monetary impediments against any of the Purchased Assets which do not, individually or in the aggregate, adversely affect the operation of the Purchased Assets in any material respect and, in the case of the Assumed Lease, which do not, individually or in the aggregate, adversely affect the use or occupancy of the Assumed Lease in any material respect, (iii) applicable zoning Laws, building codes, land use restrictions and other similar restrictions imposed by Law which are not violated in any material respect by the current use or occupancy of the Assumed Lease, (iv) materialmans', mechanics', artisans', shippers', warehousemans' or other similar common law or statutory liens incurred in the Ordinary Course of Business for amounts not yet due and payable or that are being contested by appropriate proceedings, (v) licenses granted on a non-exclusive basis, (vi) such other Liens or title exceptions which do not, individually or in the aggregate, materially and adversely affect the operation of the Purchased Assets, (vii) matters that would be disclosed by an accurate survey or inspection of the applicable real property, (viii) with respect to any leased real property, any Liens to which the fee or any superior leasehold is subject and any Lien in favor of the lessor on the Purchased Assets located at such leased real property, or (ix) solely prior to the Closing, any Liens that will be removed or released by operation of the Sale Order.

(Page | 16)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

right, title, and interest in and to the Purchased Assets free and clear of all Claims and Interests, except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens.  The Debtors may sell their interests in the Purchased Assets free and clear of all Claims and Interests because, in each case, one or more of the standards set forth in section 363(f) has been satisfied.  The Purchaser would not have entered into the Asset Purchase Agreement and the Transaction Documents and would not consummate the transactions contemplated thereby, including, without limitation, the Sale, (i) if the transfer of the Purchased Assets was not free and clear of all interest of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory, and/or applicable state or federal law or otherwise or (ii) if the Purchaser or any of its affiliates or designees would, or in the future could, be liable for any interests, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory, and/or applicable state or federal law or otherwise, in each case, subject only to the Assumed Liabilities and Permitted Liens.  Not transferring the Purchased Assets free and clear of all Claims and Interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory, and/or applicable state or federal law or otherwise (subject only to the Assumed Liabilities and Permitted Liens) would adversely impact the Debtors' efforts to maximize the value of their estates.

Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH
                    Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing Assumption and Assignment of Certain
                    Executory Contracts in Connection Therewith, and (IV) Granting Related
                    Relief

### **Assumption and Assignment of Contracts**

Y.      The assumption and assignment of the Contracts pursuant to the terms of this Order
are integral to the Asset Purchase Agreement, are in the best interests of the Debtors and their
respective estates, creditors, and other parties in interest, and represent the reasonable exercise of
sound and prudent business judgment by the Debtors.

Z.      The Debtors served a Contract Assumption Notice on each non-Debtor
counterparty to a Contract on or before June 27, 2025.  In accordance with the Assumption and
Assignment Procedures, the objection deadline for all Contracts listed on such notice is
fourteen (14) days from the date of service, and the objection deadline to any Contract listed on a
Supplemental Assumption Notice (as defined in the Bidding Procedures Order and, together with
each Contract Assumption Notice, collectively, the "Assumption Notice") shall be set forth in such
notice (each, a "Contract Objection Deadline") and be in accordance with the Assumption and
Assignment Procedures.

AA.     The Debtors have demonstrated that it is a reasonable exercise of their sound
business judgment to assume and assign the Contracts to the Purchaser pursuant to the terms of
this Order and the Asset Purchase Agreement, in each case in connection with the consummation
of the Sale, and the assumption and assignment of the Contracts is in the best interests of the
Debtors, their estates and creditors, and other parties in interest.

BB.     Any non-Debtor counterparty to any Contract that has not actually filed with the
Court an objection, or who withdrew an objection or does not timely file an objection to an

(Page | 18)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

Assumption Notice by the applicable Contract Objection Deadline, is deemed to have consented to such assumption and assignment and the cure cost, if any.

CC.    The cure cost set forth on the Contract Assumption Notice, if any, are the sole amounts necessary under section 365 of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Contracts, unless otherwise determined by the Court or by agreement of the Debtors and the non-Debtor counterparty, and such assumption and assignment to Purchaser shall be deemed approved by this Order without further order of this Court.  The findings of fact in this paragraph shall not apply to any non-Debtor counterparty to a Contract prior to the applicable Contract Objection Deadline, absent the consent of the non-Debtor counterparty.

DD.    The Debtors shall have the right, in accordance with and subject to the Bidding Procedures Order, to serve a Supplemental Assumption Notice upon any non-Debtor counterparty indicating the Debtors' intent to assume and assign such executory contract.

EE.    The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Contracts.  The Debtors have (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to Closing under any of the Contracts.  The Purchaser has provided adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) and in accordance with the Bidding Procedures to the extent that any such assurance is required and not

(Page | 19)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

waived by the counterparties to such Contracts. The findings of fact in this paragraph shall not apply to any non-Debtor counterparty to a Contract prior to the applicable Contract Objection Deadline, absent the consent of the non-Debtor counterparty.

### **Prompt Consummation**

FF.     The sale of the Purchased Assets must be approved and consummated promptly to maximize value for the Debtors' estates, and avoid irreparable harm to the Debtors' estates and their stakeholders, including their creditors and customers. Time, therefore, is of the essence in effectuating the Asset Purchase Agreement. As such, the Debtors and the Purchaser intend to close the sale of the Purchased Assets as soon as reasonably practicable in accordance with the terms of the Asset Purchase Agreement. The Debtors have demonstrated immediate and irreparable harm absent entry of this Order and compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Asset Purchase Agreement. Accordingly, there is sufficient cause to waive the stay provided in Bankruptcy Rule 6004(h) and 6006(d) and any other applicable Bankruptcy Rule or Local Rule.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

### **General Provisions**

1.     The Motion is **GRANTED** as set forth herein.

2.     All objections to or reservations of rights with respect to the Motion or the relief requested therein that have not been withdrawn or resolved are overruled with prejudice. All

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

persons and entities who did not object or withdraw their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

3.     The Asset Purchase Agreement, attached hereto as **Exhibit 1,** and the other Transaction Documents and all terms and conditions thereof, are hereby approved in all respects. The failure to specifically include any particular provision of the Asset Purchase Agreement or the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision.

### Transfer of the Purchased Assets
### as set forth in the Asset Purchase Agreement

4.     The Debtors are authorized, but not directed, to take any and all actions necessary and appropriate to cause the Sellers to: (a) consummate the transactions contemplated by the Asset Purchase Agreement and the Transaction Documents in accordance with the terms thereof; (b) sell the Purchased Assets to the Purchaser for the purchase price in accordance with the terms of this Order and the Asset Purchase Agreement and the Transaction Documents; (c) assume and assign any and all Contracts, and (d) otherwise implement and effectuate the terms of the Asset Purchase Agreement and the Transaction Documents.

5.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets shall be transferred to the Purchaser, free and clear of any and all Claims and Interests, with all such Claims and Interests to attach to the proceeds of the Purchased Assets in the order of their priority, with the same force, effect, and validity that they had immediately prior to the entry of

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

this Order, subject to any rights, claims, or defenses the Debtors may have with respect thereto, *except* with respect to any Assumed Liabilities or Permitted Liens allowed under the Asset Purchase Agreement and subject to paragraph 40 of this Order. Such transfer shall constitute a legal, valid, binding, and effective transfer of the Purchased Assets.

6. As set forth in the Asset Purchase Agreement, the Purchaser is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities.

7. Except for (a) the Assumed Liabilities expressly set forth in the Asset Purchase Agreement or described therein or (b) the Permitted Liens expressly set forth in the Asset Purchase Agreement none of the Purchaser, its successors or assigns, or any of their respective affiliates shall have any liability for any Claims and Interests that (x) arose prior to the date of Closing, or (y) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the date of Closing, including, for the avoidance of doubt, Claims and Interests arising out of the Excluded Liabilities.

8. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Asset Purchase Agreement, the Transaction Documents, and this Order.

9. At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the corresponding Purchased Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code. Such transfer shall constitute a legal,

| Debtors: | NEW RITE AID, LLC, et al. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

valid, enforceable, and effective transfer of such Purchased Assets. All persons or entities presently or at or after Closing in possession of some or all of the corresponding Purchased Assets are directed to surrender possession of any and all portions of such Purchased Assets to the Purchaser or its respective designees at Closing or at such time thereafter as the Purchaser may request.

10. This Order (a) shall be effective as a determination that, as of Closing, (i) no Claims and Interests other than the corresponding Assumed Liabilities and Permitted Liens will be assertable against the Purchaser or any of its assets, (ii) the corresponding Purchased Assets shall have been transferred to the Purchaser free and clear of all Claims and Interests, subject only to the applicable Assumed Liabilities and Permitted Liens, and (iii) the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the Transaction Documents. The Purchased Assets are sold free and clear of any reclamation rights. All Claims and Interests on the Purchased Assets shall attach to the proceeds of the Sale ultimately

(Page | 23)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

attributable to the property against which such Claims and Interests applied or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such Claims and Interests applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, subject to paragraph 40 of this Order.

11.     Except as otherwise provided in the Asset Purchase Agreement, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims arising under or out of, in connection with or in any way relating to, the Debtors, the Purchased Assets, and the ownership, sale, or operation of the Purchased Assets prior to Closing or the transfer of the applicable Purchased Assets to the Purchaser are hereby forever barred, estopped, and permanently enjoined from asserting such claims against the Purchaser and its property (including, without limitation, the Purchased Assets).  Following Closing, no holder of any claim or interest shall interfere with the Purchaser's title to or use and enjoyment of the corresponding Purchased Assets based on or related to any such claim or interest or based on any action the Debtors may take in their chapter 11 cases.

12.     If any person or entity that has filed financing statements, mortgages, mechanic's claims, *lis pendens*, or other documents or agreements evidencing claims against the Debtors or in the Purchased Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

(Page | 24)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

and/or releases of all Claims and Interests that the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by the Purchaser pursuant to the Asset Purchase Agreement and this Order: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets; (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Interests against the Purchaser Parties and the Purchased Assets; and (c) upon consummation of the Sale, the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and Interests that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code and any other provisions of the Bankruptcy Code with respect to the Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.   Notwithstanding the foregoing, the provisions of this Order authorizing the Sale and assignment of the Purchased Assets free and clear of Claims and Interests shall be self-executing and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

(Page | 25)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

13.    Effective upon Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser or its assets (including, without limitation, the Purchased Assets), with respect to any (a) claim in these chapter 11 cases or in connection with or related to the Sale or the Debtors or (b) Successor or Transferee Liability (defined below), including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or Encumbrance; (iv) asserting any set-off, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action in any manner or place that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any License (defined below) to operate any business in connection with the Purchased Assets or conduct any of the businesses operated with respect to such assets.

