**CHOATE, HALL & STEWART LLP**
John F. Ventola (admitted *pro hac vice*)
G. Mark Edgarton (admitted *pro hac vice*)
Jean-Paul Jaillet (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
jventola@choate.com
gedgarton@choate.com
jjaillet@choate.com
jmarshall@choate.com

**GREENBERG TRAURIG, LLP**
Alan J. Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
brodya@gtlaw.com

*Counsel to Bank of America, N.A.*

| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al*., | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**BANK OF AMERICA, N.A.'S JOINDER TO THE DEBTORS' OPPOSITION TO MCKESSON'S MOTION FOR PAYMENT AND BANK OF AMERICA, N.A.'S RESERVATION OF RIGHTS UNDER THE INTERCREDITOR AGREEMENT**

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Bank of America, N.A. ("Bank of America"), by and through its undersigned counsel, respectfully submits this joinder and reservation of rights.

## JOINDER

1. On June 2, 2025, the McKesson Corporation filed a *Motion for an Order (A) Allowing Administrative Expense Claim, (B) Compelling Immediate Payment Thereof, and (C) Granting Related Relief* (Dkt. 655) (the "Motion").

2. On July 31, 2025, the Debtors filed their Opposition to the Motion ("Opposition").

3. Bank of America, in its capacity as DIP Agent,[2] joins in the Debtors' Opposition and incorporates it by reference. The Court should deny McKesson's Motion for the reasons set forth in the Opposition.

## RESERVATION OF RIGHTS UNDER INTERCREDITOR AGREEMENT

4. When exiting its first bankruptcy case, Rite Aid entered into a "Senior ABL Credit Agreement" dated August 30, 2024 with Bank of America and other lenders ("the "Senior ABL Secured Parties"). Bank of America serves as the agent for Senior ABL Secured Parties under that facility.

5. Bank of America, in its capacity as agent for the Senior ABL Secured Parties, and McKesson are parties to an "Intercreditor Agreement" dated August 30, 2024 (the "Intercreditor Agreement"). The Intercreditor Agreement governs certain rights as between the Senior ABL

---

[2] Capitalized terms used but not defined herein shall gave the meanings ascribed to them in the *Stipulation and Agreed Order by and Between the Debtors, DIP Agent, the Official Committee of Unsecured Creditors, and McKesson Corporation (I) Scheduling Certain Dates and Deadlines in Connection with the Motion of McKesson Corporation for Entry of an Order (A) Allowing Administrative Expense Claim, (B) Compelling Immediate Payment Thereof, and (C) Granting Related Relief, (II) Establishing Certain Protocols, and (III) Granting Related Relief* (Dkt. 672).

Secured Parties and McKesson with respect to Rite Aid.

6. The Intercreditor Agreement requires that proceeds of the Senior ABL Secured Parties' collateral (such as cash) must be used to satisfy in full Rite Aid's obligations to the lenders prior to paying any obligations to McKesson, unless such payments to McKesson are "Permitted Payments" as specified under the Intercreditor Agreement.

7. The Intercreditor Agreement also requires McKesson to turn over certain payments it receives from Rite Aid to Bank of America. Specifically, Section 4.3 of the Intercreditor Agreement provides that:

> The Supplier [McKesson], on behalf of the Supplier Secured Parties, agrees that, unless and until the Full Payment of all Senior Obligations occurs, any proceeds of Collateral (including those received in connection with any Turnover Trigger Event, but excluding any Permitted Payments) received by any Supplier Secured Party at any time in contravention of this Agreement shall be segregated and held in trust and forthwith paid over to the Applicable Senior Agent, for application to the Senior Obligations until the Full Payment of all Senior Obligations . . . ."

8. Stated in a different way, the Intercreditor Agreement requires McKesson to turn over to Bank of America any payments McKesson receives from Rite Aid that are not "Permitted Payments".

9. The Intercreditor Agreement defines "Permitted Payments" as "(a) any payment made by any of the Loan Parties to any of the Supplier Secured Parties in the ordinary course of business (and, for avoidance of doubt, not as a result of a Collateral Enforcement Action) pursuant to the trade terms of the Supply Agreement in effect on the date hereof, and (b) any other payments made by the Loan Parties to the Supplier Secured Parties pursuant to the terms of the Supply Agreement with the prior written consent of each Senior Agent."

10. Rite Aid's payment of $49,674,910 to McKesson on May 5, 2025, which is the subject of McKesson's Motion (the "May 5 Payment"), was not a Permitted Payment, because it was made outside the "ordinary course of business [of] the trade terms of the [McKesson] Supply

Agreement in effect on" August 30, 2024 (the "Supply Agreement").

