**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' RESPONSE TO (I) OBJECTION OF STATE STREET PARTNERS LLC TO DEBTORS' NOTICE OF POTENTIALLY ASSUMED UNEXPIRED LEASES AND (II) SUPPLEMENTAL OBJECTION OF STATE STREET PARTNERS LLC TO DEBTORS' NOTICE OF POTENTIALLY ASSUMED UNEXPIRED LEASES

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), file this response to (i) the *Objection of State Street Partners LLC to Debtors' Notice of Potentially Assumed Unexpired Leases* [Docket No. 575] (the "Initial Objection") and (ii) the *Supplemental Objection of State Street Partners LLC to Debtors' Notice of Potentially Assumed Unexpired Leases* [Docket No. 1565] (the "Supplemental Objection" and

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

together with the Initial Objection, the "Objection").  In response to the Objection and in furtherance of the *Order (I) Approving and Authorizing the Sale of Certain Pharmacy Assets Free and Clear of All Liens, Claims, Rights, Interests, and Encumbrances, (II) Approving Certain Asset Purchase Agreements and Related Agreements Among the Debtors and Purchaser, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief* dated May 21, 2025 [Docket No. 470] (the "Sale Order"),[2] the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

1.      State Street Partners, LLC (the "Landlord"), the landlord of the Debtors' premises located at 1515 West State Street, Boise, Idaho pursuant to a Lease dated as of August 2000 (the "Lease"),[3] objects to the assumption and assignment of the Lease to Idaho CVS Pharmacy, L.L.C. ("CVS").  As described below, this can (and will) be easily addressed, as the Debtors will pay or reserve all asserted Cure Payments, and CVS has provided adequate assurance.

2.      Additionally, the Landlord (wrongly) asserts that the current term of the Lease will expire in a few months (rather than its current term, on October 26, 2030).  Without a determination that the current Lease term has been automatically extended through October 26, 2030, which is borne out by a simple review of the explicit provisions of the Lease, CVS has indicated it does not desire to take assignment of the Lease,[4] which will deprive the Debtors' estates of the significant

---

[2]      Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Sale Order.

[3]      A copy of the Lease is attached to each of the Initial Objection and the Supplemental Objection, as Exhibit A.

[4]      The Debtors do not agree that CVS is permitted not to take assignment of the Lease, and reserve all rights with respect thereto.

consideration an assignment of the Lease and sale of the related assets will bring, to the detriment of the Debtors' estates.

3.      Subject to the payment of all allowed Cure Payments (which the Debtors are prepared to pay), the Court should overrule the Objection, find that the Landlord has received adequate assurance of future performance, and make a determination that the Lease term has been extended (automatically) in accordance with the terms of the Lease through October 26, 2030.

## **BACKGROUND**

4.      On May 6, 2025, the Debtors filed that certain *Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* [Docket No. 17] (the "Sale Motion").

5.      On May 21, 2025, the Court entered the Sale Order.

6.      In connection with the Sale Motion, on or about May 19, 2025, the Debtors served upon certain landlords, including the Landlord, a *Notice of Potentially Assumed Unexpired Leases* (the "Cure Notice"). *See* Docket No. 463; *see also* Exhibit C to Supplemental Objection. The Cure Notice listed a Proposed Cure amount of $52,465.88. *See* Exhibit C to Supplemental Objection.

7.      In response to the Cure Notice, the Landlord filed the Objection, which, through the Supplemental Objection, asserts a cure amount due of "no less than $168,763.00" comprised of (i) "the cost of premiums paid by Landlord for compliant insurance for the 2024-2025 period at $75,058.00 (ii) "interest at the default rate of 6% above the commercial lending rate ($9,007.00)

(as specified in Paragraph 19 (iv) of the Lease) on the premiums paid by Landlord as required in

the Lease," (iii) attorney's fees in the amount of $40,000 incurred through May 29, 2025,

(iv) "premium for insurance as required in the Lease for the period June 2025 through June 2026

which failure required Landlord to incur such expense in the amount of $9629.00," (v) "real estate

taxes . . . in the amount of $26,569.00", (vi) interest at the default rate on the continuing and new

expenses incurred by Landlord; and (vii) "attorney's fees ($8,500.00) incurred" (presumably after

May 29, 2025.  *See* Supplemental Objection, ¶¶ 3-5.

