

Allegheny County
Jerry Tyskiewicz
Department of Real Estate
Pittsburgh, PA 15219

**EXHIBIT C**

---

| | Instrument Number: 2019-14035 | BK-DE VL-17621 PG-259 |
|---|---|---|
| Recorded On: May 20, 2019 | As- Deed Assignment of Rent/Lease | |
| Parties: ONE 1700 MURRAY AVE L L C | | |
| To AMERISERV FINANCIAL BANK | | # of Pages: 12 |

Comment:

************ **THIS IS NOT A BILL** ************

Deed Assignment of Rent/Leas   166.75
                                0
                                0
Total:                        166.75

**Realty Transfer Stamp**

Affidavit Attached-No
NOT A DEED OF TRANSFER        EXEMPT

          Value               0.00

**Department of Real Estate Stamp**

Certified On/By-> 05-20-2019 / S  B

NOT A DEED OF TRANSFER

---

*I hereby certify that the within and foregoing was recorded in the Department of Real Estate in   Allegheny County, PA*

**\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

**File Information:**

Document Number: 2019-14035
Receipt Number: 3583280
Recorded Date/Time: May 20, 2019 01:16:57P
Book-Vol/Pg: BK-DE  VL-17621  PG-259
User / Station: A Matthews - Cash Station 25

**Record and Return To:**

MCGRATH MCCALL
WILL CALL
PITTSBURGH PA 15219



Jerry Tyskiewicz, Director
Rich Fitzgerald, County Executive

3230202.1

368048  DRE Certified
20-May-2019  11:16A\Int By: SB

Will Call

## ASSIGNMENT OF LEASES, RENTS AND PROFITS

THIS ASSIGNMENT OF LEASES, RENTS, AND PROFITS (hereinafter referred to as this "Assignment"), is made as of the 16th day of May, 2019 and made effective as of May 17, 2019, by **1700 MURRAY AVENUE LLC**, a Pennsylvania limited liability company (hereinafter referred to as "Assignor"), to **AMERISERV FINANCIAL BANK**, with offices at 216 Franklin Street, Johnstown, Pennsylvania 15901 (hereinafter referred to as "Assignee").

### WITNESSETH THAT:

WHEREAS, Assignor has executed, acknowledged and delivered to Assignee that certain Open-End Mortgage Note bearing even date herewith, in the principal amount of Ten Million Eighty Thousand and No/100 Dollars ($10,080,000.00) (hereinafter referred to as the "Note"), performance of which is secured by, *inter alia*, an Open-End Mortgage and Security Agreement of even date herewith from Assignor to Assignee (hereinafter referred to as the "Mortgage"), which Mortgage covers certain real estate and the improvements thereon erected and to be erected thereon situate in the City of Pittsburgh, Allegheny County, Pennsylvania, as more fully described in Exhibit "A", attached hereto and hereby made a part hereof (hereinafter collectively referred to as the "Property"); and

WHEREAS, as a condition to Assignee's obligation to make the loan evidenced by the Note and secured by the Mortgage (and any extensions and/or modifications thereof) and made pursuant to or in connection with and secured by other documents, including, but not limited to that certain commitment letter from Assignee to Assignor, that certain Loan Agreement of even date herewith by and between Assignor and Assignee (hereinafter referred to as the "Loan Agreement"), and UCC-1 financing statements naming Assignor as debtor and Assignee as secured party (the Note, the Mortgage, the Loan Agreement and such other documents are sometimes hereinafter collectively referred to as the "Loan Documents"), Assignor has agreed to absolutely and unconditionally assign to Assignee all of Assignor's rights under and title to various leases affecting the Property, including Assignor's rights in and title to the rents therefrom, subject only to the terms and conditions herein set forth.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Assignor hereby agrees as follows:

1. **Assignment of Leases**. Assignor hereby absolutely and unconditionally assigns and transfers to Assignee as of the date hereof, until the entire

outstanding principal amount of the Note has been paid in full and the Mortgage satisfied of record, all of Assignor's rights, title, interests and privileges in all leases now or hereafter in existence with respect to the Property or any part thereof, and all agreements for any use of the Property or any part thereof, together with all extensions, renewals and guaranties of, and all amendments and supplements to, any such lease or agreement (hereinafter collectively referred to as the "Leases"), including without limitation the following:

