**EXHIBIT A**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

AMERISERV FINANCIAL BANK,                    CIVIL DIVISION

        Plaintiff,                                        NO.:  GD-24-003188

vs.

1700 MURRAY AVENUE LLC,

        Defendant.

## ORDER APPOINTING RECEIVER

AND NOW, this _20th_ day of _January_ 2025, upon consideration of the Motion for Appointment of Receiver (the "**Motion**") filed by Plaintiff AmeriServ Financial Bank ("**AmeriServ**" or "**Plaintiff**"), the consent of Defendant by way of contractual agreement, and it appearing that Plaintiff is entitled to the appointment of a receiver, *inter alia*, as a matter of law and equity, and after conducting a hearing or providing the parties with an opportunity for a hearing, and considering such other submissions as the Court deemed appropriate in the circumstances; the Court finding that due, proper and adequate notice has been given to, or been waived by, the Defendant; and good cause having been shown; it is hereby ORDERED, ADJUDGED and DECREED that the Motion is GRANTED in its entirety and it is FURTHER ORDERED as follows:

A.    **FINDINGS OF FACT**

    1.    Defendant 1700 Murray Avenue LLC ("Defendant") is in default of the Loan, Notes, Modifications, Loan Agreement and Mortgage, which default is material and continuing.

    2.    Defendant has contractually agreed to the appointment of a receiver for the Mortgaged Premises following a default under the Loan.

3.      The preservation and value of the Mortgaged Property is at risk of decline and deterioration.

4.      The appointment of a receiver for Defendant is necessary to preserve and maintain the value of the Mortgaged Property and to market the Mortgaged Property for lease or sale.

5.      The appointment of Michael Ella RES, through its principal Martin Perry, as the receiver (the "**Receiver**") for Mortgaged Property is appropriate to protect, preserve and market the Mortgaged Property for the protection and benefit of Defendant's creditors.

## B.   <u>APPOINTMENT OF RECEIVER</u>

6.      Effective as of _10:00_ a.m. on _January 29 2025_, 2025 (the "**Effective Date**"), the Receiver is hereby appointed as the receiver for the Mortgaged Property for a period commencing on the Effective Date and ending upon termination of such appointment by further Order of Court.

7.      The Receiver is appointed for the purpose of managing, protecting, preserving, operating and liquidating the Mortgaged Property at 1700-1710 Murray Avenue, Pittsburgh, PA 15217 and 1712-1714 Murray Avenue, Pittsburgh, PA 15217, including Defendant's personal property located thereon, such as Defendant's equipment, fixtures, general intangibles, bills and accounts receivable, cash on hand and in banks (subject to any setoff rights in favor of Plaintiff), all leases, contracts, rights, insurance policies (including, but not limited to, property, liability, errors and omissions, directors and officers liability, crime, theft, and other policies of insurance, hereafter "Claim Policies"), claims, tort claims, causes of action (including, but not limited to, all claims, rights, and coverage available under any claim policies or other applicable insurance policy, indemnity agreement, insured contract, fidelity bond, or similar arrangement to pay,

reimburse, or defend any loss, direct loss, damages, punitive damages, defense costs, investigative costs, liability, or similar sums), escrow accounts, escrow arrangements or agreements, intangibles, licenses, permits, patents, trademarks and names, copyrights, corporate franchises, and its income and profits, books of accounts, records and other books, papers and accounts, deeds, muniments of title, and all interests, easements, privileges, rights and assets of every kind and whatever nature and wherever located (the Mortgaged Property and all personal property of the Defendant located thereon, collectively referred to as the "**Mortgaged Assets**") for the benefit and protection of Plaintiff and for the benefit of all creditors of Defendant, but without any duty to create equity or otherwise represent the interests of any equity holders.

8.      The Receiver is hereby granted and vested with all powers necessary to carry out such purposes. The Receiver's responsibilities include, but are not limited to, oversight of all aspects of the management, operation and, if deemed appropriate, orderly liquidation of Defendant's Mortgaged Assets. In carrying out its duties hereunder, the Receiver is authorized to provide management and operational services consistent with property management practices for properties of comparable type, class, age and condition in the greater Pittsburgh market without further court order.

