<div style="border:1px solid black">

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**BALLARD SPAHR LLP**
Leslie C. Heilman
Laurel D. Roglen
Margaret A. Vesper
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
         roglenl@ballardspahr.com
         vesperm@ballardspahr.com

Michael S. Myers
Sara Shahbazi
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: (424) 204-4354
Facsimile: (424) 204-4350
E-mail: myersm@ballardspahr.com
        shahbazis@ballardspahr.com

*Counsel to MDC Seal Beach, LLC*

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*[1] | Case No. 25-14861 (MBK) |
| Debtors. | (Jointly Administered) |

## LIMITED OBJECTION OF MDC SEAL BEACH, LLC TO NOTICE OF SUCCESSFUL AND BACKUP BIDDERS WITH RESPECT TO THE <u>AUCTION OF CERTAIN OF THE DEBTORS' LEASES</u>

MDC Seal Beach, LLC (the "<u>Landlord</u>"), by and through its undersigned counsel, hereby files

this limited objection (the "<u>Limited Objection</u>") to the *Notice of Successful and Backup Bidders with*

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

*Respect to the Auction of Certain of the Debtors' Leases* [D.I. 1524] (the "Assignment Notice"), which seeks to assume and assign that certain unexpired nonresidential real property lease between Thrifty Payless, Inc. and Landlord to Five Below, Inc. ("Five Below"). In support of the Limited Objection, Landlord respectfully represents as follows:

I.   **BACKGROUND FACTS**

1. On May 5, 2025 (the "Petition Date"), New Rite Aid, LLC and certain of its debtor affiliates (the "Debtors", and each a "Debtor") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of New Jersey (the "Court").[2]

2. The Debtors lease retail space from Landlord pursuant to an unexpired lease of nonresidential real property (the "Lease") located at 12541 Seal Beach Boulevard, Seal Beach, California 92527 (the "Premises"). The Lease is subject to a ground lease with CPT Shops at Rossmoor, LLC ("Ground Lessor").

3. The Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. On May 6, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] (the "Lease Procedures Motion"), seeking approval of procedures authorizing the Debtors to sell or transfer certain unexpired leases and the sale of designation rights by public auction (the "Auction Procedures").

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2

5. On May 9, 2025, the Court entered the *Interim Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 183] (the "Interim Order").

6. On June 11, 2025, the Court entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Final Order").

7. On July 21, 2025, the Debtors conducted an auction with respect to the Lease (the "Auction").

8. On July 22, 2025, the Debtors filed the Assignment Notice indicating their intent to potentially assume and assign the Lease to Five Below, as assignee, under a designation rights agreement with a proposed assumption and assignment date of August 31, 2025. Among other things, the Assignment Notice listed $89,834.36 as the "Cure Costs" for the Lease (the "Debtors' Cure").

9. To date, Landlord has received some adequate assurance information for Five Below, but it has not received notice of whether its Lease will be assumed and assigned to Five Below pursuant to its designation rights agreement and, if so, whether Five Below or some affiliate entity will be the proposed assignee. If an affiliate of Five Below is the proposed assignee—and not Five Below itself—Landlord currently has no adequate assurance information for that entity.

10. Landlord does not object to the assumption and assignment of the Lease to Five Below. However, as of the filing of this Limited Objection, the parties have not yet reconciled and agreed to the cure amounts that must be paid to cure any defaults under the Lease at the time of its assumption and assignment to Five Below. Therefore, Landlord files this Limited Objection to preserve its rights with respect to the asserted cure amounts, including amounts that may have

3

accrued or may be accruing but are not yet billed or due as of the date of any assumption and assignment of the Lease to Five Below. Landlord will continue to work with the Debtors to reconcile and agree to the cure amounts to be paid under the Lease in advance of any approval of the assumption and assignment of the Lease to Five Below.

## II.     CURE OBJECTION

11.    As set forth above, Landlord does not object to the assumption and assignment of the Lease to Five Below, but Landlord does object to any proposed assumption and assignment of the Lease unless and until the Debtors and/or Five Below complies with all of the requirements of Sections 365 of the Bankruptcy Code. The amount set forth in the Assignment Notice to cure the current defaults under the Lease does not reflect all outstanding balances due and owing to Landlord, or account for accruing or accrued, but unbilled charges or obligations that may come due in the future to be paid when due under the Lease.

