<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Robert L. LeHane
Jennifer D. Raviele (admitted *pro hac vice*)
Connie Y. Choe
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897
Email:  rlehane@kelleydrye.com
        jraviele@kelleydrye.com
        cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5900

*Counsel for DS Properties 18 LP*

</td></tr>
</table>

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC | Case Number: 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |
| | Docket No. 1525 |

### OBJECTION OF DS PROPERTIES 18 LP TO NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' LEASES

DS Properties 18 LP ("Landlord"), by and through its undersigned counsel,

Kelley Drye & Warren LLP ("Kelley Drye"), submits this objection (the "Objection") to the

---

[1]     The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of
        Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the
        website      of      Debtors'      proposed      claims      and      noticing      agent      at
        https://restructuring.ra.kroll.com/RiteAid2025/Home-DocketInfo. The location of Debtor New Rite Aid,
        LLC's principal place of business and Debtors' service address in these chapter 11 cases is 200 Newberry
        Commons, Etters, PA 17319.

*Notice of Assumption and Assignment of Certain of the Debtors' Leases* (the "Notice of Assignment").[2]  In support of this Objection, Landlord respectfully states as follows:

## PRELIMINARY STATEMENT

1.        Landlord does not object to the assumption and assignment of its Lease (defined below) to an entity capable of providing adequate assurance of future performance, curing all defaults, and complying with all provisions of the Lease on a go-forward basis. However, Landlord files this Objection to address two issues with the Notice of Assignment: (i) the cure amount for the Lease must include all amounts due and owing under the Lease and must address all non-monetary defaults that must be cured; and (ii) Debtors must provide Landlord with adequate assurance of future performance in connection with assumption of the Lease or with respect to Five Below, Inc. (the "Proposed Assignee") or any other proposed assignee of the Lease.

2.        First, in connection with the potential assumption or assumption and assignment of the Lease, Debtors must be required to pay the cure amounts set forth in the column "Landlord Cure Amount" on **Exhibit A**, attached hereto, plus any additional pecuniary losses suffered by Landlord, including reasonable attorneys' fees.  Debtors must also cure or provide adequate assurance that they, the Proposed Assignee, or any other assignee will cure all non-monetary defaults under the Lease.

3.        Second, to satisfy Debtors' burden under section 365 of the Bankruptcy Code, Debtors must furnish Landlord with sufficient adequate assurance information to determine if any reorganized debtor entity, the Proposed Assignee, or any other assignee, is creditworthy and could be a viable operator of the business.

---

[2]        Docket No. 1525.  Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Notice of Assignment.

4.     Third, as part of adequate assurance of future performance, Debtors, the Proposed Assignee, or any other proposed assignee must satisfy the Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Lease.  Debtors, the Proposed Assignee, or any other proposed assignee must also (i) be required to comply with all contractual obligations to indemnify and hold Landlord harmless with regard to events which occurred before assumption or assumption and assignment, but which were not known to Landlord as of the date of the assumption and assignment, and (ii) continue to timely pay all rent, additional rent, and percentage rent due under the Lease until the Lease is assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code.

5.     Landlord and the Proposed Assignee are currently in discussions regarding the proposed assignment of the Lease. Landlord is hopeful they will be able to consensually resolve all of its concerns, but files this Objection out of an abundance of caution.

## BACKGROUND

### I.      The Lease

6.     Landlord is the owner or affiliate of or managing agent for the owner of the shopping center located at The Marketplace, 9000-A Ming Avenue, Bakersfield, California (the "Shopping Center").

7.     On or about December 18, 1996, Landlord, through its predecessor in interest, Castle & Cooke Commercial-CA, Inc., and Thrifty Payless, Inc. (the "Tenant"), entered into a lease agreement (as amended, modified, and/or supplemented, the "Lease") for approximately 18,313 square feet of retail space in the Shopping Center (the "Leased Premises").[3]  The Leased Premises has been designated by Debtors as Store No. 6195 and is

---

[3]     A copy of the Lease is available to parties in interest upon written request and subject to execution of a confidentiality agreement.

located in a shopping center, as that term is used in section 365(b)(3) of the Bankruptcy Code.

*See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

8.      Under the terms of the Lease, Debtors are required to pay, among other

things, minimum monthly rent and additional rent, consisting of taxes and common area

maintenance obligations.

