**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NEW RITE AID, LLC, *et al.*,[1] | ) Case No. 25-14861 (MBK) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE ADMINISTRATIVE**
**CLAIMS PROCEDURES AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above captioned debtors and debtors in possession (collectively, "Debtors")

respectfully state the following in support of this motion (this "Motion"):

---

[1] The last four digits of New Rite Aid, LLC's tax identification number are 1483. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, PA 17319.

**Relief Requested**

1.      As described below, the Debtors seek approval of the Administrative Claims Procedures.  Through the Administrative Claims Procedures, the Debtors will make a global settlement offer to Administrative Claimants (as defined below), allowing consenting claimants to receive an accelerated payment on account of their Administrative Claims (as defined below).  The Debtors request the relief set forth herein on the basis that they believe the Administrative Claims Procedures represent the only viable path forward which permits for *any* distribution to Administrative Claimants, including through a potential chapter 11 plan transaction.  The Debtors do ***not***, through the Administrative Claims Procedures, seek to settle (i) claims on account of their postpetition non-residential lease obligations arising under section 365(d)(3) of the Bankruptcy Code or (ii) claims of their vendors, suppliers, and service providers arising postpetition in the ordinary course of business, each of which the Debtors intend to continue to pay in the ordinary course in accordance with the DIP Budget (as defined below).

**JURISDICTION AND VENUE**

2.      The United States Bankruptcy Court for the District of New Jersey (this "Court") has jurisdiction over this matter pursuant to (1) 28 U.S.C §§ 157 and 1334, the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.).  The Debtors confirm their consent to this Court entering a final order in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105 and 363 of title

11 of the United States Code (the "<u>Bankruptcy Code</u>") and rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

**<u>Background</u>**

5.      On May 5, 2025 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors and their

business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set

forth in the *Declaration of Marc Liebman, Chief Transformation Officer of the Debtors, in Support*

*of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 24].

6.      The Debtors are operating their business and managing their properties as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy.  On May 7, 2025, this

Court entered an order, pursuant to section 1102 of the Bankruptcy Code, authorizing procedural

consolidation and joint administration of these chapter 11 cases (the "<u>Chapter 11 Cases</u>") under

lead Case No. 25-14681 [Docket No. 122].  On May 15, 2025, the United States Trustee for the

District of New Jersey (the "<u>U.S. Trustee</u>") appointed the Official Committee of Unsecured

Creditors (the "<u>Committee</u>") in these chapter 11 cases [Docket No. 316].  On May 19, 2025, the

U.S. Trustee amended and reconstituted the Committee [Docket No. 440].  No request for the

appointment of a trustee or examiner has been made in these chapter 11 cases.

7.      In the three short months since the Petition Date, the Debtors, together with their

management and advisors, have accomplished many of their key objectives in the Chapter 11

Cases.  The Debtors have worked with their vendors and landlords to stabilize their operational

landing in chapter 11, conducted a successful marketing process which has resulted in the

execution of transactions to sell a substantial majority of their assets (the "<u>Sales</u>"), and worked

with their transaction counterparties to close the Sales, bringing funds into the estates and, where

Sales involved transfers of entire locations, preserving jobs. In parallel, the Debtors have been focused on reducing their operational spending footprint, in part through ongoing store closure and reduction in force efforts to minimize estate costs.

8.    This work remains ongoing. Given the timeline of the Debtors' anticipated sale closing and wind-down process, the Debtors aim to continue to work through year-end to complete their operational wind down. Notwithstanding the meaningful work to be done with respect to those processes, however, the purchase commitments (and, in many instances, closed Sales) already procured with respect to the substantial majority of the assets comprising their estates have yielded additional clarity regarding the value which will be available for distribution to stakeholders. Accordingly, the Debtors and their advisors have been working to formulate a value-maximizing exit strategy which will bring these cases to an orderly resolution.

9.    The Chapter 11 Cases are thus at a critical inflection point, and the Debtors have been evaluating all options to monetize the assets remaining in the estates and facilitate a distribution of estate assets to creditors. This process has involved negotiations with the Debtors' postpetition financing providers (the "DIP Lenders") as well as various potential acquirers of the Debtors' remaining assets. As of the filing of this Motion, these negotiations remain ongoing, and the ultimate transaction to be pursued by the Debtors, as well as the mechanism through which it will be effected, have yet to be determined.

10.    It is clear, however, that the assets which are or will be available for distribution to the Debtors' creditors will be insufficient to repay their DIP Lenders in full. Because the Debtors' assets are fully-encumbered by the DIP Lenders' claims (and, to the extent value in excess of these claims existed, it would be encumbered by the claims of the Debtors' prepetition secured lenders), there is no alternative source of value to provide a distribution to holders of unsecured claims that

may be entitled to priority pursuant to section 507 of the Bankruptcy Code and payment in full

under any chapter 11 plan pursuant to section 1129(a)(9) of the Bankruptcy Code (any such claims

subject to the Administrative Claims Procedures as set forth below, "<u>Administrative Claims</u>" and

the holders thereof, "<u>Administrative Claimants</u>").[2]  As such, absent a negotiated outcome with the

DIP Lenders, it will not be possible to make ***any*** distributions to Administrative Claimants at the

conclusion of these Chapter 11 Cases, let alone pay Administrative Claimants in full.

11.      The Debtors' negotiations with their DIP Lenders have focused on the Debtors'

goal of obtaining an outcome which would permit distributions to Administrative Claimants

notwithstanding the lack of unencumbered value in their estates.  These conversations have been

productive, and the DIP Lenders have agreed to permit up to $5 million of encumbered cash

collateral (the "<u>Administrative Claims Distribution Pool</u>") to be used to fund distributions to

Administrative Claimants on an accelerated basis, subject to the terms set forth in this Motion,

with the goal of preserving the Debtors' ability to consummate a transaction through a chapter 11

plan.

12.      The Debtors' agreement with the DIP Lenders provides that payments to

Administrative Claimants may be made only in exchange for the applicable Administrative

Claimant's agreement to accept a reduced payment in satisfaction of their priority claims, and

subject to the Participation Condition discussed below.  Accordingly, the Debtors seek approval

of    the    accelerated    Administrative    Claim    payment    procedures    and    settlement

---

[2]      The Administrative Claims subject to the Administrative Claim Procedures shall ***not*** include (i) claims on account of their postpetition non-residential lease obligations arising under section 365(d)(3) of the Bankruptcy Code or (ii) claims of their vendors, suppliers, and service providers arising postpetition in the ordinary course of business, each of which the Debtors intend to continue to pay in the ordinary course in accordance with Approved Budget. "<u>Approved Budget</u>" shall have the meaning ascribed to such term in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 1396].

(collectively, the "Administrative Claim Procedures") described in this Motion and entry of the proposed order attached hereto as **Exhibit A** (the "Order").  Through the Administrative Claims Procedures, the Debtors seek to offer Administrative Claimants the opportunity to voluntarily participate in this settlement and obtain some, even if not full, recovery on account of their Administrative Claims.

13.     The Debtors firmly believe that obtaining satisfactory levels of participation in the Administrative Claims Procedures is the ***only*** path forward which permits a distribution to Administrative Claimants.  If the Participation Condition is not satisfied and the Debtors are thus unable to consummate a transaction in chapter 11, it is likely that the disposition of these Chapter 11 Cases will be a dismissal or conversion to chapter 7.  The Debtors believe that in either scenario, the statutory priority scheme required by the Bankruptcy Code would yield no recovery to Administrative Claimants, and so pursuit of the Administrative Claims Procedures and the consummation of a transaction through a chapter 11 plan are value-maximizing from the perspective of, and, at this point in the Chapter 11 Cases, the only feasible way to distribute ***any*** value to, Administrative Claimants.

14.     If the Participation Condition is satisfied, however, the Debtors may be able to make accelerated distributions to participating Administrative Claimants and pursue a chapter 11 plan.  While negotiations with respect to particular transactions to be effected via a chapter 11 plan remain ongoing, the Debtors hope to complete these negotiations and file a chapter 11 plan and disclosure statement in the near term.[3]  Rather than delay approval of the Administrative Claims

---

[3]     As noted *supra*, however, the Debtors' ability to successfully pursue a chapter 11 plan depends in large part on the outcome of the Administrative Claims Procedures.  Accordingly, while negotiations remain ongoing with respect to the structure and terms of any chapter 11 plan, the Debtors plan to seek approval of a plan solicitation process which may, in consultation with their stakeholders, be terminated in favor of the pursuit of the dismissal of these chapter 11 cases in the event that pursuing a chapter 11 plan becomes impossible or impracticable.

Procedures until the finalization of such negotiations, however, the Debtors file this Motion now to maximize the amount of time that the Administrative Claimants have to consider the settlement proposal described herein.  By seeking to initiate the Administrative Claims Procedures prior to solicitation of votes on a chapter 11 plan, the Debtors aim to accomplish these due process goals through adhering to a typical solicitation timeline for priority creditors without unduly prolonging the confirmation process and incurring incremental estate costs.  The definitive terms of the Administrative Claims Procedures, including the operative notice distribution dates and deadlines providing for this fulsome notice period, are set forth below.

15.    The settlement proposal embodied in the Administrative Claims Procedures reflects the outcome of arm's-length negotiations between the Debtors and their DIP Lenders, and the Debtors believe this global settlement is a key component of the only path forward which permits a distribution to Administrative Claimants.  Administrative Claimants that opt-in to the treatment proposed in the Administrative Claim Procedures will be entitled to payment on an accelerated basis ***without waiting for confirmation of a chapter 11 plan***, and without engaging in lengthy or costly negotiations.  Accordingly, the Administrative Claims Procedures are appropriate and in the best interests of the only affected creditors—the Administrative Claimants—and should be approved.

