UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Bradshaw Rost
**TENENBAUM & SAAS P.C.**
4504 Walsh Street
Suite 200
Chevy Chase, MD  20815
Tel:  (301) 961-5300
Fax:  (301) 961-5305
E-mail: brost@tspclaw.com

-and-

Douglas G. Leney
**ARCHER & GREINER, P.C.**
1025 Laurel Oak Road
Voorhees, NJ  08043
Tel:  (215) 963-3300
Fax:  (215) 963-9999
E-mail:  dleney@archerlaw.com

*Counsel for Westminster Granite Main LLC*

In re:

NEW RITE AID, LLC, *et al.*[1]

Debtors.

Chapter 11

Case Number:  25-14861-MBK
(Jointly Administered)

Hon. Michael B. Kaplan

**SUPPLEMENT TO LIMITED OBJECTION FILED BY WESTMINSTER GRANITE MAIN LLC [DKT #1309] TO TENTH NOTICE OF REJECTION OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES.**

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at: https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

230835020 v1

Westminster Granite Main LLC ("Westminster Landlord"), by and through its undersigned counsel, hereby files its Supplement to the Limited Objection filed by the Westminster Landlord on July 2, 2025 [Dkt. #1309] to the Tenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases ("Tenth Notice of Objection") filed by the Debtor on June 25, 2025 [Dkt. #1093].

This Supplement is being filed due to the discovery of new facts not previously disclosed by the Debtor prior to the filing of the Tenth Notice of Objection.

## PRELIMINARY STATEMENT

1. Westminster Landlord and debtor Rite Aid of Maryland, Inc. ("RAM") entered into a Lease dated July 2, 1985, ("Original Lease") whereby RAM leases from the Westminster Landlord approximately 9,856 square feet of rentable area ("Premises") at the Westminster Shopping Center in Carroll County, Maryland, located at No. 7 Route 140 and Englar Road, Westminster, Maryland ("Westminster Shopping Center").[2]

2. The Westminster Landlord filed its Limited Objection because RAM had proposed to reject the Westminster Lease without assigning to the Westminster Landlord as required by the 5th Amendment to the Lease a liquor license issued by the Carroll County Liquor Board ("Liquor License") to RAM for the sale of liquor at the Premises. Thus, the Limited Objection requested "that any order entered rejecting the Westminster Lease also direct that RAM take all commercially

---

[2] The Original Lease was amended and assigned by (i) a Lease Modification Agreement dated September 4, 1987 ("Lease Modification"); (ii) First Amendment to Lease dated April 9, 2002 ("1st Amendment"); (iii) Second Amendment to Lease dated February 28, 2007 ("2nd Amendment"); (iv) Third Amendment to Lease, dated March 6, 2012 ("3rd Amendment"); (v) Fourth Amendment to Lease, dated November 21, 2021("4th Amendment"; and (vi) Fifth Amendment to Lease, dated July 12, 2024 ("5th Amendment") (The Original Lease, Lease Modification, 1st Amendment, 2nd Amendment, 3rd Amendment, 4th Amendment and 5th Amendment collectively referred to as the "Westminster Lease").  A true and correct copy of the Westminster Lease is attached as Exhibit "A" to the Declaration of Jason Klug filed on June 5, 2025, at Dkt. #695-2 ("Klug Declaration") in support of the pending Motion of the Westminster Landlord to Allow Administrative Expense Claim and Compel Immediate Payment Thereof. Dkt. #695.

reasonable steps to assign the Liquor License to the Westminster Landlord." Unbeknownst to the Westminster Landlord, and not previously disclosed by RAM, was the fact that RAM had apparently already surrendered the Liquor License to Carrol County in blatant disregard to RAM's contractual obligation to "take commercially reasonable action needed to maintain and preserve the validity of the Liquor License" and was in willful breach of its covenant to "not take any action which allows the Liquor License to expire or terminate" as required by the 5th Amendment to the Lease. The Westminster Landlord now files this Supplement to bring to the Court's attention these new disturbing facts so that the Court may enter the appropriate relief to remedy this post-petition breach by RAM.

