**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**DEBTORS' RESPONSE TO OBJECTIONS OF WESTMINSTER GRANITE**
**MAIN LLC TO DEBTORS' NOTICES OF REJECTION OF CERTAIN**
**EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES**

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), file this response to the (i) *Objection of Westminster Granite Main LLC to Tenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1309] (the "Lease Objection"); (ii) *Objection of Westminster Granite Main LLC to Twelfth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

51004854

1381] (the "License Objection" and together with the Lease Objection, the "Objections"); and (iii) the *Supplemental Limited Objection filed by Westminster Granite Main LLC to Tenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1839] (the "Supplemental Objection"). In response to the Objections, the Debtors respectfully state as follows:

## RELEVANT BACKGROUND

1. Westchester Granite Main LLC ("Landlord") and Rite Aid of Maryland, Inc. ("RAM") are party to that certain lease, dated July 2, 1985 (the "Lease Agreement"), as amended and assigned by the (i) Lease Modification Agreement, dated September 4, 1987, (ii) First Amendment to Lease, dated April 9, 2002, (iii) Second Amendment to Lease, dated February 28, 2007, (iv) Third Amendment to Lease, dated March 6, 2012, (v) Fourth Amendment to Lease, dated November 21, 2021; and (vi) Fifth Amendment to Lease, dated July 12, 2024 (the "Fifth Amendment," collectively with clauses (i) through (v) and the Lease Agreement, the "Lease"). The Lease covered certain premises located at 7 Westminster Shopping Center, Westminster, Maryland, 21157.

2. Paragraph 3(b) of the Fifth Amendment, titled "Liquor License," provides as follows:

> Liquor License. The Tenant currently holds a Class A liquor license for the Premises, a true and accurate copy which is attached hereto as Exhibit No. 1 ("Liquor License"). Upon the earlier of either the (i) date the Tenant provides the Notice of Termination; or (ii) 180 days before the expiration of the Lease term, the Tenant shall provide Landlord with a copy of the Tenant's file on its Liquor License (i.e., the original application, any renewals, and correspondence with the regulatory authorities regarding the Liquor License). During the Term of the Lease Tenant will take commercially reasonable action needed to maintain and preserve the validity of the Liquor License and shall not take any action which allows the Liquor License to expire or terminate, without reasonable prior notice to Landlord. **Should the Lease be terminated prior**

2

> **to the expiration date of the Term of the Lease or upon timely receipt of the Notice of Termination the Tenant agrees to take all commercially reasonable steps to cooperate with any change of ownership application as filed by Landlord with respect to the Tenant's Liquor License to have the Liquor License transferred and assigned to either the Landlord or a new tenant of the Landlord as requested by the Landlord, which assistance includes but is not limited to, executing such documents as needed to secure a transfer and assignment of the Liquor License**.

Fifth Amendment to Lease § 3(b) (emphasis added).

3. By the Fifth Amendment, RAM only agreed to "take all commercially reasonable steps to cooperate with any change of ownership application." It did not agree, as alleged by Landlord, to convey the Liquor License to Landlord. *See* Lease Obj. at ¶¶ 14-15.

4. On June 25, 2025, the Debtors filed the *Tenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1093] designating the Lease for rejection, effective as of June 30, 2025.

5. On July 2, 2025, the Debtors filed the *Twelfth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1308] (together with Docket No. 1093, the "Rejection Notices") designating the Unexpired License Agreement relating to the Lease (the "License") for rejection, effective as of June 30, 2025. The License relates to signage on the pylon sign located at the entrance to the Westminster Shopping Center and authorized RAM to use one (1) two-sided panel at the Westminster Shopping Center.

6. The Lease Objection requests that any order granting the rejection "also direct that RAM take all commercially reasonable steps to assign the Liquor License to the Westminster Landlord, or in the alternative, the order stipulate that any rights and ownership interest RAM has in the Liquor License is subject to RAM's obligation to convey the Liquor License to the Westminster Landlord and the rights of the Westminster Landlord to compel assignment of the

51004854

Liquor License in any state court action for specific performance to enforce the assignment provisions of the 5th Amendment to the Lease." *See* Lease Obj. at ¶ 4.

7. In the License Objection, Landlord makes the same request and requests that any order granting the rejection of the License "should plainly state that it does not include the Liquor License." *See* License Obj. at ¶ 13. The Supplemental Objection goes one step further, requesting that this Court refuse to allow the Debtors to reject the Lease until the Landlord has "completed its efforts to secure approval of the transfer of the Liquor License." Supp. Obj. at ¶ 29.

