<table>
<tr><td>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**BARCLAY DAMON LLP**
Scott L. Fleischer
1270 Avenue of the Americas, Suite 2310
New York, NY 10020
Telephone: (212) 784-5810
Facsimile: (212) 784-5799
E-mail: sfleischer@barclaydamon.com

*Counsel to SVAP III Plaza Mexico, LLC*

</td></tr>
</table>

| In re: | Chapter 11 |
|---|---|
| NEW RITE AID, LLC, *et al.*[1] | Case No. 25-14861 (MBK) |
| Debtors. | (Jointly Administered) |

### OBJECTION OF SVAP III PLAZA MEXICO, LLC TO NOTICE OF SUCCESSFUL AND BACKUP BIDDERS WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' LEASES

SVAP III Plaza Mexico, LLC ("Landlord"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Notice of Successful and Backup Bidders with Respect to the Auction of Certain of the Debtors' Leases* [Docket No. 1524] (the "Assignment Notice"), seeking to assume and assign that certain unexpired nonresidential real property lease between Thrifty Payless, Inc. ("Tenant") and Landlord to Ross Dress for Less, Inc. ("Ross"). In support of the Objection, Landlord respectfully represents as follows:

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

32100700.2

## I.   **PRELIMINARY STATEMENT**[2]

The proposed assumption and assignment of the Lease to Ross should not be approved for several reasons.  Landlord was excluded from the auction process despite having submitted a timely, qualified bid to terminate the Lease over a month before the Auction.  Landlord was not provided an opportunity to respond to Ross's bid before, at, or after the Auction despite Landlord's counsel having notified the Debtors that Landlord was prepared to submit a higher bid than its original termination bid.  By excluding the Lease from a readily available forum for a competitive bidding process and foreclosing any opportunity for Landlord to bid on their Lease in response the to the Ross bid – the full details of which still remain undisclosed – the Debtors have not complied with their fiduciary duty to maximize value for the estates and therefore the sale to Ross should not be approved.  At a minimum, the auction should be re-opened to permit Landlord's participation.

To date, Landlord has only received an SEC Form 10-K covering 2024 for Ross Stores, Inc. as purported evidence of Ross's adequate assurance of future performance under the Lease.  However, that covers a prior period and does so for the parent company, and nothing in the report refers to proposed assignee Ross Dress for Less, Inc. except for one incidental mention as a subsidiary.  Landlord therefore has no knowledge of – and the Debtors have therefore not met their burden showing – the financial condition and operating performance of proposed assignee Ross Dress for Less, Inc.  This is required not just to evaluate its sufficiency, but so Landlord can compare such information to the financial condition and operating performance of Tenant the time they became the tenant under the Lease, as required by the Bankruptcy Code.  No such information

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them in the Objection.

has been filed or otherwise provided to Landlord to date and the proposed Lease assignment should be denied.

To the extent the Court is inclined to grant the assumption and assignment of the Lease to Ross over Landlord's objection, as a condition to any assumption and assignment of the Lease, the Debtors and/or Ross, as applicable, must cure or provide adequate assurance of prompt cure of all defaults under the Lease, including to compensate Landlord for any actual pecuniary losses incurred by Landlord resulting from all defaults, such as their reasonable attorneys' fees, as well as any losses and damages incurred by Landlord.

In addition, any assignment of the Lease must not be free and clear of (a) any liability and responsibility for all obligations to pay all accruing or accrued, but unbilled charges or obligations due under the Lease, including unbilled year-end adjustments and reconciliations, or (b) any contractual indemnification obligations to indemnify and hold Landlord harmless.  Any proposed form of order approving the assumption and assignment of the Lease must ensure that the Lease is assumed and assigned pursuant to the terms of the Lease and does not cut off obligations arising thereunder and Landlord's rights to enforce those obligations or any related agreements.  Absent sufficient assurances, an assignment of the Lease must be denied.

On parallel tracks with this Objection, Landlord is pursuing discovery from the Debtors and Ross, which may raise new issues and/or shed light on issues already raised.  As a threshold matter, a hearing on the proposed Lease assignment should not take place unless and until Landlord has received the necessary documents and deposition testimony.

