# EXHIBIT 1

## OFFER & BIDDER REGISTRATION FORM

Bidder, SVAP III Plaza Mexico, LLC, hereby:

- Offers to purchase the following Lease for the Bid set forth below, pursuant to this Offer & Bidder Registration Form and the terms and conditions of the accompanying Lease Termination Agreement (the "LTA"), and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [D.N. 804] approved by the United States Bankruptcy Court for the District of New Jersey in the chapter 11 cases of *In re New Rite Aid, LLC, et al.*, Case No. 25-14861 (MBK) (the "Sale Order").

Bidder's offer is for the following Lease at the following Bid:

| ASSET | BID/PURCHASE PRICE |
|---|---|
| 1. Lease by and between Thrifty Payless, Inc. and SVAP III Plaza Mexico, LLC, for the Rite Aid store located at Plaza Mexico, in Lynwood, CA (Store No. 5476) | Cash bid of $25,000.00, plus a waiver of all claims for unpaid balances owed by Tenant to Landlord for the period prior to the Petition Date, and damages arising from the rejection of the Lease under 11 U.S.C. § 502(b)(6). |
| **Aggregate Purchase Price:** | $25,000.00 plus a waiver of all claims for unpaid balances owed by Tenant to Landlord for the period prior to the Petition Date, and damages arising from the rejection of the Lease under 11 U.S.C. § 502(b)(6). |

**Bidder hereby warrants and represents as follows:**

(a)     Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Sale Order, the terms and conditions of which are incorporated herein by reference.

(b)     Bidder has received, reviewed, and understands the terms and conditions of the Lease Termination Agreement, the terms and conditions of which are incorporated herein by reference.

(c)     To the extent that the words and phrases which are capitalized in this Offer & Bidder Registration Form have been defined in the Sale Order or in Lease Termination Agreement, those definitions are incorporated herein by reference.

(d)     Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant to the Sale Order.

(e)     Each Bid is and shall be a good faith, *bona fide*, irrevocable offer to purchase the applicable Lease on an as-is, where-is basis, with no contingencies.

(f)     Bidder (i) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease in making its offer; (ii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease or the completeness of any information provided in connection therewith or the Auction other than as provided in the Lease Termination Agreement; and (iii) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; (iv) and by submitting a Lease Termination Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "Bankruptcy Code") related in any way to the submission of its Bid, the Sale Order, or any earnest money deposit.

(g)     Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder (i) exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors, Agent and their respective directors, officers, members, managers, partners, shareholders, employees, contractors, and agents in this regard, and (ii) acknowledges that it will comply with the Sale Order.

(h)     Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or the sale.

(i)      Identification of how the Bidder will pay the purchase price at closing.

*[Signatures appear on following page]*

AGREED & ACCEPTED this 17th day of June, 2025

SVAP III PLAZA MEXICO, LLC

By:     SVAP III Plaza Mexico Holdings, LLC,
        a Delaware limited liability company,
        its Sole Member

        By:     Sterling Value Add Investments III, LLC,
                a Delaware limited liability company,
                its Sole Member

                By:     SVAP III GP, LLC,
                        a Delaware limited liability company, its Manager

                        By: _____
                        Name: ____Bob Dake_____
                        Title: ____Vice President_____

*BIDDER I.D.*

Bidder's Company:  SVAP III PLAZA MEXICO, LLC

Bidder's Address:     c/o The Sterling Organization

                      302 Datura Street, Suite 100

                      West Palm Beach, FL  33401

Bidder's Contact:  Bob Dake

Bidder's Phone Number:  Phone: (513) 265-2836    /Facsimile:

Bidder's Email Address:  bdake@sterlingorganization.com

Bidder's Tax ID Number:  ███████

*ATTORNEY OR AUTHORIZED AGENT I.D.*

Attorney or Agent Name:  Leslie Heilman / Laurel Roglen

Law Firm or Company:  Ballard Spahr LLP

Address:  919 N. Market Street, 11th Floor, Wilmington, DE  19801

Phone & Facsimile Numbers:  Phone – (302) 252-4446; Facsimile – (302) 252-4466

Email Address:  heilmanl@ballardspahr.com / roglenl@ballardspahr.com

*BIDDER WIRING INFORMATION FOR DEPOSIT RETURN*

Bidder's Bank Name: _____

Account Name: _____

Account Number: _____

ABA Number: _____

Bidder's Address: _____

# Ballard Spahr
### LLP

------------------

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
TEL 302.252.4465
FAX 302.252.4466
www.ballardspahr.com

