| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>(973) 622-1800<br>Anthony Sodono, III<br>Email: asodono@msbnj.com<br>Michele M. Dudas<br>Email: mdudas@msbnj.com<br>*(Local Counsel to McKesson Corporation and certain corporate affiliates)* | **BUCHALTER, a PROFESSIONAL CORPORATION**<br>18400 Von Karman Avenue, Suite 800<br>Irvine, California 92612-0514<br>(949) 760-1121<br>Jeffrey K. Garfinkle (admitted *pro hac vice*)<br>Email: jgarfinkle@buchalter.com<br>Daniel H. Slate *(*admitted *pro hac vice)*<br>Email: dslate@buchalter.com<br>Brian T. Harvey (admitted *pro hac vice*)<br>Email: bharvey@buchalter.com<br>*(Co-Counsel to McKesson Corporation and certain corporate affiliates*) |
| **SIDLEY AUSTIN LLP**<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Dennis M. Twomey (admitted *pro hac vice*)<br>Email:  dtwomey@sidley.com<br>-and-<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>John J. Kuster (admitted *pro hac vice*)<br>Email:  jkuster@sidley.com<br>*(Co-Counsel to McKesson Corporation and certain corporate affiliates*) | Case No. 25-14861 (MBK)<br><br>Chapter 11 (Jointly Administered)<br><br>Honorable Michael B. Kaplan, U.S.B.J. |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,[1]<br><br>            Debtors. | |

**DECLARATION OF JOHN J. KUSTER IN SUPPORT OF MOTION OF MCKESSON CORPORATION FOR ENTRY OF AN ORDER (A) ALLOWING ADMINISTRATIVE EXPENSE CLAIM, (B) COMPELLING IMMEDIATE PAYMENT THEREOF, AND (C) GRANTING RELATED RELIEF**

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

I, John J. Kuster, hereby declare under penalty of perjury as follows:

1.    I am a partner in the law firm Sidley Austin LLP, and serve as co-counsel for McKesson Corporation.  I am admitted *pro hac vice* to practice in this Court.  I submit this declaration in support of McKesson's *Reply Brief in Support of Its Motion for Entry of An Order (A) Allowing Administrative Expense Claim, (B) Compelling Immediate Payment Thereof, and (C) Granting Related Relief* (the "Reply").

2.    Attached hereto as **Exhibit 1** is a true and correct copy of excerpts of the deposition transcript of Marc Liebman, dated August 5, 2025.

3.    Attached hereto as **Exhibit 2** are true and correct copies of Exhibits 12 (tab labeled "McK"), 19 (excerpts), 20, and 23 from the deposition of Marc Liebman on August 5, 2025.

4.    Attached hereto as **Exhibit 3** is a true and correct copy of excerpts of the deposition transcript of James Justin Bowers, dated August 4, 2025.

5.    Attached hereto as **Exhibit 4** are true and correct copies of Exhibits 4 and 8 from the deposition of James Justin Bowers on August 4, 2025.

6.    Attached hereto as **Exhibit 5** is a true and correct copy of an email thread dated May 9, 2025, subject "RE: RITE AID 05/09/2025," Bates stamped MCK_0013367–MCK_0013376.

7.    Attached hereto as **Exhibit 6** is a true and correct copy of an email thread dated May 12, 2025, subject "RE: RITE AID 05/12/2025," Bates stamped MCK_0013495–MCK_0013504.

8.    McKesson requested documents concerning any agreements between Rite Aid Corporation and HQ that would have established facts to support Debtors' rendition of how their

cash management system works, or could otherwise establish that HQ was making payments "on behalf of" Rite Aid when it paid the May 5 Wire, as Debtors have asserted in their Opposition (at 7–8).  Attached hereto as **Exhibit 7** is a true and correct copy of Debtors' Responses and Objections to McKesson's Requests for Production, at Req. No. 5.  Debtors have not produced any documentation regarding the way in which Debtors characterize the relationship between Rite Aid and HQ whatsoever other than an organizational chart, and continued to refuse to do so after the Parties' conferred about Debtors' objection.[2]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 15, 2025.

*John J. Kuster*
John J. Kuster

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Reply.

# EXHIBIT 1

Page 1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

-----------------------------------------------

In re:  New Rite Aid, LLC, et al,


Debtors,


Case No. 25-14861 (MBK)

(Jointly Administered)


-----------------------------------------------


The Videotape Deposition of 30(b)(6) witness Marc Liebman, taken pursuant to Notice of Taking Deposition, taken before Deb Beauvais, RPR, CRR, and a Notary Public in and for the County of Ramsey, State of Minnesota, taken remotely on August 5, 2025, commencing at approximately 10:00 a.m. Central Standard Time.



## Page 2

1  APPEARANCES:
2  ON BEHALF OF MCKESSON:
3  NICHOLAS CROWELL, ESQ.
   ALYSSA HASBROUCK, ESQ.
4  GREGORY JACOBS, ESQ.
   ROCHELLE BALLANTYNE, ESQ.
5  SIDLEY AUSTIN, LLP
   787 Seventh Avenue
6  New York, New York 10019
   ncrowell@sidley.com
7  ahasbrouck@sidley.com
   gjacobs@sidley.com
8  rballantyne@sidley.com
9  DANIEL SLATE, ESQ.
   BUCHALTER
10  1000 Wilshire Boulevard
    Suite 1500
11  Los Angeles, California 90017
    dslate@buchalter.com
12
    MICHELE DUDAS, ESQ.
13  MCMANIMON, SCOTLAND & BAUMANN
    75 Livingston Avenue
14  Roseland, New Jersey 07068
    mdudas@msbnj.com
15
    ON BEHALF OF RITE AID, LLC:
16
    ALISON BENEDON, ESQ.
17  ALICE BELISLE EATON, ESQ.
    CHRISTOPHER BILICIC, ESQ.
18  KYLE KIMPLER, ESQ.
    GREGORY LAUFER, ESQ.
19  MAX SIEGEL, ESQ.
    PAUL, WEISS, RIFKIND, WHARTON &
20    GARRISON, LLP
    1285 Avenue of the Americas
21  New York, New York 10019
    abenedon@paulweiss.com
22  aeaton@paulweiss.com
    cbilicic@paulweiss.com
23  kkimpler@paulweiss.com
    glaufer@paulweiss.com
24  msiegel@paulweiss.com
25

## Page 3

1  APPEARANCES (CONT.)
2  ON BEHALF OF BANK OF AMERICA, N.A.:
3  J.P. JAILLET, ESQ.
   DEREK FARQUHAR, ESQ.
4  CHOATE, HALL & STEWART, LLP
   Two International Place
5  Boston, Massachusetts 02110
   jjaillet@choate.com
6  dfarquhar@choate.com
7  ALSO PRESENT:
   Ben Carlsen, McKesson Managing
8  Chief Counsel
   James Taylor, Videographer
9
          I N D E X
10                                    PAGE
   Marc Liebman
11  Examination by Mr. Crowell      7
12  DEPOSITION EXHIBITS
13  Exhibit 1 - Confidential - Rite Aid
    DIP Budget Update 4/2025    18
14  Exhibit 2 - Confidential - Email String
    Re:  Letter from McKesson      22
15  Exhibit 3 - Notice of Deposition of
    Debtors                        27
16  Exhibit 4 - Highly Confidential -
    Supply Agreement               29
17  Exhibit 5 - Liebman Declaration   48
18  Exhibit 6 - Confidential - Bowers
    Correspondence dated 4/23/25   59
18  Exhibit 7 - Highly Confidential -
    Security Agreement             61
19  Exhibit 8 - Highly Confidential -
    Subsidiary Guarantee Agreement 63
20  Exhibit 9 - Opposition to Motion to
    Compel                         66
21  Exhibit 10 - Cash Management Order   67
   Exhibit 11 - Highly Confidential -
22  Exit Credit Agreement          72
   Exhibit 12 - Spreadsheet - Extended
23  Daily Cash Flow                75
   Exhibit 13 - Bowers Declaration   80
24  Exhibit 14 - Email String re:  Rite
    Aid payment:  5/2/25           83
25  Exhibit 15 - Confidential - Bank of

## Page 4

1  DEPOSITION EXHIBITS (CONT.)
   Exhibit 16 - Confidential - Email
2  String re:  Update             86
   Exhibit 17 - Cash Management Motion  97
3  Exhibit 18 - Confidential -
   Wagner-Parrish Email re:  RAD
4  Borrowing Breakdown 3/6/25    111
   Exhibit 19 - 6/16/25 HQ Schedules  115
5  Exhibit 20 - Global Notes & Statements
   of Limitations, Methodology &
6  Disclaimers Regarding the Debtors'
   Schedules of Assets & Liabilities &
7  Statements of Financial Affairs  120
   Exhibit 21 - Confidential - Email
8  String re:  McKesson Shipping
   Update                         126
9  Exhibit 22 - Confidential - Email
   String re:  Rx Payments This Week  127
10  Exhibit 23 - Confidential - Email
    String re:  Rite Aid 05/08/2025  129
11  Exhibit 24 - Confidential - Email
    String re:  Rite Aid Reporting  134
12  Exhibit 25 - Confidential - Bixler
    Email dated 3/2/25 with Financials 135
13  Exhibit 26 - Professionals' Eyes Only -
    Rite Aid Corp. Weekly ABL Revolver
14  Borrowing Base Certificate    136
   Exhibit 27 - Confidential -
15  Wagner-Parrish Email re:  RAD
   Deliverables                   140
16  Exhibit 28 - Confidential - Email
   Attachment, Borrowing Base
17  Certificate 2/22/25           141
18
19
20
21
22
23
24
25

## Page 5

1          P R O C E E D I N G S
2      THE VIDEOGRAPHER:  We are now on
3  the record.  This begins media number one in
4  the deposition of Marc Liebman, 30(b)(6), in
5  the matter of In Re:  New Rite Aid, LLC, et
6  al in the United States Bankruptcy Court,
7  District of New Jersey, Case No. 25-14861
8  (MBK), Reference Docket No. 1322.
9      Today is August 5th, 2025 and the
10  time is 8:02 a.m.  This deposition is being
11  taken remotely at the request of counsel for
12  CVS Pharmacy [sic].
13      The videographer is James Taylor,
14  and the court reporter is Deb Beauvais of
15  Magna Legal Services.
16      Will counsel and all parties
17  present state their appearances and whom they
18  represent.
19      MR. CROWELL:  Go ahead, Alison,
20  please.
21      MS. BENEDON:  I was just going to
22  say that part of that read-on was not
23  correct.  This is not the dispute with CVS.
24  It's a dispute between McKesson and Rite Aid.
25      THE VIDEOGRAPHER:  Okay.  So thank

MAGNA ▶
LEGAL SERVICES

Page 18

1    First Day Declaration says that you were
2    appointed chief transformation officer on
3    March 12th.  Does that sound right to you?
4    A.  It does.
5    Q.  Okay.  And, again, Rite Aid retained you to
6    give restructuring advice, right?
7    A.  Correct.
8    Q.  And this is true, isn't it, sir, Rite Aid
9    knew before April 23rd that it was planning
10   to file another bankruptcy petition?
11   Correct?
12   A.  That's not correct.
13   Q.  Okay.  So I'm going to show you some
14   documents, and I'm going to have them pulled
15   up on the screen.  If there's parts of it you
16   want to read that aren't on the screen, just
17   ask us to scroll through it.
18          MR. CROWELL:  Greg, if you could
19   pull up tab 5.  I'm going to mark this as
20   Exhibit 1.
21   (Deposition Exhibit 1 was marked for identification.)
22          MR. JACOBS:  One moment.
23          BY MR. CROWELL:
24   Q.  Can you see that, sir?
25   A.  Yes.

Page 19

1    Q.  Okay.  So this is a document produced in this
2    case, which is Bates stamped RAD-MCK 5522.
3    And this is a DIP Budget Update from April
4    2025.
5          Are you familiar with this
6    document?  You can scroll through --
7    A.  I believe I would be familiar with it, yes.
8    Q.  Okay.
9    A.  Uh-huh.
10   Q.  And if you look at this slide 2 --
11          MR. CROWELL:  Go back to slide 2.
12   That's slide 1.  There you go.
13          BY MR. CROWELL:
14   Q.  Slide 2, the first bullet point shows an
15   anticipated filing date of May 4th, right?
16   A.  That's correct.
17   Q.  Okay.  And, again, this document is dated in
18   April.  So you knew in April at least, at the
19   very latest, that you were going to file a
20   bankruptcy petition, correct?
21   A.  No.
22   Q.  So why does it say that here then?
23   A.  Up until the time we were authorized to file
24   bankruptcy by the board, which would have
25   been on the eve of the filing date -- the

Page 20

1    actual filing date, the company was still
2    pursuing other alternatives to the bankruptcy
3    filing.
4    Q.  And what were those other alternatives, sir?
5    A.  It would have been principally an amendment
6    with the lenders that would have provided the
7    company liquidity to execute a plan,
8    operational and sales plan, outside the
9    bankruptcy context.
10   Q.  Is it fair to say that Rite Aid was certainly
11   strongly considering filing a bankruptcy
12   petition as early as April 2025?
13   A.  It is fair to say that we were considering
14   it, certainly.  Yes.
15   Q.  Okay.
16          MR. CROWELL:  And if you flip to
17   slide 3, please, Greg.
18          BY MR. CROWELL:
19   Q.  The title of this slide is:  Key Updates
20   Since March 12th DIP Budget.  Do you see
21   that?
22   A.  I do.
23   Q.  So there's a DIP budget in place as early as
24   March 12th, correct?
25          MS. BENEDON:  If I can just jump in

Page 21

1    here with an objection to this entire line of
2    questioning, which is outside the scope of
3    the notice, and especially considering
4    yesterday you shut down questioning of things
5    that were in our notice; the fact that you
6    are starting with a line of questioning that
7    doesn't even fit within your notice.
8          So I'll let the witness answer, and
9    we can do this for a little bit longer, but
10   this isn't going to be how today is going.
11          BY MR. CROWELL:
12   Q.  Do you want my question read back to you,
13   sir?
14   A.  That would be helpful.  Yes, please.
15   Q.  So according to this slide, there was a DIP
16   budget in place as early as March 12th,
17   correct?
18   A.  So the -- the phrasing of "in place," I don't
19   want to quibble over phrasing, but I wouldn't
20   say that there was a DIP budget in place.
21          What I would say is there had been
22   a DIP forecast provided and created under a
23   scenario where we were in Chapter 11, you
24   know, on that 3-12 date that you're
25   referencing.

Page 22

```
 1          MR. CROWELL:  Greg, you can pull
 2     that down.  And let's bring up tab 6, which
 3     I'll mark as Exhibit 2.
 4     (Deposition Exhibit 2 was marked for identification.)
 5          MR. CROWELL:  Blow it up a little
 6     bit, Greg, so we can actually see it.  At
 7     least I can't see it.  I don't know if
 8     Mr. Liebman can.
 9          THE WITNESS:  Yeah.  Thank you.
10          MR. CROWELL:  Thanks.
11     BY MR. CROWELL:
12     Q.  So this is an email Bates stamped RAD-MCK
13         55915, and it's an email chain between
14         Mr. Behrens, the BRG Rad Team and you're on
15         the CC.  Do you see that?
16     A.  Yes.
17     Q.  What's the BRG Rad Team, by the way?
18     A.  BRG serves as the financial adviser to Bank
19         of America and the DIP lenders here.
20     Q.  You've seen this email before, right, sir?
21     A.  I believe so.
22     Q.  And this clearly shows that as of April 23rd,
23         2025 Rite Aid had been contemplating filing a
24         bankruptcy petition on 5-4 or 5-7, right?
25          MS. BENEDON:  Object to the form.
```

Page 23

```
 1          THE WITNESS:  I'm sorry, can you
 2     repeat your question?
 3     BY MR. CROWELL:
 4     Q.  Sure.  If you read the email, it's from
 5         Mr. Behrens.  It says, "See attached.
 6         McKesson term change attached.  Our read is
 7         the 6 days is less concerning with a 5/4" --
 8         sorry, May 4 "or 5/7," May 7, "filing, but
 9         the 175 million cap is an issue."
10          Do you see that?
11     A.  I do.
12     Q.  And so the question is, this shows that a May
13         4th or May 7th bankruptcy filing was clearly
14         contemplated on April 23rd, 2025, right?
15          MS. BENEDON:  Object to the form.
16          THE WITNESS:  It was -- it was
17     possible, yes.
18     BY MR. CROWELL:
19     Q.  And Rite Aid never told McKesson that it was
20         contemplating filing a bankruptcy petition at
21         any time before it did so, right?
22     A.  Not to my recollection, no.
23     Q.  And Rite Aid did indeed file its petition on
24         May 5th, right?
25     A.  Yes.
```

Page 24

```
 1     Q.  And before that, part of the planning around
 2         filing the bankruptcy petition was Rite Aid's
 3         intention to close a number of its stores,
 4         right?
 5          MS. BENEDON:  Object to the form.
 6          THE WITNESS:  Can you repeat your
 7     question?
 8     BY MR. CROWELL:
 9     Q.  No problem.  Before that, so before the
10         filing, part of the planning around the
11         filing the petition was Rite Aid's intention
12         to close a number of its stores, right?
13          MS. BENEDON:  Same objection.
14          THE WITNESS:  Well, there was,
15     obviously, close a number of stores; sell and
16     close stores, yes.
17     BY MR. CROWELL:
18     Q.  Do you know how many stores Rite Aid was
19         either planning to close or sell?
20     A.  Well, at the time -- what period of time are
21         you asking me?
22     Q.  Sure.  So in the weeks leading up to the
23         filing of its bankruptcy petition, is it fair
24         to say Rite Aid had decided to close or sell
25         at least one-third of its stores?
```

Page 25

```
 1     A.  Yes.
 2     Q.  So is it fair to say that Rite Aid knew that
 3         because of that it would not need as much
 4         product as it had been historically ordering
 5         as of mid-April 2025?  Right?
 6     A.  That's -- our inventory purchases for
 7         McKesson clearly would go down in a scenario
 8         where we're selling and closing stores.
 9     Q.  And you testified that you reviewed the First
10         Day Declaration, right?
11     A.  Yes.
12     Q.  And the McKesson relationship is discussed in
13         the First Day Declaration, correct?
14     A.  Yes.
15     Q.  You understand the McKesson and Rite Aid have
16         had a business relationship for over 20
17         years, right?
18     A.  I do.
19     Q.  And you understand that Rite Aid and McKesson
20         entered into a new Supply Agreement in
21         connection with Rite Aid's 2023 bankruptcy,
22         right?
23     A.  Yes.
24     Q.  And you understand that Supply Agreement was
25         approved by the bankruptcy court, right?
```

MAGNA
LEGAL SERVICES

Page 26

1    A.  I do.
2    Q.  Okay.  Before Rite Aid entered into that new
3        Supply Agreement with McKesson at the end of
4        August 2024, Rite Aid went to market to bid
5        out potential supplier contracts, correct?
6    A.  Yes, that's correct.
7    Q.  Do you know from which companies Rite Aid
8        solicited bids?
9            MS. BENEDON:  Object to the form
10       and to the scope of the question.  You can
11       answer, Marc.
12           THE WITNESS:  I do.
13       BY MR. CROWELL:
14   Q.  Can you -- can you tell me?
15   A.  Cencora was the principal party that we
16       discussed as an alternative supplier.
17   Q.  Any others besides Cencora?
18   A.  I don't believe there were others that were
19       strongly considered outside of Cencora.
20   Q.  Is it fair to say that in the end McKesson
21       offered the best pricing and the best terms,
22       so Rite Aid entered into the new Supply
23       Agreement with McKesson?
24           MS. BENEDON:  Object to form and to
25       scope.

Page 27

1            THE WITNESS:  McKesson offered the
2        best package of terms, pricing, et cetera,
3        and that's why we moved forward with them.
4        BY MR. CROWELL:
5    Q.  Okay.  So, sir, you're going to be serving as
6        what is known as a Rule 30(b)(6) witness.  Do
7        you understand that Rite Aid designated you
8        as a Rule 30(b)(6) corporate representative?
9    A.  I do.
10   Q.  Okay.  And you understand what that means?
11   A.  I do.
12   Q.  Okay.
13           MR. CROWELL:  Greg, if you could
14       pull up tab 7, which I think I'm going to
15       mark as Exhibit 3.  Greg, just keep me honest
16       on the exhibits because --
17           MR. BENEDON:  Yep.
18           MR. CROWELL:  Like Mr. Leffel, I'm
19       addled.  That was his word, so I'm not
20       insulting him.
21           MS. BENEDON:  You're up to 3.
22   (Deposition Exhibit 3 was marked for identification.)
23       BY MR. CROWELL:
24   Q.  Sir, Exhibit 3 is the Notice of Deposition
25       that we served on Rite Aid.

Page 28

1            MR. CROWELL:  And, Greg, if you
2        just flip down.  If you could blow it up a
3        little bit so it's actually -- we can
4        actually see what it says.  Thanks.  And just
5        go to the topics.
6        BY MR. CROWELL:
7    Q.  Have you seen this before, sir?
8    A.  Yes.
9    Q.  Okay.  And so these -- I'll represent to you
10       that these contain the topics that we noticed
11       your deposition for.
12           Are you prepared to testify on all
13       of the topics?  And I'm happy to go through
14       each of them if it's better for you.
15   A.  I've reviewed this already, and I am prepared
16       to testify on these topics.
17   Q.  Okay.  So you're prepared to testify on
18       topics 1 through --
19           MR. CROWELL:  What's the last one,
20       Greg?  Just flip through.
21       BY MR. CROWELL:
22   Q.  -- 1 through 16?
23   A.  Yes.
24   Q.  Great.
25           MR. CROWELL:  Greg, let's pull up

Page 29

1        tab 8, and we'll mark that as Exhibit 4.
2    (Deposition Exhibit 4 was marked for identification.)
3        BY MR. CROWELL:
4    Q.  So I've marked as Exhibit 4 the Supply
5        Agreement between McKesson and Rite Aid.
6            MR. CROWELL:  Blow it up a little
7        bit more so we can read it.  That would be
8        helpful, I think.
9        BY MR. CROWELL:
10   Q.  So this is a very long agreement.  I'm going
11       to show you certain portions of it.  If you
12       want to see other parts of it, you can just
13       tell me, but I'm going to point you to
14       certain portions of it.
15           Do you recognize this document,
16       first of all?
17   A.  Yes.
18   Q.  Okay.
19           MR. CROWELL:  Greg, if you go to
20       Section 6.1, please.
21       BY MR. CROWELL:
22   Q.  So Section 6.1 says that "McKesson shall
23       invoice all amounts actually due and payable
24       by Rite Aid (or any other obligor pursuant to
25       Section 18) on EDI invoices.  EDI invoices

Page 30

```
 1    shall be computed in accordance with Section
 2    3 of this Agreement.  No amounts shall be due
 3    and payable by Rite Aid (or any other obligor
 4    pursuant to Section 18) with respect to any
 5    Product unless such amount is properly
 6    reflected on an EDI Invoice.  The 'Invoice
 7    Date' is the date of delivery of such
 8    invoice."  Do you see that?
 9    A.  I do.
10    Q.  Okay.  So pursuant to the terms of the Supply
11        Agreement, Rite Aid was obligated to pay
12        invoices within ten days of the invoice date,
13        correct?
14    A.  Yes.
15    Q.  Okay.  Section 7.1 says -- and this is
16        7.1(a).
17            MR. CROWELL:  Just blow it up a
18        little more, please, Greg, so my -- my old
19        man eyes are having a hard time seeing it.
20        Thanks.
21    BY MR. CROWELL:
22    Q.  Section 7.1(a) reads in part, "EDI Invoices
23        for deliveries of Products directly to
24        Pharmacies shall be due and payable ten days
25        after the Invoice Date."  Do you see that?
```

Page 31

```
 1    A.  I do.
 2    Q.  And you agree with me, don't you, that
 3        through the end of April 2025 this provision
 4        was never changed?  It was always 10-day
 5        terms, right?
 6    A.  Yeah, during -- during April this was the
 7        term in effect.  And then there were,
 8        obviously, amendments and discussions around
 9        amendments to that -- those terms between the
10        company and McKesson.
11    Q.  Right.  And we're going to get to those, but
12        those didn't go into effect until May, right?
13    A.  I don't recall a specific date that they were
14        put into effect.
15    Q.  Okay.  We'll get to it.
16            But you agree with me that all
17        invoices issued in April 2025 were always due
18        ten days after delivery of the invoice,
19        right?
20    A.  Unless they were -- unless they were subject
21        of another discussion or agreement between
22        McKesson and the company during April, that's
23        correct.
24    Q.  And are you aware of any specific invoices
25        that were issued in April that were subject
```

Page 32

```
 1    of another discussion or agreement between
 2    McKesson and the company that you just
 3    mentioned?
 4    A.  I recall there was a discussion about
 5        reducing payment terms from ten days to seven
 6        days and implementing a different cap.  I
 7        just don't recall specifically the date that
 8        those discussions occurred.
 9    Q.  And so you don't recall what specifically --
10        actually, strike that.  We'll come back to
11        that.
12            You do agree that the payment date
13        of the invoice was always keyed off the date
14        of -- the invoices were delivered, though,
15        right, regardless of whether it was ten days
16        or seven days?
17            MS. BENEDON:  Object to the form.
18            THE WITNESS:  When you say
19        "delivered," do you mean the product was
20        delivered?
21    BY MR. CROWELL:
22    Q.  No, I mean the invoice.  If you go back -- we
23        can go back to 6.1.
24    A.  Uh-huh.
25    Q.  6.1 again says, "The 'Invoice Date' is the
```

Page 33

```
 1    date of delivery of such invoice."  And then
 2    7.1 says, "EDI Invoices for deliveries of
 3    Products directly to Pharmacies shall be due
 4    and payable ten days after the Invoice
 5    Date...."  So I'm just asking you, to just
 6    make clear for the record, you agree that the
 7    payment date of invoices was always keyed off
 8    the date the invoices were delivered?
 9    A.  That's correct.
10    Q.  Okay.  And if you look at Section 7.2 --
11            MR. CROWELL:  Greg, on page 13.
12    BY MR. CROWELL:
13    Q.  -- section entitled, Non-Business Days, it
14        says, "Notwithstanding anything to the
15        contrary in this Section 7, if a payment is
16        due pursuant to Section 7.1 on a day
17        specified as a Saturday, that payment shall
18        instead be due on the preceding Business Day.
19        If a payment is due pursuant to Section 7.1
20        on a day specified as a Sunday or Holiday,
21        that payment shall instead be due on the
22        following Business Day."  Do you see that?
23    A.  I do.
24    Q.  So if the tenth day after the date that an
25        invoice was delivered fell on a weekend or
```

MAGNA
LEGAL SERVICES

Page 34

1    any other non-business day, this provision
2    allows for an adjustment of the payment date
3    slightly, correct?
4    A.  That's correct.
5    Q.  Okay.  So if the tenth day was a Sunday,
6    payment would be due the next day on Monday,
7    right?
8    A.  Yes.
9    Q.  Okay.  So based on the terms that we just
10    reviewed, you would agree, wouldn't you, that
11    if an invoice was delivered on Thursday,
12    April 24th, that payment would be due on
13    Monday, May 5th, right?  The following Monday
14    after the ten days ran on Sunday, May 4th,
15    right?
16        MS. BENEDON:  Objection.  You want
17    to show him a calendar?
18        MR. CROWELL:  I'll represent to him
19    that Thursday is April 24th and that May 5th
20    is Monday.
21        THE WITNESS:  Yes.
22    BY MR. CROWELL:
23    Q.  So just so the record is clear, based on the
24    Supply Agreement's terms, you would agree
25    that if an invoice was delivered on Thursday,

Page 35

1    April 24th, payment would be due on Monday,
2    May 5th, right?
3    A.  I do.
4    Q.  Okay.  And similarly you would agree that if
5    an invoice was delivered on Friday, April
6    25th, payment would be due on May 5th as
7    well, ten days later, right?
8    A.  Correct.
9    Q.  And Rite Aid does not dispute that McKesson
10    invoiced Rite Aid 28,092,801.85 on April
11    24th, 2025, right?
12    A.  That sounds correct.
13    Q.  And Rite Aid does not dispute that McKesson
14    invoiced Rite Aid 21,595,586.57 for April
15    25th, 2025, right?
16    A.  I believe that's correct.
17    Q.  Okay.  So adding those two amounts together,
18    you agree that pursuant to the terms of the
19    Supply Agreement, Rite Aid was required to
20    make a payment to McKesson of approximately
21    49.7 million on May 5th, 2025, right?
22    A.  That is correct.
23    Q.  In fact, Rite Aid made that payment, right?
24        MS. BENEDON:  Object to the form.
25        THE WITNESS:  No.

Page 36

1    BY MR. CROWELL:
2    Q.  Okay.  So is it your testimony, sir, that
3    Rite Aid did not make a $49.7 million payment
4    to McKesson on May 5th?
5    A.  No.  My testimony is that Rite Aid made that
6    payment, but it was not on account of the
7    4-23 and 4-24 invoices that you just
8    referenced.
9    Q.  So it was just sheer coincidence that it was
10    the exact amount of those invoices?
11        MS. BENEDON:  Object to the form.
12        THE WITNESS:  Could you restate
13    your question?
14    BY MR. CROWELL:
15    Q.  Sure.  We just established that the invoices
16    for April 24th and 25th added up to 49.7
17    million.  You agreed with that.  You also
18    agreed --
19        MS. BENEDON:  Object.  Sorry, Nick.
20    I think you got the dates wrong there.  I
21    didn't mean to speak over you, though.
22        MR. CROWELL:  That's okay.
23    BY MR. CROWELL:
24    Q.  I think the dates are April 24th and April
25    25th.  Am I wrong about that?

Page 37

1        MS. BENEDON:  I'm sorry, I must
2    have misheard you.
3        MR. CROWELL:  That's okay.  No
4    problems.  No worries.
5    BY MR. CROWELL:
6    Q.  So we just established that the invoices for
7    April 24th and April 25th added up to $49.7
8    million, right?
9    A.  Correct.
10    Q.  And we also established that on May 5th, ten
11    days after when those invoices were due, Rite
12    Aid paid McKesson $49.7 million, right?
13    A.  That is correct.
14    Q.  But your testimony is that that $49.7 million
15    was not paid to pay down those outstanding
16    invoices that were due that day?  That's your
17    testimony, sir?
18    A.  That is correct.
19    Q.  And explain what it was actually paid for
20    then.
21    A.  The $49.7 million was paid as a prepayment
22    for drugs that we had expected to be
23    delivered for the two-day period post-filing.
24    Q.  So is it just in sheer coincidence that the
25    $49.7 million payment matched exactly the

MAGNA
LEGAL SERVICES

Page 38

```
 1      amounts that were due on the April 24th and
 2      25th invoices, sir?
 3   A.  It's not a coincidence.  There is a reason.
 4   Q.  Well, what is it?
 5   A.  The payment of the $49.7 million, the
 6      prepayment, was expressly authorized by the
 7      lenders as a prepayment on the day that the
 8      prepayment was made.  And at that time the
 9      company had loaded into its financial system
10      wires to pay McKesson in the amount of 49.7,
11      and for administrative purposes we determined
12      to make the prepayment in the amount of the
13      $49.7 million that was loaded into the
14      system.
15          Those amounts, obviously, that were
16      loaded into the system were based on the
17      invoices, but the payment was expressly
18      permitted by the lenders and authorized by me
19      as a prepayment in that amount.
20   Q.  So let's break that down.  So you said it was
21      expressly authorized by the lenders as
22      prepayment.  Is there any record anywhere,
23      written record, of that?
24   A.  I don't believe there is.
25   Q.  Because I've not seen a single shred of
```

Page 39

```
 1      written evidence in this case that shows that
 2      that was a prepayment.  Is that correct?
 3          MS. BENEDON:  Object to the form.
 4          THE WITNESS:  I don't believe there
 5      is a written document.
 6   BY MR. CROWELL:
 7   Q.  And you -- sorry, I didn't mean to cut you
 8      off.  Go ahead if you weren't finished.
 9   A.  I was.
10   Q.  Okay.  And then you said that you -- not only
11      was it expressly authorized by the lenders,
12      it was authorized by you.  Is there any
13      written record of you authorizing this as a
14      prepayment?
15   A.  Written?  I do not believe there is.
16   Q.  Who at the lenders authorized this as a
17      prepayment?
18   A.  It would have been in a conversation with
19      either Jenn Cann or Polly from Bank of
20      America, and I don't recall which of the two.
21      One of those two, though.
22   Q.  So -- and I'm sorry, can you -- Jenn, what's
23      her last name?
24   A.  Cann, C-A-N-N.
25   Q.  And Paul's [sic] last name?
```

Page 40

```
 1   A.  I'm sorry, it was Polly.  And I don't recall
 2      her last name.
 3   Q.  Okay.  So your testimony is that you had a
 4      discussion with either Jenn Cann or Polly
 5      somebody and asked them to authorize this as
 6      a prepayment; and they said yes, it's a
 7      prepayment; and then you authorized it; is
 8      that right?
 9   A.  Either Jenn or Polly in a conversation with
10      me authorized the payment expressly as a
11      prepayment.
12   Q.  When did that conversation take place?
13   A.  The date of the payment.
14   Q.  Do you have a meeting planner or anything
15      that shows that that call took place?
16   A.  I'm not sure.  I may.
17   Q.  Has anyone asked you to look for that
18      information?
19   A.  No.
20   Q.  Okay.
21          MR. CROWELL:  I'm going to call for
22      the production of that.
23          MS. BENEDON:  He just said he
24      doesn't even know if it exists, but happy to
25      take it up after the deposition.
```

Page 41

```
 1   BY MR. CROWELL:
 2   Q.  So do you believe, sir, that if I called
 3      either Jenn Cann or Polly, whoever it is, to
 4      testify, they would back up this story about
 5      a conversation authorizing you to make this
 6      as a prepayment?
 7          MS. BENEDON:  Object to the form.
 8          THE WITNESS:  I believe they would,
 9      absolutely.  It's my recollection of the
10      conversation.  They were in the conversation,
11      so...
12   BY MR. CROWELL:
13   Q.  When's the last time you spoke to either Jenn
14      Cann or Polly about this prepayment
15      authorization issue?
16   A.  I don't recall speaking to them about it
17      since that -- since the day of the payment.
18   Q.  And, again, I just want to make this crystal
19      clear for the record.  You agree, don't you,
20      that there is not a single contemporaneous
21      email or document that has been produced in
22      this case that states that the $49.7 million
23      payment was made for post-petition orders,
24      right?
25          MS. BENEDON:  Object to the form
```

MAGNA
LEGAL SERVICES

Page 42

1    and misstates the record and lack of
2    foundation.
3         THE WITNESS:  We're -- there are
4    plenty of documents where we are explaining
5    that the payment was a prepayment.  Right.
6    It's the subject of this dispute.  It's our
7    position that the payments -- the payment was
8    a prepayment.
9    BY MR. CROWELL:
10   Q.  Yeah, I understand that, and maybe my
11   question wasn't very artful.  I used the word
12   "contemporaneous."  What I meant by that was
13   you agree that there's not a single email on
14   the day that the payment was made that shows
15   that it was a prepayment for post-petition
16   orders, right?
17        MS. BENEDON:  Excuse me.  Object to
18   form and foundation.
19        THE WITNESS:  I haven't -- I don't
20   recall an email or document.
21   BY MR. CROWELL:
22   Q.  And that's because that's just an argument
23   that Rite Aid came up with after the fact,
24   right, sir?
25        MS. BENEDON:  Object to the form.

Page 43

1    Misstates testimony.  Lack of foundation.  Go
2    ahead, Marc.
3         THE WITNESS:  That is not correct.
4    BY MR. CROWELL:
5    Q.  You agree with me, sir, don't you, that in
6    the past there's actually been email traffic
7    between the lenders and Rite Aid about
8    authorizing orders?  Correct?  Sorry, payment
9    of invoices.  Correct?
10   A.  Yes.
11   Q.  Do you find it odd that there is absolutely
12   no email authorizing payment of this invoice,
13   the one that happens to be at issue in this
14   case; whereas, there are plenty of emails
15   showing authorization for other invoices to
16   be paid?
17   A.  I don't.
18   Q.  It was pure coincidence?
19        MS. BENEDON:  Object to the form.
20        THE WITNESS:  I'm sorry, was that a
21   question or statement?
22   BY MR. CROWELL:
23   Q.  I'll withdraw it.
24        Why do you think there were emails
25   in the past when Rite Aid was requesting

Page 44

1    lender approval to make payment of McKesson
2    invoices but there isn't one for this
3    particular payment, the May 5th payment?
4    A.  The company was under cash dominion and
5    sought the approval of making payments, all
6    payments, including payments to McKesson,
7    through the lenders leading up to the filing.
8    They -- so that was a normal part of our
9    process through the date of the payment at
10   issue here.
11        The morning of -- in the morning
12   when the McKesson payment was discussed, it
13   was not approved for payment in the morning.
14   It was not until the subsequent conversations
15   with Bank of America and certain of its
16   representatives that the payment was
17   authorized, and it was authorized as I
18   described, as a prepayment.
19   BY MR. CROWELL:
20   Q.  Well, there's no email requesting approval
21   for the payment at any time, right?
22        MS. BENEDON:  Object to the --
23        THE WITNESS:  I don't recall.
24   BY MR. CROWELL:
25   Q.  You're not aware of any email requesting

Page 45

1    approval for the payment, correct?
2    A.  I'm -- I'm not.
3    Q.  Okay.  When you just testified that it was
4    not approved for payment in the morning, what
5    does that mean?  Did you call in the morning?
6    Because I haven't seen an email.  Did you
7    call and say is this approved for payment and
8    they said no?  What does that mean?
9    A.  The representatives of my team and BRG,
10   financial adviser to the lenders, had a
11   discussion in the morning, and this payment
12   was a topic of discussion, and the payment
13   was not authorized at that time.
14   Q.  So your team at BRG had a discussion but not
15   with the actual lenders, right?
16   A.  I do not believe -- let me retract that.
17   There may have been a representative of
18   B of A on that call.  I don't -- I don't
19   recall.  And I wasn't on the call.
20   Q.  Who was on the call from Alvarez?
21   A.  Rich Behrens would have been on that call.
22   Q.  And do you know who from BRG was on that
23   call?
24   A.  I don't specifically.
25   Q.  And do you know who from the lenders may have

1  Q.  And do you remember who these emails are to
2      and from?
3  A.  I believe it's Justin to Bixler.
4  Q.  Okay.  Do you agree with me, sir, as Rite
5      Aid's corporate representative, that whether
6      Rite Aid was under or above the cap at any
7      given time has absolutely no effect
8      whatsoever on whether payments were due under
9      the Supply Agreement ten days after they're
10     invoiced?  Right?
11 A.  That -- that is correct.
12 Q.  And you don't say anywhere in your
13     declaration the change to the cap had any
14     impact on the $49.7 million payment, right?
15         MS. BENEDON:  Object to the form.
16         THE WITNESS:  Can you repeat the
17     question?
18 BY MR. CROWELL:
19 Q.  Sure.  You don't say anywhere in your
20     declaration that the change to the cap that
21     you allege occurred had any impact on the
22     $49.7 million payment, correct?
23 A.  That's correct.
24         MR. CROWELL:  Let's go back to the
25     Supply Agreement, Greg.

1  BY MR. CROWELL:
2  Q.  Look at 7.1(d), as in dog, please.  So this
3      section is entitled, Suspension of Shipments
4      After Payment Default.  And it says, "If Rite
5      Aid fails to make a payment timely, then, in
6      addition to its other rights herein,
7      including in Sections 3.7, 7.1(d), 7.7, 7.12
8      and 12, McKesson has the immediate right to
9      suspend any shipment of Products to Rite
10     Aid."  Do you see that?
11 A.  I do.
12 Q.  And you agree that if Rite Aid failed to make
13     a payment when due, then McKesson could
14     suspend shipment of products, right?
15 A.  That is what the plain language that you just
16     read indicates.
17 Q.  And you agree that Rite Aid was ordering tens
18     of millions of dollars of products from
19     McKesson every day, right?
20 A.  Most days that is correct.
21 Q.  And Rite Aid never missed a 10-day payment
22     due for products delivered by McKesson
23     because this provision meant that McKesson
24     would have the right to suspend shipments if
25     it did so, right?

1          MS. BENEDON:  Object to form.
2          THE WITNESS:  Never missed a
3      payment due during the -- up until the point
4      of the -- you know, the 5th, that's correct.
5      BY MR. CROWELL:
6  Q.  And what payment did they miss that was due
7      on the 5th?
8  A.  We did not pay the 24th and 25th payments on
9      the 5th.  The 5th payment was for -- was a
10     prepayment for post-petition orders.
11 Q.  Right.  It just happened to match dollar for
12     dollar exactly what was invoiced, right?
13 A.  That -- that is correct.  And, again, as I
14     said earlier, that was for administrative
15     simplicity.
16         MR. CROWELL:  Let's look at 7.12 of
17     the Supply Agreement.
18 BY MR. CROWELL:
19 Q.  So 7.12 says -- 7.12(a) in part says,
20     "McKesson reserves the right to change a
21     payment term in any material respect
22     (including imposing the requirement of
23     pre-payment, same day or next day electronic
24     payment) or limit total credit immediately
25     upon an occurrence of a payment default under

1      section 12.1(a), following two days written
2      notice, if McKesson concludes there has been
3      a material adverse change in Rite Aid's
4      financial condition, or following seven days
5      written notice, if Rite Aid ceases to meet
6      McKesson's credit requirements...."  Do you
7      see that?
8  A.  I do.
9  Q.  And Rite Aid does not dispute that, pursuant
10     to this section, McKesson had the right to
11     change payment terms following seven days'
12     notice to Rite Aid if it ceased to meet
13     McKesson's credit requirements, right?
14 A.  I don't dispute that at all.
15 Q.  Okay.  And you don't dispute that McKesson
16     notified Rite Aid on April 23rd that it was
17     not in compliance with McKesson's credit
18     requirements, right?
19 A.  They definitely notified us.  I don't
20     recall -- the 23rd sounds correct, yes.
21 Q.  Okay.  I'll represent to you there was a
22     letter dated the 23rd, but I don't expect you
23     to have a perfect memory.
24         And you don't dispute with my
25     representation the letter was the 23rd that

MAGNA
LEGAL SERVICES

Page 78

1    MR. CROWELL:  Yeah, if you just
2  highlight it, it will be easier.  There you
3  go.
4    BY MR. CROWELL:
5  Q.  You see that for April 24th the deliveries is
6    27 million?  Do you see that?
7  A.  I do.
8    MR. CROWELL:  If you click that
9  cell, Greg.
10    BY MR. CROWELL:
11  Q.  You'll see that it's actually 26 million and
12    change.  Do you see that?
13  A.  Yes.
14  Q.  Okay.  Then next to it is a cell for the
15    April 25th deliveries, and that says 24.  And
16    if you click that, you'll see that's 23
17    million and change, right?
18  A.  That's correct.
19  Q.  Okay.  And then if we scroll over to May 5th,
20    the number in that row in parenthesis is 50.
21    Do you see that?
22  A.  I do.
23  Q.  Okay.  And that signifies a payment being
24    made, correct?
25    MS. BENEDON:  Object to form.

Page 79

1    THE WITNESS:  Sorry, guys, I'm just
2  looking at the numbers a little bit.  Pretty
3  small still.
4    It's in this sheet, which is again
5  a forecast, it signifies a forecasted payment
6  on that date in that amount.  That is -- that
7  is correct.
8    BY MR. CROWELL:
9  Q.  Okay.  So that column, the 50 million, is
10    just a forecast?  That's not an actual
11    payment is your testimony?
12  A.  Right.  This is a -- the date of this
13    schedule is the 28th, right?  So it's an
14    anticipated or forecasted payment.
15  Q.  I've gotcha.  Okay.
16  A.  Uh-huh.
17  Q.  But the forecasted payment on 5-5 is based on
18    the deliveries that were made on April 24th
19    and April 25th, right?
20  A.  If you go to that cell where the $50 million
21    payment is being calculated, you can see that
22    it links to -- exactly.  It links to the
23    deliveries from the 24th and the 25th.  That
24    is correct.
25  Q.  Okay.  Thanks.

Page 80

1    MR. CROWELL:  You can pull that
2  down, Greg.  Let's go to tab 19.
3  (Deposition Exhibit 13 was marked for identification.)
4    MR. CROWELL:  And let's mark that
5  as Exhibit --
6    MS. BENEDON:  13.
7    MR. CROWELL:  Thank you, Alison.
8  (Deposition Exhibit 13 was marked for identification.)
9    BY MR. CROWELL:
10  Q.  This is an email from -- I don't know how you
11    pronounce the name, is it Ki or Ke Thomas?
12    Do you see that?
13  A.  I do.
14  Q.  Are you familiar with that person?
15  A.  I'm -- generally.  I don't have much
16    interaction with him, but --
17  Q.  And what's their position at Rite Aid or HQ,
18    whatever it is?
19  A.  It looks like they're in accounts payable,
20    senior accountant.
21  Q.  Do you know if they're at Rite Aid or HQ
22    or --
23  A.  I'm not sure.
24  Q.  Okay.  You see where she writes to McKesson,
25    Kimberly Evans at McKesson, "Our payment wire

Page 81

1  for 5/5 will be 49.6 million, McKesson's
2  expected amount for 5/4 and 5/5"?  Do you see
3  that?
4  A.  I do.
5  Q.  Okay.  And continuing on to the chart, you'll
6    see that the first line of the chart says,
7    Rite Aid AP Balance, right?  49.7 about?  You
8    see that?
9  A.  I do see that, yes.
10  Q.  And that was the current balance that Rite
11    Aid owed to McKesson for deliveries that were
12    due -- sorry, the payment that was due on
13    5-5, right?
14  A.  That's correct.
15  Q.  Okay.  So this email from -- is this a man or
16    a woman, by the way?  I apologize, Thomas, Ki
17    or Ke Thomas.
18  A.  Not sure.
19  Q.  Okay.  I'm just going to say "they."
20    This email from they shows that
21    Rite Aid was expecting to have owed 49.7
22    million approximately to McKesson on May 4th
23    -- sorry, May 5th for orders invoiced ten
24    days earlier, right?
25  A.  So I believe this is two days' worth of

Page 82

1    payments, the 49.7, right, because of the
2    weekend issue we discussed earlier.
3    Q.  Uh-huh.
4    A.  Can you repeat your question, though, just
5       with that clarification?
6    Q.  Yeah.  So you agree with me that this email
7       shows that Rite Aid was expecting to have to
8       pay 49.7 million to McKesson on May 5th for
9       orders they were invoiced, to your point, on
10      April 24th and 25th, right?
11   A.  That is exactly what this email says, yes.
12   Q.  Okay.  Did Rite Aid ever tell its lenders
13      that this payment was not made in the
14      ordinary course of business?
15   A.  I don't know what -- what conversations that
16      other members at Rite Aid may have had with
17      the lenders, but certainly in my discussions
18      with the lenders they understood that this
19      payment was part of the normal 10-day payment
20      cycle.
21   Q.  So it's your testimony that this payment was
22      made in the ordinary course of business,
23      right?
24   A.  Well, this payment was never made the way
25      we're -- this email describes it.  Was made

Page 83

1    the way I described it earlier.
2    Q.  Well, you don't dispute that a 49 -- that the
3       payment amount for this exact amount -- a
4       payment for this exact amount was made on May
5       5th, right?
6    A.  I do not dispute that at all.
7    Q.  Okay.  You just dispute that it was to pay
8       the April 24th and 25th orders, right?
9    A.  That is correct.  The payment was made as a
10      prepayment for post-petition orders.
11   Q.  And, again, your testimony is you got
12      permission for that payment from Polly
13      Hackett and/or Jenn Cann, right?
14   A.  Yeah.  Obviously, there were other people on
15      the phone, including counsel.  She had
16      counsel on as did we as part of that
17      conversation, that is correct.  Payment was
18      authorized as a prepayment.
19   Q.  Let's look at tab 21.
20         MR. CROWELL:  And we can mark that
21      as Exhibit 14.
22   (Deposition Exhibit 14 was marked for identification.)
23         MR. CROWELL:  Blow that up a little
24      bit, Greg.  Thanks.
25      BY MR. CROWELL:

Page 84

1    Q.  So this is an email chain between Steve
2       Bixler and Justin Bowers and Owen McMahon
3       dated May 5th, 2025.  Are you familiar with
4       this?
5    A.  Yes.
6    Q.  And, I'm sorry, you may have said this
7       already, but, I apologize, who is Steve
8       Bixler?  What's his position?
9    A.  Steve is the chief financial officer of Rite
10      Aid.
11   Q.  Okay.  And he writes, third sentence, "We
12      anticipate making a wire payment in the
13      amount of 49.7 million today, which I believe
14      will put our outstanding balance at
15      approximately 138 million."  Do you see that?
16   A.  I do.
17   Q.  Okay.  And the "outstanding balance" refers
18      to the invoices that are outstanding, right?
19         MS. BENEDON:  Object to the form.
20         THE WITNESS:  That -- that is
21      correct.
22      BY MR. CROWELL:
23   Q.  So ones that have already been issued for
24      orders that have already been placed, right?
25   A.  For orders that have been delivered.

Page 85

1    Q.  Okay.  So from this email from Mr. Bixler to
2       Mr. McKesson saying that Rite Aid anticipates
3       making a wire payment of $49.7 million today,
4       right?  That's what it says, correct?
5    A.  You are reading exactly what Steve wrote
6       here, and when Steve wrote this he -- that
7       was his anticipation.
8    Q.  Are you saying something changed between the
9       time he wrote this and the payment was made?
10   A.  Yes.
11   Q.  What was that, sir?
12   A.  That the payment was authorized expressly as
13      a prepayment by Bank of America, and then it
14      was executed pursuant to that authorization.
15   Q.  And, again, there's no documentation
16      whatsoever showing that, though, right?
17         MS. BENEDON:  Object to the form.
18         THE WITNESS:  I'm not aware of any
19      documentation.
20         MR. CROWELL:  Let's just take a
21      look quickly at tab 22 and mark that as 15.
22   (Deposition Exhibit 15 was marked for identification.)
23         MR. CROWELL:  Just flip to the
24      second page.
25      BY MR. CROWELL:

MAGNA
LEGAL SERVICES

Page 90

```
 1    the privileged and redacted portion of the
 2    email. That's not the appropriate subject of
 3    testimony.
 4           So if you're able to answer it,
 5    Marc, without disclosing anything that's
 6    privileged, you can go for it.
 7           MR. CROWELL: I didn't ask anything
 8    about what I don't -- I can't see. I only
 9    asked about what this email says, which is
10    not redacted, which is, "Sorry, didn't
11    realize you hadn't talked to BRG." And I
12    think my question was -- let's just see what
13    it was -- do you know why he said, "Sorry,
14    didn't realize you hadn't talked to BRG"?
15           THE WITNESS: Yeah, I'm -- I
16    believe, again, going back in time here quite
17    a bit, that Matt forwarded the email from
18    Britt to B of A, and typically when we're
19    having communications with Bank of America
20    we're also talking to BRG. And so to let
21    them -- make them aware of what has
22    transpired.
23           You know, I'm kind of remembering
24    or inferring to an extent here that I must
25    not have had a chance to talk to BRG prior to
```

Page 91

```
 1    Matt sending the email directly to B of A to
 2    give them a heads up that we had received the
 3    email from Britt. That is likely what that
 4    statement is related to.
 5    BY MR. CROWELL:
 6    Q.  Okay. And then he says, "In any event, we've
 7        been warning the lenders for a while about
 8        this." Do you see that?
 9    A.  I do.
10    Q.  What had he been warning the lenders about,
11        if you know?
12           MS. BENEDON: Object to form.
13           THE WITNESS: Look, these are
14    Matt's words, right? So what Matt meant by
15    his words is sort of -- it's really Matt's
16    words, right, for him to answer to.
17           But what I believe he is implying
18    here and meant here is that we had been
19    concerned about the relationship with
20    McKesson, and it was important to us that we
21    let the lenders know that there were risks
22    with respect to that relationship given
23    their -- given the company's Supply Agreement
24    with McKesson.
25    BY MR. CROWELL:
```

Page 92

```
 1    Q.  So is it fair to say that as of 4-20-25 --
 2        sorry, April 20th, 2025, the lenders were
 3        well aware about McKesson's concerns? Is
 4        that -- is that true?
 5    A.  They were aware to the extent that this email
 6        makes them aware that it was forwarded to
 7        them. That is correct.
 8    Q.  Okay. So shifting gears a little bit.
 9           MR. CROWELL: You can take that
10    down, Greg.
11    BY MR. CROWELL:
12    Q.  HQ always paid amounts due pursuant to a
13        McKesson EDI invoice throughout the life of
14        the Supply Agreement, correct?
15    A.  I believe that is correct, yes.
16    Q.  So Rite Aid Corporation never paid any
17        invoices directly itself to McKesson, right?
18    A.  That is correct.
19    Q.  And you don't dispute that the subsidiaries
20        of Rite Aid placed orders for McKesson, and
21        upon deliveries McKesson would then issue the
22        EDI invoices, which were generated by
23        McKesson and sent electronically to Rite Aid,
24        right?
25    A.  I do not dispute that.
```

Page 93

```
 1    Q.  Okay. And those invoices reflected the
 2        aggregate amounts due for deliveries made on
 3        a particular day, right?
 4    A.  That is correct.
 5    Q.  And every day, or most days I think you said,
 6        there were tens of millions of dollars of
 7        product delivered by McKesson to Rite Aid
 8        subsidiaries, right?
 9    A.  That's correct. I don't think there were
10        much in the way of deliveries on the
11        weekends, but during the week certainly, tens
12        of millions, yes.
13    Q.  In addition to everyday deliveries, there
14        were also invoices issued every day to
15        reflect amounts owed to McKesson for the
16        deliveries, correct?
17           MS. BENEDON: Object to the form.
18           THE WITNESS: That's correct
19    generally, yes.
20    BY MR. CROWELL:
21    Q.  And then HQ remitted the amounts due on
22        10-day terms so that the products delivered
23        on the first day of the month, for example,
24        would get paid on the 10th day of the month,
25        except if that payment was due on a Saturday,
```

**MAGNA**
LEGAL SERVICES

Page 94

1  it would be paid on a Friday; if it was due
2  on a Sunday or a holiday, it would be paid on
3  a Monday? We've already gone over that,
4  right?
5  A. That is correct.
6  Q. Okay. And, again, Rite Aid understood that
7  if it didn't pay the invoices on 10-day
8  terms, McKesson had the right to suspend
9  shipment of deliveries, right?
10 A. I believe subject to some notice period
11 that's generally correct.
12 Q. And I think you said this, but I just want to
13 make sure I got it right. There were no
14 instances that you were aware of before Rite
15 Aid filed for bankruptcy on May 5th where an
16 EDI invoice issued by Rite Aid was not paid
17 on 10-day terms, right?
18 A. Where an EDI invoice issued by McKesson
19 wasn't paid on 10-day terms, correct.
20 Q. Sorry. My bad. I misspoke. That's correct.
21 A. Uh-huh.
22 Q. And this was done day in and day out pursuant
23 to the terms of the Supply Agreement,
24 correct?
25 A. That is correct.

Page 95

1  Q. Was there a formal internal process at Rite
2  Aid to monitor the cap?
3  A. Yes.
4  Q. And what was it, if you can describe it for
5  me?
6  A. Well, I mean, we -- there was a tracking of
7  where we were with respect to outstanding AP
8  relative to the cap.
9  Q. And who was in charge of that?
10 A. I'm not sure who within the finance
11 organization is responsible for it.
12 Q. Again, we established earlier that HQ is a
13 guarantor of Rite Aid, right?
14 A. That is correct.
15 Q. Okay. So if Rite Aid defaulted on a payment,
16 HQ would be obligated under the Supply
17 Agreement and Subsidiary Agreement to step in
18 and make that payment, right?
19    MS. BENEDON: Object to the form.
20    THE WITNESS: That is my
21 understanding legally.
22    MR. CROWELL: Let's go to -- back
23 to your declaration, which I think we
24 previously marked as Exhibit 5, Greg.
25    MR. JACOBS: Yeah. Is there any

Page 96

1  chance we could take a bio break?
2     MR. CROWELL: A guy who's not
3  taking or defending is calling for a break.
4  But I'll make it happen. That's fine.
5     Is that okay with you, Alison?
6     MS. BENEDON: Certainly.
7     MR. CROWELL: Okay. We'll take
8  ten. Thanks, guys.
9     THE VIDEOGRAPHER: Okay. This
10 marks the end of media number two. We're
11 going to go off the record. It's 10:08.
12    (A recess was taken.)
13    THE VIDEOGRAPHER: This will mark
14 the beginning of media number three in our
15 deposition of Marc Liebman, 30(b)(6). We're
16 going back on the record at 10:18 a.m.
17 BY MR. CROWELL:
18 Q. So before we took a break, Mr. Liebman, we
19 were going to go to Exhibit 5, which is your
20 declaration.
21    MR. CROWELL: Let's pull that up.
22    MR. JACOBS: One moment.
23 BY MR. CROWELL:
24 Q. Okay. So let's look at paragraph 4. You
25 state here that: "Rite Aid operates numerous

Page 97

1  pharmacies nationwide, each of which collects
2  funds from customers," right?
3  A. That is correct.
4  Q. And "These affiliates and pharmacies operate
5  under a central cash management system, under
6  which all receipts are collected by HQ,"
7  right?
8  A. That is correct.
9  Q. And I'm correct, am I not, that the cash
10 management system generated approximately
11 $1.2 billion per month as of the petition
12 date on May 5th, including store cash
13 receipts, credit and debit card receipts and
14 e-commerce sales?
15    MS. BENEDON: Object to form and
16 foundation.
17    MR. CROWELL: Okay. Let's look at
18 the cash management motion. Tab 29. So I
19 can give you some foundation.
20    MR. JACOBS: This is 17.
21 (Deposition Exhibit 17 was marked for identification.)
22    MR. CROWELL: Exhibit 17?
23 BY MR. CROWELL:
24 Q. Let's go to paragraph 9. I'll represent to
25 you that this is the cash management motion,

25 (Pages 94 to 97)

**MAGNA** ▶
LEGAL SERVICES

Page 110

1     which again is Exhibit 5.  And paragraph 6.
2     You note that the lenders swept cash daily
3     and that Rite Aid was required to draw
4     amounts necessary to fund operations.  My
5     question is, when funding by lenders occurred
6     upon the request from Rite Aid, did the
7     lenders fund the 2257 account?
8  A.  Yes.
9  Q.  And that account was owned by HQ, right?
10  A.  That is correct.
11  Q.  And when a request was made to the lenders to
12     fund operation, what was the level of detail
13     provided?
14  A.  The lenders would have --
15        MS. BENEDON:  Objection, form.
16     Sorry, go ahead.
17        THE WITNESS:  The lenders would
18     have received essentially a schedule with
19     requested payments.
20     BY MR. CROWELL:
21  Q.  So did Rite Aid specifically explain how much
22     was required to fund amounts owed to McKesson
23     in order to pay outstanding EDI invoices on
24     10-day terms, for example?
25  A.  Yeah, there would have been a specific line

Page 111

1     item for amounts that were requested to be
2     paid for McKesson in that schedule.
3  Q.  Yeah, so it's true that the standing
4     operating procedure for Rite Aid was to make
5     a funding request for daily operational
6     needs, including the specific line item to
7     pay McKesson invoices, right?
8  A.  That's correct.
9        MR. CROWELL:  And I don't know if
10     you have the exhibit, Greg.  It's at 3-16 --
11     sorry, March 6th email I just want to show.
12        MR. JACOBS:  Yep.  One moment.
13        MR. CROWELL:  Blow that up a little
14     bit, please.  So this is -- I'm going to
15     introduce this as Exhibit --
16        MR. JACOBS:  18.
17        MR. CROWELL:  Thank you.
18  (Deposition Exhibit 18 was marked for identification.)
19     BY MR. CROWELL:
20  Q.  This is an email change between Jennifer
21     Wagner-Parrish of Rite Aid and various other
22     folks dated March 6th, 2025.  And the subject
23     line is:  RAD Borrowing Breakdown.  Do you
24     see that?
25  A.  Yes.

Page 112

1  Q.  This is an example of a request from Rite Aid
2     to receive funding from lenders for its daily
3     operations, right?
4  A.  I -- I think this is actually something
5     different.  I think this is just a borrowing
6     brief certificate that is indicating that we
7     are below the maximum outstandings on the
8     loan pursuant to the borrowing base
9     calculation.  I think that's what this is.
10     Oh, that's the attachment.  Sorry.  Okay.
11        Yeah, farther down, sorry, yes, it
12     does seem -- it does have -- delineates on a
13     line-item-by-line-item basis the payment
14     requests.
15  Q.  Thanks.  And so my question is, did emails
16     like this continue through May 5th?
17  A.  I believe so.  Yeah.  Either emails or
18     schedules or discussions center around very
19     similar topics, yes.
20  Q.  Do you know why the debtors did not produce
21     any emails like this exhibit after March 6th?
22  A.  Again, some of the discussions may have been
23     verbal, I'm not sure, but at the end of the
24     day we provided discovery consistent with
25     advice from counsel.

Page 113

1  Q.  Did you see any email like this with respect
2     to the $49.7 million payment at issue?
3  A.  To -- directly to B of A?  Is that your
4     question?
5  Q.  Yeah, an email like this.  Right.
6  A.  I don't -- I don't recall.
7  Q.  Okay.  In paragraph -- let's go back to
8     paragraph 6 of your declaration.  Who is the
9     person at Rite Aid responsible for making the
10     request for payments to McKesson during the
11     relevant times referenced in paragraph 6 of
12     your declaration?
13  A.  So can you -- can you repeat the question?
14     I'm sorry.
15  Q.  Sure.  Who was the person or persons at Rite
16     Aid responsible for making the payment --
17     sorry, the request for payments to McKesson
18     during the relevant times referenced in
19     paragraph 6 of your declaration?
20  A.  Making the requests of Bank of America?
21  Q.  Yes.  Correct.  Sorry.
22  A.  That would have been Steve Bixler or myself.
23     Ultimately I was -- as part of an amendment,
24     I had to sign off on all distributions such
25     as these.

MAGNA
LEGAL SERVICES

Page 114

1  Q.  You said "as part of an amendment."
2      Amendment to what?
3  A.  The credit agreement.
4  Q.  Do you know --
5  A.  I may have mis -- apologies to talk over you.
6      I may have mischaracterized that.  It may not
7      have been an amendment, but a waiver of some
8      sort.
9  Q.  So there's some written document which
10     requires your authorization for payments to
11     be made; is that what you're saying?  I'm
12     just trying to --
13 A.  I believe that's -- I believe that is the
14     case, yes.
15 Q.  Okay.
16 A.  But, again, you know, Steve Bixler would have
17     been a part of the process as well.
18 Q.  And do you know if that written waiver, or
19     whatever you want to call it, was produced in
20     this litigation?
21 A.  I don't know.
22 Q.  You understand that the May 5th wire was paid
23     by HQ from the 2257 account, right?
24 A.  I do.
25 Q.  Okay.  And that's -- again, that's the

Page 115

1      concentration account, right?
2  A.  That's correct.
3  Q.  And that's the primary account for the
4      debtors' disbursement process, right?
5  A.  That is correct.
6  Q.  Okay.
7          MR. CROWELL:  Let's look at tab 31.
8      I think this is Exhibit 19, but correct me if
9      I'm wrong, Greg.
10         MR. JACOBS:  You're correct.
11         MR. CROWELL:  Thank you.
12 (Deposition Exhibit 19 was marked for identification.)
13         MR. CROWELL:  So if you blow it up
14     a little bit.
15 BY MR. CROWELL:
16 Q.  I'll represent to you that this is a schedule
17     of assets of each of the debtors.  Do you
18     recognize this?
19 A.  I do.
20 Q.  Okay.
21         MR. CROWELL:  And I want to go to
22     pdf page 32, Greg.
23 BY MR. CROWELL:
24 Q.  If you look at the top left of page -- pdf
25     page 32, its debtor name is Rite Aid

Page 116

1      Headquarters Corp.  Do you see that?
2  A.  Yes.
3  Q.  So this -- this page lists the assets of HQ,
4      right?
5  A.  It does, yes.
6  Q.  And the concentration account, 2257, is an
7      asset of HQ, right?
8  A.  That is correct.
9  Q.  It's not an asset of Rite Aid Corp or any
10     other debtors, right?
11 A.  Well, Rite Aid -- HQ is owned by Rite Aid
12     Corp.
13 Q.  Well, if I represented to you that the 2257
14     account is not listed anywhere in this
15     document as an asset of Rite Aid Corp or any
16     other debtors, you'd have no reason to
17     disagree with me, would you?
18 A.  I'd have no reason to disagree with the
19     representation that you made.
20 Q.  Well, do you believe that there's something
21     in here that shows that the 2257 account is
22     an asset of Rite Aid Corp?
23 A.  Well, Rite Aid HQ is a subsidiary of Rite Aid
24     Corp.  It's owned by Rite Aid Corp.  Right?
25     So the entity Rite Aid HQ has the -- has the

Page 117

1      account obviously, but ultimately it's Corp
2      that owns HQ and by virtue of that ownership
3      owns the asset.
4  Q.  But there's nothing in the schedule that
5      shows that the 2257 account is specifically
6      an asset of Rite Aid Corp; you agree with
7      that, right?
8          MS. BENEDON:  Object to form and
9      foundation.
10         THE WITNESS:  On this schedule that
11     you have in front of me that appears to be
12     correct.
13 BY MR. CROWELL:
14 Q.  Okay.  Let's go to page 1312 of this
15     schedule.  This is a list of certain payments
16     made by HQ within 90 days of the petition
17     date, right?
18 A.  That's correct.
19 Q.  And the 49.7 million May 5th wire is the last
20     item listed before the subtotal.  Do you see
21     that?
22 A.  I do.
23 Q.  Am I correct that no such wire was listed
24     anywhere in the schedule as being made by
25     Rite Aid, right?

MAGNA
LEGAL SERVICES

Page 118

1    A.  Could you go to the top of the -- I'm sorry,
2       could you repeat your question now?
3    Q.  Let's do it this way.
4          MR. CROWELL:  Let's go to tab 30,
5       Greg.
6          MR. JACOBS:  This is 20, Exhibit
7       20.
8    (Deposition Exhibit 20 was marked for identification.)
9          MR. CROWELL:  Oh, sorry.  Thank you
10      for keeping track.
11      BY MR. CROWELL:
12   Q.  So this is -- do you recognize this document,
13      sir?  It's entitled, "GLOBAL NOTES AND
14      STATEMENTS OF LIMITATIONS, METHODOLOGY, AND
15      DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES
16      OF ASSETS AND LIABILITIES AND STATEMENTS OF
17      FINANCIAL AFFAIRS."
18   A.  I do.
19   Q.  And if you look at page 24, you see that this
20      is -- it's hard to see at the top, but this
21      is Debtor, Rite Aid Corp.  Do you see that?
22   A.  I will -- I will take your -- I will submit
23      to your statement that it does say that, yes.
24   Q.  I appreciate that because they're virtually
25      impossible to read.  But I'm making that

Page 119

1       representation.
2          And this talks about transfers
3       within 90 days.  Do you see that?
4    A.  Yes.
5    Q.  And the box is checked "None" there.  Do you
6       see that?
7    A.  I do.
8    Q.  Okay.
9          MR. CROWELL:  You can take that
10      down, Greg.  Let's go back to the cash
11      management motion, whatever exhibit that was.
12      What exhibit was this again, Greg?
13         MR. JACOBS:  17.
14      BY MR. CROWELL:
15   Q.  Back to Exhibit 17.  And let's go to
16      paragraph 11.  Okay.  So paragraph 11 states
17      that:  "Prior to the Petition Date, the
18      Debtors made certain modifications to the
19      Cash Management System in accordance with
20      their proposed debtor-in-possession financing
21      facility."  Do you see that?
22   A.  I do.
23   Q.  Okay.  Do you know when it made those
24      modifications?
25   A.  I don't recall.

Page 120

1    Q.  Do you know what the modifications to which
2       the debtors were referring to are?
3    A.  I don't recall.
4    Q.  And then it goes on to say in paragraph 11
5       that the cash management motion that "The
6       Debtors make daily funding requests to the
7       DIP Lenders, who, again, transfer required
8       funds via ACH to the Main Concentration
9       Account (2257)," right?
10   A.  I see that.
11   Q.  And then do you know if the funds used by the
12      lenders to fulfill requests made by the
13      debtors to fund their operations came from
14      cash sweeps or from other funds of the
15      lenders?
16         MS. BENEDON:  Object to the form.
17         THE WITNESS:  So the funds are
18      swept to pay down the ABL and then
19      re-borrowed as disbursements are made.
20      BY MR. CROWELL:
21   Q.  So your testimony is that all came from cash
22      sweeps?
23   A.  It all came from drawings on the ABL.
24   Q.  Okay.  Let's go back to paragraph 6 of your
25      declaration.  So you say that, again -- and

Page 121

1       we've looked at this a little bit before.
2       You say that "Rite Aid was in cash dominion
3       under the loan facility," right?
4    A.  That's correct.
5    Q.  But you don't dispute that HQ was also a
6       party to the credit facility along with Rite
7       Aid, right?
8    A.  I do not dispute that.
9    Q.  Okay.
10         MR. CROWELL:  Let's go back to the
11      credit agreement, whatever exhibit that was.
12      It's tab 20.  I can't remember the exhibit we
13      marked it as though, Greg.
14         MS. BENEDON:  11.
15         MR. JACOBS:  11, thank you.
16         MR. CROWELL:  Thanks, Alison.
17      And I want to look at Section 6.08,
18      which is on pdf 179.
19         MS. BENEDON:  And I will object,
20      again, to questioning on this document which
21      is outside the scope of the notice.
22      BY MR. CROWELL:
23   Q.  So 6.08(b), if you go down.  6.08(b) says --
24      it deals with McKesson obligations, right?
25   A.  Appears to.

Page 122

1   Q.  Yeah.  And it says that "The Borrower will
2       not, nor will it permit any Subsidiary to,"
3       make or -- sorry, "to, pay or make or agree
4       to pay or make, directly or indirectly, any
5       payment of the McKesson Obligations, except:
6       payments...in the ordinary course of
7       business."
8           MR. CROWELL:  Can you highlight
9       that, Greg?  Go down.  Further.  Keep going.
10      There you go.
11  BY MR. CROWELL:
12  Q.  The McKesson -- sorry, 6.08(c), my fault.
13          "The Borrower will not, nor will it
14      permit any Subsidiary to, pay or make or
15      agree or pay to make, directly or indirectly,
16      any payment of the McKesson Obligation,
17      except, (i) payments of the McKesson Trade
18      Obligations in the ordinary course of
19      business," right?
20  A.  I see that.  That's correct.
21  Q.  What did Rite Aid consider to be an ordinary
22      course of business payment of a McKesson
23      trade obligations?
24          MS. BENEDON:  Object to the form
25      and to the extent you're calling for a legal

Page 123

1       conclusion.  You can answer if you know.
2           THE WITNESS:  I, um -- I think that
3       requires a legal conclusion, so I cannot
4       answer.
5   BY MR. CROWELL:
6   Q.  And I think we have this clear on the record,
7       but I just want to make sure that it's there.
8       Rite Aid never provided written notice to the
9       lenders prior to making a request for funding
10      the May 5th wire, that the May 5th wire was a
11      payment that was not a payment in the
12      ordinary course of business, correct?
13  A.  Sorry to make you do this.  Can you -- can
14      you repeat that?
15  Q.  Sure.  Rite Aid never provided written notice
16      to the lenders prior to making a request for
17      funding the May 5th wire that indicated that
18      the May 5th wire was a payment that was not a
19      payment in the ordinary course of business,
20      right?
21  A.  I'm not aware of any communication like that.
22  Q.  Okay.  And there's no written approval of the
23      $49.7 million payment either, right?
24  A.  I -- I don't believe so.
25  Q.  There were never any plans, were there, for

Page 124

1       Rite Aid to forego paying McKesson on any
2       invoices that were due on 10-day terms prior
3       to Rite Aid filing for bankruptcy, right?
4   A.  Can you restate the question, please?
5   Q.  Sure.  There were never outstanding invoices
6       that were not paid on the 10-day terms during
7       the term of the Supply Agreement, right?
8   A.  But for the payment due the 5th, that is
9       true.
10  Q.  Did anyone from Rite Aid ever tell McKesson
11      that this payment was not to pay down the
12      April 24th and 25th invoices at the time it
13      was made?
14  A.  I'm not aware of anyone telling McKesson
15      that.
16  Q.  So that was just an internal Rite Aid
17      decision made at some point, correct?
18  A.  That was the express authorization of the
19      lenders and the express direction of me in
20      making the payment.
21  Q.  And, again, that was all via telephone calls
22      is your testimony, right?
23  A.  And discussions, that's right, with the team.
24          MR. CROWELL:  Let's go to Section
25      5.14, which I think is page 166.  Could be

Page 125

1       wrong.  Yep, there it is.
2   BY MR. CROWELL:
3   Q.  This says that "The Borrower shall maintain
4       accounting systems capable of tracing
5       intercompany transfer of funds and other
6       assets," right?
7   A.  It does.
8   Q.  So intercompany transfers between and among
9       the borrower and its various subsidiary loan
10      parties were permitted by the credit
11      agreement so long as those transfers were
12      traceable, right?
13  A.  That -- yes, that is correct.
14  Q.  And there's nothing in this agreement, to
15      your knowledge, that mandated whether the
16      borrower or any particular subsidiary had to
17      make payments to any of the vendors of any
18      other subsidiary, right?
19  A.  I'm not sure.  This is a very long agreement.
20  Q.  You agree, sir, that --
21          MR. CROWELL:  You can take that
22      down, Greg.
23      BY MR. CROWELL:
24  Q.  You agree, sir, that McKesson continued to
25      make deliveries to Rite Aid after Rite Aid's

MAGNA
LEGAL SERVICES

Page 126

1  bankruptcy filing, right?
2  A.  That is correct.
3  Q.  And McKesson and Rite Aid had agreed to a
4      system where Rite Aid would make prepayments
5      based on the expected volume of the next
6      day's deliveries, right?
7  A.  That is correct.
8  Q.  Okay.
9          MR. CROWELL:  Let's look at tab 24
10     and mark that as Exhibit -- whatever is next.
11     I think it's 21.  Is that right, Greg?
12         MR. JACOBS:  That's correct.
13  (Deposition Exhibit 21 was marked for identification.)
14         MR. CROWELL:  Blow it up a little
15     bit.
16     BY MR. CROWELL:
17  Q.  So this is an email between Richard Behrens
18     and Alvarez and Rite Aid, right?  And it's
19     dated May 7th, 2005 -- sorry, 2025.  Do you
20     see that?
21  A.  I do.
22  Q.  Okay.  And this lays -- Richard Behrens lays
23     out the proposal from McKesson's counsel
24     concerning the go-forward arrangement.  Do
25     you see that?

Page 127

1  A.  I do.  Can I take a minute to read this if
2      you're going to ask me --
3  Q.  One hundred percent.  Take as much time as
4      you need.
5  A.  Okay.
6          MR. JACOBS:  Let me know if you
7      want me to scroll.
8          THE WITNESS:  (Reviewing document.)
9      Yep.  I'm through it.  Thank you.
10     BY MR. CROWELL:
11  Q.  Okay.  So Mr. Behrens talks about, you see:
12     "Tomorrow / Thursday pay them around Noon
13     Eastern for deliveries received through 5/8
14     and estimated deliveries on 5/9," right?
15  A.  Yes.
16  Q.  And then "On Friday 5/9 onward we pay them in
17     advance for the next day's drop."  Do you see
18     that?
19  A.  I do.
20  Q.  And then if you --
21         MR. CROWELL:  Let's go to tab 25
22     and mark that as Exhibit 22.
23  (Deposition Exhibit 22 was marked for identification.)
24     BY MR. CROWELL:
25  Q.  So that prior email laid out the plan for

Page 128

1  prepayments, and this is an email dated the
2  next day, May 8th, 2025, again, from
3  Mr. Behrens saying, "We will need to prepay
4  starting today..."  Do you see that?
5  A.  I see those words, yes.
6  Q.  Okay.  So this shows that Rite Aid understood
7  it would begin making prepayments for the
8  deliveries made by McKesson starting on
9  Thursday, May 8th, right?
10         MS. BENEDON:  Object to the form.
11         THE WITNESS:  No.  I mean, that's
12  not what I would interpret from this.
13     BY MR. CROWELL:
14  Q.  What would you interpret from it?
15  A.  Well, the email -- the prior email you showed
16  me showed that -- our position, which I've
17  stated it multiple times, which is the 5-5
18  payment was a prepayment for first two days
19  post bankruptcy, and so that's when it
20  started.
21  Q.  Wait.  Excuse me.  The prior email says that?
22  A.  Yeah.  Does it not?
23  Q.  Let's pull up the prior email.  Where does it
24  say that?
25  A.  4.

Page 129

1  Q.  Okay.  Go ahead.
2          Go back to the next email.
3  A.  Yeah, so I don't think you can infer what you
4      just described, though, based on the 5-8
5      email that's in front of me.
6          Obviously, the prior email
7      indicates the position I've been stating,
8      which is the prepayment started with the 5-5
9      payment.
10  Q.  And is this the -- is that the first email,
11     written evidence, you've seen of that
12     position being taken?
13  A.  I don't recall.
14  Q.  Okay.
15         MR. CROWELL:  Okay.  Let's go to
16     tab 26.
17         MR. JACOBS:  23.  Exhibit 23.
18  (Deposition Exhibit 23 was marked for identification.)
19         MR. CROWELL:  Thank you.
20     BY MR. CROWELL:
21  Q.  This is a McKesson email from Thursday, May
22     8th, showing a receipt of a wire from Rite
23     Aid.  Do you see that?
24         MS. BENEDON:  I don't.  Can you --
25         THE WITNESS:  Yeah.  Thank you.

**MAGNA** ▶
LEGAL SERVICES

Page 130

1    MR. CROWELL: Blow it up. I don't
2  really either, to be honest. Now I do.
3    BY MR. CROWELL:
4  Q.  You can see if you look toward -- right above
5    the signature block you see the $40 million.
6    It's kind of hard to read, but --
7  A.  I see it.
8  Q.  You do?
9  A.  I do see it, yes.
10 Q.  Okay. Yeah. And that was a flat dollar
11   prepayment of 40 million, right?
12 A.  Correct.
13 Q.  And then do you understand, sir, that the
14   next day there was a flat dollar payment of
15   35 million?
16 A.  I believe that's correct.
17 Q.  Okay. And then I can show it to you, but the
18   following, on May 12th, there's another flat
19   dollar payment of 26 million. Do you recall
20   that?
21 A.  I believe that's right.
22 Q.  And then let's go back to your declaration,
23   Exhibit 5. And paragraph 11. You say,
24   "Between May 6 and May 7, 2025, McKesson
25   delivered just over 50 million worth of

Page 131

1    product." Do you see that?
2  A.  I do.
3  Q.  But you don't cite to any documents that show
4    that's the case, right? You're just making
5    that statement?
6  A.  I don't cite any documents in this
7    declaration, no.
8  Q.  Do you know if Rite Aid produced any
9    documents related to the exact dollar amounts
10   that were delivered on May 6th and May 7th?
11 A.  I'm not sure what we delivered to you.
12 Q.  Okay. And you're not sure the exact dollar
13   amounts of the deliveries that McKesson made
14   to Rite Aid on those days either, right?
15 A.  As I sit here today, I don't know the exact
16   dollar amount. I know that they were 50
17   million or so. I just don't recall the
18   specific dollar amount.
19 Q.  You would agree with me that there is nothing
20   in writing until May 8th that shows that the
21   parties reached an understanding regarding
22   prepayments, correct?
23    MS. BENEDON: Object to the form.
24   By "parties" --
25    THE WITNESS: Yeah, could you

Page 132

1    clarify the question you're asking?
2    BY MR. CROWELL:
3  Q.  Do you know if there's any -- I'll just
4    withdraw and restate it.
5    Do you know if there's anything in
6    writing -- strike that.
7    Do you know when the first day
8    there was a writing that shows that the
9    parties, meaning Rite Aid and McKesson,
10   agreed how the prepayments were going to
11   work?
12 A.  The -- again, I'm sorry to make you do this.
13   Could you ask me the question again?
14 Q.  Sure. Do you know when the first day there
15   was any writing that shows that the parties,
16   meaning Rite Aid and McKesson, agreed how the
17   prepayments post-petition were going to work?
18 A.  I don't recall the day or the writing
19   specifically.
20 Q.  Okay.
21    MR. CROWELL: Let's go to -- let's
22   go back to the Supply Agreement.
23    BY MR. CROWELL:
24 Q.  So 7.11. Section 7.11, we were talking about
25   this a little bit earlier. This is the

Page 133

1    delivery of Financial Information section.
2    MR. CROWELL: If you can flip up to
3    that, Greg.
4    BY MR. CROWELL:
5  Q.  We were talking about this earlier,
6    Mr. Liebman, and you had, I believe, correct
7    me if I'm wrong, made the point that there
8    was no audited financial statement as of this
9    time that needed to be delivered, right?
10    MS. BENEDON: Object to the form.
11    THE WITNESS: You know, could you
12   repeat your question?
13    BY MR. CROWELL:
14 Q.  Well, let me do it this way: You would agree
15   with me that Rite Aid at times failed to
16   provide the financial information it was
17   required to provide, right?
18    MS. BENEDON: Object to the form.
19    THE WITNESS: I'm not -- I'm not
20   aware of that.
21    BY MR. CROWELL:
22 Q.  Okay. Well, let's walk through it.
23    MR. CROWELL: Let's get tab 32 up,
24   Greg.
25    MR. JACOBS: This is Exhibit 23

Page 138

1   there -- the end of February is a different
2   type of month for Rite Aid.  It is our fiscal
3   year end, which is covered in a -- or in
4   terms of our reporting obligations associated
5   with a fiscal year end.  And that -- it's our
6   position that is what governed here.  And I
7   am aware of no -- no communication from
8   McKesson insinuating that we were defaulting.
9   Q.  Wait.  Let me break that down.  Are you
10  saying that your belief is that only 7.11(a)
11  governed, not 7.11(f)?
12  A.  7.11(a) talks about our reporting
13  requirements related to our fiscal year end.
14  The fiscal year end closes a much more
15  substantial close than a normal month end.
16  And we had time to -- we had 100 -- I think
17  it's 105 days to provide you the information
18  associated with that February fiscal year end
19  close.  So -- and I'm not aware of any
20  McKesson communication that alleged that we
21  were defaulting on (f).
22  Q.  Well, you're aware, because you've already
23  seen it, of a McKesson communication saying
24  that you weren't meeting your credit
25  requirements, right?

Page 139

1   A.  Like I said when I answered that question,
2   though, that statement was vague and I don't
3   know what Britt meant by it.  I didn't have
4   any conversations with Britt related to it.
5   And so you'd have to ask him what he meant by
6   that statement.  But I am not aware of any
7   allegations that we had defaulted under this
8   agreement from McKesson to Rite Aid, formally
9   anyhow.
10  Q.  You don't disagree, sir, that 7.11(f) is just
11  as applicable as 7.11(a), right?
12      MS. BENEDON:  Object to the form.
13      THE WITNESS:  Can I see the
14  provision?
15  BY MR. CROWELL:
16  Q.  Sure.  Go back to -- (inaudible due to cross
17  talking).  Go back to the top of 7.11.
18  A.  Yeah.
19  Q.  It says, "Financial Information.  So long as
20  this Agreement shall be in effect, Rite Aid
21  shall provide the following financial
22  statements, reports, notices or certificates
23  to McKesson," and then it lists (a) through
24  (l).  So it has to provide all of these,
25  right?

Page 140

1       MS. BENEDON:  Object to the form.
2       THE WITNESS:  Yes.
3   BY MR. CROWELL:
4   Q.  Okay.  And we just looked at (f).  (F) is one
5   of them, right?
6   A.  That is correct.
7   Q.  Okay.  And (f) says that "concurrently with
8   its delivery to its senior lenders pursuant
9   to its senior debt documents or any holders
10  of Material Indebtedness" Rite Aid has to
11  deliver "any and all borrowing base
12  certificates, availability calculations under
13  senior debt documents," et cetera to
14  McKesson, right?
15  A.  I see that, yes.
16  Q.  Okay.  Now let's look at tab 34.
17      MR. JACOBS:  This is Exhibit 25
18  [sic].
19  (Deposition Exhibit 27 was marked for identification.)
20      MR. CROWELL:  Blow that up, please.
21  BY MR. CROWELL:
22  Q.  So this is an email from Jennifer
23  Wagner-Parrish of Rite Aid to B of A.  That's
24  one of the lenders, right?
25  A.  Yes.

Page 141

1   Q.  And she says, "Rohit - I believe I've
2   included everything that's due but if I've
3   missed something, please let me know."
4   Again, this is dated February 27th, 2025,
5   right?
6   A.  That is the date.  That's right.
7   Q.  And we can go back and look, but this email
8   was sent over a week prior to the email that
9   was sent to Britt Vitalone with the financial
10  information we just looked at, right?  That
11  was dated March 2nd.  We can go back and look
12  if you'd like.
13  A.  No, I will acknowledge that.
14  Q.  Okay.  And then let's look at tab 35, which
15  is an attachment to this email.
16  (Deposition Exhibit 28 was marked for identification.)
17  BY MR. CROWELL:
18  Q.  And this includes a borrowing base
19  certificate dated February 22nd, 2025.  Do
20  you see that?
21  A.  I do.
22  Q.  So on February 27th Rite Aid provides to its
23  lenders a borrowing base certificate dated
24  February 22nd, 2025, right?
25  A.  Correct.

**MAGNA**
LEGAL SERVICES

Page 142

1   Q.  It did not provide this borrowing base
2       certificate to Mr. Vitalone, correct?
3   A.  I'm -- I don't believe so.  I'm not sure,
4       though.
5   Q.  Let's go back and look.  We'll look at what
6       was actually provided to Mr. Vitalone days
7       after this.
8           MR. CROWELL:  Let's go back, Greg,
9       to the prior email.
10  BY MR. CROWELL:
11  Q.  And you'll see that it's actually the month
12      prior borrowing base certificate.
13  A.  Uh-huh.
14  Q.  So you agree with me that this is a breach of
15      Section 7.11(f) of the agreement, correct?
16          MS. BENEDON:  Object to the form
17      and to the extent it calls for a legal
18      conclusion.
19          THE WITNESS:  It calls for a legal
20      conclusion.
21  BY MR. CROWELL:
22  Q.  Well, let's forget about the legal part.  You
23      agree with me that this information, which
24      was provided to your lenders -- when I say
25      "this information," not this Vitalone email

Page 143

1   but the email from -- go back to the other
2   exhibit -- this one, the February -- the 2-27
3   email from Jennifer Wagner to Rohit Mehta --
4           MR. CROWELL:  Which is exhibit
5   what, Greg?
6           MR. JACOBS:  25 [sic].
7           MR. CROWELL:  No, can't be.
8           MR. JACOBS:  Tab 34.  It's Exhibit
9   25 [sic].
10          MR. CROWELL:  25 [sic], my bad.
11  BY MR. CROWELL:
12  Q.  This attaches a February borrowing base
13      certificate, right?
14  A.  Yes.
15  Q.  And this borrowing base certificate was not
16      provided to Mr. Vitalone or to anybody at
17      McKesson even though it was provided to the
18      lenders and even though Section 7.11(f)
19      requires Rite Aid to concurrently, meaning at
20      the same time, provide this information to
21      McKesson, right?
22          MS. BENEDON:  Object to the form.
23      It misstates the documents.
24          THE WITNESS:  Can you repeat the
25      question?

Page 144

1           BY MR. CROWELL:
2   Q.  Sure.  The borrowing base certificate that's
3       attached to this email dated February --
4       which is a February 22nd -- let's look at
5       it -- February 22nd borrowing base
6       certificate was provided to B of A on
7       February 27th, right?  That's what this email
8       shows.
9   A.  That is correct.
10  Q.  And you agree with me that Section 7.11(f) of
11      the Supply Agreement requires that this
12      borrowing base certificate, this exact
13      information, be provided concurrently to
14      McKesson at the time it's provided to the
15      lenders, right?
16  A.  That is what the Credit Agreement says.
17  Q.  And that didn't happen here, right?
18  A.  I don't have a recollection of everything
19      that was transmitted to McKesson, but based
20      on what you are showing me, that is correct.
21          MR. CROWELL:  Can we take a
22      10-minute break?
23          THE VIDEOGRAPHER:  Okay.  This will
24      mark the end of media number three.  We're
25      going to go off the record.  It's 11:21.

Page 145

1           (A recess was taken.)
2           THE VIDEOGRAPHER:  This will mark
3   the beginning of media number four in our
4   deposition of Marc Liebman, 30(b)(6).  We're
5   going on the record at 11:31.
6           MR. CROWELL:  Mr. Liebman, I have
7   no further questions at this time.  I
8   appreciate your time and attending today.
9   Thank you.
10          THE WITNESS:  Thank you as well.
11  Thank you, everyone.
12          MS. BENEDON:  Nothing from us.
13          THE VIDEOGRAPHER:  Okay.  This will
14  mark the end of media number four and
15  concludes today's deposition.  We're going
16  off the record at 11:32.
17          (Video deposition concluded.)
18          THE VIDEOGRAPHER:  Ms. Benedon, do
19  you need a copy of the video today?
20          MS. BENEDON:  No, just the
21  expedited transcript, please.
22  (A brief discussion was held off the record.)
23          THE COURT REPORTER:  Counsel, do we
24  need a rough draft of today?
25          MR. CROWELL:  Yes.

MAGNA ▶
LEGAL SERVICES

Page 146

1        MS. BENEDON:  Yes.
2        (Deposition concluded at 1:34 p.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 147

1    STATE OF MINNESOTA )
2    COUNTY OF RAMSEY  )
3
4        Be it known that I took the
     deposition of 30(b)(6) witness Marc Liebman
     on August 5, 2025;
5
6        That I was then and there a
     notary public in and for the County of
7    Ramsey, State of Minnesota, and that by
     virtue thereof I was duly authorized to
     administer an oath;
8
9        That the witness before
     testifying was by me first duly sworn to
10   testify the whole truth and nothing but the
     truth relative to said cause;
11       That the testimony of said
12   witness was recorded in stenotype by myself
     and transcribed into typewriting under my
13   direction, and that the deposition is a true
     record of the testimony given by the witness
14   to the best of my ability;
15       That I am not related to any of
     the parties hereto nor interested in the
16   outcome of the action;
17       Witness my hand and seal this
18   6th day of August, 2025.
19
20       DEBRA BEAUVAIS
         COURT REPORTER
21
22
23
24
25

# EXHIBIT 2

**Exhibit 12 to Liebman Deposition,
Tab "McK"
(Document Produced Natively,
RAD-MCK_6027)**

Privileged & Confidential | Subject to FRE 408 & State Law Equivalents
DRAFT - Subject to Material Change

RITE AID CORPORATION, ET AL
MCKESSON AP ROLLER
(\$MM)
Dated: 4/28/25



**EXHIBIT**

**19**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

COLE SCHOTZ P.C.
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**GLOBAL NOTES AND
STATEMENTS OF LIMITATIONS, METHODOLOGY,
AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF
ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

**General**

New Rite Aid, LLC ("Rite Aid") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" and, collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") with the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the unaudited Schedules and Statements in accordance with section 521 of title 11 of the United States Code,

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Fill in this information to identify the case:**

Debtor name   Rite Aid Hdqtrs. Corp.

United States Bankruptcy Court for the:   District of New Jersey

Case number (If known)   25-14859

☐ Check if this is an
amended filing

Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:   Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

  ☐ No. Go to Part 2.
  ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|
| 2. **Cash on hand** | | | $ 0.00 |
| 3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)* | | | |
| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| 3.1 See Attached Rider | | | $ 36,963,843.41 |
| 3.2 | | | $ |
| 4. **Other cash equivalents** *(Identify all)* | | | |
| 4.1 None | | | $ 0.00 |
| 4.2 | | | $ |
| 5. **Total of Part 1** | | | |
| Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. | | | $ 36,963,843.41 |

### Part 2:   Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

  ☐ No. Go to Part 3.
  ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|
| 7. **Deposits, including security deposits and utility deposits** | |
| Description, including name of holder of deposit | |
| 7.1 See Attached Rider | $ 33,696,767.93 |
| 7.2 | $ |

Case 25-14861-MBK   Doc 1097-7   Filed 06/16/25   Entered 06/16/25 22:52:09   Desc Main
Declaration of John J. Raute   Page 32 of 133

Page 33 of 172

Debtor Name:  Rite Aid Hdqtrs. Corp.                                                                                    Case Number: 25-14859

**Assets - Real and Personal Property**

**Part 1, Question 3:** Checking, savings, money market, or financial brokerage accounts

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | Current value of debtor's interest |
|---|---|---|---|
| BANK OF AMERICA | COLLECTIONS ACCOUNT | x0024 | $1.38 |
| BANK OF AMERICA | COLLECTIONS ACCOUNT | x5317 | $1,300,811.49 |
| BANK OF AMERICA | COLLECTIONS ACCOUNT | x9162 | $2,000,539.56 |
| BANK OF AMERICA | CONCENTRATION ACCOUNT | x2257 | $2,731,661.63 |
| BANK OF AMERICA | DISBURSEMENT ACCOUNT | x1567 | $21,306,288.32 |
| BANK OF AMERICA | STORE DEPOSITORY ACCOUNT | x2824 | $14,743.16 |
| BANK OF AMERICA | STORE DEPOSITORY ACCOUNT | x8984 | $100,347.99 |
| BANK OF AMERICA | STORE DEPOSITORY ACCOUNT | x9049 | $8,743.02 |
| BANNER BANK | STORE DEPOSITORY ACCOUNT | x1074 | $4,230.00 |
| BB&T/TRUIST | STORE DEPOSITORY ACCOUNT | x0600 | $143,085.45 |
| BB&T/TRUIST | STORE DEPOSITORY ACCOUNT | x3912 | $205,351.04 |
| BNY MELLON | DISBURSEMENT ACCOUNT | x3138 | $103,484.89 |
| BNY MELLON | RESTRICTED ACCOUNT | x3636 | $1,180,240.24 |
| CHASE BANK, N.A. | STORE DEPOSITORY ACCOUNT | x2994 | $36,384.32 |
| CITIZENS BANK NH | STORE DEPOSITORY ACCOUNT | x1092 | $253,029.35 |
| CITIZENS BANK NH | STORE DEPOSITORY ACCOUNT | x3314 | $372,866.01 |
| COMERICA | STORE DEPOSITORY ACCOUNT | x6277 | $1,000.00 |
| FIFTH THIRD BANK | DISBURSEMENT ACCOUNT | x2829 | $156,902.33 |
| FIFTH THIRD BANK | STORE DEPOSITORY ACCOUNT | x6253 | $483,969.06 |

Debtor Name: Rite Aid Hdqtrs. Corp.                                                                Case Number: 25-14859

**Assets - Real and Personal Property**

**Part 2, Question 8:** Prepayments, including payments on executory contracts, leases, insurance, taxes, and rent

| Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent *(Description, including name of holder of prepayment)* | Current value of debtor's interest |
|---|---|
| PREPAID BENEFITS - VARIOUS | $15,448.46 |
| PREPAID CLOUD IMPLEMENTATION - WORKDAY INC | $4,444,681.06 |
| PREPAID COMPUTER MAINTENANCE - 1010DATA SERVICES LLC | $882,845.70 |
| PREPAID COMPUTER MAINTENANCE - AVALON INTEGRATION INC | $664,054.14 |
| PREPAID COMPUTER MAINTENANCE - BLUEFLETCH LLC | $141,878.62 |
| PREPAID COMPUTER MAINTENANCE - BMC SOFTWARE, INC. | $613,846.00 |
| PREPAID COMPUTER MAINTENANCE - CALIBRATION GROUP LLC | $762,974.56 |
| PREPAID COMPUTER MAINTENANCE - COUPA SOFTWARE INC | $374,917.76 |
| PREPAID COMPUTER MAINTENANCE - ESCAPE VELOCITY HOLDINGS INC | $305,671.96 |
| PREPAID COMPUTER MAINTENANCE - INTERNET CONTENT MANAGEMENT | $132,143.89 |
| PREPAID COMPUTER MAINTENANCE - LSPEDIA INC | $1,688,315.63 |
| PREPAID COMPUTER MAINTENANCE - MANHATTAN ASSOCS | $1,464,725.12 |
| PREPAID COMPUTER MAINTENANCE - MICROSOFT CORPORATION | $502,429.16 |
| PREPAID COMPUTER MAINTENANCE - NCR CORPORATION | $570,478.73 |
| PREPAID COMPUTER MAINTENANCE - NOBLETEC LLC | $505,083.16 |
| PREPAID COMPUTER MAINTENANCE - ORACLE AMERICA INC | $1,778,358.04 |
| PREPAID COMPUTER MAINTENANCE - SCRIPTPRO USA INC | $1,467.69 |
| PREPAID COMPUTER MAINTENANCE - SERVICECHANNEL COM INC | $1,538,228.49 |
| PREPAID COMPUTER MAINTENANCE - TCI ACQUISITION CORP | $811,178.68 |
| PREPAID COMPUTER MAINTENANCE - VENTIV TECHNOLOGY INC | $699.60 |
| PREPAID COMPUTER MAINTENANCE - VERIFONE INC | $1,807,004.94 |
| PREPAID COMPUTER MAINTENANCE - WINMAGIC CORP | $1,711,251.00 |
| PREPAID COMPUTER MAINTENANCE - ZAMO TECHNOLOGIES LLC | $655,066.61 |

Debtor Name:  Rite Aid Hdqtrs. Corp.                                                                                                        Case Number:  25-14859

**Assets - Real and Personal Property**

**Part 2, Question 8:** Prepayments, including payments on executory contracts, leases, insurance, taxes, and rent

| Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent *(Description, including name of holder of prepayment)* | Current value of debtor's interest |
|---|---|
| PREPAID INSURANCE - AON | $16,935,764.95 |
| PREPAID INSURANCE - BMS GROUP | $63,000.19 |
| PREPAID INSURANCE - CRIME INSURANCE | $57,750.00 |
| PREPAID INSURANCE - ENGLE-HAMBRIGHT & DA | $1,656.44 |
| PREPAID INSURANCE - FIDUCIARY INSURANCE | $88,136.65 |
| PREPAID INSURANCE - MARSH | $2,086,123.44 |
| PREPAID INSURANCE - MCGRIFF INSURANCE | $1,281,666.21 |
| PREPAID INSURANCE - UNITED INSURANCE | $5,488.00 |
| PREPAID INSURANCE - UNITED INSURANCE COMPANY, USA, LTD. | $3,787,972.00 |
| PREPAID INVENTORY - VARIOUS | $56,563,587.95 |
| PREPAID OTHER ITEMS - BRIGHTEDGE TECHNOLOGIES INC | $52,509.20 |
| PREPAID OTHER ITEMS - GUIDEPOINT SECURITY LLC | $20,375.26 |
| PREPAID OTHER ITEMS - HARTFORD LIFE&ACCIDENT INS CO | $49,658.70 |
| PREPAID OTHER ITEMS - INFO US INC | $130,662.42 |
| PREPAID OTHER ITEMS - INTRALINKS | $35,885.42 |
| PREPAID OTHER ITEMS - ONEHEALTHPORT INC | $14,962.20 |
| PREPAID OTHER ITEMS - SHORELAND, INC | $148,917.39 |
| PREPAID OTHER ITEMS - STAPLES | $267,300.78 |
| PREPAID OTHER ITEMS - THERAPEUTIC RESEARCH CENTER | $121,946.92 |
| PREPAID OTHER ITEMS - VERITAS DOCUMENT SOLUTIONS LLC | $285,121.80 |
| PREPAID OTHER ITEMS - WELLS FARGO BANK, N.A. | $53,000.00 |
| PREPAID PROPERTY TAXES - VARIOUS | $34,941.00 |
| PREPAID TPA FEES - CONSTITUTION STATE SERVICE CO | $64,325.96 |

Debtor Name: Rite Aid Hdqtrs. Corp.                                                            Case Number: 25-14859

**Assets - Real and Personal Property**

**Part 2, Question 8:** Prepayments, including payments on executory contracts, leases, insurance, taxes, and rent

| Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent  *(Description, including name of holder of prepayment)* | Current value of debtor's interest |
|---|---|
| PREPAID TPA FEES - MARSH USA INC | $71,826.92 |
| PREPAID WAGES - VARIOUS | $347,767.29 |
| **TOTAL** | **$103,943,096.09** |

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

> **EXHIBIT**
>
> **20**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

# GLOBAL NOTES AND
# STATEMENTS OF LIMITATIONS, METHODOLOGY,
# AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF
# ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

## General

New Rite Aid, LLC ("Rite Aid") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" and, collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") with the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the unaudited Schedules and Statements in accordance with section 521 of title 11 of the United States Code,

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Case 25-14861-NMC   Doc 1907-1   Filed 06/16/25   Entered 06/16/25 20:59:41   Desc
Statement of Financial Affairs for John T. Standley   Page 2 of 62

Case 25-14861-NMC   Doc 1907-1   Filed 06/16/25   Entered 06/16/25 20:59:41   Desc
Statement of Financial Affairs for John T. Standley   Page 38 of 172   Page 2 of 62

11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These global notes and statements of limitations, methodology and disclaimers regarding the Debtors' Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to, and referenced in connection with, any review of the Schedules and Statements.[2]

The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. Accordingly, the Debtors and their directors, managers, officers, agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements. In no event shall the Debtors or their directors, managers, officers, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Steve Bixler, Chief Financial Officer of New Rite Aid, LLC. In reviewing and signing the Schedules and Statements, Mr. Bixler has relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals. Given the scale of the Debtors' businesses, Mr. Bixler has not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

---

[2]    These Global Notes supplement, and are in addition to, any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors prepared a Global Note with respect to any individual Debtor's Schedules or Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the other Debtors' Schedules and Statements, as appropriate.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate; *provided*, that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law.

## Global Notes and Overview of Methodology

1. **Description of the Cases**. The Debtors commenced these voluntary cases under chapter 11 of the Bankruptcy Code on May 5, 2025 (the "Petition Date"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 7, 2025, the Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 122]. On May 16, 2025, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "Committee") [Docket No. 316, as amended and reconstituted, Docket No. 440]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedule and Statement. The asset information provided herein, except as otherwise noted, represents the asset data of the Debtors as of April 26, 2025, the date of the Debtors' month end closure to their balance sheet, and the liability data of the Debtors is as of the close of business on the Petition Date.

2. **Global Notes Control**. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments. In the event that the Schedules or Statements differ from any of the Global Notes, the Global Notes shall control.

3. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate but do not undertake any obligation to do so, except as required by applicable law. Nothing contained in the Schedules, Statements, or Global Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

   a. **No Admission.** Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any

claim against any Debtors, any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

b.     **Claims Description**.  Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated."   The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on its Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." The listing of a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules and Statements accordingly.

c.     **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

d.     **Classifications**.  The listing of a claim (i) on Schedule D as "secured," (ii) on Schedule E/F as either "priority," or "unsecured priority," or (iii) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken.  Except as provided in an order of the Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

e.     **Estimates and Assumptions**.  To prepare these Schedules and Statements and report information on a legal entity basis, the Debtors were required to make certain reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses as of the Petition Date.  Actual results could differ from such estimates.  The Debtors reserve all

rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

f.  **Causes of Action**.  Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all rights with respect to any claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, lien, indemnity, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, in tort, at aw, in equity, or otherwise.  Causes of action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest claims or interests; (d) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (e) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws, and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of action, or avoidance actions, or in any way prejudice or impair the assertion of such claims or causes of action.

g.  **Intellectual Property Rights**.  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

h.    **Insiders**.  The Debtors have attempted to include all payments made on or within twelve months before the Petition Date to any individual (and their relatives) or entity who, in the Debtors' good faith belief, may be deemed an "insider."  As to each Debtor, an individual or entity is designated as an "insider" for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor so as to dictate corporate policy and the disposition of corporate assets.  The Debtors have also considered the requirements of GAAP and Securities and Exchange Commission (the "SEC") reporting standards and their public disclosures with respect to designating certain individuals and entities as "insider" herein.

The listing or omission of a party as an "insider" for the purposes of the Schedules and Statements is for informational purposes and is not intended to be nor should be construed as an admission that those parties are insiders for purposes of section 101(31) of the Bankruptcy Code.  Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose.  Furthermore, certain of the individuals or entities identified we insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution.  The Debtors reserve all rights with respect thereto.

## 4.  Methodology

a.    **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include financial information for the Debtors and certain non-Debtor affiliates.  Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP.  Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors.  Unlike the consolidated financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the proper Debtor entity.  However, due to limitations within Debtors' accounting systems, it is

possible that not all assets, liabilities or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the collection, ownership, and valuation of certain assets and the amount and nature of certain liabilities, a Debtor may report more assets than liabilities. Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time prior to or after the Petition Date. Likewise, a Debtor reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent on the Petition Date or at any time prior to or after the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

b.    **Reporting Date**. Unless otherwise noted, the Schedule of Assets reflect the Debtors' books and records as of April 26, 2025. The Schedule of Liabilities and Statements generally reflect the Debtors' books and records as of the Petition Date, adjusted for authorized payments under the First Day Orders (as defined herein).

c.    **Confidentiality or Sensitive Information**. There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, home addresses and other information), or concerns for the privacy of the Debtors' creditors and clients, including compliance with HIPAA requirements. The alterations will be limited to only what is necessary to protect the Debtor or the applicable third party. The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.[3]

d.    **Consolidated Entity Accounts Payable and Disbursement Systems**. Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Statement 4, Schedule A/B, and Schedule E/F, respectively, per the Debtors' unaudited books and records. As described more fully in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Continue to Operate Their Cash*

---

[3]    Such as the *Interim Order (I) Authorizing the Debtors to (A) File a Consolidated List of the Debtors' 50 Largest Unsecured Creditors, (B) File a Consolidated List of Creditors In Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (C) Redact Certain Personally Identifiable Information of Natural Persons, and (II) Granting Related Relief* [Docket No.129].

Management System, (b) Honor Certain Prepetition Obligations Related Thereto, (c) Maintain Existing Business Forms, and (d) Perform Intercompany Transactions and (II) Granting Related Relief [Docket No. 23] (the "Cash Management Motion"), the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations (the "Cash Management System"). The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts. The Cash Management System is supported by 98 bank accounts, 94 of which are owned and controlled by the Debtors and 4 of which are owned by non-Debtor affiliates.

The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes.

Prior to the Petition Date, the Debtors and certain non-Debtor affiliates engaged in intercompany transactions (the "Intercompany Transactions") in the ordinary course of business, which resulted in intercompany receivables and payables (the "Intercompany Claims"). The Debtors maintain strict records of the Intercompany Claims and can ascertain, trace, and account for all Intercompany Transactions. Pursuant to the *Interim Order (I) Authorizing the Debtors to (a) Continue to Operate Their Cash Management System, (b) Honor Certain Prepetition Obligations Related Thereto, (c) Maintain Existing Business Forms, and (d) Perform Intercompany Transactions and (II) Granting Related Relief* [Docket No. 127] (the "Cash Management Order"), the Court has granted the Debtors authority to continue to engage in Intercompany Transactions in the ordinary course of business subject to certain limitations set forth therein. Thus, intercompany balances as of the Petition Date, as set forth in Schedule A/B and Schedule E/F may not accurately reflect current positions.

In addition, certain of the Debtors act on behalf of other Debtors. Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment. The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

e.   **Duplication**.  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

f.   **Net Book Value of Assets**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets.  As such, unless otherwise indicated, net book values as of the Petition Date are presented for all assets.  When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined."  Amounts ultimately realized may vary materially from net book value (or other value so ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.  Assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date or any time prior to the Petition Date.

g.   **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

h.   **Payment of Prepetition Claims Pursuant to First Day Orders**.  Following the Petition Date, the Court entered various orders authorizing the Debtors to, among other things, pay certain prepetition:  (i) service fees and charges assessed by the Debtors' banks; (ii) insurance obligations; (iii) employee wages, salaries, and related items (including, but not limited to, employee benefit programs and supplemental workforce obligations); (iv) taxes and assessments; (v) customer program obligations; and (vi) critical vendor obligations (collectively, the "First Day Orders").  As such, outstanding liabilities may have been reduced by any Court-approved postpetition payments made on prepetition payables.  Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated.  The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to an order of the Court (including the First Day Orders).

i.   **Other Paid Claims**.  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements

Case 25-14861-MBK    Doc 1902-11    Filed 06/16/25    Entered 06/16/25 20:59:31    Desc
Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    Page 10 of 62
Detail for Non-Individuals Filing for Bankruptcy    Page 46 of 172

pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

j.      **Setoffs**.  The Debtors routinely incur setoffs in the ordinary course of business that arise from various items including, but not limited to, returns of and damages to customer products, and other matters.  In accordance with Debtors' agreements with their vendors and other contract counterparties, these amounts are set off on a reoccurring basis against future revenues in a normal course reconciliation process with these partners.  Certain of these ordinary course setoffs are not independently accounted for, and, as such, may be excluded from the Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.  The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

k.      **Accounts Receivable**.   The accounts receivable information listed on the Schedules includes receivables from the Debtors' customers and are calculated net of any amounts that, as of the Petition Date, may be owed to such customers in the form of offsets or other price adjustments pursuant to the Debtors' customer program policies and day-to-day operating policies and any applicable Court order.

l.      **Inventory**.   The Debtors' inventory is presented net of LIFO reserves.

m.      **Property and Equipment**.   Unless otherwise indicated, owned property and equipment are stated at net book value.  Certain intangibles are listed in the asset schedules for Debtor Rite Aid Corporation.   Such treatment may not reflect actual legal ownership.

The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.   Any such leases are set forth in the Schedules and Statements.  Nothing in the Statements or Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including, but not limited to, the recharacterization thereof.

n.      **Liens**.  The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment, and the Debtors reserve all of their rights with respect to such liens (if any).  UCC liens as of the Petition Date, if any, are listed on Schedule D.

o.    **Excluded Assets and Liabilities**.  Certain liabilities resulting from accruals, liabilities recognized in accordance with GAAP, and/or estimates of long-term liabilities either are not payable at this time or have not yet been reported. Therefore, they do not represent specific claims as of the Petition Date and are not otherwise set forth in the Schedules.  Additionally, certain deferred assets, charges, accounts or reserves recorded for GAAP reporting purposes only, and certain assets with a net book value of zero are not included in the Schedules. Excluded categories of assets and liabilities include, but are not limited to, deferred tax assets and liabilities, deferred income, deferred charges, self-insurance reserves, favorable lease rights, and unfavorable lease liabilities.  In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court.  Other immaterial assets and liabilities may have been excluded.

p.    **Undetermined Amounts**.  The description of an amount as "unknown," "undetermined" is not intended to reflect upon the materiality of such amount.

q.    **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined."  If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

r.    **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, rebates, trade debits, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and postpetition payments, if applicable.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same.

s.    **Guarantees and Other Secondary Liability Claims**.  The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "Guarantees") in their secured financings, debt instruments, and other agreements.  However, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing.  Where such Guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors.  The Debtors have reflected the obligations under the Guarantees for both the primary obligor and

11

the guarantors with respect to their secured financings and debt instruments on Schedule H. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements inadvertently may have been omitted. The Debtors may identify additional Guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional Guarantees are identified.

t.      **Leases**. In the ordinary course of their business, the Debtors may lease property from certain third-party lessors for use in the daily operation of their business. Any such leases are set forth in Schedule G and any amount due under such leases that was outstanding as of the Petition Date is listed on Schedule E/F. The property subject to any of such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors nor is such property reflected in the Debtors' Statements as property or assets of third parties within the control of the Debtors.

u.      **Executory Contracts**. Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

v.      **Allocation of Liabilities**. The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

w.      **Unliquidated Claim Amounts**. Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

x.      **Umbrella or Master Agreements**. Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor entity that signed the original umbrella or master agreement. Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate. The master service agreements or other ancillary documents have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

### Specific Schedule Disclosures

Schedules A/B, D, E/F, G, and H may contain explanatory or qualifying notes that pertain to the information provided in the Schedules. Those Schedule-specific notes are incorporated herein by reference. Unless otherwise noted, the asset totals listed on the Schedules are derived from amounts included in the Debtors' books and records as of the Petition Date. To the extent there are unknown or undetermined amounts, the actual total may be different from the total listed.

1.  **Schedule A/B**

    a.  **Part 1**. Rite Aid's Cash Management System is composed of 98 bank accounts, (each, a "Bank Account" and, collectively, the "Bank Accounts"). Of those Bank Accounts, 94 are owned and controlled by the Debtors (the "Debtor Bank Accounts"), 4 are owned and controlled by non-Debtor affiliates ("Non-Debtor Bank Accounts"). The Debtor Bank Accounts include: (a) 24 accounts maintained at Bank of America Corporation ("Bank of America"), and (b) 15 accounts maintained at U.S. Bancorp ("U.S. Bank"). Further details with respect to the Cash Management System are provided in the Cash Management Motion. Any bank accounts with a $0 dollar balance have been excluded from the Schedules.

    b.  **Part 2**. The Debtors maintain certain deposits in the ordinary course of their business operations. These deposits are included in the Schedules for the appropriate legal entity. Types of deposits include, among other things, security deposits, and utility deposits. Certain prepaid or amortized assets are not listed in Part 2 in accordance with the Debtors' accounting policies. The amounts listed in Part 2 do not necessarily reflect values that the Debtors will be able to collect or realize.

    c.  **Part 3**. The Debtors' accounts receivable information includes receivables from the Debtors' customers, vendors, or third parties, which are calculated net of any amounts that, as of the Petition Date, may be owed to such parties in the form of offsets or other price adjustments pursuant to the Debtors' customer programs and day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances. The accounts receivable balances in this section exclude intercompany receivables.

    d.  **Part 4**. Part 4 identifies only subsidiaries owned directly by the Debtor entity. Subsidiaries owned indirectly by the Debtor entity are not listed. Ownership interests in subsidiaries, partnerships, and joint interests have been listed in Schedule A/B, Question 15 as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

    e.  **Part 7**. Actual realizable values may vary significantly relative to net book values as of the Petition Date.

13

f.  **Part 8**. Property leased by the Debtors is listed in Schedule G and is not listed in Part 8 of Schedule A/B, with the exception of any lease or security deposits for such property, which is listed on Schedule A/B. Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date.

g.  **Part 9**. Property leased by the Debtors is listed in Schedule G and is not listed in Part 9 of Schedule A/B, with the exception of any lease or security deposits for such property, which is listed on Schedule A/B. Furthermore, property values are scheduled in accordance with the Debtor's books and records which may not comport with the legal owner of record. Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date. The Debtors reserve all rights to re-characterize their interests in real property at a later date. Due to the large volume of leasehold improvements across various locations, it is not practicable nor feasible for the Debtors to list each individually.

h.  **Part 10**. Part 10 identifies the various trademarks, patents, environmental permits and website domains owned and maintained by the Debtors. The Schedules may not list the value of such intangible assets as no recent appraisals have been performed. Various software licenses the Debtors use for its operations which are easily obtainable and hold minimal value are not included.

i.  **Part 11**. The Debtors maintain approximately 182 insurance policies administered by multiple third-party insurance carriers. The insurance policies provide coverage for, among other things, the Debtors' property, general liability, automobile liability, transportation liability, cyber liability, umbrella coverage, casualty liability, fiduciary liability, pollution liability, and directors' and officers' liability (including tail coverage). The Debtors more fully describe such policies in the *Interim Order (I) Authorizing the Debtors to (a) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (b) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief* [Docket No. 133], entered on May 7, 2025 (the "Insurance Order"). Any policies owned by suppliers to which Debtor entities may have been added as a beneficiary are not included.

In addition, the Debtors attempted to list known causes of action and other claims. Potential preference actions and/or fraudulent transfer actions were not listed because the Debtors have not completed an analysis of such potential claims. The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause of action, claim, or right does not exist, and should not be construed as a waiver of such cause of action, claim, or right.

2.  **Schedule D**

a.  The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates.  To the best of the Debtors' knowledge, all claims listed on Schedule D arose, or were incurred, before the Petition Date.

b.  Except as otherwise agreed or stated pursuant to a stipulation, agreed order, or general order entered by the Court that is or becomes final, the Debtors and/or their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows:  (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken, and (b) the descriptions provided on Schedule D and herein are intended to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  Detailed descriptions of the Debtors' prepetition debt structure, guarantees, and descriptions of collateral relating to each debt, if any, contained on Schedule D are contained in the *Declaration of Marc Liebman, Chief Transformation Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 24] (the "First Day Declaration").

c.  The *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 143] (the "Interim DIP Order")[4] and the other DIP Documents provide for the repayment and refinancing of the Prepetition Revolving Loans with DIP Revolving Loans via a "creeping" roll-up. As of the date hereof, approximately $1.074 billion of the Prepetition Revolving Loans have been repaid and refinanced with DIP Revolving Loans, and the aggregate outstanding principal balance of the DIP Revolving Facility is approximately $837 million.   Upon entry of a final order approving the DIP Facilities, the Debtors seek to repay and refinance any remaining outstanding Prepetition Revolving Loans with loans under the DIP Revolving Facility and all Prepetition FILO Loans with loans under the DIP FILO Facility.  The Debtors' other prepetition secured funded debt remains intact.  Except as specifically stated herein, real property lessors, equipment lessors, utility

---

4   Capitalized terms used in this section 2 but not defined herein have the meaning ascribed to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 41], the Interim DIP Order, and/or the First Day Declaration, as applicable.

companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D.

d.      Rite Aid Corporation is the borrower under the Prepetition ABL Credit Agreement with the Prepetition ABL Lenders and Bank of America, N.A. as administrative agent, collateral agent and co-borrowing base agent. The Prepetition ABL Credit Agreement provides for the asset-based Prepetition ABL Facilities consisting of (1) a $1.9 billion asset-based Prepetition Revolving Commitments and (2) a $240 million Prepetition FILO Facility, which is contractually subordinated to the Prepetition Revolving Loans in right of payment. Under the Prepetition ABL Documents, the Prepetition ABL Loans are guaranteed by a substantial majority of Rite Aid Corporation's Debtor subsidiaries and secured by liens on substantially all of the Debtors' property (subject to certain exclusions). The DIP Facilities consist of (1) a senior secured superpriority DIP Revolving Facility in the aggregate principal amount equal to $1,700,000,000, and (2) upon entry of the Final Order approving the DIP Facilities, a senior secured superpriority DIP FILO Facility in the aggregate principal amount of $240,000,000. The Debtors' Obligations under DIP Facilities are secured by first-priority liens on Prepetition ABL Collateral, subject to the Carve Out and certain permitted prior liens, as set forth in the Interim Order and DIP Documents. The DIP Agent and DIP Lenders were also granted superpriority administrative expense claims against each of the Debtors' estates with respect to the DIP Obligations over any and all administrative expenses of any kind or nature subject and subordinate only to the payment of the Carve Out as set forth in the Interim DIP Order and the DIP Documents.

e.      The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights. The Debtors have not investigated which of the claims may include such rights, and their population is currently unknown.

## 3.  **Schedule E/F**

a.      **Part 1**. The claims listed on Part 1 arose and were incurred on various dates. A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, no such dates are included for each claim listed on Part 1. To the best of the Debtors' knowledge, all claims listed on Part 1 arose or were incurred before the Petition Date.

The Debtors have not listed any wage or wage-related obligations that the Debtors have paid pursuant to the First Day Orders on Part 1. The Debtors believe that all such claims for wages, salaries, expenses, benefits and other compensation as described in the First Day Orders have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders. The Debtors reserve

their right to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

The Debtors also have not listed any tax-related obligations that the Debtors have paid pursuant to the First Day Orders on Part 1. The Debtors believe that all such claims for taxes as described in the First Day Orders have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders. The Debtors reserve their right to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

b. **Part 2**. The Debtors have exercised their reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule. As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed in these cases for a complete understanding of the unsecured claims against the Debtors. Certain creditors listed on Part 2 may owe amounts to the Debtors, and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Part 2 may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor. Certain creditors may assert mechanics' or other similar liens against the Debtors for amounts listed on Part 2. The Debtors reserve their right to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Part 2 of any Debtor. In addition, certain claims listed on Part 2 may potentially be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

The Debtors have made reasonable efforts to include all unsecured creditors on Part 2 including, but not limited to, software companies, landlords, utility companies, consultants, and other service providers. The Debtors, however, believe the possibility exists that there are instances where creditors have yet to provide proper invoices for prepetition goods or services. While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Part 2.

Unless otherwise noted, the claims listed on Part 2 are based on the Debtors' books and records as of the Petition Date. The Debtors have excluded workers' compensation claims from the Statements because the Debtors are fully insured for and continue to honor their workers' compensation obligations in the ordinary course in accordance with the *Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Associate Wages, Salaries, Other Compensation, and Reimbursable Associate Expenses and (B) Continue Associate Benefits Programs, and (II) Granting Related Relief* [Docket No. 138] (the "Wages Order").

Part 2 does not include certain balances including deferred liabilities, accruals, or reserves. Such amounts are, however, reflected on the Debtors' books and

records as required in accordance with GAAP. Such accruals primarily represent estimates of liabilities and do not represent specific claims as of the Petition Date.

Part 2 does not include reserves for liabilities that may have arisen under litigation in which a Debtor is a defendant unless there is a final judgment or a settlement agreement.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits and/or allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Court has authorized the Debtors to pay, in their discretion, certain non-priority unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments made under some or all of the First Day Orders. Each Debtor's Schedule E/F will reflect some of that Debtor's payment of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these chapter 11 cases pursuant to the First Day Orders and other orders of the Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

## 4. **Schedule G**

a.  Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "Agreements") as of the filing of the Statements and Schedules, the Debtors' collection and review process of the Agreements is ongoing and inadvertent errors, omissions, or over or under-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, master service agreements and confidentiality agreements which may not be set forth in Schedule G. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers,

estoppel certificates, letters and other documents, instruments, and agreements which may not be listed on Schedule G.

**5. Schedule H**

    a.    The Debtors are party to various debt agreements which were executed by multiple Debtors. The guaranty obligations under prepetition secured credit agreements are noted on Schedule H for each individual Debtor. In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. To the extent such claims are listed elsewhere in the Schedules of each applicable Debtor, they have not been set forth individually on Schedule H. In the event that two or more Debtors are co-obligors with respect to a scheduled debt or guaranty, such debt or guaranty is listed in the Schedules and Statements of each such Debtor at the full amount of such potential claim. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. To the extent these Global Notes include notes specific to Schedules D-G, such Global Notes also apply to the co-Debtors listed in Schedule H. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

**Specific Notes with Respect to the Debtors' Statements of Financial Affairs**

**1. Statement 1**. The income stated in the Debtors' response to Statement 1 is consistent with the revenue disclosed in compliance with GAAP:

    a.    **FY 2024**: Comprised of revenues for the fiscal year ended March 2, 2024.

    b.    **FY 2025**: Comprised of revenues for the fiscal year ended March_1_, 2025.

    c.    **Stub Period FY 2026**: Comprised of revenues for the 2 months ending April26, 2025.

**2. Statement 3**. As described in the Cash Management Motion, the Debtors utilize their integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations.

    a.    The payments disclosed in Statement 3 are based on payments made by the Debtors with payment dates from February 4, 2025 to May 5, 2025. Amounts still owed to creditors will appear on the Schedules for each Debtor, as applicable.

    b.    The response to Statement 3 excludes regular salary payments and disbursements or transfers for this period, which are listed, to the extent required, on Statement 4.

     c.      The response to Statement 3 excludes payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy for this period, which are listed on Statement 11.

3.    **Statement 7**.  Information provided on Statement 7 includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum.  While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statement 7.  The Debtors reserve all of their rights to amend or supplement their response to Statement 7.

4.    **Statement 9**.  For the avoidance of doubt, question 9 excludes de minimis charitable contributions.

5.    **Statement 11**.  All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on the applicable Debtor's response to Statement 11.  Due to the nature of certain of the Debtors' professionals' work, distinguishing payments related to the Debtors' bankruptcy proceedings from payments for services unrelated to the Debtors' bankruptcy proceedings can be difficult.  The Debtors have therefore included some payments related to their 2023 bankruptcy cases and other non-bankruptcy-related services on Statement 11 out of an abundance of caution.  Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders.

In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their postpetition lenders or other parties.

6.    **Statement 16**.  The Debtors collect a limited amount of information about customers and their representatives.  Examples of the types of information collected by the Debtors include, among other things, name, mailing address, telephone number, biometric information for customer representatives, and banking information.

7.    **Statement 20**.  The locations listed for off-premises storage do not include shippers that are holding goods in transit, including but not limited to goods on ships, in trucks, or in warehouses where they may temporarily be stored during the transport process.

8.    **Statement 21**.  All of the Debtors' retail locations engage in scan-based trading.  Because of the voluminous nature of this property, it has been excluded in Statement 21.

9.    **Statements 22-24**.  The Debtors have operated over a substantial period of time and have periodically: (i) been party to judicial and administrative proceedings under environmental laws; (ii) received notification from governmental units of potential liability under, or violations of, environmental laws; and (iii) notified governmental units of releases of hazardous materials.  The Debtors may no longer have active operations in a particular jurisdiction and may no longer have relevant records, or the records may no longer be

complete or reasonably accessible and reviewable. In some cases, statutory document retention periods may have passed. Further, some individuals who once possessed responsive information are no longer employed by the Debtors. For these reasons, it may not be reasonably possible for Debtors to identify and supply all of the requested information that is responsive to Statements 22-24. Nonetheless, the Debtors have made reasonable efforts to identify the requested information for: (i) pending or unresolved material judicial and administrative proceedings initiated within ten years prior to the filing date; (ii) pending or unresolved notices of potential material liability or material violations received from governmental units within ten years prior to the filing date; and (iii) pending or unresolved notifications by the Debtors to a governmental unit of material releases of hazardous material submitted within ten years prior to the filing date. The Debtors acknowledge the possibility that information related to material proceedings, notices of material violations or potential material liability from governmental units and notifications to governmental units of material releases of hazardous materials responsive to Statements 22-24 may be discovered subsequent to the filing of the Schedules and Statements. The Debtors reserve the right to supplement or amend this response in the future if additional information becomes available.

This response covers proceedings, notices and notifications of releases of hazardous materials related to the primary applicable environmental laws, as well as occupational safety and health laws to the extent related to pollution or releases of hazardous materials. This response is also limited to identifying circumstances in which governmental agencies have alleged in writing that particular operations of the Debtors are in violation of environmental laws and proceedings that have resulted from alleged violations of environmental laws. This response does not cover: (i) periodic information requests, investigations or inspections from governmental units concerning compliance with environmental laws; (ii) routine reports and submissions concerning permitted discharges resulting from routine operations where such reports and submissions were made in compliance with regulatory requirements; (iii) proceedings related to toxic-tort or product liability matters; or (iv) proceedings, notices or notifications of releases of hazardous materials related to non-environmental laws, such as transportation laws. This response assumes that any responsive information provided in response to Statements 22, 23 and 24 is also deemed to have been provided in response to the other Statements 22, 23 and 24, as appropriate. In addition, Statement 7, may identify information that is also responsive to Statement 22.

10. **Statement 25**. The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were a partner or owner within the six years immediately preceding the Petition Date.

11. **Statement 26**. Prior to becoming a private company in September 2024, the Debtors had historically provided financial statements to various interested parties over the previous two years, including, but not limited to, insurance carriers, lenders and financial institutions, landlords, material vendors, advisors and others. The Debtors do not maintain records of the parties who have requested or obtained copies. The Debtors abided by the requirements of the Securities Exchange Act of 1934, as amended, at the end of each of its fiscal quarters and years and upon the occurrence of events requiring disclosure on form 8-K. Because the

SEC filings were of public record, the Debtors did not maintain records of the parties who requested or obtained copies of any of the SEC filings from the SEC, the Debtors, or other sources.

12. **Statement 27**.   The Debtors conduct inventories at their locations at least once per fiscal year.   Due to the voluminous nature of this data, it is not included in Statement 27.   Further information regarding the Debtors' inventories is available upon request.

13. **Statement 30**.   Refer to the Methodology section regarding all payments to insiders.

| Fill in this information to identify the case: |
|---|

Debtor name  Rite Aid Corporation

United States Bankruptcy Court for the:   District of New Jersey

Case number (if known)  25-14731

☐ Check if this is an amended filing

## Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                    04/25

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1:    Income

**1.  Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|---|
| From the beginning of the fiscal year to filing date: | From 03/02/2025<br>MM/DD/YYYY | to 04/26/2025 | ☑ Operating a business<br>☐ Other _____ | $                0.00 |
| For prior year: | From 03/03/2024<br>MM/DD/YYYY | to 03/01/2025<br>MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $       2,536,291.55 |
| For the year before that: | From 03/05/2023<br>MM/DD/YYYY | to 03/02/2024<br>MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $      15,228,655.15 |

**2.  Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None

| | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|---|
| From the beginning of the fiscal year to filing date: | From 03/02/2025<br>MM/DD/YYYY | to 04/26/2025 | N/A | $                0.00 |
| For prior year: | From 03/03/2024<br>MM/DD/YYYY | to 03/01/2025<br>MM/DD/YYYY | N/A | $                0.00 |
| For the year before that: | From 03/05/2023<br>MM/DD/YYYY | to 03/02/2024<br>MM/DD/YYYY | GAIN ON SALE OF ASSETS AND INVESTMENTS, NET | $          715,185.06 |

Debtor    Rite Aid ...    Case number (if known) ...
Name

---

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $8,575. (This amount may be adjusted on 4/01/2028 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer Check all that apply |
|---|---|---|---|
| 3.1 _____ Street _____ City    State    Zip Code | _____ | $ _____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| 3.2 _____ Street _____ City    State    Zip Code | _____ | $ _____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $8, 575. (This amount may be adjusted on 4/01/2028 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None    **See Attached Rider**

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1 _____ Street _____ City    State    Zip Code | _____ | $ _____ | _____ _____ |
| **Relationship to debtor** _____ | | | |
| 4.2 _____ Street _____ City    State    Zip Code | _____ | $ _____ | _____ _____ |
| **Relationship to debtor** _____ | | | |

---

Debtor _____  Case number (if known) _____
      Name

---

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| 5.1 _____ | _____ | _____ | $ _____ |
| Street _____ | _____ | | |
| City _____ State _____ Zip Code | | | |
| 5.2 _____ | _____ | _____ | $ _____ |
| Street _____ | _____ | | |
| City _____ State _____ Zip Code | | | |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| _____ | _____ | _____ | $ _____ |
| Street _____ | _____ | | |
| City _____ State _____ Zip Code | | | |

Last 4 digits of account number: XXXX - _____

---

**Part 3:**    **Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

☐ None   **See Attached Rider**

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1 _____ | _____ | _____ | ☐ Pending |
| | | Street _____ | ☐ On appeal |
| Case number | | City _____ State _____ Zip Code | ☐ Concluded |
| _____ | | | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.2 _____ | _____ | _____ | ☐ Pending |
| | | Street _____ | ☐ On appeal |
| Case number | | City _____ State _____ Zip Code | ☐ Concluded |
| _____ | | | |

---

## 8. Assignments and receivership

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| _____ | _____ | $ _____ |
| Street | **Case title** | **Court name and address** |
| _____ | _____ | _____ |
| City        State        Zip Code | **Case number** | |
| | _____ | |
| | **Date of order or assignment** | |
| | _____ | |

---

## Part 4:  Certain Gifts and Charitable Contributions

## 9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☑ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1 | _____ | _____ | _____ | $ _____ |
| | Street _____ | _____ | | |
| | City        State        Zip Code | | | |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |
| 9.2 | _____ | _____ | _____ | $ _____ |
| | Street _____ | _____ | | |
| | City        State        Zip Code | | | |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |

---

## Part 5:  Certain Losses

## 10. All losses from fire, theft, or other casualty within 1 year before filing this case.

☐ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br>List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| CYBER DATA BREACH/RANSOMWARE ATTACK | $0 | 06/06/2024 | $  UNDETERMINED |

Debtor    Rite Aid Corporation   (Name of Debtor, if known) Case number (if known)

**Part 6:      Certain Payments or Transfers**

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1 | | | $ |

**Address**

_____
Street
_____
City          State          Zip Code

**Email or website address**
_____

**Who made the payment, if not debtor?**
_____

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.2 | | | $ |

**Address**

_____
Street
_____
City          State          Zip Code

**Email or website address**
_____

**Who made the payment, if not debtor?**
_____

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| | | | $ |

**Trustee**

**13. Transfers not already listed on this statement**

List any transfers of money or other property-by sale, trade, or any other means-made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☐ None    **See Attached Rider**

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.1 | | | $ |
| **Address** | | | |
| Street | | | |
| City            State            Zip Code | | | |
| **Relationship to debtor** | | | |

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.2 | | | $ |
| **Address** | | | |
| Street | | | |
| City            State            Zip Code | | | |
| **Relationship to debtor** | | | |

**Part 7:** Previous Locations

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of Occupancy |
|---|---|
| 14.1 30 HUNTER LANE CAMP HILL, PA 17011 | From 3/5/1990    To 2/28/2023 |
| 14.2 | From              To |

---

**Part 8:**    **Health Care Bankruptcies**

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.    **No**

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1 _____ | _____ | _____ |
| Street _____ | | |
| City      State      Zip Code | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. _____ _____ | **How are records kept?** *Check all that apply:* ☐ Electronically ☐ Paper |

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.2 _____ | _____ | _____ |
| Street _____ | | |
| City      State      Zip Code | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. _____ _____ | **How are records kept?** *Check all that apply:* ☐ Electronically ☐ Paper |

---

**Part 9:**    **Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained.    PLEASE SEE THE DEBTOR'S PRIVACY POLICY AT HTTPS://WWW.RITEAID.COM/LEGAL/PRIVACY-POLICY

Does the debtor have a privacy policy about that information?    HTTPS://WWW.RITEAID.COM/LEGAL/PATIENT-PRIVACY-POLICY

☐ No

☑ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☑ Yes. Fill in below

| Name of plan | Employer identification number of the plan |
|---|---|
| **See Attached Rider** | EIN: _____ |

Has the plan been terminated?

☐ No

☐ Yes

---

Debtor    Rite Aid of Maryland, Inc.

Name

Case number _(if known)_ _____

---

**Part 10:** **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, old, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1 _____<br>Street _____<br>City    State    Zip Code | XXXX-_____ | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | _____ | $ _____ |
| 18.2 _____<br>Street _____<br>City    State    Zip Code | XXXX-_____ | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | _____ | $ _____ |

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Street _____<br>City    State    Zip Code | _____<br>**Address**<br>_____<br>_____ | _____ | ☐ No<br>☐ Yes |

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None    **See Attached Rider**

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Street _____<br>City    State    Zip Code | _____<br>**Address**<br>_____<br>_____ | _____ | ☐ No<br>☐ Yes |

---

Debtor   Rite Aid Corporation _____   Case number _(if known)_ _____

Name

---

## Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own

**21.   Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None   **Please refer to Debtors' Global Notes regarding statement question 21**

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ |
| _____ | _____ | _____ | _____ |
| Street | | | |
| _____ | | | |
| City          State          Zip Code | | | |

---

## Part 12:   Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

■   *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

■   *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

■   *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.   Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☐ No
☑ Yes. Provide details below.   **See Attached Rider**

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| _____ | _____ | _____ | ☐ Pending |
| **Case Number** | Street | | ☐ On appeal |
| | _____ | | ☐ Concluded |
| _____ | City       State       Zip Code | | |

**23.   Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☐ No
☑ Yes. Provide details below.   **See Attached Rider**

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | | |
| _____ | _____ | | |
| City       State       Zip Code | City       State       Zip Code | | |

---

Debtor  Rite Aid                                                                     Case number (if known)

Name

---

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | | |
| _____ | _____ | | |
| City          State          Zip Code | City          State          Zip Code | | |

---

### Part 13:   Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None   **See Attached Rider**

| Business name and address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN. |
|---|---|---|
| **25.1** _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City          State          Zip Code | | From _____   To _____ |
| **25.2** _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City          State          Zip Code | | From _____   To _____ |
| **25.3** _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City          State          Zip Code | | From _____   To _____ |

---

Official Form 207                Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                Page **10**

Debtor    Rite Aid Corporation _____   Case number (if known) _____

Name

### 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1 MATT SCHROEDER<br>ADDRESS REDACTED | From 03/01/2019    To 09/03/2024 |

| Name and address | Dates of service |
|---|---|
| 26a.2 STEVE BIXLER<br>ADDRESS REDACTED | From 01/13/2023    To PRESENT |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26b.1 DELOITTE & TOUCHE LLP<br>DELOITTE TAX LLP<br>PO BOX 844736<br>DALLAS, TX 75284-4736 | From 1999    To 02/01/2025 |

| Name and address | Dates of service |
|---|---|
| 26b.2 | From _____    To _____ |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.1 STEVE BIXLER<br>ADDRESS REDACTED | N/A |

Debtor    Rite Aid _____    Case number (if known) _____
        Name

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.2 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None   **See Attached Rider**

| Name and address |
|---|
| 26d.1 |
| _____ |
| Street |
| _____ |
| City          State          Zip Code |

| Name and address |
|---|
| 26d.2 |
| _____ |
| Street |
| _____ |
| City          State          Zip Code |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No
☐ Yes. Give the details about the two most recent inventories.   **Please refer to Debtors' Global Notes regarding statement question 27**

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|
| 27.1 | | |
| Street | | |
| City          State          Zip Code | | |

Debtor   Rite Aid Corporation                                    Case number (if known)   25-14631
         Name

Case 25-14861-NWBK   Doc 1927-11   Filed 06/16/25   Entered 06/16/25 20:50:31   Desc
Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy   Page 35 of 62

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records |
|---|

27.2

Street

City                          State                          Zip Code

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **See Attached Rider** | | | |
| | | | |
| | | | |
| | | | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **See Attached Rider** | | | From          To |
| | | | From          To |
| | | | From          To |
| | | | From          To |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No

☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 **Refer to SOFA Question 4** | | | |
| Street | | | |
| City          State          Zip Code | | | |

| Relationship to debtor |
|---|

Debtor    Rite Aid _____    Case number (if known) _____
Name

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.2 | | | | |
| | Street | | | |
| | City          State          Zip Code | | | |
| | Relationship to debtor | | | |

**31.  Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| RITE AID CORPORATION | EIN: 23-1614034 |

**32.  Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☐ No
☑ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| RITE AID PENSION PLAN | EIN: 23-1614034 |

---

**Part 14:    Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    06/16/2025
                MM / DD / YYYY

**X** /s/ Steve Bixler                                    Printed name    Steve Bixler
Signature of individual signing on behalf of the debtor

Position or relationship to debtor    Authorized Representative / Chief Financial Officer of Ultimate Parent Company

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No
☑ Yes

---

Rite Aid Corporation                                                                 Lead Case Number: 25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**Part 2 Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider[1]

| Debtor | Trading Partner | FY25 - Q1 Net Position[2] | FY25 - Q2 Net Position[2] | FY25 - Q3 Net Position[2] | FY25 - Q4 Net Position[2] | Petition Date Net Position[2] |
|---|---|---|---|---|---|---|
| APEX DRUG STORES, INC. | RITE AID HDQTRS. CORP. | $ 8,916,072.56 | $ (20,393,956.30) | $ (12,968,869.17) | $ (13,990,524.12) | $ (12,165,404.46) |
| ECKERD CORPORATION | RITE AID HDQTRS. CORP. | $ (949,840,069.45) | $ (928,391,918.65) | $ (789,061,828.91) | $ (932,561,510.93) | $ (931,515,885.56) |
| EDC DRUG STORES, INC. | RITE AID HDQTRS. CORP. | $ (107,136,268.67) | $ (107,156,500.96) | $ (107,156,384.92) | $ (107,156,384.92) | $ (107,156,384.92) |
| EX BENEFITS, LLC | EX OPTIONS, LLC | $ 2,393,274.00 | $ 2,393,274.00 | $ 2,393,274.00 | $ 2,393,274.00 | $ 2,393,274.00 |
| EX BENEFITS, LLC | EX SOLUTIONS OF OH, LLC | $ (992,252.00) | $ (992,252.00) | $ (992,252.00) | $ (992,252.00) | $ (992,252.00) |
| EX DESIGN HOLDINGS, LLC | EX OPTIONS, LLC | $ - | $ - | $ - | $ - | $ (2,790.70) |
| EX DESIGN HOLDINGS, LLC | RITE AID HDQTRS. CORP. | $ - | $ (791.22) | $ (791.22) | $ (7,040.78) | $ (7,040.78) |
| EX DESIGN, LLC | EX DESIGN HOLDINGS, LLC | $ (2,790.70) | $ (2,790.70) | $ (2,790.70) | $ (2,790.70) | $ - |
| EX DESIGN, LLC | EX HOLDCO, LLC | $ 29,141,562.00 | $ 29,141,562.00 | $ 29,141,562.00 | $ 29,141,562.00 | $ 29,141,562.00 |
| EX DESIGN, LLC | EX OPTIONS, LLC | $ 88,635,234.00 | $ 88,635,491.38 | $ 88,635,491.38 | $ 88,635,491.38 | $ 88,635,491.38 |
| EX DESIGN, LLC | RITE AID HDQTRS. CORP. | $ - | $ 517.84 | $ 517.84 | $ 517.84 | $ 517.84 |
| EX HOLDCO, LLC | ELIXIR INSURANCE CO. | $ (2,638,555.00) | $ (2,638,555.00) | $ (2,638,555.00) | $ (2,638,555.00) | $ (2,638,555.00) |
| EX HOLDCO, LLC | ELIXIR PUERTO RICO INC | $ (2,818,525.00) | $ (2,818,525.00) | $ (2,818,525.00) | $ - | $ - |
| EX HOLDCO, LLC | EX DESIGN, LLC | $ (29,141,562.00) | $ (29,141,562.00) | $ (29,141,562.00) | $ (29,141,562.00) | $ (29,141,562.00) |
| EX HOLDCO, LLC | EX OPTIONS, LLC | $ (194,798,140.00) | $ (194,798,140.00) | $ (194,798,140.00) | $ (767,664,358.32) | $ (767,664,358.32) |
| EX HOLDCO, LLC | EX RXCLUSIVES, LLC | $ (250,000.00) | $ (250,000.00) | $ (250,000.00) | $ (250,000.00) | $ (250,000.00) |
| EX HOLDCO, LLC | EX SAVINGS, LLC | $ 55.00 | $ 55.00 | $ 55.00 | $ 55.00 | $ 55.00 |
| EX HOLDCO, LLC | EX SOFTWARE, LLC | $ 37,008.00 | $ 37,008.00 | $ 37,008.00 | $ 37,008.00 | $ 37,008.00 |
| EX HOLDCO, LLC | EX SOLUTIONS OF MO, LLC | $ (50,524,643.00) | $ (50,524,643.00) | $ (50,524,643.00) | $ (50,524,643.00) | $ (50,524,643.00) |
| EX HOLDCO, LLC | EX SOLUTIONS OF NV, LLC | $ (10,539,511.00) | $ (10,539,511.00) | $ (10,539,511.00) | $ 599,989,059.00 | $ 599,989,059.00 |
| EX HOLDCO, LLC | EX SOLUTIONS OF OH, LLC | $ (115,348,091.00) | $ (115,348,091.00) | $ (115,348,091.00) | $ (125,792,552.00) | $ (125,792,552.00) |
| EX HOLDCO, LLC | HUNTER LANE, LLC | $ (7,957,896.00) | $ (7,957,896.00) | $ (7,957,896.00) | $ (8,089,366.00) | $ (8,089,366.00) |
| EX HOLDCO, LLC | RITE AID HDQTRS. CORP. | $ - | $ 3,006.10 | $ 3,006.10 | $ 3,006.10 | $ 3,006.10 |
| EX INITIATIVES, LLC | EX OPTIONS, LLC | $ (9,440,187.00) | $ (9,440,187.00) | $ (9,440,187.00) | $ (9,440,187.00) | $ (9,440,187.00) |
| EX INITIATIVES, LLC | EX SOLUTIONS OF OH, LLC | $ 22,884,130.00 | $ 22,884,130.00 | $ 22,884,130.00 | $ 22,884,130.00 | $ 22,884,130.00 |
| EX OPTIONS, LLC | ELIXIR INSURANCE CO. | $ 344,452,499.85 | $ 355,227,004.98 | $ 40,821,631.34 | $ (40,822,112.68) | $ (41,555,542.87) |
| EX OPTIONS, LLC | ELIXIR PUERTO RICO INC | $ 572,845,223.00 | $ 572,845,223.00 | $ 572,866,218.32 | $ - | $ - |
| EX OPTIONS, LLC | EX BENEFITS, LLC | $ (2,393,274.00) | $ (2,393,274.00) | $ (2,393,274.00) | $ (2,393,274.00) | $ (2,393,274.00) |
| EX OPTIONS, LLC | EX DESIGN, LLC | $ 2,026.41 | $ 2,026.41 | $ 2,026.41 | $ 2,026.41 | $ - |
| EX OPTIONS, LLC | EX HOLDCO, LLC | $ (88,635,234.00) | $ (88,635,234.00) | $ (88,635,234.00) | $ (88,635,234.00) | $ (88,632,700.68) |
| EX OPTIONS, LLC | EX INITIATIVES, LLC | $ (654,135,742.00) | $ (654,135,742.00) | $ (654,135,742.00) | $ (81,269,523.68) | $ 767,664,358.32 |
| EX OPTIONS, LLC | EX OPTIONS, LLC | $ (65,666.67) | $ (76,740.26) | $ (76,740.26) | $ (76,740.26) | $ 9,330.50 |
| EX OPTIONS, LLC | EX PHARMACY, LLC | $ (237,771,753.30) | $ (237,771,753.30) | $ (237,771,753.30) | $ (237,771,753.30) | $ (237,788,546.22) |
| EX OPTIONS, LLC | EX PROCUREMENT, LLC | $ - | $ - | $ - | $ - | $ (848,933,882.00) |
| EX OPTIONS, LLC | EX RXCLUSIVES, LLC | $ (4,094,863.00) | $ (4,094,863.00) | $ (4,094,863.00) | $ (4,094,863.00) | $ (4,094,863.00) |
| EX OPTIONS, LLC | EX SAVINGS, LLC | $ 247,820,037.00 | $ 247,820,037.00 | $ 247,820,037.00 | $ 247,820,037.00 | $ 247,771,534.00 |
| EX OPTIONS, LLC | EX SOFTWARE, LLC | $ (121,368,968.10) | $ (121,368,968.10) | $ (121,368,968.10) | $ (121,368,968.10) | $ (121,369,491.73) |
| EX OPTIONS, LLC | EX SOLUTIONS OF MO, LLC | $ (260,103,999.12) | $ (260,103,999.12) | $ (260,103,999.12) | $ (260,103,999.12) | $ (260,101,789.33) |
| EX OPTIONS, LLC | EX SOLUTIONS OF NV, LLC | $ (1,751,414,461.99) | $ (1,825,693,569.08) | $ (1,825,933,569.08) | $ (1,825,933,569.08) | $ (1,826,027,275.98) |
| EX OPTIONS, LLC | EX SOLUTIONS OF OH, LLC | $ 166,286,104.20 | $ 166,286,104.20 | $ 166,286,104.20 | $ 166,286,104.20 | $ 166,323,336.32 |
| EX OPTIONS, LLC | FIRST FLORIDA INSURERS OF TAMPA, LLC | $ 36,153,689.16 | $ 36,153,689.16 | $ 36,153,689.16 | $ 36,153,689.16 | $ 36,187,201.28 |
| EX OPTIONS, LLC | HUNTER LANE, LLC | $ (198,826,275.00) | $ (198,826,275.00) | $ (198,826,275.00) | $ (195,603,524.00) | $ (195,603,524.00) |
| EX OPTIONS, LLC | RITE AID HDQTRS. CORP. | $ 18,921,187.67 | $ 66,066,022.92 | $ 64,808,777.18 | $ 150,795,053.03 | $ 146,297,545.16 |
| EX PHARMACY, LLC | EX OPTIONS, LLC | $ 237,918,288.00 | $ 237,930,039.38 | $ 237,930,039.38 | $ 237,930,039.38 | $ 237,930,039.38 |
| EX PHARMACY, LLC | EX PHARMACY, LLC | $ (141,493.16) | $ (141,493.16) | $ (141,493.16) | $ (141,493.16) | $ (141,493.16) |
| EX PHARMACY, LLC | EX SOLUTIONS OF MO, LLC | $ 3,261,666.00 | $ 3,261,666.00 | $ 3,261,666.00 | $ 3,261,666.00 | $ 3,261,666.00 |
| EX PHARMACY, LLC | EX SOLUTIONS OF OH, LLC | $ (1,619,830.00) | $ (1,619,830.00) | $ (1,619,830.00) | $ (1,619,830.00) | $ (1,619,830.00) |
| EX PHARMACY, LLC | HUNTER LANE, LLC | $ - | $ - | $ - | $ 33,364.00 | $ 33,364.00 |
| EX PHARMACY, LLC | RITE AID HDQTRS. CORP. | $ - | $ (24,618.46) | $ (24,618.46) | $ (232,088.36) | $ (232,088.36) |
| EX PROCUREMENT, LLC | EX OPTIONS, LLC | $ 848,933,882.00 | $ 848,933,882.00 | $ 848,933,882.00 | $ 848,933,882.00 | $ 848,933,882.00 |
| EX PROCUREMENT, LLC | EX SOLUTIONS OF NV, LLC | $ (734,924,082.00) | $ (734,924,082.00) | $ (734,924,082.00) | $ (734,924,082.00) | $ (734,924,082.00) |
| EX RXCLUSIVES, LLC | EX HOLDCO, LLC | $ 250,000.00 | $ 250,000.00 | $ 250,000.00 | $ 250,000.00 | $ 250,000.00 |
| EX RXCLUSIVES, LLC | EX OPTIONS, LLC | $ 4,094,863.00 | $ 4,094,863.00 | $ 4,094,863.00 | $ 4,094,863.00 | $ 4,094,863.00 |
| EX SAVINGS, LLC | EX HOLDCO, LLC | $ (55.00) | $ (55.00) | $ (55.00) | $ (55.00) | $ (55.00) |
| EX SAVINGS, LLC | EX OPTIONS, LLC | $ (247,820,037.00) | $ (247,820,037.00) | $ (247,820,037.00) | $ (247,820,037.00) | $ (247,771,534.00) |
| EX SAVINGS, LLC | EX SAVINGS, LLC | $ 48,503.00 | $ 48,503.00 | $ 48,503.00 | $ 48,503.00 | $ - |
| EX SAVINGS, LLC | EX SOLUTIONS OF NV, LLC | $ 14,795,863.00 | $ 14,795,863.00 | $ 14,795,863.00 | $ 14,795,863.00 | $ 14,795,863.00 |
| EX SAVINGS, LLC | EX SOLUTIONS OF OH, LLC | $ 263,450,739.00 | $ 263,450,739.00 | $ 263,450,739.00 | $ 263,450,739.00 | $ 263,450,739.00 |
| EX SAVINGS, LLC | HUNTER LANE, LLC | $ - | $ - | $ - | $ 3,200.00 | $ 3,200.00 |
| EX SOFTWARE, LLC | EX HOLDCO, LLC | $ (37,008.00) | $ (37,008.00) | $ (37,008.00) | $ (37,008.00) | $ (37,008.00) |
| EX SOFTWARE, LLC | EX OPTIONS, LLC | $ 121,371,229.00 | $ 121,371,229.00 | $ 121,371,229.00 | $ 121,371,229.00 | $ 121,369,491.73 |
| EX SOFTWARE, LLC | EX SOFTWARE, LLC | $ (1,737.27) | $ (1,737.27) | $ (1,737.27) | $ (1,737.27) | $ - |
| EX SOFTWARE, LLC | EX SOLUTIONS OF MO, LLC | $ 3,887,888.00 | $ 3,887,888.00 | $ 3,887,888.00 | $ 3,887,888.00 | $ 3,887,888.00 |
| EX SOFTWARE, LLC | EX SOLUTIONS OF OH, LLC | $ 20,035,155.00 | $ 20,035,155.00 | $ 20,035,155.00 | $ 20,035,155.00 | $ 20,035,155.00 |
| EX SOFTWARE, LLC | HUNTER LANE, LLC | $ - | $ - | $ - | $ 10,100.00 | $ 10,100.00 |
| EX SOFTWARE, LLC | RITE AID HDQTRS. CORP. | $ (42,980.00) | $ (43,638.93) | $ (44,146.52) | $ (49,351.12) | $ (49,351.12) |
| EX SOLUTIONS OF MO, LLC | EX HOLDCO, LLC | $ 50,524,643.00 | $ 50,524,643.00 | $ 50,524,643.00 | $ 50,524,643.00 | $ 50,524,643.00 |
| EX SOLUTIONS OF MO, LLC | EX OPTIONS, LLC | $ 260,107,925.00 | $ 260,108,021.56 | $ 260,108,021.56 | $ 260,108,021.56 | $ 260,101,789.33 |
| EX SOLUTIONS OF MO, LLC | EX PHARMACY, LLC | $ (3,261,666.00) | $ (3,261,666.00) | $ (3,261,666.00) | $ (3,261,666.00) | $ (3,261,666.00) |
| EX SOLUTIONS OF MO, LLC | EX SOFTWARE, LLC | $ (3,887,888.00) | $ (3,887,888.00) | $ (3,887,888.00) | $ (3,887,888.00) | $ (3,887,888.00) |
| EX SOLUTIONS OF MO, LLC | EX SOLUTIONS OF MO, LLC | $ (6,232.23) | $ (6,232.23) | $ (6,232.23) | $ (6,232.23) | $ - |
| EX SOLUTIONS OF MO, LLC | EX SOLUTIONS OF NV, LLC | $ 172,487,809.00 | $ 172,487,809.00 | $ 172,487,809.00 | $ 172,487,809.00 | $ 172,487,809.00 |
| EX SOLUTIONS OF MO, LLC | EX SOLUTIONS OF OH, LLC | $ 8,411,741.00 | $ 8,411,741.00 | $ 8,411,741.00 | $ 8,411,741.00 | $ 8,411,741.00 |
| EX SOLUTIONS OF MO, LLC | HUNTER LANE, LLC | $ - | $ - | $ - | $ (96,359.00) | $ (96,359.00) |
| EX SOLUTIONS OF MO, LLC | RITE AID HDQTRS. CORP. | $ - | $ (3,733.13) | $ (3,733.13) | $ (33,219.70) | $ (33,219.70) |
| EX SOLUTIONS OF NV, LLC | ELIXIR PUERTO RICO INC | $ (610,528,570.00) | $ (610,528,570.00) | $ (610,528,570.00) | $ - | $ - |
| EX SOLUTIONS OF NV, LLC | EX HOLDCO, LLC | $ 10,539,511.00 | $ 10,539,511.00 | $ 10,539,511.00 | $ (599,989,059.00) | $ (599,989,059.00) |
| EX SOLUTIONS OF NV, LLC | EX OPTIONS, LLC | $ 1,751,453,074.00 | $ 1,825,968,312.63 | $ 1,825,968,312.63 | $ 1,825,968,312.63 | $ 1,826,027,275.98 |
| EX SOLUTIONS OF NV, LLC | EX PROCUREMENT, LLC | $ 734,924,082.00 | $ 734,924,082.00 | $ 734,924,082.00 | $ 734,924,082.00 | $ 734,924,082.00 |
| EX SOLUTIONS OF NV, LLC | EX SAVINGS, LLC | $ (14,795,863.00) | $ (14,795,863.00) | $ (14,795,863.00) | $ (14,795,863.00) | $ (14,795,863.00) |

1 of 4

Rite Aid Corporation

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**Part 2 Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider[1]

| Debtor | Trading Partner | FY25 - Q1 Net Position* | FY25 - Q2 Net Position* | FY25 - Q3 Net Position* | FY25 - Q4 Net Position* | Petition Date Net Position* |
|---|---|---|---|---|---|---|
| EX SOLUTIONS OF NV, LLC | EX SOLUTIONS OF MO, LLC | $ (172,487,809.00) | $ (172,487,809.00) | $ (172,487,809.00) | $ (172,487,809.00) | $ (172,487,809.00) |
| EX SOLUTIONS OF NV, LLC | EX SOLUTIONS OF NV, LLC | $ 58,963.35 | $ 58,963.35 | $ 58,963.35 | $ 58,963.35 | $ - |
| EX SOLUTIONS OF NV, LLC | EX SOLUTIONS OF OH, LLC | $ (1,067,778,762.00) | $ (1,067,778,762.00) | $ (1,067,778,762.00) | $ (1,067,778,762.00) | $ (1,067,778,762.00) |
| EX SOLUTIONS OF NV, LLC | HUNTER LANE, LLC | $ - | $ - | $ - | $ 44,200.00 | $ 44,200.00 |
| EX SOLUTIONS OF NV, LLC | RITE AID HDQTRS. CORP. | $ 4,745,506.89 | $ 4,729,316.97 | $ 4,729,316.97 | $ 4,601,441.76 | $ 4,601,441.76 |
| EX SOLUTIONS OF OH, LLC | ELIXIR PUERTO RICO INC | $ 10,444,461.00 | $ 10,444,461.00 | $ 10,444,461.00 | $ - | $ - |
| EX SOLUTIONS OF OH, LLC | EX BENEFITS, LLC | $ 992,252.00 | $ 992,252.00 | $ 992,252.00 | $ 992,252.00 | $ 992,252.00 |
| EX SOLUTIONS OF OH, LLC | EX HOLDCO, LLC | $ 115,348,091.00 | $ 115,348,091.00 | $ 115,348,091.00 | $ 125,792,552.00 | $ 125,792,552.00 |
| EX SOLUTIONS OF OH, LLC | EX INITIATIVES, LLC | $ (22,884,130.00) | $ (22,884,130.00) | $ (22,884,130.00) | $ (22,884,130.00) | $ (22,884,130.00) |
| EX SOLUTIONS OF OH, LLC | EX OPTIONS, LLC | $ (166,326,612.56) | $ (166,323,336.32) | $ (166,323,336.32) | $ (166,323,336.32) | $ (166,323,336.32) |
| EX SOLUTIONS OF OH, LLC | EX PHARMACY, LLC | $ 1,619,830.00 | $ 1,619,830.00 | $ 1,619,830.00 | $ 1,619,830.00 | $ 1,619,830.00 |
| EX SOLUTIONS OF OH, LLC | EX SAVINGS, LLC | $ (263,450,739.00) | $ (263,450,739.00) | $ (263,450,739.00) | $ (263,450,739.00) | $ (263,450,739.00) |
| EX SOLUTIONS OF OH, LLC | EX SOFTWARE, LLC | $ (20,035,155.00) | $ (20,035,155.00) | $ (20,035,155.00) | $ (20,035,155.00) | $ (20,035,155.00) |
| EX SOLUTIONS OF OH, LLC | EX SOLUTIONS OF MO, LLC | $ (8,411,741.00) | $ (8,411,741.00) | $ (8,411,741.00) | $ (8,411,741.00) | $ (8,411,741.00) |
| EX SOLUTIONS OF OH, LLC | EX SOLUTIONS OF NV, LLC | $ 1,067,778,762.00 | $ 1,067,778,762.00 | $ 1,067,778,762.00 | $ 1,067,778,762.00 | $ 1,067,778,762.00 |
| EX SOLUTIONS OF OH, LLC | FIRST FLORIDA INSURERS OF TAMPA, LLC | $ (66,770,726.00) | $ (66,770,726.00) | $ (66,770,726.00) | $ (66,770,726.00) | $ (66,770,726.00) |
| EX SOLUTIONS OF OH, LLC | HUNTER LANE, LLC | $ - | $ - | $ - | $ (3,400,594.00) | $ (3,400,594.00) |
| EX SOLUTIONS OF OH, LLC | RITE AID HDQTRS. CORP. | $ (48,114.50) | $ (129,283.28) | $ (159,663.91) | $ (391,516.11) | $ (391,516.11) |
| FIRST FLORIDA INSURERS OF TAMPA, LLC | ELIXIR INSURANCE CO. | $ 44,835.57 | $ 44,835.57 | $ 44,835.57 | $ 44,835.57 | $ 44,835.57 |
| FIRST FLORIDA INSURERS OF TAMPA, LLC | EX OPTIONS, LLC | $ (36,133,603.00) | $ (36,134,042.51) | $ (36,134,042.51) | $ (36,134,042.51) | $ (36,187,201.28) |
| FIRST FLORIDA INSURERS OF TAMPA, LLC | EX SOLUTIONS OF OH, LLC | $ 66,740,559.24 | $ 66,740,559.24 | $ 66,740,559.24 | $ 66,740,559.24 | $ 66,770,726.00 |
| FIRST FLORIDA INSURERS OF TAMPA, LLC | FIRST FLORIDA INSURERS OF TAMPA, LLC | $ (22,992.01) | $ (22,992.01) | $ (22,992.01) | $ (22,992.01) | $ - |
| FIRST FLORIDA INSURERS OF TAMPA, LLC | RITE AID HDQTRS. CORP. | $ - | $ (2,663.57) | $ (2,663.57) | $ (23,702.03) | $ (23,702.03) |
| GENOVESE DRUG STORES, INC. | RITE AID HDQTRS. CORP. | $ (99,275,863.79) | $ (93,289,156.79) | $ (68,457,381.42) | $ (84,610,787.77) | $ (84,397,855.15) |
| HARCO, INC. | RITE AID HDQTRS. CORP. | $ (107,114,727.96) | $ (107,113,550.96) | $ (107,128,875.98) | $ (107,128,875.98) | $ (107,128,875.98) |
| HUNTER LANE, LLC | EX HOLDCO, LLC | $ 7,957,896.00 | $ 7,957,896.00 | $ 7,957,896.00 | $ 7,957,896.00 | $ 8,089,367.00 |
| HUNTER LANE, LLC | EX OPTIONS, LLC | $ 198,826,275.00 | $ 198,826,275.00 | $ 198,826,275.00 | $ 198,826,275.00 | $ 195,603,524.00 |
| HUNTER LANE, LLC | EX PHARMACY, LLC | $ - | $ - | $ - | $ - | $ (33,364.00) |
| HUNTER LANE, LLC | EX SAVINGS, LLC | $ - | $ - | $ - | $ - | $ (3,200.00) |
| HUNTER LANE, LLC | EX SOFTWARE, LLC | $ - | $ - | $ - | $ - | $ (10,100.00) |
| HUNTER LANE, LLC | EX SOLUTIONS OF MO, LLC | $ - | $ - | $ - | $ - | $ 96,359.00 |
| HUNTER LANE, LLC | EX SOLUTIONS OF NV, LLC | $ - | $ - | $ - | $ - | $ (44,200.00) |
| HUNTER LANE, LLC | EX SOLUTIONS OF OH, LLC | $ - | $ - | $ - | $ - | $ 3,400,594.00 |
| HUNTER LANE, LLC | HUNTER LANE, LLC | $ - | $ - | $ - | $ 314,808.00 | $ (1.00) |
| HUNTER LANE, LLC | RITE AID HDQTRS. CORP. | $ (196,986.36) | $ (235,383.66) | $ (235,383.66) | $ (4,695,653.82) | $ (148,175.99) |
| JCG HOLDINGS (USA), INC. | RITE AID HDQTRS. CORP. | $ (2,428.29) | $ (2,428.29) | $ (2,428.29) | $ (2,428.29) | $ (2,428.29) |
| K & B ALABAMA CORPORATION | RITE AID HDQTRS. CORP. | $ (3,085,242.66) | $ (3,085,242.66) | $ (3,085,242.66) | $ (3,085,242.66) | $ (3,085,242.66) |
| K & B LOUISIANA CORPORATION | RITE AID HDQTRS. CORP. | $ (24,316,607.89) | $ (24,316,551.90) | $ (24,316,551.90) | $ (24,316,551.90) | $ (24,316,551.90) |
| K & B MISSISSIPPI CORPORATION | RITE AID HDQTRS. CORP. | $ (26,207,064.30) | $ (26,207,064.30) | $ (26,207,064.30) | $ (26,207,064.30) | $ (26,207,064.30) |
| K & B SERVICES, INCORPORATED | RITE AID HDQTRS. CORP. | $ 175.00 | $ 175.00 | $ 175.00 | $ 175.00 | $ 175.00 |
| K & B TENNESSEE CORPORATION | RITE AID HDQTRS. CORP. | $ (5,277,717.30) | $ (5,277,717.30) | $ (5,277,717.30) | $ (5,277,717.30) | $ (5,277,717.30) |
| K & B, INCORPORATED | RITE AID HDQTRS. CORP. | $ 1,125.00 | $ 1,125.00 | $ 1,125.00 | $ 1,125.00 | $ 1,125.00 |
| K&B TEXAS CORPORATION | RITE AID HDQTRS. CORP. | $ 98,025.20 | $ 98,025.20 | $ 98,025.20 | $ 98,025.20 | $ 98,025.20 |
| MAXI DRUG NORTH, INC. | RITE AID HDQTRS. CORP. | $ (77,377,056.19) | $ (72,811,892.11) | $ (60,749,645.03) | $ (75,720,634.02) | $ (76,189,066.12) |
| MAXI DRUG SOUTH, L.P. | RITE AID HDQTRS. CORP. | $ (67,923,058.44) | $ (67,923,058.44) | $ (67,923,058.44) | $ (67,923,058.44) | $ (67,923,058.44) |
| MAXI DRUG, INC. | RITE AID HDQTRS. CORP. | $ (441,162,956.83) | $ (438,716,677.68) | $ (430,431,320.82) | $ (10,375,581.42) | $ (9,035,264.74) |
| MAXI GREEN INC. | RITE AID HDQTRS. CORP. | $ (103,000,523.55) | $ (102,050,151.23) | $ (99,670,612.65) | $ (104,410,567.23) | $ (104,474,129.84) |
| NEW RITE AID, LLC | RITE AID HDQTRS. CORP. | $ 322,598.83 | $ 322,598.83 | $ 322,598.83 | $ 322,598.83 | $ 322,598.83 |
| P.J.C. DISTRIBUTION, INC. | RITE AID HDQTRS. CORP. | $ (33,599,712.27) | $ (33,599,712.27) | $ (33,599,712.27) | $ (33,599,712.27) | $ (33,599,712.27) |
| P.J.C. REALTY CO., INC. | RITE AID HDQTRS. CORP. | $ (9,710,754.04) | $ (9,713,088.14) | $ (9,712,894.80) | $ (9,712,047.10) | $ (9,712,501.10) |
| PDS-1 MICHIGAN, INC. | RITE AID HDQTRS. CORP. | $ (3,242,149.10) | $ (13,390,026.37) | $ (10,454,773.08) | $ (10,774,017.03) | $ (10,283,344.92) |
| PERRY DRUG STORES, INC. | RITE AID HDQTRS. CORP. | $ (66,489,647.13) | $ (158,654,799.99) | $ (131,585,969.24) | $ (133,369,417.75) | $ (127,087,306.17) |
| PJC LEASE HOLDINGS, INC. | RITE AID HDQTRS. CORP. | $ 4,984.20 | $ 4,984.20 | $ 4,984.20 | $ 4,984.20 | $ 4,984.20 |
| PJC OF MASSACHUSETTS, INC. | RITE AID HDQTRS. CORP. | $ 3,299.20 | $ 3,299.20 | $ 3,299.20 | $ 3,299.20 | $ 3,299.20 |
| PJC OF RHODE ISLAND, INC. | RITE AID HDQTRS. CORP. | $ 3,614.20 | $ 3,614.20 | $ 3,614.20 | $ 3,614.20 | $ 3,614.20 |
| PJC OF VERMONT INC. | RITE AID HDQTRS. CORP. | $ 7,814.23 | $ 7,814.23 | $ 7,814.23 | $ 7,814.23 | $ 7,814.23 |
| PJC REALTY MA, INC. | RITE AID HDQTRS. CORP. | $ (146,130.81) | $ (146,130.81) | $ (146,130.81) | $ (146,130.81) | $ (146,130.81) |
| PJC SPECIAL REALTY HOLDINGS, INC. | RITE AID HDQTRS. CORP. | $ (7,880,428.18) | $ (7,880,428.18) | $ (7,880,428.18) | $ (7,880,428.18) | $ (7,880,428.18) |
| RCMH LLC | RITE AID HDQTRS. CORP. | $ (14,144,919.88) | $ (14,144,919.88) | $ (14,142,068.68) | $ (14,142,068.68) | $ (14,142,068.68) |
| RDS DETROIT, INC. | RITE AID HDQTRS. CORP. | $ 383,908.20 | $ (2,656,663.37) | $ (2,321,357.09) | $ (2,484,687.33) | $ (2,266,243.73) |
| REDICLINIC ASSOCIATES, INC. | RITE AID HDQTRS. CORP. | $ (5,415,958.61) | $ (5,415,958.61) | $ (5,415,958.61) | $ (5,415,958.61) | $ (5,415,958.61) |
| REDICLINIC LLC | RITE AID HDQTRS. CORP. | $ 49,876,545.99 | $ 49,876,545.99 | $ 49,877,415.11 | $ 49,877,415.11 | $ 49,877,415.11 |
| REDICLINIC OF DC, LLC | RITE AID HDQTRS. CORP. | $ 1,875.00 | $ 1,875.00 | $ 1,875.00 | $ 1,875.00 | $ 1,875.00 |
| REDICLINIC OF DE, LLC | RITE AID HDQTRS. CORP. | $ 848,524.19 | $ 848,524.19 | $ 848,524.19 | $ 848,524.19 | $ 848,524.19 |
| REDICLINIC OF MD, LLC | RITE AID HDQTRS. CORP. | $ 1,335,669.27 | $ 1,335,669.27 | $ 1,335,669.27 | $ 1,335,669.27 | $ 1,335,669.27 |
| REDICLINIC OF PA, LLC | RITE AID HDQTRS. CORP. | $ 16,107,011.67 | $ 16,107,011.67 | $ 16,107,011.67 | $ 16,107,011.67 | $ 16,107,011.67 |
| REDICLINIC OF VA, LLC | RITE AID HDQTRS. CORP. | $ 416,304.20 | $ 416,304.20 | $ 416,304.20 | $ 416,304.20 | $ 416,304.20 |
| REDICLINIC US, LLC | RITE AID HDQTRS. CORP. | $ 900.00 | $ 900.00 | $ 900.00 | $ 900.00 | $ 900.00 |
| RITE AID CORPORATION | RITE AID HDQTRS. CORP. | $ 4,393,038,618.44 | $ 4,787,637,359.77 | $ 4,727,305,226.48 | $ 4,291,643,426.08 | $ 4,288,739,389.40 |
| RITE AID DRUG PALACE, INC. | RITE AID HDQTRS. CORP. | $ (15,328,357.36) | $ (15,477,800.69) | $ (12,468,594.95) | $ (15,197,337.38) | $ (14,878,555.88) |
| RITE AID HDQTRS. CORP. | APEX DRUG STORES, INC. | $ (8,916,072.56) | $ 20,393,956.30 | $ 12,968,869.17 | $ 13,990,524.12 | $ 12,165,404.46 |
| RITE AID HDQTRS. CORP. | ECKERD CORPORATION | $ 949,040,069.45 | $ 928,391,918.65 | $ 789,061,828.91 | $ 932,561,510.93 | $ 931,515,885.56 |
| RITE AID HDQTRS. CORP. | EDC DRUG STORES, INC. | $ 107,136,268.67 | $ 107,156,500.96 | $ 107,156,384.92 | $ 107,156,384.92 | $ 107,156,384.92 |
| RITE AID HDQTRS. CORP. | ELIXIR PUERTO RICO INC | $ 31,108.61 | $ 545,134.93 | $ 611,429.08 | $ - | $ - |
| RITE AID HDQTRS. CORP. | EX DESIGN HOLDINGS, LLC | $ - | $ 791.22 | $ 791.22 | $ 7,040.78 | $ 7,040.78 |
| RITE AID HDQTRS. CORP. | EX DESIGN, LLC | $ - | $ (517.84) | $ (517.84) | $ (517.84) | $ (517.84) |
| RITE AID HDQTRS. CORP. | EX HOLDCO, LLC | $ - | $ (3,006.10) | $ (3,006.10) | $ (3,006.10) | $ (3,006.10) |
| RITE AID HDQTRS. CORP. | EX OPTIONS, LLC | $ (18,921,187.07) | $ (66,066,022.92) | $ (64,808,777.18) | $ (150,795,053.03) | $ (146,297,545.16) |
| RITE AID HDQTRS. CORP. | EX PHARMACY, LLC | $ - | $ 24,618.46 | $ 24,618.46 | $ 232,088.36 | $ 232,088.36 |
| RITE AID HDQTRS. CORP. | EX SOFTWARE, LLC | $ 42,980.00 | $ 43,638.93 | $ 44,146.52 | $ 49,351.12 | $ 49,351.12 |

Rite Aid Corporation    Lead Case Number: 25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**Part 2 Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider[1]

| Debtor | Trading Partner | FY25 - Q1 Net Position[2] | FY25 - Q2 Net Position[2] | FY25 - Q3 Net Position[2] | FY25 - Q4 Net Position[2] | Petition Date Net Position[2] |
|---|---|---|---|---|---|---|
| RITE AID HDQTRS. CORP. | EX SOLUTIONS OF MO, LLC | $ - | $ 3,733.13 | $ 3,733.13 | $ 33,219.70 | $ 33,219.70 |
| RITE AID HDQTRS. CORP. | EX SOLUTIONS OF NV, LLC | $ (4,745,506.89) | $ (4,729,316.97) | $ (4,729,316.97) | $ (4,601,441.76) | $ (4,601,441.76) |
| RITE AID HDQTRS. CORP. | EX SOLUTIONS OF OH, LLC | $ 48,114.50 | $ 129,283.28 | $ 159,663.91 | $ 391,516.11 | $ 391,516.11 |
| RITE AID HDQTRS. CORP. | FIRST FLORIDA INSURERS OF TAMPA, LLC | $ - | $ 2,663.57 | $ 2,663.57 | $ 23,702.03 | $ 23,702.03 |
| RITE AID HDQTRS. CORP. | GENOVESE DRUG STORES, INC. | $ 99,275,863.79 | $ 93,289,156.79 | $ 68,457,381.42 | $ 84,610,787.77 | $ 84,397,855.15 |
| RITE AID HDQTRS. CORP. | HARCO, INC. | $ 107,114,727.96 | $ 107,113,550.96 | $ 107,128,875.98 | $ 107,128,875.98 | $ 107,128,875.98 |
| RITE AID HDQTRS. CORP. | HEALTH DIALOG SERVICES CORPORATION | $ (62,457,645.78) | $ (64,237,080.32) | $ (65,127,224.61) | $ (339,008.64) | $ - |
| RITE AID HDQTRS. CORP. | HUNTER LANE, LLC | $ 196,986.36 | $ 235,383.66 | $ 235,383.66 | $ 4,695,653.82 | $ 148,175.99 |
| RITE AID HDQTRS. CORP. | JCG HOLDINGS (USA), INC. | $ 2,428.29 | $ 2,428.29 | $ 2,428.29 | $ 2,428.29 | $ 2,428.29 |
| RITE AID HDQTRS. CORP. | JUNIPER RX, LLC | $ (322,598.83) | $ (322,598.83) | $ (322,598.83) | $ (322,598.83) | $ (322,598.83) |
| RITE AID HDQTRS. CORP. | K & B ALABAMA CORPORATION | $ 3,085,242.66 | $ 3,085,242.66 | $ 3,085,242.66 | $ 76,983,812.79 | $ 74,335,398.11 |
| RITE AID HDQTRS. CORP. | K & B LOUISIANA CORPORATION | $ 24,316,607.89 | $ 24,316,551.90 | $ 24,316,551.90 | $ 24,316,551.90 | $ 24,316,551.90 |
| RITE AID HDQTRS. CORP. | K & B MISSISSIPPI CORPORATION | $ 26,207,064.30 | $ 26,207,064.30 | $ 26,207,064.30 | $ 26,207,064.30 | $ 26,207,064.30 |
| RITE AID HDQTRS. CORP. | K & B TENNESSEE CORPORATION | $ 5,277,717.30 | $ 5,277,717.30 | $ 5,277,717.30 | $ 5,277,717.30 | $ 5,277,717.30 |
| RITE AID HDQTRS. CORP. | K & B, INCORPORATED | $ (1,125.00) | $ (1,125.00) | $ (1,125.00) | $ (1,125.00) | $ (1,125.00) |
| RITE AID HDQTRS. CORP. | K&B SERVICES, INCORPORATED | $ (175.00) | $ (175.00) | $ (175.00) | $ (175.00) | $ (175.00) |
| RITE AID HDQTRS. CORP. | K&B TEXAS CORPORATION | $ (98,025.20) | $ (98,025.20) | $ (98,025.20) | $ (98,025.20) | $ (98,025.20) |
| RITE AID HDQTRS. CORP. | LANE DRUG COMPANY | $ 28,260,707.80 | $ 90,520,402.23 | $ 72,176,851.97 | $ 76,983,812.79 | $ 74,335,398.11 |
| RITE AID HDQTRS. CORP. | MAXI DRUG INC | $ 441,162,956.83 | $ 438,718,677.68 | $ 430,431,320.82 | $ 10,375,581.42 | $ 9,035,264.74 |
| RITE AID HDQTRS. CORP. | MAXI DRUG NORTH INC | $ 77,377,056.19 | $ 72,811,892.11 | $ 60,749,645.03 | $ 75,720,634.02 | $ 76,189,066.12 |
| RITE AID HDQTRS. CORP. | MAXI DRUG SOUTH LP | $ 67,923,058.44 | $ 67,923,058.44 | $ 67,923,058.44 | $ 67,923,058.44 | $ 67,923,058.44 |
| RITE AID HDQTRS. CORP. | MAXI GREEN INC | $ 103,009,523.55 | $ 102,050,151.23 | $ 99,670,612.65 | $ 104,410,567.23 | $ 104,474,129.84 |
| RITE AID HDQTRS. CORP. | PDS-1 MICHIGAN, INC. | $ 3,242,149.10 | $ 13,390,026.37 | $ 10,454,773.08 | $ 10,774,017.03 | $ 10,283,344.92 |
| RITE AID HDQTRS. CORP. | PERRY DRUG STORES, INC. | $ 66,489,647.13 | $ 158,654,799.99 | $ 131,585,969.24 | $ 133,369,417.75 | $ 127,087,306.17 |
| RITE AID HDQTRS. CORP. | PJC DISTRIBUTION INC | $ 33,599,712.27 | $ 33,599,712.27 | $ 33,599,712.27 | $ 33,599,712.27 | $ 33,599,712.27 |
| RITE AID HDQTRS. CORP. | PJC LEASE HOLDINGS | $ (4,984.20) | $ (4,984.20) | $ (4,984.20) | $ (4,984.20) | $ (4,984.20) |
| RITE AID HDQTRS. CORP. | PJC OF MASSACHUSETTS INC | $ (3,299.20) | $ (3,299.20) | $ (3,299.20) | $ (3,299.20) | $ (3,299.20) |
| RITE AID HDQTRS. CORP. | PJC OF RHODE ISLAND INC | $ (3,614.20) | $ (3,614.20) | $ (3,614.20) | $ (3,614.20) | $ (3,614.20) |
| RITE AID HDQTRS. CORP. | PJC OF VERMONT INC | $ (7,814.23) | $ (7,814.23) | $ (7,814.23) | $ (7,814.23) | $ (7,814.23) |
| RITE AID HDQTRS. CORP. | PJC REALTY CO INC | $ 9,710,754.04 | $ 9,713,088.14 | $ 9,712,894.80 | $ 9,712,047.10 | $ 9,712,501.10 |
| RITE AID HDQTRS. CORP. | PJC REALTY MA INC | $ 146,130.81 | $ 146,130.81 | $ 146,130.81 | $ 146,130.81 | $ 146,130.81 |
| RITE AID HDQTRS. CORP. | PJC SPECIALTY REALTY HOLDINGS INC | $ 7,880,428.18 | $ 7,880,428.18 | $ 7,880,428.18 | $ 7,880,428.18 | $ 7,880,428.18 |
| RITE AID HDQTRS. CORP. | RA HEADQUARTERS FUNDING, INC | $ (3,349.50) | $ (3,349.50) | $ (3,349.50) | $ (3,349.50) | $ (3,349.50) |
| RITE AID HDQTRS. CORP. | RC OF DC LLC | $ (1,875.00) | $ (1,875.00) | $ (1,875.00) | $ (1,875.00) | $ (1,875.00) |
| RITE AID HDQTRS. CORP. | RC OF DE LLC | $ (848,524.19) | $ (848,524.19) | $ (848,524.19) | $ (848,524.19) | $ (848,524.19) |
| RITE AID HDQTRS. CORP. | RC OF MD LLC | $ (1,335,669.27) | $ (1,335,669.27) | $ (1,335,669.27) | $ (1,335,669.27) | $ (1,335,669.27) |
| RITE AID HDQTRS. CORP. | RC OF PA LLC | $ (16,107,011.67) | $ (16,107,011.67) | $ (16,107,011.67) | $ (16,107,011.67) | $ (16,107,011.67) |
| RITE AID HDQTRS. CORP. | RC OF VA LLC | $ (416,304.20) | $ (416,304.20) | $ (416,304.20) | $ (416,304.20) | $ (416,304.20) |
| RITE AID HDQTRS. CORP. | RC US, LLC | $ (900.00) | $ (900.00) | $ (900.00) | $ (900.00) | $ (900.00) |
| RITE AID HDQTRS. CORP. | RCMH, LLC | $ 14,144,919.88 | $ 14,144,919.88 | $ 14,142,068.68 | $ 14,142,068.68 | $ 14,142,068.68 |
| RITE AID HDQTRS. CORP. | RDS DETROIT, INC. | $ (383,908.20) | $ 2,656,663.37 | $ 2,321,357.09 | $ 2,484,687.33 | $ 2,266,243.73 |
| RITE AID HDQTRS. CORP. | REDI ASSOC INC | $ 5,415,958.61 | $ 5,415,958.61 | $ 5,415,958.61 | $ 5,415,958.61 | $ 5,415,958.61 |
| RITE AID HDQTRS. CORP. | REDI-CLINIC | $ (49,876,545.99) | $ (49,876,545.99) | $ (49,877,415.11) | $ (49,877,415.11) | $ (49,877,415.11) |
| RITE AID HDQTRS. CORP. | RITE AID CORPORATION | $ (4,393,038,618.44) | $ (4,787,637,359.77) | $ (4,727,305,226.48) | $ (4,291,643,428.08) | $ (4,288,739,389.40) |
| RITE AID HDQTRS. CORP. | RITE AID DRUG PALACE, INC. | $ 15,328,357.36 | $ 15,477,800.69 | $ 12,468,594.95 | $ 15,197,337.38 | $ 14,878,555.88 |
| RITE AID HDQTRS. CORP. | RITE AID LEASE MANAGEMENT CO | $ (6,433,155.14) | $ (6,433,182.47) | $ (6,433,196.81) | $ (6,433,253.59) | $ (6,433,253.59) |
| RITE AID HDQTRS. CORP. | RITE AID OF CONNECTICUT, INC. | $ 50,682,179.28 | $ 49,626,346.75 | $ 43,770,763.69 | $ 48,559,613.85 | $ 48,591,345.44 |
| RITE AID HDQTRS. CORP. | RITE AID OF DELAWARE, INC. | $ 14,159,930.36 | $ 11,976,896.73 | $ 685,104.03 | $ 11,712,859.79 | $ 11,099,300.64 |
| RITE AID HDQTRS. CORP. | RITE AID OF GEORGIA, INC. | $ 105,149,512.92 | $ 105,149,517.69 | $ 105,149,517.69 | $ 105,358,476.69 | $ 105,358,476.69 |
| RITE AID HDQTRS. CORP. | RITE AID OF INDIANA, INC. | $ 18,864,489.19 | $ 18,864,697.23 | $ 18,864,697.23 | $ 18,864,697.23 | $ 18,864,697.23 |
| RITE AID HDQTRS. CORP. | RITE AID OF KENTUCKY, INC. | $ 192,835,370.65 | $ 192,835,357.93 | $ 192,833,869.43 | $ 192,831,036.43 | $ 192,831,036.43 |
| RITE AID HDQTRS. CORP. | RITE AID OF MAINE, INC. | $ 238,497,957.23 | $ 238,497,957.23 | $ 238,498,171.43 | $ 238,497,957.23 | $ 238,497,957.23 |
| RITE AID HDQTRS. CORP. | RITE AID OF MARYLAND, INC. | $ (60,617,417.24) | $ (91,109,913.63) | $ (16,421,634.51) | $ (77,831,586.72) | $ (40,990,917.21) |
| RITE AID HDQTRS. CORP. | RITE AID OF MICHIGAN, INC. | $ 18,249,628.69 | $ 141,847,335.98 | $ 119,728,977.60 | $ 132,203,891.11 | $ 128,496,018.86 |
| RITE AID HDQTRS. CORP. | RITE AID OF NEW HAMPSHIRE, INC. | $ 79,090,146.02 | $ 75,229,154.62 | $ 64,882,819.57 | $ 77,396,923.00 | $ 78,056,049.08 |
| RITE AID HDQTRS. CORP. | RITE AID OF NEW JERSEY, INC. | $ 123,411,672.76 | $ 121,447,500.21 | $ 52,806,202.84 | $ 72,622,475.91 | $ 68,064,245.79 |
| RITE AID HDQTRS. CORP. | RITE AID OF NEW YORK, INC. | $ 262,993,788.54 | $ 238,729,775.38 | $ 168,648,153.07 | $ 232,570,720.30 | $ 232,731,339.11 |
| RITE AID HDQTRS. CORP. | RITE AID OF NORTH CAROLINA, INC. | $ 828,486.52 | $ 828,486.52 | $ 828,486.52 | $ 828,486.52 | $ 828,486.52 |
| RITE AID HDQTRS. CORP. | RITE AID OF OHIO, INC. | $ 132,353,911.05 | $ 280,216,566.98 | $ 242,499,736.68 | $ 898,096,591.82 | $ 871,660,529.12 |
| RITE AID HDQTRS. CORP. | RITE AID OF PENNSYLVANIA, INC. | $ 404,660,118.97 | $ 378,646,323.79 | $ 281,166,156.44 | $ 403,082,831.15 | $ 399,817,922.02 |
| RITE AID HDQTRS. CORP. | RITE AID OF SOUTH CAROLINA, INC. | $ 689,768.22 | $ 689,768.22 | $ 689,768.22 | $ 689,768.22 | $ 689,768.22 |
| RITE AID HDQTRS. CORP. | RITE AID OF TENNESSEE, INC. | $ 36,166,210.53 | $ 36,165,930.55 | $ 36,166,449.80 | $ 36,181,530.55 | $ 36,181,530.55 |
| RITE AID HDQTRS. CORP. | RITE AID OF VERMONT, INC. | $ 30,226,666.12 | $ 30,226,666.12 | $ 30,227,183.33 | $ 30,226,666.12 | $ 30,229,666.12 |
| RITE AID HDQTRS. CORP. | RITE AID OF VIRGINIA, INC. | $ 137,446,554.58 | $ 132,476,015.79 | $ 119,014,495.61 | $ 131,101,098.59 | $ 131,080,252.11 |
| RITE AID HDQTRS. CORP. | RITE AID OF WASHINGTON D.C., INC. | $ 13,689,466.92 | $ 13,686,716.92 | $ 13,686,716.92 | $ 13,686,716.92 | $ 13,686,716.92 |
| RITE AID HDQTRS. CORP. | RITE AID OF WEST VIRGINIA, INC. | $ 194,500,417.91 | $ 194,500,417.91 | $ 194,492,175.28 | $ 194,491,531.83 | $ 194,491,531.83 |
| RITE AID HDQTRS. CORP. | RITE AID ONLINE STORE, INC. | $ (7,183,976.05) | $ (7,945,604.12) | $ (9,956,408.84) | $ (13,917,713.14) | $ (14,361,045.35) |
| RITE AID HDQTRS. CORP. | RITE AID REALTY CORP. | $ 118,000,562.36 | $ 118,072,562.36 | $ 118,144,562.36 | $ 118,208,429.36 | $ 118,256,429.36 |
| RITE AID HDQTRS. CORP. | RITE AID ROME DISTRIBUTION, INC. | $ (44,101.29) | $ (44,101.29) | $ (44,101.29) | $ (44,101.29) | $ (44,101.29) |
| RITE AID HDQTRS. CORP. | RITE AID TRANSPORT, INC. | $ (1,250.00) | $ (1,250.00) | $ (1,250.00) | $ (1,250.00) | $ (1,250.00) |
| RITE AID HDQTRS. CORP. | RITE AID INVESTMENTS CORP | $ 25,335,828.49 | $ 25,335,828.49 | $ 25,315,828.49 | $ 25,315,828.49 | $ 25,295,828.49 |
| RITE AID HDQTRS. CORP. | RX CHOICE, INC. | $ 4,139,335.82 | $ 4,139,335.82 | $ 4,139,335.82 | $ 4,139,335.82 | $ 4,139,335.82 |
| RITE AID HDQTRS. CORP. | SPECIALTY PHARMACY | $ (443,111.90) | $ (443,111.90) | $ (443,111.90) | $ (443,111.90) | $ (443,111.90) |
| RITE AID HDQTRS. CORP. | THE BARTELL DRUG COMPANY | $ (230,027,931.01) | $ (233,465,004.39) | $ (265,859,710.15) | $ (226,615,372.50) | $ (226,067,548.14) |
| RITE AID HDQTRS. CORP. | THE JEAN COUTU GROUP (PJC) USA INC | $ (918,242.17) | $ (918,242.17) | $ (918,242.17) | $ (918,242.17) | $ (918,242.17) |
| RITE AID HDQTRS. CORP. | THRIFT DRUG INC | $ 286,882,709.50 | $ 267,716,308.72 | $ 202,329,317.86 | $ 283,721,645.91 | $ 281,544,847.48 |
| RITE AID HDQTRS. CORP. | THRIFTY CORP | $ (100.00) | $ (100.00) | $ (100.00) | $ (100.00) | $ (100.00) |
| RITE AID HDQTRS. CORP. | THRIFTY PAYLESS, INC. | $ 251,918,493.45 | $ 152,872,450.11 | $ (179,547,377.31) | $ 136,538,100.89 | $ 91,471,119.96 |
| RITE AID LEASE MANAGEMENT COMPANY | RITE AID HDQTRS. CORP. | $ 6,433,155.14 | $ 6,433,182.47 | $ 6,433,196.81 | $ 6,433,253.59 | $ 6,433,253.59 |
| RITE AID OF CONNECTICUT, INC. | RITE AID HDQTRS. CORP. | $ (50,682,179.28) | $ (49,626,346.75) | $ (43,770,763.69) | $ (48,559,613.85) | $ (48,591,345.44) |

Rite Aid Corporation

Lead Case Number: 25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

Part 2 Question 4: Payments or other transfers of property made within 1 year before filing this case that benefited any insider[1]

| Debtor | Trading Partner | FY25 - Q1 Net Position[2] | FY25 - Q2 Net Position[2] | FY25 - Q3 Net Position[2] | FY25 - Q4 Net Position[2] | Petition Date Net Position[2] |
|---|---|---|---|---|---|---|
| RITE AID OF DELAWARE, INC. | RITE AID HDQTRS. CORP. | $ (14,159,930.36) | $ (11,976,896.73) | $ (685,104.03) | $ (11,712,859.79) | $ (11,099,300.64) |
| RITE AID OF GEORGIA, INC. | RITE AID HDQTRS. CORP. | $ (105,149,512.92) | $ (105,149,517.69) | $ (105,149,517.69) | $ (105,358,476.69) | $ (105,358,476.69) |
| RITE AID OF INDIANA, INC. | RITE AID HDQTRS. CORP. | $ (18,864,489.19) | $ (18,864,697.23) | $ (18,864,697.23) | $ (18,864,697.23) | $ (18,864,697.23) |
| RITE AID OF KENTUCKY, INC. | RITE AID HDQTRS. CORP. | $ (192,835,370.65) | $ (192,835,357.93) | $ (192,833,869.43) | $ (192,831,036.43) | $ (192,831,036.43) |
| RITE AID OF MAINE, INC. | RITE AID HDQTRS. CORP. | $ (238,497,957.23) | $ (238,497,957.23) | $ (238,498,171.43) | $ (238,497,957.23) | $ (238,497,957.23) |
| RITE AID OF MARYLAND, INC. | RITE AID HDQTRS. CORP. | $ 60,617,417.24 | $ 91,109,913.63 | $ 16,421,634.51 | $ 77,831,586.72 | $ 40,990,917.21 |
| RITE AID OF MICHIGAN, INC. | RITE AID HDQTRS. CORP. | $ (18,249,628.69) | $ (141,847,335.98) | $ (119,728,977.60) | $ (132,203,891.11) | $ (128,496,018.86) |
| RITE AID OF NEW HAMPSHIRE, INC. | RITE AID HDQTRS. CORP. | $ (79,090,146.02) | $ (75,229,154.62) | $ (64,882,819.57) | $ (77,396,923.00) | $ (78,056,049.08) |
| RITE AID OF NEW JERSEY, INC. | RITE AID HDQTRS. CORP. | $ (123,411,672.76) | $ (121,447,500.21) | $ (52,806,202.84) | $ (72,622,475.91) | $ (68,064,245.79) |
| RITE AID OF NEW YORK, INC. | RITE AID HDQTRS. CORP. | $ (262,993,788.54) | $ (238,729,775.38) | $ (168,648,153.07) | $ (232,570,720.30) | $ (232,731,339.11) |
| RITE AID OF NORTH CAROLINA, INC. | RITE AID HDQTRS. CORP. | $ (828,486.52) | $ (828,486.52) | $ (828,486.52) | $ (828,486.52) | $ (828,486.52) |
| RITE AID OF OHIO, INC. | RITE AID HDQTRS. CORP. | $ (132,353,911.05) | $ (280,216,566.98) | $ (242,499,736.68) | $ (898,096,591.82) | $ (871,660,529.12) |
| RITE AID OF PENNSYLVANIA, LLC | RITE AID HDQTRS. CORP. | $ (404,660,118.97) | $ (378,646,323.79) | $ (281,166,156.44) | $ (403,082,831.15) | $ (399,817,922.02) |
| RITE AID OF SOUTH CAROLINA, INC. | RITE AID HDQTRS. CORP. | $ (689,768.22) | $ (689,768.22) | $ (689,768.22) | $ (689,768.22) | $ (689,768.22) |
| RITE AID OF TENNESSEE, INC. | RITE AID HDQTRS. CORP. | $ (36,166,210.53) | $ (36,165,930.55) | $ (36,166,449.80) | $ (36,181,530.55) | $ (36,181,530.55) |
| RITE AID OF VERMONT, INC. | RITE AID HDQTRS. CORP. | $ (30,226,666.12) | $ (30,226,666.12) | $ (30,227,183.33) | $ (30,226,666.12) | $ (30,229,666.12) |
| RITE AID OF VIRGINIA, INC. | RITE AID HDQTRS. CORP. | $ (137,446,554.56) | $ (132,476,015.79) | $ (119,014,495.61) | $ (131,101,098.59) | $ (131,080,252.11) |
| RITE AID OF WASHINGTON, D.C. INC. | RITE AID HDQTRS. CORP. | $ (13,689,466.92) | $ (13,686,716.92) | $ (13,686,716.92) | $ (13,686,716.92) | $ (13,686,716.92) |
| RITE AID OF WEST VIRGINIA, INC. | RITE AID HDQTRS. CORP. | $ (194,500,417.91) | $ (194,500,417.91) | $ (194,492,175.28) | $ (194,491,531.83) | $ (194,491,531.83) |
| RITE AID ONLINE STORE, INC. | RITE AID HDQTRS. CORP. | $ 7,183,976.05 | $ 7,945,604.12 | $ 9,956,408.84 | $ 13,917,713.14 | $ 14,361,045.35 |
| RITE AID REALTY CORP. | RITE AID HDQTRS. CORP. | $ (118,000,562.36) | $ (118,072,562.36) | $ (118,144,562.36) | $ (118,208,429.36) | $ (118,256,429.36) |
| RITE AID ROME DISTRIBUTION CENTER, INC. | RITE AID HDQTRS. CORP. | $ 44,101.29 | $ 44,101.29 | $ 44,101.29 | $ 44,101.29 | $ 44,101.29 |
| RITE AID SPECIALTY PHARMACY, LLC | RITE AID HDQTRS. CORP. | $ 443,111.90 | $ 443,111.90 | $ 443,111.90 | $ 443,111.90 | $ 443,111.90 |
| RITE AID TRANSPORT, INC. | RITE AID HDQTRS. CORP. | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 |
| RITE INVESTMENTS CORP. | RITE AID HDQTRS. CORP. | $ (25,335,828.49) | $ (25,335,828.49) | $ (25,315,828.49) | $ (25,315,828.49) | $ (25,295,828.49) |
| RX CHOICE, INC. | RITE AID HDQTRS. CORP. | $ (4,139,335.82) | $ (4,139,335.82) | $ (4,139,335.82) | $ (4,139,335.82) | $ (4,139,335.82) |
| THE BARTELL DRUG COMPANY | RITE AID HDQTRS. CORP. | $ 230,027,931.01 | $ 233,465,004.39 | $ 265,859,710.15 | $ 226,615,372.50 | $ 226,067,548.14 |
| THE JEAN COUTU GROUP (PJC) USA, INC. | RITE AID HDQTRS. CORP. | $ 918,242.17 | $ 918,242.17 | $ 918,242.17 | $ 918,242.17 | $ 918,242.17 |
| THE LANE DRUG COMPANY | RITE AID HDQTRS. CORP. | $ (28,260,707.80) | $ (90,520,402.23) | $ (72,176,851.97) | $ (76,983,812.79) | $ (74,335,398.11) |
| THRIFTY DRUG, INC. | RITE AID HDQTRS. CORP. | $ (286,882,709.50) | $ (267,716,308.72) | $ (202,329,317.86) | $ (283,721,645.91) | $ (281,544,847.48) |
| THRIFTY CORPORATION | RITE AID HDQTRS. CORP. | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 |
| THRIFTY PAYLESS, INC. | RITE AID HDQTRS. CORP. | $ (251,918,493.45) | $ (152,872,450.11) | $ 179,547,377.31 | $ (136,538,100.89) | $ (91,471,119.96) |

[1] The schedule reflects only entities that had or have quarter end balances.

[2] Receivable / (Payable)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| 1199 SEIU CASE NO. 01-22-0002-9515 LABOR ARBITRATION | 01-22-0002-955 | LABOR ARBITRATION | NA | Pending |
| ABSORPTION PHARMACEUTICALS VS RITE AID | 2018-04942 | LITIGATION | COURT OF COMMON PLEAS OF CUMBERLAND COUNTY, PENNSYLVANIA 1 COURTHOUSE SQ CARLISLE, 17013 | Pending |
| ALBRIGHT, MICHAEL V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| AMATY, SARAH V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| BAKIS, LUANNE V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| BARTLEY, CHRISTINA V. RITE AID | 22CV02189 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF ALAMEDA 2233 SHORE LINE DR ALAMEDA, 94501 | Pending |
| BELCHER, CHAZMIN V. RITE AID | 202400132 | NON-LITIGATED DISPUTE | PENNSYLVANIA HUMAN RELATIONS COMMISSION 333 MARKET ST, 8TH FLOOR HARRISBURG, 17101 | Pending |
| BENDERSON DELAWARE LITIGATION | N23C-01-084-MMJ | LITIGATION | SUPERIOR COURT OF THE STATE OF DELAWARE 500 NORTH KING ST WILMINGTON, 19801 | Pending |
| BIANUCCI (MARGARET) V. RITE AID CORPORATION | 2:24-CV-03356-HB | LITIGATION | US DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Pending |
| BLOEM, LLC, D/B/A BLOEM LIVING V. RITE AID. CORP. | NO. 2025-04500 | LITIGATION | PA COURT OF COMMON PLEAS (CUMBERLAND CITY.) 1 COURTHOUSE SQ CARLISLE, 17013 | Pending |
| BOARD OF PHARMACY DISIPLINARY HEARING - PETERBOROUGH NH STORE #0716 | 24-PHARM-005 | NON-LITIGATED DISPUTE | STATE OF NEW HAMPSHIRE OFFICE OF PROFESSIONAL LICENSURE AND CERTIFICATION, BOARD OF PHARMACY 7 EAGLE SQUARE CONCORD, 03301 | Pending |
| BOOKS & RECORDS REQUEST RE: ELIXIR IMPAIRMENT | NA | NON-LITIGATED DISPUTE | NA | Pending |
| BOROUGH OF STEELTON PA | QOL000018476 | VIOLATIONS | BOROUGH OF STEELTON, PA 123 NORTH FRONT ST STEELTON, 17113 | Concluded |
| BRADLEY, CLAUDIA V. RITE AID (EEOC CHARGE) | 551-2025-00652 | EMPLOYMENT | WASHINGTON STATE HUMAN RIGHTS COMMISSION 711 S CAPITOL WAY STE 402 OLYMPIA, 98501 | Pending |
| BRAND DESIGN COMPANY V. RITE AID (HOUSE INDUSTRIES) | 2:22-CV-01174 | LITIGATION | US DISTRICT COURT FOR EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Concluded |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| BROOKS, TOREE V. RITE AID | 202312-22900808 | NON-LITIGATED DISPUTE | STATE OF CALIFORNIA CIVIL RIGHTS DEPARTMENT 651 BANNON ST STE 200 SACRAMENTO, 95811 | Concluded |
| BRYANT, CHANTEZ VS. RITE AID | 10231549 | NON-LITIGATED DISPUTE | NEW YORK STATE, DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| BULLOCK V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| BURCHETT, JAMILLAH VS RITE AID (NY HR CHARGE) | 10233012 | EMPLOYMENT | NYS DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| BURKHARD, JODI VS. RITE AID CORPORATION | NA | NON-LITIGATED DISPUTE | NA | Pending |
| CALDWELL, JODY V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| CALIFORNIA AG COMPLAINT - STORE # 6091 | 7421 | LITIGATION | ATTORNEY GENERAL OF CALIFORNIA, LICENSING SECTION ATTN: PUBLIC INQUIRY UNIT PO BOX 944255 SACRAMENTO, 94244 | Concluded |
| CENTER FOR ENVIRONMENTAL HEALTH V. THE VITA COCO COMPANY, INC., RITE AID, NAME RITE, ET.AL. | CGC-25-623029 | GENERAL | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO 400 MCALLISTER ST SAN FRANCISCO, 94102 | Pending |
| CHAZMIN BELCHER (PHRC COMPLAINT) - DIP | NA | GENERAL | PENNSYLVANIA HUMAN RELATIONS COMMISSION 333 MARKET ST, 8TH FLOOR HARRISBURG, 17101 | Pending |
| CITY OF PHILADELPHIA (SANITATION VIOLATION) | NA | VIOLATIONS | NA | Concluded |
| CIVIL INVESTIGATIVE DEMAND - FTC FILE NO. 221-0158 | 221-0158 | INVESTIGATION | UNITED STATES OF AMERICA, FEDERAL TRADE COMMISSION 600 PENNSYLVANIA AVE NW WASHINGTON, 20580 | Concluded |
| CLAUDE V. RITE AID CORPORATION | 2:24-CV-8057 | LITIGATION | US DISTRICT COURT, DISTRICT OF NEW JERSEY MITCHELL H COHEN BUILDING & US COURTHOUSE 4TH & COOPER STS CAMDEN, 08101 | Concluded |
| CONSUMER PROTECTION GROUP V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| CORONA ADMINISTRATIVE CITATIONS - OUTSTANDING SANITATION VIOLATION NOTICE | NA | VIOLATIONS | NA | Concluded |
| CREAMER, BYRON V. RITE AID (CLASS ACTION) | MCV085951 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF MADERA 200 SOUTH G ST MADERA, 93637 | Pending |
| DALICANDRO VS RITE AID | 2109024421 | LITIGATION | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY 1401 ARCH STEET PHILADELPHIA, 19102 | Concluded |

Case 25-14861-NWB   Doc 1927-11   Filed 08/15/25   Entered 08/15/25 20:50:31   Desc
Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy   Page 43 of 62

Debtor Name: Rite Aid Corporation                                          Case Number: 25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| DAVIA V. ROYAL CREST HOME PRODUCTS AND RITE AID | CV0001931 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF MARIN 3501 CIVIC CENTER DR SAN RAFAEL, 94903 | Pending |
| DAVIS (DAVID) V. RITE AID | MSC010731 | LITIGATION | SUPERIOR COURT OF CALIFORNIA, COUNTY OF MADERA 200 SOUTH G ST MADERA, 93637 | Pending |
| DAVIS, CAPRI V. RITE AID (EEOC CHARGE) | 533-2024-01759 | EMPLOYMENT | PENNSYLVANIA HUMAN RELATIONS COMMISSION 333 MARKET ST, 8TH FLOOR HARRISBURG, 17101 | Pending |
| DEPARTMENT OF BUILDING AND SAFETY (CITY OF LOS ANGELES) INSPECTION FEE STORE #5573 | NA | VIOLATIONS | NA | Concluded |
| DIALLO, ALIOU VS. RITE AID | 202300362 OGRC 17F202360915 - EEOC | NON-LITIGATED DISPUTE | PENNSYLVANIA HUMAN RELATIONS COMMISSION 333 MARKET ST, 8TH FLOOR HARRISBURG, 17101 | Pending |
| DIAZ (ALEJANDRO) V. WEC 98G-1 LP ET AL. | 24STLC03617 | INVESTIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES 111 N HILL ST LOS ANGELES, 90012 | Concluded |
| DIAZ, MAGDALENA V. RITE AID | 480-2024-03677 | NON-LITIGATED DISPUTE | CALIFORNIA CIVIL RIGHTS DEPARTMENT 651 BANNON ST STE 200 SACRAMENTO, 95811 | Pending |
| DISPUTE WITH 32-14 31ST FOOD LLC (STORE #39858 ASTORIA, NY) | 716051-2024 | NON-LITIGATED DISPUTE | NA | Pending |
| EBONY BATES APPEAL | NA | GENERAL | NA | On Appeal |
| EDWARDS (KATHRYN) V. RITE AID | 2:24-CV-03691-HB | LITIGATION | US DISTRICT COURT FOR EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Pending |
| ELBA POPPITI V. RITE AID CORPORATION | 1:23-CV-03914 | LITIGATION | FEDERAL DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK 500 PEARL ST NEW YORK, 10007 | Pending |
| FARAGALLAH, MICHAEL V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| FILARDI, PATRICIA (CA LITIGATION) - DIP STORE #6255 | 23AHCV02535 | GENERAL | SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES 111 N HILL ST LOS ANGELES, 90012 | Concluded |
| FILARDI, PATRICIA V. RITE AID CORPORATION | 23AHCV02535 | NON-LITIGATED DISPUTE | SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES 111 N HILL ST LOS ANGELES, 90012 | Concluded |
| FINANCE COMMISSION OF NEW YORK - SANITATION PROVISIONS | NA | VIOLATIONS | NA | Concluded |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| FINANCE COMMISSION OF NEW YORK - SANITATION PROVISIONS | NA | VIOLATIONS | NA | Concluded |
| FINNERAN V. RITE AID | NA | GENERAL | NA | Concluded |
| FONN, SHALINI V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Pending |
| FTC CID 241005 | 241005 | INVESTIGATION | FEDERAL TRADE COMMISSION 600 PENNSYLVANIA AVE NW WASHINGTON, 20580 | Pending |
| GANNON, DAWN V. RITE AID | 24-WG-00223 | NON-LITIGATED DISPUTE | STATE OF NEW HAMPSHIRE, DEPT. OF LABOR 95 PLEASANT ST SPAULDING BUILDING CONCORD, 03301 | Concluded |
| GORMAN V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Pending |
| GUEVARA, MATTHEW V. RITE AID | NA | POTENTIAL DISPUTE - NO NEW MATTERS | NA | Pending |
| HALE (JIMMY RAY) V. RITE AID CORPORATION | 2:24-CV-03885 | LITIGATION | US DISTRICT COURT FOR EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Pending |
| HERRERA, LORI V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| HILBERT VS RITE AID | 1493 | LITIGATION | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY 1401 ARCH STEET PHILADELPHIA, 19102 | Concluded |
| HILDENBRAND, KENNETH V. RITE AID | NA | NON-LITIGATED DISPUTE | STATE OF CALIFORNIA, DEPARTMENT OF INDUSTRIAL RELATIONS, LABOR COMMISSIONERS OFFICE 2031 HOWE AVE STE 100 SACRAMENTO, 95825 | Pending |
| HILLARD V. RITE AID STORE #5620 | 25CU010595C | GENERAL | SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO 1100 UNION ST SAN DIEGO, 92101 | Pending |
| HULL V. RITE AID STORE #5512 | 24CMCV01465 | ADA TITLE III | SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF LOS ANGELES 111 N HILL ST LOS ANGELES, 90012 | Concluded |
| HUMENSKI, CHRISTOPHER V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| HUNSINGER, STEPHANIE V. RITE AID (CHARGE) | 20202223 | NON-LITIGATED DISPUTE | PENNSYLVANIA HUMAN RELATIONS COMMISSION 333 MARKET ST, 8TH FLOOR HARRISBURG, 17101 | Pending |
| INCARDONA, MARY V. RITE AID | 10235543 | NON-LITIGATED DISPUTE | NEW YORK STATE DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| INNOVATIVE FACILITY SOLUTIONS - LETTER OF INTENT TO SUE | NA | NON-LITIGATED DISPUTE | NA | Pending |
| IRWIN, ENRICO V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| IV RETAIL AND ECOMMERCE PATENT LICENSING PROGRAM DISPUTE | NA | NON-LITIGATED DISPUTE | NA | Pending |
| JACKSON, MATTHEW V. RITE AID (EEOC CHARGE) | 533-2025-00617 | EMPLOYMENT | PENNSYLVANIA HUMAN RELATIONS COMMISSION 333 MARKET ST, 8TH FLOOR HARRISBURG, 17101 | Concluded |
| JAMES, BRENTON V. RITE AID | NA | POTENTIAL DISPUTE - NO NEW MATTERS | NA | Pending |
| JENNETT, CHARLES V. RITE AID | STEMDV240226-403 17 | NON-LITIGATED DISPUTE | STATE OF OREGON, BUREAU OF LABOR & INDUSTRIES 1800 SW 1ST AVE STE 500 PORTLAND, 97201 | Concluded |
| JIMINEZ VS RITE AID | 2109019567 | LITIGATION | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY 1401 ARCH STEET PHILADELPHIA, 19102 | Concluded |
| JOHNSON, KENT V. RITE AID | NA | POTENTIAL DISPUTE - NO NEW MATTERS | NA | Pending |
| JUAN HUERTA ARBITRATION | NA | EMPLOYMENT | NA | Pending |
| JUDKA (ERICA) V. RITE AID CORPORATION | 2:24-CV-03381-HB | LITIGATION | US DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Pending |
| KARN, TIMOTHY V. RITE AID | 202312-23014319 | NON-LITIGATED DISPUTE | STATE OF CALIFORNIA, CIVIL RIGHTS DEPARTMENT 651 BANNON ST STE 200 SACRAMENTO, 95811 | Concluded |
| KMIECIAK (RANDALL) V. GLAXOSMITHKLINE LLC, ET AL. | 2109020293 | LITIGATION | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY 1401 ARCH STEET PHILADELPHIA, 19102 | Concluded |
| KONOVAL, TAMARA - FMLA RETALIATION/AGE DISCRIMINATION | CIV SB 2302414 | LITIGATION | SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN BERNARDINO 247 WEST THIRD ST SAN BERNARDINO, 92415 | Pending |
| KUTSCHER, LUCY V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| LISA KITTERMAN | NA | GENERAL | NA | Pending |
| LOFTON, DWAYNE V. RITE AID | 643912 | NON-LITIGATED DISPUTE | MICHIGAN DEPARTMENT OF CIVIL RIGHTS AND US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION 3054 E GRAND BLVD DETROIT, 48202 | Concluded |
| LOLITA MADDOCK SPANN | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| LUTHER, TINA V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| M. GARZA VS. RITE AID CORPORATION | NA | DISCLOSURE OF PRIVATE INFORMATION | SUPERIOR COURT OF CALIFORNIA 4100 MAIN STREET RIVERSIDE, 92501 | Concluded |
| MACK, ALICIA V. RITE AID | 550-2024-02182 | NON-LITIGATED DISPUTE | CALIFORNIA CIVIL RIGHTS DEPARTMENT 651 BANNON ST STE 200 SACRAMENTO, 95811 | Concluded |

Debtor Name: Rite Aid Corporation

Case Number: 25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| MARSHALL-SANDERS, SONYA V. RITE AID | C-67405426 | LITIGATION | 19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA 300 NORTH BLVD BATON ROUGE, 70802 | Pending |
| MCLEAN, DAVID V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Pending |
| MIGAJ, DIANA V. RITE AID | NA | NON-LITIGATED DISPUTE | NEW YORK STATE, DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| MINOR, RICKITA V. RITE AID OF NEW YORK | 10216519 | NON-LITIGATED DISPUTE | NEW YORK STATE DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| MITCHELL (JOHNNY) V. RITE AID - NOTICE OF JUDGMENT | SC-25-03-03-3420 | LITIGATION | PHILADELPHIA MUNICIPAL COURT 1339 CHESTNUT ST PHILADELPHIA, 19107 | Pending |
| MITCHELL, SHELLY | 16D-2024-00168 | NON-LITIGATED DISPUTE | NEW HAMPSHIRE COMMISSION FOR HUMAN RIGHTS 57 REGIONAL DR STE 8 CONCORD, 03301 | Pending |
| MITCHELL, SHELLY V. RITE AID | 16D-2024-00168 | NON-LITIGATED DISPUTE | NEW HAMPSHIRE COMMISSION FOR HUMAN RIGHTS 57 REGIONAL DR STE 8 CONCORD, 03301 | Concluded |
| MORENO, BRENDA V. RITE AID | CIV SB 2134098 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY SAN BERNARDINO 247 WEST THIRD ST SAN BERNARDINO, 92415 | Pending |
| NACAMULI, MAURICIA V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| NAS ADVERSARY PROCEEDING | NA | GENERAL | NA | On Appeal |
| NAS APPEAL | NA | GENERAL | NA | On Appeal |
| NGO, JENNY V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Pending |
| NY DOL INQUIRY MATTER | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| O'CONNOR, JANEL VS RITE AID (CHARGE) | 202009-11217110 | NON-LITIGATED DISPUTE | STATE OF CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING 651 BANNON ST STE 200 SACRAMENTO, 95811 | Pending |
| OLAPLEX | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| OREGON OSHA CLAIMS - OGLETREE | 209444111 | LITIGATION | OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES, OREGON OCCUPATIONAL SAFETY AND HEALTH DIVISION 350 WINTER ST NE PO BOX 14480 SALEM, 97309 | Pending |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| OSHA NIAGARA FALLS | INSPECTION NUMBER 1577348 | LITIGATION | US DEPARTMENT OF LABOR, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION 200 CONSTITUTION AVE NW ROOM N3626 WASHINGTON, 20210 | Pending |
| PAGE (CINDY) V. RITE AID CORPORATION, ET AL. | 2:22-CV-04201-TJS | LITIGATION | US DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Pending |
| PATEL, RINA V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| PITTSBURGH, PA (STORE #10940) - LANDLORD DISPUTE | NA | REAL ESTATE MATTER | NA | Pending |
| PONCE, ANTONIO V. RITE AID CORPORATION | VCU300398 | NON-LITIGATED DISPUTE | SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF TULARE 221 S MOONEY BLVD VISALIA, 93291 | Pending |
| POWELL V. RITE AID | NA | GENERAL | NA | Pending |
| PRESCOTT (STEVEN) V. RITE AID CORPORATION | 5:22-CV-05798 | LITIGATION | US DISTRICT COURT, NORTHERN DISTRICT OF PENNSYLVANIA WILLIAM J NEALON FEDERAL BLDG & US COURTHOUSE 235 N WASHINGTON AVE SCRANTON, 18503 | Pending |
| PROP 65 - CERAMIC FOOD CONTAINERS WITH EXTERIOR DESIGNS | NA | NON-LITIGATED DISPUTE | NA | Pending |
| PROP 65 - ECOLOGICAL ALLIANCE V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| PROP 65 - ECOLOGICAL ALLIANCE V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| PROP 65 - ECOLOGICAL ALLIANCE V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| PROP 65 - ECOLOGICAL ALLIANCE V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| RAMIREZ (BRITTNEY) V. RITE AID CORPORATION | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| RAMOS, HECTOR V. RITE AID | LS10 2023002789 | NON-LITIGATED DISPUTE | NEW YORK STATE DEPARTMENT OF LABOR WA HARRIMAN CAMPUS BUILDING 12 ALBANY, 12226 | Pending |
| RAMOS-UMFREY, ELISA V. RITE AID | 10215453 | NON-LITIGATED DISPUTE | NYS DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| REALTY INCOME CORPORATION V. RITE AID | 37-2023-00054608-CU-BC-NC | GENERAL | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO 1100 UNION ST SAN DIEGO, 92101 | Pending |
| RICHARDSON, HAGIKAH V. GENOVESE DRUG STORE, INC. | 10212638 | LITIGATION | NEW YORK STATE DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |

Debtor Name:  Rite Aid Corporation                                                                                    Case Number:  25-14731

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| RICHMOND (SIMON) V. RITE AID | 3:14-CV-04839-MLC-DEA | LITIGATION | US DISTRICT COURT FOR DISTRICT OF NEW JERSEY MITCHELL H COHEN BUILDING & US COURTHOUSE 4TH & COOPER STS CAMDEN, 08101 | Pending |
| RIGGENBACH, JULIE V. RITE AID | 471-2024-01907 | NON-LITIGATED DISPUTE | MICHIGAN DEPARTMENT OF CIVIL RIGHTS 3054 WEST GRAND BLVD STE 3-600 DETROIT, 48202 | Concluded |
| RIVERA, RICHARD V. RITE AID | NA | POTENTIAL DISPUTE - NO NEW MATTERS | NA | Pending |
| ROBERT CRAIG ROSS V. RITE AID | RCI-CM-864263 | NON-LITIGATED DISPUTE | STATE OF CALIFORNIA, DEPARTMENT OF INDUSTRIAL RELATIONS 2031 HOWE AVE STE 100 SACRAMENTO, 95825 | Pending |
| ROBINSON, DESTINY V. RITE AID (CHARGE) | 10225149 | NON-LITIGATED DISPUTE | NYS DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| ROGERS, KEITH V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Pending |
| ROMERO (MAYRA) V. RITE AID | NA | LITIGATION | NA | Pending |
| RUSSELL, CHARLES V. RITE AID | 176671 | NON-LITIGATED DISPUTE | STATE OF WASHINGTON, EMPLOYMENT STANDARDS PROGRAM PO BOX 44510 OLYMPIA, 98504 | Concluded |
| RUTZINGER, JEAN V. RITE AID | 23STCV08268 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES 111 N HILL ST LOS ANGELES, 90012 | Pending |
| SAHAKIAN V. RITE AID | NA | LITIGATION | NA | Concluded |
| SAHINOVIC, SAMRA V. RITE AID | 23CV003462 | LITIGATION | NA | Pending |
| SALEH, SANHAN V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| SAMARIA, SELISHA V. RITE AID CORP. | 236932017E | LITIGATION | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF BRONX, TWELFTH JUDICIAL DISTRICT 851 GRAND CONCOURSE BRONX, 10451 | Pending |
| SANTORELLI, GINA V. RITE AID (CHARGE) | 10225723 | NON-LITIGATED DISPUTE | NYS DIVISION OF HUMAN RIGHTS, OFFICE OF SEXUAL HARASSMENT ISSUES ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| SCHEIBE, BETTY V. RITE AID | 23SCM31 | LITIGATION | SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONO 100 THOMPSON WAY MAMMOTH LAKES, 93546 | Pending |
| SHABLESKI, MICHELLE V. RITE AID | 533-2024-00382 | NON-LITIGATED DISPUTE | PENNSYLVANIA HUMAN RELATIONS COMMISSION 333 MARKET ST, 8TH FLOOR HARRISBURG, 17101 | Pending |

Case 25-14861-MBK    Doc 1927-11    Filed 06/16/25    Entered 06/16/25 20:50:38    Desc
Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    Page 49 of 62

Debtor Name: Rite Aid Corporation                                                                                  Case Number: 25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| SIMON (JASON) V. RITE AID CORPORATION | 3:2023CV00487 | LITIGATION | CIRCUIT COURT OF THE STATE OF OREGON FOR THE COUNTY OF MULTNOMAH 1200 SW 1ST AVE PORTLAND, 97204 | Pending |
| SLEAR, IRMA V. RITE AID | 202306-20898706 | NON-LITIGATED DISPUTE | STATE OF CALIFORNIA, CIVIL RIGHTS DEPARTMENT 651 BANNON ST STE 200 SACRAMENTO, 95811 | Pending |
| SPIKER (FAITH) V. RITE AID CORPORATION | 2:24-CV-03807-KBH | LITIGATION | US DISTRICT COURT FOR EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Pending |
| STATE OF CALIFORNIA EMPLOYMENT DEVELOPMENT DEPT. | NA | NON-LITIGATED DISPUTE | NA | Pending |
| STATE OF WA ATTORNEY GENERAL - CID | NA | GENERAL | OFFICE OF ATTORNEY GENERAL, STATE OF WASHINGTON 1125 WASHINGTON ST SE PO BOX 40100 OLYMPIA, 98504 | Pending |
| STORE #4812 JERSEY CITY STORE - MUNICIPAL SUMMONS | 431030 | NON-LITIGATED DISPUTE | JERSEY CITY FIRE DEPARTMENT, FIRE PREVENTION DIVISION 280 GROVE ST JERSEY CITY, 07302 | Pending |
| SUTER, JEFFREY V. RITE AID | 530-2024-02142 | NON-LITIGATED DISPUTE | PHILADELPHIA COMMISSION ON HUMAN RELATIONS 601 WALNUT ST STE 300 SOUTH PHILADELPHIA, 19106 | Concluded |
| TANDA THOMPSON V. L'OREAL USA, INC., ET AL | 230900657 | LITIGATION | COMMONWEALTH OF PENNSYLVANIA, PHILADELPHIA COUNTY 530 WALNUT ST PHILADELPHIA, 19106 | Concluded |
| TOMPKINS, IAN V. DUA & RITE AID | 2473CV00505 | NON-LITIGATED DISPUTE | BRISTOL COUNTY SUPERIOR COURT - TAUNTON 9 COURT ST TAUNTON, 02780 | Pending |
| TUCKER, NASIR V. RITE AID | 2:23-CV-02914-GJP | LITIGATION | US DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA JAMES A BYRNE US COURTHOUSE 601 MARKET ST PHILADELPHIA, 19106 | Concluded |
| UNDETERMINED | 202501362 | PERSONAL INJURY | CIVIL DISTRICT COURT 421 LOYOLA AVE NEW ORLEANS, 70112 | Concluded |
| UNDETERMINED | 250203176 | PERSONAL INJURY | COURT OF COMMON PLEAS 1400 JOHN F KENNEDY BLVD PHILADELPHIA, 19107 | Concluded |
| UNDETERMINED | 24CV083915 | PERSONAL INJURY | SUPERIOR COURT OF CALIFORNIA 4100 MAIN STREET RIVERSIDE, 92501 | Concluded |
| UNDETERMINED | 25STCV07399 | PERSONAL INJURY | SUPERIOR COURT OF CALIFORNIA 4100 MAIN STREET RIVERSIDE, 92501 | Concluded |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| UNDETERMINED | DOL FILE NO. 20-014568 | GOVERNMENTAL AUDIT | NA | Concluded |
| UNDETERMINED | E2025007316 | PERSONAL INJURY | SUPREME COURT OF NEW YORK 99 EXCHANGE BLVD # 545 ROCHESTER, 14614 | Pending |
| UNDETERMINED | GV23026743-00 | HIPAA VIOLATION | NA | Concluded |
| UNFI\ | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| VAN PRINCE APPEAL | NA | GENERAL | NA | On Appeal |
| VERCILLO, JOHN VS RITE AID (NY HR CHARGE) | NA | EMPLOYMENT | NEW YORK STATE DIVISION OF HUMAN RIGHTS ONE FORDHAM PLAZA, 4TH FLOOR BRONX, 10458 | Pending |
| VIELMAN, JASON V. RITE AID | 22STCV32612 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES 111 N HILL ST LOS ANGELES, 90012 | Pending |
| WAID, ELIZA V. RITE AID | 24-WG-00301 | NON-LITIGATED DISPUTE | STATE OF NEW HAMPSHIRE DEPARTMENT OF LABOR 95 PLEASANT ST SPAULDING BUILDING CONCORD, 03301 | Pending |
| WALKER, NICOLE V. RITE AID | 208725 | NON-LITIGATED DISPUTE | NORTH CAROLINA DEPARTMENT OF LABOR 4 WEST EDENTON ST RALEIGH, 27601 | Concluded |
| WHITAKER (BRIAN) V. 7900 SUNSET LP, ET AL. | 24STCV16795 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES 111 N HILL ST LOS ANGELES, 90012 | Concluded |
| WHITE, CHARLES - WAGE AND HOUR CLAIM | NA | NON-LITIGATED DISPUTE | CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS LABOR COMMISSIONER OFFICE AB 1513 APPLICATION CENTRALISED CASHIERING UNIT 2031 HOWE AVE STE 100 SACRAMENTO, 95825 | Concluded |
| WHITSEY, ELAINE V. RITE AID | CIV SB 027103 | LITIGATION | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN BERNARDINO 351 NORTH ARROWHEAD AVE SAN BERNARDINO, 92415 | Pending |
| WOLFE, MARK V. RITE AID | NA | NON-LITIGATED DISPUTE | NA | Concluded |
| Y. FINNERAN VS. RITE AID CORPORATION | NA | GENERAL | UNITED STATES DISTRICT COURT 312 N. SPRING ST. SUITE 1200 LOS ANGELES, 90012 | Concluded |
| YOLO - DA COMPLAINT | CV2024-0947 | ADMINISTRATIVE PROCEEDINGS | OFFICE OF THE DISTRICT ATTORNEY/COUNTY OF YOLO 301 SECOND ST WOODLAND, 95695 | Pending |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 13:** Transfers not already listed on this statement

| Creditor Name and Address | Description of Property | Relationship to Debtor | Date | Amount |
|---|---|---|---|---|
| INFOMEDIA GROUP, INC. (D/B/A CARENET HEALTH) 11845 IH 10 WEST, SUITE 400 SAN ANTONIO, TX 78230 | Sales of asset | None | 05/07/2024 | 2633275.03 |
| MEDIMPACT HEALTHCARE SYSTEMS, INC. 10181 SCRIPPS GATEWAY CT SAN DIEGO, CA 92131 | Sale of Elixir Business | None | 02/01/2024 | 1066738974 |

Debtor Name:  Rite Aid Corporation    Case Number:  25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 17:** Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?

| Name of Plan | EIN | Terminated? |
|---|---|---|
| AFLAC INC. HEALTHCARE PLAN | 23-1614034 | No |
| KAISER PERMANENTE HEALTH PLAN | 23-1614034 | No |
| RITE AID CORPORATION 401(K) PLAN FOR COLLECTIVELY BARGAINED ASSOCIATES | 23-1614034 | No |
| THE RITE AID 401(K) PLAN | 23-1614034 | No |
| THE RITE AID PENSION PLAN | 23-1614034 | Yes |
| VISION SERVICES PLAN | 23-1614034 | No |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 20:** Off-premises storage

| Storage Facility Name and Address | Access Names | Address | Contents | Still Have It |
|---|---|---|---|---|
| IRON MOUNTAIN<br>5736 MACCORKLE AVENUE SE<br>CHARLESTON, WV 25304 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>331 SWIFT RD.<br>ADDISON, IL 60101 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>4561 OAK FAIR BLVD<br>TAMPA, FL 33610 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>8700 MERCURY LANE<br>PICO RIVERA, CA 90660 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>17 HYDRO PLANT RD.<br>MILTON, NH 03951 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>624 NORTHEAST JONES INDUSTRIAL DRIVE<br>LEE'S SUMMIT, MO 64064 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>32141 MALLARD AVENUE<br>TANGENT, OR 97389 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>22445 RANDOLPH DR.<br>STERLING, VA 20166 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>5560 SHAWLAND ROAD<br>JACKSONVILLE, FL 32254 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>7277 N. HAGGERTY RD<br>CANTON, MI 48187 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>2120 BUZICK DRIVE<br>OBETZ, OH 43207 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>100 BAILEY AVENUE<br>BUFFALO, NY 14220 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>2929 S. ANGUS AVE.<br>FRESNO, CA 93725 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>6667 DEERE ROAD<br>SYRACUSE, NY 13206 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>5900 EASTPORT BLVD. STE D<br>RICHMOND, VA 23231 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>19200 TREAT ROAD<br>WALTON HILLS, OH 44146 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>100 HARBOR DR<br>JERSEY CITY, NJ 07305 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>201G BROZZINI COURT<br>GREENVILLE, SC 29615 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>6935 FLANDERS DRIVE<br>SAN DIEGO, CA 92121 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>26 S MIDDLESEX AVE<br>MONROE, NJ 08831 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>6120 CHURCHMAN BYPASS<br>INDIANAPOLIS, IN 46203 | VARIOUS | | CORPORATE RECORDS | Yes |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 20:** Off-premises storage

| Storage Facility Name and Address | Access Names | Address | Contents | Still Have It |
|---|---|---|---|---|
| IRON MOUNTAIN<br>1350 WEST GRAND AVE<br>OAKLAND, CA 94607 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>175 BEARFOOT RD.<br>NORTHBOROUGH, MA 01532 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>1701 SMEED PARKWAY, SUITE 101<br>CALDWELL, ID 83605 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>9247 MERDIAN WAY<br>WEST CHESTER, OH 45069 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>1201 FREEDOM ROAD<br>CRANBERRY TWP, PA 16066 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>26A PARKWAY DR<br>SCARBOROUGH, ME 04074 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>8150 SIGNAL COURT<br>SACRAMENTO, CA 95824 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>4330 S. GROVE ROAD<br>SPOKANE, WA 99224 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>202 W. 38TH STREET<br>HOUSTON, TX 77018 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>530 BROADWAY PORT<br>EWEN, NY 12487 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>1101 ENTERPRISE DR<br>ROYERSFORD, PA 19464 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>1061 CAROLINA PINES DRIVE<br>BLYTHEWOOD, SC 29016 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>2410 S 7TH ST<br>LOUISVILLE, KY 40208 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>4555 PROGRESS ROAD<br>NORFOLK, VA 23502 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>19826 RUSSELL ROAD<br>KENT, WA 98032 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>7828 N LEADBETTER ROAD<br>PORTLAND, OR 97203 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>4041 NORTH CLINTON STREET<br>FORT WAYNE, IN 46815 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>3355 NW 114 STREET<br>MIAMI, FL 33167 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>4117 PINNACLE POINT DR., SUITE 100<br>DALLAS, TX 75211 | VARIOUS | | CORPORATE RECORDS | Yes |
| IRON MOUNTAIN<br>520 W. METRO PARK<br>ROCHESTER, NY 14623 | VARIOUS | | CORPORATE RECORDS | Yes |

Debtor Name: Rite Aid Corporation                                                    Case Number: 25-14731

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

**SOFA Question 22:** Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| ADMINISTRATIVE/ COMPLIANCE ORDER | SOURCE ID: NJ2104338 | ADMINISTRATIVE/COMPLIANCE ORDER RE MONITORING AND REPORTING PURSUANT TO FEDERAL SAFE DRINKING WATER ACT | NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DIVISION OF WATER SUPPLY & GEOSCIENCE 401 E. STATE STREET MAIL CODE 401-04Q TRENTON, NJ 08625 | Pending |
| CENTER FOR ENVIRONMENTAL HEALTH V. FANTASY COOKIE CORPORATION | RG17872872 | CALIFORNIA PROPOSITION 65 PROCEEDING RE ACRYLAMIDE ASSOCIATED WITH ANIMAL CRACKERS | ALAMEDA COUNTY SUPERIOR COURT 2233 SHORE LINE DRIVE ALAMEDA, CA 94501 | Pending |
| N/A | 01279/04399 – WEST BLOOMFIELD, MI (5520 DRAKE ROAD, WEST BLOOMFIELD, MI) | PROCEEDING RE MONITORING AND REMEDIATION OF CONTAMINATION ASSOCIATED WITH PETROLEUM | MICHIGAN DEPT. OF ENVIRONMENT, GREAT LAKES, AND ENERGY 525 W. ALLEGAN ST. CONSTITUTION HALL LANSING, MI 48909 | Concluded |
| SHEFA LMV, INC. V. RITE-AID CORPORATION | BC705887 | CALIFORNIA PROPOSITION 65 PROCEEDING RE DI-N-BUTYL PHTHALATE (DBP) ASSOCIATED WITH PLASTIC SANDALS PRODUCTS | LOS ANGELES COUNTY SUPERIOR COURT 111 N. HILL ST. STANLEY MOSK COURTHOUSE LOS ANGELES, CA 90012 | Pending |
| TAMAR KALOUSTIAN V. RITE-AID CORPORATION | BC720294 | CALIFORNIA PROPOSITION 65 PROCEEDING RE LEAD ASSOCIATED WITH MULTIHEALTH FIBER SUPPLEMENT / PSYLLIUM HUSK | LOS ANGELES COUNTY SUPERIOR COURT 111 N. HILL ST. STANLEY MOSK COURTHOUSE LOS ANGELES, CA 90012 | Concluded |

Debtor Name:  Rite Aid Corporation                                                                           Case Number:  25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 23:** Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?

| Site Name and Address | Gov Unit Name and Address | Environmental Law | Date Of Notice |
|---|---|---|---|
| UNKNOWN | CA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT<br>1001 I STREET<br>SACRAMENTO, CA 95814 | CALIFORNIA PROPOSITION 65 | 02/06/2023 |
| UNKNOWN | CA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT<br>1001 I STREET<br>SACRAMENTO, CA 95814 | CALIFORNIA PROPOSITION 65 | 02/06/2023 |
| UNKNOWN | CA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT<br>1001 I STREET<br>SACRAMENTO, CA 95814 | CALIFORNIA PROPOSITION 65 | 09/27/2017 |
| UNKNOWN | CA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT<br>1001 I STREET<br>SACRAMENTO, CA 95814 | CALIFORNIA PROPOSITION 65 | 02/03/2023 |
| UNKNOWN | CA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT<br>1001 I STREET<br>SACRAMENTO, CA 95814 | CALIFORNIA PROPOSITION 65 | 11/05/2021 |
| UNKNOWN<br>2255 WISCONSIN AVE. NW<br>WASHINGTON, DC 20007 | DC DEPT. OF ENERGY & ENVIRONMENT, HAZARDOUS WASTE BRANCH<br>1200 FIRST STREET NE<br>WASHINGTON, DC 20002 | RCRA | 10/05/2023 |
| UNKNOWN | NJ DEPARTMENT OF ENVIRONMENTAL PROTECTION, DIVISION OF WATER SUPPLY & GEOSCIENCE<br>401 E. STATE STREET<br>MAIL CODE 401-04Q<br>TRENTON, NJ 08625 | SDWA | 01/17/2023 |
| UNKNOWN | NJ DEPARTMENT OF ENVIRONMENTAL PROTECTION, DIVISION OF WATER SUPPLY & GEOSCIENCE<br>401 E. STATE STREET<br>MAIL CODE 401-04Q<br>TRENTON, NJ 08625 | SDWA | 12/13/2017 |

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

**SOFA Question 25:** Other businesses in which the debtor has or has had an interest

| Business Name and Address | Nature of Business Operation | EIN | Existed From | Existed To |
|---|---|---|---|---|
| 3581 CARTER HILL ROAD - MONTGOMERY CORP.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 80-0052336 | 12/16/1997 | 02/27/2020 |
| 4042 WARRENSVILLE CENTER ROAD - WARRENSVILLE OHIO, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 25-1820507 | 10/15/1997 | PRESENT |
| 5277 ASSOCIATES, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 23-2940919 | 12/31/1997 | PRESENT |
| 5600 SUPERIOR PROPERTIES, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 80-0052337 | 04/10/1996 | PRESENT |
| 657-659 BROAD ST. CORP.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 80-0052338 | 04/11/1991 | 02/27/2020 |
| BROADVIEW AND WALLINGS-BROADVIEW HEIGHTS OHIO, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 25-1814215 | 07/01/1997 | PRESENT |
| DRUG PALACE, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL COMPANY | 80-0052352 | 02/16/1979 | PRESENT |
| EAGLE MANAGED CARE CORP.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL COMPANY | 25-1724201 | 12/22/1993 | 02/27/2020 |
| ENGLAND STREET - ASHELAND CORPORATION<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 80-0052343 | 08/01/1997 | 04/07/2020 |
| FIONA ONE CORP.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL COMPANY | 25-1865457 | 02/19/1998 | 02/27/2020 |
| GDF, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL COMPANY | 34-1343867 | 01/23/1981 | PRESENT |
| GRAND RIVER & FENKELL, LLC<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 27-5007145 | 08/06/1998 | PRESENT |
| HARCO, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 63-0522700 | 12/11/1967 | PRESENT |
| HEALTH DIALOG SERVICES CORPORATION<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | HEALTH MANAGEMENT CONSULTING | 04-3274661 | 05/18/1995 | 02/28/2025 |
| HUNTER LANE, LLC<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | INVESTMENTS | 90-1011712 | 08/13/2013 | PRESENT |
| JCG (PJC) USA, LLC<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | HOLDING COMPANY | 26-0169455 | 08/18/2006 | PRESENT |
| K & B, INCORPORATED<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | HOLDING COMPANY | 51-0346254 | 10/29/1992 | PRESENT |
| KEYSTONE CENTERS, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1730114 | 03/02/1970 | 08/31/2019 |
| LAKEHURST AND BROADWAY CORPORATION<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 23-2937947 | 11/06/1996 | PRESENT |
| PATTON DRIVE AND NAVY BOULEVARD PROPERTY CORPORATION<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | REAL ESTATE | 23-2870495 | 07/18/1996 | 02/27/2020 |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 25:** Other businesses in which the debtor has or has had an interest

| Business Name and Address | Nature of Business Operation | EIN | Existed From | Existed To |
|---|---|---|---|---|
| RAM-UTICA, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL COMPANY | 80-0052329 | 12/03/1997 | 02/27/2020 |
| RITE AID DRUG PALACE, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2325476 | 01/16/1985 | PRESENT |
| RITE AID HDQTRS. CORP. 200 NEWBERRY COMMONS ETTERS, PA 17319 | MANAGEMENT COMPANY | 23-2308342 | 08/27/1984 | PRESENT |
| RITE AID HDQTRS. FUNDING, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | HOLDING COMPANY | 75-3167335 | 09/20/2004 | PRESENT |
| RITE AID OF ALABAMA, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL COMPANY | 23-2410761 | 10/17/1986 | 02/27/2020 |
| RITE AID OF CONNECTICUT, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940645 | 12/19/1974 | PRESENT |
| RITE AID OF DELAWARE, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940646 | 10/06/1971 | PRESENT |
| RITE AID OF FLORIDA, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2047226 | 11/03/1977 | 02/27/2020 |
| RITE AID OF GEORGIA, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2125551 | 01/02/1980 | PRESENT |
| RITE AID OF ILLINOIS, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2416666 | 08/07/1985 | 02/27/2020 |
| RITE AID OF INDIANA, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2048778 | 10/24/1977 | PRESENT |
| RITE AID OF KENTUCKY, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2039291 | 10/31/1977 | PRESENT |
| RITE AID OF MAINE, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 01-0324725 | 01/12/1973 | PRESENT |
| RITE AID OF MARYLAND, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940941 | 01/24/1975 | PRESENT |
| RITE AID OF MASSACHUSETTS, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940647 | 10/13/1971 | 02/27/2020 |
| RITE AID OF MICHIGAN, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 38-0857390 | 06/19/1984 | PRESENT |
| RITE AID OF NEW HAMPSHIRE, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2008320 | 10/01/1976 | PRESENT |
| RITE AID OF NEW JERSEY, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940648 | 10/29/1971 | PRESENT |
| RITE AID OF NEW YORK, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940649 | 01/25/1972 | PRESENT |
| RITE AID OF NORTH CAROLINA, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940650 | 07/07/1972 | PRESENT |
| RITE AID OF OHIO, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940651 | 10/12/1971 | PRESENT |
| RITE AID OF SOUTH CAROLINA, INC. 200 NEWBERRY COMMONS ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2047222 | 11/04/1977 | PRESENT |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 25:** Other businesses in which the debtor has or has had an interest

| Business Name and Address | Nature of Business Operation | EIN | Existed From | Existed To |
|---|---|---|---|---|
| RITE AID OF TENNESSEE, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2047224 | 10/24/1977 | PRESENT |
| RITE AID OF VERMONT, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940942 | 01/20/1975 | PRESENT |
| RITE AID OF VIRGINIA, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940653 | 10/22/1973 | PRESENT |
| RITE AID OF WASHINGTON, D.C. INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 23-2461466 | 08/03/1987 | PRESENT |
| RITE AID OF WEST VIRGINIA, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 23-1940654 | 10/12/1971 | PRESENT |
| RITE AID ONLINE STORE, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | ONLINE RETAIL | 01-0910090 | 08/08/2008 | PRESENT |
| RITE AID PAYROLL MANAGEMENT, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | MANAGEMENT COMPANY | 01-0910097 | 08/08/2008 | PRESENT |
| RITE AID TRANSPORT, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL COMPANY | 25-1793102 | 07/01/1996 | PRESENT |
| RITE FUND, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | HOLDING COMPANY | 51-0273194 | 08/29/1983 | 08/31/2019 |
| RITE INVESTMENTS CORP.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | HOLDING COMPANY | 51-0273192 | 10/03/1983 | PRESENT |
| RX CHOICE, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | AIRCRAFT LEASING | 25-1598207 | 11/03/1988 | PRESENT |
| RX USA, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL COMPANY | 23-2436417 | 02/03/1986 | PRESENT |
| THE LANE DRUG COMPANY<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 53-0125212 | 11/14/1977 | PRESENT |
| THRIFTY PAYLESS, INC.<br>200 NEWBERRY COMMONS<br>ETTERS, PA 17319 | RETAIL DRUG STORES | 95-4391249 | 05/14/1992 | PRESENT |

Debtor Name:  Rite Aid Corporation                                                                    Case Number:  25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26d:** List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issues a financial statement within 2 years before filing this case.

| Name and Address |
| --- |
|  |

Prior to becoming a private company in September 2024, the Debtors had historically provided financial statements to various interested parties over the previous two years, including, but not limited to, insurance carriers, lenders and financial institutions, landlords, material vendors, advisors and others. The Debtors do not maintain records of the parties who have requested or obtained copies. The Debtors abided by the requirements of the Securities Exchange Act of 1934, as amended, at the end of each of its fiscal quarters and years and upon the occurrence of events requiring disclosure on form 8-K. Because the SEC filings were of public record, the Debtors did not maintain records of the parties who requested or obtained copies of any of the SEC filings from the SEC, the Debtors, or other sources.

Debtor Name:  Rite Aid Corporation                                                                    Case Number:  25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 28:** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position | % Interest |
|---|---|---|---|
| BRYANT HARRIS | ADDRESS REDACTED | CHIEF MERCHANDISING OFFICER | |
| BYRON PURCELL | ADDRESS REDACTED | TREASURER | |
| CHRISTIN BASSETT | ADDRESS REDACTED | DEPUTY GENERAL COUNSEL | |
| DAVID KASTIN | ADDRESS REDACTED | CHIEF LEGAL OFFICER, GENERAL COUNSEL AND CORPORATE SECRETARY | |
| JESSICA KAZMAIER | ADDRESS REDACTED | CHIEF ADMINISTRATIVE OFFICER AND CHIEF OF STAFF TO THE CHIEF EXECUTIVE OFFICER | |
| JOY ERRICO | ADDRESS REDACTED | CHIEF CORPORATE AFFAIRS AND COMMUNICATIONS OFFICER | |
| MARC LIEBMAN | ADDRESS REDACTED | CHIEF TRANSFORMATION OFFICER | |
| MARY HENDRICKSON | ADDRESS REDACTED | CHIEF COMPLIANCE OFFICER | |
| MATTHEW SCHROEDER | ADDRESS REDACTED | CHIEF EXECUTIVE OFFICER, DIRECTOR | |
| NEW RITE AID, LLC | 200 NEWBERRY COMMONS ETTERS, PA 17319 | STAKEHOLDER | 100% |
| RAGESHREE PARAB | ADDRESS REDACTED | CHIEF INFORMATION OFFICER | |
| STEVE BIXLER | ADDRESS REDACTED | CHIEF FINANCIAL OFFICER | |
| SUSAN LOWELL | ADDRESS REDACTED | CONTROLLER | |
| TERI SCHANCK | ADDRESS REDACTED | CHIEF PEOPLE OFFICER | |

Debtor Name:  Rite Aid Corporation                                                                    Case Number:  25-14731

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 29:** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

| Name | Address | Position | Start | End |
|------|---------|----------|-------|-----|
| ANDY PALMER | ADDRESS REDACTED | VICE PRESIDENT | 10/31/1995 | 08/30/2024 |
| ARUN NAYAR | ADDRESS REDACTED | DIRECTOR | 03/01/2024 | 08/30/2024 |
| BARI HARLAM | ADDRESS REDACTED | DIRECTOR | 03/01/2024 | 08/30/2024 |
| BRUCE G. BODAKEN | ADDRESS REDACTED | DIRECTOR | 03/01/2024 | 08/30/2024 |
| CARRIE TEFFNER | ADDRESS REDACTED | DIRECTOR | 03/01/2024 | 08/30/2024 |
| ELIZABETH "BUSY" BURR | ADDRESS REDACTED | DIRECTOR | 04/10/2019 | 08/30/2024 |
| JEANNIEY WALDEN | ADDRESS REDACTED | CHIEF MARKETING AND CUSTOMER OFFICER | 08/07/2023 | 02/03/2025 |
| JEFFREY S. STEIN | ADDRESS REDACTED | CHIEF EXECUTIVE OFFICER AND CHIEF RESTRUCTURING OFFICER | 08/09/2023 | 08/30/2024 |
| KAREN STANIFORTH | ADDRESS REDACTED | CHIEF PHARMACY OFFICER | 03/02/1998 | 05/05/2025 |
| KATE B. QUINN | ADDRESS REDACTED | DIRECTOR | 03/01/2024 | 08/30/2024 |
| PAUL KEGLEVIC | ADDRESS REDACTED | DIRECTOR | 03/01/2024 | 08/30/2024 |
| ROBERT E. KNOWLING, JR. | ADDRESS REDACTED | DIRECTOR | 03/12/2024 | 08/30/2024 |
| WILLIAM MILLER | ADDRESS REDACTED | CHIEF OF STORE OPERATIONS | 10/04/2021 | 01/16/2025 |

EXHIBIT

23

| From: | Dev, Karan </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B9C55A0E7F624A94B7D9EF1A089D25DB-EZ?IT03> |
|---|---|
| To: | Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com> |
| CC: | Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com> |
| Subject: | RE: RITE AID 05/08/2025 |
| Sent: | 2025/05/08 19:52:28 (UTC +00:00) |

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413110341 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document |
|---|
| Doc. Number   413110341        Company Code    8000        Fiscal Year     2026 |
| Doc. Date     05/08/2025       Posting Date    05/08/2025   Period          02 |
| Calculate Tax  ☐ |
| Ref.Doc.      CK20250508005125 |
| Doc. Currency  USD |

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 40,000,000.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 40,000,000.00- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

From: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
Sent: Tuesday, May 6, 2025 3:11 AM
To: Dev, Karan <Karan.Dev@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/05/2025

Hi All,

We have received WIRE of $ 49,674,910.00 on 05/05/2025

Total of the Remit is $ 49,674,910.00

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

From: Dev, Karan <Karan.Dev@McKesson.com>
Sent: Monday, May 6, 2025 2:11 AM
To: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/05/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413105754 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document |
|---|
| Doc. Number   413105754        Company Code    8000        Fiscal Year     2026 |
| Doc. Date     05/05/2025       Posting Date    05/05/2025   Period          02 |
| Calculate Tax  ☐ |
| Ref.Doc.      CK20250505005176 |
| Doc. Currency  USD |

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 49,674,910.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 49,674,910.00- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

From: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
Sent: Saturday, May 3, 2025 3:06 AM
To: Dev, Karan <Karan.Dev@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra,

Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/02/2025

Hi All,

We have received WIRE of $ 11,000,000.00 on 05/01/2025 and WIRE of $ 52,347,149.66 on 05/02/2025

Total of the Remit is $ 63,347,149.66 and total of both WIRE's is $ 63,347,149.66 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Saturday, May 3, 2025 1:58 AM
**To:** Voss, Daniela <Daniela.Voss@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh
<Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma,
Dhananjay <Dhananjay.Sharma@McKesson.com>; Fakes, Darrell <Darrell.Fakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra,
Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/02/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413104683 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document | | | | | |
|---|---|---|---|---|---|
| Doc. Number | 1413104683 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 05/02/2025 | Posting Date | 05/02/2025 | Period | 02 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250502004061 | | | | |
| Doc. Currency | USD | | | | |

| Item | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 0210 | | | 602735 | | 52,347,149.66 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 52,347,149.66- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any
unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all
copies thereof.mckesson.com

**From:** Voss, Daniela <Daniela.Voss@McKesson.com>
**Sent:** Friday, May 2, 2025 2:50 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh
<Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma,
Dhananjay <Dhananjay.Sharma@McKesson.com>; Fakes, Darrell <Darrell.Fakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra,
Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Thank you, Karan and Sandeep –

Please leave on acct #602735 in unapplied as discussed. We'll share remit/application instructions once available.

Best,
Daniela

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 1, 2025 4:07 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh
<Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma,
Dhananjay <Dhananjay.Sharma@McKesson.com>; Fakes, Darrell <Darrell.Fakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra,
Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

The second payment from Rite Aid is now booked manually through Sap Doc# 1413102456 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document | | | | | |
|---|---|---|---|---|---|
| Doc. Number | 1413102456 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 05/01/2025 | Posting Date | 05/01/2025 | Period | 02 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250501004711 | | | | |
| Doc. Currency | USD | | | | |

| Item | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 0210 | | | 602735 | | 11,000,000.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 11,000,000.00- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any
unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all
copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, May 2, 2025 12:23 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

We have received ACH of $ 436,354.81 and WIRE of $ 32,115,624.04 on 05/01/2025

Total of the Remit is $ 32,551,978.85 and total of ACH and WIRE is $ 32,551,978.85 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 1, 2025 11:59 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

The payment has been booked through Sap Doc# 1413102283 / CC 8000.

| Doc. Type | DZ ( Customer payment ) Normal document | | | | |
|---|---|---|---|---|---|
| Doc. Number | 1413102283 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 05/01/2025 | Posting Date | 05/01/2025 | Period | 02 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250501003089 | | | | |
| Doc. Currency | USD | | | | |
| Doc. Hdr Text | 0031943160007 | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8000 | UNID CASH - CARROLL | 8210 | | | 0031943160007 | | 32,115,624.04 | USD | CK20250501003 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031943160007 | | 32,115,624.04- | USD | CK20250501003 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 29, 2025 1:22 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/28/2025

Hi All,

We have received ACH of $ 194,385.76 and WIRE of $ 51,977,508.76 on 04/28/2025

Total of the Remit is $ 52,171,894.52(including credit of $2,125,626.44 & $9,901.98) and total of ACH and WIRE is $ 52,171,894.52 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Tuesday, April 29, 2025 12:56 AM
**To:** Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/28/2025

Hi All,

The payment for Rite Aid has been booked manually through Sap Doc# 1413097821 / CC 8000.

CONFIDENTIAL

| Doc.Type : DZ ( Customer payment ) Normal document | | | | | | |
|---|---|---|---|---|---|---|
| Doc. Number | 1413097021 | Company Code | 8000 | Fiscal Year | 2026 | |
| Doc. Date | 04/28/2025 | Posting Date | 04/28/2025 | Period | 01 | |
| Calculate Tax | ☐ | | | | | |
| Ref.Doc. | CK20250428005412 | | | | | |
| Doc. Currency | USD | | | | | |

| Item | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 51,077,568.76 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8600 | RITE AID 777 | | | | 602735 | | 51,077,568.76- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

**From:** Negi, Shivam <Shivam.Negi@McKesson.com>
**Sent:** Saturday, April 26, 2025 1:16 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/25/2025

Hi All,

We have received ACH of $ 385,150.35 and WIRE of $ 48,789,238.34 on 04/25/2025

Total of the Remit is $ 49,174,388.69 and total of ACH and WIRE is $ 49,174,388.69 (what we have received)

There is no overpayment. It has been applied at net.

*Thanks & Regards,*
*Shivam Negi*

---

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Saturday, April 26, 2025 12:22 AM
**To:** Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/25/2025

Hi All,

The payment has been booked through Sap Doc# 1413095925 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document | | | | | | |
|---|---|---|---|---|---|---|
| Doc. Number | 1413095925 | Company Code | 8000 | Fiscal Year | 2026 | |
| Doc. Date | 04/25/2025 | Posting Date | 04/25/2025 | Period | 01 | |
| Calculate Tax | ☐ | | | | | |
| Ref.Doc. | CK20250425004476 | | | | | |
| Doc. Currency | USD | | | | | |
| Doc. Hdr Text | 0031904900012 | | | | | |

| Item | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8000 | UNID CASH - CARROLL | 8210 | | | 0031904900012 | | 48,789,238.34 | USD | CK20250425004 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031904900012 | | 48,789,238.34- | USD | CK20250425004 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

**From:** Negi, Shivam <Shivam.Negi@McKesson.com>
**Sent:** Friday, April 25, 2025 6:14 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/24/2025

Hi All,

We have received ACH of $ 598,135.03 and WIRE of $ 45,576,708.28 on 04/24/2025

Total of the Remit is $ 46,170,783.95 (excluding # 7562628295 which is already cleared)  and total of ACH and WIRE is $ 46,174,843.31 (what we have received)

There is over payment of $ 4,059.36, for which we have created a credit residual on #601132.

*Thanks & Regards,*
*Shivam Negi*

---

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Friday, April 25, 2025 5:42 PM

CONFIDENTIAL

**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fielos, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/24/2025

Hi All,

The payment has been posted through SAP doc#1413095483 / CC8000

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number     1413095483      Company Code    8000        Fiscal Year     2026
Doc. Date       04/24/2025      Posting Date    04/24/2025   Period          01
Calculate Tax   []
Ref.Doc.        CK2025042400S610
Doc. Currency   USD
Doc. Hdr Text   0031809800004
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 45,576,708.28 | 45,576,708.28 | 0031809800004 | CK2025042400S |
| 2 | 8000 | 15 | 04/24/2025 | 602735 | RITE AID 777 | | | | | | 45,576,708.28- | 45,576,708.28- | 0031809800004 | CK2025042400S |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 22, 2025 8:34 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/21/2025

Hi All,

We have received ACH of $ 233,783.57 and WIRE of $ 54,949,517.56 on 04/21/2025

Total of the Remit is $ 55,183,301.13, and total of ACH and WIRE is $ 55,183,301.13 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 22, 2025 6:27 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/21/2025

Hi All,

The payment has been posted through SAP doc#1413085176

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number     1413085176      Company Code    8000        Fiscal Year     2026
Doc. Date       04/21/2025      Posting Date    04/21/2025   Period          01
Calculate Tax   []
Ref.Doc.        CK20250421003551
Doc. Currency   USD
Doc. Hdr Text   0031876200005
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 54,949,517.56 | 54,949,517.56 | 0031876200005 | CK20250421003 |
| 2 | 8000 | 15 | 04/21/2025 | 602735 | RITE AID 777 | | | | | | 54,949,517.56- | 54,949,517.56- | 0031876200005 | CK20250421003 |

Regards,
Ritesh Sharma

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Saturday, April 19, 2025 2:40 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/18/2025

Hi All,

We have received ACH of $ 442,014.89 and WIRE of $ 55,901,460.87 on 04/18/2025

Total of the Remit is $ 56,347,535.12 (excluding # 143401001 which is already cleared) and total of ACH and WIRE is $ 56,343,475.76 (what we have received)

There is short payment of $4,059.36, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Friday, April 19, 2025 1:48 AM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/18/2025

Hi All,

The payment has been booked through Sap Doc# 1413082288 / CC 8000.

| Doc. Type : DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|
| Doc. Number | 1413082288 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/18/2025 | Posting Date | 04/18/2025 | Period | 01 |
| Calculate Tax | ☐ | | |
| Ref.Doc. | CK20250418002492 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031859100000 | | |

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8000 | UNID CASH - CARROLL | 8210 | | | 0031859100000 | | 55,901,460.57 | USD | CK20250418002 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031859100000 | | 55,901,460.87 | USD | CK20250418002 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, April 18, 2025 7:29 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/17/2025

Hi All,

We have received ACH of $44,361.46 and WIRE of $43,611,452.59 on 04/17/2025

Total of the Remit is $ 44,155,814.05 (including # 172943001,#143401001,#1600034712 and excluding # 7560833905,# 7560359665 they are already cleared) . and total of ACH and WIRE is $ 44,155,814.05 (what we have received).

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Friday, April 18, 2025 5:07 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/17/2025

Hi All,

The payment has been posted through SAP doc#1413081636

| Doc. Type : DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|
| Doc. Number | 1413081636 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/17/2025 | Posting Date | 04/17/2025 | Period | 01 |
| Calculate Tax | ☐ | | |
| Ref.Doc. | CK20250417004430 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031853600007 | | |

| Ite | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 43,611,452.59 | 43,611,452.59 | 0031853600007 | CK20250417004 |
| 2 | 8000 | 15 | 04/17/2025 | 602735 | RITE AID 777 | | | | | | 43,611,452.59 | 43,611,452.59 | 0031853600007 | CK20250417004 |

Thanks,
Ritesh Sharma

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 15, 2025 11:21 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/14/2025

CONFIDENTIAL

Hi All,

We have received ACH of $ 354,915.10 and WIRE of $ 52,904,608.37 on 04/14/2025

Total of the Remit is $ 53,259,523.47 (including # 7560833905) , and total of ACH and WIRE is $ 53,259,523.47 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 15, 2025 4:44 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/14/2025

Hi All,

The payment has been posted through SAP doc#1413076938 / CC8000

| Doc.Type | DZ ( Customer payment ) Normal document | | |
| --- | --- | --- | --- |
| Doc. Number | 1413076938 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/14/2025 | Posting Date | 04/14/2025 | Period | 01 |
| Calculate Tax | ☐ | | |
| Ref.Doc. | CK20250414004763 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031630800004 | | |

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 52,904,608.37 | 52,904,608.37 | 0031630800004 | CK20250414004 |
| 2 | 8000 | 15 | 04/14/2025 | 602735 | RITE AID 777 | | | | | | 52,904,608.37 | 52,904,608.37 | 0031630800004 | CK20250414004 |

Regards,
Ritesh Sharma

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Monday, April 14, 2025 8:50 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/11/2025

Hi All,

We have received ACH of $ 506,702.33 and WIRE of $ 53,974,714.90 on 04/11/2025

Total of the Remit is $ 54,481,722.82 (including # 7560359665 ) and total of ACH and WIRE is $ 54,481,417.23 (what we have received)

There is short payment of $ 305.59, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Monday, April 14, 2025 4:45 PM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/11/2025

Hi All,

The payment has been posted through SAP doc#1413074547 / CC8000

| Doc.Type | DZ ( Customer payment ) Normal document | | |
| --- | --- | --- | --- |
| Doc. Number | 1413074547 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/11/2025 | Posting Date | 04/11/2025 | Period | 01 |
| Calculate Tax | ☐ | | |
| Ref.Doc. | CK20250411004793 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031816300004 | | |

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 53,974,714.90 | 53,974,714.90 | 0031816300004 | CK20250411004 |
| 2 | 8000 | 15 | 04/11/2025 | 602735 | RITE AID 777 | | | | | | 53,974,714.90 | 53,974,714.90 | 0031816300004 | CK20250411004 |

Regards,
Ritesh

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Friday, April 11, 2025 2:21 AM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>

CONFIDENTIAL

**Subject:** RE: RITE AID 04/10/2025

Hi All,

As per the attached request the payment for Rite Aid dated 04/10/2025 has been booked manually through Sap Doc# 1413071054 / CC 8000.

Please reverse the 18" Document Number which will be generated in SAP tomorrow morning so that there are no duplicates for the payment.

```
Doc. Type : DZ ( Customer payment ) Normal document
Doc. Number    1413071054     Company Code    8000      Fiscal Year    2026
Doc. Date      04/10/2025     Posting Date    04/10/2025 Period         01
Calculate Tax  ☐
Ref.Doc.       CX20250410004763
Doc. Currency  USD
```

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - 8 OF A | 8210 | | | 602735 | | 44,858,917.82 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 44,858,917.82- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 8, 2025 11:31 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/07/2025

Hi All,

We have received ACH of $ 225,799.55 and WIRE of $ 52,056,651.53 on 04/07/2025

Total of the Remit is $ 52,282,451.08(including # 7559372534) , and total of ACH and WIRE is $ 52,282,451.08 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 8, 2025 5:52 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/07/2025

Hi All,

The payment has been posted through SAP doc#1413062254 / CC8000

```
Doc. Type : DZ ( Customer payment ) Normal document
Doc. Number    1413062254     Company Code    8000      Fiscal Year    2026
Doc. Date      04/07/2025     Posting Date    04/07/2025 Period         01
Calculate Tax  ☐
Ref.Doc.       CX20250407005749
Doc. Currency  USD
Doc. Hdr Text  8031785500005
```

| Ite | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng.doc. | Clearing | Amount | LC2 amount | Assignment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 52,056,651.53 | 52,056,651.53 | 8031785500005 |
| 2 | 8000 | 15 | 04/07/2025 | 602735 | RITE AID 777 | | | | | | 52,056,651.53- | 52,056,651.53- | 8031785500005 |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Monday, April 7, 2025 9:31 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/04/2025

Hi All,

We have received ACH of $ 568,007.56 and WIRE of $ 53,958,949.81 on 04/04/2025

Total of the Remit is $ 54,529,628.65 (excluding # 7558888867 which was already cleared in offset) and total of ACH and WIRE is $ 54,526,957.37 (what we have received)

There is short payment of $ 2,671.28, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

CONFIDENTIAL

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Monday, April 7, 2025 6:01 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/04/2025

Hi All,

The payment has been posted through SAP doc#1413060221 / CC8000

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number    1413060221    Company Code    8000     Fiscal Year    2026
Doc. Date      04/04/2025     Posting Date    04/04/2025  Period        01
Calculate Tax  ☐
Ref.Doc.       CK20250404004344
Doc. Currency  USD
Doc. Hdr Text  0031771100008
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 53,958,949.81 | 53,958,949.81 | 0031771100008 |
| 2 | 8000 | 15 | 04/04/2025 | 602735 | RITE AID 777 | | | | | | 53,958,949.81- | 53,958,949.81- | 0031771100008 |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, April 4, 2025 7:54 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/03/2025

Hi All,

We have received ACH of $ 628,305.71 and WIRE of $ 42,861,017.55 on 04/03/2025

Total of the Remit is $45,162,141.80.  and total of ACH and WIRE is $43,489,323.26  (what we have received)

There is short payment of $  1,672,818.54, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Friday, April 4, 2025 4:38 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/03/2025

Hi All,

The payment has been posted through SAP doc#1413058644 / CC8000

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number    1413058644    Company Code    8000     Fiscal Year    2026
Doc. Date      04/03/2025     Posting Date    04/03/2025  Period        01
Calculate Tax  ☐
Ref.Doc.       CK20250403004681
Doc. Currency  USD
Doc. Hdr Text  0031763300004
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 42,861,017.55 | 42,861,017.55 | 0031763300004 | CK20250403004 |
| 2 | 8000 | 15 | 04/03/2025 | 602735 | RITE AID 777 | | | | | | 42,861,017.55- | 42,861,017.55- | 0031763300094 | CK20250403004 |

Regards,
Ritesh

# EXHIBIT 3

Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   DISTRICT OF NEW JERSEY

4   Chapter 11

5   Case No. 25-14861 (MKB)

6   -----------------------------------x

7   In re:

8   NEW RITE AID, LLC, et al.,

9                     Debtors.

10  -----------------------------------x

11

12       REMOTE VIDEOTAPED DEPOSITION OF

            JAMES JUSTIN BOWERS

13              Irving, Texas

             August 4, 2025

14

15

16  Reported By:

17  ERIC J. FINZ

18

19

20

21

22

23

24

25

Page 2

```
1
2              August 4, 2025
               10:03 a.m.
3
4      Remote Videotaped Deposition of
5  JAMES JUSTIN BOWERS, taken by Debtors,
6  pursuant to Notice, before ERIC J. FINZ,
7  a Shorthand Reporter and Notary Public
8  within and for the State of New York.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1
2  A P P E A R A N C E S : (All Via Remote)
3  PAUL WEISS RIFKIND WHARTON &
   GARRISON LLP
4  Attorneys for Debtors and Debtors in
   Possession
5     1285 Avenue of the Americas
      New York, New York 10019
6
   BY:  GREGORY LAUFER, ESQ.
7     glaufer@paulweiss.com
      ALICE EATON, ESQ.
8     aeaton@paulweiss.com
      MAX SIEGEL, ESQ.
9     msiegel@paulweiss.com
      CHRISTOPHER BILICIC, ESQ.
10    cbilicic@paulweiss.com
      KYLE KIMPLER, ESQ.
11    kkimpler@paulweiss.com
      ISABELLE LEIPZIGER, ESQ.
12    ileipziger@paulweiss.com
13
14 CHOATE HALL & STEWART LLP
      Attorneys for Bank of America, N.A.
15    Two International Place
      Boston, Massachusetts 02110
16
   BY:  G. MARK EDGARTON, ESQ.
17    medgarton@choate.com
      DEREK FARQUHAR, ESQ.
18    dfarquhar@choate.com
19
20
21
22
23
24
25
```

Page 4

```
1
2  A P P E A R A N C E S : (Continued)
3  SIDLEY AUSTIN LLP
      Attorneys for McKesson Corporation
4     787 Seventh Avenue
      New York, New York 10019
5
   BY:  NICHOLAS CROWELL, ESQ.
6     ncrowell@sidley.com
      ALYSSA HASBROUCK, ESQ.
7     ahasbrouck@sidley.com
      GREGORY JACOBS, ESQ.
8     gjacobs@sidley.com
9        -AND-
10 BUCHALTER LLP
      18400 Von Karman Avenue
11    Irvine, California 92612-0514
12 BY:  JEFFREY K. GARFINKLE, ESQ.
      jgarfinkle@buchalter.com
13    DANIEL SLATE, ESQ.
      dslate@buchalter.com
14
15
16 ALSO PRESENT:
17    BEN CARLSEN
18    MJ ZIMDAHL, Videographer
19
20
21
22
23
24
25
```

Page 5

```
1
2        THE VIDEOGRAPHER:  Good
3  morning.  We are going on the
4  record today at 10:03 a.m. Central
5  Time on August 4, 2025.
6        Please note that this
7  deposition is being conducted
8  virtually.  Quality of the
9  recording depends on the quality of
10 the camera and the internet
11 connection of participants.  What
12 is seen from the witness and heard
13 on the screen is what will be
14 recorded.  Audio and video
15 recording will continue to take
16 place unless always parties agree
17 to go off the record.
18       This is the video-recorded
19 deposition of Justin Bowers, taken
20 in the matter of In re:  New
21 Rite-Aid LLC, et al., filed in the
22 United States Bankruptcy Court,
23 District of New Jersey.
24       This deposition is being
25 conducted remotely using virtual
```

2 (Pages 2 - 5)

Page 102

1
2     Q.   Sorry, Mr. Bowers, have you
3  finished your answer?
4     A.   I think I did, yes.
5     Q.   Okay.  Were there discussions
6  before this April 23rd letter was sent
7  within McKesson concerning a potential
8  Rite-Aid bankruptcy?
9     A.   I think there's internal
10  discussions around the health of
11  Rite-Aid.
12     Q.   Were there discussions about a
13  potential second bankruptcy?
14     A.   More about the risk and
15  performance that Rite-Aid had provided,
16  and the lack of forthcoming information
17  shared.
18     Q.   I understand that that may
19  have been more of what you were
20  discussing.  But my question is not
21  whether it was more or less.  I'm asking
22  you if there were discussions before
23  April 23rd within McKesson about a
24  potential second Rite-Aid bankruptcy.
25     A.   I would say that, you know,

Page 103

1
2  along with the rest of the business
3  journals, there was discussions that
4  Rite-Aid potentially could file another
5  bankruptcy.
6     Q.   And if you look at the bottom
7  of the -- sorry.  Just strike that for a
8  second.
9          Was the information that
10  McKesson was learning from trade journals
11  and otherwise in part a motivation for
12  sending this April 23rd letter?
13     A.   I wouldn't say it's the
14  motivation.  I think it is the lack of
15  continual information that Rite-Aid was
16  supposed to provide to us.  The last
17  information we received was in January
18  that they were far below their EBITDA
19  requirements.  That said that we could
20  operate.  And they were far off those
21  projections.  And didn't supply any new
22  information to help McKesson.
23     Q.   I didn't say the motivation, I
24  actually said in part.  So I'll ask my
25  question again.

Page 104

1
2          Were concerns about a
3  potential second Rite-Aid bankruptcy in
4  part, to whatever degree, a motivation
5  for sending this April 23rd letter?
6     A.   McKesson was managing our
7  risk.  And we continued to have open
8  dialogue with Rite-Aid.  And we were
9  acting in good faith.
10     Q.   I need an answer to my
11  question, sir.
12     A.   I can't tell you it was
13  exactly because of a loom of bankruptcy.
14  McKesson was managing our credit risk.
15     Q.   Are you denying that concerns
16  about a potential second Rite-Aid
17  bankruptcy had anything to do with
18  sending this April 23rd letter?
19     A.   I don't know how to answer
20  that.  We were managing the best that we
21  could with the information we had.
22     Q.   So you -- I'm just asking
23  if -- are you denying that, yes or no?
24     A.   That the motivation behind
25  this was --

Page 105

1
2     Q.   That bankruptcy had anything
3  to do or the prospect of a second
4  bankruptcy had anything to do with the
5  sending of this April 23rd letter.
6     A.   I don't think that was the
7  motivational factor.  It was to manage
8  our ongoing risk in lieu of not receiving
9  information.
10     Q.   So is it your testimony to the
11  court that the prospect of a second
12  Rite-Aid bankruptcy had absolutely
13  nothing to do with the sending of the
14  April 23rd letter?
15     A.   I would not agree to that
16  statement.
17     Q.   Okay.  Because you would agree
18  and acknowledge that the prospect of a
19  second Rite-Aid bankruptcy was in some
20  way related to the sending of the April
21  23rd letter.  Correct?
22     A.   I think there is a lot of
23  factors that we deal with and we continue
24  to operate in good faith.
25     Q.   And one of those -- sorry.

Page 106

1
2          MR. CROWELL:  Hold on, excuse
3     me.  Let him finish his answer.
4          MR. LAUFER:  So, Nick, stop
5     talking.  I had said I'm sorry,
6     please continue.  I don't know what
7     this bullying tone is.  I've been
8     very patient over the last hour and
9     40 minutes.  I know that you think
10    maybe I'm inept or incompetent or
11    my questions are repetitive.  I
12    could care less.  Please stop.
13    Q.    Go ahead, Mr. Bowers.
14    A.    I forgot the question, Greg.
15    Q.    Sure.
16          Was bankruptcy in any way part
17    of the motivation for sending the April
18    23rd letter?
19    A.    I think we were assessing and
20    we were trying to manage our risk.
21    Q.    And part of that risk was the
22    prospect of bankruptcy.  Correct?
23    A.    With a potential?
24    Q.    Yes.
25    A.    That was out in the market?

Page 107

1
2     Q.    Yes.
3     A.    I guess that could be.  I
4     mean, it was -- we were concerned with
5     the financial health of Rite-Aid.
6     Q.    Including the prospect of a
7     second bankruptcy?
8     A.    Prospects of a second
9     bankruptcy?  Yes.
10    Q.    At the bottom of the first
11    page of the April 23rd letter, it says,
12    at the very bottom, "McKesson has
13    determined that Rite-Aid is not in
14    compliance with McKesson's credit
15    requirements."
16          Do you see that?
17    A.    That's correct.
18    Q.    What were the credit
19    requirements applicable to Rite-Aid that
20    McKesson had in mind here?
21    A.    So that was the forecast of
22    them being, you know, financially
23    healthy, that they'd meet the plan that
24    they put out in front of us, and they
25    would provide ongoing financial

Page 108

1
2     information and updates.
3     Q.    Is that the extent of your
4     answer?
5     A.    Yes.
6     Q.    Are there any documents that
7     McKesson has regarding their credit
8     requirements for Rite-Aid and Rite-Aid's
9     compliance or noncompliance with those
10    credit requirements?
11    A.    So the plan that Rite-Aid put
12    in front of us that we agreed to under
13    this agreement, they provided in January,
14    was far below their projections.
15    Q.    So the only document that
16    McKesson has is a plan that Rite-Aid gave
17    to McKesson in January of 2025?
18    A.    January 2025?  Yes.
19    Q.    Are there any other documents
20    regarding McKesson's credit requirements
21    as stated in this letter?
22    A.    Not in this letter, no.
23    Q.    Okay.  What specific credit
24    requirements did McKesson believe
25    Rite-Aid was not in compliance with?

Page 109

1
2     A.    It was one, there was we
3     continued open discussions with Rite-Aid.
4     And the -- for them not meeting their
5     projections.  And then not providing
6     timely and frequent updates of their
7     financial positions.
8     Q.    Okay.  So I think you said two
9     things, but you can correct me if I'm
10    wrong.  One of the credit requirements
11    that you're talking about is not
12    providing timely information.  Correct?
13    A.    Correct.
14    Q.    Okay.  What's the other one?
15    A.    That they were below their
16    projections.
17    Q.    Okay.  Are there any other
18    credit requirements other than not timely
19    providing information and being below
20    projections that make up the credit
21    requirements referred to in this April
22    23rd letter?
23    A.    Not that I know of.
24    Q.    What specific information did
25    McKesson believe Rite-Aid owed McKesson

28 (Pages 106 - 109)

Page 110

1
2  that McKesson contended Rite-Aid did not
3  provide?
4      A.   They only provided their --
5  the last financial updates we received
6  from Rite-Aid was in January.
7      Q.   Okay.  So what specific
8  information did Rite-Aid not give
9  McKesson that McKesson believed Rite-Aid
10  was required to give after January?
11      A.   The performance to their
12  projections and liquidity.
13      Q.   Anything else?
14      A.   I believe that's the basis.
15      Q.   And the second credit
16  requirement that you mentioned was
17  falling below projections.  So what were
18  the projections that McKesson believed
19  Rite-Aid had to meet that it did not in
20  fact meet?
21      A.   I believe in their plan that
22  they put forward in the agreement, they
23  were supposed to be at about 195 million
24  in EBIT.  And their January update was a
25  negative 44.

Page 111

1
2      Q.   And were those EBITDA
3  projections a contractual requirement
4  that McKesson had imposed on Rite-Aid?
5      A.   They were mutually agreed
6  upon.  Rite-Aid provided the projections.
7      Q.   So is it your testimony that
8  Rite-Aid was contractually required to
9  meet specific projections.  And if it
10  didn't, McKesson was entitled to invoke
11  certain other contractual protections?
12      A.   That is correct.
13      Q.   Who determined that, from
14  McKesson's point of view, Rite-Aid was
15  not in compliance with McKesson's credit
16  requirements?
17      A.   Well, the document itself says
18  that they were not meeting their plan
19  that they put forth and which was
20  mutually agreed upon.
21      Q.   Right.
22          But my question is who at
23  McKesson made the determination that
24  Rite-Aid was not in compliance with
25  McKesson's credit requirements?

Page 112

1
2      A.   I would say it's the document
3  itself says that.  I mean, you know,
4  leadership.
5      Q.   Well --
6      A.   Ongoing discussions with
7  Rite-Aid.
8      Q.   Let me put it this way:  Did
9  somebody at McKesson make a determination
10  that Rite-Aid was not in compliance with
11  McKesson's credit requirements?
12      A.   I don't think we had to make a
13  determination.  The data itself said that
14  they were out of compliance with their
15  predictions, that that was applied to the
16  supply agreement.
17      Q.   Well, actually the April 23rd
18  letter says McKesson has determined that
19  Rite-Aid is not in compliance with
20  McKesson's credit requirements.
21          Do you see that?
22      A.   I did.
23      Q.   Okay.  So who made that
24  determination at McKesson?
25      A.   The leadership, based on the

Page 113

1
2  agreement.
3      Q.   What leadership?
4      A.   There would have been legal,
5  myself.  Our finance teams.
6      Q.   All of those people were
7  involved in the decision?
8      A.   Well, the decision was based
9  off of a document that says they were not
10  in compliance.  So there wasn't a
11  determination, they failed to meet the
12  compliance requirements.
13      Q.   So when your letter wrote
14  "McKesson has determined," that was
15  inaccurate, McKesson had not in fact made
16  that determination?
17      A.   We agreed with the supply
18  agreement they put forth with us.
19      Q.   I'm asking you a different
20  question.
21          You wrote in your letter
22  "McKesson has determined."  Correct?
23      A.   That is correct.
24      Q.   Is it true that McKesson in
25  fact made that determination?

Page 134

1
2  Right?
3      A.   That is correct.
4      Q.   Okay.  And the first one was
5  limiting accounts receivable -- sorry,
6  the first one was limiting the accounts
7  receivable cap to 175 million.  Right?
8      A.   Correct.
9      Q.   Why did McKesson reduce the
10 accounts receivable cap to 175 million?
11     A.   So as talked about, Rite-Aid
12 had communicated that they were shrinking
13 their footprint and closing stores.  So
14 that we know that their, you know,
15 products that are distributed or orders
16 should be tailoring down.  So by doing
17 this we were able to lower the credit
18 line that was out there along with that.
19     Q.   Any other basis?
20     A.   I think that was the most
21 basis.
22     Q.   Okay.  Prior to the April 23rd
23 letter, had McKesson ever made changes to
24 the accounts receivable cap under the
25 supply agreement?

Page 135

1
2      A.   Only with the seasonal
3  exception.
4      Q.   Okay.  But other than that,
5  the answer is no, never done before?
6      A.   Correct.
7      Q.   Okay.  And would you agree
8  that reducing the cap by $75 million
9  would impose additional financial
10 constraints on Rite-Aid?
11         MR. CROWELL:  Object to the
12     form.
13     A.   I don't -- I don't have inside
14 knowledge of Rite-Aid to say that's true.
15 But I don't think so.
16     Q.   You don't think so?  What's
17 the basis for that?
18     A.   We didn't adjust their daily
19 sales orders.  It was just the amount of
20 credit outstanding to them.
21     Q.   So you thought reducing the
22 credit outstanding to Rite-Aid by $75
23 million would have no effect on
24 Rite-Aid's financials?
25     A.   I did not have -- they did not

Page 136

1
2  provide inside information or the
3  financial information on that.
4      Q.   I'm not asking you whether
5  Rite-Aid did or did not provide anything.
6  I'm asking you whether it's your
7  testimony that you believed that reducing
8  the cap by $75 million would have no
9  effect on Rite-Aid's financial condition.
10     A.   They didn't provide any
11 information that would tell me any
12 different.
13     Q.   Putting aside what Rite-Aid
14 did or didn't give you, that was already
15 embedded in my prior question, did you
16 believe that reducing the cap by $75
17 million would have absolutely no effect
18 on Rite-Aid?  Is that your view?
19     A.   So we continued to operate in
20 good faith.  We had open conversations.
21 And they didn't provide any information.
22 So I can't determine what that would or
23 wouldn't do on that aspect of it.  We did
24 communicate to them and it took them over
25 five days to even respond.

Page 137

1
2      Q.   I'm not asking you whether you
3  did a calculation.  You've been in
4  business for twenty --
5      A.   You're asking a subjective
6  question.  And I can't --
7      Q.   I am.
8      A.   I can't determine.  Because I
9  don't have -- without them providing
10 financial information, I can't answer
11 that.
12     Q.   And I'm not asking you to
13 quantify it or to say it with
14 specificity.  I'm just asking based on
15 your more than two decades in the
16 business world and a long-standing
17 relationship with Rite-Aid and other
18 counterparties, was it your view that
19 reducing the cap by $75 million would not
20 impose any additional burden on Rite-Aid,
21 or did you not know one way or the other?
22     A.   So just to be clear, the cap
23 is based off of number of days on payment
24 terms.  And proportionally that is the
25 same.

35 (Pages 134 - 137)

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

Page 186

1
2    that is a factual.  We never had a
3    conversation on that.
4        Q.   He said that certain amounts
5    were included in the cap and that it was
6    a departure from his understanding of how
7    the cap was calculated.  Did you tell him
8    that's wrong, it's no departure
9    whatsoever?
10       A.   I did not specifically tell
11   him, no.
12       Q.   Did you go to anybody at
13   McKesson and say I just got this email
14   from the top brass at Rite-Aid and
15   they're just totally wrong about this
16   being a departure from the cap
17   calculation?
18       A.   I did not.
19       Q.   And you don't remember anybody
20   at McKesson ever telling anybody at
21   Rite-Aid that this is how the cap would
22   be calculated.  Correct?
23       MR. CROWELL:  Object to the
24   form.
25       A.   No, because the cap was from

Page 187

1
2    what's invoiced and delivered goes
3    against their accounts receivable cap.
4        Q.   You never told anybody at
5    Rite-Aid that that's how it would be
6    calculated.  Correct?
7        A.   That's what the payment terms
8    under the operating agreement outlined.
9        Q.   Did you tell anybody at
10   Rite-Aid -- did you pick up the phone or
11   send an email or otherwise communicate to
12   Rite-Aid this is how we're going to do
13   it?
14       A.   I did not.
15       Q.   Okay.  Now, let's look at the
16   first bottom email on the chain.  Which
17   is from you to Mr. Bixler and Mr. Owen --
18   I'm sorry, Mr. McMahon.  And you wrote,
19   among other things, "As it stands, our
20   forecast indicates that Rite-Aid is set
21   to exceed the established credit limit of
22   $200 million by the end of the business
23   day.  To ensure everything stays on
24   track, it's crucial that McKesson
25   receives the necessary payments

Page 188

1
2    accordingly.  Please make sure to follow
3    up and facilitate the payments as
4    outlined."
5        Do you see that?
6        A.   I do.
7        Q.   And then it has some line
8    items that you included here in bold,
9    including payment to meet $200 million
10   cap requirement is $11 million.
11       Do you see that?
12       A.   I do.
13       Q.   By the way, who created this
14   little calculation here?
15       A.   I did.
16       Q.   Is that $11 million amount a
17   necessary payment that needs to be
18   facilitated, to use your words?
19       A.   Yes.  It is invoices that are
20   already invoiced and were delivered, and
21   that they were over their accounts
22   receivable cap.
23       Q.   What did you mean when you
24   wrote "to ensure everything stays on
25   track"?

Page 189

1
2        A.   We wanted to make sure that
3    Rite-Aid was not interrupted.
4        Q.   So you when you said "to
5    ensure everything stays on track," you
6    wanted to make sure that Rite-Aid's
7    business was not interrupts?
8        A.   Correct.  We were being
9    proactive and trying to help Rite-Aid
10   manage to their cap.
11       Q.   You didn't write those words
12   in sum or substance in your email;
13   correct?
14       A.   I'm sorry?
15       Q.   You didn't write those words
16   in sum or substance in your email;
17   correct?
18       A.   Did I -- I said everything
19   stays on track.
20       Q.   Did you write in sum or
21   substance we want to make sure Rite-Aid
22   can continue to do business?
23       A.   I did not.
24       Q.   Are you aware of a shred of
25   paper anywhere in your assuredly

Page 198

1
2      A.   If, without collaboration in
3  partnership.  So that's what I'm trying
4  to help Rite-Aid partner through, is to
5  ensure that they don't have disruption.
6      Q.   Isn't it fair to say that what
7  you were communicating in this email is
8  that there would be issues or problems if
9  the $11 million payment to get under the
10  cap hadn't been made?
11      A.   I'm trying to help Rite-Aid
12  make sure that that doesn't happen.
13      Q.   Are you disputing that that's
14  what you were communicating?
15      A.   I was saying that we didn't
16  want anything to go off track.
17      Q.   And by off track, what you
18  intended to communicate was, we need to
19  get this $11 million or there could be
20  real problems?
21      A.   We would have to continue to
22  partner with Rite-Aid to make sure that
23  we resolved the matter timely.  That's
24  what I'm trying to do.
25      Q.   Did you write here in this

Page 199

1
2  email anything -- did you say we really
3  want to partner with you?  Did you write
4  that?
5      A.   Want to touch base?  So it
6  says hey, I'm reaching out to you.  Not
7  that they're reaching out to me.  So I am
8  proactively giving them a forecast to
9  help them manage --
10      Q.   Did you write we want to
11  partner with you?
12      A.   No, I did not write did we
13  want to partner.  I proactively -- I
14  proactively --
15          MR. CROWELL:  Excuse me, let
16  him finish his answer.
17          MR. LAUFER:  You can do this
18  on a redirect later.
19          MR. CROWELL:  Let him finish
20  his answer.
21          MR. LAUFER:  I already have an
22  answer to my question.
23      Q.   Did you write we want to help
24  you?
25          MR. CROWELL:  Excuse me, let

Page 200

1
2  him finish his answer.
3      Q.   Mr. Bowers?
4          MR. CROWELL:  Justin, you can
5  go back and finish your answer.
6      A.   I was proactively
7  communicating to them.  I said that I
8  want to especially be sure everything
9  stays on track.  And I gave them the
10  information they needed to manage the
11  situation.
12      Q.   And in your proactive
13  reach-out, did you say we want to partner
14  with you?
15      A.   I did not use the word
16  "partner."
17      Q.   Okay.  And in your proactive
18  reach out and touch base, did you say we
19  want to help you?
20      A.   I said to ensure everything
21  stays on track.
22      Q.   Did you say we want to help
23  you?
24      A.   I did not use the word "help
25  you."

Page 201

1
2      Q.   And you didn't use a synonym
3  of help, like assist or facilitate or
4  enable.  Right?  Or aid.
5      A.   I used the word ensure.
6      Q.   That's not my question.
7      A.   To make sure, to follow up.
8          Any use any of those words.
9      Q.   Okay.  Now, take a look at the
10  next email in the chain that we just
11  looked at from Mr. Bixler -- I'm sorry,
12  yeah, Mr. Bixler, 2:46.  It says, "In
13  addition to today's normal course
14  payment, I had the team initiate an
15  additional wire in the amount of $11
16  million as presented below."
17          Do you see that?
18      A.   I do.
19      Q.   What's your understanding of
20  why Rite-Aid was making the additional
21  $11 million payment?
22      A.   So they rise where they were
23  at against the cap on invoices and that's
24  been delivered, and they were managing to
25  the cap.

51 (Pages 198 - 201)

Page 202

1
2       Q.   So in other words, the $11
3   million payment you understood was
4   required for Rite-Aid to meet the new
5   $200 million cap requirement that
6   McKesson had imposed.  Right?
7       A.   That is correct.
8       Q.   And when the cap took effect,
9   McKesson understood that Rite-Aid was
10  going to have to make an additional
11  payment to get below the cap.  Right?
12      A.   That is not correct.
13      Q.   Not correct?
14      A.   That is not correct.
15      Q.   McKesson had no idea that that
16  was the case?
17      A.   So Rite-Aid, one, we
18  communicated.  It took Rite-Aid five days
19  to respond to us.  Rite-Aid had a number
20  of things they could have chose how to
21  handle the cap.  And that was their
22  choice of the actions they took to manage
23  to the cap.
24      Q.   So when you wrote this email
25  on May 1st, your testimony is you had no

Page 203

1
2   idea that Rite-Aid would have to make the
3   $11 million payment to get below the cap?
4       A.   Rite-Aid had a lot of options
5   that they could --
6       Q.   Excuse me.  I'm not asking you
7   about options for Rite-Aid.  I'm asking
8   you about what you understood and knew.
9       A.   I didn't know.  They didn't
10  provide me information.  They chose --
11      Q.   I'm asking you --
12           (Simultaneous crosstalk.)
13      Q.   This is not -- you will have
14  an opportunity in court to testify about
15  whatever it is your lawyers want to
16  elicit from you.  Right now, Mr. Bowers,
17  I'm just asking you to tell me what you
18  knew and understood.  Is it your
19  testimony --
20      A.   You're asking me -- so
21  remember, we gave communication on April
22  23rd.  April 23rd.  This is now eight
23  days of transactional processing that
24  Rite-Aid could have made adjustments on,
25  they could have made incremental

Page 204

1
2   payments.
3           It was not my judgment or
4   direction how Rite-Aid would get to their
5   cap.  We mutually agreed on a cap that
6   Rite-Aid had to operate underneath, that
7   they agreed on.  This was their choice on
8   how to operate under that cap.  Is to
9   make additional payment.
10      Q.   Mr. Bowers, in your proactive
11  reach-out at the bottom of this email
12  chain, you wrote, "As it stands, our
13  forecast indicates that Rite-Aid is set
14  to exceed the established credit limit of
15  $200 million by the end of the business
16  day."  Correct?
17      A.   Correct.
18      Q.   That is what McKesson
19  understood at the time.  Correct?
20      A.   That is correct.
21      Q.   And McKesson proactively, as
22  you said, reached out to Rite-Aid with
23  that forecast in mind and said that
24  McKesson had to receive a necessary
25  payment of $11 million.  Correct?

Page 205

1
2       A.   That is correct.
3       Q.   Okay.  And is it your
4   testimony that the $11 million had
5   absolutely nothing to do with the
6   forecast that was referenced in the
7   preceding sentence?
8       A.   No, this was to the invoices,
9   and I spell it out, open balance of 241,
10  invoices from 4/30 of 2 million, the
11  payment that Rite-Aid made was $32
12  million.  That gave them a balance of 211
13  million.  That was over their cap.
14          So Rite-Aid could have made a
15  payment of 43 million and they would have
16  been at their $200 million cap.
17      Q.   That is not my question.
18      A.   But that is -- like, I don't
19  know -- I'm sorry.  I guess I didn't
20  understand your question then.  Because
21  you used the word "forecast."  I want to
22  be careful the difference between
23  forecast and facts.
24      Q.   I'll restate it.
25      A.   Okay, sorry, go ahead.

52 (Pages 202 - 205)

Page 206

1
2     Q.   In your email, you told
3  Rite-Aid that McKesson at the time
4  believed that Rite-Aid was going to blow
5  the cap by the end of the day.  Right?
6     A.   That is correct.
7        MR. CROWELL:  Object to the
8  form.
9     Q.   Correct?
10    A.   Yes.
11    Q.   Yes?
12    A.   Yes.
13    Q.   In the very next sentence, you
14  wrote, that it was crucial that McKesson
15  receive a necessary payment accordingly.
16  Correct?
17    A.   Correct.
18    Q.   And then, a few lines down,
19  you wrote, "payment to meet $200 million
20  cap requirement, $11 million."  Correct?
21    A.   Yes.
22    Q.   Those were your words.  Right?
23  In the spreadsheet that you testified a
24  few moments ago that you personally
25  created.  Right?

Page 207

1
2     A.   Correct.  Correct.
3     Q.   And you did the math.  Right?
4     A.   Correct.
5     Q.   And the balance that you
6  calculated shows a balance of $211
7  million as of May 1st.  Correct?
8     A.   The balance.  And the order
9  that were invoiced and delivered.
10    Q.   And the $11 million was the
11  amount needed to meet the $200 million
12  cap.  Correct?
13    A.   That is correct.
14    Q.   All right.
15        And that was the condition of
16  McKesson continuing to ship.  Correct?
17    A.   That manages that Rite-Aid
18  stays under the cap, yes.
19    Q.   And Rite-Aid in fact made a
20  payment of $11 million on May 1st.
21  Right?
22    A.   Yes.
23    Q.   And that payment brought the
24  balance below the cap.  Right?
25    A.   Correct.

Page 208

1
2     Q.   McKesson knew at the time that
3  Rite-Aid could not remain below the cap
4  without making additional payments after
5  the $11 million.  Correct?
6     A.   That is not correct.
7     Q.   Not correct?
8     A.   No.
9     Q.   Why not?
10    A.   Because I gave them forecasts
11  based off of data that we had had from
12  their ordering patterns before.  Rite-Aid
13  could choose not to lower the amount they
14  order.
15    Q.   So is it your testimony that
16  McKesson had no idea one way or the other
17  whether Rite-Aid could stay below the cap
18  without making additional payments?
19    A.   No way -- I mean, I used the
20  information we had to inform Rite-Aid of
21  what we could see or forecast or
22  estimate.  And I wrote estimates down
23  there.  And forecasts.  Which is
24  forward-looking.  It was Rite-Aid's
25  decision to place orders or not place

Page 209

1
2  orders and to manage to the cap.
3     Q.   You understand Rite-Aid, in
4  order to do any business, has to place
5  orders.  Correct?
6     A.   Rite-Aid has safety stock.
7  Rite-Aid has warehousing.  Rite-Aid has
8  central fill.  So I can't tell you what
9  Rite-Aid has to do on a day-to-day basis
10  to be in business.
11    Q.   Has Rite-Aid ever said in the
12  history of the parties' relationship,
13  we're going to take a one-year hiatus
14  from ordering because we have these
15  super-duper warehouses stocked with
16  drugs?  Has that ever happened?
17    A.   Not that I know of.
18    Q.   Okay.  Have they ever said,
19  you know what, we'll see you, it's July,
20  we'll see you in September, after Labor
21  Day, we've got all this stuff stocked up,
22  we're good, has that ever happened?
23    A.   Not to my knowledge.
24    Q.   Okay.  So you understood that
25  Rite-Aid was going to continue to order

53 (Pages 206 - 209)

Page 210

1
2    product from McKesson. Right?
3        A.   On a future basis, yes.
4        Q.   Okay. And you also understood
5    that McKesson was going to require
6    Rite-Aid to pay for those products.
7    Correct?
8        A.   For products ordered and
9    delivered, yes.
10       Q.   And you understood at the time
11   that Rite-Aid had made a payment of $11
12   million.
13       A.   Right.
14       Q.   Exactly as set out in your
15   email. Which brought it just under the
16   cap. Right?
17       A.   Correct.
18       Q.   And so you also understood at
19   the time that Rite-Aid would have to make
20   additional payments to continue to stay
21   below the cap if it continued to order
22   product and pay for it. Correct?
23       A.   Yes.
24       Q.   And McKesson in fact
25   encouraged Rite-Aid to make additional

Page 211

1
2    payments to stay below the cap. Right?
3        A.   I informed Rite-Aid of where
4    they would be at if they continued to
5    order at their current levels.
6        Q.   Are you agreeing or
7    disagreeing with what I just said?
8        A.   Well, you're implying that I
9    told Rite-Aid that they had to make
10   additional payments. That's not what I
11   told them. What I told them is, based
12   off of past forecasts, this is what we
13   would estimate, and I wrote estimate and
14   forecast, forward-looking, that if they
15   didn't change the behavior this is what
16   they would have to pay.
17       Q.   Were you encouraging Rite-Aid,
18   yes or no, to make additional payments?
19       A.   I was sharing the data that I
20   had.
21       Q.   So you won't answer that
22   question yes or no?
23       A.   Well --
24           MR. CROWELL: He answered the
25       question.

Page 212

1
2        A.   I'm not -- I wouldn't say I'm
3    encouraging. I was sharing the
4    information I had with Rite-Aid.
5        Q.   Look at your May 1st, 7 p.m.
6    email to Mr. Bixler and Mr. McMahon.
7        A.   Which one is that?
8        Q.   Max will zoom in on it. It's
9    right there.
10           Are you honest in the emails
11   that you send to people? Do you mean
12   what you say?
13       A.   I try to be.
14       Q.   Okay. You wrote to Mr. Bixler
15   and Mr. McMahon, third paragraph of your
16   7 p.m. email, "In general, Rite-Aid
17   should pay down balances to operate under
18   credit limit with active ordering and
19   shipments."
20           Do you see that?
21       A.   I do.
22       Q.   Okay. And what you were
23   communicating was that in your view
24   Rite-Aid had to stay below the credit
25   limit for McKesson to continue shipping?

Page 213

1
2        A.   That is accurate and what they
3    agreed upon in the supply agreement, yes.
4        Q.   And you understood that
5    McKesson had leverage over Rite-Aid
6    because it could cut off shipments under
7    the supply agreement. Correct?
8        A.   I would not say that we have
9    leverage over Rite-Aid.
10       Q.   Really? You think they had
11   the upper hand?
12       A.   I think that it's an open
13   market. There are competitors. And
14   Rite-Aid can procure product from a
15   number of different places.
16       Q.   So it's your testimony that
17   Rite-Aid could just turn off the McKesson
18   spigot and go to somebody else in the
19   market?
20       A.   It is definitely a potential.
21       Q.   Who else could supply Rite-Aid
22   on the order that McKesson has supplied
23   Rite-Aid?
24       A.   Cardinal, Cencora, there are
25   regional distributors.

54 (Pages 210 - 213)

Page 214

1
2     Q.   How fast could that happen?
3     A.   I don't have that information.
4     Q.   Okay.  Let's go to --
5          MR. CROWELL:  Greg, we've been
6     going another hour, can we take
7     another quick break?
8          MR. LAUFER:  Yes.
9          MR. CROWELL:  Ten minutes.
10         MR. LAUFER:  Yes.
11         THE VIDEOGRAPHER:  The time is
12    1:25 p.m. Central, and we are off
13    the record.
14         (A recess was taken.)
15         THE VIDEOGRAPHER:  The time is
16    1:36 p.m. Central Time, and we are
17    back on the record.
18 BY MR. LAUFER:
19    Q.   Mr. Bowers, the $11 million
20    that was referenced in your May 1st
21    email, that was not for invoices that had
22    already come due.  Right?
23    A.   That was invoices and who they
24    were being delivered, yes.  So it was
25    against their cap.  Okay, I'm sorry.

Page 215

1
2     Okay.  Very -- it was for the products
3     that had been invoiced and delivered that
4     went against their accounts receivable
5     balance.  Not necessarily their payment
6     term was due.
7     Q.   It was an accelerated payment.
8     Correct?
9     A.   It was a payment that -- to
10    bring them under their cap for products
11    they had received.
12    Q.   It was an accelerated payment?
13    A.   So it was a payment -- so it
14    would be before the -- yeah, you could
15    say that.  But it was against actual
16    product that had been delivered on their
17    accounts receivable balance, yes.
18    Q.   Okay.  So you would agree it
19    was an accelerated payment?
20    A.   That is correct.
21    Q.   And in your 7 p.m. May 1st
22    email, in the line that I just read to
23    you about Rite-Aid should pay down
24    balances to operate under credit limit
25    with active ordering and shipments, do

Page 216

1
2     you remember writing that, we just went
3     over that email?
4     A.   Yeah, yeah.
5     Q.   Why did you connect staying
6     under the credit limit with active
7     ordering and shipments?
8     A.   I was just wanting them to
9     make sure that they contemplated all
10    products that are invoiced and delivered
11    will go against their accounts
12    receivable, that increases their accounts
13    receivable balance.
14    Q.   Why didn't you just write
15    that?  Why did you connect the two
16    things?
17    A.   Just choice of words.
18    Q.   Well, you chose to connect
19    those two propositions, the credit limit
20    and active ordering and shipments.
21    Correct?
22    A.   Yes.  Can we bring that back
23    up, please, do you mind?
24    Q.   Sure.  I don't mind.  Max will
25    bring it back up.

Page 217

1
2          In other words, it very easily
3     could have been the case that you could
4     have just told Rite-Aid you've got to
5     make payments on a timely basis, and it
6     would have had nothing to do with the
7     cap.  Correct?
8     A.   They had to operate under the
9     total cap.
10    Q.   With active --
11         (Simultaneous crosstalk.)
12    A.   They had to look at all
13    products that they ordered and that were
14    delivered, which would go against --
15    which invoice would go against their
16    accounts receivable balance.  And what
17    products were due and they were making
18    payments for.
19    Q.   Right.
20         But you chose to write to them
21    that they had to pay down balances to
22    operate under credit limit with active
23    ordering and shipments.  Correct?
24    A.   So I also said the --
25    Q.   Hold on.

55 (Pages 214 - 217)

Page 218

1
2      A.   I said general, I used the
3   word in general, Rite-Aid should pay down
4   balances to operate under credit limits.
5      Q.   With active ordering and
6   shipments.
7      A.   Correct.
8      Q.   That's what you thought they
9   should do in general.  Correct?
10      A.   In general, yes.
11      Q.   And you were connecting those
12   two propositions, staying under the
13   credit limit and active ordering and
14   shipments in general.  Right?
15      A.   Yes.
16      MR. LAUFER:  Let's go to MCK
17   13107.  It's tab 10, Max.  I think
18   we're on Exhibit 9, but I could be
19   wrong.  Someone could correct me.
20      (McKesson Exhibit 9 for
21   identification, email dated May 3,
22   2025, production numbers MCK 13107
23   through MCK 13108.)
24      MR. SIEGEL:  That is accurate,
25   Greg.

Page 219

1
2   BY MR. LAUFER:
3      Q.   Do you see that in front of
4   you?
5      A.   I do.
6      Q.   You're not on this email.
7   Have you ever seen this chain before?
8      A.   I have.
9      Q.   That was in your prep?
10      A.   Yes.
11      Q.   And if you look at the third
12   email from the top, it's from somebody
13   named Ammie McAsey to Jeff Marshall?
14      A.   Yes.
15      Q.   Who are those two individuals?
16      A.   Jeff Marshall is the sales
17   accounts manager with Rite-Aid.  And
18   Ammie McAsey, she oversees the
19   distribution office of operations,
20   logistics.
21      Q.   Does either of these
22   individuals report to you?
23      A.   No.
24      Q.   Are they parallel to you in
25   the organization, or senior to you?

Page 220

1
2      A.   Probably peers.
3      Q.   Peers, okay.
4      And if you look at the email
5   from Ms. McAsey, I'm assuming that's a
6   woman?
7      A.   Ammie is a woman, yes.
8      Q.   It's Ammie.  To Mr. Marshall.
9   She wrote, "Given the change to their
10   limits and terms, do you know if they are
11   taking any action to reduce orders."
12      Do you see that?
13      A.   You're talking about the one
14   right in the middle?
15      Q.   Yes.  "Jeff, I hope you had a
16   nice weekend.  The supply chain ops
17   team," et cetera, et cetera.  Then she
18   writes "given the change to their limits
19   and terms."
20      A.   Okay.  Okay, yes, I see that.
21      Q.   Is it fair to say Ms. McAsey
22   was referring to the change in the
23   accounts receivable cap and payment terms
24   set out in McKesson's April 23rd letter
25   and subsequent modifications?

Page 221

1
2      A.   It is.
3      Q.   And if you look at the next
4   email up the chain, at 1:53 p.m.,
5   Mr. Marshall responded to Ms. McAsey
6   saying that the receivable cap was
7   lowered from 275 million to 200 million
8   and would drop a further $5 million each
9   day.  Correct?
10      A.   That's correct.
11      Q.   And as you testified earlier,
12   that's in fact what was supposed to
13   happen.  Right?
14      A.   Correct.
15      Q.   And the email also says that
16   the receivable cap would drop until it
17   reached $175 million.
18      Do you see that?
19      A.   I do.
20      Q.   That was inaccurate.  Right?
21      A.   That is correct.
22      Q.   Okay.  And the email also says
23   they're trying to be good partners and
24   comply.
25      Do you see that?

Page 222

1
2    A.    Yes.
3    Q.    The "they" there is referring
4  to Rite-Aid.  Correct?
5    A.    I believe so, yes.
6    Q.    Okay.  And so the view as
7  reflected here, at least by Mr. Marshall,
8  is that Rite-Aid was trying to be a good
9  partner to McKesson and comply with
10  contractual terms owed to McKesson.
11  Correct?
12    A.    That's correct.
13    Q.    And the email from
14  Mr. Marshall also says, "They do know we
15  have a big red button that will be used."
16      Do you see that?
17    A.    I do.
18    Q.    And the "they" there again
19  refers to Rite-Aid.  Right?
20    A.    I would assume, yes.
21    Q.    And you know what the
22  reference to "a big red button" is;
23  right?
24    A.    Yes.
25    Q.    What's the big red button

Page 223

1
2  reference?
3    A.    Well, he explained it there,
4  the pause and restart.
5    Q.    Take it a little further.
6  Explain to us what your understanding is
7  and what that means.
8    A.    That means that we can partner
9  with Rite-Aid to pause ordering until
10  they meet and they are in compliance.
11    Q.    Your testimony is that pausing
12  ordering be would be partnering with
13  Rite-Aid.  Is that what you're telling
14  us?
15    A.    Yes.
16    Q.    Okay.  The pausing and
17  restarting means that McKesson had the
18  ability to shut off deliveries.  Correct?
19    A.    Yes, we do have that ability.
20    Q.    Okay.  It didn't refer to
21  anything else; right?
22    A.    No.
23    Q.    Okay.  I'm sorry, you said no,
24  but I am correct, right, it didn't refer
25  to anything else.  Correct?

Page 224

1
2    A.    The pause and restarting?
3    Q.    Yes.
4    A.    Yeah, I would assume so, no.
5    Q.    And you're not aware of
6  anybody taking a different view within
7  McKesson, right, saying that we don't
8  have that ability to shut off deliveries?
9    A.    That is a practice that is
10  general, that, I mean, we have that
11  ability with any customer.
12      MR. LAUFER:  Let's go to tab
13  13.  I'll mark this as Exhibit 10.
14      (McKesson Exhibit 10 for
15      identification, email dated May 5,
16      2025, production numbers MCK 898.)
17  BY MR. LAUFER:
18    Q.    Do you have that in front of
19  you, sir?
20    A.    I can see it.  If by chance
21  you can make it a little bit bigger, I
22  would appreciate it.
23    Q.    Of course.  We will do our
24  best.  We may have to scroll around a
25  little bit.  It's MCK 898.

Page 225

1
2      Is it fair to say that on May
3  4th McKesson did in fact push the big red
4  button and shut off orders to Rite-Aid?
5    A.    So Rite-Aid did exceed their
6  cap.  We partnered with Rite-Aid.  We
7  fulfilled all orders that were received
8  and processed those orders out with a
9  minimum pausing of the West Coast.
10    Q.    On May 4th McKesson paused all
11  orders that would put Rite-Aid over the
12  cap.  Correct?
13    A.    No.
14    Q.    Not true?
15    A.    Only the West Coast.  We
16  processed all orders up to the cap.
17    Q.    If you go to your bottom email
18  at 4:59 p.m., you wrote to Mr. Bixler,
19  "Ops will be monitoring the orders placed
20  over the weekend and will pause any
21  orders placed that would put Rite-Aid
22  over the cap."
23      Correct?
24    A.    Correct.
25    Q.    That's what you wrote?

57 (Pages 222 - 225)

Page 226

1
2     A.   Yes.
3     Q.   And that's what you meant?
4     A.   Yes.
5     Q.   And then you wrote, "If there
6  are additional wires coming in, that
7  could free up some more space."  Correct?
8     A.   That is correct.
9     Q.   And what you intended to
10  communicate there to Rite-Aid was if you
11  pay us more money we will resume
12  shipments?
13     A.   Yes.
14     Q.   And if you look at the next
15  email on the chain, up, you responded to
16  your own email and said, "I wanted to
17  inform you that as of this evening
18  McKesson is holding all new incoming
19  orders because Rite-Aid has exceeded
20  today's cap of $185 million.  So far
21  Rite-Aid's orders have accounted to a
22  little over $21 million and we are
23  anticipating more orders from the West
24  Coast."
25        Do you see that?

Page 227

1
2     A.   I do.
3     Q.   Okay.  And that was sent just
4  a few hours after your approximately 5
5  p.m. on a Friday email.  Correct?
6     A.   That is correct.
7     Q.   All right.
8        And you then wrote to
9  Mr. Bixler and Mr. McMahon, "We will not
10  be able to process any further orders
11  until Rite-Aid makes the necessary
12  payment."  Correct?
13     A.   That is correct.
14        MR. CROWELL:  Just for
15     clarification, sorry, it was
16     actually sent two days later.
17        MR. LAUFER:  I'm sorry.
18     You're totally right.
19     Q.   But the Friday email -- sorry.
20  So there was a Friday email at 5 p.m. and
21  two days later on Sunday night is when
22  you sent the follow-up email.  Correct?
23     A.   That is correct.
24     Q.   Okay.  Great.  Thank you for
25  the clarification.  Sorry about that.

Page 228

1
2        And what you were
3  communicating was that Rite-Aid wouldn't
4  be able to get any more drugs from
5  McKesson without making further payments.
6  Correct?
7     A.   That is correct.
8     Q.   And the payment, at least from
9  your perspective, had to be enough to get
10  Rite-Aid's balance below the cap.
11  Correct?
12     A.   That is correct.
13     Q.   McKesson had never stopped
14  processing shipments for Rite-Aid under
15  the supply agreement prior to May 4,
16  2025.  Right?
17     A.   Not that in my knowledge.  I
18  don't know if there is situations before
19  that that I'm not intimately aware of.
20     Q.   You're not aware of any such
21  situations.  Correct?
22     A.   I'm not, no.
23     Q.   And had McKesson ever
24  threatened to stop processing shipments
25  under the supply agreement prior to May

Page 229

1
2  4, 2025?
3     A.   I had not.  I don't know if
4  McKesson ever had.
5     Q.   In connection with your
6  deposition preparation, did you look into
7  that issue?
8     A.   I did not.
9     Q.   Had McKesson ever stopped
10  processing shipments because Rite-Aid or
11  any of its predecessors had exceeded an
12  accounts receivable cap?
13     A.   Not to -- not in this period.
14  I don't know about before.
15     Q.   You don't know if that has
16  ever happened in the 20-plus year
17  experience between the two parties.
18  Right?
19     A.   Right, I do not know that.
20     Q.   And you knew and understood
21  and McKesson knew and understood that
22  McKesson was Rite-Aid's primary supplier
23  of drugs.  Right?
24     A.   That is my understanding.
25     Q.   All right.

58 (Pages 226 - 229)

Page 230

1
2          And in fact, we can look at it
3    if you like, but we need not, Section
4    2.1-A-ii of the supply agreement actually
5    required Rite-Aid to buy all branded
6    prescription products from McKesson.
7    Correct?
8        A.    I believe it's a percentage of
9    drugs.
10       Q.    It's based on certain
11   percentages.
12       A.    That's right.
13       Q.    Okay.  Also --
14       A.    And can I, I'm sorry, Greg.
15   Can I continue?
16       Q.    Sure.
17       A.    I want to be clear.  That was
18   to earn other incentives.  We cannot
19   require a customer to purchase all their
20   drugs from us.  But in a supply agreement
21   in lieu, to get their other incentive
22   basis, their pricing and other
23   components, they have to remain within a
24   compliance.
25       Q.    McKesson has never repudiated

Page 231

1    the supply agreement.  Right?
2        A.    Disputed, you mean disputed
3    the supply agreement?
4        Q.    No, repudiated, meaning cast
5    it off, saying we're invalidating it,
6    we're terminating it, we're walking away
7    from it.  That's never happened, right,
8    with Rite-Aid.
9        A.    In one of the first lead-ups
10   to the bankruptcy, there was discussion
11   whether the supply agreement had been
12   violated or not.
13       Q.    All right.
14             But I'm talking about now.
15       A.    In this one, no.
16       Q.    McKesson has not terminated or
17   repudiated the supply agreement.
18   Correct?
19       A.    You're talking about from
20   the --
21       Q.    Yes.
22       A.    No, we have not.
23       Q.    Okay.  And McKesson hasn't
24   waived Section 2.1-A-ii about Rite-Aid

Page 232

1    buying drugs from McKesson.  Correct?
2        A.    In this particular supply
3    agreement?
4        Q.    Yes.
5        A.    Okay, no.
6        Q.    Okay.  And you would agree
7    that Rite-Aid had to buy drugs from
8    McKesson under that provision to keep its
9    stores stocked?
10            MR. CROWELL:  Object to the
11       form.
12       A.    Do they -- to that your
13   final -- the details matter at the end.
14       Q.    Okay.  Let's put it this
15   way --
16       A.    To earn their incentives and
17   cost of goods, they had to stay within
18   those percentages.  McKesson cannot
19   require any customer to buy all of their
20   product solely from McKesson.
21       Q.    Okay.
22       A.    To the market.
23       Q.    Under that provision, whatever
24   the percentages were, you would agree

Page 233

1    that Rite-Aid had a contractual
2    obligation to buy certain percentages of
3    drugs from McKesson.  Correct?
4        A.    To earn their incentives, yes.
5        Q.    And after the email we just
6    looked at from May 4th, you'd agree that
7    Rite-Aid couldn't buy drugs from McKesson
8    without making a payment to get below the
9    cap.  Right?
10       A.    That would be correct.
11       Q.    And in response to the email
12   we were just looking at, Rite-Aid
13   responded that it would make a $49.7
14   million payment.  Right?
15            MR. CROWELL:  Object to the
16       form.
17       A.    For invoices that were due.
18   So that was a -- that's due to McKesson.
19   And they were informing us what they
20   would be paying.
21       Q.    And you'll see in the email
22   from Mr. Bixler, that Rite-Aid requested
23   confirmation that McKesson would fulfill
24   and ship orders up to the cap amount of

59 (Pages 230 - 233)

Page 234

1
2  $180 million upon receipt of that wire
3  payment.
4      Do you see that?
5      A.  Ship orders up to that cap
6  amount of -- yes.
7      Q.  And Rite-Aid did not in this
8  email provide any other reason for the
9  payment.  Correct?
10     A.  They did not.  But that's a
11 normal payment that was already due.
12     Q.  Okay.  And you responded and
13 said that a payment would, quote, ensure
14 uninterrupted ordering.  Right?
15     A.  Yes.
16     Q.  And is it also fair to say
17 that while this was happening, McKesson
18 was considering putting Rite-Aid on cash
19 on deliver terms?
20     A.  Had we considered in the past?
21     Q.  No.  You were considering it
22 while this was all going on.
23     A.  There was discussion with my
24 legal team, again.
25     Q.  So the answer to my question

Page 235

1
2  is yes, you were considering putting
3  Rite-Aid on cash on deliver terms?
4      MR. CROWELL:  Again, Justin, I
5  would just advise you, caution you
6  again not to reference any
7  conversations or substance of
8  conversations with your legal team.
9      Q.  I'm not asking you for
10 substance.  McKesson was considering
11 putting Rite-Aid on cash on deliver terms
12 at around this time.  Correct?
13     A.  It was a consideration.
14     Q.  Okay.
15     MR. LAUFER:  Now let's go to
16 what I'll mark as Exhibit 11, which
17 is tab 14, Max.
18     (McKesson Exhibit 11 for
19 identification, email dated May 5,
20 2025, production numbers MCK 903.)
21     MR. LAUFER:  MCK 903.
22 BY MR. LAUFER:
23     Q.  Do you see this says from
24 Copilot in Outlook to you from May 5,
25 2025?

Page 236

1
2      A.  Yes, I see that.
3      Q.  This is how it was produced by
4  McKesson.  Do you know who actually sent
5  this to you?
6      A.  I sent this message.
7      Q.  Okay.  But it says from
8  Copilot in Outlook.  Do you know what
9  that is?
10     A.  I think this is just like the
11 summarization of how Copilot pulls.
12     Q.  Okay.  So you sent this to
13 yourself?
14     A.  I don't understand.  Like I
15 don't know how that -- like I don't
16 understand the top of that component of
17 it.
18     Q.  Okay.  I don't either, which
19 is why I was asking.  It sounds like
20 we're in the same boat.
21     A.  It's strange.
22     Q.  You addressed it to somebody
23 named Britt?
24     A.  That's correct.
25     Q.  Do you know who that is?

Page 237

1
2      A.  That's my leader.
3      Q.  The person, tell me, Britt
4  what?
5      A.  Britt is the corporate CFO.
6      Q.  Okay.  That's your direct
7  boss?
8      A.  Correct.
9      Q.  Okay.  So is it fair to say
10 this seems to be an email from you to
11 Britt, whether or not it went to Britt I
12 have no idea?
13     A.  Yes.
14     Q.  Okay.  And is it fair to
15 say -- let me just read it.  You said, "I
16 wanted to update you on the current
17 status with Rite-Aid.  About 20 minutes
18 before receiving Russell's email, I sent
19 a message to Steve.  Based on Steve's
20 response, it seems they are planning to
21 send the $49 million payment.  However, I
22 have not yet received a response from
23 either Steve or Owen.
24     "As you know, we are holding
25 all orders until we receive payment.

Page 238

1
2  Should I go ahead and notify Rite-Aid of
3  the COD terms now or would it be better
4  to wait until the payment is received?
5      "Best regards, Justin."
6      Correct?
7  A.  Correct.
8  Q.  Who is Russell referred to
9  here?
10  A.  Russell is our legal team.
11  Q.  Okay.  And Steve and Owen are
12  Rite-Aid executives.  Correct?
13  A.  That is correct.
14  Q.  Do you remember writing this
15  email?
16  A.  I think so, yeah.
17  Q.  Is it accurate?
18  A.  Yes.
19  Q.  Okay.  And so you were
20  reporting to McKesson's CFO that Rite-Aid
21  was about to make a $49 million payment.
22  Correct?
23  A.  I was updating on the
24  situation, yes.
25  Q.  Including that you had just

Page 239

1
2  learned that Rite-Aid was about to make a
3  $49 million payment.  Correct?
4  A.  That had a payment due of $49
5  million, yes.
6  Q.  That's not my question.
7      You were reporting to
8  McKesson's CFO that you had learned that
9  Rite-Aid was going to make a $49 million
10  payment.
11      Correct?
12  A.  Yes.
13  Q.  And you were also reporting to
14  McKesson's CFO that Rite-Aid was --
15  sorry, that McKesson was pausing or
16  stopping all orders until McKesson
17  received that payment.  Correct?
18  A.  Until we received the payment.
19  Yes, because that's the payment that
20  would put them below their cap for
21  invoices that were already due.
22  Q.  Okay.  Just to ask my question
23  again, I want to make sure it's clear.
24  You were reporting to the CFO that
25  McKesson was holding all product until

Page 240

1
2  McKesson received the $49 million payment
3  from Rite-Aid.  Correct?
4  A.  We only held the orders that
5  were over their cap.  We held that
6  product, yes.
7  Q.  You were holding all orders?
8  A.  That were over the cap.  It
9  doesn't say that, but that's what I said
10  in the previous emails as well.
11  Q.  That's not what you reported
12  to your CFO.  Correct?
13  A.  Hold all orders until we
14  receive.  Because at that time they had
15  exceeded their cap.
16  Q.  You didn't -- Mr. Bowers, did
17  you not report to your CFO that you were
18  holding only specific orders in excess of
19  the cap, you reported to the CFO on May
20  5th that McKesson was holding all orders
21  until the $49 million payment was made.
22  Correct?
23  A.  Without context, that is what
24  that email says.
25  Q.  Okay.  Well, did you ever call

Page 241

1
2  the CFO and clarify?
3  A.  No.
4  Q.  Okay.  And did he ever express
5  to you that he had some different
6  understanding than what the plain
7  language of this email reflects?
8  A.  No.
9  Q.  And then you also asked your
10  CFO at McKesson if you should go ahead
11  and notify Rite-Aid of the COD terms now
12  or wait until the payment is received.
13      Do you see that?
14  A.  I do.
15  Q.  And COD means cash on deliver.
16  Right?
17  A.  Correct.
18  Q.  So you were saying as of May
19  5th to your CFO, should I tell Rite-Aid
20  now that we're going to impose these COD
21  terms.  Correct?
22  A.  I was asking the question,
23  because they had a payment due.
24  Q.  So a few minutes ago when you
25  said it was a consideration, the cash on

Page 242

1
2  deliver terms was actually something that
3  had been decided upon.  Correct?
4      A.   Well, it's actually referenced
5  in our supply agreement.  If Rite-Aid
6  misses a payment, that they would
7  immediately go to COD terms.  So I am
8  referencing what was already pre-written
9  into a supply agreement.
10     Q.   That's not my question.  I'm
11 not questioning or challenging whether
12 you had the right to do it or whether it
13 was a good decision or whatever.
14          All I'm asking you is, isn't
15 it true that as of this time, McKesson
16 had already determined that it was going
17 to impose the COD terms on Rite-Aid?
18     A.   No.
19     Q.   Didn't --
20     A.   If they already returned it, I
21 wouldn't have asked the question.
22     Q.   Did the CFO ever respond to
23 you?
24     A.   Honestly, I don't remember.
25     Q.   Did you ever tell Rite-Aid

Page 243

1
2  that McKesson was going to impose COD
3  terms?
4      A.   Did I ever tell Rite-Aid?  I
5  don't believe so, no.  Because we, just
6  to be clear, we never did.  Until they
7  defaulted again.
8      Q.   Now, this email is dated
9  UTC time.  Correct?
10     A.   Yes.
11     Q.   And that would have been
12 Eastern Daylight?
13     A.   Would have been 6.  So that
14 would have been 7, yes.
15     Q.   And your testimony is that at
16 no point did McKesson inform Rite-Aid of
17 the change to COD terms?
18     A.   I don't -- I don't know.  I
19 don't think we did.  I don't -- like this
20 would have been Sunday evening?  I think
21 it's Sunday evening.  I told them that
22 they had exceeded their cap, they had to
23 make a payment on that.  The $49 million
24 was a scheduled payment that would be
25 received on that Monday.  If they didn't,

Page 244

1
2  they would be in violation of their
3  supply agreement.
4      Q.   Who was involved in the
5  discussions about changing to COD terms?
6      A.   It was part of our supply
7  agreement.
8      Q.   That's not my question.
9          Who was involved in
10 discussions at McKesson at around this
11 time about changing to COD terms?
12     A.   Well, this would have been,
13 again, with my legal team.
14     Q.   Well, this email suggests at
15 least to me, you can tell me if I'm
16 wrong, that the CFO had some knowledge of
17 this.  Had you never discussed this issue
18 with the CFO of McKesson?
19     A.   Not directly.
20     Q.   You had discussed it with the
21 CFO indirectly?
22     A.   Legal team.
23     Q.   What does that mean?
24          MR. CROWELL:  Again, Justin, I
25     know you know this already, I'm

Page 245

1
2      just cautioning you not to disclose
3      anything that was discussed with
4      the legal team.
5          THE WITNESS:  Yep.
6      Q.   Who was involved in the
7  discussions about changing the terms to
8  COD?
9      A.   So it began -- it was outlined
10 in our supply agreement.  So mutually
11 agreed upon with Rite-Aid and McKesson.
12 And I told you I discussed with the legal
13 team.
14     Q.   Who else?
15     A.   I don't think Britt joined
16 those conversations with me directly.
17     Q.   Anyone else?
18     A.   No.
19     Q.   Had you determined as of the
20 date and time of this email that it was
21 your view that McKesson should flip over
22 to COD terms with Rite-Aid?
23     A.   I had not determined.
24     Q.   You had not?
25     A.   No.

62 (Pages 242 - 245)

Page 246

1
2      Q.   So if Mr. -- if Britt had
3   written back to you and said yes, you
4   would have said oh, no, no, no, we
5   haven't made that determination yet so
6   I'm not going to do that?
7      A.   He would be an executive and
8   my superior and I would have taken his
9   direction.
10      Q.   Okay.  So if he had written
11   yes, what would you have done?
12      A.   We would have had to
13   communicate.
14      Q.   To who?
15      A.   To Rite-Aid.
16      Q.   If Britt, the CFO of McKesson,
17   had responded to this email and said yes,
18   you would have gone to Rite-Aid and said
19   we're switching you to COD.  Correct?
20      A.   I would have taken his
21   direction, yes.
22      Q.   Okay.  By telling Rite-Aid
23   that they were switching to COD.
24   Correct?
25      A.   Yes.

Page 247

1
2      Q.   Okay.  Do you remember when
3   Rite-Aid filed for bankruptcy?
4      A.   Yes, I do.
5      Q.   When?
6      A.   Monday afternoon.  After they
7   communicated that they are making their
8   scheduled $49 million payment.
9      Q.   Do you remember what day that
10   was?
11      A.   I can't touch anything.  I
12   think it was Monday the 6th.
13      Q.   Actually it was Monday the
14   5th, the very same day as this email.
15      A.   I don't have the calendar in
16   front of me because I can't see anything.
17      Q.   I'm not tricking.  I'm just
18   saying it was Monday, May 5th.
19      A.   It was Monday, yes.
20      Q.   The very same date of this
21   email.
22      A.   I don't know -- because I
23   didn't write this email the way this is
24   formed.  I don't know how this is pulling
25   this information in.

Page 248

1
2      Q.   It's from your system, so you
3   guys will have to figure it out and let
4   us know.  I'm just telling you that it
5   was produced to us.
6      A.   Okay.
7      Q.   You're not disputing, though,
8   that you wrote this email on the same day
9   that Rite-Aid filed for bankruptcy.
10   Correct?
11      A.   I'm not disputing that, no.
12      Q.   Okay.  Now, after you said
13   that -- I'm sorry.
14          After you said that a payment
15   would ensure uninterrupted ordering, I
16   think we've already established this,
17   Rite-Aid did in fact make the 49 -- a
18   $49.7 million payment.  Correct?
19      A.   They made a payment that was
20   due, and they paid the invoices that were
21   due on that day.
22      Q.   They made a payment for $49.7
23   million.  Correct?
24      A.   For invoices that were due,
25   yes.

Page 249

1
2      Q.   Okay.  When you say for
3   invoices that were due, did someone from
4   Rite-Aid call you up and say, in sum or
5   substance, or write to you and say, the
6   49.7 is for invoices that are due?
7      A.   Yes.
8      Q.   Who?
9      A.   They sent emails to my
10   accounts receivable department.  Steve
11   emailed directly and showed that in the
12   email that you showed earlier, that would
13   reduce their balance to $135 million,
14   then they're well underneath their $180
15   million cap.
16      Q.   Did you see that email at the
17   time?
18      A.   Yeah, he sent it to me.
19      Q.   And who did you discuss it
20   with?
21      A.   I think I notified Britt that
22   they made their payment.
23      Q.   Do you recall at around what
24   time that payment was made, or the wire
25   was made?

63 (Pages 246 - 249)

Page 290

1
2  states, "Nearly every account used by the
3  debtors in their cash management system
4  is held by HQ, including all store level
5  bank accounts."
6       Do you see that?
7    A.  I do.
8    Q.  Do you have any basis to
9  dispute that statement?
10   A.  No.
11   Q.  Okay.  If we go to paragraph 7
12 of Mr. Liebman's declaration.
13 Mr. Liebman wrote, "On April 23, 2025,
14 McKesson sent a letter to Rite-Aid
15 stating that effective May 1, 2025
16 Rite-Aid would have to pay for deliveries
17 within six days, reduced from ten days in
18 the supply agreement, and the 10-day
19 accounts receivable cap would be reduced
20 from 270 million to $175 million."
21       Do you dispute that statement?
22   A.  No.
23   Q.  And then in the next paragraph
24 of paragraph 7 Mr. Liebman wrote,
25 "Because Rite-Aid's receivable balance

Page 291

1
2  then totaled approximately $250 million,
3  this change forced Rite-Aid to reduce
4  orders from, and accelerate payments to
5  McKesson."
6       Do you have any basis to
7  dispute that statement?
8       MR. CROWELL:  Object to the
9    form.
10   A.  I don't know about accelerate,
11 because you had to factor in incoming
12 payments and of course reducing orderings
13 is a strategy.
14   Q.  Do you have any personal
15 knowledge about the inner workings of
16 Rite-Aid on these issues?
17   A.  I do not.
18   Q.  Okay.  And then paragraph 8,
19 again, I think we covered this.
20 Mr. Liebman wrote, "After further
21 negotiations on April 30, 2025, McKesson
22 stated that it would require payment
23 within seven days of invoicing and the
24 10-day accounts receivable cap would be
25 reduced to $200 million starting May 1st,

Page 292

1
2  an initial $75 million reduction, with a
3  further $5 million step-down each day."
4       I take it you'd agree with
5  that statement?
6    A.  Agree.
7    Q.  And then if we go to paragraph
8  9.  I'm assuming you're going to
9  challenge me on this, but I'll read it to
10 you anyway.
11       Mr. Liebman wrote, "Without
12 notice to Rite-Aid, McKesson also altered
13 how it calculated Rite-Aid's outstanding
14 accounts receivable, which made it more
15 difficult for Rite-Aid to comply with the
16 already reduced 10-day accounts
17 receivable cap.
18       "Previously McKesson had only
19 included orders in the accounts
20 receivable balance once they were
21 delivered to Rite-Aid.  After the change,
22 however, McKesson began including all
23 Rite-Aid orders in the accounts
24 receivable balance as soon as they were
25 placed."

Page 293

1
2       Do you see that?
3    A.  I see that.
4    Q.  What, if anything, in there do
5  you dispute?
6    A.  That we altered how we
7  calculated the accounts receivable.
8    Q.  All right.
9       So let's take the second
10 sentence.  Do you dispute that McKesson
11 had at a time only included orders in the
12 accounts receivable balance once they
13 were delivered to Rite-Aid?
14   A.  That's consistent, that's the
15 only way we do it.
16   Q.  So that is a true statement.
17 Correct?
18   A.  Correct.
19   Q.  Okay.  And your testimony is
20 that that never changed?
21   A.  That is correct.
22   Q.  Okay.  And I think you told me
23 earlier, you do not have any internal
24 communications supporting your testimony
25 on that subject.  Correct?

74 (Pages 290 - 293)

Page 294

1
2      MR. CROWELL:  Object to the
3  form.
4      A.   Yeah, I'm not sure I
5  understand the question.  I'm sorry.
6      Q.   All right.  Then I will leave
7  it be.
8      Paragraph 15 talks about
9  rebates and credits.  But I take it your
10  counsel will instruct you not to answer
11  and you will abide by it and we will
12  reserve all rights.
13      MR. LAUFER:  We can take that
14  down, Max.  Thank you.
15      You'll be very disappointed to
16  hear that I may be close to the
17  end, Mr. Bowers.
18      MR. CROWELL:  I'm personally
19  disappointed, Greg.
20      MR. LAUFER:  I included you in
21  that, or course.  Can we just take,
22  we don't even -- we can go off the
23  record, but nobody needs to leave,
24  if I can just take two minutes to
25  chat with my compatriots I'll come

Page 295

1
2  right back, if that's okay.
3      MR. CROWELL:  Greg, can we
4  just take ten, because that way
5  maybe I can see if I need to do
6  anything too, and that way we don't
7  have to go off again.  Is that
8  cool?
9      MR. LAUFER:  Sure.
10      THE VIDEOGRAPHER:  The time is
11  2:50 p.m. Central, and we are off
12  the record.
13      (A recess was taken.)
14      THE VIDEOGRAPHER:  The time is
15  2:58 p.m. Central, and we are back
16  on the record.
17      MR. LAUFER:  Mr. Bowers, I
18  actually do not have any more
19  questions for you right now.  So I
20  thank you for your time.
21      MR. CROWELL:  And I don't have
22  any questions either.  I thank you,
23  Greg, and thank you, Justin.
24      MR. LAUFER:  Thank you all.
25  For the Sidley folks, my partner

Page 296

1
2  Alice -- I'm sorry, we can go off
3  the record now.  We're adjourned,
4  Mr. Bowers, thank you.
5      THE VIDEOGRAPHER:  The time is
6  2:59 p.m. Central, and that
7  concludes the deposition for today.
8  Thank you, everyone.
9      (Time noted:  3:59 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 297

1
2  STATE OF _____  )
3              ss:
4  COUNTY OF _____  )
5
6      I, JAMES JUSTIN BOWERS, the witness
7  herein, having read the foregoing
8  testimony of the pages of this
9  deposition, do hereby certify it to be a
10  true and correct transcript, subject to
11  the corrections, if any, shown on the
12  attached page.
13
14
15
16      JAMES JUSTIN BOWERS
17
18  Subscribed and sworn to before me
19
20  This _____ day of _____, 2025.
21
22
23
24  _____
25    Notary Public

75 (Pages 294 - 297)

Page 298

```
 1
 2       C E R T I F I C A T E
 3  STATE OF NEW YORK   )
                        : ss.
 4  COUNTY OF NEW YORK  )
 5
 6      I, ERIC J. FINZ, a Shorthand
 7  Reporter and Notary Public within and for
 8  the State of New York, do hereby certify:
 9      That JAMES JUSTIN BOWERS, the
10  witness whose deposition is hereinbefore
11  set forth, was duly sworn by me and that
12  such deposition is a true record of the
13  testimony given by the witness.
14      I further certify that I am not
15  related to any of the parties to this
16  action by blood or marriage, and that I
17  am in no way interested in the outcome of
18  this matter.
19      IN WITNESS WHEREOF, I have hereunto
20  set my hand this 5 day of August, 2025.
21
22
23
24        ERIC J. FINZ
25
```

Page 299

```
 1
 2       E X H I B I T S
 3  DESCRIPTION                    PAGE
 4  (McKesson Exhibit 1 for        82
 5  identification, Supply
 6  Agreement, production numbers
 7  RAD-MCK 1085 through RAD-MCK
 8  1358.)
 9  (McKesson Exhibit 2 for        82
10  identification, Motion of
11  McKesson Corporation.)
12  (McKesson Exhibit 3 for        90
13  identification, Final Order.)
14  (McKesson Exhibit 4 for        99
15  identification, letter dated
16  April 23, 2025, production
17  numbers RAD-MCK 5913 through
18  RAD-MCK 5914.)
19  (McKesson Exhibit 5 for       159
20  identification, email dated
21  April 29, 2025, production
22  numbers MCK 788 through MCK
23  789.)
24
25
```

Page 300

```
 1
 2      E X H I B I T S (Continued)
 3  DESCRIPTION                    PAGE
 4  (McKesson Exhibit 6 for       168
 5  identification, email dated May
 6  2, 2025, with attachment,
 7  production numbers MCK 849
 8  through MCK 852.)
 9  (McKesson Exhibit 7 for       179
10  identification, email dated May
11  1, 2025, production numbers MCK
12  799 through MCK 800.)
13  (McKesson Exhibit 8 for       182
14  identification, email dated May
15  2, 2025, production numbers MCK
16  819 through MCK 820.)
17  (McKesson Exhibit 9 for       218
18  identification, email dated May
19  3, 2025, production numbers MCK
20  13107 through MCK 13108.)
21  (McKesson Exhibit 10 for      224
22  identification, email dated May
23  5, 2025, production numbers MCK
24  898.)
25
```

Page 301

```
 1
 2      E X H I B I T S (Continued)
 3  DESCRIPTION                    PAGE
 4  (McKesson Exhibit 11 for      235
 5  identification, email dated May
 6  5, 2025, production numbers MCK
 7  903.)
 8  (McKesson Exhibit 12 for      251
 9  identification, email dated
10  October 28, 2024, production
11  numbers MCK 4092.)
12  (McKesson Exhibit 13 for      255
13  identification, email dated May
14  23, 2025, production numbers MCK
15  14248.)
16  (McKesson Exhibit 14 for      256
17  identification, email dated May
18  5, 2025, production numbers MCK
19  904 through MCK 905.)
20  (McKesson Exhibit 15 for      259
21  identification, email dated May
22  29, 2025, production numbers MCK
23  14495.)
24
25
```

76 (Pages 298 - 301)

# EXHIBIT 4

Docusign Envelope ID: 4FA51132-63BF-457F-AE70-5B11E5A03D97

April 23, 2025

***VIA FAX, ELECTRONIC MAIL AND CERTIFIED MAIL***

**TO:**    Rite Aid Corporation                          Rite Aid Corporation
1200 Intrepid Avenue, 2nd Floor          1200 Intrepid Avenue, 2nd Floor
Philadelphia, PA 19112                      Philadelphia, PA 19112
Attn: GVP, Enterprise Pharmaceutical     Attn: SVP, Chief Accounting Officer
Purchasing                                   Email: sbixler@riteaid.com
Email: omcmahon@riteaid.com

**CC:**    Rite Aid Corporation
200 Newberry Commons
Etters, PA 17319
Attn: Christin Bassett, Acting General
Counsel and Corporate Secretary
Email: christin.bassett@riteaid.com
Website Address: www.riteid.com

**RE:**    <u>McKesson Corporation Supply Agreement – Notice of Change in Payment Terms
and Credit Availability under Section 7.12(a)</u>

Dear Owen:

Pursuant to Sections 7.12 and 16 of that certain supply agreement between McKesson
Corporation ("McKesson") and Rite Aid Corporation ("Rite Aid") entered into as of August 30,
2024 (the "Supply Agreement"), McKesson hereby gives notice (this "Notice") of certain changes
in payment terms and credit availability under the Supply Agreement as set forth herein. All
undefined capitalized terms used in this Notice shall have the meaning assigned to them in the
Supply Agreement.

Pursuant to the clear terms of Section 7.12(a) of the Supply Agreement, McKesson has the
right to change payment terms and limit total credit following seven (7) days' written notice if Rite
Aid fails to maintain compliance with McKesson's credit requirements.

The financial reporting and other information furnished to McKesson in recent months
pursuant to the Supply Agreement demonstrates that Rite Aid's financial performance fails to meet
McKesson's credit requirements.  Among other things, the financial reporting provided to
McKesson demonstrates that Rite Aid's actual performance has fallen far short of the financial
projections (including with respect to projected EBITDA and liquidity) provided to McKesson at
the time of Rite Aid's emergence from bankruptcy.  We further note that as of April 23, we have
only been provided with information through January.  Based on such post-emergence financial
reporting and all other available information regarding Rite Aid's financial condition, McKesson
has determined that Rite Aid is not in compliance with McKesson's credit requirements.

**EXHIBIT 4**

Accordingly, McKesson hereby gives notice of the following changes to payment terms and credit availability under Section 7.1 of the Supply Agreement, which changes will take effect, automatically, without further action by any party, on May 1, 2025:

    a. **Accounts Receivable Cap:** The aggregate gross amount owed to McKesson for deliveries of Products directly to Pharmacies may not in any event exceed 175 Million Dollars ($175,000,000.00).

    b. **Payment Terms:** EDI Invoices for deliveries of Products directly to Pharmacies shall be due and payable six (6) days after the Invoice Date.

The above new Accounts Receivable Cap and Payment Terms are required given Rite Aid's failure to meet McKesson's credit requirements as conclusively established by the information received to date. Please be advised, however, that McKesson continues to evaluate whether further changes are warranted in light of McKesson's ongoing analysis of existing (and/or any supplemental) information regarding the nature and extent of Rite Aid's noncompliance with McKesson's credit requirements and reserves the right to make any such changes as it deems necessary, including, without limitation, further downward adjustments to the Accounts Receivable Cap and Payment Terms and/or requiring cash on delivery. McKesson further notes that the seven (7) day notice period under Section 7.12(a) of the Supply Agreement does not excuse Rite Aid from otherwise remaining fully compliant with the terms of the Supply Agreement.

Please also be advised that McKesson further reserves all rights and remedies available to it under the Supply Agreement, as well as all rights and remedies available to McKesson under applicable law and equity. McKesson remains willing to consider additional financial information concerning Rite Aid's ability to satisfy McKesson's credit requirements, but the new Accounts Receivable Cap and Payment Terms set forth above shall remain in place unless agreed to in writing by McKesson.

**McKesson Corporation**

By:                                     
Justin Bowers
Senior Vice President
General Manager
Financial Services and Solutions

RAD-MCK_00005914

| | |
|---|---|
| **From:** | Bowers, Justin </o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=7d575e9fdf8964eb8988703faaca7ede9-e2xhgux> |
| **To:** | Steven K Bixler <sbixler@riteaid.com>: Owen P McMahon <omcmahon@riteaid.com> |
| **Subject:** | Re: Rite Aid payment: 5/1/25 |
| **Sent:** | 2025/05/02 16:36:47 (UTC +00:00) |

Understood and we appreciate the continued collaboration.

Thanks,
Justin

**From:** Steven K Bixler <sbixler@riteaid.com>
**Sent:** Friday, May 2, 2025 10:21 AM
**To:** Bowers, Justin <Justin.Bowers@McKesson.com>; Owen P McMahon <omcmahon@riteaid.com>
**Subject:** [EXTERNAL] RE: Rite Aid payment: 5/1/25

CAUTION: This email was sent from an EXTERNAL source. Use caution when clicking links or opening attachments.

Justin –

As we continue to manage toward the cap, I wanted to reach out to let you know that we intend to deduct the $11M in incremental payment (prepayment) made yesterday from today's payment.  I believe that we will be well below the cap even after that deduction while still making timely payment on all invoices due.

Please let me know if you have any concerns.  Assuming not, we plan to initiate our payment net of the $11M.

Steve

**From:** Bowers, Justin <Justin.Bowers@McKesson.com>
**Sent:** Thursday, May 1, 2025 7:00 PM
**To:** Steven K Bixler <sbixler@riteaid.com>; Owen P McMahon <omcmahon@riteaid.com>
**Subject:** Fw: Rite Aid payment: 5/1/25

Hi Steve,

Thank you for your prompt response and quick action in addressing the $11M overage. We appreciate your efforts to ensure everything is on track.

We believe that with the anticipated payment from Rite Aid due tomorrow, this will set them up for success in managing within the credit limits going forward.

But in general Rite Aid should pay down balances to operate under credit limit with active ordering and shipments.

Thanks again for your cooperation and support.

Justin Bowers

**From:** Steven K Bixler <sbixler@riteaid.com>
**Sent:** Thursday, May 1, 2025 2:46 PM
**To:** Bowers, Justin <Justin.Bowers@McKesson.com>; Owen P McMahon <omcmahon@riteaid.com>
**Subject:** [EXTERNAL] RE: Rite Aid payment: 5/1/25

CAUTION: This email was sent from an EXTERNAL source. Use caution when clicking links or opening attachments.

Justin –

In addition to today's normal course payment, I had the team initiate an additional wire in the amount of $11M as presented below.  There appears to be some slight difference in our amounts but nothing that we cannot work through.

I would like to connect on the inclusion of today's orders in the lower portion of your calculation below.  Am I correct that this represents orders being placed today for delivery tomorrow?  If so, I'm confused as to why those would be included in the cap as that is a departure from my understanding of the cap calculation.

Steve

**From:** Bowers, Justin <Justin.Bowers@McKesson.com>
**Sent:** Thursday, May 1, 2025 2:20 PM

EXHIBIT
8

**To:** Steven K Bixler <sbixler@riteaid.com>; Owen P McMahon <omcmahon@riteaid.com>
**Subject:** Rite Aid payment: 5/1/25

Steve and Owen -

I wanted to touch base regarding the agreed-upon terms between McKesson and Rite Aid. As it stands, our forecast indicates that Rite Aid is set to exceed the established credit limit of $200M by the end of the business day.

To ensure everything stays on track, it's crucial that McKesson receives the necessary payments accordingly. Please make sure to follow up and facilitate the payments as outlined.  Thanks for your attention to this matter.

| | |
|---|---|
| 5/1 Open Balance (net of credits): | $241M |
| Plus: Additional invoices from 4/30 orders: | $2M |
| Less: Payment received today (5/1) | ($32M) |
| Subtotal Balance | $211M |
| **Payment to meet $200M Cap requirement** | **$11M** |

| | |
|---|---|
| 5/1 Expected forecast of daily orders: | |
| Estimated current day orders | $18M |

| | |
|---|---|
| *Total incremental estimated payment required* | *\*$29M* |

*\*Note: this is based on expected orders today.  The additional payment should cover today's orders and will vary higher or lower driven by Rite Aid's ordering behavior today.*

Justin Bowers

DISCLAIMER
This e-mail, including attachments, may include confidential, proprietary privileged and/or private information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or intended recipient's authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail and all attachments immediately..

# EXHIBIT 5

| From: | Dev, Karan </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B9C55A0E7F624A94B7D9EF1A089D25DB-EZ?IT03> |
|---|---|
| To: | Voss, Daniela <Daniela.Voss@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com> |
| CC: | Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com> |
| Subject: | RE: RITE AID 05/09/2025 |
| Sent: | 2025/05/09 20:39:15 (UTC +00:00) |

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413118252 / CC 8000.

| Doc.Type | DZ ( Customer payment ) Normal document | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Doc. Number | 1413118252 | Company Code | 8000 | Fiscal Year | 2026 | | | |
| Doc. Date | 05/09/2025 | Posting Date | 05/08/2025 | Period | 02 | | | |
| Calculate Tax | ☐ | | | | | | | |
| Ref.Doc. | CK20250509005194 | | | | | | | |
| Doc. Currency | USD | | | | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 35,000,000.00 | USD | RITE AID HDQTR |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 35,000,000.00- | USD | RITE AID HDQTR |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Voss, Daniela <Daniela.Voss@McKesson.com>
**Sent:** Friday, May 9, 2025 1:28 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/08/2025

Thank you – please post to 602735 as unapplied until AR can provide the remit instructions.

Best,
Daniela

**Daniela Voss**
Sr. Manager, Credit & AR Operations | +972-969-0036 | Daniela.Voss@McKesson.com
RBS Financial Services and Solutions

**McKesson** | 6555 State Highway 161, Las Colinas, TX 75039 | www.mckesson.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 8, 2025 2:52 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/08/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413110341 / CC 8000.

| Doc.Type | DZ ( Customer payment ) Normal document | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Doc. Number | 1413110341 | Company Code | 8000 | Fiscal Year | 2025 | | | |
| Doc. Date | 05/08/2025 | Posting Date | 05/08/2025 | Period | 02 | | | |
| Calculate Tax | ☐ | | | | | | | |
| Ref.Doc. | CK20250508005125 | | | | | | | |
| Doc. Currency | USD | | | | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 40,000,000.00 | USD | RITE AID HDQTR |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 40,000,000.00- | USD | RITE AID HDQTR |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, May 6, 2025 3:11 AM
**To:** Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>

MCK_0013367

Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/05/2025

Hi All,

We have received WIRE of $ 49,674,910.00 on 05/05/2025

Total of the Remit is $ 49,674,910.00

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

From: Dev, Karan <Karan.Dev@McKesson.com>
Sent: Tuesday, May 6, 2025 2:11 AM
To: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/05/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413105754 / CC 8000.

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number   1413105754      Company Code    8000       Fiscal Year   2026
Doc. Date     05/05/2025      Posting Date    05/05/2025  Period        02
Calculate Tax
Ref.Doc.      CA20259505005176
Doc. Currency USD
```

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|-----|----|---------|------|--------------------|-----------|------|----------|-----------|-----------|--------|------|------|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 49,674,910.00 | USD | RITE AID HQQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 49,674,910.00- | USD | RITE AID HQQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

From: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
Sent: Saturday, May 3, 2025 3:06 AM
To: Dev, Karan <Karan.Dev@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/02/2025

Hi All,

We have received WIRE of $ 11,000,000.00 on 05/01/2025 and WIRE of $ 52,347,149.66 on 05/02/2025

Total of the Remit is $ 63,347,149.66 and total of both WIRE's is $ 63,347,149.66 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

From: Dev, Karan <Karan.Dev@McKesson.com>
Sent: Saturday, May 3, 2025 1:58 AM
To: Voss, Daniela <Daniela.Voss@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/02/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413104683 / CC 8000.

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number   1413104683      Company Code    8000       Fiscal Year   2026
Doc. Date     05/02/2026      Posting Date    05/02/2025  Period        02
Calculate Tax
Ref.Doc.      CA20250502040061
Doc. Currency USD
```

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|-----|----|---------|------|--------------------|-----------|------|----------|-----------|-----------|--------|------|------|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 52,347,149.66 | USD | RITE AID HQQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 52,347,149.66- | USD | RITE AID HQQTRS |

Thanks & Regards,

CONFIDENTIAL

Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Voss, Daniela <Daniela.Voss@McKesson.com>
**Sent:** Friday, May 2, 2025 2:50 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Thank you, Karan and Sandeep –

Please leave on acct #602735 in unapplied as discussed. We'll share remit/application instructions once available.

Best,
Daniela

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 1, 2025 4:07 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

The second payment from Rite Aid is now booked manually through Sap Doc# 1413102456 / CC 8000.

| Doc.Type | DZ | ( Customer payment ) Noreal document | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Doc. Number | 1413102456 | | Company Code | 8000 | | Fiscal Year | 2026 | | | |
| Doc. Date | 05/01/2025 | | Posting Date | 05/01/2025 | | Period | 02 | | | |
| Calculate Tax | ☐ | | | | | | | | | |
| Ref.Doc. | CK20250501004711 | | | | | | | | | |
| Doc. Currency | USD | | | | | | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - 8 OF A | 8210 | | | 602735 | | 11,600,000.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 11,600,000.00 | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, May 2, 2025 12:23 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

We have received ACH of $ 436,354.81 and WIRE of $ 32,115,624.04 on 05/01/2025

Total of the Remit is $ 32,551,978.85 and total of ACH and WIRE is $ 32,551,978.85 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 1, 2025 11:59 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

The payment has been booked through Sap Doc# 1413102283 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document |
|---|

| Doc. Number | 1413102283 | Company Code | 8000 | Fiscal Year | 2026 |
|---|---|---|---|---|---|
| Doc. Date | 05/01/2025 | Posting Date | 05/01/2025 | Period | 02 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK2025050100383089 | | | | |
| Doc. Currency | USD | | | | |
| Doc. Hdr Text | 0031043100007 | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8600 | UNID CASH - CARROLL | 8210 | | | 0031043100007 | | 32,115,624.04 | USD | CK2025050100383 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031043100007 | | 32,115,624.04 | USD | CK2025050100383 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 29, 2025 1:22 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/28/2025

Hi All,

We have received ACH of $ 194,385.76 and WIRE of $ 51,977,508.76 on 04/28/2025

Total of the Remit is $ 52,171,894.52(including credit of $2,125,626.44 & $9,901.98) and total of ACH and WIRE is $ 52,171,894.52 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Tuesday, April 29, 2025 12:56 AM
**To:** Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/28/2025

Hi All,

The payment for Rite Aid has been booked manually through Sap Doc# 1413097821 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document |
|---|

| Doc. Number | 1413097821 | Company Code | 8000 | Fiscal Year | 2026 |
|---|---|---|---|---|---|
| Doc. Date | 04/28/2025 | Posting Date | 04/28/2025 | Period | 01 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250428005412 | | | | |
| Doc. Currency | USD | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - 8 OF A | 8210 | | | 602735 | | 51,977,508.76 | USD | RITE AID RDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 51,977,508.76 | USD | RITE AID RDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Negi, Shivam <Shivam.Negi@McKesson.com>
**Sent:** Saturday, April 26, 2025 1:16 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/25/2025

Hi All,

We have received ACH of $ 385,150.35 and WIRE of $ 48,789,238.34 on 04/25/2025

Total of the Remit is $ 49,174,388.69 and total of ACH and WIRE is $ 49,174,388.69 (what we have received)

There is no overpayment. It has been applied at net.

*Thanks & Regards,*
*Shivam Negi,*

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Saturday, April 26, 2025 12:22 AM

To: Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fielos, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 04/25/2025

Hi All,

The payment has been booked through Sap Doc# 1413095925 / CC 8000.

```
 Doc.Type   DZ  ( Customer payment ) Normal document
 Doc. Number    1413095925      Company Code    8000       Fiscal Year    2026
 Doc. Date      04/25/2025       Posting Date    04/25/2025   Period        01
 Calculate Tax  
 Ref.Doc.       CK20250425004476
 Doc. Currency  USD
 Doc. Hdr Text  0031904900012
```

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12105 | 8003 | UNID CASH – CARROLL | 8210 | | | 0031904900012 | | 48,789,238.34 | USD | CK20250425004 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031904900012 | | 48,789,238.34- | USD | CK20250425004 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

From: Negi, Shivam <Shivam.Negi@McKesson.com>
Sent: Friday, April 25, 2025 6:14 PM
To: Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 04/24/2025

Hi All,

We have received ACH of $ 598,135.03 and WIRE of $ 45,576,708.28 on 04/24/2025

Total of the Remit is $ 46,170,783.95 (excluding # 7562628295 which is already cleared) and total of ACH and WIRE is $ 46,174,843.31 (what we have received)

There is over payment of $ 4,059.36, for which we have created a credit residual on #601132.

*Thanks & Regards,*
*Shivam Negi*

From: Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
Sent: Friday, April 25, 2025 5:42 PM
To: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
Subject: RE: RITE AID 04/24/2025

Hi All,

The payment has been posted through SAP doc#1413095483 / CC8000

```
 Doc.Type   DZ  ( Customer payment ) Normal document
 Doc. Number    1413095483      Company Code    8000       Fiscal Year    2026
 Doc. Date      04/24/2025       Posting Date    04/24/2025   Period        01
 Calculate Tax  
 Ref.Doc.       CK20250424005610
 Doc. Currency  USD
 Doc. Hdr Text  0031899800004
```

| Itm | CoGd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12105 | UNID CASH – CARROLL | | 8210 | | | | 45,576,708.28 | 45,576,708.28 | 0031899800004 | CK20250424005 |
| 2 | 8000 | 15 | 04/24/2025 | 602735 | RITE AID 777 | | | | | | 45,576,708.28- | 45,576,708.28- | 0031899800004 | CK20250424005 |

Regards,
Ritesh

From: Panwar, Sandeep Kumar <SandeepKumar.Panwar@Mckesson.com>
Sent: Tuesday, April 22, 2025 8:34 PM
To: Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
Subject: RE: RITE AID 04/21/2025

Hi All,

We have received ACH of $ 233,783.57 and WIRE of $ 54,949,517.56 on 04/21/2025

Total of the Remit is $ 55,183,301.13. and total of ACH and WIRE is $ 55,183,301.13 (what we have received)

CONFIDENTIAL

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 22, 2025 6:27 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/21/2025

Hi All,

The payment has been posted through SAP doc#1413085176

| Doc.Type : DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|
| Doc. Number | 1413085176 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/21/2025 | Posting Date | 04/21/2025 | Period | 01 |
| Calculate Tax | ☐ | | |
| Ref.Doc. | CK20250421003551 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031878200005 | | |

| Ite | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng.doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 54,949,517.56 | 54,949,517.56 | 0031878200005 | CK20250421003 |
| 2 | 8000 | 15 | 04/21/2025 | 602735 | RITE AID 777 | | | | | | 54,949,517.56- | 54,949,517.56- | 0031878200005 | CK20250421003 |

Regards,
Ritesh Sharma

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Saturday, April 19, 2025 2:40 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/18/2025

Hi All,

We have received ACH of $ 442,014.89 and WIRE of $ 55,901,460.87 on 04/18/2025

Total of the Remit is $ 56,347,535.12 (excluding # 143401001 which is already cleared) and total of ACH and WIRE is $ 56,343,475.76 (what we have received)

There is short payment of $ 4,059.36, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Saturday, April 19, 2025 1:48 AM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/18/2025

Hi All,

The payment has been booked through Sap Doc# 1413082288 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|
| Doc. Number | 1413082288 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/18/2025 | Posting Date | 04/18/2025 | Period | 01 |
| Calculate Tax | ☐ | | |
| Ref.Doc. | CK20250418002492 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031859100009 | | |

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8000 | UNID CASH - CARROLL | | | 8210 | 0031859100009 | | 55,901,460.87 | USD | CK20250418002 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031859100009 | | 55,901,460.87- | USD | CK20250418002 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, April 18, 2025 7:29 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>

Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
Subject: RE: RITE AID 04/17/2025

Hi All,

We have received ACH of $ 544,361.46 and WIRE of $ 43,611,452.59 on 04/17/2025

Total of the Remit is $ 44,155,814.05 (including # 172943001,#143401001,#1600034712 and excluding # 7560833905,# 7560359665 they are already cleared) . and total of ACH and WIRE is $ 44,155,814.05 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

From: Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
Sent: Friday, April 18, 2025 5:07 PM
To: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
Subject: RE: RITE AID 04/17/2025

Hi All,

The payment has been posted through SAP doc#1413081636

| Doc.Type : DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|
| Doc. Number | 1413081636 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/17/2025 | Posting Date | 04/17/2025 | Period | 01 |
| Calculate Tax | | | |
| Ref.Doc. | CK20250417004430 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031853600007 | | |

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 43,611,452.59 | 43,611,452.59 | 0031853600007 | CK20250417004 |
| 2 | 8000 | 15 | 04/17/2025 | 602735 | RITE AID 777 | | | | | | 43,611,452.59- | 43,611,452.59- | 0031853600007 | CK20250417004 |

Thanks,
Ritesh Sharma

From: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
Sent: Tuesday, April 15, 2025 11:21 PM
To: Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
Subject: RE: RITE AID 04/14/2025

Hi All,

We have received ACH of $ 354,915.10 and WIRE of $ 52,904,608.37 on 04/14/2025

Total of the Remit is $ 53,259,523.47 (including # 7560833905) . and total of ACH and WIRE is $ 53,259,523.47 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

From: Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
Sent: Tuesday, April 15, 2025 4:44 PM
To: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
Subject: RE: RITE AID 04/14/2025

Hi All,

The payment has been posted through SAP doc#1413076938 / CC8000

| Doc.Type : DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|
| Doc. Number | 1413076938 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/14/2025 | Posting Date | 04/14/2025 | Period | 01 |
| Calculate Tax | | | |
| Ref.Doc. | CK20250414004763 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031830800004 | | |

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 52,904,608.37 | 52,904,608.37 | 0031830800004 | CK20250414004 |
| 2 | 8000 | 15 | 04/14/2025 | 602735 | RITE AID 777 | | | | | | 52,904,608.37- | 52,904,608.37- | 0031830800004 | CK20250414004 |

Regards,
Ritesh Sharma

From: Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>

MCK_0013373

**Sent:** Monday, April 14, 2025 8:50 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/11/2025

Hi All,

We have received ACH of $ 506,702.33 and WIRE of $ 53,974,714.90 on 04/11/2025

Total of the Remit is $ 54,481,722.82 (including # 7560359665 ) and total of ACH and WIRE is $ 54,481,417.23 (what we have received)

There is short payment of $ 305.59, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Monday, April 14, 2025 4:45 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/11/2025

Hi All,

The payment has been posted through SAP doc#1413074547 / CC8000

| Doc.Type : DZ ( Customer payment ) Normal document | | | | |
|---|---|---|---|---|
| Doc. Number | 1413074547 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/11/2025 | Posting Date | 04/11/2025 | Period | 01 |
| Calculate Tax | | | | |
| Ref.Doc. | CK20250411004793 | | | |
| Doc. Currency | USD | | | |
| Doc. Hdr Text | 0031816300004 | | | |

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng.doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UMID CASH – CARROLL | | 8210 | | | | 53,974,714.90 | 53,974,714.90 | 0031816300004 | CK20250411004 |
| 2 | 8000 | 15 | 04/11/2025 | 602735 | RITE AID 777 | | | | | | 53,974,714.90- | 53,974,714.90- | 0031816300004 | CK20250411004 |

Regards,
Ritesh

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Friday, April 11, 2025 2:21 AM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/10/2025

Hi All,

As per the attached request the payment for Rite Aid dated 04/10/2025 has been booked manually through Sap Doc# 1413071054 / CC 8000.

Please reverse the 16* Document Number which will be generated in SAP tomorrow morning so that there are no duplicates for the payment.

| Doc.Type : DZ ( Customer payment ) Normal document | | | | |
|---|---|---|---|---|
| Doc. Number | 1413071054 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/10/2025 | Posting Date | 04/10/2025 | Period | 01 |
| Calculate Tax | | | | |
| Ref.Doc. | CK20250410004763 | | | |
| Doc. Currency | USD | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10139 | 8000 | WIRES – B OF A | 9210 | | | 602735 | | 44,858,917.82 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 44,858,917.82- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 8, 2025 11:31 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/07/2025

Hi All,

We have received ACH of $ 225,799.55 and WIRE of $ 52,056,651.53 on 04/07/2025

Total of the Remit is $ 52,282,451.08(including # 7559372534) , and total of ACH and WIRE is $ 52,282,451.08 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 8, 2025 5:32 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/07/2025

Hi All,

The payment has been posted through SAP doc#1413062254 / CC8000

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number    1413062254      Company Code    8000      Fiscal Year    2026
Doc. Date      04/07/2025      Posting Date    04/07/2025    Period    01
Calculate Tax  □
Ref.Doc.       CK20250407005749
Doc. Currency  USD
Doc. Hdr Text  0031785500005
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 52,056,651.53 | 52,056,651.53 | 0031785500005 |
| 2 | 8000 | 15 | 04/07/2025 | 602735 | RITE AID 777 | | | | | | 52,056,651.53- | 52,056,651.53- | 0031785500005 |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Monday, April 7, 2025 9:31 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/04/2025

Hi All,

We have received ACH of $ 568,007.56 and WIRE of $ 53,958,949.81 on 04/04/2025

Total of the Remit is $ 54,529,628.65 (excluding #7558888867 which was already cleared in offset) and total of ACH and WIRE is $54,526,957.37 (what we have received)

There is short payment of $ 2,671.28, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Monday, April 7, 2025 6:01 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/04/2025

Hi All,

The payment has been posted through SAP doc#1413060221 / CC8000

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number    1413060221      Company Code    8000      Fiscal Year    2026
Doc. Date      04/04/2025      Posting Date    04/04/2025    Period    01
Calculate Tax  □
Ref.Doc.       CK20250404004344
Doc. Currency  USD
Doc. Hdr Text  0031771100008
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 53,958,949.81 | 53,958,949.81 | 0031771100008 |
| 2 | 8000 | 15 | 04/04/2025 | 602735 | RITE AID 777 | | | | | | 53,958,949.81- | 53,958,949.81- | 0031771100008 |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, April 4, 2025 7:34 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/03/2025

Hi All,

We have received ACH of $ 628,305.71 and WIRE of $ 42,861,017.55 on 04/03/2025

CONFIDENTIAL

Total of the Remit is $ 45,162,141.80. and total of ACH and WIRE is $ 43,489,323.26 (what we have received)

There is short payment of $   1,672,818.54, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Friday, April 4, 2025 4:36 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/03/2025

Hi All,

The payment has been posted through SAP doc#1413058644 / CC8000

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number    1413058644    Company Code    8000    Fiscal Year    2026
Doc. Date      04/03/2025    Posting Date    04/03/2025    Period    01
Calculate Tax  ☐
Ref.Doc.       C520250403004681
Doc. Currency  USD
Doc. Hdr Text  0031763300004
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 42,861,017.55 | 42,861,017.55 | 0031763300004 | C520250403004 |
| 2 | 8000 | 19 | 04/03/2025 | 602735 | RITE AID 777 | | | | | | 42,861,017.55- | 42,861,017.55- | 0031763300004 | C520250403004 |

Regards,
Ritesh

CONFIDENTIAL

# EXHIBIT 6

| From: | Dev, Karan </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B9C55A0E7F624A94B7D9EF1A089D25DB-EZ'PIT03> |
|---|---|
| To: | Voss, Daniela <Daniela.Voss@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com> |
| CC: | Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com> |
| Subject: | RE: RITE AID 05/12/2025 |
| Sent: | 2025/05/12 20:21:16 (UTC +00:00) |

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413120239 / CC 8000.

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number     1413120239        Company Code    8000       Fiscal Year    2026
Doc. Date       05/12/2025         Posting Date    05/12/2025  Period         02
Calculate Tax
Ref.Doc.        CK20256512005178
Doc. Currency   USD
```

| Itm | PK | Account | LoCG | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | CTrsg.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 26,000,000.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 26,000,000.00- | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

From: Voss, Daniela <Daniela.Voss@McKesson.com>
Sent: Saturday, May 10, 2025 1:40 AM
To: Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/09/2025

Thank you -- please post to 602735 as unapplied until AR can provide the remit instructions.

Best,
Daniela

---

From: Dev, Karan <Karan.Dev@McKesson.com>
Sent: Friday, May 9, 2025 3:09 PM
To: Voss, Daniela <Daniela.Voss@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/09/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413118252 / CC 8000.

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number     1413118252        Company Code    8000       Fiscal Year    2025
Doc. Date       05/09/2025         Posting Date    05/09/2025  Period         02
Calculate Tax
Ref.Doc.        CK20256539005194
Doc. Currency   USD
```

| Itm | PK | Account | LoCG | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | CTrsg.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 35,000,000.00 | USD | RITE AID HDQTR |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 35,000,000.00- | USD | RITE AID HDQTR |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

From: Voss, Daniela <Daniela.Voss@McKesson.com>
Sent: Friday, May 9, 2025 1:28 AM
To: Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
Cc: Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
Subject: RE: RITE AID 05/08/2025

Thank you -- please post to 602735 as unapplied until AR can provide the remit instructions.

Best,
Daniela

CONFIDENTIAL

**Daniela Voss**
Sr. Manager, Credit & AR Operations | t 972-963-6036 | Daniela.Voss@McKesson.com
PSS Remote Services and Solutions

McKesson | 6555 State Highway 161, Las Colinas, TX 75039 | www.mckesson.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 8, 2025 2:52 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/08/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413110341 / CC 8000.

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number   413110341    Company Code   8000     Fiscal Year   2026
Doc. Date     05/08/2025   Posting Date   05/08/2025   Period     02
Calculate Tax
Ref.Doc.      CK20250508005125
Doc. Currency  USD
```

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|-----|-----|---------|------|--------------------|------------|------|----------|------------|------------|--------|------|------|
| 1 | 40 | 10130 | 8000 | WIRES - 8 OF A | 8210 | | | 602735 | | 40,000,000.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 40,000,000.00 | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, May 6, 2025 3:11 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/05/2025

Hi All,

We have received WIRE of $ 49,674,910.00 on 05/05/2025

Total of the Remit is $ 49,674,910.00

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

---

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Tuesday, May 6, 2025 3:11 AM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/05/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413105754 / CC 8000.

```
Doc.Type : DZ ( Customer payment ) Normal document
Doc. Number   413105754    Company Code   8000     Fiscal Year   2026
Doc. Date     05/05/2025   Posting Date   05/05/2025   Period     02
Calculate Tax
Ref.Doc.      CK20250505005176
Doc. Currency  USD
```

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|-----|-----|---------|------|--------------------|------------|------|----------|------------|------------|--------|------|------|
| 1 | 40 | 10130 | 8000 | WIRES - 8 OF A | 8210 | | | 602735 | | 49,674,910.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 49,674,910.00 | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

CONFIDENTIAL

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Saturday, May 3, 2025 3:06 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/02/2025

Hi All,

We have received WIRE of $ 11,000,000.00 on 05/01/2025 and WIRE of $ 52,347,149.66 on 05/02/2025

Total of the Remit is $ 63,347,149.66 and total of both WIRE's is $ 63,347,149.66 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

---

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Saturday, May 3, 2025 1:58 AM
**To:** Voss, Daniela <Daniela.Voss@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/02/2025

Hi All,

The payment from Rite Aid is now booked manually through Sap Doc# 1413104683 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document | | | | |
|---|---|---|---|---|
| Doc. Number | 1413104683 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 05/02/2025 | Posting Date | 05/02/2025 | Period | 02 |
| Calculate Tax | ☐ | | | |
| Ref.Doc. | CK20250502064061 | | | |
| Doc. Currency | USD | | | |

| Item | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 52,347,149.66 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 52,347,149.66 | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

**From:** Voss, Daniela <Daniela.Voss@McKesson.com>
**Sent:** Friday, May 2, 2025 2:50 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Thank you, Karan and Sandeep –

Please leave on acct #602735 in unapplied as discussed. We'll share remit/application instructions once available.

Best,
Daniela

---

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 1, 2025 4:07 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

The second payment from Rite Aid is now booked manually through Sap Doc# 1413102456 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document | | | | |
|---|---|---|---|---|
| Doc. Number | 1413102456 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 05/01/2025 | Posting Date | 05/01/2025 | Period | 02 |
| Calculate Tax | ☐ | | | |
| Ref.Doc. | CK20250501004711 | | | |
| Doc. Currency | USD | | | |

| Item | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 11,000,000.00 | USD | RITE AID HDQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 11,000,000.00 | USD | RITE AID HDQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, May 2, 2025 12:23 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

We have received ACH of $ 436,354.81 and WIRE of $ 32,115,624.04 on 05/01/2025

Total of the Remit is $ 32,551,978.85 and total of ACH and WIRE is $ 32,551,978.85 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Thursday, May 1, 2025 11:59 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 05/01/2025

Hi All,

The payment has been booked through Sap Doc# 1413102283 / CC 8000.

| Doc. Type : DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|
| Doc. Number | 1413102283 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 05/01/2025 | Posting Date | 05/01/2025 | Period | 02 |
| Calculate Tax | ☐ | | |
| Ref.Doc. | CK20250501003000 | | |
| Doc. Currency | USD | | |
| Doc. Hdr Text | 0031943100007 | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8000 | UNID CASH - CARROLL | 8210 | | | 0031943100007 | | 32,115,624.04 | USD | CK20250501003 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031943100007 | | 32,115,624.04- | USD | CK20250501003 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 29, 2025 1:22 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/28/2025

Hi All,

We have received ACH of $ 194,385.76 and WIRE of $ 51,977,508.76 on 04/28/2025

Total of the Remit is $ 52,171,894.52(including credit of $2,125,626.44 & $9,901.98) and total of ACH and WIRE is $ 52,171,894.52 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Tuesday, April 29, 2025 12:56 AM
**To:** Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/28/2025

Hi All,

The payment for Rite Aid has been booked manually through Sap Doc# 1413097821 / CC 8000.

MCK_0013498

| Doc.Type : DZ ( Customer payment ) Normal document | | | | | |
|---|---|---|---|---|---|
| Doc. Number | 1413097821 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/28/2025 | Posting Date | 04/28/2025 | Period | 01 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250428005412 | | | | |
| Doc. Currency | USD | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - B OF A | 8210 | | | 602735 | | 51,077,568.76 | USD | RITE AID HQDTRS |
| 2 | 15 | 602735 | 8600 | RITE AID 777 | | | | 602735 | | 51,077,568.76- | USD | RITE AID HQDTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

**From:** Negi, Shivam <Shivam.Negi@McKesson.com>
**Sent:** Saturday, April 26, 2025 1:16 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/25/2025

Hi All,

We have received ACH of $ 385,150.35 and WIRE of $ 48,789,238.34 on 04/25/2025

Total of the Remit is $ 49,174,388.69 and total of ACH and WIRE is $ 49,174,388.69 (what we have received)

There is no overpayment. It has been applied at net.

*Thanks & Regards,*
*Shivam Negi*

---

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Saturday, April 26, 2025 12:22 AM
**To:** Negi, Shivam <Shivam.Negi@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/25/2025

Hi All,

The payment has been booked through Sap Doc# 1413095925 / CC 8000.

| Doc.Type : DZ ( Customer payment ) Normal document | | | | | |
|---|---|---|---|---|---|
| Doc. Number | 1413095925 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/25/2025 | Posting Date | 04/25/2025 | Period | 01 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250425004476 | | | | |
| Doc. Currency | USD | | | | |
| Doc. Hdr Text | 0031904900012 | | | | |

| Itm | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8000 | UNID CASH - CARROLL | 8210 | | | 0031904900012 | | 48,789,238.34 | USD | CK20250425004 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031904900012 | | 48,789,238.34- | USD | CK20250425004 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

---

**From:** Negi, Shivam <Shivam.Negi@McKesson.com>
**Sent:** Friday, April 25, 2025 6:14 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>
**Subject:** RE: RITE AID 04/24/2025

Hi All,

We have received ACH of $ 598,135.03 and WIRE of $ 45,576,708.28 on 04/24/2025

Total of the Remit is $ 46,170,783.95 (excluding # 7562628295 which is already cleared)  and total of ACH and WIRE is $ 46,174,843.31 (what we have received)

There is over payment of $ 4,059.36, for which we have created a credit residual on #601132.

*Thanks & Regards,*
*Shivam Negi*

---

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Friday, April 25, 2025 5:42 PM

**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>; Eakes, Darrell <Darrell.Eakes@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fielos, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/24/2025

Hi All,

The payment has been posted through SAP doc#1413095483 / CC8000

```
Doc. Type : DZ ( Customer payment ) Normal document
Doc. Number    1413095483        Company Code   8000      Fiscal Year    2026
Doc. Date      04/24/2025        Posting Date   04/24/2025 Period         01
Calculate Tax  ☐
Ref.Doc.       CK2025042405610
Doc. Currency  USD
Doc. Hdr Text  0031809800004
```

| Ite | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 45,576,708.28 | 45,576,708.28 | 0031809800004 | CK2025042405... |
| 2 | 8000 | 15 | 04/24/2025 | 602735 | RITE AID 777 | | | | | | 45,576,708.28- | 45,576,708.28- | 0031809800004 | CK2025042405... |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 22, 2025 8:34 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/21/2025

Hi All,

We have received ACH of $ 233,783.57 and WIRE of $ 54,949,517.56 on 04/21/2025

Total of the Remit is $55,183,301.13, and total of ACH and WIRE is $55,183,301.13 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 22, 2025 6:27 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/21/2025

Hi All,

The payment has been posted through SAP doc#1413085176

```
Doc. Type : DZ ( Customer payment ) Normal document
Doc. Number    1413085176        Company Code   8000      Fiscal Year    2026
Doc. Date      04/21/2025        Posting Date   04/21/2025 Period         01
Calculate Tax  ☐
Ref.Doc.       CK2025042100535
Doc. Currency  USD
Doc. Hdr Text  0031876200005
```

| Ite | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 54,949,517.56 | 54,949,517.56 | 0031876200005 | CK2025042100... |
| 2 | 8000 | 15 | 04/21/2025 | 602735 | RITE AID 777 | | | | | | 54,949,517.56- | 54,949,517.56- | 0031876200005 | CK2025042100... |

Regards,
Ritesh Sharma

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Saturday, April 19, 2025 2:40 AM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/18/2025

Hi All,

We have received ACH of $ 442,014.89 and WIRE of $ 55,901,460.87 on 04/18/2025

Total of the Remit is $ 56,347,535.12 (excluding ref 143401001 which is already cleared)  and total of ACH and WIRE is $ 56,343,475.76 (what we have received)

There is short payment of $4,059.36, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Friday, April 19, 2025 1:48 AM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/18/2025

Hi All,

The payment has been booked through Sap Doc# 1413082288 / CC 8000.

| Doc. Type | DZ ( Customer payment ) Normal document | | |
|---|---|---|---|
| Doc. Number | 1413082288 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/18/2025 | Posting Date | 04/18/2025 | Period | 01 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250418002492 | | | | |
| Doc. Currency | USD | | | | |
| Doc. Hdr Text | 0031859100000 | | | | |

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr | Assignment | Clrng doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 12106 | 8000 | UNID CASH - CARROLL | 8210 | | | 0031859100000 | | 55,901,460.87 | USD | CK20250418002 |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 0031859100000 | | 55,901,460.87- | USD | CK20250418002 |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, April 18, 2025 7:29 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/17/2025

Hi All,

We have received ACH of $44,361.46 and WIRE of $43,611,452.59 on 04/17/2025

Total of the Remit is $44,155,814.05 (including # 172943001,#143401001,#1600034712 and excluding # 7560833905,# 7560359665 they are already cleared) , and total of ACH and WIRE is $44,155,814.05 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Friday, April 18, 2025 5:07 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/17/2025

Hi All,

The payment has been posted through SAP doc#1413081636

| Doc. Type | DZ ( Customer payment ) Normal document | | |
|---|---|---|---|
| Doc. Number | 1413081636 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/17/2025 | Posting Date | 04/17/2025 | Period | 01 |
| Calculate Tax | ☐ | | | | |
| Ref.Doc. | CK20250417004430 | | | | |
| Doc. Currency | USD | | | | |
| Doc. Hdr Text | 0031853600007 | | | | |

| Ite | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 43,611,452.59 | 43,611,452.59 | 0031853600007 | CK20250417004 |
| 2 | 8000 | 19 | 04/17/2025 | 602735 | RITE AID 777 | | | | | | 43,611,452.59- | 43,611,452.59- | 0031853600007 | CK20250417004 |

Thanks,
Ritesh Sharma

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 15, 2025 11:21 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/14/2025

Hi All,

We have received ACH of $ 354,915.10 and WIRE of $ 52,904,608.37 on 04/14/2025

Total of the Remit is $ 53,259,523.47 (including # 7560833905) , and total of ACH and WIRE is $ 53,259,523.47 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 15, 2025 4:44 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/14/2025

Hi All,

The payment has been posted through SAP doc#1413076938 / CC8000

| Doc. Type | DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|---|
| Doc. Number | 1413076938 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/14/2025 | Posting Date | 04/14/2025 | Period | 01 |
| Calculate Tax | ☐ | | | |
| Ref.Doc. | CK20250414004763 | | | |
| Doc. Currency | USD | | | |
| Doc. Hdr Text | 0031630800004 | | | |

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 52,904,608.37 | 52,904,608.37 | 0031630800004 | CK20250414004 |
| 2 | 8000 | 15 | 04/14/2025 | 602735 | RITE AID 777 | | | | | | 52,904,608.37 | 52,904,608.37 | 0031630800004 | CK20250414004 |

Regards,
Ritesh Sharma

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Monday, April 14, 2025 8:50 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/11/2025

Hi All,

We have received ACH of $ 506,702.33 and WIRE of $ 53,974,714.90 on 04/11/2025

Total of the Remit is $ 54,481,722.82 (including # 7560359665 ) and total of ACH and WIRE is $ 54,481,417.23 (what we have received)

There is short payment of $ 305.59, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Monday, April 14, 2025 4:45 PM
**To:** Dev, Karan <Karan.Dev@McKesson.com>; Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/11/2025

Hi All,

The payment has been posted through SAP doc#1413074547 / CC8000

| Doc. Type | DZ ( Customer payment ) Normal document | | | |
|---|---|---|---|---|
| Doc. Number | 1413074547 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/11/2025 | Posting Date | 04/11/2025 | Period | 01 |
| Calculate Tax | ☐ | | | |
| Ref.Doc. | CK20250411004793 | | | |
| Doc. Currency | USD | | | |
| Doc. Hdr Text | 0031816300004 | | | |

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 53,974,714.90 | 53,974,714.90 | 0031816300004 | CK20250411004 |
| 2 | 8000 | 15 | 04/11/2025 | 602735 | RITE AID 777 | | | | | | 53,974,714.90 | 53,974,714.90 | 0031816300004 | CK20250411004 |

Regards,
Ritesh

**From:** Dev, Karan <Karan.Dev@McKesson.com>
**Sent:** Friday, April 11, 2025 2:21 AM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>

CONFIDENTIAL

**Subject:** RE: RITE AID 04/10/2025

Hi All,

As per the attached request the payment for Rite Aid dated 04/10/2025 has been booked manually through Sap Doc# 1413071054 / CC 8000.

Please reverse the 18* Document Number which will be generated in SAP tomorrow morning so that there are no duplicates for the payment.

| Doc. Type : DZ ( Customer payment ) Normal document | | | | |
|---|---|---|---|---|
| Doc. Number | 1413071054 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/10/2025 | Posting Date | 04/10/2025 | Period | 01 |
| Calculate Tax | ☐ | | | |
| Ref.Doc. | CX20250410004763 | | | |
| Doc. Currency | USD | | | |

| Ite | PK | Account | CoCd | Account short text | Profit Ctr | BusA | Cost Ctr. | Assignment | Clrng.doc. | Amount | Crcy | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 40 | 10130 | 8000 | WIRES - 8 OF A | 8210 | | | 602735 | | 44,858,917.82 | USD | RITE AID HQQTRS |
| 2 | 15 | 602735 | 8000 | RITE AID 777 | | | | 602735 | | 44,858,917.82- | USD | RITE AID HQQTRS |

Thanks & Regards,
Karan Dev

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.mckesson.com

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Tuesday, April 8, 2025 11:31 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/07/2025

Hi All,

We have received ACH of $ 225,799.55 and WIRE of $ 52,056,651.53 on 04/07/2025

Total of the Remit is $ 52,282,451.08(including # 7559372534) , and total of ACH and WIRE is $ 52,282,451.08 (what we have received)

There is no overpayment. It has been applied at net.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Tuesday, April 8, 2025 5:52 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/07/2025

Hi All,

The payment has been posted through SAP doc#1413062254 / CC8000

| Doc.Type : DZ ( Customer payment ) Normal document | | | | |
|---|---|---|---|---|
| Doc. Number | 1413062254 | Company Code | 8000 | Fiscal Year | 2026 |
| Doc. Date | 04/07/2025 | Posting Date | 04/07/2025 | Period | 01 |
| Calculate Tax | ☐ | | | |
| Ref.Doc. | CX20250407005749 | | | |
| Doc. Currency | USD | | | |
| Doc. Hdr Text | 0031785500005 | | | |

| Ite | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr. | Profit Ctr | Tx | Clrng.doc. | Clearing | Amount | LC2 amount | Assignment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 52,056,651.53 | 52,056,651.53 | 0031785500005 |
| 2 | 8000 | 15 | 04/07/2025 | 602735 | RITE AID 777 | | | | | | 52,056,651.53- | 52,056,651.53- | 0031785500005 |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Monday, April 7, 2025 9:31 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/04/2025

Hi All,

We have received ACH of $ 568,007.56 and WIRE of $ 53,958,949.81 on 04/04/2025

Total of the Remit is $ 54,529,628.65 (excluding # 7558888867 which was already cleared in offset) and total of ACH and WIRE is $ 54,526,957.37 (what we have received)

There is short payment of $ 2,671.28, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

MCK_0013503

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Monday, April 7, 2025 6:01 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/04/2025

Hi All,

The payment has been posted through SAP doc#1413060221 / CC8000

```
Doc. Type : DZ ( Customer payment ) Normal document
Doc. Number   1413060221      Company Code    8000      Fiscal Year    2026
Doc. Date     04/04/2025      Posting Date    04/04/2025   Period       01
Calculate Tax   ☐
Ref.Doc.      CK20250404004344
Doc. Currency USD
Doc. Hdr Text 0031771100008
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 53,958,949.81 | 53,958,949.81 | 0031771100008 |
| 2 | 8000 | 15 | 04/04/2025 | 602735 | RITE AID 777 | | | | | | 53,958,949.81- | 53,958,949.81- | 0031771100008 |

Regards,
Ritesh

**From:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>
**Sent:** Friday, April 4, 2025 7:54 PM
**To:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/03/2025

Hi All,

We have received ACH of $ 628,365.71 and WIRE of $ 42,861,017.55 on 04/03/2025

Total of the Remit is $45,162,141.80.  and total of ACH and WIRE is $43,489,323.26  (what we have received)

There is short payment of $  1,672,818.54, for which we have created a debit residual on #601132.

Regards,
Sandeep Kumar Tanwar

**From:** Sharma, Ritesh <Ritesh.Sharma@McKesson.com>
**Sent:** Friday, April 4, 2025 4:38 PM
**To:** Panwar, Sandeep Kumar <SandeepKumar.Panwar@McKesson.com>; Dev, Karan <Karan.Dev@McKesson.com>; Singh, Ganesh <Ganesh.Singh@McKesson.com>; Voss, Daniela <Daniela.Voss@McKesson.com>; Evans, Kimberly <Kimberly.Evans@McKesson.com>; Lira, Esmeralda <Esmeralda.Lira@McKesson.com>; Sharma, Dhananjay <Dhananjay.Sharma@McKesson.com>
**Cc:** Fernando, Dihan <Dihan.Fernando@McKesson.com>; Fields, Jimica <Jimica.Fields@McKesson.com>; Tyagi, Kapil <Kapil.Tyagi@McKesson.com>; McCray, Abigail <Abby.McCray@McKesson.com>; Kalra, Amit <Amit.Kalra@McKesson.com>; Ellis, Stephen <Stephen.Ellis@McKesson.com>; Negi, Shivam <Shivam.Negi@McKesson.com>
**Subject:** RE: RITE AID 04/03/2025

Hi All,

The payment has been posted through SAP doc#1413058644 / CC8000

```
Doc. Type : DZ ( Customer payment ) Normal document
Doc. Number   1413058644      Company Code    8000      Fiscal Year    2026
Doc. Date     04/03/2025      Posting Date    04/03/2025   Period       01
Calculate Tax   ☐
Ref.Doc.      CK20250403004681
Doc. Currency USD
Doc. Hdr Text 0031763300004
```

| Itm | CoCd | PK | Net due dt | Account | Account short text | Cost Ctr | Profit Ctr | Tx | Clrng doc. | Clearing | Amount | LC2 amount | Assignment | Text |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8000 | 40 | | 12106 | UNID CASH - CARROLL | | 8210 | | | | 42,861,017.55 | 42,861,017.55 | 0031763300004 | CK20250403004 |
| 2 | 8000 | 15 | 04/03/2025 | 602735 | RITE AID 777 | | | | | | 42,861,017.55- | 42,861,017.55- | 0031763300094 | CK20250403004 |

Regards,
Ritesh

# EXHIBIT 7

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
Alison R. Benedon
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com
abenedon@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEW RITE AID, LLC, *et al.*,[1] | ) | Case No. 25-14861 (MBK) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' RESPONSES AND OBJECTIONS TO MCKESSON CORPORATION'S
## FIRST REQUESTS FOR PRODUTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Rules 7026, 7034,

and 9014 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of the United States

Bankruptcy Court for the District of New Jersey (collectively, the "<u>Rules</u>"), New Rite Aid, LLC

and its affiliated Debtors (the "<u>Debtors</u>") by and through their undersigned counsel, hereby

respond and object to McKesson Corporation's ("<u>McKesson</u>") Requests for Production of

---

[1]      The last four digits of New Rite Aid, LLC's tax identification number are 1483.  A complete list of the
Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website
of the Debtors' proposed claims and noticing agent at [https://restructuring.ra.kroll.com/RiteAid2025].  The location
of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11
cases is 200 Newberry Commons, Etters, PA 17319.

Documents (the "Requests") to the Debtors, dated June 27, 2025, as follows.

**<u>GENERAL OBJECTIONS</u>**

The following General Objections apply to each Definition, Instruction, and Request, and shall have the same force and effect as if fully set forth in the response to each individual Request.

The Debtors' specific responses and objections to each Request are in addition to the general responses and objections, which are set forth in this section to avoid the duplication and repetition of restating them below for the specific objections and response to an individual Request. These general responses and objections form a part of the specific responses and objections to each Request as if fully set forth therein. The absence of a reference to a general objection or general response in each response to a particular Request does not constitute a waiver of any general objection or general response with respect to that Request. All responses are made subject to and without waiver of the Debtors' general responses and objections and specific objections.

Any agreement by the Debtors to conduct a reasonable search for documents is conditioned upon the application of an appropriately tailored search protocol, including through search terms, custodians, and time frame.

A partial answer to any Request which has been objected to in whole or in part is not a waiver of the objection. By asserting various objections, the Debtors do not waive other objections that may become applicable.

The Debtors object to the Requests (including the incorporated Definitions and Instructions) to the extent they exceed the scope of discovery permitted by the *Stipulation and Agreed Order by and Between the Debtors, DIP Agent, the Official Committee of Unsecured*

2

*Creditors, and McKesson Corporation (I) Scheduling Certain Dates and Deadlines in Connection with the Motion of McKesson Corporation for Entry of an Order (A) Allowing Administrative Expense Claim, (B) Compelling Immediate Payment Thereof, and (C) Granting Related Relief, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [Docket No. 672] (the "Stipulation").

The Debtors object to the Requests to the extent that they purport to impose obligations that are broader than, or inconsistent with, those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules for the United States Bankruptcy Court for the District of New Jersey, or the Stipulation.

The Debtors object to the Requests (including the incorporated Definitions and Instructions) to the extent they seek information or documents that are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  No part of the Debtors' responses shall in any way be deemed a waiver of any privilege or immunity.

The Debtors object to the Requests (including the incorporated Definitions and Instructions) to the extent they seek the production of proprietary, confidential, commercially sensitive, competitively significant, and/or trade secret information, or information that is restricted from disclosure pursuant to court order, contractual agreement, or applicable law.  The Debtors will provide any such documents only subject to the terms of an appropriate protective order.

The Debtors object to the Requests (including the incorporated Definitions and Instructions) to the extent that they are vague, ambiguous, incomprehensible, overly broad, unduly burdensome, or seek documents that are neither relevant to the claims or defenses of any

party or the subject matter involved in this proceeding, nor reasonably calculated to lead to the discovery of admissible evidence.

The Debtors object to the Requests (including the incorporated Definitions and Instructions) to the extent they are unreasonably cumulative or duplicative of other documents and information requested.

The Debtors object to the Requests to the extent that they seek information or documents that are (1) publicly available; (2) already within McKesson's possession, custody, or control; (3) outside the Debtors' possession, custody, or control; (4) not maintained by the Debtors in the normal course of business; or (5) no longer available to the Debtors.

The Debtors object to the Requests to the extent they purport to require production of "all" documents concerning or related to specific issues, on the ground that such requests are overly broad, unduly burdensome, impractical to comply with, and not proportional to the needs of the case.  By agreeing to produce documents, the Debtors agree to make a reasonable search of the documents of specified custodians, pursuant to specified search terms, and do not represent that "all" documents responsive to any particular Request will be produced.

The Debtors' responses and objections herein are based on the Debtors' present knowledge, information, and belief and may be subject to modification or amendment based on the Debtors' further investigation and discovery in this case.  The Debtors make these responses without intending to waive and intending to preserve all of their objections as to competency, relevancy, materiality, and admissibility of any information produced, or the subject matter thereof.  The Debtors reserve the right to modify, amend, or otherwise supplement any objection or response, as may be required under Federal Rule of Civil Procedure 26 and Federal Rule of

4

Bankruptcy Procedure 7026, to include additional information that is obtained during their investigation or during discovery.

The Debtors object to Instruction B to the extent it purports to require production of "all" documents concerning or related to specific issues, on the ground that this Instruction is overly broad, unduly burdensome, impractical to comply with, and not proportional to the needs of the case. By agreeing to produce documents, the Debtors agree to make a reasonable search of the documents of specified custodians, pursuant to specified search terms, and do not represent that "all" documents responsive to any particular Request will be produced. The Debtors further object to Instruction B as likely to require the production of privileged material and/or protected work product to the extent it purports to require the production of documents from, among others, attorneys and other professionals retained for the purpose of these bankruptcy cases or to otherwise provide legal advice or materials in anticipation of litigation. The Debtors will produce only non-privileged documents.

The Debtors object to Instruction E as unduly burdensome and not proportional to the needs of the case to the extent it purports to require the Debtors to provide voluminous information about documents that the Debtors are unable to produce. To the extent that the Debtors locate non-privileged, responsive documents following a reasonable search and are unable to produce those documents, they are willing to meet and confer with respect to appropriate information regarding those documents.

The Debtors object to Instruction G to the extent it purports to prohibits the use of redactions or production of excerpts of documents, without any noted exception. The Debtors reserve the right to use redactions or produce excerpts to the extent that Documents are

5

privileged in part or otherwise subject to excerpting or redaction under the Rules or other applicable law.

The Debtors object to Instruction L to the extent it purports to require an individual privilege log and information concerning privileged documents that is not proportional to the needs of the case. The Debtors are willing to meet and confer regarding the appropriate format for any privilege log.

The Debtors object to the definition of "Documents" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require the production documents in the possession of officers, employees, or agents who are no longer in the Debtors' control and the production of documents that are known to exist but not within the Debtors' possession, custody, or control. The Debtors will produce only documents within their possession, custody, or control.

## SPECIFIC RESPONSES AND OBJECTIONS

REQUEST FOR PRODUCTION NO. 1:

All Documents and Communications concerning the May 5 Wire, including the calculation of that amount, the timing of the payment, the determination of which entity was to make the payment, authorization for the payment, and Debtors' understanding of why such payment was being made and how it was to be applied (including whether it was to be applied to invoices for past or future deliveries.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

The Debtors incorporate the foregoing General Objections as though fully set forth herein. The Debtors object to Request No. 1 as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications concerning the May 5 Wire.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors will produce non-privileged documents responsive to Request No. 1, if any, located through a reasonable search.

REQUEST FOR PRODUCTION NO. 2:

All Documents and Communications concerning the Supply Agreement's Payment Terms, including without limitation any negotiations of changes to the Payment Terms between Debtors and McKesson, and any Documents and Communications between Debtors and any lenders concerning any such negotiations or changes to the Payment Terms.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

The Debtors incorporate the foregoing General Objections as though fully set forth herein. The Debtors object to Request No. 2 as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications concerning the Supply Agreement's Payment Terms. The Debtors further object to Request No. 2 to the extent it purports to seek common interest privileged communications with lenders.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors will produce non-privileged documents responsive to Request No. 2, if any, located through a reasonable search.

REQUEST FOR PRODUCTION NO. 3:

All Documents and Communications concerning Debtors' non-provision to McKesson of financial information requested by McKesson, including requests for financial information pursuant to section 7.11 of the Supply Agreement, and the reasons for failing to provide the requested financial information.

RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

The Debtors incorporate the foregoing General Objections as though fully set forth herein. The Debtors object to Request No. 3 as overly broad and unduly burdensome to the extent it seeks the production of "all" communications concerning a subject matter. The Debtors further object to Request No. 3 as vague and ambiguous to the extent it seeks information concerning "non-provision" of financial

information.   The Debtors further object to Request No. 3 to the extent it seeks documents and communications irrelevant to the dispute between McKesson and the Debtors.

The Debtors will not produce documents in response to Request No. 3.

REQUEST FOR PRODUCTION NO. 4:

All Documents and Communications concerning the 10-Day Accounts Receivable Cap, including its establishment and/or applicability.

RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

The Debtors incorporate the foregoing General Objections as though fully set forth herein.  The Debtors object to Request No. 4 as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications concerning the 10-Day Accounts Receivable Cap. The Debtors further object to Request No. 4 to the extent it seeks information concerning the "establishment" and "applicability" of the 10-Day Accounts Receivable Cap, which was established and applied by McKesson.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors will produce non-privileged documents responsive to Request No. 4, if any, located through a reasonable search..

REQUEST FOR PRODUCTION NO. 5:

Documents and Communications sufficient to show the relationship between RAD and HQ, including without limitation any operative agreements between HQ and any entity of RA

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

The Debtors incorporate the foregoing General Objections as though fully set forth herein.  The Debtors object to Request No. 5 as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any operative agreements between HQ and any entity of RA."   The Debtors further object to Request No. 5 as vague and ambiguous to the extent it seeks information concerning "the relationship" between two entities.

8

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors will produce an organizational chart sufficient to show the relationship between RAD and HQ.

REQUEST FOR PRODUCTION NO. 6:

Documents and Communications sufficient to show all transfers, credits, and debits, including any outstanding balances, between any of the Debtors and HQ .

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

The Debtors incorporate the foregoing General Objections as though fully set forth herein.  The Debtors object to Request No. 6 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information concerning "all transfers, credits, and debits . . . between any of the Debtors and HQ."

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors are willing to meet and confer concerning Request No. 6.

REQUEST FOR PRODUCTION NO. 7:

All Documents and Communications reflecting Your accounting for Debtors' payments under the Supply Agreement, including invoices, payment history, payment method, and the timing of payments made by any Debtors to McKesson under the Supply Agreement.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

The Debtors incorporate the foregoing General Objections as though fully set forth herein.  The Debtors object to Request No. 7 as unduly burdensome and not proportional to the needs of the case to the extent it seeks "all" documents and communications reflecting the Debtors' accounting for payments under the Supply Agreement.  The Debtors further object to Request No. 7 to the extent that any information concerning invoices from McKesson to the Debtors and the timing and history of payments from the Debtors to McKesson is equally available to McKesson and thus obtainable without imposing undue costs and burden on the Debtors.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors will produce non-privileged documents sufficient to show the Debtors' accounting for their payments under the Supply Agreement.

<u>REQUEST FOR PRODUCTION NO. 8:</u>

All Documents and Communications reflecting Your understanding of the sources and uses of funds for Debtors' payments under the Supply Agreement.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 8:</u>

The Debtors incorporate the foregoing General Objections as though fully set forth herein. The Debtors object to Request No. 8 as overly broad and unduly burdensome to the extent it seeks "all" documents concerning a subject matter. The Debtors further object to Request No. 8 as vague and ambiguous, as they are unable to discern the meaning of the phrase "Your understanding of the sources and uses of funds for Debtors' payments under the Supply Agreement." The Debtors further object to Request No. 8 to the extent it seeks information in McKesson's possession, custody, or control, insofar as McKesson is the party that uses funds paid under the Supply Agreement. Such information is more readily available to McKesson and thus obtainable without imposing the cost of production on the Debtors.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors will produce non-privileged documents responsive to Request No. 8, if any, located through a reasonable search.

<u>REQUEST FOR PRODUCTION NO. 9:</u>

All Documents and Communications concerning any modification to the frequency, quantity, or dollar amount of orders You placed with McKesson.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 9:</u>

The Debtors incorporate the foregoing General Objections as though fully set forth herein. The Debtors object to Request No. 9 as unduly burdensome and not proportional to the needs of the case to the extent it seeks "all" documents concerning a subject matter. The Debtors further object to Request

10

No. 9 as unduly burdensome to the extent it seeks documents concerning every modification to the frequent, quantity, or dollar amount of the Debtors' purchases from McKesson, which vary based upon frequent changes in individual pharmacy customers' needs at numerous pharmacy locations. The Debtors further object to Request No. 9 because it seeks information that is irrelevant to the dispute between McKesson and the Debtors.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors are willing to meet and confer concerning Request No. 9.

REQUEST FOR PRODUCTION NO. 10:

All Documents and Communications concerning goods received by any Debtors from McKesson within 20 days before May 5, 2025, including all Documents and Communications regarding the date and time that such goods were received by the Debtors, the value of such goods and whether such goods were paid for.

RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

The Debtors incorporate the foregoing General Objections as though fully set forth herein. The Debtors object to Request No. 10 as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning a subject matter. The Debtors further object to Request No. 10 as overly broad and not proportional to the needs of the case to the extent it seeks a substantial volume of irrelevant information, such as the details of prescription orders. The Debtors further object to Request No. 10 because information concerning when goods were received from McKesson, the value of goods provided by McKesson, and whether McKesson was paid for goods it delivered is equally available to McKesson and thus obtainable without imposing the cost of production on the Debtors.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors are willing to meet and confer concerning Request No. 10.

REQUEST FOR PRODUCTION NO. 11:

Documents and Communications sufficient to show Debtors' financial condition, including (i) whether there was a material change in Debtors' financial condition, including Debtors' creditworthiness, and (ii) whether Debtors met McKesson's credit requirements.

11

RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

The Debtors incorporate the foregoing General Objections as though fully set forth herein.  The

Debtors object to Request No. 11 as vague and ambiguous to the extent it seeks information concerning

"material" changes and the Debtors' "creditworthiness."

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors are

willing to meet and confer concerning Request No. 11.

REQUEST FOR PRODUCTION NO. 12:

All Documents and Communications between Debtors and any of their lenders (and any agents for such
lenders) concerning the May 5 Wire, the Payment Terms (including any negotiations or changes thereto),
and/or the supply of goods to Debtors pursuant to the Supply Agreement.

RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

The Debtors incorporate the foregoing General Objections as though fully set forth herein.  The

Debtors object to Request No. 12 as unduly burdensome and not proportional to the needs of the case to

the extent it seeks "all" documents and communications between certain parties concerning a subject

matter.  The Debtors further object to Request No. 12 to the extent it seeks a substantial volume of

information protected by the common interest privilege or other applicable privileges.  The Debtors

further object to Request No. 12 to the extent it seeks a substantial volume of information that is not

relevant to the dispute between McKesson and the Debtors.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors

will produce non-privileged documents responsive to Request No. 12, if any, located through a reasonable

search.

REQUEST FOR PRODUCTION NO. 13:

All Documents and Communications that Debtors intend to cite or rely on in connection with the
Payment Motion and any response thereto, including, but not limited to, all documents supporting their
contention that the May 5 Wire was (i) a post-petition payment, (ii) not made in the ordinary course of
business of 11 U.S.C. § 547(c)(2), (iii) otherwise avoidable as a preferential transfer, and/or (iv)
recoverable from McKesson as a preferential transfer.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 13:</u>

The Debtors incorporate the foregoing General Objections as though fully set forth herein. The Debtors object to Request No. 13 as premature to the extent it seeks disclosure of documents in connection with this litigation before the Debtors have had a full and fair opportunity to evaluate pertinent documents, take any depositions, or prepare any submissions in connection with this dispute.

Subject to, and without waiver of, the foregoing General and Specific Objections, the Debtors will produce non-privileged documents responsive to Request No. 13 at the appropriate time, to the extent required by the Rules and other applicable law.

Dated:  July 14, 2025

*/s/ Alison R. Benedon*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
Alison R. Benedon
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:    arosenberg@paulweiss.com
              aeaton@paulweiss.com
              chopkins@paulweiss.com
              smitchell@paulweiss.com
              abenedon@paulweiss.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

13