

FILED
JEANNE A. NAUG...    CLERK

AUG 18 2025

U.S. BANKRUPTCY COURT
TRENTON, NJ
BY _____ DEPUTY

PAID
$350.—
R# 60001114

Steven Whitfield
305 Oakdale Drive
Bakersfield, California, 93309
Telephone (323) 332-7579
In Pro Per

# UNITED STATES BANKRUPTCY COURT COURT
## TRENTON DIVISION OF NEW JERSEY

In Re:                                          Case No. 24-14861 )MBK)

NEW RITE AID,                                   Chapt. 11

      Debtor,

_____

STEVEN WHITFIELD,
                                                Adv. No.
Plaintiff,

                                                ADVERSARY COMPLAINT
                                                (Demand for jury Trial)

     Steven Whitfield files this Complaint objecting to the discharge pursuant to Tile 11

U.S.C. Section 523 (a) (6). And plantiff demands a jury trial on all matters triable by jury

     COMES NOW, plaintiff ("Steven Whitfield") herein file this Complaint to Determine

Dischargeability pursuant to Title 11 U.S.C. Code Section 523 (a), (6)

//

//

1

--

<u>Statement of Facts</u>

On or about November 3, 2024 plaintiff went to defendant "New Rite Aid" pharmacy to have a

prescription for Norco 10 mg. A Controlled Substance Under Schedule II of the United

Controlled Substance Act. Codified in Title 18 U.S.C.

Plaintiff further alleges that he is a long-term pain management commencing from circa, 2021.

And plaintiff has had this prescription (Norco's) same quantity and strength for at least

<u>2-3 years before</u> the date giving rise to this litigation. Upon arrival at defendant "New Rite Aid"

pharmacy located in the city of Bakersfield, California. Plaintiff identified himself and informed

the pharmacy attendant on counter duty that my treating physician had electronically you my

controlled prescription (Norco) and that plaintiff was there for pick-up.

At this time she asked plaintiff is she could excused herself for a moment. Shortly,

thereafter plaintiff was approach by a middle-age man who informed plaintiff that he was the on

duty manager for defendant Rire Aid Pharmacy and that he would not fill plaintiff's prescription

because the may need them for our other patient-customers and patients.

Plaintiff alleges that debtor "New Rite Aid" acts or conduct was both "willful and

malicious within the meaning of the Title II U.S.C. section 523 (a), (6).

Plaintiff alleges that defendant debtor acts or conduct was both willful and malicious injury or

harm would likely be incurred result from his acts or conduct of said acts or omissions.

Plaintiff further alleges that this finding is readily apparent to a man of average

intelligent. Plaintiff alleges that "llkely result of harm" would results from there conduct is only

intensified by the fact that defendant's body of knowledge as a licensed and practicing

pharmacies the State  of California. It should be noted: that plaintiff had to be "rushed to

emergency room on two different occasions caused for the "abrupt discontinuation of opioids"

as currently prescribed to plaintiff.

2.

--

--

Plaintiff further alleges that liability can imposed against defendant NEW RITE AID

Inc. by acts, omissions, or conduct of its agents, servants and employees.

Plaintiff further alleges the current qualifications for a pharmacist to practice requires

thorough formal education, specialty advance education such as:

Successfully completed undergraduate studies, and state mandated educational

requirement of California Business & Professions Code Sections 4200, 4231, 4234 and 4237,

and CCR Section 1732. In s pharmacy must also possess Doctors' Degree of from the ACPE

accredited program and complete 1500 hours of supervised pharmacy      experience and pass

the NAPLEX and      CPJE licensing exams and apply for licensing from the California

Pharmacy Board.

Plaintiff further alleges that given the apparent and obvious resulting

consequences of the denial/deprivation of plaintiff's controlled medical "will more likely

ha not" plaintiff *will* experience abrupt opioid withdrawals/symptoms undergoing injury,

damage and harm. Plaintiff further the defendants acts or omissions and conduct was "willful

and malicious" within the meaning of section 523 (a) (6), causing harm, injury and damage to

another person or entity were more than likely, experience suffered by plaintiff.

