| | |
|---|---|
| **PAUL, WEISS, RIFKIND,** <br> **WHARTON & GARRISON LLP** <br> Andrew N. Rosenberg (admitted *pro hac vice*) <br> Alice Belisle Eaton (admitted *pro hac vice*) <br> Christopher J. Hopkins (admitted *pro hac vice*) <br> Sean A. Mitchell (admitted *pro hac vice*) <br> 1285 Avenue of the Americas <br> New York, New York 10019 <br> Telephone: (212) 373-3000 <br> Facsimile: (212) 757-3990 <br> arosenberg@paulweiss.com <br> aeaton@paulweisss.com <br> chopkins@paulweiss.com <br> smitchell@paulweiss.com <br><br> *Co-Counsel for the Debtors and* <br> *Debtors in Possession* | **COLE SCHOTZ P.C.** <br> Michael D. Sirota, Esq. <br> Warren A. Usatine, Esq. <br> Felice R. Yudkin, Esq. <br> Seth Van Aalten, Esq. (admitted *pro hac vice*) <br> Court Plaza North, 25 Main Street <br> Hackensack, New Jersey 07601 <br> Telephone: (201) 489-3000 <br> msirota@coleschotz.com <br> wusatine@coleschotz.com <br> fyudkin@coleschotz.com <br> svanaalten@coleschotz.com <br><br> *Co-Counsel for the Debtors and* <br> *Debtors in Possession* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: <br><br> NEW RITE AID, LLC, *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 25-14861 (MBK) <br><br> (Jointly Administered) |

### DEBTORS' REPLY IN RESPONSE TO OBJECTION OF SVAP III PLAZA MEXICO, LLC TO NOTICE OF SUCCESSFUL AND BACKUP BIDDERS WITH RESPECT TO AUCTION OF CERTAIN OF THE DEBTORS' LEASES

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), file this reply (the "Reply")[2] in connection with the *Objection of*

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2] The Reply does not address the issues raised in the Objection (as defined below) relating to adequate assurance of future performance, which is addressed in the *Ross Dress For Less, Inc.'s Reply to the Objection of SVAP III Plaza Mexico, LLC to Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 2005] (the "Ross Reply") or to the Cure Costs, which is addressed in the *Debtors' Limited Omnibus Reply in Response to Cure Objections and in Support of Sale of Certain of the Debtors' Leases* [Docket No. 2004] (the "Omnibus Cure Reply"), and instead relies on, and incorporates by reference herein, the arguments set forth therein.

*SVAP III Plaza Mexico, LLC to Notice of Successful and Backup Bidders with Respect to Auction of Certain of the Debtors' Leases* [Docket No. 1873] (the "Objection"). In support of the Reply, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. Ignoring the express provisions of the Sale Procedures Order and the Auction Procedures (each as defined below), which, among other things, allowed the Debtors to "determine . . . whether to auction any Leases or Fee Owned Properties as part of a group or individually up through and including at the Auction or to conduct an Auction of any Lease . . . both individually and as part of a group in order to determine which option maximizes value of such assets" and to sell their rights in their leases through "private sales conducted outside of the Auction Procedures process or the Sales Procedures," SVAP III Plaza Mexico, LLC (the "Landlord") takes exception to the Debtors' proposed assumption and assignment of the Lease (as defined below) to Ross Dress For Less, Inc. ("Ross") pursuant to the terms of "package Bid" pursuant to which the Debtors are seeking to assume and assign eighteen (18) unexpired non-residential real property leases, including the Lease, to Ross for $4,802,128.00, less any Cure Cost Reduction (as defined in the Ross Assumption and Assignment Agreement) (the "Ross Purchase Price").

2. The Landlord amazingly argues that the Debtors breached their fiduciary duty by eschewing the Landlord's bid, admittedly couched as an "Initial Bid," consisting of (a) a cash bid in the amount of $25,000.00, and (b) a waiver of the outstanding amounts due under the Lease relating to the period prior to the date of the Tenant's bankruptcy filing (excluding any amounts due for the pro-rated post-petition portion of the May stub rent), and (c) the waiver of any claim for damages for the rejection of the Lease under 11 U.S.C. § 502(b)(6), in favor of the Ross package for nearly $5 million.

