| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(c) **LUNDY, BELDECOS & MILBY, P.C.** Jessica M. Gulash, Esquire [N.J. Bar No. 019442008] 450 N. Narberth Avenue, Suite 200 Narberth, PA 19072 (610) 668-0772 jgulash@lbmlaw.com  *Counsel for Bloch Ironwood, LLC* | |
| In re: NEW RITE AID, LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-14861 (MBK) Judge: Hon. Michael B. Kaplan (Jointly Administered) |

### MOTION OF RAD PA, LLC TO ALLOW ADMINISTRATIVE EXPENSE CLAIM AND COMPEL IMMEDIATE PAYMENT THEREOF

Bloch Ironwood, LLC ("**Landlord**"), by and through its undersigned counsel, respectfully submits the instant Motion to Allow Administrative Expense Claim and Compel Immediate Payment Thereof (the "**Motion**"), pursuant to 11 U.S.C. §§ 105(a), 503(b)(1), and 507(a)(2), allowing the administrative expense claim of Landlord and compelling immediate payment of same, and in support thereof avers as follows:

### Jurisdiction and Venue

1.    This Honorable Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1335. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

## Factual Background

2. Landlord manages the real property known as and located at 208 West Ironwood Drive, Coeur D'Alene, Idaho (the "**Leased Premises**"). Declaration of Darren Bloch[2] at ¶ 4.

3. The Leased Premises is the location of Rite Aid Store No. 05420 (the "**Store**"). *Id*. at ¶ 6.

4. On or about February 20, 1991, First Western Development of Washington V Associates ("**First Western**") and Pay'n Save Drug Stores, Inc. ("**Pay'n Save**") entered into a Lease (the "**Original Lease**") whereby Pay'n Save leased the Leased Premises from First Western. *Id*. at ¶ 7.

5. On or about July 26, 1992, Pay'n Save assigned the Original Lease to ADC Distribution Corp. ("**ADC**"), at which time ADC succeeded to all of Pay'n Save's right, title, and interest in the Original Lease. *Id*. at ¶ 8.

6. Thereafter, the Original Lease was assigned to Thrifty Payless, Inc. ("**Debtor**"). *Id*. at ¶ 9.

7. On or about September 14, 2016, Debtor provided notice to Ironwood Square West, LLC ("**Ironwood Square**") that it had elected to exercise its option to extend the term of the Lease for five (5) years. *Id*. at ¶ 10.

8. On or about February 1, 2019, the Leased Premises was transferred to Ironwood Partners, LLC ("**Ironwood Partners**"). *Id*. at ¶ 11.

9. On or about October 13, 2021, Ironwood Partners and Debtor entered into a First Amendment to Lease (the "**First Amendment**") which extended the term of the Original Lease to May 31, 2032. *Id*. at ¶ 12.

---

[2] Hereinafter cited as "**Bloch Dec.**"

10. On January 12, 2023, Ironwood Partners assigned all of its right, title, and interest in the Original Lease, as amended by the First Amendment (the "**Lease**") to Landlord and several other entities. *Id.* at ¶ 13.

11. Since the aforementioned assignment, Landlord has been managing the Leased Premises. *Id.* at ¶ 14.

12. On May 5, 2025 (the "**Petition Date**"), Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey, which later became jointly administered with the other Rite Aid bankruptcy cases.

13. Debtor rejected the Lease effective as of July 31, 2025. *Id.* at ¶ 16.

14. The minimum monthly rent due and owing to Landlord by Debtor is currently $17,927.29 per month. *Id.* at ¶ 17.

15. Debtor failed to pay rent due on April 1, 2025, and May 1, 2025. *Id.* at ¶ 18.

**Landlord is Entitled to an Administrative Claim for
Post-Petition Stub Rent, CAM, and Attorney's Fees**

16. Administrative expense claims may be allowed for "the actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1)(A). *See also In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 817 (3d Cir. 2010) ("Post-petition obligations are ordinarily given payment priority as administrative expenses, though such claims must still go through standard procedures of notice and a hearing to demonstrate that the costs were actual, necessary expenses of preserving the estate.").

