**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>          Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**NINETEENTH NOTICE OF ADDITIONAL CLOSING LOCATIONS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On July 10, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 1397] (the "Final Location Closing Order")[2] authorizing and approving

---

[1]    The last four digits of Debtor New Rite Aid LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Final Location Closing Order.

the conduct of location closings and related sales in accordance with certain store closing sale guidelines and granting related relief. A copy of the Final Location Closing Order, including the Sale Guidelines, is attached hereto as **Exhibit 2**.

Pursuant to the Final Location Closing Order and by this written notice (this "<u>Notice</u>"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each store location listed in **Exhibit 1** attached hereto shall be an Additional Closing Location.

Parties seeking to object to the application of the Final Location Closing Order to any of the store locations set forth on **Exhibit 1** must file and serve a written objection so that such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is actually received by the Debtors and their counsel no later than September 8, 2025 (the date that is ten days after the date that the Debtors served this Notice). Only those responses that are timely filed, served, and received will be considered at any hearing.

If an objection to the application of the Final Location Closing Order to any of the store locations set forth on **Exhibit 1** is timely filed and not withdrawn or resolved, such objection will be considered at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis or shortened notice.

[*Remainder of page intentionally left blank*]

Dated:  August 29, 2025

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D.  Sirota, Esq.
Warren A.  Usatine, Esq.
Felice R.  Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and
Debtors in Possession*

## **Exhibit 1**

**Additional Closing Locations**

| # | Store # | Location Code | Address | City | State | Zip |
|---|---------|---------------|---------|------|-------|-----|
| 1 | 5322 | 05322-03 | 12575 SW WALKER ROAD | BEAVERTON | OR | 97005 |
| 2 | 5285 | 05285-03 | 551 SOUTH MARKET BOULEVARD | CHEHALIS | WA | 98532 |
| 3 | 6452 | 06452-02 | 5655 3RD AVENUE | FERNDALE | WA | 98248 |
| 4 | 5299 | 05299-02 | 700 SOUTH MAIN STREET | ELLENSBURG | WA | 98926 |
| 5 | 5394 | 05394-02 | 1514 SW HIGHLAND AVENUE | REDMOND | OR | 97756 |
| 6 | 5390 | 05390-01 | 1900 NE 3RD STREET SUITE 111 | BEND | OR | 97701 |
| 7 | 5215 | 05215-01 | 301 HIGH SCHOOL ROAD NE | BAINBRIDGE ISLAND | WA | 98110 |

**Exhibit 2**

**Final Location Closing Order**



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Order Filed on July 10, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

NEW RITE AID, LLC, *et al.*,

Debtors.[1]

Chapter 11

Case No. 25-14861 (MBK)

(Jointly Administered)

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT, (II) AUTHORIZING AND APPROVING THE SALE OF CLOSING LOCATION ASSETS, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through thirty-four (34), is **ORDERED**.

**DATED: July 10, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]  The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

Upon the motion (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order"):  (a) authorizing the Debtors to assume and perform under that certain consulting agreement dated as of April 3, 2025, by and among New Rite Aid, LLC, on the one hand, and SB360 Capital Partners, LLC ("SB360") and Hilco Merchant Resources, LLC ("Hilco," and, together with SB360, the "Consultants"), on the other hand, which is attached hereto as **Schedule 1** (as may be modified from time to time in accordance with its terms, the "Consulting Agreement"); (b) (i) authorizing and approving the continuation or initiation of store closing, everything must go, going-out-of-business, or similar themed sales (the "Initial Location Closings") at the stores and distribution centers identified on **Schedule 2** attached hereto (collectively, the "Initial Closing Locations "), (ii) authorizing the Debtors to conduct store closing or similar themed sales at additional stores and distribution centers (the "Additional Location Closings" and, together with the Initial Location Closings, the "Location Closings") at a later date or dates pursuant to the procedures set forth herein (collectively, the "Additional Closing Locations," if any, and, together with the Initial Closing Locations, the "Closing Locations"), and (iii) authorizing the Debtors to continue sales and internal transfers of Pharmacy Assets (as defined below), with all such sales to be free and clear of all liens, claims, and encumbrances (the sales described in clauses (i)–(iii), collectively, the "Sales"), in each case, in accordance with the store closing sale guidelines

---

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 25].

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

(the "Sale Guidelines") attached hereto as **Schedule 3**; (c) authorizing and approving the payment of fees and reimbursement of expenses to the Consultants in accordance with the provisions of the Consulting Agreement and this Final Order; and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and the Frejka Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY FOUND AND DETERMINED THAT**:[1]

A.      The Debtors have advanced sound business reasons for seeking to assume and perform under the Consulting Agreement, as set forth in the Motion and at the Hearing.

---

[1]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

B.      The Debtors' assumption of and performance under the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors and their estates.

C.      The Debtors and the Consultants negotiated and entered into the Consulting Agreement, which is attached to this Final Order as **Schedule 1**, without collusion, in good faith, and from arm's-length bargaining positions.

D.      The Debtors have advanced sound business reasons for adopting the Sale Guidelines, which are attached as **Schedule 3** hereto, as set forth in the Motion and at the Hearing.

E.      The Sale Guidelines, which are attached as **Schedule 3 hereto**, are reasonable and appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Closing Location Assets and are in the best interests of the Debtors' estates.

F.      The Location Closings and the Sales are in the best interests of the Debtors' estates.

G.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

H.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

I.      The entry of this Final Order is in the best interests of the Debtors and their estates and creditors; and now therefore it is **HEREBY ORDERED THAT**:

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

1. The Motion is **GRANTED** on a final basis as set forth herein.

2. To the extent there is any conflict between this Final Order, the Consulting Agreement, or the Sale Guidelines: (a) the Sale Guidelines shall control over the Consulting Agreement; and (b) the terms of this Final Order shall control over the Consulting Agreement and the Sale Guidelines. To the extent of any conflict between this Final Order, the Sale Guidelines, the Consulting Agreement, and a Side Letter (as defined herein), subject to paragraph [34] hereof: (a) the terms of the Side Letter shall control as between the Debtors, the Consultants, and the applicable landlord(s); and (b) the terms of this Final Order shall control as to all other matters, except that the Consulting Agreement shall control as to the Consultants' authority to enter into any Side Letter.

## I.    Authority to Assume and Perform Under the Consulting Agreement.

1. The Debtors' assumption of and performance under the Consulting Agreement is approved in all respects on a final basis. The Debtors are authorized to assume and perform under the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, including by, subject to compliance with the Budget (as defined in the Consulting Agreement, the "Budget"), making the payments required by the Consulting Agreement to the Consultants without the need for any application of the Consultants, or a further order of the Court. The (a) payment of all obligations to the Consultants under the Consulting Agreement (the "Consultant Payment Obligations") is approved without further order of the Court and (b) all such payments of the Consultant Payment Obligations shall be made in accordance with the Consulting Agreement, the Budget, and the provisions of this Final Order.

(Page | 7)
Debtors:          NEW RITE AID, LLC, *et al.*
Case No.          25-14861 (MBK)
Caption of Order: Final Order (I) Authorizing the Debtors to Assume and Perform Under the
                  Consulting Agreement, (II) Authorizing and Approving the Sale of Closing
                  Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims,
                  and Encumbrances, and (III) Granting Related Relief

2.      The Debtors shall timely fund and remit payment of the Consultants Payment

Obligations, without offset, from the gross proceeds from the sale of the Closing Location Assets

(other than sales of Pharmacy Assets), in each case in accordance with the terms of the Consulting

Agreement and any Budget approved in connection therewith, without the need for any application

of the Consultants, or a further order of the Court, and without adherence to any weekly, monthly,

or aggregate limitation in any DIP Orders, other order, DIP budget, cash collateral or other budget

entered in connection with the Debtors chapter 11 case; provided however, the time period for

payment after the Weekly Reconciliation provided for in Section 3(a) of the Consulting

Agreement, and the Final Reconciliation in Section 3(b) of the Consulting Agreement hare hereby

amended to two (2) Business Days after the applicable Weekly Reconciliation and Final

Reconciliation for each such Tranche of Designated Closing Locations.  To the extent there is any

conflict or inconsistency between this Final Order and the DIP Orders, the DIP Orders shall govern

and control (except as to the Consultants' rights under this Final Order regarding the payment of

Consultant Payment Obligations, as to which this Final Order shall govern and control).

3.      Subject to the terms and conditions set forth in this Final Order, the applicable

provisions of the DIP Orders, the Sale Guidelines, and any Side Letters (as defined herein), the

Debtors and the Consultants are hereby authorized to take any and all actions as may be necessary

or desirable to implement the Consulting Agreement, and each of the transactions contemplated

thereby (including conducting the Sales), and any and all such actions are hereby approved in all

respects.

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

4.      In addition to the Sale Advance, within two (2) business days after the Debtors' designation of a Tranche of Designated Closing Locations, or such other date as the Debtors, the Consultants, the Senior Credit Facility Agent and the DIP Agent may mutually agree in writing, the Debtors, the Consultants, the Senior Credit Facility Agent and the DIP Agent shall mutually agree upon (i) the amount of three (3) weeks estimated Consultant Controlled Expenses for such Tranche of Designated Closing Locations; and (ii) a reasonable estimate of the Base Inventory Fee (as defined in the Consulting Agreement) anticipated to be generated by such new Tranche of Designated Closing Locations over a three-week period (the "Fee Advance" and together with the Sale Advance, collectively the "Advances"), which shall be funded into the advance deposit account alongside the Sale Advance to an account controlled by the Consultants, for the benefit of the Consultants, *provided* that such amounts shall be taken into account when determining the agreed-upon Advances with respect to each subsequent Tranche of Designated Closing Locations. The Consultants shall have no obligation to commence the provision of services in connection with any Tranche of Designated Closing Locations until they have received the Advances provided for hereunder.  The Advances may be retained by the Consultants until Final Reconciliation (as defined in the Consulting Agreement). Notwithstanding the Consultants' receipt of the Advances, nothing contained herein shall be deemed to waive, modify or limit the Debtors' obligations to remit timely payment of the Fees and Expenses due to the Consultants as part of the Weekly Reconciliations (as defined in the Consulting Agreement).  To the extent the Debtors fail to timely remit payment of Fees or reimbursement of Expenses that are due and owing to the Consultants (collectively, if any, the "Unpaid Consultant Payment Obligations"), the Consultants may apply

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

such Unpaid Consultant Payment Obligations against the Advances. As each new Tranche (if any) of Designated Closing Locations is identified by the Debtors, the Debtors, the Consultants, the Senior Credit Facility Agent and the DIP Agent shall mutually agree upon an increase to the Fee Advance, taking into account unused portions of Advances from prior Tranches of Designated Closing Locations. No later than seven (7) business days after completion of the Final Reconciliation and upon receipt by the Consultants of all Fees and Expenses due to them under the Consulting Agreement, any unused portion of the Advances shall be returned by the Consultants to the DIP Agent for application in accordance with the DIP Orders.

5.       If Consultants Payment Obligations are not timely paid as contemplated by the Consulting Agreement and this Final Order (for any reason), including court order, the Consultants can, at their election, suspend the provision of services until the Debtors have paid all outstanding Unpaid Consultant Payment Obligations (and replenished any portion of the Sale Advance (described in 2 above) that has been exhausted by the Consultants, or terminate the Consulting Agreement and in either case have no further obligation to perform services under the Consulting Agreement during such suspension period or after such termination, as applicable, and the Consultants shall have no liability for any claims arising from such suspension or termination of services are hereby released and the Consultants shall be indemnified for any damages caused by the suspension or termination of services; provided that the Consultants may not recover the amount of any such claim (other than Unpaid Consultant Payment Obligations) from the Fee Advances or any other amounts on deposit in the advance funding account, whether by setoff, lien, attachment or otherwise without the prior written consent of the DIP Agent. In addition, the

(Page | 10)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

Consultants will have the right to file a motion on expedited one day notice) with an expedited hearing (subject to court availability) to compel payment of any Unpaid Consultant Payment Obligations.

6.     The Debtors and the Consultants may modify the Consulting Agreement in accordance with the terms thereof without further order of the Court; *provided* that (a) the Debtors shall provide five (5) calendar days' advance notice of any contemplated material modification(s) of the Consulting Agreement (including any modification of the Consulting Agreement's economic terms) to the U.S. Trustee, counsel to the DIP Agent, counsel to the Official Committee of Unsecured Creditors (the "Committee"), any landlord directly affected by such modification (and, if known, such landlord's counsel), and counsel to any party that has requested such notice (collectively, the "Amendment Notice Parties"); (b) the Debtors' modification of the Consulting Agreement shall be subject to the applicable provisions of the DIP Orders and related documentation, and (c) notwithstanding anything contained herein or in the Consulting Agreement, the Budget and any amendments, modifications, or supplements thereto shall be subject to the consent of the DIP Agent.  If an Amendment Notice Party timely objects to a proposed material modification to the Consulting Agreement and the Debtors, the Consultants, and such objecting Amendment Notice Party cannot consensually resolve such objection, the Debtors and the Consultants shall not proceed with such modification absent a further order of the Court approving such modification.]

