Law Office of Shmuel Klein PA
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510
Attorney ID 00851987
Email: shmuel.klein@verizon.net

-and-

NATALI A. RON (SBN 302927)
Law Offices of Hastings & Ron
1330 W. Fremont Street, Suite 1
Stockton, CA 95203
(209) 476-1010
email: nron@hastingslawoffice.com
*Attorneys for Stonebrier Commercial, L.P.*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>NEW RITE AID LLC, *et al.*,<br>Debtors | Chapter 11<br>Case No. 25-14861 (MBK) |

TO: HONORABLE MICHAEL B. KAPLAN
United States Bankruptcy Judge

### MEMORANDUM OF LAW IN SUPPORT OF STONEBRIER COMMERCIAL L.P.'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. 503(B)(7) AND § 503(B)(9) AND FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

STONEBRIER COMMERCIAL L.P. ("STONEBRIER"), by and through its undersigned counsel, hereby requests the entry of an order pursuant to 11 U.S.C. § 503(b)(7) and § 503(b)(9), allowing STONEBRIER an administrative expense claim in the amount of $157,048.62, as and for all monetary obligations due with respect to the nonresidential real property lease incurred by the Debtors NEW RIGHT AID LLC and its subsidiaries ("Debtors"), subsequent to the bankruptcy petition filing on May 5, 2025.

STONEBRIER COMMERCIAL L.P. consents to the entry of final orders or judgments by the Court consistent with Article III of the United States Constitution. This Motion is submitted pursuant to the Final Order (I) Authorizing the Debtors to Obtain Post-petition Financing, (II) Authorizing the Debtors to Use

Cash Collateral, (III) Granting Liens and Providing Super-priority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief, (the "Final Order Dkt. No. 1396") which states "Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed super priority administrative expense claims against each of the Debtors' estates … with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise…" (See Dkt. No. 1396 at paragraph 6(a), p. 48 of 130.)

During the period following the filing of this case, Debtors became indebted to STONEBRIER in said amount pursuant to a commercial lease agreement. In support of its Motion, STONEBRIER states as follows: the Debtors entered into a Lease Agreement with STONEBRIER as more fully set forth below, whereby STONEBRIER agreed to lease the property located at 4774 West Lane, Stockton, CA 95210 to the Debtors. The Debtors agreed to pay STONEBRIER in the amounts specified in the Lease Agreement.

The Debtor filed its prior bankruptcy petition in *In re Rite Aid Corp.,* case number 23-18993. As a result of that filing, the Debtor and Movant entered into an Amendment to Lease effective June 20, 2024, which provided, inter alia, that the "Landlord and Tenant acknowledge and agree that Tenant shall have the option to terminate the Lease (the "Termination Option") effective on July 31, 2025 (the "Early Termination Date"); *provided* that Tenant issues notice to Landlord of Tenant's election to exercise the Termination Option no later than five (5) months prior to the Early Termination Date." (See Modification, emphasis in original.) Debtor failed to notify movant in advance of its intent to exercise the Termination Option and was thus obligated on the lease through and including July 31, 2025.  As a result of STONEBRIER leasing the property to Debtors through July 31, 2025, Debtors received an actual benefit of said property by occupying the property and conducting its business without paying the agreed amounts in the Lease Agreement.

The outstanding balance Debtors agreed to pay STONEBRIER totals $157,048.62. This amount became due subsequent to the filing of the bankruptcy petition and pursuant to the Lease Agreement between Debtors and STONEBRIER and is therefore subject to this administrative expense claim. Accordingly, STONEBRIER respectfully requests that this Court grant this motion allowing an administrative expense claim in the amount of $157,048.62.

## I. JURISDICTION

The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court under Title 11, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for the relief requested herein are 11 U.S.C. § 503(b)(7) and § 503(b)(9) (the "Bankruptcy Code"), rules 4001 and 6006 of the Federal Rules of Bankruptcy Procedure, and rules 9013-1 through 9013-3 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

## II. STATEMENT OF FACTS

STONEBRIER is the landlord for the property located at 4774 West Lane Stockton, CA 95210, (the "Premises"). STONEBRIER and Debtors, entered into a certain Lease Agreement beginning June 25, 2008 (the "Lease Agreement"), and most recently amended on June 20, 2024.

On May 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for bankruptcy under Chapter 11 of Title 11 of the United States Code. Since the Petition Date, the Debtors continued to occupy and do business on the Premises and operated their businesses as debtors-in-possession pursuant to 11 U.S.C. § 1107 and § 1108 of the Bankruptcy Code.

