

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

In re:

NEW RITE AID, LLC, *et al.*,

Debtors.[1]

**Order Filed on September 2, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

Chapter 11

Case No. 25-14861 (MBK)

(Jointly Administered)

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT AMONG DEBTORS
AND BUYER, (II) AUTHORIZING THE SALE OF DESIGNATION RIGHTS TO
CERTAIN LEASES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, (III) APPROVING ASSIGNMENT AND ASSUMPTION
PROCEDURES FOR THE DESIGNATION LEASES AND (IV) GRANTING RELATED
RELIEF**

**[Related to Doc. No. 804]**

The relief set forth on the following pages, numbered three (3) through twenty-eight (28),

is **ORDERED**.

**DATED: September 2, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]     The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of
the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the
website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of
Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases
is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

Upon the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Order")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6003, 6004, 6006, 9007 and 9014, and Bankruptcy Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules") 6004-1 and 6004-2, (i) approving the private sale of the designation rights (the "Designation Rights") with respect to the leases of non-residential real property identified on Exhibit A attached hereto (the "Designation Leases") to Five Below, Inc. (together with any affiliated designee, to the extent permitted by the Purchase Agreement (defined below), the "Buyer") in the form of the Asset Purchase Agreement, by and among the Buyer and Debtors Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. (and any applicable affiliates), a copy of which is attached hereto as Exhibit B (the "Purchase Agreement"); (ii) approving (a) assignment and assumption and rejection procedures with respect to the Leases; and (b) the form of order approving assignment and assumption of any designated Leases attached as Exhibit C hereto (the "Assignment and Assumption Order"); and (iii) granting related relief; and the Court having conducted a hearing (the "Sale Hearing") to consider approval of the Motion, including (i) the sale of the Designation Rights and consummation of the Sale Transaction pursuant

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Order.

(Page 4)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

to the terms and conditions of the Purchase Agreement and (ii) the proposed form of Assignment

and Assumption Order; and the Court having considered:  (i) the Motion and any objections

thereto; (ii) the declarations filed in support of the Motion, (iii) the proposed sale of the

Designation Rights by the Debtors to the Buyer pursuant to and contemplated by the Purchase

Agreement; and (iv) the arguments of counsel made, and evidence adduced, at the Sale Hearing;

all parties in interest having been heard, or having had the opportunity to be heard, regarding the

approval of the Purchase Agreement and the Sale Transaction; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and

other parties in interest and that adequate and reasonable notice of the Motion, the Sale

Transaction, this Order and the Sale Hearing has been provided to all entities required to be served

in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; and after due

deliberation thereon; and good and sufficient cause appearing therefor,

| (Page 5) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

**IT IS HEREBY FOUND AND DETERMINED:**[2]

A.        The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.        To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.        The Court has jurisdiction over the Motion and over the property of the Debtors, including, without limitation, the Designation Rights, the Designation Leases and the Sale Transaction contemplated by the Purchase Agreement, pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference to the Bankruptcy Court under Title 11* from the United States District Court for the District of New Jersey, dated as of September 18, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Cases and the Motion in this District and Court is proper under 28 U.S.C. § 1408.

D.        This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

---

[2]        All findings of fact and conclusions of law made by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not otherwise inconsistent with the express terms of this Order.

(Page 6)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

by Bankruptcy Rule 7054, the Court expressly finds there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

E.      The Designation Rights and the Designation Leases constitute property of the Debtors' estates, and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F.      The statutory bases for the relief requested in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, 9007 and 9014 and Local Rules 6004-1 and 6004-2.

G.      The Court entered the Bidding Procedures Order on May 21, 2025.

H.      As evidenced by the affidavits and/or certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of, and reasonable opportunity to object and/or be heard regarding the Motion and the Sale Transaction contemplated by the Purchase Agreement has been provided in accordance with the Bidding Procedures Order, sections 102(1), 363(b) and 365 of the Bankruptcy Code, the applicable Bankruptcy Rules, the applicable Local Rules and the procedural due process requirements of the United States Constitution.  No other notice of the Motion, the Sale Transaction contemplated by the Purchase Agreement, or entry of this Order is necessary or shall be required.

I.      This Order and consummation of the Sale Transaction are supported by good, sufficient and sound business purposes and will serve the best interests of the Debtors, their estates and creditors by maximizing the value obtained from the Designation Rights.

(Page 7)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

J.      The consideration to be paid by the Buyer to the Debtors for the Designation Rights pursuant to the Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Designation Rights; and (iii) constitutes full, fair and adequate consideration and reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and any similar laws of any state or jurisdiction whose law is applicable to the sale of the Designation Rights.  No other entity or group of entities has offered to purchase the Designation Rights with a higher or otherwise better offer than the Buyer.

K.      The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the consummation of the Sale Transaction outside the ordinary course of business.  Such business reasons, include, without limitation, the following: (i) the Purchase Agreement and the Sale Transaction constitute the highest or otherwise best offer for the Designation Rights; (ii) the Purchase Agreement and the Sale Transaction present the best opportunity to realize the value of the Designation Rights and the Designation Leases and avoid the decline and devaluation of the Designation Rights and the Designation Leases; (iii) time is of the essence in promptly consummating the Sale Transaction to maximize the value of the Debtors' estates and, given all of the circumstances in these chapter 11 cases, among other things, the adequacy and fair value received for the Designation Rights and the Designation Leases constitutes a reasonable and sound exercise of the Debtors' business judgment; and (iv) any other transaction, including, without limitation, pursuant to a chapter 11 plan of reorganization or liquidation, would not have yielded as favorable an economic result.

(Page 8)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

L.      As used in this Order, the term "Interest" includes, in each case to the extent against

or with respect to any of the Debtors or in, on, or against or with respect to the Designation Rights:

liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section

101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees,

actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations,

contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or

unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11

Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including,

but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests,

hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way,

encroachments, restrictive covenants, restrictions on transferability or other similar restrictions,

rights of offset or recoupment, rights of use or possession, subleases, leases, condition sale

arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes

of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of

recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions,

indemnification claims, or liabilities relating to any act or omission of the Debtors or any other

person, consent rights, options, contract rights, covenants, and interests of any kind or nature

(Page 9)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Designation Rights, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA

(Page 10)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing Date[3]; (x) any unexpired and executory contract or unexpired lease to which a Debtor is a party; and (xi) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

M.     The Debtors may sell the Designation Rights free and clear of all Interests (unless otherwise expressly assumed under, or expressly permitted by, the Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests that objected to the Sale Transaction or the Motion and that have any Interests in the Designation Rights could be compelled in a legal or equitable

---

[3]     "Closing Date" means the date on which the Transaction closes.

(Page 11)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests in the Designation Rights attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interests, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors and their estates. Any Interest holders that did not object, or that withdrew their objections, to the Motion or the Sale Transaction, are deemed to have consented to the sale of the Designation Rights free and clear of their respective Interests in the Designation Rights pursuant to section 363(f)(2) of the Bankruptcy Code.

N.      The Buyer would not have entered into the Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Designation Rights were not free and clear of all Interests (other than those Interests expressly assumed under, or expressly permitted by, the Purchase Agreement), or if the Buyer would, or in the future could, be liable for any such Interests. A sale of the Designation Rights other than one free and clear of all Interests would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Designation Rights and the Debtors' estates, with less certainty than provided by the Sale Transaction. The total consideration to be provided under the Purchase Agreement reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of, the Designation Rights

| (Page 12) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

free and clear of all Interests, including, without limitation, any potential derivative, vicarious, transferee or successor liability Interests.

O.    The disclosures made by the Debtors concerning the Motion, the Sale Hearing, the Purchase Agreement, the Sale Transaction and the relief granted herein were good, complete and adequate.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all interested persons and entities consistent with the requirement of the Bankruptcy Code, Bankruptcy Rules and Local Rules.

P.    Neither the Buyer nor any of its affiliates, officers, directors, partners or any of their respective successors or assigns is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code.

Q.    The Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith and from an arm's-length bargaining position, and is substantively and procedurally fair to all parties.  The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections and immunities afforded thereby and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction nor the sale of the Designation Rights to the Buyer free and clear of Interests, unless such authorization is duly stayed pending such appeal.  The Buyer has acted in good faith in all respects in connection with this proceeding, in that: (i) the Buyer recognized that the Debtors were free to deal with other parties interested in acquiring the Designation Rights; (ii) all payments

(Page 13)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

to be made by the Buyer and other agreements entered into by the Buyer in connection with the sale of the Designation Rights have been disclosed; and (iii) the negotiation and execution of the Purchase Agreement and related agreements was in good faith and was an arm's-length transaction. Neither the Debtors nor the Buyer have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Purchase Agreement, or to otherwise prevent the consummation of the Sale Transaction contemplated by the Purchase Agreement.  The Buyer has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale Transaction contemplated by the Purchase Agreement at any time after entry of this Order.

R.      Except as expressly set forth in the Purchase Agreement, the Buyer shall not have any liability or obligation for any lien, claim, encumbrance or interest, or other obligation of or against the Debtors, related to the Designation Rights by reason of the transfer of the Designation Rights to the Buyer.

S.      Neither the Buyer nor any of its affiliates, officers, directors, partners or any of their respective successors or assigns, as a result of any action taken in connection with the purchase of the Designation Rights, shall be deemed to: (i) be a successor (or other similarly situated party) to the Debtors; or (ii) have, *de facto* or otherwise, merged with or into the Debtors.  The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement and/or the Assignment and Assumption Order.

(Page 14)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

T.      Except as otherwise provided in the Purchase Agreement, the transfer of the Designation Rights to the Buyer will not subject the Buyer to any liability for claims against the Debtors by reason of such transfer under the laws of the United States, any state, territory or possession thereof, including, without limitation, claims relating to the operation of the Debtors' business before the Closing Date, including: (i) workmen's compensation, occupational disease, or unemployment or temporary disability insurance claims; (ii) environmental liabilities, debts, claims or obligations which may be asserted on any basis; (iii) any successor liability to any state taxing authority with regard to any tax; and (iv) any bulk sales or similar law.

U.      Neither the Sale Transaction nor the Purchase Agreement impermissibly restructure the rights of the Debtors' creditors or impermissibly dictate the terms of a chapter 11 plan of the Debtors.  Neither the Sale Transaction nor the Purchase Agreement constitute a *sub rosa* plan and are not in violation of creditors' voting rights.

V.      Subject to entry of this Order, the Debtors, acting by and through their existing agents, representatives and officers, have full corporate power and authority to execute, deliver and perform under the Purchase Agreement, and no further consents or approvals are required for the Debtors to consummate the Sale Transaction, except as otherwise provided in the Purchase Agreement.

W.      The potential assumption and assignment of the Designation Leases pursuant to the terms of this Order, including, by incorporation, the form of Assignment and Assumption Notice (as defined herein) and the form of Assignment and Assumption Order, are integral to the Purchase

| (Page 15) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

Agreement and are in the best interests of the Debtors and their estates, their creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. For the avoidance of doubt, notwithstanding anything to the contrary set forth in this Order or the Purchase Agreement, the sale, conveyance, assignment and transfer of the Designation Rights to the Buyer does not, in and of itself, effectuate a sale, conveyance, assignment or transfer of any Designation Lease to the Buyer or an assumption by the Buyer or any other Assignee of any Designation Lease.

X.      To maximize the value of the Designation Rights and the Designation Leases, it is essential that the closing of the Sale Transaction occurs within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale Transaction.

Y.      The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion.

Z.      The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such section shall have been complied with in respect of the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**I.      Approval of the Sale Transaction and Entry into the Purchase Agreement**

1.      The Debtors are hereby authorized to enter into the Purchase Agreement and the Sale Transaction contemplated therein. The failure specifically to include any particular provision

(Page 16)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision.

2.    Any and all objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.[4]

## II.    Consummation of Sale Transaction

3.    Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with the terms of the Purchase Agreement and to close and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order.

4.    The Debtors, their affiliates and their respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement or to

---

[4] Notwithstanding anything to the contrary in this Order or the Motion, the *Objection of TMT Bear Creek Shopping Center, Inc. to Notice of Assumption and Assignment of Lease* [Docket No. 1796], the *Response and Reservation of Rights of B10 Maintain B LA LP, MGP XI-A Town Center Lake Forest, LLC and ROIC Paramount Plaza, LLC to Debtors' Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 1804], and the *Objection of DS Properties 18 LP to Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 1813] are preserved and the respective objecting parties may assert all potential issues and objections raised therein if and when Debtors seek to assign the applicable leases to the Buyer without the need to file a further objection.

(Page 17)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

implement the Sale Transaction, all without further order of the Court. For the avoidance of doubt, notwithstanding anything to the contrary set forth in this Order or the Purchase Agreement: (i) the sale, conveyance, assignment and transfer of the Designation Rights to the Buyer shall not, in and of itself, effectuate a sale, conveyance, assignment or transfer of any Designation Lease to the Buyer or an assumption by the Buyer or any other Assignee of any Designation Lease, which sale, conveyance, transfer and assumptions shall occur only upon the occurrence of an applicable Lease Assignment Closing Date and only to the Assignee specified in connection therewith pursuant to an Assignment and Assumption Order entered by this Court; and (ii) all rights of the applicable counterparty to a Designation Lease to object to the assignment of such Designation Lease and the form of Assignment and Assumption Order, prior to the applicable Assignment and Assumption Order becoming a final order, are fully preserved.

5.      Any amounts paid by the Buyer in respect of the August Rent, September Rent, or October Rent, if any and as applicable, shall be used solely to pay August Rent, September Rent, and/or October Rent (or to reimburse the Debtors for the payment of such August Rent, September Rent, or October Rent) and shall not be used by the Debtors or any other person or entity for any other purpose, and any amounts paid by the Buyer directly to the Debtors in respect of Carrying Costs shall be used solely to pay such Carrying Costs (or to reimburse the Debtors for the payment of such Carrying Costs) and shall not be used by the Debtors or any other person or entity for any other purpose. Unless otherwise agreed to by the Buyer and the Debtors, the Debtors shall be the party responsible for issuing and making, and are hereby authorized to issue and make, payments

(Page 18)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

in connection with the August Rent, September Rent, October Rent, and Carrying Costs to the

applicable landlord, regulatory agency, taxing authority, third party provider of maintenance

services and/or other person or entity entitled to receive such payment.  Upon closing of the sale

of the Designation Rights, the August Rent shall be released from escrow to the Debtors for

distribution to the landlords or, if applicable, to the Debtors to reimburse payments made to

applicable landlords on account of August Rent, in accordance with the Purchase Agreement.

