UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In Re: | : | CHAPTER 11 |
| | : | |
| NEW RITE AID, LLC, et al. | : | CASE NO.  25-14861-MBK |
| | : | |
| Debtors. | : | |
| _____ | : | |

## AMENDED LIMITED OBJECTION AND RESERVATION OF RIGHTS OF LANDLORD, GITOMER FAMILY REALTY LLC, TO DEBTORS' THIRTIETH NOTICE OF REJECTION OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES (Doc. No. 2165

Gitomer Family Realty LLC, landlord (the "Landlord"), by and through its counsel, Capehart & Scatchard, respectfully submits this amended[1] limited objection and reservation of rights to Debtors' Thirtieth Notice Of Rejection Of Certain Executory Contracts And/Or Unexpired Leases (Doc. No. 2165), and respectfully states as follows:

1.  The Landlord entered into a lease with Eckerd Corporation ("Eckerd") on or about May 19, 1995 (including as amended by the Amendment (defined below), the "Lease") for Store No. 10445, 1360 Brace Road, Cherry Hill, New Jersey (the "Property"). A true copy of the Lease is attached as **Exhibit A**.

2.  Pursuant to the terms of the Lease, Eckerd is responsible for all real estate taxes for the Property. See Exhibit "A" at 3, Section 6.

3.  On October 15, 2023, Rite Aid Corp. and its affiliated entities, including Eckerd, filed voluntary Chapter 11 petitions (the "First Case"). During the First Case, the parties entered into an Amendment to Lease dated as of November 1, 2023 (the "Amendment"). The Amendment modified certain rental obligations. A true copy of the Amendment is attached as **Exhibit B**.

4.  The Amendment did not modify Eckerd's requirement to pay real estate taxes.

---

[1]      The amendment is to amend the request for relief to add conditions to rejection (new paragraph 20) and add factual background related to those conditions (new paragraphs 16 and 17).

5.   Eckerd failed to pay the Second Quarter real estate tax payment of $20,847.12 due on May 1, 2025.

6.   On May 5, 2025, New Rite Aid LLC and its affiliated entities, including Eckerd, each filed new petitions for relief under Chapter 11 of the Bankruptcy Code.

7.   The portion of the Second Quarter real estate taxes for the post-petition of May 5, 2025, through June 30, 2025 (57 days) is $12,916.15.

8.   The Debtors have paid the rent payments due on June 1, July 1, and August 1, 2025.

9.   The Debtors have not paid the Third Quarter real estate tax payment due on August 1, 2025. A copy of the Tax Bill for the last six months of 2025 is attached as **Exhibit C**.

10. On August 26, the Debtors filed their Thirtieth Notice Of Rejection Of Certain Executory Contracts And/Or Unexpired Leases (Doc. No. 2165) with August 31, 2025, set as the effective date of the rejection. The Lease was one of the leases included in that notice.

11. The amount of the third quarter taxes owing through August 31, 2025, is $13,909.03.

12. The total real estate taxes due from May 5, 2025, through August 31, 2025, are $26,825.18 (the "Stub Rent Claim")

13. The Debtors have not paid any portion of these real estate taxes.

14. On July 10, 2025, the Court entered the order entitled "Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief" (Doc. No.1396) ("Final Postpetition Financing Order").

15. That Order provides, "The Debtors shall use the amounts held in the Stub Rent Escrow Account to solely pay the applicable Stub Rent Claims for which such deposit was made on the later of (x) August 31, 2025 and (y) the date that the applicable lease is assumed and assigned or

a notice to reject such lease is filed in accordance with Final Order (I) Authorizing and

Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting

Related Relief." Final Postpetition Financing Order, § 49(c).

16. A title search of the Property reveals the following:

a.  A Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement, and

Fixture Filing from Eckerd Corporation, a Delaware corporation, to Bank of America,

N.A., dated November 27, 2024, was recorded in the Camden County Clerk's/Register's

Office on December 18, 2024, in Mortgage Book 12725, Page 1756, showing an amount

of $2,550,000.00.

b.  Short Form Ground Lease by and between Gitomer & Company and Eckerd Corporation

dated May 19, 1995, was recorded in the Camden County Clerk's/Register's Office on

October 19, 1995 in Deed Book 4784, Page 875.

17. These documents cloud the title of the Property and must be removed for the Property to

be marketable on customary terms.

## **REQUESTED RELIEF**

18. Based on § 49(c) of the Final Postpetition Financing Order, any order approving the

rejection of the Lease should require Debtors to pay the Landlord's Stub Rent Claim

immediately as a condition to the rejection.

19. The rejection order should also require  also require the Debtors to deliver to Landlord

the following documents as a condition to the effectiveness of the termination to remove the

cloud on the title to the Property:

a.  A discharge of the Leasehold Mortgage, Assignment of Leases and Rents,

Security Agreement, and Fixture Filing in recordable form duly executed by Bank

3

of America, N.A., (or the current holder thereof, if it has been assigned) in a form

acceptable Landlord's counsel; and,

b.  A termination of the recorded Short Form Ground Lease in recordable form duly

executed by Eckerd in a form acceptable Landlord's counsel.

## <u>RESERVATION OF RIGHTS</u>

20. The Landlord reserves its rights to amend or supplement this Limited Objection and to

raise any additional objections to the Rejection Notice at the time of hearing. In addition, the

Landlord reserves its rights to prosecute a motion for the allowance and payment of an

administrative claim and assert any claims for unpaid pre-petition arrears and potential lease

rejection damages.

