**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
Alison R. Benedon
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com
abenedon@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NEW RITE AID, LLC, *et al.*,[1] | ) Case No. 25-14861 (MBK) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF DEBTORS' MOTION TO ENFORCE THE SALE**
**ORDER AND COMPEL PERFORMANCE BY PURCHASERS**
**BRAHMAJI VALIVETI AND PRAVEEN CHALLA UNDER THE SECOND**
**AMENDED AND RESTATED PURCHASE AND SALE AGREEMENT**

**PLEASE TAKE NOTICE** that on **September 30, 2025 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, the above captioned debtors and debtors in possession (collectively, "Debtors") shall move the *Debtors' Motion to Enforce the Sale*

---

[1] The last four digits of New Rite Aid, LLC's tax identification number are 1483. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, PA 17319.

*Order and Compel Performance by Purchasers Brahmaji Valiveti and Praveen Challa Under the Second Amended and Restated Purchase and Sale Agreement* (the "**Motion**") before the Honorable Michael B. Kaplan, United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Trenton, NJ 08608, for entry of an order, substantially in the form submitted herewith, enforcing sellers' clear contractual rights.

**PLEASE TAKE FURTHER NOTICE** that in support of the relief requested in the Motion, the Debtors shall rely on the accompanying Motion, which sets forth the relevant legal and factual bases upon which the relief requested should be granted. A proposed Order granting the relief requested in the Motion is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the *General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002* (the "**General Order**") and the *Commentary Supplementing Administrative Procedures* dated as of March 2004 (the "**Supplemental Commentary**") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be received no later than seven (7) days before the hearing date set forth above.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in this chapter 11 case may be obtained free of charge by visiting the website of Kroll Restructuring Administration, LLC at https://restructuring.ra.kroll.com/RiteAid2025.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d) and the relief requested may be granted without further notice or hearing.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: September 4, 2025 | */s/ Michael D. Sirota* |
| | **COLE SCHOTZ P.C.** |
| | Michael D. Sirota, Esq. |
| | Warren A. Usatine, Esq. |
| | Felice R. Yudkin, Esq. |
| | Seth Van Aalten, Esq. (admitted *pro hac vice*) |
| | Court Plaza North, 25 Main Street |
| | Hackensack, New Jersey 07601 |
| | Telephone: (201) 489-3000 |
| | msirota@coleschotz.com |
| | wusatine@coleschotz.com |
| | fyudkin@coleschotz.com |
| | svanaalten@coleschotz.com |
| | |
| | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| | Andrew N. Rosenberg (admitted *pro hac vice*) |
| | Alice Belisle Eaton (admitted *pro hac vice*) |
| | Christopher J. Hopkins (admitted *pro hac vice*) |
| | Sean A. Mitchell (admitted *pro hac vice*) |
| | Alison R. Benedon |
| | 1285 Avenue of the Americas |
| | New York, New York 10019 |
| | Telephone: (212) 373-3000 |
| | Facsimile: (212) 757-3990 |
| | arosenberg@paulweiss.com |
| | aeaton@paulweiss.com |
| | chopkins@paulweiss.com |
| | smitchell@paulweiss.com |
| | abenedon@paulweiss.com |
| | |
| | *Co-Counsel for Debtors and Debtors in Possession* |

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
Alison R. Benedon
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com
abenedon@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NEW RITE AID, LLC, *et al.*,[1] | ) Case No. 25-14861 (MBK) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' MOTION TO ENFORCE THE SALE**
**ORDER AND COMPEL PERFORMANCE BY PURCHASERS**
**BRAHMAJI VALIVETI AND PRAVEEN CHALLA UNDER THE SECOND**
**AMENDED AND RESTATED PURCHASE AND SALE AGREEMENT**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above captioned debtors and debtors in possession (collectively, "Debtors") respectfully state the following in support of this motion (this "Motion"):

---

[1] The last four digits of New Rite Aid, LLC's tax identification number are 1483. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, PA 17319.

