**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
Alison R. Benedon
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com
abenedon@paulweiss.com

*Co-Counsel for the Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Joint Administration) |

**DECLARATION OF GEORGE ZHUSHMA IN SUPPORT OF DEBTORS' MOTION TO ENFORCE THE SALE ORDER AND COMPEL PERFORMANCE BY PURCHASERS BRAHMAJI VALIVETI AND PRAVEEN CHALLA UNDER THE SECOND AMENDED AND RESTATED PURCHASE AND SALE AGREEMENT**

I, George Zhushma, declare as follows under penalty of perjury:

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

1. I am the Group Vice President of Central Operations & Pharmacy Acquisitions at New Rite Aid, LLC ("Rite Aid"). I have worked at Rite Aid, and served in various leadership positions at the company, since 2014. In my roles I have negotiated and implemented numerous pharmacy asset sales, including the PSAs (as defined below) at issue in this dispute.

2. I submit this declaration (the "Declaration") in support of *Debtors' Motion to Enforce the Sale Order and Compel Performance by Purchasers Brahmaji Valiveti and Praveen Challa Under the Second Amended and Restated Purchase and Sale Agreement* (the "Motion").[2]

3. This Declaration is based upon my personal knowledge and my review of relevant documents and information concerning the matter set forth in the Motion. If called as a witness, I would testify as follows.

4. In accordance with the bidding procedures approved by the Court, on May 13, 2025, Buyers submitted a proposed bid and transaction documents (the "Bid Documents") to the Debtors to acquire certain pharmacy associated with Rite Aid's retail locations in California and New York.[3] On May 15, 2025, Buyers entered into a purchase and sale agreement (the "Initial PSA") that was consistent with the Bid Documents previously submitted by the Buyers. The Initial PSA was amended on May 23, 2025 (the "Amended and Restated PSA" and together with the Initial PSA and the Second Amended PSA, the "PSAs") and again on June 11, 2025. On May 21, 2025, the Bankruptcy Court approved the Initial PSA, as amended by the Amended and Restated PSA and the Second Amended PSA, via a Sale Order [Docket No. 472]

5. Under the Second Amended PSA, Buyers agreed to purchase from the Sellers certain pharmacy assets with respect to Pharmacies listed on Schedule A attached thereto,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[3] Buyers were not represented by counsel in connection with the Bid Documents and the negotiation of the PSAs.

including but not limited to, "all prescription records, patient records, lists and profiles of the applicable Pharmacy, in each case, in the applicable Seller's possession and readily available for no less than the 3-year period (or such time period mandated by state and federal laws) immediately preceding the respective Closing Date." Second Amended PSA, § 1(a).

6. On each Closing Date, Sellers agreed to "surrender possession of the applicable Purchased Assets to the applicable Buyer with respect to the applicable Store or Stores," Second Amended PSA, § 5(b), and Buyers agreed to "pay to the applicable Seller the amounts listed below by wire transfer of immediately available funds to the account designated by such Seller." *Id.* § 5(c). The Parties agreed to a Purchase Price set forth on Schedule A to the Second Amended PSA, Second Amended PSA, Sch. A., and also agreed that such price "will decrease in the event there is a reduction in the Current Volume at any Pharmacy between the date of this Agreement and each respective Closing Date." *Id.* § 6(b).

7. Paragraph 6(b) of the Second Amended PSA provides a method for the recalculation of the Purchase Price that takes into account any reductions of the Current Volume reflected on Schedule A to the Second Amended PSA at the time the Second Amended PSA was executed:

> (b) The Parties agree that the applicable purchase price set across the respective Store on Schedule A attached hereto (the "Target Records Purchase Price"), will decrease in the event there is a reduction in the Current Volume at any Pharmacy between the date of this Agreement and each respective Closing Date, in case such reduction shall be in excess of the Prescription Rate Threshold (as defined below), which decrease shall be calculated as follows:
>
> (i) on or after the last day of business of the respective Pharmacy (the "Last Business Day"), the Parties shall measure, and agree on, the average weekly prescription count at each respective Pharmacy in the twenty-six (26) weeks prior to, and ending on, the Saturday immediately prior to the Last Business Day, but excluding any week that includes a national holiday (each count, a "Verification Date Volume"); and

