| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**SAUL EWING LLP**<br>Turner N. Falk<br>1500 Market Street, 38th Floor<br>Philadelphia, PA 19102<br>Telephone: (215) 972-7777<br>turner.falk@saul.com<br><br>-and-<br><br>Lucian B. Murley<br>1201 N. Market Street, Suite 2300<br>Wilmington, DE 19801<br>Telephone: (302) 421-6800<br>luke.murley@saul.com<br>*Counsel for Ross Dress for Less, Inc.* |

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, et al.,<br><br>Debtors[1] | Case No. 25-14861 (MBK)<br><br>Chapter 11<br><br>(Jointly Administered)<br>**Re: Docket Nos. 1320, 1524, 1873, 2005, 2007** |

### ROSS DRESS FOR LESS, INC.'S SUPPLEMENTAL REPLY TO THE OBJECTION OF SVAP III PLAZA MEXICO, LLC TO NOTICE OF ASSUMPTION AND <u>ASSIGNMENT OF CERTAIN OF THE DEBTORS' LEASES</u>

Ross Dress for Less, Inc. ("<u>Ross</u>"), by its undersigned counsel, hereby files this supplemental reply to the *Objection of SVAP III Plaza Mexico, LLC to Notice of Assumption and Assignment of Certain of the Debtors' Leases* [D.I. 1873] (the "<u>Objection</u>") filed by SVAP III Plaza Mexico, LLC ("<u>Landlord</u>") on August 13, 2025, and states as follows:

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

56167116.5

# PRELIMINARY STATEMENT

1. The Landlord's adequate assurance argument is flimsy, to put it charitably. At the August 28 hearing, the Landlord did not assert that it is not receiving adequate assurance of future performance. How could it? If the lease is assumed and assigned to Ross, the Landlord is getting one of the (if not <u>the</u>) most financially healthy clothing retailers in the country as a tenant, an entity that operates over 1,800 stores. On top of that, the Landlord is getting a guaranty of the Lease by a public company with a $48 billion market capitalization.

2. The Landlord cannot argue facts or economics, so it is trying to create a novel, technical evidentiary issue, arguing that the Debtors have no witness with knowledge of the financial condition of the tenant from almost forty years ago. Flimsy, indeed.

3. Congress drafted section 365 of the Bankruptcy Code (and specifically section 365(b)(3)(A)) to require a debtor to establish that a landlord is getting a new tenant that is at least as good as the old tenant. That fact is beyond question here. The Landlord is getting a much, much more financially healthy tenant than it originally had, under any reasonable reading of the Bankruptcy Code.

4. If the Landlord's Objection is sustained, it would lead to an absurd result here, and many other cases. It would basically mean that a debtor would have a difficult (or perhaps impossible) evidentiary burden to assume any older lease in a shopping center, regardless of the quality of the new tenant.

5. The Landlord is getting "adequate assurance of future performance" here, under any reasonable interpretation of the term. The Objection should be overruled.

## BACKGROUND

6. Ross submits this Supplemental Reply in further support of the arguments made in its *Reply to the Objection of SVAP III Plaza Mexico, LLC to Notice of Assumption and Assignment of Certain of the Debtors' Leases* [D.I. 2005] (the "Reply").[2] Pursuant to the Court's remonstration at the August 28 hearing, Ross will not repeat the arguments in its Reply.

7. At the August 28 hearing on this matter, the Landlord did not contest whether Ross or Ross Parent could fulfill the monetary obligations under the Lease. Instead, the Landlord insisted on evidence relating to the financial condition of Thrifty Payless, Inc. from 1987—the date of the inception of the Lease.

8. Ross does not have access to financial information relating to the Landlord's original tenant from 1987. However, there is some public information bearing on the historical financial conditions. This information shows a tenant in worse shape than the proposed assignee here.

9. As reported in Thrifty Payless, Inc.'s Form 10-Q for the quarter ending March 31, 1996,[3] Thrifty Payless Inc. had assets valued at less than $2 billion in 1995, and negative net income for the 13-week period ending April 2, 1995.[4]

10. Thrifty Payless, Inc.'s gross sales in 1981 were $750 million, and in 1991 they had only grown to $1.89 billion. St. James Press, International Directory of Company Histories, Vol. 12, 447-48 (1996).

---

[2] All capitalized defined terms herein have the meaning set forth in the Reply.

[3] This Court may take judicial notice of facts in SEC filings. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of filings with the SEC); *Youkelsone v. Wash. Mut., Inc. (In re Wash. Mut., Inc.)*, Adv. No. 09-50039 (MFW), 2010 WL 3238903, at *14 (Bankr. D. Del. Aug. 13, 2010) (taking judicial notice of public filings with the SEC, FTC, and FDIC).

[4] Thrifty Payless, Inc.'s Form 10-Q for the quarter ending March 31, 1996 is available at https://www.sec.gov/Archives/edgar/data/921177/0000912057-96-009639.txt

11. In 1996, the year the Rite Aid companies acquired tenant Thrifty Payless, Inc., the Rite Aid Corporation filed its Form 10-Q quarterly report for the three months ending August 31, 1996 (the "1996 Rite Aid 10-Q"). A true and correct copy of the 1996 Rite Aid 10-Q is attached hereto as **Exhibit A**.

