UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**BARCLAY DAMON LLP**
Scott L. Fleischer
1270 Avenue of the Americas, Suite 2310
New York, NY 10020
Telephone: (212) 784-5810
Facsimile: (212) 784-5799
E-mail: sfleischer@barclaydamon.com

*Counsel to SVAP III Plaza Mexico, LLC*

| In re: | Chapter 11 |
|---|---|
| NEW RITE AID, LLC, *et al.*[1] | Case No. 25-14861 (MBK) |
| Debtors. | (Jointly Administered) |

## SUR-REPLY OF SVAP III PLAZA MEXICO, LLC TO REPLIES OF DEBTORS AND ROSS WITH RESPECT TO PROPOSED ASSIGNMENT OF PLAZA MEXICO LEASE

SVAP III Plaza Mexico, LLC ("Landlord"), by and through its undersigned counsel, hereby files this sur-reply (the "Sur-Reply") to the Replies (as defined herein) in further support of its *Objection to Notice of Successful and Backup Bidders with Respect to the Auction of Certain of the Debtors' Leases* [Docket No. 1873] (the "Objection")[2] opposing the assumption and assignment of that certain unexpired nonresidential real property lease between Thrifty Payless, Inc. ("Tenant") and Landlord to Ross Dress for Less, Inc. ("Ross"). In support of the Sur-Reply, Landlord respectfully represents as follows:

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

32235928.2

I.  **PRELIMINARY STATEMENT**[3]

Neither the purported evidence of Tenant's financial condition and operating performance from 1987 – which actually covers entirely different years, mostly from 1996 forward – nor the argument that an absurd result would take place – which should be judged, pursuant to case law, on whether Congress could have contemplated a scenario like this – hold water under the plain language of section 365(b)(3)(A).

The Debtors also request an award of attorneys' fees under the Lease but their argument is misplaced since the Lease refers strictly to enforcement of the Lease and damages for Landlord's breach of the Lease, neither of which is the case here.

II.  **BACKGROUND**

1.  On August 13, 2025, Landlord filed the Objection [Docket No. 1873], which is incorporated herein as if fully set forth herein.

2.  On August 22, 2025, Ross filed its *Reply to the Objection of SVAP III Plaza Mexico, LLC to Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 2005] (the "Ross Reply").

3.  Also on August 22, 2025, the Debtors filed their *Reply in Response to Objection of SVAP III Plaza Mexico, LLC to Notice of Successful and Backup Bidders with Respect to Auction of Certain of the Debtors' Leases* [Docket No. 2007] (the "Debtors' Reply").

4.  On August 28, 2025, the Court held a hearing on the Assignment Notice as it relates to the Lease, at which time it was continued to September 16, 2025 (to the extent the Court deems necessary) to permit the filing of additional briefs on the issue of adequate assurance of future performance. Specifically, the Court requested supplemental briefing on Bankruptcy

---

[3] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them in the Sur-Reply.

Code section 365(b)(3)(A)'s adequate assurance of future performance requirement with respect to a shopping center lease for a comparison between the financial condition and operating performance of the proposed assignee and any guarantors with that of the tenant and any guarantors at the time of initial leasing.

5.  On September 4, 2025, Ross filed its *Supplemental Reply to the Objection of SVAP III Plaza Mexico, LLC to Notice of Assumption and Assignment of Certain of the Debtors' Leases* (the "Ross Brief") in further opposition to the Objection and in support of the Assignment Notice.

6.  On September 4, 2025, Debtors filed their *Supplemental Reply to the Objection of SVAP III Plaza Mexico, LLC to Notice of Successful and Backup Bidders with Respect to Auction of Certain of the Debtors' Leases* (the "Debtors' Brief" and collectively with the Ross Reply, the Debtors' Reply, and the Ross Brief, the "Replies") in further opposition to the Objection and in support of the Assignment Notice.

### III.  ARGUMENT

*A.  The Debtors Have Still Not Satisfied Their Adequate Assurance Burden*

7.  Prior to the August 28, 2025 Lease assignment hearing, neither the Debtors nor Ross (i) presented evidence of Tenant's financial condition and operating performance at the time Tenant entered into the Lease or (ii) argued that the required comparison to the proposed assignee under Bankruptcy Code section 365(b)(3)(A) should not take place. To the extent the Debtors and/or Ross are permitted to make these arguments for the first time now, (i) no relevant evidence of Tenant's financial condition and operating performance in 1987 – when the Lease was entered into – has been presented and (ii) the Court is bound by the plain language of Bankruptcy Code section 365(b)(3)(A), as Congress carefully drafted it and did not provide for any exceptions.

