Law Office of Shmuel Klein PA
Attorney for HVP2 LLC
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510
Attorney ID 00851987
email:shmuel.klein@verizon.net

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

_____

In re:
New Rite Aid, LLC, *et al.*,1
Debtors

Chapter 11
Case No. 25-14861 (MBK)

_____

### SUPPLEMENTAL CERTIFICATION IN FURTHER SUPPORT OF HVP2 LLC MOTION TO COMPEL PAYMENT OF POST PETITION RENT AND FEES

COMES NOW HVP2 LLC, by and through its counsel, Shmuel Klein, which files this supplemental certification in further support of its pending motions to compel post-petition payments due.

1. On May 5, 2025 (the "Petition Date"), NEW RITE AID LLC and certain of its affiliated debtors (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), ultimately consolidated into the above-captioned case. Since the Petition Date, the Debtors have generated millions of dollars per month for attorneys and so called professionals while paying little, if nothing to its creditors.

2. The motions should be granted and a date certain must be entered for payment together with a provision for post-petition late penalties and a money judgment.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

3. The Debtors' "objection", but no *per se* opposition to the motion, was recently filed by the Debtors' counsel. The "objection" should be disregarded as it is hearsay and there is no "objection" or opposition filed by the Debtor by an individual with actual knowledge of the facts.

4. The Debtor unusually "orphan" filed a stand alone "exhibit" containing several different documents (docket #2391). The exhibit contains six exhibits in one submission. It is against the Rules of this Court to file in this manner. It also contains original signatures in direct violation of the Rules of this Court. Sanctions should be imposed. All Rights Reserved. Part of the exhibit includes the original build lease between the Debtor and HVP2 LLC, dated April 24, 2017; it is 109 pages, contains 43 sections, includes surveys, proposed signs, restrictions and express provision of attorney fees. Next is The "First Amended" lease dated January 31, 2018 (begins at page 111 of the Debtors' exhibit) contains six pages and it amended the start date for rent, in addition to a reduction in the rent amount, which the Debtor timely paid until May, 2025. Next is the "Second Amended" lease, dated August 28, 2018 (begins at page 117 of the Debtors' exhibit) contains three pages and amends the original lease requiring the Tenant to maintain the premises and timely pay Common Area Maintenance charges (CAM). These three documents constitute a single lease. Next there is a letter (begins at page 120 of the Debtors' exhibit) dated July 18, 2018 regarding an unrelated matter, addressed to "John Nigro" who has had nothing to do with the current property for nearly a decade. Next is a letter (begins at page 124 of the Debtors' exhibit) dated July 28, 2025 addressed to "PROPUP MANAGEMENT GROUP 7 HANA LANE MONSEY NY 10952" which is not HVP2 LLC and is not the known address of HVP2 LLC. As seen in the certification of Marcia Klein, she never received the letter that begins at page 124 of the Debtors' exhibit. She never had final notice of the store closing or the necessary instructions to access the building until September, 2025. As a result, the Debtor owes immediate payment of the August 2025 rent in the amount of $29,684.67, post petition: late fees in the amount of $4,979.36, attorney's fees in the current amount (without prejudice) of $38,249.00, post petition CAM charges in the amount of $12,651.16 or a total amount due of $85,564.19, without prejudice.

FAILURE TO GIVE PROPER NOTICE

5.  On July 25, 2025, the Debtor filed at Docket #1573 its "SIXTEENTH NOTICE OF REJECTION OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES" referencing a "Schedule 1" and and "Exhibit 1" allegedly containing with instructions regarding the rejection. For the record, the "sixteenth notice" fails to include Exhibit 1. There were no instructions included with the rejection. Further, any entity which dealt with the 60 subsidiaries comprising the combined Debtor, were required to have searched the prior fifteen "notices of rejection" containing hundreds of names including the aforesaid "sixteenth" rejection for the contract which was being rejected to find their contract.

6.  Lo and behold, on line 53 (out of 100 listed in the "sixteenth" rejection) HVP2 was listed together with the erroneous "C/O PROPUP MANAGEMENT GROUP, MONSEY, NY 10952". An Objection to the "sixteenth" rejection which specifically pointed out the error stating:

> "3. The Notice of Rejection is defective and inadequate. Despite the Debtor, its counsel, and its dozens of multiplicative minions actual knowledge of the identity of the Landlord, its name, its address and its attorney through a notice of appearance, numerous filed pleadings and appearances, the notice states "C/O PROPUP MANAGEMENT GROUP, MONSEY, NY 10952". The Propup Management Group is not the landlord, has no relationship to the landlord and notice to the Propup Group is not notice to the Landlord. All rights reserved."

7.  As seen in the Certification of Managing Partner of HVP2 LLC, she called the real estate agent and was told that she would get the alarm codes and other instructions on July 31, 2025. As seen in her Certification, she did not receive any codes until the first week of August 2025.

8.  On June 9, 2025 this Court entered its "FINAL ORDER (I) AUTHORIZING AND APPROVING PROCEDURES TO REJECT EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF at docket #779 (before many Creditors, including HVP2 had actual knowledge regarding the status of their contract).

