Law Office of Shmuel Klein PA
Attorney for HVP2 LLC
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510
Attorney ID 00851987
email:shmuel.klein@verizon.net

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

_____

In re:
New Rite Aid, LLC, *et al.*,1
Debtors                                          Chapter 11
                                                 Case No. 25-14861 (MBK)

_____

### SUPPLEMENTAL CERTIFICATION IN FURTHER SUPPORT OF HVP2LLC MOTION TO COMPEL PAYMENT OF POST PETITION RENT AND FEES

COMES NOW HVP2 LLC, by and through its Managing Partner, Marcia Klein, which files this supplemental certification in further support of its pending motions to compel post-petition payments due.

1.      On May 5, 2025 (the "Petition Date"), NEW RITE AID LLC and certain of its affiliated debtors (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), ultimately consolidated into the above-captioned case.  Since the Petition Date, the Debtors have generated millions of dollars per month for attorneys and so called professionals while paying little, if nothing to its creditors.

2.      The motions should be granted and a date certain must be entered for payment together with a provision for late penalties a money judgment.

_____

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

3.  On May 6, 2025, the Debtors filed a Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, With Such Sales to be Free and Clear of all Liens, Claims, and Encumbrances, and (III) Granting Related Relief (the "Motion"). See ECF 25.

4.  On May 9, 2025 the Court entered an Order granting the Motion on an interim basis. See ECF No. 184.

5.  On May 12, 2025 I received A&G Real Estate Partners which is the Debtors' agent's brochure marketing the sale of the lease between HVP2 and the Debtor.

6.  On June 13, 2025, the Debtors filed a Seventh Notice of Additional Closing Locations (the "Seventh Notice"), identifying the Premises in the list of additional closing locations. See ECF 862.

7.  On July 8, 2025 I emailed A&G Real Estate Partners inquiring the progress of marketing and assigning the lease. It responded that "Bid Deadline July 17th & Auction for Qualified Bidders only July 21st".

9.  The next information I received from the Debtors agents was on July 25, 2025, when the Debtors filed its sixteenth (proposed) "order approving the rejection of certain executory contracts and/or unexpired leases and the abandonment of certain personal property, if any". See ECF 1573.

10. I had diligently searched the fifteen prior "rejections" and was relieved that my lease was not listed. However, I was genuinely shocked to learn that the "sixteenth" notice included my lease. Notice was not sufficient, especially when I was lead to believe that the real estate agents would be successful in selling the lease and obtaining the highest and best offer for the Estate.

11. Pursuant to the Seventh Notice, Debtor indicated its intent to cease operations at the Leased Premises. According to the Debtor's website, and my own knowledge, it continued to operate the store until 07/10/2025. However, for months preceding the closing, the Debtor failed to adequately stock the store which decreased revenues, which then lead to the self-inflicted determination that the store

lease would be rejected without any benefit to the Estate and leaving a sizable claim for unpaid rent, common area charges (CAM), attorney's fees, costs, and related breach of the lease charges.

12. On July 28, 2025 I received a "notice of intent" to surrender the premises. I immediately inquired about the actual surrender of the premises by providing keys and alarm codes.

I emailed the broker" "are you providing a lock box and what is the combination?"

13. On July 29, 2025 I received a response stating: "You should get instructions on July 31st for keys/alarm codes. Stay tuned."

14. I never received the alleged instructions. Debtors' counsel admits it failed to email me and despite actual knowledge of my email address, emailed an unrelated entity which the Debtor hired for the Common Area Management fees. I never received the letter (begins at page 124 of the Debtors' exhibit) dated July 28, 2025 addressed to "PROPUP MANAGEMENT GROUP 7 HANA LANE MONSEY NY 10952" which is not HVP2 LLC and is not the known address of HVP2 LLC.

15. On August 4, 2025 I emailed the broker stating: "what is the update for the keys and alarm codes..." She responded: "I believe the rejection notice should give you permission to re-key the premises." I then responded, "I need the keys and alarm codes." She then responded, "CCing Deb who can help."

16. On August 5, 2025 I was finally given the alarm codes. I went to the premises with a locksmith who had to drill the locks and re-key the locks. This cost me $200.00. The manager of that store had the keys and locked the door when they left. There is no reason why I could not have picked up the key and avoided the charges. Thankfully, the alarm codes worked and I was able to turn off the alarm and enter the premises. Curiously, people still drove up and wanted to buy items from the store.

17. I then went back to the store on September 2, 2025, entered the alarm codes given to me, which worked a month ago, only to have the alarm go off at a deafening level which prompted a police response. I could not disarm the alarm and I received no response from the Debtors' broker or any one

else. Now I have to pay $1,200.00 for a new alarm panel because the Debtor re-took control of the premises.

18. As a result of the Debtors' failure to give adequate notice and comply with this Court's Orders authorizing procedures to reject the lease, the Debtor owes immediate payment of the August 2025 rent in the amount of $29,684.67, post petition: late fees in the amount of $4,979.36, attorney's fees in the current amount (without prejudice) of $38,249.00, post petition CAM charges in the amount of $12,651.16 or a total amount due of $85,564.19, without prejudice.

I, Marcia Klein certify that I have actual knowledge of the foregoing statements and they are true.

WHEREFORE, HVP2 LLC respectfully requests the entry of an order granting the relief requested herein, and the Debtor pay the movant the amounts due post petition and the case be converted to Chapter 7.

Dated: September 14, 2025

BY: /s/ Marcia Klein
Marcia Klein,
Managing Partner for HVP2 LLC

In Re Goody's Family Clothing, Inc. 610 F.3d 812 (3d Cir. 2010) stated:

Post-petition obligations are ordinarily given payment priority as administrative expenses, though such claims must still go through standard procedures of notice and a hearing to demonstrate that the costs were actual, necessary expenses of preserving the estate. See 11 U.S.C. § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses, . including . the actual, necessary costs and expenses of preserving the estate."). Section 365(d)(3) operates to dispense with these requirements for post-petition obligations under an unexpired lease of nonresidential real property, meaning it functions "without prevention or obstruction from or by" § 503(b)(1).