Order Filed on September 15, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al*., | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE SALE AGREEMENT, (II) AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY LOCATED AT 6330 KENWOOD AVENUE, BALTIMORE, MD TO KENWOOD GOLDEN RING PROPERTIES, LLC PURSUANT TO THE SALE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through eight (8), is

**ORDERED**.

**DATED: September 15, 2025**

*Michael B. Kaplan*
Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE SALE AGREEMENT, (II) AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY LOCATED AT 6330 KENWOOD AVENUE, BALTIMORE, MD TO KENWOOD GOLDEN RING PROPERTIES, LLC PURSUANT TO THE SALE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF |

Upon the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Final Order")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having jurisdiction over this matter and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.) and June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having properly filed and served a *Notice of Bid Deadline, Potential Auction, and Potential Sale Hearing for Certain Fee Owned Properties* [Docket No. 1321], a *Notice of Successful and Backup Bidder[s] with Respect to the Auction of Certain of the Debtors' Fee Owned Property* [Docket No. 1788] (the "Notice of Successful Bidder") and a *Supplemental Notice of Bid Deadline, Potential Auction, and Potential Sale Hearing for Certain Fee Owned Properties* [Docket No. 1887] (the "Supplemental Notice of Successful Bidder") (the "Assumption and Assignment Notice" and, together with the Notice of Successful Bidder, the "Bid Notice Documents"), in accordance with the terms of the Final Order; and it appearing that no other notice need be provided; and this Court having determined that the Debtors having complied with the

---

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Final Order or the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] (the "Motion").

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE SALE AGREEMENT, (II) AUTHORIZING THE PRIVATE SALE OF CERTAIN REAL PROPERTY LOCATED AT 6330 KENWOOD AVENUE, BALTIMORE, MD TO KENWOOD GOLDEN RING PROPERTIES, LLC PURSUANT TO THE SALE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF |

Final Order and the Auction Procedures (as defined therein), and that the Debtors' entry into the Purchase and Sale Agreement, in the form attached hereto as **Exhibit 1** (the "Sale Agreement"), is in the best interest of the Debtors and their estates and provides for the highest or best offer for the Property (as defined in the Sale Agreement); and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Sale Agreement (as may have been amended from time to time), attached hereto as **Exhibit 1**, and all terms and conditions thereof, is approved in all respects.

2.      The Debtors are authorized, but not directed, to take any and all actions necessary and appropriate to cause the Debtor-Seller to (a) consummate the Sale Agreement; (b) sell the Property to Purchaser, for the aggregate Purchase Price set forth in the Sale Agreement in accordance with the terms of this Order and the Sale Agreement; and (c) otherwise implement and effectuate the terms of the Sale Agreement.

3.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon the Closing, all of the Debtor Seller's right, title, and interest in and to, and possession of, the Property shall be transferred to the Purchaser, free and clear of any and all liens, claims, encumbrances, and other interests (collectively, "Interests"), with all such Interests to attach to the proceeds of the Property in the order of their priority, with the same force, effect, and validity that they had immediately prior to the entry of this Order, subject to any rights, claims, or defenses the Debtors may have with respect thereto, *except* with respect to any Permitted Exceptions allowed

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE SALE AGREEMENT, (II) AUTHORIZING THE PRIVATE SALE OF CERTAIN REAL PROPERTY LOCATED AT 6330 KENWOOD AVENUE, BALTIMORE, MD TO KENWOOD GOLDEN RING PROPERTIES, LLC PURSUANT TO THE SALE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF |

under the Sale Agreement. Such transfer shall constitute a legal, valid, binding, and effective transfer of the Property.

4.      This Order shall be effective as a determination that, as of the Closing, (a) no Permitted Exception will be assertable against the Debtor-Seller, the Debtors, or any of their assets; and (b) the Property shall have been transferred to the Purchaser free and clear of any Interests, other than the Permitted Exception.

5.      This Order is and shall be binding upon all persons and entities that may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or that may be required to report or insure any title or state of title in or to any property; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Agreement.

6.      The Purchaser is a good faith purchaser of the Property within the meaning of section 363(m) of the Bankruptcy Code.  The Sale Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and at an arms'-length bargaining position.

7.      To the extent there are any inconsistencies between this Order, the Motion, and the Sale Agreement, the terms of this Order shall control.

8.      Except to the extent expressly provided herein, notwithstanding the relief granted

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE SALE AGREEMENT, (II) AUTHORIZING THE PRIVATE SALE OF CERTAIN REAL PROPERTY LOCATED AT 6330 KENWOOD AVENUE, BALTIMORE, MD TO KENWOOD GOLDEN RING PROPERTIES, LLC PURSUANT TO THE SALE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF |

in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any prepetition claim, interest, or lien against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim, interest, or lien on any grounds; (c) a promise or requirement to pay prepetition claims; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) an implication or admission that any particular claim, interest, or lien is of a type specified or defined in the Motion or this Order; (f) an authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (g) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

