

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                                                         609-858-9360
**Judge, United States Bankruptcy Court**

September 15, 2025

*All Interested Parties*

        Re:    <u>New Rite Aid, LLC</u>
                Case No.: 25-14861 (MBK)

Dear Counsel:

      Presently before the Court is SVAP III Plaza Mexico's Objection (ECF No. 1873) to Debtor's Notice of Successful and Backup Bidders with Respect to the Auction of Certain of the Debtors' Leases (the "Notice," ECF No. 1524). By way of the Notice, Debtors seek to assume and assign an unexpired nonresidential real property lease between tenant Thrifty Payless, Inc. ("Thrifty") and SVAP III Plaza Mexico (the "Landlord") to Ross Dress for Less, Inc. ("Ross"). For the reasons that follow, the Court will **APPROVE** the assumption and assignment.

I. **Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (M) and (N). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following constitutes the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.[1]

II. **Background and Procedural History**

The factual background and procedural history of the matter are well known to the parties. As such, they will not be repeated in detail here. In brief, on or about February 20, 1987, Thrifty Corporation and Lynwood Associates executed a lease (the "Lease") for the premises located at 11325 Long Beach Boulevard, Lynwood, California. Thrifty Corporation was not affiliated with the Debtors at the time it entered into the Lease. On or about December 12, 1996, the Debtors acquired Thrifty PayLess, Inc. ("Thrifty"), the corporate parent of Thrifty Corporation.

On June 18, 2025, Landlord submitted a Lease Termination Offer, a Bid Letter, and a Bidder Registration in accordance with the approved Auction Procedures. On July 21, 2025, the Debtors conducted an auction with respect to the Lease, at which the Landlord was present and prepared to bid on the Lease. However, "[a]t the Auction, the Debtor announced that it was proceeding by private sale to Ross for the Lease and Landlord was not given an opportunity to submit a competing bid." *Landlord's Obj.* ¶ 8, ECF No. 1873. On July 22, 2025, Debtors filed the Notice (ECF No. 1524) indicating their intent to assume and assign the Lease to Ross as part of a

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact they too are adopted as such.

package bid (the "Ross Package Bid"), which includes the assumption and assignment of eighteen (18) unexpired non-residential real property leases to Ross for $4,802,128.00, less any Cure Cost Reduction (as defined in the parties' agreements). The Landlord objects to the assumption and assignment, alleging that "[b]y excluding the Lease from a readily available forum for a competitive bidding process and foreclosing any opportunity for Landlord to bid on their Lease in response the to the Ross bid . . . the Debtors have not complied with their fiduciary duty to maximize value for the estates and therefore the sale to Ross should not be approved." *Landlord's Obj.* 2, ECF No. 1873. The Landlord also argues that "the Lease assignment should be denied based on a lack of adequate assurance of future performance of the proposed assignee entity as compared to the Tenant upon initial leasing, which is the Debtors' burden." *Id.* at ¶ 18.

The Debtors replied to the Landlord's Objection, arguing that the decision to overlook the Landlord's bid in favor of the Ross Package Bid was well-within its discretion. Debtors also challenged the Landlord's standing as an aggrieved bidder to oppose the assumption and assignment of the Lease to Ross. *Debtors' Response* ¶ 3, ECF No. 2007. The Court heard argument on this issue during a hearing on August 28, 2025, at which time it requested supplemental briefing. Specifically, the Court sought a supporting declaration that explains in greater detail Debtors' decision to choose the Ross Package Bid over competing alternatives. The Court also requested further submissions regarding § 365(b)(3)(A)'s adequate assurance of future performance requirement as it applies to a shopping center lease. The Court has reviewed Ross's Supplemental Reply (ECF No. 2303), Debtors' Supplemental Reply (ECF No. 2306), and the Supplemental Declaration of Mike Matlat (ECF No. 2307), as well as Landlord's Supplemental Objection (ECF No. 2372).

3

### III. Discussion

#### A. Debtors' Business Judgment

The Court first considers the Declaration of Mike Matlat, a Senior Managing Director of A&G Realty Partners—the real estate consulting firm that Debtors engaged to, among other things, conduct the sale of certain of New Rite Aid's real estate assets. Mr. Matlat explains the marketing and sale process for the Debtors' lease portfolio. *See Matlat Decl.* ¶¶ 7-8, ECF No. 2307. He states that he was involved in all processes relating to the marketing and sale of assets, including the discussions that led to bids on unexpired leases. *Id.* at ¶ 9. Following extensive negotiations, on or about July 17, 2025, A&G received the "Ross Package Bid" from Ross that constituted a bid for 18 non-residential real property Leases where a debtor-entity is the lessee or the tenant under such Lease. The Ross Package Bid includes the Lease at issue for which SVAP III Plaza Mexico is the landlord. Mr. Matlat certifies that the Ross Package Bid was expressly submitted upon the condition that it was a package bid for all eighteen (18) Leases, and the conditions of the bid did not allow the Debtors to remove any lease from the Ross Package Bid if the Debtors received an individual bid for a Lease that would have exceeded the Bid/Purchase Price contained in the Ross Package Bid. *See Id.* at ¶¶ 14-15.

