## AMENDMENT TO LEASE

**THIS AMENDMENT TO LEASE** (this "*Amendment*") is made effective December 1, 2023 (the "*Effective Date*") by and between KACHR, LLC, a Pennsylvania limited liability company ("*Landlord*"), and ECKERD CORPORATION, a Delaware corporation ("*Tenant*," and together with the Landlord, the "*Parties*" and each, a "*Party*").

## RECITALS

**WHEREAS**, Landlord and Tenant are parties to that certain lease agreement dated November 12, 2008 (as amended from time to time thereafter, the "*Lease*"), with respect to that certain premises located at 4630 Perkiomen Avenue Reading, Pennsylvania 19606-3218, which premises is defined and more particularly described in the Lease (the "*Premises*");

**WHEREAS**, on October 15, 2023, Tenant and certain of its debtor affiliates (collectively, the "*Debtors*") commenced a case (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "*Bankruptcy Code*") which is now pending in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*"). The Chapter 11 Cases are being jointly administered under Case Number 23-18993; and

**WHEREAS**, Landlord and Tenant desire to modify certain terms and conditions of the Lease, effective as of the Restructuring Effective Date (as hereinafter defined), as amended by this Amendment.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1. <u>Capitalized Terms</u>. Capitalized terms used and not otherwise defined herein shall have the respective meaning assigned to such terms in the Lease.

2. <u>Effective Date</u>. This Amendment, and each of its amendments, modifications, and waivers with respect to the Lease as set forth herein, shall be effective on the date that the Lease is assumed or assigned in the Chapter 11 Cases, whether pursuant to (a) procedures approved by the Bankruptcy Court or (b) entry of an order by the Bankruptcy Court approving the assumption or assignment of the Lease, including pursuant to or in connection with a sale of Tenant's assets pursuant to Section 363 of the Bankruptcy Code, confirmation of Tenant's chapter 11 plan of reorganization in the Chapter 11 Cases, or a stand-alone motion for assumption or assignment of the Lease (in each case, the "*Restructuring Effective Date*"); *provided, however,* that Tenant shall obtain the benefit of this Amendment, and this Amendment shall be binding on Landlord, beginning on the Effective Date hereof. In the event the Restructuring Effective Date does not occur, or the Lease is rejected in accordance with the Bankruptcy Code, this Amendment shall be null and void in all respects, and nothing in this Amendment shall give rise to any claim, causes of action, or damages (compensatory or consequential) against either Party. Nothing contained in this Amendment is intended to be or shall be construed as or deemed an assumption or an assignment of the Lease, as amended hereby, or any contract or document related thereto under section 365 of the Bankruptcy Code. Prior to the Restructuring Effective Date, Tenant expressly reserves its right, in its sole and absolute discretion, to assume, reject, or assign the Lease pursuant to section 365 of the Bankruptcy Code.

1

3. <u>Lease Modification</u>.

(a) <u>Rent</u>. Landlord and Tenant acknowledge and agree that (i) for the period beginning on the Effective Date and ending on November 30, 2028, Tenant shall only be obligated to pay rent (inclusive of any percentage rent and common area maintenance charges, but exclusive of taxes and insurance premiums and all other additional rent payable directly to the Landlord) in the amount of $172,725.00 per annum ("***Base Rent***"), payable on the first (1st) day of each month in equal installments of $14,393.75, and (ii) for the period beginning on December 1, 2028 and ending on March 18, 2031, Tenant shall only be obligated to pay Base Rent in the amount of $181,361.00 per annum, payable on the first (1st) day of each month in equal installments of $15,113.42. In the event that, upon the Restructuring Effective Date, Tenant has paid rent in excess of the amount herein specified for the period specified above, then Tenant shall be entitled to offset such excess amounts against the next installment(s) of Base Rent coming due under the Lease until such time as such excess amounts have been recouped in full by Tenant.

(b) <u>Abatement</u>. Landlord hereby acknowledges and agrees that Base Rent with respect to the Abatement Period (as defined below) is hereby abated and forgiven (the "***Abated Rent***") in full. Landlord hereby waives any remedy under, or with respect to, the Lease or at law and/or equity arising in connection with, or otherwise related to, the Abated Rent. As used herein, "***Abatement Period***" shall mean the period beginning on the date the Tenant emerges from its Chapter 11 Cases (the "***Initial Date***") and ending on the last calendar day of the second full calendar month after the calendar month in which the Initial Date occurs.

(c) <u>Waiver of Claims</u>. Landlord hereby waives, releases, and discharges Tenant and all of its affiliated companies, the Debtors (as defined in the Chapter 11 Cases), and their bankruptcy estates, and their respective successors and assigns, from any and all claims, damages, obligations, liabilities, actions, and causes of action of every kind and nature whatsoever it may have for any cure payments or other amounts due and owing under the Lease, or that otherwise arose under or in connection with the Lease, through and including the date hereof, including but not limited to claims for so-called "stub rent," (whether or not asserted as administrative priority claims pursuant to Section 503(b) of the Bankruptcy Code) whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, now existing or hereafter arising, including any claims and causes of action for damages, payments, or amounts owing or that may become owing pursuant to section 365(b) of the Bankruptcy Code.

(d) <u>Attorneys' Fees</u>. Landlord further acknowledges and agrees that, notwithstanding anything to the contrary in the Lease, Landlord shall not be entitled to receive from Tenant or its affiliates (or charge as rent due from Tenant or its affiliates) any attorneys' fees incurred by Landlord in connection with this Amendment.

