| |
|---|
| UNITED STATES BANKRUPTCY COURT FOR<br>THE DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-1(a) |
| BENESCH, FRIEDLANDER, COPLAN &<br>ARONOFF LLP<br>Jennifer R. Hoover (NJ 026502001)<br>John C. Gentile, Esq.<br>Continental Plaza II<br>411 Hackensack Ave., 3rd Floor<br>Hackensack, NJ 07601-6323<br>Telephone: (302) 442-7010<br>Facsimile: (302) 442-7012<br>jhoover@beneschlaw.com<br>jgentile@beneschlaw.com<br><br>*Counsel to Carstens Realty* |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,[1]<br><br>        Debtors. |

Chapter 11

Case No. 25-14861 (MBK)

Judge: Michael B. Kaplan

(Jointly Administered)

**OBJECTION OF CARSTENS REALTY TO THE DEBTORS' NOTICE
OF ASSUMPTION AND ASSIGNMENT OF CERTAIN OF
THE DEBTORS' LEASES TO DOLLAR TREE STORES, INC.**

Carstens Realty ("Carstens" or "Landlord"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the *Notice of Assumption and Assignment of Certain of Debtors' Leases to Dollar Tree Stores, Inc.* [D.I. 2260] (the "Notice"). In support of this Objection, Landlord respectfully states as follows:

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

## BACKGROUND

1. On May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Landlord and one of the Debtors, Thrifty Payless, Inc. ("Tenant"), are parties to that *Shopping Center Lease* dated December 12, 2012 (together with all amendments, modifications, and extensions thereof, the "Lease"), related to real property located at 1206 West Hillsdale Boulevard, San Mateo, California (the "Premises"). A true and correct copy of the Lease is attached hereto as **Exhibit A**.

3. Tenant owns and operates retail pharmacies under the Rite-Aid brand, including on the Premises under the Lease.

4. Landlord owns the Premises and operates the Premises as a shopping center. The Premises consists of approximately twenty units for retail businesses, with a common parking lot. **Ex. A** at 27 (Exhibit "A"). A Google Street View screen capture showing the Premises, with signage for the Tenant visible, is attached hereto as **Exhibit B**.

5. Because the Premises is operated as a shopping center, the rent due under the Lease is in part a percentage rent. Section 2.02 of the Lease provides that the Tenant shall pay three percent of the Tenant's gross receipts from sales made on or from the Premises, beginning at a defined minimum. **Ex. A** at 4.

6. Among the provisions of the lease is an operation clause. Under Section 5.02(C) of the Lease, the failure "to operate a business operation permitted by the terms" of the Lease for ninety consecutive days constitutes a default. **Ex. A** at 9.

7. On September 2, 2025, the Debtors filed the Notice to notify certain lease counterparties of their intention to assume and assign certain leases to Dollar Tree Stores, Inc. ("Dollar Tree"). Dollar Tree is a low-cost general retail store chain, which derives its name from its typical pricing of its goods at around one dollar.

8. Pursuant to the Notice, the Debtors intend to assume and assign the Lease.

## OBJECTION

9. Assumption and assignment of an unexpired lease is subject to the Bankruptcy Court's approval. 11 U.S.C. § 365(a). Section 365(b)(1) of the Bankruptcy Code provides, in pertinent part:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee —
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). 11 U.S.C. § 365(b)(3) further provides, in pertinent part, that:

> (b)(3) for the purposes of paragraph (1) of this subsection, adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (B) that any percentage rent due under such lease will not decline substantially; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (cleaned up).

10. The Debtors must assume and assign the Lease in its entirety, and any assignee is subject to the terms and conditions of the Lease. *See Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("It is well established that as a general proposition an executory contract must be assumed or rejected in its entirety.") (citation omitted); *NLRB v.*

3

*Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984) ("Should the debtor-in-possession elect to assume the executory contract, . . . it assumes the contract *cum onere* . . . and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate.") (citations omitted).

11. Under 11 U.S.C. § 365(b)(1)(A), the debtor-in-possession may not assume and assign an executory contract unless the debtor-in-possession "cures, or provides adequate assurance that [it] will cure" any defaults under the contract. *See Spyglass Media Group, LLC v. Bruce Cohen Productions (In re Weinstein Company Holdings LLC)*, 997 F.3d 497, 501 (3d Cir. 2021) ("To assume an executory contract, a debtor must cure existing defaults and put the contract in the same place as if the bankruptcy never happened.").

12. A "shopping center," as used in 11 U.S.C. § 365(b)(3), consists of multiple retail businesses present on one parcel of real property. *See In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1087-88 (3d Cir. 1990). Indicia that a real-property parcel is a "shopping center" may include, among other things, a combination of leases, all leases being held by a single landlord, all tenants engaging in the commercial retail distribution of goods, common parking areas for all tenants, the presence of percentage-rent terms in the leases, and contiguity of the stores operated by the tenants. *Id.*

13. An assignment of a lease in a shopping center cannot cause disruption to the tenant mix or balance of that shopping center. *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 299 n.8 (3d Cir. 2000). In drafting Section 365 of the Bankruptcy Code, Congress noted that "the tenant mix in a shopping center may be as important to the lessor as the actual promised rental payments, because certain mixes will attract higher patronage of the stores in the center, and thus, a higher rental for the landlord." H.R. REP. No. 95–595, 95th Cong., 1st

Sess. 348 (1977). As a result, even a non- "substantial" disruption of tenant mix or balance is not allowed. *In re Rickel Home Ctrs.*, 209 F.3d at 299 n.8.

