**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO
THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)(A) CONDITIONALLY
APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B)
APPROVING THE SOLICITATION PROCEDURES, (C) APPROVING THE FORM OF
BALLOT AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING
CERTAIN DATES WITH RESPECT THERETO, AND (E) GRANTING RELATED
RELIEF, AND (II)(A) APPROVING, IN THE ALTERNATIVE, DISMISSAL OF THE
DEBTORS' CHAPTER 11 CASES, (B) SCHEDULING CERTAIN DATES WITH
RESPECT THERETO, AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"

or "Rite Aid") hereby submit this reply (the "Reply") in support of the *Debtors' Motion for Entry*

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

*of an Order (I)(A) Conditionally Approving the Adequacy of the Disclosure Statement, (B)*
*Approving the Solicitation Procedures, (C) Approving the Form of Ballot and Notices in*
*Connection Therewith, (D) Scheduling Certain Dates with Respect Thereto, and (E) Granting*
*Related Relief, and (II)(A) Approving, in the Alternative, Dismissal of the Debtors' Chapter 11*
*Cases, (B) Scheduling Certain Dates With Respect Thereto, and (C) Granting Related Relief*
[Docket No. 2289] (the "Motion")[2] and in response to the U.S. Trustee's objection to the Motion
[Docket No. 2403], and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      As a result of the hard work of the Debtors, their professionals, and the parties to
the Restructuring Support Agreement and their professionals—McKesson and the Consenting
Banks—there is an agreed framework by which these chapter 11 cases may be brought to a
consensual resolution, whether through a chapter 11 plan or an orderly dismissal.  Given the many
difficulties faced by the Debtors in these chapter 11 cases, getting to this point is no small feat.
Conditional approval of the Disclosure Statement and entry of the Disclosure Statement Order is
a pivotal step before these cases will come to their ultimate resolution, and the Debtors respectfully
request the Court enter such order.

2.      The Court's task at this stage is narrow.  A disclosure statement that contains
adequate information[3] should be approved unless the accompanying plan is patently
unconfirmable, *i.e.*, confirmation is impossible as a matter of law on undisputed facts.  The U.S.

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the *Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates* [Docket No. 2286] (as amended, supplemented, or modified from time to time, the "Plan") or the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2287] (the "Disclosure Statement"), as applicable.

[3]    The U.S. Trustee does not object to conditional approval of the Disclosure Statement on adequate information grounds.

Trustee's objections go to plan confirmation issues: third-party releases; exculpation; and whether the Debtor will treat administrative claimants in accordance with section 1129(a)(9) of the Bankruptcy Code and applicable law, or to solicitation mechanics cured by modest edits.  None renders the Plan "so fatally flawed that confirmation is impossible."  The Disclosure Statement should be conditionally approved, with all parties' rights reserved for confirmation.  Further, the proposed schedule for objecting to, and holding a hearing on, Confirmation of the Plan or entry of the Dismissal Orders, as applicable, provides sufficient time for all parties in interest to be heard, and should also be approved.

## **REPLY**

### A.    **The U.S. Trustee's Confirmation-Related Objections Are Premature**

3.    The Plan must comply with the confirmation requirements in section 1129 of the Bankruptcy Code (and all other applicable provisions), and the Debtors will be prepared to carry their burden to confirm the Plan.  But disputed issues related to confirmation are not relevant to assessing whether a disclosure statement contains "adequate information."[4]  Courts agree that a disclosure statement that adequately describes the chapter 11 plan at issue should be approved absent the exceedingly rare circumstance of a disclosure statement that "describes a plan of reorganization which is so fatally flawed that confirmation is impossible" (i.e., the plan is patently unconfirmable).[5]  "A plan is patently unconfirmable where (1) confirmation defects [cannot be]

---

[4]    *See, e.g.*, *In re Quigley Co., Inc.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that the objectors raised "several confirmation issues").

