**Order Filed on September 22, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br><br> In re: <br><br> NEW RITE AID, LLC, *et al.*, <br><br> Debtors.<sup>1</sup> |

Chapter 11

Case No. 25-14861 (MBK)

(Jointly Administered)

## AMENDED FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through 120 is **ORDERED**.

**DATED: September 22, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]   The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b**

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email:   arosenberg@paulweiss.com
         aeaton@paulweiss.com
         chopkins@paulweiss.com
         smitchell@paulweiss.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:   msirota@coleschotz.com
         wusatine@coleschotz.com
         fyudkin@coleschotz.com
         svanaalten@coleschotz.com



*Co-Counsel to the Debtors and
Debtors in Possession*

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 41] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), initially seeking entry of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 143] (the "Interim Order"), such order having been entered on May 7, 2025 (the "Interim Order Effective Date"), and now seeking entry of this final order (this "Final Order"):

(i)     authorizing Rite Aid Corporation ("Rite Aid"), in its capacity as borrower (the "DIP Borrower"), to borrow, and each of the other Debtors (the "DIP Guarantors" and, together with the DIP Borrower, the "DIP Loan Parties") to guarantee unconditionally on a joint and several basis, the obligations under a superpriority senior secured priming asset-based credit facility in the aggregate principal amount of $1,940,000,000, consisting of (A) a senior secured superpriority revolving credit facility in the aggregate principal amount equal to $1,700,000,000 (the "DIP Revolving Facility," and the commitments thereunder, the "DIP Revolving Commitments," and the loans made pursuant thereto, the "DIP Revolving Loans" and all Obligations (as defined in the DIP Credit Agreement) of the DIP Loan Parties under the DIP Revolving Facility, the "DIP Revolving Obligations") and (B) a senior secured superpriority "first in, last out" term loan facility in the aggregate principal amount of $240,000,000 (the "DIP FILO Facility" and the loans made pursuant thereto, the "DIP FILO Loans" and all

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Obligations of the DIP Loan Parties under the DIP FILO Facility, the "DIP FILO Obligations" and the DIP FILO Facility, together with the DIP Revolving Facility, collectively, the "DIP Facilities;" and the DIP FILO Loans, together with the DIP Revolving Loans, collectively, the "DIP Loans" and the DIP Revolving Obligations, together with the DIP FILO Obligations, the "DIP Obligations") pursuant to that certain Debtor-In-Possession Credit Agreement, dated as of May 8, 2025, by and among the DIP Borrower, the DIP Guarantors, the lenders party thereto (collectively in such capacities, the "DIP Lenders" and each, a "DIP Lender"), and Bank of America, N.A. ("Bank of America") as administrative agent and collateral agent (in such capacities, the "DIP Agent"), and the other agents and arrangers party thereto (together with the DIP Agent the DIP Lenders and the DIP Co-Collateral Agents (as defined below), collectively, the "DIP Secured Parties"), including Bank of America, Wells Fargo Bank, National Association ("Wells Fargo") and, solely with respect to matters pertaining to the Approved Budget set forth in paragraph 4 of this Final Order, Capital One, National Association ("Capital One"), as co-collateral agents (each, a "DIP Co-Collateral Agent" and, collectively, the "DIP Co-Collateral Agents"[3]; as used in this Final Order, the term "Required DIP Co-Collateral Agents" means, at any time, at least two of the DIP Co-Collateral Agents) (as such Debtor-In-Possession Credit Agreement may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Credit Agreement" and, together with the Interim Order, this Final Order, and all agreements, documents, and instruments delivered or executed in connection therewith (including any fee letters executed by the DIP Borrower in connection with the DIP Facilities and other guarantee and security documentation delivered or executed by the DIP Loan Parties, collectively, the "DIP Loan Documents")), allocated and made available to the DIP Borrower as follows:

> (a)    subject to the terms and conditions set forth in the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order, and this Final Order, the DIP Revolving

---

[3]  Capital One shall act as a DIP Co-Collateral Agent under this Final Order, and have the rights of a DIP Co-Collateral Agent under this Final Order, solely with respect to the consent and other rights of the DIP Co-Collateral Agents or the Required DIP Co-Collateral Agents, as applicable, specified in paragraph 4 of this Final Order and in the corresponding provisions of the DIP Credit Agreement.

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Commitments were made available to the DIP Borrower to draw upon;

(b)     as of the Interim Order Effective Date, subject to the terms and conditions set forth in the DIP Credit Agreement and other DIP Loan Documents, the repayment and refinancing of the Prepetition Revolving Loans via a "creeping" roll-up pursuant to the Interim Roll-Up (as defined herein); and, upon entry of this Final Order, subject to the terms and conditions set forth in the DIP Credit Agreement and the other DIP Loan Documents, an extension of DIP Revolving Loans to repay and refinance any remaining outstanding Prepetition Revolving Loans (all amounts so repaid and refinanced, the "Roll-Up DIP Revolving Loans");

(c)     upon entry of this Final Order, subject to the terms and conditions set forth in the DIP Credit Agreement and the other DIP Loan Documents, an extension of DIP FILO Loans to repay and refinance $180,000,000 of outstanding Prepetition FILO Loans (such loans, the "Roll-up DIP FILO Loans" and, together with the Roll-Up DIP Revolving Loans, the "Roll-Up DIP Loans");

(ii)     authorizing the Debtors to enter into and perform under the DIP Loan Documents;

(iii)     authorizing the DIP Borrower, in its capacity as borrower, to obtain postpetition financing, and for the DIP Guarantors to guarantee, on a joint and several basis, the DIP Borrower's obligations in connection with the DIP Facilities, in accordance with the terms and conditions set forth in the DIP Loan Documents, and in accordance with the Approved Budget (as defined herein);

(iv)     authorizing the Debtors to transfer, or in any event to be deemed to have transferred, all cash and collections and receipts of cash by the Debtors from any source, including accounts, sale of property, loan advances, or refunds (but excluding amounts reserved for the Carve Out (as defined herein)) (collectively, the "Collections") to the DIP Agent on each business day, which Collections are applied as set forth in paragraph 16 of this Final Order;

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(v)     authorizing the Debtors to use the proceeds of the DIP Facilities and the Prepetition Collateral (as defined herein), solely in accordance with the DIP Loan Documents and the Approved Budget (subject to the Permitted Variance (as defined herein)), to provide working capital for, and for other general corporate purposes of, the Debtors, including for the payment of any Adequate Protection Payments (as defined herein) to the Prepetition ABL Agent (as defined herein), solely to the extent set forth in the DIP Credit Agreement, the Interim Order and this Final Order;

(vi)    granting adequate protection to the Prepetition Secured Parties (as defined herein) to the extent of any Diminution in Value (as defined herein) of their respective interests in the Prepetition Collateral;

(vii)   granting to the DIP Agent, for the benefit of the DIP Secured Parties, valid, enforceable, binding, non-avoidable, and fully perfected first priority priming liens on and senior security interests in the DIP Collateral (as defined herein), all to the extent set forth in the Interim Order, herein and in the DIP Loan Documents, which liens shall be deemed effective as of the Interim Order Effective Date and subject only to (1) the Carve Out and (2) the Prepetition Permitted Prior Liens (each as defined herein), with the priority set forth in the lien priority annex attached hereto as **Exhibit A** (the "Lien Priority Annex");

(viii)  granting to the extent set forth in the Interim Order, herein and/or in the DIP Loan Documents superpriority administrative expense claims against each of the Debtors' estates to the DIP Agent, for the benefit of the DIP Secured Parties, with respect to the DIP Obligations (as defined herein) over any and all administrative expenses of any kind or nature, subject and subordinate only to the payment of the Carve Out on the terms and conditions set forth in the Interim Order, herein and in the DIP Loan Documents, which claims shall be deemed effective as of the Interim Order Effective Date;

(ix)    waiving as to the DIP Secured Parties and the Prepetition ABL Secured Parties (as defined herein) the Debtors' and the estates' right to surcharge against the DIP Collateral and the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(x)     providing that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition ABL Secured Parties with respect to the proceeds, products,

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

offspring, or profits of any of the Prepetition Collateral or any of the DIP Collateral, as applicable;

(xi)  pursuant to Bankruptcy Rule 4001, holding a final hearing (the "<u>Final Hearing</u>") to consider the relief requested in the Motion and this Final Order, and approving the form of notice with respect to the Final Hearing; and

(xii)  granting related relief;

all as more fully set forth in the Motion; and upon the *Declaration of Marc Liebman, Chief Transformation Officer of the Debtors, In Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 24]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the interim hearing held on May 7, 2025 before this Court (the "<u>Interim Hearing</u>") and the Final Hearing held on July 10, 2025 before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and having entered on July 10, 2025 the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying*

(Page | 8)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

*the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 1396]; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, **BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[4]

A.    *Petition Date*.  On May 5, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey, commencing these chapter 11 cases (the "Cases").

B.    *Debtors in Possession*.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    *Committee*.  On May 15, 2025, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases [Docket No. 316].  On May 19, 2025, the U.S. Trustee amended and reconstituted the Committee [Docket No. 440].

D.    *Debtors' Stipulations*.  Subject only to the rights of parties in interest specifically set forth in this Final Order, including paragraph 12 of this Final Order (and subject to the limitations contained in such paragraph or otherwise in this Final Order), the Debtors stipulate and agree that

---

[4]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(collectively, paragraphs D(i) through (vii) below are referred to herein as the "Debtors' Stipulations"):

(i)  ***Prepetition ABL Credit Facility***

(a)  *Prepetition ABL Credit Agreement.* Under that certain Credit Agreement, dated as of August 30, 2024 (as amended, amended and restated, restated, supplemented or otherwise modified from time to time and in effect on the Petition Date, the "Prepetition ABL Credit Agreement" and, together with all other Loan Documents (as defined in the Prepetition ABL Credit Agreement) executed in connection therewith, the "Prepetition ABL Documents"), by and among Rite Aid Corporation (the "Prepetition Borrower"), the lenders from time to time party thereto (the "Prepetition ABL Lenders"), Bank of America, N.A., as administrative agent, collateral agent, and co-borrowing base agent (in such capacities, the "Prepetition ABL Agent"), Wells Fargo Bank, N.A., as co-borrowing base agent and syndication agent, each for the Prepetition ABL Lenders and the other Secured Parties (as defined in the Prepetition ABL Credit Agreement) (collectively, the "Prepetition ABL Secured Parties"), and pursuant to the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid and its Debtor Affiliates (with Further Modifications)* (*In re Rite Aid Corporation, et al.*, No. 23-18993 (MBK) (Bankr. D.N.J., Aug. 16, 2024) [ECF No. 4532] (the "2024 Confirmation Order"), the Prepetition Borrower was provided with an asset-based credit facility consisting of (1) revolving commitments in an amount equal to $1,900,000,000.00 (the "Prepetition Revolving Commitments" and the loans outstanding pursuant thereto, the

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

"Prepetition Revolving Loans" and the Obligations owed in connection therewith, the "Prepetition Revolving Obligations") and (2) a last-out term loan facility in an amount equal to $240,000,000.00 (the "Prepetition FILO Facility," and the loans outstanding pursuant thereto, the "Prepetition FILO Loans" and the Obligations owed in connection therewith, the "Prepetition FILO Obligations," and the Prepetition FILO Loans together with the Prepetition Revolving Loans, the "Prepetition ABL Loans").

(b)     *Prepetition ABL Obligations.*    As of the Petition Date, the Prepetition Borrower was indebted to the Prepetition ABL Secured Parties pursuant to the Prepetition ABL Documents, without objection, defense, counterclaim, or offset of any kind, (x) in the aggregate principal amount of not less than $1,700,693,742.10 on account of Prepetition ABL Loans, *plus* (y) outstanding letters of credit with a face amount of not less than $67,783,353.00, *plus* (z) accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition ABL Credit Agreement) owing under or in connection with the Prepetition ABL Documents (clauses (x), (y), and (z), collectively, the "Prepetition ABL Obligations" and the claims on account thereof, the "Prepetition ABL Claims").

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(c)     *Prepetition ABL Collateral.*  In connection with the Prepetition ABL Credit Agreement, certain of the Debtors, in their respective capacities as Subsidiary Loan Parties (as defined in the Prepetition ABL Credit Agreement), entered into the Subsidiary Guarantee Agreement and the Security Agreement (as each term is defined in the Prepetition ABL Credit Agreement and referred to herein, together with related security agreements, documents and instruments, collectively, as the "Prepetition ABL Security Documents").  Pursuant to the Prepetition ABL Security Documents and the other Prepetition ABL Documents, the Prepetition ABL Obligations are secured by valid, binding, perfected, and enforceable security interests in and liens on the "Collateral" (as defined in the Prepetition ABL Credit Agreement and referred to herein as the "Prepetition Collateral," and the liens on and security interests in the Prepetition Collateral securing the Prepetition ABL Obligations, the "Prepetition ABL Liens").

(d)     *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date: (1) the Prepetition ABL Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (2) the Prepetition ABL Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral, with the priority set forth in the Prepetition ABL Documents and in the Prepetition Intercreditor Agreements (as defined herein); (3) subject to the Carve Out, the Prepetition ABL Liens are subject and subordinate only to valid, perfected, enforceable, and nonavoidable prepetition liens (if any) that are senior to the liens or security interests of the Prepetition ABL Secured Parties as of the Petition

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Date by operation of law or as otherwise permitted by the Prepetition ABL Documents, excluding any 1.5L Notes Liens (as defined herein), McKesson Liens (as defined herein), and 3L Notes Liens (as defined herein), (such liens, the "Permitted ABL Prior Liens"); (4) the Prepetition ABL Liens were granted to or for the benefit of the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (5) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (6) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or the Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or the Prepetition ABL Obligations is subject to any challenge, cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (7) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Bankruptcy Code), against the Prepetition ABL Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens.

(ii)     ***1.5L Rollover Notes Debt***

(a)     *1.5L Rollover Notes.*  Under that certain Indenture, dated as of August 30, 2024 (as amended, amended and restated, restated, supplemented, or otherwise modified from time to time and in effect on the Petition Date, the "1.5L Notes Indenture" and, together with all other documentation executed in connection therewith, including, without limitation, the Securities Documents (as defined in the 1.5L Notes Indenture), the "1.5L Notes Documents"), among the Prepetition Borrower, as issuer thereunder, the Subsidiary Guarantors (as defined in the 1.5L Notes Indenture, and, together with the Prepetition Borrower, the "1.5L Notes Obligors"), and U.S. Bank Trust Company, National Association, as trustee and securities collateral agent (in such capacities, the "1.5L Notes Trustee"), and pursuant to the 2024 Confirmation Order, the Prepetition Borrower issued floating rate senior secured notes due August 2031 (the "1.5L Secured Notes" and the debt issued pursuant thereto, the "1.5L Secured Notes Indebtedness" and the holders of such 1.5L Secured Notes, together with the 1.5L Notes Trustee, the "1.5L Notes Secured Parties").

(1)     *1.5L Secured Notes Obligations.*  As of the Petition Date, the 1.5L Notes Obligors were jointly and severally indebted to the 1.5L Notes Secured Parties pursuant to the 1.5L Notes Documents, without objection, defense, counterclaim, or offset

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

of any kind, (x) in the aggregate principal amount of not less than $83,000,000 on account of the 1.5L Secured Notes, *plus* (y) accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Securities Obligations (as defined in the 1.5L Notes Indenture) owing under or in connection with the 1.5L Notes Documents (clauses (x) and (y), collectively, the "1.5L Notes Secured Obligations" and the claims on account thereof, the "1.5L Notes Secured Claims").

(2)  *1.5L Notes Collateral.*  In connection with the 1.5L Notes Indenture, certain of the Debtors entered into the Securities Collateral Documents (as defined in the 1.5L Notes Indenture and referred to herein as the "1.5L Notes Security Documents"). Pursuant to the 1.5L Notes Security Documents and the other 1.5L Notes Documents, the 1.5L Notes Secured Obligations are secured by valid, binding, perfected, and enforceable security interests in and liens on certain of the Prepetition Collateral, as set forth in the 1.5L Notes Security Documents (which, for the avoidance of doubt is subject to the priorities set forth in the applicable Prepetition Intercreditor Agreements) (such security interests and liens, the "1.5L Notes Liens").

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(3)    *Validity, Perfection, and Priority of 1.5L Notes Liens and 1.5L Notes Secured Obligations.* Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date: (A) the 1.5L Notes Liens encumber certain of the Prepetition Collateral, as set forth in the 1.5L Notes Security Documents and as the same existed on the Petition Date; (B) the 1.5L Notes Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in that certain Prepetition Collateral, with the priority set forth in the 1.5L Notes Documents, subject to the applicable Prepetition Intercreditor Agreements; (C) subject to the Carve Out and the priorities set forth in the applicable Prepetition Intercreditor Agreements, the 1.5L Notes Liens are subject and subordinate only to valid, perfected, enforceable, and nonavoidable prepetition liens (if any) that are senior to the liens or security interests of the 1.5L Notes Secured Parties as of the Petition Date by operation of law or as otherwise permitted by the 1.5L Notes Documents, excluding any Prepetition ABL Liens, McKesson Liens, and Prepetition 3L Notes Liens (such liens, the "Permitted 1.5L Notes Prior Liens"); (D) the 1.5L Notes Liens were granted to or for the benefit of the 1.5L Notes Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, buying the 1.5L Secured Notes Indebtedness issued by the Prepetition Borrower; (E) the 1.5L Notes Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (F) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

any of the 1.5L Notes Liens or the 1.5L Notes Secured Obligations exist, and no portion of the 1.5L Notes Liens or the 1.5L Notes Secured Obligations is subject to any challenge, cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (G) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the 1.5L Notes Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the 1.5L Notes Documents, the 1.5L Notes Secured Obligations, or the 1.5L Notes Liens.

(iii)   ***McKesson Obligations***.

(a)   *McKesson Supply Agreement.*   Under that certain Supply Agreement dated as of August 30, 2024 (as amended, amended and restated, restated, supplemented, or otherwise

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

modified from time to time and in effect on the Petition Date, the "McKesson Supply Agreement," and, together with all other documentation executed in connection therewith, including, without limitation, the Supply Documents (as defined in the McKesson Supply Agreement), the "McKesson Supply Documents") by and among the Prepetition Borrower and McKesson Corporation ("McKesson," and together with any other affiliated secured parties under the McKesson Supply Documents (as defined below), the "McKesson Secured Parties"), McKesson agreed to continue supplying goods to the Prepetition Borrower subject to the terms and conditions stated in the McKesson Supply Agreement.

(1)    *McKesson Secured Obligations.*    As of the Petition Date, the Prepetition Borrower was indebted to the McKesson Secured Parties pursuant to the McKesson Supply Agreement for trade payables, trade debt and other related obligations incurred in accordance with the McKesson Supply Agreement (collectively, the "McKesson Secured Obligations" and the claims under the McKesson Supply Agreement, the "McKesson Secured Claims").

(2)    *McKesson Collateral.*    In connection with the McKesson Supply Agreement, certain of the Debtors entered into the McKesson Supply Documents. Pursuant to the McKesson Supply Documents, the McKesson Secured Obligations are secured by valid, binding, perfected, and enforceable security interests in and liens on certain of the Prepetition Collateral, as set forth in the McKesson Supply Documents (which, for the avoidance of doubt is subject to the priorities set forth in the applicable

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Prepetition Intercreditor Agreements) (such security interests and liens, the "McKesson Liens").

(3)     The McKesson Liens are subject and subordinate to valid, perfected, enforceable, and nonavoidable prepetition liens (if any) that are senior to the liens or security interests of the McKesson Secured Parties as of the Petition Date by operation of law or as otherwise permitted by the McKesson Supply Documents, excluding any Prepetition ABL Liens, the 1.5L Notes Liens, and the 3L Notes Liens (such liens, the "Permitted McKesson Prior Liens").

