IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**FIRST INTERIM FEE APPLICATION COVER SHEET**
**FOR THE PERIOD MAY 6, 2025 THROUGH AUGUST 31, 2025**

In re NEW RITE AID, LLC, *et al.*[1]          Applicant: Alvarez & Marsal North America, LLC (A&M)

Case No. 25-14861 (MBK)          Client: The Debtors and Debtors-in-Possession ("Debtors")

Chapter 11          Case Filed: May 5, 2025

COMPLETION AND SIGNING OF THIS FORM CONSTITUTES A CERTIFICATION
UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746.

RETENTION ORDER ATTACHED as **EXHIBIT "A"**.

Dated: September 26, 2025

*/s/ Marc Liebman*
Marc Liebman
Managing  Director

---

[1]   The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025/.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

| SECTION I |
| FEE SUMMARY |

| Period for which Compensation and Reimbursement is Sought: | May 6, 2025 through August 31, 2025 (the "Compensation Period") |
| --- | --- |
| Amount of interim fees to be approved as, reasonable and necessary | $15,701,765.50 |
| Amount of interim expenses sought as actual, reasonable and necessary | $70,453.20 |
| Total compensation paid to date | $10,034,844.40 |
| Total expenses paid to date | $61,928.88 |

### Summary of Monthly Fee Applications Filed in the Compensation Period

| Date Filed Docket No. | Period Covered | Requested | | Paid | | Certificate of No Objection | Outstanding Amount |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Fees | Expenses | Fees | Expenses | | |
| 7/2/2025 Docket No. 1311 | 5/6/2025-5/31/2025 | $4,319,792.50 | $39,185.22 | $3,455,834.00 | $39,185.22 | 7/17/2025 Docket No. 1475 | $863,959 |
| 7/31/2025 Docket No. 1732 | 6/1/2025-6/30/2025 | $4,695,065.00 | $14,962.58 | $3,756,052.00 | $14,962.58 | 8/15/2025 Docket No. 1888 | $939,013 |
| 8/26/2025 Docket No. 2132 | 7/1/2025-7/31/2025 | $3,528,698.00 | $7,781.08 | $2,822,958.40 | $7,781.08 | 9/10/2025 Docket No. 2400 | $705,740 |
| 9/16/2025 Docket No. 2473 | 8/1/2025-8/31/2025 | $3,158,210.00 | $8,524.32 | $0 | $0 | N/A | $3,166,734 |
| Total | | $15,701,765.50 | $70,453.20 | $10,034,844.40 | $61,928.88 | N/A | $5,675,445.42 |

### SECTION I
### SUMMARY OF FEES BY INDIVIDUAL FOR THE APPLICATION PERIOD
### (MAY 6, 2025 THROUGH AND INCLUDING AUGUST 31, 2025)

| SUMMARY OF TOTAL FEES BY PROFESSIONAL | | | | |
|---|---|---|---|---|
| **PROFESSIONAL** | **POSITION** | **Hourly Rate** | **Total Hours Billed** | **Total Compensation** |
| Marc Liebman | Managing Director | $ 1,525 | 576.9 | $ 879,772.50 |
| Matthew Davidson | Managing Director | $ 1,175 | 791.5 | $ 930,012.50 |
| Richard Behrens | Managing Director | $ 1,150 | 600.5 | $ 690,575.00 |
| Holden Bixler | Managing Director | $ 1,200 | 31.7 | $ 38,040.00 |
| Paul Kinealy | Managing Director | $ 1,100 | 145.8 | $ 160,380.00 |
| Deb Cash | Managing Director | $ 1,200 | 15.0 | $ 18,000.00 |
| Robert Kreft | Managing Director | $ 1,125 | 23.6 | $ 26,550.00 |
| Kevin Jacobs | Managing Director | $ 1,550 | 11.7 | $ 18,135.00 |
| Allison Hoeinghaus | Managing Director | $ 1,500 | 0.2 | $ 300.00 |
| Andrey Ulyanenko | Managing Director | $ 1,500 | 168.3 | $ 252,450.00 |
| Brian Pedersen | Managing Director | $ 1,500 | 4.5 | $ 6,750.00 |
| Emily Edwards | Managing Director | $ 1,500 | 30.6 | $ 45,900.00 |
| Rayth Myers | Managing Director | $ 1,500 | 3.7 | $ 5,550.00 |
| Michael Noreman | Managing Director | $ 1,500 | 6.1 | $ 9,150.00 |
| Tanner Flood | Managing Director | $ 1,500 | 21.0 | $ 31,500.00 |
| **Managing Director Total** | | | **2,431.1** | **3,113,065.0** |
| Bill Seaway | Senior Advisor | $ 1,500 | 2.0 | $ 3,000.00 |
| Rob Hawkes | Senior Advisor | $ 1,500 | 39.3 | $ 58,950.00 |
| Stan Wiseberg | Senior Advisor | $ 1,500 | 113.3 | $ 169,950.00 |
| **Senior Advisor Total** | | | **154.6** | **231,900.0** |
| Alan Awrabi | Senior Director | $ 1,000 | 3.0 | $ 3,000.00 |
| John Jansen | Senior Director | $ 975 | 453.2 | $ 441,870.00 |
| Brad Steinfeld | Senior Director | $ 1,000 | 488.1 | $ 488,100.00 |
| Lee Zimet | Senior Director | $ 1,500 | 2.2 | $ 3,300.00 |
| Winston Chan | Senior Director | $ 1,100 | 221.3 | $ 243,430.00 |
| Trent Tedesco | Senior Director | $ 1,100 | 0.7 | $ 770.00 |
| Ana San Luis | Senior Director | $ 1,000 | 12.5 | $ 12,500.00 |
| **Senior Director Total** | | | **1,181.0** | **1,192,970.0** |
| John Katsigeorgis | Director | $ 925 | 863.6 | $ 798,830.00 |
| Jon Bain | Director | $ 900 | 662.4 | $ 596,160.00 |
| Matt Uhrin | Director | $ 875 | 674.8 | $ 590,450.00 |
| Chuck Dailey | Director | $ 850 | 672.8 | $ 571,880.00 |
| Roger Allison | Director | $ 850 | 502.8 | $ 427,380.00 |
| Warren Su | Director | $ 975 | 251.5 | $ 245,212.50 |
| Larissa Pavan Santos | Director | $ 975 | 24.1 | $ 23,497.50 |
| **Director Total** | | | **3,652.0** | **3,253,410.0** |
| Nick Stufano | Manager | $ 925 | 0.9 | $ 832.50 |
| **Manager Total** | | | **0.9** | **832.5** |

