UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**ATTORNEY FEE APPLICATION COVER SHEET
FOR THE PERIOD MAY 5, 2025 THROUGH AUGUST 31, 2025**

In re New Rite Aid, LLC, *et al.*          Applicant: Cole Schotz P.C.

Case No. 25-14861 (MBK)          Client:  Debtors and Debtors in Possession

Chapter 11          Case Filed: May 5, 2025

COMPLETION AND SIGNING OF THIS FORM CONSTITUTES A CERTIFICATION
UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746.

RETENTION ORDER ATTACHED.

          _/s/ Michael D. Sirota_          09/26/2025
          MICHAEL D. SIROTA          Date

| SECTION I FEE SUMMARY |
|---|

First Interim Fee Application Covering the Period
May 5, 2025 through August 31, 2025:

| | |
|---|---|
| FEE TOTALS | $2,862,744.00 |
| DISBURSEMENTS TOTALS | $6,525.60 |
| TOTAL FEE APPLICATION | $2,869,269.60 |

| | FEES | EXPENSES |
|---|---|---|
| TOTAL PREVIOUS FEES REQUESTED: | $2,862,744.00 | $6,525.60 |
| TOTAL FEES ALLOWED TO DATE: | $0.00 | $0.00 |
| TOTAL RETAINER REMAINING: | $938,384.11 | $0.00 |
| TOTAL HOLDBACK (IF APPLICABLE): | $428,022.70[1] | $0.00 |
| TOTAL RECEIVED BY APPLICANT: | $1,712,090.80 | $3,551.20 |

---

[1]   The objection deadline with respect to Cole Schotz's August monthly fee statement has not yet expired; accordingly, the total holdback and total received do not reflect related amounts.

---

**SECTION II**
**CASE HISTORY**

---

(1)     Date cases filed:  May 5, 2025

(2)     Chapter under which cases commenced:  Chapter 11

(3)     Date of retention:   June 10, 2025, *nunc pro tunc* to May 5, 2025. See **Exhibit A**.

        If limit on number of hours or other limitations to retention, set forth: n/a

(4)     Summarize in brief the benefits to the estate and attach supplements as needed:  See narrative portion of fee application.

(5)     Anticipated distribution to creditors:

        (a)     Administration expense: To be paid in accordance with the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2517] (as further amended, supplemented, or modified from time to time, the "Plan").

        (b)     Secured creditors: To be paid in accordance with the Plan.

        (c)     Priority creditors: To be paid in accordance with the Plan.

        (d)     General unsecured creditors: To be paid in accordance with the Plan.

(6)     Final disposition of case and percentage of dividend paid to creditors (if applicable): This is the first interim compensation application.  Final dividend percentages are unknown at this time.

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**

Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al*., <br> Debtors.[2] | Case No. 25-14861 (MBK) <br><br> (Jointly Administered) |

## FIRST INTERIM APPLICATION OF COLE SCHOTZ P.C. FOR COMPENSATION OF PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES PURSUANT TO 11 U.S.C. §§ 327, 328, 330 AND 331

---

[2]   The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Cole Schotz P.C. ("Cole Schotz"), as co-counsel for New Rite Aid LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby submits this first interim application for compensation of professional services rendered and reimbursement of actual and necessary expenses (the "Application") pursuant to (i) sections 327, 328, 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Jersey, (ii) the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases (the "Guidelines"), and (iii) this Court's *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of This Court*, dated June 9, 2025 [Docket No. 767] (the "Interim Compensation Procedures Order"), for professional services rendered by Cole Schotz for the period commencing May 5, 2025 through and including August 31, 2025 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period.  In support of this Application, Cole Schotz respectfully represents as follows:

## **BACKGROUND**

1.      On May 5, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Marc Liebman, Chief Transformation Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 24] and incorporated by reference herein.

2

2.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 7, 2025, the Court entered an order [Docket No. 122] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). On May 15, 2025, the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed the official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 316], as amended and reconstituted on May 19, 2025 [Docket No. 440] (the "Committee").

3.      On September 4, 2025 the Debtors filed the *Debtors' Motion for Entry of an Order (I)(A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballot and Notices in Connection Therewith, (D) Scheduling Certain Dates with Respect Thereto, and (E) Granting Related Relief and (II)(A) Approving, in the Alternative, Dismissal of the Debtors' Chapter 11 Cases, (B) Scheduling Certain Dates with Respect Thereto, and (C) Granting Related Relief* [Docket No. 2289] (the "DS Motion") seeking approval of the Disclosure Statement, defined below, as may be amended, supplemented, or modified.

4.      On September 19, 2025, the Court held a hearing to consider conditional approval of the Disclosure Statement. The Court conditionally approved the Disclosure Statement on the record and, on the same day, the Debtors filed the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2517] (as further amended, supplemented, or modified from time to time, the "Plan") and the *First Amended Disclosure Statement Relating to First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2518] (the "Disclosure Statement").

5.     On September 22, 2025, the Court entered the *Order (I)(A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballot and Notices in Connection Therewith, (D) Scheduling Certain Dates With Respect Thereto, and (E) Granting Related Relief and (II)(A) Scheduling Certain Dates With Respect to the Dismissal of the Chapter 11 Cases, and (B) Granting Related Relief* [Docket No. 2535]. A hearing on confirmation of the Plan is scheduled for October 20, 2025.

## <u>INFORMATION REQUIRED BY THE GUIDELINES</u>

### A.     <u>The Scope of the Application</u>

6.     Consistent with the Guidelines, Cole Schotz discloses the following concerning the scope of the Application:

| | |
|---|---|
| Name of Applicant | Cole Schotz P.C. |
| Name of Client | Debtors in Possession |
| Petition Date | May 5, 2025 |
| Retention Date | Order signed June 10, 2025 [Docket No. 783] ("<u>Retention Order</u>"), effective May 5, 2025. |
| Date of Order Approving Employment | June 10, 2025; a true copy of the Retention Order is attached as **Exhibit A**. |
| Time Period Covered by Application | May 5, 2025 – August 31, 2025 |
| Terms and Conditions of Employment | Hourly |
| Interim / Final | Interim application under 11 U.S.C. § 331 |
| Date and Terms of Administrative Fee Order | On June 9, 2025, this Court entered the Interim Compensation Procedures Order. Pursuant to the Interim Compensation Procedures Order, Professionals (as defined therein) can file monthly fee statements with the Court. If there are no objections to a monthly fee statement, Professionals are entitled to payment of eighty (80%) percent of the fees and one hundred (100%) percent of the expenses requested in their monthly fee statement. The Interim Compensation Procedures Order further provides that Professionals may file interim fee applications for allowance of compensation and reimbursement of expenses of the amount sought in their monthly fee |

4

| | statements, including the twenty percent (20%) holdback pursuant to Section 331 of the Bankruptcy Code at four-month intervals or such other intervals directed by the Court. |
|---|---|
| 11 U.S.C. § 330 | Cole Schotz seeks compensation under 11 U.S.C. § 330. |
| Total Compensation (Fees) Sought this Period | $2,862,744.00 |
| Total Expenses Sought this Period | $6,525.60 |
| Total compensation approved by interim order to date | $0.00 |
| Total expenses approved by interim order to date | $0.00 |
| Blended rate in this application for all attorneys | $837.83 |
| Blended rate in this application for all timekeepers | $777.18 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $1,712,090.80 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $3,551.20 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | 17 |
| If applicable, difference between fees budgeted and compensation sought for this period | Cole Schotz budgeted $3,998,400.00 in fees during the Compensation Period and incurred $2,862,744.00 in compensation during the Compensation Period. |
| Number of professionals billing fewer than 15 hours to the case during this period | 11 |
| Are any rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | [] Yes                   [X] No |
| | n/a |

### B.    Summary of Time Keepers and Rate Increases

7.    With respect to each professional and paraprofessional who billed on the matter during the Compensation Period, Cole Schotz discloses the following information on **Exhibit B** attached: (i) name; (ii) title or position; (iii) primary department, group, or section; (iv) date of first admission to the bar, if applicable; (v) total fees billed included in application; (vi) total

5

hours billed included in application; and (vii) current hourly rate.  No rate increases were implemented during the Compensation Period.

### C.      Customary and Comparable Compensation

8.      Cole Schotz submits its compensation is customary as evidenced by the blended hourly rate data set forth on **Exhibit C** attached for the 2024 calendar year as compared to the Compensation Period.  As set forth in Exhibit C, Cole Schotz's blended hourly rate for all timekeepers during the Compensation Period was $777.18.

