**WEBBER MCGILL LLC**
Douglas J. McGill, Esq.
100 E. Hanover Avenue, Suite 401
Cedar Knolls, New Jersey 07927
Tel: (973) 739-9559
dmcgill@webbermcgill.com
*Attorneys for Red Eagle Management LLC*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>New Rite Aid, LLC, et al.,<br><br>             Debtors. | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

### CERTIFICATION OF TYLER WEBER PURSUANT TO 28 U.S.C. § 1746

I, Tyler Weber, do hereby certify:

1. I am the managing member of Red Eagle Management LLC ("**Red Eagle**"). make this Certification based on my personal knowledge, and in support of Red Eagle's Motion to Allow and Compel Payment of Administrative Claim for Stub Rent and Post-petition Utility Charges (the "**Motion**").

1. Red Eagle is the successor by assignment of that certain that certain Lease Agreement dated December 7, 1995 by and between James E. Kerr, as Trustee of Seeche Realty Trust and Rite Aid of New Hampshire (as amended and extended (the "**Lease**") for the real property commonly known as 92 South Street in Concord, New Hampshire, from which the Debtor operated Rite Aid Store #4282 (the "**Leased Premises**") prior to and after the Petition Date. A true and correct copy of the Lease is attached hereto as Exhibit A.

2. Red Eagle acquired its interest in the Lease by virtue of that certain Assignment and Assumption of Lease dated March 26, 2025, a true and correct copy of which is attached hereto as Exhibit A. B .

3. The Debtor failed to pay rent due April 1, 2025, and May 1, 2025. The Debtor did make the June 1, 2025 and July 1, 2025 base rent payments under the Lease, each in the amount of $15,098.96.

4. The Debtor rejected the Lease, effective July 31, 2025.

5. Red Eagle is entitled to allowance and payment of an administrative expense claim for stub rent for the period May 5, 2025 through May 31, 2025, in the pro-rated amount of $12,661.98.

6. The Debtor has also failed to pay or reimburse Red Eagle for $925.19 of post-petition water charges as required by the Lease. True and correct copies of utility bills supporting such water charges are attached hereto as Exhibit C.

7. For the foregoing reasons, Red Eagle is entitled to allowance and immediate payment of an administrative claim in the aggregate amount of $13,587.17.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on:      September 19, 2025

_____
TYLER WEBER

1884170.1

# EXHIBIT A

s:\area5.leg\sale\9176sh.w3
APG:km – 11/30/95

# Lease

DATE OF LEASE: December 7, 1995

IDENTITY OF LANDLORD:
SEECHE REALTY TRUST
~~c/o Carr Realty~~
2200 L'Ambiance Circle – Unit 201
Naples, Florida 33963
Attn: Leonard Seeche

IDENTITY OF TENANT:
RITE AID OF NEW HAMPSHIRE, INC.
P. O. Box 3165
Harrisburg, Pennsylvania 17105
Attn: Secretary

## WITNESSETH:

### ARTICLE 1 - Grant and Premises

Landlord hereby leases to Tenant that certain premises and building thereon containing approximately 16,330 square feet on the first floor and approximately 10,000 square feet of basement space located at the northwest corner of the intersection of South Street and Avon Street in Concord, New Hampshire, together with the exclusive use of the parking areas, roadways, right of ways, ingress, egress and regress and other common areas and rights benefitting the property as depicted on Exhibit A attached hereto (all of which is hereinafter referred to as "Premises"). The Premises are to be located in the area outlined in red on Exhibit A attached hereto. Landlord represents and warrants that above referenced Exhibit A is a complete and accurate representation of the building, parking areas, access roads, loading docks, passageways and other common areas and facilities, and improvements shown thereon, now completed or under construction or planned for the Premises. The parking lot thereon depicted shall remain free of all structures and obstructions, including temporary and mobile kiosks, except as is shown on Exhibit A.

### ARTICLE 2 - Quiet Enjoyment

Provided Tenant is not in default, Tenant shall have peaceable and quiet enjoyment and possession of the Premises herein demised during the term hereof and any renewals without any hindrance or molestation from Landlord, its agents, servants or employees.

### ARTICLE 3 - Commencement of Term

The lease term shall commence on the earliest of the following dates (which date is hereinafter referred to as the "Commencement Date"):

(a) The date on which Tenant has opened for business in the Premises; or

1

(b) The date which is one hundred twenty (120) days after Landlord notifies Tenant in writing that the Premises are ready for occupancy pursuant to Article 6 hereof (the "Delivery Date").

## ARTICLE 4 - Length of Term

The term of this Lease shall be for fifteen (15) years, following the Commencement Date, unless sooner terminated or extended as herein expressly provided.

## ARTICLE 5 - Renewal Options

Provided Tenant is not in default, Tenant is hereby granted the right to renew this Lease for three (3) successive five (5) year renewal periods. To exercise each such renewal period, Tenant shall be required to give to Landlord written notice at least six (6) months prior to the expiration of the then current term, provided however if Tenant fails to exercise any option right, Tenant's right to exercise said options shall not expire until fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same.

## ARTICLE 6 - Construction of the Premises

Landlord shall deliver the Premises to Tenant in broom-clean condition with all furniture, fixtures, equipment and the like removed from the Premises, but otherwise in AS-IS condition. Tenant shall be entitled to install and construct its standard drug store, storefront and signage substantially consistent with Tenant's prototype plans and specifications attached hereto and a made a part hereof as Exhibit B ("Tenant's Prototype Plans"). Tenant agrees that Tenant will not remove the existing boiler located in the basement of the Premises, provided, however, that Landlord acknowledges and agrees that the boiler is not currently in use and Tenant shall have no obligation to maintain, repair, service or replace same. Notwithstanding the foregoing, Tenant shall be entitled to remove any plumbing, piping, vents or other equipment used or useful in connection with the boiler to the extent reasonably necessary in connection with Tenant's renovation of the Premises.

Notwithstanding anything to the contrary in this Lease, in the event the Premises contains any hazardous materials including, without limitation, asbestos, then and in that event Landlord shall be required to comply with all governmental rules, laws and regulations for the removal of same prior to the delivery of the Premises to Tenant. Any delay in delivery of the Premises due to such hazardous materials shall stay any rent fixup period for Tenant. In the event Landlord fails to comply with all of such governmental rules, laws and regulations on or before March 31 1996, then and in that event Tenant shall have the option to either terminate this Lease or comply with such governmental rules, laws and regulations at Landlord's sole cost and expense. All reasonable costs incurred by Tenant to do such work shall be billed to Landlord (accompanied by written justification for such costs), together with interest at an annual interest rate equal to the Prime Interest rate for commercial loans as published by the Wall Street Journal, plus two (2%) percent; and in the event Landlord fails to pay same, Tenant shall have the right to offset such costs against all rent due under this Lease. Landlord shall remove the existing underground storage tank on the Premises, remediate any contamination existing in connection therewith prior to Tenant's opening for business at the Premises, provided, however, that, in the event that adverse weather conditions prevent Landlord from performing such work during the winter months, Landlord may delay such work until weather conditions permit, but in no event later than April 30, 1996.

## ARTICLE 7 - Outside Date

Landlord shall deliver the Premises to Tenant in accordance with Article 6 no later than February 29, 1996. In the event Landlord is unable to deliver the Premises as specified in Article

2

6, Tenant shall have the right to terminate this Lease by giving written notice to Landlord, in which event neither party shall have any further obligations hereunder.

## ARTICLE 8 - Use of Premises

Tenant shall have the right to use the Premises for any lawful retail or service use, including the right to operate a Rite Aid or full-line drugstore, but Tenant shall not be required to continuously operate at the Premises.

## ARTICLE 9 - Exclusive

In the Premises and within a radius of two (2) miles of the Premises, Landlord shall not, either directly or indirectly, during the term of this Lease and any renewals thereof, lease to or otherwise authorize or permit the operation of any other health and/or beauty aids store or pharmacy or authorize or permit the sale of health and/or beauty aids or prescription drugs by any other parties or entities upon any property now or hereafter owned by Landlord or any other parties or entity under the common ownership with Landlord, either directly or indirectly. Landlord further represents to Tenant that it has not heretofore granted the above rights prior hereto nor will it permit the same in any operation within the above area.

The provisions of the foregoing paragraph shall be a covenant which shall run with the land, and in the event of a breach thereof, Tenant shall be entitled, in addition to any other remedy available to it, to withhold rent, sue for damages, terminate the Lease and/or to obtain injunctive or other equitable relief.

## ARTICLE 10 - Parking Lot

Landlord has constructed all automobile parking areas, driveways, entrances and exits, service drives, lighting, truckway or ways, loading docks, package pick-up stations, pedestrian sidewalks and ramps, landscaped areas, exterior stairways, perimeter fencing and other areas and improvements as shown on Exhibit A (hereinafter referred to as "Parking Lot"). Tenant, its agents, employees, customers and invitees are hereby granted the exclusive right to use all of said Parking Lot for their intended purposes. Tenant shall, at Tenant's cost, be entitled to remodel the Parking Lot, including without limitation, the right to remove, repair or replace existing sidewalks, parking surfaces, curbing and barriers. The Parking Lot shall remain free of all structures and obstructions, including without limitation, temporary or mobile kiosks and Landlord agrees not to change the Parking Lot without Tenant's prior written consent.

