**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**FOLEY & LARDNER LLP**
Anne B. Sekel, Esq.
90 Park Avenue
New York, NY 10016-1314
Tel:   (212) 682-7474
Fax:   (212) 687-2329
ASekel@foley.com

**FOLEY & LARDNER LLP**
Geoffrey S. Goodman, Esq.  (admitted *pro hac vice*)
Jonathan W. Garlough, Esq.  (admitted *pro hac vice*)
321 N. Clark Street, Suite 3000
Chicago, IL 60654
Tel:   (312) 832-4500
Fax:   (312) 832-4700
ggoodman@foley.com
jgarlough@foley.com

*Counsel for CVS Pharmacy, Inc.*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*<br><br>                                    Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br>(Jointly Administered)<br><br>**Hearing Date:**<br>**October 9, 2025 at __:__ _.m. E.T.** |

**CVS PHARMACY, INC.'S EMERGENCY MOTION TO ENFORCE SALE ORDER AND COMPEL PERFORMANCE BY DEBTORS UNDER THE CVS APAs**

---

[1] The last four digits of Debtor New Rite Aid LLC's tax identification number are 1483.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at [https://restructuring.ra.kroll.com/RiteAid2025].  The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, PA 17319.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

CVS Pharmacy, Inc. ("CVS"), through counsel, respectfully states the following in support of this emergency motion (this "Emergency Motion"):

## I.
## INTRODUCTION

1. CVS respectfully requests an emergency order enforcing the Court's May 21, 2025 Sale Order and requiring the Debtors to comply with their obligation to provide CVS with insurance coverage for druggist liability by the last Closing Date under the terms of the parties' PNW APA (as defined below).

2. The PNW APA contains a clear and mandatory obligation that the Debtors "shall either (a) maintain, at [their] own expense and for a period of three (3) years following the last Closing Date hereunder, its existing insurance coverage with respect to events relating to druggist liability occurring prior to the last Closing Date, or (b) purchase tail coverage for a period of three (3) years after the last Closing Date hereunder covering any and all such occurrences prior to each Closing, and which are not reported until after such Closing Date." PNW APA, § 6.7. Debtors have failed to satisfy this obligation and are now in breach of the PNW APA.

3. Even if CVS could rely on the Sale Order to avoid direct liability for acts occurring before the Closing Dates, it hired approximately 300 pharmacists and over 500 pharmacy technicians that formerly worked for the Debtors at stores acquired under the PNW APA. To protect the interests of the Debtors' former employees and not have them ruined financially, and to protect CVS's operations going forward, the Debtors must maintain insurance coverage for acts that may have occurred while such employees worked for the Debtors. That is why CVS bargained for the Insurance Obligation (as defined below) under the PNW APA. Tail insurance is commonly required (as here) in the purchase of closing businesses to ensure the buyer and the seller's former

2

employees are adequately protected by acts that occurred prior to the sale of the business. *See, e.g., In re Balt. Emergency Servs. II*, 2005 Bankr. LEXIS 2282, at *27 (Bankr. D. Md. April 28, 2005); *Nat'l Specialty Ins. Co. v. Nat'l Union Fire Ins. Co.*, 2012 U.S. Dist. LEXIS, at *15 (D.S.C. May 18, 2012).

4. Shortly after execution of the PNW APA (as defined below), the Debtors initially informed CVS that they did not intend to provide such insurance despite their contractual promise to do so. In response, CVS repeatedly sought the Debtors' assurances that they would comply with their contractual obligation. Despite their initial statements that they did not intend to acquire insurance coverage, the Debtors reversed course and stated that they would comply with the PNW APA and acquire the coverage. Indeed, the Debtors have acknowledged their contractual duty to maintain or acquire the coverage and acknowledged further that such obligation began running no later than September 30, 2025.

5. Nevertheless, throughout the month of September 2025, the Debtors sidestepped committing to maintaining or acquiring insurance coverage and attempted merely to delay and obfuscate on the issue. Finally, on October 2, 2025, the Debtors admitted that they still had not procured the necessary insurance required by the PNW APA. As a result, the Debtors are now in breach of the PNW APA and this Court's Sale Order.

6. The Debtors' gamesmanship must end. The insurance that CVS bargained for, and the Debtors agreed to provide, is critical to ensuring that CVS and the pharmacists and pharmacy technicians formerly employed by the Debtors are adequately protected; that CVS is able to operate the retail stores that it has purchased under the PNW APA; and that CVS obtains precisely what it paid to receive. Because the Debtors have refused to comply with their contractual obligation to provide insurance, CVS must seek the Court's assistance and move the Court for an order

compelling the Debtors to comply with their contractual obligations owed to CVS under the PNW APA.

