**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

## JOINT RESPONSE OF THE DEBTORS AND ROSS DRESS FOR LESS, INC. TO OBJECTION OF THE CHEN 1998 FAMILY TRUST, ET AL. TO NOTICE OF ASSIGNMENT OF LEASE AND CURE AMOUNT

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession

(collectively, the "Debtors") and the proposed assignee of the Lease (as defined below), Ross

Dress For Less, Inc. ("Ross"), file this joint response (the "Reply")[2] in further support of the

---

[1]     The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]     Capitalized terms used but not otherwise defined in this Reply shall have the meanings ascribed to them in (i) the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] (the "Motion") and (ii) *Final*

Motion, and in response to the *Objection of The Chen 1998 Family Trust, et al. to Notice of Assumption and Assignment of Lease and Cure Amount* [Docket No. 1786] (the "Objection"). In support of this Reply, in further support of the Motion, and in opposition to the Objection, the Debtors and Ross respectfully state as follows:

### PRELIMINARY STATEMENT

1.      Disenchanted with the assignment of its lease that requires payment of monthly rent totaling only $628.50, The Chen 1998 Family Trust & 1970 San Mateo Road Partnership (collectively, "Landlord"), the landlord of the Debtors' premises for Store No. 5885, located at 170 San Mateo Road, Half Moon Bay, California (the "Premises"), pursuant to a Lease dated as of February 1, 1972 (the "Lease"),[3] has insisted on pressing its objection to the assignment of the Lease unless the Debtors agree to pay as part of the Cure Costs ***more than $100,000*** in attorneys' fees purportedly incurred by the Landlord in these chapter 11 cases (and in the 2023 Cases), refusing to compromise its claims for attorneys' fees at all.

2.      While the Debtors understand the Landlord's desire to protect its own interests in these chapter 11 cases (and the 2023 Cases), the Bankruptcy Code does not turn the bankruptcy estate into a piggy bank for legal fees it incurred in doing so. There is simply no authority in the Lease, the Bankruptcy Code or the case law to impose the vast majority of those costs on the Debtors' estates or Ross, as the assignee of the Lease, as part of the amounts necessary to satisfy the Landlord's cure claim.

---

*Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Auction Procedures Order"), as applicable.

[3]      A copy of the Lease is attached hereto as **Exhibit A**.

3.      The Debtors have assigned (or terminated with landlords pursuant to lease termination agreements) more than 120 Leases during these chapter 11 cases.  Yet, the Landlord is only landlord that has sought to recover as part of its cure every penny it purportedly expended in these chapter 11 cases (and the 2023 Cases) to protect its own interests.  Not a single landlord has asserted a claim for reimbursement of attorneys' fees anywhere close to the $102,280.87 the Landlord has demanded, and there is nothing in the record to suggest that the Landlord's issues in these chapter 11 cases (or the 2023 Cases) were especially unique or complicated relative to every other landlord.  If landlords were allowed to assert as part of their cure costs attorneys' fees for reviewing every document filed in a chapter 11 case or for challenging a debtor's rights under the Bankruptcy Code (as the Landlord is attempting to do here), the ability for a debtor to assume and assign a lease would be cost prohibitive and deny the debtor's estate any value from the assignment of such lease, especially in a case of this size and the proliferation of filings herein.  Landlords would be incentivized to be more litigious, further driving up the cost to the detriment of creditors holding legitimate claims against the estate.

4.      Given the professional sensitivities associated with this Reply and the attorneys' fees asserted, the Debtors and Ross made every attempt to consensually resolve the Landlord's request for attorneys' fees.  However, those discussions went nowhere, as the Landlord demanded every penny it purportedly expended in these chapter 11 cases and the 2023 Cases.  Indeed, the Debtors and Ross believe that the push for the entirety of its attorneys' fees are the Landlord's transparent attempt to shake down the Debtors and Ross because it is disappointed that its Lease, and the under market rent thereunder, are being assumed and assigned, rather than terminated.  The Landlord's effort to extract a payday from the Debtors and Ross smacks of a desperate attempt to

3

recoup some of its anticipated losses from bearing the consequences of the assignment of the Lease
and the under-market terms thereof and should be rejected by the Court.

5.      For these reasons and the reasons set forth below, and subject to the payment of all
allowed Cure Costs, including a reasonable amount of attorneys' fees as the Court may award
(which the Debtors and Ross are prepared to pay), the Court should overrule the Objection and
approve the assignment to Ross.

## BACKGROUND

6.      On June 11, 2025, the Court entered the Auction Procedures Order, by which the
Court approved procedures (the "Auction Procedures") setting forth the process by which the
Debtors are authorized to sell their unexpired leases of nonresidential real property, in the Debtors'
chapter 11 cases, including pursuant to an auction (the "Auction") or outside of the Auction
Procedures by a private sale.

7.      Among other things, the Auction Procedures provide as follows:

> The Debtors reserve the right to determine, in consultation with the
> Consultation Parties, whether to auction any Leases or Fee Owned
> Properties as part of a group or individually up through and
> including at the Auction or to conduct an Auction of any Lease or
> Fee Owned Property both individually and as part of a group in order
> to determine which option maximizes value of such assets.

Auction Procedures, Section D.(i)(c)

8.      In addition, Paragraph 3 of the Sale Procedures Order provides that "the Debtors,
may modify the Auction Procedures as necessary or appropriate to maximize value for their
estates.[3]" Footnote 3 to that sentence provides as follows:

> For the avoidance of doubt, the Debtors also anticipate that some of
> their Leases and Fee Owned Properties may be sold pursuant to
> either private sales conducted outside of the Auction Procedures
> process or the Sales Procedures. Nothing in this Final Order limits
> the Debtors' ability to include any Lease or Fee Owned Property (a)
> in any private sale or any sale process conducted pursuant to the

4

Sales Procedures, or (b) not sold pursuant to sale processes conducted pursuant to the Sales Procedures in a subsequent Auction process conducted pursuant to the Auction Procedures.

*See* Sale Procedures Order, n. 3.

9. Following the entry of the Sale Procedures Order, the Debtors' court approved real estate advisor, A&G Real Estate Partners ("<u>A&G</u>") extensively marketed the Leases, including the Lease.

10. A&G received two (2) prospective Bids for the Lease; one from the Landlord and another from Ross, which was part of a package Bid for eighteen (18) Leases.

11. The Ross bid (the "<u>Ross Package Bid</u>") is expressly conditioned as a "package Bid" for all eighteen (18) Leases and is not a separate Bid for each individual Lease. *See Declaration of Mike Matlat in Support of Response to Objection of SVAP III Plaza Mexico, LLC to Notice of Successful and Backup Bidders with Respect to Auction of Certain of the Debtors' Leases* [Docket No. 2307] (the "<u>Matlat Declaration</u>"), ¶¶ 14-15.[4]

12. The Ross Purchase Price is $4,802,128.00, less any Cure Cost Reduction. *See* Matlat Declaration, <u>Exhibit 2</u>, Docket No. 2331.

13. The Landlord's Bid was "a credit bid of existing arrearages" providing the following consideration:

Landlord agrees, as consideration for this Lease Termination (minus any deposits already paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed and not previously paid, either pre-petition or post petition by Tenant to Landlord.

---

[4] Although the Matlat Declaration was submitted in connection with an objection to the assignment of the Debtors' lease for Store 5476 in Lynwood, California, the reasons underlying the Debtors' business judgment in accepting the Ross Package Bid and not subjecting the Leases contained therein, including the Lease, apply equally to the Debtors' business judgment in accepting the Ross Package Bid without further subjecting the Lease to the Auction. *See* Matlat Declaration at ¶¶ 16-17. The Debtors incorporate the Matlat Declaration (and the supporting Exhibits, filed at Docket No. 2331) by reference herein.

14.     In connection with its Bid, the Landlord warranted and represented that it "has received, reviewed, understands, and agrees to abide by the terms and conditions of the Sale Order, the terms and conditions of which are incorporated herein by reference."

15.     On July 21, 2025, the Debtors held the Auction with respect to certain of the Leases. During the Auction, A&G announced that the Debtors had accepted the Ross Package Bid, which included the Lease.  *See* Matlat Declaration ¶¶ 14-17.

16.     No further bidding occurred at the Auction with respect to any of the Leases included the Ross package Bid.  *See id.*

17.     Following the Auction, on July 22, 2025, the Debtors filed the *Notice of Successful and Backup Bidders with Respect to the Auction of Certain of the Debtors' Leases* [Docket No. 1524] (the "Successful Bidder Notice") and the *Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 1525] (the "Assumption and Assignment Notice" and together with the Successful Bidder Notice, the "Notices").

18.     Among other things, the Successful Bidder Notice identified Ross as the Successful Bidder with respect to the Lease.  Each of the Notices reflect that the Cure Costs with respect to the Lease total $47,623.17.

19.     On August 4, 2025, the Landlord timely filed the Objection.[5]

---

[5]     On May 29, 2025, the Landlord also filed a *Limited Objection of Notice of Sale by Auction of Remaining Assets and Notice of Cure Amount* [Docket No. 571] (the "Limited Objection").  The Limited Objection was directed at the *Debtors' Motion for Entry of an Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* ("Pharmacy Sale Motion") [Docket No. 17], which was filed the same day as the Motion.  The Lease was not identified as among the "Pharmacy Assets" or "Other Assets" in the context of the Pharmacy Sale Motion (and no cure amount associated with the Lease was ever filed in connection with the Pharmacy Sale Motion).  There was, therefore, no reason for the Landlord to have filed the Limited Objection and in doing so the Landlord was not enforcing any provision of the Lease.

20. The Objection asserts Cure Costs due the Landlord totaling $181,051.60, which includes "Attorney Fees- Lease Default" totaling $91,210.87. *See* Supplement Summary of Cure Obligations under Lease 5885, attached to the Objection. Docket No. 1786-1.

21. The Objection includes, *inter alia*, cure costs purportedly due relating to "Unpaid CAM through 12.31.24" totaling $29,463.35. Those amounts were also asserted as part of a cure claim in the 2023 Cases. *See*, *e.g.*, Docket No. 4740 at ¶ 10 in 2023 Case ("Specifically, the Debtor has failed to provide or make provision for the payment of billed and outstanding Common Area Maintenance charges for the 3rd quarter of 2023 totaling $29,463.35; and a Trash Removal Fee of $304.00."). However, the Landlord seemingly fails to account for a payment to the Landlord totaling $28,676.45, which was paid by the Debtors on account of that unpaid CAM as part of the cure costs paid by the debtors in the 2023 Cases (by check #: 0007620752 dated 09/12/24, which cleared the Landlord's bank account on 09/27/24). That payment excluded $786.90 included on the CAM statement for the Debtors' share of a purported "Management Fee," which the Debtors dispute is properly chargeable to the Debtors under the Lease as there is no provision in the Lease that allows the Landlord to charge the Debtors a "Management Fee" (and the Objection does not identify one). The only provision in the Lease relating to CAM is Section 16.02, which provides in relevant part as follows: "It is further understood and agreed that Lessee shall pay throughout the term of this lease (and shall indemnify and hold harmless Lessor from any obligation to pay the same) all Lessor's share of the costs and expenses of the maintenance and operation of any such parking areas and common areas, at the times, in the amounts and in the manner set forth in said documents." Although presented with proof of payment on October 5, 2025, the Landlord has not confirmed that payment or agreed, as of the date of this Reply, to withdraw its request for payment of the amounts sought on account of the CAM through 12.31.24 as part of the Cure Costs.

22.     When accounting for the payment of "CAM through 12.31.24," and excluding any amount on account of attorneys' fees, only $52,068.22 was actually due at the time the Landlord filed the Objection, comprised of (i) rent for May 2025 (totaling $628.50), (ii) unpaid real estate taxes (totaling $45,151.64), (iii) unpaid CAM – 1st Quarter 2025 (inclusive of the disputed Management Fee included thereon) (totaling $5,984.08) and (iv) unpaid trash removal charges (totaling $304.00).  The Debtors' asserted Cure Costs (totaling $47,623.17) accounted for these charges, other than (i) the unpaid trash removal charges (totaling $304.00) and (ii) a 10% penalty and $40 cost due on account of the unpaid real estate taxes (which was imposed when the real estate taxes were not paid before April 10, 2025) totaling $4,141.05 (which was unknown to the Debtors at the time they filed the Notices).  The "Unpaid CAM – 2nd Quarter 2025" in the amount of $8,309.16 included with the Objection was not sent to the Debtors until July 2025 (according to the Landlord), and while not disputed (other than the Management Fee sought thereon), was not due at the time of the Objection (and unknown to the Debtors when they filed the Notices).

23.     After the filing of the Objection, the Landlord advised the Debtors and Ross of additional amounts it asserts are required to be paid as part of the Cure Costs, including (i) September 2025 rent in the amount of $628.50, (ii) ad valorem taxes that became due on September 2, 2025 (characterized by the Landlord as Property Tax – 2025 Real Estate Tax) in the amount of $4,373.68, and (ii) additional attorneys' fees of $11,070.00.  Since that time, October rent (in the amount of $628.50) also became due and the Landlord contends that 3rd Quarter 2025 CAM of $9,140.91 is now also due.

24.     In total, the Landlord has asserted Cure Costs totaling $95,001.31 (excluding attorneys' fees) and attorneys' fees totaling $102,280.87, for a total of $197,282.18.  When adding the October rent and the 3rd Quarter 2025 CAM, the amount the Landlord contends is due and

owing as of today is $104,770.72, exclusive of attorneys' fees.  When adding the attorneys' fees the Landlords asserts must be paid, the amount totals $207,051.59.

25.     The Debtors and Ross have advised the Landlord that upon the assignment of the Lease to Ross, they are prepared to pay the entirety of the unpaid Cure Costs unrelated to the attorneys' fees, together with the other charges that have come due since the filing of the Objection, totaling $76,094.27 (which includes amounts that are disputed relative to the "Management Fee" being charged by the Landlord), together with a reasonable amount on account of the Landlord's attorneys' fees.  The Landlord has insisted, however, that the Debtors and Ross pay the entirety of the attorneys' fees as part of the Cure Costs (and has not responded to requests that it withdraw its requests for the amounts sought on account of the previously satisfied CAM through 12.31.24).  Because the Debtors and Ross dispute they should double pay for an obligation that that has already been satisfied or that the vast majority of the attorneys' fees sought are compensable under the terms of the Lease and applicable law, and are unreasonable, the Debtors and Ross have been compelled to file this Reply.

## ARGUMENT

### THE LANDLORD HAS NOT MET ITS BURDEN FOR THE ALLOWANCE OF ATTORNEYS' FEES UNDER THE LEASE

26.     "[S]ection 365(b)(1)(B) does not create a statutory right to attorney fees." *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 608 (Bankr. E.D. Pa. 1989) (noting the court's "'distinct disinclination' to pass through attorneys' fees expended by a creditor for services of counsel in bankruptcy court litigation"), *aff'd* 121 B.R. 442 (E.D.Pa. 1989); *accord In re Garnett*, 99 B.R. 293, 296-97 (Bankr. E.D. Pa. 1989).  "To recover attorneys' fees as part of a cure claim, the Landlord must establish several facts." *In re Crown Books Corp.*, 269 B.R. 12, 15 (Bankr. D. Del. 2001).

27.     "First, courts have held that attorneys' fees are recoverable as part of a cure claim only if the contract or lease specifically provides for their payment." *Id.* "Although attorneys['] fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *Crown Books Corp.*, 269 B.R. at 15 (quoting *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) and citing *In re Shangra-La, Inc.*, 167 F.3d 843, 849-50 (4th Cir. 1999); *In re Best Products Co., Inc.*, 148 B.R. 413 (Bankr. S.D.N.Y. 1992)).

28.     The second requirement for recovery of attorneys' fees under section 365(b)(1) is that the attorneys' fees sought must be reasonable. *See Crown Books*, 269 B.R. at 18 ("Attorneys' fees are recoverable under section 365(b)(1) only if they are reasonable.") (citing *In re Westworld Community Healthcare, Inc.*, 95 B.R. 730, 733-34 (Bankr. C.D. Cal. 1989); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 983-84 (Bankr. W.D. Tenn. 1989).) *See also In re Pac. Sea Farms, Inc.*, 134 B.R. 11, 16 (Bankr. D. Haw. 1991) (bankruptcy courts being asked to approve fees have "a duty to examine the reasonableness of all fees requested").

## A.     The Attorneys' Fees are Not Compensable Under the Terms of the Lease or Applicable Law

29.     Here, the Landlord maintains that "[r]ecovery of attorney fees is directly authorized and required under the existing lease agreement which Rite Aid seeks to assume and assign." Objection at ¶ 15 (citing to Sections 10.01 and 16.02 of the Lease). However, Sections 10.01 and 16.02 of the Lease do not "authorize and require" the recovery of attorneys' fees here.

30.     First, Section 10.01 of the Lease, is, as the Objection concedes, an indemnity provision.  It provides as follows:

> 10.01.  Lessee agrees to pay, and to protect, indemnify and save harmless Lessor from and against, any and all liabilities, losses, damages, costs, expenses (including attorneys' fees and expenses of Lessee and Lessor), causes of action, suits, claims, demands or

judgments of any nature arising from (i) any injury to, or the death of, any person or any damage to property on the Leased Premises or upon adjoining sidewalks, streets, or ways, or in any manner growing out of or connected with the use, nonuse, condition or occupancy of the Leased Premises or a part thereof or the construction or repair of any improvements on the Leased Premises, resulting from the condition of adjoining sidewalks, streets or ways, (ii) violation of any agreement or condition of this lease and of any contracts or agreements of which Lessee has notice, or which shall have existed at the commencement of this lease or which shall have been approved by Lessee, and of any restrictions, laws, ordinances or regulations affecting the Leased Premises or a part thereof or the ownership, occupancy or use thereof, (iii) any encroachment of improvements on the Leased Premises upon property adjoining the Leased Premises, (iv) or any encroachment of improvements on adjoining properties upon the Leased Premises, and (v) any contest permitted by Section 12.02.

31.    The Lease is governed by California law.  *See* Lease at § 15.08 ("This lease is governed by the law of the State in which the Leased Premises are located and any question arising hereunder shall be construed or determined according to such law.").  California law provides as follows with respect to a contracting party's right to recover attorneys against the other contracting party under the terms of an indemnity provision in the agreement:

Generally, an indemnification provision allows one party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action between the parties to the contract. (*Rideau, supra,* 235 Cal.App.4th at p. 1298, 185 Cal.Rptr.3d 887.)  Courts look to several indicators to distinguish third party indemnification provisions from provisions for the award of attorney fees incurred in litigation between the parties to the contract.  The key indicator is an express reference to indemnification.  A clause that contains the words "indemnify" and "hold harmless" generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons—that is, it relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself. (*See Carr, supra,* 166 Cal.App.4th at p. 20, 82 Cal.Rptr.3d 128.)

Courts also examine the context in which the language appears. Generally, if the surrounding provisions describe third party liability, the clause will be construed as a standard third party

indemnification provision. (*Myers, supra,* 13 Cal.App.4th at p. 970, 17 Cal.Rptr.2d 242.)   The court will not infer that the parties intended an indemnification provision to cover attorney fees between the parties if the provision "'does not specifically provide for attorney's fees *in an action on the contract*....'"   (*Ibid.*; *see also Rideau, supra,* 235 Cal.App.4th at p. 1298, 185 Cal.Rptr.3d 887 ["The general rule is that the specification of attorney fees as an item of loss in a third party claim indemnity provision ... 'does not constitute a provision for the award of attorney fees in an action on the contract ....' " (citation omitted) ].)

For example, language stating, "Seller ... agrees to indemnify and save [b]uyer ... harmless from any and all losses ... including ... reasonable attorney's fees ... arising from any cause or for any reason whatsoever" (*Building Maintenance Service Co. v. AIL Systems, Inc.* (1997) 55 Cal.App.4th 1014, 1022, 64 Cal.Rptr.2d 353) does not provide for attorney fees in an action between the parties for breach of contract.  (*Id.* at p. 1030, 64 Cal.Rptr.2d 353.) In such circumstances, "there is no language ... which reasonably can be interpreted as addressing the issue of an action between the parties on the contract." (*Ibid.*)

Similarly, an indemnification clause in which one party promised to "indemnify" the other from "'any, all, and every claim' which arises out of 'the performance of the contract'" (*Myers, supra,* 13 Cal.App.4th at p. 974, 17 Cal.Rptr.2d 242) deals only with third party claims, and cannot support an award of attorney fees in an action for breach of contract between the parties to the agreement. (*Ibid.*)  The *Myers* court held that considering the ordinary meaning of the words "indemnify" and the context of the provisions, the contract could not be construed as separately providing for attorney fees in an action between the parties. (*Ibid.*)   The *Myers* court determined the indemnity provision there did not afford a right to attorney fees incurred in breach of contract litigation between the parties to the agreement, even though, as here, the contract provided the indemnity agreement was to be enforced "[t]o the fullest extent permitted by law." (*Id.* at pp. 963–964, 17 Cal.Rptr.2d 242.)

*Alki Partners, LP v. DB Fund Servs., LLC,* 4 Cal. App. 5th 574, 600–01, 209 Cal. Rptr. 3d 151, 171–72 (2016).

32.     Thus, in accordance with California law, Section 10.01 of the Lease is not applicable and does not authorize and require attorneys' fees in this circumstance.

33.     The next Section relied upon by the Landlord, Section 16.02 of the Lease, also provides no basis for an award of attorneys' fees to the Landlord here.  With respect to that provision, the Landlord contends that "Section 16.02 of the lease further provides and obligated the tenant to pay all attorney fees incurred by the landlord as the owner of the property."  *See* Objection at ¶ 15.  The Landlord completely mischaracterizes Section 16.02 of the Lease, which provides, in relevant part, as follows:

> 16.02. <u>Maintenance and Operations</u>. It is further understood and agreed that Lessee shall pay throughout the term of this lease (and shall indemnify and hold harmless Lessor from any obligation to pay the same) all Lessor's share of the costs and expenses of the maintenance and operation of any such parking areas and common areas, at the times, in the amounts and in the manner set forth in said documents. . . .  If the Leased Premises are located in a shopping center, any rights, agreements, easements and other interests, if any, in the nature of those described above which were acquired by Lessor upon its acquisition of the Leased Premises or which are appurtenant thereto and shall be deemed without further action on the part of either Lessor or Lessee to be a part of the Leased Premises and subject to all the terms, covenants and conditions hereof.  Lessee shall perform and discharge all of Lessor's duties thereunder, and shall indemnify and save Lessor harmless from all liability, cost and expense (including attorney's fees) threatened, suffered or incurred by reason of any violation or purported violation or failure to perform any duty imposed upon the owner of the Leased Premises.

