**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**NOTICE OF FILING OF PROPOSED PURCHASE AND SALE AGREEMENT IN CONNECTION WITH DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE SALE OF THE RETAINED PREFERENCE CLAIMS TO RAD SUB-TRUST A, PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on October 10, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of an Order Approving the Sale of the Retained Preference Claims to RAD Sub-Trust A, Pursuant to Section 363 of the Bankruptcy Code and Granting Related Relief* [Docket No. 2837] (the "Motion")[2] seeking the Court's approval of the Debtors' sale of certain Retained Preference Claims to RAD Sub-Trust A, pursuant to the proposed form of purchase and sale agreement between the Debtors and RAD Sub-Trust A (the "PSA"). A copy of the PSA is annexed hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that, on October 10, 2025, the Debtors filed an application requesting that the Motion be heard on shortened notice [Docket No. 2838].

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

**PLEASE TAKE FURTHER NOTICE** that, on October 10, 2025, the Court entered the *Order Shortening Time Period for Notice* [Docket No. 2839], scheduling a hearing to consider the Motion on October 14, 2025 at 10:30 a.m. (ET).

**PLEASE TAKE FURTHER NOTICE** that, at the hearing, the Debtors will request that the Court enter an order approving the PSA.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, as well as all related documents, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international); (b) by visiting the website maintained in these chapter 11 cases at **https://restructuring.ra.kroll.com/RiteAid2025**; or (c) for a fee via PACER by visiting http:// www.njb.uscourts.gov.

Dated: October 10, 2025

*/s/ Michael D. Sirota*
_____
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:  msirota@coleschotz.com
   wusatine@coleschotz.com
   fyudkin@coleschotz.com
   svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email:  arosenberg@paulweiss.com
   aeaton@paulweiss.com
   chopkins@paulweiss.com
   smitchell@paulweiss.com

*Co-Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**PSA**

*Proposed Execution Version*

PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is made and entered into as of October __, 2025, by and between New Rite Aid, LLC, and its affiliates (collectively, the "Seller"); and RAD Sub-Trust A ("Purchaser" or "Trust"). Purchaser and Seller are sometimes collectively referred to herein as "Parties" or individually as "Party".

RECITALS

A. On October 15, 2023, Rite Aid Corporation and certain of its affiliates (the "2023 Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

B. On August 16, 2024, the Bankruptcy Court entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Rite Aid Corporation and Its Debtor Affiliates (With Further Modifications)* (the "Confirmation Order") confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates (With Further Modifications)* (the "Plan"). The Plan became effective on August 30, 2024 (the "Effective Date").

C. Pursuant to the Plan and Confirmation Order, on the Effective Date, a Litigation Trust (the "RAD Master Trust") was created and established pursuant to a Master Trust Agreement. Also on the Effective Date, the Trust was established pursuant to the terms of the Sub-Trust A Agreement and Thomas A. Pitta was appointed as Trustee of Sub-Trust A.

D. Pursuant to the Plan, on the Effective Date, the 2023 Debtors "irrevocably vested in, transferred, granted and assigned to" the RAD Master Trust, and the RAD Master Trust received and accepted, all Litigation Trust Assets, including "any and all of the Assigned Claims."

E. Upon its creation, the RAD Master Trust transferred, vested, assigned and delivered to the Trust all of its rights, title, and interest in the Assigned Claims free and clear of all Liens and Claims, including the right to prosecute, settle, and/or monetize the Assigned Claims. The Trust also became the successor-in-interest to the 2023 Debtors and/or the Reorganized Debtors with respect to the Assigned Claims.

F. Assigned Claims were defined broadly under the Plan to include all of the 2023 Debtors' claims and Causes of Action, including any Avoidance Actions arising under chapter 5 of the Bankruptcy Code (collectively, the "Preference Claims"), subject to certain specifically identified categories of preserved claims.

G. Section I.A.42(c) of the Plan provided, among other things, that Preference Claims against "contractual counterparties, vendors, or other go-forward commercial counterparties with the Reorganized Debtors" were not Assigned Claims and were

    retained by the Reorganized Debtors (collectively, the "Retained Preference Claims").[1]

H.  On May 5, 2025, New Rite Aid, LLC and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code in the Bankruptcy Court.

I.  The Debtors seek to sell the Retained Preference Claims pursuant to the terms and conditions of this Agreement and subject to approval by the Bankruptcy Court in the chapter 11 cases of *In re New Rite Aid, LLC, et al.*, Case No. 25-14861 (MBK) (Bankr. D.N.J. 2025) (the "Bankruptcy Cases").

J.  On August 14, 2025, the Bankruptcy Court entered the *Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief* (the "Administrative Claims Procedures Order") [Docket No. 1883], pursuant to which certain creditors are entitled to make an Opt-In Election (as defined in the Administrative Claims Procedures Order) with respect to their Administrative Claims against the Debtor.

