# Exhibit 1

DocuSign Envelope ID: D2DD45AE-A7D0-4930-8732-639B4735IC1E

Rite Aid Store No. 2210

## AMENDMENT TO LEASE

**THIS AMENDMENT TO LEASE** (this "*Amendment*") is made effective November 1, 2023 (the "*Effective Date*") by and between NEM, LLC, a Maryland limited liability company ("*Landlord*"), and RITE AID OF MARYLAND, INC., a Maryland corporation ("*Tenant*," and together with the Landlord, the "*Parties*" and each, a "*Party*").

## RECITALS

**WHEREAS**, Landlord and Tenant are parties to that certain lease agreement dated April 19, 1996 (as amended from time to time thereafter, the "*Lease*"), with respect to that certain premises located at 1400 Sulphur Springs Road Baltimore, Maryland 21227-2402, which premises is defined and more particularly described in the Lease (the "*Premises*");

**WHEREAS**, on October 15, 2023, Tenant and certain of its debtor affiliates (collectively, the "*Debtors*") commenced a case (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "*Bankruptcy Code*") which is now pending in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*"). The Chapter 11 Cases are being jointly administered under Case Number 23-18993; and

**WHEREAS**, Landlord and Tenant desire to modify certain terms and conditions of the Lease, effective as of the Restructuring Effective Date (as hereinafter defined), as amended by this Amendment.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1.   Capitalized Terms. Capitalized terms used and not otherwise defined herein shall have the respective meaning assigned to such terms in the Lease.

2.   Effective Date. This Amendment, and each of its amendments, modifications, and waivers with respect to the Lease as set forth herein, shall be effective on the date that the Lease is assumed or assigned in the Chapter 11 Cases, whether pursuant to (a) procedures approved by the Bankruptcy Court or (b) entry of an order by the Bankruptcy Court approving the assumption or assignment of the Lease, including pursuant to or in connection with a sale of Tenant's assets pursuant to Section 363 of the Bankruptcy Code, confirmation of Tenant's chapter 11 plan of reorganization in the Chapter 11 Cases, or a stand-alone motion for assumption or assignment of the Lease (in each case, the "*Restructuring Effective Date*"); *provided, however*, that Tenant shall obtain the benefit of this Amendment, and this Amendment shall be binding on Landlord, beginning on the Effective Date hereof. In the event the Restructuring Effective Date does not occur, or the Lease is rejected in accordance with the Bankruptcy Code, this Amendment shall be null and void in all respects, and nothing in this Amendment shall give rise to any claim, causes of action, or damages (compensatory or consequential) against either Party. Nothing contained in this Amendment is intended to be or shall be construed as or deemed an assumption or an assignment of the Lease, as amended hereby, or any contract or document related thereto under section 365 of the Bankruptcy Code. Prior to the Restructuring Effective Date, Tenant expressly reserves its right, in its sole and absolute discretion, to assume, reject, or assign the Lease pursuant to section 365 of the Bankruptcy Code.

1

DocuSign Envelope ID: D2DB45AE-A7D9-4930-8732-639B4735C1CF

Case 25-14861-MBK    Doc 2966-5    Filed 10/23/25    Entered 10/23/25 13:43:54    Desc
Exhibit Exhibit 1 to Declaration    Page 3 of 37    Rite Aid Store No. 2210

3.     <u>Lease Modification</u>.

(a)     <u>Term</u>. Notwithstanding anything in the Lease to the contrary, Landlord and Tenant acknowledge and agree that the current term of the Lease is set to expire as of 12/9/2027 (the "***Original Term***"). Landlord and Tenant further acknowledge and agree that the Original Term is hereby revised to expire on 12/31/2028 ("***Revised Term***"). Such Revised Term, and any applicable Extension Term (as hereinafter defined), shall be on the same terms and conditions as set forth in the Lease, except as modified or amended in this Amendment.

(b)     <u>Abatement</u>. Landlord hereby acknowledges and agrees that annual minimum rent (which excludes percentage rent, and additional rent otherwise payable under the Lease (including, without limitation, common area maintenance charges, taxes and insurance premiums) with respect to the Abatement Period (as defined below) is hereby abated and forgiven (the "***Abated Rent***") in full. Landlord hereby waives any remedy under, or with respect to, the Lease or at law and/or equity arising in connection with, or otherwise related to, the Abated Rent. As used herein, "***Abatement Period***" shall mean the period beginning on the date the Tenant emerges from its Chapter 11 Cases (the "***Initial Date***") and ending on the last calendar day of the first full calendar month in which the Initial Date occurs.

(c)     <u>Waiver of Claims</u>. Landlord hereby waives, releases, and discharges Tenant and all of its affiliated companies, the Debtors (as defined in the Chapter 11 Cases), and their bankruptcy estates, and their respective successors and assigns, from any and all liability for any cure payments due and owing under the Lease through and including October 15, 2023.

(d)     <u>Right to Renew</u>. Notwithstanding anything in the Lease to the contrary, (i) Landlord hereby grants to Tenant the right, exercisable at Tenant's option, to extend the Revised Term for one (1) consecutive period (an "***Extension Option***") of five (5) full calendar years (the "***Extension Term***"), exercisable as hereinafter provided. If properly exercised, the Extension Term shall commence immediately following the end of the Revised Term, and in such event, the Extension Term shall be deemed to be part of the Revised Term. Tenant shall exercise the Extension Option with respect to the Extension Term by giving Landlord written notice of the exercise thereof at least twelve (12) months, but not earlier than sixteen (16) months, prior to the expiration of the Revised Term; *provided, however*, if Tenant fails to timely exercise the Extension Option, Tenant's right to exercise such Extension Option shall not be deemed expired until fifteen (15) days after Tenant's receipt of written notice from Landlord of Tenant's failure to exercise same. For the avoidance of doubt, the Extension Option set forth herein shall replace any similar options to renew/extend the term as set forth in the Lease prior to the date of this Amendment.

(e)     <u>Extension Term</u>. During the Extension Term, all of the terms, conditions, covenants and agreements set forth in the Lease (except as modified by this Amendment) shall continue to apply and be binding upon Landlord and Tenant, except that the base rent shall be according to the schedule below:

| <u>Extension Term</u> | <u>Period</u> | <u>Monthly Minimum Rent</u> | <u>Annual Minimum Rent</u> |
|---|---|---|---|
| Extension Term | 01/01/2029 - 12/31/2033 | $15,359.08 | $184,309.00 |

(f)     <u>Attorneys' Fees</u>. Landlord further acknowledges and agrees that, notwithstanding anything to the contrary in the Lease, Landlord shall not be entitled to receive from Tenant or its affiliates

DocuSign Envelope ID: D2DD45AE-A7D0-4930-8732-639B4735-1C17

Case 25-14861-MBK    Doc 2966-3    Filed 10/23/25    Entered 10/23/25 13:43:54    Desc
Exhibit Exhibit 1 to Declaration    Page 4 of 37    Rite Aid Store No. 2210

(or charge as rent due from Tenant or its affiliates) any attorneys' fees incurred by Landlord in connection with this Amendment.

4.    <u>No Default and Waiver of Charges</u>.    Landlord acknowledges and affirms that as of the Effective Date, Tenant is not in default under any of the terms, conditions, or provisions of the Lease, and that there exist no events or circumstances which, with the passage of time or the giving of notice or both, constitutes a default under the Lease (including, without limitation, any failure of Tenant to meet its obligations to continuously operate in the Premises).    Landlord further acknowledges and agrees that to Landlord's actual and constructive knowledge as of the date of Landlord's signature below it has no offsets, claims, or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease.    To the extent that any notices of default or non-payment have been delivered to Tenant prior to the date of Landlord's signature below, all such notices are hereby waived and of no further force or effect.    No default interest, late fees, charges, surcharges, or other fees related thereto shall be due, and all such interest, late fees, charges, surcharges, or other fees are waived and shall not apply.

5.    <u>Confidentiality</u>.    Tenant and Landlord will keep confidential (a) the terms of this Amendment, and (b) all negotiations and communications, including each Party's representatives in connection with this Amendment (collectively, "***Confidential Information***").    Tenant and Landlord will not disclose or make available any Confidential Information to any other person or entity, except (i) accountants, brokers, attorneys, and other agents of Landlord and Tenant for the sole purpose of providing advice to Landlord and Tenant in connection with the Confidential Information and who agree to preserve the confidential nature of same, or (ii) as required by law.

