**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for the Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' SECOND SUPPLEMENT TO OPPOSITION TO MOTIONS OF
HVP2 LLC [DOCKET NOS. 182 AND 390]**

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), in further opposition to the motions (collectively, the "Motions") of HVP2 LLC ("HVP2") [Docket Nos. 182 and 390],[2] file this supplement to (i) the Debtors' omnibus

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2] In connection with the Motions, HVP2 also filed the *Supplemental Certification in Further Support of HVP2 LLC Motion for Payment of Administrative Payment* [Docket No. 714] (the "Supplemental Certification"). However, the Supplemental Certification has been withdrawn. *See* Docket No. 1777.

opposition to the Motions [Docket No. 653] (the "Omnibus Objection") and (ii) the Debtors' supplement to omnibus opposition to the Motions [Docket No. 1108] (the "Supplemental Objection" and together with the Omnibus Objection, the "Objections"),[3] and respectfully state as follows:

1. Much of the relief sought in the Motions has, by this point in time, become moot.

2. For example, each of the Motions appears to request (i) May rent (without distinguishing between the pre-Petition Date period rent that became due on May 1, 2025, and that portion relating to the stub period, *i.e.*, "stub rent"), (ii) June 2025 rent (which was not yet due when the Motions were filed), (iii) late fees (without any explanation of what was late), (iv) attorneys' fees, and (v) adequate protection (without any explanation of what would constitute such).[4]

3. From the Debtors' perspective, all but HVP2's request for attorneys' fees is now moot. First, the Debtors paid the stub rent (making a payment of $24,896.82 to HVP2 on September 8, 2025). Second, the Debtors timely paid June 2025 rent. Third, by timely paying rent during the periods it occupied the premises, *i.e.*, for June and July 2025, the Debtors had no obligation to pay late fees. And lastly, the Debtors have vacated the premises and sought to reject the HVP2 lease as of July 31, 2025,[5] obviating the need for continued "adequate protection."

4. Thus, all that remains for this Court to decide is HVP2's request for attorneys' fees.

---

[3] Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Omnibus Objection.

[4] The Debtors are hard-pressed to figure out how the Motions differ in the relief sought.

[5] On July 25, 2025, the Debtors filed the *Sixteenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1573] (the "Rejection Notice") which identified the lease as among the leases to be rejected, with a Rejection Effective Date of 7/31/2025. *See* Schedule 1 to Rejection Notice, # 53 (ECF p. 21 of 28). HVP2 has filed an objection to the Rejection Notice. *See* Docket No. 1776.

5. HVP2 has failed to meet its burden for attorneys' fees under its lease and applicable law.[6]

## HVP2 HAS NOT MET ITS BURDEN FOR THE ALLOWANCE OF ATTORNEYS' FEES UNDER THE LEASE

6. It is unclear from the Motions which Bankruptcy Code section HVP2 is relying upon in seeking allowance of the attorneys' fees. The Debtors presume that HVP2 is taking the misguided position that the attorneys' fees fall within section 365(d)(3) of the Bankruptcy Code. Section 365(d)(3) of the Bankruptcy Code provides that "the trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).

7. Relying on the phrase "all of the obligations of the debtor" in this section, some courts (including one in this District) have allowed as administrative expenses a landlord's attorneys' fees under section 365(d)(3) of the Bankruptcy Code if such fees were (1) reasonably incurred for the purpose of enforcing performance under the lease, (2) authorized under the terms of the lease, and (3) supported by detailed invoices. *See, e.g.*, *In re Pelican Pool & Ski Ctr., Inc.*, 2009 Bankr. LEXIS 4623, at *43-50 (Bankr. D.N.J. July 27, 2009) ("*Pelican Pool*") (allowing post-petition, pre-rejection attorneys' fees pursuant to section 365(d)(3), pending the court's determination of the reasonableness of such fees); *In re Pac-West Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) (court agrees to consider payment of attorneys' fees under section 365(d)(3) upon the submission of detailed invoices). Bankruptcy courts being asked to approve

---

[6] As the Debtors previously acknowledged, the Debtors mistakenly relied on a prior lease for Store 10687 in connection with the Objections that had since been superseded. *See* Docket No. 2389, at n. 4. *See also* Docket No. 2391, attaching the applicable lease, as Exhibit 1 (the "Lease").

fees have "a duty to examine the reasonableness of all fees requested[.]" *In re Pac. Sea Farms, Inc.*, 134 B.R. 11, 16 (Bankr. D. Haw.) (citing *Matter of Daylight Transp., Inc.*, 42 B.R. 20 (Bankr. E.D.N.Y. 1984) (finding that time entries such as "research", "conference" or "telephone call" was insufficient to support payment of attorneys' fees under section 365(d)(3) of the Bankruptcy Code).

