**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEW RITE AID, LLC, *et al.*, | ) | Case No. 25-14861 (MBK) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 2260, 2497** |

**JOINT STIPULATION OF FACTS BY THE DEBTORS,**
**DOLLAR TREE STORES, INC., AND EQUITY ONE (COPPS HILL) LLC**

1. New Rite Aid, LLC ("Rite Aid" or "Debtor"), Dollar Tree Stores, Inc. ("Dollar Tree"), and Equity One (Copps Hill) LLC (the "Landlord") stipulate to the following undisputed facts for purposes of the Court's consideration of the *Notice of Assumption and Assignment of Certain of the Debtors' Leases to Dollar Tree Stores, Inc.* [Docket No. 2260] and *Objection of Equity One (Copps Hill) LLC to Notice of Assumption and Assignment of Certain of the Debtors' Leases to Dollar Tree Stores, Inc.* [Docket No. 2497].

**Rite Aid Lease Agreement**

2. The Landlord and Rite Aid (each through their predecessors in interest) are parties to a lease agreement dated August 30, 2001 (the "Rite Aid Lease Agreement"), for Rite Aid store number 10389 (the "Rite Aid Premises"), related to retail property located at Copps Hill Plaza, 125 Danbury Road, Ridgefield, CT (the "Shopping Center"). The Shopping Center is a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. On or about December

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

14, 2022, Rite Aid exercised its first renewal option to extend the Rite Aid Lease Agreement term to July 10, 2028. The Rite Aid Lease Agreement is currently in effect.

3. Section 1.C of the Rite Aid Lease Agreement states that the tenant "shall be permitted to use the Leased Premises for the operation of a typical drug store and/or evolution thereof, and/or for any other lawful purpose or purposes, including, but not limited to, an Express Photo and/or photo processing center, a postal substation or package mailing center, and an optical center for the practice of opticianry and optometry."

4. Section 1.C of the Rite Aid Lease Agreement further adds that "[n]otwithstanding the foregoing, Tenant shall not violate any use restriction as shown on Exhibit 'C', provided such use restrictions result from exclusives given to other tenants of the Shopping Center and such exclusives are in effect at the time Tenant wishes to change its use of the Leased Premises or such proposed use, or uses constitute a noxious use or are unsuitable for a first-class shopping center." Exhibit C of the Rite Aid Lease Agreement does not list the Michaels Prohibited Use Provision (as defined below).

5. Section 1.C of the Rite Aid Lease Agreement also states that the tenant "has the right to discontinue all or any part of its business operations (including, but not limited to, its pharmacy operations) at the Leased Premises at any time, at Tenant's sole discretion and without Landlord's approval or consent."

6. Section 15.A of the Rite Aid Lease Agreement states that Rite Aid has "the absolute right to assign [the Rite Aid Lease Agreement] or sublet the Leased Premises at any time to any drug store or affiliate of Tenant. Tenant shall not, without the written consent of Landlord, such consent not to be unreasonably withheld or delayed, sublease the Leased Premises or assign this

Lease for a non-drug store use, except to an affiliate of Tenant. Tenant shall give notice of any and all assignments and subleases to Landlord, together with a copy of the applicable instrument."

## Michaels Lease Agreement

7.      The Landlord and Michaels Stores, Inc. ("Michaels") are parties to a lease agreement dated on or about November 20, 2023 (the "Michaels Lease Agreement"), related to real property in the Shopping Center. The Michaels Lease Agreement is in effect.

8.      Section 16.5 "Prohibited Uses" (referencing Exhibit J) of the Michaels Lease Agreement prevents Landlord from leasing any portion of the Shopping Center for use as a "dollar store, including price point retailers (for example, but without limitation, Dollar Tree, Family Dollar, pOpshelf, Dollar General, Bill's Dollar Store, etc., but Five Below shall not be prohibited)" (the "Michaels Prohibited Use Provision"). *See* Michaels Lease Agreement, Exhibit J, #26.

