YODER & LANGFORD, P.C.
Robert R. Yoder, Esq.
(*pro hac vice*)
8175 East Evans Road, #13598
Scottsdale, Arizona 85267
Phone: (602) 808-9578
Facsimile: (602) 468-0688
robert@yoderlangford.com

*Counsel to RWY Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In re:**<br><br>**NEW RITE AID, LLC,** *et al.***,**<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**SUPPLEMENTAL BRIEF IN SUPPORT OF RWY TRUST'S LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING DEBTOR'S REJECTION OF LEASE AND FAILURE TO PAY 365(d)(3) EXPENSES**
**(Related Docket Nos.: 2166, 2299, 2782, 2815)**

RWY Trust (the "**Landlord**" or "**RWY Trust**"), the owner and landlord of non-residential real property located at 500 East Lancaster Avenue, Shillington, Pennsylvania 19607 (the "**Property**"), designated as Store No. 290 by the Debtors on Schedule 1 of the Rejection Notice, by and through its attorneys, Yoder & Langford, P.C. and Lau & Associates, P.C., filed a Limited Objection and Reservation of Rights [Doc. No. 2299] in response to the *Debtor's Thirty-First Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Doc. No. 2166] (the

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number is 1843.

"**Rejection Notice**") on September 4, 2025.  Debtors filed an Omnibus response [Doc. No. 2782] on October 6, 2025 to a number of different objections by different landlords including those filed by the RWY Trust.  The RWY Trust then filed a Reply on October 9, 2025 (Doc. No. 2815] and oral argument was held on October 10, 2025.

At oral argument on October 10, 2025, the Court agreed to confirm the Lease rejection, but directed the parties to confer in good faith on Section 365(d)(3) expenses.  Following efforts to confer per the Court's direction, the RWY Trust now offers this supplemental brief and support as follows:

1. Debtor has taken the position that under Section 365(a), they are not obligated to timely pay additional post-petition expenses under the Lease, and that the RWY Trust's sole remedy is to file an administrative claim and/or seek unsecured rejection damages.

2. The RWY Trust contends that Debtor's reading of Section 365(a) is incorrect. During oral argument, the RWY Trust noted that the prefatory language to Section 365(a) expressly limits Debtor's authority "[e]xcept as provided…in subsections (b), (c), and (d)".  Subsection (d)(3), in turn, expressly requires that the Trustee "shall timely perform all the obligations of the debtor… until such lease is assumed or rejected, notwithstanding section 503(b)(1)…."

3. At oral argument, the RWY Trust also noted that nothing in Section 365(d)(3) limits the remedy for Debtor's failure to timely pay amounts due through the date of rejection to an "after the fact" administrative claim, and that the legislative history to Section 365(d)(3) makes it clear that the intent of the statute is to require "timely" payment of lease obligations through rejection. In this regard, we noted the following legislative history:

> In this situation, the Landlord is forced to provide current services – the use of its property, utilities, security, and other services – without current payment.  No other creditor is put in this position…. The bill would lessen these problems by requiring the Trustee to perform all obligations of the Debtor under a lease of non-residential

> real property <u>at the time required in the lease</u>. This <u>timely performance requirement</u> will ensure that Debtor-Tenants pay their rent, common area, and other charges <u>on time pending the Trustee's</u> assumption or <u>rejection</u> of the lease (emphasis added).

Senator Orrin Hatch, H.R. Rep. No.882, 95th, Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 576. If Debtors are permitted to limit Landlord rights to an administrative claim, for post-petition expenses through rejection, the intent of Section 365(d)(3) timely payment requirements would be averted. *See In re: Valley Media Company, Inc.* 290B.R.73, 77 (Bankr. D Del. 2003) ("§ 365(d)(3) can be read to say that aside from administrative expenses provided for in § 503(b)(1), § 365(d)(3) creates a new and different kind of "obligation" – one that does not necessarily rest on the administrative expenses concept").

5. The RWY Trust further noted at oral argument that the United States Bankruptcy Court, District of New Jersey, in an unpublished decision, *In Re: Jughandle Brewing Co.*, 23-15703 (June 3, 2024), offered a helpful analysis of Section 365(d) in concluding that the Courts have considerable discretion to craft remedies under Section 365(d) and need not rely on the administrative claims process as the sole remedy.

6. This Court directed the parties to engage in a dialogue in an effort to find common ground. Although Debtors' have expressed a willingness to continue their consideration of the matter, the process has not resulted to date in any offer by Rite Aid to pay any expenses under consideration.

7. Debtor has supported its position in part by incorrectly asserting that the RWY Trust failed to timely submit tax statements, and that Rite Aid has no course of conduct of paying certain expenses. Debtors specifically contended that "[p]er the Debtors' records, none of the tax bills were sent to the Debtors…" and "[a]ccording to the Debtors' records, the Debtors have not historically paid sewer taxes, nor have any related invoices been provided." (Per email from David

Bass, dated October 23, 2025). These contentions are clearly incorrect. In response, the RWY Trust presented over two years of correspondence with notices and bills, and is hopeful that Rite Aid will reconsider (per email from David Bass, dated October 24, 2025, Rite Aid will further review and reconsider what they believe is due). The RWY Trust can be prepared, if necessary, to present several decades of documented notice and payment history. Attached as **EXHIBIT A** is a small sample of such notices and statements over the past two plus years.

8. While we respect Rite Aid's willingness to reconsider their incorrect factual assertion that the RWY Trust failed to provide timely notice and bills, we have been provided no indication of their willingness to resolve this matter short of a decision by the Court, based on legal arguments they continue to assert.

9. In this regard, the RWY Trust contends that in addition to the payment of taxes and assessments, Debtors also had a duty under the Lease to leave the property in good repair. This duty was breached on August 31, 2025 (post-petition) when Rite Aid elected to disregard this duty. Attached as **EXHIBIT B** are pictures clearly showing Rite Aid's breach in this regard.

10. Per Lease Article 39, each of the above expenses is expressly characterized as additional rents and should be paid under Section 365(d)(3). Attached as **EXHIBIT C** are excerpts from the Lease.

11. At this time, the RWY Trust respectfully requests that the Court require Debtors to pay all Section 365(d)(3) expenses referred to herein, subject to final amounts to be determined between the parties (or the Court if an agreement cannot be reached in 30 days) through the exchange of up-to-date billing statements and repair estimates.

4

Date: October 24, 2025.

Respectfully submitted,

                                  YODER & LANGFORD, P.C.

                                  */s/ Robert R. Yoder*
                                  Robert R. Yoder
                                  *Pro Hac Vice*
                                  Attorneys for RWY Trust