| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>       Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

### NOTICE OF DEBTORS' THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY AND THRIFT DRUG, INC. FIVE BELOW ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

> **PARTIES RECEIVING THIS NOTICE SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES ON <u>SCHEDULE 3</u> ATTACHED HERETO AND READ THE CONTENTS OF THIS NOTICE CAREFULLY.**

  **PLEASE TAKE NOTICE** that, on June 11, 2025, the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "<u>Sale Procedures Order</u>"), attached hereto as <u>Schedule 1</u>, by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction for the sale of certain unexpired leases of nonresidential real property (each, a "<u>Lease</u>"), in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>").

  **PLEASE TAKE FURTHER NOTICE** that, on September 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and*

---

[1]  The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

*Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief* [Docket No. 2257] (the "Sale Order"),[2] attached hereto as Schedule 2.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, the Sale Order, and this written notice (this "Assumption Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Lease set forth on Schedule 3 attached hereto is hereby assumed and assigned, as applicable, effective as of the date of entry of the Assumption and Assignment Order, or such other date as the Debtors, any Assignee, and the applicable assumption counterparties agree (the "Assumption Date"), which projected date is set forth in Schedule 3.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, attached hereto as Exhibit B to the Sale Order is the Designation Rights Agreement between the Debtors and the Buyer (who has designated the Assignee) for those Leases set forth on Schedule 3.

**PLEASE TAKE FURTHER NOTICE** that the Assignee has the financial wherewithal to meet all future obligations under the Lease, and the Debtors will serve evidence of adequate assurance of future performance with this Assumption Notice demonstrating that the Assignee, as applicable, has the ability to comply with the requirements of adequate assurance of future performance.[3]

**PLEASE TAKE FURTHER NOTICE** that parties seeking to object to the proposed assumption and assignment of any of the Leases must file and serve a written objection so that

---

[2]   Capitalized terms otherwise undefined herein shall have the meanings ascribed to them in the Sale Order.

[3]   The Debtors will provide evidence of adequate assurance of future performance with the Assumption Notice by overnight delivery upon the Assumption Counterparty affected by the Assumption Notice at the address set forth in the notice provision of the applicable Unexpired Lease (and upon the Assumption Counterparty's counsel, if known, by electronic mail).

such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is actually received by the following parties no later than 14 days after the date that the Debtors served this Notice: (i) the Objection Notice Parties (as defined in the Sale Procedures Order); (ii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102; and (iii) counsel to Five Below, Inc., Jones Day, 901 Lakeside Avenue, Cleveland, OH 44114, Attn: Heather Lennox and T. Daniel Reynolds.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Sale Procedures Order, if no objection is filed and served in accordance with the above procedures, the Debtors will include and file with the Court a list of the above-described Lease(s) in an assumption schedule attached to the proposed form of order under a certificate of no objection, substantially in the form attached hereto as Schedule 4 (the "Assumption Order").[4]

**PLEASE TAKE FURTHER NOTICE** that the proposed cure amount under the Lease is set forth in Schedule 3.  If a written objection to the proposed cure amount is not timely filed, then the cure amount shall be binding on all parties and no amount in excess thereof shall be paid for cure purposes.

**PLEASE TAKE FURTHER NOTICE** that, if an objection to the assumption and assignment of any Lease is timely filed and not withdrawn or resolved, the Debtors shall file a notice for a hearing to consider the objection for the Lease(s) to which such objection relates. If such objection is overruled or withdrawn, such Lease(s) shall be assumed or assumed and assigned as of the applicable Assumption Date.

---

[4]  An objection to the assumption and/or assignment of any particular Lease or cure amount listed in this Assumption Notice shall not constitute an objection to the assumption and/or assignment of any other lease listed in this Assumption Notice. Any objection to the assumption and/or assignment of any particular Lease listed in this Assumption Notice must state with specificity the Lease to which it is directed. For each particular Lease whose assumption and/or assignment is not timely or properly objected to, such assumption and/or assignment will be effective in accordance with this Assumption Notice and the Sale Procedures Order.

October 28, 2025

Respectfully submitted,

By: */s/ Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**Schedule 1**

**Sale Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Order Filed on June 11, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

NEW RITE AID, LLC, *et al.*,

                                    Debtors.[1]

Chapter 11

Case No. 25-14861 (MBK) (Jointly Administered)

## FINAL ORDER (I) ESTABLISHING PROCEDURES FOR THE SALE OF CERTAIN LEASES AND FEE OWNED PROPERTIES, AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through and including twenty-three (23), is **ORDERED**.

**DATED: June 11, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Upon the motion (the "<u>Motion</u>"),[1] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Final Order</u>"): (a) establishing procedures authorizing, but not directing, the Debtors to (i) sell or transfer certain unexpired leases of non-residential real property (each, a "<u>Lease</u>"), including with any related ancillary agreement thereto or through the sale of designation rights related thereto, by public auction (each, an "<u>Auction</u>"), pursuant to the procedures attached hereto as **Schedule 1** (the "<u>Auction Procedures</u>"), and (ii) sell or transfer certain owned real estate (each, a "<u>Fee Owned Property</u>") through an Auction pursuant to the Auction Procedures; (b) approving the form and manner of notices with respect to the Auction of Leases, substantially in the form attached hereto as **Schedule 2-A**, and Auction of Fee Owned Property, substantially in the form attached hereto as **Schedule 2-B**; (c) approving the form and manner of notice with respect to hearings for approval of the sale of a Leases (a "<u>Sale Hearing</u>"), or, in the absence of a hearing (including with respect to a Fee Owned Property), the date on which an order approving a sale will be entered substantially in the form attached hereto as **Schedule 3-A**, and sale of Fee Owned Property, substantially in the form attached hereto as **Schedule 3-B**; (d) approving procedures, attached hereto as **Schedule 4**, for the assumption and assignment of a Lease (the "<u>Assumption and Assignment Notice</u>"); and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the*

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] or the Auction Procedures, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

*Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, the First Day Declaration, and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.       The Motion is **GRANTED**, on a final basis, as set forth herein.

2.       All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**A.       Auction Procedures**

3.       The Auction Procedures, substantially in the form attached hereto as **Schedule 1**, are incorporated herein and are hereby approved in their entirety, and the Auction Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed sale or Auction of a Real Property Asset.  Any party desiring to submit a Bid shall comply with the Auction Procedures and this Final Order.  The Debtors are authorized to take any and all actions necessary to implement the Auction Procedures.  Subject to the terms of the Auction Procedures, the Debtors,

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

in consultation with the Consultation Parties,[2] may modify the Auction Procedures as necessary or appropriate to maximize value for their estates.[3]

4. Any deposit provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Auction Procedures, or order of this Court, as applicable.

5. If the Debtors do not receive a Qualified Bid as to a particular Real Property Asset by the applicable Bid Deadline, at the Debtors' discretion and in consultation with the Consultation Parties, the Auction may be cancelled or adjourned as to such asset. Debtors shall provide notice of such cancellation or adjournment promptly to counsel to the Consultation Parties, the Qualified Bidders, the applicable Lease Counterparties, if any, and such Lease Counterparties' counsel if known or identifiable from the applicable Lease, and, as soon as reasonably practicable, to post such notice on the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/RiteAid2025. If the Debtors receive one or more Qualified Bids,

---

[2] "Consultation Parties" shall mean (a)(i) the Prepetition ABL Agent and (ii) the Bank of America, N.A., as administrative agent and collateral agent under the DIP Facility (the "DIP Agent," and together with the Prepetition ABL Agent, the "Agents"), and any of their respective designees, and (b) the Committee (as defined herein); *provided, however*, that to the extent any Agent submits a Bid for any Real Property Assets, such Agent shall not be a Consultation Party with respect to the evaluation and qualification of any competing Bids for any Real Property Asset included in such Agent's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes, as set forth in the Auction Procedures.

[3] For the avoidance of doubt, the Debtors also anticipate that some of their Leases and Fee Owned Properties may be sold pursuant to either private sales conducted outside of the Auction Procedures process or the Sales Procedures. Nothing in this Final Order limits the Debtors' ability to include any Lease or Fee Owned Property (a) in any private sale or any sale process conducted pursuant to the Sales Procedures, or (b) not sold pursuant to sale processes conducted pursuant to the Sales Procedures in a subsequent Auction process conducted pursuant to the Auction Procedures.

(Page | 6)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

the Debtors will file a Notice of Qualified Bids on the docket and may conduct the Auction in accordance with the Auction Procedures.

6.      At the Auction, each Qualified Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to credit bid all or a portion of the value of the secured portion of its claims, if any, within the meaning of section 363(k) of the Bankruptcy Code. With respect to the applicable proposed cure amount, if any, for each Lease (the "Cure Cost"), each counterparty to a Lease (each, a "Lease Counterparty") proposed to be sold or transferred at an Auction may credit bid all or a portion of the applicable Cure Cost proposed by such Lease Counterparty; *provided that,* in no circumstances may a Lease Counterparty credit bid an amount that exceeds the total allowable claim that such Lease Counterparty is owed. If such Lease Counterparty is the Successful Bidder on the applicable Lease, and it is later determined by this Court or agreement by and among the Debtors and such Lease Counterparty that the actual cure amount is a lesser amount, then the Lease Counterparty shall pay the difference in cash prior to the Closing Deadline. For the avoidance of doubt, any Lease Counterparty bidding on the Lease to which it is a counterparty shall be deemed a Qualified Bidder.

7.      The Auction(s), if any, will be held at the offices of the proposed co-counsel to the Debtors Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 or by videoconference or such other form of remote communication established by the Debtors, in consultation with the Consultation Parties. The Auction will be conducted on the date and at the time listed in the applicable Auction and Hearing Notice. Except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors,

(Page | 7)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Consultation Parties, U.S. Trustee, applicable Lease Counterparties (if any), Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. The Debtors shall send written notice (email being sufficient) of the date, time, and place of any Auction to the Consultation Parties, the U.S. Trustee, the relevant Lease Counterparties (if any), and the Qualified Bidders by no later than seven (7) calendar days before such Auction, and will post notice of the date, time, and place of such Auction no later than seven (7) calendar days before such Auction on the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/RiteAid2025. The Debtors, in consultation with the Consultation Parties, may (a) cancel any Auction, or modify the date, time, and place of any Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors or (b) amend or rescind the proposed list of Real Property Assets contained in an Auction and Hearing Notice (including by withdrawing any Real Property Asset from the Auction), by in each case of (a) and (b) hereof, (i) providing written notice (email being sufficient) to the Consultation Parties, the U.S. Trustee, the applicable Lease Counterparties, and the Qualified Bidders, or, in each case, their counsel, and (ii) posting a notice on the website of the Debtors' Notice and Claims Agent at https://restructuring.ra.kroll.com/RiteAid2025; *provided, however*, that to the extent the Debtors amend the proposed list of Real Property Assets contained in an Auction and Hearing Notice to add a Real Property Asset to such list, the Objection Deadlines (as defined below) applicable to the sale of such asset shall apply as of the date of the filing of the amended Auction and Hearing

(Page | 8)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Notice.  For the avoidance of doubt, the Debtors may also conduct multiple Auctions with respect to non-overlapping portions of the Real Property Assets.

8.    At or following an Auction, the Debtors may, in consultation with the Consultation Parties:  (a) select, in their business judgment, pursuant to the Auction Procedures, (i) the highest or otherwise best Qualified Bid as the Successful Bid and (ii) the second highest or otherwise second best Qualified Bid as the Backup Bid, and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in such Debtor's business judgment, is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Auction Procedures, or (iii) contrary to, or otherwise not in the best interests of, the Debtors' estates, affected stakeholders, or other parties in interest, in each case subject to and in accordance with the Auction Procedures.  For the avoidance of doubt, no Debtor is required to name a Successful Bidder for any given Real Property Asset or group thereof and such Debtor may elect to not sell such asset(s) to the highest or otherwise best bidder.

9.    In the event the Successful Bidder does not close the sale of any given Real Property Asset, within three (3) calendar days thereafter, the Debtors shall file a supplemental notice (the "Supplemental Notice of Backup Bidder") seeking to approve the sale of the applicable asset to the Backup Bidder on expedited notice and requesting a hearing as soon as reasonably practicable for the parties and the Court.  The Backup Bidder, as identified by the applicable Notice of Successful and Backup Bidders, shall not be approved at the Sale Hearing.  If the Debtors submit a Supplemental Notice of a Backup Bidder in connection with the sale of a Lease, the deadline to assume or reject the applicable Lease shall be tolled until the applicable hearing.

(Page | 9)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

### B. Stalking Horse Bidders and Bid Protections

10.     Upon entry of this Final Order, the Debtors shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment and in consultation with the Consultation Parties, to select one or more Stalking Horse Bidders with respect to some or all of the Real Property Assets, by no later than the deadline set forth in the applicable Auction and Hearing Notice, and enter into a Stalking Horse Agreement, and to provide such Stalking Horse Bidders with Stalking Horse Bid Protections, subject to paragraphs 12 and 13 below.  The Debtors, in consultation with the Consultation Parties, shall be permitted to choose a Stalking Horse Bidder through and including twenty-four (24) hours prior to an Auction.  However, to the extent such Stalking Horse Bidder seeks any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the applicable Real Property Asset, a Stalking Horse Agreement shall be entered into and paragraphs 12 and 13 herein continue to apply.

11.     With respect to a Lease sale, no person or entity, other than any Stalking Horse Bidder that has not submitted a Credit Bid, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Lease(s), and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

12.     In the event that the Debtors enter into a Stalking Horse Agreement with one or more Stalking Horse Bidders, within three (3) calendar days of entry into such agreement, the Debtors shall file a notice and proposed form of sale order with the Court (the "Stalking Horse

(Page | 10)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Notice") and serve the Stalking Horse Notice on the master service list maintained in these cases and on the Lease Counterparties (and their counsel, if known) for any Lease asset(s) included in the Stalking Horse Bid at the notice address provided in the applicable Lease.  The Stalking Horse Notice shall:  (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth a summary of the Stalking Horse Agreement; (c) set forth the amount of the Stalking Horse Bid and what potion (if any) is cash; (d) specify any proposed expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Real Property Asset(s) (including the amount and calculation thereof); (e) specify the Real Property Asset(s) included in the Stalking Horse Bid; (f) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (g) attach a copy of applicable Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (h) set forth the deadline to object to the Stalking Horse Bidder designation and/or any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of the Real Property Asset.  If there are no objections to the Stalking Horse Notice within seven (7) calendar days of filing with the Court, (the "Stalking Horse Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Stalking Horse Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing.  If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Stalking Horse Notice Period and as soon thereafter as the Court is available.

Debtors:                    NEW RITE AID, LLC, *et al.*
Case No.                    25-14861 (MBK)
Caption of Order:           Final Order (I) Establishing Procedures for the Sale of Certain Leases and
                            Fee Owned Properties, and (II) Granting Related Relief

13.      The Debtors shall seek approval of any Breakup Fees, or other similar fee or payment on account of the Real Property Asset(s) and any other bid protections such as an expense reimbursement, at the applicable Sale Hearing, *provided* that, for the avoidance of doubt, the amount of the Breakup Fee shall not exceed three percent (3.00%) of any proposed purchase price from the Stalking Horse Bidder; *provided*, *further* that the Debtors may only select one Stalking Horse Bidder per Real Property Asset.

**C.      Notice of Sale, Auction, and Sale Hearing**

14.      The Debtors may utilize the Auction Procedures for future Auctions by filing with the Court either a (a) Lease Auction and Hearing Notice, substantially in the form attached hereto as **Schedule 2-A**, or (b) Fee Owned Property Auction and Hearing Notice, substantially in the form attached hereto as **Schedule 2-B**, and serving such Auction and Hearing Notice on the following parties:  (a) the office of the United States Trustee for the District of New Jersey; (b) the Official Committee of Unsecured Creditors (the "Committee"); (c) the Prepetition ABL Agent and counsel thereto; (d) the DIP Agent and counsel thereto; (e) the trustees for the Senior Secured Notes and counsel thereto; (f) the United States Attorney's Office for the District of New Jersey; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the applicable Lease Counterparties at the notice address provided in the applicable Lease (and their counsel, if known); (j) co-counsel to McKesson Corporation, (i) McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, 2nd Floor, Roseland, New Jersey 07068 (Attn: Anthony Sodono (asodono@msbnj.com), and Michele Dudas (mdudas@msnbj.com)) and (ii) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603

(Page | 12)

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

(Attn: Dennis M. Twomey (dtwomey@sidley.com)), and Buchalter P.C., 18400 Von Karman Avenue, Suite 800, Irvine, CA 92612-0514 (Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com)); and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Auction Notice Parties").

15.     The Auction and Hearing Notice shall contain, as applicable under the Auction Procedures:  (a) all relevant dates and times, including those related to (i) when all Bids must be actually received (the "Bid Deadline"), (ii) when the relevant Auction will occur, (iii) when the Notice of Successful and Backup Bidder(s) must be filed with the Court, (iv) the deadline by which a party must file and serve objections, and (v) when the Court will hear the applicable Sale Hearing; (b) details regarding the Qualified Bids; (c) notice of the Closing Deadline; (d) a list of the Leases or Fee Owned Real Properties proposed to be sold at the Auction; and (e) a copy of the Auction Procedures approved herein.

16.     If, following the Auction Objection Deadline, there are any changes to the dates included in the Auction and Hearing Notice, then as soon as reasonably practicable following the Auction Objection Deadline, the Debtors will file and serve on the Objection Notice Parties and each applicable Lease Counterparty (and its counsel, if known) an amended Auction and Hearing Notice; *provided that,* the dates for the Auction and the Sale Hearing in the amended Auction and Hearing Notice shall not be any earlier than those provided in the original Auction and Hearing Notice.  The Auction and Hearing Notice will indicate that copies of the Bidding Procedures Order and any future sale documents, if applicable, can be obtained on the Case Website.

(Page | 13)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

17.     The Debtors shall file and serve by first-class mail (and email, where available) any Auction and Hearing Notice at least twenty-one (21) calendar days prior to the proposed Sale Hearing on the Auction Notice Parties.  Such notice is deemed sufficient and proper notice with respect to known interested parties.

18.     Pursuant to Local Rule 6004-2(c)(2):  (a) each bidder participating at an Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale of any Real Property Assets, as set forth in the Auction Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be documented, recorded, or videotaped.

19.     After the conclusion of an Auction, and within one (1) calendar day thereafter, the Debtors will file on the docket and serve on the Objection Notice Parties, the applicable Successful Bidder(s) and Backup Bidder(s), if known, and, if applicable, any Lease Counterparties (and their counsel, if known), a notice identifying the Successful Bidder(s) and Backup Bidder(s) (the "Notice of Successful and Backup Bidders"), substantially in the form attached to this Final Order as **Schedule 3-A** (for Lease sales) or **Schedule 3- B** (for Fee Owned Property sales), identifying, the Successful Bidder(s), the Real Property Asset(s) sold, the key terms of the applicable sale(s) or transfer agreement(s), the Backup Bidder(s), and, for Lease sales, the Assumption and Assignment Information and a proposed form of Assumption Order.

20.     Objections or responses to the approval of any Auction or the proposed sale of any Real Property Asset at such Auction (a "General Auction Objection") must be (a) filed with the Court and (b) served on the Objection Notice Parties so as to actually be received by **no later than 5:00 p.m.** (prevailing Eastern Time) on the date that is seven (7) calendar days after the Debtors

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

file the applicable Auction and Hearing Notice (the "<u>General Objection Deadline</u>").  Objections or responses to the approval of any Successful Bidder(s), the Backup Bidder(s), the key terms of any applicable sale(s) or transfer agreement(s) of such Successful Bidder(s) or Backup Bidders, or the assignment of a Lease to a Successful Bidder (including any Objections related to Cure Costs and adequate assurance of future performance)[4] (each, a "<u>Specific Auction Objection</u>" and together with a General Auction Objection, an "<u>Objection</u>") must be filed no later than fourteen (14) calendar days after the Notice of Successful and Backup Bidders is filed (the "<u>Specific Objection Deadline</u>" and together with the General Objection Deadline, the "<u>Objection Deadline</u>").[5]  Specific Auction Objections may not raise objections that could have been raised in a General Auction Objection.  In the event that no Objection is timely received by the applicable Objection Deadline, the Court may enter final orders authorizing the proposed sale of any Real Property Asset(s) to which there was no Objection without further notice or a hearing.

### D.    Assumption and Assignment Procedures

21.    The procedures set forth below regarding the assumption and assignment of the Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder(s), if any, pursuant to section 364(f) of the Bankruptcy Code in connection with the sale of a Lease are hereby approved to the extent set forth herein.

---

[4]    For the avoidance of doubt, the Debtors, proposed Assignee, and applicable Lease Counterparty may otherwise mutually agree to shorten the Specific Auction Objection Deadline for Objections to the assignment of a Lease to a Successful Bidder (including for Objections related to Cure Costs or adequate assurance of future performance).

[5]    The Debtors may, in their discretion and in consultation with the Consultation Parties, file a Notice of Auction and Hearing consolidating the General Objection Deadline with the Specific Objection Deadline, thereby setting a single Objection Deadline, which shall be no earlier than twenty-one (21) calendar days after the Notice of Auction and Hearing is filed, by which a party must file an Objection (if any).

(Page | 15)

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

22.    The assumption and assignment procedures set forth below are hereby approved and shall be the procedures by which the Debtors will notify the Lease Counterparties of Cure Costs.

(a)    **Service of Notice of Successful and Backup Bidders**.  The Debtors will cause the Notice of Successful and Backup Bidders to be served (a) by email or overnight mail upon the Lease Counterparties listed on the Notice of Successful and Backup Bidders (and their counsel, if known, by email) at the address set forth in the notice provision of the applicable Lease and (b) by email or first-class mail upon the Objection Notice Parties, as such term is defined in subparagraph (c) below.

(b)    **Service of Adequate Assurance Package**.  The Debtors will provide by email or overnight delivery to the applicable Lease Counterparty (and their counsel, if known, by email), within twenty-four (24) hours of the Auction, evidence that the Assignee has the ability to comply with the requirements of adequate assurance of future performance required under sections 365(b)(1) or 365(b)(3) of the Bankruptcy Code, as applicable, including audited and unaudited financial statements, tax returns, bank account statements, and a description of the proposed business to be conducted at the premises and/or any other documentation that the Debtors further request (the "Adequate Assurance Package");[6] *provided that,* Lease Counterparties shall not be required to provide adequate assurance of future performance with respect to their Bid on any Lease such Lease Counterparty owns.

(c)    **Filing and Service of Objections**.  Parties objecting to the proposed sale, assumption and assignment of a Lease, a Successful Bidder's proposed form of adequate assurance of future performance, and/or Cure Costs must file an Objection, so that such Objection is filed with the Court by no later than

---

[6]    The Adequate Assurance Package may (but is not required to) include (a) the proposed assignee's specific name (and the name under which the proposed assignee intends to operate the premises), the proposed assignee's and any guarantor's business plans (which shall disclose the intended use of the leased premises and a description of the proposed business to be conducted at the premises), including sales and cash flow projections; (b) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of the Lease; (c) audited or unaudited financial statements, tax returns, bank account statements, or annual reports; (d) any financial projections, calculations, and/or financing pro formas prepared in contemplation of purchasing each Lease; (e) any documents regarding the proposed assignee's and any guarantor's experience in operating retail stores (including the number of retail stores the proposed assignee and any guarantor operates and the trade names used); (f) any additional evidence of the proposed assignee's financial wherewithal, including available cash and any debt or equity commitments or other forms of liquidity post-closing; and (g) any other documentation that the Debtors may further request.

| (Page \| 16) | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

5:00 p.m. (prevailing Eastern Time) on the date set forth in the applicable Lease Auction and Hearing Notice (which shall be no sooner than fourteen (14) calendar days from the filing of the Notice of Successful and Backup Bidders) and serve such Objection on the following parties (collectively, the "Objection Notice Parties"):  (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn:  Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Sean Mitchell (smitchell@paulweiss.com)) and (ii) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn:  Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn:  Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn:  John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) proposed co-counsel to the Committee, (i) Willkie Farr & Gallagher LLP 787 Seventh Avenue, New York, NY 10019-6099 (Attn: Brett H. Miller (bmiller@willkie.com), Todd M. Goren (tgoren@willkie.com), James H. Burbage (jburbage@willkie.com), and Jessica D. Graber (jgraber@willkie.com), and (ii) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102 (Attn: Andrew H. Sherman (asherman@sillscummis.com), Boris Mankovetskiy (bmankovetskiy@sillscummis.com), and Gregory Kopacz (gkopacz@sillscummis.com)); (e) any affected Lease Counterparty or their known counsel; (f) the applicable Successful Bidder(s) and Backup Bidder(s), if known; and (g) co-counsel to McKesson Corporation, (i) McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, 2nd Floor, Roseland, New Jersey 07068 (Attn: Anthony Sodono (asodono@msbnj.com), and Michele Dudas (mdudas@msnbj.com)) and (ii) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603 (Attn: Dennis M. Twomey (dtwomey@sidley.com)), and Buchalter P.C., 18400 Von Karman Avenue, Suite 800, Irvine, CA 92612-0514 (Attn: Jeffrey K. Garfinkle (jgarfinkle@buchalter.com)).

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

(d) **No Objection**. If no Objection is filed timely by the applicable Objection Deadline, the Court may enter an order approving the assumption or assumption and assignment of such Lease (an "<u>Assumption Order</u>") with no further hearing.

(e) **Consequences of Failing to Timely File Objection**. If a Lease Counterparty does not file and serve an Objection in a manner that is consistent with the requirements set forth herein, and, absent a subsequent order of the Court in connection with such Objection establishing alternative Cure Costs or an agreement between the Debtors and the applicable Lease Counterparty resolving such Objection, (a) the Cure Costs, if any, set forth in the applicable Notice of Successful and Backup Bidders shall be controlling, notwithstanding anything to the contrary in any assigned Lease or any other document, and (b) the Lease Counterparty will be deemed to have consented to the assumption and assignment of the assigned Lease and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such assigned Lease against the Debtors, the Successful Bidder, and the Assignee or the property of any of them. For the avoidance of doubt, no Lease shall be deemed assumed or assumed and assigned absent entry of an Assumption Order in respect of that Lease.

(f) **Objection Timely Filed**. If an Objection is timely filed and served by the applicable Objection Deadline, the Debtors may schedule a Sale Hearing no earlier than seven (7) days after the Specific Objection Deadline, unless otherwise agreed to by the Debtors and the objecting party and upon consultation with the Consultation Parties. Notwithstanding anything herein to the contrary, the Debtors reserve the right to (i) determine, in their discretion and in consultation with the Consultation Parties, whether to proceed with the sale of any Lease at any time prior to the entry of an Assumption Order for such Lease, and (ii) adjourn, reschedule, or cancel any Sale Hearing, in consultation with the Consultation Parties, and upon filing of a notice of such adjourned, rescheduled, or cancelled Sale Hearing with the Court.

(g) **Miscellaneous**. The inclusion of an assigned Lease on the Notice of Successful and Backup Bidders will not: (a) obligate the Debtors to assume and assign any Lease listed thereon or the Successful Bidder to take assignment of such assumed Lease; or (b) constitute any admission or agreement of the Debtors that such assigned Lease is an unexpired lease for non-residential real property. Only those assumed Leases that are included on a schedule of assumed and acquired contracts attached to a final Assumption and Assignment Agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such Assumption and Assignment Agreement) will be assumed and assigned to the applicable Successful Bidder. No assigned

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Leases shall be assumed absent closing on the assignment thereof to the applicable Successful Bidder and entry of an Assumption Order, unless otherwise agreed to by the Debtors, the Successful Bidder, and the applicable Lease Counterparty.

### E.    Fee Owned Property Sale Notification Procedures

23.    The procedures set forth below for the sale of the Debtors' Fee Owned Properties are hereby approved and shall be the procedures by which the Debtors will notify the parties in interest of the sale of such assets.

(a) **Service of Notice of Successful and Backup Bidders**.  The Debtors will cause the Notice of Successful and Backup Bidders to be served by email or first-class mail upon the Objection Notice Parties.

(b) **Filing and Service of Fee Owned Property Sale Objection**.  Parties objecting to the proposed sale of a Fee Owned Property must file an Objection by the Objection Deadline set forth in the applicable Fee Owned Property Auction and Hearing Notice and serve such objection on the Objection Notice Parties.

(c) **No Fee Owned Property Sale Objection**.  If no Objection to the proposed sale of a Fee Owned Property is timely filed, each such sale shall be closed as of the applicable Closing Date set forth in the applicable Notice of Successful and Backup Bidders or such other date as the Debtors, in consultation with the Consultation Parties, and the applicable purchaser agree.

(d) **Consequences of Failing to Timely File Fee Owned Property Sale Objection**.  If a party in interest does not file and serve an Objection in a manner that is consistent with the requirements set forth herein and, absent a subsequent order of the Court in connection with such Fee Owned Property Sale Objection or an agreement between the Debtors and the applicable party in interest resolving such objection, the party in interest will be deemed to have consented to the sale of the applicable Fee Owned Property, and will be forever barred from asserting any other claims related to such Fee Owned Property against the Debtors, the Successful Bidder, and the purchaser or the property of any of them.

(Page | 19)

| Debtors: | NEW RITE AID, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

### F.    Miscellaneous

24.    The failure to include or reference a particular provision of the Auction Procedures in this Final Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Auction Procedures.

25.    The Court, at the request of the Debtors (in consultation with the Consultation Parties) and subject to the Court's availability, may modify the dates of and adjourn any hearing set pursuant to this Final Order without further order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

26.    The Debtors, in consultation with the Consultation Parties, may modify any of the deadlines set forth herein or provide for additional deadlines, *provided* that the Debtors will disclose all applicable deadlines in the applicable Auction and Hearing Notice.

27.    All Bids shall be irrevocable.  If any Successful Bidder or Backup Bidder seeks to revoke its Bid for any reason or otherwise does not cooperate with the Debtors to seek approval of the Bid, then the Debtors shall be entitled to retain such bidder's deposit and pursue all contractual remedies against such bidder under law and equity.

28.    The Debtors may, in consultation with the Consultation Parties, modify any deposit, as necessary or appropriate, based on the Real Property Asset(s) being sold.

