| | |
|---|---|
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** | **COLE SCHOTZ P.C.** |
| Andrew N. Rosenberg (admitted *pro hac vice*) | Michael D. Sirota, Esq. |
| Alice Belisle Eaton (admitted *pro hac vice*) | Warren A. Usatine, Esq. |
| Christopher Hopkins (admitted *pro hac vice*) | Felice R. Yudkin, Esq. |
| Sean A. Mitchell (admitted *pro hac vice*) | Seth Van Aalten, Esq. (admitted *pro hac vice*) |
| 1285 Avenue of the Americas | Court Plaza North, 25 Main Street |
| New York, New York 10019 | Hackensack, New Jersey 07601 |
| Telephone: (212) 373-3000 | Telephone: (201) 489-3000 |
| Facsimile: (212) 757-3990 | msirota@coleschotz.com |
| arosenberg@paulweiss.com | wusatine@coleschotz.com |
| aeaton@paulweiss.com | fyudkin@coleschotz.com |
| chopkins@paulweiss.com | svanaalten@coleschotz.com |
| smitchell@paulweiss.com | |

*Co-Counsel to the Debtors and Debtors in Possession*

*Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

### DEBTORS' OPPOSITION TO MOTION OF OLIVE TREE CORNING PLAZA LLC SEEKING RELIEF FROM THE AUTOMATIC STAY

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), files this opposition (the "Opposition") to the motion [Docket No. 2794] (the "Motion") of Olive Tree Corning Plaza, LLC ("Olive Tree") seeking relief from the automatic stay pursuant to section 362(d) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to pursue its alleged claims against the Debtors.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

## PRELIMINARY STATEMENT[2]

Olive Tree, the landlord to one of the Debtors' rejected leases, seeks relief from the automatic stay to pursue claims against the Debtors for contractual and equitable indemnification, apportionment, contribution, and declaratory relief arising from an alleged slip-and-fall injury that occurred at one of the Debtors' leased locations. As an initial matter, Olive Tree's claims are barred by operation of the 2023 Debtors' assumption of the Lease and the Plan Injunction under the 2023 Rite Aid Plan, which enjoins the pursuit of such claims against the Debtors. Even if Olive Tree's claims were not barred by the Debtors' prior bankruptcy– though they are–Olive Tree has not met its burden to show 'cause' exists to lift the stay as no such cause exists, particularly since Olive Tree faces no cognizable prejudice from maintaining the automatic stay. Olive Tree's claims, even if allowed, would be general unsecured claims which are not entitled to any distributions under the Debtors' 2025 Plan. The Debtors are at a critical juncture in these Chapter 11 Cases—negotiating the mechanics of an orderly resolution to these Chapter 11 Cases. Accordingly, relief from the stay would require them to divert their limited resources from their wind-down efforts towards defending barred claims. For these reasons, and as discussed in greater detail below, the Motion should be denied.

## RELEVANT FACTUAL BACKGROUND

**A.     The Current Chapter 11 Cases**

1.     On May 5, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases

---

[2]     Capitalized terms used but not defined in this section shall have the meanings ascribed to them below.

(collectively, the "Chapter 11 Cases") is set forth in the *Declaration of Marc Liebman, Chief Transformation Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 24].

2.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 7, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order authorizing procedural consolidation and joint administration of these Chapter 11 Cases under lead Case No. 25-14861 [Docket No. 122]. On May 15, 2025, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases [Docket No. 316]. On May 19, 2025, the U.S. Trustee amended and reconstituted the Committee [Docket No. 440]. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

3.  Since the Petition Date, the Debtors, together with their advisors, have achieved many of their key objectives in these Chapter 11 Cases. The Debtors worked with their vendors and landlords to stabilize their operational landing into these Chapter 11 Cases. The Debtors conducted several successful marketing processes in parallel. Pursuant to these sale processes the Debtors were able to consummate sales of a substantial majority of their assets which brought significant funds into their estates for the benefit of all stakeholders. Further, where sales of entire store locations were effectuated, the Debtors facilitated transitions that permitted many employees to maintain employment with successor store owners. Upon concluding these sales processes, the Debtors focused their efforts and attention on the wind-down of their remaining business operations, including closing all store locations and rejecting leases that could not be sold.

