| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> **KELLEY DRYE & WARREN LLP** <br> Robert L. LeHane <br> Andres Barajas (admitted *pro hac vice*) <br> Connie Y. Choe <br> 7 Giralda Farms, Suite 340 <br> Madison, NJ 07940 <br> Tel: (973) 503-5900 <br> Email: rlehane@kelleydrye.com <br>       abarajas@kelledrye.com <br>       cchoe@kelleydrye.com <br><br> *Counsel for Thomas A. Pitta, as Trustee of the RAD Sub-Trust A* | |
| **SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.** <br> Arthur J. Abramowitz, Esq. <br> Ross J. Switkes, Esq. <br> 308 Harper Drive, Suite 200 <br> Moorestown, NJ 08057 <br> Tel: (856) 662-0700 <br> Email: aabramowitz@shermansilverstein.com <br>       rswitkes@shermansilverstein.com <br><br> *Local Counsel to the RAD Sub-Trust B* | **GRANT & EISENHOFER P.A.** <br> Gordon Z. Novod, Esq. <br> Meagan Farmer, Esq. <br> 485 Lexington Ave. <br> 29th Floor <br> New York, NY 10017 <br> Tel: (646) 722-8500 <br> Email: gnovod@gelaw.com <br>       mfarmer@gelaw.com <br><br> *Co-Counsel to the RAD Sub-Trust B* |
| **GILBERT LLP** <br> Kami E. Quinn, Esq. <br> Daniel I. Wolf, Esq. <br> Beth Koehler, Esq. <br> 700 Pennsylvania Ave., SE <br> Suite 400 <br> Washington, DC  20003 <br> Tel: (202) 772-2336 <br> Email: quinnk@gilbertlegal.com <br>       wolfd@gilbertlegal.com <br>       koehlerb@gilbertlegal.com <br><br> *Co-Counsel to the RAD Sub-Trust B* | **MCKOOL SMITH** <br> Kyle A. Lonergan, Esq. <br> James H. Smith, Esq. <br> 1301 Avenue of the Americas <br> 32nd Floor <br> New York, NY 10019 <br> Tel: (212) 402-9400 <br> Email: klonergan@mckoolsmith.com <br>       jsmith@mckoolsmith.com <br><br> *Co-Counsel to the RAD Sub-Trust B* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>NEW RITE AID, LLC, *et al.*,<br><br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**JOINT MOTION OF RAD SUB-TRUST A AND RAD SUB-TRUST B
FOR ENTRY OF AN ORDER (I) AUTHORIZING AND DIRECTING THE
DEBTORS TO SHARE DATA CONTAINING PROTECTED INFORMATION
PURSUANT TO THE 2023 PLAN; AND (II) GRANTING RELATED RELIEF**

RAD Sub-Trust A and RAD Sub-Trust B (each, a "Trust", and collectively, the "Trusts") formed pursuant to the confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and its Debtor Affiliates (With Further Technical Modifications)* (the "2023 Plan")[2] of Rite Aid Corporation ("Rite Aid") and its debtor affiliates (collectively, and inclusive of the entities that are the debtors in the jointly administered above-captioned cases, the "Debtors" or the "Reorganized Debtors," and together with the Trusts, the "Parties"), by and through their undersigned counsel, hereby move (the "Motion") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing and directing the Debtors to provide the Trusts with the reasonably necessary data to pursue the Assigned Claims (as defined below) and Assigned Insured Rights (as defined below), including

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025/Home-DocketInfo. The location of Debtor New Rite Aid, LLC's principal place of business and Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, PA 17319.

[2] Case No. 23-18993, Docket No. 4532. All terms referenced but not capitalized herein shall have the meaning ascribed to it under the 2023 Plan, the 2023 Confirmation Order, and the Protective Order, as applicable (each as described herein).

2

data containing protected health information ("PHI"),³ personally identifiable information ("PII"), or other individually identifiable health information ("IIHI," and together with PHI and PII, the "Protected Information") subject to the Protective Order (as defined below); (ii) preserving any attorney client privilege, work-product protections, or other privilege or immunity held by any of the Debtors (collectively, the "Privileged Information") with respect to data turned over to the Trusts; and (iii) granting such other and further relief, as the Court deems just and proper. In further support of this Motion, the Trusts respectfully state as follows:

## PRELIMINARY STATEMENT[4]

1. The Trusts are successors-in-interest to the Debtors under the 2023 Plan with respect to certain Assigned Claims and Assigned Insurance Rights. In accordance with their purposes, the Trusts are prosecuting the Assigned Claims and Assigned Insurance Rights for the benefit of their beneficiaries, *i.e.*, the holders of allowed General Unsecured Claims and Tort Claims filed against the Debtors in the 2023 Cases.

