| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |   |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**PASHMAN STEIN WALDER HAYDEN, P.C.**<br>Joseph C. Barsalona II<br>Katherine R. Beilin<br>Court Plaza South<br>21 Main Street Suite 200<br>Hackensack, NJ 07601<br>Telephone: (201) 488-8200<br>Facsimile: (201) 488-5556<br>Email: jbarsalona@pashmanstein.com<br>          kbeilin@pashmanstein.com<br><br>-and-<br><br>**SHIPMAN & GOODWIN LLP**<br>Eric S. Goldstein<br>Anthony R. Scarcella<br>One Constitution Plaza<br>Hartford, CT 06103-1919<br>Telephone: (860) 251-5000<br>Facsimile: (860) 251-5218<br>Email: egoldstein@goodwin.com<br>          ascarcella@goodwin.com<br><br>*Counsel for Mass Jaz LLC* |   |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. §§ 365(d)(3) OR 503(b)(1)(A) OF MASS JAZ LLC TO ALLOW, AND COMPEL PAYMENT OF, CLAIM FOR ADDITIONAL RENT THAT CAME DUE UNDER LEASE POST-PETITION

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Creditor Mass Jaz LLC ("Mass Jaz") hereby submits this memorandum of law (this "Memorandum of Law") in support of the foregoing *Motion Pursuant to 11 U.S.C. §§ 365(d)(3) or 503(b)(1)(A) of Mass Jaz LLC to Allow, and Compel Payment of, Claim for Additional Rent that Came Due Under Lease Post-Petition* (the "Motion"). For the reasons set forth herein, the Court should enter an order, substantially in the form of the proposed order (the "Proposed Order") filed herewith, pursuant to 11 U.S.C. §§ 365(d)(3) or 503(b) allowing, and compelling payment of, a claim for taxes that came due post-petition as additional rent under that lease (as more particularly described below, the "Lease") of certain store premises known and referred to as 5125 Merrick Road, Massapequa, New York (as more particularly described in the Lease, the "Premises") by and between Mass Jaz, as lessor, and Genovese Drug Stores, Inc. (the "Debtor," and together with its debtor affiliates the "Debtors"), as lessee.

## STATEMENT OF FACTS

1. Based on the (i) the record of the above-captioned jointly administered Chapter 11 cases; (ii) the record of the Chapter 11 cases jointly administered under the caption *In re Rite Aid Corp.*, Case No. 23-18993 (MBK) (Bankr. D.N.J.) (the "Prior Cases"); and (iii) the *Certification of Kenneth Breslin in Support of Motion Pursuant to 11 U.S.C. §§ 365(d)(3) or 503(b)(1)(A) of Mass Jaz LLC to Allow, and Compel Payment of, Claim for Additional Rent that Came Due Under Lease Post-Petition* (the "Breslin Certification" or "Breslin Cert."), filed herewith, as well as the exhibits attached thereto, Mass Jaz states the following facts for the purposes of this Motion.

**I.    The Lease Agreement and the Obligation to Pay Certain Real Estate Taxes and Common Area Maintenance Charges as Additional Rent**

2. Mass Jaz, as successor-in-interest to Massapequa Plaza Associates, L.P., which was successor-in-interest to Irwin Steinhauser, Marvin Steinhauser, James Sandler, Michael

2

Steinhauser, and Elsie Steinhauser d/b/a Marwin Malls Company, is the owner and landlord of certain real property known 5117–5129 Merrick Road, Massapequa, New York (the "Entire Premises"), which includes the Premises. (Breslin Cert. ¶ 6.)

3.      Marwin Malls Company, as lessor, and the Debtor, as lessee, entered into a certain commercial lease agreement dated April 15, 1971 (the "Base Lease," and as amended by (i) that certain Modification to Lease Agreement dated March 31, 1975 (the "March 1975 Amendment"); (ii) that certain Modification of Lease Agreement dated April 4, 1975 (the "April 1975 Amendment"); (iii) that certain Modification of Lease Agreement dated March 31, 1987 (the "March 1987 Amendment"); (iv) that certain Modification of Lease Agreement dated August 15, 1995 (the "August 1995 Amendment"); (v) that certain Fifth Modification of Lease Agreement dated September 26, 2008 (the "September 2008 Amendment"); (vi) that certain Sixth Modification of Lease Agreement dated June 13, 2012 (the "June 2012 Amendment"); (vii) that certain Seventh Modification of Lease Agreement dated July 31, 2014 (the "July 2014 Amendment"); (viii) that certain Eighth Modification of Lease Agreement dated April 6, 2020 (the "April 2020 Amendment"), the "Lease"). A true and accurate copy of the Lease is attached to the Breslin Certification as Exhibit A.[2]

