# EXHIBIT A



EX. A

<u>LEASE</u>

between

MARWIN MALLS COMPANY
<u>As Landlord</u>

and

GENOVESE DRUG STORES, INC.
<u>As Tenant</u>

## INDEX

| SUBJECT | PAGE NO. |
|---|---|
| Parties | 1 |
| Demised Premises | 1 |
| Exhibits | 1 |
| Term | 1 |
| Rent | 2 |
| Options of Renewal | 3 |
| Lease Year Defined | 3 |
| Initial Period | 3 |
| Accounting at Termination and Expiration | 4 |
| Additional Rent Excess Taxes | 4 |
| Assents by Landlord | 5 |
| Bankruptcy of Tenant | 5 |
| Mortgages and Mortgage Subordination | 7 |
| Liability Insurance | 9 |
| Landlord's Title and Quiet Possession | 10 |
| Possession and Surrender | 10 |
| Compliance with Laws | 11 |
| Alterations | 12 |
| Cancellation | 13 |
| Other Tenants | 13 |
| Use of Premises Before Term Commences | 14 |
| Tenant's Fixtures | 14 |
| Assigning and Subletting | 15 |
| Holding Over | 15 |
| Landlord's Repairs | 16 |
| Tenant's Repairs | 17 |

## INDEX (Continued)

| SUBJECT | Page No. |
|---|---|
| Plate Glass | 17 |
| Public Utilities | 18 |
| Damage by Casualty | 18 |
| Eminent Domain | 20 |
| Tenant's Default In Rent | 23 |
| Other Defaults by Tenant | 23 |
| Defaults of Landlord | 24 |
| Tenant's Business | 24 |
| Protective Covenant | 25 |
| Signs | 25 |
| Union Labor | 26 |
| Transfer of Title | 26 |
| Notice | 26 |
| Brokerage | 27 |
| Common Facilities | 27 |
| Covenant Against Liens | 28 |
| Gasoline Service Station Restriction | 29 |
| Competition by Tenant | 29 |
| Access to Demised Premises | 29 |
| Trial By Jury Counter-Claims | 30 |
| Performance Under Protest | 30 |
| Waiver | 31 |
| Partial Invalidity | 31 |
| Entire Agreement | 32 |
| Right of Redemption | 32 |
| Arbitration | 32 |
| Miscellaneous Provisions | 32 |

PARTIES

This Indenture of Lease made this / ✓ ᵗ day of April,

1971, between IRWIN STEINHAUSER, MARVIN STEINHAUSER, JAMES

SANDLER, MICHAEL STEINHAUSER and ELSIE STEINHAUSER, d/b/a

MARWIN MALLS COMPANY, with its principal place of business at

280 West Sunrise Highway, Freeport, New York, hereinafter referred

to as the LANDLORD, its successors and assigns, and GENOVESE

DRUG STORES, INC., a New York corporation, with its principal

place of business at 40-15 31st Avenue, Long Island City, Queens,

New York, hereinafter referred to as the TENANT, its successors

and assigns.

## W I T N E S S E T H :

DEMISED
PREMISES

1.  Landlord hereby leases to Tenant and Tenant hereby

hires from Landlord premises forming a part of the entire premises

more particularly described in Exhibit "A" and shown outlined on

Exhibit "B", together with all improvements now or hereafter

erected thereon and all rights and appurtenances thereunto belong-

ing.  Demised Premises is part of the entire premises described

in Exhibit "A" and shown outlined on Exhibit "B", and identified

as and by street number 5117-5123-5125-5127-5129 Merrick Road,

Massapequa, New York and being approximately 7300 square feet

and having a full basement area underneath said store premises.

EXHIBITS

2.  The following exhibits are attached to this Lease and

made a part thereof:

Exhibit A - Legal Descriptions of ~~Demised~~ Entire Premises.
Exhibit B - Plot Plan of Entire Premises or
Shopping Center.
Exhibit C - Title Exceptions.

TERM

3.  TO HAVE AND TO HOLD, the above described premises

together with the tenements, hereditaments, appurtenances and ease-

ments, thereunto belonging, at the rental and upon the terms

and conditions herein stated, for an original term of twenty (20)

years, plus whatever days and months, if any, as shall be

necessary to the end that this Lease shall expire on the 31st day

of January following twenty (20) years from the commencement of
the term of this Lease, unless sooner terminated or extended as
hereinafter provided.

The term of this Lease shall commence on July 1, 1971
if Hills Supermarket Inc. a tenant at the shopping center is
open for business. If Hills opens subsequently to July 1, 1971,
the lease shall commence on said subsequent date. Notwithstanding
anything herein contained, if the Tenant opens for business on
July 1, 1971 or subsequently, but before Hills opens for business
the lease shall commence on said date when the Tenant opens for
business.

As soon as the date of the commencement of the term of
this Lease has been determined, the parties hereto shall enter
into a written agreement in which the date of the commencement
of the term of this Lease is specified.

RENT           4.   The Tenant covenants and agrees to pay
to the Landlord the annual rental of $49,000.00 for the first
ten (10) years and $52,000.00 for the next ten (10) years
(unless such rent shall be abated or diminished as in this Lease
elsewhere provided) in equal monthly installments in advance on
the first day of each calendar month at 280 West Sunrise Highway,
Freeport, New York, or to such other person or corporation or at
such other place as shall be designated by Landlord, in writing,
delivered to Tenant at least ten (10) days prior to the next
ensuing rent payment date.

The rent shall commence six (6) months after the
commencement of the term as hereinbefore provided, it being the
intention of the parties hereto that the Tenant shall have six (6)
months free rent from the date of the commencement of the term here-
of.

If the commencement of the term of this Lease occurs on

-2-

any day of the calendar month  other than the first day of such

calendar month, the Tenant shall pay rent for such partial month,

following six (6) months free rent from  the commencement of the

term hereof as hereinabove provided in this Paragraph (4), on

a pro-rata basis, and, thereafter, the full monthly rent install-

ment shall become due and payable in advance on the first day of

each and every calendar month for the term of the Lease herein

reserved.

**OPTIONS OF**
**RENEWAL**

    5.  The Landlord hereby gives and grants unto the Tenant

the right, option and privilege of extending and renewing the term

of this Lease, on the same terms and conditions as in this Lease

contained, for four (4) successive additional periods of five

(5) years each, provided notice in writing, by registered or

certified mail, to so extend shall be given by Tenant to Landlord

at least One (1) year prior to the full expiration of the original

term hereof ~~or~~ any extension thereof herein provided.

**LEASE YEAR**
**DEFINED**

    6.  The term "lease year" as used in this Lease shall be

deemed to refer to and include each period of twelve (12)

consecutive months commencing with the expiration of the initial

period occurring during the continuance in force of this Lease,

to wit, February 1st to January 31st of each year following the

initial period as hereinafter provided.

**INITIAL**
**PERIOD**

    7.  If the opening of the premises for business takes

place on any day other than the first day of a calendar month,

the base rental payable hereunder shall be adjusted, following

six months free rent period from the commencement of the term

hereof as hereinbefore provided in Paragraph "4" hereof, on a

per diem basis to the end of such month; and, thereafter, in order

to conform to the practice and accounting procedure and fiscal

year of Tenant, the rental shall be the base rental as herein

provided payable in equal monthly installments in advance on the

first day of each calendar month up to and including the 31st day of January next following the commencement of the term of this Lease. Said period is herein referred to as the "initial period."

**ACCOUNTING AT TERMINATION AND EXPIRATION**

8. Upon any termination of this Lease without fault on the part of the Tenant the Landlord shall refund to the Tenant any unearned base rental theretofore paid by the Tenant for that month of the term hereof in which such termination occurs, calculated at a daily rate based on the base rental.

**ADDITIONAL RENT EXCESS TAXES**

9. Tenant covenants and agrees to pay to Landlord as additional rent for each lease year during the term hereof and any renewals thereof, after the base tax year, as hereinafter defined, the amount, if any, by which the real estate taxes levied or assessed against the Demised Premises with respect to such lease year shall exceed the real estate taxes levied or assessed against the Demised Premises during the base tax year.

Additional rent payable to Landlord in accordance with the provisions of this Paragraph shall be payable to Landlord within thirty (30) days after Landlord has presented to Tenant a bill therefor substantiated by the necessary tax records and by proof of Landlord's payments of the base taxes, and the taxes for the year for which payment is requested. The term "base tax year" shall mean the first tax year for which the premises described in Exhibit "A" annexed hereto shall be assessed following the ~~execution hereof~~. Tax increases for the first applicable year and for the last year of the orignal term of this lease, if the first option to extend the term of this Lease is not exercised, or the last year of the last exercised extension of the original term of this Lease, shall be apportioned. The term "lease year" for the purposes of this paragraph shall mean a twelve (12) month period commencing on the anniversary of the date of commencement of this lease. Tenant's share of taxes

*completion of the improvements as herein provided to the demised premises but in no event later than the '1972-1973 tax year.*

-4-

shall be determined as follows:  The increase in taxes, if any, upon the entire premises described in Schedule A for any lease year over the taxes for the base tax year, as hereinbefore defined, shall be multiplied by a fraction the numerator of which shall be the ~~land~~ area in square feet of the Demised Premises occupied by Tenant and the denominator of which shall be the total ~~land~~ area in square feet of all rentable  space described in said Schedule A during the lease year in question.  The product of such multiplication shall be Tenant's share of taxes payable in accordance with the provisions of this paragraph.

**ASSENTS BY LANDLORD**

      10.   The Landlord upon request at any time, or from time to time (but without expense to Landlord), will deliver, properly executed, all such assents and other papers as may be necessary for the purpose of enabling Tenant to obtain licenses in connection with Tenant's business on the Demised Premises.

**BANKRUPTCY OF TENANT**

      11(a).If at any time prior to the date herein fixed as the commencement of the term of this lease there shall be filed by or against Tenant in any court pursuant to any statute either of the United States or of any State a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's property, and within thirty (30) days thereof Tenant fails to secure a discharge thereof, or if Tenant makes an assignment for the benefit of creditors, or petition for or enter into an arrangement this lease shall ipso facto be cancelled and terminated and in which event neither Tenant nor any person claiming through or under Tenant or by virtue of any statute or of an order of any court shall be entitled to possession of the demised premises and Landlord, in addition to the other rights and remedies given by (c) hereof and by virtue of any other provision herein or elsewhere in this lease contained or by virtue of any statute or

rule of law, may retain as liquidated damages any rent, security, deposit or monies received by him from Tenant or others in behalf of Tenant upon the execution hereof.

(b). If at the date fixed as the commencement of the term of this lease or if at any time during the term hereby demised there shall be filed by or against Tenant in any court pursuant to any statute either of the United States or of any State a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's property, and within thirty (30) days thereof Tenant fails to secure a discharge thereof, or if Tenant makes an assignment for the benefit of creditors or petition for or enter into an arrangement this lease, at the option of Landlord exercised within a reasonable time after notice of the happening of any one or more of such events, may be cancelled and terminated and in which event neither Tenant nor any person claiming through or under Tenant by virtue of any statute or of an order of any court shall be entitled to possession or to remain in possession of the premises demised but shall forthwith quit and surrender the premises, and Landlord, in addition to the other rights and remedies Landlord has by virtue of any other provision herein or elsewhere in this lease contained or  by virtue of any statute or rule of law, may retain as liquidated damages any rent, security, deposit or monies received by him from Tenant or others in behalf of Tenant.

(c)  It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) or (b) hereof, Landlord shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of

the term demised and the then fair and reasonable rental value
of the demised premises for the same period.  In the computation
of such damages the difference between any installment of rent
becoming due hereunder after the date of termination and the fair
and reasonable rental value of the demised premises for the period
for which such installment was payable shall be discounted to the
date of termination at the rate of four per cent (4%) per annum.
If such premises or any part thereof be re-let by the Landlord
for the unexpired term of said lease, or any part thereof, before
presentation of proof of such liquidated damages to any court,
commission or tribunal, the amount of rent reserved upon such
re-letting shall be prima facie to be the fair and reasonable
rental value for the part or the whole of the premises so re-let
during the term of the re-letting.  Nothing herein contained
shall limit or prejudice the right of the Landlord to prove for
and obtain as liquidated damages by reason of such termination, an
amount equal to the maximum allowed by any statute or rule of law
in effect at the time when, and governing the proceedings in which,
such damages are to be proved, whether or not such amount be
greater, equal to, or less than the amount of the difference
referred to above.

**MORTGAGES
AND
MORTGAGE
SUB-
ORDINATION**

12.  This Lease shall be subject and subordinate to
mortgages affecting the Demised Premises placed of record and
mortgages in substitution or renewal in the same or lesser amounts.

Tenant agrees to subordinate this lease to the
lien of any institutional first mortgage which may hereafter affect
the Demised Premises, and to all renewals, modifications,
consolidations, participations, replacements and extensions there-
of, provided that Tenant shall enjoy all its rights under the
lease regardless of any inconsistent provisions in such mortgage.
Said mortgage shall provide that as long as Tenant is not in default

in the payment of rent or any of the other covenants or conditions
of this lease beyond the applicable grace period in this lease,
the rights of Tenant under this lease shall not be terminated,
and the possession of Tenant shall not be disturbed by the holder
of any such mortgage or by any proceedings on the debt which any
such mortgage secures, or by any person, firm or corporation whose
rights were acquired as a result of such proceedings or by virtue
of a right or power contained in any such mortgage or the bond or
note secured thereby.  The term "institutional first mortgage",
as used herein, shall mean a first mortgage given to secure
monies advanced by a bank, trust company, insurance company,
welfare fund, pension fund, savings and loan association or similar
institutions.  The foregoing subordination shall be self operative
and no further instrument of subordination shall be required by
any mortgagee.  In confirmation of such subordination, Tenant
shall execute promptly any certificate that Landlord may request.
Tenant hereby constitutes and appoints Landlord the Tenant's
attorney-in-fact to execute any such certificate or certificates
for and on behalf of Tenant if Tenant shall fail to so execute
after reasonable notice to Tenant.  In the event of a consummated
foreclosure, Tenant will attorn to the new Landlord and may not
cancel this lease pending a foreclosure of a prior lien.

    In the event that the principal or interest upon
any mortgage or mortgages upon the Demised Premises or any other
payments required by such mortgage or mortgages to be made by
the Landlord shall remain overdue and unpaid for a period of
twenty-five (25) days after the same shall have become due and
payable thereunder, notice of such default shall be given by
the Landlord to the Tenant, and the Tenant shall have the right,
at its option, on notice to Landlord, to pay such principal and
interest to the mortgagee or mortgagees, and to make all such

other payments so in default and shall be entitled to deduct the
amount of any and all such payments, with interest, from the rent
or any other amounts due or which may become due under this
Lease until the full amount of any and all such payments, shall
have been deducted and repaid to the Tenant.

**LIABILITY**
**INSURANCE**        13.   Tenant shall, during the term hereof, keep in force,
in an insurance company or companies authorized to do business
in the State of New York a policy or policies of liability insur-
ance protecting Landlord and Tenant, with aggregate limits of
liability in the amount of not less than Five Hundred Thousand
($500,000) Dollars in respect of bodily injury or death to any
one person, in the amount of not less than Two Million ($2,000.000)
Dollars in respect of bodily injury or death occurring in any
one accident, and in the amount of not less than Fifty Thousand
($50,000) Dollars in respect of property damage.  Such insur-
ance may, at Tenant's election be carried under a blanket
policy covering the Demised Premises and any other stores operated
by Tenant or its affiliates, parent or subsidiaries.  A re-
newal policy shall be procured not less than thirty (30) days
prior to the expiration of any such policy.  A certificate of
the insurer evidencing the insurance carried with proof of
payments of premiums shall be deposited with Landlord.  Landlord
shall maintain similar insurance coverage insuring itself with
respect to the parking field (excluding the Demised Premises)
with limits of at least $500,000. for one person, $2,000,000
for one accident and $50,000.00 for property damage.

                In lieu of Tenant including the Landlord  as
co-insured in Tenant's liability insurance policy as above
provided Tenant may, at its option, furnish Landlord with a sepa-
rate Owner's Protective Liability policy in the name of the
Landlord for the limits above set forth.

**LANDLORD'S**
**TITLE AND**
**QUIET**
**POSSESSION**

14. Landlord covenants that Landlord has fee simple title to the premises described in Exhibit "A" hereof and full right and authority to make this Lease; that said/premises are free
                                                          demised
and clear of and from all liens, restrictions, leases and encumbrances (except as set forth in Exhibit "C"); and that there are no laws, ordinances, governmental rules or regulations or title restrictions or zoning or other matters which will restrict, limit or prevent Tenant's operation of its usual retail business or any department thereof in Demised Premises. Landlord covenants that so long as Tenant is not in default there-under, Tenant shall have quiet and peaceful possession and enjoy-ment of Demised Premises and of all rights and appurtenances thereunto belonging.

