**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for the Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and
Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF NEW RITE AID, LLC AND ITS DEBTOR AFFILIATES

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

---

[1]   The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

## <u>TABLE OF CONTENTS</u>

Page

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
    GOVERNING LAW ........................................................................................................... 1
    A.    Defined Terms. ............................................................................................................. 1
    B.    Rules of Interpretation. .............................................................................................. 14
    C.    Computation of Time. ................................................................................................ 15
    D.    Governing Law. ......................................................................................................... 15
    E.    Reference to Monetary Figures. ................................................................................ 15
    F.    Controlling Document. .............................................................................................. 15
    G.    Nonconsolidated Plan. .............................................................................................. 15
    H.    Consultation, Notice, and Consent Rights. ............................................................... 15

ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE  CLAIMS, PRIORITY TAX
    CLAIMS, AND DIP CLAIMS .................................................................................... 16
    A.    Administrative Claims. ............................................................................................. 16
    B.    Payment of Fees and Expenses under Financing Orders.......................................... 16
    C.    Professional Fee Claims. ........................................................................................... 17
    D.    Priority Tax Claims. .................................................................................................. 18
    E.    Settled Priority Claims. ............................................................................................. 18
    F.    McKesson 503(b)(9) Claims. .................................................................................... 19
    G.    DIP Claims. ............................................................................................................... 19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................... 19
    A.    Classification of Claims and Interests. ..................................................................... 19
    B.    Treatment of Claims and Interests. ........................................................................... 20
    C.    Special Provision Governing Unimpaired Claims. ................................................... 23
    D.    Elimination of Vacant Classes. ................................................................................. 23
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes. .............................. 23
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................. 23
    G.    Controversy Concerning Impairment. ....................................................................... 23
    H.    Subordinated Claims. ................................................................................................ 23

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ................................................................ 24
    A.    General Settlement of Claims and Interests. ............................................................. 24
    B.    McKesson Equity Distribution & Reorganized Debtors. .......................................... 24
    C.    Liquidating Trust & Wind-Down............................................................................... 25
    D.    Release of Liens. ....................................................................................................... 29
    E.    Cancellation of Existing Securities and Agreements. ............................................... 29
    F.    Corporate Action; Restructuring Transactions. ........................................................ 30
    G.    McKesson Sale Transactions. .................................................................................... 31
    H.    New Governance Documents. .................................................................................... 31
    I.    Effectuating Documents; Further Transactions. ....................................................... 31
    J.    Section 1146 Exemption. .......................................................................................... 31
    K.    Exemption from Securities Act Registration............................................................. 32
    L.    Preservation of Causes of Action. ............................................................................ 33
    M.    Private Company. ...................................................................................................... 33

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................... 34
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ..................... 34
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases................. 35
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases............. 36
    D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases........ 37
    E.    Insurance Policies. .................................................................................................... 37

F.       Indemnification Provisions. ...................................................................................38
G.       Employee and Retiree Benefits..............................................................................38
H.       Collective Bargaining Agreements ........................................................................38
I.       Modifications, Amendments, Supplements, Restatements, or Other Agreements.......39
J.       Reservation of Rights..............................................................................................39
K.       Nonoccurrence of Effective Date............................................................................39

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ...........................................39
A.       Timing and Calculation of Amounts to Be Distributed. ........................................39
B.       Distributions on Account of Obligations of Multiple Debtors................................40
C.       Distributions Generally. .........................................................................................40
D.       Post-Effective Distributions by the Wind-Down Debtors or Liquidating Trust......41
E.       Delivery of Distributions and Undeliverable or Unclaimed Distributions...............41
F.       Manner of Payment..................................................................................................41
G.       Compliance with Tax Requirements. .....................................................................41
H.       Allocations...............................................................................................................42
I.       Foreign Currency Exchange Rate. ..........................................................................42
J.       Setoffs and Recoupment. ........................................................................................42
K.       Claims Paid or Payable by Third Parties.................................................................42

ARTICLE VII THE LIQUIDATING TRUSTEE........................................................................43
A.       The Liquidating Trustee..........................................................................................43
B.       Wind-Down...............................................................................................................44
C.       Exculpation, Indemnification, Insurance & Liability Limitation. ..........................45
D.       Tax Returns...............................................................................................................45

ARTICLE VIII POST-EFFECTIVE DATE DISTRIBUTIONS BY THE LIQUIDATING TRUST .......45
A.       Establishment of Reserve Accounts........................................................................45
B.       Undeliverable Distribution Reserve.........................................................................45
C.       Wind-Down Reserve.................................................................................................46
D.       Administrative / Priority Claims Reserve. ..............................................................46
E.       Distributions of Distributable Assets.......................................................................47
F.       Professional Fee Escrow Account............................................................................47

ARTICLE  IX  PROCEDURES  FOR  RESOLVING  CONTINGENT,  UNLIQUIDATED,  AND
         DISPUTED CLAIMS...................................................................................47
A.       Disputed Claims Process ........................................................................................47
B.       Allowance of Claims................................................................................................47
C.       Estimation of Claims................................................................................................48
D.       Adjustment to Claims or Interests Without Objection.............................................48
E.       Time to File Objections to Claims...........................................................................48
F.       Disallowance of Claims or Interests.........................................................................48
G.       No Distributions Pending Allowance.......................................................................49
H.       Distributions After Allowance.................................................................................49
I.       Tax Treatment of Reserves for Disputed Claims. ..................................................49
J.       No Interest.................................................................................................................49
K.       Amendments to Claims.............................................................................................49

ARTICLE X SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS................50
A.       Settlement, Compromise, and Release of Claims and Interests. .............................50
B.       Release of Liens; Transfer Free and Clear. .............................................................50
C.       Debtor Release..........................................................................................................51
D.       Third-Party Release..................................................................................................52
E.       Exculpation. .............................................................................................................53
F.       Injunction. ................................................................................................................53
G.       Preservation of Setoff Rights. .................................................................................54

H.     Protections Against Discriminatory Treatment. ............................................................ 55
I.      Document Retention. ...................................................................................................... 55
J.      Reimbursement or Contribution. .................................................................................. 55
K.    Term of Injunctions or Stays. ....................................................................................... 55
L.     Subordination Rights. ................................................................................................... 55

ARTICLE XI CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN .................... 56
A.    Conditions Precedent to the Effective Date. ............................................................... 56
B.    Waiver of Conditions. ................................................................................................... 57
C.    Effect of Failure of Conditions. .................................................................................. 57
D.    Substantial Consummation. .......................................................................................... 57

ARTICLE XII MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ............. 57
A.    Modification and Amendments. .................................................................................... 57
B.    Effect of Confirmation on Modifications. .................................................................... 58
C.    Revocation or Withdrawal of Plan. .............................................................................. 58

ARTICLE XIII RETENTION OF JURISDICTION ........................................................................... 58

ARTICLE XIV MISCELLANEOUS PROVISIONS .......................................................................... 60
A.    Immediate Binding Effect. ........................................................................................... 60
B.    Additional Documents. ................................................................................................. 60
C.    Payment of Statutory Fees. ........................................................................................... 60
D.    Dissolution of the Committee and Cessation of Fee and Expense Payment. ............... 60
E.    Reservation of Rights. .................................................................................................. 61
F.     Successors and Assigns. ................................................................................................ 61
G.    Notices. ......................................................................................................................... 61
H.    Entire Agreement. ........................................................................................................ 62
I.      Exhibits. ........................................................................................................................ 62
J.      Nonseverability of Plan Provisions. ............................................................................. 62
K.    Votes Solicited in Good Faith. ..................................................................................... 63
L.     Closing of Chapter 11 Cases. ....................................................................................... 63
M.   Waiver or Estoppel. ...................................................................................................... 63

## INTRODUCTION

New Rite Aid, LLC ("Rite Aid") and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 Cases (each a "Debtor" and, collectively, the "Debtors") propose this joint plan of reorganization (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.      *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*1.5L Indenture Trustee*" means U.S. Bank Trust Company, National Association and CSC Delaware Trust Company, as successor trustee under the 1.5L Notes.

2.      "*1.5L Notes*" means those certain Floating Rate Senior Secured PIK Notes due 2031.

3.      "*1.5L Notes Claims*" means all Claims arising under or related to the 1.5L Notes, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the 1.5L Notes Indenture.

4.      "*1.5L Notes Indenture*" means that certain Indenture dated as of August 30, 2024 pursuant to which the 1.5L Notes were issued.

5.      "*1125(e) Covered Parties*" means, each of, and, in each case, in its capacity as such, (a) the Exculpated Parties, (b) the directors and officers of any of the Debtors or their affiliates, and (c) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' Related Parties, in each case solely in their capacity as such.

6.      "*3L Indenture Trustee*" means U.S. Bank Trust Company, National Association and Computershare Trust Company, National Association, as successor trustee under the 3L Notes.

7.      "*3L Notes*" means, collectively, those certain Third-Priority Series A Senior Secured PIK Notes due 2031 and Third-Priority Series B Senior Secured PIK Notes due 2031.

8.      "*3L Notes Claims*" means all Claims arising under or related to the 3L Notes, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the 3L Notes Indenture.

9.      "*3L Notes Indenture*" means that certain Indenture dated as of August 30, 2024 pursuant to which the 3L Notes were issued.

1

10.     "*Administrative / Priority Claims Reserve*" means a segregated account administered by the Liquidating Trustee in accordance with this Plan, and established in accordance with Article VIII.D.

11.     "*Administrative / Priority Claims Reserve Amount*" means the amount of Cash necessary (as determined by the Debtors and the DIP Agent in accordance with the Wind-Down Budget) to satisfy all Allowed Administrative Claims (other than Professional Fee Claims), Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and any unpaid Settled Priority Claims entitled to distributions after the Effective Date in accordance with this Plan and the Administrative Claims Procedures, which aggregate amount shall be set forth in the Wind-Down Budget.

12.     "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

13.     "*Administrative Claims Procedures*" means the procedures approved pursuant to the *Order (I) Authorizing the Administrative Claims Procedures and (II) Granting Related Relief* [Docket No. 1883].

14.     "*Administrative Claims Procedures Distribution*" means the distribution that each Holder of a Settled Priority Claim has consented to or been deemed to consent to receive on account of such Claim pursuant to the Administrative Claims Procedures.

15.     "*Affiliate*" means, with respect to any Person, any other Person which directly or indirectly controls, or is under common control with, or is controlled by, such Person, and shall include the meaning of "affiliate" set forth in section 101(2) of the Bankruptcy Code as if such Person were a debtor in a case under the Bankruptcy Code.

16.     "*Agents*" means, collectively, the Prepetition ABL Agent, the DIP Agents, and in each case, any successors thereto.

17.     "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan:  (a) a Claim that is evidenced by a Proof of Claim or request for payment of an Administrative Claim, as applicable, Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed (where such Proof of Claim is required to be Filed), is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  For the avoidance of doubt:  (x) a Proof of Claim or request for payment of an Administrative Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or agreement in writing by the Debtors and the Holder of such late-Filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.  "Allow" and "Allowing" shall have correlative meanings.

18.     "*Approved Budget*" shall have the meaning ascribed to such term in the Final Financing Order.

2

19.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or analogous non-bankruptcy law, including fraudulent transfer laws.

20.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

21.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 156, the United States District Court for the District of New Jersey.

22.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

23.    "*Business Day*" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks are authorized to close under the laws of, or in fact are closed in, the state of New York.

24.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

25.    "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

26.    "*Cash Distributable Assets*" means any Distributable Assets which are Cash.

27.    "*Cause of Action*" or "*Causes of Action*" means any claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, including Indemnification Rights, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, cross claim, counterclaim, contribution, suit, class action, third-party claim, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, direct or indirect, choate or inchoate, Disputed or undisputed, liquidated or unliquidated, Secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, in tort, at law, in equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

28.    "*Central Fill Facility*" means the Debtors' central fill facility located in Delran, New Jersey.

29.    "*Chapter 11 Cases*" means the procedurally consolidated cases Filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

30.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

31.    "*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC, the claims and noticing agent retained by the Debtors in the Chapter 11 Cases by order of the Bankruptcy Court [Docket No. 140].

32. "*Claims Bar Date*" means the deadline, which shall be thirty (30) days after the Effective Date, by which Proofs of Claim or requests for payment, as applicable, must be Filed with respect to Administrative Claims, Other Priority Claims, Priority Tax Claims, Other Secured Claims, and Settled Priority Claims unless this Plan expressly provides that the applicable claimant is not required to file a Proof of Claim or request for payment, as applicable. For the avoidance of doubt, (a) Professional Fee Claims shall not be subject to the Claims Bar Date and shall be filed and treated in accordance with Article II.C hereof, and (b) the Claims Bar Date shall not apply to Claims for Cure Costs, if any, which shall be administered in accordance with Article V hereof.

33. "*Claims Objection Deadline*" means the deadline for objecting to any Claim or request for payment of any Administrative Claim (other than Professional Fee Claims), which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to Claims.

34. "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

35. "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

36. "*CM/ECF*" means the Bankruptcy Court's case management and electronic case filing system.

37. "*Combined Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code, and approval of the Disclosure Statement on a final basis, as such hearing may be continued from time to time.

38. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases [Docket No. 316].

39. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

40. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

41. "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

42. "*Consummation*" means the occurrence of the Effective Date.

43. "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults and other non-monetary defaults to the extent required by section 365 of the Bankruptcy Code, under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors or assumed and assigned by the Debtors pursuant to a Sale Order or the Confirmation Order pursuant to sections 365 and/or 1123 of the Bankruptcy Code.

44. "*D&O Liability Insurance Policies*" means all directors and officers/liability Insurance Policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors, any of their predecessors, and/or any of their current or former subsidiaries for current or former directors', managers', and officers' liability and all agreements, documents, or instruments relating thereto.

45. "*Data Retention Plan*" means the Debtors' go-forward plan with respect to the retention of their books, records, and data, which shall be included in the Plan Supplement.

46. "*Debtor Employee Benefit Plan*" means an employee benefit plan within the meaning of Section 3(3) of ERISA.

47.    "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article X.C of the Plan.

48.    "*Debtors*" has the meaning ascribed to such term in the preamble.

49.    "*Deficiency Claims*" means any portion of any 1.5L Claim, 3L Claim, and McKesson Secured Claim which is not Secured by operation of section 506(a) of the Bankruptcy Code.

50.    "*Definitive Documents*" has the meaning ascribed to such term in the Restructuring Support Agreement.

51.    "*DIP Agent*" means Bank of America, N.A., in its capacities as administrative, collateral agent, and senior collateral agent, as applicable, under the DIP Credit Agreements, together with its respective successors, assigns, or any replacement agent(s) appointed pursuant to the terms of the DIP Credit Agreement.

52.    "*DIP Agents*" means the DIP Agent and the DIP Co-Collateral Agents.

53.    "*DIP Claims*" means, collectively, the DIP FILO Claims and the DIP Revolving Claims.

54.    "*DIP Co-Collateral Agents*" means each of Wells Fargo Bank, National Association and Capital One, National Association, each in its capacity as co-collateral agent under the DIP Credit Agreement.

55.    "*DIP Credit Agreement*" means the debtor-in-possession financing credit agreement by and between the certain Debtors and the DIP Secured Parties setting forth the terms and conditions of the DIP Facilities dated as of May 8, 2025.

56.    "*DIP Documents*" means, collectively, the DIP Credit Agreement and any other agreements, documents, and instruments delivered or entered into therewith, including, without limitation, any guarantee amendments, pledge and collateral agreements, intercreditor agreements, and other security documents.

57.    "*DIP Facilities*" means the DIP ABL Facility and the DIP FILO Facility, each as defined and described in the Final Financing Order.

58.    "*DIP FILO Claim*" means any Claim arising under or relating to the DIP FILO Facility under the DIP Credit Agreement or the Financing Orders, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP Credit Agreement.

59.    "*DIP FILO Facility*" means the new superpriority secured first-in, last-out term loan made in accordance with the DIP Credit Agreement and the Financing Orders in the initial principal amount of $180 million.

60.    "*DIP Lenders*" means the lenders from time to time under the DIP Credit Agreement.

61.    "*DIP Revolving Claim*" means any Claim arising under or relating to the DIP Revolving Facility under the DIP Credit Agreement or the Financing Orders, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP Credit Agreement.

