**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*, | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF FILING OF PLAN SUPPLEMENT**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AGENT.**

**PLEASE TAKE NOTICE THAT** on September 22, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court")[2] entered an order [Docket No. 2535] (the "Disclosure Statement Order"): (a) authorizing New Rite Aid, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2517]; (b) conditionally approving the *First Amended Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2518] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation

---

[1]   The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]   Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on November 11, 2025, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. [•]] (as modified, amended, or supplemented from time to time, the "Plan") and the *Second Amended Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. [•]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT**, as contemplated by the Disclosure Statement Order, the Debtors hereby file the plan supplement, which contains the following materials (the "Plan Supplement").

| Exhibit | Document |
|---|---|
| Exhibit A1 – A4 | A1:  Amended and Restated Bylaws |
| | A2:  Amended and Restated Certificate of Incorporation |
| | A3:  Amended and Restated Limited Liability Company Operating Agreement |
| | A4:  Amended and Restated Certification of Formation |
| Exhibit B | Schedule of Assumed Executory Contracts and/or Unexpired Leases |
| Exhibit C | Schedule of Retained Causes of Action |
| Exhibit D | Restructuring Steps Memorandum |
| Exhibit E | New Board of Directors Disclosures |
| Exhibit F | Liquidating Trustee Identity and Terms of Compensation |
| Exhibit G | Liquidating Trust Agreement |
| Exhibit H | Data Retention Plan |
| Exhibit I | Transition Services Agreement |

**PLEASE TAKE FURTHER NOTICE THAT** the documents contained in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** certain documents, or portions thereof, contained in this Plan Supplement remain subject to continuing negotiations.  Subject to the terms and conditions of the Plan, the Disclosure Statement Order, and the Restructuring Support Agreement, the Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations

contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan, the Disclosure Statement Order, or any other order of the Court.

PLEASE TAKE FURTHER NOTICE that the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement will commence on **November 24, 2025, at 10:00 a.m. prevailing Eastern Time**, before the Honorable Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, NJ 08608 (the "Combined Hearing"). The Combined Hearing may be continued from time to time without further notice other than by an announcement in open court or a notice filed on the Court's docket and served on all parties entitled to the notice.

PLEASE TAKE FURTHER NOTICE that the deadline for filing objections to the Plan or final approval of the Disclosure Statement is **November 19, 2025, at 4:00 p.m. prevailing Eastern Time** (the "Confirmation and Final Disclosure Statement Objection Deadline"). Any objection to the Plan or final approval of the Disclosure Statement must: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Court for the District of New Jersey, and any orders of the Court; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the required notice parties so as to be actually received on or before the Confirmation and Final Disclosure Statement Objection Deadline. See the Disclosure Statement Order for further procedures with respect to any such objections.

PLEASE TAKE FURTHER NOTICE THAT if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims Agent"), by: (a) calling the Claims Agent at (888) 575-9318 (U.S./Canada, toll free) or +1 (646) 930-4577 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.ra.kroll.com/RiteAid2025; (c) writing to the Claims Agent at New Rite Aid, LLC's Election Form Processing Center c/o Kroll Restructuring Administration LLC 850 Third Avenue, Suite 412 Brooklyn, NY 11232; or (d) emailing  RiteAid2025Info@ra.kroll.com.(with "In re New Rite Aid - Solicitation Inquiry" in the subject line). You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/RiteAid2025, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*      *      *

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AGENT.**

[*Remainder of Page Intentionally Left Blank*]

Dated:  November 11, 2025

/s/  *Michael D. Sirota*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

## <u>Exhibit A-1</u>

**Amended and Restated Bylaws**

# AMENDED & RESTATED BYLAWS

# OF

# [●]

*a Delaware corporation*

(the "Corporation")

**Adopted as of [●], [2025]**

## ARTICLE 1

## OFFICES

**Section 1.1.    Registered Office**.   The registered office of the Corporation within the State of Delaware shall be located as provided by the Certificate of Incorporation of the Corporation, as may be amended and/or restated from time to time (the "Certificate of Incorporation").

**Section 1.2.    Additional Offices**.   The Corporation may, in addition to its registered office in the State of Delaware, have such other offices and places of business, both within and outside the State of Delaware, as the Board of Directors of the Corporation (the "Board of Directors") may from time to time determine or as the business and affairs of the Corporation may require.

## ARTICLE 2

## STOCKHOLDERS' MEETINGS

**Section 2.1.    Annual Meetings**.   An annual meeting of stockholders shall be held for the election of directors at such date, time and place as may be fixed by resolution of the Board of Directors from time to time.

**Section 2.2.    Special Meetings**.   Special meetings of stockholders for any purpose or purposes may be called at any time only by the Chairman of the Board, if any, the President, the Board of Directors or by a committee of the Board of Directors authorized to call such meetings and shall be called by the Chairman of the Board, if any, or the President or the Secretary, upon the written request of the stockholders holding a majority of the outstanding stock entitled to vote, and by no other person. The business transacted at a special meeting of stockholders shall be limited to the purpose or purposes for which such meeting is called, except as otherwise determined by the Board of Directors or the chairman of the meeting.

**Section 2.3.**   **Notice of Meetings**.   A written notice of each annual or special meeting of stockholders shall be given stating the place, date and time of the meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Unless otherwise provided by law, the Certificate of Incorporation or these Bylaws, such notice of meeting shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each stockholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be given when deposited in the mail, postage prepaid, directed to the stockholder at such stockholder's address as it appears on the records of the Corporation.

**Section 2.4.**   **Adjournment**.   Any annual or special meeting of stockholders may be adjourned from time to time to reconvene at the same or some other place, and notice need not be given of any such adjourned meeting if the date, time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting any business may be transacted which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the adjourned meeting in accordance with Section 2.3 hereof.

**Section 2.5.**   **Quorum**.   Except as otherwise provided by law, the Certificate of Incorporation or these Bylaws, the presence in person or by proxy of the holders of stock having a majority of the votes which could be cast by the holders of all outstanding stock entitled to vote at the meeting shall constitute a quorum at each meeting of stockholders.  In the absence of a quorum, the stockholders so present may, by the affirmative vote of the holders of stock having a majority of the votes which could be cast by all such holders, adjourn the meeting from time to time in the manner provided in Section 2.4 hereof until a quorum is present. If a quorum is present when a meeting is convened, the subsequent withdrawal of stockholders, even though less than a quorum remains, shall not affect the ability of the remaining stockholders lawfully to transact business.

**Section 2.6.**   **Organization**.   Meetings of stockholders shall be presided over by the Chairman of the Board, if any, or if there is none or in his or her absence, by the President, or in his or her absence, by a chairman designated by the Board of Directors, or in the absence of such designation by a chairman chosen at the meeting. The Secretary shall act as secretary of the meeting, but in his or her absence the chairman of the meeting may appoint any person to act as secretary of the meeting.

**Section 2.7.**   **Voting**.

(a)   Each stockholder entitled to vote at any meeting of stockholders shall be entitled to one vote for each share of stock held by such stockholder which has voting power on the matter in question; *provided* that any voting rights of common stock issued by the Corporation may be subject to restrictions imposed by the terms of any series of preferred stock issued by the Corporation.

(b)   Directors shall be elected by a plurality of the votes cast in the election of directors.   Each other question shall, unless otherwise provided by law, the Certificate of Incorporation or these Bylaws, be decided by the vote of the holders of stock having a majority of

the votes which could be cast by the holders of all stock entitled to vote on such question which are present in person or by proxy at the meeting.

(c)     Stock of the Corporation standing in the name of another corporation and entitled to vote may be voted by such officer, agent or proxy as the bylaws or other internal regulations of such other corporation may prescribe or, in the absence of such provision, as the board of directors or comparable body of such other corporation may determine.

**Section 2.8.    Proxies**.

(a)     Each stockholder entitled to vote at a meeting of stockholders may authorize another person or persons to act for such stockholder by proxy filed with the Secretary before or at the time of the meeting. No such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. A duly executed proxy shall be irrevocable if it states that it is irrevocable and if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power. A stockholder may revoke any proxy which is not irrevocable by attending the meeting and voting in person or by filing with the Secretary an instrument in writing revoking the proxy or another duly executed proxy bearing a later date.

(b)     A stockholder may authorize another person or persons to act for such stockholder as proxy by executing a writing authorizing such person or persons to act as such, which execution may be accomplished by such stockholder or such stockholder's authorized officer, director, partner, employee or agent signing such writing or causing his or her signature to be affixed to such writing by any reasonable means, including, but not limited to, facsimile signature.

**Section 2.9.    Action By Consent of Stockholders**.    Any action required or permitted to be taken at any annual or special meeting of stockholders may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, is signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote on such action were present and voted.

# ARTICLE 3

# BOARD OF DIRECTORS

**Section 3.1.    General Powers**.    The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these Bylaws required to be exercised or done by the stockholders. Directors need not be stockholders or residents of the State of Delaware.

**Section 3.2.    Number**.    The Corporation shall consist of one or more directors. The number of directors may be determined from time to time by resolution of the Board of Directors. No decrease in the number of directors shall have the effect of shortening the term of any incumbent director. Except as otherwise provided in the Certificate of Incorporation, the directors shall be elected at the annual meeting of stockholders to hold office until the next succeeding

annual meeting of stockholders. Each director shall hold office for the term for which such director is elected and until his or her successor shall have been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

**Section 3.3.   Elections; Resignations; New Directorships; Vacancies**.

(a)     Except as otherwise provided in the Certificate of Incorporation, any director elected or chosen in accordance with this Section 3.3 shall hold office until the next annual election of directors and until his or her successor shall have been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

(b)     Any director may resign at any time by giving written notice to the Chairman of the Board, if any, the President or the Secretary. Unless otherwise stated in a notice of resignation, it shall take effect when received by the officer to whom it is directed, without any need for its acceptance.

(c)     Any newly created directorship or any vacancy occurring on the Board of Directors for any reason may be filled by a majority of the remaining directors (even if less than a quorum) or by the sole remaining director, as the case may be, or by a plurality of the votes cast in the election of directors at a meeting of stockholders or by written consent. Each director elected to replace a former director shall hold office until the expiration of the term of office of the director whom he or she has replaced and the election and qualification of his or her successor, or until his or her earlier death, resignation or removal. A director elected to fill a newly-created directorship shall serve until the next annual meeting of stockholders and the election and qualification of his or her successor, or until his or her earlier death, resignation or removal.

**Section 3.4.   Annual Meetings**.   The Board of Directors shall meet as soon as practicable after the adjournment of each annual stockholders meeting at the place of the annual stockholders meeting unless the Board of Directors shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board of Directors. No notice to the directors shall be necessary to legally convene this meeting, except as provided in this Section 3.4.

**Section 3.5.   Regular Meetings**.   Regularly scheduled, periodic meetings of the Board of Directors may be held without notice at such times, dates and places as shall from time to time be determined by the Board of Directors.

**Section 3.6.   Special Meetings**.   Special meetings of the Board of Directors may be called by the Chairman of the Board, if any, the President, the Secretary, or by any member of the Board of Directors. Notice of a special meeting of the Board of Directors shall be given by the person or persons calling the meeting at least twenty-four hours before the special meeting. The purpose or purposes of a special meeting need not be stated in the call or notice.

**Section 3.7.   Organization**.   Meetings of the Board of Directors shall be presided over by the Chairman of the Board, if any, or if there is none or in his or her absence, by the President, or in his or her absence by a chairman chosen at the meeting. The Secretary shall act as secretary of the meeting, but in his or her absence the chairman of the meeting may appoint any person to act as secretary of the meeting. A majority of the directors present at a meeting, whether or not

they constitute a quorum, may adjourn such meeting to any other date, time or place without notice other than announcement at the meeting.

**Section 3.8.   Quorum; Vote Required for Action**.   At all meetings of the Board of Directors a majority of the whole Board of Directors shall constitute a quorum for the transaction of business. The vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

**Section 3.9.   Committees**.   The Board of Directors may, by resolution passed by a majority of the whole Board of Directors, designate one or more committees, each committee to consist of one or more directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of the committee, the member or members present at any meeting and not disqualified from voting, whether or not a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in place of any such absent or disqualified member. Any such committee, to the extent permitted by applicable law and provided in the resolution of the Board of Directors designating such committee, or an amendment to such resolution, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it.

**Section 3.10.   Telephonic Meetings**.   Directors, or any committee of directors designated by the Board of Directors, may participate in a meeting of the Board of Directors or such committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this Section 3.10 shall constitute presence in person at such meeting.

**Section 3.11.   Consent In Lieu of Meeting**.   Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board of Directors or committee, as the case may be, consent thereto in writing (which may be in counterparts) or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board of Directors.

**Section 3.12.   Reliance upon Records**.   Every director, and every member of any committee of the Board of Directors, shall, in the performance of his or her duties, be fully protected in relying in good faith upon the records of the Corporation and upon such information, opinions, reports or statements presented to the Corporation by any of its officers or employees, or committees of the Board of Directors, or by any other person as to matters the director or member reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Corporation, including, but not limited to, such records, information, opinions, reports or statements as to the value and amount of the assets, liabilities and/or net profits of the Corporation, or any other facts pertinent to the existence and amount of surplus or other funds from which dividends might properly be declared and paid, or with which the Corporation's capital stock might properly be purchased or redeemed.

**Section 3.13.  Presumption of Assent**.  Unless otherwise provided by the laws of the State of Delaware, a director who is present at a meeting of the Board of Directors, or a member who is present at a meeting of any committee of the Board of Directors, at which action is taken on any matter shall be presumed to have assented to the action taken unless his or her dissent shall be entered in the minutes of such meeting or unless he or she shall file his or her written dissent to such action with the person acting as secretary of such meeting before the adjournment thereof or shall forward such dissent by registered mail to the Secretary immediately after the adjournment of such meeting.  Such right to dissent shall not apply to a director or committee member, as the case may be, who voted in favor of such action.

## ARTICLE 4

## OFFICERS

**Section 4.1.   Officers**.  The officers of the Corporation elected by the Board of Directors shall be a President and a Secretary and such other officers as the Board of Directors from time to time may determine.  Officers elected by the Board of Directors shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this Article 4.  Such officers shall also have such powers and duties as from time to time may be conferred by the Board of Directors.  The President may also appoint such other officers (including, without limitation, one or more Vice Presidents and Controllers) as may be necessary or desirable for the conduct of the business of the Corporation.  Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these Bylaws or as may be prescribed by the Board of Directors or as may be prescribed by the appointing officer.

(a)     *President*.  The President shall be the chief executive officer of the Corporation, shall have general supervision of the affairs of the Corporation and general control of all of its business subject to the ultimate authority of the Board of Directors, and shall be responsible for the execution of the policies of the Board of Directors. The President (if he or she shall be a director) shall preside when present at all meetings of the stockholders and the Board of Directors.

(b)     *Secretary*.  The Secretary shall attend all meetings of the stockholders, the Board of Directors and (as required) committees of the Board of Directors and shall record the proceedings of such meetings in books to be kept for that purpose. The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board of Directors and shall perform such other duties as may be prescribed by the Board of Directors or President.  The Secretary shall have custody of the corporate seal of the Corporation and the Secretary, or any Assistant Secretary, shall have authority to affix the same to any instrument requiring it, and when so affixed, it may be attested by his or her signature or by the signature of such Assistant Secretary. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing thereof by his or her signature. The Secretary shall keep, or cause to be kept, at the principal executive office of the Corporation or at the office of the Corporation's transfer agent or registrar, if one has been appointed, a stock ledger, or duplicate stock ledger, showing the names of the stockholders and their addresses, the number and classes, series and/or sub-series of shares held by each and, with respect to certificated shares,

the number and date of certificates issued for the same and the number and date of certificates cancelled.

**Section 4.2.** **Term of Office; Removal; Vacancies**.   The elected officers of the Corporation shall be elected annually by the Board of Directors at its first meeting held after each annual meeting of stockholders. All officers elected by the Board of Directors shall hold office until the next annual meeting of the Board of Directors and until their successors are duly elected and qualified or until their earlier death, resignation, retirement, disqualification, or removal from office. Any officer may be removed, with or without cause, at any time by the Board of Directors. Any officer appointed by the President may also be removed, with or without cause, by the President, as the case may be, unless the Board of Directors otherwise provides. Any vacancy occurring in any elected office of the Corporation may be filled by the Board of Directors. Any vacancy occurring in any office appointed by the President may be filled by the President, as the case may be, unless the Board of Directors then determines that such office shall thereupon be elected by the Board of Directors, in which case the Board of Directors shall elect such officer.

**Section 4.3.** **Other Officers**.   The Board of Directors may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

**Section 4.4.** **Multiple Officeholders; Stockholder and Director Officers**.   Any number of offices may be held by the same person unless the Certificate of Incorporation or these Bylaws otherwise provide. Officers need not be stockholders or residents of the State of Delaware.

## ARTICLE 5

## STOCK CERTIFICATES AND TRANSFERS

**Section 5.1.** **Certificates**.   No stock certificates will be issued to represent the shares of this Corporation; accordingly such shares will be accounted for in the Corporation's books and records, *provided, however*, that every holder of stock shall be entitled to have a certificate signed by or in the name of the Corporation by the Chairman of the Board, if any, or the President or a Vice President, and by the Secretary or an Assistant Secretary, of the Corporation, certifying the number of shares owned by such stockholder in the Corporation. Any of or all the signatures on the certificate may be facsimile.   In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such officer, transfer agent, or registrar continued to be such at the date of issue.

**Section 5.2.** **Lost, Stolen or Destroyed Certificates; Issuance of New Certificates**. The Corporation may issue a new certificate for stock in the place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Corporation may require the owner of the lost, stolen or destroyed certificate, or such stockholder's legal representative, to give the Corporation a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate.

7

**Section 5.3.**    **Transfers of Stock**.    Upon surrender to the Corporation of a certificate for stock of the Corporation duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer or, if the relevant stock certificate is claimed to have been lost, stolen or destroyed, upon compliance with the provisions of Section 5.2 hereof, and upon payment of applicable taxes with respect to such transfer, and in compliance with any restrictions on transfer applicable to such stock certificate or the shares represented thereby of which the Corporation shall have notice and subject to such rules and regulations as the Board of Directors may from time to time deem advisable concerning the transfer and registration of stock certificates, the Corporation shall issue a new certificate or certificates for such stock to the person entitled thereto, cancel the old certificate and record the transaction upon its books. Transfers of stock shall be made only on the books of the Corporation by the registered holder thereof or by such holder's attorney or successor duly authorized as evidenced by documents filed with the Secretary or transfer agent of the Corporation. Whenever any transfer of stock shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of transfer if, when the certificate or certificates representing such stock are presented to the Corporation for transfer, both the transferor and transferee request the Corporation to do so.

**Section 5.4.**    **Stockholders of Record**.    The Corporation shall be entitled to treat the holder of record of any stock of the Corporation as the holder thereof and shall not be bound to recognize any equitable or other claim to or interest in such stock on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise required by the laws of the State of Delaware.

**ARTICLE 6**

**NOTICES**

**Section 6.1.**    **Manner of Notice**.    Whenever notice is required to be given to any stockholder, director or member of any committee of the Board of Directors, such notice may be given by personal delivery or by depositing it, in a sealed envelope, in the United States mails, first class, postage prepaid, addressed, or by transmitting it via telecopier, to such stockholder, director or member, either at the address or telecopier number of such stockholder, director or member as it appears on the records of the Corporation or, in the case of such a director or member, at his or her business address or telecopier number; and such notice shall be deemed to be given at the time when it is thus personally delivered, deposited, delivered or transmitted, as the case may be. Such requirement for notice shall also be deemed satisfied, except in the case of stockholder meetings, if actual notice is received orally or by other writing by the person entitled thereto as far in advance of the event with respect to which notice is being given as the minimum notice period required by law or these Bylaws.

