| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>                          Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

Order Filed on November 12, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**AMENDED ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF HILCO IP SERVICES, LLC D/B/A HILCO STREAMBANK AS INTANGIBLE ASSETS DISPOSITION CONSULTANT TO THE DEBTORS; (II) WAIVING CERTAIN TIMEKEEPING REQUIREMENTS; AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is **ORDERED**.

**DATED: November 12, 2025**

*Honorable Michael B. Kaplan*
United States Bankruptcy Judge

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

(Page 3)
Debtors: NEW RITE AID, LLC, *et al*.
Case No. 25-14861 (MBK)
Caption of Order: Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"): (i) authorizing the Debtors to retain and employ Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") to market and otherwise facilitate the potential sale, assignment, license, or other disposition of intangible assets owned by the Debtors to the extent the Debtors require, and on the terms and conditions set forth herein and in the Engagement Letter, (ii) waiving certain requirements of Bankruptcy Rule 2016 and the U.S. Trustee Guidelines; and (iii) granting related relief, all as more fully set forth in the Application; and upon the Peress Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application; this Court having heard the statements in support of the relief requested therein at a hearing before this Court, if any; and this Court being satisfied that Hilco Streambank does not hold or represent any interest adverse to the Debtors, their estates, or

---

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

(Page 4)
Debtors:          NEW RITE AID, LLC, *et al.*
Case No.          25-14861 (MBK)
Caption of Order: Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief

---

their creditors, and is a disinterested person within the meaning of Sections 327 and 101(14) of the Bankruptcy Code, and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1(c), to employ and retain Hilco Streambank in accordance with the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, to the extent set forth herein.

3. The terms of the Engagement Letter, including the Indemnification Provision, are reasonable terms and conditions of employment and are hereby approved, subject to the following provisions:

   a. Hilco Streambank shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter, unless the indemnification, contribution or reimbursement is approved by the Court;

   b. notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify or provide contribution or reimbursement to Hilco Streambank for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final) to have arisen from Hilco Streambank's bad faith, actual fraud, gross negligence, willful misconduct, or self-dealing to which the Debtors have not consented, (ii) for a contractual dispute in which the Debtors allege breach of Hilco Streambank's obligations under the Engagement Letter unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled without the Debtors' consent prior to a judicial determination as set forth in clauses (i) and (ii) above but determined by this Court, after notice and a hearing, to be a claim or expense for which Hilco Streambank should not receive indemnity, contribution, or reimbursement under the

(Page 5)
Debtors:            NEW RITE AID, LLC, *et al.*
Case No.            25-14861 (MBK)
Caption of Order:   Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief

---

terms of the Engagement Letter, as modified by this Order;

c. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Hilco Streambank believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Hilco Streambank must file an application before this Court and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Hilco Streambank for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify or make contributions or reimbursements to Hilco Streambank. All parties in interest shall retain the right to object to any demand by Hilco Streambank for indemnification, contribution or reimbursement in accordance with the terms of this Order;

d. any limitation of liability pursuant to the terms and conditions set forth in the Application, the Engagement Letter, or any ancillary documents thereto shall not apply as to any losses, claims, damages, or liabilities to the extent resulting from conduct for which Hilco Streambank would not be entitled to indemnification under the provisions of this Order. Notwithstanding any provision in the Engagement Letter or any ancillary documents thereto to the contrary, the contribution obligations of Hilco Streambank shall not be limited to the aggregate amount of fees actually received by Hilco Streambank pursuant to the Engagement Letter.

