

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY
### U.S. COURTHOUSE
### 402 E. STATE STREET
### TRENTON, NEW JERSEY 08608

**Hon. Michael B. Kaplan**  609-858-9360
**Judge, United States Bankruptcy Court**

November 3, 2025

*All Interested Parties*

        Re:    <u>New Rite Aid, LLC</u>
                Case No.: 25-14861 (MBK)

Dear Counsel:

      Presently before the Court are three motions filed by Shmuel Klein on behalf of HVP22 LLC: a Motion to Compel Payment of Administrative Expenses (ECF No. 182) ("Admin Expense Motion"), a Motion for Adequate Protection (ECF No. 390) (the "First Adequate Protection Motion") and a second Motion for Adequate Protection In Addition to Motion to Compel Payment of Administrative Expenses (ECF No. 1755) (the "Second Adequate Protection Motion"), (collectively with the First Adequate Protection Motion and the Admin Expense Motion, the "Motions"). The Court has considered fully the arguments of the parties and the record in this case. For the reasons that follow, the Court will DENY the Motions in their entirety.

1

I.   **Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). Venue is proper under 28 U.S.C. §§ 1408.

II.  **Background and Procedural History**

The factual background and procedural history of these matters are well known to the parties. As such, they will not be repeated in detail here. The issues presently before the Court involve a lease for retail space located at 76 Vandenburgh Ave. in Troy, New York. The landlord ("HVP2") and the Debtors' predecessor entered into a lease in 2017 (ECF No. 2391), which lease was amended in 2018 (the "Lease"). *See First Amendment to Lease Agreement*, ECF No. 1755-5. Debtors filed for bankruptcy on May 5, 2025, and, ultimately, sought to reject the Lease. The instant Motions were filed both before and after rejection.

III. **Discussion**

   A.  **Summary of Relief Sought**

HVP2's Admin Expense Motion is titled as a "Motion to Enforce the Confirmed Plan and for Payment of Administrative Payment" and requests rent for the month of May.[1] The Admin Expense Motion also seeks rent for the month of June—which counsel for HVP2 concedes had not yet become due at the time of the filing—and late fees.

---

[1] Much of the memorandum in support of the Admin Expense Motion seeks conversion of this bankruptcy case to Chapter 7, which is presented as alternative relief in the Notice of Motion (ECF No. 182).

2

HVP2's First Adequate Protection Motion (ECF No. 390) again seeks payment of May rent, as well as June rent—which had not yet become due at the time of the motion's filing. The First Adequate Protection Motion also seeks "agreed late fees and attorney's fees." *Cert. in Support of Motion First Adequate Protection Motion* 1, ECF No. 390-1. The Certification and Memorandum in support of this motion are nearly identical to those submitted in support of the Admin Expense Motion.

Finally, HVP2's Second Adequate Protection Motion (ECF No. 1755) seeks May rent, "immediate payment of August 2025 rent", post-petition late fees in an amount greater than those sought in the initial motions, attorney's fees, and conversion of the case to Chapter 7. *Cert. in Support of Second Adequate Protection Motion* 3, ECF No. 1755-1. In this motion, HVP2 explains that despite Debtors having rejected the Lease as of July 31, 2025, "Debtor has failed to surrender the premises by tendering the keys and alarm codes, despite demand for the same." *Memorandum in Support* 2, ECF No. 1755-2.

Debtors have submitted several pleadings in opposition. *See* ECF Nos. 653, 1108, 2389, and 2970. HVP2 filed a supplemental certification in further support of its motions and objects to Debtors' pleadings.[2] *See* ECF No. 2445. In this pleading, HVP2 first requests Common Area

---

[2] The Court notes that HVP's first Supplemental Certification (ECF No. 714) was withdrawn (ECF No. 1777). Additionally, HVP's operative Supplemental Certification (ECF No. 2445) also requests that this Court disregard Debtors' objection and impose sanctions because it was improperly filed. According to HVP, the pleading "contains original signatures in direct violation of the Rules of this Court." *Supp. Cert.* 2, ECF No. 2445. However, no Rules are cited, and this Court determines that an original signature is, in fact, *not* a violation of our Local Rules. *See* D.N.J. LBR 5005-1. Likewise, the Court is not persuaded by HVP's complaint that the exhibit submitted in connection with Debtors' objection was inappropriately filed. HVP asserts that this pleading is an "orphan" and a "stand alone" exhibit that "contains six exhibits in one submission." This, says counsel for HVP, "is against the Rules of this Court." Again, no Rule is cited. The Court finds no violation. Indeed, the "stand alone" exhibit is linked to Debtors' objection, making it clear to all who view the docket that it is a related pleading. HVP's requests are, thus, baseless, and no further discussion is warranted.

