| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Turner Falk<br>**SAUL EWING LLP**<br>1735 Market Street, Suite 3400<br>Philadelphia, PA 19103-7504<br>Tel: (215) 972-8415<br>E-mail: turner.falk@saul.com<br><br>John D. Demmy (DE Bar No. 2802)<br>**SAUL EWING LLP**<br>1201 N. Market Street, Suite 2300<br>P.O. Box 1266<br>Wilmington, DE 19899<br>Tel. 302-421-6848<br>E-mail: john.demmy@saul.com<br><br>*Attorneys for Element Fleet Corporation* | |
| In re:<br><br>NEW RITE AID, LLC, et al.,<br><br>               Debtors[1] | Case No. 25-14861 (MBK)<br><br>Chapter 11<br><br>(*Jointly Administered*)<br><br>**Re: Docket No. 3215**<br>**Objection Deadline:**<br>    **November 19, 2025**<br>**Hearing Date:**<br>    **November 24, 2025, at 10:00 a.m.**<br><br>The Honorable Michael B. Kaplan |

# LIMITED OBJECTION OF ELEMENT FLEET
# TO CONFIRMATION OF THE SECOND AMENDED
# JOINT CHAPTER 11 PLAN OF REORGANIZATION
# OF NEW RITE AID, LLC AND ITS DEBTOR AFFILIATES

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

52024052.1 11/19/2025

Element Fleet Corporation, in its capacity as servicer for its affiliate Gelco Fleet Trust with respect to vehicle lease agreements and in its capacity as party to a related service agreement as successor by merger to Gelco Corporation d/b/a GE Fleet Services ("**Element Fleet**"), objects to confirmation of the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates* [Docket No. 3215] (as amended, supplemented, or otherwise modified from time to time, the "**Plan**"). In support, Element Fleet respectfully represents as follows:

## I.    BACKGROUND

1. On May 5, 2025 (the "**Petition Date**"), Debtor Rite Aid Hdqtrs. Corp. ("**Rite Aid Hdqtrs.**") and the other above-captioned debtors and debtors-in-possession (together with Rite Aid Hdqtrs., collectively, the "**Debtors**") commenced the captioned cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

***The Element Fleet Contracts***

2. Element Fleet is one of the largest fleet vehicle lessors and fleet service providers in the world.

3. For many years Rite Aid Hdqtrs. leased a vehicle fleet from Element Fleet and Element Fleet provided services in respect of such leased vehicles, as well as other vehicles owned or leased by the Debtors, pursuant to the following executory contracts: (i) Master Lease Agreement, dated as of November 5, 2012 (together with all amendments), *see* **Exhibit 1** attached hereto, and the Open-End Vehicle Lease Agreement, dated as of February 6, 2006 (together with all amendments), *see* **Exhibit 2** attached hereto (collectively, the "**Vehicle Leases**"); and (ii) Master Services Agreement, dated as of November 5, 2012 (together with all amendments, the "**MSA**" and together with the Vehicle Leases, the "**Element Fleet Contracts**"), *see* **Exhibit 3** attached hereto.

4. The Element Fleet Contracts were assumed by Rite Aid Hdqtrs. pursuant to confirmation of the plan in the 2023 Rite Aid bankruptcy case commenced in this Court, Case No. 23-18993 (MBK). Notwithstanding assumption of the Element Fleet Contracts, on October 17, 2025, the RAD Sub-Trust A filed an adversary proceeding seeking avoidance of an approximate $30,000 payment made in connection with the Element Fleet Contracts.

5. The Vehicle Leases are "open ended" in that, inter alia, there is no finite term to them, and Rite Aid Hdqtrs. may both requisition vehicles from and return vehicles to Element Fleet during the terms of the Vehicle Leases. Rite Aid Hdqtrs. has done so on numerous occasions, both prior to and after the Petition Date.

6. Since the Petition Date, consistent with the Debtors' on-going liquidation activities, Rite Aid Hdqtrs. has been returning leased vehicles to Element Fleet. The size of the leased fleet has been steadily decreasing since the Petition Date and as of the date of this pleading Rite Aid Hdqtrs. no longer possesses any vehicles leased to it under the Vehicle Leases.

7. Also since the Petition Date, Element Fleet as contemplated by the Vehicle Leases has been disposing of vehicles that Rite Aid Hdqtrs. has been returning to Element Fleet. This process has been continuing through the date of this pleading.

8. Upon the return of vehicles Element Fleet usually will dispose of them by public sale conducted at established auto auction venues. Upon the disposition of a leased vehicle, the rent payable for such vehicle is adjusted at such time based on a formula involving the capitalized cost and depreciation of the vehicle during Rite Aid Hdqtrs.' possession and use, and the net sale proceeds. Rent continues to accrue with respect to leased vehicles until disposition. Upon application of the formula described generally above (and in more detail in the Vehicle Leases) additional rent may be due and owing from Rite Aid Hdqtrs. or a credit against Rite Aid Hdqtrs.' obligations under the Element Fleet Contracts may become applicable, subject to the terms of the

Element Fleet Contracts. If amounts are due and owing under the Element Fleet Contracts then Element Fleet may apply any credits created through the disposition process described above by setoff, recoupment, or substantially similar accounting convention.

