# EXHIBIT 1

## Master Lease Agreement

 GE Fleet Services

01-107900

**Master Lease Agreement**

This Master Lease Agreement (the "Agreement") is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS") acting on its own behalf and as servicing agent for an affiliate or titling trust designated as a lessor, and the undersigned (the "Customer") and together with its Exhibits, Rate Schedules, Vehicle Orders and amendments is referred to herein as the "Agreement". Customer agrees that the lessor of each Vehicle leased hereunder may be any of GEFS, an affiliate or a titling trust, as designated by GEFS (acting for itself and/or as servicing agent for any such designated lessor). The lessor of each Vehicle (the "Lessor") will be identified on the certificate of title and in a Units Added to Contract exhibit made available to Customer. If the Lessor is a titling trust, then subject to Customer's right of quiet enjoyment and use of any Vehicle during its Lease Term, such Lessor shall have no liability, obligation or responsibility under this Agreement, but GEFS will have sole responsibility for all obligations. Each Lessor that is not a titling trust shall be severally liable hereunder. GEFS may act for itself or as agent for any other Lessor.

**1. LEASE; DISCLAIMER.** Lessor hereby agrees to lease to Customer and Customer hereby agrees to lease from Lessor certain Vehicles for use in its business. Customer shall order a Vehicle for lease by placing a noncancelable Vehicle Order with GEFS. Customer's Vehicle Order authorizes Lessor to purchase such Vehicle subject to the then current warranty of the manufacturer. Lessor hereby assigns the manufacturer's warranty to Customer for the Lease Term. CUSTOMER AGREES THAT LESSOR IS NOT THE MANUFACTURER, DESIGNER OR DISTRIBUTOR OF THE VEHICLES AND THAT EACH VEHICLE (INCLUDING ANY SPECIFIED MODIFICATION) ORDERED IS OF A DESIGN SELECTED BY CUSTOMER AND SUITABLE FOR ITS PURPOSES. LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO: a) ANY VEHICLE INCLUDING, BUT NOT LIMITED TO: THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF A VEHICLE; THE DESIGN, QUALITY OR CAPACITY OF A VEHICLE; OR COMPLIANCE OF A VEHICLE WITH APPLICABLE LAW OR b) THE ACCOUNTING TREATMENT OF THIS AGREEMENT OR THE TIMING OF THE ACCRUALS OF THE RENTALS HEREUNDER FOR FINANCIAL STATEMENT OR TAX PURPOSES. CUSTOMER ACKNOWLEDGES AND AGREES THAT LESSOR IS AN INDEPENDENT CONTRACTOR AND DOES NOT ACT IN THE CAPACITY OF A FIDUCIARY OF CUSTOMER. CUSTOMER WILL OBTAIN TAX AND ACCOUNTING ADVICE FROM ITS OWN PROFESSIONALS.

**2. DELIVERY.** Customer shall take delivery within 3 business days of notice that the Vehicle is available. Customer's removal of the Vehicle from such location shall constitute acceptance of the Vehicle. If Customer requests that Lessor, prior to delivery to Customer, deliver one or more Vehicles to an upfitter, body company, installer or other third party and/or obtain certain equipment or parts from a specific vendor (each, a "Vendor"), then Customer assumes all risks of doing business with Vendor; including without limitation, the Vendor's creditworthiness. Customer agrees that Customer's obligation to pay rent and all other amounts with respect to any Vehicle shall be absolute and unconditional and that Customer shall not be entitled to any waiver, release or reduction of, or setoff against, such amounts for any reason whatsoever, including, without limitation, any damage to, destruction of or defect in any Vehicle (provided, however, that any such payment shall not prejudice Customer's right to claim adjustment or reimbursement with respect to billing errors).

**3. TERM OF AGREEMENT.** This Agreement shall commence on the Effective Date, and continue until canceled or terminated by either party upon 30 days' written notice to the other. Notwithstanding termination, this Agreement shall remain in effect with respect to each Vehicle then leased and each Vehicle Order processed by Lessor until all terms and conditions of this Agreement are satisfied.

**4. LEASE TERM.** The noncancelable minimum Lease Term for each Vehicle is 367 days beginning upon Customer's acceptance. Thereafter, the Lease Term may be renewed monthly for the lesser of the Maximum Lease Term (autos: 50 months; light trucks: 50 months) or the amortization term in the respective Units Added to Contract exhibit. Customer acknowledges that it is responsible for its own determination of the proper lease term period for purposes of its SFAS 13 or similar analysis. Customer agrees not to order any medium and heavy trucks.

**5. OPERATION.** Customer shall operate the Vehicles in the United States and for occasional use for continuous periods not to exceed 30 days, in Canada and Mexico, provided that Customer maintains insurance complying with the requirements of such jurisdictions during such periods, and in accordance with applicable federal, state and local law governing Vehicle use, operation, maintenance or alteration. Customer agrees to repair the Vehicles and to maintain them in safe and good mechanical condition. All additions to a Vehicle become the property of Lessor and shall be surrendered with the Vehicle. **NO VEHICLES MAY BE USED TO TRANSPORT PERSONS FOR HIRE OR HAZARDOUS SUBSTANCES.**

**6. NET LEASE.** Customer covenants that it will, as to each Vehicle, pay all costs, expenses, fees, charges, fines, and taxes incurred in connection with the Vehicle's titling, registration, garaging location, delivery, purchase, sale, rental, surrender, modification, and arising from the operation, use, repair or maintenance of the Vehicle during its Lease Term. If Lessor or GEFS pays any of the foregoing amounts, Customer shall promptly reimburse Lessor or GEFS and pay the then current administrative charge.

**7. RENTAL CHARGES.** Customer will pay rental for the Vehicles in accordance with the Rate Schedule, as well as all other rental charges provided for in this Agreement. Monthly rental charges shall begin with the calendar month of Vehicle delivery if the Vehicle is accepted on or before the 15th day of the month, or with the next succeeding month if the Vehicle is accepted on or after the 16th of the month. Monthly rental charges end at the end of the month prior to the month of sale if the Vehicle is sold on or before the 15th day of the month, or at the end of the month of sale if the Vehicle is sold on or after the 16th day of the month. If a Vehicle Order specifies a Vehicle requiring modifications, such that it is necessary or desirable for Lessor to pay for an incomplete Vehicle or its components, Lessor shall charge Customer, as additional rental, interim financing as provided in the Rate Schedule.

**8. PAYMENT TERMS.** Time is of the essence. All rent and other charges are due and payable within 10 days from Customer's receipt of invoice, provided, however that "receipt" shall be deemed to be the later of Customer's receipt of an electronic invoice from Lessor and the date of invoice. Payments shall be made in U.S. dollars by direct debit, electronic transfer from a Customer bank account to an account specified by Lessor, Customer check submitted to the payment address specified on the invoice or other means expressly permitted by Lessor. Payment credit is subject to final payment by the institution on which the item of payment was drawn. No restrictive endorsements shall be valid or binding. On any amounts not paid within 15 days from Customer's receipt of invoice, late payments will be charged on the amount past due at the rate that is the lesser of 1% or the highest legal interest rate, per month or fraction thereof. Once, during each calendar year of this Agreement, Customer may notify GEFS that it elects to use the one-time option described below for

waiver of a late payment fee. This waiver of late fee penalties may be utilized with respect to a payment not made in accordance with the time for payment specified above, but for which the actual payment was received by GEFS within 30 days of Customer's receipt of invoice. It is the intent of Lessor that it not receive directly or indirectly any amount in excess of that amount which may be legally paid. Any excess charges will be credited to Customer or, upon request of Customer, refunded. Customer agrees to carefully review each invoice or other statement provided by Lessor. If Customer identifies a billing error, Customer will advise Lessor promptly and in such event, Lessor's sole liability and Customer's exclusive remedy shall be appropriate adjustments in Customer's account. All charges are based upon GEFS' standard operating routines, existing business policy and computer systems capabilities.

