# EXHIBIT 2

# Open-End Vehicle Lease Agreement

Original Document Held by M&T
Bank Corporation as Custodian for
D.L. Peterson Trust

**PHH**

**MOTOR VEHICLE FLEET OPEN-END
FINANCE LEASE AGREEMENT**

LEASE NO(S). _1636_

THIS MOTOR VEHICLE FLEET OPEN-END FINANCE LEASE AGREEMENT, dated as of _February 6_, 2006 ("this Agreement"), is entered into by and between D.L. PETERSON TRUST, a Delaware Business Trust ("Lessor"), and **RITE AID HDQTRS. CORP.**, with offices at **30 HUNTER LANE, CAMP HILL, PA 17011** ("the Lessee").

IN CONSIDERATION of the premises and the mutual covenants and conditions contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and the Lessee, each intending to be legally bound hereby, agree as follows:

1. <u>Lease of Motor Vehicles</u>.

    (a)  Subject to the terms and conditions of this Agreement, Lessor agrees to lease to the Lessee, and the Lessee agrees to lease from Lessor, all of the cars, trucks, truck chassis, truck bodies, truck tractors, truck trailers, and other motor vehicles (each, "a Vehicle" or "the Vehicle," and collectively, "the Vehicles") that the Lessee from time to time requisitions from Lessor and that Lessor from time to time agrees to lease to the Lessee under this Agreement. Neither Lessor nor the Lessee shall be obligated to lease any minimum number of Vehicles; however, once a Vehicle is requisitioned from Lessor by the Lessee, the Lessee shall be obligated to lease the Vehicle under this Agreement. Lessor may choose to cancel any Vehicle requisition submitted pursuant to this Agreement at any time prior to delivery of the Vehicle to the Lessee or the Lessee's representative.

    (b)  Lessor shall be the sole legal and equitable owner of the Vehicles. The Lessee shall have no legal or equitable interest in the Vehicles or the proceeds of sale of the Vehicles except its interest as Lessee of the Vehicles as specifically set forth in this Agreement.

    (c)  The Vehicles shall be titled in the name of Lessor or such other name as Lessor or the trustee of Lessor may designate from time to time. The certificates of title for the Vehicles may note as lienholder Lessor, Raven Funding LLC or such other party as Lessor or the trustee of Lessor may designate from time to time.

    (d)  From time to time, the Lessee may request in writing that Lessor issue additional Lease Numbers in order to facilitate Lessee's identification and administration of this Agreement. In such event, any Vehicles ordered or leased by Lessor to or for the Lessee and identified by such additional Lease Numbers shall be governed by and subject to the terms and conditions of this Agreement the same as if these Vehicles had been identified by the original Lease Number.

    (e)  Lessor and the Lessee characterize this Agreement as a lease for federal and state income tax purposes. Lessor and the Lessee agree that Lessor is the only party entitled to claim income tax deductions for asset cost recovery, or depreciation, and investment tax credits, if any, with respect to the Vehicles, under the Internal Revenue Code of 1986 and applicable state laws, as amended from time to time.

2. <u>Lease Term</u>. The lease term for a Vehicle shall commence on the date that the Lessee or its representative takes possession of the Vehicle ("Acceptance") and shall continue thereafter, except in the event of the loss, or damage beyond repair, of the Vehicle (a "Casualty Vehicle"), for a minimum term of 367 days. After the minimum term, the lease term may be continued at the Lessee's election for successive monthly renewal periods until the Vehicle is returned to Lessor or its representative pursuant to Section 8 of this Agreement.

3. <u>Use of Vehicles</u>.

