# EXHIBIT 3

## Master Services Agreement

*01-109900*

 GE Fleet Services

**Master Services Agreement**

This Master Services Agreement for fleet-related services (together with its addenda collectively referred to as the "Agreement") is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS") and the undersigned ("Customer"). If more than one party executes this Agreement as Customer, each shall be jointly and severally liable hereunder.

**1. Term.** The term of each program addendum (each, a "Program") shall commence on the Effective Date of the Program and continue until terminated by either party on 30 days' written notice. Upon termination of a Program, Customer remains responsible for: expenses incurred by GEFS on Customer's behalf; any related transaction fees due to GEFS; and any purchases made by Customer with purchasing instruments provided by GEFS under the Program.

**2. Payment Terms.** Time is of the essence. All charges are due and payable within 10 days from Customer's receipt of invoice, provided, however that "receipt" shall be deemed to be the later of Customer's receipt of an electronic invoice from Lessor and the date of invoice. On any amounts not paid within 15 days of Customer's receipt of invoice, late payments will be charged in the amount of 1% or the highest legal interest rate, whichever is less, per month or fraction thereof. Once, during each calendar year of this Agreement, Customer may notify GEFS that it elects to use the one-time option described below for waiver of a late payment fee. This waiver of late fee penalties may be utilized with respect to a payment not made in accordance with the time for payment specified above, but for which the actual payment was received by GEFS within 30 days of Customer's receipt of invoice. It is the intent of GEFS that it not receive directly or indirectly any amount in excess of that amount which may be legally paid. Any excess charges will be credited to Customer or, upon request, refunded. GEFS is directed and empowered to issue work authorizations on Customer's behalf in accordance with the applicable Program. Customer shall carefully review each billing or other statement provided by GEFS. If Customer identifies any billing error, Customer will advise GEFS promptly and in such event, GEFS' sole liability and Customer's sole remedy shall be appropriate adjustments to Customer's account. All charges are based on GEFS' standard operating routines, computer systems and existing business policy. Additional services or special handling required by Customer will be subject to separate charges.

**3. Financial Information; Default.** The creditworthiness of Customer's guarantor is a material condition to this Agreement. The parties agree that this Agreement is a contract to extend a financial accommodation and shall terminate without notice upon any Customer or guarantor bankruptcy. Customer will deliver to GEFS its guarantor's (i) complete financial statements prepared in accordance with generally accepted accounting principles, consistently applied, certified by a recognized firm of certified public accountants, within 75 days of the close of such entity's fiscal year and (ii) quarterly financial report certified by the chief financial officer of such entity, within 45 days of the close of such entity's fiscal quarter. To the extent such financial statements of such guarantor are publicly available, Customer shall not be required to deliver such statements to GEFS. If Customer shall fail to make any payments due hereunder or if Customer or any guarantor shall a) breach any covenants under any agreement it may have with GEFS or its affiliated companies, or b) undergo a change in controlling ownership, Customer shall be in default of this Agreement. If Customer is in default of this Agreement or is no longer deemed creditworthy, GEFS reserves the right to terminate this Agreement immediately at any time. In the event of default, Customer agrees to pay cost of collection (including

reasonable attorneys' fees). GEFS shall have the right to offset any amounts due to Customer against amounts due to GEFS and all rights and remedies available at law or in equity; all such rights and remedies to be cumulative and not exclusive.

**4. Vehicle Use and Operation.** With respect to Vehicles subject to any Program, Customer shall a) cause the Vehicles to be operated in a safe and lawful manner, b) maintain minimum required liability insurance; and c) be responsible for inspection and maintenance required by law.

**5. Warranty Disclaimer; Independent Contractors.** CUSTOMER AGREES THAT GEFS: A) IS A REBILLER FOR GOODS AND SERVICES PURCHASED BY CUSTOMER FROM THIRD PARTIES PURSUANT THIS AGREEMENT; B) IS NOT THE MANUFACTURER OR DISTRIBUTOR OF SUCH GOODS AND SERVICES; AND C) HAS NOT MADE AND MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY SUCH GOODS OR SERVICES INCLUDING, BUT NOT LIMITED TO, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER AGREES TO LOOK SOLELY TO THE MANUFACTURER OR DISTRIBUTOR OF SUCH GOODS AND SERVICES, AND HEREBY WAIVES ANY AND ALL CLAIMS, INCLUDING PRODUCT LIABILITY CLAIMS, AGAINST GEFS WITH RESPECT THERETO. CUSTOMER ACKNOWLEDGES THAT THIRD PARTIES PROVIDING GOODS OR SERVICES PURSUANT TO ANY PROGRAM OR THE PROVIDER OF SERVICES DESCRIBED IN ANY PROGRAM ADDENDUM ARE INDEPENDENT CONTRACTORS AND NOT AGENTS OF GEFS.

**6. Customer's Indemnity.** CUSTOMER WILL INDEMNIFY AND DEFEND GEFS (INCLUDING ANY OF ITS AFFILIATES) AGAINST ANY LOSS, LIABILITY, OR CLAIM, DIRECTLY OR INDIRECTLY RELATING TO THE GOODS AND SERVICES PURCHASED FROM THIRD PARTIES PURSUANT TO THIS AGREEMENT. THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM ACTIVE NEGLIGENCE OR WILLFUL MISCONDUCT OF GEFS, ITS AGENTS OR EMPLOYEES PROVIDED HOWEVER, THAT ACTIVE NEGLIGENCE SHALL NOT BE CONSTRUED TO INCLUDE NEGLIGENCE WHICH MAY BE DIRECTLY OR INDIRECTLY IMPUTED TO GEFS DUE TO ACTION OR INACTION BY CUSTOMER, ANY OF EMPLOYEE OR AGENT OF CUSTOMER OR ANY THIRD PARTY PROVIDER OF SERVICES NOR SHALL ACTIVE NEGLIGENCE BE CONSTRUED TO INCLUDE GEFS REFERRALS OF SERVICE PROVIDERS UNLESS GEFS HAD ACTUAL KNOWLEDGE OF SUCH SERVICE PROVIDER RENDERING DEFECTIVE AND DANGEROUS REPAIRS THIS INDEMNITY DOES NOT EXTEND TO CLAIMS THAT GEFS FAILED TO PAY THIRD PARTY PROVIDERS OF SERVICES THIS INDEMNITY WILL SURVIVE ANY TERMINATION OF THIS AGREEMENT.

**7. Damage Limitation.** EXCEPT WITH RESPECT TO CUSTOMER'S OBLIGATIONS OF INDEMNITY, EACH PARTY AGREES THAT: ITS SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO THIS AGREEMENT BETWEEN CUSTOMER AND GEFS SHALL BE A CONTRACT ACTION; DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES INCURRED; AND NO INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES WILL BE CLAIMED.

**8. Miscellaneous.** Customer shall not assign any interest in this Agreement to any party without the written consent of GEFS. Any such consent shall not relieve Customer of its obligations. GEFS has the right to receive and retain rebates, discounts and other compensation directly or indirectly from manufacturers, suppliers or vendors with respect to goods and services purchased hereunder. This Agreement, the Programs and any amendments contain the entire understanding of the parties and merge all oral understandings. Customer may issue purchase orders related to the services for administrative convenience, but such purchase orders are subject to this Agreement and shall not supplement or amend it. Any modifications, amendments or changes may be made only in writing signed by GEFS and Customer. Customer

agrees that it is not now and will not in the future be listed on any watch list maintained by the U.S. Treasury Department and shall comply with the Patriot Act, international trade control and money laundering laws, as applicable. Failure of either party to enforce any right shall not be deemed a waiver of such right.

9. Related Entities. Any services provided pursuant to any Program to any present or future subsidiary, parent or affiliate of Customer, shall be within the terms and conditions of this Agreement and, if any such entity fails to perform, Customer guarantees performance.

10. Governing Law. THIS AGREEMENT SHALL NOT BE EFFECTIVE UNTIL EXECUTED BY BOTH PARTIES AND SHALL, UPON SUCH EXECUTION, BE DEEMED EFFECTIVE AS OF THE EFFECTIVE DATE. THE LAWS OF THE STATE OF DELAWARE SHALL GOVERN ALL QUESTIONS OR DISPUTES RELATING TO THE EFFECT, INTERPRETATION, PERFORMANCE, VALIDITY, OR ENFORCEMENT OF THIS AGREEMENT, WITHOUT REGARD TO CHOICE OF LAW PRINCIPLES THEREOF.

11. Waiver of Jury Trial. BOTH PARTIES TO THIS AGREEMENT WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY HEREUNDER.

12. Audit. GEFS agrees to permit Customer or its representatives, upon reasonable notice and during normal working hours at Customer's cost and expense, to examine, make copies of and audit records and all items related to amounts invoiced to Customer under this Agreement for a period of twenty-four months following the date such amount was invoiced to Customer. Any audit under this section will be limited to books and records of GEFS which relate to the amounts invoiced by GEFS to Customer and will be limited to a period of twenty-four months.

*IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.*
**Rite Aid Hdqtrs. Corp. (Customer)**

By: _____

Title: ____SVP Indirect Procurement_____
*(President, Vice President, Treasurer, or provide certificate of authority)*

**GE Fleet Services (GEFS)**

By: _____

Title: Authorized Signatory

Effective Date: _____November 5, 2012_____

*01-107900*

 GE Fleet Services

**Amendment to Maintenance Management Addendum**

This is an Amendment to that certain Maintenance Management Addendum with an effective date of November 5, 2012 by and between GE Fleet Services ("GEFS") and the undersigned Customer (the "Addendum").

1. The Addendum remains in full force and effect except as modified herein.

2. In Section I to the Addendum a new subsection H is added as follows and the subsequent sections are relabeled accordingly:

"Provide Customer with a rebate through discounted pricing on the invoices to Customer for Customer's purchases after the Effective Date at Managed Network vendors in amounts equal to 2% multiplied by the transaction amounts (before tax); provided however, that in no event will the amount of discount payable to Customer on a transaction exceed the amount of the total discount payable to GEFS with respect to the transaction. This rebate will be credited to Customer each month on GEFS' invoice to Customer based on Managed Network purchases shown on this invoice."

3. This Amendment will be effective as of the Effective Date set forth below upon acceptance by GEFS.

*IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be signed by duly authorized representatives.*

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: S VP  Indirect Pricing~~~~
(President, Vice President, Treasurer, or provide certificate of authority

GE Fleet Services (GEFS)

By: _____

Title: Authorized Signatory

Effective Date: November 5, 2012

03/05


GE Fleet Services

01-107900

**Maintenance Management Addendum**

This Maintenance Management Addendum is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS"), and the undersigned ("Customer"). This Addendum forms a part of, is subject to, and shall be read and interpreted in accordance with the Master Services Agreement by and between the parties.

GEFS provides a program to minimize Customer's vehicle operating costs, driver downtime and administrative cost associated with the payment of multiple suppliers.

Customer's use of designated vendors (the "Managed Network") is a key component of cost reduction and quality provided in this program; and

Customer desires to utilize this program to control such costs;

In exchange for the mutual promises herein expressed, the parties agree to perform according to the following terms and conditions:

**I. GEFS shall provide to Customer:**

A. A Maintenance Management program through the issuance of a Driver Guide ("Driver Guide") for each Vehicle enrolled.

B. Written, telephonic or electronic purchase order control of Customer's vehicle-related purchases and mechanical charges in excess of the $300 approval amount for the driver authorized in the Driver Guide.

