| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**STARK & STARK, P.C.**<br>Joseph H. Lemkin, Esq.<br>100 American Metro Blvd.<br>Hamilton, NJ 08619<br>(609) 791-7022 (Telephone)<br>(609) 895-7395 (Facsimile)<br>jlemkin@stark-stark.com<br>and<br>Thomas S. Onder, Esq.<br>100 American Metro Blvd.<br>Hamilton, NJ 08619<br>(609) 219-7458 (Telephone)<br>(609) 895-7395 (Facsimile)<br>tonder@stark-stark.com |

| | |
|---|---|
| In Re:<br><br>New Rite Aid, LLC, *et al*.,<br><br>            Debtors. | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>Hearing Date: November 24, 2025<br><br>Docket # 3215 |

### LIMITED OBJECTION TO CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN AND CROSS-MOTION TO ALLOW AND COMPEL PAYMENT OF ADMINSTRATIVE EXPENSE CLAIMS

Santiago Holdings II, LLC, Levin Management Corporation; MAG II Morrell Plaza, LP; Trusts Under the Will of Janice Levin; Robert Marin and Celeste de Schulthess Marin, Trustees of the Robert Marin and Celeste de Schulthess Marin Family Trust (SPW) UDT; Felos Associates, LLC; Joseph Murphy Corporation; Yoko C. Gates Trust; SADG-1 Limited Partnership; SADG-3 Limited Partnership; SADG-4 Limited Partnership; RAP Hamlin LP, RAP Dallas LP; Ald Capital PA; LLC Bethel Park Library, LLC; Red Lion Broadway, LLC; 569 Broadway Associates; Mt. Lebanon Cooke, LP (collectively the "Claimants"), by and through undersigned counsel, hereby submits this Objection to confirmation of the Debtors' Second Amended Joint Chapter 11 Plan (the "Plan") (Docket No. 3215) and also this cross-motion to allow and compel payment of the Claimants filed Administrative Expenses Claims, and respectfully states:

## I. Background

1. Santiago Holdings II, LLC ("Santiago"), one of the collective Claimants, is the owner of 959 Crenshaw Boulevard, Los Angeles, CA (the "Premises") a retail location previously occupied and operated by one of the Debtors from 2000 until November 2023 pursuant to a lease between Santiago and Rite Aid (the "Lease"). The Premises were insured through a policy issued by Zurich for the Debtor (the "Zurich Policy"). Under Article 14(b) of the Lease, Santiago became a named insured under the Zurich policy.

2. In the Debtor's prior bankruptcy, on or about March 4, 2024, Santiago filed a Motion to for Relief from the Automatic Stay relating to damages to the Premises, which were sustained prior to the Debtor's rejection of the Lease.

3. Additionally, in Debtor's prior bankruptcy, on or around December 22, 2023, Santiago filed a post-petition Application for Payment of Administrative Expense Claims ("Administrative Claim"). The basis of the Administrative Claim was that Rite Aid continued to be in possession and control over the Premises until November 30, 2023, prior to Lease rejection. During the time of Rite Aid's possession and control of the Premises between the petition date and the rejection/turnover of the Premises, the Premises were vandalized extensively because of Rite Aid's failure to secure the Premises, causing Santiago significant damages.

4. On February 18, 2025, the Court entered an Order (the "Feb. 18th Order") granting partial relief from the automatic stay, which provides:

> *Movant [Santiago] is granted limited relief from the [Stay] for the sole purpose of providing notice to Debtor's insurance carriers, including their agents, affiliates, successors and assigns (collectively, the "Insurers") regarding Movant's alleged administrative claims against the Debtor concerning damages allegedly causes to Movant's premises post-petition and prior to rejection of Movant's lease…*
> *The relief granted herein is without prejudice to Movant's right to seek additional relief from this Court to proceed with its alleged claims against Debtor's Insurers, beyond the relief granted herein and without prejudice to Debtor's right to dispute any additional relief against Debtor's Insurers beyond providing the notice herein.*

