| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>Robert L. LeHane<br>Jennifer D. Raviele (admitted *pro hac vice*)<br>Connie Y. Choe<br>**KELLEY DRYE & WARREN LLP**<br>3 World Trade Center<br>175 Greenwich Street<br>New York, NY 10007<br>Tel:  212-808-7800<br>Fax: 212-808-7897<br>Email:  rlehane@kelleydrye.com<br>            jraviele@kelleydrye.com<br>            cchoe@kelleydrye.com<br><br>-and-<br><br>7 Giralda Farms, Suite 340<br>Madison, NJ 07490<br>Tel: 973-503-5900<br><br>*Counsel for Brixmor Property Group, East Park Development, LLC, First Washington Realty, LLC, Lerner Properties, NewMark Merrill Companies, NNN REIT, Inc., and Regency Centers, L.P.* | |
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>               Debtors.[1] | Chapter 11<br><br>Case Number: 25-14861 (MBK)<br><br>(Jointly Administered)<br><br>Docket Nos. 3215, 3219 |

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, PA 17319.

**LIMITED OBJECTION OF BRIXMOR PROPERTY GROUP, EAST PARK DEVELOPMENT, LLC, FIRST WASHINGTON REALTY, LLC, LERNER PROPERTIES, NNN REIT, INC., NEWMARK MERRILL COMPANIES, AND REGENCY CENTERS, L.P. TO CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF NEW RITE AID, LLC AND ITS DEBTOR AFFILIATES**

Brixmor Property Group, East Park Development, LLC, First Washington Realty, LLC, Lerner Properties, NewMark Merrill Companies, NNN REIT, Inc. and Regency Centers, L.P. (each, a "Landlord" and, collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, submit this limited objection (the "Objection") to confirmation of the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* (the "Plan").[2] In support of this Objection, the Landlords respectfully state as follows:

## BACKGROUND

1. On May 5, 2025, New Rite Aid, LLC and its affiliates (the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. To date, the Debtors have continued to manage their businesses as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtors leased retail space from the Landlords pursuant to written leases (as amended, the "Leases"), at certain locations owned or managed by the Landlords (the "Leased Premises"). The Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

---

[2] Docket No. 3215. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Plan.

2

3.  On November 11, 2025, the Debtors filed the Plan and related disclosure statement (the "Disclosure Statement").[3] Also on that date the Debtors filed the *Revised Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* (the "Notice of Confirmation Hearing").[4] The Notice of Confirmation Hearing sets the hearing to consider the adequacy of the Disclosure Statement and confirmation of the Plan for November 24, 2025 at 10:00 a.m. (ET), with objections due by November 19, 2025 at 4:00 p.m. (ET).

4.  Although the Landlords have raised the issues presented herein with Debtors' counsel, they remain unresolved. Accordingly, while the Landlords hope to reach a consensual resolution, they expressly reserve all rights to present and argue the issues raised herein at the confirmation hearing.

## OBJECTION

### I. Confirmation Of The Plan Should Neither Impair Nor Diminish Landlords' Setoff Rights Pursuant To The Bargained-For Protections In Their Leases

5.  The Debtors seek to enjoin the Landlords from asserting their setoff rights provided pursuant to the bargained-for protections in the Leases. Specifically, the Plan provides that creditors may not exercise a right of setoff after the proposed Effective Date unless they file a motion prior to the Effective Date. The Debtors' attempt to extinguish the right of setoff is impermissible and particularly inappropriate as it pertains to the Landlords.

6.  In pertinent part, Art. § X.F of the Plan provides:

> "Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation

---

[3] Docket No. 3216.

[4] Docket No. 3220.

> Order, all Entities who have held, hold, or may hold claims, Causes of Action, or Interests that have been released pursuant to the Debtor Release, the Third-Party Release, or another provision of the Plan (including the release of Liens pursuant to the Plan), or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors (or their Affiliates), the Reorganized Debtors (or their Affiliates), the Wind-Down Debtors or Liquidating Trust (or their Affiliates), the Exculpated Parties, or the Released Parties: …(d) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise."

7.   Confirmation of the Plan cannot and should not abrogate a creditor's setoff right. According to section 553(a) of the Bankruptcy Code, "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset" mutual pre-petition debts. 11 U.S.C. § 553(a). Section 553 takes precedence over the discharge provided by section 1141 and confirmation of a chapter 11 plan does not abrogate a party's setoff rights. *In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1274-1277 (9th Cir. 1992); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001); *In re Davidovich*, 901 F.2d 1533, 1539 (10th Cir. 1990).

