**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 17 & 473** |

**NOTICE OF (I) SUCCESSFUL BIDDER, (II) ADJOURNMENT OF INTANGIBLE ASSETS AUCTION, AND (III) FILING OF PROPOSED ORDER (A) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (B) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on May 21, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice With Respect Thereto, and (VII) Granting Related Relief* [Docket No. 473] (the "Bidding

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and soliciation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Procedures Order") by which the Court approved procedures (such procedures, the "Bidding Procedures") for the sale or sales of all, substantially all, or any portion of the Assets.[2]

**PLEASE TAKE FURTHER NOTICE** that on May 9, 2025, the Debtors filed the *Notice of Filing Proposed Sale Order* [Docket No. 186] (the "Form Sale Order").

**PLEASE TAKE FURTHER NOTICE** that on October 17, 2025, the Debtors filed the *Notice of Sale by Auction for Debtors' Intangible Assets* [Docket No. 2918] (the "Auction Notice"), served the Auction Notice on the Notice Parties, and posted the Auction Notice on their case website. The Auction Notice notified interested parties of the Debtors' intention to conduct an auction for the sale of certain intangible assets, including, without limitation, trademarks, domain names, consumer loyalty data, mobile applications, and rights in certain social media accounts (collectively, the "Intangible Assets") and that an auction for the Intangible Assets (the "Intangible Assets Auction") may be held on November 6, 2025 at 12:00 p.m. (prevailing Eastern Time) by videoconference.

**PLEASE TAKE FURTHER NOTICE** that on November 6, 2025, pursuant to the Auction Notice and Bidding Procedures Order, the Debtors conducted the Intangible Assets Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors, in consultation with the Consultation Parties, have selected Rite Aid LLC as the successful bidder with respect to certain of the Debtors' Intangible Assets (the "Successful Bidder" and such bid, the "Successful Bid"). The final form of the purchase agreement (the "APA") is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Intangible Assets Auction has been adjourned *sine die*. The Debtors can reconvene the Intangible Assets Auction at any time upon notifying the applicable Qualified Bidders.

**PLEASE TAKE FURTHER NOTICE** that the proposed Sale of the Assets pursuant to the APA is consistent with the Debtors' existing privacy policies regarding the transfer of personally identifiable information ("PII"). The sale, conveyance, assignment, and transfer of PII, will be consistent with the Debtors' policies regarding the transfer of such PII as of the Petition Date.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors hereby file a copy of the proposed sale order, attached hereto as **Exhibit B** approving the sale of certain of the Debtors' Intangible Assets to Rite Aid LLC (the "Proposed Sale Order").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit C** is a redline of the Proposed Sale Order marked against the Form Sale Order.

**PLEASE TAKE FURTHER NOTICE** that the Proposed Sale Order attached hereto remains subject to further review and revision in all respects by the Debtors and the Successful Bidder, and all parties' rights are reserved in connection therewith.

---

[2]   Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek entry of an order approving the Sale Transaction (the "Sale Order") at a hearing scheduled on **December 15, 2025, at 10:00 a.m. (prevailing Eastern Time)** (the "Sale Hearing"), before the Honorable Chief Judge Kaplan, at the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Courtroom 8, Trenton, New Jersey 08608 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors may seek the Court's approval of the Successful Bid and entry of the Sale Order.  Unless the Court orders otherwise or as agreed to by the applicable parties, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to consummation or approval of each Sale must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** **on or before December 12, 2025, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") by (i) the Bid Notice Parties, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to the Official Committee of Unsecured Creditors, Willkie Farr & Gallagher LLP, (iv) the Successful Bidders and Backup Bidder, and (v) any other party that has filed a notice of appearance in these chapter 11 cases.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALES ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALES, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR SALE ORDER, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures, the Bidding Procedures Orders, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 575-9318 (toll free) or, for international callers, +1 (646) 930-4577; (b) by visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/RiteAid2025; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated:  December 5, 2025

/s/ Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.

Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:   (212) 757-3990
Email:      arosenberg@paulweiss.com
            aeaton@paulweiss.com
            chopkins@paulweiss.com
            smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

## Exhibit A

**APA**

**Execution Version**

---

### ASSET PURCHASE AGREEMENT

dated as of December 5, 2025

by and among

Rite Aid LLC,

as Buyer,

and

Certain Affiliates of Rite Aid Corporation

as Seller

---

## TABLE OF CONTENTS

Page

**ARTICLE I PURCHASE AND SALE**.................................................................**4**
    Section 1.1    Purchase and Sale of Assets ....................................... 4
    Section 1.2    Specified Assets ........................................................ 5
    Section 1.3    Excluded Assets ........................................................ 5
    Section 1.4    Assumed Liabilities ................................................... 5
    Section 1.5    Excluded Liabilities .................................................. 5
    Section 1.6    Purchase Price; Deposit ........................................... 5
    Section 1.7    Allocation of Purchase Price .................................... 6

**ARTICLE II CLOSING**.................................................................................**6**
    Section 2.1    Closing....................................................................... 6
    Section 2.2    Closing Deliverables ................................................. 7

**ARTICLE III REPRESENTATIONS AND WARRANTIES OF SELLER**..........**8**
    Section 3.1    Organization and Qualification of Seller................... 8
    Section 3.2    Authority of Seller.................................................... 8
    Section 3.3    No Conflicts; Consents.............................................. 8
    Section 3.4    Title to Purchased Assets ......................................... 9
    Section 3.5    Intellectual Property ................................................. 9
    Section 3.6    Taxes ...................................................................... 10
    Section 3.7    Brokers ................................................................... 10
    Section 3.8    No Additional Representations or Warranties; Buyer
                   Acknowledgement ................................................... 10

**ARTICLE IV REPRESENTATIONS AND WARRANTIES OF BUYER**..........**11**
    Section 4.1    Organization of Buyer ............................................ 11
    Section 4.2    Authority of Buyer ................................................. 11
    Section 4.3    No Conflicts; Consents............................................ 12
    Section 4.4    Brokers ................................................................... 12
    Section 4.5    Sufficiency of Funds .............................................. 12
    Section 4.6    No Additional Representations or Warranties......... 12

**ARTICLE V COVENANTS** ........................................................................**12**
    Section 5.1    Conduct of Business Prior to the Closing ............... 12
    Section 5.2    Bankruptcy Court Matters ...................................... 13
    Section 5.3    Notice of Certain Events ........................................ 14
    Section 5.4    Confidentiality........................................................ 15
    Section 5.5    Closing Conditions ................................................. 15
    Section 5.6    Public Announcements ........................................... 15
    Section 5.7    Bulk Sales Laws ..................................................... 16
    Section 5.8    Transfer Taxes........................................................ 16
    Section 5.9    Use of Name ........................................................... 16
    Section 5.10   Customer Personal Information............................... 16

Section 5.11    No Successor Liability ................................................................ 16
Section 5.12    Receipt of Misdirected Assets; Liabilities............................... 17
Section 5.13    Limited License to Intellectual Property Assets..................... 17
Section 5.14    Limited License to Opt-Out List. ............................................. 18
Section 5.15    Indemnification Procedures...................................................... 18
Section 5.16    Further Assurances .................................................................... 19

**ARTICLE VI CONDITIONS TO CLOSING** ................................................ **19**
Section 6.1    Conditions to Obligations of All Parties ............................... 19
Section 6.2    Conditions to Obligations of Buyer........................................ 19
Section 6.3    Conditions to Obligations of Seller ....................................... 20

**ARTICLE VII TERMINATION** ...................................................................... **20**
Section 7.1    Termination ................................................................................ 20
Section 7.2    Effect of Termination ............................................................... 22

**ARTICLE VIII MISCELLANEOUS** ................................................................ **22**
Section 8.1    Survival ...................................................................................... 22
Section 8.2    Expenses ..................................................................................... 22
Section 8.3    Notices........................................................................................ 22
Section 8.4    Severability................................................................................ 23
Section 8.5    Entire Agreement ...................................................................... 23
Section 8.6    Successors and Assigns ............................................................ 24
Section 8.7    No Third-Party Beneficiaries .................................................. 24
Section 8.8    Amendment and Modification; Waiver.................................. 24
Section 8.9    Governing Law; Submission to Jurisdiction; Waiver of Jury Trial ....... 24
Section 8.10    Specific Performance ............................................................... 25
Section 8.11    Counterparts .............................................................................. 25
Section 8.12    Interpretation ............................................................................ 25

**ARTICLE IX ADDITIONAL DEFINITIONS** ................................................ **27**
Section 9.1    Certain Definitions .................................................................... 27
Section 9.2    Index of Defined Terms ........................................................... 32

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement"), dated as of December 5, 2025 (the "Agreement Date"), is entered into by and among Rite Aid LLC, a Wyoming Limited Liability Company ("Buyer") and the Affiliates of Rite Aid Corporation ("Rite Aid") listed as Sellers on the signature page hereto (collectively, the "Seller").  Capitalized terms used herein shall have the meanings set forth herein including Article IX.  Seller and Buyer are referred to herein individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on May 5, 2025 (the "Petition Date"), Rite Aid commenced a voluntary case (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") by filing a petition for relief in the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, Rite Aid and its Affiliates were collectively engaged in retail operations including owned and franchised stores and e-commerce sales (the "Business") and the Seller is the owner of the Purchased Assets;

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, certain intellectual property assets associated with the Business, subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I
## PURCHASE AND SALE

**Section 1.1**    **Purchase and Sale of Assets**.  Subject to the terms and conditions set forth herein and the Sale Order, at the Closing, Seller shall sell, assign, transfer, convey, and (other than with respect to the Specified Assets) deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any Encumbrances other than Permitted Encumbrances, all of Seller's right, title, and interest in, to, and under the following (collectively, the "Purchased Assets"):

(a)    all Intellectual Property Assets;

(b)    Customer Loyalty Data;

(c)    all prepaid expenses, credits, advance payments, claims, security, deposits, charges, sums and fees (including any such item relating to the payment of Taxes) with respect to the Purchased Assets;

(d)    the Specified Assets (as defined below); and

(e)    all goodwill associated with the Purchased Assets.

Section 1.2    **Specified Assets.**  Notwithstanding anything herein to the contrary, Buyer acknowledges and agrees that (a) Seller does not have access to or possession of the Purchased Assets set forth on Schedule 1.2 (the "Specified Assets") and does not anticipate having access to or possession of the Specified Assets, (b) although Seller is transferring its right, title and interest in and to the Specified Assets, Buyer shall be solely responsible for obtaining access or possession of the Specified Assets, including with respect to all costs, fees, charges or indemnities incurred in obtaining access or possession of the Specified Assets, (c) Seller provides no assurances that Buyer will be able to obtain access or possession of the Specified Assets, (d) Seller shall not be required to take or cause to be taken or agree to take any action to assist Buye in obtaining access or possession of the Specified Assets, and (e) Buyer may not ever be able to obtain access or possession of the Specified Assets and that Buyer's failure to obtain access or possession of the Specified Assets shall not be deemed to be a breach of this Agreement in any respect.

Section 1.3    **Excluded Assets**.  Notwithstanding the foregoing, the Buyer shall not acquire any right, title or interest in or to any assets, properties, rights, interests, or claims of any kind or description of Seller or its Affiliates, including the Opt-Out List (defined below), other than the Purchased Assets (collectively, the "Excluded Assets").

Section 1.4    **Assumed Liabilities**.  On the terms and subject to the conditions set forth in this Agreement, at the Closing, contemporaneously with the sale, assignment and transfer of the Purchased Assets to Buyer, Buyer shall assume and agree to pay, perform and discharge, as and when due (in accordance with the respective terms and subject to the respective conditions thereof) only those Liabilities arising from or relating to the ownership of the Purchased Assets or the use thereof by Buyer from and after the Closing (collectively, the "Assumed Liabilities").

Section 1.5    **Excluded Liabilities**.  Notwithstanding the provisions of Section 1.4 or any other provision in this Agreement to the contrary, Buyer shall not assume and shall not be responsible to pay, perform or discharge any Liabilities of Seller or any of its Affiliates of any kind or nature whatsoever other than the Assumed Liabilities set forth above (the "Excluded Liabilities").

Section 1.6    **Purchase Price; Deposit**.

(a)    The aggregate consideration (collectively, the "Purchase Price") for the Purchased Assets shall be: (i) a cash payment (the "Cash Payment") of Seven Million Eight Hundred Thousand United States Dollars ($7,800,000.00) and (ii) the assumption of the Assumed Liabilities. Buyer acknowledges and agrees that there shall be no reduction in the Purchase Price.

(b)    Buyer has, on or prior to the date hereof made an earnest money deposit with the Escrow Agent in the aggregate amount equal to Seven Hundred Eighty Thousand United States Dollars ($780,000.00) in cash into the Escrow Account (the "Deposit"). The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of Seller and shall be applied against payment of the Purchase Price on the Closing Date.  The Deposit shall be released and delivered (together with all accrued investment income thereon, if any) by the Escrow Agent to either Buyer or Seller, as applicable, as follows:

(i)      if the Closing shall occur, the Deposit (and all accrued investment income thereon, if any) shall be released to an account designated by the Seller and applied against payment of the Cash Payment at the Closing;

(ii)      if this Agreement is terminated by Seller pursuant to <u>Section 7.1(c)</u> as a result of Buyer's nonperformance or other failure to close notwithstanding the satisfaction of the conditions thereto or pursuant to <u>Section 7.1(d)</u>, *provided* that Seller is not in material breach of any covenant, representation or warranty hereunder in either case, the Deposit (together with all accrued investment income thereon, if any) shall be released to an account designated by the Seller within three (3) Business Days after such termination; or

(iii)      if this Agreement is terminated for any reason other than as set forth in <u>Section 1.6(b)(ii)</u>, the Deposit (together with all accrued investment income thereon, if any), shall be returned to Buyer within three (3) Business Days after such termination.

In connection with any termination of this Agreement, the parties shall, within two (2) Business Days after such termination, deliver a joint written release instruction to the Escrow Agent pursuant to the Escrow Agreement directing the Escrow Agent to release the Deposit and all accrued investment income thereon in accordance with <u>Sections 1.6(b)(ii)</u> and <u>1.6(b)(iii)</u>.

**Section 1.7    Allocation of Purchase Price**.  Buyer shall determine the allocation of the Purchase Price (including the amount of the Assumed Liabilities and any other amounts to the extent properly treated as consideration for applicable Tax purposes) among the Purchased Assets in a manner consistent with Section 1060 of the Code and Treasury Regulations thereunder (and any similar provision of state, local, or non-U.S. law, as appropriate) and <u>Schedule 1.6</u> attached hereto (the "<u>Allocation</u>") within thirty (30) days following the Closing Date and shall deliver to Seller a copy of such Allocation promptly after such determination.  Seller has thirty (30) days after receipt of the Allocation to notify Buyer in writing of any items of the Allocation that are not reasonable in Seller's view.  If Seller does not object in writing during such thirty (30) day period, then the Allocation shall be final and binding on all Parties.  If Seller objects in writing during such thirty (30) day period, then the Parties shall cooperate in good faith to reach a mutually agreeable allocation of the Purchase Price, which allocation shall be binding on all Parties. Buyer and Seller shall file all Tax Returns (including IRS Form 8594 and any amended returns and claims for refund) and information reports in a manner consistent with the Allocation and not take any Tax related action inconsistent with the Allocation, in each case, unless otherwise required by a "determination" within the meaning of section 1313(a) of the Code.

## ARTICLE II
## CLOSING

**Section 2.1    Closing**.  Subject to the terms and conditions of this Agreement, the consummation of the Transactions (the "<u>Closing</u>") shall take place remotely by telephone or video conference and electronic exchange of documents and signatures, at 10:00 a.m. Eastern Time, on the first Business Day after all of the conditions to Closing set forth in <u>Article VI</u> are either satisfied or waived (other than conditions which, by their nature, are to be satisfied on the Closing Date), or at such other time, date or place as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "<u>Closing Date</u>".  The Closing shall

be effective as of 12:01 a.m. Eastern Time on the Closing Date for all purposes of this Agreement (including for Tax and accounting purposes), but after giving effect to any actions taken by the Seller on the Closing Date prior to the Closing.

Section 2.2    **Closing Deliverables**.

(a)    At the Closing, Seller shall deliver to Buyer the following:

(i)    a bill of sale and assignment and assumption agreement in a form mutually agreeable to the Parties (the "Bill of Sale and Assignment and Assumption Agreement") and duly executed by Seller;

(ii)    assignments in a form mutually agreeable to the Parties (the "Intellectual Property Assignments") and duly executed by Seller, transferring all of Seller's right, title and interest in and to the registered Intellectual Property Assets to Buyer;

(iii)    a certificate, dated the Closing Date and signed by a duly authorized officer of Seller, that each of the conditions set forth in Section 6.2(a), Section 6.2(b), and Section 6.2(d) have been satisfied;

(iv)    a properly completed and duly executed IRS Form W-9 from Seller certifying, among other matters, that Seller is exempt from U.S. federal backup withholding Tax;

(v)    a copy of the Sale Order, if required by the Bidding Procedures Order; and

(vi)    such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement, including, without limitation, (A) specific assignments of certain digital assets comprised of the Primary Conveyed Accounts (as defined below) confirming the transfer of administrative control thereof, and (B) letters of authorization on Sellers' letterhead authorizing Purchaser to take over control over a specific Primary Conveyed Account sold to Purchaser, it being understood and acknowledged that the documents referenced in subsections (A) and (B) above must be notarized to be accepted by various platforms.    True copies of the documents required to be executed and delivered to Purchaser at the Closing under subsections (A) and (B) above are annexed hereto as Exhibit 1 to Exhibit 6.

(b)    At the Closing, Buyer shall deliver to Seller the following:

(i)    payment of an aggregate amount equal to the Cash Payment minus the Deposit, by wire transfer of immediately available funds to an account of Seller designated in writing by Seller to Buyer no later than two (2) Business Days prior to the Closing;

(ii)    the Bill of Sale and Assignment and Assumption Agreement duly executed by Buyer;

(iii)    the Intellectual Property Assignment, duly executed by Buyer; and

(iv)    a certificate, dated the Closing Date and signed by a duly authorized officer of Buyer, that each of the conditions set forth in <u>Section 6.3(a)</u> and <u>Section 6.3(b)</u> have been satisfied.

**ARTICLE III**
**REPRESENTATIONS AND WARRANTIES OF SELLER**

Except as set forth in the correspondingly numbered Section of the Disclosure Schedules, Seller represents and warrants to Buyer that the statements contained in this <u>Article III</u> are true and correct as of the date hereof.

**Section 3.1** **<u>Organization and Qualification of Seller</u>**.  Seller is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of Delaware and has full power and authority to own, operate or lease the properties and assets now owned, operated or leased by it.

**Section 3.2** **<u>Authority of Seller</u>**.  Seller has full power and authority to enter into this Agreement and the Ancillary Documents to which Seller is or will be a party, to carry out its obligations hereunder and thereunder and, subject to the Bankruptcy Court's entry of the Sale Order, or consummation of the Sale pursuant to, and in accordance with, the De Minimis Sale Procedures Order, to consummate the Transactions.  The execution and delivery by Seller of this Agreement and any Ancillary Document to which Seller is or will be a party, the performance by Seller of its obligations hereunder and thereunder and the consummation by Seller of the Transactions have been duly authorized by all requisite corporate action on the part of Seller. This Agreement has been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms, except as such enforceability is limited by bankruptcy, insolvency, reorganization, moratorium or similar laws now or hereafter in effect relating to creditors' rights generally or general principles of equity. When each Ancillary Document to which Seller is or will be a party has been duly executed and delivered by Seller (assuming due authorization, execution and delivery by each other party thereto), such Ancillary Document will constitute a legal and binding obligation of Seller enforceable against it in accordance with its terms, except as such enforceability is limited by bankruptcy, insolvency, reorganization, moratorium or similar laws now or hereafter in effect relating to creditors' rights generally or general principles of equity.

**Section 3.3** **<u>No Conflicts; Consents</u>**.  The execution, delivery and performance by Seller of this Agreement and the Ancillary Documents to which it is a party, and the consummation of the Transactions, do not and will not: (a) conflict with or result in a violation or breach of, or default under, any provision of the certificate of incorporation, bylaws or other organizational documents of Seller; (b) conflict with or result in a violation or breach of any provision of any Law or Order applicable to Seller or the Purchased Assets; (c) except the requisite Bankruptcy Court approvals, require the consent, notice or other action by any Person under, conflict with, result in a violation or breach of, constitute a default or an event that, with or without notice or

8

lapse of time or both, would constitute a default under, result in the acceleration of or create in any party the right to accelerate, terminate, modify or cancel any Contract or Permit to which Seller is a party or by which Seller is bound or to which any of the Purchased Assets are subject; or (d) result in the creation or imposition of any Encumbrance other than Permitted Encumbrances on the Purchased Assets, other than, in the case of clauses (b), (c) and (d), such conflicts, violations, defaults, terminations or cancellations that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  No consent, approval, Permit, Order, declaration or filing with, or notice to, any Governmental Authority is required by or with respect to Seller in connection with the execution and delivery of this Agreement or any of the Ancillary Documents to which Seller is or will be a party and the consummation of the Transactions, except for the requisite Bankruptcy Court approvals and except for those which, if not obtained, would not be material to the Seller or the Purchased Assets, taken as a whole.

**Section 3.4**    **Title to Purchased Assets**.  Seller has good and valid title to, or a valid leasehold interest in, all of the Purchased Assets. All such Purchased Assets  are free and clear of Encumbrances except for Permitted Encumbrances.  At the Closing, Seller will transfer, convey and assign good and valid title to, or a valid leasehold interest in, all of the Purchased Assets (other than the Specified Assets) to Buyer free and clear of all Encumbrances except for Permitted Encumbrances.

**Section 3.5**    **Intellectual Property**.

(a)    Schedule 1.1(a) contains a correct, current and complete list of: (i) all Intellectual Property Registrations, specifying as to each, as applicable: the title, mark, or design; the jurisdiction by or in which it has been issued, registered or filed; the patent, registration or application serial number; the issue, registration or filing date; and the current status; and (ii) material unregistered Trademarks included in the Intellectual Property Assets.

