**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

**JOINT STIPULATION OF FACTS IN CONNECTION WITH RWY TRUST'S MOTION**
**FOR IMMEDIATE PAYMENT OF POST-PETITION EXPENSES UNDER SECTION**
**365(d)(3)**

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession

(collectively, the "Debtors") and the RWY Trust, by and through their undersigned counsel, submit

this joint stipulation of facts in connection with *RWY Trust's Motion for Immediate Payment of*

*Post-Petition Expenses Under Section 365(d)(3)* [Docket No. 3190] (the "Motion") and Debtors'

objection to the Motion [Docket No. 3479].

---

[1]    The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

**STIPULATED FACTS**

1.      On May 5, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      Prior to the Petition Date, on or about August 3, 1995, Rite Aid of Pennsylvania, Inc., as tenant, entered into a lease with Robert W. Yoder, as landlord, (the "Lease") for the premises located at 500 Lancaster Avenue, Shillington, Pennsylvania (Store No. 290) (the "Premises"). Annexed hereto as **Exhibit A** is a copy of the Lease, and its amendments. The leased Premises is comprised of a storefront space and a warehouse space.

3.      Rite Aid of Pennsylvania, LLC and RWY Trust are the successors to each of the tenant and landlord under the Lease, respectively.

4.      On November 7, 2025, RWY Trust filed the Motion seeking immediate payment of alleged Debtor obligations, as follows:

    a.  $21,262.33 of county taxes;
    b.  $39,455.86 of school taxes;
    c.  $35,000.00 for "basic" re-installation of electric service in the warehouse space;
    d.  $88,000.00 for "basic" re-installation of HVAC services in the warehouse space; and
    e.  Unquantified amounts for numerous other alleged repairs to the warehouse space.

*See*, Motion ¶ 19; *and see Declaration of Robert R. Yoder, Trustee of the RWY Trust* [Docket No. 3191] ¶¶ 10 and 13 (identifying asserted repair and maintenance issues).

5.      All alleged disrepair (the "Disrepair") identified in pictures attached to the *Declaration of Robert R. Yoder, Trustee of the RWY Trust* [Docket No. 3191] and in paragraph 4 hereof, occurred prior to the Petition Date. The issues of Disrepair were not corrected on or prior to the date of rejection. Debtors have not been able to verify 1995 condition of the property but, for purposes of the pending Motion, do not contest the *Declaration of Robert R. Yoder, Trustee of the RWY Trust* [Docket No. 3191] in that regard.

2

6.      Debtors have not been able to verify receipt of the letters attached to the *Declaration of Robert R. Yoder, Trustee of the RWY Trust* [Docket No. 3191] but, for purposes of the pending Motion, do not contest the receipt of the attached letters including without limitation:

- Receipt of real estate tax billing letter, dated May 8, 2035

- Receipt of Notice of Breach letter (covering taxes and maintenance), dated June 8, 2025

- Receipt of school tax billing letter, dated July 8, 2025

7.      The parties estimate that the issues of Disrepair would have required more than a day to repair.

8.      The Debtors rejected the Lease effective as of August 31, 2025. The Court entered an order approving the rejection the Lease on October 15, 2025 [Docket No. 2877].

*[Signature Page Follows]*

Dated:  December 5, 2025

| /s/ Robert R. Yoder | /s/ Michael D. Sirota |
| --- | --- |

**LAU & ASSOCIATES, P.C.**
Shawn J. Lau, Esq. (PA Bar No. 56071)
New Jersey Court Attorney ID No.
041021989
4228 Saint Lawrence Avenue
Reading, Pennsylvania 19606
Phone: (610) 674-0498
Facsimile: (610) 370-0700
shawn laumsn com

**YODER & LANGFORD, P.C.**
Robert R. Yoder, Esq.
(*pro hac vice*)
8175 East Evans Road, #13598
Scottsdale, Arizona 85267
Phone: (602) 808-9578
Facsimile: (602) 468-0688
robert@yoderlangford.com

*Counsel to RWY Trust*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and
Debtors in Possession*

**<u>Exhibit A</u>**

## LEASE

DATE OF LEASE:                        August 3, 1995

IDENTITY OF LANDLORD:                 ROBERT YODER
                                      6344 EAST CACTUS WREN ROAD
                                      PARADISE VALLEY, ARIZONA  85253


IDENTITY OF TENANT:                   RITE AID OF PENNSYLVANIA, INC.
                                      30 Hunter Lane
                                      Camp Hill, Pennsylvania 17011
                                      ATTENTION:  Secretary
                                      (Primary Tenant)

                                      RITE AID CORPORATION
                                      30 Hunter Lane
                                      Camp Hill, Pennsylvania 17011
                                      (Guarantor Tenant)

## WITNESSETH:

### ARTICLE 1 - Grant and Premises

Landlord hereby leases to Tenant subject to the terms and conditions herein certain premises comprised of approximately 2.4 acres of land and the improvements located thereon (collectively, the "Premises") more particularly described in Exhibit A attached hereto, and known as 500 Lancaster Avenue, Shillington, Berks County, Pennsylvania.  The Premises are improved on the date hereof by a single story building containing approximately 25,764 square feet (113' x 228') of space (the "Building") and an appurtenant automobile parking lot (the "Parking Lot").


### ARTICLE 2 - Acceptance of Premises

Tenant agrees to accept the Premises in the condition existing on the date Landlord turns over possession of the Premises to Tenant.  Tenant shall have the benefit of all warranties accruing to the Landlord by reason of construction of the Premises and any installation of equipment thereon, if any.  By so accepting the Premises, Tenant waives any claim for reimbursement of costs incurred by Tenant as against Landlord concerning repairs which may be due in part to conditions existing prior to the commencement of this Lease.


### ARTICLE 3 - Quiet Enjoyment

Provided Tenant is not in default, Tenant shall have peaceable and quiet enjoyment and possession of the Premises during the term hereof and any renewals without any hindrance or molestation from Landlord, its agents, servants, employees or others claiming an interest in the Premises by, through or under Landlord.

**ARTICLE 4 - Commencement of Term**

The Lease shall commence on the date hereof; provided, however, that Tenant's obligation to pay rent hereunder shall commence on the earlier of the following dates (the "Rent Commencement Date"):

(a)    The date on which Tenant has opened for business from the Premises; or

(b)    The date which is one hundred fifty (150) days after the date this Lease is executed by Landlord and Tenant.

**ARTICLE 5 - Length of Term**

The term of this Lease shall be for ten (10) years following the Rent Commencement Date, unless sooner terminated or extended as herein expressly provided.

**ARTICLE 6 - Renewal Options**

Provided Tenant is not in default, Tenant is hereby granted the right to renew this Lease for four (4) successive five (5) year renewal periods. To exercise each, Tenant shall be required to give to Landlord written notice at least six (6) months prior to the expiration of the then current term; provided, however, if Tenant fails to exercise any option right, Tenant's right to exercise said options shall not expire until fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same.

**ARTICLE 7 - Construction of the Premises**

Promptly following the date hereof, Landlord shall deliver the Premises to Tenant. Tenant shall be entitled to renovate the Building to construct therein its standard retail drug store, which may at Tenant's option include a drive-through window, and to install and construct its standard storefront. Tenant shall also be entitled to install its standard satellite dish on the roof of the Building, provided that Tenant shall be liable for any damage to the roof of the Building caused thereby. Landlord shall cooperate with Tenant in Tenant's attempts to secure all public permits or approvals necessary for Tenant's renovations to the Building, including, but not limited to, joining in any applicable permit applications, provided that Tenant shall pay all costs, including reasonable attorney's fees, incurred by Landlord as a result of such cooperation and assistance.

**ARTICLE 8 - Holdover**

Should Tenant remain in possession of the Premises after the expiration of any term hereunder, including renewal options, without the consent of Landlord or without giving notice as provided in Article 6 of this Lease, such holding over shall be deemed to have created and be construed to be a tenancy from month to month, terminable on thirty (30) days written notice from either party to the other. In the event of such holdover by the Tenant the minimum rent during the initial contracted month period shall be one and one-quarter times the minimum rent of the prior expired period.

