**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher J. Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweisss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

### DEBTORS' OBJECTION TO TROY SRALP, LLC'S MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES, MOTION FOR ADEQUATE PROTECTION

New Rite Aid, LLC, together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), file this objection (this "Objection") to the motion of TROY SRALP, LLC [Docket No. 3455] (the "Motion") seeking the payment of post-petition common area charges and adequate protection and in response thereto, the Debtors respectfully state as follows:

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

1. TROY SRALP, LLC ("TROY SRALP"), a non-landlord party to one of the Debtors' rejected leases, requests "payment of post petition Common Area Charges in the amount of $30,262.71 for adequate protection and as an administrative expense." *See* Memorandum of Law in Support of TROY SRALP, LLC Motion at p. 1. As set forth below, because TROY SRALP has no interest in property that requires adequate protection and because TROY SRALP has no contractual right to seek payment of the Common Area Charges from the Debtors, the Motion should respectfully be denied.

## BACKGROUND

2. On May 5, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3. Prior to the Petition Date, on or about April 24, 2017, Debtor Eckerd Corporation d/b/a Rite Aid, as tenant, entered into a lease dated as of April 24, 2017 (the "Lease") with HVP 2 LLC, as landlord, and TROY SRALP (identified in the Lease as "SC Owner"), for the premises located at 83 Vandenburgh Avenue, Troy, New York (Store No. 10687) (the "Premises").

4. On July 25, 2025, pursuant to the *Final Order (I) Authorizing and Approving Procedures to Reject, Assume, or Assume and Assign Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 776] (the "Rejection Procedures Order"), the Debtors filed the *Sixteenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1573] (the "Rejection Notice") providing notice of their intent to reject the Lease effective as of July 31, 2025 (the "Rejection Date").

5. On December 12, 2025, the Court entered its *Supplemental Sixteenth Order Approving the Rejection of Certain Executory Contracts and/or Unexpired Leases and the*

*Abandonment of Certain Personal Property, If Any* [Docket No. 3525], authorizing the rejection of the Lease as of the Rejection Date.

6. On November 26, 2025, the Court entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modification)* [Docket No. 3445] (the "Confirmation Order"), *inter alia,* confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3445, Ex. A] (the "Plan"). As of the filing of this Objection, the effective date of the Plan has not occurred.

## REPLY

### I. The Court Should Reject the Certification in Support of TROY SRALP, LLC Motion

7. The Motion is deficient in many respects, first among them that it fails to set forth a sufficient factual basis for the relief requested therein. It is purported to be supported by a document referred to a "Certification in Support of TROY SRALP, LLC Motion" signed by Shmuel Klein, TROY SRALP's attorney, but no certification signed by anyone from TROY SRLAP or by anyone with firsthand knowledge of the facts alleged therein.

8. Local Rule 9013-1 requires that any motion consist of, among other things, "one or more certifications containing any facts not already in the record that form the basis of the relief requested. The certification ***must be based on personal knowledge*** and otherwise comply with Local Bankruptcy Rule 7007-1." D.N.J. L.B.R. 9013-1(a)(2) (emphasis added). Local Rule 7007-1 requires that:

> Factual allegations presented in support of a motion ***must be contained in a sworn statement of the type referenced in 28 U.S.C. § 1746***. The statement must be limited to facts within the personal

3

        knowledge of the signatory and attested to under penalty of perjury. The statement may not be combined with any legal argument.

D.N.J. L.B.R. 7007-1 (emphasis added).

    9.    The United States Code is very specific with regard to unsworn declarations under penalty of perjury. 28 U.S.C. § 1746(2) provides as follows:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
>     .   .   .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

28 U.S.C. § 1746(2).

    10.    The "Certification" is signed by Shmuel Klein, TROY SRALP's attorney. Although Mr. Klein "certifies" that he has "actual knowledge of the . . . statements" in the Certification, he fails to identify how he has such "actual knowledge," as he does not appear to be an officer or employee of TROY SRALP to possess such knowledge.

