**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
aeaton@paulweiss.com
chopkins@paulweiss.com
smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Co-Counsel to the Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-14861 (MBK)<br><br>(Jointly Administered) |

## NOTICE OF FILING OF THIRD AMENDED PLAN SUPPLEMENT

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AGENT.**

**PLEASE TAKE NOTICE** that on September 22, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Court")[2] entered an order [Docket No. 2535] (the "Disclosure Statement Order"): (a) authorizing New Rite Aid, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2517]; (b) conditionally approving the *First Amended Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 2518] as

---

[1]   The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025.  The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2]   Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on November 11, 2025, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 3215] (as modified, amended, or supplemented from time to time, the "Plan"), the *Second Amended Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 3216] (as modified, amended, or supplemented from time to time, the "Disclosure Statement"), and the *Notice of Filing of Plan Supplement* [Docket No. 3218] (the "Initial Plan Supplement").

**PLEASE TAKE FURTHER NOTICE** that, on November 24, 2025, the Debtors filed the *Notice of Filing of First Amended Plan Supplement* (the "First Amended Plan Supplement") [Docket No. 3305].

**PLEASE TAKE FURTHER NOTICE** that, on November 26, 2025, the Court entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3445], as supplemented by the *Supplemental Order to Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3536] (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE** that, on December 16, 2025, the Debtors filed the *Notice of Filing of Second Amended Plan Supplement* (the "Second Amended Plan Supplement") [Docket No. 3541].

**PLEASE TAKE FURTHER NOTICE** that, as contemplated by the Disclosure Statement Order and Confirmation Order, the Debtors hereby file this Third Amended Plan Supplement (the "Third Amended Plan Supplement," and, together with the Initial Plan Supplement, First Amended Plan Supplement, and Second Amended Plan Supplement, the "Plan Supplement").

**PLEASE TAKE FURTHER NOTICE** that the Second Amended Plan Supplement includes the following exhibits:

| Exhibit | Document |
|---|---|
| Exhibit A | Liquidating Trust Agreement |
| Exhibit A-1 | Changed Pages Only Redline of the Further Revised Liquidating Trust Agreement Against the Revised Liquidating Trust Agreement Filed at Docket No. 3305 |
| Exhibit B | Schedule of Assumed Executory Contracts and/or Unexpired Leases |
| Exhibit B-1 | Cumulative Assumed Executory Contracts and Unexpired Leases (Reorganized Debtors) |

| Exhibit B-2 | Cumulative Assumed Executory Contracts and Unexpired Leases (Wind-Down Debtors) |
|---|---|
| Exhibit B-3 | Cumulative Assumed Executory Contracts and Unexpired Leases (Plan Sponsor Entity) |
| Exhibit B-4 | Incremental Assumed Executory Contracts and Unexpired Leases (Wind-Down Debtors) |
| Exhibit C | Transition Support Agreement |

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in this Plan Supplement remain subject to continuing negotiations.  Subject to the terms and conditions of the Plan, the Disclosure Statement Order, the Restructuring Support Agreement, and Confirmation Order the Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan, the Disclosure Statement Order, Confirmation Order, or any other order of the Court.

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims Agent"), by:  (a) calling the Claims Agent at (888) 575-9318 (U.S./Canada, toll free) or +1 (646) 930-4577 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.ra.kroll.com/RiteAid2025; (c) writing to the Claims Agent at New Rite Aid, LLC's Election Form Processing Center c/o Kroll Restructuring Administration LLC 850 Third Avenue, Suite 412 Brooklyn, NY 11232; or (d) emailing RiteAid2025Info@ra.kroll.com.(with "In re New Rite Aid - Solicitation Inquiry" in the subject line).  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/RiteAid2025, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*       *       *

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AGENT.**

*[Remainder of Page Intentionally Left Blank]*

Dated:  December 30, 2025

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
             wusatine@coleschotz.com
             fyudkin@coleschotz.com
             svanaalten@coleschotz.com


**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Sean A. Mitchell (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:   (212) 757-3990
Email:     arosenberg@paulweiss.com
             aeaton@paulweiss.com
             chopkins@paulweiss.com
             smitchell@paulweiss.com

*Co-Counsel to the Debtors and
Debtors in Possession*

## Exhibit A

**Liquidating Trust Agreement**

**LIQUIDATING TRUST AGREEMENT**

**Dated as of [_], 2025**

*Pursuant to the Second Amended Joint Chapter 11 Plan of*
*Reorganization of New Rite Aid, LLC and Its Debtor Affiliates*

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date (defined below), is entered into pursuant to the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* (as may be further amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[1] in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") by the Trustee identified on the signature pages hereof (the "**Trustee**").

## RECITALS

**WHEREAS**, the Plan contemplates the creation of the Liquidating Trust (the "**Trust**");

**WHEREAS**, the Confirmation Order [Docket No. 3445], as supplemented by the Supplemental Order to the Confirmation Order [Docket No. 3536], was entered by the Bankruptcy Court on November 26, 2025;

**WHEREAS**, pursuant to the Plan, as of the Effective Date, the Trust is established to provide for distributions of the Liquidating Trust Assets to the Beneficiaries (as defined below) in accordance with the Plan, the Confirmation Order, and this Trust Agreement;

**WHEREAS**, the Trustee shall administer the Trust in accordance with the terms of the Plan, the Confirmation Order, and this Trust Agreement; and

**WHEREAS**, pursuant to the Plan, the Trust is intended to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations or under applicable

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, as applicable, and such definitions are also incorporated herein by reference.

Internal Revenue Service ("**IRS**") guidelines, and a "grantor trust" for United States federal income tax purposes, pursuant to Sections 671 through 679 of the Internal Revenue Code (the "**IRC**"), with the Beneficiaries treated as the grantors of the Trust, except with respect to any Disputed Ownership Fund pursuant to Section 5.3(d) hereof.

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

1.1     <u>Creation and Name.</u>   There is hereby created a trust known as the "RAD Liquidating Trust."  The Trustee of the Trust may transact the business and affairs of the Trust in the name of the Trust, and references herein to the Trust shall include for all purposes the Trustee acting on behalf of the Trust and for the benefit of (a) the Holders of DIP Claims (the "**DIP Beneficiaries**") and (b) Holders of Allowed Administrative Claims (other than Professional Fee Claims), Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and any unpaid Settled Priority Claims which become entitled to distributions after the Effective Date under the Plan (the "**Priority Beneficiaries**" and together with the DIP Beneficiaries, the "**Beneficiaries**").  It is the intention of the Trustee that the Trust qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations and that this Trust Agreement constitute the governing instrument of the Trust, except with respect to any Disputed Ownership Fund.

1.2     <u>Appointment of Trustee.</u>  The Trustee is hereby appointed as the Trustee of the Trust on the Effective Date and agrees to accept and liquidate the Liquidating Trust Assets in

2

trust on behalf of, and for the benefit of, the Beneficiaries subject to the terms of the Plan, the

Confirmation Order, and this Trust Agreement.

    **1.3**      **Purposes.**  The purposes of the Trust are to, in each case, with no objective to

continue or engage in the conduct of a trade or business, except to the extent reasonably

necessary to, and consistent with, the liquidating purposes of the Trust, in accordance with

applicable Treasury Regulations:

        (a)      receive the Liquidating Trust Assets pursuant to the terms of the Plan and

the Confirmation Order;

        (b)      with the primary purpose of liquidating and distributing (as applicable) the

assets transferred to it, hold, manage, protect, and, subject to Section 3.2 hereof, invest the

Liquidating Trust Assets, which includes any income or gain earned thereon and proceeds

derived therefrom, and monetize any non-liquid Liquidating Trust Assets, in accordance with the

terms of the Plan, the Confirmation Order and this Trust Agreement for the benefit of the

Beneficiaries;

        (c)      administer, reconcile, dispute, object to, compromise, or otherwise resolve

all Disputed Claims;

        (d)      make distributions to Beneficiaries in accordance with the Plan,

Confirmation Order, and this Trust Agreement;

        (e)      endeavor to make timely distributions and not unduly prolong the duration

of the Trust;

        (f)      administer the Wind-Down in accordance with the Plan;

3

(g)     abandon, liquidate, and reduce to Cash any non-Cash Liquidating Trust Assets;

(h)     maximize recoveries for the benefit of the Beneficiaries;

(i)     qualify at all times as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund;

(j)     engage in any lawful activity that is appropriate, and in furtherance of, the purposes of the Trust to the extent consistent with the Plan, the Confirmation Order, and this Trust Agreement; and

(k)     be deemed to be substituted as the party in lieu of the Wind-Down Debtors (or, solely with respect to Causes of Action which vest in the Wind-Down Debtors and become Liquidating Trust Assets pursuant to the Plan and Restructuring Steps Memorandum which were previously held by the Reorganized Debtors, the Reorganized Debtors) in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, if any, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Trust to file motions or substitutions of parties or counsel in each such matter; *provided* that any actions taken pursuant to the foregoing authority shall be consistent in all respects with the Plan and any order of the Bankruptcy Court prior to the Effective Date, including Article X of the Plan.

**1.4     Transfer of Assets.** Pursuant to, and in accordance with Article IV.C of the Plan, the Trust has received (or will receive, on or before the Effective Date), the Liquidating Trust Assets.  The Liquidating Trust Assets will be transferred to the Trust free and clear of any liens,

4

interests, encumbrances, or other claims by the Debtors, the Reorganized Debtors, the Wind Down Debtors, any creditor, or other entity including, but not limited to, the purchasers of any of the Debtors' assets.  No other entity shall have any interest, legal, beneficial or otherwise, in the Liquidating Trust Assets upon the assignment and transfer of such assets to the Trust except as set forth in this Trust Agreement.

**1.5**     **Acceptance of Assets and Assumption of Liabilities.**

(a)____In furtherance of the purposes of the Trust, the Trust hereby expressly accepts the transfer to the Trust of the Liquidating Trust Assets in the time and manner as, and subject to the terms, contemplated in the Plan and Confirmation Order.

(b)     In furtherance of the purposes of the Trust, except as otherwise provided herein or in the Plan or Confirmation Order, the Trust shall have and retain all rights and defenses the Debtors had with respect to any Disputed Claims immediately before the Effective Date to the extent necessary to administer such Claims in accordance with this Trust Agreement, the Plan, and the Confirmation Order.

(c)     Notwithstanding anything to the contrary herein, no provision herein shall be construed or implemented in a manner that would cause the Trust to fail or cease to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

(d)     In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

5

1.6     **Jurisdiction.**  The Bankruptcy Court shall have continuing jurisdiction over the Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Trust.

