| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1** <br> **KILPATRICK TOWNSEND & STOCKTON LLP** <br> Paul M. Rosenblatt, Esq. <br> Colin M. Bernardino, Esq. (*pro hac vice admission pending*) <br> 1100 Peachtree Street, Suite 2800 <br> Atlanta, Georgia 30309 <br> Telephone    (404) 815-6500 <br> Email:    prosenblatt@ktslaw.com <br>    cbernardino@ktslaw.com <br><br> *Counsel for Inmar Rx Solutions, Inc.* | |
| In re: <br><br> NEW RITE AID, LLC, *et al.*,[1] <br><br>    Debtors. | Chapter 11 <br><br> Case No. 25-14861[2] (MBK) <br><br> (Jointly Administered) |

### INMAR RX SOLUTIONS, INC.'S OBJECTION TO DEBTORS' PROPOSED CURE AMOUNTS

Inmar Rx Solutions, Inc. ("Inmar"), a party to that certain *Master Services Agreement* (the "MSA"), dated May 20, 2024, that certain *Trade Agreement* (the "Trade Agreement"), dated May 31, 2024, and that certain *Statement of Work # 001*, dated May 20, 2024 (the "SOW," and collectively with the MSA and the Trade Agreement, the "Agreements"), dated May 20, 2024, by and between Debtor Rite Aid Hdqtrs. Corp. (the "HQ Debtor") and Inmar, hereby files this

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

[2] Out of an abundance of caution, Inmar is filing this objection in both the Debtors' (former) lead case, case number 25-14831, and the "Remaining Case" (25-14831), due to uncertainty regarding whether this objection, relating to the Third Amended Plan Supplement, falls under the category of "Remaining Matters" (which is defined as "miscellaneous motions, applications, pleadings, or other matters or proceedings are likely to arise from time to time."). *See* [Docket Nos. 3522, 3695].

objection (the "Objection") to: (a) the proposed assumption of the Trade Agreement and the SOW without the assumption of the MSA; (b) the proposed amounts listed in the *Third Amended Plan Supplement* [Docket No. 3694] (the "Third Amended Plan Supplement") that the above-captioned debtors (the "Debtors") have proposed to pay to cure defaults under the Agreements; and (c) the assumption of the Agreements without providing adequate assurance of future performance. In support of this Objection, Inmar respectfully states as follows:

## I. BACKGROUND

1. On May 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

### A. The Agreements

2. On or about March 10, 2010, Inmar, formerly known as Med-Turn, Inc., entered into that certain *Returns Management Rx Processing Agreement* (the "Prior Agreement") with HQ Debtor. The Prior Agreement provides, among other things, that Inmar will provide certain returns management services for the Debtors.

3. On October 15, 2023, the HQ Debtor and various affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, commencing their chapter 11 bankruptcy cases (the "Prior Chapter 11 Cases") in the Bankruptcy Court. See, e.g., [Rite Aid I, Docket No. 1].[3]

4. During the pendency of the Prior Chapter 11 Cases, the Bankruptcy Court entered its *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) 503(b)(9) Claimants, (B) Lien Claimants, and (C) Critical Vendors, (II) Confirming Administrative Expense*

---

[3] References to the Prior Chapter 11 Cases, which were jointly administered under case number 23-18993, will be styled as [Rite Aid I, Docket No. __].

2

*Priority of Outstanding Orders, and (III) Granting Related Relief* [Rite Aid I, Docket No. 1137] (the "Prior Critical Vendor Order"), thereby authorizing the Debtors to enter certain trade agreements with vendors, including Inmar.

5. Pursuant to the Prior Critical Vendor Order, on May 31, 2024, the HQ Debtor entered into the Trade Agreement, which, among other things, provides that the Trade Agreement will become effective upon the execution of the MSA and that the HQ Debtor would pay $297,855.97 on account of services provided by the Debtor. The Trade Agreement provides that the Trade Agreement would only become effective upon the execution of the MSA.

6. On or about May 20, 2024, the HQ Debtor and Inmar entered into the MSA and the SOW. The MSA and SOW provide, among other things, that Inmar will provide certain data analytics and technology-enabled services and returns management services related to pharmaceutical products, including Non-Controlled and Controlled Substances Schedule II-V, and List 1 Products, as defined by the United States Department of Justice Drug Enforcement Administration (together, the "Services") to the HQ Debtor.

