**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>A NEW RITE AID, LLC, ET AL.,[1] | Case No. 25-14861 (MBK)<br><br>Chapter 11<br><br>Hon. Michael B. Kaplan |

**DECLARATION OF ARYEH MARKOVIC IN SUPPORT OF
MOTION TO VACATE ORDER APPROVING THE ASSUMPTION
AND ASSIGNMENT OF UNEXPIRED LEASE TO MURRAY AVE MARKET, LLC
PURSUANT TO FED. R. CIV. P. 60(b)(3) AND FED. R. BANKR. P. 9024**

I, Aryeh Markovic, make this declaration pursuant to 28 U.S.C. § 1746.

1. I am the Vice President of Murray Avenue Kosher, Inc. ("**MAKI**") and am authorized to make this declaration (the "**Declaration**") on behalf of MAKI. I submit this Declaration in connection with 29 Katz Crew, LP's *Motion to Vacate Order Approving the Assumption and Assignment of Unexpired Lease to Murray Ave Market, LLC Pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024* (the "**Motion**").[2]

2. Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my communications with the other principals of MAKI, my communications with Yitzchok Glassner ("**Glassner**"), or my review of relevant documents. If I were called to testify, I would testify competently to the facts set for the below.

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent. https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

DM3\22200665.1

3. MAKI is a family-owned neighborhood kosher grocery store that has been in operation in the Squirrel Hill neighborhood of Pittsburgh since the 1950's. My family has had an ownership interest in the store since the 1990's.

4. The principals of MAKI are my parents, Saul and Beth, and me (the "**Markovics**").

5. In June 2025, Glassner approached the Markovics with an offer to purchase MAKI's grocery store.

6. On July 11, 2025, MAKI and Glassner executed a non-disclosure agreement (the "**NDA**") for the exchange of confidential information while the parties explored the potential business opportunity. A copy of the NDA is attached hereto as **Exhibit A** and incorporated herein.

7. Over the course of several weeks, the Markovics and Glassner negotiated a potential acquisition of the grocery store, but no final deal was ever reached.

8. As part of the negotiations and due diligence, the Markovics provided to Glassner MAKI tax returns and a MAKI profit and loss statement (the "**P&L Statement**"); however, at no time was permission requested or granted to disclose either the tax returns or the P&L Statement to third parties or to submit those documents to the Court.

9. At the time of this Declaration, there is no agreement for Glassner or his company, Murray Ave Market, LLC ("**Market**"), to acquire the assets of, or to merge with, MAKI, and there was no agreement to that effect at the time Glassner submitted to the Bankruptcy Court his Declarations in support of Market's assumption and assignment of the Lease.

10. Conversations between the Markovics and Glassners regarding the acquisition of MAKI terminated in October 2025.

11. Glassner's August 28, 2025 Declaration includes false statements regarding Market's alleged acquisition of MAKI's existing kosher grocery store. Glassner improperly relied on MAKI's tax returns (in violation of his NDA with MAKI) to purportedly demonstrate Market's ability to satisfy its obligations under the Murray Avenue Lease. *See* Glassner Decl. at ¶¶ 9-10.

12. The "Market Business Plan" attached as Exhibit A to the Glassner Declaration includes multiple misrepresentations. In it, although Market *never* reached a final agreement to acquire MAKI's existing kosher grocery store, Glassner falsely represented to the Court that:

- "We propose relocating a full-service kosher neighborhood market …";

- Market's proposed new store "is not a start-up" but instead "represents a strategic partnership between the existing kosher market … and a group of new investors …";

- Market's proposed store will succeed because of the "proven legacy" and "financial stability" of the existing kosher store; and

- The "legacy operators and new investors are united," which would lead to "seamless continuity" and a "shared commitment" to the success of Market's proposed new store.

13. Glassner's Supplemental Declaration dated September 5, 2025 also includes material and significant misrepresentations. In it, Glassner states that "Market is acquiring" MAKI. Market never reached a final agreement to acquire MAKI. Glassner also asserts in the Supplemental Declaration that MAKI "will be merged into Market." There is no agreement to merge MAKI into Market, and there never was any such agreement, at the time of the Supplemental Declaration or otherwise.

3

DM3\22200665.1

14. MAKI provided 2025 MAKI financial information to Glassner pursuant to the parties' NDA. Without authorization to do so, and in violation of the NDA, Glassner attached MAKI's P&L Statement to his Supplemental Declaration to support his assertion that *Market* had the financial wherewithal to assume the lease due to *MAKI's* financial performance.

15. Glassner's statements were false when made, and they are false today. Glassner and Market never reached an agreement with the Markovics to acquire MAKI, its assets, or its operations.

16. To the contrary, Saul Markovic specifically stated to Glassner: "you guys [Market] are Murray's – we are Murray Avenue Kosher. We are not together in this effort." Glassner claimed that Market was able to "prevail" in the bankruptcy proceeds (and assume the Lease) "without your [MAKI] involvement" even though Market prevailed in obtaining an assignment of the Lease based in significant and dispositive part on Glassner's representations to the Court that MAKI and its "legacy operators" *were involved* in the new proposed market.

17. MAKI's existing kosher grocery store remains in operation today and intends to remain in operation for the foreseeable future.

18. To the extent that Glassner and Market were able to assume the existing lease at 1700 Murray Ave. based on assertions that Glassner and his partners were relocating an existing neighborhood grocery and that the "legacy operators" of the existing store are united with Glassner and his group, Glassner and Market obtained the Lease under false pretenses.

19. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

DM3\22200665.1

Dated: December 26, 2025          By: _____
                                  Aryeh Markovic
                                  Vice President
                                  Murray Avenue Kosher, Inc.

