| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** |
| TUCKER ARENSBERG, P.C.<br>Evan C. Pappas, Esquire<br>Michael A. Shiner, Esquire<br>Maribeth Thomas, Esquire<br>300 Corporate Center Drive, Suite 200<br>Camp Hill, Pennsylvania 17011<br>Telephone: (717) 234-4121<br>Fax: (717) 232-6802<br>epappas@tuckerlaw.com<br>mshiner@tuckerlaw.com<br>mthomas@tuckerlaw.com<br>*Counsel for 29 Katz Crew, LP* |

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, *et al.*,[1]<br><br>Debtors. | Case No. 25-14861 (MBK)<br><br>Chapter 11<br><br>Hon. Michael B. Kaplan |

**MOTION TO VACATE ORDER APPROVING THE ASSUMPTION AND
ASSIGNMENT OF UNEXPIRED LEASE TO MURRAY AVE MARKET, LLC
PURSUANT TO FED. R. CIV. P. 60(b) AND FED. R. BANKR. P. 9024**

29 Katz Crew, LP ("**29 Katz Crew**" or "**Movant**") files this *Motion to Vacate Order Approving the Assumption and Assignment of Unexpired Lease to Murray Ave Market, LLC Pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024* (the "**Motion**").

**PRELIMINARY STATEMENT**

Movant recently purchased real estate Debtor Rite Aid leased for Store 274 in the Squirrel Hill neighborhood of Pittsburgh, Pennsylvania. The Debtor assumed and assigned the Lease to

---

[1] The last four digits of Debtor New Rite Aid, LLC's tax identification number are 1843. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid2025. The location of Debtor New Rite Aid, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 200 Newberry Commons, Etters, Pennsylvania 17319.

Murray Avenue Market, LLC through a contested assumption and assignment process. Recently discovered evidence shows that Murray Avenue Market, LLC made material misrepresentations to this Court to obtain an order approving the assumption and assignment. Specifically, it misrepresented the existence of an agreement to acquire the existing kosher grocery store in Squirrell Hill, and it submitted tax returns and financial information from that grocery store in violation of a non-disclosure agreement. Given this misconduct, cause exists under Rule 60 of the Federal Rules of Civil Procedure to set aside the order approving the assumption and assignment of the lease.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1335.

2. This is a core proceeding pursuant to U.S.C. § 157(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief sought in this Motion is Fed. R. Civil P. 60(b) and Fed. R. Bankr. P. 9024.

## BACKGROUND

**I.    1700 Murray, AmeriServ Financial Bank, and the State Court Receivership.**

5. 1700 Murray Avenue, LLC ("**1700 Murray**") was the owner of the real property at 1700-1710 Murray Avenue and 1712-1714 Murray Avenue, Pittsburgh, Pennsylvania 15217 (the "**Property**"). The Property was leased by Debtor Rite Aid of Pennsylvania, Inc. ("**Rite Aid**") and was the location of Rite Aid Store No. 274.

6. The Property secured a Note in favor of AmeriServ Financial Bank ("**Ameriserv**") in the original principal amount of $10,080,000 (the "**Note**"), as evidenced by a Mortgage which

2

was recorded with the Recorder of Deeds of Allegheny County, Pennsylvania on May 20, 2019, at Mortgage Book 50552 Page 477 (the "**Mortgage**").

7. After 1700 Murray defaulted on its obligations under the Note and Mortgage, AmeriServ commenced a foreclosure action against 1700 Murray in the Court of Common Pleas of Allegheny County, Pennsylvania on June 15, 2024.

8. The Court of Common Pleas of Allegheny County, Pennsylvania appointed Martin Perry, on behalf of Michael Ella RES, as the Court-appointed receiver (the "**Receiver**") over 1700 Murray by Order dated January 29, 2025 (the "**Receivership Order**").

9. Rite Aid and 1700 Murray, as successors in interest to Alex-Forbes and Murray, LP were counterparties to a prepetition lease agreement dated August 19, 2003, whereby Rite Aid agreed to lease from 1700 Murray, *inter alia*, certain retail space, identified by Rite Aid as Store No. 274, situated at the Property (the "**Lease**").