**No Successor or Transferee Liability**

14.    The Purchaser shall not be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Sale, or the transfer, operation, or use of the Purchased Assets to (a) be a legal successor or otherwise be deemed a successor to the Debtors (other than with respect to any Assumed Liabilities and Permitted Liens arising after

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

Closing), (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors, including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act of 1974 (as amended), tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation.

15.     Immediately prior to each closing, Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Purchaser and the Debtors.

16.     Other than as expressly set forth in the Asset Purchase Agreement, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Purchased Assets or (b) any claims against the Debtors or any of their predecessors or affiliates.  Except as expressly provided in the Asset Purchase Agreement with respect to the Purchaser, the Purchaser shall not have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious

(Page | 27)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets or the Assumed Liabilities or prior to Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefit which is or has been sponsored, maintained, or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent.

### Assumption and Assignment of Contracts

17.     The applicable non-Debtor counterparties may object to the assumption and assignment to the Purchaser of the applicable Contract in accordance with the Assumption and Assignment Procedures and, to the extent this Order is entered prior to any Contract Objection Deadline, the applicable Contracts may be assumed and assigned to the Purchaser no earlier than the occurrence of the applicable Contract Objection Deadline, absent the consent of the non-Debtor counterparty to the Contract.

18.     Subject to paragraph 17, the Debtors are authorized at Closing to assume and assign each of the Contracts to the Purchaser pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Purchaser (or its designee) such documents or other instruments

Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH
                    Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing Assumption and Assignment of Certain
                    Executory Contracts in Connection Therewith, and (IV) Granting Related
                    Relief

as may be necessary to assign and transfer the Contracts to the Purchaser.  The payment of the

applicable cure costs (if any) shall (a) effect a cure of all defaults existing thereunder as of Closing

and (b) compensate for any actual pecuniary loss to such counterparty resulting from such default.

19.      Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the

applicable cure costs, the Contracts to be assumed and assigned under the Asset Purchase

Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit

of, the Purchaser, notwithstanding any provision in the contracts or other restrictions prohibiting

their assignment or transfer.  Any provisions in any Contract that prohibit or condition the

assignment of such Contract to the Purchaser or allow the counterparty to such Contract to

terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term

or condition upon the assignment of such Contract to the Purchaser constitute unenforceable

anti-assignment provisions that are void and of no force and effect.  All other requirements and

conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors

and assignment to the Purchaser of the Contracts have been satisfied.  Subject to paragraph 17,

upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser

shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the

Contracts, and such Contracts shall remain in full force and effect for the benefit of the Purchaser.

Each counterparty to the Contracts shall be forever barred, estopped, and permanently enjoined

from (a) asserting against the Debtors or any Purchaser or their respective property any assignment

fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing,

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

arising, or accruing as of Closing or arising by reason of any such Closing, including, without limitation, any breach related to or arising out of change-in-control provisions in such Contracts, or any purported written or oral modification to the Contracts and (b) asserting against any Purchaser (or its respective property, including, without limitation, the Purchased Assets) any claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against the Debtors, including, without limitation, claims arising out of or related to service or notice of the Contract Assumption Notice, all existing as of Closing or arising by reason of any such Closing, except for the Assumed Liabilities and Permitted Liens.

20.     Subject to paragraph 17, upon Closing and the payment of the relevant cure costs, if any, in accordance with the terms of the Asset Purchase Agreement, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Contracts.  There shall be no assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Contracts.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Purchaser, as the case may be, to enforce every term and condition of such Contract.  The validity of the assumption and assignment of any Contract to the Purchaser shall not be affected by any existing dispute between the Debtors and any counterparty to such Contract.  Any party that may have had the right to consent to the assignment of any Contract has received adequate notice of the proposed

(Page | 30)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

assignment of such Contract and is deemed to have consented for the purposes of section 365(e)(2)(A) of the Bankruptcy Code.

21.    All defaults or other obligations of the Debtors under the Contracts arising or accruing after the applicable Contract Objection Deadline and prior to Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on Closing Date, or as soon thereafter as reasonably practicable, or by such other time agreed to by the Debtors and the applicable counterparty.

22.    The assignments of each of the Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

23.    The applicable non-Debtor counterparties may object to the assumption and assignment to the Purchaser of the applicable Contract in accordance with the Assumption and Assignment Procedures and, to the extent this Order is entered prior to any Contract Objection Deadline, the applicable Contracts may be assumed and assigned to the Purchaser no earlier than the occurrence of the applicable Contract Objection Deadline, absent the consent of the non-Debtor counterparty to the Contract.

24.    Subject to paragraph 17, the Debtors are authorized at Closing to assume and assign each of the Contracts to the Purchaser pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Purchaser (or its designee) such documents or other instruments as may be necessary to assign and transfer the Contracts to the Purchaser.  The payment of the

(Page | 31)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

applicable cure costs (if any) shall (a) effect a cure of all defaults existing thereunder as of the relevant Closing and (b) compensate for any actual pecuniary loss to such counterparty resulting from such default.

25.     Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable cure costs, the Contracts to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.   Any provisions in any Contract that prohibit or condition the assignment of such Contract to the Purchaser or allow the counterparty to such Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Contract to the Purchaser constitute unenforceable anti-assignment provisions that are void and of no force and effect.   All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Contracts have been satisfied.   Subject to paragraph 17, upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Contracts, and such Contracts shall remain in full force and effect for the benefit of the Purchaser. Each counterparty to the Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or any Purchaser or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing,

| Debtors: | NEW RITE AID, LLC, et al. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

arising, or accruing as of Closing or arising by reason of any such Closing, including, without limitation, any breach related to or arising out of change-in-control provisions in such Contracts, or any purported written or oral modification to the Contracts and (b) asserting against any Purchaser (or its respective property, including, without limitation, the Purchased Assets) any claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against the Debtors, including, without limitation, claims arising out of or related to service or notice of the Contract Assumption Notice, all existing as of Closing or arising by reason of any such Closing, except for the Assumed Liabilities and Permitted Liens.

26.    Subject to paragraph 17, upon Closing and the payment of the relevant cure costs, if any, in accordance with the terms of the Asset Purchase Agreement, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Contracts.  There shall be no assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Contracts.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Purchaser, as the case may be, to enforce every term and condition of such Contract.  The validity of the assumption and assignment of any Contract to the Purchaser shall not be affected by any existing dispute between the Debtors and any counterparty to such Contract.  Any party that may have had the right to consent to the assignment of any Contract has received adequate notice of the proposed

(Page | 33)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

assignment of such Contract and is deemed to have consented for the purposes of section 365(e)(2)(A) of the Bankruptcy Code.

27.     All defaults or other obligations of the Debtors under the Contracts arising or accruing after the applicable Contract Objection Deadline and prior to Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on Closing Date, or as soon thereafter as reasonably practicable, or by such other time agreed to by the Debtors and the applicable counterparty.

## **Good Faith Purchaser**

28.     The Sale contemplated by the Asset Purchase Agreement is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

29.     Neither the Debtors nor the Purchaser have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and the Sale may not

(Page | 34)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

be avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy

Code.

## **Other Provisions**

30.     To the maximum extent permitted by applicable law and the Asset Purchase

Agreement and other Transaction Documents, the Purchaser shall be authorized, as of Closing, to

operate under any license, permit, registration, and governmental authorization or approval

(collectively, the "Licenses") of the Debtors with respect to the Purchased Assets.

31.     To the extent provided by section 525 of the Bankruptcy Code, no governmental

unit may revoke or suspend any permit or License relating to the Purchased Assets sold,

transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11

cases or the consummation of the Sale contemplated by the Asset Purchase Agreement.

32.     The Asset Purchase Agreement and any related agreements, documents or other

instruments may be modified, amended or supplemented by the parties thereto in writing and in

accordance with the terms thereof, without further order of the Court, provided that any such

modification, amendment or supplement does not have a material adverse effect on the Debtors'

estates.

33.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted

with respect to the Debtors to the extent necessary, without further order of the Court, (a) to allow

the Purchaser to give the Debtors any notice provided for in the Asset Purchase Agreement, (b) to

allow the Purchaser to take any and all actions permitted by the Asset Purchase Agreement and

(Page | 35)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

the Transaction Documents in accordance with the terms and conditions thereof, including, without limitation, effectuating the Sale and the other transactions contemplated by the Asset Purchase Agreement and the Transaction Documents, and (c) to otherwise implement the terms and provisions of the Asset Purchase Agreement, the Transaction Documents, and this Order.

34.     The terms and provisions of the Asset Purchase Agreement, and this Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the Purchased Assets, all counterparties to the Contracts, the Purchaser, and all of their respective successors and assigns, including, but not limited to, as applicable, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors' chapter 11 cases or upon conversion to chapter 7 under the Bankruptcy Code, as to which the terms and provisions of such trustee(s), examiner(s), or receiver(s) likewise shall be binding.  The Asset Purchase Agreement shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), receiver(s), or any other successor parties in interest.

35.     The terms and provisions of this Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in any of these chapter 11 cases; (b) converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the chapter 11 cases; (d) transferring venue of the chapter 11 cases to a court other than this Court; or (e) pursuant to which this Court abstains from

(Page | 36)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

hearing any of the chapter 11 cases. The terms and provisions of this Order, notwithstanding the entry of any such orders described in (a)–(e) above, shall continue in these chapter 11 cases or following dismissal of these chapter 11 cases.

36.     Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the Transaction Documents.

37.     The Asset Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

38.     The Asset Purchase Agreement may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court; *provided* that any such modification, amendment, or supplement does not, based on the Debtors' business judgment, and in consultation with the Consultation Parties (as defined in the Bidding Procedures), have a material adverse effect on the Debtors' estates or their creditors. The Debtors shall provide the Consultation Parties and the U.S. Trustee with prior notice of any such modification, amendment, or supplement of the Asset Purchase Agreement.