11. The May 5 Payment was outside the ordinary course of business for various reasons, including those set forth in the Debtors' Opposition and adversary complaint.

12. By way of dispositive example, it is indisputable that McKesson stopped shipment of products to Rite Aid on May 4 for the purpose of pressuring Rite Aid to make the May 5 Payment:

> **From:** Bowers, Justin <Justin.Bowers@McKesson.com>
> **Sent:** Sunday, May 4, 2025 7:54 PM
> **To:** Steven K Bixler <sbixler@riteaid.com>; Owen P McMahon <omcmahon@riteaid.com>
> **Subject:** RE: Rite Aid payment: 5/2/25
>
> Steve and Owen,
>
> I wanted to inform you that as of this evening, McKesson is holding all new incoming orders because Rite Aid has exceeded today's cap of $185M. So far, Rite Aid's orders have amounted to a little over $21M, and we are anticipating more orders from the West Coast.
>
> We will not be able to process any further orders until Rite Aid makes the necessary payment.
>
> Justin Bowers

ECF 655-2 (Bowers Declaration), Ex. 5.

13. McKesson's pressure campaign worked:

> **From:** Steven K Bixler
> **To:** Bowers, Justin; Owen P McMahon
> **Subject:** [EXTERNAL] RE: Rite Aid payment: 5/2/25
> **Date:** Monday, May 5, 2025 12:09:27 PM
>
> **CAUTION: This email was sent from an EXTERNAL source. Use caution when clicking links or opening attachments.**
>
> Justin –
>
> Appreciate your note. The pause in order processing is likely to cause operational and patient disruption and we want to try to minimize that impact going forward. We anticipate making a wire payment in the amount of $49.7M today, which I believe will put our outstanding balance at approximately $138M. Are you able to confirm that you will fulfill and ship orders up to the cap amount of $180M based upon receipt of that wire payment?
>
> Steve

ECF 655-2 (Bowers Declaration), Ex. 5.

14.  McKesson's bold conduct -- stopping shipment of pharmaceutical products to Rite Aid and demanding payment to re-start shipment -- is a textbook example of "unusual action" by a creditor to extract payment and "gain an advantage in light of debtor's deteriorating financial condition." *Hechinger Inv. Co. of Del., Inc. v. Univ. Forest Prods. (In re Hechinger Inv. Co. of Del., Inc.)*, 489 F.3d 568, 578 (3d. Cir. 2007); *see also J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 96 B.R. 474, 478 (D.N.J. 1988), *aff'd* 891 F.2d 66 (3d Cir. 1989) (imposition of trade cap and threat to stop shipment took payments outside ordinary course); *Off. Comm. of Unsecured Creditors of Gregg Appliances, Inc. v. D & H Distrib. Co. (In re HHGREGG, Inc.)*, 2022 Bankr. LEXIS 371, at *21-23 (Bankr. S.D. Ind. Jan. 13, 2022) (holding "threats of held shipments" and repeated communications about the need for payment to senior management took payments outside of normal course); *Menotte v. Oxyde Chems., Inc. (In re JSL Chem. Corp.)*, 424 B.R. 573, 582 (Bankr. S.D. Fla. 2010) (holding payments made after creditor imposes a credit hold or refuses to deliver new merchandise until the balance is reduced are outside the ordinary course).

15. Moreover, the "trade terms" in effect on May 5 were outside the ordinary course of business under the Supply Agreement because they followed a series of unilateral McKesson changes and tightening to the trade terms that took place in April 2025. *See* ECF 655-2 (Bowers Declaration), Ex. 6 (email chain between McKesson and Rite dated April 23 to April 30, 2025 detailing restriction of trade terms).

16. Because the May 5 Payment is not a Permitted Payment, McKesson is obligated to turn over the May 5 Payment to Bank of America.

17. Bank of America's turnover rights under the Intercreditor Agreement are independent of the Debtors' rights. Accordingly, Bank of America, in its capacity as the agent for Senior ABL Secured Parties, reserves the right to assert a claim against McKesson pursuant to the

Intercreditor Agreement, when and as appropriate, or otherwise enforce its rights under the Intercreditor Agreement.

Date: July 31, 2025

      Respectfully submitted,

*/s/Alan J. Brody*
**GREENBERG TRAURIG, LLP**
Alan J. Brody
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Email:   brodya@gtlaw.com

*Co-counsel to Bank of America, N.A.*

-and-

**CHOATE, HALL & STEWART LLP**
John F. Ventola (admitted *pro hac vice*)
G. Mark Edgarton (admitted *pro hac vice*)
Jean-Paul Jaillet (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Email:   jventola@choate.com
           gedgarton@choate.com
           jjaillet@choate.com
           jmarshall@choate.com

*Co-counsel to Bank of America, N.A.*