8.      The Objection also raises issues with respect to adequate assurance of future

performance.  Specifically, the Objection provides as follows:

> No financial information has been provided by Debtor regarding the
> entity to whom it seeks to assign the lease. Under the Lease there
> was a Rite Aid guaranty. While CVS is a large and supposedly
> financially capable entity, Debtor has not advised that CVS will be
> the assignee rather than a single asset entity. The Debtor has not
> proposed that CVS guarantee the Lease.

*See* Supplemental Objection at ¶8.

## ARGUMENT

**A.      The Debtors Intend to Pay the Entirety of the Asserted Cure Amount at Closing (and Reserve Such Amounts Asserted on Account of Attorneys' Fees Pending a Determination by the Court of the Amount, if any, Compensable Under the Terms of the Lease), thereby Resolving the Objection to the Cure Amount.**

9.      As noted above, more than half of the purported cure amount is comprised of

amounts that the Landlord purportedly incurred in securing its own policies of insurance (totaling

$84,687 for periods 2024 through 2026).  *See* Supplemental Objection, at ¶ 4, 5.  While the Debtors

dispute the Landlord's contention that the Debtors were in default pursuant to the Lease's

insurance requirements (or that the Landlord could hold the Debtors responsible for any amounts

the Landlord incurred on account thereof), the Debtors have determined, as part of the Cure

Payments, to pay the amounts incurred by the Landlord (for periods through the Assumption Date),

without the necessity of the Court determining whether such payments are payable under the Lease.

10.     Moreover, while the Debtors dispute any obligation to reimburse the landlord for the insurance premiums (and, thus, the non-payment thereof could not be deemed late), the Debtors will similarly pay such amounts alleged to be due on account thereof, which the Landlord calculated to be $9,007.00.

11.     The Debtors will also reimburse the Landlord for the real estate taxes to the extent already advanced by the Landlord (totaling $26,569.00).

12.     Accordingly, upon the assumption and assignment of the Lease to CVS, the Debtors intend to pay to the Landlord Cure Payments totaling $120,263.

13.     However, because the attorneys' fees, to the extent compensable under the Lease, are not yet payable (as discussed below), the Debtors will reserve the amount asserted on account of such fees (totaling $48,500) and will cure, if necessary, all allowed attorneys' fees upon an agreement of the parties as to the amount due thereon or as determined by the Court.[5]

---

[5]     Consistent with section 365(b)(1)(A) of the Bankruptcy Code (which allows a debtor to provide adequate assurance that it will promptly cure all defaults), the *Order (I) Approving Auction and Bidding Procedures (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice With Respect Thereto, and (VII) Granting Related Relief* [Docket 142] (the "Bidding Procedures Order") allows for the assignment of the Lease pending resolution of a disputed cure. *See* Bidding Procedures Order at ¶ 22(f), which provides as follows:

> **Dispute Resolution**. In the event that the Debtors and an Assumed Contract Counterparty cannot resolve an objection to a Cure Payment, the Contract at issue may be assumed by the Debtors and assigned to the Successful Bidder, *provided* that the Debtors shall segregate the Cure Payment that the Assumed Contract Counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties. Any objection to the proposed assumption and assignment of a Contract or related Cure Payment proposed in connection with the Sale Transactions that remains unresolved as of the applicable Sale Hearing, shall be heard at such Sale Hearing (or at a later date as fixed by the Court); *provided*, *further* that, with respect to any Contracts that are leases of real property, absent the consent of the Debtors and the Assumed Contract Counterparty, the Successful Bidder may not take possession of the leased

**B.      The Landlord Has Not Met Its Burden for the Allowance of Attorneys' Fees Under the Lease**

14.      "To recover attorneys' fees as part of a cure claim, the Landlord must establish several facts." *In re Crown Books Corp.*, 269 B.R. 12, 15 (Bankr. D. Del. 2001).

15.      "First, courts have held that attorneys' fees are recoverable as part of a cure claim only if the contract or lease specifically provides for their payment." *Id.* "Although attorneys['] fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *Crown Books Corp.*, 269 B.R. at 15 (quoting *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) and citing *In re Shangra-La, Inc.*, 167 F.3d 843, 849-50 (4th Cir. 1999); *In re Best Products Co., Inc.*, 148 B.R. 413 (Bankr. S.D.N.Y. 1992)).