    (a)    all rents, revenues, issues, income, receipts, profits and other amounts now or hereafter becoming due to Assignor under the Leases (whether due for the letting of space, for services, materials or installations supplied by Assignor or for any other reason whatsoever), including without limitation all insurance, tax and other contributions, insurance proceeds, condemnation awards, damages following defaults by tenants under the Leases (hereinafter referred to as the "Tenants"), cash or securities deposited by Tenants to secure performance of their obligations under the Leases, and all other extraordinary receipts, and all proceeds thereof, both cash and non-cash (all of the foregoing are hereinafter collectively referred to as the "Rents") and all rights to make claim for, collect, receive and receipt for the Rents;

    (b)    any sums to which Assignor may become entitled in any court proceeding involving the bankruptcy, insolvency or reorganization of any Tenant;

    (c)    all claims, rights, privileges and remedies on the part of Assignor, whether arising under the Leases or by statute or at law or in equity or otherwise, arising out of or in connection with any failure by any Tenant to pay the Rents or to perform any of its other obligations under its Lease;

    (d)    all rights, powers and privileges of Assignor to exercise any election or option or to give or receive any notice, consent, waiver or approval under or with respect to the Leases;

    (e)    any payments made by any Tenant in lieu of Rent; and

    (f)    all other claims, rights, powers, privileges and remedies of Assignor under or with respect to the Leases, including without limitation the right, power and privilege (but not the obligation) to do any and all acts, matters and other things that Assignor is entitled to do thereunder or with respect thereto;

subject, however, to the right of Assignor to receive and use the Rents, and to exercise all of Assignor's rights, powers, privileges and remedies under the Leases to the extent not prohibited by Paragraph 4 hereof or by any other Loan Document, until such time as Assignee requests from the Tenants that they pay all Rents directly to Assignee and perform any of the Tenants' respective obligations under the Leases for the benefit of Assignee. Assignor agrees that it will, immediately upon request of Assignee, execute, acknowledge and deliver specific separate assignments of any future Leases affecting the Property or any part thereof.

2. <u>Warranties of Assignor</u>. Assignor hereby represents and warrants to Assignee, as a material inducement to Assignee to accept this Assignment, that:

(a) Assignor has not assigned, transferred, mortgaged, pledged or otherwise encumbered any of its right, title and interest in, to and under the Leases and the Rents and no part of such right, title and interest is subject to any lien or other encumbrance, except in favor of Assignee; and

(b) Assignor has not done anything which might prevent Assignee from or limit Assignee in operating under any of the provisions hereof; and

(c) each Lease is a legal, valid and binding obligation of the Tenant thereof, enforceable in accordance with its terms; and

(d) no default exists by Assignor or any Tenant under any of the Leases, except as disclosed in writing by Assignor to Assignee; and

(e) no Rents have been received by Assignor more than thirty (30) days in advance of the time when the same became due under the terms of the Leases.

3. <u>Assignor's Affirmative Obligations</u>. Assignor hereby covenants with Assignee that Assignor shall (a) perform and observe all covenants and agreements to be performed and observed by Assignor under the Leases, (b) enforce, short of termination of the Leases, the performance and observance of all covenants and agreements to be performed or observed by Tenants under the Leases, (c) appear in and defend any action or proceeding arising out of or in connection with any of the Leases, and (d) promptly give Assignee copies of any notices of default given or received by Assignor under any of the Leases.

4. <u>Assignor's Negative Obligations</u>. Assignor hereby covenants with Assignee that Assignor shall not, (a) enter into any Lease without first obtaining Assignee's written approval of such Lease, the terms and conditions thereof and the Tenant thereof, (b) amend or modify any of the terms of any Lease, without first obtaining Assignee's written approval thereof, (c) terminate any Lease or consent to the cancellation or surrender of any Lease, without first obtaining Assignee's written approval thereof, (d) give or join in any material waiver, consent or approval with respect to any Lease, (e) settle or compromise any claim against any Tenant arising out of or in respect of any Lease, (f) waive any default under or breach of any Lease, (g) take any other action in connection with any Lease which would materially impair the value of the rights or interest of Assignor or Assignee thereunder or therein, (h) assign, transfer, mortgage, pledge or otherwise encumber, or permit to accrue or suffer to exist any lien or other encumbrance on or in, any of the right, title and interest of Assignor in, to and under the Leases and the Rents, except in favor of Assignee, or (i) accept any prepayment of Rents under any Lease earlier than one month in advance of its due date.