## C.      DUTIES OF RECEIVER

9.      Without limiting the generality of the foregoing, the Receiver is granted the power and duty to immediately take exclusive possession of all the Mortgaged Assets.

10.      The Receiver shall serve without bond, provided that the Receiver will well and truly perform its duties and shall abide by and perform all the things that it shall be required to do under this Order.

11.     The Receiver will be compensated in the form (i) a fixed monthly property management fee of $750.00, plus (ii) $175.00 per hour for receivership duties, including but not limited to reporting activities.    The Receiver shall be reimbursed for reasonable expenses incurred in the performance of the Receiver's duties, including reasonable attorneys' fees, travel, courier, bank & accounting fees, express mail and any extraordinary expenses associated with the property management and receivership duties.    The Receiver and any professionals, independent contractors or agents employed by the Receiver will furnish Plaintiff and Defendant with copies of their invoices for services rendered and costs incurred on a quarterly basis or such other time frames as Plaintiff and the Receiver may agree.    The Receiver shall be paid its compensation from the Rents (as defined herein) collected by Plaintiff under Plaintiff's Assignment of Rents, upon Receiver's request to Plaintiff for the payment of any such amounts. The Receiver's compensation shall not preclude the Receiver from receiving such additional compensation as may be approved by the Court, or agreed between the Receiver and Plaintiff in the event the Receiver or any affiliate of the Receiver is retained to perform and does perform additional services in connection with the Mortgaged Assets.

12.     In addition to the compensation set forth herein above, the Broker, as defined herein, shall be entitled to a brokerage fee on the sale of the Mortgaged Property equal to 3.5% of the gross purchase price, and a leasing fee upon the execution of any lease renewal equal to 2.0% of base rental, including any fixed escalations to the base annual rent, and equal to 4.0% of base rental, including any fixed escalations to the base annual rent, for new leases.  If a co-broker is involved in either a sale or lease, the aforementioned commissions shall be increased by 1.5%. If a commission is earned hereunder, any property management fees paid in connection with the

receivership paid by the rents received by Plaintiff, up to the amount of $10,000.00, shall be

repaid to Plaintiff, prior to the commission being paid.

13.     The Receiver, following consultation and approval of the Plaintiff, is authorized

to retain independent legal counsel to represent the Receiver generally in the Receivership

including, without limitation, in dealing with the tenants, in reporting to and appearing before

this Court, and as necessary in dealing with the parties to the action. Legal fees and costs

reasonably incurred by the Receiver in performance of its duties shall be an expense of the

Mortgaged Property.

14.     The Receiver is authorized to conduct investigations of, and analyses concerning,

the operation of the Mortgaged Property and to assume responsibility for all leasing,

management and operational functions at the Mortgaged Property including, but not limited to,

the letting or re-letting of space and/or the making of disbursements as may be appropriate and in

accordance with Plaintiff's Loan of any monies generated from the Mortgaged Property, with

authority to undertake repairs and to hire and/or dismiss personnel as may be required in order to

efficiently operate the Mortgaged Property and to maintain its value.  Without limiting the

generality of the foregoing, Receiver is granted the following specific authority, powers and

responsibilities:

      a.  To take immediate and exclusive possession and control of the Mortgaged
Property and Mortgaged Assets, including, but not limited to, all: real and
personal property related to same; operating accounts and accounts receivable;
records; furniture; appliances; keys; access keys and cards; building access
cards; computer systems, with access information, if any, to operate the
systems of the building (i.e. security system; communication systems; HVAC
control systems, etc.); correspondence; cash; credit and charge card
documents; leases; vending machines; common areas, restrooms, and lobbies;
conference rooms; event spaces; audio/video equipment; utility rights and
deposits; contract deposits; tenant security deposits; insurance policies;
payment and performance bonds; licenses; permits; orders; books; inventory
of parts; and such other property, real or personal, which may in any way

relate to the operation of the Mortgaged Property.  Defendant and its agents shall transfer possession of all such property and information to Receiver and is prohibited from removing any and all personal property from the Mortgaged Property.

b.  To continue to maintain and utilize Defendant's existing bank accounts and/or maintain one or more additional bank accounts in Defendant's name and using the Defendant's Tax Identification Numbers, as Receiver for the deposit of revenues and funds of the receivership estate and from which it may make disbursements for the costs and expenses of the receivership estate.