### A.    The Debtors' Proposed Cure Amounts Do Not Provide for Payment of All Obligations Due and Owing under the Lease.

12.    To assume and assign the Lease, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code, which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee —
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses

4

>   resulting from such default shall be compensated in accordance with
>   the provisions of this paragraph; . . .

11 U.S.C. § 365(b)(1).

13.  Landlord continues to reconcile its cure amount and will provide any discrepancies to Debtor's counsel as soon as possible.

| Landlord | Location | Debtors' Cure | Landlord's Cure[3] |
|---|---|---|---|
| MDC Seal Beach, LLC | Seal Beach, CA | $89,834.36 | TBD |

14.  In addition, the Debtors' proposed cure amounts do not account for accruing but unbilled charges which may come due in the future, and do not take into account any actual pecuniary losses arising from defaults under the Lease that have been incurred by Landlord, such as for attorney's fees, costs and interest. The Debtors' cure must be modified to reflect additional charges owing, and any assumption order must be modified to recognize the liability for accruing charges due under the Lease, to be paid as and when such charges are billed and come due under the Lease, as more set forth herein. Further, any such assumption and assignment of the Landlord's Lease must comply with all the requirements of section 365 of the Bankruptcy Code, including that such assumption and assignment remain subject to all provisions of the Lease.

15.  Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will

---

[3] Unless otherwise indicated, the cure does not include charges that are billed or come due after the filing of the Assignment Notice, including but not limited to August 2025 rent and other charges, any deferral amounts, or charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent Landlord is later billed for any amount due to the Debtors' failure to pay, Landlord reserves the right to amend the Limited Objection to include such amounts. The Debtors must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to payment (and amend this Limited Objection to the extent necessary) for any amounts that come due under the Lease through the later of the date of any cure payment or the effective date of assumption and assignment of the Lease. In addition, unless otherwise indicated, Landlord's cure is exclusive of attorneys' fees, interest and costs that form the basis of the Landlord's actual pecuniary losses. Presently, Landlord estimates that its attorneys' fees incurred to date are in an amount not less than $3,500 under the Lease.

5

promptly cure those defaults, it cannot assume and assign a lease. As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001); *In re Mushroom Transp. Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987). Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Props., Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Bldg. Block Child Care Centers, Inc.*, 234 B.R. 762, 765 (9th Cir. B.A.P. 1999); *accord In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults.") (emphasis in original).

16. In addition to the current outstanding rent and other monthly charges due, and not yet paid under the Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or any assignee, either as cure or when properly billed under the Lease.

i. *Year-end adjustments and reconciliations; Indemnification Obligations*

17. In addition to the rent and related monthly charges due under the Lease, together with attorneys' fees, costs, and interest, there are some charges for which the Debtors bear responsibility under the Lease that either have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods, or will not be known by the Landlord until after the assumption and assignment of the Lease. By way of example, as is typical in modern commercial leases, the Debtors pay fixed minimum rent, along with their pro-rata share of certain "Operating

Expenses" such as utilities, real property taxes, insurance, common area maintenance expenses, ("CAM") HVAC maintenance expenses, and the like. Certain of these charges are estimated prospectively based on budgeted amounts compared to a base year, billed to and paid by the tenant on a monthly basis during the year, and subject to later reconciliation based on actual expenses incurred, typically after year-end.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (*i.e.*, year-end reconciliations and adjustments that accrued in 2024 may not yet have been billed, and such charges that are accruing for 2025 will not be billed until 2026). In other instances, certain charges may be paid in arrears and cannot be calculated (in some cases) until a year or more after year-end.

18.     Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See*, *e.g.*, *In re Rachels Indus., Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990). Accrued obligations that are not yet due, and obligations that are accruing but not yet billed under the Lease are not "defaults" that require cure at the time of assumption but are to be paid when due under the terms of the Lease in the ordinary course.  The Debtors must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to seek payment (and amend this Limited Objection to the extent necessary) from the Debtors or Five Below for any amounts that come due under the Lease, either as cure as of the time of the assignment of the Lease, or when properly billed under the Lease in accordance with its terms. Further, to the extent Landlord is later billed for any amount due to the Debtors' failure to pay,

7

Landlord reserves the right to amend this Limited Objection to include such amounts in the Landlord's Cure as well.

19. Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, accrued, but unbilled, charges are not yet due under the Lease and, therefore, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. Instead accruing but not yet due charges are part of the adequate assurance requirements under the Code. Therefore, in connection with the assumption and assignment of the Lease, in order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), Debtors or Five Below must provide Landlord with adequate assurance that such accrued, but unbilled, obligations will be satisfied when billed in the future, irrespective of the period in which they relate, and Landlord's rights and remedies with respect thereto are reserved.

20. The Debtors and Five Below assume the Lease subject to its terms, and must assume all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease.[4] To the extent that Five Below has not agreed to pay the accrued but unbilled amounts that may be billed under the Lease, the Debtors should be required to reserve 150% of the average of the prior three years adjustments to ensure that there are sufficient funds available to pay these amounts. Any proposed order authorizing the assumption and assignment of the lease should clearly state that the Debtors (or Five Below) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in such order that purports to release the Debtors (or Five Below) of further liability based upon a payment of cure

---

[4] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

8

amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

21. Similarly, the Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any existing claims, which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Again, any assumption and assignment of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption and assignment of the Lease. Nothing in any assumption order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserve its right to pursue such rights irrespective of any resolution of cure amounts herein.

    *ii.*    *Attorneys' fees, costs and interest*

22. Where, as here, there are defaults under the Lease sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play, and Landlord is entitled not only to a cure of any defaults but also compensation for its actual pecuniary losses resulting from such defaults. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. *In re LCO Enters.*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*). The Lease contains provisions for the recovery of attorneys' fees, costs and interest in the event of defaults or to otherwise compel compliance with the terms of the Lease.

9

Bankruptcy courts have held that attorneys' fees incurred in the enforcement of the obligations, covenants and conditions of a lease are proper components of a cure claim, and recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "[T]here is no logical distinction, for purposes of § 365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults."). *Id.* at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.* at 152; *see also In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Props. v. Loews Cineplex Entertainment Corp., et al.*, 2002 WL 5355479, at *9 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Casualty & Surety Co. Of America v. Pac. Gas & Elec.*, 549 U.S. 443, 452-53 (2007).

23. Here, Landlord has incurred attorneys' fees enforcing its rights under the Lease and, pursuant to the Lease, is entitled to recover those attorneys' fees from the Debtors as cure as an obligation under the Lease. Landlord estimates its attorneys' fees and costs through any hearing

on the assumption and assignment of the Lease to be approximately $3,500.  Landlord reserves the right to supplement its response to provide such further attorneys' fees information as may be requested by Debtors, and to amend or reconcile such fees to the actual fees incurred at the time of the assumption and assignment of its Lease.

### B.     The Cure Amount Serves Only as Estimates.

24.     Landlord can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend this Limited Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges to which it is entitled under the Lease as of the time of the filing of this Limited Objection.

### III.     ADEQUATE ASSURANCE

#### A.     The Debtors must demonstrate adequate assurance of future performance to assume and assign the Lease to Five Below.

25.     Landlord continues to engage the Debtors with respect to Five Below's ability to demonstrate adequate assurance of future performance under the Lease and the information provided to date.  Landlord anticipates that the parties will be able to resolve the Landlord's adequate assurance issues informally and without Court intervention, but should the parties be unable to resolve, Landlord hereby files this Limited Objection to identify those issues and reserve their rights to raise any of the issues herein or such other or further objections they may have to Five Below or any related entities or designees in connection with the assignment of the Lease.

26.     The Debtors may not assume and assign the Lease unless they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C.

§ 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See Rachels Indus.*, 109 B.R. at 802; *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

27. As stated, Landlord is still reviewing the adequate assurance information provided by Five Below to determine whether it adequately demonstrates Five Below's ability to perform under the Lease and comply with the Bankruptcy Code requirements. At a minimum, the information provided to date lacks any financial information for the Five Below assignee entity itself, which must be provided to meet its burden under the Bankruptcy Code. Strict proof of the assignee's ability to provide adequate assurance of future performance is demanded.