## II.      The Bankruptcy Cases

9.      On May 5, 2025 (the "Petition Date"), Debtors filed voluntary petitions

for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with

this Court.   Since the Petition Date, Debtors have continued to manage their businesses as

debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10.      On May 6, 2025, Debtors filed their *Motion for Entry of an Order*

*(I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines*

*with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing*

*Notice and Procedures for the Assumption and Assignment of Contracts and Leases,*

*(V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the*

*Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief*

(the "Sale Procedures Motion").[4]   The Sale Procedures Motion sought to establish, among other

things, the process by which Debtors would market and sell leased assets and a timeline for the

bidding and sale process.

11.      On May 7, 2025, the Court entered an order granting the relief requested

in the Sale Procedures Motion (the "Sale Procedures Order").[5]

---

[4]        Docket No. 17.

[5]        Docket No. 142.

12.     On July 3, 2025, Debtors filed their *Notice of Bid Deadline, Potential Auction, and Potential Sale Hearing for Certain Lease Assets* (the "Bid Deadline Notice").[6] The Bid Deadline Notice identified specific leases available for bidding at a potential auction, including the Lease. It also established July 17, 2025 as the deadline for interested parties to submit bids.

13.     On July 18, 2025, Debtors filed their *Notice of Qualified Bids and Virtual Auction* (the "Auction Notice").[7] The Auction Notice included a list of leases that received qualified bids and would proceed to auction, including the Lease. As set forth in the Auction Notice, the auction for the leases with qualified bids was scheduled for July 21, 2025 (the "Auction").

14.     On July 22, 2025, Debtors filed the *Notice of Successful and Backup Bidders with Respect to the Auction of Certain of the Debtors' Leases* (the "Notice of Successful Bidder"),[8] setting forth the results of the Auction. The Notice of Successful Bidder identified Five Below, Inc. as the successful bidder for the Lease.

15.     On that same date, Debtors filed the Notice of Assignment, which included Debtors' proposed cure amount for the Lease, as set forth on **Exhibit A**, attached hereto, in the column "Debtor Cure Amount."

## OBJECTION

### I.    Debtors Must Provide Evidence of Adequate Assurance of Future Performance Under the Lease

16.     In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form

---

[6]    Docket No. 1320.

[7]    Docket No. 1498.

[8]    Docket No. 1524.

of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d at 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

17.    Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
>
> (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

18.    In connection with the assumption and assignment of a shopping center lease, adequate assurance of future performance includes adequate assurance:

> (A)    of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor… as of the time the debtor became the lessee under the lease;
>
> (B)    that any percentage rent due under such lease will not decline substantially;

(C)      that assumption or assignment of such lease is *subject to all the provisions thereof*, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and *will not breach any such provision contained in any other lease, financing agreement, or master agreement related to such shopping center*; and

(D)      that assumption or assignment of such lease *will not disrupt any tenant mix or balance in such shopping center*.

11 U.S.C. § 365(b)(3) (emphasis added).

19.      Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Lease. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

20.      To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Landlord and its attorneys must receive the following information from the Proposed Assignee and any other proposed assignee of the Lease (collectively, the "Adequate Assurance Information"):

a.      The exact name of the entity that will be designated as the proposed assignee of the Lease and any guarantor;

b.      Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2023, 2024, and 2025 for the Proposed Assignee and any other proposed assignee and any guarantors;

c.      Any and all documents regarding the proposed assignee's and any guarantor's experience operating retail businesses;

d.      The proposed assignee's and any guarantor's 2024 and 2025 business plans, including sales and cash flow projections;

e.    Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Lease;

f.    A statement setting forth the proposed assignee's intended use of the premises; and

g.    The number of retail businesses the proposed assignee and any guarantor operates and all trade names used.

21.    Landlord may also need similar information for Debtors in the year when Debtors entered into the Lease to appropriately evaluate the ability of the Proposed Assignee to provide adequate assurance of future performance.

22.    Unless and until Landlord receives all of this information, Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

### A.    *The Lease Must Be Assumed or Assumed and Assigned Cum Onere*

23.    Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a lease "is subject to all the provisions thereof…". 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See*, *e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

24.    As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n.3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment."  A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty.  *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")).  While the assignee may be entitled to perform for the original

8

> obligor, the original obligor remains ultimately liable until
> discharged by performance or otherwise.  Section 365(k) changes
> this common law rule and relieves the estate from all liability
> under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach").  Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* – with all benefits and burdens. *See*, *e.g.*, *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

25.     Furthermore, Debtors, the Proposed Assignee, or any other proposed assignee must be required to comply with all contractual obligations to indemnify and hold Landlord harmless for events which occurred before assumption or assumption and assignment, but which were not known to Landlord as of the date of any assumption or assumption and assignment.  This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by Debtors or their agents, and (iii) environmental damage or clean-up.  To cure possible pre-assumption, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) Debtors, the Proposed Assignee, or any other proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or incidences that occurred prior to the effective date of an assignment.  Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where

9

Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

26.     Additionally, any proposed assignee should be required to execute a short-form assumption and assignment agreement with Landlord in connection with the proposed assignment of the Lease so that Landlord will be in privity with its new tenant.