### The Administrative Claims Procedures

16.    The Debtors' proposed terms and process for effecting the Administrative Claims Procedures are as follows:

| **Notice & Service** | Within three (3) business days after entry of the Order (the "Mailing Date"), the Debtors shall cause their claims and noticing agent (the "Claims Agent") to mail, via first-class mail and e-mail (where available) based on the applicable Administrative Claimant's contact information (and its counsel, if known) as provided to the Debtors and reflected in their books and records, the following materials |
|---|---|

| | (the "<u>Administrative Claimant Materials</u>"): (i) a copy of the Order, as entered by this Court and without attachments, (ii) an Election Form (as defined below) to each Administrative Claimant, and (iii) a postage-prepaid return envelope.  After the initial mailings of the Administrative Claimant Materials, the Debtors may, in their discretion, make supplemental mailings of notices, including in the event that notices are returned with forwarding addresses or additional potential claimants become known to the Debtors.<br><br>Additionally, as soon as reasonably practicable after entry of the Order, the Debtors shall cause a notice substantially in the form attached to the Order as **<u>Exhibit 2</u>** (the "<u>Publication Notice</u>") to be (i) published in the national edition of The New York Times, Wall Street Journal or another publication with similar national circulation, and (ii) on the case management website.<br><br>The Publication Notice is intended to reach parties for whom notice by mail is impracticable, including potential Administrative Claimants that are unknown, not reasonably ascertainable, or whose mailing addresses cannot be located despite reasonable diligence. |
|---|---|
| **Subject Administrative Claims** | The Administrative Claims Procedures shall apply to all Administrative Claims arising on or before the Administrative Claims Record Date, excluding (i) claims on account of their postpetition non-residential lease obligations arising under section 365(d)(3) of the Bankruptcy Code or (ii) claims of their vendors, suppliers, and service providers arising postpetition in the ordinary course of business, each of which the Debtors intend to continue to pay in the ordinary course in accordance with Approved Budget; *provided*, *however*, that the Debtors may, by agreement with the applicable Administrative Claimant, offer the settlement terms provided for in the Administrative Claims Procedures to holders of Administrative Claims arising after the Administrative Claims Record Date. |
| **Election Forms** | Each known Administrative Claimant shall receive an "<u>Election Form</u>" in the form attached to the Order as Exhibit 1. Each Election Form shall include:<br><br>• A detailed description of the Administrative Claims Procedures;<br><br>• The amount of each Administrative Claimant's Administrative Claim as reflected on the Debtors' books and records as of the Administrative Claim Record Date (the "<u>Recorded Amount</u>"); |

| | |
|---|---|
| | • Detailed instructions for completing and returning the Election Form, indicating such Administrative Claimant's election to opt-in to (an "<u>Opt-In Election</u>") or opt-out of (an "<u>Opt-Out Election</u>") the Administrative Claims Procedures; and<br><br>• A prominent disclosure of the recovery to be received by such Administrative Claimant on account of its election. |
| **Administrative Claims Dispute Procedures** | In the event that an Administrative Claimant that has received the Administrative Claimant Materials disagrees with the Recorded Amount of its Administrative Claim, it may populate the amount that it believes should apply to its Administrative Claim within the "Administrative Claimant Recorded Amount" field of the Election Form. If the Administrative Claimant populates an amount in the "Administrative Claimant Recorded Amount" field of the Election Form, the Debtors and any such disputing Administrative Claimant shall work in good faith to reconcile the amount of such claimant's Administrative Claim.<br><br>If an Administrative Claimant disagrees with the Recorded Amount and populates an amount in the "Administrative Claimant Recorded Amount" field of the Election Form, the validity of the Election Form is subject to further reconciliation by the Debtors and agreement upon the amount of such claimant's Administrative Claim. **In instances where the Debtors do not agree with the Administrative Claim Amount populated by the claimant within the "Administrative Claimant Recorded Amount" field of an Election Form, such Administrative Claimant may be required to resubmit an Election Form with the reconciled, agreed upon claim amount populated in Recorded Amount field or risk their Election Form not being counted.**<br><br>If the Debtors and applicable Administrative Claimant are able to reach an agreement with respect to the amount of any such disputing Administrative Claimant's claim amounts, the Debtors shall be authorized to make distributions hereunder on account of such agreement amounts instead of the Recorded Amount. If the Debtors and any such Administrative Claimant have not come to an agreement with respect to the amount of the applicable Administrative Claim prior to the Election Deadline (as may be extended with respect to such Administrative Claimant in accordance with the terms of these Administrative Claims Procedures), such Administrative Claimant shall have been deemed to have made an Opt-Out Election and shall not be entitled to any distribution on account of these Administrative Claims Procedures. |

| | |
|---|---|
| **Record Date** | The "<u>Administrative Claim Record Date</u>" shall be July 31, 2025. |
| **Election Deadline** | The "<u>Election Deadline</u>" shall be September 16, 2025 at 5:00 p.m. ET.  All Election Forms must be timely and properly completed and returned so as to be **actually received** by the Claims Agent either by (i) delivering the Election Form to the Claims Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Election Form by electronic online transmission through the Online Portal (as defined in the Election Form), in each case in accordance with the instructions set forth in the Election Form.<br><br>The Debtors may, with the consent of the DIP Lenders (not to be unreasonably withheld) and in consultation with the Committee, extend the Election Deadline (including with respect to individual Administrative Claimants); *provided*, *however*, that the Election Deadline shall not be extended past the time at which the First Distribution (as defined below) is made. |
| **Tabulation** | The Election Forms shall be recorded and tabulated per the following procedures:<br><br>• Any Administrative Claimant that timely and properly returns an Election Form indicating an Opt-In Election shall be recorded as having opted in to the Administrative Claims Procedures, and shall receive the distribution contemplated thereunder.<br><br>• Any Administrative Claimant that timely and properly returns an Election Form indicating an Opt-Out Election shall be recorded as having opted out of the Administrative Claims Procedures;<br><br>• Any Administrative Claimant that timely and properly returns an Election Form shall have its election recorded with respect to each Debtor against which it holds a claim.<br><br>• Any Administrative Claimant that (i) returns an Election Form that does not properly indicate an Opt-In Election or Opt-Out Election or (ii) fails to timely and properly return an Election Form shall be deemed to consent to the treatment provided for in the Administrative Claims Procedures.<br><br>• The Debtors and the Claims Agent, as applicable, are |

| | |
|---|---|
| | authorized to determine all questions as to the validity, form, eligibility, acceptance, and revocation or withdrawal of any Election Form (including by waiving any deficiencies with respect to any returned Election Forms), and such determination shall be final and binding on all parties. |
| **Participation Condition** | The effectiveness of the Administrative Claims Procedures is conditioned on a sufficient number of Administrative Claimants (as determined by the Debtors and the DIP Lenders, in consultation with the Committee) consenting or being deemed to consent to the treatment contemplated in these Administrative Claims Procedures (the "<u>Participation Condition</u>").<br><br>**If the Debtors and the DIP Lenders determine, in consultation with the Committee, that the number of consenting or deemed consenting Administrative Claimants is insufficient and the Participation Condition is not waived, the Administrative Claims Procedures shall not be consummated, no payments shall be made to Administrative Claimants under it, and the Debtors believe that such payments will not be possible at all.**<br><br>The Debtors shall, subject to the following paragraph, file a notice with the Bankruptcy Court following the Election Deadline indicating whether the Participation Condition has been met or waived (the "<u>Participation Condition Notice</u>").<br><br>The Debtors may, in consultation with the Committee and with the consent of the DIP Lenders (not to be unreasonably withheld), terminate the Administrative Claims Procedures at any time prior to the filing of a Participation Condition Notice indicating that the Participation Condition has been met or waived. |
| **Administrative Claims Distribution Pool** | The Administrative Claims Distribution Pool available to distribute to Administrative Claimants pursuant to these Administrative Claims Procedures is $5,000,000.00. |
| **Administrative Claimant Recoveries** | Through properly returning Election Forms in accordance with the Administrative Claims Procedures, Administrative Claimants may consent to receive the following recoveries:<br><br>• Each Administrative Claimant that timely and properly indicates an Opt-In Election shall receive, within ten (10) business days (or as soon as reasonably practicable thereafter) following the filing of a Participation Condition Notice indicating that the Participation Condition has been met or waived, a distribution (the "<u>First Distribution</u>") equal |

to such Administrative Claimant's Pro Rata Share[4] of the Administrative Claims Distribution Pool, not to exceed 5.00% of such Administrative Claimant's Recorded Amount (or such other amount as agreed between the Debtors and such Administrative Claimant) in full and final satisfaction of its Administrative Claim.

- Each Administrative Claimant that timely and properly indicates an Opt-Out Election shall retain its rights to assert its Administrative Claim against the Debtors, if any, and receive no recovery under the Administrative Claims Procedures.

- Administrative Claimants that **fail to make an Opt-In Election or Opt-Out Election** shall be deemed to consent to receiving a distribution (the "Second Distribution") equal to such Administrative Claimant's Pro Rata Share of amounts remaining in the Administrative Claims Distribution Pool after the First Distribution is made, not to exceed 5.00% of such Administrative Claimant's Recorded Amount (or (i) such other amount as agreed between the Debtors and such Administrative Claimant or (ii) if there is no Recorded Amount as of the Election Deadline with respect to the applicable Administrative Claim, the amount in which the applicable Administrative Claim is allowed pursuant to any chapter 11 plan or order of this Court) under any subsequent chapter 11 plan confirmed in these Chapter 11 Cases, in satisfaction of section 1129 of the Bankruptcy Code.

Each claimant receiving a distribution pursuant to these Administrative Claims Procedures shall be deemed to acknowledge and agree that its consent or deemed consent to the treatment contemplated herein constitutes an agreement with respect to its treatment for all purposes including, without limitation, section 1129(a)(9) of the Bankruptcy Code, and shall have waived any rights

---

[4] "Pro Rata Share" means, for purposes of these Administrative Claims Procedures, (i) with respect to each Administrative Claimant making an Opt-In Election, the Recorded Amount (or such other amount as agreed between the Debtors and such Administrative Claimant) of such Administrative Claimant's Administrative Claim relative to the aggregate Recorded Amounts (or such other amounts as agreed between the Debtors and such Administrative Claimants) of all other Administrative Claimants that timely and properly make Opt-In Elections, and (ii) with respect to each Administrative Claimant that fails to make an Opt-In Election or Opt-Out Election, the Recorded Amount (or such other amount as agreed between the Debtors and such Administrative Claimant) of such Administrative Claimant's Administrative Claim relative to the aggregate Recorded Amounts (or such other amounts as agreed between the Debtors and such Administrative Claimants) of all other Administrative Claimants that fail to make an Opt-In Election or Opt-Out Election.

| | |
|---|---|
| | to object to any plan of reorganization on the basis of such treatment.<br><br>**Nothing in these Administrative Claims Procedures or any Election Form shall impair, limit, or otherwise impact the Debtors' authority to make payments to Administrative Claimants by separate agreement or in accordance with applicable law**. In the event of any payment to an Administrative Claimant on account of its Administrative Claim, the Recorded Amount (or other agreed amount, as applicable) of the Administrative Claim shall be deemed to be reduced on a dollar-for-dollar basis by the amount of any such payment (or as otherwise provided for pursuant to the applicable separate agreement) for purposes of calculating any recovery distributed pursuant to these Administrative Claims Procedures. |
| **Waiver of Preference Actions** | In addition to the First Distribution, the Debtors shall, in consideration for such elections and effective upon the making of the First Distribution, waive any and all claims and causes of action arising against each Administrative Claimant that makes an Opt-In Election arising under section 547 of the Bankruptcy Code. |

## BASIS FOR RELIEF

### A.    The Administrative Claims Procedures Satisfy the Requirements of Bankruptcy Rule 9019 and Section 363(b) of the Bankruptcy Code.