3. As set forth in the Limited Objection, RAM assumed four express covenants and obligations under the 5th Amendment with respect to the Liquor License. First, Ram was required to take "commercially reasonable action needed to maintain and preserve the validity of the Liquor License". Second, Ram was prohibited from taking "any action which allows the Liquor License to expire or terminate, without reasonable prior notice to the [Westminster] Landlord". Third, RAM was required to provide the Westminster Landlord with copies of all "correspondence with the regulatory authorities regarding the Liquor License" before the expiration of the Westminster Lease. Fourth, RAM agreed to "take all commercially reasonable steps to cooperate with any change of ownership application" filed by the Westminster Landlord "which assistance includes but is not limited to, executing such documents as needed to secure a transfer and assignment of the Liquor License." RAM has breached all these express contractual obligations under the 5th Amendment.

4. As set forth below, despite extensive communications between the Westminster Landlord and RAM regarding the status of the Liquor License, and repeated efforts to purchase

3

230835020 v1

the Westminster Lease and secure performance of RAM's obligations under the 5th Amendment, RAM never disclosed to the Westminster Landlord that it had decided to simply abandon the valuable Liquor License and refuses to even execute the assignment application form to be filed with the Carrol County Liquor Board to transfer the Liquor License.

## STATEMENT OF FACTS

5. Upon the commencement of this bankruptcy proceeding, the Westminster Landlord made repeated inquiries to RAM regarding the desire by the Westminster Landlord to purchase the Westminster Lease in conjunction with the assignment of Liquor License consistent with RAM's obligations under the 5th Amendment to the Lease.

6. On May 27, 2025, representatives of the Westminster Landlord contacted A&G Realty Partners, LLC ("A&G Partners"), the broker for RAM, stating that: "We, as Landlord or related entity, are planning on bidding on this lease and just wanted to make sure that Rite Aid is going to sell the lease and the associated liquor license in one combined transaction."[3] In response, Mike Matlat, Senior Managing Director for A&G Partners, brought into the discussions Mr. Jim Akers at the Debtor who was responsible for the Liquor License. Mr. Akers responded as follows: "If we are free to sell to any buyer, and the leaseholder meets Carroll County Liquor Board requirements, the license could continue to operate at the current premises or be moved to another location within Carroll County. Further I understand that the sale would be for the business – Rite Aid Liquors (DBA Rite Aid #6830) – with the license transferring with the business." Exhibit No. "1", at pg. 8.

7. All follow up inquiries from the Westminster Landlord to RAM after this initial communication on May 27, 2025, for purposes of engaging RAM in negotiations to acquire the

---

[3] See Exhibit No. "1", page 10, to Declaration of Bradshaw Rost attached thereto ("Rost Declaration").

Westminster Lease along with the Liquor License were either ignored, non-responsive, or contradictory. The Westminster Landlord could not even get clarity from RAM as to whether the Liquor License would be sold as part of one the auctions the Debtor was conducting.

8.  Following receipt of the *Bidding Procedures for the Submission, Receipt, and Analysis of Bids in Connection with the Sale of the Debtor's Assets* [Dkt. #142] listing the Westminster Lease as being subject to the upcoming auction the Westminster Landlord submitted on May 23, 2025, the required "Preliminary Bid Documents" in order to qualify as a bidder for the Westminster Lease at the auction. In that e-mail, the Westminster Landlord stated in pertinent part that: "**The Landlord is only interested in bidding for the lease if the liquor license is in fact being conveyed along with the lease as part of the sale** and therefore needs an answer to this pivotal question." [Emphasis in original]. See Exhibit No. "2", page 2, Rost Declaration.

9.  The Westminster Landlord continued to communicate with Mike Matlat and Jim Akers expressing its interest in purchasing the Westminster Lease and Liquor License either through a direct sale or at the auction. In response, the Westminster Landlord received instructions via an e-mail on May 27, 2025, from attorney Jessica Brown at Holland & Knight representing RAM and stating "[p]lease do not correspond to Rite Aid except through me." See Exhibit No. "1", pg. 5, Rost Declaration.