8. The Objections and Lease Objections evidence a fundamental misunderstanding of the spirit and policy goals underlying a debtor's rejection powers. Repeatedly, and without any cognizable legal basis, Landlord asserts that it is entitled to extract commercially unreasonable, extra-contractual and, as set forth below, questionably legal actions from RAM to the detriment of RAM's estates and for its own benefit. This Court should not countenance Landlord's requests, and the Objections and Supplemental Objection should be overruled.

## ARGUMENT

**A.  The Objections Should be Overruled Because RAM Had No Obligation to Assign the Liquor License to Landlord Under the Lease, RAM's Cooperation Obligation Was Not Triggered, and the Liquor License Has Now Terminated Under Maryland Law.**

9. The Objections should be overruled by the Court because RAM has no obligation to "assign" or "convey" the Liquor License to Landlord under the Fifth Amendment. In making the argument that RAM had some affirmative obligation to transfer the Liquor License, Landlord repeatedly mischaracterizes the terms of the Lease. Specifically, Landlord argues that, under the Fifth Amendment RAM "promised to maintain or preserve the Liquor License for the benefit of", and had a contractual obligation to "assign" the Liquor License to, Landlord. *See* Lease Obj. at ¶¶ 4, 13. Landlord argues, therefore, that any order granting rejection of the Lease "should make

4

51004854

clear that whatever rights RAM retains in the Liquor License is subject to RAM's *continuing obligation to convey* the Liquor License to the" Landlord.  *See* Lease Obj. at ¶ 8 (emphasis added).

10. Contrary to Landlord's position, however, RAM was under no obligation to assign or convey the Liquor License to Landlord, and as discussed *infra*, retaining the license for the duration of the lengthy transfer process would not have been commercially reasonable.  Under the Fifth Amendment, RAM only agreed to:

> [T]ake all commercially reasonable steps to cooperate with **any change of ownership application** as filed by Landlord with respect to the Tenant's Liquor License to have the Liquor License transferred and assigned to either the Landlord or a new tenant of the Landlord as requested by the Landlord, which assistance includes but is not limited to, executing such documents as needed to secure a transfer and assignment of the Liquor License.

Fifth Amendment § 3(b) (emphasis added).  Simply stated, the Fifth Amendment only obligated RAM to take commercially reasonable efforts to assist Landlord with any change of ownership application for the Liquor License.  RAM had no obligation to "convey" the Liquor License to Landlord upon termination of the Lease.

11. At the same time, RAM's limited obligations under the Fifth Amendment to cooperate with any change of ownership application was not triggered by the Debtors' rejection of the Lease.  Under the Fifth Amendment, RAM's obligation to cooperate with Landlord on any change of ownership application would only be triggered if the Lease was "terminated prior to the expiration date of the Term of the Lease or upon timely receipt of the Notice of Termination."  *See* Fifth Amendment § 3(b).  Courts have routinely held that the rejection of a lease results in a prepetition breach and does not constitute a termination of the lease.  *In re CB Holding Corp.*, 448 B.R. 684, 686-87 (Bankr. D. Del. 2011) (noting that it is "well-settled that the rejection of a lease pursuant to § 365 results in a prepetition breach; it does not constitute a termination of the lease").

5

51004854

In *CB Holding*, the court held that the debtors were not obligated to offer a liquor license to a landlord because the lease was neither terminated nor expired by virtue of being rejected. *Id.* at 687. Here, as in *CB Holding*, rejection of the Lease does not constitute the requisite "termination" that would obligate RAM to cooperate with Landlord on the transfer of the Liquor License.

12. Moreover, Landlord never alleges in the Objections that it filed a change in ownership application. Nor does Landlord even allege that it qualifies as a transferee or that it had selected a qualified tenant to operate the Liquor License.[2] As such, RAM was not obligated to take any action or otherwise cooperate with Landlord to transfer the Liquor License. *See* Fifth Amendment to Lease § 3(b) ("Tenant agrees to take all commercially reasonable steps to cooperate with any change of ownership application **as filed by Landlord** . . . ." (emphasis added)). In the Objections, Landlord attempts to construe RAM's untriggered "cooperation" obligation as an affirmative obligation to assign or convey the Liquor License in a manner completely inconsistent with the plain language of the Lease.