Landlord intends to continue to engage in discussions with the Debtors (and, only as appropriate, Ross) regarding the issues raised by this Objection, but unless resolved by a withdrawal of Ross's bid for the Lease or other satisfactory result, Landlord will prosecute its

32100700.2

Objection and reserves all rights to argue these and other issues at any hearing(s) on the Assignment Notice.

## II.    BACKGROUND

### (a) The Bankruptcy Cases

1.      On May 5, 2025 (the "Petition Date"), New Rite Aid, LLC and certain of its debtor affiliates (the "Debtors", and each a "Debtor") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court").

2.      On May 6, 2025, the Debtors filed *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] (the "Lease Procedures Motion"), seeking to establish procedures to sell or transfer certain unexpired leases of non-residential real property by public auction (the "Auction Procedures").

3.      On June 11, 2025, the Court entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Lease Procedures Order"), which granted the Lease Procedures Motion, including the Auction Procedures.

4.      On June 18, 2025, Landlord submitted a Lease Termination Offer, a Bid Letter, and a Bidder Registration in accordance with the approved Auction Procedures (the "Landlord Bid").[3]

---

[3] Attached hereto collectively as Exhibit 1 are the documents constituting the Landlord Bid and certain related emails.

32100700.2

5. On July 18, 2025, the Debtors filed the *Notice of Qualified Bids and Virtual Auction* [Docket No. 1498] (the "Qualified Bid Notice"), which stated that "the Auction with respect to the Specified Leases identified on **Exhibit A**" would be held virtually on July 21, 2025.[4]

6. On July 21, 2025, the Debtors conducted an auction with respect to the Lease (the "Auction").

7. Landlord appeared at the Auction, through counsel, and was ready and willing to present a topping bid on its Lease.

8. At the Auction, the Debtor announced that it was proceeding by private sale to Ross for the Lease and Landlord was not given an opportunity to submit a competing bid. The details of the Ross bid were not shared with Landlord or read into the record at the Auction.

9. At the Auction and following the Auction, Landlord, through counsel, informed the Debtors that it was prepared to increase the Landlord Bid and submit a topping bid. Landlord was not contacted by the Debtors to discuss a topping bid.

10. On July 22, 2025, the Debtors filed the Assignment Notice[5], indicating their intent to assume and assign the Lease to Ross, under the terms of the Lease Procedures Order with a proposed assumption and assignment date of August 31, 2025.

11. The Assignment Notice did not include any of the substantive agreements and/or transfer documentation by and between Ross and the Debtors, but did include a proposed form of order (the "Assignment Order"), and scheduled a proposed cure amount of $35,342.72 (the "Proposed Cure Amount") in connection with any assumption and assignment of the Lease to Ross.

---

[4] The Lease was included on Exhibit A to the Qualified Bid Notice. Qualified Bid Notice, # 33, p. 4.

[5] Landlord, through counsel, received consent from the Debtors' counsel for an extension of the objection deadline on the Assignment Notice to August 13, 2025. Landlord's counsel was also told the hearing would be rescheduled for August 26, 2025, which will need to be adjourned.

32100700.2

12.     Prior to the filing of this Objection, Landlord, through counsel, reached out to request information in support of adequate assurance of future performance.  As of the filing of this Objection, only a Form 10-K for Ross Stores, Inc. – which is not the proposed assignee – has been provided to Landlord and no information about the Tenant upon initial leasing has been provided.

**(b)  The Lease**

13.     Tenant and Landlord are parties to that certain unexpired lease of nonresidential real property dated February 20, 1987, as amended by that certain Amendment No. 1 to Lease dated February 28, 1987 and Amendment Number 2 to Lease and Memorandum of Lease dated February 20, 1987 (collectively, as amended or modified, the "Lease")[6], whereby the Debtors lease retail space from Landlord located at 11325 Long Beach Boulevard, Lynwood, California (the "Premises"), in that certain shopping center commonly known as Plaza Mexico (the "Center").

14.     The Lease term expires on May 31, 2028.  *See* Ex. 1, Art. 1.5 p. 2 (referring to the initial term of the Lease going through 2008, Art. 15.1 pp. 11-12 (providing for tenant options of four consecutive periods of five years following the initial term).