Leslie C. Heilman
Tel: 302.252.4446
Fax: 302.300.4065
heilmanl@ballardspahr.com

June 18, 2025

*VIA E-MAIL*

A&G Realty Partners, LLC
Emilio Amendola
Mike Matlat
Erik Potocek
445 Broadhollow Road, Suite 410
Melville, NY 11747
emilio@agrep.com
mike@agrep.com
EPotocek@agrep.com

Re      In re New Rite Aid, LLC, et al. (the **"Debtors"**) 25-14861 (MBK) USBC District of New
Jersey (Jointly Administered)
***Bid Letter by SVAP III Plaza Mexico, LLC for Lease for Store No. 5476***

Gentlemen:

This bid letter will serve as the bid (the "**Initial Bid**") of ***SVAP III Plaza Mexico, LLC*** (the
"**Landlord**") for the lease (the "**Lease**") for those premises (the "**Premises**") identified by the
Debtors as Store No. 5476 and located in Lynwood, California and which is part of the shopping
center more commonly known as Plaza Mexico (the "**Center**").  This Initial Bid is provided in
connection with the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and
Fee Owned Properties, and (II) Granting Related Relief* [D.N. 804] *(the "Sale Order")*.  Landlord
has authorized the undersigned to submit this Initial Bid on its behalf, and the Landlord will be
represented at the auction by one or more of its authorized representatives and/or attorneys of
record in this case, who will have authority to bid on Landlord's behalf.  Landlord is a counterparty
to the Lease and owner of the Premises and Center, and as a result, Landlord does not need to
provide adequate assurance of future performance information in connection with this Initial Bid.
Landlord believes that there is minimal risk of closing this transaction, as the Landlord is the owner
of the Center, and it has intimate knowledge of the Center and existing shopping center documents.
As set forth above, as the owner of the Center, Landlord does not need to provide adequate
assurance, and the transaction with the Landlord eliminates the risks associated with a potential

Emilo Amendola
Mike Matlat
Erik Potocek

June 18, 2025
Page 2

contested assumption and assignment of the Lease to a third party. Landlord is willing and able to finalize and close on the transaction as quickly as necessary.

The Initial Bid for the Lease will consist of (a) a cash bid in the amount of $25,000.00, and (b) a waiver of the outstanding amounts due under the Lease relating to the period prior to the date of the Tenant's bankruptcy filing (excluding any amounts due for the pro rated post-petition portion of the May stub rent), and (c) the waiver of any claim for damages for the rejection of the Lease under 11 U.S.C. § 502(b)(6). The Landlord <u>does</u> <u>not</u> waive its rights to any other claims, including specifically that Landlord does not waive claims for unpaid post-petition amounts that are due and owing under the Lease pursuant to 11 U.S.C. §§ 365(d)(3), 503(b), or any other provision of the Bankruptcy Code, for the Debtors' use and/or occupancy of the Premises from the date of the bankruptcy filings through the date the Premises is vacated and properly turned over to the Landlord. Landlord reserves the right to waive other claims as part of any subsequent bid, and it further reserves the right to increase its Initial Bid prior to or during the auction and otherwise bid on the Lease at the auction.

If Landlord is the successful bidder, it is ready, willing and able to execute a reasonable form of lease termination that reflects the agreed upon terms of the Landlord's accepted bid for the Lease, and enclosed herewith, is a form of the lease termination agreement acceptable to the Landlord marked to show its proposed revisions to the form lease termination agreement received from A&G Realty. In addition, Landlord is willing to delay the closing of any transaction, or enter into an agreement with the Debtors that is reasonably acceptable to the parties (with Bankruptcy Court approval and customary restrictions), to permit the Debtors to conclude store closing sales on the Premises for a reasonable period of time after the approval of the transaction.

Landlord is financially capable of consummating the proposed transaction contemplated by this Initial Bid, and the Landlord will fund the transaction, as applicable, with available cash, as needed, or as otherwise noted with respect to its bid. The Initial Bid does not contain any financing contingencies.

The Initial Bid is only for the Lease and no other asset(s) of the Debtors, and is conditioned upon the Debtors' delivery of the Lease and possession of the Premises, free and clear of any liens, claims, encumbrances, or subleases of any third party, and upon bankruptcy court approval of the transaction with Landlord. This Initial Bid is not contingent on financing, and there are no other approvals necessary for Landlord to make this Bid or consummate the transaction contemplated by this Initial Bid. This Initial Bid is irrevocable until thirty (30) days after the conclusion of the auction. Notwithstanding anything in this Initial Bid, Landlord reserves all rights to object to the assumption and assignment of the Lease to any third party if it is not the successful bidder.

Emilo Amendola
Mike Matlat
Erik Potocek

June 18, 2025
Page 3

Should you have any questions with respect to this Initial Bid, or require any further information or documentation, please notify the undersigned at heilmanl@ballardspahr.com; (302) 252-4446 as soon as possible.