It is thereon alleges the facts of this case successful establishes under the "reasonable

inference standard" that injury, damage and harm would result from its conduct. Plaintiff was

relegated by medical protocols, rules and federal law from being to get his Norco prescription

finally filed days/weeks later.

Plaintiff further alleges that on both incidents of having to be "rushed" to the emergency

room after enduring incidents of "abrupt discontinuation of plaintiff controlled medication

Norco's, emergency room staff had to "immediately administer plaintiff his correct dosage of

Norco 10 mg., 3-bags of saline (body fluids) 2 mg. Of morphine and Bycomine for anxiety

3

--

## INJURIES SUSTAINED/SUFFERED

Plaintiff alleges as a direct result of defendants acts or omissions severe abrupt opioid withdrawal, severe emotional distress, severe shock to the nervous system insomnia, severe crampa, several abdominal pain, nausea, constant vomiting, and life-threatening rises in hypertension /hypotension. These symptoms, are consistent with the events brought about by "Sudden Discontinuation of Opioid Pain Medicines. See FDA'A publication No. [4-9-19] as reflected by Exhibit "A" and incorporated by reference..

### FIRST CAUSE OF ACTION
(Willful Misconduct)
California Business & Professions Code Section 733

Plaintiff alleges each and every foregoing allegation as if set out in full and thereon asserts that defendants acts or omissions to act violated California Business & Professions Code Section 733 and its implementing, statute and regulations.

Plaintiff alleges that defendants acts, omissions and conduct demonstrated deliberate indifference and disregard for plaintiff's life, (unnecessary risk of overdose/death) health or suffered harm.

### SECOND CAUSE OF ACTION
(Non-Physical Impact Theory)
Personal Injury

Plaintiff realleges each and every foregoing allegation as if set out in full and thereon     alleges that defendants acts or omissions to act described herein  caused plaintiff to sustain     shock, and physic harm, or injury and defendants conduct described herein was a substantial     factor in causing plaintiff's harm or damage.

//

//

4.

### THIRD CAUSE OF ACTION
(Consumer Legal Remedies Act)
California Civil Code Section 1750 et esq False &Misleading Advertisement

Plaintiff reallges each and every allegation as if set out in full and thereon allegdes that plaintiff Steven Whitfield at all times mentioned herein was a "consumer" within the meaning of California Civil Code Section 1761 (d). Plaintiff is a senior citizen and is disabled persons within the meaning of California Civil Code Section 1761 (g).

Plaintiff further alleges that this action is brought pursuant to the Consumer Legla Remedies Act f California Civil Code Section 1750 et esq.

The "CLRA" prohibits and unfair, deceptive, and/or unlawful practices, as well as unconscionable commerical practices in connection with the sale of any goods or services to consumers. See California Civil Code Section 1770, etr esq. The "CLRA: shall be liberally construed and applied to promote its underlying purposes,  which is to protect consumers against unfair, and deceptive business practices and to to provide efficient economical procedures to secure such protections. California Civil Code Section 1760

Defendant(s) Rite Aid Pharmacy is p "person" and/or entity under the "CLRA", Civil Code Section 1761 (c  ) and the challenged conduct of defendants constitutes a "service" under the "CLRA", Civil Code Section 1761 (d).

Defendants conduct, actions, or policies and procedures described herein reflects transaction that have resulted in (non-sale) and/or intended sale or services to a consumer. And by way of plaintiff's status as a California resident and who receives MediCal medical benefits and said benefits are paid or intended to be part for sale to plaintiff.

//

### PLAINTIFF ADVERSARY PROCEEDING COMPLAINT
5.

Title of this document

## FIFTH CAUSE OF ACTION
Statutory Violation of Title III of the ADA as amended, 1990

Plaintiff realleages each and every foregoing allegations as if set out in full and thereon alleges that defendants acts or omissions to act, and conduct violated plaintiff's rights secured by Title III of the ADA which prohibits discrimination by place of business.

Plaintiff further alleges by virtue of defendants violation of law as stated above automatically violates California Civil Code Seciton 51 (f) and 52 and statutory damages thereof.