3. Even if had a legitimate argument (and to be sure, it does not), it is of no moment, as the Landlord, as an aggrieved bidder lacks standing to oppose the assumption and assignment of the Lease to Ross.

4. For these reasons, and the reasons set forth below, the Objection should be overruled.

## RELEVANT FACTS

5. The Landlord and Debtor-Thrifty Payless, Inc. are parties to a non-residential real property lease dated as of February 20, 1987 (as amended from time to time, the "Lease") for the premises located at 11325 Long Beach Boulevard, Lynwood, California.

6. On June 11, 2025, the Court entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Sale Procedures Order"), by which the Court approved procedures (the "Auction Procedures")[3] setting forth the process by which the Debtors are authorized to sell their unexpired leases of nonresidential real property (each, a "Lease"), in the Debtors' chapter 11 cases, including pursuant to an auction (the "Auction") or outside of the Auction Procedures by a private sale.

7. Among other things, the Auction Procedures provide as follows:

> The Debtors reserve the right to determine, in consultation with the Consultation Parties, whether to auction any Leases or Fee Owned Properties as part of a group or individually up through and including at the Auction or to conduct an Auction of any Lease or Fee Owned Property both individually and as part of a group in order to determine which option maximizes value of such assets.

Auction Procedures, Section D.(i)(c)

---

[3] Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Sale Procedures Order or the Approved Procedures, as applicable.

3

8. In addition, Paragraph 3 Sale Procedures Order provides that "the Debtors, may modify the Auction Procedures as necessary or appropriate to maximize value for their estates.[3]" Footnote 3 to that sentence provides as follows:

> For the avoidance of doubt, the Debtors also anticipate that some of their Leases and Fee Owned Properties may be sold pursuant to either private sales conducted outside of the Auction Procedures process or the Sales Procedures. Nothing in this Final Order limits the Debtors' ability to include any Lease or Fee Owned Property (a) in any private sale or any sale process conducted pursuant to the Sales Procedures, or (b) not sold pursuant to sale processes conducted pursuant to the Sales Procedures in a subsequent Auction process conducted pursuant to the Auction Procedures.

*See* Sale Procedures Order, n. 3.

9. Following the entry of the Sale Procedures Order, the Debtors' court appointed real estate advisor, A&G Real Estate Partners ("A&G") extensively marketed the Leases, including the Lease.

10. A&G received two (2) prospective Bids for the Lease; one from the Landlord and another from Ross, which was part of a package Bid for eighteen (18) Leases.

11. The Ross bid is expressly conditioned as a "package Bid" for all eighteen (18) Leases and is not a separate Bid for each individual Lease. As noted above, the Ross Purchase Price is $4,802,128.00, less any Cure Cost Reduction.

12. The Landlord's Bid was submitted with a Bid letter, which provides, in relevant part as follows:

> The Initial Bid for the Lease will consist of (a) a cash bid in the amount of $25,000.00, and (b) a waiver of the outstanding amounts due under the Lease relating to the period prior to the date of the Tenant's bankruptcy filing (excluding any amounts due for the pro rated post-petition portion of the May stub rent), and (c) the waiver of any claim for damages for the rejection of the Lease under 11 U.S.C. § 502(b)(6). The Landlord does not waive its rights to any other claims, including specifically that Landlord does not waive claims for unpaid post-petition amounts that are due and owing

4

under the Lease pursuant to 11 U.S.C. §§ 365(d)(3), 503(b), or any other provision of the Bankruptcy Code, for the Debtors' use and/or occupancy of the Premises from the date of the bankruptcy filings through the date the Premises is vacated and properly turned over to the Landlord. Landlord reserves the right to waive other claims as part of any subsequent bid, and it further reserves the right to increase its Initial Bid prior to or during the auction and otherwise bid on the Lease at the auction.

13. In connection with its Bid, the Landlord warranted and represented that it "has received, reviewed, understands, and agrees to abide by the terms and conditions of the Sale Order, the terms and conditions of which are incorporated herein by reference."