17. "For a claim . . . to be entitled to priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *In re O'Brien Env. Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999).

18. "A party seeking payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id*. at 533.

19. In the Third Circuit, a landlord may assert an administrative priority claim for "stub rent," which is "the amount due a landlord for the period of occupancy and use between the petition date and the first post-petition rent payment." *Goody's*, 610 F.3d at 815.

20. Here, rent is due on the first (1st) day of each month. *See* Bloch Dec. at Exh. "1" thereto.

21. The current monthly rent for the Leased Premises is $17,927.29 per month. *Id*. at ¶ 17.

22. Debtor filed its Voluntary Petition on May 5, 2025, without having paid the rent due and owing to Landlord on May 1, 2025. *Id*. at ¶ 18.

23. Accordingly, Debtor is liable for prorated "stub rent" in the amount of $15,536.82. *Id*. at ¶ 20.

24. The Lease also obligates Debtor to pay common area maintenance ("**CAM**") charges. *Id*. at ¶ 21.

25. Debtor failed to pay 2nd quarter 2025 CAM charges in the sum of $13,130.01. *Id*. at ¶ 22.

26. The 2nd quarter CAM charges prorated from May 5, 2025, through June 30, 2025, are $4,923.49. *Id*. at ¶ 23.

27. Debtor also failed to pay post-petition CAM charges for July 2025 in the sum of $5,813.92. *Id*. at ¶ 24.

28. The Lease further obligates Debtor to pay Landlord's attorney's fees incurred in connection with collecting amounts due. *Id*. at ¶ 25.

29. To date, Landlord has incurred post-petition attorney's fees in the sum of $13,677.38. *Id*. at ¶ 26.

30. From the Petition Date through July 31, 2025, Debtor continued to use and occupy the Leased Premises to sell retail and other items to its customers, generating income for the bankruptcy estate.

31. Landlord is accordingly entitled to an administrative expense claim in the amount of $39,951.61.

**Landlord is Entitled to Immediate Payment of its Administrative Expense Claim**

32. "The determination of the timing of payment of administrative expenses is within the discretion of the bankruptcy court. In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to the debtor's assets. Thus, distributions prior to confirmation of a plan are usually disallowed when the estate may not be able to pay all administrative expenses in full. Other factors include the particular needs of each administrative claimant and the length and expense of the case's administration" *In re HQ Global Holdings, Inc*., 282 B.R. 169, 173 (Bankr. D. Del. 2002) (internal citations omitted).

33. Other factors that may be considered by the court when deciding when an administrative expense will be paid include "prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden Ridge Corp.*, 323 B.R. 126, 143 (Bankr. D. Del. 2005).

34. Here, there is no indication that Debtor will be unable to pay all administrative

expenses in full, especially since has been selling assets located at the Leased Premises and other locations.

35. Moreover, Landlord should not be prejudiced by having to wait to receive payment for its administrative claim at some yet-to-be determined point in the future.

36. Landlord is therefore entitled to immediate payment of its administrative expense claim in the amount of $39,951.61.

## Waiver of Memorandum of Law

37. Landlord respectfully submits that a memorandum of law is unnecessary under Local Rule 9013-1(a)(3) because the legal basis upon which Landlord relies is set forth herein, and Landlord has not raised any novel issues of law.

WHEREFORE, for the reasons set forth herein, Landlord Bloch Ironwood, LLC respectfully requests that this Honorable Court grant its Motion and enter an order allowing the administrative expense claim of Landlord and compelling immediate payment of same.

Respectfully submitted,

LUNDY, BELDECOS & MILBY, P.C.

Date: 8/27/2025     By:   /s/ Jessica M. Gulash
JESSICA M. GULASH, ESQUIRE
450 N. Narberth Avenue, Suite 200
Narberth, PA 19072
(610) 668-0772
jgulash@lbmlaw.com

*Counsel for Bloch Ironwood, LLC*