7.     Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultants for any damages or losses arising out of any

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

fraud, willful misconduct, gross negligence, or breach of the Consulting Agreement by the Consultants.

## II.        Authority to Engage in Sales and Conduct Location Closings.

8.        The Debtors and the Consultants are authorized pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue, commence, and conduct Sales and Location Closings at the Closing Locations in accordance with this Final Order, the Consulting Agreement, and the Sale Guidelines, as may be modified by any Side Letters (as defined herein) between the Debtors and the landlords at the Closing Locations or between the Consultants and such landlords, as applicable; *provided*, that the DIP Agent shall be consulted before any stores are designated as Closing Locations unless all Pharmacy Assets at such locations have already been sold to a third party or otherwise designated for transfer to another store location.  For the avoidance of doubt, the Debtors and the Consultants are authorized to continue Sales and Location Closings commenced prior to the Petition Date, and are authorized to take all actions necessary related thereto, including with respect to Sales and Location Closings that close after the Petition Date but prior to entry of this Final Order.

9.        The Sale Guidelines are approved in their entirety on a final basis.

10.        The Debtors are authorized to discontinue operations at the Closing Locations in accordance with this Final Order, the Consulting Agreement, and the Sale Guidelines.

11.        All entities that are presently in possession of some or all of the Closing Location Assets in which the Debtors hold an interest that is or may be subject to this Final Order are hereby directed to surrender possession of such Closing Location Assets to the Debtors.

(Page | 12)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

12.     Subject to section V of this Final Order, neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Location Closings and to take the related actions authorized herein.

13.     The Debtors are authorized to conduct Sales and internal transfers of Pharmacy Assets consistent with historical practice in any size, amount, or volume, in accordance with applicable law, and all such Sales and internal transfers are hereby approved.  The Debtors are authorized to enter into and consummate, as applicable, such Sales of Pharmacy Assets on the terms and conditions, including any non-monetary terms and conditions, set forth in any agreements or other documents applicable to such Sales (including any asset purchase agreements), whether entered into prepetition or postpetition, which terms and conditions are hereby approved.  Each purchaser of Pharmacy Assets sold pursuant to this Final Order shall be deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, shall be entitled to all of the protections afforded by such provision.  Nothing in this Final Order authorizes the Consultants to sell or otherwise dispose of any Pharmacy Assets, and the Consultants shall not conduct any Sales of any Pharmacy Assets.

14.     For the avoidance of doubt, nothing in this Final Order or in the Sale Guidelines shall be construed to exempt the Debtors from any obligation to comply with applicable law regarding the monitoring of suspicious orders or purchases.

15.     Reserved.

(Page | 13)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

**III.     Conduct of the Sales.**

16.     All newspapers and other advertising media in which the Sales and Location Closings may be advertised and all landlords and subtenants are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultants, as applicable, to conduct the Sales and Location Closings, including, without limitation, to conduct and advertise the sale of the Non-Pharmacy Assets in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, the Consulting Agreement, and any applicable Side Letter.

17.     Subject to the Dispute Resolution Procedures provided for in this Final Order, the Debtors and the Consultants, as applicable, are hereby authorized on a final basis to take such actions as may be necessary and appropriate to conduct the Sales and Location Closings, and to implement the Consulting Agreement, in each case, without the necessity of a further order of this Court and as provided in and pursuant to the Sale Guidelines (subject to any Side Letters), and the Consulting Agreement, including, but not limited to, advertising a Sale of Non-Pharmacy Assets as a "store closing sale," "sale on everything," "everything must go," "going-out-of-business," or similar-themed sales as contemplated in the Sale Guidelines through the posting of signs (including the use of exterior banners at non-enclosed mall Closing Locations, and at enclosed mall Closing Locations to the extent the applicable Closing Location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage as contemplated in the Sale Guidelines.

18.     Except as expressly provided in the Consulting Agreement or Sale Guidelines, and subject to any Side Letter, Sales of the Closing Location Assets shall be conducted by the Debtors

(Page | 14)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

and the Consultants, notwithstanding any Contractual Restrictions to the contrary relative to (a) occupancy affecting or otherwise purporting to restrict the conduct of the Sales, (b) the abandonment of Non-Pharmacy Assets, or (c) "going dark" provisions. Any and all such Contractual Restrictions shall not be enforceable in conjunction with the Location Closings and the Sales. Any breach of any such provisions in these chapter 11 cases in conjunction with the Location Closings or the Sales shall not constitute a default under a lease or other contract or provide a basis to terminate the lease or other contract; *provided* that the Location Closings and Sales are conducted in accordance with the terms of this Final Order, any Side Letter, and the Sale Guidelines. The Debtors and/or the Consultants, as applicable, and landlords of the Closing Locations are authorized to enter into agreements ("Side Letters") among themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the parties thereto; *provided* that in all circumstances, the Consulting Agreement's provisions shall control whether and to what extent the Consultants are authorized to enter into Side Letters with a landlord of a Closing Location. In the event of any conflict between the Sale Guidelines, the Consulting Agreement, any Side Letter, and this Final Order, subject to paragraph [34] hereof, the terms of such Side Letter shall control; *provided* that, in all circumstances, the Consulting Agreement shall control as to the Consultants' authority to enter into any Side Letters. Side Letters shall be subject to the approval of the Debtors. Copies of any Side Letters will be provided to: (a) the U.S. Trustee; (b) counsel to the DIP Agent, (i) Choate, Hall & Stewart LLP (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com), and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig,

(Page | 15)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

LLP (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); and (c) proposed co-counsel to the Committee, (i) Willkie Farr & Gallagher LLP (Attn: Brett H. Miller (bmiller@willkie.com), Todd M. Goren (tgoren@willkie.com), James H. Burbage (jburbage@willkie.com), and Jessica D. Graber (jgraber@willkie.com)) and (ii) Sills Cummis & Gross LLP (Attn: Andrew H. Sherman (asherman@sillscummis.com), Boris Mankovetskiy (bmankovetskiy@sillscummis.com), and Gregory Kopacz (gkopacz@sillscummis.com)), at least five (5) calendar days' prior to execution of any Side Letters (which period may be shortened or waived if so consented to by each of the DIP Agent and the Committee).

19. Except as expressly provided for herein, or in the Consulting Agreement, Sale Guidelines, or any side letter, no person or entity, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, or creditors, shall take any action to, directly or indirectly, prevent, interfere with, or otherwise hinder consummation of the Location Closings, the Sales, the sale of the Closing Location Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, as applicable, and all such parties and persons and entities of every nature and description, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Location Closings and the Sales, and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultants, or the

(Page | 16)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

landlords at the Closing Locations that might in any way, directly or indirectly, obstruct or otherwise interfere with, or adversely affect the conduct of the Location Closings, the Sales, the sale of the Closing Location Assets, or other liquidation sales at any Closing Locations and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

20.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultants shall have the right to use the Closing Locations and all related Closing Location services, FF&E, and other assets of the Debtors for the purposes of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines (as may be modified by any Side Letters), the Consulting Agreement, and this Final Order.

21.     The Consultants shall not be liable for sales taxes except to the extent expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due; *provided* that, in the case of a *bona fide* dispute, the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultants shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement. This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state or federal law, and

(Page | 17)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

does not constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

22.     Pursuant to section 363(f) of the Bankruptcy Code, (a) the Debtors are authorized to sell the Closing Location Assets, including the Pharmacy Assets, in all cases, subject to and in accordance with the terms of the Sale Guidelines, (b) the Consultants, on behalf of the Debtors, are authorized to sell the Non-Pharmacy Assets, in all cases, subject to and in accordance with the terms and conditions of the Consulting Agreement and the Sale Guidelines, and (c) all sales of Closing Location Assets (including any Pharmacy Assets), whether by the Debtors or the Consultants, shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Closing Location Assets with the same validity, in the same amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Closing Location Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultants' Fees and Expenses (each as defined in the Consulting Agreement) (as provided for in the Consulting Agreement).

23.     The Debtors are authorized and empowered to (a) transfer Closing Location Assets among and into the Debtors' store locations in accordance with the Sale Guidelines, as applicable, (b) sell or abandon Non-Pharmacy Assets, in each case, in accordance with the Sale Guidelines, as applicable, and (c) sell Pharmacy Assets in accordance with the terms and conditions of this Final Order.  The Consultants are authorized and empowered to (a) transfer Non-Pharmacy Assets among and into the Debtors' store locations, and (b) sell or abandon Non-Pharmacy Assets, in

(Page | 18)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

each case, in accordance with the Sale Guidelines, as applicable, and the terms and conditions of

the Consulting Agreement.

24.     Notwithstanding anything to the contrary in this Final Order, the Debtors shall not

sell any property that the Debtors know is not owned by the Debtors (other than Saleable

Non-Merchandise (as defined in the Consulting Agreement) that is offered for sale by the Debtors

in the ordinary course of business); *provided* that the Debtors will use commercially reasonable

efforts to return such property to the applicable lessor, or owner of the property, if applicable;

*provided, further*, that the Debtors may abandon property owned by the landlord at the applicable

Closing Location.  If, after due inquiry and notice to the applicable lessor or other owner of the

property, the Debtors are unable to return such property, the Debtors are authorized to abandon

such property.

25.     Neither the Sale Guidelines, the Consulting Agreement, nor this Final Order

authorize the Debtors or the Consultants to transfer or sell to any other party the personal

identifying information (which means information that alone or in conjunction with other

information identifies an individual, including, but not limited to, an individual's first name (or

initial) and last name, physical address, electronic address, telephone number, social security

number, date of birth, government-issued identification number, bank account number and credit

or debit card number, and which includes all information that is "Protected Health Information"

as that term is defined in 45 C.F.R. §§ 103, 160, collectively, "<u>PII</u>") of any customers unless such

sale or transfer is permitted by the Debtors' privacy policies (including any applicable "Notice of

Privacy Practices" adopted under 45 C.F.R. §§ 164, 520) and applicable state or federal privacy

(Page | 19)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

and/or identity theft prevention laws and rules, including, for the avoidance of doubt, the Health Insurance Portability and Accountability Act of 1996 and the Health Information Technology for Economic and Clinical Health Act of 2009 (including their implementing regulations codified under 45 C.F.R. parts 160 and 164) and any state law of similar import. The foregoing shall not limit the use of the Debtors' customer lists and mailing lists, including by the Consultants in accordance with the Consulting Agreement, solely for purposes of advertising and promoting the Sales to the extent such use is not prohibited by applicable privacy laws.

26.    [The Debtors assert that the Sales consistent with the Sale Guidelines and the asset disposition strategy set forth in the Motion are consistent with the Debtors' privacy policies, and, as such, the Debtors are authorized to conduct the Sales without the appointment of a consumer privacy ombudsman.]

27.    The Debtors, and/or the Consultants, as applicable, shall remove or cause to be removed any confidential and/or PII in any of the Debtors' hardware, software, computers, or cash registers or similar equipment that are to be sold or abandoned so as to render the PII unreadable or undecipherable. At the conclusion of any Sales overseen by the Consultants, the Consultants shall provide the Debtors with written verification that the Consultants have not removed, copied, or transferred any customer PII and that any records containing PII that were in the Consultants' possession or control during such Sales were shredded, erased, or otherwise modified to render the PII unreadable or undecipherable.

28.    Nothing herein shall limit the Debtors' right to pause, suspend, postpone, or discontinue a Sale at a Closing Location on notice to affected parties.

(Page | 20)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

29.    Nothing herein is intended to affect any rights of any applicable Government Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

**IV.    Procedures Relating to Additional Closing Locations.**

30.    To the extent that the Debtors seek to conduct Sales at any Additional Closing Locations, the Sale Guidelines and this Final Order shall apply to each such Additional Closing Location (and the corresponding Additional Location Closing(s)).

31.    Except with respect to Sales of Pharmacy Assets, before conducting the Sales at any Additional Closing Location, the Debtors will file with the Court a list of each such Additional Closing Location (each, an "Additional Closing Location List") and serve a notice of their intent to conduct the applicable Sales at the Additional Closing Location on the Dispute Notice Parties, including applicable landlords (collectively, the "Additional Closing Location Landlords"), and other interested parties by email (to the extent available to the Debtors), or overnight mail within five (5) calendar days of filing the Additional Closing Location List.  With respect to the Additional Closing Location Landlords, the Debtors will mail, if applicable, such notice to the notice address set forth in the lease for such Additional Closing Location (or at the last known address available to the Debtors) and will email such notice to the applicable landlord's counsel if known.