On July 11, 2025, the Court entered the Tenth Order Approving the Rejection of Certain Executory Contracts and/or Unexpired Leases and the Abandonment of Certain Personal Property, if any (Dkt. No. 1406), which rejected the lease of said Premises effective June 30, 2025 (the "Rejection Effective Date"). From the Petition Date through the Rejection Effective date, the Debtor's continued use and occupancy of

the Premises for retail space and conduct their business.

As of the Rejection Effective Date, Debtors were tenants under the Lease Agreement for nearly seventeen (17) years. Pursuant to the Lease Agreement paragraph 5 RENT, monthly installments for years 11-20 amounted to $47,208.33 per month. Further, a "Late Charge" of five percent (5%) of the amount overdue shall be paid by Debtors should the outstanding balance not be paid within 10 days of the Landlord's (STONEBRIER) notice. Debtors have not paid rent for May 2025 and July 2025. Additionally, Debtors have incurred a Late Charge for April, May, and July installments, which totals $2,360.42 for each Late Charge. In total under paragraph 5 of the Lease Agreement, Debtors outstanding balance owed to STONEBRIER is $101,497.59.

Pursuant to the Lease Agreement paragraph 6 REAL ESTATE TAXES, Debtors agreed to pay all real estate taxes which may be levied or charged against the Premises. Debtors have an outstanding balance for the $2_{nd}$ Installment Property Tax totaling $27,486.86 and a Delinquent Fee Property Tax totaling $2,803.18. The total outstanding balance under paragraph 6 of the Lease Agreement is $30,290.04.

Pursuant to the Lease Agreement, paragraph 16 UTILITIES, Debtors agreed to pay all water, light, power, and/or other utility service used by Debtor. Under paragraph 17 MAINTENANCE AND REPAIRS Debtors agreed to pay for the maintenance, repair, and replacement of the entire building and improvements on the site. Debtors have an outstanding balance for March 2025 totaling $3,095.52, April 2025 totaling $3,361.22, May 2025 totaling $3,626.73, June 2025 totaling $3,339.35, and July 2025 totaling $3,148.67, with a total aggregate amount of $16,571.49.

Pursuant to the Lease Agreement, paragraph 25 DEFAULT part (iv), Debtors agreed to pay Landlord (STONEBRIER) "[a]ny other reasonable amount necessary to compensate Landlord for all the damages proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would likely to result therefore (including, without limitation, … reasonable attorneys' fees…" (see Lease Agreement). Debtors have caused STONEBRIER to incur a total balance of $8,689.50 in attorneys' fees pursuant to the Lease Agreement.

As evidenced by the Lease Agreement, and the fact that STONEBRIER continued to lease the

Premises to Debtors, and Debtors continued to occupy and operate its retail business post-petition, Debtors received the benefit of the lease under the Lease Agreement.

**The Court Should Allow STONEBRIER an Administrative Expense Claim**

Bankruptcy Code Section 503, is made applicable to this Chapter 11 Bankruptcy proceeding under 11 U.S.C §103(a). Section 503(b) of the Bankruptcy Code provides that, after notice and a hearing, there shall be allowed administrative expenses. Specifically, "[a]n entity may timely file a request for payment of an administrative expense, or STONEBRIER's Claim Under 11 U.S.C. § 503(b)(7) may tardily file such request if permitted by the court for cause." (*11 U.S.C. Sec. 503(a)*.) Further "with respect to a nonresidential real property lease previously assumed under section 365, and subsequently rejected, a sum equal to all monetary obligations due… for the period of 2 years following the later of the rejection date or the date of actual turnover of the premises…" (*11 U.S.C. § 503(b)(7)*.). Additionally, Section 503(b)(9) of the Bankruptcy Code provides a claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." (*11 U.S.C. § 503(b)(9)*.).

Administrative expenses receive priority payment over other claims pursuant to Bankruptcy Code § 507(a)(2). To qualify for an administrative priority, an expense (i) must arise from a post-petition transaction with the Debtor-in-possession, and (ii) must be beneficial to the Debtor-in-possession in the operation of the business.

Further, in the Final Order Dkt. No. 1396 at paragraph 6(a), the court stated all of the Debtor-in-possession ("DIP") "Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates defined "DIP Superpriority Claims" as those pursuant to section 364(c)(1) of the Bankruptcy Code (the "DIP Superpriority Claims") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105,

326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise…" (See Dkt. No. 1396, p. 48 of 130.)

In this case, there is no dispute STONEBRIER provided the Premises to Debtor post-petition through the Rejection Effective Date of June 30, 2025 (the "Rejection Effective Date"), and provided goods 20 days prior to the filing of the bankruptcy petition. There can be no reasonable dispute of the value of the outstanding balance owed to STONEBRIER for the lease pursuant to the Lease Agreement agreed to by Debtors.