6.      Each and every federal, state, local, or foreign government or governmental or

regulatory authority, agency, board, bureau, commission, court, department, or other governmental

entity is hereby authorized to accept any and all documents and instruments necessary and

appropriate to consummate the Sale Transaction contemplated by the Purchase Agreement.

7.      This Order and the Purchase Agreement, and any actions taken pursuant hereto or

thereto, shall survive entry of any order (a) confirming or consummating any plan of reorganization

or liquidation of the Debtors, (b) converting the Chapter 11 Cases to cases under chapter 7 of the

Bankruptcy Code or (c) dismissing the Chapter 11 Cases.  This Order and the Purchase Agreement

shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity

interests in any Debtor, all holders of any Interests or claims (whether known or unknown) against

any Debtor, all counterparties to any executory contract or unexpired lease of the Debtors, the

Buyer and all successors and assigns of the Buyer, and any trustees, examiners or other fiduciaries

under any section of the Bankruptcy Code, if any, subsequently appointed in the Chapter 11 Cases

or upon a conversion to chapter 7 under the Bankruptcy Code of the Chapter 11 Cases.  For the

| | |
|---|---|
| (Page 19) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

avoidance of doubt, nothing in this Order shall waive or modify any deadline or requirement

provided in section 365(d)(4) of the Bankruptcy Code.

8.      The terms and provisions of the Purchase Agreement and this Order shall inure to

the benefit of the Debtors, their estates and their creditors, the Buyer and its Affiliates, designees,

successors and assigns, notwithstanding any subsequent appointment of any trustee(s), party,

entity or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which

trustee(s), party, entity or other fiduciary such terms and provisions likewise shall be binding.

**III.    Designation Rights Procedures**

9.      The procedures for the Buyer to exercise the Designation Rights set forth in the

Purchase Agreement and this Order are approved.

10.      The Debtors are authorized, at the direction of the Buyers pursuant to the Purchase

Agreement, to seek to assume and assign, pursuant to sections 363 and 365 of the Bankruptcy

Code and the Bidding Procedures Order, the Designation Leases to a designated Assignee.  Each

of the Designation Leases constitutes an unexpired lease within the meaning of section 365 of the

Bankruptcy Code.  During the Designation Rights Period, Designation Leases designated by the

Buyer for assumption and assignment will be deemed assumed and assigned by the Debtors

effective in accordance with the timing and the procedures set forth in the Purchase Agreement,

the Bidding Procedures Order, the Assignment and Assumption Notice and below.  Subject to

entry of an Assignment and Assumption Order, the assumption of any liabilities under the Leases

shall constitute a legal, valid and effective delegation of all liabilities thereunder to the applicable

(Page 20)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

Assignee and, following payment of any Amounts related thereto and except as expressly set forth in the Purchase Agreement, this Order or the Bidding Procedures Order shall divest the Debtors of all liability with respect to such Designation Leases for any breach of such Lease occurring after the applicable Lease Assignment Closing Date; *provided, however*, that prior to the Lease Assignment Closing Date, nothing herein shall relieve the Debtors of their obligations under the Designation Leases pursuant to the Bankruptcy Code.  Upon instruction from the Buyer, the Debtors shall file and serve on the applicable landlord a *Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases*, in substantially the form attached hereto as <u>Exhibit D</u> and with such modifications as are necessary to conform to the terms of the Purchase Agreement and this Order (an "<u>Assignment and Assumption Notice</u>"), together with a proposed Assignment and Assumption Order, substantially in the form attached as <u>Exhibit C</u> hereto.

11.     Any party seeking to object to the assumption and assignment of any Designation Lease (an "<u>Assignment and Assumption Objection</u>") must do so in accordance with the procedures outlined in the Assignment and Assumption Notice.

12.     If no Assignment and Assumption Objection is filed by the Assumption Objection Deadline, the Debtors may submit to the Court the Assignment and Assumption Order attached to the Assignment and Assumption Notice, under certification of counsel and without further notice or hearing.

13.     If an Assignment and Assumption Objection is timely filed and not withdrawn, the Debtors, the Buyer and the objecting landlord shall have authority to compromise, settle or

(Page 21)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

otherwise resolve any objections without further order of the Court. If the Debtors, the Buyer and the objecting landlord determine that the objection cannot be resolved without judicial intervention, then the Debtors, with the consent of the Buyer, shall schedule a hearing on such objection in accordance with the Rejection and Assumption Procedures Order.

14.     All entities are hereby forever prohibited and permanently barred, estopped and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Designation Rights to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

15.     Effective as of the Closing Date, the sale and assignment of the Designation Rights by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Designation Rights, notwithstanding any requirement for approval or consent by any person, and will vest the Buyer with all right, title and interest of the Debtors in and to the Designation Rights, free and clear of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

16.     Subject to the terms of an Assignment and Assumption Order entered as to any Designation Lease, such Designation Lease shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and Interests of any kind, pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code.

17.     The provisions of this Order authorizing the sale and transfer of the Designation Rights free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer

(Page 22)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of this Order. For the avoidance of doubt, on or after the Closing Date, the Debtors and/or the Buyer shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Interests on the Designation Rights pursuant to the terms of this Order.

18.     This Order shall be (i) effective as a determination that, as of the Closing Date, all Interests on the Designation Rights (except as otherwise expressly assumed under, or expressly permitted by, the Purchase Agreement) shall be unconditionally released, discharged and terminated as to the Buyer and the Designation Rights; and (ii) binding upon all persons and entities, including all the Debtors' creditors and any holder of an Interest on the Designation Rights to any of the Designation Leases, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests on the Designation Rights, if any. If any person or entity that has filed a financing statement, mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interests on the Designation Rights has not delivered to the Debtors on or before the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Designation Rights, the Debtors and/or the Buyer are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction or other documents with

(Page 23)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

respect to the Designation Rights on behalf of the applicable person or entity; and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Designation Rights.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

19.     Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Designation Rights to the Buyer in accordance with the Purchase Agreement and this Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order, or in seeking assignment of a Designation Lease to an Affiliate of the Buyer at the direction of the Buyer consistent with the Purchase Agreement.

**IV.     No Successor or Other Derivative Liability**

20.     By virtue of the Sale Transaction, the Buyer and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, de facto or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and, except as provided in the Purchase Agreement, the Buyer has not assumed nor is it in any way responsible for any liability or

| (Page 24) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

obligation of the Debtors or the Debtors' estates. Except as expressly set forth in the Purchase Agreement, the Buyer and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any assumed and assigned Designation Lease prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

21.     Subject to any other orders of this Court and the requirements of the Purchase Agreement, if, prior to each Lease Assignment Closing, the Debtors do not remove FF&E and Trade Fixtures in any applicable Designated Store, such FF&E and Trade Fixtures shall be deemed abandoned to the Buyer or the applicable Assignee effective upon the Lease Assignment Closing pursuant to section 554 of the Bankruptcy Code.  For the avoidance of doubt, and except as may be further negotiated by the Debtors and the Buyer, the Debtors shall remove all inventory prior to each Lease Assignment Closing.

(Page 25)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

## V.    Other Provisions

22.    The Purchase Agreement may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on either the Debtors or the Buyer.

23.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, (i) to allow the Buyer to give the Debtors any notice provided for in the Purchase Agreement, (ii) to allow the Buyer to take any and all actions permitted by the Purchase Agreement in accordance with the terms and conditions thereof, including, without limitation, effectuating the Sale Transaction and (iii) to otherwise implement the terms and provisions of the Purchase Agreement and this Order.

24.    The Sale Transaction is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Designation Rights, free and clear of claims, unless such authorization is duly stayed before the closing of the sale of Designation Rights pending such appeal.  The Buyer is a good faith purchaser of the Designation Rights and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Order.

(Page 26)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

25.     Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement or the Sale Transaction.

26.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal will be foreclosed as moot.

27.     No bulk sales laws, bulk sales tax law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

28.     In the event that there is a direct conflict between the terms of this Order, the Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Order, the Purchase Agreement, and any documents executed in connection therewith shall govern, in that order. Except as agreed by the Buyer and Debtors, nothing contained

| | |
|---|---|
| (Page 27) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

in any chapter 11 plan hereinafter confirmed in these Chapter 11 Cases, any order confirming such plan, or in any other order of any type or kind entered in these Chapter 11 Cases (including any order entered after any conversion of any or all of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

29.    Notwithstanding anything to the contrary in this Order, the Auction Procedures, Bidding Procedures Order, any Assumption and Assignment Notice, any Assumption and Assignment Order, Purchase Agreement, the Assignment Agreement, side letter(s), or any document or agreement related to any of the forgoing, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors,  and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assumed and assigned, assigned, or otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator; provided, however, that, to the extent any claim with respect to any Designated Lease arises that is covered by any of the Debtors' insurance policies, the Debtors may pursue such claim in accordance with the terms of the applicable insurance policy, and, if applicable, turn over to Buyer any such insurance proceeds (each, a "Proceed Turnover"),

(Page 28)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

provided, further, however, that none of the Debtors' insurers shall not have any duty to Buyer  to effectuate a Proceed Turnover or liability to Buyer related to a Proceed Turnover.

30.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in the Chapter 11 Cases, the terms of this Order shall govern.

31.     The provisions of this Order are non-severable and mutually dependent.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

33.     This Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Order or the Purchase Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

34.     All time periods set forth in this Order and the Purchase Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

## Exhibit A

**Designation Leases**

| Store # | Location Code | Location Address |
|---------|---------------|------------------|
| 5199 | 05199-01 | 17220 REDMOND WAY NORTHEAST, REDMOND, WA, 98052 |
| 5225 | 05225-01 | 17171 BOTHELL WAY, NE, STE.150, LAKE FOREST PARK, WA, 98155 |
| 5386 | 05386-01 | 915 NORTHEAST D STREET, GRANTS PASS, OR, 97526 |
| 5395 | 05395-01 | 1900 SW COURT PLACE, PENDLETON, OR, 97801 |
| 5464 | 05464-01 | 11096 JEFFERSON BOULEVARD, CULVER CITY, CA, 90230 |
| 5512 | 05512-02 | 8447 ALONDRA  BOULEVARD, PARAMOUNT, CA, 90723 |
| 5529 | 05529-01 | 647 FOOTHILL BOULEVARD, LA CANADA FLINTRIDGE, CA, 91011 |
| 5775 | 05775-02 | 2400 B LAS POSAS ROAD, CAMARILLO, CA, 93010 |
| 5807 | 05807-02 | 2501 HIGHWAY 46, WASCO, CA, 93280 |
| 6195 | 06195-01 | 9000-A MING AVENUE, BAKERSFIELD, CA, 93311 |
| 6939 | 06939-01 | 5500 OLYMPIC DR, GIG HARBOR, WA, 98335 |
| 11122 | 11122-01 | 284 EAST LANCASTER AVENUE, WYNNEWOOD, PA, 19096 |

## Exhibit B

**Purchase Agreement**

**ASSET PURCHASE AGREEMENT**

by and among

**THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY and
THRIFT DRUG, INC.**
collectively, as Seller,

and

**FIVE BELOW, INC.**
as Buyer

August                    , 2025

<u>**TABLE OF CONTENTS**</u>

<u>**PAGE**</u>

ARTICLE 1      Definitions ...................................................................................................1

    Section 1.1    Definitions .............................................................................................. 1

ARTICLE 2      Agreement; Purchase Price .........................................................................7

    Section 2.1    Agreement to Sell and Purchase the Designation Rights ................................. 7
    Section 2.2    Payments. ............................................................................................... 7
    Section 2.3    Agreement to Assign the Designated Leases .............................................. 8
    Section 2.4    Cure Costs .............................................................................................. 8

ARTICLE 3      Deposit.........................................................................................................8

    Section 3.1    Deposit.................................................................................................... 8

ARTICLE 4      Election to Assume/Take Assignment of Designated Leases ...........................8

    Section 4.1    Election .................................................................................................. 8
    Section 4.2    Seller's Obligations During Designation Rights Period.................................... 9
    Section 4.3    Assumption............................................................................................ 10

ARTICLE 5      Personal Property/FF&E and Trade Fixtures ...................................................11

    Section 5.1    Removal................................................................................................ 11

ARTICLE 6      Inspection and Confidentiality .....................................................................11

    Section 6.1    Access .................................................................................................. 11

ARTICLE 7      Conditions Precedent, Casualty Damage or Condemnation .............................12

    Section 7.1    Conditions Precedent For Lease Assignment Closings Favoring Buyer. ......... 12
    Section 7.2    Conditions Precedent Favoring the Seller ................................................. 13
    Section 7.3    Risk of Casualty and Condemnation. ........................................................ 13

ARTICLE 8      Representations, Warranties and Covenants ....................................................14

    Section 8.1    Buyer Representations............................................................................ 14
    Section 8.2    Seller Representations ............................................................................ 15
    Section 8.3    Notice of Breach.................................................................................... 16

ARTICLE 9      Bankruptcy Court Matters ............................................................................17

    Section 9.1    Bankruptcy Court Matters ...................................................................... 17

ARTICLE 10    Lease Assignment Closings...........................................................................18

    Section 10.1  Time and Place of Lease Assignment Closings. ........................................ 18
    Section 10.2  Seller's Deliveries ................................................................................. 18
    Section 10.3  Buyer's Deliveries ................................................................................. 19
    Section 10.4  Closing Costs........................................................................................ 19

i

## TABLE OF CONTENTS
### (continued)

**PAGE**

ARTICLE 11      No Real Estate Commission ................................................................................20

ARTICLE 12      Default .............................................................................................................20
    Section 12.1    Buyer Default ................................................................................. 20
    Section 12.2    Seller Default.................................................................................. 21
    Section 12.3    Breach of Representations. ............................................................. 22

ARTICLE 13      Miscellaneous ..................................................................................................22
    Section 13.1    Entire Agreement ........................................................................... 22
    Section 13.2    Binding on Successors and Assigns ............................................... 22
    Section 13.3    Assignment by Buyer ..................................................................... 22
    Section 13.4    Waiver ............................................................................................ 22
    Section 13.5    Governing Law; Jurisdiction ......................................................... 23
    Section 13.6    Counterparts ................................................................................... 23
    Section 13.7    Notices............................................................................................ 23
    Section 13.8    Time Periods................................................................................... 24
    Section 13.9    Modification of Agreement ............................................................ 25
    Section 13.10  Further Instruments ........................................................................ 25
    Section 13.11  Descriptive Headings; Word Meaning ........................................... 25
    Section 13.12  Time of the Essence ....................................................................... 25
    Section 13.13  Construction of Agreement ............................................................ 25
    Section 13.14  Limitations on Liability.................................................................. 25
    Section 13.15  Severability..................................................................................... 25
    Section 13.16  Joint and Several ............................................................................ 26

<u>Exhibits and Schedules</u>

Exhibit A:          Form of Sale Order

Exhibit B:          Form of Assumption and Assignment Order

Schedule A:         Leases (including Gross Rent and Cure Costs)

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "Agreement") is dated as of August ___, 2025 (the "Effective Date") by and among (a) **THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY and THRIFT DRUG, INC.** (collectively, the "Company" and individually or collectively, as the context may require, "Seller"), and (b) **FIVE BELOW, INC**. (together with its permitted designees, successors and assigns, "Buyer").