WHEREFORE, the Landlord respectfully requests that the Court enter an order consistent

with the above Limited Objection and for such other and further relief as the Court deems just

and proper.

Dated:  September 4, 2025　　　　　　 */s/ William G. Wright*
　　　　　　　　　　　　　　　　　 WILLIAM G. WRIGHT
　　　　　　　　　　　　　　　　　 CAPEHART & SCATCHARD, P.A.
　　　　　　　　　　　　　　　　　 A Professional Corporation
　　　　　　　　　　　　　　　　　 8000 Midlantic Drive, Suite 300 S
　　　　　　　　　　　　　　　　　 Mt. Laurel, New Jersey  08054
　　　　　　　　　　　　　　　　　 (856) 234-6800
　　　　　　　　　　　　　　　　　 Fax: (856) 235-2786
　　　　　　　　　　　　　　　　　 wwright@capehart.com

# EXHIBIT A

## GROUND LEASE

THIS LEASE made and entered into as of this 19th day of May, 1995 between GITOMER & COMPANY, a New Jersey corporation, as Landlord, and ECKERD CORPORATION, a Delaware corporation, as Tenant, on the following terms and conditions:

1.     PREMISES. Landlord hereby leases to Tenant the following described real property in the City of Cherry Hill, County of Camden, State of New Jersey, as outlined in red on the attached Exhibit A and as more particularly described on Exhibit B (legal description).

2.     TERM: The term of this Lease shall commence upon the "date of occupancy" by Tenant, and shall terminate upon such date as shall be forty (40) years from the last day of the month in which the date of occupancy by Tenant shall occur. "Date of occupancy" shall be the earlier of: (a) the date Tenant opens for business, or (b) the date one hundred eighty (180) days after the date of this Lease, provided Tenant has obtained a building permit from the appropriate government authorities and all the representations and warranties set forth in Section 12 shall have been fulfilled. In the event Tenant has not obtained a building permit or if any representation or warranty set forth in Section 12 shall not be fulfilled on or before one hundred eighty (180) days after the date of this Lease, Tenant may, at its option, either (i) terminate this Lease upon written notice to Landlord, or (ii) elect to commence paying rent as provided in Section 5 hereof for a period of ninety (90) days. If after the expiration of said ninety (90) day period Tenant has not obtained a building permit or if any representation or warranty set forth in Section 12 shall not be fulfilled, Tenant shall either waive such requirements and this Lease shall then be in full force and effect or, if Tenant refuses to waive such requirements, either Landlord or Tenant may thereafter terminate this Lease upon written notice to the other party.

3.     CONSTRUCTION OF BUILDING. On or before sixty (60) days from the satisfaction of all representations and warranties in Section 12 hereof, Tenant shall commence the construction of its building or buildings, as the case may be. Said building or buildings shall be constructed in good and workmanlike manner and in accordance with all requirements of local ordinances, rules, regulations and requirements of all departments, board, bureaus, officials and authorities having jurisdiction thereof. All necessary permits shall be obtained by Tenant.

The new building or buildings (and any building in replacement thereof thereafter construct) shall be a complete independent building erected wholly within the boundary lines of the leased premises, and upon request of Landlord, the Tenant will furnish to the Landlord a survey of the leased premises, prepared by a licensed



surveyor, showing the location of the new building in relation to the perimeter of the leased premises.

The Tenant shall proceed at its own cost and expense to commence construction and shall prosecute the construction to completion with diligence. The new building shall be completed not later than one hundred eighty (180) days from commencement of construction subject, however, to unavoidable delays, i.e. delays due to strikes, act of God, inability to obtain labor or materials, governmental restrictions, enemy action, civil commotion, fire, unavoidable casualty or similar causes or any other causes beyond the reasonable control of Tenant.

No construction shall be commenced unless the Tenant, at Tenant's expense, has filed with the appropriate governmental body having jurisdiction with respect to the erection of the new building, plans, specifications, certificates and any other documents required for the construction of the new building by Tenant. The plans and specifications for the building shall have been approved by the Landlord, which approval Landlord shall not unreasonable delay or withhold.

4.    <u>OPTION PERIOD</u>

A.  Tenant, if not in default, has the option to renew this Lease for four (4) successive ten (10) year periods on the same terms and conditions herein contained, provided Tenant give Landlord six (6) months notice of its election to exercise each option prior to the end of the term hereof or extended term. Should Tenant neglect to exercise above options on the date as specified, Tenant's right to exercise said options shall not expire until fifteen (15) days after notice, by Landlord, of Tenant's failure to exercise said options.

B.  The Tenant will deliver up and surrender to the Landlord possession of the leased premises upon the expiration or termination of this lease, in good condition and repair as the same shall be at the commencement of said term (ordinary wear and decay excepted).

5.    <u>RENT</u>.  Tenant shall pay to the Landlord at the address hereinafter set forth, a fixed minimum rent in the amount of:

For the first five (5) years of the term;    $  87,500 per year; $ 7,291.67 per month
For the second five (5) years of the term;  $  96,250 per year; $ 8,020.83 per month
For the third five (5) years of the term;   $105,875 per year; $ 8,822.92 per month
For the fourth five (5) years of the term;  $116,462 per year; $ 9,705.17 per month

Rental for the remaining twenty (20) years of the primary term, and options, shall increase each five (5) year period based on the percentage increase in the Consumer Price Index for All Urban Consumers (CPI-U) (1982-84=100) over the base at the beginning of each respective five year period. In no event shall the increase be less



than ten percent (10%), nor greater than twenty percent (20%). Rent shall be paid in advance on the first day of each and every calendar month during the term of this lease. If the term shall commence on a day other than the first day of a month, then the rent shall be prorated for the balance of said month on a per diem basis.