51210064

**Introduction**

1.  New Rite Aid LLC ("Rite Aid"), Thrifty Payless, Inc. ("Thrifty"), and Rite Aid of New York, Inc. (together with Thrifty, "Sellers") bring this motion to enforce Sellers' clear contractual rights and hold Brahmaji Valiveti and Praveen Challa (together, "Buyers") to their promises.  As part of these Chapter 11 cases, Sellers and Buyers entered into the *Second Amended and Restated Purchase and Sale Agreement* (the "Second Amended PSA")[2] whereby, among other things, Buyers agreed to purchase certain assets from Sellers, including prescription files, patient records, all in-stock items of prescription pharmaceutical inventory, and other related invoices, books and records (the "Purchased Assets").  The sales closed on various dates between July 11, 2025 and August 13, 2025 and Buyers took possession of the Purchased Assets.  Despite the closings having occurred on such dates, ***Buyers have still not paid more than $2.8 million owed to Sellers under the Second Amended PSA***.

2.  Notwithstanding their contractual commitments, Buyers refuse to pay the Purchase Price on the mistaken belief that they are entitled to withhold payment because the volume of prescriptions dropped in the weeks leading up to the Closing Date.  Despite their protestations, Buyers did not purchase a guarantee that the customers who purchased prescriptions at the applicable Rite Aid Stores would choose to become Buyers' customers.  To the contrary, Buyers specifically acknowledged that Rite Aid was "winding down the business at the Stores." *See* Second Amended PSA § 4(b). Recognizing the impact that the Sellers' wind down efforts and the chapter 11 cases could have on prescription volume, the Buyers negotiated for protections in the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Second Amended PSA.

2

51210064

form of a purchase price adjustment mechanism in the Second Amended PSA. Buyers were not, however, entitled to withhold payment of the purchase price.

3. Buyers also have taken the view, without support, that Sellers failed to use commercially reasonable efforts to maintain their Pharmacy business at the applicable Store as required by the Second Amended PSA. Second Amended PSA § 4(b). Not only is there no factual support for such Buyers' position, but Buyers did not raise this issue prior to Closing (and accepting the Purchased Assets) when they agreed that "Seller has performed and complied in all material respects with all agreements, covenants and obligations" in the Second Amended PSA. *Id.* § 15(b).

4. Although Buyers may now wish that it had agreed to pay less for the Purchased Assets, their contractual commitments remain. Yet, Buyers are attempting to circumvent their clear contractual obligations to pay Sellers the full amounts owed for their purchase of the Purchased Assets to the tune of more than $2.8 million. Buyers cannot avoid their contractual obligations and seek a reduction to the Purchase Price that they did not bargain for in the Second Amended PSA. The Court can and should apply the plain language of the Second Amended PSA and enter an order requiring Buyers to pay the Purchase Price to Rite Aid within three (3) business days of entry of such order.

5. The Second Amended PSA also provides for the allowance and payment of Sellers' attorneys' fees incurred in bringing this dispute. In light of the Buyers' failure to comply with the plain, unambiguous terms of the Second Amended PSA, Buyers should be required to pay the Sellers' reasonable attorneys' fees.

**Jurisdiction and Venue**

6. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to (1) 28 U.S.C §§ 157 and 1334, the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); (2) paragraph 45 of the Sale Order ("This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order."); (3) paragraph 20(q) of the PSA (stating that disputes regarding the interpretation of the PSA "will be brought and determined only in [] the Bankruptcy Court); and (4) the Court's jurisdiction to interpret and enforce its own orders, *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also Denunzio v. Ivy Holdings, Inc (In re E. Orange Gen. Hosp., Inc.)*, 587 B.R. 53, 73 (D.N.J. 2018) (finding that bankruptcy court had jurisdiction over proceedings to enforce a sale order). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

8. The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code and rules 2002, 6004, and 9013 of the Federal Rules of Bankruptcy Procedure.

**Background**

**A.    The Purchase and Sale Agreements**

9. In accordance with the bidding procedures approved by the Court, on May 13, 2025, Buyers submitted a proposed bid and transaction documents (the "Bid Documents") to the Debtors to acquire certain pharmacy associated with Rite Aid's retail locations in California and

4

New York.[3]  On May 15, 2025, Buyers entered into a purchase and sale agreement (the "Initial PSA") that was consistent with the Bid Documents previously submitted by the Buyers.  The Initial PSA was amended on May 23, 2025 (the "Amended and Restated PSA" and together with the Initial PSA and the Second Amended PSA, the "PSAs") and again on June 11, 2025.  On May 21, 2025, the Bankruptcy Court approved the Initial PSA, as amended by the Amended and Restated PSA and the Second Amended PSA, via a Sale Order [Docket No. 472]

10. Under the Second Amended PSA, Buyers agreed to purchase from the Sellers certain pharmacy assets with respect to Pharmacies listed on Schedule A attached thereto, including but not limited to, "all prescription records, patient records, lists and profiles of the applicable Pharmacy, in each case, in the applicable Seller's possession and readily available for no less than the 3-year period (or such time period mandated by state and federal laws) immediately preceding the respective Closing Date."  Second Amended PSA, § 1(a).