3

> (ii) in the event the respective Verification Date Volume is less than the respective Current Volume by 10% or more (the "Prescription Rate Threshold"), then the Target Records Purchase Price shall be reduced proportionately, by such percentage minus the Prescription Rate Threshold. Solely for the purpose of example, if the decrease from the respective Current Volume to the respective Verification Date Volume is 15%, then the respective Target Records Purchase Price shall be adjusted and reduced by 5%. The Parties agree that the calculation pursuant to this Section 6 shall include any prescriptions transferred by the applicable Seller to the applicable Buyer prior to each respective Closing Date as if such Seller had filled such prescriptions itself.

*Id.* The twenty-six week "look back period" for measuring the weekly prescription count and recalculation of the Purchase Price was a feature of the Buyers' bid for the Purchased Assets.

8.  Paragraph 4(b) of the Second Amended PSA, titled "Conduct of Business of Sellers," provides as follows:

> From the date of this Agreement until the applicable Closing Date, except as otherwise provided in this Agreement or approved in writing by the applicable Buyer (such approval to not be unreasonably withheld, delayed or conditioned), each Seller will use commercially reasonable efforts to carry on and maintain its Pharmacy business at the applicable Store to maintain in the Ordinary Course (i) normal operating hours and staffing levels and (ii) the Purchased Assets. Each Seller shall use commercially reasonable efforts to maintain the prescription volume at the respective Store, and will not remove or transfer any of the Purchased Assets from the respective Store other than in the Ordinary Course. "Ordinary Course" means with respect to an action taken by a person, that such action is substantially consistent with the ordinary and usual course of operations of the business, taken as a whole, taking into account the contemplation, commencement and pendency of the Bankruptcy Cases. Notwithstanding anything herein to the contrary, each Buyer acknowledges that Sellers may be winding down the business at the Stores and as such, the operating hours, inventory and staffing levels may change accordingly and any such changes shall not be deemed a breach of this Section 4(b).

*Id.* § 4(b).

9.  In consummating the transactions contemplated by the Second Amended PSA, Buyers agreed that the following "closing condition" was satisfied by Sellers:

4

> (i) the applicable Seller has performed and complied in all material respects with all agreements, covenants and obligations contained in this Agreement that are required to be performed or complied with by such Seller by it at or prior to the applicable Closing Date and each of the representations and warranties of such Seller contained in Section 12 of this Agreement with respect to the applicable Stores shall be true and correct in all material respects on the applicable Closing Date as though made on such date[.]

Second Amended PSA § 15(b)(i).

10. The Closing Date of the transactions occurred on various dates between July 11, 2025, and August 6, 2025, as detailed on Schedule A to the PSA. On those dates, Sellers surrendered the Purchased Assets to the Buyers, including the "prescription records, patient records, lists and profiles of the applicable Pharmacy."

11. As of the date hereof, Buyers have not paid the Purchase Price to the applicable Seller. Based upon the Sellers' records, and after accounting for the Purchase Price adjustments agreed to paragraph 6(b) of the Second Amended PSA, Buyers are contractually obligated to pay the applicable Sellers the following amounts:

| Pharmacy/Seller Store # | Store/Store Address | Records Purchase Price | Inventory Purchase Price |
|---|---|---|---|
| Rite Aid Store #2010 | 4046 Broadway New York, NY | $230,000.00 | $343,042.63 |
| Rite Aid Store #5815 | 100 China Grade Loop Bakersfield, CA | $355,000.00 | $213,770.02 |
| Rite Aid Store #5674 | 405 West Main Street Brawley, CA | $383,535.74 | $204,970.59 |
| Rite Aid Store #5690 | 1380 Barstow Road Barstow, CA | $167,578.15 | $199,874.88 |
| Rite Aid Store #636 | 519 Butternut Street Syracuse, NY | $391,388.77 | $366,552.16 |
| | **TOTAL** | **$1,527,502.66** | **$1,328,210.28** |

6

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: September 4, 2025          */s/ George Zhushma*
                                  George Zhushma