12. A comparison of the 2024 Ross 10-Q and the 1996 Rite Aid 10-Q tells the tale of two dramatically different businesses:

| Subject | Ross 2024 10-Q | Rite Aid 1996 10-Q |
|---|---|---|
| **Store Closings / Openings** | In the first quarter of fiscal year 2025, Ross opened 16 stores and closed 0 stores. Reply Ex. A at 26. Ross Parent opened 19 new stores in the first quarter of 2025, and plans to open as many as 90 more in 2025. *Id.* at 25. | Rite Aid Corporation closed or sold 183 stores in the twenty-six weeks ending August 31, 1996, and closed down its nursing home line of business. Ex. A at 10. |
| **Other Lease Obligations** | Ross Parent's sales growth was 3%, and its costs and lease expenses, as a percentage of sales held stable compared to the same time period in 2024. *Id.* at 25. | Rite Aid Corporation was engaged in settling the lease obligations of over 200 leases that had been terminated or breached in fiscal year 1995. *Id.* at 11. |
| **Earnings** | Ross Parent's earnings before taxes for the first quarter of fiscal year 2025 increased to $640 million, from $637 million in the first quarter of fiscal year 2024. *Id.* at 22. | In the twenty-six weeks ending August 31, 1996, Rite Aid Corporation's net cash from operations before taxes was approximately $109 million. *Id.* at 7. |
| **Changes in Debt Level** | Ross Parent's current liabilities decreased, and its long-term debt and lease liabilities remained stable, compared to the same time in 2024. *Id.* at 6. | Rite Aid Corporation increased its revolving credit commitment from $600 million to $1 billion, taking on substantial new debt. *Id.* at 12. |

13. Information regarding the tenant's financial condition in 1987 may be difficult or impossible to obtain. But Ross respectfully submits that this adequate assurance issue should be

4

determined practically and pragmatically. And looking at this practically and pragmatically, this information from 1996 (just a few years after the lease began) shows that Ross' financial condition is more favorable than the historical tenant under the Lease.

## ARGUMENT

14. "Adequate assurance of future performance" is not defined by the Bankruptcy Code. But in interpreting the phrase, this Court should give it a "practical, pragmatic construction." *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 & n.10 (3d Cir. 2001) (citation omitted) ("'[A]dequate assurance of future performance' are not words of art; the legislative history of the [Bankruptcy] Code shows that they were intended to be given a practical, pragmatic construction."). The Court should avoid an interpretation that leads to absurd results. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006). This is so because Congress will not "mandate an unworkable approach" via a statute. *Id.*

15. The Landlord hangs its hat on *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 613 B.R. 51 (S.D.N.Y. 2020). While the *Sears* court correctly identified the policy purpose behind section 365(b)(3)(A)—"Congress adopted this provision to 'insure that the assignee itself will not soon go into bankruptcy.'" *Id*. at 74 (*quoting* H.R. Rep. 98-882 (1984) (Conf. Rep.) *as reprinted in* 1984 U.S.C.C.A.N. 576, 600)—*Sears* is a completely different case than the one before this Court.

16. In fact, *Sears* is the photo negative of the situation before this Court: a newly created assignee was seeking to take an assignment from a tenant that—at the time of lease inception—was the gold standard of retailers. The *Sears* court held that a newly formed proposed assignee (Transform HoldCo) could not provide adequate assurance because it had no business history, and provided only "draft" financials of the assignee that were explicitly subject to adjustment. *Id*. at

5

76. (Here, Ross is a public company with decades of financial information available in the public record, of which this Court may take judicial notice). Nor did the *Sears* court—as the Landlord suggests—adopt some hyper-technical standard for examination of the original tenant's financials. If anything, the *Sears* court took a big-picture, practical approach to determining the financial condition of the original tenant:

> It would, of course, be impossible to locate a tenant of any sort that boasted the precise "financial condition and operating performance" of Sears Roebuck back in 1991. At that point, Sears had been in business for nearly 100 years. It virtually created "big box" retailing, and its massive catalogues were the progenitor of Amazon's internet omni-market. It has few equals in the history of American business.

*Id.* at 74-75.

17. Ross has established that it can perform its post-assumption Lease obligations. The Landlord does not contest this. The Landlord does not talk about economics, or financial condition, but instead seeks to oppose the assumption on a technicality, taking advantage of the fact of the passage of almost 40 years and the inevitable and understandable loss of information and institutional knowledge regarding the original tenant over that time.

18. If the Court is inclined to look at other historical information, and determine that the financial condition of Ross is demonstrably better than either Thrifty Payless Inc. or the Rite Aid group in 1995-96, just a few years after the lease began, then the Landlord's objection similarly should be overruled. As set forth above, a comparison of Ross' present financials to those of the Rite Aid Corporation in 1996 shows that Ross' financial condition is superior. The available financial information on Thrifty Payless Inc. shows the same.

19. The standard for adequate assurance of future performance is not as the Landlord suggests. It is a standard that should be determined "practically" and "pragmatically." The Debtors

have met their burden. *Sears* does not support the Landlord's position. The Landlord's Objection should be overruled. Assumption and assignment of the Lease should be approved.

### JOINDER TO DEBTORS' SUPPLEMENTAL REPLY

20. To the extent applicable to Ross, Ross joins the arguments in any supplemental reply or other pleading filed by the Debtors in support of the assumption and assignment of the Lease to Ross.

WHEREFORE, for all of the foregoing reasons, the Court should overrule the Landlord's Objection and approve the proposed assumption and assignment of the Lease to Ross.

Dated: September 4, 2025

Respectfully submitted,

**SAUL EWING LLP**

*/s/ Turner N. Falk*
Turner N. Falk
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
turner.falk@saul.com

-and-

Lucian B. Murley
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
luke.murley@saul.com

*Counsel to Ross Dress for Less, Inc.*