3

8. As set forth in the Objection, the Debtors can only assume and assign the Lease if "adequate assurance of future performance by the assignee of such … lease is provided, …" *See* 11 U.S.C. § 365(f)(2)(B). The Bankruptcy Code goes on to explain exactly what the Debtors are required to prove under this shopping center Lease, including:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C) that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, . . . relating to the shopping center; . . . .

*See* 11 U.S.C. § 365(b)(3).

9. The burden of proof on adequate assurance issues is with the Debtors. *See Tex. Health Enters v. L Lytle Nursing Home (In re Tex. Health Enters.)*, 72 Fed. Appx. 122, 126 (5th Cir. 2003) (internal citations omitted); *In re Lafayette Radio Elecs. Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991); *In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (collecting cases).

10. It is essential that Bankruptcy Section 365(b)(3) is applied correctly and fairly. *See MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 613 B.R. 51 (S.D.N.Y. 2020) ("Congress did indeed create 'independent requirements' for actual assurance of future performance when it passed § 365(b) … each of which needs to be met before a bankruptcy court can approve the assignment of a shopping center lease."); *see also L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291 (3d Cir. 2000) (internal quotations and citations omitted) ("This assurance is necessary to protect the rights of the non-

debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assigned breach … the assignee must meet the heightened definition of adequate assurance of future performance in section 365 (b)(3)").

11. The Debtors and Ross want the Court to modify the language of the Bankruptcy Code, seemingly because they are frustrated with Landlord for holding them to their burden. However, that is not a sufficient reason to ignore the statute's plain language. The court in *In re Gosman*, 282 B.R. 45 (Bankr. S.D. Fla. 2002), held as such in relation to the application of the absolute priority rule:

> If the Court were to re-write the Code every time a debtor was dissatisfied with a specific provision of the Bankruptcy Code, there would be no Bankruptcy Code.
>
> Even if the Debtor is correct in arguing that the consequence of the 'absolute priority rule' is poor bankruptcy policy, policy arguments cannot displace the plain language of a statute. *Cf. In re Techdyn Systems Corp.*, 235 B.R. 857 (Bankr. E.D. Va. 1999). The Court must presume that Congress means what it says and says what it means through the passage of legislation. If bad bankruptcy policy results therefrom, then the Debtor must raise his concerns to another forum that is better equipped in addressing public policy matters, namely, the halls of Congress.

*Gosman*, 282 B.R. at 52-53; *see also Tilton v. MBIA Inc.*, 620 B.R. 707 (S.D.N.Y. 2020), citing in part *Multibank, Inc. v. Access Glob. Capital LLC*, 594 B.R. 618, 624 (Bankr. S.D.N.Y. 2018) (internal quotations omitted) ("This court presumes that Congress chose different language for a reason, and this Court must follow the statute as drafted. … I am not free to treat section 1412 as though it includes extra language that Congress used in other sections … [n]or am I free to rewrite section 1412 based on arguments that it would make more sense if section 1412 had a broader application; *Erie Acquisition, LLC v. Guardian Elder Care at Johnstown, LLC (In re Guardian Elder Care at Johnstown, LLC)*, 665 B.R. 278-280 (Bankr. W.D. Pa. 2024) (internal citations omitted) (refusing to extend the term "nonresidential" to the Debtors' facilities given Congress's

5

omission from Bankruptcy Code section 365(d)(3) and the Supreme Court's recently decided and mandated approach to statutory construction); *United States v. Techdyn Sys. Corp. (In re Techdyn Sys. Corp.)*, 235 B.R. 857, 861 (Bankr. E.D. Va. 1999) (internal citations omitted) ("The Supreme Court has repeatedly held that in interpreting provisions of the Bankruptcy Code, a court must begin with the statute itself. When the statute is clear and unambiguous on its face, the court must apply the plain meaning of the statute and enforce it according to its terms.").

12. The court in *Techdyn* went deeper into the plain language principle by discussing the possibility that "a court should venture beyond the plain reading of the statute only in the rare instance in which 'a literal application of the statute would produce an absurd result' … ." *Techdyn*, 235 B.R. at 863. Importantly, the court held that an absurdity only would have resulted if Congress could not have made a certain distinction:

> Accordingly, while it may well be argued that a strict reading of § 362(c)(1) is inconsistent with the general goal of maximizing the value of the bankruptcy estate for the benefit of the debtor's creditors, *it certainly does not lead to a result that is absurd*, in the sense that Congress could not have rationally have made a distinction between contractual and extra-contractual prohibitions on assignment. *Hartec* argues that a literal interpretation of § 365(c)(1) would permit legislatures to enact laws (disguised as anti-assignment laws) having the impact of ipso facto clauses, [thus] undermining these prohibitions. … While that possibility is certainly troubling, such concerns are properly directed to Congress.