9.  The Rejection order states:

> "the Rejection Date for a rejection of a lease of nonresidential real property shall not occur until the later of (i) the Rejection Date set forth on Exhibit 1 and (ii) the date the Debtors relinquish

    control of the premises by (A) notifying the affected landlord in writing, with email being sufficient, of the Debtors' surrender of the premises and turning over keys, key codes, and security codes".

10.     The plain meaning of the Order of this Court required the Debtor to furnish keys and/or alarm codes. The Debtor failed to do so until August.

11.     The letter purporting to give notice to HVP2 LLC was sent to some entity unrelated to HVP2 LLC and was therefore a nullity.

12.     Notwithstanding the failure of proper notice, despite actual knowledge of the true address and emails of HVP2LLC and its counsel, the letter states:

    "Pursuant to the Lease Rejection Order, upon surrender the Landlord is permitted to rekey the Premises and Tenant will have relinquished control of the Premises to the Landlord. The Debtors have arranged for the burglar alarm company to disable the burglar alarm system. The burglar alarm will be disabled as of midnight on the Surrender Date but will continue to ring locally (police will not be notified) until it is silenced with the codes or disconnected as provided on the instructions attached to this letter as Schedule 1"

13.     As seen in "Schedule 1" it contains no codes. Despite the representation that " the burglar alarm company" would " disable the burglar alarm system" that did not occur and when a representative of HVP2 LLC entered the premises on August, the alarm went off and the Police responded.

14.     Possession therefore was not surrendered until August and the Debtor owes August rent in addition to May stub rent and other charges. After numerous requests for the alarm codes, a representative of the Debtor's the gave codes in August which did disarm the alarm.

15.     However, to make matters worse, the Debtor changed the alarm codes in September, clearly showing they had not surrendered the premises and in fact continued control of the building to the exclusion of HVP2.

16.     Further, the electricity was not transferred to HVP2 until September.

17.     Further, Debtors' "Exhibit" Lease required Thirty (30) days notice before termination of the lease. See Section 3 of the lease. Instead, Debtor gave three (3) days notice. Debtor owes August rent

plus CAM charges and attorneys fees.

18. Surrender of the premises is governed by State Law and in this case the premises is located in New York and New York law applies. The NYS Supreme Court Appellate Division, Fourth Department In <u>University Sq. San Antonio, Tx. LLC v. Mega Furniture Dezavala, LLC</u>, 2021 N.Y. App. Div. LEXIS 5333 (4th Dept. 2021), stated clearly:

> "Generally, a tenant is relieved of its obligation to pay full rent due under a lease where it surrenders the premises before expiration of the term *and the landlord accepts its surrender.* (emphsis supplied) Surrender by operation of law may be inferred from the conduct of the parties where "the parties to a lease both do some act so inconsistent with the landlord-tenant relationship that it indicates their intent to deem their lease terminated," i.e., where the tenant vacates the premises and returns the keys, and the landlord procures a new tenant."

19. The Debtor failed to tender the keys, failed to timely communicate the surrender, failed to timely give the alarm codes and to make matters worse, changed the alarm codes in September. The Court's decision actually prevents landlords who re-take possession of the premises following a tenant's abandonment and take affirmative steps to re-let the premises face the very real prospect of not being able to recover from the tenant the unpaid rent through the expiration of the lease term. Debtor owes August rent and related CAM charges and attorney's fee.

## ATTORNEY'S FEES

20. As seen in the Debtors' aforementioned "Exhibit" the lease explicitly provides for attorney's fees:

> 21.3. In the event that either Landlord or Tenant seeks enforcement of its rights and commences any suit for the collection of any amounts for which the other may be in default or for the performance of any other covenant or agreement hereunder, the prevailing party shall be entitled to be reimbursed by the other party for reasonable attorneys' fees and expenses incurred in enforcing such obligations and/or collecting such amounts.

21. The Debtor misrepresents the entitlement to attorneys fees by citing a portion of the "DECLARATION OF RECIPROCAL EASEMENTS AND RESTRICTIONS" a different section of the lease which, by its explicit terms only deals with that declaration and not the formal lease.

22. As a result of the Debtors' failure to give adequate notice and comply with this Court's Order

authorizing procedures to reject the lease, the Debtor owes immediate payment of the August 2025 rent in the amount of $29,684.67, post petition: late fees in the amount of $4,979.36, attorney's fees in the current amount (without prejudice) of $38,249.00, post petition CAM charges in the amount of $12,651.16 or a total amount due of $85,564.19, without prejudice.

WHEREFORE, HVP2 LLC respectfully requests the entry of an order granting the relief requested herein, and the Debtor pay the movant the amounts due post petition and the case be converted to Chapter 7.

Dated: September 14, 2025        Law Office of Shmuel Klein PA
                                 BY: /s/ Shmuel Klein
                                 Shmuel Klein, Esq.
                                 Attorney for HVP2 LLC