9. Notwithstanding anything to the contrary in this Order, the Motion, the Sale Agreement, the Final Order, the Auction Procedures, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, assumption, assignment or any other transfer to the Purchaser at this time of (i) any insurance policies that have been issued by ACE American Insurance Company and/or any of its U.S.-based affiliates and/or any predecessors and successors of any of the foregoing (collectively, and solely in their capacities as insurers under the foregoing policies, the "Chubb Companies") to, or pursuant to which coverage is provided to, any of the Sellers (or their affiliates or predecessors) at any time, and all agreements, documents or instruments relating to such policies, including, without limitation, any collateral or security provided by or on behalf of any of the Sellers (or their affiliates or

(Page | 7)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE SALE AGREEMENT, (II) AUTHORIZING THE PRIVATE SALE OF CERTAIN REAL PROPERTY LOCATED AT 6330 KENWOOD AVENUE, BALTIMORE, MD TO KENWOOD GOLDEN RING PROPERTIES, LLC PURSUANT TO THE SALE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF |

predecessors) to any of the Chubb Companies and the proceeds thereof (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts including, without limitation, any of the Chubb Companies' indemnity, subrogation, setoff, recoupment, and/or other rights; (b) the Chubb Insurance Contracts and any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts are not and shall not be deemed to be Property, or a portion of any of the Property sold, assigned or otherwise transferred as part of any Sale hereunder; (c) nothing herein shall alter, modify or otherwise amend the terms, conditions, rights, and/or obligations of and/or under the Chubb Insurance Contracts; (d) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, insureds under any of the Chubb Insurance Contracts; *provided*, *however*, that, to the extent any claim with respect to the Property arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"), *provided*, *further*, however, that the Chubb Companies shall not have any duty to the Purchaser to effectuate a Proceed Turnover or liability to the Purchaser related to a Proceed Turnover.

10.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

(Page | 8)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DEBTORS' ENTRY INTO THE SALE AGREEMENT, (II) AUTHORIZING THE PRIVATE SALE OF CERTAIN REAL PROPERTY LOCATED AT 6330 KENWOOD AVENUE, BALTIMORE, MD TO KENWOOD GOLDEN RING PROPERTIES, LLC PURSUANT TO THE SALE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF |

11.     The Debtors are authorized to execute and deliver all instruments and documents and take all additional actions necessary to effectuate the relief granted in this Order and the Sale without further order from this Court.

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

EXHIBIT 1

PURCHASE AND SALE AGREEMENT

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "<u>Agreement</u>") is executed as of the 2nd day of September, 2025 (the "<u>Effective Date</u>"), by and between Rite Aid of Maryland, Inc., a Maryland corporation ("<u>Seller</u>") and Kenwood Golden Ring Properties, LLC, a Maryland limited liability company ("<u>Purchaser</u>").

## <u>RECITALS</u>

**WHEREAS**, on May 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>");

**WHEREAS**, the Debtors seek to cause Seller to sell the Property (defined below) pursuant to the terms and conditions of this Agreement and subject to approval by the Bankruptcy Court in the chapter 11 cases of *In re New Rite Aid, LLC, et al.,* Case No. 25-14861 (MBK) (Bankr. D.N.J. 2025) (the "<u>Bankruptcy Cases</u>");

**WHEREAS**, Seller believes that the Property should be sold through an orderly sale process as part of the Bankruptcy Cases;

**WHEREAS**, Seller is willing to sell the Property to Purchaser, and Purchaser is willing to purchase the Property from Seller; and

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, and conditions stated herein, the sufficiency of which is hereby acknowledged by the parties hereto, Seller and Purchaser hereby agree as follows:

## <u>AGREEMENT</u>

1.    <u>Sale of Property</u>.  On the terms and conditions set forth in this Agreement, Seller agrees to sell, assign, convey and transfer to Purchaser, and Purchaser agrees to purchase from Seller, all rights, title and interests held by Seller in and to the real property specifically described on **Annex I** attached hereto and incorporated herein by this reference (the "<u>Real Property</u>"), together with all buildings, facilities and other improvements located thereon (collectively, the "<u>Improvements</u>") and all easements, licenses, rights and appurtenances relating to any of the foregoing (collectively, with the Real Property and the Improvements, the "<u>Property</u>").

2.    <u>Purchase Price</u>.

A.    Seller is to sell and Purchaser is to purchase the Property for a total of FIFTY THOUSAND and No/100 Dollars ($50,000.00) (the "<u>Purchase Price</u>").

B.    The Purchase Price for the Property (exclusive of closing adjustments and costs provided for herein) shall be paid in the following manner:

(i)    A deposit in the amount of FIVE THOUSAND and no/100 Dollars ($5,000.00) (the "<u>Deposit</u>") shall be delivered to Kroll Restructuring Administration LLC ("<u>Kroll</u>") or First American National Title Insurance Company (the "<u>Escrow Agent</u>") on the Effective Date, in immediately available funds, which such Deposit shall be non-refundable to Purchaser except as

otherwise expressly set forth in this Agreement, it being understood that in the event the Deposit is delivered to Kroll, Kroll shall (i) transfer the Deposit to Escrow Agent prior to Closing or (ii) hold such deposit on behalf of Escrow Agent and Seller and Escrow Agent shall cause Kroll to apply the Deposit in accordance with the terms of this Agreement;

      (ii)     The balance of the Purchase Price, exclusive of closing adjustments and costs (the "<u>Balance</u>"), is due at the closing of the transaction contemplated hereunder (the "<u>Closing</u>") and shall be delivered to Escrow Agent no later than 11:00 am Eastern Time on the Closing Date (defined below), in immediately available funds.