Mr. Matlat certifies that he and other individuals at A&G analyzed the Ross Package Bid and engaged in discussions with Debtors' advisors and the representatives of the Consultation Parties. Based on the information and discussions, Debtors determined that:

> (a) the Ross Package Bid would maximize the Debtors' return on the Leases within the Ross Package Bid,
>
> (b) the Ross Package Bid represented the highest and best value that the Debtors could reasonably expect to receive for the Leases in the Ross Package Bid, and
>
> (c) accepting the Ross Package Bid in advance of the Auction, without subjecting the Leases to any further competitive bidding at the Auction, was a proper and sound exercise of the Debtors' business judgment.

*Matlat Decl.* ¶ 16, ECF No. 2307.

The record demonstrates that the agreements set forth in the Ross Package Bid were negotiated at arm's-length and in good faith. There is no evidence of collusion or fraud. While subjecting each of the leases in question to competitive bidding at the Auction could have resulted in a higher individual bid for a given lease, such a result is not guaranteed, and a package deal ensures sales of all the leases in question and avoids additional administrative costs. Accordingly, the Court finds that the decision to accept the package bid for 18 leases was a decision well-within the sound exercise of Debtors' business judgment and is consistent with, and permitted by, the Sale Procedures and the Sale Procedures Order.

### B.  § 365(b)(3)(A) Adequate Assurance Requirement

Next, the Court considers whether the Debtor has satisfied the Code requirements for assumption and assignment. Under the Code a Debtor may assume or assign a lease so long as "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ." *See* 11 U.S.C. § 365(f)(2)(B). If the lease in question is a shopping center, the Code requires that a debtor demonstrate "that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease." 11 U.S.C. § 365(b)(3)(A).

At the time of the hearing on August 28, 2025, the Landlord pointed out that neither Debtors nor Ross had presented evidence of the former tenant's financial condition and operating performance at the time the former tenant entered into the Lease, which was first executed by Thrifty in 1987. The Court acknowledged that evidence had not been provided that would allow this Court to make any comparison between Ross's and the Thrifty's financial condition at the

5

time of the Lease in 1987 or at the time of Debtors' acquisition of Thrifty in 1996. However, the Court also noted that given the time lapse—38 years since Thrifty's execution of the lease in 1987—and the fact that Debtors did not own Thrifty at the time it entered the Lease, such information may be difficult to come by and the comparison may lose value and become less useful in accomplishing the goals of the Code. Indeed, as Ross points out, the essential purpose of the Code provision in question is "to require a debtor to establish that a landlord is getting a new tenant that is at least as good as the old tenant." *Ross's Supp.* ¶ 3, ECF No. 2303.

It seems to this Court that strict adherence to only a financial comparison without regard to other factors—such as passage of time, declines in the neighborhood, changes in laws and external economic forces—would not constitute a fair comparison. During oral argument on August 28, 2025, the Landlord conceded it was "not ideal to go back to 1987" but nevertheless maintained that the plain language of the statue demanded such a comparison. While the Court has considered whether the passage of time or other factors should impact the analysis or the showing mandated under § 365(b)(3)(A), it need not rule on that issue today. The Court determines that Debtors and Ross have more than adequately satisfied the § 365(b)(3)(A) requirement under the plain language of the Code.

   1. **1996 Comparison: "the time the debtor became the lessee under the lease"**

Debtors acquired Thrifty Payless in 1996 and, for the fiscal year ending March 1, 1997, Debtors had income before taxes and extraordinary loss of $259 million. *See 1997 10-K of Rite Aid, annexed as Exhibit E to Debtors' Supplement* 109, ECF No. 2306. In order to provide an accurate comparison of the earnings reported in 1997 to today's dollars, Debtors consulted the CPI Inflation Calculator provided by the U.S. Bureau of Labor Statistics. This calculator reveals that $259 million in 1997 equates to $523 million today. This figure—which represents Thrifty's

*annual* income before taxes in 1997—is far less than Ross's reported *quarterly* income before taxes. Ross's quarterly income is reported as $640 million in Ross's Form 10-Q for the 3-month period ending on May 3, 2025, which is attached as Exhibit A to Ross's Reply (ECF No. 2005-1) and was admitted into evidence during the August 28 Hearing as part of Debtors' exhibits.

The Court also considers the table prepared by Ross in its Supplement, which provides a comparison of the 2024 Ross 10-Q and the 1996 Rite Aid 10-Q. *Ross's Supp.* ¶ 12, ECF No. 2303. The evidence shows, and this table clearly elucidates, that Ross's current financial condition and operating performance is significantly stronger than was Debtors' "as of the time the debtor became the lessee under the lease" in 1997. 11 U.S.C. § 365(b)(3)(A).