4. <u>No Default and Waiver of Charges</u>. Landlord acknowledges and affirms that as of the Effective Date, Tenant is not in default under any of the terms, conditions, or provisions of the Lease, and that there exist no events or circumstances which, with the passage of time or the giving of notice or both, constitutes a default under the Lease (including, without limitation, any failure of Tenant to meet its obligations to continuously operate in the Premises). Landlord further acknowledges and agrees that it has no offsets, claims, or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease. To the extent that any notices of default or non-payment have been delivered to Tenant, all such notices are hereby waived and of no further force or effect. No default interest, late fees, charges, surcharges, or other fees shall be due, and all such interest, late fees, charges, surcharges, or other fees are waived and shall not apply with respect to the period prior to the Effective Date.

5. <u>Force Majeure</u>. Notwithstanding anything to the contrary contained in the Lease, it is understood and agreed by the Parties that in the event Tenant shall be prevented from operating its business

in a commercially reasonable manner by a cause or causes beyond Tenant's control which shall include, without limitation, all labor disputes, civil commotion, shelter in place orders from any governmental authority, widespread disease or other public health and safety concerns (including, without limitation, COVID-19 and SARS-CoV-2), acts of war, war-like operations, invasion, rebellion, hostilities, military or usurped power, sabotage, terrorism, governmental regulations or controls, fire or other casualty, inability to obtain any material, services or financing, or through Acts of God (collectively, "*Force Majeure*"), then Tenant shall be excused from, and shall not be responsible for any failure to perform, any of its covenants and obligations under the Lease (other than payment obligations including, without limitation, the obligation to pay Base Rent, or obligations that may be cured by the payment of money (*e.g.*, maintaining insurance and paying the Real Estate Taxes for the Premises)) for any period that Force Majeure prevents Tenant from operating its business as described herein.

6. Confidentiality. Tenant and Landlord will keep confidential (a) the terms of this Amendment, and (b) all negotiations and communications, including each Party's representatives in connection with this Amendment (collectively, "*Confidential Information*"). Tenant and Landlord will not disclose or make available any Confidential Information to any other person or entity, except (i) accountants, brokers, attorneys, and other agents of Landlord and Tenant for the sole purpose of providing advice to Landlord and Tenant in connection with the Confidential Information and who agree to preserve the confidential nature of same, or (ii) as required by law.

7. Authority. Each Party represents and warrants that it has the authority and power to enter into this Amendment and that this Amendment constitutes a legal, valid and binding obligation of that Party.

8. Notices.

(a) Notwithstanding anything to the contrary contained in the Lease, any notices required or permitted to be sent to Tenant under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

If by Certified Mail:
ECKERD CORPORATION
P.O. Box 3165
Harrisburg PA 17105
Attn: Legal Department

If by Overnight Courier:
ECKERD CORPORAITON
200 Newberry Commons
Etters PA 17319
Attn: Legal Department

(b) Notwithstanding anything to the contrary contained in the Lease any notices required or permitted to be sent to Landlord under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

| | |
|---|---|
| Name: | KACHR, LLC |
| Address: | 2526-A Centre Avenue |
| | Reading, PA 19605 |
| Email: | scott@landis-heckman.com |
| Telephone: | (610) 916-1487 |

3

9. <u>Miscellaneous</u>.

(a) Landlord and Tenant each hereby represents that it has dealt with no party or broker in connection with this Amendment except for A&G Real Estate Partners (*"Tenant's Broker"*). Any and all fees that may be due to Tenant's Broker shall be paid by Tenant pursuant to a separate agreement. Insofar as each Party knows, no other broker negotiated this Amendment or is entitled to any commission in connection therewith. Landlord and Tenant each agrees to indemnify, defend and hold the other harmless from and against any and all claims, loss, cost and damages (including reasonable attorney fees and court costs) suffered or incurred by the representing Party as a result of a breach of this representation.

(b) This Amendment may be executed in counterparts, each of which shall constitute an original, and which together shall constitute one and the same agreement. This Amendment may be executed or delivered by electronic or facsimile means, and copies of executed signature pages stored electronically in portable document format (.pdf) shall be binding as originals. Neither Party shall record this Amendment without the express prior written consent of the other Party.

(c) Subject to the other terms of this Amendment, each of Landlord and Tenant agree to execute and deliver such other instruments and perform such other acts, in addition to the matters herein specified, as may be reasonably necessary, from time to time, to effectuate the modifications, waivers and amendments contemplated by this Amendment.

(d) This Amendment, and all covenants contained herein, shall be binding and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.

(e) The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect.

(f) Except as modified as set forth in this Amendment, all of the terms and provisions of the Lease remain unchanged and in full force and effect and Landlord and Tenant hereby ratify and confirm same. Landlord and Tenant acknowledge and agree that the Lease, as modified by this Amendment, sets forth the entire agreement between Landlord and Tenant and there are no other agreements, understandings, undertakings, representations, or warranties among the Parties with respect to the subject matter hereof except as set forth herein. In case of any conflict between the terms and provisions of the Lease and the terms and provisions of this Amendment, the terms and provisions of this Amendment shall control.

*[signature pages follow]*

4

DocuSign Envelope ID: 7EDE5F0B-4008-4A4B-8C04-51D838DB52A1
Case 25-14861-MBK    Doc 2467-2    Filed 09/16/25    Entered 09/16/25 11:59:52    Desc
Exhibit A (part 2 of 2)    Page 5 of 5

Rite Aid Store No. 11172

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment effective as of the Effective Date.

**LANDLORD:**

KACHR, LLC

By: _____
Name: Sharon A. Landis
Title: President


**TENANT:**

ECKERD CORPORATION

By: _____
    DocuSigned by: Lisa M. Winnick
    064A956E928F4BF...
Name: Lisa M. Winnick
Title: Vice President