14. Landlord objects to the Debtors' proposed assignment of the Lease to Dollar Tree. The Debtors have not provided adequate assurance that Dollar Tree will perform the terms of the Lease, that the percentage rent paid to Landlord will not substantially decrease, or that the assignment of the Lease will not disrupt the tenant mix or balance of the Premises.

15. As a threshold matter, the Premises is clearly a "shopping center" as used in 11 U.S.C. § 365(b)(3), and therefore Section 365(b)(3) applies. A variety of businesses operate on the Premises, all of which are commercial retailers of goods. *See* **Ex. B**. Landlord owns the entire Premises. *See* **Ex. A** at 27. The Tenants use a central, shared parking lot. **Ex. A** at 27; **Ex. B**. The Lease includes a percentage-rent term. **Ex. A** at 4. The Premises consists of multiple contiguous rental units designed to be used as retail space. **Ex. A** at 27; **Ex. B**. These all indicate, per the Third Circuit, that the Premises is a shopping center, and that Section 365(b)(3) applies.

16. Landlord has received no assurances—adequate or otherwise—that Dollar Tree will perform the terms of the Lease. Section 5.02(C) of the Lease states clearly, among other things, that a failure to operate a business under the terms of the Lease for more than ninety consecutive days constitutes a default under the Lease. *See* **Ex. A at 9**. Section 365(b)(1)(C) requires that the debtor provide "adequate assurance of future performance" of the executory contract to be assigned. But, the Debtors have not indicated when Dollar Tree would begin operating its business at the Premises. *See generally* Notice (providing no such information). While the Debtors state that Dollar Tree "has the financial wherewithal to meet all future obligations under such applicable Lease," *id.* at 2, this would seem to provide assurance only of the payment of any rent amounts due under the Lease. It does not indicate whether Dollar Tree

5

could begin the business operations required by the Lease within ninety days of Tenant vacating the Premises. Therefore, Debtors have not provided "adequate assurance of future performance" under the Lease, and the Debtors cannot assign the Lease to Dollar Tree.

17. Despite the Premises' status as a shopping center under 11 U.S.C. § 365(b)(3), the Debtors have provided no adequate assurance that the percentage rent due under the Lease will not "substantially decrease," as required by 11 U.S.C. § 365(b)(3)(B). The Lease contains a percentage-rent provision, equal to three percent of Tenant's gross receipt made on or from the Premises above a defined amount. **Ex. A** at 4. The Debtors have made the conclusory claim that Dollar Tree "has the financial wherewithal to meet all future obligations under such applicable Lease." Notice at 2. However, this only relates to Dollar Tree's ability to pay what is owed under the Lease, not the actual amount itself. On that question, the Debtors have made no assurances. *See generally* Notice. Therefore, there have been no assurances that the assignment of the Lease will not cause a substantial decrease in percentage rent, and the proposed assignment does not comply with 11 U.S.C. § 365(b)(3)(B).

18. The proposed change in tenant under the Lease from the Tenant to Dollar Tree would constitute a disruption in the tenant mix or balance of the Premises, and the Debtors have not even attempted to provide adequate assurance otherwise. Tenant is a retail pharmacy, while Dollar Tree is a low-cost general retail store. These types of stores operate differently, and a change in tenants may cause disruptions to the other tenants' operations by changing the mix and balance of the shopping center. As Congress acknowledged in enacting the Bankruptcy Code, disruptions to other tenants' operations can also cause negative effects on the landlord by reducing percentage rents, *In re Rickel Home Ctrs.*, 209 F.3d at 299 n.8. Despite this, however, the Debtors have provided no assurances that assigning the Lease would not disrupt the mix and balance of the

6

Premises. *See generally* Notice. As such, the Debtors have not fulfilled the requirements of Section 365(b)(3)(D), and the Debtors cannot assign the Lease to Dollar Tree.

19. For the foregoing reasons, the Debtors have not met the requirements of Section 365 of the Bankruptcy Code to assign the Lease to Dollar Tree. Landlord therefore respectfully requests that the Court reject the assignment of the Lease to Dollar Tree.

## RESERVATION OF RIGHTS

20. Nothing in this Objection is intended to be, or should be construed as, a waiver by Carstens Realty of any of its rights under the Lease, the Bankruptcy Code, or applicable law.

## CONCLUSION

WHEREFORE, Landlord respectfully requests that the Court deny the assignment of the Lease to Dollar Tree.

*[Remainder of page intentionally blank. Signature page follows.]*

<table>
<tr><td>Dated: September 16, 2025<br>Wilmington, Delaware</td><td>**BENESCH, FRIEDLANDER,<br>COPLAN & ARONOFF LLP**<br><br>*/s/ Jennifer R. Hoover*<br>Jennifer R. Hoover (NJ 026502001)<br>John C. Gentile, Esq.<br>Continental Plaza II<br>411 Hackensack Ave., 3rd Floor<br>Hackensack, NJ 07601-6323<br>Telephone: (302) 442-7010<br>Facsimile: (302) 442-7012<br>E-mail: jhoover@beneschlaw.com<br>         jgentile@beneschlaw.com<br><br>*Counsel to Carstens Realty*</td></tr>
</table>