[5]    *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (overruling objections to issues including treatment of claims and feasibility); *see also In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987) (holding courts should disapprove of the adequacy of a disclosure statement on confirmability grounds only "where it is readily apparent that the plan accompanying the disclosure statement could never be legally confirmed"); *see also* 7 Collier on Bankruptcy ¶ 1125.03 (16th ed. 2023) ("At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues, such as classification of claims, feasibility . . . or whether a plan is fair and equitable.").

overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing."[6] Neither is the case here.

### 1. The Third-Party Releases in the Plan Are Reasonable, Consensual, and Permissible

4.    Article X.D of the Plan provides for certain third-party releases under the Plan. The U.S. Trustee objects to the Third-Party Release "because it proposes non-consensual third-party releases that are not authorized under the Bankruptcy Code."

5.    These objections are more appropriately raised in connection with confirmation of the Plan.[7] Nonetheless, the Third-Party Release is appropriately tailored and consensual. The Plan provides for a typical "opt out" mechanism for the Third-Party Release, which is fully disclosed in the Plan. Article VI.J of the Disclosure Statement provides a detailed description of the releases under the Plan. Accordingly, all Holders of Claims and Interests, including Holders of Claims and Interests in the Non-Voting Classes, will receive broad, actual, and constructive notice of the Third-Party Releases (including on the Ballots and Opt-Out Forms, as applicable) as well as an opportunity to decide whether to opt out of the Third-Party Release.

6.    Even where claimants fail to vote, or vote to reject the Plan, the overwhelming weight of authority in this district suggests that the Third-Party Release would be consensual, and

---

[6]    *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154–55 (3d Cir. 2012); *see also In re Phoenix Petrol.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (finding that unless "the disclosure statement describes a plan that is so fatally flawed that confirmation is impossible" the court should approve a disclosure statement that otherwise adequately describes the chapter 11 plan at issue).

[7]    *See In re Drexel Burnham Lambert Grp., Inc.*, No. 90 B-10421, 1992 WL 62758, at *1 (Bankr. S.D.N.Y. Mar. 5, 1992) (stating that objections to a plan of reorganization's releases and injunction provisions were in the nature of confirmation objections and therefore improperly raised as objections to the disclosure statement); *Nielsen* v. *Specialty Equip. Cos., Inc.*, No. 92-C-20142, 1992 WL 279262, at *3 (N.D. Ill. Sept. 25, 1992) (noting that the bankruptcy court below held that "the validity of releases [is] a plan confirmation issue" and overruled objections to the disclosure statement regarding the appropriateness of third party releases).

most judges in New Jersey, the Third Circuit, and across the country have found that opt out mechanisms such as the one included in the Plan constitute consensual releases.[8]

7.      Although the United States Supreme Court has limited the availability of third-party releases,[9] those limitations only apply to certain *non-consensual* third-party releases—*i.e.* releases that occur despite the affected party's effort to object or opt out.[10]  Conversely, courts generally approve third-party releases that are consensual, recognizing that these are essentially settlements between releasing and released parties that evince these parties' intent to be bound. This practice is consistent with the notion that "[t]he validity of a consensual release is primarily a question of contract law because releases are no different from any other settlement or contract."[11]

8.      Post-*Purdue*, this Court has continued to permit third-party releases where parties have the opportunity to opt out of granting such releases and being a released party thereunder.[12] Similarly, this Court has acknowledged that a party may be deemed to consent to a proposed settlement so long as it has received notice thereof and has an opportunity to opt out.[13]

---

[8]     *See, e.g.*, *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Jul. 20, 2024) (confirming a plan stating that all holders of claims or interests entitled to vote on the plan or deemed to accept the plan were deemed to consent to the releases unless and until they affirmatively opted out or objected to the releases); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. June 13, 2024); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. May 30, 2024); *In re WeWork, Inc.*, No. 23- 19865 (JKS) (Bankr. D.N.J. May 30, 2024); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023); *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. Sept. 14, 2023).

[9]     *Harrington v. Purdue Pharma, L.P., et al. (In re Purdue Pharma L.P.)*, 144 S. Ct. 2071 (2024) ("[T]he bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.").