(4)     *Validity, Perfection, and Priority of McKesson Liens and McKesson Secured Obligations.*  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date: (A) the McKesson Liens encumber certain of the Prepetition Collateral, as set forth in the McKesson Supply Documents and as the same existed on the Petition Date; (B) the McKesson Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in that certain Prepetition Collateral, with the priority set forth in the McKesson Supply Documents, subject to the applicable Prepetition Intercreditor Agreements; (C) subject to the Carve Out and the priorities set forth in the applicable Prepetition Intercreditor Agreements, the McKesson Liens are subject and subordinate only to valid, perfected, enforceable, and nonavoidable prepetition liens (if any) that are senior to the liens or security interests of the McKesson Secured Parties as of the Petition Date by operation of law or as otherwise permitted by the

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

McKesson Supply Documents, excluding any Prepetition ABL Liens, 1.5L Notes Liens, and Prepetition 3L Notes Liens (such liens, the "Permitted McKesson Prior Liens"); (D) the McKesson Liens were granted to or for the benefit of the McKesson Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, supplying products and services to certain of the Debtors pursuant to the McKesson Supply Documents; and (E) the McKesson Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors.

(iv)   **3L Takeback Notes Debt**

(a)   *3L Takeback Notes.*   Under that certain Indenture, dated as of August 30, 2024 (as amended, amended and restated, restated, supplemented, or otherwise modified from time to time and in effect on the Petition Date, the "3L Notes Indenture" and, together with all other documentation executed in connection therewith, including, without limitation, the Securities Documents (as defined in the 3L Notes Indenture), the "3L Notes Documents" and, together with the Prepetition ABL Documents, the 1.5L Notes Documents, and the McKesson Supply Documents, collectively, the "Prepetition Debt Documents"), among the Prepetition Borrower, as issuer thereunder, the Subsidiary Guarantors (as defined in the 3L Notes Indenture, and, together with the Prepetition Borrower, the "3L Notes Obligors"), and U.S. Bank Trust Company, National Association, as trustee and securities collateral agent (in such capacities, the "3L Notes Trustee" and, together with the Prepetition ABL Agent, the 1.5L Notes Trustee, and McKesson,

| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

collectively, the "Prepetition Agents"), and pursuant to the 2024 Confirmation Order, the Prepetition Borrower issued (i) 15.000% third-priority series A secured notes due August 2031 and (ii) 15.000% third-priority series B secured notes due August 2031 (collectively, the "3L Secured Notes" and the debt issued pursuant thereto, the "3L Secured Notes Indebtedness" and the holders of such 3L Secured Notes, together with the 3L Notes Trustee, the "3L Notes Secured Parties" and, together with the Prepetition ABL Secured Parties, the 1.5L Secured Parties, and the McKesson Secured Parties, collectively, the "Prepetition Secured Parties").

(1)    *3L Secured Notes Obligations.*  As of the Petition Date, the 3L Notes Obligors were jointly and severally indebted to the 3L Notes Secured Parties pursuant to the 3L Notes Documents, without objection, defense, counterclaim, or offset of any kind, (x) in the aggregate principal amount of not less than $377,000,000 on account of the 3L Secured Notes, *plus* (y) accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Securities Obligations (as defined in the 3L Notes Indenture) owing under or in connection with the 3L Notes Documents (clauses (x) and (y), collectively, the "3L Notes Secured Obligations" and, together with the Prepetition ABL Obligations, the 1.5L Notes Secured Obligations, and the McKesson Secured

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Obligations, collectively, the "Prepetition Secured Obligations", and the claims on account thereof, the "3L Notes Secured Claims" and, together with the Prepetition ABL Claims, the 1.5L Notes Secured Claims, and the McKesson Secured Claims, collectively, the "Prepetition Secured Claims").

(2)     *3L Notes Collateral.*  In connection with the 3L Notes Indenture, certain of the Debtors entered into the Securities Collateral Documents (as defined in the 3L Notes Indenture and referred to herein as the "3L Notes Security Documents"). Pursuant to the 3L Notes Security Documents and the other 3L Notes Documents, the 3L Notes Secured Obligations are secured by valid, binding, perfected, and enforceable security interests in and liens on certain of the Prepetition Collateral, as set forth in the 3L Notes Security Documents (which, for the avoidance of doubt is subject to the priorities set forth in the applicable Prepetition Intercreditor Agreements) (such security interests and liens, the "3L Notes Liens" and, together with the Prepetition ABL Liens, the 1.5L Notes Liens, and the McKesson Liens, collectively, the "Prepetition Liens").

(3)     *Validity, Perfection, and Priority of 3L Notes Liens and 3L Notes Secured Obligations.*  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date: (A) the 3L Notes Liens encumber certain of the Prepetition Collateral, as set forth in the 3L Notes Security Documents and as the same existed on the Petition Date; (B) the 3L Notes Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in that certain Prepetition Collateral, with the

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

priority set forth in the 3L Notes Documents, subject to the applicable Prepetition Intercreditor Agreements; (C) subject to the Carve Out and the priorities set forth in the applicable Prepetition Intercreditor Agreements, the 3L Notes Liens are subject and subordinate only to valid, perfected, enforceable, and nonavoidable prepetition liens (if any) that are senior to the liens or security interests of the 3L Notes Secured Parties as of the Petition Date by operation of law or as otherwise permitted by the 3L Notes Documents, excluding any Prepetition ABL Liens, the 1.5L Notes Liens, and the McKesson Liens (such liens, the "Permitted 3L Notes Prior Liens" and, together with the Permitted ABL Prior Liens, the Permitted 1.5L Notes Prior Liens, and the Permitted McKesson Prior Liens, collectively, the "Prepetition Permitted Prior Liens"); (D) the 3L Notes Liens were granted to or for the benefit of the 3L Notes Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, buying the 3L Secured Notes Indebtedness issued by the Prepetition Borrower; (E) the 3L Notes Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (F) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the 3L Notes Liens or the 3L Notes Secured Obligations exist, and no portion of the 3L Notes Liens or the 3L Notes Secured Obligations is subject to any challenge, cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery,

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (G) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the 3L Notes Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the 3L Notes Documents, the 3L Notes Secured Obligations, or the 3L Notes Liens.

(v)     *Cash Collateral*.  Any and all of the Debtors' cash, including the Debtors' cash and other amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtors, any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral or deposited into the Debtors' banking, checking, or other deposit accounts after the Petition Date, and the proceeds of any of the foregoing, wherever located, is the Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(Page | 24)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(vi) <u>*Bank Accounts*</u>.  The Debtors acknowledge and agree that, as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system.

(vii) <u>Intercreditor Agreements</u>.

(a) *ABL/1.5L Intercreditor Agreement*.  The Prepetition ABL Agent, as the "Senior ABL Agent", and the 1.5L Notes Trustee, as the "Junior Agent", are party to that certain Subordination and Intercreditor Agreement (1.5 Lien), dated as of August 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>ABL/1.5L Intercreditor Agreement</u>"), which governs, among other things, the rights, interests, obligations, priority, and remedies of the Prepetition ABL Secured Parties as "Senior Secured Parties", on the one hand, and the 1.5L Notes Secured Parties as "Junior Secured Parties", on the other hand, with respect to the Prepetition Collateral.

(b) *ABL/1.5L/McKesson Intercreditor Agreement*.  The Prepetition ABL Agent, the "Senior ABL Agent",  the 1.5L Notes Trustee, as the "Senior 1.5 Lien Notes Trustee", and McKesson, as the "Supplier", are party to that certain Intercreditor Agreement, dated as of August 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>ABL/1.5L/McKesson Intercreditor Agreement</u>"), which governs, among other things, the rights, interests, obligations, priority, and remedies of the Prepetition ABL Secured Parties and the 1.5L Notes Secured Parties as "Senior Secured

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Parties", on the one hand, and the McKesson Secured Parties, as "Supplier Secured Parties," on the other hand, with respect to the Prepetition Collateral.

(c)     *ABL/3L Intercreditor Agreement*.  The Prepetition ABL Agent, as the "Senior ABL Agent", and the 3L Notes Trustee, as the "Junior Agent" are party to that certain Subordination and Intercreditor Agreement (Third Lien), dated as of August 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time, the "ABL 3L Intercreditor Agreement"), which governs, among other things, the rights, interests, obligations, priority, and remedies of the Prepetition ABL Secured Parties as "Senior Secured Parties", on the one hand, and the 3L Notes Secured Parties as "Junior Secured Parties",  on the other hand, with respect to the Prepetition Collateral.

(d)     *1.5L/3L Intercreditor Agreement*.  The 1.5L Notes Trustee, as the "Senior Notes Agent", and the 3L Notes Trustee, as the "Junior Agent", are party to that certain Subordination and Intercreditor Agreement (1.5 Lien and Third Lien), dated as of August 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time, the "1.5L/3L Intercreditor Agreement"), which governs, among other things, the rights, interests, obligations, priority, and remedies of the 1.5L Notes Secured Parties as "Senior Secured Parties", on the one hand, and the 3L Notes Secured Parties as "Junior Secured Parties",  on the other hand, with respect to the Prepetition Collateral.

(e)     *McKesson/3L Intercreditor Agreement*.  McKesson, as "Senior Supplier", and the 3L Notes Trustee, as "Junior Agent", are party to that certain

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Subordination and Intercreditor Agreement (Second Lien / Third Lien), dated as of August 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time, the "McKesson/3L Intercreditor Agreement" and, together with the ABL/1.5L Intercreditor Agreement, the ABL/1.5L/McKesson Intercreditor Agreement, the ABL 3L Intercreditor Agreement, and the 1.5L/3L Intercreditor Agreement, collectively, the "Prepetition Intercreditor Agreements"), which governs, among other things, the rights, interests, obligations, priority, and remedies of the McKesson Secured Parties as "Senior Secured Parties", on the one hand, and the 3L Notes Secured Parties as "Junior Secured Parties", on the other hand, with respect to the Prepetition Collateral.

(f)     *Continuing Effect of Intercreditor Agreements; Final DIP Order Controls*. Each of the DIP Secured Parties, the Prepetition ABL Secured Parties, the 1.5L Secured Parties, McKesson, and the 3L Secured Parties are parties to or have otherwise acknowledged and agreed to, and are bound by, each of the applicable Prepetition Intercreditor Agreements to which the applicable Prepetition Agent is a party.  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Debt Documents, shall (1) remain in full force and effect, (2) continue to govern the relative obligations, priorities, rights, and remedies of the DIP Secured Parties and the Prepetition Secured Parties with respect to the DIP Collateral and the Prepetition Collateral, as applicable, (3) the Prepetition Intercreditor Agreements shall apply and govern the respective

(Page | 27)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

rights, obligations, and priorities of each of the DIP Agent, the other DIP Secured Parties, and the Prepetition Secured Parties with respect to the Prepetition Collateral and the DIP Collateral, as applicable, in the Cases and any Successor Cases subject in all respects to the Carve Out and the relative priorities set forth on the Lien Priority Annex, and (4) not be deemed to be amended, altered, or modified by the terms of this Final Order unless expressly set forth herein or therein.  Notwithstanding the foregoing, to the extent there exists any conflict among the terms and conditions of any of the Prepetition Debt Documents, including the Prepetition Intercreditor Agreements, the DIP Documents, the Interim Order, or this Final Order, the terms and conditions of this Final Order shall govern and control.

E.      *Findings Regarding the DIP Facilities and Use of Cash Collateral.*

(i)      The Debtors have an immediate need to obtain the DIP Facilities and to use Cash Collateral (solely to the extent consistent with the Approved Budget) to, among other things, (A) permit the orderly continuation of their businesses; (B) pay certain Adequate Protection Payments; (C) pay the costs of administration of the estates and monetization of their assets; (D) satisfy other working capital and general corporate purposes of the Debtors; and (E) repay the Prepetition ABL Loans as set forth in the Interim Order and this Final Order and subject to the rights preserved in paragraph 12 of this Final Order.  The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the Debtors' going concern values and successful asset

(Page | 28)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

monetization.  The Debtors do not have sufficient sources of working capital and financing to operate their businesses and sell their assets throughout the Cases without access to the DIP Facilities and authorized use of Cash Collateral.

(ii)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents, respectively, and are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also were and remain unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Loan Documents without the Debtors granting to the DIP Secured Parties the DIP Liens (as defined herein) and the DIP Superpriority Claims (as defined herein) under the terms and conditions set forth in the Interim Order, this Final Order and the DIP Loan Documents.

(iii)     As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facilities, and authorization to use Cash Collateral, the Debtors, the DIP Secured Parties, and the requisite Prepetition Secured Parties have agreed that, as of the Interim Order Effective Date, the Debtors shall apply the proceeds of Prepetition Collateral and DIP Collateral in accordance with paragraph 16 of this Final Order, including, without limitation: (i) the repayment and refinancing of any remaining outstanding Prepetition Revolving Loans with proceeds of the Roll-Up DIP Revolving Loans as set forth in the DIP Credit Agreement and in accordance with the terms of this Final Order, and (ii) the repayment

(Page | 29)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

and refinancing of $180,000,000 of outstanding Prepetition FILO Loans with proceeds of the Roll-Up DIP FILO Loans as set forth in the DIP Credit Agreement and in accordance with the terms of this Final Order.

(iv)     The Roll-Up DIP Loans shall be authorized as compensation, and in consideration for, the agreement of the Prepetition ABL Lenders to fund amounts under the DIP Facilities and not as payments under, adequate protection for, or otherwise on account of, any Prepetition ABL Obligations or any other Prepetition Secured Obligations. The Prepetition ABL Lenders would not otherwise consent to the use of Cash Collateral or the subordination of their Prepetition ABL Liens to the DIP Liens or the Carve-Out, and the DIP Secured Parties would not be willing to provide the DIP Facilities or extend credit to the Debtors thereunder without the repayment and refinancing of the Prepetition ABL Loans with the proceeds of the Roll-Up DIP Loans. Because the repayment and refinancing of the Prepetition ABL Obligations as set forth in the DIP Credit Agreement, the Interim Order, and this Final Order is aligned with the Bankruptcy Code's priority of payments mandate and subject to rights preserved in paragraph 12 of this Final Order, such repayment and refinancing will not prejudice the rights of any party in interest.

(v)The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facilities and as further described below, enables the Debtors to obtain the DIP Facilities and to continue to operate their businesses to the benefit of their estates and creditors.  Subject to paragraph 9(d) of this

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Final Order, each of the Prepetition Agents, for the benefit of itself and the other applicable Prepetition Secured Parties, is entitled to receive adequate protection as set forth herein as of the Interim Order Effective Date, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of the Prepetition Secured Parties' respective interests in the Prepetition Collateral (including Cash Collateral).

(vi)      The DIP Facilities have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties, and (x) the DIP Facilities, including the Approved Budget, represent the best possible terms available to the Debtors under the circumstances to satisfy claims and liabilities from the proceeds of the monetization of the Prepetition Collateral and (y) all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facilities and the DIP Loan Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and all other DIP Obligations, in each case are deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims are entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted to, or payments made to any DIP Secured Party or any Prepetition Secured Party hereunder arising

(Page | 31)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(vii)     *Adequate Protection*.  Each of the Prepetition Secured Parties are entitled, as of the Interim Order Effective Date, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, to the extent of any Diminution in Value thereof.

(viii)     *Sections 506(c) and 552(b)*.  In light of the DIP Secured Parties' and the Prepetition ABL Secured Parties' undertakings as set forth herein, the DIP Secured Parties and the Prepetition ABL Secured Parties are entitled to the rights and benefits of sections 506(c) and 552(b) of the Bankruptcy Code, including (A) a waiver of the provisions of section 506(c) of the Bankruptcy Code and (B) a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code.

(ix)     *Consent by Prepetition ABL Agent*.  The Prepetition ABL Agent, on behalf and for the benefit of each of the Prepetition ABL Secured Parties, has consented to, conditioned on the entry of the Interim Order, this Final Order and the DIP Loan Documents, the Debtors' incurrence of the DIP Facilities and proposed use of Cash Collateral on the terms and conditions set forth in the Interim Order and this Final Order, including, without limitation, the terms of the adequate protection provided for in the Interim Order and this Final Order.

(Page | 32)

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(x)      *Consent by 1.5L Notes Trustee*.  Conditioned on the entry of the

Interim Order and this Final Order, the 1.5L Notes Trustee, on behalf of and for the benefit of

each of the 1.5L Notes Secured Parties, pursuant to the ABL/1.5L Intercreditor Agreement, is

deemed to have consented to the Debtors' incurrence of the DIP Facilities and proposed use

of Cash Collateral on the terms and conditions set forth in the Interim Order, this Final Order

and the DIP Loan Documents, including, without limitation, the terms of the adequate

protection provided for in the Interim Order and this Final Order.

(xi)      *Consent by McKesson*.  Conditioned on the entry of the Interim

Order and this Final Order, McKesson, pursuant to the ABL/1.5L/McKesson Intercreditor

Agreement, is deemed to have consented to the Debtors' incurrence of the DIP Facilities and

proposed use of Cash Collateral on the terms and conditions set forth in the Interim Order,

this Final Order and the DIP Loan Documents, including, without limitation, the terms of the

adequate protection provided for in the Interim Order and this Final Order.[5]

(xii)      *Consent by 3L Notes Trustee*.  Conditioned on the entry of the

Interim Order and this Final Order, McKesson, the 3L Notes Trustee, on behalf and for the

benefit of each of the 3L Notes Secured Parties, pursuant to the ABL 3L Intercreditor

Agreement, is deemed to have consented to the Debtors' incurrence of the DIP Facilities and

proposed use of Cash Collateral on the terms and conditions set forth in the Interim Order,

---

[5]   The McKesson Secured Parties reserve all rights with respect to any 1.5L Notes Secured Obligations, if any, incurred in excess of the "Senior 1.5 Lien Notes Cap" under and as defined in the ABL/1.5L/McKesson Intercreditor Agreement.

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

this Final Order and the DIP Loan Documents, including, without limitation, the terms of the

adequate protection provided for in the Interim Order and this Final Order.

F.     *Good Cause Shown; Best Interest*.   Good cause has been shown for entry of this

Final Order, and entry of this Final Order is in the best interests of the Debtors' respective estates

and creditors as its implementation will, among other things, allow for an orderly and efficient

sales and monetization process.   Absent granting the relief sought by the Motion, the Debtors'

estates would be immediately and irreparably harmed and the liabilities to be satisfied from the

proceeds of the DIP Facilities in accordance with the Approved Budget would be at risk of

remaining unpaid.

G.     *Notice*.   In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and

Local Rules, notice of the Final Hearing and the relief requested in the Motion has been provided

by the Debtors.   The notice given by the Debtors of the Motion, the relief requested herein, and of

the Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and applicable

Local Rules.

H.     *Arm's Length, Good Faith Negotiations*.   The terms of the Interim Order and this

Final Order were negotiated in good faith and at arm's length between the Debtors, the DIP

Secured Parties, and the Prepetition Secured Parties.   The DIP Secured Parties and the Prepetition

Secured Parties have acted without negligence or violation of public policy or law in respect of all

actions taken by them in connection with or related in any way to negotiating, implementing,

documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facilities and

(Page | 34)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

the use of Cash Collateral, including in respect of all of the terms of the Interim Order, this Final

Order, all documents related thereto, and all transactions contemplated by the foregoing.

Based upon the foregoing findings and conclusions, the Motion and the record before the

Court with respect to the Motion, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT**:

1.      <u>Motion Granted</u>.  The Motion is granted on a final basis as set forth herein.