| PROFESSIONAL | POSITION | Hourly Rate | | Total Hours Billed | Total Compensation | |
|---|---|---|---|---|---|---|
| Michael Mazin | Senior Associate | $ | 800 | 288.0 | $ | 230,400.00 |
| Gary Fragosso | Senior Associate | $ | 750 | 836.7 | $ | 627,525.00 |
| Joe Weaver | Senior Associate | $ | 750 | 841.7 | $ | 631,275.00 |
| Travis Volpe | Senior Associate | $ | 750 | 922.9 | $ | 692,175.00 |
| Colin Moore | Senior Associate | $ | 725 | 924.9 | $ | 670,552.50 |
| Lianne Yu | Senior Associate | $ | 725 | 638.1 | $ | 462,622.50 |
| Jeff Steers | Senior Associate | $ | 650 | 2.7 | $ | 1,755.00 |
| Xiang Li | Senior Associate | $ | 650 | 268.0 | $ | 174,200.00 |
| Brandon Parker | Senior Associate | $ | 850 | 220.1 | $ | 187,085.00 |
| Carolina Paterno | Senior Associate | $ | 850 | 63.9 | $ | 54,315.00 |
| Hannah Welch | Senior Associate | $ | 850 | 15.6 | $ | 13,260.00 |
| Primrose Zvinavashe | Senior Associate | $ | 850 | 63.6 | $ | 54,060.00 |
| Jillian Segal | Senior Associate | $ | 640 | 4.5 | $ | 2,880.00 |
| **Senior Associate Total** | | | | **5,090.7** | | **3,802,105.0** |
| Jake Hagen | Associate | $ | 700 | 773.2 | $ | 541,240.00 |
| Shan Sahota | Associate | $ | 675 | 173.5 | $ | 117,112.50 |
| Hassan Doghman | Associate | $ | 625 | 676.1 | $ | 422,562.50 |
| Noelle Ferrara | Associate | $ | 625 | 565.4 | $ | 353,375.00 |
| Nicolas Pardo | Associate | $ | 625 | 871.8 | $ | 544,875.00 |
| Emmett McNulty | Associate | $ | 650 | 428.2 | $ | 278,330.00 |
| Cindy Kuang | Associate | $ | 725 | 74.5 | $ | 54,012.50 |
| Aaron Rotter | Associate | $ | 725 | 24.1 | $ | 17,472.50 |
| Mark Pon | Associate | $ | 725 | 373.0 | $ | 270,425.00 |
| McLaughlin, Blake | Associate | $ | 585 | 3.8 | $ | 2,223.00 |
| **Associate Total** | | | | **3,963.6** | | **2,601,628.0** |
| Clayton Marceau | Analyst | $ | 550 | 907.7 | $ | 499,235.00 |
| Nick Lui | Analyst | $ | 550 | 779.2 | $ | 428,560.00 |
| Drew Yardley | Analyst | $ | 525 | 833.3 | $ | 437,482.50 |
| Jack Westner | Analyst | $ | 525 | 264.3 | $ | 138,757.50 |
| **Analyst Total** | | | | **2,784.5** | | **1,504,035.0** |
| Natalie Corbett | Paraprofessional | $ | 350 | 5.2 | $ | 1,820.00 |
| **Paraprofessional Total** | | | | **5.2** | | **1,820.0** |
| **TOTAL** | | | | **19,263.6** | | **15,701,765.5** |

**Blended Hourly Rate: $815.1**

**SECTION II**
**SUMMARY OF COMPENSATION BY PROJECT CATEGORY**
**(MAY 6, 2025 THROUGH AND INCLUDING AUGUST 31, 2025)**

| Task Code | Hours | Fee Amount |
|---|---|---|
| ACCOUNTING | 74.2 | $ 73,850.00 |
| OTHER MATTERS | 169.6 | $ 118,707.50 |
| ASSET SALES | 2,917.5 | $ 2,382,692.50 |
| BANKRUPTCY SUPPORT | 996.4 | $ 862,295.00 |
| BUSINESS PLAN | 76.5 | $ 88,447.50 |
| DIP FINANCING & CASH FLOW | 3,884.1 | $ 2,867,532.50 |
| CLAIMS / CLAIMS ANALYSIS / CLAIMS ADMINISTRATION & OBJECTIONS | 327.3 | $ 292,827.50 |
| CONTRACTS / EXECUTORY CONTRACTS | 20.1 | $ 17,610.00 |
| COURT HEARINGS (PREP & ATTEND) | 113.0 | $ 123,527.50 |
| DUE DILIGENCE & INFORMATION REQUESTS | 542.4 | $ 453,520.00 |
| EMPLOYEE MATTERS | 1,798.6 | $ 1,263,720.00 |
| FEE APP | 110.7 | $ 64,200.00 |
| LIQUIDATION ANALYSIS / WIND DOWN SUPPORT | 426.7 | $ 382,757.50 |
| LITIGATION | 71.7 | $ 90,943.00 |
| MEETINGS WITH THIRD PARTIES, MANAGEMENT AND COUNSEL | 392.7 | $ 420,855.00 |
| MONTHLY OPERATING REPORT / UST REPORT | 423.4 | $ 327,100.00 |
| MOTIONS / ORDERS | 96.9 | $ 75,160.00 |
| PLAN / DISCLOSURE STATEMENT | 129.0 | $ 144,077.50 |
| REGULATORY / COMPLIANCE | 60.1 | $ 38,102.50 |
| STORE CLOSING / OPERATIONAL | 3,487.3 | $ 2,715,685.00 |
| STATEMENTS / SCHEDULES | 933.3 | $ 671,575.00 |
| TAX | 1,658.9 | $ 1,708,120.00 |
| TRAVEL | 71.3 | $ 64,372.50 |
| UNSECURED CREDITORS COMMITTEE | 36.9 | $ 33,957.50 |
| VENDOR MANAGEMENT | 445.0 | $ 420,130.00 |
| **TOTAL** | **19,263.6** | **$ 15,701,765.50** |

**SECTION III**
**EXPENSE SUMMARY FOR THE APPLICATION PERIOD**
**(MAY 6, 2025 THROUGH AND INCLUDING AUGUST 31, 2025)**

| SUMMARY OF EXPENSES BY CATEGORY | |
| --- | --- |
| **Expense Category** | **Amount** |
| Airfare | $      19,156.52 |
| Lodging | $      29,245.94 |
| Meals | $       4,717.82 |
| Miscellaneous | $       4,422.78 |
| Transportation | $      12,910.14 |
| **TOTAL** | **$      70,453.20** |

<div style="border:1px solid black">

**SECTION IV**
**CASE HISTORY**

</div>

1. Date cases filed: May 5, 2025

2. Chapter under which cases commenced: Chapter 11

3. Date of Retention: June 9, 2025 effective as of May 5, 2025

4. Summarize in brief the benefits to the estate and attach supplements as needed: See narrative portion of Application.

In support of the Application, the following exhibits are annexed hereto:

- <u>Exhibit A:</u> Retention Order

- <u>Exhibit B:</u> Certification of Marc Liebman

I certify under penalty of perjury that the foregoing is true and correct.