### D.      Statements from the Applicant

9.      Consistent with the Guidelines, Cole Schotz answers the following questions:

| Question | Answer |
|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? | No |
| If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? | The total fees requested in this application are not higher by 10% or more than the total budgeted amount for the Compensation Period. |
| Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? | No |
| Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? | Yes (minimal time/fees) |
| Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? | Yes (minimal time/fees) |
| Does the fee application include any rate increases? | No |

### E.      Budget and Staffing Plan

10.      Consistent with the Guidelines, Cole Schotz provided the Debtors with, and the Debtors approved, a budget and staffing plan for the Compensation Period.  Copies of the approved budgets and staffing plan for the Compensation Period are attached hereto as **Exhibits D-1** and **D-2**.  As set forth below, the total hours and fees actually incurred did not exceed the budget by more than 10% in the aggregate during the Compensation Period:

| Month | Hours Budgeted | Hours Incurred | Fees Budgeted | Fees Incurred |
|---|---|---|---|---|
| May 2025 | 1,176.00 | 839.50 | $999,600.00 | $644,253.50 |
| June 2025 | 1,176.00 | 1,006.60 | $999,600.00 | $768,016.00 |
| July 2025 | 1,176.00 | 899.50 | $999,600.00 | $727,844.00 |
| August 2025 | 1,176.00 | 937.90 | $999,600.00 | $722,630.50 |
| **Total** | **4,704.00** | **3,683.50** | **$3,998,400.00** | **$2,862,744.00** |

## SUMMARY OF PROFESSIONAL SERVICES
## RENDERED AND EXPENSES INCURRED

11.     Cole Schotz seeks allowance of compensation for professional services rendered to the Debtors during the Compensation Period in the amount of $2,862,744.00. In addition, Cole Schotz seeks approval for reimbursement of expenses incurred in connection with the rendition of its services in the aggregate amount of $6,525.60. During the Compensation Period, Cole Schotz attorneys and paraprofessionals expended a total of 3,683.50 hours for which compensation is requested. The fees charged by Cole Schotz in these Chapter 11 Cases are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period.

12.     The following summary highlights the major areas in which Cole Schotz rendered services during the Compensation Period. As required by the Guidelines, the summary is organized by project category. A summary chart setting forth the number of hours spent and the amount of compensation requested for each project category is attached as **Exhibit E-1** and a summary chart setting forth the amount of expenses requested by Cole Schotz in this Application is attached as **Exhibit E-2**. Detailed descriptions of services rendered are contained in Cole Schotz's monthly fee statements for the Compensation Period, which appear at Docket Nos. 1360, 1736, 2295, and 2568, and are incorporated herein by reference.

### A.      Asset/Business Disposition

13.     This category includes time expended by Cole Schotz with respect to the Debtors' asset and business disposition. During the Compensation Period, Cole Schotz expended significant time and resources coordinating, preparing for and participating in the auction and sale of the Debtors' numerous store leases and fee owned properties, including drafting and negotiating related orders, assignment agreements, asset purchase agreements and lease termination agreements with various landlords and successful bidders. Additionally, Cole Schotz assisted co-counsel in connection with the sale of the Debtors' other retail and pharmacy assets, including, among others, the sale of assets to CVS Pharmacy Inc.  Cole Schotz also expended significant time and resources related to the closing of numerous of the Debtors' stores and the sale of related inventory. In connection with the foregoing, Cole Schotz reviewed and advised the Debtors and co-counsel on potential sale transactions and related objections. Cole Schotz also coordinated with various parties in interest and the Court regarding the sale timeline and procedures.

### B.      Assumption and Rejection of Leases and Contracts

14.     This category includes significant time expended by Cole Schotz with respect to the Debtors' assumption and rejection of leases and contracts. As part of the sale of the Debtors' lease assets, Cole Schotz assisted the Debtors in determining which leases could be assumed and assigned and which leases should be rejected. With respect to the leases being assumed and assigned, Cole Schotz worked with the Debtors and the Debtors' real estate advisors, A&G Realty Partners, LLC ("A&G"), to market the sale of the leases and conduct auctions pursuant to the Court-approved lease sale procedures.  In connection with the ultimate assignment of leases, Cole Schotz negotiated transactions and worked with bidders (and backup bidders, as necessary) to consummate sale transactions.  Cole Schotz also negotiated the cure amounts due under the

8

leases and negotiated and litigated numerous cure and adequate assurance issues. Cole Schotz conducted regular status calls with the Debtors and the Retained Professionals (defined below) with respect to the assumption and rejection of lease assets and related litigation. Cole Schotz also researched related issues, prepared and commented on briefs and memorandum and negotiated resolutions with respect to the leases.

15.     Additionally, Cole Schotz assisted the Debtors and co-counsel in preparing and filing notices of lease and contract rejection and addressing landlord and counterparty inquiries related to same.  Cole Schotz also addressed objections to the rejection notices.

### C.     Business Operations

16.     This category includes time expended by Cole Schotz with respect to the Debtors' business operations.   During the Compensation Period, Cole Schotz engaged in ongoing discussions with the Retained Professionals and other interested parties, and analyzed and made recommendations to the Debtors with respect to a variety of matters, including, among other things, the Debtors' first and second day pleadings.  Moreover, Cole Schotz actively engaged in discussions with the Debtors, their advisors, and parties in interest regarding vendor issues and related postpetition claims and obligations.

### D.     Case Administration

17.     This category includes time expended by Cole Schotz on a variety of activities relating to the day-to-day management and prosecution of these Chapter 11 Cases, including, among other things, strategizing and coordinating with the Debtors' advisors regarding these Chapter 11 Cases and the customs, rules, and procedures of New Jersey practice.  Cole Schotz has been responsible for interfacing with the U.S. Trustee as well as the Court.  This category also includes time attending various hearings, including the first day hearing and various status and chambers' conferences, and strategizing regarding the drafting and filing of various

administrative motions and applications critical to the smooth and efficient functioning of these Chapter 11 Cases. Cole Schotz's New Jersey expertise has been instrumental to the success of the Chapter 11 Cases.

### E.    Claims Administration and Objections

18.    This category includes time expended by Cole Schotz with respect to the administration of claims against the Debtors' estates. During the Compensation Period, Cole Schotz responded to numerous creditor inquiries, addressed motions to compel payment and advised the Debtors with respect to postpetition claims. Cole Schotz also negotiated and worked to resolve numerous related creditor issues.

### F.    Fee Employment

19.    This category includes time expended by Cole Schotz regarding the retention and compensation of various professionals in the Chapter 11 Cases. Among other things, Cole Schotz conducted a thorough conflicts check analysis and prepared the Debtors' application to retain Cole Schotz as their bankruptcy co-counsel. Cole Schotz assisted the Debtors' other counsel, advisors and related professionals, including A&G, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Guggenheim Securities, LLC, Kroll Restructuring Administration LLC, Jackson Lewis P.C. and Alvarez & Marsal North America, LLC (collectively, the "Retained Professionals") in the preparation, filing, and service of their own professional retention papers and provided counsel regarding the Bankruptcy Rules, the Guidelines, and the Interim Compensation Procedures Order. Cole Schotz served as the primary liaison between the Retained Professionals and the U.S. Trustee regarding various retention and disclosure inquiries and coordinated the drafting and submission of related supplements to the Retained Professionals' retention applications. Separately, Cole Schotz facilitated the filing of

declarations and questionnaires for ordinary course professionals, including responding to and addressing questions and comments from the U.S. Trustee regarding same.

### G. Fee Application Preparation

20.     This category includes time expended by Cole Schotz preparing and filing its own monthly fee statements, advising the other Retained Professionals with respect to their monthly fee statements and filing same, and coordinating the service of the foregoing and the filing of certifications of no objection with regard to same.

### H. Financing

21.     This category includes time expended by Cole Schotz with respect to the Debtors' financing.  During the Compensation Period, Cole Schotz worked with the Debtors and their other Retained Professionals regarding court approval of the debtor-in-possession financing and responding to related issues.  Cole Schotz also assisted co-counsel in addressing objections to the debtor-in-possession financing facility.

### I. Litigation

22.     This category includes time expended by Cole Schotz with respect to various litigation matters other than avoidance action litigation.  During the Compensation Period, Cole Schotz reviewed, advised on and addressed matters relating to the pending appeals arising out of the Debtors' prior chapter 11 cases.  Cole Schotz also addressed issues related to pending adversary proceedings, advised the Debtors and co-counsel with respect to the approval of settlements, prepared for hearings and attended hearings.