Tenant shall keep the Parking Lot in good order and repair, reasonably free of snow, ice and debris and reasonably lighted. Tenant agrees to carry public liability insurance covering the parking areas in an amount not less than Three Million ($3,000,000) Dollars combined single limit, which policy shall name Landlord as an additional insured. Tenant agrees to save and hold the Landlord harmless from any loss cost or suit brought by any person for injuries sustained, or property damage arising out of Landlord's negligence with respect to Tenant's duties under Article 10.

## ARTICLE 11 - Tenant's Improvements

Tenant shall have the right, at Tenant's expense, to make such alterations, additions and improvements to the Premises and the Parking Lot to prepare the Premises for operation of Tenant's business, provided such alterations, additions and improvements are substantially consistent with Tenant's Prototype Plans and Exhibit A. In addition, Tenant may make at its expense, non-structural alterations, additions or improvements to the Premises, all of which shall remain the

3

property of Tenant provided they are not permanent in nature. Tenant shall at all times, maintain fire insurance with extended coverage in an amount adequate to cover the cost of replacement of all such alterations, additions or improvements. Tenant shall deliver to Landlord, certificates of such fire insurance policies which shall contain a clause requiring the insurer to give the Landlord ten (10) days' notice of cancellation of such policies. If Tenant is not in default of this Lease, Tenant may remove such non-permanent alterations, additions and improvements and repair any damage to the Premises occasioned by such removal. Tenant shall promptly pay all contractors and materialmen hired by Tenant to furnish any labor or materials. Should any lien be made or filed, Tenant shall bond against or discharge same within ten (10) days after written request by Landlord. Tenant shall have the further right to make exterior structural alterations with the written consent of Landlord, which shall not be unreasonably withheld, conditioned, or delayed.

## ARTICLE 12 - Signs

Tenant shall have the right, at its expense, to erect on the exterior of the Premises its standard signs, including a pylon sign, provided that such signs shall be structurally sound in conformity with existing municipal regulations.

Tenant shall have the right to install a pylon sign on the Premises, which pylon sign shall be constructed at Tenant's expense in accordance with all applicable municipal codes and regulations. Landlord agrees to cooperate with Tenant in obtaining all necessary permits and approvals in connection with erecting such signs.

## ARTICLE 13 - Repair

Landlord shall maintain in good condition and repair, the structural portions of the Premises, including foundation, bearing walls and columns. Landlord shall also make repairs to all interior walls, ceilings, floors and floor coverings when such repairs are made necessary because of faulty construction or Landlord's failure to keep the structural portions of the Premises in proper repair. Tenant shall otherwise keep the Premises in good order and repair, including the roof, HVAC system, plumbing systems, fire suppression systems and replacement of plate glass except to the extent that the need for such repair results from the act or omission of Landlord or except where same are covered by the standard fire and extended coverage insurance policy. Tenant shall have access to the roof for servicing its heating, ventilation and air conditioning and other equipment which Tenant may install. All installations shall be made, and all repair and maintenance shall be performed, in a good and workmanlike manner by qualified professionals.

## ARTICLE 14 - Liability Insurance

Tenant shall, commencing on the Delivery Date and during the entire term hereof, keep in full force and effect, a policy of public liability and property damage insurance with respect to the Premises, and the business operated by Tenant and any subtenants of Tenant in the Premises in which the limits of public liability shall not be less than Three Million ($3,000,000) Dollars combined single limit. The policy shall name Landlord and Tenant as insured as their interests appear and shall contain a clause that the insurer will give the Landlord ten (10) days prior written notice before it cancels or changes the insurance, except in the case of nonpayment of premiums. A copy of the policy or a certificate of insurance shall be delivered to Landlord.

Tenant agrees to save and hold Landlord harmless from and against any loss, cost or suit brought by any person for injuries sustained, or property damage resulting from Tenant's use or occupancy of the Premises, including without limitation the Parking Lot, except for any such loss, cost or suit resulting from the negligence or willful misconduct of Landlord.

4

### ARTICLE 15 - Mutual Waiver of Subrogation

Each policy of fire insurance with extended coverage insurance carried by Landlord (if any) and Tenant shall provide that the insurer waives any right of subrogation against the other in connection with or arising out of any damage to such property contained in the Premises caused by fire or other risks or casualty covered by such insurance.

In the event that waiver of subrogation endorsement is obtainable only at an additional expense, then the party so requiring such waiver of subrogation endorsement shall either pay the cost of the additional premium for such provisions, or the other party shall be relieved of its obligation to obtain such endorsement.

Neither party, nor its agents, employees or guests, shall be liable to the other for loss or damage caused by any risk covered by such insurance, provided such policies shall be obtainable. This release shall extend to the benefit of any subtenant and the agents, employees and guests of any such subtenant.

### ARTICLE 16 - Utility Charges

Tenant shall be solely responsible for and promptly pay all charges for heat, water, gas, electricity, sanitary sewer or any other utility used or consumed in the Premises from and after the Delivery Date.

### ARTICLE 17 - Estoppel Statement

Within ten (10) days after request by Landlord, Tenant agrees to deliver an estoppel certificate to any proposed mortgagee or purchaser, or to Landlord, certifying (if such be the case) that this Lease is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by Tenant.

### ARTICLE 18 - Subordination

Tenant agrees to subordinate this Lease to any institutional first mortgage, underlying or master lease now or hereafter placed upon the land of which the Premises are a part, and to all advances made or hereafter to be made upon the security thereto. The word "mortgage" as used herein includes mortgages, deeds of trust or similar instruments and the word mortgage, underlying or master lease shall include such modifications, consolidations, extensions, renewals, replacements or substitutes thereof. Provided, however, that if Tenant is not in default of this Lease, its tenancy will not be disturbed but shall continue in full force and effect. As a condition to this Lease, Landlord shall obtain a subordination, non-disturbance attornment agreement in conformance with Exhibit C, from the holders of any and all of the above mortgages or underlying or master leases.

### ARTICLE 19 - Assignment-Subletting

Tenant shall have the right to assign or sublet the premises or any portion thereof, provided, however, that Tenant and Guarantor shall continue to remain liable under this Lease after any such assignment or subletting.

5

## ARTICLE 20 - Governmental Regulations

Tenant shall, at Tenant's sole cost and expense, comply with all of the requirements of all county, municipal, state, federal and other applicable governmental authorities, now in force, or which may hereafter be in force, pertaining to its use of said Premises except that Tenant may defer compliance with and contest same provided Tenant first gives Landlord assurance satisfactory to Landlord against any loss cost or expense on account thereof.  Any changes required by such authorities which are not caused by the act or neglect of the Tenant and which are a responsibility of Landlord, as set forth in this Lease, shall be remedied by Landlord.

## ARTICLE 21 - Eminent Domain

If the whole of the Premises shall be acquired or condemned by Eminent Domain for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate when the Premises are physically taken and all rentals shall cease on said date.  In the event of a taking of any portion of the Premises if such taking materially affects the economic feasibility of the continued operation of Tenant's business, Tenant shall have the option to cancel this Lease.  In the event Tenant determines to remain in operation, Landlord shall, within six (6) months after said condemnation, rebuild the Premises on the space available, and all rent shall be reduced pro rata.

Any substantial interference with access for more than ninety (90) days to the Premises via the main highway or public streets servicing it shall be deemed the basis for Tenant terminating this Lease or abating its rent.

Tenant shall have the further right to receive any relocation damages afforded Tenants under the Eminent Domain laws of the state in which the Premises are located as well as the right to receive compensation or damages for inventory, signs, machinery, equipment, fixtures and all alterations not replacing Landlord's original equipment. Provided, however, that Tenant shall waive all other damages to the extent such damages diminish Landlord's right to recover for its leasehold interest.

## ARTICLE 22 - Destruction of Premises

In the event of damage to the Premises rendering the Premises wholly or partially untenantable, rent and all occupancy charges shall abate wholly or proportionately based upon the portion of the Premises rendered untenantable, as the case may be, during any period of untenantability.  In the event of damage to the Premises by fire or other casualty or cause rendering the Premises partially untenantable, Tenant shall diligently restore the Premises to the extent insurance proceeds are made available to Tenant, plus the amount of any deductible.  In the event of damage by fire or other casualty or cause rendering the Premises substantially untenantable and requiring essentially a rebuilding of the destroyed Premises, Tenant shall have the option of (a) electing to rebuild and/or restore the same within nine (9) months after the occurrence of said casualty (unless delayed through causes beyond its control) or (b) electing to terminate this Lease upon thirty (30) days notice to Landlord and assigning all of Tenant's right, title and interest in insurance proceeds relating to such casualty to Landlord pursuant to coverage required to be maintained by Tenant pursuant to Article 36 below.  This Lease shall be extended by any period of untenantability.

## ARTICLE 23 - Default of Tenant

Tenant shall not be held in default of any term or provision of this Lease unless:

(a) it shall have failed to pay any rental or additional rental due hereunder within ten (10) days after receipt of written notice of default sent to it by Landlord (provided, however, that Landlord shall not be required to give such notice more than twice in any twelve (12) month period), or

(b) it shall have failed to undertake and reasonably pursue a cure of any other such default within thirty (30) days after receipt of written notice from Landlord, or

(c) it shall have failed to discharge any petition in bankruptcy, execution on its property, or assignment for the benefit of creditors within sixty (60) days after receipt of notice thereof.

In the event of any such default, Landlord may declare the term of this Lease terminated, enter into possession of said Premises and sue for and recover all rents as they come due, or Landlord may sue and recover without entering into possession of said Premises. Landlord, further, shall have all rights granted to it under the laws of the State of New Hampshire. Provided, however, that Landlord shall not have the right to accelerate any or all of the rent set forth in this Lease except in the event of a default set forth in Subparagraph (c) above.