## II.
## JURISDICTION AND VENUE

7. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to (1) 28 U.S.C §§ 157 and 1334, the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); (2) paragraph 44 of the Sale Order (as defined below) ("[T]he Bankruptcy Court shall retain exclusive jurisdiction with respect to the enforcement and interpretation of this Sale Order and the terms and provisions thereof."); (3) section 11.12 of the PNW APA (as defined below) (stating that disputes regarding the interpretation of the CVS APA "will be brought and determined [] in [] the Bankruptcy Court"); and (4) the Court's jurisdiction to interpret and enforce its own orders, *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also Denunzio v. Ivy Holdings, Inc (In re E. Orange Gen. Hosp., Inc.)*, 587 B.R. 53, 73 (D.N.J. 2018) (finding that bankruptcy court had jurisdiction over proceedings to enforce a sale order).

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# III.
# BACKGROUND[2]

**A. The Bankruptcy Proceedings, The PNW APA, And The Insurance Obligation**

10. On May 5, 2025 (the "Petition Date"), each Debtor in the above-captioned bankruptcy proceedings (the "Bankruptcy Case") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

11. On May 15, 2025, CVS entered into asset purchase agreements to acquire certain assets of the Debtors, including an asset purchase agreement to acquire certain assets associated with the Debtors' retail locations in the Pacific Northwest region (the "PNW APA").

12. On May 21, 2025, the Court entered its *Order (I) Approving and Authorizing the Sale of Certain Pharmacy Assets Free and Clear of All Liens, Claims, Rights, Interests, and Encumbrances, (II) Approving Certain Asset Purchase Agreements and Related Agreements Among the Debtors and Purchaser, (III) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (IV) Granting Related Relief* [Docket No. 470] (the "Sale Order"), approving the CVS Transaction Documents (as defined in the Sale Order), including the PNW APA (*see id.*, ¶ 3), a true and correct copy of which is attached to the Sale Order as Exhibit A.

13. Section 6.7 of the PNW APA provides, in relevant part, as follows:

> **[Debtors] shall** either **(a) maintain**, at its own expense and for a period of three (3) years following the last Closing Date hereunder, **its existing insurance coverage** with respect to events relating to druggist liability occurring prior to the last Closing Date, **or (b) purchase tail coverage for a period of three (3) years after the last Closing Date** hereunder covering any and all such occurrences prior to each Closing, and which are not reported until after such Closing Date.

---

[2] The factual allegations set forth in this "Background" section are supported, as needed, by the Declaration of Roger D. Strode (the "Strode Decl."), filed concurrently herewith.

PNW APA, § 6.7 (emphasis supplied) (the Debtors' obligation imposed thereby, the "Insurance Obligation").

14. The last Closing Date under the PNW APA occurred on September 30, 2025. (Strode Decl., ¶ 4.)

### B. The Debtors' Gamesmanship Over The Insurance Obligation

15. In June of 2025, the Debtors acknowledged their Insurance Obligation but indicated to CVS that they would not comply with it and that they intended to breach the PNW APA. (Strode Decl., ¶ 5.)

16. Accordingly, on July 11, 2025, CVS contacted the Debtors' counsel to notify them of CVS's concerns that the Debtors would breach § 6.7 and sought assurances that the Debtors "intend[ed] to comply with [their] obligations under Section 6.7 of the PNW APA to maintain or procure and maintain the required druggist liability coverage." (*Id*, ¶ 6.)

17. In response to correspondence from CVS's counsel on July 11, 2025, the Debtors' counsel again acknowledged the Debtors' awareness of their Insurance Obligation, which they confirmed "begin[s] upon 'the last Closing Date.'" They further assured CVS's counsel that "[t]here is no current or anticipatory breach of this provision of the APA." (*Id*, ¶ 7.)

18. CVS's counsel subsequently asked the Debtors' counsel to "promptly advise CVS of [Debtors'] compliance with [their] obligations under Section 6.7 and provide CVS with reasonable evidence of such compliance including, for example, communication from an insurer indicating that such coverage has been bound or, in the alternative, a copy of such policy coverage." (*Id*.)

19. On September 12, 2025, the Debtors' counsel stated that "Rite Aid is still considering its options with respect to" the Insurance Obligation. (*Id*, ¶ 8.)

6

20. CVS was led to believe that the Debtors had obtained a quote for a three-year tail policy from Lloyds of London, and, on September 23, 2025, CVS's counsel requested "as soon as possible [] evidence of the tail insurance coverage through either a certificate of insurance showing the terms and conditions or the insurance binder." (*Id*, ¶ 9.)