34.     Despite the mischaracterization otherwise, the Debtors are not responsible "to pay all attorney fees incurred by the landlord as the owner of the property" and Section 16.02 is simply inapplicable to an award of attorneys' fees as part of the Cure Costs.

35.     There is, however, a Section of the Lease that *might* authorize them, *i.e.*, Section 16.04.  Curiously, the Landlord ignored that Section of the Lease in its Objection.  Section 16.04 provides as follows:

> 16.04. <u>Attorney's Fees</u>.  In the event any action is commenced by Lessor or Lessee against the other to enforce any of the provisions of this lease, in addition to any other relief to which the prevailing

party may be entitled, it shall also recover therein such attorney's
fees as the court may award to it.

36.    Accepting the Landlord's position that the Indemnity provision (Section 10.01) or

the Maintenance and Operation provision (Section 16.02) would require the Debtors, as Lessee, to

reimburse the Landlord its attorneys' fees would render Section 16.04 meaningless or superfluous;

and doing so would violate basic rules of contract construction, *i.e.*, courts must avoid

"interpretations that render contract provisions meaningless or superfluous." *Manley v. AmBase

Corp.*, 337 F.3d 237, 250 (2d Cir. 2003).  *See also In re South Side House, LLC*, 470 B.R. 659

("General canons of contract construction require that where two seemingly conflicting contract

provisions reasonably can be reconciled, a court is required to do so and to give both effect.")

(quoting *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2d Cir. 2002) (internal

quotation marks omitted)); *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 130–31 (Bankr.

E.D.N.Y. 2002) (observing that "[a]greements should not be interpreted in a way that renders any

of the provisions superfluous or meaningless"); *In re Lehman Brothers Inc.*, 478 B.R. 570

(S.D.N.Y. 2012) ("Divining the parties' intent requires a court to 'give full meaning and effect to

all of [the contract's] provisions.'" (citations omitted)); Cal. Civ. Code § 1641 ("The whole of a

contract is to be taken together, so as to give effect to every part, if reasonably practicable, each

clause helping to interpret the other."); Cal. Civ. Code § 3541 ("An interpretation which gives

effect is preferred to one which makes void."); *Carroll Shelby Licensing, Inc. v. Halicki*, 138 F.4th

1178, 1186 (9th Cir. 2025) (Under California law, "an interpretation giving effect to all provisions

is favored over an interpretation rendering some provisions superfluous[.]"); *SVAP III Poway

Crossings, LLC v. Fitness Int'l, LLC*, 87 Cal. App. 5th 882, 891, 303 Cal. Rptr. 3d 863, 870–71

(2023), review denied (Apr. 26, 2023) ("A key rule of contract interpretation is that, to the extent

practicable, the contract should be read so as to give effect to all provisions and avoid rendering

some meaningless.").

37.    For these reasons, Section 16.04 of the Lease is the only section of the Lease that

applies with respect to the right of the Landlord to recover attorneys' fees under the Lease and, if

the Court is inclined to allow such fees, they must conform to the requirements of that section.

**B.    The Attorneys' Fees Requested by the Landlord are Not Reasonable**

38.    As noted above, the second requirement for recovery of attorneys' fees under

section 365(b)(1) is that the attorneys' fees sought must be reasonable.  Charging the estate for

more than 160 hours spent by counsel and requesting more than $100,000 in attorneys' fees that

are primarily unrelated to the enforcement of the provisions of the Lease is not reasonable.

39.    While the Debtors and Ross appreciate and acknowledge that the Landlord filed an

Objection to address the (slight) insufficiency of the Cure Costs set out in the Notices (as well as

engaging with counsel regarding those additional amounts that have not been paid since the filing

of the Objection), only those attorneys' fees incurred in connection therewith, and enforcing the

provisions of the Lease to recover the amounts that were unpaid, should be compensable under the

terms of the Lease.  *See* Lease, § 16.04 and paragraphs 35-37, *supra*.

40.    The Debtors and Ross have reviewed the fee statements attached to the Objection

and those subsequently provided by the Landlord's counsel, which are attached hereto as **<u>Exhibit</u>**

**<u>B</u>**.  As reflected by the highlighted entries thereon, the Debtors and Ross submit that the only

attorneys' fees that are compensable to the Landlord as part of the Cure Costs, *i.e.*, those fees that

were incurred in an "action . . . commenced by Lessor . . . against [Lessee] to enforce any of the

provisions of this lease," total no more than $9,060.00.  As reflected thereon, these fees include

the time spent in preparing the Objection (for 3 hours, totaling $1,800), as well as counsel's time

spent in (i) reviewing the Notices (necessary to determine the Cure Cost discrepancy),

(ii) communicating with the Landlord relating to the preparation and filing of the Objection, (iii) participating in the Sale Hearing on August 28, 2025, and (iv) engaging in discussions regarding the Cure Costs with Ross and the Debtors following the filing of the Objection.

41.     The Debtors and Ross both made a good faith effort to resolve the Cure Costs, including offering amounts on account of the attorneys' fees that far exceeded the costs incurred in bringing the Objection.  Those efforts were flat out rejected, with the Landlord insisting that the entirety of its attorneys' fees (and, to date, those amounts *already* paid on account of the CAM through 12.31.24) be satisfied, as a condition to its agreement to its "resolution" of the Objection. Thus, while the Debtors and Ross made a good faith effort to resolve the Cure Objection, the Debtors and Ross submit the Landlord has been unreasonable in its demands, necessitating this Reply and the need to have the Court determine the disputed cure amount, including on account of the attorneys' fee claim.

42.     The reasonableness of an award of attorneys' fees to a landlord requires the court to consider several factors, including the amount of the dispute relative to the attorneys' fee requested, the good faith effort to resolve the cure claim, the debtor's compliance with the Bankruptcy Code, and whether the issue is a matter of first impression.  *See Crown Books*, 269 B.R. at 19.

43.     Consideration of each of these factors makes clear that the Landlord's claim for attorneys' fees is unreasonable:  the quantum of fees requested is extraordinary relative to the amounts at issue (which were less than $5,000 at the time the Objection was filed), the Debtors (and Ross) have engaged in a good faith effort to resolve the Landlord's claim to the Cure Costs, including the attorneys' fees requested (while they submit the Landlord has not), and the Debtors have otherwise complied with their obligations under the Bankruptcy Code.  Moreover, neither the

Case 25-14861-MBK    Doc 2809    Filed 10/09/25    Entered 10/09/25 10:47:37    Desc Main
Document      Page 17 of 126

Motion nor the Objection raise a matter of first impression or are particularly unique or complicated.  The Objection and Limited Objection are the only two documents that the Landlord filed in the chapter 11 cases (other than a Notice of Appearance), though the Landlord (through counsel) did file at least eight (8) objections in the 2023 Cases, challenging the rights granted to the Debtors by the Bankruptcy Code.  *See* 2023 Case Docket Nos. 2799, 3010, 3335, 3479, 3739, 3822, 3938 and 4740.[6]

---

[6]      Although the Landlord challenged the cure costs asserted by the debtors in the 2023 Cases, that objection (and a supplement to that objection) were filed *pro se* by the Landlord.  *See* 2023 Cases at Docket Nos. 2344 and 2437.

44.     Accordingly, the Debtors submit that an award of attorneys' fees in the amount of $9,060.00 is reasonable.  Any other amount, whether incurred in monitoring these bankruptcy cases (or the 2023 Cases), advising the Landlord of the effect of the bankruptcy filing on its rights, or objecting to the Debtors' pursuit of its rights as a debtor and debtor in possession (as it chose to do numerous times in the 2023 Cases), is not reasonable, and it is not reasonable to charge those fees to the Debtors' estates.  *See Crown Books*, 269 B.R. at 17-18, 20.  *See also In re Ryan's Subs*, Inc., 165 B.R. 465, 467 (Bankr. W.D. Mo. 1994) (in denying a landlord's request for attorneys' fees the court held that "[i]f [the landlord] chooses to challenge [the] rights granted to the debtor by the Code, then [the landlord] must bear the risk of attorney's fees incurred by such action"); *Best Products*, 148 B.R. at 414-15 (where the court denied the landlord's request for attorneys' fees incurred in seeking to shorten the time within which the debtor must assume or reject the lease and then opposing the debtor's assumption of the lease, and concluded that the fees were not recoverable because they were not incurred in efforts to collect any delinquencies under the lease but in seeking to deny the debtor rights it had under the Bankruptcy Code); *In re Chateaugay Corp.*, 1993 WL 159969 (S.D.N.Y. May 10, 1993) ("The Court is doubtful that any contract provision entitling a creditor to be reimbursed for all attorneys' fees suffered in 'monitoring' a Chapter 11 case would be valid and enforceable but need not reach that issue to resolve this appeal.") (citing *Joshua Slocum, Ltd.,* 103 B.R. at 608).

45.     For all of these reasons, the Objection, to the extent it seeks more than $85,154.27 (inclusive of attorneys' fees and all newly asserted amounts, including October 2025 rent and 3rd Quarter 2025 CAM) as the amount necessary to cure all defaults under the Lease under section 365(b)(1) of the Bankruptcy Code, should be denied.[7]

[*Remainder of page intentionally left blank*]

---

[7]     Though it is it does not appear that the Landlord is challenging the assignment of the Lease to Ross based on the Lease not being subject to further bidding at the Auction (and did not argue as such at the Sale Hearing on August 28, 2025), the Landlord does state in the Objection as follows: "Despite being contrary to the approved Bid Procedures, the Debtor did not announce or identify a per lease offer extended by Ross Dress for Less, Inc. for the Landlord's location. The Landlord was not afforded the ability to bid at the auction." Objection at ¶ 9. As this Court stated in its Letter Opinion, dated September 15, 2025, "the decision to accept the package bid for 18 leases was a decision well-within the sound exercise of Debtors' business judgment and is consistent with, and permitted by, the Sale Procedures and the Sale Procedures Order." *See* Letter Opinion, Docket No. 2455 (the "Letter Opinion"), at p. 5.  Accordingly, to extent the Landlord is objecting to the assignment of the Lease on the basis that it was not afforded the ability to bid at the auction, that Objection should be overruled for the reasons the Court ruled at the Sale Hearing (on August 28, 2025) and in the Letter Opinion.

## CONCLUSION

For the foregoing reasons, the Debtors and Ross each respectfully request that the Court overrule the Objection, permit the assumption and assignment of the Lease to Ross, limit the award of attorneys' fees due in connection with section 365(b)(1) to $9,060.00, fix the entirety of the Cure Costs (inclusive of attorneys' fees) as of October 9, 2025, in the amount of $85,154.27 (inclusive of October 2025 rent and 3rd Quarter 2025 CAM), and grant such other relief as is just and proper.  A proposed form of Order approving the assumption and assignment and granting the relief set forth herein is attached hereto as **Exhibit C**.

Dated:  October 9, 2025

| | |
|---|---|
| */s/ Matthew G. Summers* | */s/ Michael D. Sirota* |
| **BALLARD SPAHR LLP** | **COLE SCHOTZ P.C.** |
| Matthew G. Summers | Michael D. Sirota, Esq. |
| 919 N. Market Street, 11th Floor | Warren A. Usatine, Esq. |
| Wilmington, DE 19801 | Felice R. Yudkin, Esq. |
| Telephone: (302) 252-4428 | Seth Van Aalten, Esq. (admitted *pro hac vice*) |
| Facsimile: (302) 252-4466 | Court Plaza North, 25 Main Street |
| E-mail: summersm@ballardspahr.com | Hackensack, New Jersey 07601 |
| | Telephone: (201) 489-3000 |
| *Counsel for Ross Dress For Less, Inc.* | msirota@coleschotz.com |
| | wusatine@coleschotz.com |
| | fyudkin@coleschotz.com |
| | svanaalten@coleschotz.com |
| | |
| | **PAUL, WEISS, RIFKIND, WHARTON &** |
| | **GARRISON LLP** |
| | Andrew N. Rosenberg (admitted *pro hac vice*) |
| | Alice Belisle Eaton (admitted *pro hac vice*) |
| | Christopher Hopkins (admitted *pro hac vice*) |
| | Sean A. Mitchell (admitted *pro hac vice*) |
| | 1285 Avenue of the Americas |
| | New York, New York 10019 |
| | Telephone: (212) 373-3000 |
| | Facsimile: (212) 757-3990 |
| | arosenberg@paulweiss.com |
| | aeaton@paulweiss.com |
| | chopkins@paulweiss.com |
| | smitchell@paulweiss.com |
| | *Co-Counsel for Debtors and* |
| | *Debtors in Possession* |

**<u>EXHIBIT A</u>**

5885

LEASE

between

THRIFTVALE ASSOCIATES          (Lessor)

and

THRIFTY DRUG STORES CO. INC.     (Lessee)


Dated as of: FEB. 1  1972

Leased Premises:    Thrifty Drug Store No. 431

170 San Mateo Boulevard, Half Moon Bay, California

6.2

INDEX

ARTICLE I - PREMISES                                                    Page

    Section 1.01          Leased Premises              1

    Section 1.02          Title                        2

    Section 1.03          Quiet Enjoyment              2


ARTICLE II - TERM

    Section 2.01          Primary Term                 3

    Section 2.02          Option to Extend             3

    Section 2.03          Lessee's Option to Terminate
                         Lease and Purchase the Leased
                         Premises                     4


ARTICLE III - RENTAL

    Section 3.01          Rental for Primary Term      5

    Section 3.02          Proration                    6

    Section 3.03          Rental for Option Terms      6

    Section 3.04          Place of Payment             7

    Section 3.05          No Counterclaim, Abatement,etc.   7


ARTICLE IV - USE

    Section 4.01          Permitted Use                9

    Section 4.02          Private Agreements           9

    Section 4.03          Condition                    10

    Section 4.04          Laws and Regulations         10

i

# INDEX (Continued)

ARTICLE V - TAXES AND UTILITIES                                    Page

    Section 5.01          Taxes                                    11

    Section 5.02          Income Taxes                             12

    Section 5.03          Utilities                                13


ARTICLE VI - MAINTENANCE AND ALTERATIONS

    Section 6.01          Maintenance and Repair                   14

    Section 6.02          Alterations and Additions                14

    Section 6.03          Machinery and Fixtures                   16


ARTICLE VII - DAMAGE OR DESTRUCTION

    Section 7.01          Partial Destruction                      17

    Section 7.02          Total or Substantial
                          Destruction                              18

    Section 7.03          Rebuilding of Premises                   19

    Section 7.04          Destruction During Option Terms          21


ARTICLE VIII - CONDEMNATION

    Section 8.01          Assignment                               23

    Section 8.02          Purchase by Lessee                       23

    Section 8.03          Partial Taking                           26

    Section 8.04          Condemnation During Option Terms         28

    Section 8.05          Voluntary Sale by Lessor                 28

INDEX (Continued)

ARTICLE IX - INSURANCE                                           Page

    Section 9.01        Nature of Insurance              29

    Section 9.02        Adjustment of Claims             31

    Section 9.03        Mortgagee Loss Payable
                        Endorsement                      31

    Section 9.04        Certificates of Insurance        33

    Section 9.05        Separate Insurance               33


ARTICLE X - INDEMNIFICATION

    Section 10.01                                        34


ARTICLE XI - LIENS

    Section 11.01                                        35


ARTICLE XII - ADVANCES BY LESSOR; PERMITTED CONTESTS

    Section 12.01       Advances                         36

    Section 12.02       Permitted Contests               37


ARTICLE XIII - EVENTS OF DEFAULT OR BREACH AND REMEDIES

    Section 13.01       Default                          38

    Section 13.02       Lessor's Remedies                39

    Section 13.03       Rights on Termination            41

    Section 13.04       Effect of Mitigation             43

    Section 13.05       Effect on Indemnification        43

    Section 13.06       If no Termination                43

INDEX (Continued)

| ARTICLE XIII - EVENTS OF DEFAULT OR BREACH AND REMEDIES - (Continued) | | Page |
|---|---|---|
| Section 13.07 | No Termination | 44 |
| Section 13.08 | Equitable Relief | 46 |
| Section 13.09 | Additional Remedies | 47 |
| Section 13.10 | Insolvency | 47 |
| Section 13.11 | "Date of Award" - Defined | 48 |
| Section 13.12 | Outside Litigation | 49 |

ARTICLE XIV - ASSIGNMENT AND SUBLETTING

| Section 14.01 | | 49 |

ARTICLE XV - MISCELLANEOUS PROVISIONS

| Section 15.01 | Estoppel Certificates | 50 |
| Section 15.02 | No Merger | 51 |
| Section 15.03 | Surrender | 51 |
| Section 15.04 | Binding Effect | 52 |
| Section 15.05 | Headings | 52 |
| Section 15.06 | Successors and Assigns | 52 |
| Section 15.07 | Notices | 53 |
| Section 15.08 | Law to Apply | 54 |
| Section 15.09 | Time is of the Essence | 54 |
| Section 15.10 | Lessor Defined | 54 |
| Section 15.11 | No Partnership | 55 |
| Section 15.12 | No Waiver of Default | 55 |

INDEX (Continued)

ARTICLE XV - MISCELLANEOUS PROVISIONS (Continued)                    Page

    Section 15.13      Performance for Account of Lessee      56

    Section 15.14      Acceptance of Premises                 57

    Section 15.15      No Prepayment                          57

    Section 15.16      Rent Payments                          57

    Section 15.17      Lessee's Duty on Termination           58

    Section 15.18      Hypothecation by Lessor                59

    Section 15.19      Exercise of Assignee's Rights          59

    Section 15.20      Intervening Ground Lease               59

    Section 15.21      Lessor's Lender                        60


ARTICLE XVI - PARKING, COMMON AREAS, DEED RESTRICTIONS

    Section 16.01      Lessee's Rights                        61

    Section 16.02      Maintenance and Operations             62

    Section 16.03      Delegation of Rights                   63

    Section 16.04      Attorney's Fees                        64

v

L E A S E

THIS LEASE is made as of this *1st* day of *FEBRUARY*,
1972, by and between THRIFTVALE ASSOCIATES, a partnership (herein-
after called "Lessor") and THRIFTY DRUG STORES CO. INC., a
California corporation (hereinafter called "Lessee").

ARTICLE I

PREMISES

1.01.  Leased Premises.  For and in consideration of
the rental hereinafter reserved, and the mutual covenants,
agreements and conditions hereinafter contained, Lessor does
hereby lease, let and demise unto Lessee and Lessee does hereby
hire, take, accept and rent from Lessor that certain real
property commonly known as Thrifty Drug Store No. __431__
170 San Mateo Boulevard, Half Moon Bay, County of ___San Mateo___
State of California, more particularly described in Exhibit A
annexed hereto and made a part hereof.  Together with all
easements, rights and appurtenances in connection therewith or
thereunto belonging.  Together with the buildings and improve-
ments now erected or hereafter to be erected upon the above
described real property; together with all the fixtures,
attachments and appliances and articles of personal property
attached to and appurtenant to said buildings and improvements.

1.

and used in connection with the operation of said buildings and
improvements, (as opposed to any such trade fixtures and equip-
ment used by Lessee in the operation of its business and which
has not been calculated in Lessor's Cost of Acquisition), and
any additions thereto or replacements thereof which shall, in
fact or by law or under any provision of this Lease, become the
property of the Lessor.  Said real property and the building and
improvements thereon may hereinafter be called "the Leased
Premises."  Said real property exclusive of the building
and improvements may hereinafter be called "the Land".  For
the convenience of the parties hereto a plot plan is attached
hereto as Exhibit B on which the Land is outlined in black
and labeled "Thrifty Parcel."

1.02.  _Title_.   Lessee represents that the Leased
Premises and the title thereto have been examined and approved
by Lessee and that Lessee hereby accepts the leasehold hereby
created subject to those matters of record described and set
forth in Exhibit C attached hereto and by this reference in-
corporated herein.

1.03.  _Quiet Enjoyment_.   So long as Lessee shall
not be in default under the terms of this lease, Lessee shall
quietly have and enjoy the Leased Premises without hindrance

2.

or molestation by anyone claiming by or through Lessor, subject
however to all of the terms of this Lease.

## ARTICLE II.

### TERM

2.01. Primary Term. Subject to all of the provisions
of this lease, Lessee shall have and hold the Leased Premises for
a primary term (herein called the "Primary Term") commencing on
the date hereof and ending at midnight on December 31, 2006, un-
less terminated sooner pursuant to the provisions hereof.

2.02. Option to Extend. If at the end of the Primary
Term of this lease Lessee shall not then be in default hereunder,
Lessee shall have five (5) consecutive options to extend the
term of this lease for five (5) years each. (Such additional
terms may hereinafter be called "Option Terms".) The first
option term shall commence on January 1, 2007 and end at mid-
night on December 31, 2011. Each succeeding option term shall
commence on the day following the preceding option term and end
at midnight five (5) years thereafter. Failure to exercise any
of the options herein granted shall void all succeeding options.
Each option shall be exercised by giving notice to Lessor in
writing of the exercise thereof at least six (6) months prior to
the commencement of each option term. All Option Terms shall
be on the same terms and conditions as the Primary Term except

3.

that rental payable during such Option Terms shall be adjusted
as set forth in Section 3.04 of this lease.

2.03. <u>Lessee's Option to Terminate Lease and Purchase
the Leased Premises.</u> Commencing on January 1, 1987, and during
the Primary Term of this lease, Lessee may terminate this lease
on any rental payment date by giving notice to Lessor of Lessee's
intention to so terminate. Said notice shall be delivered in
writing to Lessor in the manner set forth in Section 15.07 of
this lease, and must be delivered between January 1 and April
30 of each calendar year. As part of said notice of termination
and as a condition thereof Lessee shall make an irrevocable offer
to purchase Lessor's interest in the Leased Premises on said
termination date at a price determined in accordance with
Exhibit D hereof as of the effective date of termination. The
effective date of termination shall be between January 2 and
February 15 of the year following the giving of the notice of
termination. The notice shall designate the proposed effective
date of termination. Unless Lessor shall have accepted such
offer to purchase by notice given not later than sixty (60) days
prior to the effective date of termination, then Lessor shall be
conclusively presumed to have rejected said offer to purchase,
and this lease shall terminate on such date, except with respect
to obligations and liabilities of Lessee under this lease, actual
or contingent, which have arisen on or prior to such effective

4.

date of termination, upon payment by Lessee of all installments of basic rent and all other sums then due and payable under this lease to and including such date of termination. If Lessor shall accept such offer to purchase by notice given to Lessee not later than sixty (60) days prior to the effective date of termination, then on such effective date of termination Lessor shall transfer and convey the Leased Premises to Lessee and concurrently therewith Lessee shall pay to Lessor the purchase price therefor together with all costs and expenses incurred with such transfer.  Title to the Leased Premises shall be conveyed to Lessee subject to those matters set forth in Exhibit C hereof, and such other matters as shall have been caused by or consented to by Lessee, together with taxes and assessments affecting the property as of the date of conveyance.  Provided, however, Lessee shall not have the right to terminate this lease after the commencement of proceedings in condemnation or eminent domain affecting the Leased Premises in accordance with Section 8.02.