K.  Seller is willing to sell the Retained Preference Claims, and Purchaser is willing to purchase the Retained Preference Claims from Seller.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1  The above recitals are hereby incorporated herein by reference.

## SECTION 2 – TERMS OF PURCHASE AND SALE

2.1  <u>Sale and Purchase of Retained Preference Claims</u>. On the terms and subject to the conditions and other provisions set forth in this Agreement, Purchaser agrees to purchase all rights, title and interest in the Retained Preference Claims from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Retained Preference Claims to Purchaser in exchange for twenty and a half percent (20.5%) of any proceeds the Trust recovers from the prosecution of the Preference Claims, including but not limited to the Retained Preference Claims, net of the Trust's reasonable legal fees and expenses incurred or associated solely with respect to pursuing the Preference Claims (the "Purchase Price").

2.2  <u>Exceptions</u>. Notwithstanding anything to the contrary herein:

(a)  The assignment of the Retained Preference Claims under this Agreement shall not include any claims against Debtor Related Parties, as defined in the Plan.

---

[1] Pursuant to Section I.A.42 of the Plan, the Retained Preference Claims did not include any of the 2023 Debtors' claims and Causes of Action (including Avoidance Actions) against the Excluded Parties (as defined in the Plan), and all such claims and Causes of Action (including Avoidance Actions) are Assigned Claims.

2

    (b)    The assignment of the Retained Preference Claims under this Agreement shall include claims against parties that are eligible to and do make an Opt-In Election (as defined in the Administrative Claims Procedures Order) (each, an "<u>Opt-In Party</u>"); <u>provided</u>, <u>however</u>, that upon the making of the First Distribution (as defined in the Administrative Claims Procedures Order) to any Opt-In Party, the Purchaser shall waive and release any Retained Preference Claims asserted against such Opt-In Party, and take all reasonable actions to effectuate such waiver and release, including but not limited to the withdrawal with prejudice of any actions brought against such Opt-In Party.  Not later than (i) October 17, 2025, Seller shall provide Purchaser with the list of each Opt-In Party and (ii) one (1) business day after the Seller makes or causes to be made any First Distribution, Seller shall provide notice of the same to the Purchaser.

    (c)    Seller shall not be entitled to receive any portion of the proceeds of any claims against (i) Excluded Parties (as defined in the Plan) or (ii) GoodRx, including Preference Claims pursuant to this Agreement.

2.3    <u>Closing</u>. The transactions contemplated by this Agreement will be consummated at a closing as follows:

    (a)    The transactions contemplated by this Agreement shall be deemed to be consummated (the "<u>Closing</u>") contemporaneously with entry of an order of the Bankruptcy Court approving this Agreement (the "<u>Sale Order</u>"), unless the Sale Order is stayed pending appeal, in which case the Closing shall take place on the first business day following the date on which the Sale Order is no longer stayed pending appeal.

    (b)    Upon Closing, Purchaser shall be deemed the owner of the Retained Preference Claims and shall be entitled to identify itself as the owner of the Retained Preference Claims for all purposes, and after Closing, Seller shall not be entitled to identify itself as the owner of the Retained Preference Claims or object in any forum, including any court hearing in the Litigation, to the terms of this Agreement or the sale and purchase contemplated hereby.

    (c)    Other than the accounting provided for in section 2.4 below, Seller shall not be entitled to notice of, or have consent rights with respect to, any action taken by Purchaser in connection with the prosecution, abandonment, appeal or settlement of the Preference Claims.

2.4    <u>Cooperation of Seller</u>.  Seller understands and acknowledges that Purchaser may require any such Seller's reasonable assistance, and each Seller agrees to provide such assistance to Purchaser, as may be necessary for the prosecution and collection of the Preserved Preference Claims as further provided in this Agreement, in each case solely in accordance with and subject to the terms and conditions of the Litigation Trust Cooperation Agreement and/or any data retention plan approved by the Bankruptcy Court (in each case solely at Purchaser's expense); <u>provided</u>, <u>however</u>, that nothing herein shall preclude or prevent any Seller from winding down its operations (if any), closing, converting or dismissing its Bankruptcy Cases, and/or dissolving in its sole discretion, and such actions in this proviso shall not constitute a breach of this Agreement by Seller (or its permitted successors and assigns).