6.    <u>Authority</u>.    Each Party represents and warrants that it has the authority and power to enter into this Amendment and that this Amendment constitutes a legal, valid and binding obligation of that Party.

7.    <u>Notices</u>.

(a)    Notwithstanding anything to the contrary contained in the Lease, any notices required or permitted to be sent to Tenant under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

If by Certified Mail:
RITE AID OF MARYLAND, INC.
P.O. Box 3165
Harrisburg PA 17105
Attn: Legal Department

If by Overnight Courier:
RITE AID OF MARYLAND, INC.
200 Newberry Commons
Etters PA 17319
Attn: Legal Department

(b)    Notwithstanding anything to the contrary contained in the Lease any notices required or permitted to be sent to Landlord under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

DocuSign Envelope ID: D2DD4EAE-A7D9-4930-8732-630B47351C17

Case 25-14861-MBK    Doc 2966-3    Filed 10/23/25    Entered 10/23/25 13:43:54    Desc
Exhibit Exhibit 1 to Declaration    Page 5 of 37    Rite Aid Store No. 2210

| Name: | NEM LLC |
|---|---|
| Address: | 309 Garrison Forest Road |
| | Owing Mills, MD  21117 |
| Email: | tcampb7881@aol.com |
| Telephone: | (410) 925-3116 |

8.    <u>Miscellaneous</u>.

(a)    Landlord and Tenant each hereby represents that it has dealt with no party or broker in connection with this Amendment [except for A&G Real Estate Partners ("***Tenant's Broker***"). Any and all fees that may be due to Tenant's Broker shall be paid by Tenant pursuant to a separate agreement]. Insofar as each Party knows, no other broker negotiated this Amendment or is entitled to any commission in connection therewith. Landlord and Tenant each agrees to indemnify, defend and hold the other harmless from and against any and all claims, loss, cost and damages (including reasonable attorney fees and court costs) suffered or incurred by the representing Party as a result of a breach of this representation.

(b)    This Amendment may be executed in counterparts, each of which shall constitute an original, and which together shall constitute one and the same agreement. This Amendment may be executed or delivered by electronic or facsimile means, and copies of executed signature pages stored electronically in portable document format (.pdf) shall be binding as originals. Neither Party shall record this Amendment without the express prior written consent of the other Party.

(c)    Subject to the other terms of this Amendment, each of Landlord and Tenant agree to execute and deliver such other instruments and perform such other acts, in addition to the matters herein specified, as may be reasonably necessary, from time to time, to effectuate the modifications, waivers and amendments contemplated by this Amendment.

(d)    This Amendment, and all covenants contained herein, shall be binding and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.

(e)    The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect.

(f)    Except as modified as set forth in this Amendment, all of the terms and provisions of the Lease remain unchanged and in full force and effect and Landlord and Tenant hereby ratify and confirm same. Landlord and Tenant acknowledge and agree that the Lease, as modified by this Amendment, sets forth the entire agreement between Landlord and Tenant and there are no other agreements, understandings, undertakings, representations, or warranties among the Parties with respect to the subject matter hereof except as set forth herein. In case of any conflict between the terms and provisions of the Lease and the terms and provisions of this Amendment, the terms and provisions of this Amendment shall control.

[*signature pages follow*]

DocuSign Envelope ID: D2DD45AE-A7D0-4930-8732-639B47351C1F

Case 25-14861-MBK   Doc 2966-3   Filed 10/23/25   Entered 10/23/25 13:43:54   Desc
Exhibit Exhibit 1 to Declaration   Page 6 of 37   Rite Aid Store No. 2210

**IN WITNESS WHEREOF**, the Parties hereto have executed this Amendment effective as of the Effective Date.

**LANDLORD:**

NEM, LLC

By: _____    Date signed: _2/10/24_
Name:  Kevin S. Breeden
Title:  Authorized Signer

**TENANT:**

RITE AID OF MARYLAND, INC.

DocuSigned by:
*Lisa M. Winnick*
By: _____    Date signed:  2/12/2024 | 3:03 PM EST
Name:  Lisa M. Winnick
Title:  Vice President

5

S:\AREA5.LEG\ASIS\2210LSE.VRS
APG:mdm - 04/17/96

# LEASE

DATE OF LEASE:                  *April 19, 1996*

IDENTITY OF LANDLORD:           **ESTATE OF NORMAN E. MOXLEY**
                                c/o Security Commercial Corporation
                                8480 Baltimore National Pike, Suite 408
                                P. O. Box 609
                                Ellicott City, Maryland 21041-0609
                                Federal Identification No. *52-6773661*

IDENTITY OF TENANT:             **RITE AID OF MARYLAND, INC.**
                                P.O. Box 3165
                                Harrisburg, PA  17105
                                Attention:  Secretary

## W I T N E S S E T H :

## ARTICLE 1 - Grant and Premises

Landlord hereby leases to Tenant those certain premises (hereinafter referred to as the "Premises") located in a shopping center located at 1400 Sulphur Springs Road, Baltimore, Maryland, as such shopping center may from time to time be expanded by Landlord (hereinafter, as so expanded from time to time, referred to as the "Shopping Center"). Said premises shall have approximately 10,413 square feet (117' x 90') of space. The Premises are to be located in the cross-hatched area on Exhibit A attached hereto. Landlord represents and warrants that the site plan for Shopping Center as shown on the survey attached hereto as Exhibit B is a complete and accurate representation of the existing buildings, parking areas, access roads, loading docks, passageways and other common areas and facilities, and improvements shown thereon currently comprising the Shopping Center, now completed.

## ARTICLE 2 - Quiet Enjoyment

Provided Tenant is not in default hereunder, Tenant shall have peaceable and quiet enjoyment and possession of the Premises herein demised during the term hereof and any renewals without any hindrance or molestation from Landlord, its agents, servants or employees.

1

## ARTICLE 3 - Commencement of Term

The lease term shall commence on the date that Landlord delivers the Premises to Tenant broom clean, free of all tenancies, with all fixtures, equipment and personal property of prior tenants removed and otherwise in accordance with Article 6 below.

Tenant shall not be obligated to accept the Premises unless possession is delivered to Tenant as required by this Article 3 by January 31, 1998. Tenant's sole remedy if possession is not delivered by such date, shall be to terminate their Lease by written notice to Landlord. This Lease shall automatically terminate if possession of the Premises is not delivered to Tenant by March 31, 1998.

## ARTICLE 4 - Length of Term

The term of this Lease shall be for ten (10) years following the Rent Commencement Date (hereafter defined), unless sooner terminated or extended as herein expressly provided.

## ARTICLE 5 - Renewal Options

Provided Tenant is not in default, Tenant is hereby granted the right to renew this Lease for four (4) successive five (5) year renewal periods. To exercise each, Tenant shall be required to give to Landlord written notice at least six (6) months prior to the expiration of the then current term; provided, however, if Tenant fails to exercise any option right, Tenant's right to exercise said options shall not expire until the earlier to occur of (a) fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same or (b) the expiration of the then current term of the Lease.

## ARTICLE 6 - Construction of the Premises

Landlord shall deliver the Premises to Tenant in broom clean condition with all furniture, fixtures, equipment and the like removed from the Premises. Tenant shall be entitled to demolish any demising walls currently located in the interior of the Premises, at Tenant's sole cost and expense, to facilitate the installation and construction of Tenant's improvements as set forth in Article 11 below.

Except as expressly provided in the preceding paragraph, Landlord makes no representations or warranties as to the condition of the Premises or the presence of hazardous materials (including,

2

but not limited to, asbestos) in the Premises and Tenant agrees to accept the Premises and the Common Area in AS-IS condition.

## ARTICLE 7 - Holdover

Should Tenant remain in possession of the Premises after the expiration of the term of this Lease, such holding over shall be deemed to have created and be construed to be a tenancy from month to month, terminable on thirty (30) days written notice from either party to the other, upon all of the same terms and conditions as in effect immediately prior to such expiration, except that the annual minimum rent shall be One Hundred Thirty Five (135%) percent of that in effect immediately prior to the expiration. Landlord may deliver the thirty day termination notice referred to in the foregoing sentence at any time after the date which is thirty (30) days prior to the expiration of the then current term.