8.    The court's decision in *Pelican Pool* is instructive here. 2009 Bankr. LEXIS 4623, at *43-50. There, a landlord filed a motion for summary judgment seeking entry of an order allowing an administrative claim for, *inter alia*, attorneys' fees incurred through the landlord's efforts to enforce obligations under the lease. *Id.* at *43. The landlord in *Pelican Pool* relied upon a provision in the lease stating that "the occurrence of default will be treated as a breach of the lease agreement, thereby giving the landlord the right to bring suit for the collection of both rent and damages, including reasonable attorney's fees." *Id.* at *43-44. The court first looked at whether attorney's fees can be considered an "obligation" under section 365(d)(3) as to warrant the payment of such fees to the landlord. *Id.* at *44. Applying the Third Circuit's reasoning in *Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward)*, 268 F.3d 205, 211 (3d Cir. 2001), the court concluded that "where authorized by a provision in the lease enforceable under state law, a landlord is entitled to attorney's fees when such fees are reasonably incurred for the purpose of enforcing performance under the lease." *Id.* at *46. As a result, the court found that, because the lease provides for attorney's fees and is enforceable, the landlord was entitled to pre-rejection attorney's fees pursuant to section 365(d)(3) "as a matter of law pending the court's determination of the reasonableness of such fees." *Id.* at *47. However, because the certification provided by the landlord's attorney was missing certain details to support the payment of attorney's fees, such as the novelty and difficulty involved in the work, the time and labor

4

required, and the billing rate of the attorney, the landlord's counsel was required to submit a certification of fees relating solely to the enforcement of pre-rejection obligations within twenty (20) days. *Id.* at *48.

9. Consistent with *Pelican Pool* and the Third Circuit's decision in *Montgomery Ward*, HVP2 is only entitled to the payment of attorneys' fees if the attorneys' fees were (1) authorized by a provision in the lease enforceable under state law, (2) "reasonably incurred for the purpose of enforcing performance of the lease," *id.* at *46, and (3) supported by detailed invoices.

10. While there is a provision in the Lease that allows for attorney's fees, it does not provide a basis for payment of any attorneys' fees to HVP2. That provision, Section 21.3 of the Lease, provides as follows:

> 21.3. In the event that either Landlord or Tenant seeks enforcement of its rights and commences any suit for the collection of any amounts for which the other may be in default or for the performance of any other covenant or agreement hereunder, the prevailing party shall be entitled to be reimbursed by the other party for reasonable attorneys' fees and expenses incurred in enforcing such obligations and/or collecting such amounts.

11. That provision, which the Debtors acknowledge is enforceable under state law,[7] provides, respectfully, that HVP2 is only entitled to payment of reasonable legal fees and expenses (a) if it is the "prevailing party" (b) in a suit (c) seeking enforcement of its rights (d) where the Debtor is in default or for the performance of any covenant or agreement under the Lease and

---

[7] The Lease is governed by New York law. *See* Lease at § 26. Under New York law, when the fee shifting is controlled by a contractual provision, the provision should be strictly construed in light of New York's general policy disfavoring the award of attorneys' fees. *40-50 Brighton First Rd. Apartments Corp. v. Henderson*, 51 Misc. 3d 1, 3, 27 N.Y.S.3d 310, 311 (N.Y. App. Term. 2015) ("New York public policy disfavors any award of attorneys' fees to the prevailing party in a litigation [and] a provision in an agreement allowing the recovery of attorneys' fees that are incidents of litigation should be strictly construed." (quoting *Horwitz v. 1025 Fifth Ave.*, Inc., 34 A.D.3d 248, 249, 825 N.Y.S.2d 5 [2006] [internal quotation marks and citation omitted]).

5

(e) such fees and expenses were incurred in enforcing such obligations and/or collecting such amounts. The Debtors submit that none of those requirements have been met.

12. The Motions were not filed to enforce any rights under the Lease, as there was no *enforceable* default at the time HVP2 filed the Motions (5 and 13 days following the Petition Date, respectively). Thus, at the time the Motions were filed, none of the purported attorneys' fees and expenses were (or could have been) incurred in enforcing defaulted obligations, the Debtors' performance under the Lease and/or lawfully collecting defaulted amounts.[8]

13. Moreover, HVP2 has not, thus far, "prevailed" in any suit, another requirement for attorneys' fees to be allowable under the Lease.

14. Accordingly, although the Lease does provide for a right to recover attorneys' fees under certain circumstances, those circumstances are not present here. As such, nothing in the Lease supports HVP2's position that it is entitled to payment of attorneys' fees as an administrative expense under section 365(d)(3) of the Bankruptcy Code.