9.      Section 16.5 of the Michaels Lease Agreement states that the Michaels Prohibited Use Provision "shall not apply to any lessee whose lease was fully executed on the Effective Date hereof and is identified on Exhibit I as an "Existing Lease Not Subject to Tenant's Exclusive or Prohibited Uses," provided that such exception shall not apply if "Landlord permits or agrees to an assignment or sublease of such existing lease if Landlord may avoid the granting of such permission." The Rite Aid Lease is identified on Exhibit I as an "Existing Lease Not Subject to Tenant's Exclusive or Prohibited Use."

10.     Section 16.5 of the Michaels Lease Agreement states that if the Michaels Prohibited Use Provision is violated, then Michaels would (a) be permitted to pursue any available remedy at law or in equity against Landlord and (b) explicitly have the right to (i) pay 25% reduced rent after sixty (60) days of the violation, (ii) pay 50% reduced rent after one-hundred and twenty (120) days

3

of the violation, and (iii) terminate the lease after one-hundred and eighty (180) days of the violation.

11. Section 16.5 of the Michaels Lease Agreement further provides "Landlord acknowledges that the restriction against the Prohibited Uses is a material inducement to Tenant's agreement to enter into this Lease and the enforcement of the Prohibited Uses is integral to the economic viability of the Shopping Center to Tenant."

## Stop & Shop Lease Agreement

12. The Landlord and The Stop & Shop Companies, Inc. ("Stop & Shop") are parties to a lease agreement dated on or about August 28, 1970 (as amended, modified, or supplemented, the "Stop & Shop Lease Agreement"), related to real property in the Shopping Center. The Stop & Shop Lease Agreement was amended and restated on October 26, 2001 (the "Amended and Restated Stop & Shop Lease Agreement"). The Stop & Shop Lease Agreement is in effect.

13. Section 9.2 of the Amended and Restated Stop & Shop Lease Agreement prohibits the Landlord from permitting the use or operation of any portion of the Shopping Center for certain prohibited uses listed therein.

14. Section 9.2(b) of the Amended and Restated Stop & Shop Lease Agreement provides that "Landlord shall not lease, use or permit to be used any other portion of or premises in the Shopping Center for the conduct of a Food Supermarket Business or for the sale of any food products for off-premises consumption, other than the incidental sale of such food products in not more than 500 sq. ft. of any retail store business." One exception to that rule is that "a variety store, a junior department store, or department store business may sell food items for off-premises consumption, provided, however, that not more than a total of 2,500 square feet of selling space, or (if less) a total of 10% of the total floor area of the premises used for such business, shall be

4

used for the sale (including display) and storage of food items." *See* Amended and Restated Stop & Shop Lease, § 9.2(b)(v).

*[Signature Page Follows]*

Dated: October 23, 2025  Respectfully Submitted,

*/s/ Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:  msirota@coleschotz.com
  wusatine@coleschotz.com
  fyudkin@coleschotz.com
  svanaalten@coleschotz.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:  arosenberg@paulweiss.com
  aeaton@paulweiss.com
  chopkins@paulweiss.com
  smitchell@paulweiss.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*/s/ Jennifer D. Raviele*
**KELLEY DRYE & WARREN LLP**
Robert L. LeHane
Jennifer D. Raviele (admitted *pro hac vice*)
Connie Y. Choe
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Email: rlehane@kelleydrye.com
  jraviele@kelleydrye.com
  cchoe@kelleydrye.com

-and-

7 Giralda Farms, Suite 340
Madison, NJ 07490
Telephone: (973) 503-5900

*Attorneys for Equity One (Copps Hill) LLC*

*/s/ Adam S. Ravin*
**LATHAM & WATKINS LLP**
Adam S. Ravin (NJ Bar No. 047591995)
Candace M. Arthur (*pro hac vice* pending)
Jonathan C. Gordon (*pro hac vice* pending)
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  adam.ravin@lw.com
  candace.arthur@lw.com
  jonathan.gordon@lw.com

*Co-Counsel to Dollar Tree Stores, Inc.*