29.    The Debtors are authorized to establish one more or escrow accounts to accept deposits from Qualified Bidders and may pay any reasonable fees related to such account.  For the avoidance of doubt, the Debtors are authorized to enter into an escrow account agreement with Kroll Restructuring Administration LLC ("Kroll"), pursuant to which Kroll will act as the Debtors'

(Page | 20)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

third-party escrow agent for any Escrow Accounts established thereunder, and to pay the reasonable fees incurred in connection with such agreement. Any deposits made by Qualified Bidders into any Escrow Account shall not be property of the Debtors.

30. Except to the extent deemed unenforceable under the Bankruptcy Code by this Court at the Sale Hearing, or subsequent hearing, as applicable, all provisions of the applicable assigned Lease, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such Lease by the Debtors to the Assignee.

31. The Assignee, or Debtors, pursuant to the applicable agreement, shall assume and cure all outstanding liabilities with respect to each assigned Lease, including, but not limited to, accrued but unbilled amounts or adjustments related to common area maintenance, real estate taxes, and insurance. All parties reserve all rights with respect to the extent other obligations are assumed.

32. With regard to Leases to be assigned or Fee Owned Properties to be sold, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, such assignment or sale or transfer shall (a) be free and clear of (i) all interests including, but not limited to, any liens, claims, rights, interests, charges, or encumbrances, except with respect to any interests related to reciprocal easement agreements or that may be assumed liabilities under a Successful Bidder's Assumption and Assignment Agreement or Purchase Agreement (as applicable) (collectively, the "Interests") and any Interests shall attach to the proceeds in the same order and priority, as applicable, and subject to all existing defenses, claims, setoffs, and rights and (ii) any and all claims (as that term

(Page | 21)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Lease(s) (but only in connection with the assignment by the Debtor to the Assignee), *provided* that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a lease of non-residential real property, including adjustments, reconciliations, and indemnity obligations, liability for which shall be assumed or assumed and assigned by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the applicable Assignee or (B) in respect of any taxes), and (b) constitute a legal, valid, and effective transfer of such Lease(s) or Fee Owned Properties and vest the applicable Assignee or purchase with all rights, titles, and interests to the applicable Real Property Asset.

33.     Nothing in this Final Order shall prohibit the Debtors, in consultation with the Consultation Parties, from (a) removing any Real Property Asset from any Auction at any time, (b) adding any Real Property Asset to any Auction pursuant to the notice requirements included in this Final Order and the Auction Procedures,[7] or (c) selling any Real Property Asset pursuant to any other motion or order entered by this Court, including, for the avoidance of doubt, the Bidding

---

[7]     To the extent the Debtors add a Real Property Asset to the proposed list of Real Property Assets contained in an amended Auction and Hearing Notice, the Objection Deadlines applicable to the sale of such asset shall apply as of the date of the filing of the amended Auction and Hearing Notice.

(Page | 22)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

Procedures Motion.  The Debtors' right to seek authority to sell any Lease or Fee Owned Property pursuant to a separate process or separate order of this Court is reserved.

34.    In connection with any sale, the Debtors reserve their rights to seek to render unenforceable any right of first refusal over the sale of any Lease, pursuant to section 365(f) of the Bankruptcy Code.

35.    Notwithstanding anything to the contrary in the Interim Order, this Order or the Auction Procedures, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors,  and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator.

36.    The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion or otherwise deemed waived.

37.    In the event of any inconsistencies between this Final Order and the Motion and/or the Auction Procedures, this Final Order shall govern in all respects.

38.    The Debtors, in consultation with the Consultation Parties, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

(Page | 23)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief |

39.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

40.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

41.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**<u>Schedule 1</u>**

**Auction Procedures**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## PROCEDURES FOR THE
## SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE
## SALE OF CERTAIN OF THE DEBTORS' LEASES AND FEE OWNED PROPERTIES

On May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

On May 6, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22] (the "Motion"), seeking approval of, among other things, the procedures contained herein (as modified from time to time, the "Auction Procedures").

On [●], 2025, the Court entered the *Final Order (I)  Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved these Auction Procedures.  These Auction Procedures set forth the process by which the Debtors are authorized to solicit bids for and conduct auctions (collectively, the "Auctions," and each, an "Auction") for a sale or transfer of certain unexpired leases of non-residential real property (collectively, the "Leases," and each, a "Lease") or a sale or transfer of certain owned real estate (collectively, the "Fee Owned Properties," and each, a "Fee Owned Property").

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion, the Order, or the First Day Declaration, as applicable.

> Copies of the Interim Order or the Final Order (as applicable), and any other documents in the Debtors' chapter 11 cases are available upon request to Kroll Restructuring Administration LLC by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international) or visiting the Debtors' restructuring website at (https://restructuring.ra.kroll.com/RiteAid2025).

### A.    Real Property Assets to be Auctioned; Distribution of Auction Procedures

The Debtors are seeking to sell certain of the Debtors' Leases and/or Fee Owned Properties. For any sale of the Leases (including through the sale of designation rights related thereto) or Fee Owned Properties in these chapter 11 cases (the "Bankruptcy Case"), A&G Realty Partners, LLC and/or any such other agent of the Debtors shall, at the Debtors' direction, distribute these Auction Procedures to any potential interested bidders. The Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, may elect to exclude or remove (at any time prior to the entry of a Sale Order (as defined below)) any Leases or Fee Owned Properties from these Auction Procedures and sell such Leases or Fee Owned Properties at either a private or public sale, subject to Court approval of any alternative sale method. Furthermore, the Debtors may determine, in their discretion and in consultation with the Consultation Parties, whether to proceed with the sale of any Lease or Fee Owned Property pursuant to these Auction Procedures.

### B.    Public Announcement of Auctions.

The Debtors may utilize the Auction Procedures for future Auctions by (a) filing with the Court and serving on the Auction Notice Parties an auction and hearing notice (the "Auction and Hearing Notice"), substantially in the form attached to the Final Order as Schedule 2-A (for Auctions of Lease assets) or Schedule 2-B (for Auctions of Fee Owned Property Assets) and (b) posting the applicable Auction and Hearing Notice on their case website, https://restructuring.ra.kroll.com/RiteAid2025.

### C.    Eligibility of Bidders to Participate in Auction.

To participate in the Auction process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing a Lease, a Fee Owned Property, or any group of such assets (a "Potential Bidder") must be determined by the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, to be a Qualified Bidder (as defined below).

Any counterparty to a Lease (each, a "Lease Counterparty") proposed to be sold or transferred at the Auction shall be deemed a Qualified Bidder. Lease Counterparties may credit bid all or a portion of the applicable cure amount proposed by such Lease Counterparty. If such Lease Counterparty is the Successful Bidder on a Lease to which it is a party, and it is later determined by this Court or agreement by and among the Debtors and applicable Lease Counterparty that the actual cure amount is a lesser amount, then such Lease Counterparty shall pay the difference in cash prior to the Closing Deadline.

The Debtors may approve a joint Bid in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case basis, so long as a joint Bid otherwise meets the Qualified Bid requirements set forth in Section (D) below, and the applicable bidders otherwise comply with these Auction Procedures.

## D.      Qualification of Bidders

Except as otherwise set forth herein or agreed to by the Debtors in writing (email being sufficient), in order to be considered for status as a Qualified Bidder and to have a Qualified Bid, a bidder must:

(i)      Deliver via email and first class mail to (1) A&G Realty Partners, LLC, 445 Broadhollow Rd., Ste. 410, Melville, NY 11747 (Attn:    Andy Graiser, andy@agrep.com); (2) Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, (Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn:  Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)), so as to be received before 5:00 p.m. (prevailing Eastern time) on the applicable Bid Deadline, an irrevocable, good faith, and *bona fide* written offer (a "Bid") to purchase the applicable Lease or Fee Owned Property (such Bid that meets the below requirements, a "Qualified Bid," and such Bidder, a "Qualified Bidder") that:

(a)      Consists of, either (a) for Leases, an executed form of the "Assumption and Assignment Agreement," for Leases, attached hereto as **Exhibit A-1**, (b) for Fee Owned Property, an executed form of the "Purchase Agreement," attached hereto as **Exhibit A-2**; (c) for a Lease Counterparty bidding on a Lease to which it is a party, an executed form of the "Lease Termination Agreement" attached hereto as **Exhibit A-3** or (d) a proposed "Designation Rights Agreement" (if applicable).

(b)      Includes (i) for parties submitting an agreement pursuant to subparagraph D(i)(a)(a)-(c), (x) a Microsoft Word copy of the relevant agreement and (y) a PDF "redline" showing any proposed revisions to the form of Assumption and Assignment Agreement, Purchase Agreement, or Lease Termination Agreement (as applicable), and (ii) for parties submitting a Designation Rights Agreement pursuant to subparagraph D(i)(a),  a redline showing any proposed revisions to the form of order approving the sale or transfer of the Real Property Asset to the proposed purchaser.  Any bidder may propose to purchase more than one Real Property Asset.  The applicable agreement shall be marked to reflect differences as to the Leases or Fee Owned Properties to be purchased.

3

(c)     Is accompanied by a completed bidder registration form, substantially in the form attached hereto as **Exhibit B** (the "Bidder Registration Form"), which must detail which of the Leases or Fee Owned Properties up for sale the Qualified Bidder proposes to purchase and list an allocation of a portion of the aggregate proposed purchase price to each Lease or Fee Owned Property included in its total Bid.  A single bidder or group of bidders may purchase one Lease or Fee Owned Property or a combination of the Leases or Fee Owned Properties that the Debtors designate as available for sale.  If a bidder or group of bidders submits an offer for a combination of Leases or Fee Owned Properties, such bidder or group of bidders must indicate if it would be willing to purchase any of such assets if not sold as a group and, if so, provide a schedule indicating the Bid as to any individual or sub-group of Leases or Fee Owned Properties that such bidder would purchase and the allocation of a portion of the aggregate purchase price for any subgroup to each asset in such subgroup.  The Debtors reserve the right to determine, in consultation with the Consultation Parties, whether to auction any Leases or Fee Owned Properties as part of a group or individually up through and including at the Auction or to conduct an Auction of any Lease or Fee Owned Property both individually and as part of a group in order to determine which option maximizes value of such assets.

(d)     Contains no contingencies to the validity, effectiveness, and/or binding nature of the Bid, including without limitation, contingencies for due diligence and inspection or financing of any kind.

(e)     Contains sufficient documentation which demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, that the bidder has financial resources sufficient to close the transaction within twenty-one (21) calendar days after the Auction, which evidence may include, without limitation, evidence of cash on hand, a binding financing commitment from an established and financially sound financial institution or investment fund and the identity of contact persons at the entity issuing such commitment letter.

(f)     Demonstrates, to the satisfaction of the Debtors, in consultation with the Consultation Parties, that the bidder has the legal capacity to consummate the transaction it is proposing.

(g)     Includes a statement from the bidder that: (i) it is prepared to enter into and consummate the transactions contemplated in the Assumption and Assignment Agreement or the Purchase Agreement (as applicable) immediately upon entry by the Court of an order approving the sale of such asset(s) to such bidder; and (ii) the Qualified Bid, if determined to be a Successful Bid (as defined below) or Backup Bid (as defined below), will then be irrevocable for a period of thirty (30) calendar days after the conclusion of the Auction.

(h)     For a Bid on any Lease asset(s), includes an "Adequate Assurance Package,"[3]  The Adequate Assurance Package should be submitted in its own compiled PDF document.

Notwithstanding anything herein to the contrary, any Lease Counterparty bidding on a Lease to which it is a party shall not be required to include the items listed in subparagraphs D(i)(c), D(i)(e), D(i)(f), D(i)(h), or D(ii) in any bid; *provided, however,* that, with respect to the cash component of such bid, a Lease Counterparty shall be required to include the items listed in subparagraphs D(i)(e), D(i)(f).

**ALL QUALIFIED BIDS SHALL BE DEEMED IRREVOCABLE, NOTWITHSTANDING ANY CONDITIONS LISTED IN THE ASSUMPTION AND ASSIGNMENT.  IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTORS SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT AND PURSUE ALL OTHER CONTRACTUAL REMEDIES UNDER LAW OR EQUITY.**

(ii)    Contemporaneous with the submission of a Bid, tender an earnest money deposit of ten percent (10.0%) of the proposed cash purchase price for the sale of the Lease or Fee Owned Property (as applicable) (the "Qualified Bidder Deposit") by cashier's or certified check or wire transfer of immediately available funds, or such other amount agreed to by the Debtors, in consultation with the Consultation Parties, in writing (email being sufficient), which deposit shall be held in an escrow account in accordance with the terms of the Assumption and Assignment Agreement or Purchase Agreement (as applicable); *provided* that to the extent a Bid contains a non-monetary credit bid, the Qualified Bidder Deposit amount shall be based solely upon the cash portion of the Bid.[4]  The wire transfer or check memo line must include the following information (the "Deposit Information"): (a) the company name listed on the Bidder Registration Form attached as Exhibit B hereto and (b) the store name, store address, and store number of the store(s) that correspond to the Real Property Asset composing the Bid.  If the foregoing information does not fit in the wire transfer or check memo line, the bidder shall send an email to Mike Matlat (mike@agrep.com) with the Deposit Information and the federal reference number.  Notwithstanding the foregoing, any Lease

---

[3]   The Adequate Assurance Package may (but is not required to) include (a) the proposed assignee's specific name (and the name under which the proposed assignee intends to operate the premises), the proposed assignee's and any guarantor's business plans (which shall disclose the intended use of the leased premises and a description of the proposed business to be conducted at the premises), including sales and cash flow projections; (b) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of the Lease; (c) audited or unaudited financial statements, tax returns, bank account statements, or annual reports; (d) any financial projections, calculations, and/or financing pro formas prepared in contemplation of purchasing each Lease; (e) any documents regarding the proposed assignee's and any guarantor's experience in operating retail stores (including the number of retail stores the proposed assignee and any guarantor operates and the trade names used); (f) any additional evidence of the proposed assignee's financial wherewithal, including available cash and any debt or equity commitments or other forms of liquidity post-closing; and (g) any other documentation that the Debtors may further request.

[4]   For the avoidance of doubt, these funds are not property of the Debtors.

Counterparty bidder may submit a Bid to acquire the Leases to which it is a counterparty without submitting a Qualified Bidder Deposit.

(iii)     A Qualified Bidder Deposit will be refunded only if (a) the Bid corresponding to the Qualified Bidder Deposit is rejected or (b) the Bid corresponding with the Qualified Bidder Deposit is not approved by the Court. The Debtors reserve the right to hold each Qualified Bidder Deposit until five (5) business days after the closing of the sale of the applicable Lease or Fee Owned Property, but the Debtors may refund the full Qualified Bidder Deposit any time after the Sale Hearing. The provisions of this subparagraph (iii) shall apply to Qualified Bidders and control notwithstanding any conflicting provisions in the applicable Assumption and Assignment Agreement or Purchase Agreement.

(iv)     The Qualified Bidder agrees the Adequate Assurance Package may be disseminated to the affected Lease Counterparty if such Qualified Bidder's Bid is determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bid. If the requesting Lease Counterparty has submitted a ROFR Notice (as defined below) prior to the Bid Deadline, and the Debtors have confirmed such right of first refusal is valid under non-bankruptcy law, the Debtors shall provide the applicable Adequate Assurance Package and purchase price to such Lease Counterparty as soon as reasonably practicable after the determining the applicable bidder is a Qualified Bidder, but in all cases one day prior to the Auction.

**E.     Rejection of "Qualified Bid" Status for Non-Conforming Bids**

The Debtors shall determine, in consultation with the Consultation Parties and counsel to any statutory committees appointed in the Debtors' chapter 11 cases, which Bids qualify as Qualified Bids and which Bids shall be rejected as non-confirming Bids. The Debtors shall have the right to reject a Bid as non-conforming (*i.e.*, a non-Qualified Bid); *provided*, *however,* the Debtors shall have the right to inquire or negotiate with any bidder with respect to clarification of any Bid.

**F.     Breakup Fee**

Subject to entry of an order by this Court effectuating a sale or transfer (a "Sale Order"), the Debtors shall be further authorized, but not obligated, in an exercise of their business judgment and in consultation with the Consultation Parties, to (a) select a Qualified Bidder to act as a stalking horse bidder (a "Stalking Horse Bidder") in connection with each Lease and/or Fee Owned Property up for Auction and (b) in connection with any staking horse agreement with a Stalking Horse Bidder, provide for a breakup fee (the "Breakup Fee") in an amount not to exceed three percent (3.00%) of the proposed purchase price for such asset. The Breakup Fee shall be allocated among the Leases and/or Fee Owned Properties included in the Stalking Horse Bidder's Qualified Bid in the same proportion as the allocation of its aggregate purchase price among such assets listed on the Stalking Horse Bidder's Bidder Registration Form. Any Breakup Fee shall be payable solely from the proceeds of the sale of such asset. To the extent any Stalking Horse Bidder seeks any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment on account of a Real Property Asset, a Stalking Horse Agreement shall be entered into.

### G.    Due Diligence

Any Qualified Bidder may request diligence from the Debtors, and the Debtors may grant or deny the request in their reasonable business judgment and in consultation with the Consultation Parties.  The Debtors may require such Qualified Bidder to execute a non-disclosure agreement prior to providing diligence to such Qualified Bidder.

### H.    Bid Deadline

The Debtors shall promptly provide to the Consultation Parties and the U.S. Trustee copies of all Bids received by the Debtors.  All Qualified Bids must be submitted to the Debtors' advisors in accordance with Section D (above), so as to be actually received no later than the applicable Bid Deadline.  Notwithstanding anything to the contrary in the Auction Procedures, the Debtors may, in their business judgment and in consultation with the Consultation Parties, after the applicable Bid Deadline, select a Successful Bidder for any of the Real Property Assets without holding an Auction for such assets.

### I.    Terms of Auction

In the event that one or more Qualified Bids are submitted in accordance with these Auction Procedures, the Debtors will cause a notice to be filed on the docket of these chapter 11 cases indicating that there have been one or more Qualified Bids submitted (a "<u>Notice of Qualified Bids</u>") and may, in consultation with the Consultation Parties, hold an Auction sale of the Leases or Fee Owned Properties (as applicable) on the following terms:

(i)    **<u>Time, Date, and Location of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction.</u>**  The Auction will take place at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1825 Avenue of the Americas, New York, NY 10019 or by videoconference or such other form of remote communication established by the Debtors.  The Auction will be conducted on the date and time listed in the Auction and Hearing Notice.  The Debtors will send written notice (email being sufficient) of the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors, in consultation with the Consultation Parties, to the Consultation Parties, the Qualified Bidders, counsel to any statutory committees appointed in the Debtors' chapter 11 cases, the U.S. Trustee, and the relevant Lease Counterparties (if any), no later than seven (7) calendar days before such Auction, and file a notice of the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors, in consultation with the Consultation Parties, with the Court by no later than seven (7) calendar days before such Auction and post such notice on the Debtors' Case Website: https://cases.ra.kroll.com/RiteAid2025.  The Debtors, in consultation with the Consultation Parties, may modify the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors, by providing written notice to Qualified

7

Bidders and filing a notice with the Court so long as such notice is no later than three (3) calendar days before the Auction.

(ii) **Permitted Attendees at Auction.**  Unless otherwise ordered or directed by the Court, only representatives of the Debtors, any other parties invited specifically by the Debtors (in consultation with the Consultation Parties), any Qualified Bidders, the Consultation Parties, counsel to any statutory committees appointed in the Debtors' chapter 11 cases, the U.S. Trustee, and the relevant Lease Counterparties (if any), and legal counsel and financial advisors for each of the forgoing shall be entitled to attend the Auction; *provided* that only the (i) Lease Counterparties that have either submitted a Qualified Bid or affirmatively provide evidence of a right of first refusal in writing (the "<u>ROFR Notice</u>") by the Bid Deadline and (ii) other Qualified Bidders that have submitted Qualified Bids by the Bid Deadline shall be entitled to bid at the Auction.  To the extent an Auction is not conducted by videoconference or such other form of remote communication established by the Debtors, any permitted attendee may attend the Auction by videoconference or such other form of remote communication established by the Debtors; *provided* that such permitted attendee must provide actual notice via email to the Debtors' advisors and counsel to the Debtors, as listed in Section D(i) herein, that it will make such an appearance at least one (1) day prior to the Auction.

(iii) **Auction Bid Submission Procedures.**  The Auctions will be conducted by the Debtors, in consultation with the Consultation Parties, in accordance with the following procedures:

(a) For a Qualified Bid to be considered and further bid at the Auction, each Qualified Bidder or duly authorized agent must appear in person at the Auction or attend, unless alternative arrangements are agreed upon in advance by the Debtors, in consultation with the Consultation Parties.

(b) Only Qualified Bidders shall be entitled to make any subsequent Bids at the Auction.

(c) Bidding will commence with the announcement of the highest and best Qualified Bid with respect to each Lease or Fee Owned Property or group thereof, which shall be determined solely by the Debtors, in consultation with the Consultation Parties, in their business judgment.  Any Qualified Bidder may then submit successive Bids in minimum increments, which will be determined by the Debtors, in consultation with the Consultation Parties, at each Auction depending on the total dollar value of the assets being sold (the "<u>Minimum Overbid Amount</u>").  The Minimum Overbid Amount may be different with respect to each Lease, Fee Owned Property, or group thereof being auctioned.  Any Lease Counterparty that submits a ROFR Notice by the Bid Deadline may submit successive Bids on the applicable Lease(s) without offering any additional consideration*, provided* that the Debtors have determined such Lease Counterparty's right of first refusal would be enforceable under nonbankruptcy law.

(d)     If one or more Qualified Bids are received by the Debtors, each such Qualified Bidder shall have the right to improve its respective Bid at the Auction.

(e)     Each successive Bid submitted by any bidder at the Auction must contain an actual cash purchase price that exceeds the then existing highest Bid by at least the Minimum Overbid Amount.

(f)     At the commencement of the Auction and in consultation with the Consultation Parties, the Debtors may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive Bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

(iv)   **No Collusion.**  Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the bidding and (b) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

(v)    **Selection of Successful Bid.**  The Auction shall continue until there is only one Qualified Bid remaining to purchase a certain portion or all of the Lease or Fee Owned Properties (as applicable) that the Debtors determine, in consultation with the Consultation Parties any statutory committees appointed in these chapter 11 cases, and subject to Court approval, is the highest and/or best Qualified Bid (such Qualified Bid, the "Successful Bid" and, such Qualified Bidder, the "Successful Bidder").  For the avoidance of doubt, if there are any Qualified Bids for different Leases or Fee Owned Properties (as applicable), there may be multiple Successful Bidders.  In making this decision, each Debtor may consider the amount of the purchase price, the form of consideration being offered, the contents of the Assumption and Assignment Agreement, the likelihood of such Qualified Bidder's ability to close the transaction, the timing thereof, and the net benefit to the estates. Each Debtor reserves the right to select, in consultation with the Consultation Parties and any statutory committees appointed in these chapter 11 cases, the Successful Bid, even if it is not the highest Bid; *provided* that in the event a Stalking Horse Bidder is selected by the Debtors and is not the Successful Bidder, the aggregate amount of the Successful Bid or Successful Bids (other than credit bids) must exceed the amount of the Stalking Horse Bid plus the Breakup Fee payable to the Stalking Horse Bidder.  The Debtors reserve the right to not select, in consultation with the Consultation Parties and any statutory committees appointed in these chapter 11 cases, any Successful Bid or Successful Bidder with respect to any Lease, Fee Owned Property, or group thereof.  The Successful Bidder shall have such rights and responsibilities of the purchaser, as set forth in the Assumption and Assignment Agreement or Purchase Agreement (as applicable).  Prior to the Sale Hearing, the Successful Bidder shall complete and execute a final and revised Assumption and Assignment Agreement or Purchase Agreement (as applicable), as necessary to conform to the terms of the Auction, and all other agreements,

contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made (such documents collectively, the "Successful Bidder Sale Documents"). The Successful Bid shall be irrevocable for a period of thirty (30) days after the conclusion of the Auction.

(vi) **Selection of Backup Bidder.** The bidder of the second highest and best Bid for a portion or all of the Leases or Fee Owned Properties (as applicable), as determined by the Debtors in their discretion and in consultation with the Consultation Parties, may be deemed a backup bidder (such bidder the "Backup Bidder" and such Bid the "Backup Bid"). For the avoidance of doubt, if there are Qualified Bids for different portions of the Leases or Fee Owned Properties (as applicable), there may be multiple Backup Bidders. If the Debtors so designate, in consultation with the Consultation Parties, a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute, as applicable, an Assumption and Assignment Agreement or Purchase Agreement, in form and substance reasonably acceptable to the Debtors memorializing, among other things, the amount of the Backup Bid (the "Backup Bidder Agreement"). Upon the failure of the Successful Bidder to timely consummate its purchase of the applicable Lease or Fee Owned Property, pursuant to the terms of the Successful Bidder Sale Documents, within three (3) calendar days of such failure, the Debtors shall file a supplemental notice seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing. The Backup Bidder Agreement shall be irrevocable for a period of thirty (30) calendar days after the conclusion of the Auction.

(vii) **Irrevocability of Bids; Rejection of Bids.** A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not selected as the Backup Bidder. Unless determined by the Debtors, in consultation with the Consultation Parties, to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive Bids at the Auction shall be deemed rejected at the conclusion of the Auction. Notwithstanding the foregoing, all Bids shall be deemed rejected on the Closing Deadline; *provided*, *however*, in the event the Successful Bidder does not close the sale of any given Lease or Fee Owned Property (as applicable), and the Debtors (being required to file a supplemental notice within three (3) calendar days thereafter) file a supplemental notice on or before the Closing Deadline seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing, such Bids shall remain irrevocable until the transaction is approved and closed, or rejected by the Court.

**J.    Sale Hearing**

The Court may hold a Sale Hearing on the date listed in the Auction and Hearing Notice to approve the sale of the Leases or Fee Owned Properties (as applicable), if any. The Sale Hearing will be held at the United States Bankruptcy Court for the District of New Jersey, or by such other virtual or electronic means as determined by the Court. At the Sale Hearing, the Debtors will seek entry of an order approving and authorizing the proposed sale to the Successful Bidder(s), if any; provided, however, that if no Objection to the sale of a Real Property Asset is filed by the applicable Objection Deadline, the Debtors may seek, at any time following the expiration of the

Objection Deadline, entry of an order approving and authorizing the proposed sale to the Successful Bidder(s) under a certificate of no objection.

The Debtors shall also notify the Court of the Backup Bidder, if any. The Debtors shall ascertain whether the Successful Bidder and the Backup Bidder are insiders of one or more of the Debtors, whether the sale represents an arm's-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Successful Bidder or Backup Bidder may be deemed to be purchasing the Leases in good faith pursuant to 11 U.S.C. § 363(m). At the Sale Hearing (if any), the Debtors shall seek to make a record of these findings with respect to the Successful Bidder and any order approving the sales shall include such findings in order to approve the sale to the Successful Bidder(s), pursuant to 11 U.S.C. § 363(m). The Sale Hearing may be adjourned or rescheduled by the Debtors, in consultation with the Consultation Parties, without notice other than by announcement of the adjourned date at the Sale Hearing or the Debtors' filing notice of a rescheduled Sale Hearing with the Court.

In the event the Successful Bidder does not close the sale of any given Lease or Fee Owned Property (as applicable), and the Debtors determine in their reasonable business judgment, and in consultation with the Consultation Parties and counsel to any statutory committees appointed in these cases, to effectuate the transaction with the Backup Bidder, the Debtors will file a supplemental notice within three (3) calendar days of the prior sale's closing date, seeking to approve the sale to the Backup Bidder. The Backup Bidder (as identified by the Notice of Successful and Backup Bidders) shall not be approved at the Sale Hearing.

### K.    Closing

The closing of the sale of the Leases or Fee Owned Properties (as applicable) will occur no later than the Closing Deadline, in accordance with the terms of the Successful Bidder Sale Documents or the (a) Assumption and Assignment Agreement of the entity otherwise authorized by the Court to purchase such Leases, (b) Purchase Agreement of the entity otherwise authorized by the Court to purchase such Fee Owned Properties, or (c) Lease Termination Agreement of the Lease Counterparty otherwise authorized by the Court to purchase such Lease, as applicable.

### L.    Failure of Successful Bidder to Consummate Purchase

If the Successful Bidder fails to consummate the purchase of the Leases or Fee Owned Properties (as applicable) pursuant to the terms of the Successful Bidder Sale Documents, and such failure is the result of the Successful Bidder's breach of, or default or failure to perform under any Successful Bidder Sale Documents or the terms of these Auction Procedures, including cooperating with the Debtors and their advisors to contest any objections to either the assumption and assignment of the applicable Lease or the sale of the applicable Fee Owned Property and appearing for testimony, as needed, (the "Defaulting Bidder"), such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to the Debtors as liquidated damages, and the Debtors shall have all rights and remedies available under applicable law.

**M.    Disclosures**

Qualified Bidders shall disclose to the Debtors all communications with other Qualified Bidders following the submission of a Qualified Bid until the sale of the applicable Leases or Fee Owned Properties.

**N.    Commissions**

Subject to section E hereof, the Debtors shall be under no obligation to pay commission to any agent or broker, with the exception of any agent or broker used by the Debtors. All commissions, fees, or expenses for agents, other than as retained by the Debtors, may be paid by bidders at such bidder's discretion. In no case shall any commissions, fees, or expenses be deducted from the proceeds of the sale of the Leases or Fee Owned Properties (as applicable), or the agreed Successful Bid, subject to section F hereof.

**O.    No Representation; Qualified Bidder's Duty to Review**

The Debtors are not making and have not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Leases or Fee Owned Properties, the truth, accuracy, or completeness of any documents related to the Leases or Fee Owned Properties, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Leases or Fee Owned Properties. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Leases or Fee Owned Properties (as applicable) "AS-IS, WHERE IS, WITH ALL FAULTS," except to the extent expressly provided otherwise in the Court's order approving the sale. All bidders must agree that they have not relied on and will not rely on, and the Debtors are not liable for or bound by, any express or implied warranties, guaranties, statements, representations, or information pertaining to the Leases or Fee Owned Properties, or relating thereto made or furnished by the Debtors or any real estate broker or agent representing or purporting to represent the Debtors, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in the Bankruptcy Court's order approving the sale.