4. On August 26, 2025, in accordance with the *Final Order (I) Authorizing and Approving Procedures to Reject Executory Contract and Unexpired Leases and (II) Granting Related Relief* [Docket No. 776], the Debtors filed the *Thirty-First Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 2166] (the "Rejection Notice"), *inter alia*, providing notice of the rejection of Olive Tree's lease (the "Lease"), which rejection went effective on August 31, 2025. *See* Rejection Notice, pg. 14 of 19, line 11. The Lease covers Store No. 6188 located at 640 Edith Avenue, Corning, CA, 96021 (the "Premises").

5. Olive Tree, the landlord under the Lease, did not object to the Rejection Notice and on September 17, 2025, the Court entered the *Thirty-First Order Approving the Rejection of Certain Executory Contracts and/or Unexpired Leases and the Abandonment of Certain Personal Property, if Any* [Docket No. 2481] (the "Rejection Order"), approving the rejection of the Lease. *See* Rejection Order, Schedule 1, Line 13.

6. Furthering their wind-down process and efforts to emerge from these Chapter 11 Cases, on September 3, 2025, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates* [Docket No. 2286] and the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates* [Docket No. 2287]. On September 4, 2025, the Debtors filed a motion seeking conditional approval of the disclosure statement for solicitation purposes and setting a timeline for confirmation of the plan or, alternatively, approving dismissal of these Chapter 11 Cases [Docket No. 2289].

7. On September 19, 2025, the Debtors filed the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates* [Docket No. 2286] (as amended, supplemented, or modified from time to time, the "2025 Plan") and the *Disclosure Statement*

*Relating to the First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates* [Docket No. 2287] (the "2025 Disclosure Statement"). On September 22, 2025, the Court entered the *Order (I)(A) Conditionally Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballot and Notices in Connection Therewith, (D) Scheduling Certain Dates With Respect Thereto, and (E) Granting Related Relief and (II)(A) Scheduling Certain Dates With Respect to the Dismissal of the Chapter 11 Cases, and (B) Granting Related Relief* [Docket No. 2535]. The confirmation hearing for the 2025 Plan has been adjourned to a date to be determined. If the Debtors are successful in overcoming the remaining hurdles to confirmation, the 2025 Plan will govern the liquidation of their estates.

8. Notwithstanding the Debtors' efforts to confirm the 2025 Plan, in order to keep these Chapter 11 Cases on track for an orderly wind-down, the Court entered the *Order to Show Cause as to Why Case Should Not be Dismissed or Converted to Chapter 7* [Docket No. 2997] (the "OTSC") which is returnable on November 10, 2025.

**B.    The 2023 Cases**

9. Before the commencement of the current Chapter 11 Cases, on October 15, 2023 (the "2023 Petition Date"), Rite Aid Corporation ("Rite Aid") and certain of its subsidiaries commenced their bankruptcy cases under Chapter 11 of the Bankruptcy Code before this Court, which cases were jointly administered under the lead case *In re Rite Aid Corp.*, Case No. 23-18993 (Bankr. D.N.J.) (the "2023 Cases"). The debtors in the 2023 Cases (the "2023 Debtors") are largely the same entities as the Debtors in these Chapter 11 Cases.

10. On August 16, 2024, the Court in the 2023 Cases entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of*

5

*Reorganization of Rite Aid Corporation and its Debtor Affiliates (with Further Modifications)* [2023 Cases, Docket No. 4532] (the "2023 Confirmation Order"), confirming the 2023 Debtors' chapter 11 plan of reorganization (the "2023 Rite Aid Plan"), attached to the 2023 Confirmation Order as Exhibit A.

11. On August 30, 2024, the effective date of the 2023 Rite Aid Plan occurred and the 2023 Debtors emerged from bankruptcy as "Reorganized Debtors" [2023 Cases, Docket No. 4800].

12. In connection with the 2023 Rite Aid Plan, the Debtors assumed numerous leases, including the Olive Tree Lease. *See Notice of Filing of Plan Supplement for the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and its Debtor Affiliates* [2023 Cases, Docket No. 2675] (the "Plan Supplement"), Ex. A, Line 963; *and see Notice of Filing of Eighth Amended Plan Supplement* [2023 Cases, Docket No. 4526] (the "Eighth Plan Supplement"), Ex. A, line 658. The Plan Supplement and Eighth Plan Supplement each indicated that the cost to cure defaults under the Lease was $0.00.