2. The 2023 Plan documents require the Debtors to cooperate with the Trusts by providing relevant data they require to successfully pursue the Assigned Claims and prosecute the Assigned Insurance Rights. Since the Effective Date of the 2023 Plan, the Trusts have diligently met and conferred with the Debtors regarding their transfer of relevant data to the Trusts. However, the Debtors are now unwilling to produce any further data to the Trusts that

---

[3] "PHI" or "protected health information" refers to individually identifiable health information protected under the Health Insurance Portability and Accountability Act of 1996 and the Health Information Technology for Economic and Clinical Health Act of 2009 (together with their implementing regulations, "HIPAA"), including, for example, customer pharmacy records and claims information. *See* 2023 Plan, § IV.E.6. For purposes of this Motion, "PHI" shall have the same meaning as "protected health information" set forth in 45 C.F.R. § 160.103, and includes, without limitation, names, addresses, prescription numbers, health plan numbers, and dates related to an individual—other than the year—such as the date of dispensing. *See* Protective Order (defined below), at 5.

[4] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms below in the Motion.

3

may contain Protected Information or Privileged Information absent further order of this Court. Instead, the Debtors are proposing that the Trusts incur significant delay and potentially millions of dollars in costs to pay a third-party to screen for any data to the Trusts which contains Protected Information or Privileged Information. The Trusts have limited funds and do not possess the resources required to pay for such screening, and if they do not receive the data in question with the Protected Information and Privileged Information, it may hamper their ability to pursue the Assigned Claims.

3. As successors-in-interest to the Debtors with respect to the Assigned Claims and Assigned Insurance Rights, and as expressly provided in the 2023 Plan, the Trusts are entitled to relevant data, including data containing Protected Information and Privileged Information. *See* Section IV.E.6 of the 2023 Plan (Debtors shall "provid[e] the Litigation Trust and its Professionals with full access to the Debtors' books, records, and other documents that are relevant to the Assigned Claims and Assigned Insurance Rights (including any privileged documents and materials containing PHI or individually identifiable health information . . .")).

4. The Trusts acknowledge that the Debtors' transfer of data containing Protected Information should be subject to the protections set forth for the transfer of PHI and IIHI under the 2023 Plan and 2023 Confirmation Order in order to comply with applicable non-bankruptcy law. Accordingly, the Trusts seek access only to data that is reasonably necessary to pursue their claims and causes of action – including Protected Information and Privileged Information – and will review and designate documents received for PHI or IIHI prior to sharing them with any third party, as contemplated under the current Protective Order.

5. The Trusts have engaged extensively with Debtors and their counsel regarding the data necessary to facilitate the Trusts' efforts in their pursuit of certain claims. Despite these efforts, the Debtors have failed to comply with their obligations under the 2023

4

Plan and the Trusts continue to encounter roadblocks to access and utilize such data. Without access to the relevant information, the Trusts will be significantly hindered in their pursuit of the claims transferred to them under the Plan for the benefit of their beneficiaries. Further, if the Debtors destroy this information, the Trusts' efforts to fulfill their fiduciary duties to maximize value for their beneficiaries could be significantly prejudiced.

6. The Trusts respectfully request entry of an order authorizing and directing the Debtors to transfer data containing Protected Information and Privileged Information, subject to, and in full compliance with, the protections applicable to the transfer of PHI and IIHI under the 2023 Plan, 2023 Confirmation Order, the Cooperation Agreement and Protective Order.

## JURISDICTION

7. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this Motion under 28 U.S.C. § 1334(b), Paragraph 275 of the 2023 Confirmation Order (as defined below), and Article XIII of the 2023 Plan. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This Court has authority to enforce its own orders. 11 U.S.C. § 105(a); *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("[W]here the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect.").