4.      The Debtor operated a pharmacy on the Premises.

5.      Absent renewal, the Lease was set to expire on October 31, 2030. (April 2020 Amendment § 1.)

6.      Between May 1, 2020, and October 31, 2025, the annual minimum rent under the Lease was $333,500.04 with a monthly installment of $27,791.67. (Id. § 2.)

---

[2]  Mass Jaz is unable to locate a copy of the April 1975 Amendment.

3

7. In addition to the annual minimum rent, certain other amounts were due to Mass Jaz as rent under the Lease. *First*, the Debtor was obligated to pay Mass Jaz as additional rent its "proportionate share" of:

> all real estate taxes levied or assessed against the Entire Premises as described in Exhibit "A" to the Lease which proportionate share shall be determined by a fraction, the numerator of which shall be the total number of square feet of ground floor space of the Premises and the denominator of which shall be the total number of square feet of all buildings and improvements erected on the Entire Premises described in Exhibit "A" to the Lease within thirty (30) days of being presented with a bill for such additional rent.

(Base Lease § 9; March 1987 Amendment § 1.e.B)(v)(f) (amending Base Lease § 9).)

8. *Second*, the Debtor was obligated to pay Mass Jaz at the end of the calendar year as additional rent

> its proportionate share (i.e. in the ratio the gross square foot of the ground floor area in the [Premises] to the aggregate of the square foot ground floor area in building in the Shopping Center) for the annual cost of upkeep and general maintenance of the parking areas and other common areas in the Shopping Center.

(Base Lease 40(iii).) Mass Jaz

> may include the cost of such fire insurance with extended coverage endorsement as part of the annual cost of upkeep and general maintenance for which Tenant pays its proportionate share pursuant to paragraph 40(iii) of the lease dated April 15, 1971, to the extent only that the cost of such fire insurance with extended coverage endorsement is in excess of $10,000 per annum.

(August 1995 Amendment.)

**II.    The Assumption of the Lease in the Prior Cases**

9. On October 15, 2023 (the "Prior Petition Date"), the Debtor and certain debtor affiliates (collectively, the "Prior Debtors") filed voluntary Chapter 11 petitions for bankruptcy relief in this Court, commencing the Prior Cases.

10. On August 16, 2024, the Court entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Rite*

4

*Aid Corporation and its Debtor Affiliates (with Further Modifications)* [Prior Cases, Docket No. 4532] (the "Prior Confirmation Order"). Pursuant to the Prior Confirmation Order,

> In accordance with Article V of the Plan, unless otherwise provided in this Confirmation Order, all Executory Contracts and Unexpired Leases included in the Schedule of Assumed Executory Contracts and Unexpired Leases included in the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date.

(Prior Confirmation Order ¶ 42.)

11. The Lease is listed on the *Amended Schedule of Assumed Executory Contracts and Unexpired Leases*. (*See* Prior Cases, Docket No. 4526, Ex. A, Item 1207).

12. On September 3, 2024, the Prior Debtors filed the *Notice of (I) Entry of Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates and (II) Occurrence of Effective Date* [Docket No. 4800] (the "Notice of Prior Effective Date"). Pursuant to the Notice of Prior Effective Date, the effective date in the Prior cases occurred on August 30, 2024, at 11:59 p.m. (the "Prior Effective Date").

13. Accordingly, the Lease was assumed by the Debtor in the Prior Cases as of the Prior Effective Date.

**III.    The Closing of the Debtors' Store and Rejection of the Lease in the Above-Captioned Cases**

14. On May 5, 2025 (the "Petition Date"), the Debtors again filed voluntary Chapter 11 petitions for bankruptcy relief in this Court, commencing the above-captioned bankruptcy cases.