Concurrently with the execution of this Lease, Landlord and Tenant have executed a Short Form Lease. Tenant agrees at its own cost and expense to record said Short Form Lease with the proper office or department in the State, County or Municipality in which Demised Premises is located.

As a condition precedent to the binding effective-ness of this Lease upon the Tenant, the Landlord agrees and covenants that, at the time said Short Form Lease is executed, the Landlord's title to the premises is in accordance with the foregoing covenants.

**POSSESSION**
**AND**
**SURRENDER**

15. When Landlord delivers possession of Demised Premises to Tenant, Landlord's title shall be in accordance with the covenants of Landlord set forth in Paragraph "14" hereof and Demised Premises shall be unoccupied. At such time the building upon Demised Premises shall be in full compliance with all federal, state and local laws, ordinances and regulations relating to the use, occupation and construction thereof. Tenant agrees to deliver broom clean to Landlord physical

possession of Demised Premises upon the termination of the term

hereof or of any extension thereof, together with alterations,

additions and improvements then a part of the Demised Premises,

in good condition excepting, however, ordinary wear and tear, damage

by fire, or any other casualty insured against under policies

maintained or required to be maintained by Landlord, or damage

from any other cause unless such other cause is solely attributable

to the negligence of Tenant.  All furniture, trade fixtures and

personal property of Tenant shall have been removed on or prior

to surrender.

**COMPLIANCE
WITH LAWS**

16.  If any federal, state or municipal government or any

department or division thereof (a) shall condemn Demised Premises

or any part thereof as unsafe or as not in conformity with the

laws and regulations relating to the use, occupation and constructic

thereof through no fault of Tenant, or (b) shall require any

rebuilding, alteration or repair of Demised Premises or any

installations, including, but not by way of limitation, fire

escapes, or any fire preventive devices, through no fault of Tenant,

Landlord shall immediately rebuild Demised Premises or make such

alterations, installations or repairs as may be necessary to

comply with such laws, regulations, orders or requirements all

at Landlord's own cost and expense.  If by reason of any such

condemnation or requirement or the work done by Landlord in

connection therewith Tenant is deprived of any part of the

premises or of the use of any part of Demised Premises all rent

and other sums payable hereunder shall abate equitably and

proportionately during the period of such deprivation.  If the

parties hereto cannot agree upon the amount of the abatement,

then such amount shall be fixed by arbitration under the rules

of the American Arbitration Association then obtaining.  In such

arbitration, the arbitrator shall take into consideration all

the relevant factors.

Any rebuilding, altering or repairing of Demised Premises shall be done by the Landlord promptly and diligently .

In the event Landlord fails to do such rebuilding or altering, the Tenant may do such rebuilding or altering "Under Protest" as herein provided.

Notwithstanding any of the foregoing if any such order or requirement of any governmental authority shall be the result of the use of Demised Premises by Tenant in a manner not authorized by this Lease, Tenant shall comply with such order or requirement within the Demised Premises at its own cost and expense and no abatement of rent shall be granted.

**ALTERATIONS**          17. Tenant shall have the right, at its cost and expense, from time to time to redecorate the Demised Premises and to make such alterations, installations, improvements, additions and changes in such part thereof as Tenant shall deem necessary or desirable for its purposes; provided, however, that such alterations, installations, changes shall not impair the safety of the Demised Premises, shall be done in a good and workmanlike manner and in accordance with all applicable laws and other governmental requirements, and provided further that any structural alterations or changes shall not weaken the structural soundness of the Demised Premises. Landlord shall execute and deliver, upon request of Tenant, any instrument or instruments which may be required by any public or quasi-public authority for the purpose of obtaining any license or permit for the making of such alterations, installations, changes to or upon the Demised Premises. Tenant shall pay for such licenses or permits.

The new construction shall not lessen the value of the existing building and shall be made according to plans and specifications therefor which shall be approved by the Landlord as shall workmen's compensation and liability insurance coverage. All repairs in connection therewith, including

structural, shall be made by Tenant. All buildings, alterations,
rebuildings, replacements, changes, additions and improvements on
or in the Demised Premises at the commencement of the term,
and which may be erected, installed or affixed on or in the Demised
Premises during the term (except personal property, fixtures and
equipment) whether by Landlord or Tenant, are and shall be
deemed to be and to immediately become part of the realty and
the sole and absolute property of Landlord.

CANCELLATION        18.  If (a) Demised Premises shall not be delivered
to Tenant in accordance with the provisions of this Lease for
any reason whatsoever on or before July 1, 1971, or (b) Hill's
Supermarket Inc. is not occupying its respective premises,
Tenant may at any time within one (1) year thereafter or after
any extention thereof granted to Landlord by Tenant, terminate
and cancel this Lease by written notice to Landlord whereupon
this Lease shall thenceforth be null and void and of no further
effect. The foregoing rights of termination and cancellation
shall not be exclusive of any other rights or remedies of Tenant
for the enforcement of the obligations of Landlord under this Lease.
If Demised Premises is not delivered to Tenant within two (2)
years from the date hereof this Lease shall at option of Tenant
terminate on the second anniversary date of the date first above
written.

OTHER
TENANTS        19.  Within thirty (30) days after the date of this Lease,
Landlord shall deliver to Tenant a certificate of an attorney
setting forth that Landlord has obtained an executed lease for
the term and size of store and with the tenant (hereinafter
referred to as "Principal Tenant") hereinafter listed.

| Principal Tenant | Minimum Ground Floor Area | Minimum Firm Lease Term | To Expire Not Earlier Than |
|---|---|---|---|
| Hill's Supermarket Inc. | Approximately 24,000 sq. ft. | 20 years | 1990 |

Landlord for itself and its successors and assigns represents and agrees that the space designated supermarket on said plot plan or drawing attached to Exhibit "B" has been leased to Hill's Supermarket for the operation of a retail food market therein for a term of twenty (20) years from January, 1971.   It is a condition of this Lease, any other provision in this Lease to the contrary notwithstanding, that said space will be operated as a retail food market throughout the term of this Lease as the same may be renewed or extended. It is expressly understood and agreed between Landlord and Tenant, any other provision in this Lease to the contrary notwithstanding, that if at any time a supermarket is not operated in the space designated supermarket in said plot plan or drawing for a period of six (6) months during the term of this Lease, except for fire, casualty or condemnation, Tenant shall have the right at any time after the expiration of said period to cancel and terminate this Lease by giving thrity (30) days written notice to the Landlord of its intention so to do, and upon the expiration of thirty (30) days after the giving of such notice, this Lease and all rights arising hereunder shall terminate as of such date as if such date had originally been named herein as the termination date hereof.

**USE OF
PREMISES
BEFORE TERM
COMMENCES**

20.   Landlord agrees that Tenant may enter Demised Premises at any time prior to the commencement of the term of this Lease and make alterations, install therein fixtures and equipment and receive and store therein merchandise and other property at Tenant's own risk, free from rent.   Such entry into Demised Premises shall not be construed as a waiver of any of the provisions of this Lease.

**TENANT'S
FIXTURES**

21.   Tenant may install in Demised Premises such fixtures (trade or otherwise) and equipment as Tenant deems desirable and all of said items shall remain Tenant's property whether or not affixed or attached to Demised Premises.   Tenant may remove said

-14-

fixtures and equipment from Demised Premises at any time and
from time to time during the term hereof and any extensions there-
of without injury to Demised Premises. Landlord shall not mortgage,
pledge or encumber said fixtures or equipment.

ASSIGNING
AND SUB-
LETTING

22. The Tenant shall have the right to assign or transfer
this Lease, or to underlease or sublet the whole or any part of
leased premises, or to grant concessions in the Demised Premises.
In the event of an assignment of this Lease, or subletting of
substantially all of the leased premises, Tenant will give
written notice thereof to the Landlord within ten (10) days after
the same takes place with a copy of said assignment or sublease,
as the case may be. In the case of an assignment, the assignee
shall, by written instrument duly executed and acknowledged, a
duplicate original of which shall be delivered to the Landlord
within ten (10) days of such assignment, assume performance of
the terms of this Lease, but Tenant and subsequent assignors
shall nevertheless remain liable to the Landlord for full payment
of the rent and Tenant's other obligations under this Lease.

HOLDING
OVER

23. If Tenant holds over or remains in possession of
the Demised Premises after expiration of this Lease or after any
sooner termination thereof, without any new lease of said premises
being entered into between the parties hereto, or any option
hereinafter contained being exercised by written notice, such
holding over or continued possession shall, if rent is paid by
Tenant, and accepted by Landlord, for or during any period of
time Tenant holds over or remains in possession, create a tenancy
from month to month only at the last monthly rental and upon the
terms (other than length of term, or option for renewal, or
cancellation) herein specified, which may at any time be terminated
by either party by thirty (30) days written notice given to the
other party.

**LANDLORD'S**
**REPAIRS**

24. Landlord shall maintain the exterior and structural elements of Demised Premises or the premises of which Demised Premises is a part (including without limitation the roof, roof structures and supports, foundation and structural supports, walls, structural portion of the floors, chimneys, and skylights, gutters, downspouts, streets, curbs, sidewalks, utility lines servicing Demised Premises and appurtenances thereto) in good and useable repair during the term of this Lease and any extensions thereof. Landlord shall also make and pay for all other repairs to the interior of Demised Premises necessitated by (a) Landlord's failure to make any repairs required of it hereunder; (b) defective workmanship in the original construction of Demised Premises; or (c) damage arising by settling of Demised Premises. Landlord shall not be responsible for any repairs to those parts of the Demised Premises which have been altered by the Tenant.

Any repairs to be made by the Landlord shall be made at such reasonable times as shall not unduly interfere with the conduct of the business in the Demised Premises and the Landlord will give the Tenant reasonable notice of the time when such repairs are to be made. In the making of such repairs none of the space demised shall be unnecessarily taken or diminished, and in case it becomes necessary by reason of any order of any governmental authority for the Landlord to run any pipes or wires through the Demised Premises the same shall be placed in a concealed position so far as practicable.

Anything in this Lease to the contrary notwithstanding, Landlord agrees that if, in an emergency, it shall become necessary to make any repairs hereby required to be made by Landlord, Tenant may upon telephone or personal notice and notice as required by Paragraph "38" hereof proceed forthwith to have such repairs made and pay the cost thereof. Landlord agrees to pay Tenant the reasonable cost of such repairs on demand,

"Under Protest" if it is so advised.

In the event that, under any circumstances, because of the Landlord's failure to make the repairs provided for under this Paragraph "24", the Tenant is deprived of any part of the Demised Premises, or of the use of any such part of the premises, or of the use of any part of the Entire Premises which the Tenant is entitled to use under the provisions of this Lease, the rent shall abate equitably and proportionately during the period of such deprivation. If the parties hereto cannot agree upon the amount of the abatement, then such amount shall be fixed by arbitration under the rules of the American Arbitration Association then obtaining. In such arbitration, the arbitrator shall take into consideration all the relevant factors.

Except for the fault of the Tenant and because of Landlord's fault in its violating the terms of the within lease, Landlord agrees to indemnify and save Tenant harmless from and against all loss to merchandise, fixtures and equipment occasioned by leakage and seepage or flowing of water into the Demised Premises, provided that Tenant keeps its merchandise in the basement of the Demised Premises on skids.

**TENANT'S REPAIRS**

25. Tenant shall make and pay for all ordinary non-structural repairs to the interior of Demised Premises not occasioned by ordinary wear and tear, fire or other casualty. On surrendering possession of Demised Premises to Landlord at the expiration or sooner termination of this Lease, Tenant shall not be required to restore the same to the condition existing at the commencement of the term hereof and Landlord agrees to accept the Demised Premises with all alterations and improvements made by Tenant, provided same was approved by Landlord.

**PLATE GLASS**

26. Tenant agrees that it will replace any plate glass broken or damaged upon the Demised Premises at its own cost and

expense, excepting that it shall not be obligated to replace any
plate glass broken or damaged by or as a result of any casualty
included as a risk in the insurance policies required to be
maintained by Landlord under this lease.

**PUBLIC**
**UTILITIES** ✓         27. The Landlord agrees to provide and furnish, unless
provided and furnished by utility companies at their own cost
and expense, throughout the term of this Lease, and any renewal or
renewals thereof, the necessary mains and conduits in order that
water, gas and electricity may be furnished to the Demised
Premises, except that meter costs and any deposits required by
any utility company for services to the Tenant's store, shall be
paid by the Tenant. The Landlord shall maintain such mains and
conduits throughout the term hereof, and any and all renewals
thereof, unless same are maintained by the utility companies at
their own cost and expense. Tenant agrees to pay at a rate not
to exceed the usual local rate for all such utilities consumed by
Tenant on Demised Premises, during the term hereof and any
extensions thereof, as evidenced by readings taken from said meters,
in the event Landlord furnishes utilities.

**DAMAGE BY**
**CASUALTY**          28. If Demised Premises or any other building erected on
entire premises is damaged or destroyed by fire, the elements,
subsidence of sublateral or subjacent support or other casualty,
Landlord shall promptly and diligently repair and restore the
Demised Premises or any such other building to its condition just
prior to the damage. During the period from the date of such
damage or destruction until all repair and restoration work is
completed and Demised Premises redelivered to Tenant in accordance
with the terms of this Lease all rent and other sums payable
hereunder shall abate, equitably and proportionately.

In the event that under any circumstances because
of the Landlord's failure to promptly and diligently repair and
restore as in this Paragraph provided, the Tenant is deprived of

-18-

any part of the Demised Premises or of the use of any such part of
the premises, or of the use of any part of the entire premises
which the Tenant is entitled to use under the provisions of this
Lease, the rent shall abate equitably and proportionately during
the period of such deprivation. If the parties hereto cannot
agree upon the amount of the abatement, then such amount shall be
fixed by arbitration under the rules of the American Arbitration
Association then obtaining. In such arbitration, the arbitrator
shall take into consideration all the relevant factors.

In the event Landlord fails to promptly and
diligently repair and restore the Demised Premises in accordance
with the provisions of this Paragraph 28 of the Lease, then the
Tenant may so repair and restore the Demised Premises "Under
Protest" as herein provided.

Landlord agrees to keep in effect on Demised
Premises and on all other buildings erected on entire premises,
fire insurance with extended coverage endorsement in an amount not
less than eighty (80%) per cent of the full fair insurable value of
the buildings and improvements thereon. Landlord shall obtain
from its insurer an endorsement whereby the insurer agrees to
waive any right of subrogation against Tenant on any claim that
Landlord or any other party having an interest in such insurance
policy or proceeds may have against Tenant in connection with
fire or other risks or casualty covered by said insurance.
Landlord agrees that it shall make no claims nor authorize any
claim to be made against Tenant, its employees, servants or
agents in connection with or as a result of fire, explosion or
other casualty damaging Demised Premises.

If, however, within the last two (2) years of
the term of this Lease said building on the herein Demised Premises
is to the extent of more than fifty (50%) per cent damaged or
destroyed by fire, the elements, subsidence of sublateral or

subjacent support or other casualty, then at the option of either
the Landlord or the Tenant, which shall be exercised by notice
in writing given to the Landlord or the Tenant within thirty (30)
days after the occurrence of such damage or destruction, this
Lease shall terminate, Tenant shall vacate the premises and no
rent shall be paid by Tenant for the period subsequent to the date
of such damage or destruction. If this Lease shall terminate as
aforesaid and any rent shall have been paid in advance Landlord
agrees to refund to Tenant all rent so paid applicable to the
period subsequent to such damage or destruction.

Landlord may not exercise this option not to restore
or rebuild until it shall have given written notice to Tenant of
its intention and upon acceleration by Tenant of ~~ten (10)~~ *two consecutive*
year option if still available to Tenant under the terms hereof,
within fifteen days of such notice that the term of this lease
shall be extended for at least an additional ten (10) year period
and Landlord's option to terminate shall be cancelled and deemed
inoperative.

The Landlord and Tenant and all parties claiming
under them hereby mutually release and discharge each other from
all claims and liabilities arising from or caused by any hazard
covered by insurance on the demised premises, or covered by
insurance in connection with property on or activities conducted
on the demised premises or within the shopping center regardless
of the cause of the damage or loss. The parties shall each of
them cause their respective insurance policies, if any, to contain
a provision where the insurer waives any rights of subrogation
against the other party, if such provision is obtainable.

EMINENT
DOMAIN
29. If all of Demised Premises shall be taken or appropri-
ated under any right of eminent domain, this Lease shall terminate
and be cancelled as of the date of such taking or appropriation
and Tenant shall thereupon be released from any further liability

-20-

hereunder.

If any substantial part of Demised Premises or any substantial part of the entire premises shall be taken or appropriated under any right of eminent domain, Tenant may terminate and cancel this Lease as of the date of such taking upon giving to Landlord written notice of such election not later than thirty (30) days after receipt by Tenant from the Landlord of written notice of such taking or appropriation. If the Lease is so terminated and cancelled, Tenant shall thereupon be released from any further liability hereunder. Landlord agrees immediately after any taking or appropriation to give Tenant written notice thereof. In defining "substantial" with reference to the Demised Premises under this paragraph it shall mean such a taking that the Tenant cannot conduct its business at the Demised Premises. In defining "substantial" with reference to the entire premises, it shall mean a reduction of the parking area to the extent that the parking area will provide for less than One Hundred Fifty (150) cars.