62.    "*DIP Revolving Facility*" means the new superpriority secured revolving asset-based loan made in accordance with the DIP Credit Agreement and the Financing Orders in the principal amount of $1.7 billion.

63.    "*DIP Secured Parties*" means, the DIP Agent, the DIP Co-Collateral Agents, the DIP Lenders, and the other agents and arrangers party to the DIP Credit Agreement.

64.    "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is scheduled as $0.00 or as contingent, Disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with

the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

65.    "*Disbursing Agent*" means, as applicable, the Debtors, the Wind-Down Debtors, the Liquidating Trustee, or any other Entity or Entities selected by the Debtors, or the Wind-Down Debtors, or the Liquidating Trustee to make or facilitate distributions contemplated under the Plan (including the DIP Agent and Prepetition ABL Agent to the extent set forth in Article VI.C hereof).

66.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

67.    "*Disputed*" means, with respect to any Claim or Interest (or portion thereof), any Claim or Interest (or portion thereof) that is not yet Allowed.

68.    "*Dissolution Date*" has the meaning set forth in Article IV.C.5.

69.    "*Distributable Assets*" means all (a) Cash on hand of the Debtors (other than the Reorganized Debtors following the Effective Date) or the Liquidating Trust, as applicable, on or after the Effective Date, after giving effect to the funding of (i) all Cash distributions to be made to Holders of Claims on the Effective Date in accordance with this Plan, other than the payment of Cash Distributable Assets to Holders of DIP Claims; (ii) the Professional Fee Escrow Account, (iii) the Wind-Down Reserve (inclusive of any amounts deposited in the Wind-Down Reserve after the Effective Date, which amounts shall not be Distributable Assets except to the extent of the Liquidating Trust's reversionary interest therein), (iv) the Administrative / Priority Claims Reserve (inclusive of any amounts deposited in the Administrative / Priority Claims Reserve after the Effective Date, which amounts shall not be Distributable Assets except to the extent of the Liquidating Trust's reversionary interest therein), and (v) the FILO Cash Distribution; (b) the Liquidating Trust's reversionary interest in amounts remaining in the Professional Fee Escrow Account, the Wind-Down Reserve, and the Administrative / Priority Claim Reserve; and (c) any Cash proceeds or other value received on account of the liquidation of Liquidating Trust Assets not otherwise deposited into the Administrative / Priority Claims Reserve or Wind-Down Reserve in accordance with the Wind-Down Budget or this Plan.

70.    "*Distributable Assets Account*" means a segregated bank account controlled by the DIP Agent and administered by the Liquidating Trustee, in which Cash Distributable Assets shall be held prior to disbursement in accordance with the terms of this Plan.

71.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

72.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article XI.A of the Plan have been satisfied or waived in accordance with Article XI.B of the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

73.    "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

74.    "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code.

75.    "*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended.

6

76.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 upon the commencement of the applicable Debtor's Chapter 11 Case.

77.    "*Exchange Act*" means the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a et seq, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

78.    "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such:  (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each of the Wind-Down Debtors; (d) the Committee and each of its members; (e) with respect to each of the foregoing Entities in clauses (a) through (d), each such Entity's current and former control persons (including any officers), directors, members of any committees of any Entity's board of directors or managers, equity Holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys (including any attorneys or other professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

79.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

80.    "*Existing Equity Interests*" means, collectively, the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into or exercisable for the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, or other equity, ownership, or profit interests of any Debtors (in each case, whether or not arising under or in connection with any employment agreement).

81.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

82.    "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court or its authorized Designee in the Chapter 11 Cases.

83.    "*FILO Cash Distribution*" means Cash in the amount of $600,000.00 to be distributed to Holders of Allowed Prepetition FILO Claims.

84.    "*Final Financing Order*" means the *Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 2536].[2]

85.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to appeal, move for reargument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for reargument, reconsideration, or rehearing or petition for certiorari has been timely taken or Filed, or as to which any appeal that has been taken, motion for reargument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be Filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

---

[2]    The Final Financing Order amended the order previously entered by the Bankruptcy Court at Docket No. 1396.

86.    "*Financing Orders*" means, collectively, the Interim Financing Order and Final Financing Order.

87.    "*General Unsecured Claim*" means any Claim (including any Deficiency Claim which is not otherwise entitled to priority under section 507 of the Bankruptcy Code) other than a Secured Claim, that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) an Other Secured Claim, (d) an Other Priority Claim, (e) a Settled Priority Claim, (f) a DIP Claim, (g) a Prepetition FILO Claim, (h) an Intercompany Claim, or (i) a Section 510(b) Claim.

88.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

89.    "*Holder*" means any holder of an Allowed Claim or Interest.

90.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

91.    "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, indemnification agreements, employment contracts, or trust agreements, for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, other Professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

92.    "*Indemnification Right*" means the Debtors' indemnification rights against any manufacturer, distributor, supplier, or other party, with respect to any of the Debtors' products, including by way of contract, statute, common law, or otherwise.

93.    "*Indenture Trustee Fees*" means all reasonable and documented compensation, fees, expenses, disbursements and indemnity claims, including, without limitation, attorneys' and agents' fees, expenses, and disbursements, incurred by the 1.5L Indenture Trustee or 3L Indenture Trustee, whether prior to or after the Petition Date and whether prior to or after the Effective Date, to the extent the Debtors are obligated to pay such compensation, fees, expenses, and disbursements under the 1.5L Notes and 3L Notes, respectively; *provided* that the Indenture Trustee Fees payable or required to be paid hereunder shall be limited to amounts allocated to the payment of such fees in the Approved Budget.

94.    "*Insurance Policies*" means, collectively, insurance policies, including commercial general liability policies, punitive damages policies, products liability policies, life sciences policies, D&O Liability Insurance Policies, and any of the Debtors' rights under any third parties' insurance policies.

95.    "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate against a Debtor.

96.    "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor or non-Debtor subsidiary or Affiliate.

97.    "*Interest*" means any Equity Security in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

98.    "*Interim Financing Order*" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 143].

99.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

100.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

101.    "*Liquidating Trust*" means the trust established pursuant to this Plan, the Liquidating Trust Agreement, and the Confirmation Order, to be established and administered in accordance with the terms set forth in Article IV.C hereof.

102.    "*Liquidating Trust Agreement*" means the agreement, to be included in the Plan Supplement and amended from time to time thereafter in accordance with its terms, establishing and setting forth the terms and conditions which shall, in conjunction with this Plan and the Confirmation Order, govern the administration of the Liquidating Trust, which agreement shall be in a form acceptable to the Debtors and the DIP Agent.

103.    "*Liquidating Trust Assets*" means the assets transferred to and administered by the Liquidating Trust in accordance with this Plan and the Restructuring Steps Memorandum, including (a) Distributable Assets, (b) amounts held in the Wind-Down Reserve and Administrative / Priority Claims Reserve, in each case to be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement, and (c) any assets (including Causes of Action) which are retained by or vest in the Wind-Down Debtors and transferred to the Liquidating Trust in accordance with this Plan and the Restructuring Steps Memorandum.

104.    "*Liquidating Trust Beneficiaries*" has the meaning ascribed to such term in Article IVC.2.

105.    "*Liquidating Trustee*" means the trustee of the Liquidating Trust to be appointed in accordance with this Plan and the Liquidating Trust Agreement.

106.    "*Local 1776 Agreement*" means that certain Collective Bargaining Agreement, by and between Rite Aid of Pennsylvania, LLC and Rite Aid of New Jersey, Inc., and the United Food and Commercial Workers Union, Local No. 1776KS, Philadelphia Division, Northeast Division, and Reading Division, effective September 21, 2023 (as may be altered, amended, modified, or supplemented in accordance therewith from time to time).

107.    "*McKesson*" means, collectively, the McKesson Corporation and certain corporate Affiliates, as creditors and contract counterparties in the Chapter 11 Cases.

108.    "*McKesson 503(b)(9) Claim*" means any Claim held by McKesson against any Debtor entitled to priority under section 503(b)(9) of the Bankruptcy Code.

109.    "*McKesson Complaint*" means that certain Complaint to Avoid and Recover Avoidable Transfers, for a Declaratory Judgment, and for Equitable Subordination filed in *Rite Aid Corp.* v. *McKesson Corp. (In re New Rite Aid, LLC)*, Adv. Proc. No. 25-01316-MBK (Bankr. D.N.J. Jul. 31, 2025) [Docket No. 1] (together with any amendments thereto).

110.    "*McKesson Equity Distribution*" means the distribution to McKesson of 100% of the New Equity Interests pursuant to this Plan and the Confirmation Order, in accordance with the Restructuring Steps Memorandum.

111.    "*McKesson Inventory Sales*" means the sales of certain branded and generic inventory of the Debtors to McKesson in accordance with the Restructuring Support Agreement.

112.    "*McKesson Inventory Sale Agreement*" means that certain Asset Purchase Agreement by and between McKesson Corporation and Debtor Rite Aid of New Jersey, Inc., dated as of September 18, 2025 and as from time to time amended and/or restated, as attached and approved pursuant to that certain *Notice of Successful Bidder with Respect to Certain of the Debtors' Pharmacy Assets* [Docket No. 2500].

113.    "*McKesson Motion to Compel*" means the *Motion of McKesson Corporation for Entry of an Order (A) Allowing Administrative Expense Claim, (B) Compelling Immediate Payment Thereof, and (C) Granting Related Relief* [Docket No. 655].

114.    "*McKesson Secured Claim*" means any Claim held by McKesson that is Secured.

115.    "*McKesson Supply Documents*" means that certain Supply Agreement dated as of August 30, 2024 (as amended restated, supplemented, or otherwise modified from time to time and in effect on the Petition Date) together with the Supply Documents (as defined therein) by and among McKesson and Rite Aid Corporation.

116.    "*New Board*" means the board of directors of Reorganized New Rite Aid.

117.    "*New Equity Interests*" means the common stock, limited liability company membership units, or functional equivalent thereof of the Reorganized Debtors having the terms set forth in the New Governance Documents to be issued on the Effective Date subject to the terms and conditions set forth in this Plan.

118.    "*New Governance Documents*" means the form of certificate or articles of incorporation, bylaws, limited liability company agreement, partnership agreement, or such other applicable formation documents of the Reorganized Debtors, each of which shall be included in the Plan Supplement and consistent with the Restructuring Support Agreement in all respects, including the consent rights set forth therein.

119.    "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; (b) a Priority Tax Claim; or (c) a Settled Priority Claim.

120.    "*Other Secured Claim*" means any Secured Claim (including Secured Tax Claims), other than (a) a Prepetition FILO Claim or (b) a DIP Claim.

121.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code and shall include, without limitation, the Liquidating Trust and the Liquidating Trustee.

122.    "*Petition Date*" means May 5, 2025, the date on which the Debtors commenced the Chapter 11 Cases.

123.    "*Plan*" has the meaning set forth in the Introduction.

124.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time prior to the Effective Date in accordance with the terms hereof and of the Restructuring Support Agreement, and in accordance with the Bankruptcy Code and Bankruptcy Rules), drafts of which shall be Filed by the Debtors no later than the Plan Supplement Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable:  (a) the New Governance Documents; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Retained Causes of Action, (d) the Restructuring Steps Memorandum; (e) a document listing the members of the New Board to the extent known; (f) the Liquidating Trust Agreement; (g) the Data Retention Plan; (h) the Transition Services Agreement; and (i) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  The Plan Supplement (including each document included therein) shall be in form and substance consistent with the Restructuring Support Agreement, including with respect to the consent rights set forth therein.

125.    "*Plan Supplement Deadline*" means the deadline set by the Bankruptcy Court for the filing of the Plan Supplement.

126.    "*Prepetition ABL Agent*" means Bank of America, N.A., in its capacity as administrative and collateral agent under the Prepetition ABL Credit Agreement.

127.    "*Prepetition ABL Credit Agreement*" means that certain credit agreement, dated as of August 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time and as in effect as of the Petition Date).

128.    "*Prepetition FILO Claim*" any Claim derived from, based upon, or arising under the Prepetition FILO Facility.

129.    "*Prepetition FILO Facility*" means that certain last-out term loan facility provided under the Prepetition ABL Credit Agreement.

130.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, other than any such Claim which is a Settled Priority Claim.

131.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class or, with respect to DIP Claims, the proportion that an Allowed DIP Claim bears to the aggregate amount of Allowed DIP Claims.

132.    "*Professional*" means (a) any Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code, and (b) the 1L Indenture Trustee and 3L Indenture Trustee, subject to the limitations on payment of Indenture Trustee Fees set forth in this Plan.

133.    "*Professional Fee Claim*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees, and including Indenture Trustee Fees which are permitted to be paid under the Approved Budget) incurred by a Professional in the Chapter 11 Cases on or after the Petition Date and through and including the Effective Date that the Bankruptcy Court has not denied by Final Order, and which are payable only in accordance with the Approved Budget.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

134.    "*Professional Fee Escrow Account*" means an interest-bearing escrow account to be funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount in accordance with the Approved Budget and Wind-Down Budget.

135.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors or the Committee, as applicable, prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II of the Plan and shall only be payable in accordance with the Approved Budget; *provided*, *however*, that the Professional Fee Escrow Amount shall not include Indenture Trustee Fees, which will be paid in accordance with Article II.C.1.

136.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable bar date.

137.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

138.    "*Related Party*" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

139.    "*Released Party*" means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Wind-Down Debtors; (d) the Releasing Parties; (e) each current and former Affiliate of each Entity in clauses (a) through (d); (f) each Related Party of each Entity in clauses (a), (b), (c), and (e) (including Holders of Existing Equity Interests in Class 7); (g) each current and former Affiliate of each Entity in

clauses (d) through (f) and the following clause (h); and (h) each Related Party of each Entity in clauses (d) through (g) and this clause (h); *provided* that, in each case, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

140.    "*Releasing Party*" means, collectively, in each case solely in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Wind-Down Debtors; (d) the Agents; (e) the DIP Secured Parties; (f) McKesson; (g) the Committee (and each of its members, solely in its capacity as such); (h) the Liquidating Trustee on behalf of the Liquidating Trust; (i) the 1.5L Indenture Trustee; (j) the 3L Indenture Trustee; (k) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (l) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (m) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (n) all Holders of Claims who vote or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (o) each current and former Affiliate of each Entity in clauses (a) through (n); and (p) each Related Party of each Entity in clauses (a) through clause (o).

141.    "*Reorganized Debtors*" means the Debtors in which the New Equity Interests are to be issued to McKesson via the McKesson Equity Distribution in accordance with the Restructuring Steps Memorandum.

142.    "*Reorganized New Rite Aid*" means the successor in interest of New Rite Aid, LLC as determined in accordance with the Restructuring Steps Memorandum.

143.    "*Restructuring Steps Memorandum*" means a document to be included in the Plan Supplement that will set forth a summary of the transaction steps to complete the Restructuring Transactions, which shall be included in the Plan Supplement and subject to the consent rights applicable thereto under the Restructuring Support Agreement.

144.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement by and among the Debtors and the non-Debtor parties thereto, dated as of August 31, 2025, attached as Exhibit B to the Disclosure Statement.

145.    "*Restructuring Transactions*" means the transactions to be consummated pursuant to the Plan.

146.    "*Retained Causes of Action*" means any Causes of Action retained pursuant to this Plan in accordance with Article IV.L and the Plan Supplement.  For the avoidance of doubt, no claim or Cause of Action against any Released Party shall be a Retained Cause of Action unless such claim or Cause of Action is listed in the Schedule of Retained Causes of Action.

147.    "*Retiree Plans*" means all plans for the provision of "retiree benefits" (as such term is defined in section 1114 of the Bankruptcy Code) sponsored by or participated in by any of the Debtors.

148.    "*Rite Aid 401(k) Plan*" means, collectively, the Rite Aid 401(k) Plan, the Rite Aid Corporation 401(k) Plan for Collectively Bargained Employees and the Thrifty Payless, Inc. 401(k) Retirement Savings Plan for certain Collectively Bargained Pharmacists

149.    "*Rite Aid Plan Sponsor Entity*" has the meaning ascribed to such term in Article V.G.

150.    "*Rules*" means Rule 501(a)(1), (2), (3) and (7) of the Securities Act.