**Section 6.2.**    **Waivers of Notice**.    Any written waiver of notice, signed by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of any regular special meeting

of the stockholders, directors or members of a committee or directors need be specified in any written waiver of notice.

## ARTICLE 7

## INDEMNIFICATION

**Section 7.1.    Scope**.  The Corporation shall, to the fullest extent permitted by Section 145 of the Delaware General Corporation Law, as that Section may be amended and supplemented from time to time (the "DGCL"), indemnify any director, officer, employee or agent of the Corporation, against expenses (including attorneys' fees), judgments, fines, amounts paid in settlement and/or other matters referred to in or covered by such Section, by reason of the fact that such person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise.

**Section 7.2.    Exculpation**.

(a)    Subject to Section 145 of the DGCL, no Indemnified Party (as defined below) shall be liable, in damages or otherwise, to the Corporation, its stockholders, the directors or any of their Affiliates for any act or omission performed or omitted by any of them in good faith (including, without limitation, any act or omission performed or omitted by any of them in reliance upon and in accordance with the opinion or advice of experts, including, without limitation, of legal counsel as to matters of law, of accountants as to matters of accounting, or of investment bankers or appraisers as to matters of valuation), except with respect to (i)   any act taken by such Indemnified Party purporting to bind the Corporation that has not been authorized pursuant to these Bylaws or (ii)   any act or omission with respect to which such Indemnified Party was grossly negligent or engaged in intentional misconduct.

(b)    To the extent that, at law or in equity, any Indemnified Party has duties (including fiduciary duties) and liabilities relating thereto to the Corporation or to its stockholders, such Indemnified Party acting under these Bylaws shall not be liable to the Corporation or to its stockholders for its good faith reliance on the provisions of these Bylaws. The provisions of these Bylaws, to the extent that they restrict, modify or eliminate the duties and liabilities of an Indemnified Party otherwise existing at law or in equity, shall replace such other duties and liabilities of such Indemnified Party, to the maximum extent permitted by applicable law.

**Section 7.3.    Indemnification**.

(a)    To the fullest extent permitted by applicable law, the Corporation shall indemnify and hold harmless and pay all judgments and claims against (i) the Board of Directors (ii) each officer of the Corporation, (iii) each director and (iv) each stockholder or their respective Affiliates, officers, directors, employees, shareholders, partners, managers and members (each, an "Indemnified Party"), each of which shall be a third party beneficiary of these Bylaws solely for purposes of this Section 7.3 and Section 7.4 from and against any loss or damage incurred by an Indemnified Party or by the Corporation for any act or omission taken or suffered by such Indemnified Party in good faith (including, without limitation, any act or omission taken or

suffered by any of them in reliance upon and in accordance with the opinion or advice of experts, including, without limitation, of legal counsel as to matters of law, of accountants as to matters of accounting, or of investment bankers or appraisers as to matters of valuation) in connection with the purpose and business of the Corporation, including costs and reasonable attorneys' fees and any amount expended in the settlement of any claims or loss or damage, except with respect to (i) any act taken by such Indemnified Party purporting to bind the Corporation that has not been authorized pursuant to these Bylaws or (ii) any act or omission with respect to which such Indemnified Party was grossly negligent or engaged in intentional misconduct.

(b)     The satisfaction of any indemnification obligation pursuant to sub-paragraph (a) of this Section 7.3 shall be from and limited to Corporation assets (including insurance and any agreements pursuant to which the Corporation, its officers or employees are entitled to indemnification) and the stockholder, in such capacity, shall not be subject to personal liability therefor.

(c)     Expenses reasonably incurred by an Indemnified Party in defense or settlement of any claim that may be subject to a right of indemnification hereunder shall be advanced by the Corporation prior to the final disposition thereof upon receipt of an undertaking by or on behalf of such Indemnified Party to repay such amount to the extent that it shall be determined upon final adjudication after all possible appeals have been exhausted that such Indemnified Party is not entitled to be indemnified hereunder.

(d)     The Corporation may purchase and maintain insurance, on behalf of all Indemnified Parties and other Persons against any liability which may be asserted against, or expense which may be incurred by, any such Person in connection with the Corporation's activities, whether or not the Corporation would have the power to indemnify such Person against such liabilities under the provisions of these Bylaws.

(e)     Promptly after receipt by an Indemnified Party of notice of the commencement of any investigation, action, suit, arbitration or other proceeding, whether civil or criminal (collectively, "Proceeding"), such Indemnified Party shall, if a claim for indemnification in respect thereof is to be made against the Corporation, give written notice to the Corporation of the commencement of such Proceeding; *provided, however*, that the failure of any Indemnified Party to give notice as provided herein shall not relieve the Corporation of its obligations under this Section 7.3, except to the extent that the Corporation is actually prejudiced by such failure to give notice. In case any such Proceeding is brought against an Indemnified Party (other than a derivative suit in right of the Corporation), the Corporation will be entitled to participate in and to assume the defense thereof to the extent that the Corporation may wish, with counsel reasonably satisfactory to such Indemnified Party. After notice from the Corporation to such Indemnified Party of the Corporation's election to assume the defense of such Proceeding, the Corporation will not be liable for expenses subsequently incurred by such Indemnified Party in connection with the defense thereof. The Corporation will not consent to entry of any judgment or enter into any settlement of such Proceeding that does not include as an unconditional term thereof the giving by the claimant or plaintiff to such Indemnified Party a release from all liability in respect of such Proceeding and the related claim.

(f)     The right to indemnification and the advancement of expenses conferred in this Section 7.3 shall not be exclusive of any other right which any Person may have or hereafter acquire under any statute, agreement, bylaw, vote of the Board of Directors or otherwise. The rights conferred upon any Indemnified Party in Section 7.2 above and this Section 7.3 shall be contract rights that vest upon the occurrence or alleged occurrence of any act or omission giving rise to any proceeding or threatened proceeding and such rights shall continue as to any Indemnified Party who has ceased to be manager, director or officer and shall inure to the benefit of such Indemnified Party's heirs, executors and administrators. Any amendment, alteration or repeal of Section 7.2 above and/or this Section 7.3 that adversely affects any right of any Indemnified Party or its successors shall be prospective only and shall not limit or eliminate any such right with respect to any proceeding involving any occurrence or alleged occurrence of any action or omission to act that took place prior to such amendment, alteration or repeal.

Section 7.4.    **Primary Obligation**.  With respect to any Indemnified Party who is employed, retained or otherwise associated with, or appointed or nominated by a stockholder or any of its affiliates and who acts or serves as a director, officer, manager, fiduciary, employee, consultant, advisor or agent of, for or to the Corporation or any of its subsidiaries, the Corporation or its subsidiaries shall be primarily liable for all indemnification, reimbursements, advancements or similar payments (the "Indemnity Obligation") afforded to such Indemnified Party acting in such capacity or capacities on behalf or at the request of the Corporation or any of its subsidiaries, in such capacity, whether the Indemnity Obligations are created by law, organizational or constituent documents, contract (including these Bylaws) or otherwise.  Notwithstanding the fact that such stockholder and/ or any of its affiliates, other than the Corporation (such persons, together with its and their heirs, successors and assigns, the "Stockholder Parties") may have concurrent liability to an Indemnified Party with respect to the Indemnity Obligations, in no event shall the Corporation or any of its subsidiaries have any right or claim against any of the Stockholder Parties for contribution or have rights of subrogation against any of the Stockholder Parties through an Indemnified Party for any payment made by the Corporation or any of its subsidiaries with respect to any Indemnity Obligation. In addition, in the event that any Stockholder Parties pay or advance to an Indemnified Party any amount with respect to an Indemnity Obligation, the Corporation shall, or shall cause its subsidiaries to, as applicable, promptly reimburse such Stockholder Party for such payment or advance upon request.

Section 7.5.    **Continuing Obligation**.   The provisions of this Article 7 shall be deemed to be a contract between the Corporation and each director of the Corporation who serves in such capacity at any time while these Bylaws are in effect, and any repeal or modification thereof shall not affect any rights or obligations then existing with respect to any state of facts then or theretofore existing or any action, suit or proceeding theretofore or thereafter brought based in whole or in part upon any such state of facts.

Section 7.6.    **Nonexclusive**.    The indemnification and advancement of expenses provided for under this Article 7 shall (i) not be deemed exclusive of any other rights to which those indemnified may be entitled under any bylaw, agreement or vote of stockholders or disinterested directors or otherwise, both as to action in their official capacities and as to action in another capacity while holding such office, (ii) continue unto a person who has ceased to be a director and (iii) inure to the benefit of the heirs, executors and administrators of such a person.

**Section 7.7.**   **Other Persons**.   In addition to the indemnification rights of directors, officers, employees or agents of the Corporation, the Board of Directors in its discretion shall have the power, on behalf of the Corporation, to indemnify any other person made a party to any action, suit or proceeding who the Corporation may indemnify under Section 145 of the DGCL.

**Section 7.8.**   **Definitions**.   The phrases and terms set forth in this Article 7 shall be given the same meaning as the identical terms and phrases are given in Section 145 of the DGCL, as that Section may be amended and supplemented from time to time.

**Section 7.9.**   **Other Indemnification**.   The Corporation's obligation, if any, to indemnify any person who was or is serving at its request as a director, officer, employee, partner or agent of another corporation, partnership, joint venture or other enterprise shall be reduced by any amount such person may collect as indemnification from such other corporation, partnership, joint venture or other enterprise.

**Section 7.10.**   **Amendment or Repeal**.   Any repeal or modification of the foregoing provisions of this Article 7 shall not adversely affect any right or protection hereunder of any person in respect of any act or omission occurring prior to the time of such repeal or modification.

## ARTICLE 8

## MISCELLANEOUS

**Section 8.1.**   **CTA**.   "CTA" means the Corporate Transparency Act (31 U.S.C. § 5336), enacted as part of the National Defense Authorization Act for Fiscal Year 2021, as amended, and the rules and regulations promulgated thereunder, including 31 C.F.R. § 1010.380.   To the extent the Corporation or any of its subsidiaries is a "reporting company" (as defined under the CTA) not subject to an applicable exemption under the CTA, each stockholder agrees and covenants (a) to cooperate with the Corporation with respect to its inquiry and determination of "beneficial owners" (as defined under the CTA) of the Corporation or its subsidiaries and (b) to the extent identified by the Corporation as a "beneficial owner" (as defined under the CTA) of the Corporation or its subsidiaries, (i) to provide to the Corporation such information required by the Corporation or its subsidiaries to comply with the CTA with respect to such stockholder, including either (I) a FinCEN identifier (as defined under the CTA), or personal identifying information and an "acceptable identification document" (as defined in the CTA), or (II) to the extent an applicable CTA exemption permits a "beneficial owner" (as defined under the CTA) to provide other information for reporting to FinCEN (as defined under the CTA) in lieu of the information contemplated by clause (I), such other information permitted to be provided under the CTA, and (ii) to provide or update information relating to any changes to the same in a timely manner in accordance with the CTA (or to use its commercially reasonable efforts to cause any individual who is a "beneficial owner" by directly or indirectly owning any ownership interests (as defined under the CTA) of such stockholder, or exercising "substantial control" (as defined under the CTA) through such stockholder over the Corporation, to provide or update the same).

**Section 8.2.**   **Fiscal Year**.   The fiscal year of the Corporation shall end on December 31 of each year, unless changed by resolution of the Board of Directors.

**Section 8.3.**   **Seal**.   The Board of Directors may resolve to create a corporate seal for the Corporation. In the event the Board of Directors does so resolve, the corporate seal shall have the name of the Corporation inscribed thereon and shall be in such form as may be approved from time to time by the Board of Directors. The seal for the Corporation (if any) may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

**Section 8.4.**   **Ratification**.   Any transaction, questioned in any lawsuit on the ground of lack of authority, defective or irregular execution, adverse interest of director, officer or stockholder, non disclosure, miscomputation, or the application of improper principles or practices of accounting, may be ratified before or after judgment, by the Board of Directors or by the stockholders, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and its stockholders and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

**Section 8.5.**   **Bank Accounts and Drafts**.   In addition to such bank accounts as may be authorized by the Board of Directors, the primary financial officer or any person designated by said primary financial officer, whether or not an employee of the Corporation, may authorize such bank accounts to be opened or maintained in the name and on behalf of the Corporation as he may deem necessary or appropriate, payments from such bank accounts to be made upon and according to the check of the Corporation in accordance with the written instructions of said primary financial officer, or other person so designated by the Treasurer.

**Section 8.6.**   **Execution of Papers**.   Except as the Board of Directors may generally or in particular cases authorize the execution thereof in some other manner, all deeds, leases, transfers, contracts, bonds, notes, checks, drafts and other obligations made, accepted or endorsed by the Corporation shall be signed by any officer of the Corporation appointed by the Board of Directors pursuant to these Bylaws.

**Section 8.7.**   **Form of Records**.   Any records maintained by the Corporation in the regular course of its business, including its stock ledger, books of account, and minute books, may be kept on, or be in the form of, punch cards, magnetic tape, photographs, microphotographs, or any other information storage device, *provided* that the records so kept can be converted into clearly legible form within a reasonable time. The Corporation shall so convert any records so kept upon the request of any person entitled to inspect the same.

**Section 8.8.**   **Amendment of Bylaws**.   The Board of Directors shall have the power to adopt, amend and/or restate, alter or repeal the Bylaws of the Corporation. The Bylaws of the Corporation may also be adopted, amended and/or restated, altered or repealed by the stockholders, and the stockholders may prescribe that any Bylaw made by them shall not be altered, amended or repealed by the Board of Directors.

\*       \*       \*       \*       \*

## Exhibit A-2

**Amended and Restated Certificate of Incorporation**

**AMENDED & RESTATED CERTIFICATE OF INCORPORATION**

**OF**

**[●]**

_____

**ARTICLE ONE**

The name of the corporation is [●] (hereinafter called the "<u>Corporation</u>").

**ARTICLE TWO**

The address of the Corporation's registered office in the State of Delaware is c/o [●].  The name of its registered agent at such address is [●].

**ARTICLE THREE**

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

**ARTICLE FOUR**

The total number of shares which the Corporation shall have the authority to issue is [●] shares, all of which shall be shares of Common Stock, with a par value of $[●] per share.

The Corporation shall not issue any class of non-voting equity securities unless and solely to the extent permitted by Section 1123(a)(6) of title 11 of the United States Code (the "Bankruptcy Code") as in effect on the date of filing of this Certificate of Incorporation with the Secretary of State of the State of Delaware; provided, however, that this <u>Article Four</u> (a) will have no further force and effect beyond that required under Section 1123(a)(6) of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as Section 1123(a)(6) of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated from time to time in accordance with applicable law.

**ARTICLE FIVE**

The name and mailing address of the incorporator is as follows:

| Name | Address |
|------|---------|
| [●] | [●] |

**ARTICLE SIX**

The directors shall have the power to adopt, amend or repeal bylaws of the Corporation ("<u>Bylaws</u>"), except as may be otherwise be provided in the Bylaws.

## ARTICLE SEVEN

**Section 7.1.**  **Nature of Indemnity**.  Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he (or a person of whom he is the legal representative), is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee, fiduciary, or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee, fiduciary or agent or in any other capacity while serving as a director, officer, employee, fiduciary or agent, shall be indemnified and held harmless by the Corporation to the fullest extent which it is empowered to do so by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment) against all expense, liability and loss (including attorneys' fees actually and reasonably incurred by such person in connection with such proceeding and such indemnification shall inure to the benefit of his or her heirs, executors and administrators; *provided*, *however*, that, except as provided in Section 7.2 hereof, the Corporation shall indemnify any such person seeking indemnification in connection with a proceeding initiated by such person only if such proceeding was authorized by the Board of Directors of the Corporation.  The right to indemnification conferred in this Article Seven shall be a contract right and, subject to Sections 7.2 and 7.5 hereof, shall include the right to payment by the Corporation of the expenses incurred in defending any such proceeding in advance of its final disposition.  The Corporation may, by action of the Board of Directors, provide indemnification to employees and agents of the Corporation with the same scope and effect as the foregoing indemnification of directors and officers.

**Section 7.2.**  **Procedure for Indemnification of Directors and Officers**.  Any indemnification of a director or officer of the Corporation under Section 7.1 hereof or advance of expenses under Section 7.5 hereof shall be made promptly, and in any event within 30 days, upon the written request of the director or officer.  If a determination by the Corporation that the director or officer is entitled to indemnification pursuant to this Article Seven is required, and the Corporation fails to respond within sixty (60) days to a written request for indemnity, the Corporation shall be deemed to have approved the request.  If the Corporation denies a written request for indemnification or advancing of expenses, in whole or in part, or if payment in full pursuant to such request is not made within thirty (30) days, the right to indemnification or advances as granted by this Article Seven shall be enforceable by the director or officer in any court of competent jurisdiction. Such person's costs and expenses incurred in connection with successfully establishing his right to indemnification, in whole or in part, in any such action shall also be indemnified by the Corporation. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any, has been tendered to the Corporation) that the claimant has not met the standards of conduct which make it permissible under the General Corporation Law of the State of Delaware for the Corporation to indemnify the claimant for the amount claimed, but the burden of such defense shall be on the Corporation. Neither the failure of the Corporation (including the Board of Directors, independent legal counsel, or its stockholders)

to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the General Corporation Law of the State of Delaware, nor an actual determination by the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

> **Section 7.3.**    **Nonexclusivity of Article Seven**.  The rights to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this <u>Article Seven</u> shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the certificate of incorporation, by-law, agreement, vote of stockholders or disinterested directors or otherwise.

> **Section 7.4.**    **Insurance**.  The Corporation may purchase and maintain insurance on its own behalf and on behalf of any person who is or was a director, officer, employee, fiduciary, or agent of the Corporation or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, whether or not the Corporation would have the power to indemnify such person against such liability under this <u>Article Seven</u>.

> **Section 7.5.**    **Expenses**.  Expenses incurred by any person described in <u>Section 7.1</u> hereof in defending a proceeding shall be paid by the Corporation in advance of such proceeding's final disposition unless otherwise determined by the Board of Directors in the specific case upon receipt of an undertaking by or on behalf of the director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation.  Such expenses incurred by other employees and agents may be so paid upon such terms and conditions, if any, as the Board of Directors deems appropriate.

> **Section 7.6.**    **Employees and Agents**.  Persons who are not covered by the foregoing provisions of this <u>Article Seven</u> and who are or were employees or agents of the Corporation, or who are or were serving at the request of the Corporation as employees or agents of another corporation, partnership, joint venture, trust or other enterprise, may be indemnified to the extent authorized at any time or from time to time by the Board of Directors.

> **Section 7.7.**    **Contract Rights**.  The provisions of this <u>Article Seven</u> shall be deemed to be a contract right between the Corporation and each director or officer who serves in any such capacity at any time while this <u>Article Seven</u> and the relevant provisions of the General Corporation Law of the State of Delaware or other applicable law are in effect.  Such contract right shall vest for each director and officer at the time such person is elected or appointed to such position, and no repeal or modification of this <u>Article Seven</u> or any such law shall affect any such vested rights or obligations then existing with respect to any state of facts or proceeding arising after such election or appointment.