4. Hilco Streambank shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter and this Order, and the fees and expenses payable to Hilco Streambank shall be treated as administrative expenses of the Debtors' estates, shall be free and clear of all liens, claims, and encumbrances, and shall be paid by the Debtors without the necessity of Hilco Streambank filing monthly or interim fee applications or maintaining time records in connection with the services rendered pursuant to the Engagement Letter; *provided, however*, that Hilco Streambank shall (i) file a final fee application in the form of a declaration (a "Sale Declaration") in conformity with Local Rule 2016-1(c) in connection with

(Page 6)
Debtors:            NEW RITE AID, LLC, *et al*.
Case No.           25-14861 (MBK)
Caption of Order:  Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief

---

the sale, assignment, license, or other disposition of the Assets setting forth, among other things, a summary of the fees earned and expenses incurred by Hilco Streambank and paid (or to be paid) by the Debtors, and (ii) submit invoices to the Debtors, counsel for Debtors, the U.S. Trustee, and counsel to the Committee for the payment of compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the terms of the Engagement Letter when such compensation becomes due and owing and such expenses are incurred. Such parties shall have ten (10) days to review and object to the invoice submitted by Hilco Streambank, and if there are no objections, the Debtors are authorized to promptly pay Hilco Streambank its fees and expenses without any further order of the Court in accordance with the terms of the Engagement Letter. If an objection is received, the Debtors shall withhold payment of the portion of the fees and expenses that are objected to and promptly pay the remainder, and all objections that are not resolved shall be preserved and brought before the Court on no less than ten (10) days' notice.

5.      The fees payable to Hilco Streambank pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code; *provided, however*, that notwithstanding the foregoing or anything in this Order to the contrary, the U.S. Trustee shall retain all rights to object to Hilco Streambank's fees and expenses based on the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court retains jurisdiction to consider any such objection or response by the U.S. Trustee to Hilco Streambank's final fee application under section 330 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee on

(Page 7)
Debtors:          NEW RITE AID, LLC, *et al.*
Case No.          25-14861 (MBK)
Caption of Order: Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief

---

appeal or otherwise, with respect to the reasonableness of Hilco Streambank's fees and compensation and reimbursement requests.

6. In the event that, during the pendency of these chapter 11 cases, Hilco Streambank requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be billed in one-tenth hour increments and included in Hilco Streambank's final fee application (which invoices and supporting time records may be redacted for confidential and/or privileged information) and such invoices and time records shall be subject to the U.S. Trustee Guidelines and in compliance with the Local Rules, and approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Notwithstanding the foregoing, Hilco Streambank shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law; *provided, however*, that Hilco Streambank shall not seek reimbursement of any fees or costs including attorney fees and costs, arising from the defense of any objections to any of Hilco Streambank's fee applications in these chapter 11 cases.

7. Notwithstanding anything in the Application, the Peress Declaration or the Engagement Letter to the contrary, Hilco Streambank shall, to the extent that Hilco Streambank uses the services of contract attorneys, independent contractors or subcontractors (collectively, the "<u>Contractors</u>") in these chapter 11 cases, (i) pass through the fees of such Contractors to the Debtors at the same rate that Hilco Streambank pays the Contractors; (ii) seek reimbursement for actual costs of the Contractors only; (iii) ensure that the Contractors (to the extent they are attorneys,

(Page 8)
Debtors: NEW RITE AID, LLC, *et al.*
Case No. 25-14861 (MBK)
Caption of Order: Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief

---

accountants, or other agents) (A) are subject to the same conflict checks and disclosures as required for Hilco and required by Bankruptcy Rule 2014 and (B) file with the Court such disclosures required by Bankruptcy Rule 2014; and (iv) attach any such Contractor invoices to its final fee application filed in these chapter 11 cases.