Maintenance ("CAM") charges.[3]  As this request was raised for the first time in a supplemental pleading, it will not be considered in this Court's resolution of the instant Motions.

**B. Analysis**

As Debtors point out in their opposition(s), much of the relief sought by HVP2 is moot. During the hearing on October 27, 2025, counsel for HVP2 clarified that the remaining issues before the Court are four-fold: (1) the balance of the May rent; (2) CAM charges; (3) post-petition late fees; and (4) lease surrender issues.  Indeed, the Debtors paid June 2025 rent in a timely manner; accordingly, that issue is resolved.

As to HVP2's relief sought involving the May 2025 rent, this amounts to a request for "stub rent," which is the amount due the Landlord for the period of occupancy and use between the petition date and the first post-petition rent payment. *See, e.g., In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 815 (3d Cir. 2010).  Like the June 2025 rent, this payment has been made, and Debtors' obligation has been satisfied.  HVP2 complains that stub rent was not paid until September; however, nothing in the Bankruptcy Code requires "stub rent", which amounts to an administrative expense under § 503(b)(1)(A), to be paid by a date certain.  Rather, it must be addressed prior to plan confirmation.  As such HVP2 has not demonstrated entitlement to any late fees relative to the May 2025 rent payment.

As to HVP2's requests for CAM charges, this Court reiterates that such relief was not requested in any of the pending motions; accordingly, this request will not be addressed.  In any event, HVP2 has not adequately demonstrated entitlement to same in its pleadings.

---

[3] HVP's only reference to CAM charges in the Motions is counsel's statement certifying that "[t]he Debtor is also responsible to pay a proportionate share of the CAM charges." *Cert in Support of Second Adequate Protection* Motion ¶4, ECF No. 1755-1. Although CAM charges are referenced in HVP's initial Supplemental Certification (ECF No. 714), that document was withdrawn.

4

Likewise, HVP2 has not demonstrated that it is entitled to any post-petition late fees. As discussed, the Code imposes no deadline on the payments of stub rent. Rather, these payments must be addressed prior to plan confirmation, which has not yet occurred. Additionally, rent payments due and owing up to the point of Lease rejection (for the months of June and July) were timely made; therefore, late fees are not appropriate for those months. To this end, HVP2 asserts that—despite rejection—Debtors did not properly surrender the property effective July 31, 2025. As a result, HVP2 concludes that Debtors are obligated to pay rent for the month of August 2025 and, because such rent has not been paid timely, the Debtors also owe late fees for this month. Thus, the balance of HVP2's request for post-petition late fees dovetails into the final issue regarding the Lease surrender. Because, as discussed below, the Court determines that the Lease was properly surrendered, effective July 31, 2025, late fees are inappropriate and HVP2's request is denied.

HVP2 contends that Debtors did not turn over keys and alarm codes as required by the Rejection Procedures Order (ECF No. 776). However, as Debtors point out, Debtors are not required to tender the keys and alarm codes to effectuate rejection. Rather, the Rejection Procedures Order permits Debtors to "(2) notify [] the affected landlord in writing, with email being sufficient, that the keys, key codes, and security codes, if any, are not available, but that the landlord may rekey the leased premises." *Rejection Procedures Order* ¶ 2.a, ECF No. 776. The instant Lease was identified in Debtors' Sixteenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases (Docket No. 1573), to which HVP2 objected. The record indicates that this document was properly served upon counsel for HVP2. The record also demonstrates that HVP2 was provided with a Surrender Letter, which advised Landlord that Debtors had coordinated with the burglar alarm company to disable the burglar alarm system. *See*

5

*Exhibit 2 to Debtors' Objection* (pages 123-127), ECF No. 2391.  Indeed, this letter includes detailed instructions regarding the burglar alarm system.  Although HVP2 complains that the Surrender Letter does not contain any codes, inspection of the letter reveals that the alarm was disabled and the Letter contains instructions for how to disconnect the alarm, which—the Letter explained—would continue to ring locally. *Id.* at 127.  Thus, it appears all information was provided and all obligations fulfilled, consistent with the Rejection Procedures Order.  The Certifications of Debora Diprizito and Shelby A. Marks—submitted in support of Debtors' objection to the Motions—contain sworn statements and exhibits that support Debtors' position and reflect extensive and timely communications between the Landlord and Debtors' representatives, in a concerted effort to assist. Debtors properly surrendered the property effective July 31, 2025; therefore, HVP2 is not entitled to August 2025 rent or any related late fees.