9. As of the date of this pleading, an aggregate credit exists from prior dispositions of formerly leased vehicles but obligations also continue to accrue under the Element Fleet Contracts. In addition to rent, which constitutes a current charge, certain charges under the Vehicle Leases and certain charges in respect of services provided by Element Fleet under the MSA potentially have "long-tails" and may not yet be known by Element Fleet.

10. Included among the services provided by Element Fleet are administrative tasks like payment of taxes and titling fees, distribution of insurance cards, vehicle procurement and fleet management, driver safety programs, accident-related services, and facilitation of vehicle maintenance. Under the MSA (and also potentially pursuant to the Vehicle Leases), Element Fleet will charge Rite Aid Hdqtrs. for such items but Element Fleet (1) may not yet be aware of them (especially for things like traffic and parking tickets, state taxes, and so on), and (2) also may be put in the position of seeking reimbursement from Rite Aid Hdqtrs. for certain services. For example, with respect to accident and maintenance activity, for which Rite Aid Hdqtrs. is obligated to pay under the Element Fleet Contracts, Element Fleet may at times initially pay third parties for such work and seek reimbursement from Rite Aid Hdqtrs.

11. Also, as of this time, there may have been accidents, incidents or other circumstances involving leased vehicles that may or will require repair and/or maintenance work that may be contemplated, have been done or is in process for which Rite Aid Hdqtrs. is responsible under the Element Fleet Contracts but with respect to which Element Fleet at this time is unaware and/or has not been provided with invoices or other billing information and which cannot specifically be included in this Proof of Claim.

4

12. In addition, under the MSA, Element Fleet issued credit cards to Rite Aid Hdqtrs. employees which enabled them to purchase fuel and other vehicle-related supplies on credit. These credit purchases are paid by Element Fleet and then charged to Rite Aid Hdqtrs. Also, as noted above, Element Fleet may provide credit to Rite Aid Hdqtrs. in the form of payment for necessary repair and maintenance work for vehicles, which amounts Element then bills to Rite Aid Hdqtrs. for reimbursement. Again, there may be charges relating to such extensions of credit of which Element Fleet at this time may be unaware or has not been provided with invoices or other billing information.

*Treatment of Executory Contracts and Leases under the Plan*

13. The Plan provides for the deemed rejection of all executory contracts and leases with certain exceptions, including for leases and contracts included on the Schedule of Assumed Executory Contracts and Unexpired Leases (the "**Assumption List**") filed with the Plan Supplement. On November 11, 2025, Debtors filed the Assumption List with the Plan Supplement [Docket No. 3218]. As Element Fleet anticipated, the Element Fleet Contracts are not included on the Assumption List, are not otherwise carved out from "deemed rejection" by the Plan; and, thus, the Element Fleet Contracts will be rejected by confirmation of the Plan, effective as of the Effective Date of the Plan.

14. Element Fleet anticipates, given the normal time frames involved in the disposition of vehicles at public auction, that it likely still will be engaged in the vehicle disposition process as of the November 24, 2025, hearing on confirmation of the Plan and perhaps also as of the Effective Date assuming the Court is inclined to confirm the Plan.

15. Accordingly, a final determination of obligations due and owing under the Element Fleet Contracts and a final setoff or recoupment or similar action by Element Fleet of such

5

obligations against credits generated by the disposition process likely will not occur until after the Plan Effective Date.

16. However, certain provisions of the Plan, separately or in tandem, intentionally or otherwise, could impact Element Fleet in the exercise of its valid rights and remedies under the Element Fleet Contracts or are potentially ambiguous with respect thereto including, without limitation, its rights of setoff, recoupment and counterclaim. Accordingly, Element Fleet is filing this limited objection to either obtain clarification that the Plan if confirmed will not impair Element Fleet's rights and remedies in connection with the disposition of the leased vehicles and application of disposition proceeds to its claims under the Element Fleet Contracts and/or to obtain appropriate relief from the Court in connection therewith.

## II.    LIMITED OBJECTIONS TO THE PLAN

*Element Fleet's Setoff Rights Must be Preserved Notwithstanding Confirmation*

17. Element Fleet submits that its right to apply credits generated by the vehicle disposition process to obligations under the Element Fleet Contracts are in the nature of lien and/or setoff and recoupment rights. Such rights must be preserved for Element Fleet notwithstanding confirmation of the Plan.