9. SURRENDER OF VEHICLES At the end of the minimum Lease Term, Customer may, and at the end of the Lease Term, Customer shall, at Customer's sole expense, upon reasonable prior written notice to Lessor, deliver the Vehicle to Lessor at a mutually agreed location. Prior to surrender of Vehicles, Customer may solicit offers payable in certified funds from prospective purchasers on an "as is, where is" basis, without warranty by or recourse to Lessor; provided, that Customer will not continue to use any such Vehicle after its sale. Upon surrender or, if not surrendered, at final disposition, the Vehicle shall be in good, safe and lawful operating condition. Surrender of the Vehicle shall not be effective until Lessor or its agent has actual physical possession of the Vehicle and has received all license plates, registration certificates, documents of title, odometer and damage disclosures and other documentation necessary for the sale of the Vehicle. If, upon Customer request, Lessor accepts an offer to purchase a Vehicle from a Customer or a purchaser identified by Customer and Lessor does not take actual physical possession of the Vehicle, neither surrender nor sale shall be deemed to occur until Lessor delivers the certificate of title and receives payment. Any personal property in a Vehicle upon surrender shall be deemed abandoned and may be disposed of by Lessor without liability to GEFS or Lessor.

10. SALE OF VEHICLES. After surrender of a Vehicle by Customer, GEFS shall solicit from prospective purchasers wholesale cash bids for Vehicles. The sale proceeds shall be payable to Lessor. Such Vehicles shall be sold in a commercially reasonable manner. From the sales proceeds of any Vehicle sold under this Agreement (including Customer or third party owned vehicles), Lessor shall deduct all direct sales expenses paid or incurred by Lessor as well as the then current sale fee of GEFS, the balance remaining to constitute the Net Proceeds which shall be payable to Lessor. If GEFS manages the sale of any vehicle owned by Customer or a third party, Customer agrees that the sale of such vehicle shall be subject to the indemnity herein and to pay the then current sale fee.

11. TERMINAL RENTAL ADJUSTMENT. As an incentive to the Customer to maintain the value of the Vehicle by good maintenance, repair and careful use during its Lease Term, the parties agree that the enhancement or reduction in value shall be compensated as follows:

a. Refund of Rental. If the Net Proceeds exceed the Book Value (as to each Vehicle, its Capitalized Cost as defined in the Rate Schedule, reduced by appropriate amortization), Lessor shall retain an amount equal to the Book Value, and remit the excess to Customer as a refund of rental.

b. Rental Charge. If the Net Proceeds are less than the Book Value, Customer shall pay Lessor the amount of the difference.

12. INSURANCE. Customer shall maintain the following coverages from the date of acceptance of each Vehicle until its surrender to Lessor with an insurance company acceptable to Lessor and deliver to Lessor a certificate thereof:

a. Automobile liability Insurance with an Additional Insured endorsement as specified by Lessor and with minimum limits of coverage as Lessor may require, but in no event less than $1 million combined single limit per occurrence ($5 million for Vehicles capable of transporting more than 8 passengers). No self-insured retention or deductible is permissible.

b. Comprehensive and collision insurance coverage for the actual cash value of each Vehicle, for which Customer may self-insure. Customer shall bear all risk of loss, damage, theft or destruction to the Vehicle (which may exceed actual cash value), however caused, from the time of acceptance until surrender to Lessor.

c. Conditions. All insurance policies shall provide for 30 days' prior written notice to Lessor of any cancellation or reduction in coverage. Customer authorizes LGEFS as servicing agent to endorse Customer's name to insurance checks related to the Vehicles.

13. INDEMNITY. CUSTOMER WILL INDEMNIFY AND DEFEND LESSOR (TOGETHER WITH GEFS, AFFILIATES, SUCCESSORS, ASSIGNS AND BENEFICIARIES) AGAINST ANY LOSS, LIABILITY, DAMAGES, ACTION, SUIT OR CLAIM, INCLUDING REASONABLE ATTORNEYS' FEES, DIRECTLY OR INDIRECTLY RELATING TO THE MANUFACTURE, SELECTION, PURCHASE, LEASE, MAINTENANCE, USE, OPERATION, CONDITION, DESIGN (INCLUDING BUT NOT LIMITED TO, PATENT OR LATENT DEFECTS WHETHER OR NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS OR THE CONDITION OF THE VEHICLE AT SURRENDER), OR SURRENDER OF ANY VEHICLE BETWEEN THE TIME OF DELIVERY TO CUSTOMER AND THE TIME OF SURRENDER. IF LESSOR SELLS ANY VEHICLE TO CUSTOMER, ANY OF ITS EMPLOYEES OR A PURCHASER FROM WHOM CUSTOMER OBTAINS AN OFFER, CUSTOMER'S COVENANTS OF INDEMNITY WITH RESPECT TO SUCH VEHICLE SHALL CONTINUE. THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM THE ACTIVE NEGLIGENCE OR WILLFUL MISCONDUCT OF LESSOR OR GEFS, OR THEIR RESPECTIVE AGENTS OR EMPLOYEES PROVIDED HOWEVER, THAT ACTIVE NEGLIGENCE SHALL NOT BE CONSTRUED TO INCLUDE NEGLIGENCE WHICH MAY BE DIRECTLY OR INDIRECTLY IMPUTED TO GECFS OUE TO ACTION OR INACTION BY CUSTOMER OR CUSTOMER'S EMPLOYEES OR AGENTS. THIS INDEMNITY SHALL SURVIVE THE TERMINATION OR CANCELLATION OF THIS AGREEMENT.

14. NATURE OF AGREEMENT. THE PARTIES INTEND THE LEASE OF VEHICLES HEREUNDER TO BE A TRUE LEASE PURSUANT TO TO 21 DELAWARE CODE §2342. Without prejudice to the intention of the parties that this Agreement be a lease, Customer hereby grants Lessor a security interest in the Vehicles and all proceeds, accessions, documents, instruments, accounts, chattel paper, equipment and general intangibles related thereto to secure all obligations of Customer to Lessor and GEFS under this or any other agreement. Customer further grants GEFS a limited power of attorney to act as agent and attorney-in-fact of Customer only with respect to titling, registration of a Vehicle or otherwise noting Lessor's interest. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement. This Agreement may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same instrument, and the parties hereto may execute this Agreement by signing any such counterpart. The parties hereby agree that the electronic copy of this Agreement retained by GEFS shall be the original chattel paper and the authorized copy of record. Delivery of the executed Agreement and any related documents by facsimile or electronic transmission shall be as effective as delivery of a manually executed counterpart thereof.

15. MISCELLANEOUS. If Customer executes a business use certification with respect to the Vehicles leased under this Agreement, both Lessor and Customer agree to report all vehicle

leases as leases for U.S. income tax purposes. Customer has no right, title or interest in and to any Vehicle leased hereunder except as lessee, and Customer has no option to purchase any Vehicle. Lessor has the right to mark the Vehicle at any time stating its interest as owner and to receive and retain rebates, discounts and other compensation directly or indirectly from manufacturers, suppliers and vendors with respect to the Vehicles leased hereunder. Lessor may engage third parties to refer business to Lessor. If this Agreement or any other agreement between Customer and Lessor results from such a referral, Lessor may pay, and shall be solely liable for, payment of any broker fee, commission or other compensation related thereto. Customer agrees that it is not now and will not in the future be listed on any watch list maintained by the U.S. Treasury Department and shall comply with the Patriot Act, international trade control and money laundering laws, as applicable.