    (a)  The Lessee shall maintain the Vehicles in good condition and repair, ordinary wear and tear excepted. The Lessee shall use or permit the use of the Vehicles in its trade or business and only for lawful purposes within the United States and for occasional trips to Canada and Mexico, but in no event shall a Vehicle be used for the transportation for hire of goods or passengers, for towing any property other than in accordance with the Vehicle manufacturer's specifications, or for transporting explosive, radioactive, flammable, or hazardous materials. The Lessee shall comply, and cause all persons operating the Vehicles to comply, with (i) all applicable requirements of law relating to the registration, leasing, insurance, use, and operation of the Vehicles, including operators' licensing requirements, and (ii) all conditions of the policies of

insurance on the Vehicles. At all times, the Lessee shall supply Lessor with the name and address of representatives to whom the Vehicles are assigned.

(b) Notwithstanding the above, Lessor reserves the right to inspect the Vehicles at anytime during normal daylight business hours upon reasonable notice of its intent to do so. The Lessee shall furnish information to Lessor as to where the Vehicles may be inspected.

4. Sublease or Assignment. **THE LESSEE SHALL NOT ASSIGN ITS INTEREST IN THIS LEASE OR SUBLEASE ANY OF THE VEHICLES, EXCEPT WITH THE PRIOR WRITTEN CONSENT OF THE LESSOR.** The Lessee may have any of the Vehicles delivered to a subsidiary company of the Lessee, but such arrangement shall in no way alter the Lessee's responsibilities under this Agreement with respect to the Vehicles.

5. Deliveries and Disclaimer of Warranties.

(a) Lessor shall be responsible for obtaining and making available to designated representatives of the Lessee the Vehicles from time to time agreed to be leased as provided in Section 1; provided, however, that Lessor shall not be liable to the Lessee in the event of Lessor's inability to obtain any of the Vehicles with the exercise of reasonable diligence.

(b) The Lessee shall designate each of the Vehicles to be a 24-month, 33-month, 36-month, 40-month, 45-month, 48-month, 50-month, 55-month or 60-month Vehicle (or such other designations as the parties hereto may make by amendment of this Agreement). Such designation (i) shall be known as the Depreciation Term for a Vehicle, (ii) shall be made by the Lessee on a requisition form or by an alternative method acceptable to Lessor in advance of the Acceptance of the Vehicle, and (iii) once made as to the Vehicle, may not be changed without the prior written consent of Lessor.

(c) Lessor hereby assigns, and will otherwise make available to the Lessee, all of Lessor's rights under the manufacturers' warranties of the Vehicles. Acceptance of delivery of a Vehicle by the Lessee's representative shall constitute the Lessee's acknowledgement that (i) the Vehicle is the make and model, and is equipped, as specified by the Lessee, (ii) the Vehicle is an authorized addition under this Agreement, and (iii) LESSOR HAS MADE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE VEHICLE, AND THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE LIABLE FOR CONSEQUENTIAL, SPECIAL, OR INCIDENTAL DAMAGES.

(d) Upon Acceptance of a Vehicle by the Lessee, Lessor shall pay the total of all amounts required to be paid to manufacturers, dealers, and vendors in connection with the purchase and delivery of the Vehicle and for all fees and taxes related to the titling, licensing, and registration of the Vehicle. The total of all such amounts paid, as adjusted by charges assessed in accordance with Section 5(e) herein, shall be used as the basis for determining the rental payable for the Vehicle and shall hereinafter be referred to as "the Capitalized Cost."

(e) (i) In the event that a Vehicle is delivered to a vendor for upfitting prior to Acceptance by the Lessee, Lessor shall pay when due all vendor invoices for such Vehicle, including but not limited to the manufacturer's or dealer's invoice for the base unit, and assess the Lessee carrying cost charges ("Carrying Costs") for each invoice paid from the date of payment ("Invoice Payment Date") by Lessor until the date the Vehicle is accepted by the Lessee; provided, however, that Lessor shall not charge Lessee Carrying Costs if the period from Invoice Payment Date to Acceptance is less than sixteen (16) days. Carrying Costs shall be calculated on a per diem basis (365-day-year) beginning on the sixteenth (16th) day following the Invoice Payment Date at the rate of the PHH Commercial Paper Rate plus 1 ¾%. The "PHH Commercial Paper Rate" shall be a composite of the H.15 Commercial Paper rate for 30 Day Non-financial Commercial Paper as published by the Federal Reserve from time to time, adjusted to a non-discounted, 365-day-year basis, rounded up to the nearest one-eighth of one percent. The PHH Commercial Paper Rate shall be adjusted upward or downward on the 16ht day of each subsequent month as the PHH Commercial Paper Rate changes. Carrying Costs for each upfitted Vehicle leased pursuant to this Agreement shall be included in the Capitalized Cost for such Vehicle.