C. The opportunity to electronically approve proposed maintenance or repair to a Vehicle that is in excess of $1,500.

D. If requested, assistance in obtaining a temporary rental vehicle in accordance with mutually agreed parameters. Temporary rentals, if any, shall be in the name of Customer with billing directly to GEFS.

E. The ability for Customer to obtain certain routine mechanical services and to purchase through the Managed Network.

F. Email alerts to Drivers for whom Customer has provided email addresses advising Drivers that, based on the GEFS' data base, a preventative maintenance is over-due.

G. Review of service and repair invoices billed to GEFS on Customer's behalf for proper authorization.

H. Pursuit of standard warranty coverage and "post warranty" adjustment from Vehicle manufacturers.

I. A single monthly invoice for all purchases, mechanical services and temporary rentals procured by Customer hereunder.

J. Web access to maintenance information and reporting.

**II. Customer shall:**

A. Designate the Vehicles subject to this program ("Vehicles"), and for Vehicles not leased from GEFS, provide all information reasonably requested by GEFS to perform the service.

B. Direct its employees to comply with all instructions contained in the Driver Guide or otherwise provided by GEFS to Customer.

C. Pay GEFS monthly, in advance, for each Vehicle subject to this program, a fee of $3.50.

D. Pay GEFS monthly, a sum equal to the aggregate of all invoices received by GEFS for goods, services and temporary rentals procured hereunder.

E. Pay GEFS an administrative fee for transactions outside the Managed Network of $10.00 for each invoice processed by GEFS and a replacement fee of $1.00 for replacement of a lost, stolen or destroyed Driver Guide.

F. And hereby does agree that GEFS shall retain, as compensation for its services, 0% of a post warranty recovery.

G. And hereby does, agree that Customer shall bear all risk of late return or loss, theft or damage to any temporary rental vehicle.

*IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed by authorized representatives.*

**Rite Aid Hdqtrs. Corp. (Customer)**

By: _____

Title: ____SVP Indirect Procurement_____
*(President, Vice President, Treasurer, or provide certificate of authority)*


**GE Fleet Services (GEFS)**

By: _____

Title: Authorized Signatory

Effective Date: _____November 5, 2012_____

01-107900


GE Fleet Services

**Fleet Management Solutions Addendum**

This Fleet Management Solutions Addendum, is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS"), and the undersigned ("Customer"). This Addendum forms a part of, is subject to, and shall be read and interpreted in accordance with the Master Services Agreement by and between the parties (the "Agreement").

Customer desires GEFS to assume some or all of the activities associated with the day-to-day administration of its fleet of Vehicles as mutually agreed in the Service Plan. Customer remains responsible for establishing fleet policies and procedures.

**GEFS shall:**

A. Provide the Vehicle Procurement and Inventory Management services specified in the Service Plan attached to this Addendum as Exhibit A (the "Service Plan").

B. Upon mutual agreement on both the services and fee, provide services beyond the scope of the Service Plan on an exception or ongoing basis. Provision of any service beyond the scope of the Service Plan without mutual agreement on the service and fee shall not constitute a waiver by GEFS of its right not to continue to provide such service without such an agreement.

II.   **Customer shall:**

A. Designate the Vehicles subject to this program ("Vehicles"), and for Vehicles that are not leased by GEFS to Customer, provide to GEFS all information requested by GEFS which is necessary to provide the services.

B. Designate the employees of Customer and its subsidiaries and affiliated companies who drive the Vehicles and direct its employees to comply with all instructions from time to time reasonably issued by GEFS in connection with this program.

C. Provide GEFS, if appropriate to the services in the Service Plan, its fleet policies, procedures and operating parameters, and advise GEFS of any changes to the same.

D. Designate the fleet administrator or other decision maker who has authority over Customer's fleet.

E. Provide GEFS with all information requested by GEFS that is reasonably required to provide the services.

F. Pay GEFS monthly, in advance, for each Vehicle enrolled in this program, a fee of $3.00,

G. Pay GEFS for any services beyond the scope of the Service Plan as mutually agreed when invoiced and on the payment terms specified in the Agreement.

H. Notwithstanding anything in the Agreement to the contrary, Customer shall pay a minimum of 12 months of fees for the number of Vehicles initially enrolled in this program.

I. If Customer requests training at its locations, Customer agrees to reimburse GEFS for its reasonable out of pocket costs incurred in providing such training.

III.   **General Provisions.**

A. Services provided pursuant to this Addendum will be in accordance with GEFS' understanding of Customer's fleet policies and operating requirements as well as GEFS standard processing routines and system capabilities. If GEFS' services (per the Service Plan) are, at any time, not in conformity with Customer's fleet policies and operating requirements, Customer agrees to notify GEFS in writing explaining any variation. Within 30 days of GEFS' receipt of any such notice, the parties may agree to modify the service delivery; amend this Addendum to provide for a different Service Plan; or terminate this Addendum. If the parties do not agree, then services will continue without modification.

B. Customer acknowledges that Customer remains responsible for determining its fleet policies and operational requirements. Customer further acknowledges that GEFS' services are intended to provide technical knowledge and administrative support to Customer.

*IN WITNESS WHEREOF the parties hereto have caused this Addendum to be duly executed by authorized representatives.*

**Rite Aid Hdqtrs. Corp. (Customer)**

By: _____

Title:    SVP Indirect Procurement    _____
*(President, Vice President, Treasurer, or provide certificate of authority)*

**GE Fleet Services (GEFS)**

By: _____

Title: Authorized Signatory

Effective Date: _____

**EXHIBIT A- SERVICE PLAN**

**VEHICLE PROCUREMENT AND INVENTORY MANAGEMENT**

CUSTOMER RESPONSIBILITY.

The following Strategic Management guidance and direction will be **performed by the Customer with *limited to NO hands-on processing*, recommendations and/or analytics by FMS**. The Single Point of Contact will train the Customer representative on self-serve options via GE Fleet technology where applicable.

- Goal Planning for strategic fleet initiatives
- Process Improvement
- Strategic Replacement Planning
- Cost Savings Optimization e.g. Model Year Planning, Benchmarking
- Executive Fleet Dashboard to monitor key performance indicators
- Exception Management & Reporting (follow up with drivers to ensure activities are in compliance with fleet operating policies and procedures)
- Project Management

**Driver Communication/Training:**
- Mass Driver Communication
- Fleet policies & procedures
- Escalated driver issue resolution

**ASSET PROCUREMENT AND MANAGEMENT TO BE PROVIDED BY GEFS.**

**Vehicle Management:**
FMS coordinates and provides **processing assistance** on behalf of Customer and works with internal departments at GE Fleet Services for the following vehicle life cycle activities:
Ordering Administration excluding OEM Negotiations (NOTE: Order specs will be approved by Customer)
- Remarketing Administration (Terminations are authorized by Customer)
- Title Administration
- Billing Administration
- Escalated issue resolution

**Inventory & Asset Management:**
FMS provides **processing assistance** on behalf of Customer for the following activities:
- Asset Management
- Vehicle changes e.g. Vehicle transports,
- Driver profile changes updated and maintained in GE Fleet Services' database
- Idle Asset Management (Monitoring & tracking)

**Value Added Services Administration & Coordination for Products:**
FMS provides **administration, exception management tracking**, for the following Services (if applicable)
- Safety & Accident
- Rapid Tag
- Fuel
- Maintenance
- MVR
- Telematics
- Insurance

---

NOTE

This is applicable to a Customers meeting the standard requirements. GE Fleet Services reserves the right to charge additional fees for any non-standard activities/requests.

Examples include but not limited to:

- Split Fleet Management Administration

- An exceptional need/request that significantly increases workload e.g. supporting major reduction in fleet

- Complex reporting requiring significant IT investment

- Requirement for strategic analytics and/or nonstandard task execution

---

 GE Fleet Services

**Personal Mileage Analysis Addendum**

This Personal Mileage Analysis Addendum is made and entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS"), and the undersigned ("Customer"). This Addendum forms a part of, is subject to, and shall be read and interpreted in accordance with the Master Services Agreement by and between the parties.

In exchange for the mutual promises herein expressed, the parties agree to perform according to the following terms and conditions:

I.  GEFS shall prepare and provide to Customer a Personal Mileage Analysis consisting of the following two reports (the "Reports"):

   A.  Each March, June, September and November, based on information received from Customer no later than the 15th day of the preceding month and pertaining to information received year-to-date, a Quarterly Personal Mileage Report, for each Employee.

   B.  In December, based on information received (including, but not limited to, any revised information that may be received) which pertains to the previous year of November 1st through October 31st, an Annual Personal Mileage Usage Report.

II.  Customer shall:

   A.  Designate the Vehicles ("Vehicles") subject to this program, and for those Vehicles that are not leased by GEFS to Customer, provide to GEFS all information requested by GEFS.

   B.  Pay GEFS monthly a fee of $1.00 per Vehicle subject to this program.

   C.  Instruct its Employees to report such personal mileage and business mileage through GEFS' website or Interactive Voice Response ("IVR") system in the format and manner specified by GEFS.

   D.  Provide to GEFS any other information necessary for GEFS to prepare the Reports.

   E.  Acknowledge that Customer is responsible for the maintenance and storage of Employee mileage logs necessary to satisfy appropriate tax authorities.

   F.  If Customer does not utilize the Electronic Fuel Card Program for the Computation Period, advise GEFS in writing of the cents per mile to be used for the Fuel Benefit calculation, provided, however, that such amount shall not be less than the minimum per mile charge authorized by the Internal Revenue Service.

III.  General Provisions:

   A.  GEFS shall not be responsible for auditing the mileage and usage data provided by the driver or for comparing such data against any other information that may be available to GEFS. Customer agrees that GEFS may rely on the accuracy of such mileage data provided by the Driver and prepare the Reports without inquiry relative to the information contained in the mileage report data.

   B.  Anything in the Master Services Agreement to the contrary notwithstanding, the initial term of this Addendum shall be a 12-month period approved by the IRS for personal mileage reporting and mutually agreed by the parties. Customer acknowledges that if this program is

terminated prior to completion of 12 month period approved by the IRS that Customer will be responsible to compile incomplete data to the termination data with appropriate information for the remainder of such period. If Customer desires GEFS to prepare an Annual Personal Mileage Usage Report pertaining to a year which commenced prior to the effective date of this Addendum and if GEFS shall therefore be required to capture personal or business mileage data pertaining to periods prior to the effective date, GEFS and Customer shall separately negotiate how such data shall be captured and the fee(s) therefor.