5. Thereafter, on June 11, 2024 upon request for supplemental relief by Santiago, this Court entered an Amended Order Resolving Motion for Relief from the Automatic Stay and Granting Waiver of

stay Pursuant to Fed. R. Bankr. P. 4001(a)(3) (the "Amended Order" and collectively with the Feb. 18th Order, the "Orders"), which provided, among other things:

> *The February 18th Order is hereby amended for the sole purpose of authorizing Movant to engage in mediation with Debtor's insurance carriers, including their agents, affiliates, successors and assigns (collectively, the "Insurers") regarding Movant's alleged administrative claims against the Debtor concerning damages causes to Movant's premises post-petition and prior to rejection of Movant's lease (the "Alleged Claim"). Except as it relates to a mediation between the Movant and the Insurers, nothing herein shall constitute or operate as a waiver or modification of the automatic stay with respect to the Alleged Claim.*

6. In reliance upon the Orders, Santiago has endeavored to engage with Zurich to resolve its claims against the Debtor. Santiago has expended substantial time and resources to pursue its claims vis-à-vis Debtor's insurance and is concerned that the Plan may exculpate Zurich from its obligations to Santiago.

7. While the Plan contains certain language indicating that insurance rights are preserved, Claimants file this Objection out of an abundance of caution to ensure the Plan's releases, exculpations, and injunctions do not impair any of Claimants' ability to pursue insurance proceeds, including naming the Debtors as nominal defendants if necessary.

8. In addition, the Claimants, object to confirmation because the Plan fails to demonstrate that all administrative expense claims will be paid in full, as required by 11 U.S.C. § 1129(a)(9), thereby rendering the Plan not confirmable.

9. Further, as noted below, Claimants cross-move for allowance and payment of their filed Administrative Expense Claims, immediately.

## II. LIMITED OBJECTION

**A.    Claimants Rights to Pursue Insurance Claims Must be Preserved**

10. It is settled that a bankruptcy plan should be as "neutral as possible." *In re AIO US, Inc.,* No. 24-11836 (CTG), 2025 WL 242630, at *15 (Bankr. D. Del August 21, 2025). Requiring that a bankruptcy plan is "neutral" – that it neither increases or decreases the rights and obligations of the parties to the insurance contract – ensuring that bankruptcy cases will not be filed to "seek a tactical advantage

over another party." *Id.* At *16. *See also, In re Boy Scouts of Am.* 137 F.4th 126, 164-165 (3d Cir. 2025)(citing *In Combustion Engineering, Inc.* 391 F.3d. 190, 218 (3d Cir. 2004)("[A] plan cannot be confirmed when it incorporates provisions that impermissibly impairs counterparty's rights.")); *In re MF Global Holdings Ltd,* 469 B.R. 177, 194-195 (Bankr. S.D.N.Y. 2012)("The filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy."); *In re Danario,* 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001)("[T]he owner of an insurance policy cannot obtain greater rights to the proceeds of that policy…by merely filing a bankruptcy petition.")(internal citations omitted").

11. While the Plan includes language suggesting that insurance rights are not impaired or prejudiced in any manner, Claimants are all concerned that the Plan's broad releases, exculpation provisions, and injunctions may be interpreted by insurers to argue that their obligations are limited or impaired and somehow impact Claimants as either additional insureds and/or some other allowable party to recovery under the insurance policies.

12. To avoid ambiguity and prevent future disputes, Claimants request the following clarifying language be added to the Confirmation Order:

> *For the avoidance of doubt, nothing in the Plan, the Plan Supplement, the Confirmation Order, or any release, injunction, or exculpation shall impair, reduce, release, or otherwise affect the liability of any insurer or the rights of any claimant to pursue insurance proceeds. Claimants may name the Debtors as nominal defendants solely for purposes of accessing applicable insurance.*

**B.    The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(9)**

13. The Plan does not demonstrate that all Administrative Expense Claims will be paid in full. Section 1129(a)(9)(A) requires that all allowed administrative expense claims be paid in full, in cash on the Effective Date, unless the holder agrees otherwise.

14. Claimants are concerned that:

    a.    The Plan documents fail to present sufficient evidence or projections demonstrating that the Debtors will have adequate funds to pay all Administrative Expense Claims;

    b.    The Plan Supplement does not include adequate detail regarding reserves, sources of payment, or estimates of administrative liabilities; and

    c.    Debtors' cumulative obligations and ongoing professional fees appear to exceed available liquidity absent additional explanation.