8.   Notwithstanding the language of section 553, certain courts have held that a right of setoff can be waived by failure to object to a plan of reorganization that specifically seeks to prohibit the exercise of setoff. *See*, *e.g.*, *In re Continental Airlines, Inc.*, 134 F.3d 536, 542 (3rd Cir. 1998). Accordingly, the Landlords hereby object to the Plan provisions that seek to prohibit the Landlords' rights of setoff and respectfully request that the following language be included in Article § V.A of the Plan:

4

>Notwithstanding anything to the contrary herein, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to any Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy law or non-bankruptcy law, including, but not limited to, the (i) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors, under the Plan, (ii) assertion of rights or setoff or recoupment, if any, in connection with the claims reconciliation process, or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Reorganized Debtors or the Wind-Down Debtors.

## II. To Confirm The Plan, The Debtors Must Satisfy The Requirements Of Section 1129 Of The Bankruptcy Code, Including Providing For Payment In Full Of All Administrative Claims Unless The Applicable Creditor Agrees To Different Treatment

9. To confirm the Plan, the Debtors must satisfy the requirements of section 1129 of the Bankruptcy Code. Specifically, section 1129(a)(11) is the feasibility standard. It requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

10. Further, section 1129(a)(9) of the Bankruptcy Code provides that the Court shall confirm the Plan only if, among other things:

>[E]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim…

11 U.S.C. § 1129(a)(9).

11. The Debtors bear the burden of establishing that each of the requirements for plan confirmation are satisfied. *See, e.g., In re Star Ambulance Serv.*, LLC, 540 B.R. 251 (Bankr. S.D. Tex. 2015); *see also In re Save Our Springs (S.O.S.) All., Inc.*, 388

5

B.R. 202, 215–16 (Bankr. W.D. Tex. 2008) ("The proponent of a plan bears the burden of proving confirmation") (citing *In re Briscoe Enter., Ltd., II*, 994 F.2d 1160, 1165 (5th Cir. 1993)).  This includes the burden to establish that the holders of Administrative Claims have indeed consented to alternative treatment, as required under section 1129(a)(9) of the Bankruptcy Code.  *See In re Scott Cable Commc'ns, Inc.*, 227 B.R. 596, 600 (Bankr. D. Conn. 1998) (internal citations omitted) ("The [C]ode's confirmation scheme elevates allowed administrative claims to a dominant priority such that unless the holders agree to a different treatment, a plan cannot be confirmed without full payment of those claims even if there are no estate assets to pay them").

12.     Administrative Claims include claims under section 507(a)(2) of the Bankruptcy Code, and as such, must be paid in full for the Debtors to confirm the Plan, unless the applicable creditor has agreed to different treatment.  The Landlords have not and do not consent to different treatment for any applicable Administrative Claim; therefore, their Administrative Claims must be paid in full.

13.     As proposed, it is unclear whether the Administrative/Priority Claims Reserve will contain sufficient funds to satisfy all Administrative Claims and Priority Claims, particularly when the Claims Bar Date will not occur until thirty (30) days after the Plan becomes effective. Plan, § I.A.32.  The Debtors have not met their burden to establish that the Plan satisfies the requirements of sections 1129(a)(9) and 1129(a)(11) of the Bankruptcy Code.  Unless and until the Debtors satisfy their burden, confirmation of the Plan should be denied.

### III. Neither The Confirmation Order Nor The Plan Should Modify Or Diminish The Debtors' Obligations Pursuant To The Final Financing Order To Pay Stub Rent And Postpetition Lease Obligations

14. The Final Financing Order embodies a settlement among the Debtors, the Landlords, and other counterparties regarding the treatment of Stub Rent. The Landlords are entitled to payment of Stub Rent Claims and Post-Petition Obligations pursuant to Paragraph 49 of the Final Financing Order.[5] The agreement entered by the Court requires the Debtors to (i) pay postpetition contractual rent obligations to the Landlords for the period of the Petition Date through May 31, 2025, and (ii) continue to comply with section 365(d)(3) of the Bankruptcy Code, including timely payment of all postpetition obligations arising under the Leases.

15. Accordingly, neither the Confirmation Order or Plan should modify or diminish the Landlords' rights to payment of Stub Rent Claims or Post-Petition Lease Obligations by the Debtors, and clarifying language should be added to ensure the same.

16. To preserve the Landlords' rights and the Debtors' obligations under the Final Financing Order, Paragraph 107 of the Confirmation Order should be modified to add the following bolded language.

> For the avoidance of doubt, the Debtors shall make no payment on account of any Stub Rent Claim that is not an Allowed Claim by operation of the Stub Rent Claims Cap pursuant to the terms of the Final Financing Order and this paragraph 110; ***provided, however***, that the **Debtors' obligations to pay Stub Rent Claims and Post-Petition Lease Obligations, as set forth in paragraph 49(a) and (f) of the Final Financing Order, shall remain in full force and effect.**

---

[5] *Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 2536].