(b)    Seller is the sole and exclusive legal and beneficial, and with respect to the Intellectual Property Registrations, record, owner of all right, title and interest in and to the Intellectual Property Assets, in each case, free and clear of Encumbrances other than Permitted Encumbrances.

(c)    Neither the execution, delivery, or performance of this Agreement, nor the consummation of the transactions contemplated hereunder, will result in the loss or impairment of or payment of any additional amounts with respect to, or require the consent of any other Person in respect of, the Buyer's right to own or use any Intellectual Property Assets.

(d)    All Intellectual Property Registrations are subsisting and in full force and effect in all material respects. Seller has taken all commercially reasonable steps to maintain and enforce the Intellectual Property Assets. To Seller's Knowledge, all required filings and fees related to the Intellectual Property Registrations have been timely submitted with and paid to the relevant Governmental Authorities and authorized registrars. The copies of file histories, documents, certificates, office actions, correspondence, assignments, and other instruments relating to the Intellectual Property Registrations that Seller has provided Buyer are true and complete.

(e)     To Seller's Knowledge, (i) the conduct of the Business as formerly conducted, including the use of the Intellectual Property Assets in connection therewith, and the products, processes, and services of the Business did not infringe, misappropriate, or otherwise violate the Intellectual Property or other rights of any Person and (ii) no Person has infringed, misappropriated, or otherwise violated any Intellectual Property Assets.

(f)     To the Seller's Knowledge, except as set forth on <u>Disclosure Schedule 3.5(f)</u>, there are no Claims (including any opposition, cancellation, revocation, review, or other proceeding), whether settled, pending or threatened (including in the form of offers to obtain a license): (i) alleging any infringement, misappropriation, or other violation of the Intellectual Property of any Person by Seller in the conduct of the Business; (ii) challenging the validity, enforceability, registrability, patentability, or ownership of any Intellectual Property Assets; or (iii) by Seller or any other Person alleging any infringement, misappropriation, or other violation by any Person of any Intellectual Property Assets, except, in each case, as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect. To Seller's Knowledge, Seller is not subject to any outstanding or prospective Order (including any motion or petition therefor) that does or could reasonably be expected to restrict or impair the use of any Intellectual Property Assets.

**Section 3.6     <u>Taxes</u>**.  There are no Encumbrances for Taxes upon any of the Purchased Assets (other than for current Taxes not yet due and payable).  Seller has, after giving effect to all extensions thereto, timely filed, or caused to be timely filed, all Tax Returns required to be filed by it prior to the date hereof with respect to the Purchased Assets (all of which are true, complete and correct in all material respects).  All Taxes due and owing by Seller or otherwise due and payable with respect to the Purchased Assets (whether or not shown on any Tax Return) have been timely paid when due (taking into account any applicable extensions).

**Section 3.7     <u>Brokers</u>**.  Except for Hilco IP Services LLC d/b/a Hilco Streambank, no broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the Transactions based upon arrangements made by or on behalf of Seller.

**Section 3.8     <u>No   Additional   Representations   or   Warranties;   Buyer Acknowledgement</u>**.

(A)     EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS <u>ARTICLE III</u>, BUYER IS NOT RELYING ON AND WILL NOT RELY ON THE ACCURACY OR COMPLETENESS OF ANY OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO SELLER OR WITH RESPECT TO ANY OTHER INFORMATION PROVIDED TO BUYER BY SELLER AND ACKNOWLEDGES THAT NEITHER SELLER, NOR ANY OTHER PERSON ON BEHALF OF SELLER, MAKES ANY OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO SELLER OR WITH RESPECT TO ANY OTHER INFORMATION PROVIDED TO BUYER BY SELLER. WITHOUT LIMITING THE REPRESENTATIONS AND WARRANTIES MADE BY THE PARTIES IN THIS AGREEMENT, BUYER FURTHER ACKNOWLEDGES THAT, SHOULD THE CLOSING OCCUR, BUYER WILL ACQUIRE THE PURCHASED ASSETS AND ASSUME THE

ASSUMED LIABILITIES IN AN "AS IS" CONDITION AND ON A "WHERE IS" BASIS, WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED; PROVIDED, THAT NOTHING IN THIS AGREEMENT SHALL LIMIT ANY PARTY'S LIABILITY FOR FRAUD.

(b)    NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, WITH RESPECT TO THE SPECIFIED ASSETS BUYER ALSO ACKNOWLEDGES AND AGREES THAT SELLER'S RIGHT, TITLE AND INTEREST IN AND TO THE SPECIFIED ASSET ARE SOLD BY THE SELLER AND PURCHASED BY THE BUYER "AS IS, WHERE IS" AND WITH ALL FAULTS AND DEFECTS, WHETHER KNOWN OR UNKNOWN, AND SELLER MAKES NO AND HEREBY DISCLAIMS ANY REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO THE SPECIFIED ASSETS, EXPRESS OR IMPLIED, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (C) WARRANTY OF TITLE; OR (D) WARRANTY AGAINST INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY, WHETHER ARISING BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE, OR OTHERWISE. BUYER ACKNOWLEDGES, BY ACCEPTING THIS AGREEMENT, THAT BUYER HAS NOT RELIED ON ANY REPRESENTATION OR WARRANTY MADE BY SELLER OR ANY OTHER PERSON ON SELLER'S BEHALF AND THAT IT HAS HAD THE OPPORTUNITY TO INSPECT THE SPECIFIED ASSETS PRIOR TO PURCHASE AND IS RELYING SOLELY ON ITS OWN INVESTIGATION, JUDGMENT, AND INSPECTION.   ALL SALES ARE FINAL, AND BUYER ACCEPTS THE SPECIFIED ASSETS IN THEIR PRESENT CONDITION. BUYER WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION AGAINST SELLER ARISING FROM OR RELATING TO THE SPECIFIED ASSETS, INCLUDING ANY CLAIMS FOR RETURN, REFUND, REPAIR, REPLACEMENT, OR DAMAGES. THERE SHALL BE NO RECOURSE WHATSOEVER AGAINST SELLER FOR ANY LOSS, LIABILITY, DAMAGE, OR EXPENSE OF ANY KIND ARISING OUT OF OR RELATING TO THE SALE, ACCESS, POSSESSION, OR USE OF THE SPECIFIED ASSETS. SELLER EXPRESSLY DISCLAIMS ANY OBLIGATION, EXPRESS OR IMPLIED, TO PROVIDE BUYER ACCESS OR POSSESSION OF THE SPECIFIED ASSETS IT BEING UNDERSTOOD THAT SELLER DOES NOT HAVE ACCESS NOR POSSESSION OF THE SPECIFIED ASSETS.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this <u>Article IV</u> are true and correct as of the date hereof.

**Section 4.1    Organization of Buyer**.  Buyer is a Limited Liability Company duly organized, validly existing and in good standing under the Laws of the state of Wyoming.

**Section 4.2    Authority of Buyer**.  Buyer has full power and authority to enter into this Agreement and the Ancillary Documents to which Buyer is or will be a party, to carry out its obligations hereunder and thereunder and to consummate the Transactions. The execution and delivery by Buyer of this Agreement and any Ancillary Document to which Buyer is or will be a

party, the performance by Buyer of its obligations hereunder and thereunder and the consummation by Buyer of the Transactions have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement constitutes, subject to the Bankruptcy Court's entry of the Sale Order, or consummation of the Sale pursuant to, and in accordance with, the De Minimis Sale Procedures Order, a legal, valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms, subject to applicable bankruptcy, insolvency, moratorium, or other similar Laws relating to creditors' rights and general principles of equity.

Section 4.3    **No Conflicts; Consents**.  Assuming that the Sale Order (or consummation of the Sale pursuant to, and in accordance with, the De Minimis Sale Procedures Order) and all other requisite Bankruptcy Court approvals are obtained, the execution, delivery and performance by Buyer of this Agreement and the Ancillary Documents to which it is or will be a party, and the consummation of the Transactions, do not and will not: (a) conflict with or result in a violation or breach of, or default under, any provision of the organizational documents of Buyer, (b) conflict with or result in a violation or breach of any provision of any Law or Order applicable to Buyer, or (c) require the consent, notice or other action by any Person under any Contract to which Buyer is a party, except, in the case of clauses (b) and (c), for such conflicts, violations, breaches, consents, notices, or other actions which, in the aggregate, would not have a material adverse effect on the ability of Buyer to consummate the Transactions on a timely basis.

Section 4.4    **Brokers**.  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the Transactions based upon arrangements made by or on behalf of Buyer.

Section 4.5    **Sufficiency of Funds**.  Buyer has, or will have at the Closing, sufficient cash on hand or other sources of immediately available funds to enable it to make payment of the Purchase Price and consummate the Transactions.

Section 4.6    **No Additional Representations or Warranties**.  Except for the representations and warranties contained in this Article IV, Seller is not relying on and will not rely on the accuracy or completeness of any other express or implied representation or warranty with respect to Buyer or with respect to any other information provided to Seller by Buyer and acknowledges that neither Buyer, nor any other Person on behalf of Buyer, makes any other express or implied representation or warranty with respect to Buyer or with respect to any other information provided to Seller by Buyer.

### ARTICLE V
### COVENANTS

Section 5.1    **Conduct of Business Prior to the Closing**.

(a)    From the date hereof until the Closing Date, Seller shall use commercially reasonable efforts, taking into account the Bankruptcy Case and the fact that the Seller is in the process of liquidating its assets and winding down its business, to:

(i)    preserve and maintain all material Permits required for the ownership and use of the Purchased Assets;

(ii)    defend and protect the properties and assets included in the Purchased Assets from, among other things and not limited to, infringement, usurpation or third-party purchase of trademark, inventory; provided, that Seller will not be obligated to pursue legal action against any third parties who have purchased inventory from suppliers utilizing Seller's trademarks;

(iii)    not transfer, assign, sell or otherwise dispose of, including by way of a license or sublicense, any of the Purchased Assets;

(iv)    comply in all material respects with all Laws applicable to the conduct of the ownership and use of the Purchased Assets;

(v)    not cancel any debts, or amend, terminate or waive any rights constituting Purchased Assets;

(vi)    not abandon or allow the lapse of or not fail to maintain in full force and effect any Intellectual Property Registration, other than any Intellectual Property Registration that lapses as a result of Seller's inability to show sufficient proof of use, or not fail to take or maintain reasonable measures to protect the confidentiality of any Trade Secrets included in the Intellectual Property Assets;

(vii)    not cause or allow the imposition of any Encumbrance (other than Permitted Encumbrances) upon any of the Purchased Assets; and

(viii)    not agree, whether in writing or otherwise, to do anything prohibited by Section 5.1, or not take any action that, or not omit any action where such omission, would result in anything prohibited by Section 5.1.

(b)    Nothing contained in this Agreement is intended to give Buyer or its Affiliates, directly or indirectly, the right to control or direct the Business (or any other business of Seller and its Affiliates) prior to the Closing. Prior to the Closing, Seller shall exercise, consistent with the terms and conditions of this Agreement, complete control and supervision over the Business and its operations.

**Section 5.2    Bankruptcy Court Matters**.

(a)    Seller shall comply with the following timeline (the "Bankruptcy Court Milestones"):

(i)    On or before November 6, 2025, the Auction (if necessary) shall have been held pursuant to the Bidding Procedures Order.

(ii)    On or before December 15, 2025 (i) the Bankruptcy Court shall have held the Sale Hearing (if necessary) to consider entry of the Sale Order or (ii) the parties

13

shall have consummated the Sale pursuant to, and in accordance with, the De Minimis Sale Procedures Order.

(iii)     No later than one (1) Business Day prior to the Outside Date, Seller shall obtain entry by the Bankruptcy Court of the Sale Order (if required thereby) and such order shall be in full force and effect and not reversed, modified or stayed.

(b)     Without limiting the requirements of Section 5.2(a), Seller shall seek, on an expedited basis if necessary, entry of the Sale Order, and any other necessary orders by the Bankruptcy Court to consummate the Closing as soon as reasonably practicable following the execution of this Agreement, subject to the (i) terms of the Bidding Procedures Order and, if applicable, the Sale Order or (ii) the De Minimis Sale Procedures Order.

(c)     Seller shall cooperate with Buyer concerning the Bidding Procedures Order, the Sale Order (if any), the De Minimis Sale Procedures Order, and any other orders of the Bankruptcy Court relating to the Transactions, and the bankruptcy proceedings in connection therewith, and Seller shall provide Buyer with draft copies of all applications, pleadings, notices, proposed orders and other documents relating to such proceedings at least two (2) Business Days in advance of the proposed filing date so as to permit the Buyer sufficient time to review and comment on such drafts, and, with respect to all provisions that impact the Buyer or relate to the Transactions, such pleadings and proposed orders (including the Sale Order) shall be in form and substance reasonably acceptable to the Buyer and shall include, without limitation, a provision pursuant to which the Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Agreement and the Sale Order, and which jurisdiction will allow the Bankruptcy Court to enter further orders necessary to permit Persons other than Seller and its Affiliates to provide Purchaser with access to, and possession of, the Primary Conveyed Accounts. Seller shall give Buyer reasonable advance notice of any hearings regarding the motions required to obtain the issuance of, if applicable, the Sale Order.

(d)     Seller shall promptly serve true and correct copies of all applicable pleadings and notices in accordance with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and any other applicable order of the Bankruptcy Court.

(e)     Seller shall not propose, file, support, pursue or seek entry of, or aid in another party proposing, filing, supporting, pursuing or seeking entry of, an order confirming a chapter 11 plan that adversely impacts Buyer's rights hereunder without Buyer's prior written consent.  For the avoidance of doubt, notwithstanding any other provision of this Agreement, this Section 5.2(e) shall survive the Closing.

**Section 5.3**     **Notice of Certain Events**.

(a)     From the date hereof until the Closing, Seller shall promptly notify Buyer in writing of:

(i)     any fact, circumstance, event or action the existence, occurrence or taking of which (A) has had, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, (B) has resulted in, or could reasonably be expected

14

to result in, any representation or warranty made by Seller hereunder not being true and correct in all material respects or (C) has resulted in, or could reasonably be expected to result in, the failure of any of the conditions set forth in Section 6.2 to be satisfied;

(ii)    any written notice or other written communication from any Person alleging that the consent of such Person is or may be required in connection with the Transactions;

(iii)    any written notice or other written communication from any Governmental Authority in connection with the Transactions; and

(iv)    any Claims commenced or, to Seller's Knowledge, threatened in writing against, relating to or involving or otherwise affecting the Purchased Assets or the Assumed Liabilities that, if pending on the date of this Agreement, would have been required to have been disclosed pursuant to Article III or that relates to the consummation of the Transactions.

(b)    Buyer's receipt of information pursuant to this Section 5.3 shall not operate as a waiver or otherwise affect any representation, warranty or agreement given or made by Seller in this Agreement (including Section 7.1(e)) and shall not be deemed to amend or supplement the Disclosure Schedules.

Section 5.4    **Confidentiality**.  The Confidentiality Agreement is hereby incorporated herein by reference and shall continue in full force and effect in accordance with its terms; provided that from and after the Closing, all of Buyer's and its Affiliates obligations under the Confidentiality Agreement with respect to confidential information that constitutes a Purchased Asset or Assumed Liability, shall terminate and be of no further force or effect. From and after the Closing the confidential information and trade secrets included in the Purchased Assets ("Business Confidential Information") will be the confidential information of Buyer.  Seller will not use the Business Confidential Information for any reason.  From and after the Closing, except with the prior written consent of Buyer, Seller agrees to keep confidential and not disclose the Business Confidential Information, except to the extent that (i) such information has otherwise been made public by Buyer, or (ii) Seller is required by applicable Law (including, in connection with the Bankruptcy Cases) to divulge or disclose any such information (in which case Seller shall promptly notify Buyer in advance of disclosing such information and use commercially reasonable efforts to cooperate with Buyer to limit such disclosure, to the extent permitted under applicable Law).

Section 5.5    **Closing Conditions**.  From the date hereof until the Closing, (a) Seller shall use its commercially reasonable efforts to take such actions as are necessary to cause the closing conditions set forth in Section 6.1 and Section 6.2 that are within Seller's control or influence to be expeditiously satisfied or fulfilled, and (b) Buyer shall use its reasonable best efforts to take such actions as are necessary to cause the closing conditions set forth in Section 6.3 that are within Buyer's control or influence to be expeditiously satisfied or fulfilled.

Section 5.6    **Public Announcements**.  Unless otherwise required by applicable Law (based upon the reasonable advice of counsel), no Party shall make any public announcements in respect of this Agreement or the Transactions or otherwise communicate with any news media

without the prior written consent of the other Party (which consent shall not be unreasonably withheld, conditioned or delayed), and the Parties shall cooperate as to the timing and contents of any such announcement.

**Section 5.7**    **Bulk Sales Laws**.  The Parties intend that pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets shall be free and clear of any Encumbrances in the Purchased Assets including any liens or claims arising out of the bulk sales, bulk transfer, and similar Laws, and the Parties shall take such steps as may be necessary or appropriate to so provide in the Sale Order (if necessary). Seller and Buyer hereby waive compliance by Seller with the requirements and provisions of any "bulk-transfer" Laws of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of any or all of the Purchased Assets to Buyer; it being understood that any Liabilities arising out of the failure of Seller to comply with the requirements and provisions of any bulk sales, bulk transfer, or similar Laws of any jurisdiction shall be treated as Excluded Liabilities.

**Section 5.8**    **Transfer Taxes**.  All transfer, documentary, sales, use, stamp, registration, value added and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the Ancillary Documents shall be borne and paid by Buyer when due. Buyer shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Seller shall cooperate with respect thereto as necessary).

**Section 5.9**    **Use of Name**. Following the Closing, Seller shall, subject to Section 5.13, discontinue the use of its current name (and any other trade names or "d/b/a" names currently utilized by Seller in any trade of commerce.

**Section 5.10**   **Customer Personal Information**.   From and after the date of this Agreement and prior to the Closing or the earlier termination of this Agreement, Seller shall provide to customers and prospective customers any required privacy notices and obtain any required consents related to Seller's ability to transfer customers' and prospective customers' Personal Information included in the Purchased Assets to Buyer as is necessary to comply in all material respects with applicable Law in connection with the consummation of the Transactions.

**Section 5.11**   **No Successor Liability**.

(a)    The Parties intend that, to the fullest extent permitted by applicable Law (including under Section 363 of the Bankruptcy Code), upon the Closing, Buyer shall not be deemed to: (a) be the successor of Seller, (b) have, de facto, or otherwise, merged with or into Seller, (c) be a mere continuation or substantial continuation of Seller or the enterprise(s) of Seller or (d) be liable or have any Liability for any acts or omissions of Seller in the conduct of their businesses or arising under or related to the Purchased Assets other than as expressly set forth and agreed in this Agreement. Without limiting the generality of the foregoing, and except as otherwise expressly provided in this Agreement, the Parties intend that Buyer shall have no Liability for any Encumbrance against Seller or any of Seller's predecessors or Affiliates, and Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date or in connection with the transactions contemplated to occur on the Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the business of Seller, the Purchased Assets or any Liability of Seller arising prior to, or relating to any period

16

occurring prior to, the Closing Date. The Parties agree that the Sale Order (if necessary) shall contain provisions substantially in the form set forth in this <u>Section 5.11(a)</u>.

(b)     Without limiting the generality of <u>Section 5.11(a)</u>, the Sale Order (if necessary) shall provide that (i) Buyer shall not be liable for or have any Liability related to the Tax Claims, and (ii) at the Closing the Purchased Assets shall transfer to Buyer free and clear of any Encumbrances related to the Tax Claims.  For purposes of this Agreement, "<u>Tax Claims</u>" means any and all Claims of the U.S. Internal Revenue Service, or any other taxing authority, related to, or against, Seller, any Representative of Seller, any equityholder of Seller, any Affiliate of Seller or the Purchased Assets.

### Section 5.12    <u>Receipt of Misdirected Assets; Liabilities</u>.

(a)     From and after the Closing, if Seller or any of its respective Affiliates receives any right, property or asset that is a Purchased Asset, Seller shall promptly transfer or cause such of its Affiliates to transfer such right, property or asset (and shall promptly endorse and deliver any such asset that is received in the form of cash, checks or other documents) to Buyer, and such asset will be deemed the property of Buyer held in trust by Seller for Buyer until so transferred. From and after the Closing, if Buyer or any of its Affiliates receives any right, property or asset that is an Excluded Asset, Buyer shall promptly transfer or cause such of its Affiliates to transfer such asset (and shall promptly endorse and deliver any such right, property or asset that is received in the form of cash, checks, or other documents) to Seller, and such asset will be deemed the property of Seller held in trust by Buyer for Seller until so transferred.

(b)     From and after the Closing, if Seller or any of its Affiliates is subject to a Liability that should belong to Buyer or its Affiliates pursuant to the terms of this Agreement, Seller shall promptly transfer or cause such of its Affiliates to transfer such Liability to Buyer, and Buyer shall assume and accept such Liability. From and after the Closing, if Buyer or any of its Affiliates is subject to a Liability that should belong to Seller or its Affiliates pursuant to the terms of this Agreement, Buyer shall promptly transfer or cause such of its Affiliates to transfer such Liability to Seller or its Affiliates, and Seller or its Affiliates shall assume and accept such Liability.

### Section 5.13    <u>Limited License to Intellectual Property Assets</u>.

(a)     Following the Closing, Buyer hereby grants to the Seller a limited, non-exclusive, non-transferable, royalty-free, fully paid-up, right and license to use the Intellectual Property Assets and to continue using its current name, in each case solely as expressly authorized herein (the "<u>Limited IP License</u>"). The Limited IP License grants Seller, its Affiliates and its authorized representatives (collectively, "<u>Licensees</u>") administering the sale of assets in accordance with the Bankruptcy Case, the right to use the Intellectual Property Assets solely in conjunction with the wind-down plan of Seller's estate (the "<u>Wind Down Sale</u>").