2

## ARTICLE 9 - Use of Premises

Tenant shall have the right to use the Premises for any lawful retail use.

## ARTICLE 10 - Exclusive

Landlord shall not, either directly or indirectly, during the term of this Lease and any renewals thereof, lease to or otherwise authorize or permit the operation of any other health and/or beauty aids store or pharmacy or authorize or permit the sale of health and/or beauty aids or prescription drugs by any other tenants or grantees of Landlord, on land now owned by or hereafter acquired by Landlord, within an area of one (1) mile of the Premises; provided that the restriction called for herein shall lapse upon a change in the initial use (pharmacy/sale of health and/or beauty aids) of the Premises.  Landlord further represents to Tenant that it has not heretofore granted the above rights in any other lease executed prior hereto.  In the event of a breach of this Article 10, Tenant shall be entitled, in addition to any other remedy available to it, to withhold rent to the extent of damages suffered as a result of such breach, sue for damages, and/or to obtain injunctive or other equitable relief.

## ARTICLE 11 - Tenant's Improvements

In addition to Tenant's right to renovate the Building as set forth in Article 6 of this Lease, Tenant may make at its expense, interior or exterior, non-structural alterations, additions or improvements to the Building, all of which shall remain the property of Tenant provided they are not permanent in nature. Tenant shall also be entitled to reconfigure or alter the Parking Lot.  If Tenant is not in default of this Lease, Tenant may remove such non-permanent alterations, additions and improvements and repair at its expense any damage to the Premises occasioned by such removal.  Tenant shall promptly pay all contractors and materialmen hired by Tenant to furnish any labor or materials.  Should any lien be made or filed, Tenant shall bond against or discharge same within ten (10) days after written request by Landlord.  Tenant shall have the further right to make structural alterations, but only with the prior written consent of Landlord, which shall not be unreasonably withheld.

As a condition to Landlord's agreement to the initial term rent provided herein, Tenant shall make certain renovations to the Premises in the approximate amount on $500,000.00 prior to the Rent Commencement Date.

## ARTICLE 12 - Signs

Tenant shall have the right, at its expense, to erect on the exterior of the Building, and within the Parking Lot, the largest signage permitted by applicable public code (or variance obtained by Tenant, at Tenant's sole cost and expense). Such signs shall be structurally sound and in conformity with existing municipal regulations.  Tenant shall have the right to remove such signs at the termination, or sooner, of this Lease and shall repair any damage caused by such removal.

3

**ARTICLE 13 - REPAIR AND MAINTENANCE**

Tenant shall maintain the Premises at its expense in good condition and repair including, without limitation, the Building, sidewalks, curbs and Parking Lot, making all necessary repairs thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary, and unforeseen and foreseen. In any event, Tenant shall make all repairs necessary to avoid any structural damage or injury to the Premises or otherwise. Tenant shall also maintain all portions of the leased Premises in a clean and orderly condition, free of dirt, rubbish, snow, ice and unlawful obstructions and shall maintain the paving of the Parking Lot and keep the said area striped. Tenant assumes the full and sole responsibility for the condition, operation, repair, replacement, maintenance, and management of the leased Premises. When used in this Article, the term "repairs" shall include all necessary replacements, renewals, alterations, additions and betterments. All repairs made by Tenant shall be performed in a workmanlike manner.

**ARTICLE 14 - Liability Insurance**

Tenant shall, during the entire term hereof, keep in full force and effect a policy of commercial general liability insurance (rated top "Best") with respect to the Premises and the business operated by Tenant and any subtenants of Tenant in the Premises in which the limits of public liability shall not be less than One Million Dollars ($1,000,000) per person and accident, and in which the property damage liability shall not be less than Five Hundred Thousand Dollars ($500,000). The policy shall name Landlord, Tenant, Berks County Industrial Development Authority, and Bank of Pennsylvania as insureds as their interests may appear and shall contain a clause that the insurer will give Landlord, Berks County Industrial Development Authority, and Bank of Pennsylvania ten (10) days prior written notice before it cancels or changes the insurance. A copy of the policy or a certificate of insurance shall be delivered to Landlord.

**ARTICLE 15 - Mutual Waiver of Subrogation**

Each policy of fire insurance with extended coverage insurance carried by Landlord and Tenant shall provide that the insurer waives any right of subrogation against the other in connection with or arising out of any damage to such property contained in the Premises caused by fire or other risks or casualty covered by such insurance. In the event that waiver of subrogation endorsement is obtainable only at an additional expense, then the party so requiring such waiver of subrogation endorsement shall either pay the cost of the additional premium for such provisions, or the other party shall be relieved of its obligation to obtain such endorsement. This release shall extend to the benefit of any subtenant and the agents, employees and guests of any such subtenant.

4

**ARTICLE 16 - Triple Net Lease**

Tenant agrees that this Lease is intended to constitute a net-net-net (or triple net) lease. Accordingly, Tenant shall be solely responsible for and promptly pay all charges for heat, water, gas, electricity, or any other utility used or consumed in the Premises, and all other expenses, charges, taxes, assessments, or costs in connection with the Premises and not otherwise excepted hereunder.

**ARTICLE 17 - Estoppel Statement**

Within ten (10) days after request by Landlord, Tenant agrees to deliver an estoppel certificate to any proposed mortgagee or purchaser, or to Landlord, certifying (if such be the case) that this Lease is in full force and effect and that there are no defenses or offsets thereto, or staying those claimed by Tenant.

**ARTICLE 18 - Subordination**

Tenant agrees to subordinate this Lease to any institutional first mortgage, underlying or master lease now or hereafter placed upon the Premises, and to all advances made or hereafter to be made upon the security thereto. The word "mortgage" as used herein includes mortgages, deeds of trust or similar instruments and the word mortgage, underlying or master lease shall include such modifications, consolidations, extensions, renewals, replacements or substitutes thereof. Provided, however, that if Tenant is not in default of this Lease, its tenancy will not be disturbed but shall continue in full force and effect. As a condition to Tenant's obligations hereunder, Landlord shall obtain a Subordination, Non-Disturbance and Attornment Agreement in satisfactory form from the holders of any and all of the above mortgages or underlying or master leases. Notwithstanding anything herein to the contrary, Tenant acknowledges that Landlord's rights to lease the Premises is subject to a lease between the Berks County Industrial Development Authority and Landlord.

**ARTICLE 19 - Assignment-Subletting**

Tenant shall have the right to assign this Lease or sublet the Premises or any portion thereof without the need for Landlord's consent. Notwithstanding any assignment or sublease, Tenant and Tenant's guarantor shall remain liable on this Lease and shall not be released from performing any of the terms, covenants and conditions of this Lease.

**ARTICLE 20 - Governmental Regulations**

Tenant shall, at Tenant's sole cost and expense, comply with all of the requirements of all county, municipal, state, federal and other applicable

5

governmental authorities now in force or which may hereafter be in force pertaining
to its use of the Premises, except that Tenant may defer compliance with and contest
same, provided Tenant first gives Landlord assurance satisfactory to Landlord (which
may include the posting of a bond) against any loss, cost or expense on account
thereof. Any changes required by such authorities whether or not caused by the act
or neglect of the Tenant shall be performed by Tenant.

## ARTICLE 21 - Eminent Domain

If the whole of the Premises shall be acquired or condemned by eminent domain
for any public or quasi-public use or purpose, then the term of this Lease shall
cease and terminate when the Premises are physically taken, and all rentals shall
cease on said date.

In the event of a taking of any portion of the Premises, if such taking
materially affects the economic feasibility of the continued operation of Tenant's
business, Tenant shall have the option to cancel this Lease by serving notice of
cancellation within three (3) months following such partial taking. If Tenant
determines to remain in operation, then Landlord shall, within six (6) months after
said condemnation, rebuild the Premises on the space available, and all rent shall
be equitably reduced.