    11.    Moreover, the "Certification" fails to comply with the requirements of 28 U.S.C. § 1746(2), in that it fails to be executed under penalty of perjury. It states only "I, Shmuel Klein

4

certify actual knowledge of the foregoing statements." [Docket No. 3455-1, pg. 1 of 2]. Mr. Klein does not execute the "Certification" under penalty of perjury.[2]

12. Courts in this district have rejected such certifications. *See, e.g.*, *United States v. Branella*, 972 F. Supp. 294, 300 (D.N.J. 1997) (finding that the certifications stating: "I hereby certify that all of the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment." did not satisfy the statutory requirements in 28 U.S.C. § 1746); *see also Tukesbrey v. Midwest Transit, Inc.*, 822 F.Supp. 1192, 1198 (W.D.Pa.1993) (non-conforming, unsworn materials to be stricken).

13. In *Branella,* the court further explained that, with respect to unsworn declarations, "[c]ritical in the statutory prerequisite is the phrase 'under penalty of perjury,' as the purpose of 28 U.S.C. § 1746 is 'to set the stage for a federal prosecution in the event of falsity.'" *Branella* at 300 (citations omitted).

14. Accordingly, given that the "Certification" is not based on personal knowledge (in violation of Local Rule 9013-1) and, even if it was, because there is a substantial departure from the requirements of section 1746 and Local Rule 7007-1, the "Certification" should be stricken from the record and the Motion denied as lacking any factual support.

### II. TROY SRALP has No Standing to Prosecute this Motion, as it is Not Entitled to Assert CAM Charges Against the Debtors Under the Terms of the Lease

15. The Lease provides, in relevant part, as follows:

> Commencing on the Rent Commencement Date, ***Tenant shall pay to Landlord*** its proportionate share of CAM (as hereinafter defined) within 30 days after Landlord informs Tenant in writing of its proportionate share of CAM. Tenant's "proportionate share" of CAM for any calendar year included in the portion of the Term of

---

[2] In contrast, the Certification of Service attached to the Motion is signed under penalty of perjury, containing the following statement: "I certify under penalty of perjury that the above documents were sent using the mode of service indicated."

> this Lease following the Rent Commencement Date shall be an amount equal to the CAM for the Shopping Center for such period multiplied by a fraction, the numerator of which is the floor area of the improvements constructed on the Premises and the denominator of which is the floor area of the improvements constructed within the Shopping Center (the "CAM Sum"). Landlord shall submit to Tenant a copy of the applicable bills and invoices for CAM along with a computation of the CAM Sum for the CAM covered by such bills and invoices. "CAM" shall mean reasonable costs and expenses incurred by Landlord (or charged to Landlord by SC Owner in accordance with the Declaration) in order to maintain and insure the paved areas of the Common Areas (as hereafter defined) of the Shopping Center and to maintain the landscaped areas of the Common Areas of the Shopping Center; provided, however, that CAM shall exclude the following: (i) costs of a capital nature, including, without limitation, capital improvements, capital repairs, capital equipment and capital tools, (ii) management or administrative fees, (iii) amounts for which Landlord is or has the right to be reimbursed by any third party, (iv) Landlord's general corporate overhead and general and administrative expenses, (v) wages, salaries and benefits for employees, and (vi) costs to correct violations of law in existence on the Delivery Date. Tenant's proportionate share of CAM will be prorated for periods at the beginning and end of the Term which are not full calendar years. Tenant will only be liable for payment of its proportionate share from and after the Rent Commencement Date.

Lease, § 5.10 (emphasis added).

16. The "Landlord" under the Lease is HVP 2 LLC—not TROY SRALP. Thus, while the Lease obligates the Debtors to pay its proportionate share of CAM "to Landlord" within 30 days of being informed of its proportionate share thereof, the Debtors have no obligation to pay CAM charges to TROY SRALP.[3]

17. Furthermore, not only is there is no provision in the Lease that obligates the Debtors to make CAM payments to TROY SRALP, but the Motion fails to set forth any factual basis or

---

[3] In fact, as set forth in the Davidson Declaration (defined below), the Debtors have not made any payment to TROY SRALP since 2018. All payments with respect to CAM since that time have been made directly to HVP 2 LLC, in accordance with the terms of the Lease.

explanation as to how TROY SRALP has standing to enforce an obligation owed to HVP 2 LLC. This alone constitutes adequate grounds for denying the Motion in its entirety.