## ARTICLE II

## POWERS, TRUST ADMINISTRATION, AND REPORTING

2.1     **Powers.**

(a)____The Trustee shall, at all times, administer the Trust in accordance with the purposes set forth in Section 1.3 above, the Plan, and the Confirmation Order. Subject to the limitations set forth in this Trust Agreement, the Plan, and the Confirmation Order, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law, or as otherwise specified herein, or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court, including the Bankruptcy Court, in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited by the terms of this Trust Agreement, the Plan, or the Confirmation Order, the Trustee shall have the power to:

(i)      receive, hold, preserve, and liquidate the Liquidating Trust Assets and exercise all rights with respect thereto, as long as such management is consistent with

6

the Trust's status as a "liquidating trust" taxable as a grantor trust for United States federal income tax purposes and which actions are merely incidental to its liquidation and dissolution with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust;

(ii)    invest the monies held from time to time by the Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iii)    act on behalf of the Trust, including having the right to take all actions and execute all agreements, instruments and other documents, and exercise all rights and privileges previously held by the Debtors necessary or convenient to implement the provisions of the Plan, the Confirmation Order, and this Trust Agreement;

(iv)    administer, oversee, and take all actions necessary to effect the Wind-Down, subject to the terms of the Plan;

(v)    with respect to any Liquidating Trust Assets, exercise in a manner not inconsistent with the Plan, the Confirmation Order, and this Trust Agreement, all power and authority that may be, or could have been, exercised in compliance with Revenue Procedure 94-45, commence or continue all proceedings (including any Retained Causes of Action transferred to the Trust) that may be or could have been, commenced or continued and take all actions that may be or could have been taken by any member, officer, director or shareholder of each Debtor with respect to such Liquidating Trust Assets with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders including, without limitation, the dissolution of any Wind-Down Debtor in accordance with the terms of the Plan (but excluding, for the avoidance of doubt, any Cause of Action that (A) is

7

released, waived, barred or enjoined pursuant to Article X of the Plan, or (B) is retained by or

transferred to the Reorganized Debtors in accordance with the Schedule of Retained Causes of

Action);

(vi)    manage, monitor, and enforce all of the Wind Down Debtors'

and the Estates' rights, and interests with respect to any Liquidating Trust Assets under the Plan,

the Confirmation Order, and this Trust Agreement, and other agreements of the Debtors, and any

other orders of the Bankruptcy Court;

(vii)    establish, maintain, and adjust such operating, reserve, and trust

account(s) as are necessary and appropriate to carry out the terms of this Trust Agreement, the

Plan, and the Confirmation Order, and to authorize and make disbursements of or from the

Liquidating Trust Assets, in accordance with the Plan and this Trust Agreement;

(viii)    authorize and make, through the Disbursing Agent, to the extent

one is retained, distributions to the Beneficiaries provided for or contemplated under the Plan or

this Trust Agreement;

(ix)    authorize and cause to be made distributions from the

Professional Compensation Escrow Account to Holders of Professional Fee Claims in

accordance with the terms of the Plan and the Confirmation Order and, solely to the extent

provided for under the Plan, distributions from the Administrative / Priority Claim Reserve,

Wind-Down Reserve, or Distributable Assets in satisfaction of the same;

(x)    make decisions, without further Bankruptcy Court approval but

subject in all respects to the terms of the Plan and Confirmation Order, regarding the retention or

8

engagement of professionals, employees and consultants by the Trust and the Trustee, to be

compensated in accordance with Article VII.A of the Plan;

(xi)     reconcile, object to, compromise, and settle any Disputed

Claims, and sue and participate, as a party or otherwise, in any judicial administrative,

arbitrative, or other proceeding as required to reconcile, administer, or defend against the

Disputed Claims, *provided* that, pursuant to Article IX.A of the Plan, the Liquidating Trustee

may settle and compromise any Disputed Claim without supervision or approval of the

Bankruptcy Court free of any restriction of the Bankruptcy Code, Bankruptcy Rules, and the

guidelines and requirements of the U.S. Trustee, other than those restrictions imposed by the

Plan, the Confirmation Order, or this Trust Agreement;

(xii)     prepare, or have prepared, and file, if necessary, with the

appropriate taxing authority any and all tax and information returns required with respect to the

Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or otherwise, make

tax elections by and on behalf of the Trust, pay taxes, if any, payable by the Trust, cause all taxes

payable by the Trust, if any, to be paid exclusively out of the Trust's assets, and represent the

interest and account of the Trust before any taxing authority in all matters including, without

limitation, any dispute, action, suit, proceeding, or audit;

(xiii)     in the event that the Trust shall fail to qualify as a "liquidating

trust" taxable as a grantor trust for United States federal income tax purposes, take any and all

necessary actions as it shall deem appropriate to have such assets treated as held by another

"liquidating trust" taxable as a grantor trust for United States federal income tax purposes, and, if

9

no such "liquidating trust" taxable as a grantor trust treatment is available, as another grantor trust for United States federal income tax purposes;

(xiv)    take all other actions not inconsistent with the provisions of the Plan, the Confirmation Order, and this Trust Agreement that the Trustee deems reasonably necessary or desirable with respect to administering the Plan and Trust;

(xv)    implement and/or enforce all provisions of the Plan and Confirmation Order, including entering into any agreement or executing any document required by, or consistent with, the Plan, the Confirmation Order, or this Trust Agreement;

(xvi)    abandon in the reasonable business judgment of the Trustee (and with the consent of the Required DIP Co-Collateral Agents) and in any commercially reasonable manner, including through donation to a charitable organization of its choice, any Liquidating Trust Asset; *provided*, *however*, that such charitable organization shall not have any connection to the Trustee or to the Debtors;

(xvii)    prosecute, dismiss, and/or settle any Retained Causes of Action assigned to the Trust, with or without approval of the Bankruptcy Court, and exercise, participate in, or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding, and pursue to settlement or judgment of such Retained Causes of Action;

(xviii)    purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable;

(xix)    collect and liquidate and/or distribute all Liquidating Trust Assets pursuant to the Plan, the Confirmation Order and this Trust Agreement;

10

(xx)     hold any legal title to any and all of the Liquidating Trust

Assets;

(xxi)     if any of the Liquidating Trust Assets are situated in any state or

other jurisdiction in which the Trustee is not qualified to act as trustee:  (A) nominate and

appoint a Person duly qualified to act as trustee in each such state or jurisdiction and require

from each such trustee such security as may be designated by the Trustee in his or her sole

discretion; (B) confer upon such trustee all the rights, powers, privileges and duties of the

Trustee hereunder, subject to the conditions and limitations of this Trust Agreement, the Plan,

and the Confirmation Order, except as modified or limited by the Trustee and except where the

conditions and limitations may be modified by the laws of such state or other jurisdiction (in

which case, the laws or the state or jurisdiction in which the trustee is acting shall prevail to the

extent necessary); (C) require such trustee to be answerable to the Trustee for all monies, assets

and other property that may be received in connection with the administration of such property;

and (D) remove such trustee, with or without cause, and appoint a successor trustee at any time

by the execution by the Trustee of a written instrument declaring such trustee removed from

office, and specifying the effective date and time of removal;

(xxii)    obtain and receive the proceeds or benefits of any and all

Insurance Policies of the Debtors providing coverage with respect to Retained Causes of Action

assigned or transferred to the Trust;

(xxiii)   undertake all administrative functions of the Chapter 11 Cases,

including the payment of Statutory Fees and ultimate closing of the Chapter 11 Cases in

accordance with the Plan and Confirmation Order;

11

(xxiv)    exercise such other powers as may be vested in or assumed by the Trustee pursuant to the Plan, this Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan and the Confirmation Order;

(xxv)    enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement, the Plan, or the Confirmation Order; and

(xxvi)    in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, representatives, and any other parties.  No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below.

(d)    The Trust shall not have the power to guarantee any debt of other persons.

12

**2.2**     **General Administration.**

(a)\_\_\_\_The Trustee shall act in accordance with the Plan, the Confirmation Order, and this Trust Agreement.  In the event of any inconsistency between the Plan (without reference to this Trust Agreement) and this Trust Agreement, the terms of this Trust Agreement shall control (unless stated otherwise in this Trust Agreement or in the Confirmation Order).  In the event of any inconsistency between this Trust Agreement and the Confirmation Order, the Confirmation Order shall control.

(b)     The Trustee shall (i) timely file such tax returns and pay any taxes imposed on the Trust in accordance with Section 5.3 hereof, (ii) comply with all applicable reporting and withholding obligations in accordance with Section 5.4 hereof, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Trust as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund, and (iv) take no action that could cause the Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

(c)     Other than the obligations of the Trustee specifically set forth in this Trust Agreement, the Plan, or the Confirmation Order, the Trustee shall have no obligations of any kind or nature with respect to his position as such.

**2.3**     **Reporting.**

(a)     The Trustee shall timely prepare, file and distribute such statements, reports and submissions to the extent required by applicable law.

13

(b)     The Trustee shall file with the Bankruptcy Court, and provide to the Beneficiaries, quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Liquidating Trust on behalf of the Debtors during the applicable period, attested to by the Trustee, an authorized representative of the Trustee, or the Reorganized Debtor, as applicable;

(c)     The Trustee shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee with respect to each Debtor's Chapter 11 Case until such Chapter 11 Case has been closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

(d)     Pursuant to Section 5.3(a) hereof, within a reasonable time following the end of the taxable year, the Trust shall send to each Beneficiary a separate statement setting forth such Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on his/her applicable income tax return.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1     **Accounts.**

(a)____The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)     Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in, or relationship with, the Reorganized Debtors or their Affiliates, if applicable.  Any such interest or relationship shall not be an automatic disqualification for the

14

position, but the Trustee shall take any such interest or relationship into account in selecting a

Financial Institution.

(c)     The Trustee may replace any retained Financial Institution with a

successor Financial Institution at any time, and such successor shall be subject to Section 3.1(b)

above.

(d)     The Trustee may, from time to time (but at all times subject to the terms of

the Plan and Confirmation Order), create such accounts and reasonable reserves within the Trust

Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or

useful in order to provide for distributions to the Beneficiaries and may, with respect to any such

account or reserve, restrict the use of money therein for a specified purpose (the "**Trust

Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as

Liquidating Trust Assets, and except as specifically designated as such in accordance with the

provisions of Section 5.3(d) below, are not intended to be subject to separate entity tax treatment

as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or

applicable Treasury Regulations.

### 3.2     Investment Guidelines.

(a)_____The Trustee may invest the Liquidating Trust Assets, provided, however,

that the scope of any investment shall be limited to include only those investments permitted to

be made by a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury

Regulations or under applicable IRS guidelines, whether set forth in IRS rulings, revenue

procedures (including Section 3.09 of Revenue Procedure 94-45), other IRS pronouncements, or

otherwise.

15

(b)      In the event the Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Plan, the Confirmation Order, and this Trust Agreement.  This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Liquidating Trust Assets.

(c)      Cash proceeds received by the Trust in connection with its monetization of the non-liquid Liquidating Trust Assets shall be invested in accordance with this Section 3.2 until needed for the purposes of the Trust as set forth in Section 1.3 above.

**3.3      Payment of Operating Expenses.**  All operating expenses of the Trust, including the fees and expenses of the Trustee and other professionals retained on behalf of the Trust, shall be paid from the Wind-Down Reserve in accordance with the Wind-Down Budget, the Plan, the Confirmation Order, and this Trust Agreement, which may be replenished from time to time with the consent of the Required DIP Co-Collateral Agents in accordance with Article VIII.C of the Plan.  None of the Trustee, the Beneficiaries, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Trust.  Except as expressly set forth in the Plan, none of the Debtors or the Wind-Down Debtors, as applicable, nor any of their officers, agents, advisors, professionals or employees shall be liable for the payment of any operating expense or other liability of the Trust or the Trustee.  Under no circumstance shall the Reorganized Debtors nor any of their officers, agents, advisors, professionals or employees be liable for the payment of any operating expense or other liability of the Trust or the Trustee.  To the extent any Cash is

16

remaining in the Wind-Down Reserve as of the Dissolution Date, such amounts shall constitute

Distributable Assets in accordance with Article VIII.C of the Plan.

**3.4**     **Distributions to Beneficiaries.**

(a)____The Trustee shall make or cause to be made distributions to DIP Beneficiaries from the Distributable Assets and Priority Beneficiaries from the Administrative / Priority Claims Reserve in accordance with, subject to, and at the time or times set forth in, this Trust Agreement, the Plan and the Confirmation Order, but not less frequently than quarterly (commencing with the Wind-Down Debtors' quarter ending February 2026) or as otherwise consented to by the Required Co-Collateral Agents, starting on the Effective Date, unless the Trustee determines, in its reasonable discretion, and with the consent of the Required Co-Collateral Agents, that making such a distribution is impracticable in light of the anticipated Cash needs of the Trust going forward, or that, in light of the Cash available for distribution, making a distribution would not warrant the incurrence of costs in making the distribution or funds are otherwise not available to distribute; *provided*, *however*, that the Trust's discretion may not be exercised in a manner inconsistent with the express requirements of the Plan.  With respect to distributions for which the Trustee is the Disbursing Agent in accordance with Article VIII.E of the Plan, the Trustee shall make distributions on such times as provided for under Article VIII.E of the Plan.  In any such case, the Trustee (or its successor or appointee acting as Disbursing Agent, as applicable), shall be entitled and subject to the rights and obligations of the Disbursing Agent set forth in Article VI of the Plan, and shall make such distributions in accordance with such terms.  The Trustee shall not, when acting as the Disbursing Agent, be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

(b)___The Trust may withhold or deduct from amounts distributable to any Person or Entity any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement (including, without limitation, tax withholding in accordance with Section 5.4 below).