7. As of the Petition Date, the HQ Debtor owed Inmar $1,169,504.43 (the "Prepetition Amount") for pre-petition, unpaid Services (the "Pre-Petition Services") rendered under the Agreements, including the $297,855.97 owed under the Trade Agreement and $871,648.56 incurred under the MSA and SOW. Invoices reflecting the Pre-Petition Services provided under the MSA and SOW are attached hereto as **Exhibit A**.[4] As of the date of this Objection, the Prepetition Amount remains due and owing under the Agreement.

8. On or about July 22, 2025, the HQ Debtor and Inmar entered into a Letter of Understanding, by which, among other things, the HQ Debtor agreed to provide a $525,000 deposit

---

[4] Invoice number 10001066134 included in Exhibit A reflects Pre-Petition Services worth $11,277.48 which remain unpaid. (The balance of the invoice reflects post-petition Services which have been paid.)

to Inmar to secure payment of post-petition Services and agreed to replenish the deposit if it were drawn upon. Subsequently, under the terms of the Letter of Understanding, Inmar applied the entirety of the deposit. The HQ Debtor has not replenished the deposit.

9. The HQ Debtor owes $190,520.95 for post-petition, unpaid Services rendered under the Agreement through December 12, 2025. An invoice reflecting those unpaid services is attached hereto as **Exhibit B**.[5] As of the date of this Objection, the Post-Petition Amount remains due and owing under the Agreement.

10. The HQ Debtor recently shipped products to Inmar that require Inmar's Services under the MSA and SOW. Such Services would need to be performed after the filing of this Objection (the "Future Services"), resulting in additional amounts that will become due (the "Future Amounts").

**B.    The Plan and Debtors' Proposed Cure**

11. On November 11, 2025, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates* [Docket No. 3215] (the "Plan").

12. On November 26, 2025, the Court entered its *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3445] (the "Confirmation Order").

13. On December 16, 2025, the Debtors filed the Third Amended Plan Supplement.

---

[5] Inmar provided services under the MSA and SOW for the period between December 13, 2025 and January 9, 2026. An invoice for such amounts will be generated in the ordinary course of business. Any cure of the MSA and SOW will need to pay this amount as well (collectively with the amounts reflected in Exhibit B, the "Post-Petition Amount"), in addition to any other amounts outstanding.

4

14. The Third Amended Plan Supplement lists, in both Exhibit B-2 (Cumulative Assumed Executory Contracts and Unexpired Leases (Wind-Down Debtors)) and Exhibit B-4 (Incremental Assumed Executory Contracts and Unexpired Leases (Wind-Down Debtors), the "Trade Agreement" and "Contract Renewal." Third Amended Plan Supp. at 70, 76.

15. It is Inmar's understanding that the "Contract Renewal" refers to the SOW as the term "renewal" appears in the language of the SOW, but not the MSA. The Third Amended Plan Supplement does not appear to propose to assume the MSA.

16. The Third Amended Plan Supplement provides that the cure amounts associated with the "Trade Agreement" and the "Contract Renewal" are "$0.00" in both instances. Id.

## II. OBJECTION

17. The proposed assumption of the Trade Agreement and the SOW fails to comply with the requirements of section 365 of the Bankruptcy Code and the terms and conditions of the Agreements.

18. First, the SOW was issued under, and is a part of, the MSA. Therefore, the Debtors must also assume the MSA in order to assume the SOW. See In re Fleming Cos., 499 F.3d 300, 308 (3d Cir. 2007) (a debtor assuming a contract must accept it *cum onere* and be subject to both the benefits and the burdens); see also, e.g., In re Physiotherapy Holdings, Inc., 538 B.R. 225, 234 (D. Del. 2015) (reversing bankruptcy court's order granting the debtor's assumption of the software licensing agreement and rejecting the master services agreement as the software licensing agreement was not independent of the master services agreement).

19. Accordingly, if the Debtors wish to assume the benefits of the SOW listed on the Third Amended Plan Supplement, they must assume, and cure all defaults under, the MSA to which the SOW belongs. As a result, Inmar respectfully requests that the Court condition the assumption of the SOW on the Debtors' assumption of the MSA.