# EXHIBIT A

# Non-Disclosure Agreement

## Non-Disclosure and Confidentiality Agreement

This Non-Disclosure and Confidentiality Agreement (the "Agreement") is entered into __6/11/25__ (the "Effective Date") by and between **MURRAY AVENUE KOSHER** ("[MAK]") located at 1916 Murray Avenue, Pittsburgh, PA 15217 and __Yitzchok Glassner__ ("[NAME]") located at Pittsburgh, PA also individually referred to as the "Party", and collectively the "Parties".

The Parties are interested in exploring a potential business opportunity (the "Opportunity"). In order to adequately evaluate whether the Parties would like to pursue the Opportunity, it is necessary for both Parties to exchange certain confidential information.

IN CONSIDERATION OF disclosing and receiving confidential information, the Parties agree as follows:

   A. Confidential Information. The confidential information ("Confidential Information") includes any information that is only known by the disclosing Party, and not known by the general public at the time it is disclosed, whether tangible or intangible, and through whatever means it is disclosed.

Confidential Information does not include information that:

   1. The receiving Party lawfully gained before the disclosing Party actually disclosed it;

   2. Is disclosed to the receiving Party by a third party who is not bound by a confidentiality agreement;

   3. Becomes available to the general public by no fault of the receiving Party; or

   4. Is required by law to be disclosed.

   B. Use of Confidential Information. During the course of this Agreement, the Parties will have access to and learn of each others' Confidential Information, including trade secrets, industry knowledge, and other confidential information. The Parties will not share any of this proprietary information at any time. The Parties also will not use any of this proprietary information for either Party's personal/business benefit at any time. This section remains in full force and effect even after termination of the Parties' relationship by its natural termination or early termination by either Party.

The receiving Party may disclose the Confidential Information to its personnel on an as-needed basis. The personnel must be informed that the Confidential Information is confidential and the personnel must agree to be bound by the terms of this Agreement. The receiving Party is liable for any breach of this Agreement by their personnel.

In the event a Party loses Confidential Information or inadvertently discloses Confidential Information, that Party must notify the other Party within twenty-four (24) hours. That Party must also take any and all steps necessary to recover the Confidential Information and prevent further unauthorized use.

In the event a Party is required by law to disclose Confidential Information, that Party must notify the other Party of the legal requirement to disclose within three (3) business days of learning of the requirement.

Notices must be made in accordance with Section 9 of this Agreement.

C. Ownership and Title. Nothing in this Agreement will convey a right, title, interest, or license in the Confidential Information to the receiving party. The Confidential Information will remain the exclusive property of the disclosing party.

D. Return of Confidential Information. Upon termination of this Agreement, the receiving party must return all tangible materials it has that contain the Confidential Information it received, including all electronic and hard copies. This includes, but is not limited to, any notes, memos, drawings, summaries, excerpts and anything else derived from the Confidential Information.

E. Term and Termination. This Agreement shall commence upon the Effective Date as stated above and continue until 6/11/25

Either Party may end this Agreement at any time by providing written notice to the other Party. The Parties' obligation to maintain confidentiality of all Confidential Information received during the term of this Agreement will remain in effect indefinitely.

F. Remedies. The Parties agree the Confidential Information is unique in nature and money damages will not adequately remedy the irreparable injury breach of this Agreement may cause the injured Party. The injured Party is entitled to seek injunctive relief, as well as any other remedies that are available in law and equity.

G. Relationship of the Parties.

1. No Binding Agreement to Pursue Opportunity. The Parties agree they are exploring a potential Opportunity and sharing their Confidential Information is not a legal obligation to pursue the Opportunity. Either Party is free to terminate discussions or negotiations related to the Opportunity at any time.

2. No Exclusivity. The Parties understand this Agreement is not an exclusive arrangement. The Parties agree they are free to enter into other similar agreements with other parties.

3. Independent Contractors. The Parties to this Agreement are independent contractors. Neither Party is an agent, representative, partner, or employee of the other Party.

H. General.

1. Assignment. The Parties may not assign their rights and/or obligations under this Agreement.

2. Choice of Law. This Agreement will be interpreted based on the laws of the State of Pennsylvania regardless of any conflict of law issues that may arise. The Parties agree that any dispute arising from this Agreement will be resolved at a court of competent jurisdiction located in the State of Pennsylvania

3. Complete Contract. This Agreement constitutes the Parties entire understanding of their rights and obligations. This Agreement supersedes any other written or verbal communications between the Parties. Any subsequent changes to this Agreement must be made in writing and signed by both Parties.

4. Severability. In the event any provision of this Agreement is deemed invalid or unenforceable, in whole or in part, that part shall be severed from the remainder of the

Agreement and all other provisions should continue in full force and effect as valid and enforceable.

5. Waiver. Neither Party can waive any provision of this Agreement, or any rights or obligations under this Agreement, unless agreed to in writing. If any provision, right, or obligation is waived, it is only waived to the extent agreed to in writing.

I. Notices. All notices under this Agreement must be sent by email with return receipt requested or certified or registered mail with return receipt requested.

Notices should be sent as follows:

Shaya Markovic
The Law Office of Shaya Markovic, PA
1221 S 21 Ave
Hollywood, FL 33020

Saul Markovic
1916 Murray Avenue
Pittsburgh, PA 15217

Aryeh Markovic
1916 Murray Avenue
Pittsburgh, PA 15217

The Parties agree to the terms and conditions set forth above as demonstrated by their signatures as follows:

**Name**: Saul Markovic
Signed: _[signature]_
Date: 6-11-25

**Name**: Aryeh Markovic
Signed: _[signature]_
Date: 6/11/25

**Name**:
Signed: _[signature]_
Date: 6/11/25