**II.    Assumption and Assignment of the Lease.**

    **A.    The Assumption Procedures and Notice.**

10. On May 5, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**").

11. On June 11, 2025, the Court issued its Final Order (I) Establishing Procedures for the Sale of Certain Leases and Fee Owned Properties, and (II) Granting Related Relief, in which the Court approved, *inter alia*, the procedures for assuming and assigning unexpired leases by and between the Debtors and lease counterparties (the "**Assumption Procedures**"). [Doc. No. 804.]

12. On July 22, 2025, pursuant to the approved Assumption Procedures, the Debtors filed the Assumption and Assignment Notice, wherein the Lease was included in the schedule of

3

unexpired leases to be assumed by the Debtors and assigned to Murray Ave Market ("**Market**"),[2] effective August 31, 2025, for a price of $93,275.00. [Doc. No. 1525.]

13. The Assumption and Assignment Notice listed the cure amount for the Lease to be $32,275.00 (the "**Cure Amount**").

### B. The Adequate Assurance Objection & Hearings.

14. AmeriServ and the Receiver filed an objection (the "**Adequate Assurance Objection**") to the Assumption and Assignment Notice based upon the inaccuracy of the Cure Amount and the failure of the Debtors to provide "sufficient evidence of the financial status of the proposed assignee of the Lease, Murray Ave Market, or the ability of Murray Ave Market to perform all of the obligations contained in the Lease going forward." [Doc. No. 1808, at ¶ 19.]

15. In the Adequate Assurance Objection, AmeriServ and the Receiver averred that the Debtors merely provided AmeriServ and the Receiver with "a copy of a single 2023 tax return of Murray Ave Market's current business operations, as well as a brief company overview." [*Id.* at ¶ 20.]

16. In response to the objection of AmeriServ and the Receiver, Market provided the Declaration of Yitzchok Glassner in Support of Murray Ave Market's Assumption of Lease (the "**Glassner Declaration**"), [Doc. No. 2194], whereunder Mr. Glassner declared *under penalty of perjury pursuant to 28 U.S.C. § 1746* that Market:

   a. Intended to acquire Murray Avenue Kosher, Inc. ("**Kosher**") [Glassner Declaration, at ¶ 5];

   b. "In response to the objection, Murray Ave Market has provided a tax return for 2023 to the Debtors and the objectors." [*id.* at ¶ 10];

   c. Had the ability to pay the rent due under the Lease because Kosher currently pays substantially the same amount of rent at its current location [*id.* at ¶ 11]; and

---

[2] Upon information and belief, Murray Ave Market is actually Murray Avenue Market, LLC, which was formed on June 30, 2025.

4

    d. Proposed a business plan based upon the acquiring and relocating the currently-operating Kosher grocery store ("[W]e propose relocating a full-service kosher neighborhood market"), which has been in operation since 1974, representing that the new "Kosher Neighborhood Market" is "not a start-up" but "represents a strategic partnership between the existing kosher market with over 50 years of proven service and financial stability, and a group of new investors" and characterizing itself as an "[E]xisting Market with successful track record" that touted the benefits of acquiring this lease because the "[n]ew rent in new location is within 5% of existing rent at current location." [Doc. No. 2194-1.]

17. At the August 28, 2025 hearing to consider the Assumption and Assignment Notice and the objection of AmeriServ and the Receiver thereto, the Court directed Murray Avenue Market to provide AmeriServ and the Receiver with additional adequate assurance of its ability to perform all financial obligations under the Lease on or before September 5, 2025.

18. The Court indicated that the "elemental question" was the "capacity of what is a newly formed entity . . . to be able to pay going forward" and noted that, in order to answer that question, both the Respondents and the Court needed to be able to look beyond the newly formed entity itself. [Audio of 8/28/2025 Hearing, Doc. No. 2195.]

19. On September 5, 2025, Market filed the Supplemental Declaration of Yitzchok Glassner in Support of Murray Avenue Market's Assumption of Lease (the "**Supplemental Glassner Declaration**"). [Doc. No. 2330.]

20. The Supplemental Glassner Declaration reiterated Market's ability to perform its obligations under the Lease and included (i) a 2025 year-to-date income statement for Kosher, (ii) an explanation that the relocation to the Property would result in a significant reduction in expenses and an equivalent increase in profit, (iii) tax returns for Kosher for 2022 and 2024; and (iv) an offer of a 12-month personal guaranty of the Lease by Glassner.