39.     This Order is and shall be binding upon all persons and entities that may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or that may be required to report or insure any title or state of title in or to any property; and each of the foregoing persons and entities shall accept

| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

for filing any and all of the documents and instruments necessary and appropriate to consummate the Asset Purchase Agreement.

40.     Any Transaction Fee[4] due to Guggenheim Securities, LLC ("Guggenheim Securities") as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) in the Debtors' or their agents' bank accounts from the proceeds of such Sale Transaction (including, without limitation, from the proceeds of any liquidation or other disposition of the Debtors' assets), as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders, prior to any other use or distribution of such proceeds.  If any Sale Transaction is the result of a successful bid without a cash component sufficient to pay the corresponding Transaction Fee due to Guggenheim Securities in full, then any resulting unpaid portion of the Transaction Fee due to Guggenheim Securities shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) at the closing of such Sale Transaction from the available cash of the Debtors, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders.  Nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Guggenheim Securities or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Guggenheim Securities.

---

[4]    Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed to such terms in that certain amended and restated engagement letter between Guggenheim Securities and the Debtors, dated as of May 5, 2025, a copy of which was filed in connection with the Debtors' application to retain Guggenheim Securities [Docket No. 652].

(Page | 38)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

Notwithstanding anything to the contrary set forth herein, the requirements and obligations contained in this paragraph to pay Guggenheim Securities any such Transaction Fee on account of such Sale Transaction shall be subject in all respects to the *Order (I) Authorizing the Debtors to Retain and Employ Guggenheim Securities, LLC as Investment Banker Effective as of the Petition Date, (II) Modifying Certain Time-Keeping Requirements, and (III) Granting Related Relief* [Docket No. 1045] (the "Guggenheim Securities Retention Order") and the terms of the Guggenheim Securities Retention Order, and the entry of an order by the Court approving any such fees including the Transaction Fee.  All rights of the  U.S. Trustee are reserved to object to such fees including the Transaction Fee pursuant to 11 U.S.C. § 330.

41.    To the extent there are any inconsistencies between this Order, the Motion, the Bidding Procedures Order, the Bidding Procedures, the Asset Purchase Agreement, and the Transaction Documents, the terms of this Order shall control.

42.    Except to the extent expressly provided herein, notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any prepetition claim, interest, or lien against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim, interest, or lien on any grounds; (c) a promise or requirement to pay prepetition claims; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) an implication or admission that any particular claim, interest, or lien is of a type specified or defined in the Motion or this Order; (f) an authorization to assume any prepetition agreement, contract, or lease pursuant to

(Page | 39)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

section 365 of the Bankruptcy Code; or (g) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

43.     The Debtors, in connection with offering a product or service, have not disclosed any policies prohibiting the transfer of Personal Information about individuals to persons that are not affiliated with the Debtors that are inconsistent with the Sale. Nothing contained in this Order prejudices parties in interest from seeking the appointment of a consumer privacy ombudsman in connection with any other proposed sale.

44.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014 or any other Bankruptcy Rules or Local Rules to the contrary, the terms and conditions of this Order shall be effective and enforceable immediately upon entry, and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

45.     Notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, and the Sale, including through distribution of the Sale Notice shall be deemed good and sufficient notice of such Motion, the Sale Hearing, the Asset Purchase Agreement, and the Sale, and the requirements of Bankruptcy Rules 2002, 6004(a), and 6004(c) and the Local Rules are satisfied by such notice. The Sale Notice is hereby approved.

46.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

47.     Notwithstanding any provision to the contrary in this Order, any Transaction Documents, or any other document related to the sale of the Purchased Assets, with respect to the

(Page | 40)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

United States of America (including all agencies, departments, and instrumentalities thereof, the "United States"), nothing shall:

  i. release, nullify, preclude, or enjoin the enforcement of any police or regulatory powers;

  ii. affect the setoff or recoupment rights of the United States against the Debtors;

  iii. confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

  iv. solely to the extent included in the Purchased Assets, authorize the assumption, assignment, sale or other transfer of any federal: (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) leases, (i) certifications, (j) applications, (k) registrations, (l) billing numbers, (m) national provider identifiers, (n) provider transaction access numbers, (o) licenses, (p) permits, (q) covenants, (r) inventory, (s) guarantees, (t) indemnifications, (u) data, (v) records, or (w) any other interests belonging to the United States (collectively, "Federal Interests"), without compliance by the Debtors and Purchaser with the terms of the Federal Interests or, to the extent section 365 of the Bankruptcy Code is applicable, section 365(c);

  v. be interpreted to set cure amounts under section 365 of the Bankruptcy Code or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; or

  vi. expand the scope of 11 U.S.C. § 525.

48. In the event of an inconsistency or conflict between any provision of the Transaction Documents and any provision of this Order, as to the United States, the provisions of this Order shall govern.

49. Notwithstanding any provision to the contrary in this Order, any Transaction Documents, or any other document related to the sale of the Purchased Assets, after Closing, nothing in such documents shall release, nullify, preclude, or enjoin the enforcement of any police

(Page | 41)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

or regulatory powers, under environmental statutes or regulations, to a governmental unit that any

entity would be subject to as the post-sale owner or operator of the applicable Purchased Assets

after the date of the Closing.

50.      Nothing in this Order, the Transaction Documents, or any document, agreement, or

instrument contemplated by any of the foregoing, including any "transition services or transition

period agreements", shall: (a) be construed to authorize or permit (i) the assumption and/or

assignment of any surety bond issued by (A) International Fidelity Insurance Company and/or its

affiliates, (B) Berkley Insurance Company, (C) The Hanover Insurance Company, and/or (D) RLI

Insurance Company (items A through D, collectively, the "Sureties" and, each individually,

a "Surety") on behalf of the Debtors (collectively, the "Surety Bonds" and, each individually,

a "Surety Bond"), (ii) the assumption and/or assignment of any indemnity agreements executed by

one   or   more   of   the   Debtors   pursuant   to   which   the   Surety   Bonds   were   issued

(the  "Indemnity Agreements" and, each individually, an "Indemnity Agreement"), or (iii) obligate

a Surety to replace any Surety Bond and/or issue any new surety bond on behalf of a Purchaser;

or (b) be deemed to provide a Surety's consent to the involuntary substitution of any principal

under any Surety Bond and/or any Indemnity Agreement, including, for the avoidance of doubt,

that the Purchaser shall not be a substitute principal under any Surety Bond or any Indemnity

Agreement   absent   a   Surety's   consent   thereto   or   further   order   of   the   Bankruptcy   Court.

Additionally, nothing in this Order, the Transaction Documents, or any "transition agreement", or

any other document, agreement, or instrument contemplated by any of the foregoing shall be

(Page | 42)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that the Sureties have or may have under applicable bankruptcy and non-bankruptcy laws, under any of the their respective Surety Agreements, or related agreements, or any letters of credit, or other Surety collateral relating thereto.

51.    Notwithstanding anything to the contrary in the Transaction Documents, the definition of Excluded Assets in the Transaction Documents shall include Personal Information related to the "Rite Aid Rewards" loyalty program, marketing lists and other non-pharmacy retail consumer data about Debtors' customers held or maintained by the Debtor related to its non-pharmacy retail operations, and such Personal Information shall not be transferred to the Purchaser. The Debtors and the Purchaser agree that the Pharmacy Assets that are Personal Information shall only include "Protected Health Information" as defined in the Health Insurance Portability and Accountability Act of 1996, held or maintained by the Debtors in their prescription records and pharmacy systems related to the Debtors' pharmacy patients in connection with the Debtors' pharmacy operations.

52.    Notwithstanding anything to the contrary in this Order or the Bidding Procedures Order, the Debtors are authorized, in consultation with the Consultation Parties, to file one or more additional notices of successful bidder (each, an "Additional Notice of Successful Bidder"). Each Additional Notice of Successful Bidder shall identify the applicable successful bidder (the "Additional Purchaser"), the assets to be acquired, and shall attach the applicable asset purchase agreement. Upon the filing and service of any Additional Notice of Successful Bidder,

(Page | 43)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

parties in interest shall have seven (7) days from the date of service (the "Additional Sale Objection Deadline") to file and serve any objections to the proposed sale to the Additional Purchaser.  If no timely objection is filed and served by the Additional Sale Objection Deadline, the Debtors are authorized to consummate the sale to the Additional Purchaser in accordance with the terms set forth in the applicable asset purchase agreement, and such sale shall be deemed approved without further order of the Court.  Upon the closing of such sale, the Additional Purchaser shall be deemed a "Purchaser" under this Order, and all provisions of this Order, including, without limitation, those relating to the sale of assets free and clear of liens, claims, encumbrances, and interests, the procedures relating to the assumption and assignment of executory contracts and unexpired leases, and the protections afforded to a good faith purchaser, shall apply to the sale to the Additional Purchaser and the assets acquired thereby to the same extent as if such sale had been approved by this Order in the first instance.  If a timely objection is filed and served with respect to any Additional Notice of Successful Bidder, the Debtors may schedule a hearing to consider such objection on shortened notice, subject to the Court's availability, and shall not consummate the sale to the Additional Purchaser unless and until such objection is resolved by agreement of the parties or by order of the Court.  For the avoidance of doubt, the Debtors' authority to file Additional Notices of Successful Bidder and consummate sales pursuant to this provision shall be in addition to, and not in limitation of, any other authority granted under this Order or the Bidding Procedures Order.