16.      Here, the Lease provides, in relevant part, as follows, with respect to attorneys' fees:

> (e)      Each of Tenant and Landlord (herein called "Paying Party") agrees to pay to the other party (herein called "Demanding Party") any and all reasonable costs and expenses incurred by the Demanding Party in connection with any litigation or other action instituted by the Demanding Party to enforce the obligations of the Paying Party under this Lease, to the extent that the demanding party has prevailed in any such litigation or other action.  Any amount payable by Tenant to Landlord pursuant to this Paragraph 20(e) shall be due and payable by Tenant to Landlord as Additional Rent. . . .  As used in this Paragraph, "costs and expenses" shall include, without limitation, reasonable attorneys' fees at trial, on appeal and on any petition for review, and in any proceeding in bankruptcy, in addition to all other sums provided by law.

Lease, ¶ 20(e).

---

premises or operate the business thereon prior to the assumption and assignment of the Contract.

17.     The Landlord has filed 3 documents in these chapter 11 cases, the Initial Objection, the Supplemental Objection and a separate Certification of Jeff Oberg [Docket No. 637], where the Landlord claimed (incorrectly) that the Debtors' insurance coverage had expired.

18.     The Landlord has not, thus far, "prevailed" in any litigation or other action (whether in these cases, the prior chapter 11 cases or any state court action), which is a requirement for attorneys' fees to become "Additional Rent" under the Lease.  Accordingly, there is no basis for the Landlord to have alleged in its Objection that there has been a "***failure*** to reimburse Landlord for attorneys' fees."  *See* Objection and ¶¶ 4, 5 (emphasis added).

19.     The second requirement for recovery of attorneys' fees under section 365(b)(1) is that the attorneys' fees sought must be reasonable.  *See Crown Books*, 269 B.R. at 18 ("Attorneys' fees are recoverable under section 365(b)(1) only if they are reasonable.") (citing *In re Westworld Community Healthcare, Inc.*, 95 B.R. 730, 733-34 (Bankr. C.D. Cal. 1989); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 983-84 (Bankr. W.D. Tenn. 1989).) The reasonableness of an award of attorneys' fees to a landlord requires the court to consider several factors, including the amount of the dispute relative to the attorneys' fee requested, the good faith effort to resolve the claim, the debtor's compliance with the Bankruptcy Code, and whether the issue is a matter of first impression.

20.     The Objection, however, provides no detail as to the attorneys' fees sought in connection with these filings to allow the Court to determine their reasonableness.  The Objection states only that the Landlord has incurred "attorney fees in the amount of $40,000 incurred through May 29, 2025 as a result of the Debtor's default" and "continuing attorney's fees ($8,500) incurred as a result of Debtor's continued and new defaults."  *See* Supplemental Objection, at ¶¶ 4, 5.  The Landlord has not submitted to the Court time records to support the attorneys' fees enumerated in

Objection or a certification to support the payment of attorney's fees, such as the novelty and difficulty involved in the work, the time and labor required, and the billing rate of the attorney. Indeed, the Objection lacks **any** supporting detail with respect to the attorneys' fees that the Landlord asserts are payable by the Debtors.  The Landlord's failure to adequately support the attorneys' fee claims with legal invoices to support the amounts sought alone merits disallowance of that portion of the cure amount.  *See, e.g.*, *In re Pelican Pool & Ski Ctr., Inc.*, 2009 Bankr. LEXIS 4623, at *43-50 (Bankr. D.N.J. July 27, 2009) (allowing a landlord's attorneys' fees under section 365(d)(3) of the Bankruptcy Code if such fees were (1) reasonably incurred for the purpose of enforcing performance under the lease, (2) authorized under the terms of the lease, and (3) supported by detailed invoices).

21.    Bankruptcy courts being asked to approve fees have "a duty to examine the reasonableness of all fees requested[.]"  *In re Pac. Sea Farms, Inc.*, 134 B.R. 11, 16 (Bankr. D. Haw. 1991).  Without the level of detail required to make that assessment, the Court simply cannot determine what fees were incurred to enforce the obligations of the Debtor, as Paying Party, under this Lease, and which of those fees were incurred in a litigation or other action in which the Landlord "prevailed".[6]  Accordingly, even assuming the Debtors were obligated to pay attorneys' fees under the Lease (they are not), they would not be obligated to pay the attorneys' fees asserted by the Landlord.