5. <u>Assignee Not Bound To Perform Under Leases</u>. Notwithstanding any presumption or any provision contained herein or in the Leases to the contrary, (a) Assignor shall at all times remain solely liable under the Leases to perform all of the obligations of Assignor thereunder to the same extent as if this Assignment had not been executed, (b) neither this Assignment nor any action or inaction on the part of Assignor or Assignee shall release Assignor from any of its obligations under the Leases or constitute an assumption of any such obligations by Assignee, and (c) Assignee shall not have any obligation or liability under the Leases or otherwise by reason of or arising out of this Assignment, nor shall Assignee be required or obligated in any manner to make any payment or perform any other obligation of Assignor under or pursuant to the Leases, or to make any inquiry as to the nature or sufficiency of any payment received by Assignee, or to present or file any claim, or to take any action to collect or enforce the payment of any amounts which have been assigned to Assignee or to which it may be entitled at any time or times.

6. <u>Indemnification</u>. Assignor shall and does hereby agree to indemnify Assignee and hold it harmless from and against any and all liability, loss or damage which it may or might incur, and from and against any and all claims and demands whatsoever which may be asserted against it, in connection with or with respect to the Leases or this Assignment, whether by reason of any alleged obligation or undertaking on its part to perform or discharge any of the covenants or agreements contained in the Leases or otherwise. Should Assignee incur any such liability, loss or damage in connection with or with respect to the Leases or this Assignment, or in the defense of any such claims or demands, the amount thereof, including reasonable costs, expenses and reasonable attorneys' fees, shall be paid by Assignor to Assignee immediately upon demand, together with interest thereon at the default rate (as set forth in the Note) until paid.

7. <u>Right of Assignee to Cure Assignor Defaults</u>. Assignee may, at its option, and without releasing Assignor from any obligation hereunder, after ten (10) days' written notice, except in emergency, discharge any obligation which Assignor fails to discharge, including without limitation, defending any legal action, and Assignor agrees to pay immediately upon demand all sums expended by Assignee in connection therewith, including reasonable counsel fees, together with interest thereon at the default rate provided for in the Note and the same shall be added to the indebtedness evidenced by the Note and secured by the Mortgage and this Assignment.

8. <u>Default</u>. Upon the occurrence of an Event of Default (as that term is defined in the Mortgage and/or the Loan Agreement) which remains uncured beyond the applicable cure period, if any, Assignee may, without notice to Assignor, without regard to whether the unpaid balance of the Note shall then be due and payable and irrespective of the adequacy of Assignee's security for the Note, at Assignee's option, (a) enter and take possession of the Property, or any part thereof, and to manage and operate the same, to collect rents, to let or relet the Property or any part thereof, to cancel and modify Leases, to evict tenants, to bring or defend any

-4-

suits in connection with possession of the Property in its own name or Assignor's name, to make such repairs, alterations and improvements as Assignee deems appropriate, and to perform any other acts in connection with management and operation of the Property as Assignee, in its sole discretion, may deem appropriate and (b) whether or not Assignee has so entered and taken possession of the Property, perform any and all acts in connection with management and operation of the Property, including without limitation those acts set forth in subparagraph (a) above, as Assignee, in its sole discretion, may deem appropriate.

Notwithstanding the foregoing, this Assignment shall not place responsibility on Assignee for the control, care, management or repair of the Property or make Assignee responsible or liable for any injury or death to any person or property arising from any negligence in the management, operation, upkeep, repair or control of the Property, except as a result of the gross negligence or willful misconduct of Assignee. Exercise by Assignee of its rights under this Paragraph 8 shall not waive or cure any default under any of the Loan Documents or affect any proceedings or any sale pursuant thereto.

9. **Application of Rents**. Any Rents derived from the Property pursuant to this Assignment may be applied first to the costs of operation and maintenance of the Property, including without limitation, management fees and professional fees, taxes, water and sewer charges, insurance, maintenance, repairs and the like; second, to any other amounts necessary to meet obligations of Assignor under the Loan Documents and the Leases other than payment of the principal indebtedness under the Note and interest thereon; third, to such interest and fourth, to such principal indebtedness.

10. **Notice to Tenants**. Assignor hereby authorizes Assignee to give written notice of this Assignment at any time to the Tenants under the Leases, or any of them. Subject to the terms of Paragraph 1 hereof, all Tenants are hereby irrevocably authorized and directed to pay all Rents directly to Assignee and perform any of the Tenant's obligations under the Leases (and shall be fully protected in so doing), upon request from Assignee or demand for such payment or performance. Furthermore, all Tenants are hereby authorized to fully rely and act upon such request or demand from Assignee and shall have no duty to inquire as to the validity of such request or demand.