c.  To take immediate possession and control of all of Defendant's right, title and interest in and to all proceeds from any claims made or to be made under any property, casualty and other insurance policies that either Defendant maintains with respect to the Mortgaged Property ("Policies"), as well as the right to act on behalf of the named insured under the Policies, to settle and compromise any such claims made or to be made with respect thereto.

d.  To take immediate possession and control of all of Defendant's right, title and interest, if any, in and to any uncollected receivables pertaining to the Mortgaged Property, including, but not limited to, any and all recoveries, awards, and other payments in connection with any litigation with respect to the Mortgaged Property.

e.  To take immediate possession and control of any and all of Defendant's agreements with contractors, plans and specifications, cost estimates, reports, permits, licenses, certificates of occupancy, development rights, warranties, guaranties, telephone exchanges, trademarks, the name of the Mortgaged Property, and any intangible rights, relating to the Mortgaged Property, along with any other agreements with third parties relating to the Mortgaged Property.

f.  To review all the books and records of the Mortgaged Property.

g.  To operate, maintain, manage, protect, repair and otherwise control the Mortgaged Property and to perform ordinary and necessary repairs, maintenance and improvements to the Mortgaged Property.

h.  To staff the Mortgaged Property for operation, management, maintenance and security and to retain, hire and terminate facility management and other personnel or staff (with no obligation for pre-receivership payroll liabilities including but not limited to accrued vacation, sick time, etc.), or hire or terminate personnel on a contract basis, as necessary to operate, manage, maintain, repair and protect the Mortgaged Property.

i.  To obtain, maintain, make, perform, enforce, modify, cancel or terminate any contracts for services related to the operation, management, maintenance,

repair, lease, sale, and protection of the Mortgaged Property as the Receiver may reasonably deem necessary.

j.  Following consultation and approval of the Plaintiff, to hire any professionals necessary for the carrying out of Receiver's duties under this Order.

k.  To collect and hold in a separate account all tenant security deposits.

l.  To request that Plaintiff allow, in Plaintiff's sole discretion, access to and use of rental proceeds collected by Plaintiff pursuant to its Assignment of Rents, to pay necessary expenses and bills related to the operation of the Mortgaged Property, on a going forward basis including, but not limited to, property taxes and insurance, utilities, payroll and related taxes, and management fees; and, to use any pay any and all other outstanding obligations to vendors incurred in arm's length transactions who prior to the entry of this Order supplied services or materials for the benefit of the Mortgaged Property, but only to the extent the Receiver shall determine, in its sole judgment, that it is prudent to do so in order to maintain the business relationships with such suppliers for the benefit of the preservation of the Mortgaged Property, with all such funds so advanced by Plaintiff to be added to Defendant's indebtedness to Plaintiff and to be secured by the Plaintiff's Loan and Mortgage, with interest to accrue and be paid upon all such monies so advanced at the rate set forth in the Loan and all such monies so advanced, including interest thereon, shall be secured by the Mortgage.

m.  To market and lease the space at the Mortgaged Property, including through and with the services of a Broker.

n.  To enter into marketing, advertising, and similar agreements for the benefit of the Mortgaged Property.

o.  to negotiate and facilitate the sale or other disposition of the Mortgaged Assets and to do all acts and things necessary or advisable in connection with such sale or disposition, which sales shall be subject to Plaintiff's and the Court's approval.

p.  To endorse any and all checks that Receiver may receive that are payable to either Defendant and which represent payment of amounts due and owing in connection with the operation of the Mortgaged Property.

q.  To purchase inventory, operating supplies, equipment and personal property in connection with the operation of the Mortgaged Property.

r.  To enter into leases for equipment or personal property for use at the Mortgaged Property.

s.  To enforce contract and/or agreements already in existence which in any way relate to the Mortgaged Property.

t.  To maintain such licenses, certifications and permits currently in effect through the term of this receivership and/or to apply for, obtain and renew as necessary all licenses, certifications and permits required for the operation of the Mortgaged Property.

u.  With respect to any operation or activity that is now conducted on the Mortgaged Property, and that may lawfully be conducted only upon governmental license or permit, to continue such operation or activity under the licenses or permits issued to either Defendant or its agents subject to compliance with the terms thereof.