**B.    Any assumption and assignment must comply with terms of the Lease.**

28. Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

29. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

30. BAPCPA clarified Section 365 to reflect the Congressional intent that Debtors cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3). Section 365(f)(1) does not modify or override Section 365(b). *Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to override the specific protections granted to landlords in Section 365(b)(3)(C)). Any assignment must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance. Landlord currently has no reason to believe that Five Below intends to use the Premises except in strict compliance with its terms, including as to the use and any exclusives. Nonetheless, to the extent that Five Below does not intend to comply with the use or other provisions of the Lease, Landlord reserves its rights to

object to the assumption and assignment of the Lease to Five Below, absent strict compliance with the terms of the Lease.

    **C.**    **Any Sale must not be free and clear of obligations to pay all charges due under the Lease, including unbilled year-end adjustments and reconciliations.**

31.    As noted above, the assignment should not be free and clear of obligations under the Lease, including the obligation to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Lease prior to the assumption and assignment of the Lease, but which have not yet been billed. The Debtors continue to be responsible for all such unbilled charges as they come due under the Lease, and the Debtors, or Five Below, must continue to satisfy all charges due under the Lease, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Lease cannot cut off the Landlord's right to recover unbilled charges that have accrued, or are accruing, under the Lease. If the assignment is not subject to these reconciliation and adjustment claims, it is unlikely that these legitimate lease charges will ever be paid to the Landlord.

32.    In addition, the Lease provides that the Debtors must indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Any order approving the assumption and assignment of the Lease must provide that the assumption and assignment is pursuant to the terms of the Lease, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the

indemnification obligations under the Lease for any such claims that relate to the period prior to any assumption and assignment of the Lease.

33. As noted in this Limited Objection, the parties will need to reconcile and reach an agreement on the cure amounts to be paid to the Landlord upon the assumption and assignment of the Lease, and nothing in the final form of an assumption order should preclude payment of all cure amounts due and owing to Landlord in connection with the assignment of the Lease or seek to cut off obligations for accrued, but not yet due obligations.

D. **An undercapitalized assignee should provide Landlord with Additional Security.**

34. While Five Below may be backed by entities with industry experience and/or who have adequate capital, here, the Assignee entity may be a "Newco", such that the assignee entity itself does not possess such experience or capitalization and, therefore, Five Below needs to provide some type of credit enhancement, such as: (i) a guaranty of future performance from a financially capable parent entity, like Five Below; (ii) a letter or credit; or (iii) a cash security deposit. Where the proposed assignee is a newly formed entity with no financial or operating history, an existing entity with acceptable financing should guaranty the performance of any newly-formed company that seeks an assignment of the Lease consistent with Section 365(l) of the Bankruptcy Code. Pursuant to Section 365(l), a landlord may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Lease in the event that the assignee fails to perform on a going-forward basis. Unless Landlord agrees otherwise, this is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors are seeking approval of an assignee who is a Newco.

E. **Assumption and Assignment Agreement**

35. Landlord also requests that, as a condition to any order approving the assumption and assignment of the Landlord's Lease, that Five Below shall be required to enter into a short

15

form Assumption and Amendment Agreement whereby Five Below shall become directly obligated to Landlord and the provisions of the Lease regarding notice addresses will be modified.

## IV. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

36. To the extent consistent with the limited objections expressed herein, Landlord also joins in the objections of other shopping center lessors to the Debtors' proposed relief.

## V. RESERVATION OF RIGHTS

37. Landlord reserves the right to further object to the proposed assumption and assignment of the Lease once the Lease has been designation for assumption and assignment by Five Below, and based upon any new information provided by Debtors or Five Below, or upon any different relief requested by Debtors.

## VI. CONCLUSION

WHEREFORE, Landlord respectfully requests that the Court enter an order consistent with the foregoing Limited Objection and for such other and further relief as may be just and proper under all of the circumstances.

Date: August 5, 2025                                                    Respectfully Submitted,

*/s/Leslie C. Heilman*
Leslie C. Heilman
Laurel D. Roglen
Margaret A. Vesper
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
         roglenl@ballardspahr.com
         vesperm@ballardspahr.com

-and-

Michael S. Myers
Sara Shahbazi
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: (424) 204-4354
Facsimile: (424) 204-4350
E-mail:  myersm@ballardspahr.com
    shahbazis@ballardspahr.com

*Counsel to MDC Seal Beach, LLC*