## II.     The Proposed Cure Amount Is Incorrect

27.     Landlord disputes the cure amount proposed by Debtors in the Notice of Assignment.  The correct cure amount for the Lease is set forth on the attached **Exhibit A** (the "Landlord Cure Amount"), which includes an estimate of attorneys' fees incurred to date. Landlord reserves the right to amend the Landlord Cure Amount to include additional amounts that continue to accrue and any obligations that arise and/or become known to Landlord prior to assumption and assignment of the Lease.

28.     Pursuant to the Lease, Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance costs, real estate taxes, and assessments.  In addition, prior to assumption and assignment of the Lease, Debtors are required by section 365(b)(1) of the Bankruptcy Code to cure all outstanding defaults under the Lease and compensate Landlord for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. §365(b)(1)(B).  Attorney's fees due under the Lease are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

Accordingly, as part of its pecuniary losses, Landlord is entitled to attorney's fees in connection with Debtors' obligation to cure all monetary defaults under the Lease.

**III.    Debtors or the Proposed Assignee Must Be Responsible for (A) Payment of Adjustment Amounts When They Come Due in the Ordinary Course of Business, and (B) Satisfaction of Indemnification Obligations**

29.    To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or Landlord suffers other pecuniary losses with respect to the Lease, Landlord hereby reserves the right to amend the Landlord Cure Amount to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2024 and 2025, which have not yet been billed or have not yet become due under the terms of the Lease (the "Adjustment Amounts").  Debtors, the Proposed Assignee, or any other proposed Assignee must be responsible to satisfy all accrued but unbilled obligations under the Lease, including the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts were incurred.

**IV.    Debtors Must Be Responsible for Timely Payment of All Post-Petition Rent And Additional Rent Due Under the Lease Until It Is Assumed, Assumed and Assigned, or Rejected**

30.    Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

31.    Landlord requests that any assumption and assignment of the Lease be conditioned upon Debtors' timely performance of all obligations arising under the Lease before it is assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy

11

Code.  This includes, without limitation, the payment in full of rent and related charges on the

first day of each month.

### V.        Demand for Security

32.      Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant
> to this section, the lessor of the property may require a deposit or other
> security for the performance of the debtor's obligations under the lease
> substantially the same as would have been required by the landlord upon
> the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

33.      In the ordinary course of business, Landlord requires security deposits,

letters of credit, and/or guaranties when leasing (or assessing an assignment of a lease) to certain

companies based on their financial information and history.  In connection with the proposed

assumption and assignment of the Lease, Landlord hereby demands such security in one of those

forms as required by section 365(l) of the Bankruptcy Code.  Until the complete financials of the

Proposed Assignee or any other proposed assignee are known to Landlord, Landlord reserves its

right to specify the exact form and amount of such security; however, Landlord would typically

require a parent or personal guaranty in connection with leasing to a new tenant and a security

deposit equal to six months of rent and related charges.

### RESERVATION OF RIGHTS

34.      Landlord reserves the right to amend and/or supplement this Objection on

any basis, including, without limitation, by adding or supplementing objections to Debtors'

proposed cure amount and by adding or supplementing objections to the adequate assurance of

future performance provided by Debtors, the Proposed Assignee, or any other proposed assignee.

12

## CONCLUSION

**WHEREFORE,** Landlord respectfully requests that the Court enter an order (i)

modifying the relief requested in the Notice of Assignment as requested herein; and (ii) granting

such other and further relief as this Court deems just and proper.

Dated: August 5, 2025

**KELLEY DRYE & WARREN LLP**

By: */s/ Robert L. LeHane*
Robert L. LeHane
Jennifer D. Raviele (admitted *pro hac vice*)
Connie Y. Choe
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Email: rlehane@kelleydrye.com
        jraviele@kelleydrye.com
        cchoe@kelleydrye.com

-and-

One Jefferson Road
Parsippany, NJ 07054
Tel: (973) 503-5900

*Attorneys for DS Properties 18 LP*