17.     Bankruptcy Rule 9019 provides, in pertinent part, that "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.  Settlements are an integral part of the bankruptcy process, and favored when they "minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F.3d 389, 393 (3d. Cir. 1996); *see also In re Mavrode*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997) ("Settlements are generally favored in bankruptcy proceedings, in that they provide for an often needed and efficient resolution to the bankruptcy case.").  Accordingly, Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlement agreements which are "fair and equitable" and "in the best interest of creditors and the estate." *In re Biolitec, Inc.*, 528 B.R. 261, 266 (Bankr. D.N.J. 2014) (quoting *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 309 U.S. 414, 424 (1968)).  Section 105(a)

of the Bankruptcy Code further enables bankruptcy courts to craft relief which is necessary or appropriate to effect such settlement agreements.  11 U.S.C. § 105(a); *see also In re Grand Prix Assocs. Inc.*, 2009 WL 1850966 at *5 (Bankr. D.N.J. June 26, 2009) ("Approval of a compromise under Rule 9019 is within the discretion of the bankruptcy court.").

18.  Courts in the Third Circuit typically apply the four-factor test set forth in *In re Martin* when evaluating settlement proposals, which calls for a consideration of the following factors: "(1) the probability of success in litigation; (2) the likely difficulties of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 398, 393 (3d. Cir. 1996).  While the *Martin* factors lend themselves to an analysis concerning the settlement of claims held *by* the estate, the Third Circuit Court of Appeals has held that they are applicable where, as here, debtors propose to enter into settlement agreements with individuals holding claims *against* the estate as well, as the Debtors propose here.  *In re Nutraquest, Inc.*, 434 F.3d 639 (3d. Cir. 2006).

19.  At this time, the Debtors do not seek to litigate with the holders of the Administrative Claims, and propose the Recorded Amounts to be used in calculating the payments offered to each Administrative Claimant based on their books and records as of the Administrative Claims Record Date pursuant to the Administrative Claims Procedures described *supra*.  The first and second *Martin* factors, concerning the Administrative Claimants' ability to recover against the Debtors in the event that their claims are contested, are thus largely irrelevant.[5]  The third *Martin*

---

[5]  Where, as here, the *Martin* factors are of varied relevance, bankruptcy courts need not "analyze the factors in rote fashion."  *In re Glanton*, 2024 WL 5219089 at *4 (D.N.J. Dec. 26, 2024) (affirming bankruptcy court's approval of a settlement based on an analysis which "asses[ed] the risk and benefits to the estate, despite not walking through each of the *Martin* factors in any specific order.").  Rather, the *Martin* factors guide the wholistic inquiry as to whether the settlement "falls . . . somewhere above the lowest point in the range of reasonableness" and courts may consider "all relevant information that will enable [them] to determine what course of action is in the best interests of the estate."  *In re NovaPro Holdings, LLC*, 2019 WL 1324950 at *4 (D. Del. Mar. 25, 2019).

14

factor weighs in favor of approving the Administrative Claims Procedures, as reaching an agreement with Administrative Claimants pursuant to the Administrative Claims Procedures will eliminate the need for future claims reconciliation processes and the attendant costs and delays.

20.    The fourth *Martin* factor, requiring a consideration of the "paramount interests of creditors," is the most relevant and compelling in these circumstances, and weighs heavily in favor of approving the Administrative Claims Procedures.  Participation by Administrative Claimants in the Administrative Claims Procedures will reduce priority claims against the estates, which "helps all creditors."  *In re Roper and Twardowsky, LLC*, 559 B.R. 375, 399 (Bankr. D.N.J. 2016).  This is an especially relevant consideration where, as here, the Debtors are engaged in negotiations concerning transactions to be effected pursuant to a chapter 11 plan, confirmation of which would require satisfaction of the Participation Condition to accomplish.  All creditors and stakeholders will benefit from an orderly, value-maximizing conclusion to the Chapter 11 Cases, which the Debtors seek to facilitate through the Administrative Claims Procedures.

21.    Failure to obtain approval of (or satisfactory participation in) the Administrative Claims Procedures will likely result in the conversion or dismissal of the Chapter 11 Cases.  Conversion to chapter 7 would result in additional delays and administrative costs to the detriment of all stakeholders, and given the fact that the Debtors' assets are fully-encumbered by obligations in excess of their value, the Debtors would be barred from making distributions to administrative claimants in the context of a case dismissal.  *Czyzewski* v. *Jevic Holding Corp.*, 580 U.S. 451 (holding that distributions in contravention of the Bankruptcy Code's priority scheme cannot be made in the context of a structured dismissal without senior creditor consent).  The Administrative

---

The benefit to the estate of successful consummation of the Administrative Claims Procedures is clear, and will result in the substantial elimination of priority claims against the Debtors, in satisfaction of this standard.

Claims Procedures inure to the benefit of the participating Administrative Claimants by providing

a near-term distribution on account of their claims, where the alternatives would result in a delayed,

costly liquidation yielding no recovery for those claimants.

22.      The settlement embodied in the Administrative Claims Procedures is thus value-

maximizing for the estates *and* participating Administrative Claimants.  It represents the ***only*** path

forward which would permit the orderly and expedient administration of the Chapter 11 Cases in

a manner permitting for ***any*** distribution to priority claimants.  Accordingly, the Administrative

Claims Procedures settlement proposal satisfies the *Martin* factors, and satisfies the requirements

of Bankruptcy Rule 9019 as applied in this circuit.

23.      Similarly, the proposed use of estate funds to make the distributions contemplated

under the Administrative Claims Procedures satisfies section 363(b) of the Bankruptcy Code.

Under section 363(b), a debtor's proposed use of its assets (including to fund a settlement) should

be approved so long as it is supported by a "legitimate business justification."  *In re Martin*, 91

F.3d at 395.  For the same reasons that the Administrative Claims Procedures satisfy the *Martin*

factors with respect to Bankruptcy Rule 9019, this requirement is met.  The Administrative Claims

Procedures are intended to result in the near-term, substantial reduction of priority claims against

the Debtors' estates.  This, in turn, will facilitate negotiations with respect to a value-maximizing

transaction to potentially be pursued pursuant to a chapter 11 plan.  Even if such a transaction is

*not* pursued, the substantial, global resolution of priority claims against the estates, without

litigation, is in the best interests of the estates and a clear exercise of the Debtors' reasonable

business judgment.  The distribution of estate assets pursuant to the Administrative Claims

Procedures thus satisfies section 363(b) of the Bankruptcy Code.

24.      Further, settlements of this nature are expressly contemplated under the Bankruptcy

Code.  Section 1129(a)(9) of the Bankruptcy Code provides holders of administrative claimants are entitled to priority recovery "except to the extent that [any such holder] has agreed to a different treatment of such claim."  11 U.S.C. § 1129(a)(9).  The solicitation and procurement of consent to impairment from Administrative Claimants for purposes of pursuing a chapter 11 plan is thus not only consistent with the policy underlying the support for compromises in the bankruptcy process generally, but permitted by the plain language of the Bankruptcy Code.[6]

25.     Accordingly, the Debtors believe that the settlement contemplated in the Administrative Claims Procedures is appropriate, comports with applicable law, and should be approved.

**B.      The Use of an Opt-Out in the Administrative Claims Procedures Settlement is Consensual and Should be Approved**

26.     As set forth *supra*, the Administrative Claims Procedures contemplate three possible outcomes for Administrative Claimants.  Administrative Claimants may (i) make an Opt-In Election, and receive an accelerated recovery ahead of any plan confirmation subject to the satisfaction or waiver of the Participation Condition, (ii) make an Opt-Out Election, and retain their claims in full and thus remain unaffected by the Administrative Claims Procedures, or (iii) fail to timely and properly return an Election Form indicating an Opt-In Election or Opt-Out Election, and be deemed to accept a reduced payment under a subsequently-confirmed chapter 11 plan.

27.     The Administrative Claims Procedures provide Administrative Claimants with

---

[6]    In addition to the cases cited in paragraph 27, *infra*, courts in districts around the country have approved similar procedures to solicit settlements with administrative claimants on a global basis.  *See, e.g., In re Conn's, Inc.,* Case No. 24-33357 (Bankr. S.D.Tex. Apr. 15, 2025) [Docket No. 1656) (approving procedures to solicit acceptances of reduced payment from administrative claimants); *In re Southern Foods Groups, LLC,* (Bankr. S.D.Tex. Jul. 21, 2020) [Docket No. 272] (same); *In re Forever 21, Inc.,* Case No. 19-12122 (Bankr. D.Del. Dec. 22, 2020) [Docket No. 1724] (same).

clear instructions to return their Election Forms to the Debtors, and disclose the applicable consequences in a prominent matter.  They thus offer each Administrative Claimant ample opportunity to consent to, or opt out of, the Administrative Claims Procedures, and are consensual. The use of an opt-out structure with respect to global settlement offers to administrative claimants is a well-established practice, and has been approved by bankruptcy courts in similar circumstances in a number of jurisdictions.  *See, e.g.*, *In re Steward Health Care Sys. LLC*, Case No. 24-90213 (Bankr. S.D. Tex. June 2, 2025) [Docket No. 5036] (approving administrative claims settlement procedures which provided that holders failing to opt out of proposed treatment would be deemed to consent to impairment under a plan); *In re Sears Holdings Corp.*, Case No. 18-23538 (Bankr. D.N.J. Oct. 15, 2019) [Docket No. 5370] (confirming chapter 11 plan providing for administrative claim settlement procedures deeming holders that fail to return opt out forms to consent to proposed impairment); *In re Toys "R" Us, Inc.*, Case No. 17-34665 (Bankr. E.D. Va. August 8, 2018) [Docket No. 4083] (approving procedures providing that failure to opt out by administrative claimants constituted consent to impairment); *In re Pier 1 Imports, Inc.*, Case No. 20-30805 (Bankr. E.D. Va. June 24, 2020) [Docket No. 804] (approving solicitation procedures including an administrative claim consent form, and providing that failure to return the consent form would be deemed to be consent to impairment under the debtors' chapter 11 plan); *In re Barneys New York, Inc.*, Case No. 19-36300 (Bankr. S.D.N.Y. December 19, 2019)  [Docket No. 612] (same); *In re Gemstone Solutions Group, Inc.*, Case No. 19-30258 (Bankr. E.D. Va. March 13, 2020) [Docket No. 1426] (same).

28.    As one court has held, the use of an opt-out mechanism in this context is especially appropriate where, as here, Administrative Claimants are apprised of the consequences of failure to successfully effect settlement procedures and permit distributions from an administratively

insolvent estate:

> . . . if silence were not treated as consent, serious and possibly unintended consequences would follow.  The Plan would be rendered unconfirmable . . . the Lenders would get all of the assets, and no other creditor would receive a distribution.  In short it was reasonable and appropriate under the circumstances to require the Administrative Creditors to speak up, failing which they should be deemed to accepted the debtors' offer of different treatment under the Plan.

*In re Teligent, Inc.*, 282 B.R. 765 (Bankr. S.D.N.Y. 2002).  As was the case in *Teligent*, failure to meet the Participation Threshold will likely result in the near-term conversion or dismissal of the Chapter 11 Cases, in either case effecting a liquidation distribution in which only the DIP Lenders would be entitled to a recovery.  Through this Motion and the prominent, conspicuous disclosures in the Election Form, the Debtors have made these consequences clear, and use of an opt-out mechanism is thus necessary, proper, and consistent with practices approved in other jurisdictions.