10. Consistent with those instructions, counsel for the Westminster Landlord wrote to Ms. Brown on May 27, 2025, stating in pertinent part that: "I have been trying to engage one of the debtor's many lawyers to discuss this lease and license". See Exhibit No. "1", pg. 4, Rost Declaration. Ms. Brown responded on May 28, 2025, stating that "we are conferring and will get back to you." Id. at pg. 3

230835020 v1

11. On May 31, 2025, not hearing from Ms. Brown, counsel wrote again to Ms. Brown noting that A&G Partners was no longer responsible for the sale of the Westminster Lease and Liquor License, that Ms. Brown was handling the matter, and asking "[c]an we talk on Monday about this matter?" Id. at pg. 3

12. Not hearing from Ms. Brown, counsel wrote to her again on June 3, 2025, and received a response on that date from Ms. Brown that the "Debtors continue to evaluate all options with respect to the [Westminster Lease], but do not intend to include it in the Remaining Asset Auction at this time." Id. at pg. 2.

13. Two days later, however, on June 5, 2025, Mike Matlat at A&G Partners sent an e-mail blast informing interested parties that contrary to information from Ms. Brown, the Westminster Lease would in fact be included as part of the upcoming auction of the Remaining Assets with a bid deadline of June 23, 2025. See Exhibit No. "3", pg. 2, Rost Declaration.

14. Surprised by this sudden change of position, the following morning on June 6, 2025, counsel for the Westminster Landlord wrote to Ms. Brown as follows:

> In your e-mail below sent on June 3, 2025, you advised that the debtor did not intend to sell my client's lease as part of the auction for the debtor's remaining assets. We received, however, last night on June 5, 2025, the attached flyer from the debtor's broker advising that my client's lease will now be part of the next auction with a bid deadline of June 23, 2025.
>
> Can you advise whether the liquor license will be sold and assigned as part of the sale of the below lease? Under the Carroll County requirements the license may only be used at the leased premises, so we assume these two assets will be sold together.

See Exhibit No. "1", pg. 1, Rost Declaration. Ms. Brown never responded to this e-mail.

15. On the same day, counsel wrote to Mr. Matlat and made the same inquiry as follows: "Can you advise whether the Debtor's attached liquor license is being auctioned as part of the below lease which it is associated with?" See Exhibit No. "3", pg. 1, Rost Declaration.

6

230835020 v1

16. Mr. Matlat responded the same day stating unequivocally that the Liquor License was "[n]ot for sale," and thus would not be included as part of the auction of the Westminster Lease. Id.

17. At that point in time, the Westminster Landlord had been led to believe that the Westminster Lease would be auctioned without the Liquor License being conveyed as part of the sale. The Westminster Landlord therefore filed on June 11, 2025, a Limited Objection to the Auction of Debtor's Remaining Assets [Dkt. #807], objecting to the auction of the Westminster Lease without the concurrent assignment of the Liquor License.

18. On June 16th, 2025, counsel for the Westminster Landlord talked with David Bass, counsel for RAM, seeking clarification as to whether the Liquor License would be auctioned in conjunction with the Westminster Lease. In that phone call, Mr. Bass advised "that the debtor would consider a bid for the lease conditioned on the license being transferred also." See Exhibit No. "4", pg. 4, Rost Declaration.

19. On June 17, 2025, Mr. Bass wrote back advising that the Westminster Lease would be removed from the auction, thereby mooting the objection by the Westminster Landlord to the auction. Id. at pg. 2.

20. The Westminster Landlord heard nothing further regarding the Liquor License until June 25, 2025, when RAM filed its Tenth Notice of Rejection [Dkt #1093]. The Tenth Notice of Rejection was silent with respect to the Liquor License and the Westminster Landlord assumed that RAM intended to take some other action to monetize the value of the Liquor License for the benefit of the Debtors. In its timely objection to the Tenth Notice of Rejection filed on July 2, 2025, [Dkt. #1309] the Westminster Landlord requested the following relief:

7

230835020 v1

> Westminster Landlord respectfully requests that any order entered rejecting the Westminster Lease also direct that RAM take all commercially reasonable steps to assign the Liquor License to the Westminster Landlord, or in the alternative, the order stipulate that any rights and ownership interest RAM has in the Liquor License is subject to RAM's obligation to convey the Liquor License to the Westminster Landlord and the rights of the Westminster Landlord to compel assignment of the Liquor License in any state court action for specific performance to enforce the assignment provisions of the 5th Amendment to the Lease.