13. Even if RAM were obligated to assist Landlord with the liquor license transfer process under Maryland law and take "commercially reasonable steps to cooperate" with any change of ownership application, RAM's participation in any such process is not possible or practicable under the circumstances. Under applicable Carroll County, Maryland regulations,[3] RAM would have to, *inter alia*, obtain Court approval of, notarize and sign a contract of sale with the change of ownership application, appear at a hearing before the Board of License Commissioners for Carroll County (the "Board"), and obtain the Board's approval of the Liquor

---

[2] *See* Rules and Regulations of The Board of License Commissioners for Carroll County, https://www.carrollcountymd.gov/media/1960/rules.pdf at §§ 10, 6.

[3] Rules and Regulations of The Board of License Commissioners for Carroll County, https://www.carrollcountymd.gov/media/1960/rules.pdf at § 10.

51004854

License's transfer to a third party. The next Board hearing is currently scheduled to take place in October 2025. Continuing RAM's operations or occupancy at the premises until this process can play out is simply not "commercially reasonable" given the limited resources available to the Debtors' in these chapter 11 cases.[4]

14. Maryland law also thwarts Landlord's argument that RAM has any continued obligation to convey the Liquor License to Landlord. As explained below, the Liquor License has terminated/expired by operation of law. Even if RAM were required under the Lease to convey the Liquor License to Landlord—which it is not—it could not do so because the Liquor License no longer exists. *See SVAP II Pasadena Crossroads LLC v. Fitness Int'l LLC*, 306 A.3d 748, 758 (Md. App. 2023) ("Frustration of purpose applies where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance, and legal impossibility applies when, by no fault of the promisor, the law itself subsequently forbids or prevents the performance of the promise." (quotations omitted)). As such, there is no basis to include language in the order granting rejection of the Lease (and any obligations thereunder with respect to the Liquor License) to include specific relief as to the Liquor License; any such obligations are moot given that RAM is no longer the license holder.

15. In light of the foregoing, the Court should overrule the Objections as (i) Landlord misconstrues the terms of the Fifth Amendment, inventing an assignment obligation where none exists, (ii) RAM's obligations with regard to the Liquor License were not triggered by rejection of the Lease, and, even (iii) if they were triggered, RAM's cooperation is not possible at this juncture

---

[4] As discussed below, applicable regulations provide that licenses like the Liquor License expire following the vacancy or cessation of operations at the applicable premises. As such, to retain the ability to support any transfer of the license as the license holder, RAM would need to continue operations months past its planned closing date. Requiring this is far outside the scope of the "commercially reasonable" support contemplated by the Lease.

7

51004854

and preserving the ability to cooperate would not have been commercially reasonable, and thus would have been beyond the scope of RAM's obligations under the plain language of the Lease.

B.  **No Relief Can Be Granted to Movant Because the Liquor License Terminated Under Maryland Law and Landlord Has No Right to Seek Specific Performance to Enforce the Fifth Amendment.**

16. The Court should also overrule the Objections because the Court cannot fashion the relief that Landlord seeks. By the Objections, Landlord asserts that RAM has extant rights in the Liquor License that can be preserved by an order of this Court or that Landlord can seek specific performance in a state court action to enforce the terms of the Lease relating to the Liquor License. Neither suggestion is true.

17. Consistent with the Rejection Notices, the Debtors have elected to cease operating and close the store location at the premises underlying the Lease. Given that RAM vacated the premises on or about June 30, 2025, Maryland law provides that the Liquor License expired by operation of law. The relevant Carroll County, Maryland rules and regulations provide "[i]f a business decides to close permanently," which RAM has elected to do, "they must return their license to the Carroll County Board of License Commissioners either by dropping it off at the office or by mailing it in to the office."[5] Maryland state law further provides for the *automatic* expiration of a license ten days after the subject premises have been vacated.[6] Thus, while the Objections assert and imply that RAM is receiving a windfall by unduly retaining the Liquor License to be otherwise monetized in contravention of the spirit of its agreement with Landlord, that is not the case: RAM is no longer the license holder. *See, e.g.,* Lease Obj. at ¶ 15 ("To allow

---

[5] Rules and Regulations of The Board of License Commissioners for Carroll County, https://www.carrollcountymd.gov/media/t3vd1x23/rulesregulationsupdatefinal2025.pdf at § 11a.

[6] MD Code Al. Bev. 4-702(b), providing that "a license issued by a local licensing board expires on the 10th day after a license holder has vacated or been evicted from the licensed premises."

RAM to reject the Westminster Lease without fulfilling the corresponding obligation to assign the Liquor License to the Westminster Landlord would improperly bestow upon the debtor's estate the valuable asset of the Liquor License while depriving the Westminster Landlord of its contractual right to the Liquor License.").