15.     The Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990). Attached hereto as Exhibit 3 is a site plan for the Center.  *Plaza Mexico*, Sterling Organization, last visited Aug. 13, 2025, https://www.sterlingorganization.com/properties/plaza-mexico/.

16.     Landlord intends to continue to engage in discussions with the parties regarding the issues raised by this Objection and reserves all rights as to same.

---

[6] The Lease is attached hereto collectively as Exhibit 2.

32100700.2

### III.   **ARGUMENT**

17.     Landlord opposes any assumption and assignment of the Lease to Ross, as Landlord has not been provided an opportunity to respond to Ross's bid and the Debtors are not maximizing the value of the estate.  The Court should, at a minimum, re-open the auction as to the Lease or otherwise permit Landlord to meaningfully participate in the sale process for the Lease.

18.     Even if the Court does not deny the proposed Lease assignment on the process ground or permit Landlord to bid further on the Lease, the Lease assignment should be denied based on a lack of adequate assurance of future performance of the proposed assignee entity as compared to the Tenant upon initial leasing, which is the Debtors' burden.

19.     To the extent the Court is inclined to approve the assumption and assignment of the Lease over the Objection, Landlord further objects to any assumption and assignment of the Lease absent strict compliance with all of the requirements of Sections 365 of the Bankruptcy Code, including as to cure and adequate assurance of future performance, and the recognition of liability for accruing but not yet due obligations under the Lease, as well as any indemnification obligations, as more fully set forth herein.

#### A.     By Failing to Follow the Court-Approved Lease Auction Procedures, the Debtors Have Not Maximized Value for the Estates

20.     "Many courts have recognized that debtors, 'in conducting the sale process, have a fiduciary duty to maximize the value of their estates.'"  *In re Parkcliffe Dev.*, No. 24-30814, 2025 Bankr. LEXIS 171, at \*19 (Bankr. N.D. Ohio Jan. 28, 2025) (collecting cases); *Pacificorp Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.)*, 233 B.R. 739, 752 (Bankr. W.D. Ky. 1998) ("'[W]hen a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold.'

32100700.2

This duty to maximize the estate often trumps other duties the debtor may owe to individual creditors or third parties.") (citations omitted).

21.    In *Global Crossing*, the Bankruptcy Court for the Southern District of New York explained that while the debtors in that case had complied with their fiduciary duty to consider an expression of interest, "[i]f this Court were to believe, for half a second, that the Debtors had spurned a better offer to the detriment of their fiduciary duties, this Court would not hesitate to invoke its powers."  *In re Global Crossing Ltd.*, 295 B.R. 726, 745 (Bankr. S.D.N.Y. 2003); *see also In re Broadmoor Place Invs., L.P.,* 994 F.2d 744, 746 (10th Cir. 1993) ("[W]e hold that a Bankruptcy Court in a case such as this does have the power to disapprove a proposed sale recommended by a trustee or debtor-in-possession if it has an awareness there is another proposal in hand which, from the estate's point of view, is better or more acceptable.").

22.    When a bidder seeks to re-open an auction, it often follows a bid submitted after the applicable deadline.  Here, though, the Landlord Bid was submitted timely and all Landlord wants is the ability to fully participate in the process.  In *Sunland*, the court refused to approve a sale to the proposed successful bidder following an overbid made at the sale hearing when (i) the bidding procedures put the proposed successful bidder on notice that the auction results were not final and still subject to court approval, (ii) the aggrieved bidder's overbid was higher than the proposed successful bidder's current bid, (iii) the aggrieved bidder was not "lying in the weeds" waiting to bid at the last minute, (iv) the sale order was not yet entered, and (v) the court could not find that the proposed sale was in the best interests of the estate.  *In re Sunland, Inc.*, 507 B.R. 753, 760-61 (Bankr. D.N.M. 2014); *see also Brink v. Payless Cashways, Inc. (In re Payless Cashways, Inc.)*, 281 B.R. 648, 652 (when a bidder sought to re-open an auction prior to

a court order, the court employed a "sliding scale" approach considering "reasonable expectations" and its "broad discretion").