Very truly yours,

Leslie C. Heilman

LCH/
Enclosures

Atlanta  |  Baltimore  |  Delaware  |  Denver  |  Las Vegas  |  Los Angeles  |  Minneapolis  |  New Jersey  |  New York  |  Philadelphia  |  Phoenix
Salt Lake City  |  Sioux Falls  |  Washington, DC  |  www.ballardspahr.com

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this [●] day of [●], 2025 (the "Execution Date") by and between SVAP III Plaza Mexico, LLC (the "Landlord"), on the one hand, and Thrifty Payless, Inc. (the "Tenant" or "Debtor", and together with the Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant, through their respective predecessors-in-interest, entered into that certain Lease dated February 20, 1987, as amended by that certain Amendment No. 1 to Lease dated February 28, 1987 and Amendment Number 2 to Lease and Memorandum of Lease dated February 20, 1987 (collectively, as amended or modified from time to time, the "Lease"), covering certain premises located at 11325 Long Beach Boulevard, Lynwood, California (and as more particularly described in the Lease, the "Premises"), in the shopping center commonly known as Plaza Mexico, on the terms and conditions set forth therein;

WHEREAS, on May 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, Landlord and Tenant desire to enter into this Agreement, pursuant to which, among other things, the Lease shall be terminated and Landlord shall be restored to possession of the Premises as of the Termination Date (as defined below), the Parties shall release each other and Landlord shall be entitled able to dispose of any remaining furniture, fixtures and equipment at the Premises in its sole and absolute discretion as of the Termination Date;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject to the entry of an order of the Bankruptcy Court approving this Agreement (the "Bankruptcy Court Order"):

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.     The Lease is terminated effective as of the later of (a) [●], 2025, and (b) the date the Bankruptcy Court enters the Bankruptcy Court Order approving this Agreement (the "Termination Date").    Effective as of the Termination Date, Tenant shall give, grant and surrender unto Landlord all of Tenant's right, title or interest in or to the Premises, including, without limitation, all of the Tenant's right, title and interest in, to and under the Lease. No later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that

Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord, and provide utility account information to Landlord upon request.  Tenant acknowledges and agrees that, from and after the Execution Date, (a) Landlord shall have the right to immediately begin marketing the Premises for lease, and (b) Tenant shall no longer market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents accordingly.

3.    <u>Consideration</u>.  As consideration for this Agreement, Landlord shall (a) pay to Tenant Twenty-Five Thousand and 00/100 Dollars ($25,000.00) (minus any deposits already returned to Tenant), and (b) waive all claims for unpaid balances owed by Tenant to Landlord for the period prior to the Petition Date, and damages arising from the rejection of the Lease under 11 U.S.C. § 502(b)(6).

4.    <u>Landlord Release of Tenant</u>.  Conditioned upon (i) the entry of the Bankruptcy Court Order and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates that have filed for relief under the Bankruptcy Code, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "<u>Tenant Released Parties</u>"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease. Notwithstanding the above, Landlord does not waive or release Tenant from the following: (i) obligations arising under this Termination Agreement; (ii) any Lease obligations that expressly survive the Termination Date; (iii) any indemnification obligations arising from third party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent that such claims are covered by Tenant's insurance policies and on the condition that Landlord only seeks recovery from the insurer and only up to the insured amount); and (iv) Landlord's exercise of any discovery rights Landlord has against the Tenant in connection with any civil litigation or arbitration proceedings involving a third party; *provided, further,* Landlord does not waive or release the Tenant from its obligations to pay when due all rent and other charges under the Lease from the Petition Date through the Termination Date pursuant to Section 365(d)(3) of the Bankruptcy Code

5.    <u>Tenant Release of Landlord</u>.  Conditioned upon (i) the entry of the Bankruptcy Court Order and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Tenant and Tenant Released Parties do hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "<u>Landlord Released Parties</u>," and together with the Tenant Released Parties, the "<u>Released Parties</u>"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, including the pursuit of  any avoidance actions under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code against the Landlord, relating to or arising out of the Lease, this Agreement or the Premises.  Notwithstanding the above, Tenant, the bankruptcy estate, and anyone eligible to make a claim by or through the Tenant and bankruptcy estate, including the Committee, does not waive or release Landlord from the following:  (i) any obligations arising under this Agreement; (ii) any indemnifications obligations arising from third party claims asserted with respect to or arising from Landlord's obligations prior to the Termination Date for which Landlord had a duty to indemnify Tenant pursuant to the Lease (but only to the extent that such claims are covered by Landlord's insurance policies and on the condition that Tenant only seeks recovery from the insurer and only up to the insured amount); and (iii) Tenant's exercise of any discovery rights Tenant has against the Landlord in connection with any civil litigation or arbitration proceedings involving a third party.