## SIXTH CAUSE OF ACTION
(Professional Negligence)
California Civil Code Section 340.5

Plaintiff realleges each and every foregoing allegation as if set out in full and thereon alleges that defendants acts or omissions to act and conduct constitutes Professional Malpractice with the meaning of California Civil Code Section 3405. Plaintiff alleges that defendants owed plaintiff a duty and defendants breached that duty and defendants acts or conduct was a substantial factor in causing plaintiff's injury, damage or harm.

## SEVENTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress

Plaintiff realleges each and every foregoing allegation as if set out in full and thereon alleges that defendants acts or conduct intentional infliction upon plaintiff, and suffered severed emotional distress, that was substantially caused by defendants intentional inflection of harm.+

//
//

PLAINTIFF ADVERSARY PROCEEDING COMPLAINT

Title of this document

## PRAYER FOR RELIEF

Wherefore, plaintiff request judgment in his favor granting:

1. An award of damages in the amount of $50, 000.00 compensatory against defendant as to the First Cause of Action

2. An award of $25.500.00 against defendant as to the Second Cause of Action

3. An award of $75,000.00  against defendant as to Third Cause of Acto0m

4. An award of $75,000.00 against defendant as to the Fourth Cause of Action

5. An of award of $75,000.00 against defendants as to the Fifth Cause of Action

6. An award of the $50, 000.00 against defendant as to the Sixth Cause of Action

7.  An award of reasonable attorneys fees and costs to the  Title III ADA Cause of Action

8. An award of enhanced penalties under California Elder's Abuse/Neglect statute codified in California's  Welfare & Institutions Code.

9. An award of the maximum of amount recoverable under California MICA  Act.

10. An award of such further and other relief deemed proper and just.

Dated: July August  13  2025

Signed: /s/

Steven Whitfield,
In Pro Per

PLAINTIFF ADVERSARY PROCEEDING COMPLAINT

Title of this document

## PROOF OF SERVICE BY MAIL

1

2

3        I, the undersigned hereby certifies that I, am a party the enclosed cause of

4    action and that I, personally placed into the U.S. mail with postage fully prepaid

5    and rrue and correct copy of the below stated documents.

6

7

8

9    Office of the Clerk

10   Clarkson Fisher

11   U,S, Courthouse-Bankruptcy Division

12   402 State Street

13   Trenton, NJ 08608

14

15

16

17

18

19

20

21

22

23

24

,25

26   Dated: August 13, 2025            Signed:

27                                              Steven Whitfield

28

Page

Title of this document

EXHIBIT A
COPY OF FDA's Publication

# FDA identifies harm reported from sudden discontinuation of opioid pain medicines and requires label changes to guide prescribers on gradual, individualized tapering

*FDA Drug Safety Communication*

## Safety Announcement

**[4-9-2019]** The U.S. Food and Drug Administration (FDA) has received reports of serious harm in patients who are physically dependent on opioid pain medicines suddenly having these medicines discontinued or the dose rapidly decreased. These include serious withdrawal symptoms, uncontrolled pain, psychological distress, and suicide.

While we continue to track this safety concern as part of our ongoing monitoring of risks associated with opioid pain medicines, we are requiring changes to the prescribing information for these medicines that are intended for use in the outpatient setting. These changes will provide expanded guidance to health care professionals on how to safely decrease the dose in patients who are physically dependent on opioid pain medicines when the dose is to be decreased or the medicine is to be discontinued.

Rapid discontinuation can result in uncontrolled pain or withdrawal symptoms. In turn, these symptoms can lead patients to seek other sources of opioid pain medicines, which may be confused with drug-seeking for abuse. Patients may attempt to treat their pain or withdrawal symptoms with illicit opioids, such as heroin, and other substances.

Opioids (/drugs/information-drug-class/opioid-medications) are a class of powerful prescription medicines that are used to manage pain when other treatments and medicines cannot be taken or are not able to provide enough pain relief. They have serious risks, including abuse, addiction, overdose, and death. Examples of common opioids include codeine, fentanyl, hydrocodone, hydromorphone, morphine, oxycodone, and oxymorphone.