14. On July 21, 2025, the Debtors held the Auction with respect to certain of the Leases. During the Auction, A&G announced that the Debtors had accepted the Ross package Bid, which included the Lease.

15. No further bidding occurred at the Auction with respect to any of the Leases included the Ross package Bid.

16. Following the Auction, on July 22, 2025, the Debtors filed the *Notice of Successful and Backup Bidders with Respect to the Auction of Certain of the Debtors' Leases* [Docket No. 1524] (the "<u>Successful Bidder Notice</u>").

17. Among other things, the Successful Bidder Notice identified Ross as the Successful Bidder with respect to the Lease.

## ARGUMENT

**A. The Landlord Lacks Standing to Challenge the Assumption and Assignment of the Lease to Ross**

18. Courts that have considered standing in the context of the sale or other disposition of estate assets have generally held that disappointed prospective purchasers do not have standing to challenge the right of other bidders to consummate a sale. *See*, *e.g.*, *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir. 1997); *In re Moran*, 566 F.3d 676, 681 (6th Cir.

5

2009) (no standing for frustrated bidders because his interests were not aligned with bankruptcy estate's creditors); *In re Squire*, 2006 WL 2497706, at *3 (6th Cir. June 23, 2008) (frustrated bidders do not have standing to object to sale of property); *In re Colony Hill Assoc.*, 111 F.3d 269, 273 (2d Cir. 1997) (stating that under the "aggrieved person" standard for appellate standing, an unsuccessful bidder whose only loss is speculative profits from the property auctioned, in the absence of fraud, mistake or unfairness, usually lacks standing to challenge the sale); *In re Trans World Airlines, Inc.*, No. 01-00056 (PJW) (Bankr. D. Del. Apr. 2, 2001) ("However, it is not appropriate for a "bidder" to come into the hearing with a proposal which has not been properly presented to the debtor's board of directors and its advisors pursuant to a court ordered bidding procedure, but instead to seek to have the bankruptcy court exercise its independent business judgment and direct the debtor accordingly."); *In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 89 (Bankr. W.D. Tex. 2000); *In re HST Gathering Co.*, 125 B.R. 466 (W.D. Tex. 1991) (unsuccessful bidder was not an "aggrieved person" with standing to appeal); *In re Planned Systems, Inc.*, 82 B.R. 919 (Bankr. S.D. Ohio 1988) (bidder that objected sale was not in the best interests of the estate had no standing); *In re NEPSCO, Inc.*, 36 B.R. 25 (Bankr. D. Me. 1983) (potential bidder for assets had no standing to object to compromise between trustee and secured creditor concerning disposition of assets).

19. Although, as a general rule, a disappointed bidder does not have standing to challenge a bankruptcy court's approval of a sale, courts have recognized that this rule is not absolute. *In re Colony Hill Assocs.*, 111 F.3d at 273. Rather, the rule is subject to an exception where the bidder "attacks [the] bankruptcy sale on equitable grounds related to the intrinsic structure of the sale." *Id.* at 274 (quoting *In re Harwald Co.*, 497 F.2d 443, 444-45 (7th Cir. 1974)); *see also In re Hat*, 310 B.R. 752 (Bankr. E.D. Cal. 2004) (unsuccessful bidder had standing

6

to file reconsideration motion based upon evidence of collusive bidding); *Zalevsky v. Steele*, 78 B.R. 100 (W.D. Pa. 1987) (potential bidder had standing to appeal from sale order where trustee failed to give bidder notice of public sale).

While the Landlord may claim to be objecting to the "intrinsic fairness" of the process by which the Lease was sold, that objection misses the mark because, as described below, the Debtors were within their rights to proceed with the Ross package Bid without subjecting the Lease to further competitive bidding at the Auction and there is no suggestion of collusive bidding or that the Debtors did not proceed in good faith in accepting the Ross package Bid. *See In re Colony Hill Assocs.*, 111 F.3d at 274. The Landlord's Objection, therefore, does not fall within this exception.