32.    The relevant Additional Closing Location Landlords and any other interested parties shall have ten (10) calendar days after service of the applicable Additional Closing Location List to object to the application of this Final Order to the Additional Closing Location(s) included

(Page | 21)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

in such Additional Closing Location List.  If no timely objections are filed with respect to the application of this Final Order to an Additional Closing Location, the Debtors shall be authorized to proceed with conducting the Sales at the Additional Closing Locations (and any corresponding Additional Location Closing(s)) in accordance with this Final Order and the Sale Guidelines.  If any objections are filed with respect to the application of this Final Order to an Additional Closing Location and such objections are not resolved, the objections and the application of this Final Order to the Additional Closing Location will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary.

## V.        Dispute Resolution Procedures with Governmental Units.

33.        Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  With the exception of the limited waivers and accommodations granted herein, the Location Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety,

(Page | 22)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic, privacy and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").  Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

34.    To the extent that the sale of Closing Location Assets is subject to any Liquidation Sale Laws, the following provisions of this paragraph [34] shall apply and control over any Side Letters:

    i.    Provided that the Sales are conducted in accordance with this Final Order and the Sale Guidelines, the Debtors, the Consultants, and the Debtors' landlords shall be deemed to be in compliance with any requirements of any and all county, parish, municipal, or other local government and state Liquidation Sale Laws that would

(Page | 23)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

otherwise apply to the Closing Locations, the Location Closings, or the Sales; *provided* that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, the "Safety Laws"), and the Debtors and the Consultants shall continue to be required to comply with applicable Safety Laws and applicable General Laws, subject to any applicable provisions of the Bankruptcy Code and federal law, and nothing in this Final Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.    Within seven (7) calendar days after entry of this Final Order, the Debtors will serve by first-class mail copies of this Final Order, the Consulting Agreement, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the Board of Pharmacy's office for each state where a Closing Location is located; (c) the county consumer protection agency or similar agency for each county where the Sales are being held; (d) the division of consumer protection for each state where the Sales are being held; (e) the landlords, and known counsel for the landlords if any, for the Closing Locations ; and (f) the subtenants (if any) under the leases with respect to the Closing Locations (collectively, the "Dispute Notice Parties").

iii.   With respect to any Additional Closing Locations, within seven (7) calendar days after filing any Additional Closing Location List (as defined below) with the Court, the Debtors will serve copies of the applicable Additional Closing Location List, this Final Order, the Consulting Agreement, and the Sale Guidelines on the applicable Dispute Notice Parties.

iv.    To the extent that there is a dispute arising from or relating to the Sales, this Final Order, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve such Reserved Dispute. Any time within ten (10) calendar days following entry of this Final Order or the service of an Additional Closing Location List, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (a "Dispute Notice") explaining the nature of the dispute on: (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102,

(Page | 24)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No.: | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

Attn: Jeffrey M. Sponder and Lauren Bielskie; (c) counsel to the Senior Credit Facility Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) counsel to the Consultants, (i) Leichtman Law PLLC, 185 Madison Avenue, 15th Floor, New York, NY 10016 (Attn: Maura I. Russell (mrussell@leichtmanlaw.com)) and (ii) Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068 (Attn: Jeffrey Cohen (jcohen@lowenstein.com) and Andrew Behlmann (abehlmann@lowenstein.com)); (e) proposed co-counsel to the Committee, (i) Willkie Farr & Gallagher LLP 787 Seventh Avenue, New York, NY 10019-6099 (Attn: Brett H. Miller (bmiller@willkie.com), Todd M. Goren (tgoren@willkie.com), James H. Burbage (jburbage@willkie.com), and Jessica D. Graber (jgraber@willkie.com)), and (ii) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102 (Attn: Andrew H. Sherman (asherman@sillscummis.com), Boris Mankovetskiy (bmankovetskiy@sillscummis.com), and Gregory Kopacz (gkopacz@sillscummis.com)); and (f) the affected landlord(s) or their known counsel (collectively, the "Dispute Resolution Notice Parties"). If the Debtors and a Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) calendar days after service of the Dispute Notice on the Dispute Resolution Notice Parties, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (such motion, a "Dispute Resolution Motion").

v. If a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of this Final Order, nor the conduct of the Debtors pursuant to this Final Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultants' ability to conduct or to continue to conduct any Sales or Location Closings pursuant to this Final Order, as applicable, absent further order of the Court. Upon entry of this Final Order, the Debtors and the Consultants shall be authorized to conduct the Sales and Location Closings pursuant to the terms of this Final Order, the Consulting Agreement, and the Sale Guidelines, and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the

(Page | 25)
Debtors:              NEW RITE AID, LLC, *et al*.
Case No.              25-14861 (MBK)
Caption of Order:     Final Order (I) Authorizing the Debtors to Assume and Perform Under the
                      Consulting Agreement, (II) Authorizing and Approving the Sale of Closing
                      Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims,
                      and Encumbrances, and (III) Granting Related Relief

Bankruptcy Code. Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

vi.   If, at any time, a dispute arises between the Debtors and/or the Consultants, on the one hand, and a Governmental Unit, on the other hand, as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

35.    Subject to paragraphs [33] and [34] above, each and every federal, state, or local agency, department, or Governmental Unit with regulatory authority over the Location Closings or the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors nor the Consultants be required to post any bond, to conduct the Sales.

36.    Provided that the Location Closings and the Sales are conducted in accordance with the terms of this Final Order and the Sale Guidelines (as may be modified by Side Letters), and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultants shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Location Closings and the Sales in accordance with the terms of this Final Order, the Sale Guidelines (as may be modified by Side Letters), and the Consulting Agreement without the necessity of further showing compliance with any such Liquidation Sale Laws.

(Page | 26)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

37.    Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

## VI.    Other Provisions.

38.    Reserved.

39.    Reserved.

40.    From time to time, or at any time, the Debtors, the Senior Credit Facility Agent, the DIP Agent, and the Consultants may mutually agree, each in their sole discretion, in writing, that the Consultants may, at the Consultants' sole cost and expense, supplement the Inventory in the Designated Closing Locations with Additional Consultant Goods, and such parties may agree to provide for payment mechanics for such goods at such time(s).

41.    The Consultants shall act solely as independent consultants to the Debtors and shall not be liable for any claims against the Debtors other than as expressly provided in the Consulting Agreement (including the Consultants' indemnity obligations thereunder) or the Sale Guidelines,

(Page | 27)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

with the exception of acts of gross negligence, fraud, willful misconduct, or breach of the Consulting Agreement and, for greater certainty, the Consultants shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor within the meaning of any legislation governing employment or labor standards or pension benefits or health and safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

42. To the extent the Debtors are subject to any Fast Pay Laws in connection with the Location Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

43. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, except as such relates to the payment of amounts due to the Consultants under the Consulting Agreement, in which case the terms of this Final Order shall prevail, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) an authorization to assume any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code (other than the Consulting Agreement); (f) a waiver or limitation of the Debtors',

(Page | 28)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or

(g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion or this Final Order are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, other than with respect to amounts payable to the Consultants pursuant to the Consulting Agreement, which are governed by the terms of this Final Order and the reconciliation procedures in the Consulting Agreement.

44.    Reserved.

45.    On a confidential basis and upon the written (including by email) request of the U.S. Trustee (which request has been made), the Committee (which request has been made), or the Senior Credit Facility Agent and the DIP Agent, the Debtors shall provide copies of periodic reports on a weekly basis concerning the Sales and Location Closings that are prepared by the Debtors or their professionals; *provided, however*, that the foregoing shall not require the Debtors or their professionals to prepare or undertake to prepare any additional or new reports other than (a) the weekly Sales and Location Closing reports, and (b) any reporting prepared or undertaken by the Consultants pursuant to the Consulting Agreement, which reporting shall include weekly reporting to the advisors to the DIP Agent (on a professional-eyes-only basis) and the advisors to the Committee (on a professional-eyes-only basis), including for each applicable weekly reporting period and the cumulative period commencing from the Agreement Effective Date (as

(Page | 29)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

defined in the Consulting Agreement), (i) a summary of Sales under this Final Order, (ii) the gross and net proceeds of such Sales on an aggregate basis and attributable to each category of asset sold (i.e., Inventory and FF&E), and (iii) the total amount of fees paid and expenses reimbursed by the Debtors to the Consultants attributable to each category of asset sold.   Within thirty (30) calendar days after the date of completion of all Location Closings and Sales, the Debtors shall file a summary report that sets forth:  (a) a list of all Location Closings; (b) the Debtors' gross revenue from all Sales; and (c) the total fees paid and expenses reimbursed to the Consultants under the Consulting Agreement.

46.    Notwithstanding anything to the contrary in this Final Order or any other order of the Court, the Debtors are authorized, but not directed, to permit any state lottery authority or other owner of Lottery Property (as defined below), or any of their respective designees, to enter any Closing Location or other premises of the Debtors to retrieve, remove, or otherwise take possession of any lottery-related equipment, terminals, signage, tickets, or other similar property that is not owned by the Debtors (collectively, the "Lottery Property"), and to return to the applicable state lottery authority any proceeds of lottery ticket sales or other lottery-related funds held by the Debtors for the benefit of such state lottery authority, in accordance with applicable law and the Debtors' prepetition and postpetition ordinary course practices.  Any such retrieval, removal, or return of Lottery Property or lottery proceeds that occurred prior to the entry of this Final Order is hereby authorized and shall be deemed to not have violated the automatic stay under section 362 of the Bankruptcy Code, and the automatic stay is hereby modified solely to the extent necessary to permit the actions described in this paragraph (both prior to and following entry of this Final

(Page | 30)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

Order).  The Debtors will cooperate in good faith with the state lottery authorities and owners of Lottery Property to facilitate the retrieval, removal, or return of Lottery Property and lottery proceeds; *provided that* on and after the effective date of the rejection of the lease at any applicable location, the state lottery authorities and owners of Lottery Property will coordinate with the applicable landlord to facilitate the retrieval, removal, or return of Lottery Property and lottery proceeds.  Nothing in this Final Order or any other order of the Court shall be deemed to alter or impair the rights of any state lottery authority or other owner of Lottery Property under applicable non-bankruptcy law with respect to the Lottery Property or lottery proceeds, nor shall it impose any obligation on the Debtors to continue to sell lottery tickets or otherwise participate in any state law lottery program, either prior to or following the conclusion of store closing sales at any location.

47.     The Debtors are authorized to abandon the modems, ACA equipment (an electronic device used in the provision of voice over internet phone services), and any other equipment provided to the Debtors by Comcast Cable Communications Management, LLC and its affiliates or authorized contractors (the "Comcast Equipment").  The landlords for the Debtors' leased premises are authorized to dispose of any Comcast Equipment abandoned by the Debtors.

48.     Notwithstanding anything to the contrary in this Final Order, in conducting the Location Closings, the Debtors shall comply with that certain Supply Agreement, dated February 24, 2022, as amended by that certain First Amendment to Supply Agreement, and as further amended by that certain *Stipulation and Agreed Order Resolving Claims and Cure Objection Filed by American Greetings Corp. and Papyrus-Recycled Greetings, Inc.* [Case No. 23-18993,

(Page | 31)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

Docket No. 4501] (collectively, the "AG SBT Agreement"), by and among Rite Aid Hdqtrs. Corp.,

the Bartell Drug Company, American Greetings Corporation ("AGC") and Papyrus Recycled

Greetings, Inc. ("PRG" and, together with AGC, "American Greetings"), and the Scan-Based

Trading Terms attached as Attachment 3 thereto and incorporated therein (the "SBT Terms"), in

all respects, including, without limitation, by: (a) selling, and not returning to American Greetings,

the products in the Debtors' possession that were or are hereafter supplied by American Greetings

(collectively, the "AG Products") for sale at such Closing Location in accordance with the AG

SBT Agreement until such time as the Location Closing of each Closing Location is completed;

(b) conducting all sales of the AG Products through the Debtors' point of sale system and paying

American Greetings' portion of the proceeds of such sales (the "AG Sale Proceeds") to American

Greetings consistent with the SBT Terms; and (c) disposing at retail, and not returning to American

Greetings, all AG Products remaining in the Debtors' possession upon final closure of a Closing

Location.  American Greetings reserves the right to retake possession of any AG Products at any

time for any reason upon reasonable notice in accordance with the terms of the AG SBT Agreement

and the automatic stay is lifted solely to the extent necessary to permit American Greetings to

exercise such right in accordance with the AG SBT Agreement.  The Debtors are hereby authorized

and directed to continue to remit the AG Sale Proceeds to American Greetings pursuant to the

terms of the AG SBT Agreement; provided that nothing herein shall be deemed to constitute any

assumption by the Debtors of the AG SBT Agreement, with the Debtors and American Greetings

reserving all of their rights with respect thereto under 11 U.S.C. § 365.