STONEBRIER respectfully requests that this Court allow STONEBRIER's administrative expense claim, pursuant to § 503(b)(7) of the Bankruptcy Code, for the sum equal to $116,031.92 for all monetary obligations due with respect to monthly installments, late charges, utilities and maintenance, and attorneys' fees Debtor incurred post-petition.

STONEBRIER respectfully requests that this Court allow STONEBRIER's administrative expense claim, pursuant to § 503(b)(9) of the Bankruptcy Code, for the sum equal to $41,016.70 for goods provided 20-days prior to the Debtors filing the bankruptcy petition for the sum equal to all monetary obligations due with respect to late rental fees, attorney fees, property tax, delinquent property tax, property maintenance and landscaping, and storm water, sewar and water, fire hydrant, and irrigation water costs. Bankruptcy courts have been split on whether utilities such as gas, water, sewage, and electricity qualify as "goods" under § 503(b)(9) of the U.S. Bankruptcy Code; however, several cases have held that certain utilities do meet this definition. Notable decisions include *In re Erving Industries, Inc.*, 432 B.R. 354 (Bankr. D. Mass. 2010) (electricity deemed a good subject to § 503(b)(9)), *In re Pilgrim's Pride Corp.*, 421 B.R. 231 (Bankr. N.D. Tex. 2009) (water and gas is a good and entitled to a claim under 503(b)(9); but sewage was a service under § 503(b)(9)), *GFI Wisconsin, Inc. v. Reedsburg Utility Comm'n*, 440 B.R. 791 (Bankr. W.D. Wis. 2010) (electricity held to be a good under § 503(b)(9)), and *In re NE Opco, Inc.*, 501 B.R. 233 (Bankr. D. Del. 2013)  (natural gas found to be a good, though electricity was not).

<u>The Court Should Compel Immediate Payment of STONEBRIER's Administrative Expense Claim</u>

"Courts have discretion to determine when an administrative expense will be paid." (*In re HQ

*Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002).) "In determining the time of payment, courts consider prejudice to the Debtor, hardship to the claimant, and potential detriment to other creditors." (*Id*.) Final Order Dkt. No. 1396 at paragraph 6(a), the administrative expenses allowed under section 503(b) of the Bankruptcy Code "shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, all DIP Collateral …, subject and subordinate only to the payment of the Carve Out as provided…" (See Dkt. No. 1396, p. 48 of 130.) Further, the court states "[a]ll DIP Superpriority Claims shall be senior in right of payment to the Adequate Protection Superpriority Claims…, and junior in right of payment to the Carve Out." (See Final Order Dkt. No. 1396 at paragraph 6(b), p. 48 of 130.)

There is no valid reason to defer payment of STONEBRIER's administrative expense claim. Pursuant to the Final Order Dkt. No. 1396, Administrative claims are entitled to priority payment, second to only to the "Carve Out" defined in said order. Accordingly, allowing immediate payment of the claim would not result in prejudice to other creditors' subordinate claims. For these reasons, the Court should allow STONEBBRIER's administrative expense claim and compel immediate payment thereof.

### III. RELIEF REQUESTED

STONEBRIER respectfully requests that this Court allow STONEBRIER's administrative expense claim, pursuant to § 503(b)(7) of the Bankruptcy Code, $116,031.92 which is the sum equal to all monetary obligations due with respect to monthly installments, monthly installments late charges, utilities and maintenance, and attorneys' fees Debtor incurred post-petition; and, pursuant to § 503(b)(9) of the Bankruptcy Code, $41,016.70 which is the sum equal to the monetary obligations with respect to March 2025 and April 2025 utility and maintenance charges, past due property tax, April 2025 attorney fees, and April 2025 monthly installment late charges Debtor incurred within 20 days before the Petition Date, resulting in the total aggregate amount of $157,048.62.

### IV. RESERVATION OF RIGHTS

STONEBRIER reserves its right to assert claims against the Debtors for amounts not contemplated by this Motion or allowed by the Court pursuant to section 503(b)(7) and section 503(b)(9), and to amend, modify

and/or supplement this request, as appropriate under the circumstances.

STONEBRIER also expressly reserves all rights, claims, actions, defenses, set-offs, or recoupments to which it is or may be entitled under the Lease, applicable law, or in equity.

WHEREFORE it is respectfully requested STONEBRIER's motion be granted and the Debtors pay the movant amounts due.

Dated: August 29, 2025

LAW OFFICE OF SHMUEL KLEIN PA

By: /s/ Shmuel Klein
Shmuel Klein, Esq.


LAW OFFICE OF HASTINGS & RON

By: /s/ Natali A. Ron
Natali A. Ron, Esq.
Attorney for Stonebrier Commercial L.P.