## RECITALS

A.      Commencing on May 5, 2025 (the "Petition Date"), each Seller and certain of their respective Affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court" and such bankruptcy proceeding, the "Bankruptcy").

B.      Each applicable Seller is the owner of the tenant's or lessee's interest in those certain existing real property leases briefly described (and noted as belonging to it) on Schedule A (all of Seller's right, title and interest in, to and under such real property leases, each a "Lease" and collectively the "Leases") relating to certain store locations (the address of which, August Rent and anticipated cure costs are also noted on such Schedule A for each applicable Lease) operated, or previously operated, by the Company or any of its Affiliates (each a "Store" and collectively the "Stores").

C.      Pursuant to an order issued by the Bankruptcy Court which is consistent with the terms of this Agreement, which approves the transactions contemplated herein pursuant to section 363 of the Bankruptcy Code, and which order shall be substantially in the form of Exhibit A attached hereto and acceptable to Buyer in Buyer's sole discretion (such order, the "Sale Order"), Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, subject to and upon the terms and conditions contained in this Agreement, the Designation Rights.

D.      Upon issuance of the Sale Order, the Designation Rights shall be granted to Buyer and pursuant thereto, upon the terms and conditions set forth herein, Buyer shall have the right to acquire, or designate an Assignee to acquire, and Seller agrees to assume and assign to Buyer or such designated Assignee, the Designated Leases upon the issuance of an Assumption and Assignment Order by the Bankruptcy Court and otherwise on the terms and conditions set forth herein.

**NOW, THEREFORE,** in consideration of the mutual promises hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE 1
### Definitions

**Section 1.1    Definitions**.  Capitalized terms used in this Agreement shall have the meanings set forth below:

"<u>Additional Cash Consideration</u>" shall mean Seventy Thousand and No/Dollars ($70,000.00) per Designated Lease for which the Bankruptcy Court enters a final order assigning such Designated Lease to Buyer in excess of five (5) Designated Leases.

"<u>Affiliate</u>" shall mean, with respect to any Person, any other Person that, directly or indirectly, Controls, is Controlled by or is under common Control with such Person. The term "<u>Affiliated</u>" shall have the correlative meaning.

"<u>Agreement</u>" shall mean this Agreement, including all Exhibits and Schedules attached hereto, as the same may be amended, modified or supplemented from time to time in writing by Seller and Buyer.

"<u>Assignee</u>" shall mean an Affiliate of Buyer designated by Buyer to take an assignment of a Designated Lease, by written notice to Seller, which designation can be made by Buyer in its sole and absolute discretion.

"<u>Assumption and Assignment Notice</u>" shall mean a notice provided by Seller to each landlord with respect to a Designated Lease made in accordance with and pursuant to the terms set forth in the Assumption and Assignment Order.

"<u>Assumption and Assignment Order</u>" shall have the meaning set forth in <u>Section 9.1</u>.

"<u>August Rent</u>" shall mean the amount shown in the column identified as "Monthly Rent" on <u>Schedule A</u> for all Leases.

"<u>Bankruptcy Code</u>" shall mean Title 11, United States Code, 11 U.S.C. §§ 101-1532.

"<u>Bankruptcy Court</u>" shall have the meaning set forth in <u>Recital A</u>.

"<u>Bidding Procedures Order</u>" shall mean the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* [Docket No. 473].

"<u>Broker</u>" shall have the meaning set forth in <u>Article 11</u>.

"<u>Business Day</u>" shall mean any day of the week other than (a) Saturday and Sunday, (b) a day on which banking institutions in the State of New York are obligated or authorized by law or executive action to be closed to the transaction of normal banking business, or (c) a day on which governmental functions in New York, New York or the State of New York are interrupted because of extraordinary events such as hurricanes, power outages, declarations of national or local emergency or acts of terrorism.

"<u>Buyer</u>" shall have the meaning set forth in the preamble of this Agreement.

2

"Buyer Assumption Notice" shall have the meaning set forth in Section 4.1.

"Buyer Representations" shall have the meaning set forth in Section 8.1.

"Buyer Representatives" shall have the meaning set forth in Section 6.1.

"Carrying Costs" means, with respect to any Store, all expenses related to utilities, property taxes and assessments, insurance policies maintained as set forth in Section 4.2(d), property loss (beyond any applicable insurance proceeds and so long as Seller or the landlord under the relevant Lease, as applicable, has maintained all applicable insurance policies as provided by this Agreement and the Leases and including, other than with respect to any Store that Buyer or an Assignee is not taking an assignment of, the amount of any deductible allocated to such loss) and the continuation of existing levels of maintenance and security services in the manner and to the extent existing as of the Petition Date, or required under the Lease, which are not included in August Rent and which expenses are attributable to the period commencing as of the Effective Date and ending on the earlier of: (i) the Lease Assignment Closing for such Store or (ii) one (1) day after the effective date of rejection of the Lease applicable to such Store, so long as Seller has promptly filed a motion to reject such Lease (which order shall contain a future effective date of rejection that is acceptable to Buyer) upon the earlier of: (x) the business day following the date that Buyer notifies Seller in accordance with the terms hereof that it does not desire to assume such Lease, or (y) the Expiration Date. In addition, Carrying Costs shall include an amount equal to September Rent, October Rent and November Rent (each as applicable) with respect to the applicable amounts due to such landlords.

"Cash Consideration" shall mean the sum of Three Hundred Fifty Thousand and No/100 Dollars ($350,000.00).

"Code" shall mean the Internal Revenue Code of 1986, and all amendments thereto and all regulations issued thereunder.

"Consequential Damages" shall mean, with respect to an indemnified matter, consequential, speculative, punitive or similar special damages incurred by the indemnified party.

"Control" shall mean, with respect to any Person, (a) the ownership of more than fifty percent (50%) of the Equity Interests of such Person or (b) the power (whether or not exercised) to elect a majority of the directors or managers of such Person or to exercise voting control of such Person or to otherwise direct or cause the direction of the management and policies of such Person through the ownership of Equity Interests, whether by contract or otherwise. The terms "Controlled by", "Controlling" and "under common Control with" shall have their respective correlative meanings.

"Cure Costs" shall have the meaning set forth in Section 2.4.

"Deposit" shall have the meaning set forth in Section 3.1.

"Designated Leases" shall mean the Leases designated by Buyer pursuant to the provisions of Section 4.1.

3

"Designation Rights" shall mean the exclusive right to irrevocably, subject to the express provisions herein, select, identify and designate (on one or more occasions) Leases as Designated Leases in respect of which Buyer, or its Assignee, will, subject to the terms and conditions provided for in this Agreement and the Sale Order, acquire all of Seller's right, title and interest in and to the applicable Designated Leases, together with all of Seller's right, title and interest in and to certain related assets as set forth in Article 4.

"Designation Rights Period" shall mean, with respect to any Lease, the period commencing on the date that the Sale Order becomes a final order and ending on the date which is the earliest of (i) the date on which such Lease is assumed and assigned to Buyer or an Assignee, (ii) the date on which Seller has received a written notice from Buyer that Buyer has elected not to designate such Lease as a Designated Lease (an "Undesignated Lease"), and (iii) the Expiration Date (or, to the extent the landlord with respect to the applicable Lease consents to the extension of the deadline for assumption or rejection of such Lease to a later date, such later date as is reasonably acceptable to Seller and Buyer).

"Designated Store" shall mean a Store that is the subject of a Designated Lease.

"DIP Agent" shall have the meaning given to such term in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 1396].

"Effective Date" shall have the meaning set forth in the Preamble of this Agreement.

"Expiration Date" shall have the meaning set forth in Section 4.1.

"Final Closing Statement" shall have the meaning set forth in Section 10.4(b).

"FF&E and Trade Fixtures" shall mean any kind of point of sale equipment and furniture, fixtures, and equipment (including but not limited to, machinery, rolling stock, office equipment and personal property, conveyor systems, racking, shelving, checkout counters, partitions, any kind of furniture, and window treatments) owned by Seller.

"Governmental Authorities" shall mean, collectively, any government, court, regulatory or administrative agency, commission or authority or other governmental instrumentality, federal, state, municipal or local, domestic, foreign or multinational entity or body having jurisdiction over (a) the Person in question or (b) the applicable Store or any part thereof.

"Laws and Regulations" shall mean, collectively, all present and future applicable building, fire, sanitary, zoning, environmental, housing and other statutes, laws, ordinances, codes, orders, restrictions, resolutions, requirements, rules and regulations of all Governmental Authorities having jurisdiction with respect to the Leases or Stores or any thereof, including, without limitation, landmark designations and all zoning variances and special exceptions, if any.

"Lease" or "Leases" shall have the meaning set forth in Recital B.

"<u>Lease Assignment Closing</u>" shall mean the consummation of the assignment of any Designated Leases as contemplated pursuant to the terms of this Agreement.

"<u>Lease Assignment Closing Date</u>" shall have the meaning set forth in <u>Section 4.1.</u>

"<u>Losses</u>" shall mean, with respect to a particular indemnified matter, any and all claims, demands, causes of action, losses, liabilities, costs and expenses (including reasonable attorneys' fees, court costs and disbursements) arising from or in connection with such matter, but excluding in all cases Consequential Damages.

"<u>November Rent</u>" shall mean an amount equal to (i) the base rent plus (ii) common area maintenance expenses, taxes, insurance and all other charges, all in amounts calculated in the same manner as such amounts were used in the definitions of August Rent for all Leases for which the an Assumption and Assignment Order has not been entered or Seller has not received direction from Buyer to reject prior to 5:00 pm (ET) on October 31, 2025, to the extent such amounts are due (x) to the applicable landlords of the Leases with respect to such amounts due to such landlords and (y) as a result of any delay caused by Buyer which would prevent the assumption and assignment to a third-party or rejection of such Lease in an orderly manner to be deemed effective prior to the date such amounts are due.  For the avoidance of doubt, November Rent shall not include the prorated portion of such obligation for the period prior to the conclusion of any store closure sale.

"<u>October Rent</u>" shall mean an amount equal to (i) the base rent plus (ii) common area maintenance expenses, taxes, insurance and all other charges, all in amounts calculated in the same manner as such amounts were used in the definitions of August Rent for all Leases for which the an Assumption and Assignment Order has not been entered or Seller has not received direction from Buyer to reject prior to 5:00 pm (ET) on September 30, 2025, to the extent such amounts are due (x) to the applicable landlords of the Leases with respect to such amounts due to such landlords and (y) as a result of any delay caused by Buyer which would prevent the assumption and assignment to a third-party or rejection of such Lease in an orderly manner to be deemed effective prior to the date such amounts are due.  For the avoidance of doubt, October Rent shall not include the prorated portion of such obligation for the period prior to the conclusion of any store closure sale.

"<u>OFAC</u>" shall mean the Office of Foreign Assets Control of the Department of Treasury.

"<u>Ordinary Course</u>" shall mean the ordinary and usual course of operations of a Store, consistent with past custom and practice, consistent with general leasing practices, and taking into account the preparation, commencement and pendency of the Bankruptcy, including store closing sales.

"<u>Parties</u>" shall mean, collectively, Seller and Buyer.

"<u>PDF</u>" shall have the meaning set forth in <u>Section 13.6.</u>

"<u>Person</u>" shall mean any individual, estate, trust, partnership, limited liability company, limited liability partnership, corporation, governmental agency or other legal entity and any unincorporated association.

"<u>Petition Date</u>" shall have the meaning set forth in <u>Recital A</u>.

"<u>Preliminary Closing Statement</u>" shall have the meaning set forth in <u>Section 10.4(b)</u>.

"<u>Purchase Price</u>" shall mean the Cash Consideration and the Cure Costs.

"<u>Remaining Lease Carrying Cost Reimbursement Date</u>" shall mean (i) with respect to any Lease for which Seller has received a notice from Buyer that Buyer has elected not to designate such Lease as a Designated Lease, the date that is one (1) day after the effective date of an order issued by the Bankruptcy Court either (x) rejecting the Lease applicable to such Store, or (y) approving the assumption of the Lease by Seller and the assignment of the Lease to a third-party, or (ii) for Leases that are not covered by (i) above, the Expiration Date.

"<u>Sale Order</u>" shall have the meaning set forth in <u>Recital C</u>.

"<u>Seller</u>" shall have the meaning set forth in the preamble of this Agreement.

"<u>Seller Failure</u>" shall have the meaning set forth in <u>Section 12.2</u>.

"<u>Seller Parties</u>" shall mean Seller, its Affiliates and its and their direct and indirect owners, agents, officers, directors, trustees, advisors, brokers, managers, members, partners, employees, representatives, principals, Affiliates, contractors, attorneys, accountants and other consultants, or the successors and assigns of any of the foregoing parties.