6.    TAXES, UTILITY CHARGES, ETC. Tenant agrees to pay all charges for electricity, gas, heat, water telephone and other utility services on the leased premises, and all taxes and assessments on the leased premises for the period while this lease is in effect, such taxes and assessments to be prorated to the first and last days of the term. Tenant will be obligated to pay one-half (1/2) of the real estate taxes for the first three (3) month period after this Lease is executed as prorated on a monthly basis, and thereafter shall assume full responsibility for the payment of taxes, unless this Lease is terminated in accordance with Section 12 of this Lease.

7.    CONSTRUCTION AND ALTERATION OF BUILDING IMPROVEMENTS. Tenant will, at Tenant's expense, raze any improvements on the leased premises, except as may be provided hereinbelow, and construct on the leased premises any improvements, including, without limitation, a store building and parking area, and make such repairs, additions, alterations and improvements thereto as Tenant may deem desirable. Landlord shall not be obligated to maintain the improvements construction on the leased premises by Tenant, and all additions, alterations and improvements thereto made by Tenant, shall not become a part of the realty even if affixed to the realty, but shall remain the exclusive personal property of Tenant during the term of this Lease. On surrendering possession to Landlord, all building improvements then located on the leased premises shall become the exclusive property of the Landlord. Tenant agrees not to permit any liens to stand against the leased premises for work done or materials furnished to Tenant; provided, however, that Tenant may contest the validity of any such lien, but upon a final determination of the validity thereof, Tenant shall cause such lien to be paid and released of recorded without cost to Landlord. Tenant may sell any improvements, alterations, or additions made by Tenant on the leased premises to a third party, subject, however, to the provisions of this lease.

8.    TENANT'S FIXTURES. Tenant may install in the leased premises such fixtures and equipment as Tenant deems desirable and all of said items shall remain Tenant's property whether or not affixed to the leased premises. Tenant may remove said items from the leased premises at any time, but shall repair any damage caused by removal.

9.    INDEMNIFICATION AND INSURANCE.

A. Tenant hereby indemnifies and saves the Landlord harmless from any and all liability, damage, expense, causes of action, suites, claims or judgments, costs and attorney fees incurred arising from injury to person or damage to property on the

3



leased premises or caused by the willful or negligent act of the Tenant or the agents or employees of Tenant, unless caused by the sole negligence of Landlord.

B. Tenant, in its name and at its own expense, shall procure and continue in force, general liability insurance against damages occurring in the leased premises during the term of this Lease and any extension thereof. Such insurance shall be in an amount not less than One Million Dollars ($1,000,000) combined single limit for bodily injury and property damage. Such insurance shall name Landlord as an additional insured and shall be written in a company or companies authorized to engage in the business of general liability insurance in the state in which the leased premises are located. Tenant hereby agrees not to assign to any insurance company any right or cause of action for damage to the property of Tenant located on the leased premises which Tenant now has or may subsequently acquire against Landlord during the term of this Lease, and expressly waives all rights of recovery for such damage.

10.  <u>ASSIGNMENT AND SUBLETTING</u>.  Tenant may assign this Lease or sublet the whole or any part of the leased premises, but Tenant shall remain liable to Landlord for full performance of Tenant's obligations hereunder.

11.  <u>HOLDING OVER</u>.  If Tenant remains in possession of the leased premises after the expiration of this Lease and rent is paid and accepted such possession shall create a month-to-month tenancy on the terms therein specified, which tenancy may be terminated by either party by thirty (30) days notice to the other party.

12.  <u>LANDLORD'S REPRESENTATIONS AND WARRANTIES; CONDITIONS PRECEDENT</u>.  The lease term shall not commence and rental and other charges payable under this Lease shall not commence to accrue until the following representations, covenants, warranties and conditions have been fulfilled. Further, in the event Landlord's representations and warranties shall not be fulfilled within ninety (90) days of the date of this Lease, Tenant shall have the option to terminate this lease with full reservation of Tenant's rights to damages, if any.

A.  Landlord hereby represents, warrants and covenants the following are true:

(1) Landlord has full right and power to execute and perform this Lease and to grant the estate demised herein and that Tenant, on payment of the rent and performance of the covenants and agreements hereof, shall peaceably and quietly have, hold and enjoy the leased premises and all rights, easements, appurtenances and privileges belonging or in any way appertaining thereto during the lease term without molestation or hindrance of any person whomsoever.



(2)  Landlord is seized of an indefeasible estate in fee simple and has good and marketable title hereto free and clear from encumbrances and restrictions not agreed to in writing by Tenant.

B.  Tenant's obligations under this Lease are subject to the following conditions precedent:

(1)  There are no zoning or other ordinances, or title or other matters not agreed to in writing by Tenant, which will restrict the erection of any building or improvements as herein provided or the operation of a general mercantile business on the leased premises.