11. On each Closing Date, Sellers agreed to "surrender possession of the applicable Purchased Assets to the applicable Buyer with respect to the applicable Store or Stores," Second Amended PSA, § 5(b), and Buyers agreed to "pay to the applicable Seller the amounts listed below by wire transfer of immediately available funds to the account designated by such Seller."  *Id.* § 5(c).  The Parties agreed to a Purchase Price set forth on Schedule A to the Second Amended PSA, Second Amended PSA, Sch. A., and also agreed that such price "will decrease in the event there is a reduction in the Current Volume at any Pharmacy between the date of this Agreement and each respective Closing Date."  *Id.* § 6(b).

12. Paragraph 6(b) of the Second Amended PSA provides a method for the recalculation of the Purchase Price that takes into account any reductions of the Current Volume

---

[3] Buyers were not represented by counsel in connection with the Bid Documents and the negotiation of the PSAs.

5

51210064

reflected on Schedule A to the Second Amended PSA at the time the Second Amended PSA was executed:

> (b)    The Parties agree that the applicable purchase price set across the respective Store on Schedule A attached hereto (the "Target Records Purchase Price"), will decrease in the event there is a reduction in the Current Volume at any Pharmacy between the date of this Agreement and each respective Closing Date, in case such reduction shall be in excess of the Prescription Rate Threshold (as defined below), which decrease shall be calculated as follows:
>
> (i) on or after the last day of business of the respective Pharmacy (the "Last Business Day"), the Parties shall measure, and agree on, the average weekly prescription count at each respective Pharmacy in the twenty-six (26) weeks prior to, and ending on, the Saturday immediately prior to the Last Business Day, but excluding any week that includes a national holiday (each count, a "Verification Date Volume"); and
>
> (ii) in the event the respective Verification Date Volume is less than the respective Current Volume by 10% or more (the "Prescription Rate Threshold"), then the Target Records Purchase Price shall be reduced proportionately, by such percentage minus the Prescription Rate Threshold. Solely for the purpose of example, if the decrease from the respective Current Volume to the respective Verification Date Volume is 15%, then the respective Target Records Purchase Price shall be adjusted and reduced by 5%. The Parties agree that the calculation pursuant to this Section 6 shall include any prescriptions transferred by the applicable Seller to the applicable Buyer prior to each respective Closing Date as if such Seller had filled such prescriptions itself.

*Id.*[4]

13.    Paragraph 4(b) of the Second Amended PSA, titled "Conduct of Business of Sellers," provides as follows:

> From the date of this Agreement until the applicable Closing Date, except as otherwise provided in this Agreement or approved in writing by the applicable Buyer (such approval to not be unreasonably withheld, delayed or conditioned), each Seller will use commercially reasonable efforts to carry on and maintain its Pharmacy business at the applicable Store to maintain in the Ordinary Course (i) normal operating hours and staffing

---

[4]    The twenty-six week "look back period" for measuring the weekly prescription count and recalculation of the Purchase Price was a feature of the Buyers' bid for the Purchased Assets.

6

51210064

> levels and (ii) the Purchased Assets. Each Seller shall use commercially reasonable efforts to maintain the prescription volume at the respective Store, and will not remove or transfer any of the Purchased Assets from the respective Store other than in the Ordinary Course. "Ordinary Course" means with respect to an action taken by a person, that such action is substantially consistent with the ordinary and usual course of operations of the business, taken as a whole, taking into account the contemplation, commencement and pendency of the Bankruptcy Cases. Notwithstanding anything herein to the contrary, each Buyer acknowledges that Sellers may be winding down the business at the Stores and as such, the operating hours, inventory and staffing levels may change accordingly and any such changes shall not be deemed a breach of this Section 4(b).

*Id.* § 4(b).