*Id*. (internal citations and quotations omitted) (emphasis added); *see also In re FTX Trading Ltd.*, 91 F.4th 148 (3d Cir. 2024) ("In interpreting a statute, we are required to give effect to Congress's intent. We presume that intent is expressed through the ordinary meaning of the statute's language.") (internal citations and quotations omitted).

13. In order to meet the burden of proof, the Debtors must show that the financial capabilities and operational performance of Ross are "similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became

6

the lessee under the lease." *See* 11 U.S.C. § 365(b)(3). Tenant entered into the Lease in 1987. It follows that in order to meet the burden of proof, the Debtors must show similarities between its financial condition and operating performance in 1987 and Ross's financials today.

14. In Ross's Brief, they provide information related to Tenant's financial information from 1996 and compare it to Ross's financials today.

15. Similarly, the Debtors' Brief provides some financial information from 1983, newspaper articles from 1985 and 1986, and other financial information from 1996 and beyond.

16. Neither the Debtors' Brief nor the Ross Brief, though, actually addresses Tenant's 1987 financial condition and operating performance, let alone provides actual evidence, as required by the Bankruptcy Code. To accept the information provided as proof of the similarity between Tenant and Ross would be conclusory in nature. *See MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 613 B.R. 51, 79 (S.D.N.Y. 2020).

17. The Debtors and Ross argue in a conclusory manner that a denial of the proposed Lease assignment would lead to an absurd result, but that argument fails to acknowledge Congress's ability – but failure to – draft section 365(b)(3)(A) in a way that, for example, distinguishes the evidentiary burden for older leases or provides that an assignee must only be sufficient in a vacuum or in certain circumstances. The factual scenario presented here is not particularly unique, meaning it is not so unlikely as to be outside of the bounds of what Congress could have contemplated. Many shopping center leases are from when the premises was first constructed and long-term leases are very common.

18.     For the reasons set forth herein, the Debtors have not met their burden with respect to adequate assurance of future performance as it relates to the Lease under Bankruptcy Code section 365(b)(3)(A).

*B. Attorneys' Fees are Not Compensable Under the Lease in These Circumstances*

19.     The Debtors are seeking attorneys' fees from Landlord under the Lease despite not raising this argument in the Assignment Notice or the Debtors' Reply, instead waiting for Debtors' Brief.[4]  To the extent this is even ripe for consideration, there is no merit to this demand.

20.     Section 13.1 of the Lease provides, in relevant part:

> In the event either party hereto commences legal proceedings to *enforce any of the terms of this Lease*, or for *damages resulting from a breach of this Lease*, the successful party in such action shall receive from the other party, in each such action, including any appeal taken thereof, its actual attorneys' fees and costs incurred… The term attorneys' fees as used in this Paragraph shall include the fair market value of Lessor's Lessee's in-house counsel's services.

Lease, § 13.1 (emphasis added).

21.     Simply put, the Debtors are not seeking to "enforce any of the terms of this Lease" or seeking "damages resulting from a breach of this Lease".

22.     Outside of bankruptcy, Tenant could not assign this Lease absent Landlord consent.  Lease, § 11.2 (within 30 days after receipt of Tenant's notice of proposed assignment, Landlord would have been permitted to sublease from Tenant on the same terms and conditions as the Lease or terminate the Lease).  It is only because of Bankruptcy Code section 365(f) that this Lease provision may be deemed unenforceable with respect to the proposed Lease assignment, making it clearer that the Assignment Notice was not filed to enforce the Lease.

---

[4] The Debtors raised this as a reservation of rights at the August 28, 2025 hearing.

32235928.2

23. Also, the Debtors have not argued that Landlord is in breach of the Lease and the Debtors have suffered damages with respect to same – neither of which has occurred – so that cannot be invoked either.

24. The Debtors are seeking to enforce the Bankruptcy Code by making a legal argument under section 365(b)(3)(A) and Landlord is making a legal argument in opposition. Landlord is an involuntary participant in these proceedings and should not be punished for asserting its rights under the Bankruptcy Code, especially when the Lease does not permit such treatment.

## VI.   RESERVATION OF RIGHTS

25. Landlord reserves all rights to raise further or other objections as may be necessary, including but not limited to all issues raised in the Objection such as the form of proposed Assignment Order, the Proposed Cure Amount, and the 14-day stay.

## VII.   CONCLUSION

Landlord respectfully requests that the assumption and assignment of the Lease be denied or, if the Court is inclined to approve the Lease assignment, that the issues raised in the Objection must be satisfactorily addressed.

Dated: September 8, 2025
New York, New York

**BARCLAY DAMON LLP**

   */s/Scott L. Fleischer*
Scott L. Fleischer (NJ Bar No. 089802014)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone: (212) 784-5810
Facsimile: (212) 784-5799
E-mail: sfleischer@barclaydamon.com

*Counsel to SVAP III Plaza Mexico, LLC*

32235928.2