C.     The acceptance by Purchaser of the delivery of the quit claim deed (the "<u>Deed</u>") at Closing shall be deemed to be full performance and discharge of every agreement and obligation (either express or implied) on the part of Seller to be performed pursuant to this Agreement and no representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

3.     <u>Purchaser Financing</u>.  Purchaser assumes full responsibility to obtain the funds required for settlement, and Purchaser's acquisition of such funds (including any financing proceeds) shall not be a contingency to the Closing or Purchaser's obligations hereunder.

4.     <u>No Investigations/Due Diligence Period</u>.

A.     Purchaser acknowledges that there is no "due diligence period" or "due diligence termination right" in this Agreement and Purchaser does not have the right to terminate this Agreement based on the results of such inspections or for any other reason.

B.     Purchaser acknowledges that, subject to <u>Section 34</u> of this Agreement, Seller has delivered to Purchaser, or has otherwise made available to Purchaser, certain due diligence materials (the "<u>Due Diligence Materials</u>"), in each case, to the extent in Seller's reasonable possession.  Seller will have no obligation to deliver or disclose to Purchaser any of Seller's attorney-client privileged materials, appraisals, internal memoranda, or internal evaluations of the Property, or any materials that are confidential and proprietary.  Except as may be otherwise expressly set forth in this Agreement and the Closing documents, Seller makes no representations or warranties of any kind regarding the accuracy, thoroughness, or completeness of, or conclusions drawn in the information contained in, any Due Diligence Materials and Purchaser is relying on the same at its own risk and without recourse to Seller.

5.     <u>Intentionally Omitted</u>.

6.     <u>Bankruptcy Court Approval and Sale Order</u>.  The parties' obligations set forth in this Agreement are expressly subject to approval by the Bankruptcy Court (the "<u>Bankruptcy Court Approval</u>") pursuant to an order (the "<u>Sale Order</u>") approving the sale to Purchaser.  The Sale Order shall include factual findings and ordering provisions that provide that (i) title to the Property shall be transferred to Purchaser free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and interests to attach to the proceeds of the sale in the same order, priority and validity that presently exists; *provided, however*, that the Property shall be transferred subject to all easements, right of ways, leases (recorded or unrecorded), covenants, restrictions and all other exceptions of record; (ii) Purchaser is purchasing the Property in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections offered thereby; (iii) this Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and at an arms'-length bargaining position; and (iv) the stay provided under Rule 6004(h) of the Federal Rules

Docusign Envelope ID: 425F7AB3-3490-42CD-BD85-D01287202424

of Bankruptcy Procedure shall be waived to the extent necessary to permit a Closing to occur as soon as possible after entry of the Sale Order.

7.    Reservation of Rights.  Seller reserves all rights to terminate this Agreement at any time prior to the Closing, by written notice from Seller to Purchaser, including, but not limited to, terminating this Agreement if Seller or the board of directors (or similar governing body) of Seller determines that proceeding with the sale(s) or failing to terminate this Agreement would be inconsistent with its or such person's or body's fiduciary duties.  Upon the termination of this Agreement by Seller pursuant to this Section 7, Escrow Agent shall return the Deposit to Purchaser.

8.    Representations of Purchaser.  Purchaser covenants, represents, and warrants to Seller that, as of the Effective Date and as of the Closing Date:

    A.    The proposed sale transaction contemplated by this Agreement represents an arms'-length transaction between the parties, made without fraud or collusion with any other person; and

    B.    There has been no attempt to take any unfair advantage of Seller.

9.    Closing Deliveries.

    A.    On or before 11:00 am Eastern Time on the Closing Date, Seller shall deliver to the Escrow Agent each of the following, executed and acknowledged, as appropriate, to be delivered to, or pursuant to the direction of, Purchaser upon Closing:  (i) the Sale Order in recordable form, (ii) the Deed (in proper statutory form for recording) so as to transfer all of its right, title and interest in and to the Property, (iii) Seller's signature to a closing statement prepared by Escrow Agent, and (iv) such other documents reasonably required to effect a transfer of the Property under applicable state law.  Notwithstanding anything to the contrary contained herein, Seller shall not be required to execute or deliver any title affidavit or indemnity.

    B.    On or before 11:00 am Eastern Time on the Closing Date, Purchaser shall deliver to Escrow Agent each of the following, executed and acknowledged, as appropriate, to be delivered to, or pursuant to the direction of, Seller (with the Deposit) upon Closing:  (i) the full Purchase Price (less the Deposit), plus or minus if then calculated the adjustments or prorations required by this Agreement, (ii) Purchaser's signature to the closing statement, and (iii) such other documents reasonably required to effect a transfer of the Property under applicable state law.