## 2. 1987 Comparison: as of the time of Thrifty's initial execution of the Lease

In their supplemental pleadings, Ross and Debtors also cite to publicly available information about Thrifty Corporation in or around the year 1987. Attached to Debtors' Supplement as Exhibit A is Thrifty's 1983 Annual Report, which reports $42 million in income before taxes. *Debtors' Supp.* 26, ECF No. 2306. Using the CPI Inflation Calculator, that $42 million in 1983 adjusts to only $123 million in today's dollars, which is significantly less than Ross's $640 million in quarterly income. Debtors also cite to the Quarterly Earnings of Thrifty Corporation published in the New York Times on July 10, 1985, which indicate sales of $342 million, with net income of $5.6 million. *Debtors' Supp.* ¶ 3, ECF No. 2306 (citing New York Times Late Edition, NYT. VOL. CXXXIV … No. 46,466). That $5.6 million equates to only $17.2 million in today's dollars.

The Landlord criticizes Debtors and Ross for providing only "some financial information from 1983, newspaper articles from 1985 and 1986, and other financial information from 1996 and beyond." *Landlord's Supp.* ¶ 15, ECF No. 2372. The Landlord contends that neither the

7

Debtors' nor Ross's briefs provide evidence regarding Thrifty's financial condition and operating performance in 1987 and, thus, do not satisfy the Bankruptcy Code and/or provide this Court with a record upon which to make an informed determination. *See id.* ¶¶ 16-18. The Court disagrees.

As previewed during the hearing on August 28, it was anticipated that information regarding Thrifty's financial condition in 1987 would be limited. Nevertheless, the information that is available clearly establishes that Ross's financial condition is far superior. Simply put, it is not a close call for which additional or more detailed information would be helpful. Ross's financial condition is not merely similar, it is far superior.

Additionally, this Court is not faced with the situation in *Sears*, a nonbinding decision cited by the Landlord in support of its Objection. *See In re Sears Holdings Corp.*, 613 B.R. 51, 75 (S.D.N.Y.) (2020). In *Sears*, the debtor—a well-established corporation with a long and strong financial history—proposed an assignment in 2019 of a lease it had executed in 1991. The purported assignee was a start-up company with no operating history of its own. The *Sears* court determined that the debtor failed to prove that the financial condition of the proposed assignee—a virtual unknown—was anything like that of Sears in 1991—a virtual powerhouse. Here, the Court is presented with the inverse situation. The purported assignee is not a newly-established company or a "virtual unknown." Rather, it is the powerhouse. Ross is a successful, international corporation with a market capitalization of $49.30 billion. *See Debtors' Supp.* ¶ 18, ECF No. 2306. Moreover, the Court does not consider former tenant's financial condition to be a "virtual unknown." As discussed, documentation has been presented that paints a sufficient financial picture for this Court to make an informed decision. The Court agrees with Debtors that "by any measure, Ross's financial condition and operating performance seemingly far surpass that of

Thrifty Corporation in or around 1987 or that of the Debtors when they acquired Thrifty Payless, Inc. in 1996." *Id.* at ¶ 12.

### C. Request for Attorneys' Fees

Finally, the Court denies Debtors' request for attorneys' fees and costs—first raised during the August 28, 2025 Hearing and again in Debtors' Supplement. In short, Debtors assert that they are entitled to fees and costs because the Landlord's Objection "obligated [them] to participate in this contested matter to enforce their rights of assignment under the Lease." *Debtors' Supp* ¶ 22, ECF No. 2306. As an initial matter, as the Landlord points out, Section 13.1 of the Lease awards fees and costs to a successful party in an action "to enforce any of the terms of this Lease, or for damages resulting from a breach of this Lease[.]" *Lease* § 13.1, ECF No. 1873-2. There is no breach of the Lease at issue, and it is unclear whether the present action constitutes an action to "enforce any of the terms of [the] Lease." *Id.*; *see also id.* at § 11.2 (referencing *Schedule D* ¶ 5 "*Article 11*") (addressing assignment of the Lease).

In any event, the Court notes that much of the information that enabled this Court to make an informed decision with regard to the proposed assumption and assignment was provided only *after* the Landlord filed its Objection. This documentation could have been submitted in support of Debtors' requested relief. Although the Objection resulted in additional expenses to Debtor in terms of responsive legal argument, the Court finds that the preparation and filing of the Supplemental Declaration and supporting financial documents were necessary to establish a proper evidentiary record. Accordingly, the Court declines to award attorneys' fees and costs.

**IV.    Conclusion**

For the foregoing reasons, the Court finds that Debtors have adequately demonstrated that eschewing competitive bidding on the Lease in favor of the Ross Package Bid was within Debtors' sound business discretion and permitted by the Sales Procedures Order.  Further, the Court determines that Debtors have sufficiently satisfied the requirement under § 365(b)(3)(A).  The parties will bear their own attorneys' fees and costs.  Debtors are directed to submit an appropriate form of Order.

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Cc:  Filed on CM/ECF