[10]    *Purdue Pharma*, 144 S. Ct. at 2087 ("Nothing in what we have said should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan.").

[11]    *Id.*

[12]    *See In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Jul. 20, 2024).

[13]    *See In re New Rite Aid, LLC*, No. 25-14861 (MBK) (Bankr. D.N.J. Aug. 14, 2025) [Docket No. 1883] (approving the Administrative Procedures Order, described below in paragraph 16).

**2.     The Exculpation Provision Is Appropriate and Complies with the Bankruptcy Code.**

9.      <u>Article X.E</u> of the Plan and <u>Article VI.J</u> of the Disclosure Statement provide for certain exculpations under the Plan.  The U.S. Trustee asserts that "to the extent that exculpation is permissible beyond what is expressly provided for in section 1125(e) of the Bankruptcy Code, the Plan's Exculpation Provision exceeds the limitations imposed by courts in this Circuit."

10.      This objection is more appropriately raised in connection with confirmation of the Plan.  Nonetheless, the Exculpation provision is an integral part of the Plan and otherwise satisfies the governing standards in the Third Circuit.

11.      Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and whether the exculpation provision was necessary for plan negotiations.[14]  Exculpation provisions that apply only to estate fiduciaries and are limited to claims not involving actual fraud, willful misconduct, or gross negligence—as is the case here—are customary and generally approved in the Third Circuit, including in Rite Aid's previous chapter 11 cases before this Court.[15]  Unlike third-party releases, exculpation provisions do not affect the liability of third parties per se, but

---

[14]   *See In re Congoleum Corp.*, 362 B.R. 167, 195–97 (Bankr. D.N.J. 2007) (evaluating the appropriateness of the plan's exculpation provisions based on whether the parties played a significant role in the negotiations that led to the plan and whether the exculpation is necessary to the plan).

[15]   *See In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J.) (Aug. 16, 2024) (confirming Rite Aid's chapter 11 plan with exculpation provisions similar to those here); *see also In re Washington Mut., Inc.*, 442 B.R. 314, 350–51 (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate); *In re BlockFi Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023) (confirming plan where exculpation provision covered the debtors and wind down debtors, the creditors' committee, and related parties, including current and former control persons and professionals); *In re Bed Bath & Beyond Inc.*, No. 23-13359-VFP (MBK) (Bankr. D.N.J. Sept. 14, 2023) (same).

rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an Exculpated Party for acts arising out of the Debtors' restructuring.[16]

12.    The Plan provides for the exculpation of the Exculpated Parties.[17]  The Exculpation is fair and appropriate under applicable law.  The Exculpated Parties have participated in good faith in formulating and negotiating the Plan as it relates to the Debtors, and they should be entitled to protection from exposure to any lawsuits filed by disgruntled creditors or other unsatisfied parties, except to the extent the Exculpated Parties committed actual fraud, willful misconduct, or gross negligence.

13.    The Exculpation provision and the liability standard it sets represent a conclusion of law that flows logically from certain findings of fact that the Court must reach in confirming the Plan as it relates to the Debtors.  At confirmation, this Court must find, under section 1129(a)(2), that the Debtors have complied with the applicable provisions of the Bankruptcy Code. Additionally, this Court must find, under section 1129(a)(3), that the Plan has been proposed in good faith and not by any means forbidden by law.  Accordingly, while the Exculpation provision is an important component of the Plan, its approval is a matter to be addressed in connection with confirmation of the Plan.

---

[16]   *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code").

[17]   Article I.A.77 of the Plan defines "Exculpated Parties" and in each case solely in its capacity as such:  (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each of the Wind-Down Debtors; (d) the Committee and each of its members; (e) with respect to each of the foregoing Entities in clauses (a) through (d), each such Entity's current and former control persons (including any officers), directors, members of any committees of any Entity's board of directors or managers, equity Holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys (including any attorneys or other professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

      **3.**     **The Debtors Intend to Pay Administrative Claimants in Accordance with the Priorities Established by the Bankruptcy Code and Applicable Law**

14.     The U.S. Trustee contends that "the Debtors may not be able to pay administrative claimants in accordance with the priorities established by the Bankruptcy Code and applicable law." This, too, is a confirmation objection. And the Debtors will demonstrate that the plan satisfies the requirements of Bankruptcy Code section 1129, including with respect to paying administrative claims.