2.      <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements

with respect to entry of this Final Order, to the extent not withdrawn or resolved, are overruled on

the merits.  This Final Order shall become effective immediately upon its entry.

3.      <u>Authorization of the DIP Facilities and the DIP Loan Documents</u>.

(a)      The Debtors are authorized and empowered, as of the Interim Order

Effective Date, to enter into, execute and deliver, and perform under the DIP Loan Documents,

including the DIP Credit Agreement, and such additional documents, instruments, certificates and

agreements as are reasonably required or requested by the DIP Secured Parties to implement the

terms or effectuate the purposes of the Interim Order, this Final Order and the DIP Loan

Documents and to repay and refinance certain of the outstanding Prepetition ABL Obligations with

the proceeds of DIP Loans as set forth in the Interim Order and this Final Order. This Final Order,

the DIP Credit Agreement and other DIP Loan Documents govern and control each of the

respective DIP Facilities.  The DIP Loan Documents constitute valid and binding obligations of

the Debtors enforceable in accordance with their terms.  To the extent there exists any conflict

(Page | 35)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

among the terms and conditions of the DIP Loan Documents and this Final Order, the terms and conditions of this Final Order shall govern and control.

(b)      The DIP Borrower is authorized, as of the Interim Order Effective Date, to borrow or request, as applicable, borrowings of DIP Loans and other extensions of credit under the DIP Credit Agreement in accordance with the Approved Budget, and the DIP Guarantors are authorized to guarantee the DIP Obligations, in each case, in accordance with the terms of the DIP Loan Documents and this Final Order; *provided* that the DIP Borrower is authorized to incur DIP Loans and other extensions of credit under the DIP Facilities only as and when the applicable conditions for making such DIP Loans or other extensions of credit under the DIP Credit Agreement are satisfied.  All Bank Products and Cash Management Services (as each term is defined in the Prepetition ABL Credit Agreement) issued or provided by the Prepetition ABL Secured Parties shall continue in place in accordance with their existing and program terms and all obligations under or in connection with such Bank Products and Cash Management Services shall constitute DIP Obligations, and (ii) all Existing Letters of Credit (as defined in the DIP Credit Agreement) issued or provided by the Prepetition ABL Agent shall be automatically deemed issued under the DIP Credit Agreement.

(c)      Upon entry of the Interim Order and execution and delivery of the DIP Credit Agreement, without any further action by the Debtors or any other party, the Debtors were authorized to repay and refinance the Prepetition Revolving Obligations pursuant to the Interim Roll-Up.

(Page | 36)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(d)     Upon entry of this Final Order, (i) the Debtors shall be authorized and deemed to have repaid and refinanced any remaining outstanding Prepetition Revolving Loans and all accrued and unpaid interest thereon and fees and expenses relating thereto by and with Roll-Up DIP Revolving Loans, and (ii) the Debtors shall be authorized and deemed to have repaid and refinanced $180,000,000 of outstanding Prepetition FILO Loans and all accrued and unpaid interest thereon and fees and expenses relating thereto by and with Roll-Up DIP FILO Loans.

(e)     In accordance with the terms of this Final Order and the DIP Loan Documents, the proceeds of borrowings and of the letters of credit issued under the DIP Facilities and of Cash Collateral shall be used solely for purposes permitted under the DIP Loan Documents and this Final Order, and in accordance with the Approved Budget (as defined herein), subject to the Carve Out and the Permitted Variance as set forth in this Final Order and the DIP Loan Documents.  Attached as **Exhibit C** to the Interim Order and incorporated herein by reference is a summary of the initial budget prepared by the Debtors and approved by the DIP Agent and Wells Fargo in its capacity as a DIP Co-Collateral Agent in accordance with the DIP Credit Agreement for the period of thirteen weeks commencing on or about the Petition Date (as such budget may hereafter be updated, amended or otherwise modified from time to time in accordance with the DIP Credit Agreement, the "Approved Budget").

(f)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is lifted to the extent necessary, to perform all acts and to make, execute, and deliver all

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

agreements, documents and instruments, and to pay all fees (including all amounts owed to the DIP Secured Parties under the DIP Loan Documents) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facilities, including, without limitation:

(1)    the execution, delivery, and performance of the DIP Loan Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby;

(2)    the non-refundable payment to and/or on behalf of the DIP Agent of the premiums or professional fees referred to in the DIP Loan Documents, including (x) all premiums, fees and other amounts owed to the DIP Agent, (y) all reasonable and documented costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Loan Documents and this Final Order (whether incurred before, on, or after the Petition Date), including, for the avoidance of doubt, Choate, Hall & Stewart LLP (as counsel to the DIP Agent), Berkeley Research Group, LLC (as financial advisor to the DIP Agent), Greenberg Traurig, LLP (as local bankruptcy counsel to the DIP Agent), and any other professionals necessary to represent the interests of the DIP Agent, as provided for in the DIP Loan Documents (collectively, the "DIP Advisors"),

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

which such fees and expenses referred to in the foregoing clauses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with respect thereto any interim or final fee application with the Court; *provided* that any fees and expenses of the DIP Advisors shall be subject to the provisions of this Final Order, including paragraph 22, and the Approved Professional Fee Budget; and

(3)     the performance of all other acts required under or in connection with the DIP Loan Documents.

(g)     The DIP Loan Documents, the DIP Obligations, and the DIP Liens constitute, as of the Interim Order Effective Date, valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Cases, any subsequently converted case of any Debtor to a case under chapter 7 of the Bankruptcy Code (any such case, a "Successor Case") or after the dismissal of any Case.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement or other DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted (a) to or on

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

behalf of the DIP Agent, on behalf of any of the DIP Secured Parties, or (b) to or on behalf of the Prepetition Agents, on behalf of any of the Prepetition Secured Parties, in each case, pursuant to the DIP Loan Documents, the provisions of the Interim Order, this Final Order, or any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

(h)     The DIP Guarantors are authorized to jointly, severally, and unconditionally guarantee, and are deemed to have guaranteed as of the Interim Order Effective Date, in full, all of the DIP Obligations.   The DIP Loan Parties are jointly and severally liable for the DIP Obligations.

4.     <u>Approved Budget and Approved Budget Variance Reports; Minimum Availability</u>.

(a)     Each Approved Budget shall include a thirteen week cash budget, including information on a line item basis as specified in the DIP Credit Agreement.

(b)     The Approved Budget may be updated, modified or supplemented from time to time by the Debtors with the prior written consent of each of the DIP Agent and the Required DIP Co-Collateral Agents, and shall be updated from time to time upon the written request of either of the DIP Agent or the Required DIP Co-Collateral Agents; *provided* that, (i) on or before the date that is the earlier of (x) 3 days after the conclusion of the Specified Retail / Pharmacy Assets Auction (as defined in **Exhibit B** attached hereto) and (y) May 21, 2025

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(the "Initial Post-Auction Budget Update"), (ii) on or before the date that is the earlier of (x) 3 days after the conclusion of the Specified Other Assets Auction (as defined in **Exhibit B** attached hereto) and (y) June 27, 2025 (the "Subsequent Post-Auction Budget Update" and, together with the Initial Post-Auction Budget Update, the "Post-Auction Budget Updates"), and (iii) on or before the fourth business day of the first week (but in any event not later than Friday of such week) of each successive four-week period following the Closing Date (as defined in the DIP Credit Agreement) (i.e., commencing with the week of May 25, 2025) (the "Periodic Budget Updates"), the Debtors shall submit an updated budget for the next successive thirteen-week period (it being understood that, unless otherwise agreed by the DIP Agent and the Required DIP Co-Collateral Agents, each updated budget shall only add projections for periods not previously covered by any Approved Budget and shall not modify any prior periods) to the DIP Agent, the DIP Co-Collateral Agents and counsel and other professionals (the "Ad Hoc Secured Noteholder Group Advisors") for the ad hoc group of certain Prepetition Notes Secured Parties (the "Ad Hoc Secured Noteholder Group"), the Committee and its counsel, and to McKesson and its counsel.  Each such updated, modified or supplemented budget shall be approved by, and in form and substance satisfactory to, each of the DIP Agent and the Required DIP Co-Collateral Agents, and no such updated, modified or supplemented budget shall be effective until so approved in writing and once so approved shall be deemed an Approved Budget; *provided* that, in the event the Debtors and each of the DIP Agent and the Required DIP Co-Collateral Agents cannot (while acting in good faith) agree as to an updated, modified or supplemented budget, such disagreement shall give rise to an Event of

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Default (as defined in the DIP Credit Agreement) once the period covered by the most recent Approved Budget has terminated.  Each Approved Budget delivered to the DIP Agent and the DIP Co-Collateral Agents shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent and/or any DIP Co-Collateral Agent.  Notwithstanding anything to the contrary in this Final Order or in the DIP Loan Documents, upon delivery of each of the Post-Auction Budget Updates (but not, for the avoidance of doubt, any Periodic Budget Update), if any of such Post-Auction Budget Updates are not in form and substance acceptable to the DIP Agent and the Required DIP Co-Collateral Agents (other than with respect to the Employee Expenses), within two business days after the timely delivery thereof, such disagreement shall, at the election of the DIP Agent and the Required DIP Co-Collateral Agents, give rise to an immediate Event of Default (as defined in the DIP Credit Agreement) (it being understood and agreed that each of the Post-Auction Budget Updates delivered by the Debtors as of entry of this amended Final DIP Order are acceptable to each of the DIP Agent and the Required DIP Co-Collateral Agents).

(c)    Notwithstanding anything to the contrary in the Interim Order, this Final Order or the DIP Loan Documents, the Approved Budget may not be amended, restated, amended and restated, replaced or otherwise modified to reduce the portion of the Approved Professional Fee Budget allotted to the Committee Professionals (as defined herein) as of the date hereof or the

(Page | 42)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

timing of when such Committee Professionals fees are funded into the Funded Reserve Account (as defined here).

(d)     The Debtors shall perform in accordance with the Approved Budget and the Weekly Disbursements Schedule, subject to the following (the "Permitted Variance"), which shall be tested in accordance with the DIP Credit Agreement commencing with the first calendar week following the Closing Date (i.e., commencing with the Cumulative Four-Week Period (as defined herein) ending on May 10, 2025 or the Weekly Period ending on May 10, 2025, as applicable), as follows: (i) the Actual Cash Receipts (as such term is defined in the DIP Credit Agreement) for any Cumulative Four-Week Period shall not be less than 92.5% of the Budgeted Cash Receipts (as such term is defined in the DIP Credit Agreement) for such Cumulative Four-Week Period, as set forth in the most recent Approved Budget; *provided* that for each of the first three (3) Weekly Periods  following the Closing Date, Actual Cash Receipts for (x) such Weekly Period and (y) the most recent Cumulative Period (as of the last day of the Prior Week) shall not, in each case, be less than 90.0% of the Budgeted Cash Receipts for such Weekly Period or Cumulative Period, as applicable, as set forth in the most recent Approved Budget, (ii) the Actual Operating Disbursement Amounts (as such term is defined in the DIP Credit Agreement) for any Cumulative Four-Week Period shall not be greater than 102.5% of the Budgeted Operating Disbursement Amounts (as such term is defined in the DIP Credit Agreement) for such Cumulative Four-Week Period, as set forth in the most recent Approved Budget; provided that for each of the first three (3) Weekly Periods following the Closing Date, Actual Operating Disbursement Amounts for (x)

(Page | 43)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

such Weekly Period and (y) the most recent Cumulative Period (as of the last day of the Prior Week) shall not, in each case, be less than 105.0% of the Budgeted Operating Disbursement Amounts for such Weekly Period or Cumulative Period, as applicable, as set forth in the most recent Approved Budget, (iii) the Actual Non-Operating Disbursement Amounts (as such term is defined in the DIP Credit Agreement) for any Cumulative Four-Week Period shall not be greater than 102.5% of the Budgeted Non-Operating Disbursement Amounts (as such term is defined in the DIP Credit Agreement) for such Cumulative Four-Week Period, as set forth in the most recent Approved Budget; provided that for each of the first three (3) Weekly Periods following the Closing Date, Actual Non-Operating Disbursement Amounts for (x) such Weekly Period and (y) the most recent Cumulative Period (as of the last day of the Prior Week) shall not be greater than 105.0% of the Budgeted Non-Operating Disbursement Amounts for such Weekly Period or Cumulative Period, as applicable, as set forth in the most recent Approved Budget and (iv) the sum of the Total Revolving Outstandings *plus* the Pre-Petition Total Revolving Outstandings (as each such term is defined in the DIP Credit Agreement) as of the last day of any Weekly Period shall not be greater than 102.5% of the sum of the projected Total Revolving Outstandings *plus* the projected Pre-Petition Total Revolving Outstandings as of the last day of such Weekly Period, as set forth in the most recent Approved Budget; provided that, for the first three (3) Weekly Periods following the Closing Date, the sum of the Total Revolving Outstandings *plus* the Pre-Petition Total Revolving Outstandings as of (x) the last day of any Weekly Period and (y) the most recent Cumulative Period (as of the last day of the Prior Week) shall not, in each case, be greater than

(Page | 44)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

105.0% of the sum of the projected Total Revolving Outstandings plus the projected Pre-Petition Total Revolving Outstandings as of the last day of such Weekly Period or Cumulative Period, as applicable, as set forth in the most recent Approved Budget. To the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses incurred by persons or firms retained by any party that the Debtors seek to pay shall not exceed the amounts set forth in the Approved Budget. As used herein, the following terms have the meanings specified below:

(1) "Approved Professional Fee Budget" means the portion of the detailed Approved Budget delivered to the DIP Agent in accordance with the DIP Credit Agreement appearing in the "RX PF Cash" tab (or any successor tab) of such detailed Approved Budget, which Approved Professional Fee Budget shall provide for the fees and expenses of each professional covered thereby on a line item basis.

(2) "Cumulative Four-Week Period" means, as of any date of determination thereof, the four-week period up to and through the Saturday of the most recent week then ended, or if a four-week period has not then elapsed from the Petition Date, such shorter period since the Petition Date through the Saturday of the most recent week then ended.

(3) "Cumulative Period" means, as of any date of determination thereof, the period from the Petition Date through the Saturday of the most recent week ended.

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(4)     "Weekly Period" means, as of any date of determination thereof, the weekly period up to and through the Saturday of the most recent week then ended as of such date, or such shorter period since the Petition Date through the Saturday of the most recent week then ended as of such date.

(e)     The Debtors shall deliver to the DIP Agent, the DIP Co-Collateral Agents, the DIP Advisors, the Committee Professionals, and the Ad Hoc Secured Noteholder Group Advisors by not later than 5:00 p.m. (prevailing Eastern time) on the third business day of each week (but in any event not later than Thursday of such week) or, if extended in writing by the DIP Agent in its sole discretion for any week, not later than 5:00 p.m. on Friday of such week (commencing with the first such day of the first full calendar week following the entry of this Order), a Compliance Certificate (as such term is defined in the DIP Credit Agreement), which shall, among other things, attach an Approved Budget Variance Report (as such term is defined in the DIP Credit Agreement), detailing the Debtors' performance relative to the Approved Budget and the Weekly Disbursements Schedule, all in the manner contemplated by the DIP Credit Agreement.

(f)     Commencing on the Closing Date and on the fourth business day of each calendar week thereafter (but in any event no later than Thursday of such week), Rite Aid shall deliver to the DIP Agent, the DIP Co-Collateral Agents (which delivery may be completed through delivery to the DIP Advisors), and the Ad Hoc Secured Noteholder Group Advisors a detailed daily schedule of all disbursements to be funded with proceeds of the DIP Revolving Facility

(Page | 46)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

during the following calendar week, in a form consistent with the disbursements categories set forth in the Approved Budget and, if requested by the DIP Agent and/or any DIP Co-Collateral Agent, identifying each payee with respect to such disbursement (the "Weekly Disbursements Schedule"). The DIP Lenders shall not be obligated to fund DIP Revolving Loans or other credit extensions under the DIP Revolving Facility in an amount in excess of 105% of the amounts specified in the Weekly Disbursements Schedule in accordance with the definition of Credit Extension Conditions set forth in the DIP Credit Agreement.

(g)      Notwithstanding anything stated to the contrary herein, the Debtors agree that an immediate default under the Approved Budget shall be deemed to occur (which shall, for the avoidance of doubt, be subject to the procedures set forth in paragraph 18 of this Final Order) in the event that any of the following events occur: (i) the Debtors fail to enter into, and file with the Court, a restructuring support agreement (the "RSA") satisfactory to the DIP Agent and Required DIP Co-Collateral Agents (in their sole discretion) by no later than August 31, 2025, (ii) the Debtors fail to comply with any and all milestones established by the RSA, (iii) the occurrence of a default, breach, termination, or modification (that has not been consented to by the DIP Agent and Required DIP Co-Collateral Agents) by the Debtors of the RSA, the Inventory Purchase Agreement, or any of the other documents entered into by the Debtors in connection therewith, or (iv) following the entry of this amended Final Order, any Professional Person seeks, or submits a fee application seeking, payment of Allowed Professional Fees for any period in excess of the amounts set forth in the Approved Budget as agreed among the DIP Agent, the DIP Co-Collateral

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Agents, the Debtors and the Committee on September 3, 2025 (the "Professional Fee Budget") for such period; *provided* that each Professional Person may seek payment of accrued Allowed Professional Fees for the period commencing on the effective date of such Professional Person's retention until the earlier of (x) the effective date of a chapter 11 plan, (y) the entry of an order dismissing any one of the Cases, or (z) the Termination Declaration Date so long as such amounts do not exceed the aggregate budgeted amounts for such period set forth in the Professional Fee Budget.

5.     Access to Records.  The Debtors shall provide (i) the DIP Advisors with all reporting and other information provided to the Prepetition ABL Agent under the Prepetition ABL Documents, and (ii) the Ad Hoc Secured Noteholder Group Advisors with all reporting and other information provided to the 1.5L Notes Trustee and the 3L Notes Trustee under the 1.5L Notes Indenture and the 3L Notes Indenture, respectively.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Loan Documents, upon reasonable notice to Debtors' counsel (email being sufficient), Debtors shall permit representatives, agents, and employees of the DIP Agent to have reasonable access to (i) inspect the Debtors' assets, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the DIP Agent shall be provided with access to all information they shall reasonably request, excluding any information that (x) constitutes trade secrets or proprietary information, (y) in respect of which disclosure to

(Page | 48)

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

the DIP Agent (or its respective representatives or contractors) is prohibited by applicable law, court order or regulation or any contractual obligation or (z) is subject to attorney-client or similar privilege or constitutes attorney work product; *provided* that, in the event that any Debtor does not provide any document or information in reliance on the foregoing clauses (y) or (z), Rite Aid shall provide notice to the DIP Agent that such documents or information is being withheld and Rite Aid and the other Debtors shall use commercially reasonable efforts to communicate the applicable documents or information in a way that would not violate the applicable obligation or risk waiver of such privilege.

6.      DIP Superpriority Claims.

(a)      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "DIP Superpriority Claims") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, all DIP Collateral (as defined herein), subject and subordinate only to the payment of the Carve Out as provided for herein.

(b)     All DIP Superpriority Claims shall be senior in right of payment to the Adequate Protection Superpriority Claims (as defined herein), and junior in right of payment to the Carve Out.

(c)     Except as set forth in the Interim Order or this Final Order or provided for in the DIP Loan Documents, no other superpriority claims shall be granted or allowed in these Cases.

7.     <u>DIP Liens</u>.