Dated: September 26, 2025


*/s/ Marc Liebman*                          
Marc Liebman
Managing  Director

| | |
|---|---|
| In re:<br><br>NEW RITE AID CORPORATION, *et. al.*,<br><br>Debtors.[1] | Case No. 25-14861 (MBK)<br><br>Chapter 11<br><br>Honorable Michael B. Kaplan, U.S.B.J., Chief<br><br>(Jointly Administered) |

### FIRST INTERIM FEE APPLICATION OF ALVAREZ AND MARSAL NORTH AMERICA, LLC FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS RESTRUCURING ADVISORS FOR THE DEBTORS FOR THE PERIOD FROM MAY 6, 2025 THROUGH AND INCLUDING AUGUST 30, 2025

TO THE HONORABLE MICHAEL B. KAPLAN, CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

Alvarez & Marsal North America, LLC ("A&M"), restructuring advisors of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its first application (this "Application") for interim approval and allowance of (a) compensation and payment for A&M's professional services to the debtors during the period from May 6, 2025 through and including August 31, 2025 (the "Compensation Period") in the amount of $15,701,765.50 and (b) reimbursement of 100% of actual and necessary expenses incurred by A&M during the Compensation Period in connection with such services in the amount of $70,453.20 In support of this Application, A&M respectfully represents as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered on July 18, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]      The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025/. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2.      The statutory and other bases for the relief requested herein are sections 328(a), 331 and 1103 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of New Jersey (the "Local Bankruptcy Rules").

## BACKGROUND

3.      On May 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

4.      On June 9, 2025, A&M filed the order authorizing the Debtors to Retain and Employ Alvarez & Marsal North America, LLC, (II) Designating Marc Liebman as Chief Transformation Officer, pursuant to the terms and subject to the conditions of the engagement letter (as modified by the Retention Order (as defined below), the "Engagement Letter") between A&M and the debtors dated as of May 5, 2025 [Docket No. 771] (the Retention Application"). A copy of the Engagement Letter is annexed to the Retention Application as Exhibit A to the Retention Application.
.

## TERMS OF A&M'S RETENTION

5.      The Retention Order approved the payment of certain fees to A&M, as set forth in detail in the Retention Application, the Engagement Letter and the Retention Order. Specifically, A&M's fees are as follows:

- A&M and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor or investor/acquirer) in connection with these chapter 11 cases;
- In the event the Debtors seek to have Additional Personnel assume executive officer positions that are different than the position(s) disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;
- A&M shall file with the Court with copies to the Notice Parties, staffing reports on the

engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned (the "Staffing Reports"). The Notice Parties shall have 14 days after the date each Staffing Report is served to object to such Staffing Report. The Staffing Reports shall be subject to review by the Court in the event an objection is filed;

- A&M shall submit reports of compensation earned and expenses incurred on a monthly basis (the "Compensation Reports") to the Court with copies to the Notice Parties. Compensation Reports shall summarize the services provided, and identify the compensation earned and expenses incurred by each interim officer and Additional Personnel/staff employee. Time records shall (i) be appended to the Compensation Reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10 hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate and for the CTO, the time entries shall be kept in hourly increments. The Notice Parties and the Debtors shall have 14 days after the date of each Compensation Report is served to object to such Compensation Report. The Compensation Reports shall be subject to Court review in the event an objection is filed. All fees and expenses paid to A&M are subject to disgorgement to the extent an objection is filed and sustained after payment of any fees and expenses;

- The Debtors may file each monthly Staffing Report and each monthly Compensation Report as one joint single report;

- No principal, employee, or independent contractor of A&M and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of these chapter 11 cases;

- Notwithstanding the terms of the Engagement Letter, the Debtors are permitted to indemnify only those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy. There shall otherwise be no indemnification of A&M or its affiliates;

- To the extent A&M uses the services of third party entity independent contractor entities or subcontractors (collectively, the "Contractors") in these chapter 11 cases, (i) A&M shall pass through the cost of such Contractors to the Debtors at the same rate that A&M pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for A&M; and (iv) file with this Court disclosures pertaining to such Contractors of the kind required by Bankruptcy Rule 2014;

- For a period of three years after the completion of the engagement, neither A&M nor any of its affiliates shall make any investments in the Debtors or the reorganized Debtors;

- A&M shall make appropriate disclosures of any and all facts that may have a bearing on whether A&M, its affiliates, or any individuals working on the engagement hold/represent any interest adverse to, the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

## <u>COMPENSATION REQUESTED</u>

6.     By this Application, A&M requests interim approval and allowance of compensation

and payment for A&M's professional services to the debtors during the Compensation Period in the

amount of $15,701,765.50 and (b) reimbursement of 100% of actual and necessary expenses incurred by

A&M during the Compensation Period in connection with such services in the amount of $70,453.20

7.       During the Compensation Period, A&M filed the monthly fee statements (the

"Monthly Fee Statements") shown in the table below:

| Date Filed Docket No. | Period Covered | Requested | | Paid | | Certificate of No Objection | Outstanding Amount |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | | |
| 7/2/2025 Docket No. 1311 | 5/6/2025-5/31/2025 | $4,319,792.50 | $39,185.22 | $3,455,834.00 | $39,185.22 | 7/17/2025 Docket No. 1475 | $863,959 |
| 7/31/2025 Docket No. 1732 | 6/1/2025-6/30/2025 | $4,695,065.00 | $14,962.58 | $3,756,052.00 | $14,962.58 | 8/15/2025 Docket No. 1888 | $939,013 |
| 8/26/2025 Docket No. 2132 | 7/1/2025-7/31/2025 | $3,528,698.00 | $7,781.08 | $2,822,958.40 | $7,781.08 | 9/10/2025 Docket No. 2400 | $705,740 |
| 9/16/2025 Docket No. 2473 | 8/1/2025-8/31/2025 | $3,158,210.00 | $8,524.32 | $0 | $0 | N/A | $3,166,734 |
| Total | | $15,701,765.50 | $70,453.20 | $10,034,844.40 | $61,928.88 | N/A | $5,675,445.42 |

8.       As authorized by the Retention Order, A&M kept track of its time during the

Compensation Period in 1/10 hour increments.