### J. Disclosure Statement and Plan of Reorganization

23.     These categories include time Cole Schotz spent strategizing with the Debtors and their advisors regarding the Plan and Disclosure Statement and potential exit strategies. Cole Schotz participated in and advised on the negotiation of the Plan and Disclosure Statement with

11

key constituents, including addressing the Plan and Disclosure Statement timeline and the Plan term sheet.

### K.      **Relief from Stay**

24.      This category includes time expended by Cole Schotz advising the Debtors and co-counsel on matters related to motions for relief from the automatic stay filed by various parties-in-interest in the case, including addressing enforcement of the stay with respect to appeals arising out of Debtors' prior chapter 11 cases.  Cole Schotz reviewed related pleadings and coordinated with co-counsel regarding responses to such motions and enforcement of the stay.   Cole Schotz also prepare correspondence to various parties-in-interest regarding enforcement of the automatic stay and potential stay violations.

### L.      **Reporting**

25.      This time category includes time Cole Schotz spent preparing the Debtors' schedules of assets and liabilities, statements of financial affairs, and monthly operating reports, and responding to U.S. Trustee inquiries regarding same.

### **RELIEF REQUESTED AND BASIS THEREFOR**

26.      The professional services performed by Cole Schotz on the Debtors' behalf during the Compensation Period required an aggregate expenditure of 3,683.50 recorded hours by Cole Schotz's partners, associates, and paraprofessionals.  Of the aggregate time expended, 1,959.20 recorded hours were expended by members of Cole Schotz, 1,244.70 recorded hours were expended by associates, 24.4 hours were expended by summer associates, and 479.60 recorded hours were expended by paraprofessionals.

27.      During the Compensation Period, Cole Schotz's hourly billing rates for attorneys and paraprofessionals ranged from $300.00 to $1,575.00 per hour.  Allowance of compensation in the amount requested would result in a blended hourly billing rate of $777.18, which

represents a blended rate of $300.00, $399.36 and $837.83 for summer associates, paraprofessionals and attorneys, respectively, at Cole Schotz's regular billing rates in effect at the time of the performance of services.

28.     Cole Schotz has incurred $6,525.60 in direct out-of-pocket expenses in providing professional services to the Debtors during the Compensation Period.   These charges are intended to cover Cole Schotz's direct operating costs, which costs are not incorporated into Cole Schotz's billing rates.

29.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual necessary expenses." 11 U.S.C. § 330(a)(1).

30.     Section 330 of the Bankruptcy Code contains two separate criteria, and before determining the reasonableness of the service, the Court must make a threshold inquiry into its necessity.  See In re Engel, 190 B.R. 206, 209 (Bankr. D.N.J. 1995); see also In re Fleming Cos., 304 B.R. 85, 89 (D. Del. 2003) (discussing a two-tiered approach to determining whether compensation should be allowed—first "the court must be satisfied that the attorney performed actual and necessary services" and second "the court must assess a reasonable value for those services").  The majority of courts which have interpreted section 330 of the Bankruptcy Code have held that an element of whether such services are "necessary" is whether they benefitted the bankruptcy estate.  Engel, 190 B.R. at 209.  Further, the test for determining necessity is objective, focusing on what services a reasonable lawyer would have performed under the same circumstances.  In re APW Enclosure Sys., Inc., No. 06-11378 (MFW), 2007 WL 3112414, at *3 (Bankr. D. Del. 2007) (citing Fleming, 304 B.R. at 89).  This test does not rely on hindsight to

determine the ultimate success or failure of the attorney's actions.  See id. (citing, inter alia,

Keate v. Miller (In re Kohl), 95 F.3d 713, 714 (8th Cir. 1996)).

31.     Once the court determines that a service was necessary, it also assesses the

reasonable value of the service.  11 U.S.C. § 303(a)(3).  Section 330(a)(3) of the Bankruptcy

Code sets forth the criteria for the award of such compensation and reimbursement, stating:

> In determining the amount of reasonable compensation to be
> awarded . . . the court shall consider the nature, extent, and the
> value of such services, taking into account all relevant factors,
> including—
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration
> of, or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable
> amount of time commensurate with the complexity, importance,
> and nature of the problem, issue, or task addressed;
>
> (E)     with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and experience
> in the bankruptcy field; and
>
> (F)     whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

Id. U.S.C. § 330(a)(3).

32.     In determining the reasonableness of fees, courts routinely employ the following

twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by

the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved

and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the

14

undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Staiano v. Cain (In re Lan Assocs. XI, L.P.), 192 F.3d 109, 123 n.8 (3d Cir. 1999).

33.     In addition, Section 331 of the Bankruptcy Code provides that a debtor's attorney employed under section 327 of the Bankruptcy Code may apply to the Court for interim compensation not more than once every 120 days after an order for relief in a case under chapter 11. See 11 U.S.C. § 331; see also Interim Compensation Procedures Order.

34.     Here, as described above, Cole Schotz devoted a substantial amount of time and effort to addressing the numerous issues involved in these Chapter 11 Cases. Cole Schotz respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary to effectively represent the Debtors, were performed economically, effectively, and efficiently. Because Cole Schotz's services benefitted the bankruptcy estates, Cole Schotz respectfully submits that it performed "actual and necessary" services compensable under Section 330 of the Bankruptcy Code.

35.     Further, Cole Schotz submits that consideration of the relevant factors enumerated in Lan Assocs. establishes that the compensation requested is reasonable in light of the nature, extent, and value of such services to the Debtors:

(a)     *The Time and Labor Required*. The professional services rendered by Cole Schotz on behalf of the Debtors have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the many issues encountered by the Debtors in these cases with skill and dispatch. Cole Schotz respectfully represents that the services rendered by it were performed efficiently, effectively, and economically.

(b)     *The Novelty and Difficulty of Questions*. Many legal challenges have arisen in the course of these cases particularly related to the lease sale process and the Debtors' other ongoing sale processes. While these issues may not be particularly novel or unique, Cole Schotz's effective assistance on these and other matters has facilitated the efficient resolution of such issues. Cole Schotz's effective assistance has facilitated and will continue to facilitate the resolution of these issues.

15

(c)    *The Skill Required to Perform the Legal Services Properly*.  Cole Schotz believes that its recognized expertise in the area of insolvency proceedings and reorganization and its knowledge of New Jersey practice and procedure contributed to the efficient and effective representation of the Debtors in these Chapter 11 Cases.

(d)    *The Preclusion of Other Employment by Applicant Due to Acceptance of the Case*.  Cole Schotz's representation of the Debtors did not preclude its acceptance of new clients.  However, the issues that arose in these cases required attention on a continuing, and oftentimes emergent, basis, requiring Cole Schotz's professionals to commit significant portions of their time to these Chapter 11 Cases.

(e)    *The Customary Fee*.  The fee sought herein is based on Cole Schotz's normal hourly rates for services of this kind.  Cole Schotz respectfully submits that the hourly rates of its professionals are not unusual given the time expended in attending to the representation of the Debtors.  Cole Schotz's hourly rates and the fees requested herein are commensurate with fees Cole Schotz has been awarded in other Chapter 11 Cases, as well as with fees charged by other attorneys of comparable experience.

(f)    *Whether the Fee is Fixed or Contingent*.  Not applicable.

(g)    *Time Limitations Imposed by Client or other Circumstances*.  Not applicable.

(h)    *The Amount Involved and Results Obtained.*  Cole Schotz respectfully submits that the amount of fees for which compensation is sought is reasonable under the circumstances given the numerous issues that had to be addressed.

(i)    *The Experience, Reputation and Ability of the Attorneys*.  Cole Schotz is a professional association with approximately 200 attorneys that practice extensively in the fields of bankruptcy and corporate restructuring; litigation; real estate; tax, trusts and estates; corporate, finance and business transactions; employment; environmental; construction services and other phases of the law.  Cole Schotz has represented debtors, creditors, creditors' committees, fiduciaries and numerous other parties in hundreds of cases before the Bankruptcy Courts for the District of New Jersey as well as in various other Bankruptcy Courts throughout the country.

(j)    *The Undesirability of the Case*.  Not applicable.

(k)    *Nature and Length of Professional Relationship*. Cole Schotz has represented the Debtors since 2023 in connection with the Debtors' prior chapter 11 cases and post-confirmation matters.  In addition to Cole Schotz's qualification set forth in this Application, Cole Schotz's existing knowledge of the Debtors, their businesses, their prior chapter 11 proceedings and post-confirmation issues rendered Cole Schotz uniquely able to advise the Debtors in these Chapter 11 Cases.