## ARTICLE 24 - Access to Landlord

Landlord or Landlord's agent shall have the right to enter the Premises upon reasonable prior notice at reasonable times upon reasonable notice to examine same, and to show them to prospective purchasers of the building and to make such repairs as Landlord may deem necessary or desirable, provided such repairs shall not unreasonably interfere with Tenant's occupancy of or business in the Premises.

## ARTICLE 25 - Force Majeure

If either party shall be delayed or hindered in or prevented from the performance of any act required hereunder, by reason of strikes, lock-outs, labor trouble, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war or other reason of like nature not the fault of the party delayed, then performance of such act shall be excluded for the period of the delay and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay. The provisions of this Article shall not operate or excuse Tenant from the prompt payment of rent, or additional rent or any other payments required by the terms of this Lease, except as same may be excused during delay in delivery, completion or opening of Tenant's Premises.

## ARTICLE 26 - Rent

Tenant shall pay rent as follows:

(a)    During the five (5) year period beginning on the Commencement Date, Tenant shall pay to Landlord annual rent of ONE HUNDRED FIFTY THOUSAND ($150,000) DOLLARS in equal monthly installments of TWELVE THOUSAND FIVE HUNDRED ($12,500) DOLLARS;

(b)    During the five (5) year period beginning on the sixth (5th) anniversary of the Commencement Date, Tenant shall pay to Landlord annual rent of ONE HUNDRED SIXTY FIVE THOUSAND ($165,000) DOLLARS in equal monthly installments of THIRTEEN THOUSAND SEVEN HUNDRED FIFTY ($13,750) DOLLARS;

7

(c)    During the five (5) year period beginning on the tenth (10th) anniversary of the Commencement Date, Tenant shall pay to Landlord annual rent of ONE HUNDRED EIGHTY ONE THOUSAND FIVE HUNDRED ($181,500) DOLLARS in equal monthly installments of FIFTEEN THOUSAND ONE HUNDRED TWENTY FIVE ($15,125) DOLLARS;

(d)    During the first renewal period, if elected by Tenant, Tenant shall pay to Landlord annual rent of ONE HUNDRED NINETY NINE THOUSAND SIX HUNDRED FIFTY ($199,650) DOLLARS in equal monthly installments of SIXTEEN THOUSAND SIX HUNDRED THIRTY SEVEN and 50/100 ($16,637.50) DOLLARS;

(e)    During the second renewal period, if elected by Tenant, Tenant shall pay to Landlord annual rent of TWO HUNDRED NINETEEN THOUSAND SIX HUNDRED FIFTEEN ($219,615) DOLLARS in equal monthly installments of EIGHTEEN THOUSAND THREE HUNDRED ONE and 25/100 ($18,301.25) DOLLARS; and

(f)    During the third renewal period, if elected by Tenant, Tenant shall pay to Landlord annual rent of TWO HUNDRED FORTY ONE THOUSAND FIVE HUNDRED SEVENTY SIX ($241,576) DOLLARS in equal monthly installments of TWENTY THOUSAND ONE HUNDRED THIRTY ONE and 33/100 ($20,131.33) DOLLARS.

Said rent shall be paid in equal monthly installments on or before the first day of each month, in advance. If the term shall commence on a day other than the first day of a month, then minimum rent shall be pro-rated for the balance of said month on a per diem basis.

## ARTICLE 27 - Broker's Fee

Landlord and Tenant mutually warrant, one to another, that there are no real estate brokers entitled to a commission as a result of producing this Lease Agreement and that neither employed or engaged a real estate broker or agent to effectuate this Lease Agreement, except for J. Robert Smyjunas who shall be paid a commission by Landlord pursuant to a separate agreement.

## ARTICLE 28 - Landlord's Title

Landlord covenants and warrants to Tenant that Landlord has good and marketable title to the Premises and other premises in which Tenant is given rights of use by this Lease, that Landlord's title is subject only to the usual title objections, if any, not capable of interfering with Tenant's beneficial use of the Premises, or any part thereof, as permitted under this Lease or other premises on which Tenant is given rights of use by this Lease. Landlord covenants and warrants that the Premises may be used for the purposes of a Rite Aid or full-line drug store

## ARTICLE 29 - Liens

Landlord shall keep the Premises free and discharged of mechanics and materialmen liens and encumbrances affecting the leasehold interest created hereby which are the result of Landlord's act(s) or omission(s). If Tenant shall be made a party to any legal proceedings affecting Tenant's right of possession not caused by any act of Tenant, Landlord will reimburse Tenant for reasonable attorney's fees or other expenses incurred by Tenant in defending its right to this Lease, and any such expenses may be applied by Tenant upon rental due or to become due.

8

## ARTICLE 30 - Notices

All notices required to be sent under the provisions of this Lease to Landlord and Tenant by one another shall be in writing and sent by U.S. mail, certified, return receipt requested, or nationally recognized overnight courier to the addresses set forth on the first page of this Lease with Tenant's notice directed ATTN: Secretary, P.O. Box 3165, Harrisburg, Pennsylvania 17105. All notices shall be deemed given on the date of the actual receipt or, if delivery is refused, the date when delivery is attempted and refused. Notices to be given by Tenant may be given by Rite Aid Corporation with the same force and effect as if given by Tenant.

## ARTICLE 31 - Emergency

Tenant may, if an emergency shall exist, perform any obligation of Landlord hereunder for the account of Landlord, after first notifying Landlord of the same by telephone or telegram of such emergency. In such event, Tenant shall request Landlord to reimburse Tenant for any expenditures made by Tenant. If Landlord fails to reimburse Tenant within thirty (30) days after Tenant's request therefor, Tenant may apply such claim against any subsequent installment(s) of rent.

## ARTICLE 32 - Recording

This Lease shall not be recorded, but a short form or memorandum of this Lease shall be executed and recorded upon the request of either party at the cost of the requesting party.

## ARTICLE 33 - Successors and Assigns

This Lease shall be binding upon and shall inure unto the benefit of the parties hereto and their respective legal representatives, heirs, successors and assigns.

## ARTICLE 34 - Holdover

Should Tenant remain in possession of the Premises after the expiration of the term of this Lease, such holding over shall be deemed to have created and be construed to be a tenancy from month to month, terminable on thirty (30) days written notice from either party to the other.

## ARTICLE 35 - Payment of Real Estate Taxes

Landlord shall pay all taxes assessed and payable with respect to the Premises. Tenant will reimburse Landlord, the actual real estate taxes payable by Landlord for the Premises within thirty (30) days of receiving a bill therefore. The Tenant shall have the right to contest assessments, and Landlord shall fully cooperate with Tenant in any such contest. Tenant may also appeal any tax assessment increase in the name of Landlord, who shall cooperate with Tenant. If by Landlord's efforts Landlord receives any abatement, refund or rebate of said real estate taxes, Landlord shall refund to Tenant, any such real estate taxes less Landlord's cost of obtaining said abatement, refund or rebate. Tenant shall pay all license, privilege, ad valorem or other taxes levied, assessed or charged against it on account of the operation of its business or on account of property belonging to the Tenant. Tenant shall not be liable for any late payment penalties or interest resulting from Landlord's failure to timely pay such real estate taxes, unless such penalty or interest results from Tenant's failure to pay Landlord amounts owed under this Article within thirty (30) days of receiving a bill therefor from Landlord. Upon written request of Landlord, Tenant shall make tax payments due under this Article directly to the appropriate taxing authority provided that Landlord makes prior arrangements to have such taxing authority send all tax bills directly to Tenant.

9

### ARTICLE 36 - Fire Insurance

Tenant shall obtain fire and extended coverage insurance on the Premises in an amount not less than full replacement cost with a reputable insurance company authorized to do business in the State of New Hampshire. Such policy shall be effective as of the Delivery Date and shall name Landlord and Tenant as their interests may appear. Tenant shall be entitled to maintain such insurance as part of a blanket policy covering other properties of Tenant. Within thirty (30) days after the Delivery Date and each annual renewal, Tenant shall provide Landlord with a certificate evidencing such coverage.

### ARTICLE 37 - Hazardous Materials

Tenant shall be responsible for the removal, abatement or monitoring (as and to the extent required by law) of any hazardous material brought onto the Premises by Tenant or Tenant's agent. Landlord shall be responsible for the removal, abatement or monitoring (as and to the extent required by law) of any hazardous material not brought onto the Premises by Tenant or Tenant's agent.

### ARTICLE 38 - Right of First Refusal

Tenant shall have the right of first refusal of the Premises as hereinafter in this Article set forth. If at any time during the term, Landlord shall receive a bona fide offer from a third person for the purchase of the Premises which offer Landlord shall desire to accept, Landlord shall promptly deliver to Tenant a copy of such offer, and Tenant may, within ten (10) days thereafter, elect to purchase the Premises on the same terms as those set forth in such offer, except that Tenant shall be credited, against the purchase price to be paid by the Tenant, with a sum equal to the amount of any brokerage commission, if any, which Landlord shall save by a sale to Tenant. If Landlord shall receive an offer for the purchase of the Premises which is not consummated by delivering a deed to the offerer, the Tenant's right of first refusal shall remain applicable to subsequent offers. If Landlord shall sell the Premises after a failure of Tenant to exercise its right of first refusal such sale shall be subject to this Lease, and the right of first refusal shall continue and shall be applicable to subsequent sales of the Premises.