21. No such evidence was provided by the Debtors. To date, the Debtors have not provided any evidence that they have extended or procured insurance consistent with their Insurance Obligation. (*Id*, ¶ 10.)

22. Rather, communications from the Debtors' counsel in October – after the last Closing Date – admitted that the Debtors have *not* renewed their existing insurance, *nor* have they purchased tail insurance as required by § 6.7. (*Id*.) Accordingly, the Debtors have not complied with the Insurance Obligation and are in breach of the PNW APA.

## IV.
## ARGUMENT

23. The plain language of the PNW APA requires the Debtors to honor the Insurance Obligation, and to do so by the last Closing Date, September 30, 2025. The Debtors have failed to honor the Insurance Obligation by the last Closing Date and provided no indication that they will do so before October 15, 2025, when their existing insurance coverage for druggist liability lapses, resulting in CVS's and the Debtors' former employees bearing the risk of uninsured claims. As a result, CVS respectfully submits that the Court should grant this Emergency Motion and enter an order substantially in the form attached hereto as **Exhibit A**, compelling the Debtors to fulfill their Insurance Obligation and either maintain the applicable existing insurance coverage or purchase applicable tail coverage by no later than October 15, 2025.

### A. The PNW APA's Plain Language Required The Debtors To Maintain Or Procure Tail Insurance By The September 30, 2025 Closing Date For The Following 3 Years.

24. The Court must apply the plain language of the PNW APA. *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning. Contract language is not ambiguous merely because the parties dispute what it means."). In doing so, it must "give each provision and term effect, so as not to render any part of the contract mere surplusage." *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010); *Cato Cap. LLC v. Hemispherx Biopharma Inc.*, 625 F. App'x 108, 112 (3d Cir. 2015) (same); *Holifield v. XRI Inv. Holdings LLC*, 304 A.3d 896, 924 (Del. 2023) (observing that "[c]ontracts will be interpreted to give each provision and term effect and not render any terms meaningless or illusory" and holding disputed contract provision to be unambiguous); *see also* Order, Dkt. 1591, at 8 (applying Delaware law and observing that in enforcing a contract, "a court is 'constrained by a combination of the parties' words and the plain meaning of those words'") (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).[3]

25. Here, the PNW APA is clear that the Debtors have a contractual obligation to provide druggist liability insurance coverage to CVS in one of two ways: either (1) maintain existing insurance coverage for a period lasting three years following "the last Closing Date" or (2) purchase a tail policy for new insurance coverage for a period ending three years after "the last Closing Date." PNW APA, § 6.7. The Debtors have not satisfied their Insurance Obligation through either option.

---

[3] The parties agreed that the PNW APA and any dispute relating to its terms would be governed by Delaware law. *See* PNW APA, § 11.13(a).

26. The Debtors have no excuse for the breach of their contractual obligation. Section 6.7's requirement that the Debtors procure insurance as of "the last Closing Date" is unambiguous and inescapable. Use of the mandatory "shall" requires the Debtors to extend their existing druggist liability coverage or purchase a tail policy for three years from the last Closing Date – *i.e.,* coverage extending through and including September 30, 2028. *Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *6 (Del. Ch. July 14, 2009) ("the plain meaning of 'shall be advanced' is that advancement is mandatory"); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 152 (Del. Ch. 2003) ("The word 'shall' is a mandatory term.").

27. Further, in connection with their Insurance Obligation under the PNW APA, the Debtors have admitted that their obligation to ensure appropriate insurance coverage is in place began to run no later than the "last Closing Date." (*See* Strode Decl.,¶ 7). As the last Closing Date occurred on September 30, 2025, the Debtors are in breach of the PNW APA, and in contempt of the Sale Order that approved the PNW APA.

**B. An Emergency Order Is Necessary To Preserve CVS's Rights To Insurance.**

28. Time is of the essence to compel the Debtors to remedy their breach. The last Closing Date has already come and gone without the Debtors complying with their Insurance Obligation. In addition, the Debtors' insurance coverage lapses on October 15, 2025. If the Debtors do not maintain druggist liability coverage or purchase a tail policy by October 15, 2025, there will be a lapse in coverage, exposing their former pharmacists and technicians to liability, which would cause significant harm to CVS and its retail pharmacy business.