ARTICLE III.

RENTAL

3.01  Rental for Primary Term.  Lessee agrees to pay, and Lessor agrees to accept, as rental for the Leased Premises during the Primary Term of this lease, the annual sum of $37,710.00 payable in advance in monthly installments of  $      3,142.50 on the first day of each month for each and every full calendar

5.

year of the Primary Term of this lease.

3.02.   Proration.   If the Primary Term of this lease commences on a day other than the first day of the calendar month Lessee shall, on the first day of the Primary Term of this lease, pay as rental for the fractional month in which the Primary Term commences an amount determined by multiplying the monthly rental installments by a fraction, the numerator of which shall be the number of days remaining in such month, including the first day of the Primary Term of this lease, and the denominator of which shall be 30. The foregoing proration is based on the assumption of a 30 day calendar month.

3.03.   Rental for Option Terms.   If Lessee shall exercise its option to extend the term of this lease, as set forth in Section 2.02 hereof, Lessee shall pay, as rental during the said Option Term (in each of the five (5) year periods) an annual rental payable in advance in equal monthly installments on the first day of each calendar month as follows:

a) During the first five year Option Term the monthly rental shall be $ 1,571.25 .

b) During the second five year Option Term the monthly rental shall be $ 1,257.00 .

c) During the third five year Option Term the monthly rental shall be $ 942.75 .

d) During the fourth five year Option Term the monthly rental shall be $ 628.50 .

e)  During the fifth five year Option Term
the monthly rental shall be $  314.25

3.04.  Place of Payment.   All rental due hereunder
shall be paid to the order of Lessor at the address set forth
in Section 15.07 herein, as such address may be changed from
time to time.

3.05.  No Counterclaim, Abatement, Etc.   Except in
cases of termination as set forth in Sections 2.03, 7.02, and
8.02 of this lease, the rent and all other sums payable by
Lessee hereunder shall be paid without notice, demand, coun-
terclaim, setoff, deduction or defense and without abatement,
suspension, deferment, diminution or reduction, and the obli-
gations and liabilities of Lessee hereunder shall in no way
be released, discharged or otherwise affected (except as
expressly provided herein) by reason of: (a) any damage to or
destruction of or any condemnation or similar taking of the
Leased Premises together with all rights or appurtenances
thereto or any part thereof; (b) any restriction or prevention
of or interference with any use of the Leased Premises to-
gether with all rights or appurtenances thereto whether by
private agreement or action, public law or regulation, or
otherwise, now in force or hereafter enacted; (c) any title

defect or encumbrance or any eviction from the land or the
improvements or appurtenances or easements any part thereof
by title paramount or otherwise; (d) any bankruptcy, insol-
vency, reorganization, composition, adjustment, dissolution,
liquidation or other like proceeding relating to Lessor, or
any action taken with respect to this lease by any trustee
or receiver of Lessor, or by any court, in any such proceed-
ing; (e) any claim which Lessee has or might have against
Lessor; (f) any default or failure on the part of Lessor to
perform or comply with any of the terms hereof or of any
other agreement with Lessee; or (g) any other occurrence
whatsoever, whether similar or dissimilar to the foregoing,
whether or not Lessee shall have notice or knowledge of any
of the foregoing, any present or future law to the contrary
notwithstanding, it being the intention of the parties here-
to that the rent and other items to be paid by Lessee hereun-
der shall continue to be payable by Lessee in all events, and
that the obligations of Lessee hereunder shall continue unaffected
unless the requirement to pay or perform the same shall be
terminated pursuant to the express provisions of this lease.
Except as expressly provided in Section 2.03, 7.02 and 8.02
hereof, Lessee waives all rights now or hereafter conferred by
statute, or otherwise to quit, terminate or surrender this lease
or the Leased Premises or any part thereof, or to any abatement,
suspension, deferment, diminution or reduction of rent or any

other sum payable by Lessee hereunder.  Without derogating
from the foregoing, nothing contained herein shall relieve
Lessor of its liability to Lessee for Lessor's breach of any
of its obligations under this lease, but any claim of Lessee
on account of a breach or purported breach of this lease by
Lessor shall be subject and subordinate to all of the fore-
going provisions of this Section 3.05.

## ARTICLE IV.

### USE

4.01.  Permitted Use.  Lessee may use the leased Prem-
ises for any lawful purpose.

4.02.  Private Agreements.  Lessee shall not use the
Leased Premises or permit anything to be done in or about the
Leased Premises which will in any way conflict with any pri-
vate agreement, covenant, condition, restriction or easement
affecting the use of the Leased Premises.  In the event any
such private agreement, covenant, condition, restriction or
easement requires any affirmative duty or action on the part
of the owner of the Leased Premises or other occupant or
user thereof, Lessee shall comply therewith and shall perform
and discharge any such affirmative duties or actions.

9.

4.03.   Condition.   Lessee acknowledges and agrees
that the Leased Premises were constructed by a subsidiary
corporation of Lessee and sold by such subsidiary to Lessor.
Lessee further acknowledges and agrees that it has examined
and inspected the Leased Premises and that it accepts said
premises in an "as is" condition, waiving any claim which
Lessee may have or claim to have on account of any defect
in the Leased Premises, whether patent or latent.   Lessee
further acknowledges and agrees that the Leased Premises
constitute a fully constructed and equipped retail store
building and parking lot suitable for operation of a super
drug store thereon.

4.04.   Laws and Regulations.   Lessee shall not use
the Leased Premises or permit anything to be done in or
about the Leased Premises which will in any way conflict
with any law, statute, ordinance or governmental rule or
regulation now in force or which may hereafter be enacted
or promulgated.   Lessee shall at its sole cost and expense
promptly comply with all laws, statutes, ordinances and
governmental rules, regulations or requirements now in force
or which may hereafter be in force relating to or affecting
the condition, use or occupancy of the Leased Premises.   The

10.

judgment of any court of competent jurisdiction or the ad-
mission of Lessee in an action against Lessee, whether
Lessor be a party thereto or not, that Lessee has violated
any law, statute, ordinance or governmental rule, regula-
tion or  requirement, shall be conclusive of that fact as
between Lessor and Lessee.  Any such law, statute, ordinance
or governmental rule or regulation now or hereafter in force
shall not affect Lessee's duty to pay rent and discharge its
other duties under this lease.

ARTICLE V.

TAXES AND UTILITIES

5.01.  Taxes.  Lessee hereby agrees that it shall
pay and discharge, prior to delinquency, all taxes, assess-
ments, including assessments for benefits from public works
or improvements, levies, fees, water and sewer rents and
charges, and all other governmental charges, general and
special, ordinary and extraordinary, together with interest
and penalties thereon, which are levied upon or assessed
against Lessor or the Leased Premises together with all
rights and appurtenances thereto or a part thereof, or any
rent reserved or payable hereunder, or upon or against this
lease or the leasehold estate hereby created or the gross

11.

receipts from the Leased Premises or the earnings or rents arising from the use or occupancy thereof, or which arise in respect of the occupancy or use of the Leased Premises or a part thereof. Lessee shall have the option to pay such tax or assessment in installments, except that each installment thereof, and any interest thereon, must be paid by the final date fixed for the payment thereof, and the whole amount thereof must be paid prior to the expiration of the term of this lease, as it may be extended pursuant to Section 2.02 of this lease. Taxes and assessments shall be prorated at the beginning and end of the term of this lease; provided, however, if Lessee purchases the Leased Premises pursuant to Section 2.03, 7.02 and 8.02 there shall be no proration. Lessee shall furnish to Lessor, within thirty (30) days after demand therefor, proof of the payment of any such tax, assessment, levy, fee, rent or charge which is payable by Lessee pursuant to this Section.

    5.02. <u>Income Taxes</u>. Anything in the foregoing to the contrary notwithstanding, Lessee shall have no obligation under this lease to pay any net income, franchise, excess profit or gift, estate or inheritance tax levied upon or *assessed against Lessor, unless such tax is in lieu of or a*

12.

substitute for or an addition to, in whole or in part,
any other tax or assessment upon or with respect to the
Leased Premises which, if such other tax or assessment
were in effect, would be payable by Lessee hereunder.
Provided, however, however, and in any case where any
tax may be levied, assessed or imposed upon or measured
by the rents hereunder or the income arising therefrom
(and which is not a net income tax), Lessee, and not
Lessor, shall be required and hereby agrees to pay same.

5.03.  Utilities.  Lessee agrees to pay all charges
for water, gas, light, heat, telephone, electricity, power,
sewer, rubbish, garbage removal, and other utility and
communications services rendered or used on or about the
Leased Premises. Lessee shall be responsible for contract-
ing for same. In no event shall Lessor be liable for an
interruption or failure in the supply or service of any
such utility, nor shall any such interruption or failure
affect Lessee's duties and obligations under this lease.

13.

ARTICLE VI.

MAINTENANCE AND ALTERATIONS

6.01.   Maintenance and Repair.   Lessee will, at
its cost and expense, keep and maintain the Leased Premises,
including any rebuilt, additional or substituted buildings
and other improvements, and the equipment, fixtures, motors
and machinery thereon or used in connection therewith in
good repair and condition, except for ordinary wear and
tear, and will promptly make all structural and non-structural,
and ordinary and extraordinary changes and repairs of every
kind which may be required to be made upon or in connection
with the Leased Premises or a part thereof in order to keep
and maintain the Leased Premises in good repair and condition,
ordinary wear and tear excepted.   Lessor shall not be required
to maintain, alter, repair, rebuild or replace the Leased
Premises or any part thereof, and Lessee expressly waives the
right to make repairs at the expense of Lessor which may be
provided for in any law now in effect or hereafter enacted.

6.02.   Alterations and Additions.   Lessee may
at its cost and expense make additions to and alterations
of the building and other improvements on the Leased Premises
(and may totally or partially demolish such building, structures
and improvements, but only as a part of such program of making

14.

additions or alterations), provided that the market value
of the Leased Premises immediately preceding any such program
of additions and alterations shall not be lessened by reason
of any such addition or alteration upon completion and that all
such additions and alterations (including demolition as a
part of such program of additions and alterations) shall
be expeditiously completed in a good and workmanlike manner
in compliance with all laws, ordinances, rules, regulations
and requirements applicable thereto.  Provided, further, that
in the case of any program of addition or alteration (including
demolition as a part thereof) of the improvements on the
Leased Premises which exceeds in cost $25,000.00, Lessee
shall, prior to the commencement thereof furnish Lessor with
plans and specifications prepared by a competent architect
providing for work in accordance with all applicable govern-
mental laws and regulations, and shall, in any case, furnish
Lessor with an acceptable surety bond or bonds or other
security satisfactory to Lessor, to assure the completion of
the additions and alterations, including the rebuilding of the
improvements to be demolished in accordance with the plans
and specifications furnished to Lessor; and further, to assure
the payment of all claims for all work and material performed
and furnished in connection therewith.  Lessee shall, prior
to commencement of work, procure and pay for all permits
and licenses required in connection with any such addition,

15.

alteration, demolition or rebuilding. Title to all such addi-
tions and alterations, and to all new buildings and other improve-
ments constructed on the Leased Premises from time to time (other
than any thereof replacing improvements owned by Lessor which
have been demolished, in which case title thereto shall immedi-
ately vest in Lessor), shall, at the expiration or earlier
termination by Lessor of this lease, vest in Lessor, if such
additions or alterations are not removed prior thereto as provided
in Section 15.03 of this lease.  During the period when any such
addition, improvement or alteration is being made or when any
demolition or rebuilding is taking place, Lessee will maintain
or cause to be maintained such Contingent Liability, Public
Liability, Completed Value Builder's Risk, Workmen's Compensation
or similar insurance as is customarily maintained, or caused to
be maintained, by Lessee, with respect to similar activities on
properties owned by it, with certificates of such insurance to
be furnished to Lessor.  Provided, however, any other provision
of this lease notwithstanding (including applicable provisions
of Article VIII), in the event of additions, and alterations
(including demolitions) which affect the structural portions of
the existing building, the plans and specifications therefor
shall be subject to Lessor's approval, not to be unreasonably
withheld, Lessor agreeing to give same within fifteen (15) days
and specifying the reasons for disapproval, if disapproved.

6.03. <u>Machinery and Fixtures</u>.  In addition to the fore-
ing, Lessee may, at any time during the term of this lease and
at its sole cost and expense, install, assemble or place upon

the Leased Premises any items of machinery or equipment,
trade fixtures or other personal property used or useful
in Lessee's business, upon compliance with all the terms
and conditions set forth in Section 6.02 of this lease.
All such machinery, equipment, trade fixtures or personal
property shall be and remain the property of Lessee and
Lessee may remove the same from the Leased Premises at any
time prior to the expiration or earlier termination of this
lease, and in the event of any such removal, Lessee shall
repair any damage to the Leased Premises caused thereby, at
Lessee's cost and expense.

ARTICLE VII.

DAMAGE OR DESTRUCTION

7.01.  Partial Destruction.  If the Leased Premises
or any part thereof shall be damaged or destroyed by fire or
other casualty, Lessee shall  promptly notify Lessor of such
destruction or damage if the cost of rebuilding, replacing
and repairing such damage or destruction, as estimated by
Lessee, shall exceed $10,000.00.  Lessee expressly waives
the provisions of any present or future law relating to damage
or destruction and agrees that the provisions of this lease
shall control the rights of Lessor and Lessee.

17.

7.02.   Total or Substantial Destruction.   If,
after December 31, 1986, and during balance of the Primary
Term, the Leased Premises shall be totally or substantially
damaged or destroyed in any single casualty so that the
Leased Premises shall no longer be usable by Lessee, then,
in lieu of rebuilding, replacing and repairing the Leased
Premises as provided in Section 7.03 of this lease, Lessee
may terminate this lease as of any rental payment date
by giving notice to Lessor of Lessee's intention to so
terminate.   Said notice shall be delivered to Lessor in
writing (as provided in Section 15.07) at least ninety (90)
days prior to the effective date of such termination and
not less than thirty (30) days after the event of damage or
destruction.   Said notice shall be accompanied by a certifi-
cate of Lessee, signed by an officer thereof, to the effect
that the Leased Premises have been totally or substantially
damaged or destroyed and that Lessee's board of directors
have by resolution determined in good faith that the Leased
Premises are no longer usable by Lessee and will not be re-
built, replaced or repaired.   As part of said notice of
termination and as a condition thereof Lessee shall make an
irrevocable offer to purchase Lessor's interest in the
Leased Premises on said termination date at a price determined
in accordance with Exhibit D hereof as of the effective date
of termination.   Unless Lessor shall have accepted such offer

18.

to purchase by notice given not later than the thirtieth (30th) day after the making of such offer, then Lessor shall be conclusively presumed to have rejected said offer to purchase, and this lease shall terminate on such effective date of termination, except with respect to obligations and liabilities of Lessee under this lease, actual or contingent, which have arisen on or prior to such date, upon payment by Lessee of all installments of rent and all other sums then due and payable under this lease to and including such date of termination. If Lessor shall accept such offer to purchase by notice given to Lessee not later than thirty (30) days after the making of such offer, then on such effective date of termination, Lessor shall transfer and convey the Leased Premises to Lessee and concurrently therewith Lessee shall pay the purchase price in the manner set forth in Section 2.03 hereof and any insurance proceeds payable because of such total or substantial damage or destruction shall be paid to Lessee.  If Lessor shall not accept such offer, Lessee shall have no right, title or interest in and to the insurance proceeds, hereby waiving same.

7.03. <u>Rebuilding of Premises</u>.. If any portion of the Leased Premises shall be damaged or destroyed by any casualty (including,without limiting its meaning, a casualty caused by earthquake) during the Primary Term, (and as the same may be extended, except as provided in Section 7.04) of this lease, and this lease is not terminated, then this lease shall

continue in full force and effect and Lessee shall promptly,
at its cost and expense, restore and rebuild the Leased
Premises to not less than the market value thereof immediately
prior to such damage or destruction irrespective of the
availability or sufficiency of any fire or other insurance
proceeds payable with respect thereto. If insurance proceeds
be available, from time to time after the commencement of such
repairs but not more often than once in any period of thirty
(30) days, Lessee may request by notice to Lessor that Lessor
pay to Lessee, from the net proceeds of any insurance there-
tofore paid to Lessor by reason of such damage or destruction,
an amount sufficient to reimburse Lessee for the previously un-
reimbursed cost and expense thereof, and upon receipt by Lessor
of a certificate, dated the date of such request and signed by
an officer of Lessee, setting forth in reasonable detail the
total amount of such unreimbursed cost and expense actually in-
curred by Lessee and not previously certified by Lessee, and
stating that no default has occurred and is continuing hereunder,
Lessor shall pay to Lessee the amount so certified to the extent
of the net proceeds received by reason of such damage or destruc-
tion and remaining after the making of all previous reimbursements
to Lessee. If the cost and expense of such repairs shall exceed
the amount of any such net proceeds, the deficiency shall be paid
by Lessee. If the amount of the net proceeds received by Lessor
shall exceed the cost and expense of such repairs, Lessor shall
pay to Lessee the amount of such excess. No payment of any
portion of such net proceeds shall be made to Lessee pursuant

to this Section if any default shall have happened and
to be continuing under this lease unless and until such
default shall have been cured or removed. Provided, how-
ever, prior to the commencement of any restoration or
rebuilding, Lessee shall furnish Lessor with plans and
specifications therefor prepared by a competent architect
providing for the work of restoration or rebuilding in
accordance with all applicable governmental laws and
regulations; and, shall furnish Lessor with an acceptable
surety bond or bonds or other security satisfactory to Lessor,
to assure the completion of the work of restoration and re-
building in accordance with the plans and specifications
furnished to Lessor; and further, to assure the payment of
all claims for work and material performed and furnished in
connection therewith. Structural changes shall be subject
to Lessor's approval in accordance with the provisions
therefor in Section 6.02.

7.04.  Destruction During Option Terms. a)If any
portion of the Leased Premises shall be damaged or de-
stroyed by any insured casualty during any Option Term of
this lease, and if the cost of rebuilding, replacing or
repairing such damage or destruction, as estimated by Lessee,
shall exceed $25,000.00, then Lessee may elect to restore
or rebuild the Leased Premises in the manner set forth
in Section 7.03 or Lessee may, within ninety (90) days after

such loss or damage give to Lessor a thirty (30) day notice,
in writing, cancelling and terminating the renewal term then
in effect.  On  expiration of said thirty (30) day notice,
the Option Term shall terminate and all insurance proceeds
payable because of such damage or destruction shall be paid
to Lessor.  b) If any portion of the Leased Premises shall
be damaged or destroyed by any uninsured casualty during any
Option Term of this lease, and if the cost of rebuilding,
replacing or repairing such damage or destruction, as estim-
ated by Lessee, shall exceed $25,000.00, then Lessee may
elect to restore or rebuild the Leased Premises in the manner
set forth in Section 7.03 or Lessee may, within ninety (90)
days after such loss or damage, give to Lessor a thirty (30)
day notice, in writing, cancelling and terminating the renewal
term then in effect.  On expiration of said thirty (30) day
notice, the Option Term shall terminate and any insurance pro-
ceeds payable because of such damage or destruction shall be
paid to Lessor. In the event Lessee elects to terminate this
lease in accordance with the provisions of this subparagraph
b), at Lessor's option, Lessee agrees to raze and remove all
improvements in the Leased Premises at Lessee's sole expense
within thirty (30) days after the expiration of the notice per-
iod described above.  Lessor shall exercise its option within
twenty-five (25) days after receipt by it of the notice of
termination. If no notice to raze and remove is given to Lessee

within said time, Lessor shall be deemed to have elected against removal, and the improvements and all furniture, furnishing and equipment (exclusive of sales inventory and supplies relating thereto) shall belong to and be the sole property of Lessor in their then condition.

ARTICLE VIII.

CONDEMNATION

8.01.  Assignment.  Lessee hereby irrevocably assigns to Lessor any award or payment to which Lessee may be or become entitled by reason of any taking of the Leased Premises, or easements or rights appurtenant thereto, or any part thereof, in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of the temporary requisition of the use or occupancy of the Leased Premises or any part thereof, by any governmental authority, civil or military, whether the same shall be paid or payable in respect of Lessee's leasehold interest hereunder or otherwise.  Lessee shall be entitled to make a claim against the condemning authority for loss or damage to Lessee's trade fixtures and equipment used by Lessee in the operation of its business, but the same shall not affect any award or payment hereinbefore irrevocably assigned to Lessor by Lessee.

8.02.  Purchase by Lessee.  If during the Primary Term, of this lease (i) the entire Leased Premises shall be taken in or by condemnation or other eminent domain proceedings pursuant

to any law, general or special, or (ii) any substantial
portion of the Leased Premises which is sufficient to
render the remaining portion thereof unsuitable for
Lessee's business being conducted on the Leased Premises
immediately prior to such taking shall be taken in or by
such proceedings, then Lessee shall, within thirty (30)
days after any such taking, give notice to Lessor of its
intention to terminate this lease on any rental payment
day specified in such notice which occurs not less than
ninety (90) days after such notice.  As part of said
notice of termination and as a condition thereof Lessee
shall (A) make an irrevocable offer to purchase Lessor's
interest in the Leased Premises (or, in the case of the
taking of the entire Leased Premises, Lessor's interest
in the award payable ("award") in connection with such
taking or the right to receive the same when made, if no
payment thereof has yet been made) on said termination
date at a price determined in accordance with Exhibit D
hereof, as of the effective date of termination, together
with all expenses paid or incurred by Lessor in obtaining
or collecting such award which shall include, without
limitation, attorney's fees, appraiser's fees, expert fees,
and the like (herein sometimes referred to as "Lessor's
expenses"), and (B) if less than the entire Leased Premises

shall have been taken, deliver to Lessor a certificate of
Lessee, signed by an officer thereof, stating that, in
the judgment of the Board of Directors of Lessee or the
executive committee of said Board, the portion of the
Leased Premises so taken is sufficient to fulfill the
conditions set forth in clause (ii) of this Section 8.02.
Unless Lessor shall have accepted such offer to purchase
by notice given not later than the thirtieth (30th) day
after the making of such offer, then Lessor shall be con-
clusively presumed to have rejected said offer to purchase,
and this lease shall terminate on such date, except with
respect to obligations and liabilities of Lessee under
this lease, actual or contingent, which have arisen on
or prior to such date, upon payment by Lessee of all
installments of rent and all other sums then due and pay-
able under this lease to and including such date of
termination.  If Lessor shall accept such offer to purchase
by notice given to Lessee not later than thirty (30) days
after the making of such offer, then on such date of termina-
tion, Lessor shall transfer and convey all or the remaining
portion (as the case may be) of the Leased Premises to Lessee
or its nominee and concurrently therewith Lessee shall pay
the purchase price set forth in Section 2.03 together with

25.

all of Lessor's expenses; or, Lessor shall pay to Lessee
or its nominee the entire award actually received by
Lessor in connection with such taking, less Lessor's
expenses incurred in collecting such award (such award
less such Lessor's expenses being herein called the "net
award") or, if such award shall not have been received
by Lessor, Lessor shall assign to Lessee all its right,
title and interest in and to such award; provided, if
Lessor has prior to the termination date received the
award, Lessor shall retain same and the amount thereof
shall be credited against payment by Lessee of the purchase
price and Lessor's expenses.