3

2.5 Accounting; Payments to Seller. Within 15 calendar days of the end of each calendar quarter, Purchaser shall provide an accounting to Seller (or its permitted successors and assigns) of the proceeds of Preference Actions received during such calendar quarter and shall remit to Seller (or its permitted successors and assigns) the portion of the Purchase Price payable with respect to such quarter per wiring instructions provided by the Seller. Seller (or its permitted successors and assigns) shall have a reasonable opportunity to review each accounting, and Seller and Purchaser shall negotiate in good faith with respect to any disputes concerning an accounting or payments from an accounting. To the extent that Seller and Purchaser cannot resolve any disputes that arise in connection with this paragraph 2.5, such disputes shall be resolved consistent with Section 6.8 of this Agreement. Any Portion of the Purchase Price payable to Seller (or its permitted successors and assigns) ("Proceeds") shall be subject in all respects to the DIP Liens of the DIP Agent (as each such term is defined in the *Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* ("Final DIP Order") (Docket No. 2536)). All such Proceeds shall be distributed consistent with the Final DIP Order or as otherwise contemplated in any chapter 11 plan confirmed by the Bankruptcy Court for the Debtors.

**SECTION 3 – REPRESENTATIONS AND WARRANTIES OF SELLER**

Seller represents and warrants to Purchaser as follows:

3.1 Organization. Seller is in good standing under the laws under which it was formed.

3.2 Authority. Subject to entry of the Sale Order, Seller has the requisite power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby.

3.3 Due Execution; Validly Binding Agreement. This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms, subject in all respects to entry of the Sale Order.

3.4 No Litigation. Subject to entry of the Sale Order: (a) there is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or, to Seller's knowledge, threatened in writing against Seller or concerning the Retained Preference Claims that could prevent or prohibit Seller from selling the Retained Preference Claims or from otherwise complying in full with the provisions of this Agreement and (b) to Seller's knowledge, the transfer of the Retained Preference Claims pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5 Title to Retained Preference Claims; No Liens. Seller has good, valid and marketable title to the Retained Preference Claims and can sell the Retained Preference Claims free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance subject only to entry of the Sale Order. Seller has not previously transferred or received compensation for the Retained Preference Claims, in whole or in part, or any interest therein, or authorized any other party to file the Retained Preference Claims on its behalf and receive a fee, commission, or any similar compensation.

4

3.6 <u>Disclaimers; No Representations or Warranties</u>.  Seller expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Retained Preference Claims (other than as expressly set forth in Section 3.5 above), including, but not limited to: (i) the value of the Retained Preference Claims; and (ii) the anticipated recovery or timing of recovery on the Retained Preference Claims.

3.7 <u>Independent Investigation</u>.  Seller acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Retained Preference Claims and has had an opportunity to review the documents and information publicly available.  Seller acknowledges that the value of the Retained Preference Claims and the final recovery on the Retained Preference Claims cannot be determined by Seller or Purchaser as of the date of this Agreement.  Seller further acknowledges that Purchaser may possess material information not known to Seller and, aside from representations or warranties contained herein, Seller agrees that Purchaser shall have no liability to Seller with respect to the non-disclosure of any such information.

3.8 <u>No Reliance</u>.  Seller is a sophisticated party that has conducted its own independent evaluation of the transactions contemplated by this Agreement and has made its own independent decision (based on its own judgment and upon advice from such advisers as it has deemed necessary) to sell the Retained Preference Claims for the relevant amount included in the aggregate Purchase Price upon the terms and conditions set forth in this Agreement.

3.9 <u>Own Advisors</u>.  Seller acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

3.10 <u>No Fiduciary or Confidential Relationship</u>.  Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

**SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser represents and warrants to each Seller as follows:

4.1 <u>Organization</u>.  Purchaser is in good standing under the laws under which it was formed.

4.2 <u>Authorization</u>.  Purchaser has the requisite power and authority to purchase the Retained Preference Claims from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby.

4.3 <u>Due Execution; Validly Binding Agreement</u>.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms.

4.4 <u>No Litigation</u>.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened, against Purchaser that could prevent or prohibit Purchaser from purchasing the Retained Preference Claims or from otherwise complying in full with the provisions of this Agreement.  Transfer of the

Retained Preference Claims pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

4.5 <u>Purchaser Solvency</u>.  Purchaser is solvent and has the funds available to pay the Purchase Price.

4.6 <u>Disclaimers; No Representations or Warranties</u>.  Purchaser expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Retained Preference Claims, including, but not limited to: (i) the value of the Retained Preference Claims; and (ii) the anticipated recovery or timing of recovery on the Retained Preference Claims.  Purchaser has advised Seller that it should consult with an attorney and/or other relevant professional prior to the execution of this Agreement.

4.7 <u>Independent Investigation</u>.  Purchaser acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Purchaser further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Retained Preference Claims.