## ARTICLE 8 - Use of Premises

Tenant shall have the right to use the Premises for any lawful purpose, including without limitation to, the sale of health and beauty aids and/or for the sale of any or all items commonly sold in full line or Rite Aid drug stores including without limitation, the installation and operation of a drive-through service window provided that any changes in the Common Area shall be subject to the terms of Article 10, but Tenant shall not be required to continuously operate its business in the Premises. Notwithstanding the foregoing, if this Lease is assigned or the Premises sublet, then the use of the Premises may not be changed to a use that directly conflicts with the primary use of another tenant in the Shopping Center.

## ARTICLE 9 - Exclusive

In the Shopping Center as presently planned or as expanded or in any property located within a one (1) mile radius of the Premises now or hereafter owned or operated by Landlord or any other entity under common control with Landlord, Landlord shall not, either directly or indirectly, during the term of this Lease and any renewals thereof, lease to or otherwise authorize or permit the operation of any other health and/or beauty aids store or pharmacy or authorize or permit the sale of health and/or beauty aids or prescription drugs by any other tenants. Solely with respect to health and beauty aids, the foregoing exclusive shall not apply to the ancillary sale of health and beauty aids by other tenants of Landlord within such one (1) mile radius. Landlord further represents to Tenant that it has not heretofore granted to a tenant the right to operate a health and/or beauty aids store or pharmacy in any other lease executed prior hereto nor will it permit the same in any

3

operation conducted or to be conducted by it at this Shopping Center as presently planned or as expanded.

The provisions of the foregoing paragraph shall be a covenant which shall run with the land, and in the event of a breach thereof, Tenant shall be entitled, in addition to any other remedy available to it, to withhold rent, sue for damages, terminate the Lease and/or to obtain injunctive or other equitable relief.

## ARTICLE 10 - Parking and Common Areas

Landlord has constructed all automobile parking areas, driveways, entrances and exits, service drives, lighting, truckway or ways, loading docks, package pick-up stations, pedestrian sidewalks and ramps, landscaped areas, exterior stairways, and other areas and improvements as shown on Exhibit B (hereinafter referred to as "Common Areas"). Tenant, at Tenant's sole cost, shall be entitled to remodel the Common Areas, including without limitation, the right to remove existing sidewalks, curbing and barriers and install new sidewalks, traffic barriers and curbing and restriping the access drives and parking areas; provided, however, that with respect to any remodeling that involves (a) the demolition of existing structures in the Common Areas; (b) diminished or relocated access to the Shopping Center, or (c) results in a decrease of parking spaces, Tenant shall obtain Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding anything contained herein to the contrary, Tenant shall be entitled to remodel the Common Areas in a manner that is substantially consistent with Exhibit "A" attached hereto. All of said Common Areas shall be for the general use in common of tenants, their agents, employees, customers and invitees. Tenant, its agents, employees, customers and invitees are hereby granted the right to use all of said Common Areas for their intended purposes subject to the fact that Landlord shall have the right from time to time to establish, modify and enforce reasonable rules and regulations with respect to said Common Areas and to from time to time modify, alter or expand portions of the Common Areas not located in the No Build Area depicted on Exhibit A; provided, however, that Landlord shall, at all times, maintain and have adequate means of ingress and egress to and from accepted highways and public streets. The parking areas labeled No Build Area on Exhibit A shall remain free of all structures and obstructions, including temporary and mobile kiosks, but excluding trees currently existing, landscaping, lighting and operational signs.

Tenant shall keep the Common Areas in the Shopping Center (including, without limitation, sidewalks, driveways, service areas, curbs and parking areas) in good order and repair, reasonably free of snow, ice and debris and reasonably lighted during Tenant's normal business hours, but in any event, until at least 9:30 p.m.   If requested by Landlord in writing, Tenant agrees to keep the Common Areas reasonably lit for  additional time on the condition that Tenant is reimbursed by

Landlord for the cost of such additional lighting, including electricity usage and ordinary maintenance and repair attributable to such additional lighting. Landlord agrees to carry public liability insurance covering the parking areas and other Common Areas in an amount not less than Three Million Dollars ($3,000,000) combined single limit, the cost of which shall be included in the insurance premiums reimbursable to Landlord under Article 37 below. Tenant agrees to save and hold Landlord harmless from any loss, cost or suit brought by any person for injuries sustained or property damage arising out of Tenant's negligence with respect to Tenant's duties under this Article 10.

## ARTICLE 11 - Tenant's Improvements

. Tenant may make, at its expense, alterations, additions or improvements to the Premises, provided that such alterations, additions or improvements comply with all laws and shall be substantially consistent with Tenant's prototype plans and specifications attached hereto and made a part hereof as Exhibit C, all of which shall remain the property of Tenant provided they are not permanent in nature. Notwithstanding the foregoing, after Tenant's initial improvements are completed, Tenant may not make any structural alterations, additions or improvements, nor shall Tenant change the exterior of the Premises without first obtaining Landlord's prior written consent, which consent shall not unreasonably withheld, conditioned or delayed. Tenant shall at all times maintain fire insurance with extended coverage in an amount adequate to cover the full replacement cost of all such alterations, additions or improvements, which shall name Landlord as an additional insured. Tenant shall deliver to Landlord certificates of such fire insurance policies within thirty (30) days of Tenant entering into possession of the Premises and thereafter at least fifteen (15) days prior to the expiration of such policies evidencing the renewal thereof, which shall contain a clause requiring the insurer to endeavor to give Landlord ten (10) days notice of cancellation of such policies. If Tenant is not in default of this Lease, Tenant may remove such non-permanent alterations, additions and improvements and shall repair any damage to the Premises occasioned by such removal. Tenant shall promptly pay all contractors and materialmen hired by Tenant to furnish any labor or materials. Should any lien be made or filed, Tenant shall fully bond against or discharge same within ten (10) days after written request by Landlord. Tenant shall have the further right to make exterior, non-structural and structural alterations with the written consent of Landlord, which shall not be unreasonably withheld, conditioned or delayed. Tenant shall not be required to return the Premises to the condition existing on the date hereof at the termination or sooner expiration of this Lease, but shall remove therefrom all of its trade fixtures, equipment and personal property, repair any damage caused by such removal and deliver the Premises to Landlord in broom clean condition.

## ARTICLE 12 - Signs and Storefront Renovations

(a)   Tenant shall have the right, at its expense, to erect on the exterior of the Premises its standard signs.  Tenant shall also have the exclusive right to use any pylon signs currently used by Metro Auto Parts, provided that Tenant shall ensure that such signs shall be structurally sound and in conformity with existing municipal regulations with respect to the Premises.

(b)   In addition, if there is an existing pylon sign, or if Landlord erects a pylon sign, identifying tenants in the Shopping Center, then Tenant shall have the right to affix its identification sign on same.  Tenant shall have the right to remove such signs at the termination, or sooner, of this Lease and repair any damage caused by such removal.  In addition, if Landlord has not erected a pylon sign by January 1, 1998 or the Rent Commencement Date, which ever occurs later, Tenant shall have the right to install its own pylon sign at the location depicted on Exhibit A or such other a reasonable location at the Shopping Center reasonably acceptable to Landlord and Tenant, provided that such sign is structurally sound and in compliance with all existing municipal regulations.

## ARTICLE 13 - Repair

Landlord shall maintain in good condition and repair the structural and exterior portions of the Premises, including foundation, bearing walls and columns (but excluding improvements installed by Tenant) utility lines outside the Premises and permanently installed in exterior walls or floor slab and beneath the floor slab inside the Premises; provided such repairs are not due to the negligent or wrongful act or omission of Tenant.  Landlord shall also make repairs to all interior walls, ceilings, floors and floor coverings when such repairs are made necessary because of Landlord's failure to perform its maintenance obligations hereunder.  Tenant shall otherwise keep the Premises in good order and repair, including maintaining the roof, HVAC systems, any improvements installed by Tenant at the Premises, doors, windows and replacement of plate glass, except to the extent that such repair results from the act or omission of Landlord or except where same are covered by the standard fire and extended coverage insurance policy.  Tenant shall have access to the roof for purposes of maintaining the roof and servicing its heating, ventilation and air conditioning and other equipment which Tenant may install.  All installations shall be made, and all repairs and maintenance shall be performed, in a good and workmanlike manner by qualified professionals and in compliance with all applicable governmental regulations.