15. Next, even assuming, *arguendo*, HVP2 could satisfy the conditions of the Lease that allow for such fees (it cannot), the Motions provide no detail as to the attorneys' fees sought in connection with these filings to allow the Court to determine which fees, if any, are compensable and their reasonableness. The Motions do nothing other than seek "attorney's fees in the current amount (without prejudice) of $32,168.90 as of the writing of the motion." *See* Motions, at ¶ 1.[9]

---

[8] As noted in the Omnibus Objection, HVP actually violated the automatic stay by demanding payment of pre-petition obligations in the Motions, *e.g.*, seeking the entirety of May rent and a late charge for May. *See* Omnibus Objection ¶ 12 and n. 4.

[9] Though legally insufficient under *Pelican Pool*, the Supplemental Certification did identify "detail of attorney fees" (in an amount far less that the $32,168.90 sought in the Motions). However, HVP2 withdrew the Supplemental Certification. *See* n. 2, above. Accordingly, there is nothing currently before the Court to assist in the Court's review of such fees.

16. In fact, the Motions are devoid of any time records to support the attorneys' fees enumerated in Motions and HVP2 has not submitted a certification to support the payment of attorney's fees, such as the novelty and difficulty involved in the work, the time and labor required, and the billing rate of the attorney. Indeed, the Motions lack *any* supporting detail with respect to the attorneys' fees that HVP2 asserts are payable by the Debtors.

17. HVP2's failure to adequately support the attorneys' fee claims with legal invoices and the requisite certification of counsel to support the amounts sought alone merits disallowance of any attorneys' fees. *Pelican Pool*, at *48.

18. As noted above, bankruptcy courts being asked to approve fees have "a duty to examine the reasonableness of all fees requested[.]" *Pac. Sea Farms, Inc.*, 134 B.R. at 16. Without the level of detail required to make that assessment, the Court simply cannot determine what fees, if any, are reasonable and, more importantly, what fees, if any, were incurred by HVP2 (i) in the "enforcement of its rights and . . . for the collection of any amounts for which the [the Debtor] may be in default or for the performance of any other covenant or agreement" (as required by Section 21.3 of the Lease), and (ii) in a suit in which HVP2 "prevailed" (as required by Section 21.3 of the Lease). Accordingly, even assuming HVP2's asserted attorneys' fees were incurred and compensable in accordance with the provision of the Lease authorizing such fees (they are not), the Court has no means to make that determination or determine if they were reasonable.

19. At no point during these chapter 11 cases were the Debtors in default under the Lease and there was no reason for HVP2 to incur any fees in connection with the enforcement of the Lease. Instead, HVP2 has chosen to repeatedly object to relief the Debtors have sought in the chapter 11 cases. *See*, *e.g.*, Docket Nos. 392, 588, 1014, 1755, 1776, 2269 and 2848. *See also*

7

Docket No. 391 (objecting to the composition of the official committee of unsecured creditors appointed by the United States Trustee).

20. If HVP2 wants to challenge the Debtors' rights under the Bankruptcy Code, as it has chosen to repeatedly do, that is its prerogative. But the Debtors are not required to bear the brunt of HVP2's litigiousness. The incurrence of such fees are not reasonable, and it is not reasonable to charge those fees to the Debtors' estates. *See In re Crown Books Corp.*, 269 B.R. 12, 17-18, 20 (Bankr. D. Del. 2001). *See also In re Ryan's Subs*, Inc., 165 B.R. 465, 467 (Bankr. W.D. Mo. 1994) (in denying a landlord's request for attorneys' fees the court held that "[i]f [the landlord] chooses to challenge [the] rights granted to the debtor by the Code, then [the landlord] must bear the risk of attorney's fees incurred by such action"); *In re Best Products Co., Inc.*, 148 B.R. 413, 414-15 (Bankr. S.D.N.Y. 1992) (where the court denied the landlord's request for attorneys' fees incurred in seeking to shorten the time within which the debtor must assume or reject the lease and then opposing the debtor's assumption of the lease, and concluded that the fees were not recoverable because they were not incurred in efforts to collect any delinquencies under the lease but in seeking to deny the debtor rights it had under the Bankruptcy Code); *In re Chateaugay Corp.*, 1993 WL 159969 (S.D.N.Y. May 10, 1993) ("The Court is doubtful that any contract provision entitling a creditor to be reimbursed for all attorneys' fees suffered in 'monitoring' a Chapter 11 case would be valid and enforceable but need not reach that issue to resolve this appeal.") (citing *Joshua Slocum, Ltd.,* 103 B.R. at 608). If anything, HVP2 should be forced to reimburse the Debtors the attorneys' fees they have been forced to incur as a result of having to respond to the Motions (should the Debtors prevail).

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

For the foregoing reasons, and all of the reasons previously set forth by the Debtors in the Objections, the Debtors respectfully request that the Court deny the Motions and grant the Debtors such other relief as is just and proper.

Dated: October 23, 2025

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*