**P.    Reservation of Rights**

The Debtors reserve their rights to modify these Auction Procedures, in their business judgment and in consultation with the Consultation Parties, in any manner that will best promote the goals of these Auction Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on sales, including, without limitation: (i) extending the deadlines set forth in these Auction Procedures; (ii) adjourning the Auction or the Sale Hearing; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids or Qualified Bids. Nothing in these Auction Procedures shall abrogate the fiduciary duties of the Debtors. For the avoidance of doubt, this paragraph shall not authorize the Debtors to limit notice periods or other protections provided to Lease Counterparties in the Order.

### Q.    Consent to Jurisdiction

All Qualified Bidders at the Auction shall be deemed to have (i) consented to the jurisdiction of the Court and (ii) waived any right to a jury trial in connection with any disputes relating to the Auction, the construction, and enforcement of these Auction Procedures.

### R.    Return of Qualified Bidder Deposit

The Qualified Bidder Deposit of the Successful Bidder shall be applied to the purchase price of any transaction that closes with respect to that Qualified Bidder.  The Qualified Bidder Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is five (5) business days after the close of the sales, or as soon as is reasonably practicable thereafter.

If a Successful Bidder (or Backup Bidder, as applicable) fails to consummate a proposed transaction because of a breach by such Successful Bidder (or Backup Bidder, as applicable) or by failing to cooperate to obtain approval of the Bid, the Qualified Bidder Deposit shall be released to the Debtors and the Debtors shall not have any obligation to return the Qualified Bidder Deposit deposited by such Successful Bidder (or Backup Bidder, as applicable).  Such Qualified Bidder Deposit released to the Debtors may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

### S.    Fiduciary Out

Nothing in these Auction Procedures shall require each Debtor's management or board of directors to take any action, or to refrain from taking any action, with respect to these Auction Procedures, to the extent each Debtor's management or board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**Exhibit A-1**

**Form Assumption and Assignment Agreement**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2025, is by and between _____ ("Assignor") and _____ ("Assignee").

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (referred to as the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms and conditions of the Auction Procedures approved by the Bankruptcy Court in the chapter 11 cases of *In re New Rite Aid, LLC, et al.*, Case No. 25-14861 (MBK) (the "Bankruptcy Court Approval").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties ("Parties") hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.  Effective upon the receipt of Bankruptcy Court Approval and payment of the Purchase Price as set forth below:

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease(s).

(b)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease(s).

2.    Payment of Purchase Price.  Assignee shall, on or before _____, 2025, deliver the purchase price for the Lease(s) in the amount of _____ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor.  Together with the Purchase Price, Assignee shall also pay to Assignor the sum of $_____ respecting rent and other charges paid by Assignor under the Lease for the months in which the Closing (hereinafter defined) occurs and any subsequent months.  If the assumption and assignment of the Lease(s) do(es) not occur by _____, 2025, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Lease(s) on and after _____, 2025.  The Parties acknowledge that if the assignment and assumption of the Lease(s) (the "Closing") does not occur before _____, 2025, the Lease(s) may thereafter be rejected in the Bankruptcy Court proceeding referenced above.

3.    Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Lease(s), including, but not limited to, accrued but unbilled adjustments

2

for CAM, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Lease(s).

4.    <u>No Further Liability of Assignor</u>.  From and after Closing, Assignor shall have no further obligations and duties with respect to the Lease(s).

5.    <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease(s).

6.    <u>"As Is Where Is" Transaction</u>.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Lease(s) and all such other matters relating to or affecting the Lease(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Lease(s) "AS IS" and "WHERE IS."

7.    <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.    <u>Jurisdiction.</u>  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.    <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.    <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared

and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.     <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

*[Signatures appear on following page]*

**ASSIGNOR:**
**[DEBTOR-ASSIGNOR]**


By: _____
Name: _____
Its: _____


**ASSIGNEE:**
**[ASSIGNEE]**


By: _____
Name: _____
Its: _____

## Exhibit A-2

**Form Asset Purchase Agreement**

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is executed as of the [●] day of [●], 2025 (the "Effective Date"), by and between [●], a [●] ("Seller") and [●], a [●] ("Purchaser").

## RECITALS

**WHEREAS**, on May 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

**WHEREAS**, the Debtors seek to cause Seller to sell the Property (defined below) pursuant to the terms and conditions of this Agreement and subject to approval by the Bankruptcy Court in the chapter 11 cases of *In re New Rite Aid, LLC, et al.,* Case No. 25-14861 (MBK) (Bankr. D.N.J. 2025) (the "Bankruptcy Cases");

**WHEREAS**, Seller believes that the Property should be sold through an orderly sale process as part of the Bankruptcy Cases;

**WHEREAS**, Seller is willing to sell the Property to Purchaser, and Purchaser is willing to purchase the Property from Seller; and

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, and conditions stated herein, the sufficiency of which is hereby acknowledged by the parties hereto, Seller and Purchaser hereby agree as follows:

## AGREEMENT

1.    Sale of Property.  On the terms and conditions set forth in this Agreement, Seller agrees to sell, assign, convey and transfer to Purchaser, and Purchaser agrees to purchase from Seller, all rights, title and interests held by Seller in and to the real property specifically described on **Annex I** attached hereto and incorporated herein by this reference (the "Real Property"), together with all buildings, facilities and other improvements located thereon (collectively, the "Improvements") and all easements, licenses, rights and appurtenances relating to any of the foregoing (collectively, with the Real Property and the Improvements, the "Property").

2.    Purchase Price.

A.    Seller is to sell and Purchaser is to purchase the Property for a total of [●] Dollars ($[●]) (the "Purchase Price").

B.    The Purchase Price for the Property (exclusive of closing adjustments and costs provided for herein) shall be paid in the following manner:

(i)    A deposit in the amount of [●] Dollars ($[●])[5] (the "Deposit") shall be delivered to [●] (the "Escrow Agent") on the Effective Date, in immediately available funds, which such

---

[5] Note to Draft:  10% of the Purchase Price.

Deposit shall be non-refundable to Purchaser except as otherwise expressly set forth in this Agreement;

(ii)     The balance of the Purchase Price, exclusive of closing adjustments and costs (the "<u>Balance</u>"), is due at the closing of the transaction contemplated hereunder (the "<u>Closing</u>") and shall be delivered to Escrow Agent no later than 11:00 am Eastern Time on the Closing Date (defined below), in immediately available funds.

C.     The acceptance by Purchaser of the delivery of the quit claim deed (the "<u>Deed</u>") at Closing shall be deemed to be full performance and discharge of every agreement and obligation (either express or implied) on the part of Seller to be performed pursuant to this Agreement and no representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

3.     <u>Purchaser Financing</u>.  Purchaser assumes full responsibility to obtain the funds required for settlement, and Purchaser's acquisition of such funds (including any financing proceeds) shall not be a contingency to the Closing or Purchaser's obligations hereunder.

4.     <u>No Investigations/Due Diligence Period</u>.

A.     Purchaser acknowledges that there is no "due diligence period" or "due diligence termination right" in this Agreement and Purchaser does not have the right to terminate this Agreement based on the results of such inspections or for any other reason.

B.     Purchaser acknowledges that, subject to <u>Section 34</u> of this Agreement, Seller has delivered to Purchaser, or has otherwise made available to Purchaser, certain due diligence materials (the "<u>Due Diligence Materials</u>"), in each case, to the extent in Seller's reasonable possession.  Seller will have no obligation to deliver or disclose to Purchaser any of Seller's attorney-client privileged materials, appraisals, internal memoranda, or internal evaluations of the Property, or any materials that are confidential and proprietary.  Except as may be otherwise expressly set forth in this Agreement and the Closing documents, Seller makes no representations or warranties of any kind regarding the accuracy, thoroughness, or completeness of, or conclusions drawn in the information contained in, any Due Diligence Materials and Purchaser is relying on the same at its own risk and without recourse to Seller.

5.     <u>Intentionally Omitted</u>.

6.     <u>Bankruptcy Court Approval and Sale Order</u>.  The parties' obligations set forth in this Agreement are expressly subject to approval by the Bankruptcy Court (the "<u>Bankruptcy Court Approval</u>") pursuant to an order (the "<u>Sale Order</u>") approving the sale to Purchaser.  The Sale Order shall include factual findings and ordering provisions that provide that (i) title to the Property shall be transferred to Purchaser free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and interests to attach to the proceeds of the sale in the same order, priority and validity that presently exists; *provided, however*, that the Property shall be transferred subject to all easements, right of ways, leases (recorded or unrecorded), covenants, restrictions and all other exceptions of record; (ii) Purchaser is purchasing in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections offered thereby; (iii) this Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and at an arms'-length bargaining position; and (iv) the stay provided under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure shall be waived to the extent necessary to permit a Closing to occur as soon as possible after entry of the Sale Order.

7.      Reservation of Rights.  Seller reserves all rights to terminate this Agreement at any time prior to the Closing, by written notice from Seller to Purchaser, including, but not limited to, terminating this Agreement if Seller or the board of directors (or similar governing body) of Seller determines that proceeding with the sale(s) or failing to terminate this Agreement would be inconsistent with its or such person's or body's fiduciary duties.  Upon the termination of this Agreement by Seller pursuant to this Section 7, Escrow Agent shall return the Deposit to Purchaser.

8.      Representations of Purchaser.  Purchaser covenants, represents, and warrants to Seller that, as of the Effective Date and as of the Closing Date:

A.      The proposed sale transaction contemplated by this Agreement represents an arms'-length transaction between the parties, made without fraud or collusion with any other person; and

B.      There has been no attempt to take any unfair advantage of Seller.

9.      Closing Deliveries.

A.      On or before 11:00 am Eastern Time on the Closing Date, Seller shall deliver to the Escrow Agent each of the following, executed and acknowledged, as appropriate, to be delivered to, or pursuant to the direction of, Purchaser upon Closing:  (i) the Sale Order in recordable form, (ii) the Deed (in proper statutory form for recording) so as to transfer all of its right, title and interest in and to the Property in the form attached hereto as **Annex II**, (iii) Seller's signature to a closing statement prepared by Escrow Agent, and (iv) such other documents reasonably required to effect a transfer of the Property under applicable state law.  Notwithstanding anything to the contrary contained herein, Seller shall not be required to execute or deliver any title affidavit or indemnity.

B.      On or before 11:00 am Eastern Time on the Closing Date, Purchaser shall deliver to Escrow Agent each of the following, executed and acknowledged, as appropriate, to be delivered to, or pursuant to the direction of, Seller (with the Deposit) upon Closing:  (i) the full Purchase Price (less the Deposit), plus or minus if then calculated the adjustments or prorations required by this Agreement, (ii) Purchaser's signature to the closing statement, and (iii) such other documents reasonably required to effect a transfer of the Property under applicable state law.

10.     Closing Date and Office.  The Closing shall take place not later than five (5) days after the entry of the Sale Order or such other date mutually agreed upon by Purchaser and Seller (the "Closing Date") and shall occur through a deed and money escrow agreement with Escrow Agent pursuant to which, on the Closing Date, Escrow Agent shall be responsible for (x) preparation of the closing statement, (y) collection and disbursement of all closing documents, and (z) collection and disbursement of the funds.  Notwithstanding anything in this Agreement to the contrary, in the event the Bankruptcy Court has not entered the Sale Order on or prior to [●], 2025, Seller, upon notice to Purchaser, may elect to terminate this Agreement, with no consequences to Seller and/or the Purchaser's bankruptcy estate.  In the event of such termination, Escrow Agent shall return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations (defined below)).  In the event the Bankruptcy Court rejects Purchaser's offer as set forth herein, the rights and remedies of the parties shall be as set forth in the Sale Order.  The parties acknowledge that Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent of either of the parties, and that Escrow Agent shall not be liable to either of the parties for any action or omission on its part taken or made in good faith, and not in disregard of this Agreement, but shall be liable for its negligent acts and for any liabilities (including reasonable attorneys' fees, expenses and disbursements) incurred by Seller or Purchaser resulting from Escrow Agent's mistake of law respecting Escrow Agent's scope or nature of its duties, negligence or breach of this Agreement.  Seller and Purchaser shall severally, on a 50/50

basis, indemnify and hold Escrow Agent harmless from and against all liabilities (including reasonable out-of-pocket attorneys' fees, expenses and disbursements) actually incurred in connection with the performance of Escrow Agent's duties hereunder, except with respect to actions or omissions taken or made by Escrow Agent in bad faith, in breach of this Agreement or involving negligence on the part of Escrow Agent. Escrow Agent has executed this Agreement in the place indicated on the signature page hereof in order to confirm that Escrow Agent shall hold the Deposit and closing documents in escrow and shall disburse the Deposit and closing documents pursuant to this Agreement.

11.    Permitted Exceptions.

A.    At Closing, Seller shall convey title to the Property, subject to the following (collectively, the "Permitted Exceptions," and the condition of the title subject only to the Permitted Exceptions is referred to herein as "Acceptable Title"):

(i)    All matters (A) shown in any title commitment, title pro forma, title policy and/or survey obtained by Purchaser or delivered by Seller to Purchaser, (B) shown in the public records where the Property is located, (C) which would be shown in a current and accurate title commitment, title report and/or survey of the Property, or (D) which would be disclosed by a physical inspection of the Property;

(ii)    The leases and property contracts and all matters reflecting the existence or terms of the leases or property contracts, including non-disturbance agreements, notices (or short forms) of leases or property contracts and financing statements pertaining to any tenant's property;

(iii)    Applicable zoning, governmental, subdivision, building and other land use laws, regulations and ordinances;

(iv)    Any lien created, permitted or suffered by any tenant;

(v)    The lien of real estate taxes and assessments not yet due and payable, subject to proration or adjustment as provided in this Agreement;

(vi)    Any installation, service, connection, usage or maintenance charge for sewer, water, electricity, telephone, cable or internet service, and any charges due under any reciprocal easement agreement, declarations of covenants, conditions, restrictions, common area agreement, shared maintenance agreement, or similar agreements which burden or benefit the Property, in each case subject to adjustment or proration as provided in this Agreement;

(vii)    All standard pre-printed exceptions and provisions contained in any title commitment, title pro forma or title policy obtained by Purchaser;

(viii)    All matters affecting title to the Property of which Purchaser has knowledge as of the Closing Date;

(ix)    Any defects in or objections to title to the Property, or title exceptions or encumbrances, arising by, through or under Purchaser or its consultants or agents; and

(x)    All matters shown on any existing owner's policy of title insurance provided to Purchaser.

10

B.    Must-Cure Items.  Notwithstanding the foregoing, as a condition to Closing, Seller shall be obligated to (i) cause any mortgages, deeds of trust, tax liens, or judgements granted by Seller on the Property evidencing indebtedness to be satisfied and/or removed of record, and (ii) cause any mechanics' liens or materialmans' liens encumbering the Property for work performed at the Property and ordered by Seller to be satisfied and/or removed of record (or bonded over) so that such liens do not appear as exceptions to Purchaser's title policy (collectively, "Must-Cure Items").

12.    Title Policy.  Purchaser shall accept title subject to the Permitted Exceptions.  If Purchaser desires to purchase title insurance, Purchaser may do so, at Purchaser's discretion and at its sole cost and expense. Seller shall not be obligated to cause the title company to omit any Permitted Exception, including, but not limited to, the satisfaction of any exception to title relating to the filing of Seller's federal or state tax return. Purchaser shall not have the right to terminate this Agreement if Seller is able to provide Acceptable Title.

13.    Survey.  Purchaser may order a survey of the Property, at its sole cost and expense.

14.    Condemnation; Casualty.

A.    In the event that, after the Effective Date but prior to the Closing, all or any material portions of the Property, any interests therein, or any rights appurtenant thereto are taken or appropriated (either permanently or for temporary periods) under the power of eminent domain or condemnation by any authority having such power, or by virtue of any actions or proceedings in lieu thereof, or if any notice or threat of such taking or appropriation has been given or is pending at the Closing Date that would result in the reduction of value in such Property by more than ten percent (10%) of the Purchase Price, Purchaser may elect to terminate this Agreement by providing written notice of such termination to Seller and Escrow Agent within seven (7) business days after Purchaser's receipt of notice of such condemnation, taking or damage, and upon receipt of such written notice, Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations), or (b) elect to proceed with Closing, in which event the Purchase Price shall be reduced by an amount equal to any sums actually received by Seller from the condemning authority by reason of such taking, appropriation or action or proceeding in lieu thereof.

B.    In the event the Property is damaged in any material respect after the Effective Date but prior to the Closing Date and such damage was not caused by Purchaser, any consultant, any of their respective employees or agents, or any inspection and there is no insurance to cover the loss, if the cost to repair such casualty would exceed ten percent (10%) of the Purchase Price, either Purchaser or Seller can elect to terminate this Agreement by delivering written notice to the other party and Escrow Agent within seven (7) business days after such damage occurs.  In such an event, the Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and neither party shall have any further obligation hereunder (other than the Surviving Obligations).  In the event the Property is damaged prior to Closing and such damage was not caused by Purchaser, any consultant, any of their respective employees or agents, or any inspection, and there is insurance to cover the loss, then Purchaser shall have no right to terminate this Agreement and shall proceed with Closing in which event the Purchase Price shall be reduced by all insurance proceeds payable in respect of such damage collected by Seller before the Closing Date and Seller shall assign to Purchaser all of Seller's rights, title and interest in and to all such insurance proceeds not collected by Seller before Closing Date.

15.    Acceptance of State and Municipal Department Violations and Orders.  Purchaser accepts the Property subject to all notes or notices of violations, known or unknown, of law or municipal ordinances, orders or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire and health and labor conditions affecting the Property.

11

16.    <u>Closing Adjustments and Costs</u>.

A.    Purchaser shall pay the cost of all (i) sales, use, gross receipts, documentary stamps, recordation taxes, transfer taxes and any other similar tax related to the conveyance of title to Property, (ii) title searches, title commitments, title policies (including any fees, premiums and costs relating to procurement of any title commitments, title policies and any requested endorsements) requested by Purchaser, (iii) survey(s) (and any updates thereto) ordered by Purchaser, (iv) investigations (including, without limitations, Purchaser's investigations) conducted by or on behalf of Purchaser, (v) closing costs and any fees payable to the Escrow Agent or any title company, (vi) any fees or expenses payable for the assignment, transfer or conveyance of any property contracts, permits, plans and specifications and warranties to Purchaser, (vii) any mortgage tax, title insurance fees and expenses for any loan title insurance policies, recording charges or other amounts payable in connection with any financing obtained by Purchaser, and (viii) the fees and expenses of Purchaser's own attorneys, accountants, consultants and advisors.

B.    If, at the time of Closing, the Property is affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Agreement all the unpaid installments shall be payable by Purchaser when each installment as to such assessment is due and payable after the Closing.

C.    Each of the following items are to be apportioned as of midnight the day before the Closing Date: (i) real estate taxes on the basis of the fiscal period for which assessed; (ii) special assessment liens in accordance with the preceding paragraph; (iii) utilities; (iv) water and sewer charges; and (v) any other charges customarily prorated in similar transactions. If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

17.    <u>Use of Purchase Price to Pay Certain Encumbrances</u>.  If there are any Must-Cure Items which Seller is obligated to pay and discharge at Closing pursuant to this Agreement, Seller may, to the extent permitted by the Sale Order, use any portion of the Balance of the Purchase Price to discharge same.  As an alternative, Seller may, to the extent permitted by the Sale Order, deposit money with the title company, if any, in such amount as reasonably required by such title company to assure its discharge.  Upon request made within a reasonable time before Closing, Purchaser agrees to provide separate certified checks to assist in clearing up these matters.

18.    <u>Events of Default</u>.

A.    Purchaser shall be in default under this Agreement if Purchaser (A) fails to timely deliver the Deposit, (B) fails to pay the Balance to Escrow Agent on or before the Closing Date, or (C) fails to pay, perform or observe any of Purchaser's other representations, warranties or obligations hereunder (each of the foregoing, a "<u>Purchaser Default</u>").

B.    If, prior to Closing (x) a Purchaser Default occurs, or (y) Seller materially defaults in its covenants or obligations under this Agreement (such default, a "<u>Seller Default</u>"), then the non-defaulting party may elect to either (i) waive the event of default and proceed to Closing, or (ii) terminate this Agreement by delivering written notice of such termination to the defaulting party and Escrow Agent, in which event this Agreement shall be of no further force or effect (other than the Surviving Obligations).

12

Further:

(i)     if Purchaser terminates this Agreement as a result of a Seller Default, then, as Purchaser's sole and exclusive remedy, Purchaser and Seller shall direct Escrow Agent to return the Deposit to Purchaser and Seller shall be released from any and all liability hereunder.  Purchaser expressly waives its right to seek damages in the event of a Seller Default; and

(ii)     if Seller terminates this Agreement as a result of a Purchaser Default, then all payments made hereunder shall be forfeited to and retained by Seller and Escrow Agent shall deliver the Deposit to Seller and Seller shall be entitled to the retention of the Deposit as liquidated damages and not a penalty.  SELLER AND PURCHASER ACKNOWLEDGE THAT SELLER'S DAMAGES WOULD BE DIFFICULT TO DETERMINE, AND THAT THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S DAMAGES RESULTING FROM A DEFAULT BY PURCHASER IN ITS OBLIGATION TO PURCHASE THE PROPERTY.  SELLER AND PURCHASER FURTHER AGREE THAT THIS SECTION 18 IS INTENDED TO AND DOES LIQUIDATE THE AMOUNT OF DAMAGES DUE TO SELLER, AND SHALL BE SELLER'S EXCLUSIVE REMEDY AGAINST PURCHASER, BOTH AT LAW AND IN EQUITY, ARISING FROM OR RELATED TO A BREACH BY PURCHASER OF ITS OBLIGATION TO CONSUMMATE THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OTHER THAN WITH RESPECT TO PURCHASER'S INDEMNITY AND CONFIDENTIALITY OBLIGATIONS HEREUNDER.

C.     SELLER AND PURCHASER FURTHER AGREE THAT THIS SECTION 18 IS INTENDED TO AND DOES LIMIT THE AMOUNT OF DAMAGES DUE TO PURCHASER AND THE REMEDIES AVAILABLE TO PURCHASER, AND SHALL BE PURCHASER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER, BOTH AT LAW AND IN EQUITY ARISING FROM OR RELATED TO SELLER DEFAULT.  UNDER NO CIRCUMSTANCES MAY PURCHASER SEEK OR BE ENTITLED TO RECOVER ANY SPECIAL, CONSEQUENTIAL, PUNITIVE, SPECULATIVE OR INDIRECT DAMAGES, ALL OF WHICH PURCHASER SPECIFICALLY WAIVES, FROM SELLER FOR ANY SELLER DEFAULT.  PURCHASER SPECIFICALLY WAIVES THE RIGHT TO FILE ANY LIS PENDENS OR ANY LIEN AGAINST THE PROPERTY.

D.     If Purchaser breaches this Agreement and Seller institutes a judicial action to enforce its rights or obtain remedies hereunder, Purchaser shall pay to Seller the reasonable attorneys' fees, court costs and expenses incurred by Seller.

19.     No Representation; Purchaser's Duty to Review.

**IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS (INCLUDING, WITHOUT LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY PROPERTY DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO**

PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY. PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND TRANSFER TO PURCHASER AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS," EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT. PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY OR RELATING THERETO (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, PROPERTY INFORMATION PACKAGES DISTRIBUTED WITH RESPECT TO THE PROPERTY) MADE OR FURNISHED BY THE SELLER OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT. PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO CLOSING, SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE PROPERTY, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT.

20.    Notices.  Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States mail, postage prepaid, registered or certified mail, return receipt requested, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein. Unless changed in accordance with the preceding sentence, the addressees for notices given pursuant to this Agreement shall be as follows:

If to Seller:        New Rite Aid, LLC
                     200 Newberry Commons
                     Etters, PA 17319
                     Attn:  Matthew Schroeder
                     Email: MSchroeder@riteaid.com

14

With a copy to:          Paul, Weiss, Rifkind, Wharton & Garrison, LLC 1285 Avenue of the Americas
New York, NY 10019
Attn:  Alice Belisle Eaton, Christopher Hopkins, Nick Krislov
Email:  aeaton@paulweiss.com,  chopkins@paulweiss.com, nkrislov@paulweiss.com

If to Purchaser:           _____

Attn:  _____

_____

_____

With a copy to:          _____

Attn:  _____

_____

_____

21.    <u>Additional Provisions</u>.

A.    This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to conflicts of laws principles.  Any action of any kind whatsoever, including a counterclaim, cross-claim, or defense, regardless of the legal theory under which any liability or obligation may be sought to be imposed, whether sounding in contract or in tort or under statute, or whether at law or in equity, or otherwise under any legal or equitable theory, that may be based upon, arising out of, or related to this Agreement or the negotiation, execution, or performance of this Agreement and any questions concerning the construction, interpretation, validity and enforceability of this Agreement (each, an "<u>Agreement Dispute</u>") brought by Seller and its successors or assigns or Purchaser and its successors or assigns will be brought and determined only in the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may be validly taken.  Seller and Purchaser hereby irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, each for itself and with respect to its property, generally and unconditionally, with regard to any Agreement Dispute.  Seller and Purchaser each agree not to commence any Agreement Dispute except in the Bankruptcy Court and neither Seller nor Purchaser will file a motion to dismiss any Agreement Dispute filed in the Bankruptcy Court on any jurisdictional or venue-related grounds, including the doctrine of *forum non conveniens*.  Seller and Purchaser irrevocably agree that venue would be proper in the Bankruptcy Court, and hereby irrevocably waive any objection that the Bankruptcy Court is an improper or inconvenient forum for the resolution of any Agreement Dispute.

B.    The parties agree that neither this Agreement nor any memorandum hereof shall be recorded or filed in any government office charged with the obligation to accept documents for recording or filing, and such office is instructed to refuse to accept same for recordation or filing.

22.    <u>Strict Compliance</u>.  Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

15

23.    <u>Waiver of Jury Trial</u>.  EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT, OR THE RELATIONSHIP CREATED HEREBY.  With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.  The parties submit to the exclusive jurisdiction and venue of the Bankruptcy Court with respect to any dispute, claim or issue arising out of this Agreement.

24.    <u>Entire Agreement</u>.  All prior understandings and agreements between Seller and Purchaser are merged in this Agreement.  It completely expresses their full agreement; neither party is relying upon any statements made by anyone else that are not set forth in this Agreement.

25.    <u>Singular Also Means Plural</u>.  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

26.    <u>Gender</u>.  A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

27.    <u>Certain References</u>.  The term "herein," "hereof" or "hereunder" or similar terms used in this Agreement shall refer to this entire Agreement and not to the particular provision in which the term is used. Unless otherwise stated, all references herein to paragraphs, subparagraphs or other provisions are references to paragraph, subparagraphs or other provisions of this Agreement.

28.     <u>No Oral Changes</u>.  This Agreement cannot be changed or any provision waived orally.  ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

29.    <u>Date of Performance</u>.  If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state where the Property is located, the date for such performance shall be the next succeeding business day.

30.    <u>Severability</u>.  Except as set forth herein, if any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby; provided, however, the parties agree that the conditions for Bankruptcy Court Approval and issuance of a Sale Order is a non-negotiable condition precedent to the validity and enforcement of this Agreement against the Purchaser.  Any other clauses or provisions of this Agreement, not found invalid and unenforceable, shall be and remain valid and enforceable.

31.    <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of real estate under the laws of the State of New York. It is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both Seller and Purchaser.

32.    <u>Execution</u>.  For the purposes of executing this Agreement, a document signed and transmitted by electronic (PDF) mail shall be treated as an original document.  The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document.  At the request of either party, any electronic (PDF) mail document shall be re-executed by both parties in original form.  No party hereto may

16

raise the use of electronic (PDF) mail or the fact that any signature was transmitted through the use of electronic (PDF) mail as a defense to the enforcement of this Agreement or any amendment executed in compliance with this paragraph. This paragraph does not supersede the requirements of Section 20 hereof.

33.    Assignment. Purchaser shall not assign this Agreement without the prior written consent of Seller, such consent to be given or withheld in Seller's sole and absolute discretion. Any purported assignment by Purchaser in violation of this Agreement shall be voidable at the option of Seller. The refusal of any such person to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against Seller. Any assignment by Purchaser, even if consented to by Seller, shall not act to limit, reduce or impact in any way any of Purchaser's obligations to perform all of its obligations under this Agreement including, without limitation, its obligation to pay the Purchase Price.

34.    Construction of Agreement. This Agreement has been drafted through a cooperative effort of both parties, and neither party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this Agreement. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the parties.

35.    Confidentiality. All information and material obtained by Purchaser in connection with this Agreement, including, without limitation, the Due Diligence Materials (collectively, the "Confidential Information"), (a) will be held in strict confidence, and (b) will not be disclosed to any third party without Seller's prior written consent. Notwithstanding the immediately preceding sentence, Purchaser may disclose the Confidential Information as required by law or to its respective affiliates, investors, lenders, employees, agents, attorneys or consultants who are responsible for determining the feasibility of Purchaser's acquisition of the Property (collectively, the "Permitted Outside Parties") on the condition that such persons maintain the confidentiality of the Confidential Information. In permitting Purchaser and the Permitted Outside Parties to review the Confidential Information, Seller has not waived any privilege or claim of confidentiality with respect thereto, and no third-party benefits or relationships of any kind, either express or implied, have been offered, intended or created. Seller shall have the right to pursue all of its rights and remedies available to Seller, at law and/or in equity, as a result of any breach by Purchaser or any Permitted Outside Party of this Section 34 and Purchaser shall be responsible to Seller for any breach of this Section 34 by Purchaser or any Permitted Outside Party. In the event this Agreement terminates for any reason, all Confidential Information shall be returned by Purchaser to Seller (or the destruction thereof shall be certified in writing by Purchaser to Seller) as a condition to the return of the Deposit. Purchaser shall also promptly notify Seller in writing of requests for Confidential Information from any third party or regulatory agency. Notwithstanding anything in the foregoing to the contrary, Purchaser shall not issue any press release or otherwise permit any public announcement disclosing the terms of the sale, naming Seller or any of its affiliates as having any involvement in the transaction, or otherwise disclosing any Confidential Information without Seller's prior written consent, which consent Seller may withhold in its sole discretion.

36.    Time of the Essence. It is expressly agreed by the parties hereto that time is of the essence with respect to this Agreement and any aspect thereof.

37.    No Exclusive Negotiations. Seller shall have the right, at all times prior to the Closing, to solicit backup offers and enter into discussions, negotiations, or any other communications concerning or related to the sale of the Property with any third-party; *provided*, *however*, that such communications are subject to the terms of this Agreement, and that Seller shall not enter into any binding contract with a third-party for the sale of the Property unless such contract is contingent on the termination of this Agreement without the Property having been conveyed to Purchaser.