13. Per the Plan Supplement, the deadline for Olive Tree to object to the stated cure cost was "no later than 14 days after the service of notice of assumption on affected counterparties" (the "Cure Objection Deadline"). Plan Supplement, pg. 10. Olive Tree did not file an objection to the cure cost, nor did it file a proof of claim in the 2023 Cases. As set forth in the Plan Supplement:

> Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and **any untimely request for an additional or different Cure Cost shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any of the Debtors without the need for any objection by the applicable Reorganized Debtors or the Wind-**

6

> **Down Debtors, as applicable, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court**.

Plan Supplement, pg. 10-11 (emphasis added).

14. The 2023 Confirmation Order effectuated the assumption of the Lease, providing:

> In accordance with Article V of the Plan, unless otherwise provided in this Confirmation Order, all Executory Contracts and Unexpired Leases included in the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date. Any Unexpired Lease or Executory Contract for which an objection remains outstanding or the Subsequent Objection Deadline remains pending or has not yet elapsed as of the Confirmation Date will be deemed assumed or assumed and assigned, as applicable, as of the Effective Date upon the earlier of (a) the expiration of the Subsequent Objection Deadline without a timely objection having been filed, (b) agreement between the Debtors and the applicable counterparty that such objection is resolved, or (c) entry of an order by the Bankruptcy Court resolving such objection.

2023 Confirmation Order, ¶ 42.

15. Further, the 2023 Rite Aid Plan contains an injunction provision which states that "all Entities who have held, hold or may hold Claims or Interests that have been released . . . are permanently enjoined, from and after the Effective Date, from . . . commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with such Claims or Interests [against the Reorganized Debtors]." 2023 Rite Aid Plan, Art. X.F. (the "Plan Injunction").

**C.    The State Court Action and Motion**

16. On or about June 15, 2022, Gary Hudson (the "Plaintiff") was allegedly injured in a slip-and-fall accident at the Premises. This alleged accident occurred prior to the 2023 Petition Date.[3]

---

[3] The Debtors' records reflect that a tender letter providing notice of the alleged slip-and-fall was sent by the Debtors to Olive Tree on or about September 20, 2022, and receipt was acknowledged in December 2022.

17. On April 3, 2024 (before the Cure Objection Deadline and entry of the 2023 Confirmation Order), the Plaintiff filed a complaint (the "Complaint") seeking redress for his alleged injuries solely against Olive Tree, commencing the action styled as *Gary Hudson v. Olive Tree Corning Plaza, LLC, et al.*, Case No. 24CI-000069, Superior Court of California, County of Tehama (the "State Court Action").

18. After confirmation of the 2023 Rite Aid Plan, on January 6, 2025, Olive Tree filed a cross-complaint (the "Cross-Complaint") in the State Court Action, asserting causes of action against Rite Aid for contractual and equitable indemnification, apportionment, contribution, and declaratory relief.

19. Ten months later, and over eighteen months after the State Court Action was commenced, on October 17, 2025, Olive Tree filed the Motion seeking stay relief to pursue the causes of action raised in the Cross-Complaint.

## ARGUMENT

### I. Olive Tree's Claims Are Barred by Operation of the 2023 Debtors' Assumption of the Lease and the Plan Injunction Under the 2023 Rite Aid Plan

20. As a threshold matter, Olive Tree's claims against the Debtors are barred by the 2023 Rite Aid Plan. The Lease was expressly assumed with a stated cure of $0.00. Prior to the Reorganized Debtors' assumption of the Lease, Olive Tree received notice of the Plan Supplement, Cure Objection Deadline, and the proposed assumption and cure amount. Further, prior to the assumption of the Lease, Olive Tree was served with the Complaint and made aware of the State Court Action and the Plaintiff's alleged claims against it. Despite its knowledge of the Plaintiff's claims, Olive Tree failed to file any objection to assumption of or the stated cure cost for the Lease. Olive Tree also failed to file a proof of claim on account of its alleged indemnification claim or any of the other causes of action raised in the Cross-Complaint.

8

21. The 2023 Confirmation Order and Plan Injunction apply to the claims asserted by Olive Tree against the Debtors. Together, they bar the pursuit of claims that were addressed or should have been addressed in connection with assumption of the Lease, including the cure of any defaults thereunder, and confirmation of the 2023 Rite Aid Plan.