## BACKGROUND

### I. Rite Aid's 2023 Cases

9. On October 15, 2023 (the "2023 Petition Date"), Rite Aid and its affiliates each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On October 17, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of those chapter 11 cases pursuant to Bankruptcy Rule 1015(b), under the lead case

5

of *In re Rite Aid Corporation, et al.*, Case No. 23-18993 (MBK) (Bankr. D.N.J.) (the "2023 Cases").[5]

10. On August 16, 2024, the Court entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates (With Further Modifications)* (the "2023 Confirmation Order"), confirming the 2023 Plan.[6]

11. On August 30, 2024 (the "Effective Date"), the 2023 Plan became effective.[7]

12. On the Effective Date, the Litigation Trust (the "RAD Master Trust") was established under the Master Trust Agreement.[8] That same day, and consistent with the 2023 Plan, RAD Sub-Trust A was established pursuant to the Sub-Trust A Agreement,[9] and RAD Sub-Trust B was established pursuant to the Sub-Trust B Agreement (with the Sub-Trust A Agreement, the "Trust Agreements").[10]

13. Under the Trust Agreements, the RAD Sub-Trust A Trustee and RAD Sub-Trust B Trustee were appointed as trustees (the "Trustees") of their respective Trust. The powers and duties of the Trusts and Trustees are governed by the 2023 Plan, the 2023 Confirmation Order, and the Trust Agreements. Among other duties, the Trustees are working to monetize and

---

[5]  Case No. 23-18993, Docket No. 122.

[6]  Case No. 23-18993, Docket No. 4532.

[7]  Case No. 23-18993, Docket No. 4800.

[8]  The substantially final form of the Master Trust Agreement was filed on August 31, 2024 as part of the Eleventh Amended Plan Supplement. *See* Case No. 23-18993, Docket No. 4793.

[9]  The substantially final form of the Sub-Trust A Agreement was filed on August 31, 2024 as part of the Eleventh Amended Plan Supplement. *See* Case No. 23-18993, Docket No. 4793.

[10] The substantially final form of the Sub-Trust B Agreement was filed on August 31, 2024 as part of the Eleventh Amended Plan Supplement. *See* Case No. 23-18993, Docket No. 4793.

6

liquidate the assets of each respective Trust to maximize recoveries for their beneficiaries, who are General Unsecured Creditors under the 2023 Plan.

## II. The Trusts' Assigned Claims

14. Under the 2023 Confirmation Order and 2023 Plan, on the Effective Date the Debtors transferred all "Litigation Trust Assets" to the RAD Master Trust "free and clear of any and all actual or alleged Claims, Interests, Liens, other encumbrances and liabilities of any kind," including the right to prosecute, settle, and/or monetize such assets.[11] The Plan defines "Litigation Trust Assets" to include, among other things, (i) Assigned Claims; (ii) Proceeds of the Assigned Claims; (iii) Assigned Insurance Rights; and (iv) the Tort Claim Insurance Proceeds.[12]

15. Pursuant to the 2023 Plan, the RAD Master Trust transferred, among other things, the Assigned Claims and Proceeds of the Assigned Claims to RAD Sub-Trust A.[13] The RAD Master Trust transferred to RAD Sub-Trust B the Assigned Insurance Rights related to Tort Claims and the Tort Claim Insurance Proceeds.[14] The foregoing Litigation Trust Assets are to be administered, pursued, and distributed (i) by RAD Sub-Trust A to holders of non-Tort General Unsecured Claims and (ii) by RAD Sub-Trust B to holders of Tort Claims channeled to Sub-Trust B under the 2023 Plan and Master Trust Agreement.

---

[11] 2023 Plan § IV.E.3(b); 2023 Confirmation Order, ¶ 40.

[12] 2023 Plan § I.A.74.

[13] The Assigned Claims are defined broadly under the Plan to mean "all of the Debtors' claims and Causes of Action, including all of the Debtors' claims against Excluded Parties" that are specifically enumerated under the 2023 Plan. *See* 2023 Plan § I.A.42.

[14] The Trusts also received the right to payment of the Post-Emergence Cash Consideration. However, as this Court is aware, given the subsequent second bankruptcy filing by the Debtors, there is no expectation that the Post-Emergence Cash Consideration will be paid by the Debtors to either of the Trusts.