15. On May 6, 2025, the Debtors filed the *Declaration of Marc Liebman, Chief Transformation Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 24] (the "Liebman Declaration" or "Liebman Decl."). The Leibman Declaration states

5

> The Debtors intend to provide pharmacy products and services to their pharmacy-care customers without interruption and maintain continuity of care throughout this process, including by maintaining vendor relationships and executing an efficient and timely sale process that prioritizes minimizing prescription attrition and ensuring prescription are efficiently transitioned to other pharmacies.

(Liebman Decl. ¶ 16.) Similarly, the Liebman Declaration states: "By continuing to operate their stores throughout the sale period, the Debtors will be able to continue filling prescriptions for millions of customers, many of whom rely on the Debtors for their essential medications and health care needs." (*Id.* ¶ 80.) The Liebman Declaration evinces the intention to operate stores through location closing and sale. (*Id.* ¶¶ 82–87, 90–94.)

16. On May 9, 2025, the Court entered the *Interim Order (I) Authorizing the Debtors to Assume and Perform under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 184] (the "Interim Closing Order"). Pursuant to the Interim Closing Order, the "Debtors are authorized to discontinue operations at the Closing Locations in accordance with this Interim Order, the Consulting Agreement, and the Sale Guidelines." (Interim Closing Order ¶ 13.)[3] The attached sale guidelines (the "Sale Guidelines") provide the Debtors will conduct the sale of location assets during normal operation hours for the closing location, provide notice to the landlord prior to the termination of the sale, and proceed to seek authority to reject the lease. (Interim Closing Order Sch. 3.)

17. On June 9, 2025, the Court entered the *Final Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief*

---

[3] Subsequently, on July 10, 2025, the Court entered the *Final Order (I) Authorizing the Debtors to Assume and Perform under the Consulting Agreement, (II) Authorizing and Approving the Sale of Closing Location Assets, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 184] (the "Final Closing Order"). For the purposes of this Motion, the Final Closing Order has substantially the same terms and provisions as the Interim Closing Order.

6

[Docket No. 776] (the "Rejection Order"). Under the terms of the Rejection Order, the effective date of the rejection of a lease

> shall be the later of (a) the proposed effective date set forth in the Rejection Notice, and (b) the date the Debtors relinquish control of the premises by (1) notifying the affected landlord in writing, with email being sufficient, of the Debtors' surrender of the premises and turning over keys, key codes, and security codes, if any, to the affected landlord, or (2) notifying the affected landlord in writing, with email being sufficient, that the keys, key codes, and security codes, if any, are not available, but that the landlord may rekey the leaked premises, or (c) such other date to which the Debtors and the applicable Rejection Counterparty have agreed or as the Court may order . . ..

(Rejection Order ¶ 2.a.)

18. Pursuant to the Interim Closing Order, on June 27, 2025 (the "Closing Notice Date"), the Debtors filed the *Ninth Notice of Additional Closing Locations* [Docket No. 1133] (the "Closing Notice"). The Premises are listed on the attached list of additional closing locations. (Closing Notice Ex. 1, Item 60.)

19. On or about August 25, 2025 (the "Closing Date"), the Debtor completed its sale of assets at the Premises and closed the Premises. (Breslin Cert. ¶ 9.)

20. Pursuant to the Rejection Order, on August 26, 2025, the Debtors filed the *Thirty-First Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 2166] (the "Rejection Notice"). The Lease is listed as item number 25 on the schedule of rejected contracts attached to the Rejection Notice. (Rejection Notice Sch. 1, Item 25.) The proposed effective date for the rejection of the Lease is listed as August 31, 2025. (*Id.*)

21. Mass Jaz did not object to the Rejection Notice. On or about August 31, 2025, the Debtor notified Mass Jaz it could rekey the Premises. (Breslin Cert. ¶ 10.) Accordingly, the effective date of the rejection of the Lease was August 31, 2025 (the "Rejection Date"). (Rejection Order ¶ 2.a.)