If this lease shall be terminated and cancelled in either manner provided above, the rent for the last month of Tenant's occupancy shall be prorated and Landlord shall refund to Tenant any rent paid in advance. If at the time of such taking or appropriation Tenant shall not have fully amortized expenditures which it might have made on account of any improvements or alterations made or erected on Demised Premises, Landlord shall and hereby does assign to Tenant so much of any award payable as a result of such taking or appropriation as equals the unamortized portion of Tenant's expenditures. Tenant represents that for the purpose of this paragraph the expenditure made or to be made by it for improvements and alterations are $50,000. and are deemed to be made at time lease was executed.

The unamortized portion of Tenant's expenditures shall

21

be determined by multiplying such expenditures by a fraction, the numerator of which shall be the number of years of the term of this Lease which remain unexpired at the time of such taking or appropriation and the denominator of which shall be the number of years of the term of this Lease which shall remain unexpired at the time said expenditures are made. The term of this Lease for the purposes of this paragraph shall include any renewed or extended term resulting from the exercise of any option by the Tenant prior to such taking or appropriation. The Tenant's right to receive compensation for damages for its fixtures or its personal property shall not be affected in any manner hereby. Except as herein otherwise provided, Tenant hereby waives any right or claim which it might have for any share of any award made to Landlord by reason of such taking or appropriation, or which might reduce any award which would otherwise be made to Landlord.

If this Lease is not terminated and cancelled because of any such taking or appropriation as herein provided, Landlord shall promptly restore Demised Premises to a condition as nearly comparable as practicable to the condition existing just before such taking or appropriation and all rent and other sums payable hereunder shall abate during the period from the date on which Tenant is deprived of possession of any part of Demised Premises by reason of such taking or appropriation until all restoration work is completed, including relocation, if any, of Tenant's shelving, counters, fixtures and equipment, and Demised Premises redelivered to Tenant in accordance with the terms of this Lease; and thereafter rent shall be reduced in the ratio that the ground floor area of the part of the Demised Premises taken or appropriated bears to the ground floor area of Demised Premises before such taking or appropriation.

-22-

TENANT'S
DEFAULT
IN RENT

30. If the Tenant shall default in the payment of the
rent herein reserved, or any sum required to be paid by Tenant
which shall have become rent under the provisions of this Lease,
by reason of Tenant's default, Landlord shall give written
notice of such default to Tenant and if Tenant fails to cure such
default within ten (10) days after date of receipt of such
notice, the Landlord may bring any appropriate legal action or
proceeding to dispossess or remove the Tenant from the premises,
and the Tenant shall pay at the same time as the rent becomes
payable under the terms hereof a sum equivalent to the rent
reserved herein, and the Landlord may but need not rent the premises
on behalf of the Tenant, reserving the right to rent the premises
for a longer period of time than fixed in the original Lease
without releasing the original Tenant from any liability, applying
any monies collected, first to the reasonable expense of resuming
or obtaining possession, second to restoring the premises to a
rentable condition, provided it is the duty of the Tenant to so
restore under the terms of this Lease, and then to the payment of
the rent and all other charges due and to grow due to the Landlord,
any surplus to be paid to the Tenant, who shall remain liable
for any deficiency.

OTHER
DEFAULTS
BY TENANT

31. If Tenant shall default in the performance of any
of the terms or provisions of this Lease, other than the payment
of rent, and if Landlord shall give to the Tenant written notice
of such default and if Tenant shall fail to cure such default
within thirty (30) days after receipt of such notice, or if the
default is of such a character as to require more than thirty
(30) days to cure, then if Tenant shall fail to use reasonable
diligence in curing such default, Landlord may "Under Protest"
but is under no obligation to do so, cure such default for the
account of and at the cost and expense of Tenant and the sum so
expended by Landlord shall be paid by the Tenant within twenty

(20) days from the time at which Tenant receives from the Land-
lord a bill for such cost and expense accompanied by appropriate
vouchers.   The remedy of the Landlord herein provided is not
its sole remedy.   Landlord does not waive any other remedies it
may have.

**DEFAULTS OF**
**LANDLORD**

32.  If Landlord fails to pay any installment of taxes or
assessments or any interest, principal, costs or other charges
upon any mortgage or mortgages or other liens and encumbrances
prior in lien to this lease affecting Demised Premises or entire
premises, when any of the same become due or if Landlord fails
to make any repairs or do any work required of it by the said prior
mortgages or liens, Tenant after the continuance of any such failure
or default for twenty (20) days after written notice thereof is
given by Tenant to Landlord may "Under Protest" pay said taxes,
assessments, interest, principal, costs and other charges or
cure such other defaults on behalf of and at the expense of Land-
lord and do all necessary work and make all necessary payments in
connection therewith including, without limitation, the payment
of any counsel fees, costs and charges of or in connection with
any legal action which may have been brought.

**TENANT'S**
**BUSINESS**

33.  Tenant may use the demised premises for a drug store
operated by a chain such as Genovese ~~or Courtesy~~ provided that
such drug store shall be limited to a selling space of "food items"
of not more than eleven (11%) percent of the entire selling space
within said drug store.  As used herein, the term "food items"
shall be deemed to also include detergents, wax paper, aluminum
foil, saran wrap, sandwich bags or similar food wrapping items,
household waxes, household polishes and household cleaning
products (but not including implements, such as mops, brooms
and brushes), but such drug store shall have no right to sell
any meat, produce, dairy or milk products, frozen or fresh (other

than packaged ice cream) or pizzas, nor any food items commonly
known as "appetizer" items, such as herring, pickles, cole slaw,
smoked salmon or delicatessen.

**PROTECTIVE**
**COVENANT**

    34. In order to induce Tenant to enter into this Lease,
Landlord agrees for itself, its successors and assigns, its
officers, directors and stockholders (holding more than ten (10%)
percent of its stock), its parent, affiliated and subsidiary corpora
tions and any part affiliated with it, that none of the foregoing
shall use, suffer, permit or consent to the use or occupancy of
(a) any part of the entire premises, or (b) any other premises
owned or controlled by Landlord or any of the above described
parties adjacent to entire premises or within a radius of two (2)
miles of the entire premises, as a drug store with prescription
drugs requiring a licensed pharmacist, or a cosmetics, health
and beauty aids store, except as presently permitted to Hills
who may use its premises for any lawful purpose. *and finely cunt*
*that Hills will not open a pracapti pharmacy drug in term of this lease*

**SIGNS**

    35. Tenant shall have the right to install and maintain,
at its own expense, a store front sign subject to the written
approval of the Landlord as to dimensions, material, content,
location and design, which approval the Landlord agrees not to
unreasonably withhold. The Tenant shall comply with all of
the laws, orders, rules and regulations of the Governmental
Authorities having jurisdiction thereof, including zoning laws,
building codes and as required by insurance underwriters. The
Tenant shall obtain and pay for all permits required therefor.
Tenant expressly agrees that all signs shall be union made and
not manufactured and/or installed on the building until all
approvals and permits are first obtained and copies thereof
delivered to the Landlord with evidence of payment for any fees
pertaining thereto. Tenant agrees to pay all annual renewal
fees pertaining to Tenant's signs.

In the event Landlord or Landlord's representatives shall deem it necessary to remove any such sign or signs in order to paint or to make any other repairs, alterations or improvements in or upon said premises, or the building wherein same is situated, or any part thereof, the Landlord shall have the right to do so, provided the same be removed and replaced at the Landlord's expense, whenever the said repairs, alterations or improvements shall have been completed. In the event Landlord installs and pays for a shopping center sign or pylon which includes name or names of tenants, tenant herein shall be included in no worse than second position.

**UNION LABOR**

36. Tenant agrees for itself and its contractors and subcontractors to comply with all federal, state and local laws, ordinances, rules and regulations relating to the employment, conditions of employment and hours of labor in connection with any construction, alteration or repair work done in or about Demised Premises and also agrees where possible and to the extent permitted by law, to employ and require the employment of union labor in connection with such work. This section shall be severable from all other sections of this Lease.

**TRANSFER OF TITLE**

37. If there shall be any change in or transfer of title of Landlord in or to Demised Premises or any part thereof whether such transfer be voluntary or involuntary Tenant shall be under no obligation to pay rents thereafter accruing until notified in writing through a duly acknowledged document of such change in title.

**NOTICE**

38. All notices or demands required or permitted to be given or served pursuant to this Lease shall be deemed to have been given or served only if in writing forwarded by registered or certified mail postage prepaid and addressed as follows:

To Landlord at: 280 West Sunrise Highway, Freeport, New York.

To Tenant at: 40-15   31st Avenue, Long Island City, N.Y. 11103.

Such addresses may be changed from time to time by either party
by serving notices as above provided.

**BROKERAGE**          39.   The Landlord and Tenant agree that Leon Berger
of 29 Jerusalem Avenue, Levittown, New York was the sole
broker who brought about this lease and Landlord agrees to pay
said broker as per separate agreement.

**COMMON**
**FACILITIES**          40.   All those portions of Entire Premises shown on
Exhibit "B" which are not "Building Area" shall be Common
Facilities for the joint use of all tenants, their customers and
invitees and Landlord hereby grants to Tenant, its customers and
invitees, the non-exclusive right to use in common with all other
tenants of Entire Premises all of said parking lot or Common
Facilities for ingress and egress to and from Demised Premises
and the public streets and highways shown on Exhibit "B" and
for the parking of motor vehicles.

          The Landlord covenants and agrees that the said
parking area, lot, space or field is of the vital essence of this
Lease; that such parking area, lot, space or field shall never
be diminished or reduced except by the exercise of the power of
eminent domain by a governmental authority, and that such parking
area, lot, space or field, or any part thereof, shall never be
voluntarily dedicated to a public use; nor shall it be voluntarily
placed under any municipal or other governmental authority, or any
other authority, during the term of this Lease, and of any
renewals thereof.

          The Landlord shall, during the term of this
Lease and any renewals thereof at its own cost and expense,
maintain the parking area, lot, space or field in good repairs,
including, but not by way of limitation, fences, surface draining
system, parking field lights, lighting fixtures and bulbs, shall
keep the car stalls properly painted, shall pay for the
electricity consumed to light the parking field, shall keep it

-27-

adequately lighted at all times when Demised Premises are open
for business and for one-half hour after closing thereof, shall
keep the parking area free from dirt, rubbish or refuse, and shall
remove all ice and snow on all the premises and parking area.

Landlord and Tenant mutually undertake and agree
that throughout the term of this Lease:

(i) No charge of any type shall be charged to or
collected from any visitors, customers, invitees, employees,
agents or subtenants of the Tenant in the aforesaid development
for the right to use said parking facilities in the aforesaid
parking area.

(ii) No fence, structure, building, improvement,
division rail or obstruction of any type or kind shall be placed,
kept or permitted or maintained upon the parking area under this
Lease, it being the intent of this provision that there shall be
freedom of access at all times to all portions of the parking area
from any part thereof.

(iii)  For the services enumerated above in this
paragraph to be performed by the Landlord, Tenant will pay as
additional rent after the end of each calendar year its proportionate share (i.e. in the ratio of the gross square foot area in
the demised premises to the aggregate of the square foot area in
building in the Shopping Center) for the annual cost of upkeep
and general maintenance of the parking areas and other common
areas in the Shopping Center.  At the end of each calendar year
landlord shall render a bill to tenant for such charge setting
forth in reasonable detail the items and amounts thereof included
in such annual costs and setting forth the method of calculating
tenant's share.

COVENANT
AGAINST
LIENS
41.  If, as a result of the Tenant performing its obligations
hereunder or in the making by Tenant of any repairs, replacements,
alterations, installations and/or changes on the Demised Premises,

any mechanic's or other lien or order for the payment of money

shall be filed against the Demised Premises or any building or

improvement thereon by reason of, or arising out of any labor or

material furnished or alleged to have been furnished or to be

furnished to, or for, the Tenant at the Demised Premises or for

or by reason of any changes, alterations or additions by Tenant,

or the cost of expense thereof, or any contract relating thereto,

or against the Landlord as fee owner thereof by reason of such

work or contract of Tenant, the Tenant shall cause the same to be

cancelled and discharged of record, by bond or otherwise, at the

election and expense of the Tenant within fifteen (15) days

after the filing of said lien or order, and shall also defend,

on behalf of Landlord, at Tenant's sole cost and expense any

action, suit or proceeding which may be brought thereon or for

the enforcement of such lien, liens, or orders, and the Tenant

will pay any damages and discharge any judgment entered therein

and save harmless the Landlord from any claim or damage result-

ing therefrom.

GASOLINE
SERVICE
STATION
RESTRICTION

     42.  Landlord and Landlord's successors in interest

will not, during the term hereof, let, use or permit to be used,

any part or portion of the shopping center as shown on the plot

plan or drawing for a gasoline service station.

COMPETITION
BY TENANT

     43.  Tenant agrees that it will not, directly or

indirectly, during the term of this lease or any extended or

renewal term conduct a business which is in substantial competition

with the business then being conducted at the Demised Premises

within two (2) miles from the boundaries of the Shopping Center.

The foregoing shall not include any breach or violation resulting

from any merger or consolidation, or acquisition of assets involv-

ing two (2) or more premises.

ACCESS TO
DEMISED
PREMISES

     44.  Landlord and its agents shall have the right, at

reasonable times, after reasonable notice to Tenant, to (i) examine

the Demised Premises; (ii) show the Demised Premises to prospective purchasers; (iii) enter the Demised Premises for the purpose of making such repairs, improvements, or alterations as may be required for the safety or preservation thereof, or in order to comply with the requirements of any public authority, or as may be required of Landlord under the terms of this lease, and Landlord shall do all such work as expeditiously as reasonably possible; and (iv) exhibit the Demised Premises to prospective tenants during the last six (6) months of the initial or any renewal term, as the case may be, provided that, in performing any of such activities, Landlord shall not thereby interfere with the conduct of Tenant's business unless such entry is necessary and in such event the entry shall interfere with Tenant as little as possible.  Landlord shall save Tenant harmless and indemnify it from and against all loss or damage to merchandise, fixtures, and equipment occasioned by the performance of any such activities.

**TRIAL BY JURY COUNTER CLAIMS**

45.   The parties hereto shall and they hereby do waive trial by jury in any action, proceeding, or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease. In the event Landlord commences any proceedings for nonpayment of rent, additional rent and/or damages for breach of this lease, Tenant will not interpose any counterclaim of whatever nature or description in any such proceedings.  This shall not, however, be construed as a waiver of Tenant's right to assert such claims in any separate action or actions brought by Tenant.

**PERFORMANCE UNDER PROTEST**

46.   If at any time a dispute shall arise as to any amount or sum of money to be paid by one party to the other under the provisions hereof, the party against whom the obligation to pay the money is asserted shall have the right to make payment "Under Protest" and such payment shall not be regarded as a voluntary

payment and there shall survive the right on the part of said
party to institute suit for the recovery of such sum, and if it
shall be adjudged that there was no legal obligation on the part
of said party to pay such sum or any part thereof, said party
shall be entitled to recover such sum or so much thereof as it
was not legally required to pay under the provisions of this lease;
and if at any time a dispute shall arise between the parties
hereto as to any work to be performed by either of them under the
provisions hereof, the party against whom the obligation to perform
the work is asserted may perform such work and pay the cost thereof
"Under Protest" and the performance of such work shall in no
event be regarded as a voluntary performance and there shall
survive the right on the part of said party to institute suit
for the recovery of the cost of such work, and if it shall be
adjudged that there was no legal obligation on the part of said
party to perform the same or any part thereof, said party shall
be entitled to recover the cost of such work or the cost of so
much thereof as said party was not legally required to perform under
the provisions of this lease.

**WAIVER**          47.  The failure of either party to insist in any one or
more instances upon a strict performance of any of the covenants
of this lease, or to exercise any option herein contained, shall
not be construed as a waiver or relinquishment for the future
of the performance of such covenant or the right to exercise such
option, but the same shall continue and remain in full force and
effect.

**PARTIAL
INVALIDITY**          48.  If any term, covenant, condition or provision of
this lease or the application thereof to any person or circum-
stance shall to any extent be invalid or unenforceable, the remaind
of this lease, or the application of such term or provision to
persons or circumstances other than those as to which it is held
invalid or unenforceable, shall not be affected thereby,

and each term, covenant, condition and provision of this lease shall be valid and shall be enforced to the fullest extent permitted by law.

**ENTIRE AGREEMENT**

49.  This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this instrument shall have any force or effect.  This lease shall not be modified in any way or terminated except by writing executed by both parties.

**RIGHT OF REDEMPTION**

50.  Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Landlord obtaining possession of the leased premises by reason of the violation by Tenant of any of the covenants or conditions of this lease or otherwise.