151.    "*Sale Order*" means any Bankruptcy Court order approving the Debtors' entry into one or more purchase agreements and the sale of assets pursuant to section 363 of the Bankruptcy Code.

152.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means that certain schedule of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan and (a) associated Cure Costs proposed by the Debtors and (b) to the extent any Executory Contract or Unexpired Lease listed therein is to be assumed and assigned to any Entity which is not a Debtor, Reorganized Debtor,

or Wind-Down Debtor, indicating the applicable third-party assignee, as such schedule may be amended, modified, or supplemented from time to time by the Debtors in accordance with Article V of the Plan, including any modifications thereto, which shall be included in the Plan Supplement.

153.    "*Schedule of Retained Causes of Action*" means a schedule of certain Causes of Action to be retained under the Plan, which shall be included in the Plan Supplement.

154.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

155.    "*Section 510(b) Claim*" means any Claim arising from:  (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

156.    "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a Secured Claim.

157.    "*Secured Tax Claim*" means any Secured Claim that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

158.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

159.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

160.    "*Settled Priority Claim*" means any Claim with respect to which the Holder thereof has, pursuant to the Administrative Claims Procedures, consented or been deemed to consent to receiving an Administrative Claims Procedures Distribution on account thereof.

161.    "*Solicitation Materials*" means all solicitation materials in respect of the Plan.

162.    "*Specified Receipts*" means, collectively, (i) funds received by the Debtors or a Debtor Employee Benefit Plan or, following the Effective Date, the Liquidating Trustee, in respect of the prescription rebate program maintained by the Debtors and (ii) proceeds from the sale of Subsequent Inmar Inventory (as defined in the McKesson Inventory Sale Agreement).

163.    "*Statutory Fees*" means fees arising under section 1930(a)(6) of the Judicial Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

164.    "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article X.D of the Plan.

165.    "*Transition Services Agreement*" means an agreement between the Reorganized Debtors and Wind-Down Debtors (as administered by the Liquidating Trustee), if any, to be executed on the Effective Date, with respect to the provision of transition services by the Wind-Down Debtors to the Reorganized Debtors, which agreement shall be in form and substance satisfactory to each of the DIP Agent and McKesson.

166.    "*U.S. Trustee*" means the United States Trustee for the District of New Jersey.

167.     "*Undeliverable Distribution Reserve*" has the meaning set forth in <u>Article VIII.B</u> hereof.

168.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

169.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

170.     "*Voting Deadline*" means the deadline for voting on the Plan as established pursuant to the Final Order conditionally approving the Disclosure Statement.

171.     "*Wind-Down*" means the wind-down, dissolution, and liquidation of the Estates of the Wind-Down Debtors on and after the Effective Date, to be administered by the Liquidating Trust.

172.     "*Wind-Down Budget*" means a budget, which shall be included in the Plan Supplement and subject to the consent rights applicable thereto under the Restructuring Support Agreement, for the activities and expenses to be incurred in connection with the Wind-Down including, for the avoidance of doubt, all Statutory Fees relating to any of the Debtors or their Chapter 11 Cases, and which shall include amounts necessary to fund the Administrative / Priority Claims Reserve, the Professional Fee Escrow Amount and the Wind-Down Reserve.

173.     "*Wind-Down Debtors*" means any Debtor which is not a Reorganized Debtor.

174.     "*Wind-Down Equity*" has the meaning ascribed to such term in <u>Article IV.K</u>.

175.     "*Wind-Down Reserve*" means a segregated account administered by the Liquidating Trustee and established in accordance with <u>Article VIII.C</u> and funded in accordance with the Wind-Down Budget.

    *B.*     *Rules of Interpretation.*

    For purposes of this Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (f) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (g) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (h) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (i) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws; (j) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (k) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (n) any effectuating provisions may be interpreted by the Debtors, the Reorganized Debtors, or the Liquidating Trust in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval

14

of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (o) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (p) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (q) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (r) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors or the Wind-Down Debtors shall mean the Debtors and the Reorganized Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the applicable Debtor.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the relevant document in the Plan Supplement shall control (except as expressly provided in such Plan Supplement document). In the event of any inconsistency between the Plan or Plan Supplement, on the one hand, and the Confirmation Order on the other hand, the Confirmation Order shall control, except as expressly provided therein.

G.      *Nonconsolidated Plan.*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for substantive consolidation of any of the Debtors.

H.      *Consultation, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement shall be incorporated herein by this reference and fully enforceable as if stated in full herein. In the case of conflict with respect to consultation, information, notice, and

15

consent rights between the Restructuring Support Agreement, on the one hand, and the Plan, on the other hand, the Restructuring Support Agreement as in effect on the applicable date shall control and govern.

# ARTICLE II
# ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE
# CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.       *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors, the Reorganized Debtors, or the Liquidating Trust, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, Settled Priority Claims, and McKesson 503(b)(9) Claims) will receive, in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with Article VIII.D and the following: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter), without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Liquidating Trust, as applicable; or (e) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided*, *however*, that the distributions to Holders of Administrative Claims occurring after the Effective Date in accordance with the foregoing provisos (b) through (e) shall be made exclusively from the Administrative / Priority Claims Reserve, and the Reorganized Debtors shall have no obligation to pay any Administrative Claims.

Except for Professional Fee Claims, Claims for the fees addressed in the following Article II.B, DIP Claims, McKesson 503(b)(9) Claims, Settled Priority Claims (to the extent set forth in Article II.E), and Administrative Claims previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors or the Liquidating Trust, as applicable, no later than the Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Debtors or the Liquidating Trust and the requesting party on or before the Claims Objection Deadline. The Reorganized Debtors shall have no role in the adjudication of the Administrative Claims. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request on or before the Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Liquidating Trust, Wind-Down Debtors, the Reorganized Debtors, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtors, the Liquidating Trust, the Wind-Down Debtors, the Reorganized Debtors, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

B.       *Payment of Fees and Expenses under Financing Orders.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Liquidating Trust, as applicable, shall pay all accrued and unpaid fees, expenses, disbursements, contribution or indemnification

obligations, including without limitation, attorneys' and agents' fees, expenses, and disbursements incurred by each of the DIP Agents and the DIP Lenders, and the Prepetition ABL Agent, whether incurred prior to or after the Petition Date, in each case to the extent payable or reimbursable under or pursuant to the Financing Orders and in accordance with the Approved Budget. Such fees, expenses, disbursements, contribution, or indemnification obligations shall constitute Allowed Administrative Claims. Nothing herein shall require the DIP Agents, the DIP Lenders, the Prepetition ABL Agent, or their respective professionals, to File applications, a Proof of Claim, or otherwise seek approval of the Court as a condition to the payment of such Allowed Administrative Claims.

      C.     *Professional Fee Claims.*

      1.     <u>Final Fee Applications and Payment of Professional Fee Claims</u>.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Liquidating Trustee shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Allowance and payment of Professional Fee Claims (including any Professional Fee Claims for Indenture Trustee Fees) shall be consistent with, and limited to the aggregate amounts set forth for the applicable professional in, the Approved Budget. For the avoidance of doubt, any Professional Fee Claims in excess of the Approved Budget shall be treated solely as General Unsecured Claims and shall not be entitled to priority under sections 503 or 507 of the Bankruptcy Code, or otherwise.

Professional Fee Claims for Indenture Trustee Fees shall be paid in cash on the Effective Date or as soon as reasonably practicable thereafter in the amount allocated to the payment of such fees in the Approved Budget, without any requirement that the 1.5L Indenture Trustee or 3L Indenture Trustee file any application with the Bankruptcy Court for payment or Allowance of such Claims, and no Reorganized Debtor shall have any liability for any Professional Fee Claims for Indenture Trustee Fees.

      2.     <u>Professional Fee Escrow Account</u>.

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount, in accordance with the terms of the Final Financing Order and the Approved Budget. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates, the Debtors, the Wind-Down Debtors, or the Liquidating Trust (notwithstanding the Liquidating Trustee's obligation to administer the Professional Fee Escrow Account in accordance with this section) and shall not be Distributable Assets except as provided for in the following paragraph.

The Liquidating Trustee shall cause the amount of Professional Fee Claims owing to the Professionals to be paid in Cash to such Professionals by the applicable escrow agent from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors', the Wind-Down Debtors' and the Liquidating Trust's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account and such Allowed Professional Fee Claims shall also be payable from the Wind-Down Reserve, Distributable Assets, and Administrative / Priority Claim Reserve if not paid in full from the Professional Fee Escrow Account; *provided*, *further*, that no payment of Professional Fee Claims from the Administrative / Priority Claim Reserve shall reduce or otherwise impair the Administrative Claims Procedures Distributions to be made to Holders of Settled Priority Claims. Notwithstanding the foregoing, however, no Reorganized Debtor shall have any liability for any Professional Fee Claims. When all Professional Fee Claims Allowed by the Bankruptcy Court have been

irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court and in accordance with the Final Financing Order, any remaining funds held in the Professional Fee Escrow Account shall constitute Distributable Assets without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

Professional Fee Claims for Indenture Trustee Fees shall be paid in accordance with the final paragraph of the foregoing Article II.C.1, and this Article II.C.2 shall not apply to Professional Fee Claims for Indenture Trustee Fees.

3. Professional Fee Amount.

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors or the Committee, or under the 1.5L Indenture or 3L Indenture, as applicable, before and as of the Effective Date which are projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days prior to the anticipated Effective Date; *provided* that such estimates shall be consistent with the Approved Budget and shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account (or paid on account of Professional Fee Claims for Indenture Trustee Fees in accordance with the foregoing Article II.C.1, as applicable).

4. Post-Effective Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals, if any, from the Wind-Down Reserve in accordance with the Wind-Down Budget. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors or Liquidating Trustee on behalf of Liquidating Trust or Wind-Down Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court (but, with respect to the Liquidating Trustee, in accordance with the applicable terms of this Plan and the Liquidating Trust Agreement).

D. Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code, and paid (a) on the Effective Date or (b) from the Administrative / Priority Claims Reserve thereafter in accordance with Article VIII; *provided* that the Reorganized Debtors shall have no obligation to pay any Priority Tax Claims.

E. Settled Priority Claims.

Each Holder of a Settled Priority Claim shall receive and has, pursuant to the Administrative Claims Procedures, consented to or been deemed to consent to receive in satisfaction of section 1129 of the Bankruptcy Code, in full and final satisfaction, compromise, settlement, release, and discharge of such Claims, to the extent not received prior to the Effective Date, its Administrative Claims Procedures Distribution. For the avoidance of doubt, any Holder of a Settled Priority Claim that received an Election Form indicating a Recorded Amount (each as defined in the Administrative Claims Procedures) shall not be required to file a Proof of Claim or request for payment of such Claim, as applicable, and such Settled Priority Claims shall be deemed Allowed in such Recorded Amounts except as otherwise agreed between the Debtors and any such Holder or provided pursuant to a Final Order of the Bankruptcy

18

Court with respect to such Claim; *provided* that the Reorganized Debtors shall have no obligation to pay any Settled Priority Claims.

Distributions on account of Settled Priority Claims shall be made (a) if such Settled Priority Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; (b) if such Settled Priority Claim is not Allowed as of the Effective Date, no later than 10 Business Days after the date on which (i) an order Allowing such Settled Priority Claim becomes a Final Order or (ii) the Debtors or the Liquidating Trustee, as applicable, determine that such Settled Priority Claim is Allowed pursuant to Article IX.A hereof, or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by the Holder of such Settled Priority Claim and the Debtors or the Liquidating Trustee, as applicable; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided*, *however*, that the distributions on account of Settled Priority Claims occurring after the Effective Date in accordance with the foregoing provisos (b) through (d) shall be made exclusively from the Administrative / Priority Claims Reserve.

F.    *McKesson 503(b)(9) Claims*.

In accordance with the Restructuring Support Agreement, McKesson has agreed to receive, on account of and in full and final satisfaction, compromise, settlement, release and discharge of the McKesson 503(b)(9) Claims, the McKesson Equity Distribution. The McKesson Equity Distribution shall be issued and delivered in accordance with the Restructuring Steps Memorandum.

G.    *DIP Claims.*

As of the Effective Date, the DIP Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Credit Agreement including principal, interest, fees, costs, other charges, and expenses (but excluding, for the avoidance of doubt, professional fees to be paid in accordance with Article II.B). In full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of an Allowed DIP Claim shall receive (a) its Pro Rata share of any Distributable Assets distributed by the Debtors on the Effective Date and (b) an interest in the Liquidating Trust entitling it to its Pro Rata share of any distributions of Distributable Assets after the Effective Date. Distributions of the Distributable Assets will be made from the Effective Date through the Dissolution Date, in accordance with Article VIII.E; *provided* that the Reorganized Debtors shall have no obligation to pay any DIP Claims.

Upon the Dissolution Date, the DIP Claims shall be deemed satisfied, and in accordance with the terms of this Article II.G, the Final Financing Order, and the DIP Documents, all Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

Pursuant to the DIP Credit Agreement, all distributions made under this Plan on account of DIP Claims shall be made to the applicable DIP Agent for distributions to the applicable DIP Lender in accordance with the DIP Credit Agreement unless otherwise agreed upon in writing by the DIP Agent, the Liquidating Trustee, and the applicable DIP Lender. The DIP Agent shall hold or direct distributions for the benefit of the applicable Holders of DIP Claims. The DIP Agent shall retain all rights as DIP Agent under the DIP Documents in connection with the delivery of the distributions to the DIP Lenders. The DIP Agent shall not have any liability to any person with respect to such distributions made or directed to be made.

### ARTICLE III
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or

Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Prepetition FILO Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

    *B.*     *Treatment of Claims and Interests.*

Subject to <u>Article IV</u> hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of (a) the Effective Date and (b) if such Claim is not Allowed as of the Effective Date, the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter, with distributions on account of the foregoing proviso (b) to Claims in Class 1 and Class 2 being made exclusively from the Administrative / Priority Claims Reserve.

    1.    <u>Class 1 – Other Secured Claims</u>

    (a)    *Classification*:  Class 1 consists of all Other Secured Claims.

    (b)    *Treatment*:  Each Holder of an Allowed Other Secured Claim, unless such Holder agrees to less favorable treatment, shall receive, at the option of the Debtors or the Liquidating Trust, as applicable, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim:

    (i)    payment in full in Cash;

    (ii)    the collateral securing its Other Secured Claim;

    (iii)    Reinstatement of its Other Secured Claim; or

(iv)     Such other treatment as to render such Holder's Allowed Other Secured Claim unimpaired pursuant to the Bankruptcy Code.

(c)     *Voting*: Class 1 is Unimpaired. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.     <u>Class 2 – Other Priority Claims</u>

(a)     *Classification*: Class 2 consists of all Other Priority Claims.

(b)     *Treatment*: Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, shall receive, at the option of the applicable Debtor or the Liquidating Trust, as applicable, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim:

(i)     payment in full in Cash; or

(ii)     such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)     *Voting*: Class 2 is Unimpaired. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.     <u>Class 3 – Prepetition FILO Claims</u>

(a)     *Classification*: Class 3 consists of all Prepetition FILO Claims.

(b)     *Allowance of Prepetition FILO Claims*: The Prepetition FILO Claims shall be Allowed in the aggregate amount of $60 million.

(c)     *Treatment*: Each Holder of an Allowed Prepetition FILO Claim shall receive, except to the extent that a Holder of an Allowed Prepetition FILO Claim and the Debtors agree to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, its Pro Rata share of the FILO Cash Distribution.

(d)     *Voting*: Class 3 is Impaired. Therefore, Holders of Prepetition FILO Claims are entitled to vote to accept or reject the Plan.

4.     <u>Class 4 – General Unsecured Claims</u>

(a)     *Classification*: Class 4 consists of all General Unsecured Claims, including Deficiency Claims. Pursuant to section 506(a) of the Bankruptcy Code, all 1.5L Notes Claims, 3L Notes Claims, and McKesson Secured Claims are Deficiency Claims, and shall be treated in accordance with this <u>Article III.B.4</u> (excluding, for the avoidance of doubt, any Deficiency Claim held by McKesson which is a McKesson 503(b)(9) Claim).

(b)     *Treatment*: General Unsecured Claims shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims.

      (c)    *Voting:*  Class 4 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are conclusively deemed to have rejected the Plan.  Therefore, Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – Intercompany Claims</u>

      (a)    *Classification*:  Class 5 consists of all Intercompany Claims.