> **Section 7.8.**    **Merger or Consolidation**.  For purposes of this <u>Article Seven</u>, references to "the Corporation" shall include, in addition to the resulting corporation, any

constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under this <u>Article Seven</u> with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued.

## ARTICLE EIGHT

The Corporation hereby renounces, to the fullest extent permitted by law, any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, business opportunities that are presented to any of its directors or stockholders or any of their respective affiliates. Without limiting the generality of the foregoing, the Corporation specifically renounces any rights the Corporation might have in any business venture or business opportunity of any director or stockholder or any of their respective affiliates, and no director or stockholder or any of their respective affiliates shall have any obligation to offer any interest in any such business venture or business opportunity to the Corporation or otherwise account to the Corporation in respect of any such business ventures or opportunities, even if the business venture or opportunity is one that the Corporation or its subsidiaries might reasonably be deemed to have pursued or had the ability or desire to pursue if granted the opportunity to do so. Furthermore, it shall not be deemed a breach of any fiduciary or other duties, if any, whether express or implied, for any director or stockholder to permit itself or one of its affiliates to engage in a business opportunity in preference or to the exclusion of the Corporation and such director or stockholder or any of their respective affiliates shall have no obligation to disclose to the Corporation or any of its subsidiaries any information related to its business or opportunities, disclose to the Corporation or the Board of Directors any confidential information regarding any corporate opportunity or other potential investment in such director or stockholder's possession even if it is material and relevant to the Corporation and/or the Board of Directors, present business opportunities to the Corporation, refrain from engaging in any line of business, refrain from investing in any person or refrain from doing business with any person. References to "stockholder" in this <u>Article Eight</u> are to each stockholder in its capacity as such. Any person purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and to have consented to the provisions of this <u>Article Eight</u>.

## ARTICLE NINE

The Corporation reserves the right to amend or repeal any provisions contained in this Certificate of Incorporation from time to time and at any time in the manner now or hereafter prescribed by the laws of the State of Delaware, and all rights conferred upon stockholders and directors are granted subject to such reservation.

## ARTICLE TEN

The Corporation hereby eliminates, to the fullest extent permitted by law (as contemplated by Section 102(b)(7) of the General Corporation Law of the State of Delaware), the

personal liability of any person who serves as a director of the Corporation to the Corporation and/or its stockholders for monetary damages for breach of fiduciary duty as a director, *provided* that this <u>Article Ten</u> shall not eliminate or limit the liability of a director: (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under Section 174 of the General Corporation Law of the State of Delaware; or (iv) for any transaction from which the director derived an improper personal benefit; *provided*, *however*, that if in the future the General Corporation Law of the State of Delaware is amended or modified (including, but not limited to, Section 102(a)(7)) to permit the elimination of the personal liability of a director of the Corporation to a greater extent than contemplated above, then the provisions of this <u>Article Ten</u> shall be deemed to be automatically amended to provide for the elimination of the personal liability of the directors of the Corporation to such greater extent. This <u>Article Ten</u> shall not eliminate or limit the liability of a director for any act or omission occurring prior to the date when this <u>Article Ten</u> becomes effective.  No amendment to or repeal of this <u>Article Ten</u> shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

\* \* \* \* \*

[*Signature Page Follows*]

I, the undersigned, being the sole incorporator hereinbefore named, for the purpose of forming a corporation in pursuance of the General Corporation Law of the State of Delaware, do make and file this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set my hand this [●] day of [●], [2025].

_____

[NAME],
as the sole incorporator of
[CORPORATION].

**Exhibit A-3**

**Amended and Restated Limited Liability Company Operating Agreement**

**AMENDED & RESTATED LIMITED LIABILITY COMPANY OPERATING
AGREEMENT**

**OF**

**[●]**

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT (this
"<u>Agreement</u>") of [●], a Delaware limited liability company (the "<u>Company</u>"), is made and entered into, as
of [●], [2025], by [●], a Delaware [●] as the sole member (the "<u>Member</u>").

**WHEREAS**, the Company was formed as a limited liability company upon the filing of a
Certificate of Formation in the office of the Secretary of State of the State of Delaware on [●], [2025] (as
may be subsequently amended and/or restated, the "<u>Certificate</u>") in accordance with the Delaware Limited
Liability Company Act (6 Del. C. §§ 18-101, *et seq*.), as amended (the "<u>Delaware Act</u>"); and

**WHEREAS**, in accordance with the Delaware Act, the Member desires to memorialize
the terms on which the Company shall hereafter be governed.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements herein
made and intending to be legally bound hereby, the parties hereto hereby agree as follows:

1.      **<u>Name</u>**.  The name of the limited liability company shall be "[●]".

2.      **<u>Purposes</u>**.  The Company is formed for the object and purpose of, and the nature
of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for
which limited liability companies may be formed under the Delaware Act and engaging in any and all
activities necessary or incidental to the foregoing. The Company shall possess and may exercise all of the
powers and privileges granted by the Delaware Act or by any other law or by this Agreement, together with
any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the
conduct, promotion or attainment of the business purposes or activities of the Company.

3.      **<u>Offices; Registered Agent</u>**.  The address of the registered office of the Company
and the name and address of the registered agent of the Company shall be as stated in the Certificate. The
Company's principal place of business shall be at the place designated by the Member. The Member may,
at any time and from time to time, change the registered office, the registered agent and/or the principal
place of business of the Company.

4.      **<u>Management</u>**.  The business and affairs of the Company shall be managed by the
Member. The Member shall be considered a "Manager" of the Company within the meaning of Section 18-
101(12) of the Delaware Act. Subject to the terms and conditions of this Agreement, the Member shall have
the power to do any and all acts necessary or convenient to or for the furtherance of the purposes described
herein, including all powers, statutory and/or otherwise, possessed by managers under the laws of the State
of Delaware.

5.      **<u>Officers</u>**.  The Member may from time to time as the Member deems advisable, in
its sole discretion, appoint officers of the Company ("<u>Officers</u>") and assign in writing titles (including,
without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the
Member decides otherwise, if the title is one commonly used for officers of a business corporation formed
under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation
to such person of the authorities and duties that are normally associated with that office. Any such Officers
so appointed may be removed and replaced at any time, with or without cause, by the Member, in its sole

discretion. Any delegation pursuant to this <u>Section 5</u> may be revoked at any time by the Member, in its sole discretion.

6. **<u>Term</u>**. The term of the Company began on the date the Certificate was filed in the office of the Secretary of State of the State of Delaware and shall continue until the Company is dissolved and its affairs wound up in accordance with the Delaware Act or <u>Sections 17</u> or <u>18</u> of this Agreement.

7. **<u>Capital Contributions</u>**. The amounts of the Member's capital contributions (if any) to the Company shall be set forth on the Company's books and records.

8. **<u>Additional Contributions</u>**. The Member shall not be required to make any additional capital contribution to the Company.

9. **<u>Allocations of Profits and Losses</u>**. The Company's profits and losses shall be allocated to the Member.

10. **<u>Distributions</u>**. Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

11. **<u>Transfer of Interests</u>**. The Member may transfer, assign or pledge all or any part of its interest in the Company (or any beneficial interest therein).

12. **<u>Resignation</u>**. A Member may only resign from the Company if he, she or it has transferred all of its interest in the Company to another person or entity.

13. **<u>Admission of Additional Members</u>**.

(a) The Member may, at any time and from time to time, admit one or more additional members on such terms as it may determine in its sole discretion.

(b) The admission of additional members pursuant to this <u>Section 13</u> may be accomplished by the amendment and/or restatement of this Agreement and, if required by the Delaware Act, the filing of an appropriate amendment and/or restatement of the Certificate in the office of the Secretary of State of the State of Delaware.

14. **<u>Admission of Additional or Substitute Managing Members</u>**.

(a) The Member may, at any time and from time to time, admit one or more additional or substitute managing members (including affiliates of the Member) on such terms as it may determine in its sole discretion.

(b) The admission of additional or substitute managing members to the Company pursuant to this <u>Section 14</u> may be accomplished by the amendment and/or restatement of this Agreement and, if required by the Delaware Act, the filing of an appropriate amendment and/or restatement of the Certificate in the office of the Secretary of State of the State of Delaware.

15. **<u>Liability of the Member</u>**. The Member shall not have any liability for the obligations or liabilities of the Company, except to the extent required by the Delaware Act.

16. **<u>Exculpation and Indemnification</u>**. None of the Members or Officers (each, an "<u>Indemnitee</u>") shall be liable to the Company, or any other person or entity who has an interest in the

Company, for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnitee pursuant to this Agreement, except that an Indemnitee shall be liable for any such loss, damage or claim incurred by reason of such Indemnitee's willful misconduct.  To the full extent permitted by applicable law, each Indemnitee shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Indemnitee by reason of any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnitee pursuant to this Agreement, except that no Indemnitee shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Indemnitee by reason of its willful misconduct with respect to such acts or omissions; *provided, however*, that any indemnity under this <u>Section 16</u> shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

17.    <u>**Sale of Assets; Merger; Liquidation**</u>.  Upon the consent of the Member, the Company may (a) sell or otherwise dispose of all or substantially all of its assets; or (b) merge, liquidate, dissolve, reorganize or file for voluntary bankruptcy.

18.    <u>**Dissolution**</u>. The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of any of the following events: (a) at any time determined by the Member; or (b) a dissolution required pursuant to the Delaware Act (to the extent not modified by this Agreement).

19.    <u>**Other Business**</u>.  The Member, any affiliate of the Member and any director or officer of the Member or of any affiliate of the Member may engage in or possess any interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures of the income or profits therefrom by virtue of this Agreement.

20.    <u>**Tax Matters**</u>.  It is the intention of the Company to be treated as an entity disregarded from the Member for U.S. federal income tax purposes.

21.    <u>**Entire Agreement**</u>.  This Agreement contains the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersedes any prior agreement and understanding of the parties relating to such subject matter.

22.    <u>**Severability**</u>.  In the event that any provision of this Agreement is held to be invalid or unenforceable in any jurisdiction, such provision shall be deemed modified to the minimum extent necessary so that such provision, as so modified, shall no longer be held to be invalid or unenforceable. Any such modification, invalidity or unenforceability shall be strictly limited both to such provision and to such jurisdiction, and in each case to no other.  Furthermore, in the event of any such modification, invalidity or unenforceability, this Agreement shall be interpreted so as to achieve the intent expressed herein to the greatest extent possible in the jurisdiction in question and otherwise as set forth herein.

23.    <u>**Headings and Captions**</u>.  All headings and captions contained in this Agreement are included for convenience of reference only and shall not be deemed a part of this Agreement.

24.    <u>**Terms Generally**</u>.  The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined.  The term "and/or" is used herein to mean both "and" as well as "or."  The use of "and/or" in certain contexts in no respects qualifies or modifies the use of the terms "and" or "or" in others.  "Or" shall not be interpreted to be exclusive unless the context otherwise requires; and "and" shall not be interpreted to require the conjunctive, in each case unless the context otherwise requires.  The terms "include" and "including" are to be construed as non-exclusive (so that, by

way of example and for the avoidance of doubt, "including" shall mean "including without limitation"), in each case unless the context otherwise requires.

25.    **Governing Law**.   THE INTERPRETATION AND ENFORCEABILITY OF THIS AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED UNDER, THE LAWS OF THE STATE OF DELAWARE, ALL RIGHTS AND REMEDIES BEING GOVERNED BY THOSE LAWS. TO THE EXTENT PERMITTED BY THE DELAWARE ACT AND OTHER APPLICABLE LAW, THE PROVISIONS OF THIS AGREEMENT WILL SUPERSEDE ANY CONTRARY PROVISIONS OF THE DELAWARE ACT OR OTHER APPLICABLE LAW.

26.    **Waiver of Partition**.  Each Member hereby irrevocably waives any and all rights that he, she or it may have to maintain any action for partition of any of the Company's property.

27.    **Creditors**.  None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any creditor of the Member or of the Company.  No creditor who makes a loan to the Member or to the Company may have or acquire, solely as a result of making such loan, any membership interest or interest in the profits or property of the Company, other than such membership interest or interest in the profits or property of the Company that may be expressly granted to such creditor, with the written consent of the Member, pursuant to the terms of such loan.

28.    **Corporate Transparency Act**.  To the extent the Company or any of its subsidiaries is a "reporting company" (as defined under the Corporate Transparency Act (31 U.S.C. § 5336), enacted as part of the National Defense Authorization Act for Fiscal Year 2021, as amended, and the rules and regulations promulgated thereunder, including 31 C.F.R. § 1010.380 (the "CTA")) not subject to an applicable exemption under the CTA, each Member agrees and covenants (a) to cooperate with the Company with respect to its inquiry and determination of "beneficial owners" (as defined under the CTA) of the Company or its subsidiaries and (b) to the extent identified by the Company as a "beneficial owner" (as defined under the CTA) of the Company or its subsidiaries, to provide to the Company such information required by the Company or its subsidiaries to comply with the CTA with respect to such Member, including a FinCEN identifier (as defined under the CTA), or personal identifying information and an "acceptable identification document" (as defined in the CTA), and to provide or update information relating to any changes to the same in a timely manner in accordance with the CTA (or to use its commercially reasonable efforts to cause any individual who is a "beneficial owner" by directly or indirectly owning any ownership interests (as defined under the CTA) of such Member, or exercising "substantial control" (as defined under the CTA) through such Member over the Company, to provide or update the same).

29.    **Amendment of this Agreement**.  This Agreement may only be modified, altered, supplemented, amended and/or restated pursuant to a written agreement executed by the Member.

30.    **Counterparts; Electronic Signatures**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  This Agreement shall become binding when one or more counterparts hereof (or thereto), individually or taken together, shall bear the signatures of all of the parties reflected hereon (or thereon) as the signatories.  An executed counterpart of a signature page to this Agreement delivered by facsimile or electronic mail

(including by .pdf, .tif, .gif, .jpg or any other similar attachment to electronic mail) shall be binding in the same manner as a manually executed counterpart delivered in person.

[*Signature page follows.*]

 

 

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Operating Agreement as of the date first above written.

 

<u>**MEMBER**</u>:

 

[●]

 

By: _____
Name: [●]
Title: [●]

**<u>Exhibit A-4</u>**

**Amended and Restated Certificate of Formation**

**STATE OF DELAWARE**

**AMENDED & RESTATED CERTIFICATE OF FORMATION**

**OF**

**[●]**

     This Certificate of Formation of [●] (the "Company"), dated [●], [2025], is being duly executed and filed by the undersigned, as an authorized person, to form a limited liability company pursuant to the Delaware Limited Liability Company Act (6 Del. C. § 18-101 <u>et. seq</u>.).

     **FIRST**.     The name of the limited liability company formed hereby is:

**[●]**

     **SECOND**.     The address of the registered office of the Company in the State of Delaware is [●]. The name of the registered agent of the Company for service of process at such address is [●].

     **THIRD**.     The Company shall not issue any class of non-voting ownership interests unless and solely to the extent permitted by Section 1123(a)(6) of title 11 of the United States Code (the "Bankruptcy Code") as in effect on the date of filing of this Certificate of Formation with the Secretary of State of the State of Delaware; *provided*, *however*, that this Article THIRD (a) will have no further force and effect beyond that required under Section 1123(a)(6) of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as Section 1123(a)(6) of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated from time to time in accordance with applicable law.

\* \* \* \* \* \*

**IN WITNESS WHEREOF**, the undersigned has executed this Certificate of Formation as of the date first above written.

By:_____
    Name: [●]
    Title: Authorized Person

**<u>Exhibit B</u>**

**Schedule of Assumed Executory Contracts and/or Unexpired Leases**

This **Exhibit C**[1] contains the Schedule of Assumed Executory Contracts and Unexpired Leases, which includes those Executory Contracts and Unexpired Leases proposed to be assumed by, or assumed and assigned to, the Reorganized Debtors as set forth on **Exhibit C-1** or the Wind-Down Debtors / Rite Aid Plan Sponsor Entity as set forth on **Exhibit C-2**.[2]  As set forth in the Plan, unless an Executory Contract or Unexpired Lease is specifically included in this **Exhibit C** (or otherwise within the categories listed in the following provisos (a) through (f) of Article V.A of the Plan), **such Executory Contract or Unexpired Lease shall be rejected as of the Effective Date in accordance with the following provisions of the Plan**.

Article V.A of the Plan provides as follows:

> On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected (including any Executory Contract or Unexpired Lease entered into after the Petition Date) shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (a) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) have been previously assumed or rejected by the Debtors pursuant to any Bankruptcy Court order; (c) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (d) are to be assumed and assigned by the Debtors, as applicable, including through a Sale Order in connection with any sale transaction; (e) are a contract, release, or other agreement or document entered into in connection with the Plan; or (f) are an Insurance Policy.  Notwithstanding the foregoing, by consent of McKesson and the Debtors, the deadline for assumption or rejection of the McKesson Supply Documents shall be extended through fifteen (15) Business Days after the earliest of (1) termination of the McKesson Inventory Sale Agreement in accordance with its terms, (2) if the Inmar Outside Date occurs prior to occurrence of the Inmar Closing, the expiration of the Initial Inmar Credit Payment Period (as defined in the McKesson Inventory Sale Agreement), and (3) if the Inmar Closing occurs, expiration of the Subsequent Inmar Credit Payment Period (as defined in the McKesson Inventory Sale Agreement).

> To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease

---

[1]    The Debtors propose to assume each of the third party administrative service agreements and supporting agreements listed in this **Exhibit C**, as well as all current amendments, renewals, business associate agreements, statements of work, appendices, and other supporting documents and agreements incorporated into or entered under the listed agreement (with the exception of The Hartford agreements) and which is necessary to ensure the ability of the Debtors to administer any applicable employee benefit plan in accordance with the Plan.

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the [*First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2517]] (as it may be amended, supplemented, or otherwise modified from time to time, the "Plan").

by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement or similar schedule in connection with a Sale Order, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, (a) the assumptions and assumptions and assignments of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases and (b) the rejections of any such agreements not assumed or assumed and assigned pursuant to this Plan, in each case pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein or in the Confirmation Order or any Sale Order, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is not assumed on the Effective Date pursuant to this **Error! Reference source not found..Error! Reference source not found.**, the effective date of rejection of such Unexpired Leases shall be the later of: (a) the Effective Date, and (b) the date upon which the Debtors or the Wind-Down Debtors, as applicable, notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors or the Wind-Down Debtors surrender the premises as set forth in the foregoing proviso (b), all property remaining in the premises will be deemed abandoned free and clear of any interests, Liens, Claims, and encumbrances and landlords may dispose of such property without further notice or court order, unless otherwise agreed by the applicable lessor or pursuant to an order of the Bankruptcy Court. The Debtors shall provide each counterparty to an Unexpired Lease which is not assumed pursuant to this Plan with a notice (which notice may, for the avoidance of doubt, be included in the notice such party receives with respect to the filing of the Plan Supplement).

Article V.B of the Plan provides as follows:

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases for any Claims which would be subject to the Claims Bar Date pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the earliest of (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (b) the effective date of such rejection, or (c) the Effective Date. **Any such Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time shall be barred from asserting such Claims against the Debtors and/or receiving distributions on account of such Claims in these Chapter 11 Cases. The Debtors, the Reorganized Debtors, or**

3

**the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not timely filed;** *provided* **that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.**  All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with **Error! Reference source not found.** and may be objected to in accordance with the provisions of **Error! Reference source not found.** of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  Pursuant to <u>Article III.B</u> General Unsecured Claims shall not receive any recovery pursuant to the Plan, are not subject to the Claims Bar Date, and no Proofs of Claim with respect to such Claims must be Filed.