8. Notwithstanding anything in the Application, the Peress Declaration or the Engagement Letter to the contrary, Hilco Streambank's engagement will terminate upon the earlier of (i) one hundred and eighty (180) days from the Effective Date, or (ii) the closing of the final Transaction or Transactions for substantially all of the Assets, unless extended by written agreement of the Debtors and Hilco Streambank on at least ten (10) calendar days written notice to the U.S. Trustee and the Committee. Hilco Streambank shall note in its Sale Declaration for the final sale that the final sale will constitute the termination of its services under the Engagement Letter. If Hilco Streambank terminates its engagement, other than by submission of the Sale Declaration, Hilco Streambank shall provide at least ten (10) calendar days' notice to the Debtors, the U.S. Trustee, and the Committee prior to such termination

9. The Debtors shall use their best efforts to avoid any duplication of services provided by Hilco Streambank and any of the Debtors' other retained professionals in these chapter 11 cases, and, in connection with the services to be rendered pursuant to the Engagement Letter, Hilco Streambank shall endeavor to coordinate and work together with such of the Debtors' other retained professionals to minimize or avoid duplication of services.

10. In the event Hilco Streambank seeks to use any of its affiliates to perform services for the Debtors, the Debtors shall seek the separate retention of any such affiliates.

11. None of the fees payable to Hilco Streambank under the Engagement Letter shall

| | |
|---|---|
| (Page 9) | |
| Debtors: | NEW RITE AID, LLC, *et al*. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC d/b/a Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief |

constitute a "bonus" or fee enhancement under applicable law.

12. Such services other than set forth in the Application and the Engagement Letter that the Debtors' may request that Hilco Streambank provide during the course of these chapter 11 cases, and as agreed to by Hilco Streambank, shall be subject to separate application and order of this Court

13. The Debtors shall not pay Guggenheim Securities, LLC any fees on account of any Assets sold by Hilco Streambank.

14. In the event of any inconsistency between the Engagement Letter, the Application, the Peress Declaration, and this Order, this Order shall govern.

15. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

16. The Debtors and Hilco Streambank are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

17. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Engagement Letter**



September 23, 2025

Via Email

Steven Bixler
Chief Financial Officer
New Rite Aid, LLC
200 Newberry Commos
Etters, PA 17319

**Re: Agreement to Market and Sell Intangible Assets of New Rite Aid, LLC and its Debtor Affiliates**

Dear Steven,

This letter (the "Agreement") sets forth the terms of an agreement as of September 23, 2025 (the "Effective Date") between Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") and New Rite Aid, LLC (together with its debtor affiliates, the "Debtors"), as agreed and consented to by Bank of America, N.A (the "Senior Credit Facility Agent"), with respect to the marketing and sale of: (a) the Debtors' https://www.riteaid.com/ website; (b) any rights with respect to the use of the Rite Aid brand name including associated trademarks and copyrights; (c) the Debtors' customer loyalty data; and (d) any other intangible asset agreed upon by the Debtors, Hilco Streambank, and Guggenheim Securities, LLC (the "Assets").

The Debtor is a debtor-in-possession in a jointly administered chapter 11 case under title 11 of the United States Code, pending before the United States Bankruptcy Court for the District of New Jersey (the "Court"), under Case No. 25-14861. This Agreement is subject to the approval of the Court, and the Debtors agree to promptly file an application seeking approval of Hilco Streambank's retention on the terms and conditions contained in this Agreement.

Hilco Streambank is an expert in managing the sale of assets such as the Assets and has provided similar services to many companies. Hilco Streambank is prepared to immediately commence working with the Debtor and its professionals to assist with respect to the monetization of the Assets subject to the following scope of work and terms and conditions:

1. Engagement and Exclusivity. Hilco Streambank shall be engaged as the Debtors' exclusive agent to market and sell, assign, license, or otherwise dispose of the Assets in one or more transactions (each a "Transaction" and collectively the "Transactions"), as the Debtor so designates.

2. Scope of Services. Hilco Streambank shall work with the Debtor and its advisors in a professional and diligent manner to collect and secure all of the available information and data concerning the Assets. Hilco Streambank shall prepare marketing materials designed to inform potential purchasers of the availability of the Assets for sale, assignment,

license, or other disposition and shall develop and execute a sales and marketing program designed to elicit proposals to acquire the Assets from qualified acquirers with a view toward completing one or more Transactions. Hilco Streambank shall assist the Debtor in connection with the transfer of the Assets to the acquirer(s) who offer the highest or otherwise best consideration for the Assets. Hilco Streambank shall be responsible for the execution of all marketing and sales activities related to the Assets.  Hilco Streambank shall use commercially reasonable efforts to obtain the highest or otherwise best purchase price from potential purchasers. Notwithstanding anything else herein to the contrary, under no circumstances shall Hilco Streambank provide any securities transaction services to the Debtors.