Finally, the Court addresses counsel's request for attorneys' fees and summarily denies this request. It is true that some bankruptcy courts have allowed as administrative expenses a landlord's attorneys' fees under section 365(d)(3) of the Bankruptcy Code if such fees were (1) reasonably incurred for the purpose of enforcing performance under the lease, (2) authorized under the terms of the lease, and (3) supported by detailed invoices. *See, e.g.*, *In re Pelican Pool & Ski Ctr., Inc.*, 2009 Bankr. LEXIS 4623, at *43-50 (Bankr. D.N.J. July 27, 2009) ("*Pelican Pool*") (allowing post-petition, pre-rejection attorneys' fees pursuant to section 365(d)(3), pending the court's determination of the reasonableness of such fees); *In re Pac-West Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) (court agrees to consider payment of attorneys' fees under section 365(d)(3) upon the submission of detailed invoices). Indeed, as the court in *Pelican Pool* observes, "where authorized by a provision in the lease enforceable under state law, a landlord is entitled to attorney's fees when such fees

6

are reasonably incurred for the purpose of enforcing performance under the lease." *Id.* at *46. Thus, the initial task for this Court is to review the lease and analyze its provisions relative to an award of legal fees and expenses. While there is a provision in the Lease that allows for attorney's fees, it does not provide a basis for payment of any attorneys' fees to HVP2. Pertinently, that provision, Section 21.3 of the Lease, provides as follows:

> 21.3. In the event that either Landlord or Tenant seeks enforcement of its rights and commences any suit for the collection of any amounts for which the other may be in default or for the performance of any other covenant or agreement hereunder, the prevailing party shall be entitled to be reimbursed by the other party for reasonable attorneys' fees and expenses incurred in enforcing such obligations and/or collecting such amounts.

Thus, HVP2's entitlement to legal fees and expenses rests upon a showing that HVP2 (a) is the "prevailing party" (b) in a suit (c) seeking enforcement of its rights (d) where the Debtors are in default or for the performance of any covenant or agreement under the Lease and (e) such fees and expenses were incurred in enforcing such obligations and/or collecting such amounts.[4] The Court agrees with the Debtors that HVP2 has not satisfied it burden to demonstrate that any of the foregoing requirements have been met. Although the Lease does provide for a right to recover

---

[4] Bankruptcy courts being asked to approve fees have "a duty to examine the reasonableness of all fees requested[.]" *In re Pac. Sea Farms, Inc.*, 134 B.R. 11, 16 (Bankr. D. Haw.) (citing *Matter of Daylight Transp., Inc.*, 42 B.R. 20 (Bankr. E.D.N.Y. 1984) (finding that time entries such as "research", "conference" or "telephone call" was insufficient to support payment of attorneys' fees under section 365(d)(3) of the Bankruptcy Code). The Court notes that the Motions provide no detail as to the attorneys' fees sought in connection with these filings to allow the Court to determine which fees, if any, are compensable and their reasonableness. In point of fact, the Motions are devoid of any time records, legal invoices, or supporting certifications to evidence the attorneys' fees requested in Motions. These failing alone warrant disallowance of any attorneys' fees. *Pelican Pool*, at *48.

attorneys' fees under certain circumstances, those circumstances are not present. As noted by the Debtors, the Motions were not filed to enforce any rights under the Lease, as there were no enforceable defaults at the time HVP2 filed its Motions at the outset of the case. Simply put, there were no defaulted obligations to be enforced requiring attorney time and expense. Any and all relief ultimately achieved on behalf of the Landlord came about by operation of law under the Bankruptcy Code—and required little, if any, action by the Landlord or its counsel. HVP2 can hardly be considered a "prevailing party" as required under the Lease agreement.

The efforts undertaken to challenge the Debtors' pursuit of its rights under the Code should not be financed by other creditors, but instead by Mr. Klein's client. That is the American Rule on fees and the Lease agreement does not support a different result. *See In re Crown Books Corp.*, 269 B.R. 12, 17-18, 20 (Bankr. D. Del. 2001). *See also In re Ryan's Subs*, Inc., 165 B.R. 465, 467 (Bankr. W.D. Mo. 1994) (in denying a landlord's request for attorneys' fees the court held that "[i]f [the landlord] chooses to challenge [the] rights granted to the debtor by the Code, then [the landlord] must bear the risk of attorney's fees incurred by such action"); *In re Best Products Co., Inc.*, 148 B.R. 413, 414-15 (Bankr. S.D.N.Y. 1992) (where the court denied the landlord's request for attorneys' fees incurred in seeking to shorten the time within which the debtor must assume or reject the lease and then opposing the debtor's assumption of the lease, and concluded that the fees were not recoverable because they were not incurred in efforts to collect any delinquencies under the lease but in seeking to deny the debtor rights it had under the Bankruptcy Code).

## IV. Conclusion

For the foregoing reasons, the Motions (ECF Nos. 182, 390, and 1755) are DENIED. The Court will enter an appropriate form of Order.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Cc: Filed on CM/ECF