18. Element Fleet acknowledges that Article X.G. of the Plan purports to preserve setoff rights notwithstanding confirmation of the Plan. However, the following provisions of the Plan, separately or in tandem, appear inconsistent with or arguably make ambiguous such provisions of the Plan:

> X. A.  <u>Settlement, Compromise, and Release of Claims and Interests</u>: (". . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, compromise, and release, effective as of the

6

Effective Date, of Claims, Interests, controversies, and Causes of Action of any nature whatsoever . . .");

**X. B.** <u>Release of Liens; Transfer Free and Clear Binding Effect</u>: (". . . all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns . . . ");

**X. E.** <u>Exculpation</u>: (". . . no Exculpated Party[2] shall have or incur, and each Exculpated Party is exculpated from any claim or Cause of Action for any act or omission arising prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, . . ."); and

**X. F.** <u>Injunction</u>: (". . . all Entities who have held, hold, or may hold claims, Causes of Action, or Interests that have been released pursuant to the Debtor Release, the Third-Party Release, or another provision of the Plan (including the release of Liens pursuant to <u>Article X. B</u> of the Plan) . . . are permanently enjoined . . . from . . . (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (d) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with

---

[2] Exculpated Parties include each of the Debtor, the Reorganized Debtors and the Wind-Down Debtors.

52024052.1 11/19/2025

respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; . . .")[3]

19. The Plan definition of "Causes of Action," which are being released including with respect to the Debtors and their successors pursuant to the definition of "Released Parties," includes "all rights of setoff, counterclaim, or recoupment and claims under contracts." As noted above, confirmation of the Plan as drafted would cause the release of and issuance of an injunction against prosecution of "Causes of Action."

20. The concern is that the broad and possibly inconsistent provisions of Article X of the Plan could be capitalized on to argue that Element Fleet's vehicle disposition and setoff processes under the Element Fleet Contracts and otherwise applicable law might be subject to the release of claims and liens, injunction against causes of action and other injunction provisions of the Plan. Element Fleet's concern is that such provisions, if not challenged now, could be used later in an attempt to unlawfully interfere with Element Fleet's legitimate rights and remedies in violation of 11 U.S.C. §§ 1129(a)(1) and 1129(a)(3).

21. Limiting or clarifying the effect of the releases, exculpations and injunctions provide by Article X of the Plan would not be prejudicial in any way to the Debtors, their successors or any other parties in interest, as the Plan also provides for the retention of the Debtors'

---

[3] Element Fleet submits further that the clause in item (d) of Article X. F. – "and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise" – is at best unclear and makes subparagraph (d) potentially ambiguous as well.

52024052.1 11/19/2025

Causes of Action, if any, notwithstanding Debtors' rejection, and breach, of executory contracts and leases. In this regard, Section IV. L. of the Plan provides, in part:

> Debtors and, on and after the Effective Date, the Reorganized Debtors and Wind-Down Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action allocated to them in the Schedule of Retained Causes of Action, whether arising before or after the Petition Date and notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan . . . .

22. Element Fleet submits further that such a sweeping injunction with respect to Element Fleet and its rights and remedies would not be appropriate under the well-known standards for injunctive relief. Inter alia, in that the right to apply credits are included in the Vehicle Leases and teh parties have been acting under such terms for many years including in tis bankruptcy case there is no probability of success on the merits for an injunction seeking to prevent Element Fleet from pursuing such contractual rights. Moreover, there would be no irreparable harm to the Debtors or their successors by Element Fleet's pursuit of its setoff rights as pursuant to the Plan the Debtors and their successors retain all their defenses and rights and remedies in teh context of Causes of Action.

***Element Fleet Should Not be required to File a Motion to Preserve its Setoff Rights***

23. Finally, Element Fleet submits that the requirement of a motion filed by the Effective Date in order to preserve set off rights does not make sense as to Element Fleet. First, such a pleading likely would be nothing more than a placeholder as Element Fleet at such time likely will not have finalized all vehicle dispositions and will not know what all the numbers may be that may go into a set off calculus. Second, requiring Element Fleet to incur the time and expense (which may ultimately come out of any credit to which the Debtors or their successors may become entitled to) would be a burden on Element Fleet that creates no benefit to the Debtors – as they are well aware of Element Fleet's set off rights and the way the Vehicle Leases work in

9

connection with the disposition of formerly leased vehicles. Rather than filing a motion by an artificial deadline, the respective rights and interests of Element Fleet and the Debtors (or their successors) can and should be dealt with in the ordinary course of business after the Effective Date; and, a motion should be file only if the parties are unable to resolve issues between themselves. Element Fleet submits that this pleading should suffice as notice to the Debtors and their successors and all other parties in interest of Element Fleet's setoff rights and that no release of such rights or injunction pursuant to confirmation of the Plan should apply to the exercise of such rights by Element Fleet, subject, of course, to the right of parties to bring disputes to a court of competent jurisdiction for resolution.

WHEREFORE, Element Fleet respectfully objects to confirmation of the Plan as set forth herein; and requests that the Court grant it such relief to which it may be entitled.

Dated: November 19, 2025                    **SAUL EWING LLP**

*/s/ Turner Falk*
Turner Falk
1735 Market Street, Suite 3400
Philadelphia, PA 19103-7504
Tel: (215) 972-8415
E-mail: turner.falk@saul.com

John D. Demmy (DE Bar No. 2802)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Tel. 302-421-6848
E-mail: john.demmy@saul.com

*Attorneys for Element Fleet Corporation*