**16. FINANCIAL INFORMATION.** The creditworthiness of Customer and any guarantor is a material condition to this Agreement.. Customer will deliver to Lessor its guarantor's (i) complete financial statements prepared in accordance with generally accepted accounting principles, consistently applied, certified by a recognized firm of certified public accountants, within 75 days of the close of such entity's fiscal year and (ii) quarterly financial report certified by the chief financial officer of such entity, within 45 days of the close of such entity's fiscal quarter. To the extent such financial statements of such guarantor are publicly available, Customer shall not be required to deliver such statements to Lessor. Nothing herein shall be construed to require Lessor to accept any Vehicle Order.

**17. DEFAULT; REMEDIES.**

    a.    **Default.** If Customer shall fail to make the payments or maintain insurance coverage as herein required or after 10 days' written notice shall fail to perform any of its other obligations under this Agreement, or Customer or any guarantor shall (i) make an assignment for the benefit of creditors, or suffer a receiver or trustee to be appointed, or file or suffer to be filed any petition under any bankruptcy or insolvency law of any jurisdiction; or (ii) discontinue business; or (iii) cease its corporate or partnership existence or die; or (iv) be in default under any other agreement it may have with GEFS, any Lessor or any parent, subsidiary or affiliate of Lessor; or (v) undergo a change in controlling ownership; or (vi) suffer a material adverse change in operating or financial condition which impairs Customer's ability to perform its obligations hereunder or Lessor's title to or rights in the Vehicles; or (vii) make any representation or warranty herein, or in any document delivered to Lessor in connection herewith or filed with any governmental entity and obtained by Lessor in connection herewith, which shall prove to be false or misleading in any material respect; then in such event Customer shall be in default under this Agreement. A default under the terms of this Agreement shall constitute a default under any other agreement Customer has with Lessor, or any parent, subsidiary or affiliate of Lessor.

    b.    **Remedies.** In the event of default by Customer, Lessor and GEFS shall have the right to: (i) repossess any or all Vehicles leased hereunder wherever they may be found (and for that purpose Lessor or its agents may enter upon any premises of or under the control of Customer) without canceling this Agreement; (ii) charge Customer with any deficiency between the amount due from Customer and the amount realized by selling such Vehicles to another party; (iii) collect the full rental due for the period prior to any sale of Vehicles, (iv) recover all expenses incurred to repossess said Vehicles together with reasonable attorneys' fees for enforcement of Lessor's rights; and (v) offset any amounts due to Customer against amounts due to Lessor or GEFS. In addition, Lessor shall have the right to cancel this Agreement and shall retain all rights and remedies available at law or in equity; all such rights and remedies to be cumulative and not exclusive. Any Lessor hereunder shall be a third party beneficiary as to any rights or remedies available to any other Lessor hereunder.

**18. LIMITATION OF DAMAGES.** EXCEPT WITH RESPECT TO CUSTOMER'S OBLIGATIONS OF INDEMNITY, CUSTOMER, GEFS AND LESSOR EACH AGREE THAT: ITS SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO ANY CLAIM RELATED TO THE SUBJECT MATTER HEREOF BY THE OTHER PARTY TO THIS AGREEMENT SHALL BE A CONTRACT ACTION; DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES INCURRED; AND NO INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES WILL BE CLAIMED.

**19. ASSIGNMENTS.** CUSTOMER SHALL NOT ASSIGN, SUBLET, LIEN, ENCUMBER, OR TRANSFER ANY INTEREST IN ANY OF THE VEHICLES LEASED HEREUNDER OR ANY INTEREST IN THIS AGREEMENT TO ANY PARTY WITHOUT THE WRITTEN CONSENT OF THE LESSOR OF SUCH VEHICLES. ANY SUCH CONSENT BY THE LESSOR SHALL NOT RELIEVE CUSTOMER OF ITS OBLIGATIONS AND LIABILITIES EXCEPT AS MAY BE SPECIFIED IN THE RESPECTIVE ASSIGNMENT DOCUMENTS APPROVED BY LESSOR. Lessor may, without the consent of Customer, but subject to Customer's right of quiet enjoyment, assign or participate, or sell beneficial interests under a titling trust in or relating, assign all or any part of its right, title and interest in this Agreement or the Vehicles, including all receivables thereunder and therefrom, provided that any such assignment, participation or sale of beneficial interests does not relieve Lessor, or if Lessor is a titling trust, GEFS of any of its obligations. Customer agrees to comply with reasonable directions provided by any assignee, transferee or representative thereof with respect to payments or other rights of Lessor (or any beneficial interest therein) assigned, transferred, sold or participated. Customer further agrees that Lessor and GEFS may share information about this Agreement and Customer and its affiliates with each other as well as any current or potential affiliated lessor, participant, or Beneficiary so long as any confidential, proprietary or non-public information related to the business, finances, operations or affairs of Customer and its affiliates is disclosed to the recipient thereof subject to customary confidentiality agreement restrictions. Confidential Information which constitutes personally identifiable information will only be used as necessary to perform the obligations of the Lessor or to provide services to Customer pursuant to other agreements by and between GEFS and Customer.

**20. RELATED ENTITIES.** In the event that Customer permits any Vehicles subject to this Agreement to be used or operated by any present or future subsidiary, parent or affiliate of Customer (each a "Related Entity"), Customer agrees that notwithstanding: (a) use or operation by a Related Entity; (b) any direction by Customer to Lessor or GEFS to invoice a Related Entity; and (c) any payment made by a Related Entity with respect to any Vehicle, all such Vehicles shall at all times remain subject to the terms and conditions of this Agreement and Customer shall at all times remain liable for all of the duties and obligations (for payment or otherwise) under this Agreement. Any use or operation by a Related Entity of any Vehicle shall not, in any way, constitute a sale, assignment or transfer, sublease or other disposition of such Vehicle, or any interest therein, or of any rights granted to or obligations of Customer under this Agreement.

**21. LEASE INTEGRATION.** For each Lessor, this Agreement, together with its Rate Schedules and Vehicle Orders, constitutes a single unitary, non-severable lease agreement for all Vehicles leased by such Lessor and governed by this Agreement, provided, however, if the Lessor is a titling trust and if any Vehicles have been identified

and allocated to separate portfolios of trust assets, then this Agreement together with the Rate Schedules and the Vehicle Orders constitutes one or more single unitary non-severable lease agreements for all Vehicles in each portfolio as so identified and allocated.

**22. WAIVER OF JURY TRIAL.** BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY HEREUNDER.

**23. GOVERNING LAW.** THIS AGREEMENT SHALL NOT BE EFFECTIVE UNTIL SIGNED BY BOTH PARTIES, AND SHALL, UPON SUCH EXECUTION, BE DEEMED EFFECTIVE AS OF THE EFFECTIVE DATE. THE LAWS OF THE STATE OF DELAWARE SHALL GOVERN ALL QUESTIONS OR DISPUTES RELATING TO THE VALIDITY, INTERPRETATION, PERFORMANCE, ENFORCEMENT, OR EFFECT OF THIS AGREEMENT, WITHOUT REGARD TO CHOICE OF LAW PRINCIPLES.

**24. ODOMETER DISCLOSURE STATEMENT.** Federal law (and State law, if applicable) requires that Customer as lessee disclose, and Customer shall disclose, the mileage of each Vehicle to Lessor and GEFS in connection with the transfer of ownership of the Vehicle. Failure to complete an odometer disclosure statement or making a false statement may result in fines and/or imprisonment.