(ii) In addition, for any upfitting, the Lessee and any other Debtor (defined for the purposes herein as a permissive user as set forth in Section 4 herein) hereby appoints Lessor as its duly authorized agent and attorney in fact for and on behalf of Lessee in all matters relating to the preparation, execution and filing of such UCC financing and termination statements to evidence the ownership by Lessor of all upfitting leased hereunder. Included among the power granted is the power for Lessor to appoint additional attorneys in fact on behalf of Lessee for the limited purposes herein specified and the revocation of such appointments. Lessee agrees to reimburse Lessor for the direct expenses including overnight courier expenses incurred in filing any UCC Financing Statements, obtaining Certificates of Good Standing, Articles of Incorporation or Organization and other filings related to the Lessee's legal creation and conducting lien searches. Lessee agrees to execute any additional documents, instruments and assurances and take such further action as Lessor may from time

to time reasonably request in order to more effectively carry out the purpose of this Agreement and to protect the rights and remedies of Lessor hereunder.

6. <u>Rental and Rental Term</u>.

   (a)    Rental and other charges related to the Vehicles shall be billed by Lessor monthly in advance of the month for which they are due and paid by the Lessee to Lessor by the first calendar day of such month. The foregoing payments by the Lessee shall be made by check or electronic funds transfer to an account designated by Lessor. Lessee's obligation to pay rental and other charges shall be absolute and unconditional and shall not be subject to any claim, defense, or setoff whatsoever. Rental charges shall be determined by reference to the rates in effect at the time of the Lessee's Acceptance of a Vehicle, reflected in the Vehicle's New Unit Notice ("NUN") and made part of this Agreement, which rates are expressed as a percentage of the Capitalized Cost of the Vehicle. Such rental rates shall include a percentage factor, known as the Depreciation Rent Factor, of 4.17%, 3.04%, 2.78%, 2.50%, 2.25%, 2.09%, 2.00% 1.82% or 1.67% in the case of 24, 33, 36, 40, 45, 48, 50, 55 or 60 month Vehicles respectively. That portion of the Lessee's monthly rental comprising the applicable Depreciation Rent Factor times the Capitalized Cost of the Vehicles shall be known as Depreciation Rent. The aggregate amount of all Depreciation Rent paid during the rental term of a Vehicle shall be known as the Accumulated Depreciation Rent.

   (b)    Rental and the other charges related to the Vehicles shall be subject to a late-payment charge to be paid by the Lessee to Lessor in the amount of one and one-half percent (1-1/2%) per month, or fraction of a month, for any amount not received by Lessor by the fifteenth (15th) calendar day of the month for which such amount is due. This reference to a late-payment charge does not alter the Lessee's obligation to pay all rental and other charges related to the Vehicles by the first calendar day of the month for which they are due.

   (c)    The rental term for a Vehicle shall commence on the first (1st) calendar day of the month after the Vehicle is accepted by the Lessee's representative. Lessee agrees that from the date the Vehicle is accepted by the Lessee's representative until the beginning of the rental term, Lessee shall pay a fee equal to the monthly rental charge for such Vehicle pro-rated on a daily basis based on the actual number of days in the month. The rental term for a Vehicle shall end on the last calendar day of the month preceding the month in which the Vehicle is sold and final settlement for the Vehicle is made pursuant to Section 8 if such sale and settlement occur on or before the fifteenth (15th) calendar day of the month, or on the last calendar day of the month in which the sale and settlement occur if such sale and settlement occur after the fifteenth (15th) calendar day of the month.