   C.  CUSTOMER ACKNOWLEDGES THAT THE REPORTS SHALL BE BASED SOLELY ON INFORMATION PROVIDED BY CUSTOMER OR CUSTOMER'S EMPLOYEES TO GEFS AND THAT GEFS HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE ACCURACY OF THE REPORTS, OR TO THE COMPLIANCE OF THE REPORTS OR OF THE INFORMATION CONTAINED IN THE REPORTS WITH ANY FEDERAL, STATE OR LOCAL TAX OR OTHER STATUTE OR REGULATION. CUSTOMER AGREES THAT GEFS MAY RELY ON THE ACCURACY OF SUCH MILEAGE REPORT FORMS AND PREPARE THE REPORTS WITHOUT INQUIRY RELATIVE TO THE INFORMATION PROVIDED BY CUSTOMER'S DRIVERS VIA WEBSITE OR IVR. CUSTOMER FURTHER ACKNOWLEDGES AND AGREES THAT THE ACCURACY AND RELIABILITY OF ANY REPORT AS TO ANY EMPLOYEE IS DEPENDENT UPON THAT EMPLOYEE SUBMITTING BUSINESS AND TOTAL MILEAGE FOR EACH AND EVERY MONTH OF VEHICLE USE IN THE PERIOD. IF AN EMPLOYEE DOES NOT SUBMIT INFORMATION FOR EVERY MONTH OF VEHICLE USE IN THE PERIOD, CUSTOMER AGREES NOT TO USE THE REPORT FOR THAT EMPLOYEE WITHOUT REVIEW, AND IF APPROPRIATE, ADJUSTMENT AS CUSTOMER AND ITS TAX ADVISORS DEEM TO BE APPROPRIATE

   D.  FOR PURPOSES OF THIS ADDENDUM, THE INDEMNITY IN THE MASTER SERVICES AGREEMENT IS SUPPLEMENTED TO INCLUDE LOSS, LIABILITY OR CLAIM DIRECTLY OR INDIRECTLY RELATING TO THE SERVICES PROVIDED BY GEFS TO CUSTOMER PURSUANT TO THIS ADDENDUM REPORTS OR OF THE INFORMATION CONTAINED IN THE REPORTS.

*IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed by authorized representatives.*

**Rite Aid Hdqtrs. Corp. (Customer)**

By: _____

Title:    SVP Indirect Procurement
*(President, Vice President, Treasurer, or provide certificate of authority)*

**GE Fleet Services (GEFS)**

By: _____

Title: Authorized Signatory

Effective Date:    November 5, 2017


GE Fleet Services

**RapidTag Addendum**

This RapidTag Addendum is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS"), and the undersigned ("Customer"). This Addendum forms a part of, is subject to, and shall be read and interpreted in accordance with the Master Services Agreement by and between the parties. In exchange for the mutual promises herein expressed, the parties agree to perform according to the following mutual terms and conditions:

### I. RapidTag Program

GEFS shall provide to the Customer a RapidTag program the purpose of which is to assist Customer, as permitted by the respective states, in renewing registrations for passenger vehicles, and for trucks having standard commercial license plates and meeting the requirements in the respective states for standard commercial license plates, which are owned by Customer or leased by Customer from GEFS. All vehicles enrolled in this program are collectively referred to as "Vehicles"). GEFS shall:

A. Provide to Customer a list of Vehicles for which, according to GEFS' data base, registration is due to expire within 90 to 120 days (the "Renewal List");

B. Provide to the driver of the Vehicle, or to Customer if so requested or if GEFS has not been advised of the driver's name and address, the preconditions to registration renewal, if any, requiring action by the driver or Customer (the "Precondition Notification"). This notification shall be mailed 45 to 60 days before registration expiration;

C. Provide to Customer and update monthly a list of drivers who need to complete the preconditions required for registration renewal;

D. Renew registrations, at the expense of Customer, for those Vehicles for which all preconditions to registration renewal have been completed and evidence thereof provided to GEFS, and obtain from the respective states the appropriate proof of registration; and

E. Provide such proof of registration to Customer or, at Customer's option, to the drivers.

### II. Customer shall:

A. At the commencement of the RapidTag program and thereafter upon GEFS' request, update any data necessary for GEFS to prepare the Renewal List and process registration renewals and for Customer owned vehicles not on the data base, pay a one-time set up fee for each Vehicle of $10.00.

B. For each Renewal List: correct any errors; indicate any Vehicles on the Renewal List which Customer does not desire to have renewed, add any other Vehicles for which Customer believes the registration will require renewal within the 90 to 120 day period of the Renewal List, and make the edits online or return the edited list to GEFS on or before the return date indicated. If the edited Renewal List is not in GEFS' possession on or before the return date: GEFS may automatically renew the registration of all Vehicles on the list. Further, if a Renewal List is not received by the return date or if Customer fails to delete a Vehicle which Customer does not want renewed and as a result a registration is unnecessarily renewed, Customer shall apply for any refunds it may desire.

C. Comply with, or cause the drivers to comply with, the preconditions to registration renewal as indicated in the Precondition Notification and provide, or cause the drivers to provide, to GEFS evidence of compliance satisfactory to the respective states. Such evidence shall be in the possession of GEFS on or before the date indicated in the Precondition Notification. Customer recognizes that certain states impose preconditions for registration renewals (such as, but not limited to, emissions tests, vehicle inspections, certificates or proof of insurance, or certificates or proof of payment of tax) which require either the presence of the Vehicle or the performance of certain actions in the location of the driver or the Vehicle. Customer further recognizes that states may change such requirements from time to time. GEFS shall have no obligation to renew the registration of any Vehicle until Customer has supplied GEFS with evidence of compliance with the preconditions for renewal of the respective state.

D. Pay GEFS the applicable fee set forth below:

Leased Vehicles:              $25.00 per transaction.

Customer Owned Vehicles:      $35.00 per transaction.

E. Pay GEFS an additional fee of $30.00 for each Vehicle if Customer or the driver fails to provide GEFS with evidence of compliance with Preconditions at least 30 days prior to registration expiration.

F. If Customer requests GEFS to obtain a duplicate registration renewal, pay GEFS a fee of $25.00 for each duplicate.

G. Reimburse GEFS for all out of pocket fees incurred by GEFS in the provision of the services provided herein, including, but not limited to: registration fees, taxes, other charges assessed by the states in connection with registration renewals, late renewals or duplicate registrations, expedited mail or courier fees.

H. And hereby does, authorize GEFS, by any employee or agent of GEFS' designation, to act on Customer's behalf as Customer's attorney-in-fact, and to sign, execute, transfer, file and deliver in the name of Customer any documents or materials reasonably necessary to effectuate the terms of this Addendum.

### III. General Provisions

A. If Customer complies with the conditions set forth herein including the applicable return dates, GEFS shall use its best efforts to renew the registration of each Vehicle listed in the Renewal List and provide proof thereof to Customer prior to expiration of the registration. If Customer fails to comply with the conditions or schedule, or if there is delay or error on the part of the state processing a registration renewal, proof of registration renewal may not be supplied to Customer prior to the date of expiration of the renewal. GEFS MAKES, AND CUSTOMER RECEIVES, NO WARRANTY, EXPRESS OR IMPLIED.

B. If, due to causes within GEFS' control, GEFS fails to renew a registration that was included on a Renewal List and for which GEFS received evidence of compliance with Preconditions at least 30 days prior to registration expiration, GEFS shall either pay, or upon receipt of an invoice or other documentation from Customer shall reimburse Customer for, any tickets, penalties or late registration fees incurred as the result thereof. IN NO EVENT SHALL GEFS REIMBURSE CUSTOMER FOR ANY INDIRECT OR CONSEQUENTIAL DAMAGES INCURRED BY CUSTOMER (INCLUDING, BUT NOT LIMITED TO, DRIVER DOWN TIME) REGARDING ANY REGISTRATIONS THAT ARE NOT RENEWED.

*IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed by their authorized representatives.*

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: ___SVP Indirect Procurement___
(President, Vice President, Treasurer, or provide certificate of authority)

GE Fleet Services (GEFS)

By: _____

Title: Authorized Signatory

Effective Date: ___November 5, 2012___

**Important Notice if you DO NOT presently lease Vehicles from GE Fleet Services.**

Most states require us to provide your insurance policy information to obtain registration renewals. Accordingly, we need you to provide us with a certificate of insurance. Please forward the certificate with this signed Addendum.

 **GE** Fleet Services

**Insurance Card Agreement**

This Insurance Card Agreement is made and entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS"), and the undersigned ("Customer") as of the Effective Date.

1. On behalf of Customer's insurance agent, GEFS will, in accordance with the instructions of Customer's insurance agent, prepare and distribute insurance cards to Customer's drivers.

2. The agreement by Customer's agent to have GEFS prepare and distribute insurance card on its behalf and provision of instructions by Customer's agent to GEFS for such preparation are essential terms of this Agreement. In the event that these terms are not satisfied, GEFS shall have no obligation to prepare or distribute any insurance cards.

3. Customer agrees to pay GEFS a fee for each insurance card (original or duplicate) distributed in the amount of $1.00 within 10 days of the date of invoice.

4. Customer agrees to reimburse GEFS for its then current overnight delivery charge if Customer requests that an insurance card or cards be sent using such a service.

5. Customer acknowledges and agrees that GEFS provides a clerical function only in the preparation and issuance of insurance cards pursuant to this Agreement and accordingly CUSTOMER WILL INDEMNIFY AND DEFEND GEFS (INCLUDING ANY OF ITS AFFILIATES) AGAINST ANY LOSS, LIABILITY, OR CLAIM, DIRECTLY OR INDIRECTLY RELATING TO THE PERFORMANCE OF GEFS IN THE PREPARATION AND ISSUANCE OF INSURANCE CARDS. THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF GEFS. THIS INDEMNITY WILL SURVIVE ANY TERMINATION OF THIS AGREEMENT.

6. CUSTOMER'S SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO ANY BREACH BY GEFS OF THIS AGREEMENT IS THE TERMINATION OF THIS AGREEMENT AND A REFUND OF ANY FEES PAID BY CUSTOMER WITH RESPECT TO INSURANCE CARDS ISSUED IN THE THREE MONTH PERIOD PRIOR TO SUCH BREACH. GEFS SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, EXEMPLARY, PUNITIVE, INCIDENTAL OR INDIRECT DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF PROFIT, GOODWILL OR DRIVER DOWNTIME.

7. This Agreement may be terminated by either party on 30 days' written notice.

*IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.*

**Rite Aid Hdqtrs. Corp. (Customer)**

By: _____

Title:  SVP Indirect Procurement
*(President, Vice President, Treasurer, or provide certificate of authority)*

**GE Fleet Services**

By: _____

Title: Authorized Signatory

Effective Date: _____
08/2006



*01 – 107900*

**GE Fleet Services**

**Electronic Fuel Card Addendum**

This Electronic Fuel Card Addendum is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS"), and the undersigned ("Customer"). This Addendum forms a part of, is subject to and shall be read and interpreted in accordance with the Master Services Agreement by and between the parties.

GEFS has entered into an agreement with a third party provider ("Provider") pursuant to which the Provider has agreed to establish and issue purchase cards for use by GEFS' customers. Such purchase cards will be accepted by vendors with which the Provider has agreements.

In exchange for the mutual promises herein expressed, the parties agree to perform according to the following terms and conditions:

I.  GEFS shall:

A.  Extend to Customer, upon written request and in such quantity as may be mutually agreed upon by and between Customer and GEFS, the use of Purchase Cards ("Cards") to be used only by authorized employees or agents of Customer or its affiliated companies, for the purchases at the locations ("Oil Companies") where the Card is accepted.

B.  After purchase by Provider from the Oil Companies of the accounts arising from Customer's purchases with the Cards, pay Provider the amount of such accounts. GEFS' sole payment obligation is to Provider and not to the Oil Companies.

C.  Furnish Customer with a monthly invoice identifying gross purchases per Card covering all purchases by Customer during the month(s) preceding the date of the invoice and a transaction report (in lieu of individual fuel tickets).

D.  Provide Customer with a rebate (through discounted pricing) of 40 basis points for every dollar of fuel purchases made by Customer through use of the Cards and invoiced to Customer by GEFS pursuant to this Addendum, provided however, that in no event will the amount of the rebate payable to Customer exceed the amount of the total rebate payable to GEFS with respect to the purchase.   This rebate will be credited to Customer each month on GEFS' invoice to Customer based on fuel purchases shown on this invoice.