15. Because the Debtors bear the burden of establishing compliance with § 1129(a)(9), and because the current record fails to show that all administrative claims will be paid in full, confirmation must be denied, unless and until the Debtors provide:

    a.  complete schedule of expected administrative claims;

    b.  evidence of sufficient funding to pay such claims; and

    c.  clarifying language establishing that administrative claims will be paid prior to or on the Effective Date.

### III.   CROSS-MOTION TO ALLOW AND COMPEL PAYMENT OF FILED ADMINISTRTIVE CLAIMS FOR UNPAID RENT

16. Claimants[1] each file this cross-motion for allowance and payment of their filed administrative expense claims for unpaid rents. See attached as Exhibit A the filed administrative claims.

17. Section 365(d)(3) provides:

*The [debtor-in-possession] shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.*

See, 11 U.S.C. § 365(d)(3).

18. The United States Court of Appeals for the Third Circuit (the "Third Circuit") holds that pursuant to 11 U.S.C. § 365(d)(3), a debtor-in-possession is required to "perform obligations as they become due under the terms of the lease" without proration by the petition date. *Centerpoint Props. v.*

---

[1] Santiago Holdings II, LLC does not file an administrative expense claim as its property was rejected pre-petition in the prior case.

*Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001).

19. The Third Circuit also holds that the existence of 11 U.S.C. § 365(d)(3) liability does not prevent a landlord from seeking allowance of an administrative expense claims under 11 U.S.C. § 503(b). *In re Goodys' Family Clothing Inc.*, 610 F.3d 812, 819–20 (3d Cir. 2010). Section 503(b) provides:

> *After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—*
> *(1)(A) the actual, necessary costs and expenses of preserving the estate . . . .*

See, 11 U.S.C. § 503(b)(1)(A).

20. "For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession. . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of its business." *Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (alterations in original) (quoting *Cramer v. Mammoth Mar, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)). Provided occupancy of rented premises provides a benefit to the estate, "[w]hen third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of [administrative claims] plainly require that their claims be afforded priority." *Goodys' Family Clothing*, 610 F.3d at 818–19 (alterations in original) (quoting *Mammoth Mart*, 536 F.2d at 954). "If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (internal citations omitted).

21. Based upon the proofs set forth in the Administrative Claims filed by Claimants, relating to unpaid post-petition lease obligations, the following claims should be allowed, and Debtors should be

compelled to pay obligations that came due post-petition immediately, but no later than the Effective Date:

| Claimant | Filed Administrative Claim Amount |
|---|---|
| MAG II Morrell Plaza, LP | $30,981.27 |
| Trusts Under the Will of Janice Levin | $38,338.52 |
| Robert Marin and Celeste de Schulthess Marin, Trustees of the Robert Marin and Celeste de Schulthess Marin Family Trust (SPW) UDT | $30,814.18 |
| Felos Associates, LLC | $1,500 |
| Joseph Murphy Corporation | $175,801.59 |
| Yoko C. Gates Trust | $45,866.14 |
| SADG-1 Limited Partnership | $13,884.38 |
| SADG-4 Limited Partnership | $18,680.08 |
| RAP Hamlin LP, RAP Dallas LP | $10,999.63 |
| Ald Capital PA LLC | $32,523.99 |
| Bethel Park Library, LLC | $23,677.14 |
| Red Lion Broadway, LLC | $19,245.67 |
| 569 Broadway Associates | $18,188.58 |
| Mt. Lebanon Cooke, LP | $45,118.25 |

**WHEREFORE**, Claimants requests that this Court enter an order that: (i) approves confirmation of the Plan only as consistent with the foregoing; and (ii) grants Claimants such additional relief as this Court deems just and equitable.

Respectfully submitted,

**STARK & STARK**
A Professional Corporation

Date: November 19, 2025

/s/ *Joseph H. Lemkin*
Joseph H. Lemkin, Esq.
And
*/s/ Thomas S. Onder*
Thomas S. Onder, Esq.