7

17. Further, Article II.A of the Plan should be modified to include the following bolded language:

> Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request on or before the Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Liquidating Trust, Wind-Down Debtors, the Reorganized Debtors, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtors, the Liquidating Trust, the Wind-Down Debtors, the Reorganized Debtors, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity. **Notwithstanding anything to the contrary herein, the Debtors' Stub Rent and other Post-Petition Lease Obligations, as set forth in paragraph 49 of the Final Financing Order, shall remain in full force and effect.**

### IV. Neither The Confirmation Order Nor The Plan Should Impact The Agreements Of The Parties As Provided In Applicable Lease Assignment Orders

18. The Landlords carefully negotiated language in various orders entered by the Court in connection with the assumption and assignment of their Leases. Such orders also provide for the rights of Landlords to pursue any potential claims against the Debtors' insurance policies. For example, the following language was included in Paragraph 6 of the *Tenth Order Approving the Assumption and Assignment of Unexpired Lease To Dollar Tree Stores, Inc.* [Docket No. 3222]:

> Notwithstanding anything to the contrary in this Order, nothing shall impair or prejudice the rights of the landlord to the Real Property Lease with respect to the Debtors' available insurance coverage for third-party claims asserted in connection with the Debtors' use and occupancy of the premises subject to the Real Property Lease for events that occurred prior to the Lease Assignment Date, subject in all respects to the Lease and applicable law.

19. The Landlords request that the Confirmation Order include language expressly preserving their rights with respect to the Debtors' available insurance coverage for

8

third-party claims arising from the Debtors' use and occupancy of premises under a Lease that was assumed and assigned, including for events that occurred prior to the Lease Assignment Date.

20. Further, certain cure disputes may arise in connection with the assumption and assignment of a Landlord's lease(s). Any disputes currently pending, or that may arise under a separate assignment process, should be preserved, and nothing in the Confirmation Order or Plan should prejudice the Landlords' rights with respect to such disputes.

21. Considering the foregoing, the following language should be added to the Confirmation Order preserving the rights of parties with respect to lease assignment and cure:

> Notwithstanding anything to the contrary herein, entry of this Confirmation Order shall not prejudice any assumption, assumption and assignment, rejection, or Cure Cost disputes that are pending as of such entry or are subject to the Subsequent Objection Deadline. The applicable parties' rights with respect to such disputes are fully reserved, and any disputes shall be addressed and, if applicable, heard pursuant to the procedures set forth in the Plan, including Article V.C thereof.

### V. The Rejection Bar Date Should Not Occur Earlier Than the Plan Effective Date

22. There was no general bar date established in these chapter 11 cases. The Plan, however, does provided for a Claims Bar Date for, among other things, certain administrative and priority claims. Article V.B of the Plan proposes that all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases ("Rejection Claims") be filed with the Bankruptcy Court "within 30 days after the earlier of (a) the Claims Bar Date, (b) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (c) the effective date of such rejection, or (d) the Effective Date."

9

23. The proposed bar date for Rejection Claims effectively retroactively sets the deadline for rejection damages claims, requiring Landlords to submit claims within 30 days of the entry of any rejection order - many of which were entered at various points throughout these Chapter 11 Cases. Accordingly, the Landlords should be afforded sufficient time to prepare and file their Rejection Claims. The Landlords request that Article V.B of the Plan be revised, in relevant part, as follows:

> Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases for any Claims which would be subject to the Claims Bar Date pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (a) the Claims Bar Date, (b) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (c) the effective date of such rejection, or (d) the Effective Date.

## **RESERVATION OF RIGHTS**

24. The Landlords reserve the right to amend and/or supplement this Objection by asserting any and all other claims or objections to Plan confirmation, at or before the confirmation hearing.

25. To the extent not inconsistent with this Objection, the Landlords join in the objections of other landlords and contract counterparties to the Plan.

[*Remainder of Page Intentionally Blank*]

## CONCLUSION

**WHEREFORE,** Landlords request that the Court enter an order: (a) denying confirmation of the Plan unless modified as set forth herein; and (b) granting such other and further relief as the Court deems just and proper.

Dated: November 19, 2025

**KELLEY DRYE & WARREN LLP**

By: /s/ Robert L. LeHane
Robert L. LeHane
Jennifer D. Raviele (admitted *pro hac vice*)
Connie Y. Choe
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Email: rlehane@kelleydrye.com
jraviele@kelleydrye.com
cchoe@kelleydrye.com

-and-

7 Giralda Farms, Suite 340
Madison, NJ 07490
Tel: (973) 503-5900

*Counsel for Brixmor Property Group, East Park Development, LLC, First Washington Realty, LLC, Lerner Properties, NewMark Merrill Companies, NNN REIT, Inc., and Regency Centers, L.P*