(b)     The Seller's right to use the Intellectual Property Assets under the Limited IP License for the Wind Down Sale will terminate on the Closing Date.

(c)     Seller acknowledges and agrees that, as of the Closing, (i) Buyer shall exclusively own all beneficial and legal title and interest in and to the Intellectual Property Assets,

17

and that any and all goodwill arising in connection with the use of the Intellectual Property Assets inures solely to Buyer and (ii) no Licensee shall use the Intellectual Property Assets in a manner that is of a different character than used by Seller prior to the Closing.

(d)      Seller covenants that it will not, directly or indirectly, either alone or in conjunction with others, infringe, challenge or take any action to cause a challenge to Buyer's ownership of, or the validity of, the Intellectual Property Assets or any element of them, or to obstruct the efforts of Buyer with respect to the applications and registration thereof.  Seller shall not use or apply for registration of any trademark, trade name, domain name, social media account or copyright that uses the Intellectual Property Assets, or any similar marks, names, or works, without Buyer's prior written consent, which may be withheld in Buyer's sole discretion.

(e)      Seller shall be responsible for ensuring the compliance of all Licensees' activities under this Limited IP License.

(f)      Buyer acknowledges and agrees that, from and after the Closing, and until the later of (i) December 31, 2025 or (ii) such other date as approved by the Bankruptcy Court in connection with any data retention and/or transition plan, whether in connection with a chapter 11 plan or otherwise, Buyer shall preserve and maintain in its current form, on the www.RiteAid.com website, (a) the "medical records requests" search and (b) the "find my pharmacy" search function.**Limited License to Opt-Out List**.  Upon Closing, Seller shall provide to Buyer a dataset containing Seller's list of individuals who submitted deletion or opt-out requests to Buyer with respect to their personal information (the "Opt-Out List") pursuant to the following terms and conditions: (i) The Opt-Out List is not a Purchased Asset hereunder and instead Seller grants to Buyer a limited non-sublicensable, non-transferable license to access and use the Opt-Out List in the United States, solely to ensure Buyer does not market to individuals identified in the Opt-Out List in connection with the Purchased Assets, i.e., the Rite Aid brand and marks (the "Opt-Out List Purpose"); (ii) Buyer (with its affiliates and service providers) shall only use the Opt-Out List for the Opt-Out List Purpose and for no other reason; (iii) this license to the Opt-Out List expires one (1) year after Closing, by which time Buyer shall have permanently deleted the Opt-Out List from Buyer's records; (iv) contents of the Opt-Out List shall not be added to, or comingled with, any other dataset or records; (v) Buyer shall comply with all privacy Laws, as applicable, with respect to the Opt-Out List;  (vi) Seller shall have the right to take reasonable and appropriate steps to stop and remediate unauthorized use of the Opt-Out List; (vii) Seller will only provide email addresses and phone numbers in the Opt-Out List (to prevent marketing communications using those specific identifiers); and (viii) notwithstanding anything to the contrary herein, Buyer shall defend, indemnify and hold Seller with its affiliates and their respective employees, officers, directors and representatives (the "Indemnified Parties") harmless against any loss or damage (including reasonable attorneys' fees) incurred in connection with any Action or allegation that Buyer's use of the Opt-Out List violated this Section 5.14 or applicable privacy, security or data protection Laws.

Section 5.15  **Indemnification Procedures**.  Whenever any claim shall arise for indemnification under Section 5.14, the applicable Indemnified Party or Parties shall promptly, but no later than thirty (30) days after they have actual knowledge such claim has arisen, provide written notice of such claim to the Buyer.  In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a Person who is not a party to this

Agreement, the Buyer, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense. If the Buyer does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including settling such Action, after giving notice of it to the Buyer, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Buyer of its indemnification obligations herein provided with respect to any damages resulting therefrom. The Buyer shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

Section 5.16    **Further Assurances**. Following the Closing, each of the Parties shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances as may be reasonably required and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the Transactions and the Ancillary Documents including, without limitation, to use reasonable efforts to execute transfer or consent forms to facilitate Purchaser's access to, and possession of, the Primary Conveyed Accounts.

## ARTICLE VI
## CONDITIONS TO CLOSING

Section 6.1    **Conditions to Obligations of All Parties**. The obligations of each Party to consummate the Transactions shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions:

(a)      No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Order (including any temporary restraining Order or preliminary or permanent injunction) which is in effect and has the effect of making the Transactions illegal, otherwise restraining or prohibiting consummation of such transactions, or causing any of the Transactions to be rescinded following completion thereof.

(b)      The Bankruptcy Court shall have entered the Sale Order and the Sale Order shall not have been (i) stayed or reversed, or (ii) modified or amended in a manner not reasonably acceptable to Buyer or (ii) if the Sale Order is not necessary, the parties shall have consummated the Sale pursuant to, and in accordance with, the De Minimis Sale Procedures Order.

Section 6.2    **Conditions to Obligations of Buyer**.  The obligations of Buyer to consummate the Transactions shall be subject to the fulfillment or Buyer's written waiver, at or prior to the Closing, of each of the following conditions:

(a)      Other than the Fundamental Representations, the representations and warranties of Seller contained in this Agreement, the Ancillary Documents and any certificate or other writing delivered pursuant hereto shall be true and correct in all respects (without giving effect to any limitation indicated by the words "Material Adverse Effect," "in all material respects," "in any material respect," "material," or "materially") on and as of the Closing Date

19

with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects), except where the failure of such representations and warranties to be so true and correct would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect. The Fundamental Representations shall be true and correct in all respects on and as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects).

(b)     Seller shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement and each of the Ancillary Documents to be performed or complied with by it prior to or on the Closing Date.

(c)     No Claim shall have been commenced against Buyer or Seller, which would prevent the Closing.

(d)     From the date of this Agreement, there shall not have occurred any Material Adverse Effect, nor shall any event or events have occurred that, individually or in the aggregate, with or without the lapse of time, could reasonably be expected to result in a Material Adverse Effect.

(e)     Seller shall have delivered to Buyer all items set forth in <u>Section 2.2(a)</u>.

**Section 6.3**     **Conditions to Obligations of Seller**.     The obligations of Seller to consummate the Transactions shall be subject to the fulfillment or Seller's waiver, at or prior to the Closing, of each of the following conditions:

(a)     The representations and warranties of Buyer contained in <u>Article IV</u> shall be true and correct, in each case as of the Closing Date, with the same force and effect as though all such representations and warranties had been made as of the Closing Date (other than representations and warranties that by their terms address matters only as of another specified date, which shall be so true and correct only as of such other specified date), except where the failure of such representations or warranties to be so true and correct (without giving effect to any limitation as to "materiality", "material adverse effect", or similar qualifiers contained therein) would not materially impair or prevent Buyer's ability to consummate the Transactions.

(b)     Buyer shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement and each of the Ancillary Documents to be performed or complied with by it prior to or on the Closing Date.

(c)     Buyer shall have delivered to Seller all items forth in <u>Section 2.2(b)</u>.

**ARTICLE VII**
**TERMINATION**

**Section 7.1**     **Termination**.     This Agreement may be terminated at any time prior to the Closing:

20

(a)     by the mutual written consent of Seller and Buyer;

(b)     by written notice of either Buyer or Seller, upon the issuance of an Order by a court of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Closing or declaring unlawful the Transactions, and such Order having become final, binding and non-appealable; provided that no Party may terminate this Agreement under this Section 7.1(b) if the issuance of such Order was caused by such Party's failure to perform any of its obligations under this Agreement;

(c)     by written notice of either Buyer or Seller, if the Closing shall not have occurred on or before December 22nd<sup>th</sup>, 2025 (the "Outside Date");

(d)     by written notice from Seller to Buyer, upon a breach of any covenant or agreement on the part of Buyer, or if any representation or warranty of Buyer will have become untrue, in each case, such that the conditions set forth in Section 6.3(a) or Section 6.3(b) would not be satisfied; provided that (i) if such breach is curable by Buyer then Seller may not terminate this Agreement under this Section 7.1(d) unless such breach has not been cured by the date which that the earlier of (A) two (2) Business Days prior to the Outside Date and (B) 30 days after Seller notifies Buyer of such breach and (ii) Seller's right to terminate this Agreement pursuant to this Section 7.1(d) will not be available to Seller at any time that Seller is in material breach of, any covenant, representation or warranty hereunder;

(e)     by written notice from Buyer to Seller, upon a breach of any covenant or agreement on the part of Seller, or if any representation or warranty of the Seller will have become untrue, in each case, such that any of the conditions set forth in Section 6.2 would not be satisfied; provided that (i) if such breach is curable by Seller then Buyer may not terminate this Agreement under this Section 7.1(e) unless such breach has not been cured by the date which is the earlier of (A) two (2) Business Days prior to the Outside Date and (B) 30 days after Buyer notifies Seller of such breach, and (ii) the right to terminate this Agreement pursuant to this Section 7.1(e)  will not be available to Buyer at any time that Buyer is in material breach of, any covenant, representation or warranty hereunder;

(f)     by written notice from Seller to Buyer, if Seller or the board of directors (or similar governing body) of Seller determines, based on the advice of outside counsel, that proceeding with the Transactions or failing to terminate this Agreement would be inconsistent with its or such Person's or body's fiduciary duties;

(g)     by written notice of either Buyer or Seller, if (i) Seller enters into one or more Alternative Transactions with one or more Persons other than Buyer or (ii) the Bankruptcy Court approves an Alternative Transaction other than with Buyer;

(h)     by Seller or Buyer, if the Bankruptcy Cases are dismissed or converted to a case or cases under chapter 7 of the Bankruptcy Code, or if a trustee or examiner with expanded powers to operate or manage the financial affairs or reorganization of Seller is appointed in the Bankruptcy Cases;

(i)     by Buyer if (i) following entry by the Bankruptcy Court of the Bidding Procedures Order, such order is (x) amended, modified or supplemented in a manner reasonably

expected to be adverse to Buyer without Buyer's prior written consent or (y) voided, reversed or vacated or is subject to a stay, or (ii) following entry by the Bankruptcy Court of the Sale Order (if any), the Sale Order is (x) amended, modified or supplemented in an adverse way without Buyer's prior written consent or (y) voided, reversed or vacated or is subject to a stay; or

(j)      by written notice from either Buyer or Seller, if Buyer is not the Successful Bidder at the Auction, if applicable.

**Section 7.2**    **Effect of Termination**.

(a)      In the event of termination of this Agreement pursuant to Section 7.1, this Agreement shall forthwith become null and void and no Party or any of its partners, officers, directors, managers or equityholders will have any Liability under this Agreement; provided that Section 1.6(b), Section 5.4, this Section 7.2, and Article VIII shall survive any such termination; provided further that no termination will relieve any Party from any Liability for any willful material breach of this Agreement prior to the date of such termination; provided, further, that the maximum Liability of Buyer under, or arising out of, this Agreement, including for any willful material breach of this Agreement, shall be equal to the Deposit.

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.1**    **Survival**. Except for any covenant that by its terms is to be performed (in whole or in part) by any Party following the Closing, none of the representations, warranties, or covenants of any Party set forth in this Agreement or in any certificate delivered pursuant to Section 2.2(a)(iii) or Section 2.2(b)(iv) shall survive, and each of the same shall terminate and be of no further force or effect as of, the Closing.  Any covenants or obligations hereunder to be performed from and after the Closing shall survive until completion in accordance with the terms thereof.  Notwithstanding anything contained in this Agreement to the contrary (including in this Section 8.1), nothing set forth herein shall limit any rights or remedies available to Buyer in respect of any claim for Fraud.

**Section 8.2**    **Expenses**. Except as otherwise provided herein (including transfer Taxes pursuant to Section 5.8), all costs and expenses, including, fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the Transactions shall be paid by the Party incurring such costs and expenses, whether or not the Closing shall have occurred.

**Section 8.3**    **Notices**.  All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when personally delivered; (b) the day following the day on which the same has been delivered prepaid to a reputable national overnight courier service; (c) when transmitted by electronic mail (having obtained electronic delivery confirmation thereof), if delivered by 5:00 P.M. local time of the recipient on a Business Day and otherwise on the following Business Day; or (d) on the third Business Day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective Parties at the following addresses (or

at such other address for a Party as shall be specified in a notice given in accordance with this
<u>Section 8.3</u>):

| | |
|---|---|
| If to Seller: | Rite Aid<br>200 Newberry Commons<br>Etters, PA 17319<br>E-mail: sbixler@riteaid.com<br>Attention: Steven K. Bixler |
| with a copy to<br>(which shall not<br>constitute notice): | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>E-mail: smitchell@paulweiss.com; jesses@paulweiss.com<br>Attention: Sean A. Mitchell; Joshua A. Esses |
| If to Buyer: | PMDLabs Inc.<br>███████████████████████<br><br>███████████████████████ |
| with a copy to<br>(which shall not<br>constitute notice): | Akerman LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, NY 10020<br>E-mail:  mark.lichtenstein@akerman.com<br>Attention:  Mark S. Lichtenstein |

**Section 8.4     <u>Severability</u>**.  If any term or provision of this Agreement is invalid, illegal
or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect
any other term or provision of this Agreement or invalidate or render unenforceable such term or
provision in any other jurisdiction.  Upon such determination that any term or other provision is
invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify this Agreement
so as to effect the original intent of the Parties as closely as possible in a mutually acceptable
manner in order that the Transactions be consummated as originally contemplated to the greatest
extent possible.

**Section 8.5     <u>Entire Agreement</u>**.  This Agreement, the Ancillary Documents, and the
Confidentiality Agreement, constitute the sole and entire agreement of the Parties to this
Agreement with respect to the subject matter contained herein and therein, and supersede all prior
and contemporaneous understandings and agreements, both written and oral, with respect to such
subject matter. In the event of any inconsistency between the statements in the body of this
Agreement and those in the Ancillary Documents, the Confidentiality Agreement, or the Exhibits
and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure
Schedules), the statements in the body of this Agreement will control.  The Exhibits to this
Agreement and the Disclosure Schedule are incorporated herein by reference and made a part
hereof.

**Section 8.6**     **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and permitted assigns. Seller may not assign its rights or obligations hereunder without the prior written consent of Buyer.  Buyer may, without the prior written consent of Seller, assign all or any portion of its rights, interests, or obligations under this Agreement to one or more Persons. No assignment shall relieve the assigning party of any of its obligations hereunder.  In furtherance of, and without limiting, the foregoing, Buyer may, without the consent of Seller, designate, in accordance with the terms of this section and effective as of the Closing, one or more Persons to acquire all, or any portion of, the Purchased Assets and assume all or any portion of the Assumed Liabilities or pay all or any portion of the Purchase Price.  The foregoing designation may be made by Buyer by written notice to Seller at any time prior to the Closing Date.   The Parties agree to modify any Closing deliverables in accordance with the foregoing designation.

**Section 8.7**     **No Third-Party Beneficiaries**.  This Agreement is for the sole benefit of the Parties and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 8.8**     **Amendment and Modification; Waiver**.  This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each Party. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 8.9**     **Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**.

(a)     This Agreement shall be governed by and construed in accordance with the internal laws of the State of New Jersey without giving effect to any choice or conflict of law provision or rule (whether of the State of New Jersey or any other jurisdiction), except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

(b)     Each of the Parties irrevocably agrees that any Claim of any kind whatsoever, including a counterclaim, cross-claim, or defense, regardless of the legal theory under which any Liability or obligation may be sought to be imposed, whether sounding in contract or in tort or under statute, or whether at law or in equity, or otherwise under any legal or equitable theory, that may be based upon, arising out of, or related to this Agreement or the negotiation, execution, or performance of this Agreement or the Transactions and any questions concerning the construction, interpretation, validity and enforceability of this Agreement (each, an "Agreement Dispute") brought by any other Party or its successors or assigns will be brought and determined only in (a) the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may be validly taken or (b) if the Bankruptcy Court is unwilling or unable to hear such Claim, in the Court of Chancery of the State of New Jersey (or if such court lacks jurisdiction, any

24

other state or federal court sitting in the State of New Jersey) (collectively, the "Chosen Courts"), and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the Chosen Courts for itself and with respect to its property, generally and unconditionally, with regard to any Agreement Dispute. Each of the Parties agrees not to commence any Agreement Dispute except in the Chosen Courts, other than Claims in any court of competent jurisdiction to enforce any Order, decree or award rendered by any Chosen Courts, and no Party will file a motion to dismiss any Agreement Dispute filed in a Chosen Court on any jurisdictional or venue-related grounds, including the doctrine of forum non conveniens. The Parties irrevocably agree that venue would be proper in any of the Chosen Court, and hereby irrevocably waive any objection that any such court is an improper or inconvenient forum for the resolution of any Agreement Dispute. Each of the Parties further irrevocably and unconditionally consents to service of process in the manner provided for notices in Section 8.3. Nothing in this Agreement will affect the right of any Party to serve process in any other manner permitted by Law.

(c)     EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY AGREEMENT DISPUTE IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND THEREFORE HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY AGREEMENT DISPUTE.

**Section 8.10   Specific Performance**.  The Parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled under this Agreement.

**Section 8.11   Counterparts**.  This Agreement and any other agreements referred to herein or therein, and any amendments hereto or thereto, may be executed in multiple counterparts, any one of which need not contain the signature of more than one party hereto or thereto, but all such counterparts taken together will constitute one and the same instrument. Any counterpart, to the extent signed and delivered by means of a .PDF or other electronic transmission, will be treated in all manner and respects as an original agreement and will be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. Minor variations in the form of the signature page to this Agreement or any agreement or instrument contemplated hereby, including footers from earlier versions of this Agreement or any such other document, will be disregarded in determining the effectiveness of such signature.

**Section 8.12   Interpretation**.  Unless otherwise expressly provided in this Agreement, the following will apply to this Agreement, the Disclosure Schedules, the Schedules, the Ancillary Documents and any other certificate, instrument, agreement or other document contemplated hereby or delivered hereunder.

(a)     The terms "hereof," "herein" and "hereunder" and terms of similar import are references to this Agreement as a whole and not to any particular provision of this Agreement. Section, clause, Schedule, Disclosure Schedules and exhibit references contained in this Agreement are references to sections, clauses, Schedules, Disclosure Schedules, and exhibits in or to this Agreement, unless otherwise specified. All Exhibits, Schedules, and Disclosure Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement

as if set forth in full herein. Any capitalized terms used in any Schedule, Exhibit, or Disclosure Schedule but not otherwise defined therein shall be defined as set forth in this Agreement.

(b)    Whenever the words "include," "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Where the context permits, the use of the term "or" will be equivalent to the use of the term "and/or." The words "to the extent" shall mean "the degree by which" and not simply "if." Words denoting any gender will include all genders, including the neutral gender. Where a word is defined herein, references to the singular will include references to the plural and vice versa, and its other grammatical forms have a corresponding meaning. The word "will" will be construed to have the same meaning and effect as the word "shall". The words "shall," "will," or "agree(s)" are mandatory, and "may" is permissive.

(c)    When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period will be excluded. If the last day of such period is a day other than a Business Day, the period in question will end on the next succeeding Business Day.

(d)    All references to "$" and dollars will be deemed to refer to United States currency unless otherwise specifically provided. All references to any financial or accounting terms shall be defined in accordance with GAAP.

(e)    All references to a day or days will be deemed to refer to a calendar day or calendar days, as applicable, unless otherwise specifically provided. All references herein to time are references to prevailing Eastern Time, unless otherwise specified herein.

(f)    Any document or item will only be deemed "delivered," "provided" or "made available" by Seller, within the meaning of this Agreement if such document or item is included in the Dataroom, by 5:00 p.m. Eastern Time on the date that is 1 Business Day prior to the date of this Agreement.

(g)    Any reference to any agreement or Contract will be a reference to such agreement or Contract as amended, modified, supplemented or waived. A reference to any legislation or Law or to any provision of any legislation or Law shall include any modification or re-enactment thereof, any legislative provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto.

(h)    A reference to any Party to this Agreement or any other agreement or document shall include such Party's successors and assigns, but only if such successors and assigns are not prohibited by this Agreement. A reference to a Person in a particular capacity excludes such Person in any other capacity or individually.

(i)    This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

## ARTICLE IX
## ADDITIONAL DEFINITIONS

**Section 9.1**   **Certain Definitions**. As used herein, the terms below shall have the following respective meanings:

(a)    "Action" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summon, subpoena, or investigation of any nature, whether at law or in equity.

(b)    "Affiliate" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

(c)    "Ancillary Documents" means the Bill of Sale and Assignment and Assumption Agreement, Intellectual Property Assignments, and the other agreements, instruments and documents required to be delivered at the Closing.

(d)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Bankruptcy Case, and the general, local and chambers rules of the Bankruptcy Court.

(e)    "Business Day" means any day except Saturday, Sunday or any other day on which commercial banks located in New Jersey are authorized or required by Law to be closed for business.

(f)    "Claim" means all actions, claims, counterclaims, suits, proceedings, demand, lawsuit, arbitration, inquiry, audit, notice of violation, litigation, citation, summons, rights of action, causes of action, Liabilities, losses, damages, remedies, penalties, judgments, settlements, costs, expenses, fines, disbursements, demands, reasonable costs, fees and expenses of counsel, including in respect of subpoena, investigation, interest, demands and actions of any nature or any kind whatsoever, known or unknown, disclosed or undisclosed, accrued or unaccrued, matured or unmatured, choate or inchoate, legal or equitable, and arising in tort, contract or otherwise, including any "claim" as defined in the Bankruptcy Code.

(g)    "Code" means the Internal Revenue Code of 1986, as amended.

(h)    "Confidentiality Agreement" means that certain Non-Disclosure Agreement, by and between Buyer and Seller, dated as of June 5th, 2025.

(i)    "Consent" means any approval, consent, ratification, permission, waiver or authorization, or an Order of the Bankruptcy Court that deems or renders unnecessary the same.