Any substantial interference with access for more than six (6) months to the
Premises via the main highway or public street servicing the Premises or reduction
in the number of parking spaces within the Premises below the minimum number
required by applicable zoning ordinance shall be deemed the basis for Tenant
terminating this Lease or abating its rent.

Tenant shall have the further right to receive any relocation damages afforded
Tenants under the eminent domain laws of the state in which the Premises are
located, as well as the right to receive compensation or damages for inventory,
signs, machinery, equipment, fixtures and all alterations not replacing Landlord's
original equipment. Tenant shall make no claims for loss of its leasehold estate
or for damages which shall diminish Landlord's right to recover for its estate.

## ARTICLE 22 - Destruction of Building

Rent and all occupancy charges shall continue without abatement during any
period of untenantability resulting from damage to the Building. In the event of
damage to the Building by fire or other casualty or cause rendering the Building
partially untenantable, Tenant shall diligently restore the Building. In the event
of damage by fire or other casualty or cause rendering the Building substantially
untenantable and requiring essentially a rebuilding of the Building, Tenant shall
diligently rebuild and restore the same. Provided, however, that in the event said

6

destruction shall occur within two (2) years prior to end of the original term of
this Lease or within one (1) year prior to the end of any renewal period, then
Tenant shall not be required to rebuild and restore the Building, in which case this
Lease shall be deemed terminated as of the date of casualty, and Tenant shall pay
over to Landlord all insurance proceeds payable on account of the casualty, plus all
remaining rents due under the then current lease term. This Lease shall be extended
by any period of untenantability.

**ARTICLE 23 - Default of Tenant**

     In addition to other rights hereunder or at law or equity, if any default of
Tenant shall continue uncorrected for ten (10) days, after notice, in the case of
rental required to be paid hereunder, or for a period of thirty (30) days, as to any
other obligation of Tenant hereunder, after notice thereof from Landlord, (except
to the extent that cure reasonably requires in excess of thirty (30) days to
complete, in which case Tenant shall not be in default of this Lease so long as
Tenant commences to cure within thirty (30) days following receipt of Landlord's
notice and thereafter diligently and in good faith prosecutes a cure until complete)
then Landlord may, by giving written notice to Tenant at any time thereafter during
the continuance of such default, re-enter the Premises by summary proceedings or
otherwise, expelling Tenant and removing all property therefrom; but Tenant shall
remain liable for the equivalent of the amount of all rent reserved herein less the
avails of reletting, after deducting therefrom the reasonable cost of obtaining
possession of the Premises, and of reletting, including attorney fees, brokerage
fees and alterations and repairs necessary to relet the Premises. Any and all
monthly deficiencies so payable by Tenant shall be paid monthly on the date herein
provided for the payment of rent; under no circumstances shall Landlord be entitled
to accelerate the rent due hereunder.

**ARTICLE 24 - Access to Landlord**

     Landlord or Landlord's agent shall have the right to enter the Premises at
reasonable times to examine same, and to show them to prospective purchasers of the
building and to make such repairs as Landlord may deem necessary or desirable,
provided such repairs shall not unreasonably interfere with Tenant's occupancy of
or business in the Premises. Notwithstanding the forgoing, Tenant agrees that
Landlord may access the Premises including the Parking
lot as may be necessary to maintain/remove/install underground tanks in connection
with any past operations conducted on the leased premises. Landlord, prior to the
maintenance/ removal/ installation of said underground tanks, shall give Tenant 15
days advance written notice. Landlord covenants and agrees that all such work shall
be done in a prompt manner and with as little interference with Tenant's business
as is possible. The entire cost of such maintenance/ removal/ or installation as
called for herein shall be borne by Landlord, unless Tenant or its agents or assigns

7

conducts a business in which such underground tanks are used, in which case such maintenance/ removal/ or installation obligations shall become the sole responsibility of Tenant.

## ARTICLE 25 - Force Majeure

If either party shall be delayed or hindered in or prevented from the performance of any act required hereunder, excluding delivery of the Premises by Landlord as required in Article 6 hereof, by reason of strikes, lock-outs, labor trouble, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war or other reasons of like nature not the fault of the party delayed, then performance of such act shall be excluded for the period of the delay and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay.  The provisions of this Article shall not operate or excuse Tenant from the prompt payment of rent, or additional rent or any other payments required by the terms of this Lease, except as same may be excused during delay in delivery of the Premises.

## ARTICLE 26 - Rent

Tenant herein covenants and agrees to pay Landlord as minimum rent the following sums during the following periods:

| Period | Annual Minimum Rent Per Square Foot of the Building (Based On Outside Dimensions) | Annual Minimum Rent | Monthly Installment |
|---|---|---|---|
| Years 1-5 | $6.25 | $161,025.00 | $13,418.75 |
| Years 6-10 | 6.87 | 176,998.68 | 14,749.89 |
| First Renewal Term | 7.56 | 194,775.84 | 16,231.32 |
| Second Renewal Term | 8.31 | 214,098.84 | 17,841.57 |
| Third Renewal Term | 9.15 | 235,740.60 | 19,645.05 |
| Fourth Renewal Term | 10.06 | 259,185.84 | 21,598.82 |

Said rent (i) is based on the Building containing 25,764 square feet of space, outside dimensions, (ii) shall be adjusted at the same per square foot rents to reflect the actual square footage of the Building (using outside dimensions) based on a survey of the Building performed by Tenant and agreed to or verified by Landlord prior to the Rent Commencement Date; and (iii) shall be paid in equal monthly installments, on or before the first day of each month, in advance without notice or demand.  If the Rent Commencement Date shall fall on a day other than thee first day of a month, then minimum rent shall be pro-rated for the balance of said month on a per diem basis.

8

## ARTICLE 27 - Broker's Fee

Landlord and Tenant mutually warrant, one to another, that there are no real estate brokers entitled to a commission as a result of producing this Lease, and that neither employed or engaged a real estate broker or agent to effectuate this Lease, other than P. F. Pasbjerg Development Company, which shall be paid a commission by Landlord pursuant to agreements between the broker and Landlord. Landlord and Tenant each hereby indemnify, hold harmless and agree to defend the other against the claim of any other party claiming to have dealt with the indemnifying party as broker with respect to this transaction.

## ARTICLE 28 - Payment of Taxes

Tenant shall pay the real estate taxes assessed and payable with respect to the Premises as of and upon the Rent Commencement Date. Landlord shall forward to Tenant originals of all such bills to permit Tenant to pay such taxes before the imposition of late fees. Tenant may also appeal any tax assessment increase in the name of Landlord, who shall cooperate with Tenant. If by Landlord's efforts Landlord receives any abatement, refund or rebate of said real estate taxes, Landlord shall refund to Tenant, any such real estate taxes less Landlord's cost of obtaining said abatement, refund or rebate. Tenant shall pay all license, privilege, ad valorem or other taxes levied, assessed or charged against it or Landlord on account of the operation of its business or on account of property belonging to the Tenant. Notwithstanding anything herein to the contrary, Tenant shall not be required to pay Landlord's income taxes as a result of this Lease.

All taxes or payments in lieu of taxes assessed during a lease term but payable in whole or in part after expiration of the Lease without renewal or holdover, shall be adjusted and prorated, so that Landlord shall pay its prorated share for the period subsequent to the Lease term and Tenant shall pay its prorated share for the Lease term.

## ARTICLE 29 - Landlord's Title

Except as otherwise provided herein, Landlord covenants and warrants to Tenant that Landlord has good and marketable title to the Premises in which Tenant is given rights of use by this Lease, and that Landlord is not aware of any title objections capable of interfering with Tenant's beneficial use of the Premises, or any part thereof, as permitted under this Lease. Landlord covenants and warrants that the Premises may be used for the initial purpose herein contemplated.

**ARTICLE 30 - Liens**

Landlord shall keep the Premises free and discharged of mechanics' and materialmen liens and encumbrances affecting the leasehold interest created hereby which are the results of Landlord's act(s) or omission(s). If Tenant shall be made a party to any legal proceedings affecting Tenant's right of possession, not caused by any act of Tenant, Landlord will reimburse Tenant for reasonable attorneys' fees or other expenses incurred by Tenant in defending its right to this Lease, and any such expenses may be applied by Tenant upon rental due or to become due.