### III. Even if TROY SRALP Had Standing to Bring this Motion, the Motion Fails as a Matter of Law

18. None of the legal grounds for relief cited to in the Motion provide a legally cognizable basis for TROY SRALP to recover CAM from the Debtors.

19. First, TROY SRALP argues that it is entitled to CAM as adequate protection under 11 U.S.C. § 361. However, section 361 section merely defines what adequate protection is for the purposes of sections 362 (governing automatic stay relief), 363 (governing sale or use of estate property), and 364 (governing requests to obtain credit). Clearly, none of these sections are relevant here. The Debtors are not using TROY SRALP's property and, therefore, there is no interest that requires adequate protection. The only "property" that the Debtors conceivably used in which TROY SRALP held an interest was the Premises, but the Debtors' rejected the Lease and surrendered the Premises as of July 31, 2025. The Motion fails to explain what relevance this section of the Bankruptcy Code has here, and tellingly, TROY SRALP does not cite to a single case in support of its novel argument that this section entitles it to recover CAM owed to another party under a lease as "adequate protection."

20. Next, TROY SRALP argues that it is entitled to be paid CAM as an administrative expense under section 503(b)(1). A party moving for administrative expense priority treatment of its claims bears a heavy burden to establish entitlement to priority treatment. *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) ("To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.") (internal citation omitted); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) ("A party seeking

payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.") (internal citation omitted); *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) ("In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed.") (citing *Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir. 1988)); *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 4-5 (1st Cir. 1992) ("The traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses.") (citing *S. Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir. 1985)).  To meet its burden, a party moving for payment of an administrative priority claim generally must demonstrate that the claim (i) arises from a post-petition transaction between such party and the debtor, and (ii) conferred a benefit upon such debtor's bankruptcy estate.  *See In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (citing *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005)).

21.     TROY SRALP has failed to meet its burden.  The Motion merely claims that the CAM charges were "actual, necessary costs and expenses of preserving the estate" and that "the CAM charges allowed the Debtor to continue its business operations."  However, the Motion is devoid of any analysis of how the CAM claim satisfies the two-prong test employed by courts to determine if a claim is entitled to administrative expense priority and does not explain how the CAM charges allowed the Debtor to continue its business operations.  The Motion simply makes the conclusory statement noted above, and TROY SRALP fails to offer any evidence on, or even

address, the requirements of the two-prong test. *See Sportsman's Warehouse*, 436 B.R. at 310 (requiring an analysis of the evidence submitted to "determine, on a case by case basis, the amount of the benefit to the estate."). *See also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) 165-66 (noting that adverse financial impact on claimant for the nonpayment of CAM is not the equivalent to a benefit to the estate). Consequently, TROY SRALP has not met its burden under section 503(b) of the Bankruptcy Code. *See In re Muma Serv. Inc.*, 279 B.R. 478, 491 (Bankr. D. Del. 2002) (denying an administrative claim when claimant provided no evidence as to how the claim benefitted the debtor's estate).

22. Finally, TROY SRALP cites to section 365(d)(3), which requires a debtor-in-possession to timely perform all obligations under an unexpired lease of nonresidential real property until the lease is rejected. However, the Lease has been rejected. Even before it was rejected, as set forth above, in performing its obligations under the Lease, the Debtors had no "obligation" to pay CAM to TROY SRALP.

23. Accordingly, the Motion should be denied in its entirety because it fails to set forth a legal basis under which TROY SRALP would be entitled to payment of CAM from the Debtors.

**IV.    The Motion Requests Amounts that are Not CAM Under the Terms of the Lease**

24. The Lease is limited in what the Debtors are required to reimburse Landlord for as "CAM." Specifically, the Lease defines CAM as follows:

> "CAM" shall mean reasonable costs and expenses incurred by Landlord (or charged to Landlord by SC Owner in accordance with the Declaration) in order to maintain and insure the paved areas of the Common Areas (as hereafter defined) of the Shopping Center and to maintain the landscaped areas of the Common Areas of the Shopping Center . . .

*See* Lease, § 5.10.

25. "CAM" specifically excludes "(ii) management or administrative fees." *Id.* at 5.10.