(c)___Cash payments to foreign Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(d)___On the Dissolution Date and with the consent of the Required Co-Collateral Agents, the Trustee shall have the authority to direct the remaining Liquidating Trust Assets, if any, to a tax-exempt organization as selected by the Trustee in his or her discretion.

(e)___In connection with each quarterly distribution to the DIP Beneficiaries by the Trustee, such distributions will include all of the Cash held by the Trustee that exceeds 110% of the Cash funding the Wind-Down Reserve, Administrative / Priority Claims Reserve, and any other approved disbursements in the Wind-Down Budget, subject to the requirements of footnote 2 of the Wind-Down Budget filed at Docket No. 3305 on November 24, 2025. Following the Effective Date, the Wind-Down Budget shall be determined and approved by the Required Co-Collateral Agents for each subsequent fiscal quarter and subject to the consent rights applicable to the Wind-Down Budget under the Plan, commencing with the Wind-Down Debtors' quarter ending February 2026, and the Trustee shall obtain such approval by no later than 10 days prior to the start of each subsequent fiscal quarter; provided, that if the Trustee and Required DIP Co-Collateral Agents (and any other parties whose consent is required under

19

the Plan) cannot in good faith reach agreement on the Wind-Down Budget for a subsequent fiscal quarter, the existing Wind-Down Budget shall remain in effect until such approval occurs or the time period covered by such budget expires. For the avoidance of doubt, the Wind-Down Budget (including as it may be revised, amended, or modified following the Effective Date) shall be subject to the approval of, and satisfactory to, the Required Co-Collateral Agents and subject to the consent rights applicable to the Wind-Down Budget under the Plan.

## ARTICLE IV

### TRUSTEE

**4.1**  **Number.**  There shall be one (1) Trustee who shall be the person or entity named on the signature pages hereof.

**4.2**  **Terms of Service.**

(a)____The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)  The Trustee may resign at any time upon written notice with such notice being filed with the Bankruptcy Court.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)  The Trustee may be removed by the Bankruptcy Court in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical

20

deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard prior to such removal.  Other good cause shall mean (i) fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony, in each case whether or not connected to the Trust, or (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.

(d)    In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, a new Trustee shall be selected by the Required DIP Co-Collateral Agents, with notice of such selection to be filed with the Bankruptcy Court.

(e)    Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further action. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)    Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

### 4.3    Compensation and Expenses of the Trustee.

21

(a)____The Trustee and his or her agents shall be entitled to receive reasonable compensation for services rendered on behalf of the Trust, subject to the Wind-Down Budget and in accordance with the compensation terms set forth on Exhibit A hereto, which shall be subject to periodic review and modification by the DIP Agent in consultation with the Trustee.

(b)      Any professionals retained by the Trustee in accordance with the Plan, the Confirmation Order, and this Trust Agreement shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, with the terms of such compensation to be determined by the Liquidating Trustee and such professionals, subject to the Wind-Down Budget.  The payment of fees and expenses of the Trustee and its professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to Bankruptcy Court approval.

### 4.4      Standard of Care; Exculpation.

(a)____As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, and (ii) the officers, employees, consultants, advisors, attorneys, and agents of each of the Trust and the Trustee.

(b)      To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Trust, except those acts found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any

22

other liabilities, losses, damages, claims, costs and expenses arising out of, or due to, the

implementation or administration of the Plan, the Confirmation Order, or this Trust Agreement

(other than taxes in the nature of income taxes imposed on compensation paid to such persons),

in each case except for any actions or inactions found by Final Order to be arising out of their

wilful misconduct, bad faith, gross negligence or fraud.

(c)     To the extent that, at law or in equity, the Trust Indemnified Parties have

duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it

is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to

the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly

set forth in this Trust Agreement with respect to the Trust Indemnified Parties; *provided,*

*however*, that with respect to the Trust Indemnified Parties the duties of care and loyalty are not

eliminated but are limited and subject to the terms of this Trust Agreement, including but not

limited to this Section 4.4 and its subparts.

(d)     The Trust will maintain appropriate insurance coverage for the protection

of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

### 4.5     **Protective Provisions.**

(a)____Every provision of this Trust Agreement relating to the conduct or

affecting the liability of, or affording protection to, Trust Indemnified Parties shall be subject to

the provisions of this Section 4.5.

(b)     In the event the Trustee retains counsel (including at the expense of the

Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all

communications with such counsel, and in no event shall the Trustee be deemed to have waived

any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  Any successor Trustee shall succeed to, and hold the same respective rights and benefits of, the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)     No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own willful misconduct, bad faith, gross negligence or fraud as determined by a Final Order.

(d)     No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds, or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)     In the exercise or administration of the Trust, the Trust Indemnified Parties (i) may act directly or through their respective agents, advisors, or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

**4.6     Indemnification.**

24

(a)_____To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs, but excluding taxes in the nature of income taxes imposed on compensation paid to such persons) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of, or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud.  Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Distributable Assets.

(b)      Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust from the Distributable Assets in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.  The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

25

(c)     The Trustee is authorized, but not required, to purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, in his or her sole discretion, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

**4.7**     **Trustee Independence.**  The Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as an officer or as any other professional for the Reorganized Debtors or any of the purchasers of the Debtors' assets. The Trustee shall also not act as an attorney, agent, or other professional for any Beneficiary.

**4.8**      **No Bond.**  The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court or the Trustee decides, in his or her sole discretion, that such bond is in the best interests of the Trust.

**4.9**      **Burden of Proof.**  In any proceeding brought by any of the Debtors, or any other person who is bound by this Trust Agreement challenging any action, determination or failure to act of the Trustee in discharge of his or her duties under this Trust Agreement on the basis that such action, determination or failure constitutes bad faith, gross negligence, willful misconduct or fraud, the person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted bad faith, gross negligence, willful misconduct, or fraud. Notwithstanding anything to the contrary in this Trust Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the Trustee in the discharge of his or her duties under this Trust Agreement is, to the extent consistent with this Trust Agreement, hereby deemed to not constitute a breach of this Trust Agreement or any duty hereunder or existing at law, in equity or otherwise.

**4.10**     **Reliance by the Trustee.**  The Trustee may absolutely rely, and shall be fully protected in acting or refraining from acting if he or she relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he or she has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile or e-mail transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy his or herself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of bad faith, gross

negligence, willful misconduct, or fraud in respect of the Trustee's duties as found by a Final

Order, or material breach of this Trust Agreement, the Trustee may rely as to the truth of

statements and correctness of the facts and opinions expressed therein and shall be fully

protected personally in acting (or, if applicable, not acting) thereon. The Trustee shall have the

right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this

Trust Agreement, the Plan, the Confirmation Order, or any other document executed in

connection therewith, and the Trustee shall be entitled to rely upon such instructions in acting or

failing to act and shall not be liable for any act taken or not taken in reliance thereon.

**4.11**   **Books and Records**.  The Trustee shall be free, pursuant to the terms of the

Data Retention Plan, to destroy, cause to be destroyed, or otherwise dispose of any books and

records or copies thereof in its possession that the Trustee deems not necessary for the continued

administration of the Plan, without further order from the Bankruptcy Court.

**4.12**   **Privilege.**

(a)      Subject to the terms of the Plan (and pursuant to Article IV.C.4 of the Plan) and

the Confirmation Order, all of the Debtors' privileges (the "**Privileges**"), including, but not

limited to, corporate privileges, confidential information, work product protections,

attorney-client privileges, and other immunities or protections (the "**Transferred Privileges**")

shall be transferred, assigned and delivered to the Liquidating Trust, without waiver, limitation

or release, and shall vest with the Trust on the Effective Date and be jointly held by the

Reorganized Debtors and the Trust on and after the Effective Date; *provided*, *however*, that

notwithstanding the foregoing, Transferred Privileges do not include Privileges relating in any

way to any rights, claims, or Causes of Action released under the Plan.   The Trust and

28

Reorganized Debtors shall each hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges.  No Privilege shall be waived by disclosures to the Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Reorganized Debtors and the Trust.

(b)       Notwithstanding anything herein to the contrary, the Trust, Wind-Down Debtors, and the Reorganized Debtors shall each hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges.  No Privilege shall be waived by disclosures to the Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Debtors and the Trust.

## ARTICLE V

## TAX MATTERS

**5.1    Treatment of Trust Assets Transfer.**   For all United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes), all Parties shall treat any transfer of the Liquidating Trust Assets to the Trust as (a) a transfer of the Liquidating Trust Assets (subject to any obligations related to those assets) directly to the Beneficiaries  (based on the relative fair market value of each Beneficiary's respective Claims), followed by (b) the transfer by such Beneficiaries of such Liquidating Trust Assets to the Trust in exchange for their respective beneficial interests in the Trust (other than the Liquidating Trust Assets allocable to Disputed Claims and held as a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury Regulations ("**Disputed Ownership Fund**")).   Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors within the meaning of Section 677 of the IRC and deemed owners of their respective shares of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed Ownership Fund).

**5.2    Income Tax Status.**

30

(a)_____For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable) and other than as provided pursuant to Section 5.3(d) hereof, this Trust shall be treated as a liquidating trust pursuant to Section 301.7701-4(d) of the Treasury Regulations and as a grantor trust pursuant to Sections 671 through 679 of the IRC. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Trust Agreement, this Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status.

(b)_____The Trust shall at all times to be administered so as to constitute a domestic trust for United States federal income tax purposes.

**5.3**    **Tax Returns.**

(a)_____The "taxable year" of the Trust shall be the "calendar year" as such terms are defined in Section 441 of the IRC, unless the Trustee determines in good faith to use a different tax year in the interests of all Beneficiaries to the extent permitted under the IRC and the Treasury Regulations thereunder.  In accordance with Section 6012 of the IRC and Section 1.671-4(a) of the Treasury Regulations, the Trustee shall file with the IRS annual tax returns for the Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the Trustee shall file in a timely manner for the Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Trust shall send to each Beneficiary a separate statement setting forth such Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on his/her applicable income tax return.

(b)     To the extent applicable, allocations of the Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items in respect of any assets allocable to, or retained on account of, the Disputed Ownership Fund) among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Trust Agreement) if, immediately prior to such deemed distribution, the Trust had distributed all its other assets (valued at their tax book value), to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Trust.  Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would

32

be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets).  The tax book value of the Liquidating Trust Assets for purposes of this Section 5.3(b) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.  Notwithstanding the foregoing, to the extent applicable, the Trustee shall be permitted to allocate taxable income in such other equitable manner as it may determine in good faith taking into account the interests of the Beneficiaries as a whole (and their relative interests).

(c)     The Trust shall be responsible for payment, from the Wind-Down Reserve, of any taxes imposed on the Trust (including any taxes imposed on the Disputed Ownership Fund) or the Liquidating Trust Assets.  In accordance therewith, any taxes imposed on the Trust or its assets shall be paid from the Wind-Down Reserve.

(d)     The Trustee may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a Disputed Ownership Fund pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, and to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If such a Disputed Ownership Fund election is made, all parties (including the Trustee and the Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistent with the foregoing.  The Trust shall file all income tax returns with respect to any income attributable to the Disputed Ownership Fund and shall pay from the Wind-Down Reserve, all U.S. federal, state and local income taxes attributable to such Disputed Ownership Fund based on the items of income, deduction, credit, or loss allocable thereto.