20. Second, in addition to the required assumption of the MSA, the proposed assumption by the HQ Debtor must be conditioned on the payment of all amounts due and owing under the Agreements through the effective date of the assumption of the Agreements. *See* 11 U.S.C. § 365(b)(1), (f)(2) (requiring that a trustee cure or provide adequate assurance that the trustee will promptly cure a breach before an executory contract is assumed); see also In re Weinstein Co. Holdings, LLC, 997 F.3d 497, 501 (3d Cir. 2021) ("an executory contract can be 'assumed' and then 'assigned' to a buyer under § 365 of the Bankruptcy Code provided all existing defaults are cured"); In re Columbia Gas Sys., Inc., 50 F.3d 233, 238 (3d Cir. 1995) ("[t]he debtor … may elect to assume an executory contract, in which case § 365 mandates that the debtor accept the liability with the asset and fully perform his end of the bargain.").

21. Before the HQ Debtor can assume the Agreements, the HQ Debtor must pay Inmar the Pre-Petition Amount, the Post-Petition Amount, the Future Amounts (to the extent any such Future Amounts have accrued by the time of assumption), as well as fulfill any other contractual obligations under the Agreements that may not have been fulfilled by the HQ Debtor at the time of assumption.

22. Third, to assume the Agreements, the Debtors must provide adequate assurance of future performance under the Agreements. *See* 11 U.S.C. § 365(b)(1), (f)(2) (requiring that a trustee provide "adequate assurance of future performance"); In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3d Cir. 2000).

23. "What constitutes 'adequate assurance of future performance' must be determined by consideration of the facts of the proposed assumption." Fleming, 499 F.3d at 307 (quoting Cinicola v. Scharffenberger, 248 F.3d 110, 120 n.10 (3d Cir. 2001)). As stated by one court, "[t]he primary focus of determining whether an assignee has given adequate assurance of future

6

performance is 'the assignee's ability to satisfy the financial obligations imposed by the [contract].'" In re Vill. Roadshow Ent. Grp. USA Inc., No. 25-10475 (TMH), 2025 WL 3093845, at *7 (Bankr. D. Del. Nov. 5, 2025) (quoting In re Evelyn Byrnes, Inc., 32 B.R. 825, 829 (Bankr. S.D.N.Y. 1983)) (alternation in original).

24. Here, the Debtors have provided absolutely no evidence that the Wind-Down Debtors possess the financial ability to perform the ongoing obligations under the Agreements for Inmar's Services. Moreover, the HQ Debtor has not replenished the deposit that it had provided pursuant to the Letter of Understanding. Accordingly, the Debtors cannot assume the Agreements until such adequate assurance of future performance is provided.

25. Nothing in this Objection is intended to be, or should be construed as, a waiver by Inmar of any of its rights under the Agreements, the Bankruptcy Code, or applicable law. Inmar expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to the Debtors' proposed cure amounts; (b) amend the Pre-Petition Amount, the Post-Petition Amount, or the Future Amount; (c) assert any nonmonetary defaults under the Agreements; (d) assert any rights for indemnification or contribution against the HQ Debtor under the Agreements; (e) assert demands for adequate assurance of future performance; and (f) assert any further objections as it deems necessary or appropriate.

### III. NO PRIOR REQUEST

26. No previous request for the relief sought herein has been made to this or any other court.

### IV. WAIVER OF MEMORANDUM OF LAW

27. To the extent applicable, Inmar requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which Inmar relies is incorporated herein and the Objection does not raise any novel issues of law.

**WHEREFORE**, Inmar respectfully requests that this Court enter an order: (a) sustaining this Objection; (b) conditioning the HQ Debtor to assume the MSA in conjunction with any assumption of the SOW, and comply with each and every term, condition, and obligation set forth in the Agreements; (c) conditioning the assumption of the Agreements upon the payment of the Pre-Petition Amounts, the Post-Petition Amounts, and the cure of any Future Amounts (to the extent any such Future Amounts have accrued as of the date of assumption) and the cure of any other default under the Agreements; (d) conditioning the assumption of the Agreements upon the Debtors' providing adequate assurance of future performance; and (e) granting such other and further relief as this Court deems just and appropriate.