21. In the Supplemental Glassner Declaration, Market affirmatively stated that "**Market is acquiring Murray Avenue Kosher Inc.**" and that "**Murray Ave Kosher, Inc. will be**

5

**merged into Murray Avenue Market**." [Supplemental Glassner Declaration, at ¶ 5]. These statements by Market affirmatively represented to this Court that Market had reached an agreement for the acquisition of Kosher.

22. These affirmative statements were untrue at the time Market made them to the Court and remain untrue as of the filing of this Motion.

C. **The September 18, 2025 Opinion.**

23. At a continued hearing on September 16, 2025, the Court considered the misrepresentations presented in the Supplemental Glassner Declaration to conclude that Market provided sufficient adequate assurance of its ability to perform its obligations under the Lease and issued a Letter Opinion on September 18, 2025 (the "**Opinion**") that overruled the objection of AmeriServ and the Receiver and approved the assumption and assignment of the Lease to Market. [Doc. No. 2494.]

24. The Court's Opinion relied upon untrue statements in the Declarations submitted by Murray Ave Kosher to find that Murray Ave Market provided adequate assurance of future performance. The Court, in reliance on those untrue statements, held and found as follows:

> The Declarations admitted into evidence **establish that Murray Ave Market is acquiring Murray Avenue Kosher, Inc.** and will convert the Property associated with this Lease to a specialty upscale kosher food market. Glassner Supp. Decl. ¶ 5, ECF No. 2330. The 2025 year-to-date income statement for Murray Avenue Kosher, Inc. submitted with the Supplemental Declaration indicates net income in excess of $350,000. P&L Statement, ECF No. 2330-1. Mr. Glassner explains that **Murray Ave Market stands to be more profitable because "Murray Avenue Kosher, Inc.'s current location has unusually high expenses due to age and condition— recurring plumbing issues, chronic leaks, and substantial roof damage."** Glassner Supp. Decl. ¶ 17, ECF No. 2330. Thus, Mr. Glassner certifies that the **assumption of the new lease "will significantly reduce utilities and repair costs, with savings of approximately $100,000.00 annually compared to Murray Avenue Kosher's current location."** Id. at ¶ 18. The Court also

> considers the Market Business Plan, which discloses financial forecasts— including improvement costs to refresh the existing space—and projects $2.9 million in net profit within five years. Market Business Plan, ECF No. 2194-1. Murray Ave Market, LLC further certifies that, although it can afford them, renovations may not be necessary because "the space is plug-and-play and ready for immediate use in its as-is condition." Murray Ave Market Sur-Reply. ¶ 14, ECF No. 2439. Thus, an itemized budget for conversion/renovation expenses is unnecessary for an inquiry into Murray Ave Market's ability to perform under the Lease.
>
> The Court will not require Mr. Glassner to provide evidence regarding his financial ability to personally guarantee the Lease, nor will it require the parties to further identify principals of the markets. Indeed, principals have been identified, see id. at ¶ 13, and additional information is not necessary for an evaluation of Murray Ave Market's future performance. **Significantly, the record demonstrates that Murray Avenue Kosher, Inc. has been doing business for over fifty (50) years, and currently pays substantially similar rent at its current location**. See Glassner Decl. ¶¶ 4, 11, ECF No. 2194. Ultimately, the record reflects that **Murray Avenue Kosher, Inc. has a longstanding history and a healthy financial condition. The P&L statement and the Market Business Plan support assumption given the substantial similarities between the businesses, including rent expenses. The record suggests that Murray Ave Market—essentially stepping into the shoes of Murray Avenue Kosher, Inc.—stands to be similarly profitable and will enjoy cost-savings by moving to the Property**.

Doc. No. 2494, at 6 (emphasis added).

25. In summary and as seen in bold in the quotes from the Opinion, the Court's ruling relies again and again upon two critical misrepresentations that build upon each other: (i) that Market was going to acquire Kosher; and (ii) that Market would enjoy the substantial benefit of acquiring Kosher and being a sole local provider of kosher foods.