(Page | 44)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

53. With respect to any cure, assumption, and/or adequate assurance objections (each, an "Assumption Objection") timely filed in accordance with the Assumption and Assignment Procedures, the Debtors will address such Assumption Objections at a later hearing, unless (i) resolved by agreement of the Debtors and the non-Debtor counterparty, including through ordinary-course reconciliation, or (ii) the Debtors withdraw the request to seek to assume and assign such executory contract or unexpired lease. Accordingly, notwithstanding anything to the contrary in the Bidding Procedures Order or this Order, a non-Debtor counterparty's Assumption Objection timely filed in accordance with the Assumption and Assignment Procedures challenging assumption and assignment, including any adequate assurance-related issues (including evidence), is expressly reserved until a later hearing and the findings of fact in this Order shall not waive, impair, or limit any right of non-Debtor counterparties to assert such Assumption Objections. No non-Debtor counterparty that timely files an Assumption Objection in accordance with the Assumption and Assignment Procedures needs to object to or challenge the assumption or assumption and assignment of their executory contract or unexpired lease in connection with the Sale Hearing or this Order, including any challenge to adequate assurance and cure amounts, to preserve their rights for that later hearing. Furthermore, to the extent a non-Debtor counterparty timely files an Assumption Objection in accordance with the Assumption and Assignment Procedures, the Debtors shall not be entitled to a waiver of Federal Rule of Bankruptcy Procedure 6006(d) with respect to such lease(s), but reserve the right to seek Bankruptcy Court approval of such waiver, with the non-Debtor counterparty's right to object to such request fully preserved.

(Page | 45)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

54.    Nothing in this Sale Order shall authorize the sale of any credits and/or chargebacks provided by Haleon US Services, Inc. f/k/a GSK Consumer Healthcare Services Inc. to any of the Debtors (including but not limited to Loyalty and/or Co-op Funding, Feature Ad Costs and/or other promotional costs associated with Haleon brands as well as any other type of credit Rite Aid may assert) (the "Credits"), and such Credits shall be an asset excluded from any such sale.

55.    Notwithstanding anything to the contrary in this Order, the Motion, any Asset Purchase Agreement, the Transaction Documents, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, any Contract Assumption Notice, any Supplemental Contract Assumption Notice, any notice or list of Assigned Contracts and/or Cure Payments, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, assumption, assignment or any other transfer to any Purchaser at this time of (i) any insurance policies that have been issued by ACE American Insurance Company and/or any of its U.S.-based affiliates and/or any predecessors and successors of any of the foregoing (collectively, and solely in their capacities as insurers under the foregoing policies, the "Chubb Companies") to, or pursuant to which coverage is provided to, any of the Sellers (or their affiliates or predecessors) at any time, and all agreements, documents or instruments relating to such policies, including, without limitation, any collateral or security provided by or on behalf of any of the Sellers (or their affiliates or predecessors) to any of the Chubb Companies and the proceeds thereof (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb

(Page | 46)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

Insurance Contracts including, without limitation, any of the Chubb Companies' indemnity, subrogation, setoff, recoupment, and/or other rights; (b) the Chubb Insurance Contracts and any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts (i) are not and shall not be deemed to be Assigned Contracts, Purchased Assets, or a portion of any of the Purchased Assets sold, assigned or otherwise transferred as part of any the Sale hereunder, and (ii) shall be deemed to be Excluded Assets; (c) nothing herein shall alter, modify or otherwise amend the terms, conditions, rights, and/or obligations of and/or under the Chubb Insurance Contracts; (d) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, insureds under any of the Chubb Insurance Contracts; *provided*, *however*, that, to the extent any claim with respect to the Purchased Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"), *provided*, *further*, *however*, that the Chubb Companies shall not have any duty to the Purchaser to effectuate a Proceed Turnover or liability to the Purchaser related to a Proceed Turnover.

56.     For the avoidance of doubt, the Purchased Assets shall not include any of the Debtors' rights arising under or in connection with that certain Supply Agreement between Rite Aid Corporation and McKesson Corporation ("McKesson"), dated as of August 30, 2024 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Supply Agreement"), including any rebates, rights of return, set-off, recoupment,

(Page | 47)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the KPH Healthcare Services Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief |

indemnification, rights to the assignment of antitrust claims, or related assets of the Debtors.

Notwithstanding anything to the contrary in this Order, but without limiting the Purchaser's protections under this Order, McKesson's rights (a) against the Debtors under the Supply Agreement, and (b) against the Debtors and/or any other parties to any intercreditor agreements related to the Supply Agreement under such intercreditor agreements are fully reserved.

57.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

**Asset Purchase Agreement**

**Asset Purchase Agreement**

THIS ASSET PURCHASE AGREEMENT ("**Agreement**") is entered into effective as of June 17, 2025, by and between **KPH Healthcare Services, Inc.**, a New York corporation ("**Buyer**"), and **Maxi Green, Inc.**, a Vermont corporation ("**Seller**"). Buyer and Seller may be collectively referred to herein as the "**Parties**," and individually as a "**Party**," as the circumstances require.

1. <u>**Sale of Assets.**</u> Seller agrees to sell and Buyer agrees to purchase the "**Purchased Assets**" (defined below) owned by Seller in connection with Seller's retail drug store and pharmacy business located at the address set forth on **Schedule 1** (each, a "**Pharmacy**"), pursuant to the terms hereof. "**Purchased Assets**" shall collectively refer to all of the following:

   A. All files, prescription records, customer records, lists and profiles, pharmacy records, patient profiles, physician files, documents, instruments, papers, books, computer files and records of prescriptions filled by the applicable Pharmacy, and all other records of Seller for the three (3) years (or such time period mandated by State and Federal laws) immediately preceding the Closing (defined below) in any media relating to the patients, doctors, pharmaceuticals, controlled substances or prescriptions therefor administered or filled by the applicable Pharmacy, which shall include a list of the top five (5) prescribers for each Highly Diverted Controlled Substances ("**HDCS**") and top ten (10) prescribers for all HDCS, number of prescriptions and dosages, number of pills per prescription, prescriber name, DEA number, and address, and prescriber specialty (collectively, the "**Records**"), which will allow Buyer to derive Protected Health Information ("**PHI**"), as that term is defined in the Health Insurance Portability and Accountability Act of 1996, P. L. 104-191, and its implementing rules and regulations (collectively, "**HIPAA**"); for purposes of this Agreement "**Highly Diverted Controlled Substances**" shall mean: (i) oxycodone, (ii) hydrocodone, (iii) hydromorphone, (iv) tramadol, (v) oxymorphone, (vi) morphine, (vii) methadone, (viii) carisoprodol, (ix) alprazolam, and (x) fentanyl. Seller warrants that the Records shall contain, at a minimum, all of the information included in **Exhibit "A"** attached hereto and incorporated herein by reference, and Seller further warrants that the information contained in the Records is complete, accurate and current. The Records shall be transferred to Buyer exclusively, shall not be shared with any third parties (other than as contemplated by this Agreement), and shall not be diminished or removed from the applicable Pharmacy between the date of execution of this Agreement and the Transfer Date (as defined below).

   B. (i) All items in stock of prescription pharmaceutical inventory of the applicable Pharmacy pursuant to the terms hereof (the "**Purchased Pharmacy Inventory**"), and (ii) all accompanying transaction history, transaction information, and transaction statements (the "**3T Documentation**") as required pursuant to the Drug Supply Chain Security Act (the "**DSCS Act**").

   C. To the extent in hard copy format, originals of any and all controlled substance invoices, used DEA 222 forms (blue copies for orders placed or executed originals for received single-page forms, as applicable, with each statement attached), and, to the extent dated within the two (2) years prior to the applicable Closing Date, annual controlled substance inventory logs (collectively, the "**DEA Documentation**"); provided, for the avoidance of doubt, that, to the extent such materials (i) are in electronic format, (ii) consist of unused DEA 222 forms or blue copies for unaccepted or defective forms, or (iii) are records of controlled substances disposed of, such materials shall be deemed as Excluded Assets and the applicable Seller shall retain such materials.

**D.**      All leases governing the real property listed on **Schedule 1** (the "**Leases**") pursuant to which the applicable Seller holds leased real property for the applicable Pharmacy (such Leases, the "**Assigned Leases**", and such real property, the "**Purchased Leased Real Property**").

**E.**      Solely to the extent assignable or transferable under applicable law, all of the rights, interests and benefits (if any) accruing under those licenses, franchises, permits, certificates and governmental approvals and authorizations listed or described on **Schedule 2** for the operation of the applicable Pharmacy and all pending applications therefor as well as the rights to all data and records held by governmental bodies in connection therewith (collectively, the "**Purchased Permits**").

**F.**      All telephone and facsimile numbers used in connection with the applicable Pharmacy as listed on **Schedule 1** (the "**Telephone and Fax Numbers**") pursuant to the provisions in Section 18.

**2.**      **Excluded Assets.** Notwithstanding the foregoing, the following assets of Seller (the "**Excluded Assets**") will be retained by Seller and are specifically excluded from the Purchased Assets: (a) inventory and supplies that are (i) not Purchased Pharmacy Inventory (including, for the avoidance of doubt, front-end store inventory and over-the-counter inventory), (ii) expired, outdated or otherwise untransferable under applicable laws, or (iii) otherwise excluded pursuant to the terms of Section 8, (b) cash and cash equivalents in bank accounts and cash registers, (c) accounts receivable in any form, (d) any and all licenses, franchises, permits, certificates and governmental approvals and authorizations, other than the Purchased Permits, (e) contracts and understandings, other than the Assigned Leases, (f) leased or other real property, other than the Assigned Leases, and (g) intangible rights. Buyer does not assume any of Seller's liabilities or debts whatsoever. Without limiting the generality of the foregoing, in no event shall Buyer assume (i) any type of successor liability with respect to any law relating to the licensure or regulation of health care providers, suppliers, professionals, facilities, pharmacies, or payors, including state pharmacy laws and any other requirements of federal and state law relating to the provision of, and litigation or any other claim or dispute arising from, opioid treatment services and pharmacy or physician services, including the Federal Controlled Substance Act, 21 U.S.C. § 801 et seq., (ii) any obligations of Seller under HIPAA or other applicable laws or regulations, including the HIPAA privacy standard requiring accounting of certain disclosures of PHI made by Seller prior to the Transfer Date, (iii) any type of successor liability as to trade creditors, unemployment, income, property, sales or other taxes, or otherwise, or (iv) any of Seller's third party provider numbers or licenses, including, without limitation, any and all obligations and/or liabilities of Seller, the applicable Pharmacy or the Purchased Assets with respect to all such third party provider numbers and licenses, other than the Purchased Permits, it being understood that all such liabilities are "**Excluded Liabilities**". The phrase "liabilities" shall include, without limitation, any direct or indirect indebtedness, guaranty, endorsement, claim, loss, damage, deficiency, cost, expense, obligation or responsibility, fixed or unfixed, known or unknown, asserted or unasserted, liquidated or unliquidated, secured or unsecured. Furthermore, Buyer shall have no liability for the continued employment or any compensation of employees of Seller or the applicable Pharmacy.