---

[6]    In order to resolve the Cure Objection without the Landlord having to file a certification of attorneys' fees and providing sufficient detail into its attorneys' fees incurred, the Debtors will agree for purposes of the Objection that $10,000 would constitute a reasonable amount of attorneys' fees incurred for filing the Objection (and similar documents in the 2023 cases) and would agree to pay such amount with the other portions of the Cure Payment that will be paid to the Landlord upon the assumption and assignment of the Lease to CVS.  To the extent the Landlord persists in seeking the entirety of the attorneys' fees included in the Objection, and the Debtors prevail in challenging the amount of those fees, the Debtors reserve the right to seek their own attorneys' fees incurred.

**C.    The Proposed Assumption and Assignment of the Lease Satisfies the Requirements of Sections 365(b)(1)(C) and 365(f)(2)(B)**

22.    As noted above, the Landlord has raised questions regarding adequate assurance of future performance relating to the assignment of the Lease to CVS.  The Debtors have provided support and evidence for CVS's ability to provide adequate assurance of future performance.  Such evidence includes, without limitation, (i) the "Keep Well" letter from CVS, attached, hereto as **Exhibit A**, which has already been provided to the Landlord, and (ii) the *Declaration of Stephen M. Frumento on Behalf of CVS Pharmacy, Inc. in Support of Certain Findings in the Proposed Order (I) Approving and Authorizing the Sale of Certain Pharmacy Assets Free and Clear of All Liens, Claims, Rights, Interests, and Encumbrances, (II) Approving Certain Asset Purchase Agreements and Related Agreements among the Debtors and Purchaser, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief* [Docket No. 449] (the "Frumento Declaration"), including without limitation, paragraphs 13-14 of the Frumento Declaration, which explains that "CVS is capitalized through and has access to the resources of CVS Health Corporation, which is a publicly traded company listed on the New York Stock Exchange (NYSE: CVS).  CVS Health Corporation generated consolidated revenues of approximately $94.6 billion in the three months ended March 31, 2025."

23.    The phrase "adequate assurance of future performance," adopted from section 2-609(1) of the Uniform Commercial Code, is determined by the factual conditions, with the inquiry focusing on the seller's good faith and observance of commercial standards.  *In re Texas Health Enterprises, Inc.*, 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000).  Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).  Among

other things, adequate assurance may be given by demonstrating the assignee's financial health

and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*,

56 B R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present

where a prospective assignee has financial resources and has expressed a willingness to devote

sufficient funding to a business to give it a strong likelihood of succeeding).

24.  As set forth in the Frumento Declaration and as is otherwise publicly available,

CVS is a publicly traded healthcare company with a market capitalization over $75 billion as of

July 30, 2025.  As of December 31, 2024, CVS had over than 9,000 retail pharmacy locations.[7]

Accordingly, CVS easily has the financial wherewithal and operational expertise needed to

perform under the Lease.  While the Landlord may ask for more—e.g., a guarantee from the CVS

parent or other support, CVS is not obligated to provide more to satisfy section 365(f)(2) of the

Bankruptcy Code.  "Adequate" assurance need just be that—adequate.  The assurance need not be

perfect or even great.  "[I]t is . . . clear that, by requiring provision of adequate assurance under

section 365 . . .  Congress did not require the Court to assure literal fulfilment . . . of each and

every term of the bargain.  *Matter of U. L. Radio Corp.*, 19 B.R. 537, 543 (Bankr. S.D.N.Y. 1982)

(internal citations omitted).  "[A]dequate assurances need not be given for every term of an

executory contract."  *In re Fleming Companies, Inc.*, 499 F.3d 300, 305 (3d Cir. 2007).  "Although

no single solution will satisfy every case; the required assurance will fall considerably short of an

absolute guarantee of performance."  *In re Carlisle Homes, Inc.*, 103 B.R. at 538; *see also In re*

*Prime Motor Inns, Inc.*, 166 B.R. at 997. ("[T]he assurance of future performance is adequate if

---

[7]  *See* CVS 10-k, p.2, dated Feb. 2, 2025 (available at https://investors.cvshealth.com/investors/financial-information/sec-filings/sec-filings-details/default.aspx?FilingId=18177085)

performance is likely (i.e. more probable than not).").  Accordingly, CVS has provided adequate

assurance of future performance.