11. **Absolute Assignment**. This Assignment is an absolute assignment from Assignor to Assignee of all of Assignor's right, title and interest in and to the Leases and Rents until the entire outstanding principal amount of the Note has been paid in full and the Mortgage satisfied of record. It is the express intent of the parties hereto that this Assignment is not merely the granting of a security interest as additional collateral, but is an absolute assignment, vesting Assignee with full and clear title to the Leases and Rents as of the date hereof, subject only to the terms and provisions of this Assignment.

12. **Mortgage Foreclosure**. Upon foreclosure of the lien of the

Mortgage, or delivery of a deed in lieu of foreclosure, all right, title and interest of Assignor in, to and under the Leases shall thereupon vest in and become the absolute property of the purchaser of the Property in such foreclosure proceeding, or the grantee in such deed, without any further act or assignment by Assignor. Nevertheless, Assignor shall execute, acknowledge and deliver from time to time such further instruments and assurances as Assignee may require in connection therewith and hereby irrevocably appoints Assignee the attorney-in-fact of Assignor in its name and stead to execute all appropriate instruments of transfer or assignment, or any instrument of further assurance, as Assignee may deem necessary or desirable, and Assignee may substitute one or more persons with like power, Assignor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof.

13. <u>Benefits and Burdens</u>. This Assignment shall be binding upon Assignor and its successors and assigns, including any subsequent owner of the Property, and shall inure to the benefit of Assignee and its successors and assigns, including any assignee(s) of the Loan Documents.

14. <u>Notices</u>. All notices hereunder from Assignor to Assignee and from Assignee to Assignor must be served by personal service, or by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service, addressed to Assignee, at the address set forth on the first page of this Assignment, Attention: Matthew C. Rigo, Senior Vice President, with a copy to Christopher P. Smith, Jr., Esq., Meyer, Unkovic & Scott LLP, 535 Smithfield Street, Suite 1300, Oliver Building, Pittsburgh, Pennsylvania 15222, or to Assignor at 1700 Murray Avenue LLC, c/o Ahron Freilich, 657 Pratt Drive, Indiana, Pennsylvania 15101.

15. <u>Further Assurances</u>. From time to time upon the request of Assignee, Assignor shall promptly and duly execute, acknowledge and deliver any and all such further instruments and documents as Assignee may deem necessary or desirable to confirm this Assignment, to carry out the purpose and intent hereof or to enable Assignee to enforce any of its rights hereunder.

16. <u>Applicable Law and Forum</u>. This Assignment shall (i) be deemed made under, governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, and (ii) be enforceable only in the State Courts of said Commonwealth with an action commenced in the Court of Common Pleas of the County of Allegheny, and/or in the Federal Courts of said Commonwealth with an action commenced in the United States District Court for the Western District of Pennsylvania. Assignor hereby waives any claim that Pittsburgh, Pennsylvania is an inconvenient forum and any claim that any action or proceeding arising out of or relating to this Assignment and commenced in the aforesaid Courts lacks proper venue.

17. **WAIVER OF 20 PA.C.S. SECTION 5601.3(B). ASSIGNOR, TO THE FULLEST EXTENT THAT IT MAY LAWFULLY DO SO, HEREBY WAIVES THE EFFECT AND APPLICATION OF, AND AGREES THAT ASSIGNEE SHALL NOT BE**

-7-

**BOUND BY, THE DUTIES AND OBLIGATIONS IMPOSED BY 20 PA.C.S. SECTION 5601.3(B) WITH REGARD TO ANY RIGHT, POWER OR REMEDY GRANTED TO ASSIGNEE IN THIS ASSIGNMENT. THIS WAIVER OF THE PROVISIONS OF 20 PA.C.S. SECTION 5601.3(B) IS GIVEN KNOWINGLY AND VOLUNTARILY BY ASSIGNOR AFTER BEING ADVISED BY COUNSEL OF ASSIGNOR'S CHOOSING, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE WHERE THE OBLIGATIONS SET FORTH IN SAID 20 PA.C.S. SECTION 5601.3(B) WOULD APPLY.**

**[SIGNATURE ON FOLLOWING PAGE]**

*[signature page to Assignment of Leases, Rents and Profits]*

IN WITNESS WHEREOF, Assignor has duly executed this Assignment as of the day and year first above written.