v.  To institute such legal actions as the Receiver deems necessary to preserve and protect the Mortgaged Property, the interests of the tenants of the Mortgaged Property, and the interests of the Plaintiff in the Mortgaged Property, including, but not limited to, collecting accounts and debts, and enforcing leases and other agreements relating to the Mortgaged Property, and to recover possession of the Mortgaged Property from persons who may now or in the future be wrongfully occupying or possessing the Mortgaged Property or any part thereof.

w.  To secure such monies as Plaintiff may be willing (but shall not be obligated) to advance for the preservation and maintenance of the Mortgaged Property, including current costs of repairs and general maintenance, security, utilities, insurance and other necessary services, with all such funds so advanced by Plaintiff to be added to Defendant's indebtedness to Plaintiff and to be secured by the Plaintiff's Loan and Mortgage, with interest to accrue and be paid upon all such monies so advanced at the rate set forth in the Loan and all such monies so advanced, including interest thereon, shall be secured by the Mortgage.  All such monies advanced for the preservation and maintenance of the Mortgaged Property, together with interest thereon, shall be repaid, to the extent feasible, from the operating revenues or sale of the Mortgaged Property whether such operating revenues are generated before, during or after the receivership. In no event shall the Receiver be required to advance funds for any expense of the Mortgaged Property.

x.  To open new accounts with, or negotiate, compromise or otherwise settle Defendant's existing obligations to, utility companies or other service providers or suppliers of goods and services to the Mortgaged Property and to otherwise enter into such agreements, contracts or understandings with such utility companies or other service providers or suppliers as are necessary to maintain, preserve and protect the Mortgaged Property.  The Receiver shall not be responsible for payment of any real property taxes, utility bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by Defendant for the benefit of the Mortgaged Property prior to the receivership. however, the Receiver may pay any expenses if the Receiver deems such payment beneficial to the operation of the Mortgaged Property.

y.  To take any other actions that are customary, necessary, and/or appropriate to be performed by a receiver appointed for similar commercial properties in Allegheny County, Pennsylvania.

z.  To take any and all action to which Defendant would be entitled in connection with any tax assessment appeal relating to the Mortgaged Property ("Tax Appeal"), including without limitation, to communicate directly with counsel retained by Defendant in connection therewith any Tax Appeal, to direct strategy relating to any Tax Appeal, and to direct the settlement of any Tax Appeal.

aa. To apply to this Court for further directions and for such further powers as may be necessary to enable the Receiver to fulfill its duties.

15.     All rents, issues, profits, revenues, income or other payments which are now or hereafter become due (collectively, the "Rents") with respect to all or any portion of the Mortgaged Property whether pursuant to oral or written leases or any letting of possession or agreement for the use or occupancy of any part of the Mortgaged Property (collectively, the "Leases") shall continue to be remitted by the tenants or other entities occupying the Mortgaged Property directly to the Plaintiff pursuant to its Assignment of Rents.  However, pursuant to the terms of this Order, Plaintiff shall utilize the Rents to pay the Receiver's compensation and may make any such Rents available to the Receiver, as requested, in connection with the Receiver's performance of its duties hereunder.

16.     The Defendant and its agents, servants and employees, will immediately turn over to the Receiver all books, records, accounts, operating statements, reserve accounts and the like pertaining to the Defendant's operations with regard to the Mortgaged Assets from the date they acquired an ownership interest in the Mortgaged Assets to the date of this Order regardless of where the same may be located and any and all receipts, rents or profits from the Mortgaged Assets now or hereafter in the custody or control of the Defendant or its agents, servants or employees, including explicitly by way of example and not limitation: (a) bank accounts, (b) all

bank statements related to the Defendant and/or the Mortgaged Assets; and (c) financial and operating information for the Mortgaged Assets.

17. Subject to the rights and interests and for the benefit of Plaintiff, the Receiver is authorized and directed to, including with the assistance of a Broker, solicit buyers and other interested parties for the Mortgaged Property and Mortgaged Assets as the Receiver and the Broker deem appropriate for the purposes of, subject to Court approval, selling and otherwise disposing of the Mortgaged Property and Mortgaged Assets in a commercially reasonable manner and to request that Plaintiff solicit such buyers and parties, and Plaintiff may rely on this Order as authorization to proceed with such solicitation if so requested by the Receiver.