29.     Use of an opt-out mechanism to solicit consents is also consistent with longstanding practices approved by this Court.  In the context of third-party releases, this Court has consistently held that, upon receiving materials which prominently disclose the releases at issue and the consequences of failing to opt out, holders of claims impaired under a chapter 11 plan may be deemed to consent to grant releases to non-Debtors upon a failure to opt out.  *See, e.g., In re Invitae Corporation,* No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. June 13, 2024); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. May 30, 2024); *In re WeWork, Inc.*, No. 2319865 (JKS) (Bankr. D.N.J. May 30, 2024); *In re DirectBuy Home Improvement, Inc.,* No. 23-19159 (SLM) (Bankr. D.N.J. Apr. 19, 2024; *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023).  In *BlockFi*, this Court confirmed that when creditors are afforded clear, comprehensive notice of the proposed treatment and an uncomplicated means to opt out, their decision to remain silent is treated as a deliberate and knowing choice:

> . . . I, as well as my colleagues within the district, have approved opt-out releases, the lynchpin being the proper notice. . . . [T]hese are consensual releases because those who do not want to participate, who want to bring their claims, notwithstanding how they vote, had the ability and option to opt out and not doing so, made a conscious choice.

*In re BlockFi Inc.*, Hr'g Tr. at 109-10 (Bankr. D.N.J. Sept. 26, 2023).  The use of an opt-out

mechanism to establish consent in the Administrative Claim Procedures is, for the same reason,

appropriate and consistent with past practices in this district.

### C.      The Administrative Claims Record Date and Election Deadline are Appropriate

30.      Establishing the Administrative Claims Record Date will crystallize the universe

of Administrative Claimants eligible to participate in the Administrative Claims Procedures.  The

Debtors respectfully request that July 31, 2025 be set as the Administrative Claims Record Date.

This date, which falls immediately prior to the filing of this Motion, will allow the Debtors to

capture as many Administrative Claims as possible, minimizing Administrative Claimants left out

of the process and permitting claim amounts to be determined for each Administrative Claimant

as of month-end, where relevant.  Given efforts to date to reduce the Debtors' operational footprint,

the Debtors incur minimal additional Administrative Claims on an ongoing basis, and are thus

confident that, notwithstanding the time period between the Administrative Claims Record Date

and confirmation of any chapter 11 plan, substantially all Administrative Claims that will exist as

of plan confirmation shall be subject to the Administrative Claims Procedures.

31.      With respect to any transfer of an administrative claim subject to the Administrative

Claims Procedures effected in accordance with Bankruptcy Rule 3001(e) which occurs after the

Administrative Claims Record Date, if the transferor claimant has made an Opt-In Election or Opt-

Out Election as of the time of such transfer, the Debtors are authorized to distribute the

Administrative Claimant Materials to the transferee.  If all actions necessary to transfer such claim

are completed prior to the Election Deadline, the transferee may return an Election Form in accordance with the Administrative Claim Procedures.  If a transferor has made an Opt-In Election or Opt-Out Election prior to any such transfer, however, any transferee with respect to the applicable claim shall be bound by the transferor's prior election.

32.      The Election Deadline provides Administrative Claimants with a full 28-day period to consider whether to make an Opt-In Election or Opt-Out Election, and is thus consistent with the notice periods called for under Bankruptcy Rule 2002(b) with respect to consideration of a chapter 11 plan.  While the Debtors do not seek approval of a chapter 11 plan pursuant to this Motion, the decision to be made by Administrative Claimants (*i.e.*, whether to consent to impairment) is sufficiently similar that a corresponding notice period is appropriate.

33.      The proposed actual and publication notice of the Administrative Claims Procedures are, likewise, appropriate.  Specifically, as set forth in the Administrative Claims Procedures above, the Debtors will (i) serve the Administrative Claimant Materials by first-class mail and e-mail (where available) on all Administrative Claimants whose identities and contact information are reasonably ascertainable from the Debtors' books and records, and (ii) publish the Publication Notice in a newspaper of national circulation and on the case website to provide notice to any Administrative Claimants who are not known or not reasonably ascertainable to the Debtors as of the Mailing Date.

34.      Although the present Motion concerns the Administrative Claims Procedures rather than a typical "bar date" claims filing deadline, the same due process concerns apply given that, similarly to a bar date applicable to claimants generally, the Debtors propose that the Administrative Claims Procedures be applicable to and bind ***all*** holders of subject Administrative Claims, whether known or unknown to the Debtors.   Given the intended purpose of the

Administrative Claims Procedures, it is essential that the Debtors are able to crystallize the universe of Administrative Claimants to enable a reliable and effective process with respect to formulating a chapter 11 plan.  In evaluating the sufficiency of notice in the bar date context, the Third Circuit distinguishes between "known" and "unknown" creditors. *Chemetron Corp.* v. *Jones*, 72 F.3d 341, 346 (3d Cir. 1995).  A "known" creditor is one whose identity is either known or is "reasonably ascertainable by the debtor." *Id.* (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988)).  In contrast, an "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Id.* (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)).

35.      The use of a publication notice to provide constructive notice of a deadline to unknown creditors is consistent with practices approved by bankruptcy courts in similar contexts. *See, e.g.*, *In re XO Commc'ns*, 301 B.R. 782, 793 (Bankr. S.D.N.Y. 2003) (finding that if a creditor is unknown constructive notice is generally sufficient); *DePippo v. Kmart Corp.*, 335 B.R. 290, 296 (S.D.N.Y. 2005) ("It is well-settled that when a creditor is 'unknown' to the debtor, publication notice of the Claims bar date is adequate constructive notice sufficient to satisfy due process requirements . . ."); *In re U.S.H. Corp. of New York*, 223 B.R. 654, 659 (Bankr. S.D.N.Y. 1998) (same).

36.      Further, Bankruptcy Rule 2002(l) permits the Court to " order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Accordingly, in addition to serving the Administrative Claimant Materials on Known Administrative Claimants by first-class and e-mail (where available), the Debtors submit that the Publication Notice will provide sufficient notice of the Administrative Claims Procedures to

Unknown Administrative Claimants, comports with the requirements of Bankruptcy Rule 2002, and therefore should be approved.

## Conclusion

37.    For the foregoing reasons, the Debtors respectfully submit that the Administrative Claims Procedures are appropriate, in the best interests of the estate, and necessary in order to provide any estate value to Administrative Claimants given the current facts and circumstances of the Chapter 11 Cases.  As such, the Debtors request that this Court approve the Administrative Claims Procedures and enter the Order.

## Request of Waiver of Stay

38.    To the extent the relief requested constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

## Reservation of Rights

39.    Nothing contained herein or any order granting the relief requested herein, and no action taken pursuant to the relief requested or granted (including any payment made in accordance therewith) is intended or shall be construed or deemed to be: (i) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (iii) a promise or requirement to pay any particular claim; (iv) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (v) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) an admission

as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other

encumbrance on property of the Debtors' estates; or (vii) a waiver or limitation of any claims,

causes of action, or other rights of the Debtors or any other party in interest against any person or

entity under the Bankruptcy Code or any other applicable law.

### Waiver of Memorandum of Law

40.    The Debtors request a waiver of the requirement to file a separate memorandum of

law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set

forth herein, and the Motion does not raise any novel issues of law.

### No Prior Request

41.    No prior request for the relief sought in this Motion has been made.

### Notice

42.    The Debtors will cause the Publication Notice to published as described in the

Administrative Claims Procedures and will provide notice of this Motion to the following parties

and/or their respective counsel, as applicable: (i) the office of the United States Trustee for the

District of New Jersey; (ii) counsel to the Committee; (iii) the Prepetition ABL Agent and counsel

thereto; (iv) the DIP Agent and counsel thereto; (v) the trustees for the Senior Secured Notes and

counsel thereto; (vi) counsel to McKesson Corporation; (vii) the United States Attorney's Office

for the District of New Jersey; (viii) the Internal Revenue Service; (ix) the attorneys general in the

states where the Debtors conduct their business operations; (x) all known Administrative

Claimants as of the date of this Motion; and (xi) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no

other or further notice need be given.

*[The remainder of this page is intentionally left blank.]*

Dated:  August 6, 2025

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com
             svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)

1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:   (212) 757-3990
Email:    arosenberg@paulweiss.com
          aeaton@paulweiss.com
          chopkins@paulweiss.com
          smitchell@paulweiss.com

*Counsel for Debtors*

## EXHIBIT A

**Proposed Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>                              Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

## ORDER (I) AUTHORIZING THE ADMINISTRATIVE CLAIMS PROCEDURES AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through seventeen (17), is

**ORDERED**.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of an Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief* (the "Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") establishing procedures for the settlement of administrative expense claims, and granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[1]     Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

1.    The Motion is **GRANTED** as set forth herein.

## I.    The Administrative Claims Procedures

2.    Notice of the accelerated Administrative Claim payment procedures and settlement (collectively, the "Administrative Claims Procedures") is sufficient and effective in satisfaction of federal and state due process requirements and other applicable law to put the parties in interest in these chapter 11 cases and others, including Administrative Claimants, on notice of the Administrative Claims Procedures.

3.    The Administrative Claims Procedures and the transactions contemplated thereby are a proper exercise of the Debtors' business judgment, satisfy the standards of section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9019, are reasonable, fair, equitable and supported by adequate consideration, and are hereby approved.

4.    The Debtors are hereby authorized to enter into, perform under, execute, and deliver all documents, and take all actions necessary or appropriate to timely and fully implement and consummate the Administrative Claims Procedures, including, without limitation, to make any payments to Administrative Claimants contemplated thereunder.  The Debtors may, in consultation with the Committee and with the consent of the DIP Lenders (not to be unreasonably withheld), terminate the Administrative Claims Procedures at any time prior to the filing of a Participation Condition Notice indicating that the Participation Condition has been met or waived.

5.    The Participation Condition is approved.   The implementation of the Administrative Claims Procedures is conditioned upon sufficient participation therein, as determined by the Debtors and the DIP Lenders, in consultation with the Committee.  If the Debtors and the DIP Lenders determine, in consultation with the Committee, that the number of

(Page | 5)
Debtors:            NEW RITE AID, LLC, *et al.*,
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Administrative Claims Procedures and
                    (II) Granting Related Relief

consenting or deemed consenting Administrative Claimants is insufficient, the Participation

Condition shall not be satisfied and, unless such condition is waived by the Debtors, the

Administrative Claims Procedures will not be consummated.

6.     Following the Election Deadline, the Debtors shall file the Participation Condition

Notice with the Court indicating whether the Participation Condition has been met or waived.  If

a Participation Condition Notice is filed indicating that the Participation Condition has been met

or waived, the Debtors are authorized to make the First Distribution on the terms set forth in the

Motion.

7.     The Debtors are authorized to adjust their books and records and/or claims register,

as applicable, to reflect the satisfaction of any Administrative Claims satisfied through the

Administrative Claims Procedures without further notice, action, order, or approval from the

Bankruptcy Court.