21.     The Westminster Landlord heard nothing further until July 15, 2025, when Tyler Zelinger, another attorney for RAM, called counsel for the Westminster Landlord to inform him that RAM – ***without any prior notice whatsoever to the Westminster Landlord*** - had abandoned the Liquor License, and in their opinion as a result of RAM's decision to reject the Westminster Lease the Liquor License had been extinguished by operation of law. See Exhibit No. "5", Rost Declaration.

22.     RAM has never provided the Westminster Landlord with any correspondence with the Carroll County Liquor Board regarding the disposition of the Liquor License. Thus, even now it is not entirely clear what specific steps RAM has taken to dispose of the Liquor License.

23.     Counsel for the Westminster Landlord responded the next day requesting that RAM execute the assignment form to be filed with the Carroll County Liquor Board to transfer the Liquor License to the Westminster Landlord as follows:

> Thank you for the information yesterday regarding the liquor license. My take-a-way from the conversation was that Rite Aid of Maryland, Inc. ("RAM") had decided not to auction the liquor license because of the need to close the store and the timing problem caused by the 10 day forfeiture provision of MD Code Al. Bev §4-702 ("Except as otherwise provided in this subtitle, a license issued by a local licensing board expires on the 10th day after a license holder has vacated or been evicted from the licensed premises.")
>
> To say we were shocked by this news would be an understatement for the following reasons.

8

1. Paragraph 3(b) of the 5th Amendment to the Westminster Lease expressly states that: "During the Term of the Lease Tenant will take commercially reasonable action needed to maintain and preserve the validity of the Liquor License and shall not take any action which allows the Liquor License to expire or terminate, *without reasonable prior notice to Landlord*." [Emphasis Added]. Needless to say, RAM failed to provide the landlord with "any" advance notice of its intention forfeit the Liquor License, thereby depriving the Landlord of the ability to take the necessary steps to protect its rights in the Liquor License.

2. This blatant breach of RAM's contractual obligations is especially egregious when it is recognized that ever since the bankruptcy filing we have attempted repeatedly to engage RAM regarding its intentions with respect to the Liquor License and making clear the landlord's willingness to purchase the Liquor License at an auction or to discuss other arrangements to provide for the orderly assignment of the Liquor License to the Landlord as required by the 5th Amendment. As documented in the several filings we have made with the bankruptcy court, in response to those numerous overtures we received nothing but inconsistent, conflicting, and non-responsive information from RAM and its agents regarding its intentions with respect to the Liquor License, and a persistent refusal to engage the Landlord in any discussions to secure the assignment of the Liquor License. Nor was there ever any suggestion whatsoever that RAM planned to forfeit this valuable asset.

As I mentioned in our phone call, in light of this unexpected news I asked whether RAM would execute the application of the assignment of the Liquor License to the landlord consistent with its contractual obligation under the 5th Amendment which states in pertinent part that the Tenant agrees " to take all commercially reasonable steps to cooperate with any change of ownership application as filed by Landlord with respect to the Tenant's Liquor License to have the Liquor License transferred and assigned to either the Landlord or a new tenant of the Landlord as requested by the Landlord, which assistance includes but is not limited to, *executing such documents as needed to secure a transfer and assignment of the Liquor License*. [Emphasis Added].

Upon receipt of the executed application we will proceed to take the necessary action to process the assignment of the Liquor License before the Board of License Commissioners for Carroll County, Maryland.

Please have RAM execute the attached application on page 11 and return the signed document to me today. If RAM is unwilling to execute the application please provide me with an explanation for that reason, and upon receipt we will evaluate our next legal options to enforce this contractual obligation of RAM.

Id. at pg. 1-2, Rost Declaration.