18. Given that the Liquor License has now terminated by operation of Maryland law, this Court cannot fashion any relief for Landlord by order authorizing the Debtors to reject the Lease. In the Supplemental Objection, the Landlord advances several theories as to how the Liquor License might still exist, none of which find any basis in fact or applicable law.

19. Landlord asserts, in the Supplemental Objection that RAM's decisions to cease operating and subsequent refusal to execute a transfer application provided by Landlord were thus inconsistent with the support or maintenance provisions of the Lease with respect to the Liquor License, those assertions ignore the reality that the Lease requires only ***commercially reasonable*** support of transfer applications ***filed by Landlord***. Not only was no transfer application filed prior to the vacancy of the property, but continuing operations purely to support Landlord's efforts to affect a transfer of the license would not have been a commercially reasonable course of action for a chapter 11 debtor focused on minimizing costs and reducing its operational footprint.

20. In demanding that RAM execute its transfer application, Landlord also seeks to require RAM to take actions inconsistent with RAM's reasonable interpretation of an unambiguous law. In the Supplemental Objection, Landlord states that "whether the Liquor License has expired by operation of MD Code Al. Bev §4-702 is an issue to be decided by the Carrol County Liquor Board and if need be, by the Maryland State Courts," and that "[t]he unresolved nature of that issue provides no basis for RAM to simply refuse to perform its post-petition contractual obligations." Supp. Obj. at ¶ 24. There is no unresolved issue; section 4-702

9

51004854

unambiguously provides that the Liquor License has expired.  The only identifiable legal theory advanced by Landlord as to why this may be an open question, that "MD Code Al. Bev §4-702 should not be applied for purposes of extinguishing the Liquor License in view of the pending bankruptcy proceeding and impact of the automatic stay," is contrary to black letter bankruptcy law and without merit.

21.     First, courts have consistently held that the automatic stay does not prevent the automatic expiration of a statutory right or contract due to the passage of time.  *In re Moncada NJ Solar 201, LLC*, 592 B.R. 779, 796-7 (holding that the automatic stay did not prevent the expiration of debtor's rights and award under a state statute where "once the . . . deadline passed, no affirmative action was required on the part of the [state government] to terminate the SubQ Award; rather, the SubQ Award terminated as a matter of law by the plain terms of [applicable law]. Accordingly, [the debtor's] interest ***is not protected by the automatic stay***."); *In re Tudor Motor Lodge Assocs., Ltd. P'ship*, 102 B.R. 936, 949 (Bankr. D.N.J. 1989) ("The automatic stay does not toll the mere running of time under a contract, and thus it does not prevent automatic termination of the contract."); *In re Margulis*, 323 B.R. 130 (Bankr. S.D.N.Y.) ("the automatic stay does not toll or restrain the mere passage of time. Thus, it does not stop a contract from terminating by its own terms as long as the termination does not depend on a post-petition 'act.'").

22.     Second, even if expiration of the Liquor License required some affirmative act by the Carroll County Liquor Board or Maryland (it did not), such an act would be an exercise of its police powers, and so within the scope of section 362(b)(4)'s exception to the automatic stay.  11 U.S.C. § 362; *In re Arnage, Inc.*, 33 B.R. 662 (Bankr. E.D. Mich. 1983) (holding the automatic expiration of a liquor license due to trustee's failure to file for an extension was not prohibited by the automatic stay, as valid exercise of the Michigan Liquor Control Commission's police powers);

*In re Go West Ent., Inc.*, 387 B.R. 435 (Bankr. S.D.N.Y. 2008) (holding that revocation of a liquor license was "clearly within the purview of the public health, safety and welfare laws" and noting that "[l]icense revocation proceedings have frequently been held to be proceedings within a State's police or regulatory powers and thus within the exception of § 362(b)(4)."); *Vaspourakan, Ltd.* v. *Licensing Bd. For City of Boston*, 85 B.R. 189, 190 (D. Mass. 1988) ("The law is well settled that the Bankruptcy Court cannot interfere with a state agency's legitimate use of its police powers," affirming bankruptcy court's denial of the sale of a liquor license where such sale was denied by applicable regulator).

23. In addition to the fact that supporting Landlord's in its months-long transfer application process is not commercially reasonable, which alone is sufficient to bring Landlord's request outside the scope of the plain language of the Lease, Landlord's July 16 request was that RAM execute an application ***in its capacity as a licensee***—a status that, by operation of law, it no longer holds.[7] Setting aside the commercial unreasonableness of Landlord's request, the fact that the applicable obligation has not been triggered, and the fact that Landlord provided this form after the property was vacated, each as discussed separately, Landlord thus demands that RAM make a misleading attestation to the Carroll County Board of License Commissioners. This Court should not countenance Landlord's request for an order directing RAM to do so.