23.    In this case, rather than working to maximize the value to the estate through a fair and open auction process involving Landlord as a Qualified Bidder that would logically have a strong interest in their own Lease, the Debtors and their advisors instead chose to ignore Landlord, the Landlord Bid, and Landlord's stated desire to increase the Landlord Bid. Without the ability to respond to Ross's bid or even to learn the details of it – which still haven't been disclosed – Landlord has not been given an opportunity to meaningfully participate in the sale process despite being prepared to offer a topping bid at the Auction or thereafter.

24.    All parties were on notice that the results of the auction were not final based on the plain language of the Lease Procedures Order, which included the following illustrative provisions:

- "Notwithstanding anything herein to the contrary, the Debtors reserve the right to (i) determine, in their discretion and in consultation with the Consultation Parties, whether to proceed with the sale of any Lease at any time prior to the entry of an Assumption Order for such Lease, and (ii) adjourn, reschedule, or cancel any Sale Hearing, in consultation with the Consultation Parties, and upon filing of a notice of such adjourned, rescheduled, or cancelled Sale Hearing with the Court." Lease Procedures Order, ¶ 22(f).

- "The inclusion of an assigned Lease on the Notice of Successful and Backup Bidders will not: (a) obligate the Debtors to assume and assign any Lease listed thereon or the Successful Bidder to take assignment of such assumed Lease….No assigned Leases shall be assumed absent closing on the assignment thereof to the applicable Successful Bidder and entry of an Assumption Order, unless otherwise agreed to by the Debtors, the Successful Bidder, and the applicable Lease Counterparty. Lease Procedures Order, ¶ 22(g).

- "[T]he Debtors may determine, in their discretion and in consultation with the Consultation Parties, whether to

proceed with the sale of any Lease…pursuant to these
Auction Procedures." Lease Procedures Order, Schedule 1,
§ A.

Further, while the Lease Procedures Order referred to a scenario in which the auction may be

canceled or adjourned as to a particular asset, it was explicitly referring to when *no qualified bid*

*was received* by the bid deadline, which was not the case here.  In that scenario, Debtors were to

provide prompt notice of such cancellation or adjournment to, among other parties, Landlord.  *See*

Lease Procedures Order, ¶ 5.  The Lease Procedures also provide that "[a]t the Auction, each

Qualified Bidder[7] *will* be entitled…to submit overbids", which Landlord was not permitted to do.

Lease Procedures Order, ¶ 6.  It is also odd that the Debtors did not list Landlord as the back-up

bidder for the Lease despite its timely, qualified bid.

25.    By proceeding in this manner, the Debtors have not met their fiduciary

duties to maximize value for the estate and have instead chilled bidding – both for the Lease and

generally in the future – by excluding Landlord from participation in the sale process.  As a result,

this Court should not approve the sale of the Lease to Ross and, at a minimum, the auction should

be re-opened or Landlord should otherwise be permitted to bid competitively on the Lease.

**B.    The Debtors Have Not Demonstrated Adequate Assurance of Future
Performance to Assume and Assign the Lease to Ross**

26.    Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code, Debtors may only

assume and assign Landlord's Lease if "adequate assurance of future performance by the assignee

of such . . . lease is provided, . . . ."  As set forth in Bankruptcy Code Section 365(b)(3), adequate

assurance of future performance in the shopping center context includes, inter alia, adequate

assurance:

---

[7] "For the avoidance of doubt, any Lease Counterparty bidding on the Lease to which it is a counterparty shall be
deemed a Qualified Bidder."  Lease Procedures Order, ¶ 6.

(A)    of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

* * *

(C)    that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, . . . relating to the shopping center; . . . .

*See* 11 U.S.C. § 365(b)(3).

27.    The burden of proof on adequate assurance issues is with the Debtors. *See Tex. Health Enters. v. Lytle Nursing Home (In re Tex. Health Enters.)*, 72 Fed. Appx. 122, 126 (5th Cir. 2003) (internal citations omitted); *In re Lafayette Radio Elecs. Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991); *In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (collecting cases).