6.    As further consideration for the releases set forth in sections 4 and 5 hereof, the Parties, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      The Parties agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth in sections 4 and 5 hereof have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.   Notwithstanding the foregoing, the obligations of Tenant to defend, indemnify, and hold the Landlord harmless for claims or potential claims (including but not limited to: (i) any third-party claims for bodily injury, personal injury, or property damage relating to the Premises; and, (ii) claims asserted by contractors, subcontractors, materialmen, laborers or persons or entities entitled to assert mechanics' liens or similar claims for works of improvement at any of the Premises) shall survive termination of the Lease, and are not affected by the mutual releases contained in this Agreement.

8.      <u>Conditions Precedent</u>.  As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord; and

(b)      Tenant has delivered to Landlord the keys, key codes, and security codes, if any, to the Premises (or provided written confirmation (email being sufficient) that the keys, key codes, and security codes, if any, are not available, but the Landlord may rekey the Premises).

(c)      The Bankruptcy Court Order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.      <u>Abandonment</u>.  Upon the Termination Date, any furniture, fixtures and equipment (the "FF&E") and personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any such FF&E and/or personal property without further notice of any kind and in their sole and absolute discretion, and without further notice or liability to the Tenant, Debtors, or any third parties.

10.      <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that it has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that it owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.      <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and

replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any Party to execute this Agreement. Each of the Parties further acknowledge that such Party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

14. Advice of Counsel. Each of the Parties respectively represents and warrants that it has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13. Attorneys' Fees. Each of the Parties agree that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing Party shall be entitled to recover its costs and attorneys' fees.

14. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned signatures of each Party hereto shall be deemed original signatures and shall be binding on each such Party whose signature is by scan to the same extent as if it were its original signature.

15. Governing Law. This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16. Jurisdiction. The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17. No Reliance. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

18.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the Parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the Parties shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the Parties shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the Parties shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.  Because this Agreement was drafted with the participation of all Parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the Parties respectively represent and warrant that each such Party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signature page follows]*

-6-

IN WITNESS HEREOF, the Parties have duly executed this Agreement as of the Execution Date.


**SVAP III PLAZA MEXICO, LLC**
a Delaware limited liability company

By: SVAP III Plaza Mexico Holdings, LLC,
a Delaware limited liability company, its Sole Member

By: Sterling Value Add Investments III, LLC,
a Delaware limited liability company, its Sole Member

By: SVAP III GP, LLC,
a Delaware limited liability company, its Manager

Signed: _____

Name: _____

Title: _____

Date: _____

**THRIFTY PAYLESS, INC.**
a California corporation

By:_____
Print Name:_____
Its:_____

**Exhibit A-3**

**Lease Termination Agreement**

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this [●] day of [●], 2025 (the "~~Effective~~Execution Date") ~~by and~~ between [●]SVAP III Plaza Mexico, LLC (the "Landlord"), on the one hand, and [●]Thrifty Payless, Inc. (the "Tenant" or "Debtor", and together with the Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant, through their respective predecessors-in-interest, entered into that certain ~~lease dated [●] (~~Lease dated February 20, 1987, as amended by that certain Amendment No. 1 to Lease dated February 28, 1987 and Amendment Number 2 to Lease and Memorandum of Lease dated February 20, 1987 (collectively, as amended or modified from time to time, the "Lease"), covering certain premises located at ~~[●] (~~11325 Long Beach Boulevard, Lynwood, California (and as more particularly described in the Lease, the "Premises"), in the shopping center commonly known as Plaza Mexico, on the terms and conditions set forth therein;

WHEREAS, on May 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, ~~the Parties~~Landlord and Tenant desire to enter into this Agreement, ~~for~~pursuant to which, among ~~other~~ things, the Lease shall be terminated and Landlord ~~is~~shall be restored to possession of the Premises as of the Termination Date (as defined below), the Parties shall release each other and Landlord ~~is~~shall be entitled ~~able~~ to dispose of any remaining furniture, fixtures and equipment at the Premises in its sole and absolute discretion as of the Termination Date;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject ~~only~~ to the entry of an order of the Bankruptcy Court approving this Agreement (the "Bankruptcy Court Order"):

## AGREEMENT

1.     Recitals.  The Recitals are incorporated herein as if set forth at length.

2.     Lease Termination.  ~~Subject to the Bankruptcy Court Order, the~~The Lease is terminated effective as of the later of (a) [●], 2025, and (b) the date the Bankruptcy Court enters the Bankruptcy Court Order approving this Agreement (the "Termination Date"). ~~From and after~~Effective as of the Termination Date, Tenant shall ~~have no~~give, grant and surrender unto

Landlord all of Tenant's right, title or interest in or to the Premises pursuant to, including, without limitation, all of the Tenant's right, title and interest in, to and under the Lease. Subject to the Bankruptcy Court Order, noNo later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord, and provide utility account information to Landlord upon request.  Tenant acknowledges and agrees that, from and after the EffectiveExecution Date, (a) Landlord shall have the right to immediately marketbegin marketing the Premises for lease, and (b) Tenant shall notno longer market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty Partners, LLC) accordingly.