**Health care professionals** should not abruptly discontinue opioids in a patient who is physically dependent. When you and your patient have agreed to taper the dose of opioid analgesic, consider a variety of factors, including the dose of the drug, the duration of treatment, the type of pain being treated, and the physical and psychological attributes of the patient. No standard opioid tapering schedule exists that is suitable for all patients. Create a patient-specific plan to gradually taper the dose of the opioid and ensure ongoing

monitoring and support, as needed, to avoid serious withdrawal symptoms, worsening of the patient's pain, or psychological distress (For tapering and additional recommendations, see Additional Information for Health Care Professionals).

**Patients** taking opioid pain medicines long-term should not suddenly stop taking your medicine without first discussing with your health care professional a plan for how to slowly decrease the dose of the opioid and continue to manage your pain. Even when the opioid dose is decreased gradually, you may experience symptoms of withdrawal (See Additional Information for Patients). Contact your health care professional if you experience increased pain, withdrawal symptoms, changes in your mood, or thoughts of suicide.

We are continuing to monitor this safety concern and will update the public if we have new information. Because we are constantly monitoring the safety of opioid pain medicines, we are also including new prescribing information on other side effects including central sleep apnea and drug interactions. We are also updating information on proper storage and disposal of these medicines that is currently available on our Disposal of Unused Medicines (/drugs/safe-disposal-medicines/disposal-unused-medicines-what-you-should-know) webpage.

To help FDA track safety issues with medicines, we urge patients and health care professionals to report side effects involving opioids or other medicines to the FDA MedWatch program, using the information in the "Contact FDA" box at the bottom of the page.

## Additional Information for Patients

- If you are taking opioid pain medicines long-term, do not suddenly stop taking your medicine without first discussing with your health care professional a plan for gradually getting off the medicine. Stopping opioids abruptly or reducing the dose too quickly can result in serious problems, including withdrawal symptoms, uncontrolled pain, and thoughts of suicide.

- Even when the opioid dose is decreased gradually, you may experience symptoms of withdrawal such as:

  - Restlessness

  - Eye tearing

  - Runny nose

8/13/25, 2:59 PM    FDA identifies harm reported from sudden discontinuation of opioid pain medicines and requires label changes to guide prescribers ...

Case 25-01338-MBK    Doc 1    Filed 08/18/25    Entered 08/19/25 08:43:35    Desc Main
Document    Page 12 of 22

- Yawning

- Sweating

- Chills

- Muscle aches

- Other symptoms also may develop, including:

  - Irritability

  - Anxiety

  - Difficulty sleeping

  - Backache

  - Joint pain

  - Weakness

  - Abdominal cramps

  - Loss of appetite

  - Nausea

  - Vomiting

  - Diarrhea

  - Increased blood pressure or heart rate

  - Increased breathing rate

- Contact your health care professional if you experience increased pain, withdrawal symptoms, changes in your mood, or thoughts of suicide. Also contact them if you have any questions or concerns.

- To help FDA track safety issues with medicines, report side effects from opioids or other medicines to the FDA MedWatch program, using the information in the "Contact FDA" box at the bottom of this page.

## Additional Information for Health Care Professionals

- Do not abruptly discontinue opioid analgesics in patients physically dependent on opioids. Counsel patients not to discontinue their opioids without first discussing the need for a gradual tapering regimen.

- Abrupt or inappropriately rapid discontinuation of opioids in patients who are physically dependent has been associated with serious withdrawal symptoms, uncontrolled pain, and suicide. Abrupt or rapid discontinuation has also been associated with attempts to find other sources of opioid analgesics, which may be confused with drug-seeking for abuse. Patients may also attempt to treat their pain or withdrawal symptoms with illicit opioids, such as heroin, and other substances.

- It is important to ensure ongoing care of the patient and to agree on an appropriate tapering schedule and follow-up plan so that patient and provider goals and expectations are clear and realistic.

- When deciding how to discontinue or decrease therapy in an opioid-dependent patient, consider a variety of factors, including the dose of the opioid analgesic the patient has been taking, the duration of treatment, the type of pain being treated, and the physical and psychological attributes of the patient.

- There are no standard opioid tapering schedules that are suitable for all patients. A patient-specific plan should be used to taper the dose of the opioid gradually.

- In general, for patients who are physically dependent on opioids, taper by an increment of no more than 10 percent to 25 percent every 2 to 4 weeks. It may be necessary to provide the patient with lower dosage strengths to accomplish a successful taper.