20. Thus, the Landlord, in its status a disappointed competing bidder, lacks standing to challenge the proposed assumption and assignment of the Lease to Ross. For this reason alone, the Court should overrule the Objection insofar as it seeks to challenge the assumption and assignment of the Lease to Ross because it was not permitted to increase its Bid at the Auction.

**B.    Even Assuming, *Arguendo*, that the Landlord Has Standing – and it Does Not – the Objection Should Be Overruled as the Sale Procedures Order and the Auction Procedures Expressly Permit the Debtors to Accept the Ross Package Bid Without Subjecting the Lease to Further Competitive Bidding at the Auction**

21. As noted above, the Auction Procedures expressly permit the Debtors the Debtors to "determine . . . whether to auction any Leases or Fee Owned Properties as part of a group or individually up through and including at the Auction or to conduct an Auction of any Lease . . . both individually and as part of a group in order to determine which option maximizes value of such assets." Auction Procedures, Section D.(i)(c)

22. Moreover, the Sales Procedure Order allowed the Debtors in their business judgment to accept the Ross package Bid without subjecting the Lease to further competitive

7

bidding at the Auction if doing so would maximize the value. For example, Paragraph 3 of the Sale Procedures Order provides that "the Debtors, may modify the Auction Procedures as necessary or appropriate to maximize value for their estates." In that regard, the Sale Procedures Order makes clear:

> For the avoidance of doubt, the Debtors also anticipate that some of their Leases and Fee Owned Properties may be sold pursuant to either private sales conducted outside of the Auction Procedures process or the Sales Procedures. Nothing in this Final Order limits the Debtors' ability to include any Lease or Fee Owned Property (a) in any private sale or any sale process conducted pursuant to the Sales Procedures, or (b) not sold pursuant to sale processes conducted pursuant to the Sales Procedures in a subsequent Auction process conducted pursuant to the Auction Procedures.

23. In participating in the process approved by the Sale Procedures Order and the Auction Procedures, the Landlord expressly represented and warranted that it reviewed, understood, and agreed to abide by the terms and conditions of the Sale Procedures Order. Notwithstanding its express agreement with, and participation in, the process, the Landlord for its own parochial reasons now seeks to derail the assumption and assignment of the Lease, and potentially deprive the Debtors of the entirety of the Ross Purchase Price, which unquestionably will bring significant value to these estates. The Court should, respectfully, reject such a perversion of the Debtors' ability to maximize the value of their assets.

24. While disappointed in the outcome, the Landlord cannot seriously challenge that the Debtors properly exercised their business judgment in not exposing the Lease (or any of the other Leases included within the Ross package Bid) to further competitive bidding at the Auction process in order to maximize the value of their assets. The Debtors submit that doing so did, in fact, maximize the value of their assets, even if it deprived the Landlord of having an opportunity to increase its Initial Bid at the Auction. While this was not the outcome that Landlord had hoped for, that does not mean that Landlord's interests supplant those of the bankruptcy estate, and the

Case 25-14861-MBK    Doc 2007    Filed 08/22/25    Entered 08/22/25 19:27:24    Desc Main

Landlord's request that this Court "re-open" the Auction to permit the Landlord's further participation evidences a misunderstanding of the standard applicable when determining whether the sale of a Debtor's assets should be approved. Objection at ¶ 17.

25. Neither the Landlord nor this Court, respectfully, can substitute their own judgment when the Debtors have reasonably exercised their business judgment, and the business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), cert, denied, 475 U.S. 1057 (1986), *see also In re MF Global, Inc.,* 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference"); *In re Pritam Realty, Inc.,* 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.,* 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.,* 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.,* 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

26. For all of these reasons, and the reasons set forth in the Ross Reply and the Omnibus Cure Reply, the Objection should be overruled.

[*Remainder of page intentionally left blank*]

**CONCLUSION**

For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objection and grant the Debtors the authority to assume and assign the Lease to Ross, provided that the Debtors reserve any disputed portion of the amounts asserted in the Objection with respect to the Cure Costs.

Dated:  August 22, 2025

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*