(Page | 32)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

49.     Nothing in this Final Order or the Sale Guidelines shall affect or otherwise limit or relieve the Debtors from their obligations with respect to (a) that certain Western Union North America Agency Agreement (the "Agency Agreement") between certain of the Debtor parties and Western Union Financial Services, Inc. ("Western Union"), and (b) Western Union's property described under the Agency Agreement, including, but to not limited to, the Equipment (as defined in the Agency Agreement); provided that the Debtors shall dispose of or return Western Union's property and Equipment in a manner as is mutually agreed to between the Debtors and Western Union in writing with email being sufficient.  Western Union's right to assert an administrative expense claim to the extent the Debtors sell, abandon, or otherwise misplace Western Union's property being held or controlled by the Debtors pursuant to the Agency Agreement, including the Equipment, or Western Union is otherwise damaged by the Debtors' breach of its obligations to return or destroy Equipment in accordance with the Agency Agreement, is preserved and reserved. Furthermore, nothing in this Final Order shall alter the parties' rights and obligations under the Agency Agreement and the Bankruptcy Code.

50.     Notwithstanding anything to the contrary in the Interim Order, this Final Order, the Store Guidelines, the Consulting Agreement, or any notice or document related to the forgoing nothing shall alter or modify the terms and conditions of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand).

51.     Notwithstanding anything to the contrary in the Interim Order, this Final Order, the Sale Guidelines, the Consulting Agreement, or any notice or document related to the forgoing

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

nothing shall alter or modify the terms and conditions of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand.

52.    The Consulting Agreement does not modify any existing insurance coverage obligations of the Debtors under any unexpired lease of non-residential real property or applicable nonbankruptcy law.

53.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

54.    Notwithstanding any Bankruptcy Rule to the contrary, this Final Order shall be effective and enforceable immediately upon entry hereof.

55.    Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

56.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

57.    Any party may move for modification of this Final Order in accordance with Local Rule 9013-5(e).

58.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order, including, but not limited to: (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict, or in any way limit banner and sign-walker advertising, including with respect to any

(Page | 34)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief |

allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner; (b) any claim of the Debtors, the Consultants, and/or the landlords for protection from interference with the Location Closings or Sales; (c) any other disputes related to the Location Closings or Sales; and (d) any disputes related to any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action in respect of the Debtors, the Consultants, the landlords, the Location Closings, or the Sales until this Court has resolved such dispute. This Court shall hear the requests of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

## Schedule 1

**Consulting Agreement**

   

April 3, 2025

Steven Bixler
Chief Financial Officer
New Rite Aid, LLC
200 Newberry Commons
Etters, PA 17319

Re:  Consulting Engagement/Agreement

Dear Mr. Bixler:

    This consulting agreement (together with all exhibits hereto, this "Agreement") confirms the understanding and agreement (a) among SB360 Capital Partners, LLC ("SB360") and Hilco Merchant Resources, LLC ("Hilco," and, together with SB360, the "Consultants"), on the one hand, and New Rite Aid, LLC (on behalf of itself and its wholly-owned direct and indirect subsidiaries) (collectively, the "Merchant"), on the other hand, and (b) regarding the Merchant's engagement of the Consultants as the exclusive providers of certain consulting services, on the terms and conditions set forth in this Agreement (the "Consulting Engagement").  Capitalized terms used in this Agreement have the meanings ascribed to them in this Agreement.  This Agreement refers to the Merchant, SB360, and Hilco each, as a "Party" and collectively, as the "Parties."

    In accordance with the contractual joint venture between the Consultants, (a) principals of SB360 will lead the Consulting Engagement and (b) principals of each of the Consultants will collaborate to provide all services necessary for the Consulting Engagement, with the assistance of additional personnel of the Consultants possessing the requisite skills and experience necessary to achieve the objectives of the Consulting Engagement in the most expeditious and effective manner.  For the avoidance of doubt, the Merchant will have full decision-making authority with respect to all matters within the scope of this Agreement.

1.    **Certain Defined Terms.**

    (a)    "Additional Consultant Goods" shall have the meaning set forth in Section 2(g) of this Agreement.

    (b)    "Additional Consultant Goods Proceeds" shall have the meaning set forth in Section 2(g) of this Agreement.

    (c)    "Advertising Materials" shall have the meaning set forth in Section 7(d).

    (d)    "Agreement Effective Date" means April 3, 2025.

(e)   "Approval Order" shall have the meaning set forth in Section 7(c) of this Agreement.

(f)   "Bankruptcy Code" shall have the meaning set forth in Section 7(c) of this Agreement.

(g)   "Bankruptcy Court" shall have the meaning set forth in Section 7(c) of this Agreement.

(h)   "Base Inventory Fee" shall have the meaning set forth in Section 2(d)(i) of this Agreement.

(i)   "Consultant Controlled Expenses" shall have the meaning set forth in Section 2(d) of this Agreement.

(j)   "Consultant Expense Advance" shall have the meaning set forth in Section 7(b) of this Agreement.

(k)   "Cost Value" means, with respect to each item of Inventory sold during the Sale Term, the lowest per unit vendor cost for such item of Inventory in the Merchant's Cost File or in the Merchant's books and records, maintained in the ordinary course consistent with the Merchant's historic practices.

(l)   "Designated Closing Locations" means any Merchant-owned retail store or distribution center locations that are designated in writing for closure by the Merchant pursuant to Section 7(a)(i) of this Agreement.

(m)   "Expenses" means the Consultant Controlled Expenses and any other expenses to be reimbursed by the Merchant to the Consultants pursuant to the terms of this Agreement.

(n)   "Fees" means, collectively, the Merchandising Services Compensation, the Base Inventory Fee, the Incentive Fee (if any), and the FF&E Fee (each as defined herein).

(o)   "FF&E" means all furniture, fixtures, and equipment owned by the Merchant.

(p)   "FF&E Fee" shall have the meaning set forth in Section 2(e)(ii) of this Agreement.

(q)   "Gross Proceeds" shall have the meaning set forth in Section 2(d)(ii) of this Agreement.

(r)   "Gross Recovery Percentage" means the result, expressed as a percentage, of (i) the Gross Proceeds, *divided* by (ii) the sum of the aggregate Cost Value of all of the Inventory sold during the Sale Term at the Designated Closing Locations.

(s)   "Incentive Fee" shall have the meaning set forth in Section 2(d)(i) of this Agreement.

2

(t)  "<u>Inventory</u>" means, as to any Designated Closing Location, all Merchant-owned inventory of such location, excluding any (i) Pharmacy Assets, (ii) Saleable Non-Merchandise, (iii) No Fee Goods, and (iv) Additional Consultant Goods.

(u)  "<u>Inventory Disposition Services</u>" means the services described in <u>Section 2(c)</u> of this Agreement.

(v)  "<u>Legal Fee Advance</u>" shall have the meaning set forth in Section 7(b) of this Agreement.

(w)  "<u>Merchandising Services</u>" means the services described in <u>Section 2(a)</u> of this Agreement.

(x)  "<u>Merchandising Services Compensation</u>" shall have the meaning set forth in <u>Section 2(b)</u> of this Agreement.

(y)  "<u>Merchant's Cost File</u>" means, with respect to each Tranche of Designated Closing Locations, a document prepared by the Merchant setting forth the per unit vendor cost for each applicable item of Inventory to be sold during the applicable Sale Term, which shall be delivered to the Consultants by no later than the Sale Commencement Date applicable to such Tranche of Designated Closing Locations.

(z)  "<u>Merchant's Lease</u>" means any unexpired lease agreement pursuant to which Merchant occupies or uses a retail store or distribution center premises.

(aa) "<u>No Fee Goods</u>" shall have the meaning set forth in <u>Section 2(c)(ii)</u> of this Agreement.

(bb) "<u>Pharmacy Assets</u>" means, as to any Merchant-operated retail store, the following Merchant-owned assets of such retail store: (i) all pharmacy inventory that is dispensed as a prescription behind the pharmacy counter and (ii) any prescription files and all related records.

(cc) "<u>Sale</u>" means the sale of (i) Inventory, Saleable Non-Merchandise, and FF&E at any Designated Closing Locations, and (ii) to the extent any Additional Consultant Goods are sold at any Designated Closing Locations, sales of such Additional Consultant Goods.

(dd) "<u>Sale Advance</u>" shall have the meaning set forth in <u>Section 7(b)</u> of this Agreement.

(ee) "<u>Sale Assets</u>" means the Inventory, Saleable Non-Merchandise, FF&E, and Additional Consultant Goods.

(ff) "<u>Sale Commencement Date</u>" means, as to each Designated Closing Location, the fourteenth (14th) day after the Consultants' receipt of the Merchant's written designation of such location as a "Designated Closing Location", or such earlier date as the Consultants and the Merchant may otherwise agree.

3

(gg)  "Sale Guidelines" means the sale guidelines attached hereto as Exhibit A, which shall govern the conduct of any Sale.

(hh)  "Sale Term" means, as to each Designated Closing Location, the period between the applicable Sale Commencement Date and the applicable Sale Termination Date.

(ii)  "Sale Termination Date" means, as to each Designated Closing Location, such date as is mutually agreed upon by the Merchant and the Consultants (with the consent of the Senior Credit Facility Agent).

(jj)  "Saleable Non-Merchandise" means the merchandise set forth in Exhibit B attached to this Agreement.

(kk)  "Senior Credit Facility" means the credit facilities made available to the Merchant pursuant to that certain Credit Agreement, dated as of August 30, 2024, among (i) Rite Aid Corporation, as borrower, (ii) the Lenders (as defined therein) from time to time party thereto, (iii) Bank of America, N.A., in its capacity as administrative agent and collateral agent for the Lenders and the other Secured Parties (each as defined therein), and (iv) the other agents party thereto, as the same may be amended, amended and restated, restated, restructured, supplemented or otherwise modified from time to time, and including as the same may be refinanced or replaced, in whole or in part, pursuant to any debtor-in-possession financing provided by the Senior Credit Facility Agent and/or one or more of the Lenders.

(ll)  "Senior Credit Facility Agent" means Bank of America, N.A., in its capacity as administrative agent and collateral agent under the Senior Credit Facility.

(mm)  "Services" means the services described in Section 2 of this Agreement.

(nn)  "Signage Advance" shall have the meaning set forth in Section 7(b) of this Agreement.

(oo)  "Supervisor" means a qualified supervisor engaged by the Consultants to provide Inventory Disposition Services pursuant to this Agreement.

(pp)  "Tranche of Designated Closing Locations" shall have the meaning set forth in Section 2(f)(i) of this Agreement.

## 2.  Scope of Consulting Engagement.

(a)  Merchandising Services.  The Consultants shall provide the Merchant with the following services (collectively, the "Merchandising Services") with respect to all of the Merchant's retail store locations, subject to final Merchant approval and full Merchant discretion (in consultation with the Senior Credit Facility Agent):

(i)  advance planning for any additional location closings, including by conducting operational preparation and assessing initial discount cadence,

4

marketing creative, system implementation, and personnel and budget requirements;

(ii)   prepare a monetization model for store closings which can be modified by the inclusion or deletion of retail store locations and compare that model with the results of closures of retail store locations which were completed prior to the Agreement Effective Date to project the differential monetary recovery;

(iii)  analyze any sale offers and their impact to collateral value;

(iv)   coordinate weekly financial reporting package for the Merchant, its advisors, the Senior Credit Facility Agent, and other constituents;

(v)    conduct weekly update calls with Merchant's management and advisors, the Senior Credit Facility Agent, and other applicable constituents;

(vi)   assist the Merchant with marketing initiatives for relocating customers to nearby store locations;

(vii)  make recommendations to sell through merchandise to mitigate transfer of back-end merchandise;

(viii) make marketing recommendations, which are subject to the Merchant's approval, to increase sell through and reoccurring traffic for prescription refills;

(ix)   maintain the confidentiality of all proprietary or non-public information regarding the Merchant or the Designated Closing Locations of which the Consultants or their respective representatives become aware, except for information that is public as of the Agreement Effective Date or which becomes public through no fault of any Consultant or any of their respective representatives;

(x)    review the Merchant's open orders and availability under its open-to-buy and supply planning and make merchandising planning recommendations to the Merchant; and

(xi)   such other services as are approved by the Merchant in writing and agreed to by the Consultants.