"<u>Seller Representations</u>" shall mean the representations and warranties of Seller expressly set forth in <u>Section 8.2</u>.

"<u>September Rent</u>" shall mean an amount equal to (i) the base rent plus (ii) common area maintenance expenses, taxes, insurance and all other charges, all in amounts calculated in the same manner as such amounts were used in the definitions of August Rent for all Leases for which the an Assumption and Assignment Order has not been entered or Seller has not received direction from Buyer to reject prior to 5:00 pm (ET) on August 31, 2025, to the extent such amounts are due (x) to the applicable landlords of the Leases with respect to such amounts due to such landlords and (y) as a result of any delay caused by Buyer which would prevent the assumption and assignment to a third-party or rejection of such Lease in an orderly manner to be deemed effective prior to the date such amounts are due. For the avoidance of doubt, September Rent shall not include the prorated portion of such obligation for the period prior to the conclusion of any store closure sale.

"<u>Store</u>" or "<u>Stores</u>" shall have the meaning set forth in <u>Recital B.</u>

"<u>Undesignated Lease</u>" shall have the meaning set forth in the definition of "Designation Rights Period".

## ARTICLE 2
## Agreement; Purchase Price

**Section 2.1** **Agreement to Sell and Purchase the Designation Rights**. In consideration of the payment of the Cash Consideration and the other payments as made and identified in <u>Section 2.2</u> below and for other good and valuable consideration, effective immediately upon the entry of the Sale Order, and without any further action of Seller or any other Person, Seller hereby (i) grants to Buyer the Designation Rights, and (ii) agrees to sell, assign, transfer and convey, at Buyer's option, Seller's right, title and interest in and to the applicable Designated Leases to Buyer and Buyer hereby (A) accepts such grant of the Designation Rights and (B) agrees to purchase, acquire, accept and assume, as applicable, Seller's right, title and interest in and to the applicable Designated Leases from Seller, subject to and in accordance with the terms and conditions of this Agreement. For the avoidance of doubt, the sale, transfer, assignment and conveyance of the Designation Rights provided for herein shall not effectuate a sale, transfer, assignment or conveyance of any Lease of Seller to Buyer or an Assignee, which shall only be effectuated on a Lease Assignment Closing. Buyer acknowledges that, until the expiration of the Designation Rights period with respect to each Lease, Seller shall not reject the Leases in connection with the Bankruptcy in reliance upon Buyer's agreement to purchase the Designated Rights upon the terms and conditions set forth in this Agreement.

**Section 2.2** **Payments**.

(a)      The following amounts shall be paid by Buyer to Seller as consideration for the purchase and sale of the Designation Rights as follows: (i) within one (1) Business Day after entry of the Sale Order, Buyer shall pay to Seller an amount equal to the Cash Consideration less the amount of the Deposit, and at such time the full amount of the Cash Consideration (which includes the Deposit) shall be deemed released to and earned by Seller, (ii) for certain Leases identified on Schedule A as having closed for business in July 2025, within one (1) Business Day following entry of the Sale Order, Buyer shall pay to Seller an amount equal to August Rent, which Seller shall pay directly to the applicable landlords of the Leases with respect to such amounts due to such landlords or, if Seller has already paid such amounts, shall be retained by Seller as reimbursement thereof, (iii) for three leases that Buyer elected, prior to the date hereof, to remove as a Lease, the sum of $45,175.62, and (iv) in the event that the Bankruptcy Court enters orders assigning six (6) Leases to Buyer, then Buyer shall pay to Seller the Additional Cash Consideration for each additional Lease over five (5) Leases successfully assumed and assigned to Buyer or an Assignee.

(b)      Seller shall credit Buyer the sum of Four Hundred Twenty Thousand and 00/100 Dollars ($420,000.00), to be applied first against the Cash Consideration (but not the Deposit) , second against Buyer's obligation to pay August Rent and third against Buyer's obligation to pay September Rent.

(c)      For August Rent, September Rent, October Rent and/or November Rent for any Store that has not completed its going-out-of-business sale and closed as of the first day of the month in which the applicable rent obligation is due: (x) Seller shall give Buyer at least five (5) business days' notice of the final day of operation for the applicable Store provided in such notice from Seller, at which time Buyer may, no later than 5:00 p.m. ET on the day two (2) days prior to

the final day of operation for the applicable Store, give Seller written notice that it has elected not to designate such Lease as a Designated Lease; (y) if Buyer does not timely provide the written notice described in (x) to Seller, Buyer shall be obligated to pay August Rent, September Rent, October and/or November Rent, as applicable, on a pro-rated basis commencing on the first day after the Seller ceases operation of the applicable Store through the end of the applicable month; and (z) if Buyer does timely provide the written notice described in (x) to Seller, Buyer shall not be obligated to pay August Rent, September Rent, October and/or November Rent, as applicable, for the applicable Store.

Section 2.3   **Agreement to Assign the Designated Leases**. Effective immediately upon the entry of the Sale Order, but subject to the entry of any applicable Assumption and Assignment Order, Seller hereby agrees to sell, assign, transfer and convey, at Buyer's option, Seller's right, title and interest in and to the applicable Designated Leases to Buyer, or an Assignee, and Buyer, or such Assignee, shall purchase, acquire, accept and assume Seller's right, title and interest in and to the applicable Designated Leases from Seller, subject to and in accordance with the terms and conditions of this Agreement.

Section 2.4   **Cure Costs**.   With respect to each Designated Lease, on the Lease Assignment Closing Date relating to such Designated Lease, Buyer shall pay to Seller for further payment to the applicable landlord for such Designated Lease an amount equal to the cure costs approved by the Bankruptcy Court (adjusted to the extent such amounts differ from the amounts as shown in the column identified as "Cure Schedule" on Schedule A as a result of an agreement between Buyer and the applicable landlord) for such Designated Lease (the "Cure Costs").

## ARTICLE 3
## Deposit

Section 3.1   **Deposit**. Seller acknowledges that Buyer has paid into escrow an amount equal to Thirty-Five Thousand and No/100 Dollars ($35,000.00) (the "Deposit"). The Deposit, currently being held in a segregated account by Kroll Restructuring Administration, LLC, (which shall include for all purposes all interest thereon) shall be applied to the Cash Consideration in accordance with Section 2.2 hereof or otherwise held and disbursed in accordance with the terms and provisions hereof.

## ARTICLE 4
## Election to Assume/Take Assignment of Designated Leases

Section 4.1   **Election**. Subject to the terms and conditions of this Agreement, any Assumption and Assignment Order and the requirements of section 365(b) of the Bankruptcy Code, by no later than 5:00 p.m. ET on October 31, 2025 (the "Expiration Date"), Buyer may, by written notice to Seller (a "Buyer Assumption Notice"), designate one or more of the Leases for assumption and assignment, in Buyer's sole and absolute discretion, which can be exercised with respect to any number, or none, of the Leases prior to the Expiration Date. Such notice shall provide the following information: (i) the Lease being assumed and assigned, (ii) the identity of the Assignee, if any, (iii) the identity of the landlord with respect to the applicable Lease, and (iv) the Cure Costs associated with the applicable Lease. Buyer (or its Assignee), at Buyer's sole cost and expense, shall have the exclusive right to take an assignment of any Leases and to

negotiate with the landlords with respect thereto (it being understood that, upon written notification by Buyer to Seller that Buyer will not elect to have a Lease assigned to it, Seller shall have the right to then reject or assign such Lease to another party in Seller's sole and absolute discretion). The Designation Rights shall terminate at 5:00 p.m. ET on the Expiration Date. Within one (1) Business Day following the date of Seller's receipt of a Buyer Assumption Notice, Seller shall file with the Bankruptcy Court and serve on the applicable landlord(s) and other appropriate notice parties (as applicable) an appropriate notice and shall seek entry by the Bankruptcy Court of an Assumption and Assignment Order in respect of the Designated Lease or Designated Leases subject to such Buyer Assumption Notice. The Parties agree to close the assumption and assignment of any Designated Leases on the first (1st) Business Day after an Assumption and Assignment Order is entered by the Bankruptcy Court (each, as applicable, a "Lease Assignment Closing Date").

**Section 4.2    Seller's Obligations During Designation Rights Period**. During the Designation Rights Period, Seller shall be obligated as follows:

(a)    Subject to reimbursement by Buyer to Seller as provided in Section 10.4 below, Seller shall pay when due any and all Carrying Costs with respect to each Store as required under the related Lease in such amounts as are required under the terms of the applicable Lease and any other applicable agreement to which Seller or any of its Affiliates is a party pertaining to such Store or the related Lease. Seller shall not pay any amount due from Seller pursuant to any provision of this Agreement using any security deposit associated with any Store, Lease or other related agreement.

(b)    During the Designation Rights Period, Seller shall not, and shall not solicit any other Person to, (A) sell, transfer, assign, convey, lease, license, mortgage, pledge or otherwise encumber any Store, related Lease or related asset (other than with respect to any Undesignated Lease and its related Store), (B) modify, amend or replace any Lease in any fashion (provided that, in consultation with the DIP Agent, Seller shall use commercially reasonable efforts to comply with all instructions from Buyer as to the renewal or extension (or lack of renewal or extension) of each Lease that comes up for renewal), (C) enter into any new leases or related agreements with respect to any Store (other than the applicable Store with respect to any Undesignated Lease), (D) grant or terminate any other interests in any Store, related Lease or related asset (other than with respect to any Undesignated Lease and its related Store) or (E) seek or obtain an order approving rejection of a Lease unless Buyer has delivered a written notification to Seller that Buyer will not elect to have such Lease assigned to it.

(c)    During the Designation Rights Period, Seller shall provide Buyer with full access to a data room containing complete copies of all Leases (including, without limitation, all material notices, if any, delivered by any Person pursuant thereto or in connection therewith to the extent in Seller's or any of its Affiliates' possession or reasonable control) and shall respond promptly to any reasonable requests during normal business hours by Buyer for further information regarding the Leases of the Stores.

(d)    During the Designation Rights Period, Seller shall use commercially reasonable efforts (it being agreed that Seller shall not be obligated to expend any funds or grant any concessions to any landlord under the Leases as part of its commercially reasonable efforts) to

9

cause the landlords under the Leases to maintain the insurance policies that are required under the Leases with respect to the Stores and the shopping centers in which the Stores are located.

(e)    During the Designation Rights Period, Seller shall continue all insurance policies with respect to the Stores, of the amounts and of the types presently in force and required to be maintained by Seller under any applicable Lease, until the end of the Designation Rights Period in such amounts as it currently has in effect or, if greater, in such amounts as required under any Lease.

(f)    During the Designation Rights Period, Seller shall continue to perform repairs and maintenance and provide security services at the Stores in the manner as required under the Leases to maintain normal operations in accordance with past practices, ordinary wear and tear excepted.

(g)    During the Designation Rights Period, Seller shall use commercially reasonable efforts (it being agreed that Seller shall not be obligated to expend any funds or grant any concessions to any landlord under the Leases as part of its commercially reasonable efforts) to cause the landlords under the Leases to perform such parties' covenants, agreements and obligations under the Leases (including repair and maintenance obligations) with respect to the Stores and the shopping center in which the Stores are located.

**Section 4.3    Assumption.**

(a)    With respect to any Designated Lease:

(i)    Buyer and Seller shall each use commercially reasonable efforts to accomplish, and shall fully cooperate with each other in, the resolution of any objections to the proposed assumption and assignment of such Lease, provided that Seller shall have no requirement to contribute to any Cure Costs or Carrying Costs as provided by Section 10.4(a), and, provided further, that Buyer shall use commercially reasonable efforts to cause any Assignee to use such efforts as required; and

(ii)    Unless otherwise agreed upon by Buyer and Seller, other than for the payment of August Rent (as applicable and provided that the amounts paid hereunder to Seller for August have been distributed to the applicable landlords), Cure Costs and Carrying Costs as provided by Section 10.4(a), Buyer shall have no liability or obligation with respect to any liabilities, claims, damages or other obligations of any Seller under such Lease or otherwise with respect to the Store subject to such Lease (including with respect to any related assets sold, transferred, assigned and conveyed together with such Lease), to the extent arising through and including the Lease Assignment Closing Date.

(b)    Unless provided otherwise in this Agreement, each Party shall bear its own costs and expenses of obtaining entry of an Assumption and Assignment Order and otherwise implementing the sale, transfer, assignment, conveyance and delivery of the applicable Lease to the applicable Assignee, including, without limitation, the filing and prosecution of any motions or other papers with respect to the same.