(2)  Tenant is able to obtain, at Tenant's expense, a leasehold policy of title insurance from a title insurance company satisfactory to Tenant, insuring Tenant that its leasehold interest is superior to and free and clear of all matters not agreed to in writing by Tenant.  Tenant shall order a commitment for a leasehold title policy within ten (10) days after the execution of this Lease. Tenant shall notify Landlord in writing within ten(10) days after receipt of the commitment if Tenant has any objections.  Landlord shall have the right, but not the obligation, to cure any objection raised by Tenant provided any such cure shall be completed within thirty (30) days.  If, at the expiration of thirty (30) days, Tenant is not satisfied with the condition of the title, unless Tenant waives this condition #2, either Landlord or Tenant may terminate this Lease.

(3)  Tenant shall have obtained its analysis of soil boring tests and environmental testing which are satisfactory to Tenant, in Tenant's sole discretion.

(4)  Tenant shall be able to and shall have obtained at its sole cost and expense the approval from the appropriate governmental authorities for the construction and operation of an Eckerd Drug Store on the premises.

13.   CONDEMNATION.  If any portion of the building or more than twenty percent (20%) of the parking area shall be taken by condemnation under any right of eminent domain or any transfer in lieu thereof, or in the event of the elimination without relocation of points of ingress and egress to the public roadways, Tenant may either (1) remain in possession with this Lease continuing in full force and effect, or (2) cancel this lease as of the date of such condemnation by notice to Landlord within one hundred eighty (180) days after said date even though Tenant may not have constructed any improvements on the leased premises.  In the event of any condemnation and whether or not Tenant elects to terminate this lease, Tenant shall be entitle to any and all awards or payments made in the condemnation proceedings in respect to any damage to (a)any improvements constructed on the leased premises by Tenant, and (b) Tenant's fixtures and equipment. Tenant shall not be entitled to any

5



apportionment or allocation out of the overall condemnation award in an allocation proceeding. No taking by or conveyance to any governmental authority shall be or be construed to be an eviction of Tenant or a breach of this agreement or be made the basis of any claim by the Tenant against the Landlord for damages, consequential or otherwise. In the event the leased premises are totally taken by condemnation under any right to eminent domain or any transfer in lieu thereof, Tenant shall have the right to cancel this lease effective as of the date of such taking.

14.    INTENTIONALLY OMITTED.

15.    <u>TENANT'S RIGHT OF FIRST REFUSAL.</u>  If during the lease term and all extensions thereof, landlord determines to sell all or any part of the leased premises and receives an acceptable bona fide offer therefor, Landlord, before making any agreement to sell, will give notice to Tenant stating landlord's desire to sell and the amount of such offer. Tenant shall have the exclusive right for thirty (30) days after receiving such notice to purchase the premises to which such offer refers, ant the amount of said offer, or for any lesser amount which Landlord may be willing to accept. If Tenant fails to exercise the said right and the leased premises are sold by Landlord to a third party, such sale shall nevertheless be amended subject to this lease, including this paragraph, and said right shall be applicable to any and all subsequent offers to purchase received by Landlord's successors and assigns.

16.    <u>EXCLUSIVE.</u>  Landlord covenants that it will not permit the operating of a drug prescription department in any other premises owned or controlled by Landlord and situated within 1,00 feet of the leased premises.

17.    <u>COMPLIANCE WITH LAWS.</u>  Should either Landlord or Tenant fail to comply with any of the terms of this Lease, each may, after thirty (30) days notice to the other, comply with any therewith, but each shall not be obligated to do so. The cost of such compliance shall be payable upon demand by the non-complying party to the performing party. This Section shall not apply to the payment of rent by Tenant.

18.    <u>NOTICES.</u>  Any notice provided for herein shall be given by registered or certified United States mail, postage prepaid, addressed, if to Landlord, at_____
_____, and if to Tenant, to Eckerd Drugs #792R, c/o Eckerd Corporation, P.O. Box 4689, Clearwater, Florida 34618. The person and the place to which notices are mailed may be changed by either party by notice to the other party.

19.    <u>LANDLORD'S CERTIFICATE.</u>  Upon Tenant's written request, and provided Landlord can do so truthfully, Landlord will certify in writing to all persons designated by Tenant (1) that Tenant has performed all Tenant's obligations and



is not in default under this Lease, (2) that this Lease is in full force and effect, and (3) that each person receiving such certification may rely thereon for all purposes. Landlord further agrees that in the event of any default by Tenant under this Lease, any mortgagee or other holder of a security interest in Tenant's leasehold or improvements and/or any assignee of Tenant may cure such default within the time allowed Tenant for same hereunder and continue this Lease in full force and effect.

20.    <u>REMEDIES CUMULATIVE</u>.  No remedy herein conferred upon or reserved to Landlord or Tenant shall exclude any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

21.    <u>DEFAULT</u>.  Each of the following shall be deemed a default by the Tenant and a breach of this lease:

A.  Any of the following which shall result in final adjudication against Tenant:

(1)  The filing of a bankruptcy petition by or against Tenant for adjudication, reorganization, or arrangement.

(2)  Any proceedings for dissolution or liquidation of Tenant.

(3)  Any assignment for the benefit of Tenant's creditors.

B.  Failure to (1) pay rent for a period of fifteen (15) days after receipt of notice; or (2) perform any other covenant or condition of this lease.  In the event Landlord gives Tenant written notice that Tenant has failed to pay rent, such late rent payment shall be subject to a five percent (5%) late charge.