14. In consummating the transactions contemplated by the Second Amended PSA, Buyers agreed that the following "closing condition" was satisfied by Sellers:

> (i) the applicable Seller has performed and complied in all material respects with all agreements, covenants and obligations contained in this Agreement that are required to be performed or complied with by such Seller by it at or prior to the applicable Closing Date and each of the representations and warranties of such Seller contained in Section 12 of this Agreement with respect to the applicable Stores shall be true and correct in all material respects on the applicable Closing Date as though made on such date[.]

Second Amended PSA § 15(b)(i).

15. The Closing Date of the transactions occurred on various dates between July 11, 2025, and August 6, 2025, as detailed on Schedule A to the PSA. *Id.* § Sch. A. On those dates, Sellers surrendered the Purchased Assets to the Buyers, including the "prescription records, patient records, lists and profiles of the applicable Pharmacy."[5]

16. ***Notwithstanding the fact that the Closing Date of the transactions occurred, as of the date hereof, Buyers have not paid the Purchase Price to the applicable Seller.*** Based upon

---

[5] It has also come to the Debtors' attention that, following execution of the Initial PSA, Buyers failed to take commercially reasonable steps to ensure that the customers maintained their prescriptions at the applicable Stores such that the prescriptions could be transferred to the Buyers at Closing.

7

51210064

the Sellers' records, and after accounting for the Purchase Price adjustments agreed to paragraph 6(b) of the Second Amended PSA, Buyers are contractually obligated to pay the applicable Sellers the following amounts:

| Pharmacy/Seller Store # | Store/Store Address | Records Purchase Price | Inventory Purchase Price |
|---|---|---|---|
| Rite Aid Store #2010 | 4046 Broadway New York, NY | $230,000.00 | $343,042.63 |
| Rite Aid Store #5815 | 100 China Grade Loop Bakersfield, CA | $355,000.00 | $213,770.02 |
| Rite Aid Store #5674 | 405 West Main Street Brawley, CA | $383,535.74 | $204,970.59 |
| Rite Aid Store #5690 | 1380 Barstow Road Barstow, CA | $167,578.15 | $199,874.88 |
| Rite Aid Store #636 | 519 Butternut Street Syracuse, NY | $391,388.77 | $366,552.16 |
|  | **TOTAL** | **$1,527,502.66** | **$1,328,210.28** |

## ARGUMENT

### I. Buyers Should be Held to Their Contractual Commitments and Ordered to Pay the Purchase Price to the Debtors

17. Without any basis in the PSAs, Buyers have improperly refused to pay the Sellers the full amount they are owed under the Second Amended PSA for the Purchased Assets. Under the clear and unambiguous terms of the Second Amended PSA, Sellers agreed, on the Closing Date, to "pay to the applicable Seller the amounts listed below by wire transfer of immediately available funds to the account designated by such Seller." Second Amended PSA § 5(c). With the Closing Date for each applicable Seller having occurred – and the Buyers having taken possession of the Purchased Assets – Buyers' failure to fund the Purchase Price is a violation of the terms of the Second Amended PSA.

8

51210064

18. Buyers have taken the position in correspondence with the Debtors' counsel that it should not have to pay the Purchase Price because the Sellers purportedly failed to "use commercially reasonable efforts to carry on and maintain its Pharmacy business at the applicable Store to maintain in the Ordinary Course (i) normal operating hours and staffing levels and (ii) the Purchased Assets" and "use commercially reasonable efforts to maintain the prescription volume at the respective Store." Second Amended PSA § 4(b). This argument is without merit for several reasons.

19. First, Buyers have not provided any factual support for this contention, nor could they. The fact is that any reduction in prescription volume prior the Closing Date was caused by normal attrition of customers, something the Buyers recognized could happen because they acknowledged that Sellers are winding down their business. *Id.* ("Notwithstanding anything herein to the contrary, each Buyer acknowledges that Sellers may be winding down the business at the Stores and as such, the operating hours, inventory and staffing levels may change accordingly and any such changes shall not be deemed a breach of this Section 4(b)."). Second, in making this argument Buyers ostensibly argue that the Sellers are in material breach of the Second Amended PSA after the occurrence of the applicable Closing Date. Courts have held, however, that "a party may not refuse to perform its contractual obligations after a material breach while simultaneously retaining the benefits of a contract." *Post Holdings, Inc. v. NPE Seller Rep LLC*, No. CV 2017-0772-AGB, 2018 WL 5429833, at *5 (Del. Ch. Oct. 29, 2018) (citing *DeMarie v. Neff*, No. CIV.A. 2077-S, 2005 WL 89403, at *5 (Del. Ch. Jan. 12, 2005)). That is exactly what Buyers are doing here – belatedly claiming a material breach of the Second Amended PSA by the Buyers, retaining the benefits of the Purchased Assets, and refusing to perform its contractual obligations under the Second Amended PSA to pay the Purchase Price. Finally, Buyers new position is inconsistent