10.    Closing Date and Office.  The Closing shall take place not later than five (5) days after the entry of the Sale Order or such other date mutually agreed upon by Purchaser and Seller (the "Closing Date") and shall occur through a deed and money escrow agreement with Escrow Agent pursuant to which, on the Closing Date, Escrow Agent shall be responsible for (x) preparation of the closing statement, (y) collection and disbursement of all closing documents, and (z) collection and disbursement of the funds. Notwithstanding anything in this Agreement to the contrary, in the event the Bankruptcy Court has not entered the Sale Order within thirty (30) days from the Effective Date, Seller, upon notice to Purchaser, may elect to terminate this Agreement, with no consequences to Seller and/or the Purchaser's bankruptcy estate.  In the event of such termination, Escrow Agent shall return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations (defined below)). In the event the Bankruptcy Court rejects Purchaser's offer as set forth herein, the rights and remedies of the parties shall be as set forth in the Sale Order.  The parties acknowledge that Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent of either of the parties, and that Escrow Agent shall not be liable to either of the parties for any action or omission on its part taken or made in good faith, and not in disregard of this Agreement, but shall

be liable for its negligent acts and for any liabilities (including reasonable attorneys' fees, expenses and disbursements) incurred by Seller or Purchaser resulting from Escrow Agent's mistake of law respecting Escrow Agent's scope or nature of its duties, negligence or breach of this Agreement. Seller and Purchaser shall severally, on a 50/50 basis, indemnify and hold Escrow Agent harmless from and against all liabilities (including reasonable out-of-pocket attorneys' fees, expenses and disbursements) actually incurred in connection with the performance of Escrow Agent's duties hereunder, except with respect to actions or omissions taken or made by Escrow Agent in bad faith, in breach of this Agreement or involving negligence on the part of Escrow Agent. Escrow Agent has executed this Agreement in the place indicated on the signature page hereof in order to confirm that Escrow Agent shall hold the Deposit and closing documents in escrow and shall disburse the Deposit and closing documents pursuant to this Agreement.

11.    <u>Permitted Exceptions</u>.

A.    At Closing, Seller shall convey title to the Property, subject to the following (collectively, the "<u>Permitted Exceptions</u>," and the condition of the title subject only to the Permitted Exceptions is referred to herein as "<u>Acceptable Title</u>"):

(i)    All matters (A) shown in any title commitment, title pro forma, title policy and/or survey obtained by Purchaser or delivered by Seller to Purchaser, (B) shown in the public records where the Property is located, (C) which would be shown in a current and accurate title commitment, title report and/or survey of the Property, or (D) which would be disclosed by a physical inspection of the Property;

(ii)    The leases and property contracts and all matters reflecting the existence or terms of the leases or property contracts, including non-disturbance agreements, notices (or short forms) of leases or property contracts and financing statements pertaining to any tenant's property;

(iii)    Applicable zoning, governmental, subdivision, building and other land use laws, regulations and ordinances;

(iv)    Any lien created, permitted or suffered by any tenant;

(v)    The lien of real estate taxes and assessments not yet due and payable, subject to proration or adjustment as provided in this Agreement;

(vi)    Any installation, service, connection, usage or maintenance charge for sewer, water, electricity, telephone, cable or internet service, and any charges due under any reciprocal easement agreement, declarations of covenants, conditions, restrictions, common area agreement, shared maintenance agreement, or similar agreements which burden or benefit the Property, in each case subject to adjustment or proration as provided in this Agreement;

(vii)    All standard pre-printed exceptions and provisions contained in any title commitment, title pro forma or title policy obtained by Purchaser;

(viii)    All matters affecting title to the Property of which Purchaser has knowledge as of the Closing Date;

(ix)    Any defects in or objections to title to the Property, or title exceptions or encumbrances, arising by, through or under Purchaser or its consultants or agents; and

(x)    All matters shown on any existing owner's policy of title insurance provided to Purchaser.

B.    <u>Must-Cure Items</u>.  Notwithstanding the foregoing, as a condition to Closing, Seller shall be obligated to (i) cause any mortgages, deeds of trust, tax liens, or judgements granted by Seller on the Property evidencing indebtedness to be satisfied and/or removed of record, and (ii) cause any mechanics' liens or materialmans' liens encumbering the Property for work performed at the Property and ordered by Seller to be satisfied and/or removed of record (or bonded over) so that such liens do not appear as exceptions to Purchaser's title policy (collectively, "<u>Must-Cure Items</u>").

12.    <u>Title Policy</u>.  Purchaser shall accept title subject to the Permitted Exceptions.  If Purchaser desires to purchase title insurance, Purchaser may do so, at Purchaser's discretion and at its sole cost and expense. Seller shall not be obligated to cause the title company to omit any Permitted Exception, including, but not limited to, the satisfaction of any exception to title relating to the filing of Seller's federal or state tax return. Purchaser shall not have the right to terminate this Agreement if Seller is able to provide Acceptable Title.

13.    <u>Survey</u>.  Purchaser may order a survey of the Property, at its sole cost and expense.

14.    <u>Condemnation; Casualty</u>.