15.     By its plain terms, the Plan complies with the requirements under Bankruptcy Code section 1129(a)(9) that, generally speaking, the holder of administrative claims receive cash on the Effective Date of the Plan equal to the amount of its Allowed Claim, except to the extent agreed otherwise.[18]

16.     Furthermore, in anticipation of seeking confirmation of a chapter 11 plan, the Debtors have implemented procedures to facilitate the payment of administrative expense claims in full compliance with statutory requirements. On August 14, 2025, the Court entered the *Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief* [Docket No. 1883] (the "Administrative Procedures Order"). The Administrative Procedures Order authorized an Administrative Claims Distribution Pool of up to $5 million and approved a voluntary, election-based mechanism for consensual cash settlements of eligible administrative expense claims. Eligible claimants may opt in for accelerated pro rata payments (capped at 5%), opt out and retain all rights, or take no action and receive their pro rata share of amounts remaining in the $5 million pool after distributions are made to the opt-in claimants, also subject to the same

---

[18]   *See* 11 U.S.C. § 1129(a)(9); *see also* Plan at Art. II.A [Docket No. 2286].

5% cap.  This Court-approved settlement framework ensures that no claimant's rights are impaired without consent.

      **B.**    **The Summary of Modifications to the Disclosure Statement Order and Solicitation Materials.**

      17.    The Debtors have revised the proposed Disclosure Statement Order and its corresponding exhibits to resolve certain of the U.S. Trustee's objections thereto, including:

| Issue | Resolution/Status |
|---|---|
| Request that the Debtors' filing deadlines are 4:00 p.m. ET | Incorporated in the revised confirmation and dismissal hearing schedule. |
| Request that Voting and Opt-Out Forms may be submitted via email | In addition to accepting online submissions, the Debtors will accept **opt-out forms** by first-class or overnight mail, with clear delivery instructions in the solicitation materials.  **Ballots** will only be accepted via online submission.<br><br>The only voting class is Class 3 – Prepetition FILO Claims, comprised of approximately 20 large financial institutions.  The FILO agent is represented by counsel and has commented on the Voting Procedures. |
| Request to receive notice of non-substantive changes to Solicitation Materials | The Debtors will provide notice of non-substantive edits to the Solicitation Materials to the U.S. Trustee and have added this language to the Disclosure Statement Order. |
| Mailing and Publication Timing | The "or as soon as reasonably practicable" qualifier has been removed, and the Solicitation Mailing Deadline and Publication Deadline is now proposed to be "no later than September 26, 2025." |
| Confirmation/Toggle/Dismissal Schedule | The revised confirmation and dismissal hearing schedule address this objection. |
| Record Date | The Debtors confirm that the Voting Record Date is September 8, 2025. |

| Opt-Out Form | The Opt-Out Form now contains a clear, conspicuous opt-out checkbox. |
|---|---|

18.     The Debtors believe these modifications, including proposed changes to the confirmation and dismissal hearing schedule, resolve all of the miscellaneous objections set forth in paragraph 21 of the U.S. Trustee's objection, and are prepared to discuss such changes with the Court in the event such objections are not resolved by the time of the hearing to the approve entry of Disclosure Statement Order.

## RESERVATION OF RIGHTS

19.     The Debtors reserve their rights to present additional evidence and legal argument at the hearing on the Motion, or any other hearing.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court (a) overrule the objections, except for objections to the Plan and Disclosure Statement, which shall be deferred until the Confirmation Hearing, (b) approve the Disclosure Statement on a conditional basis, and (c) enter the proposed Disclosure Statement Order.

Dated:  September 19, 2025

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*