(a)     As security for the DIP Obligations, effective as of the Interim Order Effective Date, and without the necessity of the execution by the Debtors (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar instruments or document, or the possession or control by the DIP Agent or any other DIP Secured Party of, or over, any DIP Collateral, the DIP Agent, for the benefit of itself and each of the other DIP Secured Parties, is granted continuing, valid, binding, enforceable, nonavoidable, and automatically and properly perfected security interests in and liens on (collectively, the "<u>DIP Liens</u>") all DIP Collateral as collateral security for the prompt and complete

(Page | 50)

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all DIP Obligations. The DIP Collateral shall include all assets and properties (whether tangible or intangible), whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, including, without limitation, (i) any assets or properties of the type that would constitute Prepetition Collateral or the proceeds thereof but for application of section 552(b) of the Bankruptcy Code, (ii) the Debtors' commercial tort claims, (iii) all leasehold interests with respect to any real property, (iv) claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any ("Avoidance Actions") and any and all proceeds or property recovered in connection with the pursuit thereof; provided that, unless otherwise agreed by the Committee, the DIP Secured Parties shall agree not to pursue Avoidance Actions for payments made by the Debtors under $500,000 (other than payments below $500,000 made to a party that also received one or more payments equal or exceeding $500,000), (v) the Debtors' rights under section 506(c) of the Bankruptcy Code, and (vi) any proceeds of any of the foregoing (collectively, the "DIP Collateral").

(b) Notwithstanding paragraph 7(a) of this Final Order, the DIP Collateral shall not include (i) leasehold interests of non-residential real property that prohibit or restrict the granting of such liens in the applicable lease except as permitted pursuant to applicable non-bankruptcy law (but shall include the proceeds of the sale or disposition of such leases), and (ii) any security deposits (in possession of the Debtors or the landlord) or the Debtors' interests, if any,

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; provided that, the DIP Collateral shall include any such security deposits or pre-paid rent upon reversion thereof to the Debtors, if at all, as well as any proceeds or value of such leasehold interests whether by sale, financing, or other disposition or form of transfer, termination or transaction.

8.    <u>Perfection and Priority of DIP Liens.</u>

(a)    Pursuant to section 364(c) and 364(d) of the Bankruptcy Code, the DIP Liens on the DIP Collateral securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens on the DIP Collateral are subject to the Carve Out as set forth in this Final Order and subject to the priorities and terms of the applicable Prepetition Intercreditor Agreements, this Final Order, and the Lien Priority Annex.

(b)    Except as expressly set forth in this Final Order (including the Lien Priority Annex) and subject to the Carve Out, the DIP Liens: (a) are not and shall not be made subject to or pari passu with (i) any lien or security interest heretofore granted (other than Permitted Prior Liens as defined in the DIP Credit Agreement) or hereinafter granted in any of the Cases or any Successor Cases, and are valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Cases or any Successor Cases and/or upon the dismissal of any of the Cases or any Successor Cases, (ii) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code,

(Page | 52)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

and (iii) any intercompany or affiliate lien; and (b) are not subject to sections 506(c), 510, 550, or 551 of the Bankruptcy Code.

9.      <u>Adequate Protection for the Prepetition Secured Parties</u>.  Subject only to the Carve Out and the terms of this Final Order, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), to the extent of any diminution in value of such interests (each such diminution, a "<u>Diminution in Value</u>"), resulting from, among other things, the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay, and the accrual of postpetition interest, fees, and other amounts on the Prepetition Secured Obligations and the DIP Obligations, each of the Prepetition Agents, for the benefit of themselves and the respective Prepetition Secured Parties, is granted and the Debtors are authorized, each as of the Interim Order Effective Date, to provide the following (collectively, the "<u>Adequate Protection Obligations</u>"):

(a)      *Adequate Protection Liens*.  As security for any Diminution in Value, each of the Prepetition Agents, for the benefit of themselves and the respective Prepetition Secured Parties, is granted additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the Interim Order Effective Date (together, the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Debtors (or recordation or other filing) of any Security Document, on all DIP

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Collateral, subject to the priorities and terms of this Final Order, the Lien Priority Annex, and the Prepetition Intercreditor Agreements.  Subject to the Carve Out, the Lien Priority Annex, and the Prepetition Intercreditor Agreements, the Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code).

(b)     *Adequate Protection Superpriority Claims*.  As further adequate protection, and to the extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, each of the Prepetition Agents, for the benefit of themselves and the respective Prepetition Secured Parties, is, as of the Interim Order Effective Date, granted allowed administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any postpetition Diminution in Value (the "Adequate Protection Superpriority Claims"), but junior to the Carve Out and the DIP Superpriority Claims and with the priorities set forth in the Prepetition Intercreditor Agreements.  Except for the Carve Out and the DIP Superpriority Claims, the Adequate Protection Superpriority Claims are and shall remain senior to any claims and have priority over all administrative expense claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(d), 726, 1113 and 1114 of the Bankruptcy Code.  Except to the extent expressly set forth in the Interim Order, the Interim Order,

| Debtors: | NEW RITE AID, LLC, *et al.* |
| --- | --- |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

this Final Order, or the DIP Loan Documents, none of the Prepetition Secured Parties shall receive or retain any payments, property or other amounts in respect of the Adequate Protection Superpriority Claims unless and until all DIP Obligations have been indefeasibly Paid in Full,[6] and all commitments to lend have been terminated.  Any payments, property or other amounts received by any Prepetition Secured Party in respect of the Adequate Protection Superpriority Claims in violation of the foregoing sentence shall be held in trust by such Prepetition Secured Party, for the benefit of the DIP Secured Parties, and shall be promptly turned over to the DIP Secured Parties for application in accordance with the DIP Loan Documents.

(c)     *Adequate Protection Payments*.  As further adequate protection, the Debtors are authorized to pay, in accordance with the terms of paragraph 22 of this Final Order, (i) all reasonable and documented fees and expenses of the Prepetition ABL Agent payable under the

---

[6] "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, accrued and unpaid interest and fees, reimbursable expenses and indemnities, other than contingent indemnification obligations for which no claim has been asserted and threatened, and all other amounts due and owing by the Debtors) under the applicable credit facility and this Final Order, the cash collateralization or repayment in full in cash of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable facility and that each of the Prepetition Agents, Prepetition Secured Parties, the DIP Agent, the DIP Co-Collateral Agents, and the other DIP Secured Parties, as the case may be, shall have received a release from each Debtor and the Committee of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities in form and substance acceptable to the Prepetition Agents, DIP Agent and/or DIP Co-Collateral Agents, as applicable or will be asserted.  In the case of the Committee, instead of such release, (A) if the Challenge Period Termination Date (as defined in this Final Order) has not elapsed, a written notice or other confirmation that no Challenge or any other claims of any kind (including with respect to the Carve Out upon payment in full of the Prepetition Secured Obligations or DIP Obligations) or (B) if the Challenge Period Termination Date has elapsed, then no Challenge or any other claim has been asserted or any Challenge or other claim asserted has been dismissed pursuant to a final, non-appealable order of a court of competent jurisdiction and a written notice or other confirmation that no claim of any kind with respect to the Carve Out will be asserted against any Prepetition Agent, Prepetition Secured Party, DIP Agent, DIP Co-Collateral Agents, or other DIP Secured Party.

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Prepetition Debt Documents or as otherwise permitted in the Interim Order and this Final Order, whether incurred before, on or after the Petition Date, including all reasonable and documented fees and expenses of counsel and other professionals of the Prepetition ABL Agent retained pursuant to the Prepetition Debt Documents, the Interim Order and this Final Order, including, for the avoidance of doubt, of Choate, Hall & Stewart LLP, Berkeley Research Group, LLC and Greenberg Traurig, LLP, in their capacity as advisors to the Prepetition ABL Agent (collectively, the "Pre-Petition ABL Advisors"), (ii)(A) until all Prepetition Revolving Loans have been rolled up in full into Roll-Up DIP Revolving Loans and (B) any amounts in respect of Prepetition FILO Loans that are not rolled up into Roll-Up DIP FILO Loans, in each case in accordance with the terms of the Prepetition ABL Documents, all accrued and unpaid interest on such amounts at the rate set forth in the Prepetition ABL Documents to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties (all payments referenced in this sentence, collectively, the "Adequate Protection Payments"). None of the Adequate Protection Payments shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments. Notwithstanding anything to the contrary in this Final Order or the Pre-Petition ABL Documents, the payment of the reasonable and documented fees and expenses of the Pre-Petition ABL Advisors shall be in accordance with the terms of paragraph 22 of this Final Order and subject to the Approved Professional Fee Budget

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

and shall, for the avoidance of doubt, be without duplication of the payment of amounts to the such professionals in their respective capacities as DIP Advisors.

(d)     *Right to Seek Additional Adequate Protection*.  This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request, with any such rights of the Prepetition Secured Parties to request further or alternative forms of adequate protection being subject to the terms of the Prepetition Intercreditor Agreements.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

(e)     *Other Covenants*.  The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's interim and final orders granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related*

| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

*Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions and (II) Granting Related Relief* upon entry of such orders. Except as expressly permitted by the DIP Credit Agreement, and subject to any sale orders entered by the Bankruptcy Court and the Bidding Procedures Order (as defined herein), the Debtors shall not use, sell, lease, or otherwise transfer any of their property or assets, including any portion of the DIP Collateral, and shall not seek authority of this Court to do any of the foregoing, without the prior written consent of the DIP Agent (with email being sufficient).[7] The Debtors shall comply with the covenants contained in the DIP Credit Agreement regarding conduct of business, including, without limitation, preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations and intellectual property rights material to the conduct of their business and the maintenance of properties and insurance.

(f) *Reporting Requirements.* As additional adequate protection to the Prepetition Secured Parties, the Debtors shall comply with all reporting requirements set forth in the McKesson Supply Agreement and the DIP Loan Documents, and shall provide the reporting set forth in the DIP Loan Documents (including all budget-related reporting and updates provided for in paragraph 4), along with the Weekly Statements and Final Statements (as defined herein) to the (i) Prepetition ABL Agent, (ii) the DIP Agent, (iii) the DIP Co-Collateral Agents (limited, in

---

[7] "Bidding Procedures Order" means the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 473] entered by the Court on May 21, 2025.

(Page | 58)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

the case of Capital One, to Approved Budget-related items specified in paragraph 4 of this Final Order), (iv) the DIP Advisors, (v) the 1.5L Notes Trustee, (vi) McKesson, (vii) the 3L Notes Trustee, and (viii) the Committee and the Committee Professionals.

10.     Carve Out.

(a)     *Priority of the Carve Out*.  Subject to the terms and conditions contained in this paragraph, each of the DIP Liens, DIP Superpriority Claims, Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claims are subject and subordinate to payment of the Carve Out.  The Carve Out shall have such priority claims and liens over all assets of the Debtors, including any Prepetition Collateral and any DIP Collateral.

(b)     *Definition of Carve Out*.  As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, subject to paragraph 10(c) hereof, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Persons") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined herein), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed (1) prior to June 20, 2025, $4,000,000 and (2) thereafter, $2,500,000, in each case, incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, lead counsel for the Ad Hoc Secured Noteholder Group, lead counsel for McKesson, the United States Trustee for the District of New Jersey, and counsel to the Committee, which notice may be delivered following (x) the occurrence of the Maturity Date (as defined in the DIP Credit Agreement) or (y) the occurrence and during the continuation of an Event of Default under the DIP Credit Agreement stating that the Post-Carve Out Trigger Notice Cap has been invoked. The portion of the Carve Out under clause (iii) above shall be limited to an amount (such amount, the "Professional Fee Carve Out Cap") equal to the sum of (1) the aggregate unpaid amount of Allowed Professional Fees included in the Approved Professional Fee Budget through the most recent Calculation Date (as defined herein) occurring prior to the Termination Declaration Date (as defined herein), plus (2) the lesser of (x) the aggregate unpaid amount of Allowed Professional Fees included in the Final Statement timely received by the DIP

(Page | 60)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Agent and the DIP Co-Collateral Agents pertaining to the period from and after the most recent Calculation Date occurring prior to the Termination Declaration Date through and including the Termination Declaration Date, and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Approved Professional Fee Budget for the week during which the Termination Declaration Date occurs, pro-rated on a per diem basis for the number of days in such week elapsing through and including the Termination Declaration Date (such amount in this clause (2), the "Final Pre-Carve Out Trigger Amount").

(c)     *Budgeted Amounts for Professional Persons*.  Notwithstanding anything to the contrary in this Final Order, (i) the inclusion of Allowed Professional Fees in the Carve Out as Pre-Carve Out Amounts (as defined herein) and the funding of such Pre-Carve Out Amounts into the Funded Reserve Account (as defined herein), in each case, is subject to the Approved Professional Fee Budget, (ii) the Allowed Professional Fees of each Professional Person included in the Carve Out as Pre-Carve Out Amounts shall not exceed the applicable amount of Allowed Professional Fees budgeted for such Professional Person set forth in the Approved Professional Fee Budget for the applicable period of determination, and (iii) none of the DIP Secured Parties shall have any obligation to fund payment of Allowed Professional Fees, either directly or pursuant to a draw under the DIP Facilities, in a manner contrary to paragraph 4(g) of this Final Order.

(d)     *Weekly Fee Statements*.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Closing Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate

(Page | 61)

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); provided that within one business day of the occurrence of the Termination Declaration Date, each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the DIP Agent and the DIP Co-Collateral Agents).

(e)     *Funded Reserve Account*.   Prior to the delivery of a Carve Out Trigger Notice, commencing with the first full calendar week following the Closing Date, on or before the fourth business day of each week thereafter, and in no event later than the Friday of such week, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to deposit into a segregated account designated by and subject to the control of the DIP Agent in trust (the "Funded Reserve Account") an amount equal to the sum of (without duplication) the amount of Allowed Professional Fees set forth in the Approved Professional Fee Budget for each applicable week *plus*, promptly after the occurrence of the

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Termination Declaration Date, the Final Pre-Carve Out Trigger Amount. Amounts held in the Funded Reserve Account shall be used to pay such Allowed Professional Fees prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(f)     *Carve Out Reserves*.   Notwithstanding the occurrence of an Event of Default, on the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Committee (if any) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall be deemed (i) a directive for the DIP Agent to cause the transfer of all amounts then held in the Funded Reserve Account to the Pre-Carve Out Trigger Notice Reserve (as defined herein) and (ii) a draw request and notice of borrowing by the Debtors for DIP Revolving Loans under the DIP Credit Agreement, in an aggregate amount equal to the sum of (x) the amounts set forth in paragraphs 10(b)(i) and 10(b)(ii) above, and (y) subject to paragraph 10(c) above, the then unpaid amounts of the Allowed Professional Fees (and any such amounts actually advanced shall constitute DIP Revolving Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date, and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of (x) the amounts set forth in paragraphs 10(b)(i) and 10(b)(ii) and (y) subject to paragraph 10(c) above, the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP Revolving Loans pursuant to this sentence of this paragraph (f)). The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust

(Page | 63)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(which account may be the same account as the Funded Reserve Account) to pay such then unpaid

Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other

claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed

a directive for the DIP Agent to cause the transfer of all amounts then held in the Funded Reserve

Account and, in the event such amounts are insufficient (including after accounting for the funding

of the Pre-Carve Out Trigger Notice Reserve and for the application by each Professional Person

of all retainers received but not previously applied to such Professional Person's Allowed

Professional Fees), a draw request and notice of borrowing by the Debtors for DIP Revolving

Loans under the DIP Credit Agreement in an amount equal to the Post-Carve Out Trigger Notice

Cap (any such amounts actually advanced shall constitute DIP Revolving Loans), and shall also

constitute a demand to the Debtors to utilize all cash on hand as of such date and any available

cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to

fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts

shall reduce, on a dollar-for-dollar basis, the draw requests and applicable DIP Revolving Loans

pursuant to this sentence of this paragraph (f)). The Debtors shall deposit and hold such amounts

in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting

from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and,

together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any

and all other claims. For the avoidance of doubt, the DIP Lenders shall not be responsible for

funding into the Carve Out Reserves any "success", "restructuring", "transaction" or similar fee

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

payable to the Debtors' investment banker or financial advisor for any transaction, and in no event shall any such amounts be paid out of the Carve Out or any funds in the Carve Out Reserve. On the first business day following the Termination Declaration Date and the deemed requests for the making of DIP Revolving Loans as provided in this paragraph (f), notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to (1) the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any DIP Revolving Loan under the DIP Credit Agreement, (3) any termination of the DIP Revolving Commitments following an Event of Default, or (4) the occurrence of the Maturity Date, each DIP Lender with an outstanding DIP Revolving Commitment shall make available to the DIP Agent such DIP Lender's pro rata share of such DIP Revolving Loans.

(g)     *Application of Carve Out Reserves*.

(i)     All funds in the Pre-Carve Out Trigger Notice Reserve shall, only after the application by each Professional Person of all retainers received but not previously applied to such Professional Person's Allowed Professional Fees, be used first to pay the obligations set forth in clauses (b)(i) through (b)(iii) of the definition of Carve Out set forth in paragraph (a) above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii) below, all remaining funds shall be distributed *first* to the DIP Agent on account of the DIP Obligations until indefeasibly Paid in Full, all DIP

(Page | 65)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Revolving Commitments have been terminated and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable issuing bank), and *thereafter* to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date as set forth in the Prepetition Debt Documents, including the Prepetition Intercreditor Agreements.

(ii)     All funds in the Post-Carve Out Trigger Notice Reserve shall, only after the application by each Professional Person of all retainers received but not previously applied to such Professional Persons to such Professional Person's Allowed Professional Fees, be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth in paragraph (a) above (the "Post-Carve Out Amounts").  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to paragraph (iii) below, all remaining funds shall be distributed *first* to the DIP Agent on account of the DIP Obligations until indefeasibly Paid in Full, all DIP Revolving Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable issuing bank), and *thereafter* to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date as set forth in the Prepetition Debt Documents, including the Prepetition Intercreditor Agreements.

(iii)     Notwithstanding anything to the contrary in the Prepetition Debt Documents, the DIP Loan Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph, then, any excess funds in one of the

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable.

(iv)     Notwithstanding anything to the contrary in the Prepetition Debt Documents, the DIP Loan Documents, or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent, the DIP Co-Collateral Agents and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (i), (ii), and (iii) above.

(v)     Notwithstanding anything to the contrary in this Final Order, the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), which shortfall, for the avoidance of doubt, shall not be added to the Carve Out for purposes of the priority of liens as set forth in the Lien Priority Annex; and subject to the limitations set forth in paragraph 10(c) above, in no way shall any Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in any DIP Loan Documents, the Carve Out shall be

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

senior to all liens and claims securing the DIP Credit Agreement, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(h)     *No Direct Obligation To Pay Allowed Professional Fees*.  None of the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(i)     *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.  Subject to paragraph 10(g)(v) above, any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall be made in accordance with paragraph 10(c) above and, at all times prior to the Termination Declaration Date, from the Funded Reserve Account.

(j)     *Payment of Carve Out On or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

(k)   *DIP Commitment Reserve*. The DIP Agent shall at all times maintain a reserve against the Total Revolving Commitments (as defined in the DIP Credit Agreement) in an amount not to exceed, at any time of determination, the sum of (i) the Post-Carve Out Trigger Notice Cap and (ii) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Professional Fee Budget for the two weeks commencing after the most recent Calculation Date.