9.       The fees charged by A&M have been billed in accordance with the Engagement

Letter and the Retention Order and are comparable to those fees charged by A&M for professional

services rendered in connection with similar chapter 11 cases and non-bankruptcy matters. A&M

submits that such fees are reasonable based upon the customary compensation charged by similarly

skilled practitioners in comparable bankruptcy cases and non-bankruptcy matters in the

competitive national investment banking market.

10.    In connection with its services to the debtors, A&M also incurred certain necessary expenses in the amount of $70,453.20 during the Compensation Period for which it is entitled to reimbursement under the Retention Order.

11.    No previous request for interim allowance of compensation for professional services rendered for reimbursement of expenses incurred have been made.

## SUMMARY OF SERVICES RENDERED

12.    During the Compensation Period, A&M performed significant services on behalf of the debtors, including, but not limited to, the following:

a) The Engagement Personnel in cooperation with the Chief Executive Officer (the "CEO") and the Chief Financial Officer ("CFO"), shall perform a review and assessment of certain Company financial information, that may be provided by the Company to its creditors, including without limitation its short- and long-term projected cash flows and operating results;

b) The Engagement Personnel shall assist the Company in the preparation of a revised operating plan and cash flow forecast and presentation of such plan and forecast to the Board and the Company's creditors;

c) The CTO and Engagement Personnel together and in connection with the CEO, the CFO, and other applicable officers of the Company, shall seek to identify and implement profitability and operational improvement opportunities, including overseeing those associated with the ongoing Ride Aid 2.0 Transformation Program which encompasses several initiatives, including: sales and margin enhancements, cost reductions, working capital efficiencies, footprint rationalization and store closures; and value assurance programs;

d) The Engagement Personnel shall assist the CEO and work in cooperation with other Company-engaged professionals in developing possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various businesses for review by the Board and the Company's various creditor constituencies, as applicable;

e) The CTO and Engagement Personnel together and in connection with other applicable officers of the Company shall support any M&A processes, including for the PBM and Retail businesses; and shall assist in the restructuring and wind-down of certain non-core operations;

f) The CTO shall assist the CEO and CFO and serve as a principal contact with the Company's creditors with respect to the Company's financial and operational matters;

g) The Engagement Personnel shall assist the Company, as requested, with financial and liquidity forecasting, including but not limited to the development of a 13-week cash flow and liquidity forecast;

h) The Engagement Personnel shall, in cooperation with the CFO and other applicable officers of the Company, develop and implement cash management strategies, working capital tactics, and processes;

i) The Engagement Personnel shall assist the CEO and work in cooperation with other Company-engaged professionals in formulating to debtor-in possession cash flow models, and negotiations regarding use of cash collateral and debtor-in-possession financing, if necessary, and any ongoing reporting requirements related to the same;

j) The Engagement Personnel shall assist the CEO and work in cooperation with other Company-engaged professionals in the preparation of any first day motions, declarations, schedules, exhibits and other materials supporting the potential first day and second day hearings and providing administrative support and reporting during the bankruptcy proceedings;

k) The Engagement Personnel shall assist the CEO and CFO and work in cooperation with other Company-engaged professionals to prepare and develop (a) plan of reorganization and disclosure statement, including liquidation analysis; (b) statements of financial affairs and schedules of assets and liabilities; (c) a claims analysis; (d) monthly operating reports and other bankruptcy reporting requirements, as applicable;

l) The Engagement Personnel shall assist the Company with vendor management, including negotiations to ensure flow of goods and services on favorable terms to the Company and assist with contract renegotiations with the supply base;

m) The CTO and Engagement Personnel shall provide testimony, if necessary, in support of relief requested in any chapter 11 case(s) commenced by the Company (any such cases, the "Chapter 11 Cases");

n) The Engagement Personnel shall, at the direction of the Company's counsel, shall provide electronic discovery, digital investigation and forensic data analytics to support certain legal matters;

o) The Engagement Personnel shall assist the Company with tax analyses to support any restructuring or M&A transaction and in compensation related matters; and

p) The Engagement Personnel shall perform such other services as requested or directed by the Board or the CEO, and agreed to by A&M that is not duplicative of work others are performing for the Company.

## **BASIS FOR RELIEF**

13.     Section 328(a) of the Bankruptcy Code permits the debtor, with court approval, to employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including

investment bankers, on flexible terms that reflect the nature of their services and prevailing market

conditions.

14.    Courts consistently find that the purpose of section 328 of the Bankruptcy Code is

to permit the pre-approval of compensation arrangements as a method of insuring that the most

competent professionals would be available to provide services in bankruptcy cases. *In re National*

*Gypsum Co.,* 123 F.3d 861, 862-63 (5th Cir. 1997) ("If the most competent professionals are to be

available for complicated capital restructurings and the development of corporate reorganization,

they must know what they will receive for their expertise and commitment.  Courts must protect

those agreements and expectations, once found to be acceptable.").  Once the terms of a

professional's retention have been approved under section 328(a) of the Bankruptcy Code, the

agreed-upon compensation cannot be altered unless the agreed terms "prove to have been

improvident in light of the developments not capable of being anticipated at the time of fixing of

such terms and conditions." 11 U.S.C. § 328(a); *In re Smart World Techs*., 552 F.3d 228, 232 (2d.

Cir. 2009) ("Where the court pre-approves the terms and conditions of the retention under section

328(a), its power to amend those terms is severely constrained."); s*ee also In re Graces Restaurant*

*Group, Inc.*, No. 18-19054 (JNP), 2019 WL 182547, at *4 (Bankr. D.N.J. Jan. 11, 2019) ("Section

328 permits a debtor to seek court approval to determine the reasonableness of a fee arrangement

before services are rendered.").

15.    The Retention Order approved A&M's compensation and expense reimbursement

pursuant to section 328 of the Bankruptcy Code, subject to the rights of the United States Trustee

to review the Application pursuant to section 330 of the Bankruptcy Code.  A&M submits that

nothing has arisen in these cases that would cause the agreed-upon compensation requested herein

to be altered and that the Application should be approved.

**WHEREFORE**,  A&M  respectfully requests that the Court enter an order: (a) approving and

allowing on an interim basis (i) compensation for A&M's professional services to the debtors during the

Compensation Period in the amount of $15,701,765.50 and (ii) reimbursement of 100% of actual and

necessary expenses incurred by A&M during the Compensation Period in connection with such services in

the amount of $70,453.20; (b) authorizing and directing the Debtors to pay A&M all amounts incurred

during the Compensation Period not already paid pursuant to the Interim Compensation Order; and (c) such

other relief as may be just and proper.