16

(l)     *Awards in Similar Cases*.  As previously indicated, the fees sought herein are commensurate with fees Cole Schotz has been awarded in other chapter 11 cases.

36.     In addition, consistent with section 331 of the Bankruptcy Code, this is Cole Schotz's first interim fee application.  This application is made more than 120 days from the Petition Date.  See 11 U.S.C. § 331.

## **CONCLUSION**

WHEREFORE, Cole Schotz respectfully requests a first interim fee allowance as bankruptcy co-counsel for the Debtors during the Compensation Period in the amount of $2,862,744.00 for fees for services rendered, together with reimbursement of expenses in the amount of $6,525.60, for a total first interim fee award of $2,869,269.60.

Dated:  September 26, 2025

/s/ Michael D. Sirota
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

17

**EXHIBIT A**

**RETENTION ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re:

NEW RITE AID, LLC, *et al.*,

                                        Debtors.[1]

Chapter 11

Case No. 25-14861 (MBK) (Jointly Administered)

**Order Filed on June 10, 2025**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

## ORDER APPROVING THE EMPLOYMENT AND RETENTION OF COLE SCHOTZ P.C. AS CO-COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

The relief set forth on the following pages, numbered three (3) through six (6), is

**ORDERED**.

DATED: June 10, 2025

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

(Page 2)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER APPROVING THE EMPLOYMENT AND RETENTION OF COLE SCHOTZ P.C. AS CO-COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE |

Upon the application (the "Application")[1] of the above captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 327(a), 329, and 330 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, authorizing the Debtors to employ and retain Cole Schotz P.C. ("Cole Schotz") as their bankruptcy co-counsel in these proceedings *nunc pro tunc* to the Petition Date; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference of the Bankruptcy Court Under Title* 11, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been given as provided in the Application, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Application need be provided; and upon the Declarations of Michael D. Sirota, Esq. and Marc Liebman in support thereof; and the Court being satisfied that Cole Schotz does not hold or represent any interest adverse to the Debtors, their estates, or their creditors, and is a disinterested person within the meaning of sections 327 and 101(14) of the Bankruptcy Code, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

(Page 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER APPROVING THE EMPLOYMENT AND RETENTION OF COLE SCHOTZ P.C. AS CO-COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE |

**IT IS HEREBY ORDERED THAT:**

1.      The Application is **GRANTED** as set forth herein.

2.      In accordance with sections 327(a), 329, and 330 of the Bankruptcy Code, the Debtors are hereby authorized and empowered to employ and retain Cole Schotz as their bankruptcy co-counsel in these Chapter 11 Cases effective as of the Petition Date in accordance with the terms set forth in the Application and the Engagement Letter attached hereto as **Exhibit 1** to the extent set forth herein.

3.      Any and all compensation to be paid to Cole Schotz for services rendered on the Debtors' behalf, including compensation for services rendered in connection with the preparation of the petition and accompanying papers, shall be fixed by application to this Court in accordance with sections 330 and 331 of the Bankruptcy Code, such Federal Rules and Local Rules as may then be applicable, and any orders entered in these cases governing the compensation and reimbursement of professionals for services rendered and charges and disbursements incurred.  Cole Schotz also shall make a reasonable effort to comply with the U.S. Trustee Guidelines, both in connection with the Application and the interim and final fee applications to be filed by Cole Schotz in the Chapter 11 Cases.

4.      In order to avoid any duplication of effort and provide services to the Debtors in the most efficient and cost-effective manner, Cole Schotz shall coordinate with Paul, Weiss, Rifkind, Wharton & Garrison LLP and any additional firms the Debtors retain regarding their respective responsibilities in these Chapter 11 Cases.  As such, Cole Schotz shall use its best efforts to avoid

(Page 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | ORDER APPROVING THE EMPLOYMENT AND RETENTION OF COLE SCHOTZ P.C. AS CO-COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE |

duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

5.     Prior to applying any increases in its hourly rates beyond the rates set forth in the Application, Cole Schotz shall provide ten (10) calendar days' prior notice of any such increases to the Debtors, the U.S. Trustee, and the Committee and shall file such notice with the Court.  All parties in interest retain rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

6.     Cole Schotz (i) shall only bill 50% for non-working travel; (ii) shall not seek the reimbursement of any fees or costs, including attorney fees and costs, arising from the defense of any objections to any of Cole Schotz's fee applications in this case; (iii) shall use the billing and expense categories set forth in the US Trustee Guidelines (Exhibit D-1 "Summary of Compensation Requested by Project Category"); and (iv) provide any and all monthly fee statements, interim fee applications, and final fee applications in "LEDES" format to the U.S. Trustee.

7.     Notwithstanding anything in the Application or the Sirota Declaration to the contrary, Cole Schotz shall seek reimbursement from the Debtors' estates for its engagement-related expenses at the firm's actual cost paid.

8.     Notwithstanding anything in the Application and the Sirota Declaration to the contrary, Cole Schotz shall (i) to the extent that Cole Schotz uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these cases, pass through the cost of such Contractors

(Page 5)
Debtors:             NEW RITE AID, LLC, *et al.*
Case No.             25-14861 (MBK)
Caption of Order:    ORDER APPROVING THE EMPLOYMENT AND RETENTION OF COLE
                     SCHOTZ P.C. AS CO-COUNSEL TO THE DEBTORS *NUNC PRO TUNC*
                     TO THE PETITION DATE

at the same rate that Cole Schotz pays the Contractors; (ii) seek reimbursement for actual costs only;

(iii) ensure that the Contractors are subject to the same conflicts checks as required for Cole Schotz;

(iv) file with this Court such disclosures required by Bankruptcy Rule 2014; and (v) attach any such

Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications

filed in these cases. Cole Schotz shall only be required to comply with (iii) – (iv) above concerning any

Contractors that provide document review services. No agreement or understanding exists between

Cole Schotz and any other person, other than as permitted by Bankruptcy Code section 504, to share

compensation received for services rendered in connection with these cases, nor shall Cole Schotz share

or agree to share compensation received for services rendered in connection with these cases with any

other person other than as permitted by Bankruptcy Code section 504.

9.      Notwithstanding Cole Schotz's Standard Terms of Engagement for Legal Services, the

provision that "Our bills are due and payable upon receipt" shall be null and void during the pendency

of these bankruptcy cases.

10.     Notwithstanding Cole Schotz's Standard Terms of Engagement for Legal Services,

during the pendency of the Chapter 11 Cases, Cole Schotz's retainer shall be treated like a security

retainer and shall not be drawn down absent Court order.

11.     As set forth in Cole Schotz's Standard Terms of Engagement for Legal Services, Cole

Schotz's fees and expenses will be considered "earned" at the time they are incurred, notwithstanding

the fact that any such amounts shall only be payable as set forth in any order granting that certain

*Debtors' Motion for Entry of an Administrative Fee Order Establishing Procedures for the Allowance*

(Page 6)
Debtors:             NEW RITE AID, LLC, *et al.*
Case No.             25-14861 (MBK)
Caption of Order:    ORDER APPROVING THE EMPLOYMENT AND RETENTION OF COLE
                     SCHOTZ P.C. AS CO-COUNSEL TO THE DEBTORS *NUNC PRO TUNC*
                     TO THE PETITION DATE

---

*and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by*

*Order of this Court* [Docket No. 334] and shall only be allowed upon entry of a Court order allowing

them.

     12.     Notwithstanding Cole Schotz's Standard Terms of Engagement for Legal Services, the

provision concerning fee disputes is null and void during the pendency of these Chapter 11 Cases.

     13.     To the extent the Application, the Sirota Declaration, or any engagement agreement

pertaining to this retention is inconsistent with this Order, the terms of this Order shall govern.

     14.     The Debtors are authorized to take all action necessary to carry out this Order.

     15.     This Court shall retain jurisdiction to hear and determine all matters arising from or

related to the implementation, interpretation, and/or enforcement of this Order.

# EXHIBIT 1

**Engagement Letter**



Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000    201-489-1536  fax
—
New York
—
Delaware
—
Maryland
—
Texas
—
Florida

Michael D. Sirota
Member
Admitted in NJ and NY

Reply to New Jersey Office
Writer's Direct Line: 201.525.6262
Writer's Direct Fax: 201.678.6262
Writer's E-Mail: msirota@coleschotz.com

March 13, 2025

**ATTORNEY-CLIENT PRIVILEGED**
**PERSONAL AND CONFIDENTIAL**

**Via E-mail: Christin.Bassett@riteaid.com**

Christin Bassett, Esq.
Acting General Counsel & Corporate Secretary
New Rite Aid, LLC
1200 Intrepid Avenue
2nd Fl
Philadelphia, PA 19112

  Re: Engagement Agreement

Dear Christin:

  Thank you for entrusting your legal needs to us.  This letter and the accompanying Standard Terms of Engagement set forth the terms of Cole Schotz P.C.'s representation of New Rite Aid, LLC and its subsidiaries (hereinafter collectively referred to as "the Clients").