If the Premises shall be conveyed to the Tenant under this right of first refusal, any prepaid rent shall be apportioned and applied on account of the purchase price.

### ARTICLE 39 - Submission Not An Option

The submission of this document for examination does not constitute an option or offer to lease space at the Premises. This document shall have no binding effect on the parties unless executed by the Landlord and the Tenant and a fully executed copy is delivered to both the Landlord and the Tenant.

### ARTICLE 40 - Termination of Existing Lease

The parties obligations under this Lease are expressly conditioned upon Landlord's execution of an agreement with the existing tenants of the Premises terminating any leases, subleases or other occupancy agreements concerning the Premises. Landlord shall use good faith reasonable efforts to obtain a satisfactory written agreement providing for the termination of the Existing Lease and the vacation of the existing tenant on or before January 22, 1996. If Landlord is unable to obtain such termination agreement on or before February 29, 1996, either party may terminate this

10

Lease upon ten (10) days prior written notice; provided, however, that Tenant may extend such period by delivery of written notice to Landlord on or before the expiration of such ten day period, but in no event later than December 31, 1996. For the purposes of this Article, "reasonable efforts" shall be deemed to include such reasonable terms and conditions as are commercially reasonable given the circumstances, including without limitation, payment by Landlord of consideration in an amount not to exceed Three Hundred Thousand ($300,000) Dollars.

**IN WITNESS WHEREOF**, Landlord and Tenant have signed and sealed this Lease as of the day and year first above written.

Witness/Attest:

Landlord:
**SEECHE REALTY TRUST**
a _____

By: _____
Name: Leonard Seeche
Title: Trustee

Witness:

Tenant:
**RITE AID OF NEW HAMPSHIRE, INC.**

By: _____
Alan P. Garubba
Authorized Representative

## GUARANTY

**RITE AID CORPORATION** hereby unconditionally guarantees the obligations of Tenant, RITE AID OF NEW HAMPSHIRE, INC., to the above lease between SEECHE REALTY TRUST and RITE AID OF NEW HAMPSHIRE, INC., dated December 7, 1995, for premises located at the northwest corner of the intersection of South Street and Avon Street in Concord, New Hampshire.

**RITE AID CORPORATION**

By: _____ (Seal)
Alan P. Garubba
Authorized Representative

11

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF CUMBERLAND, to wit:

On the 7th day of December _____ A.D. 1995, before me, the undersigned officer, personally appeared Alan P. Garubba, who acknowledged himself to be the Authorized Representative of RITE AID OF NEW HAMPSHIRE, INC., a corporation, and that he as such Authorized Representative, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as Authorized Representative.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

My Commission Expires:

Notarial Seal
Linda L. Brown, Notary Public
Lower Allen Twp., Cumberland County
My Commission Expires June 18, 1999

STATE OF ~~PENNSYLVANIA~~ Florida,
COUNTY OF Collier _____, to wit:

On the 5th day of December _____ A.D. 1995, before me, personally appeared Leonard Seeehe _____ who acknowledged himself/herself to be the Trustee _____ of SEECHE REALTY TRUST a _____ _____, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

My Commission Expires:

DAWN E. PEPLINSKI
Notary Public, State of Florida
COMMISSION # CC 431367
EXPIRES JAN. 4, 1999
Atlantic Bonding Co., Inc.

12

L:\Legal.Leg\PAW\Amendmod\4282

# FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE (this "Amendment") is made and entered into as of this 23rd day of February, 2016, by and between SEECHE REALTY TRUST, having an address of c/o A. Leonard Seeche, 720 Reef Point Circle, Naples, FL 34108 ("Landlord") and RITE AID OF NEW HAMPSHIRE, INC., having an address of c/o Rite Aid Corporation, Post Office Box 3165, Harrisburg, Pennsylvania 17105, Attention: Secretary ("Tenant").

## W I T N E S S E T H :

WHEREAS, Landlord and Tenant entered into a Lease dated December 7, 1995 (the "Lease"), in connection with premises located at 92 South Street, Concord, New Hampshire; and

WHEREAS, Tenant's current lease term, as previously extended, expires May 31, 2021 with one (1) five (5) year renewal period remaining; and

WHEREAS, the parties desire to amend the Lease as set forth herein.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.    **Extended Term.**  The parties hereby agree to extend the term of the Lease through May 31, 2026 ("Extended Term").

2.    **Extended Term Rent.**  Notwithstanding anything to the contrary set forth in Article 26 of the Lease, Tenant shall pay annual rent to the Landlord during the Extended Term as follows:

June 1, 2016 through May 31, 2021:  $219,615.00 per year ($18,301.25 per month)
June 1, 2021 through May 31, 2026:  $241,575.96 per year ($20,131.33 per month)

3.    **Additional Renewal Periods.**  Notwithstanding anything to the contrary set forth in Article 5 of the Lease, Tenant is hereby granted the right to renew the Lease for two (2) five

1

(5) year renewal periods. To exercise each, Tenant shall be required to give to Landlord written notice at least six (6) months prior to the expiration of the then current term, provided however if Tenant fails to exercise any option right, Tenant's right to exercise said options shall not expire until fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same.

4.    In the event Tenant elects to renew this Lease for the period June 1, 2026 through May 31, 2031, annual rent shall be Two Hundred Sixty Five Thousand Seven Hundred Fifteen and 00/100 Dollars ($265,715.00) per year, payable in equal monthly installments of Twenty Two Thousand One Hundred Forty Two and 92/100 ($22,142.92) Dollars.

5.    In the event Tenant elects to renew this Lease for the period June 1, 2031 through May 31, 2036, annual rent shall be Two Hundred Ninety Two Thousand Two Hundred Eighty Six and 00/100 Dollars ($292,286.00) per year, payable in equal monthly installments of Twenty Four Thousand Three Hundred Fifty Seven and 17/100 ($24,357.17) Dollars.

6.    **Permitted Use**. Notwithstanding anything in the Lease to the contrary, Landlord hereby agrees that, in addition to the uses currently permitted pursuant to the Lease, Tenant may use and operate in the Premises a medical clinic ("Clinic") to provide services, which may include health services typically provided by nurse practitioners (any RN level nurse and beyond), physicians assistants or physicians, including but not limited to the treatment of common medical conditions, administration of health screenings, examinations and procedures, vaccines and the provision of patient educational materials. Tenant may operate such Clinic under the tradename of "RediClinic" or such other tradename Tenant is using for similar Clinics in other locations.

7.    **Alterations**. Landlord hereby consents to Tenant's installation of the Clinic, provided that the alterations to the Premises required in connection with the Clinic do not materially and adversely impact the structure of the improvements on the Premises. The Clinic shall be constructed by Tenant in accordance with all applicable governmental requirements and the applicable provisions of the Lease. The alterations at the Premises for the Clinic shall remain the property of Tenant, provided they are not permanent in nature. Tenant may, but shall not be obligated to, remove non-permanent portions of the Clinic, provided Tenant repairs any damage to the Premises occasioned by such removal.

8.    **Signage**. Landlord agrees that Tenant may supplement its signage in connection with the operation of the Clinic; provided that such signage shall comply with all applicable governmental requirements and the applicable provisions of the Lease and that Tenant shall be responsible for all cost and expense in connection with obtaining any required permits, installation, operation and maintenance of such sign.

2

9.    **Sublet for Clinic**.  Landlord hereby agrees that, notwithstanding any provisions of the Lease to the contrary, Landlord's consent shall not be required in connection with subletting or licensing of up to 1,000 square feet of the Premises for operation of the Clinic to RediClinic of Massachusetts, LLC or such other entity with whom Tenant has a contractual relationship for purposes of operating the Clinic at the Premises.   Any such sublet or license to use the Premises shall be subject to the terms, conditions and covenants of the Lease, as amended hereby, and, notwithstanding such sublet or license, Tenant shall remain primarily liable for the performance of all terms, conditions and covenants of the Lease.

10.    **No Defaults**.  Landlord acknowledges and affirms that as of the date of this Amendment, Tenant is not in default under any of the terms, covenants, conditions or provisions of the Lease and Landlord has no offsets, claims or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease.

11.    **No Third Party Consents Required**.  Landlord warrants and represents that consent to this Amendment of any ground lessor, mortgagee or any other lending institution having an interest in the Demised Premises is not necessary, however if said consent is necessary, Landlord shall secure the consent as to this Amendment of any ground lessor, mortgagee or any other lending institution having an interest in the Demised Premises by joinder and execution of this Amendment by said ground lessor, mortgagee or any other lending institution having an interest in the Demised Premises.  Landlord further agrees to indemnify, defend and hold Tenant harmless from and against any losses or claims arising from Landlord's failure to obtain consent to this Amendment from any such ground lessor, mortgagee or lending institution.

12.    **Miscellaneous**.  The parties hereto represent that this Agreement has been fully negotiated and is not entered into under economic duress.  Subject to the satisfactory performance of all of the obligations and conditions set forth in this Agreement, the aforesaid parties waive any rights which they might claim under any theory of law or equity to set aside this Agreement including, but not limited to, claims based upon economic duress or hardship, except as otherwise set forth herein.

13.    **Successors and Assignees**.  This Agreement shall bind and inure to the benefit of each of the parties hereto and their respective heirs, personal representatives, predecessors, parents, subsidiaries, affiliates, successors and assigns.

14.    **Governing Law**.  This Agreement, and the rights and obligations of the parties hereunder, shall be construed and governed in accordance with the laws of the State in which the Premises is located.