29. Moreover, a hearing on October 9, 2025, is essential to providing CVS with an adequate remedy for the Debtors' breach if they continue to refuse or fail to provide the requisite insurance coverage. October 9 is the due date for CVS's final closing payment to the Debtors under the applicable purchase agreements, including the PNW APA. Given that the Debtors have

little to no available cash to pay creditors – as Debtors have indicated on numerous occasions (including in connection with disputes with CVS) – a holdback from CVS's final closing payment to the Debtors may be the only way CVS can be adequately compensated for the Debtors' breach.

30. The Debtors should not be rewarded for essentially "rope a doping" the insurance issue until the eleventh hour. They are in breach, and CVS is entitled to enforce the PNW APA on an expedited basis to avoid significant harm, just as the Debtors did in other circumstances where disputes arose under the CVS Transaction Documents (as defined in the Sale Order).

31. Accordingly, CVS respectfully requests that the Court compel the Debtors to comply with the Insurance Obligation as soon as possible.

## CONCLUSION

For the reasons stated above, CVS respectfully requests that the Court (A) grant the Emergency Motion, (B) compel the Debtors to purchase insurance coverage as expressly provided in Section 6.7 of the PNW APA, and (C) grant such other and further relief for CVS as the Court deems equitable and just.

DATED: October 6, 2025

Respectfully submitted,

*/s/ Anne B. Sekel*
**FOLEY & LARDNER LLP**
Anne B. Sekel, Esq.
90 Park Avenue
New York, NY 10016-1314
Tel: (212) 682-7474
Fax: (212) 687-2329
ASekel@foley.com

and

**FOLEY & LARDNER LLP**
Geoffrey S. Goodman, Esq. (admitted *pro hac vice*)
Jonathan W. Garlough, Esq. (admitted *pro hac vice*)
321 N. Clark Street, Suite 3000

Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
ggoodman@foley.com
jgarlough@foley.com

*Counsel for CVS Pharmacy, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2025, a true and correct redacted copy of the foregoing document was sent via ECF Noticing to all parties receiving ECF Notices in these chapter 11 cases and a true and correct unredacted copy of the foregoing document was sent via email upon the parties below as indicated:

| | |
|---|---|
| **COLE SCHOTZ, P.C.**<br>25 Main Street<br>Hackensack, NJ 07601<br>Attn: Michael D. Sirosta, Esq.;<br>Warren A. Usatine, Esq.;<br>Felice R. Yudkin, Esq.;<br>Seth Van Aalten, Esq.<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br>svanaalten@coleschotz.com<br><br>*Counsel to the Debtors* | **OFFICE OF THE UNITED STATES TRUSTEE**<br>**UNITED STATES TRUSTEE, REGION 3**<br>One Newark Center<br>1085 Raymond Blvd., Suite 2100<br>Newark, NJ 07102-5504<br>Attn: Jeffrey M. Sponder<br>Lauren Bielskie<br>Jeffrey.m.sponder@usdoj.gov<br>lauren.bielskie@usdoj.gov<br><br>*U.S. Trustees' Counsel* |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Attn: Andrew N. Rosenberg;<br>Alice Belisle Eaton<br>Christopher Hopkins<br>Sean A. Mitchell<br>Alison R. Benedon<br>Brian S. Hermann; Christopher Hopkins<br>arosenberg@paulweiss.com<br>aeaton@paulweiss.com<br>chopkins@paulweiss.com<br>smitchell@paulweiss.com<br>abenedon@paulweiss.com<br><br>*Counsel to the Debtors* | **GREENBERG TRAURIG, LLP**<br>500 Campus Drive<br>Florham Park, New Jersey 07932<br>Attn: Alan J. Brody, Esq.<br>brodya@gtlaw.com<br><br>*Co-counsel to Bank of America, N.A., as DIP Agent* |

**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, Massachusetts 02110
Attn: John F. Ventola, Esq.
Mark Edgarton, Esq.
J.P. Jaillet, Esq.
Jonathan D. Marshall, Esq.
jventola@choate.com
gedgarton@choate.com
jjaillet@choate.com
jmarshall@choate.com

*Co-Counsel to Bank of America, N.A., as DIP Agent*

**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019-6099
Attn: Brett H. Miller, Esq.
Todd M. Goren, Esq.
James H. Burbage, Esq.
D. Graber, Esq.
bmiller@willkie.com
tgoren@willkie.com
jburbage@willkie.com
jgraber@willkie.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, New Jersey 07102
Attn: Andrew H. Sherman, Esq.
Boris Mankovetskiy, Esq.
Gregory Kopacz, Esq.
asherman@sillscummis.com
bmankovetskiy@sillscummis.com
gkopacz@sillscummis.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

<u>*s/ Anne B. Sekel*</u>

13