8.03  Partial Taking.  If (i) a portion of the
Leased Premises (including easements and other appurtenant
rights) shall be taken in or by condemnation or other eminent
domain proceedings pursuant to any law, general or special,
which taking is not sufficient to authorize or require that
Lessee give notice of its intention to terminate this lease
as provided in Section 8.02, or (ii) the use of occupancy
of the Leased Premises or any part thereof shall be
temporarily requisitioned by any governmental authority,
civil or military, then this lease shall continue in full
effect without abatement or reduction of rent, or other sums

payable by Lessee hereunder notwithstanding such
taking or requisition, and Lessee shall, promptly after
any such taking or requisition and at its expense,
repair any damage caused by any such taking or requisition
in conformity with the requirements of Section 7.03 so
that after the completion of such repairs the Leased
Premises shall be, as nearly as possible, in a condition
as good as the condition thereof immediately prior to
such taking or requisition, except for ordinary wear
and tear. In the event of any such taking in or by
condemnation or other eminent domain proceedings, Lessee
shall be entitled to receive all of the award payable in
connection with such taking, but such payment shall be
made only against certificates of Lessee, signed by the
President or a Vice President of Lessee, delivered to
Lessor from time to time as such work of repair progresses
or is completed, each such certificate describing such work
of repair for which Lessee is requesting payment, the cost
incurred by Lessee in connection therewith and stating that
Lessee has not theretofore received payment for such work
of repair. Upon completion of such work of repair, any

27.

proceeds of such award then remaining will be paid to
Lessee upon delivery to Lessor of a certificate of Lessee,
signed by the President or a Vice President thereof, to
the effect that such work of repair has been completed
and complies with the requirements of this Section.    In
the event of such temporary requisition, Lessee shall be
entitled to receive the entire net award payable by reason
of such temporary requisition.   If the cost of any repairs
required to be made by Lessee pursuant to this Section
8.03 shall exceed the amount of the net award, the deficiency
shall be paid by Lessee.   No payments shall be made to
Lessee pursuant to this Section 8.03, if any default shall
have happened and be continuing under this lease unless and
until such default shall have been cured or removed.

8.04.   <u>Condemnation During Option Terms</u>.    In
the event that any portion of the Leased Premises shall be
taken by condemnation or other eminent domain proceedings
during any Option Term of this lease, the other provisions
of this Article VIII shall be applicable or at its option
Lessee may by written notice to Lessor given within thirty
days after such taking terminate this lease as of the date
of such taking.

8.05.   <u>Voluntary Sale by Lessor</u>.    For the pur-

28.

poses of this lease, all amounts payable pursuant to any
agreement between Lessor and any condemning authority
(which Lessor has the right to enter into without joinder
of Lessee) which has been made in settlement of or under
threat of any condemnation or other eminent domain proceeding
affecting the Leased Premises or easements or other appurten-
ant rights thereto shall be deemed to constitute an award
made in such proceeding.

ARTICLE IX.

INSURANCE

9.01.    Nature of Insurance.    Lessee shall at all
times maintain insurance on the Leased Premises of the
following character:

(i)   Insurance against loss or damage by fire
and other risks from time to time included under ex-
tended coverage endorsements standard for use in
California in amounts equal to not less than the full
replacement value of the Leased Premises, as said
replacement value is constituted from time to time.
Lessee shall upon written demand provide Lessor (and
Lessor's lender, if any) with a certified statement of
replacement value not more often than once every three
(3) years.

29.

(ii) General public liability insurance (including
coverage for elevators, if any, on the Leased Premises)
against claims for bodily injury, death or property
damage occurring on, in or about the Leased Premises and
the adjoining easements, streets, sidewalks and passageways,
such insurance to afford protection of not less than Five
Hundred Thousand Dollars ($500,000) with respect to bodily
injury or death to any one person, not less than One Million
Dollars ($1,000,000) with respect to any one accident, and not
less than Five Hundred Thousand Dollars ($500,000) with respect
to property damage.

(iii) Such other insurance, in such amounts and with
such coverages as is customarily maintained by Lessee on
similar properties owned by Lessee.

Such insurance shall be written by companies of recognized
financial standing which are legally qualified to issue such
insurance, and such insurance shall name as the insured parties
thereunder Lessor and Lessee, as their interests may appear.
Such insurance may be obtained by Lessee by endorsement on its
blanket insurance policies, provided that such blanket policies
satisfy the requirements specified above in this Section.    Lessee
may either carry all or any part of such insurance (i) under any
plan of self-insurance which it may from time to time have in force
and effect provided it first furnishes to Lessor (and Lessor's
lender) evidence satisfactory to Lessor and its lender, of the
existence of an insurance reserve adequate for the risks covered
by such plan of self-insurance, or  (ii)  under a "blanket"

30.

policy or policies covering other liabilities of Lessee
and its subsidiaries, controlling or affiliated corporations,
or (iii) partly under such a plan of self-insurance and partly
under such "blanket" policies, subject to Clause (i) of this
sentence. Lessor shall not be required to prosecute any claim
against any insurer or to contest any settlement proposed by
any insurer, provided that Lessee may, at its cost and expense,
prosecute any such claim or contest any such settlement, and
in such event Lessee may bring any such prosecution or contest
in the name of Lessor, Lessee or both, and Lessor shall co-
operate with Lessee and will join therein at Lessee's written
request upon receipt by Lessor of an indemnity from Lessee
against all costs, liabilities and expenses (including attor-
ney's fees) in connection with such cooperation, prosecution
or contest.

9.02.    <u>Adjustment of Claims</u>.    Insurance claims by
reason of damage or destruction to any portion of any Leased
Premises shall be adjusted by and at the cost of Lessee;
provided, however, that if the loss shall be in excess of
$30,000.00 no final adjustment shall be made with the in-
surance company or companies, without the written approval of Lessor
of the amount of the adjustment.

9.03.    <u>Mortgagee Loss Payable Endorsement</u>.    Every

such insurance policy (other than liability insurance policies) maintained pursuant to this Article shall, to the extent available, bear a standard first mortgagee endorsement in favor of any lender of Lessor, from time to time (hereinafter called "Trustee"), but, notwithstanding such endorsement, each payment for a single loss which does not exceed $30,000 shall be made directly to Lessee, and all other loss under any such policy shall be made payable to Trustee, but recoveries under any such policies received by Trustee shall be applied by Trustee as provided in Section 7.03 of this lease.  Every such policy shall provide that the issuer thereof waives all rights of subrogation against Lessee, Lessor, any successor to Lessor's interest in the Leased Premises, that ten (10) days prior written notice of cancellation shall be given to Lessor and Trustee and that such insurance, as to the interest of Trustee therein, shall not be invalidated by any act or neglect of Lessor or Lessee or any owner of the Leased Premises or of any interest therein, nor by any foreclosure or any other proceedings or notices thereof relating to the Leased Premises or any interest therein, nor by any change in the title or ownership of the Leased Premises or any interest therein, nor by occupancy of the Leased Premises for purposes more hazardous than are permitted by such policy.

32.

9.04. Certification of Insurance. Lessee shall deliver to Lessor promptly after the execution and delivery of this lease the original or duplicate policies or certificates of insurers satisfactory to Lessor evidencing all the insurance which is then required to be maintained by Lessee hereunder, and Lessee shall, within thirty (30) days prior to the expiration of any such insurance, deliver other original or duplicate policies or other certificates of the insurers evidencing the renewal of such insurance. Should Lessee fail to effect, maintain or renew any insurance provided for in this Article or to pay the premium therefor, or to deliver to Lessor any of such policies or so to do, may upon five (5) days' notice to Lessee of its intention so to do, procure such insurance, and any sums expended by it to procure such insurance shall be repaid by Lessee within ten (10) days following the date on which demand therefor shall be made by Lessor.

9.05. Separate Insurance. Lessee shall not obtain or carry separate insurance concurrent in form or contributing in the event of loss with that required in this Article IX to be furnished by Lessee unless Lessor and Trustee are included therein as a named insured, with loss

33.

payable as in this lease provided.  Lessee shall immediately
notify Lessor whenever any such separate insurance is ob-
tained and shall deliver to Lessor the policy or policies
or certificates evidencing the same.

ARTICLE X.

INDEMNIFICATION

10.01.    Lessee agrees to pay, and to protect,
indemnify and save harmless Lessor from and against, any
and all liabilities, losses, damages, costs, expenses
(including attorneys' fees and expenses of Lessee and
Lessor), causes of action, suits, claims, demands or
judgments of any nature arising from  (i) any injury to,
or the death of, any person or any damage to property on
the Leased Premises or upon adjoining sidewalks, streets
or ways, or in any manner growing out of or connected with
the use, nonuse, condition or occupancy of the Leased Pre-
mises or a part thereof or the construction or repair of
any improvements on the Leased Premises, resulting from the
condition of adjoining sidewalks, streets or ways,  (ii)
violation of any agreement or condition of this lease and of
any contracts or agreements of which Lessee has notice,
or which shall have existed at the commencement of this
lease or which shall have been approved by Lessee, and of

34.

any restrictions, laws, ordinances or regulations affecting
the Leased Premises or a part thereof or the ownership,
occupancy or use thereof,   (iii) any encroachment of improve-
ments on the Leased Premises upon property adjoining the Leased
Premises,   (iv) or any encroachment of improvements on ad-
joining properties upon the Leased Premises, and   (v) any
contest permitted by Section 12.02.

ARTICLE XI.

LIENS

11.01.   Lessee will not permit to remain, and
will promptly discharge, at its cost and expense, all liens,
encumbrances and charges (other than liens, encumbrances
or charges created by Lessor) upon the Leased Premises
or a part thereof; provided that the existence of any
mechanic's, laborer's, materialman's, supplier's or vendor's
lien or right thereto shall not constitute a violation of
this Section if payment is not yet due under the contract
which is the foundation thereof and if such contract does
not postpone payment for more than sixty (60) days after
the performance thereof.   Lessor shall have and is hereby
given authority to enter upon the Leased Premises at any
time to post any notices which in its opinion shall be
necessary to hold Lessor harmless from any claim or liability

35.

arising out of any work done on the Leased Premises. Lessor
shall not be liable for any labor, services or materials
furnished or to be furnished to Lessee, or to anyone holding
the Leased Premises through or under Lessee, and no mechanic's
or other such lien for any such labor or materials shall
attach to or affect the interest of Lessor in and to the
Leased Premises.

## ARTICLE XII

### ADVANCES BY LESSOR; PERMITTED CONTESTS

12.01.  Advances.  If Lessee shall fail to make or perform
any payment or any act on its part to be made or performed
under this lease, then, subject to the provisions of Section
12.02 hereof, Lessor may (but shall not be obligated to),
without notice to or demand upon Lessee and without waiving
any default or releasing Lessee from any obligation, make
such payment or perform such act for the account and at the
cost and expense of Lessee.  All sums so paid by Lessor and
all necessary and incidental costs and expenses (including
attorneys' fees and expenses)  incurred in connection with the
performance of any such act by Lessor, together with interest
at the rate of ten (10%) percent per annum or the highest
rate permitted under local law whichever is lower, from the
date of the making of such payment or of the incurring of

36.

such costs and expenses by Lessor, shall be payable by
Lessee to Lessor, on demand.

12.02.   Permitted Contests.  Lessee shall not be
required to pay any tax, assessment, levy, fee, rent or
charge or to discharge or remove any lien, encumbrance or
charge or to comply with any law, rule, order, regulation
and ordinance, so long as Lessee shall contest, in good
faith and at its cost and expense, the amount or validity
thereof, by appropriate proceedings which shall operate
during the pendency thereof to prevent the collection or
enforcement of or other realization upon the tax, assess-
ment, levy, fee, rent, charge, lien, encumbrance, law, rule,
order, regulation or ordinance so contested, and the sale,
forfeiture or loss of the Leased Premises or any part thereof,
or of the rent or any portion thereof, to satisfy the same.
While any such proceedings are pending, Lessor shall not
have the right to pay, remove, cause to be discharged or
comply with the tax, assessment, levy, fee, rent, charge, lien,
encumbrance, law, rule, order, regulation or ordinance being
contested.  Each such contest shall be promptly prosecuted to
a final conclusion, and Lessee will pay, and save Lessor
harmless against, all losses, judgments, decrees and costs
(including attorneys' fees and expenses) in connection
therewith, and will, promptly after the final determination
of such contest, pay and discharge the amounts which shall

37.

be levied, assessed or imposed or determined to be pay-
able therein, together with all penalties, fines, interests,
costs and expenses thereon or in connection therewith.    No
such contest shall subject Lessor to risk of any criminal
liability, and Lessee shall give reasonable security to
Lessor as may be demanded by Lessor to insure payment of or
compliance with any tax, assessment, levy, fee, rent, charge,
lien, encumbrance, law, rule, order, regulation or ordinance
contested as provided in this Section and to prevent any
such sale or forfeiture.

ARTICLE XIII

EVENTS OF DEFAULT OR BREACH AND REMEDIES

13.01  Default.  Any of the following shall consti-
tute an event of default or breach by Lessee under this lease:
(i)  Failure to remedy any default in the payment of any sum
due under this lease for ten (10) days after written notice;
(ii) failure to remedy any default with respect to any of the
other provisions, covenants or conditions of this lease to be
kept or performed by Lessee within thirty (30) days after
written notice, or if any such default cannot be cured within
such thirty (30) day period owing to causes beyond the control
of Lessee (financial excepted), if Lessee shall fail to
proceed promptly upon receipt of notice to prosecute the curing

38.

of such default with diligence and continuity;  (iii) if
Lessee abandons the Leased Premises; or (iv) if Lessee
commits or suffers to be committed an act of insolvency
as described in Section 13.10 of this Article XIII.   In
any such event of default or breach by Lessee, at Lessor's
option, and without limiting Lessor in the exercise of any
other right or remedy Lessor may have on account of such
default or breach, and without any further demand or notice,
Lessor may exercise the remedies provided in this Article XIII.

13.02.  Lessor's Remedies.  Upon the occurrence of an
event of default or breach by Lessee, and after ten (10) days
additional written notice to Lessee, Lessor shall have the
right, at its option, then or thereafter to do one or more of
the following (which are not mutually exclusive):

(a)    Terminate this lease and Lessee's right to
       possession.

(b)    Re-enter the Leased Premises, take possession
       of all buildings, improvements, additions,
       alterations, equipment and fixtures thereon,
       and eject all parties in possession thereof
       therefrom.

39.

(c)   Relet the Leased Premises or any part thereof
for the account of Lessee, which may be for
the remainder of the term of this lease or
for a longer or shorter period. Any such lease
executed by Lessor may be executed in its own
name and such Lessee shall be under no obliga-
tion whatever to Lessee for any right or
authority whatever to collect any rent from
such Lessee to whom the premises have been so
relet.

(d)   Collect and receive rents from any sub-lessee,
licensee or other occupant of the Leased Premises,
applying the same first to the payment of such
expenses as Lessor may have paid, assumed or in-
curred in recovering possession of the Leased
Premises, including costs, expenses and attorney's
fees, and for placing the same in good order and
condition or preparing, altering or repairing the
same for reletting, and all other expenses, costs
and charges, including attorney's fees and brokerage,
paid, assumed or incurred by Lessor in connection
with reletting the Leased Premises, and then to the
fulfillment of the covenants of Lessee.

(e)   Sue and collect for rent and other moneys due and
payable or which may become due and payable to Lessor.

13.03. Rights on Termination. Except as provided
in Section 13.06 of this Article XIII, and as may be other-
wise provided by law, if (i) Lessee breaches this Lease and
abandons the Leased Premises before the end of the term (or
as the same may be extended), or (ii) if, at Lessor's option,
Lessee's right to possession is terminated by Lessor by reason
of a breach by Lessee of any of the terms and provisions of
this lease to be kept, observed and performed by Lessee, the
term of this lease shall terminate effective upon notice of
Lessor's election to terminate given to Lessee. Upon such
termination Lessor shall have the right to recover from Lessee,
and Lessee shall pay to Lessor, all of the following sums:

> (a)   Unpaid rent plus any other amounts Lessee
>       is required to pay hereunder to the date
>       of termination, together with interest
>       thereon at the rate of ten (10%) percent
>       per annum; and
>
> (b)   Unpaid rent plus any other amounts Lessee
>       is required to pay hereunder from the date
>       of termination calculated to the date of w
>       award rendered by a court of competent
>       jurisdiction, together with interest thereon
>       at the rate of ten (10%) percent per annum,
>       less the amount of rental loss which Lessee
>       proves in the proceeding in which said award

is rendered could have been reasonably
avoided by Lessor, if any; and

(c)     Unpaid rent, plus any other amounts which Lessee
is required to pay hereunder, to the originally
scheduled termination date of the term of this
lease, or as the same may be extended, less the
amount of rental loss which Lessee proves in the
proceeding in which said award is rendered could
have been reasonably avoided by Lessor, if any,
which net amount shall be discounted at the
discount rate of the Federal Reserve Bank of San
Francisco as of the date of award plus one (1%)
percent; and

(d)     Any other amount necessary to compensate Lessor
for all detriment proximately caused by Lessee's
failure to perform its obligations under this
lease or which in the ordinary course of things
would be likely to result therefrom. Without
limiting the generality of the foregoing, the
following shall be deemed to be expenses and
damages proximately caused by Lessee's failure to
perform its obligations:  (i)  All expenses and
costs including attorney's fees paid, assumed or

42.

incurred by Lessor in recovering possession
of the Leased Premises;  (ii) placing the
Leased Premises in good order and condition
or preparing, altering or repairing the same
for reletting;  (iii) all other expenses,
commissions and charges, including attorney's
fees and brokerage, paid, assumed or incurred
by Lessor in connection with reletting the
Leased Premises.

13.04  Effect of Mitigation.  Any and all efforts (of
any nature or description) by Lessor to mitigate damages
caused by Lessee's breach of this lease shall not be construed
to constitute a waiver of Lessor's right to recover damages
from Lessee pursuant to this Article XIII.

13.05.  Effect on Indemnification.  Nothing in this Article
XIII shall be construed to affect the right of Lessor to in-
demnification from Lessee pursuant to the provisions of this
lease or as may be implied in law.

13.06.  If no Termination.  Notwithstanding any other
provision of this Article XIII or of this lease, if Lessee has
breached this lease and abandoned the Leased Premises, and for
so long as Lessor does not elect by written notification to
Lessee to terminate Lessee's right to possession, Lessor shall

43.

have the right to enforce any and every other right and remedy available to Lessor pursuant to the provisions of this lease or as may otherwise be provided by law or in equity, as each installment or payment thereof becomes due and payable pursuant to the provisions of this lease.

13.07.  No Termination.  The following (which are stated by way of specification only and not by way of limitation) shall be deemed not to constitute a termination of Lessee's right to possession:

> (a)  Any act or action undertaken by Lessor, directly or indirectly, for the purpose of maintenance or preservation of the leased premises.  The foregoing includes, without limitation, the securing of the Leased Premises, after abandonment by Lessee, by way of guards, locks, and the like.

> (b)  Any and all efforts, directly or indirectly, by Lessor to re-let the Leased Premises.  The foregoing includes, without limitation, brokerage listings of the Leased Premises, the giving of keys to brokers and prospective lessees for the purpose of making a physical examination of the Leased Premises, and other like conduct and actions by or on behalf of Lessor.

(c)     The entry upon the Leased Premises by or on
        behalf of Lessor for the purpose of posting
        notices of non-responsibility and other like
        notices.

(d)     The appointment of a receiver upon the initiative
        of Lessor to protect the Lessor's interest under
        this lease.

(e)     The filing and prosecution of an action by or on
        behalf of Lessor pursuant to the provisions of
        Chapter 4, Title 3, Part 3 of the Code of Civil
        Procedure of the State of California (or other
        like provision of law hereafter enacted), or the
        obtaining of a judgment pursuant to said proceed-
        ings, unless and until physical possession of the
        Leased Premises has been restored to Lessor
        pursuant to such proceeding; provided, however, if
        Lessee shall have obtained relief pursuant to
        Section 1179 of the Code of Civil Procedure of the
        State of California, the Lessee's right to posses-
        sion shall be deemed not to have been terminated.

(f)     Any entry by or on behalf of Lessor upon the Leased
        Premises, unless and until Lessor theretofore has
        given or thereafter gives Lessee notice of Lessor's

45.

election to terminate Lessee's right to
possession or Lessor's election to terminate
this lease.

(g)  The application for and/or the obtaining of
equitable relief where such relief is appropri-
ate in the circumstances.

(h)  The placing of a keeper or other custodian in
the Leased Premises by or on behalf of Lessor
pursuant to a writ of attachment, a writ of
execution, or other like order of a court of
competent jurisdiction.

(i)  The filing and prosecution of an action by or
on behalf of Lessor for the collection of rent
and other sums owing to Lessor, or the levying
of a writ of execution to satisfy a judgment
obtained in any such action upon the assets of
Lessee, including the Leased Premises and the
contents thereon.

(j)  Collection of rents from any sub-lessee, licensee
or other occupant of the Leased Premises.

13.08.  Equitable Relief.  Nothing in this Article
XIII shall affect the right of Lessor to apply to any court

of competent jurisdiction and obtain equitable relief en-
joining and restricting Lessee from violating any of the
covenants, conditions and other provisions of this lease
on the part of Lessee to be kept, observed and performed,
whether by way of mandatory injunction or otherwise. The
foregoing reference to this lease shall be deemed to mean
and include the provisions of any covenants, conditions,
restrictions, easements, operating agreements and the like,
connected with or affecting the Leased Premises or its use
or possession by Lessee.