4.8 <u>No Reliance</u>.  Purchaser has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation, based on such information as it has deemed appropriate under the circumstances. With the exception of any representations and warranties expressly set forth in or pursuant to this Agreement, Purchaser is not relying on any information provided to Purchaser or written or oral representations, whether express or implied, by Seller, or its respective members, shareholders, officers, directors, employees, agents, owners, affiliates, or subsidiaries, including, without limitation, in assessing the reasonableness of the Purchase Price.  Aside from representations or warranties contained in this Agreement, Purchaser expressly acknowledges that Seller expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Retained Preference Claims, including, but not limited to: (i) the value of the Retained Preference Claims, and (ii) the anticipated recovery and/or timing of recovery on the Retained Preference Claims, if at all.

4.9 <u>Own Advisors</u>.  Purchaser acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.10 <u>No Fiduciary or Confidential Relationship</u>.  Purchaser acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

**SECTION 5 – TERMINATION**

5.1 <u>Termination Events</u>.  Notwithstanding anything contained in this Agreement to the contrary, this Agreement may be terminated: (i) by mutual written consent of Seller and Purchaser; or (ii) by Purchaser, or Seller, if (a) the other Party materially breaches this Agreement (subject to a 15-day cure period, if such breach can be cured), or (b) if the Closing is not consummated within 60 days following the date of the Closing, it being

understood that for purposes of this Section 5.1, no Party may rely on clause (b) if such failure was caused by such Party's breach of this Agreement.

5.2    Effect of Termination.

If this Agreement is terminated in accordance with Section 5.1, each of the Parties shall be relieved of its respective duties and obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Purchaser or Seller.

**SECTION 6 – GENERAL**

6.1    Severability.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

6.2    Costs.  The Parties shall each pay their own costs and expenses (including attorneys' fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

6.3    Entire Agreement.  This Agreement (which includes any exhibits and schedules) represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Retained Preference Claims and supersedes any and all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Retained Preference Claims.

6.4    Survival of Representations and Warranties.  The representations and warranties contained in this Agreement will not survive the Closing.

6.5    No Oral Modification. This Agreement may only be amended in writing signed by all of the Parties.

6.6    Assignability of Claim.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of and be enforceable by Purchaser and its permitted successors and assigns. Seller acknowledges that Purchaser may at any time after the Closing sell, transfer, assign or sub-participate the Retained Preference Claims, together with all right, title and interest of Purchaser in and to this Agreement, in whole or in part, upon prior written notice to Seller, provided that any such assignment shall not relieve Purchaser of any of its obligations under this Agreement. Seller may assign its rights, but not its obligations, under this Agreement at any time, subject to providing notice to the Purchaser of such assignment. The acceptance of an assignment of this Agreement by any permitted successors or assigns constitutes such party's promise to perform the assigning party's duties under this Agreement.

6.7    Jury Trial Waiver.  The Parties hereby irrevocably and knowingly waive to the fullest extent permitted by law any right to a trial by jury in any action or proceeding arising out of this Agreement.  The Parties agree that any such action or proceeding shall be tried before a court and not a jury.

6.8    Governing Law; Forum.  Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of law rules, principles or

7

provisions of such state or of any other state.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such proceeding; provided, however, that, if the Bankruptcy Case is closed or the Bankruptcy Court declines to exercise jurisdiction, all proceedings arising out of or relating to this Agreement shall be heard and determined in a federal court sitting in the State of New York or in state court located in New York County, New York.

6.9 Counterparts.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement.  If so signed, the Agreement becomes effective when both signature pages are attached.

6.10 Notices.  All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and properly addressed as follows:

If to Seller, to:

Rite Aid Corporation
200 Newberry Commons
Etters, PA 17319
Attn: Steven K. Bixler, Chief Financial Officer; Marc Liebman, Chief Transformation Officer

With a copy to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attn:  Sean A. Mitchell and Joshua A. Esses
Email:  smitchell@paulweiss.com
           jesses@paulweiss.com

If to Purchaser, to:

Thomas A. Pitta, as Trustee of the RAD Sub-Trust A
c/o Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, NY 10271
Tel: 212-238-3148
Email: tpitta@emmetmarvin.com

8

    With a copy to:

    Kelley Drye & Warren LLP
    3 World Trade Center
    175 Greenwich Street
    New York, NY 10007
    Attn:  Robert L. LeHane and Andres Barajas
    Email:  rlehane@kelleydrye.com
       abarajas@kelleydrye.com

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein.  Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

[*Remainder of Page Intentionally Left Blank*]

9

IN WITNESS WHEREOF, this Agreement has been executed by the Parties as of the date and year provided above.

SELLER:

By:_____
Name:

PURCHASER:

RAD Sub-Trust A

By: Thomas A. Pitta, not individually, but solely in his capacity as Trustee of the RAD Sub-Trust A

By:_____
Name: Thomas A. Pitta

10