## ARTICLE 14 - Liability Insurance

Tenant shall, during the entire term hereof, keep in full force and effect a policy of public liability and property damage insurance with respect to the Premises and the business operated by Tenant and any subtenants of Tenant in the Premises in which the limits of public liability shall not be less than One Million Dollars ($1,000,000) per person and accident, and in which the property damage liability shall not be less than Two Hundred Fifty Thousand Dollars ($250,000). The policy shall name Landlord and Tenant as insureds as their interests appear and shall contain a clause that the insurer will endeavor to give Landlord ten (10) days prior written notice before it cancels or changes the insurance. A copy of the policy or a certificate of insurance shall be delivered to Landlord within thirty (30) days of Tenant entering into possession of the Premises and thereafter at least fifteen (15) days prior to the expiration of such policy evidencing the renewal thereof.

Except as may be superseded by Article 15 below, Tenant agrees to defend, indemnify and hold Landlord harmless from any loss, cost (including attorneys' fees) or suit brought by any person for injuries sustained or damage to property arising out of Tenant's or its subtenants' use and occupation of the Premises or any negligence by Tenant, such subtenants or their agents, employees or contractors.

## ARTICLE 15 - Mutual Waiver of Subrogation

Each policy of fire insurance with extended coverage insurance carried by Landlord and Tenant shall provide that the insurer waives any right of subrogation against the other in connection with or arising out of any damage to such property contained in the Premises caused by fire or other risks or casualty covered by such insurance.

In the event that waiver of subrogation endorsement is obtainable only at an additional expense, then the party so requiring such waiver of subrogation endorsement shall either pay the cost of the additional premium for such provisions, or the other party shall be relieved of its obligation to obtain such endorsement.

Neither party nor its agents, employees or guests shall be liable to the other for loss or damage caused by any risk covered by such insurance, provided such policies shall be obtainable. This release shall extend to the benefit of any subtenant and the agents, employees and guests of any such subtenant.

**ARTICLE 16 - Utility Charges**

Tenant shall be solely responsible for and promptly pay all charges (including all taxes thereon and all connection charges and deposits required) for heat, sewer, water, gas, electricity, or any other utility used or consumed in the Premises.

**ARTICLE 17 - Estoppel Statement**

Within ten (10) days after written request by Landlord, Tenant agrees to deliver an estoppel certificate to any proposed mortgagee or purchaser, or to Landlord, certifying (if such be the case) that this Lease is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by Tenant and whether or not, to the best of Tenant's knowledge, Landlord is in default of any of its obligations hereunder.

**ARTICLE 18 - Subordination**

Tenant agrees to subordinate this Lease to any institutional first mortgage, underlying or master lease now or hereafter placed upon the land of which the Premises are a part, and to all advances made or hereafter to be made upon the security thereto.  The word "mortgage" as used herein includes mortgages, deeds of trust or similar instruments and the word mortgage, underlying or master lease shall include such modifications, consolidations, extensions, renewals, replacements or substitutes thereof.  Provided, however, that if Tenant is not in default of this Lease, its tenancy will not be disturbed but shall continue in full force and effect.  Landlord shall obtain a Subordination, Non-Disturbance and Attornment Agreement in the form attached hereto as Exhibit D from the holders of any and all of the above mortgages or underlying or master.

**ARTICLE 19 - Assignment-Subletting**

Tenant shall have the right to assign or sublet the Premises or any portion thereof, provided, however, that Tenant herein and Guarantor continue to remain liable under this Lease after any such assignment or subletting.  Tenant agrees to give Landlord notice of any such assignment or sublet within thirty (30) days of the date of such assignment, together with copies of the operative assignment or sublease documents.  Tenant further agrees that any assignment of this Lease, including with respect to any assignment to a parent or affiliate company or in connection with the

8

sale of a substantial portion of the assets of any of the foregoing entities, shall contain a provision requiring such assignee to assume and be bound by the obligations of Tenant under this Lease.

## ARTICLE 20 - Governmental Regulations

Tenant shall, at Tenant's sole cost and expense, comply with all of the requirements of all county, municipal, state, federal and other applicable governmental authorities now in force or which may hereafter be in force pertaining to its use of said Premises and all alterations, additions and improvements installed by Tenant, except that Tenant may defer compliance with and contest same, provided Tenant first gives Landlord assurance satisfactory to Landlord against any loss, cost or expense on account thereof.  Any changes required by such authorities which are not caused by the act or neglect, Tenant's use of the Premises or alterations, additions or improvements made by Tenant, of the Tenant and which are a responsibility of Landlord as set forth in this Lease shall be remedied by Landlord.

## ARTICLE 21 - Eminent Domain

If the whole of the Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate when the Premises are physically taken or earlier if the entire Shopping Center is closed due to the condemnation in such proceeding, and all rentals shall cease on said date.

In the event of a taking of any portion of the Premises or any other material portion of the Shopping Center of which the Premises may be a part (which shall not be deemed to include a taking in order to widen a public road resulting in the loss of less than five (5) parking spaces) if such taking materially affects the economic feasibility of the continued operation of Tenant's business, Tenant shall have the option to cancel this Lease.  In the event Tenant determines to remain in operation, Landlord shall, within six (6) months after said condemnation, rebuild the Premises on the space available, to the extent of the available condemnation proceeds and all rent shall be reduced pro rata.

Tenant shall have the further right to receive any relocation damages afforded tenants under the eminent domain laws of the state in which the Premises are located, as well as the right to receive compensation or damages for inventory, signs, machinery, equipment, fixtures and all alterations not replacing Landlord's original equipment.  Provided, however, that Tenant shall waive all other damages, including, but not limited to, damages for the loss of its leasehold estate, and all such damages shall be the sole property of Landlord.

## ARTICLE 22 - Destruction of Premises

In the event of damage to the Premises due to fire or other casualty, rent and all occupancy charges shall abate wholly or proportionately, to the extent of the untenantability, during any period of untenantability.  In the event of damage to the Premises by fire or other casualty or cause rendering the Premises partially untenantable, Landlord shall diligently restore the Premises.  In the event of damage by fire or other casualty or cause rendering the Premises substantially untenantable and requiring essentially a rebuilding of the destroyed Premises, Landlord shall be required to rebuild and restore the same within nine (9) months after the occurrence of said casualty unless delayed through causes beyond its reasonable control.  Provided, however, that in the event said destruction shall occur within two (2) years prior to end of the original term of this Lease or within two (2) years prior to the end of any renewal period, then Landlord shall not be required to rebuild and restore the Premises unless Tenant shall elect to exercise its next remaining option period.  In no event shall Landlord be obligated to repair or restore any alterations, additions or improvements made by Tenant or Tenant's trade fixtures, equipment and personal property.  In addition, Landlord shall not be obligated to restore the Premises if the damage was caused by an occurrence which would not be covered by a standard fire and extended coverage insurance policy required to be maintained by Landlord pursuant to Article 37 below.

## ARTICLE 23 - Default of Tenant

Tenant shall not be held in default of any term or provision of this Lease unless:

(a)     it shall have failed to pay any rental or additional rental due hereunder within fifteen (15) days after receipt of written notice of default sent to it by Landlord; or

(b)     it shall have failed to maintain insurance as required under this Lease which failure is not cured within twenty (20) days of the written notice of default; or

(c)     it shall have failed to bond or discharge any lien against the Premises within thirty (30) days after written notice from Landlord to do so;

(d)     it shall have failed to undertake cure any other such default within thirty (30) days after receipt of written notice from Landlord; provided that if such default is not reasonably capable of cure within thirty (30) days, then Tenant shall have such additional time to cure as shall be reasonably required; or

(e)      it shall have failed to discharge any petition in bankruptcy, execution on its property or assignment for the benefit of creditors within sixty (60) days after receipt of notice thereof.