38.    <u>Not an Offer</u>.  The delivery by Seller of this Agreement shall not constitute an offer to sell the Property, and Seller shall have no obligation to sell the Property to Purchaser, unless and until Purchaser and Seller have each executed and delivered this Agreement to the other party.

39.    <u>Survival</u>.  Except for the terms of provisions of (i) Sections <u>15</u>, <u>18</u>, <u>19</u>, <u>23</u>, and <u>34</u> and (ii) any other provisions in this Agreement that by their express terms survive the Closing (the foregoing (i) and (ii) are referred to herein as the "<u>Surviving Obligations</u>"), none of the terms and provisions of this Agreement shall survive the Closing or termination of this Agreement, and all of the terms and provisions of this Agreement (other than the surviving provisions noted above, which shall survive the Closing) shall be merged into the Closing documents and shall not survive the Closing and no party hereto shall have any liability hereunder after the Closing in respect of such provisions that do not survive the Closing.

1.

*[Signatures appear on following page]*

18

**IN WITNESS HEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

PURCHASER:

_____

By:_____

Printed:_____

Title:_____

SELLER:

_____

By:_____

Printed:_____

Title:_____

19

THE UNDERSIGNED HEREBY ACKNOWLEDGES AND AGREES TO BE BOUND BY THE TERMS OF THIS AGREEMENT RELATING TO ESCROW AGENT AND THE DEPOSIT.

ESCROW AGENT:

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____

Name: _____

Title: _____

Date: _____

## Annex I

**Legal Description of Property**

**Annex II**

**[Forms of Closing Documents]**

## Exhibit A-3

**Lease Termination Agreement**

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this [●] day of [●], 2025 (the "Effective Date") between [●] (the "Landlord") and [●] (the "Tenant" or "Debtor", and together with the Landlord, the "Parties").

## RECITALS

WHEREAS, Landlord and Tenant entered into that certain lease dated [●] (the "Lease"), covering certain premises located at [●] (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, on May 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the Parties release each other and Landlord is able to dispose of any remaining furniture, fixtures and equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "Bankruptcy Court Order"):

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.   Subject to the Bankruptcy Court Order, the Lease is terminated effective [●], 2025 (the "Termination Date").  From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease.  Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord.  Tenant acknowledges and agrees that, from and after the Effective Date, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty Partners, LLC) accordingly.

3.      Consideration.  Landlord shall pay to Tenant $[●] (minus any deposits already paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

2

4.    <u>Landlord Release of Tenant</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "<u>Tenant Released Parties</u>"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.    <u>Tenant Release of Landlord</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities (the "<u>Landlord Released Parties</u>," and together with the Tenant Released Parties, the "<u>Released Parties</u>"), of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.    As further consideration for the releases set forth in sections 4 and 5 hereof, the Parties, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.     The Parties agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth in sections 4 and 5 hereof have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.     <u>Conditions Precedent</u>.  As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)     Tenant has delivered possession of the Premises to Landlord;

(b)     Tenant has delivered to Landlord the keys and access codes to the Premises (or provided written confirmation (email being sufficient) that Landlord is authorized to change the locks or access codes); and

(c)     An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.   Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than [●], 2025.

9.     <u>Abandonment</u>.  Subject to Bankruptcy Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any third parties; provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point-of-sale ("<u>POS</u>") systems from the Premises during which time the Landlord shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Tenant to remove any such POS systems.

10.     <u>Authority to Settle</u>.  Each of the Parties respectively represents and warrants that each such Party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such Party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties respectively represent and warrant that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any Party to execute this Agreement.  Each of the Parties further acknowledge that such Party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>.  Each of the Parties respectively represent and warrant that each such Party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>.  Each of the Parties agree that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing Party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each Party hereto shall be deemed original signatures and shall be binding on each such Party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u>  This Agreement shall be governed by and construed under the laws of the State of [●], without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the Parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the Parties shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the Parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the Parties shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.  Because this Agreement was drafted with the participation of all Parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the Parties respectively represent and warrant that each such Party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signature page follows]*

6

IN WITNESS HEREOF, the Parties have duly executed this Agreement as of the Effective Date.


**[LANDLORD]**

By:_____

Print Name:_____

Its:_____


**[TENANT]**

By:_____

Print Name:_____

Its:_____

**Exhibit B**

**Bidder Registration Form**

**OFFER AND BIDDER REGISTRATION FORM**

Bidder, _____ , hereby:

- Offers to purchase the following Leases for the Bid set forth below, pursuant to this Offer & Qualified Bidder Form and the terms and conditions of the accompanying Assumption and Assignment Agreement, and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* approved by the United States Bankruptcy Court for the District of New Jersey in the chapter 11 cases of *In re New Rite Aid, LLC, et al.*, Case No. 25-14861 (MBK) (the "Auction Procedures").

Bidder's offer is for the following Lease(s) at the following Bids:

| LEASE | BID/PURCHASE PRICE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| **Aggregate Purchase Price:** | |

**Bidder hereby warrants and represents as follows:**

(a)     Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Auction Procedures, the terms and conditions of which are incorporated herein by reference.

(b)     Bidder has received, reviewed, and understands the terms and conditions of the Assumption and Assignment Agreement, the terms and conditions of which are incorporated herein by reference.

(c)     To the extent that the words and phrases which are capitalized in this Offer & Qualified Bidder Form have been defined in the Auction Procedures or in the Assumption and Assignment Agreement, those definitions are incorporated herein by reference.

(d)     Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant to the Auction Procedures.

(e)     Each Bid is and shall be a good faith, *bona fide*, irrevocable offer to purchase the applicable Lease on an as-is, where-is basis, with no contingencies.

(f)     Bidder (i) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease in making its offer; (ii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease or the completeness of any information provided in connection therewith or the Auction other than as provided in the Assumption and Assignment Agreement; and (iii) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; (iv) and by submitting an Assumption and Assignment Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "Bankruptcy Code") related in any way to the submission of its Bid, the Auction Procedures, or any earnest money deposit.

(g)     Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder (i) exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) acknowledges that it will comply with the Auction Procedures.

(h)     Bidder acknowledges that, pursuant to, *inter alia*, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i)     Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or the sale.

(j)     Identification of how the Bidder will pay the purchase price at closing.

AGREED & ACCEPTED this _____ day of _____, 2025


Company: _____

By: _____
Name:
Title:


*BIDDER I.D.*

Bidder's Company: _____
Bidder's Address: _____
Bidder's Contact: _____
Bidder's Phone & Facsimile Numbers: _____
Bidder's Email Address: _____
Bidder's Tax ID Number: _____


*ATTORNEY OR AUTHORIZED AGENT I.D.*

Attorney or Agent Name: _____
Law Firm or Company: _____
Address: _____
Phone & Facsimile Numbers: _____
Email Address: _____


*BIDDER WIRING INFORMATION FOR DEPOSIT RETURN*

Bidder's Bank Name: _____
Account Name: _____
Account Number: _____
ABA Number: _____

Bidder's Address: ___

3

## Schedule 2-A

**Lease Auction and Hearing Notice**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF BID DEADLINE, POTENTIAL AUCTION, AND POTENTIAL SALE HEARING FOR CERTAIN LEASE ASSETS

**PLEASE TAKE NOTICE** that on [__], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. [__]] (the "Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the sale, transfer, or other disposition of certain of the Debtors' Leases attached hereto as **Exhibit A** (the "Specified Leases") consistent with the Auction Procedures (the "Auction Procedures") approved by the Court pursuant to the Order. **All interested bidders should carefully read the Auction Procedures and Order.** To the extent that there are any inconsistencies between this notice and the Auction Procedures or Order, the Auction Procedures or Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which the Debtors may, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, choose a stalking horse bidder in connection with the Specified Leases is [●], 2025 at 5:00 p.m., prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Specified Assets must be received pursuant to the Bidding Procedures is **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Bid Deadline")

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements specified by the Auction Procedures by the Bid Deadline, the Debtors will file a notice on the docket in these chapter 11 cases **on or about [●], 2025** and conduct an

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

Auction of certain of the Specified Leases **on or about [●], 2025** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 1009, or by videoconference or such other form of remote communication established by the Debtors (or at any other location, or virtually, as the Debtors may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, the applicable Lease Counterparties, any Qualified Bidders, the Consultation Parties, the U.S. Trustee, counsel to any statutory committees appointed in these cases, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Auction Procedures and the Order.**

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtors select Successful Bidder(s) pursuant to the Auction, the Debtors will file a notice identifying the Successful Bidder(s) **on or about [●], 2025.**

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed Auction must file a written objection (each, an "Auction Objection") with the Court and serve such Auction Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time,** by the following parties (a) proposed co-counsel to the Debtors, (b) counsel to the Stalking Horse Bidder, if any, (c) the Auction Notice Parties, (d) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases, (e) the applicable Successful Bidder(s) and Back-Up Bidder(s), if known, (g) any Lease Counterparty or their known counsel, and (h) any other party that has filed a notice of appearance in these chapter 11 cases (collectively, the "Objection Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the sale of Specified Leases at a hearing scheduled to commence on or before **[●], 2025** (the "Sale Hearing"), at a time to be determined by the Court, or as soon thereafter as the Debtors may be heard, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed sale of any Lease must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline") by (a) the Objection Notice Parties.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, ON OR BEFORE THE AUCTION OBJECTION DEADLINE AND THE SALE OBJECTION DEADLINE, RESPECTIVELY, SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL**

**LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE ASSUMPTION ASSIGNMENT AGREEMENT, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** copies of the Auction Procedures, the Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retainer in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated:  [●], 2025

/s/ DRAFT
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

3

**<u>Exhibit A</u>**

**Specified Leases**

**Schedule 2-A**

**Fee Owned Property Auction and Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[3] | (Jointly Administered) |

**NOTICE OF BID DEADLINE, POTENTIAL AUCTION,
AND POTENTIAL SALE HEARING FOR CERTAIN FEE OWNED PROPERTIES**

**PLEASE TAKE NOTICE** that on [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. [●]] (the "Order")[4] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the sale, transfer, or other disposition of certain of the Debtors Fee Owned Properties attached hereto as **Exhibit A** (the "Specified Properties") consistent with the Auction Procedures (the "Auction Procedures") approved by the Court pursuant to the Order. **All interested bidders should carefully read the Auction Procedures and Order.** To the extent that there are any inconsistencies between this notice and the Auction Procedures or Order, the Auction Procedures or Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which the Debtors may, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, choose a stalking horse bidder in connection with the Specified Properties is [●], 2025 at 5:00 p.m., prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Specified Assets must be received pursuant to the Bidding Procedures is **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Bid Deadline").

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements specified by the Auction Procedures by the Bid Deadline, the Debtors will file a notice on the docket in these chapter 11 cases **on or about [●], 2025** and conduct an Auction of certain of the Specified Properties **on or about [●], 2025** at the offices of Paul, Weiss,

---

[3]   The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[4]   Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 1009, or by videoconference or such other form of remote communication established by the Debtors (or at any other location, or virtually, as the Debtors may hereafter designate on proper notice).

PLEASE TAKE FURTHER NOTICE that, except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only the Debtors, any Qualified Bidders, the Consultation Parties, the U.S. Trustee, counsel to any statutory committees appointed in these cases, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Auction Procedures and the Order.**

PLEASE TAKE FURTHER NOTICE that, in the event that the Debtors select Successful Bidder(s) pursuant to the Auction, the Debtors will file a notice identifying the Successful Bidder(s) **on or about [●], 2025.**

PLEASE TAKE FURTHER NOTICE that any party that objects to the proposed Auction must file a written objection (each, an "Auction Objection") with the Court and serve such Auction Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time,** by the following parties (a) proposed co-counsel to the Debtors, (b) counsel to the Stalking Horse Bidder, if any, (c) the Auction Notice Parties, (d) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases, (e) the applicable Successful Bidder(s) and Back-Up Bidder(s), if known, and (g) any other party that has filed a notice of appearance in these chapter 11 cases (collectively, the "Objection Notice Parties").

PLEASE TAKE FURTHER NOTICE that the Debtors may seek approval of the sale of Specified Properties at a hearing scheduled to commence on or before **[●], 2025** (the "Sale Hearing"), at a time to be determined by the Court, or as soon thereafter as the Debtors may be heard, before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

PLEASE TAKE FURTHER NOTICE that any party that objects to the proposed sale of any Lease must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline") by (a) the Objection Notice Parties.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, ON OR BEFORE THE AUCTION OBJECTION DEADLINE AND THE SALE OBJECTION DEADLINE, RESPECTIVELY, SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE AUCTION OR SALE, AS APPLICABLE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE**

**SET FORTH IN THE APPLICABLE ASSET PURCHASE AGREEMENT, AS APPLICABLE.**

     **PLEASE TAKE FURTHER NOTICE** copies of the Auction Procedures, the Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retainer in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated:  [●], 2025

/s/ DRAFT
──────────────────────────
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com


**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com


*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

## Exhibit A

## Specified Properties

**<u>Schedule 3-A</u>**

**Notice of Successful and Backup Bidders for Certain Lease Sales**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al*., | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SUCCESSFUL [AND BACKUP] BIDDER[S] WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' LEASES

**PLEASE TAKE NOTICE** that on [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief*, [Docket No. [●]] (the "Order")[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale of certain unexpired leases of nonresidential real property (each, a "Lease"), in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025 pursuant to the Order, the Debtors conducted the Auction with respect to certain of the Leases.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to each of the Leases listed on Exhibit A attached hereto. The Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each unexpired lease set forth on Exhibit A is hereby assumed and assigned effective as of the date (the "Assumption Date") set forth in Exhibit A or such other date as the Debtors, any counterparty to such Leases, and the proposed assignee agree.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the sale, transfer, or other disposition of the Leases to the Successful Bidders at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held **on [●], 2025**, before Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

PLEASE TAKE FURTHER NOTICE that any party that objects to the proposed sale of any Lease must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before [●], 2025 at 5:00 p.m., prevailing Eastern Time (the "Sale Objection Deadline") by (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) counsel to any statutory committees appointed in these chapter 11 cases; (e) any affected Lease Counterparty or their known counsel; and (f) the applicable Successful Bidder(s) and Backup Bidder(s), if known.

PLEASE TAKE FURTHER NOTICE that, if no Sale Objection is timely filed, the Debtors may seek to have the Court enter, under a certificate of no objection, an order, substantially in the form Attached hereto as Exhibit B (the "Assumption Order"), approving the assumption and assignment of each Lease set forth in Exhibit A, in each case, effective on the Assumption Date set forth therein or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.[3]

PLEASE TAKE FURTHER NOTICE that, if a Sale Objection is timely filed and not withdrawn or resolved, such Sale Objection will be heard at the Sale Hearing or such other date and time as determined by the Debtors or ordered by the Court. If such Sale Objection is overruled or withdrawn, such Lease shall be assumed, pursuant to an Assumption Order, as of the Assumption Date set forth in Exhibit A or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.

PLEASE TAKE FURTHER NOTICE that, at the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid. Unless the Court orders otherwise or as agreed to by the applicable parties, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the sale following entry of an Assumption Order because

---

[3] An objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders shall not constitute an objection to the assumption and assignment of any other Lease listed in this Notice of Successful and Backup Bidders. Any objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders must state with specificity the Lease(s) to which it is directed. For each particular unexpired lease whose assumption and assignment is not timely or properly objected to, such assumption and assignment will be effective in accordance with this Notice of Successful and Backup Bidders and the Order.

of the breach or failure on the part of the Successful Bidder, within three (3) calendar days thereafter, the Debtors shall file a supplemental notice, seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each Lease, as applicable, will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, within twenty-four (24) hours of the Auction, provide evidence thereof to such applicable Lease Counterparty (and their counsel, if known) thereby demonstrating that the proposed assignee of the Lease has the ability to comply with the requirements of adequate assurance of future performance.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Auction Procedures and the Order, as well as all related exhibits, including the form Assumption and Assignment Agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international); (b) by visiting the website maintained in these chapter 11 cases at **https://restructuring.ra.kroll.com/RiteAid2025**; or (c) for a fee via PACER by visiting http:// www.njd.uscourts.gov.

Dated:  [●], 2025

/s/ DRAFT
_____
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**

**Successful and Backup Bidder List**

| Lease(s) | Lease Counterparty & Address | Successful Bidder | [Backup Bidder] | [Proposed Breakup Fee] | Price | Cure Costs | Assignment Date | Assignee |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**Exhibit B**

**Proposed  Assumption Order**

<table>
<tr><td colspan="2">
<strong>UNITED STATES BANKRUPTCY COURT</strong><br>
<strong>DISTRICT OF NEW JERSEY</strong>
</td></tr>
<tr><td>
In re:<br><br>
NEW RITE AID, LLC, <em>et al.</em>,<br><br>
Debtors. [1]
</td><td>
Chapter 11<br><br>
Case No. 25-14861 (MBK)<br><br>
(Jointly Administered)
</td></tr>
</table>

### [NUMBER] ORDER APPROVING THE
### ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | [Number] Order Approving the Assumption and Assignment of Certain Unexpired Leases |

Upon the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No.___] (the "Final Order")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having jurisdiction over this matter and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having properly filed and served a Notice of Successful and Backup Bidders on the Objection Notice Parties, the Successful Bidder(s), the Backup Bidder(s), and the applicable Lease Counterparties, in accordance with the terms of the Final Order; and no timely objections having been filed to the assumption or assumption and assignment of such Leases; and due and proper notice of the Final Order and the Notice of Successful and Backup Bidders having been provided to each applicable Lease Counterparty as set forth in the assumption schedule (the "Assumption Schedule"), attached hereto as **Exhibit 1**, and it appearing that no other notice need be provided; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Debtors are authorized to assume or assume and assign the Leases listed on

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Final Order or the *Debtors' Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 22].

| Debtors: | NEW RITE AID, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | [Number] Order Approving the Assumption and Assignment of Certain Unexpired Leases |

---

**Exhibit 1**.  The Lease, as amended with the prior consent and written agreement of the applicable Lease Counterparty if applicable, are hereby deemed to be assumed or assumed and assigned by the Debtors pursuant to section 365(a) of the Bankruptcy Code.

2.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of the Contracts listed on **Exhibit 1** shall: (a) be free and clear of (i) all interests including, but not limited to, any liens, claims, rights, interests, charges, or encumbrances, except with respect to any interests related to reciprocal easement agreements or that may be assumed liabilities under the applicable Assumption and Assignment Agreement (collectively, the "Interests") and any Interests shall attach to the proceeds in the same order and priority, as applicable, and subject to all existing defenses, claims, setoffs, and rights and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Lease(s) (but only in connection with the assignment by the Debtor to the Assignee), *provided* that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a lease of non-residential real property, including adjustments, reconciliations, and indemnity obligations, liability for which shall be assumed or assumed and assigned by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the

(Page | 5)
Debtors:            NEW RITE AID, LLC, *et al.*
Case No.            25-14861 (MBK)
Caption of Order:   [Number] Order Approving the Assumption and Assignment of Certain
                    Unexpired Leases

---

applicable Assignee or (B) in respect of any taxes), and (b) constitute a legal, valid, and effective

transfer of such Lease(s) and vest the applicable Assignee or purchase with all rights, titles, and

interests to the applicable Lease(s).  For the avoidance of doubt, all provisions of the applicable

assigned Contract, including any provision limiting assignment, shall be binding on the applicable

Assignee.

3.      Subject to the other provisions of this Order, the Debtors are hereby authorized in

accordance with sections 365(b) and (f) of the Bankruptcy Code to (a) assume and assign to any

Assignee the applicable Lease with any applicable Assignee being responsible only for the post-

assignment liabilities or defaults under the applicable Lease except as otherwise provided for in this

Order and (b) execute and deliver to any applicable Assignee such assignment documents as may be

reasonably necessary to sell, assign, and transfer any such Lease.

4.      The Assignee shall have no liability or obligation with respect to defaults relating

to the assigned Contracts arising, accruing, or relating to a period prior to the applicable

Assumption Date except as otherwise agreed to between the Assignee and the Debtors.

5.      The Debtors are hereby authorized, pursuant to section 363(b) of the Bankruptcy

Code, to enter into the consensual amendments as set forth in the Assumption Notice.

6.      The Debtors are authorized to execute and deliver all instruments and documents

and take all additional actions necessary to effectuate the relief granted in this Order and the

assumption without further order from this Court.

7.      For the avoidance of doubt, the assumption or assumption and assignment of the

Lease(s) shall not be free and clear of, and instead shall be subject to: (a) amounts that are unbilled or

(Page | 6)
Debtors:            NEW RITE AID, LLC, *et al*.
Case No.            25-14861 (MBK)
Caption of Order:   [Number] Order Approving the Assumption and Assignment of Certain
                    Unexpired Leases

---

not yet due as of the Assumption Date, regardless of when such amounts accrued, such as common

area maintenance, insurance, taxes, and similar charges; (b) any regular or periodic adjustment or

reconciliation of charges that are not due or have not been determined as of the Assumption Date; (c)

any percentage rent that may come due; (d) indemnification obligations; (e) any unpaid cure amount,

calculated in accordance with the terms of any applicable amendment or other agreement of the

Parties; and (f) agreements that run with the land such as REAs and COREAs.

        8.      The 14-day stay required of any assignment of any Contract pursuant to Bankruptcy

Rule 6006(d) is hereby waived.

        9.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

<u>Exhibit 1</u>

Assumption Schedule

**Exhibit B**

## <u>Schedule 3-B</u>

**Notice of Successful and Backup Bidders for Certain Fee Owned Property Sales**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SUCCESSFUL [AND BACKUP] BIDDER[S] WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' FEE OWNED PROPERTY

**PLEASE TAKE NOTICE** that on May 5, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief*, [Docket No. [●]] (the "Order")[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale of certain fee owned property (each, a "Fee Owned Property"), in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025 pursuant to the Order, the Debtors conducted the Auction with respect to certain of the Fee Owned Property.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to each of the Fee Owned Properties listed on Exhibit A attached hereto. The Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Fee Owned Property set forth on Exhibit A is hereby sold effective as of the date (the "Closing Date") set forth in Exhibit A or such other date as the Debtors and the proposed purchaser agree.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the sale, transfer, or other disposition of the Fee Owned Property to the Successful Bidders at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held **on [●], 2025**, before Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

**PLEASE TAKE FURTHER NOTICE** that any party that objects to the proposed sale of any Fee Owned Property must file a written objection (each, a "Sale Objection") with the Court and serve such Sale Objection so as to be actually received on or before **[●], 2025 at 5:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline") by (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) counsel to any statutory committees appointed in these chapter 11 cases; and (e) the applicable Successful Bidder(s) and Backup Bidder(s), if known.

**PLEASE TAKE FURTHER NOTICE** that, absent a Sale Objection being timely filed, the sale of each Fee Owned Property shall become effective on the Closing Date set forth in Exhibit A, or such other date as the Debtors and the proposed purchaser agree.

**PLEASE TAKE FURTHER NOTICE** that, if a Sale Objection is timely filed and not withdrawn or resolved, such Sale Objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court. If such Sale Objection is overruled or withdrawn, such Fee Owned Property shall be sold as of the Closing Date set forth in Exhibit A or such other date as the Debtors and the proposed purchaser agree.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid. Unless the Court orders otherwise or as agreed to by the applicable parties, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the sale following entry of a sale order because of the breach or failure on the part of the Successful Bidder, within three (3) calendar days thereafter, the Debtors shall file a supplemental notice on or before the Closing Deadline, seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Auction Procedures and the Order, as well as all related exhibits, including the form Assumption and Assignment Agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international); (b) by visiting the website maintained in these chapter 11 cases at **https://restructuring.ra.kroll.com/RiteAid2025**; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated:  [●], 2025

/s/ DRAFT

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**

**Successful and Backup Bidder List**

| Fee Owned Property | Successful Bidder | [Backup Bidder] | [Proposed Breakup Fee] | Price | Closing Date |
|---|---|---|---|---|---|
| | | | | | |

## <u>Schedule 4</u>

**Assumption and Assignment Notice**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

NEW RITE AID, LLC, *et al.*,

Debtors.[1]

Chapter 11

Case No. 25-14861 (MBK)

(Jointly Administered)

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF CERTAIN OF THE DEBTORS' LEASES

**PLEASE TAKE NOTICE** that on [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief*, [Docket No. [●]] (the "Order")[2] by which the Court, among other things, approved expedited procedures for the assumption of unexpired leases and granted related relief in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025 pursuant to the Order and this written notice (the "Assumption and Assignment Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Lease set forth on Exhibit A attached hereto is hereby assumed and assigned, including with respect to payment of any cure costs (the "Cure Costs") in the amounts set forth on Exhibit A required to assume such Lease, effective as of the date (the "Assumption Date") set forth in Exhibit A or such other date as the Debtors and the Lease Counterparties to such unexpired leases agree.

**PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each applicable Lease will be assigned has the financial wherewithal to meet all future obligations under such Lease and the Debtors will, at the request of the applicable Lease Counterparty use commercially reasonable efforts to provide evidence thereof to such applicable Lease Counterparty (and their counsel, if known), thereby demonstrating that the assignee of the unexpired lease has the ability to comply with the requirements of adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed Cure Costs, assumption and assignment, and/or form of adequate assurance of future performance must file a written objection (each, an "Assumption Objection") with the Court and serve such Sale Objection so as to be actually received on or before [●], **2025 at 5:00 p.m., prevailing Eastern Time** (the "Assumption Objection Deadline") by (a) the Debtors' proposed co-counsel, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Order.

(Attn: Alice Belisle Eaton (aeaton@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Nick Krislov (nkrislov@paulweiss.com)) and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Felice R. Yudkin (FYudkin@coleschotz.com), and Seth Van Aalten (svanaalten@coleschotz.com)); (b) the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder and Lauren Bielskie (the "U.S. Trustee"); (c) counsel to the Prepetition ABL Agent and the DIP Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola (jventola@choate.com), Jonathan D. Marshall (jmarshall@choate.com) and Mark D. Silva (msilva@choate.com)) and (ii) Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, NJ 07932 (Attn: Alan J. Brody (brodya@gtlaw.com) and Julia Frost-Davies (julia.frostdavies@gtlaw.com)); (d) counsel to any statutory committees appointed in these chapter 11 cases; (e) any affected Lease Counterparty or their known counsel; and (f) the applicable Successful Bidder(s) and Backup Bidder(s), if known.

**PLEASE TAKE FURTHER NOTICE** that, if an Assumption Objection is timely filed and not withdrawn or resolved, such Assumption Objection will be heard at the Sale Hearing or such other date and time as determined by the Debtors or ordered by the Court. If such Sale Objection is overruled or withdrawn, such Lease shall be assumed, pursuant to an Assumption Order, as of the Assumption Date set forth in Exhibit A or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.[3]

**PLEASE TAKE FURTHER NOTICE** that, if an Assumption Objection is timely filed and not withdrawn or resolved, such Assumption Objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court. If such Assumption Objection is overruled or withdrawn, such Lease shall be assumed as of the Assumption Date set forth in Exhibit A or such other date as the Debtors, any counterparty to such Lease, and the proposed assignee agree.

**PLEASE TAKE FURTHER NOTICE** that copies of the Auction Procedures and the Order, as well as all related exhibits, including the form Assumption and Assignment Agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or +1 (646) 930-4577 (international); (b) by visiting the website maintained in these chapter 11 cases at **https://restructuring.ra.kroll.com/RiteAid2025**; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

---

[3] An objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders shall not constitute an objection to the assumption and assignment of any other Lease listed in this Notice of Successful and Backup Bidders. Any objection to the assumption and assignment of any particular Lease listed in this Notice of Successful and Backup Bidders must state with specificity the Lease(s) to which it is directed. For each particular unexpired lease whose assumption and assignment is not timely or properly objected to, such assumption and assignment will be effective in accordance with this Notice of Successful and Backup Bidders and the Order.

Dated:   [●], 2025

/s/ DRAFT

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

Exhibit A

Assumption Schedule

**Schedule 2**

**Sale Order**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

In re:

NEW RITE AID, LLC, *et al*.,

Debtors.[1]

Order Filed on September 2, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Chapter 11

Case No. 25-14861 (MBK)

(Jointly Administered)

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT AMONG DEBTORS
AND BUYER, (II) AUTHORIZING THE SALE OF DESIGNATION RIGHTS TO
CERTAIN LEASES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, (III) APPROVING ASSIGNMENT AND ASSUMPTION
PROCEDURES FOR THE DESIGNATION LEASES AND (IV) GRANTING RELATED
RELIEF**

**[Related to Doc. No. 804]**

The relief set forth on the following pages, numbered three (3) through twenty-eight (28),

is **ORDERED**.

DATED: September 2, 2025

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]       The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

Upon the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "Order")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6003, 6004, 6006, 9007 and 9014, and Bankruptcy Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules") 6004-1 and 6004-2, (i) approving the private sale of the designation rights (the "Designation Rights") with respect to the leases of non-residential real property identified on Exhibit A attached hereto (the "Designation Leases") to Five Below, Inc. (together with any affiliated designee, to the extent permitted by the Purchase Agreement (defined below), the "Buyer") in the form of the Asset Purchase Agreement, by and among the Buyer and Debtors Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. (and any applicable affiliates), a copy of which is attached hereto as Exhibit B (the "Purchase Agreement"); (ii) approving (a) assignment and assumption and rejection procedures with respect to the Leases; and (b) the form of order approving assignment and assumption of any designated Leases attached as Exhibit C hereto (the "Assignment and Assumption Order"); and (iii) granting related relief; and the Court having conducted a hearing (the "Sale Hearing") to consider approval of the Motion, including (i) the sale of the Designation Rights and consummation of the Sale Transaction pursuant

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Order.

(Page 4)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

to the terms and conditions of the Purchase Agreement and (ii) the proposed form of Assignment and Assumption Order; and the Court having considered: (i) the Motion and any objections thereto; (ii) the declarations filed in support of the Motion, (iii) the proposed sale of the Designation Rights by the Debtors to the Buyer pursuant to and contemplated by the Purchase Agreement; and (iv) the arguments of counsel made, and evidence adduced, at the Sale Hearing; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Purchase Agreement and the Sale Transaction; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest and that adequate and reasonable notice of the Motion, the Sale Transaction, this Order and the Sale Hearing has been provided to all entities required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; and after due deliberation thereon; and good and sufficient cause appearing therefor,

(Page 5)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

**IT IS HEREBY FOUND AND DETERMINED:**[2]

A.    The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The Court has jurisdiction over the Motion and over the property of the Debtors, including, without limitation, the Designation Rights, the Designation Leases and the Sale Transaction contemplated by the Purchase Agreement, pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference to the Bankruptcy Court under Title 11* from the United States District Court for the District of New Jersey, dated as of September 18, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Cases and the Motion in this District and Court is proper under 28 U.S.C. § 1408.