22. Accordingly, the assumption, confirmation, and occurrence of the Effective Date therefore operate to (i) waive and bar any additional cure or indemnity amounts arising from pre-assumption defaults under the Lease, and (ii) enjoin pursuit of such claims under the Plan Injunction.

### II. Olive Tree Has Not Shown That "Cause" Exists to Lift the Automatic Stay

23. Olive Tree has not met its burden to show that "cause" exists to lift the automatic stay. *See* 11 U.S.C.A. § 362(d)(1); *In re Mattera*, 2006 WL 4452834, at *4 (Bankr. D.N.J. Feb. 6, 2006).

24. Bankruptcy courts have looked to a three-part test to determine whether cause exists for lifting the stay: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) whether the creditor has a probability of prevailing on the merits. *In re Trib. Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009). Courts will also look to the twelve Sonnax Factors in determining whether to grant relief from the automatic stay. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) (applying

the Sonnax Factors).[4] "All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay." *Id.*

25. *First*, the Debtors will face substantial prejudice if the stay is lifted. The Debtors are at a pivotal point in these Chapter 11 Cases. The Debtors anticipate that in the near future, they will either be in a position to successfully confirm the 2025 Plan or will convert or dismiss these Chapter 11 Cases. Given the posture of the Chapter 11 Cases, the Debtors' limited resources are focused on completing the wind-down of the Debtors' operations and finding a path towards the cases' conclusion. The Debtors have neither the time nor the resources to defend the Cross-Complaint. Lifting the stay would interfere with the Debtors' wind-down and pending plan process by diverting resources to defend barred claims in state court. Further, the Debtors are entitled to the "breathing spell" afforded by the automatic stay to allow them to pursue the conclusion of these Chapter 11 Cases without the distraction of the State Court Action.

26. *Second,* Olive Tree will not be prejudiced if the Motion is denied. Olive Tree delayed seeking stay relief for 10 months after filing its Cross-Complaint and 18 months after the State Court Action began; this delay directly undermines any claim of exigency or prejudice. Further, these Chapter 11 Cases will likely reach a resolution in the coming months through confirmation of the 2025 Plan, dismissal, or conversion. Olive Tree has not established that it

---

[4] The Sonnax Factors include: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (internal citations omitted).

would suffer any prejudice if it were required to suspend pursuit of its claims pending the outcome of these Chapter 11 Cases. Indeed, the only prejudice that Olive Tree argues it would suffer is the inability to obtain a judgment against the Debtors, which is precisely the type of action the automatic stay is intended to prohibit. In any event, any judgment against the Debtors is without value given that unsecured creditors are not expected to receive any recovery in these Chapter 11 Cases. *See* 2025 Disclosure Statement, pg. 11 and 2025 Plan, Article III.B.4 (providing that general unsecured claims "shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims."). Additionally, any insurance policies that may cover Olive Tree's alleged claims are self-insured retention policies, meaning the Debtors would be prejudiced as they would be responsible for the payment of defense costs up to the applicable self-insured retention limit. Because the applicable insurance policies are subject to a significant self-insured retention, estate funds—which are already limited—would be expended to defend the Cross-Complaint. Lifting the stay would thus prejudice the estates (and other stakeholders) while conferring no cognizable benefit on Olive Tree, whose claim—even if allowed—would be a non-recovering general unsecured claim under the 2025 Plan. Olive Tree identifies no concrete prejudice beyond delay in liquidating a claim that would receive no distribution under the 2025 Plan.

27. *Third*, Olive Tree has not satisfied its burden to establish cause to lift the automatic stay. Olive Tree has not submitted any facts or evidence to this Court regarding its likelihood of prevailing on the merits of its claim. Indeed, as set forth above, Olive Tree's claims are barred by the Plan Injunction in the 2023 Cases. Even if Olive Tree could assert a claim in these Chapter 11 Cases, Olive Tree would only have a general unsecured claim which would be discharged and entitled to no recovery under the proposed 2025 Plan. If the Chapter 11 Cases are converted or

11

dismissed, general unsecured creditors would still be unlikely to obtain any recovery and Olive Tree would still be unable to recover any defense costs.

28. In sum, Olive Tree has not alleged sufficient "cause" to warrant lifting the automatic stay, particularly in light of the status of these Chapter 11 Cases.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion and grant the Debtors such other relief as is just and proper.

Dated:  October 30, 2025

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*