16. The 2023 Confirmation Order and 2023 Plan provide that the Trustees are the "successor-in-interest to the Debtors' rights, title, and interest in any Assigned Claims and Assigned Insurance Rights."[15]

### III. The Debtors' Cooperation Obligations

17. The 2023 Confirmation Order and 2023 Plan require the Reorganized Debtors to "reasonably cooperate" with the Trusts and the Trustees "[i]n furtherance of the making of distributions to" Holders of General Unsecured Claims and Tort Claims.[16]

18. Section IV.E.6 of the 2023 Plan requires the Reorganized Debtors to cooperate with the Trusts and states, in pertinent part, that the Reorganized Debtors:

> "[S]hall provide reasonable cooperation necessary to maximize the value of the Assigned Claims, prosecute the Assigned Insurance Rights, and reconcile and administer tort claims, including, without litigation, providing the Litigation Trust and its Professionals with full access to the Debtors' books, records, and other documents that are relevant to the Assigned Claims and Assigned Insurance Rights (**including any privileged documents and materials containing PHI or individually identifiable health information**) insofar as such documents and materials are relevant to the Assigned Claims and Assigned Insurance Rights assigned, transferred, or otherwise vested to or in the Litigation Trust[.]"[17]

Section IV.E.6 of the Plan also provides that:

> "[a]ny attorney client privilege, work-product protections, or other privilege or immunity held by any of the debtors . . . to the extent that it is related to the Assigned Claims and Assigned Insurance Rights, shall be extended to and shared with the Litigation

---

[15] 2023 Plan § VII.R; 2023 Confirmation Order ¶ 144.

[16] 2023 Confirmation Order, ¶ 116; *see also id.* at ¶ 40.

[17] 2023 Plan, § IV.E.6. (emphasis added).

Trust under the terms of the Litigation Trust Cooperation Agreement."[18]

19. In the 2023 Confirmation Order, this Court ordered that the Reorganized Debtors' disclosure of PHI and IIHI to the Trusts, made in response to the Trusts' good faith requests related to their pursuit of the Assigned Claims, was required by law and therefore permitted to be disclosed under HIPAA pursuant to 45 C.F.R. § 164.512(e)(1)(i).[19] Further, the Court required the Trusts to request only such PHI as "reasonably necessary to pursue the Assigned Claims" and any disputes regarding whether the disclosure of PHI and IIHI is reasonably necessary shall be resolved by the Court.[20]

20. Further, the 2023 Confirmation Order sets forth certain procedures to protect the Trusts' use of and access to PHI and IIHI. These protections include: (i) PHI/IIHI shall be designated in accordance with a protective order to be entered by the Parties pursuant to the Cooperation Agreement;[21] (ii) the privacy and security of all such designated PHI/IIHI shall be maintained in accordance with applicable law and appropriate administrative, technical, and physical safeguards;[22] (iii) PHI/IIHI may only be disclosed to certain categories of authorized persons (such as the applicable counsel or a court, mediator, or arbitration panel) who agree to comply with the protections, restrictions and requirements set forth in the 2023 Confirmation Order;[23] (iv) recipients of PHI/IIHI must ensure that any PHI/IIHI is filed only under seal, unless

---

[18]   *Id.*

[19]   2023 Confirmation Order, ¶ 254.

[20]   *Id.*, ¶ 254.a. The Confirmation Order provides that reasonably necessary PHI could include certain categories of PHI, including names, addresses, prescription numbers, health plan numbers, and dates related to an individual, reasonably necessary to pursue the relevant claims assigned to the Trusts.

[21]   *Id.*, at ¶ 254.b.

[22]   *Id.*

[23]   *Id.*, at ¶ 254.c.

9

otherwise directed by the Court or agreed to by the Debtors;[24] and (v) recipients must follow certain notice procedures in the event of the impermissible or inadvertent disclosure of PHI/IIHI (collectively, and as set forth more fully in the 2023 Confirmation Order, the "Confirmation Order PHI Protections").[25]

21. In accordance with the 2023 Confirmation Order and 2023 Plan, the Debtors and the Trusts entered into the Litigation Trust Cooperation Agreement (the "Cooperation Agreement"), which was defined under the 2023 Plan as an agreement between the Reorganized Debtors and the Trusts with respect to the transferring to the Trusts of (a) "certain documents, information, and privileges relevant for the pursuit and administration by the [] Trust[s] of the Assigned Claims and Assigned Insurance Rights; and (b) provid[ing] for reasonable terms for cooperation between the Reorganized Debtors and the [] Trust[]s regarding same."[26] Additionally, section 1.3 of the Cooperation Agreement provides that any "attorney client privilege, work-product protections, mediation privilege, or other privilege or immunity relevant to the Assigned Claims or Assigned Insurance Rights or Tort Claims shall be extended to and shared with" the Trusts.[27]