IV. **Additional Rent Due under the Lease on a Post-Petition Basis**

22. Before the Petition Date, on April 1, 2025, certain semiannual property taxes (school taxes) for the period January 1, 2025, through June 30, 2025, came due. (Breslin Cert. ¶ 11.) As required by the Lease, on July 9, 2025, Mass Jaz invoiced (the "School Tax Invoice") the Debtor for its proportionate share, prorated by the Petition Date. A true and correct copy of the School Tax Invoice is included in Exhibit B to the Breslin Certification. The Debtor's proportionate share of such school taxes is $38,331.00 (the "School Tax"). (School Tax Invoice.) Pro-rated by the Petition Date, $26,260.11 of this amount is attributable to the pre-petition period and $12,070.89 (the "Post-petition School Tax") is attributable to the pre-rejection,[4] post-petition period. (Breslin Cert. ¶ 11.)

23. After the Petition Date, on July 1, 2025, certain semiannual property taxes (town taxes) for the period July 1, 2025, through December 31, 2025, came due. (Breslin Cert. ¶ 12.) As required by the Lease, on July 2, 2025, Mass Jaz invoiced (the "Town Tax Invoice") the Debtor for its proportionate share. A true and correct copy of the Town Tax Invoice is included in Exhibit B to the Breslin Certification. Under the Lease, the Debtor's proportionate share of such taxes is $25,045.67 (the "Town Tax"). (Town Tax Invoice.) Pro-rated by the Rejection Date, $8,439.30 (the "Pre-Rejection Town Tax") is attributable to the pre-rejection, post-petition[5] period. (Breslin Cert. ¶ 12.)

24. Additionally, the Debtor has failed to pay certain common area maintenance amounts due under the Lease as additional rent for the month of May 2025. (Breslin Cert. ¶ 13.) A true and correct copy of a statement is attached as Exhibit C to the Breslin Certification. Under the Lease, the Debtor's proportionate share of such common area maintenance amounts is

---

[4] June 30, 2025, the end of the taxable period, was prior to the Rejection Date.
[5] July 1, 2025, the beginning of the taxable period, was after the Petition Date.

8

$3,436.19 (the "May CAM Charge").  Pro-rated by the petition date, $2,881.97 (the "Post-Petition May CAM Charge") is attributable to the post-petition period.  (Breslin Cert. ¶ 13.)

## JURISDICTION AND STATUTORY BASES

25. Pursuant to 28 U.S.C. § 1334, the United States District Court for the District of New Jersey (the "District Court") has jurisdiction over this matter.  Pursuant to 28 U.S.C. § 157 and the *Amended Standing Order of Reference to the Bankruptcy Court under Title 11* dated September 18, 2012, the Court has authority to hear this matter.  This matter is a core proceeding.  Mass Jaz consents to the entry of a final order or judgment by the Court.  *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015).

26. The statutory bases for the relief requests are 11 U.S.C. §§ 365(d)(3) and 503(b)(1)(A).

## LEGAL STANDARD

27. Section 365(d)(3) provides

> The [debtor-in-possession] shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).  The United States Court of Appeals for the Third Circuit (the "Third Circuit") holds that pursuant to 11 U.S.C. § 365(d)(3), a debtor-in-possession is required to "perform obligations as they become due under the terms of the lease" without proration by the petition date.  *Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001).

28. The Third Circuit holds that the existence of 11 U.S.C. § 365(d)(3) does not prevent landlords from seeking the allowance of an administrative expense claim under 11 U.S.C. § 503(b).  *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 819–20 (3d Cir. 2010).  Section 503(b) provides

9

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate . . ..

11 U.S.C. § 503(b)(1)(A).

29. "For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession. . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of its business." *Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (alterations in original) (quoting *Cramer v. Mammoth Mar, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)). Provided occupancy of rented premises provides a benefit to the estate, "[w]hen third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of [administrative claims] plainly require that their claims be afforded priority." *Goody's Family Clothing*, 610 F.3d at 818–19 (alterations in original) (quoting *Mammoth Mart*, 536 F.2d at 954). "If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (internal citations omitted).