**ARBITRATION**

51.  Notwithstanding anything herein contained with reference to suits in law or equity, any controversy or claim arising out of, or relating to this instrument, or the breach thereof, except for the payment of rent as provided for herein, shall be settled by arbitration, in accordance with the Rules, then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any Court having jurisdiction thereof.

**MISCELLANEOUS PROVISIONS**

52.  (a)  No remedy herein conferred upon or reserved to Landlord or Tenant is intended to be exclusive of any other remedy herein or by law provided, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

(b)  The marginal notes herein contained are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of intent of this Lease nor in any way affects the terms and provisions thereof.

(c) Each and all of the covenants, terms, agreements and obligations of this Lease shall extend to and bind and inure to the benefit of the successors and/or assigns of said said parties hereto; that herein the singular number includes the plural, and the masculine gender includes the feminine and the neuter.

(d) Acceptance of rent or additional rent by the Landlord or payment of the same by the Tenant after notice of a breach by either party, shall not be deemed a waiver of such breach.

(e) Landlord agrees not to lease any portion of shopping center for any drive-in type operation whose principal business is the receipt and processing of photographic film for development, including but not limited to drive-ins and known as "Foto-Mat".

IN WITNESS WHEREOF, Landlord and Tenant have respectively signed and sealed this Lease as of the day and year first above written.

MARWIN MALLS COMPANY

By:_____(L.S.
                    General Partner

GENOVESE DRUG STORES, INC.

BY _____(L.S.

                                (Corporate Sea

STATE OF NEW YORK

COUNTY OF ~~NEW YORK~~        ss.:

On the *N d* day of *April* ., 1971, before me

personally appeared *IRWIN STEINHAUSER* , to me known

and known to me to be the individual described in and who

executed the foregoing Lease, as LANDLORD, and he duly acknowledged

to me that he executed the same.

_____
Notary Public

ANTOINETTE SCAVONE
NOTARY PUBLIC, STATE OF NEW YORK
Nr 41-8782700
Qualified in Queens County
Commission Expires March 30, 1972


STATE OF NEW YORK

COUNTY OF  ~~NEW YORK~~        ss.:

On the *N d* day of *April* , 1971, before me

personally came *STEPHEN J. SCOPAS* to me known, who being

by me duly sworn, did depose and say that he resides at *26 l Hodge*

*Road, Douglaston, N.Y.* that he is the *Vice Pres. + Gen Counsel* of

GENOVESE DRUG STORES, INC., the corporation described in and which

executed the foregoing instrument as TENANT; that he knows the

seal of said corporation; that the seal affixed to said instrument

is such corporate seal; that it was so affixed by order of the

Board of Directors of said corporation; and that he signed his

name thereto by like order.

_____
Notary Public

ANTOINETTE SCAVONE
NOTARY PUBLIC, OF NEW YORK
41-8782700
Qualified in Queens County
Commission Expires March 30, 1972

EXHIBIT "A"

Attached to and made a part of Indenture of
Lease dated _____ *June 15* _____, 1971 between
Marwin Malls Company and Genovese Drug
Stores Inc.

ALL THAT CERTAIN lot, piece or parcel of land with the
buildings and improvements thereon erected, situate, lying and
being at Massapequa, Town of Oyster Bay, County of Nassau and
State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the
northerly side of Merrick Road with the easterly side of Joludow
Drive and from said point of beginning; running thence along
the easterly side of Joludow Drive north 17 degrees 41 minutes
24 seconds east, 325 feet; thence south 84 degrees 15 minutes
00 seconds east, 390 feet; thence south 44 degrees 45 minutes
35 seconds east, 85.25 feet; thence south 03 degrees 08 minutes
25 seconds west, 284.26 feet to the northerly side of Merrick
Road; thence along the northerly side of Merrick Road north
86 degrees 51 minutes 35 seconds west, 320.89 feet; thence still
along the northerly side of Merrick Road north 75 degrees 04
minutes 00 seconds west, 218.21 feet to the corner at the point
or place of beginning.

Excluded from the foregoing description is a strip of
land approximately five feet wide running along Merrick Road
which has been condemned by Nassau County for the widening of
Merrick Road.

EXHIBIT "A"

Policy No. NYN-340821

## SCHEDULE B

(CONTINUED)

15. Electric Agreement recorded in Liber 4972 of conveyances, page 57.
(Affects rear 2.5 feet)

16. Water Agreement recorded in Liber 4970 of conveyances, page 477.
(Affects streets)

17. Telephone Agreement recorded in Liber 5006 of conveyances, page 81
(Affects rear 2.5 feet)

18. 1970 Town Tax - 2nd half.

19. Mortgage for $300,000.00, made by Irving Joludow, Jacob J. Block,
Herbert Block and Philip J. Block, to Franklin National Bank of
Franklin Square, dated November 3, 1954, and recorded November 5,
1954, in Liber 5367 of mortgages, page 151, which mortgage was assi
to The Ministers and Missionaries Benefit Board of the Baptist
Convention, by assignment recorded in Liber 5855 of mortgages, page
582; and

Mortgage for $17,000.00, made by Flushing-Whitestone Corp., to The
Ministers and Missionaries Benefit Board of the American Baptist
Convention, dated May 21, 1956, and recorded May 23, 1956, in Liber
5856 of mortgages, page 54, which two mortgages were consolidated b
the terms of this mortgage so as to form a single mortgage lien, an
as consolidated, the mortgage was assigned to County Federal Saving
and Loan Association, by assignment recorded in Liber 7718 of mortg
page 195; and

Mortgage for $31,283.45, made by Jacob J. Block, Irving Joludow,
Herbert Block and Bertha Joludow, to County Federal Savings and Loa
Association, dated May 27, 1965, and recorded June 4, 1965, in Libe
7718 of mortgages, page 152, which mortgage, by its terms, was con-
solidated with the aforesaid mortgages so as to form a single mortg
lien, and as consolidated, the mortgage has been reduced to $167,305
but evidence of such reduction is not of record.

20. Mortgage for $50,000.00, made by the insured, to Evelyn Block and
Herbert Block, both as Co-Executors for the Estate of Jacob J. Bloc
deceased, and Evelyn Block, individually, Bertha Joludow and Michel
Sachs in trust for Mark Alan Sachs, each the owner of an undivided
25% interest, dated September 4, 1970, and recorded in the Office o
the Clerk of the County of Nassau, the said Bertha Joludow thereaft
assigned her interest in said mortgage to I. Robert Bassin, as Trus
in Bankruptcy of Irving Joludow.

Item No. 16 in Schedule B is hereby amended as follows:
"Water easement agreement recorded in Liber 4970 of conveyances, page 477,
runs through the premises."

SECURITY TITLE AND GUARANTY COMPA

By _____
Authorized Signature

## SCHEDULE B

The following estates, interests, defects, objections to title, liens and incumbrances and other matters are excepted from the coverage of this policy:

1. Defects and incumbrances arising or becoming a lien after the date of this policy, except as herein provided.

2. Consequences of the exercise and enforcement or attempted enforcement of any governmental war or police powers over the premises.

3. Zoning restrictions or ordinances imposed by any governmental body.

4. Judgments against the insured or estates, interests, defects, objections, liens or incumbrances created, suffered, assumed or agreed to, by or with the privity of the insured.

5. Title to any property beyond the lines of the premises, or title to areas within or rights or easements in any abutting streets, roads,

avenues, lanes, ways or waterways, or the right to maintain therein vaults, tunnels, ramps or any other structure or improvement, unless this policy specifically provides that such titles, rights, or easements are insured. Notwithstanding any provisions in this paragraph to the contrary, this policy, unless otherwise excepted, insures the ordinary rights of access and egress belonging to abutting owners.

6. Compliance by the buildings or other erections upon the premises or their use with Federal, State and Municipal laws, regulations and ordinances.

7. Title to any personal property, whether the same be attached to or used in connection with said premises or otherwise.

8. Survey dated July 15, 1970, made by County Surveying Service, shows a 1-story cinder block brick and stone building.
   Concrete malls encroach 9 feet 10 inches on Joludow Drive.
   Fences are not on lines of record title.
   No other variations or encroachments.

9. Rights of tenants and persons in possession.

10. Covenants and Restrictions recorded in Liber 5243 of conveyances, page 41

11. Easements recorded in Liber 5050 of conveyances, page 329, Liber 6021 of conveyances, page 50 and in Liber 7492 of conveyances, page 473.

12. Water Agreement recorded in Liber 5671 of conveyances, page 79.
    (Affects streets)

13. Telephone Agreement recorded in Liber 5721 of conveyances, page 545.
    (Affects rear 5 feet)

14. Electric Agreement recorded in Liber 5691 of conveyances, page 292 and in Liber 5771 of conveyances, page 403. (Affects rear 5 feet)

1/1/63

Exhibit "C"

AGREEMENT made this *3/* day of *March*, 1975

between IRWIN STEINHAUSER, MARVIN STEINHAUSER, JAMES SANDLER,

MICHAEL STEINHAUSER and ELSIE STEINHAUSER, d/b/a MARWIN MALLS

COMPANY, with its principal place of business at 280 West Sunrise

Highway, Freeport, New York, and GENOVESE DRUG STORES, INC., a

New York corporation, with its principal place of business at

40-15 31st Avenue, Long Island City, New York.

W I T N E S S E T H :

WHEREAS, under date of April 15, 1971, the parties have

entered into a lease agreement covering premises 5117 through 5129

Merrick Road, Massapequa, New York, and

WHEREAS, the parties are desirous of modifying said lease

agreement,

NOW, THEREFORE, BE IT MUTUALLY AGREED AS FOLLOWS:

FIRST:  It is agreed that there is deleted from paragraph

"19" of said lease agreement the following words:

> "It is expressly understood and agreed between
>
> Landlord and Tenant, any other provision in this Lease
>
> to the contrary notwithstanding, that if at any time
>
> a supermarket is not operated in the space designated
>
> supermarket in said plot plan or drawing for a period
>
> of six (6) months during the term of this Lease, except
>
> for fire, casualty or condemnation, Tenant shall have
>
> the right at any time after the expiration of said
>
> period to cancel and terminate this Lease by giving

thirty (30) days written notice to the Landlord of

its intention so to do, and upon the expiration of

thirty (30) days after the giving of such notice,

this Lease and all rights arising hereunder shall

terminate as of such date as if such date had

originally been named herein as the termination

date hereof."

SECOND:  All of the terms and conditions of the aforementione

lease agreement are hereby ratified and confirmed.

IN WITNESS WHEREOF, the parties hereto have put their

hands and seals the date and year first above written.

MARWIN MALLS COMPANY

By_____(L.
        General Partner

GENOVESE DRUG STORES, INC.

By_____(L.

STATE OF NEW YORK )
) ss.:
COUNTY OF _Queens_)

On the _31st_ day of _MARCH_ , 1975, before me

personally appeared _IRWIN STEINHAUSER_, to me known

and known to me to be the individual described in and who executed

the foregoing Agreement, and he duly acknowledged to me that he

executed the same.

_Judith Schnur_
Notary Public

JUDITH SCHNUR
Notary Public, State of New York
No. 41-9101310
Qualified in Queens County
Commission Expires March 30, 1976

STATE OF NEW YORK )
) ss.:
COUNTY OF _Queens_ )

On the _31st_ day of _MARCH_ , 1975, before me

personally came _Stephen S. Scopas_ to me known, who being

by me duly sworn, did depose and say that he resides at _361 Ridge_

_Road, Douglaston NY_, that he is the _Vice Pres._ of

GENOVESE DRUG STORES, INC., the corporation described in and which

executed the foregoing Agreement; that he knows the seal of said

corporation; that the seal affixed to said Agreement is such

corporate seal; that it was so affixed by order of the board of

directors of said corporation; and that he signed his name thereto

by like order.

_Judith Schnur_
Notary Public

JUDITH SCHNUR
Notary Public, State of New York
No. 41-9101310
Qualified in Queens County
Commission Expires March 30, 1976

## MODIFICATION OF LEASE AGREEMENT

---

LANDLORD:        MASSAPEQUA PLAZA ASSOCIATES

TENANT:        GENOVESE DRUG STORES, INC.

DATE OF MODIFICATION OF LEASE:        March 31, 1987

PREMISES:        MERRICK ROAD, MASSAPEQUA, NEW YORK

MODIFICATION OF LEASE AGREEMENT, made and entered into as of the 31st day of March, 1987, by and between MASSAPEQUA PLAZA ASSOCIATES, a New York Partnership, having its principal offices at c/o James B. Ross, General Partner, 489 Fifth Avenue, New York City, New York 10017 (hereinafter called "Landlord"), and GENOVESE DRUG STORES, INC., a Delaware Corporation with offices at 80 Marcus Drive, Melville, New York 11747 (hereinafter called "Tenant").

WHEREAS, Marwin Malls Company, as the predecessor of Landlord did under the lease dated April 15, 1971, as amended on March 31, 1975 and April 5, 1975 (hereinafter collectively called the "Lease") demises unto Tenant, certain store premises known and referred to as Numbers 5117 through 5129 Merrick Road, Massapequa, in the County of Nassau, State of New York (hereinafter called the "Existing Premises"); and

WHEREAS, Landlord is the successor in interest to Marwin Malls Company as the Landlord under the Lease and is the present fee owner of the Existing Premises and the entire premises described in Exhibit "A" to the Lease; and

WHEREAS, the parties desire to further modify the Lease so as to create and add to the Existing Premises certain additional space and to amend the term and the rentals thereunder and to otherwise amend and supplement the Lease all as hereinafter more particularly set forth.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1. The Lease is hereby further modified as follows:

(a)  Adjoining and contiguous to the Existing Premises is certain store space heretofore occupied for dry cleaning purposes and which is more particularly shown as "Dry Cleaner" on the site plan annexed hereto and made a part hereof as Exhibit "A" hereto, and which Dry Cleaner space together with the aggregate of all other space to be added to the Existing Premises pursuant to this Modification Agreement is hereinafter collectively called the "Additional Space".  It is the intention and agreement of the parties hereto that Landlord shall obtain possession of the Dry Cleaner space and construct an addition thereto at the front thereof by enlarging the length thereof by twenty (20) feet which Dry Cleaner space as so enlarged together with any and all basement space thereunder is hereinafter collectively called the "Adjoining Space";  in addition it is the intention and agreement of the parties hereto that Landlord shall erect a similar extension at the front of the Existing Premises (which extension is hereinafter called the "Existing Premises Expansion Space") and which total Additional Space to be added to the Existing Premises shall consist of approximately 4037 square feet of ground floor space together with all basement space thereunder.  All of the said Existing Premises and the total Additional Space shall be integrated into one single new store premises of approximately 11,337 square feet of ground floor gross floor area together with any and all basement space thereunder.  Upon the completion by Landlord of its work to the aforesaid space in accordance with this Modification Agreement, the possession thereof shall be delivered to the Tenant as hereinafter provided.  The Existing Premises, the Adjoining Space and the Existing Premises Expansion Space shall collectively constitute the Demised Premises and from and after "Delivery of Possession" (as hereinafter defined) whenever the

- 1 -

terms, "Premises" or "Demised Premises" or "premises" or
"demised premises" are used in the Lease, the same shall be
deemed to mean and include all of such integrated new store
space and as more particularly shown as the "New Genovese Space"
on Exhibit "A" hereto.