      (b)    *Treatment*:  Each Intercompany Claim shall be, at the option of the Debtors or Liquidating Trust, as applicable, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as is determined by the Debtors; *provided* that any Intercompany Claims held by or assertable against any Reorganized Debtor shall be released without any distribution on account of such Intercompany Claims.

      (c)    *Voting*:  Holders of Claims in Class 5 are conclusively presumed to have accepted or deemed to have rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – Intercompany Interests</u>

      (a)    *Classification*:  Class 6 consists of all Intercompany Interests.

      (b)    *Treatment*:  Each Intercompany Interest shall be, at the option of the Debtors, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interest, or such other treatment as is reasonably determined by the Debtors but in all respects in accordance with the Restructuring Steps Memorandum.

      (c)    *Voting*:  Holders of Interests in Class 6 are conclusively presumed to have accepted or deemed to have rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7 – Existing Equity Interests</u>

      (a)    *Classification*:  Class 7 consists of all Existing Equity Interests in New Rite Aid, LLC.

      (b)    *Treatment*:  All Existing Equity Interests in New Rite Aid, LLC will be cancelled and extinguished, and Holders of Existing Equity Interests shall receive no recovery on account of such Interests.

      (c)    *Voting*:  Class 7 is Impaired.  Holders of Existing Equity Interests in New Rite Aid, LLC are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Equity Interests in New Rite Aid, LLC are not entitled to vote to accept or reject the Plan.

8.    <u>Class 8 – Section 510(b)</u>

      (a)    *Classification*:  Class 8 consists of all Section 510(b) Claims.

       (b)       *Treatment:*  Section 510(b) Claims shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims.

       (c)       *Voting:*  Class 8 is Impaired.  Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan.  Therefore, Holders (if any) of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than $0.00 as of the date of the Combined Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to <u>Article III.B</u> of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting or deemed to reject Class of Claims or Interests.  The Debtors, subject to the terms of the Restructuring Support Agreement, including the consent rights set forth therein, reserve the right to modify the Plan prior to Confirmation and in accordance with <u>Article XII</u> hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.      *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Liquidating Trust reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, to the maximum extent permitted by the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute and be deemed a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan or Confirmation Order. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Articles VI and XIV hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final, shall be in full satisfaction of such Claims, and shall be free and clear of the Liens of any Entity.

B.      *McKesson Equity Distribution & Reorganized Debtors.*

On the Effective Date (or before the Effective Date, as specified in the Restructuring Steps Memorandum), the Debtors or the Reorganized Debtors (as applicable) shall take all actions set forth in the Restructuring Steps Memorandum, and enter into any transaction and take any actions as may be necessary or appropriate to effect the Restructuring Transactions described herein (as determined by the Debtors and McKesson in their reasonable discretion), subject in all respects to the terms set forth herein, including, as applicable:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (d) the issuance of New Equity Interests constituting the McKesson Equity Distribution and any other securities necessary to implement the Restructuring Transactions, all of which shall be authorized and approved in all respects; (e) the execution and delivery of the Definitive Documents, and (f) all other actions that the Debtors and McKesson determine to be necessary or appropriate in connection with the Consummation of the Plan, in their reasonable discretion.

The Confirmation Order shall, and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, approved by, or necessary to effectuate the Plan, including the Restructuring Transactions, including, for the avoidance of doubt, any and all actions required to be taken under applicable non-bankruptcy law.

1.      Reorganized Debtors.

On the Effective Date, in accordance with the terms of the New Governance Documents, the New Board shall be appointed by McKesson, and the Reorganized Debtors shall adopt the New Governance Documents.

2.      Corporate Existence of the Reorganized Debtors.

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, each Reorganized Debtor shall continue to exist on and after the Effective Date as a separate legal Entity with all the powers available to such Entity pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended, amended and restated, or replaced under the Plan or otherwise, including pursuant to the New Governance Documents, in each case consistent with the Plan.  To

the extent such documents are amended in accordance therewith, such documents are deemed to be amended, amended and restated, or replaced pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  On or after the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, and any Reorganized Debtor may be disposed of, dissolved, wound down, or liquidated without supervision of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

3.      Vesting of Assets in Reorganized Debtors.

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, or entered into in connection with or pursuant to, the Plan or the Plan Supplement, on the Effective Date (and subject in all respects to the terms of the Restructuring Steps Memorandum), all Reorganized Debtor Assets (as defined in the Restructuring Steps Memorandum) shall vest in each respective Reorganized Debtor free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances; *provided* that Retained Causes of Action, if any, shall be treated in accordance with Article IV.L.  On and after the Effective Date, except as otherwise provided in the Plan, including Article X hereof, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, and compromise or settle any claims, Interests, or Causes of Action retained by them or arising after the Effective Date against them without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

4.      The New Equity Interests.

On the Effective Date, New Rite Aid, LLC is authorized to issue or cause to be issued and shall, as provided for in the Restructuring Steps Memorandum, issue the New Equity Interests on account of the McKesson Equity Distribution without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.  The New Equity Interests shall be issued and distributed free and clear of all Liens, Claims, and other Interests.  All of the New Equity Interests issued pursuant to the Plan, as contemplated by the Restructuring Steps Memorandum, shall be duly authorized and validly issued and shall be full paid and non-assessable.

5.      Cash on Hand.

Except as otherwise provided herein, the Debtors, Reorganized Debtors, or Liquidating Trust, as applicable, shall use Cash on hand in accordance with the Wind-Down Budget to fund distributions to certain Holders of Claims solely in accordance with the terms of the Plan.

6.      Creation of the Administrative / Priority Claims Reserve and the Wind-Down Reserve.

On or before the Effective Date, the Debtors shall, with Cash on hand, fund each of the Administrative / Priority Claims Reserve and Wind-Down Reserve in accordance with the Wind-Down Budget and Articles VIII.C and D hereof.

*C.      Liquidating Trust & Wind-Down.*

1.      Creation of the Liquidating Trust; Transfer of Liquidating Trust Assets.

Prior to the Effective Date in accordance with the Restructuring Steps Memorandum, the Liquidating Trust shall be created in accordance with the Liquidating Trust Agreement for the benefit of the Liquidating Trust Beneficiaries.  Upon the execution of the Liquidating Trust Agreement and its effectiveness in accordance with its terms, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the

Liquidating Trust, to be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement. The Liquidating Trust shall be a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations.  The Liquidating Trust shall be established for the primary purposes of (a) liquidating the Liquidating Trust Assets transferred to the Liquidating Trust in accordance with this Plan and the Restructuring Steps Memorandum, (b) reconciling Claims asserted against the Debtors and the Wind-Down Debtors, and (c) distributing the proceeds of the Liquidating Trust Assets in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust.  Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the transferring Debtor, Wind-Down Debtor, or Reorganized Debtor, as applicable, will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust.  To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests. The reasonable costs and expenses of administering the Liquidating Trust shall be paid from the Wind-Down Reserve in accordance with the Wind-Down Budget.

In accordance with this Plan and the Restructuring Steps Memorandum, on or before the Effective Date, the Liquidating Trust Assets shall be irrevocably transferred and deemed to be transferred by the applicable Debtor, Reorganized Debtor, or Wind-Down Debtor, as applicable, free and clear of Claim, Liens, Interests, Encumbrances, and contractually imposed restrictions except as otherwise provided herein.  No other entity shall have any interest, legal, beneficial or otherwise, in the Liquidating Trust Assets upon the assignment and transfer of such assets to the Liquidating Trust except as set forth in the Liquidating Trust Agreement.

2.    Beneficiaries of the Liquidating Trust.

The beneficiaries of the Liquidating Trust (the "Liquidating Trust Beneficiaries") shall be the (a) with respect to distributions of Distributable Assets, Holders of DIP Claims and (b) solely with respect to amounts held in the Administrative / Priority Claims Reserve, Holders of all Allowed Other Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Settled Priority Claims which are not paid in full on the Effective Date of the Plan in accordance with its terms.

3.    Powers of the Liquidating Trustee.

As of the Effective Date, the existing board of directors or managers, as applicable, of each of Wind-Down Debtor shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity Holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.  The Liquidating Trustee shall be appointed as the sole manager, sole director, and sole officer of each Wind-Down Debtor, succeed to the powers of, and act for each Wind-Down Debtor in the same fiduciary capacity as, each of the Wind-Down Debtors' managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order.

From and after the Effective Date and pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee shall be the sole representative of, and shall act for, the Wind-Down Debtors.  The Liquidating Trustee shall have the authority to, as set forth in Article VII hereof, (a) hold legal title to and sell, liquidate, or otherwise dispose of any and all of the Wind-Down Debtors' assets (including, for the avoidance of doubt, through the dissolution of any non-Debtor direct or indirect subsidiary of any Wind-Down Debtor) without any additional notice to or approval from the Bankruptcy Court; (b) effect the dissolution of any Wind-Down Debtor including as set forth in Article IV.C.5; (c) complete and file all final or otherwise required federal, state, and local tax returns required to be filed in a manner consistent with the Restructuring Steps Memorandum and pay taxes required to be paid for any of the Wind-Down Debtors, and pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of any of the Wind-Down Debtors or their Estates for any tax incurred during the administration of such Wind-Down Debtor's Chapter 11 Case, as determined under applicable tax laws; (d) represent the interests of the Wind-Down Debtors before any taxing authority in all tax matters in a manner consistent with the

Restructuring Steps Memorandum, including any action, suit, proceeding, or audit; (e) pursue, compromise, or settle Retained Causes of Action which vest in the Wind-Down Debtors and become Liquidating Trust Assets in accordance with this Plan, the Restructuring Steps Memorandum, and the Schedule of Retained Causes of Action; (f) authorize and make, through the applicable Disbursing Agent, distributions to Liquidating Trust Beneficiaries in accordance with this Plan, the Confirmation Order, or the Liquidating Trust Agreement, and shall make distributions from the Professional Fee Escrow Account on account of Professional Fee Claims in accordance with this Plan; (g) make decisions, without further Bankruptcy Court approval but subject to the terms of this Plan and the Liquidating Trust Agreement, regarding the retention or engagement of professionals, employees and consultants by the Liquidating Trust and the Liquidating Trustee, and to pay the fees and charges incurred by the Liquidating Trustee on the Liquidating Trust's behalf on or after the Effective Date for fees and expenses for professionals (including those retained by the Liquidating Trustee), disbursements, expenses or related support services relating to the Liquidating Trust, in each case from the Wind-Down Reserve; (h) if any of the Liquidating Trust Assets are situated in any state or other jurisdiction in which the Liquidating Trustee is not qualified to act as trustee:  (i) to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidating Trustee in his or her sole discretion; (ii) confer upon such trustee all the rights, powers, privileges and duties of the Liquidating Trustee hereunder, subject to the conditions and limitations of the Liquidating Trust Agreement, the Plan, and the Confirmation Order, except as modified or limited by the Liquidating Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is acting shall prevail to the extent necessary); (iii) require such trustee to be answerable to the Liquidating Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and (iv) remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidating Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trust on behalf of the Wind-Down Debtors.

4.    <u>Wind-Down Debtors.</u>

On and after the Effective Date, the Wind-Down Debtors shall continue in existence for purposes of facilitating the Liquidating Trustee's (a) resolving Disputed Claims, (b) making distributions on account of Allowed Claims as provided hereunder, (c) post-Effective Date funding the Administrative / Priority Claims Reserve and the Wind-Down Reserve in accordance with the Wind-Down Budget, (d) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (e) filing appropriate tax returns, (f) liquidating the Liquidating Trust Assets, and (g) otherwise administering the Plan in accordance with the Wind-Down Budget, as applicable.  The Liquidating Trustee shall be deemed to be substituted as the party-in-lieu of the Wind-Down Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Wind-Down Debtors to File motions or substitutions of parties or counsel in each such matter.

Subject to the terms of this Plan (including the Schedule of Retained Causes of Action) and the Confirmation Order, all of the Debtors' privileges (the "<u>Privileges</u>"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections (the "<u>Transferred Privileges</u>"), shall be transferred, assigned and delivered to the Liquidating Trust or Reorganized Debtors, as applicable, in each case without waiver, limitation or release, and shall vest with the Liquidating Trust or Reorganized Debtors, as applicable, on the Effective Date and be jointly held by the Reorganized Debtors and the Liquidating Trust on and after the Effective Date; *provided, however*, that notwithstanding the foregoing, Transferred Privileges do not include Privileges relating in any way to any rights, claims, or Causes of Action released under the Plan.  The Liquidating Trust and Reorganized Debtors shall each hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges.  No Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Reorganized Debtors and the Liquidating Trust.

5.      Dissolution of the Wind-Down Debtors.

The Liquidating Trustee may cause the dissolution of any Wind-Down Debtor pursuant to Article VII.B of the Plan.

Upon (a) the Filing with the Bankruptcy Court by the Liquidating Trustee, with the consent of the DIP Agent, of a certification that all distributions have been made and that it has completed all its duties under the Plan and (b) entry of a final decree closing the last of the Chapter 11 Cases (the date on which the foregoing (a) and (b) have occurred, the "*Dissolution Date*"), any Wind-Down Debtors not dissolved as of such time shall be deemed to be dissolved without any further action by the Liquidating Trustee, including the filing of any documents with the secretary of state for the state in which the Debtors are formed or any other jurisdiction.

Notwithstanding the foregoing, the Liquidating Trustee shall retain the authority to take all necessary actions to dissolve any Wind-Down Debtor in, and withdraw any Wind-Down Debtor from, applicable states and provinces to the extent required by applicable law. On and after the Effective Date, the filing by the Liquidating Trustee of any of the Wind-Down Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of the Debtors or any of their Affiliates.

6.      Liquidating Trust Treatment.

The Liquidating Trust is intended to be a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations.

Subject to any applicable law or definitive guidance from the IRS or a court of competent jurisdiction to the contrary (and except to the extent the Debtors determine otherwise in their discretion to treat all or any portion of the Liquidating Trust as a "qualified settlement fund," a "disputed ownership fund" and/or otherwise), the Debtors expect to treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the trustee of the Liquidating Trust will take a position on the Liquidating Trust's tax return accordingly. For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries, and (b) a second-step transfer by the Liquidating Trust Beneficiaries to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust. If the IRS were to successfully challenge the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Liquidating Trust Beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax). For example, the IRS could characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the Effective Date, the trustee(s) of the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income and loss of the Liquidating Trust among the Liquidating Trust Beneficiaries shall be determined, as closely as possible, by reference to the amount of distributions that would be received by each such beneficiary if the Liquidating Trust had sold all of the Liquidating Trust Assets at their tax book value and distributed the proceeds to the Liquidating Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit). Each Liquidating Trust beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Liquidating Trust will pertain to Liquidating Trust beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

7.    Disputed Ownership Fund Treatment.

To the extent the Debtors determine to treat the Liquidating Trust or a portion thereof as a "qualified settlement fund" under section 1.468B-1 of the Treasury Regulations or a disputed ownership fund under section 1.468B-9 of the Treasury Regulations, any appropriate elections with respect thereto shall be made and such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return may be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

D.    Release of Liens.

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates that have not been previously released shall be fully released, settled, and compromised, and the Holder of such mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Debtors' Estates shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases, at the sole expense of the Debtors or the Wind-Down Debtors, as applicable. Notwithstanding anything to the contrary in the Plan, solely with respect to the Wind-Down Debtors, the Liens securing the DIP Claims shall not be released and such Liens shall remain in full force and effect until the Dissolution Date.

E.    Cancellation of Existing Securities and Agreements.

On the Effective Date, except as otherwise specifically provided for in the Plan (including, for the avoidance of doubt, the foregoing Article IV.E: (a) the obligations under the DIP Documents, the Prepetition ABL Credit Agreement, the 1.5L Indenture, the 3L Indenture, and the McKesson Supply Documents, and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled except as set forth herein, and the Reorganized Debtors and Wind-Down Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released.