<u>Article V.C</u> of the Plan provides as follows:

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, the Wind-Down Debtors, or, solely with respect to any Executory Contracts or Unexpired Leases to be assumed by, or assumed and assigned to, any Reorganized Debtor, the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases, pay all Cure Costs relating to Executory Contracts and Unexpired Leases that are being assumed under the Plan, if any, on such terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that, if a dispute regarding assumption or Cure Cost is unresolved as of the Effective Date, then payment of the applicable Cure Cost shall occur as soon as reasonably practicable after such dispute is resolved.  Any Cure Cost shall be deemed fully satisfied, released, and discharged upon payment of the Cure Cost.

Unless (a) otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease or (b) an earlier deadline has been set with respect to such objection by a Final Order (including, without limitation, the Bidding Procedures Order or any Sale Order, in which case the deadlines set forth in such orders with respect to the applicable Executory Contract or Unexpired Lease shall control), any objection by a counterparty to an Executory Contract or Unexpired Lease to be assumed pursuant to this Plan to the applicable proposed assumption or related Cure Cost must be Filed, served, and actually received by counsel to the Debtors by no later than 14 days after the service of notice of assumption on affected counterparties (which notice may, for the avoidance of doubt, be included in the notice such party receives with respect to the filing of the Plan Supplement). **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and any untimely request for an additional or different Cure Cost shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be**

4

**enforceable against any of the Debtors without the need for any objection by the applicable Reorganized Debtors or the Wind-Down Debtors, as applicable, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court**.

Inclusion of any document in the Schedule of Assumed Executory Contracts and Unexpired Leases is not an admission by the Debtors that any such document constitutes an Executory Contract or Unexpired Lease.  Subject to the terms of the Plan and the Restructuring Support Agreement, the Debtors reserve the right to assert that any of the documents listed in the Schedule of Assumed Executory Contracts and Unexpired Leases are not Executory Contracts or Unexpired Leases.  As a matter of administrative convenience, in certain cases the Debtors may have listed the original parties to the Executory Contracts and Unexpired Leases listed in the Schedule of Assumed Executory Contracts and Unexpired Leases without taking into account any succession of trustees or any other transfers or assignments from one party to another.  The fact that the current parties to any particular Executory Contract or Unexpired Leases may not be named in the Schedule of Assumed Executory Contracts and Unexpired Leases is not intended to change the treatment of such Executory Contracts or Unexpired Leases.  References to any Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan are to the applicable Executory Contract or Unexpired Lease and other operative documents as of the date of the Plan Supplement, as they may have been amended, modified, or supplemented from time to time and as may be further amended, modified, or supplemented by the parties thereto between such date and the Effective Date.

All parties reserve all rights, in accordance with the consent and approval rights provided under the Plan or the Restructuring Support Agreement, to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein, including this **Exhibit C**, at any time before the Effective Date of the Plan, or any such other date as may be provided for by order of the Bankruptcy Court.  Each of the documents contained in the Plan Supplement and its amendments remain subject to certain consent and approval rights to the extent provided in the Plan or the Restructuring Support Agreement.

**[Exhibit C-1][3]**

**Assumed Executory Contracts and Unexpired Leases (Reorganized Debtors)**

| Title of Contract | Counterparty | Debtor Counterparty | Description of Contract | Cure |
|---|---|---|---|---|
| COLLECTIVE BARGAINING AGREEMENT, DATED SEPTEMBER 21, 2023 | UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1176KS | RITE AID OF NEW JERSEY, INC. | COLLECTIVE BARGAINING AGREEMENT | $0.00 |
| INDUSTRIAL BUILDING LEASE, DATED DECEMBER 22, 2015 | COLFIN COBALT I-II OWNER, LLC | RITE AID OF NEW JERSEY, INC. | REAL ESTATE LEASE FOR CENTRAL FILL FACILITY | $79,180.73 |
| MASTER SERVICES AGREEMENT | ENSONO, INC. | RITE AID HDQTRS. CORP. | MASTER SERVICES AGREEMENT | $42,222.49 |
| STATEMENT OF WORK – MAINFRAME REMOTE HOSTED SERVICES | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | INCLUDED IN MASTER SERVICES AGREEMENT |
| AMENDMENT #1 TO THE MASTER SERVICES AGREEMENT | ENSONO, INC. | RITE AID HDQTRS. CORP. | AMENDMENT | INCLUDED IN MASTER SERVICES AGREEMENT |
| STATEMENT OF WORK – RITE AID MAINFRAME PROCESSOR MAINTENANCE | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | INCLUDED IN MASTER SERVICES AGREEMENT |
| STATEMENT OF WORK – RITE AID ICA CARDS AND CABLES | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | INCLUDED IN MASTER SERVICES AGREEMENT |

---

[3]    NTD:  Subject to ongoing review.

| CHANGE ORDER #1 – BC12 AND Z13S REMOTE HOSTED, SECURITY & TRAINING | ENSONO, INC. | RITE AID HDQTRS. CORP. | CHANGE ORDER | INCLUDED IN MASTER SERVICES AGREEMENT |
|---|---|---|---|---|
| SERVICE AGREEMENT | SCRIPTABILITY | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |

[Exhibit C-2][4]

**Assumed Executory Contracts and Unexpired Leases (Wind-Down Debtors) / Assumed and Assigned Executory Contracts and Unexpired Leases (Rite Aid Plan Sponsor Entity)**

| Title of Contract | Counterparty | Debtor Counterparty | Description of Contract | Cure |
|---|---|---|---|---|
| MASTER HEALTH SERVICES AGREEMENT (MHSA), EFFECTIVE JANUARY 1, 2022 | HIGHMARK INC. | RITE AID HDQRTS. CORP. | MASTER HEALTH SERVICES AGREEMENT | $0.00 |
| PRESCRIPTION DRUG PROGRAM AGREEMENT, DATED AS OF JANUARY 1, 2025 | EXPRESS SCRIPTS, INC. | RITE AID HDQRTS. CORP. | PRESCRIPTION DRUG PROGRAM AGREEMENT | $0.00 |
| MASTER SERVICES AGREEMENT | BUSINESSOLVER.COM, INC. | RITE AID HDQRTS. CORP. | MASTER SERVICES AGREEMENT | $0.00 |
| MASTER SERVICES AGREEMENT (DATED 3/13/2013) | CLIFTONLARSONALLEN, LLC | RITE AID HDQRTS. CORP. | MASTER SERVICES AGREEMENT | $2,310.00 |
| NONDISCLOSURE AGREEMENT (DATED 2/2/2017) | DELTA DENTAL OF PENNSYLVANIA | RITE AID HDQRTS. CORP. | NONDISCLOSURE AGREEMENT | $0.00 |
| DELTA DENTAL ADMINISTRATIVE SERVICES CONTRACT (DATED 7/1/2011) | DELTA DENTAL OF PENNSYLVANIA | RITE AID HDQRTS. CORP. | ADMINISTRATIVE SERVICES CONTRACT | $0.00 |
| REMITTANCE AGREEMENT (SIGNED 11/6/2023) | DELTA DENTAL OF PENNSYLVANIA | RITE AID CORPORATION | REMITTANCE AGREEMENT | $0.00 |
| RENEWAL FOR TERM 7/1/2023 - 6/30/2028 (DATED 1/24/2023) | DELTA DENTAL OF PENNSYLVANIA | RITE AID CORPORATION | RENEWAL | $0.00 |

---

[4]    NTD:  Subject to ongoing review.

| AMENDMENT TO THE MASTER UNIVERSAL SERVICE AGREEMENT | EQUIFAX | RITE AID HDQTRS. CORP. | MASTER UNIVERSAL SERVICE AGREEMENT | |
|---|---|---|---|---|
| SCHEDULE A – EPAYROLL SERVICES SERVICE PROVIDER, TERM AND FEES FOR SERVICES | EQUIFAX | RITE AID HDQTRS. CORP. | PAYROLL SERVICES | $2,734.76 |
| PRESCRIPTION DRUG PROGRAM AGREEMENT (DATED 1/1/2025) | EXPRESS SCRIPTS | RITE AID HDQTRS. CORP. | PRESCRIPTION DRUG PROGRAM | $0.00 |
| LETTER OF AGREEMENT (DATED 12/20/2024) | EXPRESS SCRIPTS | RITE AID HDQTRS. CORP. | AGREEMENT | $0.00 |
| ADMINISTRATIVE SERVICES AGREEMENT DATED 09/03/2019 | GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY | RITE AID CORPORATION | ADMINISTRATIVE SERVICES AGREEMENT | $0.00 |
| PERFORMANCE AGREEMENT (DATED 1/1/2023) | HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY | RITE AID HDQTRS. CORP. | PERFORMANCE AGREEMENT | $0.00 |
| LONG TERM DISABILITY BENEFIT ADMINISTRATION AGREEMENT (DATED 1/1/2023) | HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY | RITE AID HDQTRS. CORP. | LONG TERM DISABILITY BENEFIT ADMINISTRATION AGREEMENT | $0.00 |
| ADMINISTRATIVE SERVICES AGREEMENT (DATED 1/1/2015) | HEWIT ASSOCIATES LLC ("AON HEWITT") | RITE AID CORPORATION | ADMINISTRATIVE SERVICES AGREEMENT | $0.00 |
| MASTER HEALTH SERVICES AGREEMENT (DATED 1/1/2020) | HIGHMARK | RITE AID HDQTRS. CORP. | MASTER HEALTH SERVICES AGREEMENT | $0.00 |

| | | | | |
|---|---|---|---|---|
| GROUP AGREEMENT FOR RITE AID CORPORATION (DATED 5/31/2019 FOR GROUP ID: 100507) | KAISER FOUNDATION HEALTH PLAN | RITE AID CORPORATION | GROUP AGREEMENT | $3,006.09 |
| GROUP AGREEMENT FOR RITE AID CORPORATION (DATED 5/31/2019 FOR GROUP ID: 606616) | KAISER FOUNDATION HEALTH PLAN | RITE AID CORPORATION | GROUP AGREEMENT | |
| BUSINESS ASSOCIATE AGREEMENT | LYRA HEALTH | RITE AID HDQTRS. CORP. | BUSINESS ASSOCIATE | $0.00 |
| STATEMENT OF WORK NO. 1 DATED 07/01/2023 | LYRA HEALTH | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| MASTER SERVICES AGREEMENT (DATED 7/1/2023) | LYRA HEALTH | RITE AID HDQTRS. CORP. | MASTER SERVICES AGREEMENT | $0.00 |
| LETTER OF AGREEMENT DATED 09/20/2021 | NEPC LLC | RITE AID HDQTRS. CORP. | LETTER OF AGREEMENT | $0.00 |
| MASTER AGREEMENT DATED 10/21/2022 | ONESOURCE VIRTUAL INC. | RITE AID HDQTRS. CORP. | MASTER AGREEMENT | $0.00 |
| ORDER FORM | ONESOURCE VIRTUAL INC. | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| BUSINESS ASSOCIATE AGREEMENT DATED 07/06/2023 | QUANTUM | RITE AID HDQTRS. CORP. | BUSINESS ASSOCIATE AGREEMENT | $0.00 |
| HEALTHCARE NAVIGATION AND CARE COORDINATION SERVICES AGREEMENT DATED 01/09/2023 | QUANTUM | RITE AID HDQTRS. CORP. | CARE COORDINATION SERVICES AGREEMENT | $0.00 |

| | | | | |
|---|---|---|---|---|
| STATEMENT OF WORK — HEALTH AND WELFARE PLAN MANAGEMENT SERVICES DATED 07/28/2014 | TOWERS WATSON DELAWARE INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK — HEALTH AND WELFARE PLAN MANAGEMENT SERVICES DATED 10/01/2010 | TOWERS WATSON PENNSYLVANIA INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| GROUP VISION CARE POLICY (DATED 7/1/2016) | VSP | RITE AID HDQTRS. CORP. | GROUP VISION CARE POLICY | $0.00 |
| RENEWAL AGREEMENT (DATED 1/23/2024) | VSP | RITE AID HDQTRS. CORP. | RENEWAL | $0.00 |

**<u>Exhibit C</u>**

**Schedule of Retained Causes of Action**

## Schedule of Retained Causes of Action

Pursuant to Article IV.M of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article X of the Plan, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity as of the Effective Date, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Wind-Down Debtors or Reorganized Debtors, as applicable, other than claims and Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan. The Liquidating Trustee shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action retained by the Wind-Down Debtors as indicated below, in accordance with the best interests of the Wind-Down Debtors, and no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Reorganized Debtors shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action retained by the Reorganized Debtors as indicated below.

No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, Reorganized Debtors, Wind-Down Debtors, or Liquidating Trustee, as applicable will not pursue any and all Causes of Action retained by such party against it; *provided* that no claim or Cause of Action against any Released Party shall be a Retained Cause of Action unless any such claim or Cause of Action is included in this Schedule of Retained Causes of Action, and any such claims or Causes of Action against any Released Party not included in this Schedule of Retained Causes of Action shall be deemed released and waived by the Debtors, the Reorganized Debtors, and the Wind-Down Debtors as of the Effective Date. The Debtors, Reorganized Debtors, Wind-Down Debtors, and Liquidating Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article X of the Plan.

For the avoidance of doubt, the retention of claims and Causes of Action set forth in this Schedule of Retained Causes of Action shall not include any claims or Causes of Action against McKesson, including, without limitation, those claims and Causes of Action asserted in the McKesson Complaint. Pursuant to the Plan, the McKesson Complaint shall be dismissed and the McKesson Motion to Compel shall be withdrawn, in each case on or before the Effective Date.

### Causes of Action to be Retained by the Wind-Down Debtors:

Other than to the extent they constitute Reorganized Debtor Causes of Action (as defined below), the Wind-Down Debtors shall retain the following Causes of Action:

A.      **Claims Related to Insurance Contracts and Policies**

Unless otherwise released by the Plan or assigned to the Reorganized Debtors as set forth in the Restructuring Steps Memorandum, the Debtors expressly reserve and retain all Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, and surety bonds to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, other than insurance policies, insurance, and surety bonds that constitute Reorganized Debtor Assets under the Restructuring Steps Memorandum, regardless of whether such contract or policy is specifically identified in the Plan, the Plan Supplement, or any amendments hereto or thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

B.      **Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation**

Unless otherwise released by the Plan, assigned to the Reorganized Debtors as set forth in the Restructuring Steps Memorandum, or settled pursuant to Bankruptcy Rule 9019, the Debtors expressly reserve and retain any and all Causes of Action against or related to all Entities (other than Released Parties) that are party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding involving any Debtor or Wind-Down Debtor, whether formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in this Schedule, the Plan, the Plan Supplement, or any amendments hereto or thereto. Without limitation, such express reservation includes all rights to object to or otherwise contest Claims or Interests asserted against the Debtors and their estates.

Without limiting the generality of the foregoing, the Debtors expressly reserve and retain all Causes of Action against: (1) CVS Pharmacy, Inc. and its affiliated entities (i) in connection with or related to CVS Caremark's Performance Network Program, or any similar programs, and (ii) arising out of or related to *CVS Pharmacy, Inc.'s Emergency Motion to Enforce Sale Order and Compel Performance by Debtors Under the CVS APAs* [Docket No. 2779]; and (2) all Causes of Action against MedImpact Healthcare Systems, Inc. and its affiliated entities (i) in connection with the MedImpact Agreements, the MedImpact Motion, or the MedImpact Stipulation, and/or (ii) arising out of or related to the Appeal (as defined in the MedImpact Stipulation) or the facts giving rise to the Appeal.

C.      **Causes of Action Related to Avoidance Actions**

Unless otherwise released by the Plan, assigned to the Reorganized Debtors as set forth in the Restructuring Steps Memorandum, or settled pursuant to Bankruptcy Rule 9019 (including, without limitation, pursuant to the Administrative Claims Procedures), the Debtors expressly reserve and retain all Causes of Action against or related to all Entities (other than McKesson and its Related Parties, and the Debtors' and their Affiliates' Related Parties) and each Related Party of such Entities that received or may have received a transfer subject to avoidance (including preference claims, fraudulent transfer claims, and claims under sections 542, 543, 544,

545, 547, 548, 549, 550, 553, or 724(a) of the Bankruptcy Code, as well as any applicable
state law) (such potential causes of action,  the "Avoidance Actions").

For the avoidance of doubt, all Avoidance Actions for payments made by the Debtors under
$500,000 (other than payments below $500,000 made to a party that also received at least one
payment equal or exceeding $500,000) (1) shall not be Retained Causes of Action, (2) shall be
deemed settled, waived, discharged, and/or released by the Debtors, the Reorganized Debtors,
or the Wind-Down Debtors and any successor in interest to any such Party as of the Effective Date,
notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary, and (3) shall
not and cannot be offered, sold, resold, pledged, delivered, allotted, or otherwise transferred to or
vested in any party or Entity pursuant to the Plan or otherwise.

**D.      Causes of Action Related to Accounts Receivable Claims**

Unless otherwise released by the Plan or assigned to the Reorganized Debtors as set forth
in the Restructuring Steps Memorandum, the Debtors expressly reserve and retain all Causes of
Action against or related to all Entities that owe or that may in the future owe money to any Debtor
or Wind-Down Debtor under any contractual arrangement, regardless of whether such Entity is
expressly identified in the Plan, the Plan Supplement, or any amendments hereto or thereto.

**E.      Causes of Action Related to Deposits and Letters of Credit**

Unless otherwise released by the Plan or assigned to the Reorganized Debtors as set forth
in the Restructuring Steps Memorandum, the Debtors expressly reserve and retain all Causes of
Action against or related to all Entities that hold or may in the future hold deposits, collateral,
refunds, credits, or other funds for which the Debtors or the Wind-Down Debtors, as applicable,
may be entitled to recover from any such Entities under the relevant agreement, contract, statute,
or law, regardless of whether such Entity is expressly identified in the Plan, the Plan Supplement,
or any amendments hereto or thereto.

**F.      Causes of Action Related to Taxes, Fees, and Tax or Fee Refunds or Credits**

Unless otherwise released under the Plan or assigned to the Reorganized Debtors as set
forth in the Restructuring Steps Memorandum, the Debtors expressly reserve all claims and Causes
of Action against or related to all entities that owe or that may in the future owe money related to
tax or fee refunds, credits, overpayments, recoupments, offsets, or other claims that may be due
and owing to the Debtors or the Wind-Down Debtors, as applicable. Furthermore, the Debtors
expressly reserve all Causes of Action against or related to all entities who assert or may assert
that the Debtors or the Wind-Down Debtors owe tax obligations to them.