3. Compensation to Hilco Streambank.

    a. Upon the completion of a Transaction, Hilco Streambank shall be entitled to a transaction fee (the "Transaction Fee") in the amount of $25,000.

    b. For its services hereunder, and in addition to the Transaction Fee, Hilco Streambank shall be entitled to receive a commission (a "Commission") based upon a percentage of the aggregate Gross Proceeds (defined below) generated from a Transaction, or Transactions if more than one, as follows:

        i. 12.5% of the amount of aggregate Gross Proceeds greater than $1,000,000, up to and including $3,000,000; plus
        ii. 15.0% of the amount of aggregate Gross Proceeds greater than $3,000,000, up to and including $5,000,000; plus
        iii. 20.0% of the amount of aggregate Gross Proceeds greater than $5,000,000.

    c. The Transaction Fee and Commission shall be due and payable at the closing of each Transaction, as applicable; provided that the Debtors have received the Gross Proceeds from such Transaction and an itemized statement from Hilco Streambank setting forth the amount(s) to be paid. The Debtors hereby agree that Hilco Streambank's applicable Transaction Fee and Commission, as applicable, shall be accounted for and included in any closing statement, waterfall, or flow of funds provided in connection with the closing of a Transaction. The Transaction Fee and Commission shall be paid free and clear of any liens, claims, or encumbrances against the Debtors' Assets or bankruptcy estate, as applicable. No Transaction Fee or Commission shall be earned or payable with respect to any portion of the Assets that is not sold in accordance with a Transaction approved by the Debtors or the Court, as applicable.

    d. "Gross Proceeds" means the total cash and other non-cash consideration paid or received at the closing of a Transaction, or to be paid or received in the future, whether during or after the Term (defined below), including amounts paid into escrow, in connection with a Transaction, including, without limitation, cash and to

the extent approved by the Senior Credit Facility Agent, credit bids, and other property received or to be received in connection with a Transaction. Gross Proceeds shall also include the amount of any indebtedness and/or liabilities of the Debtors that will be assumed, continued, defeased, refinanced, or otherwise paid in connection with a Transaction. In the event any of the consideration is non-cash, or the full amount of the consideration has not been finally determined as of the closing of a Transaction, the Debtor, the Senior Credit Facility Agent and Hilco Streambank shall cooperate to establish a value of such consideration, and Hilco Streambank shall have the option to receive its Commission on that amount as cash at the closing of the Transaction, subject to Court approval. In the event of a credit bid, the Debtors agree to require that the credit bidder add cash to its bid at least in an amount sufficient to pay any Transaction Fee, Commission, and Reimbursable Expenses (defined below) due Hilco Streambank.

4. <u>Expenses</u>. Hilco Streambank shall be entitled to reimbursement from the Gross Proceeds for all reasonable and customary Reimbursable Expenses (defined below) actually incurred in connection with the performance of its services hereunder. "<u>Reimbursable Expenses</u>" means all reasonable, documented, and verified out-of-pocket costs and expenses incurred by Hilco Streambank in connection with performance of the contemplated services, including, without limitation: reasonable expenses of marketing, advertising, data room expenses (which shall be charged at a flat rate of $500), travel and transportation, postage and courier/overnight express fees along with fees owed to third party consultants; provided that the Reimbursable Expenses shall not exceed $10,000 in the aggregate, unless otherwise agreed to in writing by the Debtor and the Senior Credit Facility Agent.