**25. REPRESENTATIONS AND WARRANTIES.** Customer makes each of the following representations and warranties to GEFS and Lessor on the date hereof, the date of each Rate Schedule and on the date it accepts each Vehicle: a. Customer has adequate power and capacity to enter into, and perform under, this Agreement. b. The Agreement has been duly authorized, executed and delivered by Customer and constitutes a valid, legal and binding agreement, enforceable in accordance with its terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws. c. No approval, consent or withholding of objections is required from any governmental authority with respect to the entry into or performance by Customer of the Agreement except such as have already been obtained. d. The entry into and performance by Customer of the Agreement does not, and will not: (i) violate any judgment, order, law or regulation applicable to Customer or any provision of Customer's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien (except as provided under this Agreement) or other encumbrance upon any Vehicle pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument to which Customer is a party. e. There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Customer, which if decided against Customer will have a material adverse effect on the ability of Customer to fulfill its obligations under this Agreement. f. Customer is and will be at all times validly existing and in good standing.

**26. FURTHER ASSURANCES.** Customer hereby agrees that it shall execute and deliver to Lessor any agreements, documents or certificates and furnish Lessor with copies of any agreements, documents, certificates and invoices reasonably requested by Lessor to evidence Customer's acceptance of any of the Vehicles, or to carry out the intent and purposes of this Agreement and to establish Lessor's rights and remedies hereunder.

**27. AUDIT.** GEFS agrees to permit Customer or its representatives, upon reasonable notice and during normal working hours at Customer's cost and expense, to examine, make copies of and audit records and all items related to amounts invoiced to Customer under this Agreement for a period of twenty-four months following the date such amount was invoiced to Customer. Any audit under this section will be limited to books and records of GEFS which relate to the amounts invoiced by GEFS to Customer and will be limited to a period of twenty-four months.

**28. RECALL NOTICES.** Lessor will provide Customer with vehicle recall notices in accordance with applicable law.

**29. MODIFICATIONS.** This Agreement contains the entire understanding of the parties and merge all oral understandings. Customer may issue purchase orders for administrative convenience, but such purchase orders are subject to the terms and conditions of this Agreement and shall not amend or supplement it. Any modifications, changes, or amendments may be made only in a writing duly signed by Customer and Lessor. Failure of either party to enforce any right shall not be deemed a waiver of such right.

*IMPORTANT!* PLEASE INITIAL BELOW:

GEFS Initials _____    CUSTOMER INITIALS _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by duly authorized representatives.

**Rite Aid Hdqtrs. Corp. (Customer)**

By: _____

Title: ____SVP Indirect Procurement____
*(President, Vice President, Treasurer, or provide certificate of authority)*

Address: 30 Hunter Lane, Camp Hill, Pennsylvania 17011

**Gelco Corporation d.b.a. GE Fleet Services on its own behalf and as servicing agent**

By: _____

Title: Authorized Signatory

Address: Three Capital Drive, Eden Prairie, MN 55344

EFFECTIVE DATE: __November 5, 2012__


GE Fleet Services

**Master Lease Agreement**
Business Use Certification

1. Customer certifies under penalty of perjury that it intends the Vehicles leased pursuant to this Agreement to be used more than 50% in the trade or business of Customer; and

2. **Customer has been advised that Lessor and not Customer will be treated as the owner of the Vehicles for Federal Income Tax purposes.**

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: ____SVP Indirect Procurement____
*(President, Vice President, Treasurer, or provide certificate of authority)*

Amendment and Rate Schedule – 15th/16th
Effective as of the Effective Date set forth below

The Master Lease Agreement together with its Exhibits, Rate Schedules, Vehicle Orders and Amendments by and between Gelco Fleet Trust, ("Lessor") as assignee of Element Fleet Corporation formerly known as Gelco Corporation and undersigned (the "Agreement") remains in full force and effect. The following terms are either added to the Master Lease Agreement or modify it with respect to the Vehicles subject to this Amendment and Rate Schedule. Element Fleet Corporation is servicer to Lessor under the Gelco Fleet Trust Lease.

Disclaimer. LESSOR HAS MADE AND MAKES NO REPRESENTATION REGARDING THE TREATMENT OF THIS AGREEMENT OR THE TIMING OF THE ACCRUALS OF RENTALS HEREUNDER FOR FINANCIAL STATEMENT OR TAX PURPOSES. Customer acknowledges that it is responsible for its own determination of the proper lease term for purposes of its SFAS 13 or similar analysis. Nothing in the Agreement or this Amendment and Rate Schedule shall be construed to require a Lessor to accept any Vehicle Order.

Pricing Terms. Monthly rental and all fees are determined based on fleet information provided by Customer. Capitalized Cost may increase if manufacturer pricing changes. With respect to any Vehicle ordered or leased under the Agreement which has a markdown included in its Capitalized Cost, if a manufacturer, as a result of bankruptcy or otherwise, does not pay the dealer holdback, financing assistance or cost defrayal in the amount specified by the manufacturer at the date of Customer's order, Customer agrees that the markdown may be reduced by an amount equal to any shortfall. Any such adjustment to the Capitalized Cost shall not exceed the amount of the markdown.

Leases Independent of Services. Nothing in the Agreement shall be deemed or interpreted to vary the price or availability of leases based on Customer's utilization of services provided by Lessor or by any affiliate of Lessor.

Notice of Liquidity Adjustment. After the Effective Date of this Amendment and Rate Schedule, Lessor may provide written notice (whether by e-mail, fax or mail, each, a "Notice") to Customer of changes to the interest components of Monthly Rental (which may include a change to the Index Rate) and/or the rate applicable to Interim Financing with respect to Vehicles ordered after the effective date of the Notice. Customer has the right to object to any such changes by written notice to Lessor. However, Customer will be deemed to have accepted such changes by submitting Vehicle Order(s) after the effective date of the Notice. Customer further agrees that any Vehicle Order submitted to Lessor (whether by fax, phone, web or otherwise) on behalf of Customer has been authorized by Customer and is binding on Customer.

Electronic Delivery. Delivery of this executed document by telecopy or electronic signature delivery system (in either case in a form acceptable to Lessor) shall be effective as delivery of a manually executed signature page to this document. The parties hereby agree that the electronic copy of this document retained by Lessor shall be the original and the authorized copy of record and the electronic record on Lessor system of each Units Added to Contract exhibit shall be the original chattel paper and authorized copy of record.

RATE SCHEDULE - for Vehicles ordered on or after the Effective Date: __MARCH 1, 2019__

CAPITALIZED COST: (i) Manufacturer's invoice price of the Vehicle plus dealer charges, including courtesy delivery fees, if any; (ii) invoice price of any additions pursuant to Customer's request; (iii) an amount equal to the sales and acquisition taxes on the Vehicle calculated at the applicable statutory rates, but prior to any tax credits available to Lessor; (iv) for a Factory Ordered Vehicle, a Commitment Fee at the Index Rate plus Adder for the period beginning with the date of payment to the manufacturer by Lessor and ending on the last day of the month prior to the month for which the first Monthly Rental is payable and (v) a markup or markdown as set forth below. Adjustments which occur after Lessor's capitalization of the Vehicle may be credited or billed to Customer.

"Competitive Allowances" means any rebates or allowances provided by the Vehicle manufacturer to Lessee, including without limitation "Competitive Price Allowances" and "Competitive Assistance Programs". Lessee agrees to apply all Competitive Allowances provided by the manufacturer of the Vehicle to reduce the Capitalized Cost of the Vehicle.

| Type of Vehicle | Markup or Markdown |
|---|---|
| Factory Orders: Domestic Cars & Lt. Trucks except those below | Less 3.75% of Capitalized Cost before Markup |
| Stock & Direct Purchases and Foreign Vehicles | Plus 2% of Capitalized Cost before Markup |

For purposes of the Agreement, Book Value means, as of any month, the Capitalized Cost reduced by the applicable Amortization.

RENTAL IS A SINGLE INSEVERABLE PAYMENT FOR THE USE OF THE VEHICLE COMPUTED BY AGGREGATING: AMORTIZATION, MANAGEMENT FEE AND INTEREST.