   (d)    The Lessee shall not prepay any rental for more than one (1) month in advance of its due date.

7. <u>Expenses, Fees, and Taxes</u>.

   The Lessee shall pay all costs, expenses, fees, and charges incurred in connection with the titling and registration of the Vehicles and the use and operation of the Vehicles during their lease terms, including, but not limited to, fuel, lubricants, replacement parts and accessories, repairs, maintenance, storage, parking, tolls, fines, registration fees, license fees, tags, and all taxes whatsoever by whomsoever payable (except any tax measured by the net income of Lessor) on or relating to the Vehicles and their purchase, sale, rental, use, or operation. The Lessee shall reimburse Lessor the amount of any such costs, expenses, fees, charges, and taxes paid by Lessor, and pay the administration fee assessed by Lessor from time to time. It is the intent of this Agreement that Lessor shall receive the rental hereunder as a net return on the Vehicles.

8. <u>Sale of Vehicles</u>.

   (a)    At anytime after the first 367 days of the rental term of a Vehicle that the Lessee no longer intends to use, the Lessee may terminate the lease of the Vehicle. In such case, the Lessee shall notify Lessor and shall, at the Lessee's expense, surrender the Vehicle at a place that is mutually agreeable to the Lessee and Lessor. Any Vehicle, except a Casualty Vehicle, as defined in Section 2, that is not kept under lease for the minimum term of 367 days shall be subject to a penalty of an amount equal to the monthly rent for such Vehicle less the Depreciation Rent portion of such monthly rent for each month that the Vehicle is kept under lease less than 367 days. As soon as practicable, Lessor shall sell the Vehicle to a purchaser selected by, or approved by, Lessor. The rental term for the Vehicle shall end as provided in Section 6.

   (b)    Should the net resale proceeds exceed the difference between the Capitalized Cost and the Accumulated Depreciation Rent paid by the Lessee, Lessor shall credit the Lessee's account for such excess, or, at the Lessor's option, pay such excess to the Lessee.

(c)  Should the net resale proceeds be less than the difference between the Capitalized Cost and the Accumulated Depreciation Rent paid by the Lessee, the Lessee shall pay such deficiency to Lessor.

(d)  Subject to Lessor's right to approve Vehicle purchasers as set forth in Section 8(a) of this Agreement and provided that Lessee is not then in default under this Agreement, the Lessee, or any individual selected by the Lessee, shall have the option to purchase a Vehicle leased pursuant to this Agreement at anytime after the first twelve (12) months of the rental term of the Vehicle, upon payment to Lessor of an amount equal to the fair market value of the Vehicle, as determined by Lessor. This amount shall be deemed to be the net resale proceeds for the Vehicle. Notwithstanding any provision in this Agreement to the contrary, the rental term for a Vehicle sold in this manner shall continue until such payment is received by Lessor.

(e)  Any adjustments between Lessor and the Lessee relating to the disposition of the Vehicles shall be reflected in a statement of final settlement to be rendered by Lessor to the Lessee.

9.  **Loss of or Damage to Vehicles.** All risk of loss or damage to a Vehicle from whatever cause shall be assumed by the Lessee from the time of Acceptance of the Vehicle by the Lessee or the Lessee's representative until the time the Vehicle is surrendered to Lessor or Lessor's representative.