II.  Customer shall:

A.  Assure that the Cards are used primarily for business purposes; each Card user is instructed in its proper use and 10 or more Cards are issued throughout the term of this program.

B.  Designate the Vehicles subject to this program ("Vehicles"), and for Vehicles not leased by GEFS to Customer, provide all information reasonably requested by GEFS to provide the service specified herein.

C.  Accept, hold and use Cards subject to the terms and conditions expressed herein. Customer acknowledges that all Cards are and shall remain the property of GEFS, and the license to use the Cards is subject to cancellation by GEFS at any time by written notice; and upon receipt of such notice, Customer shall make no further charges thereon and shall immediately destroy or return such Cards to GEFS.

D.  Observe and comply with, and direct each Card user to observe and comply with, such instructions as GEFS may reasonably issue from time to time.

E.  ASSUME FULL RESPONSIBILITY FOR ALL PURCHASES MADE BY ANY BEARER OF A CARD ISSUED IN THE NAME OF CUSTOMER OR ANY AFFILIATED COMPANY IRRESPECTIVE OF WHETHER THE USE OF SUCH CARD WAS AUTHORIZED OR UNAUTHORIZED OR EXCEEDS ANY LIMITS OR CONDITIONS ON THE CARD. Customer shall provide GEFS with notice of unauthorized use, loss or theft of the Cards or of Customer's desire to terminate a Card for any other reason by speaking to a GEFS representative AT 1-800-944-3555 or by calling the Provider at the telephone number set forth on a Card or pursuant to the instructions furnished by GEFS to Customer In writing from time to time. Customer's responsibility for payment of all purchases made with such Card will cease no later than 1 hour after the notice is received.

F.  Pay GEFS for all purchases made (including any applicable taxes or other charges incurred through the use of the Cards) by any bearer of a Card issued in the name of Customer or its affiliated companies as well as the monthly fee set forth below.

G.  Pay GEFS a fee of $0.00 per month per Card issued in the name of Customer or of its affiliates.

H.  Reimburse GEFS for the replacement charge of $1.00 for each lost, stolen or destroyed Card for which Customer requests replacement.

I.  And hereby agrees that the disclaimer of warranties with respect to all products and services purchased from third parties is, with respect to this addendum, extended to Provider.

*IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed by authorized representatives.*

**Rite Aid Hdqtrs. Corp.   (Customer)**

By: _Gerald P. Cornell_

Title:  SVP Indirect Procurement
*(President, Vice President, Treasurer, or provide certificate of authority)*

**GE Fleet Services (GEFS)**

By: _Lynn Schaefer_

Title: Authorized Signatory

Effective Date: _November 5, 2012_

Form 07.30.10


GE Fleet Services

*01-107900*

**DriverCare Safety Addendum**

This DriverCare Safety Addendum is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS") and the undersigned ("Customer"). This Addendum forms a part of, and is subject to, and shall be read and interpreted in accordance with the Master Services Agreement by and between the parties.

GEFS and The CEI Group, Inc., or another third party provider of certain information services (each, a "Provider") have entered into an agreement pursuant to which GEFS may offer its customers various services, including the ability to request and obtain from such Provider certain abstracted reports ("Reports") on its employees or prospective employees and their spouses, children or other household member (collectively "Drivers" or each individual a "Driver"), which may include driver accident data, and motor vehicle records ("MVRecord") obtained by a third party consumer reporting agency ("CRA") from the various Departments of Motor Vehicles ("DMV(s)") or other appropriate state agencies, which MVRecord, and some information contained in Reports, constitute consumer reports, as defined by the Fair Credit Reporting Act (the "FCRA"), upon the terms and conditions set forth herein. GEFS may in its discretion change such third party Provider.

In exchange for the mutual promises herein expressed, the parties agree to perform the following mutual terms and conditions:

I.   GEFS shall cause Provider to make available to Customer:

A.   Consultation and set-up with Customer of certain program and/or module specific parameters, obtaining and managing authorizations from Driver, the ability for Customer to have MVRecords ordered from DMV(s) or other appropriate state agencies, and the provision of Reports.   Reports are made available to Customer on Provider's website or otherwise as permitted by law; actual MVRecords are not provided to Customer.

B.   Using a form developed by Provider, grade Reports based on Customer's parameters or based on Provider's standard parameters.

C.   If selected by Customer, provide the safety policy and driver education services described in the Modules in the DriverCare MVR Manager Fee Schedule. If the DriverCare Risk Manager is selected by Customer on the DriverCare Risk Manager Fee Schedule, provide remedial driver safety training lessons; and the ability for Customer to assign supplemental driver safety training lessons.

D.   Driver-oriented services described in the Modules, solely with respect to drivers who are employees and who have business email addresses. Additional requirements apply if the DriverCare Risk Manager is selected by Customer.

II.   GEFS shall:

A.   Pay Provider any and all amounts necessary to reimburse Provider for its out-of-pocket cost and expenses related directly to obtaining MVRecords and providing the program modules selected, including, but not limited to, amounts paid to the DMV(s), state and local agencies and amounts paid for the modules including products provided in connection with any module.

B.   Provide Customer with a single monthly invoice for GEFS' Fees for the selected program modules as set forth in the attached Fee Schedules, for all other amounts indicated in the attached Fee Schedules, and for any and all amounts necessary to reimburse Provider for its out-of-pocket cost and expenses related directly to obtaining MVRecords and providing the

program modules selected, including, but not limited to, amounts paid to the DMV(s), state and local agencies and amounts paid for products provided through each module utilized by Customer as well as related shipping costs.

C.   Forward to Provider, in the format required by Provider, certain Driver set-up information received from Customer. For those Drivers who are not assigned to a vehicle, GEFS shall establish a courtesy unit to be used for invoicing Customer.

III.   Customer shall:

A.   Provide provider for DriverCare Risk Manager, an accurate list in the format required by GEFS and Provider, including certain identifying information: business email address, and assigned vehicle, of those Drivers who shall participate in each program module selected by Customer. Customer shall review each list carefully for accuracy and update the information as required to maintain its accuracy including, without limitation, reassignment of any element of identifying information, such as an employee number, whether due to the Driver's termination of employment, transfer or otherwise. For those Drivers who are not assigned to a vehicle, Customer understands that GEFS shall assign the respective Driver a courtesy unit for purposes of invoicing and reporting.

B.   Co-operate with Provider as necessary to meet the set-up requirements for each of the selected program modules, and comply with all instructions, restrictions and/or requirements issued from time to time by Provider.

C.   Request MVRecords or Reports from Provider in the manner and on the form required by Provider from time to time.

D.   Cause the Driver who is the subject of the requested MVRecord to complete and deliver to Provider a signed or electronic authorization, in the manner and on the form required by Provider from time to time, consenting to each requested MVRecord. Customer understands that Provider shall not request or provide an MVRecord on a Driver unless Provider has received from the Driver an authorization in the form required by Provider.

E.   **Not sell, transfer, disclose or otherwise provide the Reports** to anyone other than the Driver who is the subject of the Reports, or to a person whose duty requires him or her to review the information in relation to the purpose for which the Reports were ordered.

F.   And does understand that certain states may prohibit the sale, publication or dissemination of the Reports via the Internet and, will not transmit or disseminate via the Internet or e-mail when prohibited.

G.   Not request, compile, store, maintain or use the Reports to build its own database except for its own internal purposes where allowed by law, provided that such purposes do not include any marketing or resale of such databases; or copy or otherwise reproduce the Reports other than for its own purpose.

H.   Complete all forms and authorizations, and obtain all requester codes, and execute all federal and state certifications required by the various agencies in order for GEFS, Provider or any CRA to obtain Reports on behalf of Customer as an end-user.

I.   Appoint GEFS its limited agent for the purpose of providing Customer with the ability to request MVRecords and Reports from Provider.

J.   And hereby does certify that it intends to use the information in the requested Reports for "employment purposes" or other

"permissible purposes." Customer shall and hereby does certify that it shall order, receive and otherwise handle Reports in compliance with all federal and state statutes and regulations including, but not limited to, the FCRA and its state analogues, the Driver Privacy Protection Act ("DPPA") and its state analogues and statutes and regulations governing fair information practices. Customer shall maintain records on its use of Reports for a continuing (rolling) period of 5 years beginning with the effective date of this Addendum.

K.    Take no action based on a Report or the information contained in a Report with respect to any Driver unless Customer verifies the accuracy of such Report or the information contained in a Report with the Driver. Customer shall immediately notify Provider of any inaccuracy in a Report or the information contained in a Report.

L.    In the event of an adverse employment action or adverse action as defined by the FCRA or applicable state law, which is based wholly or partially on a Report, notify the Driver as required by the FCRA, including the address and phone number of Provider or, if so instructed by Provider, the CRA's address and toll free national telephone number such that the CRA can make full disclosure of any information reported or held by the CRA on said consumer.

M.    Pay GEFS monthly, the invoiced amount, which will be equal to the aggregate of GEFS' Fees for the selected program modules as set forth in the attached Fee Schedules, for all other amounts indicated in the attached Fee Schedules, and for any and all amounts necessary to reimburse Provider for its out-of-pocket cost and expenses related directly to obtaining MVRecords and providing the program modules selected, including, but not limited to, amounts paid to the DMV(s), state and local agencies.

N.    And hereby does acknowledge that the Reports may contain errors and/or provide an incomplete record of a Driver's traffic violations and accident experience or differ from state to state as to the information provided.

O.    And does agree that all software, database applications, and process and formulae methodologies which may be made available to Customer on Provider's password protected website ("Software and Database Application") are the intellectual property of Provider, that Customer may use the Software and Database Application solely for the purpose of this Addendum, that Customer shall not disclose, copy or share such Software or Database Application with any third party not affiliated with Customer, and that Customer shall not allow, cause or permit reverse engineering of the Software or Database Application.

General Provisions

1.    Anything in the Master Services Agreement notwithstanding, the services provided for in this Addendum may be suspended or this Addendum may be terminated by GEFS immediately upon written notice to Customer if GEFS, Provider or the CRA has reason to believe, without obligation to take any action, that Customer has requested, ordered, used or disseminated any Report in whole or part, contrary to this Addendum or in violation of any federal, state or local law or regulation.

2.    Neither GEFS, Provider nor the CRA are the provider of the MVRecord. GEFS, Provider and any CRA disclaim any liability for, and make no warranty, whether express or implied concerning, and Customer acknowledges that GEFS, Provider and CRA disclaim any liability for, and make no warranty concerning, any information contained in the Reports, as well as the accuracy or completeness of Report information.

3.    GEFS IS NOT THE PROVIDER OF ANY TRAINING COURSES, LESSONS OR MINI-MODULES ("TRAINING") AND GEFS MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED, OF FITNESS FOR A PARTICULAR PURPOSE, OR OF ANY KIND OR CHARACTER NOT EXPRESSLY SET FORTH HEREIN. GEFS SHALL HAVE NO LIABILITY FOR ANY TRAINING PROVIDED BY PROVIDER. CUSTOMER AGREES TO LOOK SOLELY TO THE PROVIDER OF ANY OF THE TRAINING PURCHASED PURSUANT TO THIS ADDENDUM, AND HEREBY WAIVES ANY AND ALL CLAIMS AGAINST GEFS WITH RESPECT TO THE TRAINING. CUSTOMER FURTHER AGREES THAT FOR PURPOSES OF THE INDEMNITY BELOW, "GOODS OR SERVICES PURCHASED" SHALL BE CONSTRUED TO INCLUDE TRAINING.