(j)    "Contracts" means any agreement, contract, license, arrangement, commitment, promise, obligation, right, instrument, document, purchase order, sales order, or other similar commitment or instrument, whether written or oral, that is binding on the parties thereto (other than any leases).

(k)    "Customer Loyalty Data" means the date set forth on Schedule 1.1(b).

(l)    "Dataroom" means that certain data site administered by Intralinks at: https://services.intralinks.com/web/#workspace/18700445/documents and/or CapLinked at: https://secure.caplinked.com/workspaces/project-road-rite-aid, as applicable.

(m)    "De Minimis Sale Procedures Order" means the *Final Order (I) Authorizing and Establishing Procedures for the De Minimis Asset Transactions, (II) Authorizing and Establishing Procedures for De Minimis Asset Abandonment, and (III) Approving the Form and Manner of the Notice of De Minimis Asset Transactions and Abandonment* [Docket No. 778].

(n)    "Disclosure Schedules" means the Disclosure Schedules delivered by Seller and Buyer concurrently with the execution and delivery of this Agreement.

(o)    "Encumbrance" means any Interest, Liability, lien (statutory or otherwise, including as defined in section 101(37) of the Bankruptcy Code), claim (including as defined in section 101(5) of the Bankruptcy Code), community or other marital property interest, condition, equitable interest, right of way, encroachment, servitude, right of first refusal or right of first offer (or similar restriction), restriction of any kind (including any restriction on use, voting, transfer (including under any shareholder or similar agreement), receipt of income, or the exercise of any other attribute of ownership), deed of trust, easement, mortgage, pledge, charge, security interest or similar interests, option, security agreement, hypothecation, license, preference, priority, covenant, right of recovery, Order, imperfections or defects of title, conditional sale or other title retention agreement, assignment or deposit arrangement in the nature of a security device, right of a third party or Seller to use any portion of the Purchased Assets (including under any leasehold interest, license, or other right), lease or other imposition having substantially the same effect as any of the foregoing, or other adverse claims or interests of any kind, whether any of the foregoing is secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

(p)    "Escrow Agent" means The Fiduciary Valet Corp., a Florida corporation.

(q)    "Escrow Account" means the non-interest bearing account established by the Escrow Agent to hold the Deposit.

(r)    "Fraud" means a knowing and intentional misrepresentation of a material fact in one or more of the representations and warranties of (i) the Seller set forth in Article III or any Ancillary Document or (ii) Buyer set forth in Article IV or any Ancillary Document, in each case of clauses (i) and (ii), with the intent that the other Party rely on such fact, and, such other Party relies on such fact to its material detriment.

(s)      "Fundamental Representations" means the representations and warranties contained in Section 3.1 (*Organization and Qualification of Seller*), Section 3.2 (*Authority of Seller*), Section 3.3 (*No Conflicts; Consents*), Section 3.4 (*Title to Purchased Assets*), and Section 3.7 (*Brokers*).

(t)      "GAAP" means United States generally accepted accounting principles in effect from time to time.

(u)      "Governmental Authority" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority, including environmental Professionals (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

(v)      "Governmental Authorization" means any permit, license, certificate, approval, consent, permission, clearance, designation, qualification or authorization issued, granted, given or otherwise made available by or under the authority of any Governmental Authority or pursuant to any Law.

(w)      "Intellectual Property" means any and all rights in, arising out of, or associated with any of the following in any jurisdiction throughout the world: (a) issued patents and patent applications (whether provisional or non-provisional), including divisionals, continuations, continuations-in-part, substitutions, reissues, reexaminations, extensions, or restorations of any of the foregoing, and other Governmental Authority-issued indicia of invention ownership (including certificates of invention, petty patents, and patent utility models) ("Patents"); (b) trademarks, service marks, brands, certification marks, logos, trade dress, trade names, and other similar indicia of source or origin, together with the goodwill connected with the use of and symbolized by, and all registrations, applications for registration, and renewals of, any of the foregoing ("Trademarks"); (c) copyrights and works of authorship, whether or not copyrightable, and all registrations, applications for registration, and renewals of any of the foregoing ("Copyrights"); (d) internet domain names and social media account or user names (including "handles"), whether or not Trademarks, all associated web addresses, URLs, mobile apps, websites and web pages, social media sites and pages, and all content and data thereon or relating thereto, whether or not Copyrights ("Internet Properties"); (e) mask works, and all registrations, applications for registration, and renewals thereof; (f) industrial designs, and all Patents, registrations, applications for registration, and renewals thereof; (g) trade secrets, know-how, inventions (whether or not patentable), discoveries, improvements, technology, business and technical information, databases, data compilations and collections, tools, methods, processes, techniques, samples and other confidential and proprietary information and all rights therein ("Trade Secrets"); (h) computer programs, operating systems, applications, firmware and other code, including all source code, object code, application programming interfaces, data files, databases, protocols, specifications, and other documentation thereof ("Software"); (i) rights of publicity; and (j) all other intellectual or industrial property and proprietary rights.

(x)      "Intellectual Property Assets" means the Intellectual Property set forth on Schedule 1.1(a).

(y)      "Intellectual Property Registrations" means all Intellectual Property Assets that are subject to any issuance, registration, or application by or with any Governmental Authority or authorized private registrar in any jurisdiction, including issued Patents, registered Trademarks, domain names and Copyrights, and pending applications for any of the foregoing.

(z)      "Interest" means any interest within the meaning of section 363(f) of the Bankruptcy Code, including any interest of a Governmental Authority, and all other interests, pledges, security interests, rights of setoff, restrictions or limitations on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Seller (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal Law, whether known or unknown, legal or equitable, and all Encumbrances, rights of offset, replacement Encumbrances, adequate protection Encumbrances, charges, obligations, or claims granted, allowed or directed in any Order.

(aa)     "Knowledge of Seller" or "Seller's Knowledge"" or any other similar knowledge qualification, means the actual knowledge of Alyssa Parrish.

(bb)     "Law" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

(cc)     "Liabilities" means liabilities, obligations or commitments of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise.

(dd)     "Material Adverse Effect" means any event, occurrence, fact, condition or change that is, or could reasonably be expected to become, individually or in the aggregate, materially adverse on (a) the value of the Purchased Assets, or (b) the ability of Seller to consummate the Transactions on a timely basis; provided, however, that "Material Adverse Effect" shall not include any event, occurrence, fact, condition or change, directly or indirectly, arising out of or attributable to: (i) general economic or political conditions; (ii) conditions generally affecting the industries in which the Business operates or operated; (iii) any changes in financial or securities markets in general; (iv) acts of war (whether or not declared), armed hostilities or terrorism, or the escalation or worsening thereof; (v) any action required or permitted by this Agreement or any action taken (or omitted to be taken) with the written consent of or at the written request of Buyer; (vi) any changes in applicable Laws or accounting rules, including GAAP; (vii) the public announcement, pendency or completion of the Transactions; (viii) any natural or man-made disasters or acts of God; (ix) any epidemics, pandemics, disease outbreaks, or other public health emergencies; (x) any failure by the Business to meet any internal or published projections, forecasts or revenue or earnings predictions (provided that the underlying causes of such failures (subject to the other provisions of this definition) shall not be excluded); or (xi) the Bankruptcy Case, including the related liquidation of all of Seller's assets and winddown of its business, provided further, however, that any event, occurrence, fact, condition or change referred to in clauses (i) through (iv) immediately above shall be taken into account in determining whether a

Material Adverse Effect has occurred or could reasonably be expected to occur to the extent that such event, occurrence, fact, condition or change has a disproportionate effect on the Business compared to other participants in the industries in which the Business operates (in which case, only the incremental disproportionate adverse effect may be taken into account in determining whether a Material Adverse Effect has occurred).

(ee)    "Order" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority.

(ff)    "Permits" means all permits, licenses, franchises, approvals, authorizations, registrations, certificates, variances and similar rights obtained, or required to be obtained, from Governmental Authorities.

(gg)    "Permitted Encumbrance" means any Encumbrance to be removed or released pursuant to the Sale Order.

(hh)    "Person" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

(ii)    "Personal Information" means any data that identifies or has the capacity to identify an individual and is defined as personal information, personal data, personally identifiable information, or a similar term under any Laws, agreements, or internal or publicly posted policies, notices, or statements concerning the collection, use, processing, storage, transfer, and security of any such information.

(jj)    "Primary Conveyed Accounts" means the accounts, handles, storefronts, and related permissions thereto, as applicable to the platforms identified in Schedule 1.1 or Schedule 1.2 of this Agreement, including, without limitation:

a.    domain registrar accounts (GoDaddy, Network Solutions, NameCheap, 101 Domains, Network Solutions for Rite Aid Advertising, DynaDots as per Section (d) of the IP Schedule 1.1(a));

b.    short codes 88688, 75708, 96843 and related mobile aggregator accounts (e.g. Sinch, Twilio, or others);

c.    Amazon                    e-commerce                    account (https://www.amazon.com/stores/RiteAid/page/04A18F60-4172-49AE-B72C-72B4BC68DC); and

d..    social media accounts (as per the Specified Asset Schedule 1.2):

(i)    LinkedIn: Rite Aid
(ii)    YouTube: @riteaid
(iii)   Facebook: Rite Aid
(iv)    Instagram: @riteaid
(v)    X/Twitter: @riteaid

31

     (vi)  Pinterest: @riteaid

   (kk) "<u>Representative</u>" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

   (ll) "<u>Sale Order</u>" means the Order (i) approving this Agreement and the terms and conditions hereof, including pursuant to sections 363 and 365 of the Bankruptcy Code, and (ii) approving and authorizing Seller to consummate the Transactions, in form and substance reasonably acceptable to Seller and Buyer.

   (mm) "<u>Schedules</u>" means the schedules, other than the Disclosure Schedules, delivered by Seller and Buyer concurrently with the execution and delivery of this Agreement, as amended from time to time in accordance with and subject to the terms hereof.

   (nn) "<u>Taxes</u>" means all federal, state, local, foreign and other income, gross receipts, sales, use, production, ad valorem, transfer, documentary, franchise, registration, profits, license, lease, service, service use, withholding, payroll, employment, unemployment, estimated, excise, severance, environmental, stamp, occupation, premium, property (real or personal), real property gains, windfall profits, customs, duties or other taxes, fees, assessments or charges of any kind whatsoever, together with any interest, additions or penalties with respect thereto and any interest in respect of such additions or penalties.

   (oo) "<u>Tax Return</u>" means any return, declaration, report, claim for refund, information return or statement or other document relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

   (pp) "<u>Transactions</u>" means the transactions contemplated by this Agreement and the Ancillary Documents.

  **Section 9.2**  <u>**Index of Defined Terms**</u>.

| | |
|---|---|
| Action ...... 27 | Business ...... 4 |
| Affiliate ...... 27 | Business Confidential Information ...... 15 |
| Agreement ...... 4 | Business Day ...... 27 |
| Agreement Date ...... 4 | Buyer ...... 4 |
| Agreement Dispute ...... 24 | Cash Payment ...... 5 |
| Allocation ...... 6 | Chosen Courts ...... 25 |
| Ancillary Documents ...... 27 | Claim ...... 27 |
| Assumed Liabilities ...... 5 | Closing ...... 6 |
| Bankruptcy Cases ...... 4 | Closing Date ...... 6 |
| Bankruptcy Code ...... 4 | Code ...... 27 |
| Bankruptcy Court ...... 4 | Confidentiality Agreement ...... 27 |
| Bankruptcy Court Milestones ...... 13 | Consent ...... 27 |
| Bankruptcy Rules ...... 27 | Contracts ...... 28 |
| Bill of Sale and Assignment and | Copyrights ...... 29 |
|  Assumption Agreement ...... 7 | Customer Loyalty Data ...... 28 |

Dataroom.................................................. 28
De Minimis Sale Procedures Order ......... 28
Deposit .................................................... 5
Disclosure Schedules ............................... 28
Encumbrance............................................ 28
Escrow Account....................................... 28
Escrow Agent........................................... 28
Excluded Assets ........................................ 5
Excluded Liabilities .................................. 5
Fraud ....................................................... 28
Fundamental Representations .................. 29
GAAP...................................................... 29
Governmental Authority .......................... 29
Governmental Authorization ................... 29
Indemnified Parties ................................. 18
Intellectual Property................................ 29
Intellectual Property Assets ..................... 29
Intellectual Property Assignments ............ 7
Intellectual Property Registrations........... 30
Interest.................................................... 30
Internet Properties................................... 29
Knowledge of Seller ................................ 30
Law ......................................................... 30
Liabilities ................................................ 30
Licensees................................................. 17
Limited IP License................................... 17
Material Adverse Effect........................... 30
Opt-Out List ........................................... 18
Opt-Out List Purpose .............................. 18

Order ...................................................... 31
Outside Date............................................ 21
Parties ....................................................... 4
Party ......................................................... 4
Patents .................................................... 29
Permits .................................................... 31
Permitted Encumbrance ........................... 31
Person...................................................... 31
Personal Information................................ 31
Petition Date............................................. 4
Primary Conveyed Accounts ................... 31
Purchase Price ........................................... 5
Purchased Assets........................................ 4
Representative.......................................... 32
Rite Aid .................................................... 4
Sale Order ............................................... 32
Schedules ................................................ 32
Seller ........................................................ 4
Seller's Knowledge.................................. 30
Software .................................................. 29
Specified Assets ........................................ 5
Tax Claims .............................................. 17
Tax Return .............................................. 32
Taxes ...................................................... 32
Trade Secrets........................................... 29
Trademarks ............................................. 29
Transactions ............................................ 32
Wind Down Sale ..................................... 17

*[SIGNATURE PAGE FOLLOWS]*

**<u>Exhibit B</u>**

**Proposed Sale Order**

**U.S. BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al*., | Case No. 25-14861 (MBK) |
| Debtors.[1] | (Jointly Administered) |

### ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE RITE AID LLC ASSET PURCHASE AGREEMENT, (II) APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through thirty-four (34) is

**ORDERED.**

DATED: December _____, 2025

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Caption in Compliance with D.N.J. LBR 9004-1(b)

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

Upon the motion dated May 6, 2025 [Docket No. 17] (the "Motion"),[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), for an order (this "Order"): (a) authorizing and approving the entry into and performance under the terms and conditions of that certain Asset Purchase Agreement, dated as of December 5, 2025, by and among certain of the Debtors (the "Sellers") and Rite Aid LLC, (the "Purchaser"), substantially in the form attached hereto as **Exhibit 1** to the Order (as it may be amended, modified, or supplemented in accordance with its terms, the "Asset Purchase Agreement"), and all other transaction documents necessary and desirable to consummate the transactions contemplated by the Asset Purchase Agreement (the "Transaction Documents"); (b) authorizing the Debtors to sell the Purchased Assets (as defined in the Asset Purchase Agreement) to the Purchaser as described in the Asset Purchase Agreement, free and clear of liens, claims, Encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code and in accordance with the terms set forth in the Asset Purchase Agreement (the "Sale"); (c) providing that the appointment of a consumer privacy ombudsman is not required; and

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Motion, the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice With Respect Thereto, and (VII) Granting Related Relief* [Docket No. 473] (the "Bidding Procedures Order"), the Bidding Procedures, or the Asset Purchase Agreement, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

(d) granting related relief, all as more fully set forth in the Motion; and the Court having entered the Bidding Procedures Order [Docket No. 473]; and the Debtors, on October 17, 2025, having filed the *Notice of Sale by Auction for Debtors' Intangible Assets* [Docket No. 2918] (the "Auction Notice"), scheduling an auction (the "Auction") for the Purchased Assets in accordance with the Bidding Procedures; and offers for the Purchased Assets having been due on October 31, 2025 in accordance with the Auction Notice; and the Auction having taken place on November 6, 2025; and the Debtors having determined that the Purchaser has submitted the highest or otherwise best bid for the Purchased Assets and determined that the Purchaser is the Successful Bidder, in accordance with the Bidding Procedures; and the Debtors having filed and served the Auction Notice and *Notice of (I) Successful Bidder, (II) Adjournment of Intangible Assets Auction, and (III) Filing of Proposed Order (A) Authorizing and Approving the Sale of Certain of the Debtors' Assets, With Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (B) Granting Related Relief* [Docket No. ●] (the "Notice of Successful Bidder and Sale Hearing") in accordance with the Bidding Procedures Order; and the Debtors having filed and served the Notice of Successful Bidder and Sale Hearing with respect to the Purchased Assets in accordance with the Bidding Procedures, and the Debtors having filed the form of Order on May 9, 2025, and the Court having held a hearing, if any (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion and the proposed Order; and the Court having reviewed and considered the Motion, the Asset Purchase Agreement, the proposed Order, and any and all objections to the Sale, the Asset Purchase Agreement, and the other Transaction Documents filed in accordance with the Bidding Procedures Order; and upon the

(Page | 5)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

*Declaration of Jean-Pierre Khoueiri in Support of Entry of Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief* [Docket No. [●]]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their stakeholders, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and the proposed Order was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the Sale Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing, it is hereby

**FOUND, CONCLUDED, AND DETERMINED THAT:**

**Petition Date; Jurisdiction, Venue, and Final Order**

A.  On May 5, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

(Page | 6)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

B.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and any other applicable Bankruptcy Rules or Local Rules, and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

D.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Notice of the Bidding Procedures Order, the Bidding Procedures,
the Asset Purchase Agreement and the Sale, the Auction, the Sale Hearing, and this Order**

E.      As evidenced by the Auction Notice and service thereof [Docket No. 2918], the Notice of Successful Bidder and Sale Hearing [Docket No. [●]], the form of Order [Docket No. 186], affidavits of service and publication previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Hearing, the Asset Purchase Agreement, entry of this Order, and the Sale has been provided in accordance with section 363 of the Bankruptcy Code,

(Page | 7)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

Bankruptcy Rules 2002, 6004, 9007, and 9014, and Local Rule 6004-3. The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Hearing, the Asset Purchase Agreement, or the Sale is required.

F.      No further notice beyond that described in this Order is required in connection with the Sale.

G.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

**Authority to Execute and Perform Under the Asset Purchase Agreement**

H.      The Debtors' performance under the Asset Purchase Agreement is approved in all respects. The Debtors are authorized to execute and perform under the Asset Purchase Agreement pursuant to sections 363 of the Bankruptcy Code and may close the Sale pursuant to the Asset Purchase Agreement.

**Highest or Best Offer**

I.      The Debtors conducted a sale process in accordance with (i) and have complied in all respects with the Bidding Procedures Order and (ii) the purpose of obtaining the highest or otherwise best offer for, and have afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase, the Purchased Assets (including assumption of the Assumed Liabilities).

J.      (i) Prior to and from and after the commencement of these chapter 11 cases, the Debtors and their advisors engaged in a robust and extensive marketing and sale process and exercised sound business judgment; (ii) the Bidding Procedures were substantively and

(Page | 8)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

procedurally fair to all parties and the Debtors conducted a fair and open sale process in compliance therewith, (iii) the sale process, the Bidding Procedures, and the Auction, were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Purchased Assets, or who the Debtors believed may have had an interest in acquiring the Purchased Assets, to make an offer to purchase the Debtors' assets, including, without limitation the Purchased Assets, (iv) the Debtors and the Purchaser have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good-faith manner; and (v) the sale process conducted by the Debtors pursuant to the Bidding Procedures and the Bidding Procedures Order resulted in the highest or otherwise best value for the Purchased Assets for the Debtors and their estates, was in the best interest of the Debtors, their estates, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result. There is no legal or equitable reason to delay entry into the Asset Purchase Agreement and the transactions contemplated therein.

K.     Approval of the Asset Purchase Agreement, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of their obligations under the Asset Purchase Agreement. The Sale must be approved and consummated in order to maximize the value of the Debtors' estates.

L.     The consummation of the Sale outside a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor

(Page | 9)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

M.      Entry of an order approving the Asset Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Sale.

### Good Faith of the Purchaser

N.      The consideration to be paid by the Purchaser under the Asset Purchase Agreement was negotiated at arm's length, in good faith, and without collusion pursuant to section 363(m) of the Bankruptcy Code and constitutes reasonably equivalent value and fair and adequate consideration for the Purchased Assets. Specifically: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the Purchaser complied in all respects with the provisions in the Bidding Procedures Order in negotiating and entering into the Asset Purchase Agreement and the other Transaction Documents, and the Asset Purchase Agreement, the other Transaction Documents, and the transactions described therein comply with the Bidding Procedures Order; (iii) the Purchaser agreed to subject any bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments made by the Purchaser in connection with the Sale have been disclosed in the Asset Purchase Agreement; (v) no common identity of directors, officers, or controlling stockholders exists among the Purchaser and the Debtors; (vi) the negotiation and execution of the Asset Purchase Agreement was at arm's length and in good faith, and at all times each of the Purchaser and the Debtors were represented by competent counsel of their choosing; and (vii) the Purchaser

(Page | 10)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

has not acted in a collusive manner with any person. The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement. The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

O.     The Debtors, the Purchaser, and each of their respective management, boards of directors, members, officers, directors, employees, agents, and representatives, as applicable, have acted in good faith. The Asset Purchase Agreement and the other Transaction Documents were negotiated, proposed, and entered into by the Debtors and the Purchaser in good faith, without collusion or fraud, and from arm's-length bargaining positions. The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

P.     The Asset Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Debtors, the Purchaser, and their respective agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

(Page | 11)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

## **Personally Identifiable Information**

Q.      The transfer of personally identifiable information (as defined in section 101(41A) of the Bankruptcy Code) ("Personal Information") to be effected pursuant to the Transaction Documents complies with the Debtors' Privacy Policy in effect as of the Petition Date and, as a result, consummation of the Sale as set forth in the Transaction Documents is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code.

R.      Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale and the transactions contemplated by the Transaction Documents.  To the extent applicable, the [Notice of Successful Bidder and Sale Hearing] contains any information required pursuant to Bankruptcy Rule 2002(c)(1).