Tenant shall keep the Premises free and discharged of mechanics' and materialmen liens and encumbrances affecting the leasehold interest created hereby which are the results of Tenant's act(s) or omission(s). If Landlord shall be made a party to any legal proceedings affecting Landlord's right of possession, not caused by any act of Landlord, Tenant will reimburse Landlord, as additional rent, for reasonable attorneys' fees or other expenses incurred by Landlord in defending its right to this Lease.

**ARTICLE 31 - Notices**

All notices required to be sent under the provisions of this Lease to Landlord and Tenant by one another shall be in writing and sent by U.S. mail, certified, return receipt requested, to the addresses set forth on the first page of this Lease with Tenant's notice directed Attention:  Secretary, 30 Hunter Lane, Camp Hill, Pennsylvania 17011. Notices shall be deemed given when actually received, or, if delivery is refused, when delivery is attempted. Notices to be given by Tenant may be given by Rite Aid Corporation with the same force and effect as if given by Tenant.

**ARTICLE 32 - Recording**

This Lease shall not be recorded, but a short form or memorandum of this Lease may be recorded upon the request of either party.

**ARTICLE 33 - Successors and Assigns**

This Lease shall be binding upon and shall inure unto the benefit of the parties hereto and their respective legal representatives, heirs, successors and assigns.

10

**ARTICLE 34 - Fire Insurance**

Tenant shall, at its sole cost and expense, procure a policy or policies (rated top "Best") of fire and extended coverage insurance on the Building equal to the full replacement value of the Building, which shall name Landlord, Tenant, Berks County Industrial Development, and Bank of Pennsylvania as insureds as their interests may appear and shall contain a clause that the insurer will give Landlord, Berks County Industrial Development Authority and Bank of Pennsylvania ten (10) days prior written notice before it cancels or changes insurance. Tenant shall supply Landlord with a copy or certificate of such insurance prior to the Rent Commencement Date.

**ARTICLE 35 - Hazardous Materials**

Tenant shall be responsible for the removal, abatement or monitoring (as and to the extent required by law) of any hazardous material brought onto the Premises by Tenant or Tenant's agent.

**ARTICLE 36 - Surrender of Premises**

Except as otherwise provided in Article 22 hereof, on the last day of the term demised or on the sooner termination thereof, Tenant shall peaceably surrender the Premises in good order, condition and repair, broom-clean, reasonable wear and tear alone excepted, and shall surrender all keys for the Building to Landlord at the place then fixed for the payment of rent.

**ARTICLE 37 - Indemnification**

If, for any reason whatsoever, including, but not limited to, the abandonment of the Premises, Tenant's failure to pay insurance premiums or Tenant's failure to occupy the Premises as herein permitted, Tenant fails to provide and keep in force any or all of the insurance policies set forth herein, or if the insurer shall become insolvent or otherwise fail to pay a claim, then in such event Tenant shall indemnify and hold Landlord harmless against any loss which would have been covered by such insurance. Tenant also hereby agrees to indemnify and hold Landlord harmless against any covered loss to the extent such loss exceeds any policy limits in force. Tenant further agrees to protect and save Landlord harmless from any and all claims, insured or uninsured, costs and expenses (including attorney's fees) incurred by Landlord and/or any third party claimant for injuries to persons or property arising out of or during the occupancy or operation of the Premises by Tenant, or any sublessee thereof, and their agents, servants, employees, and customers.

11

In addition to the forgoing, if Tenant shall fail to maintain insurance as required herein, Landlord, in addition to any other remedies at law or in equity may (but shall not be obligated to) cause insurance, as aforesaid, to be issued. In such event Tenant shall pay the premium for such insurance as additional rent promptly upon Landlord's demand.

## ARTICLE 38 - Guarantee of Lease Obligations

Notwithstanding anything herein to the contrary, Rite Aid Corporation shall, and does hereby, guarantee all obligations and liabilities of Rite Aid of Pennsylvania, Inc. (or any of its sublessees, successors or assigns) hereunder arising during or out of any term of this Lease, whether an initial term, holdover term, or renewal option. Should Rite Aid of Pennsylvania, Inc. (or any of its sublessees, successors or assigns) fail to perform any obligation hereunder, Rite Aid Corporation shall be deemed the "Tenant" hereunder. Rite Aid Corporation's duties under this Lease guarantee are in no way dependant on Rite Aid Corporation's ability to seek or collect reimbursement from the primary Tenant or any other individual or entity.

## ARTICLE 39 - Characterization of Amounts Due

All sums other than rent payable hereunder by Tenant are hereby deemed and declared to be additional rent under the terms of this Lease and the Landlord shall have any and all rights afforded it hereunder or at law or equity to collect the same. Such sums shall include, but not be limited to, initial term rent, renewal option term rent, late pay charges, excess real estate taxes, attorney's fees, court costs, costs of repairs and maintenance, and utility bills.

**IN WITNESS WHEREOF** Landlord and Tenant have signed and sealed this Lease as of the day and year first above written.

Witness:                                         Landlord:

_____             _____ (Seal)
                                                 Robert Yoder
                                                    W.

Witness:                                         Tenant (primary):

                                                 **RITE AID OF PENNSYLVANIA, INC.**

_____             _____ (Seal)
                                                 Charles E. Brodsky
                                                 Authorized Representative

Witness:                                         Tenant (guarantor)

                                                 **RITE AID CORPORATION**

_____             _____ (Seal)
                                                 Charles E. Brodsky
                                                 Authorized Representative

STATE OF ARIZONA   )

COUNTY OF MARICOPA        )        :

On the 3/2 day of Aug 7, 1995, before me, the undersigned officer, personally appeared **ROBERT YODER**, and **CHARLES E. BRODSKY**, who acknowledged that they executed the foregoing instrument for the purposes therein contained.

**IN WITNESS WHEREOF**, I have hereunto set my hand and Notarial Seal.

_____
My Commission Expires: 7/27/95

13

EXHIBIT "A"


ALL THAT CERTAIN brick super market
building together with the tract or piece of
land upon which the same is erected, situate
on the Southerly side of Pennsylvania State
Highway U. S. Route No. 222, leading from
Reading to Shillington at its intersection
with Mifflin Boulevard in the Township of
Cumru, County of Berks and Commonwealth of
Pennsylvania, more fully bounded and described
as follows, to wit:

BEGINNING at a point on the center line
of Pennsylvania State Highway U. S. Route No.
222 in line with the Easterly side of Mifflin
Boulevard, being the former County Home Lane;
thence extending along the center line of
said Pennsylvania State Highway U. S. Route
No. 222, the two (2) following courses and
distances: (1) North seventy-six (76) degrees
forty-seven (47) minutes fifty-five (55)
seconds East, one hundred eighty-one feet and
ninety-six one-hundredths of one foot (181.96')
to the point of curvature; (2) in an Easterly
direction along the arc of a curve deflecting
to the left having a radius of one thousand
five hundred sixty-three feet and fifty-four
one-hundredths of one foot (1,563.54'), a
central angle of four (4) degrees twenty-two
(22) minutes fifty-eight (58) seconds, the
chord of said curve bearing North seventy-
four (74) degrees thirty-six (36) minutes
twenty-six (26) seconds East, for a distance
of one hundred nineteen feet and fifty-seven
one-hundredths of one foot (119.57') a dis-
tance along the arc of one hundred nineteen
feet and sixty one-hundredths of one foot
(119.60') to a point; thence extending along
property now or late of Tulip Realty Co., of
Pa., Inc., South three (3) degrees forty (40)
minutes thirty (30) seconds West, passing
through the middle of a party wall being the
Easterly wall of the super market erected on
the herein described premises, four hundred
fifty-four feet and forty-two one-hundredths
of one foot (454.42') to a point; thence
extending along the Northerly boundary line
of a lot development known as "Mifflin Park",
said plan recorded in Plan Book Volume 14,
page 28, Berks County records, the property
now or late of W. Marshall Hughes & Son,
Inc., North eighty-six (86) degrees nineteen
(19) minutes thirty (30) seconds West, three
hundred twelve feet and ninety-three one-
hundredths of one foot (312.93') to an iron
pin; thence extending along the Easterly side
of Mifflin Boulevard, North seven (7) degrees
forty-four (44) minutes forty-five (45)
seconds East, three hundred sixty-three feet
and forty-five one-hundredths of one foot
(363.45') to the place of beginning.