9

26. Yet, according to the Exhibit attached to the Motion, TROY SRALP seeks at least the Debtors' proportionate share of $20,090.00 on account of an "Admin fee." *See* Motion, Exhibit Common Area Charges Detail, 3455-5 p. 1 of 3.

27. Moreover, none of "Insurance,[4]" "Common Area Lighting" and "Water & Sewer[5]" (as identified on that Exhibit) are a cost necessary "in order maintain and insure the paved areas of the Common Areas (as hereafter defined) of the Shopping Center and to maintain the landscaped areas of the Common Areas of the Shopping Center." And, without the required "cop[ies] of the applicable bills and invoices for CAM," the Debtors are unable to verify that the amount listed for "Maintenance/Repair" is legitimately characterized as "CAM" within the meaning and obligations of the Lease.

**V.    Even if the Request for Payment Were Brought by HVP 2 LLC, Such Relief Should Be Denied Because the Obligation to Pay CAM Charges Did Not Arise Prior to the Rejection of the Lease**

28. The Bankruptcy Code provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

---

[4] The Lease requires the Debtors, as Tenant, to carry and maintain insurance. *See* Lease at § 14. The Debtors have no obligation under the Lease to reimburse TROY SRALP (or HVP 2 LLC for that matter) amounts that TROY SRALP (or HVP 2 LLC) incurred with respect to insurance.

[5] The Debtors are required under the Lease to "pay the applicable utility companies or governmental agencies directly for any and all utilities consumed on the Premises by Tenant." *See* Lease at § 5.8. The Debtors have no obligation under the Lease to reimburse TROY SRALP (or HVP 2 LLC for that matter) amounts that TROY SRALP (or HVP 2 LLC) incurred with respect to water and sewer charges. Without "cop[ies] of the applicable bills and invoices for" the water and sewer charges, it is impossible for the Debtors to determine if the "Water & Sewer" expense sought as CAM relate to "utilities consumed on the Premises by Tenant."

10

29. The United States Court of Appeals for the Third Circuit follows the "billing date" approach to determine if an obligation arises post-petition and pre-rejection with respect to claims asserted pursuant to section 365(d)(3) of the Bankruptcy Code. The Third Circuit has explained that under the billing date approach, "an obligation arises under a lease for the purposes of § 365(d)(3) **when the legally enforceable duty to perform arises under that lease**". *Centerpoint Properties v. Montgomery Ward Holding Corp. (in re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 211 (3d Cir. 2001) (emphasis added) (citing cases). In order to determine when the legal obligation arises, the Court will "look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.'" *Id.* at 209. While the Bankruptcy Code does not define "obligation", the Third Circuit held that "the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform." *Id.* Ultimately, the Court in *Montgomery Ward* found that, because the operative lease required payment of taxes "upon receipt of an invoice" such taxes that were invoiced by the landlord post-petition and pre-rejection were obligations pursuant to section 365(d)(3). *See also In re Valley Media, Inc.*, 290 B.R. 73, 76 (Bankr. D. Del. 2003).

30. Courts in the Third Circuit, following *Montgomery Ward*, look to the terms of the operative lease to determine when an obligation arises for the purposes of determining whether such obligations are due pursuant to section 365(d)(3) of the Bankruptcy Code. *See In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (finding that where the operative lease provides that taxes were to be paid by the tenant when such taxes are "due and payable" the obligation arises "prior to the date a fine, penalty or interest is imposed"); *In re WCI Communities, Inc.*, No. 08-11643 KJC, 2010 WL 3523061, at *3 (Bankr. D. Del. Sept. 2, 2010) (looking to

11

applicable statutory authority to determine when taxes are due where the operative lease provides that the debtor-tenant shall pay real property taxes when they "fall due"); *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 316 (Bankr. D. Del. 2009) (finding that where the lease provides that the debtor was required to pay taxes "as and when due and before penalty accrues for nonpayment" such obligation arose for the purposes of section 365(d)(3) on the last day the taxes could be paid without penalty).

31. Here, Section 5.10 of the Lease addresses the Debtors' obligation with respect to the payment of CAM. That Section imposes at least two requirements on Landlord before the Debtors are obligated to pay CAM to Landlord under the Lease. First, it requires Landlord to inform the Tenant in writing of its proportionate share of CAM <u>and</u> "submit to Tenant a copy of the applicable bills and invoices for CAM along with a computation of the CAM Sum for the CAM covered by such bills and invoices." Once Landlord fulfilled those obligations, the Debtors would *then* have 30 days to pay CAM to Landlord.