33

**5.4**     **<u>Withholding of Taxes and Reporting Related to Trust Operations</u>.**   The
Trust shall comply with all withholding, deduction and reporting requirements imposed by any
federal, state, local or foreign taxing authority, and all distributions made by the Trust shall be
subject to any applicable withholding, deduction and reporting requirements. The Trustee shall
be authorized to take any and all actions that may be necessary or appropriate to comply with any
such withholding, deduction, payment, and reporting requirements. Notwithstanding the above,
each Beneficiary that is to receive a distribution under the Plan shall have the sole and exclusive
responsibility for the satisfaction and payment of any taxes imposed on such Beneficiary by any
taxing authority, including income, withholding, and other tax obligations, on account of any
such distribution.  All amounts properly withheld or deducted from distributions to a Beneficiary
as required by applicable law and paid over to the applicable taxing authority for the account of
such Beneficiary shall be treated as if distributed to such Beneficiary. To the extent that the
operation of the Trust or the liquidation of the Liquidating Trust Assets creates a tax liability
imposed on the Trust, the Trust shall timely pay such tax liability and any such payment shall be
considered a cost and expense of the operation of the Trust payable without Bankruptcy Court
order. Any federal, state, local or foreign withholding taxes or other amounts required to be
withheld under applicable law shall be deducted from distributions hereunder. All Beneficiaries
shall be required to provide any information necessary to effect the withholding and reporting of
such taxes. The Trustee may require each Beneficiary to furnish to the Trust (or its designee) its
social security number, or employer or taxpayer identification number as assigned by the IRS,
and complete any related documentation (including but not limited to a Form W-8BEN, Form
W-8BEN-E, or Form W-9, as applicable) (the "**Tax Documents**"). The Trustee may condition

34

any and all distributions to any Beneficiary upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan and Confirmation Order. The Trustee may refuse to make a distribution to any Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a Beneficiary within one hundred and eighty (180) days of the Trustee's request, the Trustee shall make such distribution to which such Beneficiary is entitled, without interest; and, *provided*, *further*, that, if the Trustee fails to withhold in any respect of amounts received or distributable with respect to any Beneficiary and the Trustee is later held liable for the amount of such withholding, such Beneficiary shall reimburse the Trustee for such liability. If a Beneficiary fails to complete and return to the Trustee (or Disbursing Agent, as applicable) the appropriate Tax Documents within one hundred one hundred and eighty (180) days of any such request by the Trustee (or Disbursing Agent, as applicable), then such Holder shall have its Claim forfeited and shall be forever barred, estopped, and enjoined from asserting any such Claim against the Estates. In such cases, any Cash held for payment on account of such Claims shall be treated as Liquidating Trust Assets, free of any Claims of such Holder with respect thereto.

   **5.5**      **Valuation.**  As soon as possible after the Effective Date, the Trustee shall make a good faith valuation of the Liquidating Trust Assets, which shall be subject to the DIP Agent's approval (not to be unreasonably withheld or delayed).  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties for all United States federal and applicable state and local income tax purposes. The Trustee shall also file (or cause

to be filed) any other statements, returns or disclosures relating to the Trust that are required by any governmental unit for taxing purposes.

  **5.6**   **Expedited Determination of Taxes.** The Trustee may request an expedited determination of taxes of the Trust, under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the termination of the Trust.

**ARTICLE VI**

**GENERAL PROVISIONS**

   **6.1**  **Irrevocability.** To the fullest extent permitted by applicable law, the Trust is irrevocable.

   **6.2**  **Term; Termination.**

   (a)_____The term for which the Trust exists shall commence on the Effective Date and shall terminate pursuant to the provisions of this Section 6.2.

   (b)  The Trustee shall make continuing efforts to monetize any non-liquid Liquidating Trust Assets.

   (c)  The Trustee and the Trust shall be discharged or dissolved, as the case may be, with the consent of the Required DIP Co-Collateral Agents and at such time on or after the Dissolution Date that is reasonable based on all the facts and circumstances, including that: (i) the Trustee determines that the pursuit of additional Retained Causes of Actions which are Liquidating Trust Assets is not likely to yield sufficient additional Cash to justify further pursuit of such Causes of Action, or (ii) all distributions of Cash and other Liquidating Trust Assets required to be made by the Trustee under the Plan, the Confirmation Order, and this Trust Agreement have been made in accordance with provisions of the Plan, the Confirmation Order,

36

and this Trust Agreement, *provided, however*, that in no event shall the Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made prior to the fifth (5th) anniversary without the need for a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Trust as a "liquidating trust" for United States federal income tax purposes, determines that a fixed period extension, not to exceed five (5) years, is necessary to facilitate or complete the recovery on and liquidation of the Trust Assets. Any extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term.

(d)      The Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases, *provided* that, matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed. Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Trustee shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c) as set forth in Article IV.I of the Plan.

**6.3      Amendments.**  Any amendment to, or modification of, this Trust Agreement may be made in writing and only pursuant to an order of the Bankruptcy Court; *provided, however*, the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (a) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (b) modifications to satisfy any requirements, conditions

or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity.  Notwithstanding the foregoing, no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, neither this Trust Agreement, nor any Exhibit to this Trust Agreement, shall be modified or amended in any way that could jeopardize, impair, or modify the Trust's "liquidating trust" status.

      **6.4**      <u>**Severability.**</u>  Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

      **6.5**      <u>**Notices.**</u>

      (a)_____Notices to Beneficiaries shall be given in accordance with such address for each such Holder as indicated on the Debtors' records as of the date of any such distribution.

      (b)      Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

      To the Trust:

        [Trustee]

      With a copy (which shall not constitute notice) to Counsel to the Trustee:

        [Trustee Counsel]

To the Reorganized Debtors:

> McKesson Corporation
> Law Department
> 6555 North State Highway 161
> Irving, Texas 75039
> Attn: Chief Counsel, Strategic Accounts
> Email Address: intakelitigation@mckesson.com

With a copy (which shall not constitute notice) to:

> Sidley Austin LLP
> One South Dearborn Street
> Chicago, Illinois 60603
> Attn: Dennis M. Twomey; Jackson T. Garvey; Ian C. Ferrell
> Email Addresses: dtwomey@sidley.com; jgarvey@sidley.com;
> iferrell@sidley.com

(c)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

**6.6**     **Successors and Assigns.**   The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, and their respective successors and assigns, except that neither the Trust, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in accordance with Section 4.2(d) above.

**6.7**     **Limitation on Trust Interests for Securities Law Purposes.**   The Beneficiaries' interests in the Trust (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) shall not be evidenced

by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

**6.8**     **Exemption from Registration.**  The Parties hereto intend that the interests of the Beneficiaries under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of such interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations or that the issuance of such interests shall be exempt from the registration under the Securities Act pursuant to Section 4(a)(2) of the Securities Act, regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

**6.9**     **Entire Agreement; No Waiver.**  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plan and the Confirmation Order), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or

40

privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**6.10**     **Headings**.   The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**6.11**     **Governing Law.**  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; *provided, however*, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Trust, the Trustee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to, or regulate in, a manner inconsistent with the terms hereof:  (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of Liquidating Trust Assets; (g) the existence of rights or interests (beneficial or otherwise) in

41

Liquidating Trust Assets; (h) the ability of beneficial owners or other persons to terminate or dissolve the Trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee set forth or referenced in this Trust Agreement.

**6.12**     **Effectiveness.**   This Trust Agreement shall become effective on the Effective Date.

IN WITNESS WHEREOF, the Trustee has executed this Trust Agreement this [_] day of [December,] 2025.

**TRUSTEE**

_____

42

**Exhibit A**

Liquidating Trustee Identity / Compensation

Identity:  Eric Kaup

Compensation:

- Wind-Down Consultant Fee: For each calendar day the Liquidating Trustee provides assistance or review in connection with the Debtors' wind-down planning prior to the Effective Date, he will earn a per diem fee of $2,500.00, payable in arrears on the Effective Date.

- Monthly Fee: $75,000.00 for the first six months following the Effective Date, $50,000.00 for the following six months, and thereafter, the lesser of (i) actual hourly charges and (ii) $50,000 per month.

- Incentive Fee: With respect to certain eligible proceeds: the Incentive Fee shall equal the sum of (i) 0.75% of the first $10.0 million in eligible proceeds, plus (ii) 1.75% of eligible proceeds in excess of $10.0 million but less than $25.0 million, plus (iii) 2.75% eligible proceeds in excess of $25.0 million but less than $75.0 million, plus (iv) 3.75% eligible proceeds in excess of $75.0 million.  If the Incentive Fee exceeds $2 million, 50% of aggregate monthly fees shall be credited against the Incentive Fee.

- Expenses:  Reimbursement of reasonable and documented expenses.

The foregoing terms are subject in all respects to the terms reflected in the final form of engagement letter as agreed between the Debtors, Liquidating Trustee, and DIP Agent.

## **Exhibit A-1**

**Changed Pages Only Redline of the Further Revised Liquidating Trust Agreement Against the Revised Liquidating Trust Agreement Filed at Docket No. 3305**

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date (defined below), is entered into pursuant to the *First Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* (as may be further amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[1] in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") by the Trustee identified on the signature pages hereof (the "**Trustee**").

## RECITALS

**WHEREAS**, the Plan contemplates the creation of the Liquidating Trust (the "**Trust**");

**WHEREAS**, the Confirmation Order [Docket No. [—]3445], as supplemented by the Supplemental Order to the Confirmation Order [Docket No. 3536], was entered by the Bankruptcy Court on November [24]26, 2025;

**WHEREAS**, pursuant to the Plan, as of the Effective Date, the Trust is established to provide for distributions of the Liquidating Trust Assets to the Beneficiaries (as defined below) in accordance with the Plan, the Confirmation Order, and this Trust Agreement;

**WHEREAS**, the Trustee shall administer the Trust in accordance with the terms of the Plan, the Confirmation Order, and this Trust Agreement; and

**WHEREAS**, pursuant to the Plan, the Trust is intended to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations or under applicable

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, as applicable, and such definitions are also incorporated herein by reference.

### 3.4     **Distributions to Beneficiaries.**

(a)____The Trustee shall make or cause to be made distributions to DIP Beneficiaries from the Distributable Assets and Priority Beneficiaries from the Administrative / Priority Claims Reserve in accordance with, subject to, and at the time or times set forth in, this Trust Agreement, the Plan and the Confirmation Order, but not less frequently than ~~once annually~~**quarterly (commencing with the Wind-Down Debtors' quarter ending February 2026) or as otherwise consented to by the Required Co-Collateral Agents**, starting on the Effective Date, unless the Trustee determines, in its reasonable discretion**, and with the consent of the Required Co-Collateral Agents**, that making such a distribution is impracticable in light of the anticipated Cash needs of the Trust going forward, or that, in light of the Cash available for distribution, making a distribution would not warrant the incurrence of costs in making the distribution or funds are otherwise not available to distribute; *provided*, *however*, that the Trust's discretion may not be exercised in a manner inconsistent with the express requirements of the Plan.  With respect to distributions for which the Trustee is the Disbursing Agent in accordance with Article VIII.E of the Plan, the Trustee shall make distributions on such times as provided for under Article VIII.E of the Plan.  In any such case, the Trustee (or its successor or appointee acting as Disbursing Agent, as applicable), shall be entitled and subject to the rights and obligations of the Disbursing Agent set forth in Article VI of the Plan, and shall make such distributions in accordance with such terms.  The Trustee shall not, when acting as the Disbursing Agent, be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

18

(b)___The Trust may withhold or deduct from amounts distributable to any Person or Entity any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement (including, without limitation, tax withholding in accordance with Section 5.4 below).