Dated: January 13, 2026

By: /s/ *Paul M. Rosenblatt*
**KILPATRICK TOWNSEND & STOCKTON LLP**
Paul M. Rosenblatt, Esq.
Colin M. Bernardino, Esq. (*pro hac vice* admission pending)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Email:   prosenblatt@ktslaw.com
            cbernardino@ktslaw.com

*Counsel for Inmar Rx Solutions, Inc.*

8

| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1** |
| **KILPATRICK TOWNSEND & STOCKTON LLP** |
| Paul M. Rosenblatt, Esq. |
| Colin M. Bernardino, Esq. (*pro hac vice admission pending*) |
| 1100 Peachtree Street |
| Suite 2800 |
| Atlanta, Georgia 30309 |
| Telephone    (404) 815-6500 |
| Email:    prosenblatt@ktslaw.com |
|         cbernardino@ktslaw.com |
| |
| *Counsel for Inmar Rx Solutions, Inc.* |

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RITE AID, LLC, *et al.*,[6] | Case No. 25-14861 (MBK) |
| Debtors. | (Jointly Administered) |

## CERTIFICATE OF SERVICE

I, Paul M. Rosenblatt, hereby certify as follows:

1. I am a partner at Kilpatrick Townsend & Stockton LLP, counsel to Inmar Rx Solutions, Inc. in the above matter.

2. On January 13, 2026, in addition to service via the Court's CM/ECF system, I caused a true and correct copy of the following document to be served on those parties listed in the chart below via the mode of service indicated:

- Inmar Rx Solutions, Inc.'s Objection to Debtors' Proposed Cure Amounts

I certify under penalty of perjury that the foregoing statements made by me are true.

---

[6] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Dated:  January 13, 2026          By:    */s/ Paul M. Rosenblatt*
                                                                                                Paul M. Rosenblatt

| **Name and Address of Party Served** | **Relationship of Party to the Case** | **Mode of Service** |
|---|---|---|
| New Rite Aid, LLC<br>200 Newberry Commons, Etters, Pennsylvania 17319 | Debtor | (Via EM/ECF on counsel) |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Andrew N. Rosenberg; Alice Belisle Eaton; Christopher Hopkins; Sean A. Mitchell<br><br>Cole Schotz, P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota; Warren A. Usatine; Felice R. Yudkin; Seth Van Aalten | Counsel for the Debtors | (Via ECF and E-Mail)<br><br>arosenberg@paulweiss.com<br>aeaton@paulweiss.com<br>chopkins@paulweiss.com<br>smitchell@paulweiss.com<br><br><br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com<br>svanaalten@coleschotz.com |
| WILLKIE FARR & GALLAGHER LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attn: Brett H. Miller; Todd M. Goren; James H. Burbage; Jessica D. Graber<br><br>SILLS CUMMIS & GROSS P.C.<br>One Riverfront Plaza<br>Newark, New Jersey 07102<br>Attn: Andrew H. Sherman; Boris Mankovetskiy; Gregory Kopacz | Counsel to the Committee | (Via ECF and E-Mail)<br><br>bmiller@willkie.com<br>tgoren@willkie.com<br>jburbage@willkie.com<br>jgraber@willkie.com<br><br><br>asherman@sillscummis.com<br>bmankovetskiy@sillscummis.com<br>gkopacz@sillscummis.com |

| | | |
|---|---|---|
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attn: John F. Ventola; Jonathan D. Marshall; Mark D. Silva<br><br>Greenberg Traurig LLP<br>500 Campus Drive, Suite 400<br>Florham Park, New Jersey 07932<br>Attn: Alan J. Brody | Counsel to the DIP Agent | (Via ECF and E-Mail)<br><br>jventola@choate.com<br>jmarshall@choate.com<br>msilva@choate.com<br><br><br>brodya@gtlaw.com |
| SIDLEY AUSTIN LLP<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Attn: Dennis M. Twomey; Jackson T. Garvey; Ian C. Ferrell<br><br>McMANIMON, SCOTLAND & BAUMANN, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Anthony Sodono, III; Michele M. Dudas | Counsel to McKesson Corporation (as Plan Sponsor) | (Via ECF and E-Mail)<br><br>dtwomey@sidley.com<br>jgarvey@sidley.com<br>iferrell@sidley.com<br><br><br><br>asodono@msbnj.com<br>mdudas@msbnj.com |
| Office of the United States Trustee<br>United States Trustee, Region 3<br>One Newark Center, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Jeffrey M. Sponder and Lauren Bielskie | United States Trustee | (Via ECF and E-Mail)<br><br>jeffrey.m.sponder@usdoj.gov<br>lauren.bielskie@usdoj.gov |