26. Additionally, Kosher never authorized Market to use its financial information and tax returns in support of its bid to acquire the Lease. This information was provided under a non-disclosure agreement between Kosher and Market dated June 11, 2025 (the "**NDA**"), and Kosher

7

never authorized Market's use of its tax returns and financials, let alone their public disclosure on the docket of this Court. A copy of the NDA is attached hereto and incorporated herein as **Exhibit A**.

27. On September 28, 2025, an Order was entered approving the assumption and assignment of the Lease to Murray Ave Market (the "**Assignment Order**"). [Doc. No. 2575.]

### III. Sale of the Property.

28. In May 2025, the Receiver entered into an agreement to sell the Property to 29 Katz Crew for a purchase price of $5,100,000 (the "**Sale Agreement**").

29. The Court of Common Pleas of Allegheny County approved the Sale Agreement and the purchase of the Property by 29 Katz Crew by Order dated June 25, 2025.

30. On December 5, 2025, the sale of the Property to 29 Katz Crew closed, and 29 Katz Crew became the legal owner of the Property, is the Landlord under the Lease, and succeeded to the rights of the Receiver and AmeriServ with respect to the Lease.

### IV. Misrepresentations by Market.

31. In both the Glassner Declaration and the Supplemental Glassner Declaration (together, the "**Glassner Declarations**") submitted by Market in support of the assumption and assignment of the Lease to Market, Glassner and Market knowingly misrepresented their relationship with Kosher to the Court in an attempt to demonstrate Market's ability to perform all future obligations under the Lease.

32. 29 Katz Crew learned the following:

    a. That there presently is no agreement for Market to acquire the assets of, or to merge, with Kosher and there was no agreement to that effect at the time the Glassner Declarations were submitted to this Court. [*See* Declaration of Aryeah Markovic (the "**Markovic Declaration**"), attached hereto and incorporated herein as **Exhibit B**, at ¶ 9];

8

    b.    That it was misleading and improper for Market to represent to the Court that it would be the sole local provider of kosher foods in Pittsburgh, with attendant benefits to Market's business, when Market knew there was no agreement to acquire Kosher or its assets and that it instead intended to compete with Kosher; and

    c.    That the financial information and tax returns of Kosher that were provided to this Court and were relied upon by this Court in the Opinion were confidential information provided by Kosher to Market pursuant to an NDA and Market neither requested nor had permission to disclose that information to any third party or the Court. [Markovic Declaration, at ¶¶ 6, 8.] This information should never have been submitted to the Court or relied upon by the Court in making its decision in the Opinion.

33. The actual principals of Kosher, the Markovics, were approached by Glassner in June 2025 with an offer to purchase Kosher's grocery store. [Markovic Affidavit, at ¶ 5.]

34. On July 11, 2025, Glassner and the Markovics executed the NDA, which prohibits all signatories from using "any proprietary information at any time" including "for either Party's personal/business benefit at any time." The NDA defines propriety/confidential information as "information that is only known by the disclosing Party, and not known by the general public at the time it is disclosed, whether tangible or intangible, and through whatever means it is disclosed." [*See* Exhibit A.]

35. Over the course of several weeks, the Markovics and Glassner negotiated a potential acquisition of the grocery store, but no deal was ever reached. [Markovic Affidavit, at ¶ 7.]

36. As part of the negotiations and due diligence, the Markovics provided Kosher's tax returns and profit and loss statement (the "**P&L Statement**") to Glassner; however, at no time was permission requested or granted to disclose either the tax returns or the P&L Statement to third parties or to submit those documents to the Court—and doing so was in clear violation of the NDA. [Markovic Affidavit, at ¶ 8.]

9

37. Given the significant misrepresentations of facts to this Court, 29 Katz Crew, the current legal owner of the Property, now brings this Motion, seeking relief under Rule 60(b) of the Federal Rules of Civil Procedure (the "**Civil Rule(s)**") from the Court's Assignment Order approving the assumption and assignment of the Lease to Market based upon the misrepresentations of fact to this Court by Market in conjunction with its efforts to demonstrate adequate assurance of its financial ability to perform under the Lease.

## APPLICABLE LAW

38. Civil Rule 60(b), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024, allows a party to seek relief from a judgment or order under certain circumstances and gives a court the power to grant such relief.