**3.**      **Assignment of Assigned Leases; Cure Costs.**

**A.**      **Schedule 3** sets forth, with respect to each Assigned Lease, the estimated amounts payable, or obligations that must be satisfied, in order to cure any monetary defaults required to be cured under section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption of each Assigned Lease (collectively, the "**Cure**

2

Costs") as of the date hereof. In accordance with the Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief, as it may be amended or modified (the "**Bidding Procedures Order**") [Docket No. 473], (i) Seller shall notify non-Seller counterparties to such Assigned Leases as of the date hereof of the deadline to object to the Cure Costs, if any, and (ii) unless otherwise agreed by the non-Seller counterparty and Seller or as provided by the Bidding Procedures Order, the Bankruptcy Court shall determine the Cure Costs with respect to any Assigned Lease entered into prior to the Petition Date (as defined below).

**B.**     To the maximum extent permitted by the Bankruptcy Code and subject to the other provisions of this Section 3B, Buyer agrees to promptly following the date hereof satisfy all Cure Costs in accordance with the Bidding Procedures Order in respect of Assigned Leases for which Bankruptcy Court approval to assign has been obtained; provided, however, that on each applicable Closing Date, Buyer shall have paid or otherwise satisfied the Cure Costs for which Bankruptcy Court approval to assign the applicable Assigned Leases has been obtained on or prior to each such Closing Date, except as otherwise provided for by the Bidding Procedures Order. In accordance with the Bidding Procedures Order, Seller shall assign to Buyer the Assigned Leases pursuant to section 365 of the Bankruptcy Code and the order of the Bankruptcy Court authorizing and approving, among other things, the Seller's entry into and performance under this Agreement (the "**Sale Order**"), subject to the provision of adequate assurance by Buyer in respect of the Assigned Leases as may be required under section 365 of the Bankruptcy Code as determined by the Bankruptcy Court.

**C.**     To the maximum extent permitted by the Bankruptcy Code and subject to the other provisions of this Section 3C, at each Closing, Seller shall, pursuant to the terms of the Sale Order assume and assign to Buyer all Assigned Leases corresponding to such Closing that may be assigned by Seller to Buyer pursuant to sections 363 and 365 of the Bankruptcy Code.

**4.**     **Inspection/Transfer Date.** Seller shall, prior to the Transfer Date (at such date and time as Buyer elects, provided it is during normal Pharmacy business hours and following reasonable prior notice), give Buyer reasonable access to the Records and allow Buyer to examine the Purchased Assets and the Pharmacies subject to the Assigned Lease. The transfer of the Purchased Assets shall occur on such date as mutually agreed between Seller and Buyer following the date of this Agreement (the "**Transfer Date**").

**5.**     **Notice to Seller's Customers.** As of the date of this Agreement, Buyer may utilize Seller's list of the applicable Pharmacy's customers (including names and addresses) from the prior one hundred eighty (180) days for customer outreach purposes, which form shall be mutually agreed upon by the Parties in advance via email. As of the date of this Agreement, Seller shall permit Buyer, at Buyer's discretion, to place signs in the applicable Pharmacy and on the windows of the applicable Pharmacy advising Seller's customers that Buyer has arranged to purchase Seller's Pharmacies. Buyer shall have the right to advertise that Buyer is purchasing or has purchased Seller's Pharmacies.

**6.**     **Transfer of Purchased Assets.**

3

A.    The Parties agree that Seller will engage InfoWerks Data Services, LLC (the "**Data Converter**") to convert Seller's prescription file and Record data (the "**Record Data**") to a format specified by Buyer. Buyer will be responsible for all of the Data Converter's fees, costs and expenses incurred in connection with the Record Data conversion services. Seller agrees to provide such access, information and cooperation to the Data Converter as may be required to enable the Data Converter to deliver the Record Data to Buyer's Information Services representative at least ten (10) business days prior to the Transfer Date, or such other period as mutually agreed upon between the Parties, for the purpose of testing the data's conversion to Buyer's format. In the event that the Record Data is not or cannot be delivered to Buyer as of such date or is not successfully converted, Buyer, at Buyer's sole discretion, may either (i) delay the Transfer Date until the Record Data is delivered to Buyer, or the conversion is successful or (ii) following commercially reasonable efforts to effect the conversion, terminate this Agreement upon written notice to Seller.

B.    **Transfer of Possession.** Seller shall deliver possession of the electronic Records and the other Purchased Assets to Buyer at a time mutually agreed upon by the Parties on the Transfer Date. Seller shall deliver possession of the hard copy Records and the other Purchased Assets to Buyer on the Transfer Date. Risk of loss shall transfer to Buyer at the time Buyer takes possession of the Purchased Assets. Concurrently with the transfer of the Purchased Assets to Buyer, Seller shall deliver to Buyer (i) a duly executed and acknowledged Bill of Sale in respect of the applicable Purchased Assets in substantially the same form attached hereto as **Exhibit "B"** and incorporated herein by reference ("**Bill of Sale**"), (ii) with respect to the applicable Purchased Leased Real Property, an Assignment and Assumption of Lease Agreement in substantially the same form attached hereto as **Exhibit "C"** ("**Lease Assignment**"), (iii) with respect to the applicable Purchased Pharmacy Inventory, a report of the Inventory Review (as defined below) (which report shall identify the Purchased Pharmacy Inventory and set forth the Inventory Purchase Price (as defined below)), signed by a representative of Seller, and (iv) complete copies of Seller's 3T Documentation and DEA Documentation, as applicable, as required for the applicable Purchased Pharmacy Inventory. Seller shall, upon request of Buyer, perform such further acts, assignments, transfers, and assurances as may be reasonably required to convey and transfer all of Seller's right and title in the Purchased Assets to Buyer. Concurrently with the transfer of the Purchased Assets to Buyer, Buyer shall deliver to Seller (i) the applicable Lease Assignment, duly executed by Buyer, and (ii) with respect to the applicable Purchased Pharmacy Inventory, a report of the Inventory Review (which report shall identify the Purchased Pharmacy Inventory and set forth the Inventory Purchase Price), signed by a representative of Buyer. Seller understands that the landlord for each respective Lease and Buyer have agreed upon amended terms to be included as part of each Lease. Each Party shall also deliver to the other such additional documents as are reasonably required by law or the terms of this Agreement to complete the sale of the Purchased Assets to Buyer. **Subject to the representations in Section 7 below and the other provisions of this Agreement, Buyer further agrees and acknowledges that Buyer shall accept the Purchased Assets "as is, where is."**

C.    **Fire or Other Casualty.** If there is a fire or other casualty which results in damage to or destruction of any portion of the Purchased Assets prior to the Transfer Date, then Buyer may, in its sole election, (i) terminate this Agreement or a portion of the Agreement in respect of the impacted Purchased Assets by written notice to Seller, or (ii) proceed to acquire the remaining portion of the Purchased Assets, in which event the Purchase Price shall be proportionately reduced to reflect the fair market value of the remaining Purchased Assets after the fire or other casualty.

**D.** **Request by Pharmacy Customers.** Buyer agrees in the event that, prior to the Transfer Date, Seller receives from any Pharmacy customer any objection to the transfer of the Pharmacy customer's prescription records to Buyer and/or any instruction from the Pharmacy customer to transfer said Pharmacy customer's prescription records to a pharmacy other than the location to which Buyer intends to transfer the Records, Seller shall be relieved of its obligation to transfer the applicable Pharmacy's customer's prescription records to Buyer except to the extent that such a transfer is required by law. Buyer further agrees that in the event a Pharmacy customer objects, after the Transfer Date, to the transfer of the applicable Pharmacy's customer's prescription records to Buyer, Buyer shall immediately transfer the applicable Pharmacy's customer's prescription records to the location designated by the applicable Pharmacy's customer and shall further purge said applicable Pharmacy's customer's prescription records from Buyer's files except to the extent Buyer is required by law to retain such Records. The provisions of this Section 6D shall survive the Transfer Date.

**E.** **W-9s**. Seller shall, on or before the Transfer Date, deliver to Buyer a completed form W-9 Request for Taxpayer Identification Number.

**F.** **DSCS Act**. Seller agrees to provide Buyer with all readily available product tracing information and other information required by the DSCS Act for the Purchased Pharmacy Inventory, including the 3T Documentation. Seller shall reasonably cooperate and assist Buyer, in such Buyer's efforts to effect a transfer of such 3T Documentation on the applicable Closing Date. Such cooperation may include Seller taking such acts as may be reasonably necessary, including executing a release or authorization for the benefit of any third parties that are maintaining any such 3T Documentation on behalf of Seller, as may be reasonably necessary to facilitate the transfer of all such 3T Documentation to Buyer.

**G.** **Powers of Attorney**. Seller shall, on or before the Transfer Date, deliver to Buyer duly executed Powers of Attorney in substantially the same forms attached hereto as **Exhibit "D"** ("**Powers of Attorney**").

**7.** **Purchase Price.**

**A.** The Purchase Price shall consist of:

(i) the amount listed on **Schedule 1** for the Records (the "**Records Purchase Price**");

(ii) the Inventory Purchase Price (as defined below), subject to **Exhibit "E"** (including Annex I thereto) (the "**Inventory Instructions**"); and

(iii) the purchase price listed in **Schedule 1** with respect to the Purchased Leased Real Property (the "**Purchased Leased Real Property Purchase Price**"), which shall be allocated in the manner provided therein.

The Purchased Leased Real Property Purchase Price, the Inventory Purchase Price and the Records Purchase Price, collectively, the "**Purchase Price**".