**D.      The Debtors' Current Lease Term Has Been "Automatically Extended" to October 26, 2030**

25.      The "Term" of the Lease is set forth in Paragraph 5 thereto.  *See* Lease ¶ 5.  As set

forth therein, the Lease provides for an initial term of 20 years, commencing in 2000 and initially

expiring in 2020, with six (6) consecutive renewal terms of five (5) years each.  *See* Lease at ¶ 5

and Exhibit "B" to the Lease.

26.      Notably, the Term is ***automatically*** extended for each five (5) year renewal term

***unless*** the Tenant serves a "Renewal Term Cancellation Notice" (as defined in Paragraph 5(b) of

the Lease).  In that regard, the Lease provides as follows:

> (b) Provided this Lease shall not have been terminated pursuant to the provisions of Paragraphs 13(b) or 19, this Lease and the Term shall be ***automatically extended*** for that number of consecutive renewal terms set forth in Exhibit "B" attached hereto and made a part hereof (each, "Renewal Term") each for the duration set forth in Exhibit "B" upon condition that Tenant may cancel any Renewal Term by giving notice ("Renewal Term Cancellation Notice") to Landlord in writing at least six (6) months prior to the expiration of the then current Term.  If Tenant does not timely give to Landlord a Renewal Term Cancellation Notice, the date by which Tenant may give such Renewal Term Cancellation Notice to Landlord shall be extended to the date occurring ten (10) days after the date on which Landlord shall have given to Tenant a written notice reciting the provisions of this Paragraph 5(b).  Upon the giving of a Renewal Term Cancellation Notice this Lease and the Term shall terminate and come to an end as of the later of (i) the ninetieth (90th) day following the giving of the Renewal Term Cancellation Notice, or (ii) the last day of the then current Term (and if the effect of this sentence is to extend the Term it shall be so extended on the terms and conditions and for the Rent in effect for the Term then expiring).  Any Renewal Term shall be subject to all of the provisions of this Lease, and all such provisions shall continue in full force and effect, except that the Basic Rent for each Renewal Term shall be the amounts determined in accordance with the schedule set forth in Exhibit "B" attached hereto and made a part hereof.  If Tenant shall timely give a Renewal Term Cancellation

> Notice, then all options with regard to subsequent Renewal Terms shall expire and be null and void.

Lease, ¶ 5(b) (emphasis added).

27.     The automatic extension notwithstanding, while in the midst of the disputes between the Debtors and the Landlord following the 2023 cases regarding the Debtors' insurance coverage, Thrifty Payless, Inc., the Debtor-Tenant under the Lease, sent a letter to the Landlord identified as "Notice of Exercise of Lease Renewal Option" dated April 22, 2025, advising the Landlord that it would be exercising one of its remaining options to extend the term of the Lease for an additional five years, *i.e.*, from October 27, 2025 through October 26, 2030.  A copy of that April 22, 2025 letter is attached hereto as **Exhibit B**.

28.     On April 24, 2025, the Landlord responded to the April 22, 2025 letter as follows:

> We received your notice to renew the above referenced lease. Landlord rejects and disavows said notice as Tenant is in numerous default under the lease, including monetary defaults past any cure periods.

*See* Letter from Landlord, dated April 24, 2025, a copy of which is attached hereto as **Exhibit C**.

29.     Of course, because no notice was required to ***extend*** the Term of the Lease, *i.e.*, it was "automatically extended" provided the Tenant did not send a Renewal Term Cancellation Notice (which it did not do),[8] the Landlord had no right to reject or disavow the extension of the Lease Term.

30.     Accordingly, in connection with the assignment of the Lease to CVS, the Debtors request that the Court make an explicit finding that the Lease had automatically extended and that

---

[8]     The automatic extensions would not apply if the Lease had been terminated pursuant to the provisions of Paragraphs 13(b) or 19 of the Lease.  Paragraph 13(b) of the Lease allows the Landlord to terminate the Lease for condemnation.  Paragraph 19 allows the Landlord to terminate the Lease following an Event of Default and an election to terminate the Lease.  Neither such termination occurred and, thus, the Lease was not terminated at the time of the automatic extension and the Lease Term was automatically extended.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objection, permit the assumption and assignment of the Lease to CVS, find that the Lease Term was automatically extended in accordance with the terms of the Lease, grant the Debtors an award of attorneys' fees incurred in seeking the relief set forth herein, and grant such other relief as is just and proper. A proposed form of Order approving the assumption and assignment and granting the relief set forth herein is attached hereto as **Exhibit D**.