                                         1700 MURRAY AVENUE LLC, a Pennsylvania limited liability company

WITNESS:                                By:    LA PITT LLC, a Pennsylvania limited liability company and the sole Manager of 1700 Murray Avenue LLC

By: _____
Avery Hager, Member

By: _____
Ahron Freilich, Member

-8-

STATE OF <u>California</u>  )
                           )  SS:
COUNTY OF <u>Los Angeles</u> )

On this <u>16</u> day of May, 2019, before me, a Notary Public, the undersigned officer, personally appeared **AVERY HAGER**, a Member of **LA PITT LLC**, a Pennsylvania limited liability company and the sole Manager of **1700 MURRAY AVENUE LLC**, a Pennsylvania limited liability company, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained as a Member of **LA PITT LLC** on behalf of and as the sole Manager of **1700 MURRAY AVENUE LLC**.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

<u>Chul Woo Lee</u>
Notary Public

MY COMMISSION EXPIRES: <u>Dec - 16 - 2022</u>



CHUL WOO LEE
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMMISSION # 2271313
MY COMM. EXPIRES DEC. 16, 2022

COMMONWEALTH OF PENNSYLVANIA   )
                               )  SS:
COUNTY OF ALLEGHENY            )

On this 17th day of May, 2019, before me, a Notary Public, the undersigned officer, personally appeared **AHRON FREILICH**, a Member of **LA PITT LLC**, a Pennsylvania limited liability company and the sole Manager of **1700 MURRAY AVENUE LLC**, a Pennsylvania limited liability company, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained as a Member of **LA PITT LLC** on behalf of and as the sole Manager of **1700 MURRAY AVENUE LLC**.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

MY COMMISSION EXPIRES:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nicholas A. Didomenico, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Feb. 3, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

-10-

## EXHIBIT "A"

## Legal Description

ALL THAT CERTAIN lot or piece of ground situate in 14th Ward of the City of Pittsburgh, County of Allegheny and Commonwealth of Pennsylvania, being part of Lot Nos. 1 and 2 of the Wightman Place Plan of Lots recorded in the Department of Real Estate Office of Allegheny County, Pennsylvania, in Plan Book Volume 16, Page 166, and being Lot No. 1 in the Revised Wightman Place Plan No. 1 recorded in the Department of Real Estate Office of Allegheny County, Pennsylvania, in Plan Book Volume 142, Page 9, together being more particularly bounded and described as follows, to-wit:

BEGINNING at the former intersection of the Westerly right of way line of Murray Avenue (60.07 feet right of way) and the Southerly right of way line of Forbes Avenue (60.07 feet right of way) (erroneously stated as 60.00 feet right of way in prior deed); thence along said former Westerly (erroneously stated as West in prior deed) right of way line of Murray Avenue, South 00 degrees 54 minutes 00 seconds West, a distance of 14.41 feet to a point, the true point of beginning; thence continuing along said Westerly right of way line of Murray Avenue, South 00 degrees 54 minutes 00 seconds West, a distance of 185.98 feet to a point; thence leaving said Westerly (erroneously stated as West in prior deed) right of way line of Murray Avenue and along the Northern property line of lands now or formerly of Alvin and Geraldine Barone, North 86 degrees 47 minutes 00 seconds West, a distance of 97.55 feet to a point on the Easterly property line of lands now or formerly of the Jewish Community Center; thence along said Eastern property line of lands now or formerly of the Jewish Community Center, North 00 degrees 02 minutes 30 seconds East, a distance of 40.73 feet to a point, said point being the Northeastern corner of Parcel "A" of the Revised Wightman Place Plan No. 1, recorded in Plan Book Volume 142, Page 9, and being the Northeastern corner of lands now or formerly of the Jewish Community Center; thence along said line of lands now or formerly of the Jewish Community Center, North 89 degrees 06 minutes 00 seconds West, a distance of 53.51 feet to a point on the Easterly property line of lands now or formerly of Irene Kauffman Settlement; thence along said lands now or formerly of Irene Kauffman Settlement, North 03 degrees 13 minutes 00 seconds East, a distance of 161.72 feet to a point on the Southerly right of way line of Forbes Avenue; thence along said Southerly right of way line of Forbes Avenue, South 86 degrees 47 minutes 00 seconds East, a distance of 130.76 feet to a point; thence leaving said Southerly right of way line of Forbes Avenue by a curve to the right having a radius of 15.00 feet, an arc distance of 22.96 (erroneously stated as 23.00 in prior deed) feet to a point on the Westerly right of way line of Murray Avenue, said point being the true point of BEGINNING.

The within legal description is made in accordance with that certain Survey prepared by Keith S. Stephenson, Registered Professional Land Surveyor, Stephenson Surveying, Inc. dated January 29, 2003 and Bearing Job No. SU-034644-E.

BLOCK AND LOTS 86-L-13 and 86-L-111