18. The Receiver is authorized to utilize Newmark or any other brokerage service as the exclusive leasing agent for the Mortgaged Property and to market the Mortgaged Property for lease or sale ("Broker") and complete a sale transaction, so long as any sale transaction is approved by Plaintiff on terms and conditions acceptable to Plaintiff, and provided such sale is approved by the Court.  In connection with the marketing and sale of the Mortgaged Property:

 a. The Receiver is authorized and directed to cause the Mortgaged Property, in whole or in part, to be listed for sale at any price the Receiver determines, in the exercise of its business judgment, to be an appropriate list price.

 b. The Receiver is authorized to assist in marketing the Mortgaged Property for sale.  The Receiver shall prepare marketing reports not less than quarterly which shall be provided to Plaintiff.

 c. The Receiver is authorized and directed to negotiate proposed sale terms with a buyer(s) for the Mortgaged Property.

 d. If the Receiver reaches an agreement with a buyer of the Mortgaged Property and Plaintiff consents to the terms and conditions of such sale, the Receiver shall file a motion with the Court for the approval of such sale.

 e. Upon approval of a sale of the Mortgaged Property pursuant to the terms of this Order and/or any further order of Court, Defendant shall cooperate with Plaintiff and the Receiver to execute such documents to evidence the transfer as may be reasonably requested in order to convey clear insurable title of the

Mortgaged Property, including, without limitation, a deed of transfer for all real and personal property, as applicable.

19.    Subject to the rights and interests and for the benefit of Plaintiff, the Receiver is authorized and directed to remit any proceeds of the operation and/or from the sale of the Mortgaged Assets to Plaintiff and other creditors in accordance with their priority.

20.    Any and all monies paid or advanced by Plaintiff, in its sole discretion, pursuant to this Order, shall be deemed advances under and governed and secured by the Loan, the Security Agreement, the Mortgage, and this Order of Court, by which Plaintiff is and shall continue to be secured by a first priority lien on the Mortgaged Assets and all other collateral agreements, instruments or documents evidencing, securing or otherwise delivered in connection with the foregoing. Notwithstanding any provision in this Order, Plaintiff is and will continue to be secured by the Mortgaged Assets to the same extent, validity and priority it was prior to the Effective Date (as defined herein).  The Receiver is authorized to execute any documents or instruments that may be appropriate or necessary therefor.  This provision is in addition to, and not in lieu of, Plaintiff's rights to make protective advances as Plaintiff deems appropriate pursuant to the Loan, the Security Agreement, and the Mortgage.  Plaintiff shall have no obligation to make any advances, any loans or credit accommodations to the Receiver.  Any protective advances, or monies, or costs and expenses advanced by Plaintiff in connection herewith, including for the preservation and maintenance of the Property shall be obligations that are secured by the Mortgage.  The Receiver shall not, without Plaintiff's prior written consent, make any single expenditure for the repair, maintenance, remodeling or other improvement to the Mortgaged Property, exceeding $3,000.00.

21.    In order to exercise the authority conferred upon it by this Order, and subject to the limitations contained within this Order, the Receiver is hereby vested with the standing and

all power and authority of, but without the liability of or associated with, or obligation to act as

the manager of Defendant as the Receiver deems necessary for the operation and management of

the Mortgaged Assets, including, but not limited to, the power and authority to (i) settle claims

that can be or have been asserted by or against the Defendant; (ii) execute documents,

instruments and resolutions in connection with any authorized sale or finance transaction, and

(iii) have and obtain access to Defendant's records, reports and communications and other work

product related to the ordinary course of Defendant's business.

22.    The Receiver is authorized in its discretion to employ, fix and pay the

compensation, salaries and wages of all managers, agents, employees, servants and contractors

for Defendant as may be advisable or necessary in its judgment for the operation, management,

conduct, control, leasing, sale or custody of the affairs of the Mortgaged Assets.

23.    The Receiver or its designee shall keep a true and accurate account of any and all

receipts and expenditures and shall, within three (3) months after the Effective Date, and at such

regular intervals of three (3) months thereafter until discharged, file reports of Receiver's receipts

and expenditures and of Receiver's acts and transactions in Receiver's official capacity.