## II.     The Administrative Claims Record Date and Opt-In and Opt-Out Procedures

8.     July 31, 2025 shall be established as the record date for the purpose of determining

which Administrative Claimants are entitled to participate in the Administrative Claims

Procedures in accordance with the terms of the Election Form, attached hereto as **Exhibit 1**

(the "Administrative Claims Record Date").

9.     The Administrative Claims Procedures as set forth below are hereby approved:

| Notice & Service | Within three (3) business days after entry of the Order (the "Mailing Date"), the Debtors shall cause their claims and noticing agent (the "Claims Agent") to mail, via first-class mail and e-mail (where available) based on the applicable Administrative Claimant's contact information (and its counsel, if known) as provided to the Debtors and reflected in their books and records, the following materials (the "Administrative Claimant Materials"): (i) a copy of the Order, as entered by this Court and without attachments, (ii) an Election |
|---|---|

(Page | 6)

| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

| | |
|---|---|
| | Form (as defined below) to each Administrative Claimant, and (iii) a postage-prepaid return envelope. After the initial mailings of the Administrative Claimant Materials, the Debtors may, in their discretion, make supplemental mailings of notices, including in the event that notices are returned with forwarding addresses or additional potential claimants become known to the Debtors.<br><br>Additionally, as soon as reasonably practicable after entry of the Order, the Debtors shall cause a notice substantially in the form attached to the Order as **Exhibit 2** (the "Publication Notice") to be (i) published in the national edition of The New York Times, Wall Street Journal or another publication with similar national circulation, and (ii) on the case management website.<br><br>The Publication Notice is intended to reach parties for whom notice by mail is impracticable, including potential Administrative Claimants that are unknown, not reasonably ascertainable, or whose mailing addresses cannot be located despite reasonable diligence. |
| **Subject Administrative Claims** | The Administrative Claims Procedures shall apply to all Administrative Claims arising on or before the Administrative Claims Record Date, excluding (i) claims on account of their postpetition non-residential lease obligations arising under section 365(d)(3) of the Bankruptcy Code or (ii) claims of their vendors, suppliers, and service providers arising postpetition in the ordinary course of business, each of which the Debtors intend to continue to pay in the ordinary course in accordance with Approved Budget; *provided, however*, that the Debtors may, by agreement with the applicable Administrative Claimant, offer the settlement terms provided for in the Administrative Claims Procedures to holders of Administrative Claims arising after the Administrative Claims Record Date. |
| **Election Forms** | Each known Administrative Claimant shall receive an "Election Form" in the form attached to the Order as Exhibit 1. Each Election Form shall include:<br><br>• A detailed description of the Administrative Claims Procedures;<br><br>• The amount of each Administrative Claimant's Administrative Claim as reflected on the Debtors' books and records as of the Administrative Claim Record Date (the "Recorded Amount"); |

(Page | 7)

| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

|  | • Detailed instructions for completing and returning the Election Form, indicating such Administrative Claimant's election to opt-in to (an "<u>Opt-In Election</u>") or opt-out of (an "<u>Opt-Out Election</u>") the Administrative Claims Procedures; and<br><br>• A prominent disclosure of the recovery to be received by such Administrative Claimant on account of its election. |
| **Administrative Claims Dispute Procedures** | In the event that an Administrative Claimant that has received the Administrative Claimant Materials disagrees with the Recorded Amount of its Administrative Claim, it may populate the amount that it believes should apply to its Administrative Claim within the "Administrative Claimant Recorded Amount" field of the Election Form. If the Administrative Claimant populates an amount in the "Administrative Claimant Recorded Amount" field of the Election Form, the Debtors and any such disputing Administrative Claimant shall work in good faith to reconcile the amount of such claimant's Administrative Claim.<br><br>If an Administrative Claimant disagrees with the Recorded Amount and populates an amount in the "Administrative Claimant Recorded Amount" field of the Election Form, the validity of the Election Form is subject to further reconciliation by the Debtors and agreement upon the amount of such claimant's Administrative Claim. **In instances where the Debtors do not agree with the Administrative Claim Amount populated by the claimant within the "Administrative Claimant Recorded Amount" field of an Election Form, such Administrative Claimant may be required to resubmit an Election Form with the reconciled, agreed upon claim amount populated in Recorded Amount field or risk their Election Form not being counted.**<br><br>If the Debtors and applicable Administrative Claimant are able to reach an agreement with respect to the amount of any such disputing Administrative Claimant's claim amounts, the Debtors shall be authorized to make distributions hereunder on account of such agreement amounts instead of the Recorded Amount. If the Debtors and any such Administrative Claimant have not come to an agreement with respect to the amount of the applicable Administrative Claim prior to the Election Deadline (as may be extended with respect to such Administrative Claimant in accordance with the terms of these Administrative Claims Procedures), such Administrative Claimant shall have been deemed |

(Page | 8)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

| | |
|---|---|
| | to have made an Opt-Out Election and shall not be entitled to any distribution on account of these Administrative Claims Procedures. |
| **Record Date** | The "Administrative Claim Record Date" shall be July 31, 2025. |
| **Election Deadline** | The "Election Deadline" shall be September 16, 2025 at 5:00 p.m. ET. All Election Forms must be timely and properly completed and returned so as to be **actually received** by the Claims Agent either by (i) delivering the Election Form to the Claims Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Election Form by electronic online transmission through the Online Portal (as defined in the Election Form), in each case in accordance with the instructions set forth in the Election Form. <br><br> The Debtors may, with the consent of the DIP Lenders (not to be unreasonably withheld) and in consultation with the Committee, extend the Election Deadline (including with respect to individual Administrative Claimants); *provided*, *however*, that the Election Deadline shall not be extended past the time at which the First Distribution (as defined below) is made. |
| **Tabulation** | The Election Forms shall be recorded and tabulated per the following procedures: <br><br> • Any Administrative Claimant that timely and properly returns an Election Form indicating an Opt-In Election shall be recorded as having opted in to the Administrative Claims Procedures, and shall receive the distribution contemplated thereunder. <br><br> • Any Administrative Claimant that timely and properly returns an Election Form indicating an Opt-Out Election shall be recorded as having opted out of the Administrative Claims Procedures; <br><br> • Any Administrative Claimant that timely and properly returns an Election Form shall have its election recorded with respect to each Debtor against which it holds a claim. <br><br> • Any Administrative Claimant that (i) returns an Election Form that does not properly indicate an Opt-In Election or Opt-Out Election or (ii) fails to timely and properly return an |

(Page | 9)

| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

|  | Election Form shall be deemed to consent to the treatment provided for in the Administrative Claims Procedures. |
|  | • The Debtors and the Claims Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility, acceptance, and revocation or withdrawal of any Election Form (including by waiving any deficiencies with respect to any returned Election Forms), and such determination shall be final and binding on all parties. |
| **Participation Condition** | The effectiveness of the Administrative Claims Procedures is conditioned on a sufficient number of Administrative Claimants (as determined by the Debtors and the DIP Lenders, in consultation with the Committee) consenting or being deemed to consent to the treatment contemplated in these Administrative Claims Procedures (the "Participation Condition").<br><br>**If the Debtors and the DIP Lenders determine, in consultation with the Committee, that the number of consenting or deemed consenting Administrative Claimants is insufficient and the Participation Condition is not waived, the Administrative Claims Procedures shall not be consummated, no payments shall be made to Administrative Claimants under it, and the Debtors believe that such payments will not be possible at all.**<br><br>The Debtors shall, subject to the following paragraph, file a notice with the Bankruptcy Court following the Election Deadline indicating whether the Participation Condition has been met or waived (the "Participation Condition Notice").<br><br>The Debtors may, in consultation with the Committee and with the consent of the DIP Lenders (not to be unreasonably withheld), terminate the Administrative Claims Procedures at any time prior to the filing of a Participation Condition Notice indicating that the Participation Condition has been met or waived. |
| **Administrative Claims Distribution Pool** | The Administrative Claims Distribution Pool available to distribute to Administrative Claimants pursuant to these Administrative Claims Procedures is $5,000,000.00. |
| **Administrative Claimant Recoveries** | Through properly returning Election Forms in accordance with the Administrative Claims Procedures, Administrative Claimants may consent to receive the following recoveries:<br><br>• Each Administrative Claimant that timely and properly |

(Page | 10)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

indicates an Opt-In Election shall receive, within ten (10) business days (or as soon as reasonably practicable thereafter) following the filing of a Participation Condition Notice indicating that the Participation Condition has been met or waived, a distribution (the "<u>First Distribution</u>") equal to such Administrative Claimant's Pro Rata Share[2] of the Administrative Claims Distribution Pool, not to exceed 5.00% of such Administrative Claimant's Recorded Amount (or such other amount as agreed between the Debtors and such Administrative Claimant) in full and final satisfaction of its Administrative Claim.

- Each Administrative Claimant that timely and properly indicates an Opt-Out Election shall retain its rights to assert its Administrative Claim against the Debtors, if any, and receive no recovery under the Administrative Claims Procedures.

- Administrative Claimants that **fail to make an Opt-In Election or Opt-Out Election** shall be deemed to consent to receiving a distribution (the "<u>Second Distribution</u>") equal to such Administrative Claimant's Pro Rata Share of amounts remaining in the Administrative Claims Distribution Pool after the First Distribution is made, not to exceed 5.00% of such Administrative Claimant's Recorded Amount (or (i) such other amount as agreed between the Debtors and such Administrative Claimant or (ii) if there is no Recorded Amount as of the Election Deadline with respect to the applicable Administrative Claim, the amount in which the applicable Administrative Claim is allowed pursuant to any chapter 11 plan or order of this Court) under any subsequent chapter 11 plan confirmed in these Chapter 11 Cases, in

---

[2] "<u>Pro Rata Share</u>" means, for purposes of these Administrative Claims Procedures, (i) with respect to each Administrative Claimant making an Opt-In Election, the Recorded Amount (or such other amount as agreed between the Debtors and such Administrative Claimant) of such Administrative Claimant's Administrative Claim relative to the aggregate Recorded Amounts (or such other amounts as agreed between the Debtors and such Administrative Claimants) of all other Administrative Claimants that timely and properly make Opt-In Elections, and (ii) with respect to each Administrative Claimant that fails to make an Opt-In Election or Opt-Out Election, the Recorded Amount (or such other amount as agreed between the Debtors and such Administrative Claimant) of such Administrative Claimant's Administrative Claim relative to the aggregate Recorded Amounts (or such other amounts as agreed between the Debtors and such Administrative Claimants) of all other Administrative Claimants that fail to make an Opt-In Election or Opt-Out Election.