230835020 v1

24. Counsel for RAM rejected this request and advised that RAM would not sign the transfer application form for the Liquor License because the Liquor License has expired. Id. However, whether the Liquor License has expired by operation of MD Code Al. Bev §4-702 is an issue to be decided by the Carrol County Liquor Board and if need be, by the Maryland State Courts. The unresolved nature of that issue provides no basis for RAM to simply refuse to perform its post-petition contractual obligations.

## **RELIEF REQUESTED AND BASIS THEREFOR**

25. The requirement of RAM to convey the Liquor License to the Westminster Landlord upon expiration of the term is an integral part of the Westminster Lease. RAM promised to maintain and preserve the value of the Liquor License for the benefit of the Westminster Landlord which Liquor License was to be conveyed to the Westminster Landlord upon expiration of the term. As demonstrated above, RAM has willfully breached its contractual obligations under the 5th Amendment.

26. First, RAM did not take any action to maintain and preserve the validity of the Liquor License. Rather, by seeking to reject the Westminster Lease and abandoning the Liquor License RAM instead has taken affirmative action to destroy the validity of the Liquor License absent intervention by this Court.

27. Second, RAM inexplicably failed to provide the Westminster Landlord with any advance notice of its intention to take action that would allow the Liquor License to expire or terminate. Nor has RAM provided the Westminster Landlord with any of the correspondence with the Carroll County Liquor Board regarding the disposition of the Liquor License. This misconduct is particularly incredulous and inexplicable in view of the repeated and active efforts by the Westminster Landlord to engage RAM in discussions regarding the purchase of the Westminster

Lease and transfer of the Liquor License. Despite all the conflicting and vague responses from RAM regarding the Liquor License and auction of the Westminster Lease RAM never once indicated at any time that it was planning to simply abandon the Liquor License with the intent of allowing the Liquor License to expire and terminate under State law. Rather, RAM constantly led the Westminster Landlord to believe that the Liquor License was a valuable asset of the Debtors' estate that RAM planned to monetize for the benefit of its creditors.

28. Third, RAM has unreasonably refused to execute the necessary transfer application forms requested by the Westminster Landlord for purposes of prosecuting the assignment application before the Carroll County Liquor Board.

29. RAM should be required to perform its post-petition obligations and any order authorizing the rejection of the Lease should be conditioned upon RAM executing the application transfer form to be filed with the Carroll County Liquor Board. Further, the Debtor should not be allowed to reject the Westminster Lease and abandon the Premises until such time as the Westminster Landlord has completed its efforts to secure approval of the transfer of the Liquor License. An order from this Court holding in abeyance RAM's desire to reject the Lease will provide legal support for the request to be made by the Westminster Landlord to the Carroll County Liquor Board that the 10 day forfeiture provision of MD Code Al. Bev §4-702 should not be applied for purposes of extinguishing the Liquor License in view of the pending bankruptcy proceeding and impact of the automatic stay.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, Landlord respectfully requests entry of an order directing that RAM execute the liquor transfer form and such other documents as reasonably required to complete the application transfer process before the Carroll County Liquor Board and

11

230835020 v1

to hold in abeyance the rejection of the Westminster Lease until such time as the application process before the Carroll County Liquor Board is completed.

| | |
|---|---|
| Dated: Voorhees, New Jersey<br>August 8, 2025 | **ARCHER & GREINER, P.C.**<br><br> /s/  Douglas G. Leney<br>Douglas G. Leney, Esq. (NJ Bar No. 034232007)<br>1025 Laurel Oak Road<br>Voorhees, NJ  08043<br>Tel:  (215) 963-3300<br>dleney@archerlaw.com<br><br>-and-<br><br>**TENENBAUM & SAAS P.C.**<br>Bradshaw Rost, Esq.<br>*Admitted Pro Hac Vice*<br>4504 Walsh Street<br>Suite 200<br>Chevy Chase, MD  20815<br>Tel:  (301) 961-5300<br>E-mail: brost@tspclaw.com<br><br>*Counsel for Westminster Granite Main LLC* |

230835020 v1