24. Further, Landlord also has no right to seek specific performance to compel assignment of the Liquor License in state court litigation against RAM. Courts in this District have held that "where a party's right to an equitable remedy can be satisfied by monetary damages,

---

[7] Supp. Obj. Decl. Ex. 5. While Landlord provides a partial excerpt of its counsel's conversation with counsel to RAM, the relevant attachment to Landlord's correspondence, *i.e.*, the form that Landlord requested RAM execute, was not provided. This form requires that the applicant provide a copy of the sales contract between the transfer applicant and licensee (none exists), and requested that RAM execute as a "licensee . . . indicat[ing] his or their consent to the transfer."

11

a claim is a proper alternative for the equitable remedy." *In re Orama Hosp. Grp., Ltd.*, 601 B.R. 340, 349 (Bankr. D.N.J. 2019) (rejecting landlord's right to specific performance of a repurchase option because landlord has a right to money damages for breach of the option under New Jersey law). As Landlord's request for specific performance can be reduced to money damages in the form of a rejection damages claim capped by section 502(b)(6) of the Bankruptcy Code, Landlord has no right to seek specific performance of the Fifth Amendment in this or any state court. *Id.* ("Specific performance should not be permitted where the remedy would in effect do what § 365 meant to avoid, that is, impose burdensome contracts on the debtor." (internal citation omitted)). The case relied upon most heavily in the Objections for the premise that Landlord has some surviving specific performance right with respect to rejected obligations regarding the Liquor License has been unequivocally rejected by courts in this Circuit. *In re CB Holding Corp.*, 448 B.R. at 689-90 (holding that rejection deprives contract counterparties of the right to specifically enforce contracts, noting that the court found "the analysis of the First Circuit in *Ground Round* unpersuasive" and that "[t]he First Circuit acknowledged that there are cases contrary to its ruling," citing cases).

C. **Rejection of the Lease and the License are Valid Exercises of RAM's Business Judgment.**

25. While the Objections and Supplemental Objection repeatedly assert that RAM has breached its obligations under the lease, acted unreasonably, or refused to take actions which the Landlord construes as minor or ministerial in support of its post-hoc application for the transfer of a non-existent license, the truth is much simpler. RAM evaluated the costs of continued operation of the subject premises, determined that continuing to operate those premises was not in the best interests of the estate, and exercised its business judgment in vacating the premises and seeking to reject the Lease. While this was not the outcome that Landlord had hoped for, that does not mean

that Landlord's interests supplant those of RAM's bankruptcy estate, and Landlord's request that this Court provide an order to "provide legal support" for Landlord's intended future actions in state law proceedings evidences a misunderstanding of the standard applicable when determining whether a proposed lease rejection should be approved. Supp. Obj. at ¶ 29.

26. The Objections make no effort to challenge the Debtors' business judgment in their decision to reject the Lease, nor do they challenge that the premises were properly vacated prior to the requested rejection effective date. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The ability to assume or reject executory contracts and unexpired leases is essential in chapter 11 to relieve the debtors' estate from burdensome obligations that could impede confirmation of a chapter 11 plan. *See N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See, e.g., Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *see also N.L.R.B. v. Bildisco and Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)). The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), cert, denied, 475 U.S. 1057 (1986).

27. Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. Further, the business judgment standard is satisfied when a debtor determines that assumption or rejection will benefit

13

the estate. *See In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722, at *7–8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires consideration of the benefit of the rejection to the debtor's estate); *see also In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

28. In pursing the Objections, Landlord seeks to further its own parochial interests concerning the Lease and the Liquor License. Landlord does not, however, disagree with or otherwise challenge RAM's business judgment in rejecting the Lease. That is because the decision to reject the Lease is well within the Debtors' "business judgment" and to the benefit of the Debtors' estates; the fact that this decision resulted in the expiration of the Liquor License in frustration of the Landlord's goals is of no consequence. *See Bildisco*, 682 F.2d at 79; *Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 722, at *7–8. Under this standard, the Court need not second-guess the Debtors' business judgment and should authorize rejection of the Lease for the benefit of RAM's estates, not grant Landlord's request for injunctive relief protecting its own ability to drag RAM through a months-long application process, which would be both contrary to the estate's interest and far outside the scope of the Lease terms.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objections and grant the relief requested by the Debtors together with such other relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated:  August 8, 2025

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*

51004854