28.    It does not suffice to show that a proposed assignee of an unexpired lease of non-residential real property has a "good" or "sufficient" financial condition in a vacuum. Instead, the Debtors must prove that Ross's financial condition and operating performance – and not that of parent Ross Stores, Inc. – is "similar to the financial condition and operating performance of the debtor…as of the time the debtor became the lessee under the lease." 11 U.S.C. § 365(b)(3)(A); *see also MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 613 B.R. 51, 77-78 (S.D.N.Y. 2020), *rev'd on other grounds*, *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 616 B.R. 615 (S.D.N.Y. 2020).[8]

---

[8] "Congress concluded that if a shopping center landlord were dragged into bankruptcy court, it should not have a new tenant imposed on it unless the proposed assignee 'looked,' in terms of its financial condition and operating performance, like the party that was vacating the premises. Moreover, Congress selected a particular moment in time for making the comparison between the wherewithal of debtor and assignee: the assignee today versus the debtor as

32100700.2

29.     To date, Landlord has only received a Form 10-K for Ross Stores, Inc. as purported adequate assurance for Ross, a different entity.  This information is not adequate, as it fails to speak to the proposed assignee entity for the Lease or provide information regarding the proposed use of the Premises or the amount of the debt and equity capitalization of Ross or assignee entity.   Landlord demands strict proof of Ross's adequate assurance of future performance, which includes information in support of the financial condition and operating performance of Tenant under the Lease at the time of initial leasing.

30.     Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided.  *See, e.g., Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

31.     For the reasons set forth herein, the Debtors have not met their burden with respect to adequate assurance of future performance under this shopping center Lease.

**C.     Any Assignment of Leased Real Property Must be Subject to all Applicable Restrictive Covenants**

32.     The *cum onere* principle and requirements of section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that restrictive covenants be respected in connection with any lease assignment.  *See* 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); *BNLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).  Shopping center leases are part of an integrated and complex commercial relationship

---

it was at the commencement of the lease, when its financial condition and operating performance were such as to make it an attractive tenant to the landlord. Congress in its wisdom decided that only an assignee with a financial condition and operating performance that resembled the debtor's *ab initio* would provide a shopping center landlord with 'adequate assurance' that the bargain originally struck would be performed by the lease's assignee. Congress may have been wrong to think so, but that was for Congress to decide."

between the shopping center owner and tenants that arise under both leases as well as reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the properties.  Accordingly, assumption and assignment of any leases in accordance with section 365 of the Bankruptcy Code and applicable law requires compliance with, and is subject to, any agreements containing restrictive covenants or other obligations related to the properties.

33.    Accordingly, Landlord further objects to the assumption and/or assignment of the Lease or any Premises to the extent such transfer is not subject to all applicable reciprocal easement agreements, other similar agreements, and other restrictive covenants or obligations set forth therein.

**D.    The Cure Amount as of any Lease Assignment Must Provide for the Payment of All Obligations Due and Owing under the Lease**

34.    In order to assume and assign the Lease, to the extent permitted over the Objection of Landlord, the Debtors must also comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

35.     The Proposed Cure Amount set forth in the Assignment Notice is not only incorrect as of the filing of this Objection,[9] but it also does not account for unbilled charges which may come due in the future.  The Proposed Cure Amount set forth by the Debtors must be modified to reflect any additional charges owing, as well as recognize the liability for accruing but not yet due charges under the Lease, and to account for Landlord's pecuniary losses for its reasonable attorneys' fees.

36.     In addition to the current outstanding rent and other monthly charges due under the Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid, either as cure on the effective date of any assumption or assumption and assignment, or when properly billed under the Lease.

i.     Attorneys' Fees and Costs

37.     The Debtors (or the Successful Bidder) takes the Lease *cum onere*—subject to existing burdens.  The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their leases.  *In re Wash. Capital Aviation & Leasing,* 156 B.R. 167, 172 (Bankr. E.D. Va. 1993).  If forced to continue in the performance of the Lease, Landlord is entitled to the full benefit of the bargain under the Lease with the Debtors.  *See Matter of Superior Toy and Mfg. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1996).

38.     The Debtors are obligated to cure all defaults under the Lease and compensate Landlord for its actual pecuniary losses as a result of defaults under the Lease.  *See* 11 U.S.C. § 365(b)(1)(A) and (B).  The principle is well-recognized.  *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

---

[9] A report showing the unpaid Lease obligations is attached hereto as <u>Exhibit 4</u>.