3.      Consideration.  As consideration for this Agreement, Landlord shall (a) pay to Tenant Twenty-Five Thousand and 00/100 Dollars ($[•]25,000.00) (minus any deposits already paidreturned to Tenant), and (b) waive all unpaid prepetition and post-petition amountsclaims for unpaid balances owed by Tenant to Landlord for the period prior to the Petition Date, and damages arising from the rejection of the Lease under 11 U.S.C. § 502(b)(6).

4.      Landlord Release of Tenant.  ForConditioned upon (i) the entry of the Bankruptcy Court Order and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates that have filed for relief under the Bankruptcy Code, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "Tenant Released Parties"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease. Notwithstanding the above, Landlord does not waive or release Tenant from the following: (i) obligations arising under this Termination Agreement; (ii) any Lease obligations that expressly survive the Termination Date; (iii) any indemnification obligations arising from third party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent that such claims are covered by Tenant's insurance policies and on the condition that Landlord only seeks recovery from the insurer and only up to the insured amount);

-3-

and (iv) Landlord's exercise of any discovery rights Landlord has against the Tenant in connection with any civil litigation or arbitration proceedings involving a third party; *provided, further,* Landlord does not waive or release the Tenant from its obligations to pay when due all rent and other charges under the Lease from the Petition Date through the Termination Date pursuant to Section 365(d)(3) of the Bankruptcy Code

5.     Tenant Release of Landlord.  ~~For~~Conditioned upon (i) the entry of the Bankruptcy Court Order and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Tenant ~~does~~and Tenant Released Parties do hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "Landlord Released Parties," and together with the Tenant Released Parties, the "Released Parties"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease~~.~~, including the pursuit of any avoidance actions under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code against the Landlord, relating to or arising out of the Lease, this Agreement or the Premises. Notwithstanding the above, Tenant, the bankruptcy estate, and anyone eligible to make a claim by or through the Tenant and bankruptcy estate, including the Committee, does not waive or release Landlord from the following:  (i) any obligations arising under this Agreement; (ii) any indemnifications obligations arising from third party claims asserted with respect to or arising from Landlord's obligations prior to the Termination Date for which Landlord had a duty to indemnify Tenant pursuant to the Lease (but only to the extent that such claims are covered by Landlord's insurance policies and on the condition that Tenant only seeks recovery from the insurer and only up to the insured amount); and (iii) Tenant's exercise of any discovery rights Tenant has against the Landlord in connection with any civil litigation or arbitration proceedings involving a third party.

6.     As further consideration for the releases set forth in sections 4 and 5 hereof, the Parties, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of

California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.          The Parties agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth in sections 4 and 5 hereof have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses. Notwithstanding the foregoing, the obligations of Tenant to defend, indemnify, and hold the Landlord harmless for claims or potential claims (including but not limited to: (i) any third-party claims for bodily injury, personal injury, or property damage relating to the Premises; and, (ii) claims asserted by contractors, subcontractors, materialmen, laborers or persons or entities entitled to assert mechanics' liens or similar claims for works of improvement at any of the Premises) shall survive termination of the Lease, and are not affected by the mutual releases contained in this Agreement.

8.          <u>Conditions Precedent</u>.  As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)          Tenant has delivered possession of the Premises to Landlord; and

(b)          Tenant has delivered to Landlord the keys and access, key codes, and security codes, if any, to the Premises (or provided written confirmation (email being sufficient) that Landlord is authorized to change the locks or access codes); and the keys, key codes, and security codes, if any, are not available, but the Landlord may rekey the Premises).

(c)          An order The Bankruptcy Court Order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than [●], 2025.

9.          <u>Abandonment</u>.  Subject to Bankruptcy Court approval, upon Upon the Termination Date, any furniture, fixtures and equipment (the "FF&E") and personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any such FF&E and/or personal property without further notice of any kind and in their sole and absolute discretion, and without further notice or liability to the Tenant, Debtors, or any third

parties; provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point of sale ("POS") systems from the Premises during which time the Landlord shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Tenant to remove any such POS systems..