- If the patient is experiencing increased pain or serious withdrawal symptoms, it may be necessary to pause the taper for a period of time, raise the opioid analgesics to the previous dose, and then once stable, proceed with a more gradual taper.

- When managing patients taking opioid analgesics, particularly those who have been treated for a long duration and/or with high doses for chronic pain, ensure that a multimodal approach to pain management, including mental health support (if needed), is in place prior to initiating an opioid analgesic taper. A multimodal approach to pain management may optimize the treatment of chronic pain, as well as assist with the successful tapering of the opioid analgesic.

- Patients who have been taking opioids for shorter time periods may tolerate a more rapid taper.

- Frequent follow-up with patients is important. Reassess the patient regularly to manage pain and withdrawal symptoms that emerge. Common withdrawal symptoms include:

  - Restlessness

- Lacrimation

- Rhinorrhea

- Yawning

- Perspiration

- Chills

- Myalgia

- Other symptoms also may develop, including:

  - Irritability

  - Anxiety

  - Insomnia

  - Backache

  - Joint pain

  - Weakness

  - Abdominal cramps

  - Anorexia

  - Nausea

  - Vomiting

  - Diarrhea

  - Increased blood pressure or heart rate

  - Increased breathing rate

- Patients should also be monitored for suicidal thoughts, use of other substances, or any changes in mood.

- When opioid analgesics are being discontinued due to a suspected substance use disorder, evaluate and treat the patient, or refer him/her for evaluation and treatment of the substance use disorder. Treatment should include evidence-based approaches such as medication assisted treatment of opioid use disorder. Complex patients with comorbid pain and substance use disorders may benefit from referral to a specialist.

- To help FDA track safety issues with medicines, report adverse events involving opioids or other medicines to the FDA MedWatch program, using the information in the "Contact FDA" box at the bottom of this page.

8/13/25, 2:59 PM    FDA identifies harm reported from sudden discontinuation of opioid pain medicines and requires label changes to guide prescribers ...

Case 25-01338-MBK    Doc 1    Filed 08/18/25    Entered 08/19/25 08:43:35    Desc Main
Document        Page 15 of 22

en Español (/drugs/drug-safety-and-availability/la-fda-identifica-danos-reportados-por-la-interrupcion-repentina-de-analgesicos-opioides-y-exige)

Drug Safety Communication (/media/122935/download?attachment) (PDF - 69KB)

## Related Information

- Opioid Medications (/drugs/information-drug-class/opioid-medications)

- Disposal of Unused Medicines: What You Should Know (/drugs/safe-disposal-medicines/disposal-unused-medicines-what-you-should-know)

- Medication-Assisted Treatment (MAT) (https://www.samhsa.gov/medication-assisted-treatment)

- The FDA's Drug Review Process: Ensuring Drugs Are Safe and Effective (/drugs/information-consumers-and-patients-drugs/fdas-drug-review-process-ensuring-drugs-are-safe-and-effective)

- Think It Through: Managing the Benefits and Risks of Medicines (/drugs/information-consumers-and-patients-drugs/think-it-through-managing-benefits-and-risks-medicines)

## Contact FDA

### For More Info
855-543-DRUG (3784) and press 4
druginfo@fda.hhs.gov (mailto:druginfo@fda.hhs.gov)

### Report a Serious Problem to MedWatch
Complete and submit the report Online (https://www.accessdata.fda.gov/scripts/medwatch/).
Download form (/about-fda/forms/medwatch-consumer-voluntary-reporting-pdf) or call 1-800-332-1088 to request a reporting form, then complete and return to the address on the pre-addressed form, or submit by fax to 1-800-FDA-0178.