(b)    <u>Compensation for Merchandising Services</u>.  The Consultants shall provide the Merchandising Services during the period between the Agreement Effective Date and the earlier of (i) the date that is four (4) months after the Agreement Effective Date unless extended by mutual agreement of the Merchant and the Consultants, or (ii) the date that the Merchant designates all of its remaining retail store and distribution center locations as Designated Closing Locations.  For each month that the Consultants are providing Merchandising Services, the Merchant shall (x) pay

5

to the Consultants a monthly fee of $25,000 for the performance of the Merchandising Services and (y) reimburse the Consultants for their reasonable and documented out-of-pocket expenses, provided that such expenses (i) are approved by the Merchant, (ii) are incurred in connection with providing the Merchandising Services, and (iii) do not exceed the amounts set forth in any applicable Budget (as defined herein) (clauses (x) and (y) together, the "Merchandising Services Compensation"), in each case, subject to Section 7 of this Agreement.  The Consultants shall provide the Merchant with invoices for the Merchandising Services Compensation on a monthly basis, and each such invoice shall be due and payable no later than five (5) business days following the Merchant's receipt of such invoice pursuant to Section 3(a) of this Agreement.  In the event the term through which the Consultants provide the Merchandising Services includes a partial month of service, the monthly fee for Merchandising Services shall be pro-rated accordingly.

(c)    Inventory Disposition Services.  Subject to Section 2(f) of this Agreement, with respect to all sales at the Designated Closing Locations, the Consultants shall provide the Merchant with the following services (collectively, the "Inventory Disposition Services"):

(i)    oversee the monetization and disposal of the Sale Assets from the Designated Closing Locations and coordinate with Merchant to maximize the realized value of the Sale Assets, including but not limited to providing Supervisors and where necessary subcontractors;

(ii)    recommend and implement appropriate point of purchase, point of sale and external advertising (including signage) to effectively sell the Inventory during the Sale, consistent with the sale themes to be approved by the Merchant (in consultation with the Senior Credit Facility Agent), the Sale Guidelines, and any Approval Order; provided however, that, unless otherwise directed by the Merchant, the goods identified in the Merchant's Cost File as "non-merchandise" that do not otherwise constitute Saleable Non-Merchandise located in the Designated Closing Locations (the "No Fee Goods") may be sold during the Sale, without discount and the Merchant shall retain all proceeds attributable to such sales and no fee shall be payable to the Consultants with respect thereto;

(iii)    maximize the proceeds of the Inventory while protecting and promoting the Merchant's trade name and goodwill in the marketplace; provided, however, that the Merchant shall advise and work with the Consultants in connection with compliance with applicable state and local health and safety laws and regulations governing the sale and disposal of tobacco and alcohol products; provided, however that the implementation and execution of the disposal of any unsold tobacco and/or alcohol inventory at the conclusion of the Sale at each of the Designated Closing Locations in accordance with applicable health and safety state and local laws shall be the obligation and expense of the Merchant;

12617011v5

(iv) coordinate with the Merchant regarding an advertising and signage program to direct customers to the Merchant's e-commerce platform and go-forward locations (if any); provided, however, that in the event of a full-chain liquidation, the Consultants shall, with the consent of the Merchant and the Senior Credit Facility Agent, have the right to use the Merchant's e-commerce platform solely to promote the Sale at the Designated Closing Locations;

(v) coordinate accounting functions, including evaluation of Sales of Inventory by category, Sales reporting, and monitoring of the Sale expenses using the Merchant's IT systems, daily reporting to the Merchant of Sales and weekly reporting and reconciliation of Sale proceeds and Sale expenses;

(vi) recommend appropriate staffing levels for Designated Closing Locations (including store employees) and appropriate bonus and incentive programs for store employees;

(vii) maintain the confidentiality of all proprietary or non-public information regarding the Merchant and the Designated Closing Locations of which Consultants or their respective representatives become aware, except for information that is public as of the Agreement Effective Date or becomes public through no fault of any Consultant or either of their respective representatives;

(viii) develop a Sales plan to communicate to the Senior Credit Facility Agent and other constituents and report budget to actuals on a weekly basis; and

(ix) conduct weekly update calls with the Merchant's management and advisors, the Senior Credit Facility Agent, and other applicable constituents.

(d) <u>Compensation for Inventory Disposition Services</u>.

(i) As compensation for providing the Inventory Disposition Services, the Consultants shall receive a commission equal to the sum of (A) two percent (2.00%) of Gross Proceeds from the Sale of Inventory at each Designated Closing Location, plus (B) one-half of one percent (0.50%) of the Gross Proceeds from the sale of Saleable Non-Merchandise (collectively, the "<u>Base Inventory Fee</u>"), which shall be paid in accordance with <u>Section 3</u> of this Agreement. In addition to the Base Inventory Fee, for each Tranche of Designated Closing Locations, to the extent that the aggregate amount of Gross Proceeds from the Sale of Inventory at each such Tranche of Designated Closing Locations exceeds a stipulated initial threshold (agreed to by the Merchant and the Consultants prior to the commencement of the Sales at such Tranche of Designated Closing Locations), then in addition to receiving the Base Inventory Fee attributable to the applicable Sales at such Tranche of Designated Closing Locations, the Consultants shall be entitled to an additional incentive fee (the "<u>Incentive Fee</u>") in an amount equal to

7

thirty-five one-hundredths of one percent (0.35%) of Gross Proceeds from the Sale of Inventory and Saleable Non-Merchandise at such Tranche of Designated Closing Locations.

(ii)     As used herein, "Gross Proceeds" means the aggregate of (A) the total amount (in dollars) of all Sales of Inventory and, without duplication, Saleable Non-Merchandise at the applicable Designated Closing Location(s), in each case, during the Sale Term for such Designated Closing Location(s) and exclusive of sales taxes (but inclusive of any amounts credited against the listed sale price of such Inventory that are attributable to gift cards, coupons, and/or customer rewards honored in connection with the sale of such Inventory) and (B) all proceeds of the Merchant's insurance for loss of or damage to Inventory at each applicable Designated Closing Location arising from events occurring during the Sale Term relating to such Inventory.

(iii)    The Consultants and the Merchant shall agree on a pro forma budget of Consultant Controlled Expenses relating to each Tranche of Designated Closing Locations that are designated to be closed (each a "Budget"), which Budget shall be satisfactory to the Senior Credit Facility Agent.  Merchant shall be responsible for the reimbursement of the Consultant Controlled Expenses to the Consultants, in an amount not to exceed the amount set forth in the applicable Budget, which amount shall be paid in accordance with Section 3 of this Agreement.

(A)     As used herein, "Consultant Controlled Expenses" means, as set forth in the Budget, the aggregate amount of (I) Supervisor Costs (as defined herein), (II) advertising expenses and (III) the Consultants' reasonable and documented legal fees and expenses (limited to one external counsel and one local counsel for all Consultants) incurred in connection with (x) preparing this Agreement and obtaining an Approval Order, (y) negotiating any "side letters" with the landlords of the applicable Designated Closing Locations, or (z) enforcing the terms of this Agreement.  For the avoidance of doubt, any expenses related or allocable to the sale of Additional Consultant Goods shall not constitute Consultant Controlled Expenses.

(B)     As used herein, "Supervisor Costs" means the following customary costs and expenses incurred by Consultants with respect to Supervisors, in each case, in accordance with the Budget:  (I) the weekly compensation paid during the applicable Sale Term per Supervisor (which in each case represents the Consultants' actual costs); (II) reasonable and documented travel expenses of the Supervisors between Designated Closing Locations during the applicable Sale Term and to and from such Designated Closing Locations at the commencement and conclusion of the corresponding Sale (including reasonable travel to and from the

8

Supervisors' homes at such times); and (III) Supervisor deferred compensation as provided in the Budget.

(e)    Disposition of FF&E.

(i)    Subject to final Merchant approval, the Consultants shall sell FF&E located at the applicable Designated Closing Locations during the applicable Sale Term (which Sale Term, as it relates to any distribution center that is a Designated Closing Location, shall factor in a reasonable time period for the disposition of the FF&E located in such distribution centers). The Consultants shall provide supervision and shall procure other goods and services as may be necessary to sell such FF&E within and subject to a budget to be approved by the Merchant (with budgeted expenses to be funded with the proceeds received from such FF&E sales). The Consultants will conduct all such FF&E sales in a manner designed to maximize the return to the Merchant, including where appropriate retaining subcontractors to assist in the sale of the FF&E.

(ii)    In consideration of such services, the Consultants shall be paid a fee equal to fifteen percent (15.00%) of the proceeds (net of sales taxes) received from sales of FF&E located at the applicable Designated Closing Locations during the applicable Sale Term ("FF&E Fee"), which fee shall be paid from the proceeds of such sales in accordance with Sections 3(a) and 3(b) of this Agreement.

(f)    Additional Provisions Relating to Inventory Disposition Services.

(i)    The provision of Inventory Disposition Services in respect of any Designated Closing Locations shall be determined upon the written designation by the Merchant (after consultation with the Senior Credit Facility Agent); provided however, that such designation may be made by Merchant (after consultation with the Senior Credit Facility Agent) on a rolling basis, in multiple weekly tranches (each grouping of designated stores for closure, a "Tranche of Designated Closing Locations").

(ii)    The Consultants shall not provide any Inventory Disposition Services with respect to any retail store or distribution center location of the Merchant, unless such location is a Designated Closing Location. Nothing in this Agreement requires the Merchant to designate a retail store or distribution center location for closure, but to the extent that any retail store or distribution center location is designated for closure, it shall constitute a Designated Closing Location and such closure shall be governed by this Agreement (and any Approval Order that may be entered).

(iii)    During the Sale Term for any Designated Closing Location, the Consultants shall have no obligation with respect to the operation of any pharmacy departments located within such Designated Closing Location

9

(the "Pharmacy Departments"), or with respect to any Pharmacy Assets located in such Designated Closing Location; provided however, that during the Sale Term for each Designated Closing Location, the Merchant may continue to operate the Pharmacy Departments located therein for its own account; provided, further, that, to the extent that the disposition of any Sale Assets are processed through the point-of-sale systems located within the Pharmacy Departments, such disposition of Sale Assets shall be deemed to be included in the Sale and shall be entitled to any Fees and Expenses and, in the case of the disposition of any Addition Consultant Goods, the Consultants shall be entitled to the identifiable proceeds thereof in accordance with this Agreement.

(iv)    During the Sale Term for any Designated Closing Location, unless otherwise directed in writing by the Merchant, the Sale of the Sale Assets shall be "as is" and "final." Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Designated Closing Locations.

(v)     During the Sale Term for any Designated Closing Location, the Consultants shall accept gift cards, gift certificates and/or coupons, and shall honor returns of merchandise sold by the Merchant prior to the applicable Sale Commencement Date at such Designated Closing Location, until such date as (A) the Merchant (with the consent of the Senior Credit Facility Agent) otherwise directs the Consultants in writing to cease accepting such payment methods or honoring such returns, or (B) may be provided in any Approval Order or other order of the Bankruptcy Court.

(g)    Additional Consultant Goods.

(i)     Subject to the Merchant's and the Senior Credit Facility Agent's prior written approval, the Consultants may, at the Consultants' sole cost and expense, supplement the Inventory in the Designated Closing Locations with additional goods procured by the Consultants which are of like kind and no lesser quality to the Inventory in the Designated Closing Locations (such additional goods, "Additional Consultant Goods"). The Additional Consultant Goods shall be purchased by the Consultants and delivered to the Designated Closing Locations at the Consultants' sole cost and expense (including as to labor, freight and insurance related to shipping such Additional Consultant Goods to the Designated Closing Locations). The sale of Additional Consultant Goods shall be processed through the Merchant's point-of-sale systems; provided, however, that the Consultants shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Inventory. The Consultants and the Merchant shall also cooperate so as to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods as non-Merchant

goods.  The Consultants shall provide signage in the Designated Closing Locations notifying customers that the Additional Consultant Goods have been included in the Designated Closing Locations.

(ii)    The Merchant shall retain an amount equal to seven percent (7.00%) percent of the gross proceeds (excluding sales taxes) from the Sale of the Additional Consultant Goods (the "Additional Consultant Goods Fee"). The remaining ninety three percent (93%) of such gross proceeds from the Sale of the Additional Consultant Goods shall be remitted by the Merchant to the Consultants, in accordance with Sections 3(a) and 3(b) of this Agreement.