## ARTICLE 5
## Personal Property/FF&E and Trade Fixtures

**Section 5.1    Removal**. Prior to each Lease Assignment Closing, and except as may be further negotiated by Seller and Buyer, Seller shall remove all of its inventory from the applicable Store and may remove its FF&E and Trade Fixtures. In addition and except as may be further negotiated by Buyer and Seller, if, prior to each Lease Assignment Closing, Seller does not remove FF&E and Trade Fixtures in any applicable Designated Store, such FF&E and Trade Fixtures shall be deemed abandoned to Buyer or the applicable Assignee effective upon the Lease Assignment                                                                    Closing.
**Inspection and Confidentiality**

**Section 6.1    Access**.   Subject to the terms hereof, Buyer, personally or through its authorized agents or representatives (the "Buyer Representatives"), shall have the right at its own expense, from the Effective Date through the applicable Lease Assignment Closing Date, to enter during normal business hours into any Store and to make such non-intrusive investigations, including appraisals, engineering studies, soil tests, environmental studies and underwriting analyses, as Buyer deems necessary or advisable; subject to the following conditions and limitations: (a) such entry and investigations shall be conducted at reasonable times and upon forty-eighty hours' prior written notice to Seller; (b) a representative of Seller shall be offered the opportunity to be present during such entry or investigation; (c) such entry or investigations shall be in accordance with applicable Laws and Regulations, the terms and conditions of the applicable Lease, and subject to the rights of any tenants, occupants, or other counterparties under Leases and neither Buyer nor any Buyer Representatives shall interfere with the use, occupancy or enjoyment of the Stores by any such Persons or their respective employees, contractors, customers or guests; (d) neither Buyer nor Buyer Representatives shall damage such Stores or any portion thereof; (e) unless Seller agrees otherwise, before Buyer or Buyer Representatives conduct any investigations or inspections of such Stores (excluding invasive or destructive testing of any kind), including inspections of building systems or any testing or inspections, Buyer or Buyer Representatives, as applicable, shall deliver to Seller a certificate of insurance naming Seller as an additional insured, evidencing commercial general liability insurance (including property damage, bodily injury and death) issued by an insurance company having a rating of at least "A-/VII" by A.M. Best Company, with limits of at least $1,000,000 per occurrence and $5,000,000 in the aggregate for bodily or personal injury or death; (f) without Seller's prior written consent, which Seller may give or withhold in its sole and absolute discretion, Buyer shall not perform any Phase I exams, invasive testing at, on or around such Stores, including, without limitation, any Phase II exams, soil borings or other invasive tests, *provided however,* that where a given Lease does not prohibit Phase I testing or condition such on obtaining landlord approval, Seller consent shall not be required; (g) Buyer shall use commercially diligent efforts to perform all on-site due diligence reviews on an expeditious and efficient basis; and (h) Buyer shall indemnify, hold harmless and defend the Seller Parties from and against all Losses resulting from or relating to any entry and/or inspections conducted by Buyer or Buyer Representatives, including, without limitation, Losses arising out of liens, injury or death to person, or any physical damage to the applicable Store or any other property and incurred in making any and all repairs necessitated to cure any damage to such Stores resulting from such activities but excluding Losses from the mere discovery of conditions existing as of the time of inspection (except to the extent that the existing condition is knowingly exacerbated by Buyer or Buyer Representatives). The foregoing

indemnification obligation shall survive the applicable Lease Assignment Closing or termination of this Agreement. In addition, in connection with any Undesignated Lease and its related Store, Buyer shall use commercially reasonable efforts to deliver to Seller copies of all reports of such inspections, tests and studies, without representation or warranty by, or recourse against, Buyer, it being agreed that Seller shall not rely on such documentation and shall independently verify the accuracy and completeness of said information and/or items contained therein.

## ARTICLE 7
## Conditions Precedent, Casualty Damage or Condemnation

Section 7.1    Conditions Precedent For Lease Assignment Closings Favoring Buyer.

(a)    Buyer's obligations under this Agreement with respect to any Lease Assignment Closings are subject to the timely fulfillment of the conditions set forth in this Section 7.1 on or before any Lease Assignment Closing Date. Each condition may be waived in whole or in part only by written notice of such waiver from Buyer to Seller:

(i)    Seller shall have executed and delivered to Buyer all instruments and documents required to be delivered to Buyer at Lease Assignment Closing under this Agreement;

(ii)    Seller shall have performed and complied in all material respects with all of the other terms of this Agreement to be performed and complied with by it prior to or at a Lease Assignment Closing;

(iii)    Subject to Section 8.4, on any Lease Assignment Closing Date, the Seller Representations as applicable to the Designated Leases which are the subject of any such Lease Assignment Closing Date, shall be true, complete and, to knowledge of Seller, accurate, in all material respects, on and as of the Effective Date and on and as of the Lease Assignment Closing Date as if then remade on and as of the Lease Assignment Closing Date (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects), except that Seller shall not be deemed to have breached the foregoing condition precedent by reason of casualty or condemnation (which shall be governed exclusively by Section 7.3);

(iv)    There shall not be in effect any Order by a Governmental Authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by the applicable Lease Assignment Closings; and

(v)    The Bankruptcy Court shall have entered an Assumption and Assignment Order with respect to the applicable Designated Lease and such order shall be a final order and Seller shall have provided an Assumption and Assignment Notice to each applicable landlord in accordance with the terms and conditions of the Assumption and Assignment Order.

(b)    If the conditions precedent in favor of Buyer set forth above in Section 7.1(a) are not satisfied as of a Lease Assignment Closing Date, Buyer may elect in its sole discretion not later than the Lease Assignment Closing Date, and as its sole remedy, either to: (i) waive such condition and proceed with the Lease Assignment Closing as contemplated by this Agreement (without any reduction in the Purchase Price), it being agreed by Seller that Buyer shall have the

option to elect to waive the failure of a condition as to less than all of the Designated Leases with respect to such Lease Assignment Closing and that Buyer's obligation to proceed with any such Lease Assignment Closing under this Agreement shall be with respect to those of the Designated Leases where such conditions were either timely fulfilled, or were waived in writing by Buyer; (ii) terminate Buyer's obligation to close the transactions contemplated with respect to such Lease Assignment Closing; or (iii) to the extent such failure is the result of a Seller default hereunder beyond applicable notice and cure periods expressly provided for herein, exercise its rights and remedies under <u>Section 12.2</u>.

Section 7.2    **Conditions Precedent Favoring the Seller**.    Seller's obligations with respect to any Lease Assignment Closings are expressly subject to the timely fulfillment of the conditions set forth in this <u>Section 7.2</u> on or before any Lease Assignment Closing Date. Each condition may be waived in whole or part only by written notice of such waiver from Seller to Buyer, it being agreed by Buyer that Seller may elect to waive the failure of a condition as to one or more of the Designated Leases, in which event, Buyer shall have the obligation to proceed to Lease Assignment Closing under this Agreement with respect to those of the Designated Leases where such conditions were either timely fulfilled, or were waived in writing by Seller:

(a)    Buyer shall have executed and delivered to Seller all instruments and documents required to be delivered by Buyer at Lease Assignment Closing under this Agreement;

(b)    Buyer shall have performed and complied in all material respects with all of the terms of this Agreement to be performed and complied with by Buyer prior to a Lease Assignment Closing;

(c)    The Buyer Representations shall be true, accurate and complete in all material respects on and as of the Effective Date and on and as of the Lease Assignment Closing Date as if then remade on and as of the Lease Assignment Closing Date; and

(d)    The Bankruptcy Court shall have entered an Assumption and Assignment Order and such order shall be a final order.

Section 7.3    **Risk of Casualty and Condemnation**.

(a)    If, during the Designation Rights Period, all or any part of any Store (other than a Store (x) that has already been the subject to a Lease Assignment Closing or (y) for which Seller has received a written notice from Buyer (which notice may be an e-mail) that Buyer has elected not to designate the Lease related to such Store as a Designated Lease) is damaged by fire or other casualty or becomes the subject of any eminent domain proceedings, (i) Seller shall promptly give notice to Buyer of such fact and thereafter, promptly following Seller's receipt thereof, (x) with respect to any casualty, an estimate of the cost and time to restore prepared by an architect, insurance examiner, contractor or engineer engaged by Seller and approved by Buyer (which approval shall not be unreasonably withheld, conditioned or delayed) and (y) with respect to any condemnation, to the extent to which the Store will be affected by such condemnation and (ii) Buyer may, at Buyer's option and in its sole discretion, (x) if such casualty or condemnation could reasonably be expected to (1) adversely affect the operation of the applicable Store, (2) require Buyer or the Assignee to incur restoration costs and expenses or (3) trigger any party's right to

13

terminate the applicable Lease pursuant to its terms, remove the Designated Lease relating to such Designated Store from the Leases assumed and assigned on any Lease Assignment Closing Date and proceed to such Lease Assignment Closing in accordance with the terms hereof with respect to the balance of the Leases with no reduction in the Purchase Price or (y) proceed with the Lease Assignment Closing with such Designated Lease included without reduction of or credit against the Purchase Price; provided, however, that Buyer shall participate with Seller in the adjustment and settlement of such casualty insurance claim and Seller shall assign to Buyer at such Lease Assignment Closing, without recourse against Seller, all of Seller's right, title and interest in and to the insurance proceeds, if any, payable on account of such damage (net of collection costs and costs of repair with respect to such casualty reasonably incurred by Seller), including without limitation, rental interruption insurance with respect to periods following the Lease Assignment Closing.

## ARTICLE 8
## Representations, Warranties and Covenants

Section 8.1   **Buyer Representations**.   Subject to the limitations set forth in this Agreement, Buyer hereby represents and warrants to, and covenants with, Seller as follows (the "Buyer Representations"):

(a)     Buyer is a corporation, duly formed, validly existing and in good standing under the State of Pennsylvania. This Agreement constitutes the valid and legally binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to general principles of equity and to bankruptcy, insolvency, reorganization, moratorium or other similar laws presently or hereafter in effect affecting the rights of creditors or debtors generally. Buyer has the power to enter into, execute and deliver this Agreement and to perform its obligations hereunder.

(b)     There are no actions, suits or proceedings pending or, to the knowledge of Buyer, threatened, against or affecting Buyer which, if determined adversely to Buyer, would adversely affect its ability to perform its obligations pursuant to the terms of this Agreement.

(c)     Neither (i) the execution, delivery or performance of this Agreement by Buyer nor (ii) compliance herewith (A) conflicts or will conflict with or results or will result in a breach of or constitutes or will constitute a default under (1) the charter documents or by-laws of Buyer, (2) to the best of Buyer's knowledge, any law or any order, writ, injunction or decree of any court or Governmental Authority, or (3) to the best of Buyer's knowledge, any agreement or instrument to which Buyer is a party or by which it is bound or (B) results in the creation or imposition of any lien, charge or encumbrance upon its property pursuant to any such agreement or instrument.

(d)     No authorization, consent or approval of any Governmental Authority (including courts) is required for the execution and delivery by Buyer of this Agreement or the performance of its obligations pursuant to the terms of this Agreement.

The representations and warranties of Buyer contained in this Section 8.1 shall survive the applicable Lease Assignment Closing, but only to the extent provided in Section 12.3(b).

Buyer acknowledges that it is an experienced and sophisticated operator of retail discount variety stores and that, prior to the Effective Date, it has had a full and complete opportunity to (i)

review all information and documentation relating to the Stores and Leases made available to Buyer by or on behalf of Seller and (ii) conduct such other investigations, examinations, inspections and analyses of the Stores as Buyer has deemed necessary or appropriate. Buyer further acknowledges that, except for the Seller Representations, Buyer has not relied upon any statements, representations or warranties by any Seller Party or any agent of any Seller Party, including Broker.

       **Section 8.2   Seller Representations**.   Subject to the limitations set forth in this Agreement, Seller hereby represents and warrants to Buyer as of the Effective Date as follows (the "Seller Representations"):

       (a)   Sellers are the types of entities and are duly formed, validly existing and in good standing under the laws of, as applicable, the States of their respective formation and the States where the applicable Lease is located, respectively. Upon approval of same by the Bankruptcy Court, Seller has the power to enter into, execute and deliver this Agreement and to perform all duties and obligations imposed upon it hereunder.

       (b)   Subject to the entry and effectiveness of the Sale Order, Seller's execution and delivery of this Agreement and performance of its obligations hereunder have been duly authorized by all necessary action on the part of Seller, and do not violate or conflict with Seller's organizational documents, any judgment, decree or order of any court applicable to or affecting Seller, breach the provisions of or constitute a default under any material contract to which Seller is a party or by which Seller is bound, or violate or conflict with any Laws and Regulations applicable to Seller.

       (c)   There is no action, suit, litigation, hearing or administrative proceeding pending or, to Seller's knowledge, threatened in writing against Seller or any Designated Store or with respect to any Designated Lease in any court, administrative bureau or other regulatory setting, that, if determined adversely to Seller, would reasonably be expected to materially and adversely affect Seller's ability to perform its obligations pursuant to the terms of this Agreement.

       (d)   Seller is not a "foreign person" as such term is defined in Section 1445(e)(3) of the Code.

       (e)   Seller is currently (i) in compliance with, and shall at all times during the term of this Agreement remain in compliance with, the regulations of the OFAC and any statute, executive order (including Executive Order 13224, dated September 24, 2001 and entitled "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"), or regulations relating thereto and (ii) not listed on, and shall not during the term of this Agreement be listed on, the Specially Designated Nationals and Blocked Persons List maintained by OFAC and/or any other similar list maintained by OFAC or any other Governmental Authority pursuant to any authorizing statute, executive order or regulation.

       (f)   Seller has delivered or made available to Buyer true and complete copies of all Leases, and the August Rent and anticipated Cure Costs noted on Schedule A for each applicable Lease are true and, to knowledge of Seller, accurate. Except as a result of the Bankruptcy or as a result of the failure to pay to any applicable Landlord any amounts that are identified as Cure Costs

in <u>Schedule A</u>, neither Seller nor, to the knowledge of Seller, any other party thereto is in default under any of the Leases. Each Lease is in full force and effect and is enforceable against each party thereto in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

(g)    Seller is not a party to any service contracts with respect to the Designated Leases that will be binding on Buyer from and after any applicable Lease Assignment Closing.

(h)    There are no condemnation or eminent domain proceedings pending, or to Seller's knowledge, threatened in writing against any Store.

The representations and warranties of Seller contained in this <u>Section 8.2</u> shall survive the applicable Lease Assignment Closing, but only to the extent provided in <u>Section 12.3(b)</u>. The representations and warranties set forth in this <u>Section 8.2</u> are the only representations and warranties made by Seller with respect to the matters relating to the transactions contemplated in this Agreement. Except as specifically set forth in this Agreement, Seller is selling its right title and interest in and to the applicable Designated Leases to Seller "as is" and "where is" and with all faults, and unless otherwise provided herein, makes no warranty, express or implied, as to any matter whatsoever relating to the Designated Leases or any other matter relating to the transactions contemplated by this Agreement, including as to (i) merchantability or fitness for any particular use or purpose, (ii) the operation of any Store under any Designated Lease after the applicable Lease Assignment Closing, or (iii) the probable success or profitability of any Store under any Designated Lease.

Whenever a representation is qualified by the phrase "to Seller's Actual Knowledge", "to Seller's knowledge" or words of similar import, the accuracy of such representation shall be based solely on the actual (as opposed to constructive or imputed) knowledge of those senior executives of the Company which have principal oversight over the Company's and its subsidiaries' owned and leased real properties, without investigation or inquiry. Buyer acknowledges that nothing herein shall impose any liability on or create any duties running from such Persons to Buyer and Buyer agrees that no such Persons shall have any personal or other liability under this Agreement or in connection with the transactions contemplated by this Agreement.