C.  In the event of any default of Tenant, the Landlord shall serve written notice upon the Tenant that Landlord elects to terminate this lease upon a specified date not less than thirty (30) days after the date of the serving of such notice.  This lease shall then expire on the date so specified as if that date had been originally fixed as the expiration date of the term therein granted unless steps have, in good faith, been commenced promptly by the Tenant to rectify the same, and prosecuted to completion with diligence and continuity.  If the matter in questions shall involve building construction, and if Tenant shall be subject to unavoidable delay by conditions beyond the control of Tenant, the Tenant's time to perform shall be extended for a period commensurate with such delay.

D.  Upon termination of this Lease for Tenant's default, Landlord or its agents may immediately or at any time thereafter, re-enter and resume possession



of the leased premises and remove all persons and property therefrom either by summary dispossess proceedings or by a suitable actin or proceeding at law without being liable for any damages therefor.  No re-entry by Landlord shall bee deemed an acceptance of a surrender of this Lease.  Thereafter, Landlord may in its own behalf, relet any portion of said sum to any reasonable tenant and any reasonable use or purpose.  In connection with an such re-letting, the Landlord may make such changes on the premises and may grant such concessions of free rent as may be reasonably appropriate or helpful in effecting such lease.

E.  Landlord shall not be liable in any manner, nor shall Tenant's obligations hereunder be diminished by any failure of Landlord to relet the premises, or in the event of reletting, to collect rent, provided Landlord uses its best efforts in reletting the premises and in collecting rent.

F.  In the event of Tenant's default, Landlord shall be entitled to recover from Tenant, in addition to any damages becoming due hereunder, an amount equal to the amount of all rent reserved under this Lease, less the net rent, if any, collected by Landlord on reletting the leased premises, which shall be due and payable, by Tenant to Landlord, on the several days on which the rent reserved in this Lease would have become due and payable. Net rent collected on reletting by Landlord shall be computed by deducting from the gross rents collected all expenses incurred by Landlord in connection with the reletting of the Leased Premises, including broker's commission, reasonable attorney's fees and the cost of repairing, renovating or remodeling the leased premises, but not including the cost of performing any covenant required to be performed by Landlord.

22.    <u>SHORT FORM LEASE</u>.  This lease shall not be recorded, but it is agreed that upon request by either party, the parties will execute a short form of this lease which may be recorded by either party.

23.    <u>PARAGRAPH HEADINGS</u>.  The paragraph headings of this lease are inserted only for reference and do not affect the terms and provisions hereof.

24.    <u>RIGHTS OF SUCCESSORS</u>.  All of the rights and obligations of the parties under this lease shall bind and inure to the benefit of their respective heirs, personal representatives, successors and assigns.

25.    <u>BROKER'S COMMISSION</u>.  Landlord agrees to pay to Legend Properties and Ripco Real Estate Corp. (hereinafter known as Broker) a real estate commission pursuant to a separate agreement between Landlord and Broker.



IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above mentioned.

WITNESSES:

_____

_____
As to Landlord

GITOMER & COMPANY

By: _____
Irving Gitomer, President

Attest: _____
Marcia Gitomer, Secretary


WITNESSES:

_____

_____

ECKERD CORPORATION

By: _____

Attest: _____


STATE OF NEW JERSEY
COUNTY OF CAMDEN )

The foregoing instrument was acknowledged before me this 15th day of JUNE, 1995 by IRVING GITOMER and MARCIA GITOMER as PRESIDENT and SECRETARY, respectively of GITOMER & COMPANY, a NEW JERSEY corporation, on behalf of the corporation. They are personally known to me ~~or have produced~~ _____ as identification ~~and did~~ (did not) take an oath.

_____

JAMES T. TRUNDLE
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES JULY 26, 1998
_____

Notary Public


Printed Name of Notary Public

My Commission

Expires: July 26, 1998

9



STATE OF _Florida_ )
COUNTY OF _Pinellas_ )

The foregoing instrument was acknowledged before me this _9th_ day of _June_ ,
1995 by _Robert D. Doos_ and _Robert E. Lewis_ as
_Vice President_ and _Asst. Secretary_ , respectively of
_Eckerd Corp._ , a _Delaware_ corporation, on behalf of the
corporation.  They are personally known to me ~~or have produced~~ ------------ as
~~identification and did (did not) take an oath~~.

_____          Notary Public

_____          Printed Name of Notary Public

                                           My Commission

Expires:_____

Given under my hand and seal of office, this _9th_ day of _June_ , 1995.


_Barbara J. Eliason_
   Notary Public                            My Commission Expires:

BARBARA J. ELIASON
COMMISSION # CC 364246
EXPIRES MAY 24, 1998
BONDED THRU
ATLANTIC BONDING CO., INC.



Description
Block 407.01  Lots 7 & 8
Tax Map
Cherry Hill Township
Camden County, New Jersey

Beginning at a point at the intersection of the north westerly right-of-way line of BRACE ROAD, a.k.a. New Jersey State Highway Route 154, (100' R.O.W.) with the northeasterly right-of-way line of Kresson Road, a.k.a. Camden County Route 671, (49.5' R.O.W.), and extending thence:

1) Along the said northeasterly right-of-way line of Kresson Road N67°12'00"W a distance of 364.40' to a point, thence;

2) N26°39'40"E a distance of 203.57' to a point, thence;

3) S67°12'00"E a distance of 364.40' to a point along the aforementioned northwesterly right-of-way line of Brace Road, thence;

4) Along the said northwesterly right-of-way line of Brace Road S26°39'40"W a distance of 203.57' to a point and place of beginning.