9

51210064

with their prior stance on Sellers' compliance with the representations, warranties, and acknowledgements in the Second Amended PSA. In closing and taking title to the Purchased Assets, Buyers agreed on the relevant Closing Dates that "the applicable Seller has performed and complied in all material respects with all agreements, covenants and obligations" in the Second Amended PSA. *Id.* § 15(b)(i). Buyers' new tune is simply a transparent attempt to avoid their contractual obligations under the Second Amended PSA that should be rejected by the Court.

20. In light of the foregoing, Buyers are contractually obligated to pay the Purchase Price to the Debtors in accordance with the terms of the Second Amended PSA and the Court should enter an order compelling the Buyers do to just that.

## II. Buyers Should be Ordered to Pay Sellers' Reasonable Attorneys' Fees and Court Costs Incurred in Bringing this Dispute

21. Section 20(j) of the Second Amended PSA provides that, "[i]f either Party takes legal action in relation to the interpretation or enforcement of this Agreement, the reasonable attorneys' fees and court costs incurred by the party prevailing in such legal action shall be borne by the non-prevailing party, whether or not such controversy or claim is litigated or prosecuted to judgment." *Id.* § 20(j). In light of Buyers' violation of the Second Amended PSA described above, the Court should order Buyers to pay Sellers' reasonable attorneys' fees and court costs incurred by the Sellers to enforce the terms of the Second Amended PSA.

[*Remainder of Page Intentionally Left Blank*]

## **Conclusion**

**WHEREFORE,** for the foregoing reasons, the Court should enter an order enforcing the PSA and requiring the Buyer to pay the Purchase Price to Rite Aid within three (3) business days of entry of such order.

Dated: September 4, 2025

/s/ Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
Alison R. Benedon
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com
abenedon@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,[1]<br><br>　　　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

# ORDER GRANTING DEBTORS' MOTION TO ENFORCE THE SALE ORDER AND COMPEL PERFORMANCE BY PURCHASERS BRAHMAJI VALIVETI AND PRAVEEN CHALLA UNDER THE SECOND AMENDED AND RESTATED PURCHASE AND SALE AGREEMENT

The relief set forth on the following pages, numbered three (3) and (4), is **ORDERED**.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
Alison R. Benedon
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com
abenedon@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and
Debtors in Possession*

(Page | 3)
Debtors: NEW RITE AID, LLC, et al.
Case No. 25-14861 (MBK)
Caption of Order: Order Granting Debtors' Motion to Enforce the Sale Order and Compel Performance by Purchasers Brahmaji Valiveti and Praveen Challa Under the Second Amended and Restated Purchase and Sale Agreement

Upon the Debtors' *Motion to Enforce the Sale Order and Compel Performance by Purchasers Brahmaji Valiveti and Praveen Challa Under the Second Amended and Restated Purchase and Sale Agreement* (the "Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) enforcing the Sale Order, (b) compelling Brahmaji Valiveti and Praveen Challa (together, the "Purchasers") to perform under the Second Amended and Restated Purchase and Sale Agreement and (c) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing held before this Court, if any; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page | 4)
Debtors: NEW RITE AID, LLC, et al.
Case No. 25-14861 (MBK)
Caption of Order: Order Granting Debtors' Motion to Enforce the Sale Order and Compel Performance by Purchasers Brahmaji Valiveti and Praveen Challa Under the Second Amended and Restated Purchase and Sale Agreement

2. The Purchasers shall, within three (3) days of the entry of this Order, pay to the Debtors the full Purchase Price as set forth under the Second Amended PSA.

3. The Purchasers shall pay the attorneys' fees and costs incurred by the Debtors in connection with enforcing the Second Amended PSA, subject to the submission of invoices to the Court and within three (3) days of the Court's approval thereof.

4. The terms and condition of this Order shall be immediately effective and enforceable upon its entry.

5. This Order shall constitute a final judgment with respect to the Motion.

6. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.