A.    In the event that, after the Effective Date but prior to the Closing, all or any material portions of the Property, any interests therein, or any rights appurtenant thereto are taken or appropriated (either permanently or for temporary periods) under the power of eminent domain or condemnation by any authority having such power, or by virtue of any actions or proceedings in lieu thereof, or if any notice or threat of such taking or appropriation has been given or is pending at the Closing Date that would result in the reduction of value in such Property by more than ten percent (10%) of the Purchase Price, Purchaser may elect to terminate this Agreement by providing written notice of such termination to Seller and Escrow Agent within seven (7) business days after Purchaser's receipt of notice of such condemnation, taking or damage, and upon receipt of such written notice, Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations), or (b) elect to proceed with Closing, in which event the Purchase Price shall be reduced by an amount equal to any sums actually received by Seller from the condemning authority by reason of such taking, appropriation or action or proceeding in lieu thereof.

B.    In the event the Property is damaged in any material respect after the Effective Date but prior to the Closing Date and such damage was not caused by Purchaser, any consultant, any of their respective employees or agents, or any inspection and there is no insurance to cover the loss, if the cost to repair such casualty would exceed ten percent (10%) of the Purchase Price, either Purchaser or Seller can elect to terminate this Agreement by delivering written notice to the other party and Escrow Agent within seven (7) business days after such damage occurs.  In such an event, the Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations).  In the event the Property is damaged prior to Closing and such damage was not caused by Purchaser, any consultant, any of their respective employees or agents, or any inspection, and there is insurance to cover the loss, then Purchaser shall have no right to terminate this Agreement and shall proceed with Closing in which event the Purchase Price shall be reduced by all insurance proceeds payable in respect of such damage collected by Seller before the Closing Date and Seller shall assign to Purchaser all of Seller's rights, title and interest in and to all such insurance proceeds not collected by Seller before Closing Date.

15.    <u>Acceptance of State and Municipal Department Violations and Orders</u>.  Purchaser accepts the Property subject to all notes or notices of violations, known or unknown, of law or municipal ordinances,

Docusign Envelope ID: F2E7FAB3-3490-42CD-BD85-D07287202424

orders or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire and health and labor conditions affecting the Property.

16. <u>Closing Adjustments and Costs</u>.

A. Purchaser shall pay the cost of all (i) sales, use, gross receipts, documentary stamps, recordation taxes, transfer taxes and any other similar tax related to the conveyance of title to Property, (ii) title searches, title commitments, title policies (including any fees, premiums and costs relating to procurement of any title commitments, title policies and any requested endorsements) requested by Purchaser, (iii) survey(s) (and any updates thereto) ordered by Purchaser, (iv) investigations (including, without limitations, Purchaser's investigations) conducted by or on behalf of Purchaser, (v) closing costs and any fees payable to the Escrow Agent or any title company, (vi) any fees or expenses payable for the assignment, transfer or conveyance of any property contracts, permits, plans and specifications and warranties to Purchaser, (vii) any mortgage tax, title insurance fees and expenses for any loan title insurance policies, recording charges or other amounts payable in connection with any financing obtained by Purchaser, and (viii) the fees and expenses of Purchaser's own attorneys, accountants, consultants and advisors.

B. If, at the time of Closing, the Property is affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Agreement all the unpaid installments shall be payable by Purchaser when each installment as to such assessment is due and payable after the Closing.

C. Each of the following items are to be apportioned as of midnight the day before the Closing Date: (i) real estate taxes on the basis of the fiscal period for which assessed; (ii) special assessment liens in accordance with the preceding paragraph; (iii) utilities; (iv) water and sewer charges; and (v) any other charges customarily prorated in similar transactions. If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

17. <u>Use of Purchase Price to Pay Certain Encumbrances</u>. If there are any Must-Cure Items which Seller is obligated to pay and discharge at Closing pursuant to this Agreement, Seller may, to the extent permitted by the Sale Order, use any portion of the Balance of the Purchase Price to discharge same. As an alternative, Seller may, to the extent permitted by the Sale Order, deposit money with the title company, if any, in such amount as reasonably required by such title company to assure its discharge. Upon request made within a reasonable time before Closing, Purchaser agrees to provide separate certified checks to assist in clearing up these matters.

18. <u>Events of Default</u>.

A. Purchaser shall be in default under this Agreement if Purchaser (A) fails to timely deliver the Deposit, (B) fails to pay the Balance to Escrow Agent on or before the Closing Date, or (C) fails to pay, perform or observe any of Purchaser's other representations, warranties or obligations hereunder (each of the foregoing, a "<u>Purchaser Default</u>").

B. If, prior to Closing (x) a Purchaser Default occurs, or (y) Seller materially defaults in its covenants or obligations under this Agreement (such default, a "<u>Seller Default</u>"), then the non-defaulting party may elect to either (i) waive the event of default and proceed to Closing, or (ii) terminate this Agreement by delivering written notice of such termination to the defaulting party and Escrow Agent, in which event this Agreement shall be of no further force or effect (other than the Surviving Obligations).