11.   <u>Reservation of Rights of the DIP Secured Parties and the Prepetition Secured Parties</u>.  Subject in all cases to the Carve Out, notwithstanding any other provision in this Final Order or the DIP Loan Documents to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:  (a) any of the rights of any of the Prepetition Secured Parties, subject to the Prepetition Intercreditor Agreements, to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection following the Final Hearing; *provided* that any such further or different adequate protection shall at all times be subject to the applicable Prepetition Intercreditor Agreements and subordinate and junior to the Carve Out and, subject to the Lien Priority Annex, the claims and liens of the DIP Secured Parties granted under this Final Order and the DIP Loan Documents; (b) subject to the applicable Prepetition Intercreditor Agreements, any of the rights of

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

the DIP Secured Parties or the Prepetition Secured Parties under the DIP Loan Documents or the

Prepetition Debt Documents (as applicable), any intercreditor agreement, or the Bankruptcy Code

or under non-bankruptcy law (as applicable), including, without limitation, the right of any of the

DIP Secured Parties or the Prepetition Secured Parties to (i) request modification of the automatic

stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases, conversion

of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner

with expanded powers in any of the Cases, (iii) seek to propose, subject to the provisions of section

1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or

privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties, the

Prepetition Secured Parties, or the Prepetition Agents on behalf of the Prepetition Secured Parties,

including the right to object to the amount or reasonableness of any fees or expenses of

Professional Persons; *provided*, *however*, that the reservation of rights contained in this paragraph

shall not permit any Prepetition Secured Party to challenge the validity, priority, or enforceability

of any of the claims or liens of any DIP Secured Party granted under this Final Order and the DIP

Loan Documents or take any action contrary to paragraph 31(a) of this Final Order. The delay in

or failure of the DIP Secured Parties, the Prepetition Secured Parties and/or the Prepetition Agents

to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any

of the DIP Secured Parties', the Prepetition Secured Parties' or the Prepetition Agents' rights and

remedies.  For all adequate protection purposes throughout the Cases, each of the Prepetition

Secured Parties and Prepetition Agents, to the extent applicable and subject to the Prepetition

(Page | 70)

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Intercreditor Agreements, shall be deemed to have requested relief from the automatic stay and adequate protection for any Diminution in Value from and after the Petition Date. For the avoidance of doubt, such request will survive termination of this Final Order.

12.    <u>Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims</u>. Subject to the Challenge Period (as defined herein), the stipulations, admissions, waivers, and releases contained in this Final Order, including the Debtors' Stipulations, shall be binding upon the Debtors, their estates, and any of their respective successors in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date. The stipulations, admissions, and waivers contained in this Final Order, including the Debtors' Stipulations, shall be binding upon all other parties in interest, including the Committee and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (i)(a) except as to the Committee, on or before July 6, 2025, and (b) in the case of any such adversary proceeding or contested matter filed by the Committee, September 19, 2025, (in each case of clauses (a) and (b), and as such date in clause (b) may be extended in writing from time to time by the DIP Agent, the Prepetition ABL Agent and the Committee in their sole discretion, the "<u>Challenge Period</u>" and the date of expiration of the Challenge Period being a "<u>Challenge Period Termination Date</u>"); *provided*, *however*, that if, prior to the occurrence of any Challenge Period Termination Date, (x) the Cases convert to

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

chapter 7 cases, or (y) if a chapter 11 trustee is appointed, then, in each such case, each applicable

Challenge Period shall be extended by the later of (A) the time remaining under such Challenge

Period, plus ten days or (B) such other time as ordered by the Court solely with respect to any such

trustee, commencing on the occurrence of either of the events discussed in the foregoing clauses

(x) and (y); (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors'

Stipulations regarding:   (a) the validity, enforceability, extent, priority, or perfection of the

Prepetition Liens; or (b) the validity, enforceability, allowability, priority, secured status, or

amount of the Prepetition Secured Obligations (any such claim, a "Challenge"); and (iii) in which

the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such

timely filed adversary proceeding or contested matter.   For the avoidance of doubt, a standing

motion that attaches one or more draft complaints that detail the alleged Challenge(s) that the

Committee proposes to assert shall constitute a contested matter for purposes of the preceding

sentence.   Upon the occurrence of the applicable Challenge Period Termination Date without the

filing of a Challenge (or if any such Challenge is filed and overruled):   (a) any and all such

Challenges by any applicable party (including the Committee, any chapter 11 trustee, and/or any

examiner or other estate representative appointed or elected in these Cases, and any chapter 7

trustee and/or examiner or other estate representative appointed or elected in any Successor Case)

shall be deemed to be forever barred; (b) the Prepetition Secured Obligations shall constitute

allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination,

recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any successor

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

cases; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected secured claims, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Final Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in this Final Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases. If any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules and remains pending and the Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates. If any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules, the stipulations and admissions contained in this Final Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the applicable Challenge Period Termination Date. Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation any challenges (including a Challenge) with respect to the Prepetition Debt Documents, the Prepetition Liens, and the Prepetition Secured

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Obligations, and a separate order of the Court conferring such standing on the Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by the Committee or such other party-in-interest.  Upon a successful Challenge brought pursuant to this paragraph 12, including but not limited to a Challenge to the roll-ups granted in the Interim Order and this Final Order, the Court may fashion an appropriate remedy.

13.    <u>DIP Termination Date</u>.   On the DIP Termination Date (as defined herein), consistent with the applicable provisions of the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable, all of the applicable DIP Revolving Commitments will terminate, and the Carve Out Reserve Accounts shall be funded as set forth in this Final Order; (b) all authority to use Cash Collateral shall cease; *provided*, *however*, that during the DIP Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral, including all Collections, solely to fund the Carve Out and the Employee Expenses Account and pay payroll (other than severance) and other expenses that are critical to the administration of the Debtors' estates strictly in accordance with the Approved Budget, subject to the Permitted Variance; and (c) and, with respect to DIP Collateral, following the expiration of the DIP Remedies Notice Period, the DIP Agent shall be otherwise entitled to exercise rights and remedies under the DIP Loan Documents in accordance with this Final Order.

14.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived, as applicable, by the DIP Secured Parties in accordance with the terms of the DIP Loan Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>") under the applicable DIP

(Page | 74)

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Facility: (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order, (b) the failure of the Debtors to comply with any of the Required Milestones (as defined herein), (c) the occurrence of an "Event of Default" under the DIP Credit Agreement, or (d) the filing by the Debtors of a plan of reorganization or liquidation that does not provide for all DIP Obligations to be Paid in Full on the effective date of such plan.

15. <u>Milestones</u>. The Debtors' failure to comply with those certain case milestones attached hereto as **<u>Exhibit B</u>** (collectively, the "<u>Required Milestones</u>") shall constitute an "Event of Default" unless waived or extended in accordance with the terms of the DIP Credit Agreement.

16. <u>Application of Proceeds</u>. Other than as set forth in the DIP Loan Documents and this Final Order, all Collections received from the disposition or otherwise on account of DIP Collateral shall be, and in any event shall be deemed to be, subject to any agreement among the DIP Secured Parties, transferred to the DIP Agent on each business day and applied, in each case, subject to this Final Order and the Lien Priority Annex on each business day (and the DIP Agent is authorized to effectuate such transfers and application) as determined by the DIP Agent in accordance with the DIP Credit Agreement, including, without limitation, the repayment and refinancing of the Prepetition Revolving Obligations as set forth in the DIP Credit Agreement, the Interim Order, and this Final Order, including, as of the Interim Order Effective Date, the application of all Collections on account of DIP Collateral to the outstanding principal balance of

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

the Prepetition Revolving Loans in accordance with the DIP Credit Agreement, thereby creating a dollar-for-dollar increase in "Availability" as defined in the DIP Credit Agreement (the "Interim Roll-Up"). Upon entry of this Final Order, (i) all remaining Prepetition Revolving Obligations then outstanding on account of remaining Prepetition Revolving Loans and all accrued and unpaid interest thereon and fees and expenses relating thereto, shall be refinanced and repaid by and with Roll-Up DIP Revolving Loans and shall constitute DIP Revolving Obligations, and (ii) $180,000,000 of the Prepetition FILO Obligations then outstanding on account of Prepetition FILO Loans and all accrued and unpaid interest thereon and fees and expenses relating thereto, shall be refinanced and repaid by and with Roll-Up DIP FILO Loans and shall constitute DIP FILO Obligations. The extension of the DIP Facilities and the repayment and refinancing of the Prepetition ABL Obligations with proceeds of the Roll-Up DIP Loans as provided for herein are part of an integrated transaction.

17.   Cash Management.  Until such time as all DIP Obligations and Prepetition ABL Obligations are Paid in Full, unless otherwise agreed to by the DIP Agent and the Prepetition ABL Agent, the Debtors shall also maintain the cash management system in effect as of the Petition Date, as modified by this Final Order, any order of the Court authorizing the continued use of the cash management system that is acceptable to the DIP Agent, in accordance with the DIP Credit Agreement.  The Debtors shall not open any new deposit or securities account that is not subject to the liens and security interests of each of the DIP Secured Parties (in which case they shall be subject to the lien priorities and other provisions set forth in this Final Order).

(Page | 76)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

18.    <u>Rights and Remedies Upon Event of Default.</u>

(a)    Subject to the terms of the DIP Loan Documents, immediately upon the occurrence and during the continuation of an Event of Default under the applicable DIP Facility, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, subject to the DIP Remedies Notice Period, (i) the DIP Agent may declare in writing (any such declaration shall be referred to herein as a "<u>DIP Termination Notice</u>" and the date such DIP Termination Notice is delivered, the "<u>DIP Termination Date</u>"), with a copy of such DIP Termination Notice delivered to the Prepetition Agents, the Debtors, the lead counsel to the Committee, the lead counsel to the Ad Hoc Secured Noteholder Group and the U.S. Trustee (A) that all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (B) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the applicable DIP Facility, (C) termination of the DIP Facilities and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders but without affecting any of the DIP Liens or the applicable DIP Obligations, and (D) that the Carve Out shall be triggered, through the delivery of the Carve Out Trigger Notice as provided in paragraph 10 of this Final Order and (ii) subject to paragraph 10 of this Final Order, the DIP Agent may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral.

(Page | 77)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(b)     The automatic stay in the Cases otherwise applicable to the DIP Agent, the other DIP Secured Parties and the Prepetition Secured Parties is modified so that five (5) business days after the DIP Termination Date (the "DIP Remedies Notice Period"), (i) the DIP Agent shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents, this Final Order, and, with respect to DIP Collateral, the Prepetition Intercreditor Agreements, to satisfy the applicable DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out; and (ii) subject to the foregoing clause (i) and the Prepetition Intercreditor Agreements, the applicable Prepetition Secured Parties shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the applicable Prepetition Debt Documents and this Final Order.

(c)     The automatic stay in the Cases is further modified so that upon expiration of the DIP Remedies Notice Period, the DIP Agent shall retain the right to use the Cash Collateral for the sole purpose of conducting a sale of all or substantially all of the DIP Collateral on terms and conditions acceptable to the DIP Agent and the DIP Co-Collateral Agents.

(d)     During the DIP Remedies Notice Period, the Debtors, the Committee, and/or any party in interest shall be entitled to seek an emergency hearing within the DIP Remedies Notice Period, with the Court for the sole purpose of contesting whether an Event of Default has occurred or is continuing or for the contested use of Cash Collateral.  Except as set forth in this paragraph or otherwise ordered by the Court prior to the expiration of the DIP Remedies Notice Period, after the DIP Remedies Notice Period, the Debtors shall waive their right to and shall not

(Page | 78)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the other DIP Secured Parties, the Prepetition Agents, or the other Prepetition Secured Parties under this Final Order.  Unless the Court has determined that an Event of Default under the applicable DIP Facility has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the DIP Agent, the other DIP Secured Parties, the Prepetition Agents, and the other Prepetition Secured Parties shall automatically be terminated at the end of the DIP Remedies Notice Period without further notice or order.  Upon expiration of the DIP Remedies Notice Period, the DIP Agent and the Prepetition Secured Parties (in accordance in all respects with the applicable Prepetition Intercreditor Agreements and this Final Order) shall be permitted to exercise all remedies set forth herein, and in the DIP Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Final Order; provided, however, that, with respect to this section 18, the automatic stay shall remain in place and no party shall be entitled to exercise any rights or remedies if the Court has scheduled, or is in the process of scheduling, a hearing to determine whether an Event of Default has occurred or is continuing or for the contested use of Cash Collateral.

(e)      In addition, if a Specified Sale Process Default (as defined in the DIP Credit Agreement) occurs and is continuing, then the DIP Agent may direct the Debtors to commence a process for a sale of all of the DIP Collateral (the "Sales Process"), at which time: (i) within two business days after the DIP Remedies Notice Period expires, the Debtors must obtain entry of an

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

order from the Court, in form and substance approved by the DIP Agent and the DIP Co-Collateral

Agents, either (x) designating a stalking horse bidder for the DIP Collateral consented to by the

DIP Agent and the DIP Co-Collateral Agents and approving bidding and sales procedures with

respect to the Sales Process or (y) determining that a Specified Sale Process Default has not

occurred and/or is not continuing; (ii) within five business days after the DIP Remedies Notice

Period expires, complete an auction for the Sales Process and declare a "successful bidder" for the

Sales Process on terms and conditions consented to by the DIP Agent and the DIP Co-Collateral

Agents; (iii) within seven business days after the DIP Remedies Notice Period expires, obtain entry

of a final order from the Court, in form and substance acceptable to the DIP Agent and the DIP

Co-Collateral Agents, approving the Sales Process; and (iv) within ten business days after the DIP

Remedies Notice Period expires, execute an agency agreement approved by the DIP Agent and the

DIP Co-Collateral Agents in connection with the Sales Process and commence the Sales Process

pursuant to the approved agency agreement and the applicable order of this Court.  Until such time

as the Sales Process is complete and the proceeds of DIP Collateral have been remitted to the DIP

Agent for the benefit of the DIP Secured Parties, any exercise of remedies by the Prepetition

Secured Parties shall be in accordance with the applicable Prepetition Intercreditor Agreements

and this Final Order.  Such Sales Process is subject to extension by consent or Court order and is

subject to oversight by the Court.

(f)     Upon the occurrence and during the continuation of an Event of Default,

subject to the terms and conditions set forth in paragraph 18 of this Final Order, the DIP Agent

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

and any professional retained by the DIP Agent, will have the right to access and utilize (i) at no cost or expense, any trade names, trademarks, copyrights or other intellectual property and (ii) subject to the limitations in the preceding clause (e), any warehouse, distribution centers, store or other locations, in each case to the extent reasonably necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP Collateral including pursuant to any Court approved Sales Process.

19.    <u>Leased Premises</u>. Notwithstanding anything to the contrary in paragraph 18 of this Final Order, the DIP Secured Parties and Prepetition Secured Parties may only enter upon a leased premises of the Debtors following an Event of Default in accordance with (i) a separate written agreement among the DIP Secured Parties or Prepetition Secured Lenders and the applicable landlord for the leased premises, (ii) pre-existing rights of the DIP Secured Parties or Prepetition Secured Parties under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice to and an opportunity to be heard for the applicable landlord for the leased premises.

20.    <u>Limitation on Charging Expenses Against Collateral</u>.    No expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral of the DIP Secured Parties or the Prepetition ABL Secured Parties (except to the extent of the Carve Out), in each

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the applicable DIP Secured Parties and/or the Prepetition ABL Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition ABL Secured Parties.

21.    <u>Use of Cash Collateral</u>.  The Debtors are authorized, as of the Interim Order Effective Date, to use all Cash Collateral of the Prepetition Secured Parties and the DIP Secured Parties, but solely for the purposes set forth in this Final Order, including the Carve Out, and in accordance with the Approved Budget (subject to the Permitted Variance), including, without limitation, to make payments to the Prepetition ABL Agent on account of the Adequate Protection Obligations provided for in this Final Order, from the Interim Order Effective Date through and including the DIP Termination Date.

22.    <u>Expenses</u>.

(a)    The Debtors are authorized to pay, in accordance with this Final Order, the fees, payments, expenses, and other amounts described in the DIP Loan Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, backstop, fronting, closing, arrangement or commitment payments (including all payments and other amounts owed to the DIP Lenders), administrative agent's fees, collateral agent's fees, and escrow agent's fees (including all fees and other amounts owed to the DIP Agent), and, subject to the Approved Professional Fee Budget, the reasonable and documented fees and

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

disbursements of the DIP Advisors and the Pre-Petition ABL Advisors as contemplated by paragraphs 3(f)(2) and 9(c) of this Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final Order or the DIP Loan Documents. Notwithstanding the foregoing, the Debtors were authorized, as of the Interim Order Effective Date, to pay on the Closing Date all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Agent and the Prepetition ABL Agent, incurred on or prior to such date without the need for any professional engaged by the DIP Agent or the Prepetition ABL Agent to first deliver a copy of its invoice as provided for herein.

(b)     The Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations shall constitute the DIP Obligations. The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of the DIP Advisors to the extent provided for in the Approved Professional Fee Budget and paragraphs 3(f)(2) and 9(c) of this Final Order no later than ten days (the "Review Period") after the receipt by counsel for the Debtors, the Committee, and the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed; *provided* that the Debtors, the U.S. Trustee, and the Committee

(Page | 83)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

may request additional information regarding Invoiced Fees; *provided, further*, that invoice summaries for Invoiced Fees may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.  The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the Committee, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days prior written notice to the submitting party of any hearing on such motion or other pleading).  For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

23.     Indemnification.

(a)     The Debtors will indemnify the DIP Agent and each of the other DIP Secured Parties, and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person") and hold them harmless from and against all costs,

(Page | 84)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under either of the DIP Facilities, subject to and in accordance with the DIP Credit Agreement; *provided* that no such person will be indemnified for costs, expenses, or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the gross negligence, fraud, or willful misconduct of such person (or their related persons).  No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence, fraud, or willful misconduct or breach of their obligations under the applicable DIP Facility, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

(b)      *Prepetition ABL Indemnity Account*.  Upon entry of this Final Order, the Debtors shall pay to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, the sum of $2,000,000 into a non-interest bearing account maintained with the Prepetition ABL Agent (the "Prepetition ABL Indemnity Account") to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition ABL Documents (the "Prepetition ABL Indemnity Obligations").  The Prepetition

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

ABL Indemnity Account shall secure all costs, expenses, and other amounts (including, without limitation, reasonable and documented fees and expenses of the Prepetition ABL Secured Parties' attorneys and advisers) incurred by the Prepetition ABL Agent and the other Prepetition ABL Secured Parties in connection with or related to the Prepetition ABL Indemnity Obligations incurred responding to any (i) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge whether as contemplated in paragraph 12 hereof or otherwise, (ii) challenge or claim threatened, asserted or filed against the Prepetition ABL Agent or the other Prepetition ABL Secured Parties related to the Prepetition ABL Documents, the Prepetition ABL Claims, or the liens granted to the Prepetition ABL Agent, as applicable, whether in these Cases or independently in another forum, court, or venue, or (iii) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge in connection with or related in any way to any obligations arising under the Prepetition ABL Documents, these Cases, or any Successor Cases.  The Prepetition ABL Indemnity Obligations shall be secured by a first lien on the Prepetition ABL Indemnity Account and the funds therein and by a lien on the Prepetition Collateral (subject, in the case of the Prepetition Collateral only, in all respects to the priorities and terms of the applicable Prepetition Intercreditor Agreements, this Final Order, and the Lien Priority Annex).  Subject to the terms of this Final Order, the Prepetition ABL Agent, on behalf of itself and the other Prepetition ABL Secured Parties, may apply amounts in the Prepetition ABL Indemnity Account against the Prepetition ABL Indemnity Obligations as and

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court.  Until the Prepetition ABL Claims have been indefeasibly Paid in Full, (unless otherwise agreed to by the Prepetition ABL Agent), the Prepetition ABL Agent (for itself and on behalf of the other Prepetition ABL Secured Parties) shall retain and maintain the liens granted to the Prepetition ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Account; *provided*, that the retention of the liens granted to the Prepetition ABL Agent shall in all respects remain subject to the priorities and terms of the Prepetition Intercreditor Agreements, this Final Order, and the Lien Priority Annex; *provided, however*, that upon the indefeasible payment in full, in cash, of the Prepetition ABL Claims, the balance of the Prepetition ABL Indemnity Account, if any, shall be returned to the Debtors on or prior to the effective date of any chapter 11 plan.