Dated:  September 26, 2025

Alvarez & Marsal North America, LLC

*/s/ Marc Liebman*
Marc Liebman
Managing Director

## **Exhibit A**

### **Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re:

NEW RITE AID, LLC, *et al.*,

Debtors.[1]

Chapter 11

Case No- 25-14861

(Jointly Administered)

Order Filed on June 9, 2025 by Clerk
U.S. Bankruptcy Court District of New Jersey

## ORDER (I) AUTHORIZING THE DEBTORS TO (A) RETAIN AND EMPLOY ALVAREZ & MARSAL NORTH AMERICA, LLC, AS FINANCIAL ADVISOR, AND (B) DESIGNATE MARC LIEBMAN AS CHIEF TRANSFORMATION OFFICER, IN EACH CASE, EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING CERTAIN TIMEKEEPING REQUIREMENTS, AND (III) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED.**

**DATED: June 9, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The last four digits of Debtor New Rite Aid LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief |

Upon the *Debtors' Motion for Entry of an Order (I)Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC to Provide a Chief Transformation Officer and Certain Additional Personnel, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief* (the "Motion"), of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (i) authorizing the Debtors to (a) retain and employ Alvarez & Marsal North America, LLC (together with employees of its professional service provider affiliates (all of which are wholly-owned by its parent company and employees), its wholly-owned subsidiaries and independent contractors, "A&M")and (b) designating Marc Liebman as CTO and authorizing A&M to provide the Additional Personnel, (ii) waiving the timekeeping requirements of Local Rule 2016-1, and (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the Liebman Declaration; and the Court having found that A&M is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code, as supplemented by section 1107(b) of the Bankruptcy Code; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and the Court having found that this is core proceeding pursuant to pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief |

United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and the Court having reviewed the Motion; and the Court having heard the statements in support of the relief requested therein at a hearing before this Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **APPROVED** as set forth herein.

2.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to (a) retain and employ A&M to provide the Debtors a CTO and certain Additional Personnel and (b) designate Marc Liebman as CTO, effective as of the Petition Date, pursuant to and in accordance with the terms and conditions set forth in the Engagement Letter attached hereto as **Exhibit 1**.

3.      The terms of the Engagement Letter, including, without limitation, the indemnification provisions and compensation provisions, as modified by the Motion and this Order, are reasonable terms and conditions of employment and are hereby approved.

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief |

4.     Upon employment and retention by the Debtors, Marc Liebman shall be empowered and authorized to carry out all duties and responsibilities set forth in the Engagement Letter.

5.     Notwithstanding anything in the Motion, Liebman Declaration, or Engagement Letter to the contrary, the remaining balance of the Retainer held by A&M shall be held by A&M as security throughout these chapter 11 cases; provided that A&M shall apply any remaining amounts of the Retainer as a credit toward its final fees and expenses.  At the conclusion of A&M's engagement by the Debtors, if the amount of the Retainer held by A&M is in excess of the amount of A&M's outstanding and estimated fees, expenses, and costs, A&M will pay to the Debtors the amount by which the Retainer exceeds such fees, expenses, and costs, in each case in accordance with the Engagement Letter.

6.     Notwithstanding anything to the contrary in the Motion or the Engagement Letter, A&M's engagement is subject to the following terms:

a.     A&M and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor or investor/acquirer) in connection with these chapter 11 cases;

b.     In the event the Debtors seek to have Additional Personnel assume executive officer positions that are different than the position(s) disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, or (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

(Page | 6)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marshal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief |

c.   A&M shall file with the Court with copies to the Notice Parties, staffing reports on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned (the "Staffing Reports"). The Notice Parties shall have 14 days after the date each Staffing Report is served to object to such Staffing Report. The Staffing Reports shall be reviewed by the Court in the event an objection is filed;

d.   A&M shall submit reports of compensation earned and expenses incurred on a monthly basis ("Compensation Reports") to the Court with copies to the Notice Parties. Compensation Reports shall summarize the services provided, and identify the compensation earned and expenses incurred by each interim officer and Additional Personnel/staff employee. Time records shall (i) be appended to the Compensation Reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10 hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate for the CTO, the time entries shall be kept in hourly increments. The Notice Parties and the Debtors shall have 14 days after the date of each Compensation Report is served to object to such Compensation Report. The Compensation Reports shall be subject to Court review in the event an objection is filed. All fees and expenses paid to A&M are subject to disgorgement to the extent an objection is filed and sustained after payment of any fees and expenses;

e.   The Debtors may file each monthly Staffing Report and each monthly Compensation Report as one joint single report;

f.   No principal, employee, or independent contractor of A&M and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of these chapter 11 cases;

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief |

g.   Notwithstanding the terms of the Engagement Letter, the Debtors are permitted to indemnify only those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy. There shall otherwise be no indemnification of A&M or its affiliates;

h.   To the extent A&M uses the services of third party entity independent contractor entities or subcontractors (collectively, the "Contractors") in these chapter 11 cases, (i) A&M shall pass through the cost of such Contractors to the Debtors at the same rate that A&M pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for &AM; and (iv) file with this Court disclosures pertaining to such Contractors of the kind required by Bankruptcy Rule 2014;

i.   For a period of three years after the completion of the engagement, neither A&M nor any of its affiliates shall make any investments in the Debtors or the reorganized Debtors; and

j.   A&M shall make appropriate disclosures of any and all facts that may have a bearing on whether A&M, its affiliates, or any individuals working on the engagement hold/represent any interest adverse to, the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

6.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7. Notwithstanding the foregoing, any trustee appointed in these cases shall be bound by the terms of this Order with respect to A&M's entitlement to fees earned, but such trustee shall not be obligated to continue A&M's engagement.

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief |

7.      To the extent there is any inconsistency between the terms of the Engagement Letter, the Motion, and this Order, the terms of this Order shall govern.

8.      A&M shall use its reasonable efforts to avoid any unnecessary duplication of services provided by any retained professionals in these chapter 11 cases.

9.      Notwithstanding anything to the contrary in the Motion, Liebman Declaration, or Engagement Letter, paragraph 2 of section 13 of the Engagement Letter, titled "Miscellaneous", the Court shall have exclusive jurisdiction over A&M's engagement during the pendency of these cases.