  The scope of our representation shall be limited to acting as co-counsel with Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") in an anticipated Chapter 11 case to be filed by the Clients in the United States Bankruptcy Court for the District of New Jersey.  The services the Firm will provide will include taking direction from Paul Weiss with respect to the preparation and filing of the chapter 11 petitions, including review of documents and preparation of the petition with supporting schedules and statements.  During the case, and subject to our ethical obligations discussed above, we will: (1) advise and consult on the prosecution of the chapter 11 case, including all of the legal and administrative requirements of operating in chapter 11; (2) prepare such administrative and procedural applications and motions as may be required for the orderly and efficient conduct of the case; (3) prosecute and defend litigation that may arise during the course of the case; (4) consult with you concerning and participate in the formulation, negotiation, preparation and filing of a plan or plans of reorganization/liquidation and disclosure statement(s) to accompany the plan(s); (5) review and object to claims; (6) analyze, recommend, prepare, and bring causes of action permitted under the Bankruptcy Code; and (7) address conflict matters to the extent necessary and (8) take all steps necessary and appropriate to bring the case to a conclusion.


COLE SCHOTZ P.C.

Christin Bassett, Esq.
March 13, 2025
Page 2

The scope of our engagement can only be extended pursuant to supplemental written agreement. The Clients agree to fully cooperate with us and to provide us with all information relevant to the issues involved in this matter. We agree to provide conscientious, competent and diligent services and at all times will seek to achieve a favorable outcome on a cost-effective basis. If you would like us to expand the scope of our engagement or the parties we represent, it must be subject to a separate written agreement.

The Firm's objective to charge a fair fee for the services rendered is achieved primarily by maintaining accurate records of the time spent by each attorney and paralegal on a particular matter and then billing for their time in accordance with the range of hourly rates established. I will be principally responsible for handling this matter. Presently, my hourly rate is $1,575.00. I anticipate that I will also be working with my partners, Felice Yudkin and Warren Usatine, whose hourly rates are $940.00 and $1,250.00 respectively, among other lawyers and paralegals as needed. In addition to legal fees, our out-of-pocket expenses (as more particularly set forth in our Standard Terms of Engagement) will also be reflected in our monthly invoices.

### Retainer

A retainer is required of clients prior to undertaking representation. The retainer requested in this matter is $1,000,000.00. The amount of the retainer is not a "flat fee" for this representation. The actual fees may be higher or lower depending upon the issues presented and other factors. The bills will be paid in regular intervals from the retainer account as fees are earned and expenses accrue. The retainer will be an evergreen retainer, replenished on a monthly basis (and before a chapter 11 proceeding is filed), such that the amount of the evergreen retainer will always be at least equal to the outstanding unpaid fees and expenses, whether billed or unbilled. We reserve the right, in our discretion, to request an additional retainer or replenishment of the retainer should circumstances warrant.

In the event of a Chapter 11 proceeding, post-petition fees, charges and disbursements will be due and payable immediately in accordance with fee procedures approved by the Bankruptcy Court. The Clients understand that while the arrangement in this paragraph may be altered in whole or in part by the Bankruptcy Court, the Clients shall nonetheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(1). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan of reorganization cannot be confirmed unless these priority expenses are paid in full (unless such claimants agree to different treatment) in cash on the effective date of any reorganization plan. After the petition date, the retainer shall be held and applied against the final Chapter 11 fee application. At the conclusion of our representation of the Clients, we will apply the balance of the retainer against our final statement and refund any excess to the Clients.

This agreement, as well as our entire attorney-client relationship, shall be governed exclusively by State of New Jersey law. Should any dispute arise regarding same which cannot be resolved amicably, the courts of the State of New Jersey shall be the exclusive jurisdiction for the dispute to be litigated.

 COLE SCHOTZ P.C.

Christin Bassett, Esq.
March 13, 2025
Page 3

If this agreement is acceptable, please indicate the Clients' understanding and acceptance of the terms and conditions set forth herein by countersigning and returning a copy of this letter together with the retainer ($1,000,000.00). The Firm's wiring instructions are attached for your convenience.

We look forward to working with you.

Very truly yours,

*/s/ Michael D. Sirota*

Michael D. Sirota

MDS:cdc
Attachment
cc:     Warren A. Usatine, Esq.
        Felice R. Yudkin, Esq.


We consent to the terms and conditions set forth above and in the Standard Terms of Engagement for Legal Services attached herewith.


New Rite Aid, LLC

*Christin Bassett*
_____
By:  Christin Bassett
Title: Acting General Counsel &
        Corporate Secretary


Dated:  March 19, 2025



# STANDARD TERMS OF ENGAGEMENT
# FOR LEGAL SERVICES

This statement sets forth Cole Schotz P.C.'s ("we," "our," or the "Firm") standard terms of engagement as attorneys for the client(s) ("you" or "your") identified in the accompanying Engagement Letter. The Engagement Letter sets forth additional terms and conditions, and those terms control in any case where the Engagement Letter conflicts with these standard terms. The following terms are an integral part of our agreement and should be reviewed carefully. We also suggest that you retain this statement in your files. If at any time you have questions about these terms, please let us know as soon as possible so that we can provide you with timely answers.

## THE SCOPE OF OUR WORK

The scope of the legal services we agree to perform for you is only as expressly described in the Engagement Letter. If at any time you are not certain about the scope of our representation, please contact us for clarification. We are happy to answer any questions you may have.

We will do our best to serve you efficiently. The outcome of any matter is subject to inherent risks and other factors beyond our control. Therefore, we have not made, and cannot make, any guarantees or promises concerning the outcome of this matter. Any statements on our part concerning the likely outcome of a matter are expressions of our professional assessment of the matter in question, and such assessments always present a degree of uncertainty because they are limited by our knowledge of the facts, unsettled areas of the law, changes in the state of the law, equitable considerations, exercise of judgment in the application of the law, and many other unknown factors.

This engagement may result in a variety of tax or other consequences, including without limitation, regulatory matters or potential reporting requirements (such as under the Corporate Transparency Act). Unless specifically stated in the accompanying Engagement Letter, the scope of our engagement does not include such tax, regulatory matters, reporting or other advice, unless expressly contemplated herein. The Firm will only provide tax or any other advice upon your request and entry into a separate written agreement or amendment to this engagement acceptable to you and the Firm.

Also, unless specifically stated in the accompanying Engagement Letter, the scope of our representation does not include determining whether you possess insurance coverage for any of the losses or expenses that you may incur in connection with this matter. You should immediately contact your insurance company or broker if you believe such coverage may exist. Alternatively, you may retain the Firm to assist with making that inquiry and determining coverage, but such expansion of the scope of our engagement must be agreed to in writing.

## WHO PROVIDES THE LEGAL SERVICES

We assign an attorney as your primary contact at the Firm. This should be someone in whom you have confidence and with whom you enjoy working. You are free to request a change of contact person at any time. The legal work we perform for you may be performed by other lawyers, paralegals and legal assistants in the Firm as well. We delegate work among our lawyers, paralegals and legal assistants to promote effective and efficient rendition of necessary services. We are happy to advise you of the names of those attorneys, paralegals and legal assistants who work on your matters and their billing rates.

## GENERATIVE ARTIFICIAL INTELLIGENCE

We anticipate that during the course of this engagement, the firm will use generative artificial intelligence ("GenAI") to enhance and streamline certain aspects of our services. For example, we may use this technology for such things as aiding document analysis, summarizing information and assisting in legal research. Like any technology, GenAI carries some degree of risk, which may include the risk of errors in GenAI-generated content, data security vulnerabilities, and system malfunctions. We have implemented reasonable measures to safeguard against these risks, and our lawyers maintain oversight of GenAI-generated outputs. Accordingly, we believe that the benefits of using this technology outweigh the related risks. By engaging our firm, you hereby consent to our use of this technology.

## HOW FEES ARE SET

We bill you based on the hourly rates for our attorneys and other professionals, depending on the time involved in rendering the necessary services. We record the time spent on your work, such as internal and external meetings, conferences, negotiations, factual and legal research and analysis, court appearances, document preparation and revision, drafting and review of correspondence, travel on your behalf, and other related services.