15.    **Integration**.    This Agreement constitutes the complete agreement and understanding by and between the parties with respect to the amendment of the Lease for the Premises, and supersedes any and all prior representations, understandings and agreements, whether written or oral.  This Agreement may be modified only by an instrument in writing signed by each of the parties hereto.  No provisions of this Agreement may be waived, except in writing signed by the party to be charged with waiver.

16.    **Commission**.  Each party represents and warrants to the other party that it has not had any contact or dealings regarding the Lease, or any communication in connection with the subject matter of this transaction, through any licensed real estate broker or other person who can claim a commission or finder's fee.  In the event that any broker or finder perfects a claim for a commission or finder's fee based upon any contact, dealings or communication with either party, then such party shall indemnify, defend and hold the other party harmless from all costs and expenses (including reasonable attorneys' fees and costs of defense) incurred in connection with such claim.

17.    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement or any counterpart may be executed and delivered by facsimile transmission or email with an executed hard copy to follow.

18.    **Continuing Validity**.  Except as herein modified, all other terms, covenants and conditions of the Lease shall remain in full force and effect and are hereby ratified and confirmed.

19.    **Conflicting Terms**.  In the event of a conflict between the terms of the Lease and this Agreement, the language of this Amendment shall control.

(SIGNATURE LINES TO FOLLOW)

4

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed as of the day and year first above written.

WITNESSES:

LANDLORD:
SEECHE REALTY TRUST

By: _____
Name:  A. Leonard Seeche
Title:  Trustee

_____
James E. Kerr

TENANT:
RITE AID OF NEW HAMPSHIRE, INC.

_____
Patti Webb

By: _____
Joseph J. Notarianni
Vice President

5

DocuSign Envelope ID: 13DB4D18-0E82-45F3-BECF-DF2C6C37A146

Rite Aid Store No. 4282

## AMENDMENT TO LEASE

**THIS AMENDMENT TO LEASE** (this "*Amendment*") is made effective November 1, 2023 (the "*Effective Date*") by and between ___SEECHE REALTY TRUST___ ("*Landlord*"), and RITE AID OF NEW HAMPSHIRE, INC., a ___New Hampshire Corporation___ ("*Tenant*," and together with the Landlord, the "*Parties*" and each, a "*Party*").

## RECITALS

**WHEREAS**, Landlord and Tenant are parties to that certain lease agreement dated 12/07/95 (as amended from time to time thereafter, the "*Lease*"), with respect to that certain premises located at 92 South Street Concord, New Hampshire 03301-2826, which premises is defined and more particularly described in the Lease (the "*Premises*");

**WHEREAS**, on October 15, 2023, Tenant and certain of its debtor affiliates (collectively, the "*Debtors*") commenced a case (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "*Bankruptcy Code*") which is now pending in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*"). The Chapter 11 Cases are being jointly administered under Case Number 23-18993; and

**WHEREAS**, Landlord and Tenant desire to modify certain terms and conditions of the Lease, effective as of the Restructuring Effective Date (as hereinafter defined), as amended by this Amendment.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1.    <u>Capitalized Terms</u>.  Capitalized terms used and not otherwise defined herein shall have the respective meaning assigned to such terms in the Lease.

2.    <u>Effective Date</u>.  This Amendment, and each of its amendments, modifications, and waivers with respect to the Lease as set forth herein, shall be effective on the date that the Lease is assumed or assigned in the Chapter 11 Cases, whether pursuant to (a) procedures approved by the Bankruptcy Court or (b) entry of an order by the Bankruptcy Court approving the assumption or assignment of the Lease, including pursuant to or in connection with a sale of Tenant's assets pursuant to Section 363 of the Bankruptcy Code, confirmation of Tenant's chapter 11 plan of reorganization in the Chapter 11 Cases, or a stand-alone motion for assumption or assignment of the Lease (in each case, the "*Restructuring Effective Date*"); *provided, however,* that Tenant shall obtain the benefit of this Amendment, and this Amendment shall be binding on Landlord, beginning on the Effective Date hereof.  In the event the Restructuring Effective Date does not occur, or the Lease is rejected in accordance with the Bankruptcy Code, this Amendment shall be null and void in all respects, and nothing in this Amendment shall give rise to any claim, causes of action, or damages (compensatory or consequential) against either Party.  Nothing contained in this Amendment is intended to be or shall be construed as or deemed an assumption or an assignment of the Lease, as amended hereby, or any contract or document related thereto under section 365 of the Bankruptcy Code. Prior to the Restructuring Effective Date, Tenant expressly reserves its right, in its sole and absolute discretion, to assume, reject, or assign the Lease pursuant to section 365 of the Bankruptcy Code.

1

DocuSign Envelope ID: 13DB4D18-0E82-45F3-BECF-DF2C6C37A146

Rite Aid Store No. 4282

3.    <u>Lease Modification.</u>

(a)    <u>Term.</u>  Notwithstanding anything in the Lease to the contrary, Landlord and Tenant acknowledge and agree that the current term of the Lease is set to expire as of 5/31/2026 (the "***Original Term***").  Landlord and Tenant further acknowledge and agree that the Original Term is hereby revised to expire on 12/31/2028 ("***Revised Term***").  Such Revised Term, and any applicable existing options to renew, shall be on the same terms and conditions as set forth in the Lease, except as modified or amended in this Amendment.

(b)    <u>Rent.</u>  In lieu of any and all other provisions in the Lease providing for the payment of monies to the Landlord, Landlord and Tenant acknowledge and agree that, from and after the Effective Date and through the remainder of the Revised Term, Tenant shall only be obligated to pay rent (inclusive of any percentage rent, common area maintenance charges, taxes, and insurance premiums and all other additional rent payable directly to the Landlord) in the amount of $181,187.54 per annum ("***Gross Rent***"), payable on the first (1st) day of each month in equal installment of $15,098.96.  In the event that, upon the Effective Date, Tenant has paid rent in excess of the amount herein specified for the period specified above, then Tenant shall be entitled to offset such excess amounts against the next installment(s) of Gross Rent coming due under the Lease until such time as such excess amounts have been recouped in full by Tenant.

(c)    <u>Abatement.</u>  Landlord hereby acknowledges and agrees that Gross Rent, which includes base rent, percentage rent, and additional rent otherwise payable under the Lease (including, without limitation, common area maintenance charges, taxes and insurance premiums) with respect to the Abatement Period (as defined below) is hereby abated and forgiven (the "***Abated Rent***") in full.  Landlord hereby waives any remedy under, or with respect to, the Lease or at law and/or equity arising in connection with, or otherwise related to, the Abated Rent.  As used herein, "***Abatement Period***" shall mean the period beginning on the date the Tenant emerges from its Chapter 11 Cases (the "***Initial Date***") and ending on the last calendar day of the third full calendar month after the calendar month in which the Initial Date occurs.

(d)    <u>Waiver of Claims.</u>  Landlord hereby waives, releases, and discharges Tenant and all of its affiliated companies, the Debtors (as defined in the Chapter 11 Cases), and their bankruptcy estates, and their respective successors and assigns, from any and all claims, damages, obligations, liabilities, actions, and causes of action of every kind and nature whatsoever it may have for any cure payments or other amounts due and owing under the Lease, or that otherwise arose under or in connection with the Lease, through and including the date hereof, including but not limited to claims for so-called "stub rent," (whether or not asserted as administrative priority claims pursuant to Section 503(b) of the Bankruptcy Code) whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, now existing or hereafter arising, including any claims and causes of action for damages, payments, or amounts owing or that may become owing pursuant to section 365(b) of the Bankruptcy Code.

(e)    <u>Attorneys' Fees.</u>  Landlord further acknowledges and agrees that, notwithstanding anything to the contrary in the Lease, Landlord shall not be entitled to receive from Tenant or its affiliates (or charge as rent due from Tenant or its affiliates) any attorneys' fees incurred by Landlord in connection with this Amendment.

4.    <u>No Default and Waiver of Charges.</u>  Landlord acknowledges and affirms that as of the Effective Date, Tenant is not in default under any of the terms, conditions, or provisions of the Lease, and that there exist no events or circumstances which, with the passage of time or the giving of notice or both, constitutes a default under the Lease (including, without limitation, any failure of Tenant to meet its obligations to continuously operate in the Premises).  Landlord further acknowledges and agrees that it has no offsets, claims, or defenses against Tenant with respect to any obligation or duty of Tenant arising

2

DocuSign Envelope ID: 13DB4D18-0E82-45F3-BECF-DF2C6C37A146

Rite Aid Store No. 4282

pursuant to the Lease.  To the extent that any notices of default or non-payment have been delivered to Tenant, all such notices are hereby waived and of no further force or effect.  No default interest, late fees, charges, surcharges, or other fees shall be due, and all such interest, late fees, charges, surcharges, or other fees are waived and shall not apply.

    5.   <u>Force Majeure</u>.  Notwithstanding anything to the contrary contained in the Lease, it is understood and agreed by the Parties that in the event Tenant shall be prevented from operating its business in a commercially reasonable manner by a cause or causes beyond Tenant's control which shall include, without limitation, all labor disputes, civil commotion, shelter in place orders from any governmental authority, widespread disease or other public health and safety concerns (including, without limitation, COVID-19 and SARS-CoV-2), acts of war, war—like operations, invasion, rebellion, hostilities, military or usurped power, sabotage, terrorism, governmental regulations or controls, fire or other casualty, inability to obtain any material, services or financing, or through Acts of God (collectively, "*Force Majeure*"), then Tenant shall be excused from, and shall not be responsible for any failure to perform, any of its covenants and obligations under the Lease (other than payment obligations including, without limitation, the obligation to pay Gross Rent, or obligations that may be cured by the payment of money (*e.g.*, maintaining insurance)) for any period that Force Majeure prevents Tenant from operating its business as described herein.