13.09.  Additional Remedies.  The remedies of Lessor,
as provided in this Article, are in addition to but not
exclusive of any other remedy of Lessor herein given or which
may be permitted by law.  Any entry by Lessor as provided for
in this Article or by law shall be allowed by Lessee without
hindrance and Lessor shall not be liable in damages or guilty
of trespass because of any such entry.

13.10.  Insolvency.  The events described in this
Section 13.10 shall be deemed to constitute an act of insolvency
committed or suffered to be committed by Lessee pursuant to
Section 13.01.  If at any time a petition to have Lessee
adjudicated a bankrupt, or a petition for reorganization or
arrangement under any of the laws of the United States relating
to bankruptcy be filed by Lessee or be filed against Lessee

and not be dismissed within sixty (60) days from the date of
such filing, or if the assets of Lessee or the business
conducted by Lessee on the premises be assumed by any trustee
or other person pursuant to any judicial proceeding or if
Lessee becomes insolvent or fails in business or makes an
assignment for the benefit of creditors, the occurrence of any
such contingency shall be deemed to constitute and shall be
construed as a breach of this lease by Lessee.  Lessor may, at
Lessor's option, terminate this lease in the event of the
occurrence of any of the events above described by giving not
less than three (3) days written notice to Lessee, any other
provision of this lease to the contrary notwithstanding, and
this lease shall not be treated as an asset of Lessee's estate.
Lessor shall be entitled, upon such re-entry, notwithstanding
any other provisions of this lease, to exercise such rights
and remedies and to recover from Lessee damages as provided herein.

13.11.  "Date of Award" - Defined.  The phrase "date of
award" as used in Section 13.03 shall mean that date upon which
a court exercising jurisdiction in the matter renders judgment
awarding the sums described in said Section 13.03.  Provided, how-
ever, if after the date of this lease the Court of Appeals or the
Supreme Court of the State of California by judicial decision in
one or more collateral proceedings determines that the phrase
"time of award" as used in Section 1951.2 of the Civil Code of
the State of California means the date of entry of judgment or

the date of entry of final judgment, as the case may be,
such interpretation shall be binding upon the parties with
respect to the phrase "date of award" as used in this lease.

13.12.  Outside Litigation.  If Lessor is without
fault on its part made a party to any litigation commenced
against Lessee, and if Lessee shall not provide Lessor with
counsel satisfactory to Lessor, Lessee shall pay all costs
and attorney's fees incurred or paid by Lessee in connection
with such litigation.  Further, in connection with any such
litigation, Lessee shall indemnify and save Lessor harmless
from all liability, cost and expense including, without limita-
tion, any judgment which may be rendered against Lessor in said
litigation.

## ARTICLE XIV.

### ASSIGNMENT AND SUBLETTING

14.01.  Lessee may sublet the Leased Premises or
part thereof, and may assign its interest under this lease,
provided that each sublease shall expressly be made subject
to the provisions of this lease.  No assignment or sublease
made as permitted by this Section shall affect or reduce any
obligations of the named Lessee or rights of Lessor hereunder,
and all obligations of the named Lessee hereunder shall
continue in full force and effect as the obligations of a
principal and not of a guarantor or surety, to the same extent

49.

as though no assignment or subletting had been made.
Neither this lease nor the term hereby demised shall
be mortgaged by Lessee, nor shall Lessee mortgage or
pledge the interest of Lessee in and to any sublease
of the Leased Premises or the rentals payable thereunder.
Any such mortgage or pledge, and any such sublease or
assignment, made otherwise than as permitted by this
Section shall be void.

ARTICLE XV.

MISCELLANEOUS PROVISIONS

15.01. Estoppel Certificates. Either Lessor
or Lessee will, from time to time upon not less than ten
(10) days' prior written request by the other party to
this lease, execute, acknowledge and deliver to such other
party a statement, executed by an officer of the party
making the statement and currently dated, certifying that
this lease is unmodified and in full force and effect
(or, if there have been modifications, that this lease is
in full force and effect as modified, and setting forth
such modifications) and the dates to which the rent and
other sums payable hereunder have been paid, and either
stating that to the knowledge of the signer of such cer-

50.

tificate no default exists in the performance of any covenant,
agreement or condition contained in this lease or specifying
each default of which the signer may have knowledge, it
being intended that any such statement delivered pursuant
to this Section may be relied upon by any mortgagee or by
any prospective purchaser of the Leased Premises or any
assignee of such mortgagee.

15.02.   No Merger.   There shall be no merger
of this lease or of the leasehold estate hereby created
with the fee estate in the Leased Premises or any part
thereof by reason of the fact that the same person may
acquire or hold, directly or indirectly, all or part of
such fee estate and this lease or the leasehold estate
hereby created or any interest in this lease, and this
lease shall not be terminated for any cause except as
expressly provided in this lease.

15.03.   Surrender.   Upon the expiration or
earlier termination of this lease, Lessee shall surrender
the Leased Premises to Lessor in the same condition in
which the Leased Premises was originally received from
Lessor except as repaired, rebuilt, restored, altered or
added to, as permitted by any provision of this lease,
and except for ordinary wear and tear.   Lessee shall remove

51.

from the Leased Premises on or prior to such expiration or earlier termination all property situated thereon which is not owned by Lessor, and at its cost and expense shall repair any damage caused by such removal.  Property not so removed shall become the property of Lessor, which may thereafter cause such property to be removed from the Leased Premises and disposed of, but the cost of any such removal and disposition as well as the cost of repairing any damage caused by such removal shall be borne by Lessee.

15.04.   Binding Effect.   This lease may not be changed, modified or discharged except by a writing signed by Lessor and Lessee.  All covenants, conditions and obligations contained in this lease shall be binding upon and inure to the benefit of the respective successors and assigns of Lessor and Lessee to the same extent as if each successor and assign were named as a party to this lease.

15.05.   Headings.   The headings contained in this lease have been inserted for convenience only and shall not have the effect of modifying, amending or changing the express terms and provisions of this lease.

15.06.   Successors and Assigns.   The covenants and conditions herein contained shall, subject to the pro-

52.

visions of Section 14.01 of this lease, apply to and bind the heirs, successors, executors, administrators and assigns of all the parties hereto; and all of the parties hereto shall be jointly and severally liable hereunder.

15.07. _Notices._   All communications, notices, and demands of any kind which either party may be required or desire to make or serve upon the other party shall be delivered or made in writing and sent by certified or registered mail, return receipt requested, to the following addresses:

| | |
|---|---|
| To Lessor: | Thriftvale Associates |
| | c/o Larwin Properties Corporation |
| | Attention: President |
| | 9100 Wilshire Boulevard |
| | Beverly Hills, California 90212 |
| | |
| To Lessee: | Thrifty Drug Stores Co., Inc. |
| | Worldway  P. O. Box 92333 |
| | Los Angeles, California  90009 |
| | Attention: President |

Either party may hereafter, and from time to time, designate by notice as herein provided such other address or such other person to whom rental payments, communications, notices

and demands shall be made or served upon.

15.08.    Law to Apply.    This lease is governed
by the law of the State in which the Leased Premises are
located and any question arising hereunder shall be construed
or determined according to such law.

15.09.    Time Is of the Essence.    Time is of the
essence of this lease.

15.10.    Lessor Defined.    The term "Lessor" as
used in this lease, so far as covenants and obligations on
the part of Lessor are concerned, shall be limited to mean
and include only the owner or owners at the time in question
of the Leased Premises, and in the event of any transfer
or transfers of the title to the Leased Premises, whether
said transfer be voluntary or not, the Lessor herein named
(and in case of subsequent transfers or conveyances, the
then grantor) shall automatically be freed and relieved from
and after the date of such transfer or conveyance of all
liability with respect to performance of any covenants or
obligations on the part of Lessor contained in this lease
thereafter to be performed; provided, however, that any amount
then due and payable to Lessee by Lessor, or the then grantor,
under any provisions of this lease shall be paid to Lessee,

it being intended hereby that the covenants and obligations
contained in this lease on the part of Lessor shall be bind-
ing on Lessor, its successors and assigns, only during and
in respect to their respective periods of ownership of the
fee interest of the Leased Premises.

15.11.   No Partnership.   Nothing contained in
this lease shall be deemed or construed by the parties hereto,
or by any third person, to create the relationship of prin-
cipal and agent, or of partnership, or of joint venture, or
of any association between Lessor and Lessee, and neither the
method of computation of rent nor any provision contained in
this lease, nor any acts of the parties hereto, shall be
deemed to create any relationship between Lessor and Lessee
other than the relationship of Lessor and Lessee.

15.12.   No Waiver of Default.   No waiver of any
default of Lessee hereunder by Lessor shall be implied from
any omission by Lessor to take any action on account of such
default, if such default persists or is repeated, and no
express waiver shall affect any default other than the de-
fault specified in the express waiver, and that only for
the time and to the extent therein stated.   The acceptance
by Lessor of rent with knowledge of the breach of any of the
covenants of this lease by Lessee shall not be deemed a

55.

waiver of any such breach, other than the failure of Lessee
to pay the particular term or condition of this lease shall
not be construed as a waiver of any subsequent breach of the
same covenant, term or condition. The consent or approval
by Lessor to or of any act by Lessee requiring Lessor's
consent or approval shall not be deemed to waive or render
unnecessary Lessor's consent or approval to or of any sub-
sequent similar acts of Lessee.

15.13.   Performance for Account of Lessee.
If Lessee shall default in the performance of any covenant
on its part to be performed by virtue of any provisions of
this lease, Lessor may, after any notice and the expiration
of any period with respect thereto, as required pursuant
to the applicable provisions of this lease, perform the same
for the account of Lessee. If Lessor, at any time, is com-
pelled to pay or elects to pay any sum of money or do any
acts which would require the payment of any sum of money
by reason of failure of Lessee to comply with any provsions
of this lease, after any notice and the expiration of any
period with respect thereto, as required pursuant to the
applicable provisions of this lease, or if Lessor incurs
any expense by reason of any default of Lessee hereunder,
including, by way of illustration only, the failure to pay
its rent upon the date due, and including any reasonable

56.

attorney's fees incurred in connection therewith and in
instituting, prosecuting or defending any action or proceed-
ing instituted by reason of or on account of any such default,
the sum or sums so incurred or paid by Lessor, with costs and
damages and interest thereon at the rate of ten (10%) percent
per annum, shall be due and payable by Lessee to Lessor
immediately upon the incurring of such expense or the payment
of such sum.

15.14.  <u>Acceptance of Premises</u>.  Lessee acknowledges
that the Leased Premises are in good condition and repair as
of the date hereof.

15.15.  <u>No Prepayment</u>.  Lessor shall have the right,
at its option, to refuse to accept the monthly rental pay-
ment prior to thirty (30) days before the first day of the
calendar month for which said payment is being made, but such
refusal shall be without prejudice to Lessor's right to receive
said rental payment upon the first day of the applicable
calendar month and the Lessee's duty to pay same on said date.

15. 16.  <u>Rent Payments</u>.  Rental payments or the pay-
ments of any other sum of money by Lessee to Lessor shall

57.

be deemed not to have been duly made until and unless payment
in full in lawful money of the United States, without offset
or deduction, is received by Lessor on or before the due date
specified in this lease for such payment.  Lessor may, in
any event, immediately accept such payment made by Lessee,
or for or on behalf of Lessee, or for rent, notwithstanding
any notation, endorsement or condition contained in such
payment or voucher, letter, memorandum, or statements attached
to or accompanying such payment, and notwithstanding the name
of the payor of any such check or voucher, or the source of
such rental payment; and by so doing shall not in any manner
waive or impair Lessor's right to later assert a default on
the part of Lessee, or to object to such payment of rent and
require any proper correction in accordance with the terms
of this lease.

15.17.   Lessee's Duty on Termination.   If this
lease and the leasehold estate created hereby be terminated
pursuant to the provisions hereof or as may otherwise be
provided by law, Lessee shall execute, acknowledge and deliver
to Lessor or join with Lessor in the execution, acknowledg-
ment and delivery of an instrument (to be recorded at the
option of Lessor) showing such termination and otherwise
quitclaiming Lessee's interest therein.

58.

15.18.   Hypothecation by Lessor.   In the event
Lessor hypothecates, transfers or assigns its interest in
this lease and the leasehold estate created hereby or the
rental and other money payments due hereunder from Lessee to
Lessor, Lessee shall make its rental and other money pay-
ments due hereunder in accordance with the provisions of such
hypothecation, transfer or assignment, from time to time.
Payment of rental and other moneys due to Lessor in accordance
with the provisions of said hypothecation, transfer or as-
signment shall be deemed payment to Lessor pursuant to the
provisions of this Lease.

15.19.   Exercise of Assignee's Rights.   In the
event Lessee or Lessor assign their respective interest in
this lease to more than one person, firm or entity, the
other party shall not be required to respond to any notice
or demand from any such assignee unless the persons exer-
cising 100% of such assigned interest jointly serve such notice
or make such demand.

15.20.   Intervening Ground Lease.   Lessor shall
have the right and option of creating a ground lease for the
Leased Premises.   In such case, this Lease shall thereupon
be deemed to become a sublease to the said ground lease which
ground lease will be subject to the provisions of this lease.

59.

Provided, however, so long as Lessee is not in default here-
under, Lessee's enjoyment of the possession of the Leased
Premises shall not be disturbed.   In the event of the making
of such ground lease and the subsequent termination thereof
for any cause, said termination of said ground lease shall
not act as a termination of this lease; but, in such case,
Lessee and the owner of the fee of the Leased Premises shall
attorn to each other as lessor and lessee under the pro-
visions of this Lease.

   15.21.   Lessor's Lender.   Any of the rights,
powers, privileges and perquisites reserved or granted to
Lessor under this Lease may, upon notice hereafter given by
Lessor, be exercised by any lender, from time to time, hold-
ing a first trust deed or mortgage lien upon the Leased Pre-
mises or Lessor's interest in this lease.   At the request of
any such lender of Lessor, Lessee shall cause such lender
to be named as an additional insured under any insurance
required hereunder to be provided by Lessee.   At the request
of any lender of Lessor, Lessee shall provide any such lender
with a duplicate copy of any notice or demand made or served
upon Lessor.   At the request of any such lender of Lessor, Les-
see shall execute and deliver an instrument for the benefit
of any such lender, from time to time, agreeing in form
satisfactory to any such lender that it will not declare

60.

Lessor to be in default under this lease without first
giving any such lender ninety (90) days written notice of
such claimed default on the part of Lessor and giving any
such lender the right to correct any such default within
said ninety (90) day period (and such additional time as
may be reasonably required, if said default cannot be cured
within said 90 day period).

## ARTICLE XVI.

## PARKING, COMMON AREAS, DEED RESTRICTIONS

16.01.   Lessee's Rights.   Is is understood and
agreed that Lessee, its invitees and patrons, in common
with the tenants and owners of other parcels in any shop-
ping center which may be depicted on the plot plan attached
hereto as Exhibit B, and their invitees and patrons, shall
have the same rights, interest, easements and agreements
now or hereafter possessed and enjoyed by Lessor in and to
the use of the parking and common areas, if any, shown on
the aforementioned plot plan, such use and operation being
more particularly set forth in certain of the documents
listed in Exhibit C annexed hereto and made a part hereof.
Lessor agrees that it shall not agree to or approve any
amendment, modification or cancellation of said documents
without the prior written consent of Lessee.   Subject to

the provisions of said documents, Lessor agrees that Lessee
shall have the same rights as Lessor to examine the records
of expenses in connection with the maintenance of the park-
ing and common areas, as provided in said documents whenever
Lessee in its discretion so desires.

16.02.   Maintenance and Operations.   It is further
understood and agreed that Lessee shall pay throughout the
term of this lease (and shall indemnify and hold harmless Lessor
from any obligation to pay the same) all Lessor's share of the
costs and expenses of the maintenance and operation of any such
parking areas and common areas, at the times, in the amounts and
in the manner set forth in said documents.   If the Leased Prem-
ises are located in a shopping center, any rights, agreements,
easements and other interests, if any, in the nature of those
described above which were acquired by Lessor upon its
acquisition of the Leased Premises or which are appurtenant
thereto and shall be deemed without further action on the part
of either Lessor or Lessee to be a part of the Leased Premises
and subject to all the terms, covenants and conditions hereof.
Lessee shall perform and discharge all of Lessor's duties
thereunder, and shall indemnify and save Lessor harmless
from all liability, cost and expense (including attorney's
fees) threatened, suffered or incurred by reason of any violation
or purported violation or failure to perform any duty imposed
upon the owner of the Leased Premises.

16.03.   Delegation of Rights.   In the event the
approval or consent of Lessor is required or permitted under
the terms and conditions of any of the documents mentioned in
Exhibit C during the term of this lease, Lessor hereby dele-
gates to Lessee the unconditional right to exercise such
consent or approval with respect to the following matters:

(a)   The exterior appearance and coloring of
buildings in any shopping center, in which
the Leased Premises are located, specifi-
cally including, but not limited to, the
elevations, height, canopy design, and
dimensions and location of building
projections.

(b)   The use of some portion of any parking area
in said shopping center on a temporary
basis for promotional and publicity activities.

(c)   The erection, placement, maintenance and
alteration of sign pylons, including the
location, size, height, design, and other
dimensions of pylon signs.

(d)   Appointment and termination of the person
exercising the duties of common area
maintenance and operation, and the transfer
or assumption thereof.

63.

  (e) Statements of the costs and expenses
of operation and maintenance of the
common areas, and Lessor hereby
assigns to Lessee its right to receive
such statements.

  (f) Maintenance by other tenants of public
liability, property damage, fire and
casualty, and other insurance coverage
relating to other properties of any
such shopping center.

  (g) Giving of notices regarding breaches
of any of the provisions of said docu-
ments, provided a copy of any such
notice is supplied to Lessor.

  16.04. Attorney's Fees. In the event any action
is commenced by Lessor or Lessee against the other to enforce
any of the provisions of this lease, in addition to any other
relief to which the prevailing party may be entitled, it
shall also recover therein such attorney's fees as the court
may award to it.

64.

IN WITNESS WHEREOF, Lessor and Lessee have executed
this lease as of the day and year first above written.

THRIFTVALE ASSOCIATES,
a Partnership

By: LARWIN PROPERTIES CORPORATION

By: _____

By: _____


By: DETERO CORPORATION

By: _____

By: _____
                                    Lessor


THRIFTY DRUG STORES CO. INC.

By: _____
              President

By: _____
              Secretary      Lessee


65.

Land situated in the City of Half Moon Bay, County of San Mateo, State of California, described as follows:

PARCEL ONE:

Parcel 5 as shown on that certain Parcel Map entitled, "PARCEL MAP OF A PORTION OF THE RANCHO CORRAL DE TIERRA (VASQUEZ) AS SHOWN ON R/S, VOL. 7 M., PAGE 19, SAN MATEO COUNTY, LYING IN THE CITY OF HALF MOON BAY, SAN MATEO COUNTY, CALIFORNIA", filed in the office of the Recorder of the County of San Mateo, State of California, on October 14, 1970 in Book 11 of Parcel Maps at Page 14.

PARCEL TWO:

All easements, rights and privileges appurtenant to said Fee Parcel granted in that certain instrument entitled Declaration of Establishment of Protective Covenants, Conditions and Restrictions and Grants of Easements executed by both Alpha Beta/SDC, Half Moon Bay, a joint venture composed of SDC Inc., a California corporation and Alpha Beta Acme Markets, Inc., a Delaware corporation, and Thrifty Realty Company, a California corporation, dated March 24, 1971 recorded March 29, 1971, as instrument no. 93414-AD, in Vol. 5916, at page 666 et seq., Official Records, San Mateo County, California.

EXHIBIT "A"



site resumé

half moon bay
coast hy & san mateo rd

sgpa inc
san diego

sdc inc
newport beach

Half Moon Bay Shopping Center
Alpha Beta Market No. 524
Coast Highway & Main Street, Half Moon Bay, Calif.
ALPHA BETA ACME, INC. & S.D.C. INC.