In the event of any such default, Landlord may declare the term of this Lease terminated, enter into possession of said Premises and sue for and recover all rents as they come due, or Landlord may sue and recover without entering into possession of said Premises. Landlord, further, shall have all rights granted to it under the laws of the state in which the Premises are located; provided, however, that Landlord shall not have the right to accelerate any or all of the rent set forth in this Lease except in the event of a default set forth in subparagraph (c) above. In addition, Landlord shall have the right to cure any default by Tenant and the cost of such cure shall be deemed additional rent and shall be due within fifteen (15) days after written demand from Landlord. All rent and additional rent not paid within fifteen (15) days of written notice that such payment was not made shall bear interest at the rate of ten (10%) percent per annum, which interest shall be deemed additional rent hereunder.

## ARTICLE 24 - Access to Landlord

Landlord or Landlord's agent shall have the right to enter the Premises at reasonable times to examine same upon reasonable prior notice to Tenant, and to show them to prospective purchasers of the building and to make such repairs as Landlord may deem necessary or desirable, provided such repairs shall not unreasonably interfere with Tenant's occupancy of or business in the Premises.

## ARTICLE 25 - Force Majeure

If either party shall be delayed or hindered in or prevented from the performance of any act required hereunder, excluding completion of Tenant's Premises by Landlord as required in Article 6 hereof, by reason of strikes, lock-outs, labor trouble, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war or other reasons of like nature not the fault of the party delayed, then performance of such act shall be excluded for the period of the delay and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay. The provisions of this Article shall not operate or excuse Landlord from the time periods set forth in Article 6 or excuse Tenant from the prompt payment of rent, or additional rent or any other payments required by the terms of this Lease, except as same may be excused as provided for herein during delay in delivery of the Premises. Notwithstanding the foregoing, the time period set forth in Article 3 for delivery of the Premises shall not be extended due to the provisions of this Article.

## ARTICLE 26 - Rent

(a)    Tenant shall commence paying rent, in accordance with this Article on the earliest of the following dates (which date is hereafter referred to as the "Rent Commencement Date"):

(i)    The date on which Tenant has opened for business in the Premises ; or

(ii)    The date which is ninety (90) days after Landlord notifies Tenant in writing that the Premises are ready for occupancy pursuant to Article 6 hereof (hereinafter referred to as "Commencement Requirements").

(b)    Commencing on the Rent Commencement Date, Tenant herein covenants and agrees to pay Landlord rent as follows:

(i)    During the five (5) year period commencing on the Rent Commencement Date, Tenant shall pay annual minimum rent in the amount of Eighty Three Thousand Three Hundred Four ($83,304) Dollars in equal monthly installments of Six Thousand Nine Hundred Forty Two ($6,942) Dollars;

(ii)    During the remaining five (5) year period of the initial term, Tenant shall pay annual minimum rent in the amount of Ninety Five Thousand Seven Hundred Ninety Nine and 60/100 ($95,799.60) Dollars in equal monthly installments of Seven Thousand Nine Hundred Eighty Three and 30/100 ($7,983.30) Dollars;

(iii)    During the first renewal period, to the extent such renewal period is exercised by Tenant, Tenant shall pay annual minimum rent in the amount of One Hundred Ten Thousand One Hundred Sixty Nine and 54/100 ($110,169.54) Dollars in equal monthly installments of Nine Thousand One Hundred Eighty and 80/100 ($9,180.80) Dollars; and

(iv)    During the second renewal period, to the extent exercised by Tenant, Tenant shall pay annual minimum rent the amount of One Hundred Twenty Six Thousand Six Hundred Ninety Four and 97/100 ($126,694.97) Dollars in equal monthly installments of Ten Thousand Five Hundred Fifty Seven and 91/100 ($10,557.91) Dollars;

(v)    During the third renewal period, to the extent exercised by Tenant, Tenant shall pay annual minimum rent in the amount of One Hundred Forty Five Thousand Six Hundred Ninety Nine and 22/100 ($145,699.22) Dollars in equal monthly installments of Twelve Thousand One Hundred Thirty Nine and 10/100 ($12,139.10) Dollars; and

(vi)    During the fourth renewal period, if exercised by Tenant, Tenant shall pay annual minimum rent in an amount equal to One Hundred Sixty Seven Thousand Five Hundred Fifty Four and 10/100 ($167,554.10) Dollars in equal monthly installments of Thirteen Thousand Nine Hundred Sixty Two and 84/100 ($13,962.84) Dollars.

Said rent shall be paid in equal monthly installments on or before the first day of each month, in advance. If the term shall commence on a day other than the first day of a month, then minimum rent shall be pro-rated for the balance of said month on a per diem basis.

## ARTICLE 27 - Broker's Fee

Landlord and Tenant mutually warrant, one to another, that there are no real estate brokers entitled to a commission as a result of producing this Lease Agreement and that neither employed or engaged a real estate broker or agent to effectuate this Lease Agreement except for Security Commercial Corporation who shall be paid by Landlord in accordance with a separate agreement. Landlord and Tenant each hereby indemnify, hold harmless and agree to defend the other against the claim of any party other then Security Commercial Corporation claiming to have dealt with the indemnifying party as broker with respect to this transaction.

## ARTICLE 28 - Feasibility Period.

For a period of thirty (30) days following the date this Lease is executed by both parties (the "Feasibility Period"), Tenant shall have the right to enter upon the Property, subject to the rights of the existing tenants, to investigate all aspects of the Premises including, without limitation, environmental studies, engineering studies, market studies, land use and planning feasibility studies, utilities availability studies, drainage, access, sewer, and such other investigations as Tenant, in its sole discretion, may desire with respect to the physical condition of the Premises. Landlord shall arrange for Tenant to gain access to the Premises currently occupied by Metro Auto Parts, to inspect the interior of the Premises, to the extent such access is permitted by Landlord's lease with Metro Auto Parts.

If Tenant determines, in Tenant's sole discretion, that the Premises are unsatisfactory for any reason, then Tenant may, at its option, terminate this Lease by written notice to Landlord on or before the expiration of the Feasibility Period specifying the reason why the Premises are unsatisfactory. Upon such termination by Tenant, this Agreement shall be null and void and neither party shall have any further rights, duties, liabilities or obligations, at law or in equity, arising out of or relating to this Agreement; provided, however, that Landlord may vitiate such termination by notifying Tenant, with fifteen (15) days of its receipt of the termination notice, that, in its sole

discretion, Landlord has elected and agrees to cure such unsatisfactory conditions to Tenant's satisfaction, at Landlord's sole cost, whereupon Landlord shall thereafter diligently take such measures necessary to cure such unsatisfactory conditions to Tenant's satisfaction prior to delivery of possession pursuant to Article 6 above and this Lease shall remain in full force and effect.

## ARTICLE 29 - Common Area Charges

Landlord will on a monthly basis on the first day of each month pay its proportionate share (i.e.: the ratio of the gross square foot area in all buildings in the Shopping Center, exclusive of the Premises, to the aggregate of the gross square foot area in all buildings from time to time in the Shopping Center) of a monthly installment equal to one-twelfth of Tenant's good faith estimate of expenses for each calendar year wholly or partially within the term and any renewals, removing snow, ice and debris from parking areas and other Common Areas in the Shopping Center, and keeping the same lit, maintaining and repairing the Common Areas (including grass and landscaping maintenance), removing trash from the Common Areas, and maintaining, repairing and operating any pylon signs shared with other tenants of the Shopping Center or bearing the name of the Shopping Center, if Tenant has affixed its sign to such pylon. Within sixty (60) days after the end of each calendar year, Tenant shall provide Landlord with a statement of actual common area charges and Landlord and Tenant, within thirty (30) days thereafter shall adjust any overpayment or underpayment of such charges.

## ARTICLE 30 - Payment of Taxes

Landlord shall pay all real estate taxes assessed and payable with respect to the tax parcels upon which the Premises and the Shopping Center are located. Tenant will pay as additional rent, as billed by Landlord, its proportionate share (i.e. the ratio of the gross square foot area of the Premises to the aggregate of the gross square foot area in all buildings from time to time on the tax parcels upon which the Premises are located) of the actual real estate taxes paid by Landlord with respect to such tax parcels, such payment to be made within thirty (30) days after receipt of an invoice therefor from Landlord.

If Landlord receives any abatement, refund or rebate of said real estate taxes, Landlord shall refund to Tenant, Tenant's pro rata share of real estate taxes less Tenant's pro rata share of the cost to Landlord of obtaining said abatement, refund or rebate.