D.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

---

[2]    All findings of fact and conclusions of law made by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not otherwise inconsistent with the express terms of this Order.

| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

by Bankruptcy Rule 7054, the Court expressly finds there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

E.      The Designation Rights and the Designation Leases constitute property of the Debtors' estates, and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F.      The statutory bases for the relief requested in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, 9007 and 9014 and Local Rules 6004-1 and 6004-2.

G.      The Court entered the Bidding Procedures Order on May 21, 2025.

H.      As evidenced by the affidavits and/or certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of, and reasonable opportunity to object and/or be heard regarding the Motion and the Sale Transaction contemplated by the Purchase Agreement has been provided in accordance with the Bidding Procedures Order, sections 102(1), 363(b) and 365 of the Bankruptcy Code, the applicable Bankruptcy Rules, the applicable Local Rules and the procedural due process requirements of the United States Constitution.  No other notice of the Motion, the Sale Transaction contemplated by the Purchase Agreement, or entry of this Order is necessary or shall be required.

I.      This Order and consummation of the Sale Transaction are supported by good, sufficient and sound business purposes and will serve the best interests of the Debtors, their estates and creditors by maximizing the value obtained from the Designation Rights.

(Page 7)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

J.      The consideration to be paid by the Buyer to the Debtors for the Designation Rights pursuant to the Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Designation Rights; and (iii) constitutes full, fair and adequate consideration and reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and any similar laws of any state or jurisdiction whose law is applicable to the sale of the Designation Rights.  No other entity or group of entities has offered to purchase the Designation Rights with a higher or otherwise better offer than the Buyer.

K.      The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the consummation of the Sale Transaction outside the ordinary course of business.  Such business reasons, include, without limitation, the following: (i) the Purchase Agreement and the Sale Transaction constitute the highest or otherwise best offer for the Designation Rights; (ii) the Purchase Agreement and the Sale Transaction present the best opportunity to realize the value of the Designation Rights and the Designation Leases and avoid the decline and devaluation of the Designation Rights and the Designation Leases; (iii) time is of the essence in promptly consummating the Sale Transaction to maximize the value of the Debtors' estates and, given all of the circumstances in these chapter 11 cases, among other things, the adequacy and fair value received for the Designation Rights and the Designation Leases constitutes a reasonable and sound exercise of the Debtors' business judgment; and (iv) any other transaction, including, without limitation, pursuant to a chapter 11 plan of reorganization or liquidation, would not have yielded as favorable an economic result.

| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

L.       As used in this Order, the term "Interest" includes, in each case to the extent against

or with respect to any of the Debtors or in, on, or against or with respect to the Designation Rights:

liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section

101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees,

actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations,

contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or

unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11

Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including,

but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests,

hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way,

encroachments, restrictive covenants, restrictions on transferability or other similar restrictions,

rights of offset or recoupment, rights of use or possession, subleases, leases, condition sale

arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes

of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of

recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions,

indemnification claims, or liabilities relating to any act or omission of the Debtors or any other

person, consent rights, options, contract rights, covenants, and interests of any kind or nature

(Page 9)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Designation Rights, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA

(Page 10)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing Date[3]; (x) any unexpired and executory contract or unexpired lease to which a Debtor is a party; and (xi) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

M.    The Debtors may sell the Designation Rights free and clear of all Interests (unless otherwise expressly assumed under, or expressly permitted by, the Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests that objected to the Sale Transaction or the Motion and that have any Interests in the Designation Rights could be compelled in a legal or equitable

---

[3]    "Closing Date" means the date on which the Transaction closes.

| | |
|---|---|
| (Page 11) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests in the Designation Rights attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interests, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors and their estates. Any Interest holders that did not object, or that withdrew their objections, to the Motion or the Sale Transaction, are deemed to have consented to the sale of the Designation Rights free and clear of their respective Interests in the Designation Rights pursuant to section 363(f)(2) of the Bankruptcy Code.

N.    The Buyer would not have entered into the Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Designation Rights were not free and clear of all Interests (other than those Interests expressly assumed under, or expressly permitted by, the Purchase Agreement), or if the Buyer would, or in the future could, be liable for any such Interests. A sale of the Designation Rights other than one free and clear of all Interests would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Designation Rights and the Debtors' estates, with less certainty than provided by the Sale Transaction. The total consideration to be provided under the Purchase Agreement reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of, the Designation Rights

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

free and clear of all Interests, including, without limitation, any potential derivative, vicarious, transferee or successor liability Interests.

O.      The disclosures made by the Debtors concerning the Motion, the Sale Hearing, the Purchase Agreement, the Sale Transaction and the relief granted herein were good, complete and adequate.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all interested persons and entities consistent with the requirement of the Bankruptcy Code, Bankruptcy Rules and Local Rules.

P.      Neither the Buyer nor any of its affiliates, officers, directors, partners or any of their respective successors or assigns is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code.

Q.      The Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith and from an arm's-length bargaining position, and is substantively and procedurally fair to all parties.  The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections and immunities afforded thereby and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction nor the sale of the Designation Rights to the Buyer free and clear of Interests, unless such authorization is duly stayed pending such appeal.  The Buyer has acted in good faith in all respects in connection with this proceeding, in that: (i) the Buyer recognized that the Debtors were free to deal with other parties interested in acquiring the Designation Rights; (ii) all payments

| Debtors: | New Rite Aid, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

to be made by the Buyer and other agreements entered into by the Buyer in connection with the sale of the Designation Rights have been disclosed; and (iii) the negotiation and execution of the Purchase Agreement and related agreements was in good faith and was an arm's-length transaction. Neither the Debtors nor the Buyer have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Purchase Agreement, or to otherwise prevent the consummation of the Sale Transaction contemplated by the Purchase Agreement.  The Buyer has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale Transaction contemplated by the Purchase Agreement at any time after entry of this Order.

R.    Except as expressly set forth in the Purchase Agreement, the Buyer shall not have any liability or obligation for any lien, claim, encumbrance or interest, or other obligation of or against the Debtors, related to the Designation Rights by reason of the transfer of the Designation Rights to the Buyer.

S.    Neither the Buyer nor any of its affiliates, officers, directors, partners or any of their respective successors or assigns, as a result of any action taken in connection with the purchase of the Designation Rights, shall be deemed to: (i) be a successor (or other similarly situated party) to the Debtors; or (ii) have, *de facto* or otherwise, merged with or into the Debtors.  The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement and/or the Assignment and Assumption Order.

(Page 14)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

T.      Except as otherwise provided in the Purchase Agreement, the transfer of the Designation Rights to the Buyer will not subject the Buyer to any liability for claims against the Debtors by reason of such transfer under the laws of the United States, any state, territory or possession thereof, including, without limitation, claims relating to the operation of the Debtors' business before the Closing Date, including: (i) workmen's compensation, occupational disease, or unemployment or temporary disability insurance claims; (ii) environmental liabilities, debts, claims or obligations which may be asserted on any basis; (iii) any successor liability to any state taxing authority with regard to any tax; and (iv) any bulk sales or similar law.

U.      Neither the Sale Transaction nor the Purchase Agreement impermissibly restructure the rights of the Debtors' creditors or impermissibly dictate the terms of a chapter 11 plan of the Debtors.  Neither the Sale Transaction nor the Purchase Agreement constitute a *sub rosa* plan and are not in violation of creditors' voting rights.

V.      Subject to entry of this Order, the Debtors, acting by and through their existing agents, representatives and officers, have full corporate power and authority to execute, deliver and perform under the Purchase Agreement, and no further consents or approvals are required for the Debtors to consummate the Sale Transaction, except as otherwise provided in the Purchase Agreement.

W.      The potential assumption and assignment of the Designation Leases pursuant to the terms of this Order, including, by incorporation, the form of Assignment and Assumption Notice (as defined herein) and the form of Assignment and Assumption Order, are integral to the Purchase

(Page 15)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

Agreement and are in the best interests of the Debtors and their estates, their creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. For the avoidance of doubt, notwithstanding anything to the contrary set forth in this Order or the Purchase Agreement, the sale, conveyance, assignment and transfer of the Designation Rights to the Buyer does not, in and of itself, effectuate a sale, conveyance, assignment or transfer of any Designation Lease to the Buyer or an assumption by the Buyer or any other Assignee of any Designation Lease.

X. To maximize the value of the Designation Rights and the Designation Leases, it is essential that the closing of the Sale Transaction occurs within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale Transaction.

Y. The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion.

Z. The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such section shall have been complied with in respect of the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## I. Approval of the Sale Transaction and Entry into the Purchase Agreement

1. The Debtors are hereby authorized to enter into the Purchase Agreement and the Sale Transaction contemplated therein. The failure specifically to include any particular provision

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision.

2.    Any and all objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.[4]

## II.    Consummation of Sale Transaction

3.    Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with the terms of the Purchase Agreement and to close and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order.

4.    The Debtors, their affiliates and their respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement or to

---

[4] Notwithstanding anything to the contrary in this Order or the Motion, the *Objection of TMT Bear Creek Shopping Center, Inc. to Notice of Assumption and Assignment of Lease* [Docket No. 1796], the *Response and Reservation of Rights of B10 Maintain B LA LP, MGP XI-A Town Center Lake Forest, LLC and ROIC Paramount Plaza, LLC to Debtors' Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 1804], and the *Objection of DS Properties 18 LP to Notice of Assumption and Assignment of Certain of the Debtors' Leases* [Docket No. 1813] are preserved and the respective objecting parties may assert all potential issues and objections raised therein if and when Debtors seek to assign the applicable leases to the Buyer without the need to file a further objection.

(Page 17)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

implement the Sale Transaction, all without further order of the Court.  For the avoidance of doubt, notwithstanding anything to the contrary set forth in this Order or the Purchase Agreement: (i) the sale, conveyance, assignment and transfer of the Designation Rights to the Buyer shall not, in and of itself, effectuate a sale, conveyance, assignment or transfer of any Designation Lease to the Buyer or an assumption by the Buyer or any other Assignee of any Designation Lease, which sale, conveyance, transfer and assumptions shall occur only upon the occurrence of an applicable Lease Assignment Closing Date and only to the Assignee specified in connection therewith pursuant to an Assignment and Assumption Order entered by this Court; and (ii) all rights of the applicable counterparty to a Designation Lease to object to the assignment of such Designation Lease and the form of Assignment and Assumption Order, prior to the applicable Assignment and Assumption Order becoming a final order, are fully preserved.

5.      Any amounts paid by the Buyer in respect of the August Rent, September Rent, or October Rent, if any and as applicable, shall be used solely to pay August Rent, September Rent, and/or October Rent (or to reimburse the Debtors for the payment of such August Rent, September Rent, or October Rent) and shall not be used by the Debtors or any other person or entity for any other purpose, and any amounts paid by the Buyer directly to the Debtors in respect of Carrying Costs shall be used solely to pay such Carrying Costs (or to reimburse the Debtors for the payment of such Carrying Costs) and shall not be used by the Debtors or any other person or entity for any other purpose.  Unless otherwise agreed to by the Buyer and the Debtors, the Debtors shall be the party responsible for issuing and making, and are hereby authorized to issue and make, payments

(Page 18)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

in connection with the August Rent, September Rent, October Rent, and Carrying Costs to the applicable landlord, regulatory agency, taxing authority, third party provider of maintenance services and/or other person or entity entitled to receive such payment. Upon closing of the sale of the Designation Rights, the August Rent shall be released from escrow to the Debtors for distribution to the landlords or, if applicable, to the Debtors to reimburse payments made to applicable landlords on account of August Rent, in accordance with the Purchase Agreement.

6.  Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Purchase Agreement.

7.  This Order and the Purchase Agreement, and any actions taken pursuant hereto or thereto, shall survive entry of any order (a) confirming or consummating any plan of reorganization or liquidation of the Debtors, (b) converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or (c) dismissing the Chapter 11 Cases. This Order and the Purchase Agreement shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Interests or claims (whether known or unknown) against any Debtor, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer and all successors and assigns of the Buyer, and any trustees, examiners or other fiduciaries under any section of the Bankruptcy Code, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Chapter 11 Cases. For the

(Page 19)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

avoidance of doubt, nothing in this Order shall waive or modify any deadline or requirement provided in section 365(d)(4) of the Bankruptcy Code.

8.      The terms and provisions of the Purchase Agreement and this Order shall inure to the benefit of the Debtors, their estates and their creditors, the Buyer and its Affiliates, designees, successors and assigns, notwithstanding any subsequent appointment of any trustee(s), party, entity or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity or other fiduciary such terms and provisions likewise shall be binding.

## III.   Designation Rights Procedures

9.      The procedures for the Buyer to exercise the Designation Rights set forth in the Purchase Agreement and this Order are approved.

10.      The Debtors are authorized, at the direction of the Buyers pursuant to the Purchase Agreement, to seek to assume and assign, pursuant to sections 363 and 365 of the Bankruptcy Code and the Bidding Procedures Order, the Designation Leases to a designated Assignee.  Each of the Designation Leases constitutes an unexpired lease within the meaning of section 365 of the Bankruptcy Code.  During the Designation Rights Period, Designation Leases designated by the Buyer for assumption and assignment will be deemed assumed and assigned by the Debtors effective in accordance with the timing and the procedures set forth in the Purchase Agreement, the Bidding Procedures Order, the Assignment and Assumption Notice and below.  Subject to entry of an Assignment and Assumption Order, the assumption of any liabilities under the Leases shall constitute a legal, valid and effective delegation of all liabilities thereunder to the applicable

| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

Assignee and, following payment of any Amounts related thereto and except as expressly set forth in the Purchase Agreement, this Order or the Bidding Procedures Order shall divest the Debtors of all liability with respect to such Designation Leases for any breach of such Lease occurring after the applicable Lease Assignment Closing Date; *provided, however*, that prior to the Lease Assignment Closing Date, nothing herein shall relieve the Debtors of their obligations under the Designation Leases pursuant to the Bankruptcy Code.  Upon instruction from the Buyer, the Debtors shall file and serve on the applicable landlord a *Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases*, in substantially the form attached hereto as <u>Exhibit D</u> and with such modifications as are necessary to conform to the terms of the Purchase Agreement and this Order (an "<u>Assignment and Assumption Notice</u>"), together with a proposed Assignment and Assumption Order, substantially in the form attached as <u>Exhibit C</u> hereto.

11.     Any party seeking to object to the assumption and assignment of any Designation Lease (an "<u>Assignment and Assumption Objection</u>") must do so in accordance with the procedures outlined in the Assignment and Assumption Notice.

12.     If no Assignment and Assumption Objection is filed by the Assumption Objection Deadline, the Debtors may submit to the Court the Assignment and Assumption Order attached to the Assignment and Assumption Notice, under certification of counsel and without further notice or hearing.

13.     If an Assignment and Assumption Objection is timely filed and not withdrawn, the Debtors, the Buyer and the objecting landlord shall have authority to compromise, settle or

| (Page 21) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

otherwise resolve any objections without further order of the Court. If the Debtors, the Buyer and the objecting landlord determine that the objection cannot be resolved without judicial intervention, then the Debtors, with the consent of the Buyer, shall schedule a hearing on such objection in accordance with the Rejection and Assumption Procedures Order.

14.     All entities are hereby forever prohibited and permanently barred, estopped and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Designation Rights to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

15.     Effective as of the Closing Date, the sale and assignment of the Designation Rights by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Designation Rights, notwithstanding any requirement for approval or consent by any person, and will vest the Buyer with all right, title and interest of the Debtors in and to the Designation Rights, free and clear of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

16.     Subject to the terms of an Assignment and Assumption Order entered as to any Designation Lease, such Designation Lease shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and Interests of any kind, pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code.

17.     The provisions of this Order authorizing the sale and transfer of the Designation Rights free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer

| Debtors: | New Rite Aid, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of this Order.  For the avoidance of doubt, on or after the Closing Date, the Debtors and/or the Buyer shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Interests on the Designation Rights pursuant to the terms of this Order.

18.     This Order shall be (i) effective as a determination that, as of the Closing Date, all Interests on the Designation Rights (except as otherwise expressly assumed under, or expressly permitted by, the Purchase Agreement) shall be unconditionally released, discharged and terminated as to the Buyer and the Designation Rights; and (ii) binding upon all persons and entities, including all the Debtors' creditors and any holder of an Interest on the Designation Rights to any of the Designation Leases, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests on the Designation Rights, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interests on the Designation Rights has not delivered to the Debtors on or before the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Designation Rights, the Debtors and/or the Buyer are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction or other documents with

| (Page 23) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

respect to the Designation Rights on behalf of the applicable person or entity; and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Designation Rights.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

19.     Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Designation Rights to the Buyer in accordance with the Purchase Agreement and this Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order, or in seeking assignment of a Designation Lease to an Affiliate of the Buyer at the direction of the Buyer consistent with the Purchase Agreement.

**IV.     No Successor or Other Derivative Liability**

20.     By virtue of the Sale Transaction, the Buyer and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, de facto or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and, except as provided in the Purchase Agreement, the Buyer has not assumed nor is it in any way responsible for any liability or

(Page 24)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

obligation of the Debtors or the Debtors' estates. Except as expressly set forth in the Purchase Agreement, the Buyer and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any assumed and assigned Designation Lease prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

21.     Subject to any other orders of this Court and the requirements of the Purchase Agreement, if, prior to each Lease Assignment Closing, the Debtors do not remove FF&E and Trade Fixtures in any applicable Designated Store, such FF&E and Trade Fixtures shall be deemed abandoned to the Buyer or the applicable Assignee effective upon the Lease Assignment Closing pursuant to section 554 of the Bankruptcy Code.  For the avoidance of doubt, and except as may be further negotiated by the Debtors and the Buyer, the Debtors shall remove all inventory prior to each Lease Assignment Closing.

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No.: | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

## V.    Other Provisions

22.    The Purchase Agreement may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on either the Debtors or the Buyer.

23.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, (i) to allow the Buyer to give the Debtors any notice provided for in the Purchase Agreement, (ii) to allow the Buyer to take any and all actions permitted by the Purchase Agreement in accordance with the terms and conditions thereof, including, without limitation, effectuating the Sale Transaction and (iii) to otherwise implement the terms and provisions of the Purchase Agreement and this Order.

24.    The Sale Transaction is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Designation Rights, free and clear of claims, unless such authorization is duly stayed before the closing of the sale of Designation Rights pending such appeal.  The Buyer is a good faith purchaser of the Designation Rights and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Order.

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

25.    Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement or the Sale Transaction.

26.    Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal will be foreclosed as moot.

27.    No bulk sales laws, bulk sales tax law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

28.    In the event that there is a direct conflict between the terms of this Order, the Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Order, the Purchase Agreement, and any documents executed in connection therewith shall govern, in that order. Except as agreed by the Buyer and Debtors, nothing contained

| Debtors: | New Rite Aid, LLC, *et al.* |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

in any chapter 11 plan hereinafter confirmed in these Chapter 11 Cases, any order confirming such plan, or in any other order of any type or kind entered in these Chapter 11 Cases (including any order entered after any conversion of any or all of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

29.     Notwithstanding anything to the contrary in this Order, the Auction Procedures, Bidding Procedures Order, any Assumption and Assignment Notice, any Assumption and Assignment Order, Purchase Agreement, the Assignment Agreement, side letter(s), or any document or agreement related to any of the forgoing, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors,  and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assumed and assigned, assigned, or otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator; provided, however, that, to the extent any claim with respect to any Designated Lease arises that is covered by any of the Debtors' insurance policies, the Debtors may pursue such claim in accordance with the terms of the applicable insurance policy, and, if applicable, turn over to Buyer any such insurance proceeds (each, a "<u>Proceed Turnover</u>"),

(Page 28)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief |

provided, further, however, that none of the Debtors' insurers shall not have any duty to Buyer  to

effectuate a Proceed Turnover or liability to Buyer related to a Proceed Turnover.

30.    To the extent that this Order is inconsistent with any prior order or pleading with

respect to the Motion in the Chapter 11 Cases, the terms of this Order shall govern.

31.    The provisions of this Order are non-severable and mutually dependent.

32.    The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order.

33.    This Court shall retain jurisdiction to, among other things, interpret, enforce and

implement the terms and provisions of this Order and the Purchase Agreement, all amendments

thereto, any waivers and consents thereunder (and of each of the agreements executed in

connection therewith), to adjudicate disputes related to this Order or the Purchase Agreement (and

such other related agreements, documents or other instruments) and to enforce the injunctions set

forth herein.

34.    All time periods set forth in this Order and the Purchase Agreement shall be

calculated in accordance with Bankruptcy Rule 9006(a).

## Exhibit A

## Designation Leases

| Store # | Location Code | Location Address |
|---------|---------------|------------------|
| 5199 | 05199-01 | 17220 REDMOND WAY NORTHEAST, REDMOND, WA, 98052 |
| 5225 | 05225-01 | 17171 BOTHELL WAY, NE, STE.150, LAKE FOREST PARK, WA, 98155 |
| 5386 | 05386-01 | 915 NORTHEAST D STREET, GRANTS PASS, OR, 97526 |
| 5395 | 05395-01 | 1900 SW COURT PLACE, PENDLETON, OR, 97801 |
| 5464 | 05464-01 | 11096 JEFFERSON BOULEVARD, CULVER CITY, CA, 90230 |
| 5512 | 05512-02 | 8447 ALONDRA  BOULEVARD, PARAMOUNT, CA, 90723 |
| 5529 | 05529-01 | 647 FOOTHILL BOULEVARD, LA CANADA FLINTRIDGE, CA, 91011 |
| 5775 | 05775-02 | 2400 B LAS POSAS ROAD, CAMARILLO, CA, 93010 |
| 5807 | 05807-02 | 2501 HIGHWAY 46, WASCO, CA, 93280 |
| 6195 | 06195-01 | 9000-A MING AVENUE, BAKERSFIELD, CA, 93311 |
| 6939 | 06939-01 | 5500 OLYMPIC DR, GIG HARBOR, WA, 98335 |
| 11122 | 11122-01 | 284 EAST LANCASTER AVENUE, WYNNEWOOD, PA, 19096 |

## Exhibit B

**Purchase Agreement**

**ASSET PURCHASE AGREEMENT**

by and among

**THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY and
THRIFT DRUG, INC.**
collectively, as Seller,

and

**FIVE BELOW, INC.**
as Buyer

August                    , 2025

Error! Unknown document property name.

## TABLE OF CONTENTS

ARTICLE 1      Definitions .................................................................................1

Section 1.1    Definitions ................................................................................ 1

ARTICLE 2      Agreement; Purchase Price ..........................................................7

Section 2.1    Agreement to Sell and Purchase the Designation Rights ................................ 7
Section 2.2    Payments. ............................................................................... 7
Section 2.3    Agreement to Assign the Designated Leases .............................. 8
Section 2.4    Cure Costs ............................................................................. 8

ARTICLE 3      Deposit ....................................................................................8

Section 3.1    Deposit .................................................................................. 8

ARTICLE 4      Election to Assume/Take Assignment of Designated Leases ...........8

Section 4.1    Election .................................................................................. 8
Section 4.2    Seller's Obligations During Designation Rights Period ................... 9
Section 4.3    Assumption ........................................................................... 10

ARTICLE 5      Personal Property/FF&E and Trade Fixtures .................................11

Section 5.1    Removal ............................................................................... 11

ARTICLE 6      Inspection and Confidentiality ...................................................11

Section 6.1    Access .................................................................................. 11

ARTICLE 7      Conditions Precedent, Casualty Damage or Condemnation ...........12

Section 7.1    Conditions Precedent For Lease Assignment Closings Favoring Buyer. ........ 12
Section 7.2    Conditions Precedent Favoring the Seller ................................ 13
Section 7.3    Risk of Casualty and Condemnation. ...................................... 13

ARTICLE 8      Representations, Warranties and Covenants ..................................14

Section 8.1    Buyer Representations ............................................................ 14
Section 8.2    Seller Representations ............................................................ 15
Section 8.3    Notice of Breach. ................................................................... 16

ARTICLE 9      Bankruptcy Court Matters .........................................................17

Section 9.1    Bankruptcy Court Matters ...................................................... 17

ARTICLE 10     Lease Assignment Closings ........................................................18

Section 10.1   Time and Place of Lease Assignment Closings. ......................... 18
Section 10.2   Seller's Deliveries ................................................................. 18
Section 10.3   Buyer's Deliveries ................................................................. 19
Section 10.4   Closing Costs ........................................................................ 19

# TABLE OF CONTENTS
### (continued)

|  |  | **PAGE** |
|---|---|---|
| ARTICLE 11 | No Real Estate Commission | 20 |
| ARTICLE 12 | Default | 20 |
| Section 12.1 | Buyer Default | 20 |
| Section 12.2 | Seller Default | 21 |
| Section 12.3 | Breach of Representations. | 22 |
| ARTICLE 13 | Miscellaneous | 22 |
| Section 13.1 | Entire Agreement | 22 |
| Section 13.2 | Binding on Successors and Assigns | 22 |
| Section 13.3 | Assignment by Buyer | 22 |
| Section 13.4 | Waiver | 22 |
| Section 13.5 | Governing Law; Jurisdiction | 23 |
| Section 13.6 | Counterparts | 23 |
| Section 13.7 | Notices | 23 |
| Section 13.8 | Time Periods | 24 |
| Section 13.9 | Modification of Agreement | 25 |
| Section 13.10 | Further Instruments | 25 |
| Section 13.11 | Descriptive Headings; Word Meaning | 25 |
| Section 13.12 | Time of the Essence | 25 |
| Section 13.13 | Construction of Agreement | 25 |
| Section 13.14 | Limitations on Liability | 25 |
| Section 13.15 | Severability | 25 |
| Section 13.16 | Joint and Several | 26 |

<u>Exhibits and Schedules</u>

Exhibit A:          Form of Sale Order

Exhibit B:          Form of Assumption and Assignment Order

Schedule A:         Leases (including Gross Rent and Cure Costs)

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "<u>Agreement</u>") is dated as of August ___, 2025 (the "<u>Effective Date</u>") by and among (a) **THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY and THRIFT DRUG, INC.** (collectively, the "<u>Company</u>" and  individually or collectively, as the context may require, "<u>Seller</u>"), and (b) **FIVE BELOW, INC**. (together with its permitted designees, successors and assigns, "<u>Buyer</u>").

## RECITALS

A.      Commencing on May 5, 2025 (the "<u>Petition Date</u>"), each Seller and certain of their respective Affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>" and such bankruptcy proceeding, the "<u>Bankruptcy</u>").

B.      Each applicable Seller is the owner of the tenant's or lessee's interest in those certain existing real property leases briefly described (and noted as belonging to it) on <u>Schedule A</u> (all of Seller's right, title and interest in, to and under such real property leases, each a "<u>Lease</u>" and collectively the "<u>Leases</u>") relating to certain store locations (the address of which, August Rent and anticipated cure costs are also noted on such <u>Schedule A</u> for each applicable Lease) operated, or previously operated, by the Company or any of its Affiliates (each a "<u>Store</u>" and collectively the "<u>Stores</u>").

C.      Pursuant to an order issued by the Bankruptcy Court which is consistent with the terms of this Agreement, which approves the transactions contemplated herein pursuant to section 363 of the Bankruptcy Code, and which order shall be substantially in the form of <u>Exhibit A</u> attached hereto and acceptable to Buyer in Buyer's sole discretion (such order, the "<u>Sale Order</u>"), Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, subject to and upon the terms and conditions contained in this Agreement, the Designation Rights.

D.      Upon issuance of the Sale Order, the Designation Rights shall be granted to Buyer and pursuant thereto, upon the terms and conditions set forth herein, Buyer shall have the right to acquire, or designate an Assignee to acquire, and Seller agrees to assume and assign to Buyer or such designated Assignee, the Designated Leases upon the issuance of an Assumption and Assignment Order by the Bankruptcy Court and otherwise on the terms and conditions set forth herein.

**NOW, THEREFORE,** in consideration of the mutual promises hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE 1
### Definitions

**Section 1.1    Definitions**.  Capitalized terms used in this Agreement shall have the meanings set forth below:

"<u>Additional Cash Consideration</u>" shall mean Seventy Thousand and No/Dollars ($70,000.00) per Designated Lease for which the Bankruptcy Court enters a final order assigning such Designated Lease to Buyer in excess of five (5) Designated Leases.

"<u>Affiliate</u>" shall mean, with respect to any Person, any other Person that, directly or indirectly, Controls, is Controlled by or is under common Control with such Person. The term "<u>Affiliated</u>" shall have the correlative meaning.

"<u>Agreement</u>" shall mean this Agreement, including all Exhibits and Schedules attached hereto, as the same may be amended, modified or supplemented from time to time in writing by Seller and Buyer.

"<u>Assignee</u>" shall mean an Affiliate of Buyer designated by Buyer to take an assignment of a Designated Lease, by written notice to Seller, which designation can be made by Buyer in its sole and absolute discretion.

"<u>Assumption and Assignment Notice</u>" shall mean a notice provided by Seller to each landlord with respect to a Designated Lease made in accordance with and pursuant to the terms set forth in the Assumption and Assignment Order.

"<u>Assumption and Assignment Order</u>" shall have the meaning set forth in <u>Section 9.1</u>.

"<u>August Rent</u>" shall mean the amount shown in the column identified as "Monthly Rent" on <u>Schedule A</u> for all Leases.

"<u>Bankruptcy Code</u>" shall mean Title 11, United States Code, 11 U.S.C. §§ 101-1532.

"<u>Bankruptcy Court</u>" shall have the meaning set forth in <u>Recital A</u>.

"<u>Bidding Procedures Order</u>" shall mean the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice with Respect Thereto, and (VII) Granting Related Relief* [Docket No. 473].

"<u>Broker</u>" shall have the meaning set forth in <u>Article 11</u>.