22. Pursuant to the Cooperation Agreement, the Reorganized Debtors and the Trusts agreed to certain procedures for the protection and production of PHI, PII and IIHI, including through the entry into a protective order that complies with 45 C.F.R. § 164.512(e)(1)(v).[28] On January 23, 2025, the Court entered the *Form of Confidentiality Agreement, Stipulated Protective Order and Qualified Protective Order Governing Claims*

---

[24] *Id.*, at ¶ 254.e.

[25] *Id.*, at ¶ 254.f.

[26] 2023 Plan § I.A.77.

[27] Cooperation Agreement, § 1.3.

[28] *Id.*, § 1.6.

10

*Records and Other Discovery Material Transferred Pursuant to Rite Aid Litigation Cooperation Agreement* (the "Protective Order").[29] The Protective Order was entered into by the Parties to, among other things, establish procedures to designate confidential material as PHI or IIHI, and to facilitate the cooperative exchange of relevant data to maximize the value of the Assigned Claims and prosecute the Assigned Insurance Rights.[30] Specifically, the Protective Order requires that prior to transferring data, a "Producing Person must conduct a reasonable review for PHI or Other Individually Identifiable Health Material" and "designate all Discovery Materials that it reasonably concludes contains IIHI as 'PHI or Other Individually Identifiable Health Information Material."[31] Documents that are so designated can only be disclosed to third parties pursuant to Paragraph 13 of the Protective Order.

## IV. The New Rite Aid Bankruptcy

23. Approximately eight months after the Effective Date, on May 5, 2025, New Rite Aid, LLC and its affiliates (the "New Rite Aid Debtors")[32] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[33]

24. On September 19, 2025, the New Rite Aid Debtors filed the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* (the "New Rite Aid Plan") and related disclosure statement (the "New Rite Aid Disclosure Statement").[34] On September 22, 2025, New Rite Aid obtained entry of an order (i) conditionally

---

[29] Case No. 23-18993, Docket No. 5588.

[30] Protective Order ¶ 10.

[31] Protective Order ¶ 7(c).

[32] The New Rite Aid Debtors are, in all material respects, the same entities as the Reorganized Debtors in the 2023 Cases.

[33] The New Rite Aid bankruptcy is also pending before this Court and jointly administered under *New Rite Aid, LLC*, Case No. 25-14861, Docket No. 122 (the "New Rite Aid Bankruptcy").

[34] New Rite Aid Bankruptcy, Docket Nos. 2517, 2518.

approving the New Rite Aid Disclosure Statement in support of the New Rite Aid Plan, (ii) approving procedures for soliciting the New Rite Aid Plan, and (iii) scheduling a confirmation hearing on October 20, 2025.[35]

25. The Disclosure Statement Order established September 26, 2025 as the deadline for the New Rite Aid Debtors to file a notice indicating whether they will pursue plan confirmation, or alternatively, seek dismissal of the New Rite Aid Bankruptcy (the "Toggle Notice").[36] On September 30, the Debtors filed an adjournment notice, extending the deadline to file a Toggle Notice to an indefinite date.[37] On October 27, 2025, the Court issued an *Order to Show Cause as to Why Case Should Not be Dismissed or Converted to Chapter 7*,[38] which sets November 10, 2025, as the hearing date for parties to show cause why New Rite Aid's chapter 11 Cases should not be dismissed or converted to chapter 7.

## V. The Trusts' Requests for Data in Connection with the Assigned Claims and Assigned Insurance Rights

26. Promptly following the Effective Date of the 2023 Plan, the Trusts began engaging with the Reorganized Debtors regarding the transfer of documents pursuant to the Cooperation Agreement. At the same time, the Trusts have diligently pursued all relevant claims and causes of action for the benefit of their respective beneficiaries.

27. RAD Sub-Trust A has commenced certain adversary proceedings in connection with its Assigned Claims, including actions against (i) Caremark, L.L.C.;[39]

---

[35] New Rite Aid Bankruptcy, Docket No. 2535 (the "Disclosure Statement Order").