## **ARGUMENT**

30. Under binding precedent of the Third Circuit, pursuant to 11 U.S.C. § 365(d)(3), the Court must compel the Debtors to pay Mass Jaz the entirety of the Town Tax. *Montgomery Ward*, 268 F.3d at 209, 211–12. Alternatively, if the Court determines *Montgomery Ward* does not apply (it should not so determine), pursuant to 11 U.S.C. § 503(b)(1)(A), the Court should allow,

and compel the Debtors to pay Mass Jaz, the Pre-Rejection Town Tax as an administrative claim because the Debtor occupied, and benefited from the use of, the Premises between the Petition Date and the Rejection Date. *Bildisco & Bildisco*, 465 U.S. at 531; *Goody's Family Clothing*, 610 F.3d at 818–19. Separately and in addition to any amount of the Town Tax, the Court should allow, and compel the Debtors to pay Mass Jaz, the Post-Petition School Tax and Post-Petition May CAM Charge as an administrative claim for this same reason. *Bildisco & Bildisco*, 465 U.S. at 531; *Goody's Family Clothing*, 610 F.3d at 818–19.

I. **Pursuant to 11 U.S.C. § 365(d)(3), the Court Must Compel the Debtors to Pay Mass Jaz the Town Tax Because It Came Due After the Petition Date but Before the Rejection Date**

31. The Court must compel the Debtors to pay Mass Jaz the entirety of the Town Tax. *Montgomery Ward* is on all fours with the present matter. In that case, as here, the debtor entered into a commercial lease with a landlord, which lease required the debtor to reimburse the landlord for property taxes as additional rent. *Montgomery Ward*, 268 F.3d at 207. The parties disagreed as to how 11 U.S.C. § 365(d)(3) should be applied. *Id.* at 208. The debtor argued the taxes due should be pro-rated by the petition date; the landlord argued the entire amount due must be paid. *Id.* The bankruptcy court and the district court agreed with the debtor. *Id.* The Third Circuit reversed, holding "Montgomery Ward's lease obligation to reimburse CenterPoint for tax payments arose post-order and prior to rejection. Under § 365(d)(3), Montgomery Ward's obligation must be fulfilled not in part, but in full." *Id.* at 212.

32. The Third Circuit reached this conclusion considering the contrary rulings of other courts and the contrary prior practice under the Bankruptcy Act of 1898. *Id.* at 209–12. Ultimately, despite this countervailing law and practice, the Third Circuit concluded 11 U.S.C. § 365(d)(3) clearly and unambiguously mandated reimbursement in full of taxes that come due post-petition,

11

even if attributable to a tax period that occurred (partially) pre-petition, as additional rent due under the terms of a lease. *Id.* at 208–09.

33. The present facts are indistinguishable from those in *Montgomery Ward*; this Court is bound by the Third Circuit's holding. As detailed above, (i) the Town Tax came due on July 1, 2025, which date is after the Petition Date; (ii) on July 2, 2025, which date is after the Petition Date and before the Rejection Date, Mass Jaz issued the Town Tax Invoice to the Debtor billing the Debtor for its proportionate share; and (iii) under section 9 of the Base Lease as amended by the March 1987 Amendment, the Debtor became obliged to pay its proportionate share as additional rent upon the issuance of the Town Tax Invoice. *Cf. In re Teleglobe Comm'ns Corp.*, 304 B.R. 79, 83 (D. Del. 2004) (distinguishing *Montgomery Ward* where amounts came due post-rejection); *In re Pac-West Telecomm, Inc.*, 377 B.R. 119, 125 (Bankr. D. Del. 2007) (distinguishing *Montgomery Ward* where landlord invoiced post-petition amount due pre-petition); *In re Garden Ridge Corp.*, 321 B.R. 669, 677 (Bankr. D. Del. 2005) (distinguishing *Montgomery Ward* where taxes did not become due upon billing by the landlord). Accordingly, pursuant to 11 U.S.C. § 365(d)(3), the Court must compel the Debtors to pay Mass Jaz the entirety of the Town Tax.

II. **Alternatively, Pursuant to 11 U.S.C. § 503(b)(1)(A), the Court Should Allow Mass Jaz the Pre-Rejection Tax Because it Is Attributable to the Period After the Petition Date but Before the Rejection Date and the Debtor Benefitted from Post-Petition Use of the Premises**

34. Alternatively, if the Court determines *Montgomery Ward* is distinguishable from the present facts (it should not), the Court should allow, and compel the Debtors to pay, Mass Jaz the Pre-Rejection Town Tax as an administrative claim because the Debtor occupied, and benefited from the use of, the Premises between the beginning of the taxable period on July 1, 2025, which occurred after the Petition Date, and the Rejection Date. As stated in the Liebman Declaration, the Debtor intended to continue its business at the Premises pending sale or closing of the business.