       (b)    The work to be completed by Landlord as
described in paragraph (a) above shall be completed by Landlord,
at its own cost and expense, in accordance with all requirements
of law and in accordance with the work letter annexed hereto and
made a part hereof as Exhibit "B" to this Modification
Agreement  so as to add an additional 4,037 square feet of
ground floor gross floor area to the Existing Premises together
with all basement space thereunder and in accordance with the
approved plans and specifications therefor.  Landlord shall
promptly after execution and delivery of this Modification
Agreement, prepare, at its own cost and expense, plans and
specifications in accordance with the annexed Exhibit "B" which
plans and specifications shall be submitted to Tenant for
approval promptly upon completion thereof by Landlord's
architect, which approval shall not be unreasonably withheld or
delayed provided same is in accordance with the Work Letter
attached to this Agreement as Exhibit "B" hereto and is in
conformity with all requirements of law.  If Tenant shall
request any changes, additions, or deletions then unless
Landlord shall dispute the same it shall promptly resubmit the
same to its architect at Landlord's cost and expense for
correction.  Should there be any dispute with respect to any
portion of the plans and specifications between Landlord and
Tenant the same shall be determined by arbitration by and in
accordance with the provisions of the Real Estate Board of New
York, Inc. who shall select such arbitrator and whose decision
shall be final and binding and conclusive upon the parties
hereto.  Promptly upon approval by Tenant of the plans and
specifications, as same may be so changed as aforesaid, the
Landlord shall submit same to the appropriate governmental
authorities for approval thereof and upon such approval shall
promptly commence the work in accordance therewith.  If any
requisite governmental authorities shall require any change,
addition or deletion therefrom then the same shall be submitted
to Tenant for its approval under the same conditions as
aforesaid.  If after all changes, deletions and additions have
been made or disputed and arbitrated as aforesaid if all
necessary and requisite governmental approvals to said plans and
specifications and necessary building permits have not been
obtained by February 1, 1988 then Tenant shall have a period of
six (6) months to obtain the same and if not so obtained within
such time then either party shall have the right to terminate
this Modification Agreement on five (5) days notice to the other
party in which event the Lease shall be extant as existed prior
to this Modification of Lease Agreement and as if this Agreement
had not been entered into and this Agreement shall be deemed a
nullity and of no force or effect.  Upon the obtaining of all
such governmental approvals prior to any termination of this
Agreement as aforesaid the Landlord shall commence and prosecute
all of its work to said space to completion with due diligence,
subject to delays by reason of causes beyond Tenant's reasonble
control (financial inability excluded).  Landlord agrees not to
commence any portion of work to the Premises between any
September 15th and the ensuing January 1st of the immediately
following calendar year.  Upon completion of all of Landlord's
work the Landlord shall make Delivery of Possession Tenant as
hereinafter set forth.  "Delivery of Possession" shall be deemed
to occur upon fulfillment of the following:

- 2 -



(i) All of Landlord's construction work to the Existing Premises, the Existing Premises Expansion Space and to the Adjoining Space as enlarged shall have been substantially completed as provided for in this Modification Agreement. For the purposes of this Agreement the words "substantially completed" shall be deemed to mean that the work shall be completed to such an extent, and the Premises shall be so secured, that Tenant shall be able without interference or impediment to enter the Premises to commence installation of its fixtures, equipment and merchandise and to open and operate its entire new Premises for business to the public upon such installations by Tenant as an integrated and single unimpeded space.

(ii) Actual and exclusive physical possession of the entire Premises as enlarged by virtue of the additions made pursuant to this Modification Agreement will be delivered to Tenant in a "broom clean" condition with all work completed and free of all liens and encumbrances (excepting any mortgages to which the Lease is subordinate provided, and on the condition, that Tenant be given Nondisturbance Agreements, in recordable form, executed by the holder(s) of all such mortgages) and free of all tenancies, occupancies and rights of possession thereto by any other tenant or occupant (other than the Tenant) and all mechanical equipment, (including heating, ventilating and air conditioning fixtures, equipment and ducts) in the Additional Space shall be new and in working order and condition. As to mechanical equipment in the Existing Premises the Landlord's obligation shall be limited to repairing any damage thereto which is damaged during the course of work by Landlord or its agents, servants, contractors or designees thereto or if the same is not capable of being repaired, then replaced with equipment of like kind and quality.

(iii) Landlord shall furnish Tenant with all requisite occupancy permits and approvals, including, without limitation, certificates of occupancy, underwriters certificates, and all other licenses and permits required with respect to construction and use, excepting and excluding such use permits as are particular to the nature of Tenant's use and as are generally obtained by Tenant, such as Board of Health permits, licenses to sell drugs and medicines and like permits and licenses and except for any underwriting certificates and any other certificates and approvals required by reason of any work done by Tenant. All other requisite approvals for construction and use from all necessary governmental authorities including all building permits, site plan approvals, zoning variances, special permits, environmental approvals, certificates of occupancy and other consents, permits, licenses and approvals shall be obtained by Landlord, at its own cost and expense, and copies thereof shall be delivered to Tenant upon Delivery of Possession. In the event that any additional changes are required to the Existing Premises then the same shall be performed by Tenant, at its own cost and expense, unless the same are due to the new construction to be performed to Landlord pursuant to this Agreement or are pursuant to any of Landlord's construction work to any part of the Existing Premises or the Additional Space or as a result of the integration of the two spaces into one single store in which event all of the same shall be performed by Landlord as a part of its work at its own cost and expense. If Delivery of Possession is not made as a result of the failure of Tenant to obtain any particular certificate or approval required of Tenant hereunder for work to be done by Tenant then such Delivery of Possession shall be deemed made when Landlord shall complete all

- 3 -

other obligations as are required (save and except for Tenant's
work) in order to otherwise obtain such Certificate of Occupancy
and Landlord shall in such event be deemed to have Delivered
Possession and in such event Landlord agrees that upon Tenant
obtaining such certificates or approvals required of Tenant that
it shall thereafter promptly obtain said certificate of
occupancy.  If for any reason whatsoever (except for the failure
to obtain same by reason of work done by Tenant and certificates
and approvals to be obtained by Tenant as aforesaid) and except
for the  nonapproval by all requisite governmental authorities
of all necessary plans and specifications and issuance of all
requisite permits therefor) Delivery of Possession is not made
by July 31, 1988 then Tenant shall have the right, as its sole
recourse and remedy, on five (5) days notice to Landlord to
enter the Premises and to complete the work to be otherwise
completed by Landlord under the provisions of this Modification
Agreement at the Landlord's cost and expense, and in such event
all costs and expenses incurred by Tenant in connection
therewith shall be repaid to Tenant promptly upon demand and
upon the submission of itemized invoices therefor to the
Landlord, and if not repaid to Tenant within thirty (30) days
after such submission then the same shall, in addition to any
other right or remedy of Tenant to collect the same, be
deductible by Tenant with interest at a rate equal to the annual
"prime rate" (meaning the prime rate as established by Citibank,
N.A. for short term 90 day loans made to its most preferred
customers) plus two (2) percent, from all ensuing installments
of fixed or additional rental payable to Landlord by Tenant
under any provision of this Lease.  Nothing contained in this
paragraph shall limit the right of Tenant to terminate this
Modification Agreement and to declare the same a nullity in the
event that all plans and specifications and fully permits have
not been approved and issued by all requisite governmental
authorities by February 1, 1988.

Notwithstanding anything contained in this
Modification Agreement to the contrary, in no event shall
Delivery of Possession be made between any October 15th and the
next ensuing February 1st of the immediately following calendar
year and if such Delivery of Possession be made within such
dates then it shall not be deemed to occur until said February
1st date of the immediately following calendar year.

(c)  If during any of Landlord's work (whether by
Landlord or Tenant) the Tenant is required to close all or a
part of the Existing Demised Premises for business to the public
then until the completion of such work and the obtaining of all
requisite construction and use permits, all fixed rental,
additional rental and other charges payable under the Lease
shall be abated proportionally according to the portion of the
Existing Premises which is unuseable as same bears to the entire
Existing Premises which proportion shall apply proportionately
to such abatement of rental and other charges as aforesaid.
Tenant agrees from and after the completion of the demising
walls and the temporary entrances and exits and enclosure of the
Demised Premises that it shall be responsible for providing
security therefor at Tenant's own cost and expense.

(d)  Except for Tenant's fixturing plans all
necessary plans and specifications shall be prepared by
Landlord, at its own cost and expense, and submitted to Tenant
for its approval.

(e)  Commencing upon the sooner to occur of: i)
the 31st day after Landlord shall make Delivery of Possession of
all Additional Space in accordance with the terms of this

- 4 -

Modification Agreement; or ii) the date that Tenant shall open the Additional Space for business to the public, the term of the Lease shall be changed to provide for a new initial term (the "Initial Term") of fifteen (15) "Lease Years" (as hereinafter defined together with four (4) successive options which are hereby granted to Tenant to extend the term of the Lease for four (4) successive additional periods of five (5) Lease Years each, (each of which is hereinafter called an "Extension Period") provided notice in writing, by registered or certified mail, to exercise any option for any such Extension Period shall be given by Tenant to Landlord at least twelve (12) months prior to the expiration of the Initial Term hereof or prior to any then existing Extension Period, as the case may be and provided that Tenant is not then in default in the performance of any obligation set forth in the Lease beyond any period permitted for it to cure the same following written notice from Landlord to Tenant thereof.  A "Lease Year" shall be defined as each successive period of twelve (12) full calendar months commencing on the sooner to occur of (i) or (ii) above of this paragraph except that if the same shall occur on a date which is other than the first day of a calendar month then the first "Lease Year" of the new Initial Term shall consist of the partial calendar month in which such new Initial Term shall commence together with the full twelve (12) calendar months thereafter immediately ensuing and rental for the partial calendar month in which such new Initial Term shall commence shall be apportioned on a daily basis and payable with the first full calendar month's installment which is thereafter ensuing.  Each successive twelve (12) month period shall be deemed a Lease Year unless this Lease be terminated or expire prior thereto, in which event the final Lease Year shall be shortened to reflect such appropriate period of time.  At the request of either party, the parties shall, as soon as the date of the commencement of the new Initial Term is ascertained, execute an agreement between the parties, in recordable form, setting forth the commencement and expiration dates thereof and of the four (4) optional extension periods.  Upon the commencement of such new Initial Term of the Lease, the annual rental payable pursuant to Article 4 of the Lease shall be revised so as to be payable as follows:

For each of the first (1st) through fifth (5th) Lease Years inclusive, of said Initial Term at an annual rate of $113,848; and

For each of the sixth (6th) through tenth (10th) Lease Years, inclusive, of said Initial Term hereof, at an annual rate of $130,275; and

For each of the eleventh (11th) through fifteenth (15th) Lease Years, inclusive, of said Initial Term hereof, at an annual rate of $148,071.

If Tenant shall exercise its right to the first Extension Period, then the annual rental rate to be paid for each of the first (1st) through fifth (5th) Lease Years of such first Extension Period, shall be at an annual rate of $167,441; and

If Tenant shall exercise its right to the second Extension Period, then the annual rental rate to be paid for each of the first (1st) through fifth (5th) years of such second Extension Period shall be at an annual rate of $188,623.

If Tenant shall hereafter exercise its option(s) for either or both of the third and fourth Extension Periods, then the annual rental rate for each Lease Year thereof shall be

- 5 -

determined on the Commencement of each such Extension Period and
shall be a rate equal to the greater of: x) the annual fixed
rental rate payable for a full Lease Year of the second
Extension Period (for the determination thereof for the third
Extension Period) and that payable for a full Lease Year during
the third Extension Period (for the determination thereof for
the fourth Extension Period); or y) the "fair market rental
value" of the Demised Premises as hereinafter provided.

The terms "fair market rental value" shall be
defined as and shall mean the "fair market rental value" of the
ground floor of the Demised Premises to be determined as
provided below, and to be calculated as of the commencement date
of each of the third and fourth Extension Periods (if the
options therefore are exercised) on the basis of the Demised
Premises in an "as is" condition as delivered by Landlord on the
commencement of the Initial Term and excluding all alterations,
additions and improvements made by Tenant and as if Tenant's
trade fixtures and personal property were removed therefrom and
on the basis of Tenant's obligations under this Lease, including
any obligation of Tenant for "Taxes" pursuant to Article "9"
hereof.

A)   Tenant may, not earlier than twelve (12) months
nor later than nine (9) months prior to the expiration of the
existing Extension Period, send Landlord written notice of
Tenant's willingness to exercise its option for the third or
fourth Extension Period, as the case may be, such notice to
include Tenant's proposed fixed annual rental therefor.  Within
fifteen (15) days after receipt of Tenant's notice, Landlord
shall, in writing to Tenant, either 1) agree to Tenant's
proposed fixed annual rental, in which case Tenant shall be
deemed to have exercised its option for the Extension Period at
said proposed fixed annual rental, or 2) deliver a
counterproposal for the fixed annual rental, in which case
Tenant shall not be deemed to have exercised its option for the
Extension Period except as hereafter provided.  All proposals of
fixed annual rental shall be good faith estimates of the fair
market rental value of the Demised Premises.

B)   If neither Landlord nor Tenant has accepted the
other's proposal pursuant to subparagraph A) above, then the
fixed annual rental for such particular Extension Period shall
be determined jointly by them by not later than the time (herein
called the "Determination Date") which is six (6) months prior
to the expiration date of the then existing Extension Period.
If Landlord and Tenant agree on the fixed annual rental, such
agreement shall be confirmed in writing (herein called "Rental
Agreement") to be executed and delivered not later than the
Determination Date.  If Landlord and Tenant fail to execute and
deliver a Rental Agreement on or before the Determination Date,
then the matter shall be referred to arbitration in accordance
with the following:

(i)        Landlord and Tenant shall each appoint an arbitrator
           by written notice given to the other party hereto not
           later than thirty (30) days after the Determination
           Date.  If either Landlord or Tenant shall have failed
           to appoint an arbitrator within such period of time
           and, thereafter, shall have failed to do so by written
           notice given within a period of five (5) days after
           notice by the other party requesting the appointment
           of such arbitrator, then such arbitrator shall be
           appointed by the American Arbitration Association or
           its successor (the branch office of which is located

- 6 -

in or closest to the County of Nassau, State of New York) upon request of either Landlord or Tenant, as the case may be;

(ii)     The two (2) arbitrators appointed as above provided shall attempt to reach an agreement as to the fixed annual rental.  The fixed annual rental to be determined shall not be less than that proposed by Tenant and sent to Landlord under subparagraph A) above and shall not be more than that counterproposed by Landlord and sent to Tenant under subparagraph A) bove.  In the event that they are unable to agree within thirty (30) days after their joint appointment, they shall appoint a third arbitrator by written notice given to both Landlord and Tenant, and, if they fail to do so by written notice given within forty (40) days after their appointment, such third arbitrator shall be appointed as above provided for the appointment of an arbitrator in the event either party fails to do so;

(iii)    All of such arbitrators shall be real estate appraisers having not less than ten (10) years experience in appraising the value of leasehold interests in real estate similar to the Demised Premises located within the County of Nassau, State of New York and whose appraisals are acceptable to savings banks or life insurance companies doing business in the State of New York; and

(iv)     The arbitrators, selected as aforesaid, forthwith shall convene and render their decision in accordance with the then applicable rules of the American Arbitration Association or its successor, but which decision shall be strictly limited to a determination of the Extension Period rent, within thirty (30) days after their appointment.  In no event shall the fixed annual rental as determined by any third arbitrator be higher than that determined by the arbitrator selected by Landlord or proposed by Landlord under subparagraph A) above nor lower than that determined by the arbitrator selected by Tenant or proposed by Tenant under subparagraph (a) above.  The decision of all such arbitrators shall be in writing, and duplicate original counterparts of such decision shall be sent forthwith by the arbitrators by Certified Mail, Return Receipt Requested, to both Landlord and Tenant.  The arbitrators, in arriving at their decision, shall be entitled to consider all testimony and documentary evidence that may be presented at any hearing, as well as facts and data that the arbitrators may discover by investigation and inquiry outside such hearings.  The cost and expense of such arbitration shall be borne equally by Landlord and Tenant, but Landlord and Tenant shall each pay their own attorney's fees and disbursements.

(v)      Except as provided in subparagraph A) above, Tenant shall not be deemed to have exercised its option for the applicable Extension Period unless, within thirty (30) days after its receipt of notice of the decision of the arbitrators, Tenant shall give Landlord written notice of such exercise and its acceptance of such decision.  Promptly thereafter Landlord and Tenant shall execute and deliver a Rental Agreement.

(f)    Upon the commencement of the new Initial Term, the provisions of Article "9" relative to payment of real estate taxes shall be modified so that thereafter the Tenant shall pay its "proportionate share" of all real estate taxes levied or assessed against the Entire Premises as described in Exhibit "A" to the Lease which proportionate share shall be determined by a fraction, the numerator of which shall be the total number of square feet of ground floor space of the Premises and the denominator of which shall be the total number of square feet of all buildings and improvements erected on the Entire Premises described in Exhibit "A" to the Lease.

(g)    All of the words on the first two (2) lines of Article "33" of the Lease prior to the last two (2) words on line "2" thereof, to wit:  "provided that" are hereby deleted and substituted therefor is the following:  "Tenant may use the Demised Premises for: i) A Drug Store and/or as a Health and Beauty Aids store; or ii) So long as the Tenant is the tenant named herein or is any parent, subsidiary or affiliate thereof or is a successor in interest to, or assignee of, the Tenant or such parent, subsidiary or affiliate arising by reason of a merger, consolidation, reorganization or acquisition of all or substantially all of the assets of Tenant or as a result of having acquired at least three (3) or more stores of the Tenant within the Counties of Nassau and/or Suffolk, State of New York then such Tenant or such successor or assign may also use the Demised Premises for any other lawful retail purpose provided, however, that such other lawful retail purpose (other than a Drug Store and/or Health and Beauty Aids Store) does not violate any then restrictive covenant in effect on any portion on the remainder of the Shopping Center to which Landlord is then a party and which other space is then being used for such restricted purpose.