29

On or after the Effective Date, each Holder of a certificate or instrument evidencing a Claim that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture(s) or credit agreement that governs the rights of such Holder of such Claim upon such Holder's (or its nominee's or designee's) receipt of the distributions to which it is entitled pursuant to the Plan. Such surrendered certificate or instrument shall be deemed cancelled as set forth in, and subject to the exceptions set forth in, this Article IV.E; *provided* that such cancellation shall not alter the obligations or rights of any non-Debtor third parties (other than the non-Debtor Affiliates) in respect of one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for the purposes of allowing Holders to receive distributions under this Plan, charging Liens, priority of payment, and indemnification rights. If (a) the record Holder of a 1.5L Notes Claim or 3L Notes Claim is DTC or its nominee, the applicable trustee, or another securities depository or custodian thereof, and (b) the Holders of such 1.5L Notes Claims or 3L Notes Claims are represented by a global security held by or on behalf of DTC, the applicable trustee, or such other securities depository or custodian, then each such Holder of such 1.5L Notes Claim or 3L Notes Claim shall be deemed to have surrendered such Holder's note, debenture, or other evidence of indebtedness upon surrender of such global security by DTC, the applicable trustee, or such other securities depository or custodian thereof.

Notwithstanding the foregoing, (a) no Executory Contract or Unexpired Lease (i) that has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date, and (b) the DIP Credit Agreement and Prepetition ABL Credit Agreement shall continue in effect solely for the purpose of (i) allowing Holders of the DIP Claims and Prepetition FILO Claims to receive the distributions provided for under the Plan, (ii) allowing the DIP Agent and Prepetition ABL Agent to receive or direct distributions from the Debtors or the Liquidating Trust and to make further distributions to the Holders of such Claims on account of such Claims, as set forth in Article VI.A of the Plan, (iii) preserving all rights, including rights of enforcement, of the DIP Agent and Prepetition ABL Agent to indemnification or contribution pursuant and subject to the terms of the Prepetition ABL Credit Agreement in respect of any claim or Cause of Action asserted against the DIP Agent or Prepetition ABL Agent, respectively, (iv) permitting the DIP Agent and Prepetition ABL Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, (v) preserving the Liens on Avoidance Actions securing the DIP Claims, and (vi) preserving any rights of the DIP Agent and the Prepetition ABL Agents to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the Prepetition ABL Credit Agreement or DIP Credit Agreement, as applicable.

The Prepetition ABL Agent shall be released from its duties and obligations arising under the Prepetition ABL Credit Agreement and shall have no further obligation or liability except as provided in the Plan and Confirmation Order, and after the performance by the Prepetition ABL Agent and their respective representatives and Professionals of any obligations and duties required under or related to the Plan or Confirmation Order, the Prepetition ABL Agent shall be relieved of and released from any obligations and duties arising thereunder.

Except as provided in this Plan or the Confirmation Order, on the Effective Date, the DIP Agent and its respective agents, successors, and assigns shall be automatically and fully released of all of their duties and obligations associated with the applicable DIP Documents. The commitments and obligations, if any, of the DIP Lenders to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries, or any of their respective successors or assigns under the DIP Documents shall fully terminate and be of no further force or effect on the Effective Date.

F.      *Corporate Action; Restructuring Transactions.*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including, as applicable: (a) creation of the Liquidating Trust and appointment of the Liquidating Trustee; (b) implementation of the Restructuring Transactions; (c) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date), including the Restructuring Steps Memorandum. The abandonment of any Intercompany Interests which are to be abandoned pursuant to the Restructuring Steps Memorandum are accordingly deemed authorized and approved pursuant to this Plan and section 554 of the Bankruptcy Code, and, upon any such abandonment, the abandoning

30

entit(ies) shall automatically be deemed to have surrendered and relinquished all rights, title, and interest in such equity interests.

All matters provided for in the Plan or deemed necessary or desirable by the Debtors, before, on, or after the Effective Date involving the corporate structure of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, and any corporate action required by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, in connection with the Plan or corporate structure of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall be deemed to have occurred and effective as of the Effective Date (or, to the extent such actions take place prior to the Effective Date, the date on which such actions occur in accordance with the Restructuring Steps Memorandum), without any requirement of further action by the security Holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

G.      *McKesson Sale Transactions.*

Pursuant to sections 1123(a)(5)(D), 1141(c), and 1146 of the Bankruptcy Code, any transfers of property to McKesson (including indirectly on account of the McKesson Equity Distribution) pursuant to the Plan or Restructuring Steps Memorandum are approved and shall be consummated in accordance with the Restructuring Steps Memorandum, and shall be consummated free and clear of any Liens or encumbrances, including those securing the DIP Facility.

H.      *New Governance Documents.*

On the Effective Date, each Reorganized Debtor shall enter into and deliver the New Governance Documents to McKesson, and the New Governance Documents shall be deemed to be valid, binding, and enforceable in accordance with their terms, and each party, including McKesson, shall be bound thereby, in each case, and as applicable, without the need for execution by any party thereto other than the applicable Reorganized Debtor.

The New Governance Documents will prohibit the issuance of non-voting Equity Securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the New Governance Documents may be amended or restated as permitted by such documents and the laws of their respective states, provinces, or countries of incorporation or organization.

I.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors or the Wind-Down Debtors, as applicable, may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, and the instruments issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors or the Wind-Down Debtors, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

J.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to any Reorganized Debtor, a Debtor to the Wind-Down Debtor, or from the Wind-Down Debtor to the Liquidating Trust or to any other Person) of property under the Plan or pursuant to (a) the issuance, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, (b) the Restructuring Transactions, (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of

additional indebtedness by such or other means, (d) the making, assignment, or recording of any lease or sublease, or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including any Restructuring Transaction), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.      *Exemption from Securities Act Registration.*

No registration statement will be filed under the Securities Act, or pursuant to any state securities laws, with respect to the offer and distribution of securities under the Plan.  In accordance with the Restructuring Steps Memorandum, the Wind-Down Debtors shall issue equity to the Liquidating Trust evidencing the Liquidating Trust's ownership of the Wind-Down Debtors (the "Wind-Down Equity"). The Liquidating Trust shall issue interests in the Liquidating Trust to the Liquidating Trust Beneficiaries.  In accordance with the Restructuring Steps Memorandum, New Rite Aid, LLC shall issue the New Equity Interests on account of the McKesson Equity Distribution.

The issuance and distribution of the Wind-Down Equity under the Plan shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities pursuant to Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder, and similar state securities law provisions. Any such Wind-Down Equity will be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, subject to resale restrictions, and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration or an applicable exemption from registration under the Securities Act and other applicable law.

The issuance and distribution of the New Equity Interests under the Plan shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code. Thus, the New Equity Interests to be issued under the Plan (a) would not be a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) would be freely tradable and transferable by any initial recipient thereof that (i) is not an "Affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "Affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of the Bankruptcy Code.  The rights of holders of New Equity Interests, including the right to transfer such interests, will also be subject to any restrictions in the New Governance Documents, to the extent applicable.

To the extent that section 1145 of the Bankruptcy Code is inapplicable, the offering, issuance, exchange, or distribution of the New Equity Interests pursuant to the Plan, is or shall be conducted in a manner that is exempt from the registration requirements of section 5 of the Securities Act and applicable state and local securities laws, pursuant to section 4(a)(2) of the Securities Act and/or the regulations promulgated thereunder (including Regulation D), Regulation S under the Securities Act and/or another available exemption from registration under section 5 of the Securities Act.  To the extent the New Equity Interests is issued in reliance on section 4(a)(2) of the Securities Act or Regulation D thereunder or Regulation S under the Securities Act, each will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable law.  In that regard, each recipient shall be required to make customary representations to the Debtors including that each is an "accredited investor" (within the meaning of Rule 501(a) of the Securities Act) or a qualified institutional buyer (as defined under Rule 144A promulgated under the Securities Act).

The Liquidating Trust Beneficiaries' interests in the Liquidating Trust shall not be deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws. Such interests shall be uncertificated and not be transferrable (except to the extent expressly provided otherwise in the Liquidating Trust Agreement) and shall not have consent or voting rights or otherwise confer on the holders thereof any rights similar to the rights of stockholders of a corporation in respect of actions to be taken by Liquidating Trustee in connection with Liquidating Trust (except to the extent expressly provided otherwise in the Liquidating Trust Agreement). To the extent that the Liquidating Trust Beneficiaries' interests in the Liquidating Trust are deemed to be "securities", the issuance and distribution of such interests under the Plan is exempt from the registration requirements of section 5 of the Securities Act and applicable state and local securities law by section 1145 of the Bankruptcy Code. To the extent any "offer or sale" of the interests in the Liquidating Trust may be deemed to have occurred, such offer or sale is under the Plan and in exchange for Claims against one or more of the Debtors, or principally in exchange for such Claims and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code.

The Wind-Down Debtors, Reorganized Debtors, and Liquidating Trust, as applicable, need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the Wind-Down Equity, the New Equity Interests or interests in the Liquidating Trust, if any, under applicable securities laws.

L.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article X hereof, the Debtors and, on and after the Effective Date, the Reorganized Debtors and Liquidating Trust (as representative of the Wind-Down Debtors pursuant to section 1123(b)(3) of the Bankruptcy Code) shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action allocated to them in the Schedule of Retained Causes of Action, whether arising before or after the Petition Date and notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan, other than Causes of Action exculpated or released (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in this Plan, including, without limitation, Article X hereof; *provided* that no claim or Cause of Action against any Released Party shall be a Retained Cause of Action unless any such claim or Cause of Action is included in the Schedule of Retained Causes of Action, and any such claims or Causes of Action against any Released Party not included in the Schedule of Retained Causes of Action shall be deemed released and waived by the Debtors, the Reorganized Debtors, Wind-Down Debtors, and Liquidating Trust as of the Effective Date.

Retained Causes of Action shall vest in either the Wind-Down Debtors (and thereafter constitute Liquidating Trust Assets) or Reorganized Debtors as specified in the Schedule of Retained Causes of Action. Any Retained Causes of Action that vest in the Wind-Down Debtors and become Liquidating Trust Assets in accordance with this Plan and the Restructuring Steps Memorandum, and any proceeds thereof, shall be Distributable Assets.

Notwithstanding anything to the contrary contained in this Plan, on the Effective Date and in accordance with paragraph 7(a) of the Final Financing Order, all Avoidance Actions for payments made by the Debtors under $500,000 (other than payments below $500,000 made to a party that also received at least one payment equal or exceeding $500,000) (a) shall not be Retained Causes of Action, (b) shall be deemed settled, waived, discharged, and/or released by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors and any successor in interest to any such Party as of the Effective Date, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary, and (c) shall not and cannot be offered, sold, resold, pledged, delivered, allotted or otherwise transferred to or vested in any party or Entity pursuant to this Plan or otherwise.

M.      *Private Company.*

The Reorganized Debtors shall not have any class of Equity Securities listed on a national securities exchange and shall make commercially reasonable efforts to take the steps necessary to be a private company without Securities Act or Exchange Act reporting obligations upon emergence or as soon as reasonably practicable thereafter in accordance with and to the extent permitted by the Securities Act and the Exchange Act.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.       *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected (including any Executory Contract or Unexpired Lease entered into after the Petition Date) shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) have been previously assumed or rejected by the Debtors pursuant to any Bankruptcy Court order; (c) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (d) are to be assumed and assigned by the Debtors, as applicable, including through a Sale Order in connection with any sale transaction; (e) are a contract, release, or other agreement or document entered into in connection with the Plan; or (f) are an Insurance Policy; *provided* that no Insurance Policy (including the D&O Liability Insurance Policies) or obligations related thereto will be or will be deemed to have been assumed by any of the Reorganized Debtors, and no Indemnification Provision shall be assumed by any Reorganized Debtor or Wind-Down Debtor as set forth in <u>Article V.F</u> hereof. Notwithstanding the foregoing, by consent of McKesson and the Debtors, the deadline for assumption or rejection of the McKesson Supply Documents shall be extended through fifteen (15) Business Days after the earliest of (1) termination of the McKesson Inventory Sale Agreement in accordance with its terms, (2) if the Inmar Outside Date occurs prior to occurrence of the Inmar Closing, the expiration of the Initial Inmar Credit Payment Period (as defined in the McKesson Inventory Sale Agreement), and (3) if the Inmar Closing occurs, expiration of the Subsequent Inmar Credit Payment Period (as defined in the McKesson Inventory Sale Agreement).

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement or similar schedule in connection with a Sale Order, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, (a) the assumptions and assumptions and assignments of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases and (b) the rejections of any such agreements not assumed or assumed and assigned pursuant to this Plan, in each case pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein or in the Confirmation Order or any Sale Order, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is not assumed on the Effective Date pursuant to this <u>Article V.A</u>, the effective date of rejection of such Unexpired Leases shall be the later of: (a) the Effective Date, and (b) the date upon which the Debtors or the Wind-Down Debtors, as applicable, notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors or the Wind-Down Debtors surrender the premises as set forth in the foregoing proviso (b), all property remaining in the premises will be deemed abandoned free and clear of any interests, Liens, Claims, and encumbrances and landlords may dispose of such property without further notice or court order, unless otherwise agreed by the applicable lessor or pursuant to an order of the Bankruptcy Court. The Debtors shall provide each counterparty to an Unexpired Lease which is not assumed pursuant to this Plan with a notice (which notice may, for the avoidance of doubt, be included in the notice such party receives with respect to the filing of the Plan Supplement).

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the rights of counterparties to Unexpired Leases of nonresidential real property to object to the continued possession of such leased property, including the ability to conduct "going-out-of-business" sales on the properties, or failure to comply with any other lease terms or obligations, including payment of rents and charges and insurance obligations, in each case related to

34

such Unexpired Lease following entry of the Confirmation Order are expressly preserved, and the rights of such counterparties to request such objection be heard on shortened notice are preserved.

Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in, and be fully enforceable by the applicable Reorganized Debtor or Wind-Down Debtor (as indicated on the Schedule of Assumed Executory Contracts and Unexpired Leases) in accordance with its terms, except as such terms may have been modified by agreement of the parties thereto. Notwithstanding anything to the contrary to the Plan or the Confirmation Order, the Debtors may amend or otherwise modify the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date to (a) designate an Executory Contract previously included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption and assignment or (b) remove any Executory Contract or Unexpired Lease. Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor, Reorganized Debtor, or Wind-Down Debtor, as applicable.

To the maximum extent permitted by law, the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or any other transaction, event, or matter that would (a) result in a violation, breach, or default under such Executory Contract or Unexpired Lease, (b) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors under such Executory Contract or Unexpired Lease, or (c) result in the creation or imposition of a Lien upon any property or asset of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors pursuant to the applicable Executory Contract or Unexpired Lease. To the extent any provision in any such Executory Contract or Unexpired Lease restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the transactions contemplated by the Plan, the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto, and any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption thereof shall be deemed satisfied by Confirmation.

Notwithstanding anything to the contrary in the Plan, after the Confirmation Date, an Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases as of the Confirmation Date may not be rejected by the applicable Debtor(s), other than as provided for in the Plan, unless the applicable lessor has (x) consented to such rejection, (y) objected to the assumption of such Unexpired Lease and such objection remains outstanding, or (z) consented to an extension of the time period in which the applicable Debtor(s) must assume or reject such Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code, as extended pursuant to any Bankruptcy Court order (and as further extended with the applicable lessor's consent, the "*Deferred Deadline*"), in which case for purposes of clause (z) the applicable Debtor(s) shall have until the Deferred Deadline to assume or reject such Unexpired Lease, subject to the applicable lessor's right to object to such assumption or rejection. For any Unexpired Lease assumed pursuant to this paragraph, all Cure Costs shall be paid on the Effective Date or as soon as reasonably practicable thereafter, unless subject to a dispute with respect to Cure Cost, such dispute shall be addressed in accordance with Article V.C.

The Schedule of Assumed Executory Contracts and Unexpired Leases shall, with respect to the contracts and leases to be assumed by the Reorganized Debtors, be acceptable to McKesson in its sole discretion.

  B.  *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases for any Claims which would be subject to the Claims Bar Date pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the earliest of (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (b) the effective date of such rejection, or (c) the Effective Date. **Any such Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time shall be barred from asserting such Claims against the Debtors and/or receiving distributions on account of such Claims in these Chapter 11 Cases. The Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not timely filed;**

*provided* that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely filed. All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B and may be objected to in accordance with the provisions of Article IX of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Pursuant to Article III.B General Unsecured Claims shall not receive any recovery pursuant to the Plan, are not subject to the Claims Bar Date, and no Proofs of Claim with respect to such Claims must be Filed.