**Causes of Action to be Retained by the Reorganized Debtors:**

Upon the Effective Date, the Reorganized Debtors will retain any and all Retained Causes of
Action arising out of or related to:  (a) any Executory Contract or Unexpired Lease set forth on the
Schedule of Assumed Executory Contracts and Unexpired Leases to be assumed by and/or
assumed and assigned to the Reorganized Debtors; (b) any other postpetition contract or lease that
is retained by the Reorganized Debtors on the Effective Date; (c) all tax attributes of the Debtors
including, but not limited to, (i) any historical losses, including capital losses and passive activity

losses, (ii) carryovers, (iii) offsets, (iv) credits, and (v) any other direct or indirect tax benefit or attribute, provided that (1) in the case of each of the foregoing, any refunds of taxes paid by the Debtors prior to the Effective Date (and any Retained Causes of Action arising out of such refunds or relating thereto) are excluded from the preceding list of tax attributes and shall be allocated to the Wind-Down Debtors, and (2) for the avoidance of doubt, the foregoing shall in no way limit the application (to the extent available under applicable tax law) of tax attributes arising in respect of taxable periods of the Debtors ending on or before, or including, the Effective Date in satisfaction of tax liabilities arising in respect of such periods in order to minimize or extinguish any Secured Tax Claim or Priority Tax Claim; (d) all Entities (other than Released Parties) that are party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding involving any Reorganized Debtor, whether formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in this Schedule, the Plan, the Plan Supplement, or any amendments hereto or thereto; and (e) all commercial Causes of Action against any Entity arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, to the extent such Causes of Action relate to the operation of the Central Fill Facility, including Causes of Action (x) against or related to all Entities that owe or that may in the future owe money to any Reorganized Debtor related to the Central Fill Facility under any contractual arrangement and (y) against or related to all Entities that hold or may in the future hold deposits, collateral, refunds, credits, or other funds related to the Central Fill Facility that the Reorganized Debtors may be entitled to recover from any such Entities under the relevant agreement, contract, statute, or law, and in the case of each of (x) and (y), regardless of whether such Entity is expressly identified in the Plan, the Plan Supplement, or any amendments hereto or thereto (the foregoing clauses (a)–(e), collectively, the "Reorganized Debtor Causes of Action").

**<u>Exhibit D</u>**

**Restructuring Steps Memorandum**

## Restructuring Steps Memorandum

Pursuant to the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* (the "Plan"), the Restructuring Transactions shall, except as otherwise explicitly stated below, be consummated pursuant to the following steps and in the order set forth below.  Any capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Plan.

In accordance with the Plan, the steps set forth in this Restructuring Steps Memorandum remain subject to modification, in accordance with the Plan and with the consent of McKesson and the DIP Agent, until the Effective Date.

**Restructuring Transactions**:

**Step 1.**   Prior to the Effective Date and prior to Step 2, pursuant to Article III.B.5 of the Plan, each of the Debtors under the Plan shall waive any Intercompany Claims arising out of rights to subrogation, contribution, reimbursement, indemnity or similar rights (the "Rights") under: (i)(a) the Debtor in Possession Guarantee Agreement dated as of May 8, 2025, by and among New Rite Aid, LLC, certain of its subsidiaries from time to time party thereto, and Bank of America, N.A., as Collateral Agent and (b) the Debtor-in-Possession Indemnity, Subrogation and Contribution Agreement, dated as of May 8, 2025, by and among Rite Aid Corporation, New Rite Aid, LLC, certain subsidiaries of Rite Aid Corporation from time to time party thereto, and Bank of America, N.A., as Collateral Agent; (ii) the Subsidiary Guarantee Agreement dated as of August 30, 2024, by and among certain subsidiaries of Rite Aid Corporation from time to time party thereto, and Bank of America, N.A., as Collateral Agent; (iii) the Indemnity, Subrogation and Contribution Agreement dated as of August 30, 2024, by and among Rite Aid Corporation, certain subsidiaries of Rite Aid Corporation from time to time party thereto, and Bank of America, N.A., as Collateral Agent; and (iv) the indentures dated August 30, 2024 and entered in connection with the Floating Rate Senior Secured PIK Notes due 2031, Third-Priority Series A Senior Secured PIK Notes due 2031, and Third-Priority Series B Senior Secured PIK Notes due 2031. Any such Rights shall be cancelled and of no further legal effect upon such waiver.

**Step 2.**   Prior to the Effective Date, each of the following Debtors (which shall comprise the "Wind-Down Debtors" under the Plan, as of the Effective Date) shall transfer to Rite Aid of New Jersey, Inc. any Reorganized Debtor Assets (as defined in Exhibit 1 hereto) owned by such Wind-Down Debtor. For the avoidance of doubt, all Specified Excluded Assets (as defined in Exhibit 2 hereto) of the Wind-Down Debtors shall not be assigned and/or transferred to the Reorganized Debtors, and shall be retained by the Wind-Down Debtors to be administered in accordance with the Plan subject to the terms of any purchase agreement executed prior to the Effective Date, including, without limitation, that certain Asset Purchase Agreement by and between McKesson and Rite Aid of New Jersey, Inc., dated September 18, 2025 (the "McKesson APA").  For

the avoidance of doubt, nothing herein shall modify, amend or alter McKesson's obligations under the McKesson APA to acquire the Purchased Assets (as defined in the McKesson APA) subject to the terms and conditions of the McKesson APA, and any such Purchased Assets shall not constitute Reorganized Debtor Assets.

| Debtor | Jurisdiction |
| --- | --- |
| 1740 Associates, L.L.C. | Michigan |
| 4042 Warrensville Center Road - Warrensville Ohio, Inc. | Ohio |
| 5277 Associates, Inc. | Washington |
| 5600 Superior Properties, Inc. | Ohio |
| Apex Drug Stores, Inc. | Michigan |
| Broadview and Wallings-Broadview Heights Ohio, Inc. | Ohio |
| Drug Palace, Inc. | Maine |
| Eckerd Corporation | Delaware |
| EDC Drug Stores, Inc. | North Carolina |
| Ex Benefits, LLC | Florida |
| Ex Design Holdings, LLC | Delaware |
| Ex Design, LLC | Wyoming |
| Ex Holdco, LLC | Delaware |
| Ex Initiatives, LLC | Utah |
| Ex Options, LLC | Ohio |
| Ex Pharmacy, LLC | Ohio |
| Ex Procurement, LLC | Ohio |
| Ex Rxclusives, LLC | Wyoming |
| Ex Savings, LLC | Florida |
| Ex Software, LLC | Minnesota |
| Ex Solutions of MO, LLC | Missouri |
| Ex Solutions of NV, LLC | Nevada |
| Ex Solutions of OH, LLC | Ohio |
| Ex Tech, LLC | Delaware |
| First Florida Insurers of Tampa, LLC | Florida |
| GDF, Inc. | Maryland |
| Genovese Drug Stores, Inc. | Delaware |
| Gettysburg and Hoover-Dayton, Ohio, LLC | Ohio |
| Grand River & Fenkell, LLC | Delaware |
| Harco, Inc. | Alabama |
| Hunter Lane, LLC | Delaware |
| ILG – 90 B Avenue Lake Oswego, LLC | Delaware |
| JCG (PJC) USA, LLC | Delaware |
| JCG Holdings (USA), Inc. | Delaware |
| K & B Alabama Corporation | Alabama |

| | |
|---|---|
| K & B Louisiana Corporation | Louisiana |
| K & B Mississippi Corporation | Mississippi |
| K & B Services, Incorporated | Louisiana |
| K & B Tennessee Corporation | Tennessee |
| K & B, Incorporated | Delaware |
| K&B Texas Corporation | Texas |
| Lakehurst and Broadway Corporation | New Jersey |
| LMW - 90B Avenue Lake Oswego, Inc | Delaware |
| Maxi Drug North, Inc. | Delaware |
| Maxi Drug South, L.P. | Delaware |
| Maxi Drug, Inc. | Delaware |
| Maxi Green Inc. | Vermont |
| Munson & Andrews, LLC | Delaware |
| Name Rite, LLC | Delaware |
| P.J.C. Distribution, Inc. | Delaware |
| P.J.C. Realty Co., Inc. | Delaware |
| PDS-1 Michigan, Inc. | Michigan |
| Perry Drug Stores, Inc. | Michigan |
| PJC Lease Holdings, Inc. | Delaware |
| PJC Manchester Realty LLC | Delaware |
| PJC of Massachusetts, Inc. | Massachusetts |
| PJC of Rhode Island, Inc. | Rhode Island |
| PJC of Vermont Inc. | Vermont |
| PJC Peterborough Realty LLC | Delaware |
| PJC Realty MA, Inc. | Massachusetts |
| PJC Revere Realty LLC | Delaware |
| PJC Special Realty Holdings, Inc. | Delaware |
| RCMH LLC | Texas |
| RDS Detroit, Inc. | Michigan |
| READ's Inc. | Maryland |
| RediClinic Associates, Inc. | Delaware |
| RediClinic LLC | Delaware |
| RediClinic of Dallas-Fort Worth, LLC | Delaware |
| RediClinic of DC, LLC | Delaware |
| RediClinic of DE, LLC | Delaware |
| RediClinic of MD, LLC | Delaware |
| RediClinic of PA, LLC | Delaware |
| RediClinic of VA, LLC | Delaware |
| RediClinic US, LLC | Delaware |
| Richfield Road - Flint, Michigan, LLC | Michigan |
| Rite Aid Drug Palace, Inc. | Delaware |

| | |
|---|---|
| Rite Aid Hdqtrs. Funding, Inc. | Delaware |
| Rite Aid Lease Management Company | California |
| Rite Aid of Connecticut, Inc. | Connecticut |
| Rite Aid of Delaware, Inc. | Delaware |
| Rite Aid of Georgia, Inc. | Georgia |
| Rite Aid of Indiana, Inc. | Indiana |
| Rite Aid of Kentucky, Inc. | Kentucky |
| Rite Aid of Maine, Inc. | Maine |
| Rite Aid of Maryland, Inc. | Maryland |
| Rite Aid of Michigan, Inc. | Michigan |
| Rite Aid of New Hampshire, Inc. | New Hampshire |
| Rite Aid of New York, Inc. | New York |
| Rite Aid of North Carolina, Inc. | North Carolina |
| Rite Aid of Ohio, Inc. | Ohio |
| Rite Aid of Pennsylvania, LLC | Pennsylvania |
| Rite Aid of South Carolina, Inc. | South Carolina |
| Rite Aid of Tennessee, Inc. | Tennessee |
| Rite Aid of Vermont, Inc. | Vermont |
| Rite Aid of Virginia, Inc. | Virginia |
| Rite Aid of Washington, D.C. Inc. | District of Columbia |
| Rite Aid of West Virginia, Inc. | West Virginia |
| Rite Aid Online Store, Inc. | Delaware |
| Rite Aid Payroll Management, Inc. | Delaware |
| Rite Aid Realty Corp. | Delaware |
| Rite Aid Rome Distribution Center, Inc. | New York |
| Rite Aid Specialty Pharmacy, LLC | Delaware |
| Rite Aid Transport, Inc. | Delaware |
| Rite Investments Corp. | Delaware |
| Rite Investments Corp., LLC | Delaware |
| Rx Choice, Inc. | Delaware |
| Rx USA, Inc. | Delaware |
| The Bartell Drug Company | Washington |
| The Jean Coutu Group (PJC) USA, Inc. | Delaware |
| The Lane Drug Company | Ohio |
| Thrift Drug, Inc. | Delaware |
| Thrifty Corporation | California |
| Thrifty Ice Cream, LLC | Delaware |
| Thrifty PayLess, Inc. | California |

**Step 3**.     Prior to the Effective Date, each of the following Debtors shall convert to a limited liability company that will be classified as a disregarded entity for U.S.

federal and applicable state and local income tax purposes, with the effective
date of such conversion occurring after Step 2 and prior to Step 7. It is intended
that a deduction will be claimed pursuant to section 165(g)(3) of the Internal
Revenue Code on the consolidated U.S. federal income tax return of the
applicable Debtors for the tax year that includes the Effective Date in respect
of the tax basis in the stock of the entities converted pursuant to this Step 3.

| Debtors | Jurisdiction |
|---|---|
| Rite Aid of Michigan, Inc. | Michigan |
| Rite Aid of Connecticut, Inc. | Connecticut |
| Rite Aid of Georgia, Inc. | Georgia |
| Rite Aid of Kentucky, Inc. | Kentucky |
| Rite Aid of New Hampshire, Inc. | New Hampshire |
| Rite Aid of North Carolina, Inc. | North Carolina |
| Rite Aid of South Carolina, Inc. | South Carolina |
| Rite Aid of Vermont, Inc. | Vermont |
| Rite Aid of Washington, D.C., Inc. | Washington, D.C. |
| Rite Aid of Delaware, Inc. | Delaware |
| Rite Aid of Indiana, Inc. | Indiana |
| Rite Aid of Maine, Inc. | Maine |
| Rite Aid of Maryland, Inc. | Maryland |
| Rite Aid of New York, Inc. | New York |
| Rite Aid of Ohio, Inc. | Ohio |
| Rite Aid of Tennessee, Inc. | Tennessee |
| Rite Aid of Virginia, Inc. | Virginia |
| Rite Aid of West Virginia, Inc. | West Virginia |
| Rite Aid Drug Palace, Inc. | Delaware |
| The Lane Drug Company | Ohio |
| Rite Aid Online Store, Inc. | Delaware |
| Rite Aid Payroll Management, Inc. | Delaware |
| Harco, Inc. | Alabama |
| K&B, Incorporated | Delaware |
| Thrifty Payless, Inc. | California |
| Broadview and Wallings-Broadview Heights, Ohio, Inc. | Ohio |
| Drug Palace, Inc. | Maine |
| GDF, Inc. | Maryland |
| Lakehurst and Broadway Corporation | New Jersey |
| Rite Aid Hdqtrs. Funding, Inc. | Delaware |
| Rite Investments Corp. | Delaware |
| Rite Aid Transport, Inc. | Delaware |
| Rx Choice, Inc. | Delaware |
| Rx USA, Inc. | Delaware |
| 4042 Warrensville Center Road Warrensville Ohio, Inc. | Ohio |
| 5277 Associates, Inc. | Washington |

| 5600 Superior Properties, Inc. | Ohio |
| The Jean CoutuGroup (PJC) USA, Inc. | Delaware |
| RediClinic Associates, Inc. | Delaware |

**Step 4.** Prior to the Effective Date, the Debtors will file, or cause to be filed, U.S. Internal Revenue Service Form 8832 for the following entity, electing for such entity to be classified as an entity disregarded as separate from its owner for U.S. federal income tax purposes, with the effective date of such election occurring after Step 2 and prior to Step 7. It is intended that a deduction will be claimed pursuant to section 165(g)(3) of the Internal Revenue Code on the consolidated U.S. federal income tax return of the applicable Debtors for the tax year that includes the Effective Date in respect of the tax basis in the stock of the entity converted pursuant to this Step 4.

| Debtor | Jurisdiction |
|---|---|
| Hunter Lane, LLC | Delaware |

**Step 5.** Prior to the Effective Date, the Debtors shall form the Liquidating Trust and the Liquidating Trustee shall execute the Liquidating Trust Agreement. It is intended that the Liquidating Trust be treated for U.S. federal income tax purposes as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Internal Revenue Code, except as otherwise provided for in the Plan.

**Step 6.** Prior to the Effective Date, (i) each of the following Debtors (which shall comprise the "Reorganized Debtors" under the Plan, as of the Effective Date) shall transfer to the Liquidating Trust any property owned by such Reorganized Debtor that constitutes Specified Excluded Assets or otherwise does not constitute Reorganized Debtor Assets and (ii) each Wind-Down Debtor shall transfer all property owned by such Wind-Down Debtor that does not constitute Reorganized Debtor Assets to the Liquidating Trust. It is intended that, for U.S. federal income tax purposes, any transfer of property to the Liquidating Trust pursuant to this Step 6 will be deemed to occur as (i) a first-step transfer of the Liquidating Trust Assets to the Holders of the applicable Claims, and (ii) a second-step transfer by such Holders to the Liquidating Trust.

| Debtor | Jurisdiction |
|---|---|
| New Rite Aid, LLC | Delaware |
| Rite Aid Corporation | Delaware |
| Rite Aid Hdqtrs. Corp. | Delaware |
| Rite Aid of New Jersey, Inc. | New Jersey |

**Step 7.** Prior to the Effective Date, the Debtors will file with the Bankruptcy Court a notice of abandonment of the Debtors' equity interests in the following entities and the Bankruptcy Court shall have approved such abandonment, thereby abandoning all equity interests in such entities prior to the Effective Date. It is

intended that a deduction will be claimed on the consolidated U.S. federal income tax return of the applicable Debtors for the tax year that includes the Effective Date in respect of the tax basis in all of the assets that are abandoned pursuant to this Step 7 (including interests in entities treated as partnerships for U.S. federal income tax purposes) other than the equity interests of the entities converted pursuant to Steps 3 and 4 (the treatment of which is addressed separately in those steps).

| Debtor | Abandoned Entity | Jurisdiction |
|---|---|---|
| Rite Aid Corporation | JCG (PJC) USA, LLC | Delaware |
| Rite Aid Corporation | Rite Aid of Michigan, Inc. | Michigan |
| Rite Aid Corporation | Rite Aid of Connecticut, Inc. | Connecticut |
| Rite Aid Corporation | Rite Aid of Georgia, Inc. | Georgia |
| Rite Aid Corporation | Rite Aid of Kentucky, Inc. | Kentucky |
| Rite Aid Corporation | Rite Aid of New Hampshire, Inc. | New Hampshire |
| Rite Aid Corporation | Rite Aid of North Carolina, Inc. | North Carolina |
| Rite Aid Corporation | Rite Aid of South Carolina, Inc. | South Carolina |
| Rite Aid Corporation | Rite Aid of Vermont, Inc. | Vermont |
| Rite Aid Corporation | Rite Aid of Washington, D.C., Inc. | Washington, D.C. |
| Rite Aid Corporation | Rite Aid of Delaware, Inc. | Delaware |
| Rite Aid Corporation | Rite Aid of Indiana, Inc. | Indiana |
| Rite Aid Corporation | Rite Aid of Maine, Inc. | Maine |
| Rite Aid Corporation | Rite Aid of Maryland, Inc. | Maryland |
| Rite Aid Corporation | Rite Aid of New York, Inc. | New York |
| Rite Aid Corporation | Rite Aid of Ohio, Inc. | Ohio |
| Rite Aid Corporation | Rite Aid of Tennessee, Inc. | Tennessee |
| Rite Aid Corporation | Rite Aid of Virginia, Inc. | Virginia |
| Rite Aid Corporation | Rite Aid of West Virginia, Inc. | West Virginia |
| Rite Aid Corporation | Rite Aid Drug Palace, Inc. | Delaware |
| Rite Aid Corporation | The Lane Drug Company | Ohio |
| Rite Aid Corporation | Rite Aid Online Store, Inc. | Delaware |
| Rite Aid Corporation | Rite Aid Payroll Management, Inc. | Delaware |
| Rite Aid Corporation | Harco, Inc. | Alabama |
| Rite Aid Corporation | K&B, Incorporated | Delaware |
| Rite Aid Corporation | Thrifty Payless, Inc. | California |
| Rite Aid Corporation | Hunter Lane, LLC | Delaware |
| Rite Aid Corporation | Broadview and Wallings-Broadview Heights, Ohio, Inc. | Ohio |
| Rite Aid Corporation | Drug Palace, Inc. | Maine |
| Rite Aid Corporation | GDF, Inc. | Maryland |
| Rite Aid Corporation | Grand River & Fenkell, LLC | Delaware |
| Rite Aid Corporation | Lakehurst and Broadway Corporation | New Jersey |
| Rite Aid Corporation | Rite Aid Hdqtrs. Funding, Inc. | Delaware |

| Rite Aid Corporation | Rite Investments Corp. | Delaware |
|---|---|---|
| Rite Aid Corporation | Rite Aid Transport, Inc. | Delaware |
| Rite Aid Corporation | Rx Choice, Inc. | Delaware |
| Rite Aid Corporation | Rx USA, Inc. | Delaware |
| Rite Aid Corporation | 4042 Warrensville Center Road Warrensville Ohio, Inc. | Ohio |
| Rite Aid Corporation | 5277 Associates, Inc. | Washington |
| Rite Aid Corporation | 5600 Superior Properties, Inc. | Ohio |
| Rite Aid Hdqtrs. Corp. | RediClinic, LLC | Delaware |
| Rite Aid Hdqtrs. Corp. | Rite Aid of Pennsylvania, LLC | Delaware |
| Rite Aid Hdqtrs. Corp. | Rite Aid Specialty Pharmacy, LLC | Delaware |

**Step 8.**   Immediately prior to the occurrence of the Effective Date, the Debtors shall terminate the employment of each employee of the Debtors that shall become Reorganized Debtors, other than employees who McKesson and the Debtors have mutually identified as being employed in connection with operation of the Central Fill Facility.