5. <u>Term & Termination</u>. Subject to Section 6 hereof, Hilco Streambank's appointment as Debtors' agent to sell the Assets shall terminate upon the earlier of (i) one hundred and eighty (180) days from the Effective Date, or (ii) the closing of the final Transaction or Transactions for substantially all of the Assets, unless extended based upon the written agreement of the parties or terminated pursuant to the terms hereof (the "<u>Term</u>").

6. <u>Survival</u>. If, within ten (10) days after the termination of this Agreement, Hilco Streambank delivers to the Debtor a written list of prospects with whom Hilco Streambank has had written (including email) contact with respect to the Assets (the "<u>Contacted Prospect List</u>"), and within one hundred and eighty (180) days after the termination of this Agreement, a Debtor consummates a Transaction with a prospect set forth on the Contacted Prospect List, Hilco Streambank shall be entitled to fees in accordance with Section 3 hereof as if the Transaction had been agreed to or consummated before its engagement was terminated, and such fees shall be due and payable to Hilco Streambank in accordance with Section 3 hereof.

7. <u>No Guaranty</u>. Hilco Streambank is not guarantying any specific result on the sale, assignment, or other disposition of the Assets.

8. <u>Nature of Services</u>. The services to be provided by Hilco Streambank in respect of the Assets are, in general, transactional in nature, and Hilco Streambank will not be billing the Debtor by the hour or maintaining time records.

9. <u>Entire Agreement/Amendment</u>. This Agreement sets forth the terms of an agreement between Hilco Streambank and the Debtors. This Agreement shall not be modified or amended in any respect except by a written instrument executed by or on behalf of the parties to this Agreement.

10. <u>WAIVER OF JURY TRIAL</u>. EACH OF HILCO STREAMBANK, THE DEBTORS AND THE SENIOR CREDIT FACILITY AGENT WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT AND ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH ANY OF THE FOREGOING AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

11. <u>Limitation of Liability</u>. Hilco Streambank's maximum liability to the Debtors and the Senior Credit Facility Agent and any other third party, in the aggregate, arising for any reason out of or relating to this Agreement, whether a claim in tort, contract, or otherwise, shall be limited to the amount of fees paid to Hilco Streambank under this Agreement for these services, except to the extent such liability is finally determined to have been caused by the fraud or willful misconduct of Hilco Streambank or its personnel.

12. <u>Indemnification</u>.

    a. The Debtors shall indemnify Hilco Streambank and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by Hilco Streambank, including without limitation, reasonable legal expenses, arising from, related to, or resulting from any misrepresentation, fraud, negligence, or willful misconduct on the part of the Debtors in connection with the negotiation, execution and/or rendering of services by Hilco Streambank hereunder, unless such losses, claims, damages, liabilities and expenses resulted from the misrepresentation, fraud, negligence or willful misconduct of Hilco Streambank in breach of this Agreement.

    b. Hilco Streambank shall indemnify the Debtors and hold them harmless against any and all losses, claims, damages, liabilities and expenses incurred by the Debtors, including without limitation, reasonable legal expenses, arising from, related to, or resulting from any misrepresentation, fraud, or willful misconduct on the part of Hilco Streambank in connection with the negotiation, execution and/or rendering of services by Hilco Streambank hereunder, unless such losses, claims,

damages, liabilities and expenses resulted from the misrepresentation, fraud, negligence or willful misconduct of the Debtors in breach of this Agreement.

13. Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without regard to its conflicts-of-laws principles. Hilco Streambank, Debtors and the Senior Credit Facility Agent agree that the Court shall have exclusive jurisdiction over all matters arising out of, in connection with, and/or pertaining to this Agreement, and hereby consent to the exclusive jurisdiction of the Court over any action or proceeding arising out of or relating to this Agreement. The above stated parties further waive any objection to venue in the Court and any objection to any action or proceeding on the basis of *forum non conveniens*.