*Amortization*: the depreciation rate selected by Customer in the Vehicle Order from the range of rates below or as accepted by Lessor multiplied by the Capitalized Cost;

| Vehicle Type | Months | Monthly Rate | Months | Monthly Rate |
|---|---|---|---|---|
| Cars & Lt. Trucks | 36 | 2.7778% | 48 | 2.0833% |

*Management Fee*: the applicable rate set forth below multiplied by the Capitalized Cost; and

*Interest*: computed by multiplying the Book Value as of the beginning of the applicable month by the Index Rate plus the Adder plus the applicable liquidity adjustment divided by 12.

Float: computed by multiplying the Book Value as of the beginning of the applicable month by the Index Rate plus the Adder plus the applicable liquidity adjustment divided by 12.

90 Day LIBOR means the latest yield for three month London Interbank Offered Rates appearing in The Wall Street Journal on the Index Date (defined below), rounded to the nearest basis point, divided by 360 and multiplied by 365, plus an administrative fee of 25 basis points. If at any time The Wall Street Journal ceases to publish the three month London Interbank Offered Rates, the comparable market rate will be used in lieu. The Index Date shall be the 15th day of the Billing Cutoff Month (defined below), or if The Wall Street Journal is not published on such date or if the comparable market rate is used from another source, the most

recent published rate preceding the Index Date shall be used. "Billing Cutoff Month" is the calendar month prior to the calendar month to which the Monthly Rental is payable.

| Vehicle Type | Fixed or Float | Levelized Period | Index Rate | Adder | Management Fee |
|---|---|---|---|---|---|
| Cars & Lt. Trucks | Float | N/A | 90 Day LIBOR | 250 Basis Points | 0.035% |

INTERIM FINANCING FEE PAYABLE TO LESSOR: Customer shall pay to Lessor an amount equal to Index Rate plus the Adder on the amount of funds advanced by Lessor for an uncompleted Vehicle for the period(s) beginning with each partial advance of funds for such Vehicle and ending on the day prior to the date of Vehicle acceptance.

SALE FEE PAYABLE TO GELCO: for Leased Vehicles sold at wholesale auction or to a dealer: $100

DEDUCTIBLE PERMITTED ON COMPREHENSIVE AND COLLISION INSURANCE: Actual Cash Value (Customer approved to self-insure for physical damage to the Vehicles).

**Rite Aid Hdqtrs. Corp. (Customer)**

By: _Paul F. Krueger_
Title: _VP, IPG_
(President, Vice President, Treasurer, or provide certificate of authority)

2-7-19

**Gelco Fleet Trust**

By: _Lynn Schaefer_
Title: Attorney-in-Fact/Authorized Signatory
Form 01.05.17

**Acknowledgement of Guarantor**

Rite Aid Corporation reaffirms its obligations under the Continuing Guaranty of Payment executed contemporaneously herewith.

**Rite Aid Corporation**

By: _____

Title: _____

**CALIFORNIA NOTICES**

STATEMENT REQUIRED BY CAL. ADMIN. CODE TIT. 17, SECT. 95302(a)(42)(B): To the extent that Lessee leases any heavy-duty tractor pursuant to this Agreement, Lessee, as the lessee of such heavy-duty tractor, understands that when using a heavy-duty tractor to pull a 53-foot or longer box-type trailer on a highway within California, the heavy-duty tractor must be compliant with sections 95300-95312, title 17, California Code of Regulations, and that it is the responsibility of Lessee to ensure this heavy-duty tractor is compliant. The regulations may require this heavy-duty tractor to have low-rolling-resistance tires that are U.S. Environmental Protection Agency (U.S. EPA) SmartWay Verified Technologies prior to current or future use in California, or may entirely prohibit use of this tractor in California if it is a model year 2011 or later tractor and is not a U.S. EPA SmartWay Certified Tractor.

STATEMENT REQUIRED BY CAL. ADMIN. CODE TIT. 17, SECT. 95302(a)(42)(D): To the extent that the any box-type trailer is leased pursuant to this Agreement, Lessee, as the lessee of such box-type trailer, understands that when using a heavy-duty tractor to pull a 53-foot or longer box-type trailer on a highway within California, the box-type trailer must be compliant with sections 95300-95312, title 17, California Code of Regulations; and that it is the responsibility of Lessee to ensure this box-type trailer is compliant. The regulations may require this trailer to have low-rolling-resistance tires and aerodynamic technologies that are U.S. Environmental Protection Agency SmartWay Verified Technologies prior to current or future use in California.

Case 25-14861-MBK    Doc 3263-1    Filed 11/19/25    Entered 11/19/25 13:34:20    Desc
Exhibit 1 - Master Lease Agreement    Page 10 of 18

DocuSign Envelope ID: 45262BD...

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian.

element

**AMENDMENT TO MASTER LEASE AGREEMENT**
**AMENDMENT AND RATE SCHEDULE - 15th/16th**

**CLIENT NO(S). 107900**

This amendment ("Amendment") is dated as of __10/12/2021__ ("Effective Date"), and amends the Master Lease Agreement, Client No(s). 107900, dated November 5, 2012, as previously amended or supplemented (the "MLA"), including Amendment and Rate Schedule – 15th 16th dated March 1, 2019 (the "2019 Rate Scheule"), each by and between Gelco Fleet Trust ("Lessor") and Rite Aid Hdqtrs. Corp. ("Lessee"). Capitalized terms used in this Amendment and not otherwise defined shall have the meanings assigned to them in the MLA. The MLA shall remain in full force and effect except as modified herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. **2019 Rate Schedule.** The table listing the markup or markdown in the 2019 Rate Schedule shall be deleted and replaced with the new table as provided on the attached Exhibit 1.

2. **Counterparts.** This Amendment may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same instrument, and the parties hereto may execute this document by signing any such counterpart. Delivery of this executed document by telecopy or electronic signature delivery system (in either case in a form acceptable to Lessor) shall be effective as delivery of a manually executed signature page to this document. The parties hereby agree that the electronic copy of this document retained by Lessor shall be the original and the authorized copy of record and the electronic record on Lessor's system of each schedule or exhibit shall be the original chattel paper and authorized copy of record.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Amendment to be executed and delivered by their respective duly authorized officers or representatives as of the date first above written.

**GELCO FLEET TRUST** (Lessor)
**By Element Fleet Corporation, Attorney-in-Fact**

By: _Kristina McLaughlin_ (DocuSigned)
C568C04D45514B8...
Authorized Signatory

**RITE AID HDQTRS. CORP.** (Lessee)

By: _____ (DocuSigned)
C1486D7F3C4E40E...

Title: Vice President of Procurement

Print Name: James Burgess

MLA amend – 03.12.2021
Kim  SFOP90000052153 09.02.21

ELEMENT CONFIDENTIAL AND PROPRIETARY

1

# EXHIBIT 1

| Type of Vehicle | Markup or Markdown |
|---|---|
| Factory Orders: Domestic Cars & Lt. Trucks except those below | Less 3.75% of Capitalized Cost before Markup |
| Factory Orders: Subaru Cars & Lt. Trucks except those below | Less 3.75% of Capitalized Cost before Markup |
| Stock & Direct Purchases and Foreign Vehicles, other than Subaru Cars & Lt. Trucks as provided above. | Plus 2% of Capitalized Cost before Markup |

ELEMENT CONFIDENTIAL AND PROPRIETARY

Case 25-14861-MBK    Doc 3263-1    Filed 11/19/25    Entered 11/19/25 13:34:20    Desc
Exhibit 1 - Master Lease Agreement    Page 12 of 18

DocuSign Envelope ID: FD34309A-1E5C-41C6-AA4F-5059BD5770CB

This is a copy view of the Authoritative Copy held by the designated custodian

element

## AMENDMENT TO VEHICLE FLEET LEASE AGREEMENT
## CLIENT NO(S). 107900, and all child or other applicable related fleets

This amendment ("Amendment") is dated as of October 14, 2022 ("Effective Date"), and amends any and all lease agreements, each as previously amended or supplemented, or assigned/assumed (collectively, the "MLA"), by and between Gelco Fleet Trust, D.L. Peterson Trust or an affiliate thereof, as applicable (respectively, "Lessor") and RITE AID HDQTRS. CORP. ("Lessee"). Capitalized terms used in this Amendment and not otherwise defined shall have the meanings assigned to them in the MLA. The MLA shall remain in full force and effect except as modified herein.