10.  **Insurance.** The Lessee shall provide insurance for the use, operation, and possession of each of the Vehicles covering liability for bodily injury and property damage during the period from Acceptance of the Vehicle by the Lessee or its representative until the Vehicle is surrendered to Lessor or its representative. Such insurance policy, which shall be with a responsible insurance company acceptable to Lessor, shall name Lessor and PHH Vehicle Management Services, LLC, a Delaware limited liability company, doing business as PHH Arval, the servicer of this Agreement as provided herein (together with its successors or assigns as servicer on behalf of the Lessor, the "Servicer") (or such other entity as directed by Lessor from time to time) as additional insureds and loss payees, shall name Raven Funding LLC as additional insured and shall provide minimum coverages, acknowledged by such insurance company to be the primary coverage, of $1,000,000 in combined single limits for bodily injury and property damage. The Lessee shall also provide collision and comprehensive insurance in accordance with this Section 10 covering loss or damage to the Vehicles in an amount not less than the actual cash value of each of the Vehicles, with a deductible not to exceed $1,000. With Lessor's consent, the Lessee may self-insure for collision and comprehensive insurance coverage. The Lessee shall furnish Lessor with a certificate of insurance or other satisfactory evidence of the required insurance coverage. Lessor shall be under no duty to examine such certificate of insurance or other evidence or to advise the Lessee in the event its insurance is not in compliance with this Agreement.

11.  **Indemnification.** Regardless of any insurance provided pursuant to Section 10, the Lessee shall at all times be liable to defend, indemnify, and save harmless Lessor, Servicer and Raven Funding LLC (and any other entity designated by Lessor from time to time) against all claims and liabilities of whatsoever kind or nature and all costs and expenses, including attorneys' fees, incurred in connection with, relating to, or arising out of the possession, use, or operation of each of the Vehicles during the period from Acceptance of the Vehicle by the Lessee or its representative until the Vehicle is surrendered to Lessor or its representative. This indemnification obligation shall survive the surrender of the Vehicle and the termination of this Agreement.

12.  **Default.**

(a)  In the event (i) the Lessee defaults in the payment of any rental or other amounts payable under this Agreement, or defaults in the performance of the covenants or obligations of the Lessee hereunder, and should such default continue for a period of fifteen (15) days following receipt by the Lessee of written notice of default under this Agreement, (ii) there shall be filed by or against the Lessee any action under any provision of any state or federal law relating to insolvency or bankruptcy, and such action is not dismissed within sixty (60) days of the filing, (iii) a receiver or trustee shall be appointed for the Lessee's property, and such appointment is not withdrawn within sixty (60) days of the date of appointment, (iv) the Lessee makes an assignment for the benefit of creditors, or (v) the Lessee shall be in default (beyond any applicable cure period) in the payment or performance of any other indebtedness or obligation owed by the Lessee to Lessor or Servicer under other vehicle management agreements executed between the parties (currently identified as Vehicle Expense Management and Safety Program Agreement, the Fleet Administrative Services Agreement and the Personal Use Taxable Benefit Agreement), then Lessor may terminate this Agreement, and thereupon, all of the rights of the Lessee under this Agreement and with respect to the Vehicles shall immediately terminate.

(b)  In the event of such default and termination, the Vehicles shall be immediately surrendered to Lessor, and, if they are not, Lessor may repossess the Vehicles. Lessor may, but shall not be obligated to, sell any of the Vehicles at public or private sale or sales without notice to the Lessee at such price and upon such terms as it deems commercially reasonable. The rental term for each of the Vehicles so surrendered or repossessed shall terminate in accordance with the other provisions

of this Agreement. Lessor may retain all rents, payments, and resale proceeds received, including any refunds and other sums, if any, otherwise payable to the Lessee under this Agreement to the extent necessary to pay Lessor all rentals and other amounts owed to Lessor under any of the provisions of this Agreement or any other agreement between the Lessee and Lessor, together with costs and expenses, including attorneys' fees, incurred by Lessor in the enforcement of its rights and remedies under this or any other provision of this Agreement. In addition to all other rights or remedies hereunder, Lessor shall be entitled to recover from the Lessee all rentals and other amounts owed by the Lessee under this Agreement, whether arising before or after such default and termination.

13. <u>Assignment by Lessor</u>.