4.    CUSTOMER COVENANTS AND AGREES TO INDEMNIFY, SAVE HARMLESS AND DEFEND GEFS, PROVIDER AND THE CRA, AND ANY EMPLOYEE OF AND ANY PARENT, SUBSIDIARY OR AFFILIATE OF GEFS, PROVIDER OR THE CRA, AGAINST ANY AND ALL LIABILITY, CLAIMS FOR LOSS, DAMAGE OR INJURY, AND FROM AND AGAINST ANY LEGAL PROCEEDINGS OR ADMINISTRATIVE ACTIONS OF ANY KIND BROUGHT AGAINST GEFS, PROVIDER OR THE CRA FOR OR ON ACCOUNT OF ANY PERSON(S) OR LEGAL ENTITY OR GOVERNMENT BODY, OR ON ACCOUNT OF ANY DAMAGES OR LOSS SUFFERED OR SUSTAINED BY ANY PERSON(S) OR LEGAL ENTITY IN ANY MANNER, DIRECTLY OR INDIRECTLY CAUSED BY, INCIDENT TO, OR GROWING OUT OF THE PERFORMANCE OF GEFS, PROVIDER OR THE CRA OR THE GOODS OR SERVICES PURCHASED UNDER THIS ADDENDUM AND FOR ANY AND ALL DAMAGES, FINES OR PENALTIES OR OTHER LIABILITIES IMPOSED BY LOCAL, STATE OR FEDERAL LAWS OR REGULATIONS OR CLAIMED BY ANY THIRD PARTY WHICH RESULT FROM OR ARISE OUT OF CUSTOMER'S GIVING GEFS OR PROVIDER INCORRECT DATA OR INFORMATION, OR THE USE, MISUSE OR DISSEMINATION BY CUSTOMER, ITS EMPLOYEES, AGENTS, CONTRACTORS OR REPRESENTATIVES OF THE REPORTS, OR THE FAILURE OF CUSTOMER TO COMPLY WITH THIS ADDENDUM OR APPLICABLE STATE OR FEDERAL LAW. CUSTOMER FURTHER AGREES TO TAKE UPON ITSELF THE SETTLEMENT OF ALL SUCH CLAIMS AND THE DEFENSE OF ALL SUIT(S) OR LEGAL PROCEEDINGS OF ANY KIND BROUGHT TO ENFORCE SUCH CLAIMS, AND TO PAY ALL JUDGMENTS ENTERED IN SUCH SUIT(S) AND ALL COSTS, ATTORNEYS' FEES OR OTHER EXPENSES. CUSTOMER FURTHER AGREES THAT PROVIDER AND THE CRA ARE AND SHALL BE A THIRD PARTY BENEFICIARY OF THIS INDEMNITY AND THE OTHER PROVISIONS OF THIS ADDENDUM RELATED TO PROVIDER AND THE CRA AND ENTITLED TO ENFORCE THIS INDEMNITY AND THE OTHER PROVISIONS DIRECTLY AGAINST CUSTOMER.

5.    The Customer obligations set forth in Sections III D, E, F, G, H, J, K, L, N and O and in the General Provisions of this Addendum shall survive termination of this Addendum.

*IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed by authorized representatives.*

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title:    SVP Indirect Procurement
*(President, Vice President, Treasurer, or provide certificate of authority)*

GE Fleet Services (GEFS)

By: _____

Title: Authorized Signatory

Effective Date: _____

Form 130.2 07.27.12

Dear Customer:

The Fair Credit Reporting Act requires that the following certification be obtained from you before MVRecords can be requested and Reports can be made available to you. Accordingly, please read the following certification and, if the statements are true, sign the certification and return it to us. If you are not currently complying with the requirements of the certification, it will be necessary for you to do so to lawfully request MVRecords and obtain Reports.

Thank you.
GE Fleet Services

---

CERTIFICATION

The customer named below ("Customer") hereby certifies that:

1.    Customer has provided, or shall have provided, to each Driver or other individual on whom an MVRecord will be obtained, a clear and conspicuous disclosure, in writing and on a document consisting solely of the disclosure, that a consumer report may be obtained about such person for employment purposes or other permissible purposes; and

2.    Each Driver or other individual has authorized, or shall have authorized, Customer, in writing and on a separate document, to procure an MVRecord and Report; and

3.    Before taking any adverse action based in whole or in part on the Report, Customer will provide to the Driver or other individual on whom a Report was obtained, a copy of the Report and a description, in writing, of their rights pursuant to the Fair Credit Reporting Act; and

4.    After taking any adverse action based in whole or in part on the Report, Customer will provide to the Driver or other individual on whom a Report was obtained, an adverse action notice, including the name, address and phone number of the Provider or, if requested by Provider, the CRA's address and toll free national telephone number, a statement that the Provider or CRA did not make the adverse decision, and a notice of right to dispute the accuracy or completeness of the information furnished; and the right to an additional free consumer report from Provider or the CRA upon request within sixty (60) days; and

5.    Customer will not use any information in any Report in violation of any applicable federal or state equal employment opportunity laws or regulations.

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: ____SVP Indirect Procurement_____
(President, Vice President, Treasurer, or provide certificate of authority)

**DriverCare MVR Manager Fee Schedule**

THE FEES SET FORTH BELOW ASSUME VEHICLES ENROLLED: **1700**

| SERVICE | FEE | FEE BASIS |
|---|---|---|
| DriverCare MVR Manager Set-Up | $0.00 | One Time Fee |
| DriverCare MVR Manager & Grading | $6.00 | Per MVR Requested |
| DriverCare Education Manager | $6.00 | Per Auto or Mini Lesson |
| | $10.00 | Per Truck Lesson |
| OPTIONAL: Develop Safety Policy Module | N/A | One Time Fee |
| Safety Policy Module Assigned | N/A | Per Occurrence |

SERVICE EXPLANATIONS OR ADDITIONAL INFORMATION.

**DriverCare MVR Manager Set-Up.** Orientation Meeting with the Customer; FCRA Document Processing; Establish internal and external Communication Templates; Determine Grading Criteria; Establish Customized Parameters for Secondary Drivers; Check Driver File for Errors; Solicit Drivers for Authorization; Monitor and Report Driver Compliance; Send Reminders to Non-Compliant Drivers; and Create Secure Website to Review Results.

**DriverCare MVR Manager & Grading.** Obtaining and managing Driver authorizations and ordering MVRecords and Grading. Payable whether or not an MVRecord is actually obtained

**DriverCare Education Manager:** Assigned based on motor vehicle violations and/or customer assignment.

**Safety Policy Module:** (requires use of DriverCare Education Manager): Development of customized module that displays Customer's driving policy and requires Drivers to complete assessment questions. Customer determines pass/fail score.

**Safety Policy Module Assigned:** Billing commences when the Driver starts the module.

**Additional Amounts, Terms and Conditions**

All GEFS Fees are in addition to any and all amounts necessary to reimburse Provider for its out-of-pocket cost and expenses related directly to obtaining MVRecords and providing the program modules selected, including, but not limited to, amounts paid to the DMV(s), state and local agencies (which will vary by jurisdiction).

All GEFS Fees are based on GEFS' and Provider's standard operating procedures, handling and computer systems. Any special requirements or program changes may be subject to additional GEFS Fees or the payment of additional amounts, such as for non-standard processes, computer program modifications, or additional or advanced training. One-time fees will be billed to a courtesy unit number for the Customer's Fleet.

All GEFS Fees are subject to increase by GEFS upon 90 days notice to Customer. Use of the services provided by Provider as part of any of the services specified in this Addendum including those of any modules after the end of such 90 day period shall constitute acceptance of such GEFS Fee increase. Failure to accept a GEFS Fee increase shall be termination of this Addendum by Customer.

**Rite Aid Hdqtrs. Corp. (Customer)**

By: _____

Title: ___ SVP Indirect Procurement _____
*(President, Vice President, Treasurer, or provide certificate of authority)*

**GE Fleet Services (GEFS)**

By: _____

Title: Authorized Signatory

Effective Date: _November 5, 2012_

07.20.12

**DriverCare Risk Manager Fee Schedule**

THE FEES SET FORTH BELOW ASSUME VEHICLES ENROLLED: **1700**

| SERVICE | FEE | FEE BASIS |
|---|---|---|
| DriverCare Risk Manager Set-Up | $0.00 | One Time Fee |
| DriverCare Risk Manager Subscription Fee | $3.00 | Per Driver per Month |
| Optional: Secondary Driver Management | N/A | Per Secondary Driver per Month |

**DriverCare Risk Manager Subscription Components:**

- **Time-Weighted Risk Level Assessments.** Customizeable, time-weighted risk levels assigned to each driver in order to identify both drivers who present high-risk and drivers eligible for recognition.
- **Unlimited Online Driver Training.** Both remedial online training (triggered by an event, e.g. an accident) and supplemental training (assigned by a DriverCare Risk Manager Administrator or Manager). Secondary driver online training is not available.
- **Customized Safety Policy Module** Development of customized module that displays Customer's driving policy and requires Drivers to complete assessment questions. Customer determines pass/fail score. Includes unlimited module assignment.
- **Manager Hierarchy.** DriverCare Risk Manager bases the manager hierarchy based on the Customer's driver eligibility file. This allows managers to be included in notifications and limits access for each manager to the drivers that report to that manager.
- **Driver Recognition Program.** Creation of customized recognition criteria and annual identification of drivers to be recognized. Provides driver and manager view. Permits use of a company-specific logo for the program.
- **On-going Consultation.** Safety policy best practices and performance benchmarking in order to achieve continuous improvement.

**Secondary Driver Management Components:**

- Enhanced Secondary Driver detail view from a Primary Driver profile link.
- Customized notifications to Primary Drivers for eligibility and ineligibility to drive status for the Secondary Driver.
- Risk Level assignment can be customized for the Secondary Drivers.

**Additional Amounts, Terms and Conditions**

All GEFS Fees are in addition to any and all amounts necessary to reimburse Provider for its out-of-pocket cost and expenses related directly to obtaining MVRecords and providing the program modules selected, including, but not limited to, amounts paid to the DMV(s), state and local agencies (which will vary by jurisdiction).

All GEFS Fees are based on GEFS' and Provider's standard operating procedures, handling and computer systems. Any special requirements or program changes may be subject to additional GEFS Fees or the payment of additional amounts, such as for non-standard processes, computer program modifications, or additional or advanced training. One-time fees will be billed to a courtesy unit number for the Customer's Fleet.

All GEFS Fees are subject to increase by GEFS upon 90 days notice to Customer. Use of the services provided by Provider as part of any of the DriverCare Safety program modules after the end of such 90-day period shall constitute acceptance of such GEFS Fee increase. Failure to accept a GEFS Fee increase shall be termination of this Addendum by Customer.

Customer has also entered in to an agreement with GEFS for accident services or accident management services, which services are also outsourced by GEFS to Provider, driver-oriented services and website as well as additional Reports that combine driver accident data with data and information from MVRecords, solely with respect to Drivers who are employees and who have business email addresses.