## **No Fraudulent Transfer**

S.      The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement for its purchase of the Purchased Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, and the District of Columbia.

T.      Neither the Purchaser nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance

(Page | 12)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

companies, or partners (collectively, the "Purchaser Parties") is a continuation of the Debtors or

their respective estates, and the Purchaser is not holding itself out to the public as a continuation

of the Debtors or their respective estates and the Sale does not amount to a consolidation, merger,

or *de facto* merger of the Purchaser and the Debtors.

## **Validity of Transfer**

U.      Subject to entry of this Order, the Debtors (i) have full corporate power and

authority to execute and deliver the Asset Purchase Agreement and all other documents

contemplated thereby, as applicable, (ii) have all of the power and authority necessary to

consummate the Sale, and (iii) have taken all action necessary to authorize and approve the Asset

Purchase Agreement and to consummate the Sale, and no further consents or approvals, other than

those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to

consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise

set forth in the Asset Purchase Agreement. The Purchased Assets constitute property of the

Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code, and title thereto is

presently vested in the Debtors' estates.

## **Section 363(f) Is Satisfied**

V.      The Sale of the Purchased Assets to the Purchaser, including the Contracts, under

the terms of the Asset Purchase Agreement meets the applicable provisions of section 363(f) of

the Bankruptcy Code such that the Sale of the Purchased Assets will be free and clear of any and

all liens, claims, Encumbrances, and other interests, and will not subject the Purchaser to any

liability for any claims whatsoever (including, without limitation, under any theory of equitable

(Page | 13)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

---

law, antitrust, or successor or transferee liability) (collectively, "Claims and Interests"), except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens[3]. All holders of Claims and Interests who did not object or who withdrew their objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code and all holders of Claims and Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Claims and Interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert Claims and Interests or other specifically dedicated funds in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to (a) any rights, claims, and defenses of the Debtors or their estates, as applicable and (b) paragraph 40 of this Order. Those holders of Claims and Interests who did object and who have an interest in the Purchased Assets fall under one or more of the other subsections of section 363(f) of the Bankruptcy Code.

W.     The transfer of the Purchased Assets to the Purchaser under the Asset Purchase Agreement will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of all Claims and Interests, except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens. The Debtors may sell their interests in the Purchased Assets free and clear of all Claims and Interests because, in each case, one or more of the standards set forth

---

[3]     "Permitted Lien" shall have the same meaning as ascribed to "Permitted Encumbrance" in the Asset Purchase Agreement.

(Page | 14)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

in section 363(f) has been satisfied. The Purchaser would not have entered into the Asset Purchase

Agreement and the Transaction Documents and would not consummate the transactions

contemplated thereby, including, without limitation, the Sale, (i) if the transfer of the Purchased

Assets was not free and clear of all interest of any kind or nature whatsoever, including, without

limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or

any similar theory, and/or applicable state or federal law or otherwise or (ii) if the Purchaser or

any of its affiliates or designees would, or in the future could, be liable for any interests, including,

without limitation, rights or claims based on any successor, transferee, derivative or vicarious

liability or any similar theory, and/or applicable state or federal law or otherwise, in each case,

subject only to the Assumed Liabilities and Permitted Liens. Not transferring the Purchased Assets

free and clear of all Claims and Interests of any kind or nature whatsoever, including, without

limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or

any similar theory, and/or applicable state or federal law or otherwise (subject only to the Assumed

Liabilities and Permitted Liens) would adversely impact the Debtors' efforts to maximize the value

of their estates.

## **Prompt Consummation**

X.      The sale of the Purchased Assets must be approved and consummated promptly to

maximize value for the Debtors' estates, and avoid irreparable harm to the Debtors' estates and

their stakeholders, including their creditors and customers. Time, therefore, is of the essence in

effectuating the Asset Purchase Agreement. As such, the Debtors and the Purchaser intend to close

the sale of the Purchased Assets as soon as reasonably practicable in accordance with the terms of

(Page | 15)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

the Asset Purchase Agreement. The Debtors have demonstrated immediate and irreparable harm absent entry of this Order and compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Asset Purchase Agreement. Accordingly, there is sufficient cause to waive the stay provided in Bankruptcy Rule 6004(h) and 6006(d) and any other applicable Bankruptcy Rule or Local Rule.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The Motion is **GRANTED** as set forth herein.

2. All objections to or reservations of rights with respect to the Motion or the relief requested therein that have not been withdrawn or resolved are overruled with prejudice. All persons and entities who did not object or withdraw their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

3. The Asset Purchase Agreement, attached hereto as **Exhibit 1,** and the other Transaction Documents and all terms and conditions thereof, are hereby approved in all respects. The failure to specifically include any particular provision of the Asset Purchase Agreement or the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision.

**Transfer of the Purchased Assets
as set forth in the Asset Purchase Agreement**

4. The Debtors are authorized, but not directed, to take any and all actions necessary and appropriate to cause the Sellers to: (a) consummate the transactions contemplated by the Asset

(Page | 16)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

Purchase Agreement and the Transaction Documents in accordance with the terms thereof; (b) sell the Purchased Assets to the Purchaser for the purchase price in accordance with the terms of this Order and the Asset Purchase Agreement and the Transaction Documents; (c) assume and assign any and all Contracts, and (d) otherwise implement and effectuate the terms of the Asset Purchase Agreement and the Transaction Documents.

5.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets shall be transferred to the Purchaser, free and clear of any and all Claims and Interests, with all such Claims and Interests to attach to the proceeds of the Purchased Assets in the order of their priority, with the same force, effect, and validity that they had immediately prior to the entry of this Order, subject to any rights, claims, or defenses the Debtors may have with respect thereto, *except* with respect to any Assumed Liabilities or Permitted Liens allowed under the Asset Purchase Agreement and subject to paragraph 29 of this Order. Such transfer shall constitute a legal, valid, binding, and effective transfer of the Purchased Assets.

6.      As set forth in the Asset Purchase Agreement, the Purchaser is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities.

7.      Except for (a) the Assumed Liabilities expressly set forth in the Asset Purchase Agreement or described therein or (b) the Permitted Liens expressly set forth in the Asset Purchase Agreement none of the Purchaser, its successors or assigns, or any of their respective affiliates shall have any liability for any Claims and Interests that (x) arose prior to the date of Closing, or (y) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the

(Page | 17)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

date of Closing, including, for the avoidance of doubt, Claims and Interests arising out of the Excluded Liabilities.

8.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Asset Purchase Agreement, the Transaction Documents, and this Order.

9.     At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the corresponding Purchased Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of such Purchased Assets. All persons or entities presently or at or after Closing in possession of some or all of the corresponding Purchased Assets are directed to surrender possession of any and all portions of such Purchased Assets to the Purchaser or its respective designees at Closing or at such time thereafter as the Purchaser may request.

10.     This Order (a) shall be effective as a determination that, as of Closing, (i) no Claims and Interests other than the corresponding Assumed Liabilities and Permitted Liens will be assertable against the Purchaser or any of its assets, (ii) the corresponding Purchased Assets shall have been transferred to the Purchaser free and clear of all Claims and Interests, subject only to the applicable Assumed Liabilities and Permitted Liens, and (iii) the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of

(Page | 18)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the Transaction Documents. The Purchased Assets are sold free and clear of any reclamation rights. All Claims and Interests on the Purchased Assets shall attach to the proceeds of the Sale ultimately attributable to the property against which such Claims and Interests applied or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such Claims and Interests applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, subject to paragraph 29 of this Order.

11.     Except as otherwise provided in the Asset Purchase Agreement, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims arising under or out of, in connection with or in any way relating to, the Debtors, the Purchased Assets, and the ownership, sale, or operation of the Purchased Assets prior to Closing or the transfer of the applicable Purchased Assets to the Purchaser are hereby forever barred, estopped, and permanently enjoined from asserting such claims against the Purchaser and its property (including, without limitation, the Purchased Assets). Following Closing, no holder of any claim or interest shall interfere with the Purchaser's title to or use and enjoyment of the

(Page | 19)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

corresponding Purchased Assets based on or related to any such claim or interest or based on any action the Debtors may take in their chapter 11 cases.

12.     If any person or entity that has filed financing statements, mortgages, mechanic's claims, *lis pendens*, or other documents or agreements evidencing claims against the Debtors or in the Purchased Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all Claims and Interests that the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by the Purchaser pursuant to the Asset Purchase Agreement and this Order: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets; (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Interests against the Purchaser Parties and the Purchased Assets; and (c) upon consummation of the Sale, the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and Interests that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code and any other provisions of the Bankruptcy Code with respect to the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Order

(Page | 20)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

authorizing the Sale and assignment of the Purchased Assets free and clear of Claims and Interests shall be self-executing and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

13.     Effective upon Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser or its assets (including, without limitation, the Purchased Assets), with respect to any (a) claim in these chapter 11 cases or in connection with or related to the Sale or the Debtors or (b) Successor or Transferee Liability (defined below), including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or Encumbrance; (iv) asserting any set-off, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action in any manner or place that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any License (defined below) to operate any business in connection with the Purchased Assets or conduct any of the businesses operated with respect to such assets.

(Page | 21)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

## No Successor or Transferee Liability

14.     The Purchaser shall not be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Sale, or the transfer, operation, or use of the Purchased Assets to (a) be a legal successor or otherwise be deemed a successor to the Debtors (other than with respect to any Assumed Liabilities and Permitted Liens arising after Closing), (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors, including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act of 1974 (as amended), tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation.

15.     Immediately prior to each closing, Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Purchaser and the Debtors.

16.     Other than as expressly set forth in the Asset Purchase Agreement, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Purchased Assets or (b) any claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the Asset Purchase Agreement with respect to the

(Page | 22)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

Purchaser, the Purchaser shall not have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets or the Assumed Liabilities or prior to Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefit which is or has been sponsored, maintained, or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent.

## **Good Faith Purchaser**

17.    The Sale contemplated by the Asset Purchase Agreement is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

(Page | 23)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

18.     Neither the Debtors nor the Purchaser have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and the Sale may not be avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy Code.

## Other Provisions

19.     To the maximum extent permitted by applicable law and the Asset Purchase Agreement and other Transaction Documents, the Purchaser shall be authorized, as of Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Purchased Assets.

20.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or License relating to the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale contemplated by the Asset Purchase Agreement.

21.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in writing and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

22.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, (a) to allow

(Page | 24)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

the Purchaser to give the Debtors any notice provided for in the Asset Purchase Agreement, (b) to allow the Purchaser to take any and all actions permitted by the Asset Purchase Agreement and the Transaction Documents in accordance with the terms and conditions thereof, including, without limitation, effectuating the Sale and the other transactions contemplated by the Asset Purchase Agreement and the Transaction Documents, and (c) to otherwise implement the terms and provisions of the Asset Purchase Agreement, the Transaction Documents, and this Order.

23.     The terms and provisions of the Asset Purchase Agreement, and this Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the Purchased Assets, all counterparties to the Contracts, the Purchaser, and all of their respective successors and assigns, including, but not limited to, as applicable, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors' chapter 11 cases or upon conversion to chapter 7 under the Bankruptcy Code, as to which the terms and provisions of such trustee(s), examiner(s), or receiver(s) likewise shall be binding. The Asset Purchase Agreement shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), receiver(s), or any other successor parties in interest.

24.     The terms and provisions of this Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in any of these chapter 11 cases; (b) converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the chapter 11 cases; (d) transferring venue of the chapter

(Page | 25)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

---

11 cases to a court other than this Court; or (e) pursuant to which this Court abstains from hearing any of the chapter 11 cases. The terms and provisions of this Order, notwithstanding the entry of any such orders described in (a)–(e) above, shall continue in these chapter 11 cases or following dismissal of these chapter 11 cases.

25.    Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the Transaction Documents.

26.    The Asset Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

27.    The Asset Purchase Agreement may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court; *provided* that any such modification, amendment, or supplement does not, based on the Debtors' business judgment, and in consultation with the Consultation Parties (as defined in the Bidding Procedures), have a material adverse effect on the Debtors' estates or their creditors. The Debtors shall provide the Consultation Parties and the U.S. Trustee with prior notice of any such modification, amendment, or supplement of the Asset Purchase Agreement.

28.    This Order is and shall be binding upon all persons and entities that may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or that may be required to report or insure any title or state of title in or to any property; and each of the foregoing persons and entities shall accept

(Page | 26)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

for filing any and all of the documents and instruments necessary and appropriate to consummate the Asset Purchase Agreement.

29.     Any Transaction Fee[4] or Commission due to Hilco IP Services, LLC ("Hilco") as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Hilco) in the Debtors' or their agents' bank accounts from the proceeds of such Sale Transaction (including, without limitation, from the proceeds of any liquidation or other disposition of the Debtors' assets), as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders, prior to any other use or distribution of such proceeds. If any Sale Transaction is the result of a successful bid without a cash component sufficient to pay the corresponding Transaction Fee due to Hilco in full, then any resulting unpaid portion of the Transaction Fee due to Hilco shall be segregated and escrowed (for the exclusive benefit of Hilco) at the closing of such Sale Transaction from the available cash of the Debtors, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders. Nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Hilco or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Hilco.  Notwithstanding anything to the contrary set forth herein, the requirements and obligations contained in this paragraph to pay Hilco any such

---

[4]     Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed to such terms in that certain *Agreement to Market and Sell Intangible Assets of New Rite Aid, LLC and its Debtor Affiliates* between Hilco and the Debtors, dated as of September 23, 2025 [Docket No. 3221, Exhibit 1].

(Page | 27)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

Transaction Fee on account of such Sale Transaction shall be subject in all respects to the *Amended Order (I) Authorizing the Retention and Employment of Hilco IP Services, LLC D/B/A Hilco Streambank as Intangible Assets Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and (III) Granting Related Relief* [Docket No. 3321] (the "Hilco Retention Order") and the terms of the Hilco Retention Order, and the entry of an order by the Court approving any such fees including the Transaction Fee.  All rights of the U.S. Trustee are reserved to object to such fees including the Transaction Fee pursuant to 11 U.S.C. § 330.

30.    To the extent there are any inconsistencies between this Order, the Motion, the Bidding Procedures Order, the Bidding Procedures, the Asset Purchase Agreement, and the Transaction Documents, the terms of this Order shall control.

31.    Except to the extent expressly provided herein, notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any prepetition claim, interest, or lien against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim, interest, or lien on any grounds; (c) a promise or requirement to pay prepetition claims; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) an implication or admission that any particular claim, interest, or lien is of a type specified or defined in the Motion or this Order; (f) an authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (g) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

(Page | 28)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

32. The Debtors, in connection with offering a product or service, have not disclosed any policies prohibiting the transfer of Personal Information about individuals to persons that are not affiliated with the Debtors that are inconsistent with the Sale. Nothing contained in this Order prejudices parties in interest from seeking the appointment of a consumer privacy ombudsman in connection with any other proposed sale.

33. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014 or any other Bankruptcy Rules or Local Rules to the contrary, the terms and conditions of this Order shall be effective and enforceable immediately upon entry, and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

34. Notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, and the Sale, including through distribution of the Auction Notice and the Notice of Successful Bidder and Sale Hearing shall be deemed good and sufficient notice of such Motion, the Sale Hearing, the Asset Purchase Agreement, and the Sale, and the requirements of Bankruptcy Rules 2002, 6004(a), and 6004(c) and the Local Rules are satisfied by such notice. The Auction Notice and Notice of Successful Bidder and Sale Hearing is hereby approved.

35. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

36. Notwithstanding any provision to the contrary in this Order, any Transaction Documents, or any other document related to the sale of the Purchased Assets, with respect to the United States of America (including all agencies, departments, and instrumentalities thereof, the "United States"), nothing shall:

(Page | 29)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

i.  release, nullify, preclude, or enjoin the enforcement of any police or regulatory powers;

ii.  affect the setoff or recoupment rights of the United States against the Debtors;

iii.  confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

iv.  solely to the extent included in the Purchased Assets, authorize the assumption, assignment, sale or other transfer of any federal: (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) leases, (i) certifications, (j) applications, (k) registrations, (l) billing numbers, (m) national provider identifiers, (n) provider transaction access numbers, (o) licenses, (p) permits, (q) covenants, (r) inventory, (s) guarantees, (t) indemnifications, (u) data, (v) records, or (w) any other interests belonging to the United States (collectively, "Federal Interests"), without compliance by the Debtors and Purchaser with the terms of the Federal Interests or, to the extent section 365 of the Bankruptcy Code is applicable, section 365(c);

v.  be interpreted to set cure amounts under section 365 of the Bankruptcy Code or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; or

vi.  expand the scope of 11 U.S.C.§ 525.

37.    In the event of an inconsistency or conflict between any provision of the Transaction Documents and any provision of this Order, as to the United States, the provisions of this Order shall govern.

38.    Notwithstanding any provision to the contrary in this Order, any Transaction Documents, or any other document related to the sale of the Purchased Assets, after Closing, nothing in such documents shall release, nullify, preclude, or enjoin the enforcement of any police or regulatory powers, under environmental statutes or regulations, to a governmental unit that any

(Page | 30)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

entity would be subject to as the post-sale owner or operator of the applicable Purchased Assets after the date of the Closing.

39.     Nothing in this Order, the Transaction Documents, or any document, agreement, or instrument contemplated by any of the foregoing, including any "transition services or transition period agreements", shall: (a) be construed to authorize or permit (i) the assumption and/or assignment of any surety bond issued by (A) International Fidelity Insurance Company and/or its affiliates, (B) Berkley Insurance Company, (C) The Hanover Insurance Company, and/or (D) RLI Insurance Company (items A through D, collectively, the "Sureties" and, each individually, a "Surety") on behalf of the Debtors (collectively, the "Surety Bonds" and, each individually, a "Surety Bond"), (ii) the assumption and/or assignment of any indemnity agreements executed by one or more of the Debtors pursuant to which the Surety Bonds were issued (the "Indemnity Agreements" and, each individually, an "Indemnity Agreement"), or (iii) obligate a Surety to replace any Surety Bond and/or issue any new surety bond on behalf of a Purchaser; or (b) be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Surety Bond and/or any Indemnity Agreement, including, for the avoidance of doubt, that the Purchaser shall not be a substitute principal under any Surety Bond or any Indemnity Agreement absent a Surety's consent thereto or further order of the Bankruptcy Court. Additionally, nothing in this Order, the Transaction Documents, or any "transition agreement", or any other document, agreement, or instrument contemplated by any of the foregoing shall be deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that the Sureties have or may have under applicable bankruptcy and non-bankruptcy laws, under any of the their respective

(Page | 31)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

Surety Agreements, or related agreements, or any letters of credit, or other Surety collateral relating thereto.

40.     Nothing in this Sale Order shall authorize the sale of any credits and/or chargebacks provided by Haleon US Services, Inc. f/k/a GSK Consumer Healthcare Services Inc. to any of the Debtors (including but not limited to Loyalty and/or Co-op Funding, Feature Ad Costs and/or other promotional costs associated with Haleon brands as well as any other type of credit Rite Aid may assert) (the "Credits"), and such Credits shall be an asset excluded from any such sale.

41.     Notwithstanding anything to the contrary in this Order, the Motion, any Asset Purchase Agreement, the Transaction Documents, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, any Contract Assumption Notice, any Supplemental Contract Assumption Notice, any notice or list of Assigned Contracts and/or Cure Payments, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, assumption, assignment or any other transfer to any Purchaser at this time of (i) any insurance policies that have been issued by ACE American Insurance Company and/or any of its U.S.-based affiliates and/or any predecessors and successors of any of the foregoing (collectively, and solely in their capacities as insurers under the foregoing policies, the "Chubb Companies") to, or pursuant to which coverage is provided to, any of the Sellers (or their affiliates or predecessors) at any time, and all agreements, documents or instruments relating to such policies, including, without limitation, any collateral or security provided by or on behalf of any of the Sellers (or their affiliates or predecessors) to any of the Chubb Companies and the proceeds thereof (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, interests, proceeds,

(Page | 32)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts including, without limitation, any of the Chubb Companies' indemnity, subrogation, setoff, recoupment, and/or other rights; (b) the Chubb Insurance Contracts and any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts (i) are not and shall not be deemed to be Assigned Contracts, Purchased Assets, or a portion of any of the Purchased Assets sold, assigned or otherwise transferred as part of any the Sale hereunder, and (ii) shall be deemed to be Excluded Assets; (c) nothing herein shall alter, modify or otherwise amend the terms, conditions, rights, and/or obligations of and/or under the Chubb Insurance Contracts; (d) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, insureds under any of the Chubb Insurance Contracts; *provided*, *however*, that, to the extent any claim with respect to the Purchased Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"), *provided*, *further*, *however*, that the Chubb Companies shall not have any duty to the Purchaser to effectuate a Proceed Turnover or liability to the Purchaser related to a Proceed Turnover.

42.    For the avoidance of doubt, the Purchased Assets shall not include any of the Debtors' rights arising under or in connection with that certain Supply Agreement between Rite Aid Corporation and McKesson Corporation ("McKesson"), dated as of August 30, 2024 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Supply Agreement"), including any rebates, rights of return, set-off, recoupment,

(Page | 33)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

indemnification, rights to the assignment of antitrust claims, or related assets of the Debtors.

Notwithstanding anything to the contrary in this Order, but without limiting the Purchaser's

protections under this Order, McKesson's rights (a) against the Debtors under the Supply

Agreement, and (b) against the Debtors and/or any other parties to any intercreditor agreements

related to the Supply Agreement under such intercreditor agreements are fully reserved.