CONTAINING in area 2 acres and 126.15
perches of land.

<u>FIRST</u>
<u>ADDENDUM TO LEASE</u>

DATE OF LEASE:                    **August 3, 1995**

IDENTITY OF LANDLORD:        **ROBERT W. YODER**
                             **6344 EAST CACTUS WREN ROAD**
                             **PARADISE VALLEY, ARIZONA 85253**

IDENTITY OF TENANT:          **RITE AID OF PENNSYLVANIA, INC.**
                             **30 Hunter Lane**
                             **Camp Hill, Pennsylvania 17011**
                             **ATTENTION:   Secretary**
                             **(Primary Tenant)**

                             **RITE AID CORPORATION**
                             **30 Hunter Lane**
                             **Camp Hill, Pennsylvania 17011**
                             **(Guarantor Tenant)**

### RECITALS:

1.   **WHEREAS**, Landlord and Tenant entered into a Lease dated August 3, 1995; and

2.   **WHEREAS**, Article 26 of the Lease provided a rent schedule based on an estimate of 25,764 square feet of space, to be adjusted to reflect actual square footage on a survey of the Building performed by Tenant and agreed to or verified by Landlord prior to the Rent Commencement Date; and

3.   **WHEREAS**, Tenant has now conducted such survey and Landlord hereby agrees to the results thereof.

### AGREEMENTS:

1.   The schedule of minimum rent contained in Article 26 is hereby replaced as follows to reflect the actual square footage agreed to (26,000) as determined by the survey referred to above:

| Period | Annual Minimum Rent Per Square Foot of the Building (Based On Outside Dimensions) | Annual Minimum Rent | Monthly Installment |
|---|---|---|---|
| Years 1-5 | $   6.25 | $162,500.00 | $13,541.67 |
| Years 6-10 | 6.87 | 178,620.00 | 14,885.00 |
| First Renewal Term | 7.56 | 196,560.00 | 16,380.00 |
| Second Renewal Term | 8.31 | 216,060.00 | 18,005.00 |
| Third Renewal Term | 9.15 | 237,900.00 | 19,825.00 |
| Fourth Renewal Term | 10.06 | 261,560.00 | 21,796.67 |

This First Addendum to Lease shall amend only the provisions described above, and the remaining lease provisions shall remain in full force and effect as so modified.

**IN WITNESS WHEREOF,** Landlord and Tenant hereby agree to the terms and conditions hereof.

Witness:                              **LANDLORD**

_____    _____(Seal)
                              Robert W. Yoder


                              Tenant (Primary):
Witness:                      **RITE AID OF PENNSYLVANIA, INC.**

_____    _____(Seal)
                              Charles E. Brodsky
                              Authorized Representative


                              Tenant (Guarantor)
Witness:                      **RITE AID CORPORATION**

_____    _____(Seal)
                              Charles E. Brodsky
                              Authorized Representative


337318

<u>FIRST</u>
<u>ADDENDUM TO LEASE</u>

DATE OF LEASE:                    August 3, 1995

IDENTITY OF LANDLORD:    ROBERT W. YODER
                         6344 EAST CACTUS WREN ROAD
                         PARADISE VALLEY, ARIZONA 85253

IDENTITY OF TENANT:      RITE AID OF PENNSYLVANIA, INC.
                         30 Hunter Lane
                         Camp Hill, Pennsylvania 17011
                         ATTENTION:  Secretary
                         (Primary Tenant)

                         RITE AID CORPORATION
                         30 Hunter Lane
                         Camp Hill, Pennsylvania 17011
                         (Guarantor Tenant)

## <u>RECITALS:</u>

1.    **WHEREAS**, Landlord and Tenant entered into a Lease dated August 3, 1995; and

2.    **WHEREAS**, Article 26 of the Lease provided a rent schedule based on an estimate of 25,764 square feet of space, to be adjusted to reflect actual square footage on a survey of the Building performed by Tenant and agreed to or verified by Landlord prior to the Rent Commencement Date; and

3.    **WHEREAS**, Tenant has now conducted such survey and Landlord hereby agrees to the results thereof.

## <u>AGREEMENTS:</u>

1.    The schedule of minimum rent contained in Article 26 is hereby replaced as follows to reflect the actual square footage agreed to (26,000) as determined by the survey referred to above:

| Period | Annual Minimum Rent Per Square Foot of the Building (Based On Outside Dimensions) | Annual Minimum Rent | Monthly Installment |
|---|---|---|---|
| Years 1-5 | $  6.25 | $162,500.00 | $13,541.67 |
| Years 6-10 | 6.87 | 178,620.00 | 14,885.00 |
| First Renewal Term | 7.56 | 196,560.00 | 16,380.00 |
| Second Renewal Term | 8.31 | 216,060.00 | 18,005.00 |
| Third Renewal Term | 9.15 | 237,900.00 | 19,825.00 |
| Fourth Renewal Term | 10.06 | 261,560.00 | 21,796.67 |

This First Addendum to Lease shall amend only the provisions described above, and the remaining lease provisions shall remain in full force and effect as so modified.

**IN WITNESS WHEREOF,** Landlord and Tenant hereby agree to the terms and conditions hereof.

Witness:                                    **LANDLORD**


_____    _____(Seal)
                             Robert W. Yoder


                             Tenant (Primary):
Witness:                     **RITE AID OF PENNSYLVANIA, INC.**

_____    _____(Seal)
                             Charles E. Brodsky
                             Authorized Representative


                             Tenant (Guarantor)
Witness:                     **RITE AID CORPORATION**

_____    _____(Seal)
                             Charles E. Brodsky
                             Authorized Representative


337318

L:/LEGAL LEG/PAS/Amendmod/290
REV: 1/6/10

## SECOND AMENDMENT TO LEASE

**THIS SECOND AMENDMENT TO LEASE** made this 8th day of
January , 2010, by and between **ROBERT W. YODER**, having an address of 6344
East Cactus Wren Road, Paradise Valley, AZ 85253 ("Landlord") and **RITE AID OF
PENNSYLVANIA, INC.,** a Pennsylvania corporation, having an address of P.O. Box 3165,
Harrisburg, Pennsylvania 17105 ("Tenant").

**WHEREAS,** Landlord and Tenant entered into a Lease dated August 3, 1995, as
amended by First Addendum to Lease dated August 3, 1995, (collectively and as amended, the
"Lease"), for the premises located at 500 East Lancaster Avenue, Shillington, Pennsylvania (the
"Leased Premises"); and

**WHEREAS,** the term of the Lease expires on December 12, 2010 with three (3)
remaining, available five (5) year renewal periods; and

**WHEREAS,** Landlord and Tenant desire to amend the Lease as set forth herein.

**NOW, THEREFORE, WITNESSETH,** intending to be legally bound hereby,
and in consideration of the promises and mutual covenants herein contained the parties do hereby
agree as follows:

1. Tenant hereby exercises the option to extend the term of the Lease for five (5)
years beginning December 13, 2010 and ending December 12, 2015 ("Second Renewal Period").

2. Notwithstanding anything to the contrary set forth in Article 26 of the Lease, as
amended, Tenant shall pay a reduced annual minimum rent to the Landlord during the Second
Renewal Period in the amount of One Hundred Eighty Six Thousand Seven Hundred Thirty Two
and 00/100 Dollars ($186,732.00) payable in equal monthly installments of Fifteen Thousand
Five Hundred Sixty One and 00/100 Dollars ($15,561.00) each on the first day of each month in
advance.