32. The Debtors obligation to pay CAM only arises for the purposes of section 365(d)(3) when they would have a "***legally enforceable duty to perform***." *See Montgomery Ward*, 268 F.3d 205, 211; *see also Sportsman's Warehouse*, 436 B.R. at 316 (holding that that the obligation to pay the real estate taxes did not arise until after the lease was rejected, landlord is not entitled to an administrative claim).

33. Under the plain language of the Lease, the legally enforceable duty to perform only first arises 30 days after the Landlord informs the Debtors (as Tenant) in writing of its proportionate share of CAM, assuming, of course, that Landlord has also provided the Debtors (as Tenant) "a copy of the applicable bills and invoices for CAM along with a computation of the CAM Sum for the CAM covered by such bills and invoices." *See* Lease at § 5.10.

34. However, despite the unsupported statement in the "Certification" that there was a "demand" for the payment of CAM, *see* "Certification" at ¶ 4, no such demand was ever made nor has there been compliance with the Lease to make such a "demand."

35. As set forth in the *Declaration of Matthew Davidson in Support of Debtor's Objection to Troy SRALP, LLC's Motion for Payment of Administrative Expenses, Motion for Adequate Protection* (the "Davidson Declaration"), attached hereto as Exhibit A, the Debtors have no record of any communications from TROY SRALP (or any other party for that matter, including HVP 2 LLC or Shmuel Klein) informing them of their proportionate share of CAM or providing the requisite copies of the applicable bills or invoices underlying the requested "CAM Sum" prior to the date of the Motion. Nor does the Motion include any proof that such information was timely transmitted. The first "demand" for the payment of CAM (albeit without conformity to the obligations of the Lease) was set forth in the Motion, filed over four months after the Rejection Date.

36. Accordingly, the Debtors had no "legally enforceable duty to" pay the "CAM Sum" (as defined in the Lease) before the Rejection Date. Indeed, even were the Lease not rejected, as of today, there *still* remains no "legally enforceable duty to" pay the CAM Sum. Accordingly, the Court should deny the request for payment of the CAM Sum as an administrative expense claim, whether under section 365(d)(3) of the Bankruptcy Code or otherwise. At most, any claim for the CAM Sum (or the valid portion thereof) would be a general unsecured claim under section 365(g).

**VI.    To the Extent the Court Allows any Claim, TROY SRALP is Not Entitled to Immediate Payment**

37. To the extent any portion of the claims are determined to have been an obligation that was required to be satisfied under sections 365(d)(3) or 503(b)(1), those claims need only be paid in accordance with the Plan and Confirmation Order.

13

38. Courts interpreting the requirement that obligations be paid timely have found that the remedy for failure to timely perform is to grant stay relief or immediate rejection of the lease. *See DBSI*, 407 B.R. at 164. Further, courts have reasoned that payments that were required to have been made in discharging a debtor's obligation to timely perform under section 365(d)(3) do not give rise to a superpriority claim and that any resulting claim is an administrative claim subject to treatment with other similarly situated claims. *In re Jughandle Brewing Co., LLC*, No. 23-15703 (CMG), 2024 WL 2819626, at *5 (Bankr. D.N.J. June 3, 2024) ("The allowance of an administrative claim where a trustee fails to perform under § 365(d)(3) is the presumed remedy for a majority of courts throughout the country."); *see In re KDA Grp., Inc.*, 574 B.R. 556, 561 (Bankr. W.D. Pa. 2017); *In re Slim Life Weight Loss Centers, Corp.*, 182 B.R. 701, 706 (Bankr. D.N.J. 1995); *In re Appliance Store, Inc.*, 148 B.R. 234, 244 (Bankr. W.D. Pa. 1992); *In re Orient River Invs., Inc.*, 112 B.R. 126, 134 (Bankr. E.D. Pa. 1990) (granting an administrative expense claim but denying the landlord's request that it be paid immediately); *see also In re Microvideo Learning Sys.*, 254 B.R. 90, 92–93 (S.D.N.Y. 1999), *aff'd sub nom. In re Microvideo Learning Sys., Inc.*, 227 F.3d 474 (2d Cir. 2000) (recognizing that "there is no express language in the Code that grants the landlord a superpriority" for a 365(d)(3) claim).