(c)___Cash payments to foreign Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(d)___On the Dissolution Date and with the consent of the Required Co-Collateral Agents, the Trustee shall have the authority to direct the remaining Liquidating Trust Assets, if any, to a tax-exempt organization as selected by the Trustee in his or her discretion.

**(e)  In connection with each quarterly distribution to the DIP Beneficiaries by the Trustee, such distributions will include all of the Cash held by the Trustee that exceeds 110% of the Cash funding the Wind-Down Reserve, Administrative / Priority Claims Reserve, and any other approved disbursements in the Wind-Down Budget, subject to the requirements of footnote 2 of the Wind-Down Budget filed at Docket No. 3305 on November 24, 2025.  Following the Effective Date, the Wind-Down Budget shall be determined and approved by the Required Co-Collateral Agents for each subsequent fiscal quarter and subject to the consent rights applicable to the Wind-Down Budget under the Plan, commencing with the Wind-Down Debtors' quarter ending February 2026, and the Trustee shall obtain such approval by no later than 10 days prior to the start of each subsequent fiscal quarter; provided, that if the Trustee and Required**

19

**DIP Co-Collateral Agents (and any other parties whose consent is required under the Plan) cannot in good faith reach agreement on the Wind-Down Budget for a subsequent fiscal quarter, the existing Wind-Down Budget shall remain in effect until such approval occurs or the time period covered by such budget expires. For the avoidance of doubt, the Wind-Down Budget (including as it may be revised, amended, or modified following the Effective Date) shall be subject to the approval of, and satisfactory to, the Required Co-Collateral Agents and subject to the consent rights applicable to the Wind-Down Budget under the Plan.**

### ARTICLE IV

### TRUSTEE

**4.1**   **Number.**      There shall be one (1) Trustee who shall be the person or entity named on the signature pages hereof.

**4.2**   **Terms of Service.**

(a)____The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)      The Trustee may resign at any time upon written notice with such notice being filed with the Bankruptcy Court.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

Liquidating Trust Assets; (h) the ability of beneficial owners or other persons to terminate or dissolve the Trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee set forth or referenced in this Trust Agreement.

**6.12** **Effectiveness.** This Trust Agreement shall become effective on the Effective Date.

IN WITNESS WHEREOF, the Trustee has executed this Trust Agreement this [_] day of [~~November~~**December**,] 2025.

**TRUSTEE**

_____

**Exhibit B**

**Schedule of Assumed Executory Contracts and Unexpired Leases**

On November 11, 2025, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 3218], which included the initial Schedule of Assumed Executory Contracts and/or Unexpired Leases as Exhibit B (the "Initial Schedule"). On November 24, 2025, the Debtors filed the *Notice of Filing of First Amended Plan Supplement* [Docket No. 3305], which included a revised cumulative Schedule of Assumed Executory Contracts and/or Unexpired Leases as Exhibit B (the "First Amended Schedule") and a redline of the First Amended Schedule against the Initial Schedule as Exhibit B-1. On December 16, 2025, the Debtors filed the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 3541], which included an incremental Schedule of Assumed Executory Contracts and/or Unexpired Leases as Exhibit A (the "Second Amended Schedule").

This **Exhibit B**[1] contains the Schedule of Assumed Executory Contracts and Unexpired Leases.[2] **Exhibit B-1**, **Exhibit B-2**, and **Exhibit B-3** include, on a cumulative basis, those Executory Contracts and Unexpired Leases proposed to be assumed by, or assumed and assigned to, the Reorganized Debtors, Wind-Down Debtors, and Rite Aid Plan Sponsor Entity, respectively. **Exhibit B-4** includes, on an incremental basis to the Initial Schedule, the First Amended Schedule, and the Second Amended Schedule, those Executory Contracts and Unexpired Leases proposed to be assumed by, or assumed and assigned to the Wind-Down Debtors. As set forth in the Plan, unless an Executory Contract or Unexpired Lease is specifically included in this **Exhibit B** (or otherwise within the categories listed in the following provisos (a) through (f) of Article V.A of the Plan), **such Executory Contract or Unexpired Lease shall be rejected as of the Effective Date in accordance with the following provisions of the Plan. For the avoidance of doubt, the deadlines with respect to the proposed assumption and/or assumption and assignment of any Executory Contract or Unexpired Lease shall be as set forth on the Cure Notice served in connection with the Initial Schedule, First Amended Schedule, and Second Amended Schedule, as applicable, except for any Executory Contract or Unexpired Lease set forth on Exhibit B-4 hereto, for which any deadlines will be set forth on a Cure Notice served in connection herewith.**

Article V.A of the Plan provides as follows:

> On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected (including any Executory Contract or Unexpired Lease entered into after the Petition Date) shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are specifically described in the Plan as to be assumed in

---

[1]    The Debtors propose to assume each of the third party administrative service agreements and supporting agreements listed in this **Exhibit B**, as well as all current amendments, renewals, business associate agreements, statements of work, appendices, and other supporting documents and agreements incorporated into or entered under the listed agreement and which is necessary to ensure the ability of the Debtors to administer any applicable employee benefit plan in accordance with the Plan.

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 3445, Ex. A] (as it may be amended, supplemented, or otherwise modified from time to time, the "Plan").

connection with Confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) have been previously assumed or rejected by the Debtors pursuant to any Bankruptcy Court order; (c) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (d) are to be assumed and assigned by the Debtors, as applicable, including through a Sale Order in connection with any sale transaction; (e) are a contract, release, or other agreement or document entered into in connection with the Plan; or (f) are an Insurance Policy.  Notwithstanding the foregoing, by consent of McKesson and the Debtors, the deadline for assumption or rejection of the McKesson Supply Documents shall be extended through fifteen (15) Business Days after the earliest of (1) termination of the McKesson Inventory Sale Agreement in accordance with its terms, (2) if the Inmar Outside Date occurs prior to occurrence of the Inmar Closing, the expiration of the Initial Inmar Credit Payment Period (as defined in the McKesson Inventory Sale Agreement), and (3) if the Inmar Closing occurs, expiration of the Subsequent Inmar Credit Payment Period (as defined in the McKesson Inventory Sale Agreement).

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement or similar schedule in connection with a Sale Order, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, (a) the assumptions and assumptions and assignments of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases and (b) the rejections of any such agreements not assumed or assumed and assigned pursuant to this Plan, in each case pursuant to sections 365 and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein or in the Confirmation Order or any Sale Order, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is not assumed on the Effective Date pursuant to this Article V.A, the effective date of rejection of such Unexpired Leases shall be the later of:  (a) the Effective Date, and (b) the date upon which the Debtors or the Wind-Down Debtors, as applicable, notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors or the Wind-Down Debtors surrender the premises as set forth in the foregoing proviso (b), all property remaining in the premises will be deemed abandoned free and clear of any interests, Liens, Claims, and encumbrances and landlords may dispose of such property without further notice or court order, unless

otherwise agreed by the applicable lessor or pursuant to an order of the Bankruptcy Court. The Debtors shall provide each counterparty to an Unexpired Lease which is not assumed pursuant to this Plan with a notice (which notice may, for the avoidance of doubt, be included in the notice such party receives with respect to the filing of the Plan Supplement).

<u>Article V.B</u> of the Plan provides as follows:

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases for any Claims which would be subject to the Claims Bar Date pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the earliest of (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (b) the effective date of such rejection, or (c) the Effective Date. **Any such Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time shall be barred from asserting such Claims against the Debtors and/or receiving distributions on account of such Claims in these Chapter 11 Cases. The Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not timely filed;** *provided* **that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely filed**. All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with <u>Article III.B</u> and may be objected to in accordance with the provisions of <u>Article IX</u> of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Pursuant to <u>Article III.B</u> General Unsecured Claims shall not receive any recovery pursuant to the Plan, are not subject to the Claims Bar Date, and no Proofs of Claim with respect to such Claims must be Filed.

<u>Article V.C</u> of the Plan provides as follows:

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, the Wind-Down Debtors, or, solely with respect to any Executory Contracts or Unexpired Leases to be assumed by, or assumed and assigned to, any Reorganized Debtor, the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases, pay all Cure Costs relating to Executory Contracts and Unexpired Leases that are being assumed under the Plan, if any, on such terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that, if a dispute regarding assumption or Cure Cost is unresolved as of the Effective Date, then payment of the applicable Cure Cost shall occur as soon as reasonably practicable after such dispute is resolved. Any Cure Cost shall be deemed fully satisfied, released, and discharged upon payment of the Cure Cost.

Unless (a) otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease or (b) an earlier deadline has been set with respect to such objection by a Final Order (including, without limitation, the Bidding Procedures Order or any Sale Order, in which case the deadlines set forth in such orders with respect to the applicable Executory Contract or Unexpired Lease shall control), any objection by a counterparty to an Executory Contract or Unexpired Lease to be assumed pursuant to this Plan to the applicable proposed assumption or related Cure Cost must be Filed, served, and actually received by counsel to the Debtors by no later than 14 days after the service of notice of assumption on affected counterparties (which notice may, for the avoidance of doubt, be included in the notice such party receives with respect to the filing of the Plan Supplement). **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and any untimely request for an additional or different Cure Cost shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any of the Debtors without the need for any objection by the applicable Reorganized Debtors or the Wind-Down Debtors, as applicable, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**

Inclusion of any document in the Schedule of Assumed Executory Contracts and Unexpired Leases is not an admission by the Debtors that any such document constitutes an Executory Contract or Unexpired Lease.  Subject to the terms of the Plan and the Restructuring Support Agreement, the Debtors reserve the right to assert that any of the documents listed in the Schedule of Assumed Executory Contracts and Unexpired Leases are not Executory Contracts or Unexpired Leases.  As a matter of administrative convenience, in certain cases the Debtors may have listed the original parties to the Executory Contracts and Unexpired Leases listed in the Schedule of Assumed Executory Contracts and Unexpired Leases without taking into account any succession of trustees or any other transfers or assignments from one party to another.  The fact that the current parties to any particular Executory Contract or Unexpired Leases may not be named in the Schedule of Assumed Executory Contracts and Unexpired Leases is not intended to change the treatment of such Executory Contracts or Unexpired Leases.  References to any Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan are to the applicable Executory Contract or Unexpired Lease and other operative documents as of the date of the Plan Supplement, as they may have been amended, modified, or supplemented from time to time and as may be further amended, modified, or supplemented by the parties thereto between such date and the Effective Date.

All parties reserve all rights, in accordance with the consent and approval rights provided under the Plan or the Restructuring Support Agreement, to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein, including this **Exhibit B**, at any time before the Effective Date of the Plan, or any such other date as may be provided for by order of the Bankruptcy Court.  Each of the documents contained in the Plan Supplement and its amendments remain subject to certain consent and approval rights to the extent provided in the Plan or the Restructuring Support Agreement.