39. "The general purpose of [Civil] Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002) (quoting *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)).

40. Civil Rule 60(b)(2), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024, allows relief from a final judgment based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under [Civil] Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

41. A party is entitled to relief under Rule 60(b)(2) if such newly discovered evidence is "(1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." *Roberts v. PNC Bank (In re Roberts)*, Adv. No.: 25-01299-ABA, 2025 Bankr. LEXIS 2748, at *14 (Bankr. D.N.J. Oct. 23, 2025) (citing *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991)).

42. "'Reasonable diligence requires that the movant acted with some promptness where the facts and circumstances would put a person of common knowledge and experience on notice that some evidence might exist.'" *Messner v. USA Techs., Inc.*, Civil Action No. 15-5427, 2016 U.S. Dist. LEXIS 127041, at *10 (E.D. Pa. Sept. 19, 2016) (quoting *S.E.C. v. Wojeski*, 752 F. Supp. 2d 220, 228 (N.D.N.Y. 2010)).

43. Under Civil Rule 60(b)(3), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).

44. To succeed on a motion to vacate an order pursuant to Civil Rule 60(b)(3), a party must establish, by clear and convincing evidence, first, that the judgment was obtained through fraud, misrepresentation, or misconduct, and second, that such fraud, misrepresentation, or misconduct prevented him or her from fully and fairly presenting the case. *Boldrini v. Wilson*, 609 F. App'x 721, 724 (3d Cir. 2015) (citing *Brown v. Pa. R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960)).

45. Relief under Rule 60(b)(3) is not limited to fraud, but also encompasses conduct that amounts to a misrepresentation or "misconduct by an opposing party," including accidental omissions. *Churchill Downs, Inc. v. NLR Entertainment, LLC*, Civ. No. 14-3342, 2018 U.S. Dist. LEXIS 164480, at *9-10 (D.N.J. 2018) (citing *Anderson v. Cryovac Inc.*, 862 F.2d 910, 923 (1st Cir. 1988); *United States v. One (1) Douglas A-26B Aircraft*, 662 F.2d 1372, 1374-75 n.6 (11th Cir. 1981); and *Sellers v. Gen. Motors Corp.*, 40 Fed. R. Serv. 2d 590 (E.D. Pa. 1984).

# ARGUMENT

I. **Based upon the misrepresentations made by Market and Glassner to this Court, the Court should grant relief under Rule 60(b)(3) from the Assignment Order authorizing assumption and assignment of the Lease to Market.**

46. Through the Glassner Declarations, Market knowingly made false misrepresentations to this Court about its acquisition of the Kosher and its adequate assurance of ability to perform under the Lease in the future.

47. The evidence is uncontroverted that the NDA executed by Glassner and the principals of Kosher prohibited Glassner from producing the tax returns, the profit and loss statement and other financial information of Kosher to the Court without the knowledge or permission of Kosher.

48. Generally, confidential commercial information protected by a non-disclosure agreement should not be disclosed to the public record. *See Par Pharmaceutical, Inc. v. Sandoz Inc.*, Civil Action No. 3:18-cv-14895-BRM-DEA, 2020 U.S. Dist. LEXIS 269638, at *5-6 (D.N.J. 2020).

49. It is also uncontroverted, based upon the Markovic Declaration and exhibits attached thereto, that Glassner misrepresented to the Court that Market had reached a deal to acquire Kosher when, in fact, no such deal and been reached.

50. Based on the Court's Opinion and analysis of the financial documentation provided by Market, it is also clear that the Court relied upon Market's misrepresentations in entering its Assignment Order approving the assumption and assignment of the Lease to Market.

51. This Court, in its Opinion, relied upon the following facts that were not true:

- that Murray Ave Market is acquiring Kosher;

- that the record suggests that Market is essentially stepping into the shoes of Kosher and stands to be similarly profitable and will enjoy cost-savings by moving to the Property;

- and in view of the foregoing untrue representations:

    - that Kosher has been doing business for 50 years and currently pays substantially similar rent at its current location;

    - that Kosher has a longstanding history and a healthy financial condition;

    - that Market stands to be more profitable because Kosher's current location has unusually high expenses due to age and condition (recurring plumbing issues, chronic leaks, and substantial roof damage);

    - that assumption of the new lease will significantly reduce utilities and repair costs, with savings of approximately $100,000.00 annually compared to Kosher's current location; and

    - that the P&L statement and the Market Business Plan support assumption given the substantial similarities between the businesses, including rent expenses.