**B.** Notwithstanding above, with respect to the Records, in the event that Seller's averaged weekly prescription count for the thirteen (13) week period immediately preceding the Transfer Date (the "**Prescription Count**"), which weeks do not include a nationally recognized holiday (in such case the week prior to the week excluded shall be used in the

calculation) (the "**Transfer Date Volume**"), falls below the current volume shown on **Schedule 1** ("**Current Volume**") by more than ten percent (10%) (the "**Prescription Rate Threshold**"), Buyer shall have the right to decrease the Records Purchase Price proportionately per prescription by which the Transfer Date Volume is less than the Prescription Rate Threshold, except the first five percent (5%) shall not be included in such reduction calculation. For purposes of illustration, if the "Current Volume" of a Pharmacy location fell by fifteen percent (15%) then Buyer shall have the right to decrease the applicable Records Purchase Price for such Pharmacy location by ten percent (10%); if the "Current Volume" of a Pharmacy location fell by nine (9%) then Buyer shall have no right to decrease the applicable Records Purchase Price for such Pharmacy location. Further, if the Prescription Count falls below the Current Volume by fifty percent (50%) or more for such thirteen (13) week period, Buyer may choose not to purchase such Purchased Assets from Seller in respect of such Pharmacy and shall provide Seller with notice of its intent not to acquire such Purchased Assets. For the purposes of determining the Transfer Date Volume, Seller shall deliver to Buyer a written statement evidencing the Prescription Count at least five (5) days prior to the Transfer Date.

8.   **Inventory Matters and Valuation.**  The Parties agree that Buyer will purchase, and the Purchased Assets will include, only those items of inventory that are determined to be Purchased Pharmacy Inventory according to the Inventory Instructions and that Buyer will not purchase any Excluded Inventory. The Parties shall commission WIS International or another mutually acceptable inventory valuation firm (the "**Inventory Service**") to conduct a full review and valuation of the Purchased Pharmacy Inventory at the Pharmacies on the day immediately prior to the respective Closing Date using the Inventory Instructions (such review at an individual Pharmacy, the "**Inventory Review**" and the amount determined pursuant to the Inventory Review at an individual Pharmacy, which shall automatically be reflected on **Schedule 1** thereafter, the "**Inventory Purchase Price**"). The cost and expense of the Inventory Service for all purposes hereunder shall be borne solely by Buyer.

9.   **Closing.**  Unless otherwise agreed in writing by the Parties, the closing of the sale of Purchased Assets to Buyer (each a "**Closing**" and the date of each Closing, a "**Closing Date**") shall occur on each applicable Transfer Date at a time mutually acceptable to the Parties. On the first business day immediately following such Transfer Date, Buyer shall wire the applicable Purchase Price to Seller by a wire transfer of immediately available funds. Seller's wiring instructions are attached hereto as **Exhibit "F"**.

10.   Intentionally omitted.

11.   **Representations and Warranties.**

   A.   **Liens**. Seller represents and warrants that it has good and marketable title to and is the sole owner of all of the Purchased Assets and that the Purchased Assets shall, as of the Transfer Date, be free and clear of all "**Liens**" as herein defined. Seller further represents and warrants that all suppliers and creditors of the Purchased Assets shall be paid in the normal course of business. The term "**Liens**" shall collectively refer to all liens, charges, restrictions, claims, judgments, options, charges, rights of first refusal, security interests, mortgages, deeds of trust, licenses, leases, taxes (presently due or due at any time in the future related to the Purchased Assets and/or this transaction), assessments or other encumbrances (whether secured or unsecured) with respect to any item of the Purchased Assets or the applicable Pharmacy and includes, without limitation, any claim or charge of any creditor or supplier of the Purchased Assets.

B.      **Title to Purchased Leased Real Property.** Seller has a good and valid leasehold interest to the applicable Purchased Leased Real Property free and clear of any lien, mortgage, or encumbrance except for those that will be removed by operation of the Sale Order. **Schedule 3** sets forth the Lease for each Purchased Leased Real Property along with the address, name of landlord entity and the lease expiration date. Seller has made available to Buyer or to Buyer's advisors copies of each such Lease.

C.      **Authority.** Seller and Buyer represent and warrant that each Party has taken all necessary corporate action and, subject to the entry of the Sale Order, has the full and sole right, power and authority to enter into this Agreement to sell and buy the Purchased Assets, respectively, and that the individual signing below for Seller and Buyer is duly authorized to sign on behalf of Seller's and Buyer's entity. The sale of the Purchased Assets and all of the other obligations of Seller agreed to hereunder do not conflict with or result in a breach of the terms of any agreement or instrument to which Seller is a party or by which it is, or may be, bound or which would constitute a default thereunder, or result in a claim against Buyer, or result in the creation or imposition of any lien, charge or encumbrance on, or give to others any interest in or right to the Purchased Assets.

D.      **Parties Are in Good Standing.** Seller represents and warrants that it is a duly organized corporation in good standing with the state in which the applicable Pharmacy is located and will continue to be so as of the Transfer Date. Buyer represents and warrants that it is a duly organized corporation in good standing with state in which the applicable Pharmacy is located. Seller and Buyer have full power and authority to enter into and perform this Agreement.

E.      **No Brokers.** Except for Guggenheim Securities, LLC, the fees and expenses of which will be paid by Seller, Buyer and Seller each represent and warrant to the other that all negotiations relative to this Agreement and the transactions contemplated herein have been carried on in such manner so as not to give rise to any valid claim against either Buyer or Seller for any brokerage, commission or finder's fees. In the event any action or inaction by either Buyer or Seller with respect to this transaction has given or shall hereafter give rise to any brokerage, commission or finder's fee, all such fees shall be paid solely and exclusively by the responsible Party and the other Party shall have no obligation or liability therefor.

F.      **HIPAA Compliance.** To the best of its knowledge and belief, Seller is currently in full compliance with the requirements of HIPAA. Without limiting the generality of the foregoing, Seller has implemented a HIPAA compliance program, including but not limited to employee training, provision of Privacy Notices to pharmacy customers, and adoption of privacy policies and security features. After the Transfer Date, Buyer shall use all reasonable efforts to make Seller's prescription data available for access to all eligible parties in accordance with HIPAA Privacy Standards and applicable state law. However, in no event shall Buyer assume any legal obligations of Seller under HIPAA including, but not limited to, the HIPAA Privacy Standard requiring accounting of certain disclosures of Patient's PHI made prior to the Transfer Date. All inquiries for accountings or other patient rights under HIPAA relating to disclosures made prior to the Transfer Date shall be forwarded to Seller or its appointed agent.

G.      **Controlled Substance Act.** Buyer shall comply with all applicable laws and regulations that may relate to the maintenance and confidentiality of Records transferred hereunder and with respect to the applicable Pharmacy's operations in general. Seller (with the

assistance of Buyer) shall notify the appropriate governmental agencies, including the State Board of Pharmacy and the regional DEA office, of the transfer described herein.

**H.**     That, to Seller's reasonable knowledge, the Records are accurate in all material respects and were created or obtained in the ordinary course of Seller's operation of the applicable Pharmacy.

**I.**     There are no (i) claims, actions, suits, labor disputes, arbitration, legal or administrative proceedings or investigations, including, without limitation, by the DEA, OIG, CMS, FDA, applicable Board of Pharmacy or other governmental body, pending against Seller or, to the knowledge of Seller, threatened against Seller, or otherwise pending or, to the knowledge of Seller, threatened with respect to Seller's operations, the Purchased Assets or any affiliate, director, officer or employee of Seller, and no such actions, disputes, proceedings or investigations are contemplated, except to the extent any such claim, action, dispute, arbitration, proceeding or investigation would not reasonably be expected to be, individually or in the aggregate, material to the Purchased Assets (including the value thereof) or have a material adverse effect on Seller's ability to perform its obligations hereunder or (ii) judgments, decrees, orders, writs, injunctions, rulings, decisions or awards of any court or governmental body to which Seller is a party or is subject with respect to the applicable Pharmacy or to which any of the Purchased Assets is subject, except to the extent any such judgment, decree, order, writ, injunction, ruling, decision or reward would not reasonably be expected to be, individually or in the aggregate, material to the Purchased Assets (including the value thereof) or have a material adverse effect on Seller's ability to perform its obligations hereunder. During the two (2) years to the date of this Agreement, Seller has not received any notice of complaints filed against Seller under HIPAA or applicable patient privacy and data protection laws and, to Seller's knowledge, there has not been any violation of such laws, except to the extent any such complaint or violation would not reasonably be expected to be, individually or in the aggregate, material to the Purchased Assets (including the value thereof) or have a material adverse effect on Seller's ability to perform its obligations hereunder. Seller, any parent, subsidiary or other affiliate of Seller, nor any director, manager, officer or pharmacy employee of Seller has not been disciplined or sanctioned, or has had a discipline or sanction proposed, by any governmental body, except to the extent any such discipline or action would not reasonably be expected to be, individually or in the aggregate, material to the Purchased Assets (including the value thereof) or have a material adverse effect on Seller's ability to perform its obligations hereunder. Seller is not excluded from participation in any government healthcare payment program, including Medicare or Medicaid, nor does Seller have knowledge of any pending or threatened discipline, sanction, inquiry, investigation or government action that would be reasonably expected to lead to such exclusion.

**J.**     The prescriptions filled at the applicable Pharmacy have arisen from bona fide, legal transactions. Seller's Records have been accessed, collected, compiled, disclosed, maintained, and stored in material compliance with local, state and federal laws, statutes, ordinances, regulations, rules, codes, decisions, decrees, and orders, and are consistent with industry standards and clinical guidelines applicable to pharmacists and licensed prescribers. All information regarding the Records provided to Buyer to date is true and correct in all material respects

**K.**     Except as set forth on **Schedule 4**, none of the prescriptions filled at the applicable Pharmacy result from any Non-standard Business. As used in this Agreement, "**Non-standard Business**" means (1) delivering prescriptions by mail, courier, automobile or

8

other delivery system (in each case, including prescriptions filled via the Internet), (2) compounding, including both sterile and non-sterile compounding, (3) filling prescriptions that involve any unique, customized or non-standard packaging, including prescriptions filled for patients in assisted or independent living facilities, nursing homes, long-term care facilities or hospice facilities, (4) any business conducted pursuant to Section 340B of the Public Health Service Act, (5) any non-prescription business (including durable medical equipment) done through the pharmacy computer and included in the prescription count, (6) any prescriptions filled pursuant to any contract, agreement or understanding (other than a standard contract agreement or understanding with any third party payor or government payor providing health care coverage to individuals), or (7) any other business outside the scope of a customary pharmacy or retail drug-store business.