Dated: August 1, 2025

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*

14

## EXHIBIT A



**Thomas S. Moffatt**
Vice President, Asst. Secretary &
Sr. Legal Counsel

One CVS Drive
MC 1160
Woonsocket, RI 02895

**p**  401-770-5409

thomas.moffatt@cvshealth.com

June 20, 2025

To Whom It May Concern:

I am Vice President, Secretary and Senior Legal Counsel – Corporate Services for CVS Pharmacy, Inc. ("CVS Pharmacy").  Please note that CVS Pharmacy is the direct parent entity of Idaho CVS Pharmacy, L.L.C. ("ID CVS"), the proposed lessee of certain properties, including the property listed on Exhibit A attached hereto (the "Property").  In connection with the assumption by ID CVS of the lease agreement pertaining to the Property, we anticipate that CVS Pharmacy and/or ID CVS may be asked to provide you with certain entity-specific financial information.  I can provide the following information regarding CVS Pharmacy and ID CVS.

CVS Pharmacy, Inc. is a Subchapter C, for-profit corporation, incorporated in the State of Rhode Island in November 1969.  It is directly and wholly-owned by CVS Health Corporation, a Delaware corporation.  CVS Health Corporation reported over $372 billion in consolidated revenues in fiscal 2024, making it one of the largest companies in the United States in terms of revenues (it was #5 on the *Fortune 500* list published in June 2025).  CVS Pharmacy is one of CVS Health's principal operating companies.  It directly operates approximately 1,000 CVS/pharmacy stores, as well as a number of distribution centers nationwide.  Furthermore, CVS Pharmacy serves as the direct or indirect parent of virtually every entity in the CVS Health organization, including ID CVS and all of our other retail, specialty pharmacy, pharmacy benefit management, long-term care, health care delivery and health care benefit entities.  CVS Pharmacy is one of the oldest, largest and most financially sound entities in the entire CVS Health family of entities.

ID CVS is an Idaho limited liability company that was originally formed in 2015.  ID CVS directly operates three retail pharmacy locations in the State of Idaho.  As a direct operator of multiple retail pharmacy stores, each of which generates millions of dollars of sales annually, it is also financially sound.

Please note that separate audited balance sheets or other financial statements for CVS Pharmacy and ID CVS are not available – our only audited financial statements are consolidated and reported under CVS Health Corporation.  However, note that each of CVS Pharmacy and ID CVS has received a "keep well letter" from CVS Health Corporation (copies attached), indicating that CVS Health Corporation will provide additional capital to CVS Pharmacy and/or to ID CVS whenever it might be necessary to ensure that those entities will be able to meet all of their financial commitments.

Please be advised that I am not expressing any legal opinion on this matter, and that each of CVS Pharmacy and ID CVS remains a separate legal entity and a subsidiary of CVS Health Corporation.  This

**♥CVS**Health

letter and its attachments should not be considered any type of guarantee of the obligations of CVS Pharmacy or ID CVS by CVS Health Corporation, nor any type of guarantee by CVS Pharmacy of the obligations of ID CVS.

I trust that the foregoing information indicates that Idaho CVS Pharmacy, L.L.C. is an appropriate lessee for the Property.

Sincerely,

Thomas S. Moffatt
**Vice President, Secretary and Senior Legal Counsel – Corporate Services**

**CVS** pharmacy / caremark / minute clinic / specialty



EXHIBIT A

Property

| Store # | Address | City | State |
|---------|---------|------|-------|
| 5413 | 1515 WEST STATE STREET | BOISE | ID |

**CVS** pharmacy / caremark / minute clinic / specialty



**Tracy L. Smith**
Senior Vice President & Treasurer

200 Highland Corporate Drive
MC 2340
Cumberland, RI 02864

**p**   401-770-5097

tracy.smith@cvshealth.com

[KEEP WELL LETTER — CVS PHARMACY]

June 20, 2025

CVS Pharmacy, Inc.
One CVS Drive
Woonsocket, RI 02895

    Re:    Financial Obligations

To Whom It May Concern:

On behalf of CVS Health Corporation, a Delaware corporation ("CVS Health"), please be advised that CVS Health will provide additional capital to CVS Pharmacy, Inc., a Rhode Island corporation, whenever it might be necessary to ensure that CVS Pharmacy, Inc. will be able to meet all of its financial commitments including, without limitation, real estate lease payments or guarantees.