24.    All sale proceeds, rents, issues, profits, revenues, income or other payments that

are now or hereafter become due (hereinafter, collectively, the "Accounts") with respect to all or

any portion of the Mortgaged Assets, whether pursuant to oral or written agreements, shall be

remitted by the tenants directly to the Plaintiff, with such proceeds being utilized to pay the

Receiver its compensation and, in Plaintiff's discretion, made available to the Receiver for the

payment of necessary expenses related to preservation and protection of the Mortgaged Assets,

with all such amounts being added to the Loan and secured by the Mortgage and Mortgaged

Assets.

25.     The Receiver may obtain liability insurance to protect itself in carrying out its duties hereunder with a policy limit acceptable to Plaintiff, and the premium therefor shall be paid from the Mortgaged Assets or rents collected by Plaintiff.

26.     The Receiver shall ensure that existing insurance coverage for the Mortgaged Assets remain in force until the expiration of the current paid up term under such policy or policies and that Plaintiff remains a loss payee and additional insured under such policy or policies. The Receiver shall notify the insurance carriers immediately of the appointment of the Receiver under this Order and request that the Receiver be added to the insurance policy or policies as an additional insured there under. Upon the expiration of the paid-up portion on such policy or policies, the Receiver shall have the responsibility for keeping the Mortgaged Assets insured and may as an option keep in force the existing insurance coverages or obtain new coverages for the Mortgaged Assets, each of which coverages shall name the Receiver as an additional insured there under and Plaintiff as an additional insured and loss payee.

27.     The Receiver is entitled to rely on all outstanding rules of law, court orders and any future court orders and shall not be liable to anyone for its own good faith compliance with any order, rule, law, judgment or decree. In no event shall the Receiver be personally liable for the debts or obligations of the Defendant or be liable to anyone for good faith compliance with its duties and responsibilities, nor shall the Receiver, its employees, agents or advisors be liable to anyone for any actions taken or omitted by the Receiver, except upon a finding by this Court that the Receiver or its designee acted or failed to act as a result of malfeasance, bad faith, gross negligence or reckless disregard of its duties.

28.     Defendant, its directors, managers, members, partners, officers, agents, employees or other representatives, as the case may be, under this Order are hereby directed to use their best

efforts to ensure a smooth transition of the operation of the Mortgaged Assets to the Receiver or

its designee, and Defendant shall cooperate with the Receiver or its designee in consummating

such transition.

29.     The Receiver shall not be bound or personally liable for any or all contracts,

agreements, understandings or other commitments Defendant had, or may have with third parties

with respect to Defendant's business operations or the Mortgaged Assets, whether oral or

written. The Receiver may, by an affirmative written ratification executed by the Receiver, agree

to become bound to any such contracts, agreements, understandings or other commitments or

may agree to enter into any new or amended contracts, agreements, understandings or other

commitments. Nothing in this Order constitutes or shall be construed to constitute an assumption

of any of the leases, contracts or agreements currently existing with respect to Defendant's

business operations of the Mortgaged Assets by the Receiver or a waiver by the Receiver of any

default under any such lease, contract or agreement.

30.     Except as otherwise stated herein, all affiliates, directors, managers, members,

equity owners, creditors, and all other persons and parties in interest, and all others acting on

behalf of any such person or party in interest, including any federal, state or local agency or

authority, sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys,

are enjoined from:

> a.      Commencing, prosecuting, continuing or enforcing any suit
> or proceeding in law, equity, bankruptcy, or otherwise
> against or affecting the Mortgaged Assets without first
> obtaining leave of this Court, except that such actions may
> be filed to toll any statutes of limitations;

> b.      Using self-help or executing or issuing or causing the
> execution or issuance of any court attachment, subpoena,
> warrant, replevin, execution, writ or other process for the
> purpose of impounding or taking possession of or

interfering with or creating or enforcing a lien upon any portion of the Mortgaged Assets, wherever situated;

c. Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement or any document otherwise affecting the Property;

d. Doing any act to interfere with the taking control, possession, or management, by the Receiver, of any portion of the Mortgaged Assets or to interfere in any manner with the exclusive jurisdiction of this Court over the Mortgaged Assets;

e. Engaging in any act to create, perfect, or enforce any lien against the Mortgaged Assets, unless specifically authorized by order of this Court; and

f. Engaging in any act to collect, assess, or recover a claim against the Mortgaged Assets that arose before the appointment of the Receiver.