(Page | 11)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

|  |  |
|---|---|
| | satisfaction of section 1129 of the Bankruptcy Code.<br><br>Each claimant receiving a distribution pursuant to these Administrative Claims Procedures shall be deemed to acknowledge and agree that its consent or deemed consent to the treatment contemplated herein constitutes an agreement with respect to its treatment for all purposes including, without limitation, section 1129(a)(9) of the Bankruptcy Code, and shall have waived any rights to object to any plan of reorganization on the basis of such treatment.<br><br>**Nothing in these Administrative Claims Procedures or any Election Form shall impair, limit, or otherwise impact the Debtors' authority to make payments to Administrative Claimants by separate agreement or in accordance with applicable law**. In the event of any payment to an Administrative Claimant on account of its Administrative Claim, the Recorded Amount (or other agreed amount, as applicable) of the Administrative Claim shall be deemed to be reduced on a dollar-for-dollar basis by the amount of any such payment (or as otherwise provided for pursuant to the applicable separate agreement) for purposes of calculating any recovery distributed pursuant to these Administrative Claims Procedures. |
| **Waiver of Preference Actions** | In addition to the First Distribution, the Debtors shall, in consideration for such elections and effective upon the making of the First Distribution, waive any and all claims and causes of action arising against each Administrative Claimant that makes an Opt-In Election arising under section 547 of the Bankruptcy Code. |

10.     The foregoing Administrative Claims Procedures are hereby approved and deemed adequate to solicit Opt-In Elections and Opt-Out Elections from all Administrative Claimants as of the Administrative Claims Record Date and to inform such Administrative Claimants of their rights and available choices thereunder.  Any such Administrative Claimant that does not timely and properly return an Election Form indicating an Opt-In Election or Opt-Out Election shall be deemed to have consented to the treatment of their Administrative Claims proposed by the Administrative Claims Procedures in a chapter 11 plan, in satisfaction of section 1129(a)(9) of the

(Page | 12)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

Bankruptcy Code.  Any Administrative Claimant that receives a distribution pursuant to the Administrative Claims Procedures shall be deemed to have received such payments in full and final satisfaction, compromise, settlement, and release of such Administrative Claim, irrespective of whether such distribution is received on account of (i) an Opt-In Election, or (ii) a failure to make an Opt-In Election or Opt-Out Election.

11.     Each Administrative Claimant that receives a distribution pursuant to the Administrative Claims Procedures shall be deemed, upon receipt of such distribution, to acknowledge and agree that its consent or deemed consent to the treatment contemplated herein constitutes an agreement with respect to its treatment for all purposes including, without limitation, section 1129(a)(9) of the Bankruptcy Code, and shall have waived any right(s) to object to any plan of reorganization on the basis of such treatment.

12.     The Administrative Claimant Materials, and each of the documents contained therein (in substantially the form attached hereto) including, but not limited to, the Election Form, are hereby approved and provide conspicuous, adequate, and proper notice with respect to the consequences of an Administrative Claimant's decision whether to make an Opt-In Election or Opt-Out Election.

## III.    Notice of Administrative Claims Procedures

13.     The Debtors shall cause a copy of this Order to be distributed by email (where available) or first-class mail to the following persons and entities, wherever located:

a.      the Office of the United States Trustee for the District of New Jersey;

b.      counsel to the Committee;

c.      the Internal Revenue Service;

(Page | 13)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

     d.      all other taxing authorities for jurisdictions in which the Debtors do business or did business as of and following the Petition Date;

     e.      the office of the attorney general for the District of New Jersey and for the states in which the Debtors operate as of and following the Petition Date; and

     f.      any other entity that has requested notice of pleadings filed in the Chapter 11 Cases.

14.     The Debtors shall cause the Administrative Claims Materials to be sent via first-class and e-mail (where available) to the last known mailing and email address for each Administrative Claimant, as reflected in the Debtors' books and records as of the Administrative Claims Record Date and their counsel, if known. If the Debtors receive a "returned to sender" notification in response to any sending of the Administrative Claimant Materials, the Debtors will conduct a reasonable search for an alternative physical or e-mail address, and if none is found, the Debtors will not re-send the Administrative Claimant Materials to such party.

## IV. Publication Notice of the Administrative Claimant Materials for Unknown Potential Creditors

15.     The Debtors shall cause the notice of the Administrative Claims Procedures to be given by publication to parties to whom notice by mail is impracticable, including parties who are unknown or not reasonably ascertainable by the Debtors and parties whose identities are known but whose addresses are unknown by the Debtors following a reasonable search for such information. Specifically, or as soon as reasonably practicable following entry of this Order, the Debtors shall cause a notice of the Administrative Claims Procedures, substantially the form attached hereto as **Exhibit 2**, to be published in the national edition of The New York Times or Wall Street Journal or another publication with similar national circulation, and on the case management website.

(Page | 14)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

## V.    Tabulation of Opt-In Elections and Opt-Out Elections

16.    The Debtors and the Claims Agent are hereby authorized to take all actions necessary to implement the Administrative Claims Procedures, including, but not limited to, (i) distributing the Administrative Claimant Materials, (ii) receiving, tabulating, and reporting on Election Forms recording Opt-In Elections and Opt-Out Elections, (iii) responding to inquiries from parties in interest related to the Administrative Claims Procedures and the forms and materials related thereto, (iv) if necessary or appropriate, contacting creditors and Administrative Claimants regarding the Administrative Claimant Materials, including, without limitation, the Administrative Claimant Recorded Amount (if any) populated in the applicable field of the Election Form; and (v) taking any other related actions necessary or appropriate to effect the Administrative Claims Procedures.

17.    If an Administrative Claimant disagrees with the Recorded Amount and populates an amount in the "Administrative Claimant Recorded Amount" field of the Election Form, the validity of the Election Form is subject to further reconciliation by the Debtors and agreement upon the amount of such claimant's Administrative Claim.  In instances where the Debtors do not agree with the Administrative Claim Amount populated by the claimant within the "Administrative Claimant Recorded Amount" field of an Election Form, such Administrative Claimant may be required to resubmit an Election Form with the reconciled, agreed upon claim amount populated in Recorded Amount field or risk their Election Form not being counted.

18.    **<u>Tuesday, September 16, 2025 at 5:00 p.m. (prevailing Eastern Time)</u>** shall be established as the deadline to return an Election Form indicating an Opt-In Election or Opt-Out Election (the "<u>Election Deadline</u>").  The Claims Agent is authorized to accept Election Forms

(Page | 15)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

submitted on or before the Election Deadline: (i) by mail in the return envelope provided with the Administrative Claimant Materials, (ii) by overnight courier, (iii) by hand delivery, or (iv) by electronic, online transmission at https://restructuring.ra.kroll.com/RiteAid2025 (the "Online Portal"), in each case in accordance with the instructions set forth in the Election Form. The encrypted data and audit trail created by electronic submission of an Election Form via the Claims Agent's Online Portal shall become part of the record of any Election Form submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.

19.      The Debtors are authorized to (i) waive any defects or irregularities as to any Election Form, either before or after the Election Deadline, and (ii) extend the Election Deadline.

20.      With respect to any transfer of an administrative claim subject to the Administrative Claims Procedures effected in accordance with Bankruptcy Rule 3001(e) which occurs after the Administrative Claims Record Date, if the transferor claimant has made an Opt-In Election or Opt-Out Election as of the time of such transfer, the Debtors are authorized to distribute the Administrative Claimant Materials to the transferee. If all actions necessary to transfer such claim are completed prior to the Election Deadline, the transferee may return an Election Form in accordance with the Administrative Claims Procedures. If a transferor has made an Opt-In Election or Opt-Out Election prior to any such transfer, however, any transferee with respect to the applicable claim shall be bound by the transferor's prior election.

## VI.   Miscellaneous

21.      Nothing contained herein or any order granting the relief requested in the Motion, and no action taken pursuant to such relief (including any payment made in accordance therewith)

(Page | 16)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

is intended or shall be construed or deemed to be: (i) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law (including, for the avoidance of doubt, that any Administrative Claim subject to the Administrative Claims Procedures is, in fact, entitled to any priority under the Bankruptcy Code or applicable law); (ii) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (iii) a promise or requirement to pay any particular claim; (iv) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (v) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (vii) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

22.     The Debtors may make corrections, additions, or deletions to the Administrative Claimant Materials (including, without limitation, the Publication Notice) as appropriate, including to remove stale or non-pertinent information.

23.     The Debtors and the Claims Agent are authorized and empowered to take such steps and perform such actions as may be necessary or appropriate to implement and effectuate the terms of this Order, without seeking further order of the Court.

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.*, |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief |

by such notice.

25.     Notification of the relief granted by this Order as provided herein is fair and reasonable and will provide adequate, sufficient, and proper notice to Administrative Claimants of their rights and obligations in connection with administrative claims they may have against the Debtors in these Chapter 11 Cases and satisfies the requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, including by providing each Administrative Claimant with clear, conspicuous notice of the consequences of its Opt-In Election, Opt-Out Election, or failure to properly and timely return an Election Form indicating an election.

26.     Nothing in this Order shall prejudice the rights of the Debtors or their estates with respect to any claims arising after the Administrative Claims Record Date.

27.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

28.     Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order (including, without limitation, Bankruptcy Rule 6004(h)) is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

29.     The Court shall retain jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.

<u>**Exhibit 1**</u>

**Notice & Election Form**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF ADMINISTRATIVE CLAIMS PROCEDURES

**PLEASE TAKE NOTICE THAT** on August [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Order"):  (a) approving the terms of the Administrative Claims Procedures; (b) authorizing the above captioned debtors and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to carry out the terms of the Administrative Claims Procedures; (c) approving the noticing procedures in respect of the Administrative Claims Procedures; (d) approving the form and manner of the Election Form to be distributed to Administrative Claimants; (e) scheduling certain dates with respect thereto; and (f) approving procedures for soliciting, receiving, and tabulating votes on the Administrative Claims Procedures.

**PLEASE TAKE FURTHER NOTICE THAT** on or about August 19, 2025, the Debtors caused the Administrative Claimant Materials to be distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Order, and the Administrative Claims Procedures.

**PLEASE TAKE FURTHER NOTICE THAT** the Administrative Claims Procedures Order established **September 16, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "Election Deadline") as the deadline by which certain holders of Administrative Claims may elect to opt in to (an "Opt-In Election") or out of (an "Opt-Out Election") the Administrative Claims Procedures.

**PLEASE TAKE FURTHER NOTICE THAT** to the extent you are a holder of one or more claims which would be entitled to priority treatment pursuant to section 1129 of the Bankruptcy Code (each such claim, an "Administrative Claim") as of the Administrative Claims Records Date, **your claim is subject to the Administrative Claims Procedures**, and you may make an Opt-In Election or Opt-Out Election by checking the appropriate box on the Election Form attached to this notice as **Attachment A** and returning your completed Election Form in accordance with the instructions provided therein.