39.     Accordingly, Landlord further requests that it be reimbursed for all of its actual pecuniary losses including, but not limited to, attorneys' fees and costs expended with regard to Debtors' defaults in these bankruptcy proceedings, including in connection with this Objection to oppose the assumption and assignment of the Lease.  As of the filing of this Objection, Landlord estimates its attorney's fees and costs incurred to be approximately no less than $15,000 and reserves the right to supplement this figure with its actual billings at the time any cure is reconciled and paid.

ii.     Year-End Adjustments and Reconciliations and Indemnification

40.     In addition to rent and related monthly charges, attorneys' fees, costs, and other losses, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Center pursuant to a triple-net lease, where it pays rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2024 may not yet have been billed, and such charges that are accruing for 2025 will not

32100700.2

be billed until 2026). In other instances, certain charges may be paid in arrears and cannot be calculated (in some cases) until a year or more after year-end.

41.     Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Lease, and they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  The obligation to pay the year-end adjustments is, however, certainly a part of the obligation to provide adequate assurance of future performance.  As a result, the Court should deny any attempt to assign the Lease "free and clear" of these obligations.

42.     Debtors remain responsible for all accrued or accruing charges under the Lease and must pay such charges when they come due under the Lease.  The Debtors (or Ross) assumes and assigns the Lease subject to its terms and must assume and assign all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease.  Any Assignment Order should clearly state that the Debtors (or Ross) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of the assignment.  In addition, any provision in the Assignment Order that purports to release the Debtors (or Ross) of further liability based upon a payment of cure amounts must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

43.     Finally, the Lease requires the Debtors (or Ross) to indemnify and hold Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Center by the Debtors, Ross or

16

their agents.  Any assumption and assignment of the Lease must be subject to the terms of the

Lease, including the continuation of all indemnification obligations, regardless of when they

arose.[10]  In the alternative, the Debtors must provide (by insurance or otherwise) that they can

satisfy the indemnification obligations under the Lease for any claims that relate to the period prior

to assumption or assumption and assignment of the Lease.  Nothing in the Assignment Order

should preclude Landlord from pursuing the Debtors, their insurance, or any other party that may

be liable under the Lease, and Landlord requests that any order specifically preserves its right to

pursue such rights irrespective of any resolution of cure amounts herein.[11]

    44. Landlord, therefore, requests that in the event an assumption and

assignment of the Lease is approved by the Court, language must be inserted into the Assignment

Order to provide that Ross shall be responsible for all unpaid adjustments and reconciliations,

whether accruing prior to or after the effective date of assumption and assignment of the Lease,

when such charges become due in accordance with the terms of the Lease, including with respect

to indemnification and insurance obligations.  In default thereof, a suitable escrow for the Lease

obligations equal to 150% of the average year-end adjustments for the prior three (3) years must

be established to assure that any amounts due will be available to Landlord when the year-end

adjustments are actually billed and due pursuant to the terms of the respective Lease.

### iii. <u>The Cure Amount Serves Only As An Estimate</u>

    45. Landlord can only provide the information presently available regarding

amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to

---

[10] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption (or assumption and assignment) must be in accordance with all provisions of the Lease.

[11] If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Landlord's location.

32100700.2

include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges and other amounts to which it is entitled under the Lease.

iv.    <u>The Debtors Must Pay Undisputed Cure Amounts Immediately</u>

46.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption or assumption and assignment.  To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference no later than (30) days following the assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

**E.    Assumption and Assignment Agreement**

47.    Landlord also requests that, as a condition to any order approving assumption and assignment of Landlord's Lease, Ross shall be required to enter into a short form assumption and assignment agreement whereby Ross shall become directly obligated to Landlord and the provisions of the Lease regarding notice addresses will be modified.