10.     Authority to Settle. Each of the Parties respectively represents and warrants that each such Partyit has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this AgreementParties represents and warrants that each such Partyit owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.     Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties respectively represent and warrantrepresents and warrants that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any Party to execute this Agreement.  Each of the Parties further acknowledge that such Party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.     Advice of Counsel. Each of the Parties respectively represent and warrant that each such Partyrepresents and warrants that it has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.     Attorneys' Fees.  Each of the Parties agree that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing Party shall be entitled to recover its costs and attorneys' fees.

14.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned signatures of each Party hereto

shall be deemed original signatures and shall be binding on each such Party whose signature is by scan to the same extent as if it were its original signature.

15.  <u>Governing Law.</u>  This Agreement shall be governed by and construed under the laws of the State of [•]California, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.  <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.  No Reliance.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

17.18.  <u>Miscellaneous</u>.

(a)  The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the Parties hereto.

(b)  This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)  Each of the Parties shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the Parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)  Each of the Parties shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)  Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)      The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.  Because this Agreement was drafted with the participation of all Parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the Parties respectively represent and warrant that each such Party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signature page follows]*

*[Different first page link-to-previous setting changed from off in original to on in modified.].*

IN WITNESS HEREOF, the Parties have duly executed this Agreement as of the ~~Effective~~Execution Date.

**SVAP III PLAZA MEXICO, LLC**
a Delaware limited liability company
**[LANDLORD]**

By: SVAP III Plaza Mexico Holdings, LLC,
a Delaware limited liability company, its Sole Member

By: Sterling Value Add Investments III, LLC,
a Delaware limited liability company, its Sole Member

By: SVAP III GP, LLC,
a Delaware limited liability company, its Manager

Signed: _____

Name: _____

Title: _____

Date: _____

**THRIFTY PAYLESS, INC.**
a California corporation

By:_____
Print Name:_____
Its:_____

**[TENANT]**

~~By:_____~~
~~Print Name:_____~~
~~Its:_____~~

~~Doc#: US1:27362206v1~~

| | |
|---|---|
| **From:** | Heilman, Leslie C. <HeilmanL@ballardspahr.com> |
| **Sent:** | Wednesday, June 18, 2025 5:10 PM |
| **To:** | Mike Matlat; Erik Potocek; Emilio Amendola |
| **Cc:** | Roglen, Laurel D.; Vesper, Margaret |
| **Subject:** | New Rite Aid. - Lease Termination Bid - Store No. 5476 |
| **Attachments:** | Rite Aid Bidder Registration Sigend with Tax ID.pdf; Rite Aid II - Landlord Bid Letter (Plaza Mexico - Store No. 5476) 4911-6682-8878-v1.pdf; Rite Aid II - Lease Termination Agreement (Plaza Mexico - Store No. 5476) 4920-8855-4829-v2.docx; Litera Compare Redline - Rite Aid II -Lease Termination Agreement Form to Rite Aid II - Lease Termination Agreement (Plaza Mexico - Store No 5476) 4~.pdf |

Good evening, Gentlemen,

Enclosed herein please find a Lease Termination Offer from the Landlord for Store No. 5476 for your review and consideration, which includes a Bid Letter, the completed Bidder Registration Form together with a Clean and Blackline copy of a proposed Lease Termination Agreement. Please confirm your receipt and provide us with wire instructions to send the 10% Cash Deposit.

Best,
Leslie

**Leslie C. Heilman**



919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
302.252.4446 DIRECT
302.300.4065 FAX

267.664.0633 mobile | heilmanl@ballardspahr.com
VCARD

www.ballardspahr.com

| | |
|---|---|
| **From:** | Mike Matlat <mike@agrep.com> |
| **Sent:** | Thursday, June 19, 2025 10:49 AM |
| **To:** | Heilman, Leslie C.; Erik Potocek; Emilio Amendola |
| **Cc:** | Roglen, Laurel D.; Vesper, Margaret |
| **Subject:** | RE: New Rite Aid. - Lease Termination Bid - Store No. 5476 |

 **EXTERNAL**

Thanks Leslie.

Thank you, Mike

Mike Matlat
Senior Managing Director
A&G Real Estate Partners
445 Broadhollow Rd, Suite 420
Melville NY 11747
Direct: 631.465.9508
mike@agrep.com
www.agrep.com



Turnaround Atlas Award 2019, 2020, 2021, 2022 & 2023 'Outstanding Restructuring Real Estate Firm of the Year'

---

**From:** Heilman, Leslie C.
**Sent:** Wednesday, June 18, 2025 5:10 PM
**To:** Mike Matlat ; Erik Potocek ; Emilio Amendola
**Cc:** Roglen, Laurel D. ; Vesper, Margaret
**Subject:** New Rite Aid. - Lease Termination Bid - Store No. 5476

Good evening, Gentlemen,

Enclosed herein please find a Lease Termination Offer from the Landlord for Store No. 5476 for your review and consideration, which includes a Bid Letter, the completed Bidder Registration Form together with a Clean and Blackline copy of a proposed Lease Termination Agreement. Please confirm your receipt and provide us with wire instructions to send the 10% Cash Deposit.