Steven Whitfield-Plaintiff
305 Oakdale Drive
Bakersfield, CA 93309
Telephone (323) 332-7679

August 13, 2025

TO THE CLERK OF THE COURT:

Please find enclosed a cashier's check drawn from plaintiff bank in the amount of $350 to cover filing fees in this action

Sincerely,

Steven Whitfield
In Pro Per

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>NEW RITE AID, Corporation | BANKRUPTCY CASE NO.<br>25-14861 | |
| DISTRICT IN WHICH CASE IS PENDING<br>U.S. District Court for the State of New Jersey | DIVISION OFFICE<br>Trenton | NAME OF JUDGE<br>Michael B. Kaplan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>August 12, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steven Whitfield | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>STEVEN WHITFIELD | DEFENDANTS<br>NEW RITE AID, Corporation |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Steven Whitfield  (323) 332-7579<br>305 Oakdale Drive<br>Bakersfield, California, 93309 | ATTORNEYS (If Known)<br>Unknown |

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor      ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☑ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Title 11 U.S.C. Section 523 (a), (6) , Intentional Intentional infliction of emotional
distress, personal injury, intentional willful and malicious conduct
and related matters, i.e. state law claims

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☑ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☐ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☐ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>(other than domestic support) |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | ☐ 65-Dischargeability - other |
| ☐ 21-Validity, priority or extent of lien or other interest in property | **FRBP 7001(7) – Injunctive Relief** |
| **FRBP 7001(3) – Approval of Sale of Property** | ☐ 71-Injunctive relief – imposition of stay |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 72-Injunctive relief – other |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | **FRBP 7001(8) Subordination of Claim or Interest** |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | ☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation** | **FRBP 7001(9) Declaratory Judgment** |
| ☐ 51-Revocation of confirmation | ☐ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability** | **FRBP 7001(10) Determination of Removed Action** |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | ☐ 01-Determination of removed claim or cause |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>actual fraud | **Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq. |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ 02-Other (e.g. other actions that would have been brought in state court<br>if unrelated to bankruptcy case) |
| **(continued next column)** | |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ |

| Other Relief Sought<br>Monetary damages in the amounts prayed for in the complaint, including all statutory damages, punitive damages and<br>enhancements |
|---|

1
2
3
4

## PLAINTIFF ADVERSARY PROCEEDING COMPLAINT

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Steven Whitfield-Plaintiff

2  305 Oakdale Drive

3  Bakersfield, California, 93309

4  Telephone (323) 332-7579

5  In Pro Per

6

7                                    August 13, 2025

8  RE: *Plaintiff filing of An Adversary Complaint against New Rite Aid Inc.*

9        *Case No. 25-14861 (MBK)*

10  TO: CLERK OF THE U S. DISTRICT COURT-BANKRUPTCY DIVISION

11

12        Please be advise that plaintiff is mailing this letter to you to apprise your
     office that by inadvertence <u>failed</u> to include the necessary Civil Cover Sheet

13  (B1040 Form with my mailing of <u>August 12, 2025</u>.

14

15        Accordingly, please find enclosed a completed B1040 Form be included to
     my filing/mailing of August 12, 2025 via First Class Mail. (1-5 days) arrival time

16  of reaching your office.

17

18        Therefore, I, am mailing the enclosed completed form via Priority Express
     Mail with will result your office receiving this correspondence 1-2 earlier that the

19  date of receiving plaintiff's Adversary Complaint and filing fees.

20

21        Therefore, in the event of your office receiving plaintiff's filing please adjust
     accordingly that this notice of prior of receipt of the foregoing documents.

22

23        I, of course thank you in advance for your cooperation in this matter.

24

25                                    Sincerely,

26

27                                    Steven Whitfield-
                                     Plaintiff
28

PLAINTIFF'S NOTICE OF OMITTED B1040 FORM



Clarkson Fisher U.S. Courthouse
U.S. District Court-Bankruptcy Division
402 State Street
Trenton, NJ 08608

Steven Whitfield
305 Oakdale Drive
Bakersfield, CA 93309



X-RAYED

Office of the Clerk
Clarkson Fisher U.S. Courthouse
U.S. District Court-Bankruptcy Division
402 State Street
Trenton, NJ 08608

Steven Whitfield-Plaintiff
305 Oakdale Drive
Bakersfield, California, 93309
In Pro Per

UNITED STATES POSTAL SERVICE.

Retail

P

US POSTAGE PAID
$15.70

Origin: 93309
08/14/25
05047405519-19

PRIORITY MAIL®

0 Lb 1.50 Oz

RDC 03

C034

EXPECTED DELIVERY DAY: 08/18/25

SHIP
TO:
402 E STATE ST
TRENTON NJ 08608-1507

USPS TRACKING® #

9505 5156 3142 5226 1004 82