(iii)   The Consultants and the Merchant intend that any transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from the Consultants to the Merchant in all respects and not a consignment for security purposes.  Subject solely to the Consultants' obligations to pay to the Merchant the Additional Consultant Goods Fee, at all times and for all purposes, the Additional Consultant Goods and their identifiable proceeds shall be the exclusive property of the Consultants, and no other person or entity shall have any claim against any of the Additional Consultant Goods or the identifiable proceeds of the Additional Consultant Goods. The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultants.  Furthermore, the Parties and the Senior Credit Facility Agent agree that, regardless of which Designated Closing Location receives and/or sells the Additional Consultant Goods, all such Additional Consultant Goods are to be delivered on a true consignment basis, to and sold by (or on behalf of) New Rite Aid, LLC (and such other of its affiliates as may be agreed in writing by the Consultants and the Merchant (in consultation with the Secured Credit Facility Agent)), who shall be deemed the consignee in all such consignments, with the Consultants constituting the consignors in all such consignments. It is further understood and agreed by the Senior Credit Facility Agent that the amount of Additional Consignment Goods Proceeds received by the Senior Credit Facility Agent shall be remitted to the Consultants (which amounts may be remitted through the Merchant) as and when required by the terms of this Agreement.

(iv)    The Merchant shall, at the Consultants' sole cost and expense, insure the Additional Consultant Goods and, if required, promptly file any proof of loss with regard to any Additional Consultant Goods with the Merchant's insurers.  The Consultants shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

(v)     The Merchant acknowledges, and the Approval Order shall provide, that the Additional Consultant Goods shall be consigned to the Merchant as a true consignment to New Rite Aid, LLC (and/or such other of its affiliates as

12617011v5

mutually agreed by the Consultants and the Merchant (in consultation with the Secured Credit Facility Agent) under Article 9 of the Uniform Commercial Code. The Consultants are hereby granted a first-priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the identifiable proceeds of the Additional Consultant Goods, *less* the Additional Consultant Goods Fee (the "Additional Consultant Goods Proceeds"). The Consultants are hereby authorized to file all necessary financing statements and amendments thereof under the applicable Uniform Commercial Code (each, a "UCC Filing") and to deliver all required notices to secured creditors (each, a "Consignment Notice"), identifying (A) the Consultants' interest in the Additional Consultant Goods as consigned goods and the Merchant as the consignee with respect to such consigned goods and (B) the Consultants' security interest in and lien upon such Additional Consultant Goods and the identifiable proceeds thereof. The Consultants' security interest and lien shall be deemed perfected on the earlier of (x) the Consultants' filing of the required UCC Filings and delivery of the Consignment Notices or (y) entry of the Approval Order (in which case the Consultants' security interest and lien shall be deemed perfected without the need to make a UCC Filing or to deliver a Consignment Notice).

(vi)    Promptly following the Sale Termination Date, the Consultants shall remove any remaining Additional Consultant Goods (if any) from the applicable Designated Closing Location.

3.    **Accounting & Payment Matters.**

(a)    Weekly Reconciliations. The Merchant shall collect all proceeds from the Sale of Sale Assets. The Merchant shall, upon request, deliver to the Consultants account statements and such other information relating to the Sales as reasonably requested by the Consultants. On Wednesday of each week, commencing on the first Wednesday following the commencement of the applicable Sale Term, the Merchant and the Consultants shall reconcile the results of the applicable sales of the Sale Assets for the prior week, including, without limitation, the Fees and Expenses (the "Weekly Reconciliation"), and the Merchant shall pay all amounts due to the Consultants pursuant to this Agreement for such prior week no later than seven (7) business days after completion of such Weekly Reconciliation.

(b)    Final Reconciliation. The Parties shall complete a final reconciliation of the sale of the Sale Assets no later than forty-five (45) calendar days following the end of the applicable Sale Term (the "Final Reconciliation"). The Parties shall cooperate in good faith to resolve any disputes with regard to such Final Reconciliation. Upon completion of the Final Reconciliation, the Parties shall pay or be paid all undisputed amounts payable to them no later than seven (7) business days after completion of the Final Reconciliation.

12617011v5

(c)     Bankruptcy Court Authorization for Payment.  Notwithstanding anything herein to
the contrary, if the Merchant commences proceedings under chapter 11 of the
Bankruptcy Code, then the Merchant shall not pay nor reimburse any amounts to
the Consultants under this Agreement, unless and until the Bankruptcy Court enters
the Approval Order.

4.     **Insurance.**

(a)     Merchant Insurance.  Throughout the Sale Term, the Merchant shall maintain
casualty and liability insurance policies covering injuries to persons and property
at or in connection with the applicable Designated Closing Locations (including,
but not limited to, products liability/completed operations, contractual liability,
comprehensive public liability, and auto liability insurance) on an occurrence basis
in an amount of at least $1,000,000 per occurrence and $2,000,000 in the aggregate
and umbrella coverage of at least $5,000,000.  The Merchant shall cause the
Consultants to be named as additional insureds with respect to all such policies.
Additionally, throughout the Sale Term, the Merchant shall maintain, in such
amounts as it currently has in effect, workers' compensation insurance in
compliance with all applicable statutory requirements.  No later than the date that
the Approval Order is entered, the Merchant shall provide the Consultants with a
certificate or certificates evidencing the insurance coverage required hereunder.

(b)     Consultants Insurance.  Throughout the Sale Term, the Consultants shall maintain
(at the Consultants' expense) casualty and liability insurance policies covering
injuries to persons and property at or in connection with the Designated Closing
Locations (including, but not limited to, products liability/completed operations,
contractual liability, comprehensive public liability, and auto liability insurance) on
an occurrence basis in an amount of at least $1,000,000 per occurrence and
$2,000,000 in the aggregate and umbrella coverage of at least $5,000,000. The
Consultants shall name the Merchant as an additional insured and loss payee under
each such policy.  No later than the date that the Approval Order is entered, the
Consultants shall provide the Merchant with a certificate or certificates evidencing
the insurance coverage required hereunder.  Additionally, throughout the Sale
Term, the Consultants shall maintain workers' compensation insurance in
compliance with all applicable statutory requirements.  Further, if the Consultants
employ or engage third parties to perform any of the Consultants' undertakings with
regard to this Agreement, the Consultants will ensure that such third parties are
covered by the Consultants' insurance or maintain all of the same insurance as the
Consultants are required to maintain pursuant to this Section 4(b) and name the
Merchant as an additional insured and loss payee under each policy for such
insurance.

5.    **Representations & Warranties; Certain Covenants**

(a)    Each entity comprising the Merchant warrants, represents, covenants and agrees that (i) it is duly organized, validly existing and in good standing under the laws of its state of organization, and (ii)(A) it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder and (B) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of the Merchant and this Agreement constitutes a valid and binding obligation of the Merchant enforceable against the Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for the Merchant to fully perform all of its obligations herein.

(b)    The Merchant shall provide such services as are reasonably necessary or appropriate for the Sales.  Without limiting any other term or provision of this Agreement, during the Sale Term, the Merchant shall provide the Consultants with (i) employees at the applicable Designated Closing Locations as may be necessary or appropriate to implement and conduct the applicable of the Sale at such Designated Closing Locations, and (ii) peaceful use and occupancy of, and reasonable access (including reasonable before and after-hours access and normal utilities/phone service) to, such Designated Closing Locations.

(c)    The Merchant shall prepare and process all reporting forms, certificates, reports, and other documentation required under applicable law in connection with taxation of or relating to the Sale of the Sale Assets.  The Consultants shall provide all assistance reasonably required or requested by the Merchant in connection with the preparation and processing of any such reporting forms, certificates, reports, or other documentation.

(d)    Each Consultant warrants, represents, covenants and agrees that (i) such Consultant is duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the addresses set forth herein, and (ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of such Consultant and this Agreement constitutes a valid and binding obligation of such Consultant enforceable against such Consultant in accordance with its terms and conditions, and the consent of no other entity or person is required for such Consultant to fully perform all of its obligations herein.

6.    **Indemnification.**

(a)    <u>Consultant Indemnification</u>.  Each Consultant shall indemnify, defend, and hold the Merchant and its directors, officers, members, managers, partners, employees, attorneys, advisors, representatives, lenders, principals, and affiliates (other than such Consultant or its Consultant Indemnified Parties (as defined herein)) (collectively,    "<u>Merchant    Indemnified    Parties</u>")    harmless    from    and against all liabilities,    claims,    demands,    damages,    costs    and    expenses

14

(including reasonable attorneys' fees) arising from or related to (i) the willful or negligent acts or omissions of such Consultant or such Consultant Indemnified Parties; (ii) such Consultant's breach of any provision of, or the failure to perform any obligation under, this Agreement; (iii) any liability or other claims made by such Consultant Indemnified Parties or any other person (excluding the Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to such Consultant's conduct of the Sale or provision of Services, except claims arising from the Merchant's negligence, willful misconduct, or unlawful behavior; (iv) any harassment, discrimination, or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of any Merchant Indemnified Parties, or of the Merchant's customers, by such Consultant or any of such Consultant Indemnified Parties; (v) any claims made by any party engaged by such Consultant as an employee, agent, representative or independent contractor arising out of such Consulting Engagement; and (vi) sales of Additional Consultant Goods.

(b)     <u>Merchant Indemnification</u>.    The Merchant shall indemnify and hold each Consultant and its respective officers, directors, principals, shareholders, affiliates, members, consultants, advisors, and employees (collectively, "<u>Consultant Indemnified Parties</u>") harmless from and against all losses, liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (i) the negligence, intentional or unlawful acts or omissions of the Merchant or the Merchant's consultants, advisors, employees, representatives and principals (other than Consultant Indemnified Parties); (ii) the Merchant's breach of any provision of, or the failure to perform any obligation under this Agreement; (iii) the Merchant's failure to (A) timely pay any taxes required under applicable law to be paid by the Merchant in connection with the Services and/or Sales at Designated Closing Locations or (B) timely file with the requisite taxing authorities all related reports and other documents required by applicable law to be filed with or delivered to such taxing authorities; (iv) any harassment, discrimination, or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of either Consultant or the Consultant Indemnified Parties by the Merchant or any Merchant Indemnified Parties; and (v) any consumer warranty or products liability claims relating to any Merchant-owned assets sold pursuant to <u>Sections 2(c)</u> or <u>2(e)</u> of this Agreement.

**7.    Designation of Closing Locations, Expense Advance, Assumption of Agreement**

(a)     <u>Store Designations</u>.

(i)     Any time on or after the Agreement Effective Date, the Merchant may designate any Merchant-operated store or distribution center as a Designated Closing Location by providing the Consultants with fourteen (14) calendar days' prior written notice of such designation, with each grouping of designations being a Tranche of Designated Closing Locations. During such fourteen (14) calendar day notice period, the Merchant and the Consultant shall work together to: (A) prepare such newly designated

Tranche of Designated Closing Locations for closure; (B) agree upon an updated Budget to include such Tranche of Designated Closing Locations, including the number of additional Supervisors that may be needed and/or in the case of a distribution center being included as a Designated Closing Location, the costs of any subcontractors sourced by the Consultants to assist in the closure of such distribution centers; (C) order and pay for any additional Advertising Materials (above what has been previously purchased using the Signage Advance) that may be needed; provided, however, that the Consultants have advised that in the current environment printing of sign packages could take as long as four (4) weeks; and (D) agree upon a Gross Recovery Percentage threshold as contemplated by Section 2(d) of this Agreement.

(ii)     It is anticipated and agreed that once a Merchant-owned retail store or distribution center location becomes a Designated Closing Location in accordance with the terms of this Agreement, such Designated Closing Location shall not be subsequently removed from the Sale once the Sale has commenced at such Designated Closing Location; provided, however, to the extent the Merchant notifies the Consultants that a Designated Closing Location must be removed from the Sale (in the reasonable, good faith determination of the Merchant, including, in any event, because a buyer of any of the Merchant's assets relating to such Designated Closing Location wishes to purchase and continue operating the applicable retail store or distribution center location), such Designated Closing Location shall be removed from the Sale and the Parties (in consultation with the Senior Credit Facility Agent) shall negotiate in good faith reasonable adjustments to Fees and Expenses to account directly for the removal of any such Designated Closing Location from the Sale, including, to the extent the Consultants do not elect to reclaim such Additional Consultant Goods, payment to the Consultants for the cost of goods sold for any Additional Consultant Goods (if any) located in such removed Designated Closing Location (or, if less, the cost of moving such Additional Consultant Goods to another Designated Closing Location).