Section 8.3    <u>Notice of Breach</u>. If, after the Effective Date but prior to any Lease Assignment Closing Date, with respect to any Designated Leases that are the subject of such Lease Assignment Closing Date, Buyer or any Affiliate thereof first obtains actual knowledge that any of the Seller Representations made herein is untrue, inaccurate or incorrect in any material respect, Buyer shall give Seller written notice thereof within three (3) Business Days of obtaining such actual knowledge (but, in any event, prior to such Lease Assignment Closing Date). In such event, Seller shall have the right (but not the obligation) to attempt to cure such misrepresentation or breach and shall, at its option, be entitled to a reasonable adjournment of such Lease Assignment Closing Date (not to exceed forty-five (45) days in the aggregate with all other adjournment rights exercised by Seller hereunder) for the purpose of such cure. If Seller elects to attempt to so cure but is unable to so cure any misrepresentation or breach of warranty,

16

or elects not to cure the same, then Buyer, as its sole remedy for any and all such materially untrue or incorrect representations or warranties, shall elect within three (3) Business Days thereafter either to (i) waive such misrepresentations or breaches of representations and warranties and consummate the assignment of the Designated Leases which are the subject of such Lease Assignment Closing Date, without any reduction of or credit against the Purchase Price, (ii) if such misrepresentation or breach affects less than all of the Designated Leases, elect to remove such Designated Lease from the Leases being assigned on such Lease Assignment Closing Date and consummate the assignment of the Designated Leases with respect to the rest of the Designated Leases being assigned on such Lease Assignment Closing Date, or (iii) terminate this Agreement with respect to Buyer's obligation to take an assignment of all Designated Leases that were subject to such Lease Assignment Closing by written notice given to Seller on such Lease Assignment Closing Date (or prior to such Lease Assignment Closing Date if Seller elects not to cure the same), in which event this Agreement shall be terminated with respect to such Designated Leases and, thereafter, no Party shall have any further rights or obligations hereunder except as provided in any section hereof that by its terms expressly provides that it survives any termination of this Agreement.

**ARTICLE 9**
**Bankruptcy Court Matters**

**Section 9.1    Bankruptcy Court Matters.**

(a)    Each Party shall use commercially reasonable efforts to (i) obtain the Sale Order and (ii) obtain an order or orders approving the assumption by Seller and assignment to Buyer or an Assignee of any Designated Lease, which order shall be in substantially the form of Exhibit B attached hereto (a "Assumption and Assignment Order").

(b)    Buyer shall promptly take all actions reasonably requested by Seller to assist in obtaining the Sale Order, any Assumption and Assignment Order and any other order of the Bankruptcy Court reasonably necessary in connection with the transactions contemplated by this Agreement, in each case as promptly as practicable, including furnishing affidavits, financial information or other documents or information for filing with the Bankruptcy Court and making such employees and advisors of Buyer and its Affiliates available to testify before the Bankruptcy Court for the purposes of, among other things, providing necessary assurances of performance by Buyer under this Agreement and demonstrating that Buyer is a "good faith" purchaser under the Bankruptcy Code, as well as demonstrating Buyer's ability to pay and perform or otherwise satisfy all obligations and liabilities to be assumed by Buyer in connection with any Designated Lease at any Lease Assignment Closing.  Upon receipt of a Buyer Assumption Notice, Seller shall promptly file and serve an Assumption and Assignment Notice to each applicable landlord in form and substance acceptable to Buyer.

(c)    Seller having fully marketed the Leases (including the Designation Rights), the sale will proceed as a private sale and will not be subject to auction. Notwithstanding that, if another bidder for the Leases (including the Designation Rights) emerges prior to the entry of the Sale Order and Seller enters into an alternative transaction to sell the Leases or the Designation Rights to such other bidder, Seller agrees to utilize commercially reasonable efforts to seek approval of reimbursement of all actual fees and expenses incurred by Buyer in connection with

17

the transactions contemplated by this Agreement, including, but not limited to, providing for such reimbursement in any motion to approve any proposed order approving an alternative transaction in place of the transactions contemplated by this Agreement.

(d)      Buyer shall appear formally or informally in the Bankruptcy Court if reasonably requested by Seller or required by the Bankruptcy Court in connection with the transactions contemplated by this Agreement.

(e)      Buyer shall provide adequate assurance of future performance as required under the Bankruptcy Code for the Designated Leases. Buyer agrees that it will take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Designated Leases, such as furnishing affidavits, financial information and other documents or information for filing with the Bankruptcy Court and making Buyer's and its Affiliates' advisors available to testify before the Bankruptcy Court.

(f)      Nothing herein shall prevent Seller from modifying any bidding procedures applicable to the transactions contemplated by this Agreement as necessary or appropriate to maximize value for Seller's estates in accordance with any applicable order of the Bankruptcy Court.

(g)      Seller's obligations under this Agreement and in connection with the transactions contemplated by this Agreement are subject to entry of and, to the extent entered, the terms of any applicable orders of the Bankruptcy Court (including, without limitation, the entry of the Sale Order and, as applicable, any Assumption and Assignment Order). Nothing in this Agreement shall require Seller or any of its Affiliates to give testimony to or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or other fiduciary duty to the Bankruptcy Court or its stakeholders.

### ARTICLE 10
### Lease Assignment Closings

**Section 10.1  Time and Place of Lease Assignment Closings**.

(a)      Each Lease Assignment Closing shall take place commencing at 11:00 a.m. (ET) on a Lease Assignment Closing Date, with any amounts due and payable herein received by 3:00 p.m. (ET) by Seller, TIME BEING OF THE ESSENCE, subject to Seller's and Buyer's right to adjourn any Lease Assignment Closing as expressly permitted under this Agreement.

**Section 10.2  Seller's Deliveries**.  By not later than 5:00 p.m. (ET) on any Lease Assignment Closing Date, Seller shall deliver or cause to be delivered to Buyer each of the following items, each executed by Seller, if necessary, and acknowledged to the extent appropriate:

(a)      a Final Closing Statement for the applicable Designated Stores;

(b)      all security codes and master keys to any portion of the applicable Designated Stores, to the extent in Seller's possession; and

(c)      such other documents as may be required by the express terms of this Agreement to be delivered by Seller and such other customary conveyance documents, certificates, and other instruments as Buyer may reasonably require to carry out the assignment of the applicable Designated Leases as contemplated by this Agreement and as are typical and customary in like transactions in the State in which any applicable Designated Store is located.

   Section 10.3 **Buyer's Deliveries**.   By not later than 5:00 p.m. (ET) on any Lease Assignment Closing Date, Buyer shall deliver to Seller, each of the following items, each executed, if necessary, by Buyer or an Assignee and acknowledged to the extent appropriate:

(a)      As provided by Section 2.4, the Cure Costs applicable to the Designated Leases being assigned to Buyer, adjusted by an amount equal to the adjustments and prorations reflected on the Final Settlement Statement as provided by Section 10.4(b), wired to Seller in immediately available funds.

(b)      a Final Closing Statement for the applicable Designated Stores; and

(c)      such other documents as may be required by the express terms of this Agreement to be delivered by Buyer and such other customary documents, certificates and other instruments as Seller may reasonably require to carry out the assignment of the Designated Leases as contemplated by this Agreement and as are typical and customary in like transactions in the State in which any applicable Designated Store is located.

   Section 10.4  **Closing Costs**.

(a)      **Reimbursement of Carrying Costs**. Buyer shall reimburse Seller for all Carrying Costs, on a Store-by-Store basis, as follows: (i) with respect to any Designated Store, on the Lease Assignment Closing Date for such Designated Store, (ii) with respect to any Lease for which Seller has received a notice from Buyer that Buyer has elected not to designate such Lease as a Designated Lease, on the date that is one (1) day after the effective date of an order issued by the Bankruptcy Court either (x) rejecting the Lease applicable to such Store, or (y) approving the assumption of the Lease by Seller and the assignment of the Lease to a third-party, or (iii) for Leases that are not covered by (i) or (ii) above, on the Expiration Date. The foregoing reimbursements shall be paid by wire transfer of immediately available funds.

(b)      **Preliminary and Final Closing Statements**. All reimbursements to be made under the foregoing provisions of this Section 10.4 shall be made on the basis of a written closing statement prepared by Seller, which Seller shall endeavor to provide to Buyer at least three (3) Business Days prior to each Lease Assignment Closing Date or the Remaining Lease Carrying Cost Reimbursement Date, as applicable (the "Preliminary Closing Statement"), showing the amount due to Seller for reimbursement of Carrying Costs provided for in this Section 10.4. On or prior to the applicable Lease Assignment Closing Date or the Remaining Lease Carrying Cost Reimbursement Date, Seller and Buyer shall jointly agree upon any adjustments to be made to the Preliminary Closing Statement in accordance with the terms of this Agreement and, upon the final determination of such adjustments, Seller and Buyer shall each execute the final closing statement (the "Final Closing Statement") which shall reflect the amount due to Seller for reimbursement of Carrying Costs. The amounts agreed to by Seller and Buyer in the Final Closing Statement shall

19

be conclusive and binding on the Parties hereto, except for any items that are not capable of being determined at the time the Final Closing Statement is agreed to by Seller and Buyer, which items shall be determined and paid in the manner set forth in the Final Closing Statement. Prior to and following the applicable Lease Assignment Closing or Remaining Lease Carrying Cost Reimbursement Date, each Party shall provide the other with such information as the other shall reasonably request in order to finalize the Final Closing Statement. Notwithstanding anything in this Agreement to the contrary, no claim for any additional or adjusted Carrying Cost under this <u>Section 10.4</u> will be valid if made after the date that is sixty (60) days after any applicable Lease Assignment Closing Date or Remaining Lease Carrying Cost Reimbursement Date. The provisions of this <u>Section 10.4</u> shall survive the applicable Lease Assignment Closing. In the event the parties cannot reconcile any outstanding Carrying Cost, either party may file a motion with the Bankruptcy Court within sixty (60) days after any applicable Lease Assignment Closing Date or Remaining Lease Carrying Cost Reimbursement Date seeking a determination of same.

(c)    **<u>Closing Costs</u>**.

(i)    Seller shall pay Seller's own advisors' and attorneys' fees; and

(ii)    Unless any expense or cost under <u>Section 12.2(a)</u> becomes due and payable by Seller under this Agreement, Buyer shall pay (i) all due diligence costs incurred by Buyer in connection with the transactions contemplated by this Agreement, and (ii) Buyer's own advisors' and attorneys' fees.

(d)    **<u>Survival</u>**. The terms of this <u>Section 10.4</u> shall survive the applicable Lease Assignment Closing or the Remaining Lease Carrying Cost Reimbursement Date, as applicable.

## ARTICLE 11
## <u>No Real Estate Commission</u>

Seller may be obligated to pay any real estate commissions and/or brokerage fees to A&G Realty Partners, LLC (the "<u>Brokers</u>") in connection with the transactions contemplated by this Agreement in accordance with separate written agreements between Seller and Brokers. Each Party represents and warrants to the other Party that (a) it dealt with no broker other than the Brokers and (b) no other brokerage fee or real estate commission is or shall be due or owing in connection with the transactions contemplated by this Agreement as a result of the acts of the representing Party. Each Party hereby indemnifies and holds the other Party harmless from any and all Losses incurred by reason of any breach of the foregoing representations and warranties by such representing Party. Seller shall further indemnify and hold Buyer harmless from and against all Losses which may arise by reason of any claim asserted by any Broker in connection with this Agreement or any Broker's representation of Seller. The provisions of this <u>Article 11</u> shall survive the applicable Lease Assignment Closing or the termination of this Agreement.

## ARTICLE 12
## <u>Default</u>

**Section 12.1  <u>Buyer Default</u>**.  If a Lease Assignment Closing is not consummated due to Buyer's failure to perform its obligations under this Agreement, which failure is not cured within three (3) Business Days after written notice from Seller of such failure, then Seller shall be entitled

to terminate this Agreement as it relates to the Designated Leases that were the subject of such Lease Assignment Closing upon written notice, in which case the Parties shall have no further obligations to each other with respect to the Designated Leases that were the subject of such Lease Assignment Closing (except for those obligations which expressly survive the termination of this Agreement). If Buyer is in default of its obligations under this Agreement prior to the payment of the Cash Consideration to Seller as provided in Section 2.2 and Buyer fails to cure such default within three (3) Business Days after written notice from Seller of such failure, then Seller shall be entitled to terminate this Agreement upon written notice to Buyer, in which case Seller shall be entitled to retain the Deposit as liquidated damages and the Parties shall have no further obligations to each other with respect to this Agreement (except for those obligations which expressly survive the termination of this Agreement).

      **Section 12.2** <u>**Seller Default**</u>.  If, in the absence of an uncured Buyer default, a Lease Assignment Closing is not consummated because of a failure by Seller to perform its obligations in accordance with the terms of this Agreement (a "<u>Seller Failure</u>"), which Seller Failure is not cured by Seller within three (3) Business Days after written notice from Buyer, then Buyer may, as its sole and exclusive remedy at law or in equity, either: (i) terminate this Agreement with respect to the Designated Leases that were the subject of such Lease Assignment Closing by giving written notice thereof to Seller, in which event (A) to the extent Seller willfully refused to consummate the assignment of the Designated Leases as contemplated by this Agreement following satisfaction by Buyer of all conditions precedent to Seller's obligation to proceed to such Lease Assignment Closing, Seller shall reimburse Buyer  for all of Buyer's reasonable out-of-pocket costs and expenses actually incurred in connection with the assignment of the Designated Leases as contemplated by such Lease Assignment Closing and this Agreement (provided that Buyer provides reasonable supporting documentation for such out-of-pocket costs and expenses) and (B) the Parties shall have no further obligations to each other except for those obligations which expressly survive the termination of this Agreement; (ii) waive such Seller Failure and consummate the assignment of the Designated Leases that were the subject of such Lease Assignment Closing as contemplated by this Agreement; or (iii) specifically enforce Seller's obligation to consummate the assignment of the Designated Leases that were the subject of such Lease Assignment Closing as contemplated by this Agreement; <u>provided</u>, <u>however</u>, that (1) as a condition precedent to Buyer's election to bring an action for specific performance as the result of such Seller Failure hereunder, Buyer must commence such action within fifteen (15) days after the expiration of the three (3) Business Day cure period provided in this <u>Section 12.2</u> and (B) Buyer agrees that its failure timely to commence such an action for specific performance within such 15-day period shall be deemed a waiver by it of its right to commence such an action. If Seller is in default of its obligations under this Agreement prior to the payment of the Cash Consideration to Seller as provided in <u>Section 2.2</u> and Seller fails to cure such default within three (3) Business Days after written notice from Buyer of such failure, then Buyer shall be entitled to terminate this Agreement upon written notice to Seller, in which case the Deposit shall be returned to Buyer as liquidated damages and the Parties shall have no further obligations to each other with respect to this Agreement (except for those obligations which expressly survive the termination of this Agreement). This <u>Section 12.2</u> is intended only to limit Buyer's right to damages arising due to Seller's failure to consummate the assignment of the Designated Leases as contemplated by this Agreement and shall not limit the obligations of Seller that survive the termination of this Agreement.