Containing 74,012.5 Square Feet ±

Exhibit  "B"      EXHIBIT "B"

Landlord Initial

Tenant Initial

# EXHIBIT B

## AMENDMENT TO LEASE

**THIS AMENDMENT TO LEASE** (this "*Amendment*") is made effective November 1, 2023 (the "*Effective Date*") by and between GITOMER FAMILY REALTY, LLC, a New Jersey limited liability company ("*Landlord*"), and ECKERD CORPORATION, a Delaware corporation ("*Tenant*," and together with the Landlord, the "*Parties*" and each, a "*Party*").

## RECITALS

**WHEREAS**, Landlord and Tenant are parties to that certain lease agreement dated May 19, 1995 (as amended from time to time thereafter, the "*Lease*"), with respect to that certain premises located at 1360 Brace Road Cherry Hill, New Jersey 08034-3215, which premises is defined and more particularly described in the Lease (the "*Premises*");

**WHEREAS**, on October 15, 2023, Tenant and certain of its debtor affiliates (collectively, the "*Debtors*") commenced a case (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "*Bankruptcy Code*") which is now pending in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*"). The Chapter 11 Cases are being jointly administered under Case Number 23-18993; and

**WHEREAS**, Landlord and Tenant desire to modify certain terms and conditions of the Lease, effective as of the Restructuring Effective Date (as hereinafter defined), as amended by this Amendment.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1.     Capitalized Terms.  Capitalized terms used and not otherwise defined herein shall have the respective meaning assigned to such terms in the Lease.

2.     Effective Date.  This Amendment, and each of its amendments, modifications, and waivers with respect to the Lease as set forth herein, shall be effective on the date that the Lease is assumed or assigned in the Chapter 11 Cases, whether pursuant to (a) procedures approved by the Bankruptcy Court or (b) entry of an order of the Bankruptcy Court approving the assumption or assignment of the Lease, including pursuant to or in connection with a sale of Tenant's assets pursuant to Section 363 of the Bankruptcy Code, confirmation of Tenant's chapter 11 plan of reorganization in the Chapter 11 Cases, or a stand-alone motion for assumption or assignment of the Lease (in each case, the "*Restructuring Effective Date*"); *provided, however*, that Tenant shall obtain the benefit of this Amendment, and this Amendment shall be binding on Landlord, beginning on the Effective Date hereof.  In the event the Restructuring Effective Date does not occur, or the Lease is rejected in accordance with the Bankruptcy Code, this Amendment shall be null and void in all respects, and nothing in this Amendment shall give rise to any claim, causes of action, or damages (compensatory or consequential) against either Party.  Nothing contained in this Amendment is intended to be or shall be construed as or deemed an assumption or an assignment of the Lease, as amended hereby, or any contract or document related thereto under section 365 of the Bankruptcy Code. Prior to the Restructuring Effective Date, Tenant expressly reserves its right, in its sole and absolute discretion, to assume, reject, or assign the Lease pursuant to section 365 of the Bankruptcy Code.

1

Rite Aid Store No. 10445

3.    Lease Modification.

(a)    Term.  Notwithstanding anything in the Lease to the contrary, Landlord and Tenant acknowledge and agree that the current term of the Lease is set to expire as of 11/30/2035 (the "**Original Term**").  Landlord and Tenant further acknowledge and agree that the Original Term is hereby revised to expire on 12/31/2033 ("**Revised Term**").  Such Revised Term, and any applicable existing options to renew, shall be on the same terms and conditions as set forth in the Lease, except as modified or amended in this Amendment.

(b)    Rent.  Landlord and Tenant acknowledge and agree that, from and after the Effective Date and through the remainder of the Revised Term, Tenant shall only be obligated to pay rent (exclusive of any percentage rent, common area maintenance charges, taxes, and insurance premiums and all other additional rent payable directly to the Landlord) in the amount of $113,874.00 per annum ("**Base Rent**"), payable on the first (1st) day of each month in equal installments of $9,489.50.  In the event that, upon the Restructuring Effective Date, Tenant has paid rent in excess of the amount herein specified for the period specified above, then Tenant shall be entitled to offset such excess amounts against the next installment(s) of Base Rent coming due under the Lease until such time as such excess amounts have been recouped in full by Tenant.

(c)    Abatement.  Landlord hereby acknowledges and agrees that Base Rent with respect to the Abatement Period (as defined below) is hereby abated and forgiven (the "**Abated Rent**") in full. Landlord hereby waives any remedy under, or with respect to, the Lease or at law and/or equity arising in connection with, or otherwise related to, the Abated Rent.  As used herein, "**Abatement Period**" shall mean the period beginning on the date the Tenant emerges from its Chapter 11 Cases (the "**Initial Date**") and ending on the last calendar day of the third full calendar month after the calendar month in which the Initial Date occurs.

(d)    Waiver of Claims.  Landlord hereby waives, releases, and discharges Tenant and all of its affiliated companies, the Debtors (as defined in the Chapter 11 Cases), and their bankruptcy estates, and their respective successors and assigns, from any and all claims, damages, obligations, liabilities, actions, and causes of action of every kind and nature whatsoever it may have for any cure payments or other amounts due and owing under the Lease, or that otherwise arose under or in connection with the Lease, through and including the date hereof, including but not limited to claims for so-called "stub rent," (whether or not asserted as administrative priority claims pursuant to Section 503(b) of the Bankruptcy Code) whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, now existing or hereafter arising, including any claims and causes of action for damages, payments, or amounts owing or that may become owing pursuant to section 365(b) of the Bankruptcy Code.