6

Further:

(i)     if Purchaser terminates this Agreement as a result of a Seller Default, then, as Purchaser's sole and exclusive remedy, Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and Seller shall be released from any and all liability hereunder. Purchaser expressly waives its right to seek damages in the event of a Seller Default; and

(ii)     if Seller terminates this Agreement as a result of a Purchaser Default, then all payments made hereunder shall be forfeited to and retained by Seller and Escrow Agent shall deliver the Deposit to Seller and Seller shall be entitled to the retention of the Deposit as liquidated damages and not a penalty. SELLER AND PURCHASER ACKNOWLEDGE THAT SELLER'S DAMAGES WOULD BE DIFFICULT TO DETERMINE, AND THAT THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S DAMAGES RESULTING FROM A DEFAULT BY PURCHASER IN ITS OBLIGATION TO PURCHASE THE PROPERTY. SELLER AND PURCHASER FURTHER AGREE THAT THIS <u>SECTION 18</u> IS INTENDED TO AND DOES LIQUIDATE THE AMOUNT OF DAMAGES DUE TO SELLER, AND SHALL BE SELLER'S EXCLUSIVE REMEDY AGAINST PURCHASER, BOTH AT LAW AND IN EQUITY, ARISING FROM OR RELATED TO A BREACH BY PURCHASER OF ITS OBLIGATION TO CONSUMMATE THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OTHER THAN WITH RESPECT TO PURCHASER'S INDEMNITY AND CONFIDENTIALITY OBLIGATIONS HEREUNDER.

C.     SELLER AND PURCHASER FURTHER AGREE THAT THIS <u>SECTION 18</u> IS INTENDED TO AND DOES LIMIT THE AMOUNT OF DAMAGES DUE TO PURCHASER AND THE REMEDIES AVAILABLE TO PURCHASER, AND SHALL BE PURCHASER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER, BOTH AT LAW AND IN EQUITY ARISING FROM OR RELATED TO SELLER DEFAULT. UNDER NO CIRCUMSTANCES MAY PURCHASER SEEK OR BE ENTITLED TO RECOVER ANY SPECIAL, CONSEQUENTIAL, PUNITIVE, SPECULATIVE OR INDIRECT DAMAGES, ALL OF WHICH PURCHASER SPECIFICALLY WAIVES, FROM SELLER FOR ANY SELLER DEFAULT. PURCHASER SPECIFICALLY WAIVES THE RIGHT TO FILE ANY LIS PENDENS OR ANY LIEN AGAINST THE PROPERTY.

D.     If Purchaser breaches this Agreement and Seller institutes a judicial action to enforce its rights or obtain remedies hereunder, Purchaser shall pay to Seller the reasonable attorneys' fees, court costs and expenses incurred by Seller.

19.     <u>No Representation; Purchaser's Duty to Review.</u>

**IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS (INCLUDING, WITHOUT LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY PROPERTY DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO**

Docusign Envelope ID: 42E7FAB3-349D-42CD-BD85-D07287202424

**PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY. PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND TRANSFER TO PURCHASER AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS," EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT. PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY OR RELATING THERETO (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, PROPERTY INFORMATION PACKAGES DISTRIBUTED WITH RESPECT TO THE PROPERTY) MADE OR FURNISHED BY THE SELLER OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT. PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO CLOSING, SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE PROPERTY, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT.**

20.    <u>Notices</u>. Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States mail, postage prepaid, registered or certified mail, return receipt requested, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein. Unless changed in accordance with the preceding sentence, the addressees for notices given pursuant to this Agreement shall be as follows:

<div style="margin-left: 2em;">

If to Seller:        New Rite Aid, LLC
                     200 Newberry Commons
                     Etters, PA 17319
                     Attn:  Matthew Schroeder
                     Email: MSchroeder@riteaid.com

</div>

68500/0009-51251825v3

Docusign Envelope ID: 42E7FAB3-3490-42CD-BD85-D07287202424

|  | |
|---|---|
| With a copy to: | Paul, Weiss, Rifkind, Wharton & Garrison, LLC 1285 Avenue of the Americas<br>New York, NY 10019<br>Attn:  Alice Belisle Eaton, Christopher Hopkins, Nick Krislov<br>Email:  aeaton@paulweiss.com,  chopkins@paulweiss.com, nkrislov@paulweiss.com |
| If to Purchaser: | Kenwood Golden Ring Properties, LLC<br>Attn:  Mary L. Schaefer<br>8810 Walther Blvd., Apt. 3114<br>Parkville, MD 21234 |
| With a copy to: | Craig M. Schwartz, Esq.<br>Schwartz & Greenbaum, LLC<br>409 Washington Avenue, Suite 300<br>Towson, MD 21204 |

21.    Additional Provisions.

A.    This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to conflicts of laws principles.  Any action of any kind whatsoever, including a counterclaim, cross-claim, or defense, regardless of the legal theory under which any liability or obligation may be sought to be imposed, whether sounding in contract or in tort or under statute, or whether at law or in equity, or otherwise under any legal or equitable theory, that may be based upon, arising out of, or related to this Agreement or the negotiation, execution, or performance of this Agreement and any questions concerning the construction, interpretation, validity and enforceability of this Agreement (each, an "Agreement Dispute") brought by Seller and its successors or assigns or Purchaser and its successors or assigns will be brought and determined only in the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may be validly taken.  Seller and Purchaser hereby irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, each for itself and with respect to its property, generally and unconditionally, with regard to any Agreement Dispute.  Seller and Purchaser each agree not to commence any Agreement Dispute except in the Bankruptcy Court and neither Seller nor Purchaser will file a motion to dismiss any Agreement Dispute filed in the Bankruptcy Court on any jurisdictional or venue-related grounds, including the doctrine of *forum non conveniens*.  Seller and Purchaser irrevocably agree that venue would be proper in the Bankruptcy Court, and hereby irrevocably waive any objection that the Bankruptcy Court is an improper or inconvenient forum for the resolution of any Agreement Dispute.