(c)     *DIP Indemnity Account*.  Any claim or cause of action against the DIP Agent and/or any other DIP Secured Party arising out of or related to the Debtors, the DIP Obligations, DIP Loan Documents, or these Cases in any manner whatsoever must be filed in a court of competent jurisdiction on or before the earlier of the date on which the Court enters an order (i) approving the sale(s) of all or substantially all of the DIP Collateral on terms and conditions acceptable to the DIP Agent and the DIP Co-Collateral Agents or (ii) confirming a chapter 11 plan of reorganization or liquidation (such date, the "DIP Claim Deadline").  Any claim not brought by any party on or before the DIP Claim Deadline shall be forever barred and such

| Debtors: | NEW RITE AID, LLC, *et al*. |
| --- | --- |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

party shall be estopped and forever enjoined from asserting such claims. Upon entry of this Final Order, the Debtors shall pay to the DIP Agent a sum in the amount of $2,000,000 from proceeds of the DIP Collateral into a non-interest bearing indemnity account maintained with the DIP Agent (the "DIP Indemnity Account") subject to the liens of the DIP Agent, for the benefit of itself the other DIP Secured Parties, to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the DIP Loan Documents (the "DIP Indemnity Obligations"); *provided* that the liens securing the DIP Indemnity Obligations shall be subject to the priorities and terms of this Final Order and the Lien Priority Annex. Subject to the terms of this Final Order, the DIP Agent, on behalf of itself and the other DIP Secured Parties, may apply amounts in the DIP Indemnity Account against the DIP Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court. The DIP Indemnity Account shall be released and the funds applied in accordance with this Final Order upon the indefeasible payment in full, in cash of the DIP Obligations and the receipt by the DIP Agent and each of the other DIP Lenders of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP Credit Agreement and the other DIP Loan Documents, which release shall be acceptable to the DIP Agent.

24. No Third Party Rights. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

(Page | 88)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

25.     <u>Section 507(b) Reservation</u>.  Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties, to the extent applicable, is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties, to the extent applicable, that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties, to the extent applicable, against any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

26.     <u>Insurance</u>.  Except as subject to the terms of the Debtors' leases for non-residential real property and otherwise to the fullest extent provided by applicable law, until the DIP Obligations have been indefeasibly Paid in Full, at all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and otherwise in accordance with the DIP Loan Documents.  To the fullest extent provided by applicable law, the DIP Agent shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way related to the DIP Collateral; *provided* that the liens or rights granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property.

(Page | 89)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

27.     No Waiver for Failure to Seek Relief.  The failure or delay of the DIP Agent to exercise rights and remedies under this Final Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

28.     Perfection of the DIP Liens and Adequate Protection Liens.

(a)     The DIP Agent and each of the Prepetition Agents are authorized, but not required, to file or record any Security Document in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder; *provided* that to the extent any Prepetition Agent is a secured party under any Security Document, the DIP Agent shall also be deemed to be a secured party under each such Security Document and shall have all the rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received subject to the Carve Out and in accordance with the terms of this Final Order and the other DIP Loan Documents.  Whether or not the DIP Agent or the Prepetition Agents shall choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments to the extent permitted to do so under this paragraph, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not, subject to the Challenge Period, subject to challenge, dispute, or subordination as of the Interim Order Effective Date.  If the DIP Agent or any Prepetition Agent determines to file or execute any financing statements, agreements, notice of liens, or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

reasonably requested by the DIP Agent or the applicable Prepetition Agent, as applicable, and the automatic stay shall be deemed modified to allow such filings.

(b)     A certified copy of this Final Order may be filed with or recorded in filing or recording offices, or with any registry of deeds or similar office, by the DIP Agent or the Prepetition Agents in addition to or in lieu of filing any Security Document, and all filing offices are authorized to accept such certified copy of this Final Order for filing and recording; *provided* that, notwithstanding the date of any such filing, the date of such perfection shall be the Interim Order Effective Date.

(c)     Any provision of any lease (except for nonresidential real property leases) or other license, contract or other agreement that requires (i) the consent or approval of one or more parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law.  Any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Final Order, subject to applicable law.

29.     <u>Release</u>.  Subject to the rights and limitations set forth in paragraph 12 of this Final Order, as of the Interim Order Effective Date, each of the Debtors and the Debtors' estates, on its

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

own behalf and on behalf of each of their predecessors, their successors, and assigns, to the

maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever

released, remised, acquitted, relinquished, irrevocably waived, and discharged each of the

DIP Secured Parties and the Prepetition Secured Parties, and each of their respective affiliates,

former, current, or future officers, employees, directors, agents, representatives, owners, members,

partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants,

attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such, of and

from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action,

indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies,

proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type,

whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued,

fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable

theories of recovery, arising under common law, statute, or regulation or by contract, of every

nature and description that exist on the date hereof with respect to or relating to the DIP

Obligations, the DIP Liens, the DIP Loan Documents, the Prepetition Secured Obligations, the

Prepetition Liens, or the Prepetition Debt Documents, as applicable, including, without limitation,

(a) any so-called "lender liability" (or equivalent supplier liability concept) or equitable

subordination claims or defenses, (b) any and all claims and causes of action arising under the

Bankruptcy Code, and (c) any and all claims and causes of action regarding the validity, priority,

extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties

(Page | 92)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

and the Prepetition Secured Parties; *provided* that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Loan Documents.

30.     Credit Bidding.  Subject to the terms of the DIP Loan Documents, the DIP Agent, and, subject to the terms of the Prepetition Debt Documents, including, without limitation, the Prepetition Intercreditor Agreements, the Prepetition Agents, shall each have the right to credit bid (either directly or through one or more acquisition vehicles), on a dollar-for-dollar basis up to the full amount of the underlying secured creditors' respective claims, including any accrued interest and expenses, in any sale (including any deposit in connection with such sale) of all or any portion of the DIP Collateral or the Prepetition Collateral including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan, including chapter 11 plans subject to confirmation under section 1129(b)(2)(A)(ii) or (iii) of the Bankruptcy Code, and any sale or disposition by a chapter 7 trustee for any of the Debtors, including under sections 363 or 725 of the Bankruptcy Code; *provided* that the ability for the DIP Agent or Prepetition Agents, as applicable, to credit bid all or any portion of the underlying secured creditors' respective claims for all or any portion of the DIP Collateral or the Prepetition Collateral shall, in each case, be subject to (i) section 363(k) of the Bankruptcy Code and (ii)(a) the payment in full, in cash of any claims secured by senior liens on such collateral or (b) agreement by the DIP Agent or applicable Prepetition Agent holding senior liens on such collateral to alternative treatment under any order approving such credit bid.

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

31.     <u>Preservation of Rights Granted Under this Final Order</u>.

(a)     *Prohibition on Actions by Prepetition Secured Parties.* Unless and until all DIP Obligations are indefeasibly Paid in Full, and all DIP Revolving Commitments are terminated, the Prepetition Secured Parties shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Debt Documents, the Interim Order or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral; and (ii) not file any further Security Document or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in paragraphs 28 and 31 herein.

(b)     *Survival Under Section 364(e).* In the event this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Prepetition Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.

(c)     *Debtors' Waivers.* Unless and until all DIP Obligations, Prepetition Secured Obligations, and Adequate Protection Payments are indefeasibly Paid in Full, (unless otherwise agreed to by the DIP Agent, the DIP Co-Collateral Agents and the Prepetition Agents), and all DIP

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Revolving Commitments are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Loan Documents or, if not provided for therein, with the prior written consent of the DIP Agent and the DIP Co-Collateral Agents, and, solely to the extent the Prepetition Secured Obligations remain outstanding and not otherwise prohibited by the Prepetition Intercreditor Agreements, the Prepetition Agents, (x) any modification, stay, vacatur, or amendment of this FinalOrder, the DIP Loan Documents, the Prepetition Debt Documents, or any restructuring support agreement that the Debtors have or may enter into or (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases, *pari passu* with or senior to the DIP Superpriority Claims, Adequate Protection Superpriority Claims, or the Prepetition Secured Obligations, or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Loan Documents and this Final Order (including the Carve Out), any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens, or the Prepetition Liens, as applicable; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Loan Documents and this Final Order; and (iv) except as set forth in the DIP Loan Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor.

(Page | 95)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(d)    *Survival.* Except as expressly provided in this Final Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Agent, the other DIP Secured Parties, and the Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order and the DIP Loan Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral, any DIP Collateral, or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Loan Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of the Interim Order and this Final Order shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are indefeasibly Paid in Full and the DIP Revolving Commitments have been terminated.

(Page | 96)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

32.    <u>Limitation on Use of Proceeds of DIP Facilities, Collateral, and Cash Collateral</u>.

Notwithstanding anything to the contrary set forth in this Final Order, none of the DIP Facilities, the DIP Collateral, or the Prepetition Collateral, including Cash Collateral, or the Carve Out or proceeds thereof may be used: (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such), and each of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" (or equivalent supplier liability concept) claims and causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such) under the DIP Loan Documents, the Prepetition Debt Documents, the Interim Order or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Committee in connection with the assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration,

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

or similar relief that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties to recover on the DIP Collateral or the Prepetition Collateral, as applicable, or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition Secured Parties related to the DIP Obligations or the Prepetition Secured Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Prepetition Secured Obligations, the DIP Agent's, the other DIP Secured Parties', or the Prepetition Secured Parties' liens or security interests in the DIP Collateral or the Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties, or the DIP Agent's, the other DIP Secured Parties', or the Prepetition Secured Parties' respective liens on or security interests in the DIP Collateral, or the Prepetition Collateral, as applicable, that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition Secured Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Secured Obligations, or by or on behalf of the DIP Agent and the other DIP Secured Parties related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Prepetition Secured Obligations, or the Prepetition Liens; or (d) for prosecuting

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of:  (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the other DIP Secured Parties related to the DIP Obligations or the DIP Liens, or (y) any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Prepetition Secured Obligations or the Prepetition Liens, *provided* that no more than $200,000 of the proceeds of the DIP Facilities, the DIP Collateral, or the Prepetition Collateral, including the Cash Collateral, in the aggregate, may be used by the Committee solely to investigate, within the Challenge Period, the claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties.

33.    <u>Conditions Precedent</u>.  Except as provided for in the Carve Out, no DIP Lender shall have any obligation to make any DIP Loan or other extension of credit under the DIP Loan Documents unless all of the conditions precedent to the making of such DIP Loan or other extensions of credit under the DIP Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.

34.    <u>Intercreditor Provisions</u>.  Pursuant to section 510 of the Bankruptcy Code, any applicable intercreditor or subordination provisions contained in any of the Prepetition Debt Documents (including, for the avoidance of doubt, the Prepetition Intercreditor Agreements) shall remain in full force and effect; *provided* that nothing in this Final Order shall be deemed to provide liens to any Prepetition Secured Party or any DIP Secured Party on any assets of the Debtors except as set forth herein; *provided*, *further*, that to the extent there exists any conflict among the terms

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

and conditions of the Prepetition Debt Documents and this Final Order, the terms and conditions of this Final Order shall govern and control.

35.     <u>Binding Effect; Successors and Assigns</u>.     The DIP Loan Documents and the provisions of the Interim Order and this Final Order, including all findings therein and herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties and the applicable Prepetition Secured Parties; *provided* that, except to the extent expressly set forth in this Final Order, the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

36.     <u>Amendments of the DIP Loan Documents</u>. The DIP Loan Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material or non-adverse to the Debtors and (b) in accordance with the DIP Loan Documents. In the case of a material amendment, modification, or supplement to the DIP Loan Documents, the Debtors shall provide notice (which shall be provided through electronic mail) to counsel to the Committee, the U.S.

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Trustee and counsel to the Ad Hoc Secured Noteholder Group, and each of the Committee and the U.S. Trustee shall have five (5) days from the date of such notice to object in writing to such amendment, modification, or supplement, and shall also provide five (5) days' notice of such material amendment, modification, or supplement to the DIP Loan Documents to lead counsel to the McKesson Secured Parties. If each of the Committee and the U.S. Trustee indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If either of the Committee or the U.S. Trustee timely objects to such amendment, modification or supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; provided that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard. Any material modification, amendment, or supplement that becomes effective in accordance with this paragraph shall be filed with the Court.

37.    <u>Limitation of Liability</u>.  In determining to make any loan under the DIP Loan Documents, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in the Interim Order, this Final Order or in the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any other DIP Secured Party, or any Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors or any fiduciary duties owed to the Debtors, their respective creditors, shareholders, or estates.

38.     <u>No Requirement to File Claim for DIP Obligations</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent, the DIP Co-Collateral Agents, nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's, the DIP Co-Collateral Agent's, or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Loan Documents, this Final Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

39.     <u>No Requirement to File Claim for Prepetition Secured Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, none of the Prepetition Agents or any other Prepetition Secured Parties shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Secured Obligations or any obligations payable to such party pursuant to the 2024 Confirmation Order, to the extent applicable; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition Debt Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect either of the Prepetition Agent's or any other Prepetition Secured Party's rights, remedies, powers, or privileges under any of the Prepetition Debt Documents, this Final Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

40.     <u>No Marshaling</u>.  Neither the DIP Agent nor any of the other DIP Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect

| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to this Final Order and the DIP Loan Documents, notwithstanding any other agreement or provision to the contrary. Subject to entry of this Final Order, the Prepetition ABL Agent and the other Prepetition ABL Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.

41. <u>Equities of the Case</u>. The DIP Secured Parties and the Prepetition ABL Secured Parties shall each be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code, and, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition ABL Secured Parties with respect to proceeds, product, offspring, or profits of any of the DIP Collateral, or Prepetition Collateral.

42. <u>Employee Expenses.</u>

(a) As of the Interim Order Effective Date, the Debtors established a segregated non-interest-bearing account with a bank that is party to a uniform depository agreement with the U.S. Trustee subject to the control of the DIP Agent (the "<u>Employee Expenses Account</u>"). The Debtors shall utilize cash on hand, including Collections, to fund the Employee Expenses Account in an amount sufficient to satisfy the liabilities set forth in the line items set forth in the Approved Budget titled Specified Expense Reserve Funding (collectively, the "<u>Employee Expenses</u>"). The Debtors shall fund the Employee Expenses into the Employee Expenses Account in accordance with the Approved Budget (and, for the avoidance of doubt, at the times set forth in the Approved Budget) or in an amount to satisfy such obligations and at a time otherwise agreed to by each of the Debtors,

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

the DIP Agent, and the Required DIP Co-Collateral Agents.  Solely to the extent that the Debtors are unable to fully fund any such Employee Expenses into the Employee Expenses Account from cash on hand, including Collections, in accordance with the foregoing sentence, proceeds from the DIP Facilities shall be used to fund any shortfall in accordance with the Approved Budget, which funding may be in the form of additional DIP Loans, and shall be made available notwithstanding the occurrence of any Default or Event of Default under the DIP Credit Agreement or the conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code.  Amounts held in the Employee Expenses Account shall be solely used by the Debtors to pay the relevant Employee Expenses (on account of which such funds were deposited) in the amounts and on the dates set forth in the Approved Budget; *provided* that, to the extent the Debtors pay Employee Expenses from a source other than the Employee Expenses Account or the relevant Employee Expenses (on account of which such funds were deposited) are otherwise satisfied (including for an amount less than the amount budgeted), the Debtors shall release an amount from the Employee Expenses Account to the DIP Agent for application as set forth below (provided that the Debtors shall be permitted to retain any portion of  the remaining balance in the Employee Expenses Account that is sufficient to pay the remaining applicable Employee Expenses on account of which such funds were deposited).  Notwithstanding anything to the contrary in the Prepetition Debt Documents, the DIP Loan Documents, the Interim Order or this Final Order, the DIP Agent, the DIP Co-Collateral Agents and the Prepetition ABL Agent shall not sweep or foreclose on cash in the Employee Expenses Account, including as a result of any Event of Default under the DIP Loan

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Documents or any exercise of remedies by any DIP Secured Party, but shall (x) have a security interest in any residual interest in the Employee Expenses Account following the payment of all Employee Expenses set forth in the Initial Approved Budget and (y) be entitled to return of any excess amounts as set forth above.

(b)     All funds in the Employee Expenses Account shall be used first to pay the Employee Expenses (on account of which such funds were deposited) until paid in full, and if the Employee Expenses Account (on account of which such funds were deposited) has not been reduced to zero thereafter, all remaining funds maintained in the Employee Expenses Account on account of the applicable Employee Expenses shall be distributed first to the DIP Agent for application in accordance with the DIP Loan Documents.  The failure of the Employee Expenses Account to satisfy in full the Employee Expenses shall not be construed as a cap or limitation on the amount of the Employee Expenses due and payable by the Debtors.

(c)     Except as expressly set forth herein, in no event shall the cash on deposit in the Employee Expenses Account be distributed, whether in the Cases or any Successor Case or by any person, including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case, other than to pay the Employee Expenses set forth in the Approved Budget or, following the payment in full in cash of all Employee Expenses, in accordance with the foregoing paragraph (b).

| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(d)      Notwithstanding anything to the contrary in the Interim Order, this Final Order or the DIP Loan Documents, the Approved Budget may not be amended, restated, amended and restated, supplemented, extended, replaced or otherwise modified to reduce the amount of the Employee Expenses Account or the Employee Expenses payable thereunder or to delay the timing of any such payments without, in each case, the consent of each of the Debtors and the board of directors of Parent, and no updated Approved Budget shall be unacceptable to any of the DIP Agent, the Required DIP Co-Collateral Agents or any DIP Secured Party solely because of the amount of funding to the Employee Expenses Account, the payment of the Employee Expenses or the timing of such payment (other than, for the avoidance of doubt in each case, to reflect amounts that have been satisfied); provided that such amounts are consistent with the amounts set forth in the Initial Approved Budget.  For the avoidance of doubt, the obligation to fund the Employee Expenses into the Employee Expenses Account in accordance with this paragraph 42 shall survive, and shall not be modified, impaired, or discharged by the occurrence of any Event of Default under the DIP Loan Documents or Prepetition Debt Documents, the exercise of remedies by any DIP Secured Party or Prepetition Secured Party, or the conversion of any of the Cases to cases under chapter 7; *provided* that the Debtors are authorized to appoint an authorized representative to enforce this provision of the DIP Order for the benefit of the parties to which the Employee Expenses are owed.

(e)      Following the DIP Termination Date, including during the Remedies Notice Period, the Debtors shall be permitted to make disbursements from the Employee Expenses Account to

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

fund Employee Expenses in advance of the dates such payments are due under the Initial Approved Budget.

(f)     The DIP Agent shall at all times maintain a reserve (the "Employee Expenses Reserve") against the Total Revolving Commitments (as defined in the DIP Credit Agreement) in an amount not to exceed, at any time of determination, the total amount of Employee Expenses set forth in the Initial Approved Budget; *provided* that the Employee Expenses Reserve shall be reduced on a dollar-for-dollar basis as and when a claim for Employee Expenses is satisfied or, without duplication, the amounts necessary to satisfy the Employee Expenses are funded into the Employee Expenses Account in accordance with this paragraph 42.