10.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

14.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

(Page | 9)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief |

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>Exhibit 1</u>

**Engagement Letter**



**Alvarez & Marsal North America, LLC**
One East Washington Street, Suite 1110
Phoenix, AZ 85004
Phone: +1 602 459 7000
Fax: +1 602 459 7001

As of March 12, 2025

Mr. Matt Schroeder
Chief Executive Officer
New Rite Aid, LLC
200 Newberry Commons
Etters, PA 17319

Dear Mr. Schroeder:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and New Rite Aid, LLC and its wholly owned direct and indirect subsidiaries, and their respective assigns and successors (the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1.      Description of Services

(a)     Officers. In connection with this engagement, A&M shall make available to the Company:

(i)     Marc Liebman to serve as the Chief Transformation Officer (the "CTO"); and

(ii)    Upon the mutual agreement of A&M and the Company, A&M will provide additional employees of A&M and/or its affiliates and wholly-owned subsidiaries as required (collectively, with the CTO, the "Engagement Personnel"), to assist the CTO in the execution of the duties set forth more fully herein.

(b)     Duties.

(i)     The Engagement Personnel in cooperation with the Chief Executive Officer (the "CEO") or other applicable officers of the Company, shall perform a financial review of the Company, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Company to its creditors, including without limitation its short and long-term projected cash flows and operating performance;

New Rite Aid, LLC
March 12, 2025

(ii)    The Engagement Personnel shall assist in the identification (and implementation) of cost reduction and operations improvement opportunities;

(iii)    The Engagement Personnel shall assist the CEO and other Company engaged professionals in developing for the board of directors of the Company's review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business lines;

(iv)    The CTO shall serve as the principal contact with the Company's creditors with respect to the Company's financial and operational matters, including (a) providing the Agent, the Lender Group Consultant, and the Lenders reasonable access to the CTO and information reasonably requested by the Agent and the Lenders, (b) subject to Sections 7 and 11 of this Agreement, reviewing and approving disbursement requests, budgets, and Borrowing Base Certificates of the Borrower; *provided* that (x) the CTO shall be entitled to rely, without further independent verification, on the accuracy and completeness of all publicly available information and other information that is furnished by or on behalf of the Company and otherwise reviewed by Engagement Personnel in connection with any such review and approval, and (y) with respect to Borrowing Base Certificates, such review and approval shall be limited to the form prepared by the Company and shall not include any independent verification of the Company's accounting methodology or other information utilized to prepare such Borrowing Base Certificates;[1] and

(v)    The Engagement Personnel shall perform such other services as requested or directed by the board of the directors of the Company (the "Board") or other Company personnel as authorized by the Board, and agreed to by A&M that is not duplicative of work others are performing for the Company.

(c)    The Engagement Personnel shall report to the Board and, at the request of the Board, will make recommendations to and consult with the Board.

(d)    The Engagement Personnel will continue to be employed, by A&M and, while rendering services to the Company, will continue to work with other personnel

---

[1]    Capitalized terms used in this section 1(b)(iv) but not otherwise defined in this Agreement shall have the meanings ascribed to them in that certain Credit Agreement, dated as of August 30, 2024 (as amended by that certain First Amendment to Credit Agreement, dated as of January 14, 2025, and as further amended, amended and restated, supplemented or otherwise modified in writing from time to time, the "Credit Agreement"), by and among (a) Rite Aid Corporation, as borrower, (b) the lenders from time to time party thereto (collectively, the "Lenders"), (c) BANK OF AMERICA, N.A., as administrative agent and collateral agent for the Lenders and the other Secured Parties (as defined therein) (the "Agent"), and (d) the other agents party thereto.

2

New Rite Aid, LLC
March 12, 2025

at A&M in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Personnel pursuant to this Agreement. With respect to the Company, however, the Engagement Personnel shall operate under the direction of the Board and A&M shall have no liability to the Company for any acts or omissions of the Engagement Personnel related to the performance or non-performance of services at the direction of the Board and consistent with the requirements of the engagement and this Agreement.

(e)     In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, subsidiaries, and independent contractors as Engagement Personnel.  Such affiliates and subsidiaries are wholly owned by A&M's parent company and employees.

2.    Information Provided by Company and Forward Looking Statements.  The Company shall use all reasonable efforts to:  (i) provide the Engagement Personnel with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that Engagement Personnel reasonably request in connection with the services to be provided to the Company.  The Engagement Personnel shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by Engagement Personnel in connection with the services performed for the Company.  The Company acknowledges and agrees that the Engagement Personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M and Engagement Personnel are under no obligation to update data submitted to them or to review any other areas unless specifically requested by the Board to do so.

You understand that the services to be rendered by the Engagement Personnel may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections.  In addition, Engagement Personnel will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.    Limitation of Duties.  Neither A&M, nor the Engagement Personnel make any representations or guarantees that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company, (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company, or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents.  Further, neither A&M, nor the Engagement Personnel, assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. The Engagement Personnel shall be responsible for implementation only of the

3

New Rite Aid, LLC
March 12, 2025

restructuring proposal or alternative approved by the Board and only to the extent and in the manner authorized and directed by the Board.

4.   <u>Compensation</u>.

   (a)   A&M will receive fees for the services of the Engagement Personnel based on the following hourly rates:

   | | |
   |---|---|
   | Managing Directors | $1,100 - 1,575 |
   | Directors | 850 - 1,100 |
   | Associates | 625 - 825 |
   | Analysts | 450 - 600 |

   Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

   (b)   In addition, A&M will be reimbursed for its reasonable and documented out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, messenger and wireless charges. A&M also charges a flat rate of 4% of professional fees to cover otherwise unbilled items such as telephone and conferencing charges, computer use, technology and software license fees, research subscriptions and other internal services. All fees and expenses will be billed on a weekly basis or, at A&M's discretion, more frequently. Invoices are payable upon receipt.

   (c)   The Company shall promptly remit to A&M a retainer in the amount of $1,000,000.00 (the "<u>Retainer</u>") which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder. The Retainer will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M affiliate client retainers), separate from the general account to which A&M will direct payment of ongoing fees and expenses. Absent your agreement to the contrary, A&M may only draw on the Retainer (or a portion thereof) in order to apply to invoices that are due and payable or other amounts due under this Agreement or as the Company may otherwise agree and Company will be informed of such application of the Retainer. If a Retainer is to be increased or decreased, the foregoing shall apply.

5.   <u>Termination</u>.

   (a)   This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party. The Company shall provide notice of any such termination to the Agent promptly, but in any event, within one (1) calendar day after such termination.