The hourly rates of our lawyers, paralegals and legal assistants are based on each timekeeper's knowledge and experience in his/her field and are reviewed and adjusted annually (typically in September) to reflect current levels of legal experience, changes in overhead costs, and other relevant factors. Any rate changes will be reflected in our monthly invoices. You will not receive a separate rate change notice.

1


COLE SCHOTZ P.C.

Our current range of hourly rates is as follows:

| | |
|---|---|
| Members | $615.00 to $1,575.00 per hour |
| Special Counsel | $625.00 to $840.00 per hour |
| Associates | $380.00 to $695.00 per hour |
| Paralegals | $315.00 to $460.00 per hour |
| Litigation Support Specialists | $425.00 to $535.00 per hour |
| External Document Reviewers | $250.00 to $495.00 per hour |

We are often requested to estimate the amount of fees and costs likely to be incurred in connection with a particular matter. Whenever possible, we furnish such an estimate based upon our professional judgment, but when we do so, it is always with the understanding that it is not a maximum or fixed-fee quotation. The ultimate cost frequently is more or less than the amount estimated.

For certain well-defined services, we may quote a fixed fee. Generally, however, we do not accept a fixed fee engagement except in such circumstances or pursuant to a special arrangement tailored to the needs of a particular client. In all such situations, the fixed fee arrangement is expressed in the Engagement Letter, setting forth both the amount of the fee and the scope of the services to be provided in exchange for the fixed fee.

In certain situations, we provide legal services on a contingent fee basis. Any such arrangement must be reflected in a written contingent fee agreement.

OUT-OF-POCKET EXPENSES

As part of our representation, we may incur expenses on your behalf, and these must be paid by you on a timely basis. Whenever such costs are incurred, we itemize and bill them. Typical of such costs are conference calls; postage; messenger services, and express delivery charges; filing fees; deposition and transcript costs; witness fees; travel and overnight expenses; copying, scanning and printing charges; computer research charges (e.g. Lexis and Westlaw research); charges from outside experts and consultants (including accountants, appraisers, and other legal counsel) and fees and expenses related to collecting, hosting and processing electronically stored information. We generally request that outside service providers directly bill our clients for individual charges in excess of $500, or we may invoice you for such charges billed to the Firm prior to your regularly scheduled invoicing.

RETAINER AND TRUST DEPOSITS

You may be asked to pay a retainer in connection with our representation of you. If so, the Engagement Letter provides details about the terms of the retainer.

During the course of our representation, it may be necessary for us to hold funds on your behalf in our Attorney Trust Account. Such trust funds will be deposited and held in a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC").

Federal depository insurance coverage is currently limited to $250,000.00 per account holder in each insured financial institution. Funds held for you in our Attorney Trust Account are aggregated with all other funds belonging to you in the same financial institution in determining whether your deposit balance exceeds insurance limits. You will be notified by our trust accounting department of the financial institution(s) being used. The funds being held on your behalf in trust together with other funds not held by us on your behalf but to your credit in the same financial institution may exceed FDIC insurance coverage and therefore may not be insured in the event of a bank failure.

If you have any questions, you may contact our Accounting Department.

BILLING ARRANGEMENTS AND TERMS OF PAYMENT

We bill you on a regular basis, normally each month, for both fees and disbursements. To efficiently render our bills, we may render a bill through a date other than month-end. Fees and expenses, and the associated retainer, will be considered to be "earned" at the time that any fees and expenses are incurred. Our bills are due and payable upon receipt.

If your account becomes delinquent, you agree to promptly bring the account current. If the delinquency continues and you do not arrange satisfactory payment terms, we may withdraw from the representation (subject to court approval, if necessary) and pursue collection of your account. You agree to pay the costs of collecting the debt, including court costs, filing fees, and reasonable attorneys' fees.

FEE DISPUTES

If you disagree with any particular invoice, you must send us a written objection within thirty (30) days of your receipt of the invoice or you will be deemed to have approved the charges. Typically, such disagreements are resolved to the satisfaction of both sides, with little inconvenience or formality. In the event of a fee dispute that is not really resolved, you may have the right to request arbitration under supervision of the state bar for the jurisdictions in which we practice.

POTENTIAL CONFLICTS/UNRELATED MATTERS WAIVER

Our Firm represents many other clients. It is possible that during the time we are representing you some of our present or future clients may have disputes with you. You agree that we may continue to represent, or may undertake in the future to represent, existing or new clients in any matter that is not substantially related to our work for you, even if the interests of such clients in those other matters are directly adverse to your interests. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we

2



have obtained proprietary or other confidential information of a nonpublic nature that, if known to such other client, could be used in any such other matter by such client to your material disadvantage.

In bankruptcy matters, it is possible that we will be asked to represent other creditors or parties-in-interest. You agree that we may continue to represent or may undertake in the future to represent existing and new clients in such matters. Of course, we will not represent another client in such matters who will take action directly adverse to you.

## PRESERVATION OF ELECTRONICALLY STORED AND OTHER INFORMATION

If the matter for which we are engaged involves a dispute which could reasonably lead to litigation, you may be required to produce documents and other materials relating to such matter in the event of litigation. Therefore, it is vital in any such matter that you preserve all documents (hard copy and electronic), data compilations and tangible objects. The requirement to preserve these materials is a continuing one and will last until you are advised to stop. Failure to preserve these materials could result in Court-imposed penalties or sanctions against you and/or others and can expose those involved to claims for spoliation of evidence. In applicable matters, a "Legal Hold Notice" that further discusses these issues will accompany the Engagement Letter.

## TERMINATION

You may terminate our representation at any time by notifying us in writing. Your termination of our services does not affect your responsibility for payment of fees for legal services rendered and out-of-pocket costs incurred before termination and in connection with an orderly transition of the matter, including the collection, processing and transmittal of your file to you or substitute counsel.

Subject to the rules of professional responsibility for the jurisdictions in which we practice, we may withdraw from representation if you fail to abide by these Terms of Engagement as modified by the Engagement Letter, including, for example, nonpayment of fees or costs, misrepresentation or failure to disclose material facts, conflicts of interest with another client, or your failure to communicate or cooperate with us. We try to identify in advance and discuss with our client(s) any situation that may lead to our withdrawal and, if withdrawal ever becomes necessary, we immediately give written notice of our withdrawal. Our right to withdraw depends upon the circumstances existing at the time we seek withdrawal, and we will not withdraw unless withdrawal can be accomplished without violation of applicable rules of professional conduct.

## CONCLUSION OF REPRESENTATION; DISPOSITION OF DOCUMENTS

Unless previously terminated, our representation of you concludes upon our sending our final statement for services rendered in the matter covered in our Engagement Letter. We maintain in confidence any otherwise nonpublic information that you have supplied to us, and that we retain, in accordance with applicable rules of professional conduct. At your request, your papers and property are returned promptly upon receipt of payment for outstanding fees and costs. We may retain copies pertaining to the matter for our files. Any such documents retained by us may be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials after the termination of the engagement. We may also transfer the information on the documents to electronic media. If we are served with a subpoena for your file, we will notify you. If we are required to comply with the subpoena, you will be responsible for the legal fees and costs incurred, including the review and analysis of documents to determine if privileged documents should be withheld.

## DISCLOSURE OF REPRESENTATION

You hereby acknowledge and agree that, subject to the attorney-client privilege, we may represent to third parties that you are a client of the Firm, we may use your logo in connection with marketing and business development initiatives, and we may provide a general description of the services rendered for your benefit.

## POST-ENGAGEMENT MATTERS

You are engaging us to provide legal services in connection with a specific matter. After completion of the matter, changes may occur in the applicable laws or regulations or facts that could have an impact upon your compliance with law, or rights and liabilities. Unless you specifically engage us with regard to future legal development(s) relating to this matter, we have no continuing obligation to advise you with respect to future legal developments concerning the matter (whether arising due to change in fact or law). In addition, and without limiting the generality of the foregoing, it is your responsibility, and we assume no responsibility for keeping track of critical dates, time periods by which notices must be given or advising you of the dates, or time periods by which you must address future deadlines or critical dates such as filings, renewal options, UCC continuation statements, payment due dates or otherwise. Finally, if the Firm is served with a subpoena for the production of documents or testimony relating to or arising from this representation, You agree to pay all reasonable attorneys' fees and costs incurred by the Firm in connection with the subpoena.