    6.   <u>Confidentiality</u>.  Tenant and Landlord will keep confidential (a) the terms of this Amendment, and (b) all negotiations and communications, including each Party's representatives in connection with this Amendment (collectively, "*Confidential Information*").  Tenant and Landlord will not disclose or make available any Confidential Information to any other person or entity, except (i) accountants, brokers, attorneys, and other agents of Landlord and Tenant for the sole purpose of providing advice to Landlord and Tenant in connection with the Confidential Information and who agree to preserve the confidential nature of same, or (ii) as required by law.

    7.   <u>Authority</u>.  Each Party represents and warrants that it has the authority and power to enter into this Amendment and that this Amendment constitutes a legal, valid and binding obligation of that Party.

    8.   <u>Notices.</u>

    (a)   Notwithstanding anything to the contrary contained in the Lease, any notices required or permitted to be sent to Tenant under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

If by Certified Mail:
RITE AID OF NEW HAMPSHIRE, INC.
P.O. Box 3165
Harrisburg PA 17105
Attn: Legal Department

If by Overnight Courier:
RITE AID OF NEW HAMPSHIRE, INC.
200 Newberry Commons
Etters PA 17319
Attn: Legal Department

DocuSign Envelope ID: 13DB4D18-0E82-45F3-BECF-DF2C6C37A146

Rite Aid Store No. 4282

(b)    Notwithstanding anything to the contrary contained in the Lease any notices required or permitted to be sent to Landlord under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

Name:    *JAMES E. KERR, ESQUIRE*
Address:    *3451 BONITA BAY BLVD., SUITE 206*
         *BONITA SPRINGS, FL 34134*
Email:    *JAMES.KERR@HENLAW.COM*
Telephone:    *239-344-1130*

9.    Miscellaneous.

(a)    Landlord and Tenant each hereby represents that it has dealt with no party or broker in connection with this Amendment [except for A&G Real Estate Partners (***"Tenant's Broker"***). Any and all fees that may be due to Tenant's Broker shall be paid by Tenant pursuant to a separate agreement]. Insofar as each Party knows, no other broker negotiated this Amendment or is entitled to any commission in connection therewith. Landlord and Tenant each agrees to indemnify, defend and hold the other harmless from and against any and all claims, loss, cost and damages (including reasonable attorney fees and court costs) suffered or incurred by the representing Party as a result of a breach of this representation.

(b)    This Amendment may be executed in counterparts, each of which shall constitute an original, and which together shall constitute one and the same agreement. This Amendment may be executed or delivered by electronic or facsimile means, and copies of executed signature pages stored electronically in portable document format (.pdf) shall be binding as originals. Neither Party shall record this Amendment without the express prior written consent of the other Party.

(c)    Subject to the other terms of this Amendment, each of Landlord and Tenant agree to execute and deliver such other instruments and perform such other acts, in addition to the matters herein specified, as may be reasonably necessary, from time to time, to effectuate the modifications, waivers and amendments contemplated by this Amendment.

(d)    This Amendment, and all covenants contained herein, shall be binding and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.

(e)    The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect.

(f)    Except as modified as set forth in this Amendment, all of the terms and provisions of the Lease remain unchanged and in full force and effect and Landlord and Tenant hereby ratify and confirm same. Landlord and Tenant acknowledge and agree that the Lease, as modified by this Amendment, sets forth the entire agreement between Landlord and Tenant and there are no other agreements, understandings, undertakings, representations, or warranties among the Parties with respect to the subject matter hereof except as set forth herein. In case of any conflict between the terms and provisions of the Lease and the terms and provisions of this Amendment, the terms and provisions of this Amendment shall control.

4

DocuSign Envelope ID: 13DB4D18-0E82-45F3-BECF-DF2C6C37A146

Rite Aid Store No. 4282

[*signature pages follow*]

DocuSign Envelope ID: 13DB4D18-0E82-45F3-BECF-DF2C6C37A146

Rite Aid Store No. 4282

**IN WITNESS WHEREOF,** the Parties hereto have executed this Amendment effective as of the Effective Date.

**LANDLORD:**

_JAMES E. KERR, TRUSTEE, SEECHE REALTY TRUST DATED 01/04/1990_

By: _J. E. K., Trustee_
Name: _JAMES E. KERR_
Title: _TRUSTEE_

**TENANT:**

RITE AID OF NEW HAMPSHIRE, INC.

By: _Lisa Winnick_
   DocuSigned by:
   61883AB2156A42C...
Name:
Title:

6

DocuSign Envelope ID: 13DB4D18-0E82-45F3-BECF-DF2C6C37A146

Rite Aid Store No. 4282

NOTARIES APPLICABLE ONLY IN OHIO AND WASHINGTON

STATE OF __FLORIDA__

COUNTY OF __LEE__

On the __31ST__ day of __OCTOBER__, A.D. 2023, before me, the undersigned officer, personally appeared __JAMES E. KERR__, who acknowledged him/herself to be the __TRUSTEE__ of __SEECHE REALTY TRUST__ a _____ and that (s)he as such _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by him/herself as __TRUSTEE OF THE SEECHE. REALTY TRUST DTD 1/4/90__

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

DENISE M. EDWARDS
Commission # HH 225983
Expires March 26, 2026

_Denise M. Edwards_
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF CUMBERLAND

On the __11th__ day of __December__, A.D. 2023, before me, the undersigned authorized representative, personally appeared Lisa M. Winnick, who acknowledged herself to be the Vice President of _____, a(n) _____, and that she as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by herself as Vice President

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

DocuSigned by:
_Linda Brown_
B150E167A7A34F6...
My Commission Expires:

LINDA L. BROWN
Notary Public - Notary Seal
Commonwealth of Pennsylvania
Cumberland County
Commission Number 1018407
My Commission Expires 6/24/2024

Rite Aid Store No. 4282

## AMENDMENT TO LEASE

THIS AMENDMENT TO LEASE (this *"Amendment"*) is made effective June 20, 2024 (the *"Effective Date"*) by and between SEECHE REALTY TRUST ("*Landlord*"), and RITE AID OF NEW HAMPSHIRE, INC., a N. H. Corporation ("Tenant," and together with the Landlord, the *"Parties"* and each, a *"Party"*).

## RECITALS

WHEREAS, Landlord and Tenant are parties to that certain lease agreement dated 12/7/95 * (as amended from time to time thereafter, the *"Lease"*), with respect to that certain premises located at 92 South Street Concord, New Hampshire 03301-2826, which premises is defined and more particularly described in the Lease (the *"Premises"*);    * as amended on 11/01/2023

WHEREAS, on October 15, 2023, Tenant and certain of its debtor affiliates (collectively, the *"Debtors"*) commenced a case (the *"Chapter 11 Cases"*) under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the *"Bankruptcy Code"*) which is now pending in the United States Bankruptcy Court for the District of New Jersey (the *"Bankruptcy Court"*). The Chapter 11 Cases are being jointly administered under Case Number 23-18993; and

WHEREAS, Landlord and Tenant desire to modify certain terms and conditions of the Lease, effective as of the Restructuring Effective Date (as hereinafter defined), as amended by this Amendment.

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1.    <u>Capitalized Terms</u>. Capitalized terms used and not otherwise defined herein shall have the respective meaning assigned to such terms in the Lease.

2.    <u>Effective Date</u>. This Amendment, and each of its amendments, modifications, and waivers with respect to the Lease as set forth herein, shall be effective on the date that the Lease is assumed or assigned in the Chapter 11 Cases, pursuant to entry of an order by the Bankruptcy Court approving the assumption of the Lease and confirming the Debtors' chapter 11 plan of reorganization in the Chapter 11 Cases (the *"Restructuring Effective Date"*). In the event the Restructuring Effective Date does not occur, or the Lease is rejected in accordance with the Bankruptcy Code, this Amendment shall be null and void in all respects, and nothing in this Amendment shall give rise to any claim, causes of action, or damages (compensatory or consequential) against either Party. Nothing contained in this Amendment is intended to be or shall be construed as or deemed an assumption or an assignment of the Lease, as amended hereby, or any contract or document related thereto under section 365 of the Bankruptcy Code. Prior to the Restructuring Effective Date, Tenant expressly reserves its right, in its sole and absolute discretion, to assume, reject, or assign the Lease pursuant to section 365 of the Bankruptcy Code.

3.    <u>Lease Modification</u>.

(a)    <u>Term</u>. Notwithstanding anything in the Lease to the contrary, Landlord and Tenant acknowledge and agree that Tenant shall have the option to terminate the Lease (the *"Termination Option"*) effective on July 31, 2025 (the *"Early Termination Date"*); *provided* that Tenant issues notice to

1

Rite Aid Store No. 4282

Landlord of Tenant's election to exercise the Termination Option no later than three (3) months prior to the Early Termination Date.

(b)    Attorneys' Fees.  Landlord further acknowledges and agrees that, notwithstanding anything to the contrary in the Lease, Landlord shall not be entitled to receive from Tenant or its affiliates (or charge as rent due from Tenant or its affiliates) any attorneys' fees incurred by Landlord in connection with this Amendment.