Scheeli Geritz Paul & Allard Inc
Planning & Architecture

EXHIBIT B

VOL 5916 PAGE 713

SCHEDULE C

All matters of record affecting the Leased Premises
at the date hereof.

| Period | Monthly Payment | Amortization | Interest | Unpaid Bal. | Option Purchase Price |
|---|---|---|---|---|---|
| 1 | 741.55 | 741.55 | 0. | 99258.45 | 106702.83 |
| 2 | 741.55 | 38.47 | 703.08 | 99219.98 | 106661.48 |
| 3 | 741.55 | 38.74 | 702.81 | 99181.24 | 106619.83 |
| 4 | 741.55 | 39.02 | 702.53 | 99142.22 | 106577.89 |
| 5 | 741.55 | 39.29 | 702.26 | 99102.93 | 106535.65 |
| 6 | 741.55 | 39.57 | 701.98 | 99063.36 | 106493.11 |
| 7 | 741.55 | 39.85 | 701.70 | 99023.51 | 106450.27 |
| 8 | 741.55 | 40.13 | 701.42 | 98983.37 | 106407.12 |
| 9 | 741.55 | 40.42 | 701.13 | 98942.95 | 106363.68 |
| 10 | 741.55 | 40.70 | 700.85 | 98902.25 | 106319.92 |
| 11 | 741.55 | 40.99 | 700.56 | 98861.26 | 106275.85 |
| 12 | 741.55 | 41.28 | 700.27 | 98819.97 | 106231.47 |
| 13 | 741.55 | 41.58 | 699.97 | 98778.40 | 106186.78 |
| 14 | 741.55 | 41.87 | 699.68 | 98736.53 | 106141.77 |
| 15 | 741.55 | 42.17 | 699.38 | 98694.36 | 106096.44 |
| 16 | 741.55 | 42.46 | 699.09 | 98651.90 | 106050.79 |
| 17 | 741.55 | 42.77 | 698.78 | 98609.13 | 106004.82 |
| 18 | 741.55 | 43.07 | 698.48 | 98566.06 | 105958.52 |
| 19 | 741.55 | 43.37 | 698.18 | 98522.69 | 105911.89 |
| 20 | 741.55 | 43.68 | 697.87 | 98479.01 | 105864.94 |
| 21 | 741.55 | 43.99 | 697.56 | 98435.02 | 105817.65 |
| 22 | 741.55 | 44.30 | 697.25 | 98390.72 | 105770.02 |
| 23 | 741.55 | 44.62 | 696.93 | 98346.10 | 105722.06 |
| 24 | 741.55 | 44.93 | 696.62 | 98301.17 | 105673.76 |
| 25 | 741.55 | 45.25 | 696.30 | 98255.92 | 105625.11 |
| 26 | 741.55 | 45.57 | 695.98 | 98210.35 | 105576.13 |
| 27 | 741.55 | 45.89 | 695.66 | 98164.46 | 105526.79 |
| 28 | 741.55 | 46.22 | 695.33 | 98118.24 | 105477.11 |
| 29 | 741.55 | 46.55 | 695.00 | 98071.69 | 105427.07 |
| 30 | 741.55 | 46.88 | 694.67 | 98024.82 | 105376.68 |
| 31 | 741.55 | 47.21 | 694.34 | 97977.61 | 105325.93 |
| 32 | 741.55 | 47.54 | 694.01 | 97930.07 | 105274.82 |
| 33 | 741.55 | 47.88 | 693.67 | 97882.19 | 105223.35 |
| 34 | 741.55 | 48.22 | 693.33 | 97833.97 | 105171.52 |
| 35 | 741.55 | 48.56 | 692.99 | 97785.41 | 105119.32 |
| 36 | 741.55 | 48.90 | 692.65 | 97736.51 | 105066.74 |
| 37 | 741.55 | 49.25 | 692.30 | 97687.26 | 105013.80 |
| 38 | 741.55 | 49.60 | 691.95 | 97637.66 | 104960.48 |
| 39 | 741.55 | 49.95 | 691.60 | 97587.71 | 104906.79 |
| 40 | 741.55 | 50.30 | 691.25 | 97537.40 | 104852.71 |
| 41 | 741.55 | 50.66 | 690.89 | 97486.74 | 104798.25 |
| 42 | 741.55 | 51.02 | 690.53 | 97435.72 | 104743.40 |
| 43 | 741.55 | 51.38 | 690.17 | 97384.34 | 104688.17 |
| 44 | 741.55 | 51.74 | 689.81 | 97332.60 | 104632.55 |
| 45 | 741.55 | 52.11 | 689.44 | 97280.49 | 104576.53 |
| 46 | 741.55 | 52.48 | 689.07 | 97228.01 | 104520.11 |
| 47 | 741.55 | 52.85 | 688.70 | 97175.16 | 104463.30 |
| 48 | 741.55 | 53.23 | 688.32 | 97121.93 | 104406.08 |
| 49 | 741.55 | 53.60 | 687.95 | 97068.33 | 104348.46 |
| 50 | 741.55 | 53.98 | 687.57 | 97014.35 | 104290.42 |
| 51 | 741.55 | 54.37 | 687.18 | 96959.98 | 104231.98 |
| 52 | 741.55 | 54.75 | 686.80 | 96905.23 | 104173.13 |
| 53 | 741.55 | 55.14 | 686.41 | 96850.10 | 104113.85 |
| 54 | 741.55 | 55.53 | 686.02 | 96794.57 | 104054.16 |
| 55 | 741.55 | 55.92 | 685.63 | 96738.65 | 103994.04 |

## HALF MOON BAY

PURCHASE PRICE SHALL BE DETERMINED BY MULTIPLYING THE
OPTION PURCHASE PRICE SET FORTH ABOVE AS OF THE EFFECTIVE
DATE OF TERMINATION BY 4.19.

EXHIBIT D

| | | | | | |
|---|---|---|---|---|---|
| 55 | 741.55 | 56.32 | 685.23 | 96,082.53 | 103935.58 |
| 57 | 741.55 | 56.72 | 684.83 | 96025.61 | 103872.55 |
| 58 | 741.55 | 57.12 | 684.43 | 96568.49 | 103811.13 |
| 59 | 741.55 | 57.52 | 684.03 | 96510.97 | 103749.29 |
| 60 | 741.55 | 57.93 | 683.52 | 96453.04 | 103687.02 |
| 61 | 741.55 | 58.34 | 683.21 | 96394.70 | 103624.30 |
| 62 | 741.55 | 58.75 | 682.80 | 96335.94 | 103561.14 |
| 63 | 741.55 | 59.17 | 682.38 | 96276.77 | 103497.53 |
| 64 | 741.55 | 59.59 | 681.96 | 96217.18 | 103433.47 |
| 65 | 741.55 | 60.01 | 681.54 | 96157.17 | 103368.96 |
| 66 | 741.55 | 60.44 | 681.11 | 96096.74 | 103303.99 |
| 67 | 741.55 | 60.87 | 680.69 | 96035.87 | 103238.56 |
| 68 | 741.55 | 61.30 | 680.25 | 95974.57 | 103172.67 |
| 69 | 741.55 | 61.73 | 679.82 | 95912.84 | 103106.31 |
| 70 | 741.55 | 62.17 | 679.38 | 95850.68 | 103039.48 |
| 71 | 741.55 | 62.61 | 678.94 | 95788.07 | 102972.17 |
| 72 | 741.55 | 63.05 | 678.50 | 95725.02 | 102904.40 |
| 73 | 741.55 | 63.50 | 678.05 | 95661.52 | 102836.13 |
| 74 | 741.55 | 63.95 | 677.60 | 95597.57 | 102767.39 |
| 75 | 741.55 | 64.40 | 677.15 | 95533.17 | 102698.16 |
| 76 | 741.55 | 64.86 | 676.69 | 95468.32 | 102628.44 |
| 77 | 741.55 | 65.32 | 676.23 | 95403.00 | 102558.23 |
| 78 | 741.55 | 65.78 | 675.77 | 95337.22 | 102487.51 |
| 79 | 741.55 | 66.25 | 675.31 | 95270.98 | 102416.30 |
| 80 | 741.55 | 66.71 | 674.84 | 95204.26 | 102344.58 |
| 81 | 741.55 | 67.19 | 674.36 | 95137.08 | 102272.36 |
| 82 | 741.55 | 67.66 | 673.89 | 95069.41 | 102199.62 |
| 83 | 741.55 | 68.14 | 673.41 | 95001.27 | 102126.37 |
| 84 | 741.55 | 68.62 | 672.93 | 94932.65 | 102052.60 |
| 85 | 741.55 | 69.11 | 672.44 | 94863.54 | 101978.30 |
| 86 | 741.55 | 69.60 | 671.95 | 94793.94 | 101903.48 |
| 87 | 741.55 | 70.09 | 671.46 | 94723.85 | 101828.13 |
| 88 | 741.55 | 70.59 | 670.96 | 94653.26 | 101752.25 |
| 89 | 741.55 | 71.09 | 670.46 | 94582.17 | 101675.83 |
| 90 | 741.55 | 71.59 | 669.96 | 94510.57 | 101598.87 |
| 91 | 741.55 | 72.10 | 669.45 | 94438.47 | 101521.36 |
| 92 | 741.55 | 72.61 | 668.94 | 94365.86 | 101443.30 |
| 93 | 741.55 | 73.12 | 668.43 | 94292.73 | 101364.68 |
| 94 | 741.55 | 73.64 | 667.91 | 94219.09 | 101285.53 |
| 95 | 741.55 | 74.17 | 667.39 | 94144.93 | 101205.80 |
| 96 | 741.55 | 74.69 | 666.86 | 94070.24 | 101125.51 |
| 97 | 741.55 | 75.22 | 666.33 | 93995.02 | 101044.65 |
| 98 | 741.55 | 75.75 | 665.80 | 93919.27 | 100963.21 |
| 99 | 741.55 | 76.29 | 665.26 | 93842.98 | 100881.20 |
| 100 | 741.55 | 76.83 | 664.72 | 93766.15 | 100798.61 |
| 101 | 741.55 | 77.37 | 664.18 | 93689.78 | 100715.43 |
| 102 | 741.55 | 77.92 | 663.63 | 93610.86 | 100631.67 |
| 103 | 741.55 | 78.47 | 663.08 | 93532.38 | 100547.31 |
| 104 | 741.55 | 79.03 | 662.52 | 93453.35 | 100462.36 |
| 105 | 741.55 | 79.59 | 661.96 | 93373.77 | 100376.80 |
| 106 | 741.55 | 80.15 | 661.40 | 93293.61 | 100290.63 |
| 107 | 741.55 | 80.72 | 660.83 | 93212.89 | 100203.86 |
| 108 | 741.55 | 81.29 | 660.26 | 93131.60 | 100116.47 |
| 109 | 741.55 | 81.87 | 659.68 | 93049.73 | 100028.46 |
| 110 | 741.55 | 82.45 | 659.10 | 92967.29 | 99939.83 |
| 111 | 741.55 | 83.03 | 658.52 | 92884.25 | 99850.57 |

| 112 | 741.55 | 85.62 | 657.34 | 92710.42 | 99760.69 |
|-----|--------|-------|--------|----------|----------|
| 113 | 741.55 | 84.21 | 656.34 | 92631.61 | 99670.15 |
| 114 | 741.55 | 84.81 | 656.74 | 92546.20 | 99578.98 |
| 115 | 741.55 | 85.41 | 656.14 | 92546.20 | 99487.17 |
| 116 | 741.55 | 86.01 | 655.54 | 92460.19 | 99394.70 |
| 117 | 741.55 | 86.62 | 654.93 | 92373.57 | 99301.58 |
| 118 | 741.55 | 87.24 | 654.31 | 92286.33 | 99207.80 |
| 119 | 741.55 | 87.86 | 653.69 | 92198.47 | 99113.36 |
| 120 | 741.55 | 88.48 | 653.07 | 92110.01 | 99018.25 |
| 121 | 741.55 | 89.10 | 652.45 | 92020.89 | 98922.46 |
| 122 | 741.55 | 89.74 | 651.81 | 91931.16 | 98825.91 |
| 123 | 741.55 | 90.37 | 651.18 | 91840.78 | 98728.84 |
| 124 | 741.55 | 91.01 | 650.54 | 91749.77 | 98631.01 |
| 125 | 741.55 | 91.66 | 649.89 | 91658.12 | 98532.48 |
| 126 | 741.55 | 92.30 | 649.24 | 91565.81 | 98433.25 |
| 127 | 741.55 | 92.96 | 648.59 | 91472.85 | 98333.32 |
| 128 | 741.55 | 93.62 | 647.93 | 91379.24 | 98232.68 |
| 129 | 741.55 | 94.28 | 647.27 | 91284.96 | 98131.33 |
| 130 | 741.55 | 94.95 | 646.60 | 91190.01 | 98029.26 |
| 131 | 741.55 | 95.62 | 645.93 | 91094.39 | 97926.47 |
| 132 | 741.55 | 96.30 | 645.25 | 90998.09 | 97822.95 |
| 133 | 741.55 | 96.98 | 644.57 | 90901.11 | 97718.69 |
| 134 | 741.55 | 97.67 | 643.88 | 90803.44 | 97613.70 |
| 135 | 741.55 | 98.36 | 643.19 | 90705.08 | 97507.96 |
| 136 | 741.55 | 99.06 | 642.49 | 90606.03 | 97401.48 |
| 137 | 741.55 | 99.76 | 641.79 | 90506.27 | 97294.24 |
| 138 | 741.55 | 100.46 | 641.09 | 90405.81 | 97186.24 |
| 139 | 741.55 | 101.18 | 640.37 | 90304.63 | 97077.48 |
| 140 | 741.55 | 101.89 | 639.66 | 90202.74 | 96967.94 |
| 141 | 741.55 | 102.61 | 638.94 | 90100.12 | 96857.63 |
| 142 | 741.55 | 103.34 | 638.21 | 89996.78 | 96746.54 |
| 143 | 741.55 | 104.07 | 637.48 | 89892.71 | 96634.65 |
| 144 | 741.55 | 104.81 | 636.74 | 89787.90 | 96521.99 |
| 145 | 741.55 | 105.55 | 636.00 | 89682.35 | 96408.52 |
| 146 | 741.55 | 106.30 | 635.25 | 89576.05 | 96294.25 |
| 147 | 741.55 | 107.05 | 634.50 | 89468.99 | 96179.17 |
| 148 | 741.55 | 107.81 | 633.74 | 89361.18 | 96063.27 |
| 149 | 741.55 | 108.58 | 632.98 | 89252.61 | 95946.55 |
| 150 | 741.55 | 109.34 | 632.21 | 89143.26 | 95829.01 |
| 151 | 741.55 | 110.12 | 631.43 | 89033.15 | 95710.63 |
| 152 | 741.55 | 110.90 | 630.65 | 88922.25 | 95591.42 |
| 153 | 741.55 | 111.68 | 629.87 | 88810.56 | 95471.35 |
| 154 | 741.55 | 112.48 | 629.07 | 88698.09 | 95350.44 |
| 155 | 741.55 | 113.27 | 628.28 | 88584.82 | 95228.68 |
| 156 | 741.55 | 114.07 | 627.48 | 88470.74 | 95106.05 |
| 157 | 741.55 | 114.88 | 626.67 | 88355.86 | 94982.55 |
| 158 | 741.55 | 115.70 | 625.85 | 88240.16 | 94858.18 |
| 159 | 741.55 | 116.52 | 625.03 | 88123.65 | 94732.92 |
| 160 | 741.55 | 117.34 | 624.21 | 88006.31 | 94605.78 |
| 161 | 741.55 | 118.17 | 623.38 | 87888.13 | 94479.75 |
| 162 | 741.55 | 119.01 | 622.54 | 87769.13 | 94351.81 |
| 163 | 741.55 | 119.85 | 621.70 | 87649.27 | 94222.97 |
| 164 | 741.55 | 120.70 | 620.85 | 87528.57 | 94093.22 |
| 165 | 741.55 | 121.56 | 619.99 | 87407.02 | 93962.54 |
| 166 | 741.55 | 122.42 | 619.13 | 87284.60 | 93830.95 |
| 167 | 741.55 | 123.28 | 618.27 | 87161.32 | 93698.42 |

| | | | | | |
|---|---|---|---|---|---|
| 168 | 741.55 | 123.16 | 616.51 | 87070.16 | 93564.95 |
| 169 | 741.55 | 125.04 | 616.51 | 86912.12 | 93430.53 |
| 170 | 741.55 | 125.92 | 615.63 | 86786.20 | 93295.16 |
| 171 | 741.55 | 126.81 | 614.74 | 86659.38 | 93158.44 |
| 172 | 741.55 | 127.71 | 613.84 | 86531.67 | 93021.55 |
| 173 | 741.55 | 128.62 | 612.93 | 86403.05 | 92883.28 |
| 174 | 741.55 | 129.53 | 612.02 | 86273.53 | 92744.04 |
| 175 | 741.55 | 130.45 | 611.10 | 86143.08 | 92603.81 |
| 176 | 741.55 | 131.37 | 610.18 | 86011.71 | 92462.59 |
| 177 | 741.55 | 132.30 | 609.25 | 85879.41 | 92320.37 |
| 178 | 741.55 | 133.24 | 608.31 | 85746.17 | 92177.13 |
| 179 | 741.55 | 134.18 | 607.37 | 85611.99 | 92032.89 |
| 180 | 741.55 | 135.13 | 606.42 | 85476.86 | 91887.62 |
| 181 | 741.55 | 136.09 | 605.46 | 85340.77 | 91741.33 |
| 182 | 741.55 | 137.05 | 604.50 | 85203.72 | 91594.00 |
| 183 | 741.55 | 138.02 | 603.53 | 85065.69 | 91445.62 |
| 184 | 741.55 | 139.00 | 602.55 | 84926.69 | 91296.19 |
| 185 | 741.55 | 139.99 | 601.56 | 84786.71 | 91145.71 |
| 186 | 741.55 | 140.98 | 600.57 | 84645.73 | 90994.16 |
| 187 | 741.55 | 141.98 | 599.57 | 84503.75 | 90841.53 |
| 188 | 741.55 | 142.98 | 598.57 | 84360.77 | 90687.83 |
| 189 | 741.55 | 143.99 | 597.56 | 84216.78 | 90533.04 |
| 190 | 741.55 | 145.01 | 596.54 | 84071.76 | 90377.14 |
| 191 | 741.55 | 146.04 | 595.51 | 83925.72 | 90220.15 |
| 192 | 741.55 | 147.08 | 594.47 | 83778.64 | 90062.04 |
| 193 | 741.55 | 148.12 | 593.43 | 83630.53 | 89902.82 |
| 194 | 741.55 | 149.17 | 592.38 | 83481.36 | 89742.46 |
| 195 | 741.55 | 150.22 | 591.33 | 83331.13 | 89580.97 |
| 196 | 741.55 | 151.29 | 590.26 | 83179.85 | 89418.33 |
| 197 | 741.55 | 152.36 | 589.19 | 83027.49 | 89254.53 |
| 198 | 741.55 | 153.44 | 588.11 | 82874.05 | 89089.60 |
| 199 | 741.55 | 154.53 | 587.02 | 82719.52 | 88923.49 |
| 200 | 741.55 | 155.62 | 585.93 | 82563.90 | 88756.20 |
| 201 | 741.55 | 156.72 | 584.83 | 82407.18 | 88587.72 |
| 202 | 741.55 | 157.83 | 583.72 | 82249.35 | 88418.05 |
| 203 | 741.55 | 158.95 | 582.60 | 82090.40 | 88247.18 |
| 204 | 741.55 | 160.08 | 581.47 | 81930.32 | 88075.10 |
| 205 | 741.55 | 161.21 | 580.34 | 81769.11 | 87901.80 |
| 206 | 741.55 | 162.35 | 579.20 | 81606.76 | 87727.27 |
| 207 | 741.55 | 163.50 | 578.05 | 81443.26 | 87551.50 |
| 208 | 741.55 | 164.66 | 576.89 | 81278.60 | 87374.49 |
| 209 | 741.55 | 165.83 | 575.72 | 81112.77 | 87196.23 |
| 210 | 741.55 | 167.00 | 574.55 | 80945.77 | 87016.70 |
| 211 | 741.55 | 168.18 | 573.37 | 80777.59 | 86835.91 |
| 212 | 741.55 | 169.37 | 572.17 | 80608.21 | 86653.83 |
| 213 | 741.55 | 170.58 | 570.97 | 80437.64 | 86470.46 |
| 214 | 741.55 | 171.78 | 569.77 | 80265.85 | 86285.79 |
| 215 | 741.55 | 173.00 | 568.55 | 80092.85 | 86099.82 |
| 216 | 741.55 | 174.23 | 567.32 | 79918.63 | 85912.52 |
| 217 | 741.55 | 175.46 | 566.09 | 79743.17 | 87717.48 |
| 218 | 741.55 | 176.70 | 564.85 | 79566.46 | 87523.11 |
| 219 | 741.55 | 177.95 | 563.60 | 79388.51 | 87327.36 |
| 220 | 741.55 | 179.21 | 562.34 | 79209.30 | 87130.22 |
| 221 | 741.55 | 180.48 | 561.07 | 79028.81 | 86931.69 |
| 222 | 741.55 | 181.76 | 559.79 | 78847.05 | 86731.75 |
| 223 | 741.55 | 183.05 | 558.50 | 78664.00 | 86530.40 |

| 224 | 741.55 | 184.35 | 557.20 | 78479.65 | 86327.62 |
| 225 | 741.55 | 185.65 | 555.90 | 78294.00 | 86123.40 |
| 226 | 741.55 | 186.97 | 554.58 | 78107.03 | 85917.74 |
| 227 | 741.55 | 188.29 | 553.26 | 77918.74 | 85710.61 |
| 228 | 741.55 | 189.63 | 551.92 | 77729.11 | 85502.03 |
| 229 | 741.55 | 190.97 | 550.58 | 77538.15 | 85291.96 |
| 230 | 741.55 | 192.32 | 549.23 | 77345.82 | 85080.41 |
| 231 | 741.55 | 193.68 | 547.87 | 77152.14 | 84867.35 |
| 232 | 741.55 | 195.06 | 546.49 | 76957.08 | 84652.79 |
| 233 | 741.55 | 196.44 | 545.11 | 76760.65 | 84436.71 |
| 234 | 741.55 | 197.83 | 543.72 | 76562.82 | 84219.10 |
| 235 | 741.55 | 199.23 | 542.32 | 76363.59 | 83999.95 |
| 236 | 741.55 | 200.64 | 540.91 | 76162.95 | 83779.24 |
| 237 | 741.55 | 202.06 | 539.49 | 75960.89 | 83556.97 |
| 238 | 741.55 | 203.49 | 538.06 | 75757.39 | 83333.13 |
| 239 | 741.55 | 204.94 | 536.61 | 75552.45 | 83107.70 |
| 240 | 741.55 | 206.39 | 535.16 | 75346.07 | 82880.67 |
| 241 | 741.55 | 207.85 | 533.70 | 75138.22 | 82652.04 |
| 242 | 741.55 | 209.32 | 532.23 | 74928.90 | 82421.79 |
| 243 | 741.55 | 210.80 | 530.75 | 74718.09 | 82189.90 |
| 244 | 741.55 | 212.30 | 529.25 | 74505.80 | 81956.38 |
| 245 | 741.55 | 213.80 | 527.75 | 74292.00 | 81721.20 |
| 246 | 741.55 | 215.32 | 526.23 | 74076.68 | 81484.35 |
| 247 | 741.55 | 216.84 | 524.71 | 73859.84 | 81245.82 |
| 248 | 741.55 | 218.38 | 523.17 | 73641.46 | 81005.61 |
| 249 | 741.55 | 219.92 | 521.63 | 73421.54 | 80763.70 |
| 250 | 741.55 | 221.48 | 520.07 | 73200.06 | 80520.07 |
| 251 | 741.55 | 223.05 | 518.50 | 72977.01 | 80274.71 |
| 252 | 741.55 | 224.63 | 516.92 | 72752.38 | 80027.62 |
| 253 | 741.55 | 226.22 | 515.33 | 72526.16 | 79778.78 |
| 254 | 741.55 | 227.82 | 513.73 | 72298.34 | 79528.17 |
| 255 | 741.55 | 229.44 | 512.11 | 72068.90 | 79275.79 |
| 256 | 741.55 | 231.06 | 510.49 | 71837.84 | 79021.62 |
| 257 | 741.55 | 232.70 | 508.85 | 71605.14 | 78765.66 |
| 258 | 741.55 | 234.35 | 507.20 | 71370.79 | 78507.67 |
| 259 | 741.55 | 236.01 | 505.54 | 71134.79 | 78249.27 |
| 260 | 741.55 | 237.68 | 503.87 | 70897.11 | 77986.82 |
| 261 | 741.55 | 239.36 | 502.19 | 70657.75 | 77723.52 |
| 262 | 741.55 | 241.06 | 500.49 | 70416.69 | 77458.36 |
| 263 | 741.55 | 242.76 | 498.78 | 70173.92 | 77191.32 |
| 264 | 741.55 | 244.48 | 497.07 | 69929.44 | 76922.38 |
| 265 | 741.55 | 246.22 | 495.33 | 69683.22 | 76651.55 |
| 266 | 741.55 | 247.96 | 493.59 | 69435.26 | 76378.79 |
| 267 | 741.55 | 249.72 | 491.83 | 69185.55 | 76104.10 |
| 268 | 741.55 | 251.49 | 490.06 | 68934.06 | 75827.47 |
| 269 | 741.55 | 253.27 | 488.28 | 68680.79 | 75548.87 |
| 270 | 741.55 | 255.06 | 486.49 | 68425.73 | 75268.31 |
| 271 | 741.55 | 256.87 | 484.68 | 68168.86 | 74985.75 |
| 272 | 741.55 | 258.69 | 482.86 | 67910.18 | 74701.19 |
| 273 | 741.55 | 260.52 | 481.03 | 67649.65 | 74414.62 |
| 274 | 741.55 | 262.37 | 479.19 | 67387.29 | 74126.02 |
| 275 | 741.55 | 264.22 | 477.33 | 67123.07 | 73835.37 |
| 276 | 741.55 | 266.09 | 475.46 | 66856.97 | 73542.67 |
| 277 | 741.55 | 267.98 | 473.57 | 66588.99 | 73247.89 |
| 278 | 741.55 | 269.83 | 471.67 | 66319.12 | 72951.03 |
| 279 | 741.55 | 271.79 | 469.76 | 66047.33 | 72652.06 |