For purposes hereof, "real estate taxes" shall include all real estate taxes, charges and assessments by governmental and quasi-governmental authorities, front foot benefit charges, special assessments, water and sewer taxes and benefit or user charges set forth on the tax bill for the tax parcel containing the Premises, and all taxes substituted for real estate taxes, to the extent such taxes replace real estate taxes. Tenant shall pay when due all taxes imposed on Tenant's trade fixtures, equipment and personal property. Real estate taxes shall not include any penalties, fines or interest assessed as a result of Landlord's failure to timely pay real estate taxes when due.

## ARTICLE 31 - Landlord's Title

Landlord covenants and warrants to Tenant that Landlord has good and marketable title to the Premises and other premises in which Tenant is given rights of use by this Lease, if any, that Landlord's title is subject only to those matters affecting title contained in the title report attached hereto as Exhibit E, not capable of interfering with Tenant's beneficial use of the Premises, or any part thereof, as permitted under this Lease or other premises on which Tenant is given rights of use by this Lease. Landlord covenants and warrants that there are no written agreements prohibiting the Premises from being used for the purposes of a Rite Aid or full line drug store. Landlord represents and warrants that the Property is currently zoned BL-CCC. Tenant may purchase leasehold title insurance at its own expense.

## ARTICLE 32 - Liens

Landlord shall keep the Premises free and discharged of mechanics' and materialmen liens and encumbrances affecting the leasehold interest created hereby which are the results of Landlord's act(s) or omission(s). If Tenant shall be made a party to any legal proceedings affecting Tenant's right of possession, not caused by any act of Tenant, Landlord will reimburse Tenant for reasonable attorneys' fees or other expenses incurred by Tenant in defending its right to this Lease. If Landlord shall be made a party to any legal proceedings affecting the Premises caused by any act of Tenant, Tenant will reimburse Landlord, as additional rent, for reasonable attorneys fees and other expense incurred by Landlord in such proceeding.

## ARTICLE 33 - Notices

All notices required to be sent under the provisions of this Lease to Landlord and Tenant by one another shall be in writing and sent by U.S. mail, certified, return receipt requested or reliable overnight courier, to the addresses set forth on the first page of this Lease with Tenant's notice directed Attention: Secretary, P.O. Box 3165, Harrisburg, Pennsylvania 17105. Notices shall be

15

deemed given when actually received, or, if delivery is refused, when delivery is attempted. Notices to be given by Tenant may be given by Rite Aid Corporation with the same force and effect as if given by Tenant. Notices shall be sent to such other address as either party may request in a written notice to the other party from time to time.

## ARTICLE 34 - Emergency

Tenant may, if an emergency shall exist, perform any obligation of Landlord hereunder for the account of Landlord, after first notifying the Landlord of the same by telephone or telegram of such emergency. In such event, Tenant shall request Landlord to reimburse Tenant for any expenditures made by Tenant. If Landlord fails to reimburse Tenant within thirty (30) days after Tenant's request therefor, Tenant may apply such claim against any subsequent installment(s) of rent.

## ARTICLE 35 - Recording

This Lease shall not be recorded, but a short form or memorandum of this Lease may be recorded by either party with the cost of such recording (including all recordation and transfer taxes) being paid by the party seeking to record.

## ARTICLE 36 - Successors and Assigns

This Lease shall be binding upon and shall inure unto the benefit of the parties hereto and their respective legal representatives, heirs, successors and assigns.

## ARTICLE 37 - Fire Insurance

Tenant agrees to pay as additional rent its pro rata share of Landlord's reasonable premiums for (a) fire and extended coverage or all risk insurance (including rent interruption insurance) which may be carried by Landlord on Tenant's Premises or the building of which the Premises is a part and (b) the public liability insurance required to be maintained by Landlord pursuant to Article 10 above. Pro rata share shall be the ratio of the gross square foot area in the Premises to the aggregate of the gross square foot area in all buildings in the Shopping Center so insured.

## ARTICLE 38 - Hazardous Materials

Tenant shall be responsible for the removal, abatement or monitoring (as and to the extent required by law) of any hazardous material brought onto the Premises by Tenant or Tenant's agent or any subtenant.  Landlord shall be responsible for the removal, abatement or monitoring (as and to the extent required by law) of any hazardous material not brought onto the Premises by Tenant or Tenant's agent (other than any asbestos contained in the Premises, which shall be removed or remediated by Tenant as and to the extent required by applicable law).

## ARTICLE 39 - Satellite Dish

Tenant shall have the right to install a VSAT satellite dish on the roof of the Premises; provided such dish is installed in accordance with all applicable local, state and federal regulations, and further provided that said equipment is installed so as not to affect the roof or structural integrity of the building in which the Premises are located and adequately shielded so as not to aesthetically affect the building.

## ARTICLE 40 - Submission Not An Option

The submission of this document for examination does not constitute an option or offer to lease space at the Property.  This document shall have no binding effect on the parties unless executed by Landlord and Tenant and a fully- executed copy is delivered to both Landlord and Tenant.

## ARTICLE 41 - Waiver of Jury Trial

Landlord and Tenant each hereby waiver the right to trial by jury in any action or proceeding arising our of this Lease.

## ARTICLE 42 - No Personal Liability

No person or entity constituting Landlord shall have any personal liability under this Lease and Tenant may have recourse only to Landlord's interest in the Shopping Center should Tenant obtain any judgment against Landlord.

## ARTICLE 43 - Governing Law

This Lease shall be construed under the laws of the State of Maryland

## ARTICLE 44 - Entire Agreement

This Lease represents the entire understanding between the parties hereto as to the subject matter hereof and supersedes all prior understandings, warranties, representations or agreements. No change to this Lease shall be binding upon a party hereto unless in writing and signed by such party.

## ARTICLE 45 - Prevailing Party

In any action or proceeding between the parties hereto, the prevailing party shall be entitled to recover its costs of suit, including its reasonable attorneys fees.

## ARTICLE 46-Zoning Contingency

(a)    The parties recognize that the renovation of the Premises, including the modifications to the Common Areas as shown on Exhibit A, will require Tenant to obtain one or more variances from the existing zoning regulations for parking, setbacks and landscape buffers.   Accordingly, promptly following the execution of this Lease by Landlord and Tenant, Tenant shall diligently and in good faith apply for and pursue obtaining these variances (the "Required Approvals"). All applications and submittals made by Tenant in connection with such variances shall first be approved by Landlord's zoning counsel, which approval shall not be unreasonably withheld, conditioned or delayed  provided such applications and submittals do not disclose that Landlord is acquiring additional land from public authorities to be added to the Shopping Center. If Tenant is unable to obtain such final and unappealable Required Approvals within one hundred (100) days following the date hereof, then Tenant by written notice to Landlord shall have the option of terminating this Lease or extending such one hundred (100) day period for an additional twenty (20) days.  If Tenant has not obtained the Required Approvals by the end of such twenty day period, Tenant by written notice to Landlord may terminate this Lease, in which event neither party shall have any further rights hereunder, or by written notice to Landlord may elect to waive this contingency and proceed with this Lease in accordance with its terms.  If Tenant fails to notify Landlord of its election within 120 days following the date hereof, Tenant shall be deemed to have

waived the contingency. Landlord agrees to cooperate at Tenant's expense with Tenant's attempts to obtain the Required Approvals.

(b)      The parties further acknowledge and agree that the significant length of time that will transpire between the execution of the Lease and delivery of possession of the Premises to Tenant pursuant to Article 6 creates the possibility that changes in the Baltimore County Building Code or Fire Code  may prevent Tenant from obtaining the building permits  to renovate the Premises.  If the Baltimore County Building Code or Fire Code is changed in such a manner that Tenant cannot obtain building permits to renovate the Premises to enable Tenant to operate a retail drugstore shown and renovate the Common Areas as shown on Exhibit A,  Tenant shall have the option of terminating this Lease by written notice to Landlord at any time prior to the Rent Commencement Date, provided that the inability to obtain such building permits is not caused by the acts or omissions of Tenant, its agents, contractors or employees.  Tenant agrees to apply for all necessary building permits within thirty (30) days of the date Landlord notifies Tenant in writing of the date that Landlord anticipates delivery of the Premises in accordance with Article 6, which notice shall be given no later than seven (7) months prior to the anticipated delivery date.  If Tenant terminates this Lease in accordance with this subparagraph (b) at any time after the delivery of such notice, Tenant agrees to reimburse Landlord in an amount equal to the minimum rent due under the Metro Auto Parts lease during the last six (6) months of such lease, which amount shall not exceed $26,400 in the aggregate.