"<u>Business Day</u>" shall mean any day of the week other than (a) Saturday and Sunday, (b) a day on which banking institutions in the State of New York are obligated or authorized by law or executive action to be closed to the transaction of normal banking business, or (c) a day on which governmental functions in New York, New York or the State of New York are interrupted because of extraordinary events such as hurricanes, power outages, declarations of national or local emergency or acts of terrorism.

"<u>Buyer</u>" shall have the meaning set forth in the preamble of this Agreement.

"Buyer Assumption Notice" shall have the meaning set forth in Section 4.1.

"Buyer Representations" shall have the meaning set forth in Section 8.1.

"Buyer Representatives" shall have the meaning set forth in Section 6.1.

"Carrying Costs" means, with respect to any Store, all expenses related to utilities, property taxes and assessments, insurance policies maintained as set forth in Section 4.2(d), property loss (beyond any applicable insurance proceeds and so long as Seller or the landlord under the relevant Lease, as applicable, has maintained all applicable insurance policies as provided by this Agreement and the Leases and including, other than with respect to any Store that Buyer or an Assignee is not taking an assignment of, the amount of any deductible allocated to such loss) and the continuation of existing levels of maintenance and security services in the manner and to the extent existing as of the Petition Date, or required under the Lease, which are not included in August Rent and which expenses are attributable to the period commencing as of the Effective Date and ending on the earlier of: (i) the Lease Assignment Closing for such Store or (ii) one (1) day after the effective date of rejection of the Lease applicable to such Store, so long as Seller has promptly filed a motion to reject such Lease (which order shall contain a future effective date of rejection that is acceptable to Buyer) upon the earlier of: (x) the business day following the date that Buyer notifies Seller in accordance with the terms hereof that it does not desire to assume such Lease, or (y) the Expiration Date.  In addition, Carrying Costs shall include an amount equal to September Rent, October Rent and November Rent (each as applicable) with respect to the applicable amounts due to such landlords.

"Cash Consideration" shall mean the sum of Three Hundred Fifty Thousand and No/100 Dollars ($350,000.00).

"Code" shall mean the Internal Revenue Code of 1986, and all amendments thereto and all regulations issued thereunder.

"Consequential Damages" shall mean, with respect to an indemnified matter, consequential, speculative, punitive or similar special damages incurred by the indemnified party.

"Control" shall mean, with respect to any Person, (a) the ownership of more than fifty percent (50%) of the Equity Interests of such Person or (b) the power (whether or not exercised) to elect a majority of the directors or managers of such Person or to exercise voting control of such Person or to otherwise direct or cause the direction of the management and policies of such Person through the ownership of Equity Interests, whether by contract or otherwise. The terms "Controlled by", "Controlling" and "under common Control with" shall have their respective correlative meanings.

"Cure Costs" shall have the meaning set forth in Section 2.4.

"Deposit" shall have the meaning set forth in Section 3.1.

"Designated Leases" shall mean the Leases designated by Buyer pursuant to the provisions of Section 4.1.

3

"Designation Rights" shall mean the exclusive right to irrevocably, subject to the express provisions herein, select, identify and designate (on one or more occasions) Leases as Designated Leases in respect of which Buyer, or its Assignee, will, subject to the terms and conditions provided for in this Agreement and the Sale Order, acquire all of Seller's right, title and interest in and to the applicable Designated Leases, together with all of Seller's right, title and interest in and to certain related assets as set forth in Article 4.

"Designation Rights Period" shall mean, with respect to any Lease, the period commencing on the date that the Sale Order becomes a final order and ending on the date which is the earliest of (i) the date on which such Lease is assumed and assigned to Buyer or an Assignee, (ii) the date on which Seller has received a written notice from Buyer that Buyer has elected not to designate such Lease as a Designated Lease (an "Undesignated Lease"), and (iii) the Expiration Date (or, to the extent the landlord with respect to the applicable Lease consents to the extension of the deadline for assumption or rejection of such Lease to a later date, such later date as is reasonably acceptable to Seller and Buyer).

"Designated Store" shall mean a Store that is the subject of a Designated Lease.

"DIP Agent" shall have the meaning given to such term in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 1396].

"Effective Date" shall have the meaning set forth in the Preamble of this Agreement.

"Expiration Date" shall have the meaning set forth in Section 4.1.

"Final Closing Statement" shall have the meaning set forth in Section 10.4(b).

"FF&E and Trade Fixtures" shall mean any kind of point of sale equipment and furniture, fixtures, and equipment (including but not limited to, machinery, rolling stock, office equipment and personal property, conveyor systems, racking, shelving, checkout counters, partitions, any kind of furniture, and window treatments) owned by Seller.

"Governmental Authorities" shall mean, collectively, any government, court, regulatory or administrative agency, commission or authority or other governmental instrumentality, federal, state, municipal or local, domestic, foreign or multinational entity or body having jurisdiction over (a) the Person in question or (b) the applicable Store or any part thereof.

"Laws and Regulations" shall mean, collectively, all present and future applicable building, fire, sanitary, zoning, environmental, housing and other statutes, laws, ordinances, codes, orders, restrictions, resolutions, requirements, rules and regulations of all Governmental Authorities having jurisdiction with respect to the Leases or Stores or any thereof, including, without limitation, landmark designations and all zoning variances and special exceptions, if any.

"Lease" or "Leases" shall have the meaning set forth in Recital B.

4

"Lease Assignment Closing" shall mean the consummation of the assignment of any Designated Leases as contemplated pursuant to the terms of this Agreement.

"Lease Assignment Closing Date" shall have the meaning set forth in Section 4.1.

"Losses" shall mean, with respect to a particular indemnified matter, any and all claims, demands, causes of action, losses, liabilities, costs and expenses (including reasonable attorneys' fees, court costs and disbursements) arising from or in connection with such matter, but excluding in all cases Consequential Damages.

"November Rent" shall mean an amount equal to (i) the base rent plus (ii) common area maintenance expenses, taxes, insurance and all other charges, all in amounts calculated in the same manner as such amounts were used in the definitions of August Rent for all Leases for which the an Assumption and Assignment Order has not been entered or Seller has not received direction from Buyer to reject prior to 5:00 pm (ET) on October 31, 2025, to the extent such amounts are due (x) to the applicable landlords of the Leases with respect to such amounts due to such landlords and (y) as a result of any delay caused by Buyer which would prevent the assumption and assignment to a third-party or rejection of such Lease in an orderly manner to be deemed effective prior to the date such amounts are due. For the avoidance of doubt, November Rent shall not include the prorated portion of such obligation for the period prior to the conclusion of any store closure sale.

"October Rent" shall mean an amount equal to (i) the base rent plus (ii) common area maintenance expenses, taxes, insurance and all other charges, all in amounts calculated in the same manner as such amounts were used in the definitions of August Rent for all Leases for which the an Assumption and Assignment Order has not been entered or Seller has not received direction from Buyer to reject prior to 5:00 pm (ET) on September 30, 2025, to the extent such amounts are due (x) to the applicable landlords of the Leases with respect to such amounts due to such landlords and (y) as a result of any delay caused by Buyer which would prevent the assumption and assignment to a third-party or rejection of such Lease in an orderly manner to be deemed effective prior to the date such amounts are due. For the avoidance of doubt, October Rent shall not include the prorated portion of such obligation for the period prior to the conclusion of any store closure sale.

"OFAC" shall mean the Office of Foreign Assets Control of the Department of Treasury.

"Ordinary Course" shall mean the ordinary and usual course of operations of a Store, consistent with past custom and practice, consistent with general leasing practices, and taking into account the preparation, commencement and pendency of the Bankruptcy, including store closing sales.

"Parties" shall mean, collectively, Seller and Buyer.

"PDF" shall have the meaning set forth in Section 13.6.

"Person" shall mean any individual, estate, trust, partnership, limited liability company, limited liability partnership, corporation, governmental agency or other legal entity and any unincorporated association.

"Petition Date" shall have the meaning set forth in Recital A.

"Preliminary Closing Statement" shall have the meaning set forth in Section 10.4(b).

"Purchase Price" shall mean the Cash Consideration and the Cure Costs.

"Remaining Lease Carrying Cost Reimbursement Date" shall mean (i) with respect to any Lease for which Seller has received a notice from Buyer that Buyer has elected not to designate such Lease as a Designated Lease, the date that is one (1) day after the effective date of an order issued by the Bankruptcy Court either (x) rejecting the Lease applicable to such Store, or (y) approving the assumption of the Lease by Seller and the assignment of the Lease to a third-party, or (ii) for Leases that are not covered by (i) above, the Expiration Date.

"Sale Order" shall have the meaning set forth in Recital C.

"Seller" shall have the meaning set forth in the preamble of this Agreement.

"Seller Failure" shall have the meaning set forth in Section 12.2.

"Seller Parties" shall mean Seller, its Affiliates and its and their direct and indirect owners, agents, officers, directors, trustees, advisors, brokers, managers, members, partners, employees, representatives, principals, Affiliates, contractors, attorneys, accountants and other consultants, or the successors and assigns of any of the foregoing parties.

"Seller Representations" shall mean the representations and warranties of Seller expressly set forth in Section 8.2.

"September Rent" shall mean an amount equal to (i) the base rent plus (ii) common area maintenance expenses, taxes, insurance and all other charges, all in amounts calculated in the same manner as such amounts were used in the definitions of August Rent for all Leases for which the an Assumption and Assignment Order has not been entered or Seller has not received direction from Buyer to reject prior to 5:00 pm (ET) on August 31, 2025, to the extent such amounts are due (x) to the applicable landlords of the Leases with respect to such amounts due to such landlords and (y) as a result of any delay caused by Buyer which would prevent the assumption and assignment to a third-party or rejection of such Lease in an orderly manner to be deemed effective prior to the date such amounts are due.  For the avoidance of doubt, September Rent shall not include the prorated portion of such obligation for the period prior to the conclusion of any store closure sale.

"Store" or "Stores" shall have the meaning set forth in Recital B.

"Undesignated Lease" shall have the meaning set forth in the definition of "Designation Rights Period".

6

# ARTICLE 2
## Agreement; Purchase Price

**Section 2.1   Agreement to Sell and Purchase the Designation Rights**.   In consideration of the payment of the Cash Consideration and the other payments as made and identified in <u>Section 2.2</u> below and for other good and valuable consideration, effective immediately upon the entry of the Sale Order, and without any further action of Seller or any other Person, Seller hereby (i) grants to Buyer the Designation Rights, and (ii) agrees to sell, assign, transfer and convey, at Buyer's option, Seller's right, title and interest in and to the applicable Designated Leases to Buyer and Buyer hereby (A) accepts such grant of the Designation Rights and (B) agrees to purchase, acquire, accept and assume, as applicable, Seller's right, title and interest in and to the applicable Designated Leases from Seller, subject to and in accordance with the terms and conditions of this Agreement.   For the avoidance of doubt, the sale, transfer, assignment and conveyance of the Designation Rights provided for herein shall not effectuate a sale, transfer, assignment or conveyance of any Lease of Seller to Buyer or an Assignee, which shall only be effectuated on a Lease Assignment Closing. Buyer acknowledges that, until the expiration of the Designation Rights period with respect to each Lease, Seller shall not reject the Leases in connection with the Bankruptcy in reliance upon Buyer's agreement to purchase the Designated Rights upon the terms and conditions set forth in this Agreement.

**Section 2.2   Payments**.

(a)      The following amounts shall be paid by Buyer to Seller as consideration for the purchase and sale of the Designation Rights as follows: (i) within one (1) Business Day after entry of the Sale Order, Buyer shall pay to Seller an amount equal to the Cash Consideration less the amount of the Deposit, and at such time the full amount of the Cash Consideration (which includes the Deposit) shall be deemed released to and earned by Seller, (ii) for certain Leases identified on Schedule A as having closed for business in July 2025, within one (1) Business Day following entry of the Sale Order, Buyer shall pay to Seller an amount equal to August Rent, which Seller shall pay directly to the applicable landlords of the Leases with respect to such amounts due to such landlords or, if Seller has already paid such amounts, shall be retained by Seller as reimbursement thereof, (iii) for three leases that Buyer elected, prior to the date hereof, to remove as a Lease, the sum of $45,175.62, and (iv) in the event that the Bankruptcy Court enters orders assigning six (6) Leases to Buyer, then Buyer shall pay to Seller the Additional Cash Consideration for each additional Lease over five (5) Leases successfully assumed and assigned to Buyer or an Assignee.

(b)      Seller shall credit Buyer the sum of Four Hundred Twenty Thousand and 00/100 Dollars ($420,000.00), to be applied first against the Cash Consideration (but not the Deposit) , second against Buyer's obligation to pay August Rent and third against Buyer's obligation to pay September Rent.

(c)      For August Rent, September Rent, October Rent and/or November Rent for any Store that has not completed its going-out-of-business sale and closed as of the first day of the month in which the applicable rent obligation is due: (x) Seller shall give Buyer at least five (5) business days' notice of the final day of operation for the applicable Store provided in such notice from Seller, at which time Buyer may, no later than 5:00 p.m. ET on the day two (2) days prior to

7

the final day of operation for the applicable Store, give Seller written notice that it has elected not to designate such Lease as a Designated Lease; (y) if Buyer does not timely provide the written notice described in (x) to Seller, Buyer shall be obligated to pay August Rent, September Rent, October and/or November Rent, as applicable, on a pro-rated basis commencing on the first day after the Seller ceases operation of the applicable Store through the end of the applicable month; and (z) if Buyer does timely provide the written notice described in (x) to Seller, Buyer shall not be obligated to pay August Rent, September Rent, October and/or November Rent, as applicable, for the applicable Store.

Section 2.3   **Agreement to Assign the Designated Leases**. Effective immediately upon the entry of the Sale Order, but subject to the entry of any applicable Assumption and Assignment Order, Seller hereby agrees to sell, assign, transfer and convey, at Buyer's option, Seller's right, title and interest in and to the applicable Designated Leases to Buyer, or an Assignee, and Buyer, or such Assignee, shall purchase, acquire, accept and assume Seller's right, title and interest in and to the applicable Designated Leases from Seller, subject to and in accordance with the terms and conditions of this Agreement.

Section 2.4   **Cure Costs**.   With respect to each Designated Lease, on the Lease Assignment Closing Date relating to such Designated Lease, Buyer shall pay to Seller for further payment to the applicable landlord for such Designated Lease an amount equal to the cure costs approved by the Bankruptcy Court (adjusted to the extent such amounts differ from the amounts as shown in the column identified as "Cure Schedule" on Schedule A as a result of an agreement between Buyer and the applicable landlord) for such Designated Lease (the "Cure Costs").

## ARTICLE 3
## Deposit

Section 3.1   **Deposit**. Seller acknowledges that Buyer has paid into escrow an amount equal to Thirty-Five Thousand and No/100 Dollars ($35,000.00) (the "Deposit"). The Deposit, currently being held in a segregated account by Kroll Restructuring Administration, LLC, (which shall include for all purposes all interest thereon) shall be applied to the Cash Consideration in accordance with Section 2.2 hereof or otherwise held and disbursed in accordance with the terms and provisions hereof.

## ARTICLE 4
## Election to Assume/Take Assignment of Designated Leases

Section 4.1   **Election**. Subject to the terms and conditions of this Agreement, any Assumption and Assignment Order and the requirements of section 365(b) of the Bankruptcy Code, by no later than 5:00 p.m. ET on October 31, 2025 (the "Expiration Date"), Buyer may, by written notice to Seller (a "Buyer Assumption Notice"), designate one or more of the Leases for assumption and assignment, in Buyer's sole and absolute discretion, which can be exercised with respect to any number, or none, of the Leases prior to the Expiration Date. Such notice shall provide the following information: (i) the Lease being assumed and assigned, (ii) the identity of the Assignee, if any, (iii) the identity of the landlord with respect to the applicable Lease, and (iv) the Cure Costs associated with the applicable Lease. Buyer (or its Assignee), at Buyer's sole cost and expense, shall have the exclusive right to take an assignment of any Leases and to

negotiate with the landlords with respect thereto (it being understood that, upon written notification by Buyer to Seller that Buyer will not elect to have a Lease assigned to it, Seller shall have the right to then reject or assign such Lease to another party in Seller's sole and absolute discretion). The Designation Rights shall terminate at 5:00 p.m. ET on the Expiration Date. Within one (1) Business Day following the date of Seller's receipt of a Buyer Assumption Notice, Seller shall file with the Bankruptcy Court and serve on the applicable landlord(s) and other appropriate notice parties (as applicable) an appropriate notice and shall seek entry by the Bankruptcy Court of an Assumption and Assignment Order in respect of the Designated Lease or Designated Leases subject to such Buyer Assumption Notice. The Parties agree to close the assumption and assignment of any Designated Leases on the first (1st) Business Day after an Assumption and Assignment Order is entered by the Bankruptcy Court (each, as applicable, a "Lease Assignment Closing Date").

**Section 4.2   Seller's Obligations During Designation Rights Period**. During the Designation Rights Period, Seller shall be obligated as follows:

(a)   Subject to reimbursement by Buyer to Seller as provided in Section 10.4 below, Seller shall pay when due any and all Carrying Costs with respect to each Store as required under the related Lease in such amounts as are required under the terms of the applicable Lease and any other applicable agreement to which Seller or any of its Affiliates is a party pertaining to such Store or the related Lease. Seller shall not pay any amount due from Seller pursuant to any provision of this Agreement using any security deposit associated with any Store, Lease or other related agreement.

(b)   During the Designation Rights Period, Seller shall not, and shall not solicit any other Person to, (A) sell, transfer, assign, convey, lease, license, mortgage, pledge or otherwise encumber any Store, related Lease or related asset (other than with respect to any Undesignated Lease and its related Store), (B) modify, amend or replace any Lease in any fashion (provided that, in consultation with the DIP Agent, Seller shall use commercially reasonable efforts to comply with all instructions from Buyer as to the renewal or extension (or lack of renewal or extension) of each Lease that comes up for renewal), (C) enter into any new leases or related agreements with respect to any Store (other than the applicable Store with respect to any Undesignated Lease), (D) grant or terminate any other interests in any Store, related Lease or related asset (other than with respect to any Undesignated Lease and its related Store) or (E) seek or obtain an order approving rejection of a Lease unless Buyer has delivered a written notification to Seller that Buyer will not elect to have such Lease assigned to it.

(c)   During the Designation Rights Period, Seller shall provide Buyer with full access to a data room containing complete copies of all Leases (including, without limitation, all material notices, if any, delivered by any Person pursuant thereto or in connection therewith to the extent in Seller's or any of its Affiliates' possession or reasonable control) and shall respond promptly to any reasonable requests during normal business hours by Buyer for further information regarding the Leases of the Stores.

(d)   During the Designation Rights Period, Seller shall use commercially reasonable efforts (it being agreed that Seller shall not be obligated to expend any funds or grant any concessions to any landlord under the Leases as part of its commercially reasonable efforts) to

cause the landlords under the Leases to maintain the insurance policies that are required under the Leases with respect to the Stores and the shopping centers in which the Stores are located.

(e)     During the Designation Rights Period, Seller shall continue all insurance policies with respect to the Stores, of the amounts and of the types presently in force and required to be maintained by Seller under any applicable Lease, until the end of the Designation Rights Period in such amounts as it currently has in effect or, if greater, in such amounts as required under any Lease.

(f)     During the Designation Rights Period, Seller shall continue to perform repairs and maintenance and provide security services at the Stores in the manner as required under the Leases to maintain normal operations in accordance with past practices, ordinary wear and tear excepted.

(g)     During the Designation Rights Period, Seller shall use commercially reasonable efforts (it being agreed that Seller shall not be obligated to expend any funds or grant any concessions to any landlord under the Leases as part of its commercially reasonable efforts) to cause the landlords under the Leases to perform such parties' covenants, agreements and obligations under the Leases (including repair and maintenance obligations) with respect to the Stores and the shopping center in which the Stores are located.

**Section 4.3    Assumption.**

(a)     With respect to any Designated Lease:

(i)     Buyer and Seller shall each use commercially reasonable efforts to accomplish, and shall fully cooperate with each other in, the resolution of any objections to the proposed assumption and assignment of such Lease, provided that Seller shall have no requirement to contribute to any Cure Costs or Carrying Costs as provided by Section 10.4(a), and, provided further, that Buyer shall use commercially reasonable efforts to cause any Assignee to use such efforts as required; and

(ii)     Unless otherwise agreed upon by Buyer and Seller, other than for the payment of August Rent (as applicable and provided that the amounts paid hereunder to Seller for August have been distributed to the applicable landlords), Cure Costs and Carrying Costs as provided by Section 10.4(a), Buyer shall have no liability or obligation with respect to any liabilities, claims, damages or other obligations of any Seller under such Lease or otherwise with respect to the Store subject to such Lease (including with respect to any related assets sold, transferred, assigned and conveyed together with such Lease), to the extent arising through and including the Lease Assignment Closing Date.

(b)     Unless provided otherwise in this Agreement, each Party shall bear its own costs and expenses of obtaining entry of an Assumption and Assignment Order and otherwise implementing the sale, transfer, assignment, conveyance and delivery of the applicable Lease to the applicable Assignee, including, without limitation, the filing and prosecution of any motions or other papers with respect to the same.

## ARTICLE 5
## Personal Property/FF&E and Trade Fixtures

**Section 5.1** **Removal**. Prior to each Lease Assignment Closing, and except as may be further negotiated by Seller and Buyer, Seller shall remove all of its inventory from the applicable Store and may remove its FF&E and Trade Fixtures. In addition and except as may be further negotiated by Buyer and Seller, if, prior to each Lease Assignment Closing, Seller does not remove FF&E and Trade Fixtures in any applicable Designated Store, such FF&E and Trade Fixtures shall be deemed abandoned to Buyer or the applicable Assignee effective upon the Lease Assignment                                                                        Closing.

## Inspection and Confidentiality

**Section 6.1** **Access**.  Subject to the terms hereof, Buyer, personally or through its authorized agents or representatives (the "Buyer Representatives"), shall have the right at its own expense, from the Effective Date through the applicable Lease Assignment Closing Date, to enter during normal business hours into any Store and to make such non-intrusive investigations, including appraisals, engineering studies, soil tests, environmental studies and underwriting analyses, as Buyer deems necessary or advisable; subject to the following conditions and limitations: (a) such entry and investigations shall be conducted at reasonable times and upon forty-eighty hours' prior written notice to Seller; (b) a representative of Seller shall be offered the opportunity to be present during such entry or investigation; (c) such entry or investigations shall be in accordance with applicable Laws and Regulations, the terms and conditions of the applicable Lease, and subject to the rights of any tenants, occupants, or other counterparties under Leases and neither Buyer nor any Buyer Representatives shall interfere with the use, occupancy or enjoyment of the Stores by any such Persons or their respective employees, contractors, customers or guests; (d) neither Buyer nor Buyer Representatives shall damage such Stores or any portion thereof; (e) unless Seller agrees otherwise, before Buyer or Buyer Representatives conduct any investigations or inspections of such Stores (excluding invasive or destructive testing of any kind), including inspections of building systems or any testing or inspections, Buyer or Buyer Representatives, as applicable, shall deliver to Seller a certificate of insurance naming Seller as an additional insured, evidencing commercial general liability insurance (including property damage, bodily injury and death) issued by an insurance company having a rating of at least "A-/VII" by A.M. Best Company, with limits of at least $1,000,000 per occurrence and $5,000,000 in the aggregate for bodily or personal injury or death; (f) without Seller's prior written consent, which Seller may give or withhold in its sole and absolute discretion, Buyer shall not perform any Phase I exams, invasive testing at, on or around such Stores, including, without limitation, any Phase II exams, soil borings or other invasive tests, *provided however,* that where a given Lease does not prohibit Phase I testing or condition such on obtaining landlord approval, Seller consent shall not be required; (g) Buyer shall use commercially diligent efforts to perform all on-site due diligence reviews on an expeditious and efficient basis; and (h) Buyer shall indemnify, hold harmless and defend the Seller Parties from and against all Losses resulting from or relating to any entry and/or inspections conducted by Buyer or Buyer Representatives, including, without limitation, Losses arising out of liens, injury or death to person, or any physical damage to the applicable Store or any other property and incurred in making any and all repairs necessitated to cure any damage to such Stores resulting from such activities but excluding Losses from the mere discovery of conditions existing as of the time of inspection (except to the extent that the existing condition is knowingly exacerbated by Buyer or Buyer Representatives). The foregoing

indemnification obligation shall survive the applicable Lease Assignment Closing or termination of this Agreement. In addition, in connection with any Undesignated Lease and its related Store, Buyer shall use commercially reasonable efforts to deliver to Seller copies of all reports of such inspections, tests and studies, without representation or warranty by, or recourse against, Buyer, it being agreed that Seller shall not rely on such documentation and shall independently verify the accuracy and completeness of said information and/or items contained therein.

## ARTICLE 7
### Conditions Precedent, Casualty Damage or Condemnation

**Section 7.1   Conditions Precedent For Lease Assignment Closings Favoring Buyer**.

(a)   Buyer's obligations under this Agreement with respect to any Lease Assignment Closings are subject to the timely fulfillment of the conditions set forth in this Section 7.1 on or before any Lease Assignment Closing Date. Each condition may be waived in whole or in part only by written notice of such waiver from Buyer to Seller:

(i)   Seller shall have executed and delivered to Buyer all instruments and documents required to be delivered to Buyer at Lease Assignment Closing under this Agreement;

(ii)   Seller shall have performed and complied in all material respects with all of the other terms of this Agreement to be performed and complied with by it prior to or at a Lease Assignment Closing;

(iii)   Subject to Section 8.4, on any Lease Assignment Closing Date, the Seller Representations as applicable to the Designated Leases which are the subject of any such Lease Assignment Closing Date, shall be true, complete and, to knowledge of Seller, accurate, in all material respects, on and as of the Effective Date and on and as of the Lease Assignment Closing Date as if then remade on and as of the Lease Assignment Closing Date (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects), except that Seller shall not be deemed to have breached the foregoing condition precedent by reason of casualty or condemnation (which shall be governed exclusively by Section 7.3);

(iv)   There shall not be in effect any Order by a Governmental Authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by the applicable Lease Assignment Closings; and

(v)   The Bankruptcy Court shall have entered an Assumption and Assignment Order with respect to the applicable Designated Lease and such order shall be a final order and Seller shall have provided an Assumption and Assignment Notice to each applicable landlord in accordance with the terms and conditions of the Assumption and Assignment Order.

(b)   If the conditions precedent in favor of Buyer set forth above in Section 7.1(a) are not satisfied as of a Lease Assignment Closing Date, Buyer may elect in its sole discretion not later than the Lease Assignment Closing Date, and as its sole remedy, either to: (i) waive such condition and proceed with the Lease Assignment Closing as contemplated by this Agreement (without any reduction in the Purchase Price), it being agreed by Seller that Buyer shall have the

option to elect to waive the failure of a condition as to less than all of the Designated Leases with respect to such Lease Assignment Closing and that Buyer's obligation to proceed with any such Lease Assignment Closing under this Agreement shall be with respect to those of the Designated Leases where such conditions were either timely fulfilled, or were waived in writing by Buyer; (ii) terminate Buyer's obligation to close the transactions contemplated with respect to such Lease Assignment Closing; or (iii) to the extent such failure is the result of a Seller default hereunder beyond applicable notice and cure periods expressly provided for herein, exercise its rights and remedies under <u>Section 12.2</u>.

    **Section 7.2    <u>Conditions Precedent Favoring the Seller</u>**.    Seller's obligations with respect to any Lease Assignment Closings are expressly subject to the timely fulfillment of the conditions set forth in this <u>Section 7.2</u> on or before any Lease Assignment Closing Date. Each condition may be waived in whole or part only by written notice of such waiver from Seller to Buyer, it being agreed by Buyer that Seller may elect to waive the failure of a condition as to one or more of the Designated Leases, in which event, Buyer shall have the obligation to proceed to Lease Assignment Closing under this Agreement with respect to those of the Designated Leases where such conditions were either timely fulfilled, or were waived in writing by Seller:

    (a)    Buyer shall have executed and delivered to Seller all instruments and documents required to be delivered by Buyer at Lease Assignment Closing under this Agreement;

    (b)    Buyer shall have performed and complied in all material respects with all of the terms of this Agreement to be performed and complied with by Buyer prior to a Lease Assignment Closing;

    (c)    The Buyer Representations shall be true, accurate and complete in all material respects on and as of the Effective Date and on and as of the Lease Assignment Closing Date as if then remade on and as of the Lease Assignment Closing Date; and

    (d)    The Bankruptcy Court shall have entered an Assumption and Assignment Order and such order shall be a final order.

    **Section 7.3    <u>Risk of Casualty and Condemnation</u>**.

    (a)    If, during the Designation Rights Period, all or any part of any Store (other than a Store (x) that has already been the subject to a Lease Assignment Closing or (y) for which Seller has received a written notice from Buyer (which notice may be an e-mail) that Buyer has elected not to designate the Lease related to such Store as a Designated Lease) is damaged by fire or other casualty or becomes the subject of any eminent domain proceedings, (i) Seller shall promptly give notice to Buyer of such fact and thereafter, promptly following Seller's receipt thereof, (x) with respect to any casualty, an estimate of the cost and time to restore prepared by an architect, insurance examiner, contractor or engineer engaged by Seller and approved by Buyer (which approval shall not be unreasonably withheld, conditioned or delayed) and (y) with respect to any condemnation, to the extent to which the Store will be affected by such condemnation and (ii) Buyer may, at Buyer's option and in its sole discretion, (x) if such casualty or condemnation could reasonably be expected to (1) adversely affect the operation of the applicable Store, (2) require Buyer or the Assignee to incur restoration costs and expenses or (3) trigger any party's right to

terminate the applicable Lease pursuant to its terms, remove the Designated Lease relating to such Designated Store from the Leases assumed and assigned on any Lease Assignment Closing Date and proceed to such Lease Assignment Closing in accordance with the terms hereof with respect to the balance of the Leases with no reduction in the Purchase Price or (y) proceed with the Lease Assignment Closing with such Designated Lease included without reduction of or credit against the Purchase Price; provided, however, that Buyer shall participate with Seller in the adjustment and settlement of such casualty insurance claim and Seller shall assign to Buyer at such Lease Assignment Closing, without recourse against Seller, all of Seller's right, title and interest in and to the insurance proceeds, if any, payable on account of such damage (net of collection costs and costs of repair with respect to such casualty reasonably incurred by Seller), including without limitation, rental interruption insurance with respect to periods following the Lease Assignment Closing.