[36] Disclosure Statement Order, Art. IX.C.6.

[37] New Rite Aid Bankruptcy, Docket No. 2696.

[38] New Rite Aid Bankruptcy, Docket No. 2997.

[39] *Thomas A. Pitta, Trustee of the RAD Sub-Trust A v. Caremark, L.L.C., et al.*, Case No. 25-01341 (MBK), Docket No. 1; *see also In re Rite Aid Corporation, et al.*, Case No. 23-18993 (MBK), Docket No. 6087.

(ii) McKinsey & Company, Inc.;[40] (iii) certain former directors and officers of Rite Aid;[41] and (iv) recipients of potentially avoidable transfers under section 547 of the Bankruptcy Code.[42] RAD Sub-Trust A's continued pursuit and successful prosecution of such claims (and other Assigned Claims) depends upon RAD Sub-Trust A's ability to obtain data relevant to assessing the merits and viability of those claims. Initially the Debtors had been cooperatively transferring relevant data to RAD Sub-Trust A. However, the Debtors recently informed RAD Sub-Trust A that they will not be transferring any emails of identified custodians unless these emails are first reviewed by a third party to remove any Protected Information and Privileged Information. This process would likely cause a significant delay to the access of relevant data and also require RAD Sub-Trust A to incur millions of dollars in costs.

28. RAD Sub-Trust B continues to pursue its Assigned Insurance Rights in *Mangus et al v. Rite Aid Corporation et al.*, Adv. Case No. 24-01211 (Bankr. D.N.J.) [Dkt. 47] and *Rite Aid Corp., et al. v. ACE American Ins. Co., et al.*, C.A. No. N19C-04-150 EMD CCLD, pending in the Superior Court of the State of Delaware. To diligently pursue these claims, RAD Sub-Trust B has requested that the Reorganized Debtors produce certain information that they are currently refusing to produce unless they undergo an extensive privilege review – at RAD Sub-Trust B's cost – or absent this Court's permission. For example, in connection with certain sets of data, the Reorganized Debtors have represented that they can provide this information now – at nominal cost – but if the Reorganized Debtors' plan is confirmed or if these chapter 11 cases

---

[40] *Thomas A. Pitta, Trustee of the RAD Sub-Trust A v. v. McKinsey & Company, Inc., et al.*, Case No. 25-01387 (MBK), Docket No. 1.

[41] *Thomas A. Pitta, Trustee of the RAD Sub-Trust A v. v. Bodaken et al.*, Case No. 25-01386 (MBK), Docket No. 1; *Thomas A. Pitta, Trustee of the RAD Sub-Trust A v. v. Anderson, Jr., et al.*, Case No. 25-01388 (MBK), Docket No. 1.

[42] RAD Sub-Trust A has filed 967 preference actions.

convert to a chapter 7, this same process will cost millions of dollars as the Trusts will need to engage a provider to host and search the data.

29. The Parties have reached an impasse due to the Reorganized Debtors' newfound position that they are unable to share any data with the Trusts unless (a) the Trusts incur the significant costs required for a third-party to screen for the Protected Information and Privileged Information, or (b) the Court enters an order authorizing the turnover of data containing Protected Information and Privileged Information, as may be necessary for the Trusts to pursue their claims.

### VI. The Trusts' Proposed Amendment to the Protective Order

30. The relevant data that the Trusts are requesting from the Debtors should be turned over to the Trusts pursuant to the 2023 Confirmation Order, the 2023 Plan, and the Cooperation Agreement. However, the Trusts acknowledge that certain of this data containing Protected Information should remain subject to the terms of the Protective Order, subject to a modification detailed below.[43]

31. The Protective Order requires a Producing Person (*i.e.*, the Debtors with respect to the Trusts' data requests) to conduct a reasonable review of PHI and IIHI prior to producing any such material to a requesting party. Specifically, Paragraph 7(c) provides:

> A Producing Person must conduct a reasonable review of PHI or Other Individually Identifiable Health Material before producing or sharing such Discovery Materials with any other person or entity and must designate all Discovery Materials that it reasonably concludes contains Protected Information as 'PHI or Other Individually Identifiable Health Information Material' . . . .