12

Even after the Closing Notice Date, pursuant to the Sale Guidelines, the Debtor continued to use the Premises to conduct its sale of the business's personal property through the Closing Date. Between the Closing Date and the Rejection Date, the Debtor retained access to the Premises.

35. Accordingly, under *Bildisco & Bildisco* and *Goody's Family Clothing*, Mass Jaz is entitled to an administrative expense claim for the amounts due under the Lease attributable to the period between the Petition Date and the Rejection Date, including the Pre-Rejection Town Tax. *Bildisco & Bildisco*, 465 U.S. at 531; *Goody's Family Clothing*, 610 F.3d at 818–19. Insofar as the Court does not compel payment of the full Town Tax, the Court should allow, and compel payment of, the Pre-Rejection Town Tax as an administrative expense claim.

III. **Separately, Pursuant to 11 U.S.C. § 503(b)(1)(A), the Court Should Allow Mass Jaz the Pre-Rejection Town Tax Because it Is Attributable to the Period After the Petition Date but Before the Rejection Date and the Debtor Benefitted from Post-Petition Use of the Premises**

36. For the same reasons the Court should allow Mass Jaz the Pre-Rejection Town Tax as an administrative expense claim, the Court should allow, and compel payment of, the Post-Petition School Tax Post as an administrative expense claim. As with the Town Tax, the Debtor is obliged to pay Mass Jaz the School Tax as additional rent due under section 9 of the Base Lease as amended by the March 1987 Amendment. Unlike the Town Tax, the School Tax became due before the Petition Date, but as stated above, the Debtor continued to benefit from Mass Jaz's performance under the Lease between the Petition Date and the end of the taxable period, June 30, 2025, both while it continued to operate the Premises and as it wound-down its operations pursuant to the Sale Guidelines.

37. For these same reasons, the Court should also allow Mass Jaz, and compel payment of, the Post-Petition May CAM Charge as an administrative expense claim. The Debtor is obliged to pay Mass Jaz the May CAM Charge as additional rent due under section 40(iii) of the Base

13

Lease as amended by the August 1995 Amendment. The Debtor continued to benefit from Mass Jaz's performance under the Lease between the Petition Date and May 31, 2025, during which time it continued to operate the Premises.

38. Accordingly, under *Bildisco & Bildisco* and *Goody's Family Clothing*, Mass Jaz is entitled to an administrative expense claim for the amounts due under the Lease attributable to the period between the Petition Date and the Rejection Date, including the Post-Petition School Tax and Post-Petition May CAM Charge. *Bildisco & Bildisco*, 465 U.S. at 531; *Goody's Family Clothing*, 610 F.3d at 818–19. The Court should allow, and compel payment of, the Post-Petition School Tax as an administrative expense claim.

## CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1)(A), Mass Jaz moves the Court to enter an order substantially in the form of the Proposed Order (i) allowing, and compelling the Debtors to pay, Mass Jaz (a)(1) the Town Tax or, alternatively, (2) the Pre-Rejection Town Tax and (b)(1) the Post-Petition School Tax and (2) the Post-Petition May CAM Charge; and (ii) granting whatever other relief justice so requires.

Dated: November 5, 2025

**PASHMAN STEIN WALDER HAYDEN, P.C.**

/s/ *Joseph C. Barsalona II*
Joseph C. Barsalona II
Katherine R. Beilin
Court Plaza South
21 Main Street Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200
Facsimile: (201) 488-5556
Email: jbarsalona@pashmanstein.com
         kbeilin@pashmanstein.com

-and-

**SHIPMAN & GOODWIN LLP**

                                      Eric S. Goldstein
                                      Anthony R. Scarcella
                                      One Constitution Plaza
                                      Hartford, CT 06103-1919
                                      Telephone: (860) 251-5000
                                      Facsimile: (860) 251-5218
                                      Emal: egoldstein@goodwin.com
                                                 ascarcella@goodwin.com

*Counsel for Mass Jaz LLC*