2.    The provisions of Article "22" of the Lease are supplemented by the addition of the following sentence at the end of said Article "22."  "If an assignee of the Lease is not a successor in interest to, or assignee, of the Tenant of the kind specified in Article "33 (g)"" of this Agreement, then and in such event the assignee shall only have the right to use the Demised Premises for a lawful retail purpose other than as a Drug Store and/or a Health and Beauty Aids Store on the condition that Tenant gives Landlord advance written notice thereof together with reasonable financial information as to said proposed assignee and of the name and address of the proposed assignee and such other intended principal use thereof and Landlord shall have a period of fifteen (15) business days after Tenant shall give Landlord such notice to recapture possession of the Demised Premises and to terminate this Lease in lieu of acceptance of said assignee, on thirty (30) days notice given to Tenant within said fifteen (15) day business period and in such event on the expiration of such thirty (30) days this Lease shall cease, expire and come to an end as if such date were herein fixed for the expiration of the term of this Lease provided, however, that in the event of such recapture and termination of this Lease the Landlord agrees not to use the Demised Premises as a Drug Store or as a Health and Beauty Aids Store for a period of five (5) years after such recapture and termination of the Lease.  Notwithstanding the foregoing if within a period of six (6) months after any closing of the Demised Premises (excluding any interim closing by reason of fire, casualty, strikes, lockouts, boycotts or other temporary causes) the Tenant shall not open another store whose principal purpose is as a Drug Store and/or a Health and Beauty Aids Store within a radius of three (3) miles of the Demised Premises then the aforesaid agreement on

- 8 -

the part of the Landlord not to use the Demised Premises for
such Drug Store and/or Health and Beauty Aids purposes for five
(5) years shall be deemed deleted and of no force or effect.  In
the event that an assignee is of a type as provided above in
this paragraph which gives Landlord the right of recapture and
termination of the Lease as above set forth and if such right of
recapture and termination is not exercised by Landlord then the
use thereof by such assignee shall be limited to either Drug
Store and/or Health and Beauty Aids purposes or to the
particular other use specified in the notice to Landlord prior
to such assignment and in addition, in the event of such an
assignment, it is agreed that if there be any excess monies paid
by said assignee to the Tenant over and above all sums payable
by the Tenant to the Landlord under the Lease and after
reimbursement to Tenant of all of Tenant's unamortized costs and
expenses for leasehold improvements to the Demised Premises and
after reimbursement to Tenant of all costs and expenses incurred
by Tenant to consummate such assignment or to put such assignee
in possession, including without limitation alterations,
brokerage commissions, attorney's fees, and after deduction of
any sums paid to the Tenant-assignor for any merchandise
inventory, fixtures, equipment, goodwill or other property
transfered, then such excess sums shall be divided evenly
between Landlord and Tenant and paid to Landlord as additional
rent, as and when the same is received from said assignee.

        3.   Article "19" of the Lease is hereby deleted and
substituted therefor is the following:

        "It is understood that the space designated as
"Pergament" on Exhibit "A" is presently occupied by Pergament
Distributors, Inc. in an area of approximately 24,000 square
feet (hereinafter called the "Pergament Space").  Landlord
agrees that such Pergament Space shall be used for lawful retail
purposes.  Should the Pergament Space become and remain
continuously vacant and unoccupied for a period of one (1) year
during the term of this Lease then Tenant shall have the right,
exercisable by written notice given to Landlord within sixty
(60) days following the expiration of such one-year period, to
cancel and terminate this Lease.  Upon the expiration of thirty
(30) days after the giving of such notice, this Lease and all
rights hereunder shall terminate as of such date as if such date
had originally been named as the expiration date hereof.  Should
the Pergament Space be intended to be sublet or assigned, in
whole or in part, for use other than as a home improvement
center reasonably similar to other home improvement centers
operated by the Pergament chain of stores in the area of the
Demised Premises, then, before initiating such other use, the
Landlord shall give Tenant prior written notice thereof and
Tenant shall have the right to cancel and terminate this Lease
by written notice to Landlord given within sixty (60) days after
Tenant is notified of such intended assignment or subletting and
thereupon on the expiration of sixty (60) days after the giving
of such notice by Tenant this Lease and all rights hereunder
shall terminate as provided in the preceding sentence; provided,
however, that Tenant shall have no right to terminate this Lease
if the Pergament Space is, as a result of any such assignment or
subletting, occupied either by a single tenant or subtenant, or
by not more than two (2) tenants or subtenants, one of which
occupies at least 15,000 square feet thereof and if, in any such
case, the said Pergament Space is not used in violation of any
exclusive covenant or restrictive agreement affecting the
Shopping Center (including the exclusive contained in this Lease
that such premises shall not be used for Drug Store nor for

- 9 -

Health and Beauty Aids purposes) and provided, further, that before the consummating of any such assignment or sublease of the Pergament Space, or any part thereof, for any use other than as such a home improvement center, the Landlord shall notify the Tenant hereunder in writing of the nature of such other use and of the length of the term thereof and of any extension or renewal options, and the rental provisions of said proposed bona fide assignment of lease and/or subletting and Tenant shall have the right, to be exercised within fifteen (15) days after receipt of such notice, to elect to exercise a prior and superior right and option to lease said Pergament Space, or portion thereof so encompassed, on the terms and conditions of said offer in which event a Lease thereof shall be promptly executed on the terms and conditions contained in said offer (and where not specified on the terms set forth in the within Lease) for such Pergament Space and in such event the Tenant may, at Tenant's option, by notice to Landlord prior to the commencement of the new lease for the Pergament Space, terminate the Lease as of the comencement date of the said new lease. In no event shall the term of said new lease as to the Tenant be less than what is then remaining under the within Lease together with all options for extensions or renewals hereof.

      4.  The parties agree that the only brokers responsible for bringing about this transaction are Seth A. Miller and James B. Ross and that neither has dealt with any other broker with respect hereto. Landlord agrees to pay all compensation and commissions due to the aforesaid brokers pursuant to separate Agreement.

      5.  In all other respects the Lease as heretofore modified is hereby ratified and confirmed and shall continue in full force and effect subject to this Modification Agreement.

     IN WITNESS WHEREOF, the parties hereto have set their hands and seals as of the day and year first above written.

Witness for Landlord:

 

MASSAPEQUA PLAZA ASSOCIATES

By:_____

   (General Partner)

Witness for Tenant:

 

GENOVESE DRUG STORES, INC.

By:_____

   (Sr. Vice President)

EXHIBIT "A"


ALL THAT CERTAIN lot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being at Massapequa, Town of Oyster Bay, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Merrick Road with the easterly side of Joludow Drive and from said point of beginning; running thence along the easterly side of Joludow Drive north 17 degrees 41 minutes 24 seconds east, 325 feet; thence south 84 degrees 15 minutes 00 seconds east, 390 feet; thence south 44 degrees 45 minutes 35 seconds east, 85.25 feet; thence south 03 degrees 08 minutes 25 seconds west, 284.26 feet to the northerly side of Merrick Road; thence along the northerly side of Merrick Road north 86 degrees 51 minutes 35 seconds west, 320.89 feet; thence still along the northerly side of Merrick Road north 75 degrees 04 minutes 00 seconds west, 218.21 feet to the corner at the point or place of beginning.

Excluded from the foregoing description is a strip of land approximately five feet wide running along Merrick Road which has been condemned by Nassau County for the widening of Merrick Road.

mcdonald associates. **architects** p.c.

March 4, 1987                          EXHIBIT "B"


Massapequa Plaza Associates
489 Fifth Avenue
New York, New York 10017

Attn:  Mr. James B. Ross - General Partner

Genovese Drug Stores, Inc., 80 Marcus Drive, Melville, New York
11747.

Attn:  Herbert J. Kett - Senior Vice President

Re:    Workletter outline for Lease - Genovese Store No. 27.,
       Pergament Shopping Center, Massapequa, New York.

The following outline represents the areas of work to be done by
the Landlord and Tenant for the above mentioned project.

Landlord work is confined to the front extension of the existing
structure and the former dry cleaners space and the attachment
of that work to the existing Genovese Store.

All work within the existing demised premises will be the
responsiblility of the Tenant including any upgrade of the work
to be done by the Landlord specifically not mentioned under
Landlord Work items, and found in the documents for construction
as required by Building Department code.  These items will be
backcharged to the Tenant by The Landlord.

The Tenant will have the option of requesting that the
Landlord's Contractor complete any Tenant work and separate
prices will be submitted to the Tenant for that work, to be
included in the general construction, and payable by the Tenant.

A.  LANDLORD WORK -

    1. General -

                a.  Landlord shall be responsible for acquiring
                    all Building Department filings, inspections,
                    filing fees, certificates or approvals, site
                    surveys and the new certificate of occupancy.

pg. 2 of 6

2. Site –

    a. All excavation as required.

    b. All below grade utility relocates.

    c. Foundation.

    d. Backfill and compaction.

    e. Extension concrete slab (front of store).

    f. Landscaping – repair and replacement of sidewalks, curbs and parking area (front of store).

    g. Lighting – relocation of existing parking area lighting, as required (front of store).

    h. Line painting – stripping or directional at parking area, as required (front of store).

3. Demolition –

    a. Full demolition and removal of debris for new construction.

    b. Temporary entrance – including and limited to wooden store front entrance, walkways, gates, hand rails and barriers.

    c. All temporary utility connections.

    d. Removal of all equipment from existing dry cleaner premises.

4. Structure –

    a. Exterior finishes – including finishing of block back-up at Southwest corner of store, with metal facade material used at fascia.

    b. Roofing – new at front of store, connection of new roofing to existing, patch and repair at dry cleaners roof as required due to removal of existing equipment or placement of new.

pg. 3 of 6

Note – Inspection and subsequent replacement
roofing for any portion of the existing or
additional roof shall be as per the lease.

c.  Storefront – standard clear alluminum
    storefront with single pane standard glazing
    as required and manual doors with vestibule.

d.  Fascia – Standard, electro plated, painted
    metal system, of the design approved by the
    Landlord inlcuding color, configuration and
    seaming.

e.  Shell construction – basic to match existing
    structure.

5.  Electrical –

    a.  Basic extension of :   (match existing)

        1.  Power plan

        2.  Lighting

        3.  Emergency lighting and exit lighting, at
            new areas only.  All upgrades as required
            by code shall be backcharged to the
            Tenant, including any panic hardware
            devices required by code.

        4.  Dedicated outlets for cashier counters
            (4); tobacco/photo counter (4); office
            (1).  As per Tenant's specification.
            All dedicated outlet exact locations
            shall be as directed by the Tenant.

        5.  Power junction box for sign.

6.  Plumbing –

    a.  Roof drainage as required.

    b.  Hook-up of existing below grade utilities.

    c.  Sprinkler extension and upgrade, as required.

pg. 4 of 6

7. HVAC –

    a. Balance existing sytem in conjunction with new system.

    b. Additional HVAC unit(s) as required and as determined by the Landlord's Engineer.

    c. All system requirements for new unit(s), as required.

    d. Tenant shall have the right to approve or reject all additional HVAC engineering prior to contrating of the work.

    e. All HVAC in the Additional Space to be new.

8. Finishes –

    a. Match existing flooring (VCT).

    b. Match existing ceiling (2 x 4 acoustic lay-in tile).

    c. Tenant shall have the right to select colors from the standard color selections for all new work (finishes).

    d. Interior gypsum board surfaces to match existing.

    e. Paint only @ walls and columns.

    f. Vinyl base to match existing, as required.

B. TENANTS WORK –

    1. Site –

        a. Exterior signage

    2. Demolition –

        a. Private security supplement at time of storefront (temporary) security break.

pg. 5 of 6

3. Structure –

    a. Specialty lighting of facade.

        1. Storefront wall washing.

        2. Sign lighting.

        3. Power doors at storefront (N.I.C.). If selected Tenant shall receive a construction credit for the original standard storefront against the cost of the power doors.

4. Electric –

    a. Additional service.

    b. Sign timers.

    c. Additional tie-ins or relocates of computer.

5. Plumbing –

    a. Additional service.

    b. Changes to existing beyond relocated extensions.

6. HVAC –

    a. Additional service other than that by Landlord.

    b. Upgrade or repairs to existing units other than balancing.

7. Finishes –

    a. Additional by Tenant.

8. Specialties (Systems) –

    a. Telephone.

    b. Public address.

    c. Security.

    d. Trash compactors (interior or exterior).

pg. 6 of 6

Sincerely yours,

Michael P. Violante, V.P. - Architect

MPV/lc

cc:  Herbert J. Kett
     Emil Dillolo
     Arnold Tenney

## MODIFICATION OF LEASE AGREEMENT

MODIFICATION OF LEASE AGREEMENT, made and entered into as of the 15th day of August, 1995, by and between MASSAPEQUA PLAZA ASSOCIATES, a New York Partnership, having its principal offices at c/o James B. Ross, 1700 Broadway, Suite 1700, New York, New York 10019 (hereinafter "Landlord") and GENOVESE DRUG STORES, INC., a Delaware Corporation, with offices at 80 Marcus Drive, Melville, New York 11747 (hereinafter "Tenant").

WHEREAS, Marwin Malls Company, as the predecessor of Landlord, entered into a lease dated April 15, 1971 with Tenant, and such lease was later amended by agreements made March 31, 1975, April 4, 1975, and March 31, 1987 (hereinafter collectively the "Lease"); and

WHEREAS, Landlord is the successor in interest to Marwin Malls Company as the Landlord under the Lease and is the present fee owner of the premises leased to Tenant; and

WHEREAS, the parties are desirous of amending and modifying the Lease;

the words "Demised Premises" contained at the end of the second full paragraph on page 19 of the portion of the lease dated April 15, 1971:

"Beginning January 1, 1995, Landlord may include the cost of such fire insurance with extended coverage endorsement as part of the annual cost of upkeep and general maintenance for which Tenant pays its proportionate share pursuant to paragraph 40 (iii) of the lease dated April 15, 1971, to the extent only that the cost of such fire insurance with extended coverage endorsement is in excess of $10,000 per annum.  For example, if the cost of such fire insurance with extended coverage endorsement is $11,000 per annum, then Landlord may include $1,000 as part of the annual cost of upkeep and general maintenance for which Tenant pays its proportionate share."

(d)  The Lease is modified to include the following:

"Tenant shall have the absolute right to close all or any part of the Demised Premises at any time or from time to time for business

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1.   The Lease is modified and amended as follows:

(a)   Article 43 of the portion of the lease dated April 15, 1971, captioned "COMPETITION BY TENANT" is hereby deleted in its entirety from the Lease and shall be of no further force and effect.

(b)   Article 13 of the portion of the lease dated April 15, 1971 is hereby amended to include the following after the word "damage" at the end of the first full paragraph of such Article 13.

"Beginning January 1, 1995, Landlord may include the cost of such liability insurance (including umbrella coverage) carried by Landlord as part of the annual cost of upkeep and general maintenance for which Tenant pays it proportionate share pursuant to paragraph 40 (iii) of the lease dated April 15, 1971."

(c)   Article 28 of the portion of the lease dated April 15, 1971 is hereby amended to include the following after

C:\WPDOCS\HWS\5707\Gen\modis.agr                    2

to the public as it shall alone determine,
and nothing herein contained shall be
construed to require Tenant to conduct, or
remain open for the conduct of, any business
in the Demised Premises.  Notwithstanding the
provisions of this Paragraph:

    (i)   In the event that the Demised
         Premises shall at any time during
         the Initial Term or any exercised
         Extension Period be closed for a
         period in excess of ninety (90)
         consecutive days, which closing
         shall not be the result of causes
         beyond Tenant's control such as,
         without limitation, casualty,
         destruction, condemnation, strikes,
         boycotts or lockouts, then, and in
         such event Landlord shall have the
         right, upon thirty (30) days' prior
         written notice (the "Landlord's
         Closing Termination Notice") served
         on Tenant at any time prior to any
         reopening thereof by Tenant or its
         successor, assign or subtenant, to
         recapture possession of the Demised

Premises and to terminate this Lease on the date (the "**Closing Termination Date**") which shall be the thirtieth (30th) day after Tenant's receipt of the Landlord's Closing Termination Notice. Effective as of the Closing Termination Date, this Lease shall cease and expire and come to an end as if such date were herein fixed for the expiration of the Term of this Lease; and

(ii) Landlord shall have no right to recapture in the event that the Demised Premises are closed beyond such ninety (90) day period for interim or temporary purposes involving alterations, repairs, restorations, additions, or remodeling, (collectively the "Temporary Closing Purpose") provided that within such ninety (90) day period after closing, Tenant has taken bona fide steps, in good faith, to implement such

Temporary Closing Purpose such as, by way of example and not limitation, the preparation of building plans and drawings, the commencement of interior demolition, other than removal of trade fixtures, or the commencement of actual construction work in the Demised Premises, so as to prepare the Demised Premises for re-opening.

2.    Landlord will execute a Memorandum of this Modification of Lease Agreement for recording by Tenant, a memorandum of any previous modification of the Lease if Tenant so requests, and any other governmental documents required in connection with recordation or any such memorandum.

*(balance of page intentionally left blank)*

3.   As modified herein, the Lease is ratified and affirmed.

IN WITNESS WHEREOF, the parties hereto have set their hands as of the day and year first above written.

Witness for Landlord:                    MASSAPEQUA PLAZA ASSOCIATES

By: _____

(General Partner)

Witness for Tenant:                      GENOVESE DRUG STORES, INC.