For the avoidance of doubt, unless otherwise agreed, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to (a) use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, or any third party, and (b) shall be authorized to assert a Claim for any and all damages arising from the abandonment of such property by filing a Claim in accordance with this Article V.B, which Claims, if any, shall be treated as General Unsecured Claims.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, the Wind-Down Debtors, or, solely with respect to any Executory Contracts or Unexpired Leases to be assumed by, or assumed and assigned to, any Reorganized Debtor, the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases and the Wind-Down Budget, pay all Cure Costs relating to Executory Contracts and Unexpired Leases that are being assumed under the Plan, if any, on such terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that, if a dispute regarding assumption or Cure Cost is unresolved as of the Effective Date, then payment of the applicable Cure Cost shall occur as soon as reasonably practicable after such dispute is resolved. Any Cure Cost shall be deemed fully satisfied, released, and discharged upon payment of the Cure Cost.

Unless (a) otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease or (b) an earlier deadline has been set with respect to such objection by a Final Order (including, without limitation, the Bidding Procedures Order or any Sale Order, in which case the deadlines set forth in such orders with respect to the applicable Executory Contract or Unexpired Lease shall control), any objection by a counterparty to an Executory Contract or Unexpired Lease to be assumed pursuant to this Plan to the applicable proposed assumption or related Cure Cost must be Filed, served, and actually received by counsel to the Debtors by no later than 14 days after the service of notice of assumption on affected counterparties (which notice may, for the avoidance of doubt, be included in the notice such party receives with respect to the filing of the Plan Supplement). **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and any untimely request for an additional or different Cure Cost shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any of the Debtors without the need for any objection by the applicable Reorganized Debtors or the Wind-Down Debtors, as applicable, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**

Except as otherwise set forth in any applicable Sale Order, if there is any dispute regarding any Cure Costs, the ability of the Debtors, the Reorganized Debtors, the Wind-Down Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assumption and assignment, then payment of any Cure Costs shall occur as soon as reasonably practicable after (a) entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment) or (b) as may be agreed upon by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. Any such disputes shall be scheduled for hearing upon request of the affected counterparty or the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, at the earliest convenience of the Court; *provided* that no hearing will be scheduled on less than 10 days' notice to the affected counterparty, and the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable. The Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, may

reconcile and settle in the ordinary course of the Debtors' business any dispute (following a timely Filed objection) regarding any Cure Cost or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.  The Debtors may, at any time prior to the resolution of any such objection regarding Cure Costs or the ability of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors to provide "adequate assurance," remove the applicable Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, and the effective date of the rejection of any such Executory Contract or Unexpired Lease and deadline for Filing any Proof of Claim arising therefrom, if any, shall be determined in accordance with Article V.A upon the Debtors' service of notice to the counterparty as required thereunder.

If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases (such greater amount, the "Court-Ordered Cure Cost"), the Debtors shall have the right to (a) satisfy the Court-Ordered Cure Cost as soon as reasonably practicable thereafter and assume such Executory Contract or Unexpired Lease in accordance with the terms herein or, (b) within 14 days of such determination, remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected on the later of (i) the date of entry of the Court-Ordered Cure Cost and, (ii) solely with respect to Unexpired Leases, the date upon which the Debtors notify the landlord in writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable, and in the case of rejection of an Unexpired Lease pursuant to the preceding clause (ii), the Debtors shall, pursuant to section 365(d)(4) of the Bankruptcy Code, immediately surrender the related premises to the lessor unless otherwise agreed with the applicable lessor or ordered by the Court, subject to the applicable counterparty's right to object to such rejection; *provided* that, after the deadline to assume an Executory Contract or Unexpired Lease set forth in section 365(d) of the Bankruptcy Code, as extended pursuant to any Bankruptcy Court order, an Executory Contract or Unexpired Lease may only be removed from the Schedule of Assumed Executory Contracts and Unexpired Leases if (a) the applicable counterparty consents to such rejection, (b) the applicable counterparty objected to the assumption or cure of such Executory Contract or Unexpired Lease and such objection remains outstanding, or (c) the court orders a Court-Ordered Cure Cost.  Notwithstanding anything to the contrary herein, the Debtors, Reorganized Debtors, the Wind-Down Debtors, and the applicable counterparty shall be entitled to the full benefits of the Executory Contract or Unexpired Lease (including without limitation, any license thereunder) pending the resolution of any Cure Cost dispute.

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors (for themselves and for their successors) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies.*

Notwithstanding anything to the contrary in the Plan, the Plan Supplement or the Confirmation Order:

The Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan and, unless otherwise provided in the Plan, on the Effective Date, (a) the Wind-Down Debtors shall be deemed to have assumed such Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims under such Insurance Policies, and (b) such Insurance Policies and any agreements, documents, or instruments relating thereto, shall vest, unaltered in their entirety, in the Wind-Down Debtors.  For the avoidance of doubt, no Insurance Policy (including the D&O Liability Insurance Policies), Indemnification Provisions, or obligations related thereto will be or will be deemed to be assumed by any of the Reorganized Debtors.  Nothing in the Plan shall affect, impair or prejudice the rights of the insurance carriers, insureds, Debtors, Wind-Down Debtors, or Liquidating Trustee, under the Insurance Policies in any manner, and such insurance carriers, insureds, Debtors, Wind-Down Debtors, or Liquidating Trustee, in each case as applicable, shall retain all rights and defenses under such Insurance Policies, and such Insurance Policies shall apply to, and be enforceable by

and against, the insurance carriers, insureds, Debtors, Wind-Down Debtors, or Liquidating Trustee, in the same manner and according to the same terms and practices applicable to the Debtors as existed prior to the Effective Date.

Nothing in the Plan, the Plan Supplement or the Confirmation Order shall terminate or otherwise reduce the coverage available to any beneficiary or "insured" under any D&O Liability Insurance Policies. After the Effective Date all directors, officers, managers, authorized agents or employees of the Debtors (or their Affiliates) who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any applicable D&O Liability Insurance Policies for the full term of such policies, including but not limited to any extension of coverage after the end of such policy period if any extended reporting period has been purchased, in accordance with the terms thereof.

On or after the Confirmation Date, the Debtors, Wind-Down Debtors, and Reorganized Debtors shall not take any action to terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect prior to the Effective Date, and any directors and officers of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policies (including any "tail policy") for the full term of such policy regardless of whether such directors and/or officers remain in such positions before or after the Effective Date. Each of the Debtors' D&O Liability Insurance Policies will be assumed and retained in accordance with the first paragraph of this Article V.E. Each of the Debtors' D&O Liability Insurance Policies (including any "tail policy") shall remain in full force and effect for their entire term and shall not be cancelled, impaired, or otherwise modified (notwithstanding, for the avoidance of doubt, the dissolution of any Debtor, Wind-Down Debtor, or the Liquidating Trust, if any).

F. *Indemnification Provisions.*

Other than as provided for in executory contracts expressly assumed in connection with the assumption of executory contracts and unexpired leases under this Plan, no Reorganized Debtor or Wind-Down Debtor shall assume any indemnification obligations of the Debtors, including pursuant to the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, or employment contracts of the Debtors for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable. The organizational documents of the Reorganized Debtors may be amended on and after the Effective Date to provide indemnification, exculpation, and other similar protections only to the Reorganized Debtors' officers and directors for acts on or after the Effective Date.

G. *Employee and Retiree Benefits.*

Pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be available to the beneficiaries thereof in accordance with section 1129(a)(13) of the Bankruptcy Code (except as otherwise agreed between the Debtors and applicable recipient of such benefits) and the cost of such coverage or benefits, as applicable, shall be paid by the Wind-Down Debtors in accordance with the Wind-Down Budget.

On or before the Effective Date, the Debtors are authorized to, and shall, create a new Entity (or repurpose an existing entity) to serve as sponsor of the Rite Aid 401(k) Plan, and cause the transfer of the sponsorship of the Rite Aid 401(k) Plan to such entity for such purpose (such entity, the "*Rite Aid Plan Sponsor Entity*"). The acts of the directors, officers, and agents of the Rite Aid Plan Sponsor Entity shall be in furtherance of the Plan.

H. *Collective Bargaining Agreements*

Each of the collective bargaining agreements between any Debtor and a labor union, as set forth in the Confirmation Order, other than the Local 1776 Agreement with Rite Aid of New Jersey, Inc. (but including the Local 1776 Agreement with Rite Aid of Pennsylvania, LLC) has terminated or will terminate pursuant to its terms or by agreement between the applicable Debtor(s) and labor union no later than the Confirmation Date. The Local 1776 Agreement with Rite Aid of New Jersey, Inc. (but not with Rite Aid of Pennsylvania, LLC) will be assumed as of the

Effective Date to the extent listed on the Schedule of Assumed Executory Contracts and Unexpired Leases in accordance with Article V hereof.

      *I.*        *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan or a Sale Order, each assumed or assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including easements, reciprocal easement agreements, construction operating and reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

      *J.*        *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors or the Wind-Down Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan or a Sale Order.

      *K.*        *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code.

## ARTICLE VI
### PROVISIONS GOVERNING DISTRIBUTIONS

      *A.*        *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan (including this Article VI), on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim or Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Distributions of Liquidating Trust Assets (including Distributable Assets and distributions from the Administrative / Priority Claims Reserve) shall be made at such times as provided for under this Plan and in accordance with the Wind-Down Budget.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims which would, if Allowed, be entitled to distributions under this Plan, distributions on account of any such Disputed Claims, if any, shall be made pursuant to the provisions set forth in Article IX hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Distributions on Account of Obligations of Multiple Debtors.*

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan.  Any such Claims shall be released pursuant to Article X of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.  For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay fees payable pursuant to section 1930(a) of the Judicial Code until such time as its Chapter 11 Case is closed, dismissed, or converted, whichever occurs first.

C.      *Distributions Generally.*

Except as otherwise provided herein, distributions under the Plan shall be made by the applicable Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Debtors.

Notwithstanding any provision of the Plan to the contrary, distributions to Holders of DIP Claims shall be made to or at the direction of the applicable DIP Agent and distributions to Holders of Prepetition FILO Claims shall be made to or at the direction of the Prepetition ABL Agent, as applicable, each of which shall act as a Disbursing Agent for distributions to the respective Holders of DIP Claims and Holders of Prepetition FILO Claims, as applicable, at the sole expense of the Debtors or the Wind-Down Debtors, as applicable.  The Prepetition ABL Agent shall arrange to deliver such distributions to or on behalf of such Holders of Prepetition FILO Claims.  Neither the DIP Agent nor the Prepetition ABL Agent shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

Notwithstanding any provision of the Plan to the contrary, any distribution made from the Wind-Down Reserve or the Administrative Priority Claims Reserve, as applicable, shall be made in accordance with the Wind-Down Budget.

In no event shall the Reorganized Debtors be required to make or fund any distributions provided for under this Plan, which shall be made (a) to the extent this Plan provides for the making of any distribution or payment on the Effective Date, by the Debtors or Wind-Down Debtors, or (b) to the extent this Plan provides for the making of any distribution after the Effective Date, by the Wind-Down Debtors in accordance with Article VIII.

1.      Powers of the Disbursing Agent.

Any Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ Professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by such Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by a Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement Claims (including reasonable attorney fees and expenses) made by a Disbursing Agent shall be paid in Cash from the Wind-Down Reserve and in accordance with the Wind-Down Budget.

D.      *Post-Effective Distributions by the Wind-Down Debtors or Liquidating Trust.*

Distributions made by the Liquidating Trustee after the Effective Date in accordance with the terms of this Plan shall be made pursuant to <u>Article VIII</u> hereof.

E.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      <u>Delivery of Distributions.</u>

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' books and records or the register or related document maintained by, as applicable, the DIP Agent or the Prepetition ABL Agent as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the reasonable discretion of the Disbursing Agent; *provided further* that the address for each Holder of an Allowed Claim or Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Interest Filed by such Holder, or, if no Proof of Claim or Interest has been Filed, the address set forth in the Schedules.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder may be aggregated into one Claim and one distribution may be made with respect to the aggregated Claim.

2.      <u>Minimum Distributions.</u>

No Cash payment of less than $100.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.  Furthermore, whenever payment of a fractional amount under the Plan would otherwise be required, such fractional distribution shall be rounded down to the nearest penny.

3.      <u>Undeliverable Distributions and Unclaimed Property.</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of twelve months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary) and constitute Distributable Assets and the Claim of any Holder to such property or Interest in property shall be released and forever barred.

A distribution shall be deemed unclaimed if a Holder has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Wind-Down Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Wind-Down Debtors' requests, as applicable, for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

Any such unclaimed distributions returned to the Liquidating Trustee after the Effective Date shall be treated in accordance with <u>Article VIII.B</u> hereof.

F.      *Manner of Payment.*

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in the applicable agreements.

G.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting

requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

H.     *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.     *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Petition Date.

J.     *Setoffs and Recoupment.*

Except as expressly provided in this Plan, the Liquidating Trust may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (a) agreed in amount among the relevant Debtor(s) and Holder of Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any and all claims, rights, and Causes of Action that such Debtor or its successor may possess against the applicable Holder.

K.     *Claims Paid or Payable by Third Parties.*

1.     Claims Paid by Third Parties.

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor or Wind-Down Debtor (or the Liquidating Trust), such Holder shall be barred from asserting such Claim against the Debtors, Wind-Down Debtors, or Liquidating Trust and precluded from voting on any plans of reorganization Filed in these Chapter 11 Cases and/or receiving distributions from the Debtors, Wind-Down Debtors, or Liquidating Trust on account of such Claims in these Chapter 11 Cases.  The Debtors or, after the Effective Date, the Liquidating Trustee, shall be authorized to update the Claims Register to remove any Claims Filed with respect to an Executory Contract or Unexpired Lease that received payment in full on account of such Claim whether from a Debtor, Wind-Down Debtor, the Liquidating Trust, or any party that is not a Debtor or a Wind-Down Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, Wind-Down Debtor, or the Liquidating Trust on account of such Claim thereafter, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor, Wind-Down Debtor, or Liquidating Trust to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor, Wind-Down Debtor, or Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.     Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the Debtors or, after the Effective Date, the Liquidating Trustee, shall be authorized to update the Claims Register to remove the applicable portion of such Claim.

       3.      <u>Applicability of Insurance Policies.</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.  Notwithstanding anything herein to the contrary (including, without limitation, <u>Article X</u>, but except as provided in <u>Article IV.B</u>), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII**
**THE LIQUIDATING TRUSTEE**

       A.      *The Liquidating Trustee.*

The powers of the Liquidating Trustee shall include any and all powers and authority to implement the Plan and to administer and distribute the Distributable Assets and Cash held in the Administrative / Priority Claims Reserve and the Wind-Down Reserve in accordance with the Plan and Wind-Down Budget, and wind-down the business and affairs of the Debtors and Wind-Down Debtors, including (all without further order of the Bankruptcy Court):  (a) liquidating, receiving, holding, investing, supervising, and protecting the Liquidating Trust Assets; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan of Liquidating Trust Assets, *i.e.*, distributions of Distributable Assets and from the Administrative / Priority Claims Reserve to the applicable Liquidating Trust Beneficiaries, and from the Wind-Down Reserve; (c) making such distributions as contemplated under the Plan in accordance with the Wind-Down Budget; (d) establishing, owning or maintaining bank accounts in the name of the Liquidating Trust; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees (including Statutory Fees related to any Chapter 11 Case), expenses, debts, charges, and liabilities of the Wind-Down Debtors in accordance with the Wind-Down Budget; (g) administering and paying taxes of the Wind-Down Debtors in a manner consistent with the Restructuring Steps Memorandum, including filing tax returns; (h) representing the interests of the Wind-Down Debtors and Liquidating Trust before any taxing authority in all matters in a manner consistent with the Restructuring Steps Memorandum, including any action, suit, proceeding, or audit; (i) complying with the Debtors' continuing obligations under any Sale Order; (j) pursuing Retained Causes of Action which are Liquidating Trust Assets, if any, at the Liquidating Trustee's discretion; and (k) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with the Wind-Down Reserve.  Any provision of this Plan which authorizes the Wind-Down Debtors to take any action, including, without limitation, the provisions set forth in <u>Article IX</u> hereof with respect to the Allowance, Disallowance, estimation, objection, or other reconciliation of Claims shall be deemed to authorize the Liquidating Trustee to take such actions on behalf of the Wind-Down Debtors in its capacity as the representative of the Wind-Down Debtors pursuant to section 1123(b)(3) of the Bankruptcy Code.