**Step 9.**   On the Effective Date, pursuant to Section II.F of the Plan, McKesson will (i) receive in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for, its McKesson 503(b)(9) Claims, 100% of the new equity of Reorganized New Rite Aid and (ii) contribute $20,000,000 to the Wind-Down Debtors in consideration of the covenants and releases under the RSA and the Plan. On the Effective Date, pursuant to Section III.B.6 of the Plan, the Intercompany Interests held by New Rite Aid in Rite Aid Corporation, and the Intercompany Interests held by Rite Aid Corporation in each of Rite Aid of New Jersey, Inc. and Rite Aid Hdqtrs. Corp, shall be Reinstated.  It is intended that the limitation on tax attributes under section 382(a) of the Internal Revenue Code will not apply as a result of the transactions that occur pursuant to the Plan because, among other reasons, the transaction in clause (i) of this Step 9 will qualify for the exception to such limitation under section 382(l)(5) of the Internal Revenue Code, and such exception was not applied, and will not be applied, to any prior ownership change of any Debtor within the prior two years.

On the tax returns of the Debtors and the Liquidating Trust (including the tax returns to be filed by the Liquidating Trustee pursuant to the Plan) will be filed consistent with this Restructuring Steps Memorandum and will reflect, as applicable, that the entities abandoned or converted pursuant to Steps 3, 4, and 7 have been abandoned or liquidated for U.S. federal and applicable state and local income tax purposes effective as of the time of such abandonment or conversion.

**Step 10**.   On the Effective Date, each Holder of an Allowed Prepetition FILO Claim will receive in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for, its Allowed Prepetition FILO Claim, its Pro

Rata share of the FILO Cash Distribution. The intended U.S. federal income tax treatment of this step is discussed in the Disclosure Statement.

<u>Exhibit 1</u>

**Reorganized Debtor Assets**

The following shall comprise the "<u>Reorganized Debtor Assets</u>":

- All assets of the Debtors, other than executory contracts and unexpired leases, primarily used in the operation of the Central Fill Facility and reasonably necessary to the operation of the Central Fill Facility in the ordinary course of business prior to the Debtors' chapter 11 cases.

- All permits of/held by (i) the Debtors designated to become Reorganized Debtors and (ii) the Debtors designated to become Wind-Down Debtors that are used in the operation of the Central Fill Facility to the extent such permits are transferrable.

- All personal property and real estate owned by the Debtors and located at the Central Fill Facility as of the Effective Date, excluding any inventory.

- All deposits and prepaid amounts primarily relating to the Central Fill Facility, including, for the avoidance of doubt, vendor and utility deposits.

- All surety bonds primarily relating to the Central Fill Facility.

- All remaining escrow balances or collections on behalf of the Central Fill Facility.

- The executory contracts and unexpired leases set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases including, for the avoidance of doubt, the lease for the Central Fill Facility.

- All intellectual property owned by any of the Debtors, including patents, industrial designs, inventions, database rights, works of authorship, design rights, commercial secrets, software, and copyrights, but excluding any intellectual property identified as a Specified Excluded Asset in Exhibit 2 hereto.

<u>Exhibit 2</u>

**Specified Excluded Assets**

The following shall comprise the "<u>Specified Excluded Assets</u>":

- Cash and cash equivalents in bank accounts and cash registers, including, but not limited to, (i) amounts in the Debtors' operating accounts, (ii) amounts in any reserve, segregated and escrow accounts held or owned by the Debtors (*e.g.*, PNW Escrow, P-Card Collateral, Guggenheim Fee Account, Employee Expense Account, Liquor License escrowed sale proceeds, Utility Deposit Account, and Stub Rent Escrow Account), and (iii) cash and cash proceeds from the return of any drawn or undrawn Letters of Credit;

- Inventory.

- Purchased Assets, which shall be treated in accordance with the McKesson APA.

- Liquor licenses and remaining collections or escrow balances related thereto;

- Unless otherwise released by the Plan or assigned to the Reorganized Debtors as set forth in this Restructuring Steps Memorandum, all accounts receivables that are owed or that may in the future owe money to any Debtor or Wind-Down Debtor under any contractual arrangement, regardless of whether such Entity is expressly identified in the Plan, the Plan Supplement, or any amendments hereto or thereto, including, but not limited to: (i) GER / BER PBM receivables from prior and current plan years; (ii) contingent accounts receivable claims related to Change Healthcare; (iii) disputed past-due accounts receivable associated with Medi-Cal; (iv) outstanding amounts from the Debtors' previous asset sales of prescription files, inventory, leased or other real property, furniture, fixtures and equipment; (v) Health Plan rebates; (vi) credit card holdbacks; and (vii) any and all intercompany receivable balances;

- Any and all residual front-end inventory balances or collections on behalf thereof;

- Owned real estate, collections or escrow balances related to owned property;

- Any and all remaining leases, escrow balances or collections, except for the Central Fill Facility;

- Any and all prepaid assets and amounts, including (i) vendor deposits (excluding, for the avoidance of doubt, those vendor deposits primarily relating to the Central Fill Facility), (ii) professional fee retainers, (iii) other amounts reimbursable from professionals (*e.g.*, SB360 reconciliation reimbursements) and (iv) reimbursable insurance premiums;

- Any and all remaining unsold fixtures and equipment, other than such located at the Central Fill Facility;

- The following intellectual property: (a) the Debtors' https://www.riteaid.com/ website; (b) any rights with respect to the use of the Rite Aid brand name; and (c) the Debtors' front-end customer list;

- Any and all refunds of taxes paid by the Debtors prior to the Effective Date of the Plan; and

- Any and all Retained Causes of Action as defined in the Plan that are to be retained by the Wind-Down Debtors pursuant to the Retained Causes of Action Schedule, including any proceeds from Retained Causes of Action that were sold pursuant to the *Order Approving Sale of the Retained Preference Claims to RAD Sub-Trust A, Pursuant to Section 363 of the Bankruptcy Code and Granting Related Relief* [Docket No. 2878].

**<u>Exhibit E</u>**

**New Board of Directors Disclosures**

[To Come]

**<u>Exhibit F</u>**

**Liquidating Trustee Identity and Terms of Compensation**

The Debtors and their stakeholders are currently negotiating with certain professionals to serve as Liquidating Trustee.  Negotiations with respect to the retention and compensation of the Liquidating Trustee remain ongoing at this time, and the identity and compensation of the Liquidating Trustee shall be disclosed in a subsequent filing.

**Exhibit G**

**Liquidating Trust Agreement**

**LIQUIDATING TRUST AGREEMENT**

**Dated as of [_], 2025**

*Pursuant to the Second Amended Joint Chapter 11 Plan of
Reorganization of New Rite Aid, LLC and Its Debtor Affiliates*

1

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date (defined below), is entered into pursuant to the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* (as may be further amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[1] in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") by the Trustee identified on the signature pages hereof (the "**Trustee**").

## RECITALS

**WHEREAS**, the Plan contemplates the creation of the Liquidating Trust (the "**Trust**");

**WHEREAS**, the Confirmation Order [Docket No. [_]] was entered by the Bankruptcy Court on October [_], 2025;

**WHEREAS**, pursuant to the Plan, as of the Effective Date, the Trust is established to provide for distributions of the Liquidating Trust Assets to the Beneficiaries (as defined below) in accordance with the Plan, the Confirmation Order, and this Trust Agreement;

**WHEREAS**, the Trustee shall administer the Trust in accordance with the terms of the Plan, the Confirmation Order, and this Trust Agreement; and

**WHEREAS**, pursuant to the Plan, the Trust is intended to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations or under applicable Internal Revenue Service ("**IRS**") guidelines, and a "grantor trust" for United States federal

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, as applicable, and such definitions are also incorporated herein by reference.

income tax purposes, pursuant to Sections 671 through 679 of the Internal Revenue Code (the "**IRC**"), with the Beneficiaries treated as the grantors of the Trust, except with respect to any Disputed Ownership Fund pursuant to Section 5.3(d) hereof.

      **NOW, THEREFORE,** it is hereby agreed as follows:

**ARTICLE I**

**AGREEMENT OF TRUST**

      1.1    <u>**Creation and Name**</u>. There is hereby created a trust known as the "RAD Liquidating Trust." The Trustee of the Trust may transact the business and affairs of the Trust in the name of the Trust, and references herein to the Trust shall include for all purposes the Trustee acting on behalf of the Trust and for the benefit of (a) the Holders of DIP Claims (the "**DIP Beneficiaries**") and (b) Holders of Allowed Administrative Claims (other than Professional Fee Claims), Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and any unpaid Settled Priority Claims which become entitled to distributions after the Effective Date under the Plan (the "**Priority Beneficiaries**" and together with the DIP Beneficiaries, the "**Beneficiaries**"). It is the intention of the Trustee that the Trust qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations and that this Trust Agreement constitute the governing instrument of the Trust, except with respect to any Disputed Ownership Fund.

      1.2    <u>**Appointment of Trustee**</u>. The Trustee is hereby appointed as the Trustee of the Trust on the Effective Date and agrees to accept and liquidate the Liquidating Trust Assets in trust on behalf of, and for the benefit of, the Beneficiaries subject to the terms of the Plan, the Confirmation Order, and this Trust Agreement.

2

1.3     **Purposes.**  The purposes of the Trust are to, in each case, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust, in accordance with applicable Treasury Regulations:

(a)     receive the Liquidating Trust Assets pursuant to the terms of the Plan and the Confirmation Order;

(b)     with the primary purpose of liquidating and distributing (as applicable) the assets transferred to it, hold, manage, protect, and, subject to Section 3.2 hereof, invest the Liquidating Trust Assets, which includes any income or gain earned thereon and proceeds derived therefrom, and monetize any non-liquid Liquidating Trust Assets, in accordance with the terms of the Plan, the Confirmation Order and this Trust Agreement for the benefit of the Beneficiaries;

(c)     administer, reconcile, dispute, object to, compromise, or otherwise resolve all Disputed Claims;

(d)     make distributions to Beneficiaries in accordance with the Plan, Confirmation Order, and this Trust Agreement;

(e)     endeavor to make timely distributions and not unduly prolong the duration of the Trust;

(f)     administer the Wind-Down in accordance with the Plan;

(g)     abandon, liquidate, and reduce to Cash any non-Cash Liquidating Trust Assets;

(h)     maximize recoveries for the benefit of the Beneficiaries;

(i)     qualify at all times as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund;

(j)      engage in any lawful activity that is appropriate, and in furtherance of, the purposes of the Trust to the extent consistent with the Plan, the Confirmation Order, and this Trust Agreement; and

(k)      be deemed to be substituted as the party in lieu of the Wind-Down Debtors (or, solely with respect to Causes of Action which vest in the Wind-Down Debtors and become Liquidating Trust Assets pursuant to the Plan and Restructuring Steps Memorandum which were previously held by the Reorganized Debtors, the Reorganized Debtors) in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, if any, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Trust to file motions or substitutions of parties or counsel in each such matter; *provided* that any actions taken pursuant to the foregoing authority shall be consistent in all respects with the Plan and any order of the Bankruptcy Court prior to the Effective Date, including Article X of the Plan.

**1.4**      **Transfer of Assets.**  Pursuant to, and in accordance with Article IV.C of the Plan, the Trust has received (or will receive, on or before the Effective Date), the Liquidating Trust Assets.  The Liquidating Trust Assets will be transferred to the Trust free and clear of any liens, interests, encumbrances, or other claims by the Debtors, the Reorganized Debtors, the Wind Down Debtors, any creditor, or other entity including, but not limited to, the purchasers of any of the Debtors' assets.  No other entity shall have any interest, legal, beneficial or otherwise, in the Liquidating Trust Assets upon the assignment and transfer of such assets to the Trust except as set forth in this Trust Agreement.

**1.5**      **Acceptance of Assets and Assumption of Liabilities.**

4

(a)     In furtherance of the purposes of the Trust, the Trust hereby expressly accepts the transfer to the Trust of the Liquidating Trust Assets in the time and manner as, and subject to the terms, contemplated in the Plan and Confirmation Order.

(b)     In furtherance of the purposes of the Trust, except as otherwise provided herein or in the Plan or Confirmation Order, the Trust shall have and retain all rights and defenses the Debtors had with respect to any Disputed Claims immediately before the Effective Date to the extent necessary to administer such Claims in accordance with this Trust Agreement, the Plan, and the Confirmation Order.

(c)     Notwithstanding anything to the contrary herein, no provision herein shall be construed or implemented in a manner that would cause the Trust to fail or cease to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

(d)     In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

**1.6**     **Jurisdiction.**  The Bankruptcy Court shall have continuing jurisdiction over the Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Trust.

**ARTICLE II**

**POWERS, TRUST ADMINISTRATION, AND REPORTING**

**2.1**     **Powers.**

(a)     The Trustee shall, at all times, administer the Trust in accordance with the purposes set forth in Section 1.3 above, the Plan, and the Confirmation Order. Subject to the

5

limitations set forth in this Trust Agreement, the Plan, and the Confirmation Order, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)    Except as required by applicable law, or as otherwise specified herein, or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court, including the Bankruptcy Court, in the exercise of any power or discretion conferred hereunder.

(c)    Without limiting the generality of Section 2.1(a) above, and except as limited by the terms of this Trust Agreement, the Plan, or the Confirmation Order, the Trustee shall have the power to:

(i)    receive, hold, preserve, and liquidate the Liquidating Trust Assets and exercise all rights with respect thereto, as long as such management is consistent with the Trust's status as a "liquidating trust" taxable as a grantor trust for United States federal income tax purposes and which actions are merely incidental to its liquidation and dissolution with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust;

(ii)    invest the monies held from time to time by the Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iii)    act on behalf of the Trust, including having the right to take all actions and execute all agreements, instruments and other documents, and exercise all rights and privileges previously held by the Debtors necessary or convenient to implement the provisions of the Plan, the Confirmation Order, and this Trust Agreement;

6

(iv)         administer, oversee, and take all actions necessary to effect the

Wind-Down, subject to the terms of the Plan;

(v)          with respect to any Liquidating Trust Assets, exercise in a manner

not inconsistent with the Plan, the Confirmation Order, and this Trust Agreement, all power and

authority that may be, or could have been, exercised in compliance with Revenue Procedure 94-45,

commence or continue all proceedings (including any Retained Causes of Action transferred to the

Trust) that may be or could have been, commenced or continued and take all actions that may be

or could have been taken by any member, officer, director or shareholder of each Debtor with

respect to such Liquidating Trust Assets with like effect as if authorized, exercised and taken by

unanimous action of such officers, directors and shareholders including, without limitation, the

dissolution of any Wind-Down Debtor in accordance with the terms of the Plan (but excluding, for

the avoidance of doubt, any Cause of Action that (A) is released, waived, barred or enjoined

pursuant to Article X of the Plan, or (B) is retained by or transferred to the Reorganized Debtors

in accordance with the Schedule of Retained Causes of Action);

(vi)         manage, monitor, and enforce all of the Wind Down Debtors' and

the Estates' rights, and interests with respect to any Liquidating Trust Assets under the Plan, the

Confirmation Order, and this Trust Agreement, and other agreements of the Debtors, and any other

orders of the Bankruptcy Court;

(vii)        establish, maintain, and adjust such operating, reserve, and trust

account(s) as are necessary and appropriate to carry out the terms of this Trust Agreement, the

Plan, and the Confirmation Order, and to authorize and make disbursements of or from the

Liquidating Trust Assets, in accordance with the Plan and this Trust Agreement;

(viii)    authorize and make, through the Disbursing Agent, to the extent one is retained, distributions to the Beneficiaries provided for or contemplated under the Plan or this Trust Agreement;

(ix)    authorize and cause to be made distributions from the Professional Compensation Escrow Account to Holders of Professional Fee Claims in accordance with the terms of the Plan and the Confirmation Order and, solely to the extent provided for under the Plan, distributions from the Administrative / Priority Claim Reserve, Wind-Down Reserve, or Distributable Assets in satisfaction of the same;

(x)    make decisions, without further Bankruptcy Court approval but subject in all respects to the terms of the Plan and Confirmation Order, regarding the retention or engagement of professionals, employees and consultants by the Trust and the Trustee, to be compensated in accordance with Article VII.A of the Plan;

(xi)    reconcile, object to, compromise, and settle any Disputed Claims, and sue and participate, as a party or otherwise, in any judicial administrative, arbitrative, or other proceeding as required to reconcile, administer, or defend against the Disputed Claims, *provided* that, pursuant to Article IX.A of the Plan, the Liquidating Trustee may settle and compromise any Disputed Claim without supervision or approval of the Bankruptcy Court free of any restriction of the Bankruptcy Code, Bankruptcy Rules, and the guidelines and requirements of the U.S. Trustee, other than those restrictions imposed by the Plan, the Confirmation Order, or this Trust Agreement;

(xii)    prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax and information returns required with respect to the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or otherwise, make tax elections by and on behalf of the Trust, pay taxes, if any, payable by the Trust, cause all taxes

8

payable by the Trust, if any, to be paid exclusively out of the Trust's assets, and represent the interest and account of the Trust before any taxing authority in all matters including, without limitation, any dispute, action, suit, proceeding, or audit;

(xiii)    in the event that the Trust shall fail to qualify as a "liquidating trust" taxable as a grantor trust for United States federal income tax purposes, take any and all necessary actions as it shall deem appropriate to have such assets treated as held by another "liquidating trust" taxable as a grantor trust for United States federal income tax purposes, and, if no such "liquidating trust" taxable as a grantor trust treatment is available, as another grantor trust for United States federal income tax purposes;

(xiv)    take all other actions not inconsistent with the provisions of the Plan, the Confirmation Order, and this Trust Agreement that the Trustee deems reasonably necessary or desirable with respect to administering the Plan and Trust;

(xv)    implement and/or enforce all provisions of the Plan and Confirmation Order, including entering into any agreement or executing any document required by, or consistent with, the Plan, the Confirmation Order, or this Trust Agreement;

(xvi)    abandon in the reasonable business judgment of the Trustee (and with the consent of the Required DIP Co-Collateral Agents) and in any commercially reasonable manner, including through donation to a charitable organization of its choice, any Liquidating Trust Asset; *provided*, *however*, that such charitable organization shall not have any connection to the Trustee or to the Debtors;

(xvii)    prosecute, dismiss, and/or settle any Retained Causes of Action assigned to the Trust, with or without approval of the Bankruptcy Court, and exercise, participate in, or initiate any proceeding before the Bankruptcy Court or any other court of appropriate

9

jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding, and pursue to settlement or judgment of such Retained Causes of Action;

(xviii)   purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable;

(xix)    collect and liquidate and/or distribute all Liquidating Trust Assets pursuant to the Plan, the Confirmation Order and this Trust Agreement;

(xx)    hold any legal title to any and all of the Liquidating Trust Assets;

(xxi)    if any of the Liquidating Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee:  (A) nominate and appoint a Person duly qualified to act as trustee in each such state or jurisdiction and require from each such trustee such security as may be designated by the Trustee in his or her sole discretion; (B) confer upon such trustee all the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Trust Agreement, the Plan, and the Confirmation Order, except as modified or limited by the Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is acting shall prevail to the extent necessary); (C) require such trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of such property; and (D) remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal;

10

(xxii)    obtain and receive the proceeds or benefits of any and all Insurance Policies of the Debtors providing coverage with respect to Retained Causes of Action assigned or transferred to the Trust;

(xxiii)    undertake all administrative functions of the Chapter 11 Cases, including the payment of Statutory Fees and ultimate closing of the Chapter 11 Cases in accordance with the Plan and Confirmation Order;

(xxiv)    exercise such other powers as may be vested in or assumed by the Trustee pursuant to the Plan, this Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan and the Confirmation Order;

(xxv)    enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement, the Plan, or the Confirmation Order; and

(xxvi)    in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, representatives, and any other parties.  No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below.