14. Retention and Bankruptcy Court Approval. The Debtor has filed a petition under title 11 of the United States Code (the "Bankruptcy Code"). The Debtors shall promptly file an application requesting entry of an order pursuant to sections 327 and 328 of the Bankruptcy Code (the "Retention Order"), which Retention Order shall provide that: (i) the payment of all fees and reimbursement of expenses hereunder to Hilco Streambank shall be approved under section 328(a) of the Bankruptcy Code and shall be free and clear of all liens, claims, and encumbrances; (ii) all such payments of fees and reimbursement of Reimbursable Expenses shall be made without further order of the Court and in accordance with this Agreement; and (iii) Hilco Streambank is not required to maintain time records or file interim or final fee applications; provided that Hilco Streambank will provide a notice with a summary of the fees earned and Reimbursable Expenses incurred. It is understood that the effectiveness of this Agreement is subject to the approval of the Court.

15. Confidentiality. The Debtors and the Senior Credit Facility Agent and Hilco Streambank agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided hereunder; *provided* that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

16. Further Assurances. Hilco Streambank and the Senior Credit Facility Agent and the Debtors shall take all such further actions as are necessary or appropriate to carry out the terms and conditions of the Agreement.

17. Execution in Counterparts. This Agreement may be executed in separate counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed signature page to this Agreement by facsimile, PDF, or other electronic transmission (including the use of e-mail communication for which receipt is acknowledged by Hilco Streambank and the Senior

Credit Facility Agent and the Debtors) shall be as effective as delivery of a manually signed counterpart of this Agreement.



We are prepared to commence work on behalf of the Debtor immediately. Please let us know if the foregoing terms are acceptable by executing a copy of this letter on the space indicated below.

| Sincerely, | Agreed/Accepted: |
|---|---|
| **HILCO IP SERVICES, LLC d/b/a HILCO STREAMBANK** | **NEW RITE AID, LLC,** on behalf of itself and its wholly-owned direct and indirect subsidiaries |

By: _____
Name: David Peress
Title: Executive Vice President

By: _____
Name: Steven Bixler
Title: Chief Financial Officer

**IN WITNESS WHEREOF**, Bank of America, N.A, as Senior Credit Facility Agent, consents and agrees to this Agreement as of the Effective Date.

**BANK OF AMERICA, N.A.,**
as Senior Credit Facility Agent

By: _____
Name:
Title:



We are prepared to commence work on behalf of the Debtor immediately. Please let us know if the foregoing terms are acceptable by executing a copy of this letter on the space indicated below.

Sincerely,

**HILCO IP SERVICES, LLC d/b/a HILCO STREAMBANK**

By: _____
Name: David Peress
Title: Executive Vice President

Agreed/Accepted:

**NEW RITE AID, LLC,**
on behalf of itself and its wholly-owned direct and indirect subsidiaries

By: _SbKBiy_____
Name: Steven Bixler
Title: Chief Financial Officer

**IN WITNESS WHEREOF**, Bank of America, N.A, as Senior Credit Facility Agent, consents and agrees to this Agreement as of the Effective Date.

**BANK OF AMERICA, N.A.,**
as Senior Credit Facility Agent

By: _____
Name:
Title:



We are prepared to commence work on behalf of the Debtor immediately. Please let us know if the foregoing terms are acceptable by executing a copy of this letter on the space indicated below.

Sincerely,

**HILCO IP SERVICES, LLC d/b/a HILCO STREAMBANK**

By: _____
Name: David Peress
Title: Executive Vice President

Agreed/Accepted:

**NEW RITE AID, LLC,**
on behalf of itself and its wholly-owned direct and indirect subsidiaries

By: _____
Name: Steven Bixler
Title: Chief Financial Officer

**IN WITNESS WHEREOF,** Bank of America, N.A, as Senior Credit Facility Agent, consents and agrees to this Agreement as of the Effective Date.

**BANK OF AMERICA, N.A.,**
as Senior Credit Facility Agent

By: _*Courtney Kolb*_
Name: Courtney Kolb
Title: Senior Vice President