WHEREAS on March 5, 2021 the Financial Conduct Authority confirmed in a public statement that immediately after June 30, 2023, the 1-month and 3-month US dollar LIBOR settings will either cease to be provided by any administrator or no longer be representative;

AND WHEREAS on March 5, 2021, Bloomberg published the fallback spread adjustment as follows: (i) 0.11448% for the 1-month tenor, and (ii) 0.26161% for the 3-month tenor;

AND WHEREAS the parties hereto wish to amend the MLA and and all related documents (collectively, "MLA Documents") to replace the LIBOR benchmark with a replacement benchmark for all purposes hereunder and under the MLA Documents in respect of any setting of LIBOR;

NOW, THEREFORE, for and in consideration of the mutual covenants and promises herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. **Rate.** In respect of all assets leased under the MLA Documents, regardless of the date ordered, on a date to be determined by Lessor (the "Transition Date") no later than June 30, 2023, the following term shall be inserted and incorporated into any rate schedule and/or rate supplement which references LIBOR and the existing LIBOR rate definition shall be deleted and replaced with the following:

   90 Day SOFR means the latest yield for three-month Secured Overnight Financing Rate, or 3-Month CME Term SOFR as quoted in the "CME Term SOFR Rates Values" section of the CME Group Benchmark Administration published on the website https://www.cmegroup.com on the Index Date (defined below), or if the rate is not published on such date, the most recent published rate preceding the Index Date, plus a spread adjustment of 26.161 bps as calculated and recommended by ARRC for 3-month SOFR adjusted to a 365-day-year basis, and further increased by an administrative fee of 25 basis points. The Index Date shall be the 15th day of the calendar month prior to the month in which monthly rent is payable. If the applicable index rate is unavailable, unpublished or otherwise inaccessible, or at any other time, if, in Lessor's reasonable discretion, the applicable index rate will become unavailable, unpublished or otherwise inaccessible, Lessor may, upon reasonable notice, draw such rate from a different source and/or substitute such rate with another indicative market index rate in lieu of such rate (to which a spread, such as additional basis points, may be added to obtain an equivalent rate).

2. **Index Rate.** In respect of all assets leased under the MLA Documents, regardless of the date ordered, as of the Transition Date, any references to 30 Day LIBOR, 90 Day LIBOR, LIBOR Rate, PH H LIBOR Rate, Element LIBOR Rate or any other reference to a LIBOR rate in the MLA Documents shall be deleted and replaced with 90 Day SOFR.

3. **Negative Rates.** If any index rate or other reference rate referred to in the MLA Documents would be less than zero, then such rate shall be deemed to be zero.

4. **No Other Change.** Except as amended by this Amendment, the MLA Documents shall remain in full force and effect as originally executed and subsequently amended.

5. **Counterparts.** This Amendment may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same instrument, and the parties hereto may execute this document by signing any such counterpart. Delivery of this executed document by telecopy or electronic signature delivery system (in either case in a form acceptable to Lessor) shall be effective as delivery of a manually executed signature page to this document. The parties hereby agree that the electronic copy of this document retained by Lessor shall be the original and the authorized copy of record and the electronic record on Lessor's system of each schedule or exhibit shall be the original chattel paper and authorized copy of record.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Amendment to be executed and delivered by their respective duly authorized officers or representatives as of the date first above written.

ELEMENT FLEET CORPORATION,
on its own behalf and on behalf of Gelco Fleet Trust,
D.L. Peterson Trust and Element Fleet
Management (Puerto Rico), Inc., as applicable

By: _Kristina McLaughlin_
DocuSigned by: C888C04D4551488...
Authorized Signatory

RITE AID HDQTRS. CORP. (Lessee)

By: _Anita Ward_
DocuSigned by: E70EA42E6BFA459...

Title: VP, Risk Management

Print Name: Anita Ward

01-107900

## Assignment of Lease Agreement

Whereas, there is a Lease Agreement dated February 20, 1997 by and between Gelco Corporation doing business as GE Fleet Services as successor in interest to U.S. Fleet Leasing, a unit of Associates Leasing, Inc. ("Lessor") and Rite Aid Corporation, as amended (the "Agreement"); and.

Whereas Rite Aid Corporation desires to assign all of its rights and obligations under the Agreement to Rite Aid Hdqtrs. Corp.; and

Whereas Lessor is willing to consent to such assignment on the terms and conditions set forth below;

Now therefore, the parties have agreed as follows:

1. The Agreement remains in full force and effect.

2. Rite Aid Corporation hereby assigns, subject to the condition precedent of consent by Lessor, all of its rights and obligations under the Agreement.

3. Rite Aid Hdqtrs. Corp. ("Assignee") agrees to accept the assignment of the Agreement and agrees that as Assignee it shall be responsible for all liabilities and obligations of Rite Aid Corporation and agrees to pay, satisfy and discharge all of the indebtedness and obligations, absolute and contingent, now or hereinafter owing as Lessee or Customer under the Agreement, all in the manner and to the same extent as if the Agreement had originally been executed in the name of Assignee.

4. As a condition precedent to Lessor's consent to the assignment of the Agreement from Rite Aid Corporation to Assignee, Rite Aid Corporation will deliver to Lessor a Continuing Guaranty of Payment in form and substance satisfactory to Lessor guaranteeing all obligations of Assignee to Lessor.

5. This assignment will be effective as of the Effective Date below upon acceptance by Lessor.

*IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by duly authorized representatives.*

**Rite Aid Corporation**

By: [signature]
Title: Vice President - Assistant Secretary
*(President, Vice President, Treasurer, or provide certificate of authority)*

**Rite Aid Hdqtrs. Corp. (Assignee)**

By: [signature]
Title: SVP Indirect Procurement
*(President, Vice President, Treasurer, or provide certificate of authority)*

**GE Fleet Services**

By: [signature] Lynn Schaefer
Title: Authorized Signatory
Address: 3 Capital Drive, Eden Prairie, MN 55344
Effective Date: November 5, 2012



01-107900

**Master Lease Agreement**
Amendment and Rate Schedule – 15th/16th

The Lease Agreement dated February 20, 1997 by and between Gelco Corporation doing business as GE Fleet Services as successor in interest to U.S. Fleet Leasing, a unit of Associates Leasing, Inc. ("Lessor") and Rite Aid Hdqtrs. Corp. (the "Agreement" or "Master Lease Agreement") as amended herein, remains in full force and effect.

Pricing Terms. Nothing in the Agreement or this Amendment and Rate Schedule shall be construed to require a Lessor to accept any Vehicle Order. Pricing is determined based on fleet information provided by Customer. Capitalized Cost (f/k/a "Original Cost") may increase if manufacturer pricing changes. With respect to any Vehicle ordered or leased under the Agreement which has a markdown included in its Capitalized Cost, if a manufacturer, as a result of bankruptcy or otherwise, does not pay the dealer holdback, financing assistance or cost defrayal in the amount specified by the manufacturer at the date of Customer's order, Customer agrees that the markdown may be reduced by an amount equal to any shortfall. Any such adjustment to the Capitalized Cost shall not exceed the amount of the markdown.