Lessor may from time to time assign and/or grant a security interest in all or any part of its right, title, and interest in this Agreement, including all monies and claims for monies due and to become due to Lessor hereunder. The Lessee's obligation to pay such monies to the assignee and/or secured party, upon prior written notice to the Lessee by the assignee and/or secured party, shall be absolute and unconditional and shall not be subject to any claim, defense, or setoff whatsoever. The Lessee hereby agrees that it will not assert against any such assignee and/or secured party any claim, defense, or setoff it may have against Lessor or any other party, whether such claim, defense, or setoff shall have accrued or arisen before or after the Lessee shall have received such notice. This Agreement and any right, title, or interest of the Lessee created in the Vehicles shall be subject, and subordinate in all respects, to any and all security interests in the Vehicles heretofore or hereafter granted by Lessor to an assignee and/or secured party subject, however, to the Lessee's right of quiet enjoyment as set forth in Section 14 of this Agreement.

14. <u>Quiet Enjoyment</u>. Notwithstanding any other provisions of this Agreement, the Lessee may retain possession and quiet enjoyment of each of the Vehicles until the expiration of the lease term of the Vehicle (i) as long as the Lessee makes due and timely payment of all rentals and other amounts due under this Agreement to Lessor or to any party to whom Lessor may assign or grant a security interest in this Agreement or the Vehicles, and (ii) as long as the Lessee performs all of its other covenants and obligations under this Agreement.

15. <u>Financials</u>. Intentionally Omitted.
16. <u>Regulations Affecting Leased Vehicles</u>. Federal law (and state law, if applicable) requires that the Lessee of a leased motor vehicle disclose the mileage of the Vehicle to Lessor in connection with the transfer of ownership of the Vehicle by Lessor. Failure to complete such disclosure or making a false statement in the disclosure may result in fines and/or imprisonment.

17. <u>Pricing Assumptions/Variance</u>. Lessee acknowledges and agrees that the fees and pricing structure agreed to between Lessor and Lessee (for vehicle leasing and other services) are based upon the assumptions set forth in the Pricing Assumptions Schedule attached hereto and made a part of this Agreement.

18. <u>Notices</u>. Any notice to be given hereunder by a party shall be in writing and delivered personally or by first class mail, postage prepaid, addressed as follows: in the case of Lessee, to the address as set forth in the first paragraph of this Agreement with a copy to "Legal Department" at the same address, in the case of Lessor, c/o PHH Vehicle Management Services, LLC, as Servicer, Regional Processing Center, 940 Ridgebrook Road, Sparks, Maryland 21152-9390, Attn: Legal Department, or to such other persons or addresses as may be designated in writing by the party to receive such notice.

19. <u>Entire Agreement</u>. This Agreement and the Schedules made a part of this Agreement contain the entire agreement and understanding of the parties with respect to the subject matter hereof and supersede all prior oral or written agreements and understandings related thereto.

20. <u>Waivers, Modifications, Severability</u>.

    (a) **No waiver, change, amendment, or modification of any of the provisions of this Agreement shall be binding unless made in writing and signed by the parties hereto.**

    (b) Failure of either party at any time to require performance of any provision of this Agreement shall not affect the right at a later time to enforce the provision. In the event that any provision of this Agreement shall be held invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement.

21. <u>Binding Effect</u>. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

22. <u>Headings</u>. The headings of the Sections of this Agreement are inserted for the convenience of reference only and shall not be deemed to constitute a part hereof.

23. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Maryland.

24. <u>Administration</u>. It is understood and agreed that Servicer will administer this Agreement and will perform the service functions herein provided to be performed by the Lessor.

25. <u>Data</u>. Lessor/Servicer shall have the right to use and market de-personalized statistical data collected in the provision of services to the Lessee with respect to the Vehicles.

IN WITNESS WHEREOF, Lessor and the Lessee have caused this Agreement to be executed and delivered by their respective duly authorized officers as of the date first above written.