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title: ___SVP Indirect Procurement_____
*(President, Vice President, Treasurer, or provide certificate of authority)*

GE Fleet Services

By: _____

Title: Authorized Signatory

Effective Date: _____
07.27.12


*GE Fleet Services*

01 - 107900

**Accident Services Addendum**

This Accident Services Addendum is entered into by and between Gelco Corporation, a Delaware corporation, doing business as GE Fleet Services ("GEFS"), and the undersigned ("Customer"). This Addendum forms a part of, is subject to, and shall be read and interpreted in accordance with the Master Services Agreement by and between the parties.

It is the intention of the parties that this Addendum include provisions for vehicle claims administration, appraisal services, a repair facilities network, subrogation services, assistance in obtaining temporary rental cars, and salvage disposal, with respect to vehicular loss arising from collision, fire, theft or otherwise to vehicles designated by Customer. GEFS' program is intended to minimize Customer's repair costs for damaged vehicles, driver downtime and administrative costs associated with the payment of multiple suppliers.

GEFS may in its discretion cause certain of the services hereunder to be performed by one or more third party providers (each, a "Provider") and GEFS may change any Provider in its discretion. Customer's use of vendors designated by GEFS or any Provider is a key component of cost reduction and quality.

As used herein, (1) the term "Light Duty Vehicle" means a Class 1 – 3 Vehicle with a GVW of 14,000 lbs. or less (which, for the avoidance of doubt, includes cars), (2) the term "Med/Hvy Duty Vehicle" means a Class 4 – 8 Vehicle with a GVW of 14,001 lbs. or more, (3) the term "Trailer" means a utility trailer or semi-trailer (excluding the tractor), (4) the term "Vehicle" means any vehicle enrolled in this program, (5) the term "In Network" vendor means a vendor designated by GEFS or any Provider, (6) the term "Out of Network" vendor means a vendor not designated by GEFS or any Provider and (7) the term "Out of Network" fee(s) means GEFS' administrative fee(s) for a service from, or a review provided in connection with, an Out of Network vendor.

In exchange for the mutual promises herein expressed, the parties agree to perform according to the following mutual terms and conditions:

I. GEFS shall:

A. Provide an Accident Services Driver Packet for each Vehicle included in this program.

B. Provide work authorization for the appraisal, repair, service, and temporary rentals described herein.

C. Establish and maintain individual claim files by claim number.

D. Assist Customer in obtaining temporary rental vehicles as replacement transportation while repairs are being performed on Customer's damaged Vehicles. Each rental will be in Customer's name with billing to GEFS.

E. Render to Customer a single monthly invoice for all purchases, repairs, rentals, appraisals, fees, court costs, and other fees or expenses incurred by GEFS for the services provided.

F. Assist Customer in obtaining recoveries from third parties up to, but not including, litigation due to damage to a Vehicle. If (i) any claim (excluding litigation) for damage to a Vehicle is denied by a third party's insurer and (ii) GEFS or a Provider in its discretion determines that the claim is a candidate for arbitration, GEFS or a Provider shall assist Customer in arranging for arbitration of such claim. Any amounts so recovered (through arbitration or otherwise), reduced by the subrogation fee of 20% of the recovered amount, shall be put into a holding account and paid to Customer monthly. Such holding account may be commingled

with any funds of GEFS or any Provider, and shall be held without interest payable to Customer. GEFS shall notify Customer if its driver has been reimbursed directly and bill Customer for 20% of such recovery. GEFS and any Providers disclaim any liability for, and make no representation or warranty of any kind, whether express or implied, with respect to any arbitration service or any arbitrator(s).

G. Use its best efforts to notify Customer's insurance carrier of accidents reported to GEFS; provided, however, that the failure to provide such notice shall not result in any liability to GEFS and Customer's remedy for such failure shall be limited to termination of this Addendum.

II. Customer shall:

A. Designate the Vehicles to be enrolled in this program. Customer shall designate Trailers separately from any Light Duty Vehicle and any Med/Hvy Duty Vehicle, and Customer agrees that each Trailer will be assigned its own unit number.

B. Provide GEFS with any authorities or powers of attorney required by GEFS in the performance of its obligations hereunder.

C. Provide GEFS with any information, documentation or materials it may reasonably request related to any accident and estimate of damage.

D. Direct its employees to comply with all instructions issued by GEFS under this program.

E. Pay GEFS monthly for an amount equal to the aggregate of all invoices for temporary rental vehicles, Vehicle repairs, towing, storage, appraisals, salvage, police reports, skip trace fees, certified postage charges, as well as related Vehicle expenses and any other out-of-pocket costs incurred in providing the services herein.

F. Pay GEFS an administrative fee of $15.00 for each appraisal obtained.

G. In the event of arbitration, pay GEFS the then current third party arbitration service's claim filing fee per claim.   Customer acknowledges and agrees that such arbitration will not be available unless and until Customer executes the written agreement required by the third party arbitration service.

H. If a vendor is an Out of Network vendor, pay GEFS' Out of Network fees as specified below (in addition to any invoices, related Vehicle expenses and any other out-of-pocket costs incurred in providing the services herein) (1) corresponding to the type of Vehicle and distance from the In Network vendor to the accident location ("Distance") and (2) for each repair estimate review:

I.

| Out-of-Network Fees | | |
|---|---|---|
| **Asset Type** | **Distance** | **Fee** |
| Light Duty Vehicles | 40 miles or less | $40.00 |
| Light Duty Vehicles | Over 40 miles | $20.00 |
| Med/Hvy Duty Vehicles | 100 miles or less | $100.00 |
| Med/Hvy Duty Vehicles | Over 100 miles | $50.00 |
| Trailers | 100 miles or less | $100.00 |
| Trailers | Over 100 miles | $50.00 |
| Repair estimate review | N/A | $55.00 |

J.  Pay GEFS monthly for all amounts invoiced for the services provided herein, plus a fee per reported accident as follows:

| Type of Vehicle | Fee |
|---|---|
| Light Duty Vehicles | $25.00 |
| Med/Hvy Duty Vehicles | $80.00 |
| Trailers | $80.00 |

K.  And hereby does, agree that Customer shall bear all risk of loss, theft or damage to any temporary rental vehicle.

III.  Customer acknowledges that the services provided under this Addendum are limited and are not intended to be a comprehensive accident management program. Customer is responsible for determining for itself the specific safety, compliance and regulatory requirements applicable to the operation of its Vehicles and any accidents involving the Vehicles. The services provided under this Addendum are intended to lend administrative support to reduce Customer's costs and driver downtime. Any recommendations made by GEFS or any Provider are offered in strictly an advisory capacity and are not to be construed as legal advice. Neither Provider nor GEFS assumes the role of Customer's Safety Department, Risk Management Department or Personnel Department.

*IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed by their authorized representatives.*

Rite Aid Hdqtrs. Corp. (Customer)

By: _____

Title:   SVP Indirect Procurement
*(President, Vice President, Treasurer, or provide certificate of authority)*

GE Fleet Services (GEFS)

By: _____

Title: Authorized Signatory

Effective Date: ____Novembe. 5, 2012____

## IMPORTANT NOTICE

**PLEASE NOTE:** For the Arbitration Forums Agreement ONLY, all fields must be completed, the agreement signed and the original is needed of this agreement, therefore return the original hard copy **of the Arbitration Forums Agreement ONLY (faxed, scanned or PDF versions not accepted)** to:

GE Fleet Services

ATT:  Dick Feist

Three Capital Drive

4th Floor B-3

Eden Prairie, MN 55344

All other signed agreements should be returned as directed by your Account Manager

**Automobile Subrogation Arbitration Agreement**      *Effective Date: May 2, 2005*

By signing this Agreement, the company accepts and binds itself to the following:

### Article First
*Compulsory Provisions*

Signatory companies must forego litigation and arbitrate any personal or commercial automobile damage subrogation or **self-insured** automobile damage claims through Arbitration Forums, Inc. (herein after referred to as AF).

### Article Second
*Exclusions*

No company shall be required, without its **written consent**, to arbitrate any claim or suit if:

(a) it is not a signatory company nor has given **written consent**.
(b) such claim or suit creates any cause of action or liabilities that do not currently exist in law or equity; or
(c) its policy is written on a retrospective or experience-rated basis; or
(d) any payment which such signatory company may be required to make under this Agreement is or may be in excess of its policy limits. However, an Applicant may agree to accept an award not to exceed policy limits and waive their right to pursue the balance directly against the Respondent's insured; or
(e) it has asserted a denial of coverage; or
(f) any claim for the enforcement of which a lawsuit was instituted prior to, and is pending, at the time this Agreement is signed; or
(g) under the insurance policy, settlement can be made only with the insured's consent.

### Article Third
*Decisions*

The decision of the arbitrator(s):

(a) shall be based on local jurisdictional law consistent with accepted claim practices.
(b) is final and binding without the right of rehearing or appeal. However, this does not preclude AF from correcting a clerical or **jurisdictional error** of an arbitrator(s) or AF staff.
(c) is neither **res judicata** nor **collateral estoppel** to any other claim or suit arising out of the same accident, occurrence, or event except where an applicant seeks recovery of supplemental damages as allowed under the Awards section of the rules. The decision is conclusive only of the issues in the matter submitted to the panel and only as to the parties to the arbitration. The admissibility of the decision in any other proceeding is not intended, nor should be inferred from this Agreement.

All matters concerning an arbitration proceeding shall be held in strict confidence.

### Article Fourth
*Non-Compulsory Provisions*

The parties may, with **written consent**, submit a claim:

(a) that exceeds this forum's monetary limit, or
(b) where a non-signatory wants to participate.

Once a company gives **written consent**, all Articles and Rules of this forum are applicable, and the company may not revoke its consent.

 ARBITRATION FORUMS, INC.

**Article Fifth**
*AF's Function and Authority*

AF, representing the signatory companies, is authorized to:

    (a) make appropriate Rules and Regulations for the presentation and determination of controversies under this Agreement;

    (b) determine the location, and the means by which, arbitration cases are heard;

    (c) determine qualification criteria and provide for the selection and appointment of arbitrators;

    (d) establish fees;

    (e) invite other insurance carriers, **noninsurers**, or **self-insureds** to participate in this arbitration program, and **compel** the withdrawal of any signatory for failure to conform to the Agreement or the Rules issued thereunder.

**The signatories, directors, officers, staff, agents, and AF employees, as well as the arbitrators, are not liable to and will be held harmless by any party (ies) for any negligence, act, or omission concerning the processing, administration, or hearing of any arbitration conducted under this Agreement.**

**Article Sixth**
*Withdrawals*

Any signatory company may withdraw from this Agreement by notice in writing to AF. Such withdrawal will become effective sixty (60) days after receipt of such notice except as to cases then pending before arbitration panels. The effective date of withdrawal as to such pending cases shall be upon final compliance with the finding of the arbitration panel on those cases.

IN WITNESS WHEREOF, I have hereunto set my hand on the _____ day of _____, 20_____.

*(Please check one)*

Group/Company\* _____    ☐ Insurer    ☐ Self-Insured

Signature _____ Title _____

Print Name _____ Telephone No. _____

Address _____ City/State/Zip _____

> \**If signing for group, please list companies signatory to this agreement below.*

| | |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

© 2005 Arbitration Forums, Inc.
1/05   AGR-A



AMENDMENT TO AGREEMENTS

CLIENT NO(S). 107900

THIS AMENDMENT TO AGREEMENTS (the "Amendment"), dated as of __February 8,__ 2019 (the "Effective Date"), is amending various addendums as described herein which are part of the Master Services Agreement, Client No. 107900, dated November 5, 2012, as amended ("MSA"), and the Fleet Manager Partner Agreement, Agreement No. 1636, dated July 1, 2016 ("Fleet Manager Agreement") (collectively, the Agreements"), by and between ELEMENT FLEET CORPORATION, successor in interest to Element Vehicle management Services, LLC, and formerly known as Gelco Corporation ("GEFS" or "Element") and Rite Aid Hdqtrs. Corp. ("Customer" or "Client"). Capitalized terms used but not defined in this Amendment will have the definitions ascribed to them in the Agreements.