43.     In accordance with Section 5.16 *(Further Assurances)* of the Asset Purchase

Agreement, following the Closing, the Debtors and Purchaser will execute any document as may

reasonably be required to facilitate Purchaser's access to, and possession of, the Primary Conveyed

Accounts as defined in Section 9.1 of the Asset Purchase Agreement, which includes:

a.     domain registrar accounts (GoDaddy, Network Solutions, NameCheap, 101 Domains, Network Solutions for Rite Aid Advertising, DynaDots as per Section (d) of the IP Schedule 1.1(a));

b..     short codes 88688, 75708, 96843 and related mobile aggregator accounts (e.g. Sinch, Twilio, or others);

c.     Amazon e-commerce account (https://www.amazon.com/stores/RiteAid/page/04A18F60-4172-49AE-B72C-72B4BC68DC); and

d..     social media accounts (as per the Specified Asset Schedule 1.2):

(i)     LinkedIn: Rite Aid

(ii)      YouTube: @riteaid

(iii)     Facebook: Rite Aid

(iv)     Instagram: @riteaid

(v)     X/Twitter: @riteaid

(Page | 34)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief |

(vi)    Pinterest: @riteaid

44.    From and after the Closing, all third party platforms managing, hosting and/or related to the Primary Conveyed Accounts are authorized to transfer administrative control of the Primary Conveyed Accounts to Purchaser.

45.    Each third-party digital platform and online marketplace, including Amazon, Meta, X, LinkedIn, YouTube, and Pinterest, is entitled to rely on this Order and the Transaction Documents in connection with providing Purchaser with access to, and possession of, the Primary Conveyed Accounts in accordance with the Transaction Documents.

46.    This Sale Order shall be binding upon any Chapter 11 or Chapter 7 trustee appointed in these bankruptcy cases.

47.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including, without limitation, jurisdiction for the Court to enter further orders necessary to provide Purchaser with access to, and possession of, the Primary Conveyed Accounts in accordance with the Transaction Documents.

**<u>Exhibit C</u>**

**Redline of Proposed Sale Order against Form Sale Order**

| ~~UNITED STATES~~ U.S. BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| In re: <br><br> NEW RITE AID, LLC, *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 25-14861 (MBK) <br><br> (Jointly Administered) |

~~ORDER~~ **ORDER (I)** ~~AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE [PURCHASER NAME] ASSET PURCHASE AGREEMENT, (II) APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS TO PURCHASER AND ESTABLISHING CURE AMOUNTS RELATED THERETO IN ACCORDANCE WITH THE ASSUMPTION AND ASSIGNMENT PROCEDURES,[1] AND (IV) GRANTING RELATED RELIEF~~ **AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE RITE AID LLC ASSET PURCHASE AGREEMENT, (II) APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF**

---

The relief set forth on the following pages, numbered ~~[three (3)]~~ through ~~[thirty-six]~~ (~~[36]~~ **thirty-four (34)**) is **ORDERED.**

---

[1]     The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' ~~proposed~~ claims ~~and~~, noticing, **and solicitation** agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

~~[1]     **Note to Draft**: This form of sale Order contemplates the proposed assumption and assignment of executory contracts and/or unexpired leases to the Purchaser.  To the extent the Asset Purchase Agreement does not propose to assume and assign contracts, such language may be removed from the sale Order.~~

**DATED: December ____, 2025**

_____

**Honorable Michael B. Kaplan**
**United States Bankruptcy Judge**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**
Andrew N. Rosenberg (**admitted** *pro hac vice* ~~pending~~)
Alice Belisle Eaton (**admitted** *pro hac vice* ~~pending~~)
Christopher Hopkins (**admitted** *pro hac vice* ~~pending~~)
Sean A. Mitchell (**admitted** *pro hac vice* ~~pending~~)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
**Facsimile: (212) 757-3990**
**arosenberg@paulweiss.com**
**aeaton@paulweiss.com**
**chopkins@paulweiss.com**
**smitchell@paulweiss.com**

~~Facsimile: (212) 757-3990~~
~~arosenberg@paulweiss.com~~
~~aeaton@paulweiss.com~~
~~chopkins@paulweiss.com~~
~~smitchell@paulweiss.com~~
-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (**admitted** *pro hac vice* ~~pending~~)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
**Telephone: (201) 489-3000**
**msirota@coleschotz.com**
**wusatine@coleschotz.com**
**fyudkin@coleschotz.com**
**svanaalten@coleschotz.com**

~~Telephone: (201) 489-3000~~
~~msirota@coleschotz.com~~
~~wusatine@coleschotz.com~~
~~fyudkin@coleschotz.com~~
~~svanaalten@coleschotz.com~~
~~*Proposed*~~ *Co-Counsel to the Debtors and*
***Debtors in Possession***

~~*Debtors in Possession*~~

(Page | 3)
Debtors:                NEW RITE AID, LLC, et al.
Case No.:               25-14861 (MBK)
Caption of Order:       Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                        [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                        Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                        Interests, (III) Authorizing the Assumption and Assignment of the
                        Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                        Thereto in Accordance with the Assumption and Assignment Procedures,
                        and (IV) Granting Related Relief

Upon the motion **dated May 6, 2025** [Docket No. 17] (the "Motion"),[2] of the above-captioned debtors and ~~debtors in possession~~**debtors-in-possession** (collectively, the "Debtors~~) for entry of~~ **"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), for** an order (this "Order"): (a) authorizing and approving the entry into and performance under the terms and conditions of that certain Asset Purchase Agreement, dated ~~[●]~~**as of December 5**, 2025, by and among certain of the Debtors (the "Sellers") and ~~[●]~~**Rite Aid LLC,** (the "Purchaser"), substantially in the form attached hereto as ~~Schedule~~**Exhibit 1** to the Order (as it may be amended, modified, or supplemented in accordance with its terms, the "Asset Purchase Agreement"), and all other transaction documents necessary and desirable to consummate the transactions contemplated by the Asset Purchase Agreement (the "Transaction Documents"); (b) authorizing the Debtors to sell the Purchased Assets (as defined in the Asset Purchase Agreement) to the Purchaser as described in the Asset Purchase Agreement, ~~including~~

---

[2]     Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Motion, **the *Order (I) Approving the Auction and Bidding Procedures, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing (A) the Sale of Assets and (B) Shortened Notice With Respect Thereto, and (VII) Granting Related Relief* [Docket No. 473] (the "**Bidding Procedures Order ~~(as defined herein)~~**"**), the Bidding Procedures, or the Asset Purchase Agreement, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief |

the Contracts, free and clear of liens, claims, encumbrances**Encumbrances**, and other interests pursuant to section 363(f) of the Bankruptcy Code and in accordance with the terms set forth in the Asset Purchase Agreement (the ""Sale"") ; (c) authorizing the Debtors to assume and assign to the Purchaser the Contracts subject to and in accordance with the Assumption and Assignment Procedures with cure costs, if any, established in accordance with the Assumption and Assignment Procedures (the "Cure Amounts"); (d) providing that the appointment of a consumer privacy ombudsman is not required; and (ed) granting related relief, all as more fully set forth in the Motion; and the Court having entered the Bidding Procedures Order [Docket No. 142**473**]; and the Debtors having scheduled an auction, **on October 17, 2025, having filed the *Notice of Sale by Auction for Debtors' Intangible Assets* [Docket No. 2918]** (the "Auction" **Notice"),**  **scheduling an auction (the "Auction"**) for the Purchased Assets and the Auction having been held or cancelled by the Debtors in accordance with the Bidding Procedures; and **offers for the Purchased Assets having been due on October 31, 2025 in accordance with the Auction Notice; and the Auction having taken place on November 6, 2025; and** the Debtors having determined that the Purchaser has submitted the highest or otherwise best bid for the Purchased Assets and determined that the Purchaser is the Successful Bidder, in accordance with the Bidding Procedures; and the Debtors having **filed and** served the notice of the Auction and notice of the **Auction Notice and *Notice of (I) Successful Bidder, (II) Adjournment of Intangible Assets Auction, and (III) Filing of Proposed Order (A) Authorizing and Approving***

(Page | 5)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

*the Sale of Certain of the Debtors' Assets, With Such Sales to Be Free and Clear of All Liens,*

*Claims, and Encumbrances, and (B) Granting Related Relief* **[Docket No. ●] (the "Notice of**

**Successful Bidder and** Sale Hearing (the "Sale Notice")") in accordance with the Bidding

Procedures Order; and the Debtors having filed and served the Notice of Successful Bidder **and**

**Sale Hearing** with respect to the Purchased Assets in accordance with the Bidding Procedures,

and the Debtors having filed and served the Contract Assumption Notice and any Supplemental

Assumption Notice (collectively, the "Assumption Notice") in accordance with the Assumption

and Assignment Procedures; and the Debtors having filed the form of Order on May 9, 2025, and

the Court having held a hearing on [May 21, 2025/June 25, 2025]**, if any** (the "**"**Sale

Hearing**""**), at which time all interested parties were offered an opportunity to be heard with

respect to the Motion and the proposed Order; and the Court having reviewed and considered the

Motion, the Asset Purchase Agreement, the proposed Order, and any and all objections to the

Sale, the Asset Purchase Agreement, and the other Transaction Documents filed in accordance

with the Bidding Procedures Order; and upon the First Day *Declaration* the Rifkin Declaration,

and the Frejka Declaration *of Jean-Pierre Khoueiri in Support of Entry of Order*

*(I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset*

*Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All*

*Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief* **[Docket No.**

**[●]];** and the Court having jurisdiction to consider the Motion and the relief requested therein

(Page | 6)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy
Court Under Title 11* of the United States District Court for the District of New Jersey, entered
July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having
found that venue of this proceeding and the Motion in this district is proper pursuant to 28
U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is
in the best interests of the Debtors' estates, their stakeholders, and other parties in interest; and
this Court having found that the Debtors' notice of the Motion and the proposed Order was
appropriate under the circumstances and no other notice need be provided; and this Court having
reviewed the Motion and having heard the statements in support of the relief requested therein at
a hearing before this Court (the "Sale Hearing"); and this Court having determined that the legal
and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief
granted herein; and upon all of the proceedings had before the Court and after due deliberation
and sufficient cause appearing, it is hereby

**FOUND, CONCLUDED, AND DETERMINED THAT:**

**Petition Date; Jurisdiction, Venue, and Final Order**

A.      On May 5, 2025 (the "Petition Date"), each of the Debtors filed a voluntary
petition for relief under chapter 11 of the Bankruptcy Code.

(Page | 7)
Debtors:        NEW RITE AID, LLC, et al.
Case No.        25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                Interests, (III) Authorizing the Assumption and Assignment of the
                Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                Thereto in Accordance with the Assumption and Assignment Procedures,
                and (IV) Granting Related Relief

B.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core

proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District and in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6003(a),[3]6004(h), and 6006(d), **and** any

other applicable Bankruptcy Rules or Local Rules, and to any extent necessary under Bankruptcy

Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule

7054, the Court expressly finds that there is no just reason for delay in the implementation of this

Order and expressly directs entry of judgment as set forth herein.

D.      The findings and conclusions set forth herein constitute the Court's**Court's**

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following

findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of

the following conclusions of law constitute findings of fact, they are adopted as such.

---

[3]  **Note to Draft**:  To the extent the proposed timing of the entry of the sale order is later than 21 days after the
Petition Date, references to Bankruptcy Rule 6003(a) will be removed from findings of fact and conclusions of
law.

(Page | 8)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

**Notice of the Bidding Procedures Order, the Bidding Procedures,
the Asset Purchase Agreement and the Sale, the Auction, the Sale Hearing, ~~the
Proposed Assumption and Assignment of the Contracts, the Cure Amounts,~~ and this Order**

E.      As evidenced by the ~~Sale~~**Auction** Notice **and service thereof** [Docket No.
~~[●]~~**2918**], the Notice of Successful Bidder **and Sale Hearing** [Docket No.~~[●]], the Assumption
Notice [Docket No~~. [●]], the form of Order [Docket No. ~~[●~~**186**~~]~~], affidavits of service and
publication previously filed with this Court, proper, timely, adequate, and sufficient notice of the
Sale Hearing, the Asset Purchase Agreement, ~~the proposed assumption and assignment of the
Contracts,~~ entry of this Order, and the Sale has been provided in accordance with ~~sections~~**section**
363 ~~and 365~~ of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, ~~6006,~~ 9007, and 9014, and
Local Rule ~~6004-3~~**6004-3**. The foregoing notice was good, sufficient, and appropriate under the
circumstances, and no other or further notice of the Sale Hearing, the Asset Purchase Agreement,
**or** the Sale~~, or the proposed assumption and assignment of the Contracts~~ is required.

~~F.      The Assumption Notice is appropriate and reasonably calculated to provide each
non-Debtor counterparty to the applicable Contracts with proper notice of the potential assumption and
assignment of the applicable Contract, the proposed Cure Amount, and the Assumption and Assignment
Procedures.  The inclusion of any particular Contracts on any Assumption Notice shall not be deemed to
be an admission that such contract or lease is an executory contract or unexpired lease of property or
require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the
Debtors with respect to the foregoing are reserved.~~

(Page | 9)
Debtors:               NEW RITE AID, LLC, et al.
Case No.               25-14861 (MBK)
Caption of Order:      Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                       [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                       Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                       Interests, (III) Authorizing the Assumption and Assignment of the
                       Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                       Thereto in Accordance with the Assumption and Assignment Procedures,
                       and (IV) Granting Related Relief

G.      In accordance with the Bidding Procedures Order and the Assumption and Assignment

Procedures (as defined therein), the Debtors have served an Assumption Notice indicating their intent to

assume and assign the Contracts and of the Cure Amounts upon each counterparty to an Contract.  The

service and provision of such Assumption Notice was good, sufficient, and appropriate under the

circumstances and no further notice need be given in respect of assumption and assignment of the

Contracts or establishing Cure Amounts for the respective Contracts.  Pursuant to the Assumption and

Assignment Procedures, counterparties to the Contracts have had or will have had an adequate

opportunity to object to assumption and assignment of the applicable Contracts and the Cure Amounts set

forth in the Assumption Notice.

H**F**.    No further notice beyond that described in this Order is required in connection

with the Sales and the proposed assumption and assignments to the Purchaser of the

Contracts**Sale**.

I**G**.    A reasonable opportunity to object or to be heard regarding the relief requested in

the Motion was afforded to all interested persons and entities.

**Authority to** ~~Assume~~**Execute** **and Perform Under the Asset Purchase Agreement**

J**H**.    The Debtors'' performance under the Asset Purchase Agreement is approved in

all respects. The Debtors are authorized to ~~assume~~**execute** and perform under the Asset Purchase

Agreement pursuant to sections 363 and 365 of the Bankruptcy Code and may close the Sale

pursuant to the Asset Purchase Agreement.

(Page | 10)
Debtors:              NEW RITE AID, LLC, et al.
Case No.              25-14861 (MBK)
Caption of Order:     Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                      [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                      Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                      Interests, (III) Authorizing the Assumption and Assignment of the
                      Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                      Thereto in Accordance with the Assumption and Assignment Procedures,
                      and (IV) Granting Related Relief

**Highest or Best Offer**

~~K~~**I**.    The Debtors conducted a sale process in accordance with **(i) and have complied in all respects with the Bidding Procedures Order and (ii)** the purpose of obtaining the highest or otherwise best offer for, and have afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase, the Purchased Assets (including assumption of the Assumed Liabilities).

~~L~~**J**.    (i) Prior to and from and after the commencement of these chapter 11 cases, the Debtors and their advisors engaged in a robust and extensive marketing and sale process and exercised sound business judgment, ~~as more fully detailed in the Rifkin Declaration, and the First Day Declaration~~; (ii) the Bidding Procedures were substantively and procedurally fair to all parties and the Debtors conducted a fair and open sale process in compliance therewith, (iii) the sale process, the Bidding Procedures, and the Auction ~~(or cancellation thereof)~~, were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Purchased Assets, or who the Debtors believed may have had an interest in acquiring the Purchased Assets, to make an offer to purchase the Debtors~~'~~ assets, including, without limitation the Purchased Assets, (iv) the Debtors and the Purchaser have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good-faith manner; and (v) the sale process conducted by the Debtors pursuant to the Bidding Procedures

(Page | 11)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

and the Bidding Procedures Order resulted in the highest or otherwise best value for the

Purchased Assets for the Debtors and their estates, was in the best interest of the Debtors, their

estates, their creditors, and all parties in interest, and any other transaction would not have

yielded as favorable a result. There is no legal or equitable reason to delay entry into the Asset

Purchase Agreement and the transactions contemplated therein.

MK.    Approval of the Asset Purchase Agreement, and the consummation of the Sale

contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates,

and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business

reasons and justifications for entering into the Sale and the performance of their obligations

under the Asset Purchase Agreement. The Sale must be approved and consummated in order to

maximize the value of the Debtors' estates.

NL.    The consummation of the Sale outside a plan of reorganization pursuant to the

Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors'

creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the

Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been

sought without the protections that a disclosure statement would afford.

OM.    Entry of an order approving the Asset Purchase Agreement and all the provisions

thereof is a necessary condition precedent to the Purchaser's consummation of the

Sale, as set forth in Section [●] of the Asset Purchase Agreement.

(Page | 12)
Debtors:          NEW RITE AID, LLC, et al.
Case No.          25-14861 (MBK)
Caption of Order: Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                  [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                  Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                  Interests, (III) Authorizing the Assumption and Assignment of the
                  Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                  Thereto in Accordance with the Assumption and Assignment Procedures,
                  and (IV) Granting Related Relief

**Personally Identifiable Information**

**P.**    As set forth in the [•] Declaration, the sale, conveyance, assignment, and transfer of

personally identifiable information (as defined in section 101(41A) of the Bankruptcy Code), if any,

pursuant to the terms of the Asset Purchase Agreement is consistent with the terms of the Debtors'

policies regarding the prohibition of transfer of such personally identifiable information as of the Petition

Date, if any, and, as a result, consummation of the Sale as set forth in the Asset Purchase Agreement is

permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code. Accordingly, appointment of a

consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is

not required with respect to the Sale and the other transactions contemplated by the Asset Purchase

Agreement. To the extent applicable, the Notice of Successful Bidder contains any information required

pursuant to Bankruptcy Rule 2002(c)(1).

## Good Faith of the Purchaser

**Q.N.**    The consideration to be paid by the Purchaser under the Asset Purchase

Agreement was negotiated at arm's**arm's** length, in good faith, and without collusion pursuant to

section 363(m) of the Bankruptcy Code and constitutes reasonably equivalent value and fair and

adequate consideration for the Purchased Assets. Specifically: (i) the Purchaser recognized that

the Debtors were free to deal with any other party interested in purchasing the Purchased Assets;

(ii) the Purchaser complied in all respects with the provisions in the Bidding Procedures Order in

negotiating and entering into the Asset Purchase Agreement and the other Transaction

Documents, and the Asset Purchase Agreement, the other Transaction Documents, and the

(Page | 13)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

transactions described therein comply with the Bidding Procedures Order; (iii) the Purchaser

agreed to subject any bid to the competitive bid procedures set forth in the Bidding Procedures

Order; (iv) all payments made by the Purchaser in connection with the Sale have been disclosed

in the Asset Purchase Agreement; (v) no common identity of directors, officers, or controlling

stockholders exists among the Purchaser and the Debtors; (vi) the negotiation and execution of

the Asset Purchase Agreement was at ~~arm's~~**arm's** length and in good faith, and at all times each

of the Purchaser and the Debtors were represented by competent counsel of their choosing; and

(vii) the Purchaser has not acted in a collusive manner with any person. The Purchaser will be

acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the

transactions contemplated by the Asset Purchase Agreement. The terms and conditions set forth

in the Asset Purchase Agreement are fair and reasonable under the circumstances and were not

entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding

the Debtors or their creditors under any applicable laws.

~~R~~**O**.     The Debtors, the Purchaser, and each of their respective management, boards of

directors, members, officers, directors, employees, agents, and representatives, as applicable,

have acted in good faith. The Asset Purchase Agreement and the other Transaction Documents

were negotiated, proposed, and entered into by the Debtors and the Purchaser in good faith,

without collusion or fraud, and from ~~arm's length~~**arm's-length** bargaining positions. The

(Page | 14)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

P.     The Asset Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Debtors, the Purchaser, and their respective agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

**Personally Identifiable Information**

Q.     The transfer of personally identifiable information (as defined in section 101(41A) of the Bankruptcy Code) ("Personal Information") to be effected pursuant to the Transaction Documents complies with the Debtors' Privacy Policy in effect as of the Petition Date and, as a result, consummation of the Sale as set forth in the Transaction Documents is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code.

R.     Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale and the transactions contemplated by the Transaction Documents.  To the extent applicable, the [Notice of Successful Bidder and Sale Hearing] contains any information required pursuant to Bankruptcy Rule 2002(c)(1).

(Page | 15)
Debtors:                    NEW RITE AID, LLC, et al.
Case No.                    25-14861 (MBK)
Caption of Order:      Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                             [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                             Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                             Interests, (III) Authorizing the Assumption and Assignment of the
                             Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                             Thereto in Accordance with the Assumption and Assignment Procedures,
                             and (IV) Granting Related Relief

**No Fraudulent Transfer**

TS.    The consideration provided by the Purchaser pursuant to the Asset Purchase

Agreement for its purchase of the Purchased Assets and the assumption of the Assumed

Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy

Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under

the laws of the United States, any state, territory, possession, and the District of Columbia.

UT.    Neither the Purchaser nor its past, present, and future subsidiaries, parents,

divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns, nor any

of its nor their respective directors, managers, officers, employees, shareholders, members,

agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners,

insurance companies, or partners (collectively, the "Purchaser Parties") is a continuation of

the Debtors or their respective estates, and the Purchaser is not holding itself out to the public as

a continuation of the Debtors or their respective estates and the Sale does not amount to a

consolidation, merger, or *de facto* merger of the Purchaser and the Debtors.

**Validity of Transfer**

VU.    The applicable boards of directors or managers, as applicable, of the Debtors have

authorized the execution and delivery of the Asset Purchase Agreement and the Sale of the

Purchased Assets to the Purchaser.  Subject to entry of this Order, the Debtors (i) have full

corporate power and authority to assume**execute and deliver** the Asset Purchase Agreement and

(Page | 16)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

all other documents contemplated thereby, as applicable, (ii) have all of the power and authority

necessary to consummate the Sale, and (iii) have taken all action necessary to authorize and

approve the Asset Purchase Agreement and to consummate the Sale, and no further consents or

approvals, other than those expressly provided for in the Asset Purchase Agreement, are required

for the Debtors to consummate the transactions contemplated by the Asset Purchase Agreement,

except as otherwise set forth in the Asset Purchase Agreement. The Purchased Assets constitute

property of the Debtors*'* estates within the meaning of section 541(a) of the Bankruptcy Code,

and title thereto is presently vested in the Debtors*'* estates.