3. Notwithstanding anything to the contrary set forth herein, in the event Tenant
exercises its remaining two (2) five (5) year renewal periods pursuant to Article 6 of the Lease,
the annual minimum rent for said renewal periods shall be in the amounts set forth in Article 26
of the Lease, as amended.

1

4.  Landlord acknowledges and affirms that as of the date of this Amendment, Tenant is not in default under any of the terms, covenants, conditions or provisions of the Lease and Landlord has no offsets, claims or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease.  Landlord also acknowledges that it has not been notified and is not currently aware of any event of default by Tenant under the terms of the Lease.

5.  Landlord warrants and represents that consent to this Amendment of any ground lessor, mortgagee or any other lending institution having an interest in the Leased Premises is not necessary, however if said consent is necessary, Landlord shall secure the consent as to this Amendment of any ground lessor, mortgagee or any other lending institution having an interest in the Leased Premises by joinder and execution of this Amendment by said ground lessor, mortgagee or any other lending institution having an interest in the Leased Premises. Landlord further agrees to indemnify, defend and hold Tenant harmless from and against any losses or claims arising from Landlord=s failure to obtain consent to this Amendment from any such ground lessor, mortgagee or lending institution.

6.  All notices, consents or approvals required to be given under the Lease shall be in writing and shall be sent by certified mail, return receipt requested, postage prepaid, or by a nationally recognized overnight courier service as follows:

|  |  |
|---|---|
| If to Landlord: | Robert W. Yoder<br>6344 East Cactus Wren Road<br>Paradise Valley, AZ  85253 |
| If to Tenant: | (If by Certified Mail)<br>Rite Aid of Pennsylvania, Inc.<br>P.O. Box 3165<br>Harrisburg PA 17105<br>Attn: Secretary |
|  | (If by Overnight Mail)<br>Rite Aid of Pennsylvania, Inc.<br>30 Hunter Lane<br>Camp Hill PA 17011<br>Attn: Secretary |

7.  This Amendment may be executed in one or more counterparts, each of which, when taken together, shall constitute one agreement.

8.  Except as specifically modified hereby, all of the terms, covenants and conditions of the Lease shall remain in full force and effect and shall be binding on the parties hereto, their successors and assigns.

2

IN WITNESS WHEREOF, the parties hereto have placed their hands and seals as of the day and year first above written.

**WITNESS:**

**LANDLORD:**

Robert W. Yoder

**WITNESS:**

**TENANT (Primary):**
**RITE AID OF PENNSYLVANIA, INC.**

By:
 I. Lawrence Gelman
 Vice President

**WITNESS:**

**TENANT (Guarantor):**
**RITE AID CORPORATION**

By:
 I. Lawrence Gelman
 Vice President

3

## THIRD AMENDMENT TO LEASE

THIS THIRD AMENDMENT TO LEASE ("Third Amendment") is entered into as of the
_1 ST_ day of _June_, 2015, ("Effective Date") by and between **ROBERT W.
YODER**, and individual, having an address of 6344 East Cactus Wren Road, Paradise Valley,
Arizona 85253 ("Landlord") and **RITE AID OF PENNSYLVANIA, INC.,** a Pennsylvania
corporation having an address of P.O. Box 3165, Harrisburg, Pennsylvania 17105 ("Tenant") and
**RITE AID CORPORATION**, a Delaware corporation having an address of P.O. Box 3165,
Harrisburg, Pennsylvania 17105 ("Guarantor").  Based upon the mutual promises set forth in this
Third Amendment, and for other good and valuable consideration, the receipt and sufficiency of
which is acknowledged, the parties agree as follows:

Recitals

A.      Landlord and Tenant, entered into a written Lease Agreement dated August 3, 1995 as
supplemented and amended by that certain First Addendum to Lease effective August 3, 1995
and by that certain Second Amendment to Lease dated January 8, 2010, (collectively, the
"Lease") for the leasing of a certain premises located at 500 East Lancaster Avenue, in the City
of Shillington, County of Berks, Pennsylvania ("Premises"), as more fully described in the
Lease.

B.      Guarantor agreed to unconditionally guarantee the obligations of Tenant under the Lease.

C.      Landlord, Tenant and Guarantor desire by this Third Amendment to amend the Lease as
provided in this Third Amendment.

Terms:

1.      The above recitals are true and correct and are incorporated by this reference.
Capitalized terms in this Third Amendment shall have the same meaning ascribed to them in the
Lease, unless otherwise noted in this Third Amendment.

2.      Landlord and Tenant acknowledge that the current term of the Lease expires on
December 12, 2015 and that Tenant has two (2) five (5) year options to renew the Lease.

3.      Notwithstanding anything to the contrary in the Lease, the parties agree that the current
term of the Lease is hereby extended for five (5) years ("Extension Period").  Such Extension
Period is to begin on December 13, 2015 and end on December 12, 2020 at an annual rent of
Two Hundred Five Thousand, Four Hundred and 00/100 Dollars ($205,400.00); payable in equal
monthly installments of Seventeen Thousand, One Hundred Sixteen and 67/100 Dollars
($17,116.67) on or before the first day of each month in advance.

1

4.      Notwithstanding anything to the contrary in the Lease, effective the date of this Third Amendment, the parties agree that Tenant shall have four (4) successive options to extend the term of the Lease for a period of five (5) years each.  Each extension period shall be under the terms and conditions as set forth in the Lease, except as may be otherwise amended in this Third Amendment.

5.      Tenant shall have an option to renew this Lease for a period of five (5) years from December 13, 2020 to December 12, 2025 ("Option 1"), on the same terms and conditions as contained in the Lease, as amended herein, except that the rent for the entire term of Option 1 shall be Two Hundred Thirty Seven Thousand Nine Hundred and 00/100 Dollars ($237,900.00) per year; payable in equal monthly installments of Nineteen Thousand Eight Hundred Twenty Five and 00/100 Dollars ($19,825.00) on or before the first day of each month in advance.  To exercise this option to renew, Tenant must notify Landlord in writing at least six (6) months prior to the expiration of the then current term, provided however if Tenant fails to exercise its option right, Tenant's right to exercise said option shall not expire until fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same.

6.      Tenant shall have an option to renew this Lease for a period of five (5) years from December 13, 2025 to December 12, 2030 ("Option 2"), on the same terms and conditions as contained in the Lease, as amended herein, except that the rent for the entire term of Option 2 shall be Two Hundred Sixty One Thousand Five Hundred Sixty and 00/100 Dollars ($261,560.00) per year; payable in equal monthly installments of Twenty One Thousand Seven Hundred Ninety Six and 67/100 Dollars ($21,796.67) on or before the first day of each month in advance.  To exercise this option to renew, Tenant must notify Landlord in writing at least six (6) months prior to the expiration of the then current term, provided however if Tenant fails to exercise its option right, Tenant's right to exercise said option shall not expire until fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same.

7.      Tenant shall have an option to renew this Lease for a period of five (5) years from December 13, 2030 to December 12, 2035 ("Option 3"), on the same terms and conditions as contained in the Lease, as amended herein, except that the rent for the entire term of Option 3 shall be Two Hundred Eighty Seven Thousand Eight Hundred Twenty and 00/100 Dollars ($287,820.00) per year; payable in equal monthly installments of Twenty Three Thousand Nine Hundred Eighty Five and 00/100 Dollars ($23,985.00) on or before the first day of each month in advance.  To exercise this option to renew, Tenant must notify Landlord in writing at least six (6) months prior to the expiration of the then current term, provided however if Tenant fails to exercise its option right, Tenant's right to exercise said option shall not expire until fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same.

8.      Tenant shall have an option to renew this Lease for a period of five (5) years from December 13, 2035 to December 12, 2040 ("Option 4"), on the same terms and conditions as contained in the Lease, as amended herein, except that the rent for the entire term of Option 4

2

shall be Three Hundred Sixteen Thousand Six Hundred Eighty and 00/100 Dollars ($316,680.00) per year; payable in equal monthly installments of Twenty Six Thousand Three Hundred Ninety and 00/100 Dollars ($26,390.00) on or before the first day of each month in advance.   To exercise this option to renew, Tenant must notify Landlord in writing at least six (6) months prior to the expiration of the then current term, provided however if Tenant fails to exercise its option right, Tenant's right to exercise said option shall not expire until fifteen (15) days after written notice by Landlord of Tenant's failure to exercise same.