39. In light of the foregoing and the recent confirmation of the Plan, the Court should not require immediate payment of any asserted claims and should, instead, to the extent such claims are justified—which as set forth above, they are not—order payment as provided for in the confirmed Plan and Confirmation Order.

[*Remainder of page intentionally left blank*]

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion and grant the Debtors such other relief as is just and proper.

Dated:  December 16, 2025

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel for Debtors and Debtors in Possession*

## Exhibit A

**Davidson Declaration**

| | |
|---|---|
| **PAUL, WEISS, RIFKIND,**<br>**WHARTON & GARRISON LLP**<br>Andrew N. Rosenberg (admitted *pro hac vice*)<br>Alice Belisle Eaton (admitted *pro hac vice*)<br>Christopher Hopkins (admitted *pro hac vice*)<br>Sean A. Mitchell (admitted *pro hac vice*)<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>arosenberg@paulweiss.com<br>aeaton@paulweisss.com<br>chopkins@paulweiss.com<br>smitchell@paulweiss.com<br><br>*Co-Counsel for the Debtors and*<br>*Debtors in Possession* | **COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Seth Van Aalten, Esq. (admitted *pro hac vice*)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br>svanaalten@coleschotz.com<br><br>*Co-Counsel for the Debtors and*<br>*Debtors in Possession* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID CORPORATION, *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

### DECLARATION OF MATTHEW DAVIDSON IN SUPPORT OF DEBTORS' OBJECTION TO TROY SRALP, LLC'S MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES, MOTION FOR ADEQUATE PROTECTION

I, Matthew Davidson, hereby declare under penalty of perjury as follows:

1.  I am a Managing Director at Alvarez & Marsal North America, LLC (together with employees of its professional service provider affiliates (all of which are wholly-owned by its parent company and employees), its wholly-owned subsidiaries and independent contractors, "A&M"), a restructuring advisory services firm with numerous offices throughout the world. I submit this declaration on behalf of A&M (the "Declaration") in further support of the *Debtors'*

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

*Objection to TROY SRALP, LLC's Motion for Payment of Administrative Expenses, Motion for Adequate Protection* (the "Objection").[2]

2. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. Except as otherwise indicated, this Declaration is based upon my personal knowledge, my discussions with the Debtors' management team and advisors, those under my supervision at A&M, my review of relevant documents and information concerning the Debtors, and my opinions. If called as a witness, I would testify as follows.

3. On June 9, 2025, the Court entered its *Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, as Financial Advisor, and (B) Designate Marc Liebman as Chief Transformation Officer, in Each Case, Effective as of the Petition Date, (II) Waiving Certain Timekeeping Requirements, and (III) Granting Related Relief* [Docket No. 771].

4. Since the Petition Date, A&M has assisted the Debtors in the administration of their portfolio of unexpired real property leases, including by (a) monitoring postpetition rent and related lease obligations; (b) reconciling and tracking cure payments for assumed leases; and (c) collecting, reviewing, and maintaining billing statements, tax bills, and other similar documents provided by landlords.

5. I am familiar with the Debtors' lease portfolio. In my role as Managing Director at A&M, I and those under my supervision have personally assisted the Debtors in their performance of postpetition lease obligations by reviewing documents provided by landlords and ensuring prompt payment of taxes, utilities, CAM charges, and other such lease obligations where supported by proper documentation.

---

[2] Capitalized terms used in the Declaration but not otherwise defined herein shall have the meanings ascribed to them in the Objection.

6. Following a review of the Debtors' records pertaining to the Lease and the Premises, the Debtors have no record of having received any bills, invoices, or any other written documentation with respect to the CAM charges asserted in the Motion.

7. Moreover, following a review of the Debtors' accounts payable system, the Debtors have no record of any payments to TROY SRALP, LLC since 2018.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 16th day of December 2025

By: /s/ *Matthew Davidson*
Name: Matthew Davidson
Title: Managing Director
Alvarez & Marsal North America, LLC