**Exhibit B-1**

**Cumulative Assumed Executory Contracts and Unexpired Leases (Reorganized Debtors)**

| Title of Contract | Counterparty | Debtor Counterparty | Description of Contract | Cure |
|---|---|---|---|---|
| COLLECTIVE BARGAINING AGREEMENT, DATED SEPTEMBER 21, 2023 | UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1776KS | RITE AID OF NEW JERSEY, INC. | COLLECTIVE BARGAINING AGREEMENT | $0.00 |
| INDUSTRIAL BUILDING LEASE, DATED DECEMBER 22, 2015 | NBPIV DELRAN, LLC | RITE AID OF NEW JERSEY, INC. | REAL ESTATE LEASE FOR CENTRAL FILL FACILITY | $77,160.15 |

## Exhibit B-2

## Cumulative Assumed Executory Contracts and Unexpired Leases (Wind-Down Debtors)

| Title of Contract | Counterparty | Debtor Counterparty | Description of Contract | Cure |
|---|---|---|---|---|
| CONTRACT AMENDMENT | 1010DATA | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| ADDENDUM - DEDICATED SERVER PURCHASE, HOSTING AND ANALYSIS AGREEMENT DATED 08/30/2012 | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | CONTRACT ADDENDUM | $0.00 |
| DEDICATED SERVER PURCHASE AND ANALYSIS AGREEMENT DATED 06/01/2011 | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | PURCHASE AGREEMENT | $0.00 |
| DEDICATED SERVER PURCHASE AND ANALYSIS AGREEMENT DATED 07/02/2010 | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | PURCHASE AGREEMENT | $0.00 |
| FIRST AMENDMENT TO STATEMENT OF WORK 1 DATED 02/14/2023 | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| MASTER SERVICES AGREEMENT | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| PURCHASE AND ANALYSIS AGREEMENT | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | PURCHASE AGREEMENT | $0.00 |
| PURCHASE AND ANALYSIS AGREEMENT DATED 07/02/2010 | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | PURCHASE AGREEMENT | $0.00 |
| RITEINSIGHT PROGRAM AGREEMENT DATED 08/01/2016 | 1010DATA SERVICES LLC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| CONTRACT RENEWAL | ACCESS IT GROUP, INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| MASTER SERVICES AGREEMENT | ACCESSIT GROUP, INC. | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| RISK ASSESSMENT - STATEMENT OF WORK DATED 03/29/2018 | ACCESSIT GROUP, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| ASSIGNMENT FOR MASTER TELECOM SERVICES AGREEMENT | ASSIGNET USA INC. | RITE AID HDQTRS. CORP. | ASSIGNMENT AGREEMENT | $0.00 |
| CONTRACT RENEWAL | AT&T ENTERPRISES, LLC. | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| AMENDMENT TO MASTER AGREEMENT DATED 08/14/2020 | AT&T SERVICES / SBC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AT&T CORPORATE DIGITAL ADVANTAGE AGREEMENT DATED 05/30/2008 | AT&T SERVICES / SBC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| BUSINESS ASSOCIATE AGREEMENT | AT&T SERVICES / SBC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| MASTER AGREEMENT DATED 12/13/2013 | AT&T SERVICES / SBC | RITE AID HDQTRS. CORP. | MASTER AGREEMENT | $0.00 |
| ONENET BTB PRICING SCHEDULE DATED 08/28/2020 | AT&T SERVICES / SBC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |

| ONENET INTRASTATE PRICING SCHEDULE DATED 08/14/2020 | AT&T SERVICES / SBC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
|---|---|---|---|---|
| VPN SERVICE PRICING SCHEDULE DATED 08/18/2020 | AT&T SERVICES / SBC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| BALDINO CONSULTING LLC NEW CONTRACT | BALDINO CONSULTING LLC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| EXTENSION FOR JOHN BALDINO - INFRASTRUCTURE LEADER CONTRACT EXTENSION | BALDINO CONSULTING LLC | RITE AID HDQTRS. CORP. | CONTRACT EXTENSION | $0.00 |
| BEYOND TRUST (BOMGAR) CONTRACT RENEWAL | BEYOND TRUST | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $69,798.51 |
| BFPE 2025 MAINTENANCE CONTRACT RENEWAL | BFPE INTERNATIONAL INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| CONTRACT RENEWAL | BFPE INTERNATIONAL INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| NEW CONTRACT | BLACKKITE | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| NEW CONTRACT | BLANCCO US LLC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| EXTENSION LETTER DATED 12/05/2022 | BOTTOM LINE CONCEPTS, LLC | RITE AID HDQTRS. CORP. | EXTENSION LETTER AGREEMENT | $1,089.34 |
| MASTER SERVICES AGREEMENT DATED 12/15/2021 | BOTTOM LINE CONCEPTS, LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| CONTRACT RENEWAL | BROADCOM | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $395,802.00 |
| SYMANTEC PROTECTION ENGINE CONTRACT RENEWAL | BROADCOM | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| MASTER SERVICES AGREEMENT | BUSINESSOLVER.COM, INC. | RITE AID HDQTRS. CORP. | MASTER SERVICES AGREEMENT | $0.00 |
| AMENDMENT 5 DATED 08/05/2015 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER 6 DATED 05/20/2016 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER FOUR DATED 11/01/2014 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER ONE TO THE ORDER FORM AND ADDENDUM DATED 12/31/2008 | CA INC | RITE AID CORPORATION | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER THREE TO THE ORDER FORM AND ADDENDUM EFFECTIVE JANUARY 02, 2007 DATED 06/30/2014 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER TWO TO THE ORDER FORM AND ADDENDUM DATED 06/20/2011 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| ORDER FORM- AMENDMENT NO 8 DATED 12/31/2017 | CA INC | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| ORDER FORM DATED 01/02/2007 | CA INC | RITE AID CORPORATION | ORDER FORM | $0.00 |
| PRODUCT RENEWAL NOTIFICATION AND/OR SOFTWARE DATED 12/31/2020 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |

| RITE AID PURCHASE ORDER | CA INC | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
|---|---|---|---|---|
| PROFESSIONAL SERVICES AGREEMENT | CARLIN EDWARDS BROWN PLLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $12,356.00 |
| MASTER TELECOM SERVICES AGREEMENT (AND ALL RELATED AMENDMENTS) | CASS INFORMATION SYSTEMS INC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| DEFENDER O365 P1 SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| ENTRA ID P1 K SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| ENTRA ID P1 K SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 E3 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 E3 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 E3 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 E5 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 F3 FUSL SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 F3 FUSL SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| MASTER SERVICES AND PRODUCT SALES AGREEMENT | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | MASTER AGREEMENT | $0.00 |
| MUTUAL CONFIDENTIALITY AGREEMENT | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | CONFIDENTIALITY AGREEMENT | $0.00 |
| O365 EXTRA FILE STORAGE SUB ADD-ON EXTRA STORAGE 1 GB | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| TEAMS ROOMS PRO SUB PER DEVICE | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| TEAMS SHARED DEVICES SUB PER DEVICE | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| ADDENDUM TO ORDER NO. 611634 DATED 03/05/2019 | CENTURY LINK COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | CONTRACT ADDENDUM | $0.00 |
| AMENDMENT TO CUSTOMER ORDER DATED 11/25/2019 | CENTURY LINK COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT TO ORDER 59304-12-03 DATED 05/28/2019 | CENTURY LINK COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| CUSTOMER INFORMATION AND CONTRACT SPECIFICATIONS DATED 01/28/2022 | CENTURY LINK COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |

| CUSTOMER INFORMATION AND CONTRACT SPECIFICATIONS DATED 12/23/2019 | CENTURY LINK COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
|---|---|---|---|---|
| MASTER SERVICES AGREEMENT | CENTURY LINK COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| CISCO DUO SECURITY MFA LICENSES RENEWAL CONTRACT RENEWAL | CISCO | RITE AID HDQTRS. CORP. | RENEWAL AGREEMENT | $0.00 |
| CISCO ENTERPRISE AGREEMENT PROGRAM TERMS FOR END USERS DATED 07/26/2023 | CISCO ENTERPRISE | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| BUSINESS ASSOCIATE AGREEMENT DATED 03/10/2023 | CISCO SYSTEMS, INC. | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| CISCO ENTERPRISE AGREEMENT PROGRAM TERMS FOR END USERS DATED 03/10/2023 | CISCO SYSTEMS, INC. | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| ENTERPRISE AGREEMENT 3.0 PROGRAM TERMS FOR END USERS DATED 03/10/2023 | CISCO SYSTEMS, INC. | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| LETTER AGREEMENT BETWEEN CISCO SYSTEMS, INC. AND RITE AID HDQTRS. CORP. U DATED 03/10/2023 | CISCO SYSTEMS, INC. | RITE AID HDQTRS. CORP. | LETTER AGREEMENT | $0.00 |
| MASTER CISCO END USER LICENSE AGREEMENT DATED 03/10/2023 | CISCO SYSTEMS, INC. | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| MASTER SERVICES AGREEMENT | CITRIX SYSTEMS INC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $145.75 |
| ITC TELECOM SERVICES AGREEMENT | COMCAST | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| AMENDMENT NO. 3 | CORVEL CORPORATION | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| CORVEL ENTERPRISE COMP SERVICES AGREEMENT | CORVEL CORPORATION | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| VENDOR AGREEMENT RE TAX APPEALS DATED 11/23/2021 | CRONIN & CRONIN LAW FIRM PLLC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| NEW CONTRACT | CROWDSTRIKE | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| RITE AID-CROWDSTRIKE-IDENTITY-2025 RENEWAL CONTRACT RENEWAL | CROWDSTRIKE | RITE AID HDQTRS. CORP. | RENEWAL AGREEMENT | $0.00 |
| CROWDSTRIKE DATED 08/10/2022 | CROWDSTRIKE, INC. | RITE AID CORPORATION | VENDOR AGREEMENT | $0.00 |
| CROWDSTRIKE EXTENDED SUPPORT AGREEMENT DATED 02/17/2022 | CROWDSTRIKE, INC. | RITE AID CORPORATION | SUPPORT AGREEMENT | $0.00 |
| CROWDSTRIKE TERMS AND CONDITIONS DATED 11/29/2021 | CROWDSTRIKE, INC. | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| RITE AID_CYBERARK LCM SUBSCRIPTION CONTRACT RENEWAL | CYBERARK | RITE AID HDQTRS. CORP. | SUBSCRIPTION AGREEMENT | $0.00 |

| CONTRACT RENEWAL | DATA 21 INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
|---|---|---|---|---|
| PRODUCT LICENSE AGREEMENT DATED 05/07/2009 | DATA 21 INC | RITE AID HDQTRS. CORP. | LICENSE AGREEMENT | $0.00 |
| SOW11182024PE DATED 11/18/2024 | DATAQUEST | RITE AID HDQTRS. CORP. | CONTRACT EXTENSION | $0.00 |
| DELTA DENTAL ADMINISTRATIVE SERVICES CONTRACT (DATED 7/1/2011) | DELTA DENTAL OF PENNSYLVANIA | RITE AID HDQTRS. CORP. | ADMINISTRATIVE SERVICES CONTRACT | $0.00 |
| NONDISCLOSURE AGREEMENT (DATED 2/2/2017) | DELTA DENTAL OF PENNSYLVANIA | RITE AID HDQTRS. CORP. | NONDISCLOSURE AGREEMENT | $0.00 |
| REMITTANCE AGREEMENT (SIGNED 11/6/2023) | DELTA DENTAL OF PENNSYLVANIA | RITE AID CORPORATION | REMITTANCE AGREEMENT | $0.00 |
| RENEWAL FOR TERM 7/1/2023 - 6/30/2028 (DATED1/24/2023) | DELTA DENTAL OF PENNSYLVANIA | RITE AID CORPORATION | RENEWAL AGREEMENT | $0.00 |
| ASSIGNMENT AGREEMENT DATED 06/02/2025 | DILKS & KNOPIK, LLC | RITE AID CORPORATION | ASSIGNMENT AGREEMENT | $0.00 |
| UNITYSYNC CONTRACT RENEWAL | DIRWIZ | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| MASTER SERVICES AGREEMENT | ENSONO, INC. | RITE AID HDQTRS. CORP. | MASTER SERVICES AGREEMENT | $42,222.49 |
| STATEMENT OF WORK – MAINFRAME REMOTE HOSTED SERVICES | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| AMENDMENT #1 TO THE MASTER SERVICES AGREEMENT | ENSONO, INC. | RITE AID HDQTRS. CORP. | AMENDMENT | $0.00 |
| STATEMENT OF WORK – RITE AID MAINFRAME PROCESSOR MAINTENANCE | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK – RITE AID ICA CARDS AND CABLES | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| CHANGE ORDER #1 – BC12 AND Z13S REMOTE HOSTED, SECURITY & TRAINING | ENSONO, INC. | RITE AID HDQTRS. CORP. | CHANGE ORDER | $0.00 |
| AMENDMENT TO THE MASTER UNIVERSAL SERVICE AGREEMENT | EQUIFAX | RITE AID HDQTRS. CORP. | MASTER UNIVERSAL SERVICE AGREEMENT | $2,734.76 |
| SCHEDULE A – EPAYROLL SERVICES SERVICE PROVIDER, TERM AND FEES FOR SERVICES | EQUIFAX | RITE AID HDQTRS. CORP. | PAYROLL SERVICES | $0.00 |
| LETTER OF AGREEMENT (DATED 12/20/2024) | EXPRESS SCRIPTS | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| PRESCRIPTION DRUG PROGRAM AGREEMENT (DATED 1/1/2025) | EXPRESS SCRIPTS | RITE AID HDQTRS. CORP. | PRESCRIPTION DRUG PROGRAM | $0.00 |
| PRESCRIPTION DRUG PROGRAM AGREEMENT, DATED AS OF JANUARY 1, 2025 | EXPRESS SCRIPTS, INC. | RITE AID HDQTRS. CORP. | PRESCRIPTION DRUG PROGRAM AGREEMENT | $0.00 |