52. Had AmeriServ and the Receiver known of the impropriety of the financial documents presented by Glassner and Market and the false statements set forth in the Glassner Declarations at the time of the hearings to consider the assumption and assignment of the Lease to Market, counsel for AmeriServ and the Receiver would have put forth a very different argument and defense to the averments made by Market.

53. For these reasons, the Assignment Order approving the assumption and assignment of the Lease to Market should be vacated under Civil Rule 60(b)(3).

**II. Based upon newly discovered evidence not available to AmeriServ and the Receiver at the time the Assignment Order was entered, the Court should grant relief under Rule 60(b)(2) from the Assignment Order authorizing assumption and assignment of the Lease to Market.**

54. The Assignment Order should be vacated based upon newly discovered evidence unavailable to 29 Katz Crew, AmeriServ, or the Receiver at the time the Assignment Order was entered.

55. Neither AmeriServ nor the Receiver knew or had reason to know of the misrepresentations of Market and Glassner at the time the Glassner Declarations were each filed.

56. First, the Glassner Declaration and the Supplemental Glassner Declaration were each filed on the eve of hearing, with little to no opportunity for AmeriServ or the Receiver to verify the veracity of the allegations made therein.

57. Second, because the Glassner Declarations were filed by counsel for Market and made under penalty of perjury, AmeriServ and Receiver led with the assumption that the averments made with the Glassner Declarations were truthful and the financial documents presented with the same were being presented with the permission of Kosher.

58. This assumption was further supported by Market's multiple representations to AmeriServ and the Receiver that Market was an extension of Kosher and formed as a new entity as a mechanism to reopen the grocery store on a larger scale in a new location.

59. At no time was it represented that Market was an entirely new entity with entirely new management that had no prior relationship with Kosher.

60. No facts and circumstances put 29 Katz Crew, AmeriServ, or the Receiver on notice that Market had not reached an agreement for the acquisition of Kosher.

61. 29 Katz Crew, AmeriServ, and the Receiver only learned of this newly discovered evidence more than one month after entry of the Assignment Order approving the assignment of

14

the Lease to Market when the principals of Kosher reached out to counsel for AmeriServ and the Receiver.

62. It then took counsel for AmeriServ and the Receiver some amount of time to conduct their own research and due diligence into the truthfulness of the allegations set forth to them before feeling comfortable enough to bring the matter before this Court.

63. This Court relied on Market's representation that Market would acquire Kosher in concluding that Market provided sufficient adequate assurance of its ability to perform its obligations under the Lease.

64. Accordingly, evidence that Market had not reached a deal to acquire Kosher is material and not merely cumulative and would probably have changed the outcome of the hearing on September 16, 2025 hearing to consider the Assumption and Assignment Notice and the objection of AmeriServ and the Receiver thereto.

65. Now, with this newly discovered evidence, it is believed and therefore averred that sufficient cause exists to warrant relief from the Assignment Order under Civil Rule 60(b)(2).

## **CONCLUSION**

Based upon the evidence recently discovered by Movant that demonstrates that Market made material misrepresentations to this Court to obtain the assignment of the Rite Aid Lease, sufficient cause exists under Civil Rule 60 to set aside the order approving the assumption and assignment of the Lease.

15

WHEREFORE, Movant, 29 Katz Crew, LP, respectfully requests that this Honorable Court issue an Order vacating its *Order Approving the Assumption and Assignment of Unexpired Lease to Murray Ave Market, LLC* and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 10, 2026

TUCKER ARENSBERG, P.C.

*/s/ Evan C. Pappas*
Evan C. Pappas, Esquire
Michael A. Shiner, Esquire
Maribeth Thomas, Esquire
300 Corporate Center Drive, Suite 200
Camp Hill, PA 17011
Telephone: (717) 234-4121
Fax: (717) 232-6802
E-mail:  epappas@tuckerlaw.com
        mshiner@tuckerlaw.com
        mthomas@tuckerlaw.com

*Counsel for 29 Katz Crew, LP*