L.       The transactions contemplated hereunder (a) are the result of a sale process led by Seller, its affiliates, and its advisors, pursuant to which Buyer submitted an offer for the Purchased Assets, such offer has been accepted and Buyer has been awarded the right to acquire the Purchased Assets, no other person or entity or group of persons or entities has submitted a higher or better offer to purchase the Purchased Assets, and (b) may not be avoided under Section 363(n) or any other section of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"). The Purchase Price for the Purchased Assets (i) was negotiated and is undertaken at arm's length without collusion or fraud and in good faith within the meaning of and otherwise consistent with Sections 363, 365, and 548 of the Bankruptcy Code and (ii) constitutes reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession of the United States or the District of Columbia. Seller represents and warrants that (x) the auction process, as contemplated herein, is in compliance with the Bidding Procedures Order, and (y) subject to the entry of the Sale Order, Seller has authority and approval under the Sale Order to consummate the sale of the Purchased Assets to Buyer .

M.      This Agreement has not been entered into for the purposes of hindering, delaying or defrauding creditors of Seller under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia or any other applicable law and none of the Parties hereto have entered into this Agreement or are consummating the sale of the Purchased Assets with any fraudulent or otherwise improper purpose.

N.      Seller has timely and properly filed all federal, state and local tax returns and reports and forms which it is or has been required to file, either on its own behalf or on behalf of its employees or other persons or entities including but not limited to all sales and use and employment tax returns, all such returns and reports being true, correct and complete in all respects and has paid all taxes which have become due.

O.      The provisions of this Section 11 shall survive the Closing.

12.    **Regulatory Notices and Clearances.**

A.       Buyer and Seller (where applicable) will, and will cause their respective affiliates and advisors to, timely make or cause to be made all filings and submissions required to be made by Buyer under any applicable laws for the consummation of the transactions contemplated herein, if any.

    **B.**    In the event that any Purchased Permits shall not have been effectuated to the benefit of Buyer as of the applicable Transfer Date, Seller shall allow Buyer the right to use such Purchased Permits pursuant to a Power of Attorney to allow Buyer to utilize the Purchased Permits, to the extent permitted under applicable law, in Buyer's ownership or operation of the Pharmacies. Such Power of Attorney shall be delivered by Seller on or before the applicable Transfer Date and shall be effective until the aforementioned is effectuated by the appropriate governmental body or Buyer obtains new authority directly from such governmental body in the name of Buyer; provided, that the term of such Power of Attorney shall end no later than ninety (90) days following the issuance of such Power of Attorney.

**13.**   **Conditions to Closing.** The Closing of the sale transactions set forth herein is subject to all of the following conditions in favor of Buyer and, if any of the following conditions are not satisfied or waived in writing by Buyer as of the Transfer Date, Buyer may terminate this Agreement in respect of such sale transaction without any liability to Seller.

    **A.**    **Representations Are True.** Seller's representations are true and correct in all respects on and as of the date of this Agreement and through each Transfer Date with the same force and effect as though made on and as of such date, and Seller shall have performed all of its obligations under this Agreement through the Transfer Date.

    **B.**    **Records Successfully Converted.** The Records contained within Seller's computer system have been successfully converted to a reasonably acceptable format through the Data Converter in a form that is acceptable to and usable by Buyer in conducting Buyer's business in its normal course.

    **C.**    **Rx Customer Data Deactivated in Seller's System.** The Records contained within Seller's computer system will be deactivated and placed in "transfer mode" within Seller's mainframe. After the Transfer Date, such data will remain in Seller's possession but will be limited to those purposes set forth herein. Seller will provide written verification of the deactivation of the files and records within five (5) business days after the Transfer Date.

    **D.**    **Bankruptcy Order.** Rite Aid Corporation and certain of its affiliates, including Seller (collectively, the "**Debtors**"), have filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") on May 5, 2025 (the "**Petition Date**"), at Case No. 25-14861 (the "**Bankruptcy Cases**"). On May 9, 2025, the Bankruptcy Court entered the Bidding Procedures Order. Prior to the last Closing, the Sale Order shall remain unstayed and in full force and effect which (a) authorizes and approves the sale of the Purchased Assets, such that Seller will have the authority and approval from the Bankruptcy Court to consummate the sale of the Purchased Assets to Buyer free and clear of all liens, claims, security interests and encumbrances whatsoever, (b) authorizes Seller to enter into and consummate such sales of such Purchased Assets on the terms and condition, including non-monetary terms and conditions, set forth in this Agreement, which terms and conditions shall be approved, and (c) which includes a finding that the Buyer shall be deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, shall be entitled to all of the protections afforded by such provision.

    **E.**    **No Licenses.** No Party (i) has been debarred or excluded from federal health care programs or (ii) has had the licenses necessary to carry out its business operations contemplated or

required by this Agreement revoked or has been disciplined in such a manner that performance cannot occur or would be substantially impaired.

**F.** **Evidence of Lien Termination.** Except in the case of entry of the Sale Order (in each case which has not been stayed and remains in full force and effect), on or prior to the Transfer Date, Seller shall deliver to Buyer evidence of the release of any and all Liens encumbering any of the Purchased Assets (including any required UCC termination statements, bank release letters or similar documents).

**G.** **Liens and Other Encumbrances.**

(a) Seller represents and warrants that the Purchased Assets, as of each applicable Transfer Date, shall not be subject to any lien, mortgage, or encumbrance, and said Records shall be conveyed free and clear of any right, title or interest of any entity or person.

(b) Buyer may conduct Uniform Commercial Code searches of state and county records. Any liens or encumbrances disclosed by any such search shall be released in full by Seller, and Buyer may hold all payments due hereunder pending Buyer's receipt of evidence that releases have been filed.

(c) Seller hereby indemnifies and saves and holds Buyer harmless (including reasonable attorneys' fees and costs) from and against any (i) breach by Seller of any of its representations, warranties, covenants, agreements or obligations in this Agreement or any agreement or document required to be delivered by Seller hereunder, (ii) liability of Seller with respect to the Purchased Assets arising prior to the applicable Closing Date, and (iii) any claim by any creditor of Seller or any third party related to the Purchased Assets arising prior to the applicable Closing Date.

**14.** **Exclusive Dealing.** From the date hereof until the date of the Closing hereunder or the earlier termination of this Agreement, Seller shall deal exclusively and in good faith with Buyer with regard to the transactions contemplated by this Agreement and shall not, and shall cause its affiliates, representatives, advisors and agents not to (a) solicit submission of any acquisition proposal of the Purchased Assets at the applicable Pharmacy, (b) participate in any discussions or negotiations regarding, or furnish any non-public information to any other person regarding the Purchased Assets other than Buyer and its representatives or otherwise cooperate in any way or assist, facilitate, or encourage the acquisition proposal of the Purchased Assets at the applicable Pharmacy by any person other than Buyer, or (c) enter into any agreement or understanding, whether in writing or oral, that relates to an acquisition proposal of the Purchased Assets at the applicable Pharmacy or would have the effect of preventing the consummation of the transactions contemplated by this Agreement. Seller shall, and Seller shall cause its affiliates, representatives, advisors and agents to (i) immediately cease any discussions or negotiations of the nature described in this Section 14 that were conducted prior to the date hereof, (ii) promptly notify any party which such discussions or negotiations were being held of such termination, and (iii) promptly request in writing that all persons to whom nonpublic information concerning the Purchased Assets has been distributed on or prior to the date of this Agreement return or destroy such information to Seller as soon as possible. If, notwithstanding the foregoing, Seller or its affiliates, representatives or agents should receive any acquisition proposal of the Purchased Assets at the Pharmacies or any inquiry regarding any such proposal from any person, such persons shall promptly inform Buyer and its counsel in writing of the facts and terms thereof.

11

15.    **Confidentiality.** From and after the date of this Agreement, Seller and Buyer shall keep the transaction contemplated hereby strictly confidential except as may be required by law (and if so required by law, the party with the obligation to so disclose shall provide the other party with advance notice of the required disclosure). Seller shall keep all information about the Purchased Assets and the transactions contemplated by this Agreement confidential both before and after the transfer thereof (except that Seller may release to an individual customer any records belonging to said customer upon the customer's request). Seller shall have absolutely no right to use any of the Records or information included in the Purchased Assets after the transfer thereof to Buyer, except as may be required by law or in connection with pending litigation, third party claims or resolving outstanding accounts receivable, or other reasonable purpose provided that (i) such information is used only for the limited purposes specified herein, and (ii) access to such information is at Buyer's store at such times and under such supervision as Buyer deems appropriate. In addition to, and without limiting the foregoing, Buyer agrees to coordinate with Seller, as applicable, (and vice versa), in gathering audit information required and providing responses to desk audits within audit response timeframes for any Claims (as defined in Section 19). The provisions of this Section 15 shall survive Closing and shall be binding on each Party's legal representatives, successors and assigns. The Purchased Assets are being transferred to Buyer for Buyer's sole and exclusive use. Seller acknowledges that any information obtained by Buyer relating to the applicable Pharmacy's customers is owned solely by Buyer and may not be sold or transferred to any other person or company by Seller. Buyer will submit any advertising copy regarding its purchase of the Purchased Assets to Seller for prior approval, which approval shall not be unreasonably withheld. If Seller does not contact Buyer within three (3) business days of receipt of said copy, Seller shall be deemed to have approved it. Other than as set forth in this Section 15 neither Buyer nor Seller shall issue a press release or otherwise publicly disseminate any information concerning this Agreement or the sale of the Purchased Assets by Seller to Buyer without the prior written consent of the other Party.

16.    **Normal Business Operations.** Seller shall, at all times prior to the Transfer Date, operate the applicable Pharmacy's business in the ordinary course, consistent with prior practice (including, without limitation, like pricing, hours, customer service, advertising, and business standards) as Seller maintained prior to this Agreement and Seller shall not take any action that results in a reduction to Seller's volume of prescriptions. Seller shall not conduct any closing, going out of business, last chance or other sales outside of the ordinary course, consistent with past practice at the Pharmacies. Prior to the Transfer Date, Seller shall not sell, transfer, assign, lease, encumber or otherwise dispose of any of the Purchased Assets. Seller shall not subject any of the Purchased Assets to lien, security interest or any other encumbrance, which lien, security interest or other encumbrance must be discharged of record prior to Buyer's payment to Seller. Prior to the Transfer Date, Seller shall not sell, remove or dispose of any of the Purchased Assets (other than in the ordinary and normal course of business) and will not purchase for the Pharmacies any further merchandise or supplies other than in the ordinary course of business. Notwithstanding anything herein to the contrary, Buyer acknowledges that Seller may be winding down the business at the Pharmacies and as such, the operating hours, inventory and staffing levels may change accordingly and any such changes shall not be deemed a breach of this Section 16.