Should CVS Pharmacy, Inc. need additional capital at any time, please inform my office at CVS Health Corporation, 200 Highland Corporate Drive, Cumberland, RI 02864, Attn: Senior Vice President and Treasurer.

Sincerely,

CVS HEALTH CORPORATION


By: _____
Tracy L. Smith
Senior Vice President and Treasurer

**CVS** pharmacy / caremark / minute clinic / specialty



**Tracy L. Smith**
Senior Vice President & Treasurer

200 Highland Corporate Drive
MC 2340
Cumberland, RI 02864

**p**   401-770-5097

tracy.smith@cvshealth.com

[KEEP WELL LETTER – ID CVS]

June 20, 2025

Idaho CVS Pharmacy, L.L.C.
One CVS Drive
Woonsocket, RI 02895

Re:    Financial Obligations

To Whom It May Concern:

On behalf of CVS Health Corporation, a Delaware corporation ("CVS Health"), please be advised that CVS Health will provide additional capital to Idaho CVS Pharmacy, L.L.C., an Idaho limited liability company, whenever it might be necessary to ensure that Idaho CVS Pharmacy, L.L.C. will be able to meet all of its financial commitments including, without limitation, real estate lease payments.

Should Idaho CVS Pharmacy, L.L.C. need additional capital at any time, please inform my office at CVS Health Corporation, 200 Highland Corporate Drive, Cumberland, RI 02864, Attn: Senior Vice President and Treasurer.

Sincerely,

CVS HEALTH CORPORATION


By: _Tracy L Smith_ _____
Tracy L. Smith
Senior Vice President and Treasurer

**EXHIBIT B**



**CORPORATE OFFICE**
200 Newberry Commons, Etters, PA 17319

Legal Department

April 22, 2025

**VIA FEDERAL EXPRESS**
STATE STREET PARTNERS, LLC
1720 Wazee
Suite 1A
Denver, CO 80202

Re:    **NOTICE OF EXERCISE OF LEASE RENEWAL OPTION**
**1515 West State Street**
**Boise, Idaho**
**Rite Aid #05413**

Dear Landlord:

Please be advised that THRIFTY PAYLESS, INC. will be exercising one of its remaining options to extend the term of the Lease for the referenced premises for an additional five years. Our new term will commence on October 27, 2025, and will expire on October 26, 2030.

Please note that Rite Aid's address for Legal notices has changed. Therefore, effective immediately all future legal notices as required by the terms of the Lease in connection with the above-referenced store should be sent to the following address:

c/o Rite Aid Corporation                    c/o Rite Aid Corporation
Post Office Box 3165                        200 Newberry Commons
Harrisburg, Pennsylvania 17105             Etters, Pennsylvania 17319
Attention: Legal                            Attention:  Legal

While your acknowledgment of receipt of this notice is not required for its validity, we request that you do so by signing and scanning via email a copy of this letter to Legal.Realestate@riteaid.com.

Very truly yours,
THRIFTY PAYLESS, INC.

*Tracy Verastegui*

Tracy L. Verastegui
Vice President, Real Estate

Acknowledged:

By: _____

cc:  Ms. Rebecca Dow, Esquire, Ballard Spahr Andrews & Ingersoll, 1225 17th St., Suite 2300, Denver, CO 80202

**EXHIBIT C**

# State Street Partners, L.L.C.
1720 Wazee Suite 1A, Denver CO 80202
Phone: 303-825-0940

## Default Notice

April 24, 2025

**Via Fed Ex Overnight Delivery**
Legal/Lease
Rite Aid
200 Newbberry Commons
Etter, PA 17319

**RE:**  ***Lease between State Street Partners, l.l.c. and 1515 West State Street Boise Idaho, l.l.c.
dated August 16, 2000.  Store #6269***

Dear Thrifty Payless. Tracy Verastegui,

We received your notice to renew the above referenced lease.  Landlord rejects and disavows
said notice as Tenant is in numerous defaults under the lease, including monetary defaults past
any cure periods.

Sincerely,
State Street Partners, L.L.C.