31.    Notwithstanding anything to the contrary contained in this Order (a) Plaintiff is not enjoined from pursuing a sale of the Mortgaged Assets, and the Receiver is permitted, subject to accounting to the Court, to remit any and all Mortgaged Assets' proceeds to Plaintiff; and (b) nothing herein is intended to interfere with any pending or future criminal investigation or proceeding or other exercise of the police power by any federal, state or local agency or authority against the Defendant except for the protection and preservation of the Mortgaged Assets provided by this Order.

32.    Notwithstanding anything to the contrary contained in this Order, nothing herein shall alter, modify, subordinate, or impair any existing rights, interests, or remedies of Plaintiff, whether now or in the future available under any loan documents, at law or in equity, including, but not limited to, any right of offset with respect to any funds now or in the future on deposit or otherwise in the possession of Plaintiff or any of its affiliates.

33.    The Receiver shall within thirty (30) days of the date of this Order file a list of all creditors of the Defendant which are reasonably known to the Receiver, including any party which has recorded a lien or judgment against the Defendant, and shall provide notice to each such creditor by regular U.S. mail of the appointment of the Receiver with a copy of this Order. The Receiver shall also provide such notice to any additional creditors which later become known to the Receiver, as soon as is practicable following the existence of such creditor becoming known to the Receiver.

34.    Neither the Receiver nor Plaintiff shall have any personal liability for any environmental liabilities arising out of or relating to Defendant or Defendant's business or the Mortgaged Assets.

35.    Receiver will have no duty or obligation to prepare and/or file any tax returns or pay any taxes of the Defendant that are or may become due, including *inter alia*, income tax returns, sales tax returns and or payroll related returns. Receiver shall have no obligation to manage, fund, oversee or account for any retirement, pension, 401k, health insurance or other employee benefit plan, qualified or unqualified for any current or former employee, officer or agent of the Defendant.

36.    Defendant is hereby directed to use their best efforts to insure a smooth transition of the leasing, management and operation of the Mortgaged Property to the Receiver. In connection therewith, Defendant and its respective agents, employees or other representatives are hereby directed as follows:

   a.  To immediately vacate and surrender the Mortgaged Property to the Receiver;

   b.  To turn over copies of all leases to Receiver, tenant contact information and copies of communications concerning tenants and leases;

   c.  To turn over all Rents in their possession to Receiver;

    d.  To turn over all tenant security deposits to Receiver;

    e.  To turn over to Receiver all books, records, contracts, agreements, files, computers and access to all financial, services, utility, marketing, brokering, and other information relating to the Mortgaged Property, including information maintained electronically, software, and access codes, and any other property necessary for the Receiver to fulfill its duties hereunder;

    f.  To permit Receiver access to information necessary for Receiver to manage and operate the Mortgaged Property;

    g.  To execute and deliver the Receiver any documents reasonably requested by the Receiver, including, without limitation, a W-9 Form or FEIN number, necessary for the Receiver to administer bank accounts containing revenues from the Mortgaged Property;

    h.  To turn over all documents relating to any Tax Appeal; and

    i.  To cooperate with and assist the Receiver in carrying out his duties hereunder and to comply with reasonable requests of the Receiver's in furtherance of Receiver's duties hereunder.

37.    The Defendant and its agents, employees or other representatives are hereby enjoined from interfering in any manner with the Receiver's leasing, operation or management of the Mortgaged Property.

38.    No lien, claim, or other security interest in the Mortgaged Property shall be affected by this Order, nor shall the appointment of the Receiver or any provision of this Order impair the Plaintiff's rights and remedies under the Loan and related loan documents including, without limitation, Plaintiff's right to proceed with foreclosure of the Mortgaged Property or any sale of the subject Mortgage, Note and other loan documents.

39.    Nothing herein shall be deemed to preclude Plaintiff from inquiring in any discovery regarding Defendants, or their respective agents', employees' or other representatives', operation of the Mortgaged Property and the whereabouts of any and all accounts and documents including, but not limited to, leases, rent rolls, and books of account relating to the Mortgaged Property.