**YOU ARE RECEIVING THIS NOTICE BECAUSE, PER THE BOOKS AND RECORDS OF THE DEBTORS, YOU ARE THE HOLDER OF AN ADMINISTRATIVE CLAIM SUBJECT TO THE ADMINISTRATIVE CLAIMS PROCEDURES.  YOU ARE ADVISED TO REVIEW THE ORDER AND THE ELECTION FORM FOR ADDITIONAL DETAILS REGARDING THE TERMS OF THE ADMINISTRATIVE CLAIMS PROCEDURES, AND THE CONSEQUENCES OF MAKING AN OPT-IN ELECTION OR OPT-OUT ELECTION, AS WELL AS THE CONSEQUENCES OF FAILING TO MAKE**

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**AN ELECTION.**

 **PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Order or related documents, you should contact Kroll Restructuring Administration LLC, the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims Agent"), by:  (a) calling the Claims Agent at (888) 575-9318 (U.S./ Canada, toll free) or +1 (646) 930-4577 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.ra.kroll.com/RiteAid2025; (c) writing to the Claims Agent at New Rite Aid, LLC's Election Form Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (d)  emailing RiteAid2025Info@ra.kroll.com (with "In re New Rite Aid, LLC Election Inquiry" in the subject line). You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website,  https://restructuring.ra.kroll.com/RiteAid2025, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

 **PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Administrative Claims, you should contact the Claims Agent in accordance with the instructions provided above.

Dated:  August 6, 2025

|  |  |
|---|---|
|  | */s/ Draft* |
|  | **COLE SCHOTZ P.C.** |
|  | Michael D. Sirota, Esq. |
|  | Warren A. Usatine, Esq. |
|  | Felice R. Yudkin, Esq. |
|  | Seth Van Aalten, Esq. (admitted *pro hac vice*) |
|  | Court Plaza North, 25 Main Street |
|  | Hackensack, New Jersey 07601 |
|  | Telephone: (201) 489-3000 |
|  | msirota@coleschotz.com |
|  | wusatine@coleschotz.com |
|  | fyudkin@coleschotz.com |
|  | svanaalten@coleschotz.com |
|  |  |
|  | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
|  | Andrew N. Rosenberg (admitted *pro hac vice*) |
|  | Alice Belisle Eaton (admitted *pro hac vice*) |
|  | Christopher J. Hopkins (admitted *pro hac vice*) |
|  | Sean A. Mitchell (admitted *pro hac vice*) |
|  | 1285 Avenue of the Americas |
|  | New York, New York 10019 |
|  | Telephone: (212) 373-3000 |
|  | Facsimile: (212) 757-3990 |
|  | arosenberg@paulweiss.com |
|  | aeaton@paulweiss.com |
|  | chopkins@paulweiss.com |
|  | smitchell@paulweiss.com |
|  |  |
|  | *Co-Counsel for Debtors and Debtors in Possession* |

## <u>ATTACHMENT A</u>

**Election Form**

### ADMINISTRATIVE CLAIMS PROCEDURES ELECTION FORM

You are receiving this Election Form (this "Election Form") because you are a holder of one or more Administrative Claims against New Rite Aid, LLC and/or its debtor-affiliates (collectively, the "Debtors") as of **July 31, 2025** (the "Administrative Claims Record Date").  Your Administrative Claim is subject to the Administrative Claims Procedures as described in the *Debtors' Motion for Entry of an Order (I) Approving the Administrative Claims Procedures and (II) Granting Related Relief* [Docket No. ●] (the "Motion").[1]  **You may affirmatively opt in to (an "Opt-In Election") or out of (and "Opt-Out Election") the Administrative Claims Procedures by checking the box and returning this Election Form in accordance with the directions below on or before September 16, 2025 at 5:00 p.m. (prevailing Eastern Time) (the "Election Deadline").**

<div style="border:1px solid black">

**THE ELECTION DEADLINE IS SEPTEMBER 16, 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME).**

**FOR YOUR ELECTION TO BE COUNTED, THE CLAIMS AGENT MUST ACTUALLY RECEIVE THIS ELECTION FORM, WITH THE APPROPRIATE BOX BELOW CHECKED, ON OR BEFORE THE ELECTION DEADLINE.**

**IF YOUR ELECTION FORM IS RECEIVED AFTER THE ELECTION DEADLINE, YOUR ELECTION FORM WILL NOT BE COUNTED, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE TREATMENT OF YOUR ADMINISTRATIVE CLAIM AS SET FORTH IN THE ADMINISTRATIVE CLAIMS PROCEDURES AND THIS ELECTION FORM.**

</div>

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS ELECTION FORM CAREFULLY BEFORE COMPLETING THIS ELECTION FORM.

**To make an Opt-In Election or Opt-Out Election**, you must check only the appropriate box below labeled "**OPT-IN ELECTION**" or "**OPT-OUT ELECTION**" as applicable, provide the requested identifying information, and promptly submit your completed Election Form electronically via the electronic portal maintained by Kroll Restructuring Administration LLC ("Kroll" or the "Claims Agent") or by first-class mail or overnight courier.  By returning this Election Form with the "Opt-In Election" or "Opt-Out Election" box checked, you will be deemed to have elected to opt-in or opt-out, as applicable, to the Administrative Claims Procedures.

**If you choose not to make an Opt-In Election or Opt-Out Election**, you do not need to take any further action.  If you do not make an Opt-In Election or Opt-Out Election, either by (i) returning this Election Form without properly indicating such an election or (ii) failing to timely and properly return this Election Form **you shall be deemed, in each case, to have consented to receiving the Deemed Administrative Claim Settlement Amount (defined below) set forth below on account of, and in full and final satisfaction of, your Administrative Claim pursuant to any chapter 11 plan proposed by the Debtors and shall have waived any right(s) to object to any plan of reorganization on the basis of such treatment.**

**Submitting Your Election Form Electronically.**  You may submit this Election Form electronically via Kroll's electronic submission portal by visiting Kroll's case website at https://restructuring.ra.kroll.com/riteaid2025/, navigating to the "Quick Links" section of the site and clicking on "Submit Election Form."

**IMPORTANT NOTE**: To submit your Election Form electronically, you will need your Unique Electronic Election Form ID#.

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion. Access to the Motion and the Debtors' case docket is available free of charge at https://restructuring.ra.kroll.com/riteaid2025/ under "Docket."

**YOUR UNIQUE ELECTRONIC ELECTION FORM ID# IS:** _____

**Submitting Your Election Form in Hard Copy**.  You may deliver this Election Form via paper copy by completing, signing, and sending (by first class mail or overnight courier) to Kroll at:

**NEW RITE AID, LLC ELECTION FORM PROCESSING CENTER**
**C/O KROLL RESTRUCTURING ADMINISTRATION LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NY 11232**

If you believe you have received this Election Form in error, please contact the Claims Agent immediately by:  (a) calling the Claims Agent at (888) 575-9318 (U.S./Canada, toll free) or +1 (646) 930-4577 (international), (b) emailing the Claims Agent at RiteAid2025Info@ra.kroll.com with a reference to "In re New Rite Aid, LLC – Election Form Inquiry" in the subject line, or (c) writing to the Claims Agent at New Rite Aid, LLC's Election Form Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232.

**Item 1. Amount of Administrative Expense Claim**.  As of July 31, 2025, (the "Administrative Claims Record Date") the Debtors' books and records show that you held unpaid Administrative Claims in the aggregate amount listed in the table below as the "Recorded Amount."  In accordance with the Administrative Claims Procedures:

- If you make an Opt-In Election, you shall receive, within ten (10) business days (or as soon as reasonably practicable thereafter) following the filing by the Debtors of a Participation Condition Notice indicating that the Participation Condition has been met, a distribution equal to your Pro Rata Share of $5 million (the "Administrative Claims Distribution Pool"), not to exceed 5.00% of the Recorded Amount or such other amount as agreed between you and the Debtors (the "Maximum Settlement Payment Amount"), in full and final satisfaction of your Administrative Claim (the "First Distribution").

- If you make an Opt-Out Election, you shall retain your administrative claim and not receive any distribution on account of these Administrative Claims Procedures.

- If you do not make an Opt-In Election or an Opt-Out Election, you shall be deemed to have consented to receiving, in full and final satisfaction of your Administrative Claim, a distribution equal to your Pro Rata Share of amounts remaining in the Administrative Claims Distribution Pool after the First Distribution is made, not to exceed the Maximum Settlement Payment Amount or such other amount as agreed between you and the Debtors under any subsequent chapter 11 plan confirmed in the Debtors' chapter 11 cases, in satisfaction of section 1129 of the Bankruptcy Code.

- If you do not agree with the Recorded Amount populated below, you may populate the Administrative Expense Claim amount that you believe to be correct in "Administrative Claimant Recorded Amount" field.

- If you populate an amount in the "Administrative Claimant Recorded Amount" field, the validity of your Election Form and Opt-In Election or Opt-Out Election is subject to (i) further review of your Administrative Claim amount by the Debtors; and (ii) the Debtors' agreement upon your Administrative Claim amount.

- In instances where the Debtors do not agree with the Administrative Claim Amount populated within the "Administrative Claimant Recorded Amount" field, **you may be required to resubmit an Election Form with a reconciled, agreed upon claim amount populated in Recorded Amount field or risk your Election Form not being counted.**

**Each claimant receiving a distribution pursuant to the Administrative Claims Procedures shall be deemed to acknowledge and agree that its consent or deemed consent to such treatment constitutes an agreement with respect to its administrative claim treatment for all purposes including, without limitation, section 1129(a)(9) of the Bankruptcy Code, and shall have waived any rights to object to any plan of reorganization on the basis**

**of such claim treatment.**

| | |
|---|---|
| Recorded Amount | |
| Administrative Claimant Recorded Amount<br><br>(please **only** populate an amount in this field if you disagree with the Recorded Amount pre-populated above) | |
| Maximum Settlement Payment Amount<br>(5.00% of Recorded Amount) | |

**Item 2. Administrative Expense Claims Procedures – Important Information for Administrative Claimants.**

Generally, in order to be approved by the Bankruptcy Court, a chapter 11 plan must provide for the payment, in full, of administrative expense claims.  However, holders of these priority claims can agree to "different treatment" and enable a debtor to confirm and consummate a chapter 11 plan even if funds are not available to pay priority claimants in full.

At this point in the Chapter 11 Cases, the Debtors believe that the assets available for distribution will not be sufficient to repay the Debtors' postpetition lenders, or "DIP Lenders," in full.  Because the loans held by the DIP Lenders are secured by substantially all of the Debtors' assets, these lenders are entitled to payment from the Debtors' assets prior to administrative claimants.  **As a result, unless the DIP Lenders agree to permit the Debtors to do so, they will be unable to provide *any* payment to you on account of your Administrative Claim.**

The Administrative Claims Procedures are the result of such an agreement between the Debtors and the DIP Lenders, and the Debtors believe that implementation of the Administrative Claims Procedures are the only way they will be able to make any distributions to holders of Administrative Claims.  The implementation of the Administrative Claims Procedures is conditioned upon a sufficient number Administrative Claimants (as determined by the Debtors and the DIP Lenders in consultation with the Committee) consenting or being deemed to consent to the treatment contemplated in the Administrative Claims Procedures (the "Participation Condition").