**F.    The Fourteen-Day Stay Should Not be Waived to Permit Landlord To Effectively Pursue its Appellate Rights**

48.    To the extent the Lease assignment is approved, Landlord objects to the Debtors' request – to the extent inclusion in the proposed Assignment Order, by itself, constitutes a request – to waive the 14-day stay imposed by Federal Rule of Bankruptcy Procedure (FRBP) 6004(h).[12] This rule serves a critical function in preserving the rights of parties affected by orders

---

[12] "(h) Staying an Order Authorizing the Use, Sale, or Lease of Property . Unless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." FRBP 6004(h).

18

authorizing the use, sale, or lease of property by affording a limited period to seek appellate review before the order becomes effective.  *See, e.g.*, *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 Bankr. LEXIS 2000, at 13–14 (Bankr. D. Del. Apr. 29, 2014) (acknowledging that Bankruptcy Rules 6004(h) and 6006(d) protect objecting parties by providing a 14-day stay to preserve appellate relief).

49.     Neither the Debtors nor Ross has provided any proposed basis, let alone evidence, for an immediate business need to close this transaction that would be required to make a showing in support of the waiver of the 14-day stay.  If the 14-day stay was waived, Landlord may lose its appellate rights because the appeal could effectively be mooted by immediate approval of the Lease assignment, whereas this issue is better left to decide on a motion for stay pending appeal, if necessary.

50.     Given the potential significant prejudice to Landlord's rights and the significant issues raised in this Objection – and also those subject to discovery – this Court should uphold the 14-day stay under FRBP 6004(h) to allow sufficient time for Landlord to evaluate and pursue appellate remedies if necessary.

### G.     Discovery Must be Completed Before This Matter is Heard

51.     Within a day or two of the filing of this Objection, Landlord intends to serve the Debtors and Ross with discovery demands related to the points raised in this Objection.  Unless and until documents are sufficiently produced and witnesses are made available, with the undersigned counsel having had an opportunity to analyze the documents and take depositions, the proposed Lease assignment is not ripe for hearing.

52.     Even then, the documents and witnesses may cause new questions to arise that must be explored.  For example, Landlord has not yet been able to determine Ross's intentions

with respect to the Premises, as the Lease has less than three (3) years of remaining term with no

options, Landlord is under no circumstances willing to amend or extend the Lease and, upon

information and belief, the process to transform the store from a Rite Aid to a Ross store would be

a significant undertaking lasting many months if not one (1) year or longer.  It is also unclear how

much value this Lease was attributed in the package of leases Ross bid on, what Tenant's and

Ross's financials and other adequate assurance information will reveal, and more.

## IV.   RESERVATION OF RIGHTS TO RAISE FURTHER OBJECTIONS

53.    Landlord reserves all rights to: (i) raise further or other objections as may

be necessary, including but not limited to any issues that arise following the service of discovery,

the final form of proposed Assignment Order, and/or the final transaction documents once such

documents are filed of record with the Court; (ii) require payment of all accrued but unbilled Lease

charges and compliance with all Lease terms; and (iii) to require any assignment agreement on a

form acceptable to Landlord.

## V.    JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

54.    Landlord hereby joins in the objections filed by the Debtors' other landlords

to the extent that such objections are not inconsistent with the provisions hereof.

## VI.   CONCLUSION

Landlord respectfully requests that the assumption and assignment of the Lease be

denied or the auction to be re-opened to permit Landlord to bid further on the Lease or, if the Court

is inclined to approve the Lease assignment, that (a) any Assignment Order approving the

assumption and assignment of the Lease be subject to and conditioned upon Ross providing

adequate assurance of future performance; (b) any assumption of the Lease be conditioned upon

responsibility of Assignee to pay a cure amount totaling not less than the cure amounts set forth in

this Objection, along with other charges when due in accordance with the Lease, plus Landlord's

32100700.2

pecuniary losses; and (c) the Court should grant such other relief that the Court finds just and

proper.

Dated: August 13, 2025                    BARCLAY DAMON LLP
       New York, New York

                                          _/s/Scott L. Fleischer_____
                                          Scott L. Fleischer (NJ Bar No. 089802014)
                                          1270 Avenue of the Americas, Suite 2310
                                          New York, New York 10020
                                          Telephone: (212) 784-5810
                                          Facsimile: (212) 784-5799
                                          E-mail: sfleischer@barclaydamon.com

                                          *Counsel to SVAP III Plaza Mexico, LLC*