Best,
Leslie

**Leslie C. Heilman**

919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
302.252.4446 DIRECT
302.300.4065 FAX

267.664.0633 mobile | heilmanl@ballardspahr.com
VCARD

www.ballardspahr.com

| | |
|---|---|
| **From:** | Mike Matlat <mike@agrep.com> |
| **Sent:** | Thursday, June 19, 2025 10:50 AM |
| **To:** | Heilman, Leslie C. |
| **Subject:** | RE: New Rite Aid. - Lease Termination Bid - Store No. 5476 |

⚠️ **EXTERNAL**

Mind including city, ST in subject line when you submit them.. save me some time..

Thank you, Mike

Mike Matlat
Senior Managing Director
A&G Real Estate Partners
445 Broadhollow Rd, Suite 420
Melville NY 11747
Direct: 631.465.9508
mike@agrep.com
www.agrep.com



Turnaround Atlas Award 2019, 2020, 2021, 2022 & 2023 'Outstanding Restructuring Real Estate Firm of the Year'

---

**From:** Heilman, Leslie C.
**Sent:** Wednesday, June 18, 2025 5:10 PM
**To:** Mike Matlat ; Erik Potocek ; Emilio Amendola
**Cc:** Roglen, Laurel D. ; Vesper, Margaret
**Subject:** New Rite Aid. - Lease Termination Bid - Store No. 5476

Good evening, Gentlemen,

Enclosed herein please find a Lease Termination Offer from the Landlord for Store No. 5476 for your review and consideration, which includes a Bid Letter, the completed Bidder Registration Form together with a Clean and Blackline copy of a proposed Lease Termination Agreement. Please confirm your receipt and provide us with wire instructions to send the 10% Cash Deposit.

Best,
Leslie

**Leslie C. Heilman**



919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
302.252.4446 DIRECT
302.300.4065 FAX

267.664.0633 mobile | heilmanl@ballardspahr.com
VCARD

www.ballardspahr.com

| | |
|---|---|
| **From:** | Heilman, Leslie C. <HeilmanL@ballardspahr.com> |
| **Sent:** | Wednesday, July 16, 2025 11:29 AM |
| **To:** | Mike Matlat |
| **Cc:** | Erik Potocek; Emilio Amendola; Vesper, Margaret; Roglen, Laurel D. |
| **Subject:** | RE: New Rite Aid. - Lease Termination Bid - Store No. 5476 (Plaza Mexico, Lynwood, CA) |
| **Attachments:** | New Rite Aid. - Lease Termination Bid - Store No. 5476.msg |

Mike,

Would you please confirm that you have carried this Bid to be included in the July process? We would have liked for the Estate to have acted on this bid outside of the Lease sales process, but Landlord has received no response to its Bid since it was submitted on June 19th. Please let us know if that is still a possibility.

Best,
Leslie


**Leslie C. Heilman**
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
Direct 302.252.4446
Fax 302.300.4065
Mobile 267.664.0633
heilmanl@ballardspahr.com
www.ballardspahr.com


**From:** Mike Matlat
**Sent:** Thursday, June 19, 2025 10:50 AM
**To:** Heilman, Leslie C.
**Subject:** RE: New Rite Aid. - Lease Termination Bid - Store No. 5476

 **EXTERNAL**
Mind including city, ST in subject line when you submit them.. save me some time..

Thank you, Mike

Mike Matlat
Senior Managing Director
A&G Real Estate Partners
445 Broadhollow Rd, Suite 420
Melville NY 11747

Direct: 631.465.9508
[mike@agrep.com](mailto:mike@agrep.com)
[www.agrep.com](http://www.agrep.com)



Turnaround Atlas Award 2019, 2020, 2021, 2022 & 2023 'Outstanding Restructuring Real Estate Firm of the Year'

---

**From:** Heilman, Leslie C. <[HeilmanL@ballardspahr.com](mailto:HeilmanL@ballardspahr.com)>
**Sent:** Wednesday, June 18, 2025 5:10 PM
**To:** Mike Matlat <[mike@agrep.com](mailto:mike@agrep.com)>; Erik Potocek <[EPotocek@agrep.com](mailto:EPotocek@agrep.com)>; Emilio Amendola <[emilio@agrep.com](mailto:emilio@agrep.com)>
**Cc:** Roglen, Laurel D. <[RoglenL@ballardspahr.com](mailto:RoglenL@ballardspahr.com)>; Vesper, Margaret <[VesperM@ballardspahr.com](mailto:VesperM@ballardspahr.com)>
**Subject:** New Rite Aid. - Lease Termination Bid - Store No. 5476

Good evening, Gentlemen,

Enclosed herein please find a Lease Termination Offer from the Landlord for Store No. 5476 for your review and consideration, which includes a Bid Letter, the completed Bidder Registration Form together with a Clean and Blackline copy of a proposed Lease Termination Agreement. Please confirm your receipt and provide us with wire instructions to send the 10% Cash Deposit.