(b)     Sale Advance.  Within two (2) business days after the Merchant's designation of a Tranche of Designated Closing Locations, or such other date as the Merchant and the Consultants may mutually agree in writing, the Merchant and the Consultants (after consultation with the Senior Credit Facility Agent) shall mutually agree upon the amount of a sale advance to be remitted to an account designated by the Consultants, which amount shall serve as an advance deposit in respect of the following:  (i) an amount sufficient for the Consultants to pay for the Advertising Materials to be used in connection with the Sales at the Designated Closing Locations, or to the extent the Merchant elects, all of the Merchant's locations to take advantage of timing and volume discounts (the "Signage Advance"); (ii) an agreed upon amount as an advance payment towards the legal fees incurred and to be incurred by the Consultants in connection with negotiating, implementing, and obtaining Bankruptcy Court approval of this Agreement (the "Legal Fee

Advance"); and (iii), an agreed upon amount to secure the Merchant's obligation to reimburse the Consultants for the Consultant Controlled Expenses (the "Consultant Expense Advance" and, collectively with the Signage Advance and the Legal Fee Advance, the "Sale Advance"). The Consultant Expense Advance, and any portion of the Signage Advance not used to purchase signage or the Legal Fee Advance not used to pay legal fees, in each case in accordance with the Budget, shall be retained by the Consultants until the Final Reconciliation. Notwithstanding the Consultants' receipt of the Consultant Expense Advance, nothing contained herein shall be deemed to waive, modify or limit the Merchant's obligations to remit timely payment of the Fees and Expenses due to the Consultants, or to remit payment of the proceeds from the sale of any Additional Consultant Goods as part of the Weekly Reconciliations. To the extent the Merchant fails to timely remit payment of Fees, reimbursement of Expenses, or Additional Consultant Goods Proceeds that are due and owing to the Consultants (collectively, if any, the "Past Due Consultant Amounts"), the Consultants may apply such Past Due Consultant Amounts against the Consultant Expense Advance, in which case, no less than one (1) business day after the Merchant's receipt of notice from the Consultants of such application, the Merchant shall replenish the Consultant Expense Advance to the full amount previously agreed to by the Parties. As each Tranche of Designated Closing Locations is identified by the Merchant (if any), the Merchant and the Consultants (after consultation with the Senior Credit Facility Agent) shall mutually agree upon an increase to the Signage Advance and the Sale Advance. No later than seven (7) business days after completion of the Final Reconciliation and upon receipt by the Consultants of all amounts due to it under this Agreement, any unused portion of the Sale Advance shall be returned by the Consultants to the Merchant.

(c)     Bankruptcy Filing/Assumption of Agreement.  If the Merchant commences a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"):

(i)     the Merchant shall promptly file an expedited motion to assume sections of this Agreement under section 363 and/or 365 of the Bankruptcy Code, and utilize its reasonable best efforts to ensure that such motion is approved on an expedited basis either by an interim and final order, or just by a final order, that is, in each case reasonably acceptable to the Consultants, that approves, among other things, as follows (each, an "Approval Order"):  (A) the payment of all Fees and reimbursement of all Expenses due to the Consultants under this Agreement is approved without further order of the court; (B) all such payments of Fees and reimbursement of Expenses related to this Agreement shall be made without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (C) the payment of all Fees and reimbursement of all Expenses to the Consultants related to this Agreement, as well as the remittance of the Additional Consultant Goods Proceeds, to the Consultants shall be included and accounted for in any approved debtor-in-possession, cash collateral, or other post-petition financing budget as a condition to the assumption of this Agreement; (D) the conduct of the sale without the necessity of complying with state and

17

12617011v5

local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the sale; (E) the conduct of the Sale notwithstanding any restrictions in leases, reciprocal easement agreements, or other contracts that purport to restrict the Sale or that otherwise purport to require any third party consents; (F) the conduct of the Sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," or similar themed sale, and in the event of a full-chain liquidation, as a "going out of business" sale through the posting of signs (including the use of exterior banners at any non-enclosed mall, and at any enclosed mall, to the extent the applicable store entrance does not require entry into the enclosed mall common area), use of sign-walkers, A-frames and other street signage, in accordance with this Agreement and the Sale Guidelines; (G) the sale of Additional Consultant Goods in accordance with the terms and conditions set forth in this Agreement; and (H) the Merchant taking all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

(ii)    The Bankruptcy Court shall have exclusive jurisdiction to resolve any issues arising under this Agreement.  In such event, any legal action, suit, or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over the Merchant, and each Party waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens.  From and after entry of the applicable Approval Order, the Consultants shall conduct the Sale in accordance with the terms of such Approval Order in all material respects.  If any objections are received prior to entry of an Approval Order, the Consultants will use commercially reasonable efforts to assist the Merchant in negotiating a consensual resolution of such objection with the objecting party.

(d)    <u>Advertising Materials/Signage</u>.  The Consultants shall procure (at the sole cost and expense of the Merchant, which cost is to be paid by using the Signage Advance to be delivered by the Merchant to the Consultants pursuant to <u>Section 7(b)</u> of this Agreement) all necessary point of purchase, point of sale, and external advertising (including signage) to effectively sell the Inventory during any prospective Sale at all of the Merchant's Designated Closing Locations, consistent with the sale themes outlined in the Inventory Disposition Services set forth in <u>Section 2(b)</u> of this Agreement and approved by Merchant in consultation with the Senior Credit Facility Agent (the "<u>Advertising Materials</u>").  The Consultants shall so procure the Advertising Materials by no later than such date as is separately agreed to in writing by the Merchant, the Consultants, and the Senior Credit Facility Agent.  All Advertising Materials shall remain the property of the Merchant.

(e)    <u>Periodic Status Updates</u>.  The Consultants shall provide the Merchant and its advisors, the Senior Credit Facility Agent and their advisors, and any other constituents requested by the Merchant, with periodic updates regarding the Sale.

(f)  <u>Termination</u>.  The Merchant shall (in consultation with the Senior Credit Facility Agent) have the right to terminate this Agreement for cause upon written notice to the Consultants, and the Consultants shall have the right to terminate this Agreement for cause upon written notice to the Merchant.  Termination for "cause" shall mean any termination as a result of a Party's fraud, misrepresentation, gross negligence, willful misconduct or material breach of any of the terms of this Agreement.  Upon termination of this Agreement, the Consultants shall:  (i) immediately discontinue all Services; and (ii) deliver to the Merchant all information, reports, papers, and other materials prepared or obtained by the Consultants in performing the Services, whether completed or in process.  Upon termination of this Agreement, the Merchant shall be liable for payment of all accrued and unpaid Fees and Expenses of the Consultants as of the effective date of the termination.  Notwithstanding any of the foregoing, the provisions of <u>Section 6</u> of this Agreement shall survive any termination of this Agreement.

(g)  <u>Consultants Not Liable for Employee Wages/Benefits</u>.  The Parties expressly acknowledge and agree that the Consultants shall have no liability to the Merchant or to any employee of the Merchant for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from the Merchant's employment, hiring, or retention of its employees, and such employees shall not be considered employees of the Consultants.

(h)  <u>Notice</u>.  Any correspondence and any notice required or permitted to be given under this Agreement may be sent by email, shall be addressed as set forth below, and shall be deemed given on the same date on which it is sent if sent by email.

|  |  |
|---|---|
| If to Consultants: | SB360 Capital Partners, LLC<br>75 Second Avenue<br>Needham, MA  02494<br>Attn: Aaron S. Miller, President<br>E-mail:  amiller@sb360.com |
|  | - and - |
|  | Hilco Merchant Resources, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attn:  Ian Fredericks, Chief Executive Officer<br>E-mail:  ifredericks@hilcoglobal.com |

19

| With a copy to: | Leichtman Law PLLC |
| | 185 Madison Avenue - 15th Floor |
| | New York, NY 10016 |
| | Attn: Maura I. Russell |
| | E-mail: mrussell@leichtmanlaw.com |

- and -

Lowenstein Sandler LLP
One Lowenstein Parkway
Roseland, NJ 07068
Attn: Jeffrey Cohen and Andrew Behlmann
E-mail: jcohen@lowenstein.com;
    abehlmann@lowenstein.com

| If to the Merchant: | New Rite Aid, LLC |
| | 200 Newberry Commons |
| | Etters, PA 17319 |
| | Attn: Steven Bixler |
| | E-mail: sbixler@riteaid.com |

| With a copy to: | Paul, Weiss, Rifkind, Wharton & Garrison, LLP |
| | 1285 Avenue of the Americas |
| | New York, NY 10019 |
| | Attn: Alice Belisle Eaton |
| | Christopher Hopkins |
| | E-mail: aeaton@paulweiss.com |
| | chopkins@paulweiss.com |

(i)  Exclusivity.  The Consultants shall, with respect to all of the Merchant's retail stores and distribution centers, be the exclusive consultants for the Services set forth in this Agreement.

(j)  Construction.  This Agreement shall be deemed drafted by each Party hereto, and there shall be no presumption against either Party in the interpretation of this Agreement.  By executing this Agreement, the Merchant and each Consultant acknowledges and represent that it is represented by and has consulted with independent legal counsel with respect to the terms and conditions contained herein.  All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Agreement.

(k)  Independent Contractor.  The Consultants will be providing the Services to the Merchant as independent contractors.  For greater certainty, this Agreement does not create any relationship of employer and employee, or of joint ventures between the Merchant and the Consultants.

(l)  Severability.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this

20

Agreement, which shall remain in full force and effect, and the invalid or unenforceable provision shall be reformed to the minimum extent required to render it valid and enforceable and to effectuate the intent of this Agreement.

(m)    <u>Assignment</u>.  Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party hereto without the prior written consent of the other Party.  This Agreement, including, without limitation, the obligation of the Merchant to compensate the Consultants for the Services, shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, legal representatives, successors and permitted assigns. Notwithstanding the foregoing, the Consultants are authorized to form a contractual joint venture with the other national liquidator firms identified on <u>Exhibit C</u> attached hereto, on written notice to the Merchant, provided that the Consultants remain the lead in such joint venture and the terms of the Consulting Engagement remain as set forth herein.

(n)    <u>Modifications</u>.  No modification, amendment, or waiver of any of the provisions contained in this Agreement, or any future representation, promise, or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party.  The failure by a Party to enforce, or the delay by a Party in enforcing, any of said party's rights under this Agreement shall not be construed as a continuing waiver of such rights, and said Party may, within such time as is provided by applicable law, commence suits, actions, or proceedings to enforce any or all of such rights.  A waiver by a Party of a default in one or more instances shall not be construed as a waiver in other instances.

(o)    <u>Entire Agreement</u>.  This Agreement, together with all exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party to this Agreement except as specifically set forth in this Agreement.  All prior agreements, discussions, and negotiations are entirely superseded by this Agreement.

(p)    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without reference or regard to choice of law provisions.  THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF THE SERVICES, ANY TRANSACTION, OR CONDUCT IN CONNECTION THEREWITH OR THIS AGREEMENT.

*[Signatures Pages Follow]*

IN WITNESS WHEREOF, the Merchant and the Consultants have executed and delivered this Agreement as of the Agreement Effective Date.

NEW RITE AID, LLC, on behalf of itself and its wholly-owned direct and indirect subsidiaries

By: _____

Name: Steven Bixler
Title:   Chief Financial Officer

SB360 CAPITAL PARTNERS, LLC

By: _____
Name:
Title:   President

HILCO MERCHANT RESOURCES, LLC

By: _____
Name:
Title:

IN WITNESS WHEREOF, the Merchant and the Consultants have executed and delivered this Agreement as of the Agreement Effective Date.

NEW RITE AID, LLC, on behalf of itself and its wholly-owned direct and indirect subsidiaries

By: _____
Name: Steven Bixler
Title:   Chief Financial Officer

SB360 CAPITAL PARTNERS, LLC

By: _____
Name:
Title:   President

HILCO MERCHANT RESOURCES, LLC

By: _____
Name:
Title:

IN WITNESS WHEREOF, the Merchant and the Consultants have executed and delivered this Agreement as of the Agreement Effective Date.

NEW RITE AID, LLC, on behalf of itself and its wholly-owned direct and indirect subsidiaries

By: _____
Name: Steven Bixler
Title:  Chief Financial Officer

SB360 CAPITAL PARTNERS, LLC

By: _____
Name:
Title:  President

HILCO MERCHANT RESOURCES, LLC

By: _____
Name:  T. Kellan Grant
Title:
       EVP Commercial Counsel

IN WITNESS WHEREOF, the Senior Credit Facility Agent consents and agrees to this Agreement as of the Agreement Effective Date.

BANK OF AMERICA, N.A.,
as Senior Credit Facility Agent

By: *Rohit Mehta*
Name:  Rohit Mehta
Title:    Senior Vice President

**Exhibit A**

**Sale Guidelines**

# EXHIBIT A

## Sale Guidelines[1]

1.   The Sales shall be conducted so that the Designated Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective Merchant Lease for the applicable Designated Closing Stores.

2.   The Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3.   On "shopping center" property, the Merchant and the Consultants shall not distribute handbills, leaflets or other written materials to customers outside of any Designated Closing Stores' premises, unless permitted by the applicable Merchant Lease for such premises or if distribution is customary in the "shopping center" in which such Designated Closing Store is located; *provided* that the Merchant and the Consultants may solicit customers in the Designated Closing Stores themselves.  On "shopping center" property, the Merchant and the Consultants shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable Merchant Lease or otherwise agreed to by the landlord.