Section 12.3  **Breach of Representations**.

(a)      Each of the Seller Representations and Buyer Representations and the covenants and agreements (to the extent such covenant or agreement contemplates or requires performance by such Party prior to any Lease Assignment Closing) of the Parties set forth in this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, will terminate as to any applicable Designated Store and Designated Lease effective immediately as of a Lease Assignment Closing with respect to such Designated Store and Designated Lease such that no claim for breach of any such representation, warranty, covenant or agreement, detrimental reliance or other right or remedy (whether in Contract, in tort or at law or in equity) may be brought in respect thereof after such Lease Assignment Closing. Each covenant and agreement that explicitly contemplates performance after an applicable Lease Assignment Closing, will, in each case and to such extent, expressly survive such Lease Assignment Closing in accordance with its terms, and if no term for such survival is specified, then for one (1) year following such applicable Lease Assignment Closing Date. Notwithstanding this Section 12.3 or any other provision of this Agreement, nothing in this Section 12.3 or any other provision in this Agreement shall limit any right or remedies available to Buyer in respect of a claim for fraud.

(b)      The provisions of this Section 12.3 shall survive each Lease Assignment Closing, as applicable.

## ARTICLE 13
## Miscellaneous

Section 13.1  **Entire Agreement**.   This Agreement constitutes the entire agreement among the Parties with respect to the transactions contemplated by this Agreement, and it supersedes all prior discussions, understandings or agreements among Parties. All Exhibits and Schedules attached hereto are a part of this Agreement and are incorporated herein by reference.

Section 13.2  **Binding on Successors and Assigns**.   This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

Section 13.3  **Assignment by Buyer**.   Without the prior written consent of Seller (which may be granted or withheld in Seller's sole and absolute discretion), Buyer shall not, directly or indirectly, assign this Agreement or any of its rights hereunder. Notwithstanding the foregoing, the Parties understand, agree and acknowledge that Buyer may designate an Assignee to take assignment of any Designated Lease so long as such Assignee has complied with the requirements of adequate assurance as set forth in Section 9.1(e).

Section 13.4  **Waiver**.   The excuse or waiver of the performance by a Party of any obligation of the other Party under this Agreement shall only be effective if evidenced by a written statement signed by the Party so excusing or waiving. No delay in exercising any right or remedy shall constitute a waiver thereof, and no waiver by any Party of the breach of any covenant of this Agreement shall be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of this Agreement.

22

**Section 13.5**  **Governing Law; Jurisdiction**.

(a)      This Agreement and all documents executed and delivered in connection herewith shall be construed in accordance with the internal laws of the State of New York without regard to the principles of choice of law or conflicts of law.

(b)      In recognition of the benefits of having any disputes with respect to this Agreement resolved by an experienced and expert person, the Parties hereby agree that any suit, action or proceeding, whether claim or counterclaim, brought or instituted by any party hereto on or with respect to this Agreement or which in any way relates, directly or indirectly, to this Agreement or any event, transaction or occurrence arising out of or in any way connected with this Agreement, any Store, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. **EACH PARTY HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING**.

(c)      Each of the Parties hereby: (i) irrevocably submits itself to the exclusive jurisdiction of the Bankruptcy Court, and the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement or any other transaction related documents contemplated hereby and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, the Sale Order, and any Assumption and Assignment Order or any other transaction related documents contemplated hereby, any breach or default hereunder or thereunder, or the transactions contemplated hereby or thereby; (ii) agrees that any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court; (iii) waives, and agrees not to assert, by way of motion, as a defense or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court; and (iv) consents to service of process by registered mail at the address set forth in, and in accordance with, Section 13.7, for any Proceeding to which this Section 13.5 applies.  The provisions of this Section 13.5 shall survive the applicable Lease Assignment Closing or termination of this Agreement.

**Section 13.6**  **Counterparts**.  This Agreement may be executed (including with electronic signature) in multiple counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same instrument. The exchange of signature pages by facsimile or Portable Document Format ("PDF") transmission shall constitute effective delivery of such signature pages. Signatures of the Parties transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

**Section 13.7**  **Notices**.  All notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly delivered (a) upon the delivery (or refusal to accept delivery) by messenger or overnight express delivery service (or, if such date is not on a Business Day, on the Business Day next following such date), or (b) upon the delivery of a PDF via email transmission on a Business Day (or, if such date is not on a Business Day, on the Business Day next following such date), addressed as follows:

| | |
|---|---|
| **To Seller**: | Debora DiPrizito \ Director, Real Estate Administration |
| | 200 Newberry Commons |
| | Etters, Pennsylvania 17319 |
| | ddiprizito@RITEAID.com |
| | |
| with a copy to: | Matthew J. Davidson |
| | Alvarez & Marsal North America, LLC |
| | Matthew.davidson@alvarezandmarsal.com |
| | |
| with a copy to: | Sean A. Mitchell, Esq. |
| | Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| | 1285 Avenue of the Americas |
| | New York, NY 10019-6064 |
| | smitchell@paulweiss.com |
| | |
| with a copy to: | Michael Sirota |
| | Cole Schotz PC |
| | 1325 Avenue of the Americas, |
| | New York, NY 10019 |
| | msirota@coleschotz.com |
| | |
| **To Buyer**: | Five Below Stores, Inc. |
| | 701 Market Street, Suite 300 |
| | Philadelphia, PA 19106 |
| | Attention: Ron Masciantonio – EVP, General Counsel |
| | Email: LegalNotices@fivebelow.com |
| |      (Subject Line: Legal Notice to Five Below re:) |
| | |
| with a copy to: | Jones Day |
| | 901 Lakeside Avenue |
| | Cleveland, OH 44114 |
| | Attention: Heather Lennox, Esq. |
| | Email: hlennox@jonesday.com |

Any address or name specified above may be changed by notice given to the addressee by the other Party in accordance with this <u>Section 13.7</u>. The inability to deliver notice because of a changed address of which no notice was given as provided above, or because of rejection or other refusal to accept any notice otherwise appropriately given as provided above, shall be deemed to be the receipt of the notice as of the date of such inability to deliver or rejection or refusal to accept. Any notice to be given by any Party hereto may be given by the counsel for such Party.

      **Section 13.8 <u>Time Periods</u>**.  Any reference in this Agreement to the time for the performance of obligations or elapsed time shall mean consecutive calendar days, months or years, as applicable. In the event the time for performance of any obligation hereunder expires on a day that is not a Business Day, the time for performance shall be extended to the next Business Day.

Section 13.9  **Modification of Agreement**.  No modification of this Agreement shall be deemed effective unless in writing and signed by all Parties.

Section 13.10 **Further Instruments**.  Each Party, promptly upon the request of the other, shall execute and have acknowledged and delivered to the other any and all further instruments reasonably requested or appropriate to evidence or give effect to the provisions of this Agreement and which are consistent with the provisions of this Agreement; provided, however, that the foregoing shall not be construed or deemed to expand the obligations of any party hereto or to remove any limitations on the obligations of any party hereunder.

Section 13.11 **Descriptive Headings; Word Meaning**.  The descriptive headings of the paragraphs of this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any provisions of this Agreement. Words such as "herein", "hereinafter", "hereof" and "hereunder" when used in reference to this Agreement, refer to this Agreement as a whole and not merely to a subdivision in which such words appear, unless the context otherwise requires. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires. The word "including" shall not be restrictive and shall be interpreted as if followed by the words "without limitation."

Section 13.12 **Time of the Essence**.   TIME IS OF THE ESSENCE TO THIS AGREEMENT AND TO ALL DATES AND TIME PERIODS SET FORTH HEREIN, INCLUDING, WITHOUT LIMITATION, EACH PARTY'S OBLIGATION TO CONSUMMATE ANY LEASE ASSIGNMENT CLOSING ON THE APPLICABLE LEASE ASSIGNMENT CLOSING DATE, AS SAME MAY BE ADJOURNED AND/OR EXTENDED PURSUANT TO THE EXPRESS TERMS OF THIS AGREEMENT.

Section 13.13 **Construction of Agreement**.  This Agreement shall not be construed more strictly against one Party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the Parties, it being recognized that the Parties have contributed substantially and materially to the preparation of this Agreement.

Section 13.14 **Limitations on Liability**.  Notwithstanding anything to the contrary in this Agreement, (a) subject to any additional limitations on Seller Parties' liability set forth elsewhere in this Agreement, in no event shall any of the Seller Parties (other than Seller) or any of the direct or indirect owners of any of the Seller Parties (including Seller) have any personal liability under this Agreement and (b) subject to any additional limitations on Buyers' liability set forth elsewhere in this Agreement, in no event shall any of the direct or indirect owners of Buyer have any personal liability under this Agreement. The acceptance by Seller of the payments by Buyer of any funds due in connection with any Lease Assignment Closing and the delivery by Seller of any Assumption and Assignment Notice relating to such Lease Assignment Closing shall constitute full performance of all of Seller's obligations hereunder with respect to the Designated Leases and the Designated Stores other than those obligations of Seller, if any, that by the express terms hereof are to survive any Lease Assignment Closing.

Section 13.15 **Severability**.  The Parties hereto intend and believe that each provision in this Agreement comports with all applicable local, state and federal laws and judicial decisions.

If, however, any provision in this Agreement is found by a court of law to be in violation of any applicable local, state or federal law, statute, ordinance, administrative or judicial decision or public policy, or if in any other respect such a court declares any such provision to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all Parties hereto that, consistent with and with a view towards preserving the economic and legal arrangements among the Parties hereto as expressed in this Agreement, such provision shall be given force and effect to the fullest possible extent, and that the remainder of this Agreement shall be construed as if such illegal, invalid, unlawful, void or unenforceable provision were not contained herein, and that the rights, obligations and interests of the parties under the remainder of this Agreement shall continue in full force and effect.

   **Section 13.16 <u>Joint and Several</u>**.  If Seller or Buyer consists of more than one person or entity, the constituent parties of Seller or Buyer, as the case may be, shall be jointly and severally liable for the obligations of Seller or Buyer, as the case may be, under this Agreement and the other documents to be executed and delivered by Seller or Buyer at any Lease Assignment Closing.

   [The balance of this page has intentionally been left blank. Signature pages follow.]

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement as of the Effective Date.

**SELLER**:

**THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY** and **THRIFT DRUG, INC.**

By: _____
Name:
Title:

[Signatures continue on following page.]

**BUYER:**

**FIVE BELOW, INC.**

By: _____
Name:
Title:

**<u>EXHIBIT A</u>**

**<u>FORM OF SALE ORDER</u>**

[*Intentionally Omitted*]

## EXHIBIT B

## FORM OF ASSUMPTION AND ASSIGNMENT ORDER

[*Intentionally Omitted*]

## SCHEDULE A

## LEASES

[*Intentionally Omitted*]

**<u>Exhibit C</u>**

**Assignment and Assumption Order**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**ORDER APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES DESIGNATED IN NOTICE OF DEBTORS' THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY AND THRIFT DRUG, INC. FIVE BELOW ASSUMPTION AND ASSIGNMENT**

**[Related to Docket No.●]**

The relief set forth on the following pages, numbered three (3) through eleven (11), is

**ORDERED**.

---

[1]  The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Pursuant to the *Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designated Leases and (IV) Granting Related Relief* [Dkt. [•]] (the "Sale Order"); and this Court having jurisdiction over this matter under 28 U.S.C. § 1334; and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding in this district is proper under 28 U.S.C. § 1408; and this Court having found that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Debtors having properly filed and served the *Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment of Certain Unexpired Leases* (the "Assumption Notice") to each applicable party, including those parties set forth in Schedule 1 attached hereto (the "Assumption Schedule"), in accordance with the terms of the Sale Order and the Rejection and Assumption Procedures Order; and due and proper notice of the Sale Order and Assumption Notice having been provided to each applicable counterparty, and it appearing that no other notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.     The Designated Leases listed in the Assumption Schedule are assumed and assigned to Five Below, Inc. (or its designee) (the "Assignee"), effective as of the Lease

(Page 4)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Assignment Closing Date (defined below), pursuant to the terms and conditions set forth in this Order, the Sale Order and that certain Asset Purchase Agreement, dated as of August  , 2025, by and among the Assignee and Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. (and any applicable affiliates) (the "Purchase Agreement"),[1] which is hereby incorporated herein by reference.

2.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of any Designated Lease shall:

      a.   be free and clear of all Interests (as defined in the Sale Order), other than any Interests expressly assumed under, or expressly permitted by, the Purchase Agreement; and

      b.   constitute a legal, valid and effective transfer of such Designated Lease and vest the Assignee with all rights, title, and interests to the applicable Designated Lease.

3.      Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, within five (5) Business Days following the Lease Assignment Closing Date[2] for any Designated Lease, the Assignee shall pay to the Debtors all undisputed cure amounts set forth in Schedule 1 attached hereto (the "Cure Amounts") with respect to each such Designated Lease, which the Debtors shall pay directly to the applicable landlords with respect to the applicable amounts due to such landlords or, if the Debtors have already paid such amounts, shall be retained by the Debtors as

---

[1]      Capitalized terms not defined herein have the meaning attributed to them in the Sale Order or Purchase Agreement, as applicable.