(e)    Attorneys' Fees.  Landlord further acknowledges and agrees that, notwithstanding anything to the contrary in the Lease, Landlord shall not be entitled to receive from Tenant or its affiliates (or charge as rent due from Tenant or its affiliates) any attorneys' fees incurred by Landlord in connection with this Amendment.

4.    No Default and Waiver of Charges.  Landlord acknowledges and affirms that as of the Effective Date, Tenant is not in default under any of the terms, conditions, or provisions of the Lease, and that there exist no events or circumstances which, with the passage of time or the giving of notice or both, constitutes a default under the Lease (including, without limitation, any failure of Tenant to meet its obligations to continuously operate in the Premises).  Landlord further acknowledges and agrees that it has no offsets, claims, or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease.  To the extent that any notices of default or non-payment have been delivered to Tenant, all such notices are hereby waived and of no further force or effect.  No default interest, late fees,

2

charges, surcharges, or other fees shall be due, and all such interest, late fees, charges, surcharges, or other fees are waived and shall not apply.

5.      Force Majeure.  Notwithstanding anything to the contrary contained in the Lease, it is understood and agreed by the Parties that in the event Tenant shall be prevented from operating its business in a commercially reasonable manner by a cause or causes beyond Tenant's control which shall include, without limitation, all labor disputes, civil commotion, shelter in place orders from any governmental authority, widespread disease or other public health and safety concerns (including, without limitation, COVID-19 and SARS-CoV-2), acts of war, war—like operations, invasion, rebellion, hostilities, military or usurped power, sabotage, terrorism, governmental regulations or controls, fire or other casualty, inability to obtain any material, services or financing, or through Acts of God (collectively, "*Force Majeure*"), then Tenant shall be excused from, and shall not be responsible for any failure to perform, any of its covenants and obligations under the Lease (other than payment obligations including, without limitation, the obligation to pay Base Rent, any percentage rent, common area maintenance charges, taxes, and insurance premiums and all other additional rent payable directly to the Landlord, or obligations that may be cured by the payment of money (*e.g.*, maintaining insurance)) for any period that Force Majeure prevents Tenant from operating its business as described herein.

6.      Confidentiality.  Tenant and Landlord will keep confidential (a) the terms of this Amendment, and (b) all negotiations and communications, including each Party's representatives in connection with this Amendment (collectively, "*Confidential Information*").  Tenant and Landlord will not disclose or make available any Confidential Information to any other person or entity, except (i) accountants, brokers, attorneys, and other agents of Landlord and Tenant for the sole purpose of providing advice to Landlord and Tenant in connection with the Confidential Information and who agree to preserve the confidential nature of same, or (ii) as required by law.

7.      Authority.  Each Party represents and warrants that it has the authority and power to enter into this Amendment and that this Amendment constitutes a legal, valid and binding obligation of that Party.

8.      Notices.

(a)      Notwithstanding anything to the contrary contained in the Lease, any notices required or permitted to be sent to Tenant under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

If by Certified Mail:
ECKERD CORPORATION
P.O. Box 3165
Harrisburg PA 17105
Attn: Legal Department

If by Overnight Courier:
ECKERD CORPORATION
200 Newberry Commons
Etters PA 17319
Attn: Legal Department

(b)      Notwithstanding anything to the contrary contained in the Lease any notices required or permitted to be sent to Landlord under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

Rite Aid Store No. 10445

| | |
|---|---|
| Name: | GITOMER FAMILY REALTY, LLC |
| Address: | 131 Bentley Drive |
| | Mount Laurel, NJ 08054 |
| Email: | jongitomer@comcast.net |
| Telephone: | 856-816-6357 |

9.    <u>Miscellaneous</u>.

(a)    Landlord and Tenant each hereby represents that it has dealt with no party or broker in connection with this Amendment except for A&G Real Estate Partners ("***Tenant's Broker***").  Any and all fees that may be due to Tenant's Broker shall be paid by Tenant pursuant to a separate agreement.  Insofar as each Party knows, no other broker negotiated this Amendment or is entitled to any commission in connection therewith.  Landlord and Tenant each agrees to indemnify, defend and hold the other harmless from and against any and all claims, loss, cost and damages (including reasonable attorney fees and court costs) suffered or incurred by the representing Party as a result of a breach of this representation.

(b)    This Amendment may be executed in counterparts, each of which shall constitute an original, and which together shall constitute one and the same agreement.  This Amendment may be executed or delivered by electronic or facsimile means, and copies of executed signature pages stored electronically in portable document format (.pdf) shall be binding as originals.  Neither Party shall record this Amendment without the express prior written consent of the other Party.

(c)    Subject to the other terms of this Amendment, each of Landlord and Tenant agree to execute and deliver such other instruments and perform such other acts, in addition to the matters herein specified, as may be reasonably necessary, from time to time, to effectuate the modifications, waivers and amendments contemplated by this Amendment.

(d)    This Amendment, and all covenants contained herein, shall be binding and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.

(e)    The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect.

(f)    Except as modified as set forth in this Amendment, all of the terms and provisions of the Lease remain unchanged and in full force and effect and Landlord and Tenant hereby ratify and confirm same.  Landlord and Tenant acknowledge and agree that the Lease, as modified by this Amendment, sets forth the entire agreement between Landlord and Tenant and there are no other agreements, understandings, undertakings, representations, or warranties among the Parties with respect to the subject matter hereof except as set forth herein.  In case of any conflict between the terms and provisions of the Lease and the terms and provisions of this Amendment, the terms and provisions of this Amendment shall control.

*[signature pages follow]*

4

Rite Aid Store No. 10445

**IN WITNESS WHEREOF**, the Parties hereto have executed this Amendment effective as of the Effective Date.

**LANDLORD:**

GITOMER FAMILY REALTY, LLC

By:_____

Name: Jonathan Gitomer    12-18-23

Title: Authorized Representative

**TENANT:**

ECKERD CORPORATION

By:_____

Name:  Lisa M. Winnick

Title:  Vice President

5

**EXHIBIT C**

| BLOCK NUMBER | LOT NUMBER | | | 2025 FINAL TAX BILL | AMOUNT OF TAX |
|---|---|---|---|---|---|
| 407.01 | 8 | | | | |

| | | | | | | AMOUNT OF TAX |
|---|---|---|---|---|---|---|
| Property | 1360 BRACE RD | | | TOWNSHIP TAX | 0.632 | 11154.80 |
| Building | 1SCB | | | | | |
| Additional | | | | TOWNSHIP OPEN SPACE TAX | 0.010 | 176.50 |
| Dimensions | 203X364 | | | CAMDEN COUNTY TAX | 0.913 | 16114.45 |
| Bank | | Mortgage | Tax Acct  12954 | COUNTY OPEN SPACE TAX | 0.033 | 582.45 |

**ASSESSED VALUATION INFORMATION**

| | | | SCHOOL TAX | 2.704 | 47725.60 |
|---|---|---|---|---|---|
| LAND: 544000 | IMPROVEMENTS: 1221000 | TOTAL: 1765000 | MUNICIPAL LIBRARY TAX | 0.056 | 988.40 |
| EXEMPTIONS: | NET TAXABLE VALUE: 1765000 | | FIRE TAX | 0.353 | 6230.45 |

|  |  |  |
|---|---|---|
| 2025 TOTAL TAX | 4.701 | 82972.65 |
| LESS DEDUCTION: | | 0.00 |

GITOMER FAM REALTY LLC %RITE AID
PO BOX 182701
COLUMBUS OH  43218

| | | |
|---|---|---|
| 2025 NET TAX | | 82972.65 |
| LESS 2025 TAX PREV. BILLED | | 41694.25 |
| BALANCE OF 2025 TAX | | 41278.40 |

| 2025 4TH QTR DUE NOV 1, 2025 | 20,639.20 | 2025 3RD QTR DUE AUG 1, 2025 | 20,639.20 |
|---|---|---|---|

| INFORMATION FOR TAX PAYERS | DISTRIBUTION OF TAXES |
|---|---|
| MAKE CHECK PAYABLE TO: <br><br> MAIL TO: | |
| ******PAYMENT DEADLINES******* <br> 3RD QTR TAXES ARE DUE BY AUG 25TH <br> WITHOUT ANY FURTHER GRACE PERIOD. <br><br> 4TH QTR TAXES ARE DUE BY NOV 10TH <br> WITHOUT ANY FURTHER GRACE PERIOD. <br><br> TAXES REMAINING UNPAID AFTER THOSE <br> DATES ARE SUBJECT TO INTEREST FROM <br> AUG 1ST AND NOV 1ST. <br><br> ONLINE PAYMENTS:  WWW.CHNJ.GOV | |

STATE AID USED TO OFFSET LOCAL PROPERTY TAXES: The budgets of government agencies funded by this tax bill include State aid used to reduce property taxes.  State aid offset information for the current year municipal tax bills will start becoming available at the end of July.  Access the Division of Local Government Service' website at http://www.nj.gov/dca/divisions/dlgs/resources/property_tax.html to find (based on assessed value of this parcel) the amount of State aid used to offset property taxes on this parcel.

## 2025-4 · 2025-3

| TAX COLLECTOR'S STUB - DETACH AND RETURN WITH YOUR CHECK <br> 2025 4TH QUARTER TAX DUE NOVEMBER 1, 2025 | TAX COLLECTOR'S STUB - DETACH AND RETURN WITH YOUR CHECK <br> 2025 3RD QUARTER TAX DUE AUGUST 1, 2025 |
|---|---|

| BLOCK NUMBER 407.01 | LOT NUMBER 8 | QUALIFICATION | BANK CODE | | BLOCK NUMBER 407.01 | LOT NUMBER 8 | QUALIFICATION | BANK CODE |
|---|---|---|---|---|---|---|---|---|

| TAX ACCOUNT NUMBER 12954 | TAX BILL NUMBER | TAX AMOUNT DUE | DUE NOVEMBER 1, 2025 | | TAX ACCOUNT NUMBER 12954 | TAX BILL NUMBER | TAX AMOUNT DUE | DUE AUGUST 1, 2025 |
|---|---|---|---|---|---|---|---|---|
| | | | 20639.20 | | | | | 20639.20 |

| | | |
|---|---|---|
| INTEREST | | INTEREST |
| CASH | | CASH |
| CHECK | | CHECK |
| TOTAL | | TOTAL |

GITOMER FAM REALTY LLC %RITE AID
1360 BRACE RD

GITOMER FAM REALTY LLC %RITE AID
1360 BRACE RD