B.    The parties agree that neither this Agreement nor any memorandum hereof shall be recorded or filed in any government office charged with the obligation to accept documents for recording or filing, and such office is instructed to refuse to accept same for recordation or filing.

22.    Strict Compliance.  Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

68500/0009-51251825v3

Docusign Envelope ID: 425F7AB3-3480-42CD-B085-D07287202424

23.     Waiver of Jury Trial.  EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT, OR THE RELATIONSHIP CREATED HEREBY.  With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.  The parties submit to the exclusive jurisdiction and venue of the Bankruptcy Court with respect to any dispute, claim or issue arising out of this Agreement.

24.     Entire Agreement.  All prior understandings and agreements between Seller and Purchaser are merged in this Agreement.  It completely expresses their full agreement; neither party is relying upon any statements made by anyone else that are not set forth in this Agreement.

25.     Singular Also Means Plural.  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

26.     Gender.  A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

27.     Certain References.  The term "herein," "hereof" or "hereunder" or similar terms used in this Agreement shall refer to this entire Agreement and not to the particular provision in which the term is used.  Unless otherwise stated, all references herein to paragraphs, subparagraphs or other provisions are references to paragraph, subparagraphs or other provisions of this Agreement.

28.      No Oral Changes.  This Agreement cannot be changed or any provision waived orally.  ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

29.     Date of Performance.  If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state where the Property is located, the date for such performance shall be the next succeeding business day.

30.     Severability.  Except as set forth herein, if any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby; provided, however, the parties agree that the conditions for Bankruptcy Court Approval and issuance of a Sale Order is a non-negotiable condition precedent to the validity and enforcement of this Agreement against the Purchaser.  Any other clauses or provisions of this Agreement, not found invalid and unenforceable, shall be and remain valid and enforceable.

31.     Counterparts.  This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of real estate under the laws of the State of New York.  It is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both Seller and Purchaser.

32.     Execution.  For the purposes of executing this Agreement, a document signed and transmitted by electronic (PDF) mail shall be treated as an original document.  The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document.  At the request of either party, any electronic (PDF) mail document shall be re-executed by both parties in original form.  No party hereto may

10

raise the use of electronic (PDF) mail or the fact that any signature was transmitted through the use of electronic (PDF) mail as a defense to the enforcement of this Agreement or any amendment executed in compliance with this paragraph. This paragraph does not supersede the requirements of <u>Section 20</u> hereof.

33.    <u>Assignment</u>. Purchaser shall not assign this Agreement without the prior written consent of Seller, such consent to be given or withheld in Seller's sole and absolute discretion. Any purported assignment by Purchaser in violation of this Agreement shall be voidable at the option of Seller. The refusal of any such person to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against Seller. Any assignment by Purchaser, even if consented to by Seller, shall not act to limit, reduce or impact in any way any of Purchaser's obligations to perform all of its obligations under this Agreement including, without limitation, its obligation to pay the Purchase Price.

34.    <u>Construction of Agreement</u>. This Agreement has been drafted through a cooperative effort of both parties, and neither party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this Agreement. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the parties.

35.    <u>Confidentiality</u>. All information and material obtained by Purchaser in connection with this Agreement, including, without limitation, the Due Diligence Materials (collectively, the "<u>Confidential Information</u>"), (a) will be held in strict confidence, and (b) will not be disclosed to any third party without Seller's prior written consent. Notwithstanding the immediately preceding sentence, Purchaser may disclose the Confidential Information as required by law or to its respective affiliates, investors, lenders, employees, agents, attorneys or consultants who are responsible for determining the feasibility of Purchaser's acquisition of the Property (collectively, the "<u>Permitted Outside Parties</u>") on the condition that such persons maintain the confidentiality of the Confidential Information. In permitting Purchaser and the Permitted Outside Parties to review the Confidential Information, Seller has not waived any privilege or claim of confidentiality with respect thereto, and no third-party benefits or relationships of any kind, either express or implied, have been offered, intended or created. Seller shall have the right to pursue all of its rights and remedies available to Seller, at law and/or in equity, as a result of any breach by Purchaser or any Permitted Outside Party of this <u>Section 34</u> and Purchaser shall be responsible to Seller for any breach of this <u>Section 34</u> by Purchaser or any Permitted Outside Party. In the event this Agreement terminates for any reason, all Confidential Information shall be returned by Purchaser to Seller (or the destruction thereof shall be certified in writing by Purchaser to Seller) as a condition to the return of the Deposit. Purchaser shall also promptly notify Seller in writing of requests for Confidential Information from any third party or regulatory agency. Notwithstanding anything in the foregoing to the contrary, Purchaser shall not issue any press release or otherwise permit any public announcement disclosing the terms of the sale, naming Seller or any of its affiliates as having any involvement in the transaction, or otherwise disclosing any Confidential Information without Seller's prior written consent, which consent Seller may withhold in its sole discretion.

36.    <u>Time of the Essence</u>. It is expressly agreed by the parties hereto that time is of the essence with respect to this Agreement and any aspect thereof.

37.    <u>No Exclusive Negotiations</u>. Seller shall have the right, at all times prior to the Closing, to solicit backup offers and enter into discussions, negotiations, or any other communications concerning or related to the sale of the Property with any third-party; *provided*, *however*, that such communications are subject to the terms of this Agreement, and that Seller shall not enter into any binding contract with a third-party for the sale of the Property unless such contract is contingent on the termination of this Agreement without the Property having been conveyed to Purchaser.

<div align="center">11</div>

38.    <u>Not an Offer</u>.  The delivery by Seller of this Agreement shall not constitute an offer to sell the Property, and Seller shall have no obligation to sell the Property to Purchaser, unless and until Purchaser and Seller have each executed and delivered this Agreement to the other party.

39.    <u>Survival</u>.  Except for the terms of provisions of (i) Sections <u>15</u>, <u>18</u>, <u>19</u>, <u>23</u>, and <u>34</u> and (ii) any other provisions in this Agreement that by their express terms survive the Closing (the foregoing (i) and (ii) are referred to herein as the "<u>Surviving Obligations</u>"), none of the terms and provisions of this Agreement shall survive the Closing or termination of this Agreement, and all of the terms and provisions of this Agreement (other than the surviving provisions noted above, which shall survive the Closing) shall be merged into the Closing documents and shall not survive the Closing and no party hereto shall have any liability hereunder after the Closing in respect of such provisions that do not survive the Closing.

*[Signatures appear on following page]*

12

**IN WITNESS HEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**PURCHASER:**

Kenwood Golden Ring Properties, LLC

By: _____

Printed: Mary L. Schaefer _____

Title: ___ Manager _____

**SELLER:**

_____
Rite Aid of Maryland, Inc.

By: _____George Zhushma_____

Printed: ___George Zhushma_____

Title: ___GVP Central Operations & Pharmacy Acquisitions

13

## Annex I

### Legal Description of Property

6330 Kenwood Avenue
Tax ID. 14-13-026890
14-13-026891

BEGINNING for the first on the east side of Kenwood Avenue near Golden Ring Road designated as Lot No. 6 Balikos First Addition to Kenwood Park and described as follows, that is to say:

BEGINNING for the first in the center of Kenwood Avenue 40 feet wide and at the end of the last line of the land which by a Deed dated May 28, 1947 and recorded among the Land Records of Baltimore County in Liber R.J.S. No. 1569, folio 88 and was conveyed by Frederick Hellwig, Jr., et al., to Eugene Pruitt, et al., and running thence bounding on the center of Kenwood Avenue as aforesaid North 3 degrees 37 minutes West 50.96 feet thence running for line of division now made the two following courses and distances viz; North 88 degrees 8 minutes East 159.54 feet and South 1 degree 48 minutes East 45.86 feet to the beginning of the aforesaid last line of the land conveyed as aforesaid by Frederick Hellwig, Jr., et al., to Eugene Pruitt, et al., and thence binding on said last line South 86 degrees 18 minutes west 160.33 feet to the place of beginning. Reserving a strip of land 10 feet wide along the easternmost side of the above described lot of land for the widening of Kenwood Avenue subject however to all that portion of the above described parcel of land fronting on Kenwood Avenue as was conveyed to the State of Maryland for the use of the State Roads Commission of the State of Maryland for road purposes.

BEGINNING for the second thereof on the easternmost side of Kenwood Avenue 40 feet wide and at the 'distance of 50 feet North 3 degrees 37 minutes west from the intersection of the easternmost side of Kenwood Avenue as aforesaid with the last line of the land which by a deed dated May 28, 1947 and recorded among the Land Records of Baltimore County in Liber J.W.B. No. 1569, folio 88 etc. was conveyed by Frederick Hellwig, Jr., et al., to Eugene Pruitt, et al., and running thence bounding on the easternmost side of Kenwood Avenue north 3 degrees 37 minutes west 50 feet thence running for lines of division now made the three following courses and distance viz: North 88 degrees 8 minutes east 140-46/100 feet south 1 degree 48 minutes east 50 feet and south 88 degrees 8 minutes west 139-54/100 feet to the place of beginning. Reserving a strip of land 10 feet wide along the easternmost side of Kenwood Avenue for the widening of Kenwood Avenue. Being Lot No. 7 on the unrecorded Plat of Balikos first Addition to Kellwood Park.

The improvements on the above described lots of ground being known as No. 6330 Kenwood Avenue.

TOGETHER with the use of an alley 20 feet wide leading from the rear of the herein firstly described property to Alexis Avenue, if said alley exists as of date of this Deed.

BEING all of those lots of real property conveyed by deed, dated January 31, 1997 from Josephine E. Marino, survivor of James Marino, Jr. to Rite Aid of Maryland, Inc., said deed being recorded among the Land Records of Baltimore County, Maryland in Liber 12019. folio 401.

Tax ID.        14-13-026890
               14-13-026891

14