43.     Surety Collateral.  Notwithstanding anything to the contrary set forth in the Motion, the DIP Documents, the Interim Order, or this Final Order, nothing therein or herein shall be deemed to limit, impair, or prime the rights or interests of any Surety in any letters of credit, or any other collateral or the proceeds of such collateral, securing the existing Surety Bonds and the existing Surety Indemnity Agreements (the "Surety Collateral"), including, without limitation, the right to draw or use any Surety Collateral to reimburse any claim of such Surety under or in respect of the Surety Collateral.[8]

44.     McKesson Reserve Account.

---

[8]   Capitalized terms used but not defined in this paragraph have the meanings ascribed to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief* [Docket No. 11].

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

(a)    Upon entry of the Final Order, the DIP Agent shall at all times maintain a reserve

(the "McKesson Reserve") against the Total Revolving Commitments (as defined in the DIP Credit

Agreement) in an amount equal to $49,674,910.00 (the "McKesson Reserve Amount").  If and

when the Court determines that the May 5 Wire Amount[9] was a prepetition payment and is not

recoverable as a preferential transfer, then, within five (5) business days thereafter (the "Non-

Accelerated Funding Deadline") and otherwise in accordance with the terms of the Court order

making such determinations, the Debtors shall pay to McKesson the McKesson Reserve Amount

pursuant to paragraph 6 of the McKesson Dispute Stipulation; provided, however, that if an

Accelerated Funding Trigger Event (as defined below) occurs, the Debtors shall fund the

McKesson Reserve Amount into a segregated noninterest-bearing account with a bank that is party

to a uniform depository agreement with the U.S. Trustee subject to the control of the DIP Agent

(the "McKesson Reserve Account") by the Accelerated Funding Deadline (as defined below) or

an amount to satisfy such obligations and at a time otherwise agreed to with respect to such

McKesson Reserve Account by each of the Debtors, McKesson, the DIP Agent, and the Required

DIP Co-Collateral Agents.  The "Accelerated Funding Deadline" means the earlier of the

following deadlines, if applicable: (a) if any of the Cases converts to a case under chapter 7 of the

---

[9] "May 5 Wire Amount" shall have the meaning given to such term in the *Stipulation and Agreed Order Between Debtors, DIP Agent, the Official Committee of Unsecured Creditors and McKesson Corporation (I) Scheduling Certain Dates and Deadline in Connection With the Motion of McKesson Corporation for Entry of an Order (A) Allowing Administrative Expense Claim, (B) Compelling Immediate Payment Thereof, and (C) Granting Related Relief, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [Docket No. 672] (the "McKesson Dispute Stipulation").

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Bankruptcy Code (a "Conversion Funding Trigger Event"), prior to conversion or (b) if the DIP Termination Date occurs (a "DIP Termination Funding Trigger Event," and together with any Conversion Funding Trigger Event, the "Accelerated Funding Trigger Events," and each an "Accelerated Funding Trigger Event"), within five (5) business days after such DIP Termination Funding Trigger Event. Solely to the extent that the Debtors are unable to fully fund the payment of the McKesson Reserve Amount to McKesson or into the McKesson Reserve Account, as applicable, from cash on hand, including Collections, by the earlier of the Non-Accelerated Funding Deadline or the Accelerated Funding Deadline, as applicable, in accordance with the foregoing sentence, proceeds from the DIP Facilities shall be used to fund any shortfall, which funding may be in the form of additional DIP Loans, and shall be made available notwithstanding the occurrence of any Default or Event of Default under the DIP Credit Agreement or any Accelerated Funding Trigger Event. Amounts held in the McKesson Reserve Account shall be solely used by the Debtors to pay the McKesson Reserve Amount (on account of which such funds were deposited) in accordance with the applicable order of this Court; provided that, to the extent the McKesson Reserve Account is established and the Debtors pay the McKesson Reserve Amount from a source other than the McKesson Reserve Account or the McKesson Reserve Amount (on account of which such funds were deposited) is otherwise satisfied, the Debtors shall release an amount from the McKesson Reserve Account to the DIP Agent for application as set forth below (provided that the Debtors shall be permitted to retain any portion of the remaining balance in the McKesson Reserve Account that is sufficient to pay any remaining applicable McKesson Reserve

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Amount on account of which such funds were deposited). Notwithstanding anything to the contrary in the Prepetition Debt Documents, the DIP Loan Documents, or this Final Order, the DIP Agent, the DIP Co-Collateral Agents and the Prepetition ABL Agent shall not sweep or foreclose on cash in the McKesson Reserve Account, including as a result of any Event of Default under the DIP Loan Documents or any exercise of remedies by any DIP Secured Party, but shall (x) have a security interest in any residual interest in the McKesson Reserve Account following the payment of all of the McKesson Reserve Amount determined by the Court to be payable to McKesson and (y) be entitled to return of any excess amounts as set forth above.

(b)     All funds in the McKesson Reserve Account shall be used first to pay the McKesson Reserve Amount (on account of which such funds were deposited) until paid in full, and if the McKesson Reserve Account (on account of which such funds were deposited) has not been reduced to zero thereafter, all remaining funds maintained in the McKesson Reserve Account on account of the McKesson Reserve Amount shall be distributed first to the DIP Agent for application in accordance with the DIP Loan Documents. The failure of the McKesson Reserve Account to satisfy in full the McKesson Reserve Amount shall not be construed as a cap or limitation on the amount of the McKesson Reserve Amount due and payable by the Debtors.

(c)     Except as expressly set forth herein, in no event shall the cash on deposit in the McKesson Reserve Account be distributed, whether in the Cases or any Successor Case or by any person, including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

other estate representative appointed or elected in any Successor Case, other than to pay the McKesson Reserve Amount in accordance with the applicable order of this Court or, following the payment in full in cash of all of the McKesson Reserve Amount, in accordance with the foregoing paragraph (b).

(d)     For the avoidance of doubt, the obligation to fund the McKesson Reserve Amount into the McKesson Reserve Account in accordance with this paragraph 44 shall survive, and shall not be modified, impaired, or discharged by the occurrence of any Event of Default under the DIP Loan Documents or Prepetition Debt Documents, the exercise of remedies by any DIP Secured Party or Prepetition Secured Party, or the occurrence of any Accelerated Funding Trigger Event; provided that McKesson may directly enforce this provision of the DIP Order for its benefit.

(e)     Nothing in this Final Order, including in this paragraph 44, shall enhance, limit waive or otherwise modify any of the terms or conditions, or any of the rights or obligations of any of the parties, under the ABL/1.5L/McKesson Intercreditor Agreement.

45.     <u>American Greetings Matters.</u> Notwithstanding anything contained in this Final Order to the contrary, the DIP Liens shall not encumber, nor shall the Prepetition Collateral (including any Cash Collateral) be deemed to include, (a) the interests of American Greetings Corporation ("<u>AGC</u>") or Papyrus-Recycled Greetings, Inc. ("<u>PRG</u>" and, together with AGC, "<u>American Greetings</u>") in products supplied by American Greetings (collectively, the "<u>AG Products</u>") in the Debtors' possession that were or are hereafter supplied by American Greetings pursuant to that certain Supply Agreement, dated February 24, 2022, as amended by that certain

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

First Amendment to Supply Agreement, and as further amended by that certain Stipulation and Agreed Order Resolving Claims and Cure Objection Filed by American Greetings Corp. and Papyrus-Recycled Greetings, Inc. [Case No. 23-18993, Docket No. 4501] (collectively, the "AG SBT Agreement"), by and among Rite Aid Hdqtrs. Corp., the Bartell Drug Company, AGC and PRG, or (b) the portion of the proceeds from the sale of the AG Products to which American Greetings is entitled under the AG SBT Agreement (the "AG Sale Proceeds"). The Debtors are hereby authorized and directed to continue to remit the AG Sale Proceeds to American Greetings pursuant to the terms of the AG SBT Agreement; provided that nothing herein shall be deemed to constitute any assumption by the Debtors of the AG SBT Agreement, with the Debtors and American Greetings reserving all of their rights with respect thereto under 11 U.S.C. § 365.

46.   Western Union Matters. Notwithstanding anything to the contrary in this Final Order and the DIP Documents, no liens or claims of any priority, including but not limited to the DIP Liens, the Adequate Protection Superpriority Claims, and any other liens or claims granted under this Final Order, shall be recoverable from or attach to the Trust Funds, the Trust Account, the Equipment (each as defined in the Agency Agreement (as defined below)) and any other Western Union (as defined below) property held or controlled by the Debtors, or otherwise described, as more fully set forth in that certain Western Union North America Agency Agreement (the "Agency Agreement") between certain of the Debtor parties and Western Union Financial Services, Inc. ("Western Union"), all of which shall remain unencumbered notwithstanding the entry of this Final Order. For the avoidance of doubt, and to the extent necessary, any and all

| Debtors: | NEW RITE AID, LLC, *et al*. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

reconciliations and payments by the parties under the Agency Agreement performed and made after the Petition Date (including those covering any prepetition periods) pursuant to the Agency Agreement were and shall be deemed authorized under this Final Order. Furthermore, nothing in this Final Order shall restrict or otherwise impair the parties' rights and obligations under the Agency Agreement, including but not limited to Western Union's ability to take any Remedial Action (as defined in the Agency Agreement).

47. <u>Haleon Matters.</u> Nothing in the Interim Order or this Final Orders or the DIP Credit Agreement shall in any way prime, affect or impact the rights of Haleon US Services, Inc. f/k/a GSK Consumer Healthcare Services Inc. (individually and collectively as "<u>Haleon</u>") as to Haleon's current or future setoff and/or recoupment rights regarding any credits and/or chargebacks provided by Haleon to any of the Debtors (including but not limited to Loyalty and/or Co-op Funding, Feature Ad Costs and/or other promotional costs associated with Haleon brands as well as any other type of credit Rite Aid may assert).

48. <u>Chubb Matters.</u> For the avoidance of doubt, (a) the Debtors shall not grant liens and/or security interests in (i) any property received and/or held by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their predecessors and successors, and solely in their roles as insurers, "<u>Chubb</u>") in accordance with the terms of any insurance policy, security agreement, or any related agreement, instrument or document, or (ii) any insurance policy issued by Chubb; (b) this Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

secure obligations under insurance policies and related agreements; (c) the proceeds of (i) any insurance policy issued by Chubb and (ii) any property held by Chubb as collateral to secure obligations under insurance policies and related agreements shall only be considered to be collateral of the DIP Secured Parties to the extent such proceeds or property are payable to the Debtors pursuant to the terms of any such applicable insurance policy, security agreement or any related agreement, instrument or document, or otherwise, as applicable; provided, however, that the Debtors shall pursue any such claim for insurance proceeds or request for property in accordance with the terms of the applicable insurance policy, security agreement or any related agreement, instrument or document; provided, further that Chubb shall not have any duty to effectuate any turnover of such property or payment of such insurance proceeds directly to the DIP Agent, for the benefit of itself and the DIP Secured Parties, or any other third party; (d) nothing, including subpart (c) hereof, the DIP Documents and/or this Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb; and (e) Chubb shall have the right, consistent with the terms and conditions of any insurance policies or related agreements issued by Chubb, to draw on and apply collateral, including cash collateral held by Chubb, and, to the extent necessary, the automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit such.

49. <u>Stub Rent</u>.

(a)     Notwithstanding anything to the contrary herein, the Debtors shall pay their postpetition contractual rent obligations to their applicable landlords for the period of the Petition

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

Date to May 31, 2025 in an aggregate amount not to exceed $23,388,878.00 ("Stub Rent Claims")

pursuant to the terms of this paragraph 49.

(b)    The Debtors shall establish an escrow account or segregated account

(the "Stub Rent Escrow Account") to hold an amount equal to the Stub Rent Claims payable by

the Debtors to their applicable landlords (which cash shall remain part of the DIP Collateral,

Prepetition Collateral and subject to the Prepetition Liens and the Adequate Protection Liens until

payment of the Stub Rent Claims (or release thereof) in accordance with the terms of this paragraph

49).  The Debtors shall deposit (i) $4,677,775.60 by no later than the week beginning July 6, 2025,

(ii) $4,677,775.60 by no later than the later of July 15, 2025 and the CVS Motion Resolution

Date,[10] (iii) $4,677,775.60 by no later than the later of August 2, 2025 and the CVS Motion

Resolution Date, (iv) $4,677,775.60 by no later the later of than August 16, 2025 and the CVS

Motion Resolution Date, and (v) $4,677,775.60 by no later than August 30, 2025.

(c)    The Debtors shall use the amounts held in the Stub Rent Escrow Account

to solely pay the applicable Stub Rent Claims for which such deposit was made on the later of

(x) August 31, 2025 and (y) the date that the applicable lease is assumed and assigned or a notice

---

[10]    The "CVS Motion Resolution Date" shall mean the earliest of (a) the date on which the Court enters an order on the *Debtors' Emergency Motion to Enforce the Sale Order and Compel Performance by CVS Pharmacy, Inc. under the CVS Asset Purchase Agreement* [Docket No. 1332] (the "CVS Motion") that results in a ruling that requires payments under the APAs (as defined in the CVS Motion) to be determined in a manner consistent with the calculation of projected receipts thereunder set forth in the Subsequent Post-Auction Budget Update, (b) the date on which the CVS Motion is resolved in a manner otherwise reasonably satisfactory to the DIP Agent, and (c) subject to the following proviso, the earlier of (i) 14 days after a resolution on the CVS Motion and (ii) August 30, 2025; *provided*, *however*, that to the extent the Court enters an order on the CVS Motion or the CVS Motion is otherwise resolved among the Debtors and CVS on or before August 2, 2025, the CVS Motion Resolution Date shall be August 15, 2025.

(Page | 116)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

to reject such lease is filed in accordance with *Final Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 776] (the "Rejection Procedures Order"), including, for the avoidance of doubt, on or after the DIP Termination Date; provided that the Debtors shall be authorized, but not directed, to release amounts from the Stub Rent Escrow Account prior to such date with the consent of the DIP Agent to make payments on Stub Rent Claims.  The amount on deposit in the Stub Rent Escrow Account shall be subject to reduction (or release) on a weekly basis to account for any satisfaction in respect of any portion of Stub Rent Claims benefitting from the Stub Rent Escrow Account, including in connection with any assumptions and assignments of leases or other lease dispositions.  The Stub Rent Escrow Account shall in no event have more than the then net outstanding Stub Rent Claims and any amounts in excess thereof shall be released from the Stub Rent Escrow Account and returned to the Debtor for application to the DIP Obligations.

(d)      The Debtors shall not use the cash on deposit in the Stub Rent Escrow Account for any other purpose other than in accordance with this paragraph 49, and the DIP Secured Parties and the Prepetition Secured Parties shall not be permitted to sweep or foreclose on the Stub Rent Escrow Account or the amounts on deposit therein (other than as set forth in this paragraph 49 to the extent the Stub Rent Claims are otherwise satisfied).  For so long as the Debtors remain in compliance with this paragraph 49, each of the Debtors' landlords and the Committee shall not seek any additional relief with respect to the Stub Rent Claims, including accelerated payment of such amounts, adequate protection with respect to such amounts, or any claims to

(Page | 117)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

recover the Stub Rent Claims from the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, the DIP Collateral or the Prepetition Collateral.

(e)     The Debtors shall fund the Stub Rent Escrow Account in accordance with this paragraph 49 and the Approved Budget, and this Order and the Approved Budget may not be amended, updated or replaced to alter the treatment or timing of the payment of Stub Rent Claims as to any unexpired lease of nonresidential real property, including to withhold payment of any Stub Rent Claim, without the consent of the applicable landlord.

(f)     The Debtors shall continue to comply with section 365(d)(3) of the Bankruptcy Code, including by timely paying in accordance with the applicable leases all postpetition obligations arising under unexpired leases of nonresidential real property (the "Post-Petition Lease Obligations") until the earlier of (i) the assumption and assignment of such lease or (ii) the rejection of such lease, and such payment obligations shall include rent, common area maintenance charges, taxes, and other amounts due under the applicable lease (but, for the avoidance of doubt, shall exclude Stub Rent Claims, which are addressed as set forth above) and shall be consistent with the Debtors' existing Approved Budget. The Debtors shall pay all Post-Petition Lease Obligations in accordance with the Approved Budget, and the Approved Budget may not be amended, updated or replaced to alter the treatment or timing of the payment of Post-Petition Lease Obligations, including to withhold payment of any Post-Petition Lease Obligations, without the consent of the applicable landlord; provided that the Approved Budget may be

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

amended, updated, or replaced to reflect the rejection of leases in accordance with the Rejection Procedures Order.

50.     <u>TRC Master Fund LLC</u>. Nothing in this Final Order or any document related thereto, including the DIP Loan Documents and the Approved Budget (and any variations thereof), shall prohibit or otherwise hinder or restrict the Court from ordering (a) the payment of the administrative expense claim awarded to TRC Master Fund LLC by order of the Court entered on April 25, 2025 in *In re Rite Aid Corporation*, Case No. 23-18993 (MBK) (Bankr. D.N.J. 2023) [Docket No. 5897] or (b) any other relief related thereto.

51.     <u>Centerbridge Matters</u>. Notwithstanding anything to the contrary in this amended Final Order or otherwise, all of the rights, claims, and objections of Centerbridge Special Credit Partners IV Master, L.P. ("<u>Centerbridge</u>") with respect to the relief requested in the *Debtors' Application in Lieu of Motion for Entry of Amended Final DIP Order* [Docket No. 2288] (the "<u>Application</u>") are hereby reserved and may be raised by Centerbridge in any context, including, without limitation, in connection with this Court's consideration of the *Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2286] (the "<u>Plan</u>"). The foregoing reservation of rights includes, among other things, Centerbridge's right to argue, at any confirmation hearing or otherwise, that the relief sought by the Application is legally impermissible. In addition, all of the rights, claims, arguments, and objections of Centerbridge with respect to the Debtors' Plan are hereby reserved, including, without limitation, all arguments and objections to confirmation of the Plan as a DIP Lender, including that the

(Page | 119)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

administrative expense claim of each DIP Lender must be satisfied in full in cash unless otherwise agreed by such DIP Lender in accordance with section 1129(a)(9) of the Bankruptcy Code. In addition, none of the DIP FILO Loans held by Centerbridge will be affected by this amendment of the Final DIP Order (*e.g.*, none of the DIP FILO Loans held by Centerbridge may be characterized as Prepetition FILO Loans).

52. Upon entry of this Order, the Debtors, Committee and DIP Lenders agree to work in good faith to reach agreement on the material terms to find a successful resolution of these Chapter 11 Cases.

53. <u>No Superior Rights of Reclamation.</u> The extension of the DIP Facilities and the repayment and refinancing of the Prepetition ABL Obligations with the proceeds of the Roll-Up DIP Loans are part of an integrated transaction. Based on the integrated nature of the DIP Facilities and the Prepetition ABL Loans and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have any additional or greater rights and priority with respect to the Prepetition ABL Liens as such claim had on the Petition Date.

54. <u>No Requirement to Lend in Excess of DIP Revolving Commitments</u>. Notwithstanding anything to the contrary herein or in any DIP Loan Documents, the DIP Agent, the DIP Co-Collateral Agents, and the DIP Lenders shall not be required to lend in excess of their DIP Revolving Commitments (if any).

(Page | 120)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief |

55.     <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

56.     <u>Rights Reserved to Move for Modification Under Local Rules</u>. Any party may move for modification of this Final Order in accordance with Local Rule 9013-5(e).

57.     <u>Continuing Effect of Prepetition Intercreditor Agreement</u>.  Each of the Prepetition Intercreditor Agreements remains in full force and effect, the terms and conditions of such agreements shall determine the respective rights and obligations of each Prepetition Secured Party party thereto and with respect to the Prepetition Collateral and the applicable Prepetition Secured Claims, and each Prepetition Secured Party reserves all rights thereunder.  Nothing in this Final Order or the DIP Loan Documents is intended to or shall enhance or limit any of the terms or conditions or the rights or obligations of any party to any Prepetition Intercreditor Agreement.

58.     <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Final Order, DIP Loan Documents, Prepetition Debt Documents and Prepetition Intercreditor Agreements.

# EXHIBIT A

**Lien Priority Annex**

**Lien Priority Annex**

| Priority | Assets of the Type Constituting DIP Collateral and Prepetition Collateral |
|---|---|
| 1st | Carve Out |
| 2nd | Prior Permitted Liens |
| 3rd | DIP Liens |
| 4th | Prepetition ABL Adequate Protection Liens |
| 5th | Prepetition ABL Liens |
| 6th | 1.5L Notes Adequate Protection Liens |
| 7th | 1.5L Notes Liens |
| 8th | McKesson Adequate Protection Liens |
| 9th | McKesson Liens |
| 10th | 3L Notes Adequate Protection Liens |
| 11th | 3L Notes Liens |

## EXHIBIT B

### Required Milestones

**EXHIBIT B**

**Required Milestones**

Each of the following DIP Milestones, Sale Procedures Milestones, Business Sale Milestones and Other Milestones are collectively referred to as the "Required Milestones" and each, individually, as a "Required Milestone".

(a)    The Debtors[1] shall achieve each of the following milestones (the "DIP Milestones"), in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders) in form and substance acceptable to the DIP Agent and the DIP Co-Collateral Agents in all respects:

(i)    On or before May 5, 2025 (the "Petition Date"), the Debtors shall have commenced the Cases (it being acknowledged and agreed that the Required Milestone under this sub-clause (i) was achieved on or around May 5, 2025).

(ii)    On or before May 6, 2025 (i.e., 1 day after the Petition Date), the Debtors shall file a motion with the Court seeking, among other things, approval of the DIP Credit Agreement, the other DIP Loan Documents, and the DIP Facilities (it being acknowledged and agreed that the Required Milestone under this sub-clause (ii) was achieved on or around May 6, 2025).

(iii)    On or before May 8, 2025 (i.e., 3 days after the Petition Date), the Court shall have entered the Interim Order authorizing the DIP Facilities on an interim basis (it being acknowledged and agreed that the Required Milestone under this sub-clause (iii) was achieved on or around May 7, 2025).

(iv)    On or before July 10, 2025, the Court shall have entered the Final Order authorizing the DIP Facilities on a final basis (it being acknowledged and agreed that the Required Milestone under this sub-clause (iv) was achieved on or around July 10, 2025).

(b)    The Debtors shall achieve each of the following milestones (the "Sale Procedures Milestones"), in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders) in form and substance acceptable to the DIP Agent and the DIP Co-Collateral Agents in all respects:

(i)    On or before May 6, 2025 (i.e., 1 day after the Petition Date), the Debtors shall file a motion (such motion, the "Bidding Procedures Motion") requesting an order of the Court approving procedures for a sale, in one or a series of related transactions, of all or substantially all of the business owned and operated by the Debtors (the "Business") as (x) a Specified Retail / Pharmacy Assets Sale (as defined in the DIP Credit Agreement), (y) a Specified Other Assets Sale (as defined in the DIP Credit Agreement), and/or (z) a Specified Retail / Pharmacy Assets Sale and/or a Specified Other Assets Sale (any such

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Interim Order.

sale, a "<u>Business Sale</u>") (it being acknowledged and agreed that the Required Milestone under this sub-clause (i) was achieved on or around May 6, 2025).

(ii)    On or before May 6, 2025 (i.e., 1 day after the Petition Date), the Debtors shall file a motion requesting an order of the Court granting the Debtors authority to consummate de minimis asset sale transactions relating to assets with a value of less than $10 million for each applicable transaction (subject to the applicable terms of the DIP Loan Documents), and such order shall be entered by the Court concurrently with the Court's approval of the Bidding Procedures Order (as defined below) (it being acknowledged and agreed that the Required Milestone under this sub-clause (ii) was achieved on or around May 6, 2025).

(iii)    On or before May 8, 2025 (i.e., 3 days after the Petition Date), the Debtors shall have obtained an order of the Court approving the Bidding Procedures Motion (such order, the "<u>Bidding Procedures Order</u>"), which Bidding Procedures Order shall (x) approve bidding procedures for any Business Sale (including any Specified Other Assets Sale) (the "<u>Bidding Procedures</u>"), and (y) establish a submission deadline of May 13, 2025 at 6:00 a.m. (Eastern time) for the submission of binding bids for any Specified Retail / Pharmacy Assets Sale and a submission deadline of June 13, 2025 at 5:00 p.m. (Eastern time) for the submission of binding bids for any Specified Other Assets Sale (it being acknowledged and agreed that the Required Milestone under this sub-clause (iii) was achieved on or around May 7, 2025).

(c)    The Debtors shall achieve each of the following milestones (the "<u>Business Sale Milestones</u>"), in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders) in form and substance acceptable to the DIP Agent and the DIP Co-Collateral Agents in all respects:

(i)    On or before May 7, 2025 (i.e., 2 days after the Petition Date), the Debtors shall distribute informational packages and solicitations for bids for any Specified Retail / Pharmacy Assets Sale, to parties identified by the Company Advisors (as defined in the DIP Credit Agreement) or any similar consultants reasonably acceptable to the DIP Agent and the DIP Co-Collateral Agents (it being acknowledged and agreed that the Required Milestone under this sub-clause (i) was achieved on or around May 7, 2025).

(ii)    The Debtors shall set a deadline of on or before May 13, 2025 at 6:00 a.m. (Eastern time) (i.e., 8 days after the Petition Date), for the delivery of binding bids for any Specified Retail / Pharmacy Asset(s) (as defined in the DIP Credit Agreement) (it being acknowledged and agreed that the Required Milestone under this sub-clause (ii) was achieved on or around May 7, 2025).

(iii)    On or before May 13, 2025 at 12:00 p.m. (Eastern time) (i.e., 8 days after the Petition Date), the Debtors shall deliver to the DIP Agent and the DIP Co-Collateral Agents copies of all binding bids received with respect to any Specified Retail / Pharmacy Assets Sale (it being acknowledged and agreed that the Required Milestone under this sub-clause (iii) was achieved on or around May 13, 2025).

(iv)      On or before May 14, 2025 (i.e., 9 days after the Petition Date), to the extent the Debtors determine, with the consent of the DIP Agent and the DIP Co-Collateral Agents, that an auction for the Specified Retail / Pharmacy Assets Sale is necessary, the Debtors shall commence an auction for Specified Retail / Pharmacy Assets Sale in accordance with the Bidding Procedures Order (the "Specified Retail / Pharmacy Assets Auction"). At the conclusion of the Specified Retail / Pharmacy Assets Auction, the Debtors shall, in consultation with the DIP Agent and the DIP Co-Collateral Agents, declare "winning bidder(s)" and, if applicable, "back-up bidder(s)" for one or more Specified Retail / Pharmacy Assets Sales (it being acknowledged and agreed that the Required Milestone under this sub-clause (iv) was achieved on or around May 14, 2025).

(v)      On or before the date that is the earlier of (i) 3 days after the conclusion of the Specified Retail / Pharmacy Assets Auction and (ii) May 21, 2025, the Debtors shall have delivered to the DIP Agent an updated Approved Budget (as defined in the Interim Order) in form and substance acceptable to the DIP Agent and the Required DIP Co-Collateral Agents (it being acknowledged and agreed that the Required Milestone under this sub-clause (v) was achieved on or around May 18, 2025).

(vi)      On or before the later of (x) May 16, 2025 (i.e., 11 days after the Petition Date) and (y) one day following the conclusion of the Specified Retail / Pharmacy Assets Auction, the Debtors shall file a notice with the Court identifying any assets of the Debtors remaining after the Specified Retail / Pharmacy Asset Sale(s) have closed (the "Specified Other Assets"), which Specified Other Assets are to be sold pursuant to one or more Specified Other Assets Sale(s) (it being acknowledged and agreed that the Required Milestone under this sub-clause (vi) was achieved on or around May 16, 2025).

(vii)      On or before May 21, 2025 (i.e., 16 days after the Petition Date), the Debtors shall commence a hearing before the Court seeking entry of an order approving one or more Specified Retail / Pharmacy Assets Sales with the "winning bidder(s)" and, if applicable, "back-up bidder(s)" selected in connection with the Specified Retail / Pharmacy Assets Auction (such order, the "Specified Retail / Pharmacy Assets Sale Approval Order"), and on or before May 23, 2025, (i.e., 18 days after the Petition Date), the Debtors shall obtain entry of the Specified Retail / Pharmacy Assets Sale Approval Order (it being acknowledged and agreed that the Required Milestone under this sub-clause (vii) was achieved on or around May 21, 2025). To the extent not previously completed, as promptly as practicable after the entry of the Specified Retail / Pharmacy Assets Sale Approval Order (and in any event within 10 Business Days after the entry of the Specified Retail / Pharmacy Assets Sale Approval Order (or such later date as set forth in the definitive documentation for such Specified Retail / Pharmacy Assets Sale(s) that is in form and substance acceptable to the DIP Agent and the DIP Co-Collateral Agents in all respects)), the Debtors shall coordinate with the applicable buyers in each Specified Retail / Pharmacy Assets Sale to submit any regulatory filings (including Hart-Scott-Rodino filings) or take other applicable action, in each case, that are necessary to obtain all required regulatory or other approvals for such Specified Retail / Pharmacy Assets Sale to be consummated, and the Debtors shall consummate such Specified Retail / Pharmacy Assets Sale as promptly as possible after obtaining such regulatory or other approval.

(viii)    On or before May 22, 2025 (i.e., 17 days after the Petition Date), the Debtors shall distribute informational packages and solicitations for bids for any Specified Other Assets Sale, to parties identified by the Company Advisors or any similar consultants reasonably acceptable to the DIP Agent and the DIP Co-Collateral Agents (it being acknowledged and agreed that the Required Milestone under this sub-clause (viii) was achieved on or around May 22, 2025).

(ix)    The Debtors shall set a deadline of on or before May 30, 2025 at 5:00 p.m. (Eastern time) (i.e., 25 days after the Petition Date), for the delivery of non-binding indications of interest from all potential purchasers of the Specified Other Assets (as defined in the DIP Credit Agreement). The Debtors shall deliver copies of all indications of interest to the DIP Agent promptly as soon as they are received by the Debtors, but in no event later than May 30, 2025 at 11:59 p.m. (Eastern time) (it being acknowledged and agreed that the Required Milestone under this sub-clause (ix) was achieved on or around May 30, 2025).

(x)    The Debtors shall set a deadline of on or before June 13, 2025 at 5:00 p.m. (Eastern time) for the delivery of binding bids for any Specified Other Assets (it being acknowledged and agreed that the Required Milestone under this sub-clause (x) was achieved on or around May 7, 2025).

(xi)    The Debtors shall deliver copies of all binding bids with respect to the Specified Other Assets to the DIP Agent and the DIP Co-Collateral Agents promptly as soon as they are received by the Debtors, but in no event later than June 24, 2025 at 11:59 p.m. (Eastern time) (it being acknowledged and agreed that the Required Milestone under this sub-clause (xi) was achieved on or around June 24, 2025).

(xii)    On or before July 1, 2025, to the extent the Debtors determine, with the consent of the DIP Agent and the DIP Co-Collateral Agents, that an auction for the Specified Other Assets Sale is necessary, the Debtors shall commence an auction for the Specified Other Assets consisting of the Thrifty Ice Cream business in accordance with the Bidding Procedures Order (the "Specified Other Assets Auction").  At the conclusion of the Specified Other Assets Auction, the Debtors shall, in consultation with the DIP Agent and the DIP Co-Collateral Agents, declare "winning bidder(s)" and, if applicable, "back-up bidder(s)" for one or more Specified Other Assets Sales (it being acknowledged and agreed that the Required Milestone under this sub-clause (xii) was achieved on or around July 1, 2025).

(xiii)    On or before July 7, 2025, the Debtors shall commence a hearing before the Court seeking entry of an order approving one or more Specified Other Assets Sales with the "winning bidder(s)" and, if applicable, "back-up bidder(s)" selected in connection with the Specified Other Assets Auction (such order, the "Specified Other Assets Sale Approval Order"), and on or before July 9, 2025, the Debtors shall obtain entry of the Specified Other Assets Sale Approval Order (it being acknowledged and agreed that the Required Milestone under this sub-clause (xiii) was achieved on or around July 2, 2025).  To the extent not previously completed, as promptly as practicable after the entry of the Specified Other Assets Sale Approval Order (and in any event within 10 Business Days after the

entry of the Specified Other Assets Sale Approval Order (or such later date as set forth in the definitive documentation for such Specified Other Assets Sale(s) that is in form and substance acceptable to the DIP Agent and the DIP Co-Collateral Agents in all respects)), the Debtors shall coordinate with the applicable buyers in each Specified Other Assets Sale to submit any regulatory filings (including Hart-Scott-Rodino filings) or take other applicable action, in each case, that are necessary to obtain all required regulatory or other approvals for such Specified Other Assets Sale to be consummated.

(xiv)    On or before July 9, 2025, the Debtors shall have delivered to the Administrative Agent and the Co-Collateral Agents an updated Approved Budget (as defined in the Interim Financing Order) in form and substance acceptable to the DIP Agent and the Required DIP Co-Collateral Agents (it being acknowledged and agreed that the Required Milestone under this sub-clause (xiv) was achieved on or around July 9, 2025).

(xv)    The Debtors shall consummate each Specified Other Assets Sale subject to the Specified Other Assets Sale Approval Order as promptly as possible after entry of the Specified Other Assets Sale Approval Order; provided, however, that (x) to the extent any Specified Other Assets Sale is subject to any regulatory or other approvals of any Governmental Authority necessary for such Specified Other Assets Sale to be consummated, the Debtors shall consummate such Specified Other Assets Sale as promptly as possible after obtaining such regulatory or other approval, and (y) with respect to any Specified Other Assets Sale for the sale of Real Estate relating to a Store, unless the DIP Agent and the DIP Co-Collateral Agents otherwise consent, such Specified Other Assets Sale shall be consummated as promptly as possible following the completion of the related Store closing sale.

(xvi)    The Debtors shall set a deadline of on or before July 10, 2025 at 5:00 p.m. (Eastern time) for the delivery of binding bids for certain unsold Remaining Assets (as defined in the Bidding Procedures Order), including NexGen & Rite Care, the Central Fill facility, certain Intellectual Property, certain Pharmaceutical Inventory, and Rite Aid loyalty data (the "Specified Remaining Assets") (it being acknowledged and agreed that the Required Milestone under this sub-clause (xvi) was achieved on or around July 11, 2025).

(xvii)    The Debtors shall deliver copies of all binding bids with respect to the Specified Remaining Assets to the Administrative Agent and the Co-Collateral Agents promptly as soon as they are received by the Debtors, but in no event later than July 11, 2025 at 11:59 p.m. (Eastern time) (it being acknowledged and agreed that the Required Milestone under this sub-clause (xvii) was achieved on or around July 11, 2025).

(xviii)    On or before September 19, 2025, to the extent the Debtors determine, with the consent of the Administrative Agent and the Co-Collateral Agents, that an auction for the Specified Remaining Assets is necessary, the Debtors shall commence an auction for the Specified Remaining Assets in accordance with the Bidding Procedures Order (the "Specified Remaining Assets Auction").    At the conclusion of the Specified Remaining Assets Auction, the Debtors shall, in consultation with the Administrative

Agent and the Co-Collateral Agents, declare "winning bidder(s)" and, if applicable, "back-up bidder(s)" for one or more sales of the Specified Remaining Assets.

(xix)    On or before September 25, 2025, the Debtors shall commence a hearing before the Bankruptcy Court seeking entry of an order approving one or more sales of the Specified Remaining Assets with the "winning bidder(s)" and, if applicable, "back-up bidder(s)" selected in connection with the Specified Remaining Assets Auction (such order, the "Specified Remaining Assets Sale Approval Order"), and on or before September 26, 2025, the Debtors shall obtain entry of the Specified Remaining Assets Sale Approval Order.  To the extent not previously completed, as promptly as practicable after the entry of the Specified Remaining Assets Sale Approval Order (and in any event within 10 Business Days after the entry of the Specified Remaining Assets Sale Approval Order (or such later date as set forth in the definitive documentation for such sale of Specified Remaining Assets that is in form and substance acceptable to the Administrative Agent and the Co-Collateral Agents in all respects)), the Debtors shall coordinate with the applicable buyers in each sale of Specified Remaining Assets to submit any regulatory filings (including Hart-Scott-Rodino filings) or take other applicable action, in each case, that are necessary to obtain all required regulatory or other approvals for such sale of Specified Remaining Assets to be consummated.

(xx)    The Debtors shall consummate each sale of Specified Remaining Assets subject to  the Specified Remaining Assets Sale Approval Order as promptly as possible after entry of the Specified Remaining Assets Sale Approval Order; provided, however, that (x) to the extent any sale of Specified Remaining Assets is subject to any regulatory or other approvals of any Governmental Authority necessary for such sale of Specified Remaining Assets to be consummated, the Debtors shall consummate such sale of Specified Remaining Assets as promptly as possible after obtaining such regulatory or other approval, and (y) with respect to any sale of Specified Remaining Assets including the sale of Real Estate relating to a Store, unless the Administrative Agent and the Co-Collateral Agents otherwise consent, such sale of Specified Remaining Assets shall be consummated as promptly as possible following the completion of the related Store closing sale.

(d)    The Debtors shall achieve each of the following milestones (the "Other Milestones"), in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders) in form and substance acceptable to the DIP Agent and the DIP Co-Collateral Agents in all respects:

(i)    On or before May 6, 2025 (i.e., 1 day after the Petition Date), the Debtors shall file a motion with the Court seeking an order (the "Store Closing Order") approving the Debtors' assumption of the Store Closing Consulting Agreement with the Store Closing Consultant(s) in the form approved by the DIP Agent and the DIP Co-Collateral Agents and entered into prior to the Petition Date (the "Permitted Store Closing Consulting Agreement"), and the conduct of the Store closing sales contemplated thereby (the closing of such Stores, the "Permitted Store Closing Sales") (it being acknowledged and agreed that the Required Milestone under this sub-clause (i) was achieved on or around May 6, 2025).

(ii)     On or before May 8, 2025 (i.e., 3 days after the Petition Date), the Court shall have entered the Store Closing Order approving  the Debtors' assumption of the Permitted Store Closing Consulting Agreement and the Permitted Store Closing Sales, in each case, on an interim basis (it being acknowledged and agreed that the Required Milestone under this sub-clause (ii) was achieved on or around May 9, 2025).

(iii)    On or before July 10, 2025, the Court shall have entered the Store Closing Order approving the Debtors' assumption of the Permitted Store Closing Consulting Agreement and the conduct of the Permitted Store Closing Sales, in each case, on a final basis (it being acknowledged and agreed that the Required Milestone under this sub-clause (iii) was achieved on or around July 10, 2025).

(iv)    On or before July 10, 2025, the Debtors shall have obtained an order from the Court extending the Section 365(d)(4) Outside Date (as defined in the DIP Credit Agreement) to the date this is 210 days after the Petition Date (it being acknowledged and agreed that the Required Milestone under this sub-clause (iv) was achieved on or around July 10, 2025).  The term "Section 365(d)(4) Outside Date" means, as of any date of determination, with respect to any Real Estate Lease, the last day of the time period specified in Section 365(d)(4)(A)(i) of the Bankruptcy Code, as such time period may be extended by the Court or by written agreement with the lessor under such Real Estate Lease.