   (b)   A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or

4

New Rite Aid, LLC
March 12, 2025

makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

(c)    On termination of the Agreement, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(d)    The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.    <u>No Audit</u>.  Company acknowledges and agrees that A&M and Engagement Personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7.    <u>No Third Party Beneficiary</u>.  The Company acknowledges that all advice (written or oral) provided by A&M and the Engagement Personnel to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8.    <u>Conflicts</u>.  A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware.  Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "<u>Firm</u>") that serves clients on an international basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to, or have business associations with, other entities or people which had or have or may have relationships with the Company, including creditors of the Company.  The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained.  Each of the entities comprising the definition of Company (each, a "<u>Company Entity</u>") acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company Entity.  Each Company Entity represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9.    <u>Confidentiality/Non-Solicitation</u>.

A&M and Engagement Personnel shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except:  (i) as

New Rite Aid, LLC
March 12, 2025

requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is, or becomes, public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10. <u>Indemnification/Limitations on Liability</u>. The Company shall indemnify the Engagement Personnel acting as officers (the "<u>Indemnified Professionals</u>") to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Indemnified Professionals. The Indemnified Professionals shall be expressly covered as officers under the Company's existing director and officer liability insurance policy(ies) and such coverage shall be primary to any insurance or indemnification made available to the Indemnified Professionals by A&M or resulting from the Indemnified Professionals' employment with A&M. Prior to the effective date of this engagement and as a condition of A&M accepting this engagement, the Company shall make such policy(ies) and all amendments thereto available to A&M for review and approval. The Company shall also maintain such insurance coverage for the Indemnified Professionals for a period of not less than six years following the date of the termination of the Indemnified Professionals' services hereunder. Company shall furnish evidence of any subsequent renewals of the applicable policy(ies) and shall give thirty (30) days' prior written notice to A&M of cancellation, non-renewal, or material change in coverage, scope, or amount of such director and officer liability policy. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws or other organizational documents or policies shall affect the Indemnified Professionals' rights hereunder. The attached indemnity and limitation on liability provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall remain in full force and effect.

11. <u>Joint and Several Liability</u>

6

New Rite Aid, LLC
March 12, 2025

Each Company Entity hereby acknowledges and agrees that they are each jointly and severally liable to A&M and its affiliates for all of the Company's representations, warranties, covenants, liabilities and obligations set forth in the Agreement. Any beneficiary of this agreement may seek to enforce any of its rights and remedies hereunder against any or all Company Entities in any order at any time in its sole discretion.

12. <u>Privacy and Data Protection</u>.  In the provision of services under this Agreement, A&M may Process certain Company Personal Data.  Capitalized terms used herein but not otherwise defined in the Agreement or in paragraph (b), below, shall have the meanings ascribed in paragraph (e), below.

(a)  Mutual Obligations.  A&M and Company shall each comply with Data Protection Laws applicable to their respective Processing of Company Personal Data.

(b)  A&M Obligations.  (i) A&M shall Process Company Personal Data on behalf of Company as reasonably necessary to providing the services, which Company acknowledges consist of the services as described in the Agreement.  (ii) A&M shall implement and maintain appropriate physical, technical, and organizational safeguards reasonably designed to protect the confidentiality and security of Company Personal Data, and to protect Company Personal Data against a Personal Data Breach.  (iii) For purposes of this clause (iii), the terms "consumer", "business", "business purpose", "commercial purpose", "sell", and "share" shall have the meanings ascribed under the California Consumer Protection Act of 2018, as amended by the California Privacy Rights Act of 2020 ("<u>CCPA</u>") and, where applicable, other relevant Data Protection Laws.  A&M shall not: (A) sell or share Company Personal Data; (B) retain, use, or disclose Company Personal Data for any purpose other than for providing the services; (C) retain, use, or disclose Company Personal Data for a commercial purpose other than for providing the services, or as otherwise permitted under Data Protection Laws; (D) retain, use, or disclose Company Personal Data outside of the direct business relationship between Company and A&M, except as otherwise permitted under Data Protection Laws; or (E) combine Company Personal Data it receives from, or on behalf of, Company with Personal Data that it receives from, or on behalf of, another person or persons, or collects from its own interaction with the consumer, except as otherwise provided under Data Protection Laws.  A&M shall provide the same level of privacy protection to Company Personal Data as required of businesses under applicable Data Protection Laws and will notify Company if it determines that it can no longer meet its obligations under applicable Data Protection Laws.  A&M and Company shall promptly notify and reasonably assist the other if it receives a request from a consumer seeking to exercise individual rights (e.g., access, deletion) with respect to Company Personal Data, including by providing all information necessary to enable the other to comply with the request.  Company shall have the right to take reasonable and appropriate steps to ensure that A&M Processes Company Personal Data in a manner that is consistent with Company's obligations under applicable Data Protection Laws; specifically, Company shall have the right to monitor A&M's compliance with its privacy and data protection obligations herein through written questionnaires once every 12 months. Company shall have the right, upon no less than ten (10) business days' written notice,

New Rite Aid, LLC
March 12, 2025

to request documentation from A&M demonstrating A&M's compliance with its privacy and data protection obligations herein, and to take other reasonable and appropriate steps to stop and remediate any unauthorized use of Company Personal Data by A&M. (iv) Notwithstanding anything in this paragraph (b) to the contrary, Company acknowledges and agrees: (A) A&M may disclose Company Personal Data to A&M's affiliates to assist A&M in Processing Company Personal Data as reasonably necessary to providing the services; (B) A&M has Company's general authorization for the engagement of sub-processors to assist A&M in Processing Company Personal Data as reasonably necessary to providing the services; provided, each sub-processor shall be subject to written agreement that complies with applicable Data Protection Law and is no less protective than as set forth herein; and (C) where reasonably necessary to provide the services or as instructed by Company, A&M may disclose Company Personal Data to Company's other advisors, constituents, and/or counterparties in the matter for which Company engaged A&M to provide the services.

(c) Company Obligations. (i) Company confirms that it has established all rights (including, where relevant, providing a privacy notice and obtaining any necessary consents) necessary under applicable Data Protection Laws for A&M to provide the services under the Agreement. (ii) Company shall not do or permit anything to be done, through any act or omission, in providing or making available to A&M any Company Personal Data, that would cause A&M or any of its affiliates to contravene or incur any liability under any Data Protection Laws. (iii) If Company's transfer of Company Personal Data to A&M would be prohibited by the EU General Data Protection Regulation 2016/679 of the European Parliament and of the Council ("GDPR") or other Data Protection Laws in the absence of an adequacy decision, standard contractual clauses, or other permitted transfer mechanism, Company shall be responsible for ensuring that appropriate safeguards are in place including, where applicable, by entering into standard contractual clauses with A&M. (iv) Company shall use its reasonable efforts, where practicable, to limit the Personal Data that it provides or makes available to A&M to information that is necessary and relevant for A&M's performance of the services, including by removing and/or de-identifying datasets, and to notify A&M in advance regarding categories, types and volume of Personal Data that it will provide or make available so that the parties can implement appropriate data transmission, handling and storage safeguards. (v) If Company is a covered entity or business associate as defined under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Company shall not disclose protected health information (PHI) or electronic protected health information (ePHI) to A&M (in its own capacity as a business associate) unless and until the parties have entered into a mutually acceptable HIPAA business associate agreement, which will supersede this Privacy and Data Protection Provision with respect to such PHI/ePHI.

(d) Deidentified Data. To the extent A&M is permitted under the Agreement to deidentify, anonymize and/or aggregate Company Personal Data ("Deidentified Data"), Company acknowledges that A&M undertakes such actions in connection with and for

New Rite Aid, LLC
March 12, 2025

the purpose of performing the services, and Deidentified Data shall not be considered Company Personal Data.

(e) Definitions. (i) "<u>Data Protection Laws</u>" means all laws, rules and regulations pertaining to the privacy and security of Personal Data, including but not limited to CCPA and GDPR; (ii) "<u>Personal Data</u>" means all "personal data", "personal information", "personally identifiable information", "special categories of data", "sensitive personal information", and similarly defined terms under Data Protection Laws; (iii) "<u>Company Personal Data</u>" means any Personal Data that Company provides or makes available to A&M, or that A&M collects directly from individuals, in connection with A&M's performance of the services (but excluding contact details about Company's personnel that A&M processes to manage the business relationship with Company); (iv) "<u>Process</u>" has the meaning under applicable Data Protection Laws, and in all events means to collect, access, analyze, use, store, transfer (including by remote access), or disclose by transmission; and (v) "<u>Personal Data Breach</u>" has the meaning under applicable Data Protection Laws, and in all events means any breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data.

13. <u>Miscellaneous</u>. This Agreement (together with the attached indemnity provisions), and all claims, proceedings or causes of action (whether in contract, tort or statute) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement or the services provided hereunder (the "<u>Related Matters</u>"), shall be governed by, and enforced in accordance with, the internal laws of the State of New York, including its statutes of limitations, without regard to principles of conflict of law that would defer to the laws of another jurisdiction.

The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any Related Matters. The Company and A&M agree, to the extent permitted by applicable law, that any action with respect to any Related Matters shall be brought and adjudicated exclusively in the United States District Court for the Southern District of New York or, if such court lacks jurisdiction, in the New York state courts with jurisdiction over New York, New York; that those courts shall have exclusive jurisdiction over any Related Matters; to submit to the personal jurisdiction of such courts; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue in any legal proceeding.

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M and as approved by the Agent. The Company shall provide notice of any such amendment or modification to the Agent promptly, but in any event, no more than one (1) calendar day after the effectiveness of

New Rite Aid, LLC
March 12, 2025

such amendment or modification.  The Company agrees that A&M may aggregate information provided by or on behalf of the Company during this engagement with information provided by or on behalf of others and use and disclose that information in de-identified form as part of research and advice, including, without limitation, benchmarking services.  Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

[*Remainder of Page Intentionally Left Blank*]

New Rite Aid, LLC
March 12, 2025

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _____
      Marc Liebman
      Managing Director

Accepted and agreed:

New Rite Aid, LLC

By: _____
      Matthew Schroeder
      Chief Executive Officer

*[Signature Page to A&M Engagement Letter]*

New Rite Aid, LLC
March 12, 2025

     If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _____
     Marc Liebman
     Managing Director

Accepted and agreed:

New Rite Aid, LLC

By: _____
     Matthew Schroeder
     Chief Executive Officer

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated March 12, 2025 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement"), by and between Alvarez & Marsal North America, LLC ("A&M") and New Rite Aid, LLC and its wholly owned direct and indirect subsidiaries, and their respective assigns and successors (the "Company"), for services to be rendered to the Company by A&M.

A.      The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties.  In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate,

New Rite Aid, LLC
March 12, 2025

search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.  No person found liable for a fraudulent misrepresentation shall

2

New Rite Aid, LLC
March 12, 2025

be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.       In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court.  The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.       Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.       The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

NEW RITE AID, LLC, on behalf of itself       ALVAREZ & MARSAL NORTH
and its wholly owned subsidiaries             AMERICA, LLC


By: _____
Name: Matthew Schroeder                       By: _____
Title:  Chief Executive Officer               Name: Marc Liebman
                                              Title:  Managing Director

New Rite Aid, LLC
March 12, 2025

be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court.  The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

NEW RITE AID, LLC, on behalf of itself          ALVAREZ & MARSAL NORTH
and its wholly owned subsidiaries               AMERICA, LLC


By: _____         By: _____
Name: Matthew Schroeder                 Name: Marc Liebman
Title:  Chief Executive Officer          Title:  Managing Director

**Exhibit B**

**Certification of Marc Liebman**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Andrew N. Rosenberg (admitted *pro hac vice*)<br>Alice Belisle Eaton (admitted *pro hac vice*)<br>Christopher Hopkins (admitted *pro hac vice*)<br>Sean A. Mitchell (admitted *pro hac vice*)<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>arosenberg@paulweiss.com<br>aeaton@paulweiss.com<br>chopkins@paulweiss.com<br>smitchell@paulweiss.com<br>*Proposed Co-Counsel to the Debtors and Debtors in Possession* | **COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Seth Van Aalten, Esq. (admitted *pro hac vice*)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br>svanaalten@coleschotz.com<br>*Proposed Co-Counsel to the Debtors and Debtors in Possession* |
| In re:<br><br>NEW RITE AID CORPORATION, *et. al.*,<br><br>                  Debtors.[1] | Case No. 25-14861 (MBK)<br><br>Chapter 11<br><br>Honorable Michael B. Kaplan, U.S.B.J., Chief<br><br>(Jointly Administered) |

## CERTIFICATION

I, Marc Liebman, certify as follows:

1. I am the Managing Director at Alvarez & Marsal North America, LLC (A&M). A&M is restructuring advisors to the Debtors in the above-captioned chapter 11 cases. I submit this certification in support of A&M's first interim fee application (the "Application") for compensation for services rendered and reimbursement of expenses in connection with restructuring services provided by A&M to the Debtors.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025/. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

2.      There is no proposed arrangement between the debtors and A&M for compensation to be paid

in the above-captioned chapter 11 cases other than as set forth in the Engagement Letter.[2] A&M has no

agreement with any other person or entity to share any compensation received, nor will any such agreement be

made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 26, 2025

Alvarez & Marsal North America, LLC

*/s/ Marc Liebman*
Marc Liebman
Managing Director

---

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Application.