3

**EXHIBIT B**

**SUMMARY OF TIMEKEEPERS INCLUDED IN THIS FEE APPLICATION**

| NAME | TITLE OR POSITION | DEPARTMENT, GROUP, OR SECTION | DATE OF FIRST ADMISSION (if applicable) | FEES BILLED | HOURS BILLED | HOURLY RATE[1] |
|---|---|---|---|---|---|---|
| Michael D. Sirota | Member | Bankruptcy | 1986 | $83,160.00 | 52.80 | $1,575.00 |
| Warren A. Usatine | Member | Bankruptcy | 1995 | $86,875.00 | 69.50 | $1,250.00 |
| Seth Van Aalten | Member | Bankruptcy | 2004 | $11,615.00 | 10.10 | $1,150.00 |
| David M. Bass | Member | Bankruptcy | 1994 | $855,377.50 | 795.70 | $1,075.00 |
| Catherine E. Bostock | Member | Bankruptcy | 1994 | $3,200.00 | 3.20 | $1,000.00 |
| Felice R. Yudkin | Member | Bankruptcy | 2005 | $520,948.00 | 554.20 | $940.00 |
| Felice R. Yudkin | Member | Bankruptcy | 2005 | $1,504.00 | 3.20 | $470.00 (travel) |
| Daniel J. Harris | Member | Bankruptcy | 2008 | $70,550.00 | 83.00 | $850.00 |
| Jacob S. Frumkin | Member | Bankruptcy | 2010 | $19,173.00 | 24.90 | $770.00 |
| Mark Tsukerman | Member | Bankruptcy | 2010 | $115,038.00 | 149.40 | $770.00 |
| Wendy M. Berger | Member | Real Estate | 1979 | $9,075.00 | 12.10 | $750.00 |
| David T. Meglino | Member | Litigation | 2008 | $1,200.00 | 1.60 | $750.00 |
| John W. Park | Member | Real Estate | 1994 | $142,275.00 | 189.70 | $750.00 |
| Jullee Kim | Member | Employment | 2013 | $6,664.00 | 9.80 | $680.00 |
| Andreas D. Milliaressis | Associate | Bankruptcy | 2016 | $444,470.00 | 683.80 | $650.00 |
| Bryant P. Churbuck | Associate | Bankruptcy | 2018 | $147,392.00 | 230.30 | $640.00 |
| Alexander L. Ortiz | Associate | Real Estate | 2017 | $49,706.00 | 85.70 | $580.00 |
| Haley G. Brescia | Associate | Environmental | 2022 | $6,958.00 | 14.20 | $490.00 |
| Julie A. Aberasturi | Associate | Bankruptcy | 2023 | $1,634.00 | 3.80 | $430.00 |
| Benjamin M. Fischer | Associate | Bankruptcy | 2024 | $16,426.00 | 38.20 | $430.00 |
| Melissa M. Hartlipp | Associate | Bankruptcy | 2022 | $70,649.00 | 164.30 | $430.00 |

---

[1] No rate increases have been implemented during the Compensation Period.

| Claire E. Cooper | Summer Associate | n/a | n/a | $7,320.00 | 24.40 | $300.00 |
|---|---|---|---|---|---|---|
| Pauline Z. Ratkowiak | Paralegal | Bankruptcy | n/a | $4,414.50 | 10.90 | $405.00 |
| Larry Morton | Paralegal | Bankruptcy | n/a | $4,760.00 | 11.90 | $400.00 |
| Frances Pisano | Paralegal | Bankruptcy | n/a | $33,160.00 | 82.90 | $400.00 |
| Suhailah S. Sallie | Paralegal | Bankruptcy | n/a | $5,160.00 | 12.90 | $400.00 |
| Danielle Delehanty | Paralegal | Bankruptcy | n/a | $133,600.00 | 334.00 | $400.00 |
| Jonathan Caban | Paralegal | Real Estate | n/a | $9,945.00 | 25.50 | $390.00 |
| Kecia Beatty | Paralegal | Real Estate | n/a | $495.00 | 1.50 | $330.00 |

Client Name:              New Rite Aid LLC, *et al.*
Case Number:              25-14861 (MBK)
Applicant's Name:         Cole Schotz P.C.
Date of Application:      September 26, 2025
Interim or Final:         Interim

2

**EXHIBIT C**

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES WITH FEE APPLICATIONS**

(*See* Guidelines ¶ C.3. for definitions of terms used in this Exhibit)

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| (using categories already maintained by the firm) | Billed by New Jersey Office Excluding Bankruptcy[1] | BILLED<br><br>In this fee application |
| Member | $733.01 | $983.39 |
| Counsel | $664.01 | n/a |
| Associate | $437.08 | $604.14 |
| Staff Attorney | $494.46 | n/a |
| Paralegal | $362.13 | 399.36 |
| Other (please define) – Summer Associate | $435.23 | $300.00 |
| All timekeepers aggregated | $598.30 | $777.18 |

Client Name:            New Rite Aid LLC, *et al.*
Case Number:           25-14861 (MBK)
Applicant's Name:      Cole Schotz P.C.
Date of Application:    September 26, 2025
Interim or Final:       Interim

---

[1] In accordance with the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013, the "preceding year" for which these figures were calculated is the 2024 calendar year; blended rates reflect work performed in the preceding year in each of the domestic offices in which timekeepers collectively billed at least 10% of the hours to the case during the application period, excluding all data from bankruptcy law matters.

**EXHIBIT D-1**

**BUDGET FOR THE PERIOD MAY 2025**

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES |
|---|---|---|
| Asset Analysis and Recovery | 0.00 | $0.00 |
| Asset Disposition | 175.00 | $148,750.00 |
| Assumption and Rejection of Leases and Contracts | 175.00 | $148,750.00 |
| Preference Actions/Response | 0.00 | $0.00 |
| Budgeting (Case) | 6.00 | $5,100.00 |
| Business Operations | 100.00 | $85,000.00 |
| Case Administration | 210.00 | $178,500.00 |
| Claims Administration and Objections | 80.00 | $68,000.00 |
| Corporate Governance and Board Matters | 5.00 | $4,250.00 |
| Data Analysis | 0.00 | $0.00 |
| Employee Benefits/Pensions | 15.00 | $12,750.00 |
| Fee Application Preparation | 10.00 | $8,500.00 |
| Fee Employment | 60.00 | $51,000.00 |
| Fee Objections | 0.00 | $0.00 |
| Financing | 75.00 | $63,750.00 |
| Litigation | 150.00 | $127,500.00 |
| Meetings of Creditors | 5.00 | $4,250.00 |
| Disclosure Statement | 25.00 | $21,250.00 |
| Plan of Reorganization | 25.00 | $21,250.00 |
| Real Estate | 0.00 | $0.00 |
| Regulatory Compliance | 0.00 | $0.00 |
| Relief from Stay | 0.00 | $0.00 |
| Reporting | 50.00 | $42,500.00 |
| Tax Issues | 0.00 | $0.00 |
| Valuation | 0.00 | $0.00 |
| Non-Working Travel | 10.00 | $8,500.00 |
| **Total:** | **1,176.00** | **$999,600.00** |

**BUDGET FOR THE PERIOD JUNE 2025**

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES |
|---|---|---|
| Asset Analysis and Recovery | 0.00 | $0.00 |
| Asset Disposition | 215.00 | $182,750.00 |
| Assumption and Rejection of Leases and Contracts | 210.00 | $178,500.00 |
| Preference Actions/Response | 0.00 | $0.00 |
| Budgeting (Case) | 6.00 | $5,100.00 |
| Business Operations | 75.00 | $63,750.00 |
| Case Administration | 100.00 | $85,000.00 |
| Claims Administration and Objections | 80.00 | $68,000.00 |
| Corporate Governance and Board Matters | 5.00 | $4,250.00 |
| Data Analysis | 0.00 | $0.00 |
| Employee Benefits/Pensions | 15.00 | $12,750.00 |
| Fee Application Preparation | 20.00 | $17,000.00 |
| Fee Employment | 30.00 | $25,500.00 |
| Fee Objections | 0.00 | $0.00 |
| Financing | 50.00 | $42,500.00 |
| Litigation | 150.00 | $127,500.00 |
| Meetings of Creditors | 5.00 | $4,250.00 |
| Disclosure Statement | 40.00 | $34,000.00 |
| Plan of Reorganization | 50.00 | $42,500.00 |
| Real Estate | 0.00 | $0.00 |
| Regulatory Compliance | 0.00 | $0.00 |
| Relief from Stay | 100.00 | $85,000.00 |
| Reporting | 15.00 | $12,750.00 |
| Tax Issues | 0.00 | $0.00 |
| Valuation | 0.00 | $0.00 |
| Non-Working Travel | 10.00 | $8,500.00 |
| **Total:** | **1,176.00** | **$999,600.00** |

**BUDGET FOR THE PERIOD JULY 2025**

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES |
|---|---|---|
| Asset Analysis and Recovery | 0.00 | $0.00 |
| Asset Disposition | 225.00 | $191,250.00 |
| Assumption and Rejection of Leases and Contracts | 230.00 | $195,500.00 |
| Preference Actions/Response | 0.00 | $0.00 |
| Budgeting (Case) | 6.00 | $5,100.00 |
| Business Operations | 75.00 | $63,750.00 |
| Case Administration | 100.00 | $85,000.00 |
| Claims Administration and Objections | 80.00 | $68,000.00 |
| Corporate Governance and Board Matters | 5.00 | $4,250.00 |
| Data Analysis | 0.00 | $0.00 |
| Employee Benefits/Pensions | 10.00 | $8,500.00 |
| Fee Application Preparation | 20.00 | $17,000.00 |
| Fee Employment | 30.00 | $25,500.00 |
| Fee Objections | 0.00 | $0.00 |
| Financing | 15.00 | $12,750.00 |
| Litigation | 125.00 | $106,250.00 |
| Meetings of Creditors | 5.00 | $4,250.00 |
| Disclosure Statement | 50.00 | $42,500.00 |
| Plan of Reorganization | 75.00 | $63,750.00 |
| Real Estate | 0.00 | $0.00 |
| Regulatory Compliance | 0.00 | $0.00 |
| Relief from Stay | 100.00 | $85,000.00 |
| Reporting | 15.00 | $12,750.00 |
| Tax Issues | 0.00 | $0.00 |
| Valuation | 0.00 | $0.00 |
| Non-Working Travel | 10.00 | $8,500.00 |
| **Total:** | **1,176.00** | **$999,600.00** |

**BUDGET FOR THE PERIOD AUGUST 2025**

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES |
|---|---|---|
| Asset Analysis and Recovery | 0.00 | $0.00 |
| Asset Disposition | 225.00 | $191,250.00 |
| Assumption and Rejection of Leases and Contracts | 230.00 | $195,500.00 |
| Preference Actions/Response | 0.00 | $0.00 |
| Budgeting (Case) | 6.00 | $5,100.00 |
| Business Operations | 75.00 | $63,750.00 |
| Case Administration | 100.00 | $85,000.00 |
| Claims Administration and Objections | 80.00 | $68,000.00 |
| Corporate Governance and Board Matters | 5.00 | $4,250.00 |
| Data Analysis | 0.00 | $0.00 |
| Employee Benefits/Pensions | 10.00 | $8,500.00 |
| Fee Application Preparation | 20.00 | $17,000.00 |
| Fee Employment | 30.00 | $25,500.00 |
| Fee Objections | 0.00 | $0.00 |
| Financing | 15.00 | $12,750.00 |
| Litigation | 125.00 | $106,250.00 |
| Meetings of Creditors | 5.00 | $4,250.00 |
| Disclosure Statement | 50.00 | $42,500.00 |
| Plan of Reorganization | 75.00 | $63,750.00 |
| Real Estate | 0.00 | $0.00 |
| Regulatory Compliance | 0.00 | $0.00 |
| Relief from Stay | 100.00 | $85,000.00 |
| Reporting | 15.00 | $12,750.00 |
| Tax Issues | 0.00 | $0.00 |
| Valuation | 0.00 | $0.00 |
| Non-Working Travel | 10.00 | $8,500.00 |
| **Total:** | **1,176.00** | **$999,600.00** |

**EXHIBIT D-2**
**STAFFING PLAN FOR THE PERIOD MAY 5, 2025 THROUGH AUGUST 31, 2025**

| | CATEGORY OF TIMEKEEPER (using categories maintained by the firm) | NUMBER OF TIMEKEEPERS EXPECTED TO WORK ON THE MATTER DURING THE BUDGET PERIOD | AVERAGE HOURLY RATE |
|---|---|---|---|
| | Member | 6 | $1,076.67 |
| | Counsel | - | - |
| | Sr. Associate (7 or more years since first admission) | 2 | $645.00 |
| | Associate (4-6 years since first admission) | - | - |
| | Jr. Associate (1-3 years since first admission) | 1 | $430.00 |
| | Paralegal | 2 | $400.00 |
| | Other (please define) – Litigation Support Services | - | - |

This staffing plan (the "Staffing Plan") is being provided pursuant to the Office of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013. The Staffing Plan is Cole Schotz's current best estimate of the professionals and paraprofessionals required to properly staff this matter for the immediate future and is subject to change as the case develops.

**EXHIBIT E-1**
**SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY**
(*See* Guidelines § C.8. for project category information.)

| PROJECT CATEGORY | HOURS BUDGETED | FEES BUDGETED | HOURS BILLED | FEES SOUGHT |
|---|---|---|---|---|
| Asset Analysis | 0.00 | $0.00 | 0.00 | $0.00 |
| Asset/Business Disposition | 840.00 | $714,000.00 | 780.80 | $616,366.50 |
| Assumption and Rejection of Leases and Contracts | 845.00 | $718,250.00 | 989.50 | $873,322.00 |
| Preference Actions/Response | 0.00 | $0.00 | 0.00 | $0.00 |
| Budgeting (Case) | 24.00 | $20,400.00 | 0.00 | $0.00 |
| Business Operations | 325.00 | $276,250.00 | 378.90 | $285,322.00 |
| Case Administration | 510.00 | $433,500.00 | 478.40 | $330,438.50 |
| Claims Administration and Objections | 320.00 | $272,000.00 | 75.10 | $61,803.50 |
| Corporate Governance and Board Matters | 20.00 | $17,000.00 | 0.00 | $0.00 |
| Data Analysis | 0.00 | $0.00 | 0.00 | $0.00 |
| Employee Benefits/Pensions | 50.00 | $42,500.00 | 37.70 | $29,788.00 |
| Fee Application Preparation | 70.00 | $59,500.00 | 115.90 | $59,438.00 |
| Fee Employment | 150.00 | $127,500.00 | 191.80 | $121,228.50 |
| Fee Objections | 0.00 | $0.00 | 0.00 | $0.00 |
| Financing | 155.00 | $131,750.00 | 67.20 | $66,813.50 |
| Litigation | 550.00 | $467,500.00 | 238.20 | $177,277.00 |
| Meetings of Creditors | 20.00 | $17,000.00 | 2.9 | $2,726.00 |
| Disclosure Statement | 165.00 | $140,250.00 | 4.90 | $4,232.00 |
| Plan of Reorganization | 225.00 | $191,250.00 | 29.70 | $24,424.50 |
| Real Estate | 0.00 | $0.00 | 0.00 | $0.00 |
| Regulatory Compliance | 0.00 | $0.00 | 20.80 | $11,446.00 |
| Relief from Stay | 300.00 | $255,000.00 | 163.10 | $131,809.00 |
| Reporting | 95.00 | $80,750.00 | 80.40 | $45,815.50 |
| Tax Issues | 0.00 | $0.00 | 25.00 | $18,989.50 |
| Valuation | 0.00 | $0.00 | 0.00 | $0.00 |
| Non-Working Travel | 40.00 | $34,000.00 | 3.20 | $1,504.00 |
| **Total:** | **4,704.00** | **$3,998,400.00** | **3,683.50** | **$2,862,744.00** |

Client Name:          New Rite Aid LLC, *et al.*
Case Number:          25-14861 (MBK)
Applicant's Name:     Cole Schotz P.C.
Date of Application:  September 26, 2025
Interim or Final:     Interim

**EXHIBIT E-2**

**SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY CATEGORY**

(*See* Guidelines § C.8. for project category information.)

| CATEGORY | AMOUNT |
|---|---|
| In-House Reproduction | $0.00 |
| Outside Reproduction | $0.00 |
| Filing Fees | $350.00 |
| Court Fees | $1,280.20 |
| Court Reporting | $0.00 |
| Travel | $0.00 |
| Delivery Services / Federal Express | $122.00 |
| Other (Working Meals) | $385.95 |
| Other (Transcripts) | $4,387.45 |
| **DISBURSEMENTS TOTAL** | **$6,525.60** |

| | |
|---|---|
| Client Name: | New Rite Aid LLC, *et al.* |
| Case Number: | 25-14861 (MBK) |
| Applicant's Name: | Cole Schotz P.C. |
| Date of Application: | September 26, 2025 |
| Interim or Final: | Interim |