4.    Authority.  Each Party represents and warrants that it has the authority and power to enter into this Amendment and that this Amendment constitutes a legal, valid and binding obligation of that Party.

5.    Notices.

(a)    Notwithstanding anything to the contrary contained in the Lease, any notices required or permitted to be sent to Tenant under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

If by Certified Mail:
RITE AID OF NEW HAMPSHIRE, INC.
P.O. Box 3165
Harrisburg PA 17105
Attn: Legal Department

If by Overnight Courier:
RITE AID OF NEW HAMPSHIRE, INC.
200 Newberry Commons
Etters PA 17319
Attn: Legal Department

(b)    Notwithstanding anything to the contrary contained in the Lease any notices required or permitted to be sent to Landlord under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

Name:        *James E. Kerr, Esquire*
Address:      *3451 Bonita Bay Blvd., Suite 206*
             *Bonita Springs, FL 34134*
Email:        *james.kerr@henlaw.com*
Telephone:    *239-344-1130*

6.    Miscellaneous.

(a)    This Amendment may be executed in counterparts, each of which shall constitute an original, and which together shall constitute one and the same agreement.  This Amendment may be executed or delivered by electronic or facsimile means, and copies of executed signature pages stored electronically in portable document format (.pdf) shall be binding as originals.  Neither Party shall record this Amendment without the express prior written consent of the other Party.  Additions, modifications and/or alterations to the language of this Amendment are subject to written approval of the Parties.

2

Rite Aid Store No. 4282

(b)    Subject to the other terms of this Amendment, each of Landlord and Tenant agree to execute and deliver such other instruments and perform such other acts, in addition to the matters herein specified, as may be reasonably necessary, from time to time, to effectuate the modifications, waivers and amendments contemplated by this Amendment.

(c)    This Amendment, and all covenants contained herein, shall be binding and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.

(d)    The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect.

(e)    Except as modified as set forth in this Amendment, all of the terms and provisions of the Lease remain unchanged and in full force and effect and Landlord and Tenant hereby ratify and confirm same.  Landlord and Tenant acknowledge and agree that the Lease, as modified by this Amendment, sets forth the entire agreement between Landlord and Tenant and there are no other agreements, understandings, undertakings, representations, or warranties among the Parties with respect to the subject matter hereof except as set forth herein.  In case of any conflict between the terms and provisions of the Lease and the terms and provisions of this Amendment, the terms and provisions of this Amendment shall control.

*[signature pages follow]*

3

Rite Aid Store No. 4282

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment effective as of the Effective Date.

**LANDLORD:**

JAMES E. KERR, TRUSTEE, SEECHE REALTY TRUST DATED 01/04/1990

By: _J_C_K____, Trustee

Name: JAMES E. KERR

Title: TRUSTEE

**TENANT:**

RITE AID OF NEW HAMPSHIRE, INC.

By: _/s/ Lisa M. Winnick_

Name: Lisa M. Winnick

Title: Vice President

4

# EXHIBIT B

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (the **"Assignment"**) is made and entered into effective as of the 26th day of March, 2025 (the **"Effective Date"**), by and between JAMES E. KERR, as Trustee of the SEECHE REALTY TRUST, a trust created by declaration dated January 4, 1990 **("Assignor")** and RED EAGLE MANAGEMENT LLC, a New Hampshire limited liability company **("Assignee")**, pursuant to that certain Purchase and Sale Agreement dated December 5, 2025, as amended, by and between Assignor and Assignee (the **"Purchase Agreement")**. Assignor and Assignee are sometimes individually referred to as a **"Party"** and collectively as the **"Parties."**

WITNESSETH:

WHEREAS, Assignor and RITE AID OF NEW HAMPSHIRE, INC. are parties to that certain Lease Agreement, dated December 7, 1995, as amended by that certain First Amendment to Lease dated February 23, 2016, that certain Amendment to Lease dated November 1, 2023, and that certain Amendment to Lease dated June 20, 2024 (collectively, the **"Lease"**) a copy of which is attached hereto as **Exhibit A,** for the property commonly known as 92 South Street, Concord, New Hampshire as more particularly described in the Lease (the **"Premises")**;

WHEREAS, Assignor desires to assign, transfer and convey all its right, title and interest in, to and under the Lease to Assignee, upon the terms and conditions set forth in this Assignment; and

WHEREAS, Assignee has agreed to assume Assignor's obligations and liabilities under the Lease to the extent provided in this Assignment.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.      Defined Terms. For purposes of this Assignment, including, but not limited to, the foregoing recitals, all capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement and the Lease, respectively.

2.      Assignment. Assignor hereby assigns to Assignee all of Assignor's right, title and interest in, to and under the Lease arising from and after the Effective Date. As between Assignor and Assignee, this Assignment shall entitle Assignee to exercise and enforce all rights with respect to the Lease from and after the Effective Date.

3.      Assumption. Assignee hereby assumes all the obligations and liabilities of Assignor under the Lease arising from and after the Effective Date..

4.      Assignor's Certification. Assignor represents and warrants to Assignee that: (i) a true, correct, accurate and complete copy of the Lease is attached hereto as **Exhibit A;** (ii) Assignor is the holder of the landlord's interest in the Lease; (iii) Assignor is duly authorized and empowered to enter into this Assignment; (iv) the Lease is in full force and effect and has not been further amended, modified, or supplemented; and (v) to Assignor's knowledge, neither Assignor nor the Landlord is in default under the Lease, and (vi) to Assignor's knowledge, no event, condition,

matter or circumstance exists that with the giving of notice, the passage of time, or both, would constitute such a default.

     **5.**   **Assignee's Certification**. Assignee represents and warrants to Assignor that Assignee is duly authorized and empowered to enter into this Assignment.

     **6.**   **Further Assurances**. Assignor and Assignee shall execute, deliver, acknowledge and file such other documents and take such further actions as may be reasonably requested from time to time by the other Party to give effect to and carry out the transactions contemplated in this Assignment.

     **7.**   **Severability**. If any portion, provision, or part of this Assignment is held, determined, or adjudicated to be invalid, unenforceable or void for any reason whatsoever, each such portion, provision or part shall be severed from the remaining portions, provisions or parts of this Assignment and shall not affect the validity or enforceability of any remaining portions, provisions or parts.

     **8.**   **Governing Law**. This Assignment shall be governed by the laws of the State of New Hampshire.

     **9.**   **Binding Effect**. This Assignment shall be binding upon and inure to the benefit of the Parties hereto and their respective members, managers, employees, agents, representatives, successors, assigns, heirs, and beneficiaries.

     **10.**   **Exhibits**. The parties acknowledge and agree that the exhibit referenced in this Assignment is attached hereto and incorporated herein by reference.

     **11.**   **Counterparts**. This Assignment may be executed in multiple counterparts, each of which shall be deemed an original, and all such counterparts together shall constitute one and the same instrument.

*[SIGNATURES ON THE FOLLOWING PAGES]*

**IN WITNESS WHEREOF,** the parties have executed this Assignment and Assumption of Lease as of the date set forth above.

ASSIGNOR:

**SEECHE REALTY TRUST**

By: _James E. Kerr, Trustee_
Name: James E. Kerr
Title: Trustee, duly authorized

ASSIGNEE:

**RED EAGLE MANAGEMENT LLC**

By: _Tyler J. Weber_
Name: Tyler J. Weber
Title: Manager, duly authorized

**EXHIBIT A**

**LEASE**

# EXHIBIT C



City of Concord
General Services
311 N. State St
Concord NH 03301

**Utility Bill**
**CUSTOMER COPY**
Please keep this portion for your records.

| CUSTOMER NAME | | CUSTOMER NO. | PARCEL ID | SERVICE LOCATION |
|---|---|---|---|---|
| Tyler J. Weber | | 6983 | 1328 | 92 -94 SOUTH ST |

| BILL NUMBER | BILL DATE | ACCOUNT # | ACCOUNT TYPE | DUE DATE |
|---|---|---|---|---|
| 461439 | 05/15/2025 | 530219 | Commercial | 06/15/2025 |

| DESCRIPTION | METER NUMBER | READ CODE | PREVIOUS READ DATE | CURRENT READ DATE | PREVIOUS READING | CURRENT READING | USAGE | RATE | CHARGE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| Water Consumption | 50215462 | A | 04/02/2025 | 05/05/2025 | 377 | 382 | 5 | 2 Mtr | $17.15 |
| Fixed Monthly Water Charge | | | 04/02/2025 | 05/05/2025 | | | | | $50.97 |
| Sewer Consumption | | | 04/02/2025 | 05/05/2025 | | | | | $28.20 |
| Fixed Monthly Sewer Charge | | | 04/02/2025 | 05/05/2025 | | | | | $79.21 |
| Fire Line Charge | | | 04/02/2025 | 05/05/2025 | | | | | $11.67 |

The City of Concord annual Water Quality Report is available online at www.concordnh.gov/waterquality2025. Any questions, or to receive a printed copy, please call Concord General Services at 603-228-2737.

| CONSUMPTION HISTORY | |
|---|---|
| CYCLE | USAGE |
| CURR | 5 |
| 04/25 | 1 |
| 03/25 | 3 |
| 03/25 | 5 |
| 01/25 | 9 |
| 12/24 | 6 |
| 12/24 | 5 |
| 10/24 | 6 |
| 09/24 | 4 |
| 09/24 | 5 |
| 07/24 | 8 |
| 07/24 | 7 |
| 05/24 | 5 |

READ CODE KEY
A    AMR
E    Estimated
M    Manual

| | |
|---|---|
| Previous Balance | -$36.28 |
| Total Current Billing | $187.20 |
| Adjustments | $0.00 |
| Less Payments Received | $0.00 |
| Penalties | $0.00 |
| **Total Amount Due** | **$150.92** |

·········✂· DETACH AND RETURN THE PORTION BELOW WITH YOUR PAYMENT ·✂············

City of Concord
General Services
311 N. State St
Concord NH 03301

**Utility Bill**
**REMIT PORTION**

| SERVICE LOCATION | BILL NUMBER | CUSTOMER # | ACCOUNT # | DUE DATE | TOTAL DUE |
|---|---|---|---|---|---|
| 92 -94 SOUTH ST | 461439 | 6983 | 530219 | 06/15/2025 | $150.92 |

Tyler J. Weber
26 Old Mill Lane
Hooksett, NH 03106
USA

00006042025500461439200000150920



City of Concord
General Services
311 N. State St
Concord NH 03301

# Utility Bill
**CUSTOMER COPY**
Please keep this portion for your records.

| CUSTOMER NAME | | CUSTOMER NO. | PARCEL ID | SERVICE LOCATION |
|---|---|---|---|---|
| Tyler J. Weber | | 6983 | 1328 | 92 -94 SOUTH ST |

| BILL NUMBER | BILL DATE | ACCOUNT # | ACCOUNT TYPE | DUE DATE |
|---|---|---|---|---|
| 474056 | 06/15/2025 | 530219 | Commercial | 07/15/2025 |

| DESCRIPTION | METER NUMBER | READ CODE | PREVIOUS READ DATE | CURRENT READ DATE | PREVIOUS READING | CURRENT READING | USAGE | RATE | CHARGE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| Water Consumption | 50215462 | A | 05/05/2025 | 06/02/2025 | 382 | 386 | 4 | 2 Mtr | $13.72 |
| Fixed Monthly Water Charge | | | 05/05/2025 | 06/02/2025 | | | | | $50.97 |
| Sewer Consumption | | | 05/05/2025 | 06/02/2025 | | | | | $22.56 |
| Fixed Monthly Sewer Charge | | | 05/05/2025 | 06/02/2025 | | | | | $79.21 |
| Backflow Testing | | | 06/09/2025 | 06/15/2025 | | | | | $255.75 |
| Fire Line Charge | | | 05/05/2025 | 06/02/2025 | | | | | $11.67 |

| CONSUMPTION HISTORY | |
|---|---|
| CYCLE | USAGE |
| CURR | 4 |
| 05/25 | 5 |
| 04/25 | 1 |
| 03/25 | 3 |
| 03/25 | 5 |
| 01/25 | 9 |
| 12/24 | 6 |
| 12/24 | 5 |
| 10/24 | 6 |
| 09/24 | 4 |
| 09/24 | 5 |
| 07/24 | 8 |
| 07/24 | 7 |

**READ CODE KEY**
A   AMR
E   Estimated
M   Manual

| | |
|---|---|
| Previous Balance | $150.92 |
| Total Current Billing | $433.88 |
| Adjustments | $0.00 |
| Less Payments Received | $0.00 |
| Penalties | $2.27 |
| **Total Amount Due** | **$587.07** |

·········· >< · DETACH AND RETURN THE PORTION BELOW WITH YOUR PAYMENT >< ··········



City of Concord
General Services
311 N. State St
Concord NH 03301

# Utility Bill
**REMIT PORTION**

| SERVICE LOCATION | BILL NUMBER | CUSTOMER # | ACCOUNT # | DUE DATE | TOTAL DUE |
|---|---|---|---|---|---|
| 92 -94 SOUTH ST | 474056 | 6983 | 530219 | **07/15/2025** | **$587.07** |

Tyler J. Weber
26 Old Mill Lane
Hooksett, NH 03106
USA

00006042025500474056900000587071



# Utility Bill
**CUSTOMER COPY**
Please keep this portion for your records.

| CUSTOMER NAME | | CUSTOMER NO. | PARCEL ID | | SERVICE LOCATION |
|---|---|---|---|---|---|
| Tyler J. Weber | | 6983 | 1328 | | 92 -94 SOUTH ST |

| BILL NUMBER | BILL DATE | ACCOUNT # | ACCOUNT TYPE | DUE DATE |
|---|---|---|---|---|
| 486664 | 07/15/2025 | 530219 | Commercial | 08/15/2025 |

| DESCRIPTION | METER NUMBER | READ CODE | PREVIOUS READ DATE | CURRENT READ DATE | PREVIOUS READING | CURRENT READING | USAGE | RATE | CHARGE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| Water Consumption | 50215462 | A | 06/02/2025 | 07/03/2025 | 386 | 390 | 4 | 2 Mtr | $13.72 |
| Fixed Monthly Water Charge | | | 06/02/2025 | 07/03/2025 | | | | | $50.97 |
| Sewer Consumption | | | 06/02/2025 | 07/03/2025 | | | | | $22.56 |
| Fixed Monthly Sewer Charge | | | 06/02/2025 | 07/03/2025 | | | | | $79.21 |
| Fire Line Charge | | | 06/02/2025 | 07/03/2025 | | | | | $11.67 |

| CONSUMPTION HISTORY | |
|---|---|
| CYCLE | USAGE |
| CURR | 4 |
| 06/25 | 4 |
| 05/25 | 5 |
| 04/25 | 1 |
| 03/25 | 3 |
| 03/25 | 5 |
| 01/25 | 9 |
| 12/24 | 6 |
| 12/24 | 5 |
| 10/24 | 6 |
| 09/24 | 4 |
| 09/24 | 5 |
| 07/24 | 8 |

**READ CODE KEY**
A   AMR
E   Estimated
M   Manual

| | |
|---|---|
| Previous Balance | $584.80 |
| Total Current Billing | $178.13 |
| Adjustments | $0.00 |
| Less Payments Received | $737.99 |
| Penalties | $2.27 |
| **Total Amount Due** | **$27.21** |

········ ✂ · DETACH AND RETURN THE PORTION BELOW WITH YOUR PAYMENT ✂ ·········



City of Concord
General Services
311 N. State St
Concord NH 03301

# Utility Bill
**REMIT PORTION**

| SERVICE LOCATION | BILL NUMBER | CUSTOMER # | ACCOUNT # | DUE DATE | TOTAL DUE |
|---|---|---|---|---|---|
| 92 -94 SOUTH ST | 486664 | 6983 | 530219 | 08/15/2025 | $27.21 |

Tyler J. Weber
26 Old Mill Lane
Hooksett, NH 03106
USA

0000604202630048666460000027219



City of Concord
General Services
311 N. State St
Concord NH 03301

# Utility Bill
**CUSTOMER COPY**
Please keep this portion for your records.

| CUSTOMER NAME | | CUSTOMER NO. | PARCEL ID | SERVICE LOCATION |
|---|---|---|---|---|
| Tyler J. Weber | | 6983 | 1328 | 92 -94 SOUTH ST |

| BILL NUMBER | BILL DATE | ACCOUNT # | ACCOUNT TYPE | DUE DATE |
|---|---|---|---|---|
| 499296 | 08/15/2025 | 530219 | Commercial | 09/15/2025 |

| DESCRIPTION | METER NUMBER | READ CODE | PREVIOUS READ DATE | CURRENT READ DATE | PREVIOUS READING | CURRENT READING | USAGE | RATE | CHARGE AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| Water Consumption | 50215462 | A | 07/03/2025 | 07/30/2025 | 390 | 392 | 2 | 2 Mtr | $6.86 |
| Fixed Monthly Water Charge | | | 07/03/2025 | 07/30/2025 | | | | | $50.97 |
| Sewer Consumption | | | 07/03/2025 | 07/30/2025 | | | | | $11.28 |
| Fixed Monthly Sewer Charge | | | 07/03/2025 | 07/30/2025 | | | | | $79.21 |
| Fire Line Charge | | | 07/03/2025 | 07/30/2025 | | | | | $11.67 |

## CONSUMPTION HISTORY

| CYCLE | USAGE |
|---|---|
| CURR | 2 |
| 07/25 | 4 |
| 06/25 | 4 |
| 05/25 | 5 |
| 04/25 | 1 |
| 03/25 | 3 |
| 03/25 | 5 |
| 01/25 | 9 |
| 12/24 | 6 |
| 12/24 | 5 |
| 10/24 | 6 |
| 09/24 | 4 |
| 09/24 | 5 |

**READ CODE KEY**
A   AMR
E   Estimated
M   Manual

| | |
|---|---|
| Previous Balance | $27.21 |
| Total Current Billing | $159.99 |
| Adjustments | $0.00 |
| Less Payments Received | $27.21 |
| Penalties | $0.00 |
| **Total Amount Due** | **$159.99** |

·········✂· DETACH AND RETURN THE PORTION BELOW WITH YOUR PAYMENT ·✂··········



City of Concord
General Services
311 N. State St
Concord NH 03301

# Utility Bill
**REMIT PORTION**

| SERVICE LOCATION | BILL NUMBER | CUSTOMER # | ACCOUNT # | DUE DATE | TOTAL DUE |
|---|---|---|---|---|---|
| 92 -94 SOUTH ST | 499296 | 6983 | 530219 | **09/15/2025** | **$159.99** |

Tyler J. Weber
26 Old Mill Lane
Hooksett, NH 03106
USA

0000604202630049929620000015999б