| | | | | | |
|---|---|---|---|---|---|
| 280 | 741.55 | 273.71 | 467.84 | 65773.61 | 72350.97 |
| 281 | 741.55 | 275.65 | 465.90 | 65497.96 | 72047.75 |
| 282 | 741.55 | 277.61 | 463.94 | 65220.35 | 71742.39 |
| 283 | 741.55 | 279.57 | 461.98 | 64940.78 | 71434.86 |
| 284 | 741.55 | 281.55 | 460.00 | 64659.23 | 71125.15 |
| 285 | 741.55 | 283.55 | 458.00 | 64375.68 | 70813.25 |
| 286 | 741.55 | 285.56 | 455.99 | 64090.12 | 70499.13 |
| 287 | 741.55 | 287.58 | 453.97 | 63802.54 | 70182.80 |
| 288 | 741.55 | 289.62 | 451.93 | 63512.93 | 69864.22 |
| 289 | 741.55 | 291.67 | 449.88 | 63221.26 | 69543.39 |
| 290 | 741.55 | 293.73 | 447.82 | 62927.53 | 69220.28 |
| 291 | 741.55 | 295.81 | 445.74 | 62631.72 | 68894.89 |
| 292 | 741.55 | 297.91 | 443.64 | 62333.81 | 68567.19 |
| 293 | 741.55 | 300.02 | 441.53 | 62033.79 | 68237.17 |
| 294 | 741.55 | 302.14 | 439.41 | 61731.64 | 67904.81 |
| 295 | 741.55 | 304.28 | 437.27 | 61427.36 | 67570.10 |
| 296 | 741.55 | 306.44 | 435.11 | 61120.92 | 67233.01 |
| 297 | 741.55 | 308.61 | 432.94 | 60812.31 | 66893.54 |
| 298 | 741.55 | 310.80 | 430.75 | 60501.51 | 66551.67 |
| 299 | 741.55 | 313.00 | 428.55 | 60188.52 | 66207.37 |
| 300 | 741.55 | 315.21 | 426.34 | 59873.30 | 65860.63 |
| 301 | 741.55 | 317.45 | 424.10 | 59555.85 | 65511.48 |
| 302 | 741.55 | 319.70 | 421.85 | 59236.16 | 65159.77 |
| 303 | 741.55 | 321.96 | 419.59 | 58914.20 | 64805.62 |
| 304 | 741.55 | 324.24 | 417.31 | 58589.96 | 64448.95 |
| 305 | 741.55 | 326.54 | 415.01 | 58263.42 | 64089.76 |
| 306 | 741.55 | 328.85 | 412.70 | 57934.57 | 63728.03 |
| 307 | 741.55 | 331.18 | 410.37 | 57603.39 | 63363.73 |
| 308 | 741.55 | 333.53 | 408.02 | 57269.86 | 62996.85 |
| 309 | 741.55 | 335.89 | 405.66 | 56933.97 | 62627.37 |
| 310 | 741.55 | 338.27 | 403.28 | 56595.71 | 62255.28 |
| 311 | 741.55 | 340.66 | 400.89 | 56255.04 | 61880.55 |
| 312 | 741.55 | 343.08 | 398.47 | 55911.97 | 61503.16 |
| 313 | 741.55 | 345.51 | 396.04 | 55566.46 | 61123.11 |
| 314 | 741.55 | 347.95 | 393.60 | 55218.51 | 60740.36 |
| 315 | 741.55 | 350.42 | 391.13 | 54868.09 | 60354.83 |
| 316 | 741.55 | 352.90 | 388.65 | 54515.19 | 59966.70 |
| 317 | 741.55 | 355.40 | 386.15 | 54159.79 | 59575.76 |
| 318 | 741.55 | 357.92 | 383.63 | 53801.87 | 59182.05 |
| 319 | 741.55 | 360.45 | 381.10 | 53441.41 | 58785.55 |
| 320 | 741.55 | 363.01 | 378.54 | 53078.41 | 58386.25 |
| 321 | 741.55 | 365.58 | 375.97 | 52712.83 | 57984.11 |
| 322 | 741.55 | 368.17 | 373.38 | 52344.66 | 57579.13 |
| 323 | 741.55 | 370.78 | 370.77 | 51973.89 | 57171.27 |
| 324 | 741.55 | 373.40 | 368.15 | 51600.48 | 56760.53 |
| 325 | 741.55 | 376.05 | 365.50 | 51224.44 | 56346.83 |
| 326 | 741.55 | 378.71 | 362.84 | 50845.73 | 55930.30 |
| 327 | 741.55 | 381.39 | 360.16 | 50464.33 | 55510.77 |
| 328 | 741.55 | 384.09 | 357.46 | 50080.24 | 55088.26 |
| 329 | 741.55 | 386.81 | 354.74 | 49693.43 | 54662.71 |
| 330 | 741.55 | 389.55 | 352.00 | 49303.87 | 54234.26 |
| 331 | 741.55 | 392.31 | 349.24 | 48911.56 | 53802.71 |
| 332 | 741.55 | 395.09 | 346.46 | 48516.46 | 53368.11 |
| 333 | 741.55 | 397.89 | 343.66 | 48118.57 | 52930.43 |
| 334 | 741.55 | 400.71 | 340.84 | 47717.86 | 52489.65 |
| 335 | 741.55 | 403.55 | 338.00 | 47314.31 | 52045.74 |

| | | | | | |
|---|---|---|---|---|---|
| 3 6 | 741.55 | 406.41 | 3 5.14 | 46907.91 | 51598.70 |
| 337 | 741.5 | 409.29 | 332.26 | 46498.62 | 51148.48 |
| 338 | 741.55 | 412.18 | 329.37 | 46086.44 | 50695.08 |
| 339 | 741.55 | 415.10 | 326.45 | 45671.33 | 50238.46 |
| 340 | 741.55 | 418.04 | 323.51 | 45253.29 | 49778.62 |
| 341 | 741.55 | 421.01 | 320.54 | 44832.28 | 49315.51 |
| 342 | 741.55 | 423.99 | 317.56 | 44408.29 | 48849.12 |
| 343 | 741.55 | 426.99 | 314.56 | 43981.30 | 48379.43 |
| 344 | 741.55 | 430.02 | 311.53 | 43551.29 | 47906.41 |
| 345 | 741.55 | 433.06 | 308.49 | 43118.22 | 47430.05 |
| 346 | 741.55 | 436.13 | 305.42 | 42682.10 | 46950.30 |
| 347 | 741.5 | 439.22 | 302.33 | 42242.88 | 46467.16 |
| 348 | 741.55 | 442.33 | 299.22 | 41800.55 | 45980.60 |
| 349 | 741.55 | 445.46 | 296.09 | 41355.08 | 45490.59 |
| 350 | 741.55 | 448.62 | 292.93 | 40906.47 | 44997.11 |
| 351 | 741.55 | 451.80 | 289.75 | 40454.67 | 44500.14 |
| 352 | 741.5 | 455.00 | 286.55 | 39999.67 | 43999.64 |
| 353 | 741.55 | 458.22 | 283.33 | 39541.46 | 43495.60 |
| 354 | 741.55 | 461.46 | 280.09 | 39079.9 | 42987.99 |
| 355 | 741.55 | 464.73 | 276.82 | 38615.26 | 42476.78 |
| 356 | 741.5 | 468.03 | 273.52 | 38147.23 | 41961.96 |
| 357 | 741.5 | 471.34 | 270.21 | 37675.89 | 414 3.48 |
| 358 | 741.55 | 474.68 | 265.87 | 37201.21 | 40921.33 |
| 359 | 741.55 | 478.04 | 263.51 | 36723.17 | 40395.49 |
| 360 | 741.55 | 481.43 | 260.12 | 36241.74 | 39865.92 |
| 361 | 741.55 | 484.84 | 256.71 | 35756.91 | 402 6.52 |
| 362 | 741.55 | 488.27 | 253.28 | 35268.63 | 39677.21 |
| 363 | 741.5 | 491.73 | 249.82 | 34776.90 | 39124.02 |
| 364 | 741.55 | 495.21 | 246.34 | 34281.69 | 3855 .90 |
| 365 | 741.55 | 498.72 | 242.83 | 33782.97 | 38005.84 |
| 366 | 741.5 | 502.25 | 239.30 | 33280.71 | 37440.80 |
| 367 | 741.55 | 505.81 | 235.74 | 32774.90 | 36871.77 |
| 368 | 741.55 | 509.39 | 232.16 | 32265.51 | 36298.70 |
| 369 | 741.55 | 513.0 | 228.55 | 31752.51 | 35721.57 |
| 370 | 741.55 | 516.64 | 224.91 | 31235.87 | 35140.35 |
| 371 | 741.55 | 520.30 | 221.25 | 30715.57 | 34555.02 |
| 372 | 741.55 | 523.98 | 217.57 | 30191.59 | 33965.54 |
| 373 | 741.55 | 527.69 | 213.86 | 29663.90 | 33371.89 |
| 374 | 741.55 | 531.43 | 210.12 | 29132.47 | 32774.03 |
| 375 | 741.55 | 535.20 | 206.35 | 28597.27 | 32171.93 |
| 376 | 741.55 | 538.99 | 202.56 | 28058.29 | 31565.57 |
| 377 | 741.55 | 542.80 | 198.75 | 27515.48 | 30954.92 |
| 378 | 741.5 | 546.65 | 194.90 | 26968.83 | 30339.94 |
| 379 | 741.55 | 550.52 | 191.03 | 26418.31 | 29720.60 |
| 380 | 741.55 | 554.42 | 187.13 | 25863.89 | 29096.83 |
| 381 | 741.55 | 558.35 | 183.20 | 25305.55 | 28468.74 |
| 382 | 741.5 | 562.30 | 179.25 | 24743.24 | 27836.15 |
| 383 | 741.55 | 566.29 | 175.26 | 24176.96 | 2719 .08 |
| 384 | 741.5 | 570.30 | 171.25 | 2360 .66 | 26557.49 |
| 385 | 741.55 | 574.34 | 167.21 | 23032.33 | 25911.37 |
| 386 | 741.55 | 578.40 | 163.15 | 22453.92 | 25260.66 |
| 387 | 741.55 | 582.50 | 159.05 | 21871.42 | 24605.35 |
| 388 | 741.55 | 586.63 | 154.92 | 21284.79 | 23945.39 |
| 389 | 741.55 | 590.78 | 150.77 | 20694.01 | 23280.76 |
| 390 | 741.55 | 594.97 | 146.58 | 20099.04 | 22611.42 |
| 391 | 741.55 | 599.18 | 142.37 | 19499.86 | 21937.34 |

| | | | | | |
|---|---|---|---|---|---|
| 392 | 741.55 | 603.43 | 138.12 | 18896.43 | 21258.49 |
| 393 | 741.55 | 607.70 | 133.85 | 18288.73 | 20574.83 |
| 394 | 741.55 | 612.00 | 129.55 | 17676.73 | 19886.32 |
| 395 | 741.55 | 616.34 | 125.21 | 17060.39 | 19192.94 |
| 396 | 741.55 | 620.71 | 120.84 | 16439.68 | 18494.64 |
| 397 | 741.55 | 625.10 | 116.45 | 15814.58 | 17791.40 |
| 398 | 741.55 | 629.53 | 112.02 | 15185.05 | 17083.18 |
| 399 | 741.55 | 633.99 | 107.56 | 14551.06 | 16369.95 |
| 400 | 741.55 | 638.48 | 103.07 | 13912.58 | 15651.66 |
| 401 | 741.55 | 643.00 | 98.55 | 13269.58 | 14928.28 |
| 402 | 741.55 | 647.56 | 93.99 | 12622.02 | 14199.78 |
| 403 | 741.55 | 652.14 | 89.41 | 11969.88 | 13465.11 |
| 404 | 741.55 | 656.76 | 84.79 | 11313.12 | 12727.25 |
| 405 | 741.55 | 661.42 | 80.13 | 10651.70 | 11983.16 |
| 406 | 741.55 | 666.10 | 75.45 | 9985.60 | 11233.80 |
| 407 | 741.55 | 670.82 | 70.73 | 9314.78 | 10479.13 |
| 408 | 741.55 | 675.57 | 65.98 | 8639.21 | 9719.11 |
| 409 | 741.55 | 680.36 | 61.19 | 7958.85 | 8953.71 |
| 410 | 741.55 | 685.17 | 56.38 | 7273.68 | 8182.89 |
| 411 | 741.55 | 690.03 | 51.52 | 6583.65 | 7406.61 |
| 412 | 741.55 | 694.92 | 46.63 | 5888.74 | 6624.83 |
| 413 | 741.55 | 699.84 | 41.71 | 5188.90 | 5837.51 |
| 414 | 741.55 | 704.80 | 36.75 | 4484.10 | 5044.62 |
| 415 | 741.55 | 709.79 | 31.76 | 3774.32 | 4246.10 |
| 416 | 741.55 | 714.82 | 26.73 | 3059.50 | 3441.94 |
| 417 | 741.55 | 719.88 | 21.67 | 2339.62 | 2632.07 |
| 418 | 741.55 | 724.98 | 16.57 | 1614.64 | 1816.47 |
| 419 | 741.55 | 730.11 | 11.44 | 884.53 | 995.10 |
| 420 | 741.55 | 735.28 | 6.27 | 149.25 | 167.90 |

PROGRAM STOP AT 250

USED   2.74 UNITS

**EXHIBIT B**



7021 Columbia Gateway Drive, Suite 200
Columbia, MD 21046
410-209-6400

Tax I.D.: ▮▮▮▮▮▮▮

# INVOICE

The Chen 1998 Family Trust / 170 San Mateo Partnership
cchen426@gmail.com

| | |
|---|---|
| Invoice Date: | 08/06/25 |
| Client Number: | 03920098 |
| Invoice Number: | 1210863 |
| Services Through: | 07/31/25 |
| Payment Due Date: | 09/05/25 |

**03920098.00001    Landlord Issue - Rite Aid Bankruptcy**

For legal services rendered and disbursements incurred through July 31, 2025 in connection with the Landlord Issue - Rite Aid Bankruptcy Matter.

| | |
|---|---|
| Fees | $4,800.00 |
| Costs | $63.00 |
| Subtotal | $4,863.00 |
| Less: Trust Funds Applied | $(2,110.38) |
| **Invoice Total** | **$2,752.62** |

**PAYMENT OPTIONS**
Make checks payable to: Offit Kurman
**To pay your bill on-line via credit card or ACH go to:**



*__Check by US Mail__*
Offit Kurman P.A.
PO Box 69165
Baltimore, MD 21264-9165

To pay via
www.Bill.com use
network ID:
▮▮▮▮▮▮

*__Wire/ACH:__*
Offit Kurman P.A.
Acct. # ▮▮▮▮▮
Domestic ABA: ▮▮▮▮▮
International SWIFT: ▮▮▮▮▮
M&T Bank

*__Check via Overnight/Express Mail__*
M&T Bank c/o Offit Kurman
1800 Washington Blvd., 8th Floor
Baltimore, MD 21230

Prepared By:
Distribution Method:  EMAILX

03920098.00001    Landlord Issue - Rite Aid Bankruptcy                    Invoice Number: 1210863

## INVOICE DETAILS

**03920098.00001    Landlord Issue - Rite Aid Bankruptcy**

**DETAIL OF CURRENT CHARGES**

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| **Paul J. Winterhalter** | | | | |
| 07/08/25 | Reviewed updated Notice [1344] relating to auction of California Leases; confirmed no adverse effect on client. | 0.20 | 600.00 | 120.00 |
| 07/10/25 | Reviewed Objection filed by Fox Rothschild opposing Second Notice to Sell Leases to determine whether any substantive application or benefit to client's position. | 0.20 | 600.00 | 120.00 |
| 07/11/25 | Email to client providing CNO of First group of bid sales which describes landlord bids. Advised on how bidding should proceed. | 0.30 | 600.00 | 180.00 |
| 07/15/25 | Reviewed updated Notice issued by Rite Aid Debtors regarding sale of assets under [Docket No. 1444]; confirmed no application to Client's interests. | 0.20 | 600.00 | 120.00 |
| 07/17/25 | Prepared letter to required parties resubmitting updated bid and proposed Lease Termination Agreement to assure compliance with Bid and Auction Procedures. | 0.40 | 600.00 | 240.00 |
| 07/17/25 | Email to clients transmitting copy of re-submisison of Bid and Lease Termination Agreement. | 0.20 | 600.00 | 120.00 |
| 07/17/25 | Reviewed Notice of Deadline for Bid Submission under second series of lease sales and reviewed Bid Procedures set out in [Docket 804]. | 0.40 | 600.00 | 240.00 |
| 07/18/25 | Email to Mike Matlat at A&G Partners requesting log-in information for Monday's auction and questioning whether any competitive bid was received. | 0.20 | 600.00 | 120.00 |
| 07/18/25 | Reviewed email from M. Matlat confirming still reviewing materials and bids. Will provide notice of results as soon as completed. | 0.10 | 600.00 | 60.00 |
| 07/18/25 | Reviewed email from Erik Potocek of A&G providing log-in information for Monday's auction of lease interests | 0.20 | 600.00 | 120.00 |
| 07/18/25 | Reviewed Notice of Qualified Bids and Virtual Auction set for Monday expressly including client's lease. | 0.30 | 600.00 | 180.00 |
| 07/19/25 | Email to client providing log-in detail for Monday's Auction; forwarding Notice of Qualified Bidders and Virtual Auction, and requesting ability to have call on Sunday in advance of auction to review process and discuss options. | 0.40 | 600.00 | 240.00 |
| 07/20/25 | Review file including applicable Notices on Virtual Auction; detail of submitted cure calculation and reviewing sale and bid procedures previously announced in preparation of call with client to discuss bidding strategy. | 0.30 | 600.00 | 180.00 |
| 07/20/25 | Extended telephone conference with client reviewing process and considerations with Auction of lease interests and bidding process. | 0.80 | 600.00 | 480.00 |

03920098.00001    Landlord Issue - Rite Aid Bankruptcy                    Invoice Number: 1210863

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| 07/20/25 | Reviewed follow up email from client questioning language in the form Debtor's assignment of lease interest as a basis for suggesting the successful third party purchaser is responsible for the cure costs. | 0.20 | 600.00 | 120.00 |
| 07/20/25 | Reviewed Order approving procedures for the Sale of Lease Interests, reviewed Motion filed to approve the procedures for the sale of leases, and reviewed the detailed procedures to determine who is responsible for paying the cure costs. | 0.50 | 600.00 | 300.00 |
| 07/20/25 | Email to Chi forwarding copy of Order approving Bid and Auction procedures highlighting provision which indicates that either Debtor or Assignee could be responsible for cure obligations. Advising this leaves the question completely unresolved. Suggested we state at beginning of auction for the Chen lease our cure amount and question who would be responsible for its payment. | 0.40 | 600.00 | 240.00 |
| 07/21/25 | Reviewed reply from client agreeing makes sense to publicly announce our cure demand at the commencement of the auction on the lease interest so everyone is aware of the cure amount, regardless of who is responsible for the payment. | 0.20 | 600.00 | 120.00 |
| 07/21/25 | Telephone conference with Chi Chen advising of present intended cap and also desirous with speaking before bidding. | 0.20 | 600.00 | 120.00 |
| 07/21/25 | Participate in Virtual Auction of Rite Aid remaining Lease interests on behalf of client. | 1.00 | 600.00 | 600.00 |
| 07/21/25 | Telephone conference with client explaining the private bid engaged by A&G on behalf of the Bankruptcy Estate for 19 lease locations and suggesting the proposal violated the bid procedures. Explained will be able to file an objection once the Notice of Auction results are issued. Suggested we speak further once the Notice is issued. | 0.30 | 600.00 | 180.00 |
| 07/23/25 | Reviewed Notice of Assumption and Assignment and Auction results from Second set of Lease interest sales filed by Rite Aid. [Doc. 1525] Confirmed client's lease listed. | 0.40 | 600.00 | 240.00 |
| 07/23/25 | Email to Client forwarding the Notice of Auction Results and stated Cure Amount. Noted deficiency. Recommended Objection be filed. | 0.30 | 600.00 | 180.00 |
| 07/24/25 | Reviewed detailed email from client deciding not to challenge Ross Stores Bid but certainly challenge deficient cure amount. Provided detail of current cure deficiency. | 0.30 | 600.00 | 180.00 |
| | TOTAL CURRENT FEES FOR THIS TIMEKEEPER: | 8.00 | | 4,800.00 |
| | **TOTAL CURRENT FEES FOR THIS MATTER:** | **8.00** | | **4,800.00** |

### TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|---|---|---|
| Winterhalter, Paul J. | 8.00 | 4,800.00 |
| Total: | 8.00 | 4,800.00 |

03920098.00001    Landlord Issue - Rite Aid Bankruptcy                                    Invoice Number: 1210863

| Date | Qty | Expenses | Amount |
|------|-----|----------|--------|
| 07/17/25 | 1 | Vendor: FedEx; Invoice#: 8-931-45796; Date: 7/22/2025 - PM Office; FedEx; 07/22/2025 - Shipment date 07/17/2025; 03920098.00001 | 13.24 |
| 07/17/25 | 1 | Vendor: FedEx; Invoice#: 8-931-45796; Date: 7/22/2025 - PM Office; FedEx; 07/22/2025 - Shipment date 07/17/2025; 03920098.00001 | 13.24 |
| 07/17/25 | 1 | Vendor: FedEx; Invoice#: 8-931-45796; Date: 7/22/2025 - PM Office; FedEx; 07/22/2025 - Shipment date 07/17/2025; 03920098.00001 | 18.26 |
| 07/17/25 | 1 | Vendor: FedEx; Invoice#: 8-931-45796; Date: 7/22/2025 - PM Office; FedEx; 07/22/2025 - Shipment date 07/17/2025; 03920098.00001 | 18.26 |
| | | **CLIENT EXPENSES ADVANCED BY OFFIT KURMAN:** | **63.00** |

**Less: Trust Funds Applied**                    **$(2,110.38)**

**Matter Total**                         **$2,752.62**

**Trust: 1 - Legal Fees**

| | |
|---|---|
| Beginning Trust Balance | $2,110.38 |
| Less: Trust Funds Applied | $(2,110.38) |
| Remaining Trust Balance | $0.00 |



**7021 Columbia Gateway Drive, Suite 200**
**Columbia, MD 21046**
**410-209-6400**

**Tax I.D.:** ███████

# INVOICE

The Chen 1998 Family Trust / 170 San Mateo Partnership

TO:  cchen426@gmail.com

| | |
|---|---|
| Invoice Date: | 09/09/25 |
| Client Number: | 03920098 |
| Invoice Number: | 1217251 |
| Services Through: | 08/31/25 |
| Payment Due Date: | 10/09/25 |

**03920098.00001    Landlord Issue - Rite Aid Bankruptcy**

For legal services rendered and disbursements incurred through August 31, 2025 in connection with the Landlord Issue - Rite Aid Bankruptcy Matter.

| | |
|---|---|
| Fees | $11,220.00 |
| Subtotal | $11,220.00 |
| Less: Trust Funds Applied | $(2,247.38) |
| **Invoice Total** | **$8,972.62** |

### PAYMENT OPTIONS

**To pay your bill on-line via credit card or ACH go to:**

███████████████████



***Check by US Mail***
Offit Kurman P.A.
PO Box 69165
Baltimore, MD 21264-9165

To pay via www.Bill.com use
network ID: ██████████

***Wire/ACH:***
Offit Kurman P.A.
M&T Bank
Acct. # ███████
Domestic ABA:
International SWIFT: ████████

***Check via Overnight/Express Mail***
Offit Kurman P.A.
7021  Columbia Gateway Dr, Suite 200
Columbia, MD 21060

Prepared By:
Distribution Method: EMAILX
Page | 1

03920098.00001    Landlord Issue - Rite Aid Bankruptcy                    Invoice Number: 1217251

## INVOICE DETAILS

**03920098.00001    Landlord Issue - Rite Aid Bankruptcy**

**DETAIL OF CURRENT CHARGES**

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| **Paul J. Winterhalter** | | | | |
| 08/02/25 | Reviewed 20th through 27th Notices of Contract/Lease rejections to assure client's interest not effected by Interim Notice issued by Debtor. | 0.40 | 600.00 | 240.00 |
| 08/04/25 | Reviewed email from client providing sections of lease which expressly authorizes attorney fees to be added in the event there is a default under the lease. Client also shared response filed by Debtor's counsel suggesting detailed attorney fees must be appended to allow Court to determine the reasonableness of the attorney fees. | 0.40 | 600.00 | 240.00 |
| 08/04/25 | Reviewed client materials forwarded in support of argument that Rite Aid is responsible for the Parking Lot Repairs and provided copy of the 2023 Notice of Default provided to the Debtor. | 0.30 | 600.00 | 180.00 |
| 08/04/25 | Prepared draft of Objection to Debtor's Notice of Assumption and Assignment of The Chen 1998 Family Trust Lease to Ross Dress for Less focused on the required cure amount. | 3.00 | 600.00 | 1,800.00 |
| 08/04/25 | Email to Chi forwarding draft of proposed Objection to Debtor's Notice to Assume and Assign lease to Ross Dress for Less, Inc. | 0.20 | 600.00 | 120.00 |
| 08/04/25 | Reviewed email from client suggesting the attorney fees are too high, but otherwise the Objection is fine. | 0.20 | 600.00 | 120.00 |
| 08/04/25 | Email to client advising attorney fees are higher because added in July bill which he has not yet received. Time listed is based on actual attorney fees incurred. | 0.20 | 600.00 | 120.00 |
| 08/04/25 | Reviewed follow up emails from client acknowledging adjustment to total cure due to July attorney time; also noting Ross bid on 19 leases. Confirmed with client correction on the number of Ross leases was made. | 0.20 | 600.00 | 120.00 |
| 08/04/25 | Additional follow up with client on calculation and adjustments to cure demand for lease assumption and assignment. | 0.20 | 600.00 | 120.00 |
| 08/04/25 | Reviewed and audited attorney fee charges made to client since case inception to confirm accounting accurate; confirmed payments in identified by client were consistent with Firm records. Confirmed accuracy of attorney fees and payments. Made limited corrections to Objection and Exhibits supporting Objection; filed Objection to proposed Cure on Chen Family Lease with Bankruptcy Court. | 0.70 | 600.00 | 420.00 |
| 08/04/25 | Email to client forwarding copies of Objection and supporting documents filed with the Bankruptcy Court on behalf of The Chen 1998 Family Trust, et al disputing the purported cure amount suggested by Rite Aid. Inquired if client received financial information evidencing Ross Dress for Less ability to perform under remaining term of lease. | 0.30 | 600.00 | 180.00 |

03920098.00001    Landlord Issue - Rite Aid Bankruptcy                    Invoice Number: 1217251

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| 08/05/25 | Reviewed draft of proposed Certificate of Service of Chen Family Objection to Notice to Assume and Assign the Half Moon Bay Lease. | 0.20 | 600.00 | 120.00 |
| 08/05/25 | Reviewed email from client forwarding invoice from Last, Faoro & Whitehorn- California counsel involved in pre-petition lease negotiations following default. Requested be offered as supplement to damages. | 0.20 | 600.00 | 120.00 |
| 08/07/25 | Email to D. Bass and Andreas Millaressis following up on Objection to stated cure; suggesting representative of Ross Dress for less get involved and work to resolve in advance of hearing next week. | 0.30 | 600.00 | 180.00 |
| 08/12/25 | Email to David Bass disputing his contentions that attorney fees under the lease requires a party to prevail on a dispute. Argued not according to the language under the lease. | 0.30 | 600.00 | 180.00 |
| 08/12/25 | Email to client forwarding update on disputed attorney fees raised by Rite Aid. | 0.10 | 600.00 | 60.00 |
| 08/12/25 | Reviewed reply from D. Bass continuing to dispute right for attorney fees under bankruptcy payment default. Suggested buyer (Ross) put very little value in this property and will not be looking to pay more. | 0.20 | 600.00 | 120.00 |
| 08/12/25 | Email to client forwarding David Bass arguments disputing right to attorney fees; inquiring whether Landlord willing to compromise. Suggested Debtor may seek to pull from sale to Ross and reject lease. | 0.20 | 600.00 | 120.00 |
| 08/12/25 | Email to D. Bass, Esquire acknowledging his correspondence but suggesting landlord will press the issue on Thursday. Rejection of lease may be preferred by all. | 0.20 | 600.00 | 120.00 |
| 08/12/25 | Reviewed email from David Bass, Esquire advising all lease sale issues are not proceeding on Thursday, being continued to August 26, 2025 | 0.10 | 600.00 | 60.00 |
| 08/12/25 | Email to Judge Kaplan's Chambers requesting Panelist status to present argument on Chen Family Lease Objection. | 0.20 | 600.00 | 120.00 |
| 08/12/25 | Reviewed email from David Bass, Esquire counsel to Rite Aid advising Ross Dress for Less will not agree to removing Chen Property from group they desire to acquire. Suggest Rite Aid will escrow full demanded cure but suggest will not list for argument on Thursday. | 0.20 | 600.00 | 120.00 |
| 08/13/25 | Email to client forwarding copy of Rite Aid counsel's position on removing lease from Sale to Ross Dress for less, noting Ross will not agree and suggesting may seek to approve sale and escrow all disputed fees. | 0.30 | 600.00 | 180.00 |
| 08/13/25 | Email to D. Bass, Esquire following up on whether Rite Aid is proceeding with lease sale to Ross Dress for Less. | 0.20 | 600.00 | 120.00 |
| 08/14/25 | Reviewed Entry of Appearance filed on behalf of Kerner, Esquire as Counsel for Ross Dress for Less in the Rite Aid Bankruptcy. | 0.20 | 600.00 | 120.00 |
| 08/14/25 | Attend and participate in Omnibus Hearings before Judge Kaplan including scheduled argument on Chen Family Cure Objections; Court continued arguments on Chen and other similar lease interests sale and cure amounts to August 28, 2025 | 1.50 | 600.00 | 900.00 |

03920098.00001    Landlord Issue - Rite Aid Bankruptcy                    Invoice Number: 1217251

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| 08/25/25 | Reviewed Rite Aid Response to Chen Objection to proposed cure amount on Lease. Proceeding still set for Thursday hearing. | 0.40 | 600.00 | 240.00 |
| 08/25/25 | Email to client forwarding copy of Debtor's Reply to cure objection; explain to client proposed treatment sought by Debtor and confirming will be prepared to argue to protect Chen 1998 Family Trust et al interest. | 0.30 | 600.00 | 180.00 |
| 08/25/25 | Reviewed email form client questioning how the Court will address curing non-monetary defaults. Reply to client advising will review Code section for addressing such issues. | 0.20 | 600.00 | 120.00 |
| 08/25/25 | Reviewed email from Matthew Summers of Ballard Spahr looking to set up call on negotiating compromise of cure damages sought by Chen Family Trust; set up call. | 0.20 | 600.00 | 120.00 |
| 08/25/25 | Review Objection filed to Cure Amount stated by Rite Aid in its notice in anticipation of discussion with Ross Dress for Less counsel. | 0.30 | 600.00 | 180.00 |
| 08/25/25 | Telephone conference with Matt Summers, Esquire looking to resolve objection on Chen Family Cure objection. Making proposal to resolve. | 0.30 | 600.00 | 180.00 |
| 08/25/25 | Email to Chi Chen updating on call with Matt Summers on behalf of Ross Dress for Less looking to negotiate on Chen Family Cure Objection.  Advised of terms proposed by Ross and suggested potential counter asks to consider. | 0.30 | 600.00 | 180.00 |
| 08/26/25 | Reviewed email from client rejecting each individual proposals suggested by Ross. | 0.20 | 600.00 | 120.00 |
| 08/26/25 | Email to client acknowledging instruction of not willing to compromise on lease cure objection issues. | 0.20 | 600.00 | 120.00 |
| 08/26/25 | Reviewed docketing notice issued by Bankruptcy Court changing time of hearing to 12:30 pm on Thursday on various motions including sale to Ross Dress for Less. | 0.20 | 600.00 | 120.00 |
| 08/26/25 | Email to Judge Kaplan's Chambers requesting panelist status for Thursday's sale hearing to Ross Dress for Less. | 0.20 | 600.00 | 120.00 |
| 08/26/25 | Email to Matt Summers advising that client has rejected each of the proposals discussed yesterday during out call.  Confirmed would proceed on Thursday with opposing assumption based on cure amount as stated by the Debtor. | 0.30 | 600.00 | 180.00 |
| 08/26/25 | Reviewed reply email form M. Summers responding to prior communication advising landlord is not interested in any of the proposals sought by Ross Dress for Less. | 0.30 | 600.00 | 180.00 |
| 08/26/25 | Email to Chi forwarding query by Matthew Summers questioning what it will take to get Chen 1998 Family Trust to agree to resolution of the assignment of the lease. | 0.20 | 600.00 | 120.00 |
| 08/27/25 | Reviewed further response from Client highlighting sign damage and expectation for repair; and advising of future improvements being required of tenants at the Center. Confirming he is refusing to yield on attorney fees reimbursement. | 0.20 | 600.00 | 120.00 |
| 08/27/25 | Further reply to M. Summers, Esquire for Ross Dress for Less advising of Landlord's reply to each of his subsequent inquiries regarding future property improvements and refusal to yield on reimbursement of incurred attorney fees. | 0.30 | 600.00 | 180.00 |

03920098.00001    Landlord Issue - Rite Aid Bankruptcy                          Invoice Number: 1217251

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| 08/27/25 | Reviewed Judge Kaplan's calendar for tomorrow, August 28, 2025. Confirmed Chen Family Objection remains as scheduled. | 0.20 | 600.00 | 120.00 |
| 08/27/25 | Email to client forwarding communication sent to Ross Counsel advising of demands. Confirmed no replay as of 6 pm Eastern. Will proceed with argument tomorrow. | 0.20 | 600.00 | 120.00 |
| 08/28/25 | Reviewed Notice of Agenda of the August 28, 2025 Hearing calendar before Judge Kaplan including notation the Chen Objection is listed but suggesting Debtor will seek to defer cure arguments consistent with Debtor's Limited Reply to Objections. | 0.30 | 600.00 | 180.00 |
| 08/28/25 | Review file; research precedent opinions supporting award of attorney fees for lease defaults under Section 365; prepare for hearing. | 1.30 | 600.00 | 780.00 |
| 08/28/25 | Court Hearing on Rite Aid desire to sell certain lease interests to Ross Dress for Less. Argued and preserved Landlord's claim for full cure amount to be paid. Colloquy with Court over proposal by Debtor and reservations by Ross. | 1.80 | 600.00 | 1,080.00 |
| 08/28/25 | Email to client reporting on result of Hearing before Judge Kaplan relating to attempted lease assumption. | 0.30 | 600.00 | 180.00 |
| | TOTAL CURRENT FEES FOR THIS TIMEKEEPER: | 18.70 | | 11,220.00 |
| | **TOTAL CURRENT FEES FOR THIS MATTER:** | **18.70** | | **11,220.00** |

### TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | | Hours | Amount |
|------------|--|-------|--------|
| Winterhalter, Paul J. | | 18.70 | 11,220.00 |
| | Total: | 18.70 | 11,220.00 |

| | |
|--|--|
| **Less: Trust Funds Applied** | **$(2,247.38)** |
| **Matter Total** | **$8,972.62** |

**Trust: 1 – Legal Fees**

| | |
|--|--|
| Beginning Trust Balance | $2,247.38 |
| Less: Trust Funds Applied | $(2,247.38) |
| Remaining Trust Balance | $0.00 |

**EXHIBIT C**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*[1] | Case No.  25-14861 (MBK) |
| Debtors. | (Jointly Administered) |

### ORDER APPROVING THE
### ASSUMPTION AND ASSIGNMENT OF
### <u>CERTAIN UNEXPIRED LEASE TO ROSS DRESS FOR LESS, INC.</u>

The relief set forth on the following pages, numbered three (3) through eleven (11) is

**ORDERED**.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b) PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile:  (212)  757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North
25 Main Street Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com


*Co-Counsel  to  the  Debtors  and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

Upon the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Final Order")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); the Court having jurisdiction over this matter and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.) and June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having properly filed and served a *Notice of Bid Deadline, Potential Auction and Potential Sale Hearing for Certain Lease Assets* [Docket No. 1320] (the "Auction Notice"), a *Notice of Successful and Backup Bidders* [Docket No. 1524] (the "Successful Bidder Notice") and the *Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 1525] (the "Assumption and Assignment Notice"), and together with Auction Notice, the Successful Bidder Notice, the collectively, the "Bid Notice Documents") on the Objection Notice Parties, the Successful Bidder(s), the Backup Bidder(s), and the applicable Lease Counterparty, The Chen 1998 Family Trust & 1970 San Mateo Road Partnership (collectively, the "Landlord"), in accordance with the terms of the Final Order; and it appearing that no other notice need be provided; and the Landlord having filed *Objection of The Chen 1998 Family Trust, et al. to Notice of Assumption and Assignment of Lease and Cure Amount* [Docket No. 1786] (the "Objection");

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Final Order or the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22].

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

and the Debtors and Ross Dress for Less, Inc. ("Assignee") having filed a *Joint Response of the Debtors and Ross Dress For Less, Inc. to Objection of The Chen 1998 Family Trust, et al. to Notice of Assignment of Lease and Cure Amount* [Docket No. ___] (the "Reply"); and following a hearing held on October 10, 2025 (the "Hearing"), the Court having overruled the Objection; and after due deliberation and sufficient cause appearing therefor and for the reasons stated on the record of the Hearing, **IT IS HEREBY FOUND THAT**:

A.       The assumption, assignment and sale of the Lease dated as of February 1, 1972 (the "Lease") by and between the Landlord's predecessor in interest, Thriftvale Associates, as Lessor, and Thrifty Drug Stores Co., Inc., a predecessor to the Debtor-Tenant under the Lease, Thrifty Payless, Inc., as Lessee, to Assignee pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the Final Order.

B.       Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required, Assignee has provided adequate assurance of future performance under the Lease.

C.       The assumption and assignment of the Lease to Assignee complies with Section 365(b)(3) of the Bankruptcy Code.

D.       The Assumption and Assignment Agreement attached to this Order as **Exhibit 1** (the "Assignment Agreement") between the Debtors and Assignee was negotiated and entered into in good faith, and from arm's length bargaining positions. Assignee is found to be a good faith purchaser of the Lease and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

## THEREFORE, IT IS HEREBY ORDERED THAT:

1.       Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, sell and assign to Assignee the Lease, pursuant to the terms and provisions of this Order and the Assignment Agreement, all of the terms of which are hereby approved.[3]

2.       In accordance with Section 363 of the Bankruptcy Code, effective as of the occurrence of the closing of the assignment of the Lease under the Assignment Agreement (such date being hereinafter defined as the "Closing Date"), the Lease shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

3.       Upon the entry of this Order and the occurrence of the Closing Date, and subject to the terms of the Assignment Agreement, Assignee shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Lease which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4.       Upon entry of this Order and the occurrence of the Closing Date, Assignee is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5.       The Cure Costs due to the Landlord are hereby fixed at the amount $76,013.36 (which amount is inclusive of October 2025 rent), or as otherwise agreed to by the Debtors, Assignee and the Landlord in writing.  Pursuant to Section 365(b)(l) of the Bankruptcy Code, the

---

[3] This Order shall apply to the Lease only; the other leases listed in the Assignment Agreement shall be subject to other or further Orders of this Court.

(Page | 6)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

Cure Cost shall be promptly paid by Assignee.  There shall be no accelerations, assignment fees, increases, or any other fees charged to the Assignee or the Debtors as a result of the assumption and assignment of the Lease.  Upon remittance of the Cure Costs to the Landlord pursuant to the terms of this Order, the Landlord shall be barred from asserting any additional cure amounts or other claims with respect to the applicable Lease.  For the avoidance of doubt, the Landlord shall be forever (i) barred from objecting to the applicable Cure Cost and from asserting any additional cure or other amounts with respect to the applicable Lease and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors or Assignee, or their respective property, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Lease, or that there is any objection or defense to the assumption or assumption and assignment of the Lease.  On and after the Closing Date, and subject to the Assignment Agreement, Assignee shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Lease due on or after the Closing Date.

6.      All personal property and furniture, fixtures and equipment ("FF&E") of the Debtors remaining in the leased premises subject to the Lease on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Assignee may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

7.      Any party that did not object within the time set forth in any applicable notice, including the Bid Notice Documents, is deemed to consent to the Debtors' assumption and assignment of the Lease, and the satisfaction of the requirements of Section 365 of the Bankruptcy

(Page | 7)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

Code.  Upon the sale and assignment of the Lease, payment of the Cure Costs and the transfer of the FF&E pursuant to the paragraph immediately above, as applicable, the Debtors shall be relieved from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

8.     Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, and except as otherwise agreed between the Landlord and Assignee, the following provisions of the Lease shall be unenforceable against Assignee (the "Unenforceable Provisions"):

a.     a provision prohibiting Assignee's intended use of the premises;

b.     a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Assignee's intended use; provided such alterations are deemed necessary by Assignee to conform such store consistent with Assignee's intended use of the premises;

c.     a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Lease or an increase in rent or any other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Assignee in reestablishing retail operations after the assignment, to the extent any such provision does not permit Assignee to "go dark" until the date that is two hundred and seventy (270) days after the Closing Date of the assignment of the Lease;

d.     a provision conditioning assignment on the Landlord's consent, or requiring any payment to the Landlord as the price of assignment, or granting the Landlord the right to recapture the leased premises following the assignment;

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

     e.      a provision effecting forfeiture or a modification of any of Assignee's rights or obligations presently in effect under the Lease upon an assignment by the Debtors of the Lease;

     f.      a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

     g.      a provision restricting Assignee's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Assignee to conform such store with Assignee's intended use of the premises;

     h.      a provision requiring the use of a certain tradename; and

     i.      a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Lease.

9.     Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Assignee in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Assignee of the Unenforceable Provisions shall constitute an event of default under the Lease.

10.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Assignee are authorized to close the sale of the Lease immediately upon entry of this Order.  Time is of the essence in closing the Lease sale transaction referenced herein, and the Debtors and Assignee intend to close the Lease sale transaction as soon as practicable.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

(Page | 9)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

11.     Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Lease and the Assignment Agreement.

12.     Upon the entry of this Order and the occurrence of the Closing Date, the Landlord shall accept and honor the assignment of the Lease to Assignee.

13.     The Landlord shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of Assignee and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreement.

14.     Notwithstanding anything to the contrary in this Order or the Auction Procedures, any Assumption and Assignment Notice, Assumption and Assignment Agreement or Purchase Agreement, side letter(s), or any document or agreement related to any of the forgoing, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors,  and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator.

15.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement,

(Page | 10)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease sale (but all landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Lease sale, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

16.    The Debtors and Assignee are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Lease, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

17.    Assignee is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Lease first accruing after Assignee takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of Assignee taking title or possession of the Lease and the leased premises, and Assignee is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement.

18.    This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

19.    The Objection, and any other objection of the Landlord to the assumption or assignment or transfer of the Lease, any Cure Cost, or seeking further adequate assurance of future performance that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are hereby overruled in all respects and denied, subject to the terms of the Order.

(Page | 11)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving the Assumption and Assignment of Certain Unexpired Lease to Ross Dress For Less, Inc. |

20.     Any provision in the Lease regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Assignee and no percentage rent is due and owing by Assignee for the period prior to the Closing Date.

21.     To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of the Assignment Agreement shall govern.

22.     To the extent that Assignee and the Landlord enter into a side letter with respect to the Lease, such side letter shall govern with respect to rights and obligations of Assignee and the Landlord with respect to any matters addressed in such side letter.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

23.     The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

24.     The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates.

**Exhibit 1**

**<u>Assumption & Assignment Agreement</u>**