**IN WITNESS WHEREOF** Landlord and Tenant have signed and sealed this Lease as of the day and year first above written.

Witness:

Landlord:
**ESTATE OF NORMAN E. MOXLEY**

By: _____ (Seal)
     ROBERT MOXLEY, Personal Representative

By: _____ (Seal)
     KEVIN BREEDEN, Personal Representative

By: _____ (Seal)
     EVELYN R. MOXLEY, Personal Representative

*Signatures continued on next page

Witness:

Tenant:
**RITE AID OF MARYLAND, INC.**

By:_____(Seal)
   Alan P. Garubba
   Authorized Representative

# Guaranty

In consideration of and as an inducement for the granting, execution and delivery of the Lease dated April 19_____, 1996, (hereinafter called "Lease"), by and between THE ESTATE OF NORMAN MOXLEY ("Landlord"), and RITE AID OF MARYLAND, INC. ("Tenant"), and in further consideration of the sum of One ($1) Dollar and other good and valuable consideration paid by Landlord to the undersigned, RITE AID CORPORATION, a Delaware corporation, (hereinafter called "Guarantor"), intended to be legally bound hereby, guarantees to Landlord, its successors and assigns, the full and prompt payment of all rent and additional rent and any and all other sums and charges payable by Tenant, its successors and assigns, under the Lease and the full, faithful and prompt performance and observance of all the covenants, terms and conditions and agreements therein provided to be performed and observed by Tenant, its successors and assigns; and Guarantor does hereby become surety to landlord, its successors and assigns, for and with respect to all of the aforesaid obligations of Tenant under this Lease. Guarantor hereby covenants and agrees to and with Landlord, its successors and assigns, that if default shall at any time be made by Tenant, its successors and assigns, in the payment of any such rent or other sums or charges payable by Tenant under the Lease, or in the performance of any of the covenants, terms, conditions or agreements contained in the Lease, Guarantor will forthwith pay such rent or other sums or charges to Landlord, its successors and assigns, and any arrears thereof, and will forthwith faithfully perform and fulfill all of such covenants, terms, conditions and agreements, and will forthwith pay to Landlord all damages and all costs and expenses that may arise in consequence of any default by Tenant, it successors and assigns, under the Lease (including, without limitation, all reasonable attorneys' fees incurred and disbursements and court costs by Landlord or caused by any such default and/or enforcement of this Guaranty).

This Guaranty is an absolute and unconditional guaranty of payment and of performance and is a surety agreement. Guarantor's liability hereunder is direct and may be enforced without Landlord being required to resort to any other right, remedy or security and this Guaranty shall be enforceable against Guarantor, its successors and assigns, without the necessity for any suit or proceeding on Landlord's part of any kind or nature whatsoever against Tenant, its successors and assigns, and without the necessity of any notice, other than as specifically provided in the Lease, of non-payment, non-performance or non-observance or the continuance of any such default or of any notice of acceptance of this Guaranty or of Landlord's intention to act in reliance hereon or of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives; and Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no wise be terminated, affected, or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, or Tenant's successors and assigns, of any of the rights or remedies reserved to Landlord pursuant to the provisions of this Lease.

This Guaranty shall be a continuing Guaranty, and (whether or not the Guarantor shall have notice or knowledge of any of the following), the liability and obligation of Guarantor hereunder shall be absolute and unconditional and shall remain in full force and effect, and shall not be released, discharged or in any way impaired by: (a) any amendment or modification of or supplement to this Lease  (except to the extent any such amendment, modification or supplement increases Tenant's obligations under the Lease) or the exercise of any right of extension or renewal (as and to the extent such extension or renewal right was originally set forth in the Lease), or any assignment or transfer thereof; (b) any exercise or non-exercise of any right, power, remedy or privileges under or in respect of the Lease or this Guaranty or any waiver, consent or approval by Landlord with respect to any of the covenants, terms, conditions, or agreements contained in the Lease, or any indulgences, forebearances or extensions of time for performance or observance allowed to Tenant from time to time, and for any length of time; (c) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or similar proceeding relating to Tenant, its successors and assigns or their properties or creditors; (d) any limitation on the liability or obligation of Tenant under this Lease or its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provisions of any applicable bankruptcy law, or any other statute or from the decision of any court; or (e) any transfer by Tenant or any assignment of its interest under the Lease.

21

All of Landlord's rights and remedies under the Lease and under this Guaranty are intended to be distinct, separate and cumulative, except as specifically provided in the Lease, and no such right and remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others.  No termination of this Lease or taking or recovering of the premises demised thereby shall deprive Landlord of any of its rights and remedies against Guarantor under this Guaranty.  This Guaranty shall apply to Tenant's obligations under the Lease as extended, renewed, amended, modified or supplemented, to the extent such extension renewal, amendment, modification or supplement is in a written agreement signed by Landlord and Tenant.

Guarantor represents and warrants to Landlord that:  (a) the execution and delivery of this Guaranty has been duly authorized by the Board of Directors of Guarantor; (b) the making of this Guaranty does not require any vote or consent of shareholders of Guarantor; and (c) Guarantor is an affiliate of Tenant.

The Guaranty shall be legally binding upon Guarantor and its successors and assigns, and shall inure to be the benefit of Landlord and its successors and assigns.

IN WITNESS WHEREOF, Guarantor, intending to be legally bound hereby, has caused this Guaranty to be executed by its duly authorized representative and its corporate seal to be hereunto duly affixed, at Camp Hill, Pennsylvania, this 19th day of April_____, 19 96 .

RITE AID CORPORATION

By: _____

Attest: _____

(Corporate Seal)

COMMONWEALTH OF PENNSYLVANIA)
COUNTY OF CUMBERLAND), to wit:

On the _____ day of _____ A.D. 19__, before me, the undersigned officer, personally appeared Alan P. Garubba and  Lilli A. Binder,  _____ , who acknowledged themselves to be the Authorized Representative and the  Assistant Secretary  of Rite Aid Corporation, a corporation, and that they as such Authorized Representative and  Assistant Secretary , being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation as Authorized Representative and  Assistant Secretary .

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

_____

My Commission Expires:

NOTARIAL SEAL
MARIA A. BARLETTA, NOTARY PUBLIC
CAMP HILL BORO, CUMBERLAND COUNTY
MY COMMISSION EXPIRES OCTOBER 4, 1999

22

COMMONWEALTH OF PENNSYLVANIA )
                                        :
COUNTY OF ___Cumberland___ )

On the _19th_ day of ___April___, 1996, before me, the undersigned officer, personally appeared Alan P. Garubba, who acknowledged himself to be the Authorized Representative of Rite Aid of Maryland, Inc., a corporation, and that he as such Authorized Representative, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as Authorized Representative.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

_Maria A. Barletta_

My Commission Expires:

NOTARIAL SEAL
MARIA A. BARLETTA, NOTARY PUBLIC
CAMP HILL BORO, CUMBERLAND COUNTY
MY COMMISSION EXPIRES OCTOBER 4, 1999

STATE OF _____ )
                                        :
COUNTY OF _____ )

On the ____ day of _____, 1996, before me, the undersigned officer, personally appeared Robert Moxley, who acknowledged that he is the Personal Representative of the Estate of Norman E. Moxley and that he, being authorized to do so executed the foregoing instrument on behalf of the Estate for the purposes therein contained in his capacity as Personal Representative.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

_____

My Commission Expires:

23

COMMONWEALTH OF PENNSYLVANIA )

:

COUNTY OF _____ )

On the _____ day of _____, 1996, before me, the undersigned officer, personally appeared Alan P. Garubba, who acknowledged himself to be the Authorized Representative of Rite Aid of Maryland, Inc., a corporation, and that he as such Authorized Representative, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as Authorized Representative.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

_____

My Commission Expires:

STATE OF _Maryland_____ )

COUNTY OF _Howard_____ )

On the _18th_ day of _April_____, 1996, before me, the undersigned officer, personally appeared Robert Moxley, who acknowledged that he is the Personal Representative of the Estate of Norman E. Moxley and that he, being authorized to do so executed the foregoing instrument on behalf of the Estate for the purposes therein contained in his capacity as Personal Representative.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

_Shiela K. Montgomery_

My Commission Expires: _8/17/98_

23

STATE OF ___Maryland___ )

COUNTY OF ___Howard___ )

On the 19th day of ___April___, 1996, before me, the undersigned officer, personally

appeared Kevin Breeden, who acknowledged that he is the Personal Representative of the Estate of

Norman E. Moxley and that he, being authorized to do so executed the foregoing instrument on

behalf of the Estate for the purposes therein contained in his capacity as Personal Representative.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

_Shiela K. Montgomery_

My Commission Expires: 8/17/96

STATE OF ___Maryland___ )

COUNTY OF ___Howard___ )

On the 19th day of ___April___, 1996, before me, the undersigned officer, personally

appeared Evelyn R. Moxley, who acknowledged that she is the Personal Representative of the Estate

of Norman E. Moxley and that she, being authorized to do so executed the foregoing instrument on

behalf of the Estate for the purposes therein contained in her capacity as Personal Representative.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

_Shiela K. Montgomery_

My Commission Expires: 8/17/96

# EXHIBIT "B"

SURVEY PLAN OF PREMISES

# EXHIBIT "C"

TENANT'S PROTOTYPE PLANS AND SPECIFICATIONS DATED MARCH 1995

(Separately delivered to Landlord)

# EXHIBIT "D"

## Subordination, Non-Disturbance and Attornment Agreement

**THIS AGREEMENT** made as of this _____ day of _____, 1995, by and between RITE AID OF MARYLAND, INC., whose business address is P.O. Box 3165, Harrisburg, Pennsylvania 17105, hereinafter referred to as "Tenant", and _____, whose address is _____ _____, hereinafter referred to as "Mortgagee".

Reference is made to that certain lease (hereinafter referred to as the "Lease") dated _____, 19__, from The Estate of Norman E. Moxley, as Landlord ("Landlord"), to Tenant, as tenant of premises at 1400 Sulphur Springs Road, Baltimore, Maryland, more fully described therein.

Reference is further made to a certain mortgage dated _____, 19__, now held by Mortgagee, as heretofore amended and extended (the "Mortgage"), covering the property demised by the Lease, the Mortgage having been recorded in _____.

Tenant and Mortgagee hereby agree as follows:

1.      The Lease and the rights of Tenant thereunder are hereby subordinated and shall be and remain subordinated to the Mortgage and the lien thereof, and to any and all renewals, replacements, modifications, consolidations, spreaders and extensions thereof.

2.      Mortgagee hereby consents to the Lease and agrees that:

(a)     notwithstanding the Mortgage and the lien thereof, or any renewal, modification, consolidation, spreader or extension thereof, or any other restriction, lien, encumbrance, right, title or interest now or hereafter held by Mortgagee, or any default, expiration, termination, foreclosure, sale entry or other act or omission under, pursuant to or affecting any of the foregoing, Tenant shall not be disturbed in peaceful enjoyment of the Premises or the Shopping Center or the Lease terminated or canceled at any time, except in the event Landlord shall have the right to terminate the Lease under the terms and provisions expressly set forth therein.

(b)     in the event Mortgagee should succeed to Landlord's rights, title and interest as Landlord under the Lease, Mortgagee will perform, fulfill and observe all of Landlord's representations, warranties and agreements set forth in the Lease while it is Landlord thereunder, but Mortgagee shall not be

(i)     liable for any act or omission of any prior lessor (including Landlord);
(ii)    bound by any rent which Tenant might have paid for more than the current month paid to any prior lessor (including Landlord); or
(iii)   bound by any amendment or modification of the Lease made without Mortgagee's consent.

3.      In the event of a foreclosure of the Mortgage, Tenant agrees to attorn to and recognize the purchaser at the foreclosure sale as Landlord under the Lease for the balance of the then remaining term of the Lease subject to all of the terms and provisions of the Lease.

4.      The agreements contained herein shall bind and inure to the benefit of the successors and assigns in interest of the parties hereto, and, without limitation of the foregoing generality, the agreements of Mortgagee herein shall specifically be binding upon any purchaser or successor of said property at a sale foreclosing said Mortgage or in lieu of such foreclosure.

5.      If the loan made by Mortgagee is secured by a deed of trust or security deed rather than a mortgage, all reference herein to Mortgage shall be construed as referred to such other type of security interest.

IN WITNESS WHEREOF, the parties hereof have caused the execution hereof as of the day and year first above written.

Attest:                                             RITE AID OF MARYLAND, INC.


_____                            By:_____


Attest:                                             MORTGAGEE:


_____                            By:_____


COMMONWEALTH OF PENNSYLVANIA)
                                    :
COUNTY OF CUMBERLAND)


On the _____ day of _____A.D. 19__, before me, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be the _____ of Rite Aid of Maryland, Inc., a corporation, and that he/she as such _____ being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself as _____.


IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.


                                            _____
                                            My Commission Expires:


STATE OF_____)
                         :
COUNTY OF_____)


On the _____ day of _____A.D. 19__, before me, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, a corporation, and that (s)he as such _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself as _____.


IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.


                                            _____
                                            My Commission Expires:


29

# EXHIBIT "E"

TITLE OBJECTIONS

(to be added)



↗ POPLAR AVENUE

EAST DRIVE

EXIST. BLDG.

GOOD TIME DJ'S LEASE AREA

PROP. DUMPSTER

CLOSET CLASSICS LEASE AREA

EXIST. ON-STREET PARKING AND BUS STOP

EXIST. BLDG. WALL (TYP.)

EXIST. UTILITY POLE MAY NEED TO BE RELOCATED IF SITE IMPROVEMENTS ARE PROPOSED

PROP. RITE AID LEASE AREA

EXIST. DWELL.

22'   18'   10'

EXIST. ENTRANCE (RT TURN IN AND RT TURN OUT)

10' 8.5'

SIGNALED INTERSECTION

21'

EXIST. ENTRANCE

CLOSE EXIST. ENTRANCE

SULPHUR SPRING ROAD

OLD SULPHUR SPRING ROAD

## GENERAL NOTES

1.  Site Area:  **0.90 Acres +/- (39,204 S.F. +/-)**

2.  Zone:  **BL-CCC**

3.  Existing Use:  Retail  (Metro Auto Parts)
    Proposed Use:  Unchanged  (Rite Aid)

4.  Parking Required:

    a)  Good Times DJ's
        1,345 S.F. @ 5/ 1,000     = 7 Spaces

    b)  Closet Classics
        3,577 S.F. @ 5/ 1,000     = 18 Spaces

    c)  Rite Aid
        10,413 S.F. @ 5/ 1,000    = 52 Spaces

        Total Required            = 77 Spaces

    Parking Provided:

    Please note that a parking layout has only been shown to reflect the number of spaces which can be accommodated on the site per current zoning regulations.  If striping is proposed in the parking area, the striping pattern would need to meet current zoning regulations, but no parking variance would be required.  If landscaping is proposed in the parking area, a grading permit would be required and the site would need to meet the requirements of the Baltimore County Landscape Manual.  A waiver from the Landscape Manual would be required from the buffer area required between the right-of-way and parking lot. Additionally, a waiver may need to be requested for the 7% landscape reservation area in parking areas.

5.  Note:  If no work is proposed on the site, a  variance will not need to be obtained for parking.

6.  The entire site is located in a floodplain.  If interior renovations are proposed, the applicability of the floodplain regulations will need to be studied.

7.  Loading will need to occur when the store is not open, otherwise a separate loading space will be required.

8.  Note that trash pickup will be difficult to access since the trash truck will need to back up a substantial distance before exiting the site.

Sketch Number: 01-5
1400 Sulphur Spring Road
Baltimore County



RITE AID

Date: 2/22/96     Scale: 1"=30'-0"

STV Incorporated
21 Governor's Court
Baltimore, Maryland 21244-2722
(410) 944-9112 fax:(410) 298-2794

†Engineers/Architects/Planners