## ARTICLE 8
### Representations, Warranties and Covenants

Section 8.1 **Buyer Representations**.  Subject to the limitations set forth in this Agreement, Buyer hereby represents and warrants to, and covenants with, Seller as follows (the "Buyer Representations"):

(a)     Buyer is a corporation, duly formed, validly existing and in good standing under the State of Pennsylvania. This Agreement constitutes the valid and legally binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to general principles of equity and to bankruptcy, insolvency, reorganization, moratorium or other similar laws presently or hereafter in effect affecting the rights of creditors or debtors generally. Buyer has the power to enter into, execute and deliver this Agreement and to perform its obligations hereunder.

(b)     There are no actions, suits or proceedings pending or, to the knowledge of Buyer, threatened, against or affecting Buyer which, if determined adversely to Buyer, would adversely affect its ability to perform its obligations pursuant to the terms of this Agreement.

(c)     Neither (i) the execution, delivery or performance of this Agreement by Buyer nor (ii) compliance herewith (A) conflicts or will conflict with or results or will result in a breach of or constitutes or will constitute a default under (1) the charter documents or by-laws of Buyer, (2) to the best of Buyer's knowledge, any law or any order, writ, injunction or decree of any court or Governmental Authority, or (3) to the best of Buyer's knowledge, any agreement or instrument to which Buyer is a party or by which it is bound or (B) results in the creation or imposition of any lien, charge or encumbrance upon its property pursuant to any such agreement or instrument.

(d)     No authorization, consent or approval of any Governmental Authority (including courts) is required for the execution and delivery by Buyer of this Agreement or the performance of its obligations pursuant to the terms of this Agreement.

The representations and warranties of Buyer contained in this Section 8.1 shall survive the applicable Lease Assignment Closing, but only to the extent provided in Section 12.3(b).

Buyer acknowledges that it is an experienced and sophisticated operator of retail discount variety stores and that, prior to the Effective Date, it has had a full and complete opportunity to (i)

review all information and documentation relating to the Stores and Leases made available to Buyer by or on behalf of Seller and (ii) conduct such other investigations, examinations, inspections and analyses of the Stores as Buyer has deemed necessary or appropriate. Buyer further acknowledges that, except for the Seller Representations, Buyer has not relied upon any statements, representations or warranties by any Seller Party or any agent of any Seller Party, including Broker.

**Section 8.2    Seller Representations**.    Subject to the limitations set forth in this Agreement, Seller hereby represents and warrants to Buyer as of the Effective Date as follows (the "Seller Representations"):

(a)    Sellers are the types of entities and are duly formed, validly existing and in good standing under the laws of, as applicable, the States of their respective formation and the States where the applicable Lease is located, respectively. Upon approval of same by the Bankruptcy Court, Seller has the power to enter into, execute and deliver this Agreement and to perform all duties and obligations imposed upon it hereunder.

(b)    Subject to the entry and effectiveness of the Sale Order, Seller's execution and delivery of this Agreement and performance of its obligations hereunder have been duly authorized by all necessary action on the part of Seller, and do not violate or conflict with Seller's organizational documents, any judgment, decree or order of any court applicable to or affecting Seller, breach the provisions of or constitute a default under any material contract to which Seller is a party or by which Seller is bound, or violate or conflict with any Laws and Regulations applicable to Seller.

(c)    There is no action, suit, litigation, hearing or administrative proceeding pending or, to Seller's knowledge, threatened in writing against Seller or any Designated Store or with respect to any Designated Lease in any court, administrative bureau or other regulatory setting, that, if determined adversely to Seller, would reasonably be expected to materially and adversely affect Seller's ability to perform its obligations pursuant to the terms of this Agreement.

(d)    Seller is not a "foreign person" as such term is defined in Section 1445(e)(3) of the Code.

(e)    Seller is currently (i) in compliance with, and shall at all times during the term of this Agreement remain in compliance with, the regulations of the OFAC and any statute, executive order (including Executive Order 13224, dated September 24, 2001 and entitled "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"), or regulations relating thereto and (ii) not listed on, and shall not during the term of this Agreement be listed on, the Specially Designated Nationals and Blocked Persons List maintained by OFAC and/or any other similar list maintained by OFAC or any other Governmental Authority pursuant to any authorizing statute, executive order or regulation.

(f)    Seller has delivered or made available to Buyer true and complete copies of all Leases, and the August Rent and anticipated Cure Costs noted on Schedule A for each applicable Lease are true and, to knowledge of Seller, accurate. Except as a result of the Bankruptcy or as a result of the failure to pay to any applicable Landlord any amounts that are identified as Cure Costs

15

in Schedule A, neither Seller nor, to the knowledge of Seller, any other party thereto is in default under any of the Leases. Each Lease is in full force and effect and is enforceable against each party thereto in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

(g)     Seller is not a party to any service contracts with respect to the Designated Leases that will be binding on Buyer from and after any applicable Lease Assignment Closing.

(h)     There are no condemnation or eminent domain proceedings pending, or to Seller's knowledge, threatened in writing against any Store.

The representations and warranties of Seller contained in this Section 8.2 shall survive the applicable Lease Assignment Closing, but only to the extent provided in Section 12.3(b). The representations and warranties set forth in this Section 8.2 are the only representations and warranties made by Seller with respect to the matters relating to the transactions contemplated in this Agreement. Except as specifically set forth in this Agreement, Seller is selling its right title and interest in and to the applicable Designated Leases to Seller "as is" and "where is" and with all faults, and unless otherwise provided herein, makes no warranty, express or implied, as to any matter whatsoever relating to the Designated Leases or any other matter relating to the transactions contemplated by this Agreement, including as to (i) merchantability or fitness for any particular use or purpose, (ii) the operation of any Store under any Designated Lease after the applicable Lease Assignment Closing, or (iii) the probable success or profitability of any Store under any Designated Lease.

Whenever a representation is qualified by the phrase "to Seller's Actual Knowledge", "to Seller's knowledge" or words of similar import, the accuracy of such representation shall be based solely on the actual (as opposed to constructive or imputed) knowledge of those senior executives of the Company which have principal oversight over the Company's and its subsidiaries' owned and leased real properties, without investigation or inquiry. Buyer acknowledges that nothing herein shall impose any liability on or create any duties running from such Persons to Buyer and Buyer agrees that no such Persons shall have any personal or other liability under this Agreement or in connection with the transactions contemplated by this Agreement.

**Section 8.3   Notice of Breach**. If, after the Effective Date but prior to any Lease Assignment Closing Date, with respect to any Designated Leases that are the subject of such Lease Assignment Closing Date, Buyer or any Affiliate thereof first obtains actual knowledge that any of the Seller Representations made herein is untrue, inaccurate or incorrect in any material respect, Buyer shall give Seller written notice thereof within three (3) Business Days of obtaining such actual knowledge (but, in any event, prior to such Lease Assignment Closing Date). In such event, Seller shall have the right (but not the obligation) to attempt to cure such misrepresentation or breach and shall, at its option, be entitled to a reasonable adjournment of such Lease Assignment Closing Date (not to exceed forty-five (45) days in the aggregate with all other adjournment rights exercised by Seller hereunder) for the purpose of such cure. If Seller elects to attempt to so cure but is unable to so cure any misrepresentation or breach of warranty,

or elects not to cure the same, then Buyer, as its sole remedy for any and all such materially untrue or incorrect representations or warranties, shall elect within three (3) Business Days thereafter either to (i) waive such misrepresentations or breaches of representations and warranties and consummate the assignment of the Designated Leases which are the subject of such Lease Assignment Closing Date, without any reduction of or credit against the Purchase Price, (ii) if such misrepresentation or breach affects less than all of the Designated Leases, elect to remove such Designated Lease from the Leases being assigned on such Lease Assignment Closing Date and consummate the assignment of the Designated Leases with respect to the rest of the Designated Leases being assigned on such Lease Assignment Closing Date, or (iii) terminate this Agreement with respect to Buyer's obligation to take an assignment of all Designated Leases that were subject to such Lease Assignment Closing by written notice given to Seller on such Lease Assignment Closing Date (or prior to such Lease Assignment Closing Date if Seller elects not to cure the same), in which event this Agreement shall be terminated with respect to such Designated Leases and, thereafter, no Party shall have any further rights or obligations hereunder except as provided in any section hereof that by its terms expressly provides that it survives any termination of this Agreement.

## ARTICLE 9
## Bankruptcy Court Matters

**Section 9.1    Bankruptcy Court Matters.**

(a)    Each Party shall use commercially reasonable efforts to (i) obtain the Sale Order and (ii) obtain an order or orders approving the assumption by Seller and assignment to Buyer or an Assignee of any Designated Lease, which order shall be in substantially the form of <u>Exhibit B</u> attached hereto (a "<u>Assumption and Assignment Order</u>").

(b)    Buyer shall promptly take all actions reasonably requested by Seller to assist in obtaining the Sale Order, any Assumption and Assignment Order and any other order of the Bankruptcy Court reasonably necessary in connection with the transactions contemplated by this Agreement, in each case as promptly as practicable, including furnishing affidavits, financial information or other documents or information for filing with the Bankruptcy Court and making such employees and advisors of Buyer and its Affiliates available to testify before the Bankruptcy Court for the purposes of, among other things, providing necessary assurances of performance by Buyer under this Agreement and demonstrating that Buyer is a "good faith" purchaser under the Bankruptcy Code, as well as demonstrating Buyer's ability to pay and perform or otherwise satisfy all obligations and liabilities to be assumed by Buyer in connection with any Designated Lease at any Lease Assignment Closing.  Upon receipt of a Buyer Assumption Notice, Seller shall promptly file and serve an Assumption and Assignment Notice to each applicable landlord in form and substance acceptable to Buyer.

(c)    Seller having fully marketed the Leases (including the Designation Rights), the sale will proceed as a private sale and will not be subject to auction. Notwithstanding that, if another bidder for the Leases (including the Designation Rights) emerges prior to the entry of the Sale Order and Seller enters into an alternative transaction to sell the Leases or the Designation Rights to such other bidder, Seller agrees to utilize commercially reasonable efforts to seek approval of reimbursement of all actual fees and expenses incurred by Buyer in connection with

the transactions contemplated by this Agreement, including, but not limited to, providing for such reimbursement in any motion to approve any proposed order approving an alternative transaction in place of the transactions contemplated by this Agreement.

(d)     Buyer shall appear formally or informally in the Bankruptcy Court if reasonably requested by Seller or required by the Bankruptcy Court in connection with the transactions contemplated by this Agreement.

(e)     Buyer shall provide adequate assurance of future performance as required under the Bankruptcy Code for the Designated Leases. Buyer agrees that it will take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Designated Leases, such as furnishing affidavits, financial information and other documents or information for filing with the Bankruptcy Court and making Buyer's and its Affiliates' advisors available to testify before the Bankruptcy Court.

(f)     Nothing herein shall prevent Seller from modifying any bidding procedures applicable to the transactions contemplated by this Agreement as necessary or appropriate to maximize value for Seller's estates in accordance with any applicable order of the Bankruptcy Court.

(g)     Seller's obligations under this Agreement and in connection with the transactions contemplated by this Agreement are subject to entry of and, to the extent entered, the terms of any applicable orders of the Bankruptcy Court (including, without limitation, the entry of the Sale Order and, as applicable, any Assumption and Assignment Order). Nothing in this Agreement shall require Seller or any of its Affiliates to give testimony to or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or other fiduciary duty to the Bankruptcy Court or its stakeholders.

## ARTICLE 10
### Lease Assignment Closings

**Section 10.1  Time and Place of Lease Assignment Closings**.

(a)     Each Lease Assignment Closing shall take place commencing at 11:00 a.m. (ET) on a Lease Assignment Closing Date, with any amounts due and payable herein received by 3:00 p.m. (ET) by Seller, TIME BEING OF THE ESSENCE, subject to Seller's and Buyer's right to adjourn any Lease Assignment Closing as expressly permitted under this Agreement.

**Section 10.2  Seller's Deliveries**.  By not later than 5:00 p.m. (ET) on any Lease Assignment Closing Date, Seller shall deliver or cause to be delivered to Buyer each of the following items, each executed by Seller, if necessary, and acknowledged to the extent appropriate:

(a)     a Final Closing Statement for the applicable Designated Stores;

(b)     all security codes and master keys to any portion of the applicable Designated Stores, to the extent in Seller's possession; and

18

(c)      such other documents as may be required by the express terms of this Agreement to be delivered by Seller and such other customary conveyance documents, certificates, and other instruments as Buyer may reasonably require to carry out the assignment of the applicable Designated Leases as contemplated by this Agreement and as are typical and customary in like transactions in the State in which any applicable Designated Store is located.

Section 10.3 **Buyer's Deliveries**.  By not later than 5:00 p.m. (ET) on any Lease Assignment Closing Date, Buyer shall deliver to Seller, each of the following items, each executed, if necessary, by Buyer or an Assignee and acknowledged to the extent appropriate:

(a)      As provided by <u>Section 2.4</u>, the Cure Costs applicable to the Designated Leases being assigned to Buyer, adjusted by an amount equal to the adjustments and prorations reflected on the Final Settlement Statement as provided by <u>Section 10.4(b)</u>, wired to Seller in immediately available funds.

(b)      a Final Closing Statement for the applicable Designated Stores; and

(c)      such other documents as may be required by the express terms of this Agreement to be delivered by Buyer and such other customary documents, certificates and other instruments as Seller may reasonably require to carry out the assignment of the Designated Leases as contemplated by this Agreement and as are typical and customary in like transactions in the State in which any applicable Designated Store is located.

Section 10.4 <u>**Closing Costs**</u>.

(a)      <u>**Reimbursement of Carrying Costs**</u>. Buyer shall reimburse Seller for all Carrying Costs, on a Store-by-Store basis, as follows: (i) with respect to any Designated Store, on the Lease Assignment Closing Date for such Designated Store, (ii) with respect to any Lease for which Seller has received a notice from Buyer that Buyer has elected not to designate such Lease as a Designated Lease, on the date that is one (1) day after the effective date of an order issued by the Bankruptcy Court either (x) rejecting the Lease applicable to such Store, or (y) approving the assumption of the Lease by Seller and the assignment of the Lease to a third-party, or (iii) for Leases that are not covered by (i) or (ii) above, on the Expiration Date. The foregoing reimbursements shall be paid by wire transfer of immediately available funds.

(b)      <u>**Preliminary and Final Closing Statements**</u>. All reimbursements to be made under the foregoing provisions of this <u>Section 10.4</u> shall be made on the basis of a written closing statement prepared by Seller, which Seller shall endeavor to provide to Buyer at least three (3) Business Days prior to each Lease Assignment Closing Date or the Remaining Lease Carrying Cost Reimbursement Date, as applicable (the "<u>Preliminary Closing Statement</u>"), showing the amount due to Seller for reimbursement of Carrying Costs provided for in this <u>Section 10.4</u>. On or prior to the applicable Lease Assignment Closing Date or the Remaining Lease Carrying Cost Reimbursement Date, Seller and Buyer shall jointly agree upon any adjustments to be made to the Preliminary Closing Statement in accordance with the terms of this Agreement and, upon the final determination of such adjustments, Seller and Buyer shall each execute the final closing statement (the "<u>Final Closing Statement</u>") which shall reflect the amount due to Seller for reimbursement of Carrying Costs. The amounts agreed to by Seller and Buyer in the Final Closing Statement shall

be conclusive and binding on the Parties hereto, except for any items that are not capable of being determined at the time the Final Closing Statement is agreed to by Seller and Buyer, which items shall be determined and paid in the manner set forth in the Final Closing Statement. Prior to and following the applicable Lease Assignment Closing or Remaining Lease Carrying Cost Reimbursement Date, each Party shall provide the other with such information as the other shall reasonably request in order to finalize the Final Closing Statement. Notwithstanding anything in this Agreement to the contrary, no claim for any additional or adjusted Carrying Cost under this Section 10.4 will be valid if made after the date that is sixty (60) days after any applicable Lease Assignment Closing Date or Remaining Lease Carrying Cost Reimbursement Date. The provisions of this Section 10.4 shall survive the applicable Lease Assignment Closing. In the event the parties cannot reconcile any outstanding Carrying Cost, either party may file a motion with the Bankruptcy Court within sixty (60) days after any applicable Lease Assignment Closing Date or Remaining Lease Carrying Cost Reimbursement Date seeking a determination of same.

(c)    **Closing Costs**.

(i)    Seller shall pay Seller's own advisors' and attorneys' fees; and

(ii)    Unless any expense or cost under Section 12.2(a) becomes due and payable by Seller under this Agreement, Buyer shall pay (i) all due diligence costs incurred by Buyer in connection with the transactions contemplated by this Agreement, and (ii) Buyer's own advisors' and attorneys' fees.

(d)    **Survival**. The terms of this Section 10.4 shall survive the applicable Lease Assignment Closing or the Remaining Lease Carrying Cost Reimbursement Date, as applicable.

## ARTICLE 11
## No Real Estate Commission

Seller may be obligated to pay any real estate commissions and/or brokerage fees to A&G Realty Partners, LLC (the "Brokers") in connection with the transactions contemplated by this Agreement in accordance with separate written agreements between Seller and Brokers. Each Party represents and warrants to the other Party that (a) it dealt with no broker other than the Brokers and (b) no other brokerage fee or real estate commission is or shall be due or owing in connection with the transactions contemplated by this Agreement as a result of the acts of the representing Party. Each Party hereby indemnifies and holds the other Party harmless from any and all Losses incurred by reason of any breach of the foregoing representations and warranties by such representing Party. Seller shall further indemnify and hold Buyer harmless from and against all Losses which may arise by reason of any claim asserted by any Broker in connection with this Agreement or any Broker's representation of Seller. The provisions of this Article 11 shall survive the applicable Lease Assignment Closing or the termination of this Agreement.

## ARTICLE 12
## Default

Section 12.1  **Buyer Default**.  If a Lease Assignment Closing is not consummated due to Buyer's failure to perform its obligations under this Agreement, which failure is not cured within three (3) Business Days after written notice from Seller of such failure, then Seller shall be entitled

to terminate this Agreement as it relates to the Designated Leases that were the subject of such Lease Assignment Closing upon written notice, in which case the Parties shall have no further obligations to each other with respect to the Designated Leases that were the subject of such Lease Assignment Closing (except for those obligations which expressly survive the termination of this Agreement). If Buyer is in default of its obligations under this Agreement prior to the payment of the Cash Consideration to Seller as provided in <u>Section 2.2</u> and Buyer fails to cure such default within three (3) Business Days after written notice from Seller of such failure, then Seller shall be entitled to terminate this Agreement upon written notice to Buyer, in which case Seller shall be entitled to retain the Deposit as liquidated damages and the Parties shall have no further obligations to each other with respect to this Agreement (except for those obligations which expressly survive the termination of this Agreement).

**Section 12.2**   <u>**Seller Default**</u>.   If, in the absence of an uncured Buyer default, a Lease Assignment Closing is not consummated because of a failure by Seller to perform its obligations in accordance with the terms of this Agreement (a "<u>Seller Failure</u>"), which Seller Failure is not cured by Seller within three (3) Business Days after written notice from Buyer, then Buyer may, as its sole and exclusive remedy at law or in equity, either: (i) terminate this Agreement with respect to the Designated Leases that were the subject of such Lease Assignment Closing by giving written notice thereof to Seller, in which event (A) to the extent Seller willfully refused to consummate the assignment of the Designated Leases as contemplated by this Agreement following satisfaction by Buyer of all conditions precedent to Seller's obligation to proceed to such Lease Assignment Closing, Seller shall reimburse Buyer  for all of Buyer's reasonable out-of-pocket costs and expenses actually incurred in connection with the assignment of the Designated Leases as contemplated by such Lease Assignment Closing and this Agreement (provided that Buyer provides reasonable supporting documentation for such out-of-pocket costs and expenses) and (B) the Parties shall have no further obligations to each other except for those obligations which expressly survive the termination of this Agreement; (ii) waive such Seller Failure and consummate the assignment of the Designated Leases that were the subject of such Lease Assignment Closing as contemplated by this Agreement; or (iii) specifically enforce Seller's obligation to consummate the assignment of the Designated Leases that were the subject of such Lease Assignment Closing as contemplated by this Agreement; <u>provided</u>, <u>however</u>, that (1) as a condition precedent to Buyer's election to bring an action for specific performance as the result of such Seller Failure hereunder, Buyer must commence such action within fifteen (15) days after the expiration of the three (3) Business Day cure period provided in this <u>Section 12.2</u> and (B) Buyer agrees that its failure timely to commence such an action for specific performance within such 15-day period shall be deemed a waiver by it of its right to commence such an action. If Seller is in default of its obligations under this Agreement prior to the payment of the Cash Consideration to Seller as provided in <u>Section 2.2</u> and Seller fails to cure such default within three (3) Business Days after written notice from Buyer of such failure, then Buyer shall be entitled to terminate this Agreement upon written notice to Seller, in which case the Deposit shall be returned to Buyer as liquidated damages and the Parties shall have no further obligations to each other with respect to this Agreement (except for those obligations which expressly survive the termination of this Agreement). This <u>Section 12.2</u> is intended only to limit Buyer's right to damages arising due to Seller's failure to consummate the assignment of the Designated Leases as contemplated by this Agreement and shall not limit the obligations of Seller that survive the termination of this Agreement.

**Section 12.3  Breach of Representations**.

(a)      Each of the Seller Representations and Buyer Representations and the covenants and agreements (to the extent such covenant or agreement contemplates or requires performance by such Party prior to any Lease Assignment Closing) of the Parties set forth in this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, will terminate as to any applicable Designated Store and Designated Lease effective immediately as of a Lease Assignment Closing with respect to such Designated Store and Designated Lease such that no claim for breach of any such representation, warranty, covenant or agreement, detrimental reliance or other right or remedy (whether in Contract, in tort or at law or in equity) may be brought in respect thereof after such Lease Assignment Closing. Each covenant and agreement that explicitly contemplates performance after an applicable Lease Assignment Closing, will, in each case and to such extent, expressly survive such Lease Assignment Closing in accordance with its terms, and if no term for such survival is specified, then for one (1) year following such applicable Lease Assignment Closing Date. Notwithstanding this Section 12.3 or any other provision of this Agreement, nothing in this Section 12.3 or any other provision in this Agreement shall limit any right or remedies available to Buyer in respect of a claim for fraud.

(b)      The provisions of this Section 12.3 shall survive each Lease Assignment Closing, as applicable.

**ARTICLE 13**
**Miscellaneous**

**Section 13.1  Entire Agreement**.  This Agreement constitutes the entire agreement among the Parties with respect to the transactions contemplated by this Agreement, and it supersedes all prior discussions, understandings or agreements among Parties. All Exhibits and Schedules attached hereto are a part of this Agreement and are incorporated herein by reference.

**Section 13.2  Binding on Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

**Section 13.3  Assignment by Buyer**.  Without the prior written consent of Seller (which may be granted or withheld in Seller's sole and absolute discretion), Buyer shall not, directly or indirectly, assign this Agreement or any of its rights hereunder. Notwithstanding the foregoing, the Parties understand, agree and acknowledge that Buyer may designate an Assignee to take assignment of any Designated Lease so long as such Assignee has complied with the requirements of adequate assurance as set forth in Section 9.1(e).

**Section 13.4  Waiver**.  The excuse or waiver of the performance by a Party of any obligation of the other Party under this Agreement shall only be effective if evidenced by a written statement signed by the Party so excusing or waiving. No delay in exercising any right or remedy shall constitute a waiver thereof, and no waiver by any Party of the breach of any covenant of this Agreement shall be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of this Agreement.

22

**Section 13.5  <u>Governing Law; Jurisdiction</u>**.

(a)      This Agreement and all documents executed and delivered in connection herewith shall be construed in accordance with the internal laws of the State of New York without regard to the principles of choice of law or conflicts of law.

(b)      In recognition of the benefits of having any disputes with respect to this Agreement resolved by an experienced and expert person, the Parties hereby agree that any suit, action or proceeding, whether claim or counterclaim, brought or instituted by any party hereto on or with respect to this Agreement or which in any way relates, directly or indirectly, to this Agreement or any event, transaction or occurrence arising out of or in any way connected with this Agreement, any Store, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. **EACH PARTY HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING**.

(c)      Each of the Parties hereby: (i) irrevocably submits itself to the exclusive jurisdiction of the Bankruptcy Court, and the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement or any other transaction related documents contemplated hereby and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, the Sale Order, and any Assumption and Assignment Order or any other transaction related documents contemplated hereby, any breach or default hereunder or thereunder, or the transactions contemplated hereby or thereby; (ii) agrees that any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court; (iii) waives, and agrees not to assert, by way of motion, as a defense or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court; and (iv) consents to service of process by registered mail at the address set forth in, and in accordance with, <u>Section 13.7</u>, for any Proceeding to which this <u>Section 13.5</u> applies.  The provisions of this <u>Section 13.5</u> shall survive the applicable Lease Assignment Closing or termination of this Agreement.

**Section 13.6  <u>Counterparts</u>**.  This Agreement may be executed (including with electronic signature) in multiple counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same instrument. The exchange of signature pages by facsimile or Portable Document Format ("<u>PDF</u>") transmission shall constitute effective delivery of such signature pages. Signatures of the Parties transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

**Section 13.7  <u>Notices</u>**.  All notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly delivered (a) upon the delivery (or refusal to accept delivery) by messenger or overnight express delivery service (or, if such date is not on a Business Day, on the Business Day next following such date), or (b) upon the delivery of a PDF via email transmission on a Business Day (or, if such date is not on a Business Day, on the Business Day next following such date), addressed as follows:

| | |
|---|---|
| **To Seller**: | Debora DiPrizito \ Director, Real Estate Administration<br>200 Newberry Commons<br>Etters, Pennsylvania 17319<br>ddiprizito@RITEAID.com |
| with a copy to: | Matthew J. Davidson<br>Alvarez & Marsal North America, LLC<br>Matthew.davidson@alvarezandmarsal.com |
| with a copy to: | Sean A. Mitchell, Esq.<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>smitchell@paulweiss.com |
| with a copy to: | Michael Sirota<br>Cole Schotz PC<br>1325 Avenue of the Americas,<br>New York, NY 10019<br>msirota@coleschotz.com |
| **To Buyer**: | Five Below Stores, Inc.<br>701 Market Street, Suite 300<br>Philadelphia, PA 19106<br>Attention: Ron Masciantonio – EVP, General Counsel<br>Email: LegalNotices@fivebelow.com<br>       (Subject Line: Legal Notice to Five Below re:) |
| with a copy to: | Jones Day<br>901 Lakeside Avenue<br>Cleveland, OH 44114<br>Attention: Heather Lennox, Esq.<br>Email: hlennox@jonesday.com |

Any address or name specified above may be changed by notice given to the addressee by the other Party in accordance with this Section 13.7. The inability to deliver notice because of a changed address of which no notice was given as provided above, or because of rejection or other refusal to accept any notice otherwise appropriately given as provided above, shall be deemed to be the receipt of the notice as of the date of such inability to deliver or rejection or refusal to accept. Any notice to be given by any Party hereto may be given by the counsel for such Party.

**Section 13.8** **Time Periods**.   Any reference in this Agreement to the time for the performance of obligations or elapsed time shall mean consecutive calendar days, months or years, as applicable. In the event the time for performance of any obligation hereunder expires on a day that is not a Business Day, the time for performance shall be extended to the next Business Day.

Section 13.9  **Modification of Agreement**.  No modification of this Agreement shall be deemed effective unless in writing and signed by all Parties.

Section 13.10  **Further Instruments**.  Each Party, promptly upon the request of the other, shall execute and have acknowledged and delivered to the other any and all further instruments reasonably requested or appropriate to evidence or give effect to the provisions of this Agreement and which are consistent with the provisions of this Agreement; provided, however, that the foregoing shall not be construed or deemed to expand the obligations of any party hereto or to remove any limitations on the obligations of any party hereunder.

Section 13.11  **Descriptive Headings; Word Meaning**.  The descriptive headings of the paragraphs of this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any provisions of this Agreement. Words such as "herein", "hereinafter", "hereof" and "hereunder" when used in reference to this Agreement, refer to this Agreement as a whole and not merely to a subdivision in which such words appear, unless the context otherwise requires. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires. The word "including" shall not be restrictive and shall be interpreted as if followed by the words "without limitation."

Section 13.12  **Time of the Essence**.    TIME IS OF THE ESSENCE TO THIS AGREEMENT AND TO ALL DATES AND TIME PERIODS SET FORTH HEREIN, INCLUDING, WITHOUT LIMITATION, EACH PARTY'S OBLIGATION TO CONSUMMATE ANY LEASE ASSIGNMENT CLOSING ON THE APPLICABLE LEASE ASSIGNMENT CLOSING DATE, AS SAME MAY BE ADJOURNED AND/OR EXTENDED PURSUANT TO THE EXPRESS TERMS OF THIS AGREEMENT.

Section 13.13  **Construction of Agreement**.  This Agreement shall not be construed more strictly against one Party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the Parties, it being recognized that the Parties have contributed substantially and materially to the preparation of this Agreement.

Section 13.14  **Limitations on Liability**.  Notwithstanding anything to the contrary in this Agreement, (a) subject to any additional limitations on Seller Parties' liability set forth elsewhere in this Agreement, in no event shall any of the Seller Parties (other than Seller) or any of the direct or indirect owners of any of the Seller Parties (including Seller) have any personal liability under this Agreement and (b) subject to any additional limitations on Buyers' liability set forth elsewhere in this Agreement, in no event shall any of the direct or indirect owners of Buyer have any personal liability under this Agreement. The acceptance by Seller of the payments by Buyer of any funds due in connection with any Lease Assignment Closing and the delivery by Seller of any Assumption and Assignment Notice relating to such Lease Assignment Closing shall constitute full performance of all of Seller's obligations hereunder with respect to the Designated Leases and the Designated Stores other than those obligations of Seller, if any, that by the express terms hereof are to survive any Lease Assignment Closing.

Section 13.15  **Severability**.  The Parties hereto intend and believe that each provision in this Agreement comports with all applicable local, state and federal laws and judicial decisions.

If, however, any provision in this Agreement is found by a court of law to be in violation of any applicable local, state or federal law, statute, ordinance, administrative or judicial decision or public policy, or if in any other respect such a court declares any such provision to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all Parties hereto that, consistent with and with a view towards preserving the economic and legal arrangements among the Parties hereto as expressed in this Agreement, such provision shall be given force and effect to the fullest possible extent, and that the remainder of this Agreement shall be construed as if such illegal, invalid, unlawful, void or unenforceable provision were not contained herein, and that the rights, obligations and interests of the parties under the remainder of this Agreement shall continue in full force and effect.

Section 13.16 **Joint and Several**.  If Seller or Buyer consists of more than one person or entity, the constituent parties of Seller or Buyer, as the case may be, shall be jointly and severally liable for the obligations of Seller or Buyer, as the case may be, under this Agreement and the other documents to be executed and delivered by Seller or Buyer at any Lease Assignment Closing.

[The balance of this page has intentionally been left blank. Signature pages follow.]

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement as of the Effective Date.

**SELLER**:

**THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY** and **THRIFT DRUG, INC.**

By: _____
Name:
Title:

[Signatures continue on following page.]

**BUYER:**

**FIVE BELOW, INC.**

By: _____
Name:
Title:

**EXHIBIT A**

**FORM OF SALE ORDER**

[*Intentionally Omitted*]

## EXHIBIT B

## FORM OF ASSUMPTION AND ASSIGNMENT ORDER

[*Intentionally Omitted*]

## SCHEDULE A

## LEASES

[*Intentionally Omitted*]

**Exhibit C**

**Assignment and Assumption Order**

<table>
<tr><td colspan="2"><strong>UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY</strong></td></tr>
<tr><td>In re:<br><br>NEW RITE AID, LLC, <em>et al.</em>,<br><br>                   Debtors.[1]</td><td>Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered)</td></tr>
</table>

**ORDER APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES DESIGNATED IN NOTICE OF DEBTORS' THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY AND THRIFT DRUG, INC. FIVE BELOW ASSUMPTION AND ASSIGNMENT**

**[Related to Docket No.●]**

The relief set forth on the following pages, numbered three (3) through eleven (11), is

**ORDERED**.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Pursuant to the *Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designated Leases and (IV) Granting Related Relief* [Dkt. [•]] (the "Sale Order"); and this Court having jurisdiction over this matter under 28 U.S.C. § 1334; and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding in this district is proper under 28 U.S.C. § 1408; and this Court having found that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Debtors having properly filed and served the *Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment of Certain Unexpired Leases* (the "Assumption Notice") to each applicable party, including those parties set forth in Schedule 1 attached hereto (the "Assumption Schedule"), in accordance with the terms of the Sale Order and the Rejection and Assumption Procedures Order; and due and proper notice of the Sale Order and Assumption Notice having been provided to each applicable counterparty, and it appearing that no other notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.    The Designated Leases listed in the Assumption Schedule are assumed and assigned to Five Below, Inc. (or its designee) (the "Assignee"), effective as of the Lease

(Page 4)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Assignment Closing Date (defined below), pursuant to the terms and conditions set forth in this Order, the Sale Order and that certain Asset Purchase Agreement, dated as of August  , 2025, by and among the Assignee and Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. (and any applicable affiliates) (the "Purchase Agreement"),[1] which is hereby incorporated herein by reference.

2.       Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of any Designated Lease shall:

a.   be free and clear of all Interests (as defined in the Sale Order), other than any Interests expressly assumed under, or expressly permitted by, the Purchase Agreement; and

b.   constitute a legal, valid and effective transfer of such Designated Lease and vest the Assignee with all rights, title, and interests to the applicable Designated Lease.

3.       Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, within five (5) Business Days following the Lease Assignment Closing Date[2] for any Designated Lease, the Assignee shall pay to the Debtors all undisputed cure amounts set forth in Schedule 1 attached hereto (the "Cure Amounts") with respect to each such Designated Lease, which the Debtors shall pay directly to the applicable landlords with respect to the applicable amounts due to such landlords or, if the Debtors have already paid such amounts, shall be retained by the Debtors as

---

[1]       Capitalized terms not defined herein have the meaning attributed to them in the Sale Order or Purchase Agreement, as applicable.

[2]       For each Designated Lease, the "Lease Assignment Closing Date" shall be the first (1st) Business Day after entry of this Assumption and Assignment Order.

| (Page 5) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

reimbursement thereof. The Cure Amounts represent any and all amounts accrued and owed under the Designated Lease through the Lease Assignment Closing Date and represent Assignee's sole payment obligation on behalf of the applicable Debtor's outstanding liabilities. Assignee's sole obligation with respect to the Cure Amounts shall be to pay such amounts and any other amounts agreed upon between the applicable Debtor and Assignee.

4.      From and after each Lease Assignment Closing Date, (a) the Debtors and their estates shall be relieved of any liability for breach of such Designated Lease occurring after the applicable Lease Assignment Closing Date pursuant to section 365(k) of the Bankruptcy Code; and (b) except for the Assignee's obligation to pay the applicable Cure Amount, the applicable Designated Lease landlord is barred and permanently enjoined from asserting against the Debtors or the Assignee any existing or accrued default, claim or liability arising from or relating to the Designated Lease for the period prior to the applicable Lease Assignment Closing Date.  Further, Assignee shall have no liability for claims or causes of action (whether known or unknown), including third-party tort claims that arose prior to the Lease Assignment Closing Date or claims for incidents that occurred prior to the applicable Lease Assignment Closing Date, and all other persons and entities holding such claims attributable to the period prior to the Lease Assignment Closing Date, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such claims against the Assignee, its affiliates, successors or assigns, its property or the applicable Designated Lease.

| (Page 6) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

5.      Any provision in any Designated Lease that purports to declare a breach or default as a result of a change or transfer of control or as a result of any interest of or in respect of the Debtors is unenforceable (in connection with the assignment of a Designated Lease to Assignee), and all Designated Leases shall remain in full force and effect notwithstanding assignment thereof to Assignee. No sections or provisions of any Designated Lease, that in any way purport to,

    a.  prohibit, restrict or condition the Debtors' assignment of such Designated Lease (including, but not limited to, continuous operation covenants, use restrictions or the conditioning of such assignment on the consent of the non-debtor party to such Designated Lease);

    b.  provide for the cancellation or modification of the terms of the Designated Lease based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances, such as those prohibited by section 365(e) of the Bankruptcy Code;

    c.  provide for additional payments (e.g., so called "profit" sharing/splitting), penalties, fees, charges or other financial accommodations in favor of the non-debtor third party to such Designated Lease upon assignment thereof; or

    d.  provide for any rights of first refusal on a landlord's part, or any recapture or termination rights in favor of a landlord, or any right of a landlord to take an assignment or sublease from a tenant,

shall have any force or effect with respect to the grant and honoring of the designation rights provided for in the Purchase Agreement, because they constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code, in connection with the assignment of a Designated Lease to Assignee pursuant to the Purchase Agreement.

| | |
|---|---|
| (Page 7) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

6.     Upon the assumption and assignment of a Designated Lease to Assignee under the provisions of this Order, no default shall exist under the Designated Lease, and no counterparty to the Designated Lease shall be permitted to declare a default by any Debtor or otherwise take action against Assignee or the Debtors as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Designated Lease. Upon assumption and assignment of any Designated Lease pursuant to this Order, the Assignee shall enjoy all of the rights and benefits under each such Designated Lease as of the applicable Lease Assignment Closing Date.

7.     Subject to an applicable landlord's right to object pursuant to the Rejection and Assumption Procedures Order, notwithstanding any provision in any Designated Lease that purports to prohibit, restrict or condition such action, upon the assumption and assignment of such Designated Lease to Assignee in accordance with the terms of this Order,

    a.  Assignee shall be authorized to:

        i.  use the applicable store, subject to section 365(b)(3) of the Bankruptcy Code, upon consummation of the assumption and assignment of such Designated Lease to Assignee for Assignee's operation under the name Five Below for use as a retail store selling variety and general merchandise ("Assignee's Permitted Use"), and Assignee shall not be prevented from doing so by any recorded or unrecorded restriction, or exclusive granted by landlord;

       ii.  operate such store under the Assignee's trade name or any other trade name that the Assignee owns or is authorized to use;

      iii.  make such alterations and modifications to the applicable store (including signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including storefront

(Page 8)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

signs, panels on all pylons, monuments, directional and other ground and off-premises signs where the Debtors are presently represented) deemed necessary by the Assignee as are necessary or desirable for the Assignee to conform such store to the Assignee's typical retail store consistent with Assignee's Permitted Use, submit and execute all building and signage permit applications without further consent of any party upon production of a copy of this Order, and any conditions grandfathered for the benefit of the Debtors shall be grandfathered for the benefit of Assignee;

iv.   remain "dark" with respect to such store after such assumption and assignment until the date that is necessary to permit Assignee to remodel, restock, re-fixture, change signage and/or until completion of the work described in clause (iii) above (so long as such date is not more than two hundred twenty (220) days after the applicable Lease Assignment Closing Date or such longer period as may be allowed under the lease) or such later date as may be reasonably required for the restoration of such store or as may be agreed to by Assignee and the applicable landlord;

v.   self-insure any of its insurance obligations under the Designated Lease so long as Assignee shall have at all times a net worth of at least Fifty Million Dollars ($50,000,000); *provided*, however, to the extent any obligation cannot be self-insured any required insurance may be satisfied by both general and umbrella coverage; and

vi.   exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Designated Lease (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name); and

b.   any reference in the Designated Lease to the Debtors shall hereinafter mean Assignee.

8.      Upon payment of the Cure Amounts with respect to any Designated Lease, the

applicable landlord shall be forever barred and enjoined from asserting against the Debtors, their

(Page 9)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

estates and the Assignee any claim in connection with: (a) any breach or default, monetary or non-monetary, existing and which accrued prior to the Lease Assignment Closing Date with respect to the Designated Lease, or (b) any objection to the assumption and assignment of such Designated Lease, whether or not such non-debtor party filed a proof of claim.

9.      The Debtors are authorized to take any action necessary to implement the terms of this Order and the assumption and assignment without further order from this Court. All persons that are currently in possession of the premises leased under the Designated Lease are hereby directed to surrender possession of the premises to the Assignee as of the entry of this Order and the effective date of assignment as set forth in the Assumption Schedule.

10.      All recording officers are authorized to strike recorded encumbrances, claims, liens and other interests against the Designated Lease recorded prior to the date of this Order. To the extent permitted by applicable law, a certified copy of this Order may be filed with the appropriate recording officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Lease recorded prior to the date of this Order. All recording officers are hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order. Utility providers are directed not to discontinue service and to cooperate with the transfer of utilities to Assignee without any transfer fees. Assignee's liability for such utility usage commences on the Lease Assignment Closing Date; *provided*, for the avoidance of doubt, that this Order does not affect the Debtors' liability, if any, for utility charges incurred before the Lease Assignment

(Page 10)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Closing Date nor does this Order alter the Buyer's obligations with respect to Carrying Costs under the Sale Order.

11.     The Assignee and its affiliates, successors and assigns shall not be deemed or considered to:

    a. be a legal successor, or otherwise be deemed a successor to any of the Debtors,

    b. have, *de facto* or otherwise, merged with or into any or all Debtors, or

    c. be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Assignee has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates except as expressly set forth herein.

12.     The Assignee and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity or other law, rule regulation or doctrine, whether known or unknown as of the Lease Assignment Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Lease Assignment Closing Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the Designated Lease prior to the Lease

(Page 11)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Assignment Closing Date or arising based on actions of the Debtors taken after the Lease Assignment Closing Date.

13.    The Assignee is a "good faith purchaser," within the meaning of section 363(m) of the Bankruptcy Code, of the Designated Leases and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The parties will be acting in good faith if they proceed to consummate the assignment at any time after entry of this Order. This Order is effective immediately, notwithstanding Bankruptcy Rules 6004(h), 6006(d), and any similar provision of law.

14.    Any and all property located on or in the leased premises after the Lease Assignment Closing Date of the applicable Designated Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Lease Assignment Closing Date. As of the Lease Assignment Closing Date, the Assignee or its designee may, in its sole discretion and without further notice to any party or order of the Court, utilize and/or dispose of such abandoned property without further notice or liability to the Debtors or consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition. The rights of the counterparty to each Designated Lease to assert claims against the Debtors for the disposition of the abandoned property are reserved, as are all parties' rights to object to such claims.

15.    Notwithstanding anything to the contrary in this Order, the Auction Procedures, Bidding Procedures Order, any Assumption and Assignment Notice, any Assumption and Assignment Order, Purchase Agreement, the Assignment Agreement, side letter(s), or any

| | |
|---|---|
| (Page 12) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

document or agreement related to any of the forgoing, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors, and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assumed and assigned, assigned, or otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator; provided, however, that, to the extent any claim with respect to any Designated Lease arises that is covered by any of the Debtors' insurance policies, the Debtors may pursue such claim in accordance with the terms of the applicable insurance policy, and, if applicable, turn over to Buyer any such insurance proceeds (each, a "Proceed Turnover"), provided, further, however, that none of the Debtors' insurers shall not have any duty to Buyer to effectuate a Proceed Turnover or liability to Buyer related to a Proceed Turnover.

16.    This Court shall retain jurisdiction to resolve any dispute arising from or related to this Order.

Exhibit D

**Assignment and Assumption Notice**

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

## NOTICE OF DEBTORS' THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY AND THRIFT DRUG, INC. FIVE BELOW ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

**PARTIES RECEIVING THIS NOTICE SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES ON <u>SCHEDULE 2</u> ATTACHED HERETO AND READ THE CONTENTS OF THIS NOTICE CAREFULLY.**

**PLEASE TAKE NOTICE** that, on June 11, 2025, the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") entered the *Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief* [Docket No. 804] (the "<u>Sale Procedures Order</u>"), attached hereto as <u>Schedule 1</u>, by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction for the sale of certain unexpired leases of nonresidential real property (each, a "<u>Lease</u>"), in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>").

**PLEASE TAKE FURTHER NOTICE** that, on September [●], 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims,*

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

*Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designation Leases and (IV) Granting Related Relief* [Docket No. ●] (the "Sale Order"),[2] attached hereto as Schedule 2.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, the Sale Order, and this written notice (this "Assumption Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Lease set forth on Schedule 3 attached hereto is hereby assumed and assigned, as applicable, effective as of the date of entry of the Assumption and Assignment Order, or such other date as the Debtors, any Assignee, and the applicable assumption counterparties agree (the "Assumption Date"), which projected date is set forth in Schedule 3.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, attached hereto as Exhibit B to the Sale Order is the Designation Rights Agreement between the Debtors and the Buyer (who has designated the Assignee) for those Leases set forth on Schedule 3.

**PLEASE TAKE FURTHER NOTICE** that the Assignee has the financial wherewithal to meet all future obligations under the Lease, and the Debtors will serve evidence of adequate assurance of future performance with this Assumption Notice demonstrating that the Assignee, as applicable, has the ability to comply with the requirements of adequate assurance of future performance.[3]

**PLEASE TAKE FURTHER NOTICE** that parties seeking to object to the proposed assumption and assignment of any of the Leases must file and serve a written objection so that

---

[2] Capitalized terms otherwise undefined herein shall have the meanings ascribed to them in the Sale Order.

[3] The Debtors will provide evidence of adequate assurance of future performance with the Assumption Notice by overnight delivery upon the Assumption Counterparty affected by the Assumption Notice at the address set forth in the notice provision of the applicable Unexpired Lease (and upon the Assumption Counterparty's counsel, if known, by electronic mail).

such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is actually

received by the following parties no later than 14 days after the date that the Debtors served this

Notice: (i) the Objection Notice Parties (as defined in the Sale Procedures Order); (ii) the Office

of the United States Trustee for the District of New Jersey, One Newark Center, 1085 Raymond

Boulevard, Suite 2100, Newark, New Jersey 07102; and (iii) counsel to Five Below, Inc., Jones

Day, 901 Lakeside Avenue, Cleveland, OH 44114, Attn: Heather Lennox and T. Daniel Reynolds.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Sale Procedures

Order, if no objection is filed and served in accordance with the above procedures, the Debtors

will include and file with the Court a list of the above-described Lease(s) in an assumption schedule

attached to the proposed form of order under a certificate of no objection, substantially in the form

attached hereto as Schedule 4 (the "Assumption Order").[4]

**PLEASE TAKE FURTHER NOTICE** that the proposed cure amount under the Lease is

set forth in Schedule 2.  If a written objection to the proposed cure amount is not timely filed, then

the cure amount shall be binding on all parties and no amount in excess thereof shall be paid for

cure purposes.

**PLEASE TAKE FURTHER NOTICE** that, if an objection to the assumption and

assignment of any Lease is timely filed and not withdrawn or resolved, the Debtors shall file a

notice for a hearing to consider the objection for the Lease(s) to which such objection relates.

If such objection is overruled or withdrawn, such Lease(s) shall be assumed or assumed and

assigned as of the applicable Assumption Date.

---

[4]   An objection to the assumption and/or assignment of any particular Lease or cure amount listed in this Assumption
Notice shall not constitute an objection to the assumption and/or assignment of any other lease listed in this
Assumption Notice. Any objection to the assumption and/or assignment of any particular Lease listed in this
Assumption Notice must state with specificity the Lease to which it is directed. For each particular Lease whose
assumption and/or assignment is not timely or properly objected to, such assumption and/or assignment will be
effective in accordance with this Assumption Notice and the Sale Procedures Order.

3

[_____], 2025

Respectfully submitted,

By: /s/ DRAFT

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

4

**<u>Schedule 1</u>**

**Sale Procedures Order**

## Schedule 2

## Sale Order

**Schedule 3**

**Assumed and Assigned Leases**

| Counterparty | Debtor Counterparty | Assignee | Cure Amount | Assumption Date | Store Number | Store Address |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

**Schedule 3**

**Assumed and Assigned Leases**

| Counterparty | Debtor Counterparty | Assignee | Cure Amount | Assumption Date | Store Number | Store Address |
|---|---|---|---|---|---|---|
| Donahue Shriber Realty GRP LP | Thrifty Payless, Inc. | Five Below, Inc. | In Dispute | One business day after entry of the Assumption and Assignment Order | 6195 | 9000-A Ming Avenue Bakersfield, California 93311 |

**Schedule 4**

**Assumption Order**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al*., | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**ORDER APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES DESIGNATED IN NOTICE OF DEBTORS' THRIFTY PAYLESS, INC., THE BARTELL DRUG COMPANY AND THRIFT DRUG, INC. FIVE BELOW ASSUMPTION AND ASSIGNMENT**

**[Related to Docket No.●]**

The relief set forth on the following pages, numbered three (3) through twelve (12), is

**ORDERED**.

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com


-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com


*Co-Counsel to the Debtors and
Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Pursuant to the *Order (I) Approving the Asset Purchase Agreement Among Debtors and Buyer, (II) Authorizing the Sale of Designation Rights to Certain Leases Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Approving Assignment and Assumption Procedures for the Designated Leases and (IV) Granting Related Relief* [Dkt. 2257] (the "Sale Order"); and this Court having jurisdiction over this matter under 28 U.S.C. § 1334; and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding in this district is proper under 28 U.S.C. § 1408; and this Court having found that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Debtors having properly filed and served the *Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment of Certain Unexpired Leases* (the "Assumption Notice") to each applicable party, including those parties set forth in Schedule 1 attached hereto (the "Assumption Schedule"), in accordance with the terms of the Sale Order and the Rejection and Assumption Procedures Order; and due and proper notice of the Sale Order and Assumption Notice having been provided to each applicable counterparty, and it appearing that no other notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1. The Designated Leases listed in the Assumption Schedule are assumed and assigned to Five Below, Inc. (or its designee) (the "Assignee"), effective as of the Lease Assignment Closing Date (defined below), pursuant to the terms and conditions set forth in this

(Page 4)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

Order, the Sale Order and that certain Asset Purchase Agreement, dated as of September 10, 2025, by and among the Assignee and Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. (and any applicable affiliates) (the "Purchase Agreement"),[1] which is hereby incorporated herein by reference.

2.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of any Designated Lease shall:

      a.   be free and clear of all Interests (as defined in the Sale Order), other than any Interests expressly assumed under, or expressly permitted by, the Purchase Agreement; and

      b.   constitute a legal, valid and effective transfer of such Designated Lease and vest the Assignee with all rights, title, and interests to the applicable Designated Lease.

3.    Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, within five (5) Business Days following the Lease Assignment Closing Date[2] for any Designated Lease, the Assignee shall pay to the Debtors all undisputed cure amounts set forth in Schedule 1 attached hereto (the "Cure Amounts") with respect to each such Designated Lease, which the Debtors shall pay directly to the applicable landlords with respect to the applicable amounts due to such landlords or, if the Debtors have already paid such amounts, shall be retained by the Debtors as reimbursement thereof. The Cure Amounts represent any and all amounts accrued and owed under

---

[1]   Capitalized terms not defined herein have the meaning attributed to them in the Sale Order or Purchase Agreement, as applicable.

[2]   For each Designated Lease, the "Lease Assignment Closing Date" shall be the first (1st) Business Day after entry of this Assumption and Assignment Order.

| | |
|---|---|
| (Page 5) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

the Designated Lease through the Lease Assignment Closing Date and represent Assignee's sole payment obligation on behalf of the applicable Debtor's outstanding liabilities. Assignee's sole obligation with respect to the Cure Amounts shall be to pay such amounts and any other amounts agreed upon between the applicable Debtor and Assignee.

4.      From and after each Lease Assignment Closing Date, (a) the Debtors and their estates shall be relieved of any liability for breach of such Designated Lease occurring after the applicable Lease Assignment Closing Date pursuant to section 365(k) of the Bankruptcy Code; and (b) except for the Assignee's obligation to pay the applicable Cure Amount, the applicable Designated Lease landlord is barred and permanently enjoined from asserting against the Debtors or the Assignee any existing or accrued default, claim or liability arising from or relating to the Designated Lease for the period prior to the applicable Lease Assignment Closing Date.  Further, Assignee shall have no liability for claims or causes of action (whether known or unknown), including third-party tort claims that arose prior to the Lease Assignment Closing Date or claims for incidents that occurred prior to the applicable Lease Assignment Closing Date, and all other persons and entities holding such claims attributable to the period prior to the Lease Assignment Closing Date, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such claims against the Assignee, its affiliates, successors or assigns, its property or the applicable Designated Lease.

5.      Any provision in any Designated Lease that purports to declare a breach or default as a result of a change or transfer of control or as a result of any interest of or in respect of the Debtors is unenforceable (in connection with the assignment of a Designated Lease to Assignee),

| (Page 6) | |
| --- | --- |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

and all Designated Leases shall remain in full force and effect notwithstanding assignment thereof to Assignee. No sections or provisions of any Designated Lease, that in any way purport to,

   a.  prohibit, restrict or condition the Debtors' assignment of such Designated Lease (including, but not limited to, continuous operation covenants, use restrictions or the conditioning of such assignment on the consent of the non-debtor party to such Designated Lease);

   b.  provide for the cancellation or modification of the terms of the Designated Lease based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances, such as those prohibited by section 365(e) of the Bankruptcy Code;

   c.  provide for additional payments (_e.g._, so called "profit" sharing/splitting), penalties, fees, charges or other financial accommodations in favor of the non-debtor third party to such Designated Lease upon assignment thereof; or

   d.  provide for any rights of first refusal on a landlord's part, or any recapture or termination rights in favor of a landlord, or any right of a landlord to take an assignment or sublease from a tenant,

shall have any force or effect with respect to the grant and honoring of the designation rights provided for in the Purchase Agreement, because they constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code, in connection with the assignment of a Designated Lease to Assignee pursuant to the Purchase Agreement.

6.      Upon the assumption and assignment of a Designated Lease to Assignee under the provisions of this Order, no default shall exist under the Designated Lease, and no counterparty to the Designated Lease shall be permitted to declare a default by any Debtor or otherwise take action against Assignee or the Debtors as a result of any Debtor's financial condition, bankruptcy or

| (Page 7) | |
| --- | --- |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

failure to perform any of its obligations under the Designated Lease. Upon assumption and assignment of any Designated Lease pursuant to this Order, the Assignee shall enjoy all of the rights and benefits under each such Designated Lease as of the applicable Lease Assignment Closing Date.

7.       Subject to an applicable landlord's right to object pursuant to the Rejection and Assumption Procedures Order, notwithstanding any provision in any Designated Lease that purports to prohibit, restrict or condition such action, upon the assumption and assignment of such Designated Lease to Assignee in accordance with the terms of this Order,

   a.  Assignee shall be authorized to:

      i.  use the applicable store, subject to section 365(b)(3) of the Bankruptcy Code, upon consummation of the assumption and assignment of such Designated Lease to Assignee for Assignee's operation under the name Five Below for use as a retail store selling variety and general merchandise ("Assignee's Permitted Use"), and Assignee shall not be prevented from doing so by any recorded or unrecorded restriction, or exclusive granted by landlord;

      ii.  operate such store under the Assignee's trade name or any other trade name that the Assignee owns or is authorized to use;

      iii.  make such alterations and modifications to the applicable store (including signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including storefront signs, panels on all pylons, monuments, directional and other ground and off-premises signs where the Debtors are presently represented) deemed necessary by the Assignee as are necessary or desirable for the Assignee to conform such store to the Assignee's typical retail store consistent with Assignee's Permitted Use, submit and execute all building and signage permit applications without further consent of any party upon production of a copy of this Order, and any conditions grandfathered for the benefit of the Debtors shall be grandfathered for the benefit of Assignee;

(Page 8)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

iv.   remain "dark" with respect to such store after such assumption and assignment until the date that is necessary to permit Assignee to remodel, restock, re-fixture, change signage and/or until completion of the work described in clause (iii) above (so long as such date is not more than two hundred twenty (220) days after the applicable Lease Assignment Closing Date or such longer period as may be allowed under the lease) or such later date as may be reasonably required for the restoration of such store or as may be agreed to by Assignee and the applicable landlord;

v.   self-insure any of its insurance obligations under the Designated Lease so long as Assignee shall have at all times a net worth of at least Fifty Million Dollars ($50,000,000); *provided*, however, to the extent any obligation cannot be self-insured any required insurance may be satisfied by both general and umbrella coverage; and

vi.   exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Designated Lease (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name); and

b.   any reference in the Designated Lease to the Debtors shall hereinafter mean Assignee.

8.   Upon payment of the Cure Amounts with respect to any Designated Lease, the applicable landlord shall be forever barred and enjoined from asserting against the Debtors, their estates and the Assignee any claim in connection with: (a) any breach or default, monetary or non-monetary, existing and which accrued prior to the Lease Assignment Closing Date with respect to the Designated Lease, or (b) any objection to the assumption and assignment of such Designated Lease, whether or not such non-debtor party filed a proof of claim.

(Page 9)

| | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

9.      The Debtors are authorized to take any action necessary to implement the terms of this Order and the assumption and assignment without further order from this Court. All persons that are currently in possession of the premises leased under the Designated Lease are hereby directed to surrender possession of the premises to the Assignee as of the entry of this Order and the effective date of assignment as set forth in the Assumption Schedule.

10.      All recording officers are authorized to strike recorded encumbrances, claims, liens and other interests against the Designated Lease recorded prior to the date of this Order. To the extent permitted by applicable law, a certified copy of this Order may be filed with the appropriate recording officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Lease recorded prior to the date of this Order. All recording officers are hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order. Utility providers are directed not to discontinue service and to cooperate with the transfer of utilities to Assignee without any transfer fees. Assignee's liability for such utility usage commences on the Lease Assignment Closing Date; *provided*, for the avoidance of doubt, that this Order does not affect the Debtors' liability, if any, for utility charges incurred before the Lease Assignment Closing Date nor does this Order alter the Buyer's obligations with respect to Carrying Costs under the Sale Order.

11.      The Assignee and its affiliates, successors and assigns shall not be deemed or considered to:

| | |
|---|---|
| (Page 10) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

    a.  be a legal successor, or otherwise be deemed a successor to any of the Debtors,

    b.  have, *de facto* or otherwise, merged with or into any or all Debtors, or

    c.  be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Assignee has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates except as expressly set forth herein.

12.    The Assignee and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity or other law, rule regulation or doctrine, whether known or unknown as of the Lease Assignment Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Lease Assignment Closing Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the Designated Lease prior to the Lease Assignment Closing Date or arising based on actions of the Debtors taken after the Lease Assignment Closing Date.

13.    The Assignee is a "good faith purchaser," within the meaning of section 363(m) of the Bankruptcy Code, of the Designated Leases and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The parties will be acting in good faith if they

| (Page 11) | |
|---|---|
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

proceed to consummate the assignment at any time after entry of this Order. This Order is effective immediately, notwithstanding Bankruptcy Rules 6004(h), 6006(d), and any similar provision of law.

14.     Any and all property located on or in the leased premises after the Lease Assignment Closing Date of the applicable Designated Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Lease Assignment Closing Date. As of the Lease Assignment Closing Date, the Assignee or its designee may, in its sole discretion and without further notice to any party or order of the Court, utilize and/or dispose of such abandoned property without further notice or liability to the Debtors or consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition. The rights of the counterparty to each Designated Lease to assert claims against the Debtors for the disposition of the abandoned property are reserved, as are all parties' rights to object to such claims.

15.     Notwithstanding anything to the contrary in this Order, the Auction Procedures, Bidding Procedures Order, any Assumption and Assignment Notice, any Assumption and Assignment Order, Purchase Agreement, the Assignment Agreement, side letter(s), or any document or agreement related to any of the forgoing, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand), including, without limitation, any collateral or security provided by or on behalf of any of the Debtors,  and any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder and/or any claims handling service agreements, shall be abandoned, sold, assumed and assigned, assigned, or

| | |
|---|---|
| (Page 12) | |
| Debtors: | New Rite Aid, LLC, *et al.* |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order Approving Assumption and Assignment of Certain Unexpired Leases Designated in Notice of Debtors' Thrifty Payless, Inc., The Bartell Drug Company and Thrift Drug, Inc. Five Below Assumption and Assignment |

otherwise transferred without the express prior written consent of the applicable insurer and/or third-party administrator; provided, however, that, to the extent any claim with respect to any Designated Lease arises that is covered by any of the Debtors' insurance policies, the Debtors may pursue such claim in accordance with the terms of the applicable insurance policy, and, if applicable, turn over to Buyer any such insurance proceeds (each, a "Proceed Turnover"), provided, further, however, that none of the Debtors' insurers shall not have any duty to Buyer to effectuate a Proceed Turnover or liability to Buyer related to a Proceed Turnover.

16.    This Court shall retain jurisdiction to resolve any dispute arising from or related to this Order.