---

[43] Paragraph 30 of the Protective Order provides that "[u]pon good cause shown, and on notice to all Parties, any Party may move to amend the provisions of this Order at any time."

14

Since the Debtors have taken the position that they are not able or not willing to conduct a reasonable review of the data containing Protected Information under the terms of the Protective Order, the Trusts submit that the Protective Order should be amended to authorize the Trusts to conduct such review. The Trusts request that Paragraph 7(c) of the Protective Order be replaced in its entirety with the following paragraph:

> **"The Trust shall conduct a reasonable review of PHI or Other Individually Identifiable Health Material before producing or sharing such Discovery Materials with any other person or entity. The Trust must designate all Discovery Materials that it reasonably concludes contains Protected Information as 'PHI or Other Individually Identifiable Health Information Material.' Such designation shall constitute a representation that there is a good-faith basis for the designation, and the material so designated shall be treated in all respects as Highly Confidential Material."**

32. Aside from modifying Paragraph 7(c) to permit the Trusts to conduct the review of documents for PHI and IIHI, the remaining terms of the Protective Order would remain unchanged. Accordingly, following the receipt of data with Protected Information, any data that the Trusts designate as PHI or IIHI shall be handled by the Trusts in the manner provided for such PHI or IIHI in the Protective Order. In other words, the Trusts' obligations regarding the possession of any Protected Information shall remain unchanged and will continue to be governed by the provisions concerning the use and disclosure of PHI/IHI and Highly Confidential Material as set forth in Paragraphs 10 through 18 of the Protective Order.

## RELIEF REQUESTED

33. By this Motion, the Trusts respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**: (i) authorizing and directing the Debtors to provide the Trusts with the necessary data, including any applicable PHI, PII, and IIHI, subject to the requirements of the Protective Order and the Confirmation Order PHI Protections;

15

(ii) preserving any Privileged Information held by any of the Debtors; and (iii) granting such other and further relief, as the Court deems just and proper.

## BASIS FOR RELIEF

34. The relief requested herein is both authorized and necessary to enable the Trusts to carry out their purposes under the 2023 Plan of pursuing Assigned Claims and Assigned Insurance Rights for the benefit of the Debtors' general unsecured creditors. Accordingly, the Trusts seek entry of an order authorizing the Debtors to provide the Trusts with the necessary data to perform their functions, including Protected Information and Privileged Information, subject to and in accordance with the Trusts' existing obligations to maintain and protect such data under the Protective Order and the Confirmation Order PHI Protections.

35. The 2023 Plan expressly requires the Debtors to cooperate with the Trusts to maximize the value of the Assigned Claims and the Assigned Insurance Rights, including by providing the Trusts with privileged documents and materials containing PHI and IIHI that are relevant to the Assigned Claims and Assigned Insurance Rights.[44] The 2023 Plan and 2023 Confirmation Order made the Debtors' disclosure of data containing Protected Information subject to the Confirmation Order PHI Protections and the Protective Order. Such protections were specifically designed to comply with HIPAA pursuant to 45 C.F.R. § 164.512(e)(1)(i), which expressly permits the disclosure of PHI during judicial proceedings when such disclosure is authorized by a court order. Therefore, the Cooperation Agreement and Protective Order established a comprehensive framework for the transfer and handling of Protected Information, which ensures that any disclosure is made in accordance with applicable law, including HIPAA.[45]

---

[44] 2023 Plan § IV.E.6.

[45] Protective Order ¶¶ 7, 18.

16

36. Further, section 105(a) of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[46] Based on the existing circumstances, and particularly, the urgency created by the New Rite Aid bankruptcy, which is now at the brink of dismissal or conversion to Chapter 7—a development that could severely hinder the Trusts' ability to fulfill their obligations—the Court's exercise of its equitable powers under section 105(a) to require the Debtors to turnover data containing Protected Information and Privileged Information is both necessary and warranted.

37. The Protective Order provides that "[u]pon good cause shown, and on notice to all Parties, any Party may move to amend the provisions of this Order at any time."[47] The Trusts respectfully submit that there is good cause to amend Paragraph 7(c) of the Protective Order to authorize the Trusts to review data containing Protected Information and designate such data as PHI or IIHI prior to sharing with any third party. This amendment is necessary here because the Debtors have made it clear to the Trusts that they lack the resources to conduct any review of the requested data for PHI and IIHI. Nor do the Trusts have the resources to incur the prohibitive cost of retaining a third party to do so. However, the Trusts are willing and able to conduct the necessary review of data provided to them by the Debtors to identify PHI or IIHI as "PHI or Other Individually Identifiable Health Information Material" prior to sharing with any third party.

38. Granting the requested relief will also promote efficiency and conserve the resources of the Debtors' estates and the Trusts. The Debtors, who lack sufficient funds to continue operations, would be relieved of the burden and expense associated with (i) reviewing and screening the data to ensure that any Protected Information remains safeguarded from

---

[46] 11 U.S.C. § 105(a).

[47] Protective Order ¶ 30.

17

disclosure to any outside parties, and (ii) engaging in protracted negotiations concerning the use and disclosure of such Protected Information.  Likewise, authorizing the Trusts to obtain and review the necessary data directly will enable them to conserve their limited resources and avoid unnecessary costs to the detriment of their beneficiaries.  The approach proposed herein provides a practical and cost-effective alternative that benefits all parties by allowing the Trusts, as successors-in-interest to the Debtors under the 2023 Plan, to access, review, and utilize the data necessary to fulfill their obligations, subject to all applicable laws and the safeguards set forth in the Protective Order and Confirmation Order PHI Protections.

39. The Trusts recognize that, at the time the 2023 Plan contemplated the continued operation of a functioning Rite Aid enterprise.  However, just over a year following the Effective Date, New Rite Aid is now engaged in an imminent liquidation process, with personnel and resources rapidly dwindling.  Many of the Debtors' books and records are at risk of being destroyed.  In light of these unforeseen developments, the Trusts will be hampered in their ability to fulfill their obligations to creditors under the 2023 Plan without access to the data at issue. Accordingly, the Trusts request that the Court, pursuant to its equitable and statutory authority, direct the Debtors to provide them with data containing Protected Information and Privileged Information, subject to all existing obligations under the 2023 Plan documents, so that the Trusts may continue to fulfill their duties for the benefit of their beneficiaries.

## NOTICE

40. The Trusts have provided notice of this Motion to the following parties and/or their respective counsel, as applicable: (i) counsel to the Debtors; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) the U.S. Trustee for the District of New Jersey; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Trusts submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

41. No prior motion for the relief requested herein has been made to this or any other Court.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Trusts respectfully request that this Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other relief as this Court deems just, proper and necessary.

Dated:  November 4, 2025

By: */s/  Robert L. LeHane*_____
**KELLEY DRYE & WARREN LLP**
Robert L. LeHane
Andres Barajas (admitted *pro hac vice*)
Connie Y. Choe
7 Giralda Farms, Suite 340
Madison, NJ 07940
Tel: (973) 503-5900
Email: rlehane@kelleydrye.com
     abarajas@kelledrye.com
     cchoe@kelleydrye.com

*Counsel for Thomas A. Pitta, as Trustee of the RAD Sub-Trust A*

By: */s/ Daniel I. Wolf*_____

**GILBERT LLP**
Kami E. Quinn, Esq.
Daniel I. Wolf, Esq.
Beth A. Koehler, Esq.
700 Pennsylvania Ave., SE
Suite 400
Washington, DC  20003
Tel: (202) 772-2336
quinnk@gilbertlegal.com
wolfd@gilbertlegal.com
koehlerb@gilbertlegal.com

*Co-Counsel to the RAD Sub-Trust B*

By: */s/ Arthur J. Abramowitz*_____
**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: (856) 662-0700
Email: aabramowitz@shermansilverstein.com
     rswitkes@shermansilverstein.com

By: */s/ Gordon Z. Novod*_____
**GRANT & EISENHOFER P.A.**
Gordon Z. Novod, Esq.
Meagan Farmer, Esq.
485 Lexington Ave.
29th Floor
New York, NY 10017
Tel: (646) 722-8500
gnovod@gelaw.com
mfarmer@gelaw.com

*Co-Counsel to the RAD Sub-Trust B*

By: */s/  Kyle A. Lonergan*_____
**MCKOOL SMITH**
Kyle A. Lonergan, Esq.
James H. Smith, Esq.
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
Tel: (212) 402-9400
klonergan@mckoolsmith.com
jsmith@McKoolSmith.com

*Co-Counsel to the RAD Sub-Trust B*