By: _____

Herbert J. Kett
Vice Chairman

STATE OF NEW YORK          )
                          )     SS.:
COUNTY OF NEW YORK         )

On this 30¹ᵗ day of _August_, 1995, before me personally came JAMES B. ROSS, known to me to be a general partner of MASSAPEQUA PLAZA ASSOCIATES, a New York partnership, and acknowledged to me that he executed the foregoing instrument for and on behalf of and with authority of MASSAPEQUA PLAZA ASSOCIATES for the uses and purposes therein mentioned.

_____John P. O'Donnell_____
Notary Public

JOHN P. O'DONNELL
Attorney At Law and
Notary Public, State of New York
No. 31-4691258
Qualified in New York County
Commission Expires November 30, 199_

STATE OF NEW YORK     )
                      )     SS.:
COUNTY OF SUFFOLK     )

On the 31ˢᵗ day of AUGUST, 1995, before me personally came HERBERT J. KETT, to me known, who, being by me duly sworn, did depose and say: that he resides at 452D Heritage Hills, Somer, New York 10589; that he is the Vice Chairman of GENOVESE DRUG STORES, INC., the corporation described in, and who executed the foregoing instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.

_____Susan A. Bona_____
Notary Public

SUSAN A. BONA
NOTARY PUBLIC, State of New York
No. 4885153
Qualified in Suffolk County
Commission Expires March 9, 199_

## FIFTH MODIFICATION OF LEASE AGREEMENT

THIS FIFTH MODIFICATION OF LEASE AGREEMENT (this "Amendment") is made and entered into as of this day of September, 2008, by and between MASSAPEQUA PLAZA ASSOCIATES, L.P., having an address of 1270 Avenue of the Americas, Suite 220, New York, New York 10020, Attention: James B. Ross, General Partner ("Landlord"), and GENOVESE DRUG STORES, INC., having an address of Post Office Box 3165, Harrisburg, Pennsylvania 17105, Attention: Secretary ("Tenant").

### WITNESSETH:

WHEREAS, Landlord's predecessor in interest, Marwin Malls Company, entered into a lease with Tenant dated April 15, 1971, as amended on March 31, 1975, April 4, 1975, March 31, 1987 and August 15, 1995 (collectively, the "Lease") for the demised premises located at 5117 - 5129 Merrick Road, Massapequa Park, New York, New York, as more particularly described in the Lease (the "Premises"); and

WHEREAS, the parties hereto have agreed to modify and amend certain terms and conditions of the Lease as hereinafter provided, but not otherwise.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  Return of Basement Space.  Tenant agrees to return to Landlord 1,950 square feet of basement space ("Return Space") of the Premises as outlined on Exhibit "A" attached hereto and made a part hereof, in a vacant and broom clean condition.  Landlord shall be responsible for all construction costs in connection with demising the Return Space from the remainder of Tenant's basement space and shall perform all such work in a good and workmanlike manner without disruption to Tenant's business. The construction shall commence no later than sixty (60) days from full execution of this Amendment but in no event shall such work commence after December 1, 2008.  The timing of the work shall be coordinated between Landlord and the Rite Aid District Manager for this store location.

2.  Pylon Sign Space.  In return for the above basement space agreement, Landlord agrees to permit Tenant to use for the reminder of its lease term and without cost or expense, the large space, marked "For Rent", on the primary pylon sign of Pergament Center as depicted on Exhibit "B" attached hereto and made a part hereof. Tenant shall be responsible, at its cost, to obtain any municipal permits required for any sign that it may install in said large space on the pylon sign, and to be solely responsible for the cost of installing such sign.

3.    <u>Continuing Validity</u>.    Except as herein modified, all other terms, covenants and conditions of the Lease shall remain in full force and effect and are hereby ratified and confirmed.

4.    <u>Conflicting Terms</u>.    In the event of a conflict between the terms of the Lease and this Amendment, the language of this Amendment shall control.

**IN WITNESS WHEREOF,** the parties have caused this Amendment to be executed as of the day and year first above written.

WITNESS:

_____

John M. Phufas
**Print Name**

_____

Tina Pantazis
**Print Name**

LANDLORD:
**MASSAPEQUA PLAZA ASSOCIATES, L.P.**

By: _____
    James B. Ross,
    **General Partner**

Date: _____9/19/68_____

WITNESS:

_____

Melissa Twardzik
**Print Name**

_____

Patti Short
**Print Name**

TENANT:
**GENOVESE DRUG STORES, INC.**

By: _____
    Eve K. Exar,
    **Authorized Representative**

Date: _____Sept. 26, 2008_____

# EXHIBIT "A"



TOTAL STORAGE
8,310 S.F. - N.I.C.
EXIT CORRIDOR

UNEXCAVATED

EXIT CORRIDOR

1,950 s.f.

"Return Space"
(within
cross-hatched
borders)

EXHIBIT "B"



## SIXTH MODIFICATION OF LEASE AGREEMENT

THIS SIXTH MODIFICATION OF LEASE AGREEMENT (this "Modification") is made and entered into as of this *13th* day of *June*, 2012, by and between **MASSAPEQUA PLAZA ASSOCIATES, L.P.**, having an address of 1270 Avenue of the Americas, Suite 220, New York, New York 10020, Attention: James B. Ross, General Partner ("Landlord") and **GENOVESE DRUG STORES, INC.**, a Delaware corporation, having an address of P.O. Box 3165, Harrisburg, Pennsylvania 17105, Attention: Secretary ("Tenant").

## WITNESSETH:

**WHEREAS,** Landlord's predecessor in interest, Marwin Malls Company, entered into a Lease with Tenant dated April 15, 1971, as amended by Agreement dated March 31, 1975, Agreement dated April 4, 1975, Modification of Lease Agreement dated March 31, 1987, Modification of Lease Agreement dated August 15, 1995, and Fifth Modification of Lease Agreement dated September 26, 2008 (collectively, as amended and modified, the "Lease"); and

**WHEREAS,** the Second Extension Period (as defined in the Modification of Lease Agreement dated March 31, 1987) and, therefore, the current demised term of the Lease, expires on October 31, 2012; and

**WHEREAS,** Tenant desires to exercise its option to extend the demised term of the Lease by the Third Extension Period (as defined in the Modification of Lease Agreement dated March 31, 1987) for the five (5) year period commencing on November 1, 2012 and expiring on October 31, 2017; and

**WHEREAS,** the parties have agreed upon the annual rental rate which shall be payable by Tenant during the Third Extension Period; and

**WHEREAS,** the parties have also agreed that Landlord shall have the right to recapture a certain part of the demised premises located in the basement portion of the demised premises.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1. **Third Extension Period**. Landlord hereby consents to Tenant's exercise of its option to extend the demised term of the Lease by the Third Extension Period for the five (5) year period commencing on November 1, 2012 and expiring on October 31, 2017. Notwithstanding anything to the contrary set forth in the Lease, the annual rental payable pursuant to Article 4 of the Lease during the Third Extension Period shall be revised so as to be payable as follows:

For the Third Extension Period, the annual rental rate to be paid for each of the first (1st) through fifth (5th) Lease Years of such Third Extension Period shall be at an annual rate of Three Hundred and Ten Thousand and 00/100 Dollars ($310,000.00), payable in equal monthly installments of Twenty-Five Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($25,833.33) on the first (1st) day of each month during the Third Extension Period. The annual rental rate does not include any additional rent payable by Tenant under the terms of the Lease.

2.      **Basement Recapture**.

(a)   Landlord and Tenant agree that Landlord shall have the option to recapture 643 square feet of basement space, out of the 8,310 square foot basement portion of the Premises, as depicted on the attached Basement Plan marked as Exhibit A (hereinafter referred to as the "Relinquished Basement Space"). The Relinquished Basement Space is currently used by Tenant as an office. If Landlord elects to recapture the Relinquished Basement Space, Landlord shall provide Tenant with three (3) months prior written notice of its intent to recapture. Landlord shall be responsible for payment of all costs and expenses associated with the recapture of the Relinquished Basement Space, including but not limited to: (a) the relocation and construction of the basement office (i) to an area either within the remaining 6,546 square feet of the basement space that Tenant shall continue to occupy under this Lease, or (ii) to an area within the first floor level of the Premises, as shall be identified by Tenant; (b) the relocation of any electrical panel serving the Premises that may be presently located within the Relinquished Basement Space to such other location within the Premises that Tenant shall identify; and (c) the removal of the stairwell at the northeast corner of the Premises connecting the first floor of the Premises to the Relinquished Basement Space, and the restoration of the floor at the first floor in this area. Tenant acknowledges and agrees that Landlord's election to exercise its option to recapture the Relinquished Basement Space shall not result in any reduction of the annual rental amount.

(b)   Within thirty (30) days after Landlord's written notice to recapture as aforesaid, Tenant agrees to advise Landlord whether it elects to move the office to an area within Tenant's remaining basement portion of the Premises or to the first floor of the Premises. Thereupon, Landlord shall submit plans to Tenant within sixty (60) days for approval, which plans shall be for the construction of an office substantially comparable to the office being relocated. Tenant shall promptly advise Landlord if it approves said plans or if changes are required. Promptly following Tenant's final approval of the plans, Landlord shall commence relocation and construction and diligently pursue same to completion so that the new office shall be delivered to Tenant within six (6) months thereafter. Landlord shall perform such work so as to minimize interference with Tenant's store operations and shall coordinate the work with Tenant. Landlord shall perform the work in a good and workmanlike manner using only licensed contractors with appropriate insurance coverage.

3.      **Continuing Validity**. Except as herein modified, all other terms, covenants and conditions of the Lease shall remain in full force and effect and are hereby ratified and confirmed. It is expressly understood and agreed that no provision in this Sixth Modification of Lease Agreement shall be deemed or interpreted to mean that Tenant shall have exercised its option to extend the demised term of this Lease by the Fourth Extension Period (as defined in the

Modification of Lease Agreement dated March 31, 1987), and, accordingly, the parties hereto reaffirm that the demised term of this Lease shall fully and finally expire on October 31, 2017, provided, however, that Tenant shall have the option to extend the demised term of this Lease by the Fourth Extension Period upon the terms and conditions governing such exercise as set forth in the Modification of Lease Agreement dated March 31, 1987.

4. **Conflicting Terms**. In the event of a conflict between the terms of the Lease and of this Sixth Modification of Lease Agreement, the language of this Modification shall control.

5. Landlord acknowledges and affirms that as of the date of this Sixth Modification of Lease Agreement, Tenant is not in default under any of the terms, covenants, conditions or provisions of the Lease and Landlord has no offsets, claims or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease.

6. Each party represents and warrants that it has the full authority to enter into this Sixth Modification of Lease Agreement, and that no third party consents of any kind are required in connection with this Modification.

7. This Sixth Modification of Lease Agreement may be executed in several counterparts, each of which shall be deemed an original, all of which together shall constitute one and the same Modification.

**IN WITNESS WHEREOF**, the parties have caused this Sixth Modification of Lease Agreement to be executed as of the day and year first above written.

WITNESS:

LANDLORD:
**MASSAPEQUA PLAZA ASSOCIATES, L. P.**

By:
Name: James B. Ross
Title:   General Partner

WITNESS:

TENANT:
**GENOVESE DRUG STORES, INC.**

By:
Joseph J. Notarianni
Vice President, Real Estate - Law

Exhibit #

**UNEXCAVATED**

**EXIT CORRIDOR**

**TOTAL STORAGE**
**8,310 S.F. - N.I.C.**
**EXIT CORRIDOR**

**1,121 S.F.**

**275 S.F.**

**843 S.F.**

LANDLORD'S
EXISTING
BASEMENT
AREA

BASEMENT
RECAPTURE
AREA

# JAMES B. ROSS

Real Estate

Rockefeller Center
1270 Avenue of The Americas
Suite 220
New York, N.Y. 10020
Tel: (212) 664-1806
Fax: (212) 664-1057
jim@intercaprealty.com

May 2, 2014

Ms. Lisa Lambert
Rite Aid Corporation
PO BOX 3165
Harrisburg, PA 17105

Re:    Rite Aid Store 10648\Brooks Eckerd 5583
5125 Merrick Road
Massapequa Park, NY

Dear Lisa:

In accordance with our recent conversation the following is Landlord's proposal for
granting Tenant a lease extension and one (1) additional five (5) year renewal option for
the above captioned store.

1) Tenant has exercised its Third Extension Period on June 13, 2012 as set forth in
the Sixth Modification of Lease Agreement. This Third Extension Period expires
on October 31, 2017 and the Annual Base Rent payable during this period is
$310,000. This Annual Base Rent will remain the same during the Third
Extension Period.

2) Tenant will exercise its Fourth Extension Period which commences on November
1, 2017 and expires on October 31, 2022 having an Annual Base Rent of
$356,500. The Fourth Extension Period will be exercised in the Seventh
Modification of Lease Agreement.

3) Tenant will be granted a Fifth Extension Period which will commence on
November 1, 2022 and expire on October 31, 2027 having an Annual Base Rent
of $409,975. Tenant will have the right to exercise the Fifth Extension Period in
accordance with the terms of the Lease.

Please contact me with any questions that you have regarding this proposal.

Very truly yours,

Massapequa Plaza Associates LP

By
James B. Ross
General Partner

JBR/tp

## SEVENTH MODIFICATION OF LEASE AGREEMENT

**THIS SEVENTH MODIFICATION OF LEASE AGREEMENT** (this "Amendment")
is entered into as of this 31 day of July , 2014, by and between **MASSAPEQUA PLAZA
ASSOCIATES, L.P.**, a New York limited partnership ("Landlord") and **GENOVESE DRUG
STORES, INC.,** a Delaware corporation ("Tenant").

## W I T N E S S E T H:

**WHEREAS,** Landlord's predecessor in interest Irwin Steinhauser, Marvin Steinhauser,
James Sandler, Michael Steinhauser and Elsie Steinhauser d/b/a Marwin Malls Company leased
to Tenant certain therein-described premises located at 5117-5129 Merrick Road, Massapequa,
New York (the "Demised Premises") pursuant to a Lease dated April 15, 1971, as amended by
instruments dated March 31, 1975, April 4, 1975, March 31, 1987, August 15, 1995, September
26, 2008 and June 13, 2012 (collectively, the "Lease"); and

**WHEREAS,** the current term of the Lease expires on October 31, 2017, subject to
Tenant's option to renew the term for one (1) renewal term which expires on October 31, 2022
(the "Final Existing Renewal Term"); and

**WHEREAS,** the parties hereto have agreed to extend the term of the Lease, to grant
Tenant an additional option to renew the term of the Lease and to otherwise modify and amend
certain terms and conditions of the Lease as hereinafter provided, but not otherwise.

**NOW, THEREFORE,** in consideration of the premises and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged, and
notwithstanding anything to the contrary set forth in the Lease, intending to be legally bound
hereby, the parties agree as follows:

1.     **Exercise of Final Existing Renewal Term**.  Tenant hereby exercises its option to
renew the term of the Lease for the Final Existing Renewal Term, such that the term of the Lease
shall expire on October 31, 2022.

2.     **Grant of Additional Renewal Option**.  Provided that this Lease is in full force
and effect, and Tenant is not at the time of exercise in default under the Lease, Tenant is hereby
granted the option (the "Additional Renewal Option") to renew the term of this Lease for one (1)
five (5) year renewal period (the "Additional Renewal Term"), which, if exercised by Tenant
shall commence on November 1, 2022. If Tenant wishes to exercise the Additional Renewal
Option, Tenant shall give to Landlord written notice to such effect (a "**Renewal Notice**") no later
than the date (the "**Renewal Date**") which is at least six (6) months prior to the expiration of the
Final Existing Renewal Term.

Rite Aid 10648, Massapequa, New York

3.    **Minimum Rent**.    Notwithstanding anything to the contrary set forth in the Lease, Tenant covenants and agrees to pay to Landlord, and Landlord covenants and agrees to accept from Tenant, as minimum rent for the Demised Premises the following sums during the following periods:

| Period: | Annual Rent: | Monthly Installment: |
| --- | --- | --- |
| Final Existing Renewal Term | $356,000.00 | $29,666.67 |
| Additional Renewal Term | $409,975.00 | $34,164.58 |

4.    **Continuing Validity**.  Except as herein modified, all other terms, covenants and conditions of the Lease shall remain in full force and effect and are hereby ratified and confirmed.

5.    **Conflicting Terms**.  In the event of a conflict between the terms of the Lease and this Amendment, the language of this Amendment shall control.

6.    **No Defaults**.  Landlord acknowledges and affirms that as of the date of this Amendment, and to the best of Landlord's actual knowledge, Tenant is not in default under any of the terms, covenants, conditions or provisions of the Lease and Landlord has no offsets, claims or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease.

7.    **Authority**.  Each party represents and warrants that it has the full authority to enter into this Amendment, and that no third party consents of any kind are required in connection with this Amendment.

8.    **Counterparts**.  This Amendment may be executed in several counterparts, each of which shall be deemed an original, all of which together shall constitute one and the same document.

**IN WITNESS WHEREOF**, the parties hereto have caused these presents to be executed the day and year first above written.

WITNESS:

_Nina Pantazis_

_____

**LANDLORD:**
**MASSAPEQUA PLAZA ASSOCIATES, L.P**

By: _____

Date Executed: ___7 / 18 / 2014___

- 2 -

Rite Aid 10648, Massapequa, New York

WITNESS:

**TENANT:**
**GENOVESE DRUG STORES, INC.**

By: _____
    Joseph J. Notarianni
    Vice President
Date Executed:  7-31-14

## EIGHTH MODIFICATION OF LEASE AGREEMENT

**THIS EIGHTH MODIFICATION OF LEASE AGREEMENT** (this "Amendment") is made this 6th day of April_____, 2020 (the "Effective Date"), by and between **MASSAPEQUA PLAZA ASSOCIATES, L.P.**, a New York limited partnership, successor in interest to Irwin Steinhauser, Marvin Steinhauser, James Sandler, Michael Steinhauser and Elsie Steinhauser d/b/a Marwin Malls Company, having an address of c/o Intercapital Realty Corp., 1270 Avenue of the Americas, Suite 1911, New York, NY 10020 ("Landlord") and **GENOVESE DRUG STORES, INC.**, a Delaware corporation, having an address of P.O. Box 3165, Harrisburg, Pennsylvania 17105 ("Tenant").

**WHEREAS,** Landlord and Tenant entered into that certain Indenture of Lease dated April 15, 1971, as amended by that certain letter agreement dated June 23, 1971, that certain Agreement dated March 31, 1975, that certain Agreement dated April 4, 1975, that certain Modification of Lease Agreement dated March 31, 1987, that certain letter agreement dated March 31, 1987, that certain Modification of Lease Agreement dated August 15, 1995, that certain Fifth Modification of Lease Agreement dated September 26, 2008, that certain Sixth Modification of Lease Agreement dated June 13, 2012 and that certain Seventh Modification of Lease Agreement dated July 31, 2014 (collectively, the "Lease"), for premises located at 5125 Merrick Road, Massapequa Park, New York (the "Premises");

**WHEREAS,** by its present terms, the Lease will expire on October 31, 2022 with one (1) five (5) year option to renew the term of the Lease; and

**WHEREAS,** the parties hereto have agreed to extend the term of the Lease, and to otherwise modify and amend certain terms and conditions of the Lease as set forth herein.

**NOW, THEREFORE,** intending to be legally bound hereby, and in consideration of the promises and mutual covenants herein contained the parties do hereby agree as follows:

1. Extended Term. The current term of the Lease is hereby extended for a period of eight (8) years commencing on November 1, 2022 (the "Extension Term Commencement Date") and expiring on October 31, 2030 (the "Extended Term").

2. Minimum Rent. Notwithstanding anything to the contrary set forth in the Lease, commencing on May 1, 2020 and continuing through the Extended Term, minimum rent for the Premises shall be paid in the amount and for the periods set forth below:

| Period | Annual Minimum Rent | Monthly Installment |
|---|---|---|
| 5/1/20 – 10/31/25 | $333,500.04 | $27,791.67 |
| 11/1/25 – 10/31/30 | $366,850.08 | $30,570.84 |

3. Additional Renewal Options.

1

(a)    Tenant shall continue to enjoy the remaining one (1) renewal option (the "Additional Renewal Option"), for a period of five (5) years (the "Renewal Term").    Said Additional Renewal Option shall be upon the terms and conditions set forth in the Lease, except for the payment of minimum rent which shall be on the terms set forth in Sections 3(b) below.

(b)    In the event that Tenant exercises the Additional Renewal Option, the minimum rent during the Renewal Term shall be as follows:

| Period | Annual Minimum Rent | Monthly Installment |
|---|---|---|
| 11/1/30 – 10/31/35 | $403,535.04 | $33,627.92 |

4.    Fire Insurance.  Effective as of the Effective Date, Article 28 of the Lease is hereby amended such that the following language is deleted in its entirety:

"to the extent only that the cost of such fire insurance with extended coverage endorsement is in excess of $10,000 per annum. For example, if the cost of such fire insurance with extended coverage endorsement is $11,000 per annum, then Landlord may include $1,000 as part of the annual cost of upkeep and general maintenance for which Tenant pays its proportionate share."

5.    Guaranty.  The effectiveness of this Amendment shall be conditioned upon Landlord's receipt of a guaranty executed by Rite Aid of New York, Inc., in the form attached hereto as **Exhibit A.**

6.    No Default. Landlord acknowledges and affirms that as of the Effective Date, Tenant is not in default under any of the terms, covenants, conditions or provisions of the Lease and Landlord has no offsets, claims or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease.

7.    Representations and Warranties of Landlord.  Landlord hereby makes the following representations and warranties, each of which is material and being relied upon by Tenant:

(a)    The persons executing this Amendment on behalf of Landlord are authorized to do so and, upon execution by such parties, this Amendment shall be a valid and binding obligation of Landlord, enforceable against Landlord in accordance with its terms.

(b)    Landlord has not sold, transferred, conveyed, assigned and/or subrogated any of its interest as Landlord in the Lease or the Premises.

(c)    Landlord has obtained all required consents and approvals to this Amendment from any ground lessor, mortgagee, other lending institution or any other entity or individual having an interest in the Premises, including without limitation, M&T Bank. Landlord

2

further agrees to indemnify, defend and hold Tenant harmless from and against any losses or claims arising from Landlord's failure to obtain consent to this Amendment from any other ground lessor, mortgagee, lending institution or other entity or individual.

8. <u>Brokers</u>. Tenant and Landlord each represents that it has not dealt with any broker in connection with this Amendment other than ARES (the "Broker"). Each party shall indemnify and hold harmless the other from and against any and all liabilities, claims, suits, demands, judgments, costs, losses, interest and expenses (including, without being limited to, reasonable attorneys' fees and expenses) which the indemnified party may be subject to or suffer by reason of any claim made by any person, firm or corporation other than the Broker for any commission, expense or other compensation as a result of the execution and delivery of this Amendment, which is based on alleged conversations or negotiations by the indemnifying party. Tenant shall pay the Broker the brokerage commission or other compensation due the Broker in connection with this Amendment under a separate agreement between Tenant and the Broker.

9. <u>Authority</u>. Landlord is duly organized, validly existing and in good standing under the laws of the State of New York and has the full and sole right, capacity, power and authority to enter into this Amendment.

10. <u>Counterparts</u>. This Amendment may be executed in electronic format and in several counterparts, each of which shall be deemed an original, all of which together shall constitute one and the same Amendment.

11. <u>Full Force</u>. All undefined capitalized terms referenced herein shall have the meanings ascribed thereto in the Lease. Except as specifically modified hereby, all of the terms, covenants and conditions of the Lease shall remain in full force and effect and shall be binding on the parties hereto, their successors and assigns. In the event of any conflict between the terms of the Lease and this Amendment, this Amendment shall control. If any of the provisions of the Lease, as amended hereby, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of the Lease, as amended hereby, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable shall not be affected thereby, and every provision of the Lease, as amended hereby, shall be valid and enforceable to the fullest extent permitted by law.

[Signature Page to Follow]

3

**IN WITNESS WHEREOF,** Landlord and Tenant, intending to be legally bound, have executed this Amendment as of the day and year first above written.

LANDLORD:
**MASSAPEQUA PLAZA ASSOCIATES, L.P.**

By: _____
Name: James B. Ross
Title: General Partner


TENANT:
**GENOVESE DRUG STORES, INC.**

By: _____
Name: Lisa. M. Winnick
Title: Vice President

4

## GUARANTY

In consideration of and as an inducement for the granting, execution, and delivery of that certain Eighth Modification of Lease Agreement, dated as of ___April___ ___6___, 2020 (hereinafter called the "Amendment"), by MASSAPEQUA PLAZA ASSOCIATES, L.P., a New York limited partnership, the landlord therein named (hereinafter called "Landlord"), to GENOVESE DRUG STORES, INC., a Delaware corporation, the tenant therein named (hereinafter called "Tenant") with respect to Rite Aid store number 10648, located in Massapequa Park, New York, as more particularly described in the Lease, as such term is defined in the Amendment, and as amended by the Amendment (hereinafter, all references to the "Lease" shall be deemed to refer to the Lease as amended by the Amendment), (the "Leased Premises") and in further consideration of the sum of One and 00/100 Dollar ($1.00) and other good and valuable consideration paid by Landlord to the undersigned, **RITE AID OF NEW YORK, INC.**, a New York corporation (hereinafter called "Guarantor"), intending to be legally bound, hereby guarantees to Landlord and becomes surety to Landlord for and with respect to the full and prompt payment when due of all rent due under the Lease, and the full, faithful and prompt performance and observance of all the covenants, terms, conditions, and agreements therein provided to be performed and observed by Tenant on or after the date hereof (collectively, the "Obligations"); and Guarantor does hereby become surety to Landlord for and with respect to all of the Obligations.

Commencing on the date hereof, Guarantor hereby covenants and agrees to and with Landlord that if default shall at any time be made by Tenant in the payment of rent or in the performance of any of the covenants, terms, conditions or agreements contained in the Lease, beyond all applicable notice and cure periods, Guarantor will forthwith pay such rent to Landlord, and any arrears thereof, and will forthwith faithfully perform and fulfill all of such covenants, terms, conditions, and agreements, and will forthwith pay to Landlord all damages and all costs and expenses that may arise in consequence of any default under the Lease by Tenant (including, without limitation, all reasonable attorneys' fees incurred by Landlord or caused by any such default and/or by the enforcement of this Guaranty).

This Guaranty is an absolute and unconditional guaranty of payment (and not of collection) and of performance and is a surety agreement.  Guarantor's liability hereunder is direct and may be enforced without Landlord being required to resort to any other right, remedy or security, and this Guaranty shall be enforceable against Guarantor, without the necessity for any suit or proceedings on Landlord's part of any kind or nature whatsoever against Tenant, and without the necessity of any notice of non-payment, non-performance, or non-observance or the continuance of any such default (except as are expressly required under the Lease) or of any notice of acceptance of this Guaranty or of Landlord's intention to act in reliance hereon or of any other notice or demand to which Guarantor might otherwise be entitled (except as are expressly required under the Lease), all of which Guarantor hereby expressly waives; and Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no event be terminated, affected, or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.

This Guaranty shall be a continuing guaranty, and (whether or not Guarantor shall have notice or knowledge of any of the following) the liability and obligation of Guarantor hereunder

shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, discharged, or in any way impaired by (a) any amendment or modification of, or supplement to, or extension or renewal of, the Lease by Tenant; (b) any exercise or non-exercise of any right, power, remedy, or privilege under or in respect of the Lease or this Guaranty or any waiver, consent, or approval by Landlord with respect to any of the covenants, terms, conditions, or agreements contained in the Lease or any indulgences, forbearances, or extensions of time for performance or observance allowed to Tenant from time to time and for any length of time; (c) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation, or similar proceeding relating to Tenant, or its properties; (d) any limitation on the liability or obligation of Tenant under the Lease or its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the federal bankruptcy law or any other statute or from the decision of any court or (e) any sublease or transfer by Tenant or any assignment, mortgage or pledge of its interest under the Lease, except as expressly provided otherwise in the Lease.

All of Landlord's rights and remedies under the Lease and under this Guaranty are intended to be distinct, separate, and cumulative and no such right and remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others. No termination of the Lease or taking or recovering of the Leased Premises shall deprive Landlord of any of its rights and remedies against Guarantor under this Guaranty. This Guaranty shall apply to the Obligations pursuant to any extension, renewal, amendment, modification, and supplement of or to the Lease as well as to the Obligations thereunder which arise during the term hereof and during the term of the Lease, but in no event shall it apply to any Obligation which arise prior to the date hereof.

Guarantor hereby waives any requirement that Landlord protect, secure, perfect, or insure any security interest or lien or any property subject thereto or exhaust any right to take any action against any person or any collateral (including any rights relating to marshaling of assets).

The Obligations will be paid strictly in accordance with the terms of the Lease, regardless of the value, genuineness, validity, regularity, or enforceability of the Obligations, and of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Landlord with respect thereto. The liability of the Guarantor to the extent herein set forth shall be absolute and unconditional, not subject to any reduction, limitation, impairment, termination, defense, offset, counterclaim, or recoupment whatsoever (all of which are hereby expressly waived by the Guarantor) whether by reason of any claim of any character whatsoever, including, without limitation, any claim of waiver, release, surrender, alteration, or compromise, or by reason of any liability at any time to the Guarantor or otherwise, whether based upon any obligations or any other agreements or otherwise, howsoever arising, whether out of action or inaction or otherwise and whether resulting from default, willful misconduct, negligence or otherwise, and without limiting the foregoing irrespective of: (a) any lack of validity or enforceability of the Lease or of any agreement or instrument relating thereto; (b) any change in the time, manner, or place of payment of, or in any other term in respect of, all or any of the Obligations, or any other amendment or waiver of or consent to Obligations, or any other amendment or waiver of or consent to any departure from the Lease or any other agreement relating to any Obligations; (c) any increase in, addition to, exchange or release of, or nonperfection of any lien on or security interest in, any collateral or any release or amendment or waiver of or consent to any departure from or failure to enforce any other guarantee, for all or any of the indebtedness;

(d) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Tenant in respect of the obligations of the Guarantor in respect hereof; excepting, solely, the express agreement of the parties to such discharge or release, (e) the absence of any action on the part of Landlord to obtain payment for the Obligations from Tenant; (f) any insolvency, bankruptcy, reorganization, or dissolution, or any proceeding of Tenant or Guarantor, including, without limitation, rejection of the guaranteed Obligations in such bankruptcy; or (g) the absence of notice or any delay in any action to enforce any Obligations or to exercise any right or remedy against Guarantor or Tenant, whether hereunder, under any Obligations or under any agreement or any indulgence, compromise or extension granted.

Guarantor further agrees that, to the extent that Tenant or Guarantor makes a payment or payments to Landlord, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to Tenant or the Guarantor or their respective estate, trustee, receiver or any other party under any bankruptcy law, state, or federal law, common law or equitable cause, then to the extent of such payment or repayment, this Guaranty and the advances or part thereof which have been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date of such initial payment, reduction, or satisfaction occurred.

Guarantor shall have no rights (direct or indirect) of subrogation, contribution, reimbursement, indemnification, or other rights of payment or recovery from any person or entity (including, without limitation, Tenant) for any payments made by the Guarantor hereunder, and Guarantor hereby waives and releases absolutely and unconditionally, any such rights of subrogation, contribution, reimbursement, indemnification and other rights of recovery which it may now or hereafter acquire.

Guarantor represents and warrants to Landlord that (a) the execution and delivery of this Guaranty has been duly authorized by Guarantor, and (b) Tenant is an affiliate of Guarantor.

This Guaranty shall be legally binding upon Guarantor and its successors and assigns and shall inure to the benefit of Landlord and its successors and assigns.  Reference herein to Tenant shall be deemed to include Tenant and its successors and assigns.  The terms and provisions of this Guaranty shall be governed by the laws of the State of New York.

This Guaranty may not be revoked without Landlord's written consent.  Guarantor will from time to time during the term of the Lease, promptly following request of Landlord, confirm in writing to Landlord that this Guaranty remains in full force and effect in accordance with its terms.

Guarantor and Landlord (by its acceptance of this Guaranty) hereby mutually waive trial by jury in connection with any dispute arising hereunder.

If Tenant, or Tenant's trustee, receiver or other officer with similar powers with respect to Tenant, rejects, disaffirms, or otherwise terminates the Lease pursuant to any bankruptcy, insolvency, reorganization, moratorium, or any other law affecting creditors' rights generally, Guarantor shall nonetheless remain obligated to pay all sums payable and/or due pursuant to the Lease, and to perform all covenants required to be performed by Tenant under the Lease, as if such rejection, disaffirmance, or other termination of the Lease had never occurred and as if the Lease

(without taking into account such rejection, disaffirmance, or termination) were in full force and effect, notwithstanding the fact that (a) Landlord may not be able to recover any part or all of such sums due pursuant to the Lease from Tenant, or (b) Tenant's obligations to pay sums due pursuant to the Lease, or to perform obligations pursuant to the Lease, may be limited by application of such bankruptcy, insolvency, reorganization, moratorium, or other law affecting creditors' rights generally.  Upon Guarantor's payment of such sums as aforesaid, Guarantor shall have and enjoy the same right of possession as a tenant under the Lease.

[SIGNATURE PAGE TO FOLLOW]

Guaranty to be executed by its duly authorized officer as of the day and year first above written.

GUARANTOR:

**RITE AID OF NEW YORK, INC.**


By: _____

Name: Lisa M. Winnick

Title: Vice President

*Signature Page to Guaranty*