The Liquidating Trustee may resign pursuant to the terms of the Liquidating Trust Agreement, and a permanent or interim successor Liquidating Trustee shall be appointed in accordance with the terms of this Plan and the Liquidating Trust Agreement.

       1.      <u>Liquidating Trustee Rights and Powers.</u>

The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan and as otherwise provided in the Confirmation Order.  The Liquidating Trustee

shall be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

    2.      <u>Retention of Professionals.</u>

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other Professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such Professionals shall be paid by the Liquidating Trustee exclusively from the Wind-Down Reserve and in accordance with the Wind-Down Budget. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

    3.      <u>Compensation of the Liquidating Trustee.</u>

The Liquidating Trustee's compensation shall be as described in the Plan Supplement and Liquidating Trust Agreement, and paid from the Wind-Down Reserve and in accordance with the Wind-Down Budget. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidating Trustee on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Liquidating Trustee in connection with the Liquidating Trustee's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court.

    4.      <u>Liquidating Trust Expenses.</u>

All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Wind-Down Debtors, or the Liquidating Trust, as applicable, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid in accordance with the Wind-Down Budget. Such costs, expenses and obligations shall be paid from the Wind-Down Reserve.

None of Debtors, Wind-Down Debtors, Reorganized Debtors, or Liquidating Trustee, as applicable, shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the any such party is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid from the Wind-Down Reserve and in accordance with the Wind-Down Budget.

    *B.*      *Wind-Down.*

On and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Liquidating Trustee shall have the power and authority to take any action necessary to wind-down and dissolve the Wind-Down Debtors' and their Estates.

As soon as practicable after the Effective Date and in accordance with the Restructuring Steps Memorandum, the Liquidating Trustee shall: (a) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan, Confirmation Order, any Sale Order, and any other documents contemplated thereby; (b) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable), and/or File any document required to be Filed with the Bankruptcy Court to effect the dissolutions contemplated in <u>Article IV.C</u> hereof; and (c) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan, subject to the terms hereof (including <u>Article X</u>). Any certificate of dissolution or equivalent document may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or board of directors or managers of any Debtor. From and after the Effective Date, except as set forth herein, the Wind-Down Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay

any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled pursuant to this Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding any Wind-Down Debtors' dissolution, the Wind-Down Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, resolution of applications for, and payment of Professional Fee Claims by the Liquidating Trustee in accordance with this Plan.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

C. *Exculpation, Indemnification, Insurance & Liability Limitation.*

The Liquidating Trustee and all professionals retained by the Liquidating Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors. The Liquidating Trustee may obtain, solely using funds from the Wind-Down Reserve and in accordance with the Wind-Down Budget, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors. The Liquidating Trustee may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Liquidating Trustee, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

D. *Tax Returns.*

After the Effective Date, the Liquidating Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Wind-Down Debtors in a manner consistent with the Restructuring Steps Memorandum, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

## ARTICLE VIII
## POST-EFFECTIVE DATE DISTRIBUTIONS BY THE LIQUIDATING TRUST

A. *Establishment of Reserve Accounts.*

The Liquidating Trusee shall establish each of the Administrative / Priority Claims Reserve and the Wind-Down Reserve. The Wind-Down Reserve shall be funded in the amount set forth in the Wind-Down Budget.

B. *Undeliverable Distribution Reserve.*

1. Deposits.

If a distribution to any Holder of an Allowed Claim is returned to the Liquidating Trust as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated account (the "*Undeliverable Distribution Reserve*") for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VIII.B..2 of this Plan.

2. Forfeiture.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within twelve months after the first distribution is made to such Holder shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such Claim for the undeliverable or unclaimed distribution against any Debtor, any Estate, the Liquidating Trust, the Wind-Down Debtors, or their respective properties or assets. In such cases, any Cash or other

property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such Claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Liquidating Trust and constitute Distributable Assets, notwithstanding any federal or state escheat laws to the contrary.

     3.    <u>Disclaimer</u>.

The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to attempt to locate any Holder of any Claim; *provided* that in its sole discretion, the Liquidating Trustee may periodically publish notice of unclaimed distributions.

     4.    <u>Distribution from Reserve</u>.

Within 15 Business Days after the Holder of an Allowed Claim which previously received a distribution on account of such Claim which was undeliverable or unclaimed satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an undeliverable or unclaimed distribution (provided that satisfaction occurs within the time limits set forth in <u>Article VIII.B</u> of this Plan), the Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the undeliverable or unclaimed distribution attributable to such Claim.

     C.    *Wind-Down Reserve.*

On the Effective Date, the Debtors shall establish the Wind-Down Reserve by depositing Cash in the amount set forth in the Wind-Down Budget into the Wind-Down Reserve. The Wind-Down Reserve shall be used by the Liquidating Trustee solely to satisfy the expenses of the Wind-Down Debtors and the Liquidating Trust as set forth in the Plan and Wind-Down Budget, including all costs and expenses associated with the winding up of the Wind-Down Debtors (including the storage, transfer, and destruction of records and documents of the Wind-Down Debtors in accordance with the Data Retention Plan), the payment of Statutory Fees, any other costs which this Plan expressly designates shall be funded from the Wind-Down Reserve and, to the extent permitted pursuant to this Plan, Professional Fee Claims not paid in full from the Professional Fee Escrow Account. Any amount remaining in the Wind-Down Reserve as of the Dissolution Date shall constitute Distributable Assets to be distributed in accordance with this Plan. In no event shall the Liquidating Trustee be required or permitted to use its personal funds or assets for such purposes.

The Wind-Down Reserve shall be administered, and distributions from the Wind-Down Reserve shall be made by, the Liquidating Trustee, and except in accordance with this <u>Article VIII.C</u>, amounts held in the Wind-Down Reserve shall not constitute Distributable Assets.

The Liquidating Trustee may, with the consent of the Required DIP Co-Collateral Agents, replenish the Wind-Down Reserve from the Distributable Assets Account from time to time in such amounts as consented to by the DIP Agent.

     D.    *Administrative / Priority Claims Reserve.*

On the Effective Date, the Debtors shall establish the Administrative / Priority Claims Reserve by depositing Cash in the amount set forth as the initial funding of such reserve account in the Wind-Down Budget into the Administrative / Priority Claims Reserve. Liquidating Trust Assets in the Administrative / Priority Claims Reserve Account shall be used solely to pay Holders of all Allowed Other Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Settled Priority Claims which are not paid in full on the Effective Date of the Plan in accordance with its terms and, to the extent permitted pursuant to this Plan, Professional Fee Claims not paid in full from the Professional Fee Escrow Account. The timing of payments from the Administrative / Priority Claims Reserve shall be in accordance with <u>Article II.A</u>, <u>Article II.D</u>, <u>Article II.E</u>, <u>Article III.C.1</u>, and <u>Article III.C.2</u>, as applicable and in accordance with the Wind-Down Budget. After the Effective Date, the Administrative / Priority Claims Reserve shall be funded up to the Administrative / Priority Claims Reserve

Amount in accordance with the Wind-Down Budget with the proceeds of Specified Receipts to be applied as and when such proceeds are received.

Upon the payment, settlement, or Disallowance of all Other Priority Claims, Administrative Claims, Priority Tax Claims, Other Secured Claims, or Settled Priority Claims timely asserted as of the Claims Bar Date, amounts remaining in the Administrative / Priority Claims Reserve shall revert to the Liquidating Trust and constitute Distributable Assets.

The Administrative / Priority Claims Reserve, whether funded on or after the Effective Date shall be administered, and distributions from the Administrative / Priority Claims Reserve shall be made by, the Liquidating Trustee, and except in accordance with this Article VIII.D, amounts held in the Administrative / Priority Claims Reserve shall not constitute Distributable Assets.

E.      *Distributions of Distributable Assets*.

On the Effective Date, the Debtors shall distribute, to the Holders of Allowed DIP Claims (which distribution shall be made by the Debtors to the DIP Agent as Disbursing Agent pursuant to Article VI.C hereof), all Cash Distributable Assets existing on the Plan Effective Date, subject to the terms of Article VI hereof, including any withholdings required thereby.

Following the Effective Date through the Dissolution Date, the Liquidating Trustee shall make distributions of Cash Distributable Assets to Holders of DIP Claims (which distributions shall be made by the Liquidating Trustee to the DIP Agent as Disbursing Agent pursuant to Article VI.C hereof) on the dates which it determines, with the consent of the DIP Agent, such distributions are most efficiently made.

F.      *Professional Fee Escrow Account*.

The Liquidating Trustee shall be authorized to, and shall, take any and all actions necessary to cause the Professional Fee Escrow Account to be administered in accordance with Article II.C hereof.  Until such time as all Allowed Professional Fee Claims are irrevocably paid in full pursuant to Article II.C, the Approved Budget, and the applicable orders of the Bankruptcy Court, amounts in the Professional Fee Escrow Account shall not constitute Liquidating Trust Assets or be the property of the Debtors, Wind-Down Debtors, or Liquidating Trust.

## ARTICLE IX
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Disputed Claims Process*

The Debtors or, after the Effective Date, the Liquidating Trustee (as representative of the Wind-Down Debtors pursuant to section 1123(b)(3) of the Bankruptcy Code) shall have the exclusive authority and responsibility to (a) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is Filed is Allowed and (b) File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of: (a) the Effective Date or (b) the Claims Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor, Reorganized Debtor, Wind-Down Debtor, or the Liquidating Trust, as applicable, without the need for any objection or further action by the Debtor, Reorganized Debtor, Wind-Down Debtor, or the Liquidating Trust, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

B.      *Allowance of Claims*.

After the Effective Date, the Reorganized Debtors or, with respect to any Wind-Down Debtor, the Liquidating Trust, as applicable, shall have and retain any and all rights and defenses such Reorganized Debtor or Wind-Down Debtor had with respect to any Claim or Interest immediately before the Effective Date.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or pursuant to a Final Order is considered Disallowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

C.      *Estimation of Claims.*

Before or after the Effective Date, the Debtors or the Liquidating Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Liquidating Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 14 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims or Interests Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Debtors or, after the Effective Date, the Liquidating Trust, without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim against or Interest in the same Debtor or another Debtor may be adjusted or expunged on the Claims Register by the Debtors or, after the Effective Date, the Liquidating Trust, without the Debtors or Liquidating Trust having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed by the Debtors or, if Filed after the Effective Date, the Liquidating Trust, as applicable, on or before the Claims Objection Deadline, as such deadline may be extended from time to time.

F.      *Disallowance of Claims or Interests.*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors or, if sums are due to any Wind-Down Debtor, the Liquidating Trust, as applicable.

**If a Proof of Claim or request for payment, as applicable, is not received by the Claims and Noticing Agent on or before the Claims Bar Date, if applicable to such Claim, the Holder of the underlying Claim shall be barred from asserting such Claim against the Debtors, the Wind-Down Debtors, the Reorganized Debtors, or the Liquidating Trust, and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such Claims in these Chapter 11 Cases. The Debtors or, after the Effective Date, the Liquidating Trust, shall be authorized to update the Claims Register to remove any such claims not received by the Claims and Noticing Agent before the Claims Bar Date; *provided* that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.**

G.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Disputed Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Interest; *provided* that if the Allowed amount of a Claim or Interest is Disputed, but not the existence or nature of such Claim, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) at such times and in such amounts as provided for under this Plan.

I.      *Tax Treatment of Reserves for Disputed Claims.*

After the Effective Date, Cash may be distributed to Holders of Claims which are Disputed as of the Effective Date but ultimately determined to be Allowed after the Effective Date (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under Article II or Article III hereof. Pending the resolution of such Claims, a portion of the Cash to be received by Holders of such Claims if such Claims become Allowed may be held back and deposited into the Administrative / Priority Claims Reserve, and to the extent that any property is deposited into such a reserve, the reserve is expected to be subject to "disputed ownership fund" treatment under section 1.468B-9 of the United States Treasury Regulations.

J.      *No Interest.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim; *provided* that interest on any Disputed Priority Tax Claim that (i) becomes an Allowed Priority Tax Claim and (ii) is treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code shall accrue and be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

K.      *Amendments to Claims.*

Except as otherwise expressly provided for in the Plan or the Confirmation Order, on or after the Claims Bar Date, any Claim subject to the Claims Bar Date may not be Filed or amended (nor may a request for payment of an Administrative Claim be made) without the authorization of the Liquidating Trust, except as otherwise ordered by the Bankruptcy Court. Absent such authorization, any such new or amended Claim Filed shall be deemed Disallowed in

full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

# ARTICLE X
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Release of Claims and Interests.*

The assets of the Debtors, the Reorganized Debtors, and the Liquidating Trust (as representative of the Wind-Down Debtors pursuant to section 1123(b)(3) of the Bankruptcy Code), as applicable, are being and shall be used for the satisfaction of expense obligations and/or the payment of Claims only in the manner set forth in the Plan and shall not be available for any other purpose.  Except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, compromise, and release, effective as of the Effective Date, of Claims, Interests, controversies, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date (including any Causes of Action or Claims based on theories or allegations of successor liability), any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  Therefore, notwithstanding anything in section 1141(d)(3) to the contrary, all Persons or Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Reorganized Debtors, the Wind-Down Debtors, or the Chapter 11 Cases, that occurred prior to the Effective Date, other than as expressly provided in the Plan, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan.  The Confirmation Order shall be a judicial determination of the settlement, discharge, compromise, and release of all Claims and Interests subject to the occurrence of the Effective Date.

B.      *Release of Liens; Transfer Free and Clear.*

**On the Effective Date, concurrently with the Consummation of the Restructuring Transactions and as set forth in the Restructuring Steps Memorandum, any assets transferred to McKesson or any Reorganized Debtor pursuant to the Restructuring Steps Memorandum shall vest in McKesson or the applicable Reorganized Debtor, as applicable, free and clear of all Liens, Claims, charges, interests, or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Confirmation Order, the Plan, and the Restructuring Steps Memorandum, each as applicable. Without limiting the foregoing, except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with <u>Article III</u> hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of any such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any**

50

**collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors or the Liquidating Trust, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases, and the Debtors and their successors and assigns shall be authorized to file and record such terminations or releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

  C.  *Debtor Release.*

  Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors and their Estates, the Reorganized Debtors, and Wind-Down Debtors (and the Liquidating Trust as the successor in interest to the Wind-Down Debtors), as applicable, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, or through, for, or because of, the foregoing Entities, from any and all claims and Causes of Action, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, the Wind-Down Debtors, or the Reorganized Debtors, as applicable, whether liquidated or unliquidated, fixed or contingent, accrued or unaccrued, known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or under federal or state statutory of common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that the Debtors, their Estates, the Wind-Down Debtors, the Reorganized Debtors, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), or the Estates, the Chapter 11 Cases, the Restructuring Transactions, their capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Chapter 11 Cases and related adversary proceedings, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the pursuit of the Restructuring Transaction, the implementation and making of the McKesson Equity Distribution, the administration and implementation of the Wind-Down, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, in all cases upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that nothing in this Plan or the Confirmation Order shall operate as a release of, and the Debtors shall not release, any (a) Retained Causes of Action or (b) claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.

  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases described in this Article X .C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article X.C is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good-faith settlement and compromise of the claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a sound exercise of the Debtors' business judgment; and (g) a bar to any of the Debtors, their respective Estates, the Reorganized Debtors, or the Wind-Down Debtors asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

D.      *Third-Party Release.*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law, equity, contract, tort, or arising under federal or state statutory or common law, or any other applicable international foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them, including any derivative claims asserted or assertable on behalf of any of the Debtors, would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof) or the Estates, the Chapter 11 Cases, their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the implementation and making of the McKesson Equity Distribution, the administration and implementation of the Wind-Down, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date; *provided* that nothing in this Plan or the Confirmation Order shall operate as a release of any (a) Retained Causes of Action, or (b) Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article X.D, which include by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article X.D is:  (a) consensual; (b) given in exchange for the good and valuable consideration provided by the Released Parties; (c) a good-faith settlement and compromise of such claims and Causes of Action; (d) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the Releasing Parties or the Debtors, their respective Estates, the Reorganized Debtors, or the Wind-Down Debtors asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

From and after the Effective Date, any Entity that opted out of the releases contained in this Article X.D may not assert any claim or other Cause of Action against any Released Party which would have, if such party had not opted out of the releases contained in this Article X.D, been released pursuant hereto, without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan as a derivative claim or otherwise and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action (a) constitutes a direct claim or a derivative claim released pursuant to Article X.C, and (b) is colorable.  Solely to the extent legally permissible and as provided for in Article XIII of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

E.      *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any claim or Cause of Action for any act or omission arising prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or Consummation of the Plan, any Definitive Documents, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the administration of the Debtors' estates during the course of the Chapter 11 Cases, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims or Causes of Action in each case arising out of or related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan pursuant to section 1125(e) of the Bankruptcy Code.

The exculpation provided for in this Article X.E will be in addition to, and not a limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability; *provided*, *however*, that notwithstanding anything herein to the contrary, nothing in this Plan shall affect, limit, or release in any way any performance obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the Plan, the 1125(e) Covered Parties shall not incur liability for any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan, or the negotiations thereof. No Entity or Person may commence or pursue a claim or Cause of Action against any of the 1125(e) Covered Parties that is subject to the terms of this paragraph, without the Bankruptcy Court (a) first determining, after notice and a hearing, that (i) such claim or Cause of Action represents a colorable claim or Cause of Action for actual fraud, gross negligence, or willful misconduct against any such 1125(e) Covered Party which is not within the scope of the limitation of liability set forth in section 1125(e) of the Bankruptcy Code, and (ii) such party is not otherwise exculpated pursuant to this Article X.E; and (b) specifically authorizing such Entity or Person to bring such claim or Cause of Action against such 1125(e) Covered Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable claim or Cause of Action.

F.      *Injunction.*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Causes of Action, or Interests that have been released pursuant to the Debtor Release, the Third-Party Release, or another provision of the Plan (including the release of Liens pursuant to Article X.B of the Plan), or are subject to exculpation pursuant to Article X.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors (or their Affiliates), the Reorganized Debtors (or their Affiliates), the Wind-Down Debtors or Liquidating Trust (or their Affiliates), the Exculpated Parties, or the

Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Causes of Action, or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (d) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors (or their Affiliates), the Reorganized Debtors (or their Affiliates) (if applicable), the Wind-Down Debtors (or their Affiliates), the Exculpated Parties, or the Released Parties, as applicable, that relates to or arises out of a Claim or Cause of Action subject to Article X.C, Article X.D, or Article X.E hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, (b) determining that such Person or Entity is not barred from commencing or pursuing such Claim or Cause of Action pursuant to this Article X.F, and (c) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such party. For the avoidance of doubt, any party that obtains such determination and authorization and then subsequently wishes to amend the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article X.F of the Plan.

As of the Effective Date, except as specifically provided in the Plan or Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims or Interests that are treated under the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claim or Interest from the Debtors (or their Affiliates), the Estates, the Reorganized Debtors (or their Affiliates), or the Wind-Down Debtors (or their Affiliates), except for the receipt of the payments or distributions, if any, that are contemplated by the Plan from the Wind-Down Debtors. Such injunction will not enjoin Persons, Entities, or Holders of Claims that do not consent to or otherwise are not subject to the Third-Party Release from pursuing any direct (but not derivative) claims or Cause of Action such Persons or Entities may have against Released Parties other than the Debtors, the Estates, the Reorganized Debtors, or the Wind-Down Debtors, subject to the final paragraph of Article X.D.

G.      *Preservation of Setoff Rights.*

Notwithstanding anything in Article X to the contrary, any right of setoff or recoupment is preserved against the Debtors, the Wind-Down Debtors, the Reorganized Debtors, and any of their affiliates and successors solely to the extent such right(s) exist under applicable law and subject to the Debtors' and any of their Affiliates' and successors', as applicable, right to contest any such right(s) of setoff or recoupment; *provided*, *however*, that notwithstanding the foregoing or anything in the Plan to the contrary, the right of any Entity or Holder of a Claim or Interest to assert setoff or recoupment as a defense or affirmative defense to claims brought against them is expressly preserved to the extent permitted by applicable law and shall not be impaired, enjoined, precluded, restricted, or otherwise limited by the Plan or the Confirmation Order.

Notwithstanding anything to the contrary herein, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to any Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy law or non-bankruptcy law, including, but not limited to, the (a) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors, under the Plan, (b) assertion of rights or setoff or recoupment, if any, in connection with the claim reconciliation process, or (c) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Reorganized Debtors, the Wind-Down Debtors, or the Liquidating Trust.

H.    *Protections Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the supremacy clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.    *Document Retention.*

On and after the Effective Date, the Debtors and the Liquidating Trust on behalf of the Wind-Down Debtors, as applicable, may maintain, transfer, and destroy documents in accordance with the Data Retention Plan and the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors or the Liquidating Trust on behalf of Wind-Down Debtors, as applicable. The costs and expenses of such retention which are allocated to the Debtors pursuant to the Data Retention Plan shall be paid exclusively from the Wind-Down Reserve in accordance with Article VIII.C hereof. The Reorganized Debtors shall have the right, but not the obligation, to maintain, transfer, and destroy documents in their possession after the Effective Date.

J.    *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (a) such Claim has been adjudicated as non-contingent or (b) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

K.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect on and following the Effective Date in accordance with their terms.

L.    *Subordination Rights.*

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510 of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Claim or Interest Holders with respect to any distribution made pursuant to the Plan. Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to the Plan shall be terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

     *A.*     *Conditions Precedent to the Effective Date.*

     It shall be a condition to the occurrence of the Effective Date that the following conditions shall have been satisfied (or will be satisfied contemporaneously with the occurrence of the Effective Date) or waived pursuant to the provisions of Article XI.B hereof:

     1.     the DIP Facilities and the Financing Orders each remain in full force and effect;

     2.     the final version of each of the Definitive Documents to become effective on or prior to the Effective Date is in form and substance consistent in all respects with the consent rights set forth in the Restructuring Support Agreement;

     3.     the Restructuring Transactions shall have been implemented in accordance with the Restructuring Steps Memorandum in all material respects;

     4.     the McKesson Inventory Sales shall have closed;

     5.     the Debtors shall have removed all inventory not purchased by McKesson from the Central Fill Facility, and the Central Fill Facility shall be in "broom clean" condition;

     6.     the McKesson Motion to Compel shall have been withdrawn with prejudice;

     7.     the McKesson Complaint shall have been dismissed with prejudice;

     8.     the Confirmation Order shall have been entered and not stayed, reversed, amended, supplemented, or otherwise modified except in a manner consistent with the consent rights set forth in the Restructuring Support Agreement, and the appeal period for the Confirmation Order shall have passed without any appeal having been filed;

     9.     all documents necessary to consummate this Plan shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein shall have been satisfied or waived in accordance therewith and in accordance with any applicable consent rights set forth in this Plan;

     10.     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, and documents that are necessary to implement and effectuate the Plan;

     11.     the Debtors shall have terminated all of their compensation and benefits programs other than the Retiree Plans and the Rite Aid 401(k) Plans and paid all amounts outstanding thereunder owed by any Debtor that is to become Reorganized Debtor (excluding those amounts which the Wind-Down Debtors are obligated to pay pursuant to Article V.G), to the satisfaction of McKesson in its sole discretion;

     12.     with respect to each Debtor Employee Benefit Plan, (i) each Debtor Employee Benefit Plan (other than the Rite Aid 401(k) Plan, which shall be transferred to the Rite Aid Plan Sponsor Entity) shall have been terminated and, to the extent applicable, all potential withdrawal liability with respect thereto shall have been triggered, and (ii) no new employees shall become eligible to participate under any Debtor Employee Benefit Plan, to the satisfaction of McKesson in its sole discretion;

     13.     the Debtors shall have secured a buyout by a third-party insurance company of all of the Reorganized Debtors' existing or future obligations with respect to the Retiree Plans or reached an agreement with the applicable retiree to settle obligations owed by the Retiree Plans and funded all amounts due in connection therewith, to the satisfaction of McKesson in its sole discretion;

14.     the Wind-Down Reserve and the Administrative / Priority Claims Reserve shall have each been funded in accordance with the Wind-Down Budget;

15.     the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount, and, solely to the extent set forth in the Approved Budget, Professional Fee Claims for the Indenture Trustee Fees shall have been paid in Cash in accordance with Article II.C of the Plan;

16.     all accrued and unpaid reasonable and documented fees and expenses required to be paid pursuant to Article II.B of this Plan and any Financing Order shall have been paid, to the extent invoiced three (3) Business Days prior to the Effective Date;

17.     the Liquidating Trust Agreement shall have been executed;

18.     the Transition Services Agreement, if any, shall have been executed;

19.     any and all requisite governmental, regulatory, and third-party approvals and consents shall have been obtained, as and to the extent necessary for the Debtors' emergence from chapter 11;

20.     the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein in a manner consistent in all respects with the Plan and the Plan Supplement (including that the payments contemplated by non-Debtor parties as set forth therein shall have been made); and

21.     the Department of Justice shall have informed the Debtors, DIP Agent, and the Bankruptcy Court that it obtained approval of the settlement embodied in the Confirmation Order on or prior to December 5, 2025 (or such later date as approved by the Required DIP Co-Collateral Agents in their collective and absolute discretion), and such approval and settlement shall be (a) in form and substance acceptable to the Debtors, the DIP Agent, and McKesson in each's sole discretion and (b) effective and binding before or concurrently with the Effective Date.

B.      *Waiver of Conditions.*

Subject to and without limiting the rights of each party under the Final Financing Order, the conditions to Consummation set forth in Article XI.A may be waived by the Debtors, and with the consent of (a) the Required DIP Co-Collateral Agents and (b) McKesson; *provided that*, the condition in Article XI.A.15 may not be waived without the consent of the affected Professionals.

C.      *Effect of Failure of Conditions.*

If the Effective Date of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (b) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

D.      *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XII
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, reserve the right to modify the Plan, whether such modification is material or

immaterial, seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to each Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, in each case subject to the consent rights set forth in the Restructuring Support Agreement.

       B.       *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

       C.       *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, subject to the consent rights set forth in the Restructuring Support Agreement, to revoke or withdraw the Plan before the Confirmation Date and to File subsequent plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan and the conditional approval of the Disclosure Statement, including the approval of the procedures by which acceptances and rejections of the Plan were solicited, shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests, or the fixing or limiting of the recovery to which the Holders of such Claims were entitled under the Plan), assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims, Causes of Action, or Interests; (ii) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, except as otherwise set forth in this Plan, over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.       subject to <u>Article IXA</u> of this Plan, allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.       decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.       resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Reorganized Debtors or the Wind-Down Debtors, as applicable, amending, modifying or supplementing, after the Effective Date, pursuant to <u>Article V</u>, the Executory

Contracts and Unexpired Leases to be assumed (or assumed and assigned) or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      grant any consensual request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5.      ensure that distributions to Holders of Allowed Claims entitled to distributions hereunder are accomplished pursuant to the provisions of the Plan;

6.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, litigated matters, or any other matters pending in the Bankruptcy Court as of the Effective Date, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article X hereof and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

13.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI hereof;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.      enter an order concluding or closing the Chapter 11 Cases;

17.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.      consider any modifications of the Plan, including any Plan Supplement documents Filed after the Confirmation Date, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article X hereof;

23.     enforce all orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

24.     hear any other matter related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Wind-Down Debtors, the Liquidating Trust, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents.*

On or before the Effective Date, subject to the terms of this Plan, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Following the Effective Date, the Debtors, the Reorganized Debtors, the Wind-Down Debtors, or the Liquidating Trust, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Liquidating Trust shall pay any and all Statutory Fees when due and payable, and such fees shall be paid solely from the Wind-Down Reserve (and, to the extent amounts in the Wind-Down Reserve are insufficient to pay any such Statutory Fees, the Distributable Assets). The Wind-Down Debtors shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee with respect to each Chapter 11 Case until such Chapter 11 Case has been closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code, and the U.S. Trustee shall not be required to file any request for payment of an Administrative Claim or be treated as a Releasing Party pursuant to the Plan.

D.     *Dissolution of the Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee shall dissolve automatically and the members thereof and each Professional retained thereby shall be released and discharged from all rights, duties, responsibilities, and liabilities arising on or prior to the Effective Date, from, or related to, the Chapter 11 Cases and under the Bankruptcy Code; *provided* that the Committee will remain in place after the Effective Date solely for the purpose of addressing (a) all final fee applications for all Professionals for the Committee and any matters concerning Professional Fee Claims held

or asserted by any Professional retained by the Committee, and (b) the resolution of any appeals of the Confirmation Order or other appeals to which the Committee is a party.

   E.  *Reservation of Rights.*

   Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur, except as expressly set forth therein.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

   F.  *Successors and Assigns.*

   The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

   G.  *Notices.*

   All pleadings, notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

   1.  if to the Debtors, to:

    Rite Aid Corporation
    200 Newberry Commons
    Etters, Pennsylvania 17319
    Attn:  Steven K. Bixler; Marc Liebman
    Email address:  sbixler@riteaid.com; Marc.Liebman@alvarezandmarsal.com

    with copies to:

    Paul, Weiss, Rifkind, Wharton & Garrison LLP
    1285 Avenue of the Americas
    New York, New York 10019-6064
    Attn:  Andrew N. Rosenberg; Alice B. Eaton; Christopher Hopkins; Sean A. Mitchell; Joshua A. Esses; Tyler F. Zelinger
    Email Addresses: arosenberg@paulweiss.com; aeaton@paulweiss.com; chopkins@paulweiss.com; smitchell@paulweiss.com; jesses@paulweiss.com; tzelinger@paulweiss.com

   2.  if to the DIP Agents or DIP Lenders:

    Choate, Hall, & Stewart LLP
    Two International Place
    Boston, Massachusetts 02110
    Attn:  John F. Ventola; Mark D. Silva; J.P. Jaillet; Jonathan D. Marshall
    Email Addresses:  jventola@choate.com; msilva@choate.com; jjaillet@choate.com; jmarshall@choate.com

3.        if to McKesson, to:

          Sidley Austin LLP
          One South Dearborn Street
          Chicago, Illinois 60603
          Attn:  Dennis M. Twomey; Jackson T. Garvey; Ian C. Ferrell
          Email Addresses:  dtwomey@sidley.com; jgarvey@sidley.com;
          iferrell@sidley.com

4.        if to the Committee, to:

          Willkie Farr & Gallagher LLP
          787 Seventh Avenue
          New York, New York 10019-6099
          Attn:  Brett H. Miller; Todd M. Goren; James H. Burbage; Jessica D. Graber
          Email Addresses:  bmiller@willkie,com; tgoren@willkie.com;
          jburbage@willkie.com; jgraber@willkie.com

After the Effective Date, the Reorganized Debtors or the Wind-Down Debtors, as applicable, may notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors or the Reorganized Debtors or the Wind-Down Debtors, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.        *Entire Agreement.*

Except as otherwise indicated herein, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.  If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, claims, and defenses, and such parties expressly reserve any and all of their respective rights, remedies, claims and, defenses.  This Plan and the documents comprising the Plan Supplement, including any drafts thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing) shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any party in interest of any claim or fault or liability or damages whatsoever.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to Plan and the documents comprising the Plan Supplement is part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

I.        *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025 or the Bankruptcy Court's website at www.njb.uscourts.gov.

J.        *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or

interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent and subject to the consent rights set forth in the Restructuring Support Agreement; and (c) nonseverable and mutually dependent.

     *K.*       *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the 1125(e) Covered Parties will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

     *L.*       *Closing of Chapter 11 Cases.*

The Reorganized Debtors or the Liquidating Trust (on behalf of the Wind-Down Debtors), as applicable, shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.  Furthermore, the Claims and Noticing Agent is authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.

     *M.*      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

*[Remainder of page intentionally left blank]*

Dated:  November 11, 2025

NEW RITE AID, LLC
on behalf of itself and all other Debtors


*/s/ Marc Liebman*

Marc Liebman
Chief Transformation Officer
New Rite Aid, LLC