(d)    The Trust shall not have the power to guarantee any debt of other persons.

11

**2.2**     **General Administration.**

(a)     The Trustee shall act in accordance with the Plan, the Confirmation Order, and this Trust Agreement.  In the event of any inconsistency between the Plan (without reference to this Trust Agreement) and this Trust Agreement, the terms of this Trust Agreement shall control (unless stated otherwise in this Trust Agreement or in the Confirmation Order).  In the event of any inconsistency between this Trust Agreement and the Confirmation Order, the Confirmation Order shall control.

(b)     The Trustee shall (i) timely file such tax returns and pay any taxes imposed on the Trust in accordance with Section 5.3 hereof, (ii) comply with all applicable reporting and withholding obligations in accordance with Section 5.4 hereof, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Trust as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund, and (iv) take no action that could cause the Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

(c)     Other than the obligations of the Trustee specifically set forth in this Trust Agreement, the Plan, or the Confirmation Order, the Trustee shall have no obligations of any kind or nature with respect to his position as such.

**2.3**     **Reporting.**

(a)     The Trustee shall timely prepare, file and distribute such statements, reports and submissions to the extent required by applicable law.

(b)     The Trustee shall file with the Bankruptcy Court, and provide to the Beneficiaries, quarterly reports when they become due, in a form reasonably acceptable to the U.S.

12

Trustee, which reports shall include a separate schedule of disbursements made by the Liquidating Trust on behalf of the Debtors during the applicable period, attested to by the Trustee, an authorized representative of the Trustee, or the Reorganized Debtor, as applicable;

(c)     The Trustee shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee with respect to each Debtor's Chapter 11 Case until such Chapter 11 Case has been closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

(d)     Pursuant to Section 5.3(a) hereof, within a reasonable time following the end of the taxable year, the Trust shall send to each Beneficiary a separate statement setting forth such Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on his/her applicable income tax return.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1     Accounts.**

(a)     The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)     Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in, or relationship with, the Reorganized Debtors or their Affiliates, if applicable.  Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

(c)     The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to Section 3.1(b) above.

13

(d)     The Trustee may, from time to time (but at all times subject to the terms of the Plan and Confirmation Order), create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Beneficiaries and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Liquidating Trust Assets, and except as specifically designated as such in accordance with the provisions of Section 5.3(d) below, are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or applicable Treasury Regulations.

### 3.2     <u>Investment Guidelines.</u>

(a)     The Trustee may invest the Liquidating Trust Assets, provided, however, that the scope of any investment shall be limited to include only those investments permitted to be made by a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations or under applicable IRS guidelines, whether set forth in IRS rulings, revenue procedures (including Section 3.09 of Revenue Procedure 94-45), other IRS pronouncements, or otherwise.

(b)     In the event the Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Plan, the Confirmation Order, and this Trust Agreement.  This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Liquidating Trust Assets.

14

(c)    Cash proceeds received by the Trust in connection with its monetization of the non-liquid Liquidating Trust Assets shall be invested in accordance with this Section 3.2 until needed for the purposes of the Trust as set forth in Section 1.3 above.

**3.3    Payment of Operating Expenses.**    All operating expenses of the Trust, including the fees and expenses of the Trustee and other professionals retained on behalf of the Trust, shall be paid from the Wind-Down Reserve in accordance with the Wind-Down Budget, the Plan, the Confirmation Order, and this Trust Agreement, which may be replenished from time to time with the consent of the Required DIP Co-Collateral Agents in accordance with Article VIII.C of the Plan.    None of the Trustee, the Beneficiaries, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Trust.    Except as expressly set forth in the Plan, none of the Debtors or the Wind-Down Debtors, as applicable, nor any of their officers, agents, advisors, professionals or employees shall be liable for the payment of any operating expense or other liability of the Trust or the Trustee.    Under no circumstance shall the Reorganized Debtors nor any of their officers, agents, advisors, professionals or employees be liable for the payment of any operating expense or other liability of the Trust or the Trustee.    To the extent any Cash is remaining in the Wind-Down Reserve as of the Dissolution Date, such amounts shall constitute Distributable Assets in accordance with Article VIII.C of the Plan.

**3.4    Distributions to Beneficiaries.**

(a)    The Trustee shall make or cause to be made distributions to DIP Beneficiaries from the Distributable Assets and Priority Beneficiaries from the Administrative / Priority Claims Reserve in accordance with, subject to, and at the time or times set forth in, this Trust Agreement, the Plan and the Confirmation Order, but not less frequently than once annually,

starting on the Effective Date, unless the Trustee determines, in its reasonable discretion, that making such a distribution is impracticable in light of the anticipated Cash needs of the Trust going forward, or that, in light of the Cash available for distribution, making a distribution would not warrant the incurrence of costs in making the distribution or funds are otherwise not available to distribute; *provided*, *however*, that the Trust's discretion may not be exercised in a manner inconsistent with the express requirements of the Plan.  With respect to distributions for which the Trustee is the Disbursing Agent in accordance with Article VIII.E of the Plan, the Trustee shall make distributions on such times as provided for under Article VIII.E of the Plan.  In any such case, the Trustee (or its successor or appointee acting as Disbursing Agent, as applicable), shall be entitled and subject to the rights and obligations of the Disbursing Agent set forth in Article VI of the Plan, and shall make such distributions in accordance with such terms.  The Trustee shall not, when acting as the Disbursing Agent, be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

(b)    The Trust may withhold or deduct from amounts distributable to any Person or Entity any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement (including, without limitation, tax withholding in accordance with Section 5.4 below).

(c)    Cash payments to foreign Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(d)    On the Dissolution Date and with the consent of the Required Co-Collateral Agents, the Trustee shall have the authority to direct the remaining Liquidating Trust Assets, if any, to a tax-exempt organization as selected by the Trustee in his or her discretion.

16

## ARTICLE IV

## TRUSTEE

**4.1**   **Number.**   There shall be one (1) Trustee who shall be the person or entity named on the signature pages hereof.

**4.2**   **Terms of Service.**

(a)   The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)   The Trustee may resign at any time upon written notice with such notice being filed with the Bankruptcy Court.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)   The Trustee may be removed by the Bankruptcy Court in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard prior to such removal.  Other good cause shall mean (i) fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony, in each case whether or not connected to the Trust, or (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.

(d)   In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, a new Trustee shall be selected by the Required DIP Co-Collateral Agents, with notice of such selection to be filed with the Bankruptcy Court.

17

(e)      Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further action. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)      Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

**4.3      Compensation and Expenses of the Trustee.**

(a)      The Trustee and his or her agents shall be entitled to receive reasonable compensation for services rendered on behalf of the Trust,[ subject to the Wind-Down Budget and in accordance with the compensation terms set forth on Exhibit A hereto, which shall be subject to periodic review and modification by the DIP Agent in consultation with the Trustee].[2]

(b)      Any professionals retained by the Trustee in accordance with the Plan, the Confirmation Order, and this Trust Agreement shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, with the terms of such compensation to be determined by the Liquidating Trustee and such professionals, subject to the Wind-Down Budget.  The payment of fees and expenses of the Trustee and its professionals shall be made in

---

[2]      NTD:  Compensation of the Liquidating Trustee to be determined.

18

the ordinary course of business from the Wind-Down Reserve and shall not be subject to Bankruptcy Court approval.

**4.4** **Standard of Care; Exculpation.**

(a)      As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, and (ii) the officers, employees, consultants, advisors, attorneys, and agents of each of the Trust and the Trustee.

(b)      To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Trust, except those acts found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of, or due to, the implementation or administration of the Plan, the Confirmation Order, or this Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their wilful misconduct, bad faith, gross negligence or fraud.

(c)      To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties; *provided, however*,

19

that with respect to the Trust Indemnified Parties the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

(d)     The Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

**4.5     Protective Provisions.**

(a)     Every provision of this Trust Agreement relating to the conduct or affecting the liability of, or affording protection to, Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)     In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  Any successor Trustee shall succeed to, and hold the same respective rights and benefits of, the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)     No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own willful misconduct, bad faith, gross negligence or fraud as determined by a Final Order.

20

(d)     No provision of this Trust Agreement shall require the Trust Indemnified
Parties to expend or risk their own personal funds, or otherwise incur financial liability in the
performance of their rights, duties and powers hereunder.

(e)     In the exercise or administration of the Trust, the Trust Indemnified Parties
(i) may act directly or through their respective agents, advisors, or attorneys pursuant to
agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for
the default or misconduct of such agents or attorneys if such agents or attorneys have been selected
by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel,
accountants and other professionals to be selected by them in good faith and with due care and
employed by them, and shall not be liable for anything done, suffered or omitted in good faith by
them in accordance with the advice or opinion of any such counsel, accountants or other
professionals.

**4.6     Indemnification.**

(a)     To the maximum extent permitted by applicable law, the Trust Indemnified
Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses
(including attorneys' fees and costs, but excluding taxes in the nature of income taxes imposed on
compensation paid to such persons) in defending any and all of their actions or inactions in their
capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses,
damages, claims, costs and expenses arising out of, or due to the implementation or administration
of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on
compensation paid to such persons), in each case, except for any actions or inactions found by
Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud.  Any

21

valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Distributable Assets.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust from the Distributable Assets in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.  The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

(c)    The Trustee is authorized, but not required, to purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, in his or her sole discretion, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)    The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified

Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

**4.7     Trustee Independence.** The Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as an officer or as any other professional for the Reorganized Debtors or any of the purchasers of the Debtors' assets. The Trustee shall also not act as an attorney, agent, or other professional for any Beneficiary.

**4.8     No Bond.** The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court or the Trustee decides, in his or her sole discretion, that such bond is in the best interests of the Trust.

**4.9     Burden of Proof.** In any proceeding brought by any of the Debtors, or any other person who is bound by this Trust Agreement challenging any action, determination or failure to act of the Trustee in discharge of his or her duties under this Trust Agreement on the basis that such action, determination or failure constitutes bad faith, gross negligence, willful misconduct or fraud, the person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted bad faith, gross negligence, willful misconduct, or fraud. Notwithstanding anything to the contrary in this Trust Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the Trustee in the discharge of his or her duties under this Trust Agreement is, to the extent consistent with

23

this Trust Agreement, hereby deemed to not constitute a breach of this Trust Agreement or any duty hereunder or existing at law, in equity or otherwise.

4.10    **Reliance by the Trustee.**  The Trustee may absolutely rely, and shall be fully protected in acting or refraining from acting if he or she relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he or she has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile or e-mail transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy his or herself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of bad faith, gross negligence, willful misconduct, or fraud in respect of the Trustee's duties as found by a Final Order, or material breach of this Trust Agreement, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Trust Agreement, the Plan, the Confirmation Order, or any other document executed in connection therewith, and the Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

4.11    **Books and Records**.  The Trustee shall be free, pursuant to the terms of the Data Retention Plan, to destroy, cause to be destroyed, or otherwise dispose of any books and records or copies thereof in its possession that the Trustee deems not necessary for the continued administration of the Plan, without further order from the Bankruptcy Court.

4.12    **Privilege.**

(a)      Subject to the terms of the Plan (and pursuant to Article IV.C.4 of the Plan) and the Confirmation Order, all of the Debtors' privileges (the "**Privileges**"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections (the "**Transferred Privileges**") shall be transferred, assigned and delivered to the Liquidating Trust, without waiver, limitation or release, and shall vest with the Trust on the Effective Date and be jointly held by the Reorganized Debtors and the Trust on and after the Effective Date; *provided*, *however*, that notwithstanding the foregoing, Transferred Privileges do not include Privileges relating in any way to any rights, claims, or Causes of Action released under the Plan.  The Trust and Reorganized Debtors shall each hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges.  No Privilege shall be waived by disclosures to the Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Reorganized Debtors and the Trust.

(b)      Notwithstanding anything herein to the contrary, the Trust, Wind-Down Debtors, and the Reorganized Debtors shall each hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges.  No Privilege shall be waived by disclosures to the Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Debtors and the Trust.

## ARTICLE V

## TAX MATTERS

**5.1    Treatment of Trust Assets Transfer.**  For all United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes), all Parties shall treat any transfer of the Liquidating Trust Assets to the Trust as (a) a transfer of the Liquidating

Trust Assets (subject to any obligations related to those assets) directly to the Beneficiaries (based on the relative fair market value of each Beneficiary's respective Claims), followed by (b) the transfer by such Beneficiaries of such Liquidating Trust Assets to the Trust in exchange for their respective beneficial interests in the Trust (other than the Liquidating Trust Assets allocable to Disputed Claims and held as a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury Regulations ("**Disputed Ownership Fund**")). Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors within the meaning of Section 677 of the IRC and deemed owners of their respective shares of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed Ownership Fund).

        **5.2**       **Income Tax Status**.

        (a)       For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable) and other than as provided pursuant to Section 5.3(d) hereof, this Trust shall be treated as a liquidating trust pursuant to Section 301.7701-4(d) of the Treasury Regulations and as a grantor trust pursuant to Sections 671 through 679 of the IRC. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Trust Agreement, this Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status.

        (b)       The Trust shall at all times to be administered so as to constitute a domestic trust for United States federal income tax purposes.

        **5.3**       **Tax Returns**.

        (a)       The "taxable year" of the Trust shall be the "calendar year" as such terms are defined in Section 441 of the IRC, unless the Trustee determines in good faith to use a different

tax year in the interests of all Beneficiaries to the extent permitted under the IRC and the Treasury Regulations thereunder.  In accordance with Section 6012 of the IRC and Section 1.671-4(a) of the Treasury Regulations, the Trustee shall file with the IRS annual tax returns for the Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the Trustee shall file in a timely manner for the Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Trust shall send to each Beneficiary a separate statement setting forth such Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on his/her applicable income tax return.

(b)     To the extent applicable, allocations of the Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items in respect of any assets allocable to, or retained on account of, the Disputed Ownership Fund) among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Trust Agreement) if, immediately prior to such deemed distribution, the Trust had distributed all its other assets (valued at their tax book value), to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Trust.  Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets).  The tax book value of the Liquidating Trust Assets for purposes of this Section 5.3(b) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles

27

prescribed by the IRC, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements. Notwithstanding the foregoing, to the extent applicable, the Trustee shall be permitted to allocate taxable income in such other equitable manner as it may determine in good faith taking into account the interests of the Beneficiaries as a whole (and their relative interests).

(c)     The Trust shall be responsible for payment, from the Wind-Down Reserve, of any taxes imposed on the Trust (including any taxes imposed on the Disputed Ownership Fund) or the Liquidating Trust Assets. In accordance therewith, any taxes imposed on the Trust or its assets shall be paid from the Wind-Down Reserve.

(d)     The Trustee may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a Disputed Ownership Fund pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, and to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If such a Disputed Ownership Fund election is made, all parties (including the Trustee and the Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistent with the foregoing. The Trust shall file all income tax returns with respect to any income attributable to the Disputed Ownership Fund and shall pay from the Wind-Down Reserve, all U.S. federal, state and local income taxes attributable to such Disputed Ownership Fund based on the items of income, deduction, credit, or loss allocable thereto.

**5.4     Withholding of Taxes and Reporting Related to Trust Operations.** The Trust shall comply with all withholding, deduction and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the Trust shall be subject to any applicable withholding, deduction and reporting requirements. The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such

withholding, deduction, payment, and reporting requirements. Notwithstanding the above, each Beneficiary that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Beneficiary by any taxing authority, including income, withholding, and other tax obligations, on account of any such distribution.  All amounts properly withheld or deducted from distributions to a Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Beneficiary shall be treated as if distributed to such Beneficiary. To the extent that the operation of the Trust or the liquidation of the Liquidating Trust Assets creates a tax liability imposed on the Trust, the Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Trust payable without Bankruptcy Court order. Any federal, state, local or foreign withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Beneficiaries shall be required to provide any information necessary to effect the withholding and reporting of such taxes. The Trustee may require each Beneficiary to furnish to the Trust (or its designee) its social security number, or employer or taxpayer identification number as assigned by the IRS, and complete any related documentation (including but not limited to a Form W-8BEN, Form W-8BEN-E, or Form W-9, as applicable) (the "**Tax Documents**"). The Trustee may condition any and all distributions to any Beneficiary upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan and Confirmation Order. The Trustee may refuse to make a distribution to any Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a Beneficiary within one hundred and eighty (180) days of the Trustee's request, the Trustee shall make such distribution to which such Beneficiary is entitled,

without interest; and, *provided*, *further*, that, if the Trustee fails to withhold in any respect of amounts received or distributable with respect to any Beneficiary and the Trustee is later held liable for the amount of such withholding, such Beneficiary shall reimburse the Trustee for such liability. If a Beneficiary fails to complete and return to the Trustee (or Disbursing Agent, as applicable) the appropriate Tax Documents within one hundred one hundred and eighty (180) days of any such request by the Trustee (or Disbursing Agent, as applicable), then such Holder shall have its Claim forfeited and shall be forever barred, estopped, and enjoined from asserting any such Claim against the Estates. In such cases, any Cash held for payment on account of such Claims shall be treated as Liquidating Trust Assets, free of any Claims of such Holder with respect thereto.

     **5.5**     **Valuation.**  As soon as possible after the Effective Date, the Trustee shall make a good faith valuation of the Liquidating Trust Assets, which shall be subject to the DIP Agent's approval (not to be unreasonably withheld or delayed).  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties for all United States federal and applicable state and local income tax purposes. The Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Trust that are required by any governmental unit for taxing purposes.

     **5.6**     **Expedited Determination of Taxes.**  The Trustee may request an expedited determination of taxes of the Trust, under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the termination of the Trust.

**ARTICLE VI**

**GENERAL PROVISIONS**

30

**6.1**    **Irrevocability.**   To the fullest extent permitted by applicable law, the Trust is irrevocable.

**6.2**    **Term; Termination.**

(a)    The term for which the Trust exists shall commence on the Effective Date and shall terminate pursuant to the provisions of this Section 6.2.

(b)    The Trustee shall make continuing efforts to monetize any non-liquid Liquidating Trust Assets.

(c)    The Trustee and the Trust shall be discharged or dissolved, as the case may be, with the consent of the Required DIP Co-Collateral Agents and at such time on or after the Dissolution Date that is reasonable based on all the facts and circumstances, including that: (i) the Trustee determines that the pursuit of additional Retained Causes of Actions which are Liquidating Trust Assets is not likely to yield sufficient additional Cash to justify further pursuit of such Causes of Action, or (ii) all distributions of Cash and other Liquidating Trust Assets required to be made by the Trustee under the Plan, the Confirmation Order, and this Trust Agreement have been made in accordance with provisions of the Plan, the Confirmation Order, and this Trust Agreement, *provided, however*, that in no event shall the Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made prior to the fifth (5th) anniversary without the need for a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Trust as a "liquidating trust" for United States federal income tax purposes, determines that a fixed period extension, not to exceed five (5) years, is necessary to facilitate or complete the recovery on and liquidation of the Trust Assets.  Any extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term.

31

(d)      The Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases, *provided* that, matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Trustee shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c) as set forth in <u>Article IV.I</u> of the Plan.

**6.3**      **<u>Amendments</u>.**  Any amendment to, or modification of, this Trust Agreement may be made in writing and only pursuant to an order of the Bankruptcy Court; *provided, however*, the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (a) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (b) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity.  Notwithstanding the foregoing, no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, neither this Trust Agreement, nor any Exhibit to this Trust Agreement, shall be modified or amended in any way that could jeopardize, impair, or modify the Trust's "liquidating trust" status.

6.4      **Severability.**  Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

6.5      **Notices.**

(a)      Notices to Beneficiaries shall be given in accordance with such address for each such Holder as indicated on the Debtors' records as of the date of any such distribution.

(b)      Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Trust:

    [Trustee]


With a copy (which shall not constitute notice) to Counsel to the Trustee:

    [Trustee Counsel]

To the Reorganized Debtors:

    McKesson Corporation
    Law Department
    6555 North State Highway 161
    Irving, Texas 75039
    Attn:  Chief Counsel, Strategic Accounts
    Email Address:  intakelitigation@mckesson.com

With a copy (which shall not constitute notice) to:

    Sidley Austin LLP
    One South Dearborn Street
    Chicago, Illinois 60603
    Attn:  Dennis M. Twomey; Jackson T. Garvey; Ian C. Ferrell

Email Addresses:  dtwomey@sidley.com; jgarvey@sidley.com;
iferrell@sidley.com

(c)      All such notices and communications if mailed shall be effective when
physically delivered at the designated addresses or, if electronically transmitted, when the
communication is received at the designated addresses.

6.6      **Successors and Assigns.**  The provisions of this Trust Agreement shall be binding
upon and inure to the benefit of the Trust, the Trustee, and their respective successors and assigns,
except that neither the Trust, nor the Trustee, may assign or otherwise transfer any of their rights
or obligations, if any, under this Trust Agreement except in accordance with Section 4.2(d) above.

6.7      **Limitation on Trust Interests for Securities Law Purposes.** The Beneficiaries'
interests in the Trust (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise
transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of
descent and distribution or otherwise by operation of law; (b) shall not be evidenced by a certificate
or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive
any dividends or interest.

6.8      **Exemption from Registration.**  The Parties hereto intend that the interests of the
Beneficiaries under this Trust Agreement shall not be "securities" under applicable laws, but none
of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled
to exemption from registration under applicable securities laws.  If it should be determined that
any such interests constitute "securities," the Parties hereto intend that the exemption provisions
of Section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of
such interests will be exempt from registration under the Securities Act, all rules and regulations
promulgated thereunder, and all applicable state and local securities laws and regulations or that

34

the issuance of such interests shall be exempt from the registration under the Securities Act

pursuant to Section 4(a)(2) of the Securities Act, regulation D promulgated thereunder, Regulation

S under the Securities Act, and/or other available exemptions from registration under the Securities

Act, all rules and regulations promulgated thereunder, and all applicable state and local securities

laws and regulations.

       **6.9**       **Entire Agreement; No Waiver.**  The entire agreement of the Parties relating to the

subject matter of this Trust Agreement is contained herein, and in the documents referred to herein

(including the Plan and the Confirmation Order), and this Trust Agreement and such documents

supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to

exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver

thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude

any further exercise thereof or of any other right, power, or privilege.  The rights and remedies

herein provided are cumulative and are not exclusive of rights under law or in equity.

       **6.10**     **Headings.**  The headings used in this Trust Agreement are inserted for convenience

only and do not constitute a portion of this Trust Agreement, nor in any manner affect the

construction of the provisions of this Trust Agreement.

       **6.11**     **Governing Law.**  The validity and construction of this Trust Agreement and all

amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the

rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed

according to the laws of the State of Delaware without regard to the conflicts of law provisions

thereof that would purport to apply the law of any other jurisdiction; *provided, however*, that the

Parties hereto intend that the provisions hereof shall control and there shall not be applicable to

the Trust, the Trustee, or this Trust Agreement, any provision of the laws (statutory or common)

of the State of Delaware pertaining to trusts that relate to, or regulate in, a manner inconsistent with the terms hereof:  (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of Liquidating Trust Assets; (g) the existence of rights or interests (beneficial or otherwise) in Liquidating Trust Assets; (h) the ability of beneficial owners or other persons to terminate or dissolve the Trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee set forth or referenced in this Trust Agreement.

**6.12**    **Effectiveness.**  This Trust Agreement shall become effective on the Effective Date.

IN WITNESS WHEREOF, the Trustee has executed this Trust Agreement this [_] day of [November,] 2025.

**TRUSTEE**

_____

36

**<u>Exhibit H</u>**

**Data Retention Plan**

## Data Retention Plan

<u>Scope of Data Inventory</u>:  The categories of books and records referred to in this Data Retention Plan are non-exhaustive.  For the avoidance of doubt, this Data Retention Plan applies to any and all remaining personal, financial, employee, human resources, operational, legal, compliance, and other data, information, and correspondence, whether stored in "hard copy" or electronically and wherever located, comprising the Debtors' books and records (collectively, "<u>Data Inventory</u>") as of the Effective Date; *provided* that this Data Retention Plan shall not apply to any Data Inventory acquired by the Reorganized Debtors pursuant to the Plan (the "<u>Reorganized Debtor Data Inventory</u>"), which may be treated by the Reorganized Debtors in accordance with applicable nonbankruptcy law without further notice to or action by the Bankruptcy Court, and the Reorganized Debtors shall not have any obligations to any parties under this Data Retention Plan with respect to such acquired Data Inventory; *provided*, *further* that the Reorganized Debtor Data Inventory shall not include any PHI or PII (each as defined below).[1]

<u>Notice Period</u>:  Except as expressly provided in this Data Retention Plan or otherwise ordered by the Bankruptcy Court, the Wind-Down Debtors are authorized to take any actions necessary or proper to abandon, dispose of, and/or destroy all Data Inventory on the date which is thirty (30) days following the Effective Date (the "<u>Notice Period</u>").  The costs of retaining Data Inventory during the Notice Period shall be borne by the Wind-Down Debtors.

<u>Treatment of Sensitive Information</u>:  The Data Inventory includes certain data which may be (a) protected health information ("<u>PHI</u>") subject to the Health Insurance Portability and Accountability Act of 1996 ("<u>HIPAA</u>") or (b) personally identifiable information ("<u>PII</u>").  Except as expressly provided for in this Data Retention Plan, PHI and PII shall be abandoned and destroyed in accordance herewith, *provided* that any Data Inventory containing PHI or PII which is abandoned in accordance with the terms hereof shall be shredded, removed, or otherwise appropriately destroyed in accordance with HIPAA and industry standard security requirements related to destruction.  On and after December 31, 2025, the Debtors will be deemed to no longer maintain or control a Designated Record Set (as defined at 45 C.F.R. § 164.501) or similar state law equivalent.  At such time, the Debtors shall cease to have obligations pursuant to  45 C.F.R. § 164.524, 45 C.F.R. § 164.526, and 45 CFR 164.528, as well as any similar state or local law which would require the Debtors to permit or facilitate access to PHI or PII to any third party, to permit a third party to request amendments or changes thereto, or to request any accounting related to such information (including information related to disclosures of such information).

---

[1]  Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2517].

<u>Data Inventory to be Retained or Transferred</u>:  The following Data Inventory shall be retained and/or transferred solely to the extent set forth below:

| <u>Category</u> | <u>Terms of Retention or Transfer</u> |
|---|---|
| [McKesson TSA Data] | Prior to the expiration of the Notice Period, the Wind-Down Debtors and McKesson shall negotiate in good faith to determine the scope of Data Inventory, if any, necessary for the Wind-Down Debtors to comply with their obligations under the Transition Services Agreement (the "<u>McKesson TSA Data</u>"), if any; *provided*, *however*, that neither the foregoing obligation to negotiate in good faith nor any other provision of this Data Retention Plan shall be construed or interpreted to require the Wind-Down Debtors to incur any cost or expense on account of the retention or transfer of the McKesson TSA Data beyond the Notice Period, and the Transition Services Agreement, if any, shall control with respect to such costs; *provided*, *further*, that nothing in this Data Retention Plan shall limit any Wind-Down Debtor's obligations under the Transition Services Agreement. <br><br> If the Wind-Down Debtors and McKesson reach an agreement with respect to the scope and terms of retention or transfer of the McKesson TSA Data prior to the expiration of the Notice Period, they shall file a stipulation setting forth such scope and terms. <br><br> If the Wind-Down Debtors and McKesson are unable to reach an agreement with respect to the scope and/or terms of retention of the McKesson TSA Data prior to the expiration of the Notice Period (a "<u>McKesson TSA Data Retention Dispute</u>"), such McKesson TSA Data Retention Dispute shall be resolved in accordance with the Data Dispute Resolution Procedures (as defined below). <br><br> Notwithstanding anything to the contrary in this Data Retention Plan, the Wind-Down Debtors may not transfer, abandon or otherwise dispose of any McKesson TSA Data or any Data Inventory that is subject to a McKesson TSA Data Retention Dispute without McKesson's prior written consent unless the Wind-Down Debtors will retain and be able to provide McKesson with copies of any such McKesson TSA Data or Data Inventory after such sale, transfer or other disposition. <br><br> Nothing herein shall limit any obligation of the Wind-Down Debtors, Plan Administrator and/or Liquidating Trustee to cooperate in providing McKesson with access to any Data Inventory under the Transition Services Agreement, the Plan or any other Definitive Document. |

| | |
|---|---|
| Litigation Trust Data | The Wind-Down Debtors shall, within thirty (30) days of the Effective Date, use reasonable efforts to collect, copy, and transfer, to the applicable trust(s) (collectively, the "<u>Trusts</u>") party to that certain Rite Aid Litigation Trust Cooperation Agreement (the "<u>Cooperation Agreement</u>") entered into pursuant to the chapter 11 plan confirmed in the 2023 Cases (as defined in the Disclosure Statement) Data Inventory consisting of data that:<br><br>    (a) is relevant to pursue and/or litigate any Assigned Claims and/or Assigned Insurance Rights or to reconcile and administer Tort Claims (as defined in the Cooperation Agreement);<br><br>    (b) is requested by the applicable Trust prior to the expiration of the Notice Period or such other deadline set by order of the Court; and<br><br>    (c) the Wind-Down Debtors believe in good faith (i) not to contain PHI or PII ("<u>Non-Protected Trust Data</u>") *or* (ii) to contain PHI or PII ("<u>Protected Trust Data</u>" and, together with Non-Protected Trust Data, the "<u>Trust Data</u>");<br><br>*provided* that any transfer of Protected Trust Data shall be made only in accordance with applicable law.  Prior to the expiration of the Notice Period (or such other deadline as ordered by the Court), the Wind-Down Debtors and the Trusts shall negotiate in good faith to determine the terms for transferring Protected Trust Data.<br><br>Other than as consented to by the Wind-Down Debtors in their sole discretion or as provided in any order of the Bankruptcy Court, any reasonable and documented administrative, professional, or other costs incurred on account of any transfer of Data Inventory to the Trusts (or retention of Data Inventory after expiration of the Notice Period, if such retention is undertaken on the basis of a request made or dispute raised by a Trust) shall be the sole responsibility of the Trust(s) requesting or demanding the applicable transfer or retention; *provided*, *however*, that the Trusts shall not be responsible for costs arising out of the Wind-Down Debtors' abandonment of Data Inventory.  Other than as consented to by the Wind-Down Debtors in their sole discretion or as provided in any order of the Bankruptcy Court, any reasonable and documented administrative, professional, or other costs incurred on account of any transfer of Protected Trust Data to the Trusts shall be the sole responsibility of the Trust(s) requesting or demanding the applicable transfer or retention; *provided*, for the avoidance of doubt, that this provision does not |

| | |
|---|---|
| | affect or modify the requirements set forth in this Data Retention Plan that any such transfer comply with applicable law.

No Trust Data to be transferred to the Trusts shall include any McKesson TSA Data or any Data Inventory that is subject to a McKesson TSA Data Retention Dispute without McKesson's prior written, consent unless the Wind-Down Debtors will retain and be able to provide McKesson with copies of any such McKesson TSA Data or Data Inventory after such sale, transfer or other disposition.

If the Wind-Down Debtors and the Trusts reach an agreement with respect to the scope of the Remaining Trust Data and/or the terms of any transfer thereof prior to the expiration of the Notice Period, they shall file a Transfer Notice setting forth such scope and terms.

If the Wind-Down Debtors and the Trusts are unable to reach an agreement with respect to the scope and/or terms of the transfer of the Remaining Trust Data prior to the expiration of the Notice Period, such disagreement shall be resolved in accordance with the Data Dispute Resolution Procedures.

The Trusts' rights with respect to the Data Inventory are limited to those set forth in this Data Retention Plan and any applicable order of the Bankruptcy Court, and effective as of the Effective Date, the Cooperation Agreement shall be deemed terminated and of no force or effect; provided, however, that the *Form of Confidentiality Agreement, Stipulated Protective Order and Qualified Protective Order Governing Claims Records and Other Discovery Material Transferred Pursuant to Rite Aid Litigation Trust Cooperation Agreement*, dated January 23, 2025 (the "<u>Protective Order</u>") shall remain in effect and shall govern the transfer of Trust Data.  Other than as set forth in this Data Retention Plan or any applicable order of the Bankruptcy Court, the Wind-Down Debtors shall have no further obligation to the Trusts to retain, transfer, or otherwise refrain from abandoning and destroying any Data Inventory, which destruction and abandonment shall be deemed authorized pursuant to this Data Retention Plan and the Confirmation Order. |
| Subpoena | If any valid subpoena is served upon or transmitted to the Wind-Down Debtors by any party (a "<u>Subpoena Counterparty</u>") prior to the expiration of the Notice Period, no Data Inventory responsive to such subpoena (the "<u>Subpoena Data</u>") shall be abandoned or disposed of prior to resolution thereof either consensually, in which case the Wind-Down Debtors shall file a Retention or Transfer Notice, or pursuant to the Data Dispute Resolution Procedures.  The Wind-Down Debtors and the Subpoena |

| | Counterparty shall continue to comply with the Protective Order to the extent it governs the subject matter of any such subpoena. |
|---|---|
| Sales | The Wind-Down Debtors may, in their discretion (and subject to the other terms and conditions of this Data Retention Plan), seek approval to sell any Data Inventory to any third party by filing a Transfer Notice detailing the terms of any such transfer pursuant to the procedures set forth below. |
| Retention or Transfer Notice | In the event that the Wind-Down Debtors and any third party consensually agree to the retention or transfer of Data Inventory, the Wind-Down Debtors shall file a Retention or Transfer Notice with the Bankruptcy Court, indicating:<br><br>• The nature of the Data Inventory to be transferred or retained;<br><br>• The identity of the transferee (if applicable) with respect to such Data Inventory;<br><br>• The terms of such retention or transfer, including consideration provided by any applicable transferee with respect to such Data Inventory, if any;<br><br>• Whether the proposed transfer, if any, results in the transfer of any PII or PHI;<br><br>• If the proposed transfer, if any, results in the transfer of any PII or PHI the relevant safeguards and limitations on use or disclosure that will be implemented to protect the privacy and security of such information; and<br><br>• If the proposed transfer results in the transfer of any PII or PHI, that and how the proposed transfer satisfies the requirements of applicable law, which may include the third party agreeing to the Protective Order, expanding the scope of the Protective Order, or stipulating agreement to a separate qualified protective order, which meets the HIPAA requirements set forth at 45 C.F.R. § 164.512(e).[2]<br><br>Upon the filing and service of any Retention or Transfer Notice, parties in interest shall have fourteen (14) days from the date of service (the "Retention or Transfer Objection Deadline") to file and serve any objections to the proposed retention or transfer.  If no timely objection to a Retention or Transfer Notice is filed and served |

---

[2]   The Wind-Down Debtors shall not in any circumstance be required or permitted to transfer any PHI other than in accordance with applicable law including, without limitation, 45 CFR § 164.512(e).

| | |
|---|---|
| | by such date, the Wind-Down Debtors are authorized to consummate the proposed transfer in accordance with the terms of the Retention or Transfer Notice, and such retention or transfer shall be deemed approved without further order of the Bankruptcy Court. If a timely objection is filed and served with respect to a Retention or Transfer Notice prior to the Retention or Transfer Objection Deadline, the Wind-Down Debtors may schedule a hearing to consider such objection, and shall not consummate the applicable transfer of Data Inventory until such objection is resolved by agreement of the Wind-Down Debtors and objecting party or by order of the Bankruptcy Court. |
| Data Dispute Resolution Procedures | In the event that the Wind-Down Debtors and (a) McKesson, (b) the Trusts, or (c) any Subpoena Counterparty (each of (a), (b), and (c), a "Retention Counterparty") are not able to reach a consensual resolution with respect to the scope and terms of a transfer of Data Inventory required pursuant to this Data Retention Plan (including any disagreement with respect to the framework necessary to render any transfer of Protected Trust Data consistent with the terms of applicable law as required under this Data Retention Plan), the Retention Counterparty shall, prior to expiration of the Notice Period, file a notice indicating the scope of Data Inventory subject to such disagreement (the "Disputed Data").<br><br>If any such timely notice is filed prior to the expiration of the Notice Period, the Wind-Down Debtors shall not transfer, abandon, or dispose of the applicable Disputed Data until the applicable disagreement is resolved by (a) consensual resolution as between the Wind-Down Debtors and applicable Retention Counterparty, in which case such parties shall comply with the requirements with respect to a Retention or Transfer Notice, or (b) order of the Bankruptcy Court, in each case subject to the provisions of this Data Retention Plan allocating the costs of retention of Data Inventory after the Notice Period. |
| Compliance with Law | The Wind-Down Debtors shall not in any circumstance be required or permitted to transfer any PHI other than in accordance with applicable law including, without limitation, 45 CFR § 164.512(e).<br><br>In the event that the Bankruptcy Court determines that, given the nature of the applicable Data Inventory or proposed or requested transfer thereof, Data Inventory may not be transferred in accordance with applicable law, the Debtors shall be under no further obligation to retain such Data Inventory and shall be authorized to dispose of it in accordance with this Data Retention Plan. |

## **Exhibit I**

### **Transition Services Agreement**

The terms of the Transition Services Agreement, if any, shall be disclosed in a subsequent filing.