Disclaimer. LESSOR HAS MADE AND MAKES NO REPRESENTATION REGARDING THE TREATMENT OF THE AGREEMENT OR THE TIMING OF THE ACCRUALS OF RENTALS HEREUNDER FOR FINANCIAL STATEMENT OR TAX PURPOSES. Customer acknowledges that it is responsible for its own determination of the proper lease term for purposes of its SFAS 13 or similar analysis.

Lease Term. The minimum Lease Term for each Vehicle is the period of 12 calendar months for which monthly rental charges are due, but in no event less than 367 days from the date of Customer's acceptance. Customer is not entitled to cancel or terminate any Vehicle leased prior to expiration of the minimum Lease Term. Thereafter, the Lease Term may be renewed monthly for the lesser of the number of calendar months in the Maximum Lease Term (autos: 50; light trucks: 50) or the amortization term set in the respective Units Added to Contract exhibit. Notwithstanding expiration of the Lease Term of a Vehicle, the terms of this Agreement shall remain in effect until all of terms and conditions of this Agreement are satisfied. Customer acknowledges that it is responsible for its own determination of the proper lease term for purposes of its SFAS 13 or similar analysis. Customer agrees not to order any medium and heavy trucks.

Section 21 of the Agreement is deleted and replaces with the following: THE LAWS OF THE STATE OF DELAWARE SHALL GOVERN ALL QUESTIONS OR DISPUTES RELATING TO THE VALIDITY, INTERPRETATION, PERFORMANCE, ENFORCEMENT, OR EFFECT OF THIS AGREEMENT, WITHOUT REGARD TO CHOICE OF LAW PRINCIPLES.

Notice of Liquidity Adjustment. After the Effective Date of this Amendment and Rate Schedule, Lessor may provide written notice (whether by e-mail, fax or mail, each, a "Notice") to Customer of changes to the interest components of Monthly Rental (which may include a change to the Index Rate) and/or the rate applicable to Interim Financing with respect to Vehicles ordered after the effective date of the Notice. Customer has the right to object to any such changes by written notice to Lessor. However, Customer will be deemed to have accepted such changes by submitting to Lessor Vehicle Order(s) after the effective date of the Notice. Customer further agrees that any Vehicle Order submitted to Lessor (whether by fax, phone, web or otherwise) on behalf of Customer has been authorized by Customer and is binding on Customer.

Patriot Act Provisions. To support government efforts to fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies new customers. Accordingly, as part of our credit review and onboarding process, Lessor will confirm your legal name, address, and other identifying information. Lessor may also ask to see identifying documents. Customer agrees that it is not now and will not in the future be listed on any watch list maintained by the U.S. Treasury Department and shall comply with the Patriot Act, international trade control and money laundering laws, as applicable. Payments shall be made in U.S. dollars by direct debit, electronic transfer from a Customer bank account to an account specified by Lessor, Customer check submitted to the payment address specified on the invoice or other means expressly permitted by Lessor. Payment credit is subject to final payment by the institution on which the item of payment was drawn. No restrictive endorsements shall be valid or binding.

Monthly Rental Payment Begin and End. Solely for the Vehicles to which the rates set forth below apply, Rental payment obligations shall begin with the calendar month of Vehicle delivery if the Vehicle is accepted on or before the 15th day of the month, or with the next succeeding month if the Vehicle is accepted on or after the 16th of the month. Rental payment obligations end at the end of the month prior to the month of sale if the Vehicle is sold on or before the 15th day of the month, or at the end of the month of sale if the Vehicle is sold on or after the 16th day of the month.

Exhibit 1's. The parties agree that no Exhibit 1 executed by the parties prior to this Amendment and Rate Schedule shall apply with respect to any Vehicle leased after the Effective Date of this Amendment and Rate Schedule.

Bonus; Vehicle Order & Service Utilization Commitment For the period beginning on the Effective Date of this Amendment and Rate Schedule and ending on October 31, 2015 (the "Contract Period"), GEFS agrees to pay Customer a bonus of $175 for each factory-ordered vehicle to a maximum for the Contract Period of $210,000. The bonus will be credited to Customer promptly after the end of each calendar year. In consideration of the foregoing bonus, Customer agrees for the Contract Period to lease all new or replacement cards and light trucks from GEFS or a Lessor hereunder and to utilize the fleet management services of GEFS specified in the addenda to the Master Services Agreement and executed contemporaneously herewith for Customer's fleet generally.

**Rate Schedule**

Amendment and Rate Schedule applicable to all Vehicles ordered on or after this Effective Date: 11/5/2012    b) 11/9/12

CAPITALIZED COST: (i) Manufacturer's invoice price of the Vehicle plus dealer charges, including courtesy delivery fees, if any; (ii) invoice price of any additions pursuant to Customer's request; (iii) an amount equal to the sales and acquisition taxes on the Vehicle calculated at the applicable statutory rates, but prior to any tax credits available to Lessor; and (iv) for a Factory Ordered Vehicle, a Commitment Fee at the Index Rate plus Adder for the period beginning with the date of payment to the manufacturer by Lessor and ending on the last day of the month prior to the month for which the first Monthly Rental is payable; plus (v) a markup or markdown as set forth below. Adjustments which occur after Lessor's payment for the Vehicle may be credited or billed to Customer.

| Type of Vehicle | Markup or Markdown |
|---|---|
| Factory Orders: Domestic Cars & Lt. Trucks except those below | Less $800 |
| Factory Orders: Toyota, Nissan, Subaru, Audi, Volkswagen, Mercedes and Volvo | Less $550 |
| Stock & Direct Purchases; Foreign Vehicles not listed above | Plus 1% of Capitalized Cost before Markup |

For purposes of the Master Lease Agreement, **Book Value** means, as of any month, the Capitalized Cost reduced by the applicable Amortization.

MONTHLY RENTAL IS A SINGLE INSEVERABLE PAYMENT FOR USE OF THE VEHICLE COMPUTED BY AGGREGATING:

*Amortization (f/k/a Depreciation Reserve)*: the depreciation rate selected by Customer in the Vehicle Order from the range of rates below or as accepted by GEFS multiplied by the Capitalized Cost;

| Vehicle Type | Months | Rate | Months | Rate |
|---|---|---|---|---|
| Cars & Lt. Trucks | 36 | 2.7778% | 48 | 2.0833% |

*Management Fee*: the applicable rate set forth below multiplied by the Capitalized Cost; and

*Interest*: **Float**: computed by multiplying the Book Value as of the beginning of the applicable month by the Index Rate plus the Adder plus the applicable liquidity adjustment divided by 12.

90 Day LIBOR means the latest yield for three month London Interbank Offered Rates ("90 Day LIBOR") appearing in the "Money Rates" column of The Wall Street Journal on the Index Date (defined below), rounded to the nearest basis point, divided by 360 and multiplied by 365, plus an administrative fee of 25 basis points. The Index Date shall be the 15th day of the billing cutoff month, or if The Wall Street Journal is not published on such date, the most recent published rate preceding the Index Date shall be used.

| Vehicle Type | Fixed or Float | Levelized Period | Index Rate | Adder | Management Fee |
|---|---|---|---|---|---|
| Cars & Lt. Trucks | Float | N/A | 90 Day LIBOR | 370 Basis Points | 0.040% |

INTERIM FINANCING PAYABLE TO LESSOR: Customer shall pay to Lessor an amount equal to Index Rate plus the Adder on the amount of funds advanced by Lessor for an uncompleted Vehicle for the period(s) beginning with each partial advance of funds for such Vehicle and ending on the last day of the month prior to the month for which the first Monthly Rental is payable.

SALE FEE PAYABLE TO GEFS: for Leased Vehicles sold at wholesale auction or to a dealer: $65

DEDUCTIBLE PERMITTED ON COMPREHENSIVE AND COLLISION INSURANCE: Actual Cash Value (Customer approved to self-insure for physical damage to the Vehicles).

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: SVP Transit Procurement
(President, Vice President, Treasurer, or provide certificate of authority)

Gelco Corporation d.b.a. GE Fleet Services

By: _____

Title: Authorized Signatory
Form 08.07.12

**Acknowledgement of Guarantor**

Rite Aid Corporation reaffirms its obligations under the Continuing Guaranty of Payment executed contemporaneously herewith.

Rite Aid Corporation

By: _____

Title: Vice President, Assistant Secretary

*GE Fleet Services*

01-107900

**Master Lease Agreement**
Amendment and Rate Schedule –
15th/16th

The Master Lease Agreement by and between the undersigned (the "Agreement"), as amended herein, remains in full force and effect.

Pricing Terms. Nothing in the Agreement or this Amendment and Rate Schedule shall be construed to require a Lessor to accept any Vehicle Order. Pricing is determined based on fleet information provided by Customer. Capitalized Cost may increase if manufacturer pricing changes. With respect to any Vehicle ordered or leased under the Agreement which has a markdown included in its Capitalized Cost, if a manufacturer, as a result of bankruptcy or otherwise, does not pay the dealer holdback, financing assistance or cost defrayal in the amount specified by the manufacturer at the date of Customer's order, Customer agrees that the markdown may be reduced by an amount equal to any shortfall. Any such adjustment to the Capitalized Cost shall not exceed the amount of the markdown.

Notice of Liquidity Adjustment. After the Effective Date of this Amendment and Rate Schedule, Lessor may provide written notice (whether by e-mail, fax or mail, each, a "Notice") to Customer of changes to the interest components of Monthly Rental (which may include a change to the Index Rate) and/or the rate applicable to Interim Financing with respect to Vehicles ordered after the effective date of the Notice. Customer has the right to object to any such changes by written notice to Lessor. However, Customer will be deemed to have accepted such changes by submitting to Lessor Vehicle Order(s) after the effective date of the Notice. Customer further agrees that any Vehicle Order submitted to Lessor (whether by fax, phone, web or otherwise) on behalf of Customer has been authorized by Customer and is binding on Customer.

Patriot Act Provisions. To support government efforts to fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies new customers. Accordingly, as part of our credit review and onboarding process, Lessor will confirm your legal name, address, and other identifying information. Lessor may also ask to see identifying documents. Customer agrees that it is not now and will not in the future be listed on any watch list maintained by the U.S. Treasury Department and shall comply with the Patriot Act, international trade control and money laundering laws, as applicable.

Bonus; Vehicle Order & Service Utilization Commitment. For the period beginning on the Effective Date of this Agreement and ending on October 31, 2015 (the "Contract Period"), GEFS agrees to pay Customer a bonus of $175 for each factory-ordered vehicle to a maximum for the Contract Period of $210,000. The bonus will be credited to Customer promptly after the end of each calendar year. In consideration of the foregoing bonus, Customer agrees for the Contract Period to lease all new or replacement vehicles from GEFS or a Lessor hereunder and to utilize the fleet management services of GEFS specified in the addenda to the Master Services Agreement and executed contemporaneously herewith for Customer's fleet generally.

## Rate Schedule

Amendment and Rate Schedule applicable to all Vehicles ordered on or after this Effective Date: _November 5, 2012_

Capitalized Cost: (i) Manufacturer's invoice price of the Vehicle plus dealer charges, including courtesy delivery fees, if any; (ii) invoice price of any additions pursuant to Customer's request; (iii) an amount equal to the sales and acquisition taxes on the Vehicle calculated at the applicable statutory rates, but prior to any tax credits available to Lessor; and (iv) for a Factory Ordered Vehicle, a Commitment Fee at the Index Rate plus Adder for the period beginning with the date of payment to the manufacturer by Lessor and ending on the last day of the month prior to the month for which the first Monthly Rental is payable; plus (v) a markup or markdown as set forth below. Adjustments which occur after Lessor's payment for the Vehicle may be credited or billed to Customer.

| Type of Vehicle | Markup or Markdown |
|---|---|
| Factory Orders: Domestic Cars & Lt. Trucks except those below | Less $800 |
| Factory Orders: Toyota, Nissan, Subaru, Audi, Volkswagen, Mercedes and Volvo | Less $550 |
| Stock & Direct Purchases and Foreign Vehicles not listed above | Plus 1% of Capitalized Cost before Markup |

For purposes of the Master Lease Agreement, Book Value means, as of any month, the Capitalized Cost reduced by the applicable Amortization.

MONTHLY RENTAL IS A SINGLE INSEVERABLE PAYMENT FOR USE OF THE VEHICLE COMPUTED BY AGGREGATING:

*Amortization*: the depreciation rate selected by Customer in the Vehicle Order from the range of rates below or as accepted by GEFS multiplied by the Capitalized Cost;

| Vehicle Type | Months | Rate | Months | Rate |
|---|---|---|---|---|
| Cars & Light Trucks | 36 | 2.7778% | 48 | 2.0833% |

*Management Fee*: the applicable rate set forth below multiplied by the Capitalized Cost; and

*Interest*: Float: computed by multiplying the Book Value as of the beginning of the applicable month by the Index Rate plus the Adder plus the applicable liquidity adjustment divided by 12.

90 Day LIBOR means the latest yield for three month London Interbank Offered Rates ("90 Day LIBOR") appearing in the "Money Rates" column of The Wall Street Journal on the Index Date (defined below), rounded to the nearest basis point, divided by 360 and multiplied by 365, plus an administrative fee of 25 basis points. The Index Date shall be the 15th day of the billing cutoff month, or if The Wall Street Journal is not published on such date, the most recent published rate preceding the Index Date shall be used.

| Vehicle Type | Fixed or Float | Levelized Period | Index Rate | Adder | Management Fee |
|---|---|---|---|---|---|
| Cars & Lt. Trucks | Float | N/A | 90 Day LIBOR | 370 Basis Points | 0.040% |
| | | | | | |

INTERIM FINANCING PAYABLE TO LESSOR: CUSTOMER SHALL PAY TO LESSOR AN AMOUNT EQUAL TO INDEX RATE PLUS THE ADDER ON THE AMOUNT OF FUNDS ADVANCED BY LESSOR FOR AN UNCOMPLETED VEHICLE FOR THE PERIOD(S) BEGINNING WITH EACH PARTIAL ADVANCE OF FUNDS FOR SUCH VEHICLE AND ENDING ON THE LAST DAY OF THE MONTH PRIOR TO THE MONTH FOR WHICH THE FIRST MONTHLY RENTAL IS PAYABLE.

SALE FEE PAYABLE TO GEFS: for Leased Vehicles sold at wholesale auction or to a dealer: $65

DEDUCTIBLE PERMITTED ON COMPREHENSIVE AND COLLISION INSURANCE: Actual Cash Value (Customer approved to self-insure for physical damage to the Vehicles).

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: ___SVP Indirect Procurement_____
*(President, Vice President, Treasurer, or provide certificate of authority)*

Gelco Corporation d.b.a. GE Fleet Services on its own behalf and as servicing agent

By: _____

Title: Authorized Signatory

01-107900

**Master Lease Agreement**
Business Use Certification

1. Customer certifies under penalty of perjury that it intends the Vehicles leased pursuant to this Agreement to be used more than 50% in the trade or business of Customer; and

2. **Customer has been advised that Lessor and not Customer will be treated as the owner of the Vehicles for Federal Income Tax purposes.**

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: SVP Indirect Procurement
*(President, Vice President, Treasurer, or provide certificate of authority)*