D.L. PETERSON TRUST

By: _____
Attorney-in-Fact

**RITE AID HDQTRS. CORP.**

By: _____
Vice President

Print Name: Brian T. Hoover

PHH Vehicle Management Services, LLC hereby accepts the foregoing Agreement, as may be amended and/or supplemented from time to time, and agrees to perform the service functions therein as provided in Section 24.

PHH VEHICLE MANAGEMENT SERVICES, LLC

By: _____
Vice President

-6-

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## BUSINESS USE CERTIFICATION

To comply with the requirements of Section 7701(h)(2)(C) of the Internal Revenue Code of 1986, as amended from time to time, the Lessee makes the following certification and acknowledgement as a part of the foregoing Agreement.

1. The Lessee hereby certifies, under penalty of perjury, that the Lessee intends that more than 50 percent of the use of the Vehicles under the Agreement is to be in a trade or business of the Lessee;

2. The Lessee hereby acknowledges that in accordance with Section 1(e) of the Agreement it has been advised that it will not be treated as the owner of the Vehicles under the Agreement for federal income tax purposes.

IN WITNESS WHEREOF, the Lessee has caused this certification to be executed as of the date first above written.

**RITE AID HDQTRS. CORP.**

MVFL-Fin/OLT - Rev. 7/11/05  
cyr  
H:legal\contracts\riteaid\lease (LD4)

By: _Brian T. Hoover_  2/7/06

Vice President

| | | | | | |
|---|---|---|---|---|---|
| **Client Name:** | **Rite Aid-Floating H15** | | | | |
| Segment: | FAS | | | | |
| Payment Terms: | 15 Days | | | | |

| | Inventory | Annual Buy | Mos In Svc | Lease Term | Avg Cap Cost |
|---|---|---|---|---|---|
| Cars/Light Trucks | 1,008 | 252 | 48 | 50 | $17,000 |
| Medium/Heavy Duty Trucks | - | - | - | - | $0 |
| Equipment | - | - | - | - | $0 |
| TOTAL | 1,008 | 252 | | | |

| Motor Company Mix (Cars/Lights) | |
|---|---|
| GM | 0% |
| Ford | 100% |
| Chrysler | 0% |
| Other | 0% |
| Total | 100% |
| | |
| Factory Order % | 90% |

| | Cars/Lights | Medium / Heavy Trks |
|---|---|---|
| VMA Units | 1,008 | - |
| Monthly Billing | $80.00 | |
| National Account % | 71% | |
| Dealer/Independent % Network | 24% | |
| Dealer/Independent % Non-Network | 5% | |
| Client Limit | $1,000.00 | |
| Driver Limit | $100.00 | |
| # of Contacts | 1 | |
| | | |
| FleetGard Units | - | |
| Monthly Billing | | |
| National Account % | | |
| Dealer/Independent % Network | | |
| Dealer/Independent % NonNetwork | | |
| | | |
| Fuel Units | 1,008 | |
| Monthly Billing | $200.00 | |
| Preferred Network % | 95% | |
| | | |
| Automotive Services Units | - | |
| Monthly Billing | | |
| National Account % | | |
| Dealer/Independent % Network | | |
| Dealer/Independent % NonNetwork | | |
| | | |
| VER Units | - | |
| FleetSense Units | - | |
| Personal Use Taxable Benefit (PUTB) Units | 1,008 | |
| | | |
| VAS Units | 1,008 | - |
| Completed Repair % | 60% | |
| Network Utilization % | 90% | |
| Will PHH handle Subrogation? | Yes | |
| | | |
| Reregistration Units | 1,008 | |
| | | |
| FAS/Driver Response Units | 1,008 | |
| | | |
| Driver Record Check Units | 1,008 | |
| | | |
| Other Term Sheet Information: | 2 months service fees from program start date (FAS, VMA, Fuel, VAS) | |