WHEREAS, the parties agree as follows:

1.      Paragraph II.C. of the *Maintenance Management Addendum* of the MSA shall be deleted and replaced with the following:

  C. Pay Element monthly, in advance, for each Vehicle subject to the program, a fee of $3.25.

2.      Paragraph I.D. of the *Electronic Fuel Addendum* of the MSA shall be deleted and replaced with the following:

  D. Element will pay Customer a Fuel rebate of 85 basis points of fuel purchases made using the Instrument. A Fuel rebate based upon total fuel purchases, excluding charges other than fuel, will be paid quarterly and effective with the transactions billed to the Customer beginning the first full month after the effective date of this Amendment. Payment of the Fuel rebate will be in the form of a credit shown on the monthly invoice. Element reserves the right to review the rebate process and payment on an annual basis.

3.      Paragraph II.F. of the *Fleet Management Solutions Addendum* of the MSA shall be deleted and replaced with the following:

  F. Pay Element monthly, in advance, for each Vehicle enrolled in this program, a fee of $0.00.

4.      The third sentence of Paragraph I.F. of the *Accident Services Addendum* of the MSA shall be deleted and replaced with the following:

  Any amounts so recovered (through arbitration or otherwise), reduced by the subrogation fee of 18% ("Subrogation Fee") of the recovered amount, shall be put into a holding account and paid to Customer monthly.

5.      The fifth sentence of Paragraph I.F. of the *Accident Services Addendum* of the MSA shall be deleted and replaced with the following:

Element shall notify Customer if its driver has been reimbursed directly and bill Customer for the Subrogation Fee.

6.      Paragraph II.D. of the *RapidTag Addendum* of the MSA shall be revised as follows:

Leased Vehicles        $22.00 per transaction

7.      The service hours as described in Paragraph 3 of the *Fleet Manager Agreement* shall be revised to "40 service hours".

8.      Paragraph 5(a) of the *Fleet Manager Agreement* shall be deleted and replaced with the following:

(a)  For the Service to be provided by the Element Fleet Manager to Client hereunder, Client agrees to pay Element a "Service Fee" of $9,000.00 per month during the Term.  Client agrees to pay Element the Service Fees for the full Term.

9.      Except as amended by this Amendment, the Agreements shall remain in full force and effect as originally executed and subsequently amended.

10.     This Amendment may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same instrument, and the parties hereto may execute this document by signing any such counterpart. Delivery of this executed document by telecopy or electronic signature delivery system (in either case in a form acceptable to Element) shall be effective as delivery of a manually executed signature page to this document. The parties hereby agree that the electronic copy of this document retained by Element shall be the original and the authorized copy of record and the electronic record on Element's system of each schedule or exhibit shall be the original chattel paper and authorized copy of record.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed as of the date first written above.

ELEMENT FLEET CORPORATION                    RITE AID HDQTRS. CORP.

By: _____                  By: _____
Authorized Signatory                         Title: __VP, IPG__
                                             *(President, Vice President, Treasurer, or provide certificate of authority)*
                                             Print
                                             Name: __PAUL F. KRUEGER__

S:\LEGAL\CLIENT CONTRACTS\Rite Aid 107900\Amendments\amend to addendums.pricing.rev 1.29.19.docx (cac) SFOP9000037653



| | |
|---|---|
| 940 Ridgebrook Road | T. 410-771-2158  F. 410-771-2530 |
| Sparks, MD 21152 | bshannon@elementcorp.com |

April 23, 2018

RITE AID HDQRTS CORP.
30 HUNTER LANE
CAMP HILL, PA 17011
ATTENTION: JAMES P. NEWCOMER

Re: Fleet Manager Partner Agreement

Dear Mr. Newcomer:

This letter agreement relates to Fleet Manager Partner Agreement dated July 1, 2016, as amended or supplemented, (the "Agreement") by and between Rite Aid Hdqtrs. Corp. ("Client") and Element Fleet Corporation, as successor in interest to Element Vehicle Management Services, LLC ("Element").

For a period of three months, commencing ___May___ 1, 2018 and ending ___July 31___, 2018 ('the "Trial Period") Element agrees to provide an Element Fleet Manager to Client for an average of forty (40) hours a week("Full-Time Program") in replacement of the current 20 hours per week. During the Trial Period, Client agrees to pay Element a Service Fee of $12,314.56 per month.

At the end of the Trial Period, if Rite Aid agrees to continue such Full Time Program, by providing 15 days prior written notice, the parties agree to amend the Agreement accordingly.  Should Rite Aid not provide prior written notice to continue the Full-Time Program, the Element Fleet Manager program shall revert to the current 20-hours per week program at a rate of $6,000 per month as described in the Agreement.

Please indicate your approval of this agreement by (1) arranging for an officer or other authorized signatory of Client to sign below and (2) emailing a copy of the fully executed letter agreement to me at BShannon@elementcorp.com.

If you have any questions with respect to the foregoing, please feel free to call me at 410-771-2158.   Thank you.

Best Regards,

Bryan Shannon
Vice President, Sales

**ACCEPTED AND AGREED TO:**
**RITE AID HDQTRS CORP.**

By: _____

Name: Frank Ho

Title: VP, IPG
*(President, Vice President, Treasurer, or*
*please provide certificate of authority)*

SFOP9000036851
klm.4.10.18/cac.4.23.18



**FLEET MANAGER PARTNER**
Fleet Manager Partner Agreement

Agreement No. 1636

THIS FLEET MANAGER PARTNER FLEET MANAGER PARTNER AGREEMENT, dated as of _JuLY 1, 2016_____, 2016 ("this Agreement"), is entered into by and between **ELEMENT VEHICLE MANAGEMENT SERVICES, LLC**, a Delaware Limited Liability Company, with offices at 940 Ridgebrook Road, Sparks, Maryland 21152-9390 ("Element"), and **RITE AID HDQTRS CORP.**, with offices at 30 Hunter Lane, Camp Hill, PA 17011 ("Client").

WHEREAS, Client desires to enhance the fleet management and administrative services provided by Element under the terms of various fleet management services agreements between the parties; and

WHEREAS, Element has agreed to provide a Element employee or independent contractor in order to enhance the fleet management services provided to Client, pursuant to the terms and conditions as set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and mutual covenants and conditions contained in this Agreement, Element and Client, each intending to be legally bound hereby, agree as follows:

1. **Element Fleet Manager**. In exchange for a certain "Service Fee" as described in Section 5 below, Element will make available to Client a designated Element employee or independent contractor (the "Element Fleet Manager") to provide services in connection with the management of Client's various fleet programs.

2. **Element Fleet Manager Services; Performance Expectations**.

   (a)     Engagement. Client hereby engages Element to provide a Element Fleet Manager to perform certain fleet manager services as mutually agreed upon by the parties.

   (b)     Fleet Manager Partner Services. The services to be rendered by the Element Fleet Manager shall be referred to in this Agreement as the "Services." The Element Fleet Manager shall use commercially reasonable efforts to provide the Services generally described hereunder, which shall include the following:

   (i)     Managing and directing defined aspects of Client's fleet operations, as well as overseeing enforcement of the Client's fleet policy, with a goal of ensuring and improving the efficient and effective use of Client-owned and/or leased vehicles.

   (ii)     In consultation with the Client, initiating, monitoring, and recommending adjustments to the Client's fleet policy in order to maximize the fleet's

efficiency and profitability, ideally reducing the Client's liability exposure while adhering to fleet industry best practices. This includes vehicle acquisition, maintenance and remarketing as determined by cost effective life cycle analysis.

(iii)   Working in conjunction with the Client and the vehicle management company as necessary in order to manage the acquisition and disposal of Client's vehicles, as well as maintaining accurate inventories of vehicles, equipment and titles.

(iv)   In consultation with the Client, developing and implementing vehicle and equipment specifications and cost management programs, and managing fleet department budgets.

(v)   Acting as the secondary contact for Client's employees who have Client-provided vehicles (leased or owned) in matters related to the administration of the Client's fleet policy. The first point of driver contact is the fleet management supplier.

(vi)   Developing and maintaining an effective business relationship with Client personnel as necessary to provide effective fleet management services to Client and to provide recommendations for improvements in Client's fleet policy, and its management and administration.

(vii)   Acting as the primary contact with key suppliers of vehicles and related support services. When interfacing with these key suppliers, maintaining a professional relationship that facilitates cost and service in the best interests of the Client, while adhering to fleet industry best practices. The Element Fleet Manager is primarily responsible for management of policy exceptions and problem resolution with these key suppliers.

(viii)   Being knowledgeable of, and advising Client on, fleet-specific regulatory matters and related fleet policy compliance.

(ix)   Monitoring market activities, including supplier changes, program innovations and new services. Identifying cost savings, cost avoidance and improvement opportunities.

(x)   Identifying cost savings, cost avoidance and improvement opportunities.

(xi)   Keeping abreast of fleet industry best practices and looking for appropriate ways to implement these best practices for the Client.

(xii)  Occasionally travelling to Client's offices for consultation purposes, with estimated travel frequency to be on a quarterly basis, and on a Client pre-approved, as-needed basis.

(xiii)  Infrequently travelling to vendor and supplier facilities for consultation and procurement purposes, on a Client pre-approved, as-needed basis.

(xiv)  Performing other duties as may be reasonably required by Client from time to time and as mutually agreed upon by Element.

In all instances the Element Fleet Manager shall be providing recommendations and advice to Client regarding Client's fleet needs, but Client ultimately will make all material decisions related to Client's fleet, especially, but without limitation, for those areas considered out of scope.

(c)      Out of Scope. Element reserves the right to refuse to provide a service if Element in good faith believes that the requested service is beyond the scope of services contemplated under this Agreement. Services deemed out of scope will include, but not be limited to: (i) pricing and contract negotiations with motor companies and third-party suppliers; (ii) administration of DOT compliance and other regulatory matters; (iii) duties and decisions in the realm of human resources (including hiring and firing of employees and maintenance of personnel files); and (iv) approval and modification of Element invoices and other billing-related matters.

(d)      Initial Meeting to Set Performance Expectations & Standards. Client and Element recognize that the description of the Services described in Section 2(b) above are general in nature and thus subject to differing interpretations. Client further acknowledges that Element and the Element Fleet Manager are reliant upon Client to provide Client's policies, service level expectations and directions in order for the Element Fleet Manager to provide satisfactory services hereunder.  Prior to the initiation of the Services, a meeting will occur between Element and the Client to outline the deliverables, key actions, and timeframe requirements. Element and Client will agree on the policies and procedures relating to the Services; provided, however, that Client reserves the right, from time to time, to request reasonable modifications to the Services to be performed by the Element Fleet Manager under this Agreement.  All such mutually acceptable changes to the Services shall be in writing, signed by both parties, and subject to pricing adjustment.

(e)      Performance by Element Fleet Manager. The work performance and progress of the Element Fleet Manager will be monitored throughout the Term of this Agreement, based to the greatest extent upon the achievement of the agreed upon results as established at the initiation of the assignment.  From time-to-time, Element and the Client will mutually review the Element Fleet Manager's performance in providing the Services. Should Client reasonably believe that the Element Fleet Manager's standard of performance fail to meet its expectation level, then Client shall provide written notice to Element's "Point of Contact" (as defined below), and upon receipt of such notice, the parties shall promptly discuss any perceived Client

dissatisfaction and negotiate in good faith a mutually acceptable resolution or corrective action, if applicable.

(f)    <u>Element Point of Contact.</u> Element shall make available to Client from time to time a designated Element employee to act as a "Element Point of Contact" for Client to communicate any needs, special requests, or concerns regarding the Element Fleet Manager's performance under this Agreement.  By providing both positive and constructive feedback on a reasonable and timely basis to the Element Point of Contact regarding the Element Fleet Manager's performance, both parties acknowledge that any necessary corrective actions or recommended communications can be better implemented by Element.

(g)    <u>Access to Client's Confidential Information.</u> Client shall provide the Element Fleet Manager with access to Client's relevant fleet information, human resources information, and payroll information necessary for the Element Fleet Manager to perform the Services hereunder. The Element Fleet Manager shall be advised by Client not to disclose any of the Client's designated confidential information received during the course of the performance of the Services, except as directed by the Client and as necessary for the Element Fleet Manager to perform the Services hereunder.  Notwithstanding the foregoing, Client acknowledges that in the course of performing the Services, the Element Fleet Manager will disclose to Element certain Client fleet information and data that may otherwise be deemed confidential. **Provided the Element Fleet Manager performs the Services in good faith as contemplated by this Agreement, and does not knowingly and intentionally violate any confidentiality obligations imposed by Client, Client waives any claim it may otherwise assert against Element or the Element Fleet Manager for breach of confidentiality, conflict of interest, or similar tort or claim.**

3.  **Estimated Service Hours.**

(a)    The parties agree that given the size of Client's fleet as of the Effective Date of this Agreement, the Element Fleet Manager will provide an average of 20 service hours per workweek on behalf of Client during Element's normal business hours (Monday through Friday, 9:00 AM to 5:00 PM, excepting holidays).

(b)    If the average amount of service hours performed by the Element Fleet Manager by the Client exceeds 20 service hours per workweek due to either a material increase in the size of the Client's fleet volume or a material increase in the duties of the Element Fleet Manager, then at Element's election, the parties shall promptly negotiate in good faith an equitable adjustment to the Service Fee to reflect such material increase in the average service hours performed by the Element Fleet Manager.

4.  **Effective Date; Term; Hiring/Retention Period; Termination.**

(a)    <u>Effective Date.</u> The effective date of this Agreement shall be the latest date it is signed by the parties hereto (the "Effective Date").

(b)    Term. The "Term" of this Agreement shall be for a period of **6 months and month to month thereafter** following the Effective Date, unless terminated sooner as provided for elsewhere in this Agreement or extended for a longer term upon the mutual written consent of the parties.

5. **Service Fee; CPI Adjustment; Reimbursement of Travel Expenses**.

(a)    For the Services to be provided by the Element Fleet Manager to Client hereunder, Client agrees to pay Element a "Service Fee" of $6,000.00 per month during the Term. Client agrees to pay Element the Service Fees for the full Term

(b)    Element reserves the right to modify the Service Fee to account for changes in its cost to provide the Services, including but not limited to changes in the Element Fleet Manager's compensation. In addition, the Service Fee specified in this Agreement shall be subject to an upward adjustment on January 1 (the "Adjustment Date") of each year during the Term of this Agreement. The Service Fee in effect immediately prior to the Adjustment Date will be increased by the percentage increase in the Consumer Price Index during the one (1) year period ending on September 30 of the year preceding the Adjustment Date. For purposes of this Agreement, "Consumer Price Index" means the U.S. City Average Consumer Price Index for Urban Wage-Earners and Clerical Workers as published by the Bureau of Labor Statistics of the United State Department of Labor. If such index is discontinued or revised, the most comparable measure of inflation published by the U.S. government will be substituted to make the adjustment.

(c)    Provided Client has in each instance pre-approved the travel itinerary of the Element Fleet Manager, Client will reimburse Element for all submitted and reasonable travel expenses (rooms, meals, airfare/transportation costs, and incidentals) incurred by the Element Fleet Manager while performing Services on behalf of Client under this Agreement.

(d)    Except to the proportionate extent of any negligence or willful misconduct by Element, Client agrees to defend, indemnify and hold Element and all of its affiliates, agents and employees harmless from any and all damages, losses, judgments, claims, liabilities and expenses of whatsoever kind or nature, including attorneys fees, incurred by Element arising out of the performance by Element or the Element Fleet Manager of its obligations under this Agreement or as a direct result of Client 's negligence or intentional misconduct. Client further agrees to indemnify and hold harmless Element for any and all damages, losses judgments, claims, and expenses including attorneys fees, incurred by Element as a result of claims made against the Manager by any Client employee, except to the extent that such claims are the direct result of the Fleet Manager's or Element's negligence of intentional misconduct.

6. **Monthly Invoices.** Element will render to Client monthly invoices detailing the monthly installment of the Service Fee, billed in advance, along with any permitted travel expenses incurred by the Element Fleet Manager on behalf of the Client. All amounts shown on any invoice shall be payable on the date and at the location specified in the Invoice. If any amount shown on an invoice is not paid within fifteen (15) days after the date of the invoice, interest shall accrue

and be payable on demand on such unpaid amount both before and after judgment, from the date due until paid in full at an annual rate of interest equal to eighteen percent (18%).   Any obligations of Client pursuant to this Agreement shall survive any termination of this Agreement.

7. **Element's Responsibilities as Provider of the Element Fleet Manager.**   The Element Fleet Manager will receive his/her direction from Element, which, as provider of the Element Fleet Manager, shall be responsible for the following:

- Hiring or retaining, training, disciplining, evaluating and terminating the Element Fleet Manager.
- Direct payment and administration of the Element Fleet Manager's salary/contractor fee, applicable benefits, and applicable taxes.
- Setting the hours of Work for the Element Fleet Manager
- Scheduling of time off for the Element Fleet Manager.
- Providing a workspace, telephone, office supplies, computer, printer and facsimile machine to be utilized by the Element Fleet Manager.
- Providing access to and use of Element's databases and fleet management systems and applicable software to the Element Fleet Manager.
- Any other mutually agreed upon responsibilities and/or costs.

8. **Unavailability of Element Fleet Manager.**   In the event of any absence by the Element Fleet Manager, including but not limited to vacation time, holidays, personal leave or short term disability leave, Element shall promptly endeavor to provide coverage for the Element Fleet Manager at its Sparks, Maryland facility. Additionally, if the Element Fleet Manager resigns or is unable to continue providing Services for any reason through no fault of Client, or if Client requests a replacement Element Fleet Manager, Element shall promptly endeavor to provide a replacement Element Fleet Manager under the same terms and conditions as are set forth in this Agreement. Notwithstanding the foregoing, Client acknowledges that from time to time unforeseen events may occur that may result in the Element Fleet Manager (and Element coverage substitute) being temporarily unavailable to provide Services.   Client further acknowledges that such temporary unavailability shall not be grounds for Client to provide notice of default under Paragraph 4(f).

9. **Change in Fleet Manager.** Element will have the option, but not the obligation, to appoint a replacement Element Fleet Manager under the following circumstances: (i) Client requests appointment of a replacement Fleet Manager; (ii) Client defaults under this Agreement; (iii) the then-current Element Fleet Manager resigns from his or her employment with Element; and (iv) Element determines to appoint a replacement Element Fleet Manager in its sole business judgment, provided however that Element will consult with Client prior to making such determination.

10. **Non-Solicitation Clause.**  It is understood and agreed that the Element Fleet Manager shall not be employed by Client and will not be eligible for the benefits and services provided by Client to its own employees.   Client acknowledges that Element shall have invested

considerable amounts of time and money in recruiting, hiring/retaining, and training the Element Fleet Manager. Therefore, Client agrees not to solicit or hire, directly or indirectly, as an employee, consultant, independent contractor or otherwise, any Element Fleet Manager who performed Services for the Client, without the prior written consent of Element, at anytime during the Term of this Agreement plus one (1) year thereafter. If Client violates the conditions set forth in this Section 10, then Client shall pay to Element, who shall accept as liquidated damages and not as a penalty, for such breach, an amount equal to two (2) times the annual salary of the Element Fleet Manager hired by, or allowed to work for, Client, in violation of the terms of this Section 10.

11. **Compliance with Laws.** Element shall comply with all federal, state, and local laws, rules and regulations pertaining to the employment or retention of the Element Fleet Manager under this Agreement.

12. **Disclaimer of Warranties.** CLIENT ACKNOWLEDGES AND AGREES THAT Element MAKES NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO GOODS AND SERVICES PURCHASED IN CONNECTION WITH THIS AGREEMENT AND MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

13. **Limitation of Liability.** In no event shall Element be liable to Client for any amounts representing loss of profits, loss of business or for indirect, special, consequential, exemplary or punitive damages resulting from services provided by the Element Fleet Manager pursuant to this Agreement, even if advised of the possibility of such damages or loss. Client agrees that Element's liability to Client under this Agreement, regardless of the form of action, whether in contract, tort, including negligence, strict liability or otherwise, shall not exceed the total amounts paid by Client to Element for Services performed by the Element Fleet Manager.

14. **Assignment of Rights.** Element may from time to time assign all or any part of its right, title, and interest in this Agreement, including all monies and claims for monies due and to become due to Element under the Agreement. The Client's obligation to pay such monies to assignees, upon prior written notice to Client by Element, shall not be subject to any claim, defense or setoff that Client may have against Element or any other party whether such claim, defense or setoff shall have accrued or arisen before or after Client shall have received such notice.

15. **Notices.** All notices which either party hereto is required or may desire to give to the other shall be given by addressing the written notice to the other party at the addresses noted in the introductory paragraph to this Agreement, or at such other address as may be designated in writing by any such party in a notice to the other given in the manner prescribed in this section. All such notices shall be sufficiently given when the same shall be either (1) deposited properly addressed, via U.S. certified mail, return receipt requested, postage prepaid, and the date of attempted delivery, refusal or receipt of said notice, whichever shall occur first, shall be the date of the giving of such notice, or (2) delivered by reputable overnight carrier, such as FedEx, UPS Next Day Air, or Airborne Express, and the next business day following receipt of the overnight delivery shall be the date of giving of such notice.

16. **Miscellaneous.**  The parties agree that this writing constitutes the entire agreement between them regarding the subject matter hereof and supersedes all prior oral and written agreements and understandings related thereto.  Any modification of this Agreement shall be in writing and signed by the parties hereto.  The failure of either party at any time to require performance of any provision of this Agreement shall not affect that party's right at a later time to enforce the provision.  In the event that any provision of this Agreement shall be held invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of the parties to the Agreement and their respective permitted successors and assigns.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Maryland.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date written below their respective signatures.

RITE AID HDQTRS CORP.

By: _Frank Ho_

Print Name: _Frank Ho_

Title: _Vice President_

Date: _7/25/16_

ELEMENT VEHICLE MANAGEMENT SERVICES, LLC

By: _____
          Vice President

Print Name: _Paul Danzeson_

Date: _8/22/16_

Totalfleet ultimate.rev 11.3.14
Dmg 4177559 7/8/16 (ld3)