## Section 363(f) Is Satisfied

~~W~~**V**.    The Sale of the Purchased Assets to the Purchaser, including the Contracts, under

the terms of the Asset Purchase Agreement meets the applicable provisions of section 363(f) of

the Bankruptcy Code such that the Sale of the Purchased Assets will be free and clear of any and

all liens, claims, ~~encumbrances~~**Encumbrances**, and other interests, and will not subject the

Purchaser to any liability for any claims whatsoever (including, without limitation, under any

theory of equitable law, antitrust, or successor or transferee liability) (collectively, ~~"~~**"Claims and

Interests**~~"~~**"**), except as expressly provided in the Asset Purchase Agreement with respect to the

Assumed Liabilities and Permitted ~~Encumbrances~~**Liens[3]**. All holders of Claims and Interests

who did not object or who withdrew their objections to the Sale are deemed to have consented to

---

[3]    **"Permitted Lien" shall have the same meaning as ascribed to "Permitted Encumbrance" in the Asset
Purchase Agreement.**

(Page | 17)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

the Sale pursuant to section 363(f)(2) of the Bankruptcy Code and all holders of Claims and

Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by

having their Claims and Interests, if any, attach to the proceeds of the Sale ultimately attributable

to the property against or in which they assert Claims and Interests or other specifically dedicated

funds in the same order of priority and with the same validity, force, and effect that such holder

had prior to the Sale, subject to (a) any rights, claims, and defenses of the Debtors or their

estates, as applicable and (b) paragraph 39**40** of this Order. Those holders of Claims and Interests

who did object and who have an interest in the Purchased Assets fall under one or more of the

other subsections of section 363(f) of the Bankruptcy Code.

X**W**.    The transfer of the Purchased Assets to the Purchaser under the Asset Purchase

Agreement will be a legal, valid, and effective transfer of all of the legal, equitable, and

beneficial right, title, and interest in and to the Purchased Assets free and clear of all Claims and

Interests, except as expressly provided in the Asset Purchase Agreement with respect to the

Assumed Liabilities and Permitted Encumbrances**Liens**. The Debtors may sell their interests in

the Purchased Assets free and clear of all Claims and Interests because, in each case, one or more

of the standards set forth in section 363(f) has been satisfied. The Purchaser would not have

entered into the Asset Purchase Agreement and the Transaction Documents and would not

consummate the transactions contemplated thereby, including, without limitation, the Sale, (i) if

the transfer of the Purchased Assets was not free and clear of all interest of any kind or nature

(Page | 18)
Debtors:              NEW RITE AID, LLC, et al.
Case No.              25-14861 (MBK)
Caption of Order:     Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                      [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                      Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                      Interests, (III) Authorizing the Assumption and Assignment of the
                      Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                      Thereto in Accordance with the Assumption and Assignment Procedures,
                      and (IV) Granting Related Relief

whatsoever, including, without limitation, rights or claims based on any successor, transferee,

derivative or vicarious liability or any similar theory, and/or applicable state or federal law or

otherwise or (ii) if the Purchaser or any of its affiliates or designees would, or in the future could,

be liable for any interests, including, without limitation, rights or claims based on any successor,

transferee, derivative or vicarious liability or any similar theory, and/or applicable state or federal

law or otherwise, in each case, subject only to the Assumed Liabilities and Permitted

Encumbrances**Liens**. Not transferring the Purchased Assets free and clear of all Claims and

Interests of any kind or nature whatsoever, including, without limitation, rights or claims based

on any successor, transferee, derivative or vicarious liability or any similar theory, and/or

applicable state or federal law or otherwise (subject only to the Assumed Liabilities and

Permitted Encumbrances**Liens**) would adversely impact the Debtors'' efforts to maximize the

value of their estates.

### Assumption and Assignment of the Contracts

Y.    The Debtors served the initial Contract Assumption Notice on May [●], 2025.  In

accordance with the Assumption and Assignment Procedures, the objection deadline for all Contracts

listed on such notice is May [●], 2025 and the objection deadline to any Contract listed on a

Supplemental Assumption Notice shall be set forth in such notice (each, a "Contract Objection

Deadline") and be in accordance with the Assumption and Assignment Procedures.

Z.    The Debtors have demonstrated that it is a reasonable exercise of their sound business

judgment to assume and assign the Contracts to the Purchaser pursuant to the terms of this Order and the

(Page | 19)
Debtors:  NEW RITE AID, LLC, et al.
Case No.  25-14861 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Enter Into and Perform Under the [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief

Asset Purchase Agreement, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

AA.  Any non-Debtor counterparty to any Contract that has not actually filed with the Court an objection, or who withdrew an objection or does not timely file an objection to an Assumption Notice by the applicable Contract Objection Deadline, is deemed to have consented to such assumption and assignment and the Cure Amount, if any.

BB.  The Cure Amounts set forth on the Assumption Notice, if any, are the sole amounts necessary under section 365 of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Contracts, unless otherwise determined by the Court or by agreement of the Debtors and the non-Debtor counterparty, and such assumption and assignment to Purchaser shall be deemed approved by this Order without further order of this Court.  The findings of fact in this paragraph BB shall not apply to any non-Debtor counterparty to a Contract prior to the applicable Contract Objection Deadline, absent the consent of the non-Debtor counterparty.

CC.  The Debtors shall have the right, in accordance with and subject to the Bidding Procedures Order, to serve a Supplemental Assumption Notice upon any non-Debtor counterparty indicating the Debtors' intent to assume and assign such executory contract.

DD.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Contracts.  The Debtors have (i) cured and/or provided adequate assurance of cure of any default existing prior to the applicable closing under all of the Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of

(Page | 20)
Debtors:              NEW RITE AID, LLC, et al.
Case No.              25-14861 (MBK)
Caption of Order:     Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                      [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                      Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                      Interests, (III) Authorizing the Assumption and Assignment of the
                      Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                      Thereto in Accordance with the Assumption and Assignment Procedures,
                      and (IV) Granting Related Relief

compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to

the applicable under any of the Contracts.  The Purchaser has provided adequate assurance of future

performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) and in accordance with the

Bidding Procedures to the extent that any such assurance is required and not waived by the counterparties

to such Contracts.  The findings of fact in this paragraph DD shall not apply to any non-Debtor

counterparty to a Contract prior to the applicable Contract Objection Deadline, absent the consent of the

non-Debtor counterparty.

**Prompt Consummation**

EE**X**.   The **sale of the** Purchased Assets must be approved and consummated promptly

to comply with the terms of the Asset Purchase Agreement, maximize value for the Debtors**'**

estates, and avoid irreparable harm to the Debtors**'** estates and their stakeholders, including their

creditors and customers. Time, therefore, is of the essence in effectuating the Asset Purchase

Agreement. As such, the Debtors and the Purchaser intend to close the sale of the Purchased

Assets as soon as reasonably practicable in accordance with the terms of the Asset Purchase

Agreement. The Debtors have demonstrated immediate and irreparable harm absent entry of this

Order and compelling circumstances and a good, sufficient, and sound business purpose and

justification for the immediate approval and consummation of the Asset Purchase Agreement.

Accordingly, (i) there would be immediate and irreparable harm absent the waiver of Bankruptcy

Rule 6003(a), and (ii) there is sufficient cause to waive the stay provided in the Bankruptcy

Rules**Rule** 6004(h) and 6006(d) and any other applicable Bankruptcy Rule or Local Rule.

(Page | 21)
Debtors:        NEW RITE AID, LLC, et al.
Case No.        25-14861 (MBK)
Caption of Order:    Order (I) Authorizing the Debtors to Enter Into and Perform Under the
[Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
Interests, (III) Authorizing the Assumption and Assignment of the
Assumed Contracts to Purchaser and Establishing Cure Amounts Related
Thereto in Accordance with the Assumption and Assignment Procedures,
and (IV) Granting Related Relief

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The Motion is **GRANTED** as set forth herein.

2. All objections to or reservation**reservations** of rights with respect to the Motion
or the relief requested therein that have not been withdrawn or resolved are overruled with
prejudice. All persons and entities who did not object or withdraw their objections to the Motion
are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code**.**

3. The Asset Purchase Agreement, attached hereto as ~~Schedule~~**Exhibit 1**, and the
other Transaction Documents and all terms and conditions thereof, are **hereby** approved in all
respects. The failure to specifically include any particular provision of the Asset Purchase
Agreement or the Transaction Documents in this Order shall not diminish or impair the
effectiveness of such provision.

**Transfer of the Purchased Assets
as set forth in the Asset Purchase Agreement**

4. The Debtors are authorized, but not directed, to take any and all actions necessary
and appropriate to cause the Sellers to**:** (a) consummate the transactions contemplated by the
Asset Purchase Agreement and the Transaction Documents in accordance with the terms thereof;
(b) sell the Purchased Assets to the Purchaser for the purchase price in accordance with the terms
of this Order and the Asset Purchase Agreement and the Transaction Documents; ~~and~~ (c) **assume**

(Page | 22)
Debtors:                NEW RITE AID, LLC, et al.
Case No.                25-14861 (MBK)
Caption of Order:       Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                        [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                        Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                        Interests, (III) Authorizing the Assumption and Assignment of the
                        Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                        Thereto in Accordance with the Assumption and Assignment Procedures,
                        and (IV) Granting Related Relief

**and assign any and all Contracts, and (d)** otherwise implement and effectuate the terms of the

Asset Purchase Agreement and the Transaction Documents.

5.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon

~~each closing~~**Closing**, all of the Debtors~~'~~**'** right, title, and interest in and to, and possession of, the

Purchased Assets shall be transferred to the Purchaser, free and clear of any and all Claims and

Interests, with all such Claims and Interests to attach to the proceeds of the Purchased Assets in

the order of their priority, with the same force, effect, and validity that they had immediately

prior to the entry of this Order, subject to any rights, claims, or defenses the Debtors may have

with respect thereto, *except* with respect to any Assumed Liabilities or Permitted

~~Encumbrances~~**Liens** allowed under the Asset Purchase Agreement and subject to paragraph ~~39~~**29**

of this Order. Such transfer shall constitute a legal, valid, binding, and effective transfer of the

Purchased Assets.

6.      As set forth in the Asset Purchase Agreement, the Purchaser is not acquiring any

of the Excluded Assets or assuming any of the Excluded Liabilities.

7.      Except for (a) the Assumed Liabilities expressly set forth in the Asset Purchase

Agreement or described therein or (b) the Permitted ~~Encumbrances~~**Liens** expressly set forth in

the Asset Purchase Agreement~~,~~ none of the Purchaser, its successors or assigns, or any of their

respective affiliates shall have any liability for any Claims and Interests that (x) arose prior to the

date of ~~each applicable closing~~**Closing**, or (y) otherwise is assertable against the Debtors or is

(Page | 23)
Debtors:              NEW RITE AID, LLC, et al.
Case No.              25-14861 (MBK)
Caption of Order:     Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                      [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                      Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                      Interests, (III) Authorizing the Assumption and Assignment of the
                      Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                      Thereto in Accordance with the Assumption and Assignment Procedures,
                      and (IV) Granting Related Relief

related to the Purchased Assets prior to the date of ~~such applicable closing~~**Closing**, including, for the avoidance of doubt, Claims and Interests arising out of the Excluded Liabilities.

8.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Asset Purchase Agreement, the Transaction Documents, and this Order.

9.      At ~~each applicable closing~~**Closing**, all of the Debtors~~'~~**'** right, title, and interest in and to, and possession of, the corresponding Purchased Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of such Purchased Assets. All persons or entities presently or at or after ~~each applicable closing~~**Closing** in possession of some or all of the corresponding Purchased Assets are directed to surrender possession of any and all portions of such Purchased Assets to the Purchaser or its respective designees ~~on each applicable closing~~**at Closing** or at such time thereafter as the Purchaser may request.

10.      This Order (a) shall be effective as a determination that, as of ~~each applicable closing~~**Closing**, (i) no Claims and Interests other than the corresponding Assumed Liabilities and Permitted ~~Encumbrances~~**Liens** will be assertable against the Purchaser or any of its assets, (ii) the corresponding Purchased Assets shall have been transferred to the Purchaser free and clear of all Claims and Interests, subject only to the applicable Assumed Liabilities and Permitted

(Page | 24)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

Encumbrances**Liens**, and (iii) the conveyances described herein have been effected, and (b) is

and shall be binding upon and govern the acts of all entities, including, without limitation, all

filing agents, filing officers, registrars of patents, trademarks, or other intellectual property,

administrative agencies, governmental departments, secretaries of state, federal and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract to accept, file, register, or otherwise record or release any documents

or instruments; and each of the foregoing persons and entities is hereby directed to accept for

filing any and all of the documents and instruments necessary and appropriate to consummate the

transactions contemplated by the Asset Purchase Agreement and the Transaction Documents.

The Purchased Assets are sold free and clear of any reclamation rights. All Claims and Interests

on the Purchased Assets shall attach to the proceeds of the Sale ultimately attributable to the

property against which such Claims and Interests applied or other specifically dedicated funds, in

the same order of priority and with the same validity, force, and effect that such Claims and

Interests applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or

their estates, as applicable, subject to paragraph 39**29** of this Order.

11.     Except as otherwise provided in the Asset Purchase Agreement, all persons and

entities (and their respective successors and assigns), including, but not limited to, all debt

security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities,

lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors

(Page | 25)
Debtors:          NEW RITE AID, LLC, et al.
Case No.         25-14861 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                   [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                   Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                   Interests, (III) Authorizing the Assumption and Assignment of the
                   Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                   Thereto in Accordance with the Assumption and Assignment Procedures,
                   and (IV) Granting Related Relief

holding claims arising under or out of, in connection with or in any way relating to, the Debtors, the Purchased Assets, and the ownership, sale, or operation of the Purchased Assets prior to ~~each applicable closing~~**Closing** or the transfer of the applicable Purchased Assets to the Purchaser are hereby forever barred, estopped, and permanently enjoined from asserting such claims against the Purchaser and its property (including, without limitation, the Purchased Assets). Following ~~each applicable closing~~**Closing**, no holder of any claim or interest shall interfere with the ~~Purchaser's~~**Purchaser's** title to or use and enjoyment of the corresponding Purchased Assets based on or related to any such claim or interest or based on any action the ~~Debtor~~**Debtors** may take in their chapter 11 cases.

12.     If any person or entity that has filed financing statements, mortgages, ~~mechanic's~~**mechanic's** claims, *lis pendens*, or other documents or agreements evidencing claims against the Debtors or in the Purchased Assets shall not have delivered to the Debtors prior to ~~each applicable closing of each Sale~~**Closing**, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all Claims and Interests that the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by the Purchaser pursuant to the Asset Purchase Agreement and this Order: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets; (b) the

(Page | 26)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Interests against the Purchaser Parties and the Purchased Assets; and (c) upon consummation of the Sale, the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and Interests that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code and any other provisions of the Bankruptcy Code with respect to the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Order authorizing the Sale and assignment of the Purchased Assets free and clear of Claims and Interests shall be self-executing and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

13.     Effective upon each applicable closing**Closing**, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser or its assets (including, without limitation, the Purchased Assets), with respect to any (a) claim in these chapter 11 cases or in connection with or related to the Sale or

(Page | 27)
Debtors:        NEW RITE AID, LLC, et al.
Case No.        25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                Interests, (III) Authorizing the Assumption and Assignment of the
                Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                Thereto in Accordance with the Assumption and Assignment Procedures,
                and (IV) Granting Related Relief

the Debtors or (b) Successor or Transferee Liability (defined below), including, without

limitation, the following actions with respect to clauses (a) and (b): (i) commencing or

continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching,

collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating,

perfecting, or enforcing any lien, claim, interest, or encumbrance**Encumbrance**; (iv) asserting

any set-off, right of subrogation, or recoupment of any kind; (v) commencing or continuing any

action in any manner or place that does not comply with, or is inconsistent with, the provisions

of this Order or other orders of this Court, or the agreements or actions contemplated or taken in

respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any License (defined

below) to operate any business in connection with the Purchased Assets or conduct any of the

businesses operated with respect to such assets.

**No Successor or Transferee Liability**

14.     The Purchaser shall not be deemed, as a result of any action taken in connection

with the Asset Purchase Agreement, the consummation of the Sale, or the transfer, operation, or

use of the Purchased Assets to (a) be a legal successor or otherwise be deemed a successor to the

Debtors (other than with respect to any Assumed Liabilities and Permitted Encumbrances**Liens**

arising after each applicable closing**Closing**), (b) have, *de facto* or otherwise, merged with or

into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the

Debtors or the enterprise of the Debtors, including, without limitation, within the meaning of any

(Page | 28)
Debtors:             NEW RITE AID, LLC, et al.
Case No.             25-14861 (MBK)
Caption of Order:    Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                     [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                     Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                     Interests, (III) Authorizing the Assumption and Assignment of the
                     Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                     Thereto in Accordance with the Assumption and Assignment Procedures,
                     and (IV) Granting Related Relief

foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income

Security Act of 1974 (as amended), tax law, labor law, products liability law, employment law,

environmental law, or other law, rule, or regulation (including, without limitation, filing

requirements under any such laws, rules, or regulations), or under any products liability law or

doctrine with respect to the Debtors' liability under such law, rule, or regulation.

15.    Immediately prior to each closing, the Purchaser was not an "insider" or

"affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common

identity of incorporators, directors, or controlling stockholders existed between the Purchaser

and the Debtors.

16.    Other than as expressly set forth in the Asset Purchase Agreement, the Purchaser

shall not have any responsibility for (a) any liability or other obligation of the Debtors or related

to the Purchased Assets or (b) any claims against the Debtors or any of their predecessors or

affiliates. Except as expressly provided in the Asset Purchase Agreement with respect to the

Purchaser, the Purchaser shall not have any liability whatsoever with respect to the Debtors' (or

their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or

their predecessors' or affiliates') obligations (as defined herein, "Successor or Transferee

Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious

liability of any kind or character, or based upon any theory of antitrust, environmental, successor,

or transferee liability, *de facto* merger or substantial continuity, labor and employment or

(Page | 29)
Debtors:           NEW RITE AID, LLC, et al.
Case No.           25-14861 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                   [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                   Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                   Interests, (III) Authorizing the Assumption and Assignment of the
                   Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                   Thereto in Accordance with the Assumption and Assignment Procedures,
                   and (IV) Granting Related Relief

products liability, whether known or unknown as of ~~each applicable closing~~**Closing**, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets or the Assumed Liabilities or ~~the Permitted Encumbrances~~ prior to ~~each applicable closing~~**Closing** or in respect of ~~pre-closing~~**pre-Closing** periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefit which is or has been sponsored, maintained, or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent.

**<u>Good Faith Purchaser</u>**

17.     The Sale contemplated by the Asset Purchase Agreement is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and consummation of such Sale ~~(including, without limitation, the assumption and assignment of the Contracts)~~ are duly and properly stayed pending such appeal.

18.     Neither the Debtors nor the Purchaser have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section

(Page | 30)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

363(n) of the Bankruptcy Code. The consideration provided by the Purchaser for the Purchased

Assets under the Asset Purchase Agreement is fair and reasonable and the Sale may not be

avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy

Code.

**Assumption and Assignment of Contracts**

19.    The applicable non-Debtor counterparties may object to the assumption and assignment

to the Purchaser of the applicable Contract in accordance with the Assumption and Assignment

Procedures and, to the extent this Order is entered prior to any Contract Objection Deadline, the

applicable Contracts may be assumed and assigned to the Purchaser no earlier than the occurrence of the

applicable Contract Objection Deadline, absent the consent of the non-Debtor counterparty to the

Contract.

20.    Subject to paragraph 20, upon the Closing, the Debtors are authorized to assume and

assign the applicable Contracts to the Purchaser free and clear of all Claims and Interests in accordance

with the Assumption and Assignment Procedures described in the Motion.  The payment of the

applicable Cure Amounts (if any) shall:  (a) effect a cure of all defaults existing thereunder as of the

applicable closing date; (b) compensate for any actual pecuniary loss to such non-Debtor party resulting

from such default; and (c) together with the assumption of the Contracts by the Purchaser, constitute

adequate assurance of future performance thereof.  The Purchaser shall then have assumed the Contracts

and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors thereof shall not

be a default thereunder.  After the payment of the relevant Cure Amounts, neither the Debtors nor the

Purchaser shall have any further liabilities to the non-Debtor parties to the Contracts other than the

(Page | 31)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

Purchaser's obligations under the Contracts that become due and payable on or after the applicable

closing date.

21.    Subject to paragraph 20, the Contracts shall, as of the Closing, be valid and binding on

the Purchaser and the other non-Debtor counter-parties thereto, and in full force and effect and

enforceable in accordance with their respective terms.  Following such assignment, the Debtors shall be

relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Contracts.  Any

party that may have had the right to consent to the assignment of any Contract has received adequate

notice of the proposed assignment of such Contract and is deemed to have consented for the purposes of

section 365(e)(2)(A) of the Bankruptcy Code.

22.    Any provisions in any Contracts that prohibits or conditions the assignment of such

Contracts or allows the non-Debtor party to such Contracts to terminate, recapture, impose any penalty,

condition on renewal or extension or modify any term or condition upon the assignment of such

Contracts, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the

assumption by the Debtors and assignment to the Purchaser of the Contracts have been satisfied.  Subject

to paragraph 20, upon each applicable closing, in accordance with sections 363 and 365 of the

Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all rights, title and interest of

the Debtors under the applicable Contracts.

23.    The Purchaser has provided adequate assurance of its future performance under the

relevant Contracts within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code.

(Page | 32)

Debtors:              NEW RITE AID, LLC, et al.

Case No.              25-14861 (MBK)

Caption of Order:     Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                      [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                      Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                      Interests, (III) Authorizing the Assumption and Assignment of the
                      Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                      Thereto in Accordance with the Assumption and Assignment Procedures,
                      and (IV) Granting Related Relief

24.     There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Contracts.

25.     From and after the applicable Contract Objection Deadline, each non Debtor party to a Contracts shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contracts and the Debtors and Purchaser shall be entitled to rely solely upon the Cure Amounts on the applicable Assumption Notice, and (ii) be forever barred and estopped from asserting or claiming against the Debtors, any purchaser of the Debtors' assets, including the Purchaser, and any assigned of any Contracts that any additional amounts as of the date of assignment are due or defaults exist under such Contracts.

26.     Subject to paragraph 20, any Contracts proposed to be assumed and assigned to Purchaser for which there is a timely objection outstanding with respect solely to the Cure Amount may be assumed and assigned prior to resolution of such objection, so long as (i) the Debtors or Purchaser, as applicable, in accordance with the Asset Purchase Agreement, pay any undisputed portion of the Cure Amount on or before the applicable closing date, and (ii) the Debtors or the Purchaser agrees to pay the disputed portion of the Cure Amount pending resolution of the dispute and if so required thereunder. The assumption and assignment of any such Contracts shall be effective immediately upon the payment of the undisputed Cure Amount, without the need for further order of the Court.

27.     Subject to paragraph 20, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Contracts are forever barred and enjoined from raising or asserting against Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment,

(Page | 33)
Debtors:              NEW RITE AID, LLC, et al.
Case No.              25-14861 (MBK)
Caption of Order:     Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                      [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                      Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                      Interests, (III) Authorizing the Assumption and Assignment of the
                      Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                      Thereto in Accordance with the Assumption and Assignment Procedures,
                      and (IV) Granting Related Relief

arising under or related to the Contracts existing as of the applicable closing date or arising by reason of

the closing.

28.    The assignments of each Contract are made in good faith under sections 363(b) and (m)

of the Bankruptcy Code.

## **Other Provisions**

29**19**.    To the maximum extent permitted by applicable law and the Asset Purchase

Agreement and other Transaction Documents, the Purchaser shall be authorized, as of each

closing**Closing**, to operate under any license, permit, registration, and governmental

authorization or approval (collectively, the "**"Licenses"**") of the Debtors with respect to the

Purchased Assets.

30**20**.    To the extent provided by section 525 of the Bankruptcy Code, no governmental

unit may revoke or suspend any permit or License relating to the Purchased Assets sold,

transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11

cases or the consummation of the Sale contemplated by the Asset Purchase Agreement.

31**21**.    The Asset Purchase Agreement and any related agreements, documents or other

instruments may be modified, amended or supplemented by the parties thereto in writing and in

accordance with the terms thereof, without further order of the Court, provided that any such

modification, amendment or supplement does not have a material adverse effect on the Debtors''

estates.

(Page | 34)
Debtors:           NEW RITE AID, LLC, et al.
Case No.           25-14861 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                   [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                   Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                   Interests, (III) Authorizing the Assumption and Assignment of the
                   Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                   Thereto in Accordance with the Assumption and Assignment Procedures,
                   and (IV) Granting Related Relief

3222.   The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, (a) to allow the Purchaser to give the Debtors any notice provided for in the Asset Purchase Agreement, (b) to allow the Purchaser to take any and all actions permitted by the Asset Purchase Agreement and the Transaction Documents in accordance with the terms and conditions thereof, including, without limitation, effectuating the Sale and the other transactions contemplated by the Asset Purchase Agreement and the Transaction Documents, and (c) to otherwise implement the terms and provisions of the Asset Purchase Agreement, the Transaction Documents, and this Order.

3323.   The terms and provisions of the Asset Purchase Agreement, and this Order shall be binding in all respects upon the Debtors, their Affiliates, **affiliates,** their estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the Purchased Assets, **all counterparties to the Contracts,** the Purchaser, and all of their respective successors and assigns, including, but not limited to, as applicable, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors*'* chapter 11 cases or upon conversion to chapter 7 under the Bankruptcy Code, as to which the terms and provisions of such trustee(s), examiner(s), or receiver(s) likewise shall be binding. The Asset Purchase Agreement shall not be subject to rejection or avoidance by the

(Page | 35)
Debtors:                NEW RITE AID, LLC, et al.
Case No.                25-14861 (MBK)
Caption of Order:       Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                        [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                        Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                        Interests, (III) Authorizing the Assumption and Assignment of the
                        Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                        Thereto in Accordance with the Assumption and Assignment Procedures,
                        and (IV) Granting Related Relief

Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), receiver(s), or any other successor parties in interest.

34**24**.   The terms and provisions of this Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in any of these chapter 11 cases; (b) converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the chapter 11 cases; (d) transferring venue of the chapter 11 cases to a court other than this Court; or (e) pursuant to which this Court abstains from hearing any of the chapter 11 cases. The terms and provisions of this Order, notwithstanding the entry of any such orders described in (a)–(e) above, shall continue in these chapter 11 cases or following dismissal of these chapter 11 cases.

35**25**.   Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the Transaction Documents.

36**26**.   The Asset Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

37**27**.   The Asset Purchase Agreement may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court; *provided* that any such modification, amendment, or supplement does not, based on the Debtors'

(Page | 36)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

business judgment, and in consultation with the Consultation Parties (as defined in the Bidding

Procedures), have ~~an~~a material adverse effect on the Debtors~~'~~' estates or their creditors. The

Debtors shall provide the Consultation Parties and the U.S. Trustee with prior notice of any such

modification, amendment, or supplement of the Asset Purchase Agreement.

~~38~~28.  This Order is and shall be binding upon all persons and entities that may be

required by operation of law, the duties of their office, or contract to accept, file, register, or

otherwise record or release any documents or instruments, or that may be required to report or

insure any title or state of title in or to any property; and each of the foregoing persons and

entities shall accept for filing any and all of the documents and instruments necessary and

appropriate to consummate the Asset Purchase Agreement.

~~39~~29.  Any Transaction Fee[4] or Commission due to ~~Guggenheim Securities~~Hilco IP

Services, LLC (~~"Guggenheim Securities"~~"Hilco") as a result of the closing of any Sale

Transaction shall be segregated and escrowed (for the exclusive benefit of ~~Guggenheim

Securities~~Hilco) in the Debtors~~'~~' or their agents~~'~~' bank accounts from the proceeds of such Sale

Transaction (including, without limitation, from the proceeds of any liquidation or other

disposition of the Debtors~~'~~' assets), as an express carve-out from the collateral of the Debtors~~'~~'

---

[4]    Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed
to such terms in that certain ~~amended and restated engagement letter between Guggenheim
Securities~~Agreement to Market and Sell Intangible Assets of New Rite Aid, LLC and its Debtor Affiliates
between Hilco and the Debtors, dated as of ~~May 5~~September 23, 2025~~, a copy of which will be filed in
connection with the Debtors' application to retain Guggenheim Securities, LLC~~ [Docket No. 3221,
Exhibit 1].

(Page | 37)
Debtors:                NEW RITE AID, LLC, et al.
Case No.                25-14861 (MBK)
Caption of Order:       Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                        [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                        Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                        Interests, (III) Authorizing the Assumption and Assignment of the
                        Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                        Thereto in Accordance with the Assumption and Assignment Procedures,
                        and (IV) Granting Related Relief

pre- and post-petition secured lenders, prior to any other use or distribution of such proceeds. If

any Sale Transaction is the result of a successful bid without a cash component sufficient to pay

the corresponding Transaction Fee due to Guggenheim Securities**Hilco** in full, then any resulting

unpaid portion of the Transaction Fee due to Guggenheim Securities**Hilco** shall be segregated

and escrowed (for the exclusive benefit of Guggenheim Securities**Hilco**) at the closing of such

Sale Transaction from the available cash of the Debtors, as an express carve-out from the

collateral of the Debtors**'** pre- and post-petition secured lenders. Nothing in this Order shall

prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the

proceeds thereof to pay any fees and expenses of Guggenheim Securities**Hilco** or the assertion or

allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the

Bankruptcy Code, if applicable, on account of any fees or expenses of Guggenheim

Securities**Hilco**.  Notwithstanding anything to the contrary set forth herein, the requirements and

obligations contained in this paragraph 39 to pay Guggenheim Securities**Hilco** any such

Transaction Fee on account of such Sale Transaction shall be subject in all respects to entry of a

final order of this Court authorizing the retention of Guggenheim Securities as investment banker

to the Debtors (the "Guggenheim Securities**the _Amended Order (I) Authorizing the Retention_

_and Employment of Hilco IP Services, LLC D/B/A Hilco Streambank as Intangible Assets_

_Disposition Consultant to the Debtors; (II) Waiving Certain Timekeeping Requirements; and_

_(III) Granting Related Relief_ [Docket No. 3321] (the "Hilco **Retention Order**") and the terms

(Page | 38)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

of the ~~Guggenheim Securities~~**Hilco** Retention Order, and the entry of an order by the Court

approving any such fees including the Transaction Fee.  All rights of the U.S. Trustee are

reserved to object to such fees including the Transaction Fee pursuant to 11 U.S.C. § 330.

~~40~~**30**.   To the extent there are any inconsistencies between this Order, the Motion, the

Bidding Procedures Order, the Bidding Procedures, the Asset Purchase Agreement, and the

Transaction Documents, the terms of this Order shall control.

~~41~~**31**.   Except to the extent expressly provided herein, notwithstanding the relief granted

in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:

(a) an admission as to the validity of any prepetition claim, interest, or lien against a Debtor

entity; (b) a waiver of the Debtors~~'~~**'** or any other party in ~~interest's~~**interest's** rights to dispute any

prepetition claim, interest, or lien on any grounds; (c) a promise or requirement to pay prepetition

claims; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) an

implication or admission that any particular claim, interest, or lien is of a type specified or

defined in the Motion or this Order; (f) an authorization to assume any prepetition agreement,

contract, or lease pursuant to section 365 of the Bankruptcy Code; or (g) a waiver of the

Debtors~~'~~**'** or any other party in ~~interest's~~**interest's** rights under the Bankruptcy Code or any other

applicable law.

~~42~~**32**.   The Debtors, in connection with offering a product or service, have not disclosed

any policies prohibiting the transfer of ~~personally identifiable information~~**Personal Information**

| | |
|---|---|
| (Page | 39) | |
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief |

about individuals to persons that are not affiliated with the Debtors that are inconsistent with the Sale. Nothing contained in this Order prejudices parties in interest from seeking the appointment of a consumer privacy ombudsman in connection with any other proposed sale.

43.   The Debtors have demonstrated that without the approval of the Order, the Debtors' stakeholders will be harmed, including the Debtors' creditors and its customers.  Further, such harm cannot not be redressed by a legal or equity remedy.  Accordingly, the Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a).

44**33**.   Notwithstanding the possible applicability of Bankruptcy Rules 6003(a), 6004(h), 6006(d), 7062, and 9014 or any other Bankruptcy Rules or Local Rules to the contrary, the terms and conditions of this Order shall be effective and enforceable immediately upon entry, and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

45**34**.   Notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, **and** the Sale, and the proposed assumption and assignment of the Contracts, as provided therein, including through distribution of the Sale**Auction** Notice and the Assumption Notice **of Successful Bidder and Sale Hearing** shall be deemed good and sufficient notice of such Motion, the Sale Hearing, the Asset Purchase Agreement, **and** the Sale, and the proposed assumption and assignment of the Contracts, and the requirements of Bankruptcy Rules 2002, 6004(a), and 6004(c) and the Local Rules are satisfied by such notice. The Sale**Auction** Notice **and Notice of Successful Bidder and Sale Hearing** is hereby approved.

| (Page | 40) | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief |

46**35**.   The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

**36.**   **Notwithstanding any provision to the contrary in this Order, any Transaction Documents, or any other document related to the sale of the Purchased Assets, with respect to the United States of America (including all agencies, departments, and instrumentalities thereof, the "United States"), nothing shall:**

i.    **release, nullify, preclude, or enjoin the enforcement of any police or regulatory powers;**

ii.    **affect the setoff or recoupment rights of the United States against the Debtors;**

iii.    **confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);**

iv.    **solely to the extent included in the Purchased Assets, authorize the assumption, assignment, sale or other transfer of any federal: (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) leases, (i) certifications, (j) applications, (k) registrations, (l) billing numbers, (m) national provider identifiers, (n) provider transaction access numbers, (o) licenses, (p) permits, (q) covenants, (r) inventory, (s) guarantees, (t) indemnifications, (u) data, (v) records, or (w) any other interests belonging to the United States (collectively, "Federal Interests"), without compliance by the Debtors and Purchaser with the terms of the Federal Interests or, to the extent section 365 of the Bankruptcy Code is applicable, section 365(c);**

v.    **be interpreted to set cure amounts under section 365 of the Bankruptcy Code or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; or**

(Page | 41)
Debtors:            NEW RITE AID, LLC, et al.
Case No.           25-14861 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                   [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                   Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                   Interests, (III) Authorizing the Assumption and Assignment of the
                   Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                   Thereto in Accordance with the Assumption and Assignment Procedures,
                   and (IV) Granting Related Relief

vi.   expand the scope of 11 U.S.C.§ 525.

37.    In the event of an inconsistency or conflict between any provision of the Transaction Documents and any provision of this Order, as to the United States, the provisions of this Order shall govern.

38.    Notwithstanding any provision to the contrary in this Order, any Transaction Documents, or any other document related to the sale of the Purchased Assets, after Closing, nothing in such documents shall release, nullify, preclude, or enjoin the enforcement of any police or regulatory powers, under environmental statutes or regulations, to a governmental unit that any entity would be subject to as the post-sale owner or operator of the applicable Purchased Assets after the date of the Closing.

39.    Nothing in this Order, the Transaction Documents, or any document, agreement, or instrument contemplated by any of the foregoing, including any "transition services or transition period agreements", shall: (a) be construed to authorize or permit (i) the assumption and/or assignment of any surety bond issued by (A) International Fidelity Insurance Company and/or its affiliates, (B) Berkley Insurance Company, (C) The Hanover Insurance Company, and/or (D) RLI Insurance Company (items A through D, collectively, the "Sureties" and, each individually, a "Surety") on behalf of the Debtors (collectively, the "Surety Bonds" and, each individually, a "Surety Bond"), (ii) the assumption and/or assignment of any indemnity agreements executed by one or more of

(Page | 42)
Debtors:          NEW RITE AID, LLC, et al.
Case No.          25-14861 (MBK)
Caption of Order: Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                  [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                  Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                  Interests, (III) Authorizing the Assumption and Assignment of the
                  Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                  Thereto in Accordance with the Assumption and Assignment Procedures,
                  and (IV) Granting Related Relief

the Debtors pursuant to which the Surety Bonds were issued (the "Indemnity Agreements" and, each individually, an "Indemnity Agreement"), or (iii) obligate a Surety to replace any Surety Bond and/or issue any new surety bond on behalf of a Purchaser; or (b) be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Surety Bond and/or any Indemnity Agreement, including, for the avoidance of doubt, that the Purchaser shall not be a substitute principal under any Surety Bond or any Indemnity Agreement absent a Surety's consent thereto or further order of the Bankruptcy Court. Additionally, nothing in this Order, the Transaction Documents, or any "transition agreement", or any other document, agreement, or instrument contemplated by any of the foregoing shall be deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that the Sureties have or may have under applicable bankruptcy and non-bankruptcy laws, under any of the their respective Surety Agreements, or related agreements, or any letters of credit, or other Surety collateral relating thereto.

40.    Nothing in this Sale Order shall authorize the sale of any credits and/or chargebacks provided by Haleon US Services, Inc. f/k/a GSK Consumer Healthcare Services Inc. to any of the Debtors (including but not limited to Loyalty and/or Co-op Funding, Feature Ad Costs and/or other promotional costs associated with Haleon brands

(Page | 43)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief |

as well as any other type of credit Rite Aid may assert) (the "Credits"), and such Credits shall be an asset excluded from any such sale.

41.    Notwithstanding anything to the contrary in this Order, the Motion, any Asset Purchase Agreement, the Transaction Documents, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, any Contract Assumption Notice, any Supplemental Contract Assumption Notice, any notice or list of Assigned Contracts and/or Cure Payments, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, assumption, assignment or any other transfer to any Purchaser at this time of (i) any insurance policies that have been issued by ACE American Insurance Company and/or any of its U.S.-based affiliates and/or any predecessors and successors of any of the foregoing (collectively, and solely in their capacities as insurers under the foregoing policies, the "Chubb Companies") to, or pursuant to which coverage is provided to, any of the Sellers (or their affiliates or predecessors) at any time, and all agreements, documents or instruments relating to such policies, including, without limitation, any collateral or security provided by or on behalf of any of the Sellers (or their affiliates or predecessors) to any of the Chubb Companies and the proceeds thereof (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts including, without limitation, any of the Chubb

(Page | 44)
Debtors:                    NEW RITE AID, LLC, et al.
Case No.                    25-14861 (MBK)
Caption of Order:           Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                            [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                            Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                            Interests, (III) Authorizing the Assumption and Assignment of the
                            Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                            Thereto in Accordance with the Assumption and Assignment Procedures,
                            and (IV) Granting Related Relief

Companies' indemnity, subrogation, setoff, recoupment, and/or other rights; (b) the Chubb

Insurance Contracts and any rights, interests, proceeds, benefits, claims, rights to

payments and/or recoveries under or related to such Chubb Insurance Contracts (i) are

not and shall not be deemed to be Assigned Contracts, Purchased Assets, or a portion of

any of the Purchased Assets sold, assigned or otherwise transferred as part of any the Sale

hereunder, and (ii) shall be deemed to be Excluded Assets; (c) nothing herein shall alter,

modify or otherwise amend the terms, conditions, rights, and/or obligations of and/or

under the Chubb Insurance Contracts; (d) for the avoidance of doubt, the Purchaser is not,

and shall not be deemed to be, insureds under any of the Chubb Insurance Contracts;

*provided, however,* that, to the extent any claim with respect to the Purchased Assets arises

that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in

accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over

to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"), *provided,*

*further, however,* that the Chubb Companies shall not have any duty to the Purchaser to

effectuate a Proceed Turnover or liability to the Purchaser related to a Proceed Turnover.

42.     For the avoidance of doubt, the Purchased Assets shall not include any of the

Debtors' rights arising under or in connection with that certain Supply Agreement between

Rite Aid Corporation and McKesson Corporation ("McKesson"), dated as of August 30,

2024 (as amended, restated, amended and restated, supplemented or otherwise modified

(Page | 45)

| | |
|---|---|
| Debtors: | NEW RITE AID, LLC, et al. |
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief |

from time to time, the "Supply Agreement"), including any rebates, rights of return, set-off, recoupment, indemnification, rights to the assignment of antitrust claims, or related assets of the Debtors.  Notwithstanding anything to the contrary in this Order, but without limiting the Purchaser's protections under this Order, McKesson's rights (a) against the Debtors under the Supply Agreement, and (b) against the Debtors and/or any other parties to any intercreditor agreements related to the Supply Agreement under such intercreditor agreements are fully reserved.

43.    In accordance with Section 5.16 *(Further Assurances)* of the Asset Purchase Agreement, following the Closing, the Debtors and Purchaser will execute any document as may reasonably be required to facilitate Purchaser's access to, and possession of, the Primary Conveyed Accounts as defined in Section 9.1 of the Asset Purchase Agreement, which includes:

a.    domain registrar accounts (GoDaddy, Network Solutions, NameCheap, 101 Domains, Network Solutions for Rite Aid Advertising, DynaDots as per Section (d) of the IP Schedule 1.1(a));

b..    short codes 88688, 75708, 96843 and related mobile aggregator accounts (e.g. Sinch, Twilio, or others);

c.    Amazon e-commerce account (https://www.amazon.com/stores/RiteAid/page/04A18F60-4172-49AE-B72C-72B4BC68DC); and

d..    social media accounts (as per the Specified Asset Schedule 1.2):

(i)    LinkedIn: Rite Aid

(Page | 46)
Debtors:            NEW RITE AID, LLC, et al.
Case No.            25-14861 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Enter Into and Perform Under the
                    [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of
                    Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and
                    Interests, (III) Authorizing the Assumption and Assignment of the
                    Assumed Contracts to Purchaser and Establishing Cure Amounts Related
                    Thereto in Accordance with the Assumption and Assignment Procedures,
                    and (IV) Granting Related Relief

(ii)     YouTube: @riteaid

(iii)    Facebook: Rite Aid

(iv)     Instagram: @riteaid

(v)      X/Twitter: @riteaid

         (vi)     Pinterest: @riteaid

44.    From and after the Closing, all third party platforms managing, hosting and/or related to the Primary Conveyed Accounts are authorized to transfer administrative control of the Primary Conveyed Accounts to Purchaser.

45.    Each third-party digital platform and online marketplace, including Amazon, Meta, X, LinkedIn, YouTube, and Pinterest, is entitled to rely on this Order and the Transaction Documents in connection with providing Purchaser with access to, and possession of, the Primary Conveyed Accounts in accordance with the Transaction Documents.

46.    This Sale Order shall be binding upon any Chapter 11 or Chapter 7 trustee appointed in these bankruptcy cases.

47.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including, without limitation, jurisdiction for the Court to enter further orders necessary to provide

(Page | 47)

| Debtors: | NEW RITE AID, LLC, et al. |
|---|---|
| Case No. | 25-14861 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Enter Into and Perform Under the [Purchaser Name] Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief |

**Purchaser with access to, and possession of, the Primary Conveyed Accounts in accordance with the Transaction Documents**.

**(Page | 48)**

| | |
|---|---|
| **Debtors:** | **NEW RITE AID, LLC, et al.** |
| **Case No.** | **25-14861 (MBK)** |
| **Caption of Order:** | **Order (I) Authorizing the Debtors to Enter Into and Perform Under the Rite Aid LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief** |

---

**~~Schedule 1~~**

**~~Asset Purchase Agreement~~**