9.      Notwithstanding anything in the Lease to the contrary, Landlord hereby agrees that, in addition to the uses currently permitted pursuant to the Lease, Tenant may use and operate in the Premises a medical clinic ("Clinic") to provide services, which may include health services typically provided by nurse practitioners (any RN level nurse and beyond), physicians assistants or physicians, including, but not limited to the treatment of common medical conditions, administration of health screenings, examinations and procedures, vaccines and the provision of patient educational materials.   Tenant may operate such Clinic under the trade name of "RediClinic" or such other trade name as Tenant is using for its Clinics in other locations.   Such Clinic shall be a part of the Use of Premises in Article 9 of the Lease.

10.     Landlord hereby consents to Tenant's installation of the Clinic, provided that the alterations to the Premises required in connection with the Clinic do not materially and adversely impact the structure of the building containing the Premises.   The Clinic shall be constructed by Tenant in accordance with all applicable governmental requirements and the applicable provisions of the Lease. The alterations at the Premises for the Clinic shall remain the property of Tenant, provided they are not permanent in nature.   Tenant may, but shall not be obligated to, remove non-permanent portions of the Clinic, provided Tenant repairs any damage to the Premises occasioned by such removal.

11.     Landlord agrees that Tenant supplement its signage in connection with the operation of the Clinic; provided that such signage shall comply with all applicable governmental requirements and the applicable provisions of the Lease and that Tenant shall be responsible for all cost and expense in connection with obtaining any required permits, installation, operation and maintenance of such sign.

12.     Landlord hereby agrees that, consistent with the provisions of Article 19 of the Lease, Landlord's consent shall not be required in connection with subletting or licensing up to 1,000 square feet of the Premises for operation of the Clinic to RediClinic of Pennsylvania, LLC or other entity with whom Tenant has a contractual relationship for purposes of operating the Clinic at the Premises.   Any such sublet or license to use the Premises shall be subject to the terms, conditions and covenants of the Lease, as amended hereby, and, notwithstanding such sublet or license, Tenant shall remain primarily liable for the performance of all terms, conditions and covenants of the Lease.

13.     Each party represents and warrants that it has the full authority to enter into this Third Amendment, and that no third party consents of any kind are required in connection with this Third Amendment.

14.     Rite Aid Corporation, as Guarantor of the Lease, hereby consents to this Third Amendment and hereby unconditionally guarantees the obligations of Tenant under the Lease to Landlord as such Lease has been amended.

15.     Except as amended in this Third Amendment, the Lease and the terms of it shall continue in full force and effect.

16.     The provisions of this Third Amendment shall bind and inure to the benefit of the representatives, successors and assigns of the parties.

17.     In the event of any conflict between the provisions of this Third Amendment and the provisions of the Lease, the provisions of this Third Amendment shall prevail.

18.     This Third Amendment may be executed in several counterparts, each of which shall be deemed an original, all of which together shall constitute one and the same Third Amendment.

IN WITNESS WHEREOF, the parties have executed this Third Amendment to be effective as of the date written above.

WITNESS:

Print Name: ELAINE PETRICK

"LANDLORD"
ROBERT W. YODER

WITNESS:

Print Name: _____

"TENANT"
RITE AID OF PENNSYLVANIA, INC.
a Pennsylvania corporation

By: _____
Print Name: Joseph J. Notarianni
Title: Vice President, Real Estate - Law

WITNESS:

Print Name: _____

"GUARANTOR"
RITE AID CORPORATION,
a Delaware corporation

By: _____
Print Name: Joseph J. Notarianni
Title: Vice President, Real Estate - Law

4

Rite Aid Store No. 290

## FOURTH AMENDMENT TO LEASE

**THIS AMENDMENT TO LEASE** (this "*Amendment*") is made effective November 1, 2023 (the "*Effective Date*") by and between ROBERT YODER as Trustee for the RWY TRUST, sucessor to the original landlord, Robert W. Yoder, a(n) individual ("*Landlord*"), and RITE AID OF PENNSYLVANIA, LLC, a Pennsylvania limited liability company, successor-by-conversion to Rite Aid of Pennsylvania, Inc., a Pennsylvania corporation ("*Tenant*," and together with the Landlord, the "*Parties*" and each, a "*Party*").

## RECITALS

**WHEREAS**, Landlord and Tenant are parties to that certain lease agreement dated August 3, 1995 (as amended by the First Addendum, dated August 3, 1995, the Second Amendment, dated January 8, 2010, and the Third Amendment (the "*Third Amendment*"), dated June 1, 2015, collectively, the "*Lease*"), with respect to that certain premises located at 500 East Lancaster Avenue Shillington, Pennsylvania 19607-1365, which premises is defined and more particularly described in the Lease (the "*Premises*");

**WHEREAS**, on October 15, 2023, Tenant and certain of its debtor affiliates (collectively, the "*Debtors*") commenced a case (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "*Bankruptcy Code*") which is now pending in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*"). The Chapter 11 Cases are being jointly administered under Case Number 23-18993; and

**WHEREAS**, Landlord and Tenant desire to modify certain terms and conditions of the Lease, effective as of the Restructuring Effective Date (as hereinafter defined), as amended by this Amendment.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1.     Capitalized Terms.  Capitalized terms used and not otherwise defined herein shall have the respective meaning assigned to such terms in the Lease.

2.     Effective Date.  This Amendment, and each of its amendments, modifications, and waivers with respect to the Lease as set forth herein, shall be effective on the date that the Lease is assumed or assigned in the Chapter 11 Cases, whether pursuant to (a) procedures approved by the Bankruptcy Court or (b) entry of an order by the Bankruptcy Court approving the assumption or assignment of the Lease, including pursuant to or in connection with a sale of Tenant's assets pursuant to Section 363 of the Bankruptcy Code, confirmation of Tenant's chapter 11 plan of reorganization in the Chapter 11 Cases, or a stand-alone motion for assumption or assignment of the Lease (in each case, the "*Restructuring Effective Date*"); *provided, however*, that Tenant shall obtain the benefit of this Amendment, and this Amendment shall be binding on Landlord, beginning on the Effective Date hereof.  In the event the Restructuring Effective Date does not occur, or the Lease is rejected in accordance with the Bankruptcy Code, this Amendment shall be null and void in all respects, and nothing in this Amendment shall give rise to any claim, causes of action, or damages (compensatory or consequential) against either Party.  Nothing contained in this Amendment is intended to be or shall be construed as or deemed an assumption or an assignment of the Lease, as amended hereby, or any contract or document related thereto under section 365 of the Bankruptcy Code. Prior to the Restructuring Effective Date, Tenant expressly reserves its right, in its

1

sole and absolute discretion, to assume, reject, or assign the Lease pursuant to section 365 of the Bankruptcy Code.

       3.    <u>Lease Modification</u>.

       (a)    <u>Term</u>. Notwithstanding anything in the Lease to the contrary, Landlord and Tenant acknowledge and agree that the current term of the Lease is set to expire as of 12/12/2025 (the "***Original Term***"). Landlord and Tenant further acknowledge and agree that the Original Term is hereby revised to expire on 12/31/2030 ("***Revised Term***"). Such Revised Term, and any existing options to renew shall be on the same terms and conditions as set forth in the Lease, except as modified or amended in this Amendment.

       (b)    <u>Rent</u>. Landlord and Tenant acknowledge and agree that, from and after the Effective Date and through the remainder of the Revised Term, Tenant shall be obligated to pay base rent in the amount of $202,215.00 per annum ("***Base Rent***"), payable on the first (1st) day of each month in equal installments of $16,851.25. In addition to Base Rent, Tenant shall remain responsible for any common area maintenance charges, taxes and insurance premiums, and all other additional rent or costs payable by Tenant pursuant to the terms of the Lease. In the event that, upon the Restructuring Effective Date, Tenant has paid rent in excess of the amount herein specified for the period specified above, then Tenant shall be entitled to offset such excess amounts against the next installment(s) of Base Rent coming due under the Lease until such time as such excess amounts have been recouped in full by Tenant.

       (c)    <u>Abatement</u>. Landlord hereby acknowledges and agrees that Base Rent with respect to the Abatement Period (as defined below) is hereby abated and forgiven (the "***Abated Rent***") in full. Landlord hereby waives any remedy under, or with respect to, the Lease or at law and/or equity arising in connection with, or otherwise related to, the Abated Rent. As used herein, "***Abatement Period***" shall mean the three month period beginning on the first day of the month following the date the Tenant emerges from its Chapter 11 Cases (the "***Initial Date***") and ending on the last calendar day of the third full calendar month inclusive of the calendar month in which the Initial Date occurs.

       (d)    <u>Right to Renew</u>. Landlord has previously granted to Tenant the right, exercisable at Tenant's option, to extend the Term. Landlord and Tenant hereby agree that after giving effect to the Revised Term, Tenant has two (2) option periods of five (5) years each remaining (Option 3 and Option 4, per the Third Amendment), which shall remain in force and effect and be exercisable by Tenant as set forth in the Lease, provided that Option 3, if exercised, shall commence January 1, 2031, and expire December 31, 2035, and Option 4, if exercised, shall commence January 1, 2036, and end December 31, 2040.

       (e)    <u>Attorneys' Fees</u>. Landlord further acknowledges and agrees that, notwithstanding anything to the contrary in the Lease, Landlord shall not be entitled to receive from Tenant or its affiliates (or charge as rent due from Tenant or its affiliates) any attorneys' fees incurred by Landlord in connection with this Amendment.

       4.    <u>No Default and Waiver of Charges</u>. Landlord acknowledges and affirms that as of the Effective Date, Tenant is not in default under any of the terms, conditions, or provisions of the Lease, and that there exist no events or circumstances which, with the passage of time or the giving of notice or both, constitutes a default under the Lease (including, without limitation, any failure of Tenant to meet its obligations to continuously operate in the Premises). Landlord further acknowledges and agrees that it has no offsets, claims, or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease. To the extent that any notices of default or non-payment have been delivered to Tenant, all such notices are hereby waived and of no further force or effect. No default interest, late fees,

Rite Aid Store No. 290

charges, surcharges, or other fees shall be due, and all such interest, late fees, charges, surcharges, or other fees are waived and shall not apply.

5.    Force Majeure.  Notwithstanding anything to the contrary contained in the Lease, it is understood and agreed by the Parties that in the event Tenant shall be prevented from operating its business in a commercially reasonable manner by a cause or causes beyond Tenant's control which shall include, without limitation, all labor disputes, civil commotion, shelter in place orders from any governmental authority, widespread disease or other public health and safety concerns (including, without limitation, COVID-19 and SARS-CoV-2), acts of war, war—like operations, invasion, rebellion, hostilities, military or usurped power, sabotage, terrorism, governmental regulations or controls, fire or other casualty, inability to obtain any material, services or financing, or through Acts of God (collectively, "*Force Majeure*"), then Tenant shall be excused from, and shall not be responsible for any failure to perform, any of its covenants and obligations under the Lease (other than payment obligations including, without limitation, the obligation to pay Base Rent, or obligations that may be cured by the payment of money (*e.g.*, maintaining insurance)) for any period that Force Majeure prevents Tenant from operating its business as described herein.  This provision does not excuse or abate Tenant's obligation to pay Base Rent or other amounts due under Section 3(b).

6.    Confidentiality.  Tenant and Landlord will keep confidential (a) the terms of this Amendment, and (b) all negotiations and communications, including each Party's representatives in connection with this Amendment (collectively, "*Confidential Information*").  Tenant and Landlord will not disclose or make available any Confidential Information to any other person or entity, except (i) accountants, brokers, attorneys, and other agents of Landlord and Tenant for the sole purpose of providing advice to Landlord and Tenant in connection with the Confidential Information and who agree to preserve the confidential nature of same, or (ii) as required by law.

7.    Authority.  Each Party represents and warrants that it has the authority and power to enter into this Amendment and that this Amendment constitutes a legal, valid and binding obligation of that Party.

8.    Notices.

(a)    Notwithstanding anything to the contrary contained in the Lease, any notices required or permitted to be sent to Tenant under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

If by Certified Mail:
RITE AID OF PENNSYLVANIA, LLC
P.O. Box 3165
Harrisburg PA 17105
Attn: Legal Department

If by Overnight Courier:
RITE AID OF PENNSYLVANIA, LLC
200 Newberry Commons
Etters PA 17319
Attn: Legal Department

(b)    Notwithstanding anything to the contrary contained in the Lease any notices required or permitted to be sent to Landlord under the Lease shall be sent by nationally recognized overnight courier or United States certified mail, return receipt requested, addressed as follows:

Rite Aid Store No. 290

| | |
|---|---|
| Name: | ROBERT YODER |
| Address: | 8175 East Evans Road, #13598 |
| | Scottsdale, AZ 85267 |
| Email: | robert@yoderlangford.com |
| Telephone: | 602-538-4716 |

9.    Miscellaneous.

(a)    Landlord and Tenant each hereby represents that it has dealt with no party or broker in connection with this Amendment [except for A&G Real Estate Partners ("*Tenant's Broker*"). Any and all fees that may be due to Tenant's Broker shall be paid by Tenant pursuant to a separate agreement]. Insofar as each Party knows, no other broker negotiated this Amendment or is entitled to any commission in connection therewith. Landlord and Tenant each agrees to indemnify, defend and hold the other harmless from and against any and all claims, loss, cost and damages (including reasonable attorney fees and court costs) suffered or incurred by the representing Party as a result of a breach of this representation.

(b)    This Amendment may be executed in counterparts, each of which shall constitute an original, and which together shall constitute one and the same agreement. This Amendment may be executed or delivered by electronic or facsimile means, and copies of executed signature pages stored electronically in portable document format (.pdf) shall be binding as originals. Neither Party shall record this Amendment without the express prior written consent of the other Party.

(c)    Subject to the other terms of this Amendment, each of Landlord and Tenant agree to execute and deliver such other instruments and perform such other acts, in addition to the matters herein specified, as may be reasonably necessary, from time to time, to effectuate the modifications, waivers and amendments contemplated by this Amendment.

(d)    This Amendment, and all covenants contained herein, shall be binding and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.

(e)    The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect.

(f)    Except as modified as set forth in this Amendment, all of the terms and provisions of the Lease remain unchanged and in full force and effect and Landlord and Tenant hereby ratify and confirm same. By way of example, Article 13 (Repair and Maintenance), Article 16 (Triple Net Lease), and Article 28 (Payment of Taxes) of the Lease are unaffected. Landlord and Tenant acknowledge and agree that the Lease, as modified by this Amendment, sets forth the entire agreement between Landlord and Tenant and there are no other agreements, understandings, undertakings, representations, or warranties among the Parties with respect to the subject matter hereof except as set forth herein. In case of any conflict between the terms and provisions of the Lease and the terms and provisions of this Amendment, the terms and provisions of this Amendment shall control.

[*signature pages follow*]

4

DocuSign Envelope ID: BE0582B8-6C91-437E-8AB5-361E03C4A6E5

Rite Aid Store No. 290

**IN WITNESS WHEREOF**, the Parties hereto have executed this Amendment effective as of the Effective Date.

**LANDLORD:**

RWY TRUST

By: _____
Name: Robert Yoder
Title: Trustee for the RWY Trust

**TENANT:**

RITE AID OF PENNSYLVANIA, LLC

By: *Lisa M. Winnick*
Name:    Lisa M. Winnick
Title:    Vice President

The undersigned, Guarantor hereby consents to the terms of this Amendment to Lease set forth above.

GUARANTOR:

RITE AID CORPORATION

By: *Lisa M. Winnick*
Name:
Title:

5