| CONTRACT RENEWAL | FORTRA | RITE AID HDQTRS. CORP. | RENEWAL AGREEMENT | $0.00 |
|---|---|---|---|---|
| SOFTWARE SUBSCRIPTION RENEWAL CONTRACT RENEWAL | FORTRA | RITE AID HDQTRS. CORP. | RENEWAL AGREEMENT | $0.00 |
| SOFTWARE SUBSCRIPTION RENEWAL CONTRACT RENEWAL | FORTRA | RITE AID HDQTRS. CORP. | RENEWAL AGREEMENT | $0.00 |
| END USER LICENSE AGREEMENT FOR OFFENSIVE SECURITY SOLUTIONS DATED 06/20/2023 | FORTRA, LLC | RITE AID HDQTRS. CORP. | LICENSE AGREEMENT | $0.00 |
| END USER LICENSE AGREEMENT FOR OFFENSIVE SECURITY SOLUTIONS DATED 06/20/2023 | FORTRA, LLC | RITE AID HDQTRS. CORP. | LICENSE AGREEMENT | $0.00 |
| ELECTRONIC COMMERCE SERVICES AGREEMENT DATED 08/31/2004 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID CORPORATION | SERVICE AGREEMENT | $0.00 |
| ELECTRONIC COMMERCE SERVICES AGREEMENT DATED 08/31/2004 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID CORPORATION | VENDOR AGREEMENT | $0.00 |
| GLOBAL EXCHANGE SEIMEES (GXSI CONTRACT DATED 08/31/2004 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID CORPORATION | SERVICE AGREEMENT | $0.00 |
| GLOBAL EXCHANGE SEIMEES (GXSI CONTRACT DATED 08/31/2004 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID CORPORATION | VENDOR AGREEMENT | $0.00 |
| SUPPLEMENT AND AMENDMENT NUMBER THREE DATED 12/01/2010 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID HDQTRS. CORP. | CONTRACT SUPPLEMENT AND AMENDMENT | $0.00 |
| SUPPLEMENT AND AMENDMENT NUMBER THREE DATED 12/01/2010 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| SUPPLEMENT AND AMENDMENT NUMBER TWO TO ELECTRONIC COMMERCE SERVICES AGREEMENT DATED 09/01/2007 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID HDQTRS. CORP. | CONTRACT SUPPLEMENT AND AMENDMENT | $0.00 |
| SUPPLEMENT AND AMENDMENT NUMBER TWO TO ELECTRONIC COMMERCE SERVICES AGREEMENT DATED 09/01/2007 | GLOBAL EXCHANGE SERVICES, INC. | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| AMENDMENT NO. 5 TO TELECOMMUNICATIONS SERVICES AGREEMENT | GRANITE TELECOMMUNICATIONS, LLC | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| AMENDMENT NO. 6 TO TELECOMMUNICATIONS SERVICES AGREEMENT | GRANITE TELECOMMUNICATIONS, LLC | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| AMENDMENT NO. 7 TO TELECOMMUNICATIONS SERVICES AGREEMENT | GRANITE TELECOMMUNICATIONS, LLC | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |

| TELECOMMUNICATIONS SERVICES AGREEMENT & AMENDMENTS NO. 1 THROUGH 4 | GRANITE TELECOMMUNICATIONS, LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
|---|---|---|---|---|
| ELIXIR PUERTO RICO_GRANT THORNTON_KEVANE TAX REPORTING ENGAGEMENT CONTRACT RENEWAL | GRANT THORNTON | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| GRANT THORNTON PROPOSAL FOR FY25 ELIXIR PUERTO RICO, INC. TAX COMPLIANCE NEW CONTRACT | GRANT THORNTON | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| STATEMENT OF WORK (SOW) | GRANT THORNTON LLP | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $6,231.68 |
| LONG TERM DISABILITY BENEFIT ADMINISTRATION AGREEMENT (DATED 1/1/2023) | HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY | RITE AID HDQTRS. CORP. | LONG TERM DISABILITY BENEFIT ADMINISTRATION AGREEMENT | $0.00 |
| PERFORMANCE AGREEMENT (DATED 1/1/2023) | HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY | RITE AID HDQTRS. CORP. | PERFORMANCE AGREEMENT | $0.00 |
| CONTRACT EXTENSION | HCL | RITE AID HDQTRS. CORP. | CONTRACT EXTENSION | $0.00 |
| SOW 31 MONGODB SUPPORT OFFSHORE CO2 CONTRACT RENEWAL | HCL | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK (SOW) | HCL | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| CHANGE REQUEST – 1 FOR STATEMENT OF RITE AID - HCL SOW NO. 36 CONTRACT AMENDMENT | HCL AMERICA INC. | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| HCL SOW NO. 37 CONTRACT RENEWAL | HCL AMERICA INC. | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| STATEMENT OF WORK (SOW) | HCL INC | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| ADMINISTRATIVE SERVICES AGREEMENT (DATED 1/1/2015) | HEWIT ASSOCIATES LLC ("AON HEWITT") | RITE AID CORPORATION | ADMINISTRATIVE SERVICES AGREEMENT | $0.00 |
| MASTER HEALTH SERVICES AGREEMENT (DATED 1/1/2020) | HIGHMARK | RITE AID HDQTRS. CORP. | MASTER HEALTH SERVICES AGREEMENT | $0.00 |
| MASTER HEALTH SERVICES AGREEMENT (MHSA), EFFECTIVE JANUARY 1, 2022 | HIGHMARK INC. | RITE AID HDQTRS. CORP. | MASTER HEALTH SERVICES AGREEMENT | $0.00 |
| DIRECT PURCHASING AGREEMENT DATED 03/04/2022 | HITACHI VANTARA LLC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| CONTRACT RENEWAL | IBM | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| MIRACLESOFTT RESELLING IBM DB2 ENTERPRISE SERVER SUBSCRIPTION AND SUPPORT RENEWAL CONTRACT RENEWAL | IBM | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| ORDER FORM DATED 01/13/2023 | IDERA INC | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |

| QUOTE & MASTER SOFTWARE LICENSE AGREEMENT LICENSE AGREEMENT | IDERA, INC | RITE AID HDQTRS. CORP. | LICENSE AGREEMENT | $0.00 |
|---|---|---|---|---|
| CONTRACT RENEWAL | IDERA, INC. | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| CONTRACT RENEWAL | INMAR RX SOLUTIONS, INC. | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| TRADE AGREEMENT | INMAR RX SOLUTIONS, INC. | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| VENDOR AGREEMENT RE TAX APPEALS DATED 11/23/2021 | INTERNATIONAL APPRAISAL CO | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $15,499.39 |
| PROFESSIONAL SERVICES AGREEMENT | INTERNATIONAL EQUITY RESEARCH | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| CONTRACT RENEWAL | JACOBSON LAW FIRM, P.C. | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $7,595.31 |
| PROPERTY TAX APPEAL SERVICE AGREEMENT DATED 01/01/2012 | JACOBSON LAW FIRM, P.C. | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| VENDOR AGREEMENT RE TAX APPEALS DATED 11/23/2021 | JANATA LACAP & HAZEN LLP | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| 2025 ANNUAL SERVICE SUBSCRIPTION AGREEMENT | K LOGIX, LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| GROUP AGREEMENT FOR RITE AID CORPORATION (DATED 5/31/2019 FOR GROUP ID: 100507) | KAISER FOUNDATION HEALTH PLAN | RITE AID CORPORATION | GROUP AGREEMENT | $3,006.09 |
| GROUP AGREEMENT FOR RITE AID CORPORATION (DATED 5/31/2019 FOR GROUP ID: 606616) | KAISER FOUNDATION HEALTH PLAN | RITE AID CORPORATION | GROUP AGREEMENT | $0.00 |
| ORDER FORM DATED 02/01/2023 | KAPLAN FINANCIAL EDUCATION | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| LETTER AGREEMENT DATED 09/12/2019 | KEYSTONE TAX ASSOCIATES LLC | RITE AID HDQTRS. CORP. | LETTER AGREEMENT | $0.00 |
| AMENDMENT_LEVEL 3 CONTRACT DATED 07/31/2018 | LEVEL 3 COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| LEVEL3_SERVICE ORDER DATED 12/19/2017 | LEVEL 3 COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| MASTER SERVICE AGREEMENT | LEVEL 3 COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| VENDOR AGREEMENT | LEVEL 3 COMMUNICATIONS LLC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| BUSINESS ASSOCIATEAGREEMENT | LYRA HEALTH | RITE AID HDQTRS. CORP. | BUSINESS ASSOCIATE | $0.00 |
| MASTER SERVICES AGREEMENT (DATED 7/1/2023) | LYRA HEALTH | RITE AID HDQTRS. CORP. | MASTER SERVICES AGREEMENT | $0.00 |
| STATEMENT OF WORK NO. 1 DATED 07/01/2023 | LYRA HEALTH | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| ELECTRONIC SERVICES AGREEMENT DATED 10/08/2009 | MANUFACTURERS AND TRADERS TRUST COMPANY | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| M&T MASTER TREASURY MANAGEMENT SERVICES AGREEMENT DATED 11/03/2011 | MANUFACTURERS AND TRADERS TRUST COMPANY | RITE AID CORPORATION | SERVICE AGREEMENT | $0.00 |

| | | | | |
|---|---|---|---|---|
| SERVICES AGREEMENT[3] | MEDCHART US INC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| MS ENTERPRISE AGREEMENT (1) | MICROSOFT CORPORATION | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| MS ENTERPRISE AGREEMENT (2) | MICROSOFT CORPORATION | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| CONTRACT AMENDMENT | MRI SOFTWARE, LLC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| GENERAL TERMS AND SOFTWARE-EXHIBIT CONTRACT RENEWAL | OMNISSA, LLC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| GENERAL TERMS AND SOFTWARE-EXHIBIT CONTRACT RENEWAL | OMNISSA, LLC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| MASTER AGREEMENT DATED 10/21/2022 | ONESOURCE VIRTUAL INC. | RITE AID HDQTRS. CORP. | MASTER AGREEMENT | $0.00 |
| ORDER FORM | ONESOURCE VIRTUAL INC. | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| BUSINESS ASSOCIATE AGREEMENT DATED 07/06/2023 | QUANTUM | RITE AID HDQTRS. CORP. | BUSINESS ASSOCIATE AGREEMENT | $0.00 |
| HEALTHCARE NAVIGATION AND CARE COORDINATION SERVICES AGREEMENT DATED 01/09/2023 | QUANTUM | RITE AID HDQTRS. CORP. | CARE COORDINATION SERVICES AGREEMENT | $0.00 |
| CONTRACT RENEWAL | RAPID7 | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| CONTRACT RENEWAL | RAPID7 | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| RAPID7 MASTER SERVICES AGREEMENT DATED 11/30/2020 | RAPID7 LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| AGREEMENT FOR PROGRAM PRODUCES LICENSES DATED 08/04/1994 | SYNCSORT INCORPORATED | RITE AID CORPORATION | LICENSE AGREEMENT | $0.00 |
| AGREEMENT FOR PROGRAM PRODUCT(S) LICENSE(S) AND/OR PROGRAM PRODUCT(S) MAINTENANCE SERVICE(S) DATED 08/04/1994 | SYNCSORT INCORPORATED | RITE AID CORPORATION | LICENSE AGREEMENT | $0.00 |
| AMENDMENT TO SOFTWARE LICENSE AGREEMENT DATED 05/23/2013 | SYNCSORT INCORPORATED | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT TO SOFTWARE LICENSE AGREEMENT DATED 05/23/2013 | SYNCSORT INCORPORATED | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| AMENDMENT TO SOFTWARE LICENSE AGREEMENT DATED 06/14/2013 | SYNCSORT INCORPORATED | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT TO SOFTWARE LICENSE AGREEMENT DATED 06/14/2013 | SYNCSORT INCORPORATED | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |

---

[3]     As amended by Amendment No. 2 to the MedChart Services Agreement, dated December 29, 2025, between MedChart US Inc. and Rite Aid Hdqtrs. Corp.

| 1147 STATEMENT OF WORK | TATA CONSULTANCY SERVICES LTD | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
|---|---|---|---|---|
| 1155 STATEMENT OF WORK | TATA CONSULTANCY SERVICES LTD | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| AMENDMENT 2 TO STATEMENT OF WORK 1078 (T&M) | TATA CONSULTANCY SERVICES LTD | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| ANNEXURE 1078 A2 AMENDMENT | TATA CONSULTANCY SERVICES LTD | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| ANNEXURE TO 1155 STATEMENT OF WORK | TATA CONSULTANCY SERVICES LTD | RITE AID HDQTRS. CORP. | ANNEXURE TO STATEMENT OF WORK | $0.00 |
| SOW 1147 EDW MAINTENANCE AND MIGRATION ACTIVITIES | TATA CONSULTANCY SERVICES LTD | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK — HEALTH AND WELFARE PLAN MANAGEMENT SERVICES DATED 07/28/2014 | TOWERS WATSON DELAWARE INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK — HEALTH AND WELFARE PLAN MANAGEMENT SERVICES DATED 10/01/2010 | TOWERS WATSON PENNSYLVANIA INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| CONTRACT AMENDMENT | UNICOM | RITE AID HDQTRS. CORP. | AMENDMENT AGREEMENT | $0.00 |
| CONTRACT RENEWAL | UNICOM SYSTEMS, INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| UNICOM/MACRO 4 LICENSE RENEWAL CONTRACT RENEWAL | UNICOM SYSTEMS, INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| UNICOM FINANCE RENEWAL CONTRACT RENEWAL | UNICOM SYSTEMS, INC. | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| NOBLETEC_LLC.C020567.V1.3 NOBLETEC_LLC.C021218.V1.2 CONTRACT RENEWAL | VERITAS | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| AMENDMENT TO THE U.S. SERVICES AGREEMENT | VERIZON | RITE AID CORPORATION | CONTRACT AMENDMENT | $0.00 |
| PARTICIPATING ENTITY SERVICE ORDER FORM | VERIZON | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| PARTICIPATING ENTITY SERVICE ORDER FORM TO THE U.S. SERVICES AGREEMENT | VERIZON | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| PARTICIPATING ENTITY SERVICE ORDER FORM TO THE U.S. SERVICES AGREEMENT DATED 11/02/2022 | VERIZON | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| PARTICIPATING ENTITY SERVICE ORDER FORM TO THE U.S. SERVICES AGREEMENT DATED 11/15/2022 | VERIZON | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| SERVICE AGREEMENT | VERIZON | RITE AID CORPORATION | SERVICE AGREEMENT | $0.00 |
| SERVICE ORDER FORM TO THE U.S. SERVICES AGREEMENT | VERIZON | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |

| SERVICE ORDER FORM TO THE U.S. SERVICES AGREEMENT DATED 03/16/2022 | VERIZON | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
|---|---|---|---|---|
| STATEMENT OF WORK (SOW) | VERIZON | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK (SOW) | VERIZON | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK (SOW) | VERIZON | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| THE U.S. SERVICES AGREEMENT DATED 10/03/2023 | VERIZON | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
| VERIZON BUSINESS SERVICE AGREEMENT DATED 10/24/2008 | VERIZON | RITE AID CORPORATION | SERVICE AGREEMENT | $0.00 |
| STATEMENT OF WORK (SOW) | VERIZON BUSINESS | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| CONTRACT EXTENSION | VERIZON BUSINESS NETWORK SERVICES LLC | RITE AID HDQTRS. CORP. | CONTRACT EXTENSION | $0.00 |
| GROUP VISION CARE POLICY (DATED 7/1/2016) | VSP | RITE AID HDQTRS. CORP. | GROUP VISION CARE POLICY | $0.00 |
| RENEWAL AGREEMENT (DATED 1/23/2024) | VSP | RITE AID HDQTRS. CORP. | RENEWAL AGREEMENT | $0.00 |
| RITE AID ZSCALER $0 1 2025 CONTRACT AMENDMENT | ZSCALER | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| RITE AID ZSCALER $0 1 2025 CONTRACT AMENDMENT | ZSCALER | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |

**Exhibit B-3**

**Cumulative Assumed Executory Contracts and Unexpired Leases (Plan Sponsor Entity)**

| Title of Contract | Counterparty | Debtor Counterparty | Description of Contract | Cure |
|---|---|---|---|---|
| MASTER SERVICES AGREEMENT (DATED 3/13/2013) | CLIFTONLARSONALLEN, LLC | RITE AID HDQRTS. CORP. | MASTER SERVICES AGREEMENT | $2,310.00 |
| ADMINISTRATIVE SERVICES AGREEMENT DATED 09/03/2019 | GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY | RITE AID CORPORATION | ADMINISTRATIVE SERVICES AGREEMENT | $0.00 |
| LETTER OF AGREEMENT DATED 09/20/2021 | NEPC LLC | RITE AID HDQTRS. CORP. | LETTER OF AGREEMENT | $0.00 |
| ENGAGEMENT LETTER TO PROVIDE QDRO ADMINISTRATIVE SERVICES | QRDO CONSULTANTS | RITE AID CORPORATION | ENGAGEMENT LETTER | $0.00 |
| TRUST AGREEMENT DATED 03/25/2021 | US BANK NATIONAL ASSOCIATION | RITE AID CORPORATION | TRUST AGREEMENT | $0.00 |

**Exhibit B-4**

**Incremental Assumed Executory Contracts and Unexpired Leases (Wind-Down Debtors)**

| Title of Contract | Counterparty | Debtor Counterparty | Description of Contract | Cure |
|---|---|---|---|---|
| CONTRACT RENEWAL | BROADCOM | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $395,802.00 |
| SYMANTEC PROTECTION ENGINE CONTRACT RENEWAL | BROADCOM | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| AMENDMENT 5 DATED 08/05/2015 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER 6 DATED 05/20/2016 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER FOUR DATED 11/01/2014 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER ONE TO THE ORDER FORM AND ADDENDUM DATED 12/31/2008 | CA INC | RITE AID CORPORATION | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER THREE TO THE ORDER FORM AND ADDENDUM EFFECTIVE JANUARY 02, 2007 DATED 06/30/2014 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| AMENDMENT NUMBER TWO TO THE ORDER FORM AND ADDENDUM DATED 06/20/2011 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT AMENDMENT | $0.00 |
| ORDER FORM- AMENDMENT NO 8 DATED 12/31/2017 | CA INC | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| ORDER FORM DATED 01/02/2007 | CA INC | RITE AID CORPORATION | ORDER FORM | $0.00 |
| PRODUCT RENEWAL NOTIFICATION AND/OR SOFTWARE DATED 12/31/2020 | CA INC | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| RITE AID PURCHASE ORDER | CA INC | RITE AID HDQTRS. CORP. | ORDER FORM | $0.00 |
| DEFENDER O365 P1 SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| ENTRA ID P1 K SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| ENTRA ID P1 K SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 E3 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 E3 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |

| | | | | |
|---|---|---|---|---|
| M365 E3 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 E5 UNIFIED EXISTING CUSTOMER SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 F3 FUSL SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| M365 F3 FUSL SUB PER USER | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| MASTER SERVICES AND PRODUCT SALES AGREEMENT | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | MASTER AGREEMENT | $0.00 |
| MUTUAL CONFIDENTIALITY AGREEMENT | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | CONFIDENTIALITY AGREEMENT | $0.00 |
| O365 EXTRA FILE STORAGE SUB ADD-ON EXTRA STORAGE 1 GB | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| TEAMS ROOMS PRO SUB PER DEVICE | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| TEAMS SHARED DEVICES SUB PER DEVICE | CDW DIRECT, LLC | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| MASTER SERVICES AGREEMENT | ENSONO, INC. | RITE AID HDQTRS. CORP. | MASTER SERVICES AGREEMENT | $42,222.49 |
| STATEMENT OF WORK – MAINFRAME REMOTE HOSTED SERVICES | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| AMENDMENT #1 TO THE MASTER SERVICES AGREEMENT | ENSONO, INC. | RITE AID HDQTRS. CORP. | AMENDMENT | $0.00 |
| STATEMENT OF WORK – RITE AID MAINFRAME PROCESSOR MAINTENANCE | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| STATEMENT OF WORK – RITE AID ICA CARDS AND CABLES | ENSONO, INC. | RITE AID HDQTRS. CORP. | STATEMENT OF WORK | $0.00 |
| CHANGE ORDER #1 – BC12 AND Z13S REMOTE HOSTED, SECURITY & TRAINING | ENSONO, INC. | RITE AID HDQTRS. CORP. | CHANGE ORDER | $0.00 |
| DIRECT PURCHASING AGREEMENT DATED 03/04/2022 | HITACHI VANTARA LLC | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| CONTRACT RENEWAL | INMAR RX SOLUTIONS, INC. | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| TRADE AGREEMENT | INMAR RX SOLUTIONS, INC. | RITE AID HDQTRS. CORP. | VENDOR AGREEMENT | $0.00 |
| 2025 ANNUAL SERVICE SUBSCRIPTION AGREEMENT | K LOGIX, LLC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |

| SERVICES AGREEMENT[4] | MEDCHART US INC | RITE AID HDQTRS. CORP. | SERVICE AGREEMENT | $0.00 |
|---|---|---|---|---|
| MS ENTERPRISE AGREEMENT (1) | MICROSOFT CORPORATION | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| MS ENTERPRISE AGREEMENT (2) | MICROSOFT CORPORATION | RITE AID HDQTRS. CORP. | ENTERPRISE AGREEMENT | $0.00 |
| CONTRACT RENEWAL | RAPID7 | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |
| CONTRACT RENEWAL | RAPID7 | RITE AID HDQTRS. CORP. | CONTRACT RENEWAL | $0.00 |

---

[4]   As amended by Amendment No. 2 to the MedChart Services Agreement, dated December 29, 2025, between MedChart US Inc. and Rite Aid Hdqtrs. Corp.

## <u>EXHIBIT C</u>

### Transition Support Agreement

The Reorganized Debtors and Wind-Down Debtors shall negotiate in good faith on a transition support agreement (the "TSA") for the Wind-Down Debtors to support, among other things, the Reorganized Debtors' operations, including the development and integration of NexGen and RiteCare.  The TSA shall also provide for the Wind-Down Debtors to transition to the Reorganized Debtors the NexGen and RiteCare platforms pursuant to the Plan and free of protected health information and personally identifiable information.