17.    **Taxes.** Seller agrees to be responsible and pay for any tax or similar charge or assessments on the sale or transfer of the Purchased Assets at Closing; provided, however, that Buyer and Seller hereby waive compliance with the provisions of any applicable bulk transfer laws. Seller shall forever indemnify and hold harmless Buyer against any and all expense, loss, damage or liability, including reasonable attorneys' fees and court costs, which Buyer may suffer as a result of claims asserted by third parties against Buyer due to any noncompliance by Seller and Buyer with applicable bulk transfer laws. Personal property taxes on the Purchased Assets shall be prorated between Buyer and

Seller as of the Transfer Date. Seller shall pay any other taxes on the Purchased Assets prior to the Transfer Date.

18. **Signs; Telephone and Facsimile Numbers.** Seller shall transfer to Buyer the exclusive right to use the Telephone and Fax Numbers on the Transfer Date. If Seller is unable to complete the transfer of the Telephone Fax Numbers on the Transfer Date, Seller shall remote call forward the Telephone and Fax Numbers for ▮▮▮▮▮▮▮ until the transfer of the Telephone and Fax Numbers is complete. Seller shall pay all charges relating to the Telephone and Fax Numbers prior to the Transfer Date. Seller shall pay all yellow pages advertising for the applicable Pharmacy prior to the Transfer Date and cancel the same at its sole expense, if applicable. Seller agrees to, as of the Transfer Date and ending ▮▮▮▮▮▮▮ after the Transfer Date, post appropriate signs in the applicable Pharmacy and/or the front of the applicable store notifying customers that the Purchased Assets will be relocating to Buyer's store and referring customers to such store, subject to landlord consent (if such landlord consent is required) and provided that Buyer provides such signage to Seller.

19. **Indemnity.** Seller shall indemnify, defend and hold Buyer, its directors, officers, shareholders, employees and agents harmless from and against all liabilities, losses, deficiencies, claims, damages, expenses (including, without limitation, reasonable costs and attorneys' fees, reasonable costs and attorneys' fees on appeal), judgments, proceedings, and causes of action of any kind (collectively, "**Claims**") arising out of, resulting from, relating to or in any way connected with (i) Seller's possession, ownership, sale, disposal and/or use of the Purchased Assets, (ii) Seller's breach of any representation or warranty, (iii) Seller's material breach, default, misrepresentation or omission with respect the performance of any of its covenants and obligations under this Agreement, (iv) related to any Liens on the Purchased Assets prior to the time at which such Purchased Assets, or any of them, are transferred to Buyer, (v) related to any matter that is an Excluded Liability and (vi) any losses that are suffered, sustained, incurred or required to be paid by Buyer relating to Seller's use of the applicable Purchased Assets and/or the operation of the applicable Pharmacy prior to and including the Transfer Date. Buyer shall indemnify, defend and hold Seller, its directors, officers, shareholders, employees and agents harmless from and against all Claims arising out of, resulting from or relating to Buyer's possession, ownership, sale, disposal, use of the Purchased Assets on or after the time at which such Purchased Assets, or any of them, are transferred to Buyer and/or Buyer's breach, misrepresentation or omission under this Agreement. The provisions of this Section 19 shall survive Closing.

20. **Miscellaneous.**

   A. **Notices.** All notices given hereunder shall be in writing and shall be given by personal delivery, U.S. Mail (return receipt requested), United States Express Mail (postage or delivery charge prepaid), or other established express delivery service (such as Federal Express or DHL), addressed to the appropriate Party as follows:

   Seller:      c/o Rite Aid Corporation
                200 Newberry Commons, Etters, PA 17319 (street address)
                P.O. Box 3165, Harrisburg, PA 17105 (mailing address)
                Attn: Secretary

   Buyer:       KPH Healthcare Services, Inc.
                6333 Route 298
                ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13

Copy to:        Warren D. Wolfson, Esq.
                  Hancock Estabrook, LLP
                  100 E. Washington Street, Suite 206
                  Syracuse, NY  13202

All notices shall be deemed given upon receipt or refusal.

**B.**     **Entire Agreement.** This Agreement constitutes the entire agreement of the Parties and supersedes all other prior agreements, oral or written, with respect to this transaction. This Agreement may not be modified or otherwise amended, unless in writing and duly authorized by Buyer and Seller.

**C.**     **Successors and Assigns.** All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, their successors and assigns.

**D.**     **Attorneys' Fees.** If either Party takes legal action to enforce the terms of this Agreement, the prevailing Party in such action shall recover its reasonable costs and attorneys' fees, whether or not such controversy or claim is litigated or prosecuted to judgment. The prevailing Party will be the Party that is awarded judgment as a result of trial or arbitration, or the Party that receives a payment of money from the other Party in settlement of claims asserted.

**E.**     **Headings.** The section headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**F.**     **Severability.** If any of the terms of this Agreement are held by any court of competent jurisdiction to be unenforceable, such provisions shall be severed from the Agreement and the remainder of the Agreement shall be given effect by the Parties as if such provision(s) never had been part of the Agreement.

**G.**     **Further Assurances**. Each Party will, and will cause it's respective affiliates to, cooperate in good faith with the other Party and from time to time do and perform such additional acts and execute and deliver such additional documents, instruments, conveyances and assurances as may be required by applicable governmental rules or reasonably requested by any party to establish, maintain or protect its rights and remedies or to effect the intents and purposes of this Agreement. Without limiting the generality of the foregoing, each Party agrees to endorse, if necessary, and deliver to the other, promptly after its receipt thereof, any Purchased Asset, payment, or document which it receives after Closing and which is the property of the other.

**H.**     **Survival of Terms.** All of the provisions of this Agreement which impose continuing or new obligations or liabilities on Seller and/or Buyer after the Transfer Date shall survive the date and the delivery of the Bill of Sale and the Purchased Assets to Buyer. Without limiting the foregoing, all representations, warranties, and indemnities shall all survive the Transfer Date and the delivery of the Bill of Sale and the Purchased Assets to Buyer.

**I.**     **Default.** In the event of any default by any Party to this Agreement, the non-defaulting Party may:

i.      if such default occurs prior to the Transfer Date, terminate this Agreement upon written notice to the defaulting Party, and recover from the defaulting Party all damages incurred by the non-defaulting Party; provided, however, that if Seller is the defaulting Party and such default relates to one or more, but not all, Pharmacies, Buyer shall not be obligated to terminate the Agreement but instead may choose not to purchase the Purchased Assets from Seller in respect of any such Pharmacy subject to default;

ii.     Seek specific performance of this Agreement and/or injunctive relief and, in addition, recover all damages incurred by the non-defaulting Party. The Parties intend that this Agreement may be specifically enforced;

iii.    Perform or pay any obligation or encumbrance necessary to cure the default and offset the cost thereof from monies otherwise due the defaulting Party or recover said monies from the defaulting Party; and

iv.    Pursue all other remedies available at law, the Parties intending that remedies be cumulative and liberally enforced so as to adequately and completely compensate the non-defaulting Party. The allocation of the Purchase Price is not intended to serve as a measure of damages, and the Parties agree that the breach of any provision of this Agreement may result in damages to the other Party in an amount in excess of any consideration paid for any particular asset.



**J.**     **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the state in which the applicable Pharmacy is located.

**K.**     **Counterparts.** This Agreement may be executed by facsimile or pdf copies in two or more counterparts and once so executed by the Parties hereto, each such counterpart shall be deemed to be an original, but all such counterparts together shall constitute one agreement. Facsimile and e-mail signatures shall be deemed originals for purposes of enforcement.

**L.**     **No Third Party Beneficiaries.** It is the intention of the Parties that no individual or entity be construed or considered to be an intended or implied third-party beneficiary under this Agreement.

**M.**    **Time of the Essence.** All times provided for in this Agreement for the performance of any act will be strictly construed, time being of the essence.

**N.**     **Incorporation of Exhibits.** All exhibits are incorporated into this Agreement as if set forth in full herein.

**O.**     **Waiver.** No covenant, term or condition, or breach thereof, shall be deemed waived except by written consent of the Party against whom the waiver is claimed. Any claim of the

breach of any covenant, term or condition of this Agreement shall not be deemed a waiver of any other covenant, term or condition herein.

P.      **No Damages.** In no event shall either Party be responsible for punitive, exemplary, incidental or consequential damages, and each Party agrees, regardless of cause, not to assert any claim whatsoever against the other Party for such damages.

Q.      **Bankruptcy.** Seller shall use commercially reasonable efforts to respond to any questions Buyer may have related to the Bankruptcy Cases.

21.     **Marketing to Pharmacy's Customers.** For a period of five (5) years from and after the date of this Agreement, Seller shall not (directly or indirectly):

A.      Advertise, encourage or solicit the transfer by customers of the applicable Pharmacy of their records and/or prescriptions to any stores/pharmacies operated by Seller or its subsidiaries. Notwithstanding the foregoing, general mass advertising that does not mention the applicable Pharmacy by name or location is permitted and may be used by Seller.

B.      Send letters or other communications in any form to the customers of the applicable Pharmacy, other than general mass advertising not directed to customers of the applicable Pharmacy. In no event shall Seller send letters, any form of incentives or other communications to the applicable Pharmacy's customers to solicit or encourage the relocation of such customers' prescription information or files to another store or pharmacy operated by Seller or its subsidiaries.

C.      Advertise or communicate publicly the fact that a pharmacist previously working in the applicable Pharmacy has transferred to another pharmacy operated by Seller or its subsidiaries in the same trade area as the applicable Pharmacy.

From the date of this Agreement until the date of Closing, Seller will encourage the transfer of the prescriptions and records of the applicable Pharmacy's customer to the Buyer's store except as otherwise provided in Section 6D of this Agreement. The Parties hereby recognize, acknowledge and agree that the limitations contained in this Agreement are reasonable and properly required for the adequate protection of the business of the applicable Pharmacy, as it will be conducted by Buyer after the Transfer Date.