Jeff Oberg
Manager

cc: Jeff Oberg
    Stephen Bohara, Fox Rothschild LLP

171604 8/18 BP

Visit ups.com for details on our privacy practices.

ORIGIN ID:FOLA        (303) 825-0940
REA DEVELOPMENY
REA DEVELOPMENT
1720 WAZEE STREET
SUITE 1A
DENVERDENVER, CO 80202
UNITED STATES US

SHIP DATE: 24APR25
ACTWGT: 1.00 LB
CAD: 263758892/INET4535

BILL SENDER

TO **TRACY VERASTEGUI**
**THRIFTY PAYLESS/RITE AID**
**200 NEWBERRY COMMONS**

**YORK COUNTY PA 17319**
(999) 999-9999        REF:
INV:
PO:                    DEPT:







FedEx
Express

E

FRI - 25 APR 10:30A
PRIORITY OVERNIGHT

TRK#
0201   **8807 9267 0480**



**XE THVA**        17319

PA-US  **MDT**



PRIORITY OVERNIGHT
919-1012

17319-9363-00
ETTERS,PA
200 NEWBERRY CMNS
TP 12    SP XX 100    860792670480





03/05/25 22:11

**Do not ship liquids, blood, or clinical specimens in this packaging.**

**This envelope is only for FedEx Express® shipments.**

You can help us get your package safely to its destination by packing your items securely. Need help? Go to **fedex.com/packaging** for packing tips.

**<u>EXHIBIT D</u>**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

### ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH NINO FAMILY HERITAGE PLAZA, LLC

The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

---

[1]        The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH NINO FAMILY HERITAGE PLAZA, LLC |

Upon the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Final Order")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having jurisdiction over this matter and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.) and June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having properly filed and served a Notice of Successful and Backup Bidders on the Objection Notice Parties in accordance with the terms of the Final Order; and it appearing that no other notice need be provided; and no timely objections having been filed; and after due deliberation and sufficient cause appearing therefor; and this Court having reviewed the pleadings and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the Debtors having complied with the Final Order, and that the Debtors' entry into the lease termination agreement, in the form annexed hereto as **Exhibit 1** (the "Lease Termination Agreement"), is in the best interest of the Debtors and their estates and provides for the highest or best bid for the Lease (as defined in the Lease Termination Agreement); and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[1]       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Final Order.

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH NINO FAMILY HERITAGE PLAZA, LLC |

1.     Pursuant to sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Debtors and Landlord (as defined in the Lease Termination Agreement) are authorized to enter into and perform under the Lease Termination Agreement, and to implement the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.  The Lease Termination Agreement and all of the terms and conditions thereof, including, without limitation, the rejection and termination of the Lease, the Debtors' surrender of the Premises (as defined in the Lease Termination Agreement), the consummation of the transactions contemplated thereunder and hereunder, and the releases contemplated therein, which for the avoidance of doubt includes the Landlord's release of any administrative claims (except as provided thereunder), are hereby approved in all respects.

2.     Upon the Termination Date (as defined in the Lease Termination Agreement), the Debtors' rejection and termination of the Lease shall occur without any further action required by the Debtors, and the Debtors shall surrender the Premises pursuant to the terms of the Lease Termination Agreement.

3.     The Debtors are authorized, pursuant to section 363(b)(1) of the Bankruptcy Code, to transfer any rights in and under the Lease and the Premises to the Landlord, pursuant to the terms of the Lease Termination Agreement, which transfer shall, pursuant to section 363(f) of the Bankruptcy Code, be free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds received on account of such transfer in the same order of priority and with the same validity, force and effect that any creditor had prior to the

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER PURSUANT TO SECTIONS 365 AND 363 APPROVING THE LEASE TERMINATION AGREEMENT WITH NINO FAMILY HERITAGE PLAZA, LLC |

transfer, subject to any claims and defenses the Debtors and the Debtors' estates may have with respect thereto.

4.      The Debtors and the Landlord are authorized to take any and all actions reasonably necessary or appropriate to consummate the Lease Termination Agreement and the transactions contemplated thereunder and hereunder.

5.      The Lease Termination Agreement and each of the transactions contemplated therein were negotiated, proposed and are undertaken by the Debtors and the Landlord from arm's-length bargaining positions without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Landlord is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

6.      The Debtors and Landlord are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

7.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry hereof.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

<u>Exhibit 1</u>

Lease Termination Agreement