40.     The Receiver shall not be bound by all or any contracts, agreements, understandings or other commitments that Defendant had, has or may have with third parties, whether oral or written.  The Receiver may, by an affirmative written ratification executed by the Receiver and Plaintiff's written approval, agree to become bound by any such contracts, agreements, understandings or other commitments or may agree to enter into any new or amended contracts, agreements, understandings or other commitments.  Nothing in this Order constitutes, or shall be construed to constitute, an assumption by the Plaintiff or the Receiver of any of the leases or other contracts or agreements currently existing with respect to the Mortgaged Property or Mortgaged Assets or a waiver by the Plaintiff or the Receiver of any defaults under any such leases, contracts or agreements.

41.     Receiver is a receiver of the Mortgaged Property and Mortgaged Assets and shall take actions pursuant to this Order (and any other order of the Court) in his own name, as receiver for the Mortgaged Property and Mortgaged Assets, and not in the name of Plaintiff or Defendant.

42.     Without limiting any other rights or immunities the Receiver may have at law or in equity, the Receiver shall have no liability for acts or omissions made by or on behalf of it in its capacity as the Receiver of the Mortgaged Property and Mortgaged Assets, so long as such acts and omissions are made in good faith and without gross negligence.  Receiver and its employees, agents and attorneys shall have no personal liability in connection with any liabilities, obligations, liens or amounts owed to any of Defendant's creditors because of its duties as Receiver.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with applicable law.

43.     Receiver and its employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders.  No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting the suit or action.

44.     By making this request for the appointment of a receiver, the Plaintiff does not render itself responsible for advancing any funds to the Receiver to meet working capital or other financial needs of the Mortgaged Property.  Plaintiff may, in its sole discretion and without further order of this Court, make available to the Receiver any of the funds currently in Plaintiff's possession, including any Rents received pursuant to its Assignment of Rents during the course of this receivership in any manner it determines is necessary, including for the payment of the Receiver's compensation and expenses (including its counsel's fees and expenses), all of which advances shall be added to the Loan and be secured by the Mortgage and Mortgaged Assets.  If there are not sufficient Rents to pay the Receiver's compensation or any expenses, any funds advanced by Plaintiff for that purpose shall also be added to the indebtedness secured by the Mortgage and Mortgaged Assets.

45.     The appointment of the Receiver pursuant to this Order shall not constitute the existence of a lender in possession of the Mortgaged Property.

46.     Plaintiff may seek to terminate the receivership authorized and created hereby at any time by Motion seeking termination of the receivership.  Within forty-five (45) days of termination of the receivership, the Receiver shall prepare and file a final report (the "Final Report").  Any objections to the Final Report must be filed with the Court and served on the

Receiver, its counsel, Plaintiff's counsel, and all other parties having entered their appearance in

this proceeding within thirty (30) days of the filing of the Final Report.  Any objection to the

Final Report not raised as set forth herein shall be deemed waived.  If no objections are received,

the Final Report will be deemed accepted and approved by the Court.  After the Final Report is

approved, the Receiver shall turn over any excess funds in its possession not used to pay final

bills and expenses of the Receivership to the Plaintiff, unless otherwise directed by the Court.  In

the event the indebtedness due to Plaintiff has been paid in full from funds remitted to Plaintiff,

any excess funds shall be remitted by Plaintiff to Defendant.

47.     Nothing in this Order precludes the Receiver from requesting permission from

this Court to terminate the Court's appointment as the Receiver in this case; provided, however,

that Plaintiff shall have not less than 30 days' notice of the hearing on any such request.

48.     This Court retains jurisdiction to modify the terms of this Order and to expand or

contract the rights, duties, and obligations of the Receiver. The Receiver may apply to this Court

by motion and upon notice to all parties for further or other authority as may be necessary in its

performance of its duties.

49.     Within thirty (30) days of the entry of this Order, Receiver shall cause a copy of

this Order to be served upon all tenants and known creditors and shall keep records of such

service that may be made available to this Court upon request.

50.     The Court shall retain jurisdiction and supervision of all matters concerning the

Receiver, the receivership created hereby and the Mortgaged Assets.

51.    Plaintiff shall notify all creditors and any other interested persons or entities of this Order and shall serve this Order on the same.

BY THE COURT:

_____
J.