**If the Debtors and the DIP Lenders determine, in consultation with the Committee, that the number of consenting or deemed consenting Administrative Claimants is insufficient and the Participation Condition is not waived, the Administrative Claims Procedures shall not be consummated, no payments shall be made to Administrative Claimants under it, and the Debtors believe that such payments will not be possible at all. Further, the Debtors may, in consultation with the Committee and with the consent of the DIP Lenders (not to be unreasonably withheld), terminate the Administrative Claims Procedures at any time prior to the filing of a Participation Condition Notice indicating that the Participation Condition has been met or waived.**

Please take notice that regardless of whether you participate in the Administrative Claims Procedures, the Debtors' rights of setoff, recoupment, and any and all potential Claims (as that term is defined in section 101(5) of the Bankruptcy Code) and causes of action of the Debtors, including under chapter 5 of the Bankruptcy Code or applicable law, are expressly preserved.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE *DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE ADMINISTRATIVE CLAIMS PROCEDURES AND (II) GRANTING RELATED RELIEF* AND THE ORDER, INCLUDING THE ADMINISTRATIVE EXPENSE CLAIM PROCEDURES SET FORTH THEREIN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**INSTRUCTIONS FOR COMPLETING THIS ELECTION FORM, AS WELL AS THE ELECTION AND CERTIFICATION ITEMS TO BE COMPLETED, ARE PROVIDED ON THE FOLLOWING PAGES.**

## INSTRUCTIONS FOR COMPLETING THIS ELECTION FORM

1. Capitalized terms used in the Election Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Motion.[2]

2. **If you choose to make an Opt-In Election or Opt-Out Election**, you must complete the Election Form by taking the following steps:

   (a) clearly indicate your decision to make an Opt-In Election or Opt-Out Election by checking the box labeled "**OPT-IN ELECTION**" or "**OPT-OUT ELECTION**" (as applicable) below;

   (b) carefully read the "Certifications" set forth below and provide the requested identification information; and

   (c) sign, date and submit your Election Form either electronically or in hard copy as described in the Election Form.

3. **Return of Election Form**:  Your Election Form MUST be returned to the Claims Agent so as to be **actually received** by the Claims Agent on or before the Election Deadline, which is **5:00 p.m. (prevailing Eastern Time) on September 16, 2025**.

4. If an Election Form is received by the Claims Agent after the Election Deadline, it will not be effective.  Additionally**,** the following Election Forms may NOT be counted:

   - ANY ELECTION FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE CLAIM;

   - ANY ELECTION FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

   - ANY ELECTION FORM THAT DOES NOT INDICATE AN OPT-OUT ELECTION OR OPT-IN ELECTION;

   - ANY ELECTION FORM THAT INDICATES BOTH AN OPT-OUT ELECTION AND AN OPT-IN ELECTION;

   - ANY ELECTION FORM TRANSMITTED BY FACSIMILE OR E-MAIL;

   - ANY UNSIGNED ELECTION FORM; OR

   - ANY ELECTION FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE ADMINISTRATIVE CLAIMS PROCEDURES

---

[2] The Motion and the Debtors' case docket is available free of charge at https://restructuring.ra.kroll.com/riteaid2025/ under "Docket."

ORDER.

5.      If multiple Election Forms are received from the same holder with respect to the same Administrative Claim prior to the Election Deadline, the last valid form timely received will supersede and revoke any earlier received forms.

6.      The Election Form is not a letter of transmittal and may not be used for any purpose other than to opt in to the Administrative Claims Procedures.

7.      The Election Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of an Administrative Claim.

8.      <u>Please be sure to sign and date your Election Form in the section titled "Certifications" below</u>.  If you are signing an Election Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Administrative Claimant.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Election Form.

**<u>PLEASE SUBMIT YOUR ELECTION FORM PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS ELECTION FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AGENT AT:**

**(888) 575-9318 (U.S./ CANADA, TOLL FREE) OR +1 (646) 930-4577 (INTERNATIONAL)
OR VIA E-MAIL TO: <u>RITEAID2025INFO@RA.KROLL.COM</u>  (WITH "IN RE NEW RITE AID,
LLC – ELECTION FORM INQUIRY"  IN THE SUBJECT LINE).  PLEASE NOTE THAT THE
CLAIMS AGENT WILL NOT ACCEPT ELECTION FORMS SUBMITTED VIA E-MAIL.**

---

**IF THE CLAIMS AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE ELECTION FORM FROM YOU BEFORE THE OPT-IN DEADLINE, WHICH IS 5:00 P.M. PREVAILING EASTERN TIME ON SEPTEMBER 16, 2025, THEN YOUR ELECTION WILL NOT BE EFFECTIVE, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE TREATMENT SET FORTH IN THE ADMINISTRATIVE CLAIMS PROCEDURES.**

---

**<u>PLEASE INDICATE YOUR OPT-IN OR OPT-OUT ELECTION ON THE FOLLOWING PAGE.</u>**

*[The remainder of this page is intentionally left blank.]*

**OPT-IN ELECTION.** YOU MAY ELECT TO OPT-IN TO THE ADMINISTRATIVE CLAIMS PROCEDURES BY CHECKING THE BOX BELOW:

> ☐    **By checking this box, you elect to <u>OPT-IN</u> to the Administrative Claims Procedures and receive up to the Maximum Settlement Payment Amount on account of your Administrative Claim in accordance with the Administrative Claims Procedures.**

**OPT-OUT ELECTION.** YOU MAY ELECT TO OPT-OUT OF THE ADMINISTRATIVE CLAIMS PROCEDURES BY CHECKING THE BOX BELOW:

> ☐    **By checking this box, you elect to <u>OPT-OUT</u> of the Administrative Claims Procedures.**

**PLEASE ENSURE THAT ONLY <u>ONE</u> OF THE ABOVE ELECTIONS IS MADE.**

**<u>Certifications.</u>**

By signing this Election Form, the undersigned ("<u>You</u>") certifies that:

    (a)   as of the Administrative Claims Record Date, either: (i) You were the holder of one or more Administrative Claims; (ii) You were an authorized signatory for an entity that was a holder of one or more Administrative Claims; or (iii) You were the beneficial holder (or authorized signatory for a beneficial holder) of one or more Administrative Claims;

    (b)   You (or in the case of an authorized signatory, the Administrative Claimant) have received a copy of and reviewed the Election Form and Your Election Form is completed pursuant to the terms and conditions set forth herein;

    (c)   You have submitted the Election Form with respect to all of your Administrative Claims against the Debtors; and

    (d)   You have not submitted any other Election Form with respect to the Administrative Claims against the Debtors listed in the Recorded Amount on your Election Form, or, if any other Election Forms have been submitted with respect to such Administrative Claims against the Debtors, then any such earlier forms are hereby revoked.

| | |
|---|---|
| Name of Administrative Claim Holder or Beneficial Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the Administrative Claimant) |
| Title of Signatory: | |
| Address: | |
| | |

Telephone Number:

Email:

Date Completed:

**PLEASE ENSURE THAT YOU HAVE REVIEWED THIS ELECTION FORM IN ITS ENTIRETY, AND (I) MADE AN OPT-IN ELECTION OR OPT-OUT ELECTION AND (II) PROPERLY COMPLETED THE CERTIFICATION ABOVE, THEN RETURN IT TO THE CLAIMS AGENT IN ACCORDANCE WITH THE INSTRUCTIONS ABOVE SO THAT IT IS RECEIVED ON OR BEFORE THE ELECTION DEADLINE.**

**Exhibit 2**

**Publication Notice – Administrative Claims Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF ELECTION DEADLINE**
**FOR THE SETTLEMENT OF ADMINISTRATIVE CLAIMS**

**PLEASE TAKE NOTICE THAT** on August [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Administrative Claims Procedures Order"): (a) approving the terms of the Administrative Claims Procedures; (b) authorizing the above captioned debtors and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to carry out the terms of the Administrative Claims Procedures; (c) approving the noticing procedures in respect of the Administrative Claims Procedures; (d) approving the form and manner of the Election Form to be distributed to Administrative Claimants; (e) scheduling certain dates with respect thereto; and (f) approving procedures for soliciting, receiving, and tabulating votes on the Administrative Claims Procedures.

**PLEASE TAKE FURTHER NOTICE THAT** the Administrative Claims Procedures provides holders of Administrative Claims with an option to elect to certain treatment in respect of such claims. For the specific terms and conditions of the Administrative Claims Procedures, please refer to the terms of the program, which can be accessed as described below.

**PLEASE TAKE FURTHER NOTICE THAT** the Administrative Claims Procedures Order established **September 16, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "Election Deadline") as the deadline by which certain holders of Administrative Claims may elect to opt-in to or opt-out of the Administrative Claims Procedures.

**PLEASE TAKE FURTHER NOTICE THAT** on or about August 19, 2025, the Debtors caused the Administrative Claimant Materials to be distributed to known holders of Administrative Claims in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Administrative Claims Procedures Order, and the Administrative Claims Procedures.

**IF YOU BELIEVE YOU HAVE AN ADMINISTRATIVE CLAIM AGAINST ANY DEBTOR ENTITY, YOU MAY BE ENTITLED TO MAKE AN OPT-IN TO OR OUT-OF THE SETTLEMENT PROPOSED IN THE ADMINISTRATIVE CLAIMS PROCEDURES. TO PARTICIPATE IN THE OPTIONAL ELECTION:**

> 1. **Contact the Claims Agent at least three (3) business days before the Election Deadline by (a) emailing RiteAid2025Info@ra.kroll.com (with "In re New Rite Aid, LLC New Administrative**

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Claimant Election Inquiry" in the subject line) or (b) through the Online Portal set forth at https://restructuring.ra.kroll.com/RiteAid2025.  You should also contact your attorney if you have one.

2. **Request from the Claims Agent the Administrative Claimant Materials.  To the extent you submitted your request on or after seven (7) business days before the Election Deadline, the Claims Agent will provide you with the Administrative Claimant Materials by overnight mail or via email.**

3. **Carefully review the Administrative Claimant Materials.  You may wish to consult a lawyer on how your rights, if any, may be affected by the Administrative Claims Procedures.**

4. **At your option, you may make an Opt-In Election or an Opt-Out Election by completing, signing, and returning your Election Form according to the instructions provided therein.  The failure to follow the instructions on the Election Form may result in your election being disqualified.**

5. **Submit the completed and signed election form to the Claims Agent so that it is actually received by the Election Deadline (September 16, 2025 at 5:00 p.m. (prevailing Eastern Time)).  Election Forms received after the Election Deadline will not be effective.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Administrative Claims Procedures Order or any related documents, you should contact the Claims Agent retained by the Debtors in these chapter 11 cases, Kroll Restructuring Administration LLC by:  (a) calling the Claims Agent at (888) 575-9318 (U.S./ Canada, toll free) or +1 (646) 930-4577 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.ra.kroll.com/RiteAid2025; (c) writing to the Claims Agent at New Rite Aid, LLC's Election Form Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (d)  emailing RiteAid2025Info@ra.kroll.com (with "In re New Rite Aid, LLC Election Inquiry" in the subject line). You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Administrative Claims (if any), you should contact the Claims Agent in accordance with the instructions provided above.

Dated:  August 6, 2025

*/s/ Draft*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and
Debtors in Possession*