Best,
Leslie

**Leslie C. Heilman**



919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
302.252.4446 DIRECT
302.300.4065 FAX

267.664.0633 mobile | heilmanl@ballardspahr.com
VCARD

www.ballardspahr.com

| | |
|---|---|
| **From:** | Mike Matlat <mike@agrep.com> |
| **Sent:** | Wednesday, July 16, 2025 11:39 AM |
| **To:** | Heilman, Leslie C. |
| **Cc:** | Erik Potocek; Emilio Amendola; Vesper, Margaret; Roglen, Laurel D. |
| **Subject:** | RE: New Rite Aid. - Lease Termination Bid - Store No. 5476 (Plaza Mexico, Lynwood, CA) |
| **Attachments:** | AG - Rite Aid Flyer - 07-09-25.pdf; RAD Flyer Details BL Remaining Locations.xlsx |

 **EXTERNAL**

Yes its part of this round b/c it wasn't closing in June.

Thank you, Mike

Mike Matlat
Senior Managing Director
A&G Real Estate Partners
445 Broadhollow Rd, Suite 420
Melville NY 11747
Direct: 631.465.9508
mike@agrep.com
www.agrep.com



Turnaround Atlas Award 2019, 2020, 2021, 2022 & 2023 'Outstanding Restructuring Real Estate Firm of the Year'

**From:** Heilman, Leslie C.
**Sent:** Wednesday, July 16, 2025 11:29 AM
**To:** Mike Matlat
**Cc:** Erik Potocek ; Emilio Amendola ; Vesper, Margaret ; Roglen, Laurel D.
**Subject:** RE: New Rite Aid. - Lease Termination Bid - Store No. 5476 (Plaza Mexico, Lynwood, CA)

Mike,

Would you please confirm that you have carried this Bid to be included in the July process? We would have liked for the Estate to have acted on this bid outside of the Lease sales process, but Landlord has received no response to its Bid since it was submitted on June 19th. Please let us know if that is still a possibility.

Best,
Leslie

**Leslie C. Heilman**
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
Direct 302.252.4446
Fax 302.300.4065
Mobile 267.664.0633
heilmanl@ballardspahr.com
www.ballardspahr.com

---

**From:** Mike Matlat <mike@agrep.com>
**Sent:** Thursday, June 19, 2025 10:50 AM
**To:** Heilman, Leslie C. <HeilmanL@ballardspahr.com>
**Subject:** RE: New Rite Aid. - Lease Termination Bid - Store No. 5476

⚠️ **EXTERNAL**
Mind including city, ST in subject line when you submit them.. save me some time..

Thank you, Mike

Mike Matlat
Senior Managing Director
A&G Real Estate Partners
445 Broadhollow Rd, Suite 420
Melville NY 11747
Direct: 631.465.9508
mike@agrep.com
www.agrep.com



Turnaround Atlas Award 2019, 2020, 2021, 2022 & 2023 'Outstanding Restructuring Real Estate Firm of
the Year'

---

**From:** Heilman, Leslie C. <HeilmanL@ballardspahr.com>
**Sent:** Wednesday, June 18, 2025 5:10 PM
**To:** Mike Matlat <mike@agrep.com>; Erik Potocek <EPotocek@agrep.com>; Emilio Amendola
<emilio@agrep.com>
**Cc:** Roglen, Laurel D. <RoglenL@ballardspahr.com>; Vesper, Margaret <VesperM@ballardspahr.com>
**Subject:** New Rite Aid. - Lease Termination Bid - Store No. 5476

Good evening, Gentlemen,

Enclosed herein please find a Lease Termination Offer from the Landlord for Store No. 5476 for your
review and consideration, which includes a Bid Letter, the completed Bidder Registration Form together

with a Clean and Blackline copy of a proposed Lease Termination Agreement. Please confirm your receipt and provide us with wire instructions to send the 10% Cash Deposit.


Best,
Leslie


**Leslie C. Heilman**

919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
302.252.4446 DIRECT
302.300.4065 FAX

267.664.0633 mobile | heilmanl@ballardspahr.com
VCARD


www.ballardspahr.com