4.   At the conclusion of the Sale, the Merchant and the Consultants shall vacate the Designated Closing Stores; *provided* that the Merchant may abandon any Merchant owned Sale Assets not sold in the Sales following the Sale Termination Date, without cost or liability of any kind to the Merchant and the Consultants.  The Merchant shall notify the applicable landlord (and if known, such landlord's counsel) of its intention to abandon any Merchant owned Sale Assets at least two (2) calendar days prior to the Sale Termination Date.  The Merchant will have the option to remove any Merchant owned Sale Assets, at its own cost prior to the Sale Termination Date.  Any abandoned Merchant owned Sale Assets left in a Designated Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant and the Consultants.  For the avoidance of doubt, as of the Sale Termination Date, the Merchant and the Consultants may abandon, in place and without further responsibility or liability of any kind, any Merchant owned Sale Assets.

5.   The Merchant and the Consultants may advertise the Sales as "store closing", "sale on everything," "everything must go," "everything on sale," "going-out-of-business," or similar-themed sales.  The Merchant and the Consultants may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.  All

---

[1]   Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the Agreement to which these Sale Guidelines are attached as <u>Exhibit A</u>.

signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Merchant, prior to purchase, in accordance with these Sale Guidelines.

6.      The Merchant and the Consultants shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and the Consultants shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Merchant and the Consultants shall be permitted to utilize exterior banners at (a) non-enclosed mall Designated Closing Stores and (b) enclosed mall Designated Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided*, *however*, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store. In addition, the Merchant and the Consultants shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Merchant and the Consultants any additional restrictions not contained in the applicable lease agreement.

7.      Conspicuous signs shall be posted in the cash register areas of each of the affected Designated Closing Stores to effect that "all sales are final."

8.      Except with respect to the hanging of exterior banners, the Merchant and the Consultants shall not make any alterations to the storefront or exterior walls of any Designated Closing Stores, except as authorized by the applicable lease.

9.      The Merchant and the Consultants shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease. No property of the landlord of a Designated Closing Store shall be removed or sold during the Sales. The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Designated Closing Store.

10.     The Merchant shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

11.     The Merchant and the Consultants (in consultation with the Merchant) are authorized to enter into "side letters" with the landlord of any Designated Closing Store without further order of the Court, provided that such agreements do not have a material adverse effect on the Sale Assets or the Sales.

12.     The Merchant and the Consultants may advertise the sale of the Merchant owned Sale Assets in a manner consistent with these Sale Guidelines. The purchasers of any of the Merchant owned Sale Assets during the sale shall be permitted to remove such Sale Assets either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however*, that the foregoing shall not apply to

*de minimis* sales of Merchant owned Sale Assets made whereby the item can be carried out of the Designated Closing Store in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Merchant and the Consultants may abandon, in place and without further responsibility, any Merchant owned Sale Assets.

13.  At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Designated Closing Stores shall have reasonable access to the Designated Closing Stores' premises as set forth in the applicable Merchant Lease.  The Merchant and its agents and representatives shall continue to have access to the Designated Closing Stores pending assumption or rejection of applicable leases.

14.  The rights of landlords against Merchant for any damages to a Designated Closing Store shall be reserved in accordance with the provisions of the applicable Merchant Lease.

15.  The Merchant is authorized to conduct and consummate sales and internal transfers of Prescription Assets consistent with its historical practices, in accordance with applicable law.

16.  If and to the extent that the landlord of any Closing Store affected hereby contends that the Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant as follows:

|  |  |
|---|---|
| If to Consultants: | SB360 Capital Partners, LLC<br>75 Second Avenue<br>Needham, MA  02494<br>Attn: Aaron S. Miller, President<br>Email:  amiller@sb360.com |
|  | - and - |
|  | Hilco Merchant Resources, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attn:  Ian Fredericks, Chief Executive Officer<br>Email:  ifredericks@hilcoglobal.com |
| With a copy to: | Leichtman Law PLLC<br>185 Madison Avenue - 15th Floor<br>New York, NY 10016<br>Attn:    Maura I. Russell<br>Email:  mrussell@leichtmanlaw.com |
|  | - and - |
|  | Lowenstein Sandler LLP<br>One Lowenstein Parkway<br>Roseland, NJ 07068 |

|  | Attn:  Jeffrey Cohen and Andrew Behlmann<br>Email:  jcohen@lowenstein.com;<br>        abehlmann@lowenstein.com |
|---|---|
| If to the Merchant: | New Rite Aid, LLC<br>200 Newberry Commons<br>Etters, PA 17319<br>Attn:  Matthew Schroeder<br>Email: MSchroeder@riteaid.com |
| With a copy to: | Paul, Weiss, Rifkind, Wharton & Garrison, LLC 1285 Avenue of the Americas<br>New York, NY 10019<br> Attn:    Alice Belisle Eaton, Christopher Hopkins, Alice Nofzinger<br>Email:aeaton@paulweiss.com,chopkins@paulweiss.com, anofzinger@paulweiss.com |

## Exhibit B

**Saleable Non-Merchandise**

**Rite Aid - SB360/Hilco**
**Consulting Agreement**

| Dept | Dept Desc | cat | catdesc | Type | Merch/Non-Merch |
|------|-----------|-----|---------|------|------------------|
| 13 | GREETING CARDS/GIFTS | 431 | GREETING CARDS/GIFT ACC | FE | Non-Merch |
| 31 | GENERAL | 6 | OTHER SALES | FE | Non-Merch |
| 43 | PHONE CARD | 37 | PREPAID CREDIT CARD | FE | Non-Merch |
| 43 | PHONE CARD | 400 | GIFT CARDS/GPR PRODUCTS | FE | Non-Merch |
| 43 | PHONE CARD | 409 | PREPAID PHONE CARDS | FE | Non-Merch |
| | | | | | |
| | | | | | |
| | Notes: | | | | |
| | For avoidance of doubt, no Rite Aid GIFT CARDS/GPR PRODUCTS, will be sold in the Sales | | | | |
| | Dept 13 is specific reference to Company file / "Other" is not to capture anything captured in another dept. | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Exhibit C**

**List of National Liquidation Firms**

**EXHIBIT C**

**List of National Liquidation Firms**

Gordon Brothers Retail Partners, LLC

GA Group (aka Great American Group, LLC)

Tiger Capital Group, LLC

## **Schedule 2**

**Initial Closing Locations**

**N/A**

## **Schedule 3**

**Sale Guidelines**

## **Sale Guidelines**[1]

1. The Sales shall be conducted so that the Designated Closing Locations in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective Merchant Lease for the applicable Designated Closing Locations .

2. The Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Closing Location on a Sunday prior to the commencement of the Sales.

3. On "shopping center" property, the Merchant and the Consultants shall not distribute handbills, leaflets, or other written materials to customers outside of any Designated Closing Locations' premises, unless permitted by the applicable Merchant Lease for such premises or if distribution is customary in the "shopping center" in which such Designated Closing Location is located; *provided* that the Merchant and the Consultants may solicit customers in the Designated Closing Locations themselves.  On "shopping center" property, the Merchant and the Consultants shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable Merchant Lease or otherwise agreed to by the landlord.

4. At the conclusion of the Sale, the Merchant and the Consultants shall vacate the Designated Closing Locations ; *provided* that the Merchant may abandon any Merchant owned Sale Assets not sold in the Sales following the Sale Termination Date, without cost or liability of any kind to the Merchant and the Consultants.  The Merchant shall notify the applicable landlord (and if known, such landlord's counsel) of its intention to abandon any Merchant owned Sale Assets at least two (2) calendar days prior to the Sale Termination Date.  The Merchant will have the option to remove any Merchant owned Sale Assets, at its own cost prior to the Sale Termination Date.  Any abandoned Merchant owned Sale Assets left in a Designated Closing Location after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant and the Consultants.  For the avoidance of doubt, as of the Sale Termination Date, the Merchant and the Consultants may abandon, in place and without further responsibility or liability of any kind, any Merchant owned Sale Assets.

5. The Merchant and the Consultants may advertise the Sales as "store closing," "sale on everything," "everything must go," "everything on sale," "going-out-of-business," or similar-themed sales.  The Merchant and the Consultants may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.  All signs, banners, ads, and other advertising material, promotions, and campaigns will be approved by the Merchant, prior to purchase, in accordance with these Sale Guidelines.

---

[1]   Capitalized terms used but not defined in these sale guidelines (the "Sale Guidelines") have the meanings given to them in that certain consulting agreement dated as of April 3, 2025, by and among New Rite Aid, LLC, on the one hand, and SB360 Capital Partners, LLC and Hilco Merchant Resources, LLC, on the other hand.

6. The Merchant and the Consultants shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and the Consultants shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Merchant and the Consultants shall be permitted to utilize exterior banners at (a) nonenclosed mall Designated Closing Locations and (b) enclosed mall Designated Closing Locations to the extent the entrance to the applicable Closing Location does not require entry into the enclosed mall common area; *provided, however*, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Location, and shall not be wider than the storefront of the Closing Location. In addition, the Merchant and the Consultants shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Merchant and the Consultants any additional restrictions not contained in the applicable lease agreement.

7. Conspicuous signs shall be posted in the cash register areas of each of the affected Designated Closing Locations to effect that "all sales are final."

8. Except with respect to the hanging of exterior banners, the Merchant and the Consultants shall not make any alterations to the storefront or exterior walls of any Designated Closing Locations, except as authorized by the applicable lease.

9. The Merchant and the Consultants shall not make any alterations to interior or exterior Closing Location lighting, except as authorized by the applicable lease. No property of the landlord of a Designated Closing Location shall be removed or sold during the Sales. The hanging of exterior banners or in-Closing Location signage and banners shall not constitute an alteration to a Designated Closing Location.

10. The Merchant shall keep Closing Location premises and surrounding areas clear and orderly consistent with present practices.

11. The Merchant and the Consultants (in consultation with the Merchant) are authorized to enter into "side letters" with the landlord of any Designated Closing Location without further order of the Court, *provided* that such agreements do not have a material adverse effect on the Sale Assets or the Sales.

12. The Merchant and the Consultants may advertise the sale of the Merchant owned Sale Assets in a manner consistent with these Sale Guidelines. The purchasers of any of the Merchant owned Sale Assets during the sale shall be permitted to remove such Sale Assets either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however*, that the foregoing shall not apply to *de minimis* sales of Merchant owned Sale Assets made whereby the item can be carried out of the Designated Closing Location in a shopping bag. For the avoidance of doubt, as of

the Sale Termination Date, the Merchant and the Consultants may abandon, in place and without further responsibility, any Merchant owned Sale Assets.

13. At the conclusion of the Sales at each Closing Location, pending assumption or rejection of applicable leases, the landlords of the Designated Closing Locations shall have reasonable access to the Designated Closing Locations' premises as set forth in the applicable Merchant Lease. The Merchant and its agents and representatives shall continue to have access to the Designated Closing Locations pending assumption or rejection of applicable leases.

14. The rights of landlords against Merchant for any damages to a Designated Closing Location shall be reserved in accordance with the provisions of the applicable Merchant Lease.

15. The Merchant is authorized to conduct and consummate sales and internal transfers of Pharmacy Assets consistent with its historical practices, in accordance with applicable law.

16. If and to the extent that the landlord of any Closing Location affected hereby contends that the Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant as follows:

| | |
|---|---|
| If to Consultants: | SB360 Capital Partners, LLC<br>75 Second Avenue<br>Needham, MA  02494<br>Attn: Aaron S. Miller, President<br>Email:  amiller@sb360.com |
| | - and - |
| | Hilco Merchant Resources, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attn:  Ian Fredericks, Chief Executive Officer<br>Email:  ifredericks@hilcoglobal.com |
| With a copy to: | Leichtman Law PLLC<br>185 Madison Avenue - 15th Floor<br>New York, NY 10016<br>Attn:   Maura I. Russell<br>Email:  mrussell@leichtmanlaw.com |
| | - and - |
| | Lowenstein Sandler LLP<br>One Lowenstein Parkway<br>Roseland, NJ 07068<br>Attn:  Jeffrey Cohen and Andrew Behlmann<br>Email:  jcohen@lowenstein.com;<br>          abehlmann@lowenstein.com |

If to the Merchant:    New Rite Aid, LLC
                       200 Newberry Commons
                       Etters, PA 17319
                       Attn:  Matthew Schroeder
                       Email: MSchroeder@riteaid.com

With a copy to:        Paul, Weiss, Rifkind, Wharton & Garrison, LLC
                       1285 Avenue of the Americas
                       New York, NY 10019
                       Attn:   Alice Belisle Eaton, Christopher Hopkins,
                       Nick Krislov
                       Email: aeaton@paulweiss.com,
                       chopkins@paulweiss.com,
                       nkrislov@paulweiss.com