[2]      For each Designated Lease, the "Lease Assignment Closing Date" shall be the first (1st) Business Day after entry of this Assumption and Assignment Order.

(Page 5)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

reimbursement thereof. The Cure Amounts represent any and all amounts accrued and owed under the Designated Lease through the Lease Assignment Closing Date and represent Assignee's sole payment obligation on behalf of the applicable Debtor's outstanding liabilities. Assignee's sole obligation with respect to the Cure Amounts shall be to pay such amounts and any other amounts agreed upon between the applicable Debtor and Assignee.

4.      From and after each Lease Assignment Closing Date, (a) the Debtors and their estates shall be relieved of any liability for breach of such Designated Lease occurring after the applicable Lease Assignment Closing Date pursuant to section 365(k) of the Bankruptcy Code; and (b) except for the Assignee's obligation to pay the applicable Cure Amount, the applicable Designated Lease landlord is barred and permanently enjoined from asserting against the Debtors or the Assignee any existing or accrued default, claim or liability arising from or relating to the Designated Lease for the period prior to the applicable Lease Assignment Closing Date.  Further, Assignee shall have no liability for claims or causes of action (whether known or unknown), including third-party tort claims that arose prior to the Lease Assignment Closing Date or claims for incidents that occurred prior to the applicable Lease Assignment Closing Date, and all other persons and entities holding such claims attributable to the period prior to the Lease Assignment Closing Date, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such claims against the Assignee, its affiliates, successors or assigns, its property or the applicable Designated Lease.

| (Page 6) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

5.      Any provision in any Designated Lease that purports to declare a breach or default

as a result of a change or transfer of control or as a result of any interest of or in respect of the

Debtors is unenforceable (in connection with the assignment of a Designated Lease to Assignee),

and all Designated Leases shall remain in full force and effect notwithstanding assignment thereof

to Assignee. No sections or provisions of any Designated Lease, that in any way purport to,

  a.  prohibit, restrict or condition the Debtors' assignment of such Designated Lease (including, but not limited to, continuous operation covenants, use restrictions or the conditioning of such assignment on the consent of the non-debtor party to such Designated Lease);

  b.  provide for the cancellation or modification of the terms of the Designated Lease based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances, such as those prohibited by section 365(e) of the Bankruptcy Code;

  c.  provide for additional payments (<u>e.g.</u>, so called "profit" sharing/splitting), penalties, fees, charges or other financial accommodations in favor of the non-debtor third party to such Designated Lease upon assignment thereof; or

  d.  provide for any rights of first refusal on a landlord's part, or any recapture or termination rights in favor of a landlord, or any right of a landlord to take an assignment or sublease from a tenant,

shall have any force or effect with respect to the grant and honoring of the designation rights

provided for in the Purchase Agreement, because they constitute unenforceable anti-assignment

provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under

section 365(e) of the Bankruptcy Code, in connection with the assignment of a Designated Lease

to Assignee pursuant to the Purchase Agreement.

(Page 7)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

6. Upon the assumption and assignment of a Designated Lease to Assignee under the provisions of this Order, no default shall exist under the Designated Lease, and no counterparty to the Designated Lease shall be permitted to declare a default by any Debtor or otherwise take action against Assignee or the Debtors as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Designated Lease. Upon assumption and assignment of any Designated Lease pursuant to this Order, the Assignee shall enjoy all of the rights and benefits under each such Designated Lease as of the applicable Lease Assignment Closing Date.

7. Subject to an applicable landlord's right to object pursuant to the Rejection and Assumption Procedures Order, notwithstanding any provision in any Designated Lease that purports to prohibit, restrict or condition such action, upon the assumption and assignment of such Designated Lease to Assignee in accordance with the terms of this Order,

    a. Assignee shall be authorized to:

        i. use the applicable store, subject to section 365(b)(3) of the Bankruptcy Code, upon consummation of the assumption and assignment of such Designated Lease to Assignee for Assignee's operation under the name Five Below for use as a retail store selling variety and general merchandise ("Assignee's Permitted Use"), and Assignee shall not be prevented from doing so by any recorded or unrecorded restriction, or exclusive granted by landlord;

        ii. operate such store under the Assignee's trade name or any other trade name that the Assignee owns or is authorized to use;

        iii. make such alterations and modifications to the applicable store (including signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including storefront

(Page 8)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

signs, panels on all pylons, monuments, directional and other ground and off-premises signs where the Debtors are presently represented) deemed necessary by the Assignee as are necessary or desirable for the Assignee to conform such store to the Assignee's typical retail store consistent with Assignee's Permitted Use, submit and execute all building and signage permit applications without further consent of any party upon production of a copy of this Order, and any conditions grandfathered for the benefit of the Debtors shall be grandfathered for the benefit of Assignee;

iv.   remain "dark" with respect to such store after such assumption and assignment until the date that is necessary to permit Assignee to remodel, restock, re-fixture, change signage and/or until completion of the work described in clause (iii) above (so long as such date is not more than two hundred twenty (220) days after the applicable Lease Assignment Closing Date or such longer period as may be allowed under the lease) or such later date as may be reasonably required for the restoration of such store or as may be agreed to by Assignee and the applicable landlord;

v.    self-insure any of its insurance obligations under the Designated Lease so long as Assignee shall have at all times a net worth of at least Fifty Million Dollars ($50,000,000); *provided*, however, to the extent any obligation cannot be self-insured any required insurance may be satisfied by both general and umbrella coverage; and

vi.   exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Designated Lease (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name); and

b.  any reference in the Designated Lease to the Debtors shall hereinafter mean Assignee.

8.    Upon payment of the Cure Amounts with respect to any Designated Lease, the

applicable landlord shall be forever barred and enjoined from asserting against the Debtors, their

(Page 9)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

estates and the Assignee any claim in connection with: (a) any breach or default, monetary or non-monetary, existing and which accrued prior to the Lease Assignment Closing Date with respect to the Designated Lease, or (b) any objection to the assumption and assignment of such Designated Lease, whether or not such non-debtor party filed a proof of claim.

9.      The Debtors are authorized to take any action necessary to implement the terms of this Order and the assumption and assignment without further order from this Court. All persons that are currently in possession of the premises leased under the Designated Lease are hereby directed to surrender possession of the premises to the Assignee as of the entry of this Order and the effective date of assignment as set forth in the Assumption Schedule.

10.      All recording officers are authorized to strike recorded encumbrances, claims, liens and other interests against the Designated Lease recorded prior to the date of this Order. To the extent permitted by applicable law, a certified copy of this Order may be filed with the appropriate recording officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Lease recorded prior to the date of this Order. All recording officers are hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order. Utility providers are directed not to discontinue service and to cooperate with the transfer of utilities to Assignee without any transfer fees. Assignee's liability for such utility usage commences on the Lease Assignment Closing Date; *provided*, for the avoidance of doubt, that this Order does not affect the Debtors' liability, if any, for utility charges incurred before the Lease Assignment

(Page 10)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Closing Date nor does this Order alter the Buyer's obligations with respect to Carrying Costs under the Sale Order.

11.    The Assignee and its affiliates, successors and assigns shall not be deemed or considered to:

    a.  be a legal successor, or otherwise be deemed a successor to any of the Debtors,

    b.  have, *de facto* or otherwise, merged with or into any or all Debtors, or

    c.  be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Assignee has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates except as expressly set forth herein.

12.    The Assignee and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity or other law, rule regulation or doctrine, whether known or unknown as of the Lease Assignment Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Lease Assignment Closing Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the Designated Lease prior to the Lease

(Page 11)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Assignment Closing Date or arising based on actions of the Debtors taken after the Lease

Assignment Closing Date.

13.    The Assignee is a "good faith purchaser," within the meaning of section 363(m) of

the Bankruptcy Code, of the Designated Leases and is entitled to all of the benefits and protections

afforded by section 363(m) of the Bankruptcy Code. The parties will be acting in good faith if they

proceed to consummate the assignment at any time after entry of this Order. This Order is effective

immediately, notwithstanding Bankruptcy Rules 6004(h), 6006(d), and any similar provision of

law.

14.    Any and all property located on or in the leased premises after the Lease

Assignment Closing Date of the applicable Designated Lease shall be deemed abandoned pursuant

to section 554 of the Bankruptcy Code, as is, effective as of the Lease Assignment Closing Date.

As of the Lease Assignment Closing Date, the Assignee or its designee may, in its sole discretion

and without further notice to any party or order of the Court, utilize and/or dispose of such

abandoned property without further notice or liability to the Debtors or consenting third parties

and, to the extent applicable, the automatic stay is modified to allow such disposition. The rights

of the counterparty to each Designated Lease to assert claims against the Debtors for the

disposition of the abandoned property are reserved, as are all parties' rights to object to such claims.

15.    Notwithstanding anything to the contrary in this Order, the Auction Procedures,

Bidding Procedures Order, any Assumption and Assignment Notice, any Assumption and

Assignment Order, Purchase Agreement, the Assignment Agreement, side letter(s), or any

(Page 12)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

document or agreement related to any of the forgoing, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors,  and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assumed and assigned, assigned, or otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator; provided, however, that, to the extent any claim with respect to any Designated Lease arises that is covered by any of the Debtors' insurance policies, the Debtors may pursue such claim in accordance with the terms of the applicable insurance policy, and, if applicable, turn over to Buyer any such insurance proceeds (each, a "Proceed Turnover"), provided, further, however, that none of the Debtors' insurers shall not have any duty to Buyer  to effectuate a Proceed Turnover or liability to Buyer related to a Proceed Turnover.

16.     This Court shall retain jurisdiction to resolve any dispute arising from or related to this Order.

<u>Exhibit D</u>

**Assignment and Assumption Notice**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>                                              Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

### NOTICE OF DEBTORS' THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY AND THRIFT DRUG, INC. FIVE BELOW ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

**PARTIES RECEIVING THIS NOTICE SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES ON SCHEDULE 2 ATTACHED HERETO AND READ THE CONTENTS OF THIS NOTICE CAREFULLY.**

**PLEASE TAKE NOTICE** that, on June 11, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Sale Procedures Order"), attached hereto as Schedule 1, by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction for the sale of certain unexpired leases of nonresidential real property (each, a "Lease"), in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on September [●], 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims,*

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

*Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the*
*Designation Leases and (IV) Granting Related Relief* [Docket No. ●] (the "Sale Order"),[2] attached
hereto as Schedule 2.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, the
Sale Order, and this written notice (this "Assumption Notice"), the Debtors hereby notify you that
they have determined, in the exercise of their business judgment, that each Lease set forth on
Schedule 3 attached hereto is hereby assumed and assigned, as applicable, effective as of the date
of entry of the Assumption and Assignment Order, or such other date as the Debtors, any Assignee,
and the applicable assumption counterparties agree (the "Assumption Date"), which projected date
is set forth in Schedule 3.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order,
attached hereto as Exhibit B to the Sale Order is the Designation Rights Agreement between the
Debtors and the Buyer (who has designated the Assignee) for those Leases set forth on Schedule 3.

      **PLEASE TAKE FURTHER NOTICE** that the Assignee has the financial wherewithal
to meet all future obligations under the Lease, and the Debtors will serve evidence of adequate
assurance of future performance with this Assumption Notice demonstrating that the Assignee, as
applicable, has the ability to comply with the requirements of adequate assurance of future
performance.[3]

      **PLEASE TAKE FURTHER NOTICE** that parties seeking to object to the proposed
assumption and assignment of any of the Leases must file and serve a written objection so that

---

[2]   Capitalized terms otherwise undefined herein shall have the meanings ascribed to them in the Sale Order.

[3]   The Debtors will provide evidence of adequate assurance of future performance with the Assumption Notice by
overnight delivery upon the Assumption Counterparty affected by the Assumption Notice at the address set forth
in the notice provision of the applicable Unexpired Lease (and upon the Assumption Counterparty's counsel, if
known, by electronic mail).

2

such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is actually received by the following parties no later than 14 days after the date that the Debtors served this Notice: (i) the Objection Notice Parties (as defined in the Sale Procedures Order); (ii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102; and (iii) counsel to Five Below, Inc., Jones Day, 901 Lakeside Avenue, Cleveland, OH 44114, Attn: Heather Lennox and T. Daniel Reynolds.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Sale Procedures Order, if no objection is filed and served in accordance with the above procedures, the Debtors will include and file with the Court a list of the above-described Lease(s) in an assumption schedule attached to the proposed form of order under a certificate of no objection, substantially in the form attached hereto as Schedule 4 (the "Assumption Order").[4]

**PLEASE TAKE FURTHER NOTICE** that the proposed cure amount under the Lease is set forth in Schedule 2. If a written objection to the proposed cure amount is not timely filed, then the cure amount shall be binding on all parties and no amount in excess thereof shall be paid for cure purposes.

**PLEASE TAKE FURTHER NOTICE** that, if an objection to the assumption and assignment of any Lease is timely filed and not withdrawn or resolved, the Debtors shall file a notice for a hearing to consider the objection for the Lease(s) to which such objection relates. If such objection is overruled or withdrawn, such Lease(s) shall be assumed or assumed and assigned as of the applicable Assumption Date.

---

[4]    An objection to the assumption and/or assignment of any particular Lease or cure amount listed in this Assumption Notice shall not constitute an objection to the assumption and/or assignment of any other lease listed in this Assumption Notice. Any objection to the assumption and/or assignment of any particular Lease listed in this Assumption Notice must state with specificity the Lease to which it is directed. For each particular Lease whose assumption and/or assignment is not timely or properly objected to, such assumption and/or assignment will be effective in accordance with this Assumption Notice and the Sale Procedures Order.

[_____], 2025

Respectfully submitted,

By: /s/ DRAFT_____
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

4

## <u>Schedule 1</u>

**Sale Procedures Order**

## **Schedule 2**

**Sale Order**

**Schedule 3**

**Assumed and Assigned Leases**

| Counterparty | Debtor Counterparty | Assignee | Cure Amount | Assumption Date | Store Number | Store Address |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |